**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**OLIVIA Y., ET AL**                                          **PLAINTIFFS**

**V.**                                          **CIVIL ACTION NO. 3:04CV251LN**

**HALEY BARBOUR, ET AL.**                                          **DEFENDANTS**

**DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF RESPONSE TO MOTION
FOR CLASS CERTIFICATION**

Submitted by:

**McGLINCHEY STAFFORD, PLLC**
Sam E. Scott (MSB #6567)
Betty A. Mallett (MSB #8867)
Amy Kebert Elder (MSB #99149)
Gretchen L. Zmitrovich (MSB #101470)
City Centre South, Suite 1100
200 South Lamar Street (39201)
Post Office Drawer 22949
Jackson, Mississippi 39225
Telephone: (601) 960-8400
Facsimile: (601) 352-7757

169325.4

# Table of Contents

**Page**

Table of Contents ................................................................................................ i

Table of Authorities ...................................................................................... ii, iii

I.  Introduction: One Size Does Not Fit All ............................................................1

II.  Statement of Facts ............................................................................................3

III.  Summary of the Argument.................................................................................4

IV.  Argument ..........................................................................................................6

    A.  Commonality:  No One Legal Theory or Factual Issue Is Common to All Plaintiffs or Putative Class Members.......................................................7

        1.  Plaintiffs' conclusory allegations of systemic failure are not sufficient to establish a common question of law.......................................7

        2.  None of the factual issues alleged by the Plaintiffs pertains to the entire proposed class of children................................................9

    B.  The Claims of the Named Plaintiffs Are Not Typical of the Putative Class. ........10

    C.  The Named Plaintiffs Will Not Adequately Represent the Putative Class Because the Next Friends Will Not Fairly and Adequately Protect the Interests of the Proposed Class. .............................................................12

    D.  Plaintiffs Do Not Satisfy the Requirements Of Rule 23(b)(2).............................16

        1.  Plaintiffs have not articulated a policy other than "system-wide failure" that could be the subject of injunctive or declaratory relief. ........16

        2.  There is no classwide injunctive relief that will remedy the alleged failings; relief must be fashioned on a child-by-child basis. ....................16

169325.4

## Table of Authories

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)............................................. 6

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ................................................................. 9

*Barner v. City of Harvey*,  2004 WL 2092009 (N.D.Ill., Sep 15, 2004) (NO. 95 C 3316)............. 6

*Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)....................................... 13

*Burton v. Mountain West Farm Bureau Mutual Insurance Co.*, 214 F.R.D. 598, 608–11 (D.

    Mont. 2003)................................................................................................. 11

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987).... 16

*Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) ........................................... 6

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003) ........................................... 6

*Darvin v. International Harvester Co.*, 610 F.Supp. 255 (S.D.N.Y.1985)................................... 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)...... 7, 13

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 55 (N.D.Ill.1996) ..................................................... 6

*General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)............. 7

*Gill v. Monroe County Dept. of Social Services*, 92 F.R.D. 14, 16 (W.D.N.Y.1981) ........... 13, 15

*Goldchip Funding Co. v. 20th Century Corp.*, 61 F.R.D. 592, 594 (M.D.Pa.1974).................... 15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974) ................. 16

*J.B. v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir.1999)........................................................... 7, 8

*James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001) ....................................................... 11

*Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.) ................................................... 13

*Keyes v. Guardian Life Ins. Co.*, 194 F.R.D. 253, 254 (S.D. Miss. 2000).............................. 6, 17

*Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 185

    (N.D.Ill.1980)............................................................................................. 13, 14

*Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988)....................................................................... 6

Stewart v. Winter, 669 F.2d 328, 337 (5th Cir. 1982). ............................................................... 8, 9

*Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239 (3rd Cir. 1975) ...................................................... 13

*Wilder v. Bernstein*, 499 F.Supp. 980 (S.D.N.Y.1980).......................................................... 11, 12

## I.   INTRODUCTION:
## ONE SIZE DOES NOT FIT ALL

This is a case about whether Mississippi's child welfare system is a complete failure and whether the federal court should order it overhauled from top to bottom and either perform this gargantuan job itself or oversee those who do it.  The relief sought includes the issuance of a mandamus-like injunction to the Governor of Mississippi, ordering him generally follow the law.

No particular DHS policy or procedure is challenged by this frontal and all encompassing attack.  Its ultimate goal is total submission and surrender of the legal authority of Mississippi government to carry out the duties that it is elected to perform, with all of the consequences and costs, whatever they may be, to be borne by Mississippi taxpayers.

Plaintiffs contend that all 3,000 plus children in the custody of DHS should be members of a plaintiff class simply because they are there, without regard to who they are, their age, gender, condition, problems and opportunities, or what DHS has done or failed to do with respect to their health, safety, education, or re-connecting them with their own family, a foster family, or an adoptive family.  Plaintiffs use broad legal terms in describing a most unorthodox task – attempting to look after 3,000 abused children.  If they are, or ever will be, in DHS custody,  say plaintiffs, they have a claim, and all their claims are based on common facts and law, and are typical of all others' claims.  They are generic children with generic claims.  In other words, one size fits all 3,000 plus because all have claims resulting from conscious governmental indifference to the safety and well being of all abused Mississippi children in the custody of DHS.

Defendants oppose certification of this case as a class action because it does not meet the requirements of either Rule 23(a) or 23(b).  Plaintiffs' lead counsel, Children's Rights Inc., are experts in child welfare litigation as this is their sole area of practice.  They have also won a

169325.4

number of class certification cases, perhaps enough that they believe that, "if you've seen one child welfare case, you've seen 'em all."  This view takes same approach to abused and neglected children, but it is wrong.  Each child and each case is different and special and requires individual attention.  There is no such thing as a "one size fits all" child welfare case any more than there is a generic abused child.

Children who come into the custody of DHS have problems caused by abuse and neglect, in turn, caused by innumerable and sometimes unfathomable circumstances.  Even the hardest heart must have sympathy for these children who are victims of often cruel treatment.  Abused and neglected children are of different ages, genders, and family backgrounds, and have differing medical, psychological, and behavior problems, intellect and education.  DHS must take each child as it finds him or her.  Its mandate is to try to return them to as near a caring family situation as possible as soon as possible.  These children are anything but generic, nor are the services that are necessary for DHS to satisfy its statutory responsibilities under Miss. Code of 1972 §43-15-5:

> "to administer or supervise all public child welfare services, including those services, responsibilities, duties and powers with which the county departments of human services are charged and empowered in this article; administer and supervise the licensing and inspection of all private child placing agencies; provide for the care of dependent and neglected children in foster family homes or in institutions, supervise the care of such children and those of illegitimate birth, supervise the importation of children; and supervise the operation of all state institutions for children."

Plaintiffs ignore that children come into the custody of DHS in numerous ways, ranging from the Baby Drop-Off Law, §43-15-201 involving infants less than three-days old, to orders by the Youth Court, which is governed by Mississippi's Youth Court Law, which mandates that each child who comes within its jurisdiction be treated on an individual on going basis.  These laws, which already bind DHS, do not contemplate the children in the custody of DHS as a

"class."  The "being there" approach that Plaintiffs take in this case contends that if a child is in the custody of DHS, his or her substantive due process rights are being denied.  That simply is not so, and nothing in the rules governing class certification require this Court to accept that unfounded assertion.  The facts alleged in the Complaint about the Plaintiff children are nothing more than a snapshot of a time certain in each child's difficult life.  The moment after that snapshot was taken, the child's life changed, as did DHS's obligation to that child.  The conduct of DHS must be judged by its treatment of each individual because that is its legal duty.  Treating these children as a "class" is contrary to Mississippi law, is an inaccurate perception of the circumstances of each child's life, and will not improve either the treatment, care, and services that DHS provides or the lives of these children.

## II.   STATEMENT OF FACTS

This suit was originally filed seeking class certification for two putative classes alleging numerous claims against the Governor and two officials at the Department of Human Services ("DHS") in their representative capacities.  After the original Complaint was amended, there were thirteen named children represented by five next friends.

After this Court's November, 2004 Memorandum Opinion and Order, the only claims remaining are claims for denial of substantive due process and the number of children who allege such claims was reduced to eight:  Olivia Y.; Jamison J.; John A., Cody B.; and Mary, Tom, Matthew and Dana W.

Children's welfare or foster care as it is sometimes called, is one aspect of the operations of DHS.  This aspect is managed through the Department of Family and Children's Services ("DFCS").  DFCS has nine regional offices throughout the State and at least one office in every one of Mississippi's eighty-two counties.  The responsibilities of DFCS are broad and difficult, ranging from investigating neglect and abuse to providing an exit from the system through

adoption.  The responsibilities of DHS to neglected and abused children arise when they come into DHS custody, from infants to teenagers and the problems that these children have as a result of abuse and neglect run the gamut of physical, psychological, developmental, and behavioral problems.  The reasons for neglect and abuse are as diverse as the results, but certainly drugs, alcohol, illiteracy, and poverty are on any list.

Just as DFCS takes the children as it finds them, it should be noted that the present administration took office one year ago and took the problems as it found them.  Child welfare problems are nationwide and worldwide and are not easily or quickly cured.  In attempting to hire additional social workers, DFCS must get legislative appropriations at a time when the State's budgetary problems are well publicized and common knowledge.  Though this is not suggested as an excuse, it is a reality.

Defendants have prepared a summary of the facts about the named children from DFCS records and attached it to their response to the motion for certification as an exhibit.  It is not argumentative or conclusory as in the Complaint.  The records from which it is drawn fully support it.  For brevity, Defendants refer the Court to the Exhibits to the response.  The difference in the facts stated in the Complaint and those prepared directly from the records are dramatically different as are the children themselves and their respective situations.

### III. SUMMARY OF THE ARGUMENT

The test for class certification of claims seeking injunctive or declaratory relief is whether all four requirements of F.R.C.P. Rule 23(a) and both requirements of F.R.C.P. Rule 23(b)(2) are satisfied.

Plaintiffs bear the burden of satisfying all these requirements.  Failure on any one point is fatal to class certification.

169325.4

Though the District Court has wide discretion in deciding whether to certify a class, it must engage in its own rigorous analysis of whether the tests are satisfied. While the Court should accept the substantive allegations of the Complaint, it need not rely upon conclusory allegations such as those that pervade the Complaint and Motion for Class Certification in this case.

After this Court's Order on the Motion to Dismiss, the only remaining claims are substantive due process claims bought by eight named Plaintiffs who purportedly represent all children who are or will be in the legal or physical custody of DHS. The number of Plaintiffs in this proposed class varies, but in mid-December 2004, they totaled 3,079; therefore, Defendants concede that the numerosity test is satisfied.

The next friends of these eight children do not, however, adequately represent the class, and the claims asserted do not meet the commonality and typicality requirements of Rule 23(a).

Plaintiffs do not challenge specific practices or procedures utilized by DHS. Instead, Plaintiffs exaggerate and obfuscate the facts, alleging, in shotgun fashion, a complete systemic failure of the State to fulfill its responsibilities to its abused children. These broad, conclusory allegations of systematic failure do not satisfy the requirements for Rule 23(b)(2), nor do they provide a short and plain statement of the claims that would permit the Court to find that the class certification requirements have been met.

Plaintiffs allege that DHS has a policy and a practice of not meeting the needs of the children in its custody and not keeping them safe from harm. This allegation makes no sense, and it is not true. This allegation could not support the issuance of an injunction, which must necessarily be fact-specific. The law requires DHS to treat each child according to his or her needs. Therefore, in order to fashion proper relief, each child's needs and treatment must be

169325.4

5

taken into account.  The specious argument that all children in DHS custody have the same

claims flies in the face of the common sense, experience, and the authorities cited below, all of

which demonstrate that class certification is not appropriate in this case.

## IV. ARGUMENT

The district court maintains substantial discretion in determining whether to certify a

class action.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998).  However, any

class certification must meet the following requirements:

> To proceed as a class, plaintiffs must first establish the four requirements set forth
> in Rule 23(a):  "(1) the class is so numerous that joinder of all members is
> impracticable [numerosity], (2) there are questions of law or fact common to the
> class [commonality], (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class [typicality], and (4) the
> representative parties will fairly and adequately protect the interests of the class
> [adequacy]." Fed.R.Civ.P. 23(a).

> *Keyes v. Guardian Life Ins. Co.*, 194 F.R.D. 253, 254 (S.D. Miss. 2000).  These

prerequisites are mandatory:  the failure to establish any one absolutely precludes certification.

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003).  *See also, Barner v. City of*

*Harvey*,  2004 WL 2092009 (N.D.Ill., Sep 15, 2004) (NO. 95 C 3316) (*quoting Gaspar v.*

*Linvatec Corp.*, 167 F.R.D. 51, 55 (N.D.Ill.1996)).

Only if all of the elements of 23(a) are satisfied, a class may be certified if the action also

falls within one of the three categories of Rule 23(b).  Plaintiffs assert that this action falls within

Rule 23(b)(2), which provides that:

>  the party opposing the class has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive relief or
> corresponding declaratory relief with respect to the class as a whole.

The plaintiffs have the burden of showing that certification is appropriate. *Castano v.*

*American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996); *see also Reed v. Bowen*, 849 F.2d 1307,

1309 (10th Cir.1988).  Although the party seeking to certify a class bears the burden of proving

that all the requirements of Rule 23 are met, the district court must engage in its own "rigorous analysis" of whether "the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In doing so, the court must accept the substantive allegations of the complaint as true, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), although it "need not blindly rely on conclusory allegations which parrot Rule 23" and "may consider the legal and factual issues presented by plaintiff's complaints." *J.B. v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir.1999) (quoting 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.26 (3d Ed.1992)). The Plaintiffs ask this Court to certify a class defined as "all children who are or will be in the legal and/or physical custody of DFCS (the "In-Custody Class".[1] Defendants contend that this class does not satisfy the requirements of either Rule 23(a) or 23(b).

    **A.**    **Commonality: No One Legal Theory or Factual Issue Is Common to All Plaintiffs or Putative Class Members.**

        **1.**    **Plaintiffs' conclusory allegations of systemic failure are not sufficient to establish a common question of law.**

The prerequisite of commonality under Fed.R.Civ.P. 23(a)(2) requires the existence of at least one question of law or fact common to the class. The Plaintiffs allege that the common claim is "that systemic deficiencies have resulted and continue to result in violations of their federal statutory and constitutional rights." Plaintiffs' Memorandum at p. 18. In the Tenth Circuit, where the attorneys for these Plaintiffs brought a nearly identical suit, the court of appeals affirmed the district court's finding that "there is no one statutory or constitutional claim common to all named Plaintiffs and all putative class members" and refused to certify the class.

---

[1]  Plaintiffs originally sought to certify two classes, the other being "all of those children who are not in DFCS custody, but have been or are at risk of being abused or neglected, and about whom Defendants have received a report of abuse or neglect" (the "Protective Services Class). (Complaint ¶ 22). This Court, in its Memorandum Opinion and Order of November 18, 2004, dismissed all of the Plaintiffs' claims except the Substantive Due Process claim for the In-Custody Class.

*J.B   v. Valdez*, 186 F.3d at 1289.   Responding to the assertion that "systemic failures in the defendants' child welfare delivery system deny all members of the class access to legally-mandated services,"  the court stated:

> We refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements.  Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind.… Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of "systematic failures."  We refuse to hold, as a matter of law, that any allegation of a systematic violation of various laws automatically meets Rule 23(a)(2).

*Id*.   The mere fact that the Plaintiffs here seek system-wide reform likewise does not automatically entitle them to class certification.  As the Fifth Circuit held in *Stewart v. Winter*, in which prisoners challenged conditions of confinement in county jails and, the court affirmed the district court's determination that there were no common questions of law or fact with respect to all 82 county jails or even with respect to the eight jails in which the named plaintiffs were confined:

> A common question can be said to exist here only in the most abstract form: all of the putative class members are prisoners, and all may raise the question whether the conditions of their confinement violate a general legal standard.  If we were to hold that it was an abuse of discretion for the trial court to conclude that the presentation of this abstract issue did not raise a "common" question within the meaning of Rule 23(a)(2), any allegation of a breach of legal duty by any class of defendants-no matter how vast or diverse-could be impressed into a single case.

669 F.2d 328, 337 (5th Cir. 1982).  That is precisely what the Plaintiffs are attempting to do here; however, most of the putative class members will probably never suffer from any of the defendants' alleged violations, because the defendants will not act uniformly towards the class. Each of the named plaintiffs lives in a different county and has been followed by a different social worker under the authority of different county and regional supervisors as well as different youth courts.  The putative class members are "all children who are or will be in the legal and/or

physical custody of DFCS" throughout the state and all of the putative class members live in different counties, are or will be followed by a different social worker under the authority of different county and regional supervisors as well as different youth courts.  It is highly unlikely that the unique combinations of the actions of all of these individuals would consistently violate the constitutional and statutory rights of all of the class members.

Plaintiffs rely on the case, *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994), for the proposition that this Court would abuse its discretion in refusing to certify this class.  The *Baby Neal* case is distinguishable.  While the proposed class in *Baby Neal* challenged the child welfare system of a single city, Philadelphia, the named Plaintiffs challenge the child welfare system of the entire state.  The *Baby Neal* court's analysis of commonality relied on the localized nature of the class and  distinguished the *Stewart* decision, concluding that "the plaintiffs [in *Baby Neal*] challenge ... a much more localized service, i.e., the provision of child welfare services in Philadelphia."  *Id*. at 62.  The Third Circuit reasoned that the proposed class satisfied the commonality requirement because "[a]ll the children in the class are subject to the risk that they will suffer from the same deprivations resulting from the [defendants'] alleged violations."  *Id*. at 60.  Under this standard, virtually any group could satisfy the commonality requirement, a result that was criticized by the Fifth Circuit in the *Stewart* decision that binds this Court.  *See Stewart,* 669 F.2d at 337.  Plainly, *Baby Neal* should not be followed in this circuit.

### 2. None of the factual issues alleged by the Plaintiffs pertains to the entire proposed class of children.

The Plaintiffs argue that there are "numerous questions of fact common to all members of" the proposed class.  Pl. Mem. at p. 18.  These alleged common questions are (1) whether Defendants fail to provide children in their custody with safe, licensed foster care placements; (2)  whether Defendants fail to provide children in foster care with legally required services

necessary to keep them safe and to prevent them from deteriorating physically, psychologically, or otherwise while in custody; and (3) whether Defendants fail to provide foster children with timely and appropriate services necessary to ensure that they are either safely reunited with their families or freed for adoption and promptly placed in a permanent home.

Not one of the factual issues alleged by the Plaintiffs could possibly pertain to the entire proposed class of children. The factual issues in this case relate to the particular circumstances of each of the individual children, and the needs of one child are entirely different from those of another. By law, the services required to be provided by DHS are dependent upon a child's individual situation. For example, the factual questions concerning an abused or neglected child are far removed from the factual questions concerning a child who requires permanent placement. Plaintiffs seek to certify a class of all children in the custody of DFCS, but this definition includes children who have not been improperly denied medical, dental, educational and family support services. Plaintiffs' allegations do not support the conclusion that *all* children in the proposed class are being deprived of adequate services by DFCS. Plaintiffs' careful selection and inaccurate facts fail to demonstrate that all children in the proposed class have experienced the same difficulties in receiving the required services under the law as Plaintiffs.

Because the Plaintiffs have shown neither a common question of law or a common question of fact, the 23(a)(2) requirement is not met.

**B.     The Claims of the Named Plaintiffs Are Not Typical of the Putative Class.**

The named Plaintiffs' claims are not typical of the purported class. The test of typicality is:

> whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Burton v. Mountain West Farm Bureau Mutual Insurance Co.*, 214 F.R.D. 598, 608–11 (D. Mont. 2003) (citations omitted).  [T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001) .

The named Plaintiffs and the proposed class members are not challenging the same conditions and practices under a common regimen.  They challenge different practices and procedures of DHS based on the individual circumstances of each child in custody.   Under the laws governing the actions to be taken by DHS, each child's treatment will depend upon the child's individual situation.   Fundamentally, each child's claim cannot be based upon the same legal theory.

The named Plaintiffs are victims of heartrending abuse perpetuated by one or both of their parents, family members, or other caretakers.  This injury brought each Plaintiff into the custody of DFCS, but DFCS did not inflict these injuries.  DFCS is charged under Mississippi law with providing an appropriate and timely response to these injuries.  However, because of the severity of the physical, emotional and psychological damage the named Plaintiffs have suffered, some placements in foster homes were not successful.  The damage from the abuse suffered by the Plaintiffs is not easily remedied, as is shown by the multiple medical and psychiatric treatment admissions of some Plaintiffs.  The facts of the cases of the named Plaintiffs are tragic, but this is precisely what prevents the injuries of the Plaintiffs from being typical of the proposed class of 3,000 plus individual children.

In support of typicality, the Plaintiffs cite *Wilder v. Bernstein*, 499 F.Supp. 980 (S.D.N.Y.1980).   In *Wilder*, the defendants argued that the named plaintiffs did not establish

typicality under Rule 23(a) because each of the named children possessed individual problems and particular needs, including that some plaintiffs were older and possibly more psychologically troubled than other members of the class.   The court held that although there is no requirement that the factual basis for the claims of all members of a purported class be identical, the disputed issue must occupy the same degree of centrality to the named plaintiffs' claim as to the claims of the purported class members.   *Id*. at 992.   The *Wilder* plaintiffs' central claim was that all members of the class had been denied placement because of their race and religion and not due to their individual circumstances. *Id*.   The court emphasized that all the children in the class shared several crucial characteristics:  they were African-American;  they were either Protestant or of other non-Catholic or non-Jewish faiths;  and they required placement. *Id*.   The court held that the plaintiffs satisfied the typicality requirement under Rule 23(a)(3).  *Id.*

Unlike the plaintiffs in *Wilder,* the Plaintiffs in this case fail to identify any "crucial" characteristics shared by the entire class.  The allegation that the named Plaintiffs and proposed class members are all affected in some way by DFCS – but not in the same way – cannot establish typicality or commonality, even though Plaintiffs seek system-wide reform.   Plaintiffs have attempted to group together children with very different needs, rights, and problems. The claims of the named Plaintiffs are not typical of the claims of the proposed class members. Thus, Plaintiffs have failed to satisfy the requirement under Rule 23(a)(3).[2]

        **C.**    **The Named Plaintiffs Will Not Adequately Represent the Putative Class Because the Next Friends Will Not Fairly and Adequately Protect the Interests of the Proposed Class.**

---

[2] Even if the claims met the commonality and typicality tests, class certification is not necessary.  *See, e.g. Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 822 F. Supp. 687 (D. Kan. 1993), decision aff'd, 31 F.3d 1536 (10th Cir. 1994) (class certification was not necessary in an action by nursing home operators challenging the state Medicaid reimbursement rates when the invalidation of the state reimbursement plan would affect the interests of all the potential class members regardless of whether a class was formally certified). By law, DHS cannot treat every child the same way.  *See* Miss. Code Ann. § 43-15-1 *et seq.*  The facts support DHS's position that the only way the relief sought can be granted or enforced is on a child-by-child basis.

"[A]dequacy of representation is the key to the integrity of class litigation, not only in pragmatic terms of the efficiency and thoroughness of the proceedings but far more importantly in relation to the fair and just resolution of the dispute."  *Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 185 (N.D.Ill.1980) (internal citations omitted). The class representative has a special duty to safeguard the interests of the absent members and must be able and willing to participate actively in the litigation since the absent class members will be bound by the judgment.  *Gill v. Monroe County Dept. of Social Services*, 92 F.R.D. 14, 16 (W.D.N.Y.1981).

Two elements frequently employed to determine adequacy of representation are the skill of the attorney to prosecute the case and the lack of conflict between the interests of the representatives and those of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968). "The adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative['s] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]"  *Berger v. Compaq Computer Corp*., 257 F.3d 475, 479 (5th Cir. 2001).  The Fifth Circuit has also recognized that the district court should question whether the representative has a sufficient stake in the outcome, i.e., whether he has any incentive to zealously participate. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.), *reh'g denied*, 785 F.2d 1034 (5th Cir.1986).

The Defendants do not dispute that the attorneys of Children's Rights, Inc. are competent to prosecute the case – their entire practice consists solely of this type of case.  However, adequacy of representation goes beyond these two elements and depends on all the circumstances of each case. *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239 (3rd Cir. 1975).

The present action was brought on behalf of the named Plaintiffs through their Next Friends, who were selected by the Plaintiffs' attorneys to act as the children's representatives. In a case such as this one where representatives are required to protect the interests of the named parties, the test under Rule 23(a)(4) is not applied to the named parties but is applied to the representatives of the named parties. The representatives of the named Plaintiffs are the Next Friends. In order to certify a class under Rule 23(a)(4), the Next Friends must be able to fairly and adequately protect the interests of the proposed class.

In *Massengill*, the court examined whether the next friend of the named plaintiff was an adequate representative of the proposed class, which challenged certain high school policies as violating the due process rights of the students. 88 F.R.D. at 185. The court held that the next friend, the mother of the named plaintiff, was not an adequate class representative under Rule 23(a)(4). *Id*. at 185-86. The court found her to be an inadequate class representative because she demonstrated little concern towards her own son's education and a limited awareness about the class, and she lacked knowledge about the essential issues of the case. *Id*. at 186.

In *Darvin v. International Harvester Co.*, 610 F.Supp. 255 (S.D.N.Y.1985), the court also examined the role of the class representative under Rule 23(a)(4) and held that the plaintiff was not an adequate class representative. *Id*. at 257. The court found that the plaintiff was unsure of whom he purported to represent and that his deposition testimony demonstrated either very limited or no personal knowledge of the facts pleaded in the complaint. "This uncertainty and inconsistency, which are characteristic of plaintiff's deposition testimony and which indicate plaintiff's unfamiliarity with the action, illustrate his inadequacy to act as class representative." *Id*.

At the time of their depositions, the Next Friends were unaware of the current status of the children they claim to represent..  Sharon Scott, next friend to Cody B. admits that she does not know where Cody B, is now.  Deposition of Sharon Scott, 22:15-21.  Sylvia Forester, Next Friend to the P. Children testified similarly:

Q:  Where are the children now?

A:  That's a good question.  I do not know.

Deposition of Sylvia Forester, 33:12-13.   Next Friend James Johnson, Esq. testified to the following:

Q:  Remind me again, when did you become the [next friend] for [John A.]?
A: Just recently.  I've never met John A.

* * *

Q: And you say you've never met him before?
A: Have not met him.

* * *

Q: Where is he now?
A: He's in a foster home with his siblings, but I don't know the name of the foster parent.

Q: And you haven't spoken with the foster parent?
A: No.

* * *

Deposition of James D. Johnson, Esq., 75:14-16, 24-25; 76:8-13.

Plaintiffs have failed to meet their burden of establishing that the Next Friends are adequate representatives of the proposed class of children. The class representative has a meaningful role in a class action.  The duty of the class representative is to question the class attorney to ensure that the attorney is adequately performing his or her job.  *Gill*, 92 F.R.D. at 16. "The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives."  *Goldchip Funding Co. v. 20th Century Corp.*, 61 F.R.D. 592, 594 (M.D.Pa.1974).  As demonstrated by their deposition testimony, this is exactly what the

Next Friends are – "uninterested and inexperienced." Plaintiffs, therefore, have failed to satisfy the adequacy of representation requirement under Rule 23(a)(4).

### D.     Plaintiffs Do Not Satisfy the Requirements Of Rule 23(b)(2).

#### 1.     Plaintiffs have not articulated a policy other than "system-wide failure" that could be the subject of injunctive or declaratory relief.

Under Rule 23(b)(2), "the party opposing the class [must] ha[ve] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." None of the causes of action in this case challenge a written or unwritten policy, regulation, procedure, or plan of DHS or DFCS. Plaintiffs have not identified or articulated a specific policy that could be the subject of injunctive or declaratory relief. Nonetheless, Plaintiffs allege generally that the Defendants have a policy and practice of not meeting the basic needs of the children in state custody and keeping them safe from harm. Pl. Mem., p. 22. That DHS or DFCS would have such a policy is ridiculous for the Plaintiffs to even assert or expect this Court to entertain.

#### 2.     There is no classwide injunctive relief that will remedy the alleged failings; relief must be fashioned on a child-by-child basis.

In their Memorandum, the Plaintiffs request "final declaratory and injunctive relief to enjoin ongoing systemic violations of the rights of those children in the Mississippi DFCS's custody." Pl. Mem., p. 24. Federal Rule of Civil Procedure 65(d) requires that injunctions be "specific in terms" and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." An injunction order must be specific and "precisely drawn" so that the party enjoined is on notice of exactly what it must do in order to avoid being held in contempt. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974); *see also Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) (broad language requiring party to obey the law in the future is not

encouraged);  *Keyes v. School. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 & n. 5 (10th Cir.1990) ("holding that generally, injunctions simply requiring the defendant to obey the law are too vague [to satisfy Rule 65]" and striking injunction prohibiting defendants "from discriminating on the basis of race, color or ethnicity in the operation of the school system" and directing defendants "to use their expertise and resources to comply with the constitutional requirement of equal education opportunity for all who are entitled to the benefits of public education").  The extensiveness of the failures alleged by Plaintiffs render it difficult to conceive of an injunction that would satisfy these requirements.  There is no classwide injunctive relief to be granted.  In their memorandum of law in support of their motion, Plaintiffs refer in some detail to publicized "deficiencies" involving DHS, which makes it abundantly clear that Plaintiffs are directly challenging the day-to-day, case-by-case performance of DHS.  The only way this Court could order clear and specific injunctive relief would be to do so for each of the more than 3,000 children in the alleged class. And even it sweeping injunctive relief were granted, such as an order requiring defendants to comply with all relevant federal and state statutes, such relief could be enforced only by looking at whether defendants are obeying the order on a child-by-child basis.

Moreover, the Mississippi Child Welfare Act, sections 43-15-1 *et seq.*, require individualized treatment in the best interest of the child for every child who is overseen by DHS, DFCS, or the Youth Court.  Plainly, no classwide injunctive remedy can address each and every facet of each individual child's custody, condition, and treatment.

Defendants submit that class certification should be denied.

**THIS**, the 18th day of January 18, 2005.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of MS; DONALD TAYLOR, as Exec. Dir. of the Dept. of Human Services; and BILLY MANGOLD as Director of the Div. of Family and Children's Services**

_____

By: s/Sam E. Scott

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**McGLINCHEY STAFFORD, PLLC**
Sam E. Scott (MSB #6567)
Betty A. Mallett (MSB #8867)
Amy Kebert Elder (MSB #99149)
Gretchen L. Zmitrovich (MSB #101470)
City Centre South, Suite 1100
200 South Lamar Street (39201)
Post Office Drawer 22949
Jackson, Mississippi 39225
Telephone: (601) 960-8400
Facsimile: (601) 352-7757

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr., Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS 39215

I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS 39215

169325.4

Marcia Robinson Lowry, Esq.
Eric E. Thompson, Esq.
Shirim Nothenberg, Esq.
CHILDREN'S RIGHTS
404 Park Avenue
New York, New York  10016

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

John Lang, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, New York  10154

Harold E. Pizzetta,  III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS  39205

**SO CERTIFIED**, this the 18th day of January, 2005.

_____

By:  s/Sam E. Scott

169325.4

19