**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


OLIVIA Y., et al.                                                                PLAINTIFFS


v.                                                        CIVIL ACTION NO.  3:04CV251LN


HALEY BARBOUR, as Governor of the State of Mississippi, et al.            DEFENDANTS



**PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION  FOR CLASS CERTIFICATION**

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, MS  39201
(601) 948-8000
(601) 948-3000 (fax)

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
(601) 355-4013

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
Corene Kendrick (MBN 43989 *pro hac vice*)
CHILDREN'S RIGHTS
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
Eric Manne (MBN 43988 *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     PLAINTIFFS HAVE SATISFIED EACH OF THE REQUIREMENTS FOR
        CLASS CERTIFICATION UNDER RULES 23(a) AND 23(b)(2) ................................. 2

        A.      There Are Questions of Law and Fact Common to the Named Plaintiffs
                and the In-Custody Class. ................................................................................. 2

        B.      The Named Plaintiffs' Claims Are Typical of Those of the In-Custody
                Class. ................................................................................................................ 6

        C.      The Named Plaintiffs Adequately Represent the Proposed In-Custody
                Class. ................................................................................................................ 9

        D.      Plaintiffs Have Satisfied the Requirements of Rule 23(b)(2). ............................ 12

III.    CONCLUSION ................................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

## <u>Supreme Court Cases</u>

<u>Eisen v. Carlisle & Jacqueline</u>,
    417 U.S. 156 (1974) ............................................................................. 4, 7, 13

<u>O'Shea v. Littleton</u>,
    414 U.S. 488 (1974) ....................................................................................... 6

<u>Smith v. Organization of Foster Families for Equality and Reform</u>,
    431 U.S. 816 (1977) ....................................................................................... 2

## <u>Federal Cases</u>

<u>Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.</u>,
    873 F.2d 25 (2d Cir. 1989) ............................................................................ 9

<u>Allison v. Citgo Petroleum Corp.</u>,
    151 F.3d 402 (5th Cir. 1998) ....................................................................... 13

<u>B.H. v. Johnson</u>,
    715 F. Supp. 1387 (N.D. Ill. 1989) .............................................................. 2

<u>Baby Neal v. Casey</u>,
    43 F.3d 48 (3d Cir. 1994) ..................................................................... passim

<u>Brian A. v. Sundquist</u>,
    Civ. No. 3:00-0445 (M.D. Tenn. July 7, 2001) ............................................ 2

<u>Charlie and Nadine H. v. Whitman</u>,
    Civ. No. 99-3678 (D.N.J. March 7, 2002) .................................................... 2

<u>Child v. Beame</u>,
    412 F. Supp. 593 (S.D.N.Y 1976) ......................................................... 9, 12

<u>David C. v. Leavitt</u>,
    No. 93-C-206W, 1993 WL 764518 (D. Utah May 7, 1993) ......................... 2

<u>Eric L. v. Bird</u>,
    No. 91-376-M, 1993 WL 764420 (D. N.H. Dec. 16, 1993) ............................ 2

<u>Forbush v. J.C. Penney Co.</u>,
    994 F.2d 1101 (5th Cir. 1993) ...................................................................... 2

G.L. v. Zumwalt,
    564 F. Supp. 1030 (W.D. Mo. 1983)................................................................ 2

Gates v. Cook,
    234 F.3d 221 (5th Cir. 2000)........................................................................ 13

Gonzalez v. Reno,
    86 F. Supp.2d 1167 (S.D. Fla. 2000)............................................................. 9

In re Catfish Antitrust Litig.,
    826 F. Supp. 1019 (N.D. Miss. 1993) ........................................................... 7

J.B. v. Valdez,
    186 F.3d 1280 (10th Cir. 1999)..................................................................... 3

James v. City of Dallas,
    254 F.3d 551 (5th Cir. 2001)........................................................................ 6

Jeanine B. v. Thompson,
    877 F. Supp. 1268 (E.D. Wis. 1995)......................................................... 2, 12

Kenny A. v. Perdue,
    218 F.R.D. 277 (N.D. Ga. 2003) ............................................................... 2, 13

L.J. v. Massinga,
    699 F. Supp. 508 (D. Md. 1988) ............................................................... 2, 13

LaShawn A. v. Kelly,
    *990 F.2d 1319 (D.C. Cir. 1993) .............................................................. 2, 13

Lightbourn v. Cty. of El Paso,
    118 F.3d 421 (5th Cir. 1997)........................................................................ 3

Lynch v. Dukakis,
    719 F.2d 504 (1st Cir. 1983) ........................................................................ 2

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997)..................................................................... 2, 13

Mullen v. Treasure Chest Casino, LLC,
    186 F.3d 620 (5th Cir. 1999)................................................................... 3, 6

Nix v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers,
    479 F.2d 382 (5th Cir. 1973)...................................................................... 12

San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio,

188 F.R.D. 433 (W.D. Tex. 1999)............................................................ 3, 7, 12

Stewart v. Winter,
    669 F.2d 328 (5th Cir. 1982)........................................................... 3, 5

Wilder v. Bernstein,
    499 F. Supp. 980 (S.D.N.Y. 1980) .................................................. 2, 7, 8

## **Federal Statutes, Regulations, and Rules**

Federal Rules of Civil Procedure 17(c)................................................... 9

Federal Rules of Civil Procedure 23 ...................................................... 1, 14

Federal Rules of Civil Procedure 23(a)................................................... 2, 6, 14

Federal Rules of Civil Procedure 23(a)(1) .............................................. 2

Federal Rules of Civil Procedure 23(a)(3) .............................................. 6

Federal Rules of Civil Procedure 23(b)(2)............................................... 2, 12, 14

Federal Rules of Civil Procedure 23(g)................................................... 14

## **Mississippi Statutes**

Mississippi Code of 1972 § 43-15-5 *et seq.*............................................ 5

## **Treatises and Other Sources**

6A Charles A. Wright, et al., Federal Practice and Procedure § 1572 (1990) ............... 9

Newberg, Newberg on Class Actions § 4.11 (2d ed. 1985)........................... 12

I.    **PRELIMINARY STATEMENT**

Plaintiffs submit this memorandum of law in reply to Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification ("Defs.' Opp'n").

Despite Defendants' acknowledgment that Plaintiffs' Amended Complaint alleges "a complete systemic failure of the State to fulfill its responsibilities to its abused children" (Defs.' Opp'n at 5), Defendants oppose certification of a plaintiff class defined as "all children who are or will be in the legal and/or physical custody of DFCS [("Division of Family and Children's Services")]" (the "In-Custody Class") that seeks to redress these system-wide failures. In their Opposition, Defendants ignore Plaintiffs' citation to a plethora of cases in the Fifth Circuit and elsewhere in which similar classes alleging systemic violations of federal constitutional rights were certified. Instead, Defendants resort to improperly deriding Plaintiffs' claims on the merits, relying on factual distinctions that are irrelevant to the Plaintiffs' claims, and speculating about the effectiveness of the relief sought here.

Defendants' contention that "Plaintiffs do not challenge specific practices or procedures," (Defs.' Opp'n at 5), is belied by Plaintiffs' Amended Complaint, which alleges in detail how Defendants have failed to meet their constitutional obligations to care for and protect the abused and neglected children in their custody. Even if individual Plaintiffs are, to some degree, differently impacted by the violations alleged in the Amended Complaint, Plaintiffs do not seek redress for individual deprivations as Defendants incorrectly assert. Rather, Plaintiffs seek systemic relief that will remedy the unconstitutional conditions and practices to which all children in Defendants' custody are subjected. It is well-settled that the Rule 23 requirements for class certification are satisfied by such challenges, especially where, as here, the Amended Complaint prays for declaratory and injunctive relief, rather than damages. Mississippi's DFCS is not somehow uniquely immune to the systemic reform sought in this action to protect its wards from unconstitutional conditions, as blithely suggested by Defendants. (See Defs.' Opp'n at 3, 4, 17).

For these reasons, and for the reasons set forth below, this case readily satisfies the prerequisites for class certification under Federal Rules of Civil Procedure 23(a) and (b)(2). Since class certification is necessary and appropriate, Plaintiffs respectfully submit that it should be granted.

## II.    PLAINTIFFS HAVE SATISFIED EACH OF THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULES 23(a) AND 23(b)(2)

As made clear in Plaintiffs' Memorandum in Support of its Motion ("Mot."), courts in the Fifth Circuit have repeatedly certified similar classes under Federal Rules of Civil Procedure 23(a) and (b)(2) in cases alleging systemic violations of federal constitutional rights.  (See Mot. at 11-12).  Moreover, the overwhelming majority of federal courts that have considered this issue in child welfare reform litigation have granted class certification.  (See Mot. at 13-15).[1]

Defendants concede that Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).  (See Defs.' Opp'n at 5).  Defendants, however, contend that Plaintiffs have failed to satisfy the commonality, typicality, adequacy, and Rule 23(b)(2) requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b)(2).  These contentions, as set forth below, are plainly without merit.

### A.    There Are Questions of Law and Fact Common to the Named Plaintiffs and the In-Custody Class.

The test for commonality is not demanding.  Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993).  Commonality is demonstrated "'where there is at least one issue, the

---

[1]    See, e.g., Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 822 n.7 (1977); Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997); Baby Neal v. Casey, 43 F.3d 48, 53-65 (3d Cir. 1994); LaShawn A. v. Kelly, 990 F.2d 1319, 1326 (D.C. Cir. 1993); Lynch v. Dukakis, 719 F.2d 504, 506 n.1 (1st Cir. 1983); Kenny A. v. Perdue, 218 F.R.D. 277, 305 (N.D. Ga. 2003); Charlie and Nadine H. v. Whitman, Civ. No. 99-3678 (D.N.J. March 7, 2002) (attached at Exhibit B); Brian A. v. Sundquist, Civ. No. 3:00-0445 (M.D. Tenn. July 7, 2001) (attached at Exhibit C); Jeanine B. v. Thompson, 877 F. Supp. 1268, 1288 (E.D. Wis. 1995); Eric L. v. Bird, 1993 WL 764420 at *1 (D.N.H. Dec. 16, 1993) (attached at Exhibit D); David C. v. Leavitt, 1993 WL 764518 at *2 (D. Utah May 7, 1993) (attached at Exhibit E); B.H. v. Johnson, 715 F. Supp. 1387, 1389 (N.D. Ill. 1989); L.J. v. Massinga, 699 F. Supp. 508, 510 (D. Md. 1988); G.L. v. Zumwalt, 564 F. Supp. 1030, 1031 (W.D. Mo. 1983); and Wilder v. Bernstein, 499 F. Supp. 980, 992  (S.D.N.Y. 1980).

resolution of which will affect all or a significant number of the putative class members.'" Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999) (quoting Lightbourn v. Cty. of El Paso, 118 F.3d 421, 425-26 (5th Cir. 1997)).  It is well-established that "[a]s long as class members are allegedly affected by a defendant's general policy, and the general policy is the crux or focus of the litigation, the commonality prerequisite is satisfied."  San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio, 188 F.R.D. 433, 442-43 (W.D. Tex. 1999).

Unable to distinguish the myriad cases, including the nine Fifth Circuit cases cited in Plaintiffs' Motion in which courts certified classes in cases involving alleged systemic violations of federal constitutional rights, Defendants instead cite two dissimilar and easily distinguishable cases: J.B. v. Valdez, 186 F.3d 1280 (10th Cir. 1999),[2] and Stewart v. Winter, 669 F.2d 328 (5th Cir. 1982).  In J.B. v. Valdez, the plaintiffs sought "structural reform of New Mexico's system for evaluating and treating children with mental and developmental disabilities in its custody." 186 F.3d at 1283.  The plaintiffs in that case, however, challenged several separate and distinct agencies in New Mexico, including the mental health system, the public education system, and the child welfare system, with "'no one statutory or constitutional claim common to all named Plaintiffs and putative class members.'"  Id. at 1283-85, 1289 (quoting district court).  It was thus not an abuse of discretion for the court to have refused to certify the single class proposed by the plaintiffs.  See id. at 1289.

That is clearly not the situation here.  In this case, Plaintiffs allege the systemic failure of a single state agency, DFCS, to meet its federal constitutional obligations to the children in its custody in violation of their substantive due process rights.  All of the putative In-Custody Class members are children in the custody of the Defendants; all endure unconstitutional deficiencies and delays in services that they desperately need; and all complain of constitutional injuries and

---

[2]    Despite Defendants' assumption to the contrary, counsel to Plaintiffs were not involved, directly or indirectly, in the prosecution of the claims at issue in J.B. v. Valdez.  (See Opposition at 7).

the risk of injuries caused by the uniform policies and practices of the Defendants, including dangerously high caseloads, inadequate staffing,[3] an insufficient number and array of foster homes and other placement options, and a lack of necessary medical, dental, and mental health services. (See Amended Complaint at ¶¶142-188).

There can be no doubt that such allegations—all of which must be accepted as true at this stage of the proceedings[4]—raise common questions of fact and law regarding the scope of Defendants' duties under the Constitution and whether Defendants' current policies and practices fulfill these duties. For example, questions of law common to all members of the In-Custody Class include:

- whether Defendants' actions and inactions violate Class Plaintiffs' rights under the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution to be safe from harm while in state custody; and

- whether Defendants' actions and inactions violate Class Plaintiffs' rights under the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution by denying them necessary health services.

(Amended Complaint at ¶204; Mot. at 19). Corresponding common questions of fact include:

- whether Defendants fail to provide children in their custody with safe, licensed foster care placements;

- whether Defendants fail to provide children in foster care with required services necessary to keep them safe and to prevent them from deteriorating physically, psychologically, or otherwise, while in custody; and

- whether the DFCS staffing shortage endangers children in DFCS custody.

---

[3]   "Defendants admit that DHS is understaffed." (Defendants' Response at 1).

[4]   The United States Supreme Court has held that in determining whether class certification is warranted a district court must accept the allegations of the complaint as true. Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974). Defendants' repeated contentions that Plaintiffs' complaint allegations "make[] no sense, and [are] not true," are "inaccurate," and "ridiculous" (Defs.' Opp'n at 5, 10, 16) are an improper attempt to argue the merits of Plaintiffs' claims in complete disregard of this command.

(Amended Complaint at ¶¶142-170, 178-184; Mot. at 18).

The second case cited by Defendants, <u>Stewart v. Winter</u>, is likewise inapplicable. In that case, 18 past or present inmates in county jails throughout Mississippi brought an Eighth Amendment suit against the State of Mississippi, all of its 82 counties, and the officials thereof. These inmates sought certification of a class of "all persons who have been or will be incarcerated in the county jails of any of the 82 counties in Mississippi." <u>Stewart</u>, 669 F.2d at 329. The Fifth Circuit refused to certify the proposed class on commonality grounds. <u>Id.</u> 335. It reasoned that because Mississippi law required each county to independently erect and maintain the jails, determining whether each jail's conditions and circumstances violated the Eighth Amendment were separate inquiries. <u>Id.</u> at 336. Thus, the inmate plaintiffs had "<u>identified no practice or condition common to all the jails</u> which would allow the district court to maintain the class action . . . ." <u>Id.</u> (emphasis added).

Here, however, the Named Plaintiffs challenge a unitary, statewide system. (<u>See</u> Amended Complaint at ¶¶2, 27-29, 37, 39-42). As admitted by Defendants, DFCS is a state agency that provides foster care and adoption placement services for children in its custody, on a statewide basis, according to generally applicable policies promulgated pursuant to a State enabling statute. (<u>See id.</u>; Defs.' Opp'n at 1); <u>see also</u> Miss. Code of 1972 § 43-15-5 *et seq.* Accordingly, resolution of Plaintiffs' constitutional claim does not require an individualized inquiry into "a vast network of institutions." <u>Baby Neal v. Casey</u>, 43 F.3d 48, 62 (3d Cir. 1994) (failure to certify child welfare class subject to unitary system was abuse of discretion). It simply requires an inquiry into the DFCS policies, procedures, and practices to which all the putative class members are subjected. <u>See id.</u> at 62 (noting that because the plaintiffs challenged a unitary system, the question of liability could be evaluated relative to applicable generalized standards).

Defendants also contend that, even if Plaintiffs have alleged system-wide failure, "it is highly unlikely that the unique combinations of the actions of [the Defendants] would consistently violate the constitutional and statutory rights of all of the class members." (Defs.'

Opp'n at 9).  In so doing, Defendants again ignore the allegations of the Amended Complaint and betray a basic misunderstanding of the commonality standard.  As noted in <u>Baby Neal</u>, "the commonality standard requires only that a putative class share either the injury or the <u>immediate threat</u> of being subject to the injury."  43 F.3d at 60 (emphasis added);[5] <u>see</u> <u>generally</u> <u>O'Shea v. Littleton</u>, 414 U.S. 488, 494 (1974) (named plaintiffs purporting to represent a class must establish some <u>threatened</u> or actual injury).  Since all of the Plaintiff children, <u>irrespective of their varying needs and complaints</u>, allege that they continue to be at risk of the same constitutional harms by virtue of their custodial status, the commonality standard is clearly satisfied here.  (<u>See</u> Amended Complaint at ¶204).  For example, all children in DFCS custody are at risk of being moved at any time by DFCS into an inappropriate, dangerous, or unsupervised foster home.  (<u>See</u> Amended Complaint at  ¶¶39, 142-148).

      **B.**      **The Named Plaintiffs' Claims Are Typical of Those of the In-Custody Class.**

Rule 23(a) requires that the claims of the Named Plaintiffs be typical of the claims of the putative class.  Fed. R. Civ. P. 23(a)(3).  "Like commonality, the test for typicality is not demanding."  <u>Mullen</u>, 186 F.3d at 625.  "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual difference will not defeat typicality."  <u>James v. City of Dallas</u>, 254 F.3d 551, 571 (5th Cir. 2001).

Where, as here, "it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members."  <u>In re Catfish Antitrust Litig.</u>, 826 F. Supp. 1019,

---

[5]    Because <u>Baby Neal</u> is particularly unfavorable to their position, Defendants strain to distinguish it by noting that the plaintiffs in <u>Baby Neal</u> challenged the child welfare system of a city (<u>i.e.</u>, Philadelphia), rather than, as here, an entire state.  (Defs.' Opp'n at 9).  This is not a material distinction.  On the issue of commonality, the Third Circuit relied on the fact that the plaintiffs challenged a unitary child welfare system, which in Philadelphia was county-based.  <u>Baby Neal</u>, 43 F.3d at 60.  The <u>Stewart</u> court did not, as Defendants suggest, criticize this approach.  The dispositive issue in <u>Stewart</u> was the plaintiffs' failure to identify a practice common to all 82 independently run county-based jails.  As in <u>Baby Neal</u>, and clearly distinct from <u>Stewart</u>, Plaintiffs challenge a unitary child welfare system, which in Mississippi is admittedly state-based.

1035 (N.D. Miss. 1993). Despite Defendants' unsupported assertions to the contrary, the Named Plaintiffs challenge the same policies, procedures, and practices that give rise to the In-Custody Class members' legal claims. Indeed, Plaintiffs' central allegation is that Defendants have failed to put into place a system that delivers appropriate services, care, and treatment to the children in their custody, regardless of their individual needs. (See Amended Complaint at ¶¶142-192, 204). Thus, even if the Named Plaintiffs do not suffer from precisely the same deprivations or deficiencies as each of the putative In-Custody Class members, all face the same constitutional harms by virtue of their custodial status. See Baby Neal, 43 F.3d at 63. Therefore, "any factual difference concerning the specific manner in which different class members may have been injured is of no consequence." City of San Antonio, 188 F.R.D. at 443.

Nevertheless, Defendants reason that because each child in DFCS custody requires individualized services and treatment, no two children in its custody can have the same legal claim. (Defs.' Opp'n at 11). This conclusion, however, has no basis in law. Despite Defendants' contention to the contrary, there is no requirement that the factual basis for all the claims of all members of the putative class be identical. See In re Catfish Antitrust Litig., 826 F. Supp. at 1034-35; Wilder v. Bernstein, 499 F. Supp. 980, 992 (S.D.N.Y. 1980). Defendants' self-evident assertion that each child and his or her experiences are different is immaterial where all Plaintiffs allege that system-wide deficiencies cause them constitutional harm despite their individual situations. Defendants' unattributed factual submission regarding their version of the facts from the Named Plaintiffs' case records, submitted as Exhibit "1" [sic] to their Opposition, is thus irrelevant. It is also an improper attempt to argue the merits of Plaintiffs' claims and should therefore be disregarded.[6] See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 177 (1974) ("[N]othing in either the language or history of Rule 23 . . . gives a court any authority to

---

[6]    Plaintiffs have filed a Motion to Strike Defendants' Exhibit 1 and to Place Under Seal. In addition to being immaterial at this stage of the proceedings, Defendants' unattributed factual submission is improperly before the Court. It also betrays confidential information pertaining to the Named Plaintiffs, including their current street addresses and the names of their foster parents, protected by this Court's August 5, 2004 Confidentiality Order.

conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

Similarly unpersuasive is Defendants' argument that the typicality requirement is unmet because the Named Plaintiffs and the members of the In-Custody Class have no "crucial" characteristics, such as race, religion, age, or pre-custody circumstances, in common.  (Defs.' Opp'n at 12).  Although Defendants offer <u>Wilder</u>, 499 F. Supp. 980, as support for their position, they do so based on a misunderstanding of that case.

In <u>Wilder</u>, plaintiffs alleged discrimination by the City of New York on the basis of race and religion in the provision of child welfare services, and sought certification of a class of all black Protestant children.  <u>Id.</u> at 986.  It did not hold—notwithstanding Defendants' suggestion to the contrary—that all members of a class, regardless of the claims at issue, must share the same racial and religious background.  In fact, with specific regard to typicality and the equal protection claim at issue, the court rejected the very arguments made by Defendants here and held:

> <u>The individual differences among the plaintiffs and between the plaintiffs and other class members do not affect the plaintiffs' central claim</u> that all members of the class have been denied placement because of their race and religion and <u>not because of their individual circumstances</u>.

<u>Id.</u> at 992 (emphasis added).  Characteristics "crucial" to maintenance of a class action are thus only those that are directly related to the claims asserted.  Plaintiffs here assert that Defendants have acted without professional judgment and with deliberate indifference to the constitutional rights of all children in their custody because the agency lacks the capacity to determine and meet their individual needs, whatever they may be.  (<u>See</u> Amended Complaint at ¶¶142-192, 204).  Accordingly, the only relevant "crucial" characteristic here is the fact that all putative class members are in DFCS custody and therefore subject to a system unable to meet its constitutionally mandated duty to keep them free from harm.

Because the grievances, claims, and relief sought by the Named Plaintiffs are similar to the grievances, claims, and relief sought by the unnamed Class members, the typicality requirement is plainly met.

**C.    The Named Plaintiffs Adequately Represent the Proposed In-Custody Class.**

Defendants concede that Plaintiffs' counsel are experienced in class litigation and competent to protect the interests of the In-Custody Class.   (See Defs.' Opp'n at 13). Defendants, however, contend that "Plaintiffs have failed to meet their burden of establishing that the Next Friends are adequate representatives of the proposed class of children."  (Defs.' Opp'n at 15).

Rule 17(c) of the Federal Rules of Civil Procedure provides that an infant may sue by his "guardian ad litem" or "next friend."  It does not describe who qualifies as a "next friend."  As a consequence, Rule 17(c) has been construed to embody a "good faith" standard.  See Child v. Beame, 412 F. Supp. 593, 599 (S.D.N.Y 1976); see also Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist., 873 F.2d 25, 30-31 (2d Cir. 1989); Gonzalez v. Reno, 86 F. Supp.2d 1167, 1185 (S.D. Fla. 2000); 6A Charles A. Wright, et al., Federal Practice and Procedure § 1572, at 513 (1990) ("There are no special requirements for the person suing as next friend.") (attached as Ex. F.).  So construed, a next friend may be "anyone who has an interest in the welfare of an infant who may have a grievance or a cause of action."  Child v. Beame, 412 F. Supp. at 599.

Defendants' attempt to impugn the good faith, integrity, or appropriateness of the four next friends who represent the custodial Named Plaintiffs by calling them "uninterested and inexperienced" is completely unfounded.  (Defs.' Opp'n at 16).[7]  This is not a case where the next friends have demonstrated little concern or knowledge about the children they represent as

---

[7]    Defendants specifically challenge only two of the four next friends to the custodial Named Plaintiffs. (See Defs.' Opp'n at 15).  The third challenged next friend, Sylvia Forster, does not even represent any of the eight Named Plaintiffs in DFCS custody.   (See Amended Complaint at ¶¶17-18).

claimed by Defendants.  James D. Johnson is guardian ad litem for two of the children, and each of the next friends has a specific, personal connection with each of the children represented.

James D. Johnson serves as guardian ad litem for both Olivia Y. and John A. through the Mississippi Youth Court.  (See Dep. of James D. Johnson, Esq., 21:4-23).[8]  As court-appointed guardian ad litem for Olivia Y. and John A., James Johnson has already been representing these Named Plaintiffs' interests to the satisfaction of the state court.  His representation in this case is thus specifically authorized by Rule 17(c).

Next friend Clara Lewis, a long-time foster and adoptive parent in Mississippi, is Jamison J.'s former foster parent and is Jamison's biological sister's adoptive parent.  Clara Lewis has known Jamison for over a decade, has always stayed in touch with him, and is well aware of where he is.  (See Dep. of Clara Jean Lewis, 8:4-5; 9:2-16; 13:5-19; 17:5-17, 20:21-25; 36:11-15).  She testified to the following:

Q:  Okay.  Have you spoken to [Jamison] about this litigation?

A:  Yes.

***

Q:  Okay.  Well, was there some event or some act that caused you to become interested in the lawsuit?

A:  I've been a foster parent for years and I have seen these children [that I have had in my home] go through terrible turmoil and it's not right.

***

Q:  Okay.  So you decided to sue on behalf of [Jamison] because of what you had seen in the past?

A:  Right.

---

[8]    Plaintiffs have not submitted the next friends' deposition transcripts as an exhibit herewith as they reveal confidential individually-identifying information regarding the minor Named Plaintiffs that is protected by this Court's August 5, 2004 Confidentiality Order.  Should the Court need to consult the actual transcripts, Plaintiffs will provide them, but request leave of the Court pursuant to Uniform Local Rule 83.6 to file them under seal.

Q:  With your other children?

A:  With them and then what has happened to him.

(Dep. of Clara Jean Lewis, 35:14-16; 44:15-20; 44:25-45:5).

Next friend Sharon Scott is a family friend of Cody B.'s former foster parent and helped care for Cody for approximately 18 months.  (See Dep. of Sharon Scott, 7:21-25; 14:16-15:4; 18:18-23; 20:4-21).  She testified to the following:

Q:  Okay.  And what was the nature of that contact; how often did you see [Cody B.]?

A:  Oh man, every day.  I mean, I always wanted a boy, so I was crazy about him. I mean, here it is, I've got two girls.  And he's just an every day thing.  I would go get him from the baby sitter sometimes.  I'd call and say, "Hey, is it all right that I pick him up?  He'll be at my house when you get off."  Saturdays, we might even keep him overnight.  [. . .]  It's just, you know, one of those things, you get attached to a child.  And we very much got attached to this child, so.

(Dep. of Sharon Scott, 35:19-36:6).  While it is true that Sharon Scott does not know where Cody B. has since been moved by DFCS, it is not for lack of interest.  She testified further as follows:

Q:  Do you know where he is now?

A:  No ma'am.  I actually don't know where he is now.  Like I said, I have tried to call the Department of Human Services and check on him, but if – first thing they ask you, "Who are you; what relative are you to this child."  And they won't give out that information to me.  So I've tried on several occasions since I've seen him on March 5th to try and see what was going on with him and how's he's doing. You can't get that information out of DHS.

(Dep. of Sharon Scott, 22:15-25).

The same holds true for next friend Zelatra W. who is Mary, Tom, Matthew, and Dana W.'s aunt.  She was a licensed foster care provider, cared for the children in her home for two and a half years before they were removed by DFCS, and has since tried unsuccessfully to get current information on her nieces and nephews.  She remains deeply concerned that the children have been needlessly separated from each other and that they are not receiving adequate health services and treatment.  (See Amended Complaint at ¶¶24, 98, 102; Dep. of Zelatra W., 35:18-22; 81:9-14, 93:4-6, 93:14-94:9, 96:20-97:20, 100:1-101:4).  She testified as follows:

11

Q:  OK.  And you have not heard from them, gotten a telephone call from them since?

A:  DHS will not allow them to call me.  I've asked.  And I have asked to call them.

(Dep. of Zelatra W., 99:12-18).

As reflected in their depositions, the Named Plaintiffs' next friends have demonstrated a specific personal connection and good faith interest in the Named Plaintiffs' welfare and should be allowed to prosecute this action on the Named Plaintiffs' behalf.  Defendants certainly should not be able to defeat the next friends' representation as a result of Defendants' unwillingness to release information about the Named Plaintiffs in their custody.  As noted by the <u>Beame</u> court, "[t]he right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to their very custodians."  412 F. Supp. at 599.

### D.     <u>Plaintiffs Have Satisfied the Requirements of Rule 23(b)(2).</u>

Class certification is appropriate where a defendant has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate.  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is almost automatically satisfied in actions such as this one where the relief sought is primarily injunctive.  <u>See</u> <u>Nix v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers</u>, 479 F.2d 382, 386 (5th Cir. 1973); <u>City of San Antonio</u>, 188 F.R.D. at 444; <u>Baby Neal</u>, 43 F.3d at 58.  Indeed, "[c]ivil rights cases seeking broad declaratory or injunctive relief for a large and amorphous class, such as the [child welfare class] in this case, fall squarely into the category of class actions authorized by this section."  <u>Jeanine B. v. Thompson</u>, 877 F. Supp. 1268, 1288 (D. Wis. 1995) (<u>citing</u> 1 H. Newberg, Newberg on Class Actions § 4.11, at 291 (2d ed. 1985) (attached as Ex. F.).

Defendants admit that Plaintiffs have alleged that "Defendants have a policy and practice of not meeting the basic needs of the children in state custody and keeping them safe from harm," but nevertheless contend that it "is ridiculous for the Plaintiffs to even assert or expect this Court to entertain" this allegation.  (Defs.' Opp'n at 16).  Here again, Defendants improperly

12

seek to challenge the merits of Plaintiffs' allegations, which must be accepted as true at this stage of the proceedings. See Eisen, 417 U.S. at 178.

Defendants also contend that since they have not acted on grounds generally applicable to the class, Plaintiffs necessarily allege differing harms requiring individual remedies, and making no single injunction appropriate for the entire class. (See Defs.' Opp'n at 16). As set forth above, however, the Named Plaintiffs are seeking relief from Defendants' systemic failures to provide a broad range of legally mandated and constitutionally required services. (See Amended Complaint at ¶¶204, Prayer for Relief ¶¶C(4) & E). These failures generally affect all members of the In-Custody Class, and, accordingly, the declaratory and injunctive relief sought is intended to have class-wide scope and effect, just as the laws enunciating Defendants' duties apply to all the children in Defendants' custody. "Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998). This is because such relief may "be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." Id.

Finally, Defendants suggest that the "extensiveness of the failures alleged by Plaintiffs" would prevent the Court from being able to craft class-wide injunctive relief. (Defs.' Opp'n at 17). As explicitly recognized in Baby Neal, however, this Court is capable of fashioning precise orders to address Defendants' specific, system-wide deficiencies alleged by Plaintiffs and then monitoring compliance with respect to these orders. Baby Neal, 43 F.3d at 63-64. Such orders have not been found unworkable or unenforceable as they are focused on Defendants' class-wide practices, not Plaintiffs' individual cases. See id.; Gates v. Cook, 234 F.3d 221, 225-227 (5th Cir. 2000); Marisol A. v. Guiliani, 126 F.3d 372, 378 (2d Cir. 1997); LaShawn A. v. Kelly, 990 F.2d 1319, 1326 (D.C. Cir. 1993); Kenny A. v. Perdue, 218 F.R.D. 277, 302 (N.D. Ga. 2003); L.J. v. Massinga, 699 F. Supp. 508, 510 (D. Md. 1988).

## III.    CONCLUSION

As set forth above and in the Motion previously filed, this case satisfies all of the prerequisites to class certification under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.  Accordingly, pursuant to Rule 23, Plaintiffs respectfully request that this court enter an order certifying this action as a class action for all purposes, with the Class defined as: "all children who are or will be in the legal and/or physical custody of the Division of Family and Children's Services."  Plaintiffs' counsel further request an order appointing them as class counsel pursuant to Rule 23(g).

RESPECTFULLY SUBMITTED, this the 31st day of January, 2005.

s/ Melody McAnally
W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, MS  39201
(601) 948-8000

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
(601) 355-4013

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
Corene Kendrick (MBN 43989 *pro hac vice*)
CHILDREN'S RIGHTS
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
Eric Manne (MBN 43988 *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

*PLAINTIFFS' COUNSEL*

14

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

NONE

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

Betty A. Mallett, Esq.
McGlinchey Stafford, PLLC
200 South Lamar Street, Suite 1100
Jackson, MS 39201

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, MS 39201

*Attorneys for Defendants*

s/ Melody McAnally