NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHARLIE and NADINE H., et al.,

    Plaintiffs,

v.

CHRISTINE TODD WHITMAN, et al.,

    Defendants.

Civ. No. 99-3678 (GEB)

MEMORANDUM OPINION

MAR 7 2002

WILLIAM T. WALSH
CLERK

### BROWN, District Judge

This matter comes before the Court upon the plaintiffs' Third Motion for Class Certification, pursuant to Fed. R. Civ. P. 23(a) and (b)(2). This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331; and having considered the submissions and arguments of the parties, grants plaintiffs' motion.

### I. BACKGROUND

The facts and procedural history of the instant lawsuit have been thoroughly set forth in prior Opinions of this Court. *See Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000); Memorandum Opinion filed September 18, 2000 ("9/18/00 Mem. Op."). Therefore, only the facts and arguments necessary to the instant motion practice will be reviewed herein. In the most recent Memorandum Opinion in this matter, this Court determined that the class plaintiffs proposed for certification was overly broad in light of the limited surviving claims. *See* Memorandum Opinion filed June 28, 2001 ("6/28/01 Mem. Op.") at 4-5, 16. This Court denied plaintiffs' motion and granted them leave to file a new motion for class certification of two



EXHIBIT B

smaller classes as defined in that Memorandum Opinion. *See id.* at 15-16. Plaintiffs then filed the instant "Third Modified Motion for Class Certification." Plaintiffs' Brief in Support ("Pls.' Br.") at 1. As discussed in this Court's 6/28/01 Memorandum Opinion, only two of plaintiffs' original allegations are currently at issue: (1) the substantive due process claim on behalf of children who are involuntarily in state custody; and (2) plaintiffs' claim under the Multiethnic Placement Act ("MPA"). *See* 6/28/01 Mem. Op. The Court will examine plaintiffs' newly proposed classes based upon these two remaining claims.

## II. DISCUSSION

Plaintiffs seek class certification under Fed. R. Civ. P. 23(a) and (b)(2).

In defining class actions, Fed. R. Civ. P. 23(a) initially requires satisfaction of four elements:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the representative class, (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements, more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, "'are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'" *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). Once these four pre-requisites have been established, plaintiffs must also demonstrate compliance with one of the requirements of Fed. R. Civ. P. 23(b). *See Baby Neal*, 43 F.3d at 58. The burden is on plaintiffs to demonstrate that all four requisites for Rule 23(a) and at least one part of 23(b), in this case 23(b)(2), have been met. *See Morisky v. Public Service Electric and Gas Co.*, 111 F. Supp. 2d

2

493, 499 (D.N.J. 2000). In addition, the moving party must identify an appropriate proposed class. *See In re School Asbestos Litig.*, 56 F.3d 515, 519 (3d Cir. 1995). The proposed class must be adequately defined so individual class members are readily identifiable. *See id.* Class certification should not be granted where membership in the class can only be determined by a mini-trial on the merits of each case. *See Froman v. Data Transfer Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995). Furthermore, a proposed class definition must not be overly broad. *See Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000). Before certifying a class, courts must undertake "a rigorous analysis" to ensure that the proposed class and the named representatives satisfy each of the prerequisites to class certification. *See Morisky*, 111 F. Supp. 2d at 499 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). However, in a motion for class certification, the merits of the case are not at issue. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Hawker v. Consovoy*, 198 F.R.D. 619, 624 (D.N.J. 2001).

In accord with the Court's Memorandum Opinion regarding class certification, plaintiffs now propose two smaller classes of children in the custody of the Division of Youth and Family Services ("DYFS"), with slight modifications. Plaintiffs propose the certification of classes consisting of: (1) all children who are or will be in the involuntary custody of New Jersey DYFS; and (2) all African-American and Hispanic children who are or will be in the custody of New Jersey DYFS, and who have been, or are subject to the risk of being denied or delayed adoption or placement in a proper foster home based on their race, color or national origin.[1] *See* Pls.' Br.

---

[1] Defendants contest the inclusion of future class members in the proposed class definitions. *See* Defendants' Opposition at 4-6. However, potential future class members are often included in situations where declaratory or injunctive relief is sought. *See Smith v. First Union Mortgage Corp.*, No. Civ. A. 98-5360, 1999 WL 509967, at *3 (E.D. Pa. July 19, 1999). Defendants concede that any relief afforded would be applicable to all foster children even if they

3

at 2. Plaintiffs contend that these newly proposed classes satisfy the requirements for certification. *See id.* Defendants argue that plaintiffs' proposed classes impose an unreasonable extension on the classes suggested by the Court and that the proposed classes remain overly broad and ill-defined. *See* Defendants' Opposition to Class Certification ("Defs.' Opp'n.") at 1.

A. Federal Rule of Civil Procedure 23(a) Requirements

1. Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The exact size of a class need not be known, plaintiffs must only show that the proposed class is sufficiently large to meet the numerosity requirements. *See Collier v. Montgomery County Housing Auth.*, 192 F.R.D. 176, 182 (E.D. Pa. 2000). In determining numerosity, the number of potential class members is not, in itself, determinative. *See Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993). The determination is very fact-specific; courts have granted class certification to a group of as few as 20 members, but have denied class certification to groups ranging from 38 to 123 members. *See id.* at 74. Furthermore, when potential class members are able to protect and defend their own interests, class certification is less appropriate. *See id.*

a. Substantive Due Process Class

Plaintiffs argue that the newly proposed substantive due process class meets the numerosity requirements because there are approximately 9,250 children in DYFS custody, and conclude that "[i]t is clear that thousands of these children are placed involuntarily." Pls.' Br. at

---

are not in the defined class. *See* Defendants' Opposition at 5. As plaintiffs do not rely upon the inclusion of these unidentified future members to satisfy the class certification criteria, there is not a compelling reason to exclude them from the class definitions at this time.

4

9. Plaintiffs make this assumption because defendants have stated that DYFS does not maintain statistics on the number of children who are involuntarily in the custody of the organization. Thus plaintiffs are unable to determine the exact number of children who are involuntarily in custody. *See id.* at 10-11. Defendants respond that plaintiffs cannot rely upon conclusory or speculative allegations that joinder is impracticable, and that they have not shown numerosity.[2] *See* Defs.' Opp'n. at 7. Plaintiffs reply that defendants do not dispute that there are thousands of children who are involuntarily in DYFS custody, and children included in the class will be readily identifiable. *See* Plaintiffs' Reply Brief ("Pls.' Reply") at 5. Plaintiffs are not obliged to define the exact class size, but must simply demonstrate that the class is large enough to meet the numerosity requirement. *See Collier*, 192 F.R.D. at 182. As it is undisputed that there are thousands of children in the involuntary custody of DYFS, it appears that sufficient numerosity of the substantive due process class has been established.

### b. Multiethnic Placement Act Class

Plaintiffs also argue that the proposed class of plaintiffs asserting a Multiethnic Placement Act ("MPA") claim satisfies the numerosity requirement. *See* Pls.' Br. at 11. Plaintiffs argue that defendants have identified more than 6,500 African-American and Hispanic children in foster care, and that all of those children are subject to the risk of suffering a delay or denial of adoption based on their race, color, or national origin due to defendants' alleged policies. *See id.* Defendants respond that plaintiffs have not alleged a system-wide policy of

---

[2] Defendants' arguments in this regard are interesting because they first contend that the proposed class is overbroad, and then argue that plaintiffs have not demonstrated numerosity. *See* Defs.' Opp'n. at 7. While the two concepts are not mutually exclusive, it does stand to reason that if there are too many plaintiffs included in the definition, at a minimum, the proposed class would satisfy the numerosity requirement.

delaying or denying adoptions based on the child's race. *See* Defs.' Opp'n. at 16. Defendants also contend that plaintiffs have failed to identify any children other than the named plaintiffs who have allegedly suffered such a delay or denial. *See id.* Finally, defendants argue "recent cases suggest that DYFS does not delay of [sic] deny the placement of [sic] adoption of children based upon race." *Id.* Plaintiffs reply that the complaint specifically alleges a system of ongoing discriminatory practices and policies of racial matching in foster and adoptive placements. *See* Pls.' Reply at 9 (quoting Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 158). Plaintiffs also object to defendants' attempt to test the merits of their claims in opposing this motion for class certification. *See id.* at 8 n.5.

The amended complaint alleges that DYFS engages in a practice of discriminatory placement which results in the delay or denial of adoptions and foster care placements. *See* Am. Compl. ¶¶ 97, 158, 198. Plaintiffs have alleged that all African-American and Hispanic children in DYFS custody are subject to claimed discriminatory policies and practices within that organization. *See id.* At this time, the number of African-American and Hispanic children subject to the risk of such practices appear to satisfy the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) does not require that all issues presented be common, only that common questions exist. *See Collier*, 192 F.R.D. at 182. This requirement can be satisfied if the named defendants "share at least one question of fact or law with the grievances of the prospective class." *Baby Neal*, 43 F.3d at 56. There is no requirement that all putative class members share identical claims, and because this requirement may be satisfied by a single common issue, it is

6

easily met. *See id.* Further, putative class members may assert "a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." *Id.* (emphasis in original).

### a. Substantive Due Process Class

Plaintiffs once again liken their position to that of the plaintiffs in *Baby Neal*, and argue that all of the children in this proposed class share the common constitutional injury of a pattern of unsupervised, untrained and overworked caseworkers. *See* Pls.' Br. at 12. Plaintiffs claim that this pattern results in deficiencies of a constitutional dimension such as an insufficient number of safe foster home placements as well as inadequate physical and mental health care for children in the agency's custody. *See id. citing* Am. Compl. ¶¶ 164-217. Plaintiffs argue that this pattern "subjects the proposed class to potential violations of their substantive due process rights to be protected from harm" while in the involuntary care of the State, thereby establishing commonality. *Id.* at 12.

Defendants respond that plaintiffs' alleged "systemic violations" do not create commonality among the proposed class. *See* Defs.' Opp'n. at 8. They further argue that even though the whole class does not need to suffer an identical injury; plaintiffs are not excused from establishing that class members have suffered some type of injury.³ *See id.* Defendants attempt

---

³ This argument relies upon the precedent addressing standing discussed in *Lewis v. Casey*, 518 U.S. 343 (1996). The Supreme Court in that case vacated an injunction crafted by the District Court and affirmed by the Ninth Circuit. *See Lewis*, 518 U.S. at 356. The injunction granted broad relief at the law libraries in the defendant prisons. *See Lewis*, 518 U.S. at 346-47. The Supreme Court held that such a broad injunction was unwarranted because the District Court had found only two isolated incidents of actual injury requiring relief under *Bounds v. Smith*, 430 U.S. 817. *See id.* However, *Lewis* does not stand for the proposition, as defendants argue, that each member of a potential class must demonstrate actual injury for standing purposes before a class may be certified. Rather, the Supreme Court held that the remedy imposed was beyond

7

to distinguish *Baby Neal*, solely on the fact that statutory as well as constitutional violations were at issue in that case. *See id.* at 10. Finally, defendants argue that plaintiffs' proposed class lacks commonality because it is "a farfetched contention: that all children involuntarily placed with DYFS have suffered an actual constitutional injury." *Id.* (emphasis in original). Plaintiffs reply that the questions of law and fact among the proposed class based upon the continual failure of DYFS to adequately provide for the children in its custody establish commonality. *See* Pls.' Reply at 5.

This Court has already rejected defendants' attempt to distinguish the *Baby Neal* case because it involved both statutory and constitutional allegations. *See* 6/28/01 Mem. Op. at 8-9. In the prior Memorandum Opinion denying class certification of one large class, this Court opined that a class such as the one certified in *Baby Neal* would be inappropriate because there are substantially fewer claims at issue in the instant matter than in *Baby Neal*. *See id.* at 9. Contrary to defendants' argument, Rule 23 does not require that all plaintiffs actually suffer the same injury. *See Baby Neal*, 43 F.3d at 57. Rather, "the commonality standard requires only that a putative class share either the injury or the immediate threat of being subject to the injury."[4] *Id.* at 60.

Plaintiffs allege that all children in the involuntary custody of DYFS are subject to the immediate threat of suffering due process violations of the State's duty to keep them free from

---

what was necessary to provide relief to the injured plaintiffs. *See id.* at 360.

[4] The Court is also not persuaded by defendants' insinuation that the Third Circuit incorrectly interpreted its own precedent while discussing *Hassine v. Jeffes*, 846 F.2d 169, 178 (3d Cir. 1988), in the context of the *Baby Neal* class certification decision. *See* Defs.' Opp'n. at 9 (quoting *Baby Neal*, 43 F.3d at 60).

8

harm. *See e.g.* Am. Compl. ¶¶ 165, 170, 180. This alleged harm results from inadequate placements or the failure to provide appropriate physical or mental health care. *See id.* Plaintiffs claim that these deficiencies stem from a pattern of inadequate training and supervision of caseworkers. *See id.* ¶¶ 199-201. These allegations are sufficient to create a finding of commonality among the newly proposed substantive due process class.

### b. MPA Class

Plaintiffs also contend that the proposed MPA class also satisfies the commonality requirement because all of the proposed members are subject to the risk of experiencing a delay or being denied adoption or foster placement based on their race, color or national origin. *See* Pls.' Br. at 13. Plaintiffs argue that racial matching violates the MPA, and that this claim is central to all of the putative class members. *See id.* Defendants respond that commonality is defeated because the Court will have to determine, on an individual basis, whether race was a determining factor in each class member's placement. *See* Defs.' Opp'n. at 17. Defendants further contend that there is no showing that all of the proposed class members are subject to the immediate threat of being subject to the injury of racial matching. *See id.* at 18. Plaintiffs reply that class certification is not defeated simply because there may be individual questions. *See* Pls.' Reply at 9.

As already noted, the commonality requirement does not demand that the questions presented by the named plaintiff be identical to those of the class members. *See Baby Neal*, 43 F.3d at 56. As such, the commonality inquiry is generally easily satisfied. *See Osgood v. Harrah's Entertainment, Inc.*, 202 F.R.D. 115, 123 (D.N.J. 2001). Plaintiffs allege a pattern of racial matching with respect to the proposed MPA class of African-American and Hispanic

9

children. Contrary to defendants' argument, there is no requirement that either plaintiffs or this Court attempt to determine whether each unidentified class member individually has sufficient standing to pursue the MPA claims at issue. Such a searching inquiry would defeat the purpose of class action lawsuits. At this time its appears that all of the proposed class members are subject to the risk of a MPA violation. Therefore, plaintiffs' allegations establish a sufficiently common thread to satisfy the commonality requirement at this time.

### 3. Typicality

The typicality inquiry is designed to assess whether the action can be efficiently pursued as a class and whether the named parties are adequately aligned with the interests of the class. *See Baby Neal*, 43 F.3d at 57. The typicality requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Id.* Typicality looks to whether the claim of the proposed class "arises from the same events or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *See Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 77 (quotation omitted). It is important to not to confuse "typical" with "identical," because "even atypical elements of a claim may often be adequately treated by judicial severance, or the use of subclasses or other separate treatment of individual issues." *Id.* Factual differences among the proposed class members will not defeat certification. *See Baby Neal*, 43 F.3d at 56. As the commonality and typicality assessments are often broadly defined, they tend to merge because they focus on similar aspects of an alleged claim. *See Osgood*, 202 F.R.D. at 123.

#### a. Substantive Due Process Class

Plaintiffs argue that the proposed due process class satisfies the typicality requirement

10

because the named plaintiffs and the absentee class members allege constitutional violations arising from the same course of defendants' conduct. *See* Pls.' Br. at 14. Plaintiffs claim that agency wide practices such as placements in inappropriate settings and the denial of necessary physical and mental health treatment establish a sufficient course of conduct which is applicable to all class members. *See id.* at 16-17. Plaintiffs assert that all of the class members are "victims of the systemic failures" of DYFS to provide necessary care. *See id.* at 17. Defendants argue that the proposed due process class is still overbroad and fails to identify the specific claims at issue. *See* Defs.' Opp'n. at 12. Defendants also contend that the proposed class fails to identify which named plaintiffs suffered from which claims. *See id.* Finally, defendants argue that "[s]ome reference to the conduct that plaintiffs allege constitutes the violation is essential." *Id.* at 15.

As discussed more fully in section II.A.2.a., *supra*, plaintiffs have delineated the specific conduct which they allege is violative of plaintiffs' due process rights. Thus, plaintiffs' allegations identify the particular claims that are at issue. Plaintiffs allege that the deficiencies in DYFS practices and procedures result in harm to children who are involuntarily in the agency's care. *See* Am. Compl. ¶¶ 199-201. This harm allegedly occurs from *inter alia*, improper foster care placement and a lack of appropriate medical care. *See* II.A.2.a, *supra*. Defendants do not point to any interests of the named plaintiffs that could conflict with the legal theories of the unidentified class members. Therefore, it also appears that typicality is satisfied with respect to the proposed due process class.

### b. MPA Class

Plaintiffs contend that the MPA class satisfies the typicality requirement because the

11

named plaintiffs and the proposed class members "have suffered, or are subject to the risk of suffering, a violation of their rights secured under MEPA." Pls.' Br. at 18. Plaintiffs also argue that there are no conflicts between the individual named plaintiffs and the unidentified class members. *See id.* Defendants respond that none of the named plaintiffs' claims are typical of a MPA violation. *See* Defs.' Opp'n. at 18. Defendants argue that Marco and Juan C do not properly allege a MPA violation and that even if they had, their claims would be atypical of the claims asserted by the class because they only complain about their emergency foster care placement. *See id.* Plaintiffs reply that this Court has already recognized that Marco and Juan C. have asserted a MPA claim. *See* Pls.' Reply at 10. Plaintiffs further argue that their claims are typical of other African-American and Hispanic children whose adoption or foster care placement has been delayed or denied because of race, color or national origin. *See id.*

The Multiethnic Placement Act allows for a private cause of action against an agency when it delays or denies the placement of a child for adoption or into foster care on the basis of race, color or national origin of the child or the prospective care taker. *See Charlie H.*, 83 F. Supp. 2d at 495. The proposed MPA class alleges that DYFS engages in a pattern of racial matching in violation of MPA. Marco and Juan C. specifically allege that they have been subject to racial matching. Their claims are sufficiently typical of the claims asserted by the proposed class to satisfy the typicality requirement of Rule 23(a) at this time.

### 4. Adequacy of Representation

The adequacy of representation requirement tests the qualifications of counsel to represent the class, and serves to uncover conflicts of interest between named parties and the class they seek to represent. *See Barnes*, 161 F.3d at 141. In defining what constitutes "fair and

12

adequate representation," the Third Circuit has stated that "[a]dequate class representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975). This requirement serves to "determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (citing *General Telephone Co.*, 457 U.S. at 157 n.13).

As discussed in the prior Memorandum Opinion of this Court, plaintiffs' counsel appears competent to conduct this litigation on behalf of the proposed classes. *See* 6/28/01 Mem. Op. at 13-14. Therefore the Court will not revisit this issue, and will only consider the adequacy of the proposed named plaintiffs. Defendants do not contest the adequacy of the named plaintiffs for the substantive due process class.[5] Therefore, as the named plaintiffs' claims do not appear to be antagonistic to the unnamed class members, there is no need for the Court to engage in an extended discussion about those class representatives.

However, defendants have raised an objection to the adequacy of the representation of the proposed MPA class. Defendants argue that Sharon K. is an inadequate representative of the MPA class because her claims became moot upon her adoption. *See* Defs.' Opp'n. at 20.

---

[5] In a footnote, defendants once again request that this Court consider the adequacy of the next friends chosen to litigate on behalf of the infant plaintiffs. *See* Defs.' Opp'n. at 10 n.7. However, the Court has already clearly declined to undertake such an examination at this time. If defendants wish to challenge the next friends, they may make an appropriate motion.

13

Defendants contend that Sharon K. does not have standing or incentive to pursue the MPA claim and that by the time plaintiffs' amended motion for class certification was filed, her claims were already moot. *See id.* at 20-21. Plaintiffs respond that Sharon K.'s MPA claims were live when the initial motion for class certification was filed, and that her claims have never changed. *See* Pls.' Reply at 11. Further, plaintiffs argue that her claims should relate back to the filing of the original motion for class certification because the motion has been pending since that time. *See* Pls.' Reply at 11. Plaintiffs also contend that if the Court accepted defendants' argument, any time a class was redefined after it was initially certified, any named plaintiffs with moot claims would have to be dismissed. *See id.* However, plaintiffs' argument misses the mark.

As a general rule, "a named plaintiff whose individual claims have expired may continue in his representative capacity to litigate class certification issues only for two limited purposes: (1) to argue a certification motion that **was filed before his claims expired** ...; and (2) to appeal a denial of a class certification motion presented when his claims were live." *Lusardi v. Xerox Corp.*, 975 F. 2d 964, 975 (3d Cir. 1992) (emphasis supplied). This Court unambiguously denied plaintiffs' last motion for class certification because plaintiffs proposed an inappropriate and overly broad class. *See* 6/28/01 Mem. Op. at 16-17. Contrary to plaintiffs' suggestion, there has not been a continuously pending motion for class certification. Sharon K.'s claims were moot at the time the instant motion for class certification was filed, and she cannot be an adequate representative of the class which she seeks to represent.[6]

However, Marco and Juan C. remain viable representatives of the MPA class. The Court

---

[6] Plaintiffs cannot claim a continuously pending motion for class certification simply because they captioned the instant motion the "Third Modified Motion for Class Certification."

14

initially expressed some concern about the adequacy of Marco and Juan C. because they are Hispanic, and the MPA claims have been asserted on the behalf of both African-American and Hispanic children. *See id.* at 15-16. However, plaintiffs contend that it is the defendants' broad policy of racial matching in adoptions and foster care placements which affects both African-American and Hispanic children in DYFS custody. *See* Pls.' Br. at 20-21. Further, plaintiffs argue that the entire class seeks the same relief, and ending the practices of racial matching will not work to the detriment of either party. *See id.* It appears that Marco and Juan C. will be able to adequately represent the interests of the MPA class at this time. However, should the Court determine later that an additional named plaintiff is necessary to protect the interests of absentee class members, the Court will exercise its discretion in that regard. Therefore, at this time, plaintiffs have demonstrated that Marco and Juan C. will adequately represent the interests of the proposed MPA class.

## B. Federal Rule of Civil Procedure 23(b)(2) Requirements

Plaintiffs are seeking class certification under Rule 23(b)(2), which provides for class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The party seeking class certification must prove that the party opposing the class acted in a manner that is generally applicable to the class, which would make injunctive or declaratory relief appropriate to the entire class. *See Hassine*, 846 F.2d at 179. Essentially, the question is whether the relief sought will benefit the entire class. *See id.* (citing *Baby Neal*, 43 F.3d at 59).

Plaintiffs argue that the proposed classes satisfy the requirements of 23(b)(2) because

15

they seek relief which would benefit both of the individual classes. *See* Pls.' Br. at 22. The substantive due process class seeks relief from the harm inflicted upon them while involuntarily in the custody of DYFS as a result of conditions such as inadequate training and improper health and psychiatric care. *See id.* at 22-23. Similarly, the MPA class seeks relief based from the alleged practice of delaying or denying adoptions or foster care placement based on the child's race, color or national origin. *See id.* at 23.

Defendants argue that plaintiffs have not adequately alleged a uniform policy applicable to all the members of each class. *See* Defs.' Opp'n. at 24. They contend that there has not been any group injury, and the Court could not issue an injunction if the remedy would be more broad than necessary to address plaintiffs' claims. *See id.* at 25. Plaintiffs reply that they have alleged various "systemic deficiencies" in DYFS operations. *See* Pls.' Reply at 12. Further, they stress that Rule 23(b)(2) only requires that the relief sought be generally applicable to the class, not only related to a group injury. *See id.*

Each of the remaining claims and the desired relief asserted by the plaintiffs appear to be generally applicable to these two smaller classes. The proposed substantive due process class alleges violations of their right to be free from harm while in the custody of the government, and the plaintiffs allege various practices which result in harm to the class members. Class members seek relief to correct these alleged practices. Therefore, it appears that the prospective injunctive relief sought would be generally applicable to the proposed substantive due process class. Similarly, the MPA class alleges that DYFS engages in racial matching which results in the denial and delay of adoptions and foster care placements for African-American and Hispanic children in violation of MPA. These class members are also seeking prospective injunctive relief

16

to end the alleged practice of racial matching. Therefore, it also appears that the relief sought by the MPA plaintiffs is generally applicable to the proposed class.

However, the Court is acutely aware of its responsibility to ensure that this lawsuit is efficiently maintained as a class action. If at any time it appears that continuation of this lawsuit as a class action becomes unduly burdensome, or individual trials on the merits become necessary, the Court will exercise its discretion to decertify or modify the classes certified herein.

## III. CONCLUSION

For the above mentioned reasons, plaintiffs' motion for class certification is granted. An appropriate form of Order shall be filed herewith.

GARRETT E. BROWN, JR., U.S.D.J.