UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN A., by his next friend Bobbi Jean )
Brooks; TRACY B., by her next friend, )
Pamela Dallas; JACK and CHARLES C., )
by their next friend, Linda Lloyd, AMY D., )
by her next friend, Frank Koon; )
DENISE E., by her next friend, Linda )
Lloyd; CHARLETTE F., by her next friend )
Juanita Veasy; and TERRY G., by her next )
friend, Carol Oldham, on their own behalf )
and on behalf of all others similarly situated )
                                                   )
v.                                              )   NO. 3:00-0445
                                                 )   JUDGE CAMPBELL
DONALD SUNDQUIST, Governor of )
the State of Tennessee; and GEORGE )
HATTAWAY, Commissioner of the )
Tennessee Dept. of Children's Services )

## ORDER

Pending before the Court are the following Motions: Plaintiffs' Motion for Approval of Class Action Settlement (Docket No. 96) and Defendants' Motion for Approval of Class Action Settlement (Docket No. 98). The Court held a hearing on July 20, 2001. The Motions are GRANTED.

Contemporaneously herewith, the Court has approved and filed the Settlement Agreement, a Stipulated Modification of Settlement Agreement regarding Section V.A. and an additional Stipulated Modification of Settlement Agreement regarding Section XIII.A.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

This document was entered on the docket in compliance with Rule 58 and / or Rule 79 (a).
FRCP, on 7/27/01 By _____


EXHIBIT C



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---------------------------------------------------------------x
BRIAN A., by his next friend, Bobbi Jean Brooks;  )
TRACY B., by her next friend, Pamela Pallas;  )
JACK and CHARLES C., by their next friend,  )
Linda Lloyd;  )
AMY D., by her next friend, Frank Koon;  )
DENISE E., by her next friend, Linda Lloyd;  )
CHARLETTE F., by her next friend,  )         Civil Action No. 3-00-0445
Juanita Veasy; and  )                          Judge Campbell
TERRY G., by her next friend, Carol Oldham,  )   Magistrate Brown
on their own behalf and on behalf of all others  )
similarly situated,  )
                     Plaintiffs,  )
                                  )
--against--  )
                                  )
DONALD SUNDQUIST, Governor of the State  )
of Tennessee; and  )
GEORGE HATTAWAY, Commissioner of the  )
Tennessee Department of Children's Services  )
                                  )
                     Defendants.  )
---------------------------------------------------------------x

## SETTLEMENT AGREEMENT

This document was entered on the docket in compliance with Rule 58 and / or Rule 79 (a).
FRCP, on _____ By _____

## TABLE OF CONTENTS

Preamble.............................................................................................................4

I. Principles Of Settlement Agreement and Class Definition.........................4
    A. Principles of Settlement Agreement..................................................4
    B. Class Definition..................................................................................6

II. Structure of the Agency.................................................................................6

III. Reporting Abuse and Neglect........................................................................7

IV. Regional Services............................................................................................7

V. Staff Qualifications, Training, Caseload, Supervision................................8

VI. Placement and Supervision of Children.....................................................13

VII. Planning for Children....................................................................................21

VIII. Freeing a Child for Adoption.......................................................................27

IX. Adoptive and Foster Parent Recruitment, Retention, and Licensing......29

X. Statewide Information System.....................................................................31

XI. Quality Assurance..........................................................................................32

XII. Supervision of Contract Agencies................................................................35

XIII. Financial Development..................................................................................36

XIV. Technical Assistance Committee..................................................................37

XV. Monitoring.......................................................................................................38

XVI. Outcome and Performance Measures..........................................................40

XVII. Modification..........................................................................................................52

XVIII. Enforcement, Termination and Exit.....................................................................53

    A.    General Principles Guiding Enforcement..................................................53

    B.    Dispute Resolution....................................................................................53

    C.    Termination and Exit................................................................................55

XIX. Named Plaintiffs.....................................................................................................56

XX. Attorneys Fees and Expenses..................................................................................56

PREAMBLE

- A. The provisions of this Settlement Agreement resolve the existing disputes and issues in the case of Brian A., et al., v. Don Sundquist, et al., Civil Action Number 3-00-0445 (Judge Campbell/Brown), and satisfy and resolve the claims of the named plaintiffs and the plaintiffs' class in the above-entitled case as of the date of this Settlement Agreement.

- B. This court has subject matter jurisdiction and personal jurisdiction over this action and therefore the authority to enter this Settlement Agreement.

- C. This court shall have continuing jurisdiction of this action to ensure compliance with the terms of this Settlement Agreement for as long as the Settlement Agreement remains in effect.

- D. Any state agency responsible for the care, protection, and/or supervision of plaintiff class members shall be bound by the provisions of this Settlement Agreement. For as long as this Settlement Agreement remains in effect, all provisions of this Settlement Agreement referring to the "Department," the "Department of Children's Services" or "DCS," upon any subsequent changes to the current governmental organizational structure of the Tennessee Department of Children's Services concerning the children in the plaintiff class as defined in this Settlement Agreement, shall apply with full force and effect to the State of Tennessee and to any subsequent agency or agencies with any of the responsibilities that apply to the current Tennessee Department of Children's Services under this Settlement Agreement as of the date of this Settlement Agreement.

- E. This Settlement Agreement, and any of its provisions, are not, and shall not be construed to be, an admission of any liability on the part of any of the defendants concerning any of the claims and allegations in the complaint in this litigation.

I. PRINCIPLES OF SETTLEMENT AGREEMENT AND CLASS DEFINITION

- A. Principles of Settlement Agreement

    1. All children should have the best possible opportunity to grow up within a safe, nurturing family, either their biological family or, if that is not possible, within an adoptive family.

    2. The state should make reasonable efforts to avoid foster care placement by providing services to preserve the biological family whenever that is reasonably possible. However, child welfare decision-makers must have the professional capacity to make determinations as to when making

efforts to preserve the biological family, or leaving the child with that family, is neither safe for the child nor likely to lead to an appropriate result for the child.

3. After children enter placement, all non-destructive family ties should be maintained and nurtured. Children should be placed with relatives who are able to provide a safe, nurturing home for them, and should be placed with siblings, and relationships with relatives and siblings should be facilitated and maintained by the child welfare agency.

4. Foster care should be as temporary an arrangement as possible, with its goal being to provide a permanent home for the child as quickly as possible. In making the determination about what plans and services will best meet this goal, the child's interests must be paramount.

5. The state has primary responsibility for the care and protection of children who enter the foster care system. Insofar as it relies on private contractors to assist in meeting this responsibility, it should only do so according to standards set by and rigorously monitored by the state.

6. All children in need of child welfare services should receive full and equal access to the best available services, regardless of race, religion, ethnicity, or disabilities.

7. Children in foster care placement should be in the least restrictive, most family-like setting possible, and the state should make all efforts to avoid the use of non-family settings for children, particularly young children.

8. Children in foster care placement should have stable placements that meet their needs and the services necessary to address both the trauma of foster care placement and the problems surrounding their removal from their family.

9. Children in out-of-home placement must have timely decision-making about where and with whom they will spend their childhood, and timely implementation of whatever decisions have been made.

10. Families of children in foster care should be significant participants in the planning and decision-making concerning their children.

11. The state should achieve these goals in a family environment whenever possible, separating the child from the child's parents only when necessary for the child's welfare or in the interest of the child's safety, keeping a child as close to home as possible.

12. All parties in judicial proceedings involving neglect, abuse, unruly and delinquency should be provided a fair hearing and their constitutional and other legal rights should be enforced and recognized.

13. Except where a particular provision of this Settlement Agreement establishes a specific limit on the resources required to be allocated, defendants shall commit all necessary resources (administrative, personnel, financial and otherwise) to implement all provisions of the Settlement Agreement.

14. All actions required for plaintiff class members under the Settlement Agreement shall be documented within the individual case file of each member of the plaintiff class. DCS shall have the ability to produce aggregate data requested by the Monitor concerning compliance with the provisions of this Settlement Agreement.

B. Class Definition

Pursuant to the terms of this Settlement Agreement, this case shall be certified as a class action and the class certified shall be defined as follows: All foster children who are or will be in the legal custody of the Tennessee Department of Children's Services. "Foster children" shall mean all children who are or will be in the legal custody of the Tennessee Department of Children's Services, excluding children who are or will be in the legal custody of the Department of Children's Services upon an allegation or adjudication of a delinquent or criminal act. Children who are or will be in the custody of the Department of Children's Services upon an allegation or adjudication of an unruly or status offense shall be included in the class, and children who are or will be in the custody of the Department of Children's Services upon on allegation of a delinquent or criminal act and which allegation is subsequently dropped or fails to result in an adjudication of a delinquent or criminal act and who remain in the legal custody of the Department of Children's Services, shall be included in the class.

## II. STRUCTURE OF THE AGENCY

A. DCS shall establish child welfare policy and determine statewide standards and practices for the entire state. DCS shall take all reasonable steps necessary to ensure that statewide policies, standards and practices are implemented and maintained in each region of the state and that uniform forms and data collection and reporting are utilized in each region. Regions retain the right to develop and use forms and data instruments that address issues of local concern.

DATED:    May __, 2001
          Nashville, TN


SO ORDERED:

_____
HONORABLE TODD J. CAMPBELL, U.S.D.J.        DATE


APPROVED FOR ENTRY:

ATTORNEYS FOR PLAINTIFFS:

_____
MARCIA ROBINSON LOWRY (pro hac vice)
IRA P. LUSTBADER (pro hac vice)
JEFFREY K. POWELL (pro hac vice)
MADELYN FREUNDLICH
CHILDREN'S RIGHTS, INC.
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210

_____
HOLLINS, WAGSTER & YARBROUGH, P.C.
DAVID L. RAYBIN (TN BPR # 3385)
JACQUELINE B. DIXON (TN BPR # 12054)
22nd Floor Sun Trust Center
424 Church Street
Nashville, Tennessee 37219
(615) 256-6666