IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y, By and Through Her Next Friend, James D. Johnson, et al. PLAINTIFFS

VS. CIVIL ACTION NO. 3:04CV25LN

HALEY BARBOUR, As Governor Of the State of Mississippi; DONALD TAYLOR, as Executive Director of the Department of Human Services; and BILLY MANGOLD, As Director of the Division of Children's Services DEFENDANTS

DEPOSITION OF YUTASKA SIMPSON

Taken at the instance of the Defendant at the offices of Bradley Arant, LLP, One Jackson Place, 188 E. Capitol Street, Suite 450, Jackson, Mississippi, on Thursday, October 26, 2004, beginning at approximately 1:04 p.m.

APPEARANCES:

ERIC E. THOMPSON, ESQ.
SHIRIM NOTHENBERG, ESQ.
Children's Rights, Inc.
404 Park Avenue South
New York, NY 10016
COUNSEL FOR PLAINTIFFS




BETTY A. MALLETT, ESQ.
McGlinchey Stafford, PLLC
Skytel Centre South, Suite 1100
200 South Lamar Street
Jackson, Mississippi 39201

COUNSEL FOR DEFENDANTS



EXHIBIT
K

Also Present: Earl Scales, Office of Attorney General

Reported By: Julie Brown, CSR #1587
Brooks Court Reporting
Post Office Box 2632
Jackson, Mississippi 39207
(601) 362-1995

INDEX

| | PAGE |
|---|---|
| Style and Appearances | 1 |
| Index | 3 |
| Certificate of Deponent | 128 |
| Certificate of Court Reporter | 129 |

EXAMINATIONS

| | PAGE |
|---|---|
| Examination By Mr. Thompson | 5 |

EXHIBITS

| | PAGE |
|---|---|
| Exhibit 14 - Order, Jackson County Youth Court | 20 |
| Exhibit 15 - Court Report, Jackson County Youth Court | 24 |
| Exhibit 16 - Foster Care Review | 43 |
| Exhibit 17 - Report Indicating Ms. Bolton Wants to Adopt Cody B. | 46 |
| Exhibit 18 - Developmental Evaluation from Project Prince | 62 |
| Exhibit 19 - Foster Care Review | 69 |
| Exhibit 20 - Singing River Hospital Discharge Plan | 78 |
| Exhibit 21 - Hospital Discharge Summary | 86 |
| Exhibit 22 - Removal Request to Youth Court | 94 |
| Exhibit 23 - Ms. Bolton's Complaint | 101 |
| Exhibit 24 - Report of Suspected Abuse Neglected Child Or Vulnerable Adult | 109 |
| Exhibit 25 - Notice of Change | 113 |
| Exhibit 26 - Notice of Change | 114 |

YUTASKA SIMPSON,

having been first duly sworn, was examined and testified as follows:

EXAMINATION BY MR. THOMPSON:

Q. Good afternoon, Ms. Simpson.

A. Hi.

Q. My name is Eric Thompson. I'm one of the attorneys from Children's Rights representing the plaintiff in the matter of Olivia Y. Do you understand that you're here to give sworn testimony in that matter?

A. Yes.

Q. Just a couple of ground rules. If at any point you don't understand a question that I ask, please let me know. I'll try to rephrase it. If at any point you wish to clarify a prior response, let me know. We'll do that on the record. And if at anytime you wish to take a break, please let us know and we'll do that as well.

A. Okay.

Q. Ms. Simpson, have you done anything in preparation for today's deposition?

A. No, no more than contacting the attorney, getting directions, and asking the -- I know Earl Scales from the Attorney General's Office, and I

A. Is it my practice to do?

Q. Yes.

A. Yes.

Q. Do you also understand such documentation to be a DHS requirement?

A. Yes.

Q. Ms. Simpson, are you the assigned caseworker for the child Cody B. ?

A. Yes.

Q. And if you recall, when were you assigned the case?

A. I'm not sure of the exact date. If you have any transfer information, it would have been transferred to me by another worker.

Q. Okay.

(Exhibit 14 - Order, Jackson County Youth Court marked for identification.)

Q. I'm going to show you what's been marked Exhibit 14. Do you recognize this document?

A. Yes, sir.

Q. And what is it?

A. It's an order from the Jackson County Youth Court signed by Judge Sharon Segalus.

Q. And is it in fact regarding the case of Cody B. ?

placed in the shelter?

A. Yes, but again let me say, usually there's someone to take the infants.

Q. Are you aware of other children under the age of six being placed in the emergency shelter?

A. Am I aware of any?

Q. Yes.

A. Oh yes.

Q. Is it unusual for children under the age of six to be placed in the shelter?

A. No.

Q. I'd like to direct, again, your attention to page two of Exhibit 15, the largest paragraph on the page, that in parenthesis references "attached evaluations by a Dr. J. Donald Mathern"; do you see that?

A. Yes, sir.

Q. Is there any reason why the evaluations wouldn't be part of the case file that you maintained for Cody B. ?

A. No, sir.

Q. Do you know who had Calvin's file copied for production to the plaintiffs in this case at the beginning of the summer of this year?

A. No, sir.

Q. You didn't do that yourself?

A. No, sir. Let me say I don't remember copying it.

Q. Are you aware whether these evaluations referenced here are in fact in the case file currently?

A. Is this in the case file?

Q. I'm asking you whether the referenced evaluations here by Dr. Mathern are in the case file, if you know?

A. I don't know. It should be in there. I don't know though.

Q. You don't know though?

A. Uh-uh (negatively).

MR. THOMPSON: I'm going to ask that counsel provide us with these referenced documents because they have not been received as part of the case file that was produced.

MS. MALLETT: The case file that was produced on Cody B., you're saying that the --

MR. THOMPSON: These documents that are referenced in this case file documents.

MS. MALLETT: Dr. J. Donald Mathern?

MR. THOMPSON: Right, was not produced as part of the record.

MS. MALLETT: I'll just go back and look and see what we have.

Q. (By Mr. Thompson) Turning your attention again to page two, Exhibit 15. Do you see the sentence starting with, "Dr. Mathern's test findings suggests"?

A. Yes, sir.

Q. Is it -- referencing that part of the report, is it fair to say that as of November of 2003, you were aware that Cody B.'s parents had very limited parenting skills and were not able to adequately and effectively function in a parenting capacity?

A. Yes, sir. According to this -- according to Dr. Mathern.

Q. Right. So as of the time of this report, you had documented evidence as to these findings?

A. I had a psychological evaluation from Dr. Mathern.

Q. And those evaluations documented what is reported here in this report?

A. Yes, sir.

Q. Now, as of that time, November 2003, what was the permanent plan for Cody B.?

A. Durable legal relative.