IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| JAMES D. JOHNSON, as next friend to Olivia Y.; CARLA LEWIS, as next friend to Jamison J. and SYLVIA FORSTER, as next friend to Desiree, Renee, Tyson and Monique P. | **PLAINTIFFS** |
| V. | CIVIL ACTION NO. 3:04cv251LN |
| HALEY BARBOUR; DONALD TAYLOR, as Executive Director of the Department of Human Services and BILLY MANGOLD, as Director of the Division of Family and Children's Services | **DEFENDANTS** |

**REVISED RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

**COME NOW**, Defendants, by counsel, and file their Revised Response to Plaintiffs' Motion to Compel Documents Responsive to Plaintiffs' First Request for Production of Documents as follows:

**INTRODUCTION**

Defendants appreciate the opportunity to file their revised response.

The Motion to Compel relates to documents requested by Plaintiffs in their First Request for Production of Documents. The Defendants timely responded to that request on March 4, 2005, and supplemented it on March 23 and April 11, 2005, which makes the next supplementation due on July 14, 2005, as agreed.

In January, 2005, the parties, by counsel, agreed to a quarterly supplementation of children's case records and other discovery. (See correspondence of Plaintiff and defense counsel attached hereto as "Exhibit A".) Defendants have followed this agreement as to supplementation of all discovery in order to comply with both Rule 26(e)(1) and (2), which

180118.2

require supplementation "at appropriate intervals" or "seasonably" and the agreement of the parties regarding supplementation.

Defendants will respond to each subpart of the Plaintiffs' Motion to Compel and also attach hereto as Exhibits B and C, a listing of the documents that Defendants have already produced and supplemented in response to the First Request for Production in order to provide the Court a clear and complete picture of the challenged responses.

The requests are very broad, and the DFCS employees are not generally familiar with such requests. On occasions, they have not located documents on the first search but found them later. Multiple searches have been made in response to the numerous letters received from Plaintiffs' counsel. In those instances, documents discovered, as well as new documents that have been generated, are included in quarterly supplementations. The next quarterly supplementation is due July 14, 2005; however, to attempt to resolve discovery issues raised in the Motion to Compel, Defendants are making an early supplementation of all material gathered to date along with the filing of this revised response, as noted in the material set forth below. A listing of these documents is attached as Exhibit D hereto. The regular quarterly supplementation will also be filed July 14, 2005.

References to MACWIS involve certain computer records. MACWIS is an acronym for Mississippi Automated Children's Welfare Information System. DHS maintains children's records both in MACWIS and in paper records in the various county offices. All such paper records have been tendered to Plaintiffs for review as they are kept in the ordinary course of business as approved by this Court's May 25, 2005, Order.

## SPECIFIC ITEMS PLAINTIFFS SEEK TO COMPEL

**Document Request No. 1:** *"Any and all documents in your possession, custody or control, relating to each of the named Plaintiffs for the entire time that they have been known to DHS including but not limited to, case files and other records created or maintained by DHS, and any public or private agencies that have contracted with DHS to provide child welfare services or that otherwise provide such services."*

Plaintiffs assert that Defendants have failed to fully respond to four categories of this massive request.

    **(a)**     **Unredacted Named Plaintiff case record document DHS Olivia Y. 00003.**

RESPONSE: This document is being produced in supplementation of even date herewith numbered DHS00003.

    **(b)**     **Unredacted Named Plaintiff case record entries DHS Jamison J. 00142-143, 00205-206, 00207-209.**

RESPONSE: These documents have not been produced because they are privileged. When DHS consulted the Attorney General's office regarding this lawsuit and sought the Attorney General's advice, an attorney-client relationship was created. Therefore, any legal advice given to DHS or DHS personnel by the Attorney General's office in the context of the issues of this case are protected by the attorney-client privilege.

The question has been raised with regard to communications between the Attorney General and a group home where one of the named Plaintiffs resides. The group home is licensed by DHS and has a contract with DHS in which it adopts all of the policies and procedures required by DHS. The group home sought the guidance of DHS in the contacts being made between the named Plaintiff and his counsel. DHS in turn contacted the Attorney General's office for advice. The Attorney General's office verbally instructed DHS personnel of the proper conduct, drafted correspondence instructing the group home in the proper course of action, and sent a copy of this correspondence to DHS. This correspondence was placed in the

180118.2

3

named Plaintiff's DHS case file. The communication is privileged because the group home is acting under the direction of DHS as a representative of DHS and the communication concerns this litigation.

Rule 502 of the Mississippi Rules of Evidence defines the scope of the attorney-client privilege:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made *for the purpose of facilitating the rendition of professional legal services to the client* (1) between himself *or his representative* and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him *or his representative* or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) **between representatives of the client or between the client or between the client and a representative of the client**, or (5) among lawyers and their representatives representing the same client. Miss.R.Evid. 502(b) (emphasis added).

A "representative of the client" is "one having authority to obtain professional legal services, **or to act on advice rendered pursuant thereto**, on behalf of the client, or an employee of the client having information needed to enable the lawyer to render legal services to the client." Miss.R.Evid. 502(a)(2).

Under this definition, DHS and the group home are both "representatives of the client". DHS personnel have the authority to contact the Attorney General for legal advice and the group home has the authority to act on the advice given by the Attorney General. Further, this communication was for the purpose of facilitating the rendition of professional legal services to the client. Accordingly, the communication is privileged.

Additionally, the work product doctrine protects an attorney's thoughts, mental impressions, strategies, and analysis from discovery by opposing counsel. *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed … as the "Work product of the lawyer."

*Hickman*, 329 U.S. at 510-11, 67 S.Ct. at 393. "The work product privilege is very different from the attorney-client privilege." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir.1989). It "does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Id*. at 382. Without this privilege "[I]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial." *Hickman*, 329 U.S. at 511, 67 S.Ct. 385.

    **(c)**     **Complete Named Plaintiff MACWIS screen documentation.**

RESPONSE: The response will be supplemented with the next quarterly response on July 14, 2005.

    **(d)**     **Psychological evaluations by Dr, Matherne from Named Plaintiff Cody B.'s case record files.**

RESPONSE: These documents are produced in supplementation of even date herewith as documents numbered DHS Cody B. 000008-000102.

**Document Request No. 4:** *"All documents in your possession, custody or control, reflecting or concerning the data elements currently capable of being input into MACWIS, and all documents reflecting the types of reports that MACWIS is currently capable of generating."*

    **(a)**     **A list of representative MACWIS screen printouts of all MACWIS data fields.**

RESPONSE: These documents are produced in supplementation of even date herewith as documents numbered DHS 033109-033302.

**Document Request No. 7:** *"All regular or ad hoc management reports in your possession, custody, or control, generated by MACWIS, including but not limited to: (a) aggregate reports detailing regional and state data totals, such as discussed on page 21 of the Self-Assessment; (b) Reports provided to the Quality Improvement Unit, the Foster Care Review Staff and Regional Directors; (c) Monthly and quarterly reports generated for purposes of corrective action and system evaluation, including but not limited to reports concerning monthly contacts by caseworkers with foster children and the provision of medical care to foster children, such as described on page 49 of the Self-Assessment; (d) Reports that identify children who have been in the custody of DHS 15 out of the last 22 months."*

    (a)    **Quarterly and Annual MACWIS "Medical, Dental and Psychological" Reports.**

RESPONSE: DHS does not have such MACWIS reports. All information contained in the children's paper case records have been tendered for inspection.

    (b)    **Quarterly MACWIS "Educational" Reports**

RESPONSE: DHS does not have such MACWIS reports. All information contained in the children's case records have been tendered for inspection.

    (c)    **All MACWIS "Count of Placements in Each Facility Type" Reports.**

RESPONSE: DHS does not have such MACWIS reports; however, a paper report entitled, "Summary of Children in Placements by Placement Type" provides the responsive information and has already been produced.

**Document Request No. 8:** *"All internal and external assessments, audits, evaluations or reviews of DFCS operations and practice in your possession, custody or control, including but not limited to documents generated by the Quality Improvement Unit, 6-month reviews, Peer Reviews, Program Integrity Unit reviews, and all documents regarding any response, corrective action or "action plan" requested or undertaken in relation to those assessments audits, evaluations, and reviews."*

    (a)    **DFCS December 2003 Self-Assessment.**

RESPONSE: Plaintiffs already have a copy of this report and even attached it as an exhibit to the deposition of Billy Mangold on August 25, 2004. Plaintiffs also produced a copy of this report to Defendants as a part of Plaintiffs' initial disclosures.

  **(b)**  **May 2004 federal Child & Family Services Review (CFSR) report.**

RESPONSE: Plaintiffs already have a copy of this report and even attached it as an exhibit to the deposition of Billy Mangold on August 25, 2004.

  **(c)**  **Quality Improvement Unit "Placement Cases" record review reports.**

RESPONSE: These documents are being produced in a supplementation of even date as documents numbered DHS 038527-038629.

  **(d)**  **DHS Program Integrity Unit Reviews of DFCS Programs, Staff, and Cases.**

RESPONSE: DHS states that there are no such reports.

  **(e)**  **State Level Child Fatality Review Board/Team Reviews of Child Deaths.**

RESPONSE: DHS states that there are no such reports.

  **(f)**  **Corrective Action Plans or Responses to Audits/Reviews.**

RESPONSE: DHS states that there are no such reports.

**Document Request No. 9:** *"All reports in your possession, custody or control, of case planning non-compliance issues generated by the Foster Care Review Program Administrator such as discussed on page 27 of the Self-Assessment, and all responses to those reports, including but not limited to all responses from Regional Directors.*

  **(a)**  **All 2002 and 2005 Foster Care Review Program Administrator non-compliance reports.**

RESPONSE: The 2002 reports were previously produced to Plaintiffs. See, Bates No.'s DHS 026556-026913. All of the 2005 reports have not been generated but will be produced in a timely supplementation once they are generated.

**Document Request No. 13:** *"The Mississippi State Advisory Board's Annual Assessment of DFCS provided outcome data for each year from 2000 to the present."*

  **(a)**  **Mississippi State Advisory Board's Annual Assessment reports for data years 2000, 2001 and 2004.**

180118.2

7

RESPONSE: DHS states it cannot locate the 2000 report after diligent search, which will continue. The 2001 report is being produced in a supplementation of even date as documents numbered DHS 033089. The 2004 report has not been generated.

**Document Request No. 15:** *"All documents in your possession, custody or control, prepared for, concerning, or generated by all Statewide Assessment focus groups convened in preparation for the Self-Assessment or thereafter."*

(a)     **All documents concerning Statewide Assessment focus groups.**

RESPONSE: DHS states all such documents within its possession, control, and custody were previously produced.

**Document Request Nos. 21-23**
No 21: *"All documents in your possession, custody or control, reflecting the turnover and vacancy rates for DFCS caseworkers, managers and supervisors."*
No. 22: *"All documents in your possession, custody or control, concerning DFCS caseworker caseloads, staffing to census ratios, and adequate staffing estimates, such as discussed on pages 12-15 of the Self-Assessment."*
No. 23: *"All documents in your possession, custody or control regarding staffing cutbacks, hiring freezes or temporary assignments at DFCS."*

(a)     All "Direct Service Primary Clients by Region" reports from 2002 to the present, other than the January 2004 report.

RESPONSE: This report was not generated until August, 2003, and did not exist before that date. The existing reports will be produced in the next supplementation due July 14, 2005.

(b)     "Attached personnel actions (219s)" to December 8, 2003 Memorandum from Linda Barnes to Wanda Gillom and Gloria Salters.

RESPONSE: DHS maintained the Memorandum already produced without the 219 forms which show personnel action. There is no record of which 219 forms were attached to the Memorandum, and it is not possible to accurately reconstruct which 219 forms were attached to the Memorandum.

(c)     Documents Relating to the Temporary Detailing/Assignment of Staff at DFCS.

180118.2

RESPONSE: These documents are being produced in a supplementation of even date as documents numbered DHS 038468-038481.

**Document Request No. 29:** *"All documents in your possession, custody or control concerning children in DHS custody who are awaiting new foster placements, certain specific placements, or certain types of placements, such as therapeutic foster home placements, including but not limited to logs and wait lists"*

    (a)    **All "Therapeutic Foster Care Placement Log & Pending Placements" from 2002 to the present, other than for January and February 2005.**

RESPONSE: These reports were first generated in January, 2005, and the January, 2005 and February, 2005, reports have been produced. Any other reports that have been generated will be produced in the next supplementation due July 14, 2005.

**Document Request No. 30:** *"The current State Plan submitted pursuant to Title IV-B and Title IV-E of the federal Social Security Act, including but not limited to documents required by 42 U.S.C. §§ 622(b); 629b, 671, 5106a(d), and 5106c."*

    (a)    **2004 Child and Family Service Plan Annual Progress and Service Report.**

RESPONSE: Defendants are producing in supplement of even date Exhibit "F" to the previously-produced 2003 Child and Family Service Plan Annual Progress and Service Report (DHS03842-038520). When additional reports are completed, they will be produced.

    (b)    **Revised Strategic Plan for FY 2004, Attachment F to 2003 Child and Families Service Plan Annual Progress Report.**

RESPONSE: This document is being produced in supplement of even date as documents numbered DHS 038482-038520.

**Document Request Nos. 33 and 34**
**No. 33:** *"Any and all correspondence received from or sent to the Department of Health and Human Services, Administration for Children and Families, from 2003 to the present, regarding the 2004 Child and Family Services Review of the State of Mississippi's child welfare program and any related Program Improvement Plan (PIP)."*

**No. 34:** *"Any and all Program Improvement Plans (PIPs) submitted to the Department of Health and Human Services, Administration for Children and Families subsequent to the 2004 Child and Family Services Review of the State of Mississippi's child welfare program.*

180118.2

    **(a)**     **All Program Improvement Plans (PIPs) submitted to the U.S. Department of Health and Human Services.**

RESPONSE: The final PIP report was produced to Plaintiffs on June 9, 2005. The previous versions will be produced, reserving to Defendants the deliberative process privilege. They will be produced in the next supplementation due July 14, 2005.

    **(b)**     **All correspondence related to the PIPs.**

RESPONSE: Correspondence relative to the final PIP was produced to Plaintiffs on June 9, 2005. Other correspondence will be produced in the next supplementation due July 14, 2005.

**Document Request No. 35:** *"Any and all documents relating to child maltreatment reports, child abuse and neglect investigations, critical incident reports, child fatality reports, or special reviews regarding the abuse or neglect of children in DHS custody or of children in homes or facilities where children in DHS custody reside, including facilities not licensed by DHS."*

    **(a)**     **All MACWIS "Count of Maltreated Children while in Custody in a Placement" and "Summary of Maltreated Children while in Custody in a Placement" reports from 2002 to the present, other than for the third and fourth quarter of 2004.**

RESPONSE: These reports were not generated by DHS until the third quarter of 2004. Reports dated October 2004 and January 2005 were previously produced to Plaintiffs. The April 2005 report is being produced in supplement of even date as documents numbered DHS38630-38631.

    **(b)**     **State Level Child Fatality Review Board/Team reviews of child deaths of children in DHS custody and annual reports;**

RESPONSE: DHS states it has no such documents to produce.

    **(c)**     **Individual reports of child maltreatment in DHS custody and all related documents;**

180118.2

10

RESPONSE: The DHS computer system does not generate these individual reports. The information is only maintained in each child's individual file, which have been tendered for inspection.

**(d)** **Individual investigations regarding child maltreatment in DHS custody and all related documents;**

RESPONSE: The DHS computer system does not generate these individual reports. The information is only maintained in each child's individual file, which have been tendered for inspection.

**(e)** **Any special or critical incident reviews regarding individual children in DHS custody.**

RESPONSE: The DHS computer system does not generate these individual reports. The information is only maintained in each child's individual file, which have been tendered for inspection.

**Email and Other Communications:** *"All Defendants Should Be Compelled To Produce Responsive Email or Other Digital Communications"*

RESPONSE: DHS case workers do not have email. At the present time, only some state office DHS employees have email. DHS will continue to attempt to locate documents responsive to this request. Any responsive e-mails or other digital communication will be produced.

### SPECIFIC ITEMS REQUESTED OF GOVERNOR

**Document Request No. 32:** *"All reports by Defendants to the Secretary of the federal Department of Health and Human Services pursuant to the Early and Periodic Screening, Diagnostic, and Treatment Services Act, 42 U.S.C. § 1396a(a)(43)(D)."*

**(a)** **State EPSDT reports to the U.S. Department of Health and Human Services.**

RESPONSE: Defendants do not maintain custody, control or possession of these documents. These documents are maintained by the Department of Health which is a state agency not under the control of any Defendant.

**Document Request Nos. 21-23, 35**

> **No. 21:** *"All documents in your possession, custody or control, reflecting the turnover and vacancy rates for DFCS caseworkers, managers and supervisors."*
> **No. 22:** *"All documents in your possession, custody or control, concerning DFCS caseworker caseloads, staffing to census ratios. and adequate staffing estimates, such as discussed on pages 12-15 of the Self-Assessment."*
> **No. 23:** *"All documents in your possession, custody or control regarding staffing cutbacks, hiring freezes or temporary assignments at DFCS."*
> **No. 35:** *"Any and all documents relating to child maltreatment reports, child abuse and neglect investigations, critical incident reports, child fatality reports, or special reviews regarding the abuse or neglect of children in DHS custody or of children in homes or facilities where children in DHS custody reside, including facilities not licensed by DHS.*
>
> RESPONSE: The Governor's Office does not maintain documents responsive to this request.

## CONCLUSION

As stated in the initial response, the test under Rule 37 is whether the responses have been incomplete or evasive. In this case, given the nature of the requests, the answers cannot be complete without supplementation because the children's case records are continually updated. Also, some few of the many thousands of documents produced were not located in the first search, but were later found.

Defendants submit that supplementation involves two principal factors: (1) documents that were not produced in an earlier response that have since been found, and (2) responsive documents that have been prepared or updated since the prior production. The duty to supplement is continuing, and the rules require supplements "at appropriate intervals" or seasonably," which we believe means the same thing here where counsel have agreed upon quarterly supplementation that satisfies the requirement.

180118.2

Producing updated records for 3,000 children, as well as the other expansive requests, is a huge task, and Defendants have and are continuing to produce all records requested except those few to which objection is asserted. The special early supplementation being made along with the filing of this revised response is made to demonstrate the bona fide efforts of Defendants to respond to the First Request for Production. We refer to the authorities cited in our initial response in support of our position that the responses of Defendants are neither incomplete or evasive.

Defendants respectfully request that the Motion to Compel be denied.

**THIS**, the 24th day of June, 2005.

                                           Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of MS; DONALD TAYLOR, as Exec. Dir. of the Dept. of Human Services; and BILLY MANGOLD as Director of the Div. of Family and Children's Services**

BY:    /s/ Betty A. Mallett

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**McGLINCHEY STAFFORD, PLLC**
Sam E. Scott (MSB #6567)
Betty A. Mallett (MSB #8867)
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Amy Kebert Elder (MSB #99149)
Gretchen L. Zmitrovich (MSB #101470)
City Centre South, Suite 1100
200 South Lamar Street (39201)
Post Office Drawer 22949
Jackson, Mississippi 39225
Telephone: (601) 960-8400
Facsimile: (601) 352-7757

180118.2

## CERTIFICATE OF SERVICE

    I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS 39215

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
404 Park Avenue
New York, New York 10016

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205

    I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Tara S. Crean, Esq.
Corene Kendrick, Esq.
Erik S. Pitchal, Esq.
CHILDREN'S RIGHTS, INC.
404 Park Avenue
New York, New York 10016

Eric S. Manne
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

    **SO CERTIFIED**, this the 24th day of June, 2005.

                                             /s/ Betty A. Mallett

180118.2