LEXSEE 2004 U.S. DIST. LEXIS 10048

FREEPORT-MCMORAN SULPHUR, LLC VERSUS MIKE MULLEN ENERGY
EQUIPMENT RESOURCE, INC., ET AL

CIVIL ACTION NO: 03-1496 c/w 03-1664 SECTION: "A" (4)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA

2004 U.S. Dist. LEXIS 10048

June 2, 2004, Decided
June 2, 2004, Filed; June 3, 2004, Entered

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Motion granted by, in part, Motion denied by, in part *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 U.S. Dist. LEXIS 10197 (E.D. La., June 3, 2004)

**PRIOR HISTORY:** *Freeport McMoran Sulphur v. Mike Mullen Energy Equip. Res., Inc.*, 2004 U.S. Dist. LEXIS 8496 (E.D. La., May 12, 2004)

**DISPOSITION:** [*1] Court's previous order denying Freeport's motion for leave to file supplemental reply memorandum in opposition to OSFI's motion to compel discovery and for sanctions revoked and rescinded. Motion to compel discovery and for sanctions granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Freeport-McMoran Energy LLC, PLAINTIFF: Carl David Rosenblum, Edward H Bergin, Eric M Whitaker, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA USA.

For Freeport-McMoran Energy LLC, PLAINTIFF: Jeffrey M Baudier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, Lafayette, LA USA.

Mike Mullen Energy Equipment Resource, Inc, DEFENDANT, Pro se, Dallas, TX USA.

For Offshore Specialty Fabricators, Inc, DEFENDANT: Michael RC Riess, Kingsmill Riess, LLC, Charles Rowand Talley, Lemle & Kelleher, LLP, William R Forrester, Jr, Benjamin R Grau, Jamie A Domilise, Lemle & Kelleher, LLP, New Orleans, LA USA.

**JUDGES:** KAREN WELLS ROBY, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** KAREN WELLS ROBY

**OPINION:**

ORDER AND REASONS

On April 15, 2004, Offshore Specialty Fabricators, Inc. ("Offshore") filed a **Motion to Compel Discovery and for Sanctions (doc. # 160)** [*2] seeking an order compelling Freeport-McMoran Sulphur, LLC to properly participate in discovery, including allowing OSFI to take the depositions of three individuals. A hearing on the motion was held on May 26, 2004.

During the hearing, the parties advanced several arguments, which the Court will consider below as to each respective disagreement. The Court further notes that with respect to the deposition of Robert Maduell, the Court did not entertain oral argument on the issue because the responsive pleading addressing the issue arrived in chambers too late for the Court to review the issue prior to the hearing. However, the Court informed the parties that it would take the matter under advisement. Considering this, the Court's previous denial of Freeport's **Motion for Leave to File Supplemental Reply Memorandum in Opposition to OSFI's Motion to Compel Discovery and for Sanctions (doc. # 210)** is revoked and the Court will consider the briefs on the issue of Maduell's deposition.

Case 3:04-cv-00251-HSO-ASH    Document 152-2    Filed 06/29/05    Page 2 of 7

Page 2
2004 U.S. Dist. LEXIS 10048, *

## I. OSFI's Motion to Compel

In its motion, OSFI makes several allegations as to Freeport's conduct with regard to various discovery issues. First, OSFI complains it has propounded three [*3] different sets of Interrogatories and Request for Production of Documents, and that Freeport has objected to virtually every Interrogatory and Request for Production. Second, OSFI urges that Freeport has not been cooperative in the scheduling of depositions.

OSFI informed the Court that while this motion has been pending, some of the issues have been resolved as to deposition scheduling and written discovery. Therefore, the issue that was the subject of oral argument, was Freeport's conduct, more specifically the conduct of Freeport's counsel, Mr. Rosenblum, during depositions. This issue will be further explored by the Court below. At the outset, the Court warned both of the parties that if they could not cooperate with one another in the future, then all depositions in New Orleans would be conducted in the federal building in the Attorney Conference Center.

## II. Depositions of Nancy Parmalee and Donald Whitmire

OSFI contended that prior to the deposition of any Freeport witnesses, Mr. Rosenblum requested an estimate of the amount of time it would take to depose each witness. OSFI responded by providing Mr. Rosenblum with a two to three-hour estimate for Nancy Parmalee [*4] and a two-hour estimate for Donald Whitmire. However, OSFI asserts that it informed Mr. Rosenblum that the time periods were simply estimates and should no way be construed as any type of constraint on the time limit.

OSFI contended that on April 8, 2004, after 2.75 hours of questioning of Ms. Parmalee, Mr. Rosenblum stopped the deposition of Ms. Parmalee and advised that she would not be available for a continuation of the deposition. Further, OSFI asserts that Mr. Rosenblum advised that Mr. Whitmire's deposition, which was scheduled for 2:00 p.m. on the same date, would be limited to 2 hours and a continuation would not be allowed. Thereafter, OSFI cancelled Mr. Whitmire's deposition.

Mr. Rosenblum responded that he had previously received a letter from OSFI's counsel indicating that they wanted to depose a number of Freeport's witnesses, and OSFI knew that Freeport wanted to depose a number of OSFI's witnesses. Mr. Rosenblum stated that he had a conversation with OSFI's counsel, Mr. Grau, and Mr. Rosenblum asserts that he specifically asked Mr. Grau if he wanted seven hours with each of the individuals to be deposed.

Mr. Rosenblum contended that based upon the representation [*5] given by Mr. Grau as to the time estimates, he scheduled these times with his client. Freeport asserts that after Ms. Parmalee's deposition had gone on for 3 hours and 20 minutes, sometime thereafter, Mr. Grau informed Mr. Rosenblum that he wanted the whole seven hours with Ms. Parmalee. Freeport asserted that it called the deposition off because Ms. Parmalee had not blocked off the whole day and that Whitmire had blocked out the afternoon for his deposition.

Mr. Whitmire, was scheduled for 2:00 p.m., and was waiting to begin after lunch. It is then, that Freeport alleged that OSFI informed him that they wanted seven hours for all the remaining depositions. Freeport argued that OSFI has not requested any relief in the motion with respect to Whitmire. OSFI countered that in its motion on page 7, it specifically mentioned the problem it had with Whitmire. Freeport informed the Court that there is no objection to allowing Mr. Whitmire's deposition, it just needs to be rescheduled.

The Court informed OSFI that it would not be allowed to decide on the day of deposition, that seven hours would be needed for a particular deposition. Further, to the extent OSFI is aware that it may need [*6] that amount of time for a deposition, it is to be the only deposition scheduled for a particular day. Near the end of the hearing, Freeport pointed out that Mr. Grau did state on the record of Ms. Parmalee's deposition that he reserved the right to continue the deposition on a later date consistent with the Federal Rules of Civil Procedure. The Court ordered the parties to inform the Court by June 2, of the date on which Whitmire and Parmalee would be scheduled for deposition.

## III. Deposition of Maduell

On May 18, 2004, OSFI filed a Supplemental Memorandum in Support of Motion to Compel Discovery and for Sanctions (doc. # 202), in which OSFI raises a new issue related to its Motion to Compel, which OSFI contends arose after the filing of the motion. The majority of this supplement focuses on the deposition of Roger Maduell.

In its supplement, OSFI contends that it is entitled to additional time to continue its deposition of Roger Maduell because the tactics employed by Mr. Rosenblum were excessively interrupting and caused significant delay. Further OSFI asserts that Mr. Rosenblum improperly instructed Mr. Maduell not to answer questions to which OSFI is entitled to [*7] answers. Finally, OSFI urges that it is entitled to disclosure of the

identity of documents reviewed by Mr. Maduell in preparation for his deposition.

OSFI points to numerous objections and interruptions allegedly made by Mr. Rosenblum during the deposition. OSFI argues that these objections and instructions not to answer were improper for a deposition unless the information is considered a trade secret or is privileged and a protective order is sought.

Additionally, OSFI asserts that Mr. Maduell was improperly instructed not to answer questions regarding conversations between himself and Dave Landry (VP of Freeport), and also conversations between Mr. Maduell and John Amato (Freeport's General Counsel), based on the attorney-client privilege. OFSI urges that Mr. Landry is not an attorney, so the privilege cannot attach with respect to those conversations. OFSI further argues that the conversations between Mr. Amato and Mr. Maduell are not protected because Mr. Maduell is a non-employee third party.

OSFI further argues that when Mr. Maduell was questioned as to what documents he had reviewed prior to his deposition, he was instructed by Freeport's counsel not to answer because the [*8] documents were protected by the attorney-client privilege.

Freeport, on the other hand, contends that contrary to OSFI's assertions of excessive delay from objections and interruptions on Freeport's part, the deposition began a little after 9:00 a.m. and concluded at 12:24 p.m. Further, upon the conclusion, Freeport states that it confirmed with OSFI that all the questions OSFI wanted to ask had been asked of Mr. Maduell. Freeport further asserts that OSFI cannot request to complete the deposition now when it had a full three and one half hours remaining on the 12th which it chose not to use.

Moreover, Freeport argues that Mr. Maduell is a Freeport representative and the "functional equivalent" of a Freeport employee for purposes of the attorney-client privilege. Freeport asserts that its instructions to Mr. Maduell not to answer were clearly limited to the extent that the discussions reflected the advice of Freeport's counsel.

### A. Analysis

#### 1. Attorney-Client Privilege

"The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer [*9] to the client, at least if they would tend to disclose the client's confidential communications " *Hodges, Grant & Kaufmann v. United States Government, 768 F.2d 719, 720-21 (5th Cir. 1985)*. The burden to establish the applicability of the attorney-client privilege rests on the party who invokes it." *Hodges, 768 F.2d at 721*. "The privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co., 682 F.2d 530, 539 (5th Cir.1982)*, cert. denied, *466 U.S. 944, 104 S. Ct. 1927, 80 L. Ed. 2d 473 (1984)*.

Applicability of the privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Hodges, 768 F.2d at 721*. The proponent of the privilege "must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)*.

Freeport draws the Court's attention to the court's decision in *Lenihan v. Stewart Enterprises, Inc., 2002 U.S. Dist. LEXIS 16714, 2002 WL 31001842 [*10] (E.D. La. Sept. 4, 2002)*, where Magistrate Judge Wilkinson, looking to *In re Bieter Co., 16 F.3d 929 (8th Cir. 1994)*, found that "proposed Federal Rule of Evidence 503 provided a useful starting place ..." for the court's discussion of the attorney-client privilege discussion. *Lenihan, 2002 U.S. Dist. LEXIS 16714, 2002 WL 31001842, at *3*. Judge Wilkinson quotes "The most relevant aspect of Standard 503 is its statement of the general rule:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client. *Id.* (quoting *Bieter, 16 F.3d at 935*) (quoting Supreme Court Standard 503(b); [*11] additional citations and quotations omitted)).

It is important to note at the outset of this analysis that Judge Wilkinson did not rely on Standard 503, nor the *Bieter* decision for the same purposes that Freeport seeks to now accomplish. The *Lenihan* decision was not an

analysis of when and how an independent consultant can qualify as a representative of the lawyer and/or client for the purposes of the attorney-client privilege. Therefore, Freeport's reliance on a case from this District is unpersuasive for present purposes.

However, the *Bieter* Court did consider whether communications between, or disclosed to, a client's independent consultant fall outside the protection of the attorney-client privilege. It is important to note that in finding that the privilege applied, the *Bieter* Court first decided that the consultant was the "functional equivalent" of the client's employee, the communications in question fell within the scope of the consultant's duties, were made at the behest of his superior (who was an employee of the client), and were made for the purposes of seeking legal advice for the client. *Id. at 939-940*.

Briefly, Bieter Company [*12] was a partnership formed to develop a parcel of land in Minnesota. Pursuant to the development, the company encountered obstacles which included lack of cooperation from local government and machinations by competing developers. The Company eventually filed suit under the *Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § § 1961-1968*, alleging generally that the competing developers were bribing the state government, which resulted in the prevention of the company's approval for rezoning.

Bieter Company hired a certain Dennis S. Klohs as an independent contractor to provide advice and guidance regarding commercial and retail development in Minnesota. Mr. Klohs was to work out of Bieter's office, and the purpose of the agreement, primarily, was the acquisition of Target Stores as a tenant in a particular development project. Bieter Company was represented by Dorsey & Whitney, a Minneapolis law firm.

In establishing the nature of their relationship, Bieter Company submitted Mr. Kloh's affidavit in which he attested as follows: (1) his duties were "varied and extensive; (2) he worked with architects, consultants and counsel, and appeared at public [*13] hearings before the Eagan City Council and the Eagan Advisory Planning Commission; and (3) he was viewed by and dealt with by the City of Eagan officials, Target and other potential tenants, the media, and the defendants in [the] lawsuit as a representative of Bieter." *Id. at 934*. Bieter Company further asserted that Mr. Klohs had an equity interest in the development and that he was responsible for paying Dorsey & Whitney's fees. Summarily, the Court found that while Mr. Klohs was acting in the capacity of an independent contractor, he was an individual without which Bieter Company could not exist. Therefore, the Court ruled that Klohs was a representative of Bieter Company.

Before getting to the issue of whether the particular communications Freeport is contending are protected by the attorney-client privilege, the Court must first determine whether Mr. Maduell, although an independent consultant, can be viewed as a representative of Freeport for privilege purposes.

Mr. Maduell is a current employee of Crescent Technology and former employee of Freeport. Mr. Maduell's deposition took place on April 12, 2004. Mr. Maduell works as a full time consultant for Freeport, [*14] assisting with the development of the "Main Pass Energy Hub" project, and deals mostly with Mr. Landry (Vice President of Freeport). n1 Prior to his work as an independent consultant with Freeport, Mr. Maduell worked for twenty-five years as an employee of various Freeport entities. n2

---

n1 Rec. Doc. No. 202, OSFI's Supplemental Memorandum in Support of Motion to Compel Discovery Responses, Exhibit 1 at pp. 8-12.

n2 *Id.* at pp. 13-33

---

Freeport asserts that the fact (1) that Mr. Maduell previously worked for Freeport for twenty-five years; and (2) works full-time everyday in Freeport's offices with Freeport employees, all answering to Mr. Landry, together, show that he is a representative of Freeport and entitled to be classified as the functional equivalent of a Freeport employee. Just as a note, in reviewing the deposition testimony of Mr. Maduell, the Court finds that Mr. Maduell indicated that his current boss is Jatinder Jolly n3, not Mr. Landry.

---

n3 It is not indicated in the papers submitted to the Court whether Mr. Jolly is also a Crescent Technology employee.

---

[*15]

The Court finds that Freeport has not carried its burden in setting forth sufficient facts for the Court to decide with a reasonable certainty that the attorney-client privilege is applicable here, as the court found in *Bieter*. For example, Freeport has not established, or attempted to establish, that Mr. Maduell holds himself out to be or is perceived by others as Freeport's representative. Nor has Freeport shown the Court, for instance, that Mr. Maduell is the intimate link with the development of Main Pass Energy Hub project, and the project is the *sine qua non* of Freeport's existence. As another example,

Freeport does not assert that Mr. Maduell owns any equity interest in the Main Pass Energy Hub project.

The above are some examples of the characteristics considered by the *Bieter* Court in determining that Mr. Klohs was more than an independent contractor for Bieter Company. Freeport's general contentions regarding Mr. Maduell's length of time in association with Freeport or the fact that he works in Freeport's office and assists with the development of the Main Pass Energy Hub project fall short of the findings in *Bieter.*

In considering the applicability of [*16] the attorney-client privilege to outside consultants, "courts have been cautious in extending its application." *United States Postal Service v. Phelps Dodge Refining Corporation, 852 F. Supp. 156, 161 (E.D.N.Y. 1994)* (finding that outside scientific consultants hired to conduct an environmental audit and to oversee remedial work were not agents for the purposes of the privilege; and citing discussion in *Federal Trade Comm'n v. TRW, Inc. 202 U.S. App. D.C. 207, 628 F.2d 207, 212 (D.C. Circuit 1980)).*

Accordingly, the privilege was not properly asserted by Freeport as to Mr. Maduell, and OSFI should be allowed more time to depose Mr. Maduell. The Court will now discuss the applicability of the work product doctrine to the documents reviewed by Mr. Maduell prior to his deposition.

**2. Work Product Doctrine**

*Rule 26(b)(3) of the Federal Rules of Civil Procedure* governs the disclosure of documents prepared in anticipation of litigation and provides:

> ... a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation [*17] of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*Fed. R. Civ. P. 26(b)(3).*

The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947); Blockbuster Entertainment Corp. v. McComb Video, Inc., 145 F.R.D. 402, 403 (M.D.La.1992).* It protects two categories of materials: ordinary work-product and opinion work-product. *Snowden v. Connaught Lab. Inc., 137 F.R.D. 325, 330-32 (D.Kan.1991);* [*18] *see generally Upjohn Co. v. United States, 449 U.S. 383, 400-02, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981).*

However, the doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client. It focuses only on materials assembled and brought into being in anticipation of litigation. *Piatkowski v. Abdon Callais Offshore, L.L.C., 2000 U.S. Dist. LEXIS 12067, 2000 WL 1145825 at *2 (E.D. La. 2000).* Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *United States v. El Paso Co., 682 F.2d 530 (5 th Cir.1982), cert. denied, 466 U.S. 944, 80 L. Ed. 2d 473 (1984).* It also does not extend to the underlying facts relevant to the litigation. *See generally Upjohn, 449 U.S. at 395-96.*

In determining whether a document was made in anticipation of litigation, the primary focus is on the reason or purpose for creating the document. *Beal v. Treasure Chest Casino, L.L.C., 1999 U.S. Dist. LEXIS 10275, No. 98-0786, 1999 WL 461970, *3 (E.D.La. 1999).* Moreover, the burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect [*19] the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co., 173 F.R.D. 431, 432 (E.D. La. 1997).*

As an initial matter, to the extent that Freeport asserts the documents are protected by the attorney-client privilege, and to the extent the documents were between Mr. Maduell and any Freeport attorneys, the documents are not privileged due to Mr. Maduell's third-party status. OSFI further asserts that it is entitled to disclosure of the identity of the documents because any work-product immunity was waived pursuant to *Federal Rule of Evidence 612,* when Freeport's counsel disclosed the documents to Mr. Maduell in preparation for his deposition. Freeport, on the other hand, argues that OSFI has not met the three conditions of *Fed. R. Evid. 612* in order to establish a waiver of the doctrine.

OSFI has not argued that the work product doctrine does not apply to the documents reviewed by Mr.

Maudell. Rather OSFI argues that any the immunity attaching to the documents was waived by virtue of *Rule 612*. Therefore, by not raising the issue, the Court will presume that OSFI has conceded [*20] that the documents are covered by the work product doctrine. Thus, the Court will focus only on whether a waiver has occurred.

*Federal Rule of Evidence, Rule 612* provides in part:

> Except as otherwise provided in criminal proceedings ... if a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. (West 2004 Ed.).

This rule is applicable to depositions by way of *Fed.R.Civ.P. 30(c)*. *See Woodward v. Avondale Industries, 2000 U.S. Dist. LEXIS 5419, 2000 WL 385513 (E.D. La. April 14, 2000)* (citing 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure; Evidence* § 6183, at 452 (1993). *Rule 30(c)* provides that "examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the [*21] Federal Rules of Evidence except *Rules 103 and 615*."

Freeport correctly points out that OSFI has not satisfied the requirements of *Rule 612* such that this Court should order Mr. Maduell to identify the documents he relied upon in preparation for his deposition. The mere showing of alleged work product to a witness does not equal a waiver of work product protection. *See Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984)*. The sole purpose of *Rule 612* is to "promote the search of credibility and memory." *Fed.R.Evid. 612* advisory committee note.

Mr. Maduell was asked if he had you reviewed any documents in preparation for his deposition, to which he answered "yes." However, when asked by OSFI what documents he had reviewed, Mr. Maduell was instructed by counsel to not answer based on privilige. n4 OSFI has made no showing to the Court that it established that Mr. Maduell used the documents to refresh his memory and for the purpose of testifying at his deposition.

N4 *Id.*, at p. 5.

[*22]

Further, if OSFI had made this showing, it still has not demonstrated to the Court why compelling disclosure of the identification of the documents would be necessary and in the interests of justice. Freeport has admitted that any of the documents used by Mr. Maduell in preparation for his deposition have previously been produced to OSFI.

Therefore, the only purpose that would be served by ordering Mr. Maduell to identify the specific documents he reviewed of the total documents OSFI has already obtained, would be to reveal the mental impressions of Freeport's counsel as to what is relevant or important from Freeport's point of view. *See Aguinaga v. John Morrell & Co., 112 F.R.D. 671, 683-684 (D. Kan. 1986)* (finding that where the questioning party already had access to the documents, the only purpose behind the question concerning which documents had been shown would be to inform the opposing side of "the attorneys' process of selection and distillation of documents." The court concluded that "discovery would reveal nothing more than what documents the attorneys thought were relevant to the transactions."). Therefore, work-product doctrine applicability has not [*23] been waived here by virtue of *Fed.R.Evid., Rule 612*.

Further, OSFI contends that Freeport has waived the work product privilege by showing the documents to Mr. Maduell, as a former employee of Freeport. For the sake of thoroughness, if OSFI makes this contention on the basis that the work product privilege is waived by virtue of disclosure to a third party, that contention is in error. Although the attorney-client privilege can be waived by disclosing the protected documents to a third party, the "disclosure of work product materials to third parties does not necessarily constitute waiver of the privilege. A waiver of work product protection only occurs when the party asserting the privilege substantially increases the likelihood that the opposing party would come into possession of the statements." *High Tech Communications v. Panasonic Co., 1995 U.S. Dist. LEXIS 2547, 1995 WL 83614, at *4 (E.D. La. Feb. 24, 1995)* (citing *In re Convergent Technologies, 122 F.R.D. 555, 564 (N.D. Ca. 1988)*; and *Anderson v. Torrington Co., 120 F.R.D. 82, 86-87 (N.D. Ind. 1987))*.

The Court further found that the party asserting waiver [*24] has the burden of showing that by virtue of disclosure to a third party, the likelihood that it would come in possession of the documents has substantially increased. *Id.* Therefore, even though the Court decided *supra* that Mr. Maduell is a third party as opposed to a representative of Freeport, OSFI has not demonstrated

that the work product protection has been waived by allowing Mr. Maduell to review the documents prior to his deposition.

Accordingly,

**IT IS ORDERED** that this Court's previous order denying Freeport's **Motion for Leave to File Supplemental Reply Memorandum in Opposition to OSFI's Motion to Compel Discovery and for Sanctions (doc. # 210) is REVOKED AND RESCINDED.** The Clerk shall enter the memorandum into the record.

**IT IS FURTHER ORDERED** that the **Motion to Compel Discovery and for Sanctions (doc. # 160) is GRANTED IN PART** and **DENIED IN PART** as follows:

1) **GRANTED** to the extent OSFI seeks to depose Donald Whitmire and to continue the deposition of Nancy Parmalee. The parties shall inform the Court **no later than June 2, 2004, of** the dates for which these depositions have been scheduled.

2) **GRANTED** to the [*25] extent OSFI seeks more time to depose Mr. Maduell. OSFI will be allowed to use the remaining time it has available up to the seven hours allowed under the Federal Rules of Civil Procedure to depose Mr. Maduell. The parties shall inform the Court **no later than June 7, 2004,** of the dates for which this deposition has been scheduled.

3) **DENIED** to the extent OSFI seeks an order compelling Mr. Maduell to identify the documents he used in preparation for his deposition.

To obtain a transcript of the proceedings for the Court's findings, the parties should contact Gaynell Banta, Court Recorder Supervisor, at 589-7720.

New Orleans, Louisiana, this 2nd day of June 2004.

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**