Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                    JACKSON DIVISION

 3

 4   OLIVIA Y., ET AL                          PLAINTIFFS

 5   VS.                  CIVIL ACTION NO. 3:04CV251LN

 6   HALEY BARBOUR, ET AL                      DEFENDANTS

 7

 8

 9

10            DEPOSITION OF ROBERT HAMRICK

11

12        Taken at Bradley Arant Rose & White,
          188 East Capitol Street, Suite 450,
13          Jackson, Mississippi, on Monday,
          June 20, 2005, beginning at 8:30 a.m.

14

15

16

17

18

19
     REPORTED BY:
20
          CELESTE O. WERKHEISER, RMR
21        State-Wide Reporters
          4400 Old Canton Road
22        Suite 160 (39211)
          Post Office Box 14113
23        Jackson, Mississippi 39236
          Telephone:  (601) 366-9676
24        Fax:  (601) 366-9756
          www.legalink.com
25
```

Page 2

APPEARANCES:

ERIC E. THOMPSON, ESQUIRE
MARCIA LOWRY, ESQUIRE
Children's Rights, Inc.
404 Park Avenue South
New York, New York 10016
Telephone: (212) 683-2210
Fax: (212) 683-4015
    ATTORNEYS FOR PLAINTIFFS

RUSTY FORTENBERRY, ESQUIRE
McGlinchey Stafford, PLLC
200 South Lamar Street
Suite 1100
Jackson, Mississippi 39201
Telephone: (601) 960-8400
Fax: (601) 960-8431
    ATTORNEY FOR DEFENDANTS

Page 4

T-A-B-L-E O-F C-O-N-T-E-N-T-S

Examination By:                          Page
Mr. Thompson..................................5

Stipulation...................................3

Exhibits:
No. 81   Foster Care Review Board's Report....36
No. 82   Periodic Administrative
         Determination on Foster Children....47
No. 83   Issues Observed - Comparison Report
         Foster Care Review - FY 2004........86
No. 84   MDHS Division of Family & Children's
         Services - Individual Service Plan..94
No. 85   Foster Care Review - Summary Report -
         Issues in Foster Children's Cases..101
No. 86   MDHS - Family & Children's Services -
         Memo dated 6-17-03..................111
No. 87   Foster Care Review - Summary Report -
         Issues in Foster Children's Cases..114
No. 88   Page 2 of 2........................120
No. 89   Foster Care Review - Summary Report -
         Issues in Foster Children's Cases..126
Certificate of Court Reporter................140
Witness Signature Page.......................141

Page 3

STIPULATION

It is hereby stipulated and agreed by and between the parties hereto, through their respective attorneys of record, that this deposition may be taken at the time and place hereinbefore set forth, by Celeste O. Werkheiser, Registered Merit Reporter and Notary Public, pursuant to the Federal Rules of Civil Procedure, as amended;

That the formality of READING AND SIGNING is specifically NOT WAIVED;

That all objections, except as to the form of the questions and the responsiveness of the answers, are reserved until such time as this deposition, or any part thereof, may be used or is sought to be used in evidence.

---

Page 5

ROBERT HAMRICK
having been first duly sworn, was examined and testified, as follows:
        EXAMINATION
BY MR. THOMPSON:
    Q.   Good morning, Mr. Hamrick.
    A.   Morning.
    Q.   Mr. Hamrick, would you state your full name, please, for the record?
    A.   Robert Andrew Hamrick.
    Q.   Mr. Hamrick, my name is Eric Thompson.  This is attorney Marcia Lowry.  We represent the plaintiffs in the matter of Olivia Y. v. Barbour.  Do you understand that you're here today to give sworn testimony in that matter?
    A.   Yes.
    Q.   Mr. Hamrick, did you review any documents in preparation for this deposition?
    A.   No.
    Q.   Could you state what your position is with DHS, please?
    A.   My title is Program Administrator Senior over the state's Foster Care Review Program.

Page 50

1  Q. And when you say in certain areas,
2  are we talking about specific counties or
3  regions?
4  A. We produce a report each month that
5  does show a comparison between the regions and
6  what those issues are. And there are specific
7  regions, areas of the state, where it's more
8  problematic than others.
9  Q. And what is that report?
10 A. It's a report we call Issues Observed
11 During Foster Care Review. It's just one --
12 it's nothing automated. It's something I put
13 together manually each month.
14 Q. The issues observed include other
15 issues besides the lack of adequate
16 documentation, correct?
17 A. It could, yes, sir.
18 Q. Focusing specifically on the accuracy
19 of MACWIS entries, are there specific counties
20 or regions that have come to your attention as
21 having more problems than others in the accuracy
22 of their MACWIS data entry?
23 A. Yes, sir.
24 Q. And what counties or regions are
25 those?

Page 51

1  A. Primarily Region 6 North, Forrest
2  County. And Region 6 South, Harrison and
3  Hancock.
4  Q. And does that include the accuracy of
5  placement data?
6  A. Yes, sir.
7  Q. Does it include the accuracy of entry
8  of the custody dates?
9  A. That's been reported a time or two.
10 It's nothing that the reviewers focus on too
11 much. They're more concerned with what happens
12 after they come into custody as opposed to when
13 a date got entered into -- like when a custody
14 got entered into a system. But they have --
15 reviewers have reported it to me on a few
16 occasions.
17 Q. You base the scheduling of Foster
18 Care Reviews, though, on the entry date into
19 custody, correct?
20 A. Yes.
21 Q. So if that entry date into custody is
22 erroneously entered or not entered into MACWIS,
23 you would not be able to accurately schedule a
24 case for a six-month review; is that correct?
25 A. That is correct.

Page 52

1  Q. Has it come to your attention that
2  certain cases have been scheduled for reviews
3  that were not due for review?
4  A. What was that now?
5  Q. Let me ask it a different way. Has
6  it come to your attention that there have been
7  cases that were due for reviews that were not
8  scheduled due to erroneous MACWIS information?
9  A. I'm sorry. I hate to be hard headed.
10 But you're saying there's cases that have not
11 been scheduled for a review because the
12 information entered into MACWIS was not timely
13 or --
14 Q. Yes. That's my question.
15 A. Okay. I'm sorry. Yes. Yes, that's
16 correct.
17 Q. And what have you done as a result of
18 that being brought to your attention?
19 A. Well, when we find out about them, we
20 just try to schedule them as quickly as we can
21 for a review. Also, we will go in, me and --
22 I'll usually take that report I was telling you
23 about earlier, that Children in Custody With
24 Conference Dates More Than Six Months, I'll take
25 that report and sit down with one of our -- one

Page 53

1  of the staff persons in our state office and
2  she'll look up that information on -- I don't
3  know what she calls the back end of the system,
4  I don't know what she means by that, but that's
5  what she does, and she can usually pinpoint
6  exactly what happened on those cases.
7      So if I find that it's one where the
8  county may have been late entering information
9  into the system, I'll notate it on that report
10 and send a copy of that report to the Regional
11 Director who's over that area of the state as
12 well as I'll send a copy to the reviewer because
13 they still have -- I mean, even though it was
14 entered, the information was entered into the
15 system late, they still need to review it so
16 I'll tell them to go ahead and schedule it as
17 quickly as they can for review.
18 Q. How do those cases come to your
19 attention?
20 A. Like I said, on that printout that we
21 get each month of Children in Custody With
22 Conference Dates More Than Six Months.
23 Q. I guess my question is more the ones
24 that have not been scheduled because there was
25 erroneous MACWIS information, how do those cases

14 (Pages 50 to 53)