IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., et al.                                                                                    PLAINTIFFS

v.                                                                           CIVIL ACTION NO.  3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, et al.          DEFENDANTS


**PLAINTIFFS' EXPEDITED MOTION FOR A RULE 35(a) ORDER REQUIRING DEFENDANTS TO PRODUCE NAMED PLAINTIFF JOHN A. FOR MENTAL EXAMINATION**

COME NOW Plaintiffs, by and through Next Friend and *Guardian ad Litem* for John A., James Johnson, and respectfully move, pursuant to Rule 35(a) of the Federal Rules of Civil Procedure and upon the accompanying exhibits submitted herewith, for an Order authorizing the conduct of an independent mental health examination by Plaintiffs' testifying expert, Dr. Wood Hiatt, of named plaintiff John A., who currently is in the legal and physical custody of Defendants.

Given the October 1, 2005 expert deadline Plaintiffs face in this case, and Plaintiffs' expert's limited availability in September, this examination must occur in the month of August in order for Dr. Hiatt to incorporate his findings into a final report by the Court-ordered expert deadline.  Therefore, Plaintiffs respectfully request an expedited ruling on this motion.  Plaintiffs also respectfully request that the Court waive the requirement for a separate Memorandum of Law and accept the following recitation in support of the Motion pursuant to Uniform Local Rule 37.1(B).

I.      **Background**

John A. is a 15-year-old youth from Forrest County who has been a foster child in the Defendant Division of Family and Children's Services' ("DFCS") custody since he was nine years old. John has been diagnosed with mental illness and behavioral disorders, and Plaintiffs allege that DFCS has failed to provide him with consistent, necessary, and individualized mental health services in a placement appropriate to his needs. *See* Plaintiffs' Amended Complaint, ¶ 75. Instead, DFCS moved John more than 35 times in four years, sent him out of state several times, and caused him to suffer harm by these actions and inactions and by other egregious failures. *Id*. at ¶¶ 75-82.

Plaintiffs have retained Dr. Wood Hiatt as an expert to evaluate the psychiatric and psychological consequences to John A. of his experiences in DFCS foster care. Such expert examinations are common in lawsuits alleging psychological harm to children while in foster care. Dr. Hiatt is a Jackson-area medical doctor whose specialties are pediatric and adolescent psychiatry, forensic psychiatry, and general psychiatry.[1]

Plaintiffs' counsel have unsuccessfully sought to gain access to their client, John A., who is still in the legal and physical custody of Defendants, so that he may be examined by Plaintiffs' expert. By letter of August 1, 2005, counsel for Plaintiffs requested cooperation from counsel for Defendants in arranging for the production of named plaintiff John A. for an examination by Dr. Hiatt, and proposed three different available dates in August (Aug. 15, 24, or 31). (See Ex. B, Letter from Susan Lambiase, counsel for Plaintiffs, to Betty Mallett, counsel for Defendants).

On August 2, 2005, counsel for Defendants responded that they needed additional information about Dr. Hiatt's proposed examination before they could decide whether to make John A. available. (See Ex. C, Letter from Betty Mallett, counsel for Defendants, to Susan

---

[1] A copy of Dr. Hiatt's *curriculum vitae* is attached as Exhibit A.

Lambiase, counsel for Plaintiffs). Additional information was sent the next day by counsel for Plaintiffs. (See Ex. D, Letter from Susan Lambiase, counsel for Plaintiffs, to Betty Mallett, counsel for Defendants, dated Aug. 3, 2005). Plaintiffs' counsel again noted the time constraints concerning expert reports, and requested that Defendants state their position on whether they would make John A. available for the examination by Monday, August 8, 2005.

Responding late Tuesday night, August 9, 2005, counsel for Defendants again took no position on whether they would make named plaintiff John A. available for examination by Plaintiffs' expert. Instead, defense counsel simply stated that they forwarded Plaintiffs' correspondence to DHS and advised that Plaintiffs' counsel should wait until Defendants respond further before taking any further action. Defendants did not give any indication when they anticipated they would be able to take a position. (See Ex. E, Letter from Betty Mallett, counsel for Defendants, to Susan Lambiase, counsel for Plaintiffs, dated August 9, 2005).

On August 10, 2005, Plaintiffs' counsel requested a definitive response by August 12, 2005, at 12:00 p.m. Central Time as to whether Defendants would produce John A. for examination so that the Court's assistance could be enlisted if necessary regarding this straight-forward but time-sensitive matter. (See Ex. F, Letter from Susan Lambiase, counsel for Plaintiffs, to Betty Mallett, counsel for Defendants, dated Aug. 10, 2005). Plaintiffs' counsel also sent Ms. Mallett a Good Faith Certificate, and asked her to sign and return the Certificate if she were unable to agree to the psychiatric exam. (See Ex. F).

On August 12, 2005, counsel for Defendants replied by the noon deadline, and stated that DHS would need until August 23, 2005, to evaluate Plaintiffs' request for access to John A. (See Ex. G, Letter from Betty Mallett, counsel for Defendants, to Susan Lambiase, counsel for Plaintiffs, dated August 12, 2005). Defense counsel did not sign or enclose the Good Faith

Certificate that counsel for Plaintiffs had sent to her two days earlier. (See Ex. H, Affidavit of Susan Lambiase).

## II. Argument

While in a typical lawsuit, plaintiffs' counsel would not need a Rule 35(a) order for a routine independent evaluation of a plaintiff by plaintiffs' expert, the unique fact that named plaintiff John A. is in Defendants' custody necessitates Plaintiffs' reliance upon the opposing party to make the plaintiff child available for examination. The examination sought by Plaintiffs is standard practice and is usually arranged by agreement. *See* 8A WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. CIV.2d § 2234 ("In fact, physical and mental examinations are usually arranged by stipulation of the attorneys, with the rule standing as a compulsory sanction that helps to produce stipulations."). Even in complex cases similar to this, with plaintiff foster children in a defendant agency's custody, such examinations have readily occurred.[2] *See LaShawn v. Dixon*, 762 F.Supp. 959, 967 (D.D.C. 1991) ("Testifying at trial were four child psychiatrists who had reviewed the case records of and conducted personal interviews with four of the named plaintiffs."). Lack of timely cooperation from defendants, in the face of an upcoming Court-ordered expert deadline, gives plaintiffs no other choice but to file this expedited motion for a Rule 35(a) Order from this Court.

---

[2] Expert psychiatric and psychological examinations were conducted of named plaintiffs in class action child welfare cases, including, but not limited to, *Joseph and Josephine A. v. N.M. Dep't of Human Svcs.*, No. 80-0623 (D.N.M. July 25, 1980), *Jeanine B. v. Thompson*, No. 93-Civ-0547 (E.D. Wisc. June 1, 1993), *Marisol A. v. Guiliani*, No. 95-Civ-10533929 (S.D.N.Y. Dec. 13, 1995), and *Charlie and Nadine H. v. Whitman*, No. 99-3678 (D.N.J. Aug. 4, 1999). Such mental examinations have also occurred in damages actions against child welfare systems, including, but not limited to, *Martin, Bill, Laura and Vincent A. v. Giuliani, et al.*, Index No. 24388/85 (N.Y. Sup. Ct. Oct. 14, 1999), *Dakinya B. v. Giuliani, et al.*, Index No. 401307/96 (N.Y. Sup. Ct. Oct. 14, 1999), *Pamela C. v. Giuliani, et al.*, Index No. 401308/96 (N.Y. Sup. Ct. Oct. 14, 1999), *Frances and John F. v. Giuliani, et al.*, Index No. 401306/96 (N.Y. Sup. Ct. Oct. 14, 1999), *Mark G., et al. v. Giuliani, et al.*, Index No. 401304/96 (N.Y. Sup. Ct. Oct. 14, 1999), and *Jeremy M. v. Giuliani, et al.*, Civ. Act. No. 00-Civ.-6498 (RJW) (S.D.N.Y. Aug. 15, 2000).

### A. Rule 35(a) Specifically Provides For The Relief Sought Here

Rule 35(a) of the Federal Rules of Civil Procedure provides that "when the mental or physical condition . . . of a party or of a person in the custody or under the legal control of a party, is in controversy, the court . . . may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown . . ." Fed. R. Civ. P. 35(a). The U.S. Supreme Court has held that it is "the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements . . . are necessarily related." *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). *See, also Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970).

### B. John A.'s Psychological Condition Is At Issue In This Case

In *Schlagenhauf*, the U.S. Supreme Court noted that there are "situations in which the pleadings alone are sufficient to meet these [Rule 35(a)] requirements," and offered as examples cases meeting the 'in controversy' requirement a negligence action in which a plaintiff "places that mental or physical injury clearly in controversy," and the case of a "defendant who asserts his mental or physical condition as a defense to a claim." 379 U.S. at 119. Such is the case here.

In their Amended Complaint, Plaintiffs clearly assert that John A. has suffered psychological harm while in Defendants' custody, which squarely puts his mental condition at issue. Plaintiffs' Amended Complaint, ¶¶ 75-81 (stating, for example, that "John has serious psychological and behavioral problems that have been exacerbated by the numerous times DFCS has moved him to different foster homes and institutions, the failure to provide appropriate

5

mental health services of any continuity, and the failure to provide him with a permanent family," and that "[t]he lack of continuity of care in the treatment of John's mental illness also has aggravated his psychological and behavioral problems."). Plaintiffs have also directly asserted that defendants have failed to provide John A. with appropriate, least-restrictive placements and mental health services necessary to prevent him from deteriorating psychologically while in state custody. *Id.* at ¶82. These alleged deficiencies in John A's treatment and care are central to his constitutional claim against the Defendants. The pleadings in the case thus squarely put John A.'s mental condition in controversy. *See Doe v. District of Columbia*, 2005 WL 1692685 (D.D.C. 2005) (finding that a minor child alleging physical and sexual abuse while in the custody of the District of Columbia foster care system caused physical, emotional, and mental pain had put the minor child's mental condition in controversy for purposes of Rule 35(a) order for examination) (attached as Ex. I).

**C.** **Plaintiffs Have Shown Good Cause For The Independent Examination Of John A.**

The *Schlagenhauf* Court did not set out a bright-line rule for what is considered "good cause," but instead left it to the discretion of the trial court. *Id.* at 118. Here, the pleadings alone give sufficient cause to allow Plaintiffs' independent expert examination as they allege actionable psychological harm to the child. *Id.* at 119. Surely, named plaintiff John A. has a right to be independently examined when his psychological injury is in controversy. *See Doe*, 2005 WL 1692685 at *4 (allowing *defendant* examination of plaintiff child where "plaintiff has voluntarily brought this lawsuit and placed his mental and emotional injury in controversy, and he has not made an independent showing that harm will result from submitting him to an [independent medical exam]").

6

Defendants have not asserted that Plaintiffs are not entitled to the access they seek, but have sought an indefinite amount of time to determine whether John A. would be harmed by the examination sought by Plaintiffs. (See Ex.'s C & E). However, Defendants have recently stated that John A. is "doing quite well in his current foster home where he lives with his siblings" and that "[h]is condition is more stable today than it has been for quite some time." (See Ex. C). Plaintiffs' counsel have discussed the evaluation with John A. and with his *guardian ad litem* and next friend James Johnson, and are not aware of any circumstances that would counsel against the routine evaluation being sought here. It is Dr. Hiatt's professional opinion that there will be nothing harmful in allowing John A. to speak to a trained mental health professional about his experiences while in Defendants' custody, especially given John A.'s multiple experiences with the mental health system over the course of his short life.[3]

### III.     Time, Place and Manner Of John A.'s Examination

Plaintiffs seek to have Dr. Hiatt conduct a clinical interview of John A. for two three-hour sessions (one session in the morning and one session in the afternoon, to be conducted in one day) in his private Jackson-area office. Dr. Hiatt is still holding open his remaining available days of August 24 and 31, 2005 for the day-long examination of John A. in Ridgeland, MS. As Dr. Hiatt will not be available for three weeks in September 2005, it is imperative that the examination occur this month so that he can produce an expert report by the Court's expert deadline of October 1, 2005. Plaintiffs thus seek an expedited Order for Defendants to cooperate in producing named plaintiff John A. for Plaintiffs' expert examination.

---

[3] As Dr. Hiatt's *curriculum vitae* indicates, for nine years he was the Medical Director of CARES, where all of the children Dr. Hiatt treated were in state custody. Prior to his CARES appointment, he served on the faculty of the University of Mississippi Medical Center for twelve years, where he specialized in adolescent psychiatry. Dr. Hiatt is sensitive to the unique challenges of working with children who have spent years in the child welfare system.

7

WHEREFORE, Plaintiffs respectfully request that this Court order Defendants to produce and transport John A. to Dr. Hiatt's office for examination on August 24 or 31, 2005, and any and all additional remedies this Court deems appropriate. A proposed Order is attached.

RESPECTFULLY SUBMITTED, this, the 12th day of August, 2005.

/s Eric E. Thompson
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Susan Lambiase (MBN 43992 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Corene Kendrick (MBN 43989 *pro hac vice*)
Tara S. Crean (MBN 44447 *pro hac vice*)
CHILDREN'S RIGHTS
404 Park Ave. South
New York, NY 10016
(212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capital Street, Suite 450
Jackson, MS 39201
(601) 948-8000

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
(601) 355-4013

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
Eric Manne (MBN 43988 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, NY 10154
(212) 407-4000

*PLAINTIFFS' COUNSEL*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

Betty A. Mallett, Esq.
Dewitt L. Fortenberry, Jr, Esq.
McGlinchey Stafford, PLLC
200 South Lamar Street, Suite 1100
Jackson, MS 39201

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, MS 39201

*Attorneys for Defendants*

/s Eric E. Thompson_____