

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                              **PLAINTIFFS**

v.                                                                    CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*          **DEFENDANTS**

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' APPLICATION FOR REVIEW OF MAGISTRATE'S ORDER DENYING DEFENDANTS' CLAIM OF PRIVILEGE

---

Plaintiffs oppose Defendants' Application for Review of Magistrate's Order Denying

Defendants' Claim of Privilege.  Defendants have failed to make the required showing that

Magistrate Judge Nicols' August 8, 2005 Order was clearly erroneous or contrary to law.

### I.  INTRODUCTION

Judge Nicols' July 18, 2005 Order granted Plaintiffs' Motion to Compel Documents

Responsive To Plaintiffs' First Request For Production Of Documents, but reserved ruling on

Defendants' claim of attorney-client privilege as to certain named plaintiff case record entries

pending an *in camera* review.  (Order attached as Ex. A).  After an *in camera* review of the

contested communications between the Attorney General's office and Southern Christian

Services for Children and Youth, Inc. ("Southern Christian Services"), an independent contractor

operating a group home providing placement services to Named Plaintiff Jamison J., and after

review of the Mississippi Department of Human Services ("DHS") contract with Southern

Christian Services, Judge Nicols denied the claim of privilege and compelled production of the

4/65551.1

contested documents by Order of August 8, 2005. (Order attached as Ex. B). Without providing

any evidence to challenge the Court's finding that the governing contract expressly limits the

relationship between DHS and Southern Christian Services, Defendants argue that DHS's

contractual relationships with all third-party agencies that provide services to DHS establish

attorney-client relationships with Defendants' counsel. There is no basis for reversing Judge

Nicols' August 8, 2005 Order.

## II. ARGUMENT

Discovery orders by a Magistrate Judge are not to be disturbed on review unless they are

shown to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72; *Cauthen v. Apfel*, 199 F.

Supp. 2d 525, 527 (S.D. Miss. 2001). Defendants fail to meet this standard here because they

have not presented any evidence to contravene the Court's finding that the attorney-client

privilege does not apply to the documents at issue.

The burden of establishing the attorney-client privilege rests upon the party claiming

privilege. *Fisher v. United States*, 425 U.S. 391, 396 (1976). Moreover, the attorney-client

privilege is "to be strictly confined within the narrowest possible limits consistent with the logic

of its principle." *U.S. v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976) (citations omitted). The

attorney-client privilege applies only to communications made by an attorney for the purpose of

facilitating the rendition of professional legal services to a client or the client's representative. *In

re Bieter Company*, 16 F.3d 929, 935 (8th Cir. 1994) (citing Supreme Court Standard 503(b)).

A client's "representative" may be his employee, or a third party who is the "functional

equivalent" of the client's employee. *Freeport-McMoran Sulphur, L.L.C. v. Mike Mullen Energy

Equip. Res., Inc.*, Nos. 03-1496, 1664, 2004 WL 1237450, at *4 (E.D. La. June 2, 2004)

(attached at Ex. C) (citing *In re Bieter Co.*, 16 F.3d at 939-940). To meet their burden of proof,

the Defendants must make a "detailed factual showing" that the criteria for functional equivalence are met. *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 492-94 (Fed. Cl. 2000) (detailed evidence necessary to establish principal-agent relationship for the unusual extension of the attorney-client privilege to include third parties was absent).

Judge Nicols recognized the "functional equivalence" standard for a third-party "representative," and the need for detailed information regarding the relationship between DHS and the Southern Christian Services group home, ordering Defendants to produce the governing contract for *in camera* review. (Ex. A at 2). Although Defendants continue to assert, without elaboration, that Southern Christian Services "stand[s] in the shoes" of DHS with regard to care for children in DHS custody (Defs' Mot. at 7), Defendants do not contest the Court's factual finding that the DHS contract with "Independent Contractor" Southern Christian Services expressly denies an "employer-employee" or "principal-agent" relationship. (Ex. B at 1).

In light of the governing contract that the Court reviewed *in camera*, Defendants fail to show that the Southern Christian Services group home has the authority to make decisions and statements on DHS's behalf. *See In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 216 (S.D.N.Y. 2001) (attorney-client privilege extended to independent consultant who had authority to make decisions and statements on client's behalf). Nor have Defendants made any showing that Southern Christian Services holds itself out as a DHS representative or is perceived by others as such. *See Freeport-McMoran*, 2004 WL 1237450, at *4-5 (full-time contractor and former employee, essential to the operation of company, not deemed the "functional equivalent" of a company employee for purposes of the attorney-client privilege where no attempt to establish that he held himself out or was perceived as a company representative) (citing *In re Bieter Co.*, 16 F.3d at 939-940) (independent contractor considered the functional equivalent of

an employee where he had an equity interest in represented company's projects, was responsible for paying legal fees for representation, and was perceived as representative by others including defendants in the lawsuit).

By failing to present the Court with any evidence of the necessary principal-agent relationship or its functional equivalent, Defendants have failed to establish that DHS and Southern Christian Services have the kind of significant relationship required to extend the attorney-client privilege to the communications at issue. There is no clear error of fact or law, and Defendants' application for review should therefore be denied.

## III. CONCLUSION

Defendants have failed to provide any factual or legal basis for this Court to overrule Judge Nicols' Order refusing to extend the attorney-client privilege to communications with a third-party independent contractor. For all of these reasons, Defendants' application should be denied and this Court should affirm the August 8, 2005 Order.

Respectfully submitted, this the 2nd day of September, 2005.

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, MS  39201
Telephone:  (601) 948-8000
Facsimile:  (601) 948-3000

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
Telephone:  (601) 355-4013

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Tara S. Crean (MBN 44447 *pro hac vice*)

CHILDREN'S RIGHTS
404 Park Avenue South, 11th Floor
New York, NY 10016
Telephone: (212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
Eric Manne (MBN 43988 *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

*PLAINTIFFS' COUNSEL*

## CERTIFICATE OF SERVICE

I, Melody McAnally, do hereby certify that I have this day caused to be delivered by hand-delivery and by United States Mail, postage prepaid, a true and correct copy of the above and foregoing document to:

Betty A. Mallett, Esq.
McGlinchey Stafford, PLLC
City Centre, Suite 1100
200 South Lamar Street,
Jackson, MS 39201
P.O. Drawer 22949
Jackson, MS 39225

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, MS 39201

*Attorneys for Defendants*

MELODY MCANALLY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMES D. JOHNSON, as next friend to
Olivia Y.; CARLA LEWIS, as next friend
to Jamison J. and SYLVIA FORSTER, as
next friend to Desiree, Renee, Tyson and
Monique P.                                                          **PLAINTIFFS**

VS.                                                   **CIVIL ACTION NO. 3:04CV251LN**

HALEY BARBOUR; DONALD TAYLOR,
as Executive Director of the Department of
Human Services and BILLY MANGOLD,
as Director of the Division of Family and
Children's Services                                                **DEFENDANTS**

## ORDER

This matter came before the court on the Plaintiffs' Motion to Compel Documents Responsive to Plaintiffs' First Request for Production of Documents. The court earlier deferred ruling on the Motion, pending a more complete response from the Defendants. That response has now been received, and the issues to be resolved with regard to production have been further narrowed. The court's ruling on the remaining issues is as follows:

**Document Request No. 1(b):** This Request seeks documents that reflect communications between the Mississippi Attorney General's office and a group home providing placement services to Plaintiff Jamison. The Defendants argue that these documents are privileged, both as attorney client communications and as attorney work product. The communications were made after the group home sought advice from the Department of Human Services, which, in turn, sought advice from the Attorney General's office.



EXHIBIT
"A"

Citing Miss. R. Evid. 502, the Defendants argue that the group home, which operates under a contract between it and DHS, is a "representative of the client" covered by the provisions of the attorney/client privilege. The Plaintiffs argue that, in order to avail itself of that privilege, the home would have to be the "functional equivalent" of a DHS employee, citing *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994) and *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, Nos. Civ. A. 03-1496, 1664, 2004 WL 1237450 (E.D. La. June 2, 2004). Relying on *Bieter*, the court in *Freeport-McMoran* held that, in order to apply the privilege in the context of an independent consultant, the following conditions must be met, " the consultant was the "'functional equivalent' of the client's employee, the communications in question fell within the scope of the consultant's duties, were made at the behest of his superior (who was an employee of the client), and were made for the purposes of seeking legal advice for the client." 2004 WL 1237450 at *4.

Without more information regarding the relationship between DHS and the home in question, the court cannot determine whether the attorney-client privilege should extend to advice sought by the group home. For that reason, the Defendants shall produce the contract between DHS and the group home for *in camera* review. The documents withheld on grounds of privilege shall also be produced. The Motion to Compel will be held in abeyance as to these documents.

**Document Request No. 1(c):** This request seeks complete named Plaintiff MACWIS screen documentation. The Defendants have agreed to provide these documents; however, the Plaintiffs request an Order requiring the production. Such an Order is appropriate, and the Motion to Compel will be granted as to these documents.

**Document Request No. 8(a) and (b):** The Defendants argued that they should not have to produce copies of these documents because the Plaintiffs had acquired them from other sources. The

2

Plaintiffs seek an Order requiring production from the Defendants so as to eliminate any arguments as to authenticity. The Motion to Compel will be granted as to these documents; however, the Defendants may satisfy their obligation to produce the documents by agreeing in writing to waive any objections as to authenticity with regard to the documents that are the subject of this Request.

**Document Request Nos. 9, 21-23, 33-34:** These Requests seek various documents that the Defendants have agreed to provide in their next supplementation; however, the Plaintiffs request an Order requiring the production. Such an Order is appropriate, and the Motion to Compel will be granted as to these documents.

**Document Request No. 32:** This Request seeks "All reports by Defendants to the Secretary of the federal Department of Health and Human Services pursuant to the Early and Periodic Screening, Diagnostic, and Treatment Services Act, 42 U.S.C. § 1396a(a)(43)(D)." The Defendants argued that they should not have to produce these documents because they are maintained "by the Department of Health which is a state agency not under the control of any Defendant." As the Governor of Mississippi is a Defendant in this matter, the court finds this argument to be without merit, and the Motion to Compel will be granted as to these documents.

**Document Request No. 35(c), (d) and (e):** This Request seeks various documents related to investigations or reports of the mistreatment of individual children in DHS custody. The Defendants argue that there is no single source for this information, but that it is only maintained in each child's individual file. The Plaintiffs disagree, arguing that the deposition testimony of Kathy Triplett, a 30(b)(6) designee of the Defendants, suggests otherwise.

A review of Triplett's testimony shows that she stated that her office keeps a manual log of reports of abuse and neglect that are generated by the counties. (Triplett depo., pp. 28-32) She also

3

testified that an electronic report could be requested through MACWIS. The Defendants will be required to produce the information, as testified about by Triplett, that is responsive to these Requests.

  **Request for responsive email or "other digital" information:** The Defendants have responded to this Request by stating that DHS case workers do not have email, but some state office employees do. They have offered to produce any responsive emails or other digital communications, and the Motion to Compel will be granted to this Request.

  IT IS, THEREFORE, ORDERED that the Plaintiffs' Motion to Compel Documents Responsive to Plaintiffs' First Request for Production of Documents is hereby **granted** as discussed above. With regard to Request No. 1, the Defendants shall produce for *in camera* review the contract between the group home in question and DHS, as well as the documents withheld on grounds of privilege, on or before July 29, 2005.

  IT IS SO ORDERED, this the 18th day of July, 2005.


              <u>s/Alfred G. Nicols, Jr.</u>
              UNITED STATES MAGISTRATE JUDGE

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

JAMES D. JOHNSON, as next friend to
Olivia Y.; CARLA LEWIS, as next friend
to Jamison J. and SYLVIA FORSTER, as
next friend to Desiree, Renee, Tyson and
Monique P.                                              **PLAINTIFFS**

VS.                                         **CIVIL ACTION NO. 3:04CV251LN**

HALEY BARBOUR; DONALD TAYLOR,
as Executive Director of the Department of
Human Services and BILLY MANGOLD,
as Director of the Division of Family and
Children's Services                                     **DEFENDANTS**

---

## ORDER

This matter came before the court on Defendants' submission to the court of documents

withheld from production on grounds of privilege, and also on the Defendants' notifying the court

that a pending Motion to Quash Deposition required expedited review of the included request that

the number of depositions in this case be limited. With regard to the *in camera* inspection, the court

notes that the contract between the Mississippi Department of Human Services and Southern

Christian Services for Children and Youth, Inc. expressly limits the relationship of these parties.

Specifically, Southern Christian Services is characterized as an Independent Contractor, and any

other relationship, such as employer-employee or principal-agent, for example, is denied. For this

reason, the undersigned is of the opinion that any communication between Southern Christian

Services and the Office of the Attorney General is not given with the understanding that it is legal

advice to a client. Therefore, no such communication is privileged. The Motion to Compel earlier

filed by the Plaintiffs will be granted as to the responsive documents submitted for *in camera* review.



EXHIBIT

"B"

However, because the documents are ordered to be produced over a claim of privilege, the undersigned will require production by a date that will permit the Defendants to seek further review of this issue, if desired.

The undersigned has also reviewed the Motion to Quash Deposition Notice of Billy Mangold and for Protective Order Limiting Number of Depositions. The court finds that the Plaintiffs have established good cause for taking a second deposition of Mr. Mangold, as the first deposition was for a limited purpose and Mangold is a critical witness in this matter. Therefore, the second deposition will be permitted. The parties are also in disagreement as to the number of depositions that should be allowed in this case, which has been assigned to the complex track.

The Defendants argue that the parties should be limited to ten depositions per side, in accordance with the provisions of Fed. R. Civ. P. 30(a)(2)(A). However, that Rule recognizes that additional depositions may be permitted "with leave of court." A Case Management Plan Order setting the number of depositions would, therefore, supersede Rule 30. Initially, this court permitted ten depositions per side, pending a ruling on the Motion to Dismiss. The parties were instructed to apply to the court for additional discovery on any issues remaining after the disposition of that Motion. The parties ultimately submitted an agreed Amended Case Management Order that covered several discovery issues, but made no mention of a limitation on depositions.

The Plaintiffs argue that the failure to provide for such a limitation demonstrates the court's approval of unlimited depositions in this case. The Defendants appear to take the position that the failure to make a provision implies the court's belief that the initial ten depositions were adequate. Neither argument reflects the court's intention; the failure to include any provision on depositions

2

was merely an oversight by the parties that was not detected by the court, but which will be corrected by this Order.

The Plaintiffs, who have already noticed sixteen depositions, have argued that they should not be limited to "fewer than forty" depositions. The Defendants argue that twenty depositions per side is adequate. Given the nature of this case and the number of Plaintiffs, the court is of the opinion that thirty depositions should be permitted.

IT IS, THEREFORE, ORDERED that the Plaintiffs' Motion to Compel is hereby **granted** as to the relevant documents submitted for *in camera* review. The Defendants shall serve those documents by September 6, 2005.

IT IS FURTHER ORDERED that the Motion to Quash Deposition Notice of Billy Mangold and for Protective Order Limiting Number of Depositions is hereby **denied** to the extent that the Plaintiffs may take a second deposition of Mangold, but **granted** to the extent that the number of depositions in this matter is limited to thirty per side.

IT IS SO ORDERED, this the 8th day of August, 2005.

s/Alfred G. Nicols, Jr.
UNITED STATES MAGISTRATE JUDGE

3

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
FREEPORT-MCMORAN SULPHUR, LLC
v.
MIKE MULLEN ENERGY EQUIPMENT
RESOURCE, INC., et al
No. Civ.A. 03-1496, Civ.A. 03-1664.

June 2, 2004.

Carl David Rosenblum, Edward H. Bergin, Eric M. Whitaker, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Jeffrey M. Baudier, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, Lafayette, LA, for Plaintiffs.

Michael R.C. Riess, Kingsmill Riess, LLC, Charles Rowand Talley, William R. Forrester, Jr., Bradley Joseph Schlotterer, Benjamin R. Grau, Karen Waters Shipman, Jamie A. Domilise, Lemle & Kelleher, LLP, New Orleans, LA, Elliot Ross Buckley, Jr., Law Offices of Sheryl Story, Metairie, LA, Thomas H. Huval, Stephen C. Aertker, Jr., Huval, Veazey, Felder & Aertker, LLC, Covington, LA, Michael K. Swan, Ann Marie Hebert Stephens, Michael C. Henning, Christopher M. Odell, Akin, Gump, Strauss, Hauer & Feld, LLP, Houston, TX, for Defendants.

*ORDER AND REASONS*

ROBY, Magistrate J.

\*1 On April 15, 2004, Offshore Specialty Fabricators, Inc. ("Offshore") filed a Motion to Compel Discovery and for Sanctions (doc. # 160) seeking an order compelling Freeport-McMoran Sulphur, LLC to properly participate in discovery, including allowing OSFI to take the depositions of three individuals. A hearing on the motion was held on May 26, 2004.

During the hearing, the parties advanced several arguments, which the Court will consider below as to each respective disagreement. The Court further notes that with respect to the deposition of Robert

Maduell, the Court did not entertain oral argument on the issue because the responsive pleading addressing the issue arrived in chambers too late for the Court to review the issue prior to the hearing. However, the Court informed the parties that it would take the matter under advisement. Considering this, the Court's previous denial of Freeport's Motion for Leave to File Supplemental Reply Memorandum in Opposition to OSFI's Motion to Compel Discovery and for Sanctions (doc. # 210) is revoked and the Court will consider the briefs on the issue of Maduell's deposition.

## I. *OSFI's Motion to Compel*

In its motion, OSFI makes several allegations as to Freeport's conduct with regard to various discovery issues. First, OSFI complains it has propounded three different sets of Interrogatories and Request for Production of Documents, and that Freeport has objected to virtually every Interrogatory and Request for Production. Second, OSFI urges that Freeport has not been cooperative, in the scheduling of depositions.

OSFI informed the Court that while this motion has been pending, some of the issues have been resolved as to deposition scheduling and written discovery. Therefore, the issue that was the subject of oral argument, was Freeport's conduct, more specifically the conduct of Freeport's counsel, Mr. Rosenblum, during depositions. This issue will be further explored by the Court below. At the outset, the Court warned both of the parties that if they could not cooperate with one another in the future, then all depositions in New Orleans would be conducted in the federal building in the Attorney Conference Center.

## II. *Depositions of Nancy Parmalee and Donald Whitmire*

OSFI contended that prior to the deposition of any Freeport witnesses, Mr. Rosenblum requested an estimate of the amount of time it would take to depose each witness. OSFI responded by providing Mr. Rosenblum with a two to three-hour estimate for Nancy Parmalee and a two-hour estimate for Donald Whitmire. However, OSFI asserts that it informed Mr. Rosenblum that the time periods were simply estimates and should no way be construed as any type of constraint on the time limit.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
"C"

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

OSFI contended that on April 8, 2004, after 2.75 hours of questioning of Ms. Parmalee, Mr. Rosenblum stopped the deposition of Ms. Parmalee and advised that she would not be available for a continuation of the deposition. Further, OSFI asserts that Mr. Rosenblum advised that Mr. Whitmire's deposition, which was scheduled for 2:00 p.m. on the same date, would be limited to 2 hours and a continuation would not be allowed. Thereafter, OSFI cancelled Mr. Whitmire's deposition.

**\*2** Mr. Rosenblum responded that he had previously received a letter from OSFI's counsel indicating that they wanted to depose a number of Freeport's witnesses, and OSFI knew that Freeport wanted to depose a number of OSFI's witnesses. Mr. Rosenblum stated that he had a conversation with OSFI's counsel, Mr. Grau, and Mr. Rosenblum asserts that he specifically asked Mr. Grau if he wanted seven hours with each of the individuals to be deposed.

Mr. Rosenblum contended that based upon the representation given by Mr. Grau as to the time estimates, he scheduled these times with his client. Freeport asserts that after Ms. Parmalee's deposition had gone on for 3 hours and 20 minutes, sometime thereafter, Mr. Grau informed Mr. Rosenblum that he wanted the whole seven hours with Ms. Parmalee. Freeport asserted that it called the deposition off because Ms. Parmalee had not blocked off the whole day and that Whitmire had blocked out the afternoon for his deposition.

Mr. Whitmire, was scheduled for 2:00 p.m., and was waiting to begin after lunch. It is then, that Freeport alleged that OSFI informed him that they wanted seven hours for all the remaining depositions. Freeport argued that OSFI has not requested any relief in the motion with respect to Whitmire. OSFI countered that in its motion on page 7, it specifically mentioned the problem it had with Whitmire. Freeport informed the Court that there is no objection to allowing Mr. Whitmire's deposition, it just needs to be rescheduled.

The Court informed OSFI that it would not be allowed to decide on the day of deposition, that seven hours would be needed for a particular deposition. Further, to the extent OSFI is aware that it may need that amount of time for a deposition, it is to be the only deposition scheduled for a particular day. Near the end of the hearing, Freeport pointed out that Mr. Grau did state on the record of Ms. Parmalee's deposition that he reserved the right to continue the deposition on a later date consistent with the Federal Rules of Civil Procedure. The Court ordered the parties to inform the Court by June 2, of the date on which Whitmire and Parmalee would be scheduled for deposition.

### III. *Deposition of Maduell*

On May 18, 2004, OSFI filed a Supplemental Memorandum in Support of Motion to Compel Discovery and for Sanctions (doc. # 202), in which OSFI raises a new issue related to its Motion to Compel, which OSFI contends arose after the filing of the motion. The majority of this supplement focuses on the deposition of Roger Maduell.

In its supplement, OSFI contends that it is entitled to additional time to continue its deposition of Roger Maduell because the tactics employed by Mr. Rosenblum were excessively interrupting and caused significant delay. Further OSFI asserts that Mr. Rosenblum improperly instructed Mr. Maduell not to answer questions to which OSFI is entitled to answers. Finally, OSFI urges that it is entitled to disclosure of the identity of documents reviewed by Mr. Maduell in preparation for his deposition.

**\*3** OSFI points to numerous objections and interruptions allegedly made by Mr. Rosenblum during the deposition. OSFI argues that these objections and instructions not to answer were improper for a deposition unless the information is considered a trade secret or is privileged and a protective order is sought.

Additionally, OSFI asserts that Mr. Maduell was improperly instructed not to answer questions regarding conversations between himself and Dave Landry (VP of Freeport), and also conversations between Mr. Maduell and John Amato (Freeport's General Counsel), based on the attorney-client privilege. OFSI urges that Mr. Landry is not an attorney, so the privilege cannot attach with respect to those conversations. OFSI further argues that the conversations between Mr. Amato and Mr. Maduell are not protected because Mr. Maduell is a non-employee third party.

OSFI further argues that when Mr. Maduell was questioned as to what documents he had reviewed prior to his deposition, he was instructed by Freeport's counsel not to answer because the documents were protected by the attorney-client privilege.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

Freeport, on the other hand, contends that contrary to OSFI's assertions of excessive delay from objections and interruptions on Freeport's part, the deposition began a little after 9:00 a.m. and concluded at 12:24 p.m. Further, upon the conclusion, Freeport states that it confirmed with OSFI that all the questions OSFI wanted to ask had been asked of Mr. Maduell. Freeport further asserts that OSFI cannot request to complete the deposition now when it had a full three and one half hours remaining on the 12th which it chose not to use.

Moreover, Freeport argues that Mr. Maduell is a Freeport representative and the "functional equivalent" of a Freeport employee for purposes of the attorney-client privilege. Freeport asserts that its instructions to Mr. Maduell not to answer were clearly limited to the extent that the discussions reflected the advice of Freeport's counsel.

A. *Analysis*

1. *Attorney-Client Privilege*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Hodges, Grant & Kaufmann v. United States Government,* 768 F.2d 719, 720-21 (5th Cir.1985). The burden to establish the applicability of the attorney-client privilege rests on the party who invokes it." *Hodges,* 768 F.2d at 721. "The privilege must be specifically asserted with respect to particular documents." *United States v. El Paso Co.,* 682 F.2d 530, 539 (5th Cir.1982), cert. denied, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984).

Applicability of the privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Hodges,* 768 F.2d at 721. The proponent of the privilege "must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982).

**\*4** Freeport draws the Court's attention to the court's decision in *Lenihan v. Stewart Enterprises, Inc.,* 2002 WL 31001842 (E.D.La, Sept.4, 2002), where Magistrate Judge Wilkinson, looking to *In re Bieter*

*Co.,* 16 F.3d 929 (8th Cir.19994), found that "proposed Federal Rule of Evidence 503 provide[d] a useful starting place ..." for the court's discussion of the attorney-client privilege discussion. *Lenihan,* 2002 WL 31001842, at \*3. Judge Wilkinson quotes "The most relevant aspect of Standard 503 is its statement of the general rule:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client. *Id.* (quoting *Bieter,* 16 F.3d at 935) (quoting Supreme Court Standard 503(b); additional citations and quotations omitted)).

It is important to note at the outset of this analysis that Judge Wilkinson did not rely on Standard 503, nor the *Bieter* decision for the same purposes that Freeport seeks to now accomplish. The *Lenihan* decision was not an analysis of when and how an independent consultant can qualify as a representative of the lawyer and/or client for the purposes of the attorney-client privilege. Therefore, Freeport's reliance on a case from this District is unpersuasive for present purposes.

However, the *Bieter* Court did consider whether communications between, or disclosed to, a client's independent consultant fall outside the protection of the attorney-client privilege. It is important to note that in finding that the privilege applied, the *Bieter* Court first decided that the consultant was the "functional equivalent" of the client's employee, the communications in question fell within the scope of the consultant's duties, were made at the behest of his superior (who was an employee of the client), and were made for the purposes of seeking legal advice for the client. *Id.* at 939-940.

Briefly, Bieter Company was a partnership formed to develop a parcel of land in Minnesota. Pursuant to the development, the company encountered obstacles which included lack of cooperation from local government and machinations by competing developers. The Company eventually filed suit under the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § § 1961-1968, alleging generally that the competing developers were bribing the state

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

Page 4

government, which resulted in the prevention of the company's approval for rezoning.

Bieter Company hired a certain Dennis S. Klohs as an independent contractor to provide advice and guidance regarding commercial and retail development in Minnesota. Mr. Klohs was to work out of Bieter's office, and the purpose of the agreement, primarily, was the acquisition of Target Stores as a tenant in a particular development project. Bieter Company was represented by Dorsey & Whitney, a Minneapolis law firm.

*5 In establishing the nature of their relationship, Bieter Company submitted Mr. Kloh's affidavit in which he attested as follows: (1) his duties were "varied and extensive; (2) he worked with architects, consultants and counsel, and appeared at public hearings before the Eagan City Council and the Eagan Advisory Planning Commission; and (3) he was viewed by and dealt with by the City of Eagan officials, Target and other potential tenants, the media, and the defendants in [the] lawsuit as a representative of Bieter." *Id.* at 934. Bieter Company further asserted that Mr. Klohs had an equity interest in the development and that he was responsible for paying Dorsey & Whitney's fees. Summarily, the Court found that while Mr. Klohs was acting in the capacity of an independent contractor, he was an individual without which Bieter Company could not exist. Therefore, the Court ruled that Klohs was a representative of Bieter Company.

Before getting to the issue of whether the particular communications Freeport is contending are protected by the attorney-client privilege, the Court must first determine whether Mr. Maduell, although an independent consultant, can be viewed as a representative of Freeport for privilege purposes.

Mr. Maduell is a current employee of Crescent Technology and former employee of Freeport. Mr. Maduell's deposition took place on April 12, 2004. Mr. Maduell works as a full time consultant for Freeport, assisting with the development of the "Main Pass Energy Hub" project, and deals mostly with Mr. Landry (Vice President of Freeport). [FN1] Prior to his work as an independent consultant with Freeport, Mr. Maduell worked for twenty-five years as an employee of various Freeport entities. [FN2]

FN1. Rec. Doc. No. 202, OSFI's Supplemental Memorandum in Support of Motion to Compel Discovery Responses, Exhibit 1 at pp. 8-12.

FN2. *Id.* at pp. 13-33

Freeport asserts that the fact (1) that Mr. Maduell previously worked for Freeport for twenty-five years; and (2) works full-time everyday in Freeport's offices with Freeport employees, all answering to Mr. Landry, together, show that he is a representative of Freeport and entitled to be classified as the functional equivalent of a Freeport employee. Just as a note, in reviewing the deposition testimony of Mr. Maduell, the Court finds that Mr. Maduell indicated that his current boss is Jatinder Jolly, [FN3] not Mr. Landry.

FN3. It is not indicated in the papers submitted to the Court whether Mr. Jolly is also a Crescent Technology employee.

The Court finds that Freeport has not carried its burden in setting forth sufficient facts for the Court to decide with a reasonable certainty that the attorney-client privilege is applicable here, as the court found in *Bieter*. For example, Freeport has not established, or attempted to establish, that Mr. Maduell holds himself out to be or is perceived by others as Freeport's representative. Nor has Freeport shown the Court, for instance, that Mr. Maduell is the intimate link with the development of Main Pass Energy Hub project, and the project is the *sine qua non* of Freeport's existence. As another example, Freeport does not assert that Mr. Maduell owns any equity interest in the Main Pass Energy Hub project.

*6 The above are some examples of the characteristics considered by the *Bieter* Court in determining that Mr. Klohs was more than an independent contractor for Bieter Company. Freeport's general contentions regarding Mr. Maduell's length of time in association with Freeport or the fact that he works in Freeport's office and assists with the development of the Main Pass Energy Hub project fall short of the findings in *Bieter*.

In considering the applicability of the attorney-client privilege to outside consultants, "courts have been cautious in extending its application." *United States Postal Service v. Phelps Dodge Refining Corporation*, 852 F.Supp. 156, 161 (E.D.N.Y.1994) (finding that outside scientific consultants hired to conduct an environmental audit and to oversee remedial work were not agents for the purposes of the privilege; and citing discussion in *Federal Trade Comm'n v. TRW, Inc.* 628 F.2d 207, 212 (D.C. Circuit 1980)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

Page 5

Accordingly, the privilege was not properly asserted by Freeport as to Mr. Maduell, and OSFI should be allowed more time to depose Mr. Maduell. The Court will now discuss the applicability of the work product doctrine to the documents reviewed by Mr. Maduell prior to his deposition.

## 2. *Work Product Doctrine*

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the disclosure of documents prepared in anticipation of litigation and provides:

> ....a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
> Fed.R.Civ.P. 26(b)(3).

The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 403 (M.D.La.1992). It protects two categories of materials: ordinary work-product and opinion work product. *Snowden v. Connaught Lab. Inc.*, 137 F.R.D. 325, 330-32 (D.Kan.1991); *see generally Upjohn Co. v. U.S.*, 449 U.S. 383, 400-02, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

However, the doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client. It focuses only on materials assembled and brought into being in anticipation of litigation. *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825 at *2 (E.D.La.2000). Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir.1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984). It also does not extend to the underlying facts relevant

to the litigation. *See generally Upjohn*, 449 U.S. at 395-96.

*7 In determining whether a document was made in anticipation of litigation, the primary focus is on the reason or purpose for creating the document. *Beal v. Treasure Chest Casino*, No. 98-0786, 1999 WL 461970,*3 (E.D.La.1999). Moreover, the burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173 F.R.D. 431, 432 (E.D.La.1997).

As an initial matter, to the extent that Freeport asserts the documents are protected by the attorney-client privilege, and to the extent the documents were between Mr. Maduell and any Freeport attorneys, the documents are not privileged due to Mr. Maduell's third-party status. OSFI further asserts that it is entitled to disclosure of the identity of the documents because any work-product immunity was waived pursuant to Federal Rule of Evidence 612, when Freeport's counsel disclosed the documents to Mr. Maduell in preparation for his deposition. Freeport, on the other hand, argues that OSFI has not met the three conditions of Fed.R.Evid. 612 in order to establish a waiver of the doctrine.

OSFI has not argued that the work product doctrine does not apply to the documents reviewed by Mr. Maudell. Rather OSFI argues that any the immunity attaching to the documents was waived by virtue of Rule 612. Therefore, by not raising the issue, the Court will presume that OSFI has conceded that the documents are covered by the work product doctrine. Thus, the Court will focus only on whether a waiver has occurred.

Federal Rule of Evidence, Rule 612 provides in part:
> Except as otherwise provided in criminal proceedings ... if a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. (West 2004 Ed.).

This rule is applicable to depositions by way of Fed.R.Civ.P. 30(c). *See Woodward v. Avondale Industries*, 2000 WL 385513 (E.D.La. April 14,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 6
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

2000) (citing 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure; Evidence* § 6183, at 452 (1993). Rule 30(c) provides that "[e]xamination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615."

Freeport correctly points out that OSFI has not satisfied the requirements of Rule 612 such that this Court should order Mr. Maduell to identify the documents he relied upon in preparation for his deposition. The mere showing of alleged work product to a witness does not equal a waiver of work product protection. *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir.1984). The sole purpose of Rule 612 is to "promote the search of credibility and memory." Fed.R.Evid. 612 advisory committee note.

*8 Mr. Maduell was asked if he had you reviewed any documents in preparation for his deposition, to which he answered "yes." However, when asked by OSFI what documents he had reviewed, Mr. Maduell was instructed by counsel to not answer based on privilige. [FN4] OSFI has made no showing to the Court that it established that Mr. Maduell used the documents to refresh his memory and for the purpose of testifying at his deposition.

FN4. *Id.*, at p. 5.

Further, if OSFI had made this showing, it still has not demonstrated to the Court why compelling disclosure of the identification of the documents would be necessary and in the interests of justice. Freeport has admitted that any of the documents used by Mr. Maduell in preparation for his deposition have previously been produced to OSFI.

Therefore, the only purpose that would be served by ordering Mr. Maduell to identify the specific documents he reviewed of the total documents OSFI has already obtained, would be to reveal the mental impressions of Freeport's counsel as to what is relevant or important from Freeport's point of view. *See Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683-684 (D.Kan.1986) (finding that where the questioning party already had access to the documents, the only purpose behind the question concerning which documents had been shown would be to inform the opposing side of "the attorneys' process of selection and distillation of documents." The court concluded that "[d]iscovery would reveal nothing more than what documents the attorneys thought were relevant to the transactions.").

Therefore, work-product doctrine applicability has not been waived here by virtue of Fed.R.Evid., Rule 612.

Further, OSFI contends that Freeport has waived the work product privilege by showing the documents to Mr. Maduell, as a former employee of Freeport. For the sake of thoroughness, if OSFI makes this contention on the basis that the work product privilege is waived by virtue of disclosure to a third party, that contention is in error. Although the attorney-client privilege can be waived by disclosing the protected documents to a third party, the "disclosure of work product materials to third parties does not necessarily constitute waiver of the privilege. A waiver of work product protection only occurs when the party asserting the privilege substantially increases the likelihood that the opposing party would come into possession of the statements." *High Tech Communications, Inc. v. Panasonic Company*, 1995 WL 83614, at *4 (E.D.La. Feb.24, 1995) (citing *In re Convergent Technologies*, 122 F.R.D. 555, 564 (N.D.Ca.1988); and *Anderson v. Torrington Co.*, 120 F.R.D. 82, 86-87 (N.D.Ind.1987)).

The Court further found that the party asserting waiver has the burden of showing that by virtue of disclosure to a third party, the likelihood that it would come in possession of the documents has substantially increased. *Id.* Therefore, even though the Court decided *supra* that Mr. Maduell is a third party as opposed to a representative of Freeport, OSFI has not demonstrated that the work product protection has been waived by allowing Mr. Maduell to review the documents prior to his deposition.

*9 Accordingly,

IT IS ORDERED that this Court's previous order denying Freeport's Motion for Leave to File Supplemental Reply Memorandum in Opposition to OSFI's Motion to Compel Discovery and for Sanctions (doc. # 210) is REVOKED AND RESCINDED. The Clerk shall enter the memorandum into the record.

IT IS FURTHER ORDERED that the Motion to Compel Discovery and for Sanctions (doc. # 160) is GRANTED IN PART and DENIED IN PART as follows:

1) GRANTED to the extent OSFI seeks to depose Donald Whitmire and to continue the deposition of Nancy Parmalee. The parties shall inform the Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

no later than June 2, 2004, of the dates for which these depositions have been scheduled.

2) GRANTED to the extent OSFI seeks more time to depose Mr. Maduell. OSFI will be allowed to use the remaining time it has available up to the seven hours allowed under the Federal Rules of Civil Procedure to depose Mr. Maduell. The parties shall inform the Court no later than June 7, 2004, of the dates for which this deposition has been scheduled.

3) DENIED to the extent OSFI seeks an order compelling Mr. Maduell to identify the documents he used in preparation for his deposition.

To obtain a transcript of the proceedings for the Court's findings, the parties should contact Gaynell Banta, Court Recorder Supervisor, at 589-7720.

**Motions, Pleadings and Filings** (Back to top)

• 2004 WL 2467819 (Trial Pleading) Answer and Counter-Claim of Blake Drilling and Workover Co., Inc. (Sep. 17, 2004)

• 2004 WL 2467809 (Trial Pleading) Answer of Defendants Roy T. Oliver and U.S. Rig & Equipment, Inc. to Complaint and Affirmative Defenses (Sep. 10, 2004)

• 2004 WL 2467786 (Trial Pleading) Answer and Affirmative Defenses of Mike Mullen (Sep. 01, 2004)

• 2004 WL 2467759 (Trial Motion, Memorandum and Affidavit) OSFI's Memorandum in Opposition to Freeport's Motion in Limine Regarding Admission of Testimony of Former Osfi Employees (Jul. 08, 2004)

• 2004 WL 2467765 (Trial Motion, Memorandum and Affidavit) OSFI's Memorandum in Opposition to Freeport's Motion in Limine Concerning Mcmoran's Sec Filings (Jul. 08, 2004)

• 2004 WL 2467776 (Trial Motion, Memorandum and Affidavit) OSFI's Memorandum in Opposition to Freeport's Motion in Limine to Limit Testimony and Evidence Concerning Contractual Provisions (Jul. 08, 2004)

• 2004 WL 2467797 (Trial Pleading) Defendant Craig Cannon's Answer to Complaint and Affirmative Defenses (Jul. 08, 2004)

• 2004 WL 2467754 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Opposition to OSFI's Motion in Limine (Jul. 07, 2004)

• 2004 WL 2467748 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Freeport's Motion for Partial Review and Reversal of Magistrate's Minute Entry Regarding Draft Sec Documents (Jun. 29, 2004)

• 2004 WL 2467741 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Enforce May 27, 2004, Minute Entry (Jun. 25, 2004)

• 2004 WL 2467731 (Trial Motion, Memorandum and Affidavit) Opposition to Freeport's Motion for Partial Review and Reversal of Magistrate's Minute Entry Regarding Draft Sec Documents. (Jun. 22, 2004)

• 2004 WL 2467737 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to OSFI's Motion to Strike Deposition Testimony and for Sanctions (Jun. 22, 2004)

• 2004 WL 2467725 (Trial Motion, Memorandum and Affidavit) Freeport's Supplemental Reply Memorandum in Opposition to OSFI's Motion to Compel Discovery and for Sanctions (Jun. 03, 2004)

• 2004 WL 2467715 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Opposition to Osfi's Motion to Review and Reverse Magistrate's Order (Jun. 02, 2004)

• 2004 WL 2467698 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Opposition to Motion to Postpone the Deposition of Brian Mcallister (May. 25, 2004)

• 2004 WL 2467707 (Trial Motion, Memorandum and Affidavit) Reply to OSFI's Opposition to Freeport's Motion to Compel Deposition of William M. Kallop and Other Discovery Responses (May. 25, 2004)

• 2004 WL 2467660 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion to Compel Discovery and for Sanctions (May. 18, 2004)

• 2004 WL 2467667 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Compel Deposition of William M. Kallop and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
**(Cite as: 2004 WL 1237450 (E.D.La.))**

Other Discovery Responses (May. 18, 2004)

• 2004 WL 2467677 (Trial Motion, Memorandum and Affidavit) Freeport's Opposition to OSFI's Motion to Quash Notice of Deposition of Brian Mcallister (May. 18, 2004)

• 2004 WL 2467688 (Trial Motion, Memorandum and Affidavit) Freeport's Opposition to OSFI's Motion to Compel Discovery and for Sanctions (May. 18, 2004)

• 2004 WL 2467652 (Trial Motion, Memorandum and Affidavit) Supplemental Reply Memorandum in Further Support of Freeport's Motions for Protective Orders and to Quash Subpoenas Duces Tecum Served Upon Chevron/Texaco and K-Mc Venture I, LLC (Apr. 26, 2004)

• 2004 WL 2467647 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Freeport's Motions to Quash Subpoenas Duces Tecum Served Upon Chevron/Texaco and K-Mc Venture I, LLC (Apr. 20, 2004)

• 2004 WL 2467641 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Freeport's Rule 42(b) Motion for Separate Trials on the Issues of Liability and Damages as to the Freeport/osfi Claims (Apr. 15, 2004)

• 2004 WL 2467630 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Continue Trial (Apr. 05, 2004)

• 2004 WL 2467634 (Trial Motion, Memorandum and Affidavit) Osfi's Reply Memorandum in Support of Motion for Partial Summary Judgment on the Issue of Freeport's Performance of the Suspensive Conditions of the Alleged Oral Amendment to the Main Pass 299 Turnkey (Apr. 05, 2004)

• 2004 WL 2467595 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Rule 42(b) Motion for Separate Trials on the Issues of Liability and Damages As to the Freeport/Osfi Claims (Mar. 30, 2004)

• 2004 WL 2467603 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Opposition to Osfi's (Second) Motion to Continue Trial (Mar. 30, 2004)

• 2004 WL 2467615 (Trial Motion, Memorandum

and Affidavit) Freeport's Opposition to Osfi's Motion for Partial Summary Judgment on the Issue of Freeport's Performance of the Suspensive Conditions of the Oral Amendment to the Main Pass Turnkey (Mar. 30, 2004)

• 2004 WL 2467622 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Freeport's Motions for Protective Orders and Motions to Quash Non-Party Subpoenas (Mar. 30, 2004)

• 2004 WL 2467588 (Trial Motion, Memorandum and Affidavit) Freeport's Supplemental Memorandum in Further Support of Its Motions for Protective Orders and Motions to Quash Non-Party Subpoenas (Mar. 24, 2004)

• 2004 WL 2467555 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Compel More Complete and/or Supplemental Discovery Responses (Mar. 16, 2004)

• 2004 WL 2467559 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Reply to Osfi's Opposition to Motion to Quash Subpoena Duces Tecum Served Upon K-MC Venture I, LLC and for Protective Order (Mar. 16, 2004)

• 2004 WL 2467566 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Reply to Osfi's Opposition to Motion to Quash Subpoena Duces Tecum Served Upon K-1 USA and for Protective Order (Mar. 16, 2004)

• 2004 WL 2467572 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Reply to Osfi's Opposition to Motion to Quash Subpoena Duces Tecum Served Upon Mcmoran Exploration Co. and for Protective Order (Mar. 16, 2004)

• 2004 WL 2467581 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Reply to Osfi's Opposition to Motion to Quash Subpoena Duces Tecum Served Upon Chevron/Texaco and for Protective Order (Mar. 16, 2004)

• 2004 WL 2467550 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion for Protective Order (Mar. 11, 2004)

• 2004 WL 2467512 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Quash Subpoena Duces Tecum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 9
Not Reported in F.Supp.2d, 2004 WL 1237450 (E.D.La.)
(Cite as: 2004 WL 1237450 (E.D.La.))

Served Upon K-1 USA Ventures, Inc. and for Protective Order (Mar. 09, 2004)

• 2004 WL 2467517 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Quash Subpoena Duces Tecum Served Upon Chevron/Texaco and for Protective Order (Mar. 09, 2004)

• 2004 WL 2467522 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Quash Subpoena Duces Tecum Served Upon Randal and Dewey and for Protective Order (Mar. 09, 2004)

• 2004 WL 2467531 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Quash Subpoena Duces Tecum Served Upon K-MC Venture I, LLC and for Protective Order (Mar. 09, 2004)

• 2004 WL 2467537 (Trial Motion, Memorandum and Affidavit) Freeport's Opposition to OSFI's Motion to Compel More Complete and/or Supplemental Discovery Responses (Mar. 09, 2004)

• 2004 WL 2467544 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Quash Subpoena Duces Tecum Served Upon Mcmoran Exploration Co. and for Protective Order (Mar. 09, 2004)

• 2004 WL 2467508 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Freeport's Motion to Continue Hearing on OSFI's Motion for Partial Summary Judgment on Count IV of Freeport's Second Supplemental and Amending Complaint (Mar. 01, 2004)

• 2004 WL 2467503 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Offshore Specialty Fabricators, Inc.'s Motion to Continue Trial (Feb. 18, 2004)

• 2004 WL 2467496 (Trial Motion, Memorandum and Affidavit) Freeport's Memorandum in Opposition to OSFI's Motion to Continue Trial (Feb. 09, 2004)

• 2003 WL 23860310 (Trial Pleading) Freeport's Affirmative Defenses and Answer to Counterclaim of Offshore Specialty Fabricators, Inc. (Dec. 16, 2003)

• 2003 WL 23860295 (Trial Pleading) Answer and Counterclaim of Offshore Specialty Fabricators, Inc. to Plaintiff Freeport-Mcmoran Sulphur, LLC's

Second Amending and Supplemental Complaint (Oct. 17, 2003)

• 2003 WL 23860268 (Trial Pleading) Mullen's Answer to Plaintiff's First and Second Amending and Supplemental Complaints (Sep. 29, 2003)

• 2003 WL 23860279 (Trial Pleading) Offshore Specialty Fabricators, Inc.'s Answer and Defenses to Plaintiff's First Amended and Restated Complaint (Sep. 29, 2003)

• 2003 WL 23860256 (Trial Pleading) Freeport-Mcmoran Sulphur LLC's Second Amending and Supplemental Complaint (Sep. 18, 2003)

• 2003 WL 23860247 (Trial Pleading) Freeport's Answer and Affirmative Defenses to Counter-Claim of Mullen (Aug. 28, 2003)

• 2003 WL 23860233 (Trial Pleading) Freeport-Mcmoran Sulphur LLC's First Amending and Restated Complaint (Aug. 11, 2003)

• 2003 WL 23860218 (Trial Pleading) Answer and Counter-Claim of Mike Mullen Energy Equipment Resource, Inc. (Jul. 16, 2003)

• 2003 WL 23860198 (Trial Pleading) Answer of Offshore Specialty Fabricators, Inc. (Jul. 07, 2003)

• 2003 WL 23860000 (Trial Pleading) Complaint (Jun. 11, 2003)

•                 2:03CV01664                 (Docket) (Jun. 11, 2003)

• 2003 WL 23860182 (Trial Pleading) Complaint (May. 27, 2003)

•                 2:03CV01496                 (Docket) (May. 27, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.