IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| JAMES D. JOHNSON, as next friend to Olivia Y., et al. | PLAINTIFFS |
| vs. | CIVIL ACTION NO. 3:04cv251LN |
| HALEY BARBOUR, as Governor of the State of Mississippi, et al. | DEFENDANTS |

## DEFENDANTS' MOTION AND MEMORANDUM TO EXCLUDE THE EXPERT TESTIMONY OF BILL M. BRISTER, PH.D.

COME NOW, Haley Barbour, as Governor of the State of Mississippi, Donald Taylor, as Executive Director of the Mississippi Department of Human Services, and Rickie Felder, as Director of the Division of Family and Children's Services ("Defendants") and file this motion to exclude the expert testimony of Bill M. Brister, Ph.D. In support, Defendants state the following:

### INTRODUCTION

Defendants seek to preclude Dr. Brister from testifying about the alleged mismanagement by the Department of Human Services and the other named Defendants in regard to Defendants' procurement of funds, including federal matching funds for use in Mississippi's foster care and welfare systems. According to Dr. Brister, this alleged mismanagement resulted in systemic substandard care for children within both the Mississippi child welfare and foster care systems.

Due to the specific and self-explanatory nature of this Motion, Defendants respectfully request that the Court waive the requirement of submitting a separate Memorandum of Authorities.

1

## ARGUMENT

Dr. Brister's proffered expert testimony should be precluded because it cannot survive a *Daubert* challenge. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (C1993). Rule 104 of the Federal Rules of Evidence provides that the trial court shall determine preliminary questions regarding the qualifications of a witness. As this Court is aware, the admissibility of expert witness testimony is further governed by Federal Rules of Evidence 702, which provides the first and most basic…requirement for a witness to testify as an expert--the expert must be *qualified*. Rule 702 further explains that an expert witness may be qualified as such "by knowledge, skill, experience, training or education." Fed. R. Evid. 702.[1] To be qualified, an expert must have some specific experience in the area in which he proposes to testify.[2]

Rule 702's second requirement for allowing a witness to testify as an expert relates to the reliability of his testimony. Under *Daubert,* evidentiary reliability, or trustworthiness, is demonstrated by a showing that the knowledge offered is "more than speculative belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 593.

Indices of reliability, include several factors a trial court should consider when determining whether a scientific theory or technique constitutes the requisite scientific, technical

---

[1] Rule 702 provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, provided that (1) the testimony is sufficiently based upon reliable facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[2] *See, Ancho v. Penteck Corp.*, 157 F. 3d 512, 516 (7th Cir. 1998) (affirming trial court's exclusion of expert who had no expertise in product design); *Hoban v. Grumman Corp.*, 717 F. Supp. 1129, 1133-34 (E.D. VA 1989); *See also, Bogosian v. Mercedes-Benz of North America, Inc.*, 104 F. 3d 427, 477 (Cir. 1997) (again excluding testimony of experts who had no expertise in relevant areas such as design or manufacturer of automobiles or their components).

or other specialized knowledge for expert testimony. As the Supreme Court cautioned, these factors are not all-inclusive, but are to be applied flexibly and include, at a minimum:

1) Whether the theory or technique can be or has been tested;
2) Whether the theory or technique has been subject to peer review and publication;
3) The known or potential rate of error of the scientific technique and the existence and maintenance of standards controlling the technique's operation; and
4) The amount of general acceptance received by the theory in the relevant scientific community.

*Id.*

The Supreme Court's holding in *Daubert,* and the criteria established by Rule 702, are designed for a single purpose: to eliminate junk science from the courtrooms. Thus, the trial court must act as a Rule 702 gatekeeper and determine, pursuant to Fed. R. Evid. 104 (a), "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. This gatekeeper function necessarily entails a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* The first part of the inquiry, *i.e.,* whether the subject of the testimony is "scientific knowledge" establishes a standard of evidentiary reliability, requires the proposed testimony to be supported by appropriate scientific validation, or "good grounds" based on what is known. *Id.* at 590. The second prong requires that the proffered testimony assist the "trier fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. *Id.* at 591. Therefore, the key question under these analyses is whether the proffered expert testimony is "sufficiently tied to the facts of the case [such] that it will aid the jury in resolving a factual dispute?" *Id.* at 591. (citing *United States v. Downing*, 753 F. 2d 1224, 1242 (3d Cir. 1985)).

3

Importantly, in *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 (1999), the United States Supreme Court held that the *Daubert* requirements apply equally to scientific knowledge and to expert testimony that involves "technical" or "other specialized knowledge." Consequently, in cases in which an expert has been designated to testify on a non-scientific subject, the "trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). The burden is, therefore, on the proponent of the expert testimony to demonstrate that the findings and conclusions of its expert witness adhere to the *Daubert* standards.

A. **Dr. Brister's Methods Used To Derive His Purported Expert Opinion Cannot Be Tested, Thus Diminishing Their Reliability**

One of the first factors espoused by the United States Supreme Court in *Daubert* asks whether the expert witness' theory or technique used to create his opinion can be, or has been, tested such that others can use the same data and arrive at a similar conclusion. *Daubert*, 509 U.S. at 593. While this factor is seemingly easy to satisfy, a brief review of Dr. Brister's deposition testimony reflects his inability to satisfy this first factor. For example, Dr. Brister was repeatedly questioned about the technique or standards he used when reviewing the practices of the Department of Human Services in relation to the procurement of funds, as well as in the interworkings of the Department of Human Services, the Governor, the Legislature and other people responsible for child welfare and foster care in Mississippi. Bill M. Brister ("Brister") deposition testimony at pp. 48-55; 63-66; 125, attached as Exhibit "A".

At the beginning of his written report Dr. Brister states that he was "retained by counsel for Plaintiffs in this action to review funding, spending, fiscal management, and related budgetary issues in regard to Mississippi's child welfare agency, to [the] Division of Families

4

and Children of the Mississippi Department of Human Services and to assess whether such budgetary and fiscal management procedures comport with reasonable minimum professional standards." Expert report of Bill M. Brister, Ph.D. dated February 7, 2006 attached as Exhibit "B". When initially asked to explain or define reasonable minimum professional standards, Dr. Brister answered that those are "my standards…[that] seemed to me, as an expert, to be reasonable and professional." Brister deposition at p. 48. When pressed further to define his standards, Dr. Brister testified that they "have to do with budgetary processes. They had to do with funding sources and etc." *Id.* at 48-49. Importantly, although Dr. Brister believed these standards to be universally applicable to agencies seeking funding, he was unable to provide any source which either promulgated or adopted those standards. On this point, the following exchange occurred:

> Q. Are those standards quantified in any place?
> A. No.
> Q. So you can't point me to an organization or a group and say here are the standards I am relying on?
> A. No. These are standards that I think are reasonable and professional.

Brister deposition at pp. 48-49.

Throughout his deposition Dr. Brister repeatedly returned to the idea of the *reasonableness* and *professional* standards by which he believes the Department of Human Services should have conducted its business when seeking to procure funding for the agency. These standards belong only to Dr. Brister and as such cannot be tested for their reliability. When questioned as to the standard used when he opined that the agencies acted in an unprofessional and unreasonable manner, Dr. Brister responded that those standards were *his* standards, that they were not quantified anywhere; and that there are no set standards by which to

gauge an agency such as this; there are in his words, only his standards. Brister deposition at p. 54.

Based on these brief deposition excerpts it is quite apparent that these ethereal standards, relied upon by Dr. Brister in formulating his opinion that DHS and the other agencies were unreasonable and unprofessional in procuring funds, cannot be tested or replicated. Dr. Brister's standards are subjective at best and open to widely disparate opinions as to the definitions of *reasonable* and *professional*. For this reason, Dr. Brister's opinion and expert testimony cannot satisfy the first criteria established under *Daubert* and must be excluded at trial.

**B.    Dr. Brister's Written Report and Proposed Expert Witness Testimony Must Also Be Precluded Because His Technique, or Standards, Have Not Been Subjected to Peer Review or Publication**

Nowhere in his deposition testimony would one find a listing of any article, paper, treatise or other publication describing, listing, or otherwise analyzing the standards relied upon by Dr. Brister in formulating his opinion. Brister deposition at pp. 49-50; 54; 125-126; and 146. As with the inability to define what is *reasonable* and *professional* in terms of the standards for judging the Department of Human Services and the inability to attribute those standards to any organization, Dr. Brister was unable to point to any written source analyzing and/or testing those standards.

In fact, when asked where one would find a copy of his standards, Dr. Brister simply responded that you "could not get a copy of my standard." Brister deposition at p. 50. Continuing along that line of questioning Dr. Brister was again asked for a location where someone could find in written format the standards he used to prepare his written opinion. Dr. Brister was asked whether his "reasonable minimum standards" were ever evaluated by anyone else, to which he responded that they are simply general standards of practice, are not quantified

in a given source, but rather "just general practices that—and principles that should be adhered to." Brister deposition at p. 125.

From reading Dr. Brister's deposition transcript it is apparent that his standards are not derived from any *published* documents, nor have they been reviewed by others in his field. Without the ability to attribute his standards to a publication or to any peer review group for validation, his standards become purely speculative and must be excluded pursuant to *Daubert* and Rule 702.[3]

### C. As To The Final *Daubert* Factor—General Acceptance by the Theory or Technique In the Relevant Scientific Community—Dr. Brister's Testimony Again Fails To Satisfy the *Daubert* Factor

The fourth factor under a *Daubert* analysis presupposes that the theory or technique has been received and utilized by others similarly situated to Dr. Brister in their area of work. Dr. Brister admits that he did not interview anybody involved with the child welfare system in Mississippi, nor did he interview anybody involved with the child welfare system in any other state in the United States. Brister deposition at pp. 26-27. It would seem, according to his opinion that the standards espoused by Dr. Brister would be utilized by child welfare management agencies in Mississippi and throughout the United States. Dr. Brister's deposition testimony indicating he did not interview anyone with any agency casts doubt on whether his standards are generally accepted in the relevant communities.

Likewise, Dr. Brister cannot attribute his standards to the Mississippi child welfare system, or any other state welfare system because he admitted in his deposition that he does not

---

[3] The third factor—the known or potential of error of the scientific technique—need not be analyzed in the current situation as Defendants have illustrated Dr. Brister's inability to direct Defendants to any source reflecting his standards, nor can he direct Defendants to any written publications, articles, or peer review publications analyzing his standards. Because his proffered testimony cannot survive the first two *Daubert* criteria, it necessarily cannot satisfy the third.

7

have any experience running a state agency such as the Department of Human Services. Brister deposition at p. 66.

Therefore, Dr. Brister is attempting to utilize standards that have not been tested, subjected to peer review, or not definitively associated with any organization and which have not been proven to be generally accepted by the relevant community (*i.e.*, the Department of Human Services or a similarly situated agency in another state). His testimony, therefore, must be excluded.

### D.  Dr. Brister's Proposed Testimony Cannot Pass the More Than Speculative Belief or Unsupported Speculation Analysis Under Daubert

*Daubert* and Rule 702 instruct trial courts to be gatekeepers charged with the duty of preventing unsupported and unsubstantiated scientific, technical or other specialized knowledge from being presented in court. Applying this gatekeeper function to Dr. Brister's proposed testimony, it becomes apparent that the court should preclude him from testifying at trial. Dr. Brister is not qualified to testify as to the appropriate standards for the management of a state agency, nor is he qualified to testify as to the…appropriate methods for procuring funding for a state agency. As such, any proposed testimony by Dr. Brister is speculative belief and unsupported speculation, at best. *Daubert* at 593.

Dr. Brister readily admits that he did not interview anyone within the Mississippi child welfare system or anyone in any other states' child welfare system. In fact, Dr. Brister was asked:

> Q. Did you ever interview anybody involved with the child welfare
> A. No.
> Q. Have you ever interviewed anyone involved with the management of the child welfare system in any state in the United States?
> A. No.

Brister deposition at pp. 26-27. Dr. Brister, therefore, is essentially an outsider looking into a state agency about which he has no working knowledge regarding that agency's methodologies, customs, and practices. While Dr. Brister may be formally educated in the areas of finance and economics, Dr. Brister is not educated—even through minimal experience—with the management of a state agency. His testimony as to the alleged proper methods for management and procurement of funds for a state agency, therefore, is purely speculative and unsubstantiated and must be precluded.

Finally, part of Dr. Brister's written opinion and ultimate expected expert witness testimony relates to the duties and functions he believes the Governor, the Director of the Department of Human Services, the Director of the Division of Family and Children Services and the Legislature should have followed to procure money yet, Dr. Brister testified he did not review any Mississippi statutory law defining those agencies' and offices' duties and obligations. Brister deposition at pp. 30; and 66. Likewise, Dr. Brister has offered opinion testimony as to the rules of these agencies and the Governor's office and how they should have interacted with the Legislature in requesting funding, yet he admits he has no experience with the process of requesting and appropriating funds. Brister deposition at pp. 145-46. Again, as with the other aspects of his testimony, Dr. Brister's opinion as to the issues is speculative and unsubstantiated, without experience or concrete knowledge, and must be precluded.

## CONCLUSION

For the foregoing reasons, Defendants submit that this Court should exclude the expert testimony of Bill M. Brister, Ph.D.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of Mississippi; DONALD TAYLOR, as Executive Director of the Department of Human Services; and RICKIE FELDER as Director of the Division of Family and Children's Services**

BY:  /s/ Dewitt L. Fortenberry, Jr.
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS  39215

10

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York 10001

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205

I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Susan Lambiase, Esq.
Shirim Nothenberg
Tara Crean, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York 10001

Eric S. Manne, Esq.
John Piskora, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

**SO CERTIFIED**, this the **1st** day of **May, 2006**.

/s/ Dewitt L. Fortenberry, Jr.