IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMES D. JOHNSON, as next friend to                                    PLAINTIFFS
Olivia Y., et al.

vs.                                                   CIVIL ACTION NO. 3:04cv251LN

HALEY BARBOUR, as Governor of the                                      DEFENDANTS
State of Mississippi, et al.

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR ABSTENTION BASED ON *YOUNGER V. HARRIS***

---

COME NOW Haley Barbour, as Governor of the State of Mississippi, Donald Taylor, as Executive Director of the Mississippi Department of Human Services, and Rickie Felder, as Director of the Division of Family and Children's Services ("Defendants"), by their attorneys of record, and submit this brief in support of their motion for abstention based on *Younger v. Harris*.

**I)   Introduction**

Defendants reassert their position that this Court should abstain from hearing Plaintiffs' constitutional claims under the abstention doctrine outlined in *Younger v. Harris*, 401 U.S. 37 (1971).[1] In its Order on Defendants' Motion to Dismiss, this Court denied Defendants' request to abstain based on *Younger*, holding "it is not apparent that *all* the relief plaintiffs might request would interfere, either directly or indirectly, with ongoing youth court proceedings." *See Olivia*

---

[1]   *Younger* abstention is jurisdictional. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 100 n. 3 (1998) (distinguishing case cited by dissent in support of hypothetical jurisdiction "as decided on *Younger* abstention, which we have treated as jurisdictional.") Abstention principles concern the jurisdiction of the court and thus, can be raised and revisited at any time during a proceeding. *Mountain Funding, Inc. v. Frontier Ins. Co.*, 2003 WL 21518556, *2 (N.D. Ill. 2003) (citing *Lackawanna Refuse Removal, Inc. v. Proctor & Gamble Paper Prods. Co.*, 86 F.R.D. 330, 331 (M.D.Pa.1979)).

1

*Y. v. Barbour*, 351 F. Supp. 2d 543, 570 (S.D. Miss. 2004). The court noted that the lack of specificity in both Plaintiffs' Amended Complaint and Defendants' request for abstention limited the Court's analysis on whether any specific claims requested by Plaintiffs interfered with ongoing state proceedings. *Id.* at 570. Additionally, the court noted that a *Younger* doctrine analysis should be a "provision-by-provision" analysis. *Id.* at 569.

In the process of discovery, Defendants have been able to gain a more accurate and detailed understanding of what types of specific claims Plaintiffs are indeed making and how this Court's assumption of jurisdiction as to these claims specifically interferes with the everyday operations of the Mississippi Youth Courts. Defendants are therefore reasserting their *Younger* doctrine abstention argument in a "provision-by-provision" manner addressing specific claims raised by the Plaintiffs. This approach will allow this Court the opportunity to do a more in-depth analysis as to whether specific claims sought by the Plaintiffs will interfere with pending judicial or quasi-judicial proceedings, specifically proceedings of the Mississippi Youth Courts. Defendants will outline *Younger* doctrine abstention, discuss the role of state Youth Court proceedings in the care of foster children, and thoroughly examine claims made by the Plaintiffs and whether assumption of jurisdiction as to these claims interferes with state Youth Court proceedings.

**II)** ***Younger* Abstention**

The Supreme Court has stated that federal courts have a "virtually unflagging obligation …to exercise the jurisdiction given them." *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). However, "virtually" is not "absolutely," and in certain cases federal courts may, and should, withhold equitable relief in order to avoid interfering with state proceedings. *New Orleans Pub. Serv., Inc. v. Counsil of New Orleans*, 491 U.S. 350, 359 (1989). While non-abstention is still regarded as the rule, the *Younger* doctrine is an important

exception to this rule. *Younger* doctrine abstention is based on "the vital consideration of comity between the state and national governments." *Luckey v. Miller*, 976 F.2d 673, 676 (11th Cir. 1992). The court in *Younger* actually characterizes the "consideration of comity" as a "sensitivity to the legitimate interests of both State and National Governments." *Younger v. Harris*, 401 U.S. 37, 44 (1977). As summarized by this Court in *Geotes v. Miss. Board of Veterinary Medicine*, "[t]he *Younger* abstention doctrine is based on notions of comity and federalism, and prohibits the federal judicial interference with pending state judicial and state administrative proceedings of a judicial or quasi-judicial character where important state interests are involved and the plaintiff has or will have an opportunity to present his federal claims in the state proceedings." 986 F. Supp. 1028, 1031 (S.D. Miss. 1997).

*Younger v. Harris* concerned a state criminal proceeding; however, its holding is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "Generally, *Younger* requires that federal courts abstain from hearing claims for injunctive or declaratory relief when assumption of jurisdiction would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character." *Floyd v. Amite County School Dist.*, 376 F. Supp. 2d 693, 695 (S.D. Miss. 2005) (quoting *Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir. 1995)).

To determine whether *Younger* doctrine abstention is appropriate, the Supreme Court has devised a three-part inquiry which asks (1) whether the judicial or judicial-in-nature state proceedings are ongoing[2]; (2) whether the proceedings implicate important state interests[3]; and (3) whether there is an adequate opportunity in the state proceeding to raise constitutional

---

[2] This court has previously ruled that the Youth Court proceedings are "ongoing." *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 567 (S.D. Miss. 2004) ("In view of the continuing nature of the duties and responsibilities statutorily imposed upon the state's youth courts, this court agrees with defendants that youth court proceedings may be said to by "ongoing" in the case of each child over whom the youth courts have assumed jurisdiction.").

[3] "Plaintiffs do not deny that [Youth Court] proceedings implicate important state interest." *Id.*

challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). If each of these inquiries is satisfied, then the federal court must dismiss the federal action and allow the state process to continue. Several circuits have noted that the threshold condition of "interference" with ongoing state proceedings must be present before moving on to the three-part test outlined in *Middlesex*. *See Green v. City of Tucson*, 255 F.3d 1086, 1097 (9th Cir. 2001).

In evaluating *Younger* abstention as it applies to child welfare, two circuits have found that federal courts should avoid interfering with state proceedings dealing with foster children. The Tenth Circuit has addressed two cases similar to the case at bar, in regards to the *Younger* doctrine. In both cases, the court held that abstention was proper because plaintiffs' federal proceeding would interfere with ongoing state court proceedings by "fundamentally changing the dispositions and oversight of children. *J.B. ex re. Hart v. Valdex*, 186 F.3d 1280, 1291-92 (10th Cir. 1999). In *J.B.* the plaintiffs, disabled children in custody in the state of New Mexico, brought suit against state officials, in their official capacities, seeking injunctive and declaratory relief. The court held that abstention was proper because the requested relief would give the federal district court an oversight role in the care of children, which would interfere with the role and duty of the New Mexico Children's Court. *J.B.*, 186 F.3d at 1292.

In a Tenth Circuit case, even more similar to the case at bar, the Circuit again held that *Younger* abstention was proper as to certain remedies that interfered with ongoing state proceedings. In *Joseph A. ex rel. Wolfe v. Ingram*, the plaintiffs, as in the case at bar, were children in New Mexico state custody because of abuse and neglect. 275 F.3d 1253 (10th Cir. 2002). When the plaintiffs moved for a contempt order against the Department of Human Services based on violations of a consent decree, the Department argued that dismissal was proper based on *Younger* doctrine abstention. The Tenth Circuit held for the Department finding that federal court enforcement of certain provisions of the decree would interfere with ongoing

4

state proceedings. *Id.* at 1272. The court concluded that "federal court oversight of state court operations, even if not framed as a direct review of state court judgments, may nevertheless be problematic for *Younger* purposes. *Id.* at 1271.

Even more recently, the Eleventh Circuit held that *Younger* abstention was proper in a case in which Plaintiffs, foster children in custody in the state of Florida, brought a lawsuit against the Governor of Florida and other public officials in their official capacity alleging constitutional violations relating to the foster care system[4]. *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003). In *31 Foster Children*, the Eleventh Circuit looked to the findings of the Tenth Circuit and an analysis of plaintiffs' desired remedies compared to Florida's dependency proceedings. After a thorough analysis of Florida statute and plaintiffs' claims, the court held that taking responsibility for a state's child dependency proceedings away from state courts and putting it under federal court control constitutes "federal court oversight" and that "the relief that the plaintiffs seek would interfere extensively with the ongoing state proceedings for each plaintiff." *Id.* at 1279. The Eleventh Circuit also addressed the plaintiffs' argument that the relief was directed at Department of Children and Families and would not interfere with the state court proceedings. The court held that "federal court relief the plaintiffs seek would interfere with the ongoing state dependency hearings, even if it were directed against the Department and state officers, instead of state courts and judges." *Id.* at 1279, FN 11. The court explained that there were no procedural constraints stopping plaintiffs from presenting their claims in state court, that the plaintiffs had no unambiguous authority that state court proceedings do not provide an adequate opportunity for plaintiffs to bring their constitutional claims, and that the state courts had the power to remedy many, if not most, of the children's claims. The court also acknowledged and analyzed the vast powers concerning the care of foster children given state

---

[4] Children's Rights, Inc. was plaintiffs' counsel in *31 Foster Children v. Bush* in the state of Florida.

5

courts by Florida statute. Based on these findings the court held that "the availability of these forms of relief and the existence of the state courts' protective order and contempt powers mean that the plaintiffs have not carried their burden of establishing that the ongoing state proceedings do not provide an adequate opportunity to raise and vindicate each plaintiff child's individual claims." *Id.* at 1281.

**III)    The Mississippi Youth Court**

Mississippi's youth courts are charged with securing "*proper care*" for children who are removed from their parents' custody, and are vested with exclusive, original, and continuing jurisdiction in all proceedings concerning such children. Miss. Code Ann. § 43-21-103, § 43-21-151. The youth courts are granted "full power and authority" to issue all orders – including contempt orders – necessary to carry out their duties. Miss. Code Ann. § 43-21-153. As part of its case-review responsibilities, each youth court is required by state law to review each child's case plan once every six months and "make a finding as to the degree of compliance by the agency and the parent(s) with the child's service plan." Miss. Code Ann. § 43-15-13(5). A youth court may modify a child's "disposition order" after a hearing on the matter. Miss. Code Ann. § 43-21-613(2). At every stage of the proceedings, all parties have a right to counsel, and youth courts are required to appoint counsel on behalf of indigent children. *See* Miss. Code Ann. § 43-21-201.

According to the Fifth Circuit and the Mississippi Supreme Court, the Youth Courts in Mississippi have the power to hear constitutional claims. *Chrissy F. v. Miss. Dept. of Public Welfare*, 995 F.2d 595, 599 (5th Cir. 1993) (holding, in a case challenging an order of Youth Court, "Mississippi courts are well equipped…to review violations of federal constitutional law"); *The Interest of S.A.M.*, 826 So. 2d 1266, 1278 (Miss. 2002) (holding that the plaintiff was barred from raising constitutional claims on appeal because of failure to raise them in Youth

6

Court proceeding). Additionally, direct appeal from the Youth Court to the Mississippi Supreme Court is available. Miss. Code Ann. § 43-21-651.

Mississippi Youth Courts also have the power to subpoena employees of the Department of Human Services (DHS), including the executive director of the Department of Human Services Division of Family and Children's Services, to account for any possible mishandling of foster children's cases by DHS. *See The Interest of S.A.M.*, 826 So. 2d 1266, 1275 (Miss. 2002); *see also* Subpoena Duces Tecum for Forrest County Youth Court, attached as Exhibit A to the Motion to Abstain (Subpoena ordering employee of the Department of Human Services Integrity Division to appear in youth court and give report and provide documents concerning handling of Olivia Y's case). In a 1983 Mississippi Supreme court case, the Supreme Court held that the Youth Court (then called "Family Court"), having the interest and future of a minor child in mind, can order the Department of Human Services (at that time "Department of Public Welfare") to institute proceedings for the termination of parental rights. *In Interest of T.T.*, 427 So. 2d 1382, 1384 (Miss. 1983).

As explained by the Mississippi Supreme Court, the youth courts in Mississippi are neither superior, equal, nor inferior to other "inferior" courts; they are special courts due to the special nature of their function. Thus, the legislature had authority to vest in the youth courts "exclusive original jurisdiction in all proceedings concerning...an abused child," and the social imperative for prompt disposition of matters affecting children is sufficiently within the police power that the legislature may streamline the appellate process. *In re T.L.C.*, 566 So.2d 291 (Miss. 1990).

**IV) Provision-by-Provision Analysis**

The discovery process has given insight both on the claims of the named Plaintiffs and how the Youth Courts in Mississippi directly impact the Department of Human Services, and in

particular, the care of foster children. For example, the youth court orders applicable to the eight named Plaintiffs evidence how many decisions for the care of these children are made by the Youth Court. Additionally, deposition testimony by workers in the Division of Family and Children's Services (DFCS), the Executive Director of DFCS, and the next friends and guardian ad litems of the named plaintiff children has also shown light on the role and powers of the Youth Court.

A provision-by-provision analysis of the Plaintiffs' claims as set out in the Amended Complaint and Plaintiffs' Expert Reports compared with Mississippi's Youth Court Law, Miss. Code Ann. §§ 43-21-101 - §§ 43-21-703, reveals that claims raised by Plaintiffs would indeed interfere with ongoing state proceedings. Plaintiffs seek to have the court "[o]rder appropriate remedial relief to ensure that a detailed plan is developed, implemented, and monitored to ensure Defendants protect the legal rights of Plaintiffs." *See* Amended Complaint, p. 60. As part of this plan, Plaintiffs seek to reform the alleged systemic failures of the Department of Family and Children Services ("DFCS") that they allege have caused harm to the foster children in state custody. Among these alleged systematic failures are the following:

1) Failures related to the physical placements of foster children

   a. Failure to place foster children in licensed as opposed to unlicensed placements;[5]
   b. Failure to place foster children with available relatives;
   c. Failure to provide stable placements instead of cycling foster children through inappropriate foster homes or institutions;
   d. Failure to place children in foster homes rather than group homes and institutions;
   e. Failure to remove children from emergency shelters after exhaustion of 45 day stay; and
   f. Failure to place children in the least restrictive placement.

2) Failures related to services provided to foster children

   a. Failure to provide adequate medical information about foster children to placements;

---

[5] Plaintiffs seek to declare unconstitutional part of Mississippi's Youth Court Law, specifically Miss. Code Ann. §§ 43-21-609(b) and (e)(ii).

8

b. Failure to provide foster children with legally required medical, mental health, dental, and therapeutic services;
c. Failure to develop and implement appropriate permanency plans;
d. Failure to provide necessary and appropriate permanency and adoption services;
e. Failure to timely file termination of parental rights petitions;
f. Failure to have monthly contact between social workers and foster children;
g. Failure to have case plan reviews every six months;
h. Failure to have annual permanency hearings; and
i. Failure to prepare interstate compacts with other states as required by federal law.

*See* Amended Complaint, pgs. 40 – 47.[6]

The Youth Courts of Mississippi not only have the power to remedy all of the above alleged failures but any attempt by this federal Court to do so will interfere with the functioning of the Youth Courts. As stated before, Mississippi's Youth Courts are the ultimate arbitrator in decisions dealing with the care of Mississippi's foster children. Mississippi's Youth Courts have the following statutory purpose:

> [E]ach child coming within the jurisdiction of the youth court shall become a responsible, accountable and productive citizen, and that each such child shall receive such, guidance and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest. It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children; however, *when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.*

Miss. Code Ann. § 43-21-103 (emphasis added). Therefore, the youth courts have the statutory mandate to act in the "child's best interest" and secure proper care for the child. Miss. Code Ann. § 43-21-103.

1) <u>The Physical Placement of Children</u>

In acting in the child's best interest, the Youth Courts may order the child placed in a particular placement and, if needed, order the child removed from a particular placement.

---

[6] For additional insight into the claims and desired remedies of the plaintiffs, see Consent Decrees entered into by Plaintiffs Attorneys in the State of Tennessee and in Fulton and Dekalb Counties in the State of Georgia, attached as exhibit L and M to the Motion to Abstain. Plaintiffs' Counsel has previously brought lawsuits that are analogous to the one pending in Mississippi against the State of Tennessee and Fulton and Dekalb Couties in the State of Georgia.

Specifically, the Youth Court Law provides that after a Youth Court adjudicates a child as neglected or abused, it may, in its disposition order, "[p]lace the child in the custody of his parents, a relative or *other person* subject to any conditions and limitations as the **court** may prescribe." Miss. Code Ann. § 43-21-609(b) (emphasis added). In addition, after a Youth Court adjudicates a child as neglected or abused, it may, in its disposition order,

> Give legal custody of the child to . . . [a]ny private or public organization, preferably community-based, able to assume the education, care and maintenance of the child, which has been found suitable by the court.

Miss. Code Ann. § 43-21-609(e)(ii).

Plaintiffs argue that the named Plaintiffs, Olivia Y., Jamison J., John A., Cody B., Mary W., Tom W., Matthew W., and Dana W., are representative of the entire class of in-custody foster children in the State. In each of these individual cases, the Youth Courts of Mississippi have entered orders placing the children in the physical custody of specific foster homes, institutions, emergency shelters, or group homes. *See* Rickie Felder's Deposition, page 197, attached as Exhibit B to Motion to Abstain. (Felder stated in his deposition that the "Youth court judge has the ultimate say-so" in placements for foster children.). In these cases, the placements ordered by the youth courts may be unlicensed homes or facilities, may be group homes or institutions, may be distant out-of-state relatives, and may be emergency shelters despite the length of time the child has already spent in the shelter or the age of the child. *See* Youth Court Order pertaining to Jamison J, attached as Exhibit C to the Motion to Abstain (Judge orders that Jamison J. be placed with Ms. F., who the Judge acknowledges is not a licensed foster parent at the time.); Youth Court Post Termination of Parental Rights Review Hearing Order pertaining to John A, attached as Exhibit D to the Motion to Abstain (Judge orders that DHS through John A's Guardian Ad Litem proceed in filing mental health commitment proceedings for John A.); Youth Court Order of Placement pertaining to Jamison J., attached as Exhibit E to the Motion to

10

Abstain (Judge orders that Jamison J. be placed in Oakley Training School Transitional Living Center); Youth Court Order pertaining to Jamison J, attached as Exhibit F to the Motion to Abstain (Judge orders that Jamison J. be placed with his biological father in Witchita, Kansas, despite the fact that Jamison J.'s father had had his parental rights terminated); Youth Court Orders pertaining to Cody B., attached as Exhibits G and H to the Motion to Abstain (Judge orders Cody B. placed in emergency shelter at the age of 2 months and at the age of one year).

In addition to Youth Court orders evidencing the fact that the Mississippi Youth Courts control the placement of foster children in Mississippi, deposition testimony from DHS employees and a guardian ad litem of two of the named Plaintiffs detail what role Youth Court judges play in placement decisions regarding foster children. Zadie Rodgers, a Regional Director in DFCS, testified that the Youth Court Judge in Harrison County has a protocol "that all children who enter into [DHS] care as a result of sexual abuse have to go into the shelter." *See* Zadie Rodgers Deposition, page 191, attached as Exhibit J to the Motion to Abstain. Martha McDaniel, a Regional Director in DFCS, testified that "[s]ometimes the court opts to go ahead and place a child with a relative pending approval of the foster—excuse me, of the relative's home." *See* Martha McDaniel Deposition, page 149, attached as Exhibit Q to the Motion to Abstain. Gail Young, Division Director Two of Placement Unit for DFCS, explained in her deposition that the only unlicensed shelter she knew a foster child being placed in was "one shelter that is connected to the [youth] court." *See* Gail Young Deposition, page 33, attached as Exhibit O to the Motion to Abstain. This testimony illustrates that the youth court can choose to place a foster child wherever the judge feels is in the child's best interest, including an unlicensed shelter, if the judge feels is appropriate. James Johnson, guardian ad litem for named Plaintiffs Olivia Y and John A explained in his deposition that if he thought Olivia Y's placement was not in her best interest he could go to the judge and protest Olivia Y's placement

and, if the judge agreed that the placement was not in Olivia's best interest, the judge could order that the placement be changed. *See* James Johnson Deposition, page 73, attached as Exhibit P to the Motion to Abstain ("If I found out (that placement was not in Olivia Y's best interest) and the judge agreed that it was not in her best interest, he could direct whatever he thinks is in her best interest."). Any remedial plan issued from this federal court restricting the placements that MDHS and DFCS may use for sheltering its foster children or circumventing the Youth Courts' judicial findings would directly interfere with the youth courts' proceedings.

The Youth Court judges, prior to their issuance of orders, are provided a complete history of each child's placements. Miss. Code Ann. § 43-15-13(5). Furthermore, Youth Courts routinely make judicial findings that the foster children be placed in the least restrictive placement. *For example, see* Permanency Order issued by the Youth Court for Cody B., attached as Exhibit I to the Motion to Abstain (Judge states "the said child is currently in the least restrictive most appropriate environment consistent with his needs and best interest").

An example of Plaintiffs' claims interfering with Mississippi Youth Court proceedings can be found in one of the recommendations outlined in the Report of Dr. Peg Hess, one of the Plaintiffs' Experts. Dr. Peg Hess gives recommendations, at the conclusion of her report, as to how, in her opinion, DFCS can remedy alleged systemic failures. One of these recommendations includes identifying "steps needed to determine the type of placement needed (for a foster child) and to achieve an appropriate placement for the child." *See* Page 147 of Dr. Peg Hess' Expert Report, attached as Exhibit R to the Motion to Abstain.

If this Court were to assume jurisdiction as to addressing or controlling placement of foster children, that remedy would directly interfere with the proceedings of the Youth Court. The Mississippi Youth Court is statutorily granted the power to control the placement of foster children in the state of Mississippi and any attempt by this Court to offer a remedy addressing

the placement of foster children would clearly be interference by a federal court with on-going state proceedings. *Younger* abstention is intended to prevent this very outcome and to ensure the federal court system maintains respect for state judicial proceedings. To further illustrate the purpose of *Younger* abstention, would a federal court judge order a Youth Court judge to place a foster child in a particular placement? And if the Youth Court judge chose not to follow such an order, based on the fact that he or she felt the placement was not in the child's best interest, could the youth court judge be held in contempt?

    2)    <u>Services Provided to Children</u>

Youth Courts also have the power to order specific services for any child in state custody. Miss. Code Ann. § 43-21-251(1)(d)(ii) and (iii) give the Youth Courts power to order medical and mental examinations. *See also* § 43-21-357(3) (during intake procedure, "[i]f the preliminary inquiry discloses that a child needs emergency medical treatment, the judge may order the necessary treatment.) *See* Youth Court Order pertaining to Cody B., attached as Exhibit K to the Motion to Abstain (Judge orders that DHS pay the daycare expenses of Cody B.); Subpoena Duces Tecum for Forrest County Youth Court, attached as exhibit N to the Motion to Abstain (Subpoena ordering doctor of Olivia Y to appear in Youth Court and report her findings). If this court were to assume jurisdiction as to ordering or controlling services provided to foster children, that remedy would directly interfere with the proceedings of the Youth Courts.

**V)    Conclusion**

Plaintiffs ask this federal Court to declare that their substantive constitutional rights have been violated and to ensure that a remedial plan is monitored. However, the Youth Courts routinely exercise their power to hear constitutional claims as well as subpoena MDHS and DFCS officials to appear in their courts. *See* Subpoena Duces Tecum for Forrest County Youth

13

Court, attached as Exhibit A to the Motion to Abstain. Mississippi statutory law gives the Youth Courts the power "to issue all writs and processes including injunctions necessary to the exercise of jurisdiction and to carrying out the purpose of this chapter." Miss. Code Ann. § 43-21-153(1). Furthermore, "[a]ny person who wilfully violates, neglects, or refuses to obey, perform or comply with any order of the Youth Court shall be in contempt of court" and shall be punished by fine, imprisonment, or both. *Id.* § 43-21-153(2).

This federal Court's intervention into oversight of the placement and services provided to foster children would dilute the statutory powers given the Mississippi Youth Courts and interfere with the ongoing proceedings of this state Court. The Plaintiffs' claims should be heard on an individual basis in the Youth Court, rather than the federal court trying to create a plan to address all of plaintiffs' claims and micro-manage thousands of foster children. For these reasons, abstention as to placement, services, and this lawsuit is proper.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of Mississippi; DONALD TAYLOR, as Executive Director of the Department of Human Services; and RICKIE FELDER as Director of the Division of Family and Children's Services**

BY:  /s/ Dewitt L. Fortenberry, Jr.
         Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

14


**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS 39215

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York 10001

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205

I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Susan Lambiase, Esq.
Shirim Nothenberg
Tara Crean, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York 10001

Eric S. Manne, Esq.
John Piskora, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

**SO CERTIFIED**, this the **1st** day of **May, 2006**.

/s/ Dewitt L. Fortenberry, Jr.