Not Reported in F.Supp.                                                          Page 1
Not Reported in F.Supp., 1995 WL 1945566 (N.D.Miss.)
(Cite as: 1995 WL 1945566 (N.D.Miss.))
H

Only the Westlaw citation is currently available.

United States District Court, N.D. Mississippi,
Greenville Division.
William A. HARRINGTON Plaintiff
v.
Marvin T. RUNYON, Postmaster General of the
United States Postal Service
Defendant
No. 4:94CV2-B-O.

Dec. 8, 1995.

## MEMORANDUM OPINION

BIGGERS, J.

*1 This cause is presently before the court on the motion of the defendant for summary judgment. At issue are the hiring practices of the Greenwood, Mississippi Post Office. The plaintiff has filed suit pursuant to Title VII of the Civil Rights Act of 1964, as amended (otherwise known as 42 U.S.C. § 2000e *et seq.*), alleging employment discrimination based on race and disability. Upon due consideration of the motion, the plaintiff's response thereto, the affidavits and the memoranda submitted by the parties, the court is prepared to rule.

In 1985, the plaintiff, who is black and a disabled veteran, [FN1] applied for a carrier position with the postal service in Greenwood, Mississippi. The plaintiff took the civil service examination and received a score of 92.3. Because the plaintiff was a veteran and by law was entitled to preference, he received an additional 10.0 points, resulting in a composite score of 102.3. The plaintiff was then placed on the "hiring register" based on his performance on the test and his status as a veteran. In March of 1986, the plaintiff was notified by the Greenwood Post Office that a position for a carrier was available. After the plaintiff was interviewed, he was asked to take a drivers test (road test). Don Felts, a white employee at the Greenwood Post Office, administered the road test. At the conclusion of the test, the plaintiff was advised by Felts that he had failed. As a result, the plaintiff was not offered the carrier position. The plaintiff claims that this position was eventually filled by a white person with a test score lower than that of the plaintiff's.

> FN1. The evidence produced for this motion revealed that the plaintiff had a disability rating of 60% since April 19, 1985.

In June of 1986, the plaintiff was again notified that a position for a carrier was open and that he was next on the list for the position. The plaintiff was also advised that he needed to re-take the road test. This time, according to the plaintiff, he had information that led him to believe he would receive a more favorable outcome if he took the road test at the post office in the nearby town of Greenville, Mississippi. Upon arrival in Greenville, the plaintiff was informed that the person who normally administered the test, a black male, was not giving it, rather, Jerry McLean, a white male and former employee of the Greenwood Post Office, would administer the test. The plaintiff again failed the test and was therefore not offered the available carrier position. [FN2]

> FN2. Although the plaintiff states he also applied for a clerk position, there is no evidence that such a position ever became available during the relevant time period.

Because the plaintiff felt he had passed the road tests on both occasions but had been discriminated against by the postal employees, he decided to take the road test once more. In November 1986, the plaintiff went to Jackson, Mississippi where he succeeded in passing the road test. In February 1987, the plaintiff was offered a part-time flexible carrier position with the Jackson Post Office, conditioned on successful completion of a physical examination. Upon completion of a battery of tests by a number of physicians, the Jackson Post Office informed the plaintiff that he was medically unsuitable to perform the duties of a carrier and thus was ultimately rejected for the position.

*2 In January of 1987, the plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that he had been discriminated against on the basis of race and because of his disability. Following an exhaustive seven-year odyssey through the administrative process, he filed the instant suit. In hopes that the postal service could finally lay this case to rest, it filed a motion for summary judgment on March 7, 1995.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 3:04-cv-00251-HSO-ASH    Document 304-2    Filed 05/18/06    Page 2 of 5

Not Reported in F.Supp.
(Cite as: 1995 WL 1945566, *2 (N.D.Miss.))

Page 2

### STANDARD FOR SUMMARY JUDGMENT

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L.Ed.2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil procedure, the burden shifts to the non-movant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 91 L.Ed.2d at 274. That burden is not discharged by "mere allegations or denials." Fed.R.Civ.P. 56(e). All legitimate factual inferences must be resolved in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L.Ed.2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 91 L.Ed.2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L.Ed.2d 538, 552 (1986). The court here finds no factual dispute which would preclude a grant of summary judgment to the defendant.

### DISCUSSION

To prevail on his claim of disparate treatment, the plaintiff must establish by a preponderance of the evidence that a pattern of intentional discrimination existed in the post office's hiring of black or disabled applicants. [FN3] In other words, the alleged discriminatory hiring must be shown to be the regular, rather than the unusual, practice. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 360, 52 L.Ed.2d 396 (1977); *E.E.O.C. v. Olson's Dairy Queens, Inc.*, 989 F.2d 165, 167 (5th Cir.1993).

> FN3. The court discerns no claim of disparate impact here. The gravamen of the complaint is that certain employees of the Greenwood Post Office utilized the road test to intentionally exclude black or disabled applicants. There is no allegation that the road test was "facially neutral" but in fact fell more harshly on these applicants. *See Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1283-84 (5th Cir.1994), *cert. denied*, 130 L.Ed.2d 1066 (1995).

The United States Supreme Court and the courts of appeal have developed an allocation of proof to aid in this determination. It is incumbent on the plaintiff to first establish the prima facie case of discrimination, which will in turn create a presumption of intentional discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L.Ed.2d 668 (1973). The plaintiff may establish the prima facie violation of Title VII by producing admissible evidence of four elements: 1) that he belongs to a class of people protected by the statute; 2) that he applied and was qualified for the position; 3) that he was rejected despite his qualifications; and 4) that, after his rejection, the employer hired a person not in the plaintiff's protected class, or retained those having comparable or lesser qualifications. *McDonnell Douglas*, 411 U.S. at 802; *Carpenter v. Gulf States Mfrs., Inc.*, 764 F.Supp. 427 (N.D.Miss.1991). If the plaintiff satisfies this burden, the inquiry, however, is not yet concluded. The burden of production shifts and the employer must articulate some legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 125 L.Ed.2d 407, 416 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 67 L.Ed.2d 207 (1981). Once the employer articulates a valid reason for the disparate treatment, assuming it to be true, the presumptions in the case dissolve. *St. Mary's Honor Ctr.*, 125 L.Ed.2d at 418. To sustain his ultimate burden of proof of intentional discrimination and to avoid summary judgment, the plaintiff must prove that the proffered reason is merely pretextual. [FN4] *Id.*

> FN4. Alternatively, the plaintiff may produce direct evidence of discrimination and may circumvent the allocation set out above. If the plaintiff produces direct evidence, the defendant must then show by a preponderance that the same decision would have been reached even in the absence of the allegedly illegal motive. *Guillory v. St. Landry Parish Police Jury*, 802 F.2d 822, 824 (5th Cir.1986), *cert. denied*, 482 U.S. 916 (1987). The court need not consider this alternate route, as the plaintiff has not, beyond mere allegation, presented any evidence--much less direct evidence--of discrimination.

Case 3:04-cv-00251-HSO-ASH    Document 304-2    Filed 05/18/06    Page 3 of 5

Not Reported in F.Supp.
(Cite as: 1995 WL 1945566, *3 (N.D.Miss.))

Page 3

*3 The motion *sub judice* is essentially an attack on the prima facie case put forward by the plaintiff. The defendant admits that the plaintiff is within a protected class, i.e., he is black and/or disabled. However, the controversy lies in the second element. The defendant's argument simply stated is that the plaintiff was not "qualified" for the available carrier position because he failed the road test--twice. Thus, the argument goes, if the plaintiff was not qualified for the position, he cannot make out a prima facie case of discrimination in connection with the refusal of the post office to hire him. In response to this posture, the plaintiff hinges his argument on a single theory. That theory is that the road test is not legitimate; that is, it has historically been used as a method of disqualifying black applicants from positions with the Greenwood Post Office. Thus, in the opinion of the plaintiff, a genuine issue for trial is created. For his only support of this theory, the plaintiff attaches two affidavits to his response of the summary judgment motion.

Inasmuch as the plaintiff concedes in deposition that he has no evidence, beyond these affidavits, the court searches for a genuine issue of material fact in the submitted affidavits. [FN5]

> FN5. The plaintiff admits in deposition that he had no evidence to show that others, including white applicants, were treated differently than he was with respect to the administration of the road test. In fact, he admitted that white applicants who had failed the test were not hired as well. Further, he admitted that he had no proof that blacks failed the test at a higher rate than whites. And, finally, he admitted that he had no proof to show that he failed the test because he was handicapped.

I. THE AFFIDAVIT EVIDENCE

At the outset, the court must make an admissibility determination on the proffered evidence. Only affidavit evidence that comports with Fed.R.Civ.P. 56 can be the foundation of a successful defense of a summary judgment motion. *Richardson v. Oldham,* 12 F.3d 1373, 1379 (5th Cir.1994) ("The question whether an affidavit is competent summary judgment evidence begins and ends with the requirements of Fed.R.Civ.P. 56(e)."). Rule 56(e) provides, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Affidavit evidence is not the only method of producing summary judgment evidence but it is the only method utilized by the plaintiff. Thus, his claim rises and falls on the contents thereof.

The first affidavit in support of the plaintiff's opposition to the motion is by Isaiah Cayson, a black male employed by the Greenwood Post Office since 1978. He states that the county in which the post office sits is approximately sixty-two (62) percent black and thirty-eight (38) percent white. Additionally, according to the affiant, in 1986 there were approximately 51 employees at the Greenwood Post Office, of which 45 were white (eighty-eight (88) percent) and 6 were black (twelve (12) percent). The affiant cites no source for this information. The defendant did not otherwise object to this information.

The subsequent statements, however, cause concern for the defendant and the court as well. These statements are as follows:

*4 5. At the time Plaintiff applied for a position in 1986, no black employees had been hired in the Greenwood post office since 1979. During this 7 year period, many blacks had taken and passed the written examination but no blacks seeking positions in the Greenwood post office had passed the drivers examination.
6. During this 7 year period, in excess of 25 positions were filled by white employees with test scores that were lower than the scores of black applicants.
7. The driving examination, which is very subjective, was used in the Greenwood post office as a method of discriminating against black applicants.
10. From 1979 until 1987, no blacks applying for positions in the Greenwood post office were allowed to past [sic] the driving test. After Plaintiff filed his EEOC complaint in 1987 blacks started passing the driving test.

As pointed out by the defendant in rebuttal affidavits, the test results and the hiring register itself are confidential documents. The affiant does not state that he had access to the hiring register, or that he administered the tests in question. Thus, for paragraphs 5, 6, and 10, the affiant would have no personal knowledge of these facts; instead, the only way he could know is through hearsay. Indeed,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
(Cite as: 1995 WL 1945566, *4 (N.D.Miss.))

Page 4

nowhere in the affidavit does it even aver that the statements are made on personal knowledge or that the affiant is competent to testify to these matters. The statements are inadmissible. [FN6]

> FN6. Even assuming, *arguendo,* that no blacks had been hired in this 7-year period, there is no evidence whatsoever of the number of blacks who applied for positions, thus making much of this information meaningless.

The statement in paragraph 7 is completely devoid of any reference to the basis of such a belief and is the kind of conclusory allegation that the Fifth Circuit has repeatedly condemned. *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) ("affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to support or defeat a motion for summary judgment"); *see Richardson,* 12 F.3d at 1378. This statement is also inadmissible.

The second affidavit is by Jacqueline Ratliff, a black female who was initially hired by the Greenwood Post Office in 1987 as a part-time flexible carrier for a 90-day probationary period. When a full-time position became available, she took the road test from the same two persons that administered the plaintiff's test. She too failed twice. The relevant portions of her affidavit are as follows:

3. I had a good driving record and I don't feel that I failed the test.
4. After being hired as a temporary employee, I learned that no blacks had been hired as a full time employee in the Greenwood post office since 1979 and that many blacks had passed the written examination but non [sic] had passed the driving test.
5. Based on my experience and what I saw once I was hired as a temporary employee, I feel that the driving test is used as a method of discriminating against black applicants, particularly those seeking full time positions.

The affiant's subjective feelings in paragraph 3 are of no evidentiary value and are thus inadmissible. *Waggoner v. City of Garland, Tex.,* 987 F.2d 1160, 1164 (5th Cir.1993); *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215 (1984).

*5 Paragragh 4 lacks any foundation for the information asserted. The data the affiant espouses is confidential information that she normally would have no access to during her 90-day probationary period. The affiant does not indicate an admissible means of learning the information and the court is left with only hearsay evidence. Similar to the previous affidavit, the affiant here makes no indication that the statements are based on personal knowledge or that she is competent to testify to the same. These statements are thus inadmissible. [FN7]

> FN7. Contrary to the assertions by both affiants that no blacks have passed the road test, the court points out that in the exhibits attached to the plaintiff's deposition (supplied by the defendant), the EEOC's and the postal service's comparative studies revealed that Don Felts administered the road test to 35 applicants of known race in 1985 and 1986. Of the 31 white applicants, 21 passed. Of the 4 black applicants, 2 passed. Additionally, Jerry McLean tested 16 applicants of known race from March of 1985 to January of 1987. Of the 11 white applicants, 7 passed. Of the 5 black applicants, 2 passed. In including this information, the court does not express an opinion of the accuracy or veracity of the affidavits, but it is included merely for support of the court's admissibility determination. For if the affiants did indeed have personal knowledge of the matters stated, they would surely have discovered this information. In any event, the court does not base its decision solely on this data.

Lastly, the statement in paragraph 5 bears striking resemblance to the conclusory allegation made by Mr. Cayson. For the same reasons, the court finds that this statement is also inadmissible.

II. THE REMAINING SUMMARY JUDGMENT EVIDENCE

With most of the plaintiff's affidavit evidence stricken, the court now examines the remaining evidence in opposition to the motion to determine if a genuine issue of material fact exists. The remaining evidence is essentially reduced to raw statistical data appearing to show a disparity between the racial makeup of the county and that of the post office. However, statistical disparities between the relevant labor pool and the post office's workforce are not sufficient. *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1367 (5th Cir.1992), *cert. denied,* 128 L.Ed.2d 362 (1994); *Pouncy v. Prudential Ins. Co.,* 668 F.2d 795, 800-01 (5th

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
(Cite as: 1995 WL 1945566, *5 (N.D.Miss.))

Page 5

Cir.1982). The plaintiff has not even produced evidence of the racial makeup of the relevant labor pool--relying only on the total racial makeup of the county. Furthermore, the plaintiff must offer evidence "isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 104 L.Ed.2d 733 (1989) (citation omitted); *see Burdine,* 450 U.S. at 253-54 (plaintiff must also eliminate the "most common nondiscriminatory reasons" for the observed disparity); *see generally Segar v. Smith,* 738 F .2d 1249, 1273-74 (D.C.Cir.1984) (discussing requirements of statistical data in Title VII cases), *cert. denied,* 471 U.S. 1115 (1985). Not only does the plaintiff leave out critical information on the relevant labor pool, he also provides no data concerning the number of black or disabled applicants for postal positions. Without such information, the court cannot make a meaningful determination. Whether the plaintiff's claim can be considered a disparate treatment case or a disparate impact case, the statistical evidence is wholly inadequate to defend against a properly supported motion for summary judgment.

For the foregoing reasons, the defendant's motion for summary judgment will be granted. An order will issue accordingly.

Not Reported in F.Supp., 1995 WL 1945566 (N.D.Miss.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.