IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                    PLAINTIFFS

v.                                                       CIVIL ACTION NUMBER 3:04CV251

HALEY BARBOUR,
as Governor of the State of Mississippi, *et al.*                                      DEFENDANTS

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF BILL M. BRISTER, PhD

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, MS  39201
Telephone:  (601) 948-8000

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
Telephone:  (601) 355-4013

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Susan Lambiase (MBN 43992 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Tara Crean (MBN 44447 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 Seventh Ave, 4th Floor
New York, NY 10001
Telephone:  (212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone:  (212) 407-4000

# TABLE OF CONTENTS

**Table of Contents** ..................................................................................................................ii

**Table of Authorities** ..............................................................................................................iii

**Preliminary Statement**............................................................................................................ 1

**Argument** ................................................................................................................................ 4

    I.       Applicable Standard ............................................................................................ 4

    II.      Dr. Brister, A Mississippi Finance Professor, Is Qualified To Provide Expert Testimony Concerning The State Defendants' Budgetary Practices And Fiscal Management In Regard To Mississippi's Foster Care System...................... 5

    III.     Dr. Brister's Expert Report And Proposed Testimony, Which Are Based Upon Defendants' Testimony And Documents, As Well As Well-Recognized Practices And Articulated Standards, Are Both Reliable And Unchallenged............................................................................................................ 8

**Conclusion**............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Albarado v. Chouest Offshore, LLC,*
    No. 02-3504, 2003 WL 22204538 (E.D. La. Sept. 5, 2003) ................................ 5

*Black v. Food Lion, Inc.,*
    171 F.3d 308 (5th Cir. 1999) ................................................................................ 9

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ....................................................................................... *passim*

*Elder v. Tanner,*
    205 F.R.D. 190 (E.D. Tex. 2001) ......................................................................... 7

*Ellis v. K-Lan Co., Inc.,*
    695 F.2d 157 (5th Cir. 1983) ................................................................................ 7

*Friendship Heights Assoc. v. Koubek,*
    785 F.2d 1154 (4th Cir. 1986) .............................................................................. 7

*Gibbs v. Gibbs,*
    210 F.3d 491 (5th Cir. 2000) ................................................................................ 5

*Kuhmo Tire Company, Ltd. v. Carmichael,*
    526 U.S. 137 (1999) .............................................................................................. 8

*Peterson v. Ford Motor Co.,*
    No. CIV. A. 96-1902, 1999 WL 796215 (E.D. La. Sept. 30, 1999) ..................... 7

*Pipitone v. Biomatrix, Inc.,*
    288 F.3d 239 (5th Cir. 2002) ............................................................................ 8, 9

*Skidmore v. Precision Printing and Packaging, Inc.,*
    188 F.3d 606 (5th Cir. 1999) .............................................................................. 11

*U.S. v. 14.38 Acres of Land,*
    80 F.3d 1074 (5th Cir. 1996) ................................................................................ 7

*Viterbo v. Dow Chemical Co.,*
    826 F.2d 420 (5th Cir. 1987) ................................................................................ 7

*Watkins v. Telsmith, Inc.,*
    121 F.3d 984 (5th Cir. 1997) ................................................................................ 9

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants' motion to exclude, in its entirety, the expert testimony of Bill M. Brister, Ph.D, pursuant to Rule 702 of the Federal Rules of Evidence ("FRE") and *Daubert v. Merrill Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993). For the reasons set forth below, the motion should be denied.

## PRELIMINARY STATEMENT

By their current motion, the Defendants seek to exclude, in its entirety, the expert report and related expert testimony of Dr. Bill Brister concerning the Defendants' fiscal practices and management in regard to Mississippi's foster care system. Dr. Brister is an Assistant Professor of Finance at the Else School of Management at Millsaps College and has been accepted as a financial expert numerous times by both Mississippi's state and federal courts. Based upon his review of the voluminous budgetary documentation produced and related testimony of Defendants in this action, Dr. Brister concluded that for years:

- The State Defendants have failed to request sufficient funding to meet the critical needs of the Division of Children and Family Services ("DFCS");

- The budget requests submitted by the Defendants were based in large part upon inflated and unrealizable forecasts of anticipated federal funding levels; and

- Defendants have failed to maximize available financial resources and left millions of dollars unspent notwithstanding that the Mississippi foster care system, by Defendants' own admission, has been severely underfunded.

*See* Defs' Mem. of Law in Support of Mot. to Exclude ("Defs' Mem.") at Exhibit B.

4/84677.1                              1

Notably, each of Dr. Brister's conclusions has been conceded and admitted by Defendants in both documents and deposition testimony produced *after* Dr. Brister's report was filed. For example, in his report, Dr. Brister concluded that Defendants' fiscal practices failed to meet minimum professional standards in regard to fiscal management, and in a subsequently produced document, the Mississippi Department of Human Services ("DHS") similarly described DFCS "employees who through their incompetence and inaction have cost the state **millions** of dollars and placed the agency in a perilous position with . . . federal agencies."[1] It is therefore unsurprising that Defendants never argue that Dr. Brister's analysis of DFCS's budgets, funding sources or actual spending are faulty in any way or based upon "junk science." Rather, Defendants challenge Dr. Brister's qualifications and the reliability of his proposed testimony.[2]

Conceding his qualifications in finance and economics (*see* Defs' Mem. at 9), Defendants argue that he is nonetheless an "outsider" to the state budget and management process and, thus, unqualified as a financial expert. Defendants' qualification argument fails as a threshold matter, however, because neither the Federal Rules of Evidence nor *Daubert* raises the bar of expert qualifications to the level Defendants here assert. The Court's gatekeeper function is intended to preclude non-experts parading as experts so that they do not confuse the jury – not to exclude a highly qualified Mississippi finance

---

[1] Ex. 1 at DHS 114453 (Plan for Reorganization and Performance Improvement Strategies for the Mississippi Department of Human Services dated December 12, 2004) (emphasis in original) (admitting that needed services "were lost" when DFCS was required to return a $200,000 federal grant because it simply failed to spend the funds); *see also* Ex. 2 at DHS068743 (Letter from DHS Director Taylor to the PEER Committee, dated May 10, 1999, conceding that "the Division has been dangerously under-funded and under-staffed for many years.")); Ex. 3 (Felder Dep.) at 77:21-23 (agreeing with Dr. Brister's conclusion that DFCS has failed to maximize federal funding sources).

[2] Defendants apparently concede, as they must, the relevancy and usefulness of Dr. Brister's proposed testimony. *See generally* Defs' Mem.

and economics professor from summarizing voluminous financial and budgetary documents, comparing Mississippi to nationwide averages in regard to numerous financial issues including federal financing of state foster care systems, and testifying as to Defendants' fiscal management practices.  Indeed, this is the very type of expert financial and accounting testimony that is routinely *admitted*.

Defendants' complaint as to Dr. Brister's experience in state government is irrelevant as to the *admissibility* of his testimony and instead is a baseless attack as to its *weight*, which is ultimately a determination for the trier of fact.  In any event, Defendants cannot dispute that Dr. Brister's conclusions were based, in part, upon the deposition testimony of the relevant budgetary personnel and the budgetary and related financial documents they created.  These are the very types of materials upon which experts routinely base their opinions.

Nor is Dr. Brister's proposed testimony unreliable.  Defendants can only fashion this argument by selectively citing a mere fraction of his deposition testimony and ignoring the numerous sources cited in Dr. Brister's report itself, his years of experience, and widely accepted and non-controversial budgetary and fiscal practices he relied upon.

Moreover, the trial of this matter is not before a jury, but will be conducted before the Court.  Defendants' attempt to exclude Dr. Brister's testimony must, therefore, be taken for what it is – not an apparent fear that the Court will be confused by Dr. Brister's findings (indeed, Defendants append Dr. Brister's report to their motion), but a desperate attempt to exclude evidence that is devastating to their purported defense based upon a lack of funding.

Dr. Brister applied a reliable analytical methodology based upon his knowledge, professional experience and the tools customarily relied upon by financial and accounting experts. Both in his report and at deposition he cited to relevant standards and practices in regard to budgeting and fiscal management practices. Notably, these standards have been admitted by Defendants' own budgetary personnel and managers, as well as Defendants' proposed expert. Dr. Brister's financial summaries and conclusions are thus clearly reliable pursuant to FRE 702 and *Daubert*.

Accordingly, Defendants' motion to exclude should be denied.

## ARGUMENT

### I. Applicable Standard

The Defendants' motion to exclude the expert testimony of Dr. Brister improperly distorts both *Daubert's* purpose and test in regard to the screening of expert testimony. Rule 702 of the Federal Rules of Evidence, as construed in *Daubert*, provides a two-pronged evaluation for assessing the admissibility of expert opinions: reliability and relevance. Where, as here, an expert's testimony is sufficiently rooted in the "knowledge, skill, experience, training, or education," and is reliable and explanatory or probative of a pertinent inquiry in dispute, it is admissible as an aid to the trier of fact. Fed. R. Evid. 702.

Exclusion pursuant to Rule 702 and *Daubert* remains the exception, not the rule. The rule is only intended to bar expert opinions that are based upon unrecognized and/or untested scientific theories, a methodology that is completely unreliable, or is entirely irrelevant to any pertinent inquiry at issue. *See* Defs' Mem. at 3 (conceding that the "single purpose" of Fed. R. Evid. 702, as construed by *Daubert*, is "to eliminate junk

science from the courtrooms"). In such extreme cases, the Court may, in its discretion, properly bar the evidence from being presented to the trier of fact.

Where, as here, the case is to be tried to the Court, there is little, if any, justification for the preclusion of admittedly relevant testimony prior to trial. *See, e.g., Gibbs v. Gibbs*, 210 F.3d 491, (5th Cir. 2000) (affirming lower court's admission of expert testimony and holding that "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Albarado v. Chouest Offshore, LLC*, No. 02-3504, 2003 WL 22204538, at *1 (E.D. La. Sept. 5, 2003) (same; holding, in bench trial, that court would allow the admission of proposed expert testimony at trial and "either exclude it at that point, or give it whatever weight it deserves") (citing *Gibbs*) (attached hereto as Ex. 4).

Moreover, while Defendants cite Rule 702 (and *Daubert*) as the basis for their motion, Defendants' motion fails to even come close to establishing any basis under that rule for the exclusion of Dr. Brister's expert testimony. Accordingly, the motion should be denied.

## II.     Dr. Brister, a Mississippi Finance Professor, is Qualified to Provide Expert Testimony Concerning the Defendants' Budgetary Practices and Fiscal Management in Regard to Mississippi's Foster Care System

Dr. Brister is a professor of finance at the Else School of Management of Millsaps College in Jackson, Mississippi. He has been a member of the Millsaps faculty for 16 years and served as Director of its M.B.A. program for four years. As set forth in detail in his *curriculum vitae* (Defs' Mem. at Ex. B), Dr. Brister has taught numerous college-level courses and published a large number of academic articles concerning financial management, financial markets and institutions, international finance, business statistics,

and portfolio management.  Several years ago, he directed the state-wide evaluation of the welfare reform demonstration conducted by the Mississippi Department of Human Services regarding reforms implemented by the State after the passage of the Personal Responsibility and Work Opportunity Reconciliation Act.  This evaluation included the analysis and compilation of detailed findings regarding the implementation of such reforms as to Mississippi's welfare system.  Based upon his knowledge and experience, Dr. Brister has also been confirmed as a qualified expert witness in regard to finance and economic issues on numerous occasions, both in Mississippi's state and federal courts. *See* Defs' Mem. at Ex. A at 5:12-25, 77:12-80:5 and Ex. B.

Defendants, however, seek to exclude Dr. Brister's testimony as to Defendants' budgetary and financial management practices on the ground that he lacks firsthand experience as to the "management of a state agency."  Defs' Mem. at 8-9. Contrary to Defendants' contention, one need not be a member of the Governor's Office budgetary staff in order to be a qualified expert as to Defendants' budgetary and fiscal management practices.  Notably, when Defendant DHS needed an independent evaluator to perform a detailed analysis of the outcomes of Mississippi's work-based Welfare reforms, they hired Dr. Brister.  *See* Defs' Mem. at Ex. A , 77:12-80:5

Neither Rule 702 nor *Daubert* raises the burden of expert qualification to such the extremely high standard Defendants urge this Court to adopt.  To testify as an expert pursuant to Rule 702, an expert need only be qualified on the basis of 'knowledge, skill, experience, training or education."  Clearly, Dr. Brister's background and years of experience as a financial academic and practitioner qualify him as an expert on fiscal management.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592 (holding that "[u]nlike an

ordinary witness…an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); *Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001) (professor with thirty years of experience and numerous publications held to be qualified expert); *Peterson v. Ford Motor Co.*, No. CIV. A. 96-1902, 1999 WL 796215 (E.D. La. Sept. 30, 1999) (holding expert qualified based upon education and experience) (attached hereto as Ex. 5).

Nor can Dr. Brister be held "unqualified" because he allegedly "did not review any Mississippi statutory law defining [Defendants'] duties and obligations" in regard to budgetary and/or fiscal management. Defs' Mem. at 9. The Fifth Circuit has squarely rejected the argument that an expert's proposed testimony can be excluded based upon an alleged failure to review relevant statutory law. *See, e.g., Ellis v. K-Lan Co., Inc.*, 695 F.2d 157 (5th Cir. 1983) (affirming district court's admission of expert testimony despite argument that expert was not familiar with statutory definitions or standards); *see also Friendship Heights Assoc. v. Koubek,* 785 F.2d 1154, 1162 (4th Cir. 1986) (same; *citing Ellis*). Indeed, such an argument merely attempts to attack the weight of Dr. Brister's testimony, not its admissibility. Accordingly, it should be rejected. *See U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions related to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.") (*citing Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Dr. Brister clearly satisfies the requirements of Rule 702 to provide expert testimony as to Defendants' financial practices. Indeed, it is likely there is no better-qualified Mississippi candidate to do so. Defendants' half-hearted attack upon his

qualifications should be seen for what it is – a desperate attempt to exclude well-supported expert testimony fatal to their purported defense of "lack of funding."[3]

### III. Dr. Brister's Expert Report and Proposed Testimony, Which Are Based Upon Defendants' Testimony and Documents, as well as Well-Recognized Practices and Articulated Standards, Are Both Reliable and Unchallenged

Defendants' motion erroneously argues that Dr. Brister's conclusions as to Defendants' financial mismanagement of Mississippi's foster care system (which, as set forth above, have now been admitted) do not satisfy certain specific enumerated factors articulated by the Supreme Court in *Daubert* as to be indicators of reliability (*see* Defs' Mem. at 4-8) and, thus, Dr. Brister's testimony must be wholly excluded. Contrary to Defendants' contentions, the Supreme Court emphasized in its *Daubert* opinion itself that the articulated factors of reliability were neither exhaustive nor dispositive. *See Daubert*, 509 U.S. at 593-95 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. . . . The [reliability] inquiry envisioned by Rule 702 is, we emphasize, a flexible one."); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244-45 (5th Cir. 2002) (same).

Indeed, courts have repeatedly held that the factors to consider in assessing reliability vary "depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kuhmo Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (noting that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether a particular expert's testimony is reliable."); *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999).

---

[3] Lack of funding is not a "defense" to Plaintiffs' substantive due process claims. *See* Pls' Resp. in Opp'n to Defs' Mot. for Summ. J. at 35-36.

District courts are guided by the doctrine that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but dismissible, evidence." *Daubert*, 509 U.S. at 596; *see also Pipitone*, 288 F.3d at 250. The Fifth Circuit has also explained that in determining reliability, a district court should "evaluate the [expert's] methods, analysis and principles relied upon in reaching the opinion." *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 991 (5th Cir. 1997). Considering these factors, Dr. Brister's report and proposed testimony easily satisfy the test for reliability and should be admitted.

Among other things, Dr. Brister analyzed and summarized the Defendants' budgetary process in regard to foster care, its use (and/or misuse) and maximization of federal sources of funding, and DFCS's management and spending of allocated funds. *See* Defs' Mem. at Ex. B, 5-16, Tables 1-3, 5, 7-9. Where appropriate, Dr. Brister also compared Mississippi's fiscal practices and budgetary history to other states and certain national averages. *Id.* at Tables 2, 4, 6.

As part of his analysis, Dr. Brister reviewed and summarized a voluminous amount of documentary materials, including Defendants' budgetary and fiscal document production, relevant deposition testimony, as well as state, federal and institutional reports concerning the economics and costs of state foster care programs (and related issues). *See* Defs' Mem. at Ex. B (citing materials produced by Defendants, deposition testimony, state reports (*e.g.* Department of Medicaid 2004 Annual Report), federal reports/publications (*i.e.* U.S. Department of Health and Human Services publications; House Ways and Means Committee, Green Book) and institutional reports (*e.g.* The Urban Institute's *The Cost of Protecting Vulnerable Children*; The Institute for Applied

Research)).  Each of the conclusions in Dr. Brister's report was supported with a reference to the relevant materials supporting that conclusion.

Notably, Defendants do not challenge even a single calculation or statement in regard to Dr. Brister's underlying budgetary and financial analysis or his conclusion that DFCS has failed to maximize federal sources of funding, left millions of dollars unspent, and has failed to effectively manage the funds it has.  Thus, there is absolutely no basis to exclude Dr. Brister's testimony in regard to these issues and his expert testimony should be admitted.

Defendants simply challenge Dr. Brister's expert conclusion that Defendants' budgetary practices failed to comply with professional standards, and base their challenge upon a highly selective and misleading quotation to Dr. Brister's deposition testimony. Defs' Mem. at 5.  As Dr. Brister explained at length both in his expert report and at his deposition, his conclusion that Defendants failed to comport with minimum professional standards in regard to their budgetary practices was based upon:

> (a) the indisputable fact that, for years, Defendants have failed to even ask to be allocated sufficient funds to satisfy their critical needs.  *See* Defs' Mem. Ex. B at 1, 5-6, 21 ("Despite years of reports that high social worker caseloads were placing children at risk, MDHS has failed to request that the division [DFCS] be funded at a level necessary to hire the caseworkers it acknowledges it needs."); *id.* at 117-118, 122:19-24 (testifying that Defendants failure to request the funds that they acknowledged they needed failed to comport with accepted budgeting standards);[4] and
>
> (b) Defendants' budget requests were based upon gross overestimations of future levels of federal funding.  *See id.* at 6-7, 21; Defs' Mem. Ex. A at 125 (testifying that it is contrary to established budgeting standards to base a budget upon anticipated sources of funding which "in … no way could come true and knowingly they could not come true").

---

[4] Because Dr. Brister's conclusions were based, in part, upon Defendants' failure to even request the funds that they knew were needed, defense counsel's question asking Dr. Brister to "quantify" this standard was, at best, both confusing and misleading.

Contrary to Defendants' assertions, Dr. Brister's conclusions were not based upon subjective, wholly speculative standards. Rather, these conclusions were based upon his extensive experience in finance (and Defendants' breach of fundamental and elementary concepts of budgeting). It has been repeatedly held that expert opinions based upon such extensive experience are both valid and admissible. Fed. R. Evid. 702; *see also Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (noting that the *Daubert* factors "have limited applicability to the kind of testimony whose reliability depends heavily on knowledge and experience of the expert," and holding that the testimony of an experienced doctor based upon personal experience and the standard methods of diagnosis in his field was admissible).

These are the same fundamental budgetary concepts that Deb Biggers, the Director of the Office of Budget and Fund Management ("OBFM") of the Department of Finance and Administration (the executive office responsible for "creat[ing] a budget that reflects the Governor's priorities") conceded at her deposition. *See* Ex. 6 at 11:23–12:19; 20:1–21:15; 63:6–66:17 (budgetary needs should be included in budgetary requests; OBFM performs a "critical needs" budgetary analysis); 73:14–77:15 (budgetary recommendations are based upon an analysis of "critical needs"; admitting that DFCS has nonetheless been underfunded since SFY2000); 78:3-19 ("Q: So the amount that [DHS] requested, you're presuming, is the amount that they need, correct? A: Yes, sir."); 102:14– 104:5 ("Q: In your . . . critical needs evaluation, have you ever contacted DHS to discuss whether or not the estimates of the special funding [*i.e.* federal funding] levels were realizable? A: No, sir, because we assume that when they [DHS and DFCS] prepare that special fund detail that they are projecting the revenues that they anticipate

for that fiscal year. That is their best estimate."); 154:16–155:16 (admitting that DHS/DFCS projections of realizable special, or federal, funds are taken into account as part of critical needs analysis).[5]

Thus, Defendants' complaints that Dr. Brister's budgetary standards are "untested," not "quantifiable," "subject to peer review or publication" or "accepted in the relevant scientific community," are disingenuous at best, and represent nothing more than an improper attempt to attack the *weight* of Dr. Brister's conclusions, not their admissibility. Not only are these budgetary practices well established in budgetary practice (to the point of being functionally self-evident), but OBFM has in fact implemented these budgeting practices for years. Notably, Defendants do not – and cannot – dispute the application of such standards to the underlying facts of this case.

## CONCLUSION

Dr. Brister's expert testimony concerning financial and budgetary practices is the very type of expert testimony that is routinely admitted by the courts to aid the trier of fact, both as to the summary of extensive financial materials and as to compliance with accepted financial practices. Defendants' objections to Dr. Bristers' qualifications and

---

[5] *See generally* Ex. 7, National Advisory Council on State and Local Budgeting, *Recommended Budget Practices: A Framework for Improved State and Local Government Budgeting*, (Government Finance Officers Assoc. 1998) (*available at* http://www.gfoa.org/services/dfl/budget/RecommendedBudgetPractices.pdf) at 10 (assessing needs is a fundamental budgetary practice, and the first of twelve enumerated elements of the budgetary process); Ex. 8 *Financial Forecasting in the Budget Preparation Process* (Government Finance Officers Assoc., Committee on Governmental Budgeting and Fiscal Policy 1999) (*available at* http://www.gfoa.org/services/rp/budget/budget-financial-forecasting.pdf) at 1 (accurately forecasting revenues is a recommended budgetary practice; "To improve future forecasting, the variances between previous forecast and actual amounts should be analyzed."). That Dr. Brister did not cite such references supporting these well-accepted practices in his expert report does not warrant the exclusion of his proposed testimony pursuant to Rule 702.

conclusions fail both as a matter of fact and law. Accordingly, Defendants' motion to exclude should be denied.

      Respectfully submitted, this 18th day of May, 2006.

/s Melody McAnally_____
W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, MS  39201
Telephone:  (601) 948-8000
Facsimile:  (601) 948-3000

Stephen H. Leech (MBN 1173)
850 East River Place, Suite 300
Jackson, MS 39202
Telephone:  (601) 355-4013
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Susan Lambiase (MBN 43992 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Tara Crean (MBN 44447 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 Seventh Ave, 4th Floor
New York, NY 10001
Telephone:  (212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone:  (212) 407-4000

*PLAINTIFFS' COUNSEL*

CERTIFICATE OF SERVICE

    I hereby certify that on May 18, 2006, I electronically filed the foregoing with the Court using the ECF system, which sent notification of such filing to the following:

    Dewitt L. ("Rusty") Fortenberry Jr., Esq.

Kenya Key Rachal, Esq.
Gretchen L. Zmitrovich, Esq.
Ashley Tullos Young, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi 39211

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, Mississippi  39201

*Attorneys for Defendants*

/s Melody McAnally_____