**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

JAMES D. JOHNSON, as next friend to                     PLAINTIFFS
Olivia Y., et al.

vs.                                            CIVIL ACTION NO. 3:04cv251LN

HALEY BARBOUR, as Governor of the                       DEFENDANTS
State of Mississippi, et al.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT ON LIABILITY**

---

COME NOW, Haley Barbour, as Governor of the State of Mississippi, Donald Taylor, as Executive Director of the Mississippi Department of Human Services ("MDHS"), and Rickie Felder, as Director of the Division of Family and Children's Services ("DFCS") ("Defendants"), by their attorneys of record, and submit this Memorandum of Law in Support of Their Response in Opposition to Plaintiffs' Motion for Summary Judgment on Liability.

**I.      Introduction**

The issue of this lawsuit is whether Defendants have violated Plaintiffs' substantive due process rights under the Fourteenth Amendment to be free from harm while in State custody. Inherent to this right is Defendants' constitutional duty to provide Plaintiffs with reasonable safety and adequate food, shelter, clothing, and medical care.

Plaintiffs' Motion for Summary Judgment must fail on both legal and factual grounds. First, Plaintiffs seek to improperly expand their Fourteenth Amendment constitutional rights as established by the United States Supreme Court and the Court of Appeals for the Fifth Circuit.

1

Second, Plaintiffs have ignored Fifth Circuit precedent in asserting that the appropriate standard by which to judge Defendants' actions is the professional judgment standard instead of the deliberate indifference standard. Third, Plaintiffs have not proven that their constitutional rights to reasonable safety and adequate food, shelter, clothing, and medical care have been violated nor that Defendants have acted with deliberate indifference to those rights.

Certification of a class action does not relieve Plaintiffs from proving the "injury in fact" requirement of Article III; the named Plaintiffs must establish "actual injury." In this regard, they failed miserably. Struggling to meet their burden of proof, Plaintiffs have set forth a litany of alleged facts which are not material to the issue of whether Defendants violated their constitutional rights to reasonable safety and adequate food, shelter, clothing, and medical care. For instance, only one of the 185 alleged undisputed facts contained in Plaintiffs' Motion for Summary addressed an alleged injury to a named Plaintiff. The remaining alleged undisputed facts are an effort to argue that Defendants should provide Plaintiffs with optimal care, which is not required by the Constitution.

The undisputed factual evidence set forth herein and in Defendants' Motion for Summary Judgment, along with its accompanying exhibits and memorandum of authorities, establishes that Plaintiffs have been provided with adequate food, shelter, clothing, and medical care, and reasonable safety. Furthermore, the undisputed factual evidence demonstrates that Defendants have not acted with deliberate indifference to the constitutional rights of Plaintiffs. Because there is no genuine issue as to any material fact related to Plaintiffs' claim of violation of their substantive due process rights and because Plaintiffs are not entitled to judgment as a matter of law, Plaintiffs are not entitled to summary judgment. Moreover, Defendants are entitled to judgment as a matter of law as shown in Defendants' Motion for Summary Judgment, along with

2

its accompanying exhibits and memorandum of authorities, previously filed with this court. Therefore, Defendants ask this court to deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Alexandria Assocs., Ltd. v. Mitchell Co.*, 2 F.3d 598, 600 (5th Cir. 1993); *Williams v. CXF Transp., Inc.*, 925 F. Supp. 447, 449 (S.D. Miss. 1996), *aff'd*, 139 F.3d 899 (5th Cir. 1998).

The United States Supreme Court has stressed that summary judgment requires "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus, disputes concerning facts not material to a determinative issue do not preclude summary judgment because "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure  2725, pp. 93-95 (1983)). Plaintiffs, as movants, also have the burden of showing they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party is not entitled to judgment as a matter of law if she has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

## III.    Plaintiffs Are Not Entitled to Summary Judgment on Their Substantive Due Process Claims.

### A.    Plaintiffs Improperly Seek to Expand the Scope of Rights Protected by the Fourteenth Amendment by Linking Unprotected Interests to the Right to Be Free From Harm.

This court has previously decided the scope of the rights protected by the Fourteenth Amendment for foster children in State custody when it ruled in a similar suit filed by a class of mentally and physically handicapped children who were foster children or otherwise in State custody against various State agencies, including MDHS:

> Plaintiffs who have been involuntarily placed in the custody of the DHS have substantive due process rights under the fourteenth amendment *to be free from harm while in state custody.* Thus, Defendants have an affirmative duty to provide these Plaintiffs with *adequate* food, shelter, clothing, medical care and *reasonable* safety under *DeShaney* [v. Winnebago County Dept. of Social Servs., 489 U.S. 189 (1989)]. Defendants are not required under the Constitution to provide Plaintiffs with an *optimal* level of care and treatment.

*E.F. v. Scafidi*, No. 3:91CV591LN, at *20 (S.D. Miss. Mar. 13, 1996) (Dist. File) (quoting *Baby Neal v. Casey*, 821 F. Supp. 320, 327 (E.D. Pa. 1993)) (emphasis added), attached as Exhibit "J" to Defendants' Motion for Summary Judgment.[1]

While Plaintiffs acknowledge that their substantive due process rights are limited,[2] they impermissibly attempt to link unprotected interests to the constitutionally protected right to be free from harm while in state custody by asserting Defendants have the following "responsibilities":

1)     Protect foster children from maltreatment and provide appropriate placements;
2)     Provide medical, dental, and psychological care and treatment deemed necessary to prevent children's "deterioration" while in care; and
3)     Provide adequate training and supervision to child welfare staff necessary to prevent foreseeable violations of children's constitutional rights.

---

[1] Unless otherwise noted, all referenced exhibits are attached to Defendants' Motion for Summary Judgment and are not being submitted to the court in duplicate.

[2] See Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment on Liability ("Plaintiffs' Summary Judgment Brief") at p. 4 ("Defendants have a 'special relationship' with these Plaintiff children that creates a substantive due process duty for Defendants to provide them with 'adequate care and treatment' and 'safekeeping' while in state custody.) (citing *Johnson ex rel. Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 555-556 (S.D. Miss. 2004)).

Plaintiffs' Summary Judgment Brief at p. 4. This assertion is an attempt to require Defendants to provide *optimal* care which this court has previously ruled is outside the scope of constitutional protection. There is simply no binding authority to support such an attempt, and any attempt by Plaintiffs to do so is against this court's holding that the affirmative duties placed on Defendants by its custodial relationship with Plaintiffs are limited to the provision of *adequate food, shelter, clothing, and medical care and reasonable safety*.

Plaintiffs allege Defendants must provide them with "appropriate placements" under the Constitution.[3] *See* Plaintiffs' Summary Judgment Brief at p. 4 (citing *Johnson ex rel. Olivia Y. v. Barbour*, slip op. at 6 (Mar. 11, 2005); *Hernandez*, 380 F.3d at 881-82; *Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289, 293 (8th Cir. 1993); *Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892-93 (10th Cir. 1992); *Taylor v. Ledbetter*, 818 F.2d 791, 795 (11th Cir. 1987); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 675-77 (S.D.N.Y. 1996); *Eric L. ex rel. Schierberl v. Bird*, 848 F. Supp. 303, 307 (D.N.H. 1994); *LaShawn A. v. Dixon*, 762 F. Supp.

---

[3] Plaintiffs have lumped the alleged duty to provide "appropriate placements" with the duty to protect foster children from maltreatment and have given a string cite to cover both with no attempt to inform this court or Defendants which authority supports each duty.

Defendants do not dispute that Plaintiffs have the constitutionally protected right to reasonably safe living conditions while in foster care. *See DeShaney*, 489 U.S. at 200 (State has affirmative duty to provide institutionalized persons with "reasonable safety."); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective Servs.*, 380 F.2d 872, 880-82 (5th Cir. 2004) (recognizing foster child has constitutional right to "personal security and reasonably safe living conditions" which imposes duty on State to protect him from "risk of severe physical abuse"); *Johnson*, 351 F. Supp. 2d at 555-56 (State has "special relationship" with Plaintiffs "that gives rise to a duty to provide . . . safekeeping.").

In addition, Defendants do not dispute Plaintiffs have the constitutionally protected right to adequate medical, dental, and psychological care and treatment. *See DeShaney*, 489 U.S. at 200 (State has affirmative duty to provide institutionalized persons with adequate "food, clothing, shelter, medical care, and reasonable safety."); *Johnson*, 351 F. Supp. 2d at 555-56 (State has "special relationship" with Plaintiffs "that gives rise to a duty to provide 'constitutionally adequate care' . . . .) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990)).

959, 993, 996 (D.D.C. 1991)).  Plaintiffs do not define "appropriate placements," and only two of Plaintiffs' cited authorities address "appropriate placements."  In *Marisol A.*, the court held the "right to be free from harm encompasses the right alleged by plaintiffs to appropriate conditions," and appropriate placements were included as a condition of foster care.  929 F. Supp. at 676.  In *LaShawn A.*, the court held that foster children had a protected interest in "appropriate placements" to the extent such placements were "essential to preventing harm" to the plaintiffs.  762 F. Supp. at 993.

To the extent Plaintiffs are seeking the least restrictive, optimal, best, or stable placements by asserting a right to "appropriate placements," Defendants are not liable.  Foster children do not have a constitutional right to be placed in the least restrictive, optimal, best, or stable placements.  *See Drummond v. Fulton County Dep't of Family & Children's Servs.*, 563 F.2d 1200, 1210 (5th Cir. 1977), *cert. denied*, 437 U.S. 910 (1978) (holding "The 'best' home for [a particular foster child] is basically a subjective determination" and is determined by "policy inquiries, not factual disputes."); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 853 (7th Cir. 1990) (holding there is no "established right to a stable foster-home environment"); *Marisol A.*, 929 F. Supp. at 675 ("Fourteenth Amendment does not require the state to provide children in foster care with an optimal level of care or treatment.") (citations omitted)); Exhibit "J" at *20 ("Defendants are not required under the Constitution to provide Plaintiffs with an *optimal* level of care and treatment. . . . Plaintiffs' claim to the least restrictive, most appropriate treatment is simply a request for "optimal" treatment while in the custody of the state.") (emphasis added); *Del A. v. Roemer*, 777 F. Supp. 1297, 1318, 19 (E.D. La. 1991) ("Upon placement in foster care, . . . the foster parent is deemed a 'state instrument' only if the State places the child in a setting it knows or should have known was unsafe"; "there is no requirement that the State justify

6

conditions of less than absolute safety"; "children in State custody also have no right to be placed in the least restrictive foster care arrangement.").

Plaintiffs also impermissibly attempt to expand the right to be free from harm to include the right to be free from "emotional," "developmental," and "psychological" harm. Neither the Supreme Court nor the Fifth Circuit has extended the right to reasonably safe living conditions to encompass these alleged rights. In fact, the Fifth Circuit has effectively foreclosed such an extension. In *Griffith*, eighteen "hard-to-place" children and their adoptive parents filed suit against the Texas Department of Human Services for failures to provide information to the parents about the children prior to their adoptions and failures to provide post-adoption services to the children. 899 F.2d at 1432. The children claimed liberty interests in the "uninhibited development of their personalities" and their "interest in living in non-restrictive circumstances." *Id.* at 1438. Looking to prior substantive due process cases to determine if the asserted interest was a "fundamental right," the Fifth Circuit held "the 'personality interests' asserted by the Griffith children are beyond anything even remotely suggested in other substantive due process cases and, indeed, would require a breaktaking extension of that doctrine." *Id.* at 1439. The court held the state did not have an obligation to maximize the children's "personal psychological development." *Id. See also Hernandez,* 380 F.3d at 880-82 (recognizing right to be from harm encompassing "personal security" and "reasonably safe living conditions" which imposes duty on State to protect him from "risk of severe physical abuse"); *Shinn ex rel. Shinn v. College Station Ind. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996) (citing *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985) ("There is no constitutional right to be free from emotional distress"); *Del A. v. Roemer*, 777 F. Supp. 1297, 1319 (E.D. La. 1991) ("plaintiffs'

claims that their emotional well-being has been harmed invokes no constitutionally protected liberty interest.")).

In addition, the Second, Third, Sixth, Eighth, Tenth, and Eleventh Circuits have all recognized the right to be safe from harm only in the context of physical or sexual abuse. *See Nicini*, 212 F.3d 798 (recognizing right to safety for child who was sexually abused in placement); *Yvonne L.*, 959 F.2d at 893 (recognizing right to be "reasonably safe from harm" for child who was sexually abused in foster home); *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 476 (6th Cir. 1990), *cert. denied*, 498 U.S. 867 (1990) (recognizing "right to be free from the infliction of unnecessary harm" for children who were sexually abused in foster home); *Taylor*, 818 F.2d at 794 (recognizing right to "physical safety"); *Doe v. New York City Dep't of Social Servs.*, 649 F.2d 134, 137 (2d Cir. 1981) (recognizing right to be safe from harm for child who was sexually and physically abused in foster home). *See also Del A.*, 777 F. Supp. at 1318 ("there is no requirement that the State justify conditions of less than absolute safety.); *Vonner v. State Through Dep't of Public Welfare*, 273 So. 2d 252, 256 (La. 1973) (state agency has duty to ensure children are protected from "intentional physical abuse causing serious injury.").

Plaintiffs further allege Defendants have the "responsibility" to provide adequate training and supervision to staff. *See* Plaintiffs' Summary Judgment Brief at p. 4 (citing *Nicholson v. Scoppetta*, 344 F.3d 154, 166 (2d Cir. 2003); *Walsh v. Erie County Dep't of Job and Family Servs.*, 240 F. Supp. 2d 731, 761 (N.D. Ohio 2003); *T.M. v. Carson*, 93 F. Supp. 2d 1179, 1195-96 (D. Wyo. 2000); *Ross v. Alabama*, 15 F. Supp. 2d 1173, 1193-94 (M.D. Ala. 1998); *Danielle v. Adriazola*, 284 F. Supp. 2d 1368, 1378 (S.D. Fla. 2003); *Kline v. North Texas State Uni.*, 782 F.2d 1229, 1235 (5th Cir. 1986)). The Fifth Circuit has not addressed the issue of training and supervision in the context of foster children. To support their argument, Plaintiffs cite only to

nonbinding and unpersuasive district court cases and two circuit court cases that can easily be distinguished both factually and legally from the instant case. *Nicholson*, *Walsh*, and *Ross* all involved municipality liability, not liability of State officials in their official capacities. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, n.54 (Court held that officials of municipalities and other local governments were considered "persons" under § 1983 but limited the ruling to "local government units which are not considered part of the State for Eleventh Amendment purposes."). In addition, *Walsh* involved a Fourth Amendment violation, and *Kline* involved a college professor suing for violations of his First Amendment rights. Finally, *Ross* and *T.M.* involved claims against various social workers and supervisors in their individual capacities, and *Danielle* was a suit for damages, not broad injunctive relief. Plaintiffs simply provide absolutely no authority for the proposition that Defendants owe them a *constitutional* duty to adequately train and supervise their employees.

Because Plaintiffs have impermissibly attempted to expand the rights afforded them by the Fourteenth Amendment under Fifth Circuit and Supreme Court precedent, they are not entitled to summary judgment on their constitutional claims.

> **B.    Plaintiffs Ignore Fifth Circuit Precedent That Requires A Finding of Deliberate Indifference for Constitutional Violations of Foster Children's Rights.**

As recently as 2004, the Fifth Circuit has held that the appropriate standard by which to judge Defendants' performance of its constitutional duty to provide reasonably safe living conditions and basic necessities to foster children is the deliberate indifference standard. *See Hernandez*, 380 F.3d at 880. In *Hernandez*, a foster child died while in the legal custody of the State and the physical custody of a foster family, and the child's biological parents filed a suit against various social workers and officials of the Texas Department of Protective and

Regulatory Services. 380 F.3d. at 876. The Fifth Circuit reversed the district court's ruling against the defendants' motion for summary judgment, finding the agency employees did not exhibit deliberate indifference to the safety of the child. *Id.* at 884, 885, and 886.

The Fifth Circuit held that "To demonstrate a viable substantive due process claim, in cases involving government action, the plaintiff must show that the state acted in a manner that 'shocks the conscience.'" *Id.* at 880 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The court continued, "we have generally required plaintiffs to demonstrate that 'the defendant state official at a minimum acted with deliberate indifference toward the plaintiff.'" *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002)). *See also Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005) (deliberate indifference standard applied in suit filed by relatives of patients murdered by nurse against hospital administrators); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (suit filed by pretrial detainee denied medical treatment against police); *Walton v. Alexander*, 20 F.3d 1350, 1355 (5th Cir. 1994) (suit filed by sexually abused student against the Mississippi School for the Deaf); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (suit filed by sexually abused student against school).

The Fifth Circuit is in line with the majority of circuits on this issue; the Second, Third, Fourth, Sixth, Eighth, and Eleventh Circuits apply the deliberate indifference standard in foster care cases. *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000); *White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997); *Norfleet*, 989 F.2d at 293; *Meador*, 902 F.2d at 476; *Taylor*, 818 F.2d at 797; *Doe*, 649 F.2d at 137. Only the Seventh, Tenth, and the District of Columbia Circuits apply the professional judgment standard. *Yvonne L.*, 959 F.2d at 892-94; *K.H.*, 914 F.2d at 854; *LaShawn A.*, 762 F. Supp. at 996.

The Fifth Circuit has held that "the test of deliberate indifference [i]s a significantly high burden for plaintiffs to overcome." *Hernandez*, 380 F.3d at 882 (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez*, 380 F.3d. at 880 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *McClendon*, 305 F.3d at 326, n.8); *see also Doe*, 649 F.2d at 145 ("Defendants may be held liable under 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of plaintiff's deprivation of rights under the Constitution.").

The deliberate indifference test has multiple requirements for liability. *Farmer*, 511 U.S. at 845. First, the test is *subjective* rather than objective. *Hernandez*, 380 F.3d at 881 (citing *McClendon*, 305 F.3d at 326). "'[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer*, 511 U.S. at 837)); *see also Farmer*, 511 U.S. at 839 (the focus of the deliberate indifference standard is "on what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)"). Furthermore, one's "failure to alleviate a significant risk that he should have perceived but did not" does not support a finding of deliberate indifference. *Farmer*, 511 U.S. at 838.

Second, the official, after becoming aware of a substantial risk of serious harm, must fail "to take reasonable measures to abate it." *Id.* at 847. Reasonableness unavoidably involves considerations of fiscal restraints, limitations of statutory authority, and the effects of external

factors, such as the political atmosphere and societal views, on an agency's ability to conduct its work. Deliberate indifference is not proven when "officials who actually knew of a substantial risk to inmate health or safety . . . responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Third, the deliberate indifference test "'should be determined in light of the [defendants'] current attitudes and conduct,' their attitudes and conduct at the time suit is brought and persisting thereafter." *Id.* at 845 (internal citation omitted). In discussing the standard of deliberate indifference as applied to a suit seeking an injunction, the Court held:

> to survive summary judgment, [the Plaintiffs] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the [Plaintiffs] must demonstrate the continuance of that disregard during the remainder of the litigation and into the future.

*Id.* at 846.

Because Plaintiffs have not demonstrated the requirements of deliberate indifference as set forth by controlling Fifth Circuit and Supreme Court precedent, they are not entitled to summary judgment on their constitutional claims.

**C.    The Evidence Shows That Plaintiffs Have Failed to Establish Violations of and Deliberate Indifference Toward Their Rights to Reasonably Safe Living Conditions and Basic Necessities.**

**1.    The Named Plaintiffs Have Not Shown They Have Suffered Actual Injury.**

The Supreme Court has held, "named plaintiffs who represent a class 'must allege and *show* that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*,

426 U.S. 26, 40, n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975))) (emphasis added); *see also Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (holding same).    To demand remediation, plaintiffs must establish they have standing; "That a suit may be a class action . . . adds nothing to the question of standing . . . ." *Lewis*, 518 U.S. at 357 (citations omitted).  The requirement of showing actual injury on the part of the named plaintiffs is necessary to prevent the courts from assuming roles assigned to the executive and legislative branches of government.  *Id.* at 350 ("the distinction [between the roles of the judicial and political branches] would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.").

In *Lewis*, the Court overturned a systemwide injunction that mandated changes to the State's prison system and that had been ordered by the district court to remedy violations of the prisoners' right to meaningful access to the courts.  518 U.S. at 348-49.[4]  In reaching its ultimate holding of reversal, the Court asked two questions:  1) did the evidence prove that any named plaintiffs suffered an actual injury whose cause would be remedied by an injunction? and 2) were the actual injuries suffered by the named plaintiffs "widespread enough to justify systemwide relief?" *Id.* at 356, 359.

The Court made clear that different stages of the litigation process require different manners and degrees of evidence.  *Lewis*, 518 U.S. at 358.  During the pleading stage, general factual allegations of plaintiff injury resulting from defendant's actions will likely suffice.  *Id.* On a motion to dismiss, the court will presume that those general allegations encompass the

---

[4] The petitioners appealed the lower court's granting of the injunction on the grounds that the district court's "findings of injury were inadequate to justify the finding of *systemwide* injury and hence the granting of systemwide relief." *Id.* at 348.

specific facts that are necessary to support the claim. *Id.* "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* Lastly, at the trial stage, the facts, if in controversy, must be supported by the evidence adduced at trial. *Id.* Based on the evidence set forth by the plaintiffs, the Court held that the injunction was too broad in scope in that it attempted to remedy injuries that were not actually incurred by the named plaintiffs. *Id.* at 357-58.[5] The Court further held that only two named plaintiffs suffered an actual injury which was "patently inadequate" to support systemwide relief. *Id.* at 358-59 (citations omitted).

Based on *Lewis*, the named Plaintiffs must show they have personally suffered actual injury. Plaintiffs have attempted to prove they have suffered actual injury by pointing to Defendants' alleged violations of federal funding statutes and regulations, agency policy, and generally accepted child welfare practice standards. *See generally* Plaintiffs' Summary Judgment Brief at pp. 7-38.[6] Plaintiffs further insinuate that Defendants' expert, Dr. Sue Steib of the Child Welfare League of America, conceded that these statutes, regulations, policies, and

---

[5] "The actual-injury requirement would hardly serve the purpose we have described above – of preventing courts from undertaking tasks assigned to the political branches – if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court[s] were authorized to remedy *all* inadequacies in that administration. The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis*, 518 U.S. at 357 (citing *Missouri v. Jenkins*, 515 U.S. 70, 88, 89 (1995) ("[T]he nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation." (citations and internal quotation marks omitted in original)).

[6] Plaintiffs further attempt to prove their constitutional rights have been violated by pointing to speculation; for example, Plaintiffs allege that "it is likely that the number of children actually abused and neglected while in state custody is much higher." *See* Plaintiffs' Summary Judgment Brief at p. 8. Allegations based on speculation are not proper summary judgment evidence. *de la O. v. Housing Authority of City of El Paso, Tex.*, 417 F.3d 495, 501-02 (5th Cir. 2005); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (holding as improper "conclusory allegations, improbable inferences, and unsupported speculation.").

standards govern *constitutional* violations of foster children's rights. *See id.* at p. 6. However,

Plaintiffs mischaracterize Dr. Steib's testimony; Dr. Steib never in her deposition or report

indicated that violations of federal funding statutes and regulations, MDHS policy, or CWLA

standards were tantamount to violations of the Constitution. In fact, Dr. Steib clarified that the

CWLA standards were "not necessarily" the "correct standards," and her report outlined

"standards against which an agency *can* evaluate itself." *See* Steib Depo, attached as Exhibit

"JJJ" to this response, at 34:6-14; 35:1-9. Dr. Steib further explained that a standard set forth in

the Adoption Assistance and Child Welfare Act ("AACWA") was merely a "requirement of the

[AACWA] that is not "necessarily . . . reflective of a best practice standard." *Id.* at 39:10-40:2.[7]

In addition, Marcia Lowry, counsel for Plaintiffs, has admitted that the standards set in the CFSR

are to be used as a source of determining State compliance for the purpose of obtaining grant

---

[7] The AACWA contains specific requirements for States to obtain federal funding. For example, section 671(a)(16) requires the State to develop a "case plan" for each foster child receiving foster care payments and to provide for a "case review system" with respect to each such child. Section 675 defines "case plan" to include such requirements as a plan for services designed to "facilitate . . . the permanent placement of the child" and documentation of the steps taken by the State to find a permanent family for the child including specific recruitment efforts made for the benefit of the child. 42 U.S.C. § 675(1)(B), (E). Section 675 also defines "case review system" to include such requirements as a procedure for terminating the parental rights of any child that has been in foster care for fifteen of the most recent twenty-two months. *Id.* at § 675(5)(E).

Through the Child and Family Services Review ("CFSR") program conducted by the Administration for Children and Families ("ACF"), the U.S. Department of Health and Human Services ("HHS") evaluates and monitors States' compliance with their State funding plans adopted under the AACWA. During the CFSR, a State's compliance with the AACWA is measured by looking at "seven child welfare outcomes pertaining to children's safety, permanence, and well-being and on seven systemic factors related to the State's capacity to achieve positive outcomes for children and families." Final Report – Mississippi Child and Family Services Review – May 2004, attached as Exhibit 14 to Plaintiffs' Motion for Summary Judgment, at p. 1. To quantify the outcomes and systemic factors, the CFSR uses national standards such as percentage of children who experience maltreatment while in care, who reenter custody within 12 months, and who experience no more than two placements. *See* Exhibit 14 to Plaintiffs' Motion for Summary Judgment at p. 15. By holding that the AACWA does not confer individual rights on Plaintiffs, this court has barred Plaintiffs from using deviations from the standards outlined in the AACWA and the CFSR process as proof of constitutional violations.

money, not constitutional rights, and that the federal government does not have controlling standards for such issues as caseloads and training. *See* John Kelly, *13 Lawsuits That Reformed (or Drained) Child Welfare*, YOUTH TODAY, September 2004, attached as Exhibit "KKK" to this response, at p. 30 ("Lowry, who along with a number of her adversaries is critical of the standards set in the CFSR, says that letting states take flexible grants instead of entitlements will eliminate the few federal minimum standards that already exist. . . . [T]he federal government should set more standards of practice, such as caseload limitations and training requirements.").

Plaintiffs offer no authority, other than misquotes of Defendants' expert, for the proposition that the requirements of the AACWA, which this court has previously found to be merely a federal funding statute instead of a source of federal rights, or the standards set forth by the CWLA can be used to define *constitutional* rights. *See Johnson*, 351 F. Supp. 2d at 557-59, 565 (court dismissing Plaintiffs' claims under the AACWA); *see also Frazar v. Gilbert*, 300 F.3d 530, 538 (5th Cir. 2002), *rev'd sub nom. on other grounds*, 540 U.S. 431 (2004) ("Proof of a violation of a federal statute, by itself, does not entitle a plaintiff to relief under § 1983."). Furthermore, a state agency cannot be held liable for *constitutional* violations every time it or its employees do not adhere to the agency's adopted policy. Such policies are designed to be guides for "best" practices – optimal practices – and have never been the source of constitutional rights. *See Hernandez*, 380 F.3d at 879 (Section 1983 "provides civil remedies for deprivations of rights established under the *Constitution* or *federal la*ws.") (emphasis added).

Furthermore, the undisputed record in this case demonstrates that there is no basis in fact for the *named Plaintiffs* to assert any continuing deprivation of reasonably safe conditions and basic necessities. While in custody, each named Plaintiff has been provided adequate care, consisting of food, clothing, shelter, and medical care, and safekeeping. *See, e.g.* Exhibit "T,"

Exhibit "FF," Exhibit "GG," and Exhibit "HH." In fact, Plaintiffs' own designated experts did

not find any credible evidence of a deprivation of basic necessities. One of Plaintiffs' designated

experts reviewed four of the eight named Plaintiffs' case files.[8] *See generally* Exhibit "Q".

Lewis did not conduct any interviews, not a single agency employee, foster parent, foster child,

or service provider, in assessing the named Plaintiffs' care while in custody. *See* Exhibit "O" at

52:12-55:16.[9] The Lewis Report outlines alleged failures by MDHS/DFCS to provide the named

Plaintiffs with what Lewis views as optimal care and mentions MDHS/DFCS violation of

"policy" *ad nauseam*. However, the Lewis Report does not make any allegations of inadequate

food or shelter being provided to any of the named Plaintiffs, and in her deposition, Lewis

admitted that she found no evidence that the named Plaintiffs had inadequate food or shelter.

*See* Exhibit "O" at 62:9-63:18, 63:25-64:7.

While the Lewis Report references that the case file reflects that MDHS/DFCS either

noted or was informed that one named Plaintiff, John A., needed clothing, she admitted in her

deposition that her conclusion that John A. was not provided adequate clothing was based on the

fact that the record did not reflect that he was provided clothing. *See* Exhibit "O" at 57:23-58:2

and 64:14-65:11 (Lewis admitted that lack of documentation does not mean that services were

not provided); Exhibit "Q" at p. 78, 82 and 83. Lewis furthermore acknowledged that there was

---

[8] Not one of Plaintiffs' designated experts offered an opinion or evidence relative to one half of
the named Plaintiffs, being Mary W., Tom W., Matthew W., and Dana W.

[9] In fact, with the exception of Dr. Hiatt, none of Plaintiffs' designated experts conducted any
interviews of agency employees, foster parents, foster children, or service providers. *See* Exhibit
"CC" at 26:21-25; Exhibit "P" at 68:9-19; Exhibit "R" at 60:1-12. Dr. Hiatt admitted to only
interviewing John A. and the social worker, who was not John A's direct care worker,
transporting him to his interview with Dr. Hiatt. *See* Exhibit "S" at 57:12-60:1. Furthermore,
with the exception of Dr. Hiatt, none of Plaintiffs' designated experts are psychiatrists or other
mental health professionals, and Dr. Hiatt did not offer an opinion of the mental health status of
any of the named Plaintiffs except John A. *See* Hiatt Depo, attached as Exhibit "MMM" to this
response at 97:15-18.

no evidence that John A. ever went without clothing. *See* Exhibit "O" at 65:21-67:6; *see also* Exhibit "S" at 88:1-6 (In a face to face evaluation of John A., Plaintiffs' designated expert admitted that he was adequately clothed, well-fed, and well-nourished).

The evidence shows that John A. was provided with clothing on numerous occasions.[10] *See, e.g.* Exhibit "LL". Also, the supervisor of the social worker assigned to John A.'s case, attests to the fact that he has never been without clothing while in State custody. Exhibit "T"; Exhibit "U" at 64:8-13; *see also* Exhibit "AA" (Regional Director over Forrest County DHS attests to the fact that foster children in Region VI-N have been provided sufficient clothing).

Furthermore, while she did not review the complete medical providers records for the named Plaintiffs, Lewis indicates in her report and deposition that there is no documentation of certain medical services being provided for the named Plaintiffs within policy timeframes.[11] *See, e.g.* Exhibit "Q" at p. 64, 65; Exhibit "O" at 48:3-49:24. The evidence shows these children did receive adequate medical care, including doctor visits, immunizations, dental visits, psychiatric services, counseling, and vision care.[12] *See, generally* Exhibits "A", "B", "C", "D", "E", "F",

---

[10] In addition, foster board payments are paid to placement providers to cover, in addition to other expenses, the expense of clothing. *See* discussion of foster board payments, Defendants' Memorandum of Authorities in Support of Their Motion for Summary Judgment, pp. 26-27.

[11] Lewis reports that the named Plaintiffs are to have a medical examination within seven days of entering custody pursuant to MDHS policy. *See* Exhibit "Q" pp. 12-13. This policy has been recently changed to require a medical examination within thirty days of entering custody. *See* Exhibit "V". The policy change was driven by several issues including the lack of medical doctors accepting Medicaid. *See* Exhibit "II" at 155:16-157:3.

[12] In compiling the complete history of the named Plaintiffs for the court, Defendants have attempted to obtain complete medical, educational, and other records of services provided for each named Plaintiff. While in many instances these records were not found in named Plaintiffs' case file, the names of the service providers and the dates of service were found in the case files that were provided throughout discovery to Plaintiffs. Despite Plaintiffs having the knowledge and right to acquire these records, Plaintiffs' designated experts admit to not reviewing the service provider records. *See* Exhibit "Q" at pp. 19-20 and 59, n.c.; Exhibit "O" at 48:3-49:24; Exhibit "P" at 63:3-64:9; Exhibit "R" at 59:22-25; Exhibit "S" at 19:6-8, 20:25-21:3, 59:1-7.

"G", and "H". The Regional Directors, who are directly responsible for supervising the social workers' supervisors for each of the seven regions in the State, all attest that based on their personal knowledge of the daily practices of the direct care workers, Plaintiffs have received adequate services, including but not limited to adequate medical services. *See* Exhibit "X", Exhibit "W", Exhibit "M", Exhibit "Y", Exhibit "Z", Exhibit "AA", Exhibit "BB", and Exhibit "N". The total amount of Medicaid expenses paid for each named Plaintiff during his or her length of stay in State custody further illustrates the number and extent of services each child has received. *See* Exhibit "MM" (reflecting the following amounts paid by the State: $433,208.30 for John A., $18,565.32 for Cody B., $108,953.98 for Jamison J., $6,169.71 for Dana W., $26,452.13 for Matthew W., $19,268.41 for Mary W., $14,874.85 for Tom W., and $6,548.37 for Olivia Y.).[13]

In addition, in each circumstance of *any* alleged abuse or neglect from a placement provider, MDHS/DFCS made reasonable efforts to investigate the allegation and if necessary, moved the child to another placement in order to protect the child from harm. *See* Exhibits "M", "N", "W", "X", "Y", "Z", "AA", and "BB". For instance, Plaintiffs allege Olivia Y. was placed in the home of a convicted rapist which placed her at risk of sexual abuse. *See* Plaintiffs' Summary Judgment Brief at ¶ 50.[14] At the time of the initial placement, however, MDHS/DFCS was not informed the rapist was living in the home. *See* Exhibit "Q" at 55. When it was discovered that the rapist was residing in the home, Defendants did remove Olivia from this

---

[13] In addition to Medicaid, Plaintiffs are provided medical services through other funding sources when Medicaid does not cover the services. *See, e.g.* Exhibit "LL".

[14] This reference to Olivia Y. is the only instance in eighty-three pages of motion and supporting memorandum of authorities in which Plaintiffs make an allegation that any named Plaintiff has suffered actual injury to their rights to adequate food, clothing, shelter, and medical care and reasonably safe living conditions. Plaintiffs cannot carry their burden under *Lewis* by this barebones allegation.

home. *Id.* Plaintiffs may allege the social workers involved with the initial decision to place her in that particular home were negligent in not conducting a home study prior to the placement but such actions do not rise to the level of shocking the conscience. Further, Defendants' actions in removing Olivia as soon as possible evidence they were not deliberately indifferent to her rights.

In an attempt to bypass the actual injury to the named Plaintiffs, Plaintiffs focus the majority of their summary judgment evidence on two reports by Peg Hess and Cathy Crabtree. Hess and Crabtree reported on alleged systemic failures of Defendants to protect the constitutional rights of Plaintiffs as a class and on MDHS/DFCS' management practices, respectively. *See* Exhibit "DD" and Exhibit "EE". Like the Lewis Report, the Hess Report and Crabtree Report focus on standards of care that go far beyond rights protected by the Constitution. *See generally* Exhibits "DD" and "EE". Furthermore, while Hess and Crabtree make the conclusion that Defendants are not caring for the basic needs of the foster children of Mississippi, they admit their conclusions are based on incomplete case documentation. *See* Exhibit "DD" at 54-55, 68-84; Exhibit "EE" pp. 2, 30, 66-72. The undisputed evidence shows that Defendants and the State of Mississippi have expended enormous amounts of money on all foster children in State custody addressing the needs of those children. *See* Exhibit "K" at 29:2-11; Exhibit "JJ".

Defendants, on the other hand, hired the Child Welfare League of America ("CWLA") to conduct an agency wide review of MDHS/DFCS operations, which included interviews with social workers and supervisors, and to provide a report on problems identified and recommendations that may be incorporated into a strategic plan.[15] *See* Exhibit "NN" and Exhibit

---

[15] MDHS/DFCS is currently in the process of developing a strategic plan as part of the current administration's strategy for being better stewards of taxpayers' money and improving the lives of the foster children in its custody. *See* discussion of Draft Plan, Defendants' Memorandum of

"OO" at 43:18-22.    The CWLA Report found that MDHS/DFCS "suffers from a lack of sufficient resources," including staff, training, and resources. *See* Exhibit "NN" at pp. i-ii.    The chief contributor to the CWLA Report, Sue Steib, Ph.D., testified that the agency is providing for foster children's basic needs and that she did not find a lack of sufficient resources as an impediment to Plaintiffs receiving basic necessities and reasonably safe living conditions. *See* Exhibit "OO" at 185:9-186:1.    The CWLA Report also outlined positive actions that MDHS/DFCS is taking, some of which are discussed *infra* and in Defendants' Motion for Summary Judgment and accompanying exhibits and memorandum of authorities. *See generally* Exhibit "NN" at pp. ii-iii.    Furthermore, Dr. Steib did not find any evidence of deliberate indifference on the part of Defendants and testified that the actions of Defendants were reasonable. *See* Exhibit "OO" at 196:4-197:1.

### 2.    Plaintiffs have ignored the reasonable measures prong of the deliberate indifference standard.

Plaintiffs' Motion for Summary Judgment loses focus of the legal standard by which Defendants must be judged for alleged constitutional violations and for the granting of a permanent injunction.    Under the deliberate indifference standard, Defendants are not liable for violations of Plaintiffs' substantive due process rights if they took "reasonable measures to abate" the violations.[16]    *Farmer*, 511 U.S. at 947.    Plaintiffs either wholly ignore the efforts by

---

Authorities in Support of Their Motion for Summary Judgment, pp. 30-35.

[16] Even if Defendants' conduct is to be judged under the professional judgment standard, Plaintiffs still fail to meet their burden of proof. Under the professional judgment standard, "the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). In *Youngberg*, the Court held "[i]n determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Id.* at 320 (quoting *Poe v. Ullman*, 367 U.S. 497, 542

Defendants to remedy the problems at MDHS/DFCS or cast the measures aside as proof that there are problems without acknowledging the measures taken by Defendants prove they were not deliberately indifferent. This court must focus on what Defendants have done and are doing to identify potential problems that put children at risk of having their constitutional rights violated and what Defendants have done and are doing to eliminate those risks. The evidence shows that not only have Defendants publicly identified issues and concerns at MDHS/DFCS but also Defendants have taken substantial measures to remedy them.

For instance, Plaintiffs acknowledge that a total of 205 DFCS positions have been abolished over the past four years. *See* Plaintiffs' Summary Judgment Brief at p. 18. Plaintiffs further acknowledge that Defendants have informed the legislature, the sole body in Mississippi state government that controls the budget and number of employees of Mississippi agencies, of the need for additional positions and funding for those positions.[17]  *Id.* at p. 20 (Defendant Taylor

---

(1961) (Harlan, J., dissenting)). In making this balancing inquiry, the Court held "the liberty interest of the individual [must be weighed] against the legitimate interests of the State, including the fiscal and administrative burdens additional procedures would entail." *Id.* at 321. The measures taken by Defendants as outlined *infra* and in Defendants' Motion for Summary Judgment, along with its accompanying exhibits and memorandum of authorities, show Defendants acted responsibly in light of the fiscal and administrative burdens placed on them.

[17] Under Mississippi law, Defendants do not have the statutory authority to hire employees without the legislature first allocating a position, referred to as a PIN, and second funding that PIN. *See* Miss. Code Ann. § 43-1-4(d) (MDHS has power and duty "[t]o *employ personnel . . . appropriated to the department* to carry out the duties and responsibilities assigned to the department by law.") (emphasis added). The legislature also has the power to abolish PINS. *See* Exhibit "DDD" (the legislature abolished 59 PINS in FY 2005); Exhibit "TT" at 78:2-19. Furthermore, the legislature sets MDHS and DFCS budgets; under Mississippi law, Defendants only have the power to request funding from the legislature through its budgeting process. Miss. Code Ann. §§ 43-1-2(4)(c) (Executive Director is authorized "[t]o apply for, receive and expend any federal or state funds . . . ."), 43-1-4(d) (MDHS has the power and duty "[t]o . . . *expend funds appropriated to the department* to carry out the duties and responsibilities assigned to the department by law") (emphasis added),  and 43-27-109 (MDHS "may employ a sufficient number of new social workers, child protection specialists, youth counselors and clerical staff to reduce the case load sizes for social workers and youth counselors of the department and to reduce the work load on clerical staff, *if funds are appropriated to the department for that*

reported to the Joint Legislative Committee on Performance Evaluation and Expenditure Review as early as 1999 that MDHS/DFCS was underfunded and understaffed) and p. 23 (Defendant Taylor sought an additional 2.4 million dollars for DFCS in the MDHS budget request for 2007).

Yet, Plaintiffs fail to acknowledge the numerous other times that Defendants have requested funding and positions for DFCS. Under the current administration, MDHS has submitted budget requests to the State legislature for SFY 2006 and SFY 2007; these budget requests were submitted to the legislature in August 2004 and August 2005, respectively. *See* Exhibit "EEE" and Exhibit "UU". In both of these budget requests, Defendants have taken reasonable measures to remedy staffing shortages by including, within statutory authority, a request for more employees and salaries to compensate those employees. *See, e.g.,* Exhibit "EEE" at DHS 115595 and 115631 (requesting an additional $1,600,000 to fund 49 vacant positions); Exhibit "UU" at DHS 115666 and 115703 (requesting an additional $2,443,806, in part, to fund 59 PINS that were abolished in FY 2005 and to fund 38 vacant positions); Exhibit "FFF" at p. 6; Exhibit "II" at 93:5-95:23; Exhibit "TT" at 71:2-25; Exhibit "OO" at 132:22-24.

Despite testimony by Defendant Taylor before the Joint Legislative Budget Committee in the fall of 2004 of the importance of the requested positions, the legislature did not honor MDHS' request to fund the 49 vacant positions for FY 2006. *See* Exhibit "K" at 3:16-23, 9:3-10, 11:1-2, 12:22-13:24, 20:3-21:22; Exhibit "M" at DHS 053211; Exhibit "FFF" at p. 6 (acknowledging that "Even these relatively modest requests for additional funds for payment of Salaries were not fulfilled."). However, Defendants were successful in getting the PINS that were abolished in FY 2005 reestablished during FY 2006, and, in April 2006, the legislature

---

*purpose*.") (emphasis added); Exhibit "TT" at 26:3-25, 27:4-8.

passed its appropriation bill giving funding for the 59 PINS that were reestablished in FY 2006, for the 38 vacant positions requested in MDHS' FY 2007 budget request, and for an 12 additional positions. *See* Exhibit "GGG" at DHS 132896; Exhibit "YY" at 105:16-108:9.[18]

In addition to these measures and the many other measures undertaken by Defendants outlined in Defendants' Motion for Summary Judgment and accompanying exhibits and memorandum of authorities[19], Defendants are actively participating in a new reform initiative ordered by the Supreme Court of Mississippi. On April 27, 2006, the court established a Commission on Children's Justice. *See* Order, attached as Exhibit "LLL" to this response. The Commission has been established

> to develop a statewide comprehensive approach to improving the child welfare system; to coordinate the three branches of government in assessing the impact of government actions on children who are abused or neglected; and to recommend changes to improve children's safety, strengthen and support families and restore public trust and confidence in the child welfare system.

*Id.* at p. 1. The members of the Commission include representatives of Mississippi's youth court system, the legislature, the Attorney General's Office, the Administrative Office of Courts, CASA, and MDHS (including Defendant Rickie Felder) as well as two professors of social work and a prosecutor. *Id.* at p. 2. Among the Commission's duties is submitting recommendations for changes to the State's child welfare program to the Mississippi Supreme Court, the Governor, and the legislature by November 10, 2006. *Id.* at p. 3. This Commission's creation is yet

---

[18] Plaintiffs are inaccurate in their assertion that Defendants have not asked the legislature for salary raises or career advancement opportunities. *See* Plaintiffs' Summary Judgment Brief at p. 37. In its FY 2007 Budget Request to the State legislature, MDHS requested an additional $3,863,888 in part to fund a career ladder for child protection workers; the legislature approved the funding in April 2006. *See* Exhibit "UU" at DHS 115777; Exhibit "GGG" at 132895; Exhibit "II" at 185:12-186:6. In addition, the legislature gave MDHS employees a pay raise effective July 1, 2006. *See* Exhibit "GGG" at DHS 132902.

[19] *See* Defendants' Memorandum of Authorities in Support of Their Motion for Summary Judgment at pp. 29-36.

another example of the positive steps the State is taking to address its child welfare system and proof that this court's oversight is not needed to remedy any problems.

Given all the efforts by Defendants outlined above and in Defendants' Motion for Summary Judgment and accompanying exhibits and memorandum of authorities clearly Plaintiffs have not met their burden of showing deliberate indifference. The continuing efforts by Defendants to identify challenges and to develop strategies to improve the services and outcomes for children in DFCS custody conclusively demonstrate that Defendants have not exhibited deliberate indifference to Plaintiffs' substantive due process rights. Because Plaintiffs cannot demonstrate that Defendants have been deliberately indifferent to Plaintiffs' rights to adequate food, clothing, shelter, and medical care and reasonable safety, summary judgment should be entered in favor of Defendants.

## IV.    Conclusion

There is no genuine issue as to any material fact related to Plaintiffs' rights to adequate food, clothing, shelter, and medical care and reasonable safety. Plaintiffs have failed to prove that Defendants have not provided constitutionally adequate care and safekeeping and failed to demonstrate that Defendants acted with deliberate indifference. Therefore, Plaintiffs are not entitled to judgment as a matter of law. Moreover, Defendants are entitled to judgment as a matter of law as shown in Defendants' Motion for Summary Judgment, along with its accompanying exhibits and memorandum of authorities, previously filed with this court. Therefore, Defendants ask this court to deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of
Mississippi; DONALD TAYLOR, as Executive Director
of the Department of Human Services; and
RICKIE FELDER as Director of the Division of
Family and Children's Services**

BY:  _____/s/ Dewitt L. ("Rusty") Fortenberry, Jr._____

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the
Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS 39215

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York  10001

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS  39205

I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Susan Lambiase, Esq.
Shirim Nothenberg
Tara Crean, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York  10001

Eric S. Manne, Esq.
John Piskora, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

**SO CERTIFIED**, this the **18th** day of **May, 2006**.

_/s/ Dewitt L. ("Rusty") Fortenberry, Jr._

27