**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

JAMES D. JOHNSON, as next friend to                                          PLAINTIFFS
Olivia Y., et al.

vs.                                                                CIVIL ACTION NO. 3:04cv251LN

HALEY BARBOUR, as Governor of the                                        DEFENDANTS
State of Mississippi, et al.

---

**DEFENDANTS' REPLY MEMORANDUM OF AUTHORITIES IN FURTHER**
**SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

COME NOW, Haley Barbour, as Governor of the State of Mississippi, Donald Taylor, as Executive Director of the Mississippi Department of Human Services ("MDHS"), and Rickie Felder, as Director of the Division of Family and Children's Services ("DFCS") ("Defendants"), by their attorneys of record, and submit this Reply Memorandum of Authorities in Further Support of Defendants' Motion for Summary Judgment.

**I.      Introduction**

Defendants are entitled to summary judgment on Plaintiffs' substantive due process claims because Plaintiffs have not satisfied their burden to show that a genuine issue of material facts exists for trial.  In their Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Response"), Plaintiffs describe alleged inadequacies in Mississippi's child welfare system and cite several isolated incidents of injury to the named Plaintiffs.  Plaintiffs also attempt to expand their rights under the Constitution and have not met their burden of showing that Defendants acted with deliberate indifference, the standard required by Fifth Circuit precedent, or outside professional judgment, the standard proposed by Plaintiffs.  In

1

addition, Plaintiffs have not shown evidence that the named Plaintiffs have sustained actual injury justifying liability or an injunction. For these reasons, Defendants are entitled to summary judgment.

## II. Defendants Are Entitled to Summary Judgment on Plaintiffs' Substantive Due Process Claim.

### A. The Named Plaintiffs Must Establish Violations of Their Substantive Due Process Rights.

Plaintiffs erroneously contend that summary judgment is inappropriate for Defendants because Defendants failed to show an absence of evidence in support of Plaintiffs' class-wide allegations. *See* Plaintiffs' Opposition at p. 2. Defendants are entitled to summary judgment because Plaintiffs have failed to meet their burden of proving violations of the named Plaintiffs' rights. *Oliver v. Forrest County Gen. Hosp.*, 785 F. Supp. 590, 593 (S.D. Miss. 1991) (holding summary judgment is appropriate if the non-movant fails to demonstrate an essential element of its claim or defense). Plaintiffs cite *Huff v. N.D. Cass Co. of Alabama*, 485 F.2d 710 (5th Cir. 1973), *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421 (8th Cir. 1970), and *Sosna v. Iowa*, 419 U.S. 393 (1975) for the proposition that the named Plaintiffs are not required to show actual injury in order to be entitled to relief. This proposition is clearly contrary to precedent set by the United States Supreme Court and the Fifth Circuit. The Supreme Court has held, "named plaintiffs who represent a class 'must allege and *show* that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975))) (emphasis added); *see also Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (holding same). To demand remediation, plaintiffs must establish they

have standing; "That a suit may be a class action . . . adds nothing to the question of standing . . . ." *Lewis*, 518 U.S. at 357 (citations omitted).

Furthermore, the cases cited by Plaintiffs can be distinguished from the case at bar on factual and legal grounds.  Both *Huff* and *Parham* involved a racial discrimination claim under Title VII of the Civil Rights Act of 1964 which involves different evidentiary standards than the instant case; in racial discrimination cases, the court is permitted to inquire into statistical data regarding the company's actions in regard to all applicants to determine if the named plaintiff has satisfied his burden of proof.  *See Parham*, 433 F.2d at 425 ("Discrimination, or conversely fairness, in general hiring practices often indicates whether an employer has discriminated against a particular applicant for employment.  Furthermore, a single charge of employment discrimination under Title VII found by the EEOC to rest upon reasonable grounds may serve to launch a fullscale inquiry into the alleged unlawful motivation in employment practices.") (citing *Jenkins v. United Gas Corp.*, 400 F.2d 28, 33 (5th Cir. 1968)); *id.* at 426 ("In cases concerning racial discrimination, 'statistics often tell much and Courts listen.'") (citations omitted).   The need for such a broad evidentiary standard is found in the nature of Title VII itself.  *See Parham*, 433 F.2d at 428 ("The very nature of a Title VII violation rests upon discrimination against a class characteristic, i.e., race, religion, sex, or national origin."); *Hutchings v. United States Industries, Inc.*, 428 F.2d 303, 311 (5th Cir. 1970) ("Once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the (1964 Civil Rights) Act, not merely to afford private relief to the employee."); *Jenkins*, 400 F.2d at 33 ("Whether in name or not, the [Title VII] suit is perforce a sort of class action for fellow employees similarly situated.").  The impetus for such a broad evidentiary rule

is not found in the instant case – the use of class-wide statistics does not add anything to the inquiry into whether Defendants are violating the *named Plaintiffs'* rights.

In addition, *Huff* involved a pre-certification dismissal based on the named plaintiff's inability to prevail on the merits of his case. 485 F.2d at 711. The court vacated the district court's dismissal and remanded the case for the district court to determine if the named plaintiff could maintain a class action notwithstanding the fact that he could not prevail on his individual case. *Id.* at 715. The court provided guidance to the district court in holding that "[m]aintainability may be determined on the basis of pleadings . . . ." *Id.* at 713. *Huff* is not dispositive of the issue of the proof required of a named plaintiff *after a class is certified*. *See Lewis*, 518 U.S. at 358, n.6 ("The standing determination is quite separate from certification of the class."). As the Court held in *Lewis*, different stages of the litigation process require different manners and degrees of evidence. *Id.* at 358. During the pleading stage, general factual allegations of plaintiff injury resulting from defendant's actions will likely suffice. *Id.* "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts [of actual injury on the part of the named plaintiff], which for purposes of the summary judgment motion will be taken to be true." *Id.*

Finally, Plaintiffs misconstrue the Court's holding in *Sosna*. In *Sosna*, the named plaintiff was barred from obtaining a divorce from the State of Iowa because she had not satisfied the one year statutory residency requirement. 419 U.S. 397. She brought suit against the state and the state court judge that had denied her divorce, asserting the requirement violated her constitutional rights. *Id.* at 396. The lower court upheld the statute. *Id.* On appeal, the plaintiff sought certification of her case as a class action on behalf of all other residents who

were seeking a divorce but were barred from obtaining one due to the residency requirement. *Id.* at 397. At the time of the lower court's decision, the plaintiff had not met the one year requirement but by the time of the appeal, she had, and the statute no longer barred her obtaining a divorce. *Id.* at 398. The Court held that the mootness of the named plaintiff's case did not require dismissal of the class action because the issues presented by the case were "capable of repetition, yet evading review." *Id.* at 399-00. The Court further held that although the named plaintiff might not be subject to the statute's restrictions again, the "state officials will undoubtedly continue to enforce the challenged statue and yet, because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion." *Id.* at 400. The Court, however, limited its holding to those cases in which the passage of time is a controlling factor. *Id.* at 401-02 ("In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation."). This holding does not apply to the instant case and thus, under *Lewis*, the named Plaintiffs must show actual injury in order to recover for the class.

Because the named Plaintiffs cannot show actual injury regarding their substantive due process rights as shown below, Defendants are entitled to summary judgment.

**B.    Plaintiffs Are Not Constitutionally Entitled to Optimal Care And Plaintiffs Improperly Seek to Expand the Scope of Rights Protected by the Fourteenth Amendment by Linking Unprotected Interests to the Right to Be Free From Harm.**

This court has previously decided the scope of the rights protected by the Fourteenth Amendment for foster children in State custody when it ruled:

> Plaintiffs who have been involuntarily placed in the custody of the DHS have substantive due process rights under the fourteenth amendment *to be free from harm while in state custody*. Thus, Defendants have an affirmative duty to provide these Plaintiffs with *adequate* food, shelter, clothing, medical care and *reasonable* safety under *DeShaney* [v. Winnebago County Dept. of Social Servs., 489 U.S. 189 (1989)]. Defendants are not required under the Constitution to provide Plaintiffs with an *optimal* level of care and treatment.

*E.F. v. Scafidi*, No. 3:91CV591LN, at *20 (S.D. Miss. Mar. 13, 1996) (Dist. File) (quoting *Baby Neal v. Casey*, 821 F. Supp. 320, 327 (E.D. Pa. 1993)) (emphasis added), attached as Exhibit "J" to Defendants' Motion for Summary Judgment. Plaintiffs assert that they do not seek optimal care and treatment but in making such a statement, they either completely ignore or dismiss clear precedent set by the Fifth Circuit and this court that establishes that the care and treatment Plaintiffs' assert are improper requests for optimal care and treatment. Plaintiffs go much farther than asserting their rights to constitutionally adequate care when they assert a right to protection from emotional and psychological harm.[1] Plaintiffs are clearly attempting to link unprotected interests, indeed interests that this court has already addressed in its prior dismissal of several of Plaintiffs' claims, to the protected right to be free from harm while in State custody.

In asserting that the constitutionally protected right to be free from harm encompasses the right to be free from emotional harm, Plaintiffs are asking this court to improperly expand the protection afforded by the Fourteenth Amendment. This position is not supported by any decision of the Fifth Circuit or its district courts. Under Fifth Circuit precedent, Plaintiffs do not have the constitutional right to be free from emotional, developmental, or psychological harm. *Hernandez ex rel. Hernandez v. Texas Dep't of Protective Servs*., 380 F.2d 872, 880-82 (5th Cir. 2004) (recognizing right to be from harm encompassing "personal security" and "reasonably safe

---

[1] Plaintiffs further assert that the right to be free from emotional or psychological harm encompasses the duty to provide permanency services, the duty to place children in appropriate foster care settings, the duty to protect from multiple moves, and the duty to monitor and supervise. *See* Plaintiffs' Response at pp. 7-8, 10.

living conditions" which imposes duty on State to protect him from "*risk of severe physical abuse*") (emphasis added); *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990) ("the 'personality interests' asserted by the Griffith children are beyond anything even remotely suggested in other substantive due process cases and, indeed, would require a breaktaking extension of that doctrine."); *Del A. v. Roemer*, 777 F. Supp. 1297, 1319 (E.D. La. 1991) ("plaintiffs' claims that their emotional well-being has been harmed invokes no constitutionally protected liberty interest.").

Plaintiffs' attempt to distinguish *Griffith* and *Del A.* based on the fact that the Griffith children were no longer in State custody is not persuasive.[2]  In ruling that the foster children did not have a constitutionally protected right in their psychological health, the Fifth Circuit recognized that the "affirmative 'right' [asserted by the plaintiffs] is wholly different from the libertarian, autonomous rights created in previous substantive due process cases."  *Griffith*, 899 F.2d at 1439.[3]  Plaintiffs further claim that they do not seek maximization of their psychological health yet insist that the multitude of visits to mental health professionals provided by

_____

[2] Plaintiffs do not rebut that the *Hernandez* ruling is controlling.

[3] Plaintiffs further insist that this court cannot consider many of Defendants' supporting authority cited in their Motion for Summary Judgment and accompanying memorandum of authorities because the cases dealt with procedural due process and not substantive due process, because the cases dealt with damages instead of injunction relief, or because the cases dealt with the issue of qualified immunity.  *See* Plaintiffs' Response at pp. 9, 12-15.  However, Plaintiffs cite *Carey v. Piphus*, 435 U.S. 247 (1978), *K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990), *Danielle v. Adriazola*, 284 F. Supp. 2d 1368 (S.D. Fla. 2003) for the proposition that foster children have a right to protection from psychological harm.  *See* Plaintiffs' Response at p. 4.  *Carey* involved a claim for damages based on a procedural due process violation.  435 U.S. at 248.  *K.H.* involved a claim for damages, and the issue before the court was whether the defendants were entitled to qualified immunity.  914 F.2d at 847.  Likewise, *Danielle* involved a claim for damages, and the issue before the court was whether the defendants were entitled to qualified immunity.  284 F. Supp. 2d at 1371, 72.

Plaintiffs cannot seek for this court to not consider Defendants' cited authority while, at the same time, asking this court to consider their authority with similar facts and legal issues.

Defendants to the named Plaintiffs is not enough.  *See* Plaintiffs' Response at p. 16.  Certainly, a claim that Defendants have not done enough despite clear evidence of the extent of mental health care and treatment Defendants have made available to Plaintiffs indicates that Plaintiffs are seeking more than just the constitutionally required *adequate* care and treatment.

Plaintiffs' reliance on *Gates v. Cook*, 376 F.2d 323 (5th Cir. 2004) for the proposition that foster children have the right to be free from emotional or psychological harm while in State custody is misplaced.    In *Gates*, the issue was the *provision of mental health services* to prisoners, not the right to be free from emotional or psychological harm.  *Id.* at 335 (finding "[t]he mental health care afforded the inmates on Death Row is grossly inadequate.").  Despite Plaintiffs' contention otherwise, the majority of the other circuits have not expanded foster children's right to be free from harm to include the right to be free from emotional or psychological harm.  Plaintiffs cite *Clark-Murphy v. Foreback*, 439 F.2d 280 (6th Cir. 2006); *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004); *Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996); *Vaughn v. Lacey*, 49 F.3d 1344 (8th Cir. 1995); *Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990); *Langley v. Coughlin*, 888 F.2d 252 (2d Cir. 1989); and *Inmates of the Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir. 1979) as support for their proposition that foster children have a right to protection from psychological harm.  *See* Plaintiffs' Response at pp. 4, 6-7.

However, like *Gates*, all of these cases involved incarcerated plaintiffs who were asserting claims based on *deprivation of adequate mental health services*.  *Clark-Murphy*, 439 F.2d at 286 (claim involving "the deprivation of water and medical care, including psychological services"); *A.M.*, 372 F.3d at 585, n.3 (state-run juvenile detention center has duty to "provide, or arrange for, treatment of mental and physical illnesses, injuries, and disabilities"); *Riddle*, 83

F.3d at 1201 ("states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care.") (citation omitted); *Vaughn*, 49 F.3d at 1345 ("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs.") (citation omitted); *Greason*, 891 F.2d at 834 ("at the time of Greason's suicide, reasonable persons in appellants' positions would have known that providing an inmate with inadequate psychiatric care could violate the inmate's eighth amendment right not to be subjected to cruel and unusual punishment."); *Langley*, 888 F.2d at 254 ("when incarceration deprives a person of reasonably necessary medical care (including psychiatric or mental health care) which would be available to him or her if not incarcerated, the prison authorities must provide such surrogate care."); and *Inmates of the Allegheny County Jail*, 612 F.2d at 763 ("the 'deliberate indifference' standard of *Estelle v. Gamble* is applicable in evaluating the constitutional adequacy of psychological or psychiatric care provided at a jail or prison.").

Plaintiffs are blurring the distinction between the right to being provided adequate mental health services and the right to be free from psychological harm. Plaintiffs have attempted to expand their constitutionally protected right to be free from harm to include the provision of permanency services, placement in appropriate foster care settings, protection from multiple moves, and supervision of their placements based on their assertion that failures in those regards cause them psychological harm. *See* Plaintiffs' Response at pp. 7-8. The mere fact that Plaintiffs have asserted such a broad litany of duties on the part of Defendants is evidence of why this court should not expand the right to be free from harm beyond the duty to provide adequate food, shelter, clothing, medical care and reasonable safety – such a decision opens the door for any plaintiff to allege any alleged inadequacy of MDHS/DFCS causes them

psychological harm.  *See Lewis*, 518 U.S. at 358, n.6 ("If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.").  Further, Defendants do not assert that Plaintiffs do not have a right to *adequate mental health services*.  *See* Plaintiffs' Response at p. 4.  In fact, Defendants have already provided this court with extensive documentation of the mental health care Plaintiffs have been provided while in custody.  *See* Exhibits "A"-"H" and "JJ" to Defendants' Motion for Summary Judgment.

Because Plaintiffs cannot establish violations of their rights to adequate food, clothing, shelter, and medical care and reasonably safe living conditions as shown below, Defendants are entitled to summary judgment.

### C.    Plaintiffs Ignore Fifth Circuit Precedent in Asserting The Appropriate Standard Is The Professional Judgment Standard.

Plaintiffs ignore Fifth Circuit precedent in asserting that the appropriate standard by which to judge Defendants' actions is the professional judgment standard.  It cannot be disputed that, in the Fifth Circuit, the deliberate indifference standard applies to determine whether Defendants' actions amount to violations of Plaintiffs' substantive due process rights.  *See* Defendants' Memorandum of Authorities in Support of Their Motion for Summary Judgment at pp. 17-18 for citation of supporting cases.  Plaintiffs attempt to distinguish the Fifth Circuit cases holding the deliberate indifference standard is the appropriate standard by asserting those cases did not involve "the non-penal custodial context in a case seeking prospective injunctive relief such as this one."  *See* Plaintiffs' Response at p. 12.  To require this court to find a case with the exact same fact pattern and involving the exact same legal issues before it can follow Fifth Circuit precedent is clearly not warranted.

Despite Plaintiffs' contention that penal cases are inapplicable to the proper standard to be applied, the Fifth Circuit's reliance on *Farmer*, *County of Sacremento v. Lewis*, 523 U.S. 833 (1998), and *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) in *Hernandez* justifies the use of penal cases in the non-penal context of a case seeking prospective injunctive relief. Further, the Eleventh Circuit in *Taylor* explicitly approved of the use of such cases. In holding the deliberate indifference standard was applicable to a case involving a foster child suing for injuries she sustained while in State custody, the court asked and answered a question probative of the issue:

> Is a foster child involuntarily placed in a foster home in a situation so similar to that of a prisoner involuntarily placed in an institution that similar rules of law should be applied? We believe so. We recognize that the situations are not parallel. . . . Although mindful of the fact that the eighth amendment has historically been limited to criminal proceedings, such substantial similarities exist between a prisoner's situation and the situation of a minor child forced into a foster home that we are justified in holding that the situations are sufficiently analogous to support a section 1983 action.

*Taylor*, 818 F.2d at 796.

Additionally, Plaintiffs' attempt to distinguish the Fifth Circuit precedent is not credible. Plaintiffs assert the Fifth Circuit's holding in *Hernandez* is not relevant to the inquiry of the appropriate standard because the plaintiff was seeking damages and did not involve "an institutional reform action seeking injunctive relief from State Defendants in their official capacities." *See* Plaintiffs' Response at p. 12. Ironically, Plaintiffs rely on the United States Supreme Court's decision in *Youngberg* for the assertion that the professional judgment standard should apply versus the deliberate indifference standard. *See* Plaintiffs' Response at pp. 11-12. The plaintiff in *Youngberg*, a mentally challenged individual who was involuntarily committed

to a state institution, was seeking *damages* for violations of his substantive due process rights.[4] 457 U.S. at 307.  In addition, the United States Supreme Court applied the deliberate indifference standard to injunctive relief in *Farmer*.  511 U.S. at 845-46.

Plaintiffs further assert the Fifth Circuit's holding in *Walton v. Alexander*, 20 F.3d 1350 (5th Cir. 1994) is not relevant to the inquiry of the appropriate standard because the plaintiff was a "non-custodial student" and was therefore not in a "special relationship" with the State.  *See* Plaintiffs' Response at p. 11, n.12.  In *Walton*, the Fifth Circuit *did* find that a deaf child who had voluntarily enrolled in the Mississippi School for the Deaf was in a "special relationship" with the State because "[t]he residential special education program provided by the State of Mississippi had a significant custodial component wherein Walton was dependent on the School for his basic needs and lost a substantial measure of his freedom to act."  20 F.3d at 1355.  Such reasoning was the basis for the United States Supreme Court to rule that plaintiffs in the custody of the States are entitled to the provision of adequate food, shelter, clothing, medical care and reasonably safe living conditions.  *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-00 (1989) (the Court held that when taken together, *Youngberg v. Romeo*, 457 U.S. 307 (1982) and *Estelle v. Gamble*, 429 U.S. 97 (1976) "stand . . . for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")  489 U.S. at 199-00.

Because Plaintiffs cannot show Defendants were deliberately indifferent to their substantive due process rights as shown below, Defendants are entitled to summary judgment.

---

[4] The plaintiff's claims for injunctive relief were dropped prior to trial.  *Youngberg*, 457 U.S. at 311.

D.    **The Named Plaintiffs Have Failed to Offer Sufficient Evidence to Support A Finding of Violations of Their Substantive Due Process Rights.**

Plaintiffs have failed to establish violations of the substantive due process rights of the named Plaintiffs. As noted in Defendants' Motion for Summary Judgment, along with its accompanying exhibits and memorandum of authorities, Plaintiffs submit absolutely no evidence of continuing deprivations of adequate clothing, shelter, food, medical care, or reasonably safe living conditions for Olivia Y., Jamison J., Cody B., John A., Mary W., Tom W., Matthew W., and Dana W. In fact, Plaintiffs do not even address the W. children – not in their five expert reports, not in their Motion for Summary Judgment on Liability or supporting memorandum of authorities, and not in their Response in Opposition to Defendants' Motion for Summary Judgment.

1.    **Plaintiffs Offer No Credible Evidence of Defendants Failing to Ensure The Named Plaintiffs' Safety.**

Plaintiffs offer absolutely no credible evidence that Defendants placed the named Plaintiffs in harmful living conditions or failed to provide them with reasonably safe living conditions. To refute Defendants' entitlement to summary judgment, Plaintiffs attempt to create an issue of fact by pointing to five isolated incidents of alleged subjection "to unsafe and harmful placements." *See* Plaintiffs' Response at p. 19.[5] Plaintiffs *only* support for these five isolated

_____

[5] The mere existence of an alleged factual dispute does not defeat a properly supported motion for summary judgment; the dispute must involve a *genuine* issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although given the benefit of all favorable inferences which may be drawn from the evidence, the non-movant may not rest solely upon *unsupported allegations* in order to withstand a motion for summary judgment. *Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Williams v. CXF Transp., Inc.*, 925 F. Supp. 447, 449 (S.D. Miss. 1996), *aff'd*, 139 F.3d 899 (5th Cir. 1998). Thus, "[o]nce a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth *specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 (emphasis added). As the Fifth Circuit has held,

We resolve factual controversies in favor of the nonmoving party, but only when

incidents is the report of their designated case record review expert, Marva Lewis.  *See* Plaintiffs' Response at p. 19.  Lewis' *only* support for her report was a review of the MDHS/DFCS case files for Olivia Y., Cody B., John A., and Jamison J. – Lewis did not interview the social workers who have regular contact with the children, the medical providers who provide regular care for the children, the foster parents who provide daily care for the children, or the foster children themselves.  *See* Exhibit "O" to Defendants' Motion for Summary Judgment at 52:12-55:16.  Lewis admitted she did not review the medical records for the children – vital evidence when making allegations regarding a child's medical history.  *See* Exhibit "O" to Defendants' Motion for Summary Judgment at 48:3-49:24 (Lewis testifying she did not review the medical records of the named Plaintiffs).  Defendants submit these isolated incidents of alleged violations do not defeat their Motion for Summary Judgment.

**Olivia Y.:**

Plaintiffs allege "Olivia Y. was placed by DFCS in a home with a convicted rapist.  After Olivia was removed from the home, she was not provided a full sexual abuse exam, despite a doctor's finding that her vaginal area was red and swollen."  *See* Plaintiffs' Response at p. 19.  A thorough review of the factual evidence surrounding Plaintiffs' allegation reveals that Defendants did not act with deliberate indifference or without professional judgment in regard to this placement and that Lewis ignored vital evidence contained in the record that provides the complete story.

---

there is an actual controversy, that is, when both parties have submitted *evidence* of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis added).

Furthermore, liability cannot be imposed on State officials under § 1983 for "incidental injuries or infrequent acts of abuse."  *Taylor*, 818 F.2d at 797.

Olivia Y. was placed into MDHS/DFCS custody on September 10, 2003. *See* AG Olivia Y 000056-57, attached as Exhibit "NNN" to this reply. On September 11, 2003, her paternal aunt signed a form giving her permission for a background check where she indicated that she was the only adult living in the home. *See* Exhibit "NNN" at AG Olivia Y 000061. On September 17, 2003, the social worker assigned to the case was mistakenly informed that the home study and background check had been performed, and Olivia was placed in her aunt's home. *See* Exhibit "NNN" at AG Olivia Y 000079. When the home study was actually conducted on September 19, MDHS/DFCS discovered that an adult male was also living in the home. *See* Exhibit "NNN" at AG Olivia Y 000169-000171. As a result of the background check on this male, MDHS/DFCS immediately removed Olivia from the home out of an abundance of caution, despite the fact that there was no evidence she was subjected to any abuse, and placed her in an overnight foster home and then into an emergency shelter. *See* Exhibit "NNN" at AG Olivia Y 000091, AG Olivia Y 000092, and AG Olivia Y 000093.[6]

At that time, Olivia, who was three years old, was still in diapers; from the time she arrived at the shelter to the time she was examined by a doctor, not a single shelter employee expressed concerns about her being a victim of sexual abuse despite the obvious opportunities to observe her when her diapers were being changed. When she was examined on October 3, Dr. Shakir found that Olivia was premature, had dermatitis and had *diaper rash*. *See* Exhibit "NNN" at DHS Olivia Y 002929. The lack of notations on Olivia's medical chart about any suspicions

---

[6] Plaintiffs at best can allege negligence as a result of this mistake, but such actions do not establish deliberate indifference or a departure from professional judgment. In addition, MDHS/DFCS' actions in immediately removing Olivia establishes that Defendants took reasonable measures to abate any risk of harm to Olivia. While Plaintiffs are entitled to all favorable inferences that *may* be drawn from the evidence, Plaintiffs are not entitled to inferences based on unfounded conclusions of their expert that are contrary to the concrete evidence.

of sexual abuse is significant.[7]  *See also* Exhibit "NNN" at AG Olivia Y 000159-160 (letter from Dr. Shakir in response to MDHS/DFCS investigation into the allegations in which she notes only that Olivia "had some redness and chapping of skin around the buttock and labial folds").  The single unfounded allegation that she may have been sexually abused was made by the director of the shelter in a letter to MDHS/DFCS where he mistakenly linked the symptoms of Olivia's diaper rash with a story of another child who called her gown "a dirty dirty thing."[8]  *See* Exhibit "NNN" at AG Olivia Y 000101-102 (director noting that Olivia "may have been the victim of sexual assault") and Exhibit "NNN" at AG Olivia Y 000129 (assistant manager noting that the story about the gown referred to another child).

The Division of Program Integrity of MDHS has conducted an internal investigation of the placement of Olivia with her aunt.  *See* Exhibit "NNN" at AG Olivia Y 000169-171.  In addition, Judge McPhail of the Forrest County Youth Court conducted his own investigation of the events surrounding the placement during several adjudicatory and dispositional hearings.[9]  *See* Exhibit "NNN" at AG Olivia Y 000169 (indicating a meeting was conducted by Judge McPhail to discuss alleged misconduct of MDHS/DFCS employees); DHS Olivia Y 002423-24

---

[7] Under Mississippi law, any physician who has reason to suspect a child has been abused must immediately report such suspicion to MDHS.  Miss. Code Ann. § 43-21-353(1).

[8] The director also makes the statement that Olivia "reacted in terror when the doctor tried to perform a more thorough examination and it could not be completed."  *See* Exhibit "NNN" at AG Olivia Y 000101-102.  The doctor, however, made no such notations on Olivia's medical chart and did not mention the occurrence in the letter to MDHS/DFCS regarding her observations while examining Olivia.  *See* Exhibit "NNN" at DHS Olivia Y 002929 and AG Olivia Y 000159-160.  Other than this hearsay statement by the director, Plaintiffs have submitted no evidence that the examination transpired as the director stated.

[9] The extensive hearings conducted by the Youth Court is yet another example of how Plaintiffs ask this court to interfere with proceedings of Mississippi's Youth Courts, and Defendants have reasserted their abstention argument in a separate motion based in part on the discovery of these hearings.

(Forrest County Youth Court Case Summary indicating that adjudicatory hearings were continued to allow shelter representatives to be present and indicating that Dr. Shakir had been subpeoned); DHS Olivia Y 002815 (Subpoena Duces Tecum for Mickel Hodges, Integrity Division, to bring complete copy of investigation conducted concerning Olivia Y.); DHS Olivia Y 002849 (Subpoena Duces Tecum for Dr. Shakir to bring complete copy of medical record for Olivia Y.); and James Johnson Depo, attached as Exhibit "OOO" to this reply, at 43:2-49:17 (Olivia's next friend and guardian ad litem acknowledging that Judge McPhail conducted a five day hearing over the allegations contained in the shelter letter and that Judge McPhail did not find liability against MDHS/DFCS for their actions).  It is important to note that at each of these hearings, James Johnson, Olivia's next friend in this lawsuit and her Youth Court appointed guardian ad litem, was present to represent the interests of Olivia Y – a duty which entails the right to ask questions of any witness before the court.[10]  After hearing testimony from the case workers, shelter staff, Dr. Shakir, and Mr. Hodges, Judge McPhail entered an Order of Adjudication and an Order of Disposition without any reference to substantiation of the single allegation by the director of the emergency shelter and found that Olivia Y. had not been sexually abused.  *See* Exhibit "NNN" at DHS Olivia Y 002389-90 (finding Olivia Y to be a "neglected child")[11] and DHS Olivia Y 002384-002386.[12]

---

[10] James Johnson is an attorney licensed to practice in the State of Mississippi.  *See* Exhibit "OOO" at 5:1-6.

[11] Under Mississippi law, an abused child, which includes a sexually abused child, is statutorily defined differently from a neglected child:

> (l) "Neglected child" means a child:
>     (i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; provided, however, a parent who withholds medical treatment from any child who in good faith is under treatment

For these reasons, Plaintiffs have not met their burden of proving that Defendants have acted with deliberate indifference or without professional judgment to Olivia Y.'s right to reasonably safe living conditions.

**John A.:**

Plaintiffs allege "John A. remained in a placement long after he complained that the staff was leaving him bruised, and that complaint does not appear to have been investigated. Instead, John was reported to the Youth Court as 'happy.'" *See* Plaintiffs' Response at p. 19. Plaintiffs cannot defeat Defendants' Motion for Summary Judgment on an allegation that something "does not appear" to have happened. *See Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993) ("Summary judgment, to be sure, may be appropriate . . . if the nonmoving party rests

---

by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or

(ii) Who is otherwise without proper care, custody, supervision or support; or

(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether said mental condition be mentally retarded or mentally ill; or

(iv) Who, for any reason, lacks the care necessary for his health, morals or well-being.

(m) "Abused child" means a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused upon said child sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury or other maltreatment. Provided, however, that physical discipline, including spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section."

Miss. Code Ann. § 43-21-105(l)-(m).

[12] It is also important to note that Plaintiffs have submitted absolutely no evidence that Olivia has exhibited any symptoms that indicate she was a victim of sexual abuse nor have Plaintiffs' counsel or Olivia's next friend sought to have her physically or psychologically examined for possible sexual abuse.

merely upon conclusory allegations, improbable inferences, and unsupported speculation."). Furthermore, as with Olivia Y., a thorough review of the factual evidence surrounding Plaintiffs' allegation reveals that Defendants did not act with deliberate indifference or without professional judgment in regard to this placement and that Lewis again ignored vital evidence contained in the record that provides the complete story.

While residing in a residential treatment facility, John reported to his social worker that "I need to get out of this place. They keep putting bruises on me – the staff." *See* AG John A 000474, attached as Exhibit "PPP" to this reply. John informed the social worker that he was placed into a therapeutic hold and was hit in the eye. *See id.* John also admitted that he had been violent – "sometimes I be having a fit, throwing chairs and hitting staff." *See id.* The social worker also noted that she spoke with the staff of the facility about the incident and found that John had been violent and belligerent toward staff. *See id.* The social worker did not note that she observed any bruises on John. *See id.* While there is no documentation of a formal investigation into the complaint, the actions of the social worker in speaking to John and then following up with the staff do not rise to deliberate indifference or lack of professional judgment.[13]

---

[13] Even under the professional judgment standard, the social worker's actions are entitled to a presumption of validity. Plaintiffs have submitted no evidence that the social worker did not use her judgment in her investigation or in finding that the bruises sustained by John were the result of an accident and not the result of abuse.

Furthermore, John's violent behavior was noted more than one time while he was in this placement, and staff was forced on more than one occasion to use therapeutic holds, recognized methods for controlling violent patients, to calm him. *See* Exhibit "PPP" at AG John A 000326-327 (Intake form noting that at prior placement, John was placed in therapeutic hold when he threatened suicide, and he becomes aggressive on a weekly basis); AG John A 000481 (placed in therapeutic hold for not following directions); AG John A 000475 (staff was afraid John was going to hurt himself or someone else and was getting incident reports filed on a daily basis); AG John A 000491-492 (therapeutic hold used when John began punching and kicking a door and began throwing items at staff); AG John A 000584-585 (therapeutic hold used when John

For these reasons, Plaintiffs have not met their burden of proving that Defendants have acted with deliberate indifference or without professional judgment to John A.'s right to reasonably safe living conditions.

**Cody B.:**

Plaintiffs allege "MDHS persisted in leaving asthmatic Cody B. for unsupervised visits despite numerous indications that he was subjected to life-threatening cigarette smoke. As a result, he suffered respiratory distress that, on at least two occasions, necessitated emergency room treatment." *See* Plaintiffs' Response at p. 19.

A thorough review of the factual evidence surrounding Plaintiffs' allegation reveals that the Youth Court, which was fully aware of Cody's medical condition, ordered these visits with Cody's biological parents.[14] *See* AG Cody B. 000077 (noting Cody's health and safety are the paramount concern), AG Cody B. 000095 (ordering "parents shall exercise daytime visits with the minor each weekday"), AG Cody B. 000111 (ordering "visiting every Wednesday between the hours of 10:00 A.M. and 4:00 P.M."), and AG Cody B. 000250 (guardian ad litem advising that biological parents should have overnight and weekend visitation with Cody), attached as Exhibit "QQQ" to this reply. In addition, according to Plaintiffs' own designated expert, Cody was taken to the emergency room or was admitted to the hospital at least two times, on September 13, 2002 and January 2, 2003, before the first visit with his biological parents occurred on September 18, 2003. *See* Exhibit "Q" to Defendants' Motion for Summary Judgment at pp. 27, 29.

---

became aggressive with staff); and AG John A 000606 (John threw book at peer, causing peer's nose to bleed).

[14] These orders are further examples of how Plaintiffs ask this court to interfere with proceedings of Mississippi's Youth Courts, and Defendants have reasserted their abstention argument in a separate motion based in part on the discovery of these orders.

Plaintiffs further allege "Cody B. was left in a shelter for close to three weeks despite the report by his doctor that the shelter was affirmatively harmful to him." *See* Plaintiffs' Response at p. 19. During this placement, MDHS/DFCS was actively seeking a permanent home for Cody, and his placements were under the supervision of the Youth Court. *See* Exhibit "QQQ" at AG Cody B. 000168 (Youth Court ordering preplacement visit with licensed foster parents during his stay at shelter) and AG Cody B. 000179 (Cody was placed in this licensed foster home on March 26, 2004).

For these reasons, Plaintiffs have not met their burden of proving that Defendants have acted with deliberate indifference or without professional judgment to Cody B.'s right to reasonably safe living conditions.

**Jamison J.:**

Plaintiffs allege "Jamison J. was sent to live in Kansas with a father with whom he had no previous relationship and whose parental rights had been terminated. The father had a criminal history and Jamison's placement with him by MDHS was deemed by Kansas child welfare officials to be illegal." *See* Plaintiffs' Response at p. 19. The factual evidence surrounding this allegation shows, however, that this placement was also ordered by the Youth Court.

Jamison was placed in his father's home by order of the Youth Court, with approval from the Bolivar County Prosecuting Attorney and Jamison's guardian ad litem, pending approval of the Interstate Compact on the Placement of Children Request from the state of Kansas.[15] *See* AG Jamison J 004711-12, attached as Exhibit "RRR" to this reply. This placement was recommended by MDHS/DFCS out of desperation as Jamison had disrupted several placements

---

[15] This order is yet another example of how Plaintiffs ask this court to interfere with proceedings of Mississippi's Youth Courts, and Defendants have reasserted their abstention argument in a separate motion based in part on the discovery of this order.

and finding a suitable placement for him had been difficult.  *See* Exhibit "RRR" at AG Jamison J 004592-4595.  Jamison also disrupted the placement with his father, and he was returned to Mississippi.  *See* Exhibit "RRR" at AG Jamison J 004593.  At that time, Jamison was ordered by the Youth Court to be placed in a transitional house.  *See* Exhibit "RRR" at AG Jamison J 004678.

For these reasons, Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Jamison J.'s right to reasonably safe living conditions.

**Mary W.:**

Plaintiffs have submitted *no evidence* regarding Mary W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Mary W.'s right to reasonably safe living conditions.

**Tom W.:**

Plaintiffs have submitted *no evidence* regarding Tom W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Tom W.'s right to reasonably safe living conditions.

**Matthew W.:**

Plaintiffs have submitted *no evidence* regarding Matthew W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Matthew W.'s right to reasonably safe living conditions.

**Dana W.:**

Plaintiffs have submitted *no evidence* regarding Dana W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Dana W.'s right to reasonably safe living conditions.

>    2.    **The Named Plaintiffs Have Been Provided Adequate Clothing, Shelter, Food, and Medical Care.**

As shown in Defendants' Motion for Summary Judgment and accompanying exhibits and memorandum of authorities, Plaintiffs make no allegations that any of the named Plaintiffs have been provided inadequate food and shelter and only questioning the adequacy of the clothing provided for one named Plaintiffs.[16]  Plaintiffs contend that the factual evidence submitted by Defendants shows that the named Plaintiffs had "access to at least some medical care."  *See* Plaintiffs' Response at p. 16.  This characterization of the substantial evidence of medical care provided to the named Plaintiffs is wholly inaccurate.  Every named Plaintiff has been provided an annual physical, regular vision screenings, regular dental visits, immunizations, medical care for normal childhood injuries, and emergency care if needed.  *See* Exhibits "A"-"H" to Defendants' Motion for Summary Judgment.  Plaintiffs only make allegations of inadequate medical care for four out of the eight named Plaintiffs.  *See* Plaintiffs' Response at pp. 26-27.

**Olivia Y.:**

Plaintiffs assert that Defendants did not provide Olivia with adequate medical care in that she was not seen by a medical professional for three weeks after entering custody.  *See*

---

[16] In their Response, Plaintiffs state "Defendants' proffered evidence [of adequate shelter, food, or clothing being provided to the named Plaintiffs] is immaterial in light of the overwhelming evidence that Plaintiffs are being harmed by Defendants' failures to keep them safe and provide appropriate placements and adequate health care and treatment."  *See* Plaintiffs' Response at p. 30.  Because Plaintiffs do not dispute that they have been provided adequate shelter, food, and clothing, Defendants are entitled to summary judgment on those claims.

Plaintiffs' Response at p. 26.[17]  Plaintiffs do not submit any evidence that the three week "delay in treatment" caused Olivia any harm but merely assert the timing of this examination was not adequate because it violates MDHS policy to have a medical examination within seven days of entering custody.  *See* Exhibit "Q" to Defendants' Motion for Summary Judgment at pp. 12-13 (Plaintiffs' designated case record expert, Marva Lewis, reporting violations of right to adequate medical care because examinations not provided per MDHS policy).  As noted in Defendants' Motion for Summary Judgment and accompanying memorandum of authorities, this policy has recently been changed to require a medical examination within thirty days of entering custody. *See* Bulletin 7500, attached as Exhibit "V" to Defendants' Motion for Summary Judgment.  The policy change was driven by several issues including the lack of medical doctors accepting Medicaid.  *See* Felder Depo, attached as Exhibit "II" to Defendants' Motion for Summary Judgment, at 155:16-157:3.  In addition, as the summaries of the medical services provided to Olivia show, while in the shelter, she was seen four times in thirty-three days.  *See* Exhibit "A" to Defendants' Motion for Summary Judgment.[18]

For these reasons, Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Olivia Y.'s right to adequate medical care.

**John A.:**

---

[17] Plaintiffs also assert that Olivia Y. has not been provided a sexual abuse examination.  *See* Plaintiffs' Response at p. 26.  This allegation has previously been addressed by Defendants.

[18] Olivia was born prematurely and had cocaine in her bloodstream at birth.  *See* Exhibit "NNN" at DHS Olivia Y 002986.  She was regularly seen by physicians at the Hattiesburg Health Department, including Dr. Gaudet on September 9, 2003, just one day prior to being placed in MDHS/DFCS custody.  *See* Exhibit "NNN" at DHS Olivia Y 000539.  Nearly every doctor Olivia saw before being placed into custody and after being placed into custody has noted that she is small for her age and does not eat well.  *See, e.g.* Exhibit "NNN" at DHS Olivia Y 000537-542.

Plaintiffs assert that John was not provided adequate medical care because he was not placed in therapeutic placements. Yet, Plaintiffs' own designated psychiatrist admitted that John is currently in a safe and appropriate placement, which is a non-therapeutic foster home.[19] *See* Hiatt Depo, attached as Exhibit "SSS" to this reply, at 83:25-84:19; 89:11-17; 90:23-25 (testifying that John's current placement provides "enormous value" to his psychological health, that his conditions have improved since he's been in his current home, and that he should remain with his current foster family). Further, Dr. Hiatt diagnosed John as currently suffering from adjustment disorder and oppositional defiant disorder, while at the time of his entry into State custody, he was diagnosed by a psychiatrist as suffering from severe disruptive behavior disorder, bipolar disorder, attention deficit hyperactive disorder, and parent/child relational problem.[20] *See* DHS John A 007042-43, 46-48, and 55, attached as Exhibit "TTT" to this reply. Dr. Hiatt admitted that, "over the last year or so," John has not demonstrated depression, bipolar disorder, or psychosis even though he has been diagnosed with those conditions in the past. *See* Exhibit "BBB" to Defendants' Motion for Summary Judgment.

Plaintiffs assert that Defendants failed to maintain John A.'s medical history in his file and failed to inform his physicians of this history which resulted in difficulties in treatment by his physicians. *See* Plaintiffs' Response at p. 28. Plaintiffs' attempt to link the duty to maintain a child's medical history in his or her case record and to inform caretakers and medical providers of this history to the right to the provision of adequate medical services is unfounded. Such an

---

[19] Despite not being placed in a therapeutic foster home, John has been provided extensive therapeutic services, including counseling. *See* Exhibit "D" to Defendants' Motion for Summary Judgment.

[20] Certainly this evidence is proof that the State has not let John A.'s psychological condition "deteriorate" while in care. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment on Liability at p. 4.

attempt entails an analysis of the *quality* of health care provided which was foreclosed by the Supreme Court. *Estelle*, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Plaintiffs also assert that MDHS/DFCS failed to accurately record and adequately supervise psychotropic medications taken by John A. *See* Plaintiffs' Response at p. 29. Plaintiffs only allegation in this regard is that one of John's medications was listed as unknown for nearly four years. *Id.* Plaintiffs offer no evidence that John A. never received his medications and no evidence to rebut the fact that John A. was under the care of a psychiatrist during this time. *See* Exhibit "D" to Defendants' Motion for Summary Judgment.

For these reasons, Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to John A.'s right to adequate medical care.

**<u>Jamison J.:</u>**

Plaintiffs assert that Defendants have not provided adequate medical services for Jamison J. because he did not receive ongoing mental health services for short periods of time and was not provided any mental health service until March of 1993. *See* Plaintiffs' Response at p. 27. While in custody, Jamison has received over thirteen years of virtually monthly counseling sessions and has been seen by a psychiatrist a minimum of forty times. *See* Exhibit "B" to Defendants' Motion for Summary Judgment. Plaintiffs have not submitted any evidence that these short periods of time without services have caused Jamison any harm; in fact to the contrary, as Jamison's social worker attests, Jamison graduated from a public high school on

26

May 26, 2006, and he will be attending college starting this summer on a scholarship. *See* Affidavit of Annie Smith, attached as Exhibit "UUU" to this reply.

Plaintiffs also assert that MDHS/DFCS failed to accurately record and adequately supervise psychotropic medications taken by Jamison J. *See* Plaintiffs' Response at p. 29. Plaintiffs only support for this allegation is that a report was filed in 2000 that Jamison was not being provided his medication. *Id.* This allegation is based on the report of Lewis where she reports "a serious incident report was filed with the Department of Health because Jamison did not receive at least ten of his medication doses. Packets had not been sent to his school as instructed and several times the crisis center had failed to administer them." *See* Exhibit "Q" to Defendants' Motion for Summary Judgment at p. 110. Plaintiffs do not and cannot link this event to any inaction by Defendants.

For these reasons, Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Jamison J.'s right to adequate medical care.

### Cody B.:

Plaintiffs further assert that Defendants failed to notify Cody B.'s foster mother of his asthma which left her "entirely unprepared when Cody experienced a severe asthma attack that necessitated a trip to the emergency room." *See* Plaintiffs' Response at pp. 28-29 (referring to an event described by Lewis in Exhibit "Q" to Defendants' Motion for Summary Judgment at p. 32). However, a review of Cody's record shows that this same foster mother personally took him to the hospital on September 13, 2002 and January 2, 2003 for complications due to his asthma, and Plaintiffs have submitted no evidence that MDHS/DFCS had any knowledge of his

27

asthma prior to this time. *See* Exhibit "Q" to Defendants' Motion for Summary Judgment at pp. 27 and 32.

For these reasons, Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Cody B.'s right to adequate medical care.

**Mary W.:**

Plaintiffs have submitted *no evidence* regarding inadequate medical care being provided for Mary W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Mary W.'s right to adequate medical care.

**Tom W.:**

Plaintiffs have submitted *no evidence* regarding inadequate medical care being provided for Tom W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Tom W.'s right to adequate medical care.

**Matthew W.:**

Plaintiffs have submitted *no evidence* regarding inadequate medical care being provided for Matthew W.  Plaintiffs have not met their burden of proving that Defendants acted with deliberate indifference or without professional judgment to Matthew W.'s right to adequate medical care.

**Dana W.:**

Plaintiffs have submitted *no evidence* regarding inadequate medical care being provided for Dana W.  Plaintiffs have not met their burden of proving that Defendants acted with

deliberate indifference or without professional judgment to Dana W.'s right to adequate medical care.

For Plaintiffs to assert that Defendants have not adequately cared for these children despite the massive amount of services provided and the evidence showing the named Plaintiffs are currently thriving is further evidence that Plaintiffs seek optimal care, not constitutionally adequate care, for these children. Plaintiffs cannot establish a genuine issue of material fact by making unsupported allegations; their "proof" that Defendants are harming the named Plaintiffs and not providing them with adequate care is a report by their designated case record expert, who is not a medical doctor or a mental health professional and who admitted to basing her opinions on incomplete documents. *See* Exhibit "O" to Defendants' Motion for Summary Judgment at 48:3-49:24 (Lewis testifying she did not review the medical records of the named Plaintiffs).

Because Plaintiffs have not meet their burden of showing that Defendants have placed the named Plaintiffs in unreasonably safe living conditions or deprived them of the basic necessities of adequate food, clothing, shelter, and medical care, Defendants are entitled to summary judgment.

> **E.    Plaintiffs Have Come Forth with No Evidence That Defendants Are Deliberately Indifferent to Their Rights to Basic Necessities and Reasonably Safe Living Conditions.**

Plaintiffs assertion that Defendants are not entitled to summary judgment even if this court adopts the deliberate indifferent standard clearly ignores the reasonable measures prong to the deliberate indifference standard as defined by *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). *See* Plaintiffs' Response at p. 14-15. The Court in *Farmer* held that deliberate indifference is not proven when "officials who actually knew of a substantial risk to inmate health or safety . . . responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Yet,

Plaintiffs claim Defendants efforts to respond to any alleged problems with MDHS/DFCS are "insufficient" because alleged inadequacies still exist within the agency.  *See* Plaintiffs' Response at pp. 30-31.  Plaintiffs have submitted no evidence that Defendants have ignored any risks to Plaintiffs' safety.  To the contrary, the evidence in this case demonstrates precisely the opposite.  *See* Defendants' Memorandum of Authorities in Support of Their Motion for Summary Judgment at pp. 20-36 and Defendants' Memorandum of Law in Support of Their Response in Opposition to Plaintiffs' Motion for Summary Judgment on Liability at pp. 21-25.

In addition to the factual evidence proving Defendants were not deliberately indifferent as previously outlined, Defendants are currently in negotiations with a strategic planner to implement MDHS/DFCS' Draft Plan.  *See* Affidavit of Rickie Felder, attached as Exhibit "VVV" to this Reply.  Furthermore, as discussed in Felder's deposition, MDHS/DFCS has moved forward with its plans to make the Forrest County DFCS an on-site training academy for future social workers currently attending the University of Southern Mississippi.  *See* Felder Depo, attached as Exhibit "WWW" to this Reply, at 123:3-124:25; Exhibit "VVV."  Despite Plaintiffs' characterization of the substantial efforts put forth by Defendants as a "belated Draft Plan *to plan*," Defendants have offered sufficient evidence of its actions in remedying any alleged "unconstitutional conditions" to warrant summary judgment.  *See* Plaintiffs' Response at p. 31.  Should this court adopt Plaintiffs' proffered professional judgment standard, the result would be no different.

## III.    Conclusion

No genuine issue of material fact exists in this case, and Defendants are entitled to a judgment as a matter of law.  Because Plaintiffs have failed to demonstrate that Defendants have not provided constitutionally adequate care and reasonably safe living conditions and failed to

demonstrate that Defendants acted with deliberate indifference, Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of Mississippi; DONALD TAYLOR, as Executive Director of the Department of Human Services; and RICKIE FELDER as Director of the Division of Family and Children's Services**

BY: _____ /s/ Dewitt L. ("Rusty") Fortenberry, Jr. _____

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
Suite 450, One Jackson Place
Post Office Box 1789
Jackson, MS  39215

31

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39215

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York  10001

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS  39205

I also certify that I have this day served a copy of the foregoing on the following non-
ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Susan Lambiase, Esq.
Shirim Nothenberg
Tara Crean, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York  10001

Eric S. Manne, Esq.
John Piskora, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

**SO CERTIFIED**, this the **30th** day of **May**, **2006**.

_      /s/ Dewitt L. ("Rusty") Fortenberry, Jr.      _