Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., ET AL                     PLAINTIFFS

VERSUS           CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the
State of Mississippi, et al.         DEFENDANTS

VIDEOTAPED DEPOSITION OF CHARLES RICKIE FELDER

        Taken at the law offices of
        Bradley, Arant, Rose & White, LLP,
        188 East Capital Street
        Jackson, Mississippi, on
        Thursday, April 5, 2006,
        beginning at 8:37 a.m.

REPORTED BY:

    ELISA M. MEDDERS, BCR, CSR #1670
    State-Wide Reporters
    4400 Old Canton Road
    Suite 160(39211)
    Post Office Box 14113
    Jackson, Mississippi 39236
    Telephone: (601) 366-9676
    Fax: (601) 366-9756


EXHIBIT WWW

Page 122

1   money. You have to maximize that money.
2   Sometimes you have to choose between the two.
3   You could be forced with that situation.
4       Q. How so?
5       A. Again, they give you "X" amount of
6   money, and if your retention is improving with
7   staff and more and more are being able to take
8   advantage of the career ladder, that is driving
9   up your salary cost. And more funds may need to
10  be used in career ladder which could increase
11  the number of positions that are unfunded,
12  vacant positions. You asked me what could be.
13  These are just, you know, could be's.
14      Q. And as division director, as you sit
15  here today, though, you'd like to see both the
16  career ladder and additional -- and vacant and
17  additional positions funded, correct?
18      A. Yes. I'd like to see the career
19  ladder funded. Yes, I'd like to see vacancies
20  funded. And then based on the assessment from
21  Sue Steib and the weighted caseload model,
22  whatever we determine additional resources we
23  need, yes, I'd like to have it funded.
24      Q. Turning back to your draft plan at
25  Exhibit 144, on page 9, under Section 2,

Page 123

1   "Staffing & Staff Development."
2       A. Uh-huh. (Affirmative.)
3       Q. Do you see your first sentence there,
4   "Having a competent, well supported work force
5   with a reasonable workload is an absolute
6   prerequisite for the effective delivery of
7   services to troubled children and families"?
8       A. Yes, I do.
9       Q. Now, correct me if I'm wrong, but I
10  read that to mean that if you don't have a
11  competent, well supported work force with a
12  reasonable workload, there is a risk that needed
13  services will not be delivered to troubled
14  children and families; is that correct?
15      A. Yes. That's the message we're
16  communicating to the legislature.
17      Q. As part of your assessment, did you
18  determine whether there were any particular DFCS
19  county offices that were performing poorly?
20      A. I determined some offices that needed
21  attention.
22      Q. How did you determine that?
23      A. Based on the reports we discussed
24  earlier, the results that they were getting
25  based on objectives.

Page 124

1       Q. Have you determined whether there is
2   any correlation between available staffing
3   resources in any given county DFCS office and
4   its ability to comply with policy and other
5   requirements?
6       A. The first answer would be yes, there
7   is -- in some counties, there could be some
8   correlation for that, yes.
9       Q. Have you considered -- strike that.
10      Are you considering any specific
11  targeted remedial actions in any particular
12  county DFCS office?
13      A. Yes.
14      Q. Could you tell me in what county what
15  particular remedial actions you're considering?
16      A. Forrest County, we're currently
17  negotiating a contract with the University of
18  Southern Mississippi to -- Southern is located
19  in Forrest County -- to create a learning lab at
20  our office, and the university will turn it into
21  a model -- will manage, assess, and develop a
22  model, a child welfare model, in Mississippi.
23  And our ultimate goal is that once that model is
24  developed, that will be replicated throughout
25  the state.

Page 125

1       Another area we are researching and
2   discussions with -- we had to determine if it
3   was a sole source or not, which that creates a
4   more lengthy process -- but a temp service for
5   social workers. They would be responsible for
6   recruiting, verifying background, possibly
7   providing the training to expedite the process,
8   to fill existing positions, and/or if somebody
9   puts in a notice to fill a position while we're
10  recruiting for a new position.
11      We are in discussions -- no decision
12  has been made -- of using this same temp service
13  to help in some areas where we have fallen
14  behind, to do a catchup. That's just a couple
15  things off the top of my head. We're running --
16  we have run -- tried national websites, haven't
17  had much progress. We're constantly running ads
18  in the paper. State personnel board is always
19  posting positions for Family & Children's
20  Services. The Family & Children's Services
21  and/or the human resource departments attend
22  fairs to try to recruit. We have new
23  legislation this year that we think has just
24  passed, the governor had a press conference on
25  it --