Yutaska Simpson - 10/26/04

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y, By and
Through Her Next Friend,
James D. Johnson, et al.                    PLAINTIFFS

VS.                        CIVIL ACTION NO. 3:04CV25LN

HALEY BARBOUR, As Governor
Of the State of Mississippi;
DONALD TAYLOR, as Executive
Director of the Department of
Human Services; and BILLY MANGOLD,
As Director of the Division of
Children's Services                          DEFENDANTS

DEPOSITION OF YUTASKA SIMPSON

Taken at the instance of the Defendant at the
offices of Bradley Arant, LLP, One Jackson Place,
188 E. Capitol Street, Suite 450, Jackson,
Mississippi, on Thursday, October 26, 2004,
beginning at approximately 1:04 p.m.

APPEARANCES:
    ERIC E. THOMPSON, ESQ.
    SHIRIM NOTHENBERG, ESQ.
    Children's Rights, Inc.
    404 Park Avenue South
    New York, NY 10016
        COUNSEL FOR PLAINTIFFS

    BETTY A. MALLETT, ESQ.
    McGlinchey Stafford, PLLC
    Skytel Centre South, Suite 1100
    200 South Lamar Street
    Jackson, Mississippi 39201

        COUNSEL FOR DEFENDANTS


EXHIBIT "B"

Page 2

Also Present: Earl Scales, Office of Attorney General

Reported By:   Julie Brown, CSR #1587
              Brooks Court Reporting
              Post Office Box 2632
              Jackson, Mississippi 39207
              (601) 362-1995

Page 4

EXHIBITS

| | PAGE |
|---|---|
| Exhibit 14 - Order, ▮▮▮ County Youth Court | 20 |
| Exhibit 15 - Court Report, ▮▮▮ County Youth Court | 24 |
| Exhibit 16 - Foster Care Review | 43 |
| Exhibit 17 - Report Indicating ▮▮▮ Wants to Adopt ▮▮▮ | 46 |
| Exhibit 18 - Developmental Evaluation from Project Prince | 62 |
| Exhibit 19 - Foster Care Review | 69 |
| Exhibit 20 - Singing River Hospital Discharge Plan | 78 |
| Exhibit 21 - Hospital Discharge Summary | 86 |
| Exhibit 22 - Removal Request to Youth Court | 94 |
| Exhibit 23 - ▮▮▮ Complaint | 101 |
| Exhibit 24 - Report of Suspected Abuse Neglected Child Or Vulnerable Adult | 109 |
| Exhibit 25 - Notice of Change | 113 |
| Exhibit 26 - Notice of Change | 114 |

Page 3

INDEX

| | PAGE |
|---|---|
| Style and Appearances | 1 |
| Index | 3 |
| Certificate of Deponent | 128 |
| Certificate of Court Reporter | 129 |

EXAMINATIONS

| | PAGE |
|---|---|
| Examination By Mr. Thompson | 5 |

Page 5

          YUTASKA SIMPSON,
having been first duly sworn, was examined and
testified as follows:
EXAMINATION BY MR. THOMPSON:
    Q.   Good afternoon, Ms. Simpson.
    A.   Hi.
    Q.   My name is Eric Thompson. I'm one of the
attorneys from Children's Rights representing the
plaintiff in the matter of Olivia Y. Do you
understand that you're here to give sworn testimony
in that matter?
    A.   Yes.
    Q.   Just a couple of ground rules. If at any
point you don't understand a question that I ask,
please let me know. I'll try to rephrase it. If at
any point you wish to clarify a prior response, let
me know. We'll do that on the record. And if at
anytime you wish to take a break, please let us know
and we'll do that as well.
    A.   Okay.
    Q.   Ms. Simpson, have you done anything in
preparation for today's deposition?
    A.   No, no more than contacting the attorney,
getting directions, and asking the -- I know Earl
Scales from the Attorney General's Office, and I

Yutaska Simpson - 10/26/04

Page 18

1   A.   I can, but basically, if I look at it, I
2   look at the orders of the court and any service
3   plan.
4   Q.   And why would that be important to review
5   those documents?
6   A.   To see what the client has been ordered
7   to do. The case plan is what service and resources
8   that the court or the investigator want the client
9   to utilize. See how many children that's in care.
10  See what their needs are. And basically, go on
11  forward to make sure that we're in compliance with
12  the service agreement and the orders of the court.
13  Q.   And once you take over responsibilities
14  on a case, is it your regular practice to then
15  document in the child's case record any information
16  you receive about the child?
17  A.   We put it in -- we have a hard copy, but
18  most of the information go on what we call MACWIS in
19  a narrative. And it is my responsibility to
20  document it.
21  Q.   And why is that documentation important?
22  A.   In order that if anything should happen
23  or, you know, that there be someone to pick up and
24  follow along. Or to see, make an assessment as any
25  progress that have been made or not have been made.

Page 19

1   Q.   In ▓▓▓▓ County, has there been any
2   recent turnover of staff among the caseworkers?
3   A.   I think we're about as probably the same,
4   one or two more or less in the last year.
5   Q.   As part of the documentation, do you
6   document all contacts you have with the child, for
7   example?
8   A.   Yes.
9   Q.   Do you document all contacts you would
10  have with the child's caretakers?
11  A.   Yes.
12  Q.   Would you document all contacts you have
13  with collaterals on the case?
14  A.   Yes.
15  Q.   And why are those -- documenting those --
16  why is documenting those contacts important?
17  A.   It's important -- it's important that --
18  well, we have policy states we have to see a child
19  at least once a month. And with the client, it's
20  documenting any progress. And any collateral is
21  documenting any resources that was utilized or, you
22  know, linking the client to any services.
23  Q.   And is it your regular practice to also
24  document any tasks that you complete on behalf or
25  attempt on behalf of the child?

Page 20

1   A.   Is it my practice to do?
2   Q.   Yes.
3   A.   Yes.
4   Q.   Do you also understand such documentation
5   to be a DHS requirement?
6   A.   Yes.
7   Q.   Ms. Simpson, are you the assigned
8   caseworker for the child ▓▓▓▓▓▓▓?
9   A.   Yes.
10  Q.   And if you recall, when were you assigned
11  the case?
12  A.   I'm not sure of the exact date. If you
13  have any transfer information, it would have been
14  transferred to me by another worker.
15  Q.   Okay.
16       (Exhibit 14 - Order, ▓▓▓▓ County Youth
17  Court marked for identification.)
18  Q.   I'm going to show you what's been marked
19  Exhibit 14. Do you recognize this document?
20  A.   Yes, sir.
21  Q.   And what is it?
22  A.   It's an order from the ▓▓▓▓ County
23  Youth Court signed by Judge Sharon Segalus.
24  Q.   And is it in fact regarding the case of
25  ▓▓▓▓▓▓▓?

Page 21

1   A.   Yes, sir.
2   Q.   If you turn to page two, do you see your
3   name listed there under those to receive a copy of
4   the order?
5   A.   Yes, sir.
6   Q.   Is it fair to say that as the -- as of
7   the date of this order, April 29th, 2003, you would
8   have been the assigned caseworker? And again,
9   directing you to the second page.
10  A.   I'm looking at who was in the courtroom.
11  Brenda Coe, DHS social worker, and she's a
12  supervisor.
13  Q.   Would --
14  A.   I don't --
15  Q.   Would Ms. Coe have been your supervisor
16  at the time?
17  A.   No. I don't recall her ever being my
18  supervisor.
19  Q.   Directing your attention again to page
20  two.
21  A.   Uh-huh (affirmatively).
22  Q.   Would the fact that the copy of the order
23  was being cc'd to your attention indicate that at
24  the time the court recognized you as being -- having
25  been assigned to this case?

6 (Pages 18 to 21)

Yutaska Simpson - 10/26/04

Page 22

1  A.  I'm going to be -- I hope it's safe to
2  say that I may have been assigned to the case.
3  Q.  Well, looking at the date, April 29th,
4  2003, is that consistent with your recollection of
5  that you were assigned to the case at that time?
6  A.  I guess I would say so, yes.
7  Q.  Do you know why the case would have been
8  assigned to you?
9  A.  The only reason it would have probably
10 been assigned to me if we had gone either to
11 generic -- no, I'm sorry -- specialized or that
12 worker had left.
13 Q.  And why is that?  I'm not sure I
14 understand.
15 A.  When a worker leaves, the cases sometimes
16 are redistributed if there's no one to feel that --
17 you know, come right on in and work the case.
18 Q.  Okay.  Do you know how many caseworkers
19 have been on the case prior to your assignment to
20 the case?
21 A.  I really don't know exactly, but I know
22 that I can only name two that I'm aware of.
23 Q.  And who were those?
24 A.  Gwen Beck and I think Chem Cunningham.
25 Q.  Now, Ms. Beck was on the case when the

Page 23

1  child first came into custody; is that correct?
2  A.  Yes.
3  Q.  And at some point after that Ms.
4  Cunningham would have been assigned?
5  A.  See, I'm not sure.  At one point -- I
6  have to review the file to see, but I believe I've
7  seen Chem Cunningham's name in the -- in the
8  narratives.  Also, Gloria Richardson who was a
9  supervisor.
10 Q.  When you got the case though the child
11 was already in DHS custody, correct?
12 A.  Yes, sir.
13 Q.  Was there anything unusual about this
14 case or was it just assigned to you in the ordinary
15 course of business?
16 A.  No.  It was just assigned to me to work
17 it.
18 Q.  And when you reviewed the case, did you
19 note anything unusual about the cause, or again, was
20 it was just one more case?
21 A.  It was just one more case.
22 Q.  So is it fair to say you handled it just
23 as you would any of your cases?
24 A.  Yes.
25 Q.  Now, are you aware that ▮▮▮▮▮▮,

Page 24

1  ▮▮▮▮▮ is a named plaintiff in the matter of Olivia Y,
2  the case in which you are currently testifying?
3  A.  Okay.  I'm not familiar.  I know that
4  ▮▮▮▮▮▮▮▮▮ was named.
5  Q.  Okay.  And when did you become aware that
6  he was named in this lawsuit?
7  A.  I can't give you the exact date.
8  Q.  Was it recently or was it shortly after
9  the lawsuit was filed in spring of this year, '04?
10 A.  It was I guess spring of this year.  I'm
11 not sure.
12 Q.  In any event, since you became aware that
13 he was named in this lawsuit, have you treated his
14 case any differently from any of your others?
15 A.  No.
16 Q.  Has anybody at DHS asked you to treat
17 this case any differently than any of your other
18 cases?
19 A.  No.
20     (Exhibit 15 - Court Report, ▮▮▮▮▮▮
21 County Youth Court marked for identification.)
22 Q.  I'm showing you what's been marked
23 Exhibit 15.  Do you recognize this document?
24 A.  Yes, sir.
25 Q.  And what is it?

Page 25

1  A.  It's a court report for the ▮▮▮▮▮▮
2  County Youth Court.
3  Q.  Did you prepare this document?
4  A.  Yes, sir.
5  Q.  And was it prepared for submission to the
6  youth court?
7  A.  Yes, sir.
8  Q.  What information did you base this report
9  on?
10 A.  Working with the -- worked with the
11 client of the parents of ▮▮▮▮▮▮▮▮, background
12 information that indicates, and any collateral if
13 any mentioned.
14 Q.  Did you confer with your supervisor, Mr.
15 Matthews, when you prepared this document?
16 A.  I can't answer this.  I can't answer that
17 because he did not sign it and I don't know if he
18 had proofed the report before I -- it's protocol for
19 the supervisor to read the report and to approve it,
20 but his signature is not on it on this document.  So
21 I'm not able to say that he indeed read this report
22 or that I staffed it with him.
23 Q.  Do you know whether there's any
24 particular reason he would not have signed off on
25 this report?