4) Assist in the development of a comprehensive pediatric forensic physical examination clinic at the University of Mississippi Medical Center. The facility will be a first of its kind in Mississippi and would offer state of the art forensic examination of child abuse victims by both trained doctors and nurses. The facility would also be a place where forensic interviews and other interventions could take place. The long term goal is the replication of this model in other regional- serving hospitals around the state.

5) The continued provision of technical assistance and training to the active teams in the Statewide MDT Network. A minimum of two regional trainings will be conducted to allow for increased access for teams from all areas of the state. MDHS/DFCS is sponsoring a Pediatric Forensic Examinations Training through the Children's Justice Center.

## USE OF CJA FUNDS AND PROGRAM BUDGET

Children's Justice Act Task Force programs and services were set up to be funded out of the 2005 grant awards during this contract period. The remaining 2004 funds will be expended by September 30, 2006.

The proposed activities for the 2005-2006 grant year include: continuing development of MDTs in counties where they don't exist; provide forensic interviews; and provide supportive services for child victims throughout their judicial proceedings. The Statewide MDT Network activities as described above would be carried out in two (2) separate locations by two (2) independent contractors requiring individual grant awards. Additional funds are allocated for Statewide MDT Network training costs and the Annual Conference attendance for two representatives from Mississippi.

## OUTCOMES OF CJA ACTIVITIES AND PROJECTS

The Task Force is presently seeking new membership due to current members having moved to other employment and/or personal obligations. However, listed below are the names and titles of the current Task Force Members and the professional category they represent:

1) James Don Lindley, Field Officer II, Mississippi Department of Corrections, McComb, MS. Category: Law Enforcement

2) Sheila Burnham, State Independent Living Council Board Member, Madison, MS. Category: Individual experienced with children with special needs.

3) Honorable Vernon Cotton, Circuit Judge, Place II 8th District, Carthage, MS. Category: Judge

4) Jack Thames, Assistant District Attorney, Newton, MS. Category: Attorney.

5) Karen Selestak, Director of Bureau Health Facilities Licensure & Certification, Jackson, MS. Category: Health Professional.

6) Patricia Coldwell, State Fetal Alcohol Spectrum Disorder (FASD) Project, Mississippi Department of Mental Health, Jackson, MS. Category: Child Protection Agency.

7) Honorable William Agin, County Court Judge, Madison County, MS. Category: Judge.

8) Jeff White, Executive Staff Analyst, CAHABA Government Benefit Administrators, Medicare Part B Mississippi, Ridgeland, MS. Category: Health Professional.

9) DeNorris Skinner, Mississippi State Hospital, Ridgeland, MS. Category: Mental Health Professional.

10) Dr. Bill Uelekee, Coordinator Region 8 Mental Health Services, Canton, MS. Category: Mental Health Professional (Retired).

11) Anne Sims, Mississippi Department of Health, Jackson, MS. Category: Child Advocate (Retired).

12) Timmy Pickett, Region 8 Mental Health, Canton, MS. Category: Child Protective Services/CASA.

13) Richard Wilson, Rankin County Prosecutor, Brandon, MS. Category: Attorneys Prosecutor.

14) Donna Mitchell, Homemaker, Brandon, MS. Category: Parent Group Representative.

15) Honorable Adam Pittman, Chairman, Youth Court Referee, Batesville, MS. Category: Law Enforcement.

16) Honorable Stephen B. Simpson, Circuit Court Judge (District Two), Gulfport, MS. Category: Judge.

17) Lucy Davenport, Drug Court Coordinator 12th Judicial District, Hattiesburg, MS. Category: Court Administrator.

18) Jo Anne Byrd, Drug court Administrator 19th Judicial District, Pascagoula, MS. Category: Court Administrator.

19) Honorable Sally Liddy, Marshall County Youth Court Judge, Olive Branch, MS. Category: Judge.

DHS
146928

20) Brad Williams, Mississippi Department of Health, Gulfport, MS. Category: Child Advocate.

21) Walter Armstrong, Master. Sgt. Office of Highway Safety, Vicksburg, MS. Category: Law Enforcement.

Through the CJA Grant Funds, MDHS, Division of Family and Children's Services (DFCS), continues to fund two contractors who have been working in conjunction with one another and under the administrative supervision of DFCS to accomplish the outcomes targeted by this endeavor. The subgrantees both bring established expertise and experience in multi-disciplinary child abuse review team development and coordination, garnered through their prior efforts in creating local review teams in their service areas. They have carried this knowledge and experience forward in the process of continuing to establish new teams both in surrounding counties and on a regional basis.

The two programs awarded renewed contracts for the 2005-2006 grant year are:

1) Family Crisis Services of Northwest Mississippi
   Award Period: October 1, 2005 to September 30, 2006
   Grant Amount: $80,000.00

2) Center for the Prevention of Child Abuse
   Award Period: October 1, 2005 to September 30, 2006
   Grant Amount: $80,000.00

Family Crisis Services of Northwest Mississippi, Inc., is located in Oxford, Mississippi, and the Center for the Prevention of Child Abuse is located in Gulfport, Mississippi. The state is in essence split in half with each contractor being responsible for project development within their half of the state. Both grantees, however are working diligently toward collaborating on the development of a single model for use statewide.

The following are the outcomes to date, for the project objectives identified in the 2005 CJA Application:

1) **Continue the expansion of the Statewide Multi-disciplinary Child Abuse Review Team Network with the goal of reaching a review team presence in all eighty-two (82) counties** - This is an ongoing goal. From our grantees' last report at the CJA Task Force meeting scheduled on July 21, 2006, there are 76 counties with MDTs. The number dropped from 78 to 76 due to the fact that two of the county MDT leaders left for other employment, and the MDT, due to lack of direct leadership, did not continue to meet. However, the Task Force is still working in collaboration with the grantees to make headway toward the goal of 100% participation. One problem in meeting this goal has been that when contact

DHS
146929

is made to start a new county, one of the counties that is working will start to flounder due to: (1) lack of a social worker in the area; (2) lack of participation of the district attorneys office; (3) or internal strife starts to flounder. At this time, the efforts of the MDT coordinators have to be prioritized, and the best use of resources has been for the coordinator to make every effort to reestablish the county's MDT.

The following counties, listed under the grantee which handles their area, have MDTs.

**Center for the Prevention of Child Abuse**

1. Hancock
2. Harrison
3. Jackson
4. George
5. Wilkinson
6. Pearl River
7. Greene
8. Claiborne
9. Marion
10. Walthall
11. Pike
12. Amite
13. Simpson
14. Adams
15. Franklin
16. Lamar
17. Jefferson Davis
18. Jones
19. Wayne
20. Clarke
21. Choctaw (Tribal)
22. Copiah
23. Jefferson
24. Lincoln
25. Hinds
26. Stone
27. Rankin
28. Lauderdale
29. Scott
30. Neshoba
31. Kemper
32. Jasper
33. Lawrence
34. Covington

**Family Crisis Services of North MS**

1. Alcorn
2. Benton
3. Bolivar
4. Carroll
5. Coahoma
6. Grenada
7. Lee
8. Montgomery
9. Prentiss
10. Quitman
11. Tallahatchie
12. Tishomingo
13. Warren
14. Yalobusha
15. Calhoun
16. Chickasaw
17. Choctaw
18. DeSoto
19. Lafayette
20. Panola
21. Tate
22. Tunica
23. Tippah
24. Union
25. Webster
26. Winston
27. Yazoo
28. Attala
29. Clay
30. Holmes
31. Ittawamba
32. LeFlore
33. Lowndes
34. Marshall

DHS
146930

35. Monroe
36. Noxubee
37. Pontotoc
38. Sharkey
39. Issaquena
40. Sunflower
41. Washington
42. Humphreys

2) **Development and support to an ongoing forensic interview training program.** Training remains, perhaps, the most critical activity of the Statewide Network in accomplishing the goal of comprehensive systemic reform and change relating to the methodology by which child abuse cases are handled in this state. In Mississippi the ability to confidently and competently interview an alleged child victim is much sought after and impacts several of the professional disciplines involved in this area. The activity of training can be the means by which to bring divergent disciplines and viewpoints together in order to break down longstanding perceptions and promote the endorsement of the multi-disciplinary approach.

To date, there have been three advanced training classes with a total of 63 participants. The make up of the students is as follows:
- social workers - 15
- police department/investigators - 14
- bureau of narcotics - 1
- district attorneys - 5
- youth court - 2
- mental health - 1
- Choctaw (tribal) Professionals - 5
- youth services - 1
- health professionals – 1
- prevention agencies - 18

3) **Continue to assist in the development of a comprehensive pediatric forensic physical examination clinic at the University of Mississippi Medical Center** - MDHS has continued to support the creation of this facility. To date, the center has moved from the University of Mississippi Medical Center to the Jackson Medical Mall and is in the initial stages of planning. When completed, it will be a central location for not only forensic examinations by trained doctors and nurses, but also a place for forensic interviews. It will have a place for social workers, law enforcement and prosecutors to work on individual project or hold joint case discussions.

Additionally, MDHS has been active in continuing to develop a larger pool of doctors to conduct forensic examinations. A twenty-one hour forensic examination training was offered in Jackson, Mississippi in June 2005. The class offered education in both a lecture and hands-on format. The doctors were able to

18

conduct "real" forensic examinations using tools that they might not otherwise have had training on. The number of participants is small in order to facilitate the learning process and the number of students wishing to participate always exceeds the capacity of the two-day session.

4) **Continued provision of technical assistance and training to the active teams in the Statewide MDT Network.** A minimum of two regional trainings will be conducted to allow increased access for teams from all areas of the state. There are trainings throughout the year targeted to the MDT network

**Three Year Assessment Survey:**
The goal of this survey is to examine the process of child abuse case handling from initial report to final resolution to determine the strengths and weaknesses of current practices around the State and the effectiveness of the systems in place. For the purpose of this survey, the term "system" will refer to the professionals that ordinarily have a role in the investigation, determination, prosecution, and resolution of child abuse cases and how effectively the system is handling cases especially in relation to the welfare of the victim. The system is typically made up of MDHS, law enforcement officers; youth court personnel, medical personnel, prosecutors, victim/witness advocates, mental health workers and the school system. From the information gathered through this survey, the Children's Justice Act Task Force will develop recommendations for improving systems where needed and building on strengths that are identified.

The report made from the information gathered is as follows:

**CHILDREN'S JUSTICE ACT**
**THREE YEAR ASSESSMENT REPORT**
**Mississippi Children's Justice Act Task Force**
**September 2006**

I. **Introduction**
The Children's Justice Act (CJA) requires the State Task Force to undertake a comprehensive review and evaluation of law, policy and the investigative, administrative, and judicial handling of cases of child abuse and neglect and to make training and policy recommendations based on the review. This study must be conducted at the time of an initial application and at three-year intervals thereafter. Eligible States that met the three year assessment requirement and received funding in FY 2003 must include in the FY 2006 application, documentation that the State Task Force has complied with this requirement for a three-year study.

Planning for the initial assessment in Mississippi began in July 1999, at the quarterly meeting of the State Task Force. The initial application described in detail the plan adopted by the Task Force to begin a project that would address the very basic mechanisms by which child abuse cases are handled on the local level.

DHS 19
146932

The initiation of the statewide Multi-disciplinary Child Abuse Review Team Network sought to instill the notion of multi-disciplinary cooperation and collaboration in child abuse case investigation and management in local jurisdictions by helping to create working review teams and develop a network of ongoing training and support for the professionals involved. As a result, the theme of multi-disciplinary cooperation and communication became a significant influence in the development of the assessment strategy that would be utilized by the Task Force. After consultation with the Federal Project Officer and reviewing the methods employed by other states in carrying out this assessment task, it was decided that an extensive survey would be conducted to gather information from representatives of the various pertinent disciplines that are typically engaged in child abuse case management.

Except for a few changes, a similar survey was implemented for the FY 2006 report which will include evaluation of the investigative, administrative, and judicial handling of child abuse cases. It will focus on the efficacy of the experimental, model, and demonstration programs to improve the prompt and successful resolution of court proceedings, and the reform of laws, ordinances, regulations, protocols and procedures that directly affect the degree of protection for children from abuse. The report will also indicate the availability of multi-disciplinary child abuse review teams (MDT) in each Mississippi Department of Human Services, Division of Family and Children's Services outlined regions, how often the MDT meet, as well as information on strategies implemented in the cooperation and collaboration in handling child abuse case investigation and management.

## II. Methodology

The goal of the assessment was to reexamine the handling of child abuse cases from initial report to final resolution from the perspectives of the various professional disciplines that typically become involved at some point during that process. It sought to continue to track the strengths and weaknesses of current practices around the state and how effectively local systems are managing these cases. A survey instrument was redeveloped and approved by the Task Force as the primary means by which to gather this information. (See Attachment A)

The survey consists of five (5) questions that are to be answered in a two-part format. The first is a 5-point Likert scale with the number one (1) representing "not at all," and number five (5) representing "very" in any given category (e.g. effective, cooperative, adequate, etc.). The second part of the first five (5) answers involves a narrative response to further clarify the scale answer given to the question. Question number six (6) was added to identify the degree of statewide participation in a MDT, how often they meet, and what child abuse case handling procedures are being implemented per region. Question number seven (7) was provided so that respondents could add any additional information they felt would be beneficial to the Task Force. Eight (8) separate categories of professional involvement and "Other" were identified for receipt of the survey:

- Law Enforcement
- Mental Health
- Victim/Witness Advocates
- MDHS
- Prosecutors
- Youth Court
- Medical
- School System
- Other

The survey was administered by the Mississippi Children's Home Services (MCHS) under the direction of the Mississippi Department of Human Services (MDHS), Division of Family and Children's Services (DFCS). Approximately 378 surveys were initially emailed on August 24, 2006 to representatives of all the disciplines listed with 52 being undeliverable. Three (3) reminder emails were sent: 256 1st reminders emailed on 8/29/06 (12 undeliverable); 208 2nd reminder emailed on 9/5/06 (10 undeliverable); 189 3rd reminder emailed 9/8/06 (9 undeliverable). Six (6) updated emails were added to the list before the last email attempt. Survey questions covered the following areas:

1) The overall effectiveness of the child abuse case handling system in the respondent's local jurisdiction.

2) The level of effective communication between the various professional categories as judged by the respondent.

3) The presence of procedural guidelines or protocols in the jurisdiction of the respondent.

4) The adequacy of specialized training opportunities for the various professionals involved in the respondent's jurisdiction.

5) The level of cooperation among agencies involved in child abuse investigations in the respondent's jurisdiction.

6) The level of participation from MDT members in the respondent's jurisdiction.

Each question also included follow-up requests designed to gather further explanation of the respondent's choice.

The survey was designed to be anonymous, and the only identifying information requested was the professional category to which the respondent was a member, and which county they were a MDT member. Surveys were emailed to individuals identified by their professional affiliation, e.g. Judges and District

DHS
146934

Attorneys, or to agency or organization offices, e.g. Law Enforcement Agencies, Department of Human Services County Offices, School District Offices, etc. Email addresses for submitting the survey were provided by DFCS/CJA grantees' multi-disciplinary child abuse review team members list across the state of Mississippi.

### III. Evaluation

Of the 378 surveys emailed, 176 (53% response rate) individuals responded. The greatest number of returns came from individuals identifying with the MDHS professional category with sixty-eight (68) respondents (58.6% response rate). The next highest category was eighteen (18) respondents (15.5% response ratio) from Law Enforcement. The least came from both Youth Court, two (2) respondents (1.7% response ratio) and "Other" category with two (2) respondents (1.7% response ratio). (See Attachment B)

Upon initial review of the survey, it is important to note that of the 134 valid responses posted for question number one (1), fifty-four (54) responses (40.3% response ratio) were in the "somewhat effective" category. The next most prevalent score was number four (4), fifty-three (53) responses (39.6% response ratio) were between the "somewhat effective" and the "very effective" category. The third most prevalent responses were in the "very effective category" which yielded sixteen (16) responses (11.9% response ratio). In comparing results from previous surveys, the FY 2006 survey results reveals that the child abuse case handling system in the state of Mississippi has improved significantly from the initial survey conducted in May of 2000.

In terms of how effective various professionals communicate with each other during the process of child abuse investigation and case management, sixty-one (61) respondents (50.4% response ratio) selected the "somewhat effective" category. Only one (1) respondent (0.8% response ratio) selected the "not at all effective" category. From the 121 valid responses rendered, the most prevalent frequency score (50.4% response ratio), suggest communication between various professionals with each other during the process of child abuse investigation and case management is relatively resourceful.

While addressing the issue of standard procedural guidelines or protocols for child abuse cases in a particular jurisdiction, of the 123 valid responses, 102 respondents (58.0 % response ratio) reveals that survey respondents feel that there are standard procedural guidelines or protocols for child abuse cases in their jurisdiction. The consistency of these guidelines followed by professionals involved in the system can be evaluated by the forty-five (45) "somewhat consistent" responses (40.2% response ratio) out of 112 valid responses rendered. In looking at whether or not survey respondents believe standards or protocols would be beneficial to the case handling system in their geographical area, there were fifteen (15) respondents (83.3% response ratio) out of a total of 18 valid

**DHS
146935**

responses that selected "yes" as their preferred response as opposed to three (3) respondents (16.7% response ratio) that selected "no."

The adequacy of specialized training opportunities for the various professionals in child abuse case handling showed significant improvement in that the "somewhat adequate" category yield a count of forty-one (41) respondents (36.9% response ratio) with responses between the "somewhat adequate" and "very adequate" category following in close proximity with thirty-five (35) respondents (31.5% response ratio). The "very adequate" category with thirteen (13) respondents (11.7% response ratio) reveals that many of the respondents feel that there are specialized training opportunities for the various professionals in child abuse case handling available in their jurisdiction.

The cooperation among agencies involved in child abuse case handling was significantly noted in the "somewhat cooperative" category with forty-seven (47) respondents (42.3% response ratio). Following in close proximity between the "somewhat cooperative" and the "very cooperative" category is forty-three (43) respondents (38.7% response ratio). The "very cooperative" category yield fifteen (15) respondents (13.5% response ratio); indicating that several jurisdictions felt that there was a significant amount of cooperation among agencies involved in child abuse case handling.

The Task Force's last efforts were to evaluate the level of participation in local multi-disciplinary child abuse review teams across Mississippi. Of the 111 valid responses, ninety-eight (98) respondents (88.3% response ratio) stated they were a member of their local MDT team. With thirteen (13) respondents (11.7% response ratio) stating they were not a member. The county with the most participation was Alcorn County (DFCS/Region I) with seven (7) respondents (7.4% response ratio). Out of the 176 survey responses received, there were only ninety-five (95) respondents to indicate MDT county membership. This would reveal that approximately eighty-one (81) respondents did not indicate a county affiliation.

One significant thing to note here is that in looking at the survey results, there is more MDT participation in the northern part of Mississippi (Region I-E, I-W, and II), in correlation with the southern part (Region VI-S) of the state. Hancock and Harrison County had zero (0) response to county affiliation. Jackson County had one (1) response to county affiliation. One conclusion for such a lack of participation in this area of the state would more than likely be that the onset of Hurricane Katrina is still taking a strong toll on the child welfare system on the Mississippi Gulf Coast. (See Attachment C)

One other major concern as it relates to MDT membership is the lack of participation in the Hinds County area which yields zero (0) participation. The only feasible explanation for this would more than likely be concluded by the fact that both CJA grantees responsible for recruiting and maintaining MDT membership are located in the far northern and southern part of the state.

23

However, Hinds County is located in the capital city of Mississippi where most family and children service providers are located.

In looking at how often MDT teams meet from a statewide perspective, eighty-nine (89) respondents (90.85 % response ratio) indicated they meet "monthly." "Several times a year" was the only other (selected) response with nine (9) respondents (9.2% response ratio). When survey respondents were asked if they would like to become a member of their local MDT, of the twelve (12) responses received, the ratio was 50/50.

### IV. Conclusion

The use of the survey method to collect information was chosen by the Mississippi CJA Task Force because it offered the most efficient manner by which to request feed back from the greatest number of people. The Task Force's desire to promote the concept of multi-disciplinary cooperation and collaboration inherently increased the potential number of individuals to be sought for information. Thus, as in the implementation of past surveys, the format was deemed the most plausible for the task at hand. The Task Force feels confident in using the information as a basis for making the following recommendations.

A summary review of the date reveals:

1) An overall rating of "somewhat" or above from participating professions for the case handling system presently at work in their jurisdiction.

2) Based on the overall average of scores, communication among various professionals with each other during the process of child abuse investigation and case management is relatively resourceful.

3) The consistent presence of standardized procedures and protocols for case handling has significantly improved.

4) The adequacy of specialized training opportunities for the various professionals seems to remain "somewhat adequate."

5) The rate of cooperation among agencies involved in child abuse case handling has slightly improved.

6) MDT membership <u>across</u> the state of Mississippi needs improvement.

### V. Recommendations

In planning to assess Mississippi's child abuse case handling system, concerted effort was made to gather input from all the pertinent professions involved in the intervention process. It was believed to be necessary to evaluate the system from the different perspectives of those participants whom come to the system with different professional obligations and areas of expertise. It is believed that this

has been accomplished through the process described above, and that the information and insight gained from this effort is invaluable in the formulation of future plans, directions, and goals for the State. Therefore, Mississippi Children's Justice Act Task Force presents the following recommendations for the further improvement of the state's child abuse case handling efforts:

1) All pertinent state and local agencies and elected officials should take a more active role in adopting and promoting the concept and philosophy of inter-agency participation in a comprehensive approach to child abuse/neglect investigation and management at the most local levels of involvement. Further, the state should seek to remove any barriers to such an approach that are amenable to legislative, judicial, or executive action.

2) Mississippi continue efforts to develop and expand statewide membership in multi-disciplinary child abuse review teams for the cooperation and collaboration among agencies and professionals involved in the investigation, assessment, and disposition of child abuse/neglect cases in the state.

3) Mississippi continue to encourage the adoption of standard protocols and procedures for case handling to be used by all jurisdictions, so as to ensure consistent and appropriate efforts on the behalf of the child abuse victim and family.

4) Mississippi continue to provide ongoing training for the specific professionals participating in multi-disciplinary child abuse review teams across the state, in order to achieve a consistent level of competency and service for child abuse victims no matter their location in the state.

On October 19 and 20, 2006, MDHS co-sponsored with The Children's Justice Center a nine hour course to provide advance training on recognizing and diagnosing child sexual abuse to medical professions. Attendees participated in a mock trail training exercise to enhance their skills in testifying in youth court and criminal court proceedings.

### 2006 Year End (Task Force) Objectives/Recommendations
Members of the CJA Task Force submit the following objectives/recommendations for the further improvement of the state's child abuse case handling efforts for FY 2006-2007:

**Objective #1:** All pertinent state and local agencies and elected officials should take a more active role in adopting and promoting the concept and philosophy of inter-agency participation in a comprehensive approach to child abuse/neglect investigation and management at the most local levels of involvement. Further, the state should seek to remove any barriers to such an approach that are amendable to legislative, judicial, or executive action.

**Objective #2:** Mississippi continue efforts to develop and expand statewide membership in multi-disciplinary child abuse review teams for the cooperation and collaboration among agencies and professionals involved in the investigation, assessment, and disposition of child abuse/neglect cases in the state.

**Objective #3:** Mississippi continue to encourage the adoption of standard protocols and procedures for case handling to be used by all jurisdictions, so as to ensure consistent and appropriate efforts on the behalf of the child abuse victim and family.

**Objective #4:** Mississippi continue to provide ongoing training for the specific professionals participating in multi-disciplinary child abuse review teams across the state, in order to achieve a consistent level of competency and service for child abuse victims no matter their location in the state.

**Objective #5:** CJA Task Force continues to recruit membership with expertise in the investigation, assessment, and disposition of child abuse/neglect cases in the state.

### Citizen's Level Review Board

#### Mississippi State Level Citizens Review Board Annual Report
#### June 2005

Author:
Michael Forster
The University of Southern Mississippi School of Social Work
Chairperson, Citizen's Review Board

Board Members:
Jane Boykin
Mississippi Forum on Children and Families

Chris Cherney
Mississippi Children's Home Society and Cares Center, Inc.

Shirley Kennedy
Mississippi College School of Law

Chunda Longino
Project Homestead

Patti Marshall
Office of the Attorney General

Sandra Parks
Mississippi Department of Mental Health

DHS
146939

Angela Robertson
Mississippi State University Social Science Research Center

Kim Shackelford
University of Mississippi Department of Social Work

Joyce White
Mississippi Department of Rehabilitative Services

Ruth Williams
Jackson State University School of Social Work

The following brief report of the Citizens Review Board (CRB for the year 2004-2005 departs, with good reason, from the format and content of past reports. Earlier reports were driven by the Board's periodic review of the ongoing five-year plan of the Division of Family and Children's Services, and focused organized commentary on the agency's progress in achieving desired client and system outcomes in the major areas of Safety, permanency and Well-Being. During the most recent annual period, however, DFCS was immersed in drafting its "Performance Improvement Plan" in response to the findings of the federal Child and Family Services Review (CFSR), and simultaneously, its next five-year plan. Routine reporting, therefore, did not occur. Further, while some members of the Citizens Review Board were variously engaged in the agency's planning activities, the Board did not meet according to its regular quarterly scheduled and did not provide collective feedback to the agency on any matter.

The CRB did, however, with the support and assistance of DFCS administrative personnel, begin to address the Board's own purpose, organization and focus, areas of concern articulated in the 2004 Report. The following steps were taken:
4. As requested in August, agency personnel arranged for technical assistance to be provided a nationally recognized expert, Dr. Blake Jones, on the function and activities of "citizen panels" under provisions of the Child Abuse Prevention and Treatment Act (CAPTA). Informal discussions with Dr. Jones, as well as a formal workshop conducted with some members of the CRB and agency personnel, were most helpful in clarifying both role opportunities and organizational options for the CRB.
5. Following a fall hiatus during which the agency itself reorganized administratively, the CRB met with new agency leadership, Mr. Rickie Felder, and determined to:
(a) retain its membership and to seek new members who can make a commitment to sustained participation;
(b) adopt a formal structure of officers and committees, and concomitantly, a set of operational guidelines for purposes of organizational continuity; and
(c) work closely with the agency leadership to establish priorities for CRB activities.

DHS
146940

Happily, Mr. Felder pledged continued administrative support of the CRB, principally in the form of Ms. Amandia Sullivan, who was to be responsible for ensuring communication, keeping records, arranging for meeting space, etc., and generally serving as agency liaison.

6. In two subsequent meetings in the Spring of 2005, the CRB:
   (a) elected officers (Chair, Michael Forster; Vice-Chair, Sandra Parks; Secretary, Angela Robertson)
   (b) approved operational guidelines and sent them on to MDHS Director Don Taylor for review;
   (c) recommended new members;
   (d) discussed priority concerns of the agency for input from the CRB; and
   (e) planned the current report.
7. In May, members of the CRB, along with a variety of child and family welfare services providers and stakeholders, attended an agency presentation of the Performance Improvement Plan and the 2005-2009 Child and Family Services Plan, and received copies of said plans.

Looking to the year ahead, the Citizens Review Board expects to work closely and effectively with DFCS leadership and personnel, voluntary members of the Mississippi services system, and other system constituents and stakeholders to improve system outcomes as articulated in the PIP – thereby, it is hoped, fulfilling the Board's CAPTA-intended purposes.

**2006 Year End (Board) Objectives/Recommendations**
Members of the Citizen's Level Review Board submit the following objectives and recommendations of action for FY 2006-2007:

**Objective #1: Improve performance of community networks.**
- Track Performance Improvement Plan progress as it relates to community networks.
- Attend MDHS and other meetings specific to community networks.
- Recruit to the board individuals with expertise in community partnerships.
- Individuals responsible for action: Jane Boykin and Chunda Longino.

**Objective #2: Improve functioning of the Regional Action Plan groups.**
- Track performance Improvement Plan progress as it pertains to regional action plans.
- Attend selective MDHS and other meetings specific to regional action plans.
- Recruit to board individuals with expertise in regional planning.
- Individuals responsible for action: Joyce White and Sandra Parks.

**Objective #3: Revise agency policy for improved system performance in key areas.**
- Track performance Improvement Plan progress as it pertains to policy change.
- Attend MDHS and other meetings specific to policy revision.
- Recruit to the board individuals with expertise in policy work.
- Individuals responsible for action: Chris Cherney and Patty Marshall

- **Please describe the provisions and procedures for criminal background checks for prospective foster and adoptive parents and other adult relatives and non-relatives residing in the household.**

    The following actions are taken in regard to provisions and procedures for criminal background checks for prospective resource parents, other adult relatives, and non-relatives in the home:
    - A Central Registry Request is completed on each person in the household. The request is sent to the State Office by the Licensure/Adoption Specialist for a check to be completed by staff in the Protection Unit. It generally takes about 2 to 3 days to receive a response.
    - A request for information is sent to local law enforcement and the sheriff's department on each member of the household who is eighteen or older. The sheriff's department sends for information from state law enforcement.
    - A request is sent to Program Integrity for an NCIC (National Criminal Information Center) on all household members above the age of eighteen (18). NCIC checks are returned within seven (7) to ten (10) days to F&CS (S.O.).
    - The information is sent to the Administrators for the Licensure/Adoption Unit.
    - If a record is found, the Agency notifies the family and meets with them to discuss the findings.
    - An Agency representative meets with law enforcement to discuss the findings.
    - If the found record is for child abuse, staff checks MACWIS to review the findings and reviews the findings with the worker who documented the information in MACWIS.
    - Staff reviews the child abuse information with the family.
    - If the family does not agree, they are able to file a grievance.

    New MDHS/DFCS policy addresses fingerprinting and FBI checks.
    - The Division is in the process of assigning a staff person to do fingerprinting of new staff as well as resource families. The process has not been finalized but, it has been addressed. As yet, no equipment has been purchased to complete the fingerprinting process.

**Transfers to Juvenile Justice**
**Please report the number of children under the care of the State child protection system who are transferred into the custody of the State juvenile justice system and information, such as how States define the reporting population and other pertinent information.**

For FFY 2005, 4 children were discharged from DFCS custody to be placed in the Training Schools (Office of Youth Services).

The reporting population for DFCS includes all children for which a court has given DFCS custody. DFCS is then responsible for the placement and planning for these children. Children in the custody of DFCS are adjudicated by the Youth Court as 1) Abused 2) child in Need of Special Care 3) Child in Need of Supervision 4) Delinquent Child 5) Dependent Child or 6) Neglected. 4 children were released from DFCS custody due to the custody being transferred to the juvenile justice system for FFY 2005. They are the exceptions to the rule. The usual protocol requires that the child be placed in the custody of the juvenile justice system when he is adjudicated as delinquent and remanded to one of the two training schools in Mississippi. However, this seldom occurs. The Youth Courts usually leave the children in our custody while they are in these training schools.