**Regional Action Plans**

All Regions have completed individual County Self Assessments to determine strengths and areas needing improvement related to the stability of foster care placements. If counties identify stable placements as an area needing improvement and a permanency priority, strategies will developed and included in the Regional Action Plans (RAP). Each RAP must be submitted to the DFCS Division Director for final review and approval. After State Office approval, the region will be required to implement and monitor progress on completing action steps and progress toward established goals. The ASWS and county will report progress monthly to the RD, who in turn will report quarterly to the SO.

**Quality Assurance**

The overarching strategies for quality assurance that will impact placement stability include FCR and the monitoring of the MACWIS Placement Stability Reports. The FCR revised case review instrument targets indicators for placement stability and the quality of practice related to placement decisions. The FCR case review also tracks the CC to ensure that family team conferences are being held to review cases including foster parents and community providers at least every six months. MACWIS generates a Placement Stability Report which is one of the monthly reports used by RDs and ASWS to monitor placement activity.

**Emancipation and Formalized Long Term Foster Care (PIP Item 10)**

For older foster children whose plans were either emancipation or formalized long term foster care, 100% had more appropriate plans considered and ruled out for April through June 2006; however, that number decreased to 84.6% for July through September 2006.



The first sample was eight but the second sample was 13. Other plans had not been ruled out for two of these, one of which, the judge ordered long term foster care on a 12 year old.

**Permanency Outcome 2**

**The Continuity of Family Relationships and Connections is Preserved for Children**

The CFSR findings indicated that DFCS did not make concerted efforts to ensure that children in foster care are placed, when appropriate, in close proximity to their

parents and communities of origin. Also, DFCS was not consistent in its efforts to (1) place siblings together; (2) establish frequent visitation between children in foster care and their parents and siblings; (3) preserve connections for children in foster care; (4) seek relatives as potential placement resources; and (5) promote or maintain a strong, emotionally-supportive relationship between children in foster care and their parents. The permanency and well-being of Native American children in foster care was also noted as an area of concern.

## Family Centered Practice

The practice of FTM and CC creates opportunities to engage the family, foster families and other supports in planning efforts to improve frequency and accessibility of family visitation.

To ensure preservation of family connections and characteristics for children in foster care, policy and practice revisions include guidance to insure compliance and support of federal Indian Child Welfare Act (ICWA) and Multiethnic Placement Act (MEPA) mandates and requirements. The practice of FTM and CC also help to reinforce and support preserving family connections and characteristics.

The FCP, FTM and CC training address early and diligent search for maternal and paternal relatives, and the engagement and utilization of relatives as placement resources.

The practice of FTM and CC creates opportunities to engage the family, foster families and other supports in planning efforts to improve the relationship of the child in care with parents and the frequency and accessibility of family visitation.

## Regional Action Plans

All regions have completed individual County Self Assessments not only to determine strengths, in addition to identifying areas needing improvement for placement in close proximity. If the counties within a region identify placement in close proximity as a practice area needing improvement and as a permanency priority, strategies to improve placement practice will be addressed in the RAP.

All regions have completed individual County Self Assessments to determine strengths and areas needing improvement for sibling placements by evaluating practice and availability of placement options within a county. If the counties within a region identify placement in close proximity as a practice area needing improvement and as a permanency priority, strategies to improve placement practice will be addressed in the RAP.

All regions have completed individual County Self Assessments to determine strengths and areas needing improvement for parent and sibling visitation with the child in foster care by evaluating actual practice within a county. If the counties within a region identify family visitation while in foster care as a practice area

DHS
146812

needing improvement and as a permanency priority, strategies to improve family visitation will be included in the RAP.

All regions have completed individual County Self Assessments to determine strengths and areas needing improvement for preserving family connections and characteristics for the children in foster care by evaluating actual practice within a county. If the counties within a region identify preserving family connections or characteristics as a practice area needing improvement and as a permanency priority, strategies to improve preserving family connections will be developed as part of the RAP.

The RAPs will include strategies to improve practice for supporting relative placements and caregivers if the County Self Assessment process identifies this particular area as one needing improvement and is considered to be a priority for achieving timely permanency.

**Quality Assurance**
The Administration Supervisory Case Review Process will encompass the reviewing of in-home and custody cases to assess practice related to relative placements and supports. Foster Care Case Review also evaluates practice related to relative placements.

**Proximity: Placements More Than 50 Miles (PIP Item 11)**
Proximity to the child's original home is a major factor in maintaining the relationship to facilitate reunification. The April through June 2006 percentage of foster children within 50 miles of their original home was 65%; the July through September percentage was 71%, an improvement over the annual average for July 2005 through June 2006 in which the average was 68%.



The Family Centered Practice training emphasized the necessity of assisting children to remain connected to their parents through regular visitation, most easily achieved when the children and the parents do not live at a greater distance apart than 50 miles, which can accommodate adjoining counties. Monitoring this through the regular foster care review process indicates that children placed outside the 50 miles radius are placed for reasons that assist in achieving the permanency goal for the children. In some cases the children are in therapeutic placement or are placed outside that 50 mile radius for a relative placement expected to become permanent.

### Sibling Separation (PIP Item 12)

Another issue is maintaining sibling groups together in placement unless there are documented necessary reasons for separate placements. For the April through June 2006 quarter, 70% of the siblings in custody were placed with one or more siblings. For July through September, the percentage is 71%, an increase probably due to the Family Centered training as well as the monitoring case-by-case through the Foster Care Review Program. During the April through June quarter, of the children who are placed separately from all their siblings, there was clear evidence 85% of those children had to be separated to meet their needs to achieve the goals or in some cases to protect the other siblings. For the July through September quarter, for 75% of the children separated from their siblings in foster care there was clear evidence the separation was necessary. The annual average was 67% for June 2005 to July 2006. This shows improvement.



### Maintaining Connections (PIP Item 14)

Agency efforts to maintain primary connections and characteristics were 89.0% in April through June 2006, and for July through September were 90.0%.



In addition to that 1% increase, there is an increase in the counties' compliance with the ICWA requirements as well as in relative placements, family team meetings, efforts to keep the children closer to their homes and to maintain sibling and family contact. Again, the Family Centered Practice training provided motivation to the counties for extra efforts and more awareness regarding the families.

DHS
146814

## Relative Placements (PIP Item 15)

Relative placements for the period April through June 2006 was 24%; for July through September, 39% of the children were placed with relatives.



The annual percentage for July 2005 through June 2006, of children placed with relatives was 28%. In April through June 2006, of the children NOT placed with relatives, efforts were made locate and secure maternal relative placement in 94% of those cases. For July through September 2006, efforts were made to locate and secure maternal relative placements was 94%. Of the children not placed with relatives, efforts were made in 88% of the cases for April through June to locate and secure paternal relatives; for July through September the percentage for paternal relatives was 85%. It should be noted that not all foster children have an identified father. There is a significant increase in relative placements which is attributed to the increased emphasis from the Family Centered Practice training on securing relative resources and involvement during the course of Family Team Meetings.

## Visitation With Parents (PIP Item 16)

Regarding monthly visitation with the mother, the April through June 2006 percentage was 37% with a one percent rise for the July through September percentage to 38%. Visitation monthly with the father increased from 16% for April through June 2006 to 28.6% for July through September.



The increased visitation for fathers is attributed to the Family Centered Practice training that emphasizes the inclusion of fathers and paternal relatives. One note of clarification needs to be made: the reporting of visitation with parents is across the board and not just for children whose permanent plan is reunification with a parent.

Some parents' whereabouts are unknown and the child's plan does not include reunification.

**Well-Being 1**
**Families have Enhanced Capacity to Provide for their Children's Needs**

The CFSR findings for this outcome indicated that MDHS is not consistent in (1) meeting the service needs of children, parents, and foster parents; (2) involving children and parents in the case planning process; and (3) establishing face-to-face contact with children and parents with sufficient frequency to ensure children's safety and well-being.

**Family Centered Practice**
The FCP, FTM and CC training addressed the assessed needs and services for families and children to improve well-being outcomes.

The FCP, FTM and CC training addressed the child and family engagement in case planning to improve well-being outcomes.

**Quality Assurance**
The supervisory case review will assess the practice of engaging family and children/youth in FTM to develop the initial ISP within 30 days from case assignment. Foster Care Case Review has the added responsibility of assessing the practice of actively engaging parents and children in case planning through the monthly random sample case review process.

**Regional Action Plans**
All regions have completed individual County Self Assessments to determine strengths and areas needing improvement for engaging the child and family in case planning by evaluating actual practice within a county. If the counties within a region identify engaging the child or family in case planning as a practice area needing improvement and as a permanency priority, strategies will be developed to improve practice as part of the RAP.

**Parental and Resource Family Needs (PIP Item 17)**
This item deals with the provision of services to parents and resources families for identified needs. The percentage 97.5% is excellent for April through June 2006 parents (mothers, fathers, resource families), but it is decreased during the July through September 2006 quarter at 91.2%.

DHS
146816



However, it is not clear if all actual needs have been initially identified, assessed, and documented by the county staff. Some services identified for parents are drug screening and treatment, parenting classes, mental health counseling, family preservation program, anger management, assistance with transportation, employment and housing referrals, homemaker program, the Intercept Program, and assistance with food and utilities. For foster parents, which could include relative placement providers and adoptive parents, the services include assistance with transportation and medical needs, childcare, WIC, Medicaid, assistance with psychological evaluation and SSI application for the foster child, Project RUN, emotional and financial support for relatives, respite/sitter for the child while in the hospital, assistance with clothing for children, assistance for relative placements to become a licensed foster home or day care.

### Involvement in Case Planning Activities (PIP Items 18/25)

Involvement in case planning activities for the foster child and the parents shows improvement. For the child the percentages rose from 56% for April through June 2006 to 67.0% for July through September. The average for July 2005 to June 2006 was 67.0%. Some of the past quarter's increase is due to the increased efforts to include foster teens in their own case planning through the Independent Living Program. April through June 2006 found that 52% of the mothers were involved in their case planning; for July through September 2006, the percentage increased to 74%. The average for July 2005 to June 2006 was 41%. This increase may be attributable to the Family Centered Practice training and the implementation of family team meetings. For the fathers, April through June 2006 had a percentage of 28%, with a lower number for July through September 2006 of 26%. The annual percentage for fathers was 24% for July 2005 through June 2006.



The fathers are still not as involved in case planning and activities as the agency would like. There remain, on the other hand, many fathers who have stated interest in the child but refuse to make any follow-through with that statement or who have indicated their lack of interest in the child or his care. There are those fathers who are given the opportunity to enter into a case plan but refuse to agree to work through a service plan or to provide any emotional support or attachment opportunity for the child.

## Monthly Worker-Child Contacts (PIP Item 19)
Monthly contacts by the case worker have improved. For April through June 2006, face to face contacts between the child and case worker were 89%; for July through September, that rose to 92%.



This increase is attributable to the constant and on-going monitoring by Foster Care Review as well as the MACWIS reports of theses contacts that are provided at Senior Management meetings. These contacts have been a significant focus of the agency over the past year.

## Monthly Worker-Parent Contacts (PIP Item 20)
Monthly contacts with the mother have remained stable with 47% for both April through June and July through September 2006 which is an increase over the average percentage for June 2005 to July 2006 of 44%. The cases reviewed include all permanent plans and are not just children for whom the plan is reunification. For fathers, April through June was 32% and for July to September was 21%; from July 2005 through June 2006 the average was 27%.

DHS
146818



Again, it must be emphasized that not all fathers are known, that some known fathers are transient and unwilling to be involved with their children, and that some don't keep the agency aware of their whereabouts.

## Well-Being 2
### Children Receive Appropriate Services to Meet Their Educational Needs

The CFSR findings cited that MDHS did not consistently address the educational needs of children in in-home cases where there was clear evidence that the child(ren) in the family had education-related needs. Stakeholders noted that when educational needs were not being met it was due primarily to large caseloads and/or a lack of effective collaboration between MDHS and local school systems.

**Family Centered Practice**
The FTM and CC provides an opportunity to assess educational needs and to identify needed and available services to address these needs. In addition, the CC includes community partners, and if a child has educational needs, representatives from education can become team members through the CC process.

**Quality Assurance**
The monthly FCR reviews practice related to the assessment, the identification of educational needs and the services provided. In addition, the supervisory case review process will include the assessment of educational needs and the providing of services for children in-home and in custody.

**Educational Needs (PIP Item 21)**
Regarding services provided to meet children's educational needs, April through June 2006 saw that 100% of the identified educational needs were provided for the applicable children in the sample. Services listed were Independent Living skills classes, sign language instruction, tutoring services, speech therapy at school, IEP, financial aid to attend college classes, Project PRINTS, special services for specific learning disability, preschool day care services, and help in preparing for the ACT test. For July through September 2006, the percentage fell to 97.6%.

DHS
146819



Out of the 42 children in the random sample with identified educational needs, only one did not have his needs met. This item is one that Foster Care Review is looking at more closely to attempt to ensure that children's educational needs are being met.

### Well-Being 3
### Children Receive Adequate Services to Meet Their Physical and Mental Health Needs

A key CFSR finding with regard to this outcome was that MDHS is not consistent in its efforts to meet children's physical or mental health needs. Identified concerns pertained to a lack of dentists who will accept Medicaid and a general lack of mental health services throughout the State.

**Family Centered Practice**
The FTM and the CC provide an opportunity to assess the physical health needs and identify needed and available services to address these needs. In addition, the CC includes community partners, and if the child has physical health needs, the health care providers can become team members through the CC process.

The FTM and the CC provide an opportunity to assess the mental health needs and to identify needed and available services to address these needs. In addition, the CC includes community partners, and if a child has mental health needs, the mental health care providers can become team members through the CC process.

**Quality Assurance**
The monthly FCCR assesses practice related to the assessment, identification, and physical health services provided. The supervisory case review of in-home and custody cases will also assess the quality of practice in assessing physical health needs and the provision of services based on identified needs.

The monthly FCR reviews practice related to the assessment, identification, and mental health services provided. The supervisory case review of in-home and custody cases will assess the practice of identification of mental health needs and the provision of services based on needs.

### Physical Heath Needs (PIP Item 22)

The identified physical health needs were provided in 96% of the children sampled for April through June 2006 and is 96.6% for July through September. The average for July 2005 to June 2006 was 94%.



Services listed were physical therapy, identification of sickle cell trait, treatment for acid reflux disease and heart problems, treatment for STDs, a helmet to aid in the shape of the child's head, high blood pressure medication, diabetic care, out-patient surgery, orthodontic care, physical therapy for developmental delays, and transportation to appointments.

### Mental Health Needs (PIP Item 23)

The identified mental health needs were provided in 98% of the children for whom needs were identified in the sample for April through June 2006 and in 93% for July through September 2006. The average for July 2005 through June 2006 was 94%.



Services listed for the identified mental health needs were Youth Village's Intercept Program, individual and group therapy, drug and alcohol treatment at The ARK, acute care or residential treatment, medication for bed-wetting, on-going mental health counseling.

## Annual Progress and Services Report

## Service Descriptions for MDHS Programs

**Child Welfare Services** – The Division of Family and Children's Services (DFCS) is responsible for the administration of the Child and Family Service Plan (CFSP) and providing child welfare services that best promote the safety, well-being, and permanency for Mississippi's children and families. The different units within DFCS are responsible for the implementation and support of prevention of child abuse and neglect programs funded under the Title IV-B, Part I (Child Welfare Services), Title IV-B, Part II (Promoting Safe and Stable Families), Children's Trust Fund (CTF), Children's Justice Act (CJA), Community-Based Child Abuse and Prevention (CBCAP), and Child Abuse Prevention Treatment Act (CAPTA).

DFCS strives constantly to provide an array of child welfare services which include services provided directly to the client and his/her family. The Bureau Director for the State Office Programs oversees four State Office units, each headed by a Unit Director: Administration/Prevention, Placement, Protection, and MACWIS.

**Administration/Prevention Unit:** This unit is responsible for the implementation and support of prevention of child abuse and neglect programs funded under the Title IV-B, Part II (Promoting Safe and Stable Families), Title IV-B, Part I (Child Welfare Services), Children's Trust Fund (CTF), Children's Justice Act (CJA), Community-Based Child Abuse and Prevention (CBCAP), Refugee Resettlement, Unaccompanied Minor Refugee, TANF, and the Child Abuse Prevention Treatment Act (CAPTA) which includes State Basic Child Abuse and Neglect grants. They oversee the Advisory Boards associated with the grants and Citizen Review Panels. This unit is responsible for administrative policy and procedures, Title IV-E Eligibility, coordination with the field on the Title IV-E Waiver Demonstration Project. This Administrative Unit is also responsible for budget development and management; contract management for child-placing facilities; purchasing; and Federal reporting for Title IV-E, Title IV-B, Part I and II, and Social Services Block Grant.

**Placement Unit:** This unit is responsible for placement services for children in foster care, Permanency Planning, Interstate Compact, Chafee Foster Care Independent Program (CFCIP), Termination of Parental Rights (TPR), Foster and Adoption Licensing, Adoption Program, and Foster/Adoptive Parent Retention and Recruitment Programs.

**Protection Unit:** This unit is responsible for the Child Abuse Central Registry; Adult and Child Abuse/Neglect Hotline, writing policy and procedures for the protective services' area, and providing technical assistance to the field on Adult Protective Services and Protective Services for Child Abuse and Neglect. This unit is also responsible for the Foster Care Review Program, Training Program, MDHS-Child Fatality Review Team, Worker Safety Committee, Administrative Fair Hearing process for Central Registry requests, contract between MDHS and a private

**DHS**
**146822**

contractor which provides the 24-hour Hotline services, and the programmatic portion of the contract between MDHS and the Child Welfare Training Institute. The MDHS State (800) Child Abuse Hotline and the 24-hour information and referral service, CONTACT the Crisis Line, continue to remain a viable resource that provides a safety net for all reports of adult and child abuse and neglect to be reported. Upon receipt of abuse and neglect reports, the Child Abuse Hotline staff enters the reports into MACWIS, where they are transmitted to the respective county of responsibility for handling. Other measures in the development of information and referral services statewide include: coordination with local Family First Resource Centers (FFRC) and with other local community-based family support services. With the development of the information and referral networks put in place within the local communities, the overall adult and child protection system has strengthened.

**Mississippi Automated Child Welfare Information System (MACWIS) Unit:** This unit is responsible for the collection of statistical data and reporting for Adoption and Foster Care Analysis and Reporting System (AFCARS) and the National Child Abuse and Neglect Data System (NCANDS).

In 2004, the MACWIS Advisory Team assessed that there are four (4) areas that need to be finalized for MACWIS to meet all federal requirements and they are: (1) Title IV-E Eligibility; (2) MAVERICS, METSS and Medicaid interfaces; (3) Foster Home Board Payments; and (4) Adoption Assistance Payments. The Division is making Adoption Assistance Payments from MACWIS. In 2005, Title IV-E Eligibility and Foster Home Board Payments were implemented. Eligibility re-determinations, PIP and SACWIS requirements are priority over any other change requests and/or enhancements.

Services offered by these units include:
**Adoption Services** — The primary purpose of the Agency's Adoption Program is to find the best possible home to meet the physical, mental, emotional, and social needs of each child whose biological parents are incapable or undesirous of assuming and continuing parental responsibilities. Adoption services and resources for children will be provided without discrimination because race, color, national origin and religious affiliation. These services are provided by the adoption specialist, who licenses potential homes for children who are free for adoption, monitors the homes, and conducts public awareness needed for recruitment of such homes.

Goals and Objectives:
1. Developing policies and standards for the administration of the agency's Adoption Service Program.
2. Placing children in adoptive homes, as appropriate.
3. Provide social services to all parents (married or unmarried) who seek help in making adoptive plans for their children.
4. Providing as requested by the court, social information on independent adoption petitioners.
5. Licensing private agencies which provide a program of adoption services.

DHS
146823

6. Serving as a consultant to agencies providing adoption services, as well as agencies interested in developing an adoption program.
7. Recommending legislation which will further protect the child, the biological parents, and the adoptive parent(s).
8. Providing interpretation to the community of good adoption practice from both a legal and a child behavior perspective.

To expedite adoptions, MDHS has completed a Memorandum of Understanding with the Mississippi School of Law and the University of Mississippi as mentioned in the PIP. The schools are assisting MDHS to provide swift services to families wishing to adopt. The law schools have finalized about 60 adoptions.

A tracking system was developed and implemented this year by the Placement Unit to track Termination of Parental Rights packets submitted from the county offices to the State Office, the Attorney General's Office and then to the appropriate court. Also, a tracking system was developed and implemented this year by the Placement Unit to track the adoption finalization of children whose parental rights had been terminated. These things were developed to help ensure that permanency gets achieved for these children.

Reports from MACWIS are being utilized to monitor ASFA compliance to achieve permanency for children who have been in custody for 15 or more of the past 22 months.

**Child Protection Services** — These services include those services that are court-ordered for supervision of the child in his/her home, a relative's home, or in independent living situations, including individual, family, group, or community work that is needed to decrease the risk to the victim. DFCS Family Protection Specialists/Workers investigate reports involving children alleged to have been abused and/or neglected in private home settings or in MDHS licensed facilities. During FY 2005, DFCS received 26,918 reports of suspected child abuse and neglect. The total number investigated was 17,286, which averages 2,243 reports per month.

Family Centered Practice is social work practice in the field of child welfare/child protective services in which the primary and overriding objective and goal is to protect and service the best interests of children by strengthening and preserving families to enable children to live safely at home with their parents or relatives. The scope of services is very consistent with the core principles and values of the social work profession: (1) that every individual has worth and dignity and deserves respect as a human being, and (2) that every individual has a right to self determination. The basic task of child welfare practice is the protection of individual family members, especially children and vulnerable adults, from harm. This task includes protection from harm that occurs as a result of separation from family members. This approach requires that the family be considered as the client, and the social worker's goal is to help the family solve problems so that the children can remain within their homes when possible. Many efforts were made this year to have agency staff embrace the

DHS
146824

Family Centered Practice approach. Several guidebooks were developed through coordination between MDHS-DFCS, the National resource Center for Family Centered Practice & Permanency Planning and the University of Southern Mississippi School of Social Work. These guidebooks developed were: A Training and Guidance Manual-The Mississippi Model of Family Centered Practice, Supervisor's Guide to Implementing Family Centered Practice, Worker's Guide to Family Team Meetings, Family Centered Strengths and Risk Assessment Guidebook, and Guide for Families and Community Partners To Family Centered County Conferences. A Train the Trainer training was conducted for selected staff on December 13-15, 2005. Five days of training was then provided to staff during the months of February 2006 through April 2006.

The Department is responsible for evaluating the allegations of abuse or neglect in which the perpetrator is identified as:
1. a parent
2. a guardian or custodian
3. any person responsible for the child's care and support

Goals and Objectives
The primary goals of child protective services are to:
1. Ensure the safety and well-being of children who have been abused, neglected, and/or exploited.
2. Enable families to recognize behaviors that harm or threaten their children's well-being.
3. Offer services to parents/persons responsible for the care and support of the child to change their parenting patterns to permit independent care of children.
4. Enable children to remain in their own homes. If they are unable to remain in their home, reasonable efforts are made to place them with relatives or in other settings to meet their emotional and physical needs.

Reports from MACWIS are being utilized to monitor: timeliness of service plans being initiated on cases, timeliness of Family Team Meetings, the number of Family Team Meetings and Indian Child Welfare Act (ICWA) contacts.

**Adult Protection Services** — The Mississippi Vulnerable Adults Act of 1986 (Law of 1986, Chapter 468) designated the Mississippi Department of Human Services as the state agency to conduct investigations and/or evaluations pending the receipt of a report that a vulnerable adult is in need of protective services. This responsibility was organizationally assigned by MDHS to the Division of Family and Children's Services. A person may be a vulnerable adult or an adult-at-risk if the following six criteria are met:
1. The individual must be 18 years of age, or older, any minor not covered by the Youth Court Act, eithr by legal marriage or judiciary decree.
2. Present in the State regardless of residence.
3. The element of endangerment must be present, either harm or threatened with harm.

4. The person must be personally vulnerable. An individual subjected to abuse, neglect, or exploitation is personally vulnerable if he or she is unable to manage and care for himself or herself in aspects of everyday living because of physical or mental impairment.

5. The person must be socially vulnerable. A person is socially vulnerable if he or she needs assistance but has no one reliable to assist him or her in meeting basic needs. Socil vulnerability also exists if the person available to help (friends, relatives service providers in a boarding home or adult day-care facility) are neglecting, abusing or exploiting the adult.

6. In addition to meeting all of the above identified characteristics, the individual must be subject to or threatened with one or more of the conditions of endangerment (harm or threatened harm) to meet the requirement of an adult in need of protective services.

These services assist vulnerable adults with meeting their daily living needs. Case supervision, establishment of conservatorships, and other services decrease the likelihood of risk to the adult victim. DFCS has oversight of the Adult Protective Services (APS) program. DFCS' Protection Unit manages the APS program, writes policies and procedures, provides technical assistance to DFCS staff regarding the delivery of protective services for vulnerable adults and upon request, conducts in-service training sessions/presentations for various entities. DFCS social workers investigate reports involving vulnerable adults residing in private settings who are harmed or threatened with harm. Protective services are provided through direct delivery or by referrals to resources within the community. As a last resort, referrals for legal assistance are made to the department's legal division on behalf of vulnerable adults who are determined to be unable to remain in their homes and are in need of the establishment of a conservatorship. DFCS social workers provide a preliminary report, final report, and any other pertinent information on all reports received to the Office of the Attorney General, Public Integrity Division (PID). PID is legally mandated and authorized to focus upon the criminal elements of the investigation and criminal prosecutions of perpetrators of abuse, neglect and/or exploitation of vulnerable adults. DFCS social workers assigned to investigate the various aspects of child protection services also have the responsibility to investigate alleged abuse, neglect and exploitation of vulnerable adults. During the FY 2005, in addition to child protective services investigations, DFCS received 2,098 reports of suspected abuse, neglect and exploitation of vulnerable adults, of which 1,338 were investigated. The number of reports investigated slightly decreased by 1% from FY 2004 to FY 2005.

Goals and Objectives
The primary goals of adult protective services are to:
1. Prevent abuse, neglect, and/or exploitation of vulnerable adults.
2. Protect vulnerable adults who have been abused, neglected, and or experienced exploitation.
3. Provide information and referral services to vulnerable adults/their caretakers/their legal guardians or conservators to change or enhance self-care

DHS
146826

skills or care-giving skills.

4. Enable vulnerable adults to remain in their home/communities and if removed, to be placed in the least restrictive living arrangement.

The following basic principles are used by Family Protection Specialists/Workers to guide in planning Adult Protective Services:

1. Where possible, the adult participates in making the decision as to the services to be provided.
2. The adult is helped to "remain in the community" as long as possible after hospitalization or protective care.
3. Legal action is requested if the adult is in need of protective services, lacks the capacity to consent, has no responsible relative or friend to act act on his/her behalf. The inability of a person to direct his/her affairs is not necessarily permanent.
4. The action taken is the least restrictive available alternative consistent with the individual needs.
5. Adult services are to be directed toward preventing the deterioration and crisis that result in abuse, neglect, and exploitation. Family Protection Workers are especially sensitive to stressful conditions that may be improved by outside intervention.

Reports from MACWIS are being utilized to monitor investigations being initiated timely and completed within specified timeframes.

During the 2006 Mississippi Legislative regular Session, it was determined that family and Children's Service will no longer bear the responsibility of providing both child and adult protective services to the residents of Mississippi. The bill that passed effective July 1, 2006, requires Adult Protection to be transferred to the Division of Aging.

**Case Management Services** — Services include emergency assistance or short-term help in obtaining services that are needed to provide for the needs for each individual family. These services are not processed on the state level. County staff provides these services.

Case management services are used (1) when the service recipient is not a child in the custody of the Agency or (2) when a family needs short term or emergency assistance. The funds used for these services are appropriated by the County Boards of Supervisors for the county DFCS offices to allocate upon emergency situations to individuals and families in need. Examples of the use of such funds are emergency food orders, utility bills, and medication. Some county boards designate part of these funds as "Adult Funds" or "Elderly Funds" to be used only for needy adults.

Activities may include:

1. Individual and/or group sessions to explore needs and potential of individuals or families.

DHS
146827

2. Provision of necessary or reports to other agencies or providers of service.
3. Arrangement for and follow-up on the delivery of other needed services.
4. Transportation of the client as necessary to receive needed services.

**Interstate Services** — Interstate services are provided to children and youth who are eligible for the services under the Interstate Compact on the Placement of Children Act that was drafted in the 1960's. The Compact has since been adopted in all 50 states, the District of Columbia, and the U.S. Virgin Islands. The Mississippi Legislature adopted the Compact in 1976. The purpose of the Compact is to ensure that children placed out of state are provided the same protections and services that would be provided if they remained in their home states. In addition, the ICPC Act also assures that children will be returned to their original jurisdiction if out of state placements prove not to be in their best interest. The Compact applies to four types of situations where children may be sent to other states:

1. Trial placement prior to an adoption.
2. Out of state foster care placements.
3. Placements with parents or other relatives when parents or relatives are not making the placement.
4. The placement of children who have been adjudicated delinquent and are in need of institutional care in other states.

The Division of Family and Children's Services employs a Compact Administrator, and a Deputy Compact Administrator who are responsible for administering Compact services. All requests for ICPC services are routed to the Compact Administrator's office for distribution and assignment to the county level.

Objectives under the Interstate Compact on the Placement of Children and interstate Compact on Juveniles call for the study and evaluation of social situations, provision of transportation, and related activities as necessary.

Interstate Services provide assistance to other States in obtaining home evaluations, assessments, supervision, and transportation for children placed in the custody of the MDHS. Objectives under the Interstate Compact on the Placement of Children and the Interstate Compact on Juveniles call for the study and evaluation of social situations, provision of transportation, and related activities as necessary.

This service is used when (1) the service recipient is a child and the only service to be provided relates to the activities as listed under the Interstate Service for Children; (2) the service recipient is a child receiving another service, i.e. Placement Service, but who is also involved in activities related to Interstate Service Children; or (3) the service recipient is an adult resident of the State of Mississippi for whom the only service provided is Interstate Services for Children on behalf of a child who is a non-resident of Mississippi.

DHS
146828

Activities include:
1. Home investigations/evaluations.
2. Supervision of placements.
3. Reports required by or provided to duly authorized organizations, agencies and individuals.
4. Transportation (other than Transportation/CWS) as necessary to receive other services.
5. Also includes, as needed, activities identified in Case Management.

**Family Preservation Services** — These services provide intensive home-based services to families whose children are at imminent risk of being removed from their homes. The concept of Family Preservation and support for families continues to be an integral part of the Division's array of services. These services include Time-Limited Reunification, parenting skills, life skills, homemaking skills, money management, housing, child care, utility assistance, therapeutic intervention, and other support services that will eliminate the removal of the child or assist in returning the child to the home.

Goals and Objectives
To improve family functioning and prevent the need for out-of-home child placement, the Family Preservation program has established the following objectives:
1. To provide crisis intervention to troubled families.
2. To conduct thorough assessments of child and family functioning.
3. To aid clients in locating and accessing concrete services (housing, clothing, food, etc).
4. To provide family therapy with a focus on parental self-control, child management, communication, and problem-solving techniques.
5. To provide other necessary therapeutic services as indicated (marital therapy, depression treatment, etc).
6. To evaluate program efficiency and consumer satisfaction.

**Placement Services** — Placement Services is a child welfare service provided for children placed in the custody of the Department of Human Services/Division of Family and Children's Services as a result of a judicial determination or written request of the legal guardian. The child shall be provided out of home care which gives special consideration to the child's health, safety and well-being, and also gives priority to placement of a child with relatives or in the most suitable and least restrictive setting for a planned period of time, during which targeted case management and other treatment services shall be provided to the child's parents/relatives.

These services are provided to children placed in custody to receive initial and ongoing assessments of their permanent plans while providing a safe, stable, and nurturing environment for that child or children. The permanent planning includes the individual, family, and community working together to decrease the likelihood of further risk to the victim.

Types of placement resources include:
1. Emergency Shelter
2. Relative Placement
3. Foster Care Placement

**Foster Care Review** – All children in the custody of DFCS must have a case review, including a county conference, during every six month period of custody. The six-month reviews are mandated by state and federal law for all foster children. The purpose of the review is to advance the goal of getting children out of foster care and into permanent homes. Such permanency may be achieved by reunifying foster children with their parents, placing them with relatives or by placing them with resource families.

The review conference includes items for discussion which detail what the agency staff must do and what the child's parents must do to achieve the permanency plan of each individual foster child. During the course of the case review, the Foster Care Reviewers report issues of concern that may affect the care the child receives while in the state's custody. These issues of concern are reported to the Foster Care Review Program Administrator Senior who provides a written report of the issues to the Director of the DFCS who then addresses these issues with the Regional Director responsible for the county where the issues are a concern.

During FY 2006, the Foster Care Review Program conducted 3,977 county conferences and case reviews statewide. The Foster Care Review Program also conducted quality assurance reviews on a sample of three foster care cases per month, per region. The results of the reviews are reported quarterly to the agency's senior management in an effort to provide statistical information that is relevant to the particular needs of each program or region of the state.

Twelve specialized State Office reviewers facilitate Foster Care Reviews throughout the State, including county conferences. At these conferences, family members and other individuals concerned with the child's future are invited to offer input into making plans and measuring progress. Reviewers' notes from these conferences are sent to the court of jurisdiction. In addition, reviewers make written determinations – in accordance with federal guidelines – about the quality of care the agency is providing to the foster children. The reviewers also provide data to the State Office, where both summary and comparison reports are compiled. These reports measure the quality of the foster care services delivered by the agency in each of the nine regions and offer an opportunity for focusing on performance improvement in targeted regions or cases.

Activities include:
1. Placing the child
2. Transporting the client, as necessary, for placement or to receive other needed services.

**DHS**
**146830**

3. Counseling with the parent or other responsible relative or person to improve home conditions and enable the child to return to his/her own home or family setting.
4. Supervising the child in his out of home placement to ensure safety.
5. Supervising the child during trial placement in their own home or a relative home to ensure safety.
6. Arranging for and follow-up on the delivery of other needed services to ensure that the child's medical, dental, psychological, and educational needs are met.
7. Developing a concurrent permanency plan for the child and implementing the plan.
8. Reviewing and reassessing the plan periodically for progress.
9. Other activities as needed.

Reports from MACWIS are being utilized to monitor: that children in foster care are being seen monthly, the length of time children are placed in emergency shelters, and the number of placements for children in custody.

**Prevention of Abuse and Neglect Services** — These are prevention services that are provided to families that are not court-ordered but are cases where supervision is needed to assure safety and to prevent abuse or neglect from occurring. These services may include the individual, family, or community working together to decrease the likelihood of risk to the victim.

The services listed below are used when there is no court ordered supervision, and the service recipient is the adult caretaker of a child or children not in Agency custody, or is a child not in Agency custody for whom there is no adult caretaker, or the service recipient is the adult caretaker of a child receiving court ordered Protection Services, or Placement Services. These activities include:

1. Handling of information given by case member or community persons to ensure the safety of the children and prevention of abuse/neglect.
2. Discussing with the parent, child or other knowledgeable persons, as appropriate, to determine the factors which may contribute to the neglect or abuse of the child.
3. By observing and studying of the caretaker's and/or child's social situation and living environment an accurate assessment is done to provide for better intervening planning.
4. Sharing knowledge gained with the caretaker and/or child as appropriate as a way of identifying the problems and gaining trust and cooperation in their solution.
5. Case planning with the caretaker and/or child, or other significant persons, as appropriate, to give advice and guidelines in such relevant areas as child rearing, age and sex appropriate developmental needs of a child, socialization and personal interaction skills, employment counseling, family of independent living, health maintenance, nutrition, preparation of foods, income management, and general household management.

DHS
146831

6. Supporting the caretaker in efforts to make improvements in parenting patterns; supporting of a child, when appropriate, in efforts toward self-sufficiency, self-maintenance, and independent living, to include arranging for and follow-up on Maternity Home Care Service, if needed.
7. Arranging for purchasing services including all support services needed and available.
8. Referring clients to other agencies and providers as needed and assisting with helping the client to access those services.
9. Transportation of the client as necessary, to receive other needed services.
10. Also, includes, as needed, activities in Case Management.

Reports from MACWIS are being utilized to monitor investigations being initiated timely and completed within timeframes.

**Support Services** — Support services are those services needed, in addition to the worker direct service, which will aid the client in removing barriers to attaining the goal, such as support services needed to aid in the prevention of neglect or abuse.

Services include but are not limited to personal needs, medical needs, mental health/counseling needs, independent living services, adult support services, transportation, information and referrals, and agency support.

Personal needs include:
1. Initial clothing – bought for a child upon entry into custody.
2. Child clothing – bought on an as needed basis.
3. School supplies, tutoring.
4. Housing, rent, utilities.
5. Home improvement.
6. Emergency housing (motel, shelter).
7. Homemaker.
8. Food.
9. Special allowances (birthday, holiday).
10. Personal hygiene needs.
11. Transportation.
12. Child care.
13. Other unmet needs.

Medical needs include:
1. Initial medical – completed on all children entering custody.
2. Unmet needs for hospital, doctor, dentist, nurse, medical technician – when these needs are not paid by Medicaid.
3. Private sitter.
4. Home health care.
5. Hospice care.
6. Maternity home care.
7. Therapeutic services.

FY Year 2006 Mississippi APSR                                                         47

8. Prescription glasses.
9. Prescription drugs/medication.
10. Hearing aids.
11. Immunizations.
12. Other unmet medical needs.

Mental Health/Counseling needs include:
1. Psychological evaluation.
2. Psychiatric evaluation.
3. Testing/therapy/treatment
4. Individual counseling.
5. Family counseling.
6. Substance abuse counseling/treatment.
7. Other counseling services.

Independent Living services include:
1. Skills group training.
2. Conference/retreats.
3. Stipends – senior year, graduation, college bound, start-up, personal enhancement.
4. Newsletters.

Adult Support includes:
1. Housing, utilities for vulnerable adults.
2. Emergency housing (motel, shelter).
3. Substance abuse counseling/treatment.
4. Mental Health services/adult.
5. Adult day care.
6. Medical care – drugs, medications, prescription glasses, etc.
7. Other adult needs.

Referral services include:
1. Housing/shelter.
2. Energy assistance (utilities).
3. Health/Education Services.
4. Treatment/Rehabilitation Services.
5. Legal Services.
6. Domestic Violence.
7. Crisis Counseling.
8. Home Extension Services.
9. Civic/church groups.
10. Veteran/military services
11. Other referral services.

Agency support services include:
1. Family Preservation services.

DHS
146833

2. Homemaker services.
3. Parent aid services.

**Independent Living Services** — MDHS/DFCS is the agency responsible for administering the Chafee Foster Care Independent Program (CFCIP) and the Educational Training Vouchers (ETV) Programs. The Independent Living Program utilizes a contracting agency, Southern Christian Services for Children and Youth (SCSCY), which is known for Providing Resources, Education and Preparation to Adolescents Reaching Emancipation (PREPARE).

The main goal of the Independent Living Program is to provide youth and young adults in care with an array of services and resources to assist and guide them in making a successful transition to become independent adults.

The Independent Living Program (ILP) helps adolescents acquire basic life skills in their progress toward self-sufficiency. Youth are eligible for Independent Services based on the following criteria:

1. Youth in care, ages 14 until their 21st birthday, are eligible for all Independent Living Services except for criteria placed on the Educational and Training Voucher Program;
2. Youth who leave custody, ages 18 to their 21st birth. are eligible for Aftercare services until their 21st birthday;
3. Youth who enroll in post secondary educational and vocational programs may be eligible based on the criteria from the Educational and Training Voucher (ETV) Program.
4. Youth in care, ages 14 until their 21st birthday, are eligible for all Independent Living Services except for criteria placed on the Educational and Training Voucher Program.
5. Youth who leave custody, ages 18 to their 21st birthday, are eligible for Aftercare services until their 21st birthday.
6. Youth who enroll in post secondary educational and vocational programs may be eligible based on the criteria from the Educational and Training Voucher (ETV) Program.

All Youth must have the opportunity to participate in independent living preparations, without regard to the youth's permanent plan. Refusal by the youth to participate is not a valid reason for non-participation. Independent Living Services are mandatory and not optional for all youth in care who are at least 14 years old or less than 21 years old. All youth in care are eligible and appropriate to receive Independent Living Services, based on the child's best interest. Some services are provided through a contractual agreement to include Life Skills Training, Retreats, youth Conferences, and other services deemed appropriate. The Mississippi Band of Choctaw Indian Tribe youth are eligible for Independent Living Services based on the same criteria for MDHS youth in care.

**Concurrent Permanency Planning**—These services are provided to children to reduce and eliminate delays in establishing permanency and/or finding permanent homes for children in custody. The goals for permanency planning remain the same: to return children to a safe home environment with their natural parent(s) as soon as possible, reduce multiple placements of children in custody, prevent the unnecessary separation of children from their families, and to expedite Termination of Parental Rights (TPR) referrals so children (who cannot return to their natural families) can be adopted. The caseworker implements concurrent permanency planning at the time the child is placed in foster care. The caseworkers are able to determine earlier the prognosis of reunification and at the same time develop an alternate plan to achieve permanency for the child.

Goals and Objectives:
The goals of concurrent permanency planning are:
1. Prevent a child from being unnecessarily removed from his/her home.
2. Enhance safe, well-being and permanency for children at home or in out-of-home care.
3. Empower and enable families to accept responsibility for adequately protecting and effectively caring and planning for their children and themselves.
4. Reduce trauma and emotional damage to children resulting from separation, unresolved losses, multiple placements, feelings of uncertainty, instability, sense of failure, feeling unloved and unwanted, and the sense of abandonment.
5. Provide services which will enable children to become responsible, accountable and productive citizens.
6. Reduce the number of children being taken into custody and maintained by the state in foster care.
7. Achieve timely or early permanency for children through reunification, adoption or durable legal custody.
8. Decrease children's length of stay in foster care.
9. Reduce the number of moves (placement) children experience while in care.
10. Maintain continuity in children's family and sibling relationships.
11. Develop a network of individuals, agencies, resources, and services that can work toward reunification and timely permanency.

**Safe and Stable Families Programs**
Mississippi continues to comply with the Adoption and Safe Families Act by conducting 15- to 22-month reviews in each county. MACWIS generates a listing of children who are not in compliance. After each 15-month review of the child's case, appropriate action must be taken. Submission of the TPR packet is required or a court order is required that cites compelling reasons as to why it is not in the best interest of the child to issue a TPR. As previously stated, a TPR tracking system is being utilized to keep up with the status of TPRs submitted to the State Office. The County Office is required to complete diligent searches and reasonable efforts to

DHS
146835