# APPENDIX

Appendix A

Training Schedule

| No. | Dates | Name Of Training | Location |
|---|---|---|---|
| 1. | June 1, 2005 | Regional TNG. –Intake & Investigation | Regional Office |
| 2. | June 3, 2005 | Regional TNG. –Intake & Investigation | Regional Office |
| 3. | June 6, 2005 | Regional TNG. –Intake & Investigation | Regional Office |
| 4. | June 7, 2005 | Regional TNG. –Intake & Investigation | Regional Office |
| 5. | June 23-24, 2005 | MPPN Conf. | Biloxi, MS |
| 6. | September 12-15, 2005 | Beyond Finding Words | Gulfport, MS |
| 7. | September 19-23, 2005 | Finding Words MS | Clinton, MS |
| 8. | September 21-23, 2005 | New Eligibility Process TNG. | |
| 9. | September 22, 2005 | Eligibility Demo | Jackson, MS |
| 10. | October 10, 2005 | Fact Conference | Tupelo, MS |
| 11. | November 22, 2005 | DFCS Word TNG. | Jackson, MS |
| 12. | December 2, 2003 | DFCS MACWIS Navigation TNG. | Jackson, MS |
| 13. | December 13-15, 2005 | Family Team Meeting: Train the Trainer | Jackson, MS |
| 14. | December 20, 2005 | Word & Outlook TNG. | Jackson, MS |
| 15. | January 23-27, 2006 | MACWIS Field Staff Train the Trainer | Jackson, MS |
| 16. | January 30, 2006 | Family Team Meeting: Train the Trainer | Jackson, MS |
| 17. | January 31-Feb. 2, 2006 | MACWIS Train the Trainer | Jackson, MS |
| 18 | February 6-9, 2006 | MACWIS Field Staff Train the Trainer | Jackson, MS |
| 19 | February 13, 2006 | Family Centered Practice (Module 1) | Leflore Co. |
| 20. | February 13-15, 2006 | MACWIS Field Staff Train the Trainer | Jackson, MS |
| 21. | February 16, 2006 | Family Centered Practice (Module 1) | Leflore Co. |
| 22. | February 16-17, 2006 | Family Centered Practice (Module 1) | Lee Co. |
| 23. | February 22, 2006 | Family team Meeting: FCP | Jackson, MS |
| 24. | February 23, 2006 | Family Centered Practice (Module 1) | Regional Office |
| 25. | February 23, 2006 | Family Centered Practice (Module 1) | Meridian, MS |
| 26. | February 24, 2006 | Family Centered Practice (Module 1) | Meridian, MS |
| 27. | February 24, 2006 | Family Centered Practice (Module 1) | Regional Office |

| 28. | March 2&3, 2006 | Family Centered Practice (Module 2) | Hinds Co. |
|---|---|---|---|
| 29. | March 2&3, 2006 | Family Centered Practice (Module 2) | Lee Co. |
| 30. | March 9&10, 2006 | Family Centered Practice (Module 2) | Leflore Co. |
| 31. | March 16, 2006 | Putting the Puzzle Together | |
| 32. | March 20&21, 2006 | Family Centered Practice (Module 3) | Leflore Co. |
| 33. | March 23&24, 2006 | Family Centered Practice (Module 3) | Lee Co. |
| 34. | March 27-31, 2006 | MACWIS Field Staff Train the Trainer | Jackson, MS |
| 35. | April 19, 2006 | Family Centered Practice- ASWS TNG. | Oxford, MS |
| 36. | April 20, 2006 | Family Centered Practice- ASWS TNG. | Hinds Co. |
| 37. | April 25, 2006 | Hotline Staff TNG. | Jackson, MS |
| 38. | May 2, 2006 | MACWIS Overview | Jackson, MS |
| 39. | May 8-12, 2006 | MACWIS ASWS Refresher TNG. | Jackson, MS |
| 40. | May 15-19, 2006 | MACWIS Regional Director Refresher TNG. | Jackson, MS |
| 41. | June 5-9, 2006 | MACWIS ASWS Refresher TNG. | Hattiesburg, MS |
| 42. | June 19-23, 2006 | MACWIS ASWS Refresher TNG. | Tupelo, MS |
| 43. | June 27, 2006 | MACWIS Foster Care Reviewer Refresher TNG. | Jackson, MS |
| 44. | July 11-13, 2006 | MACWIS Family Protection Worker Refresher TNG. | Tupelo, MS |
| 45. | July 17-19, 2006 | MACWIS Family Protection Worker Refresher TNG. | Tupelo, MS |
| 46. | July 24-26, 2006 | MACWIS Family Protection Worker Refresher TNG. | Tupelo, MS |
| 47. | July 31-August 4, 2006 | MACWIS ASWS Refresher TNG. | Louisville, MS |
| 48. | October 24-26, 2006 | MACWIS Family Protection Worker Refresher TNG. | Jackson, MS |
| 49. | October 30-Nov. 1, 2006 | MACWIS Family Protection Worker Refresher TNG. | Jackson, MS |
| 50. | June 28-29, 2006 | MPPN Conf. | Jackson, MS |

## Appendix B

### DFCS Training System

| Training System | Supervisory Training | Caseworker Training |
|---|---|---|
| Level 1 | **Intensive Training for New Supervisors** | **Intensive Training for new Social Workers** |
| | Current supervisory intensive training curriculum to be evaluated & revised. | Continue intensive 4-week training for all new caseworkers. |
| | Utilize TA to review and make recommendations to strengthen the supervisory curricula. | Continue OJT component of intensive training for new staff. |
| | The ASWS & RD will be trained on the new intensive curricula. | Upgrade intensive by integrating policy and practices changes as outlined in PIP. |
| | The process for training new ASWS and RD will be implemented within a specified timeframe from entering the supervisory position. | |
| Level 2 | **Ongoing Training** | **Ongoing Training** |
| | Based on the CPS Supervisory Training Pilot results and proposal, utilize supervisory learning labs as a model for ongoing supervisory training in all Regions. | Develop and implement curricula & training based on core skills: assessment, case planning, family & community engagement. |
| | Utilize the Child Welfare Training Institute (CWTI) to support Regional supervisory training and to reinforce application of DFCS training in practice. | Develop & implement enhanced OJT component as part of the ongoing staff training for the three skill areas of assessment, case planning, family, and community engagement. |
| | | CWTI continue to provide targeted specialized training. |

# Addendum to Mississippi's FY 2006 APSR

## Collaboration

- **Please provide information regarding the inclusion of agencies, organizations (e.g., the State's Court Improvement Project (CIP) and faith-based and community organizations, Tribes, providers) and individuals in the ongoing Child and Family Services Plan (CFSP) related consultation and coordination process.**

Mississippi began developing its Program Improvement Plan (PIP) prior to receiving the CFSR Final Report. This was based on the statewide assessment and preliminary findings identified during the CFSR Exit Conference. Technical Assistance was provided to Senior Management from the National Child Welfare Resource Center for Organizational Improvement (NCWRCOI) to establish Mississippi's PIP planning process and structure. PIP planning groups were established based on the seven outcomes and seven systemic factors to analyze the CFSR findings and develop solutions and strengths for improvement.

PIP training was provided for DFCS Senior Management in March 2004. Statewide training for the Mississippi PIP was held March 31-April 1, 2004, with technical assistance and training provided by the NCWRCOI for agency staff, community stakeholders and service providers. Over 80 participants were involved. Included among the community stakeholders were state university representatives, child placing agencies, law enforcement, youth court judges, community-based service providers, tribal representatives, and other state agency representatives such as mental health, health, education, and the Attorney General's office.

The training served as a PIP kickoff and initiated the work of the planning groups. The group members were assigned to groups based on their area of interest and expertise. The planning groups were chaired by a DFCS Regional Director and co-chaired by a community stakeholder. The planning groups recommendations were documented in a preliminary PIP outline, discussed at the Senior Management meeting and recommendations were made to the chairperson for further group input. The chairperson resubmitted additional group recommendations for the plan.

The CFSR Final Report was received in May 2004. The report was utilized by the DFCS State planning groups to re-evaluate group recommendations for the PIP. With the assistance of an outside consultant, group recommendations were drafted into a preliminary PIP. This document was provided to the chairperson to share with group members for review and feedback. This was to ensure statewide input into the PIP development and to gain support from community stakeholders in implementing strategies to improve outcomes.

Mississippi's proposed PIP was approved, effective April 2005. Two Quarterly PIP Progress Reports were completed and submitted to the ACF Regional Office – one in

DHS
146914

July 2005 and one in September 2005. On August 29, 2005 Hurricane Katrina struck the Mississippi Gulf Coast causing widespread devastation. Mississippi requested and was granted a one year extension on its PIP – moving the PIP completion date from March 2007 to March 2008. The submission of the Quarterly PIP progress Reports was suspended, pending a renegotiation of Mississippi's PIP.

Mississippi's PIP was renegotiated during an on-site visit by ACF personnel during the three-day period January 31-February 2, 2006. In addition to ACF personnel, participants in the renegotiation process included DFCS Senior Management, DFCS State Office staff, and community stakeholders.

- **Please include a description of the activities in the ongoing process of coordination and collaboration efforts conducted across the entire spectrum of the child and family service delivery system. This should include stakeholder or partner involvement in the review of progress made and updates for the coming year.**

Train the Trainers for "Responding to the Call" is scheduled for June 2006. This training will pair resource parent(s) with Licensure or Adoption staff. This training is based on developed curricula to improve the response to potential foster and adoptive parent inquiries.

- **Please provide a description and evidence of collaboration between child welfare and the State courts in developing and/or implementing their State plans or ACF-approved PIPs, as well as a plan for future activities between the parties. (There is probably information in the MS PIP reports that will satisfy this requirement)**

The plan is for the Title IV-E Permanency Hearing report to be developed and implemented. Permanency Hearing Reports will be sent directly to Youth Court Judges on a monthly basis beginning in June 2006. Quarterly meetings between DFCS and the Chief Justice are scheduled to begin in May 2006. Meetings with the Chief Justice and the two courts will be held to collaborate on ensuring compliance and successful performance of MDHS/DFCS.

DFCS' plans include identifying conferences and/or training opportunities to provide presentations, and training opportunities for Judges and court personnel in order to develop collaborative relationships.

By November 2006, DFCS will develop and submit articles related to child welfare practice for the Quarterly Newsletter and the Bar Association Journal which is utilized by court personnel.

We will establish a State Level Task Force in collaboration with CIP to identify ways to address legislative issues impacting DFCS, AG's Office and the Courts by July

DHS
146915

2006. One of the responsibilities of the task force will be to draft recommendations regarding possible legislative changes such as improvement to the Foster Care Review statutory process.

- **Accordingly, by August 1, 2006, State agencies must submit an addendum to their APSR to the ACF RO that will provide a description and evidence of collaboration between them and the State courts in developing and/or implementing their State plans or ACF-approved PIPs, as well as a plan for future activities between the parties.**

Mississippi Division Director, Rickie Felder, and Field Operations Director, Karla Steckler, met with the Chief Justice and staff on May 16, 2006, where dates were established for speaking engagements at two conferences later in the year. The two conferences are the Mississippi Youth Court Judges and Referees Conference and the Mississippi Chancery Court Judges Conference.

The Permanency Hearing Reports are being provided to the County Youth Court Judges. Copies will be provided to Youth Court Referees at a later date. Correspondence from Rickie Felder was sent to the Judges outlining information about the reports and the consolidation of the nine DFCS regions to seven. A map of the new regions and contact information was also provided to the Judges.

Discussion centered on the National Resource Centers (NRCs) and the services they could provide such as training, educational materials, and technical assistance. It was decided to include the NRCs at the Mississippi Youth Court Judges and Referees Conference.

Meetings have been scheduled with the Chief Justice and staff on a quarterly basis with plans to continue discussion regarding the Permanency Reports and Permanency Orders. Other items that will be discussed in the future include emergency shelters, services available for delinquent youth, the use of contracts for shelters and group homes in providing services for difficult cases, the variation in rulings for counties by the Youth Court Judges, and the lawsuit that MDHS/DFCS is involved in. We will be offering to collaborate with the courts to advocate to the Legislature for funding for Youth Courts.

## CAPTA
- **Please provide updates of the program areas selected for improvement from one or more of the 14 program areas set forth in section 106(a) of CAPTA;**

The program area that MDHS/DFCS has selected for improvement is #1 which involves the intake, assessment, screening and investigation of reports of abuse and neglect.

3

Following the Child and Family Services Review (CFSR), it became apparent that changes needed to be made in the way business was conducted as it related to identifying and meeting the needs of abused and neglected children in the state of Mississippi. Clearly basic changes were needed if we were to successfully address concerns. First of all, the existing policy addressing reporters distinguished between mandated and all other reporters. However once a report was made there were other issues such as:
a) evaluating the reports to determine if it met the legal definition of abuse
b) if abuse or neglect is occurring/ are there safety issues?
c) defining safety issues

Answering these questions would serve a twofold purpose:
a) determine the agency's level of involvement
b) provide a uniform system of for identifying cases needing intervention

A review of the existing Risk Assessment in the MACWIS system was very general and needed more specific data to make critical decisions about the need for intervention. Another area of concern was the timeframe involved in conducting the initial assessment. It was critical to establish timeframes in which decisions would be made regarding appropriate action and at what point. Additionally, if a case was opened, timeframes to complete a total assessment and create a case plan with the families were needed.

Existing policies/practice revealed a need for streamlining (tweaking) to insure consistency statewide. As it stood, data showed inconsistencies in determining if a report was inappropriate or appropriate for investigation even with the existing policies. In some counties, reports were investigated while in others, they were ruled inappropriate. These decisions however were being made based on the information received by the Intake Worker. This clearly was disturbing. because in many instances insufficient information was being obtained to allow the First Level Reviewers (Supervisors) to make informed decisions. Given the volatility of some reports, this could prove disastrous for minor children.

This necessitated a review of yet another area, one of developing a tool to aid the Intake Worker in obtaining sufficient information for the supervisor to make an informed decision at the onset. Upon further review of the policies/practice and procedures, it was decided in order to keep children safe, we must:
a) Create a tool to guide the Intake Worker through the process of collecting sufficient data to make informed decisions about the level of intervention needed and to ask questions about the child's heritage (ICWA)
b) Develop a tool to determine Safety Issues
c) Create a tool to adequately assess risk of harm to child, particularly if child remained in their own home

With these new instruments it became necessary to determine some timeframes for completion. It was determined that, given sufficient information, supervisors could

DHS
146917

determine not only the methods of intervention but the response times involved, thus necessitating the institution of a Level system. This system would help supervisors and staff determines which reports needed immediate responses/involving safety issues and those that did not. Given these needs it became necessary to:
a) Revise existing policies to coincide with these instruments/tools and followed Youth Court Laws
b) Develop a practice manual to guide staff through these processes
c) Complete a training document to train staff statewide on procedures and Practices

The Intake, Safety and Screening Committee was convened to address these concerns and to devise a plan to address reports of abuse and neglect from the reporting stage through the entire Safety Assessment phase. To complete this task, the committee met monthly and worked tirelessly with the assistance of the National Resource Center on the following:
a) Intake Screening Tool - gives the Supervisors (ASWS) an initial Classification based on the information in the report. The supervisors are determining at this stage whether the information stated in the report is accurate
b) A Safety Assessment – designed to determine if the child is safe
c) Risk and Strengths Assessment ( completed within 30-days after case is opened) (This tool will be utilized by the Case Planning Workgroup)
d) A Practice Guide
e) Revised Policies

The Intake Committee revised all of the Intake Policy and Practice for Intake Screening and Assessment to quickly identify and intervene in cases involving abuse of minor children. Additionally, close attention was given to insure proper identification of a child's heritage and coordinating services based on tribal affiliations. This question was incorporated on the Intake Screening Tool. The committee also developed policies and practices to facilitate a comprehensive family assessment and access mental health services if needed based on this assessment.

- **Please identify and any changes in activities for FY 2007;**

Activities for FY2007 CAPTA grants include:
1. Provide a positive, safe atmosphere for therapeutic visits with appropriate interaction between the parent(s) and child(ren).
2. Provide educational and support services to parents to assist in improving their basic living skills, prevent the occurrence of abuse/neglect and promote individual growth and development.
3. Recruit a minimum of 100 at-risk families and provide case management services.
4. To provide resource and referral services to a minimum of 100 at-risk families, as needs are identified, with community services which may include but not limited to counseling for adoption, additional health support to the families, job readiness services, educational services (ABE/GED), life management skills training and counseling.

5. Conduct a child neglect and abuse public awareness campaign through local newspaper ads and public services announcements, Family-Centered Programs website page, brochures and workshops for the community on reporting procedures.
6. Educate teen parents on healthy pregnancies and healthy families through monthly support groups that coincide with TLC classes by provide mentors for pregnant teens.
7. Teach conflict resolution skills to clients at the Center and at each school. Hold weekly anger management classes and communicate with parents on a weekly basis, discussing behavior.
8. Educate children in kindergarten and first grade on what abuse is, how to recognize it, and how to report it to trustworthy adults.
9. Give young couples the opportunity to network and grow together, and to provide a neutral ground for open communication.
10. Teach fathers the importance of being involved with their children, and to encourage this by organizing outings once a month for fathers and their children.

Activities for FY2007 CJA Grants include:
1. Work in collaboration with the Center for Prevention of Child Abuse (CPCA) to offer and provide training opportunities to the team members and other professions working as first responders with child abuse victims by:
    (a) Implementing in-service trainings to each of the Multidisciplinary Teams on needs expressed by team members;
    (b) Collaborating with MDHS and CPCA to coordinate the Annual Statewide MDT Networking Conference for MDT members offering CEUs, SWUs, CLEs and other professional disciplines of continuing education for professionals on topics that deal directly with child abuse victims;
    (c) Coordinating two conferences in the northern half of the state for professionals working as first responders with child abuse victims; and
    (d) Promoting training opportunities such as the Mississippi Permanency Partnership Networking Conference and Medical Evidence in Child Abuse to MDT Members that will benefit first responders for child abuse cases.
2. Maintain and strengthen the 43 investigative child abuse review teams in the northern half of the state, facilitating the relationships between Law Enforcement, MDHS, District Attorney's Office, Children's Advocacy Center, and other service providers deemed appropriate by individual teams to ensure the proper handling of felonious child abuse cases by:
    (a) Continuing the facilitation and maintenance of teams in the northern half of the state, providing support and resources for team members;
    (b) Continuing to serve as a liaison between Law Enforcement, MDHS, and District Attorney, in felonious cases of child abuse, via the MDT meetings and other correspondences between meetings.
3. Maintain and strengthen the 43 teams in the northern half of the state, by identifying an appropriate agency and facilitator to continue the process of team ownership by each county by:
    (a) Identifying appropriate teams for facilitation transfer

    (b) Implementing facilitation training for target teams
    (c) Transfer facilitation of the teams, with quarterly monitoring by DFCS MDT Program Supervisor and/or Coordinators, as well as quarterly monitoring of the teams transferred during prior grant periods
4. Ensure the availability of support services for children of reported child abuse, with priority given to children staffed at MDT meetings and/or referred by MDHS, Law Enforcement, and District Attorney by:
    (a) Providing advocacy (i.e. Court Preparation, Court Accompaniment, liaison with District Attorney, and Law Enforcement, and Crime Victim Compensation Assistance) for victims of reported child abuse;
    (b) Providing professional counseling for victims of report child abuse; and
    (c) Providing forensic interviewing services to MDHS, Law Enforcement, and District Attorney personnel for reported child abuse cases.
5. Offer bi-monthly training to all teams (including developing teams) on topics related to team issues and needs. The CPCA will refer all new team members and all members of new teams to Finding Words forensic interview training as facilitated by the Southwest Mississippi Children's Advocacy Center, in collaboration with the American Prosecutors Research Institute's National Center for the Prosecution of Child Abuse and Corner House. CPCA will collaborate with MDHS/DFCS to offer the CJA Networking Conference in August in Jackson for all statewide Multidisciplinary Teams, offering CEUs, SWUs, CLEs and other professional disciplines. The CPCA will offer a statewide conference in September on the Gulf Coast to all team members to include judges and guardian ad litems. Inform our MDT members of annual conference sponsored by DFCS in the northern portion of the state.
6. Use a statewide protocol developed in conjunction by DFCS for handling child abuse investigations that can be modified for the specifications of each county.
7. Identify four appropriate agencies that have the capability to facilitate their own team and transfer facilitation responsibilities of four teams. Implement facilitation training. CPCA will send a representative to visit transferred teams four times a year to monitor the progress of the team running independently. Transfer of facilitation responsibilities to each county/team.
8. Develop Multidisciplinary teams in the following counties that do not have teams. The CPCA will develop three more teams in the lower half of the state.
9. Provide on-going support to all teams, including identification of teams that are not meeting as scheduled and teams that report problems. Maintain, update, and disseminate a Team Resource Directory containing names, addresses, phone numbers, and professions of members of all MDTs. Continue to facilitate 25 teams that are currently lead by the CPCA. Support and provide additional assistance to teams that are not meeting as scheduled and teams that report problems. Provide law enforcement agencies in each new teams with a list of agency names and telephone numbers that are needed on a regular basis in the investigation and on services available to child victims.
10. Provide forensic interviews for approximately 250 children referred to CPCA as requested by MDT members as part of the investigation and prosecution of felony cases. Provide videotaped interviews and written reports on 250 child victims to

7

DHS
146920

referring agencies, as requested. Cooperate with prosecution and judicial system in the provision of testimony statements during all court proceedings.
11. Provide supportive services for child victims throughout their judicial proceedings as referred by the MDT process. Liaison with the courts to enhance the judicial process by preparing 10 child victims for courtroom testimony and the judicial process by providing a court education (Court School) Program. Enhance prosecution by offering court accompaniment services for child victims.

- **Please describe the training to be provided under the CAPTA State grant as required by Section 106(b)(2)(C) of CAPTA;**

  Training provided at the June 23-24, 2005, Mississippi Permanency Partnership Network Conference and funded by the CAPTA grant included:
  - Project Homestead – Past, Present and Future
  - Marriage 101
  - Watch D.O.G.S. (Dads of Great Students)
  - Cracks in the System
  - Grief and Attachment – What's Normal?
  - Up to the Minute Trauma
  - What's Cooking in Your Neighbor's Kitchen?
  - Children in the Middle
  - Right From Birth/Going to School
  - Dating Violence and Teens
  - Taking the "Dis" Out of Disability
  - Why Can't We Talk?
  - OrganWise Guys – Nutrition
  - Kidnapping – Keeping Our Children Safe
  - Foster and Adoptive Parent Boot Camp
  - Multidimensional Treatment Foster Care
  - Filling the Empty Bucket – Nurturing Children and Ourselves
  - Scared Straight Program

- **Please provide an explanation of the substantive changes, if any, in State law that could affect eligibility, including an explanation from the State Attorney General as to why the change would, or would not, affect eligibility (Section 106(b)(1)(B)).**

  We are not aware of any changes of State law that would affect eligibility.

- **Please provide a copy of the annual report(s) from the three citizen review panels and a copy of the State agency's most recent response(s) to the panels and State and local child protective services agencies, as required by Section 106(c)(6) of CAPTA;**

8

DHS
146921

### Child Fatality Review Team

The MDHS-Child Fatality Review Team (CFRT) was formed in May 2005, to review child fatality investigations conducted by DFCS direct services workers. The review team is comprised of DFCS State Office staff from the Adoption, Licensure-Foster Homes, Licensure-Facilities, Training, Family Preservation, and Protection Units. The goal of the team is to decrease the number of child fatalities related to child abuse and neglect. During FFY 2005, the review team held three (3) meetings and conducted four (4) child death investigation reviews. Only one (1) of the four (4) child death reviews conducted was evidenced for neglect. This fatality was due to DUI. The result of the reviews conducted produced zero recommendations by the Child Fatality Review team in regards to policy or practice during FFY 2005.

The objectives of the CFRT are as follows: (1) Review final investigations of child fatalities investigated by MDHS-DFCS; (2) Make recommendations to the DFCS Division Director, in regard to reviews; (3) Make recommendations to the DFCS Division Director, in regard to changes in policy, procedures, practice and legislation, as deemed necessary by the team or as directed by the MDHS/DFCS executive administration staff; (4) Provide an Annual Report of findings, recommendations, and determinations to the DFCS Division Director for inclusion in the Title IV-B Plan.

During SFY '06, the review team held seven (7) meetings, and conducted sixteen (16) child fatality investigation reviews, twelve (12) of which were evidenced by MDHS/DFCS as due to abuse and/or neglect.

Recommendations to DFCS Division Director for inclusion in the Title IV-B Plan: are as follows:
(A) Via the training unit and regional directors, emphasize the following to staff:
   *In MACWIS, under the **"Recommendation Tab,"** always make a recommendation or state that there is no recommendation for services.
(B) Make the following recommendations to the Program Improvement Plan (PIP) workgroups:
   1) Screened out reports be linked to investigations for tracking in MACWIS.
   2) Reiterate compliance with policy regarding making home visits/contacts on active cases.
   3) Reiterate the need to document recommendations and/or referrals, particularly grief counseling.
   4) Formulate a "Child Fatality Investigation Checklist" for workers to utilize on child death investigations and clarify the department's role in a child death investigation (i.e., assess the risk of harm to other children in the home).
   5) For consideration: Change terminology from "investigate" to "assess" on child death investigations for the purpose of clarifying MDHS' role.
   6) If a deceased child has a sibling(s) whose family moves to another state or county while under investigation by MDHS or there is an open case, send a Child Protective Service Alert to the appropriate state/county.

DHS
146922

For FY '06, the MDHS – Child Fatality Review Team developed new procedures for conducting child fatality investigation reviews. The revised procedures were forwarded to Rita Graham, Policy Coordinator, to be reviewed and disseminated to the policy workgroups. The revised procedures included (1) the **Selection Criteria** to review all cases with any prior report/history of abuse/neglect, and review all evidenced abuse and/or neglect child death investigations conducted by MDHS; (2) **Review Tool** to use one group Review Tool per child death review; (3) **Focus** on the review of the child death investigation only and the subsequent recommendations; (4) forward the team's recommendations to the DFCS' Policy Coordinator for presentation to the Program Improvement Plan (PIP) workgroups for review and implementation into the Policy and/or the Practice Guide. The final recommendations are provided to the DFCS' division director for approval.

Research is being conducted by the Protection Unit Director for suggestions and directions on how to become effective and proactive in educating the community, stakeholders and DFCS staff regarding child fatalities.

Members of the Child fatality Review Team include:

1. Sam L. Howell
   Mississippi Crime Laboratory/State
   601-987-1631
   Medical Examiner Office, Director
   1700 East Woodrow Wilson Avenue
   Jackson, Mississippi 39216
   (e-mail: showell@mcl.state.ms.us)

2. Dr. Elizabeth Christ
   University of Mississippi Medical Center
   601-815-8173
   2500 North State Street
   Jackson, Mississippi 39216
   (e-mail: echrist@ped.umsmed.edu)

3. Sue M. Perry
   Attorney General's Office
   601-359-2210
   450 High Street
   Jackson, Mississippi 39202
   (e-mail: sperr@ago.state.ms.us)

4. Hazel Gaines, RN
   University of Mississippi Medical Center
   601-815-0115
   Medical Mall
   350 West Woodrow Wilson
   P.O. Box 4203
   Jackson, Mississippi 39296
   (e-mail: hgaines@ped.umsmed.edu)

DHS
146923

5.  Rex McCord          The Compassionate Friends
                        601-878-9339
                        2485 Tank Road
                        Terry, Mississippi  39170
                        (e-mail:  rexorfaye@bellsouth.net)

6.  Faye McCord         The Compassionate Friends
                        601-878-9339
                        2485 Tank Road
                        Terry, Mississippi  39170
                        (e-mail:  rexorfaye@bellsouth.net)

7.  Leslie Threadgill   Mississippi SIDS Alliance, Inc.
                        601-573-1458
                        P.O. Box 2170
                        Madison, Mississippi  39120
                        (e-mail:  lesliethreadgill@bellsouth.net)

8.  Judy Moulder        Mississippi Department of Health
                        601-576-7817
                        Health Statistics
                        P.O. Box 1700
                        Jackson, Mississippi  39215-1700
                        (e-mail:  jmoulder@msdh.state.ms.us)

9.  Dr. Steven Bigler   University of Mississippi Medical Center
                        601-984-1530
                        Pathology- Interim Chair
                        2500 North State Street
                        Jackson, Mississippi  39216-4505
                        (e-mail:  sbigler@pathology.umsmed.edu)

10. Dedria Mitchell     University of Mississippi Medical Center
                        601-984-1890
                        Morgue Services Manager
                        2500 North State Street
                        Jackson, Mississippi  39216-4505
                        (e-mail:  dmitchell@pathology.umsmed.edu)

11. Tami H. Brooks, MD  Batson Children's Hospital North Pediatric Clinic
                        601-815-5321
                        5965 I-55 North
                        Jackson, Mississippi  39213
                        (e-mail:  tbrooks@njpeds.umsmed.edu)

DHS
146924

12. Lt. John R. Neal

Ridgeland Mississippi Police Department
601-856-5210
115 West School Street
Ridgeland, Mississippi 39157
(e-mail: john.neal@ridgelandms.org)

13. Jimmy R. Houston, Chief

Ridgeland Mississippi Police Department
601-853-2014
115 West School Street
Ridgeland, Mississippi 39157
(e-mail: jimmy.houston@ridgelandms.org)

14. Ann Leach

Mississippi Department of Health
601-576-7746
Health Statistics
P.O. Box 1700
Jackson, Mississippi 39215-1700
(e-mail: aleach@msdh.state.ms.us)

15. Patti Marshall

Office of the Attorney General
601-359-4243
P.O. Box 220
Jackson, Mississippi 39205-0220
(e-mail: pmars@ago.state.ms.us)

16. Stephanie Baskin

Mississippi State Medical Examiner Office
601-987-1440
1700 East Woodrow Wilson Avenue
Jackson, Mississippi 39216
(e-mail: sbaskin@mcl.state.ms.us)

17. Diana Joiner

Mississippi State Medical Examiner Office
601-987-1669
1700 East Woodrow Wilson Avenue
Jackson, Mississippi 39216
(e-mail: djoiner@mcl.state.ms.us)

18. Rickie Felder

Mississippi Department of Human Services
601-359-4999
Division of Family and Children's Services
750 North State Street
Jackson, Mississippi 39202
(e-mail: rfelder@mdhs.state.ms.us)

19. Gary Hargrove

Coroner- Harrison County, Mississippi
228-865-4290

|  |  |
|---|---|
|  | P.O. Box 4036<br>Gulfport, Mississippi 39503<br>(e-mail: coroner@co.harrison.ms.us) |
| 20. Anita Bell-Muhammad | Mississippi Department of Human Services<br>601-359-4486<br>Protection Unit Director<br>750 North State Street<br>Jackson, Mississippi 39202<br>(e-mail: abell-muhammad@mdhs.state.ms.us) |
| 21. Jamie Seale | 5195 Water Ridge Drive<br>662-842-3174<br>Tupelo, Mississippi 38801<br>(e-mail: jsseale@bellsouth.net) |

### Children's Justice Act (CJA) Task Force
### PROJECT OBJECTIVES

The Statewide MDT Network has been the focus for CJA efforts since the fall of 1999. Certainly, the development and expansion of the MDT approach is the core of the program. However, it is now time to begin to look beyond just the MDT project and embrace the full range of efforts needed to establish a truly comprehensive case handling system for the abused children of Mississippi. There is more that needs to be done to compliment and augment the MDT Network. The presence of sufficient numbers of properly trained professionals to investigate these cases, both verbally and physically, is as crucial as having the appropriate investigative structure in place. The MDT continues to provide the most effective investigative structure within which to handle these cases, but it is only a piece of the larger composition needed to fully serve the child victim. To that end, the following objectives are proposed for the FY 2006 CJA grant year:

1) The Task Force will continue to contract with Family Crisis Services of Northwest MS and the Center for the Prevention of Child Abuse, Inc., for the continued development of the Statewide Network. Both contractors have satisfactorily met the goals of the project to date and will most likely exceed the objectives identified in the application of FY 2005.

2) Expand the Statewide Multi-disciplinary Child Abuse Team Network to achieve review team presence in 100% of the eighty-two counties in Mississippi.

3) Continue provision of the two day specialized training in forensic interviewing skills development that has been in service since 2000. Now, this specialized training will become the pre-requisite for attendance to the full training described in item four on page 18 under Outcomes of CJA Activities and Projects.