

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Marisol A. v. GiulianiS.D.N.Y.,1998.Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Marisol A., et al., Plaintiffs,
v.
Rudolph W. GIULIANI, Mayor of the City of New York, et al., Defendants.
**No. 95 Civ. 10533(RJW).**

May 22, 1998.

MEMORANDUM DECISION
WARD, J.
*1 Plaintiffs seek the intervention of additional plaintiffs, pursuant to Fed.R.Civ.P. 24, and the addition and substitution of next friends, pursuant to Fed.R.Civ.P. 17(c). City defendants cross-move for an order, pursuant to Fed.R.Civ.P. 56(b), dismissing certain plaintiffs and claims, and all of the next friends appearing in this action. For the reasons that follow, plaintiffs' motion to intervene additional plaintiffs, and add and substitute next friends is granted. City defendants' cross-motion for an order dismissing certain plaintiffs and all of the next friends is denied. The cross-motion for an order dismissing certain claims is granted in part and denied in part.

BACKGROUND

This class action was filed in December 1995 on behalf of children who have suffered, and some of whom continue to be at risk of, severe abuse and neglect. The complaint alleges that defendants, who are city and state officials with responsibility for administering and monitoring New York City's Administration for Children's Services ("ACS") (formerly known as the Child Welfare Administration or "CWA"), mishandled plaintiffs' cases and, through action or failure to act, deprived plaintiffs of their rights under the First, Ninth and Fourteenth Amendments to the United States Constitution, the Constitution of the State of New York, and several federal and state statutes. For a full discussion of plaintiffs' claims and the facts underlying them, see the Court's decisions of June 18, 1996 (reported at 929 F.Supp. 662 (S.D.N.Y.1996) (granting class certification and denying defendants' motion to dismiss)), and April 23, 1998 (certifying subclasses), familiarity with which is assumed.

Now before the Court are several motions by plaintiffs and city defendants. Plaintiffs move to intervene additional plaintiffs, and to add and substitute next friends. City defendants move to dismiss certain plaintiffs, next friends and claims. The Court will address each of the motions in turn.

DISCUSSION

I. Plaintiffs' Motions

A. Plaintiffs' Motion to Intervene Additional Plaintiffs

Plaintiffs seek to intervene three additional plaintiffs: Richard and Walter S., by their grandparents and next friends W.N. and N.N., and Danielle J., by her next friend Angela Lloyd.

*Factual Allegations of Richard and Walter S.*

Richard and Walter S. are brothers aged seven and eight years whose case was first investigated and determined to be indicated [FN1] in September 1993. Since that time, they have had at least three different placements.

> FN1. A case is "indicated" when, after an investigation, it is determined that some credible evidence of the alleged abuse or maltreatment exists. 18 N.Y.C.R.R. § 432.1(g).

In April 1994 they were placed in a kinship foster home with their Aunt S. Although the boys initially adjusted well to the placement, their Aunt, who had

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 2

begun to care for an ill relative, ultimately became overwhelmed by it. In March 1996, Aunt S. informed the boys' caseworker that she could no longer care for the children and asked that they be removed. While the boys were living with Aunt S., their mother did not visit them, partake in necessary drug treatment services or plan for their return home. Although the staff at the contract agency which had assumed responsibility for the boys' case realized that it was unlikely that the boys would be able to return home, they took no steps to find a suitable adoptive home for the boys.

*2 In October 1996, the contract agency learned that the S. brothers had spent one night with their mother, Aunt S.'s cousin. Judging that Aunt S. had endangered the children's safety, the contract agency abruptly transferred the S. brothers to a non-kinship foster care home, forcing them to switch schools. The boys did not adjust well and experienced problems at home and at school. Shortly thereafter, the boys' grandparents expressed an interest in taking the children. A home study on the grandparents was not performed until nearly five months later, however. Meanwhile, the boys remained in the foster home and continued to deteriorate.

In November 1996, the contract agency received a report from the boys' school that a man living in the foster home had possibly mistreated the children. No timely efforts were made to investigate this man's background or to determine whether he posed a threat to the boys. The brothers' behavior continued to deteriorate.

In March 1997, defendants received a report that the S. brothers were being abused in their foster home. This report was never properly investigated.

The S. brothers continue to suffer emotional distress as a result of their experience in foster care. Despite repeated requests from their grandparents, ACS has failed to provide the boys with necessary mental health services.

Intervening Compl. ¶¶ 2-9.

The S. brothers will serve as class representatives for all three subclasses certified in this case. *See* Memorandum Decision and Order dated April 23, 1998. Subclass One is comprised of all children whom defendants know or should know have been abused or neglected/maltreated by virtue of a report of abuse or neglect/maltreatment. Subclass Two includes children in families in which there is an open indicated report of abuse or neglect. Finally, Subclass Three includes all children in the custody of ACS. Richard and Walter S. assert the following legal claims:

Defendants have violated their constitutional and statutory rights by failing to ensure that an appropriate written case plan be developed, reviewed and implemented in a timely manner containing the elements mandated by federal and state law, and reasonable professional standards; by failing to take the necessary steps to provide them with proper care and the services necessary to facilitate a permanent placement and to prevent them from deteriorating while in foster care; by failing to provide them with a safe, stable placement, by failing to conduct a proper investigation of potential abuse, and by failing to protect them from harm while in foster care, all as required by federal and state law and reasonable professional standards.

Intervening Compl. ¶ 10.

*Factual Allegations of Danielle J.*

Danielle J. is fifteen years old and has been in the custody of New York City's child welfare system for virtually her entire life.

City defendants have assigned Danielle J. to various inappropriate placements, including the Pre-Placement center operated by ACS at 7 Laight Street in Manhattan, where Danielle J. has spent the night on several occasions, including a full week during November 1997. Danielle has stayed at Pre-Placement while awaiting assignment to a licensed or certified foster care placement. She was required to spend nights at the Pre-Placement facility because defendants did not have an available licensed or certified placement suited to her needs.

*3 While at the Pre-Placement center, Danielle suffered from restlessness and frustration. Due to the crowding in the facility and the poor quality of the bedding, she was unable to sleep well and continually felt exhausted. Danielle witnessed several fights during her stay at the Pre-Placement center, including altercations that resulted in the police having to be called to the facility. Danielle witnessed members of the staff at the Pre-Placement facility grow short-tempered at the end of long overtime shifts, and yell and scream at children.

As a result of the crowds and chaos at the Pre-Placement facility, Danielle J. experienced feelings of discomfort, anger, trauma, and frustration.

Intervening Compl. ¶¶ 12-15.

Danielle J. will be a named plaintiff for Subclass Three, which includes all children in the custody of ACS. Her legal claim is that defendants have failed to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

protect her from harm while she has been in their custody. Intervening Compl. ¶ 16.[FN2]

> FN2. Having reviewed the proposed intervening complaint, the Court finds that the intervenors share common questions of law with members of each of the subclasses they represent, and that their claims are typical of members of the subclasses. Further, the Court is satisfied that Richard and Walter S. and Danielle J., through their next friends and class counsel, will adequately represent their respective subclasses.

Under Fed.R.Civ.P. 24(b)(2), the Court may grant a timely application for intervention when the applicant's claim and the main action have a question of law or fact in common, so long as the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Rule 24(b)(2) does not require an identity of facts between the proposed intervenors and the plaintiffs. *German v. Federal Home Loan Mortgage Corp.,* 899 F.Supp. 1155, 1166 (S.D.N.Y.1995) (citing *Swift v. Toia,* 450 F.Supp. 983, 990 (S.D.N.Y.1978), aff'd, 598 F.2d 312 (2d Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980)). Rather, the rule is satisfied when, "despite factual differences between the parties, a common question of law is involved." *Davis v. Smith,* 431 F.Supp. 1206, 1209 (S.D.N.Y.1977), aff'd, 607 F.2d 535 (2d Cir.1978). Indeed, more than one court has noted that "[v]arying facts and circumstances may actually add to the Court's understanding of the scope and breadth of the claims and therefore support an intervention motion." *German,* 899 F.Supp. at 1166 (citations omitted).

According to plaintiffs, Richard and Walter S. and Danielle J. share with the plaintiff class the following issue of law: whether defendants maintain an adequate range and number of placements to ensure that children are placed appropriately and do not deteriorate while in foster care. The intervening plaintiffs "allege that they have suffered injuries similar to those alleged by the named plaintiffs, and that all such injuries are the direct result of the challenged" practices of defendants. *McNeill v. New York City Hous. Auth.,* 719 F.Supp. 233, 250 (S.D.N.Y.1989). Plaintiffs contend that the intervention of the three additional named plaintiffs will help elucidate the issues presented at trial.

Defendants do not contest that the intervening plaintiffs have questions of law and fact in common with the class. Rather, they argue that the application is untimely, and that they will be prejudiced if intervention is granted.

*4 In evaluating the timeliness of an application to intervene, the Court must look at the totality of the circumstances. *Farmland Dairies v. Commissioner of New York State Dep't of Agric., and Mkts.,* 847 F.2d 1038, 1044 (2d Cir.1988) (citing *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973)). Relevant considerations include:
(1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness.

*Id.* (citing *United States v. New York,* 820 F.2d 554, 557 (2d Cir.1987)).

Considering all of the factors outlined above, the Court holds that plaintiffs' motion is timely. That intervening plaintiffs are minors unaware of their interest in this action warrants a flexible application of the timeliness requirement.

Their arguments to the contrary notwithstanding, defendants will not be prejudiced by the intervention of Richard and Walter S. and Danielle J. Defendants have long been aware of the S. brothers. In a letter dated September 4, 1997, plaintiffs informed defendants that one of their case practice experts planned to testify at trial regarding the case of Richard and Walter S. Further, by the time this motion was filed at the beginning of February, 1998, defendants had already produced these children's case records, taken part in four depositions regarding their claims, and been provided with interrogatory answers concerning them.

Although Danielle J. is new to the case, her claims, particularly those involving her overnight stays at ACS's Pre-Placement facility, are not. In May 1997, plaintiffs sought from the Court a Temporary Restraining Order prohibiting the City from housing children in the Pre-Placement center. After an evidentiary hearing, and *in lieu* of granting injunctive relief, the Court "so ordered" an Interim Stipulation and Order in which defendants agreed, among other things, to end overnight stays at Pre-Placement. Although defendants have continuously maintained that the Pre-Placement claims are not properly part of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

this case,[FN3] they have been on notice of plaintiffs' claims regarding the Pre-Placement facility since the late Spring of last year.

> FN3. City defendants' Motion to Dismiss Pre-Placement Claims and Vacate the Interim Stipulation and Order is currently pending before the Court.

As with the claims of Richard and Walter S., defendants have already provided plaintiffs a good deal of discovery regarding the Pre-Placement facility, and indeed, are under continuing disclosure requirements pursuant to the Interim Stipulation and Order.[FN4] Defendants are well aware, therefore, of what information is in the hands of plaintiffs, and have had ample time to develop strategies to defend against it.

> FN4. The Court recently denied plaintiffs' motion for an order holding city defendants in contempt of Court for failing to comply with the Interim Stipulation and Order. *See* Tr. of Hearing, 5/11/98, at 872-76. In their opposition to the contempt motion, city defendants urged the Court to eliminate the continuing disclosure requirements in the Interim Stipulation and Order. Having concluded that the letter of the Interim Stipulation and Order had not been complied with, the Court held that the stipulation, and its disclosure requirements, would remain in effect.

The Court firmly believes that defendants will not be prejudiced by the intervention of Richard and Walter S. and Danielle J., nor that such intervention should result in any substantial delay of the trial. To ensure fairness, however, the Court will allow, on a showing of good cause, whatever additional discovery is necessary for defendants to prepare their defense with respect to the claims asserted by Richard and Walter S. and Danielle J.

### B. Plaintiffs' Motion to Substitute and Add Next Friends

*5 Plaintiffs seek to substitute two next friends and add another. Kathryn Conroy, next friend to Shauna D., was recently awarded a federal grant pursuant to which she provides training to ACS on child protection and domestic violence. To avoid the appearance of a conflict of interest, she withdrew from the case in June 1997. Plaintiffs propose to replace Ms. Conroy with Nedda de Castro, a social worker at the teen pregnancy and parenting program at New York Hospital-Cornell Medical Center.

Professor Mitchell I. Ginsberg, next friend to named plaintiff Lawrence B., passed away in March 1996 after the complaint was filed in this action. Plaintiffs propose to replace Professor Ginsberg with Dr. Vincent Bonagura, a specialist in pediatric AIDS at Long Island Jewish Hospital, and a Professor of Pediatrics, Microbiology, and Immunology at Albert Einstein College of Medicine.

Finally, plaintiffs move to add Ms. Raymunda Cruz as a next friend to Marisol A. Ms. Cruz is Marisol A.'s adoptive mother, and proposes to serve with Rev. Dr. James Alexander Forbes, Jr., who will continue his involvement in this litigation.

Defendants urge the Court to deny the motion for substitution and addition of next friends, on the ground that plaintiffs delayed too long in making it.[FN5] They contend that they will be prejudiced if the Court grants the motion, because, now that the discovery phase of this case has been completed, they will have been deprived of the opportunity to conduct discovery concerning the proposed next friends. The Court notes that defendants have been apprised of the proposed substitutions for some time. By letter dated July 23, 1997, plaintiffs sought defendants' agreement to the substitution of Dr. Bonagura and Ms. De Castro. Defendants refused to so stipulate, prompting more delay and the instant motion. Likewise, defendants have long known of Ms. Cruz. Although the adoption of Marisol A. became final in June 1997, the adoption proceedings had been pending in Family Court for some time.

> FN5. Relying on Fed.R.Civ.P. 25(a), defendants argue that plaintiffs' motion to substitute Dr. Bonagura for Professor Ginsberg is time-barred. Rule 25(a) provides that when a party dies, a motion for substitution must be made within ninety days after the party's death is "suggested on the record." The Court has found no authority, and defendants have cited none, however, applying Rule 25(a) to the death of next friends, who are nominal parties only. 6A Charles A. Wright, *et al., Federal Practice and Procedure* § 1570 at 505 (1986).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

Fed.R.Civ.P. 17(c), which provides for the representation of infants by next friends, states that the Court shall make any such order "it deems proper for the protection of the infant." Because the replacement of Professor Ginsberg and Ms. Conroy is necessary to protect the interests of Lawrence B. and Shauna D., plaintiffs' motion to substitute Dr. Bonagura and Ms. De Castro is granted. As the adoptive mother of Marisol A., Ms. Cruz has a substantial interest in this litigation. Accordingly, plaintiffs' motion to add Ms. Cruz as a next friend to Marisol A. is also granted.

## II. City Defendants' Cross-Motion

### A. City Defendants' Motion to Dismiss Certain Plaintiffs

City defendants contend that because Lawrence B. has died of AIDS, Marisol A. has been adopted, and Steven I. has turned eighteen and become ineligible for foster care, their claims are moot and they must be dismissed from the action. [FN6] Plaintiffs concede that these class representatives are no longer in the child welfare system, and therefore will not benefit from the prospective injunctive relief sought in the complaint.

> FN6. City defendants' motion to dismiss Lawrence B. and Shauna D. on the ground that they lack competent representation is rendered moot by the Court's granting of plaintiffs' motion to substitute new next friends for these two named plaintiffs. See Section I.B, *supra*.
> As an alternative basis on which to dismiss Shauna D., city defendants contend in their reply papers that plaintiffs' counsel has been unable to contact Shauna D. for the past year. Defendants conclude from this that Shauna D. must have abandoned the action, rendering her claims moot. Defendants' bare assertions that Shauna D. has abandoned the action, without more, however, are an inadequate basis on which to dismiss the claims of an infant plaintiff. Accordingly, defendants' motion to dismiss Shauna D. is denied.

*6 Denominating the cause a class action, the complaint was filed on December 13, 1995. This Court certified the class in an order dated July 3, 1996. Lawrence B. died on February 18, 1996, the adoption of Marisol A. was finalized on June 25, 1997, and Steven I. turned eighteen on July 12, 1997. Therefore, the class was certified before the adoption of Marisol A. and the eighteenth birthday of Steven I., but after the death of Lawrence B.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Class actions, however, warrant a more flexible application of the mootness doctrine. See *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir.1991). Whether a class action is rendered moot depends in large part upon when mootness occurs. If the claims of named plaintiffs become moot before class certification, the entire class action can be rendered moot. Mootness is averted, however, if the named plaintiffs have a live controversy at the time the class action is certified by the district court. *Geraghty,* 445 U.S. at 398.

Defendants do not dispute that the claims of Marisol A. and Steven I. were live when the class was certified. The Supreme Court has held that "by obtaining class certification, plaintiffs preserve[ ] the merits of the controversy for [ ] review." *County of Riverside v. McLaughlin,* 500 U.S. 44, 51, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Comer,* 37 F.3d at 798. Therefore, the Article III controversy may exist "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 753, n. 5, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (citation omitted). Because the claims of Marisol A. and Steven I. were viable at the time the class was certified, they have been preserved for adjudication.

Although Lawrence B. died before the class was certified, even "[w]here the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had." *Comer,* 37 F.3d at 799. There is an exception to mootness where, "under the appropriate circumstances, class certification may relate back to the filing of the complaint." *Id.* (citing *McLaughlin,* 500 U.S. at 52 and *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)). The Supreme Court has held that such circumstances exist

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 6

where the claims are so " 'inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." ' *McLaughlin*, 500 U.S. at 52 (quoting *Geraghty*, 445 U.S. at 399 (citation omitted)).

Defendants argue that a claim is not transitory unless it is necessarily "time-limited." *See, e.g., Sosna*, 419 U.S. at 397 (challenging a one-year residency requirement to obtain a divorce); *McLaughlin*, 500 U.S. at 47 (involving requirement that persons arrested be arraigned within two days of arrest). Such a stringent interpretation is unwarranted, however, in this case. In *Comer v. Cisneros*, the Second Circuit held that the discrimination claims of low-income minority residents seeking public housing assistance, like the population of the housing market itself, were transitory "in some sense", warranting application of the relation back doctrine. 37 F.3d at 799. The panel noted that "housing discrimination suits of this type are acutely susceptible to mootness because of the fluid composition of the public housing population. Thus, while the harm remains constant, those who suffer from the harm often change identity." *Id.* at 797.

*7 Like the public housing population, the population of New York City's child welfare system is equally fluid, making the provision of legally mandated foster care services inherently transitory. Children enter and leave the system all the time. This is particularly so because the goal of foster care is to locate appropriate permanent placements for children, not to have them remain in the child welfare system. Therefore, as with plaintiffs in *Comer*, the plaintiff children who suffer from the harm alleged in this case constantly change identity, rendering their claims particularly susceptible to mootness. [FN7]

> FN7. The Court notes that the claims at issue in this case are "capable of repetition yet evading review". Foster care is intended to be temporary. While Marisol A., Steven I. and Lawrence B. will not again suffer harm as a result of the alleged flaws in the child welfare system, the type of harm they allege might be visited upon other members of the class they represent. In *Sosna v. Iowa*, the Supreme Court made clear that the "capable of repetition yet evading review" doctrine applies to avert mootness where, even though there is no prospect that a challenged practice may again injure the named plaintiff, the practice may cause future injury to unnamed members of the class. 419 U.S. at 400.

This is especially true with respect to the claims of Lawrence B., a terminally ill child who alleged that he had been inappropriately placed and denied adequate medical treatment. At the time this action was filed, Lawrence B. had full blown AIDS. He died after the filing of the complaint and the motion for class certification, but before oral argument on the motion. In the complaint, Lawrence claims, among other things, that ACS failed to provide him with adequate medical treatment for his fatal illness.[FN8] Given the advanced stage of his illness, it was virtually impossible for the Court to rule on plaintiffs' motion for class certification before Lawrence died. Therefore, in its Opinion granting class certification and denying defendants' earlier motion to dismiss, the Court held that class certification related back to the filing of the complaint. *Marisol A. v. Giuliani*, 929 F.Supp. 662, 670 n. 2 (S.D.N.Y.1996). None of the arguments in the instant motion have persuaded the Court to change its earlier decision with regard to Lawrence B., which represents the law of the case. Because class certification relates back to the filing of the complaint, the merits of the controversy have been preserved for adjudication.[FN9]

> FN8. That Lawrence B.'s claims are in large part based on his illness, and lack of treatment therefor, is what distinguishes this case from *Swan v. Stoneman*, 635 F.2d 97, 102 n. 6 (2d Cir.1980). In *Swan*, the Second Circuit noted that substitution of a new named plaintiff was required after the death of a class representative where the named plaintiff's "death had no particular relationship to the claim at issue." *Id.* Because Lawrence B. was gravely ill when he commenced this action, and was suing ACS for failing to provide him with adequate care while he was in their custody, his death does not necessitate the substitution of a new named plaintiff to ensure survival of his claims.

> FN9. In its Opinion affirming class certification, the Second Circuit indicated that this Court should "ascertain whether any of [the claims of Lawrence B.] are represented by other plaintiffs as part of its overall determination of subclasses and their representation." *Marisol*, 126 F.3d 372, 379

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

n. 4 (2d Cir.1997). This Court recently divided the class into three subclasses, *see* Memorandum Decision and Order dated April 23, 1998, and notes that Lawrence B. is not the sole representative with regard to any of the claims of Subclass Three (the only subclass for which he is a named representative).

Clearly Marisol A., Steven I. and Lawrence B. will not benefit personally from any relief granted in this case, but by obtaining class certification, the controversy was preserved for adjudication. The class certification order was affirmed by the Second Circuit, whose direction that this Court divide the class into subclasses was meant only to facilitate the efficient and orderly administration of this litigation.[FN10]

> FN10. Defendants also argue that the claims of Marisol A., Steven I. and Lawrence B. should be dismissed because they became moot before *subclasses* were certified in this case. They cite two cases in support of their novel argument that "[w]hen a named plaintiff's claim of injury has become moot before the appropriate subclass has been certified, as here, that particular named plaintiff is not a member of that class or subclass and cannot be an adequate representative." Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem.") at 10 (citing *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 404, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) and *Alexander v. Yale Univ.,* 631 F.2d 178, 183 (2d Cir.1980)). Both cases are inapposite, and neither remotely involves subclasses. In neither case was a class certified by the district court. Rather, in *East Texas Motor Freight* the Court of Appeals for the Fifth Circuit certified a class, and was reversed by the Supreme Court for doing so. Similarly, in *Alexander,* the district court's *denial* of class certification was affirmed.

The question of whether these named plaintiffs should continue to represent the class remains. In *Comer,* the Second Circuit observed that "[i]n class actions ... courts have come to recognize that an individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished." 37 F.3d at 798 (quoting 13A Charles A. Wright, *et al., Federal Practice and Procedure* § 3533.9, at 391 (1984 & Supp.1994)). The issue turns on whether named plaintiffs who will not benefit from any relief awarded in the action can *adequately* protect the interests of the class.

In the two and a half years that this case has been pending, the Court has had ample opportunity to observe the quality of representation being afforded the class. Ruminating on the "realities of class actions," the Third Circuit has noted that,

*8 [i]n massive class action[s] ... it is counsel for the class who has the laboring oar. The class representatives furnish the factual basis to invoke the jurisdiction of the court and provide the outline of the controversy, but the lawyers shape the claims for adjudication by the compilation of factual and expert testimony and the presentation of statistical and documentary evidence.

*Goodman v. Lukens Steel Co.,* 777 F.2d 113, 124 (3d Cir.1985). This is particularly so in the present case, where the class is comprised of infants who cannot be expected to play a large role in prosecuting the action. Rather, it falls to the next friends and class counsel to provide vigorous advocacy for the class. Having experienced over two years' worth of vigorous advocacy in this case, the Court is satisfied that Marisol A., Steven I., and Lawrence B., through their next friends and counsel, will adequately protect the interests of the class at trial. Accordingly, defendants' motion to dismiss Marisol A., Steven I. and Lawrence B. is denied.

### B. City Defendants' Motion to Dismiss All of the Next Friends

Contending that the next friends of Marisol A.,[FN11] Thomas C., Ozzie E., Darren and David F., Bill and Victoria G., Brandon H. and Steven I. "know next to nothing" about the named plaintiffs they represent, city defendants move to have them dismissed from the action.[FN12] The high bar that city defendants would have this Court set for qualifying as a next friend, however, is contrary to the law in this Circuit.

> FN11. Here, city defendants refer to Rev. Dr. James Alexander Forbes, Jr., the original next friend to Marisol A. Defendants' opposition to plaintiffs' motion to add as next friend Raymunda Cruz, the adoptive mother of Marisol A., is discussed in Section I.B, *supra.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cv-00251-HSO-ASH    Document 378    Filed 02/08/07    Page 8 of 12

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 8

> FN12. That portion of the motion which seeks the dismissal of the next friends of Lawrence B. and Shauna D. is mooted by the Court's granting of plaintiffs' motion to substitute new next friends for these named plaintiffs. *See* Section I.B, *supra*.

In their depositions, many of the next friends conceded either that they had not met or had had very limited contact with the plaintiffs they represent. According to city defendants, the next friends, most of whom are professionals in the child welfare arena, are merely lending their credentials to the lawsuit. City defendants conclude that the next friends are inadequate representatives because they "cannot demonstrate that they are intimately involved with the plaintiffs, have first-hand knowledge of the plaintiffs' needs, have genuine concern for the plaintiffs' individual situations, or are the only individuals likely to be able to protect their rights." Defs.' Mem. at 17.[FN13]

> FN13. Defendants also argue that the next friends' lack of knowledge regarding the named plaintiffs has deprived defendants of what would otherwise be relevant discovery, thereby prejudicing their defense. The Court has found no support, however, for the proposition that it is the role of next friends, who are nominal parties only, to provide defendants with information regarding the infant plaintiffs. On the contrary, it may well be that plaintiffs, who have the burden of proof, will be disadvantaged by the next friends' lack of knowledge.

Federal Rule of Civil Procedure 17(c) provides that: Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

City defendants baldly assert that "[e]ach of these children has other adults in their life who have personal knowledge of their circumstances and motivations to seek their best interests [sic], who could have been named as next friends in the first place, but were not, probably because they are not famous people like Dr. Forbes and Prof[essor] Ginsberg." Defs.' Reply Mem. in Supp. of Mot. to Dismiss at 13-14. Plaintiffs' counsel has represented to the Court, however, that when the named plaintiffs filed this action by next friends, they did not have "duly appointed representatives" within the meaning of Rule 17(c). The named plaintiffs' appearance in this action by next friends is therefore appropriate.

*9 City defendants' argument that there may be close family or friends who know the named plaintiffs and would be better suited to represent them in this action is flawed in that it ignores the fact that ACS has taken the named plaintiffs into custody, presumably because they were not being provided for adequately by their families. In an ideal world, there would be concerned family members or friends to represent these children in court. According to at least one commentator, however, "[t]here are no special requirements for the person suing as next friend." 6A Charles A. Wright, *et al., Federal Practice and Procedure* § 1572 at 513 (1990). With a view to the unfortunate situation of children like the plaintiff class in this case, the Second Circuit has noted that [t]he term ["next friend"] is broad enough to include any one who has an interest in the welfare of an infant who may have a grievance or a cause of action.... The right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to their very custodians.

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh # 11 Union Free Sch. Dist.*, 873 F.2d 25, 31 (2d Cir.1989) (quoting *Child v. Beame*, 412 F.Supp. 593, 599 (S.D.N.Y.1976)). In this Circuit, a court is required only to "consider the good faith of those claiming to speak for the infant and satisfy itself that the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf." *Id.* at 30-31.

The Court has seen nothing to impugn the good faith of the next friends in this case. Having reviewed the curriculum vitae and deposition transcripts of the next friends, the Court is satisfied that they understand their role as next friends, and that they are motivated only by a sincere desire to seek justice for the named plaintiffs.[FN14] Therefore, city defendants' motion to dismiss all of the next friends is denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 9

FN14. The same holds true for the next friends representing intervenors Richard and Walter S. and Danielle J. The S. brothers are represented by their grandparents, who currently have custody of the boys. By assuming custody, W.N. and N.N. have expressed a clear interest in the boys' welfare.

Danielle J. is not so fortunate. Having spent almost her entire life in New York City's child welfare system, she has no friend or relative to represent her in this case. She has as her next friend Angela Lloyd, a Senior Staff Attorney at Covenant House who provides legal representation to teenage runaways and teenagers in foster care. According to plaintiffs' counsel, Ms. Lloyd is fully familiar with the problems facing teenagers who have been subjected to multiple placements, has demonstrated a strong interest in this litigation, and is fully committed to representing the best interests of Danielle J. and the rest of the plaintiff class.

Accordingly, the Court is satisfied that the next friends of Walter and Richard S. and Danielle J. are "motivated by a sincere desire to seek justice" on their behalf. *Ad Hoc Comm. of Concerned Teachers,* 873 F.2d at 30-31.

### C. City Defendants' Motion to Dismiss Certain Claims

City defendants move to dismiss several claims for "lack of adequate basis and representation." Plaintiffs agree to withdraw their claims under federal disability regulations, 45 C.F.R. §§ 84.53, 84.54 & 84.55, the Multiethnic Placement Act, 42 U.S.C. § 1996b, and N.Y. Soc. Serv. L. §§ 422.11(b), 432.2, 432.3 & 433.

#### 1. New York Social Services Law Claims

Under N.Y. Soc. Serv. L. § 398.4(a), city public welfare officials must obtain for mentally disabled [FN15] and physically handicapped [FN16] children admission to suitable schools, hospitals, or residential placements. In essence, the statute imposes an affirmative duty on child welfare officials to ensure that mentally disabled or physically handicapped children are appropriately placed.

FN15. A child who suffers from mental illness is mentally disabled. *See* N.Y. Soc. Serv. L. § 371(8) and N.Y. Mental Hyg. L. § 1.03(3). Mental illness is defined as "a mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation." N.Y. Mental Hyg. L. § 1.03(20).

FN16. A physically handicapped child is one "who, by reason of a physical disability or infirmity, whether congenital or acquired by accident, injury or disease, ... is or may be expected to be handicapped, as provided in the public health law." N.Y. Soc. Serv. L. § 371(9). Under N.Y. Pub. Health L. § 2581, children suffering from long-term disease are children with physical disabilities (formerly, "physically handicapped children"). That section of the Public Health Law provides a non-exclusive list of long-term ailments, including cancer, that qualify as disabilities. Like cancer, AIDS is a long-term, debilitating and incurable disease. Therefore, Lawrence B., who suffered and died from AIDS, was physically handicapped within the meaning of the New York Social Services Law and the New York Public Health Law.

According to allegations in the complaint, three of the named plaintiffs were either physically handicapped or mentally disabled and placed in group homes that were not suitable under N.Y. Soc. Serv. L. § 398.4(a). Plaintiffs contend that Lawrence B. had AIDS and was shuttled from one inappropriate placement to another, where his medical needs were not attended to. Compl. ¶¶ 93-108. Ozzie E. suffers from seizure disorder, brain lesions and behavioral problems. Compl. ¶ 131. According to plaintiffs, defendants allowed Ozzie to languish in a group home inappropriate for a child with Ozzie's neurological problems rather than provide his mother, who wanted Ozzie back and with whom Ozzie wanted to live, with support services necessary to allow her to care for him in the face of his physical and behavioral problems. Compl. ¶¶ 131-38. Steven I. has severe psychiatric and emotional problems. By age twelve, he had exhibited violent behavior at school, including attempting to rape a nine-year old girl, soliciting oral sex from two other girls, stabbing people with pencils and starting fires. Compl. ¶ 180.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 10

In September of 1994, at the age of fifteen, he was committed to New York Hospital, where he was labeled a "sexual predator". Compl. ¶ 183.

*10 Although the doctors who have treated Steven claim that he needs long-term residential treatment, CWA has ignored-and continues to ignore-his need for such care. Instead, CWA inappropriately assigned Steven to a group home, from which he ran away in 1994. Steven has never returned to this inappropriate placement, choosing instead to live on the streets.

Compl. ¶ 178.

Lawrence B. had AIDS and was therefore physically handicapped under New York law. Ozzie E. and Steven I., each of whom suffered from severe behavioral and psychiatric problems, are mentally disabled under the New York Social Services Law and the New York Mental Hygiene Law. Because plaintiffs allege that all three named plaintiffs were not placed in suitable homes, city defendants' motion to dismiss claims under N.Y. Soc. Serv. L. § 398.4(a) is denied.

City defendants also move for dismissal of plaintiffs' claims under N.Y. Soc. Serv. L. § 398.15, which concerns children placed in therapeutic foster homes, on the theory that there are no named plaintiffs placed in such homes. Darren and David F., however, currently reside in a therapeutic foster home. Further, plaintiffs allege that the F. brothers are not being provided with day treatment services that they need. Such treatment services, which presumably are aimed at helping the boys succeed in their therapeutic foster placement, could constitute "support services ... reasonably necessary to prevent placement of the child in a group home, an agency operated boarding home or an institution." N.Y. Soc. Serv. L. § 398.15(a). Therefore, city defendants' motion to dismiss claims under N.Y. Soc. Serv. L. § 398.15 is denied.

Plaintiffs have also made claims under N.Y. Soc. Serv. L. § 409-d. That section requires each social services district to submit child welfare service plans to the New York State Office of Children and Family Services ("OCFS") (formerly the Department of Social Services) for approval. Under § 409-d(3)(b)(ii), the plan shall not be approved by OCFS unless "it demonstrates that child welfare services included in the plan are appropriate to meet the assessed needs of the children and families for whom the social services district is or may be responsible." City defendants contend that plaintiffs' claims under § 409-d must be dismissed because "[t]here is no claim that New York City failed to submit such plans, nor does any plaintiff claim any harm from lack of such a plan." Defs.' Mem. at 33. Plaintiffs do not claim that such plans have not been submitted but that they have been harmed by defendants' failure to ensure that the plans provide for appropriate child welfare services. See Compl. ¶¶ 229-38. It is OCFS that determines whether the plan provides for "appropriate" child welfare services, and, in accordance with that determination, approves or rejects the plan. Because plaintiffs claim that plans have been approved in violation of § 409-d(3)(b)(ii), their claim is one against the state. Accordingly, city defendants' motion to dismiss claims against them under N.Y. Soc. Serv. L. § 409-d is granted.

*11 City defendants also move to dismiss claims under N.Y. Soc. Serv. L. § 423(1)(a), which requires every local department of social services to establish a child protective service. Plaintiffs do not contend that city defendants have failed to establish a child protective service. Rather, they argue that the City does not have a child protective service staffed with sufficiently qualified and trained workers as required by N.Y. Soc. Serv. L. § 423(1)(c). Because it is not contested that city defendants have established a child protective service, their motion to dismiss claims under N.Y. Soc. Serv. L. § 423(1)(a) is granted.

2. Adoption Assistance Act Claims

City defendants also move to dismiss plaintiffs' claims under the Adoption Assistance Act, 42 U.S.C. §§ 622, 627 and 671. These sections pertain to the relationship between the federal government and the states. They require the states to comply with certain conditions in order to receive federal funding under the Adoption Assistance Act. Under 42 U.S.C. § 627(a)(2), the states must implement and operate: a statewide information system providing ready access to records on each child in the foster care system; a case review system; and a service program designed to help children be placed for adoption or, where appropriate, returned to their families. Section 627(b) provides that a state's allotment will be reduced if it fails to comply with section 627(a)(2).[FN17]

> FN17. The Court notes that 42 U.S.C. § 627 has been repealed. See Pub.L. 103-432, 108 Stat. 4454 (1994). The repeal became effective with respect to fiscal years beginning on or after April 1, 1996. This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 11
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

action was commenced in December of 1995, however, while § 627 was still in effect.

Similarly, §§ 622 and 671 require that, in order to receive funding under the Adoption Assistance Act, the states must establish plans for child welfare services, and for foster care and adoption assistance, respectively. Sections §§ 622, 627, and 671 impose no enforceable obligations upon the city defendants in this case. Accordingly, as to city defendants, plaintiffs' claims under 42 U.S.C. §§ 622, 627 and 671 are dismissed.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to intervene additional plaintiffs and substitute and add next friends is granted. City defendants' cross-motion for an order dismissing certain plaintiffs and all of the next friends is denied. The cross-motion of city defendants for an order dismissing certain claims is granted in part and denied in part in accordance with this memorandum decision.

Settle order on notice.

S.D.N.Y.,1998.
Marisol A. v. Giuliani
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2000 WL 34940363 () Declaration (Mar. 7, 2000)
• 2000 WL 34940362 () Affirmation of Marcia Robinson Lowry in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses (Jan. 6, 2000)
• 2000 WL 35249710 () Affirmation of Richard Emery (Jan. 3, 2000)
• 1998 WL 34987215 (Trial Motion, Memorandum and Affidavit) City of New York's Pretrial Memorandum of Law on the Standards Applicable to Plaintiffs' Claims (Sep. 14, 1998) Original Image of this Document (PDF)
• 1998 WL 34988288 () Affidavit of Robert Suddath, M.D. (Jul. 6, 1998)
• 1998 WL 34988290 () Affidavit of Daniel S. Levy (Jun. 22, 1998)
• 1998 WL 34988291 () (Partial Testimony) (Jun. 10, 1998)
• 1998 WL 34988293 () (Partial Testimony) (Jun. 10, 1998)
• 1998 WL 34988423 () (Partial Testimony) (Apr. 27, 1998)
• 1998 WL 35018464 () Summary of Opinions (Apr. 24, 1998)
• 1998 WL 34988243 () (Partial Testimony) (Apr. 20, 1998)
• 1998 WL 34988424 () (Partial Testimony) (Apr. 20, 1998)
• 1998 WL 35018463 () Assessing the Performance of New York City's Child Welfare Administration/Administration for Children's Services: A Review (Apr. 20, 1998)
• 1998 WL 34988272 () Affidavit of Ann O'rielly in Opposition to Plaintiffs' Motion for Contempt (Mar. 13, 1998)
• 1998 WL 34988286 () Affidavit of William Bell in Opposition to Plaintiffs' Motion to Certify Subclasses (Feb. 24, 1998)
• 1998 WL 34988277 () Affidavit (Feb. 20, 1998)
• 1998 WL 34988270 () Affidavit of Sara Taylor in Opposition to Plaintiffs' Motion for Contempt (Feb. 6, 1998)
• 1998 WL 34988274 () Affidavit of J. Boyce in Opposition to Plaintiffs' Motion for Contempt (Feb. 6, 1998)
• 1998 WL 34988276 () Affidavit of David Fazio in Opposition to Plaintiffs' Motion for Contempt (Feb. 4, 1998)
• 1998 WL 34988264 () Affidavit (Jan. 14, 1998)
• 1998 WL 34988266 () Affidavit (Jan. 14, 1998)
• 1997 WL 34460866 () Services to Families with Open Indicated Cases (Oct. 21, 1997)
• 1997 WL 34460867 () Investigations of Reports of Suspected Child Abuse and Maltreatment by New York City's Administration for Children's Services (ACS) (Aug. 12, 1997)
• 1997 WL 34460865 () Affidavit of Robert L. Little in Support of City Defendants' Motion to Disqualify (May 8, 1997)
• 1997 WL 34460862 () Affidavit of John Courtney (Apr. 2, 1997)
• 1997 WL 34460864 () Affidavit of Dr, Fitzhugh Mullan (Apr. 2, 1997)
• 1997 WL 34460863 () Affidavit of Virginia Gillmer (Mar. 28, 1997)
• 1996 WL 34289048 () Declaration of Deborah K. Shepherd, C.S.W. (Oct. 8, 1996)
• 1996 WL 34289040 () Affidavit (Feb. 20, 1996)
• 1996 WL 34289043 () Affidavit (Feb. 20, 1996)
• 1996 WL 34289045 () Affidavit (Feb. 20, 1996)
• 1996 WL 34289046 () Affidavit (Feb. 20, 1996)
• 1996 WL 34289047 () Affirmation (Feb. 20, 1996)
• 1996 WL 34289067 () Affirmation (Feb. 20, 1996)
• 1996 WL 34289044 () Affidavit (Feb. 17, 1996)
• 1996 WL 34289041 () Affirmation of Michael Murtagh, A.C.S.W. (Feb. 15, 1996)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 265123 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 12

- 1996 WL 34289042 () Affidavit of Susan J. Greenberg, A.C.S.W. (Feb. 15, 1996)
- 1995 WL 17770990 (Trial Pleading) Complaint for Declaratory and Injunctive Relief (Dec. 13, 1995) Original Image of this Document (PDF)
- 1:95cv10533 (Docket) (Dec. 13, 1995)
- 1995 WL 17771017 () Affirmation of Jay G. Lindgren. Jr (1995)
- 1995 WL 17771018 () Service to Children in Forster Care and Their Families (1995)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.