IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*   PLAINTIFFS

v.   CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*   DEFENDANTS

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE POST-DISCOVERY EVIDENCE AT THE MAY 7, 2007 LIABILITY TRIAL**

## INTRODUCTION

Plaintiffs submit this motion *in limine* to confine the presentation of evidence at the May 7, 2007 liability trial to the fully developed factual record established as of the April 17, 2006 discovery cutoff. The Court's discovery deadline has served as an effective cutoff for what otherwise would be a continuously moving evidentiary target, and has been relied on by Plaintiffs and their five experts in preparing for trial. As argued in Plaintiffs' opposition in response to Defendants' pending motion to present select post-discovery documents, to allow Defendants to present recent post-discovery developments at trial would undermine the entire purpose of this Court's Case Management Order. It would also be particularly prejudicial to Plaintiffs, as Defendants control most of the evidence regarding their foster care services and programs. Defendants should be precluded from being able to ambush Plaintiffs with selective post-discovery evidence that would leave Plaintiffs and their experts with no opportunity to challenge such tardy submissions.

Defendants will suffer no prejudice from such preclusion. Evidence that Defendants were violating Plaintiffs' constitutional rights prior to the April 17, 2006 discovery cutoff would require a finding of liability, even if Defendants could demonstrate recent attempts to respond to Plaintiffs' Complaint in the face of trial. Moreover, admitting post-discovery evidence would be unduly burdensome to the Court and the parties, requiring additional discovery, lengthening the trial and requiring the Court to evaluate the reliability of information not fairly tested by full and timely discovery.

Plaintiffs respectfully request that evidence and information created or developed after the discovery deadline be excluded from the liability trial.

## BACKGROUND

In March 2004, Plaintiffs filed this action, alleging that systematic deficiencies in Defendants' child welfare system were unconstitutional and endangering the well-being of thousands of children. Plaintiffs are members of a certified class of approximately 3,500 Mississippi children in the foster care custody of Defendants. Defendants are government officials who control all aspects of these children's lives and (appropriately) cannot publicly release sensitive child-related information under governing confidentiality laws. This Court's discovery orders have thus been the only means for Plaintiffs to obtain child-specific information about Defendants' treatment of class members and conditions of care class-wide. After several extensions and 16 months of extensive discovery, discovery closed on April 17, 2006. (*See* Amended Case Management Order at 1, Jan. 17, 2006 (attached as Ex. 1)). By that date, document production was completed, interrogatories and requests for admissions were answered, expert reports were produced, and fact and expert depositions based upon all of this information were concluded. All of the expert reports relied exclusively upon facts occurring prior to the

close of discovery. The parties' cross-motions for summary judgment were denied on August 29, 2006. (*See* Order at 2, Aug. 29, 2006 (attached as Ex. 2)). The trial on liability is scheduled for May 7, 2007.[1]

## ARGUMENT

**THE COURT SHOULD ENFORCE ITS APRIL 17, 2006 DISCOVERY DEADLINE FOR ADMISSIBLE EVIDENCE AT THE LIABLITY TRIAL.**

In the interests of fairness and efficiency in this litigation, the Court should order that no evidence pertaining to the period after the April 17, 2006 close of discovery be admitted during the liability phase of the trial. Such an order is well within the Court's discretion, and is consistent with the Federal Rules of Evidence. *See* Fed. R. Evid. 403; *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980)(district court "may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice")(internal citation omitted); *In re Ark-La-Tex Timber Co., Inc.,* No. 06-30105, 2007 WL 210364, at *7 (5th Cir. Jan. 29, 2007)(even if evidence is relevant, the court may reasonably exclude it under F.R.E. 403). It would not only avoid prejudicing Plaintiffs and unduly burdening the Court and the parties, but it would also cause no prejudice to Defendants.

### A. The Preclusion of Post-Discovery Evidence Would Avoid Unfairly Prejudicing Plaintiffs.

Setting a chronological limit on evidence admissible at trial will ensure a level playing field for both parties. Otherwise, Plaintiffs will be unfairly prejudiced for several reasons.

*First*, Plaintiffs are at an overwhelming disadvantage regarding access to post-discovery evidence, and permitting Defendants to use such evidence at trial would leave Plaintiffs unprepared to challenge it. By the time of trial, Plaintiffs will have had no access to Defendants'

---

[1] This case has been bifurcated for trial. (*See* Order Granting Pls.' Mot. to Modify the Case Management Order, July 12, 2004 (attached as Ex. 3)).

confidential records regarding the most recent year of the Mississippi child welfare system's operations – over which Defendants have exclusive control – including such critical information as the system's state-wide caseloads, its child-specific computer (MACWIS) data, case reviews of foster care service provision, and incidents of maltreatment in foster care including foster care deaths.

As such, if Defendants are allowed to use post-discovery evidence to respond to Plaintiffs' evidence, Defendants would be relying on information and data Plaintiffs have never seen or been permitted to inquire about.[2]  Defendants could attempt to create the appearance of change with regard to key issues, leaving Plaintiffs no opportunity to challenge such tardy assertions with actual data.[3]  Clearly, that would be prejudicial to Plaintiffs and would violate the well-established rule that "[m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation."  *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1345 (5th Cir. 1978)(*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Such ambush of Plaintiffs at trial would contravene the purposes of the discovery rules.  *See Morgan v. Commercial Union Assurance Co.*, 606 F.2d 554, 556 n. 1 (5th Cir. 1979)("Our discovery and disclosure laws and rules [are] designed to end trial by ambush"); *Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 420 (5th Cir. 1981)("each party is entitled to know what is being tried. . . trial by ambush is no more favored here than elsewhere").

In a similar case where a class of children with serious emotional disturbances alleged Medicaid Act violations against the State of Massachusetts, the district court excluded post-discovery evidence at the liability trial.  *See Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30 (D.

---

[2] That some post-discovery evidence may be made publicly available by Defendants is not the same as giving Plaintiffs and their experts access to Defendants' raw data through discovery.

[3] If Defendants' selective and incomplete post-discovery documents presented in their Motion for Leave to Supplement Defendants' Initial Disclosures are any indication, this is a real concern.  (*See* Pls.' Resp. in Opp'n to Defs.' Mot. for Leave to Supplement Defs.' Initial Disclosures at 13, February 13, 2007 (attached as Ex. 4)).

Mass. 2006). Although defendants there sought to offer evidence at trial regarding their programs and services for class members post-discovery, the court held that "[t]he cut-off was obviously necessary. Permitting Defendants to offer evidence acquired after the close of discovery would leave Plaintiffs unprepared to challenge the newly-acquired material." *Id*. at 30 n. 4. Likewise, this Court should preclude post-discovery evidence at trial to avoid unfair prejudice to Plaintiffs. *See Pratt v. Pharmnet, Inc.,* No. 3:04CV208-D-A, 2006 WL 2943296, at *3 (N.D. Miss. Oct. 13, 2006)(in granting motion to strike documents disclosed after the discovery deadline, the court found that "to allow their inclusion at this late juncture would undoubtedly be prejudicial"); *ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 551 (Fed. Cir. 1998)(the purpose of the Federal Rules of Civil Procedure "is to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence").

*Second*, allowing in post-discovery evidence would deprive Plaintiffs of the opportunity to have their experts properly investigate and question any post-discovery evidence. Pursuant to the Court's Case Management Order, both parties submitted expert reports in February and March 2006, based exclusively on discovery information available prior to the close of discovery. (*See* Ex. 1 at 2.) Plaintiffs procured expert testimony and submitted five detailed expert reports based upon reviews of tens of thousands of pages of Defendants' source documents regarding agency budget, management and foster care services information. For example, Dr. Bill Brister submitted an expert report regarding Defendants' fiscal and budgeting practices that analyzed the agency's budget requests in light of other discovery information documenting the agency's needs, its ability to qualify for federal funds and its use of available funding. (*See* Expert Report of Bill M. Brister, Ph.D. (attached as Ex. 5)). Ms. Cathy Crabtree submitted an expert report regarding Defendants' management practices that analyzed the

agency's functioning and provision of services to class members in light of extensive discovery information about Defendants' staffing, leadership, resources and harm to class members. (*See* Expert Report of Cathy R. Crabtree (attached as Ex. 6)). Dr. Marva Lewis submitted a report detailing Defendants' deficient social work practices and related harms to four named Plaintiffs as documented in their Mississippi Department of Human Services ("MDHS") case records. (*See* Expert Report of Marva L. Lewis (redacted) (attached as Ex. 7)).

To allow Defendants to introduce post-discovery evidence presenting their characterization of post-discovery developments and data, without expert discovery on the underlying source information and any contradictory documentation, would be extremely prejudicial to Plaintiffs. *See Abbott Labs. v. Syntron Bioresearch, Inc*., No. 98-CV-2359 H(POR), 2001 WL 34082555, at *2-3 (S.D. Cal. Aug. 24, 2001)(excluding new disclosures by defendant more than a year after the close of discovery because plaintiff would be prejudiced by the lack of expert discovery on the new disclosures); *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000)(excluding untimely discovery where it would deny party opportunity to develop rebuttal expert opinion evidence); *Marcin Eng'g v. Founders at Grizzly Ranch*, 219 F.R.D. 516, 523-24 (D. Col. 2003)(denying request to submit additional expert disclosures due to prejudice resulting to non-movant's previously conducted expert discovery).

*Third*, circumventing the Court's carefully crafted discovery schedule developed over the course of three years of litigation would result in undue prejudice to Plaintiffs, who have relied upon that schedule in preparing their case. The admission of any post-discovery evidence created by Defendants would "undermine trial preparations carefully made . . . over many months or even years." *Williams v. Monarch Mach. Tool Co., Inc.,* 26 F.3d 228, 230 (1st Cir.

1994). Courts have routinely held that adherence to discovery deadlines is necessary to ensure fairness to all parties and allow counsel to prepare their best case in advance of trial. *See Hill v. Porter Memorial Hospital,* 90 F.3d 220, 224 (7th Cir. 1996)("Adherence to established deadlines is essential if all parties are to have a fair opportunity to present their positions. . .a district court is well within its discretion to exclude untimely proffered evidence"); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984)("purpose of a discovery cutoff date is to protect the parties from the continuing burden of producing evidence" and to assure them adequate time to prepare for trial).

It is particularly necessary to adhere to the original discovery deadline in a case as complex as this one to ensure that the parties are not confounded by a factual record that is a constantly moving target. *See ADC Telecomm., Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098, at * 4 (D. Minn. Oct. 18, 2001)("scheduling orders must mean something if the parties and the court are ever to achieve some sort of finality"); *Rolland v. Cellucci,* 138 F. Supp. 2d 110, 113 (D. Mass. 2001)(applying fact cutoff date to measure defendant's compliance with settlement agreement in order to avoid constantly shifting fact information and efforts to introduce new evidence at trial). The ongoing nature of MDHS' operations means that there will *always* be additional documents, reports and information that might be added into evidence. The point of a discovery cutoff in such a case is to establish a date beyond which both sides and their experts can fairly prepare on an agreed set of facts; otherwise, the parties will be faced with the impossible task of continually trying to keep their evidence up-to-date. Plaintiffs are "entitled to rely on a timely close of discovery" in this case. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir. 1988).

For all of these reasons, admitting post-discovery evidence in the trial on liability would be unfairly prejudicial to Plaintiffs.

### B. The Preclusion of Post-Discovery Evidence Would Not Prejudice Defendants Because Such Evidence Is of Marginal Relevance to a Finding of Liability or the Need for an Injunction.

Precluding evidence pertaining to the period after the close of discovery from the liability trial will not prejudice Defendants. Post-discovery evidence is not determinative of a finding of liability or a need for an injunction. The Court's authority to impose a remedy in this case may be predicated on a finding of liability for any period subsequent to the filing of Plaintiff's Complaint in March 2004. *See City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982)("[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," even where the defendant abandons the challenged practice prior to trial); *Berkman v. City of New York*, 705 F.2d. 584, 595 (2d Cir. 1983)(holding that relief to ensure future compliance with the law is appropriate where a past violation has been found, regardless of the intent of the defendant).

Thus, even if, *arguendo*, post-discovery evidence established that Defendants were not violating Plaintiffs' rights post-discovery – which Plaintiffs maintain it certainly does not – Defendants would not establish a defense to liability or the need for an injunction if the evidence establishes violations prior to the discovery cutoff. (*See, e.g.,* Defs.' Expert Report of Child Welfare League of America, at 39 (attached as Ex. 8)(concluding that "the Mississippi system does present a picture of having been chronically under-resourced"); Ex. 6, at 7-11 (Expert Report of Cathy Crabtree documenting 14-year history of acknowledged deficiencies in Defendants' child welfare agency putting children at risk of harm)). A reduction in the scope or magnitude of the legal violation during the period subsequent to the filing of the action could not

shield Defendants from liability, as long as the illegal conduct persists, or could possibly recur. *See Allee v. Medrano*, 416 U.S. 802, 810 (1974)(upholding a grant of injunctive relief because "[i]t is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence"). Any recent reform efforts would only show that Defendants can respond when faced with litigation and trial. As recognized by the Fifth Circuit, "reform timed to anticipate or blunt the force of a lawsuit offer[s] insufficient assurance that the practice sought to be enjoined will not be repeated." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354-55 (5th Cir. 1977). Otherwise, Defendants would be "free to return to [their] old ways." *Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir. 1983)(quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)). The Supreme Court has noted the particular necessity for injunctive relief in cases involving "persistent pattern[s]" of legal violations by government officials. *Allee*, 416 U.S. at 815.

Therefore, allowing Defendants to introduce post-discovery evidence at the liability phase of trial would not only be unfairly prejudicial to Plaintiffs, but is also unnecessary to Defendants' defense. *See Rosie D.*, 410 F. Supp. 2d at 30 (considering only evidence pre-dating the discovery deadline in determining liability, but leaving open the option of considering evidence of later conduct if liability were found and it became necessary to consider an appropriate remedy). Post-discovery evidence should be precluded.

    **C.**    **The Preclusion of Post-Discovery Evidence Would Avoid Unduly Burdening the Court and the Parties, and Would Promote Order And Efficiency at Trial.**

To permit Defendants to include post-discovery evidence at trial based on recent developments in the Mississippi child welfare system would also unduly burden the Court and both parties.

A court's adherence to discovery deadlines is of critical importance in preserving limited judicial resources. *See Serrano-Perez v. FMC Corp.*, 985 F.2d 625, 628 (1st Cir. 1993)("The use of discovery closure dates . . . are important tools for case management. Their use, including the setting of specific deadlines, is not only within the sound discretion of the district court, but has been strongly urged"). There is no doubt that if the Court opens up trial to include post-discovery evidence, trial will be lengthened by the introduction of new evidence. The Court should prevent this from happening, particularly because Defendants already estimate that trial will last 30 days. *See Flaminio v. Honda Motor Co., LTD.,* 733 F.2d 463, 473 (7th Cir. 1984)("federal district judges not only may but must exercise strict control over the length of trials, and are therefore entirely within their rights in setting reasonable deadlines in advance and holding parties to them").

In the absence of a firm evidentiary cutoff date, trial proceedings will be further complicated by disparities concerning the availability of relevant and up-to-date data. A substantial portion of the evidence in this trial will consist of statistics and information collected and compiled by the Defendants in periodic reports, each of which is prepared according to a different schedule. Enforcing the discovery deadline would prevent Defendants from presenting an incomplete trial record that Plaintiffs would be unable to challenge.

Moreover, if post-discovery evidence were admitted at trial, equity and fairness would require that Plaintiffs be allowed to pursue supplemental discovery.[4] Otherwise, discovery would, in effect, remain open for the Defendants, who control the information concerning post-discovery factual developments, but closed for Plaintiffs, greatly prejudicing Plaintiffs at trial.

---

[4] If post-discovery evidence is admissible at the liability trial, the Court should order Defendants to submit forthwith a list of all post-discovery evidence that Defendants intend to use. If Defendants can demonstrate that exclusion of a specific post-discovery fact or event would cause them substantial material prejudice, then the Court should allow prompt additional discovery on those topics prior to trial, pursuant to an expedited discovery schedule. Absent such additional protections, Defendants should be precluded from introducing any post-discovery evidence.

*See East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995)(court must not deny discovery if it is "indispensable to a fair, rounded, development of the material facts")(quoting *Townsend v. Sain*, 372 U.S. 293, 322 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1991)). "Basic justice dictates that both sides be treated equally, with each having equal access to the evidence in the possession or under the control of the other."[5] *In re Union Carbide Corp.*, 809 F.2d 195, 205, 206 (2d Cir. 1987)(noting "the rights of the parties to have reciprocal discovery of each other on equal terms under the Federal Rules"). Such additional discovery would result in significant burdens and costs on both parties and impede their ability to adequately prepare for the May 7, 2007 trial. Allowing in post-discovery evidence might also result in an endless cycle of discovery as Defendants attempt to benefit from last minute modifications to services or their creation of new information about the Mississippi child welfare system (much of which might be driven by trial exigencies). Thus, not only would both parties be burdened if post-discovery evidence is admitted, but the Court would be forced to evaluate the reliability of information not fairly tested by full and timely discovery.

Therefore, in order to ensure the swift and efficient resolution of this case, avoid unfair prejudice to Plaintiff, and avoid undue burden on the Court and the parties, the Court should enforce its April 17, 2006 discovery deadline and exclude any evidence obtained or created after that date from the liability trial.

---

[5] While Plaintiffs requested and received the opportunity from this Court to supplement their witness list, Plaintiffs' July 10, 2006 motion sought leave to add three witnesses regarding facts that occurred *prior* to the close of discovery, at a time when the pretrial conference and trial had yet to be rescheduled. Plaintiffs readily agreed to provide Defendants a summary of the proposed witness' anticipated testimony and an opportunity to take their depositions, both of which have already occurred. (*See* Pls.' Mot. for Leave to Supplement Witness List, at 3 (attached at Ex. 9).)

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion *In Limine* to Exclude Post-Discovery Evidence at the May 7, 2007 Liability Trial.

RESPECTFULLY SUBMITTED, this the 16th day of February, 2007.

/s Melody McAnally_____
W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

Stephen H. Leech (MBN 1173)
618 Crescent Boulevard, Suite 103
Ridgeland, MS 39157
P. O. Box 3623
Jackson, Mississippi 39207
Telephone: (601) 607-4172

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York 10001
Telephone: (212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, New York 10154
Telephone (212) 407-4000

*PLAINTIFFS' COUNSEL*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2007 I electronically filed the foregoing with the Court using the ECF system, which sent notification of such filing to the following:

>Dewitt L. ("Rusty") Fortenberry Jr., Esq.
>Barry C. Campbell, Esq.
>Kenya Key Rachal, Esq.
>Gretchen L. Zmitrovich, Esq.
>Ashley Tullos Young, Esq.
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
>428 I-55 North
>Meadowbrook Office Park
>Jackson, MS 39211
>(601) 351-2400
>
>Harold E. Pizzetta, III, Esq.
>Assistant Attorney General
>General Civil Division
>Carroll Gartin Justice Building
>430 High Street
>Jackson, Mississippi  39201

*Attorneys for Defendants Haley Barbour, et al.*

/s Melody McAnally