"permanency compliance orders were [only] in 54.3 percent of the case records and Permanency orders found in 38.7 percent of the cases reviewed." The Self Assessment also concedes that "[a]lthough MACWIS has the ability to track" the required annual judicial permanency reviews, "inadequate information has been entered." "Accuracy and timeliness of these hearings are not currently being measured."[376]

The May 2004 CFSR Final Report likewise found that Mississippi is not in substantial conformity with the systemic factor requiring a case review system, including the following problems:

- MDHS/DFCS is "unable to consistently implement a process to ensure the periodic review of the status of each child, no less frequently than once every 6 months," either by a court or by administrative review.

- MDHS/DFCS is not consistently "ensuring that each child in foster care has a permanency hearing no later than 12 months from the date the child entered foster care and no less frequently than every 12 months thereafter."

- MDHS/DFCS does not "consistently provide a process for foster parents, preadoptive parents, and relative caregivers of children in foster care to be notified of, and have an opportunity to be in, any review or hearing with respect to the child."[377]

The March 2005 PIP, however, concedes that DFCS has yet to determine a baseline percentage of children afforded a six-month administrative review (county conference or CC) within six months of custody and every six months thereafter, or a baseline percentage of children afforded an annual 12-month Permanency Hearing.[378] Further, the March 2005 PIP plans to improve the percentage of foster children who have appropriate permanency plans, as well as increase the statewide percentage of children afforded six-month administrative reviews and annual Permanency Hearings, by "[c]ollaborat[ing] with CIP [the Court Improvement Project] and AOC [Administrative Office of Courts] to distribute monthly reports for county youth court judges that will improve the consistency of periodic review of the status of each child." The PIP plans to develop a Title IV-E Compliance Report (by June 2005) and a Periodic Review and Permanency

81

EXHIBIT
bb

Hearing Report (by July 2005) "to provide to youth court judges to make them aware of Title IV-E compliance or non-compliance per county and [the] need for Permanency Hearings." Before being released to the courts, these reports will be sent to the Regional Directors and counties for review and corrections to ensure data accuracy: the initial Compliance Reports will be ready for release by July 2005 and the initial Permanency Hearing Reports by August 2005. The DFCS Division Director and CIP Director will then meet with the Mississippi Supreme Court Chief Justice to initiate the monthly reports for the youth court judges, and a cover letter to the judges explaining the reports and expectations will be sent in July 2005. Copies of the reports will then be sent to the AOC, who will then forward them on to the youth court judges and also request responses from the judges. The AOC will then forward both the reports and the judges' responses to the Mississippi Supreme Court Chief Justice. This process will occur monthly, beginning in July 2005 for the Compliance Reports and in August 2005 for the Permanency Hearing Reports. Finally, beginning in June 2005, periodic meetings between the DFCS Division Director, the CIP Director and the Mississippi Supreme Court Chief Justice will occur "to address identified trends or patterns based on the data," "responses from the Youth Court Judges related to the monthly reports," and "other court and agency issues impacting timely permanency." A schedule of these meetings and notes will indicate that these meetings have occurred.[379]

ACF reviewed Mississippi's second quarterly PIP progress report for July-September 2005 and found that MDHS had not yet completed any of the action steps due in the first two quarters of PIP implementation related to collaborating "with the [Court Improvement Project] and the [Administrative Office of the Courts] to distribute monthly reports for county youth court judges that will improve the consistency of periodic review."[380]

(iii)    **Adoption Delays**

Federal law requires that for children who have been in custody 15 of the last 22 months, a petition to terminate parental rights (TPR) be filed or an acceptable exception document.[381] The Hess Case Record Review found that 79.7% of children in custody had been in MDHS custody for at least 17 months, yet MDHS failed to file a petition to free them for adoption or document a compelling reason for not filing a petition for the termination of parental rights (TPR). Of the children for whom a TPR petition was filed, 24.1% spent another two years or more waiting for TPR to be granted. Half of the children with a goal of adoption (51.0%) had been in MDHS custody for a total of 3 years or more; one in five (20.7%) had been in custody for a total of between 5 and 17.9 years. After being legally freed for adoption, 26.2% spent *another* 3 years or more in MDHS custody, up to as many as 11 years. MDHS failed to place 36.9% of the children with the goal of adoption in an adoptive home, and for 85.5% of children with this goal, MDHS made *no* efforts to identify an adoptive family for them in the two years covered by the review. For 34.1% of the children with the primary goal of placement or adoption *with a relative*, MDHS failed to identify *any* relative with whom the child could be placed or adopted.[382]

---

**Case Example**

*In a June 22, 2005 memorandum to a Jackson County supervisor, a foster care reviewer expressed concern at being unable to schedule nine county conferences on MACWIS for July 2005 "due to part of the Youth Court Summary not being completed by the social worker." The foster care reviewer states, "We haven't had this many cases that I was unable to schedule in a long time. I think the last time I can remember was when we first went on-line." As of July 5, two weeks after the problem was brought to the attention of the county supervisor, five of those nine cases were still locked, four of which were still unable to have county conferences scheduled Mem. from C. Dodge to M. Mathews, June 22, 2005, at DHS*

---

MDHS's own Foster Care Review Program found that as of the first quarter of FY 2006, more than one out of every four (26%) children who had been in custody for 15 of the past 22 months and who had not been referred for TPR had no compelling reasons documented.[383]  In the previous quarter, approximately one out of every three (32%) children who had been in custody for 15 of the past 22 months and who had not been referred for TPR had no compelling reasons documented.[384]

The Foster Care Review Program also found that as of the first quarter of FY 2006 41% of children with permanency plans of adoption did not have "steps in place" for the finalization of their adoptions within 24 months. "Agency staff was responsible for 36% of the barriers to achieving permanency through adoption within 24 months of entering states [sic] custody. These barriers include, but are not limited to, failure to complete a TPR referral, the court ordering a plan of TPR with the county completing the TPR referral in a timely manner but the referral was not process [sic] through the agency's state office in a timely manner, and county staff not appropriately returning petitions for TPR to the attorneys serving the agency in TPR matters."[385]  During the previous quarter, 22.2% of children freed for adoption had no documented involvement with the Agency's adoption unit.[386]

---

### Case Example

An August 2005 Foster Care Review reports that the permanency plan for fifteen-year-old Cindy "continues to be reunification although there is no evidence that the mother wants Cindy back or has attempted to secure reunification" and "the child does not want to return to her mother." According to the Foster Care Reviewer, Cindy has "on several occasions," "requested that her parents' rights be terminated soon." Though Cindy has been in care since October 2004, and her mother's parental rights have been terminated with respect to Cindy's sibling and half siblings, an adoption plan was not suggested for Cindy until August 15, 2005.  The Foster Care Reviewer further reports that an assessment of the safety and appropriateness of Cindy's placement cannot be made.  Cindy was returned to the foster home from which she was removed after another foster child in the home had sex with her, and "there is no documentation [at this time] that she has been seen since this move or that any other contact has been attempted with either Cindy or her foster parents to check on her adjustment," or to "verify that [the other foster child] is no longer in the home or that appropriate steps were taken to assure they would not have opportunity to be alone while he remains in the home."  Periodic Administrative Determination, August 18, 2005 DHS 070023.

---

Mississippi's Child and Family Services Review Data Profile, dated December 8, 2005, found that for Federal FY 2005 (ending September 30, 2005), of all children who exited care to finalized adoption, only 16.3% exited care less than 24 months from the latest date of removal. The national standard is 32% or more.[387]

MDHS's Self Assessment concedes that: "For those staff with a large caseload, the additional burden of TPR and adoption becomes secondary to crisis management. Additional staff and additional permanency training would help increase the number of finalized adoptions and lessen the ongoing caseloads in many areas."[388]  The Self Assessment also notes that "many children are in foster placements that will never be adoptive resources for them. Prolonged stay in these foster resources, and the lack of adoptive resources willing to take older or more difficult to place children is increasing the length of stay for many of the children in care." Inconsistent "social work practice and case coverage from county to county [also] has an impact on attaining permanent homes in a timely manner for children."[389]  Inadequate assessments of the child's background and poor matches between the child and the prospective parents also contribute to [adoption] disruptions."[390]

The May 2004 CFSR Final Report likewise finds that in 80% of the foster care cases reviewed with a goal of adoption "the State had not made concerted efforts to achieve an adoption in a timely manner."  The lack of consistency in filing for TPR in a timely manner was attributed to "[DFCS] staff shortages, high caseloads, a failure to conduct diligent searches for absent parents early on in the case, and a lack of legal counsel."[391]

Aware that its TPR process is slow, MDHS still clings to a routine practice of waiting until the child is

> **Case Example**
>
> *Siblings Sandy and Shana have been in care since September 1998. A January 2005 Foster Care Review reports that "[w]hen adoption began as the plan, [Sandy] was 8 1/2 years old and [Shana] was 6 1/2. They are now 13 and 11," and TPR hearings have yet to be held.  Periodic Administrative Determination, January 14, 2005 DHS 063809.*

legally freed to assign that child an Adoption Specialist.[392]  Because only Adoption Specialists recruit potentially adoptive parents, MDHS practice piggybacks on a flawed TPR process to further compound children's wait for a permanent family.  While children wait for families, approximately 50 families wait to be paired with them in the southern third of Mississippi alone.[393]  Such poor matching is the logical consequence of MDHS's decision to isolate the Social Worker responsible for foster children in every aspect except for adoption from the recruitment of adoptive parents for that child.[394]

By 2005, MDHS had acquired unfilled vacancies in the Adoption Specialist position, bringing it below the number of 18 specialists (supporting the entire statewide program) that MDHS itself deemed inadequate in its Self Assessment.[395]

---

### Case Example

A foster care reviewer observed and reported in June 2005 that the "compelling reasons given by the social worker do not appear to be appropriate reasons to not pursue TPR for" a 12-year-old foster child in agency custody for 15 of the most recent 22 months.  "The reasons given by the social worker are as follows: 'Worker has not submitted a TPR referral on [child] due to the **probability** that he would not be adopted if he were freed for adoption.  **Worker feels** that [child] would not allow himself to be adopted by anyone that would not be [child's] own choosing.  **Worker feels** [child] would make it extremely hard for himself to fit into a family if he did not choose to be adopted.'" (emphasis in original)Foster Care Review Monthly Case Status Report (Issues Observed During Foster Care Review), July 7, 2005, at DHS 047712

---

## V. CONCLUSIONS and RECOMMENDATIONS

An effectively functioning child welfare agency provides safety for children, support for families, and meets the needs of the children in foster care. This is accomplished through proper staffing and training, the development and provision of resources needed by families, and connecting the work within and across the agency so administration and communication is clear, open, and available to all employees. For the agency to remain effective in the work, performance accountability, feedback and results must be measured continuously. This review found the Mississippi child welfare agency to be dangerously under-staffed and untrained, and woefully lacking in any capacity to serve children and families. Even more frightening for children in MDHS custody is the lack of accountability or any method for effectively ensuring that children are being seen and, more importantly, kept safe.

**Recommendations**

This reviewer believes that in order for DFCS to become a successful child welfare agency all of the following recommendations must be completed from beginning planning stages through full implementation. In addition, an ongoing method for ensuring the maintenance of changes over time must be instituted. This reviewer does not believe that the MDHS organization is capable of meeting these recommendations without significant oversight and ongoing technical assistance.

### I. Staffing and Training

There are simply not enough people to manage the work of DFCS in Mississippi. The staffing should be addressed across the board, including social work staff, support staff and supervision staff in the counties, and administrative staff in the State Office to provide leadership and gauge effectiveness of the work. Mississippi should adopt and adhere to the CWLA

recommended caseload standards for all areas of work. These standards are the <u>maximum</u> recommended. Specific recommendations include the following:

A. Personnel
1. Implement the CWLA caseload standards for child welfare as follows:
Foster care cases = 12 to 15 children
Child protective services cases = 12 families
Adoption cases = 10 to 12 children
Ongoing in-home cases = 17 families
2. Implement the CWLA supervisor to worker ratios at 1 to 5.
3. Increase the support staff (e.g. secretarial, case aids, transportation) necessary to properly support the direct service staff.
4. Increase the State Office administrative staff in the program areas of Foster Care, Child Protective Services, Adoption, Licensing & Monitoring, and Quality Assurance to properly guide and support the direct service staff.
5. Establish a streamlined hiring process that allows vacancies to be quickly filled.

B. Salaries
1. Increase social worker salaries to bring them up to current market rates.
2. Establish a career ladder salary range to increase the retention rate of social workers and supervisors.

C. Education
1. Maintain or establish minimum educational requirements that direct service social work staff have a Bachelor's degree in social work and supervisory staff a Master's degree in social work.
2. Establish and implement an educational reimbursement program for staff to pursue advanced degrees to increase the retention rate of social workers and supervisors.

D. Training
Develop and implement a family-centered practice training program that encompasses all of the following:
- A comprehensive and easily understood curriculum;
- An evaluation component both for the trainee and the trainer;
- Resource materials for reference;
- Pre-service training with an evaluation component to be completed prior to social workers assuming caseloads.
- A supervisory training with an evaluation component to be completed within six weeks of supervisors assuming their positions;
- An on-the-job training (OJT) period;
- Required ongoing, formal in-service training for Social Workers and supervisors;

- Required and ongoing in-service training for foster and adoptive parents;
- A performance feedback mechanism for measuring quality of the training; and
- A regularly scheduled review, update, and revision of the training process to remain abreast of changes in statute, policy, and practice.

### II. Administration

Leadership for this agency is one of the weakest links. Mississippi simply cannot continue to move the same people around on the same chess board using different fingers to plug the proverbial hole in the dike. There is a great need for competent leadership across the agency from people who are highly skilled in the field of child welfare. DFCS requires leaders who are dedicated to the strong advocacy necessary to obtain the resources needed to stabilize the agency and provide for the children and families that DFCS serves. It is recommended that Mississippi consider a national search for future top leadership candidates. Specific recommendations include the following.

A. Leadership
1. Revise the State Office organization to provide a standardized communication and feedback loop among the areas of Programs, Finance, and Personnel.
2. Revise the State Office and County Office organization to provide a standardized communication and feedback loop between the State and County offices in areas of Programs, Finance, and Personnel.
3. Organize the Program structure within the State Office around the areas of Safety, Permanency, and Well-Being.
4. Increase State Office staffing and provide administrative training for new staff in the areas of Foster Care, Adoption, Child Protective Services, Licensing & Monitoring, and Quality Assurance.

B. Quality Assurance
1. Obtain technical assistance to develop and implement an ongoing quality assurance system using a standard protocol to include case file, stakeholder, and staff reviews.
2. Establish and implement meaningful outcomes to measure progress in the areas of safety, permanency, and well-being.
3. Establish and implement a process for reviewing Quality Assurance protocols and making any necessary adjustments every three years.

### III. Resources

Resources include both tangible tools to do the job as well as the funding of services for children and families. The ability to communicate quickly and process documents timely in meeting the safety, permanency, and well-being of children is an absolute necessity. The functioning of the MDHS MACWIS system is imperative so that all staff can monitor state and county staffing trends and advocate more effectively for necessary resources. To develop and access necessary resources DFCS requires funding in an amount sufficient to meet the needs of the children. Knowing what those needs are is critical to making the best use of available dollars. Specific recommendations include the following.

A. Communication Tools
1. Computer Access capability is a must for all employees. State Office and County staff must have access to E-mail and the State/Departmental Intranet. In addition, program area administrative staff should have Internet access.
2. Access to on-line reports through MACWIS and training in the use of these is necessary for State Office and County staff.
3. Glitches in the functioning and processing of information in the MACWIS system must be fixed. In particular, the inability to capture previous historical information from a family's ISP or monitor the provision of services.
4. The duplication of work in the paper file and the MACWIS file should be eliminated.

B. Services to Children
1. A comprehensive Needs Assessment with recommendations from an outside technical resource is needed.
2. Technical assistance is needed in developing and implementing a resource development strategy for service development including a development of a standardized RFP process.
3. Licensing and monitoring of foster homes and facilities must have a standardized process developed and implemented, including an incident reporting, correction system, and penalty system.
4. Policy and procedure should be developed and implemented for criminal background checks of anyone assuming responsibility for a child's care and in direct contact with children.
5. A recruitment plan to increase the number of foster and adoptive homes should be developed and implemented.

6. Placement of children in unlicensed homes, facilities, or institutions should be prohibited with associated penalties developed.
7. Practice improvements needed include the following.
   - Decreasing the number of adoption disruptions
   - Decreasing the use of congregate care and emergency shelter care
   - Prohibiting the placement of children under age six in emergency shelter care
   - Increasing the number of siblings placed together
   - Decreasing the number of child placement moves
   - Increasing the visitation between siblings and family members

[1] Miss. Code Ann. § 43-1-51; § 43-15-5

[2] MDHS website, www.mdhs.state.us (last visited February 7, 2006)

[3] Miss. Code Ann. § 43-15-5; 43-15-3

[4] Annie E. Casey Foundation, KIDS COUNT State Level Data Online, at 31-33, available at www.kidscount.org. KIDS COUNT is a national project of the Annie E. Casey Foundation that began in 1990 and tracks ten measures related to the status of children in the United States. The best data available is used to track children's social, emotional, and educational well being for both the United States as well as the individual states. The goal of the data gathered by KIDS COUNT is to measure child outcomes and increase public accountability for children's welfare. Since 1999, Mississippi has had the worst ranking of all the states in the U.S. at number 50. See also December 2003 Statewide Self-Assessment at P 001941.

[5] Joint Legislative Committee on Performance Evaluation and Expenditure Review (PEER), A Follow-up Review of the Division of Family and Children's Services of the Department of Human Services, May 11, 1999, at cover page

[6] P 001935, from MS CFSR State Assessment

[7] Child Welfare League of America, 11/1/92, at P 001210

[8] December 2003 Statewide Self-Assessment, at P 001935

[9] December 2003 Statewide Self-Assessment, at P 001936, 001945, March 2005 PIP, at DHS 038161

[10] Joint Legislative Committee on Performance Evaluation and Expenditure Review (PEER), A Follow-up Review of the Division of Family and Children's Services of the Department of Human Services, May 11, 1999, at cover page, 15-19

[11] May 10, 1999 Letter, attached to Joint Legislative Committee on Performance Evaluation and Expenditure Review (PEER), A Follow-up Review of the Division of Family and Children's Services of the Department of Human Services, May 11, 1999, at 31

[12] DHS 062821

[13] DHS 062903

[14] August 27, 2001, P 000195.

[15] May 8, 2002 letter, P 000153-55

[16] October 2002, P 002144

[17] Child and Family Service Review – Statewide Self-Assessment, December 2003

[18] Mississippi Sun-Herald, January 24, 2004.

[19] Mississippi Sun-Herald, April 24, 2004; May 21, 2004.

[20] May 2004 CFSR Final Rpt., at 1, 3-4.

[21] DFCS FY06 Budget Request Package, Attachment C, DHS 030742-46.

[22] March 2005 PIP, at DHS 038159-038356

[23] March 2005 PIP, at DHS 038162

[24] March 2005 PIP, at DHS 038162

[25] MS PIP, ACF Response to Second Quarterly Report, Dec. 11, 2005 at DHS 091690-691

[26] DFCS FY07 Budget Request Package, DHS 053725

[27] CWLA, Standards of Excellence for Foster Care Services (1995), at 113; CWLA, Standards of Excellence for Services for Abused or Neglected Children and Their Families (1999), at 137-38; CWLA, Standards of Excellence for Adoption Services (2000), at 101; CWLA, Standards for In-Home Aide Services for Children and their Families (1990), at 46.

[28] P 001943, 2003 Self-Assessment

[29] DHS 020088, MDHS – Division of Family and Children's Services, Workload Information, October 6, 2004; Mangold 5/16/05 Dep. 66:16-67:9.

[30] Direct Service Clients By Region, August 2005, DHS 091851-52

[31] Simpson Dep. 11:4, 12:1-6

[32] Henry Dep. 58:10-18, 59:3-14

[33] DHS 053725, DFCS FY 2007 Budget Request Package

[34] McDaniel Dep. 64:24-25

[35] Mangold 5/16/05 Dep. 67:10-14.

[36] FY 2006 MDHS Budget Request

[37] Mangold 6/2/05 Dep. 63:7-64:1

[38] March 2005 PIP, at DHS 038167; Mangold Dep. 6/2/05 Dep. 32:4-20

[39] DHS 053725

[40] FY2007 Budget, DHS 053725; Direct Service Clients By Region, August 2005, at DHS 091852.

[41] DHS 091861

[42] Hess Case Record Review Report, at Sec. IV.D

[43] PIP, DHS038162

[44] P 001945

[45] Rogers Dep. 284:6-8; McDaniel Dep. 67:20-68:11, 68:19-69:12

[46] Foster Care Review Summary Report Issues in Foster Children's Cases, September 22, 2003, DHS027224

[47] PIP, DHS038162

[48] Mangold 6/2/05 Dep. 14:15-15:8, 18:16-21, 19:6-17, 22:15-17

[49] Rogers Dep. 285:18-23

[50] McDaniel Dep. 9:11-15, 11:3-7, 11:19-25, 12:9-11

[51] McDaniel Dep. 14:19-20

[52] December 2003 Statewide Self Assessment, P 001940, 001958-59, 001979; March 2005 PIP, DHS 038178 -79

[53] Mangold 8/25/04 Dep. 73:19-74:12; Triplett 6/15/05 Dep. 17:20-25, 18:1-22.

[54] December 2003 Statewide Self Assessment, P 001984-87

[55] McDaniel Dep. 110:4-18; Triplett 6/1/505 Dep. 31:24-32:21; December 2003 Statewide Self Assessment, P 001988, 1990.

[56] Triplett 6/15/05 Dep. 32:25-33:9.

[57] McDaniel Dep. 116:8-11.

[58] Triplett 6/15/05 Dep. 39:8-16.

[59] PIP, DHS038178

[60] Triplett 6/15/05 Dep. 41:14-19; March 2005 PIP, DHS 038178

[61] December 2003 Statewide Self Assessment, P 001990, 92.

[62] Triplett 6/15/05 Dep. 17:20-22, 18:14-15, 18:17-22.

[63] DHS 53709-53710, FY 2007 Budget Request Package

[64] DHS 53711-53712, FY 2007 Budget Request Package

[65] DHS 019270, State Level Citizens Review Board, May 2004

[66] CWLA Standards of Excellence for Foster Care Services (1995), 113-14

[67] March 2005 PIP, DHS 038177

[68] Triplett 6/15/05 Dep. 17:20-22, 18:14-15, 18:17-22; PIP, DHS038178

[69] McDaniel Dep. 77:6

[70] 42 U.S.C. § 675(1); MS Policy Manual, Revised 05-01-99, at DHS 00161-62

[71] Hess Case Record Review, at Sec. VII.B

[72] Foster Care Review Monthly Case Status Report (Issues Observed During Foster Care Review), June 9, 2005, at DHS 047670

[73] Foster Care Review Monthly Case Status Report (Issues Observed During Foster Care Review), June 9, 2005, at DHS 047670

[74] Rogers Dep. 265:14-266:10; Miss. Code Ann. § 210.112(4)(3); MS Policy Manual, Revised 5-1-99, at DHS 00420.

[75] Rogers Dep. 243:9-14, 244:5-8

[76] DHS 088835

[77] Mangold 6/04 Dep. 22:11-14; DHS 088835

[78] DHS 088835

[79] December 2003 Statewide Self Assessment, at P 002075

[80] Mangold 5/16/05 Dep. 68:11-25.

[81] Mangold 5/16/05 Dep. 38:21-25

[82] Mangold 6/2/05 Dep. 83:22-85:10, 85:15-21, 86:2-10

[83] Triplett 6/15/05 Dep. 98:1-99:22

[84] Mangold 6/04 Dep. 20:14-21; 22:18-25

[85] Mississippi State Personnel Board, Statewide Payroll and Human Resources System (Oct. 11, 2005); Pin History of Current and Past Employees (Sept. 30, 2005).

[86] May 2004 CFSR Final Rpt., at 78

[87] Memorandum w/ attachments, McDaniel to Felder, July 11, 2005, DHS 066328-30 (emphasis in original)

[88] December 2003 Statewide Self-Assessment, at P 001936, 001945, March 2005 PIP, at DHS 038161

[89] Mangold 6/2/05 Dep. 66:4-67:1, 69:3-22.

[90] DHS Program Improvement Plan (PIP), March 2005

[91] Dep. Billy Mangold, 8/25/04 14:19-20

[92] MS PIP, ACF Response to Second Quarterly Report, Dec. 11, 2005 at DHS 091690-691

[93] Mississippi Program Improvement Plan, ACF Response to Second Quarterly Report, December 11, 2005, at DHS091690-1

[94] Letter from C. Williams to R. Felder, November 10, 2005, at DHS091817; Email from C. Pike to R. Felder, December 13, 2005, at DHS091837.

[95] May 2004 CFSR Final Rpt., at ??

[96] May 2004 CFSR Final Rpt., at 74.

[97] Young 10/2/04 Dep. 21:7-13.

[98] December 2003 Statewide Self Assessment, P 001939, 002008, 002029, 002044

[99] December 2003 Statewide Self Assessment, P001995-96, 2033-34

[100] December 2003 Statewide Self Assessment, P001995-96, 2033-34; Mangold 6/2/05 Dep. 32:4-20

[101] December 2003 Statewide Self-Assessment, P002000

[102] Brister Fiscal Report, XIV

[103] March 2005 PIP, at DHS038171

[104] Young 10/2/04 Dep. 76:25-77:1.

[105] March 2005 PIP, DHS 038172

[106] May 2004 CFSR Final Rpt., at 11, 72, 75

[107] Young 10/20/04 Dep. 16:12-17; December 2003 Statewide Self Assessment, at P002016, P001999, P002077; P001935-36, P001940, P002079-80.

[108] Rogers Dep. 81:13-17; 82:7-12; 281:15-16; McDaniel Dep. 79:5-8.

[109] 42 U.S.C. § 672

[110] Mangold 8/25/04 Dep. 66:22-67:16; 68:4-18; Young 10/20/04 Dep. 79:1-6

[111] May 2004 CFSR Final Rpt., at DHS 058975

[112] Mangold 8/25/04 Dep. 37:13-18; March 2005 PIP, at DHS 038188 .

[113] May 2004 CFSR Final Rpt., 60-61

[114] DHS 068717, September 14, 1999 PEER Report to the Mississippi Legislature, #397, p.4

[115] DHS 088995, Draft Mississippi March 2005 Site Visit Summary

[116] SACWIS Assessment Review Guide Workbook, March 2005, at DHS 089005

[117] SACWIS Assessment Review Guide Workbook, March 2005, at DHS 088912-13

[118] SACWIS Assessment Review Guide Workbook, March 2005, at DHS 089003

[119] Hess Case Record Review, Sec. VII.B

[120] Wilson 5/16/05 Dep. 60:13-61:8

[121] Wilson 5/26/05 Dep. 22:2-8, 34:23-35:3, 35:17-19, 37:3-25

[122] Mangold 6/2/05 Dep. 82:16-83:5

[123] Mangold 6/2/05 Dep. 79:11-14

[124] Mangold 8/25/04 Dep. 36:10-22; 39:8-12.

[125] March 2005 PIP, at DHS 038188

[126] Mangold 8/25/04 Dep. 98:24-99:6

[127] December 2003 Statewide Self Assessment, at P 001952-53

[128] Young 5/16/05 Dep. 26:4-5, 25:11-13

[129] McDaniel Dep. 70:6-14

[130] McDaniel Dep. 11:8-25

[131] McDaniel Dep. 80:17-81:14; Rogers Dep. 81:11-16, 82:18-83:3.

[132] Hamrick Dep. 91:14-92:5

[133] McDaniel Dep. 182:19-22

[134] Henry Dep. 20:11-20

[135] DFCS Organizational Charts, DHS 019809

[136] Mangold Dep. 8/25/04 118:22-119:11
[137] Triplett 10/24/04 Dep. 56:5-6
[138] Triplett 6/14/05 Dep. 27:15-17, 28:1-6
[139] Triplett 6/14/05 Dep.63:20-24, 64:3-14
[140] Young 6/15/05 Dep. 23:10-19
[141] Young 6/15/05 Dep. 33:12-17, 34:6-11
[142] Young 6/15/05 Dep. 35:15-17
[143] Significant Weekly Activities Report, August 12, 2005, at DHS 061840
[144] Triplett Dep. 10/04 6:1-4, 7-23; 7:4-11
[145] Triplett Dep. 10/04 84:14-85:1; 85:18-23
[146] Rogers Dep. 8/05 71:7-14
[147] McDaniel Dep. 140:6-9, 140:24-141:14; Rogers Dep. 144:220145:8
[148] McDaniel Dep. 169:25-170:3
[149] Rogers Dep. 84:5-85:11, 86:5-19, 89:23-90:5
[150] Rogers Dep. 221:12-222:4, 12-19
[151] Young 6/15/05 Dep. 15:6-17:20, 41:24-42:25
[152] 42 USC § 9801; 45 CFR 1355.50 - 1355.57
[153] Hamrick Dep. Exb. 80, DHS 00526
[154] Wilson 5/16/05 Dep. 28:22-29:2
[155] Rogers Dep. 97:25-98:3
[156] DHS 037277-037399, Number of Children in Custody by Placement Type by Region and Statewide
[157] December 2003 Statewide Self Assessment, at P 001979
[158] December 2003 Statewide Self Assessment, at P 001979-80
[159] December 2003 Statewide Self Assessment, at P 001995.
[160] December 2003 Statewide Self Assessment, at P 002035-37
[161] December 2003 Statewide Self Assessment, at P 002040
[162] December 2003 Statewide Self Assessment, at P 002013-14
[163] May 2004 CFSR Final Rpt., at 67-69
[164] Henry Dep. 85:18-86:3
[165] Foster Care Review, at DHS 00522-00539; Hamrick Dep. 17:20-25
[166] DHS 00512 – 00539; Hamrick Dep. 27: 7-11
[167] Hamrick Dep. 80:20-81:3
[168] Hamrick Dep. 12:7-10
[21] Hamrick Dep. 23:4-21; 25:4-6; 41:4-42:2
[170] Hamrick Dep. 41:19-49:2
[171] March 2005 PIP, at DHS 038186-87, 038336-37
[172] March 2005 PIP, at DHS 038186-87, 038336-37
[173] CWLA CAN 6.3, FC 1.4, 2.69-2.70; 45 CFR § 1355.34(b)(i)(A); MS Policy Manual DHS 00473
[174] DHS 00384, DFCS policy manual, Procedural Guidelines for Placement of a Child
[175] CWLA HC 3.2; CWLA HC 3.3, 3.4; CWLA HC 3.5, 3.6, 3.7; CWLA HC 3.8, 3.9.
[176] 42 U.S.C. § 675(5)(A)); MS Policy Manual DHS 00385; 00434 ; CWLA FC 2.29
[177] MS Policy manual DHS 00384
[178] MDHS policy DHS 00392, (CWLA FC 2.55)
[179] May 2004 CFSR Final Rpt., at 1-2
[180] Rogers Dep. 126:7-18; Young 6/15/05 Dep. 90:2-91:7
[181] McDaniel Dep. 132:18
[182] McDaniel Dep. 132:12-21
[183] Mangold 5/16/05 Dep. 20:11-22
[184] Rogers Dep. 190:23-191:4
[185] Hess Case Record Review, at Sec. III
[186] Number of Children in Placements by Placement Type, November 15, 2005, at DHS 088133.
[187] December 2003 Statewide Self Assessment, P001935-36
[188] Mississippi Child and Family Services Review Data Profile, December 8, 2005, at DHS091826.
[189] Hess Case Record Review, at Sec. IV.B

[190] PIP, DHS 038177

[191] December 2003 Statewide Self Assessment, P 002064

[192] Rogers Dep. 191:5-10

[193] May 2004 CFSR Final Rpt., at 30-31

[194] Rogers Dep. 190:23-191:4

[195] Rogers Dep. 187:9-24

[196] Weekly Shelter Care Report, December 16, 2005, at DHS 092875-76

[197] Weekly Shelter Care Report for August 6 - August 12, 2005, August 16, 2005, at DHS 093248

[198] MDHS Item 6: Stability of Foster Care Placements / Emergency Shelter Care For the Month of May, 2005, June, 10, 2005, at DHS 044681-044735

[199] Mississippi Program Improvement Plan, ACF Response to Second Quarterly Report, December 11, 2005, at DHS091701-DHS091702; DHS091689-091728

[200] Hess Case Record Review, at Sec. V.C

[201] Therapeutic Foster Care Placement Log/Pending Placements, July 2005-January 2006, DHS 091892-091917

[202] Licensed Foster Homes, January 12, 2005, DHS 019272-019440

[203] May 2004 CFSR Final Rpt., at 27

[204] DHS 037277-037399 DHS Custody by Placement Type

[205] Mem. from W. Gillom to DFCS staff, February 26, 2003, DHS 047277

[206] Licensed Foster Homes, January 12, 2005, DHS 019272-019440

[207] May 2004 CFSR Final Rpt., at 80

[208] Licensed Foster Homes, January 12, 2005, at DHS019272-DHS019440

[209] MS Policy Manual DHS 00136-137; DHS 00368.

[210] NP 06369,06440,06423-06424

[211] December 2003 Statewide Self Assessment, P002057

[212] Triplett 6/14/05 Dep. 85:2-7, 14-17

[213] CWLA FC 2.30, COAS21.2.01a, S21.10.02

[214] May 2004 CFSR Final Rpt., at 40

[215] Hess Case Record Review, at Sec. VII.H

[216] May 2004 CFSR Final Rpt., at 42

[217] Hess Case record Review, at Sec. VII.G

[218] Hess Case Record Review, at Sec. VII.I.

[219] March 2005 PIP, DHS038166

[220] March 2005 PIP, at DHS 038215

[221] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071000

[222] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063545-46.

[223] Foster Care Review Program Quarterly Regional Comparison Report, 3rd Quarter FY 2005, DHS 047097-047098

[224] 42 U.S.C. 671§ (a)(15)

[225] MS Code of 9172 § 43-15-13; MS Polocy Manual at DHS 00397, 00416-00417, 00467

[226] Rogers Dep. 240:8-12

[227] March 2005 PIP, at DHS038215.

[228] Mississippi's Program Improvement Plan Progress Report, Second Quarter: July-September 2005, November 4, 2005, at DHS091555.

[229] March 2005 PIP, DHS 038214

[230] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063543.

[231] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071001.

[232] March 2005 PIP, DHS 038166

[233] May 2004 CFSR Final Rpt., at 39

[234] Young 6/15/05 Dep. 93:17-97:1

[235] May 2004 CFSR Final Rpt., at 39

[236] McDaniel Dep. 161:17-23.

[237] December 2003 Statewide Self Assessment, p. 104

[238] McDaniel Dep. 140:24-141:14; Rogers Dep. 150:4-13, 150:18-22

[239] Mississippi's Program Improvement Plan Progress Report, Second Quarter: July-September 2005, November 4, 2005, at DHS091554.

[240] MS Policy Manual DHS00405

[241] May 2004 CFSR Final Rpt., at 30-31

[242] Hess Case Record Review, at Sec. III & IV.A

[243] December 2003 Statewide Self Assessment, P002071-72.

[244] Number of Placements for Children in Active Custody as of 10/31/05, November 15, 2005, at DHS 086435.

[245] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 070992-93.

[246] Hess Case Record Review, at Sec. IV.A

[247] December 2003 Statewide Self Assessment, P001935-36

[248] December 2003 Statewide Self Assessment, P001939, 2027, 2058

[249] May 2004 CFSR Final Rpt., Ex. at 48

[250] May 2004 CFSR Final Rpt., at 31-32

[251] McDaniel Dep. 164:10-12

[252] May 2004 CFSR Final Rpt., at 31-32

[253] Hess Case Record Review, at Sec. IV.A

[254] McDaniel Dep. 147:6-10

[255] Mississippi Program Improvement Plan, ACF Response to Second Quarterly Report, December 11, 2005, at DHS091728

[256] MS Policy Manual at DHS00392, DHS 00772

[257] Mangold Dep. 5/16/05 Dep. 28:24-25:11, 30:19-22

[258] Young 6/15/-5 Dep. 73:17-74:9

[259] McDaniel Dep. 27:18-28:1

[260] Henry Dep. 53:24-54:6; May 2004 CFSR Final Rpt., at 70; Rogers Dep. 75:3-76:3

[261] MDHS Bulletin No. 5692-2000

[262] Joint Legislative Committee on Performance Evaluation and Expenditure Review (PEER): Report to the Mississippi Legislature, May 11, 1999, at 4-5

[263] Hess Case Record Review, at Sec. IV.C

[264] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071080.

[265] March 2005 PIP, at DHS 038167, DHS 038224

[266] Custody Contact Report, November 10, 2005, at DHS 086211.

[267] Bulletin No. 5692, December 4, 2000, DHS

[268] DHS 007635-007637, DHS 040328-040330, DHS 040331-040333, DHS 040337-040339, DHS 040343-040345, DHS 072699-072701, DHS 075683-075685, DHS 079048-079050, DHS 083100-083104, DHS 086207-086211.

[269] March 2005 PIP, DHS 038224

[270] Rogers Dep. 67:11-14

[271] McDaniel Dep. 81:9-11.

[272] Licensed Foster Homes, January 12, 2005, at DHS 019272-440. Included are two "dummy homes" with addresses of "do not delete, jackson, MS."

[273] FY 2006 MDHS Budget Request

[274] May 2004 CFSR Final Rpt., at 68

[275] December 2003 Statewide Self Assessment, P002038-39

[276] December 2003 Statewide Self Assessment, P001995, 2033

[277] May 2004 CFSR Final Rpt., at 80

[278] Mississippi Child and Family Services Review Final Report, May 2004, at 20.

[279] Foster Care Review Program Quarterly Regional Comparison Report, 3rd Quarter, FY 2005, at DHS 047115

[280] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter, FY 2005, at DHS 063563

[281] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter, FY 2006, at DHS 070991

[282] Calendar Year 2005 MDHS Foster Home Investigations, DHS 01928-30

[283] DHS 047089, 063537, 070991

[284] Triplett 6/14/05 Dep. 67:1-5, 67:25-68:5

[285] McDaniel Dep. 222:25-223:4-11

[286] Rogers Dep. 108:25-109:4, 109:21-110:22

[287] Hess Case Record Review, at Secs. IV.F-H

[288] Triplett 6/14/05 Dep,. 35:8-16

[289] Triplett 6/14/05 Dep. 76:20-21, 77:6-10, 77:25-78:1

[290] Triplett 6/14/05 Dep. 79:13-17, 80:8-14

[291] December 2003 Statewide Self Assessment, P 002047, 2051

[292] Investigations Open More Than 30 Days, November 15, 2005, at DHS 088507.

[293] Child Investigation Timeliness Report – Statewide Summary, October 10, 2005, at DHS 085782.

[294] May 2004 CFSR Final Rpt., at 3, 21-23

[295] May 2004 CFSR Final Rpt., at 27

[296] March 2005 PIP, at DHS 038194-95

[297] CWLA CAN 6.3, FC 1.4, 2.69-2.70; 45 CFR § 1355.34(b)(i)(A); MS Policy Manual DHS 00473

[298] Mangold 5/16/05 Dep. 30:8-14

[299] Dore, Martha M., "Emotionally and Behaviorally Disturbed Children in the Child Welfare System: Points of Preventive Intervention," Children and Youth Services Review, 21:1, pp. 7-29, 1999

[300] December 2003 Statewide Self Assessment, at P 001935-36, 001940

[301] December 2003 Statewide Self Assessment, at P 002016

[302] May 2004 CFSR Final Rpt., at 3, 58

[303] May 2004 CFSR Final Rpt., at 9

[304] May 2004 CFSR Final Rpt., at 2

[305] Mississippi Program Improvement Plan, ACF Response to First Quarterly Report, August 31, 2005, at DHS091535; Mississippi Program Improvement Plan, ACF Response to Second Quarterly Report, December 11, 2005, at DHS091725

[306] MS Policy Manual, Revised 05-01-99, at 3216; 3350.

[307] MS Policy Manual, Revised 05-01-99, at 3350.

[308] MS Policy Manual, Revised 05-01-99, at 3288; 9007.

[309] MS Policy Manual, Revised 05-01-99, at 3234.

[310] Hess Case Record Review, at Sec. V.A & B

[311] Hess Case Record Review, at Sec. V.C

[312] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071007.

[313] December 2003 Statewide Self Assessment, at P 002080-81

[314] December 2003 Statewide Self Assessment, at P 001940, 002082

[315] May 2004 CFSR Final Rpt., at 3, 58

[316] May 2004 CFSR Final Rpt., at 57

[317] Wilson 5/16/05 Dep. 34:7-35:3.

[318] Hess Case Record Review, at Sec. V.A

[319] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071007.

[320] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063548.

[321] December 2003 Statewide Self Assessment, at P 001940, 002079-80

[322] Wilson Dep 5/16/05 34:7-35:3

[323] May 2004 CFSR Final Rpt., at 57

[324] Rogers Dep. 234:15-18

[325] Rogers Dep. 227:15-24

[326] March 2005 PIP, at DHS 038229

[327] Hess Case Record Review, Sec. V.C

[328] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071008.

[329] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063548.

[330] December 2003 Statewide Self Assessment, at P 001940, 002082

[331] December 2003 Statewide Self Assessment, at P 001939

[332] May 2004 CFSR Final Rpt., at 58-59

[333] Wilson 5/16/05 Dep. 34:7-35:3

[334] March 2005 PIP, at DHS 038230

[335] 45 C.F.R. 1355.34(a)(iii)(B); 42 U.S.C. § 675(1)(c).

[336] Hess Case Record Review, at Secs. VI.A-D

[337] Hess Case Record Review, at Sec. VI.E

[338] December 2003 Statewide Self Assessment, at P 002077

[339] March 2005 PIP, at DHS 038166-67, 038227

[340] Wilson 5/16/05 Dep. 34:7-35:3

[341] 42 U.S.C. § 675 (1)(B), (5)(C), (5)(E).

[342] Hess Case Record Review, VIII.D

[343] DHS 084966.

[344] December 2003 Statewide Self Assessment, P 002067, 002074-75

[345] December 2003 Statewide Self Assessment, P 002067, 002074-75

[346] May 2004 CFSR Final Rpt., at 1, 30-34

[347] MS POLICY MANUAL DHS 03288

[348] MS Policy Manual, DHS 00395, 3297-3290, 3447-3448

[349] Hess Case Record Review, at Sec. VII.B

[350] Hess Case Record Review, at Sec. VII.C & D

[351] Hess Case Record Review, at Secs. VII.E-G, J

[352] Hess Case Record Review, at Sec. VIII.B

[353] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071004.

[354] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS063546.

[355] March 2005 PIP, at DHS 038206-07, 038276

[356] December 2003 Statewide Self Assessment, P 001938-40, 001956

[357] May 2004 CFSR Final Rpt., at 62

[358] May 2004 CFSR Final Rpt., at 33-35

[359] May 2004 CFSR Final Rpt., at 46, 52-53

[360] March 2005 PIP, at DHS 038177

[361] March 2005 PIP, at DHS 038173-038174

[362] Hess Case Record Review, VII.D

[363] March 2005 PIP, at DHS 038181

[364] March 2005 PIP, at DHS 038181

[365] Mississippi Child and Family Services Review Data Profile, December 8, 2005, at DHS091828.

[366] MS Policy Manual 3273

[367] May 2004 CFSR Final Rpt., at 45

[368] March 2005 PIP, at DHS038219

[369] December 2003 Statewide Self Assessment, at P 00212-13

[370] MS Policy Manual, at DHS 03446

[371] Hess Case Record Review, at Sec. VIII.C

[372] Foster Care Review Program Quarterly Regional Comparison Report, 3rd Quarter FY 2005, DHS 047095

[373] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 071005

[374] December 2003 Statewide Self Assessment, at P 001958, 001960, 001965

[375] Hamrick Dep 8:20-23

[376] December 2003 Statewide Self Assessment, at P 001963, 001967-68, 001977

[377] May 2004 CFSR Final Rpt., 61-64, 66

[378] March 2005 PIP, at DHS 038236

[379] March 2005 PIP, at DHS038172-DHS038173, DHS038279-DHS038280, DHS038326-DHS038329.

[380] Mississippi Program Improvement Plan, ACF Response to Second Quarterly Report, December 11, 2005, at DHS091702

[381] 42 U.S.C. § 675(5)(E)

[382] (Hess Case Record Review, Section IX.)

[383] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 070994

[384] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063541.

[385] Foster Care Review Program Quarterly Regional Comparison Report, 1st Quarter FY 2006, at DHS 070995.

[386] Foster Care Review Program Quarterly Regional Comparison Report, 4th Quarter FY 2005, at DHS 063541.

[387] Mississippi Child and Family Services Review Data Profile, December 8, 2005, Ex. __, at DHS091828.

[388] December 2003 Statewide Self Assessment, at P 002068

[389] December 2003 Statewide Self Assessment, at P 002027, 002075

[390] May 2004 CFSR Final Rpt., at 74

[391] May 2004 CFSR Final Rpt., at 65

[392] Millsaps Dep. 9:21-25, 12:"16-22, 24:11-18, 24:24-25:11

[393] Millsaps Dep. 79:15-80:1

[394] Mangold 5/16/05 Dep. 41:15-41:25.

[395] Mangold 5/16/06 Dep. 42:4-42:24.

Catherine R. Crabtree
Wetumpka, AL

February 7, 2006

# Appendix A

# CATHERINE R. CRABTREE

3949 JASMINE HILL ROAD
WETUMPKA, AL 36093

PHONE: (334) 567-0665
FAX : (334) 567-0660
E-MAIL: thegeneralshouse@aol.com

| | | |
|---|---|---|
| **EXPERIENCE** | **2003-Present** | **Consultant Services**<br>**Montgomery, AL** |

- Child welfare and juvenile justice expert court consultation.
- Organizational consulting, quality improvement, program development, evaluation and assessment, child advocacy assistance, mediation services, strategic planning, government relations, and business development.
- Consulting services to public and private agencies working with children and families.
- Consulting for clients in Alabama, New York, Mississippi, Georgia, Kansas, Virginia, Florida, Tennessee, and North Carolina.
- Retained as Interim Director of Quality Assurance, Alabama Department of Human Resources

**2001-2003**    **Tennessee Department of Children's Services**
**Nashville, TN**

**Assistant Commissioner, Compliance**

- Responsible for implementation monitoring of child welfare practice reforms through Compliance Division of the DCS federal settlement *Brian A. v. Sundquist.*
- Liaison and facilitator for DCS with federal monitor, Attorney General's office, Technical Assistance Committee for the Settlement Agreement, and Children's Rights attorneys for plaintiffs.
- Technical resource to DCS staff, outside agencies, legislators, and the general public in interpretation of the Settlement Agreement.
- Provided ongoing monitoring of the welfare of the named children in the Settlement Agreement.
- Reviewed and approved all contracts related to the Settlement Agreement.
- Finalized needs assessment expenditures related to the Settlement Agreement.
- Provided oversight for a racial disparity study, salary compensation study, graduate stipend program development, and IV-E training revenue maximization study.

**Assistant Commissioner, Program Operations**

- Responsible for child welfare, juvenile justice, and prevention programs for five regions of the state.

2

- Oversight of program operations in five regions including budgeting, staffing, programming, training, and resource development.

**July-December 2000**          **Science Applications International Corp.**
                                **Oak Ridge, TN**

**Director of Government Services**

- Developed and implemented organization transitional and training initiative for government and business.
- Member of team developing cultural change initiative for organizations.
- Led planning for child advocacy center perpetrator tracking system project.
- Facilitated legislative monitoring, tracking, lobbying.

**1995-2000**                   **Tennessee Department of Children's Services**
                                **Nashville, TN**

**Assistant Commissioner**

- Planned, developed, and implemented new department of state government (Department of Children's Services) merging 3000 employees and budgets totaling $370 million dollars.
- Responsible for child welfare, juvenile justice, and prevention programs for the State of Tennessee for central office and field operations.
- Oversight of staffing, budgeting, training, resource development, and administrative functioning of the twelve regions of DCS.
- Member of Governor's legislative team writing and passing key legislation including: creation of the new Department of Children's Services, inclusion of Adoption and Safe Families Act into Tennessee statute, the Tennessee Foster Parent Bill of Rights, and departmental improvement legislation resulting in an additional $15 million dollars to the DCS budget.
- Created regional Health Units across the state to improve health care access to children in state custody.
- Facilitator in development of state's first managed health care networks for TennCare (Medicaid) eligible children.
- Initiated and chaired first DCS project committee on development of federal SACWIS TNKIDS Information System.
- Created an implementation review process for monitoring and auditing casework performance in the field.

**1994-1995**                   **East Tennessee Community Health Agency**
                                **Knoxville, TN**

**Director of Children's Services**

- Administrator of a 15 county region with 75 employees for program serving children in state custody and prevention programs for those at risk of state custody.

3

- Developed and chaired first Regional Utilization Group in the state responsible for development of a managed care review methodology in social services child custody arena.
- Developed policy and procedure in relation to programming for child population served by the agency.
- Developed monitoring and reporting mechanisms to improve service delivery to children and families.

**1993-1994**              **Peninsula Lighthouse**
                           **Knoxville, TN**
**Director of Mental Health Programs**

- Developed a new service of Peninsula Psychiatric Hospital that provided an outpatient day treatment program for psychiatric patients.
- Responsible for budgeting, staffing, training, and administrative supervision of staff.
- Provided individual clinical counseling and group and family therapy to psychiatric outpatient population.

**1991-1993**              **The Krisland Group**
                           **Knoxville, TN**
**Vice-President**

- Group communication and facilitation training using process communication therapy as basis of work with business and industry clients.
- Outplacement counseling for employees and groups in transition from job loss.

**1987-1989**              **Peninsula Psychiatric Hospital**
                           **Louisville, TN**
**Director of Admissions**

- Developed the first Admissions Department for the hospital.
- Responsible for the administration of the department including budgeting, training, staffing, and liaison with surrounding area hospitals.

**1982-1987**              **Private Practice**
                           **Knoxville, TN**
**Psychological Examiner**

- Conducted testing and assessment using MMPI, intelligence tests, and projective tests with children, adolescents, and adults.
- Provided court consultation and testimony, and individual and group therapy with children, adolescents, and adults.
- Developed and taught seminar on Child Behavior Management for University of Tennessee Continuing Education division.

4

|  |  |  |
|--|--|--|
| **1979-1982** | **Cherokee Mental Health Center** | |
| | **Morristown, TN** | |

**Community Liaison**
- Provided pre-adjudication screening for juvenile courts in six counties for assessment and treatment needs of juvenile offenders.
- Administrator for Law Enforcement Planning Grant (LEPA) to provide consultation and education to local youth shelters, juvenile courts, and law enforcement agencies for juvenile offender mental health concerns.
- Provided group and individual therapy for children and adolescents.
- Provided classroom behavioral observation and consultation with local schools in a six-county area.

|  |  |  |
|--|--|--|
| **1977-1979** | **East Tennessee Human Resource Agency** | |
| | **Knoxville, TN** | |

**Program Counselor**
- Provided counseling to adolescents in a specialized program for juvenile offenders "Youth Opportunities Unlimited".
- Developed and implemented a weekend wilderness program for this same population.

**EDUCATION**

1977        University of Tennessee        Knoxville, TN
- **B.S. Education**

1982        University of Tennessee        Knoxville, TN
- **M.S. Educational Psychology**

**LICENSURE and**
**CERTIFICATION**

Psychological Examiner, State of Tennessee; License #PE925 (inactive)
Civil Mediation certification

**PUBLICATIONS**
**and PAPERS**

Rogers, C.R. and Wahler, R.G. *Barriers to Child Behavior Change: Insularity and Child Opposition.* Tennessee Educational Leadership, Summer 1982, Vol. IX, No.1.

Rogers, C.R. *Hidden Measurement: Preliminary Data from the Audiotape Sampling Project.* Paper presented at AABT Social Learning Symposium. Toronto, Ontario, Canada, 1981.

Rogers, C.R., and Gump, B. *MMPI Code Types, Referral Behaviors, and Recidivism in an Outpatient Adolescent Treatment Population. Unpublished monograph, 1983.*

**HONORS**

Who's Who Among Human Services Professionals, 1986-1987.