**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JAMES D. JOHNSON, as next friend to                                    PLAINTIFFS
Olivia Y., et al.

vs.                                                    CIVIL ACTION NO. 3:04cv251LN

HALEY BARBOUR, as Governor of the                                    DEFENDANTS
State of Mississippi, et al.

---

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO
SUPPLEMENT DEFENDANTS' INITIAL DISCLOSURES**

---

COME NOW, Haley Barbour, as Governor of the State of Mississippi, Donald Taylor, as
Executive Director of the Mississippi Department of Human Services, and Rickie Felder, as
Director of the Division of Family and Children's Services ("Defendants") and file Defendants'
Reply in Further Support of Motion for Leave to Supplement Defendants' Initial Disclosures.

Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure provides that a party must
provide to other parties:

> A copy of, or a description by category and location of, all documents, data
> compilations, and tangible things that are in the possession, custody, or control of
> the party and *that the disclosing party may use to support its claims or defenses*,
> unless solely for impeachment.

*Id.* (emphasis added). Through their Motion for Leave to Supplement Defendants' Initial
Disclosures ("Defendants' Motion for Leave"), Defendants seek the use of six specific
documents to support their defense:

1)      House Bill No. 1576 (attached as Exhibit "A" to Defendants' Motion for Leave);

2)    MDHS FY 2008 Budget Request to the Mississippi Legislature (attached as Exhibit "B" to Defendants' Motion for Leave);

3)    Executive Budget Recommendation Fiscal Year 2008 to the Mississippi Legislature (attached as Exhibit "C" to Defendants' Motion for Leave);

4)    June 30, 2006 letter from Williams to Taylor re: Program Improvement Plan ("PIP") approval and enclosing approved PIP effective April 1, 2006 (attached as Exhibit "D" to Defendants' Motion for Leave);

5)    October 31, 2006 letter from Felder to Pike re: 1st Quarterly Report (April 1, 2006-June 30, 2006) and 2nd Quarterly Report (July 1, 2006-September 30, 2006) (attached as Exhibit "E" to Defendants' Motion for Leave); and

6)    Mississippi FY 2006 Annual Progress and Services Report ("APSR") dated November 2006 (attached as Exhibit "F" to Defendants' Motion for Leave).

In their Response in Opposition to Defendants' Motion for Leave to Supplement Defendants' Initial Disclosures ("Plaintiffs' Response"), Plaintiffs object to Defendants' use of post-discovery documents and assert they will be unduly prejudiced by their use. However, Plaintiffs have failed to show how Defendants' use of *these six* documents unduly prejudices them.[1]

Plaintiffs assert these documents were "cherry-picked" by Defendants and that they "are replete with selective data and self-serving characterizations." *See* Plaintiffs' Response at pp. 1 & 3. Plaintiffs also assert they are being sand-bagged with new evidence without an opportunity

---

[1] Plaintiffs only specifically object to one document – the October 31, 2006 letter from Felder to Pike regarding the quarterly reports to the federal government on the implementation of the PIP – and give four examples of why they assert the document is "replete with selective data, but lacking in any underlying documentation." *See* Plaintiffs' Response at p. 13. The majority of these specific examples of prejudice involve missing pages or missing attachments; Defendants have no objection to providing Plaintiffs with complete copies of these six documents.

2

to prepare for a response at trial.[2]   Contrary to Plaintiffs' arguments, these documents are documents that are maintained in the ordinary course of business, that are required by state and/or federal statutes, that provide an accurate and comprehensive representation of the State of Mississippi's foster care system, and that Plaintiffs knew about prior to the discovery cut-off period.

Plaintiffs further assert these documents are not necessary for Defendants' defense in this lawsuit.  Defendants' defense in this lawsuit has consistently been that the Plaintiffs do not have standing to seek injunctive relief, that Defendants have not been deliberately indifferent towards the Plaintiffs' constitutional rights, and furthermore, that a federal injunction is not necessary. *See, e.g.* Defendants' Answer and Defenses to Amended Complaint.  Any restriction on Defendants' ability to adequately present evidence to defend this lawsuit is highly prejudicial, and while Defendants deny that Plaintiffs will be prejudiced by the introduction of these six documents, any prejudice to Plaintiffs is outweighed by the prejudice to Defendants.  Despite Plaintiffs' assertion to the contrary, in an injunctive case based on constitutional violations, Defendants' actions, up to and including their actions at the time of trial, are relevant to whether Plaintiffs even have standing to bring such a case and to whether Defendants are acting with deliberate indifference towards those rights.

---

[2] As shown in Defendants' Motion for Leave, Plaintiffs knew of these documents and their content during the discovery phase and even conducted discovery on the information contained in the documents.  In their Response, Plaintiffs do not dispute this prior knowledge.  Plaintiffs assert that their experts will not have an opportunity to respond as these documents were produced after the discovery cut-off period established by this Court. Interestingly, even if Defendants had produced these six documents on the last day of discovery, April 17, 2006, Plaintiffs' experts would not have had the opportunity under this Court's January 17, 2006, Amended Case Management Order to have their experts respond as Plaintiffs' expert reports were due in February 2006.  To date, Plaintiffs have not supplemented these expert reports to incorporate any discovery produced to them between February and April 2006.

## I.    The Exclusion of These Documents Would Be Prejudicial to Defendants.

The exclusion of these documents from this trial would be extremely prejudicial to Defendants.   Plaintiffs assert these six documents are irrelevant to a finding of liability. However by their own admission, Plaintiffs are seeking "relief from ongoing constitutional harms" because "children's lives continue to be affected every day by Defendants' unconstitutional actions."   *See* Plaintiffs' Response at p. 2 and 9, respectively.   Defendants readily admit that the case has been bifurcated by this Court.   Irrespective of that fact, this lawsuit is an equity case seeking injunctive relief, not damages.   Plaintiffs ignore binding precedent that establishes a difference in the two types of cases – a difference that is evident even at the liability stage.  As the Fifth Circuit has recognized,

> It is by now well settled that "the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a casual connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *For injunctions, an additional injury is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury.*

*James v. City of Dallas, Texas*, 254 F.3d 551, 563 (5th Cir. 2001) (citations omitted) (emphasis added); *see also id.* at 565 (Fifth Circuit recognizing that "standing to assert a claim for damages to redress past violations may not always give rise to standing for injunctive relief") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  Defendants maintain that their actions, as evidenced in these six documents, are relevant in proving that any alleged constitutional violations are not continuing at the present and that a favorable decision from this Court, sitting in equity, will not redress any injuries Plaintiffs may have suffered.[3]

---

[3] Plaintiffs assert that "post-discovery information does not affect whether Defendants are liable and Plaintiffs are entitled to injunctive relief for any period subsequent to the filing of Plaintiffs' Complaint in March 2004 and prior

Plaintiffs further assert that "[t]he reduction in the scope or magnitude of the legal violations during the period subsequent to the filing of the action cannot shield Defendants from liability, as long as the illegal conduct persists, or could possible recur." *See* Plaintiffs' Response at p. 11. Defendants do not dispute that injunctions can issue to ensure future compliance with the law (but not to remedy past violations) *if* it is shown that there is a possibility that the challenged conduct will recur. *See, e.g. Soc' of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."). Ironically, Plaintiffs cite several cases with that very holding. *See* Plaintiffs' Response at pp. 11-12. Not only should the six documents offered by Defendants be allowed into evidence to show there is no basis for liability, but also to show that if any past violations are found by this Court, there is no basis for finding that they are continuing or will be repeated in the future. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, n. 10 (1982) (Court noting that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . . [a party may show] the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary.").

Not only do these six documents speak directly to whether Plaintiffs have the right to seek an injunction for continuing constitutional violations, but also they speak to whether Defendants are liable for any harm suffered by Plaintiffs. Plaintiffs assert that the United States Supreme Court's holding in *Farmer v. Brennan*, 511 U.S. 825 (1994) is limited to "prison conditions cases under the Eighth Amendment where liability and entitlement to an injunction

---

to the discovery cut-off." *See* Plaintiffs' Response at p. 11. Such an assertion totally mischaracterizes the nature of injunctive relief. It is elementary hornbook law that injunctive relief is prospective and cannot be used to remedy past violations. *See, e.g.* 42 Am Jur 2d, Injunctions §§ 1-2.

require a showing of defendants' subjective disregard for the plaintiffs' safety . . . ." *See* Plaintiffs' Response at p. 8. However, as the United States Supreme Court itself recognized, *Farmer* outlined the Court's position on the deliberate indifference standard in a suit that "seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm." 511 U.S. at 845; *see also id.* at 828 ("This case requires us to define the term 'deliberate indifference,' as we do by requiring a showing that the official was subjectively aware of the risk."). Defendants assert the proper standard to judge their actions in this case is this deliberate indifference standard while Plaintiffs assert the proper standard is the professional judgment standard. This Court has not ruled on the issue, and in the face of uncertainly, Defendants would be highly prejudiced if they were not allowed to present evidence that they were not acting deliberately indifferent at the time of trial, as *Farmer* instructs. *Id.* at 845-46 ("the subjective factor, deliberate indifference, should be determined in light of the [defendants'] current attitudes and conduct, their attitudes and conduct at the time suit is brought and persisting thereafter.") (internal citations and punctuation omitted).

## II.    The Inclusion of These Documents Would Not Be Prejudicial to Plaintiffs.

### A.    Despite Plaintiffs' Characterization to The Contrary, These Documents Are Not Biased And Self-Serving But Are Statutorily Mandated Documents.

Plaintiffs assert that these six documents were "drafted and selectively chosen by Defendants" and "are replete with selective data and self-serving characterizations, but lacking in any underlying documentation." *See* Plaintiffs' Response at p. 3. This assertion cannot be further from the truth. All of these documents are business records maintained in the ordinary course of business, not documents specifically created for Defendants' defense in this lawsuit. Defendants could have easily presented a multitude of documents to present their defense in this lawsuit but because of their summarizing nature, these documents provide a mechanism for

Defendants to present their defense in as concise a manner as possible. For Plaintiffs to assert that underlying documentation is needed "in order to be able to investigate and question the data, and seek further confirming or contradictory information" is a blatant attempt by Plaintiffs to accuse Defendants of falsifying data and distorting facts in documents that are mandated by both federal and state law. *See* Plaintiffs' Response at p. 13-14. In addition, as Exhibit 1 to Plaintiffs' Response shows, Plaintiffs are using Defendants' Motion for Leave as an opportunity to reopen general discovery in this lawsuit.

House Bill No. 1576, the annual appropriations bill from the Mississippi Legislature, outlines the funds appropriated to MDHS by the Legislature. An unsigned copy of this bill was produced to Plaintiffs during discovery. During negotiations on a proposed pre-trial order, Plaintiffs objected to Defendants' use of this unsigned bill. Defendants now seek to use the signed copy to show the amount of funds allocated to MDHS for FY 2007. Surely, Plaintiffs are not attesting to this Court that a legislative bill, drafted by members of the Mississippi Legislature and signed into law by the Governor one day after the discovery deadline, was drafted by Defendants in an attempt to provide a biased view of the State's foster care system.

The MDHS FY 2008 Budget Request and the Executive Budget Recommendation for Fiscal Year 2008 are self-evidenced. Pursuant to Miss. Code Ann. §§ 27-103-129 and 27-103-139, MDHS and the Governor are required to submit an annual budget request and an annual budget recommendation, respectively, to the Mississippi Legislative Budget Office. By statute, MDHS' request includes "a definition of the mission of the agency, a description of the duties and responsibilities of the agency, financial data relative to the various programs operated by the agency and performance measures associated with each program of the agency." Miss. Code Ann. § 27-103-129(1). By statute, the performance measures outlined in MDHS' request were

developed jointly by the Legislative Budget Office, the Mississippi Department of Finance and Administration, and MDHS and were approved by both the Legislative Budget Office and the Mississippi Department of Finance and Administration prior to inclusion in the budget request. *Id.* By statute, the Governor's budget recommendation must include a balanced budget and includes his recommendation for every executive agency within the State. *Id.* at § 27-103-139. Plaintiffs cannot in good faith argue to this Court that these documents contain a biased picture of MDHS. In addition, given the extensive deposition testimony that Plaintiffs elicited from several deponents on the budgetary process and Defendants' intentions regarding their request for funding in FY '08, Plaintiffs also cannot argue in good faith that they need additional "underlying documentation" to adequately respond to these documents at trial.

The PIP and the quarterly reports on the implementation of the PIP are federally mandated documents. Pursuant to 45 CFR § 1355.35, MDHS was required to submit this PIP to the federal government to address the government's findings during the federal child and family services review. As Plaintiffs' counsel are aware, this PIP was developed jointly between MDHS and the federal government as opposed to being drafted by Defendants to present a one-sided view of the agency. As this PIP was developed pursuant to a federal review of the agency outside this lawsuit and must, by statute, contain accurate extensive data that is verified by the federal government and that covers a multitude of the agency's operations, Plaintiffs cannot argue in good faith that it contains a biased view of the State's foster care system.[4]

The FY 2006 Annual Progress and Services Report is another federally mandated document. Pursuant to Title IV-B and Title IV-E of the Social Security Act, 42 U.S.C. § 620 *et seq.* and 42 U.S.C. § 670 *et seq.*, the State of Mississippi is required to develop a five-year plan

---

[4] To the contrary, for example, the quarterly reports show areas of decline as well as vast improvements in the implementation of the federally mandated PIP.

for the provision of child and family services. The State's Child and Family Services Plan ("CSFP") is also governed by federal regulations found at 45 CFR §§ 1355.10 *et seq.*, 45 CFR §§ 1356.10 *et seq.* and 45 CFR §§ 1357.10 *et seq.* This plan is developed jointly with and approved by the Administration for Children and Families ("ACF") within the United States Department of Health and Human Services ("USDHHS"). 45 CFR § 1356.20, 1357.10(c), 1357.15(b)(4). The State of Mississippi's current CSFP covers the period October 1, 2004 through September 30, 2009 and was produced during discovery. Pursuant to 45 CFR § 1357.16, the State of Mississippi is required to submit an Annual Progress and Services Report to report "the progress made in the previous year toward accomplishing the goals and objectives in the" CSFP. The annual report for FY 2006, covering the operations MDHS from July 1, 2005 through June 30, 2006, is an unbiased reporting of the State's compliance with the CSFP.

**B.      Plaintiffs Have Not Established That Post-Discovery Documents Cannot Be Used As A Matter of Law.**

Plaintiffs cite several cases for the proposition that allowing post-discovery documents into evidence would, as a matter of law, be prejudicial to Plaintiffs. Plaintiffs have taken selective quotes, many times out of context, from these cases in an attempt to establish that this Court should not allow Defendants to use highly relevant documents at trial. However, the facts and holdings of the courts in these cases do not establish that Defendants should not be allowed to introduce important documents that were disclosed to Plaintiffs months before the trial and that Plaintiffs knew would be forthcoming. Additionally, Plaintiffs were made aware of the topics covered by these documents during the discovery phase and had adequate opportunity to conduct adequate discovery. Plaintiffs have simply failed to show how these particular

documents would be prejudicial to them and why this Court, sitting in equity, should not be allowed to hear evidence regarding these documents.

In *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), the Fifth Circuit reversed the trial court's denial of the plaintiff's request for a new trial after the plaintiff discovered that the defendant had purposefully, and in violation of a court order on a motion to compel, withheld a document *that was available to the defendants during discovery and that was relevant to the plaintiff's case.* Likewise, in *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998), the court upheld the trial court's exclusion of a patent *that was available to the defendants prior to the discovery cut-off and that was applicable to discovery sought by the plaintiffs* but was not produced by the defendants until after the close of discovery. The court held the record showed that the defendant offered no reason to justify the submission of the document after the close of discovery. *See also ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, 2001 WL 1381098 (D. Minn. Oct. 18, 2001) (court holding same in similar fat pattern; *Abbott Laboratories v. Syntron Bioresearch, Inc.*, 2001 WL 34082555 (S.D. Cal. Aug. 24, 2001) (same).

In *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1114 (6th Cir. 2001), the court denied the plaintiff's request to extend discovery in *an attempt to find additional discovery likely to produce relevant evidence to support his claim. See also Perkins v. American Electric Power Fuel Supply*, 246 F.3d 593 (6th Cir. 2001) (denying plaintiff's request to extend discovery when plaintiff had failed to show what information or discovery was needed and its relevance to his case).

In *Transclean Corp. v. Bridgewood Services, Inc.*, 101 F. Supp. 2d 788, 796 (D. Minn. 2000), the court refused to allow the defendants to *supplement their expert's report less than a month before the scheduled start of the trial* because the plaintiffs did not have time to depose

the expert and develop rebuttal expert opinion evidence. *See also Hill v. Porter Memorial Hospital*, 90 F.3d 220 (7th Cir. 1996) (court excluding two expert reports disclosed by plaintiff after discovery deadline noting that plaintiff did not have a "justifiable excuse" for non-disclosure).

In *Marcin Engineering, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516 (D. Col. 2003), the defendant requested leave of the court to supplement its expert report because the plaintiff had failed to produce documents that were available to the plaintiff during discovery and that were responsive to the defendant's discovery requests. The court denied the defendant's request because the defendant had not been diligent in reviewing documents produced to it during discovery for completeness and had not provided its expert with the documents produced by the plaintiff before he finalized his expert report, and because the plaintiff had relied on the defendant's expert report in filing motions to exclude his testimony and in summary judgment and would be prejudiced by the delay resulting from reopened discovery.[5]

Interestingly, a full reading of the cases cited by Plaintiffs actually supports Defendants' use of these documents. In *Pratt v. Pharmnet, Inc.*, 2006 WL 2943296 (N.D. Miss. Oct. 13, 2006), the plaintiff filed a motion to strike exhibits to be offered by the defendants at trial on the grounds that the documents had not been produced during discovery. The court granted one of the motions for a document *that, while available during discovery, was not disclosed until after the final pretrial conference. Id.* at *3 (in granting the motion, the court found that "to allow their inclusion at this late juncture would undoubtedly be prejudicial"). The court, however, denied the other motion, despite the fact that the document was not produced in discovery. *Id.* at

---

[5] Plaintiffs assert the court denied the defendant's request to submit an additional expert report because of the prejudice to the plaintiff resulting from the plaintiff's expert's reliance on the previously submitted defendant's expert report. *See* Plaintiffs' Response at p. 7. This characterization of the facts is incorrect; the court does not even mention the plaintiff's expert or its reliance on the defendant's expert report.

*2. The court analyzed whether the document would be allowed into discovery based on four factors outlined by the Fifth Circuit under Rule 37: "(1) the importance of the evidence; (2) the prejudice to the opposing party of allowing the evidence to be used at trial; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the evidence." *Id.* The court found that the defendants had not shown the document's importance, that it could not grant a continuance, and that the defendants had not provided an explanation for their failure to identify the document. *Id.* Despite the fact that three of the factors weighed against allowing the evidence to be used at trial, the court found that since the plaintiff knew or should have known of the document, there was no harm in allowing it to be used. *Id.* In *Williams v. Monarch Machine Tool Co., Inc.*, 26 F.3d 228 (1st Cir. 1994), the court was faced with an appeal of the trial court's denial of the plaintiff's motion for a new trial based on the wrongly admission of expert testimony. The expert had been disclosed a month before trial. On appeal, the First Circuit held that "[s]uch last-minute expert testimony is often improvisation rather than ambush, but it can still undermine trial preparations carefully made by an adversary over many months or even years." *Id.* at 230. The court continued by noting that "the broad discretion of trial judges to manage scheduling, discovery and sanctions cuts both ways. Through no one's fault, evidence is sometimes obtained belatedly when a gap in proof is perceived or a new source is uncovered. Discovery aims only to mitigate surprise, for nothing can eliminate it entirely from trial practice." *Id.* Based on the evidence before it, the court found the district court did not abuse its discretion in refusing to exclude the testimony. *Id.* at 231.

WHEREFORE, Defendants respectfully request that the court grant Defendants' Motion for Leave to Supplement Defendants' Initial Disclosures.

This the 26th day of February, 2007.

Respectfully submitted,

**HALEY BARBOUR, as Governor of the State of
Mississippi; DONALD TAYLOR, as Executive Director
of the Department of Human Services; and
RICKIE FELDER as Director of the Division of
Family and Children's Services**

BY:  /s/ Dewitt L. ("Rusty") Fortenberry, Jr.

**OF COUNSEL:**

Attorney General Jim Hood
State of Mississippi
P.O. Box 220
Jackson, MS 39205-0220

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
Barry C. Campbell (MSB #99535)
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the
Court using the ECF system which sent notification of such filing to the following:

W. Wayne Drinkwater, Jr. Esq.
Melody McAnally, Esq.
BRADLEY ARANT ROSE & WHITE LLP
188 East Capital Street, Suite 450
Jackson, Mississippi  39201

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi 39202

Eric E. Thompson, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York  10001

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi  39205

I also certify that I have this day served a copy of the foregoing on the following non-ECF participants by United States Mail, postage prepaid:

Marcia Robinson Lowry, Esq.
Susan Lambiase, Esq.
Shirim Nothenberg, Esq.
CHILDREN'S RIGHTS, INC.
330 Seventh Avenue, 4th Floor
New York, New York   10001

John Lang, Esq.
Christine Carbone, Esq.
John Piskora, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, New York 10154

SO CERTIFIED, this the 26th day of February, 2007.


 /s/ Dewitt L. ("Rusty") Fortenberry, Jr.