IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                          PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*          DEFENDANTS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF STIPULATED SETTLEMENT AGREEMENT**

**PRELIMINARY STATEMENT**

The parties have jointly moved for final approval of the proposed settlement agreement whose terms are embodied in the proposed Stipulated Settlement Agreement attached to the Joint Motion as Exhibit 1 and as to which the Court granted preliminary approval on April 3, 2007. Plaintiffs submit this memorandum in support of the Joint Motion.

This is a certified class action brought pursuant to 42 U.S.C. § 1983 on behalf of a class of children who are or will be in the legal or physical custody of the Mississippi Department of Human Service ("MDHS") Division of Family and Children's Services ("DFCS"). As alleged in the Amended Complaint and confirmed by overwhelming evidence developed in preparation for trial, including Defendants' own expert review, Defendants are operating a foster care system in crisis that is harming the very children it is meant to protect because of a chronic lack of staffing, training, resources, and accountability. Among the facts established by Defendants' own documents are a rate of maltreatment of class members in Defendants' custody at over five times

1

the federally allowable level, the failure to provide necessary medical and mental health services, children being harmed by needless moves from placement to placement, and caseworker caseloads at "BEYOND DANGER!" levels.

Under the proposed settlement, if approved by the Court, Defendants do not contest liability for violations of the constitutional substantive due process rights of the Plaintiff Class and the case will move immediately to the remedial phase. The proposed settlement avoids the delays and expense inherent in a lengthy contested trial, as well as the uncertainties of those delays and possible appeal. It provides for a process for the design of a remedial order by mediated agreement or, failing agreement, by further litigation as to the necessary remedy. As such, the terms of the proposed settlement, taken as a whole, provide an outstanding result for class members that is fair, reasonable, and adequate and overwhelmingly meets the standard for approval. Therefore, Plaintiffs request that the Court grant final approval to the Settlement Agreement in its entirety and enter it as a consent decree.

## BACKGROUND

### A.    Summary Of The Litigation

Plaintiffs' Complaint was filed in this Court on March 30, 2004, claiming that Defendant state officials have for years operated a constitutionally deficient child welfare system that places Plaintiff class members at substantial risk of harm, in violation of their substantive due process rights under the 14th amendment of the United States Constitution. An Amended Complaint was filed May 17, 2004.

For the next three years the parties engaged in vigorously contested litigation, including extensive discovery. On November 18, 2004, the Court denied Defendants' Motion to Dismiss as to Plaintiffs' constitutional substantive due process claims. (Docket No. 57.) On March 11,

2005, the Court granted Plaintiffs' Motion for Class Certification. (Docket No. 84.) Class Counsel reviewed hundreds of thousands of pages of documents produced by Defendants and nonparties. Twenty-seven (27) fact witnesses were deposed. Class Counsel assembled a team of child welfare and foster care experts who conducted a thorough investigation and issued extremely detailed reports on various aspects of the Mississippi foster care system. Defendants likewise retained an expert who conducted her own substantial review of the system and produced a detailed report largely confirming Plaintiffs' allegations. The parties subsequently filed cross-motions for summary judgment supported by voluminous evidentiary support. (Docket Nos. 266, 280.)

On August 29, 2006, the Court denied the parties' cross-motions for summary judgment. (Docket No. 350.) At a November 6, 2006 pretrial conference, during which the parties informed the Court that they were engaged in settlement discussions, trial was set for May 7, 2007. Over the course of five months, Class Counsel and Defendants bargained at arm's length to reach an agreement on achieving reforms and measurable improvement in the operation of Mississippi's child welfare system. Through these efforts the proposed settlement was reached.

**B.    Overview Of Proposed Settlement Terms**

The Settlement Agreement bypasses a trial on liability and moves the case immediately to the remedial phase. The settlement provides that for the purpose of resolving the liability phase of this lawsuit without further litigation, Defendants do not contest that the constitutional substantive due process rights of the Plaintiffs and the Plaintiff Class were violated. Accordingly, the parties agree to move directly to the remedial phase of the litigation. The settlement contemplates that the parties will first attempt to agree on a remedial plan developed by Defendants and the Council on Accreditation with consultation from the parties' experts. The

plan must set forth specific actions and timelines necessary for the Defendants to achieve accreditation, bring the state in substantial conformity with federal standards regarding foster care, and address Plaintiffs' constitutional concerns, all within five years. Agreement as to the services and plans for the named Plaintiffs will also be negotiated. Pursuant to the Settlement Agreement, this Court has appointed retired Mississippi Supreme Court Justice Reuben V. Anderson as mediator to facilitate this process. If agreement on the remedial plan is reached by the parties, it will become court enforceable, with an outside monitor, and resolve the litigation. If the parties cannot agree on a remedial plan, the parties will proceed to a trial as to the scope of the necessary remedy.

## ARGUMENT

The federal judicial system favors settlements. As the Fifth Circuit has observed: "Particularly in class action suits, there is an overriding public interest in favor of settlement . . . . In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (approving class action settlement) (citations omitted). The issue for the Court to decide is whether the proposed settlement, taken as a whole, is "fair, reasonable and adequate" from the perspective of absent class members whose rights and interests are to be bound by its terms. Fed. R. Civ. P. 23(e)(1)(C). *See generally Manual for Complex Litigation (Fourth)* § 21.634-.635.

Rule 23 specifies several procedural requirements. First, the Court is required to direct notice of the proposed settlement terms to class members in accordance with Fed. R. Civ. P. 23(e)(1)(B). Second, the Court is required to conduct a hearing pursuant to Fed. R. Civ. P. 23(e)(1)(C) at which objectors to the settlement are given a reasonable opportunity to raise their

concerns with the Court. While the Court is not empowered to rewrite the settlement to accommodate the wishes of objectors, "[o]bjectors can provide important information regarding the fairness, adequacy and reasonableness of settlements" and "can also play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement." *Manual for Complex Litigation (Fourth)* § 21.643. Finally, even where there are few objections, the Court is well advised to make a "sufficient record as to the basis and justification for the settlement" and "specific findings as to how the settlement meets or fails to meet" the requirements of Rule 23. *Id.* § 21.635.

The Fifth Circuit has also identified six factors for the Court to consider in approving a Settlement under Rule 23: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (citation omitted). All the requirements for fairness, reasonableness, and adequacy having been met, the Court should grant final approval of the parties' Settlement Agreement and endorse it as an order of this Court.

### A. Adequate Rule 23(e) Notice And A Hearing Have Been Provided

As evidenced by Defendants' certification filed with the Court on April 18, 2007, Defendants have complied with the Court's direction regarding notice. The distribution of notice is further evidenced by the various comments and objections submitted on behalf of class members or other interested parties that were filed in accordance with the directions set forth in the class Notice. A compilation of those letters is attached as Exhibit 3 to the Joint Motion.

None of the comments or objections attacked or addressed the form of notice or the reasonableness of the manner of notification. The requirements of Rule 23(e)(1)(B) have thereby been satisfied. This Court has also scheduled a hearing on May 17, 2007, at which objectors and class members may testify, which satisfies the Rule 23(e)(1)(C) requirement for a hearing prior to final approval of the Settlement.

### B. This Settlement Is Neither Fraudulent Nor Collusive

After more than three years of litigation, this Court is familiar with this case and counsel for both sides. The Court is well aware that this case has been hard fought and vigorously litigated. Counsel for both sides are also well known to the Court, through this case, through prior case experience before the Court, and by reputation. Class Counsel has zealously pursued the best interests of the class and Defense Counsel has been equally diligent in defending the action. Based on the Court's observation of and familiarity with the case and counsel, the Court is well positioned to draw its own conclusions about the likelihood or reality of fraud or collusion.

What is more, the risk that class counsel might collude with defendants and exploit the Rule 23 mechanism to extract a fee in exchange for a fraudulent settlement that disserves the interests of absent class members is absent in this case. First, in contrast to Rule 23(b)(3) class cases where issues of monetary relief predominate, the motivation for fraud and collusion is diminished in a Rule 23(b)(2) case such as this one, where the nature of the relief sought and obtained for the class is declaratory and injunctive. Second, where, as here, the defendants are governmental actors whose public acts are subject to both press and political scrutiny, the risks of fraud and collusion are diminished. Third, because the rights of absent class members to bring individual claims for monetary relief are unaffected by the settlement, there is no apparent

6

motive for Defendants to engage in collusion. Fourth, because the parties have chosen to present the Court with a proposed settlement that defers all issues of Plaintiffs' fee and expense recovery to further proceedings in which the Court will retain jurisdiction to scrutinize the fairness of the fee, the risk of a collusive and fraudulent *quid pro quo* settlement appears minimal. Fifth, the Court is well aware that this settlement was arrived at only after years of contested litigation and months of settlement negotiations. Finally, there has been no suggestion from a commentator/objector or otherwise that this settlement is the product of fraud or collusion.

### C. The Complexity, Expense And Duration Of The Litigation Support The Settlement

"[C]lass action suits have a well deserved reputation as being most complex." *Cotton v. Hinton,* 559 F.2d at 1331. This case is certainly no exception. The sweep of the factual terrain, involving the lives of approximately 3,500 children in public custody state-wide, their case managers, caregivers, and service providers, and the State agency responsible for delivering appropriate services to them, is immense. The scope of Plaintiffs' constitutional substantive due process claims also presents unsettled legal issues.

This three-year-old case has also been expensive to litigate. Defendants are represented by the Attorney General's Office and private outside counsel at the firm of Baker, Donalson, Bearman, Caldwell & Berkowitz, PC. On the Plaintiffs' side, Class Counsel include attorneys at Children's Rights, Bradley Arant, Rose & White, LLP, and Loeb & Loeb, LLP, and Stephen Leech. Counsel for both sides have reviewed hundreds of thousands of pages of documents, taken or defended 27 fact witness depositions and six expert depositions, and extensively briefed two motions to dismiss, a motion for class certification, and cross-motions for summary judgment, as well as numerous discovery motions. Class Counsel also assembled a team of five child welfare and foster care experts who conducted a thorough investigation and issued

extremely detailed reports on various aspects of the Mississippi foster care system. Defendants likewise retained an expert who conducted her own substantial review of the system and produced a detailed report.

The Court's familiarity with all of the foregoing would support a finding that the necessary updating of all discovery, the finalization of a pretrial order, and the trial itself would be extremely time-consuming and expensive. Plaintiffs estimate that the trial of the liability phase of this case against Defendants would consume three to four weeks of court time. Defendants have estimated as much as six weeks. If Plaintiffs were successful, after further post-trial briefing, an eventual appeal of any liability finding would further delay relief. When the litigation risks and inherent delays in securing a liability finding are weighed with immediately reaching the remedial phase, the proposed settlement is in the best interests of the class.

### D. The Case Has Progressed To A Stage Where The Court, Counsel, And All Affected Parties Have Ample Basis To Evaluate The Settlement

The record in this case and the progress of the action give the Court ample basis to evaluate the fairness of the proposed settlement. Over the past three years, the Court has carefully managed the progress of the case, decided dispositive motions to dismiss and for summary judgment, decided a motion for class certification and a motion to strike one of Plaintiffs' experts' reports, and ruled on various discovery disputes. From this extensive involvement in the case, the Court has a firm grasp on the facts, the applicable law, and the relative strengths and weaknesses in each side's positions.

The parties have completed discovery. In adjudicating the parties' motions for summary judgment, the Court had ample occasion to analyze the extensive and voluminous summary judgment record, including the deposition testimony of numerous witnesses, half a dozen expert

reports, and the legal arguments of the parties. In discharging its responsibility to rule on these motions and the Defendants' *Daubert* motion to strike the report of Plaintiffs' fiscal expert Dr. Bill Brister, the Court became familiar with the expert reports of Dr. Peg Hess, Ms. Cathy Crabree, Dr. Bill Brister, Dr. Marva Lewis, and Dr. Wood Hiatt for Plaintiffs and that of Dr. Sue Steib for Defendants, which identified and detailed the systemic deficiencies in Mississippi's child welfare system and how those deficiencies inflict harm on individual children in the State's custody.

All of this information and the Court's rulings on each motion and case management issue are matters of public record. The class notice provided class members, their representatives, and all affected persons with the means to access this information. Not a single commentator/objector has raised any complaint with respect to the adequacy of the development of the case record. The case has progressed to the stage where the Court, the parties, and all persons submitting comments or objections to the settlement are well positioned to evaluate the fairness, reasonableness, and adequacy of the settlement. This factor weighs heavily in favor of fairness, reasonableness, and adequacy for absent class members.

**E.  The Likelihood Of Success On The Merits Supports The Settlement**

In evaluating the likelihood of success in a proposed Rule 23 settlement, the Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or

9

failure to a certainty." *In Re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 212 (5th Cir. 1981).

Again, the Court's previous work on the Defendants' motions to dismiss and the parties' cross-motions for summary judgment make the Court well positioned to evaluate the strengths and weaknesses of the parties' respective positions. It is notable that Defendants' sole expert, Dr. Sue Steib of the Child Welfare League of America, confirmed that Defendants' child welfare system has been "chronically under-resourced, seriously so in several areas." *See* Expert Report of Child Welfare League of America at 39 (attached as Exhibit A). Dr. Steib's major findings included that the agency "is under-staffed at all levels," that "[t]raining resources are so limited that new caseworkers are often on the job for weeks or months before they are able to attend training," and that "[a]gency staff are hampered in their efforts to serve children and families by a lack of resources," especially "in the area of available placements for children." *Id*. at i-ii. Plaintiffs believe their case is factually strong and well prepared but recognize that neither trial nor appellate outcomes are perfectly predictable. Comparing the litigation risks facing the class to the immediacy and certainty of Defendants' concession on liability and advancement to the remedy stage without further delay provided by the proposed Settlement Agreement, Class Counsel submit that this factor weighs in favor of the proposed settlement.

### F.  The Range Of Possible Relief Supports The Settlement

If the Plaintiff Class prevailed at a trial on liability issues, the parties and the Court would then be facing a second phase of litigation to determine the proper scope of injunctive relief. The Settlement Agreement allows the parties to move immediately to this remedial phase. Moreover, with Defendants' concession on liability, the parties have agreed to a two-track process that will result in a remedial order either by mediated agreement or via litigation as to the scope of the

necessary remedy. The substantial burdens on the Court and the litigants of holding a trial on liability are avoided, allowing for the immediate consideration of an appropriate remedy for class members. The possibility of appeal of a successful liability finding is also averted. The relief obtained in the proposed settlement is thus favorable to class members.

### G. The Opinions Of Class Counsel, Class Representatives, And Commentators Support The Settlement

Class Counsel supports the Settlement Agreement. The class is represented by, *inter alia*, Marcia R. Lowry, who has more than 34 years of experience litigating this type of constitutional challenge to systemic deficiencies in state or local operation of child welfare systems, and Wayne Drinkwater and Stephen Leech, both experienced Mississippi trial counsel. In Class Counsel's collective professional judgment, this settlement is in the best interests of class members. *See* Declaration of Marcia R. Lowry (attached as Exhibit B). All named Plaintiffs and their Next Friends also support the Settlement Agreement. *Id.*

The class notice elicited 13 written submissions to the Court regarding the proposed settlement.[1] Many of the written submissions explicitly support the need for a remedial plan for MDHS to protect children who are supposed to be protected by the agency. Most of the other written comments express specific concerns about the treatment of class members by MDHS or the lack of support offered their caretakers by the agency and thus confirm the need for the remedial relief required by the Settlement Agreement. Only two submissions voiced any objection and neither challenges the overall fairness, reasonableness, or adequacy of the Settlement Agreement as to the class members, much less supports such a challenge. While the Court is required to review and address each legitimate objection, there is no requirement to

---

[1] Copies of two of the written submissions were received by Class Counsel but appear not to have reached the Court. These submissions by Howard and Teresa Pitts and class member Clayton Milar are attached as Exhibits to the Affidavit of Jessica Wheeler (Exhibit C hereto).

"open to question and debate every provision of the proposed compromise." *Cotton v. Hinton,* 559 F.2d at 1331. All submissions received by the Court were compiled and attached as Exhibit 3 to the Joint Motion for Approval and are addressed *seriatim*:

### i)     Comments of class member Clayton Milar[2]

Class member Clayton Milar, who is graduating from high school this month, writes that he has been under the supervision of MDHS since he was two years old. He reports that he has been placed by MDHS in over 40 homes, as well as in hospitals, group homes, and lock-down facilities, "never being allowed to develop a sense of belonging anywhere I went." He writes:

> Children without parents obviously have special needs that should be met. They need one-on-one time with an adult or mentor. They need to go the park, the beach, or the movies. Celebrating a birthday just isn't enough. These children will enter adulthood with a huge handicap. They are distrusting, have no support system and will find it difficult to have successful relationships. The damage is already done and can never be repaired.

Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### ii)     Comments of the Mississippi Youth Justice Project

The Mississippi Youth Justice Project writes to ensure that any remedial plan addresses the needs of class members their attorneys represent who are involved with both the foster care and juvenile justice systems. The case histories provided for three such dual jurisdiction youth illustrate the failure of the Department of Human Services to provide appropriate services in the least restrictive setting to class members as required. Plaintiffs have been actively engaging with stakeholders on issues that will inform the remedial discussions, and will certainly include the challenges faced by dual jurisdiction children in these discussions. Nothing in this submission

---

[2] See FN 1. A copy of Clayton Milar's letter is attached as Exhibit 1 to the Affidavit of Jessica Wheeler.

casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### iii) Comments of Elizabeth S. Friszell

Elizabeth Friszell, a former Deputy Director of Defendants' child welfare agency, writes to fully support the Settlement Agreement. In addition to a detailed list of issues she believes will need to be addressed as part of a remedial plan, Ms. Friszell notes that "[t]he scope of corrective action within the Division will require a substantial and long term financial commitment from the state to adequately fund the necessary changes…" and "strong external oversight and monitoring throughout this process to ensure accountability for achievement of the terms of the settlement plan."

### iv) Comments of H. Gordon Myrick, Jr., Professionals Advocating for Children Together (PACT)

H. Gordon Myrick, Jr., writes as a child advocate and member of PACT, an organization of professionals working "to improve the conditions in South Mississippi and across the State in regards to Children's Services." Mr. Myrick notes that the problems at MDHS are so "massive" that "school nurses, Superintendents of Schools systems, teachers, law enforcement agencies, mental health departments, and organizations in the community that are there to fight abuse and neglect, no longer look to the [Division] of Children's Services for help." Among the problems cited are "unbearable caseloads," "the lack of personnel," "no supervision," the fact that "the training is inadequate, there is no Supervisor training," and "no accountability to the system." Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

        **v)**        **Comments of Catholic Charities of the Diocese of Jackson, MS**

Linda Raff, Executive Director of Catholic Charities for the Catholic Diocese of Jackson, Mississippi, writes to support remedying the problems addressed by this lawsuit. Ms. Raff notes that Mississippi "once had an outstanding [child welfare] system that was recognized nationally," but which "has suffered neglect for decades and has needed professional expertise to help put it on a path to success rather than the downhill trajectory it continues to experience." Among her recommendations are that all levels of the agency be staffed by individuals with "appropriate professional education and experience" who can also "move beyond political agendas." Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

        **vi)**        **Comments of the Coalition for Children's Welfare**

Sister Donna Gunn writes on behalf of the Coalition for Children's Welfare, representing dozens of agencies and organizations, to support "any and all efforts the Mississippi Department of Human Services makes to move beyond maintaining a system which has been broken for decades." Ostensibly referencing the remedial phase mediation process under the Settlement Agreement, she notes that "these negotiations provide a ray of hope which we have not seen since the early 80's," and describes it as "a wonderful opportunity for this Administration to make a significant positive impact on our serving children and families." Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### vii) Comments of Mississippi Children's Home Services

Christopher M. Cherney, Chief Executive Officer of Mississippi Children's Home Services, writes to support the Settlement Agreement provision for MDHS accreditation through the Council on Accreditation, which should "lead to sustainable improvements within the agency" and help meet the recommendations from Plaintiffs' expert reports. He also recommends inclusion in the remedial plan of such reforms as sufficient funding for needed services, staffing, and infrastructure, and a quality assurance system to monitor outcomes and services. Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### viii) Comments of Jerelyn Jones

Jerelyn Jones is the parent of a nine-year-old class member and writes out of concern for her daughter. She relates that her daughter entered custody in April and has already been moved five times, including being placed in a shelter, has no school record, and appears to have required emergency medical treatment about which MDHS has not provided information. Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### ix) Comments of Annie Anderson

Annie Anderson was a foster parent to her five grandchildren in 2005 and writes to "help[] everyone understand[] that despite if you suppose to get help from the state doesn't mean you get help." "[T]he State of Mississippi does not help foster parents at all." Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class

members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### x) Comments of Teresa A. Wells

Teresa A. Wells of Lamar, Mississippi, cared for two grandchildren as a single parent on a meager income for almost a year at the request of MDHS and writes to state that she received little if any support from MDHS. Later the children were returned to the same "bad" home they were removed from. Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### xi) Comments of Howard and Teresa Pitts[3]

Howard and Teresa Pitts are foster parents to a seven-year-old child who has been placed with them since he was two years old. They write to express concern about the delay in adopting the child where the parents "are further away from getting him back [than] they were when he was [taken] from them." Nothing in this submission casts doubt on the fairness, reasonableness, or adequacy of the settlement for class members. The submission confirms the need for a remedial plan as provided for by the Settlement Agreement.

### xii) Objection of Jean Smith

Jean Smith of Lumberton, Mississippi, states that she objects to the Settlement Agreement as "Defendants are not agreeing to admit to the truth and validity of the claims made against them." This objection does not cast doubt on the fairness, reasonableness, or adequacy of the settlement to class members. Defendants' agreement not to contest that Plaintiffs' constitutional rights were violated is sufficient for Plaintiffs to secure the injunctive relief they seek.

---

[3] See FN 1. A copy of Howard and Teresa Pitts' letter is attached as Exhibit 2 to the Affidavit of Jessica Wheeler.

### xiii) Objection of Sacred Heart Ministry for Children, Inc.

Sacred Heart Ministries for Children, Inc., objects to the Settlement Agreement as it does not address various rights and interests of third-party providers of foster care services, including timely and adequate payment for services provided to class members. Plaintiffs are actively meeting with stakeholders to inform the remedial phase of this settlement and will certainly be involving the provider community in those discussions. Nothing in this series of objections casts doubt on the fairness, reasonableness, or adequacy of the settlement for the minor class members.

### xiv) Additional comments

The class notice also prompted over 150 callers to contact Class Counsel regarding the settlement. *See* Affidavit of Jessica Wheeler (attached as Exhibit C). While many callers voiced concerns about the treatment of class members by Defendants, including incidents of serious physical and sexual abuse, which confirm the need for a remedial plan as provided for by the Settlement Agreement, only one of the callers expressed any opposition to the settlement. *Id*. Finally, Class Counsel participated in meetings across the state with community members who work with class members to explain the settlement and provide an opportunity for comment. *See* Affidavit of Jessica Wheeler; Affidavit of Talia Kraemer (attached as Exhibit D). Although many voiced concerns about the treatment of class members by Defendants, including separate incidents leading to the death of two class members, which confirm the need for a remedial plan as provided for by the Settlement Agreement, no participants voiced any objections to the settlement. *Id*. Many participants were explicitly supportive of the Settlement Agreement as a means to address long-standing deficiencies at MDHS. *Id.*

## **CONCLUSION**

The proposed terms of the Settlement Agreement are fair, reasonable, and adequate from

the perspective of the class. Accordingly, the Court should grant the Joint Motion for Final Approval and enter the proposed Stipulated Settlement Agreement as an order of the Court.

Respectfully submitted, this 14th day of May, 2007.

/s Eric Thompson_____
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York 10001
Telephone: (212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

Stephen H. Leech (MBN 1173)
618 Crescent Boulevard, Suite 103
Ridgeland, MS 39157
P. O. Box 3623
Jackson, Mississippi 39207
Telephone: (601) 607-4172

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, New York 10154
Telephone: (212) 407-4000

*PLAINTIFFS' COUNSEL*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2007, I electronically filed the foregoing with the Court using the ECF system, which sent notification of such filing to the following:

    Dewitt L. ("Rusty") Fortenberry Jr., Esq.
    Kenya Key Rachal, Esq.
    Gretchen L. Zmitrovich, Esq.
    Ashley Tullos Young, Esq.
    BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
    428 I-55 North
    Meadowbrook Office Park
    Jackson, MS 39211
    (601) 351-2400

    Harold E. Pizzetta, III, Esq.
    Assistant Attorney General
    General Civil Division
    Carroll Gartin Justice Building
    430 High Street
    Jackson, Mississippi 39201

    *Attorneys for Defendants Haley Barbour, et al.*

        /s Eric Thompson_____