IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*　　　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFFS

v.　　　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*　　　DEFENDANTS

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR COURT DETERMINATION OF THE SCOPE OF PLAINTIFFS' CONSTITUTIONAL SUBSTANTIVE DUE PROCESS RIGHTS**

Defendants' motion, timed just as the parties initiate expedited discovery, is a poorly concealed attempt to limit Plaintiff children's ability to discover and present evidence on the very issue to be tried: the relief necessary for admitted constitutional harm. The precise scope of Plaintiffs' substantive due process right to be free from harm is a trial issue. Deciding the motion, as Defendants request, without the benefit of expert testimony regarding the causes of serious harm to foster children and the reasonable professional standards necessary to protect Plaintiffs from such harm would be prejudicial to Plaintiffs. There can be no meaningful consideration of remedy in any other context than the Court's full understanding of the wrong to be remedied and of the system that gave rise to it and must now be fixed. Defendants' motion should be denied. Even if the Court were to further define the scope of Plaintiffs' substantive due process right to be free from harm in the abstract without the benefit of the parties' yet-to-be made supplemental expert designations and presentation of relevant facts, Defendants' limited understanding of the applicable case law is incorrect.

## INTRODUCTION

Plaintiffs are a certified class of approximately 3,500 children subject to Constitutional harms in Mississippi state custody. This Court has already ruled on Plaintiffs' substantive due process rights to be free from harm while in state custody. *See Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 24-25 (S.D. Miss. Nov. 18, 2004) ("plaintiffs' pleading is sufficient to allege a violation of their substantive due process right to adequate care and treatment while in state custody"); *see also Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 7 (S.D. Miss. Mar. 11, 2005) ("plaintiffs have identified alleged shortcomings by DHS, in terms, inter alia, of its staffing, policies and practices, which if proven, could readily be found to place every child in DHS custody at substantial risk of harm"); *Olivia Y. ex rel. Johnson v. Barbour*, slip op. (S.D. Miss. Aug. 29, 2006) (denying Defendants' motion for summary judgment). Subsequently, in a Settlement Agreement approved by this Court by Order dated June 15, 2007, Defendants conceded liability for the violation of Plaintiffs' substantive due process rights. (*See* Ex. A to Defs.' Mot.) Under the Agreement, should Option 1 mediation fail to yield an agreed-upon remedial order by October 3, 2007, the parties will proceed under Option 2 with a remedies trial on December 3, 2007, to determine the scope of the violations and required remedies. The parties have agreed upon a corresponding expedited discovery and pre-trial schedule that includes motion *in limine* deadlines in November 2007. *See* July 13, 2007 Letter Agreement (attached as Exhibit 1).

Defendants' motion now seeking an expedited ruling on a more restrictive definition of the scope of Plaintiffs' rights before the Court considers all the relevant evidence is a transparent and improper attempt to limit Plaintiffs' access to relevant discovery. The Court should have the benefit of all the available evidence establishing the scope of the harms to be remedied and the

corresponding system fixes that need to be implemented. Defendants do not articulate any prejudice to them that would warrant an expedited ruling. The motion should at least be held in abeyance until after supplemental fact and expert discovery is completed, as contemplated by the parties per their agreed-upon schedule for motions *in limine*. In any event, Defendants' restrictive understanding of Plaintiffs' substantive due process rights is incorrect.

## ARGUMENT

### I. DEFENDANTS' REQUEST FOR AN EXPEDITED RULING IS NOT RIPE FOR FURTHER ADJUDICATION AND IS INCONSISTENT WITH THE PARTIES' AGREED-UPON SCHEDULE

#### A. Defendants' Motion Is Not Ripe For Further Adjudication.

While Defendants' motion vaguely seeks "to facilitate meaningful discovery and trial preparation," (Defs.' Mot. at 2), this Court has already repeatedly ruled on the nature of Plaintiffs' rights.[1] *See Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 24-25 (S.D. Miss. Nov. 18, 2004) (denying motion to dismiss Plaintiffs' substantive due process claim to "adequate care and treatment while in state custody"); *Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 7 (S.D. Miss. Mar. 11, 2005) (granting class certification where Plaintiffs share common claim that deficient DHS "staffing, policies and practices . . . place every child in DHS custody at substantial risk of harm"); *Olivia Y. ex rel. Johnson v. Barbour*, slip op. (S.D. Miss. Aug. 29, 2006) (denying Defendants' motion for summary judgment). Defendants' renewed request to secure a more restrictive ruling limiting Plaintiffs' constitutional harms to deprivations of "food, clothing, shelter, medical care and reasonable safety[,]" (Defs.' Mot. at 2), is an improper attempt to limit the scope of relevant discovery and trial evidence.

---

[1] It is notable that no such motion was requested or required while the parties engaged in discovery and several pre-trials for the previously-scheduled liability trial in May 2007.

Defendants do not challenge Plaintiffs' recognized right to be free from harm while in state custody, but decry Plaintiffs' "litany of rights" and "nebulous laundry list" of Defendants' duties asserted in the Amended Complaint. (Defs.' Mot. at 3.) Yet, this Court has already broadly recognized that Plaintiffs are entitled to protection from agency deficiencies in "staffing, policies and practices" that place them at substantial risk of harm as alleged. *Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 7 (S.D. Miss. Mar. 11, 2005). As is also clear from Plaintiffs' previous expert designations (as well as Defendants' own expert designation), which Plaintiffs expect to supplement on October 22, 2007, per the parties' agreed-upon expedited schedule, expert testimony will establish these many causes of serious harm to children and the reasonable professional standards necessary to protect Plaintiffs from such further harm. *See, e.g.*, Exs. 1, 4, 5, 6 to Pls.' Mot. for Summ. J. (Dr. Wood Hiatt is expected to testify that the poor provision of services to foster children, including multiple placement moves and the lack of permanent homes, can cause serious and unnecessary emotional and psychiatric harm; Dr. Peg McCartt Hess is expected to testify that the failure to provide foster children with safe and stable placements, monitoring and supervision, health care and permanency planning consistent with professional standards is putting Plaintiffs at serious risk of harm; Cathy Crabtree is expected to testify as to Defendants' chronic management and service failures and how they continue to put Plaintiff children at serious risk of harm; Dr. Sue Steib is expected to testify that the agency has been chronically under-staffed and under-resourced, with poor training, supervision, and managerial support).

The scope of such rights, which are by their very nature dependent on factual elaboration and professional standards for definition, are not susceptible to strict limitations as matter of law. *See Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 24-25 (S.D. Miss. Nov. 18, 2004)

("substantive due process right to adequate care and treatment"); *Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 7 (S.D. Miss. Mar. 11, 2005) (recognizing substantive due process claim that deficient DHS "staffing, policies and practices . . . place every child in DHS custody at substantial risk of harm"); *Charlie & Nadine H. v. Whitman*, 83 F. Supp. 2d 476, 507 (D.N.J. 2000) (recognizing foster children's substantive due process "right to treatment, which includes the right to receive care, treatment and services consistent with competent professional judgment"). The professional parameters of "reasonable care," "treatment," and the "general well-being" of children, consistent with "professional judgment," will be presented at trial. The Court should benefit from expert evidence establishing the serious harms to which Plaintiffs are being subjected by Defendants' challenged practices before further defining the precise scope of Plaintiffs' substantive due process rights.

**B.     Responses To Motions *In Limine* Are Not Due Until November 26, 2007, Pursuant To The Parties' Agreed-Upon Expedited Discovery And Pre-Trial Schedule.**

Defendants' motion *in limine* is inconsistent with the parties' recently agreed-upon expedited discovery and pre-trial schedule that was established to ensure the parties' readiness for a December 3, 2007 remedies trial should Option 2 of the Settlement Agreement be exercised. Pursuant to the parties' agreement, motions *in limine* are due after the completion of expedited fact and expert discovery on November 16, 2007, with responses not due until November 26, 2007. *See* Exhibit 1. Far from requiring an expedited ruling as requested, Defendants' motion requesting further limitations to the scope of Plaintiffs' substantive due process rights is simply an attempt to restrict Plaintiffs' ability to discover and present information related to the full scope of required remedies and should be rejected. At the very

5

least, Defendants' motion should be held in abeyance per the parties' agreed-upon pre-trial schedule.

## II.   DEFENDANTS' UNDULY CONSTRAINED DEFINITION OF PLAINTIFF CHILDREN'S SUBSTANTIVE DUE PROCESS RIGHTS IS INCORRECT

Even should this Court choose to further define the scope of Plaintiff children's substantive due process rights without the benefit of complete evidence and expert testimony, the Court should reject Defendants' unduly constrained definition of Plaintiffs' acknowledged right to be free from harm while in state custody.

While "Defendants assert that based on controlling law the right to be free from harm is *limited strictly* to the duty to provide adequate food, clothing, shelter, medical care and reasonable safety while in custody[,]" (Defs.' Mot. at 2) (emphasis added), the cases cited do not stand for such a proposition.  As acknowledged by Defendants, the United States Supreme Court has recognized a State's duty to protect the "safety and *general well-being*" of its wards, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (emphasis added), and its duty to provide them with "reasonable care," *Youngberg v. Romeo*, 457 U.S. 307, 315, 321, 324 (1982) (reasonable care must be provided consistent with "professional judgment").  *See also Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (foster children have right to "personal security" and "reasonably safe living conditions"); *Clark K. v. Guinn*, 2007 WL 1435428 (D. Nev. May 14, 2007) (recognizing that "foster children have a right to the required 'professional judgment' while in custody").

That the right of state wards to be free from harm through the provision of "reasonable care," "treatment," and the protection of "general well-being" is much broader than Defendants' proposed list limited to food, clothing, shelter, medical care and safety, is well-established.  *See,*

6

*e.g., LaShawn A. v. Dixon*, 762 F. Supp. 959, 993, 996 (D.D.C. 1991) (finding that foster children's substantive due process "right extends to safety from psychological and emotional harm" as well as physical harm); *K.H. v. Morgan*, 914 F.2d 846, 848, 850-51 (7th Cir. 1990) ("The extension [of substantive due process] to [this foster care] case in which the plaintiff's mental health is seriously impaired by deliberate and unjustified state action is straightforward."); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 675-77 (S.D.N.Y. 1996) ("[C]ustodial plaintiffs have a substantive due process right to be free from unreasonable and unnecessary intrusions into their emotional well-being."); *B.H. v. Johnson,* 715 F. Supp. 1387, 1396 (N.D. Ill. 1989) (same).  This is particularly true for children, who, as minors, are harmed by impairments to their growth and development.  As one court has noted:

> Children are by their nature in a developmental phase of their lives. If they do not move forward, they move backward. Positive efforts are necessary to prevent stagnation, which, for children, is synonymous with deterioration.

*Doe ex rel. Johanns v. New York City Dep't of Soc. Servs.,* 670 F. Supp. 1145, 1173, 1175 (S.D.N.Y. 1987) (holding that substantive due process encompasses children's right not to be "hinder[ed in] their development while in the [State's] custody").  *See also Danielle v. Adriazola*, 284 F. Supp. 2d 1368, 1377-78 (S.D. Fla. 2003) (noting allegation that defendants violated due process "when they allowed abuse and Plaintiff's psychological decline to continue").

While Defendants assert, for example, that they have no duty to protect Plaintiffs from harmful placement practices, (Defs.' Mot. at 4-5), Defendants' own policy acknowledges that repeatedly moving foster children can be devastatingly harmful to them.  As the DHS Policy Manual states, "[t]he more children experience a change in placement, the more that damage is inflicted deepens [*sic*]. A foster child who moves many times, or who constantly fears that he/she

may have to move, can suffer devastating effects on his/her emotional health." MDHS Policy Manual, revised May 1, 1999, Vol. IV, Section D at 3262 (attached as Ex. 2). Plaintiffs anticipate presenting expert testimony establishing the serious nature of such harm on foster children. *See, e.g.,* David Rubin et al., *The Impact of Placement Stability on Behavioral Well-being for Children in Foster Care*, 119 PEDIATRICS 335, 336 (2007) (finding that "[c]hildren in foster care experience placement instability unrelated to their baseline problems, and this instability has a significant impact on their behavioral well-being") (attached as Ex. 3); *see also Doe*, 670 F. Supp. at 1176 (citing study which found that "[m]ultiple placements have disastrous effects on the abilities to learn, trust, and relate to others. Such children already made vulnerable by the circumstances are placed at further risk by the vagaries of foster care. Serious retardation in reading, antisocial behavior, apathetic states and defects in socialization have all been compellingly described as a sequel to this experience."). When presented with such evidence of serious harm, federal courts have recognized that foster children's substantive due process right to be free from harm extends to protection from multiple inappropriate and damaging placements. *See, e.g.*, *K.H.*, 914 F.2d at 850 ("If . . . the defendants must have known they were placing [plaintiff] in a sequence of foster homes that would be destructive of her mental health, the ingredients of a valid constitutional claim are present."); *LaShawn A*, 762 F. Supp. at 993 ("To the extent that certain services, such as appropriate placements . . . , are essential to preventing harm to the children in the District's custody, this Court holds that the children have a constitutional liberty interest in those services.").

Defendants likewise assert that they have no duty to timely place foster children in permanent homes. (Defs.' Mot. at 5-6.) However, the substantial harm caused by remaining confined in government custody unnecessarily has been found to warrant substantive due process

protection. *See E.C. v. Sherman*, 2006 WL 1307641 at *37, slip op. (W.D. Mo. May 9, 2006) ("[u]nnecessarily prolonged confinement in government foster care invokes the substantive due process liberty interests of foster children"); *Marisol A.*, 929 F. Supp. at 676 ("the right to be free from harm encompasses the right alleged by plaintiffs to appropriate conditions and duration of foster care"). *See also*, *Waubanascum v. Shawano Cty.*, 416 F.3d 658, 665 (7th Cir. 2005) (recognizing foster children's "constitutional right to be placed in a safe and secure foster home"); *Doe*, 670 F. Supp. at 1175 (recognizing the "foster care system's general goal of permanency"). Plaintiffs anticipate presenting expert testimony to establish that Defendants' failure to provide permanent homes to foster children does in fact cause medically-cognizable psychological harm.

It is also notable that many of the supposedly "nebulous" duties Defendants refer to, such as the duty "to monitor and supervise foster children" and "to maintain adequate staffing," (Defs.' Mot. at 3), are established professional requirements that are directly related to protecting the acknowledged right to child safety, as will be established by expert testimony. *See Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 7 (S.D. Miss. Mar. 11, 2005) (granting class certification based, *inter alia*, on common substantive due process claim that deficient DHS "*staffing*, policies and practices . . . place every child in DHS custody at substantial risk of harm") (emphasis added); *Norfleet v. Ark. Dep't of Human Servs.*, 989 F.2d 289, 293 (8th Cir. 1993) ("in light of . . . the undeniable nature of the state's relationship with and corresponding obligations to [plaintiff foster child] . . . the state had an obligation to provide adequate medical care, protection and *supervision*") (emphasis added); *Nicholson v. Scoppetta,* 344 F.3d 154, 166-67 (2d Cir. 2003) (finding failure to *train and supervise* child welfare staff sufficient to give rise to section 1983 claim).

Defendants' reliance on *E.F. v. Scafidi*, No. 3:91CV591, slip op. (S.D. Miss. Mar. 13, 1996), to strictly limit the scope of the duty they owe Plaintiffs is misplaced. *Scafidi* recognizes that wards of the State are broadly entitled "to be free from harm while in state custody." *Id.* at 20. The case's subsequent limited recitation of the State's affirmative duties should not control here, as in *Scafidi* there was no need for the Court to rule on the precise scope of the due process rights owed to children in state custody because the plaintiffs there had failed to support their allegations with *any* material facts regarding harm. *Id.* at 19-20. Nor should *Scafidi*'s additional statement that the state is under no obligation to provide "optimal" care for the children in its care, which Plaintiffs do not seek here, strictly limit Plaintiffs' proof of the different types of serious harms that damage children and the system failures that cause such harms.[2]

Accordingly, even if the Court does consider Defendants' motion at this time, it should find that Plaintiffs' undisputed substantive due process right to be free from harm includes the right to "reasonable care," "treatment," "safety," and the protection of "general well-being," consistent with the exercise of reasonable "professional judgment." *DeShaney*, 489 U.S. at 199-200; *Youngberg*, 457 U.S. at 321, 324; *Olivia Y. ex rel. Johnson v. Barbour*, slip op. at 24-25 (S.D. Miss. Nov. 18, 2004). Plaintiffs' rights, thus, cannot exclude, *inter alia*, the right to be free from the substantial harms that result from a system that is operated and maintained in such a manner that children are subjected to multiple, unnecessary, traumatic moves and the failure to secure prompt permanent placements, as well as from any other causes of serious harm, including deterioration in care, that will be established by factual and expert evidence.

---

[2] To the extent *Clark K. v. Guinn*, 2007 WL 1435428 (D. Nev. May 14, 2007), goes against the weight of authorities recognizing broader substantive due process rights without discussion, it is unpersuasive.

## **CONCLUSION**

Plaintiffs respectfully request that this Court deny Defendants' Motion for Court Determination of the Scope of Plaintiffs' Constitutional Substantive Due Process Rights. Should the Court choose to further define the scope of Plaintiffs' substantive due process right to be free from harm at this time, it should follow Supreme Court precedent and recognize Plaintiffs' rights to "reasonable care," "treatment," "safety," and the protection of "general well-being," consistent with the exercise of "professional judgment."

RESPECTFULLY SUBMITTED, this the 13th day of September, 2007.

  /s Eric Thompson

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York  10001
(212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capital Street, Suite 450
Jackson, Mississippi  39201
(601) 948-8000

Stephen H. Leech (MBN 1173)
618 Crescent Boulevard, Suite 103
Ridgeland, MS 39157
P. O. Box 3623
Jackson, MS 39207
601-607-4172

        John Lang (MBN 43987 *pro hac vice*)
        Christian Carbone (MBN 43986 *pro hac vice*)
        John Piskora (MBN 44474 *pro hac vice*)
        LOEB & LOEB LLP
        345 Park Ave.
        New York, New York 10154
        (212) 407-4000

        PLAINTIFFS' COUNSEL

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2007, I electronically filed the foregoing with the Court using the ECF system, which sent notification of such filing to the following:

>Dewitt L. ("Rusty") Fortenberry Jr., Esq.
>Kenya Key Rachal, Esq.
>Gretchen L. Zmitrovich, Esq.
>Ashley Tullos Young, Esq.
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
>428 I-55 North
>Meadowbrook Office Park
>Jackson, MS 39211
>(601) 351-2400
>
>Harold E. Pizzetta, III, Esq.
>Assistant Attorney General
>General Civil Division
>Carroll Gartin Justice Building
>430 High Street
>Jackson, Mississippi  39201
>
>*Attorneys for Defendants Haley Barbour, et al.*

           /s Eric Thompson