IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


OLIVIA Y., *et al.*                                                              PLAINTIFFS


v.                                                          CIVIL ACTION NO. 3:04CV251


HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*        DEFENDANTS

---

### JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND BRIEF IN SUPPORT

---

## I.       INTRODUCTION

The parties jointly move the Court for preliminary approval of the Mississippi Settlement Agreement and Reform Plan (the "Agreement") (a copy of which is attached as Exhibit 1), and respectfully request that the Court enter the Proposed Order (attached as Exhibit 2), which (1) preliminarily approves the Agreement; (2) authorizes the form and manner of notice concerning the Agreement to be sent to class members  (attached as Exhibit 3); (3) sets the deadline for persons who wish to be heard in favor of or in objection to the Agreement; and (4) sets the date for a fairness hearing in accordance with Rule 23(e) of the Federal Rules of Civil Procedure.

## II.      THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

Judicial approval of a proposed class action settlement under Fed. R. Civ. P. 23 involves a two-step process.  First, class counsel submits the terms of the proposed settlement to the court, and the court makes a preliminary fairness evaluation.  If

preliminary approval is granted, the court directs that notice of the settlement be given to members of the class, solicits comment and objection from class members, and holds a formal fairness hearing to determine whether the proposed settlement is indeed fair, reasonable, and adequate. *Manual for Complex Litigation (Fourth)* § 21.63 (2004).

"If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," courts have generally granted preliminary approval and left final determination for a formal fairness hearing where supporters and opponents of approval receive a fair opportunity to help the court determine fairness. 2 H. Newberg and A. Conte, *Newberg on Class Actions* § 11.25, at 11-37 (3d ed. 1992) (quoting *Manual for Complex Litigation, Second,* at § 30.44). In this case, where the Court has actively and appropriately managed the case for three and a half years, has denied motions to dismiss and granted class certification over vigorous opposition, has supervised an extensive discovery process, has informed itself about the respective positions of the parties through the process of sifting through evidence in the course of denying the parties' cross-motions for summary judgment and in the course of multiple pretrial conferences, the Court is well positioned to make the necessary preliminary determination of whether this settlement is worthy of the class' consideration.

III. **THE COURT SHOULD PRELIMINARILY APPROVE THE AGREEMENT AND DIRECT THAT NOTICE BE SENT TO MEMBERS OF THE SETTLEMENT CLASS**

The Court's review of this case and the Agreement will establish that the proposed settlement agreement "fall[s] within the range of possible approval," and easily exceeds the threshold of fairness required for ultimate approval under Rule 23(e). In light of the Court's familiarity with this case, for present purposes the parties provide a brief summary of the litigation and the features of the proposed decree warranting preliminary approval.

A. **The Litigation**

For three and a half years, the Plaintiff Class of approximately 3,500 children in Mississippi foster care custody, through its counsel, has prosecuted this action, which alleges deficiencies in Mississippi's foster care system. The action, alleging claims under federal law, was filed on March 30, 2004. An Amended Complaint was filed May 17, 2004.

For the next three years the parties engaged in vigorously contested litigation, including extensive discovery. On November 18, 2004, the Court granted Defendants' Motion to Dismiss as to Plaintiffs' procedural due process claims, equal protection claims, substantive due process claims for Protective Services class, and claims under the Adoption Assistance and Child Welfare Act and denied Defendants' Motion to Dismiss as to Plaintiffs constitutional substantive due process claims for in-custody class members. (Docket No. 57.) On March 11, 2005, the Court granted Plaintiffs' Motion for Class Certification. (Docket No. 84.) Class Counsel reviewed hundreds of thousands of pages of documents produced by Defendants and nonparties. Twenty-seven (27) fact

witnesses were deposed.  Class Counsel retained child welfare and foster care experts who conducted a thorough investigation and issued extremely detailed reports on various aspects of the Mississippi foster care system.  Defendants likewise retained a child welfare expert who conducted her own substantial review of the Mississippi foster care system and produced a detailed report.  The parties subsequently filed cross-motions for summary judgment supported by voluminous evidentiary support.  (Docket Nos. 266, 280).

On August 29, 2006, the Court denied the parties' cross-motions for summary judgment.  (Docket No. 350).  At a November 6, 2006, pretrial conference, during which the parties informed the Court that they were engaged in settlement discussions, trial was set for May 7, 2007.  Over the course of five months, Class Counsel and Defendants bargained at arm's length to reach an agreement on achieving reforms and measurable improvement in the operation of Mississippi's child welfare system.  A Stipulated Settlement Agreement as to liability was approved by this Court at a Rule 23(e) fairness hearing on May 17, 2007 (Exhibit 4), and provided for mediation to arrive at an acceptable remedial order.  Through these efforts the proposed settlement was reached.

**B.     The Settlement Agreement and Reform Plan**

The federal judicial system favors settlements.  As the Fifth Circuit observed in approving the settlement of a class action, "Particularly in class action suits, there is an overriding public interest in favor of settlement . . . .   In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (citations omitted).  Under the criteria for evaluating a proposed settlement set

forth in the *Manual on Complex Litigation (Fourth),* § 21.62 (2004), this proposed settlement deserves class consideration because it provides for significant benefits and protections for class members.

The Agreement establishes standards and outcome measures that Defendants must meet within five years or earlier as set out in the Agreement and in what are to be annual implementation plans. The Year 1 Implementation Plan has been agreed upon and is at Appendix A to the Agreement. Subsequent annual implementation plans will be developed by Defendants with the Council on Accreditation (COA) and Plaintiffs, setting forth the steps that must be taken to meet applicable interim benchmarks and achieve overall compliance with the Agreement.

**(1) Administration and Management Standards**

Among the administration and management standards that must be implemented, the Agreement provides that within 90 days of Court approval, the Mississippi Department of Human Services (DHS) Division of Family and Children's Services (DFCS) will hire and maintain a director who is qualified for the position consistent with COA standards. Defendants will also phase in caseload caps consistent with those recommended by Defendants' expert, and minimum qualification requirements for caseworkers and supervisors consistent with COA standards. Performance-based contracting will be phased in, as well as a continuous quality improvement (CQI) system to monitor agency performance and require improvement plans for identified deficiencies.

The Agreement also provides that DFCS shall provide for a more robust information system and maintain current and complete child welfare records. Defendants

shall also conduct an external federal funding assessment and maximize available federal funding opportunities. The Year 1 Implementation Plan provides for an assessment of DFCS administration and management capacity and needs consistent with COA policies, and a process to begin addressing any identified needs.

**(2) Foster Care Service Standards**

Among the foster care services standards that must be implemented, the Agreement provides that children entering custody shall receive a health screening evaluation within 72 hours after placement and a comprehensive medical examination within 30 days. Periodic dental exams for foster children three years old and older, and mental health assessments for children four years old and older must be provided. Children entering custody or subject to a placement move shall receive a child screening and family assessment and have a service plan, including a permanency plan, developed or updated within 30 days. Service plans will be updated at least quarterly and foster children's permanency plans will be reviewed at least every six months, including at least an annual judicial review.

The Agreement also provides that Defendants make available necessary services to facilitate reunification of foster children with their families, and move forward without delay with adoption or other permanent placements consistent with federal law when reunification is not possible. Older foster children ages 14-20 will be provided with independent living services to prepare them for transitioning to independence.

Foster children are to be placed in licensed placements that can meet their individual needs, siblings placed together when appropriate, and foster homes are to be limited in the number of foster children they can care for. Limits also apply on placing

foster children for extended periods in emergency placements and on placing children under 10 years of age in congregate care settings. Parent and sibling visits are to be provided, and twice monthly face-to-face visits with foster children by their caseworkers shall be provided. Placement moves must be justified and placement stability supported.

The Agreement also provides that by July 2009, basic monthly foster care board rates will be increased to established, age-appropriate amounts. The Year 1 Implementation Plan provides for an assessment of DFCS foster care services, and a process to begin addressing any identified needs.

### (3) Outcome Measures

The Agreement provides for Defendants to meet phased-in outcome measures regarding the timeliness of child reunifications and adoptions and the reduction of the frequency of placement moves and maltreatment in care, consistent with federal standards.

### (4) COA Accreditation

DFCS's foster care services shall be accredited by COA.

### (5) The Named Plaintiffs

The named Plaintiffs who remained in state custody as of the Stipulated Settlement Agreement approved by the Court on May 17, 2007, all have an individual Agreement on Services and Plans that provides for permanency and independent living services monitored by Plaintiffs' counsel. (Attached collectively as Ex. 5).

### (6) Monitor

An independent monitor of Defendants' compliance with the Agreement and the annual implementation plans, attorney Grace Lopes, has been agreed to by the parties.

(Ms. Lopes' resume is attached at Ex. 6). The parties agree that this Court shall have continuing jurisdiction to enforce the terms of this Agreement and any required annual implementation plans.

### C.    The Notice

The parties have agreed to a Notice of Proposed Settlement, a copy of which is attached hereto as Exhibit 3. This proposed Notice sets forth the material terms of the proposed settlement and comports with Rule 23 and the requirements of due process. The Notice describes the procedures for persons who wish to be heard in favor of or objection to the settlement, and specifies the date, time, and place of the formal fairness hearing. The parties, of course, stand ready to make such modifications to the Notice as the Court directs. Defendants will send the Notice directly to class members in accordance with the terms of the Proposed Order (Exhibit 2).

## IV.    CONCLUSION

The parties respectfully request that the Court preliminarily approve the proposed settlement between the Plaintiff Class and Defendants, enter the proposed Order attached as Exhibit 2, and direct that the proposed Notice be sent to all members of the class in accordance with that Order.

Respectfully submitted, this 8th day of November, 2007.

/s Melody McAnally_____
W. Wayne Drinkwater, Jr. (MBN 6193)
Melody McAnally (MBN 101236)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi  39201
Telephone:  (601) 948-8000
Facsimile:  (601) 948-3000

Stephen H. Leech (MBN 1173)
618 Crescent Boulevard, Suite 103
Ridgeland, MS  39157
P. O. Box 3623
Jackson, Mississippi 39207
Telephone:  (601) 607-4172

Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York  10001
Telephone:  (212) 683-2210

John Lang (MBN 43987 *pro hac vice*)
Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, New York  10154
Telephone: (212) 407-4000

*PLAINTIFFS' COUNSEL*

/s Dewitt L. ("Rusty") Fortenberry, Jr.
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB # 5435)
Gretchen L. Zmitrovich (MSB #101470)
Ashley Tullos Young (MSB #101839)
Kenya Key Rachal (MSB #99227)
Barry C. Campbell (MSB #99535)
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, Mississippi  39201
*ATTORNEYS FOR DEFENDANTS HALEY BARBOUR, ET
AL.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2007, I electronically filed the foregoing with the

Court using the ECF system, which sent notification of such filing to the following:

Dewitt L.  ("Rusty") Fortenberry Jr., Esq.
Kenya Key Rachal, Esq.
Gretchen L. Zmitrovich, Esq.
Ashley Tullos Young, Esq.
Barry C. Campbell, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
428 I-55 North
Meadowbrook Office Park
Jackson, MS 39211
(601) 351-2400

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, Mississippi  39201

*Attorneys for Defendants Haley Barbour, et al.*

/s Melody McAnally_____