IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                                      PLAINTIFFS

v.                                                             CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*        DEFENDANTS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT REGARDING PLAINTIFFS' ATTORNEYS' FEES AND ORDER OF NOTICE TO THE CLASS**

Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Approval of the parties' settlement regarding Plaintiffs' attorneys' fees. Defendants have agreed to pay Plaintiffs' attorneys $4,863,557.50 to settle all claims for attorneys' fees and expenses for five years of legal work on behalf of Plaintiffs through the January 4, 2008 Fairness Hearing approving the Mississippi Settlement Agreement and Reform Plan entered as an Order of this Court ("Remedial Order"). (Docket No. 459) (attached hereto as Ex. 1). Plaintiffs urge the Court to approve the resolution of this remaining issue of attorneys' fees, after proper notice to the Class and consideration of any objections as required by Rule 23(h) of the Federal Rules of Civil Procedure.

As the Court well knows, after four years of hard fought and often contentious litigation, Plaintiffs' attorneys secured a Remedial Order designed to require wholesale reforms of every aspect of Mississippi's harmful foster care system, the Division of

Family and Children's Services ("DFCS"), which is run by the Department of Human Services ("DHS"). The Remedial Order requires the state of Mississippi to ensure the safety and well-being of Plaintiff children and to meet accreditation standards for the provision of child welfare services. Progress will be tracked by an independent Monitor. In light of this outstanding result secured on behalf of the children in DFCS custody, the proposed fees settlement reached by the parties following arms-length negotiations, as well as substantial concessions by both sides, is reasonable and should be approved.

I.      **BACKGROUND**

      A.      **Summary of Litigation**

On March 30, 2004, Plaintiffs filed this class action suit alleging that through mismanagement, underfunding, and deliberate indifference, Defendants knowingly allowed DFCS, the state's child welfare agency charged with protecting children, to collapse, thereby endangering the thousands of Mississippi children dependent upon the system for their safety. Plaintiffs sought recourse from the federal court following years in which the State ignored increasingly dire warnings from knowledgeable state and federal officials, including the state Attorney General and a statewide Council of Youth Court Judges, that DFCS was harming the health and jeopardizing the safety of the very children it was charged with safeguarding. (Compl. ¶ 5) (Docket No. 1).

The Complaint, which was amended on May 17, 2004, to add Named Plaintiffs, alleged that DFCS cycled foster children through numerous unsuitable foster care placements or institutions where their medical, dental, and psychological needs were left unmet and where they had little chance of finding a permanent family. (Am. Compl. ¶¶ 7, 145-47, 149-51, 153-55, 161-69) (Docket No. 25). On March 11, 2005, the Court

certified this case seeking declaratory and injunctive relief for class action treatment pursuant to Federal Rule of Civil Procedure 23(b)(2). (Docket No. 84.)

The Amended Complaint was followed by three and a half years of highly contentious litigation and extensive class-wide discovery. Well over 40 motions were filed, including several motions to dismiss, cross-motions for summary judgment, and a motion to exclude expert testimony. Class Counsel reviewed hundreds of thousands of pages of documentary evidence, deposed 27 fact witnesses, and assembled a team of experts who conducted extensive examinations of various aspects of DFCS operations and issued detailed reports of their findings.

In March 2007, the parties reached an agreement as to liability (the "Stipulated Settlement") in which Defendants agreed to no longer contest that DFCS operated in a manner that harmed Plaintiff children in violation of their constitutional rights, and to work with outside experts and Plaintiffs' Counsel to create a detailed remedial order. The Stipulated Settlement as to liability was approved by this Court at a Rule 23(e)(2) fairness hearing on May 17, 2007, after notice to the Class. (Docket Minute Entry May 17, 2007.) In accordance with the Stipulated Settlement, the parties spent the six months following the fairness hearing vigorously negotiating the terms of an acceptable remedial plan. The resulting Remedial Order was approved and entered by this Court at a Rule 23(e)(2) fairness hearing on January 4, 2008, after notice to the Class. (Docket Minute Entry January 4, 2008.) The Remedial Order provides that "[a]ll parties reserve all claims and defenses with respect to all claims for an award of attorneys' fees and litigation expenses for Plaintiffs, which claims shall be separately asserted and determined according to a schedule to be fixed by the Court." (Ex. 1 at 41.) The parties

have now negotiated a resolution of this remaining issue, which is being submitted to the Court for approval as required by Rule 23(h).

## II. ARGUMENT

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, provides that in federal civil rights cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The purpose of Section 1988 "is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p.1 (1976)); *see also Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980) ("Congress enacted this statute in 1976 to encourage private attorneys general to enforce fundamental constitutional rights under section 1983."). Pursuant to Section 1988, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley*, 461 U.S. at 429 (quoting S. Rep. No. 94-1011, p.4 (1976)); *Riley v. City of Jackson, Miss.*, 2 F. Supp. 2d 864, 871 (S.D. Miss. 1997) ("'[A]bsent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*.'" (quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 998 (5th Cir. 1983))).

Federal Rule of Civil Procedure 23(h), as amended, provides that in "a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law *or by the parties' agreement*." (Emphasis added). The Advisory Committee Notes to Rule 23(h) indicate that although a court may give weight to agreements between the parties regarding the fee motion, "the court remains responsible to determine a reasonable fee." *See* Fed. R. Civ. P. 23(h) advisory committee's note

4

(2003 Amendments). Plaintiffs accordingly proceed to a presentation of the *bona fides* of Plaintiffs' request for the amount of fees and expenses agreed to by the parties following months of negotiation and compromise.

### A. The Court Should Award Plaintiffs the Reasonable Attorneys' Fees and Expenses Negotiated by the Parties

Having secured the Remedial Order for the Plaintiff Class, there is no dispute that Plaintiffs are the prevailing party for purposes of Section 1988. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980); *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (recognizing consent decree as creating prevailing party status for plaintiffs). Although the Court may not summarily approve a negotiated fee settlement, the fact that the parties have agreed on the reasonable fees and expenses to be awarded to Plaintiffs clearly weighs in favor of this Motion. *See Jones v. Amalgamated Warbasse Houses*, 721 F.2d 881, 884 (2nd Cir. 1983) ("[A]n arms' length negotiated agreement among the parties [on fees] weighs strongly in favor of approval."); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (recognizing in the fee award context the "general policy of the law to favor settlements"); *see also* Fed. R. Civ. P. 23(h) advisory committee's note (2003 Amendments) ("Courts have also given weight to agreements among the parties regarding the fee motion . . . ."). The Supreme Court is on record as favoring and encouraging the settlement of Section 1988 fee awards, especially where – as here – the merits of the litigation and fees issues are negotiated separately. *See Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) ("Parties to civil rights litigation in particular should make a conscientious effort, where a fee award is to be made, to resolve any differences.").

### B. The Attorneys' Fees and Expenses Negotiated by the Parties Are Reasonable

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum*, 465 U.S. at 888; *accord League of United Latin Am. Citizens #4552 (LULAC) v. Roscoe Indep. School Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997). The resulting product is known as the lodestar. *LULAC*, 119 F.3d at 1232; *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (recognizing for § 1988 fees purposes, court is to apply "lodestar method" multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for each participant).

To determine reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 328 (5th Cir. 1995). Attorneys' rates should be consistent with those prevailing in the "relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895; *see generally Fairley v. Patterson*, 493 F.2d 598, 606-607 (5th Cir. 1974) ("[A]llowable fees and expenses may not be reduced because appellants' attorney was employed or funded by a civil rights organization."). In addition, hourly rates should reflect the attorney's skill, experience, and reputation, and it is appropriate to apply a scale of fees that varies according to the individual attorney's background and level of experience. *See Blum*, 465 U.S. at 895 n.11. Plaintiffs are also entitled to be compensated for time reasonably expended by paralegals and law student interns. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (paralegal time should be compensated at appropriate hourly rate); *LULAC*, 119 F.3d at 1235 (holding that paralegal and law clerk fees may be awarded when the prevailing practice in the

community is to bill those services to the client); *MTW Inv. Fin., LLC v. Great W. Capital Corp. of the America's Inc.,* No. 3:07CV611 (WHB), 2008 WL 723989, at *2 (S.D. Miss. March 14, 2008) (awarding fees for paralegal work).

### 1.     The Lodestar is Reasonable

Plaintiffs request reimbursement for a total of 28,289.14 hours expended on this litigation by their attorneys (19,141.74 hours) and by paralegals and law clerks (9,147.40 hours) for a total of $4,540,830.43 in fees.  As established by the Declaration of lead counsel Marcia Robinson Lowry, these hours were necessary and reasonably expended to properly prosecute Plaintiffs' claims.  (Lowry Decl. ¶ 10) (attached hereto as Ex. 2).  In the exercise of billing judgment, Plaintiffs excluded a total of 3,109.31 hours of time expended by Children's Rights that could be considered duplicative, inadequately documented, or otherwise excessive.  (Ex. 2 ¶ 11.)  Additionally, although over a dozen attorneys, legal assistants, and paralegals from the law firm Bradley Arant Rose & White, LLP expended hours in the prosecution of this matter, Plaintiffs have agreed to receive reimbursement only for hours expended by Bradley Arant attorneys Wayne Drinkwater and Melody McAnally, thus excluding an additional 112.25 hours from the hours for which Plaintiffs seek reimbursement.  (Drinkwater Decl. ¶ 8, Attach. C) (attached hereto as Ex. 3).  In an effort to reach agreement and to address any further concerns regarding excessive or inadequately documented work, Plaintiffs agreed to further reduce the hours of work for which they seek compensation by an across-the-board 15% reduction.[1]  (Ex. 2 ¶¶ 7, 10-11.)

---

[1] The itemized billing records attached as Attachment C to the Lowry Declaration reflect the hours remaining following the reduction of 3,109.31 hours in the exercise of billing judgment.  The 15% across-the-board reduction agreed to by Plaintiffs was made to the remaining billable hours detailed in Attachment C to the Lowry Declaration.

7

The parties' fees settlement reflects attorney rates below Plaintiffs' regular rates and the prevailing rates to which they are entitled. Local counsel Wayne Drinkwater and Stephen Leech, both highly respected litigators with over 20 years of experience each, are being compensated at $225 per hour. (*See* Ex. 3 ¶¶ 2, 10; Leech Decl. ¶¶ 2, 9 (attached hereto as Ex. 4).) This rate is lower than the current prevailing hourly attorney rate in the community. *See e.g. Ladner v. Hancock Med. Servs.*, No. 1:05CV333 (KS), 2008 WL 160705, at *3 (S.D. Miss. Jan. 14, 2008) (awarding attorney hourly rates of between $250 and $275 in employment discrimination action). The rate is also substantially lower than Mr. Drinkwater and Mr. Leech's regular rates of $415 and $325 per hour, respectively, which are consistent with prevailing rates for attorneys of their skill, experience, and reputation. (Ex. 3 ¶ 10; Ex. 4 ¶ 9; Dove Decl. ¶ 4 (attached hereto as Ex. 5).) Counsel with Children's Rights, based in New York City, with arguably the most experience in the country prosecuting child welfare institutional reform cases such as this one, are being compensated at rates between $189 and $304 per hour. Additionally, all travel hours for CR attorneys and paralegals have been billed at half rates. (Ex. 2 ¶ 14.) These rates are well below the rates that they have received in comparable cases in the past, as well as national and New York City rates for attorneys of their skill, experience, and reputation.[2] (Ex. 2 ¶ 14.) Additional counsel with the national law firm of Loeb & Loeb, LLP have agreed to be compensated for the purposes of settlement at a flat rate of $175

---

[2] National rates should be awarded when local counsel do not have the expertise or resources to take on the case. *See Brian A. v. Hattaway*, 83 F. App'x 692, 694-95 (6th Cir. 2003). As discussed below, no local counsel were willing and able to take on this case without the expertise and resources available to Children's Rights' attorneys. (Ex. 5 ¶¶ 5-6; Bergmark Decl. ¶¶ 6-7 (attached hereto as Ex. 7).)

per hour, well below their regular rates of $215 to $725 per hour.[3] (Lang Decl. ¶ 10) (attached hereto as Ex. 6). These rates are reasonable.

### 2. The *Johnson* Factors Support the Reasonableness of the Proposed Attorneys' Fees Award

"After the court calculates the lodestar, it must scrutinize a fee award under the *Johnson* factors, and not merely 'ratify a pre-arranged compact.'" *In re High Sulfur Content*, 517 F.3d at 228 (quoting *Piambino*, 610 F.2d at 1328). The *Johnson* factors the Court should consider are the following: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds*, Blanchard v. Bergeron, 489 U.S. 87 (1989). This Court's *Johnson* analysis "'need not be meticulously detailed'" nor "'excruciatingly explicit,'" lest "'decisions of fee awards consume more paper than did the cases from which they arose.'" *In re High Sulfur Content*, 517 F.3d at 228-29

---

[3] For purposes of calculating Plaintiffs' fee award for hours worked during the addendum period of December 1, 2007, through January 4, 2008, the following rates were used and agreed to by the parties: Marcia Robinson Lowry (Children's Rights) – $361.25 per hour; Shirim Nothenberg (Children's Rights) – $247.90 per hour; Jessica Polansky (Children's Rights) – $180 per hour; Eric Thompson (Children's Rights) – $290 per hour; Wayne Drinkwater (Bradley Arant Rose & White, LLP) – $310.50 per hour; Melody McAnally (Bradley Arant Rose & White, LLP) – $164 per hour; paralegals – $102.50 per hour. Travel hours for attorneys from Children's Rights were billed at half of these rates. These rates are reasonable and are consistent with the prevailing rates for attorneys of comparable skill, reputation, and experience. (Ex. 2 ¶ 17.)

(quoting *La. Power & Light Co.,* 50 F.3d at 331). Moreover, "[e]ven though the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered." *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531-32 (N.D. Miss. 2003) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir. 1993)). All of the relevant *Johnson* factors support this fee award.

### (i) The Time and Labor Required

This case, which involved nothing less than the manner in which the State provides for the care, safety, and permanency of the approximately 3,500 foster children in its custody, was undeniably time and labor intensive. Extensive investigation and research were necessary to sufficiently identify and document Plaintiffs' class claims and those of the individual Named Plaintiffs. The 61-page Amended Complaint presented eight legal claims on behalf of 13 Named Plaintiffs and a putative Class of over 3,000 children statewide. After the case was first filed in March 2004, the parties engaged in three years of extensive motion practice and discovery before embarking on serious settlement negotiations. The litigation involved two extensively briefed motions to dismiss, a motion for class certification, and cross-motions for summary judgment, as well as numerous discovery motions. Counsel for Plaintiffs reviewed hundreds of thousands of documents, deposed 27 fact witnesses and Defendants' expert, and worked with five Plaintiffs' experts to document ongoing agency failures and harms to the Named Plaintiffs and the Plaintiff Class. Plaintiffs defended the depositions of six Next Friends and of Plaintiffs' five experts. Numerous court conferences were also held to address contested scheduling and pre-trial matters. In undertaking this vast amount of

work, Plaintiffs' Counsel devoted 31,510.70 hours of attorney, law clerk, and paralegal time. However, they have agreed to exclude 112.25 hours expended by attorneys, paralegals, and law clerks at Bradley Arant Rose & White, LLP, to exclude 3,109.31 hours expended by Children's Rights attorneys in the exercise of billing judgment, and to make an additional across-the-board reduction of 15% of their hours. (Ex. 2 ¶ 7; Ex. 3 ¶ 8, Attach. C.) As reflected in the detailed time records attached to the Declarations of Marcia Robinson Lowry, Wayne Drinkwater, Stephen Leech, and John Lang, the hours for which Plaintiffs' attorneys seek compensation were reasonably expended and accurately reflect the magnitude of work performed on this complex and hard-fought case. (*See* Ex. 2 Attach. C; Ex. 3 Attach. A; Ex. 4 Attach. A; Ex. 6 Attach. A.)

### (ii) The Novelty and Difficulty of the Question

In addition to the breadth of the documentary and testimonial evidence Plaintiffs were required to marshal over a number of years, this case presented challenging legal questions. Plaintiffs pursued novel claims, including that Defendants were violating Plaintiff children's rights under the Equal Protection Clause of the Fourteenth Amendment. The novelty and difficulty of the legal questions presented by this case were recognized by the Court in its Opinion on Defendants' Motion to Dismiss, in which it stated, "The court obviously recognizes that many, if not most of the issues presented by defendants' motion are issues as to which there is both a divergence of opinion among the courts and a lack of Fifth Circuit authority." *Olivia Y. ex rel. Johnson v. Barbour*, 351 F. Supp. 2d 543, 555 n.7 (S.D. Miss. 2004). Even the scope of and liability standard for Plaintiffs' longstanding and well-established constitutional substantive due process rights were unsettled and the subject of repeated briefing.

11

### (iii) The Skill Required to Perform the Legal Service Properly

Marshalling the facts and the applicable law to successfully prosecute this class action case on behalf of the Named Plaintiffs and 3,500 foster children statewide required extraordinary skill and expertise. Not only did this case require complex civil litigation skills, but it also required child welfare knowledge. Plaintiffs' Counsel relied on such skills, knowledge, and expertise to document agency-wide failures in foster care policies and practices that jeopardized Plaintiff children's safety and well-being. Such skill, knowledge, and expertise also allowed Plaintiffs to successfully assemble and direct a team of five experts who reviewed the available evidence and offered expert opinions on Defendants' personnel, organizational, and fiscal mismanagement and Defendants' related child welfare practice failures that resulted in harm to and poor outcomes for Plaintiff children.[4]

Particularized skill and expertise was also required to negotiate the comprehensive and detailed Remedial Order that addresses Defendants' documented failures and secures better safety and improved outcomes for Plaintiff children.

---

[4] As an expert for the Plaintiffs, Dr. Peg Hess conducted a review of a representative sample of DFCS case files for 286 children in Mississippi state custody and documented high rates of abuse, a lack of supervision of foster children in their foster placements, and the failure by DFCS to provide foster children with stability and medical care. Plaintiffs' management expert Cathy Crabtree reviewed the management of DFCS and found that it was dangerously understaffed and relied upon an unqualified and untrained workforce. Plaintiffs' fiscal expert reviewed the financial operations of DFCS and found that DFCS was fiscally mismanaged and as a result was losing millions of dollars in available federal funds. Plaintiffs' Named Plaintiff expert, Dr. Marva Lewis, reviewed the case records of four of the individual Named Plaintiff children and found that DFCS had provided foster care services to those children in a manner that disregarded their most basic developmental, medical, and emotional needs. Plaintiffs' mental health expert, Dr. Wood Hiatt, evaluated one of the Named Plaintiff children and found that the pattern of placement moves and inconsistent treatment to which DFCS subjected the Named Plaintiff caused the child emotional and psychological harm.

### (iv) The Preclusion of Other Employment By the Attorney Due to Acceptance of the Case

Acceptance of this case was an enormous commitment of both time and resources by Plaintiffs' Counsel. Over five years, Plaintiffs' Counsel devoted 31,510.70 hours of attorney and paralegal time to this case, as well as $622,936.67 in out-of-pocket expenses, that were thus not available to devote to other cases.[5] (*See* Ex. 2. ¶ 7, 13.)

### (v) The Customary Fee

As previously established, the parties' fees settlement reflects attorney rates well below Plaintiffs' attorneys' regular rates. (*See supra.* Ex. 2 ¶ 14; Ex. 3 ¶ 10; Ex. 4 ¶ 9; Ex. 6 ¶ 10.)

### (vi) Whether the Fee Is Fixed or Contingent

Plaintiffs are indigent foster children in the custody of Defendants. As such, Plaintiffs' attorneys accepted this case knowing that they would only be reimbursed for some of their time and expenses if and when Plaintiffs were the prevailing party. The contingency of such an award supports the proposed fee request for five years of otherwise uncompensated representation.

### (vii) Time Limitations Imposed by the Client or the Circumstances

As this is a class action suit, this factor has no application. *Batchelder,* 246 F. Supp. 2d at 532, *citing In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996).

### (viii) The Amount Involved and the Results Obtained

The relief obtained in the Remedial Order is extraordinarily comprehensive, detailed, and favorable to Class members. The 43-page Remedial Order and 19-page

---

[5] These figures include both reimbursable and non-reimbursable time and costs.

Period 1 Annual Implementation Plan incorporated therein address virtually every major DFCS deficiency alleged in the Complaint. Within five years, DFCS is to meet child welfare accreditation and federal legal standards and outcomes, and DFCS is required to meet annual benchmarks in the interim. The Remedial Order also requires the participation of the independent Council on Accreditation (COA) to provide expert assistance to help the State meet these requirements. An independent Monitor will report back to the Court and the parties twice a year on compliance issues, and the Court retains jurisdiction to enforce the Remedial Order.

In light of the outstanding result obtained on behalf of the Class, the amount of the requested fee award for five years of effective legal representation is reasonable.

### (ix) The Experience, Reputation, and Ability of the Attorneys

Throughout the three and a half years of litigation, Plaintiffs have been represented by attorneys associated with Children's Rights, the law firms of Bradley Arant Rose & White, LLP and Loeb & Loeb, LLP, and Jackson-based attorney Stephen Leech. Children's Rights is a national nonprofit legal organization with unparalleled experience in complex class action litigation seeking child welfare system reform.[6] Attorneys from Children's Rights bring the unique combination of resources, child welfare knowledge, and legal skill necessary to pursue this complex, costly, and long-

---

[6] Attorneys at Children's Rights have represented foster children in class actions around the nation. *See, e.g.*, *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C. 1991), *aff'd in relevant part*, 990 F.2d 1319 (D.C. Cir. 1993), *cert. denied*, 510 U. S. 1044 (1994); *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994); *Marisol A. v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997); *Juan F. v. Weicker*, 37 F.3d 874 (2d Cir. 1994), *cert. denied*, 515 U.S. 1142 (1995); *Joseph A. v. Ingram*, 275 F.3d 1253 (10th Cir. 2002); *Wilder v. Bernstein*, 645 F. Supp 1292 (S.D.N.Y. 1986), *aff'd*, 848 F.2d 1338 (2d Cir. 1988); *G.L. v. Zumwalt,* 564 F. Supp. 1030 (W.D. Mo. 1983); *Jeanine B. v. Thompson*, 877 F. Supp. 1268 (E.D. Wisc. 1995); *Brian A. v. Sundquist*, 149 F. Supp. 2d 941 (M.D. Tenn. 2000); *Kenny A. v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000); *Carson P. v. Heineman,* 240 F.R.D. 456 (D. Neb. 2007); *Dwayne B. v. Granholm*, No. 06-13548, 2007 WL 1140920 (E.D. Mich. April 17, 2007).

running child welfare reform class action. (*See* Ex. 2 ¶¶ 14, 19.) The attorneys from the national law firms of Bradley Arant Rose & White, LLP and Loeb & Loeb, LLP have also litigated numerous complex class actions, as well as individual civil rights cases. (*See* Ex. 3 ¶¶ 3, 9; Ex. 6 ¶¶ 4, 8; Pls.' Mot. for Class Certification at 22-23 (Docket No. 2).) Stephen Leech also has extensive experience litigating complex federal and state cases in Mississippi and across the country. (Ex. 4 ¶ 2.) The talent, experience, and tenacity of the team of lawyers assembled to represent the Plaintiff children is amply reflected in the fact that Plaintiffs survived two motions to dismiss and a motion for summary judgment, and obtained the outstanding relief provided by the Remedial Order.

### (x) The "Undesirability" of the Case

This was a case for declaratory and injunctive relief on behalf of a Class of indigent Plaintiffs that promised to be lengthy, complex, and require hundreds of thousands of dollars in out-of-pocket expenses, a large portion of those in expert costs that are no longer reimbursable.[7] *See West Virginia Univ. Hosp. v. Casey*, 499 U.S. 83 (1991). Even if Plaintiffs were successful, an award of fees and costs would be years in the future and by law would not cover the total expenses incurred by counsel in prosecuting Plaintiffs' claims. There was no economic incentive to take this case.

### (xi) The Nature and Length of the Professional Relationship with the Client

Plaintiffs' Counsel has continuously represented the Named Plaintiffs for five years and the certified Class for three years. Due to the minority of the Plaintiffs, Counsel identified appropriate Rule 17(c) Next Friends to prosecute this case, defended challenges to such Next Friends, and successfully prosecuted this case to a negotiated

---

[7] The requested fee award does not include $244,214.94 in out-of-pocket expert costs.

Remedial Order that was supported by all Named Plaintiffs, their Next Friends, and Class members.

### (xii)   Awards in Similar Cases

The fee award sought in this case is comparable to attorneys' fees awarded by other courts in similar class action child welfare reform litigation. *See Brian A. v. Hattaway*, 83 F. App'x 692, 693-94 (6th Cir. 2003) (affirming award of $1.5M in fees and expenses based on hourly rates ranging from $175 to $375 per hour for more than 6,900 hours billed); *Kenny A. v. Perdue*, 454 F. Supp. 2d 1260, 1266, 1284-85, 1290 (N.D. Ga. 2006) (awarding plaintiffs attorneys' fees in the amount of $10.5M, based on hourly rates ranging from $215 to $495 per hour, after three years of litigation); *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 385-89, 400 (S.D.N.Y. 2000) (awarding plaintiffs $5.6M in attorneys' fees after lawsuit settled on eve of trial after three years of litigation, where attorneys' hourly rates ranged from $130 to $375 per hour). Further, courts have made comparable fee awards in other complex litigation cases. *See, e.g., In re High Sulfur Content*, 517 F.3d at 229 (vacating order allocating attorneys' fees, but noting that district court appropriately assessed the reasonableness of and approved $6.875 million lump-sum attorneys' fee award as provision of class action settlement); *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 819, 824-25 (5th Cir. 1996) (upholding allocation of fee award to local counsel equivalent to $550 per hour after three and one half years of litigation in class action ERISA case); *In re Fraser*, 75 F. Supp. 2d 572, 575-76, 587 (E.D. Tex. 1999) (discussing court approval of attorneys' fee award of 15 percent of monies recovered, where defendants in Texas tobacco litigation agreed to pay the state $15.3 billion after two years of litigation).

### 3. The Requested Expenses are Reasonable

Plaintiffs request reimbursement for a total of $322,727.07 in out-of-pocket expenses for such reimbursable costs as travel, copying, and depositions. (Ex. 2 ¶ 13.) As established by the Declaration of lead counsel Marcia Robinson Lowry, these expenses were necessary and reasonably expended to properly prosecute Plaintiffs' claims. (Ex. 2 ¶ 16.) The parties' fees settlement also reflects an additional across-the-board reduction of 15% applied to the reimbursable costs actually expended, which totaled $378,721.73.[8] (Ex. 2 ¶¶ 7, 13.)

## III. CONCLUSION

The terms of the fees settlement are reasonable. Accordingly, the Court should grant Plaintiffs' Unopposed Motion for Approval after entering an Order of Notice to the Class and considering any objections.

Respectfully submitted, this the 9th day of May, 2008.

/s Eric Thompson
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Eric E. Thompson (MBN 43993 *pro hac vice*)
Shirim Nothenberg (MBN 43990 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York 10001
Telephone: (212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

---

[8] Plaintiffs' costs expended from November 16, 2007, through January 4, 2008, were not discounted. (Ex. 2 ¶ 7 n.1.)

        Stephen H. Leech (MBN 1173)
        618 Crescent Boulevard, Suite 103
        Ridgeland, Mississippi  39157
        P. O. Box 3623
        Jackson, Mississippi 39207
        Telephone:  (601) 607-4172

        John Lang (MBN 43987 *pro hac vice*)
        Christian Carbone (MBN 43986 *pro hac vice*)
        John Piskora (MBN 44474 *pro hac vice*)
        LOEB & LOEB LLP
        345 Park Ave.
        New York, New York  10154
        Telephone: (212) 407-4000

        *PLAINTIFFS' COUNSEL*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2008, I electronically filed the foregoing Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Approval of Settlement Regarding Plaintiffs' Attorneys' Fees and Order of Notice to the Class with the Court using the ECF system, which sent notification of such filing to the following:

>Dewitt L. ("Rusty") Fortenberry Jr., Esq.
>Kenya Key Rachal, Esq.
>Gretchen L. Zmitrovich, Esq.
>Ashley Tullos Young, Esq.
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
>428 I-55 North
>Meadowbrook Office Park
>Jackson, Mississippi 39211
>(601) 351-2400
>
>Harold E. Pizzetta, III, Esq.
>Assistant Attorney General
>General Civil Division
>Carroll Gartin Justice Building
>430 High Street
>Jackson, Mississippi 39201
>
>*Attorneys for Defendants Haley Barbour, et al.*

/s Eric Thompson