IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                    PLAINTIFFS

v.                                                    CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*        DEFENDANTS

## DECLARATION OF MARCIA ROBINSON LOWRY

1.      I am Marcia Robinson Lowry.  I am a member of the Bar of New York and

admitted to practice in this Court *pro hac vice*.  I have served as co-lead counsel for the

Plaintiff Class in this case.  I am the Executive Director of Children's Rights ("CR"), and

I have been responsible for the supervision and conduct of my organization's work in this

case.  I give this Declaration in support of Plaintiffs' Unopposed Motion for Approval of

Settlement Regarding Plaintiffs' Attorneys' Fees and Order of Notice to the Class.

2.      As demonstrated by my resume, submitted as Attachment A to this Declaration

and incorporated in this Declaration, I graduated from New York University School of

Law in 1969.  I have been an attorney litigating child welfare cases since 1970.  For six

years, I was the Director of the Children's Rights Project of the New York Civil Liberties

Union, where I instituted and directed a program of litigation to reform the New York

City child welfare system.  From 1979 until 1995, I was the Project Director of the

Children's Rights Project of the American Civil Liberties Union ("ACLU"), where I

directed major litigation efforts in jurisdictions throughout the United States designed to

promote major reform of child welfare systems.  In 1995, I carried this work over to CR,

which I founded.

Exhibit 2

3.     I have been counsel in approximately 20 class action lawsuits representing

hundreds of thousands of children against systems that have failed to provide lawful child

welfare services including, for example:

- Baby Neal v. Casey, a class action against the Philadelphia child welfare system and the Pennsylvania public welfare department for failure to comply with constitutional standards and applicable federal statutes;

- Brian A. v. Sundquist, a class action against the Tennessee child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Carson P. v. Heineman, a class action against the Nebraska child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Charlie H. v. Whitman, a class action against the New Jersey child welfare system and the state of New Jersey for failure to comply with constitutional standards and applicable federal law;

- D.G. v. Henry, a class action against the Oklahoma child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Dwayne B. v. Granholm, a class action against the Michigan child welfare system concerning violation of foster children's rights under federal and constitutional law;

- E.C. v. Blunt, a class action against the Missouri governor and child welfare officials challenging the facial validity of an adoption assistance law on constitutional and statutory grounds;

- Foster Children Bonnie L. v. Bush, a class action against the Florida child welfare system and the state of Florida concerning violation of foster children's rights under federal and constitutional law;

- G.L. v. Zumwalt, a class action challenging federal statutory and constitutional infirmities within the foster care system in Kansas City, Mo;

- <u>Jeanine B. v. Thompson</u>, a class action against the Milwaukee County child welfare system and state of Wisconsin for failure to comply with local laws, federal statutes, and federal constitutional protections applying to children at risk for placement or in foster care;

- <u>Joseph A. v. New Mexico Dept. of Human Services</u>, a federal statutory and constitutional challenge to the foster care system in the state of New Mexico brought on a class basis;

- <u>Juan F. v. Rell</u>, a class action against the Connecticut social services system, based on failure to comply with constitutional standards and applicable federal statutes;

- <u>Kenny A. v. Perdue</u>, a class action against the Governor of Georgia and other state officials concerning violation of foster children's rights in DeKalb and Fulton Counties, Georgia, under federal and constitutional law;

- <u>LaShawn v. Barry</u>, a class action against the District of Columbia child welfare system for failure to comply with constitutional standards, federal statutes, and applicable District of Columbia law;

- <u>Marisol A. v. Giuliani</u>, a class action against New York City and State, regarding all aspects of New York City's child welfare system, for failure to comply with federal constitutional, federal statutory, state constitutional, state statutory, and state regulatory standards;

- <u>Olivia Y. v. Barbour</u>, this class action against the Mississippi child welfare system concerning violation of foster children's rights under federal and constitutional law;

- <u>Sam M. v. Carcieri</u>, a class action against the Rhode Island child welfare system concerning violation of foster children's rights under federal and constitutional law;

- <u>Sheila A. v. Finney</u>, a class action in state court against the Kansas child welfare system based on violations of state, federal statutory, and federal constitutional law; and

- <u>Wilder v. Sugarman</u>, a challenge to New York's statutory scheme for the provision of foster care services on the grounds of racial and religious discrimination and violation

of the establishment and free exercise clauses of the First
Amendment.

4.    During my professional involvement in the above class litigation, I have
participated in at least 10 class-wide settlements including direct involvement in the
negotiation of those settlements with state or local government officials and their counsel.

5.    In addition to my litigation activities in child welfare cases, I have written and
spoken extensively on child welfare reform and child welfare litigation.  These speaking
engagements and publications have included:  Fordham Urban Law Journal, "Why Settle
When You Can Win:  Institutional Reform and Marisol v. Giuliani," Vol. XXVI, May
1999; University of Michigan Journal of Law Reform, "Why Children Still Need a
Lawyer," Fall 2007; Speaker/Panelist, St. John's Journal of Legal Commentary
Symposium on Legal Reform and Children's Human Rights (April 9, 1999); Speaker,
American Bar Association's 9th National Conference on Children and Law (April 9,
1999): Keynote Speaker, New Jersey Child Placement Review Annual Conference (April
10, 2007); and Panelist, University of Michigan Law School, "Looking Ahead to the
Next 30 Years of Child Advocacy" (March 30, 2007).  Other publications and
professional activities are listed on my resume.

6.    I have also presented testimony before both houses of Congress on child welfare
and foster care issues, and in October 1998 I was a recipient of a Foundation for
Improvement of Justice Award.

7.    Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure,
Plaintiffs request that the Court approve the parties' settlement regarding Plaintiffs'
attorneys' fees and expenses.  Defendants have agreed to pay Plaintiffs' attorneys
$4,863,557.50 to settle all claims for attorneys' fees and expenses in this matter through

4

January 4, 2008. This agreed-upon total includes $4,540,830.43 in fees for reimbursement of 28,289.14 hours expended on this litigation by Plaintiffs' attorneys (19,141.74 hours) and by paralegals and law clerks (9,147.40). The fees settlement represents a reduction, undertaken by Plaintiffs' attorneys in the exercise of billing judgment, of 3,109.31 hours of their work, as well as the exclusion of 112.25 hours expended by attorneys, paralegals, and law clerks from the law firm Bradley Arant Rose & White, LLP. Plaintiffs also agreed to an additional across-the-board reduction of 15% in their effort to reach a resolution in this matter. The fees settlement provides for payment of $322,727.07 to Plaintiffs for reimbursable out-of-pocket expenses such as travel, copying, and depositions. The agreed-upon expense reimbursement reflects an across-the-board reduction of 15% applied to the costs expended.[1]

8.    In addition to my own work on the case, I supervised the various lawyers, paralegals, and law student interns at CR who worked on this matter. The resumes of all of these attorneys, setting forth their qualifications and experience, are submitted as Attachment A to this Declaration. I am familiar with CR's policies, practices, and procedures governing the recording and maintenance of time and expense records. I supervised staffing levels throughout this litigation and assigned attorneys to tasks only as reasonably necessary to provide suitable representation to the Plaintiff Class.

9.    Attachment B to this Declaration is a summary of: (a) the total billable hours performed by CR lawyers, law student interns, and paralegals on this case through January 4, 2008, and (b) case expenses advanced by CR in this case through January 4, 2008, itemized by category of expense. The compilation of itemized time records on which the attorneys' fees portion of Attachment B is based is attached as Attachment C.

---

[1] Plaintiffs' expenses from November 16, 2007, through January 4, 2008, were not discounted.

The compilation of compensable case expenses advanced by CR on behalf of the Plaintiff Class through January 4, 2008, is attached as Attachment D. The compilation of itemized time records set forth in Attachment C and the compilation of case expenses set forth in Attachment D were both generated from a database of entries created in the ordinary course of CR's business by persons with actual knowledge of the events recorded at or about the time of the events recorded, and which have been maintained in the ordinary course of CR's business. Each compilation has been personally reviewed by myself or a senior level attorney who worked on this case, and charges have been reduced or written off which I deemed, in the exercise of my billing judgment, excessive or non-compensable. I believe these compilations of the time and expense records and the summary of them attached as Attachment B to be an accurate and reliable account of the work performed and the compensable expenses incurred by CR and its personnel in this case.

10.     During the period covered by this motion for fees, it was the consistent policy and business practice of CR to require each attorney, paralegal, and law student intern to maintain contemporaneous and specific records of all time worked in a particular case, and for such records to be entered in a computerized billing system. Each such employee received a weekly printout of his or her billing hours, reviewed the records for accuracy, and corrected any billing errors. All of the CR attorneys who worked on this case kept contemporaneous and specific records of all the work they performed. These records, submitted in Attachment C, are an accurate statement of the time spent on this litigation for which CR seeks compensation. I attest that all of the hours submitted in Attachment C were reasonable and necessary in order to furnish adequate representation for the

Plaintiffs. Nonetheless, in an effort to reach a satisfactory resolution of this matter, Plaintiffs have applied a 15% across-the-board reduction in the number of hours reflected in Attachment C for which they seek reimbursement.

11.     All of CR's time entries have been carefully reviewed by a CR attorney, and in the exercise of responsible billing discretion, a total of 3,109.31 hours expended in conjunction with this litigation that might be viewed as excessive, redundant, or otherwise unnecessary to this litigation, as well as entries that are vague, have been excluded. Itemized time records for these excluded hours are attached hereto as Attachment E. The fact that, in addition to that exercise of billing judgment, an additional 15% across-the-board reduction of hours was applied to the itemized time records attached as Attachment C ensures that in no manner are Plaintiffs seeking reimbursement for work that could be deemed excessive or inadequately documented.

12.     I have made reasonable efforts throughout the litigation to balance the workloads of the attorneys and paralegals working on this case to ensure that the work assigned to them was commensurate with their level of experience. I have made every effort to keep the number of staff assigned to the case to a minimum. I believe the case was appropriately staffed at all times by CR. Each of the attorneys, paralegals, and law student interns working on this case had the ability and experience to perform the work assigned to him or her at a high degree of professionalism and was appropriately supervised.

13.     Throughout the litigation, I also made diligent efforts to hold expenses, which must be paid when incurred, to a minimum. Plaintiffs devoted $622,936.67 in out-of-pocket expenses to this case over five years. This total includes $244,214.94 in non-

reimbursable expert costs incurred by Plaintiffs. The parties' agreed-upon $322,727.07 in expense reimbursement reflects a discount of the actual reimbursable costs incurred by Plaintiffs, which totaled $378,721.73. Plaintiffs submit as Attachment D to this declaration a detailed, itemized list of reimbursable expenses for CR. The majority of the expenses incurred by CR in connection with this litigation were travel expenses. The numerous trips by CR attorneys to Mississippi for meetings with sources, meetings with local counsel, conferences with the Defendants, and Court appearances were all necessary to effectively litigate this case. I, along with the other CR attorneys working on this case, made concerted efforts to minimize the number and cost of trips to Mississippi, as well as the number of attorneys who participated in each trip. Additional reimbursable costs include copying and deposition costs.

14.    The parties' fees settlement reflects attorney rates well below Plaintiffs' Counsel's regular rates and the prevailing rates to which they are entitled. CR counsel is based in New York City and has arguably the most experience in the country prosecuting child welfare institutional reform cases such as this one. CR carries New York City levels of business overhead and undertakes substantial financial risks to mount a case on behalf of foster children while fronting the costs of investigation, litigation, and expert time and expense. Nonetheless, Plaintiffs have agreed, for the purposes of this fees settlement, for CR attorneys to be compensated in this case at rates between $189 and $304 per hour, with all travel hours for CR attorneys and paralegals billed at half rates. These rates are well below CR attorneys' usual rates of compensation. For example, in *Kenny A. v. Perdue*, 1:02-CV-1686-MHS (N.D. Ga. 2003), a class action on behalf of all children in foster care custody in Fulton and DeKalb Counties, Georgia, in which I served

as lead plaintiffs' counsel, the United States District Court for the Northern District of Georgia awarded me a rate of $495 per hour and approved a rate scale for other CR attorneys ranging from $215 to $380 per hour. *Kenny A. v. Perdue*, 454 F. Supp. 2d 1260, 1284-86 (N.D. Ga. 2006). I have also served as lead plaintiffs' counsel in numerous other class actions similar to this matter with respect to the scope of litigation, the legal claims asserted, and the systemic deficiencies at issue. In those cases, I am compensated at rates between $375 and $450 per hour, and other CR attorneys are compensated at rates between $205 and $375 per hour. The rates at which CR counsel will be compensated under this fees settlement are also well below the prevailing New York City rates for attorneys of comparable skill, experience, and reputation. *See, e.g., Billing Rates by Associate Class*, Nat'l L.J. Vol. 30, No. 15, December 10, 2007; *A Nationwide Sampling of Law Firm Billing Rates*, Nat'l L.J., Vol. 30, No. 15, December 10, 2007 (attached collectively as Attachment F).

15.    The hourly rates agreed to by counsel for Plaintiffs and Defendants in this application and reflected in Attachment B are fair, reasonable, and below the rates customarily paid to Plaintiffs' Counsel. These hourly rates do not take into account the fact that Class Counsel was required in this case to advance $622,936.67 in expenses in prosecuting this case for the benefit of the Class, including $244,214.94 in non-reimbursable expert costs, or the fact that Class Counsel's compensation was entirely contingent upon prevailing in this action.

16.    The expenses reflected in Attachment D were actually expended to prosecute this action. These expenses were reasonable and necessary to protect the interests of the Class.

17.    For purposes of calculating Plaintiffs' fee award for hours worked during the addendum period of December 1, 2007, through January 4, 2008, the following rates were used and agreed to by the parties: Marcia Robinson Lowry (Children's Rights) – $361.25 per hour; Shirim Nothenberg (Children's Rights) – $247.90 per hour; Jessica Polansky (Children's Rights) – $180 per hour; Eric Thompson (Children's Rights) – $290 per hour; Wayne Drinkwater (Bradley Arant Rose & White, LLP) – $310.50 per hour; Melody McAnally (Bradley Arant Rose & White, LLP) – $164 per hour; paralegals – $102.50 per hour.  Travel hours for CR attorneys were billed at half of these rates.  These rates are similarly reasonable and consistent with the prevailing rates for attorneys of comparable skill, reputation, and experience.

18.    Beginning in 2002, attorneys at CR commenced an intensive investigation into Mississippi's foster care system in order to identify any and all pervasive problems and systemic deficiencies in the services and placements being provided to children.  This extensive pre-filing investigation of the Mississippi foster care system, which included meeting with dozens of sources, usually in confidence, reviewing thousands of pages of documentation, assessing the system's management structure and service delivery systems, and identifying appropriate Named Plaintiffs and Next Friends, was both reasonable and necessary to prepare the Complaint in this action.

19.    In addition to performing extensive pre-filing fieldwork and investigations, CR attorneys subsequently became primarily responsible for, among other things, drafting and finalizing the Complaint, drafting and responding to motions, conducting factual and expert discovery, reviewing and analyzing the thousands of pages of documents produced by Defendants, preparing a final pretrial order under court rules, interviewing potential

trial witnesses, preparing for trial, negotiating the Stipulated Settlement as to liability, and negotiating and drafting the comprehensive Mississippi Settlement Agreement and Reform Plan entered as an Order of this Court on January 4, 2008 ("Remedial Order"). These tasks required both complex litigation skills and child welfare knowledge, a combination that CR attorneys are uniquely qualified to provide.

20.    I, with the assistance of other CR attorneys, also engaged a team of lawyers from New York and Mississippi to represent Plaintiffs. This team included Wayne Drinkwater of Bradley Arant Rose & White, LLP, John Lang of Loeb & Loeb, LLP, and attorney Stephen H. Leech, all of whom agreed to serve as my co-counsel and to provide additional legal staff.

21.    As reflected in my declaration dated December 19, 2007, and submitted to the Court for purposes of the fairness hearing in this matter, the Remedial Order mandates that Defendants undertake wholesale reform of every aspect of the Mississippi child welfare system. Based on my 30 years of experience in the field of child welfare law and my involvement in numerous similar institutional reform litigations throughout the country, it is my opinion that this settlement constitutes an extremely favorable result for the Plaintiff Class. The proposed settlement provides for a judicially enforceable consent decree on behalf of a certified class of children with continuing jurisdiction of the District Court, as well as an independent monitor who will issue frequent and regular public reports regarding the State's compliance with the consent decree.

22.    Among many other provisions, the Remedial Order requires the State to ensure that foster children are protected from further maltreatment once in DFCS custody, are provided necessary medical, dental, and mental health care, are no longer shuffled among

multiple homes and facilities, and are placed in permanent homes without delay.  DHS must also meet professional standards by providing for manageable caseloads for DFCS caseworkers, frequent caseworker visits to foster children, and continuous oversight of its programs.

23.     Further, the Remedial Order establishes administrative, management, and foster care standards, as well as child well-being outcome measures, that Defendants must meet in no later than five years, or earlier as set out in the Remedial Order and in annual Implementation Plans.  The annual Implementation Plans will detail the specific steps that Defendants are to accomplish each year in order to meet that year's interim benchmarks and to progress towards compliance with the Remedial Order within five years.  The annual Implementation Plans are to be developed by Defendants with the Council on Accreditation and Plaintiffs, with each provision of each annual Implementation Plan to be incorporated as an enforceable term of the Remedial Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of May, 2008.

_Marcia Robinson Lowry_
Marcia Robinson Lowry

Sworn to before me this
8th day of May, 2008

Notary Public

DANIEL W. E. HOLT
NOTARY PUBLIC-STATE OF NEW YORK
No. 02HO6111265
Qualified in New York County
My Commission Expires June 07, 20__

12

ATTACHMENT A

## MARCIA ROBINSON LOWRY

**330 7th Avenue, New York, NY 10001**
**212-683-2210**                                              www.childrensrights.org

---

*Founder and Executive Director*
**Children's Rights**                                                                    **1995 to present**
> Director of the leading national, non-profit organization fighting for the rights of children in state
> foster care custody.  Children's Rights protects America's most vulnerable children using policy,
> public education, and the power of the courts.  Directs class action litigation on behalf of  thousands
> of children nationwide.  Instrumental in promoting and implementing systemic reform of major child
> welfare systems.  Recognized as a leading advocate for children in legislative and public forums.
> Assumes all administrative and leadership functions for national organization.

*Director, Children's Rights Project*
**American Civil Liberties Union**                                                       **1979 - 1995**
> Directed major litigation efforts in jurisdictions throughout the United States designed to promote
> major reform of child welfare systems.  Identified and implemented project priorities.  Supervised all
> staff.  Assumed leadership role in all fund raising and public education activities.

*Director, Children's Rights Project*
**New York Civil Liberties Union**                                                       **1973 - 1979**
> Instituted and directed program of litigation to reform the New York City child welfare system.
> Coordinated all Project legal, legislative, and public education activities.

*Special Assistant to Commissioner*
**Special Services for Children, New York City Human Resources Administration**           **1972 - 1973**
> Planned and developed programs and worked on special problems for the Commissioner.

*Reginald Heber Smith Community Law Fellow and General Staff Attorney*
**Community Action for Legal Services**                                                   **1969 - 1972**
> General litigation involving such issues as abortion and Medicaid reimbursements, juvenile justice,
> and civil commitment of children to mental hospitals.  Also responsible for coordination of family
> law litigation among legal services offices.

*Reporter*
**Long Island Press**                                                                    **1963 - 1966**

*Education*
New York University School of Law, J.D. degree, 1969, cum laude
Northwestern Univ., Evanston, IL, B.S. degree in journalism, 1962
London School of Economics and Political Science, University of London, 1960-61

*Admitted to Practice*
New York State
United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of
Kentucky and the Eastern District of Michigan
Court of Appeals for the Second, Third, Fifth, Tenth and Eleventh Circuits and for the District of Columbia
Supreme Court of the United States

**Cases**

LaShawn v. Barry, 762 F. Supp. 959 (D.D.C. 1991), aff'd,  990 F.2d 1319 (D.C. Cir. 1993).  Class action against the District of Columbia child welfare system for failure to comply with constitutional standards, federal statutes, and applicable District of Columbia law.  Full trial on the merits, decision finding liability on local statutory, federal statutory and constitutional grounds on April 18, 1991.  Affirmed on narrower grounds by the Court of Appeals for the D.C. Circuit, April, 1993.  System placed in full receivership May 22, 1995, with broad authority to take all necessary steps to ensure implementation.  Further appeals are reported at 69 F.3d 556 (D.C. Cir. 1995), vacated and in banc review granted,  74 F.3d 303 (D.C. Cir.) (in banc), aff'd,  107 F.3d 923 (D.C. Cir,  1996), cert. denied, 117 S. Ct. 2431 (1997).  Receivership terminated October 2000.  Comprehensive Implementation Plan developed April 2003, charting course for full compliance with Court's order by December 31, 2006. Ongoing monitoring activity.

Baby Neal v. Casey, 821 F. Supp. 320 (E.D. Pa. 1993), vacated in part, 43 F.3d 48 (3d Cir. 1994).  Class action against the Philadelphia child welfare system and the Pennsylvania public welfare department for failure to comply with constitutional standards and applicable federal statutes.  Motion to dismiss denied, motion for class action denied, reversed on appeal by Third Circuit Court of Appeals and class certified.  Settled in late 1998, with the city, the state and the court system, with city agreeing to be held to generally accepted practices, and disputes to be reviewed by social work expert before being submitted to court.  Case successfully concluded in 2000, with defendants having complied with terms of settlement agreements.

Juan F. v. O'Neill, 37 F.3d 874 (2d Cir. 1994), now Juan F. v. Rell.  Class action against the Connecticut social services system, based on failure to comply with constitutional standards and applicable federal statutes.  Case submitted to binding mediation process, resulting in broad-ranging consent decree and monitoring process in 1991.  Court order to enforce various provisions of the decision affirmed by the Second Circuit Court of Appeals in 1994.  Subsequently, numerous negotiated resolutions to non-compliance as well as contempt hearings.   Plaintiffs' contempt request in 2003 resulted in an unprecedented voluntary handover of express management authority of the system from the state to the federal court monitor.  New Exit Plan negotiated and ordered in 2004 mandating achievement on 22 outcome measures. Management authority returned to the state in 2005.  Plaintiffs' assertion of noncompliance in January 2006 resulted in the development of an Action Plan, finalized in March 2007, to improve the state's performance in treatment planning and meeting children's needs.  Ongoing implementation and compliance activity.

Wilder v. Sugarman, decision reported at 385 F. Supp. 1013 (S.D.N.Y. 1974).  Superseded by Wilder v. Bernstein, 499 F.Supp 980 (S.D.N.Y. 1980), 645 F. Supp. 1292 (S.D.N.Y. 1986), 848 F.2d 1338 (2d Cir. 1988), Nos. 94-7322, 94-7324 (2d Cir. Feb. 23, 1995).  Challenge to New York's statutory scheme for the provision of foster care services on the grounds of racial and religious discrimination and violation of the establishment and free exercise clauses of the First Amendment.  Consent Decree approved, over objections of sectarian agencies, in lengthy opinion prohibiting religious discrimination and the imposition of religious practices on children, and approving extensive monitoring of sectarian child welfare agencies receiving public funds.  Attempt to narrow class by excluding children place with relatives denied by court.   Case concluded and principles of settlement agreement incorporated into Marisol A. v. Giuliani, discussed below.

G.L. v. Zumwalt, consent judgment reported at 564 F. Supp. 1030 (W.D. Mo. 1983).  Superseded by G.L. v. Stangler, consent judgment reported at 873 F. Supp. 252 (W.D. Mo. 1994), and later reported as GL. v. Sherman  Federal statutory and constitutional challenge to foster care system in Jackson County, Mo.  Class certified, motion to dismiss denied.  Consent judgment established widespread reforms in screening, training and supervision of foster parents, mandates appropriate treatment and permanency planning for foster children, and provides continuing court jurisdiction for enforcement.  Motion for contempt granted December 7, 1992, revised consent decree negotiated, implementation and monitoring plan agreed to, internal receivership created by defendants in an effort to achieve compliance.  Plaintiffs worked to enforce and

monitor compliance with consent decree, which resulted in substantial improvements to the Kansas City foster care system. On February 2, 2006, the case successfully concluded with the state having complied with the terms of the consent decree. The state agreed to keep in place until July 2009 our policies, practices and positions created by the consent decree.

Joseph A. v. New Mexico Dept. of Human Services, 575 F. Supp. 346 (D.N.M. 1983), vacated and remanded, 69 F. 3d 1081 (10th Cir.1995), and concluded as Joseph A. v. Bolson. Federal statutory and constitutional challenge to foster care system in the state of New Mexico. Class certified, motions to dismiss and for qualified immunity denied. Earlier consent judgment mandated sweeping system wide reforms involving worker training and qualifications, caseloads, permanency planning for children, citizen review boards, and monitoring. and Consent decree terminated by district court based on finding of substantial compliance with consent decree and denial of contempt motion, but this was reversed by 10th Circuit Court of Appeals. Consent decree reinstated on November 9, 1995, contempt finding recommended by Special Master. Decree renegotiated 1998 to incorporate standards of quality practice, with compliance determined by an expert neutral third party. Case again dismissed, this time on abstention grounds, and was again reinstated by the 10th Circuit. Case then entered a new stage, and the parties agreed on a court-ordered Exit Plan, utilizing external consultants to focus on children whose goal is adoption, to ensure they get adopted on a timely basis. The new Exit Plan required the external consultants to review cases every 60 days to ensure they are progressing towards adoption. Case successfully concluded, with compliance having been reached, in February 2005.

Martin A. v. Gross, 546 N.Y.S.2d 75, 153 A.D.2d 812 (1st Dep't 1989), 677 N.Y.S. 2d 292, 247 A.D. 2d 15 (1st Dep't 1998). Originally brought as a single action, then consisting of six separate lawsuits on behalf of six different families seeking damages for New York City's failure to provide appropriate protective and preventive services. Trial of first case resulted in jury verdict finding that City was negligent in failing to provide safe and adequate foster care for two twins with AIDS. Jury awarded $87,500 in damages. After Court of Appeals decisions authorizing cases to proceed, cases settled for substantial damages.

Jeanine B. v. Thompson, 877 F. Supp. 1268 (E.D.N.Y. 1995). Class action against Milwaukee County and state of Wisconsin for failure to comply with local laws, federal statutes and federal constitutional protections for children at risk for placement or in foster care. Class certified, motion to dismiss denied in first decision establishing continued viability of post-Suter federal statutory claims. State of Wisconsin assumed direct responsibility for Milwaukee's child welfare system on January 1, 1998 and began a plan of reform. A later decision in the case was the first to explicitly recognize an additional federal statutory right to timely adoption petitions under the new Adoption and Safe Families Act. A consent decree was entered by the Court in December 2002, which calls for court enforceable benchmarks and outcome measures to be achieved over a three-year period. Ongoing implementation and compliance activity.

Sheila A. v. Finney, No. 89-CV-33 (Kan. Dist. Ct., filed Jan. 8, 1989). Class action in state court against Kansas child welfare system based on violations of state, federal statutory and federal constitutional law. Case settled on eve of trial with sweeping consent decree mandatory system-wide reform. Plaintiffs, defendants and a task force of state and national experts negotiated details of compliance monitoring and implementation, which now concluded, with the state substantially complying with the settlement agreement.

Marisol A. v. Giuliani, 95-Civ-10533 (S.D.N.Y. 1995), 126 F.3d 372 (2d Cir. 1997). Class action against New York City and State, regarding all aspects of New York City's child welfare system, for failure to comply with federal constitutional, federal statutory, state constitutional, state statutory and state regulatory standards. Filed on December 13, 1995. Motions to dismiss denied, and class of approximately 100,000 children certified on June 18, 1996, class certification upheld on appeal. On eve of trial, November, 1998, settlement reached with city and state defendants 1) requiring vigorous monitoring of city operation by state agency and 2) creating a panel of experienced national experts to recommend, and assist in necessary reform or, if

reforms are not implemented, to become plaintiffs' experts in further court proceedings. Settlement affirmed in <u>Joel A. v. Giuliani</u>, 218 F.3d 132 (2d Cir. 2000). Reforms implemented, court jurisdiction ended over New York City, but extended against state after a finding of non-compliance based on failure to implement statewide computer system.

<u>Jeremy M. and Joanne M. v. Giuliani</u>, 00 Civ. 6498 (RJW) (S.D.N.Y. 2000). Federal lawsuit filed in August 2000 of behalf of five-year-old child held in NYC foster system for two years after legal custody had expired, despite his mother's desire to take him home. Settled with monetary damages for mother and child and with city child welfare agency taking action to end large number of illegal placements.

<u>Brian A. v. Sundquist</u>, 149 F. Supp.2d 941 (M.D. Tenn. 2000). Federal civil rights lawsuit filed in May 2000. After the plaintiff children had won a sweeping victory on the legal issues in the case, a federal judge ordered the parties to attempt negotiations to resolve the lawsuit without a trial. After over five months of intense negotiations, an agreement was reached, which imposes unprecedented changes throughout Tennessee's foster care system. The settlement was approved by the federal court in 2001. In November 2003, following the release of a monitoring report identifying significant and widespread non-compliance with the settlement agreement, plaintiffs filed a motion seeking to hold Governor Phil Bredesen and the commissioner of Tennessee's child welfare agency in contempt of court. Resolution of the contempt motion resulted in the replacement of the commissioner, with the state admitting non-compliance and the state's development of a court-enforceable implementation plan with the aid and approval of a panel of national experts. Ongoing compliance and monitoring activities.

<u>Kenny A. v. Perdue</u>, 1:02-cv-1686-MHS, 218 F.R.D. 277 (N.D. Ga. 2003). Class action against Governor of Georgia and other state officials on behalf of all of the approximately 3,000 foster children in Fulton and DeKalb Counties, Georgia (metropolitan Atlanta). Complaint originally filed in state court in June 2002. Case was immediately removed to federal court. Claims asserted under U.S. Constitution, federal statutes and state law. Preliminary injunction sought to close two emergency shelters in Fulton and DeKalb Counties, hearing conducted in November 2002. Preliminary injunction was denied upon Defendants' promise to close shelters, court found "few concrete steps were taken to close the shelters before this lawsuit was filed." 1:02-cv-1686-MHS, Docket No. 126 (N.D. Ga. Dec. 12, 2002.) Amended complaint filed in January 2003 seeking to add claim for inadequate foster care maintenance payments under federal statute. Both shelters closed by March of 2003. Class certification granted and motion to dismiss denied in August 2003. All claims upheld except for claims concerning shelters, which were dismissed as moot. Case settled. Ongoing monitoring and compliance activity underway.

<u>Olivia Y. v. Barbour</u>, Civ. Act. No. 3:04CV251LN (S.D. Miss. Filed Mar. 3, 2004). Federal class action suit charging that the Mississippi Division of Family and Children's Services (DFCS) placed the three thousand children under its care in danger and at risk of harm, and has left many thousands more to fend for themselves in abusive and neglectful homes. The case was filed on behalf of 12 named plaintiffs - children who have suffered physical and psychological harm while in DFCS custody, or who have been simply abandoned by DFCS despite multiple reports to the agency. Defendants' motion to dismiss and motion for summary judgment denied. The state conceded liability in a preliminary settlement agreement approved by the court in June 2007. A final, comprehensive settlement agreement mandating top to bottom reform of the child welfare system was reached by the parties in October 2007 and signed by the judge on January 4, 2008. Ongoing compliance and monitoring activities.

<u>Charlie H. v. McGreevey</u>, 83 F. Supp.2d 476 (D.N.J. 2000), now <u>Charlie H. v. Corzine</u>. Federal class action lawsuit brought against the state of New Jersey charging that the state's child welfare system was poorly managed, overburdened and harming the health and safety of children who depended upon it. Filed in December 1999, the class was certified in March 2002. In July 2002, over strenuous objections from the defendants, the court ordered that plaintiffs' experts be granted access to over 500 foster children's case files

to collect information on harm children were experiencing while in defendants' custody. In a later decision, the Court ruled that those expert reports could be released to local and national media, again over defendants' objections. In February 2003, the parties entered mediation, and the parties agreed to a wide-ranging settlement in June 2004. The settlement agreement required the state of New Jersey to undertake a full-scale reform of its foster care system, under the guidance of a panel of independent experts. Under the agreement, defendants were obligated to implement a reform plan they created with the approval of the expert panel and that requires them to immediately expend an additional 23.8 million dollars to fund new workers, equipment and the recruitment of more foster homes and expend an additional 300 million dollars in the next three years, to undertake emergency measures identified in the agreement as necessary to protect foster children and improve specific and measurable outcomes for children. State's progress stalled and in December 2005 plaintiffs filed a motion for contempt of the court-ordered settlement. In July 2006, plaintiffs settled with newly elected administration officials who created a separate children's agency and agreed to far-reaching steps to get reform on track. Ongoing monitoring and compliance activity underway.

Dwayne B. v. Granholm, On August 8, 2006 Children's Rights commenced a class action suit seeking to reform the ailing foster care system in the state of Michigan. The federal complaint alleges that the state of Michigan violates the constitutional, federal statutory and federal common law rights of children in foster care by failing to provide them with permanent homes on a timely basis, failing to furnish adequate medical, dental and mental health services, failing to provide safe and stable temporary foster homes, and failing to prepare children who will "age out" of the foster care system at the age of majority to live independently as adults. The complaint further avers that the child welfare system in the state of Michigan is badly understaffed, under-funded and inadequately managed. The state of Michigan operates the nation's 7th largest foster care system with approximately 19,000 abused and neglected children residing in state legal custody. Discovery is completed, and a trial date is set for June 2008.

Sam and Tony M. v Carcieri, On June 28, 2007, Children's Rights, together with the Rhode Island Child Advocate and the law firm, Weil, Gothsal & Manges LLM, filed a class action lawsuit to reform the Rhode Island child welfare system on behalf of the 3,000 children in state foster care. The federal complaint alleges that the state of Rhode Island violates the constitutional, federal statutory, and federal common law rights of children in foster care and causes harm to these children by failing to protect them from abuse and neglect while in foster care, placing children in orphanage-like institutions instead of homes, and returning children to their homes when it is unsafe to do so.

D. G. v. Henry, On February 13, 2008, Children's Rights, together with the Tulsa law firm Seymour & Graham, international firm Kaye Scholer and other local co-counsel, filed a class action lawsuit to reform the Oklahoma child welfare system on behalf of the more than 10,000 children in state custody. The federal complaint alleges that the state of Oklahoma violates the constitutional rights of the children in its care and causes those children harm by routinely placing them in unsafe, unsupervised, and unstable living situations, where they are frequently subjected to further maltreatment.

## PROFESSIONAL ACTIVITIES
- Keynote Speaker, New Jersey Child Placement Review Annual Conference (April 10, 2007)
- Panelist, University of Michigan Law School, "Looking Ahead to the Next 30 Years of Child Advocacy" (March 30, 2007)
- Panelist, University of Pennsylvania, "One Child, Many Hands: A Multidisciplinary Conference on Child Welfare" (June 3, 2005)
- Keynote Speaker, Lawyers' Association for Women, Nashville, TN (November 16, 2004)
- Speaker, Shoulder to Shoulder Sixth Annual Conference, Portland, OR (November 4, 2004)
- Speaker, Juvenile Law Section of the Oregon State Bar, "Race, Class & Culture in Juvenile Court," Portland, OR (April 22, 2004)
- Speaker/Panelist, Cardozo Public Law, Policy, and Ethics Journal Symposium, "Advocating for Change:

The Status and Future of America's Child Welfare System 30 Years After CAPTA" (April 19, 2004)

- Recipient, New York University School of Law Public Service Award, April 17, 2004
- Speaker, Amherst College, "The Constitution and the 'Other America' in the Twenty-First Century" (April 2, 2004)
- Speaker, Brooklyn College, "Children and the Law in New York Policy Symposium" (March 11, 2004)
- Speaker/Panelist, Yale Law School 10th Annual Rebellious Lawyering Conference, "Reforming the Foster Care System" (February 21, 2004)
- Speaker, The New Mexico Council on Crime and Delinquency 41st Annual Luncheon, January 23, 2004
- Testimony before the Subcommittee of Human Resources of the Committee on Ways and Means on examining the recent failure to protect child safety, November 6, 2003
- Recipient, Raymond A. Brown, Esq. Social Justice Award from Babyland Family Services, Inc., October 23, 2003
- Panelist, Fordham University School of Law, "Litigation and Social Change: Reflections on the Lost Children of Wilder" (February, 11, 2002)
- Speaker, National Association of Women Judges 23rd Annual Conference (October 7, 2001)
- Speaker, 24th National Children's Law Conference of the National Association of Counsel for Children, "Advocacy for Children and Families: Moving from Sympathy to Empathy," Coronado, CA (October 1, 2001)
- Speaker/Panelist, St. John's Journal of Legal Commentary Symposium on Legal Reform & Children's Human Rights, 4/9/99
- Recipient, Brookwood Commitment to Children Award from Brookwood Child Care Agency, 1999
- Speaker, American Bar Association's 9th National Conference on Children & Law, 4/9/99
- Recipient, Foundation For Improvement of Justice Award, October, 1998
- Speaker, Loyola University Chicago "Forum on the Child" (Chicago, IL October 13-14, 1997)
- Speaker, Casey Journalism Center, "Rethinking the Blame Game: New Approaches to Covering Child Abuse and Protection" (Baltimore, MD, June 12, 1997)
- Speaker, Child Welfare Legal Services Seminar, Florida State Department: Keynote address and leader of liability workshop for State Department attorneys who represent children. (Orlando, Florida, June 13, 1995)
- Speaker, National Association of Counsel for Children's Law Conference: Address on disposition of class action litigation cases.  (Boston, September 16, 1995)
- Speaker, National Council for Crime and Delinquency: Roundtable discussion for media on crisis in child abuse and neglect.  (New York City, October 17, 1995)
- Speaker, Casey Journalism Center, "Child Welfare and the Media". (Baltimore, May, 1995)
- Guest Expert, "Troubled Kids", MacNeil/Lehrer Newshour, February 20, 1995
- Testimony, Subcommittee on Human Resources, House Ways and Means Committee and the Early Childhood, Youth and Families Subcommittee, House Economic and Educational Opportunities Committee Concerning Child Care and Child Welfare, 2/3/95
- Speaker, "Children and the Justice Systems," Johns Hopkins University, 12/1/94
- Keynote Speaker, Child Welfare League of America, "Building a Case With Florida's Families", 6/13/94
- Speaker, The Woman Advocate '94, Prentice Hall Law & Business, 3/94
- Speaker, "In Whose Best Interests?: Bias in the Family Court System," New York University School of Law Root-Tilden-Snow public policy colloquium, 3/8/94
- Panelist, Child Welfare League of America, "Consent Decrees, Court Monitors and Child Welfare Reform in the 1990s," 9/93
- Speaker, National Symposium on Child Victimization 5/19/92
- Speaker, American Bar Association's 6th National Conference on Children & Law, 4/30/92
- Speaker, "Empowering Families," National Association for Family-Based Services  12/4/91.
- Speaker, "Child Welfare Litigation at the State and Local Level: The Advocate's View," 7/23/91
- Speaker/panelist, "Advocating for Children: Rights and Discrimination, Protection and Paternalism,"

McGill-Loyola 2nd Annual Comparative Health Law and Policy Conference, June 1991

- Testimony, Senate Committee on Ways & Means, Subcommittee on Human Resources, "State of Nation's Child Welfare System," May 1991
- Speaker, ABA Invitational Symposium on Civil and Criminal Liability in Child Welfare Work, May 1990
- Faculty Member, National Court Appointed Special Advocate Association Ninth Annual National Conference, <u>Children: The Time is Now</u>, April 1990
- Panelist, Practicing Law institute seminar, <u>Child Abuse, Neglect, and the Foster Care System</u>, March 1990
- Speaker, "Developments in Foster Care Law," University of Tennessee and Tennessee Bar Association seminar, <u>Representing Children</u>, December 1989
- Speaker, New York University School of Law Root-Tilden seminar on children and families, November 1989
- Speaker, AFSCME Child Welfare Workers Conference General Session, "Working for the Rights of Children," October 1989
- Panelist, "State Perspectives on Legal Activities in Child Welfare," National Association of Public Welfare Administrators, Children's Services Administrators Forum, <u>Direction Setting for Child Welfare: The Impact of Litigation on the Delivery System</u>, June 1989
- Panelist, Practicing Law Institute seminar, <u>The Foster Child: From Abandonment to Adoption</u>, March 1989
- Speaker, Third National Conference of the Association of Child Advocates, September 1987
- Speaker, National Conference of State Legislators on the implementation of litigation in child welfare, 1986
- Testimony before the United States Senate Labor and Human Resources Committee on barriers to adoption, 1985
- Speech on litigation strategy at the ABA National Resource Center symposium on children's issues, 1985

## PUBLICATIONS

- "Why Children Still Need a Lawyer," <u>University of Michigan Journal of Law Reform</u>, Fall 2007
- "Putting Teeth into ASFA: The Need for Statutory Minimum Standards," <u>Children and Youth Services Review</u>, 26 (2004), pp. 1021-1031.
- "Why Settle When You Can Win: Institutional Reform and Marisol v. Giuliani," <u>The Fordham Urban Law Journal</u> 1335, 1999
- "We're suing the city for kids' sake," <u>Daily News</u> Op-Ed page, April 1, 1998
- <u>New York Law Journal</u>, The Lawyer's Bookshelf (reviewing Edward Humes, <u>No Matter How Loud I Shout: A Year in the Life of Juvenile Court</u>), May 3, 1996
- "Children Deserve a Family of their Own" in Opinion <u>The Flint Journal</u>, December 19, 1994
- "Fix Foster Care to Fix Crime", <u>Asbury Park Sunday Press</u>, May 29, 1994
- "The Failure of Foster Care" <u>Detroit Free Press</u>, April 7, 1994
- "Foster Kids are put on the Shelf" in <u>Fort Worth Star Telegram</u>, September 5, 1993
- "Class Actions:  The Risks Due to Systemic Problems" in <u>Liability in Child Welfare and Protection Work: Risk Management Strategies</u>, ABA Center on Children and the Law, 1991
- "Hugging Them Is Not Enough" in New York Forum, <u>New York Newsday</u>, p. 138, December 19, 1990
- "Justice's Rusted Wheels" in Opinion, <u>Manhattan Lawyer</u>, p. 12, December 5, 1988
- "A Mission Is not a Home" in New York Forum, <u>New York Newsday</u>, p. 92, June 17, 1988
- "Kids Floating, Kids Drowning" in New York Forum, <u>New York Newsday</u>, p. 66, April 15, 1987
- "Derring-Do in the 1980s: Child Welfare Impact Litigation After the Warren Years," in <u>Family Law Quarterly</u>, Summer, 1986; reprinted in Besharov, <u>Protecting Children from Abuse and Neglect, Policy and Practice</u>, 1988
- "Legal Strategies to Facilitate Adoption of Children in Foster Care," in <u>Foster Children in the Courts</u>, Butterworth Legal Publishers, 1983
- "Individual Rights and the Interstate Placement of Children: From Expediency to Exportation," in

Readings in Public Policy, Academy for Contemporary Problems, 1981
- "Children's Rights," in Advocating for Children in the Courts, ABA National Institute, 1979
- "When the Family Breaks Down: Massive and Misapplied Intervention by the State," in Vardin and Brody, Children's Rights: Contemporary Perspectives, Teacher's College Press, 1978
- New York University Law Review, "The Judge v. the Social Worker: Can Arbitrary Decision Making Be Tempered by the Courts," Vol. 52, November, 1977
- The New York Times Op-Ed page, Legal Celling-In of Foster Children, 5/21/76
- Journal of Psychiatry and Law, "Symposium: Children's Rights -- Psychiatry and the Law," Winter, 1975

In 2000, Nina Bernstein highlighted Ms. Lowry's work in New York City with the publication of *The Lost Children of Wilder: An Epic Struggle to Change Foster Care.* This book explores the background and aftermath of the landmark 1973 Wilder lawsuit Ms. Lowry filed against the City of New York's foster care system.

**SARA MICHELLE BARTOSZ**
421 14th St. Apt. 3R, Brooklyn, New York 11215
Home Telephone (646) 267-2673
Work Telephone (212) 683-2210

## LEGAL EMPLOYMENT

**CHILDREN'S RIGHTS,** New York, New York

*Senior Staff Attorney*, December 2003 to present.  Assigned to conduct all aspects of the investigation, preparation and presentation of civil rights class actions on behalf of abused and neglected children in the custody of state child welfare agencies.  Further assigned to the monitoring and enforcement of consent decrees secured in class action litigation.

## EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES ("EOP"), OFFICE OF ADMINISTRATION ("OA"), Washington, D.C.

*General Counsel,* April 24, 2000 to January 20, 2001. Appointed by the Chief of Staff to the President to serve as principal legal advisor to OA.  Responsible for overall legal representation of OA, which provided a broad range of management services to the White House Office and EOP through an annual operating budget of over $30 million, 190 employees and ten divisions. Provided legal advice and counsel in a wide range of substantive areas including Congressional and law enforcement investigations, constitutional law, employment law, federal procurement and contracts, appropriations law, ethics, general administrative law and federal record keeping and information disclosure.

• Provided legal counsel to senior White House officials in connection with a multi-jurisdictional investigation into compliance by the White House with subpoenas served by various investigative bodies in a wide range of inquiries. This investigation involved independent probes by the House Committee on Government Reform, the Justice Department Campaign Financing Task Force, the Office of the Independent Counsel, the Senate Judiciary Committee and the General Accountability Office.

• Managed litigation involving OA personnel and activities and coordinated with Justice Department officials in connection with various federal actions including a high-profile case relating to the Privacy Act and FBI background files as well as a case alleging violations of certain Equal Employment Opportunity laws within the Executive Residence of the White House.

• Provided legal support on numerous issues relating to the Presidential transition, including the negotiation and drafting of a Memorandum of Understanding between

1

the White House, the Office of the Vice President and the National Archives and Records Administration in relation to the preservation and management of Presidential records existing in electronic form.

• Provided legal counsel and management in connection with a $13 million project undertaken to restore federal and Presidential e-mail records on the White House Automated Records Management System. Coordinated this effort with the Office of the Independent Counsel, the House Committee on Government Reform, the House Appropriations Committee and the Justice Department.

**CAHILL, CHRISTIAN & KUNKLE, LTD.,** Chicago, IL.
***Partner,*** 1996 to April 17, 2000. Founded firm with 9 other equity partners.

Civil and criminal litigation practice in a wide variety of substantive areas including officer's and director's liability, shareholder disputes, intellectual property, securities, employment, civil rights, product liability, bankruptcy, environmental law, insurance coverage and land use.

• Appointed as Assistant Special State's Attorney to investigate allegations of perjury, official misconduct and obstruction of justice by prosecutors and Sheriff's officers in relation to a high profile murder case in West Suburban Chicago. Conducted a one year Special Grand Jury investigation and prosecuted the multiple-count criminal conspiracy indictment returned against seven defendants. Performed direct and adverse examinations of numerous witnesses in a four-month criminal jury trial conducted in DuPage County, Illinois.

• Successfully defended a corporate client and individually named employees in a one-week civil jury trial involving claims of abuse of process, wrongful imprisonment and battery. The Cook County, Illinois jury returned a defense verdict and rejected plaintiff's request for damages in excess of $1 million for alleged physical and emotional injuries.

• Successfully defended a corporate engineering firm in a multi-million dollar breach of contract action brought by a County to recover unanticipated environmental clean-up costs incurred in the course of a highway improvement project. Following a one-week evidentiary hearing, a three-judge panel rejected the County's case and awarded the engineering firm its past due professional fees.

• Obtained temporary and preliminary injunctive relief on behalf of an insurance client in a breach of fiduciary duty and contract action relating to the sale of disability and professional business interruption policies.

**PHELAN, POPE &. JOHN, LTD.,** Chicago, IL.
***Partner,*** 1995-1996, ***Associate,*** August 1986 to 1995.

Extensive experience in corporate and commercial litigation including intellectual property, trade secrets, shareholder disputes, land use, contracts, corporate and

2

commercial fraud, product liability, environmental law and employment litigation.

• Prepared substantive pleadings, conducted motion practice, formulated and undertook factual and expert discovery and tried several jury and bench cases.

• Obtained permanent injunctive relief on behalf of a waste disposal company whose constitutional rights were violated by a municipality when its permit application to operate a solid waste landfill was denied. The injunction issued following a two-week bench trial.

• Successfully prosecuted a breach of contract action by a commercial real estate developer against a municipality that had failed to transfer unencumbered title to a parcel of land designated for development into a major shopping mall.

## LEGISLATIVE AFFAIRS EXPERIENCE

### EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES, OFFICE OF ADMINISTRATION, Washington, D.C.

*General Counsel,* April 24, 2000 to January 20, 2001. Appointed by the Chief of Staff to the President to serve as principal legal advisor to the Office of Administration, a unit within the Executive Office of the President providing administrative, legal, and logistical support to the White House Office and other EOP units. In this capacity, provided direct support to the Assistant to the President for Management and Administration, the White House Counsel and the Director of OA on legislative matters including appropriations requests and Congressional briefings.

• Appeared before the staff of the House Appropriations Committee to provide detailed briefings in relation to supplemental requests for funding on a records management project involving Presidential records and federal records existing in electronic form (known as the "Tape Restoration Project" or "TRP").

• Prepared monthly status reports to the House and Senate Appropriations Committees regarding the TRP progress and the supplemental funds expended or obligated.

• Appeared before the staffs of the Senate Governmental Affairs Committee, the Senate Judiciary Committee and the House Government Reform Committee to provide detailed briefings in relation to the TRP and in relation to various Congressional investigations into records management practices within the White House Office and the EOP.

• Presented government officials and employees for interview by staff counsel to the House Government Reform Committee in connection with an investigation

3

into the records management practices within the White House Office and the EOP.

**BUSINESS EMPLOYMENT**

**NJLABEL &. NYLABEL,** Englewood, New Jersey; Islandia, New York, May 2002-November 2003

***Director of Marketing,*** Provided overall management and oversight for the marketing and external sales operations of a printing and packaging business with approximately $15 million in gross annual sales. Provided daily management support and consultation to the President/Owner. Supported management in insurance, real estate, credit, contract and litigation matters as well as interfaced with outside counsel.

**EDUCATION**

**LOYOLA UNIVERSITY OF CHICAGO SCHOOL OF LAW,** Chicago, IL.

*Juris Doctor,* May 1986 (Graduated in Top 10% of Class)
Received Commendation for Leadership and Service to the School of Law
Licensed to Practice in the State of Illinois, 1986 to present

**UNIVERSITY OF NOTRE DAME,** South Bend, IN.
Bachelor of Arts/ Economics, May 1983
John P. McGoorty Scholarship Recipient, Notre Dame Club of Chicago

**AMERICAN UNIVERSITY,** Washington, DC.
Washington Semester Program/ Spring Term 1982
Clerked for Congressman William F. Clinger (2.3rd Dist. PA.)

**PROFESSIONAL ACTIVITIES**

***Vice-Chairman,*** Judicial Evaluation Committee, Chicago Bar Association, 1999-2000, Conducted investigations and interviews to assess candidates for judicial positions in Cook County, Illinois and the Illinois Appellate Courts; published Committee recommendations for consideration by the electorate.

***Speaker,*** Illinois Trial Lawyers Association 1999 Annual Tort Law Symposium, Presentation on developments in Illinois product liability law and practice.

***Speaker,*** Illinois Trial Lawyers Association 2000 Annual Tort Law Symposium, Presentation on developments in admiralty jurisdiction and damages in watercraft litigation.

***Guest,*** Chicago Tonight with John Calloway, June 1999 television appearance

4

to discuss the legal significance of the highly publicized DuPage Seven criminal prosecution.

**PUBLICATIONS**

***Co-Author:*** "The Statute of Limitations Defense in Latent Injury and Toxic Tort Cases'" and "State of the Art: Is There Any Life Left in the Defense?" <u>Preparation and Trial of a Complex Chemical and Hazardous Waste Case</u>, Practicing Law Institute 1986

***Co-Author:*** "Why Children Still Need a Lawyer" <u>University of Michigan Journal of Law Reform</u>, Volume 41, Issue 1, Fall 2007

5

**TARA S. CREAN**
218 West 123rd Street, Apartment #3 * New York, New York 10027 * (212) 663-1180 * tcrean@alumni.princeton.edu

**EXPERIENCE: CHILDREN'S RIGHTS,** New York, NY                                  November 2004-December 2006
*Staff Attorney*: Plaintiffs' counsel in federal class action institutional reform lawsuits brought on behalf of abused and neglected children. Investigated jurisdictions across the nation for potential new cases, researched child welfare data, contacted sources, performed legal research, drafted briefs and motions, and prepared for trial.

**VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.,** New York, NY         September 2000-October 2004
*Associate*: Represent plaintiffs in federal and state litigation alleging employment discrimination and denial of overtime and minimum wages or family and medical leave. Develop factual record through all phases of discovery, including drafting pleadings, propounding and responding to discovery demands, and conducting and defending depositions. Draft summary judgment briefs, motions *in limine* concerning expert reports, appellate briefs, petitions for *certiorari*, and other memoranda of law. Argue motions and examine witnesses at trial and arbitration hearings. Conduct settlement negotiations with minimal supervision. Interview and select prospective clients.

**WOMEN'S LAW PROJECT,** Philadelphia, PA                                September 1998-August 2000
*Independence Foundation Fellow*: Researched, developed legal theories, and drafted briefs for cases under Title VII, Title IX, state Equal Rights Amendment, and state statutes governing health insurance, gay and lesbian parenting rights, sexual assault, and other equal rights issues. Coordinated coalition in favor of contraceptive equity bill: drafted cost-benefit analysis; worked toward consensus on talking points for legislative allies; testified before state legislature; and addressed community groups to raise consumer awareness. Reviewed all health insurance rate plans filed with Insurance Department and analyzed effect of gender as rating factor on employers' and individual women's premiums.

**PUBLIC CITIZEN LITIGATION GROUP,** Washington, DC                     September 1997-August 1998
*Coordinator, Supreme Court Assistance Project*: Reviewed all *cert.* petitions; drafted memoranda on *cert.*-worthiness; identified cases with potential public interest impact, from sexual harassment and HIV to Eleventh Amendment and other jurisdictional issues. Drafted briefs in opposition to *certiorari*. In more than a third of civil cases in which Court granted *cert.*, assisted with drafting briefs and with practice oral arguments. Negotiated favorable settlement in FOIA case seeking government records on experiments in HIV-positive pregnant Africans.

**EDWIN H. MANDEL LEGAL AID CLINIC,** Chicago, IL                       Spring 1996-Spring 1997
*Employment Discrimination Project*: Represented woman alleging sexual harassment at Mitsubishi together with twenty-eight private co-plaintiffs. Responded to discovery requests, researched evidentiary issues, and defended dozens of depositions.

**NOW LEGAL DEFENSE AND EDUCATION FUND,** New York, NY                    Summer 1996
*Summer Law Clerk*: Researched which statutory language creates a "right" enforceable under § 1983 for challenge to adequacy and equity of educational programs for Spanish-speaking workfare participants. Researched administrative procedural issues in challenge to New Jersey's "Child Exclusion Rule" for welfare benefits. Analyzed facts in discovery for student peer sexual harassment case. Edited and conducted research for Supreme Court *amicus* brief arguing that sexual assault by state actor rises to level of unconstitutional deprivation of rights.

**LEGAL ASSISTANCE FOUNDATION OF CHICAGO**, Chicago, IL              Fall 1995-Winter 1996
*Family Law Project*: Interviewed battered women about their legal needs – orders of protection, divorce, property division, maintenance, child custody, and child support – and selected cases for representation.

**NAACP LEGAL DEFENCE AND EDUCATIONAL FUND, INC.,** Washington, DC       Summer 1995
*Summer Law Clerk*: Drafted petition for rehearing *en banc* on application of disparate impact analysis to Fair Housing Act, memorandum to Senator Specter on impact of *Adarand* on affirmative action programs, and numerous memoranda in support of Supreme Court brief for a voting rights case. Interviewed and selected witnesses. Researched 50 states' protections against insurance redlining.

**EDUCATION:    THE UNIVERSITY OF CHICAGO LAW SCHOOL,** Juris Doctor, 1997

**PRINCETON UNIVERSITY,** Bachelor of Arts, 1994, *Summa cum laude*
o    *The New York Herald* Thesis Prize: Best senior thesis analyzing public policy issue, for *Words, Welfare, and Revolutionary Wedges: Whether Rights Talk or Needs Discourses Will Drive Political Action*

**BARS:**      Admitted to New York, Pennsylvania, and Massachusetts
Member of Committee on Social Welfare Law of the Association of the Bar of the City of New York

## Jeremiah Frei-Pearson
31-31 29th St., Apt. 1D
Astoria, New York 11106
jfp@stanfordalumni.org
718-666-7693

**Education:**
**Stanford Law School:**  J.D. 2003; Public Interest Fellow; Research Assistant to Professor Alan Morrison; Research Assistant to Professor Michael Klarman; Co-founder and Program Coordinator of Stanford Chapter of the American Constitution Society; Head Teacher for Stanford Street Law; Co-founder and Vice President of Stanford Law School Democrats.

**Skidmore College:**  B.A. 2000 (Psychology); Phi Beta Kappa; Magna Cum Laude; Highest Honors; Psi Chi President; Periclean Society; Assistant Psychology Teacher.

**Experience:**

10/06-present  *Staff Attorney*, Children's Rights
Analyze child welfare systems across the nation from a legal and policy perspective.  Engage in class action litigation on behalf of abused, neglected and impoverished children; negotiate systemic monitoring agreements.

9/03-9/06  *Associate*, Kaye Scholer L.L.P.
Second-chaired multiple depositions; drafted motions; supervised teams of attorneys.  Received highest bonus paid to my class for 2004 and 2005.  Won death row appeal in Alabama; successfully advocated at administrative hearings; secured monetary judgments for indigent clients.  Winner of Kaye Scholer Pro Bono Award for 2004 and 2005.

9/05-11/06  *Education Policy Committee Member*, Lawyers for Elliot Spitzer
Supervised team of attorneys creating early childhood education policy proposals.  Research policy issues and draft proposals.

5/01-8/01  *Summer Clerk*,   The Honorable Shira Scheindlin, U.S. District Court Judge, S.D.N.Y.
Worked closely with Judge Scheindlin and her law clerks.  Researched relevant legal issues.  Drafted opinions and memoranda.

5/00-5/03  *Senior Symposium Editor*, Stanford Law and Policy Review
Responsible for all aspects of the publication of a symposium on the litigation surrounding the 2000 elections.  Selected articles for publication; edited articles for style and content; corresponded with authors; supervised work of journal membership.  As a general member, edited articles on children's rights and disability law.

9/00-5/03  *Volunteer Attorney Program Coordinator*, East Palo Alto Community Law Project
Organized and supervised a program providing direct legal services.  Planned strategy with lawyers and clients.  As a general member, participated in witness interviews and provided direct legal services.

6/99-7/99  *Intern*, Washington Office of Senator Edward Kennedy
Researched policy relating to education, the judiciary and foreign policy; interacted with constituents; walked the Senator's dog.

**Admitted:**  United States District Court, S.D.N.Y. (2005); New York State (2004).

**Activities & Interests:**  American Constitution Society of New York (Executive Committee Member), Lawyers for Edwards (New York chair), Democracy for New York City (Steering Committee), Election Protection Coalition Volunteer; I enjoy politics, American history, basketball, football, traveling and watching Hi-5.

# Elissa A. Gelber
334 6th Ave., Apt.1, Brooklyn, NY 11215 ▪ (646) 320-6678 ▪ elissagelber@gmail.com

## Education

**Harvard Law School**, J.D., June 2001
　　　　Direct Action, Co-President, Leader of 2001 Student Delegation to Haiti
　　　　*Civil Rights-Civil Liberties Journal*, Senior Editor

**New York University**, B.A. in Economics and Political Theory, June 1998
　　　　*summa cum laude*
　　　　Phi Beta Kappa
　　　　Alumnae Key Award, most outstanding community leadership and service

## Experience

**Children's Rights**, New York, NY　　　　　　　　　　　　　　January 2006 – present
*Staff Attorney*
Investigate and bring federal class action lawsuits on behalf foster children against states throughout the country.  Travel extensively throughout country to assess merits of potential legal claims and analyze need for system-wide reform.  Meet regularly with foster parents, child advocates, caseworkers, academics, government officials and community members.  Depose state officials who administer child welfare systems; draft complaints, class certification briefs, discovery motions, motions to compel, interrogatories and document requests.

**Cleary Gottlieb Steen & Hamilton LLP**, New York, NY　　　　September 2003 – December 2005
*Litigation Associate*
Represented clients in connection with complex litigation and white-collar practice, working directly with partners as most senior associate.  Participated in all aspects of range of corporate and *pro bono* litigations and International Court of Arbitration proceedings.  Served as supervising associate in representation of adolescent victims of domestic violence seeking asylum, private educational institution challenging denial of state funding for education of children with disabilities.  Drafted experience federal and state court briefs (supreme court and appellate), document requests, interrogatories, motions to compel, and motion to reopen.

**Holt International Children's Services**, Hanoi, Vietnam　　　August 2002 – August 2003
*Luce Scholar, Henry Luce Foundation Fellowship*
Advised local staff on policy issues related to international adoption of Vietnamese children and development of local foster care system. Developed *Holt-Stories* documentary program in villages throughout Vietnam and worked directly with local orphanage staff to implement ongoing social services support programs for children. Assisted local adoptive and foster families and single-mothers in small-enterprise development, family planning and child development. Attended and served as representative at international adoptions and family support training programs throughout Southeast Asia.

**Chief Judge U.W. Clemon**, Birmingham, AL　　　　　　　　September 2001 – August 2002
*Judicial Clerk, United States District Court, Northern District of Alabama*
Provided legal analysis for and participated in all aspects of federal cases, including civil rights and international law matters.

**Harvard College Department of Economics**, Cambridge, MA　　Spring 2001
*Economics and Education Teaching Fellow*
Created original syllabus for two seminars of eight Harvard undergraduate Economics students in the field of equity in educational finance.  Taught bi-weekly on subjects including educational vouchers, charter schools, teacher incentives and community development, with focus on building students' program evaluation skills. Organized field studies in area schools.

**American Civil Liberties Union of Alabama**, Montgomery, AL　　Winter 2000
*Legal Intern for Law and Education*
Served as legal assistant to Executive Director on all aspects of *Harper* educational equity and adequacy case.  Researched educational standards and models and remediation programs, met with community and Board of Education members, analyzed impact of state mandatory testing programs on children's educational development, attended strategy sessions.

**Cypress Hills Local Development Corporation** Brooklyn, NY　　Summer 1999
*Organizing and Community Development Intern*
Researched legislative and legal developments in public housing, healthcare and educational reform and educated families and community members of their rights in these arenas.  Directed research on legal and socio-economic implications of NYS Charter School Legislation and explored with parents and children the option of conversion of local school to charter school.

# YASMIN GREWAL-KŐK

100 S. 4th Street #3E, Brooklyn, NY 11211

(415) 317-4884
yasmin100@gmail.com

## *Education*

**University of California at Berkeley School of Law (Boalt Hall)**, Berkeley, California
J.D. Degree, May 2000

    *Honors:*    Penny Nanopoulous Memorial Scholarship for work emphasizing women and civil rights, 1998
                  Ken Bryant Grant for work with HIV-positive individuals, 1998
                  Prosser Prize for writing requirement: "Mandatory Minimum Sentences and Their Implications for
                  Female Drug Offenders," 1999
    *Activities:*    <u>Berkeley Women's Law Journal</u>, *Commentary Editor*, 1998-1999; *Article Editor* of "Community-
                  Based Alternative Sentencing for HIV-Positive Women in the Criminal Justice System," 1998-1999
                  East Bay Community Law Center, Homeless Outreach Volunteer, 1997-1998

**Duke University**, Durham, North Carolina
B.A., *magna cum laude,* Sociology and Comparative Area Studies, French Minor, December 1996
G.P.A.: 3.84

    *Honors:*    Phi Beta Kappa, Golden Key National Honor Society, Alpha Kappa Delta (Sociology Honor Society),
                  Dean's List with Distinction, Phi Eta Sigma (Freshman Honor Society)

**University of Paris**, France
Duke-in-Paris Program, Spring 1996
Lived with Parisian family and studied French Language, Culture, Literature, History, and Twentieth Century Art

## *Professional Experience*

**Children's Rights**, New York, New York                      January 2007 – present
    <u>*Staff Attorney.*</u> Litigated federal class action institutional reform lawsuits brought on behalf of abused and neglected
children, prepared for trial in the *Olivia Y. v. Barbour* case in Mississippi. Monitored the implementation of the
*Brian A. v. Bredesen* consent decree in Tennessee, negotiated modifications to that decree with Defendants and
analyzed reports from court monitors. Investigated jurisdictions across the nation for potential new cases, researched
child welfare data, contacted sources and performed legal research.

**The International Service for Human Rights,** New York, New York        September 2006 – January 2007
    <u>*Monitor.*</u> Monitored the human rights aspects of the 61st session of the United Nations General Assembly. Attended
meetings, panel discussions and informal consultations on reports, studies and draft resolutions. Compiled
comprehensive reports on issues surrounding the advancement of women, the protection of the rights of children,
migrants and human rights defenders.

**Keker & Van Nest, LLP**, San Francisco, California               March 2004 – July 2005
    <u>*Associate.*</u> Worked on trial team for breach of contract case in SF Superior Court. Drafted briefs, motions, pre-trial
and post-trial filings, complaints and memoranda after performing comprehensive research on various legal issues,
including intellectual property and criminal matters. Advised corporate clients on potential criminal investigations.
Handled all aspects of discovery, including meet and confers with opposing counsel. Interviewed fact witnesses,
collected documents and prepared chronologies.

**Centre For Human Rights and Democracy**, Eldoret, Kenya          July – September 2003
    <u>*Volunteer.*</u> Worked in conjunction with local human rights activists in cases involving female genital mutilation
(FGM), rape, domestic violence, police brutality and prisoner's rights. Interviewed clients and discussed possible
court actions. Helped organize and lead FGM outreach workshops in rural communities. Investigated and reported
on conditions in local prisons, police stations, courts, juvenile homes and hospitals. Observed lawyers who worked
with the Centre argue human rights cases in lower and appellate courts. Helped write various funding proposals.

**Cravath, Swaine & Moore**, New York, New York                              October 2000 – March 2003
*Associate.*  Worked closely with litigation partners during damages trial of failed savings and loan.  Conducted direct examination of expert during evidentiary hearing for Title VII pro bono case.  Prepared witnesses for trial and depositions.  Defended depositions before SEC.  Prepared direct examination and cross examination books, privilege logs and deposition outline binders.  Drafted briefs, motions, and memoranda after performing comprehensive research regarding securities, evidentiary issues and commercial contract disputes.  Drafted post-trial findings of fact and conclusions of law.  Interviewed fact witnesses, collected documents and reviewed documents.

**Steptoe & Johnson, LLP**, Washington, DC                                          Summer 1999
*Summer Associate. (received offer for associate position)*  Performed legal research and wrote memoranda for various attorneys in areas including electronic commerce, FCC procedures, energy matters, international human rights and habeas corpus petitions.   Second-chaired deposition of opposing side's expert witness in energy antitrust case.  Attended negotiations, moot court, seminars, and other clinical events.

**DC Prisoners' Legal Services Project,** Washington, DC                        Summer 1999
*Summer Law Clerk.*  Handled intake and responded to prisoners' mail and various requests.  Performed legal research and assisted in preparation for a class action lawsuit against a prison system.  Went to prisons, jails, and correctional treatment facilities to interview clients and investigate correctional officer-on-inmate assaults.

**San Francisco District Attorney, Domestic Violence Unit**, San Francisco, CA        Spring 1999
*Spring Law Clerk.*  Helped Assistant District Attorney with case strategy, legal research, motions, jury selection, jury instructions and arguments.  Reviewed and organized case files.  Prepared discovery materials and subpoenas.  Participated in counseling of battered women.  Attended domestic violence misdemeanor and felony trials.

**East Bay Community Law Center, HIV Unit,** Berkeley, CA                        Summer 1998
*Summer Law Clerk.*  Represented low-income, HIV-positive women.  Composed briefs for and represented clients at administrative law judge hearings.  Performed legal outreach at local hospitals and Oakland Social Services.  Handled intake and interviewed clients.  Advocated for government benefits through the application and appeals processes.  Prepared and filed marriage dissolution documents.  Drafted estate documents.

## *Bar Admissions*

New York; Eastern District of New York; Southern District of New York
California; Northern District of California

## *Additional Information*

Proficient in German and French
Traveled extensively in Asia, Africa, Europe, Middle East, Latin America
Proficient in Word, WordPerfect and Excel

## CORENE KENDRICK

*404 Park Ave. South 11th Floor ● New York, NY 10016 ● 212.683.2210 ● corenek@yahoo.com*

## EDUCATION

**STANFORD LAW SCHOOL, J.D., 2003**
- Keck Award for Public Service, 2003 (award to the graduating law student with most outstanding public service); Public Interest Fellowship 2002-03;  A. Calder Mackay Scholarship, 2001-03
- Symposium Editor, *Stanford Law Review*; Executive Board Member and Teacher, Streetlaw; Organizer, Law School Building Community Day and annual holiday toy drive for foster children in Santa Clara County.
  *CLINICS/EXTERNSHIPS*
  - **NATIONAL CENTER FOR YOUTH LAW**, Oakland, CA, Spring 2003:  Through the Stanford Civil Rights Clinic, worked on *David C. v. Leavitt* monitoring, on behalf of plaintiff children in the Utah foster care system.
  - **SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE, DOMESTIC VIOLENCE UNIT**, June-Dec 2002:  California Bar-certified legal intern, aided Assistant District Attorneys in Superior Court calendar management and second-chaired trials; researched and drafted motions; arraigned domestic violence defendants; met with police and victims on cases.
  - **SIERRA CLUB**, San Francisco, Summer 2001:  Assisted on Forest Service, energy, clean air cases.

**UNIVERSITY OF TEXAS AT AUSTIN, LBJ SCHOOL OF PUBLIC AFFAIRS, M.PUB.AFF., 1996**
- Thesis: *Ensuring Female Participation in Sustainable Development Programs in Mexico*
- Claudia Taylor "Lady Bird" Johnson Fellowship
- Coursework Concentration:  Economic Development, Women's Issues, U.S.-Latin American Relations

**GEORGE WASHINGTON UNIVERSITY, B.A. JOURNALISM (UNIVERSITY HONORS PROGRAM), 1994**
- Magna Cum Laude;  Invitation to Phi Beta Kappa;  National Merit Scholar (1989-90)
- Presidential Honors Full Scholarship; Washington Gridiron Society Journalism Scholarship
- Studied abroad Fall 1993 at Universidad Nebressensis de Madrid

## EXPERIENCE

**CHILDREN'S RIGHTS, NEW YORK, NY**
SKADDEN FELLOW STAFF ATTORNEY – SEPT. 2003 – AUG. 2005
- Skadden Fellowship project addresses the needs of children institutionalized by the child welfare system as component of class action institutional reform litigation suits brought on behalf of abused and neglected children.  Assignments include:
  - Ongoing litigation in Mississippi, *Olivia Y. v. Barbour*, Civ. Act. No. 3:04CV251LN (S.D. Miss., filed March 30, 2004). Work includes pre-filing research and travel across state to meet advocates and foster children, management of cases of individual named plaintiffs, legal and policy research, drafting due process and equal protection claims in complaint and in motions, review of named plaintiff case files in preparation for depositions of witnesses, defending depositions.
  - Monitoring of the implementation of the consent decree in Tennessee, *Brian A. v. Bredesen*, Civ. Act. No. 3-00-0445 (M.D. Tenn., filed May 10, 2000).  Work includes analyzing reports from court monitor, legal research and assistance in drafting contempt motion against the state and stipulation settling motion, reviewing state's proposed implementation plan, drafted successful opposition to individual's motion to intervene.
  - Investigating and researching jurisdictions across the nation targeted for litigation as part of the New Cases team. Extensive travel and meetings with children's attorneys, children and youth in foster care, and foster parents.

**PLANNED PARENTHOOD FEDERATION OF AMERICA, WASHINGTON, DC**
LOBBYIST – NOV. 1998-SEPT. 2000
- Met with Congressional staff and led Hill briefings on legislation on reproductive rights and choice.
- Researched, edited and wrote department's biweekly email update to affiliates, served as contact point between Planned Parenthood's 129 affiliates and Government Relations staff.
- Visited Planned Parenthood affiliates across the country to update staff, board members, donors and volunteers about state and federal legislative activity and Clinton Administration policies.
- Worked throughout Maine on the successful "No on One" 1999 campaign against a state ballot initiative that would outlaw abortion procedures, Oct.-Nov. 1999.
- Organized "Lobby Day" events for PPFA affiliate staff during annual Washington, D.C. conference.

**PRUDENTIAL SECURITIES WASHINGTON RESEARCH, ARLINGTON, VA**
ASSOCIATE ANALYST, SOCIAL INVESTMENT RESEARCH SERVICE – APRIL 1997-OCT. 1998
- Investigated and monitored companies' compliance with social policy parameters of institutional investor clients, ensuring investment choices were socially responsible as well as profitable.
- Licensed Securities Dealer, National Assoc. of Securities Dealers, Series 7 and 53.

**NATIONAL ASSOCIATION OF DEVELOPMENT ORGANIZATIONS, WASHINGTON, DC**
EDITOR, *ECONOMIC DEVELOPMENT DIGEST* – OCT. 1996-APRIL 1997
- Planned, wrote, edited, and desktop published monthly magazine with circulation of 10,000 covering economic development issues facing rural areas and small towns of America.

## PUBLICATIONS

- Case Comment:  *Atkins v. Virginia: A Nip and a Tuck or the Beginning of the End of Capital Punishment?*, LBJ JOURNAL OF PUBLIC AFFAIRS, May 2003
- Note: *The Illegality of Abortion in Mexico*, 39 STANFORD JOURNAL OF INTERNATIONAL LAW 125 (2003)
- With Margot Clarke and Shelley Wallace, *Sustainable Cities: Chattanooga and Portland, USA*, in The Road to Sustainable Development: A Guide for Nongovernmental Organizations, Antônio Rocha Magalhães & Jürgen Schmandt, eds., Austin: University of Texas Press, 1998
- With Suzanne Harvey, *China's Karma: Who Will Suffer the Consequences?*, CORP. FIN. REVIEW, Sept. 1997

## PRESENTATIONS AND TRAININGS

- "Emerging Issues in the Institutionalization of Children in Foster Care," with M. Freundlich and E. Pitchal, National Association of Counsel for Children (NACC) Annual Conference, Los Angeles (forthcoming August 2005).
- "*Roe v. Wade* at 30: The Future of Reproductive Rights in the United States," Stanford University, Stanford Students for Choice Celebration of *Roe* Events, Stanford, CA, January 2003.
- Moderator, "The Legal and Political Future of the Pro-Choice Movement," Stanford Law School 2002 Shaking the Foundations Progressive Lawyering Conference, Stanford, CA, November 2002.
- "Fighting for Reproductive Rights in an Anti-Choice Congress," Planned Parenthood of Hidalgo County, McAllen, TX, 3/2000.
- "Strategic Advice on How to Promote a Pro-Active Pro-Choice Agenda in Nebraska," Planned Parenthood of Lincoln Statewide Lobby Day, Lincoln, NE, February 2000.

## BAR MEMBERSHIPS

- California State Bar, Member #226642
- Admitted to practice in the Central District of California
  Admitted *pro hac vice* in the Southern District of Mississippi and Middle District of Tennessee.

## SKILLS, PAID INTERNSHIPS & CAMPAIGN EXPERIENCE

- Fluent in Spanish; extensive academic research work in Mexico and Spain
- Grantwriter, Austin Area Urban League, Summer 1996
- Program Analyst, U.S. Dept. of Commerce, Office of Sustainable Development, Summer 1995
- Editorial Assistant, *Kiplinger's California Letter*, Sept. 1992-June 1993 and Jan. 1994-July 1994
- Research Assistant, Foreign Commercial Services Library, U.S. Embassy, Madrid, Spain, Fall 1993
- Journalism Intern, Bureau of National Affairs, *Daily Environment Report*, Spring 1993
- Press Intern, U.S. House of Representatives, Office of Rep. Lamar Smith, Sept. 1991-May 1992

- Election Protection Volunteer, NAACP and People for the American Way, Philadelphia, PA, Oct. - Nov. 2004
- Texas Democratic Party Campaign Volunteer – Ann Richards for Governor 1994, Victor Morales for Senate 1996

**SUSAN LAMBIASE**
330 7th Avenue, 4th floor
New York, NY 10001
(212) 683-2210

<u>**EXPERIENCE:**</u>                              **Admitted:     PA, NY and NJ bars
                                                                EDPa, SDNY, 2d,
                                                                3d and 10th Cir. COA**

**CHILDREN'S RIGHTS**
**Associate Director** (January 1999 to present)
**Senior Staff Attorney** (July 1995- December 1998) (**Staff Attorney**, July 1994-June 1995)

Work with Executive Director in managing all aspects of legal department in non-profit child welfare advocacy organization.  Supervise and prosecute all stages of child welfare institutional reform federal class action litigation in Rhode Island, Michigan, New Jersey, Mississippi and Milwaukee, Wisconsin.  Successfully litigated and ended similar cases in New Mexico, New York City, Philadelphia and Kansas City, Mo.  Organize attorney hiring process and run attorney training program.  Extensive experience working with media.  Prepare budget projections, work with board.

**ANAPOL, SCHWARTZ, WEISS & SCHWARTZ,** Philadelphia, PA
**Associate** (July 1992-July 1994)

Solely responsible for medical malpractice, civil rights, products liability and other plaintiffs' personal injury and criminal defense litigation through trial.

**GINSBURG & ASSOCIATES,** Philadelphia, PA
**Associate** (April 1990-July 1992)

Personally responsible for medical malpractice, civil rights and other plaintiffs' personal injury litigation through trial.  Deposed at least 50 doctors, worked with medical and other experts, conceived all trial and appellate strategy, wrote all briefs.  Negotiated numerous six-figure settlements.

**KINGS COUNTY DISTRICT ATTORNEY,** Brooklyn, NY
**Assistant District Attorney** (August 1986-April 1990)

      **Homicide Bureau; Sex Crimes/Special Victims Bureau.**

      Prosecuted over 20 jury trials to verdict in homicide, sex crimes, domestic violence and other felony cases.  Presented over 100 cases to the Grand Jury.  Argued over 75 pre-trial hearings.

      **Supervisor, Child Abuse Unit**

Directed eight-person staff in pre-arrest child abuse investigations.  Lectured at hospitals and social services agencies.  Supervised attorneys on trial.

**NEW YORK STATE ATTORNEY GENERAL,** New York, NY
**Legal Aide,** Real Estate Financing Bureau (September 1984-June 1985)
**Legal Intern,** Environmental Protection Bureau (Summer 1984)

<u>**EDUCATION**</u>**:**

**BROOKLYN LAW SCHOOL,** Brooklyn, NY
Merit Scholar, J.D. 1986

> 1986 National Moot Court Team; 1st Place, Intramural Moot Court Competition; 1985 Moot Court Administrative Law Team; National Order of Barristers; Alexander Mehr Memorial Award; Moot Court Honor Society Award with Distinction; Legal Association of Women, co-chairperson 1983-85; NY Women's Bar Ass'n, student division 1983-86; National Lawyers Guild 1985-86.

**STATE UNIVERSITY OF NEW YORK AT STONY BROOK, NY**
B.A., Cum Laude, Political Science 1983

> Dean's List; Outstanding Undergraduate Achievement Award; New York Public Interest Research Group Board Member.

<u>**MISCELLANEOUS**</u>**:**
Guest Speaker, New York University, 2003
Panelist, Commissioners'  Roundtable Conference, Child Welfare League of America, Summer 1996
Managed Care Task Force, Legal Issues Subcommittee, Federation of Protestant Welfare Agencies,  Spring 1996.
Brooklyn Law School Student Mentor, 1995-96**.**
Nominee, Distinguished Alumnus Award, State University of New York at Stony Brook, 1996
Faculty Member, National Institute of Trial Advocacy (NITA), June 1994
Philadelphia Court of Common Pleas Arbitrator, 1992-1994.
Legalline Volunteer, Philadelphia Bar Association, 1993-1994.
NY Better Business Bureau Arbitrator, 1986.

<u>**PUBLICATIONS**</u>**:**

> *  "Block Grants and the End of Children's Rights", <u>Dissent</u>, Fall 1996 (Susan Lambiase and James B. Rule)
> > *  <u>New York Law Journal</u>, The Lawyer's Bookshelf (reviewing Edward Humes, <u>No Matter How Loud I Shout: A Year in the</u>

<u>Life of Juvenile Court</u>), May 3, 1996 (Susan
Lambiase and Marcia Robinson Lowry)

**SHIRIM NOTHENBERG**
47 Plaza Street # 4B * Brooklyn, NY 11217 * (718) 398-7326

**EDUCATION**

COLUMBIA UNIVERSITY SCHOOL OF LAW, New York, NY
        J.D. May 1997
        James Kent Scholar, 1996 (highest academic honor)
        Harlan Fiske Stone Scholar, 1995

UNIVERSITY OF CALIFORNIA AT BERKELEY, Berkeley, CA
        Bachelor of Arts, May 1991
        Dean's List, 1988, 1990, 1991
        Highest Honors in Social Sciences

**EXPERIENCE**

CHILDREN'S RIGHTS, INC., New York, NY                    Oct. 2005 – Present
                                                Oct. 1998 – June 2005
                                                  Fall 1996 – Spring 1997
Staff Attorney. Conduct legal research on variety of issues, including class certification, fee shifting, and relief from final judgment. Investigate jurisdictions for potential new cases, including analysis of child welfare data and interviews with sources. Draft motions, propound and respond to discovery demands, and defend depositions. Monitor and enforce consent decrees secured in class action litigation.

LEGAL AID SOCIETY, JUVENILE RIGHTS DIVISION, Brooklyn, NY        Summer 1996
Legal Intern. Drafted and argued a motion to dismiss a juvenile delinquency case in Family Court. Interviewed clients and performed legal research.

MORNINGSIDE HEIGHTS LEGAL SERVICES, New York, NY        Fall 1995 – Spring 1996
Legal Intern. Represented clients in foster care proceedings as part of clinical training. Conducted interviews. Drafted court documents. Appeared in administrative proceedings.

NEW YORK CITY BOARD OF EDUCATION, Brooklyn, NY        June 1995 – Dec. 1995
Legal Clerk. Investigated and drafted response to an allegation of an EEOC violation. Wrote legal memoranda on school policy issues including random drug testing and school prayer.

ADVOCATES FOR CHILDREN, Long Island City, NY        Sept. 1994 – Dec. 1994
Intern. Interviewed and counseled students and parents seeking to challenge school district decisions.

NATIONAL WOMEN'S POLITICAL CAUCUS, San Francisco, CA        Aug. 1993 – June 1994
Board member, Chairperson of Community Relations. In charge of introducing the Caucus' goal of electing women to local and state office to minority communities.

CAL. COALITION FOR BATTERED WOMEN IN PRISON, San Francisco, CA        Feb. 1992 – June 1994
Volunteer. Drafted clemency petitions for battered women in prison for killing their abusers. Awarded the Wiley M. Manual Award for Public Service by the State Bar of California.

HELLER, EHRMAN, WHITE & MCAULIFFE, San Francisco, CA        June 1991 – June 1994
Legal Assistant.

# JESSICA ELYSE POLANSKY

330 Seventh Avenue, 4th Floor, New York, NY 10001  Ph: (212) 683-2210   Email: jpolansky@childrensrights.org

---

## EDUCATION

**CORNELL LAW SCHOOL**, Ithaca, NY
Juris Doctor, *cum laude*, May 2005
> **Honors**:   Stanley E. Gould Prize for Public Interest Law
> *Cornell Journal of Law and Public Policy*, *General Editor*, authored note *Religion at the Altar and in the Courtroom: A Jewish Argument for Same-Sex Civil Marriage After* Lawrence
> Dean's List (4 semesters)
> Legal Information Institute, *liibulletin-ny, Editor*
> **Activities**: National Lawyers Guild, Cornell Chapter, *President*, 2003 - 2004
> Dean Search Committee, *Student Committee Member*
> Alternative Spring Break to Cuba, March 2003, and to Nicaragua (group leader), March 2005

**UNIVERSITY OF PENNSYLVANIA**, Philadelphia, PA
**Huntsman Program in International Studies and Business**
**The Wharton School & The College of Arts and Sciences**
Bachelor of Science in Economics, *cum laude*, Concentration: Decision Processes, May 1999
Bachelor of Arts, *cum laude*, Major: International Studies; Minor: Spanish, May 1999
> **Honors**: Benjamin Franklin Scholar; Joseph Wharton Scholar; Dean's List 1998-1999

---

## EXPERIENCE

**Children's Rights**, New York, NY                                      *September 2006 – Present*
> *Staff Attorney*: Investigate state- and county-run foster care systems and bring class-action lawsuits on behalf of children in care to obtain system-wide reforms.  Monitor defendants' compliance with consent decrees.

**The Honorable Jon Phipps McCalla**, Western District of Tennessee        *August 2005 – August 2006*
> *Law Clerk*: Researched legal issues and helped draft legal opinions in cases before Judge McCalla.

**The Center for Constitutional Rights**, New York, NY              *September 2004 – December 2004*
> *Legal Extern*: Participated in strategy meetings and researched and helped draft complaint filed with German federal prosecutor regarding war crimes in Iraq and Abu Ghraib prison. Conducted research on corporate liability theories and nominee for U.S. Attorney General. Edited pleadings in litigation.

**Heller Ehrman White & McAuliffe LLP**, New York, NY – *offer extended*      *May 2004 – August 2004*
> *Legal Intern*: Researched and wrote legal memoranda regarding challenge to the Solomon Amendment, litigation involving same-sex marriages, and disability accommodations. Revised article for publication about securities law. Interned with Mental Hygiene Legal Services at the Manhattan Psychiatric Center.

**Northern Ireland Human Rights Commission**, Belfast, United Kingdom        *June 2003 – August 2003*
> *Legal Intern*: Drafted reports assessing the merits of incoming legal claims. Researched judicial application of the Human Rights Act 1998 in Northern Ireland. Drafted summaries of inquest cases. Worked with focus groups regarding creating and implementing a Bill of Rights for Northern Ireland.

**Sponsors for Educational Opportunity**, New York, NY                      *August 1999 – June 2002*
> *Program Coordinator, Mentoring Department*: Recruited and managed mentors and developed curricula for afterschool academic-enrichment program for students of color. Developed new program initiatives and departmental policies. Supervised department intern. Certified Mentoring Supervisor. Supervised eleventh-grade students in production of award-winning educational video about teen pregnancy.

**AVODAH: The Jewish Service Corps**, New York, NY                      *August 1999 – August 2000*
> *Corps Member*: Lived communally. Worked full-time (see Sponsors for Educational Opportunity). Participated in seminars with policy-makers and activists, service projects, and Jewish text study.

---

## CIVIC EXPERIENCE, LANGUAGES, and HOBBIES

AVODAH Board of Directors; Proficient in Spanish; Knowledge of Hebrew; Tutor high school student

# MARGARET A. ROSS

150 JORALEMON STREET ♦ APARTMENT # 8H ♦ BROOKLYN, NY 11201
Home:  (718) 222-3652 ♦ Cellular:  (347) 262-5655 ♦ E-mail: mross3333@yahoo.com

## EDUCATION

| | |
|---|---|
| **Fordham University School of Law** | **New York, NY** |
| Juris Doctor | May 2002 |
| Honors:  Archibald R. Murray Public Service Award | May 2002 |

Fordham Intellectual Property, Media & Entertainment Law Journal
*Symposium Editor*                                                                2001 – 2002
Activities:  Fordham Law Women, Fordham Student Sponsored Fellowship
Admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York

| | |
|---|---|
| **New York University** | **New York, NY** |
| Bachelor of Science, Art Education | September 1997 |
| Honors:  Dean's List | |

## LEGAL EMPLOYMENT

| | |
|---|---|
| **Children's Rights, Inc.** | **New York, NY** |
| *Attorney* | June 2005 – Dec. 2005 |
| | Nov. 2004 – Feb. 2005 |
| *Paralegal/Legal Assistant* | Feb. 1998 – Aug. 1999 |

Work as an attorney at a public interest law firm focusing on child welfare litigation; represent abused and neglected Mississippi children in substantive due process claim against state in effort to reform child welfare system; worked on similar cases in New York and Georgia; perform legal research; draft motions and memoranda; engage in all facets of trial preparation, including fact gathering and developing strategy; as a paralegal, managed a staff of five interns; coordinated trial exhibits; wrote training manual for new employees; received excellent reviews each year.

| | |
|---|---|
| **Constantine & Partners** | **New York, NY** |
| *Attorney* | Sept. 2002 – Aug. 2004 |
| *Summer Associate/Law Clerk* | May 2001 – Sept. 2002 |

Worked on complex litigation and transactions, focusing on antitrust and contractual disputes for corporate clients including TV Guide Distribution, Inc., The News Corporation, Seton Company, and Elmhurst Dairy; assisted in all aspects of discovery, including defending depositions and document review; drafted pleadings, motions, and memoranda; negotiated a multi-contract deal for software development, cross-licensing of intellectual property, and provision of application services by a start-up online analyst ranking firm for a major financial institution; recognized for superior client relations, ability to handle a heavy caseload, writing skills, and ability to independently tackle complex legal and business issues for clients.

| | |
|---|---|
| **New York State Attorney General's Office** | **New York, NY** |
| **Civil Rights Bureau** | |
| *Legal Aide* | June 2000 – Dec. 2000 |

Provided legal assistance, including extensive research and writing for two racial discrimination cases; wrote memoranda analyzing viability of potential claims; conducted factual research; participated in case strategy meetings; noted for attention to detail and organizational skills.

**OTHER EMPLOYMENT**

**Netologic, Inc.**                                                          **New York, NY**
*Vice President*                                                             Dec. 2004 – present

Provide strategic business and sales/marketing advice to financial industry software company that custom designs web-based tools for buyside and sellside investment firms to track internal performance of research analysts; draft and negotiate contracts with clients and suppliers.

**Committee for Mark G. Peters for Kings County D.A.**                     **Brooklyn, NY**
*Deputy Campaign Manager*                                                   March 2005 – Aug. 2005
*Field Director*                                                           Aug. 2004 – March 2005

Assisted candidate for Kings County District Attorney in all aspects of September 2005 democratic primary race; worked closely with candidate and staff on media and field strategies, fundraising, public outreach, and coordinating volunteers; planned and hosted campaign events for fundraising and voter development; assisted in development of Web site and printed campaign literature

**ADDITIONAL EXPERIENCE, SKILLS, AND INTERESTS**

Planned and hosted *Global Intellectual Property Rights: Boundaries of Access and Enforcement* symposium at Fordham, which brought leaders in the areas of international patent, copyright, and trademark law together for discussions about access to AIDS drugs in Africa, cultural infringement of indigenous symbols, and enforcement of criminal provisions of the Digital Millennium Copyright Act on foreign citizens visiting the United States; planned and hosted panel discussion at Fordham entitled *Antitrust and Media Law*; member of the New York State Bar Association, Young Lawyers and Antitrust Chapters; practicing visual artist; avid Yankees fan.

PRIYAMVADA SINHA
510 2nd St., Apt. 5, Brooklyn, NY 10015
Priy_Sinha@hotmail.com  (718) 398-4922

EDUCATION

**NEW YORK UNIVERSITY SCHOOL OF LAW**, New York, New York
J.D. Degree, May 2003, *cum laude* (highest 25th percentile of graduating class)

| | |
|---|---|
| Honors: | Arthur Garfield Hays Civil Liberties Fellowship |
| | Teaching Assistant to University President John Sexton, *The Supreme Court and Religion* |
| | Robert B. McKay Prize, *convocation prize for excellence in the subject of Constitutional Law* |
| | Black, Latino, Asian Pacific American Law Alumni Association Public Service Scholarship |
| | *New York University Review of Law and Social Change*, Associate Editor |
| Note Topic: | *Police Use of Race in Suspect Descriptions: Constitutional Considerations*, accepted for publication by the *NYU Review of Law and Social Change* |
| Activities: | South Asian Law Students Association |

**YALE UNIVERSITY**, New Haven, Connecticut
B.A. in Women's and Gender Studies, with **Distinction in the Major**, May 1994

| | |
|---|---|
| Honors: | Association of Asian American Yale Alumni Community Service Scholarship |
| | Roberts C. Bates Summer Traveling Fellowship |
| Senior Thesis: | *Powers of Heterogeneity: Alternate Modes of Storytelling in Jessica Hagedorn's Dogeaters* |

EXPERIENCE

**CHILDREN'S RIGHTS, INC.,** New York, New York
*Attorney/Skadden Fellow*, September 2005-August 2007
Assisted in all aspects of litigating federal class action suits on behalf of children in foster care against state child welfare agencies. Drafted pretrial and posttrial motions, aided in preparing for trials, and gathered and analyzed factual data and discovery. Participated in litigation strategy and settlement discussions. Worked closely with expert in presenting report and testimony.

**THE HON. STEPHANIE K. SEYMOUR, U.S. COURT OF APPEALS FOR THE TENTH CIRCUIT**, Tulsa, Oklahoma
*Judicial Clerk*, September 2004-August 2005
Worked closely with the Judge in performing legal research and preparing initial drafts of judicial opinions on civil and criminal topics. Assisted in preparing for oral arguments. Edited work of other law clerks and staff attorneys.

**THE HON. RONALD L. ELLIS, U.S. MAGISTRATE JUDGE, S.D.N.Y.,** New York, New York
*Judicial Clerk*, September 2003-August 2004
Assisted in drafting judicial opinions on all aspects of litigation, including discovery, dispositive, and habeas matters. Aided the Judge with pretrial conferences, hearings, trials, and settlement conferences. Managed all phases of cases, with direct attorney contact. Supervised interns and edited their written work.

**BOIES, SCHILLER AND FLEXNER,** New York, New York
*Summer Associate*, May-June 2003
Assisted in drafting pre-trial motion and jury instructions. Researched, edited, and drafted sections of article for publication. Conducted research on intellectual property and breach of contract matters.

**THE CIVIL ACTION PROJECT, THE BRONX DEFENDERS,** Bronx, New York
*Arthur Garfield Hays Fellowship Intern*, February-May 2003
Civil legal services project serving clients and families involved in criminal proceedings. Assisted in investigations, research, motion practice, and developing theories of the case on civil and administrative issues.

**KOOB AND MAGOOLAGHAN,** New York, New York
*Arthur Garfield Hays Fellowship Intern*, September-December 2002
Private, public interest law firm with expertise in civil rights practice areas, including prisoners' rights. Researched First Amendment rights of prisoners to communicate with the press and other civilians.

**JUVENILE RIGHTS CLINIC-NYU SCHOOL OF LAW**, New York, New York
*Student Advocate*, 2002-2003

Served as defense counsel or second-chair for indigent juvenile clients charged with committing crimes in New York Family Court, through the **Juvenile Rights Division of the Legal Aid Society**. Conducted client interviews, arraignments, investigations, pretrial hearings, conferences, and trials. Drafted motions and developed theories of the case. Participated in seminars on juvenile law and litigation skills.

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND**, New York, New York
*Legal Intern*, July-August 2002
Conducted intensive legal research, analysis, and writing for employment discrimination, education rights, and other class action matters in federal courts. Drafted portion of motion for voting rights case in the Eleventh Circuit.

**MORRISON AND FOERSTER**, New York, New York
*Summer Associate*, June-July 2002
Researched and drafted legal memoranda regarding discovery matters for securities fraud case, international project finance trends, licensing agreement transactions, out-of-state attorney licensing issues, and evidentiary issues for *pro bono* ex-offender voting rights case. Attended litigation and corporate drafting workshops.

**CAPITAL DEFENDER CLINIC-NYU SCHOOL OF LAW**, New York, New York
*Student Advocate*, 2001-2002
Intensive, yearlong clinical course on capital punishment jurisprudence and practice. Researched and wrote for capital defense litigation performed by the **NAACP Legal Defense and Educational Fund**. Cases included federal and state court impact litigation on death penalty, habeas corpus, and criminal justice reform issues. Participated in advanced seminars and trial simulations. Traveled to conduct fieldwork for Tulia, Texas cases.

**AMERICAN CIVIL LIBERTIES UNION**, New York, New York
*Legal Intern, National Legal Department*, Summer 2001
Performed extensive research and analysis of First Amendment, race and poverty, and other civil liberties issues for impact litigation projects. Wrote legal memoranda addressing indigent criminal defense, the Establishment Clause, and other criminal and civil matters.

**MTV NEWS AND DOCUMENTARIES**, New York, New York
*Segment Producer*, 1995-1997, 1998-2000
Wrote, produced, and directed segments of news documentaries. Responsible for all organizational facets of production, from managing budgets and calendars to supervising staff. Handled multiple projects and responsibilities. Worked on over forty programs, including:
- *True Life: I Am Driving While Black*. National analysis of the alleged practice of racial profiling of motorists by the police. **Winner of the 2000 NAACP Image Award for Outstanding News Special.**
- *True Life: Matthew's Murder Update*. Examination of legal, legislative, and cultural developments in the year since Matthew Shepard's anti-gay murder.
- *Fight For Your Rights: Scared Straight! '99*. MTV's sequel to the Academy Award-winning 1978 documentary *Scared Straight!* Inmates of a maximum-security prison confront juvenile offenders about the realities of incarceration.

All of the above were part of *Fight For Your Rights: Take a Stand Against Violence*, MTV's campaign to reduce violence among young people, which won the **1999 Governor's Emmy Award** for innovative and socially conscious programming.

**MTV FILMS AND PARAMOUNT PICTURES**, New York, New York
*Associate Producer*, 1997-1998
Assisted in development of feature film documentary about life of 1990s music star. Wrote 300-page biographical timeline, conducted exhaustive international research, and developed extensive archive of film and audio recordings and documents. Coordinated location shoots and located supporting characters.

**GAY AND LESBIAN ALLIANCE AGAINST DEFAMATION**, New York, New York
*Administrative and Finance Assistant*, 1994-1995
Assisted in administration and financial management of national headquarters of non-profit organization that monitors media coverage of gay and lesbian issues. Hired as the **1994 Craig J. Davidson/Michael G. Valentini Scholarship Summer Intern**, and promoted to full-time staff position.

## ERIC E. THOMPSON

**EDUCATION**

**Harvard College**, A.B. 1987, *Cum Laude* (Social Studies)
Certificate in Latin American Studies; John F. Crehore Memorial Scholar;
Harvard College Scholarship; Varsity Wrestling.

**Northeastern University School of Law**, J.D. 1993
West Publishing Company Outstanding Scholastic Achievement Award, 1993;
Head Teaching Assistant, Legal Research and Writing (1992-1993);
Jerome Prince National Evidence Competition, 1992 (Second Best Brief);
Legal clerkships:
Alston, Hunt, Floyd & Ing, Honolulu, HI
Committee for Public Counsel Services, Boston, MA
Hale & Dorr, Boston, MA
U.S. District Court for the District of Massachusetts, Boston, MA
National Immigration Project of the National Lawyers' Guild, Boston, MA

**JUDICIAL CLERKSHIP**

Hon. William G. Young, U. S. District Court for the District of Massachusetts (1993-94)

**PROFESSIONAL EXPERIENCE**

Senior Staff Attorney, **Children's Rights**, N.Y.C.  (2001-present) (staff atty. 1998-2001)
Plaintiffs' counsel in federal class-action institutional reform litigation
over municipal and state child welfare systems on behalf of foster
children.  Responsible for investigating and drafting class action
complaints, briefing and arguing class certification motions, preliminary
injunction motions, discovery motions, dispositive motions, and fee
motions, taking and defending depositions, securing and working with
expert witnesses, prosecuting and defending appeals, and negotiating
settlements.  Lead counsel on Charlie & Nadine H. v. Whitman, 83 F.
Supp.2d 476 (D.N.J. 2000) (class of 9000+ New Jersey foster children),
and Jeanine B. v. McCallum, 2001 WL 748062 (E.D. Wis. June 19, 2001)
(class of 6000+ Milwaukee foster children).

Assistant Regional Counsel, **Massachusetts Department of Social Services** (1994-98)
Petitioner's trial counsel prosecuting child protective custody and termination of
parental rights petitions in the superior, probate and juvenile courts.  Over 1,500
court appearances, including emergency evidentiary hearings, bench trials, and
pre- and post-trial motion hearings.  Revised legal pleadings manual for state-
wide use.

**OTHER HONORS/PUBLICATIONS/PROFESSIONAL EXPERIENCES**

- Harvard Law School 2002-2003 Wasserstein Public Interest Fellow;
- "The Adoptions and Safe Families Act: A New Private Right of Action for Children in Foster Care Pursuant to Section 1983," 6 U.C. DAVIS J. JUV. L. & POL'Y 124 (2002);
- Testimony before the United States Senate Appropriations Subcommittee on the District of Columbia, March 15, 2001, "Termination of the LaShawn Receivership and the Status of the D.C. Child and Family Services Agency;"
- Numerous appearances in local and national news media, including Court TV, the O'Reilly Factor, CNNfn, network television, radio, and print.

**COMMUNITY SERVICE/SKILLS**

Board of Directors, Earthen Vessels, Inc., Boston, MA (summer camp and school year tutoring program serving inner-city youth); Member, American Society of Composers, Authors and Publishers (ASCAP); fluent French & Spanish.

**BAR MEMBERSHIPS**

Commonwealth of Massachusetts; United States District Courts for the District of Massachusetts and the Eastern District of Wisconsin; United States Courts of Appeals for the First Circuit and the D.C. Circuit.

ATTACHMENT B

**Olivia Y. v. Barbour**
**Children's Rights Fees and Expenses**
**1/1/02 - 1/4/08**

**CR Fees 1/1/02 - 11/30/07**

| | |
|---|---|
| Regular Fees | $4,115,065.34 |
| Travel Fees | $207,250.48 |
| | |
| All Fees 1/1/02 - 11/30/07 | $4,322,315.82 |
| 15% Discount | $648,347.37 |
| | |
| Total Fees 1/1/02 - 11/30/07 | $3,673,968.45 |

**CR Fees 12/1/07-1/4/08 - ADDENDUM**

| | |
|---|---|
| Regular Fees | $42,433.88 |
| Travel Fees | $4,364.56 |
| | |
| All Fees 12/1/07 - 1/4/08 | $46,798.44 |
| 15% Discount | $7,019.77 |
| | |
| Total Fees 12/1/07 - 1/4/08 | $39,778.67 |

**CR Expenses 1/1/02 - 11/15/07**

| | |
|---|---|
| Compensable Expenses | $300,634.11 |
| 15% Discount | $45,095.12 |
| | |
| Total Expenses 1/1/02 - 11/15/07 | $255,538.99 |

**CR Expenses 11/16/07 - 1/4/08 - ADDENDUM**

| | |
|---|---|
| Compensable Expenses | $5,207.38 |
| | |
| Total Expenses 11/16/07 - 1/4/08 | $5,207.38 |

| | |
|---|---|
| Total Children's Rights Fees and Expenses | $3,974,493.49 |

**Olivia Y. v. Barbour**

**Children's Rights - Regular Hours**

**(Travel hours not included)**

**1/1/02 - 11/30/07**

| Attorney | Year of JD | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| Sara Bartosz | 1986 | 0 | 0 | 0 | 0 | 11 | 17.83 | 28.83 | 270.00 | $7,784.10 |
| Tara Crean | 1997 | 0 | 0 | 0 | 678.66 | 1181.06 | 0 | 1859.72 | 270.00 | $502,124.40 |
| Jeremiah Frei-Pearson | 2003 | 0 | 0 | 0 | 0 | 0 | 10.95 | 10.95 | 189.00 | $2,069.55 |
| Elissa Gelber | 2001 | 0 | 0 | 0 | 0 | 66.76 | 1.42 | 68.18 | 189.00 | $12,886.02 |
| Yasmin Grewal-Kok | 2001 | 0 | 0 | 0 | 0 | 0 | 245.3 | 245.3 | 189.00 | $46,361.70 |
| Corene Kendrick | 2003 | 0 | 168.78 | 801.22 | 519.06 | 0 | 0 | 1489.06 | 189.00 | $281,432.34 |
| Susan Lambiase | 1986 | 0 | 34.38 | 74.22 | 60.15 | 129.93 | 38.43 | 337.11 | 270.00 | $91,019.70 |
| Marcia Robinson Lowry | 1969 | 16.49 | 13.74 | 111.3 | 88.87 | 172.01 | 145.14 | 547.55 | 303.75 | $166,318.31 |
| Shirim Nothenberg | 1997 | 38.72 | 444.73 | 759.77 | 206.66 | 835.95 | 640.93 | 2926.76 | 270.00 | $790,225.20 |
| Jessica Polansky | 2005 | 0 | 0 | 0 | 0 | 0 | 55.79 | 55.79 | 189.00 | $10,544.31 |
| Margaret Ross | 2002 | 0 | 0 | 0 | 465.7 | 0 | 0 | 465.7 | 189.00 | $88,017.30 |
| Priy Sinha | 2003 | 0 | 0 | 0 | 112.18 | 608.84 | 658.29 | 1379.31 | 189.00 | $260,689.59 |
| Eric Thompson | 1993 | 0.93 | 71.45 | 539.25 | 1120.68 | 1184.22 | 790.67 | 3707.2 | 270.00 | $1,000,944.00 |
| | | | | | | | | **Total Attorney Fees** | | **$3,260,416.52** |

| | | **2002** | **2003** | **2004** | **2005** | **2006** | **2007** | **Total Hours** | **Hourly Rate** | **Total Paralegal Fees** |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total Paralegal Hours:** | | 7.3 | 180.86 | 528.29 | 1522.14 | 3002.55 | 1437.25 | 6678.39 | 108.00 | $721,266.12 |

| | | **2002** | **2003** | **2004** | **2005** | **2006** | **2007** | **Total Hours** | **Hourly Rate** | **Total Law Student Intern Fees** |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total Law Student Intern Hours:** | | 117.31 | 71.13 | 86.24 | 514.61 | 139.17 | 59.56 | 988.02 | 135.00 | $133,382.70 |

**Paralegals:**

| | |
|---|---|
| Mae Ackerman-Brimberg | Katie Linehan |
| Holly Beck | Erika London |
| Aliza Cover | Colin Reardon |
| Julian Darwall | Caroline Rothert |
| Nora Guyer | Jessica Wheeler |
| Greg Katz | Elizabeth Wilder |
| Talia Kraemer | Anita Wong |

**Law Student Interns:**

| | | |
|---|---|---|
| Randy Aussenberg | Katie Hill | Jessica Savage |
| Jeff Blank | Sara Hudson-Plush | Adira Siman |
| Ann Ditsch | Veronica Joice | Laura Townsend |
| Julie Furst | Hillary Leland | Samantha Trepel |
| Laura Ginsburg | Sarah Mehlman | Melanie Wachtel |
| Kathryn Grzencz | Ryan Nier | Emily Wallace |
| Jessica Heldman | Sandy Rosin | |

**Olivia Y. v. Barbour**

**Children's Rights - Travel Hours**
**1/1/02 - 11/30/07**

| Attorney | Year of JD | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| Tara Crean | 1997 | 0 | 0 | 0 | 21.17 | 23.5 | 0 | 44.67 | 135.00 | $6,030.45 |
| Yasmin Grewal-Kok | 2001 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 94.50 | $94.50 |
| Corene Kendrick | 2003 | 0 | 16.55 | 131.29 | 63.08 | 0 | 0 | 210.92 | 94.50 | $19,931.94 |
| Susan Lambiase | 1986 | 0 | 0.67 | 15 | 0 | 24.5 | 1.08 | 41.25 | 135.00 | $5,568.75 |
| Marcia Robinson Lowry | 1969 | 8.75 | 0.75 | 59.25 | 8 | 91.58 | 100.58 | 268.91 | 151.88 | $40,840.71 |
| Shirim Nothenberg | 1997 | 0 | 41.9 | 205.5 | 19.34 | 47.09 | 97 | 410.83 | 135.00 | $55,462.05 |
| Priy Sinha | 2003 | 0 | 0 | 0 | 0 | 0.75 | 19.92 | 20.67 | 94.50 | $1,953.32 |
| Eric Thompson | 1993 | 0 | 0 | 166.58 | 90.12 | 113.71 | 175.86 | 546.27 | 135.00 | $73,746.45 |
| | | | | | | | | Total Attorney Fees: | | $203,628.16 |

| Paralegal | | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Total Hours | Hourly Rate | Total Paralegal Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 0 | 28 | 0 | 0 | 0 | 39.08 | 67.08 | 54.00 | $3,622.32 |

**Olivia Y. v. Barbour**

**Children Right's**
**12/1/07 - 1/4/08 - ADDENDUM**

**Children's Rights Regular Hours (Travel Not Included):**

| Attorney | Year of JD | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Marcia Robinson Lowry | 1969 | 14.24 | 361.25 | $5,144.20 |
| Shirim Nothenberg | 1997 | 56.55 | 247.90 | $14,018.75 |
| Jessica Polansky | 2005 | 46.1 | 180.00 | $8,298.00 |
| Eric Thompson | 1993 | 27.31 | 290.00 | $7,919.90 |
| | | | Total Attorney Fees | $35,380.85 |

| | Total Hours | Hourly Rate | Total Paralegal Fees |
|---|---|---|---|
| Total Paralegal Hours: | 68.81 | 102.50 | $7,053.03 |

**Paralegals:**

Mae Ackerman-Brimberg

Katie Linehan

Talia Kraemer

Aaron Sussman

**Children's Rights Travel Hours:**

| Attorney | Year of JD | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Marcia Robinson Lowry | 1969 | 14.33 | 180.63 | $2,588.36 |
| Shirim Nothenberg | 1997 | 14.33 | 123.95 | $1,776.20 |
| | | | Total Attorney Fees | $4,364.56 |

**Olivia Y. v. Barbour**

**Children's Rights**
**Expenses 1/1/02 - 11/15/07**

| CATEGORY | SUB-CATEGORY | TOTAL |
|---|---|---|
| **Court** | | |
| | **Deposition Transcripts** | **$25,568.48** |
| | **General** | **$10.00** |
| | **Total Court** | **$25,578.48** |
| **Expert Depositions** | | |
| | **Fees** | **$28,117.00** |
| | **Travel** | **$1,626.42** |
| | **Total Expert Depositions** | **$29,743.42** |
| **Computer** | | |
| | **General** | **$48.35** |
| | **Total Computer** | **$48.35** |
| **Fees** | | |
| | **Legal and Filing Fees** | **$240.00** |
| | **Total Fees** | **$240.00** |
| **Legal/Research** | | |
| | **WestLaw** | **$191.77** |
| | **Publications/Subscriptions** | **$55.99** |
| | **Other** | **$41.21** |
| | **Total Legal/Research** | **$288.97** |

**Office Expenses**

| | | |
|---|---|---|
| Copies | | $61,577.26 |
| Delivery | | $13,649.96 |
| Fax | | $76.65 |
| Meeting Expenses | | $1,092.83 |
| Phone | | $3,655.13 |
| Postage | | $9.40 |
| Refreshments | | $8,090.29 |
| **Total Office Expenses** | | **$88,151.52** |

**Printing and Design**

| | | |
|---|---|---|
| General | | $40.00 |
| **Total Printing and Design** | | **$40.00** |

**Travel**

| | | |
|---|---|---|
| Hotel | | $37,010.59 |
| Meals | | $7,322.41 |
| Plane-Amtrak | | $88,481.56 |
| Public Transportation | | $23,357.54 |
| Transportation Fees | | $371.27 |
| **Total Travel** | | **$156,543.37** |

| | |
|---|---|
| **TOTAL EXPENSES** | **$300,634.11** |

**Olivia Y. v. Barbour**

**Children's Rights**
**Expenses 11/16/07 - 1/4/08 - ADDENDUM**

| CATEGORY | SUB-CATEGORY | TOTAL |
|---|---|---|
| **Office Expenses** | | |
| | Copies | $164.70 |
| | Delivery | $326.46 |
| | Meeting Expenses | $48.24 |
| | Phone | $148.32 |
| | **Total Office Expenses** | **$687.72** |
| **Travel** | | |
| | Hotel | $610.85 |
| | Meals | $308.69 |
| | Plane-Amtrak | $2,920.40 |
| | Public Transportation | $645.75 |
| | Transportation Fees | $33.97 |
| | **Total Travel** | **$4,519.66** |
| **TOTAL EXPENSES** | | **$5,207.38** |