IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                                          PLAINTIFFS

v.                                                                          CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, *et al.*              DEFENDANTS

**THE COURT MONITOR'S PRELIMINARY STATUS REPORT**

The Court Monitor appointed in the above-captioned matter submits the following preliminary status report to the Court. A draft version of this report was provided to the parties for comment. The Monitor has considered the parties' comments, and to the extent appropriate, addressed them in this revised report.

**I. BACKGROUND**

The Mississippi Settlement Agreement and Reform Plan ("Settlement Agreement"), approved by this Court on January 4, 2008, requires the Monitor to report on Defendants' compliance in implementing its terms and achieving its prescribed outcomes on a periodic basis, commencing nine months following the Court's approval of the Settlement Agreement, unless the parties and the Monitor agree otherwise.[1] The parties and the Monitor have agreed that the Monitor's first substantive report addressing the Defendants' compliance in implementing first

---

[1] Mississippi Settlement Agreement and Reform Plan [hereinafter Settlement Agreement], approved January 4, 2008, § VI.B. Following the issuance of the Monitor's first report, the Settlement Agreement contemplates that the Monitor's reports will be issued at six-month intervals. *Id.*

year benchmarks and timelines will be filed during January 2009. This preliminary update summarizes monitoring activities and the status of the remedial process that has been undertaken in this case.

## II. PRELIMINARY UPDATE

The following summary addresses monitoring activities and recent progress toward meeting first-year requirements. It is not intended to serve as a compliance report. Because a detailed report on Defendants' compliance will not be filed until January 2009, this report is intended as an interim update on the general status of the remedial process.

### A. Monitoring Activities

Shortly after this Court approved the Settlement Agreement, the Monitor initiated an assessment which has included a review of the record and other documents relevant to Defendants' progress as well as interviews with counsel for both parties, representatives from the Governor's Office and from the Office of the Attorney General, and senior managers, supervisors and line staff employed at either the Mississippi Department of Human Services ("MDHS") and/or its Division of Family and Children Services ("DFCS"). The Monitor also has met with representatives from the Council for Accreditation ("COA")[2] – an organization from which, as explained more fully below, Defendants are required to obtain accreditation. In addition, the Monitor has interviewed other stakeholders in the child welfare system, including service providers; foster and adoptive parents; administrators and faculty from various university social work programs; child advocates; and youth court judges. The Monitor has conducted site

---

[2] COA is an independent, not-for-profit, child and family service accrediting organization. COA also accredits other types of human services programs such as behavioral health programs.

visits at a series of DFCS offices, including county offices in Hinds, Hancock, Harrison, Forrest, and East Bolivar as well as offices located in Tunica, Grenada, Greenville and Tupelo.

The Monitor routinely reviews and assesses data relevant to first-year requirements, including data generated by the Defendants such as policies, case records, and management reports. In addition, the Monitor has continued to confer with internal and external child welfare system stakeholders. Defendants have provided the Monitor with furnished and equipped office space in the MDHS State Office, and the Monitor expects to hire staff to support the operations of the office in the near term. The Defendants have been responsive to the Monitor's inquiries and concerns and have cooperated with the Monitor's requests for information.

The Monitor confers regularly with the parties and their counsel as well as with COA representatives. Parties' meetings, which serve as a forum for reporting, information-sharing and problem-solving, generally are convened at two-month intervals and include COA representatives. Currently, the Monitor is working with the parties on an assessment of Defendants' compliance with the Settlement Agreement's first-year requirements.[3] The results of this assessment will be used to inform the parties' negotiations regarding the second-year implementation plan. Negotiation of the second-year plan is scheduled to begin in early November 2008. As noted above, the Monitor expects to file a comprehensive report on Defendants' compliance with the first-year requirements during January 2009.

B.  Recent Progress

The Defendants have been working to implement the Settlement Agreement and their progress will be addressed in detail in the Monitor's forthcoming compliance report. Significantly, among other accomplishments, the Defendants have obtained a critically-needed

---

[3] First-year requirements are addressed in both the text of the Settlement Agreement and the first-year implementation plan which is included in the Appendix to the Settlement Agreement and incorporated therein. *Id.* § I.B.

increase in the DFCS FY '09 budget, initiated several required assessments, and made progress toward meeting the first in an increasingly more challenging series of COA accreditation standards. However, due to a substantial delay in satisfying hiring requirements for a pivotal position, the remedial process got off to a much slower than anticipated start. As explained below, recently this hiring requirement was satisfied and there is now new leadership at MDHS with substantial public management experience and impressive child welfare credentials.

There have been critical shortcomings in DFCS' performance which Defendants have begun to recognize and are taking steps to address. For example, in the wake of comments from the Monitor and Plaintiffs' counsel regarding substantial inadequacies in the documents that the Defendants submitted as evidence of progress toward meeting first-year requirements, the new leadership at MDHS acknowledged the deficiencies, withdrew the submission, and is taking concrete steps to address the reasons for these limitations in Defendants' performance. This constitutes a very encouraging sign that the pace of progress toward achieving the Settlement Agreement's first-year outcomes will accelerate and shortcomings in performance will be remedied.

The first-year requirements are intended to build the infrastructure necessary to achieve and sustain required outcomes and to address practices that are likely to have an immediate impact on child safety. Like other requirements in the Settlement Agreement, first-year requirements have staggered timelines which take into account the need to build a foundation to support the reform process by objectively assessing key agency functions; hiring and maintaining qualified leadership for DFCS; and deploying a team of capable managers to draw on the assessments in order to develop, and in certain instances begin to implement, plans to guide progress toward the Settlement Agreement's prescribed outcomes.

The COA accreditation standards that the Defendants are required to meet during the first year reflect this foundation-building approach.[4] Pursuant to the Settlement Agreement, Defendants are required to achieve accreditation within five years.[5] As contemplated by the Settlement Agreement, the Defendants engaged COA in December 2007 to initiate the accreditation process. Since that time, COA has trained DFCS managers on the accreditation process and on performance quality improvement. In addition, a COA consultant has provided and will continue to provide DFCS with ongoing technical assistance related to the accreditation process. During August 2008, COA completed the initial phases of an accreditation readiness assessment. Currently, the Defendants are considering the recommendations COA has outlined as a result of its assessment. The next stage of the COA accreditation readiness assessment is scheduled to begin during November 2008. Defendants have committed significant staff time and other resources to the accreditation effort and have been working with COA to satisfy the preliminary accreditation readiness milestones.

A threshold element of initial foundation-building is embodied in the Settlement Agreement's requirements concerning the hiring and qualifications of the DFCS director. The Settlement Agreement provides that within 90 days of the Court's approval, Defendants are required to hire and maintain a DFCS director with specific qualifications, including an advanced degree in a related field, a minimum of five years of related experience, and specialized administrative and management experience and competencies.[6] By the end of the first year, the new DFCS director is required to assemble a capable management team.[7]

---

[4] *Id.* App. A. § III.
[5] *Id.* § IV.
[6] *Id.* § II.A.1.a. and b.
[7] *Id.* App. A. § I.1.

Although Defendants announced they had hired the new DFCS director on January 22, 2008, there was a delay in satisfying the requirements related to the position. Plaintiffs' counsel objected to the appointment on the grounds that the new DFCS director did not meet the qualification standards prescribed by the Settlement Agreement. Subsequently, Defendants created a new position at MDHS for a deputy administrator who would be responsible for managing DFCS. The position was posted during the first half of March 2008. The posting included minimum qualification requirements that generally exceed the Settlement Agreement's requirements for the DFCS director.

On July 1, 2008, when Don Thompson became employed as the new Administrator of MDHS, he made the hiring for the MDHS deputy administrator position a priority. By mid-August, Mr. Thompson appointed Lori L. Woodruff as the MDHS Deputy Administrator for Family and Children's Services over DFCS. Ms. Woodruff, an LMSW with both M.S.W. and M.Ed. degrees, assumed the Deputy Administrator position on September 2, 2008. Ms. Woodruff is a highly regarded child welfare expert with over two decades of relevant experience. Because the Deputy Administrator is responsible for the management and oversight of DFCS, and because Ms. Woodruff's qualifications exceed the Settlement Agreement's qualification standards for the DFCS director position, both Plaintiffs' counsel and the Monitor consider Ms.Woodruff's appointment to satisfy the spirit of the Settlement's Agreement's qualification requirements for the DFCS director position.

In addition to Ms. Woodruff's appointment, Defendants have hired Robert Michael "Mike" Gallarno to serve as the DFCS Director of Performance and Quality Improvement. Mr. Gallarno, who holds an M.S.W. degree, is an LCSW with substantial public management experience. Mr. Gallarno assumed his position at DFCS on September 16, 2008. The strong

support for the Settlement Agreement that has been demonstrated by Mr. Thompson, combined with the employment of Ms. Woodruff and Mr. Gallarno, indicate that certain key foundation elements are now in place.  As a result, it appears the Defendants are poised to make measureable progress notwithstanding the substantial challenges that must be overcome in order to achieve the Settlement Agreement's required outcomes.

### III.     CONCLUSION

The Monitor would be pleased to answer any questions the Court may have regarding these matters and looks forward to reporting on Defendants' progress in her forthcoming compliance report.

Respectfully submitted,

 /s/   Grace M. Lopes
Grace M. Lopes, Court Monitor
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C.  20009
(202) 232-8311

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Court Monitor's Preliminary Status Report was served by electronic mail and first-class mail, postage prepaid, on the following counsel of record in the above-captioned matter on the 21st day of October 2008:

Dewitt L.  ("Rusty") Fortenberry Jr., Esq.
Kenya Key Rachal, Esq.
Gretchen L. Zmitrovich, Esq.
Ashley Tullos Young, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
28 I-55 North
Meadowbrook Office Park
Jackson, MS 39211

Harold E. Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, MS 39201

W. Wayne Drinkwater, Jr., Esq.
BRADLEY ARANT ROSE & WHITE LLP
188 East Capital Street, Suite 450
Jackson, Mississippi  39201

Stephen H. Leech, Esq.
850 East River Place, Suite 300
Jackson, Mississippi  39202

Marcia Robinson Lowry, Esq.
Eric E. Thompson
Shirim Nothenberg
CHILDREN'S RIGHTS
330 Seventh Avenue
New York, New York 10001

John Lang, Esq.
Christian Carbone
John Piskora
LOEB & LOEB LLP
345 Park Ave.
New York, New York 10154

    /s/   Grace M. Lopes_____
    Grace M. Lopes