**Ex. 1A**

# State Level Citizens Review Board
## DFCS Five-Year Plan Review and Recommendations
### June 14, 2002

## Introduction

The following represents the best effort of the State Level Citizens Review Board to comment on the progress of DFCS in executing its five-year plan over the last 12-month period, based on reports submitted the Board by DFCS staff members.

*It must be stated emphatically at the outset, however, that the Board is gravely concerned about the current and immediate future capacity of DFCS to execute its basic mission, let alone 'progress.' Both internal and media reports indicate that a crisis of immense scope threatens to engulf the agency. Severe funding and staffing shortages will undo and indeed rapidly reverse whatever gains have been achieved. Worse, damage to vulnerable children and families is predictable and unavoidable. The Board therefore calls upon the state's political leadership to address without delay the financial, managerial and political obstacles to resolving the current crisis.*

This overarching concern stated, three key assumptions shape this report and its closing recommendations:

1. First, the Board's perspective is that of the "concerned citizen," and not that of expert critic. The Board wishes to neither challenge the professional expertise of DFCS as it goes about its work nor question the accuracy of the data used in its reporting on plan implementation.

2. Second, the Board's proper focus is on the outcomes specified in the plan, rather than the plethora of activities identified by the Division as important to achieving outcomes. Activity *per se* is of little value unless it contributes to a desired result.

3. Third, the most important outcomes are client outcomes. Client outcomes constitute the leading edge of the plan, according to the plan's logical structure, and therefore bear the greatest evaluative weight. System outcomes should be evaluated as well, but their value derives primarily from their contribution to client benefit.

Our format here follows the structure of the plan itself, as we review each major component, Safety, Permanency, and Well-Being, in turn. In each section we state each client outcome and comment on its achievement, followed by a brief comment on each of the related system outcomes. Client outcomes and Board comments are "boxed" for easy identification by the reader.

**Ex. 1B**

# Mississippi Department of Human Services

## Division of Family and Children's Services

## Child and Family Service Review Statewide Self Assessment



December, 2003

P 001930

   o  Intensive Training
   o  Provider of SWUs for approved training sessions

- **Pre-service and in-service training offered:**

The DFCS Training Unit provides Intensive Training and On-the-Job training to new staff. Additional workshops are offered as available within the community or as funding is available. A review of recent training is provided below.

| Pre-Service and In-Service Training for 2002 | | | | | |
|---|---|---|---|---|---|
| Date | Name of Workshop | Subject | Presenter | # of attendees | # of SWUs given |
| 1) Feb. 9-12, 2002 2) Feb. 25-Mar. 1, 2002 3) Sept. 9-13, 2002 4) Sept 23-27, 2002 | 4 weeks of Intensive Training | Intake, Investigation Assessment, Placement, MACWIS training to DFCS newly hired social workers | DFCS Trainer-Lora Wright, JJ Harris, Tina Stokes | 1) 15 2)17 3)13 4)13 | 4.0 |
| Feb. 14, 2002 | Working with Difficult People | | MDHS Patti Hardacre | 17 | .72 |
| Feb. 26-27 | P.A.T.H. Training (Foster Parent Curriculum | Foster parent training curriculum presented to the foster home licensure specialists, and other staff who license foster parents | Tim Hykla, Trainer/Consultant, Spaulding for Children | 37 | 1.52 |
| Apr. 2, 2002 | Child Abuse Investigations- Putting all of the pieces together | Child Abuse Investigations | DR. Louise Davis, Child and Family Specialist, Mississippi State University Extension Services, Detective William Durr, Starkville Mississippi Police Department | 49 | .37 |
| Apr. 6, 2002 | Bringing up the Best in Your child | Appropriate Discipline Techniques | John Rosemond | 9 | 36 |
| May 13, 2002 | Family Preservation Intensive Training | Family Preservation | Carolyn Cotton, Misty Evans | 17 | .96 |
| May 23, 2002 | School Law and School Safety | School Law and School Safety | Jeffory Klingfuss | 23 | .24 |
| July 9-12 | Family Preservation | Family Preservation | Carolyn Cotton, Misty Evans | 29 | .96 |
| June 20, 2002 | Stress Management and Helping the Traumatized Child | Strategies for managing family stress and job stress. Relaxation Techniques and other coping concepts. | John Polbert and Sheila Robertson from Parkwood Hospital | 25 | .18 |

P 001984

| Date | Name of Workshop | Subject | Presenter | # of attendees | # of SWUs given |
|---|---|---|---|---|---|
| 1) Jul 29-Aug 2, 2002 2) Aug 5-9 2002 3) Aug. 12-16, 2002 4) Aug 26-30, 2002 Sept 16-20, 2002 | ASWS | Supervisory Training | DFCS Trainers and Consultant: Peggy Edwards, Tina Stokes, Sergio Trejo, Beth Howard, Doug Howard, JJ Harris, Lora Wright, Shannon McCormick, Scott Thrasher, Melissa Woodfin | 1) 13 2) 20 3) 18 4) 18 5)18 | 1.5 |
| Aug. 6, 2002 | Teamwork | How to Improve teamwork among office members | Jackie Nelson | 12 | .66 |
| Aug.19-20, 2002 | Family Preservation | Family Preservation | Al Durham, Paul Vivian | 12 | .93 |
| Aug. 20, 2002 | TPR and Court Training | Overview of the Mississippi TPR Process and Court Testifying Recommendations | Peggy Edwards Lora Wright | 22 | .5 |
| August 22-23, 2002 | Mississippi Permanency Partnership Conference | 1. Mission not Impossible? Community Collaborations 2. Community Service Inventory 3. Hidden Treasures: Navigating the MAZE of Grant Sources 4. Molding Character through Abstinence 5. The ABC's of Children's Medical Records 6. Child in Need of Supervision and Adolescent Offenders Programs 7. Legislative Process; Get involved, Make a difference! 8. Leading "Teens"...or, Young People 9. Project Homestead & Community Projects 10. Signs of the Shooter 11. Crime Victims Compensation Program 12. Child and Family Services Reviews 13. Mothers of Preschoolers 14. Families First Resource Centers: Providing a Rainbow of Services 15. Social Worker Safety in the Field 16. Parents Again: Grandmothers' Story 17. Partnership for a Healthy MS 18. Building Assets Together Initiative (B.A.T.) | Monique Gilmore, Charles Powell, Dr. Steven Priester, Chinda Longino, Shirley Jackson-Tomas, Carolyn Gowen, Pat Trainum, Polly Duncan, Annetter Rinehart, Theresa Haynes, Muriel Williams, Robin Parham, K.C. Grist, Greg Murphree, Marina Lott, Dale Simon, Janella Lee, Detective Sgt. Michael Lee, Sandra K. Morrison, Beth Frizzell, Michelle Miller, Becky McNeely, Janet Fulton | 350 | 1.08 |

P 001985

| Date | Name of Workshop | Subject | Presenter | # of attendees | # of SWUs given |
|---|---|---|---|---|---|
| Sept 11, 2002 | Family Preservation | Family Preservation | William Durr, Jackie Nelson | 32 | .96 |
| Oct 7, 2002 | F.A.C.T. Conference Families and Communities Together | 1. Raising Non-Violent Children in a Violent World 2. The Community and Mental Illness 3. Bioterrorism Preparedness 4. How Leadership can Improve the Quality of Life 5. Connecting with the Disconnected Generation 6. The Meaning of Being Together 7. Cyber Crime 8. ADHD 9. Bridging the Generation Gap 10. Satanic Cults and Youth Gangs 11. Special Education Issues 12. Latest trends in Youth Culture 13. Youth Crime Watch 14. Co-Parenting After Divorce 15. Hispanic Culture | Dr. W. Barry Boggs, Dr. Paul Deal, Nita Thompson, Dr. Risa Webb, Rubye Del Harden, Scott Carter, Keith Tonkel, Jean Vaughn, Robin Smith, Fred Johnson, Gloria Neal, Johnny Purvis, Mark Wilson, Vivkie Robbins, Jerri Speyrer, Meldoy Winston, Barron Farr, Jan Sample, Dr. Wesley Belton, Clarence Carter | 350 | .75 |
| Oct. 21-25, 2002 | Finding Words | Interviewing sexual abuse victims | Dr. Lisa Yazdani, Carol Langendoen | 12 | 3.31 |
| Oct. 24, 2002 | Cultural Diversity | Cultural Diversity | Jackie Nelson | 23 | .66 |
| Nov. 14, 2002 | Advocating for the Special Needs of Children in the School System | Advocating for the Special Needs of Children in the School System | Sue Cannimore, Ed. Consultant, MS Protection and Advocacy | 11 | .2 |
| Nov. 18-22, 2002 | Family Preservation | Family Preservation | Carolyn Cotton, Valerie Foster | 10 | 2.13 |
| Dec. 17, 2002 | First Responders | Methamphetamine Labs, Mandated Reporters, and reporting procedures | Elizabeth Hocker, James Cowart, Conner Magee | 31 | .63 |

- **Content focus and type of training:**

As noted above, the intensive curriculum covers the basic necessary information needed for the beginning worker with a minimum of a social work degree. As available, additional in-service training is open to workers, either through the agency or in conjunction with other statewide training opportunities.

- **Types of training offered to staff by position:**

**Social Work Staff:** as noted above

**Adoption specialization:** The Intensive training for social workers is currently under review for modifications to better tailor it to adoption workers.

P 001986

**Licensing specialization:** As with the adoption specialization, training to meet the needs of licensing specialists is being reviewed for development.

**Family Preservation Staff:** Al Durham, Consultant, assisted the program with developing a training curriculum. Included in the Family Preservation curriculum are time-limited reunification services, substance abuse and housing.

**Supervisory Staff:** The training program has revised the supervisory curriculum to include topics such as: leadership skills, communication, expectations of the staff and supervisor, management types, roles of supervision in assessment, case planning, stages of supervising, motivating social workers and time management. The agency is in the process of a supervisory pilot, that appears to fill a void in supervisory training.

**Additional Support Staff:** Case Aides, homemaker.

**Clerical:** Clerical staff receive on-the-job training, through supervisory staff and through the Training unit

- **Staff Development Plans:**

**Performance Improvement Plan:** As needed, Performance Improvement Plans (PIP) are developed for individuals needing additional training in various areas. Only once in the past 4 years has there been a request for a staff development plan as part of a performance improvement plan. However, informal requests for additional assistance is provided by training staff on a one to one basis as requested.

**Education Program:** In the past, MDHS-DCFS provided support to staff pursuing degrees in return for committing time to the agency. In the history of the agency, at one time significant support was given to staff to pursue graduate level education, more recently that support consisted of funding courses after successful completion. Because of the recent budgetary constraints, this program has been put on hold.

**BSW/MSW support:** Through the Child Welfare Institute, juniors in the BSW program and candidates in the MSW program may be selected for an education grant and must then commit to time with the agency.

- **Training data available:**

Thirty (30) social workers completed Intensive training from January 2002 to December 2002. One of the classes was halted half way through, due to travel and budget shortages. An extra week of review was added to the class when it resumed-there was approximately a five month delay. See previous chart.

Training through other resources, Department of Mental Health, various community hospitals, Public Health and other conferences are also available to workers, if the training session is pertinent to their job.

- **Process for developing, evaluating and updating the training curriculum for staff:**

**Ex. 1C**

# Mississippi Department of Human Services
# Division of Family and Children's Services

# CHILD AND FAMILY SERVICE REVIEW
# PROGRAM IMPROVEMENT PLAN

Submitted:  August 16, 2004
Resubmitted: November 19, 2004
Resubmitted: January 28, 2005
Resubmitted: March 24, 2005



DHS
038159

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Program Improvement Plan**

**Narrative**

## INTRODUCTION

The Mississippi Department of Human Services, Division of Family and Children's Services (DFCS) is a state administered child and family service agency including four State Office Units: Prevention, Protection, Placement, and Administration. DFCS provides services statewide through 9 regional offices covering 82 counties and 84 local offices. DFCS served as the lead agency in partnership with the Department of Health and Human Services, Children's Bureau and the Administration of Children and Families (ACF) to conduct a Child and Family Service Review (CFSR) for the state of Mississippi in 2004. The purpose of the CFSR is to ensure compliance with state plan requirements based on Title IV-B and IV-E of the Social Security Act. The CFSR is designed as a partnership approach to help States improve child welfare outcomes for families & children who receive services by identifying strengths and needs within State programs that can lead to improvement. The CFSR is a four step process that includes: 1) a self administered statewide assessment, 2) an on-site case review with interviews conducted by a team of state and federal reviewers, 3) a final report identifying all findings as a result of the review; and 4) a program improvement plan that must address all areas of nonconformity related to seven outcomes and seven systemic factors necessary to achieve safety, permanency and well-being for children and families and to strengthen the overall child welfare system.

## MISSISSIPPI'S CHILD AND FAMILY SERVICE OVERVIEW

### Mississippi's Child and Family Service Pilot

It is important to note that Mississippi was the first State to pilot the CFSR process in 1995. Mississippi completed the pilot review process and developed the first CFSR Program Improvement Plan (PIP) in January 1996. The pilot PIP was based on the CFSR findings and targeted the areas needing improvement related to safety, permanency and well-being. The safety concerns at that time included the need for a preventative service array and home-based services to protect children within their own homes and families. The permanency concerns at that time included the need for more timely permanency, more stability in foster care placements, better support and training for foster and adoptive families and less restrictive institutional placements. The well-being concerns included that services were based on "what was available" rather than on "what was needed" and were not individually assessed. Overarching concerns included staffing, training and improving the consistency of practice statewide to be family centered and strength based.

The pilot PIP included strategies to develop and implement family centered practice principles that framed Mississippi's vision for child and family services, guided policy and practice at the

DHS
038161

local level and directed decision-making and progress toward achieving measurable goals. With the implementation of the PIP and the Five Year Child and Family Service Plan (CFSP), Mississippi made substantial progress from 1995-2000 in improving outcomes for families and children and recorded a measurable decrease in re-entries due to abuse and neglect, in the number of subsequent substantiated reports of abuse and neglect, and in the number of children entering custody. Mississippi also recorded a measurable increase in the number of children adopted, in the percentage of children who left custody for reunification with family, and in the development of a preventative service array that included home based services through family preservation and community based family support resource centers.

After 2000, the Division of Family and Children's Services began a struggle to maintain the progress and improvements due to numerous factors including but not limited to: changes in the agency and division leadership, budget cuts, loss of staff positions, and staff turnover. A result of the CFSR conducted in 2004 clearly highlights the fact that while Mississippi has made substantial progress, the State is still addressing many of the same systemic and practice issues that were identified in the original pilot review. Mississippi is confident that with the current agency leadership, the motivation and support of the DFCS management and the desire and dedication of our field staff to "do the right the thing" that we will surpass prior achievements and significantly impact safety, permanency and well-being outcomes for Mississippi's families and children.

## Mississippi's 2004 Child and Family Service Review

### Statewide Assessment

The development of the statewide assessment began in May 2003 at the annual CFSP Retreat. The CFSP Retreat is an intensive working session where agency staff, community stakeholders, and service providers are engaged to assess the DFCS annual progress and accomplishments toward the goals and objectives of the Title IV-B CFSP. During the CFSP Retreat, work groups focus on the strategies in the plan to determine if they are having the intended effect and to evaluate the impact on improving the safety, permanency and well-being outcomes. In addition, the workgroups make specific recommendations to revise and update the plan for the next year. During the May 2003 CFSP Retreat, participants were provided with an orientation to the CFSR process and information related to the national findings from the reviews by the NCWRCOI. Preparation for the statewide assessment began and stakeholders were invited to participate in focus groups to develop the statewide assessment and participate in the CFSR.

In preparing for the statewide assessment, key agency staff, community stakeholders including state university representatives, child placing agencies, law enforcement, youth court judges, community-based service providers, tribal representatives, former and current foster youth representatives, other state agency representatives such as mental health, health, education and the Attorney General's office; and interagency representatives served as focus group members. There were also targeted groups utilized including the State Level Case Review Team, State Level Citizen Review Panel, Independent Living Youth Advisory Group, therapeutic residential child placing agencies and foster and adoptive parent support groups. These groups evaluated every aspect of the child welfare system and made recommendations for the statewide assessment. The focus groups were established based on the CFSR outcomes of safety,

4

**Ex. 1D**

# Mississippi Department of Human Services



# Fiscal Year 2004 Budget Request

RECEIVED

AUG 0 2 2002

DEPARTMENT OF FINANCE AND ADMINISTRATION
OFFICE OF BUDGET AND FUND MANAGEMENT

# Division of Family and Children's Services

DHS
052771

**BUDGET NARRATIVE**
Justification for Increases

<u>Mississippi Department of Human Services</u>    <u>Division of Family and Children's Services</u>
Agency                                      Program

The Division of Family and Children's Services (DFCS) currently has vacant positions that have not been filled due to lack of general fund dollars. The lack of adequate staff has caused a tremendous burden on the Division. DFCS is mandated under state statue; the Mississippi Youth Court law, Mississippi Code of 1972, Annotated, Section 43-21-101; to provide protective services to children and vulnerable adults of this state. Also under the law, Section 43-1-51, services enumerated under 43-15-13 states that the foster care program shall be provided by qualified staff with appropriate caseloads. The Child Welfare League of America recommends a caseload of 15 20 cases per social worker. Staff currently carry caseloads up to 200 cases.

Our Social Workers are working under extremely stressful conditions. The inability to fill vacancies have resulted in a decrease in the quality of care and has resulted in a higher turnover because staff can't work under these conditions for long periods of time.

The state of Mississippi is scheduled for a federal Child and Family Review of the Child Welfare Program in 2004. If the caseloads do not meet the national standards, Mississippi could be sanctioned.

Additional funding of $3,926,350 in General Funds is being requested to fund existing programs. These programs were approved but no funds were appropriated to adequately fund them.

DHS
052812

**Ex. 1E**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., ET AL.                                PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, ET AL.                            DEFENDANTS


30(B)(6)VIDEOTAPED DEPOSITION OF PETER BOULETTE


Deposition Taken at the Instance of Plaintiffs
In the Offices of Bradley, Arant, Rose & White
Jackson, Mississippi
On March 16th, 2006
Commencing at 8:33 a.m.

COPY

REPORTED BY:  MOLLY A. BENOIST, RPR
Mississippi CSR #1722

BOND & ASSOCIATES
107 Mill Creek Corners, Suite C
Brandon, Mississippi 39047
(601) 936-4466

1      Q      I understand that.

2      A      Okay.

3      Q      Okay.  I guess my question was:  In your

4   role in preparing the budget, did you have any

5   dealings with DFCS just, I guess, in needs assessments

6   or, you know, to track the projections of potential

7   sources of funding, how you are spending the money at

8   DFCS?  Do you have these types of conversations?

9      A      Some.

10     Q      Okay.  And is that part of the budget

11  preparation process or is that separate?

12     A      Well, it would be a technical situation

13  because if they had a situation and they said, Well,

14  how can we do this, I might say -- or, How can we best

15  ask for this, I might offer a suggestion.

16     Q      Okay.  You had testified earlier that you

17  had a chance to review Dr. Brister's report, and I

18  want to ask you whether or not you agree with some of

19  the conclusions he had in his report about the level

20  of funding.  Would you agree with his conclusion that

21  DFCS has been underfunded?

22     A      What time frame are we in discussion of?

23     Q      That's a fair -- well, how about the time

24  frame from 2000 to the present?

25     A      Some years were and some years were not.

**Ex. 1F**

| | FY 2006 Appropriation | FY 2007 Appropriation | FY 2008 Appropriation | FY 2009 Appropriation | FY 2010 Request |
|---|---|---|---|---|---|
| Salaries | 24,159,497 | 29,828,454 | 33,930,944 | 40,310,608 | 47,042,471 |
| Travel | 2,265,750 | 2,485,245 | 3,520,413 | 3,239,716 | 6,024,712 |
| Contractual Services | 16,671,627 | 14,127,039 | 12,268,907 | 16,260,535 | 23,640,458 |
| Commodities | 479,062 | 654,062 | 705,262 | 733,803 | 877,003 |
| Equipment | 103,370 | 102,170 | 230,170 | 662,422 | 1,511,222 |
| SL&G | 27,432,375 | 27,432,375 | 35,832,375 | 56,210,339 | 88,615,564 |
| | **71,111,681** | **74,629,345** | **86,488,071** | **117,417,423** | **167,711,430** |
| | | | | | |
| *General Funds | 16,697,447 | 18,626,387 | 26,293,449 | 37,301,243 | 54,015,287 |
| *Special Funds | 54,414,234 | 56,002,958 | 60,194,622 | 80,116,180 | 113,696,143 |
| | **71,111,681** | **74,629,345** | **86,488,071** | **117,417,423** | **167,711,430** |

0

| | FY 2006 Appropriation | FY 2007 Appropriation | FY 2008 Appropriation | FY 2009 Appropriation | FY 2010 Request |
|---|---|---|---|---|---|
| **Authorized Positions** | | | | | |
| *Permanent* | 509 | 584 | 532 | 938 | 938 |
| *Time-Limited* | 168 | 202 | 190 | 266 | 266 |
| | **677** | **786** | **722** | **1,204** | **1,204** |

*Legislative Supplement SB 2495:*
*General Funds $7,750,000 and*
*Special Fund Authority $6,870,000*

Provided to Court Monitor by Peter B. Boulette
on September 26, 2008

# Ex. 1G

Chapter No. _96_
07/SS02/ANAP2SG
_JN  1BW/BLC_

RECEIVED

2007 JUN 20  PM 2: 17

BUDGETS
SUBGRANTEE UNIT

# SENATE BILL  NO. 2495

Originated in Senate _____ Secretary

SENATE BILL  NO. 2495

AN ACT MAKING AN ADDITIONAL APPROPRIATION OF SPECIAL FUNDS TO
DEFRAY THE EXPENSES OF THE ELECTRONIC PROTECTION LICENSING
ADVISORY ACT FOR FISCAL YEAR 2007; TO DEFRAY THE EXPENSES OF THE
STATE BOARD OF DENTAL EXAMINERS FOR FISCAL YEAR 2007; AN
ADDITIONAL APPROPRIATION OF STATE GENERAL FUNDS TO DEFRAY THE
EXPENSES OF THE DISTRICT ATTORNEYS AND ASSISTANT DISTRICT
ATTORNEYS FOR FISCAL YEAR 2007; TO DEFRAY THE EXPENSES OF THE
DEPARTMENT OF PUBLIC SAFETY FOR FISCAL YEARS 2007 AND 2008; TO
DEFRAY THE EXPENSES OF THE STATE TAX COMMISSION FOR FISCAL YEARS
2007 AND 2008; AND TO DEFRAY THE EXPENSES OF THE OFFICE OF THE
ATTORNEY GENERAL FOR CERTAIN LEGAL EXPENSES, JUDGMENTS AND
SETTLEMENTS FOR FISCAL YEAR 2007.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

**SECTION 1.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is hereby appropriated out of any money in the State
Treasury to the credit of the Mississippi Insurance Department
which is comprised of special source funds collected by, or
otherwise available to, the department for the purpose of funding
the Electronic Protection Licensing Advisory Act as established in
Senate Bill 2742, 2006 Regular Session, for the fiscal year ending
June 30, 2007.....................................$   265,222.00.

Of the funds provided under the provisions of this section,
an amount not to exceed One Hundred Twenty-seven Thousand Seven
Hundred Sixty-eight Dollars ($127,768.00) shall be expended for a
Deputy Fire Marshal Supervisor, Deputy Fire Marshal I and an
Administrative Assistant IV.

**SECTION 2.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is appropriated out of any funds in the State Treasury
to the credit of the State Board of Dental Examiners, which is
comprised of any special funds collected by or otherwise available

to the board for the purpose of defraying the expenses of the
board, for the fiscal year ending June 30, 2007 ..................
.............................................. $    42,000.00.

    **SECTION 3.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is appropriated out of any money in the State General
Fund, not otherwise appropriated, for the purpose of paying
salaries and travel expenses of district attorneys and assistant
district attorneys of the state for the fiscal year ending
June 30, 2007 ................................... $   110,000.00.

    **SECTION 4.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is hereby appropriated out of any money in the State
General Fund not otherwise appropriated to the Department of
Public Safety for the purpose of defraying the expenses of the
Department for the period beginning upon passage and through the
fiscal year ending June 30, 2008 ................ $  1,200,000.00.

    **SECTION 5.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is hereby appropriated out of any money in the State
General Fund not otherwise appropriated to the State Tax
Commission for the purpose of defraying the expense of replacing
the roof at the Liquor Distribution Center for the period
beginning upon passage and through the fiscal year ending June 30,
2008 .......................................... $   500,000.00.

    **SECTION 6.**  In addition to all other sums heretofore
appropriated, the following sum, or so much thereof as may be
necessary, is hereby appropriated out of any money in the State
General Fund not otherwise appropriated for the purpose of paying
for certain outside legal assistance, expert witness fees, court
fees, judgments and settlement agreements incurred by the Office
of the Attorney General for the fiscal year ending
June 30, 2007 ................................... $ 1,822,861.00.

The funds provided in this section are appropriated for the following:

(a)  Olivia Y., et al v. Haley Barbour, as Governor; Donald Taylor, as Exec. Dir. of DHS; and Billy Mangold, as Director of the Division of Family and Children's Services and the Department of Human Services, United States District Court for the Southern District of Mississippi, Jackson Division, Cause No. 3:04cv251(L)(N) ................................ $ 1,500,000.00.

(b)  Severance Tax Recovery - Pursue Energy Corporation, Case No. 02-05339-JEE-11 ......................... $   225,213.00.

(c)  Brown and Williamson/Ligget Tobacco Settlement Payments ...................................... $    17,375.00.

(d)  Sixteenth Section Land Litigation .. $      228.00.

(e)  Michael Hamilton v. Mississippi State Tax Commission, Joseph L. Blount, Chairman and Commissioner of Revenue; United States District Court; Southern District; Jackson Division; Cause No. 3:05cv472WHB-AGN ............. $    75,000.00.

(f)  Jean Boudreaux and the victims of the flood on April 6, 1983, of the Tangipahoa River Number 71408 Div. "D" - 21st JDC, Parish of Tangipahoa ................... $     5,045.00.

SECTION 7.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the Department of Public Safety - Division of Highway Safety Patrol, for the purpose of defraying the expense of a highway patrol trooper training class for the period beginning upon passage and through the fiscal year ending June 30, 2008.......................$  5,000,000.00.

SECTION 8.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the State Tax Commission, for the purchase and delivery of motor vehicle license

tags for the period beginning upon passage and through the fiscal year ending June 30, 2008......................$   3,854,500.00.

SECTION 9.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the Department of Human Services, Division of Family and Children's Services, for the purpose of defraying the expense of the Foster Care Program for the period beginning upon passage and through the fiscal year ending June 30, 2008.........................$   7,750,000.00.

AUTHORIZED POSITIONS:

| | | |
|---|---|---|
| Permanent: | Full Time .............. | 128 |
| | Part Time ............. | 0 |
| Time-Limited: | Full Time .............. | 0 |
| | Part Time ........... | 0 |

SECTION 10.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State Treasury to the credit of the Department of Human Services, Division of Family and Children's Services, for the purpose of defraying the expense of the Foster Care Program for the period beginning upon passage and through the fiscal year ending June 30, 2008.......................................$   6,870,000.00.

SECTION 11.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the Department of Human Services, Division of Youth Services, for the purpose of defraying the expense of training schools and related programs for the period beginning upon passage and through the fiscal year ending June 30, 2008.................................$   2,250,000.00.

AUTHORIZED POSITIONS:

| | | |
|---|---|---|
| Permanent: | Full Time .............. | 43 |

```
                    Part Time ............     0
Time-Limited:  Full Time ..............     0
                    Part Time ............     0
```

SECTION 12.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State Treasury to the credit of the Department of Human Services, Division of Youth Services, for the purpose of defraying the expense of training schools and related programs for the period beginning upon passage and through the fiscal year ending June 30, 2008.........................................$   112,500.00.

SECTION 13.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the Department of Rehabilitation Services, Spinal Cord and Head Injury Program, for the purpose of defraying the expense of the Home Community Based Waiver Program for the period beginning upon passage and through the fiscal year ending June 30, 2008..........$   2,500,000.00.

```
AUTHORIZED POSITIONS:
    Permanent:    Full Time ..............    16
                      Part Time ............     0
    Time-Limited:  Full Time ..............     0
                      Part Time ...........     0
```

SECTION 14.  In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State Treasury to the credit of the Department of Rehabilitation Services, Spinal Cord and Head Injury Program, for the purpose of defraying the expense of the Home and Community Based Waiver Program for the period beginning upon passage and through the fiscal year ending June 30, 2008..........$   9,173,943.00.

SECTION 15.   In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State General Fund not otherwise appropriated to the Department of Rehabilitation Services, Special Disability Program, for the purpose of defraying the expense of the Home and Community Based Waiver Program for the period beginning upon passage and through the fiscal year ending June 30, 2008.........$    2,500,000.00.

AUTHORIZED POSITIONS:

| | | |
|---|---|---|
| Permanent: | Full Time ............... | 37 |
| | Part Time ............. | 0 |
| Time-Limited: | Full Time ............. | 0 |
| | Part Time ........... | 0 |

SECTION 16.   In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State Treasury to the credit of the Department of Rehabilitation Services, Special Disability Program, for the purpose of defraying the expense of the Home and Community Based Waiver Program for the period beginning upon passage and through the fiscal year ending June 30, 2008................................$    9,896,184.00.

SECTION 17.   In addition to all other sums heretofore appropriated, the following sum, or so much thereof as may be necessary, is hereby appropriated out of any money in the State Treasury to the credit of the Children's Justice Fund, for the purpose of defraying the expenses of the Batson Center of Excellence for the fiscal year ending June 30, 2007.......................................... $   100,000.00.

SECTION 18.   The money herein appropriated shall be paid by the State Treasurer out of any money in the proper fund or funds as set forth in this act, upon warrants issued by the State Fiscal Officer; and the State Fiscal Officer shall issue his warrants

upon requisitions signed by the proper person, officer or officers in the manner provided by law.

SECTION 19.  This act shall take effect and be in force from and after its passage.

PASSED BY THE SENATE
March 29, 2007

_____
PRESIDENT OF THE SENATE

PASSED BY THE HOUSE OF REPRESENTATIVES
March 29, 2007

_____
SPEAKER OF THE HOUSE OF REPRESENTATIVES

APPROVED BY THE GOVERNOR

_____
GOVERNOR

4/21/07   10:09 a

S. B. No. 2495
07/SS02/ANAP2SG
Page 7

# Ex. 1H

651-09

# Mississippi Department of Human Services



# Fiscal Year 2010 Budget Request

# Family & Children Services

STATE OF MISSISSIPPI
DEPARTMENT OF HUMAN SERVICES
DIVISION OF FAMILY AND CHILDREN'S SERVICES
FISCAL YEAR 2010 BUDGET REQUEST

## TABLE OF CONTENTS

SECTIONS                                                    PAGE

I.     MAJOR BUDGET FORMS

       A. FORM MBR-1                                         1
       B. FORM MBR-1-01                                      2
       C. FORM MBR-1-02                                      4
       D. FORM MBR-1-03 TOTAL AGENCY                         5
       E. SUMMARY OF PROGRAMS                                6
       F. FORM MBR-1-03A                                     7

II.    PROGRAM INFORMATION

       A. PROGRAM NARRATIVE                                 10
       B. PROGRAM PERFORMANCE INDICATORS                    30

III.   ADDITIONAL BUDGET FORMS

       A. FORM MBR-1-B                                      32
       B. FORM MBR-1-C                                      35
       C. FORM MBR-1-D-2                                    37
       D. FORM MBR-1-D4                                     39
       E. FORM MBR-1-E                                      40

IV.    OTHERS

       A. SUBGRANT LISTING                                  41
       B. CURRENT ORGANIZATION CHART                        46
       C. BUDGET NARRATIVE                                  47
       D. OUT-OF-STATE TRAVEL                               48
       E. FEES, PROFESSIONAL & OTHER SERVICES               54
       F. PRIORITY OF BUDGET DECISION UNITS                 81
       G. GENERAL FUND 3% REDUCTION                         84

State of Mississippi
Form MBR-1 (2006)

**BUDGET REQUEST FOR FISCAL YEAR ENDING JUNE 30, 2010**

**651-09**
REVISED: 09/10/2008

MDHS - Division of Family and Children's Services    750 North State Street          Don Thompson

| AGENCY | ADDRESS | | CHIEF EXECUTIVE OFFICER | | |

| | Actual Expenses FY Ending June 30, 2008 | Estimate Expenses FY Ending June 30, 2009 | Requested for FY Ending June 30, 2010 | Requested Increase (+) or Decrease (-) FY 2010 vs. FY 2009 (Col. 3 vs. Col. 2) | |
|---|---|---|---|---|---|
| | | | | AMOUNT | PERCENT |
| **I. A. PERSONAL SERVICES** | | | | | |
| 1. Salaries, Wages & Fringe Benefits (Base) | 30,073,967 | 40,310,608 | 47,042,471 | | |
| a. Additional Compensation | | | | | |
| b. Proposed Vacancy Rate (Dollar Amount) | | | | | |
| c. Per Diem | | | | | |
| **Total Salaries, Wages & Fringe Benefits** | 30,073,967 | 40,310,608 | 47,042,471 | 6,731,863 | 16.70% |
| 2. Travel | | | | | |
| a. Travel & Subsistence (In-State) | 3,228,511 | 3,152,555 | 5,878,073 | 2,725,518 | 86.45% |
| b. Travel & Subsistence (Out-of-State) | 80,541 | 87,161 | 146,639 | 59,478 | 68.23% |
| c. Travel & Subsistence (Out-of-Country) | | | | | |
| **Total Travel** | 3,309,052 | 3,239,716 | 6,024,712 | 2,784,996 | 85.96% |
| **B. CONTRACTUAL SERVICES (Schedule B):** | | | | | |
| a. Tuition, Rewards & Awards | 311,581 | 407,807 | 592,893 | 185,086 | 45.38% |
| b. Communications, Transportation & Utilities | 209,344 | 273,995 | 398,349 | 124,354 | 45.38% |
| c. Public Information | 180,433 | 236,156 | 343,337 | 107,181 | 45.38% |
| d. Rents | 672,510 | 880,202 | 1,279,686 | 399,484 | 45.38% |
| e. Repairs & Service | 65,527 | 85,765 | 124,690 | 38,925 | 45.38% |
| f. Fees, Professional & Other Services | 8,860,008 | 11,596,256 | 16,859,275 | 5,263,019 | 45.38% |
| g. Other Contractual Services | 41,387 | 54,168 | 78,753 | 24,585 | 45.38% |
| h. Data Processing | 1,797,233 | 2,352,276 | 3,419,867 | 1,067,591 | 45.38% |
| i. Other | 285,682 | 373,910 | 543,608 | 169,698 | 45.38% |
| **Total Contractual Services** | 12,423,705 | 16,260,535 | 23,640,458 | 7,379,923 | 45.38% |
| **C. COMMODITIES (Schedule C):** | | | | | |
| a. Maintenance & Construction Materials & Supplies | | | | | |
| b. Printing & Office Supplices & Materials | 306,222 | 332,133 | 396,949 | 64,816 | 19.51% |
| c. Equipment, Repair Parts, Supplies & Accessories | 4,713 | 5,111 | 6,108 | 997 | 19.50% |
| d. Professional & Scientific Supplies & Materials | 2,498 | 2,709 | 3,238 | 529 | 19.52% |
| e. Other Supplies & Materials | 363,122 | 393,850 | 470,708 | 76,858 | 19.51% |
| **Total Commodities** | 676,555 | 733,803 | 877,003 | 143,200 | 19.51% |
| **D. CAPITAL OUTLAY:** | | | | | |
| 1. Total Other Than Equipment (Schedule D-1) | | | | | |
| 2. Equipment (Schedule D-2): | | | | | |
| a. Road Machinery, Farm & Other Working Equipment | | | | | |
| b. Office Machines, Furniture, Fixtures & Equipment | 24,656 | 203,000 | 507,000 | 304,000 | 149.75% |
| d. IS Equipment (Data Processing & Telecommunications) | 279,662 | 446,922 | 979,222 | 532,300 | 119.10% |
| e. Equipment - Lease Purchase | | | | | |
| f. Other Equipment | | 12,500 | 25,000 | 12,500 | 100.00% |
| **Total Equipment (Schedule D-2)** | 304,318 | 662,422 | 1,511,222 | 848,800 | 128.13% |
| 3. Vehicles (Schedule D-3) | 4,329 | | | | |
| 4. Wireless Comm. Devices (Schedule D-4) | | | | | |
| **E. SUBSIDIES, LOANS & GRANTS (Schedule E):** | 38,311,941 | 56,210,339 | 88,615,564 | 32,405,225 | 57.64% |
| **TOTAL EXPENDITURES** | 85,103,867 | 117,417,423 | 167,711,430 | 50,294,007 | 42.83% |
| **II. BUDGET TO BE FUNDED AS FOLLOWS:** | | | | | |
| Cash Balance-Unencumbered | | | | | |
| General Fund Appropriation (Enter General Fund Lapse Below) | 26,793,449 | 37,301,243 | 54,015,287 | 16,714,044 | 44.80% |
| Federal Funds        Other Funds (Specify) | 55,559,336 | 76,098,122 | 109,678,085 | 33,579,963 | 44.12% |
| Local | 931,897 | 1,361,070 | 1,361,070 | | |
| Children's Trust Fund | 111,237 | 162,466 | 162,466 | | |
| Other | 1,707,948 | 2,494,522 | 2,494,522 | | |
| Less: Estimated Cash Available Next Fiscal Period | | | | | |
| **TOTAL (same as total of A through E above)** | 85,103,867 | 117,417,423 | 167,711,430 | 50,294,007 | 42.83% |
| GENERAL FUND LAPSE | | | | | |
| **III. PERSONNEL DATA** | | | | | |
| Number of Positions Authorized in Appropriation Bill    a.) Full Perm | 660 | 938 | 938 | | |
| b.) Full T-L | 190 | 266 | 266 | | |
| c.) Part Perm | | | | | |
| d.) Part T-L | | | | | |
| Average Annual Vacancy Rate (Percentage)    a.) Full Perm | | | | | |
| b.) Full T-L | | | | | |
| c.) Part Perm. | | | | | |
| d.) Part T-L | | | | | |

Approved by: _____

Official of Board or Commission

Budget Officer: Peter B. Boulette

Phone Number: 359-4690

Submitted by: _____
Name

Title: Executive Director

Date: September 10, 2008

1

State of Mississippi
Form MBR-1-01

**REQUEST BY FUNDING SOURCE**

Name of Agency __MDHS - Division of Family and Children's Services__

| Consolidate Funding Sources to No More Than Six and List | FY 2008 Actual Amount | % Of Line Item | % Of Total Budget | FY 2009 Estimated Amount | % Of Line Item | % Of Total Budget | FY 2010 Requested Amount | % Of Line Item | % Of Total Budget |
|---|---|---|---|---|---|---|---|---|---|
| 1. General | 7,620,824 | 25.34% | | 8,214,816 | 20.37% | | 9,897,781 | 21.04% | |
| 2. Federal      Other (Specify) | 22,396,002 | 74.46% | | 32,019,201 | 79.43% | | 37,068,099 | 78.79% | |
| 3. Local | 6,234 | 0.02% | | 8,356 | 0.02% | | 8,356 | 0.01% | |
| 4. Children's Trust Fund | 780 | 0.00% | | 1,045 | 0.00% | | 1,045 | 0.00% | |
| 5. Other | 50,127 | 0.16% | | 67,190 | 0.16% | | 67,190 | 0.14% | |
| 6. | | | | | | | | | |
| **Total Salaries** | **30,073,967** | | **35.33%** | **40,310,608** | | **34.33%** | **47,042,471** | | **28.04%** |
| 1. General | 1,398,972 | 42.27% | | 1,369,659 | 42.27% | | 2,065,907 | 34.29% | |
| 2. Federal      Other (Specify) | 1,910,080 | 57.72% | | 1,870,057 | 57.72% | | 3,958,805 | 65.70% | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Travel** | **3,309,052** | | **3.88%** | **3,239,716** | | **2.75%** | **6,024,712** | | **3.59%** |
| 1. General | 5,643,089 | 45.42% | | 6,385,852 | 39.27% | | 12,371,375 | 52.33% | |
| 2. Federal      Other (Specify) | 6,711,043 | 54.01% | | 9,783,624 | 60.16% | | 11,178,024 | 47.28% | |
| 3. Local | 7,590 | 0.06% | | 9,935 | 0.06% | | 9,935 | 0.04% | |
| 4. Children's Trust Fund | 950 | 0.00% | | 1,242 | 0.00% | | 1,242 | 0.00% | |
| 5. Other | 61,033 | 0.49% | | 79,882 | 0.49% | | 79,882 | 0.33% | |
| 6. | | | | | | | | | |
| **Total Contractual** | **12,423,705** | | **14.59%** | **16,260,535** | | **13.84%** | **23,640,458** | | **14.09%** |
| 1. General | 265,007 | 39.17% | | 237,431 | 32.35% | | 273,231 | 31.15% | |
| 2. Federal      Other (Specify) | 411,548 | 60.82% | | 496,372 | 67.64% | | 603,772 | 68.84% | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Commodities** | **676,555** | | **0.79%** | **733,803** | | **0.62%** | **877,003** | | **0.52%** |
| 1. General | | | | | | | | | |
| 2. Federal      Other (Specify) | | | | | | | | | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Other Than Equipment** | | | | | | | | | |
| 1. General | 129,504 | 42.55% | | 281,897 | 42.55% | | 494,097 | 32.69% | |
| 2. Federal      Other (Specify) | 174,814 | 57.44% | | 380,525 | 57.44% | | 1,017,125 | 67.30% | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Equipment** | **304,318** | | **0.35%** | **662,422** | | **0.56%** | **1,511,222** | | **0.90%** |
| 1. General | | | | | | | | | |
| 2. Federal      Other (Specify) | | | | | | | | | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Vehicles** | | | | | | | | | |
| 1. General | | | | | | | | | |
| 2. Federal      Other (Specify) | 4,329 | 100.00% | | | | | | | |
| 3. Local | | | | | | | | | |
| 4. Children's Trust Fund | | | | | | | | | |
| 5. Other | | | | | | | | | |
| 6. | | | | | | | | | |
| **Total Wireless Comm. Devices** | **4,329** | | **0.00%** | | | | | | |

State of Mississippi
Form MBR-1-01

**REQUEST BY FUNDING SOURCE**

Page 2

Name of Agency   MDHS - Division of Family and Children's Services

| Consolidate Funding Sources to No More Than Six and List | FY 2008 Actual Amount | % Of Line Item | % Of Total Budget | FY 2009 Estimated Amount | % Of Line Item | % Of Total Budget | FY 2010 Requested Amount | % Of Line Item | % Of Total Budget |
|---|---|---|---|---|---|---|---|---|---|
| 1.  General | 11,736,053 | 30.63% | | 20,811,588 | 37.02% | | 28,912,896 | 32.62% | |
| 2.  Federal          Other (Specify) | 23,951,520 | 62.51% | | 31,548,343 | 56.12% | | 55,852,260 | 63.02% | |
| 3.  Local | 286,318 | 0.74% | | 420,081 | 0.74% | | 420,081 | 0.47% | |
| 4.  Children's Trust Fund | 35,812 | 0.09% | | 52,541 | 0.09% | | 52,541 | 0.05% | |
| 5.  Other | 2,302,238 | 6.00% | | 3,377,786 | 6.00% | | 3,377,786 | 3.81% | |
| 6. | | | | | | | | | |
| Total Subsidies, Loans & Grants | 38,311,941 | | 45.01% | 56,210,339 | | 47.87% | 88,615,564 | | 52.83% |
| 1.  General | 26,793,449 | 31.48% | | 37,301,243 | 31.76% | | 54,015,287 | 32.20% | |
| 2.  Federal          Other (Specify) | 55,559,336 | 65.28% | | 76,098,122 | 64.80% | | 109,678,085 | 65.39% | |
| 3.  Local | 300,142 | 0.35% | | 438,372 | 0.37% | | 438,372 | 0.46% | |
| 4.  Children's Trust Fund | 37,542 | 0.04% | | 54,828 | 0.04% | | 54,828 | 0.03% | |
| 5.  Other | 2,413,398 | 2.83% | | 3,524,858 | 3.00% | | 3,524,858 | 2.10% | |
| 6. | | | | | | | | | |
| TOTAL | 85,103,867 | | 100.00% | 117,417,423 | | 100.00% | 167,711,430 | | 100.00% |

3

. State of Mississippi
Form MBR-1-02

**SPECIAL FUNDS DETAIL**

MDHS - Division of Family and Children's Services
   Name of Agency

| A. FEDERAL FUNDS*<br>Source and<br>Fund Number | Detailed Description of Source | Percentage Match Requirement FY 2009 | FY 2010 | (1) Actual Revenues FY 2008 | (2) Estimated Revenues FY 2009 | (3) Requested Revenues FY 2010 |
|---|---|---|---|---|---|---|
| | Cash Balance-Unencumbered | | | | | |
| Title XX, 93.667: 3653 | Social Services Block Grant | | | 5,700,609 | 4,566,895 | 4,924,929 |
| Title IV-B, 93.645: 3653 | CWS- Child Welfare Services | | | 3,133,994 | 4,496,274 | 6,584,520 |
| Title IV-B, 93.556: 3653 | Promoting Safe & Stable Families-Family Pres | | | 5,826,312 | 8,358,882 | 12,241,077 |
| Title IV-E, 93.658: 3653 | Foster Care -IVE | | | 26,964,578 | 37,165,318 | 55,137,570 |
| Title IV-E, 93.674: 3653 | Chafee Foster Care Independence -Living | | | 992,135 | 1,423,395 | 2,084,476 |
| Title I, 93.669: 3653 | Child Abuse | | | 163,377 | 234,393 | 343,255 |
| Refugee Resettlement, 93.566: 3653 | Refugee | | | 578,189 | 829,515 | 1,214,775 |
| Tilte I, 93.643: 3653 | Children Justice Act | | | 147,565 | 211,709 | 310,034 |
| DHHS; 93.590: 3653 | Community Based Family Resources | | | 199,915 | 286,814 | 420,022 |
| IHHS, 93.558: 3653 | Tanf | | | 11,616,279 | 18,185,794 | 25,920,786 |
| Other: 3653 | Other | | | 236,383 | 339,133 | 496,641 |
| Katrina: 3653 | Katrina | | | | | |
| | Section A TOTAL | | | 55,559,336 | 76,098,122 | 109,678,085 |

| B. SPECIAL FUNDS (NON-FEDERAL)<br>Source and<br>Fund Number | Detailed Description of Source | (1) Actual Revenues FY 2008 | (2) Estimated Revenues FY 2009 | (3) Requested Revenues FY 2010 |
|---|---|---|---|---|
| | Cash Balance-Unencumbered | | | |
| Local | | 931,897 | 1,361,070 | 1,361,070 |
| Children's Trust Fund: 93.oth | | 111,237 | 162,466 | 162,466 |
| Other | | 1,707,948 | 2,494,522 | 2,494,522 |
| | Section B TOTAL | 2,751,082 | 4,018,058 | 4,018,058 |
| | Section A and B TOTAL | 58,310,418 | 80,116,180 | 113,696,143 |

| C. TREASURY FUND/BANK ACCOUNTS*<br>Name of<br>Fund/Account | Fund/Account Number | Name of Bank (If Applicable) | (1) Reconciled Balance as of 6/30/08 | (2) Balance as of 6/30/09 | (3) Balance as of 6/30/10 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

* Any non-federal funds that have restricted uses must be identified and narrative of restrictions attached.

State of Mississippi
Form MBR-1-03

**CONTINUATION AND EXPANDED REQUEST**

MDHS - Division of Family and Children's Services
AGENCY

Program No. __1__ of __1__ Programs

Division of Family & Children's Services
PROGRAM

| | FY 2008 Actual | | | | FY 2009 Estimate | | | |
|---|---|---|---|---|---|---|---|---|
| | (1) General | (2) Federal | (3) Other | (4) Total | (5) General | (6) Federal | (7) Other | (8) Total |
| Salaries, Wages, Fringe | 7,620,824 | 22,396,002 | 57,141 | 30,073,967 | 8,214,816 | 32,019,201 | 76,591 | 40,310,608 |
| Travel | 1,398,972 | 1,910,080 | | 3,309,052 | 1,369,659 | 1,870,057 | | 3,239,716 |
| Contractual Services | 5,643,089 | 6,711,043 | 69,573 | 12,423,705 | 6,385,852 | 9,783,624 | 91,059 | 16,260,535 |
| Commodities | 265,007 | 411,548 | | 676,555 | 237,431 | 496,372 | | 733,803 |
| Other Than Equipment | | | | | | | | |
| Equipment | 129,504 | 174,814 | | 304,318 | 281,897 | 380,525 | | 662,422 |
| Vehicles | | | | | | | | |
| Wireless Comm. Devs. | | 4,329 | | 4,329 | | | | |
| Subsidies, Loans & Grants | 11,736,053 | 23,951,520 | 2,624,368 | 38,311,941 | 20,811,588 | 31,548,343 | 3,850,408 | 56,210,339 |
| Total | 26,793,449 | 55,559,336 | 2,751,082 | 85,103,867 | 37,301,243 | 76,098,122 | 4,018,058 | 117,417,423 |
| No. of Positions (FTE) | 215.00 | 633.00 | 2.00 | 850.00 | 246.00 | 956.00 | 2.00 | 1,204.00 |

| | FY 2010 Increase/Decrease for Continuation | | | | FY 2010 Expansion/Reduction of Existing Activities | | | |
|---|---|---|---|---|---|---|---|---|
| | (9) General | (10) Federal | (11) Other | (12) Total | (13) General | (14) Federal | (15) Other | (16) Total |
| Salaries, Wages, Fringe | 1,682,965 | 5,048,898 | | 6,731,863 | | | | |
| Travel | 696,248 | 2,088,748 | | 2,784,996 | | | | |
| Contractual Services | 5,985,523 | 1,394,400 | | 7,379,923 | | | | |
| Commodities | 35,800 | 107,400 | | 143,200 | | | | |
| Other Than Equipment | | | | | | | | |
| Equipment | 212,200 | 636,600 | | 848,800 | | | | |
| Vehicles | | | | | | | | |
| Wireless Comm. Devs. | | | | | | | | |
| Subsidies, Loans & Grants | 8,101,308 | 24,303,917 | | 32,405,225 | | | | |
| Total | 16,714,044 | 33,579,963 | | 50,294,007 | | | | |
| No. of Positions (FTE) | | | | | | | | |

| | FY 2010 New Activities | | | | FY 2010 Total Request | | | |
|---|---|---|---|---|---|---|---|---|
| | (17) General | (18) Federal | (19) Other | (20) Total | (21) General | (22) Federal | (23) Other | (24) Total |
| Salaries, Wages, Fringe | | | | | 9,897,781 | 37,068,099 | 76,591 | 47,042,471 |
| Travel | | | | | 2,065,907 | 3,958,805 | | 6,024,712 |
| Contractual Services | | | | | 12,371,375 | 11,178,024 | 91,059 | 23,640,458 |
| Commodities | | | | | 273,231 | 603,772 | | 877,003 |
| Other Than Equipment | | | | | | | | |
| Equipment | | | | | 494,097 | 1,017,125 | | 1,511,222 |
| Vehicles | | | | | | | | |
| Wireless Comm. Devs. | | | | | | | | |
| Subsidies, Loans & Grants | | | | | 28,912,896 | 55,852,260 | 3,850,408 | 88,615,564 |
| Total | | | | | 54,015,287 | 109,678,085 | 4,018,058 | 167,711,430 |
| No. of Positions (FTE) | | | | | 246.00 | 956.00 | 2.00 | 1,204.00 |

Note: FY2010 Total Request = FY2009 Estimated + FY2010 Incr(Decr) for Continuation + FY2010 Expansion/Reduction of Existing Activities + FY2010 New Activities.

## SUMMARY OF PROGRAMS
## FORM MBR-1-03

MDHS - Division of Family and Children's Services
    Agency Name

### FUNDING REQUESTED FISCAL YEAR 2010

| | PROGRAM | GENERAL | FEDERAL | OTHER | TOTAL |
|---|---|---|---|---|---|
| 1. | Division of Family & Children's Services | 54,015,287 | 109,678,085 | 4,018,058 | 167,711,430 |
| | SUMMARY OF ALL PROGRAMS | 54,015,287 | 109,678,085 | 4,018,058 | 167,711,430 |

State of Mississippi
Form MBR-1-03A

## PROGRAM DECISION UNITS

MDHS - Division of Family and Children's Services
AGENCY

1 - Division of Family & Children's Services
PROGRAM NAME

| EXPENDITURES: | A<br>FY 2009<br>Appropriation | B<br>Escalations<br>By DFA | C<br>Non-Recurring<br>Items | D<br>Kinship<br>Payments | E<br>Foster Payments | F<br>Adoption<br>Subsidy Payments | G<br>Board Payments | H<br>Funding<br>Authority |
|---|---|---|---|---|---|---|---|---|
| SALARIES | 40,310,608 | | | | | | | 5,651,863 |
| GENERAL | 8,214,816 | | | | | | | 1,412,965 |
| FEDERAL | 32,019,201 | | | | | | | 4,238,898 |
| OTHER | 76,591 | | | | | | | |
| TRAVEL | 3,239,716 | | | | | | | 2,312,496 |
| GENERAL | 1,369,659 | | | | | | | 578,123 |
| FEDERAL | 1,870,057 | | | | | | | 1,734,373 |
| OTHER | | | | | | | | |
| CONTRACTUAL | 16,260,535 | | | | | | | 859,200 |
| GENERAL | 6,385,852 | | | | | | | 214,800 |
| FEDERAL | 9,783,624 | | | | | | | 644,400 |
| OTHER | 91,059 | | | | | | | |
| COMMODITIES | 733,803 | | | | | | | 143,200 |
| GENERAL | 237,431 | | | | | | | 35,800 |
| FEDERAL | 496,372 | | | | | | | 107,400 |
| OTHER | | | | | | | | |
| CAPITAL-OTE | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| EQUIPMENT | 662,422 | | | | | | | 243,000 |
| GENERAL | 281,897 | | | | | | | 60,750 |
| FEDERAL | 380,525 | | | | | | | 182,250 |
| OTHER | | | | | | | | |
| VEHICLES | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| WIRELESS DEV | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| SUBSIDIES | 56,210,339 | | | 7,120,392 | 5,434,947 | 5,416,428 | 9,761,760 | |
| GENERAL | 20,811,588 | | | 1,780,100 | 1,358,737 | 1,354,107 | 2,440,440 | |
| FEDERAL | 31,548,343 | | | 5,340,292 | 4,076,210 | 4,062,321 | 7,321,320 | |
| OTHER | 3,850,408 | | | | | | | |
| TOTAL | 117,417,423 | | | 7,120,392 | 5,434,947 | 5,416,428 | 9,761,760 | 9,209,759 |

| FUNDING: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GENERAL FUNDS | 37,301,243 | | | 1,780,100 | 1,358,737 | 1,354,107 | 2,440,440 | 2,302,438 |
| FEDERAL FUNDS | 76,098,122 | | | 5,340,292 | 4,076,210 | 4,062,321 | 7,321,320 | 6,907,321 |
| OTHER FUNDS | 4,018,058 | | | | | | | |
| TOTAL | 117,417,423 | | | 7,120,392 | 5,434,947 | 5,416,428 | 9,761,760 | 9,209,759 |

| POSITIONS: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GENERAL FTE | 246.00 | | | | | | | |
| FEDERAL FTE | 956.00 | | | | | | | |
| OTHER FTE | 2.00 | | | | | | | |
| TOTAL FTE | 1,204.00 | | | | | | | |

PRIORITY LEVEL:

State of Mississippi
Form MBR-1-03A

# PROGRAM DECISION UNITS

MDHS - Division of Family and Children's Services
AGENCY

1 - Division of Family & Children's Services
PROGRAM NAME

| EXPENDITURES: | I<br>M A C W I S | J<br>Family Per./time Limit Reun | K<br>Advanced Degrees | L<br>Career Ladder | M<br>Court Monitor/coa/legal Fe | N<br>Equipment Upgrades | O<br>Regional Training Centers | P<br>Total Funding Change |
|---|---|---|---|---|---|---|---|---|
| SALARIES | | | 700,000 | 380,000 | | | | 6,731,863 |
| GENERAL | | | 175,000 | 95,000 | | | | 1,682,965 |
| FEDERAL | | | 525,000 | 285,000 | | | | 5,048,898 |
| OTHER | | | | | | | 472,500 | 2,784,996 |
| TRAVEL | | | | | | | | |
| GENERAL | | | | | | | 118,125 | 696,248 |
| FEDERAL | | | | | | | 354,375 | 2,088,748 |
| OTHER | | | | | | | | |
| CONTRACTUAL | 1,000,000 | | | | 5,520,723 | | | 7,379,923 |
| GENERAL | 250,000 | | | | 5,520,723 | | | 5,985,523 |
| FEDERAL | 750,000 | | | | | | | 1,394,400 |
| OTHER | | | | | | | | |
| COMMODITIES | | | | | | | | 143,200 |
| GENERAL | | | | | | | | 35,800 |
| FEDERAL | | | | | | | | 107,400 |
| OTHER | | | | | | | | |
| CAPITAL-OTE | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| EQUIPMENT | | | | | | 557,800 | 48,000 | 848,800 |
| GENERAL | | | | | | 139,450 | 12,000 | 212,200 |
| FEDERAL | | | | | | 418,350 | 36,000 | 636,600 |
| OTHER | | | | | | | | |
| VEHICLES | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| WIRELESS DEV | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| SUBSIDIES | | 4,671,698 | | | | | | 32,405,225 |
| GENERAL | | 1,167,924 | | | | | | 8,101,308 |
| FEDERAL | | 3,503,774 | | | | | | 24,303,917 |
| OTHER | | | | | | | | |
| TOTAL | 1,000,000 | 4,671,698 | 700,000 | 380,000 | 5,520,723 | 557,800 | 520,500 | 50,294,007 |

| FUNDING: | I | J | K | L | M | N | O | P |
|---|---|---|---|---|---|---|---|---|
| GENERAL FUNDS | 250,000 | 1,167,924 | 175,000 | 95,000 | 5,520,723 | 139,450 | 130,125 | 16,714,044 |
| FEDERAL FUNDS | 750,000 | 3,503,774 | 525,000 | 285,000 | | 418,350 | 390,375 | 33,579,963 |
| OTHER FUNDS | | | | | | | | |
| TOTAL | 1,000,000 | 4,671,698 | 700,000 | 380,000 | 5,520,723 | 557,800 | 520,500 | 50,294,007 |

| POSITIONS: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GENERAL FTE | | | | | | | | |
| FEDERAL FTE | | | | | | | | |
| OTHER FTE | | | | | | | | |
| TOTAL FTE | | | | | | | | |

PRIORITY LEVEL:

8

State of Mississippi
Form MBR-1-03A

**PROGRAM DECISION UNITS**

MDHS - Division of Family and Children's Services                    1 - Division of Family & Children's Services
    AGENCY                                                                                    PROGRAM NAME

| | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|
| | FY 2010 Total Request | | | | | | | |
| **EXPENDITURES:** | | | | | | | | |
| SALARIES | 47,042,471 | | | | | | | |
| GENERAL | 9,897,781 | | | | | | | |
| FEDERAL | 37,068,099 | | | | | | | |
| OTHER | 76,591 | | | | | | | |
| TRAVEL | 6,024,712 | | | | | | | |
| GENERAL | 2,065,907 | | | | | | | |
| FEDERAL | 3,958,805 | | | | | | | |
| OTHER | | | | | | | | |
| CONTRACTUAL | 23,640,458 | | | | | | | |
| GENERAL | 12,371,375 | | | | | | | |
| FEDERAL | 11,178,024 | | | | | | | |
| OTHER | 91,059 | | | | | | | |
| COMMODITIES | 877,003 | | | | | | | |
| GENERAL | 273,231 | | | | | | | |
| FEDERAL | 603,772 | | | | | | | |
| OTHER | | | | | | | | |
| CAPITAL-OTE | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| EQUIPMENT | 1,511,222 | | | | | | | |
| GENERAL | 494,097 | | | | | | | |
| FEDERAL | 1,017,125 | | | | | | | |
| OTHER | | | | | | | | |
| VEHICLES | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| WIRELESS DEV | | | | | | | | |
| GENERAL | | | | | | | | |
| FEDERAL | | | | | | | | |
| OTHER | | | | | | | | |
| SUBSIDIES | 88,615,564 | | | | | | | |
| GENERAL | 28,912,896 | | | | | | | |
| FEDERAL | 55,852,260 | | | | | | | |
| OTHER | 3,850,408 | | | | | | | |
| TOTAL | 167,711,430 | | | | | | | |

**FUNDING:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GENERAL FUNDS | 54,015,287 | | | | | | | |
| FEDERAL FUNDS | 109,678,085 | | | | | | | |
| OTHER FUNDS | 4,018,058 | | | | | | | |
| TOTAL | 167,711,430 | | | | | | | |

**POSITIONS:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GENERAL FTE | 246.00 | | | | | | | |
| FEDERAL FTE | 956.00 | | | | | | | |
| OTHER FTE | 2.00 | | | | | | | |
| TOTAL FTE | 1,204.00 | | | | | | | |

**PRIORITY LEVEL:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
(To Accompany Form MBR-1-03)

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

I.    **Program Description:**

The Division of Family and Children's Services (DFCS) offers protective services to children and youth; provides foster care and adoption placement services for children in its custody; and conducts educational and prevention activities for individuals and families who display or are at risk of developing behavior patterns associated with abuse and neglect.

**PROTECTION:**

The Protection Unit is responsible for the Child Abuse/Neglect 24-Hour Reporting Hotline; Child Abuse/Neglect Central Registry; Foster Care Review; Coordinating Administrative Fair Hearing Process; Coordinating MDHS Child Fatality Review Team; Coordinating Programmatic Aspect of the Child Welfare Training Institute; Coordinating and Researching Handling of Complaints; and Writing policies/procedures, and provide technical assistance to Child Protective Services and Family Preservation.

**Child Protection Services** – DFCS social workers investigate reports involving children alleged to have been abused and/or neglected in private home settings or in MDHS licensed facilities.  During FY 2008, DFCS received 35,145 reports of suspected child abuse and neglect.  The total number investigated was 18,300, which is an average of 1,525 reports per month.

**Child/Adult Abuse & Neglect Hotline** – DFCS operates a Child/Adult Abuse and Neglect Hotline at the state level that provides 24-hour, seven days a week confidential reporting of abuse/neglect.  During FY 2008, there were 11,249 calls received on the Hotline.

**Child Abuse/Neglect Central Registry** – DFCS maintains a central registry of perpetrators of abuse and neglect who have been identified through "evidenced" investigations by DFCS. Since July 1, 2002, listing of an individual's name on the MDHS Central Registry requires criminal prosecution or a listing by the Youth Court Judge.  The names of prospective applicants for employment in a child related field, as well as foster and adoptive parents, are checked against the registry free of charge to child care providers and placement organizations.  During FY 2008, there were 56,237 names checked through the central registry.

**Child Fatality Review** – An MDHS Child Fatality Review Team reviews cases of child fatality investigations conducted by MDHS-DFCS. The overall goal is to decrease the number of child fatalities related to child abuse and neglect, as reported to MDHS-DFCS. The objectives are to (1) review final investigations of child fatalities investigated by MDHS; (2) make recommendations to the Division Director, as deemed necessary; (3) make recommendations to the Program Improvement Plan (PIP) workgroups, in regard to changes in policy, procedures, practice and legislation, when necessary by the team or as directed by

10

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

the MDHS/DFCS Executive Director or Administrative staff; and (4) provide an Annual Report of findings, recommendations and determinations to the DFCS Division Director for review and inclusion in the Title IV-B Plan. The review team is comprised of DFCS State Office staff from the Placement Unit (Adoption, Foster Home Licensure, Facility Licensure); Protection Unit (Child Protective Services, Family Preservation); and Training. In addition, supervisory and administrative reviews continue to take place on incidents of child deaths which are investigated by the agency.

MDHS is represented on Mississippi's Infant Mortality Task Force via the Protection Unit's Director. The requirements for CAPTA have been met through this means.

**Family Preservation** – The Family Preservation Services (FPS) Program is 75% federally funded with a 25% state match with the Promoting Safe and Stable Families Grant. It is also 100% federally funded through the Temporary Assistance to Needy Families Fund (TANF). This program is an intensive home-based program which provides therapeutic services to families whose children have been targeted for removal because of abuse or neglect. Each family receives 20 weeks of therapeutic intervention which is approximately 150 days of service per family. They also receive 1-2 days of follow-up contact every three months up to a year after termination.

**Foster Care Review** – All Children in the custody of DFCS must have a case review, including a county conference, within every six month period of custody. The purpose of these reviews is to expedite the goal of moving children out of foster care and into homes intended to be permanent. Such permanency may be achieved by reunifying foster children with their parents, placing them with relatives, or by placing them with adoptive families. The review conference includes items for discussion which detail what the agency staff must do and what the child's parents must do to achieve the permanency plan for each individual child in custody.

During the course of the review, the Foster Care Reviewers report issues of concern that may affect the care the child receives while in state's custody. These issues of concern are reported to the Foster Care Review Program Administrator Senior who then provides a written report of the issues to the Family and Children's Services Division Director via the Protection Unit Director. The Division Director then addresses these issues with the Regional Director responsible for the county where the issues are a concern. During FY 2008, the Foster Care Review Program conducted 4,274 county conferences and case reviews statewide.

The Review instrument, initially designed to assess issues addressed in the Federal Review related to safety, permanency, and well being of foster children, was revised to gather data that will more accurately reflect areas needing improvement in order to comply with federal and agency mandates which resulted from the Child and Family Services' Review in 2004.

11

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**          **Department of Family & Children's Services**
Agency                                                                        Program

The added notations of instructions and definitions will not only aid the Foster Care Reviewer during the review process but can also assist the county staff in uniformity of case practice and presentation. The resulting reports indicate trends that are significant to the quality of casework and the ultimate results of safety, permanency and well being for our foster children and their families.

Statistical results from this report point to obvious strengths, as well as areas that may need improvement. The intent of this report is to provide statistical information for Senior Management to utilize that is relevant to the particular needs of each program or region of the state.

The Child and Family Services' Review in February 2004 pointed out that the Foster Care Review Program in Mississippi is a strength that is working well.

**TRAINING AND STAFF DEVELOPMENT:**

The MDHS Training Program currently provides Intensive Training for all new MDHS Social Workers and Child Protection Specialists. The Intensive Training curriculum incorporates the Mississippi Automated Child Welfare Information System (MACWIS), Best Practices, and County Conferences conducted by the Foster Care Reviewers. The Intensive Training curriculum is continuously being updated to reflect state and federal mandates, agency policy and practice changes.

On the Job Training is provided to the new social workers and child protection specialists in addition to the four weeks of Intensive Training. This on-the-job training includes targeted training on practice and policy, assessment of the family's strengths, and risk to the child, which include the use of the Best Practices tools, case planning in all cases, and working with sexually abused children and their families. On-the-job training lasts for six weeks, and alternates with the four weeks of Intensive Training. The Intensive Social Worker training is currently being taught every other week. The Training Program is able to graduate 18 social workers and child protection specialists in ten weeks.

The Training Program continues to be involved in assisting all DFCS staff state-wide in the on-going use of the Mississippi Automated Child Welfare Information System (MACWIS).

The Training Program staff worked closely with the Administration Unit to provide an updated financial and clerical training this past year to all the Area Social Work Supervisors and bookkeepers.

The Training Program will participate in the Mississippi Conference on Child Welfare (MCCW). The Training Program will be able to benefit from attending the workshops offered at the conference this year. Each year this conference provides training on the most

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

current information to Area Social Work Supervisors (ASWS) and Regional Directors (RD) regarding innovative programs and services, and to further promote and encourage the growth of the state-wide community-based network. The goal of the conference is to maintain a constant illustration of community partnerships through the examples provided by the workshop presenters and to provide information needed to successfully guide the children in our lives.

Safety in the field is increasingly an important issue for workers. The Training Program is responsible for overseeing the Worker Safety Committee. The Worker Safety Committee is planning for the Fifth Annual *Social Worker Safety Awareness Month* to be held in July 2008. In prior years, the DFCS staff celebrated Social Worker Safety Awareness Month each year in the month of July by holding a kick-off campaign at the State Office Building in Jackson.

Recruitment and retention of workers for the DFCS continues to be an issue. The Training Program is involved in various activities and efforts to recruit new workers and to provide community awareness about the programs and services provided through MDHS. The Training Program participates in Career Fairs sponsored by the State Universities, Community Colleges and the Governor's Job Fairs. The Training Program staff hosts a display booth where they distribute brochures pertaining to the Division's employment. These displays are also exhibited at various conferences in and out of state.

The Training Program has been involved in the planning of the Southern Christian Services' Annual *"Lookin' to The Future"* Conference, which will be held in conjunction with the MCCW in July 2008. Approximately 30 of our foster teens attend this conference annually, along with foster parents licensed through the Agency, and social workers from all area agencies.

The Training Program staff was involved in the implementation of the Program Improvement Plan (PIP) by participating in focus groups, addressing safety, well-being, permanency, and several systemic factors.

The Training Program continues to develop a "library" of video tapes. Brochures, articles, books, and computer resources about various subjects such as family group conference, strength based assessment, child development, sexual transmitted diseases, various medical conditions, special needs of foster children, behavioral management techniques, adolescent issues, and numerous other issues relevant to the field staff confronting these issues on a daily basis.

The Training Program staff has been involved in various speaking engagements related to child and/or venerable adult abuse and neglect. These include speaking to various schools, day care programs, Head Start Programs, hospice programs, retirement centers, medical

13

PROGRAM NARRATIVE
**Program Data Collected in Accordance with the Mississippi Performance Budget and
Strategic
Planning Act of 1994**
(To Accompany Form MBR-1-03)

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

centers, and health departments.

The Training Program participates on advisory committees such as the Child Fatality Review Board, the Director's Advisory Committee on Permanency Planning, and Strategies to Assist Independent Living Skills.

The Training Program staff continues to provide special assistance to the MACWIS Unit and other units within the division to ensure continuity of training for staff.

## ELIGIBILITY:

The DFCS Eligibility Unit provides initial and ongoing eligibility determination and authorization of foster care board payments and Medicaid for more than 3,200 children in MDHS custody. The primary function is to maximize the Title IV-E funding to support Foster Care and Adoption Assistance placements. This effort reduces the utilization of capped federal and state funds.

## PREVENTION:

DFCS Prevention Unit manages the Child Abuse Prevention and Treatment Act Grants (CAPTA), Promoting Safe and Stable Families Act Grant (PSSF) and the state funded Children's Trust Fund.

**Community Based Child Abuse and Prevention Grant** – provides respite services through two (2) providers. These services included respite for pre-school children in a school setting, domestic crisis care respite, and in-home respite care for children with disabilities, chronic or terminal illness or who are at-risk of family violence, neglect, or abuse.

**The State Basic Child Abuse and Neglect Prevention Grant** –funds two (2) subgrantees to provide programs focusing on prevention services to high risk families, respite care, and supervised visitation. These subgrantees offer various programs and services to children of single parents including: resource referrals, parent education, one-on-one case management, home based instruction, supervised visitation, Communication of Parent Effectiveness Skills (COPES), parent aides, teen parent support, support groups, community education, and counseling.

**Children's Justice Act (CJA) Grant** – funds two (2) subgrantees to improve the handling of child abuse cases in the court system and reduce the trauma to children involved in these cases. These grants are accomplishing this mission by expanding Multi-Disciplinary Child Abuse Review Teams (MDT) into each of the twenty-two (22) judicial districts to create a statewide system. The CJA funds are designated to focus on forensic interviewing skills development to further the provision of specialized training in child abuse investigation. This training is offered to MDHS staff and law enforcement investigators serving on teams.

14

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**          **Department of Family & Children's Services**
**Agency**          **Program**


**Mississippi Children's Trust Fund** – has been utilized to fund public awareness campaing surrounding convicted sexual predators.  This public awareness campaign included having billboards up to raise awareness of sex crimes against children.  The Children's Trust Fund also supports the Month of April has Child Abuse Prevention Month and the Mississippi Conference on Child Welfare.

**Families First Parent Resource Centers (FFRC)** – are located statewide and provide a multitude of services.  Many of the FFRC are providing services. funded through other resources, but DFCS has charged them with implementing the following: healthy marriage initiatives, fatherhood initiatives, abstinence, and effective parenting skills, resource referrals, and to provide information to families and children within their local community.  There are currently twenty-eight (28) FFRCs funded through the Temporary Assistance to Needy Families (TANF) grant and six (6) funded through the Promoting, Safe and Stable Families grant (PSSF).  In FY 2008, the FFRC will be transitioning to the Division of Economic Assistance which is another division under the umbrella of MDHS.

**Promoting, Safe and Stable Families Grant and Social Services Block Grant** – provides for post-adoption services with Southern Christian Services and Harden House Adoption Program.  The goal of this project is to provide formalized and structured assistance to families and children who have been adopted, with emphasis placed on special needs children.  A training component is included to provide training to families where adoption has occurred.  Promoting Safe and Stable Families grant also supports the Family Preservation and Intensive In-Home/Intercept program provided by Mississippi Children's Home Society and Youth Villages.

**PLACEMENT:**

**Adoption** – MDHS is the designated agency to establish procedures for processing adoptions in the state of Mssissippi. During FY 2007, the Adoption Unit placed  334 children into adoptive homes, 955 Resource Home studies were assigned, and 91 families were approved. There were 526 children in the custody of the Department who were freed for adoption with a plan of adoption effective July 2008.

Adoption Unit staff are located across the state. Each of the seven regions are assigned a Resource-Area Social Work Supervisor (ASWS) and licensure staff. They are responsible for recruitment of Resource Families, training of Resource Parents, and for the completion of home studies and background checks of all Resource Families. The Resource ASWS is responsible for making adoptive placements and supervising those placements until finalized.

The State currently has 1143 licensed Resource Homes formerly known as foster/adopt homes. The Licensure staff assigned to the Resource ASWS are required to complete home

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and**
**Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**              **Department of Family & Children's Services**
                        **Agency**                                                  **Program**

studies for Resource Families, as well as recruit, train, license, and monitor activities within the home. The licensure staff will also update any changes in the Resource Home which would include: closures and/or reevaluations every two years of the Resource Home. During this period, 53 new foster/adopt were approved and 25 foster families were closed.

**Adoption Assistance** – Adoption Assistance provides monthly maintenance payments for eligible special needs children who have been legally adopted. Currently, there are 1857 children receiving adoption assistance benefits, 1165 are receiving IV-E/Federal funded benefits and 690 CWS/State funded benefits. The Adoption Unit serves children with Mississippi Medicaid who were adopted in this state as well as in other states.

**Adoption Interstate Compact** – The Interstate Compact is the central point for all requests for transfer of supervision for potential adoptees, and international adoption approval requests. During FY 2008, there were 269 ICPC adoption cases handled. There were 198 international adoptions processed for adoptive purposes.

**Comprehensive Residential Services** – This program provides residential care and treatment for foster children who have physical, mental and emotional disabilities. Currently, this program offers therapeutic foster care and therapeutic group home services as well as intensive in-home services. This program is serving approximately 313 children. We no longer contract for any out-of-state residential services. No residential treatment programs are funded by MDHS at this time. All residential treatment is funded by Medicaid. Effective planning and negotiating has reduced the number of children served in residential treatment. Comprehensive Therapeutic care services were contracted for a total of $72.

**Foster Care** – Foster care provides temporary care and services for children who must be separated from their families due to neglect, physical abuse, sexual abuse, and exploitation. As of June 30, 2008, there were 3,493 children in MDHS custody who received foster care services. This represents a slight decrease from the previous year. These children are placed in licensed foster homes, therapeutic foster homes, group homes, residential treatment facilities, or with relatives. Most children in foster care are placed in foster homes in the state. $17,142,627 in board payments was made to foster parents in SFY2008. In addition to these board payments which provide for the basic care for a child, DFCS also provides initial clothing; medical; dental including orthodontic, and psychological services not paid by Medicaid; and other necessary items needed by the children in MDHS custody. These services are paid through a combination of local county money (HB512), state, and federal funds.

Foster youth ages 14-20 regardless of their placement who attend the Annual Foster Teen Conference are eligible to receive a stipend of Two Hundred Thirty ($230) dollars. Two Hundred ($200) dollars of the amount is used to purchase clothing and personal incidentals for the four days of the conference and thirty dollars ($30) is used as spending money for

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

meals while traveling to/from conference, snacks and other items while on the field trip/outing sponsored by the conference. Funds for this service are paid through the John H. Chafee Foster Care Independent Living Federal Grant. DFCS realized the importance of all children receiving new clothes to begin the new school year, for the past five years each school age foster child (ages five and up) has been provided a special allowance of two hundred dollars ($200) to purchase back-to-school clothing. The funding source for the clothing allowance is through State and Federal Funds.

**Independent Living** – Independent Living Services are provided to foster adolescents, ages 14 to 21. Presently, there are approximately 1,037 teens in this age group, with 995 participating in the program. These services are designed to help prepare teens to live on their own as they leave the custody of the state. As teens continue to enter the program, they are given an assessment to determine the youth's strengths and needs. The Independent Living Assessment/Intake Plan consists of nine components that will be necessary for teens to achieve self-sufficiency. The components are modified as needed to meet the needs of the 14 and 15 year old youth. Services are being provided statewide and are covering all of Mississippi's Congressional Districts.

The state is divided into nine regions and there is an Independent Living Specialist assigned in each region. Two of the specialists are Senior Specialists. They have the responsibility of coordinating the North and the South regions. With the Chafee Independent Living Federal grant we were able to add an Independent Living After-Care Specialist to the contract with the agency who provides our independent living services. The After-Care Specialist is responsible for completing the exit interviews with youth prior to their departure from the foster care system, sending out surveys, develop/build the After-Care Program, and tracking the data collected from returned after-care surveys. The After-Care Specialist is located in the Central Office in Jackson.

Monthly retreats continued to be held at various state parks in Mississippi and an Annual Teen Conference is held on a community college or university campus. We continue to host two Leadership Retreats each contract year. These retreats were created so that youth could assist with planning activities, developing materials, and providing input for program changes and improvement. We continue to provide services to 14-15 year-old youth as well as providing services for up to six months to youth who are leaving custody/have left custody from the age of 18-21 years old. With younger children in care, we continue to rely on our foster parents to assist with the daily living skills.

We are currently collaborating to contract with our state universities to provide training to adoptive and foster parents which will help guide them in their teaching of the youth of all ages in their homes about self-sufficiency issues. We also continue to coordinate efforts with the National Resource Center For Youth Development as needed for assistance with issues concerning our foster youth. As a result of our collaborative efforts with the Jordan Institute

17

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

| | |
|---|---|
| **Mississippi Department of Human Services**<br>Agency | **Department of Family & Children's Services**<br>Program |

in the development of the Independent Living Curriculum, our staff is designed to train adults who work with foster teens. A complete cycle of the Interdependent Living Training has been conducted with the DFCS Staff.

In compliance with the John H. Chafee Foster Care Independence Act, we have made benefits and services available to Indian children in the State on the same basis as other children. Currently there are two Native American children, ages 14-21, in care. We continue to extend an invitation to have two representatives from the Band of Choctaw Indians serving on the S.A.I.L.S. (Strategies for Accessing Independent Living Skills) Advisory Committee.

Funds for Independent Living services are through the John H. Chafee Foster Care Independent Living Federal Grant. This grant requires the state to provide a 20% match in order to draw down the funds. The current budget constraints have made it difficult to come up with the match. Due to the increase in the ages and number of children being served in this program, additional staff is needed.

**Chafee Educational and Training Vouchers Program** – The Chafee Educational and Training Program, enacted in 2001, provides resources specifically to meet the education and training needs of youth aging out of foster care. This program makes vouchers of up to $5,000 per year available to eligible youth attending institutions of higher education, as defined in Higher Education Act of 1965. Implementation of the Educational and Training Vouchers program will assist Mississippi in strengthening the meager financial assistance program currently in place. It will also provide the needed financial assistance to youth who grow up in foster care and reach college age without the financial resources or even the hopes of going to college. Many foster youth and former foster youth have attempted to pursue higher education on their own, but found themselves consumed with the additional financial demands of school, along with trying to meet their own basic needs; they are forced to drop out of school before attaining a college degree.

**Interstate Compact Services** – The Interstate Compact on the Placement of Children (ICPC) provides out-of-state placement and supervision of dependent children. One of the major purposes of the ICPC is to protect children from going into a dangerous or inadequate situation across state lines. During FY2008, there were 580 ICPC cases handled either for placement of children from other states into Mississippi or placement of Mississippi children in other states with relatives. This number includes closures, approvals, Regulation 7 Priority Placements (expedited referrals that must be completed in 20 workdays), disruptions and residential treatment facility placements. ICPC is essential in minimizing the risk of children being placed in unsuitable or deteriorating placements through home evaluations, supervision and progress reports. The ICPC Unit handles a tremendous amount of mail, cases, telephone calls, ICPC Adoptions, and the daily input of cases in MACWIS computer system.

**Interstate Compact on Juveniles** – Interstate Compact on Juveniles (ICJ) was transferred

18

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**
Agency

**Department of Family & Children's Services**
Program

from the Division of Youth Services to the Division of Family and Children's Services this past year. This service is to provide welfare and protection of juveniles and the public. The purpose is accomplished through the cooperative supervision of delinquent juveniles on probation or parole, return of runaways, absconders and escapees, return of juveniles charged as delinquent, and additional measures which any two or more party states may find desirable. Since ICJ was attained by DFCS 1,350 responses, closures, and transports have occurred.

**Licensure** – The Licensure Unit is responsible for the licensing Foster/Adopt Homes, child placing agencies, and residential child caring facilities. Specialized staff was designated for this unit to assure appropriate monitoring and supervision for licensed homes and facilities. Currently, there are 38 licensed child placing facilities, 51 licensed residential child caring facilities, and 15 emergency shelters. During this period, three shelters, one child placing facility, and seven new residential facilities were approved. Four residential facilities and three emergency shelters were closed. There are four new residential facilities and three child placing agencies pending approval.

The State currently has 1,143 licensed foster homes. During this period, 53 new Resource Families were approved and 25 foster homes were closed. The Licensure staff for Resource Families is responsible for recruiting, training, licensing, monitoring activities within the home, and completing reevaluations every two years.

**Permanency Planning** – Permanency means that a child has a safe, stable home with love, acceptance and a nurturing care giver where a child's basic needs can be met to grow into a happy, healthy and productive adult. Permanency is achieved when a child is returned to and protected within his or her own home with rehabilitated parents, with extended family members through durable legal custody, or adoption, and when a child is adopted by non-relatives. The agency strives to prevent foster care from being a way of life for children in custody through the creation of various techniques to assist case workers in achieving permanency for children in custody. The formation of the Director's Advisory Committee on Permanency Planning (DACOPP) to review the permanency plans of children in foster care and to assess the timeliness and appropriateness of cases being referred for Termination of Parental Rights (TPR) is one technique. During FY 2008, this committee reviewed cases involving 59 children.

A permanency and concurrent plan is identified for every child who enters custody. The case worker does this through the concurrent permanency planning concept to reduce delays in achieving timely permanency for a child by working on two separate plans at the same time, just in case the primary plan is not achieved, the alternate plan can be accomplished without further delays. Case reviews are being conducted more frequently to identify family strengths and weaknesses and barriers to achieving permanency. A specific focus is being placed on children who have been in custody for 15 months or longer. Once a case review has been

19

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and**
**Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**         **Department of Family & Children's Services**
**Agency**                                          **Program**

completed on a child who has been in custody for 15 months or longer, the case worker must submit a TPR referral or a court order citing the compelling reasons why TPR would not be in the child's best interest.

During Fiscal Year 2008, 367 case reviews were completed on children who had been in custody 15 months or longer. These reviews were followed up by TPR referrals. A total of 387 children were referred to the Attorney General's Office to have parental rights terminated. Case workers are assisted in conducting diligent searches to locate biological parents, absent fathers and interested relatives during the first two months after a child enters custody. The sooner the agency begins planning the sooner the child is placed in a permanent, safe living arrangement.

Budget constraints continue to have a great impact on the number of TPR referrals received from the county. As a direct result, TPR packets are not being processed in a timely manner, thus increasing the number of children lingering in foster care. Once the TPR packets are received and referred to the Attorney General's Office, there is a delay in receiving information concerning the petitions and judgments from the attorneys. Increasing the number of attorneys being utilized by the AG's office would eliminate this problem and a child would be eligible to be adopted and receive permanency sooner.

**Refugee Resettlement Programs** – Mississippi coordinates and provides services for three groups of refugees:  Unaccompanied Refugee Minors, refugee families or individuals who resettle or migrate to our state, and elderly refugees, age sixty and above.

Unaccompanied Refugee Minors (URM) are children who are separated from both parents and are not being cared for by an adult who, by law or custom, is responsible to do so. In resettlement terms, URMs are children under age 18 who are resettled alone in the United States, without a parent or a relative able to care for them. At the beginning of FY2008, there were approximately 22 Unaccompanied Refugee Minors in Mississippi with 22 remaining at the end of the fiscal year.  These youth consist of a portion of the "Lost Boys of Sudan" and some Haitian youth. The State of Mississippi is one of only ten core sites around the United States who resettle URM youth.  They are provided services through a contract with 100 % Federal funds.

Minors are placed in foster care, group homes, or independent living arrangements appropriate to the youth's developmental needs. Services available through these programs include:

- financial support for housing, food, clothing and other basic necessities
- medical care and mental health services
- intensive case management by a social worker

20

**PROGRAM NARRATIVE**
<u>Program Data Collected in Accordance with the Mississippi Performance Budget and
Strategic
Planning Act of 1994</u>
(To Accompany Form MBR-1-03)

<u>Mississippi Department of Human Services</u>          <u>Department of Family & Children's Services</u>
Agency                                                    Program

- independent living skills training (consumer/budgeting skills, housing, food preparation, social and legal systems, transportation, education, community resources, health and sexuality)
- education/English as a Second Language (ESL)
- tutoring/mentoring
- on-going family tracing, where possible
- cultural activities/recreation
- special educational services, where needed
- legal assistance in obtaining "Green cards"

Foster care placements are based on the individual needs of a particular child, with attention to cultural, linguistic, and religious background of a youth, special educational, and emotional needs; as well as the personality, temperament and opinions of the youth. Foster care parents are licensed based on the standards for the State of Mississippi, the Department of Mental Health, and receive on-going training in child welfare matters. Foster care parents receive special training on the adjustment needs of refugee youth.   Youth who enter the United States prior to age 18 can remain in foster care/independent living until they complete high school or reach the age of 21 years old depending on emancipation guidelines for the State of Mississippi.

The other group of refugees that enter our country to resettle are allowed entrance according to the numbers set by the President each year.  Specific countries are allowed a certain number of entrants and usually the entire number allocated do not make it into the country. It must be established that the person is outside of the country of his/her nationality or in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself/herself of the protection of, that country because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

This fiscal year was still affected by many changes to the Mississippi Gulf Coast area and the refugee resettlement program.  Clients and providers alike were recovering from the damage caused by Hurricane Katrina.  Many refugees relocated due to the hurricane, but are returning as rebuilding takes place.  The provider also lost many of their employees due to budget restraints and illness.

Resettlement services using federal grant monies are aimed at strengthening refugee families and promoting employability within one year of resettlement in order to achieve economic self-sufficiency as soon as possible. Services can include employment services, including the development of a self-sufficiency plan, job orientation, job development, job referral, placement and follow-up; English language training; employability assessment, including

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and**
**Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

| | |
|---|---|
| **Mississippi Department of Human Services** | **Department of Family & Children's Services** |
| **Agency** | **Program** |

aptitude and skills testing; on-the-job training; skills recertification; case management; transportation, employability services; translation or interpreter services; and assistance in obtaining Employment Authorization Documents (EADs). Funds may not be used for long-term training programs such as vocational training that last for more than a year or educational programs that are not intended to lead to employment within a year.

Social adjustment services may include emergency services; health-related services, including referral to community resources and assistance in obtaining those services; and home management services. Other services may include assistance with the citizenship and naturalization process.

Elderly refugees, 60 years old and above that are located within the Catholic Diocese on the coast, are also provided services through a discretionary grant funded by the Office of Refugee Resettlement. These funds are available to provide assistance with hospital referrals, even assisting clients with interpreting doctor's instructions and explaining how to take medications prescribed by the doctor. The elderly are often assisted with paperwork concerning their citizenship. Referrals to the elderly regarding housing, jobs and even assistance with utility bills are also funded by this grant. Information about services for refugees is regularly available, orally and written in English, Vietnamese and Spanish.

The Refugee Resettlement Programs channeled through the MDHS are reimbursed 100% from the Federal government.

## MISSISSIPPI AUTOMATED CHILD WELFARE INFORMATION SYSTEM (MACWIS):

The MACWIS system is the result of the Title IV-E federal mandate that states provide increased specific data reports on children in state custody for Adoption and Foster Care Analysis and Reporting System (AFCARS) and National Child Abuse and Neglect Data System (NCANDS).

To assist states in meeting these reporting requirements, federal dollars were made available to states to develop or enhance their child welfare information systems. Mississippi made the decision to develop a new automated system rather than try to enhance the current antiquated system that was designed in 1977. After extensive planning and approval of plans by the federal government, MDHS began design and development of its information system with a contractor. MACWIS was implemented statewide in June 2001. It has increased the efficiency and effectiveness of the work of the division from the initiation of an investigation referral through the elimination of most services for all families and children that are served. It has done this through the elimination of most paper documentation that consumes staff time and resources; it provides for quick access of data across the state; and allows for more accurate planning of casework in all counties.

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and**
**Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**    **Department of Family & Children's Services**
Agency                                            Program

Since MACWIS was implemented in June 2001, there has been a tremendous drop in staff. This decline in staff has resulted in the system not being used as it should. In a survey completed by staff, the majority of the staff loves the system and thinks it will be the best resource DFCS has to offer in protecting children and families. But, until more staff is acquired to enter data into the system and to support the ongoing operation of the system, we will never know the full potential of the system.

In December 2002, Xtria, contractor with the Administration for Children and Families (ACF), conducted a site visit to determine if the State is on the right course in implementing a SACWIS system. The site visit was very comprehensive and included participation from federal, state and contractor staff. Xtria staff visited two (2) county locations and was very impressed with the system and robust system functionality.

In February 2004, ACF sponsored a SACWIS Review training. During the training, ACF discussed the "cry requirement" of SACWIS. This was very beneficial to the agency because it provided an` opportunity for the agency to make an assessment of where MACWIS rates in meeting federal compliance. It also provided an opportunity to address questions regarding outstanding issues.

In 2004, the MACWIS Advisory Team assessed that there are four (4) areas that need to be finalized for MACWIS to meet all federal requirements and they are: (1) Title IV-E Eligibility, (2) MAVERICS, METSS and Medicaid interfaces, (3) Foster Home Board Payments and (4) Adoption Assistance Payments. The Division is making Adoption Assistance Payments from MACWIS.

In 2005, Title IV-E Eligibility and Foster Home Board Payments were implemented. Eligibility re-determinations, PIP and SACWIS requirements are priority over any other change requests and/or enhancements.

**MACWIS Conversion**-DFCS is committed to improving the quality of care for children in the State's custody by creating a data system which will have improved accessibility, maintainability, extensibility, and most importantly be operated with reduced overall Total Cost of Ownership (TCO). By means of the Olivia Y. Settlement Agreement and Reform Plan, DFCS is mandated to implement numerous improvements to the processes utilized by this Division and the Division as a whole. These mandates will have a significant impact to the MACWIS system and will require significant changes to insure compliance.

DFCS is firmly committed to creating a robust plan for moving MACWIS through the modernization project. This project will be addressing tactical and strategic needs of the system. The key characteristics of this conversion include the following:
- A clear implementation plan to meet the compliance requirements of the Statewide

23

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**            **Department of Family & Children's Services**
                    **Agency**                                                    **Program**

Automated Child Welfare Information System (SACWIS) and the requirements of the Settlement Agreement and Reform Plan.

- Through an enterprise centric focus, common architectural elements such as security, availability, reliability, maintainability, and a consistent software development life cycle will make the system more easily enforced and governed.
- This conversion provides a cost effective architecture for this Division and also leverage and protect existing investments already made into the system.

**Independent Verification and Validation**-DFCS will have needed a vendor to provide Independent Verification and Validation (IV&V) services for the MACWIS system. In order to begin implementation of the MACWIS conversion, DFCS is required by the Administration for Children and Families to secure an IV&V vendor to guarantee that the appropriate and necessary changes are being made to the MACWIS system. The services will include: project planning and reporting; project estimating and scheduling; project organization; quality assurance; and system management.

**Mobility Project**-DFCS is working towards complete mobility for all Direct Service Workers (DSW) and Area Social Work Supervisors (ASWS) in order to increase productivity and ensure timeliness. Workers will have real-time MACWIS accessible via a web browser and data cards. This project will create the opportunity to make informed decisions with less delay in between cases. This project will also assist in reducing expenses by means of a reduction of need for office space and maximize revenue through more accurate and timely reporting of program metrics.

## OLIVIA Y. VS. BARBOUR SETTLEMENT AGREEMENT AND REFORM PLAN:

On January 4, 2008, the State of Mississippi reached a settlement agreement in the Olivia Y., et al. v. Barbour, et al. lawsuit filed by Children's Rights. The Settlement Agreement and Reform Plan (the "Plan"), requires DFCS to meet all the standards and outcome measures within five years or within any earlier interim timelines that are specified in the Plan. The Plan sets forth Administration and Management Standards regarding Agency leadership, Human Resources, Performance and Quality Improvement, Legal and Regulatory Compliance, Information and Management Use, Case Recordings, and Financial Management.

A requirement of the Plan is to evaluate and implement changes to DFCS' Foster Care Standards which include: screening and assessments, service planning and monitoring, child and youth permanency, child safety, child placement, developing and maintaining connections, physical and mental health care, education services, therapeutic services, worker contact and monitoring, transitional plans for independent living, case closing and aftercare, recruitment and retention of Resource Families and Therapeutic service providers, and durable legal custody.

24

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

| | |
|---|---|
| **Mississippi Department of Human Services** | **Department of Family & Children's Services** |
| Agency | Program |

Several outcome measures which need to be monitored and improved upon are: amount of time in order to reunify families, amount time required to finalize adoptions, the number of placement moves, and abuse, neglect, and maltreatment occurring in care.

In order for DFCS to meet these standards, it will require many additional resources which include but are not limited to the following:

- additional caseworkers-to lower caseloads
- additional supervisors-to lower supervisor to worker ratio
- additional training staff-to increase and improve training
- educational assistance-to meet the standard for educational requirements of supervisors
- additional administrative staff-more support staff is needed to improve all necessary processes

DFCS has also agreed to have a court monitor within the Division to demonstrate to the parties involved that the terms of the Plan are being met. The court monitor will have several staff members employed full time to measure the progress of DFCS. The court monitor will make periodic site visits to Mississippi to gather information and report to the court her findings.

By the end of the first implementation period in the Plan, DFCS will have to implement a Continuous Quality Improvement (CQI) system. DFCS must maintain a separate CQI system that can identify areas of needed improvement and require improvement plans in support of achieving performance targets, program goals, client satisfaction, and positive client outcomes. The CQI system is to monitor and evaluate the quality of social and human services provided by independent contractors and other provider organizations. It will have the responsibility of ensuring contractor remediation of any identified deficiencies.

**Council on Accreditation** – DFCS is required through the Plan to achieve accreditation of the Foster Care program through the Council on Accreditation (COA) within five years of the date of the Settlement Agreement and Reform Plan. COA is a nationally recognized accrediting organization from both public and private agencies. Achieving accreditation is a very rigorous and demanding process which consists of weekly technical assistance conference calls, multiple on-site trainings, various document submissions, and on-site county office visits.

The accreditation process incorporates all of the requirements made through the Plan in addition to the specified COA standards to achieve full accreditation for this Division.

25

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

| | |
|---|---|
| **Mississippi Department of Human Services** | **Department of Family & Children's Services** |
| Agency | Program |

**II.**    **Program Objective:**

1.    To provide for the protection of children;
2.    To provide protective services and support to families in their homes;
3.    To adequately care for children who are not able to remain in their homes;
4.    To reunite children with their family when possible;
5.    To find a permanent placement for those children who cannot return home.

**III.**    **Current program activities as supported by the funding in Column A-F (FY09 estimated and FY10 Increase/Decrease for continuation) of MBR-1-03 and designated Budget Unit Decisions columns A-F of MBR-1-03-A:**

(Column D) The Division of Family and Children's Services is requesting an increase of $7,120,392 for Relative Resource Providers (Kinship Payments) in Subsidies, Loans, & Grants. Effective July 2009, the Division is requesting to realign Relative Resource Provider board rates based on requirements of the Olivia Y. lawsuit settlement agreement. The rates are based on expenses such as housing, transportation, food, clothing and miscellaneous items (personal care items, entertainment, and reading materials), as well as broken down by age groups.

(Column E) The Division of Family and Children's Services is requesting an increase of $5,434,947 for Resource Providers (Foster Payments) in Subsidies, Loans, & Grants. Effective July 2009, the Division is requesting to realign Resource Provider board rates based on requirements of the Olivia Y. lawsuit settlement agreement. The rates are based on expenses such as housing, transportation, food, clothing and miscellaneous items (personal care items, entertainment, and reading materials), as well as broken down by age groups.

(Column F) The Division of Family and Children's Services is requesting an increase of $5,416,428 for Adoption Subsidy Payments in Subsidies, Loans, & Grants. Effective July 2009, the Division is requesting to realign Adoption Subsidy Payment board rates based on requirements of the Olivia Y. lawsuit settlement agreement. The rates are based on expenses such as housing, transportation, food, clothing and miscellaneous items (personal care items, entertainment, and reading materials), as well as broken down by age groups.

(Column G) The Division of Family and Children's Services is requesting an increase of $9,761,760 for Resource Provider (Board Payments) in Subsidies, Loans &Grants. Effective July 2009, the Division is requesting to realign Board Payment rates (shelter/therapeautic) based on requirements of the Olivia Y. lawsuit settlement agreement. The rates are based on expenses such as housing, transportation, food, clothing and miscellaneous items (personal care items, entertainment, and reading materials), as well as broken down by age groups. These rates have not been adjusted for inflation since 1999.

26

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**    **Department of Family & Children's Services**
**Agency**                                       **Program**

(Column H) The Division of Family and Children's Services is requesting a total increase of $5,651,863 in Salaries, $2,312,496 in Travel, $859,200 in Contractual Services, $143,200 in Commodities and $243,000 in Equipment. The Division of Family and Children's Services is requesting funding for the 137 PINs received in SFY 2009. Although, DFCS received 137 PINs it did not include the needed funding to be able to fill those positions. Therefore, DFCS is requesting the necessary funding to fill the 137 PINs in SFY 2010. This is the third year of an incremental request for new PINs over a three year period. These vacant positions are being requested to accommodate the increased workload/caseload we are experiencing based on current trends.

(Column I) The Division of Family and Children's Services is requesting an increase of $1,000,0000 in Contractual Services for MACWIS system upgrade. By means of the Olivia Y. Settlement Agreement and Reform Plan, DFCS is mandated to implement numerous improvements to the processes utilized by the Division as a whole. These mandates will have a significant impact to the MACWIS system and will require significant changes to insure compliance.

(Column J) The Division of Family and Children's Services is requesting an increase of $4,671,698 in Subsidies, Loans and Grants to expand the Family Preservation services by combining it with the Time-Limited Reunification Program. DFCS believes that by joining these two services it would assist with the following: reduction of the number of children entering into the State's custody; encourage the most appropriate service be selected to reduce the amount of time a youth remains in the State's custody; provide more accurate measurable outcomes and better data for statistical purposes to justify an increase in preventive services; and DFCS would be taking a more proactive course of action to decrease the number of children entering into the State's custody.

(Column K) The Division of Family and Children's Services is requesting an increase of $700,000 in Salaries to assist supervisors with obtaining advanced degrees. The Olivia Y. Settlement Agreement and Reform Plan now requires supervisors to possess advanced degreees.

(Column L) The Division of Family and Children's Services is requesting an increase of $380,000 in Salaries to upgrade 83 positions in the Family Protection Worker series and Family Protection Specialist series. The career ladder is a major component of our retention effort, so funding is requested for the career ladder of these positions.

(Column M) The Division of Family and Children's Services is requesting an increase of $5,520,723 in Contractual Services to meet requirements of the Olivia Y. lawsuit agreement. The Division is required to maintain a Federal Court Monitor. As part of the Plan, DFCS is also required to achieve accreditation of the Foster Care Program through the Council on Accreditation (COA) within five years of the date of the agreement. The COA is a nationally

27

**PROGRAM NARRATIVE**
**Program Data Collected in Accordance with the Mississippi Performance Budget and Strategic**
**Planning Act of 1994**
**(To Accompany Form MBR-1-03)**

**Mississippi Department of Human Services**                    **Department of Family & Children's Services**
**Agency**                                                     **Program**

recognized accrediting body for public and private agencies. The accreditation process is a rigorous one consisting of weekly technical assistance, multiple trainings, document submissions, and site visits. DFCS has many COA Standards that will have to be met in addition to those standards set forth in the Plan. The Division is also requesting the funds to pay make payment of Attorney Fees as stated by the Courts in the proposed settlement.

(Column N)  The Division of Family and Children's Services is requesting an increase of $557,800 in Equipment for the purpose of upgrading current staff's equipment. The current equipment is out-dated and beginning to malfuntion.

(Column O)  The Division of Family and Children's Services is requesting a total increase of $472,500 in Travel and $48,000 in Equipment to setup Regional Employee Training Centers. The ten-week training program which each employee must complete includes four weeks of intensive classroom training, plus six weeks of mentoring and on the job training. These training centers are vital for maintaining our employees.

IV.    **Additional program activities that will result from increased funding requested in Columns 13-16(MBR-1-03) and specified Budget Decision Unit columns (MBR-1-03-A):**

The Division of Family and Children's Services is not requesting funding for any additional programs.

V.    **New program activities that will result from increased funding requested in Columns 17-20(MBR-1-03) and specified Budget Decision Unit columns (MBR-1-03-A):**

The Division of Family and Children's Services is not requesting funding for any new activities.

28

## BUDGET NARRATIVE - FY 2010
### Justification for Increases and/or Shifts in Spending Authority

**Mississippi Department of Human Services**
**Agency**

**Division of Family & Children's Services**
**Program**

### Salaries:  Increase of $6,731,863

The Division is requesting an increase in Salaries of $6,731,863 to fund 137 PINs that were awarded in SFY 2009 but did not include the needed funding to be able to fill those positions. This is the third year of an incremental request of PINs over a three year period.  These new positions are being requested to accommodate the increased workload/caseload we are experiencing based on current trends.  These vacant positions will support the accreditation standards and lawsuit requirements.  The Division is also requesting an increase in Salaries for Advanced Degrees and Career Advancement of current employees.

### Travel: Increase of $2,784,996

The Division is requesting an increase in Travel of $2,784,996 for the additional staff that is being requested.  The ten-week training program which each employee must complete includes four weeks of intensive classroom training, plus six weeks of mentoring and on the job training. The usual travel costs (mileage, meals, and lodging) are expenses that were considered in this request.

### Contractual Services: Increase of $7,379,923

The Division is requesting an increase in Contractual Services of $7,379,923 for training of newly-hired employees.  The ten-week training program which each employee must complete includes four weeks of intensive classroom training, plus six weeks of mentoring and on-the-job training.

### Commodities: Increase of $143,200

The Division is requesting an increase in Commodities of $143,200 to purchase supplies for the additional staff positions.

### Equipment: Increase of $848,800

The Division is requesting an increase in Equipment of $848,800 for the replacement of outdated equipment for current employees.

### Subsidies, Loans, and Grants: Increase of $32,405,225

The Division is requesting an increase in Subsidies, Loans and Grants of $32,405,225 for the realignment of Kinship Payments, Foster Care Payments, Adoption Subsidy Payments, and Board Payments, effective July 2009.

**Ex. 1I**



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
## OFFICE OF THE GOVERNOR

November 17, 2008

To the Members of the Mississippi Legislature:

Pursuant to Miss. Code § 27-103-139, I transmit to you herewith my Executive Budget Recommendation for Fiscal Year 2010.

This is my sixth budget recommendation, but it is my first during a period of declining state revenue. Indeed, because of the severe shortfall, earlier this month I was required to make budget cuts of some $42 million for the current fiscal year, FY09.

It is my belief additional revenue shortfalls will occur before the end of this fiscal year, and, despite the possibility of additional collections of corporate income taxes delayed by federal hurricane disaster assistance efforts, more cuts may be needed during FY09.

This Executive Budget Recommendation is based on the FY10 revenue estimate approved by the Joint Legislative Budget Committee on November 11, 2008. This budget is balanced, according to that revenue estimate; however, I consider it likely the FY10 revenue estimate will be lowered by the time of the adoption of the sine die version in March 2009. Nevertheless, the revenue component of this budget is consistent with the current revenue estimate, as required by state law.

Both the national and the world economies are in recession, whether technically or not. Beginning with the housing collapse that followed the sub-prime crisis and greatly escalated by $4.00 gasoline this past spring, the healthy job increases and per capita income gains of the preceding three years gave way to an abrupt slowdown in residential construction and layoffs in homebuilding and in our automotive sector. Since late summer the downturn has spread across more of the general economy.

Additionally, some of our counter-cyclical sectors, like energy and defense contracting, appear less healthy than a few months ago. Our gaming industry has seen a decreased handle, with accompanying reductions in our gaming tax revenue. The collapse of commodity prices will not only adversely affect our farmers and their incomes, but will also reduce state oil and gas severance tax collections. Indeed, virtually every indicator points to decreasing state revenue.

Considering the contraction of many other nations' economies, there is every reason to expect this recession will not be as brief or shallow as were those of 1990-91 and 2000-01; rather it is prudent to anticipate and prepare for a longer, deeper economic retrenchment, such as that which began in the late 1970's and ended in late 1982.



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
## OFFICE OF THE GOVERNOR

While I am praying for the best, we should prepare for the worst. This budget anticipates two to four years of recession or slow growth, and uses the Rainy Day Fund (technically the Working Cash Stabilization Fund) accordingly.

Prudent, responsible budget policy practiced by the state since 2004 gives us maximum capacity to deal with decreasing revenue, as the Rainy Day Fund was filled to its statutory amount, giving us a balance of $378 million at the end of FY08.

This is a vast improvement over the balance my first year in office when the Rainy Day Fund had a balance of $22 million, of which $15 million was pledged to the Ayers settlement.

As you will recall, in FY04 (the last budget adopted before I became Governor) the state had a budget shortfall in excess of $700 million; that is, the state spent over $700 million more on recurring expenses than the state received in recurring revenue. It took half my first term to dig out of that hole, and I never want to see the state in a hole like that again.

We must avoid that fate by a combination of prudent spending reductions; appropriate revenue increases; and responsible use of only a portion of the Rainy Day Fund, keeping a reasonable balance for the needs in future years. Manageable spending cuts in FY10, coupled with conservative use of Rainy Day Funds, mean an ample Rain Day Fund balance to cushion against larger cuts in the following years.

The primary spending reductions in my FY10 budget generally coincide with the FY09 cuts imposed last week. For the most part departments and agencies that are reducing expenditures this year by two percent would be reduced an additional two percent in FY10.

Back to back two percent annual spending reductions are not severe; in the Musgrove Administration a number of departments and agencies were cut five percent in one year. Universities were cut seven percent, and state funding for community colleges was cut sixteen percent!

Still, a four percent cut over two years requires department and agency heads be given maximum flexibility to make the savings in ways that allow them to provide the most effective service to the state and its constituents. I ask the Legislature to join me in granting management the discretion to achieve the needed efficiencies.

Further, most departments and agencies have had healthy budget increases in recent years. All three levels of education - K-12, universities and community colleges – received record funding levels in my first four years, and all received record appropriations for FY09. Most other department and agencies are budgeted at very high spending levels, too.

The total of the combined cuts for FY10 is $87,141,124 as compared to actual FY09 appropriations.



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
### OFFICE OF THE GOVERNOR

As with the FY09 executive spending reductions some programs, like the MAEP program, are exempt or held harmless from the FY10 recommended reductions. A list is attached, and the lines are also noted in the budget spreadsheet.

Some programs, such as MAEP, National Board Certified Teacher funding and High School Redesign are held harmless as a matter of policy. Others, like the Ayers settlement, the Olivia Y foster care settlement, and similar litigation, are exempt because of court decisions. Debt service is exempt as a matter of law and contract.

Every department, including the Governor's office, is asked to make some savings, and there is no part of state government that cannot reduce spending without adversely affecting performance . . . none.

Pursuant to the recommendation of the Tax Study Commission I created earlier this year, this budget recommends increases in tobacco taxes. The twenty-four cents (.24) per pack increase in the current cigarette tax would put Mississippi's cigarette tax at forty-two cents (.42) per pack, essentially the same as the average of the tax now levied by Alabama, Arkansas, Louisiana, Mississippi and Tennessee.

This budget requires non-participating cigarette manufacturers (NPMs) to pay an additional tax of forty-three cents (.43) per pack. The purpose is to require them to pay in the same amount as those cigarette companies that pay Mississippi more than $100 million annually under the tobacco settlement reached in the nineties.

Further, there is an increase in revenue from smokeless tobacco by converting it to a volume-based tax like cigarettes.

These tobacco tax increases would generate some $80 million in additional revenue in FY10, and, if passed early in the Regular Session, about $13 million this fiscal year.

Tobacco tax increases are driven by health care policy, not budget policy, and I would welcome offsetting tax cuts. Indeed, this term I will propose tax cuts in greater amounts than these increases, as I'm committed to a net tax cut as proper budget policy.

The combined savings on expenditures and tax increases on tobacco yield $167 million to make up part of the differential with revenue. To make up part of the remaining difference, I recommend use of $84 million from the Rainy Day Fund, leaving a projected balance of over $292 million to alleviate future revenue shortfalls.

This budget may well have to be adjusted in FY10 by further reducing spending and by limited, appropriate further Rainy Day Fund use. Good policy dictates if revenue drops further below current estimates that conservative use of Rainy Day Funds is even more important, for continuing revenue



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
## OFFICE OF THE GOVERNOR

shortfalls indicate the recession will be deeper and the need for sufficient Rainy Day Fund balances in coming years will be even greater.

Among the budgets not cut in this budget is that of the Division of Medicaid. During my first term the number of Mississippians on Medicaid decreased from well more than 700,000 to fewer than 600,000. Part of the reason for the decrease was Medicare Part D, which led to the removal of most PLAD beneficiaries, as Part D gave them pharmaceutical coverage they had previously received from Medicaid. A larger number came off the rolls as net employment in the State increased by more than 60,000. That many more people working means tens of thousands become ineligible for Medicaid, for the right reason.

Conversely, rising unemployment during this international recession will mean more people will rely on Medicaid, and the Division of Medicaid team will have to work hard to manage spending to stay within the proposed budgeted level, which represents an increase in state funds of $41.3 million for FY10.

Since the summer of 2005 there has been a $90 million structural deficiency in Medicaid funding. The cause is a 2005 change in federal rules as to the eligibility of $90 million of payments (taxes) in the form of Intergovernmental Transfers (IGTs) by certain Mississippi hospitals as state match for federal disproportionate share hospital (DSH) payments.

As a result of Katrina, for most of three years federal disaster assistance payments for emergency health care were used to cover the shortfall. This year, after the Legislature failed to pass a bill to replace the $90 million, (the Senate passed SB 2013 to cover the gap, but the House passed no fair, permanent or sustainable plan) the federal agency that runs Medicaid, CMS, agreed it owed the State some $92 million, which it paid and which is being used to bridge the shortfall for FY09.

A fair, permanent, sustainable source of the $90 million is required for FY 10 and beyond, or Medicaid spending must be cut by $375 million (i.e., $90 million in state funds and $285 million in federal funds).

From 1993 to 2005 Mississippi hospitals gladly paid the $90 million in taxes (IGT) in order to maximize DSH payments to hospitals. Indeed, in 1993 it was the Mississippi Hospital Association that asked the Legislature to impose the tax, as it knew there was no way other than a provider fee to bring in the available federal funds.

And in 2001 the Mississippi Hospital Association asked the Legislature to impose another tax or provider fee on its members, a Gross Revenue Assessment, to maximize the amount of funds hospitals receive from another federal Medicaid program called UPL, or upper payment limit.

Nursing homes, like hospitals, pay into the provider fee system to maximize the federal funds available for Mississippi's Medicaid program. In fact, fully thirty percent (30%) or $1.2 billion of the state's Medicaid spending is generated by the provider fee system.



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
### OFFICE OF THE GOVERNOR

Last year, hospitals, which receive $6 in Medicaid payments for every $1 they would pay in if the $90 million tax is restored, first supported, then opposed restoration of the tax. In the Special Session the Senate passed SB 2013, which restored the $90 million in hospital taxes according to a formula devised by the Mississippi Hospital Association, by a vote of 41-7.

While Special Funds, such as the provider fees paid by hospitals and nursing homes, are not reflected in this budget, let me reiterate that I will ask the Legislature to reinstate this $90 million in hospital taxes during the Regular Session. Otherwise, Medicaid spending must be cut $375 million; or the $90 million Medicaid deficit created by giving hospitals this enormous tax cut, despite their getting the benefit of the disbursements and reimbursements previously generated by the provider fee, would have to be made up by spending cuts in other departments or agencies. For example, if tobacco taxes were used to fill the $90 million Medicaid deficit, then there would be an $80 million hole in the General Fund budget, to be made up by cuts to education, law enforcement, etc. Or Rainy Day Funds in the amount of another $90 million would have to be spent, with all the damage that would do to needed spending in future years.

There is no doubt the best course by far is to reinstate the $90 million in taxes hospitals paid gladly for thirteen years in order to get an additional $285 million in federal Medicaid payments. That will be my course.

A primary recommendation of the Tax Study Commission was to reduce the amount of taxes owed the state but not collected. To that end, we must improve our technology infrastructure. My budget provides a $15 million investment in FY10 for information technology improvements for the State Tax Commission to enhance its capacity to collect the taxes owed the State. This would be followed by another $15 million investment the next year. These investments in IT would begin paying off in FY11 and begin generating net revenue in FY12.

Over time the State needs to make additional, large investments to replace antiquated technology platforms that deliver services such as accounting, payroll and data storage, just to name a few.

Another of the very few new spending proposals in this budget is to fund the Mississippi Health Insurance Exchange. Our State has an unacceptably high rate of underinsured citizens, and the largest category is some 135,000 Mississippians who work for small businesses that do not offer employer-sponsored health insurance.

Last year I proposed this program as a way to make health insurance less expensive and easier to administer for small businesses and its employees. The bill passed the Senate 52-0, but the House failed to consider it. I will offer it again this year, and this budget contains $1.5 million for start-up funding.

This budget is conservative, prudent and realistic: It maximizes funding for our priorities while recognizing every department, even our highest priority – education – can make some savings.



**HALEY BARBOUR**
GOVERNOR

# STATE OF MISSISSIPPI
## OFFICE OF THE GOVERNOR

This budget is balanced not only between revenue and expenditures; it is also balanced in using Rainy Day Funds and tobacco taxes along with initial spending cuts to achieve a truly balanced budget. I recognize and ask others to recognize that any further reductions to predicted revenue will primarily be made up by reductions in spending. Hopefully, we won't have to cross that bridge in March or April when the Legislature enacts the actual FY10 budget and appropriations.

Sincerely,

Haley Barbour

STATEMENT I

GENERAL FUND

CALCULATED FUNDS AVAILABLE FOR FY 2010 APPROPRIATIONS

| | |
|---|---:|
| General Fund Cash Balance as of July 1, 2008 | $36,739,488 |
| Less:  Aid to Municipalities | ($750,000) |
| Projected Revenue for FY 2009 | $5,031,300,000 |
| Total Funds Available for FY 2009 | $5,067,289,488 |
| Less:   Total Budget for FY 2009 | |
|    Total General Fund Appropriations | ($4,965,017,011) |
|    Reappropriations & From and Afters | ($33,655,566) |
|    Transfer to Budget Contingency Fund | ($154,127,000) |
|    Projected Agency Additional Appropriations - From & After Passage | |
|      Attorney General - Judgments & Settlements | ($4,863,558) |
|      DFA - Cost Allocation - Due to Federal Government | ($1,480,843) |
|      DFA - State Building Insurance | ($8,000,000) |
|      Medicaid - Dialysis Transportation | ($1,200,000) |
|    Proposed Transfer to Working Cash Stabilization Fund | ($10,831,571) |
|    Projected Total Budget Revisions | $112,081,423 |
| Total Projected Budget | ($5,067,094,126) |
| Anticipated Lapse | $4,250,000 |
| Anticipated Budget Revisions in Lapse Period | ($3,419,961) |
| Total Estimated FY 2009 Ending Cash Balance | $1,025,401 |
| Less:  Transfer to Working Cash Stabilization Fund | $0 |
| Estimated FY 2010 Beginning Balance | $1,025,401 |
| Aid to Municipalities | ($750,000) |
| Projected Revenue for FY 2010* | $5,096,300,000 |
| Less:  2% Holdback | ($101,946,508) |
| Total General Funds Available for FY 2010 | $4,994,628,893 |
| Less:  Executive Budget Recommendation | (4,994,160,804) |
| Projected General Fund Balance as of June 30, 2010 | $468,089 |

* Net of $38M transfer to Health Care Trust Fund

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc/(Dec) | % Inc/(Dec) |
|---|---|---|---|---|---|---|---|
| Legislative | $25,502,444 | $26,075,417 | $24,604,400 | $0 | $24,604,400 | ($1,471,017) | -5.6% |
| | | | | | | | |
| **Judiciary & Justice** | | | | | | | |
| Attorney General's Office | 9,695,245 | 9,700,789 | 9,312,757 | 0 | 9,312,757 | (388,032) | -4.0% |
| Attorney General - Commission on Status of Women | 50,000 | 50,000 | 48,000 | 0 | 48,000 | (2,000) | -4.0% |
| Attorney General - Judgments & Settlements | 8,719,225 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| District Attorneys & Staff | 17,424,847 | 17,528,195 | 16,827,067 | 0 | 16,827,067 | (701,128) | -4.0% |
| Judicial Performance Commission | 379,941 | 380,241 | 365,031 | 0 | 365,031 | (15,210) | -4.0% |
| Supreme Court Services | 6,208,195 | 6,301,068 | 6,049,025 | 0 | 6,049,025 | (252,043) | -4.0% |
| Administrative Office of Courts | 1,358,821 | 3,943,681 | 3,785,934 | 0 | 3,785,934 | (157,747) | -4.0% |
| Court of Appeals | 5,127,570 | 5,130,570 | 4,925,347 | 0 | 4,925,347 | (205,223) | -4.0% |
| Trial Judges | 18,318,830 | 20,765,170 | 19,934,563 | 0 | 19,934,563 | (830,607) | -4.0% |
| Total Judiciary & Justice | 67,282,674 | 63,799,714 | 61,247,725 | 0 | 61,247,725 | (2,551,989) | -4.0% |
| | | | | | | | |
| **Executive & Administrative** | | | | | | | |
| Ethics Commission | 604,160 | 604,640 | 580,454 | 0 | 580,454 | (24,186) | -4.0% |
| Governor's Mansion | 722,731 | 723,031 | 694,110 | 0 | 694,110 | (28,921) | -4.0% |
| Governor's Office | 2,473,074 | 2,355,474 | 2,261,255 | 0 | 2,261,255 | (94,219) | -4.0% |
| Total Executive & Administrative | 3,799,965 | 3,683,145 | 3,535,819 | 0 | 3,535,819 | (147,326) | -4.0% |
| | | | | | | | |
| **Fiscal Affairs** | | | | | | | |
| Audit, Department of | 7,174,185 | 6,999,867 | 6,719,872 | 0 | 6,719,872 | (279,995) | -4.0% |
| Finance & Administration | 12,216,179 | 12,115,276 | 11,630,665 | 0 | 11,630,665 | (484,611) | -4.0% |
| DFA - State Building Insurance | 7,868,257 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| DFA - Cost Allocation - Amount due Federal Government | 1,638,104 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Gaming Commission | 3,780,711 | 3,785,319 | 3,633,906 | 0 | 3,633,906 | (151,413) | -4.0% |
| Tax Commission | 47,322,029 | 47,222,589 | 60,333,685 | 0 | 60,333,685 | 13,111,096 | 27.8% |
| License Tag Commission | 5,714,500 | 1,860,000 | 2,095,399 | 0 | 2,095,399 | 235,399 | 12.7% |
| Treasurer's Office, State | 637,515 | 638,807 | 613,255 | 0 | 613,255 | (25,552) | -4.0% |
| Treasurer's Office - Health Care Trust Fund | 102,699 | 102,367 | 98,272 | 0 | 98,272 | (4,095) | -4.0% |
| Total Fiscal Affairs | 86,454,179 | 72,724,225 | 85,125,055 | 0 | 85,125,055 | 12,400,830 | 17.1% |

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc/(Dec) | % Inc/(Dec) |
|---|---|---|---|---|---|---|---|
| **Public Education** | | | | | | | |
| Education, State Department of | 63,443,837 | 71,764,020 | 66,595,318 | 0 | 66,595,318 | (5,168,702) | -7.2% |
| National Board Certification | 23,397,048 | 20,546,184 | 20,546,184 | 0 | 20,546,184 | 0 | 0.0% |
| Educable Child | 14,065,000 | 13,200,000 | 12,672,000 | 0 | 12,672,000 | (528,000) | -4.0% |
| SDE - General Education | 720,432 | 720,432 | 691,615 | 0 | 691,615 | (28,817) | -4.0% |
| SDE - Buildings & Buses, Utilities, Debt Service | 16,000,000 | 16,000,000 | 16,000,000 | 0 | 16,000,000 | 0 | 0.0% |
| SDE - Supplies & Instr Materials | 6,194,875 | 7,000,000 | 7,000,000 | 0 | 7,000,000 | 0 | 0.0% |
| SDE - Textbooks | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| SDE - School Millage Reduction | 46,000,000 | 46,000,000 | 46,000,000 | 0 | 46,000,000 | 0 | 0.0% |
| SDE - Tech Prep Bond Debt Service | 3,200,662 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| MS Adequate Education Program (Excludes $10M PSBF OSF) | 2,197,152,735 | 2,197,233,362 | 2,175,518,083 | 82,535,000 | 2,258,053,083 | 60,819,721 | 2.8% |
| Vocational and Technical (FY 08 includes $27M for Comm Colleges) | 80,461,892 | 85,787,783 | 83,061,847 | 3,431,511 | 86,493,358 | 705,575 | 0.8% |
| High School Redesign - 21st Century Workforce | 5,000,000 | 13,000,000 | 13,000,000 | 0 | 13,000,000 | 0 | 0.0% |
| Chickasaw Interest | 13,880,990 | 12,088,983 | 13,004,818 | 0 | 13,004,818 | 915,835 | 7.6% |
| Schools for the Blind & Deaf | 12,296,159 | 12,066,206 | 11,715,331 | 482,648 | 12,197,979 | 131,773 | 1.1% |
| Subtotal K-12 Public Education | 2,481,813,630 | 2,495,406,970 | 2,465,805,196 | 86,449,159 | 2,552,254,355 | 56,847,385 | 2.3% |
| Educational Television Authority | 8,293,862 | 8,300,463 | 7,968,444 | 0 | 7,968,444 | (332,019) | -4.0% |
| Library Commission | 13,566,135 | 13,616,244 | 13,054,794 | 0 | 13,054,794 | (561,450) | -4.1% |
| Total Public Education | 2,503,673,627 | 2,517,323,677 | 2,486,828,435 | 86,449,159 | 2,573,277,594 | 55,953,917 | 2.2% |
| | | | | | | | |
| **Higher Education** | | | | | | | |
| IHL General Support | 391,469,141 | 388,220,334 | 344,691,521 | 28,000,000 | 372,691,521 | (15,528,813) | -4.0% |
| Ayers Settlement  (excludes $1 Mil OSF) | 25,700,000 | 25,700,000 | 25,700,000 | 0 | 25,700,000 | 0 | 0.0% |
| Subsidiary Programs - Consolidated excl. Exec. Office | 18,156,900 | 25,976,845 | 24,937,771 | 0 | 24,937,771 | (1,039,074) | -4.0% |
| Student Financial Aid | 29,876,773 | 30,377,373 | 30,101,902 | 0 | 30,101,902 | (275,471) | -0.9% |
| Executive Office | 7,819,573 | 7,299,523 | 7,007,542 | 0 | 7,007,542 | (291,981) | -4.0% |
| University Medical Center | 224,157,110 | 229,376,072 | 200,201,029 | 20,000,000 | 220,201,029 | (9,175,043) | -4.0% |
| University Medical Center - Rural Physicians Scholarship | 260,500 | 560,500 | 538,080 | 0 | 538,080 | (22,420) | -4.0% |
| University Medical Center - MS Organ Recovery Agency | 2,000,000 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Subtotal IHL | 699,439,997 | 707,510,647 | 633,177,845 | 48,000,000 | 681,177,845 | (26,332,802) | -3.7% |
| Community & Junior Colleges - Board | 7,169,142 | 7,769,062 | 7,458,300 | 0 | 7,458,300 | (310,762) | -4.0% |
| Community & Junior Colleges - Support | 231,156,523 | 245,784,045 | 215,477,683 | 20,475,000 | 235,952,683 | (9,831,362) | -4.0% |
| Subtotal Community & Junior Colleges | 238,325,665 | 253,553,107 | 222,935,983 | 20,475,000 | 243,410,983 | (10,142,124) | -4.0% |
| Total Higher Education (Excludes $1 Mil Ayers OSF) | 937,765,662 | 961,063,754 | 856,113,828 | 68,475,000 | 924,588,828 | (36,474,926) | -3.8% |
| | | | | | | | |
| **Public Health** | | | | | | | |
| Health Department | 56,991,852 | 51,514,961 | 52,547,477 | 390,000 | 52,937,477 | 1,422,516 | 2.8% |
| Health Department - SDE School Nurses | 2,550,000 | 3,300,000 | 3,300,000 | 0 | 3,300,000 | 0 | 0.0% |
| Health Dept - UMC Cancer Institute | 5,000,000 | 5,000,000 | 5,000,000 | 0 | 5,000,000 | 0 | 0.0% |
| Health Dept - AG Alcohol & Tobacco Enforcement Unit | 800,000 | 800,000 | 800,000 | 0 | 800,000 | 0 | 0.0% |
| Health Dept - UMC Comprehensive Tobacco Center | 650,000 | 650,000 | 650,000 | 0 | 650,000 | 0 | 0.0% |
| Health Dept - Regional Medical Center Trauma Care | 3,000,000 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Public Health | 68,991,852 | 61,264,961 | 62,297,477 | 390,000 | 62,687,477 | 1,422,516 | 2.3% |

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc/(Dec) | % Inc/(Dec) |
|---|---|---|---|---|---|---|---|
| Hospitals & Hospital Schools | | | | | | | |
| Mental Health Department - Consolidated | 265,356,575 | 278,480,866 | 267,341,631 | 0 | 267,341,631 | (11,139,235) | -4.0% |
| DMH Crisis Centers | 17,385,379 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Hospital & Hospital Schools | 282,741,954 | 278,480,866 | 267,341,631 | 0 | 267,341,631 | (11,139,235) | -4.0% |
| | | | | | | | |
| Agriculture & Commerce | | | | | | | |
| Agriculture & Commerce, Dept. of | 8,883,248 | 9,036,629 | 8,563,158 | 0 | 8,563,158 | (473,471) | -5.2% |
| Board of Animal Health | 1,394,868 | 1,699,319 | 1,631,346 | 0 | 1,631,346 | (67,973) | -4.0% |
| Fair Commission - Livestock Shows | 202,757 | 224,757 | 215,767 | 0 | 215,767 | (8,990) | -4.0% |
| Total Agriculture & Commerce | 10,480,873 | 10,960,705 | 10,410,271 | 0 | 10,410,271 | (550,434) | -5.0% |
| | | | | | | | |
| IHL Agricultural Units | | | | | | | |
| Alcorn Agricultural Programs | 4,775,687 | 4,779,607 | 4,588,423 | 0 | 4,588,423 | (191,184) | -4.0% |
| MSU- Agriculture & Forestry | 23,699,108 | 23,716,974 | 22,768,295 | 0 | 22,768,295 | (948,679) | -4.0% |
| MSU - Cooperative Extension | 29,374,724 | 29,410,885 | 28,234,450 | 0 | 28,234,450 | (1,176,435) | -4.0% |
| MSU- Forest & Wildlife | 6,125,405 | 6,128,754 | 5,883,604 | 0 | 5,883,604 | (245,150) | -4.0% |
| MSU - College of Veterinary Med | 17,154,751 | 17,173,262 | 16,486,332 | 0 | 16,486,332 | (686,930) | -4.0% |
| Total IHL Agriculture | 81,129,675 | 81,209,482 | 77,961,103 | 0 | 77,961,103 | (3,248,379) | -4.0% |
| | | | | | | | |
| Economic Development | | | | | | | |
| Mississippi Development Authority | 15,222,325 | 23,858,823 | 22,904,470 | 954,353 | 23,858,823 | 0 | 0.0% |
| Mississippi Development Authority - Tourism/Welcome Ctrs | 8,375,124 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| MS Technology Alliance | 2,103,374 | 1,054,094 | 1,011,930 | 0 | 1,011,930 | (42,164) | -4.0% |
| Enterprise for Innovative Geospatial Solutions | 946,744 | 835,834 | 802,401 | 0 | 802,401 | (33,433) | -4.0% |
| Total Economic Development | 26,647,567 | 25,748,751 | 24,718,801 | 954,353 | 25,673,154 | (75,597) | -0.3% |
| | | | | | | | |
| Conservation | | | | | | | |
| Archives & History, Department of | 9,639,544 | 10,096,944 | 9,418,066 | 0 | 9,418,066 | (678,878) | -6.7% |
| Environmental Quality, Dept. of | 15,446,436 | 14,257,792 | 13,687,480 | 0 | 13,687,480 | (570,312) | -4.0% |
| MS Institute for Forestry Inventory | 150,000 | 150,000 | 144,000 | 0 | 144,000 | (6,000) | -4.0% |
| Forestry Commission | 19,630,216 | 19,630,157 | 18,844,951 | 0 | 18,844,951 | (785,206) | -4.0% |
| Grand Gulf Military Monument | 267,021 | 267,413 | 256,716 | 0 | 256,716 | (10,697) | -4.0% |
| Marine Resources, Dept. of | 1,977,173 | 1,979,639 | 1,900,453 | 0 | 1,900,453 | (79,186) | -4.0% |
| MS River Parkway Commission | 25,800 | 25,800 | 24,768 | 0 | 24,768 | (1,032) | -4.0% |
| Pearl River Basin Development District | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Soil & Water Conservation | 831,233 | 832,096 | 798,812 | 0 | 798,812 | (33,284) | -4.0% |
| Tennessee-Tombigbee Waterway | 134,189 | 149,366 | 143,391 | 0 | 143,391 | (5,975) | -4.0% |
| Wildlife, Fisheries & Parks | 9,817,804 | 9,037,898 | 8,671,382 | 0 | 8,671,382 | (366,516) | -4.1% |
| Total Conservation | 57,889,416 | 56,427,105 | 53,890,021 | 0 | 53,890,021 | (2,537,084) | -4.5% |

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc(Dec) | % Inc(Dec) |
|---|---|---|---|---|---|---|---|
| Insurance & Banking | | | | | | | |
| Bea Barnard Memorial Fund | 10,800 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| Total Insurance & Banking | 10,800 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | | | |
| Corrections | | | | | | | |
| Corrections, Department of | 152,588,713 | 154,803,417 | 108,335,878 | 47,250,000 | 155,585,878 | 782,461 | 0.5% |
| Medical Services | 50,721,283 | 49,318,626 | 53,170,831 | 0 | 53,170,831 | 3,852,205 | 7.8% |
| Parole Board | 656,962 | 743,993 | 828,647 | 0 | 828,647 | 84,654 | 11.4% |
| Local Confinement | 17,505,045 | 8,836,714 | 8,592,465 | 0 | 8,592,465 | (244,249) | -2.8% |
| Private Prisons | 75,547,043 | 81,131,302 | 83,413,052 | 0 | 83,413,052 | 2,281,750 | 2.8% |
| Regional Facilities | 33,225,136 | 33,346,866 | 37,220,801 | 0 | 37,220,801 | 3,873,935 | 11.6% |
| Total Corrections | 330,244,182 | 328,180,918 | 291,561,675 | 47,250,000 | 338,811,675 | 10,630,757 | 3.2% |
| | | | | | | | |
| Social Welfare | | | | | | | |
| Governor's Office - Div. Of Medicaid | 587,628,928 | 551,917,343 | 461,429,504 | 131,804,895 | 593,234,399 | 41,317,056 | 7.5% |
| Human Services, Department of | 105,994,907 | 118,990,233 | 125,523,942 | 0 | 125,523,942 | 6,533,709 | 5.5% |
| Rehabilitation Services, Dept. of | 8,222,236 | 8,232,150 | 7,902,864 | 0 | 7,902,864 | (329,286) | -4.0% |
| Vocational Rehabilitation | 9,323,267 | 9,249,120 | 8,979,155 | 0 | 8,979,155 | (269,965) | -2.9% |
| Vocational Rehabilitation for the Blind | 1,517,649 | 1,588,838 | 1,525,284 | 0 | 1,525,284 | (63,554) | -4.0% |
| Spinal Cord and Head Injury | 2,500,000 | 2,500,000 | 2,500,000 | 0 | 2,500,000 | 0 | 0.0% |
| Total Social Welfare | 715,186,987 | 692,477,684 | 607,860,750 | 131,804,895 | 739,665,645 | 47,187,961 | 6.8% |
| | | | | | | | |
| Military, Police & Veterans' Affairs | | | | | | | |
| Emergency Management Agency | 6,139,368 | 6,144,178 | 5,898,411 | 0 | 5,898,411 | (245,767) | -4.0% |
| Disaster Relief | 1,622,953 | 1,622,953 | 1,558,035 | 0 | 1,558,035 | (64,918) | -4.0% |
| Military Department | 8,403,302 | 8,555,762 | 8,213,532 | 0 | 8,213,532 | (342,230) | -4.0% |
| Narcotics, Bureau of | 12,331,980 | 12,342,038 | 11,848,356 | 0 | 11,848,356 | (493,682) | -4.0% |
| Public Safety, Department of | 4,600,303 | 4,304,323 | 4,132,150 | 0 | 4,132,150 | (172,173) | -4.0% |
| Highway Safety Patrol | 54,287,297 | 48,440,661 | 46,503,035 | 0 | 46,503,035 | (1,937,626) | -4.0% |
| Crime Lab | 6,823,658 | 6,829,214 | 8,661,867 | 0 | 8,661,867 | 1,832,653 | 26.8% |
| Law Enforcement Officers Training Academy | 593,289 | 593,829 | 570,076 | 0 | 570,076 | (23,753) | -4.0% |
| State Medical Examiner | 163,916 | 129,636 | 194,815 | 0 | 194,815 | 65,179 | 50.3% |
| Public Safety Planning | 458,975 | 459,006 | 440,646 | 0 | 440,646 | (18,360) | -4.0% |
| Homeland Security | 206,747 | 206,919 | 198,642 | 0 | 198,642 | (8,277) | -4.0% |
| DPS Juvenile Facility Monitoring Unit | 113,318 | 113,378 | 108,843 | 0 | 108,843 | (4,535) | -4.0% |
| Veterans Affairs Board | 6,212,873 | 6,215,318 | 5,966,705 | 0 | 5,966,705 | (248,613) | -4.0% |
| Total Military, Police & Vets' Affairs | 101,957,979 | 95,957,215 | 94,295,112 | 0 | 94,295,112 | (1,662,103) | -1.7% |

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc/(Dec) | % Inc/(Dec) |
|---|---|---|---|---|---|---|---|
| Local Assistance | | | | | | | |
| Homestead Exemption | 84,000,000 | 84,600,000 | 85,000,000 | 0 | 85,000,000 | 400,000 | 0.5% |
| Total Local Assistance | 84,000,000 | 84,600,000 | 85,000,000 | 0 | 85,000,000 | 400,000 | 0.5% |
| | | | | | | | |
| Miscellaneous | | | | | | | |
| Arts Commission | 1,856,259 | 1,906,859 | 1,805,585 | 0 | 1,805,585 | (101,274) | -5.3% |
| Total Miscellaneous | 1,856,259 | 1,906,859 | 1,805,585 | 0 | 1,805,585 | (101,274) | -5.3% |
| | | | | | | | |
| Debt Service | | | | | | | |
| Bank Service Charges | 950,000 | 950,000 | 1,162,000 | 0 | 1,162,000 | 212,000 | 22.3% |
| Bonds & Interest | 322,597,871 | 313,597,871 | 302,869,612 | 52,607,101 | 355,476,713 | 41,878,842 | 13.4% |
| Total Debt Service | 323,547,871 | 314,547,871 | 304,031,612 | 52,607,101 | 356,638,713 | 42,090,842 | 13.4% |
| | | | | | | | |
| Total General Fund Agencies | $5,709,163,966 | $5,676,432,349 | $5,398,629,299 | $387,930,508 | $5,786,559,807 | 110,127,458 | 1.9% |
| | | | | | | | |
| Department of Transportation | 200,000 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| MS Insurance Department - Health Insurance Exchange | 0 | 0 | 0 | 1,500,000 | 1,500,000 | 1,500,000 | 100.0% |
| DEQ - Superfund Sites | 0 | 0 | 0 | 7,000,000 | 7,000,000 | 7,000,000 | 100.0% |
| | | | | | | | |
| **TOTAL** | **$5,709,363,966** | **$5,676,432,349** | **$5,398,629,299** | **$396,430,508** | **$5,795,059,807** | **$118,627,458** | **2.1%** |

Some rows and columns may not add due to rounding

| | | | Available Funds | Available Funds | |
|---|---|---|---|---|---|
| Agencies/Budgets excluded from 4% FY 10 reduction: | | GF Balance Forward | $1,025,401 | $14,800,000 | Delay Accelerated Tax Change |
| National Board Certification | | Aid to Municipalities | ($750,000) | $38,000,000 | Delay HCTF Repayment |
| Buildings & Buses | | GF Revenues | $5,096,300,000 | $36,304,895 | Delay HCEF Step Down |
| Supplies & Instructional Materials | | Less 2% Hold Back | ($101,946,508) | $101,946,508 | 2% Hold Back |
| School Millage Reduction | | HCEF Revenues | $26,255,105 | $6,500,000 | Med Mal Sale Proceeds |
| MAEP | | EEF Revenues | $358,213,390 | $9,751,367 | Disaster Recovery Fund Unobligated Interest |
| Vocational & Technical | | TCF Revenues | $20,000,000 | $2,790,231 | Gulf Tax Credit Bonds Excess/Balance |
| High School Redesign | | Total | $5,399,097,388 | $6,284,504 | LEAP Unobligated Interest |
| Chickasaw Interest | | | | $16,283,000 | Ayers Interest from WCSF (FY 07-10) |
| School for Blind & Deaf | | | | $58,900,000 | Cigarette Tax Increase |
| Ayers | | | | $4,275,000 | Smokeless Tobacco Tax Increase |
| Health Dept - SDE School Nurses | | | | $16,600,000 | Equity Assessment - Tobacco Settlement |
| Health Dept - UMC Cancer Institute | | | | | Nonparticipating Manufacturers |
| Health Dept - AG Alcohol & Tobacco Enforcement | | | | $84,000,000 | Transfer from Working Cash Stabilization Fund |
| Health Dept - UMC Comprehensive Tobacco Center | | | | $396,435,505 | Total |
| Mississippi Development Authority | | | | | |
| Corrections | | | | | |
| Medicaid | | | | | |
| Human Services - Family & Children Services (Olivia Y), Youth Services | | | | | |
| Rehabilitation Services - Billy A | | | | | |

**EXECUTIVE BUDGET & COMBINED FUNDS RECOMMENDATION**
**November 17, 2008**

| | FY 08 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 09 TOTAL STATE FUNDS APPROPRIATED GF,BCF,HCF,EEF,TCF | FY 10 EXECUTIVE BUDGET RECOMMENDATION GF,BCF,HCF,EEF,TCF | FY 10 SUPPLEMENTAL FUNDS RECOMMENDATION | FY 10 COMBINED FUNDS RECOMMENDATION | $ Inc/(Dec) | % Inc/(Dec) |
|---|---|---|---|---|---|---|---|
| Homestead Exemption | | | | | | | |

**Ex. 1J**



**Mississippi Department of Human Services
Division of Family and Children's Services
Title IV-E Program Improvement Plan
February 2009**

DHS
267769

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

During the week of July 14, 2008, the Children's Bureau (CB), within the Administration for Children's and Families (ACF), in collaboration with the Mississippi Department of Human Services (MDHS), conducted a primary eligibility review of Mississippi's Title IV-E foster care program. The review team also included cross-state reviewers and staff from ACF's Region IV Office of Grants Management.

The purposes of the Title IV-E foster care eligibility review were:
- To determine whether Mississippi was in compliance with the eligibility requirements as outlined in regulation and statute at 45 CFR 1356.71 and Section 472 of the Social Security Act; and
- To validate the basis of Mississippi's financial claims to ensure that appropriate payments were made on behalf of eligible children placed in licensed or approved foster family homes and child-caring institutions.

For a primary review, substantial compliance means that the case error rate does not exceed four. A statistical sample of 80 cases was drawn from a universe of cases that received Title IV-E payments during the review period noted above. This sample was obtained from the Adoption and Foster Care Analysis and Reporting System (AFCARS) data for the period under review which was transmitted by MDHS to ACF.

During the on-site review, each child's case file in the selected sample was reviewed to determine Title IV-E eligibility. The provider's file was examined to ensure that the foster home or child care institution in which the child was placed during the period under review was licensed or approved and the safety considerations were appropriately addressed. Payments made on behalf of each child were also reviewed to verify that the expenses were allowable under Title IV-E. Efforts were made to identify any underpayments that may have existed in the reviewed sample cases. In addition, CB and MDHS agreed that subsequent to the on-site review Mississippi could submit additional child and provider documentation for any case that was found to be in error, in pending status, or to have an ineligible payment. As a result of the provision of additional documentation, a number of case and payment determinations were modified.

The review team determined that 16 error cases and 3 non-error cases with improper payments were ineligible for Federal funding. The CB determined that the State of Mississippi's Title IV-E foster care maintenance program was not in substantial

DHS
267770

compliance with Federal eligibility requirements for the period of October 1, 2007 through March 31, 2008.

Pursuant to 45 CFR 1356.7(i), Mississippi is required to develop a Program Improvement Plan (PIP) designed to correct those areas needing corrective action as identified by the CB.

MDHS has developed a PIP which should bring the Title IV-E's foster care maintenance program into compliance. Along with this narrative is a matrix which details the person(s) responsible for each action step and the projected completion date of each action step.

The areas needing corrective action are:
- Court orders
- Licensure and Safety, and
- Re-Determinations.

**Court Orders**

    **A.** Court petitions were not included in the child's central eligibility file which makes it difficult to determine the removal home and the circumstances of the removal.

MDHS's goal is to ensure that the child's central eligibility file contains information regarding the home from which the child was removed and documentation regarding the circumstances of the child's removal.

In order to achieve this goal, MDHS will take the following action steps:

    **1.** MDHS will collaborate with the Judicial College and the Court Improvement Project to modify sample petitions and court orders to contain specifics about the removal home and the circumstances of the child's removal.
    **2.** Petitions, as well as removal orders, will be placed in the central eligibility file and entered into the Mississippi Automated Child Welfare Information System (MACWIS) correctly.
    **3.** Instructions regarding these action steps will be sent to all appropriate staff to ensure compliance.
    **4.** IV-E eligibility training content will be developed.
    **5.** Appropriate staff will receive training on IV-E eligibility policy and procedures including MACWIS eligibility.
    **6.** Provide technical assistance/training on removals as appropriate to youth court judges, county prosecutors and other court personnel who draft removal petitions.

The evaluation of progress toward meeting this goal involves MDHS's Performance and Quality Improvement (PQI) review each child's record every six months to ensure that the child's central eligibility file contains information relating to the home from which the child was removed and the circumstances of the removal.

**B.** Federal Regulation 45 CFR 1356.21 (k) (2) requires the physical removal of a child to coincide with the judicial ruling that authorizes the child's removal from the home and placement in foster care. One case that was reviewed involved a child being left in the home for a period of time after the court granted MDHS placement and care responsibility and finding that it was contrary to the child's welfare to remain in the home.

MDHS's goal is to ensure that the physical removal of a child coincides with the judicial ruling that authorizes the child's removal from the home and placement into foster care.

In order to achieve this goal, MDHS will take the following action steps:

1. IV-E eligibility training content will be developed.
2. Appropriate staff will receive training on IV-E eligibility policy and procedures.
3. Provide technical assistance/training on IV-E eligibility policy and procedures training content as appropriate with judges, county prosecutors and other court personnel.
4. MDHS will address this issue with the specific county and court involved in the error case.

The evaluation of progress toward meeting this goal involves MDHS's PQI review every child's record each six months to ensure that the date of the physical removal coincides with the date of the judicial ruling that authorizes the child's removal from the home.

**C.** There was a delay in the agency's receiving copies of court orders, taking up to six months in some cases.

MDHS's goal is to ensure that copies of court orders are provided to the agency in a timely manner to properly assess IV-E eligibility.

In order to achieve this goal, MDHS will take the following action steps:

1. MDHS will collaborate with the Judicial College and Court Improvement Project to develop and deliver technical assistance/training that will help the judges ensure that court orders are produced and disseminated timely.
2. MDHS will collaborate and provide technical assistance to the specific counties and courts the urgency and importance of ensuring that court orders are produced and disseminated timely.
3. All appropriate staff will be apprised of this issue to ensure corrective action.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing every child's record each six months to ensure that copies of the most recent court orders are contained in the child's case record.

**D.** Court Orders did not always include judicial determinations addressing reasonable efforts to finalize the permanency plan and/or reasonable efforts to prevent removal.

MDHS's goal is to ensure that court orders address reasonable efforts to prevent the child's removal and to continue to address reasonable efforts to finalize the permanency plan in subsequent orders until the child's permanency goal is achieved.

In order to achieve this goal, MDHS will take the following action steps:

1. MDHS will collaborate with the Judicial College and the Court Improvement Project to develop sample court orders containing language addressing reasonable efforts regarding removal and permanency.
2. IV-E eligibility training content will be developed to include content related to reasonable efforts.
3. Appropriate staff will receive training to include content related to reasonable efforts.
4. IV-E training content related to reasonable efforts will be shared with judges, county prosecutors and other court personnel.
5. MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders include reasonable efforts to prevent the child's removal and continue to address reasonable efforts to finalize a permanency plan in subsequent court orders until the child's permanency goal is achieved.
6. The Eligibility Unit will verify language of orders, contact counties as issues arise, and disburse payments from sources other than IV-E until appropriate eligibility criteria have been established.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing every child's record each six months to ensure that court orders contain judicial findings of reasonable efforts to prevent the removal of children from their homes and to finalize permanency plans.

**E.** The date of the court hearings was not included in many of the written orders.

MDHS's goal is to ensure that the exact dates of the court hearings are indicated in the court orders.

In order to achieve this goal, MDHS will take the following action steps:

1. MDHS will work with the Judicial College and the Court Improvement Project to develop sample orders containing the exact date that hearings were held, as well as the date that the order was signed.
2. The need for dates of hearings to be included on court orders will be addressed in the agency's IV-E training.
3. All appropriate staff will be apprised of this issue to ensure corrective action.
4. County staff will record the date of each hearing in the MACWIS case record immediately following hearings.
5. County staff will forward a copy of all court orders to the Eligibility Unit as soon as the orders have been received.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing every child's record each six months to ensure that records contain the exact date of the hearings.

F. Several court orders were "amended".

MDHS's goal is to ensure that court orders contain required and accurate information at the time they are issued to avoid amending orders.

In order to achieve this goal, MDHS will take the following action steps:

1. MDHS will collaborate with the Judicial College and the Court Improvement Project to develop sample court orders containing all appropriate and required findings in order to avoid unnecessary amended orders.
2. All appropriate staff will be apprised of this issue to ensure corrective action.
3. Sample court orders will be used as training tools for staff to ensure they understand the findings required under IV-E and the agency's role in assisting the court by providing necessary documentation and testimony.
4. MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders specify that the agency has responsibility for the placement and care of children in agency custody.
5. Eligibility Unit staff will review court orders for appropriate language and necessary findings for IV-E eligibility.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing every child's record each six months to ensure that court orders contain all necessary and accurate information required for IV-E eligibility to avoid amending orders.

G. Some court orders were not clear that MDHS had responsibility for placement and care of a child.

MDHS's goal is to ensure that court orders contain language to certify that the agency has responsibility for placement and care of a child.

DHS
267774

In order to achieve this goal, MDHS will take the following action steps:

1.  MDHS will collaborate with the Judicial College and the Court Improvement Project to ensure that all court orders specify that the agency has responsibility for the placement and care of children in agency custody.
2.  All court orders pertaining to children in agency custody will be forwarded to the Eligibility Unit.
3.  All appropriate staff will be apprised of this issue to ensure corrective action.
4.  MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders contain all required and accurate information required for eligibility determination of children in agency custody.
5.  Eligibility Unit staff will review orders to ensure that MDHS is given responsibility for placement and care as required by IV-E regulations.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing every child's record each six months to ensure that court orders specify that MDHS has responsibility for placement and care.

**Licensure and Safety**

A.  Criminal background checks and/or safety requirements of provider were not completed according to requirements found at 45 CFR 1356.30.

MDHS's goal is to ensure that all providers have met the criminal background checks and safety requirements and that documentation is filed in each providers file.
.
In order to achieve this goal, MDHS will take the following action steps:

1.  MDHS will develop policy to address all applicable criminal background checks and safety requirements.
2.  MDHS will train staff and provide policy and procedures to licensed child care agencies.
3.  All provider records will contain documentation of criminal background checks and Central Registry clearance on all applicable household members. A copy of this documentation will be maintained in the MDHS provider case record.
4.  Training will be provided to the provider's regarding these requirements.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing a sample of provider records each six months to verify criminal background and Central Registry checks compliance.

**B.** Children are not living in the homes receiving the IV-E payments.

MDHS's goal is to ensure that IV-E payments are issued to a provider only for the period that a IV-E eligible child is placed with the licensed provider.

In order to achieve this goal, MDHS will take the following action steps:

1. Procedures will be established to allow county staff to indicate "placement only" or "placement and board payment" to ensure that no board payments are generated until resource homes are fully licensed.

2. Procedures will be established to stop board payments to a resource home upon a child's removal and placement into another resource home. The county worker will enter a child's new placement in a timely manner which will notify the Eligibility Unit to stop the board payment and generate a payment to the correct resource home.

3. MACWIS updates will be implemented to allow timely board payment changes to ensure that overpayments are reduced. A scrolling message will be transmitted to the county staff via MACWIS to notify them to have correct placement information in the system prior to the first day of the next month.

4. Training will be provided to state off and field staff to ensure that these procedures are followed.

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing a sample of child and provider records each six months to ensure that payments are generated only to the homes and facilities in which these children reside.

**C.** IV-E payments were made to two homes that had been issued temporary licenses and one relative home that had waived pre-service training.

MDHS's goal is to ensure that IV-E payments are issued only to licensed providers.

In order to achieve this goal, MDHS will take the following action steps:

1. Procedures will be established to allow county staff to indicate "placement only" or "placement and board payment" to ensure that no board payments are generated until resource homes are fully licensed.

2. Agency policies will prohibit the granting of temporary licenses or waiving pre-service training for resource homes.

3. Training will be provided to state office staff and field staff to ensure compliance with licensing standards.

4. MDHS licensure staff will notify the Eligibility Unit when a license has been revoked or a renewal has not been granted to a resource home.

DHS
267776

The evaluation of progress toward meeting this goal involves MDHS's PQI reviewing a sample of child and provider records each six months to ensure that resource homes are fully licensed when board payments are made through IV-E.

**D.** Child placing agencies and group homes are not providing MDHS with copies of foster home licenses and safety checks required for IV-E eligibility.

MDHS's goal is to ensure that child placing agencies and group homes provide MDHS with copies of licenses and safety checks sufficient for IV-E eligibility.

In order to achieve this goal, MDHS will take the following action steps:

**1.** MDHS will update and issue Licensing Requirements for Residential Child Caring Agencies and Child Placing Agencies to include the requirement that these agencies furnish licenses and required safety information on all homes, staff and employees as needed per IV-E regulations.
**2.** MDHS will provide training to appropriate state office and field staff regarding facilities and group home licensure and safety requirements.
**3.** The Licensure Unit will document through periodic site visits and through maintenance of central files that licensure and safety information is complete and current on homes and facilities licensed by Child Caring Agencies and Child Placing Agencies.

The evaluation of progress toward meeting this goal involves the Licensure Unit compiling and submitting quarterly reports to appropriate Unit Directors to ensure corrective action regarding licensure and safety of these homes and facilities.

**Re-determination of Eligibility**

**A.** Documentation of re-determinations of children's eligibility for AFDC was not found in many cases reviewed.

MDHS's goal is to ensure that documentation of re-determinations of children's eligibility is placed in the eligibility files.

In order to achieve this goal, MDHS will take the following action steps:

**1.** MDHS will develop procedures to ensure manual ticklers are established to ensure timely re-determinations of IV-E eligibility.
**2.** MDHS will develop a system of automated ticklers within MACWIS to ensure timely re-determinations of IV-E eligibility.
**3.** Policies and procedures will be formalized to define the IV-E eligibility determination re-determination process.

4.  Training will be provided to state office staff and field staff on policies and procedures governing the eligibility re-determination process.
5.  Eligibility will maintain a paper copy of all re-determinations in the child's central file.

The evaluation of progress toward meeting this goal involves MACWIS providing monthly reports on the status of re-determinations, the Eligibility Unit notifying the appropriate Regional Directors of any overdue re-determinations and MDHS's PQI conducting a sample review of the children's central files to ensure that current re-determinations are filed.

**B.** Re-determinations were not completed on a timely basis in some records reviewed.

MDHS's goal is for all re-determinations to be completely in a timely manner.

In order to achieve this goal, MDHS will take the following action steps:

1.  MDHS will develop procedures to ensure that manual ticklers are established to ensure timely re-determinations of IV-E eligibility.
2.  MDHS will develop a system of automated ticklers in MACWIS to ensure timely re-determinations of IV-E eligibility.
3.  Policies and procedures will be formalized to define the IV-E eligibility determination and re-determination process.
4.  Training will be provided to state office staff and field staff on policies and procedures governing the eligibility re-determination process.

The evaluation of progress toward meeting this goal involves MACWIS providing monthly reports on the status of re-determinations, the Eligibility Unit notifying the appropriate Regional Directors of any overdue re-determinations and MDHS's PQI conducting a sample review of the children's central files to ensure that current re-determinations are filed.

DHS
267778

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #1: Court Orders |
|---|
| **A.** Court petitions are not included in the child's central eligibility file which makes it difficult to determine the removal home and the circumstances of removal. |

| Goal: |
|---|
| To ensure that the child's central eligibility file contains information of the home from which the child was removed and documentation of the circumstances of the child's removal. |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. MDHS will collaborate with the Judicial College and Court Improvement Project to modify sample petitions and orders to contain specifics about the removal home and circumstances of the child's removal. | 1. 03/31/2009 | 1. Court Improvement Workgroup |
| 2. Petitions, as well as removal orders, will be placed in the child's central eligibility file and entered into MACWIS correctly. | 2. 04/30/2009 | 2. Court Improvement Workgroup |
| 3. Instructions regarding these action steps will be sent to all appropriate staff to ensure compliance. | 3. 03/31/2009 | 3. Policy |
| 4. IV-E eligibility training content will be developed. | 4. 06/30/2009 | 4. Training Director |
| 5. Appropriate staff will receive training on IV-E eligibility policy and procedures including MACWIS. | 5. 09/30/2009 | 5. Training Director |
| 6. Provide technical assistance/training on removals as appropriate to youth court judges, county prosecutors and other court personnel who draft removal petitions. | 6. 12/31/2009 | 6. Division Director |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office with brief descriptions of progress toward completion of each task and, where appropriate, the end product(s). Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that the child's central eligibility file contains information relating to the home from which the child was removed and the circumstances of the removal. A second level eligibility review will be conducted utilizing the federal onsite review instrument. PQI will submit monthly reports to Regional Directors for corrective action. |

| Evaluation of Achievement: |
|---|
| Cases reviewed will document the removal home and circumstances of the removal in accordance with IV-E substantial compliance standards. |

DHS
267779

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #1: Court Orders |
|---|

**B.** Federal Regulation 45 CFR 1356.21 (k) (2) requires the physical removal of a child to coincide with the judicial ruling that authorizes the child's removal from the home and placement in foster care. One case involved a child being left in the home for a period of time after the court granted MDHS placement and care responsibility and finding it was contrary to the child's welfare to remain in the home.

**Goal:**

To ensure that the physical removal of a child coincides with the judicial ruling that authorizes the child's removal from the home and placement in foster care.

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. IV-E eligibility training content will be developed. | 1. 06/30/2009 | 1. Training Director |
| 2. Appropriate staff will receive training on IV-E eligibility policy and procedures. | 2. 09/30/2009 | 2. Training Director |
| 3. Provide technical assistance/training on IV-E eligibility policy and procedures training content as appropriate with judges, county prosecutors and other court personnel. | 3. 12/30/2009 | 3. Division Director |
| 4. MDHS will address this issue with the specific county and court involved in the error case. | 4. 03/31/2009 | 4. Regional Director |

**Evaluation of Progress:**

MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s).
Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that the date of the physical removal of a child coincides with the date of the judicial ruling that authorizes the child's removal from the home.
A second level eligibility review will be conducted utilizing the federal onsite review instrument.
PQI will submit monthly reports to Regional Directors for corrective action.

**Evaluation of Achievement:**

Cases reviewed will document that the date of the physical removal of a child coincides with the judicial ruling that authorizes removal from the home in accordance with IV-E substantial compliance standards.

DHS
267780

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| | | |
|---|---|---|
| **Issue #1: Court Orders** | | |
| C.    There was a delay in the agency receiving copies of court orders, taking up to six months in some cases. | | |

| | | |
|---|---|---|
| **Goal:** | | |
| To ensure that copies of court orders are provided to the agency in a timely manner in order to properly assess IV-E eligibility. | | |

| **Action Steps:** | **Projected Completion Date:** | **Person Responsible:** |
|---|---|---|
| 1.    MDHS will collaborate with the Judicial College and Court Improvement Project to develop and deliver technical assistance/training that will help the judges ensure that court orders are produced and disseminated timely. | 1.    12/31/2009 | 1.    Training Director; Division Director |
| 2.    MDHS will collaborate and provide technical assistance to the specific counties and courts the urgency and importance of ensuring that court orders are produced and disseminated timely. | 2.    03/31/2009 | 2.    Regional Director |
| 3.    All appropriate staff will be apprised of this issue to ensure corrective action. | 3.    03/31/2009 | 3.    Policy |

| |
|---|
| **Evaluation of Progress:** |
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that copies of the most recent court orders are contained in the child's case record. A second level eligibility review will be conducted utilizing the federal onsite review instrument. PQI will submit monthly reports to Regional Directors for corrective action. |

| |
|---|
| **Evaluation of Achievement:** |
| Cases reviewed will contain all court orders in accordance with IV-E substantial compliance standards. |

DHS
267781

Mississippi Department of Human Services
Division of Family and Children's Services
Title IV-E Program Improvement Plan
February 2009

| Issue #1: Court Orders | | |
| --- | --- | --- |
| **D.** Court Orders did not always include judicial determinations addressing reasonable efforts to finalize permanency plan and/or reasonable efforts to prevent removal. | | |

| Goal: | | |
| --- | --- | --- |
| To ensure that court orders address reasonable efforts to prevent the child's removal and to continue to address reasonable efforts to finalize the permanency plan in subsequent orders until the child's permanency goal is achieved. | | |

| Action Steps: | Projected Completion Date: | Person Responsible: |
| --- | --- | --- |
| 1. MDHS will collaborate with the Judicial College and Court Improvement Project to develop sample court orders containing language addressing reasonable efforts regarding removal and permanency. | 1. 03/31/2009 | 1. Court Improvement Workgroup |
| 2. IV-E eligibility training content will be developed to include content related to reasonable efforts. | 2. 06/30/2009 | 2. Training Director |
| 3. Appropriate staff will receive training to include content related to reasonable efforts. | 3. 09/30/2009 | 3. Training Director |
| 4. IV-E training content related to reasonable efforts will be shared with judges, county prosecutors and other court personnel. | 4. 12/31/2009 | 4. Division Director |
| 5. MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders include reasonable efforts to prevent the child's removal and continue to address reasonable efforts to finalize a permanency plan in subsequent court orders until the child's permanency goal is achieved. | 5. 03/31/2009 | 5. Regional Directors |
| 6. The Eligibility Unit will verify language of orders, contact counties if issues arise, and disburse payments from sources other than IV-E until appropriate eligibility criteria have been established. | 6. 03/31/2009 | 6. Eligibility Unit |

| Evaluation of Progress: |
| --- |
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). |
| Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that court orders contain judicial findings of reasonable efforts to prevent the removal of children from their homes and to finalize permanency plans. |
| A second level eligibility review will be conducted utilizing the federal onsite review instrument. |
| PQI will submit monthly reports to Regional Directors for corrective action. |

| Evaluation of Achievement: |
| --- |
| Orders reviewed will contain judicial findings of reasonable efforts to prevent the removal of children from their homes and to finalize permanency plans in accordance with IV-E substantial compliance standards. |

DHS
267782

Mississippi Department of Human Services
Division of Family and Children's Services
Title IV-E Program Improvement Plan
February 2009

| Issue #1: Court Orders | | |
|---|---|---|
| E. The date of the court hearings was not included in many of the written orders. | | |
| **Goal:** | | |
| To ensure that exact dates of court hearings are indicated in the court orders. | | |
| **Action Steps:** | **Projected Completion Date:** | **Person Responsible:** |
| 1. MDHS will collaborate with the Judicial College and Court Improvement Project to develop sample orders containing the exact date that hearings are held, as well as the date the orders are signed. | 1. 03/31/2009 | 1. Court Improvement Workgroup |
| 2. The need for dates of hearings to be included on court orders will be addressed in the agency's IV-E training. | 2. 06/30/2009 | 2. Training Director |
| 3. All appropriate staff will be apprised of this issue to ensure corrective action. | 3. 03/31/2009 | 3. Policy |
| 4. County staff will record the date of each hearing in the MACWIS case record immediately following hearings. | 4. Ongoing | 4. ASWS |
| 5. County staff will forward a copy of all court orders to the Eligibility Unit as soon as orders have been received. | 5. Ongoing | 5. ASWS |
| **Evaluation of Progress:** | | |
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that records contain the exact date of hearings. A second level eligibility review will be conducted utilizing the federal onsite review instrument. PQI will submit monthly reports to Regional Directors for corrective action. | | |
| **Evaluation of Achievement:** | | |
| Cases reviewed will contain exact dates of hearings in accordance with IV-E substantial compliance standards. | | |

DHS
267783

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #1: Court Orders | | |
|---|---|---|
| **F.** Several court orders were "amended". | | |

**Goal:**
To ensure that court orders contain required and accurate information at the time they are issued to avoid amending orders.

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. MDHS will collaborate with the Judicial College and Court Improvement Project to develop sample court orders containing all appropriate and required findings in order to avoid unnecessary amended orders. | 1.  03/31/2009 | 1.  Mary Fuller |
| 2. All appropriate staff will be apprised of this issue to ensure corrective action. | 2.  03/31/2009 | 2.  Policy |
| 3. Sample court orders will be used as training tools for staff to ensure they understand the findings required under IV-E and the agency's role in assisting the court by providing necessary documentation and testimony. | 3.  06/30/2009 | 3.  Training Director |
| 4. MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders contain all required and accurate information required for eligibility determination of children in agency custody. | 4.  03/31/2009 | 4.  Regional Directors |
| 5. Eligibility Unit staff will review orders for appropriate language and necessary findings for IV-E eligibility. | 5.  03/30/2009 | 5.  Eligibility Unit |

**Evaluation of Progress:**

MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s).
Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that court orders contain all necessary and accurate information required for IV-E eligibility to avoid amending orders.
A second level eligibility review will be conducted utilizing the federal onsite review instrument.
PQI will submit monthly reports to Regional Directors for corrective action.

**Evaluation of Achievement:**

Orders reviewed will contain all information required for IV-E eligibility in accordance with IV-E substantial compliance standards.

DHS
267784

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #: 1: Court Orders |
| --- |
| G. Some court orders were not clear that MDHS had responsibility and care for the child's placement |

| Goal: |
| --- |
| To ensure that court orders contain language to certify that the agency has responsibility for placement and care of the child |

| Action Steps: | Projected Completion Date: | Person Responsible: |
| --- | --- | --- |
| 1. MDHS will collaborate with the Judicial College and Court Improvement Project to ensure that all court orders specify that the agency has responsibility for the placement and care of children in agency custody. | 1. 03/31/2009 | 1. Court Improvement Workgroup |
| 2. All court orders pertaining to children in agency custody will be forwarded to the Eligibility Unit. | 2. 03/31/2009 | 2. County Staff |
| 3. All appropriate staff will be apprised of this issue to ensure corrective action. | 3. 03/31/2009 | 3. Policy |
| 4. MDHS will provide technical assistance and training to the specific counties and courts to ensure that all court orders specify that the agency has responsibility for the placement and care of children in agency custody. | 4. 03/31/2009 | 4. Regional Directors |
| 5. Eligibility Unit staff will review orders to ensure that MDHS is given responsibility for placement and care as required by IV-E regulations. | 5. 03/31/2009 | 5. Eligibility Unit |

| Evaluation of Progress: |
| --- |
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that court orders specify that MDHS has responsibility for placement and care. A second level eligibility review will be conducted utilizing the federal onsite review instrument. PQI will submit monthly reports to Regional Directors for corrective action. |

| Evaluation of Achievement: |
| --- |
| Orders reviewed will contain documentation that MDHS has responsibility for placement and care of all Title IV-E foster children in accordance with IV-E substantial compliance standards. |

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #2: Licensing and Safety: |
|---|
| **A.** Criminal background checks and/or safety requirements of provider were not completed according to requirements found at 45 CFR 1356.30. |

| Goal: |
|---|
| To ensure that all providers have met the criminal background checks and safety requirements and that documentation is filed in each providers file. |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. MDHS will develop policy to address all applicable criminal background checks and safety requirements. | 1. 02/28/2009 | 1. Placement Unit |
| 2. MDHS will train staff and provide policy and procedures to licensed child care agencies. | 2. 04/30/2009 | 2. Placement/Training |
| 3. All provider records will contain documentation from criminal background check and Central Registry clearance on all applicable household members. A copy of this documentation will be maintained in the MDHS provider case record. | 3. 04/30/2009 | 3. Licensure Unit/Resource ASWS |
| 4. Training will be provided to the provider's regarding these requirements. | 4. 01/30/2010 | 4. Placement Unit |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). A sample of provider records will be reviewed through a MDHS PQI measure every six months to verify criminal records and child abuse registry compliance. A second level eligibility review will be conducted utilizing the federal onsite review instrument. PQI will submit monthly reports to Licensure and Resource ASWS for corrective action. |

| Evaluation of Achievement: |
|---|
| Provider cases will contain documentation of criminal background check and Central Registry clearances on all applicable household members in accordance with IV-E substantial compliance standards. |

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #2: Licensing and Safety: | | |
|---|---|---|
| B.   Children were not living in the homes receiving the IV-E payments. | | |

| Goal: | | |
|---|---|---|
| To ensure that IV-E payments are issued to a provider only for the period that a IV-E eligible child is placed with the licensed provider. | | |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1.   Procedures will be established to allow county staff to indicate "placement only" or "placement and board payment" to ensure that no board payments are generated until resource homes are fully licensed. | 1.   04/01/2009 | 1.   Licensure/MACWIS |
| 2.   Procedures will be established to stop board payments to a resource home upon a child's removal and placement into another resource home. The county worker will enter a "placement correction" in a timely manner notifying the Eligibility Unit to stop the board payment and to generate payment to the appropriate home. | 2.   03/01/2009 | 2.   Regional Directors/ASWS/ Eligibility Unit |
| 3.   MACWIS updates will be implemented to allow timely board payment changes to ensure that overpayments are reduced. A scrolling message will be transmitted to the county staff via MACWIS to notify them to have correct placement information in the system prior to the first day of the next month. | 3.   09/30/2009 | 3.   MACWIS |
| 4.   Training will be provided to state office staff and field staff to ensure that these procedures are followed. | 4.   04/01/2009 | 4.   Training/Regional Directors/Unit Directors |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s).<br>Each child's record will be reviewed through a MDHS PQI measure every six months to ensure that payments are generated only to the homes and facilities in which children reside.<br>A second level eligibility review will be conducted utilizing the federal onsite review instrument.<br>PQI will submit monthly reports to appropriate Unit Directors for corrective action. |

| Evaluation of Achievement: |
|---|
| PQI, MACWIS, and/or similar reports will substantiate that payments are generated only to licensed facilities for the dates that children are placed in those facilities in accordance with IV-E substantial compliance standards. |

DHS
267787

Mississippi Department of Human Services
Division of Family and Children's Services
Title IV-E Program Improvement Plan
February 2009

**Issue #2: Licensing and Safety:**

C.  IV-E payments were made to two homes that had been issued temporary licenses and one relative home that had waived pre-service training.

**Goal:**
To ensure that IV-E payments are issued only to licensed providers.

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1.  Procedures will be established to allow county staff to indicate "placement only" or "placement and board payment" to ensure that no board payments are generated until resource homes are fully licensed. | 1.  04/01/2009 | 1.  Licensure/MACWIS |
| 2.  Agency policies will prohibit the granting of temporary licenses or waiving pre-service training for resource homes. | 2.  03/01/2009 | 2.  Policy/Placement/Licensure |
| 3.  Training will be provided to state office and field staff to ensure compliance with licensing standards. | 3.  04/01/2009 | 3.  Training/Unit Directors/Regional Directors |
| 4.  MDHS Licensure staff will notify the Eligibility Unit when a license has been revoked or a renewal has not been granted. | 4.  04/01/2009 | 4.  Placement Director |

**Evaluation of Progress:**

MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s).
A sample of child records and provider records will be reviewed through a MDHS PQI measure every six months to ensure that resource homes are fully licensed when board payments are made through IV-E.
A second level eligibility review will be conducted utilizing the federal onsite review instrument.
PQI will submit monthly reports to appropriate Unit Directors for corrective action.

**Evaluation of Achievement:**

PQI, MACWIS, and/or similar reports will substantiate that resource homes and facilities are fully licensed when IV-E board payments are made in accordance with IV-E substantial compliance standards.

DHS
267788

Mississippi Department of Human Services
Division of Family and Children's Services
Title IV-E Program Improvement Plan
February 2009

| Issue #2: Licensing and Safety: |
|---|
| **D.** Child placing agencies and group homes are not providing MDHS with copies of foster home licenses and safety checks required for IV-E eligibility. |

| Goal: |
|---|
| To ensure that child placing agencies and group homes provide MDHS with copies of licenses and safety checks sufficient for IV-E eligibility. |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. MDHS will update and issue Licensing Requirements for Residential Child Caring Agencies and Child Placing Agencies to include the requirement that these agencies furnish licenses and required safety information on all homes, staff and employees as needed per Title IV-E regulations. A copy of this documentation will be maintained in the MDHS case record. | 1. 12/31/2009 | 1. Policy/Licensure/Placement Directors |
| 2. MDHS will provide training to appropriate state office and field staff regarding facilities and group home licensure and safety requirements. | 2. 04/01/2009 | 2. Training |
| 3. The Licensure Unit will document through periodic site visits and through maintenance of central files that licensure and safety information is complete and current on homes and facilities licensed by Child Caring and Placing Agencies. | 3. On-going | 3. Licensure |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). Licensure Unit will compile and submit quarterly reports to appropriate Unit Directors to ensure corrective action regarding licensure and safety of these homes and facilities. A second level eligibility review will be conducted utilizing the federal onsite review instrument. |

| Evaluation of Achievement: |
|---|
| Licensure reports will substantiate that copies of licenses and safety documentation are filed in accordance with IV-E substantial compliance standards. |

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #3:  Re-determination of Eligibility | | |
|---|---|---|
| **A.**  Documentation of re-determinations of children's eligibility for AFDC was not found in many cases reviewed. | | |

| Goal: | | |
|---|---|---|
| Documentation of re-determinations of children's eligibility will be placed in the eligibility files. | | |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1.  MDHS will develop procedures to ensure manual ticklers are established to ensure timely re-determinations of IV-E eligibility. | 1.  03/01/2009 | 1.  Eligibility/County staff |
| 2.  MDHS will develop a system of automated ticklers within MACWIS to ensure timely re-determinations of IV-E eligibility. | 2.  10/30/2009 | 2.  MACWIS staff |
| 3.  Policies and procedures will be formalized to define the IV-E eligibility determination and re-determination process. | 3.  03/31/2009 | 3.  Eligibility/Training |
| 4.  Training will be provided to state office staff and field staff on policies and procedures governing the eligibility re-determination process. | 4.  04/01/2009 | 4.  Training/Unit & Regional Directors |
| 5.  Eligibility will maintain a paper copy of all re-determinations in the child's central file. | 5.  03/31/2009 | 5.  Eligibility |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). MACWIS will provide monthly reports on the status of re-determinations. The Eligibility Unit will notify appropriate Regional Directors of any overdue re-determinations. A second level eligibility review will be conducted utilizing the federal onsite review instrument. Performance and Quality Improvement will conduct a sample review of children's central files to ensure that current re-determinations are filed. |

| Evaluation of Achievement: |
|---|
| PQI, MACWIS, and/or similar reports will confirm that re-determinations are current in accordance with IV-E substantial compliance standards. |

DHS
267790

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Title IV-E Program Improvement Plan**
**February 2009**

| Issue #3: Re-determination of Eligibility |
|---|
| B. Re-determinations were not completed on a timely basis in some records reviewed. |

| Goal: |
|---|
| Re-determinations will be completed in a timely manner. |

| Action Steps: | Projected Completion Date: | Person Responsible: |
|---|---|---|
| 1. MDHS will develop procedures to ensure that manual ticklers are established to ensure timely re-determinations of IV-E eligibility. | 1. 03/01/2009 | 1. Eligibility/County staff |
| 2. MDHS will develop a system of automated ticklers in MACWIS to ensure timely re-determinations of IV-E eligibility. | 2. 10/30/2009 | 2. MACWIS staff |
| 3. Policies and procedures will be formalized to define the IV-E eligibility determination and re-determination process. | 3. 03/31/2009 | 3. Eligibility/Training |
| 4. Training will be provided to state office staff and field staff on policies and procedures governing the eligibility re-determination process. | 4. 04/01/2009 | 4. Training Unit / Regional Directors |

| Evaluation of Progress: |
|---|
| MDHS will submit quarterly reports to the Region IV ACF office descriptions of progress toward completion of each task and, where appropriate, the end product(s). MACWIS will provide monthly reports on the status of re-determinations. A second level eligibility review will be conducted utilizing the federal onsite review instrument. Eligibility will notify appropriate Unit Directors of any overdue re-determinations. Performance and Quality Improvement will conduct a sample review of children's central files to ensure that current re-determinations are filed. |

| Evaluation of Achievement: |
|---|
| PQI, MACWIS, and/or similar reports will confirm that re-determinations are current in accordance with IV-E substantial compliance standards. |

DHS
267791