# Ex. 12G

**YOUTH VILLAGES, INC.**
**INTERCEPT**
**Exhibit A**
**SCOPE OF SERVICES**

**SERVICE DEFINITION:**

For the grant period from January 1, 2009 – September 30, 2009, Youth Villages, Inc., a Family Preservation subgrantee for the Mississippi Department of Human Services, Division of Family and Children's Services (MDHS/DFCS) agrees to provide Family Preservation services statewide for up to 75 family cases given that MDHS/DFCS provides the referral base to maintain active caseloads for our existing Family Preservation Teams. This contract is a continuance of services provided to those families enrolled in the twenty-week program at the end of the previous contract.

Family Preservation Services (FPS) is an intensive home-based therapeutic program available to families 24 hours, seven days a week. Provider will *maintain a* Family Preservation Program with the following requirements:

- Family Preservation was created by Federal Law in 1993 under the "Home Ties Program", which Mississippi adopted in 1994 in order to bridge the gap that would provide concentrated and intense home-based services to families. The purpose of this law was to prevent removal of children from their homes, and/or to reunify children who have been removed from their families.

- The primary criteria for referral to the Family Preservation Program will be a child served by MDHS who is at risk for removal from the home setting for a placement in a standard or more restrictive foster care placement. Children ranging in ages from birth to 18 will generally have been targeted for removal due to one or more of the following reasons:

  1. The health, safety, and well being of the child is threatened due to high risk factors as determined by the safety assessment.
  2. The child is adjudicated and in need of care and permanency while facing placement in an out-of-home treatment facility.

- The services provided must be intensive and comprehensive to families in their own homes. Location is identified as where the family lives and functions, i.e. birth, kin, adopted, foster. Service can also take place in schools, jails, juvenile detention centers, homeless shelters, or other community areas, etc.

**REUNIFICATION:**

Family Preservation will provide reunification services to children who have been out of the home for a period of no more than 90 days. Preparation services can be provided to the family prior to the return of the child but there must be a permanency plan and date for the child to be

placed back within the family home during the 20 weeks of Family Preservation services. The referral for reunification services will follow the referral process.

**REFERRAL PROCESS:**

- The referral process will take place according to the MDHS established protocol.

**OBJECTIVES:**

- To improve family functioning and prevent the need for out-of-home child placement, the Family Preservation Program has established the following objectives:

    1. To provide crisis intervention to troubled families.
    2. To conduct assessments of child and family functioning.
    3. To aid families in locating and accessing concrete services (housing, clothing, food, etc.).
    4. To provide services with a focus on parental self-control, child management skills, communication and problem-solving techniques.
    5. To provide other necessary services as needed.
    6. To evaluate program efficiency and consumer satisfaction.

**PERIOD OF SERVICE:**

- Family Preservation contacts the family within 48 hours of accepting the referral and sooner if it is deemed an emergency by the Supervisor or Protective Services social worker. In the case of an emergency, where the Protective Services worker plans to immediately remove a child due to severe abuse/neglect, it may be necessary for the Family Preservation Service (FPS) worker to make initial contact as soon as possible. If a family is accepted into the program, the service delivery will be provided up to 20 weeks or longer if found necessary by the FPS worker.

- Services will require three to six months in time. Time-limited: comprehensive array of services with flexible service delivery. The average service delivery is 90-180 days. This timeframe is to account for the families who complete the service early and for those who will need additional time for completion. A written policy for extension must be in place, but above no more than 10% of the families served will be extended, and the length of extension should be no more than 30 additional days. A request will be approved or disapproved at the MDHS State Office level.

**SCHEDULE OF SERVICE DELIVERY:**

- A treatment plan is developed at the end of the first two weeks of contact with the family. During the first 10 weeks of contact, the program provides each family 5 to 15 hours of direct contact per week, which may include home visits, telephone contacts, assessing concrete services, and other case management duties. A minimum of 4 hours direct contact must be face to face. During weeks 11-20, contact is decreased from 2 to 5 hours

per week as treatment goals are achieved and family functioning is stabilized. During this phase, a minimum of 3 hours direct contact must be face to face. In addition, FPS workers are available to families 24 hours per day and follow-up services are provided.

- Follow-up contact can include telephone contacts, and/or home visits after termination of services to the families. Follow-up contacts are scheduled in 3, 6, 9, and 12-month intervals. Written documentation is required on each follow-up contact to indicate the family's status. These follow-up contacts will help to ensure family maintenance of skills and provide a refresher course if needed and on-call services will also be available if needed. Also during this follow-up period, further assessments are completed, and program effectiveness is evaluated.

- Family Preservation will provide the intensity and frequency of at least 2 to 5 meetings weekly, depending on the stage of treatment. Evening hours, weekends, and non-traditional scheduling will be available to meet the family's scheduling needs. Flexibility in scheduling in 90-100% of the cases.

- Family Preservation will provide services of at least 5 hours per week per family, one of which can be collateral or other systems contact. A minimum of 4 hours direct contact must be face to face.

- Family Preservation will maintain caseloads of 4-6 families per counselor and/or team.

- Family Preservation will be available and provide a response system: Have a 24/7 immediate response to crisis; response by primary provider, use of mobile outreach response as needed.

- Family Preservation will have safety planning for each family member; comprehensive crisis protocol and policies; crisis needs are continually assessed. Active safety planning and monitoring will be family centered.

- Program content will be strength-based: Family empowerment will be essential in treatment. Service delivery will be supportive and respectfully built on the strength of the family.

- There will be a comprehensive mix of crisis management cases with intensive collaboration of individual and family counseling, behavioral management in 90-100% of cases with Mental Health family needs.

**DEVELOPMENT OF A TREATMENT PLAN:**

- While crisis services will be available to families throughout the family assessment, a Family Team Meeting will be held to develop the Comprehensive Family Treatment Plan and the Individual Service Plan (ISP), within two weeks of the referral. This meeting will include, but is not limited to, the following:

1.   The FPS worker
2.   At least one representative from the family
3.   The County staff

- The Treatment Plan will include:

1.   Family treatment goals.
2.   Treatment components/procedures to be used in achieving the goals.
3.   Needed concrete services.
4.   Individuals responsible for implementing procedures.
5.   Methods for measuring progress and goal attainment.

**COORDINATION WITH MDHS STAFF:**

By the end of the initial two weeks, the FPS team (to include the FPS Provider, MDHS worker, all applicable family members and any support systems deemed necessary per the family's request) will complete the treatment plan and assessment summary. The FPS team (to include the FPS Provider and MDHS worker) will *attend* court when subpoenaed or when deemed appropriate by the Supervisor.

**COUNTY STAFF ROLE:**

1.   Make a referral to the Family Preservation program.
2.   Coordinate and facilitate the initial Family Team Meeting on Preventive cases with the FPS worker. Also during the initial meeting, the MDHS social worker will share vital information with the FPS worker on the family referred, and the MDHS social worker and the FPS worker will coordinate a transitional phase for the family from Protective Services to Family Preservation Services.
3.   Coordinate and facilitate all Family Team Meetings on Custody cases.
4.   Keep open cases on families referred to the Family Preservation program.
5.   Have quarterly staff meetings with FPS worker.
6.   In the event of child removal, county worker will handle all of the details.

**FAMILY PRESERVATION STAFF ROLE:**

1.   Conduct an assessment on each family and provide a copy of the treatment plan and assessment summary to the referring county staff.
2.   Provide written documentation of services to county staff by the 5th working day of the month.
3.   Participate in the initial Family Team Meeting and coordinate and facilitate the subsequent Family Team Meetings on all prevention cases, MDHS social worker and FPS worker will coordinate a transitional phase for the family from Protective Services to Family Preservation Services.
4.   Will be available to the family at all times and maintain weekly contact with the family during the intensive phase of the program.

5.  Notify MDHS social worker of any new child abuse/neglect. Also, immediately notify MDHS staff if safety of the child/children cannot be maintained.

6.  After the family completes the intensive phase of treatment, the FPS worker will provide follow-up contact to the families; follow-up contact can include telephone contacts, and/or home visits after termination of services to the families. Follow-up contacts are scheduled in 3, 6, 9, and 12-month intervals. These follow-up contacts will help to ensure family maintenance of skills and provide a refresher course and on-call services as needed. During this follow-up period, further assessments are completed, and program effectiveness is evaluated up to a year after termination of services to the family. The FPS worker will also be available to the families up to a year after termination of services to the family.

**DOCUMENTATION:**

- Family-focused, driven progress notes should reflect a strength-based family partnership. Child and family strengths and roles will be evident in the treatment.

- Will provide cultural competency: cultural and responsive to the unique ethical, racial, and cultural aspects of each family.

- All progress notes and documentation of the family's treatment will be completed in Mississippi Automated Child Welfare Information System (MACWIS). Training will be provided to each FPS staff by MDHS. The schedule of the training dates will be forthcoming. This information will be transmitted in the format agreed upon by MDHS/DFCS and the provider.

**INTERVENTION:**

- Provide close monitoring of high risk families while teaching skills to family members so that they can safely stay together.

- Address 5 areas of family functioning:

  1.  Environment
  2.  Parental capabilities
  3.  Family interactions
  4.  Family safety
  5.  Child well-being

- Provide treatment utilizing evidence-based practices.

- Achieve long-term, successful outcomes for children in the home.

- Empower families to take responsibility for their children and to resolve problems independently when possible.

- Will service families and children, first and foremost, protected from abuse and neglect.

- Will educate families so that they will have an enhanced capacity to provide for their children's needs.

- Funds for client needs will be available to active families in FPS which will be based on need. The specific amount will be determined by the provider. The availability of flexible funds for the purpose of concrete emergency services is vital to the success of Family Preservation Services. The purpose of flexible dollars is to provide the Family Preservation team with a crucial element in the treatment that can respond to the family's acute needs for material support.

- Flexible funds are not seen as a continuing income source, but rather an important crisis intervention tool to improve the family's quality of life or to ensure safety or physical health. These funds will be used only in the event that other resources have been explored, exhausted and the permanency, safety, and well-being of the child are in jeopardy and the provision of such support will prevent removal.

**REASONS FOR DISCONTINUATION OF FAMILY PRESERVATION SERVICE:**

A decision for discontinuance will involve the Family Preservation Team and the County Staff. Reasons for discontinuation could include:

1. Completion of intensive services.
2. Lack of cooperation by family.
   a. Repeated no shows, significant avoidance and failure to follow through.
   b. Hostility; unworkable level of resistance.
3. The child remains at risk and/or abusive parent does not develop controls.
4. If there is abuse or injury to the child which results in the child being removed from the home.

**TRAINING:**

Will have specialized training in the following areas of therapeutic intervention:

- Self-Control Techniques
- Communication and Problem-Solving Skills
- Altering Conditions Leading to Misbehavior
- Reinforcement Techniques
- Effective Non-Physical Punishment Techniques
- Methods of Maintaining and Generalizing New Skills
- Provider staff will participate in best practices and other specialized training.

**REPORTING:**

- Provider will furnish written reports for the Child and Family Service Plan (CFSP), the Annual Progress Service Report (APSR), and the Program Improvement Plan (PIP) on a quarterly basis. Services will be linked to the State's plan for reasonable efforts.
- All necessary documentation and narratives will be compiled and input into MACWIS within 24 hours of contact.

- The Provider will submit a comprehensive and detailed quarterly report including the following which will be submitted no later than 45 days after closeout of each contract period:
    1. List of employees hired, qualifications and duties.
    2. Timeline of activities from the start of contract to closeout of contract period
    3. Delivery of services, case records for each family, detailed and specific documentation/records of all services provided, dates and hours worked.
    4. Number of families served.
    5. Conferences, workshops, etc., detailed report of attendance and content of sessions.
    6. Demographics, referral reason, presenting issues, risk factors, number of referrals with discontinuation of services, etc., disposition and outcomes, and placement issues, if applicable on each family served.
    7. Number of children removed during the service provision and the reason for removal.
    8. % of children in families who completed FPS who are not subjects of reports with verified or indicated maltreatment within 12 months after program completion.
    9. % of children who were victims of another substantiated or indicated report within a 6-month period.
    10. % of all children who were victims of a substantiated or indicated maltreatment reported in the first 6 months of the program.
    11. % of children reunified who were reunified within 12 months of the latest removal.
    12. % of children removed within 12 months of a prior reunification.
    13. % of children not abused or neglected during services.
    14. % of children serviced.
    15. Provider will be available for monitoring and evaluation purposes.

**COLLABORATION:**

- Representatives from the provider and MDHS State Office staff will meet once a month to discuss any major concerns, issues, or significant deviations from the agreed upon services. Contact can be face-to-face or via conference call.

- Will have collaboration with MDHS and its entities as well as with other professions including technical assistance and training to Mississippi Band of Choctaw Indians on Family Preservation issues.

**EVALUATION METHODS:**

- Assessment of the program will be done on the basis of 1) accumulated statistics; 2) a client satisfaction form which will be completed by the family upon acceptance, at mid-treatment, and at termination; and 3) periodic worker surveys concerning the provided program services. Reviews will be completed on the goal attainment form during each phase of the treatment.

- Performance outcomes will be measured through the North Carolina Family Assessment Scale (NCFAS) for Intensive Family Preservation Service Programs. Random monitoring of provider services will be conducted.

**MEDIATION:**

- The Central Officer will be notified of any concerns or complaints regarding referrals, case review, discontinuation of services and decisions concerning case direction. The final decision will be determined by MDHS/DFCS Protection Unit's Director.

**OUTCOMES EXPECTED:**

- 97% of the children served will remain free of abuse/neglect during the provision of the 20 weeks of Family Preservation Services (FPS).
- 93% of the families who begin treatment in the 20 week program will successfully complete it.
- *85% of the families served during the 20 week period will complete educational enhancement courses in the areas of Self-Control, Communication, Domestic Violence, Child Management Skills, Problem-Solving Techniques, Right to Birth, etc.*
- 90% of all families served for the 20 week period of treatment will have knowledge of all available resources, i.e., Medicaid/Medicare, Birth Documentations, Social Security, Concrete needs, Rescue missions, Support Groups, etc.
- *85% of the children served during the 20 weeks of the program will have no placement during their participation in FPS.*
- 80% of the families served will not require further intervention by the Division of Family and Children's Services (DFCS) at the termination period of 20 weeks.
- 90% of the families served will indicate satisfaction of FPS provided at termination of the 20 week program.
- 95% of children served during the 20 weeks will remain safe in their homes 12 months after the program ends.
- 93% of families served will remain intact within 24 months of case closure.

**Ex. 12H**

## MISSISSIPPI CHILDREN'S HOME SOCIETY
## FAMILY PRESERVATION PROGRAM
## SCOPE OF SERVICES

**SERVICE DEFINITION:**

For the grant period from October 1, 2008 – September 30, 2009, Mississippi Children's Home Society, a Family Preservation subgrantee for MDHS/DFCS agrees to provide Family Preservation services statewide for up to 160 family cases given that MDHS/DFCS provides the referral base to maintain active caseloads for our existing Family Preservation Teams. This contract is a continuance of services provided to those families enrolled in the twenty-week program at the end of the previous contract.

Family Preservation Services (FPS) is an intensive home-based therapeutic program available to families 24 hours, seven days a week. Provider will *maintain a* Family Preservation Program with the following requirements:

- Family Preservation was created by Federal Law in 1993 under the "Home Ties Program", which Mississippi adopted in 1994 in order to bridge the gap that would provide concentrated and intense home-based services to families. The purpose of this law was to prevent removal of children from their homes, and/or to reunify children who have been removed from their families.

- The primary criteria for referral to the Family Preservation Program will be a child served by MDHS who is at risk for removal from the home setting for a placement in a standard or more restrictive foster care placement. Children ranging in ages from birth to 18 will generally have been targeted for removal due to one or more of the following reasons:

  1. The health, safety, and well being of the child are threatened due to high risk factors as determined by the safety assessment.
  2. The child is adjudicated and in need of care and permanency while facing placement in an out-of-home treatment facility.

- The services to be provided must be intensive and comprehensive to families in their own homes. Location is identified as where the family lives and functions, i.e. birth, kin, adopted, foster. Service can also take place in the school, jail, juvenile detention centers, homeless shelters, or other community areas, etc.

**REUNIFICATION:**

Family Preservation will provide reunification services to children who have been out of the home for a period of no more than 90 days. Preparation services can be provided to the family prior to the return of the child but there must be a permanency plan and date for the child to be

placed back within the family home during the 20 weeks of Family Preservation services. The referral for reunification services will follow the referral process.

**REFERRAL PROCESS:**

- The referral process will take place according to the MDHS established protocol.

**OBJECTIVES:**

- To improve family functioning and prevent the need for out-of-home child placement, the Family Preservation Program has established the following objectives:

  1. To provide crisis intervention to troubled families.
  2. To conduct assessments of child and family functioning.
  3. To aid families in locating and accessing concrete services (housing, clothing, food, etc.).
  4. To provide services with a focus on parental self-control, child management skills, communication and problem-solving techniques.
  5. To provide other necessary services as needed.
  6. To evaluate program efficiency and consumer satisfaction.

**PERIOD OF SERVICE:**

- Family Preservation contacts the family within 48 hours of accepting the referral and sooner if it is deemed an emergency by the Supervisor or Protective Services social worker. In the case of an emergency, where the Protective Services worker plans to immediately remove a child due to severe abuse/neglect, it may be necessary for the Family Preservation Service (FPS) worker to make initial contact as soon as possible. If a family is accepted into the program, the service delivery will be provided up to 20 weeks.

- Services will require three to six months in time. The average service delivery is 90-180 days. This timeframe is to account for the families who complete the service early and for those who will need additional time for completion. A written policy for extension must be in place, but above no more than 10% of the families served will be extended, and the length of extension should be no more than 30 additional days. A request will be approved or disapproved at the MDHS State Office level.

**SCHEDULE OF SERVICE DELIVERY:**

- A treatment plan is developed at the end of the first two weeks of contact with the family. During the first 10 weeks of contact, the program provides each family 5 to 15 hours of direct contact per week, which may include home visits, telephone contacts, assessing concrete services, and other case management duties. A minimum of 4 hours direct contact must be face to face. During weeks 11-20, contact is decreased from 2 to 5 hours per week as treatment goals are achieved and family functioning is stabilized. During this phase, a minimum of 3 hours direct contact must be face to face. In addition, FPS

workers are available to families 24 hours per day and follow-up services are provided.

- Follow-up contact can include telephone contacts, and/or home visits after termination of services to the families. Follow-up contacts are scheduled in 3, 6, 9, and 12-month intervals. Written documentation is required on each follow-up contact to indicate the family's status. These follow-up contacts will help to insure family maintenance of skills and provide a refresher course if needed and on-call services will also be available if needed. Also during this follow-up period, further assessments are completed, and program effectiveness is evaluated.

- Family Preservation will provide the intensity and frequency of at least 2 to 5 meetings weekly, depending on the stage of treatment.

- Family Preservation Teams are available and on-call 24 hours a day/seven days a week. The Family Preservation Team schedules will be flexible and schedule meetings, appointments and services considering the schedules of the family and children.

- Family Preservation will provide services of at least 5 hours per week per family, one of which can be collateral or other systems contact. A minimum of 4 hours direct contact must be face to face.

- Family Preservation will maintain caseloads of 4-6 families per team.

- Family Preservation will be available, provide crisis response and use mobile outreach response as needed.

- Family Preservation will develop safety plans with each family including crisis protocol that is family centered.

- Program content will be strength-based: Family empowerment will be essential in treatment. Service delivery will be supportive and respectfully built on the strength of the family.

## DEVELOPMENT OF A TREATMENT PLAN:

- While crisis services will be available to families throughout the family assessment, a Family Team Meeting will be held to develop the Comprehensive Family Treatment Plan and the Individual Service Plan (ISP), within two weeks of the referral. This meeting will include, but is not limited to, the following:

  1. The FPS worker
  2. At least one representative from the family
  3. The County staff

- The Treatment Plan will include:

1. Family treatment goals.
2. Treatment components/procedures to be used in achieving the goals.
3. Needed concrete services.
4. Individuals responsible for implementing procedures.
5. Methods for measuring progress and goal attainment.

**COORDINATION WITH MDHS STAFF:**

By the end of the initial two weeks, the FPS team (to include the FPS Provider, MDHS worker, all applicable family members and any support systems deemed necessary per the family's request) will complete the treatment plan and assessment summary. The FPS team (to include the FPS Provider and MDHS worker) will *attend* court when subpoenaed or when deemed appropriate by the Supervisor.

**COUNTY STAFF ROLE:**

1. Make referral to the Family Preservation program.
2. Coordinate and facilitate the initial Family Team Meeting on Preventive cases with the FPS worker. Also during the initial meeting, the MDHS social worker will share vital information with the FPS worker on the family referred, and the MDHS social worker and the FPS worker will coordinate a transitional phase for the family from Protective Services to Family Preservation Services.
3. Coordinate and facilitate all Family Team Meetings on Custody cases.
4. Keep open cases on families referred to the Family Preservation program.
5. Have quarterly staff meetings with FPS worker.
6. In the event of child removal, county worker will handle all of the details.

**FAMILY PRESERVATION STAFF ROLE:**

1. Conduct an assessment on each family and provide a copy of the treatment plan and assessment summary to the referring county staff.
2. Provide written documentation of services to county staff by the *5th* working day of the month.
3. Participate in the initial Family Team Meeting and coordinate and facilitate the subsequent Family Team Meetings on all prevention cases, MDHS social worker and FPS worker will coordinate a transitional phase for the family from Protective Services to Family Preservation Services.
4. Be available at all times to the family and maintain weekly contact with the family during the intensive phase of the program.
5. Notify MDHS social worker of any new child abuse/neglect. Also, immediately notify MDHS staff if safety of the child(ren) cannot be maintained.
6. After the family completes the intensive phase of treatment, the FPS worker will provide follow-up contact to the families, follow-up contact can include telephone contacts, and/or home visits after termination of services to the families. Follow-up contacts are scheduled in 3, 6, 9,

and 12-month intervals. These follow-up contacts will help to insure family maintenance of skills and provide a refresher course and on-call services as needed. During this follow-up period, further assessments are completed, and program effectiveness is evaluated up to a year *after* termination of services to the *family*. The FPS worker will also be available to the families up to a year after termination of services to the family.

**DOCUMENTATION:**

- Family-focused, driven progress notes should reflect a strength-based family partnership. Child and family strengths and roles will be evident in the treatment.

- Will provide culturally competency: culturally and responsive to the unique ethical, racial, and cultural aspects of each family.

- All progress notes and documentation of the family's treatment will be completed in Mississippi Automated Welfare Information System (MACWIS). Training will be provided to each FPS staff by MDHS. The schedule of the training dates will be forthcoming. This information will be transmitted in the format agreed upon by MDHS/DFCS and the provider.

**INTERVENTION:**

- Provide close monitoring of high risk families while teaching skills to family members so that they can safely stay together.

- Address 5 areas of family functioning:

  1. Environment
  2. Parental capabilities
  3. Family interactions
  4. Family safety
  5. Child well-being

- Provide treatment utilizing evidence-based practices.

- Achieve long-term, successful outcomes for children in the home.

- Empower families to take responsibility for their children and to resolve problems independently when possible.

- Will first and foremost, protect children and families from abuse and neglect.

- Will educate families so that they will have an enhanced capacity to provide for their children's needs.

- Flexible funds will be available to meet client needs for active families in FPS. The specific amount will be determined by the provider. The availability of flexible funds for the purpose of concrete emergency services is vital to the success of Family Preservation Services. The purpose of flexible dollars is to provide the Family Preservation team with a crucial element in the treatment that can respond to the family's acute needs for material support.

- Flexible funds are not seen as a continuing income source, but rather an important crisis intervention tool to improve the family's quality of life or to insure safety or physical health. These funds *will* be used only in the event that other resources have been explored, exhausted and the permanency, safety, and well-being of the child are in jeopardy and the provision of such support will prevent removal.

**REASONS FOR DISCONTINUATION OF FAMILY PRESERVATION SERVICE:**

A decision for discontinuance will involve the Family Preservation Team and the County Staff. Reasons for discontinuation could include:

1. Completion of intensive services.
2. Lack of cooperation by family.
   a. Repeated no shows, significant avoidance and failure to follow through.
   b. Hostility; unworkable level of resistance.
3. The child remains at risk and/or abusive parent does not develop controls.
4. If there is abuse or injury to the child which results in the child being removed from the home.

**TRAINING:**

Will have specialized training in the following areas of therapeutic intervention:

Self-Control Techniques, Communication and Problem-Solving Skills, Altering Conditions Leading to Misbehavior, Reinforcement Techniques, Effective Non-Physical Punishment Techniques, and Methods of Maintaining and Generalizing New Skills. Provider staff will participate in best practices and other specialized training.

**REPORTING:**

- Provider will furnish written reports for MDHS/DCFS as specified and required on a quarterly basis.

- All necessary documentation and narratives will be compiled and input into MACWIS System within 24 hours of contact.

- The Provider will submit a comprehensive and detailed quarterly report including the following which will be submitted no later than 45 days after close out of each contract period:

1. List of employees hired, qualifications and duties.
2. Timeline of activities from the start of contract to closeout of contract period
3. Delivery of services, case records for each family, detailed and specific documentation/records of all services provided, dates and hours worked.
4. Number of families served.
5. Conferences, workshops, etc., detailed report of attendance and content of sessions.
6. Number of families served.
7. Demographics, referral reason, presenting issues, risk factors, number of referrals with discontinuation of services, etc., disposition and outcomes, and placement issues, if applicable on each family served.
8. Number of children removed during the service provision and the reason for removal.
9. % of children in families who completed FPS who are not subjects of reports with verified or indicated maltreatment within 12 months after program completion.
10. % of children who were victims of another substantiated or indicated report within a 6-month period.
11. % of all children who were victims of a substantiated or indicated maltreatment reported in the first 6 months of the program.
12. % of children reunified who were reunified within 12 months of the latest removal.
13. % of children removed within 12 months of a prior reunification.
14. % of children not abused or neglected during services.
15. % of children serviced.
16. Provider will be available for monitoring and evaluation purposes.

**COLLABORATION:**

- Representatives from the provider and MDHS State Office staff will meet once a month to discuss any major concerns, issues, or significant deviations from the agreed upon services. Contact can be face-to-face or via conference call.

- Will have collaboration with MDHS and its entities as well as with other professions including technical assistance and training to Mississippi Band of Choctaw Indians on Family Preservation issues.

**EVALUATION METHODS:**

- Assessment of the program will be done on the basis of 1) accumulated statistics; 2) a client satisfaction form which will be completed by the family upon acceptance, at mid-treatment, and at termination; and 3) periodic worker surveys concerning the provided program's services. Reviews will be completed on the goal attainment form during each phase of the treatment.

- Performance outcomes will be measured through the North Carolina Family Assessment Scale for Intensive Family Preservation Services Programs (NCFAS). Random monitoring of provider services will be conducted.

**MEDIATION:**

- The Central Officer will be notified of any concerns or complaints regarding referrals, case review, discontinuation of services and decisions concerning case direction. The final decision will be determined by MDHS/DFCS Protection Unit's Director.

**OUTCOMES EXPECTED:**

- 97% of the children served will remain free of abuse/neglect during the provision of the 20 weeks of Family Preservation Services (FPS).
- 93% of the families who begin treatment in the 20 week program will successfully complete it.
- *85%* of the families served during the 20 week period will complete educational enhancement courses in the areas of Self-Control, Communication, Domestic Violence, Child Management Skills, Problem-Solving Techniques, Right to Birth, etc.
- 90% of all families served for the 20 week period of treatment will have knowledge of all available resources, i.e., Medicaid/Medicare, Birth Documentations, Social Security, Concrete needs, Rescue missions, Support Groups, etc.
- *85%* of the children served during the 20 weeks of the program will have no placement during their participation in FPS.
- 80% of the families served will not require further intervention by the Division of Family and Children's Services (DFCS) at the termination period of 20 weeks.
- 90% of the families served will indicate satisfaction of FPS provided at termination of the 20 week program.
- 95% of children served during the 20 weeks will remain safe in their homes at 12 months after the program ends.
- 93% of families served will remain intact within 24 months of case closure.

# Ex. 13A

SPB Form 800-3
Revised: June  2008

MS STATE PERSONNEL BOARD
PERFORMANCE APPRAISAL REVIEW REPORT

Page___1_____of___6____

Name:_____    Title: Resource Specialist_____

Agcy: 0662       PIN:_____

Employee's Signature:_____    Date:_____

| Section 2. | Duties/Performance Standards | WT | Section 5.    Accomplishments/Areas To Improve | WeightXRating=Points |
|---|---|---|---|---|
| **1. Conducts Recruitment Activities**<br>• Participates in general and targeted population recruitment activities at least once quarterly.  Activities may include presentations to groups, booths at various gatherings, and other venues as approved by Resource ASWS.<br>• Provides documentation of recruitment activities to Resource ASWS within one week of the event 90% of the time.<br>• Performs child specific recruitment activities by:<br>  1. Preparing for and attending Placement Committee meetings<br>  2. Developing tools/materials such as flyers, videos, pamphlets of children in need of adoptive placement for distribution.<br>  3. Coordinating with private providers, the media, and other agency staff in the presentation of children freed for adoption. | | | |
| **2. Plans and conducts training for Resource Families.**<br>• Prepares, plans, and conducts pre-service training as directed by Resource ASWS.<br>• Documents invitations sent to Inquiry applicants 95% of the time. | | | |

- Documents pre-service training in MACWIS, prepares certificates, and disperses certificates, maintains and distributes sign-in sheets within 10 working days of the completion of training 90 % of the time.
- Makes all families in the geographical area of responsibility aware of in-service training opportunities monthly 90 % of the time. Documentation of invitation letters is maintained in the case file.
- Maintains documentation of the completion of training in the Resource Family's MACWIS case file 95% of the time.

**3. Performs Resource Home licensure activities and maintains licensed homes in active status.**

- Submits 90% of home studies within 30 days of the day of assignment unless valid reasons for non-compliance are documented.

- Submits license changes within three days of the verification of standards being met 90 % of the time.

- Submits reevaluation paperwork 30 days prior to the expiration date of the license 90 % of the time. Exceptions created by the family's non-compliance are thoroughly documented.

- Submits ICPC home studies within 45 days of assignment unless there are documented, valid reasons for exceptions 85% of the time.

| | | | |
|---|---|---|---|
| **4. Provides retention services to Resource Homes.**<br>• Documents monthly in-home contact in each Resource Home in MACWIS without placement 95% of the time.<br>• Attends Resource Parent Support Group Meetings in geographical area as assigned by Resource ASWS.<br>• Participates in Family Team Meetings related to initial placements and/or potential disruptions 85% of the time.<br>• Accompanies Family Protection Specialist in investigations of abuse/neglect allegations in Resource Homes 90% of the time.<br>• Provides educational and referral services to maintain placements as needed. | | | |
| **5. Provides adoption preparation services.**<br>• Develops a written adoption plan within 15 days of assignment of adoption COS service line 90% of the time.<br>• Completes child's file within 30 days of notification of TPR 95% of the time unless exceptions beyond the control of the Specialist are clearly documented.<br>• Provides child specific recruitment services when there is no identified adoptive family 95% of the time.<br>    1. Attends adoption status meetings for all children freed for adoption not in adoptive placements and documents in MACWIS 95% of the time.<br>• Participates in preparation for Placement Committee Meetings and | | | |

| | | | |
|---|---|---|---|
| attends as assigned by Resource ASWS. | | | |

| | | | |
|---|---|---|---|
| **6. Provides adoption services.**<br>• Completes all necessary adoption paperwork (Adoption Subsidy Agreement, signed narrative background information, etc) 90 % of the time.<br>• Provides adoption issues counseling 90 % of the time.<br>• Develops, implements and documents (in the MACWIS narrative section of the child's case) a written pre-placement activity plan within 10 days of assignment 90% of the time.<br>• Makes at least monthly in-home visits with adoption COS children in adoptive placements and documents in MACWIS 90% of the time.<br>• Links Resource Families to services and referrals necessary to maintain placements and ensures that child's needs are met.<br>• Assists Resource Family with adoption finalization process in a timely manner 90 % of the time.<br>• Provides post-adoption services to include referrals for respite care, counseling, mental health services, and Family Preservation services.  Provides crisis intervention and Adoption Subsidy updates as requested 90 % of the time. | | **DRAFT** | |

**7. Establishes and maintains professional levels of communication and work relationships.**

- Written work products are concise, legible, understandable and accurate. Correspondence exhibits correct spelling, subject-verb agreement, and correct grammar. Written communication gives a detailed, descriptive account of circumstances, facts, issues being addressed for accurate assessment and disposition.
- Serves on community task forces/committees; projects professionalism and a positive Agency image and attitude to clients, staff and the community at large.
- Utilizes supervisory assistance in decision making and appropriately responds to supervisory guidance.
- Has no more than one (1) documented, valid complaint in a rating period.

**8. Complies with administrative directives.**

- Signs in and out with each arrival to and departure from the office 95 % of the time.
- Logs on and off state cell phone daily 90 % of the time.
- Responds to the need for after-hours or emergency work and performs accordingly 95 % of the time.
- Assumes other duties as assigned.
- Completes monthly reports in accordance with established time guidelines 90% of the time.
- Completes and submits monthly work

| | | |
|---|---|---|
| plan by the 5th of the month 90% of the time. | | |
| **9. Maintains social work license in active status.**<br>• Attends at least 20 hours of approved social work continuing education hours yearly.<br>• Provides documentation of continuing education hours to Resource ASWS 90 % of the time.<br>• Develops personal, professional and training skills through reading, attendance of educational offerings, and practice. | | |
| **10. Maintains a current Office Property & Equipment Log, Form MDHS-PROP-114E** visibly posted in office or work area, and ensures that all assigned property is accounted for. | <u>**DRAFT**</u> | |
| **11. Works cooperatively with County Director and supervisors from all divisions before and after the opening and staffing of local shelters.**<br>• Assumes shelter duty and/or helps with regular MDHS duties in the emergency aftermath in affected or surrounding county.<br>• Is knowledgeable of DFCS's Disaster Plan and of implements the plan in the event of a disaster. | <u>**DRAFT**</u> | |

_____ **TOTAL WEIGHT**    _____ **TOTAL POINTS**

**Total Points - Total Weight = SUMMARY RATING**

**Ex. 13B**



**STATE OF MISSISSIPPI**
HALEY REEVES BARBOUR, GOVERNOR
**DEPARTMENT OF HUMAN SERVICES**
DON THOMPSON
EXECUTIVE DIRECTOR

BULLETIN: 6176                    DIVISION OF FAMILY AND
                                 CHILDREN'S SERVICES

TO:             DFCS Deputy Directors
                DFCS Unit Directors
                DFCS Regional Directors
                DFCS Area Social Work Supervisors
                DFCS Family Protection Specialists
                DFCS Family Protection Workers
                DFCS Resource Family Unit (Adoption/Licensure)
                DFCS Independent Living Staff
                DFCS Training staff
                DFCS MACWIS staff
                DFCS Foster Care Reviewers
                All Volume IV Holders

FROM:           Kate McMillin, Director
                Division of Family and Children's Services

DATE:           August 18, 2008

SUBJECT:        Protocol for Adoption Status Meetings

**Effective immediately, the requirements contained within this bulletin are hereby set forth in DFCS' policy.**

Attached is policy covered in Section F of the Volume IV Policy Manual. This policy has been revised in accordance with federal policy requirements. The Adoption Status Meeting Policy will become XIV in Section F on page 4532. It does not replace the Current Resource Family Adoption that was XIV in Section F, but all of the roman numerals following it change in numbering. Please add this page in behind the current page 4532 of the Resource/Licensure Policy within the Volume IV Policy Manual. Please leave the current policy in place until a revised final rule is sent.


KM: PPWG: jr


Attachment

## XIV. Adoption Status Meeting

When a child's primary permanency plan is established as adoption, DFCS shall, within ten (10) working days, assign a Resource Specialist to work with the assigned DFCS worker to immediately begin the process of securing an adoptive placement for the child. Within fifteen (15) calendar days of the primary permanency plan change to adoption, the DFCS worker, along with the Resource Specialist, shall jointly prepare an adoption plan that identifies the child-specific activities that DFCS will undertake to achieve the permanency plan of adoption and the timeframes in which the activities will be completed. The Resource Specialist shall be responsible for consulting with private and public professionals and identifying and ensuring the provision of targeted services necessary for the child to be adopted. An Adoption Status Meeting with the DFCS worker, the Resource Specialist, and the worker's direct supervisor to review the progress being made in achieving the plan of adoption shall occur weekly for infants from birth to twelve (12) months and monthly for all other children awaiting adoption. The Adoption Status Meeting shall be documented in the child's case record 🖥 within MACWIS in five working days.

Once a child has been legally freed with no home identified during the first six (6) months, DFCS shall assign an external adoption consultant. The consultant will work in conjunction with the assigned DFCS caseworker and Resource Specialist. This team will review, amend, or approve the adoption plan. The team will insure the plan is implemented. The initial meeting with the consultant to review the adoption plan shall be in person. The consultant shall also participate in the monthly or, in the case of infants, weekly Adoption Status Meetings, but may do so by conference call where geographic barriers make in-person participation impractical.

# Ex. 13C

## Child-Focused Recruitment

The Harden House Adoption Wendy's Wonderful Kids Adoption Recruiter executes a very specific process for each child, which focuses exhaustively on their individual histories, experiences and needs in order to find the appropriate permanent family for the child.

The recruiter works closely with the Mississippi Department of Human Services Social Worker to develop trust and first-hand knowledge. Using all available resources, a customized recruitment plan for each child is developed.

The Dave Thomas Foundation is working hard to assure the effectiveness of this model through long-term, rigorous, and independent research because these children deserve our best efforts.

Wendy's Wonderful Kids
Adoption Recruiter
Toll-free (800) 748-3005 or
(601) 354-0983
860 East River Place,
Suite 104
Jackson, MS 39202

Or

Toll-free (888) 893-7318 or
(662) 680-9191
1800 North Gloster Street,
Suite A
Tupelo, MS 38804

Website:
www.hardenhouse.org



Wendy's Wonderful Kids®
A Signature Program of the
Dave Thomas Foundation for Adoption
© 2007 Cidemark LLC

**Bring Enrichment and Joy to Your Life**



## Choose Foster Care Adoption



Rebuilding Broken Lives

**Southern Christian Services for Children and Youth, Inc.**

## The Important Need

### Children Are Waiting

- On any given day, 3,398 children are waiting in Mississippi's foster care system; 101 of those children are available for adoption.

- More children become available for adoption each year than are adopted.

- Many of the children in Mississippi's foster care system are teenagers and sibling groups.



## The Program

### Wendy's Wonderful Kids

A signature program of the Dave Thomas Foundation for Adoption, Wendy's Wonderful Kids, is the first nationwide program that partners a major corporation with a national foundation to place foster care children in permanent adoptive homes.

### How it Works

Wendy's restaurants and their customers raise funds for the Dave Thomas Foundation for Adoption through the coin canisters on Wendy's restaurant counters, golf tournaments and special promotions. The Foundation uses those funds to award grants to local adoption agencies, which in turn hire skilled adoption recruiters. These recruiters dedicate 100 percent of their time to aggressive child-focused recruitment targeted exclusively on placing foster children in loving, adoptive families in their communities.

## The Collaboration Between Wendy's Wonderful Kids Program And The Mississippi Department of Human Services

The children in the Wendy's Wonderful Kids Program are children in the custody of the Mississippi Department of Human Services. The children who are on the caseload of the Wendy's Wonderful Kids Adoption Recruiter are referred to the program when the child is not matched with a family.

The Harden House Adoption Wendy's Wonderful Kids Recruiter works closely with the Mississippi Department of Human Services Social Workers to assist in finding permanent families for the children.



A Signature Program of the
Dave Thomas Foundation for Adoption
© 2007 Oldemark LLC

©2008 Oldemark, LLC. The Dave Thomas Foundation for Adoption name and design are registered trademarks of Oldemark, LLC and licensed to the Dave Thomas Foundation for Adoption.

## Every Child Needs and Deserves a Loving Family.

**Toll-free: Harden House Adoption Wendy's Wonderful Kids Adoption Recruiter (800) 748-3005**

**Ex. 13D**



**STATE OF MISSISSIPPI**
Haley Reeves Barbour, Governor
**DEPARTMENT OF HUMAN SERVICES**
Donald R. Taylor
Executive Director

November 15, 2007

Ms. Rita Sorenon, Executive Director
Dave Thomas Foundation for Adoption
4150 Tuller Road, Suite 204
Dublin, Ohio 43017

Dear Ms. Sorenon:

This letter is to acknowledge our continued commitment to the partnership between the Mississippi Department of Human Services and Southern Christian Services for Children and Youth, Inc./Harden House Adoption Program, and the Wendy's Wonderful Kids initiative.

The partnership commitment agrees to the following:

- For the purposes of recruitment, the Wendy's Wonderful Kids recruiter and her supervisor will continue to have access to children (and their case files) who are waiting in foster care for a permanent home.

- The Wendy's Wonderful Kids recruiter will continue to meet with the County workers, and attend monthly and quarterly placement meetings in order to gain access to children freed for adoption.

- The Wendy's Wonderful Kids recruiter will participate in the taping of Wednesday's child.

If you need further information or have any questions concerning this partnership, please do not hesitate to contact me at (601) 359-4999.

Donald R. Taylor, Executive Director
Mississippi Department of Human Services

Susannah K. Cherney, Executive Director
Southern Christian Services for Children
and Youth, Inc.

**Ex. 14**



**STATE OF MISSISSIPPI**
HALEY REEVES BARBOUR, GOVERNOR
**DEPARTMENT OF HUMAN SERVICES**
DONALD R. TAYLOR
EXECUTIVE DIRECTOR

BULLETIN NO. 6103

DIVISION OF FAMILY AND
CHILDREN'S SERVICES

TO:   DFCS Director of Field Operations
     DFCS Unit Directors
     DFCS Regional Directors
     DFCS Area Social Work Supervisors
     DFCS Family Protection Specialist, Senior and Advanced
     DFCS Family Protection Worker
     DFCS Resource Family Program (Adoption/Licensure)
     DFCS Foster Care Review Program
     DFCS Training staff
     DFCS MACWIS staff
     All Volume IV Holders

FROM:   Rickie Felder, Director *RF*
     Division of Family & Children's Services

DATE:   April 12, 2007

SUBJECT:  **Revised Final Rule – Intake, Screening and Assessment**

Attached is the revised final rule Intake, Screening and Assessment policy for the Volume IV manual. Please remove from Section B pages 2010 through 2027 dated September 2006 and replace them with the attached pages 2010-2028 dated April 2007. This revision incorporates the "pen and ink" changes and clarifications which were made during Train the Trainer. Please be sure you are using the April 2007 Revision of the Intake, Screening and Assessment Policy.

RF:ty

# INTAKE, SCREENING AND ASSESSMENT POLICY

## I. INTRODUCTION

### A. Working Principles

Intake requests for services are accepted at all county offices of the Division of Family and Children's Services within the Mississippi Department of Human Services. Section 43-21-353 of the Mississippi Code details how intake reports of suspected child abuse/neglect are made and the actions that shall be taken by the agency.

An intake request for services may be voluntary or involuntary. It is considered voluntary when the applicant is either the person requesting services for him/her self and any dependent or another person who is acting responsibly in the applicant's behalf. Involuntary applications include requests for intervention from courts of competent jurisdiction, complaints from concerned citizens on alleged neglect, abuse or exploitation of an adult/child, or any other source seeking agency assistance in exploring or investigating an alleged hazardous personal or family situation.

### B. Indian Child Welfare Act (ICWA)

The Federal Indian Child Welfare Act (ICWA) was passed in 1978 to protect the rights of the American Indian children. Refer to Section IV, Investigation of Suspected Child Abuse/Neglect and subsection G, Report on Native American Children.

## II. REPORTING ABUSE, NEGLECT OR EXPLOITATION

### A. Who May Make a Report

Section 43-21-353 of the Mississippi Code of 1972 states that any person who has reason to suspect the abuse or neglect of a child may make a report, in person or by telephone, to their local MDHS, Division of Family and Children's Services (DFCS) office or to the MDHS Statewide Child Abuse Hotline whose telephone number is located in the white pages of the telephone book. There are also Professional Mandated Reporters who are required by law to report abuse or neglect. These include, but are not limited to, any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family protection worker, family protection specialist, child caregiver, minister, law enforcement officer, public or private school employee or any professional who, in the course of professional counseling or treatment of a child, becomes aware of information leading them to believe abuse or neglect to a child has occurred.

Professional mandated reporters are required to provide written reports of suspected child abuse or neglect, in addition to any verbal reports. These written reports should be forwarded to the DFCS as soon as possible after the oral report is made.

Section 43-21-257 of the Mississippi Code requires that any records involving children, including valid and invalid complaints, be kept confidential and not be disclosed except as provided in Section 43-21-261.

## B. Immunity from Liability

Any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family protection worker, family protection specialist, child caregiver, minister, law enforcement officer, school attendance officer, public school district employee, nonpublic school employee, licensed professional counselor or any person participating in the making of a required report, pursuant to Section 43-21-355 of the Mississippi Code, participating in the judicial proceeding resulting there from, shall be presumed to be acting in good faith. Any person or institution reporting in good faith shall be immune from any liability, civil or criminal, that might otherwise be incurred or imposed.

## C. Anonymous Reporters

The agency does not require the identity of a reporter as a condition for reporting suspected child abuse, neglect or exploitation.

Reporters may be reluctant to share their identities due to fear of personal repercussions or other factors. This does not permit an opportunity for future contact by the agency; therefore, it is crucial that the Intake Worker gather as much information as possible before the intake call is terminated.

## III. INTAKE RESPONSIBILITIES

### A. Initial Report

The Intake Worker shall be responsible for gathering as much information as possible based on the following: 1) how to locate the family, 2) whether or not the abuse and/or neglect is caused by the person caring for the child, 3) the nature of the abuse and/or neglect, 4) if this report falls under the statutes of our state law as abuse and/or neglect, and 5) whether or not the family being reported has any tribal affiliation.

Initial reports can be pended 🖳 by the Supervisor if additional information is needed. The pending selection can only be used for the following reasons:
a.  Reporter will respond with additional information
b.  Supervisor or Worker is seeking additional information

*All Investigations of abuse that should be considered a felony crime under state or federal law shall be initiated immediately upon receipt by the Intake Worker.*

## B. Duties of the Hot Line Worker

The Hotline Worker will conduct steps 1-5 from the previous section and will contact the on-call Worker immediately.

## C. Examples of Reports That May be Screened out at Intake

The Supervisor will determine if a report may be screened-out during the intake process using the following information as a general guideline:

1. Reports on dirty houses or dirty children with no indication of life or health endangering situation will be screened out. If school/day care officials report dirty children, they should be requested to talk to parents first. *If their attempts to meet with parents or to correct situation fail, then accept the report.*

2. Reports that children are inappropriately dressed but there is no indication of neglect or a life or health-endangering situation will be screened out.

3. Allegations that speak more to the parent's behaviors rather than the child's condition; (e.g., parent drinks beer or takes drugs; mother has boyfriend) and there is no indication of neglect or life or health endangering situation will be screened out.

4. Reports of crowded conditions or too many people living in a home and there is no indication of neglect or life or health endangering situation will be screened out.

5. Allegations that a parent is not spending TANF, Food Stamps, Child Support or other income on children, and there is no indication of neglect of basic necessities, or of life or health endangering situation, will be screened out. *Reporters should be referred to local Economic Assistance office.*

6. Reports which suggest a need to be addressed by another agency and there is no indication of a life or health endangering situation will be screened out, (i.e., lack of school attendance, presence of lice, delinquency, lead/asbestos poisoning). *These reports should be referred to the appropriate agency for handling (i.e. school attendance officer, health department).*

7. Reports where sufficient information is not provided to enable the Department to locate the family, and this information cannot be secured through other sources after all reasonable efforts have been made, will be screened out. *General correspondence file should be set up on family.*

8. Reports of incidents that occurred when a person now eighteen (18) or over was a child will be screened out. When adults report that

abuse/neglect was perpetrated on them as children, they must have some other information or reason to believe that children presently cared for by the same perpetrator are being abused and/or neglected. *Support Services may be offered to the adult victim, as well as referral to mental health services and law enforcement.*

9.  A report on an unborn child will be screened out. The reporter should be referred to the County Health Department to contact a public health worker for services of the Health Department for the mother or family of the unborn child as appropriate. Other services of the agency may also be provided as necessary.  *In cases of physical abuse of a pregnant woman, information may be taken and referred to law enforcement.*

10. Reports of sexual relations involving victims age 16 and over that meet **all of the criteria below** will be screened out.

    Alleged victim was age sixteen (16) or over at the time incident occurred, and:

    a.  alleged victim is a normally functioning child, and

    b.  alleged victim, age 16 or over, willfully consented, and

    c.  alleged perpetrator is not a parent, guardian, custodian or person responsible for the child's care or support and resides in the child's home, or an employee of a residential child care facility licensed by MDHS.

    d.  No parental or caretaker abuse or neglect is suspected.

    *If any criteria do not apply, then report should be considered for investigation.*

    *If a referral is considered outside the jurisdiction of the agency, the report shall be documented and be referred to law enforcement of proper jurisdiction for investigation. Other services of the agency may be provided.*

11. Reports of rape, sexual molestation, or exploitation of any age child that meet all of the criteria below. Alleged perpetrator is not a caretaker, friend of caretaker, relative, other person living in the home, or employee of a child care facility where the child attends or lives.

    a.  No parental or caretaker neglect is suspected.

    b.  Law Enforcement has been informed of the report.

    *If either (a) or (b) does not apply, then report should be considered for investigation.*

    If law enforcement has not been contacted, the agency will immediately make the report to them. Other services of the agency will be offered to law enforcement (i.e., interviewing children) and the family (i.e., mental health referrals, counseling) as needed.

12. Reports of children who have not had their immunizations. *Reporter should be referred to the County Health Department to contact a public health worker or to the school attendance officer as appropriate.*

13. Threats or attempts of suicide by children if there is no suspicion of parental/caretaker abuse or neglect. *If the nature of the report suggests that the child is in immediate danger of self harm, a referral should be made immediately to Mental Health and/or Law enforcement. If reporter is a professional, they should be requested to refer the family to counseling. If family does not follow through, then case can be referred to the agency for neglect. If reporter is a non-professional, the agency should determine if family is seeking counseling. If not, the agency should investigate for neglect. If reporter feels suspicion of abuse/neglect exists just because suicide attempt was made, the agency will investigate.*

14. Physical injury committed by one child on another that meets <u>all</u> of the following criteria:

    a. Child is not in a care taking role over the other child and does not reside in the same household.

    b. No parental or caretaker abuse or neglect is suspected.

    c. Child victim and perpetrator are not in a residential child caring facility or a home licensed or approved by the Department of Human Services.

Requests for assistance with food, clothing, utilities, shelter, voluntary placement of children, transportation, court-ordered home evaluations, general requests for services, court- ordered supervision etc., should not be considered reports for CPS investigation. *These reports are considered requests for support services to be provided by the agency as appropriate, or referred to other agencies in the community.*

## D. Screening Reports and Assigning Response

A Supervisor will determine if there is adequate information to locate family; if the alleged perpetrator is a parent or guardian; if the report meets state defined maltreatment; and if the child is in immediate harm. If the first three criteria are met but there is not enough evidence to determine harm, the Supervisor will instruct the Worker to complete a Safety Assessment with the family. If there is enough information to determine the child is at risk, the Supervisor will assign the case for investigation. Within 24 hours of receipt of the report, the Supervisor will use one of the following Levels to determine the disposition of the report and assign to a Worker:

1. **Level One-** The report is <u>screened out</u> for child protective services and may receive a referral for information or a referral for services.

2. **Level Two-**The report is <u>screened in</u> and assigned to a Worker who must initiate a Safety Assessment within 72 hours of assignment of the report. The Worker has 7 days from initiation to complete the Safety Assessment

and to send it to the Supervisor for approval. Refer to Section IV for more about Safety Assessments and Safety Plans.

3. **Level Three**- The report is <u>screened in</u> and assigned for a full investigation. The Worker has <u>24 hours to initiate the investigation and 30 days to complete the investigation. A Safety Assessment and any Safety Plan shall be completed within 7 days from initiation.</u>
   *All Investigations of abuse that should be considered a felony crime under state or federal law shall be initiated immediately upon receipt by the Intake Worker.*

The Supervisor who receives a report by phone, in person, or in writing that a child has been: 1) Intentionally burned (any burn, including but not limited to cigarette burns and burns from hot water); 2) Intentionally tortured(with or without physical harm, i.e. locked in a dark closet for several hours, tied up, left for a significant period of time without food and water, etc); 3) Seriously injured or that serious injury has been attempted; 4) Sexually abused (any sexual abuse); or 5) Abused in any other way that would be a felony crime under state or federal law (i.e., child pornography, etc), **is to immediately call the law enforcement agency in whose jurisdiction the crime occurred and give all the information available, including the name and address of the person who made the report** pursuant to Section 43-21-353 of the Mississippi Code of 1972.

If at any time during the investigation it becomes apparent that the case does involve serious physical injury, burning, torture, sexual abuse or any other felony crime, the Worker then follows the steps outlined for these types of abuse.

## E. Procedure for Notification of Potential Child Abuse/Neglect

After the Supervisor screens in the report, the assigned Worker has time frames that must be followed for notifying the following professionals according to Section 43-21-353 of the Mississippi Code of 1972:

1. The appropriate prosecutor and law enforcement in the jurisdiction where the abuse occurred shall be notified immediately.

2. After the investigation is initiated, DFCS and law enforcement shall file the "Preliminary Report" with appropriate prosecutor's office within 24 hours.

3. Advise the youth court and the youth court prosecutor within 72 hours after the report, and continue to update this information as it becomes available.

## F. Same Reports

In order to classify a report as the same report and to screen it out for investigation, the Supervisor must determine if the new information includes:

    a. Same alleged perpetrator(s);

    b. Same victim(s);

    c.  Same types of child maltreatment(s); and

    d.  Same incident

If the prior investigation has been completed, the Supervisor must always make sure the prior report was thoroughly investigated. Information on the same report 🖳 will be entered into MACWIS and the system will attach this information to the previous information that was entered.

## G. Additional Information on Existing Investigations

The agency sometimes receives additional information regarding an incident or situation that is already being investigated.

If the worker is involved in an investigation and observes or receives information about additional maltreatment to the victim or another victim in the household, the worker should discuss this new maltreatment with the Supervisor within 24 hours. The Supervisor will determine if the new information is entered as a <u>post-allegation</u> and investigated to determine if additional safety factors are present or if it is entered as a new report. In cases where there are felony reports, refer back to subsection E.

## H. False Reports

An intentional false report is a report in which it is concluded that not only is there no evidence under state law or policy that a child was maltreated or at risk of maltreatment, but the reporter knew the allegation was false. The Worker should request that the reporter verify that the allegations made were false. According to Mississippi Code, Section 43-21-353 (7), "anyone who willfully violates any provision of this section [with false reporting], shall be, upon being found guilty, punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by imprisonment in jail not to exceed one (1) year, or both."

## IV. INVESTIGATION OF SUSPECTED CHILD ABUSE/NEGLECT

Any report that is not a felony crime under state law, must be initiated within the time frames allowed for the Levels in Section 3D. Information shall be entered 🖳 into MACWIS as the information is obtained during the investigation.

## A. Safety Assessment and Safety Plan

The Safety Assessment is used in situations when the report has been assigned a Level Two or Level Three investigation. This assessment is completed in 🖳 MACWIS within 7 days of the assigned report.

In circumstances where safety issues are identified, a Safety Plan will be developed with the family and will be implemented immediately.

In cases where no safety issues are identified, the report is closed after the Supervisor approves of the closure.

The Safety Plan will be documented in ⌨ MACWIS and may be printed as necessary.

## B. Request for Law Enforcement to Accompany

The Mississippi Code of 1972, Section 43-21-353 (6), specifies:

"In any investigation of a report made under this chapter of abuse or neglect of a child as defined in section 43-21-105(m), the Department of Human Services may request the appropriate law enforcement officer with jurisdiction to accompany the Department on its investigation, and in such cases the law enforcement officer shall comply with such requests".

Each county works out a written agreement with the local law enforcement agency on form MDHS-441-Protective Service Agreement, and updates when changes occur or at least annually. The original MDHS-441 is filed in the county office with copies given to the law enforcement agency who signed the form, the Regional Director of the county and the Protection Unit at the State Office.

## C. Reports Involving More than One County

A county may receive a report of child abuse/neglect when the incident occurred in another county and the child lives in the county receiving the report. Generally, the report of suspected abuse/neglect will be investigated in the county where the child lives. A case will not be transferred to another county due to the perpetrator and/or witnesses living in that county. The Worker will request the other county to interview the perpetrator/witness and report back to the county of residence for the child and/or his custodian. The county where the child lives is responsible for registering the report, completing the investigation, determining dispositions, and entering the data for the completed investigation. The report, if evidenced, must be provided to law enforcement and the District Attorney in the county where the abuse occurred. Coordination between counties is essential.

## D. Abused Child from Another State

When the child, who is the subject of an allegation of abuse, is a resident of another state and the abuse occurred in that state, the intake worker receiving the report will:

1. Complete the requested data elements ⌨ on the MACWIS Intake Screens.

2. Telephone the report to the Protection Unit for the county in the other state where the abuse allegedly occurred. The DFCS staff may assist the other state with its investigation by interviewing the child and his/her custodian.

This information may be forwarded directly to the other state. If an address is needed for the Child Protection agency in another state, MDHS staff may call the Child/Adult Abuse Hotline to obtain an address. The state where the abuse occurred will be responsible for completing the investigation.

## E. Mississippi Child Abused In Another State

When the child who is the subject of an allegation of abuse is a resident in Mississippi and has been allegedly abused in another state, the Intake Worker will:

1. Complete the requested data elements: 🖳 on the MACWIS Intake Screens.

2. Make an oral report to the Child Protective Service Unit in the State where the abuse allegedly occurred.

3. Request the other State's assistance in completing the investigation.

## F. Child on Child Reports

In order for a child to be investigated as perpetrator, he/she must be at least 12 years old and one or more of the following conditions must exist:
1. They are in a caretaker role;
2. They are 36 months older than the victim;
3. They forcibly overpower the victim.

If one or more of these conditions exist, this does not preclude the agency from completing a safety assessment or making a referral for services. Any report that meets the criteria listed above must be referred to Youth Services.

## G. Report on Native American Children

The Federal Indian Child Welfare Act (ICWA) was passed in 1978 and grants Indian tribes extensive jurisdiction in child welfare cases involving Native American children, recognizing "that there is no resource that is more vital to the continuing existence and integrity of Indian tribes than their children". Because of this Act's existence, the agency has no jurisdiction to investigate allegations of abuse or neglect occurring on Native American tribal lands, but the agency has and will continue to receive reports of abuse/neglect to Native American children whether they live on or off tribal lands. Should a Worker receive such a report, a determination shall be made as to whether:

1. The child is a member of a Native American Tribe and falls under the purview of ICWA;

2. The child resides on land where an Indian tribe has jurisdiction.

The tribal lands of the Mississippi Band of Choctaw Indians are not solely confined to Neshoba County within Mississippi. The Choctaw reside in eight

counties and these counties are Neshoba, Attala, Jones, Kemper, Leake, Newton, Scott and Winston.

**If a child is a member of the Choctaw tribe and lives on tribal land,** the Intake Worker will immediately notify his or her Supervisor, who will in turn notify the Mississippi Band of Choctaw Indians at their Social Services Department in Neshoba County. MDHS permits the tribe an opportunity to assess the report and to provide services as it deems appropriate for the children and/or their families. If the tribe request the MDHS Worker to initiate the investigation, that Worker must confirm the family is of the Choctaw heritage. If the answer is yes, these additional five questions must be asked:

1. Is parent eligible for tribal membership?
2. Is parent registered with Native American tribe?
3. Is child eligible for tribal membership?
4. Has child been registered with Native American tribe?
5. Does the family live on tribal land?

**NOTE:** Reports involving children who are determined to be members of another tribe should be shared with the District Worker, Bureau of Indian Affairs, Eastern Area Office, Washington, D.C. If the tribe is unknown, the agency shall contact the Mississippi Band of Choctaw Indians who is willing to help identify the child's tribe and refer appropriately.

In those situations involving **children who do not live on tribal lands,** or they are not located on tribal lands at the time of the report, MDHS staff shall conduct an investigation and reasonable efforts must be made to coordinate the investigative activities, excluding emergency situations, with the child's tribe when possible. The MDHS Worker must ask the family the following questions:

1. Is parent or child of Native American heritage?
2. Is parent eligible for tribal membership?
3. Is parent registered with Native American tribe?
4. Is child eligible for tribal membership?
5. Has child been registered with Native American tribe?
6. Does the family live on tribal land?

For these children, the Mississippi Band of Choctaw Indians, or any other Indian Tribe to which the child belongs, has the right to accept or deny jurisdiction of the said child and to help with placement resources. The tribe must be notified of any court hearings involving an Indian child. Notification is to be provided immediately, by telephone and certified letter, to the tribe when a Choctaw child, or other Indian child, is taken into MDHS custody. For applicable MDHS time frames for initiating and completing an investigation please refer to Section III-D.

On the Safety Assessment, ⌨ in MACWIS, the Worker shall document any tribal referrals that were made by MDHS.

## H. Initiation of Investigation

Any investigation is considered "initiated" when <u>personal contact</u> is made with any of the following:

    a.  The involved child(ren).

    b.  The parent/caretaker.

    c.  Siblings who reside in the home.

    d.  With other household members.

    e.  With at least one collateral contact.

It is always best practice to initiate contact with the involved child(ren) first.

Attempted personal contact with the child and/or parent/guardian or custodian or caretaker and efforts to locate does not end the investigation. If the Worker cannot make personal contact or locate family, the Supervisor shall be notified immediately on case status.

### H1.    *Family Moves Out of State*

If a family moves out-of-state during an investigation of child abuse/neglect and the family's new address can be obtained, a letter to the child protection agency in the other state must be written informing them of the report and must be sent to the Office of Protective Services, Division of Family and Children's Services, for the other state. If the report indicated that there may be imminent danger of harm or threatened harm to the child, a protective services referral must be made immediately by telephone to the other state and confirmed in writing through DFCS as soon as possible after making the oral report.

### H2.    *Protective Service Alert*

Protective Service alerts are used in those case situations when the family and/or victim's exact whereabouts is unknown **and** the Worker is of the opinion that further harm may come to the child victim(s) unless protective services are provided. Protective Services alerts may be sent directly to the county offices within this state and/or other states, when a family tends to remain within a known geographical area.
If there is a child fatality, the family has moved to another county or state while case is under investigation, **and siblings** to the deceased child have moved with the parents, a Child Protective Service Alert needs to be sent by the assigned Worker and/or Supervisor to the appropriate state and/or county office.

### H3.    *Request from Another State*

A county MDHS office may receive a request from another state for completion of a child abuse/neglect investigation when the incident occurred in that state with a child and the alleged perpetrator resides in

Mississippi. An assigned Worker from the county office shall interview the alleged perpetrator for the other state.

## I. Examination of the Victim (Child)

1. All victims of physical abuse should be thoroughly examined for evidence of abuse (bruises, bites, burns, welts, etc.). When possible, a Worker of the same sex as the child should examine the child. Procedure should be explained in a non-threatening, comforting way.

2. Victims of neglect should be thoroughly examined if the investigation indicates reasons to suspect physical abuse; or if there are observable signs of neglect (malnutrition, untreated accidental injuries, infestations, bug bites).

3. A parent/caretaker or another adult witness must be present when child is examined.

4. Worker should request that the parent/caretaker or child, if old enough, remove child's clothes. Worker should be sensitive to child's feelings of undressing in front of a stranger.

5. If there is reason for an examination of the genital area of any child or breasts of female children over age 6, arrangements should be made for examination by a medical professional.

6. If a child or parent refuses to cooperate, court intervention is sought.

7. If there is reason to suspect physical abuse of other children, examine them.

## J. Photographs of Victim (Child)

1. The investigating Worker may take photographs of child, child's home, or location where the child was residing when abuse/neglect report in order to document any physical evidence of abuse/neglect. If the parents do not cooperate, seek youth court or law enforcement intervention.

2. A parent, another DFCS Worker, or another professional must always be present as a second party when photographs are taken of a child.

3. Identifying information (name of victim or other appropriate identifying information, date photograph was taken, time, and location) should be written on back of photograph or attached to it. The person's name who took photograph and date of photograph should also be included.

4. Each photograph shall have a visible body landmark to distinguish the identity of the child, actual location, and extent of the area of injury. More than one photograph of injury may be required to show landmark and still obtain a clear close-up of abuse.

5. Color film more accurately depicts an injury to child or condition of home.

Photographs, that are clearly labeled, shall be filed in the paper case record and information shall be entered on 🖥 the appropriate MACWIS screen as to the location of the photographs.

# V. ASSESSMENT OF REPORT

When the Worker completes an investigation, a determination is made to support the disposition of the report. This determination is made based upon:

1. Evidence criteria
2. MDHS-SS-442B, Safety Assessment
3. Information gathered and entered in MACWIS
4. Direct observation/Medical or Psychological information

The investigating Worker will complete a Safety Assessment to submit to the Supervisor within 7 days of report assignment. If the determination is made that a child is unsafe, the Worker will ensure a Safety Plan or whatever intervention is needed to make the child safe. Report findings are:

    a. No Evidence

    b. Evidence of Abuse/Neglect

Report information will be entered 🖥 in MACWIS on appropriate screens as information is received.

The Worker has 25 days to complete the investigation from date of assignment of report. The Supervisor has 5 days to review and approve or disapprove the investigation.

# VI. INVESTIGATION REPORTS

The Worker investigating the report is responsible for completing a finding on all investigations as well as completing a report about these findings.

Modifications and corrections of names and addresses and intake information should be made 🖥 on the appropriate MACWIS screens and approved by the Supervisor.

## A. Report to the District Attorney and Law Enforcement

When an investigation has been determined to be a report of felony child abuse/neglect, the investigating Worker shall generate a report 🖥 from MACWIS and send to his/her Supervisor for approval. These approved reports shall be mailed or hand-delivered to the District Attorney and Law Enforcement.

## B. Report to Youth Court

When an investigation of child abuse and neglect is completed, whether or not there is evidence, the investigation shall be forwarded to the Youth Court.

1. When immediate reporting is necessary for the protection of child(ren) a report is made by telephone or in person and promptly confirmed in writing. A report is made by the Department to the Youth Court Intake Unit or judge, and where appropriate, to the Youth Court Prosecutor.

2. Mississippi Code, Section 43-21-357 states that upon completion of an investigation, a written report of any investigation is submitted to the Youth Court with a recommendation of one of the following:

   a. That the Youth Court take no action;

   b. That an informal adjustment be made;

   c. The DHS/DFCS monitor the child, family, and other children in the same environment;

   d. That the child is warned or counseled informally; or

   e. That a petition be filed.

The Investigation report will be generated 🖳 in MACWIS and printed for sending to the Youth Court.

Information submitted to the District Attorney and law enforcement shall be included in the court report.

## C. Follow-up with the Mandated Professional Reporters

If requested by the mandated professional reporter (Refer to Section II-A for a listed of mandated reporters) who made the original intake request, the assigned Worker notifies the mandated professionals verbally or by letter that the report has been investigated and services rendered, if warranted. The Worker shall provide more information regarding the investigation, without a court order, to the professional reporter if that reporter has a continuing professional relationship with the child and a need for such information in order to protect or treat the child.

# VII. SPECIAL INVESTIGATIONS

## A. Agency Employees

Any abuse/neglect report received by Intake that names an agency employee as a possible perpetrator, or victim or indicates an agency employee is somehow involved with this report, the Worker will immediately notify his/her Supervisor who immediately notifies the Family and Children's Services Regional Director. The Regional Director notifies the Division Director of Family & Children's Services and makes a recommendation on how to proceed. The disposition of this report and the decision on how to proceed with the investigation is made by the Division Director.

## B. Resource Family Homes

When an abuse/neglect report is received in Intake that involves a resource family home (foster, adoptive, kinship/relative) the Worker shall:

1. Immediately notify his/her Supervisor, who will in turn:

   a. Notify the Regional Director for the county where the home is located, County of Service (COS), and the Regional Resource Family Supervisor.

   b. Notify the Regional Director and Supervisor for the County of Responsibility (COR), and the Regional Resource Family Supervisor for the county where the victim lives.

   c. The Regional Director of the County of Responsibility shall determine whether or not the child(ren) should be removed from the home or further recommendations be made.

   d. Notify the parent(s) of the alleged victim(s) of the alleged abuse or neglect unless parental rights have been terminated, or the child has been released for adoption. The Supervisor will disclose to the parents the allegations of abuse/neglect, as well as the nature of any action taken to prevent further abuse or neglect of the child.

   e. Notify parents as to the outcome of the investigation.

2. Immediately notify law enforcement and district attorney's office of jurisdiction, if the report involves felony child abuse/neglect. This notification to law enforcement may also be a request for them to accompany the Worker, if deemed necessary.

3. Immediately give the report, by telephone, to the County of Service Supervisor, if appropriate.

4. Notify the Supervisor who, in turn, shall:

5. Notify the Protection Unit. The Protection Unit will log the report and notify the Division Director, the Deputy Administrators, the Placement Unit Director and the Regional Resource Family Supervisors of the report and the nature of the allegations of abuse/neglect in the agency home.

The Regional Director for the county where the report originated shall assign agency staff to complete a full investigation and monitor the completion of the investigation and final report. The Worker who licensed the Resource Family will not take an active role in the investigation but may accompany the assigned Worker on the investigation. The licensing Worker's role will be that of a mediator, if necessary, between the Resource Family and the assigned Worker.

The alleged victim(s) must be interviewed the same day the report is received to insure immediate safety. The child victim(s) is to be interviewed individually, privately, and preferably away from the Resource Family home.

No additional children are to be placed in the home pending completion of the investigation.

The investigating Worker shall select ⌨ in MACWIS Resource Report (a radio button) on General Intake tab on the Intake Report screen.

## C. Licensed Placements or Facilities

The agency will investigate reports received on other licensed placements such as group homes, emergency shelters and private child placing agency foster homes. The Regional Director shall assign a Worker to investigate, which may be a Supervisor, county of responsibility staff or county of service staff. The Regional Director shall also notify the Protection Unit, the Placement Director, the Licensure Director and the Division Director. If the report involves felony child abuse, law enforcement must be notified immediately. The licensing agency is to accompany or otherwise support the assigned Worker on the initial visit with the facility director or the child placing agency director.

## D. Other Settings

Other settings include "any person responsible for care or support" of a child, pursuant Section 43-21-105(v) of the Mississippi Code. This means "a person who is providing for the child at any given time which can include but not limit to, stepparents, foster parents, relatives, non-licensed babysitters or other similar persons responsible for a child and staff of residential care facilities and group homes that are licensed by MDHS." These reports should be investigated as outlined in Section IV-H.

When DFCS receives a report that a child has been abused by a person responsible for care or support of the child, a determination must be made that the abuse was not committed or contributed to by a parent, legal guardian or primary caretaker. If this is not the case, the report must be handled as an "Out of Home" report. "Out of Home" is defined by Section 43-21-105(x) as temporary supervision or care of children by the staff of licensed day care centers, the staff of public, private and state schools, the staff of juvenile detention facilities, the staff of unlicensed residential care facilities and group homes and the staff of, or individuals representing churches, civic or social organizations. According to Section 43-21-353(8) of the Mississippi Code, these reports of "Out-of-Home" abuse/neglect must be reported to the local licensing entity, law enforcement, and the district attorney's office in the appropriate jurisdiction. Reports must also be made to the appropriate youth court. Reports of incidents allegedly occurring within the state's Training Schools shall be reported to the Division of Youth Services for investigation.

## E. Medical Neglect of Handicapped Infants

Federal regulations require DFCS to respond to reports of medical neglect, including instances of the withholding of medically indicated treatment (including appropriate nutrition, hydration, and medication) from disabled infants less than one year of age with life threatening conditions.

"Withholding of medically indicated treatment" is defined in the federal regulations as: The failure to respond to the infant's life threatening conditions by providing treatment (including appropriate nutrition, hydration, and medication) which, in the treating physician's (or physicians') reasonable medical judgment, will most likely be effective in ameliorating or correcting all such conditions, except that the term does not include the failure to provide treatment (other than appropriate) when:

1. The infant is chronically and/or irreversibly comatose as determined by the child's attending physician;

2. The provision of such treatment would merely prolong dying, not be effective in ameliorating or correcting all the infant's life-threatening conditions, or otherwise be futile in terms of the survival of the infant as determined by the child's attending physician;

3. The provision of such treatment would be virtually futile in terms of the survival of the infant and the treatment under the circumstances would be inhumane, as determined by the child's attending physician.

When an Intake Worker receives a report of medical neglect that involves the withholding of medically indicated treatment from disabled infants, his/her Supervisor will be immediately notified who shall:

a. Immediately contact the health care facility involved with the child to obtain detailed information and share with the facility the agency's procedure for investigating.

b. Notify immediately designated contact person at health care facility and Protective Services Unit.

c. Conduct interviews or assign a Worker to conduct interview at health care facility with:
   i. Designated contact person
   ii. Family
   iii. Others involved with infant
   iv. Infant Care Review Committee (ICRC), if one established at health care facility.

d. Obtain an independent assessment from a medical consultant, if the need determined.

e. Review infant's medical records, if necessary, through the assistance of designated contact person. If parents or facility do not cooperate, contact Youth Court Judge or designee for a court order.

f. Request an independent medical examination of the infant, if necessary, to assure an appropriate resolution of report. If parents or facility do not cooperate, contact Youth Court judge or designee for a court order.

## F. Death of a Child

In some situations, a referral of abuse/neglect could result in the assigned Investigating Worker finding a child dead. <u>In these situations, the Worker shall not move, touch, or handle anything in the vicinity. In particular, the Investigating Worker shall not move or touch the body or leave the vicinity, thereby leaving the body unattended.</u> The Investigating Worker shall immediately notify his/her Supervisor, either by mobile phone or enlisting help from another person, so that the Worker does not leave the body unattended. The Supervisor shall notify the Regional Director.

The Investigating Worker must to be able to provide the following information:

1. Whether or not the child is in MDHS custody;

2. If the child or family has an open or closed Child Protective Service case;

3. If an investigation is pending at the time of the child's death;

4. If any prior reports concerning the child or family were screened out for agency investigation;

5. Whether or not it is known if other children reside in the home who require safety and protection.

The Worker who reported the child fatality to his/her Supervisor shall also notify:

1. Law Enforcement

2. The Youth Court Judge

3. The District Attorney

4. The Coroner, if not already informed.

Section 43-21-261(17) of the Mississippi Code of 1972, was amended in 1998 to state "the confidential provisions of this section shall not apply" meaning any confidentiality criteria from this section does not apply to child fatalities. All request for disclosure from the media (radio, television, newspaper) or the general public concerning the findings and information about a protective service case should be routed through administrative channels to the Division Director for administrative and legal directives prior to the provision of any response. The Division Director will designate who is to be the spokesperson and what information may be shared to prevent further trauma to the family.

The state law requires an autopsy on all children under age 2 who die of unknown causes. For these cases referred to MDHS:

a. The County Attorney is immediately contacted to order and arrange the autopsy if law enforcement has not.

b. An autopsy is completed by the State Medical Examiner's Office or one of its designated pathologists.

The assigned Worker will conduct a Safety Assessment and a Safety Plan, as outlined in Section V, on the family if other children reside in the home. These assessments are to determine the remaining children's safety and well-being.

Information will be entered 🖳 in MACWIS on appropriate screens.

**Ex. 15**



**STATE OF MISSISSIPPI**
HALEY REEVES BARBOUR, GOVERNOR
**DEPARTMENT OF HUMAN SERVICES**
DONALD R. TAYLOR
EXECUTIVE DIRECTOR

BULLETIN: 6154               DIVISION OF FAMILY AND
                            CHILDREN'S SERVICES

TO:            DFCS Deputy Directors
               DFCS Unit Directors
               DFCS Regional Directors
               DFCS Area Social Work Supervisors
               DFCS Family Protection Specialists
               DFCS Family Protection Workers
               DFCS Resource Family Unit (Adoption/Licensure)
               DFCS Independent Living Staff
               DFCS Training staff
               DFCS MACWIS staff
               All Volume IV Holders

FROM:          Kate McMillin, Director
               Division of Family and Children's Services

DATE:          January 24, 2008

SUBJECT:       Mandatory Reporting Requirement

**Effective immediately, the requirements contained within this bulletin are hereby set forth in DFCS' policy.**

**Maltreatment and Corporal Punishment of Children in Custody**

Maltreatment, including the use of corporal punishment, by a resource parent (relative or not) on foster children is strictly forbidden by the Mississippi Department of Human Services, Division of Family and Children's Services' policy. If any DFCS staff has suspicion that a child in DHS custody is being maltreated or that corporal punishment is being used within a resource home, a **formal report** must be made.

KM: PPWG: nl

**Ex. 16A**



**STATE OF MISSISSIPPI**
HALEY REEVES BARBOUR, GOVERNOR
**DEPARTMENT OF HUMAN SERVICES**
DONALD R. TAYLOR
EXECUTIVE DIRECTOR

BULLETIN: 6199             DIVISION OF FAMILY AND
                          CHILDREN'S SERVICES

TO:          DFCS Deputy Directors
             DFCS Unit Directors
             DFCS Regional Directors
             DFCS Area Social Work Supervisors
             DFCS Family Protection Specialists
             DFCS Family Protection Workers
             DFCS Resource Family Unit (Adoption/Licensure)
             DFCS Independent Living Staff
             DFCS Training staff
             DFCS MACWIS staff
             DFCS Foster Care Reviewers
             All Volume IV Holders

FROM:        Kate McMillin, Director
             Division of Family and Children's Services

DATE:        August 18, 2008

SUBJECT:     Expedited Resource Home Licensure

**Effective immediately, the requirements contained within this bulletin are hereby set forth in DFCS' policy.**

Attached is the Expedited Resource Licensure covered in Section F of the Volume IV Policy Manual. This policy has been written in accordance with the settlement requirements. The Expedited Resource Licensure will be placed in Section F page 4515 after the Exterior Environment Policy. Please place these pages in the identified section of your policy manual.

KM: PPWG: nl

Attachment

Mississippi, Volume IV                                      Section F
Revised August 2008                                        Page 4515

## Expedited Resource Licensure

All foster care settings, including relative placements, shall be screened prior to the initial placement of foster children to ensure that children receive safe, sufficient, and appropriate care. Screens shall include criminal and child welfare background checks of all household members who are at least fourteen (14) years old as required by 43-15-6 of Mississippi Code. No foster child shall be placed in a home prior to receipt of the background check results.

An expedited licensure process shall be utilized for relative placements in order to enable a child to be placed quickly upon entering foster care. All relative placements approved using the expedited process shall undergo the full licensure procedure within sixty (60) calendar days of the child's placement in the home.

Expedited relative and court ordered "non-relative" placements shall be entered as resource inquiries and assigned for home study completion. The home studies must be completed within fourteen (14) calendar days of assignment. Training and other licensure requirements, excluding the required background checks, will be post-poned for a maximum of sixty (60) days. All other requirements must be met within the sixty (60) day period to maintain licensure. Failure to meet the requirements of licensure will result in the removal of child(ren) unless the court orders the children to remain in the home.

## Emergency Placement Safety Standards

The safety checklist is to be used by the worker when determining the appropriateness of a relative home for emergency placement. After completing the background check and the safety checklist, a face-to-face contact by the child(ren)'s worker must be made within the next business day to assure the child(ren)'s continued safety within the placement. The narrative shall be documented in MACWIS within five (5) working days.

**Emergency Placement Safety Checklist**

1. _____ Local law enforcement background check
2. _____ MACWIS background check
3. _____ Gun safety (weapons stored away safely)
4. _____ All utilities working
5. _____ Telephone
6. _____ Clear access to exits
7. _____ Hazardous substances safeguarded
8. _____ Premises free of rodent and insect infestation
9. _____ Operable refrigerator, stove, and oven
10. _____ Functional sewage system
11. _____ Interior plumbing with running warm and cold water


Date of Visit:_____

Completing Worker:_____

Resource Name:_____

Address:_____

_____

Home Phone:_____

Alternate Phone:_____

Comments:_____

_____

_____

_____

_____

**Ex. 16B**



**STATE OF MISSISSIPPI**
HALEY REEVES BARBOUR, GOVERNOR
**DEPARTMENT OF HUMAN SERVICES**
DON THOMPSON
EXECUTIVE DIRECTOR

BULLETIN: 6177                    DIVISION OF FAMILY AND
                                CHILDREN'S SERVICES

TO:         DFCS Deputy Directors
            DFCS Unit Directors
            DFCS Regional Directors
            DFCS Area Social Work Supervisors
            DFCS Family Protection Specialists
            DFCS Family Protection Workers
            DFCS Resource Family Unit (Adoption/Licensure)
            DFCS Independent Living Staff
            DFCS Training staff
            DFCS MACWIS staff
            DFCS Foster Care Reviewers
            All Volume IV Holders

FROM:       Kate McMillin, Director
            Division of Family and Children's Services

DATE:       August 14, 2008

SUBJECT:    Criminal History and Background Checks

**Effective immediately, the requirements contained within this bulletin are hereby set forth
in DFCS' policy.**

Attached is policy covered in Section F of the Volume IV Policy Manual.  Please place this
policy behind the existing Criminal History and Clearance found on page 4510 your manual.
The policy should remain until a revised final rule is sent.


KM: PPWG: jr

Attachment

Mississippi, Volume IV
Revised July 2008

Section F
Page 4510

**Criminal History and Clearance**

Any applicant or household member who has a criminal history of a felony conviction or pending indictment of a crime, that bears upon an individual's fitness to have responsibility for the safety and well-being of children as set forth in Section 43-15-6 of the Mississippi Code, may not provide child care or be licensed as a Resource Family. Felony convictions include, but are not limited to, child abuse or neglect, spousal abuse, crimes against children (including child pornography), crimes involving violence which include rape, sexual assault, or homicide. If a background check reveals a felony conviction for physical assault, battery or drug-related offense, and if a court of competent jurisdiction has determined that the felony was committed within the past five (5) years (SSA, Section 471(a)(20)), a license shall not be granted. Other convictions shall be considered on a case-by-case basis.

All applicants shall be fingerprinted, including any individuals living within the home age fourteen (14) or older, and such fingerprints shall be forwarded to the Department of Public Safety. If no disqualifying record is identified at the state level, the fingerprints shall be forwarded by the Department of Public Safety to the FBI for national criminal history record check. If there is a disqualifying record, a license shall not be granted. Finger print results are valid for five (5) years.

A background check shall be conducted within the agency and also with private contractors to determine any history of child abuse or neglect. A Central Child Abuse Registry check will be completed for all household members age fourteen (14) or older in every state (that maintains a Central Registry) in which they have resided in the last five (5) years, along with county and local law enforcement background checks. Subsequent screens shall be completed within two weeks of a reported change in the Resource Parent's home, and annually thereafter. Background checks shall also be completed within two (2) weeks of a Resource Parent reporting that an additional person age fourteen (14) or older has moved into the home.

<div style="border:1px solid black; padding:1em;">

**Federal Requirement:**

The State shall request any other State in which any such prospective parent or other adult has resided in the preceding 5 years, to check any child abuse registry maintained by such other State for such information.

The State shall comply with any such request to check its child abuse and neglect registry that is received from another State.

</div>

**Ex. 16C**



**STATE OF MISSISSIPPI**
Haley Reeves Barbor, GOVERNOR

**DEPARTMENT OF HUMAN SERVICES**
Donald R. Taylor
EXECUTIVE DIRECTOR

BULLETIN NO. 5921

TO:        DFCS Unit Directors
           DFCS Regional Directors
           DFCS Area Social Work Supervisors
           DFCS Licensure Specialists
           DFCS Adoption Staff
           DFCS Social Workers
           DFCS Social Workers Advanced
           DFCS Training Staff
           DFCS MACWIS Staff
           All Volume IV Holders

FROM:      Billy Mangold, Director
           Division of Family and Children's Services

DATE:      December 8, 2004

SUBJECT:   **Emergency Shelter Extensions**

Time in Emergency Group Shelters and Emergency Foster Homes should be limited to 45 days in a six-month period of time. The 45 days could be consecutive or cumulative. The 45 days include stays at the same or different Emergency locations.

If special circumstances warrant an extension of the 45 days, the Regional Director can give prior written authorization up to a maximum of 45 additional days. Extensions should be limited to as few days as possible. Emergency Shelters and Emergency Foster Homes are intended to be short term interim placement resources.

Effective immediately additional days beyond 90 days shall require that justification be submitted to the Division Director for prior written authorization. Prior approval for Emergency Shelter extensions shall always be obtained. Extensions should not be requested after the fact.

Any questions or concerns should be routed through the usual administrative channels to the Placement Unit.

BM:GSY:gy