# Exhibit H

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

# PERIOD 2 ANNUAL IMPLEMENTATION PLAN
## May 1, 2009-April 30, 2010

This is the annual Implementation Plan for Period 2 required by the parties' Settlement Agreement and Reform Plan (the "Settlement Agreement"). Period 2 shall run from May 1, 2009 through April 30, 2010. The Period 2 Implementation Plan Requirements shall be met by the end of Period 2 or earlier as specified herein.

## I.   Administration and Management Implementation Steps

### 1.   Agency Leadership and Administration

a.      With the exception of the MACWIS Director position, by September 1, 2009, DFCS will have filled all unit director positions with qualified individuals. By November 1, 2009, DFCS will hire a qualified MACWIS Director.

**Relevant COA Standards:**

**PA-AM 2.01**

The agency head promotes a clear understanding and implementation of agency values, including expectations for quality service delivery and effectiveness, expressed through:

a.      service delivery practices;
b.      human resources practices; and
c.      staff training and supervision.

**PA-AM 3.04**
The agency's performance goals, and outcomes appropriate for clients and programs, are clearly articulated.

**PA-AM 6.01**
The administrative team establishes in writing:

a.      responsibilities;
b.      a process for assessing and implementing responsibilities, such as establishing task forces/committees; and
c.      under what conditions and to whom interim authority can be delegated.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-AM 6.02**
Administrative team members:

a.      receive an orientation to the agency's mission, history, goals,
        objectives, structure, methods of operation; and
b.      are familiarized with agency activities and are introduced to key staff
        members.

**PA-AM 7.01**
Strategic planning responsibilities include:

a.      envisioning and setting the agency's strategic direction; and
b.      active support for inclusive, management-directed, agency-wide
        involvement in long term planning that occurs every 4-5 years.

**PA-AM 7.02**
The agency's management team reviews and approves the long-term plan
framework, to ensure that planning encompasses:

a.      a review of the agency's mission, values, and mandates;
b.      an assessment of strengths and weaknesses;
c.      measurable goals and objectives that flow from its mission and
        mandated responsibilities; and
d.      appropriate strategies for meeting identified goals, including
        consideration of the agency's continued development and
        sustainability and possible need to redirect, eliminate, or expand
        service to respond to changing community demographics and needs.

**PA-FC 5**
The program is guided by a service philosophy that:

a.      provides a logical approach for how program activities will meet the
        needs of families;
b.      is culturally grounded; and
c.      is based on program goals and the best available evidence of service
        effectiveness for the identified service population.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

## 2. Human Resources Management

### a. Workforce:

By September 1, 2009, Defendants shall develop and begin implementing a written Workforce Plan to recruit and retain sufficient DFCS professional and support staff as necessary to comply with the caseload requirements specified in section II.A.2.a of the Settlement Agreement. The Workforce Plan shall identify the specific steps, strategies, financial resources, and short- and long-term staffing goals with related timeframes that are necessary to meet the staffing requirements of the Settlement Agreement.

### b. Supervisor Access:

By July 1, 2009, caseworkers shall have access to a supervisor by telephone 24 hours a day.

## Relevant COA Standards:

### PA-HR 3.01
Job descriptions and selection criteria:

a.    state the qualifications, essential functions, responsibilities for each position or group of like positions, and job expectations;
b.    include sensitivity to the service population's cultural and socioeconomic characteristics; and
c.    are reviewed and updated regularly.

### PA-HR 3.02
Recruitment and selection procedures include:

a.    notifying personnel of available positions;
b.    verifying references and credentials of personnel and independent contractors;
c.    providing applicants with a written job description;
d.    giving final candidates the opportunity to speak with currently-employed personnel;
e.    retaining hiring records for at least one year; and
f.    using standard interview questions that comply with employment and labor laws.

### PA-HR 6.01
Every full-time and part-time employee and volunteer receives a written annual performance review conducted by the person to whom s/he reports.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-HR 6.02**
Performance evaluations assess job performance, and emphasize self-development and professional growth, in relation to:

a.      specific expectations defined in the job description;
b.      agency-wide expectations for personnel;
c.      objectives established in the most recent evaluation and objectives for future performance as they relate to the agency's mission and goals;
d.      developmental and professional objectives;
e.      recommendations for further training and skill building; and
f.      knowledge and competence related to the characteristics and needs of service recipients, if applicable.

**PA-HR 7.01**
Personnel records are updated regularly, and contain:

a.      identifying information and emergency contacts;
b.      application for employment, hiring documents including job postings and interview notes, and reference verification;
c.      job description;
d.      compensation documentation, as appropriate;
e.      pre-service and in-service training records; and
f.      performance evaluations and all documentation relating to performance, including disciplinary actions and termination summaries, if applicable.

**PA-HR 7.03**
Access to personnel records is limited to authorized personnel on a need-to-know basis.

**PA-TS 3.01**[1]
Supervisors have sufficient time to provide individual or group supervision as appropriate to individual needs or program type, and to conduct evaluation and training activities.

---

[1] This requirement shall be interpreted to be consistent with Period 2 Annual Implementation Plan § I.2.d.3, which requires: "No supervisory personnel shall be detailed to the training unit to provide training."

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-TS 3.03**[2]
Supervisors are responsible for:

a.    delegating and overseeing work assignments;
b.    ensuring that service delivery is performed according to the agency's mission, policies and procedures, and service philosophy;
c.    providing case consultation and in-service training as appropriate;
d.    identifying unmet training needs;
e.    ensuring case reviews are conducted at least quarterly; and
f.    conducting performance evaluations.

### c.  Worker and Supervisor Qualifications:

Defendants shall develop and begin to implement a plan with timeframes and specific action steps for bringing its current staff into compliance with the worker and supervisor qualification requirements mandated by section II.A.2.b of the Settlement Agreement and by COA standards, including PA-AS 13.02; PA-CPS 14.02; PA-AS 13.01; PA-CPS 14.01; PA-FC 19.01; PA-FC 19.05; and PA-CPS 10.02.  Such plan shall be developed by September 1, 2009.

### d.  Training:

1)  By September 1, 2009, DFCS shall develop and begin implementing a written plan to provide comprehensive child welfare pre-service and in-service training to all caseworkers and supervisors in accordance with the training requirements set forth in section II.A.2.c of the Settlement Agreement.  The training plan shall include action steps and timelines to hire and train staff, update the training curriculum, and to procure all additional resources needed to operate a training unit that delivers the training required by the Settlement Agreement.

2)  DFCS will have revised the training curriculum to reflect the updated Practice Guide and Policy Manual.

3)  No supervisory personnel shall be detailed to the training unit to provide training.

4)  All new caseworkers and supervisors will complete their service training consistent with the Settlement Agreement requirements before they assume their respective responsibilities for carrying cases and supervising.

---

[2] This requirement shall be interpreted to be consistent with Period 2 Annual Implementation Plan § I.2.d.3, which requires: "No supervisory personnel shall be detailed to the training unit to provide training."

5)  All caseworkers shall receive a minimum of 40 hours of ongoing in-service training each year, and all supervisors shall receive a minimum of 24 hours of ongoing in-service training each year.

6)  Defendants shall implement competency-based testing to assess knowledge acquisition of newly hired staff following the completion of pre-service training, including newly hired or newly promoted supervisors following the completion of supervisory training.  Training credit shall only be given to those new hires who demonstrate sufficient knowledge acquisition.

7)  Defendants shall implement a system to track staff participation in all required training.

**Relevant COA Standards:**

**PA-TS 2.02 -** *365 Day Standard due July 1, 2009*
All personnel who have regular contact with clients receive training on legal issues, including:
a.   mandatory reporting and the identification of clinical indicators of suspected abuse and neglect, as applicable;
b.   reportable criminal behavior including criminal, acquaintance, and statutory rape;
c.   duty to warn;
d.   the agency's policies and procedures on confidentiality and disclosure of service recipient information, and penalties for violation of these policies and procedures;
e.   the legal rights of service recipients; and
f.   any requirements associated with consent decrees.

**PA-TS 2.03 -** *365 Day Standard due July 1, 2009*
All personnel receive training on proper documentation techniques and the maintenance and security of case records.

**PA-TS 1.01**
The agency implements a training and development program that enhances the knowledge, skills, and abilities of personnel and prepares personnel to assume their responsibilities.

**PA-TS 1.02**
The personnel training and development program:

a.   promotes cooperation among personnel;
b.   includes an education and training program that provides opportunities for learning and skill enhancement;

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

    c.       encourages creativity and innovation in program development and
            service delivery;
    d.       promotes awareness of, and sensitivity to, cultural backgrounds and
            needs; and
    e.       rewards and acknowledges the contributions of personnel.

**PA-TS 1.03**
The personnel training and development program:

    a.       is reviewed annually and revised in accord with an assessment of the
            agency's training needs;
    b.       outlines specific expectations regarding training required of personnel
            in different positions and categories;
    c.       provides the opportunity for personnel to fulfill the continuing
            education requirements of their respective professions; and
    d.       provides opportunities to support advancement within the agency and
            profession.

**PA-TS 2.01**
New personnel are oriented within the first three months of hire to:

    a.       the agency's mission, philosophy, goals, and services;
    b.       the cultural and socioeconomic characteristics of the service
            population;
    c.       the agency's place within its community;
    d.       the agency's personnel manual; and
    e.       lines of accountability and authority within the agency.

**PA-TS 2.04**
Direct service personnel demonstrate competence in, or receive training on, as
applicable:

    a.       the establishment of rapport and responsive behaviors with service
            recipients;
    b.       the needs of individuals and families in crisis including special service
            needs of victims of violence, abuse, or neglect and their family
            members;
    c.       basic health and medical needs of the service population;
    d.       procedures for working with foreign language speakers and persons
            with communication impairments; and
    e.       public assistance and government subsidies.

**PA-BSM 3.01 -** *365 Day Standard due July 1, 2009*
All personnel and foster parents receive initial and ongoing competency-based
training, appropriate to their responsibilities, on the agency's behavior support
and management intervention policies, procedures, and practices.

7

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-BSM 3.02 -** *365 Day Standard due July 1, 2009*
Personnel and foster parents receive training that includes:

a.      recognizing aggressive and out-of-control behavior, psychosocial issues, medical conditions, and other contributing factors that may lead to a crisis;
b.      understanding how staff behavior can influence the behavior of service recipients; and
c.      limitations on the use of physical techniques.

**PA-BSM 3.03 -** *365 Day Standard due July 1, 2009*
Training addresses methods for de-escalating volatile situations, including:

a.      listening and communication techniques, such as negotiation and mediation;
b.      involving the person in regaining control and encouraging self-calming behaviors;
c.      separation of individuals involved in an altercation;
d.      offering a voluntary escort to guide the person to a safe location;
e.      time out to allow the person to calm down; and
f.      other non-restrictive ways of de-escalating and reducing episodes of aggressive and out-of-control behavior.

**e.  Contract Agency Requirements:**

    1)    DFCS shall, in conjunction with a qualified independent consultant approved by the Monitor, begin developing a plan for a performance-based contracting system with the capacity to monitor and enforce contract performance on all related terms of the Settlement Agreement.

**Relevant COA Standards:**

**PA-RPM 9.02**
The pursuit of contracts for services is consistent with the agency's mission and purpose, and the agency:
a.      establishes a system of standardized contracting practices;
b.      conducts due diligence in contracting activities, including review of possible risks; and
c.      assigns a qualified individual to oversee contracts.

**PA-RPM 9.03**
Written contracts contain all significant terms and conditions in accordance with applicable law.

**PA-RPM 10.02**
The agency routinely monitors contractor progress toward fulfilling the terms of the contract.

**PA-RPM 10.03**

Contracts for social and human services include:

a.      service quality, client satisfaction, and outcomes that accord with the agency's expectations;

b.      criteria for evaluating vendor performance; and

c.      protocols for routine communication of related data.

**PA-RPM 10.04**

When areas of concern are identified, the agency:

a.      develops an improvement plan in conjunction with the contractor; and

b.      ensures contractor follow-up and remediation.

### 3.  Performance and Quality Improvement

a.      By September 30, 2009, Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan with specific steps and timeframes for the implementation of a separate continuous quality improvement ("CQI") system that meets COA standards and Settlement Agreement requirements.

b.      DFCS shall implement and maintain a separate CQI system that can identify areas of needed improvement and require improvement plans in support of achieving performance targets, program goals, client satisfaction, and positive client outcomes.  The CQI system shall include monitoring and evaluating the quality of social and human services provided by independent contractors and other provider organizations and ensuring contractor remediation of any identified deficiencies.

c.      Defendants shall, in conjunction with a qualified independent consultant approved by the Monitor, develop and begin implementing a CQI assessment tool that measures compliance with the Settlement Agreement's management and foster care service standards at sections II.A.1-7 and II.B.1-14, respectively.

**Relevant COA Standards:**

**PA-PQI 2.02 - *365 Day Standard due July 1, 2009***

A PQI operational plan:

a.      assigns responsibility for coordination and implementation of PQI activities, and provision of technical assistance in using the PQI process;

b.      sets forth the purpose and scope of PQI activities;

c.      establishes how the agency periodically reviews essential management and service delivery processes consistent in light of quality priorities;

d.      defines stakeholders and how stakeholders will participate in the PQI process;
e.      outlines methods and timeframes for monitoring and reporting activities; and
f.      includes provision for an assessment of the utility of the PQI program, including any barriers and supports for implementation.

**PA-PQI 2.01 - *365 Day Standard due July 1, 2009***
The PQI framework takes into account all of the agency's regions and sites, and all individuals and families served.

**PA-PQI 1.01**
The agency's senior management sets forth quality expectations and broad goals that merit ongoing monitoring.

**PA-PQI 1.02**
The agency head endorses:
a.      a culture that promotes excellence and continual improvement;
b.      implementation of an agency-wide PQI framework;
c.      a dedicated PQI function;
d.      collection and constructive use of data to promote a high-learning, high-performance, results-oriented agency;
e.      involvement of a wide range of managers and staff in the PQI process;
f.      inclusion of external stakeholders and community members; and
g.      an annual "score-card" or summary report of gains made against goals.

**PA-PQI 2.04**
Quality expectations are reflected in key documents including:

a.      budgets;
b.      policy and procedures manuals;
c.      new staff training material;
d.      communications to staff, family members, consumers, and volunteers; and
e.      service provider contracts.

**PA-PQI 2.05**
Staff responsible for PQI are qualified by education and experience to:

a.      engage people throughout the agency;
b.      systematically collect information and analyze data; and
c.      communicate results and recommendations to various key audiences.

**PA-PQI 3.02**
Staff throughout the agency and stakeholders, including partners and contractors, work together to develop key outcomes and indicators, and identify sources of

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

various types of reliable data including characteristics, service delivery
experience, and outcomes for children, youth, adults, and families being served.

### PA-PQI 4.01
Collection of service delivery information focuses on key quality factors,
including appropriateness, efficacy, and effectiveness, and any or all of the
dimensions of quality.

### PA-PQI 4.02
The agency aggregates and reviews several sources of information to identify
patterns, including:

a.    quarterly case record review reports;
b.    quarterly review of incidents, accidents, and grievances;
c.    customer satisfaction data, usually annually;
d.    customer outcomes data, usually annually;
e.    internal and external evaluations of agency programs; and
f.    management and operations data and reports.

### PA-PQI 5.01
The PQI plan outlines routine actions taken to identify areas of needed
improvement, implement the improvement on a small or broad scale, review the
results, modify or discontinue the improvement process, and keep staff informed
and involved throughout the cycle.

### PA-PQI 6.01
An information packet is developed for stakeholders that explains the PQI
framework, how PQI functions at the agency, and forms and measures the agency
uses to study and improve operations, service delivery, and customer results.

### PA-PQI 6.02
An explanation of PQI function and structure is included in new hire packets and
reviewed at new staff orientation.

## 4. Legal and Regulatory Compliance

a.    DFCS shall comply with the public child fatality reporting requirements of
the Child Abuse Prevention Act, 42 U.S.C. § 5106a(b)(2)(A)(x).

## Relevant COA Standards:

### PA-BSM 1.01
The agency's behavior support and management policies and practices comply
with federal, state, and local legal and regulatory requirements.

11

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-AS 2.04**

The agency identifies Indian children and collaborates with the tribe or Indian organization to:

a.  determine the applicability, and ensure compliance with, the Indian Child Welfare Act;
b.  determine jurisdiction;
c.  assess the child's needs;
d.  provide the family with information regarding their rights under the Indian Child Welfare Act;
e.  determine the most appropriate plan for the child; and
f.  maintain connections between the child and his or her tribe.

## 5. Information Management and Use

a.  By July 1, 2009, DFCS shall provide to all county agency staff with child welfare responsibilities access to basic computer services, consisting of access to MACWIS, word processing, and electronic mail.

b.  By November 1, 2009 and by April 30, 2010, DFCS will verify MACWIS data to identify the number of children in custody, face to face contacts, caseloads, timeliness of investigations, and placements.

c.  DFCS shall issue a RFP for the comprehensive analysis of the MACWIS system and its ability to perform the computer functions required by section II.A.5.a of the Settlement Agreement and for recommendations of remedial efforts necessary to enable MACWIS to perform those Settlement Agreement requirements. DFCS shall undertake all reasonable efforts to expeditiously issue such RFP, which shall issue by September 1, 2009.

d.  DFCS shall execute a contract pursuant to the RFP. Such contract shall require that the contracting agent provide the final MACWIS assessment and recommendations no later than 12 calendar months from the date of contract.

## 6. Case Recordings and Information

a.  Defendants shall implement a system to regularly review whether DFCS child welfare case records are current, complete, made by the appropriate caseworker, signed and dated by the person who provided the service, and signed and dated by supervisors, where appropriate, in accordance with federal and state law and regulations.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**Relevant COA Standards:**

**PA-RPM 7.02**
Case records comply with all legal requirements and contain information necessary to provide services, including:

    a.     demographic and contact information;
    b.     the reason for requesting or being referred for services;
    c.     up-to-date assessments;
    d.     the service plan, including mutually developed goals and objectives;
    e.     copies of all signed consent forms;
    f.     a description of services provided directly or by referral;
    g.     routine documentation of ongoing services;
    h.     documentation of routine supervisory review;
    i.     discharge or aftercare plan;
    j.     recommendations for ongoing and/or future service needs and assignment of aftercare or follow-up responsibility, if needed; and
    k.     a closing summary entered within 30 days of termination of service.

**PA-RPM 7.03**
The case record contains essential legal and medical information, including, as applicable:

    a.     psychological, medical, toxicological, diagnostic, or other evaluations;
    b.     copies of all written orders for medications or special treatment procedures; and
    c.     court reports, documents of guardianship or legal custody, birth or marriage certificates, and any legal directives related to the service being provided.

**PA-RPM 7.04**
Case record entries are made by authorized personnel only, and are:

    a.     specific, factual, relevant, and legible;
    b.     kept up to date from intake through case closing;
    c.     completed, signed, and dated by the person who provided the service; and
    d.     signed and dated by supervisors, where appropriate.

**PA-PQI 4.03**
Quarterly reviews of case records evaluate the presence, clarity, and continuity of required documents utilizing a uniform tool to ensure consistency.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-RPM 7.05**
Progress notes comply with legal requirements, and are entered:

a.      at least quarterly; or
b.      monthly, or as required by law or regulation for individuals receiving protective services, out-of-home care, day treatment, or frequent or intensive counseling or treatment.

**PA-RPM 7.06**
Service recipients may add a statement to their case records, and:

a.      any response by personnel is added with the service recipient's knowledge; and
b.      the service recipient is given the opportunity to review and comment on such additions.

**PA-RPM 7.07**
At case closing, case records are reviewed and unsummarized notes, personal observations, and impressions are expunged.

**PA-RPM 8.01**
Access to confidential case records meets legal requirements, and is limited to:

a.      the service recipient or, as appropriate, a parent or legal guardian;
b.      personnel authorized to access specific information on a "need-to know" basis;
c.      others who are permitted access;
d.      former service recipients;
e.      requests for records of deceased service recipients; and
f.      auditors, contractors, and licensing or accrediting personnel consistent with the agency's confidentiality policy.

**PA-CR 2.04**
The release form for disclosure of confidential information includes the following elements:

a.      the name of the person whose information will be released;
b.      the signature of the person whose information will be released, or the parent or legal guardian of a person who is unable to provide authorization;
c.      the specific information to be released;
d.      the purpose for which the information is to be used;
e.      the date the release takes effect;
f.      the date the release expires, not to exceed 90 days from when authorization is given for a one time release of information, and not to exceed one year, or as the law or court order requires, when a

14

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

contracted or cooperating service provider requires the release of
information for ongoing service provision;

g.   the name of the person to whom the information is to be released;

h.   the name of the person within the agency who is providing the
confidential information; and

i.   a statement that the person or family may withdraw their authorization
at any time.

## PA-AS 12.05

Records are retained for the period required by applicable law, or in the absence
of such law for at least 99 years, and the agency has a plan for transfer of records
if the adoption program is closed.

## PA-AS 12.06

All releases of identifying information about adopted persons, birth parents, and
adoptive families are in accordance with individual preferences and applicable
regulation.

## PA-RPM 5.01 - *365 Day Standard due July 1, 2009*

Personnel can rapidly access paper and electronic information.

## PA-RPM 5.02 - *365 Day Standard due July 1, 2009*

Electronic and paper records can be located at all times.

## PA-RPM 6.01

The agency protects confidential and other sensitive information from theft,
unauthorized use, damage, or destruction by:

a.   limiting access to authorized personnel on a need-to-know basis;

b.   backing up electronic data, with copies maintained off premises;

c.   using firewalls, anti-virus and related software, and other appropriate
safeguards; and

d.   maintaining paper records in a secure location.

## PA-RPM 6.02

Case records are maintained and disposed of in a manner that protects privacy and
confidentiality, and the agency:

a.   maintains case records for at least seven years after case closing unless
otherwise mandated by law; and

b.   properly disposes of records in the event of the agency's dissolution.

15

### 7.  Financial Management

a.      By January 1, 2010, Defendants shall contract for an external assessment, to be conducted by a qualified independent consultant, of actual and anticipated federal funding levels, and for the development of a plan to establish the resources and infrastructure necessary to maximize the amount of federal funds received by the State.  The selection of this qualified independent consultant shall be subject to approval by the Monitor.

b.      Funds realized as a result of revenue maximization activities shall not supplant appropriated state funds but shall be used in furtherance of the reforms and outcome measures provided for herein and to improve child welfare services.

### 8.  Ethical Practice

**Relevant COA Standards:**

**PA-ETH 1.01**
The public has access to clear, timely, accurate information about the agency's programs, activities, service recipients, and finances.

**PA-ETH 1.02**
The agency accurately portrays its mission in all communications that contain such a representation.

**PA-ETH 2.01**
A conflict of interest policy is tailored to the agency's specific needs and characteristics, and:

a.      defines conflict of interest;
b.      identifies groups of individuals within the organization covered by the policy;
c.      addresses transactions between board members and the agency;
d.      addresses policy enforcement;
e.      provides a framework for evaluating situations that may constitute a conflict; and
f.      invests management with developing procedures that facilitate disclosure of information to prevent and manage potential and apparent conflicts of interest.

**PA-ETH 5.01**
Personnel know and follow the code of ethics of their respective professions.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-ETH 5.02**
The agency prohibits:

a.    making or accepting payment or other consideration in exchange for
       referrals;
b.    steering, directing referrals to, or giving preference to clients easier or
       less costly to serve for specific agencies and practitioners within the
       agency;
c.    unfairly steering or directing referrals to, or "creaming" clients for
       specific network service provider agencies, such as network owners, or
       individual practitioners within the network, as applicable to networks;
       and
d.    steering or directing referrals to private practices in which personnel,
       consultants, or the immediate families of personnel and consultants are
       engaged.

**PA-ETH 5.03**
The agency prohibits preferential treatment of members, community partners,
advisory groups, personnel, or consultants in applying for and receiving the
agency's services.

**PA-CR 1.02**
A written summary of client rights and their responsibilities is posted in the
reception areas of all service delivery locations.

**PA-CR 1.06**
The agency accommodates the written and oral communication needs of clients
by:

a.    communicating, in writing and orally, in the languages of the major
       population groups served;
b.    providing, or arranging for, bilingual personnel or translators or
       arranging for the use of communication technology, as needed;
c.    providing telephone amplification, sign language services, or other
       communication methods for deaf or hearing impaired persons;
d.    providing, or arranging for, communication assistance for persons with
       special needs who have difficulty making their service needs known;
       and
e.    considering the person's literacy level.

17

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

## 9. Community Involvement and Advocacy

**Relevant COA Standards:**

### PA-AM 4.01
The agency conducts an ongoing program of community public education to communicate:

a.   its mission, role, functions, and capacities; and
b.   the strengths, needs, and challenges of the individuals, families, and groups it serves.

### PA-AM 4.02
The agency collaborates with the community to advocate for issues of mutual concern, such as:

a.   improvements to existing services;
b.   filling gaps in service;
c.   the full and appropriate implementation of applicable laws and regulations regarding issues concerning the service population; and
d.   improved supports and accommodations for persons with special needs.

### PA-CPS 2.01
The agency's leadership works with the leadership of other organizations to identify common issues, develop opportunities for collaboration, and resolve administrative conflicts and other issues that inhibit service collaboration and use.

## 10. Administrative and Service Environment

**Relevant COA Standards:**

### PA-HR 4.01 - *365 Day Standard due July 1, 2009*
The agency promotes open communication and collaboration among disciplines and staff levels by:

a.   holding regular team, agency, and divisional meetings, as appropriate to the agency; and
b.   providing feedback to personnel about their suggestions and recommendations.

### PA-HR 4.03 - *365 Day Standard due July 1, 2009*
The agency annually establishes personnel satisfaction and retention goals and measures rate of personnel turnover and personnel satisfaction.

18

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-AM 5.01**
Oversight entities:

a.    reflect the demographics of the communities served;
b.    represent the interests of the communities served;
c.    link the agency and the public or community; and
d.    ensure that the agency's policies and performance uphold the public
        trust.

**PA-RPM 2.01 -** *365 Day Standard due July 1, 2009*
Management conducts an internal assessment of overall risk at least annually that
includes:

a.    compliance with legal requirements, including licensing and mandatory
        reporting laws, and fiscal accountability;
b.    insurance and liability;
c.    health and safety, including use of facilities;
d.    contracting practices and compliance;
e.    staff training regarding areas of risk;
f.     volunteer roles and oversight;
g.    research involving program participants and other clients' rights issues;
h.    security of information, including client confidentiality;
i.     financial risk;
j.     fundraising;
k.    conflict of interest;
l.     employment practices; and
m.   interagency collaborations.

**PA-RPM 2.02 -** *365 Day Standard due July 1, 2009*
The agency conducts a quarterly review of immediate and ongoing risks that
includes a review of incidents, accidents, and grievances related to:

a.    administering, dispensing, or prescribing medications;
b.    service modalities or other organizational practices that involve risk or
        limit freedom of choice;
c.    the use of restrictive behavior management interventions, such as
        seclusion and  restraint;
d.    facility safety issues; and
e.    situations where a person was determined to be a danger to himself/herself
        or others.

**PA-RPM 2.04 -** *365 Day Standard due July 1, 2009*
Individuals qualified by knowledge and experience are responsible for risk
prevention and management functions.

19

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-ASE 6.01 -** *365 Day Standard due July 1, 2009*
The agency assesses its safety and security needs and:

a.   takes appropriate measures to protect the safety of all persons who are in
     its facilities or on its grounds;
b.   develops safety and communication protocols for staff that work off-site;
c.   trains staff on potential risks they may encounter on-site, in the
     community, or in clients' homes;
d.   trains staff on self-protection techniques, as necessary; and
e.   has security systems to deter facility break-ins.

**PA-ASE 8.01 -** *365 Day Standard due July 1, 2009*
The agency minimizes the risk of exposure to contagious and infectious disease
by:

a.   adhering to CDC and OSHA guidelines;
b.   consulting with the local health department or an individual qualified to
     provide such information; and
c.   annually training program personnel on universal disease precautions.

**PA-ASE 8.02 -** *365 Day Standard due July 1, 2009*
The agency:

a.   consults with local and state public health and licensing authorities to
     determine the need to test personnel who are in direct contact with service
     recipients who may be at high risk for tuberculosis or other air and blood-
     borne pathogens; and
b.   as necessary, implements a targeted testing program that is consistent with
     public health authority recommendations.

**PA-ASE 1.02**
The agency develops and implements a policy to prohibit smoking in all areas of
its buildings except in specified circumstances and in locations environmentally
separate from administrative and service areas.

**PA-ASE 4**
All facilities in which the agency operates are properly maintained through:

a.   regular inspections;
b.   preventive maintenance by a qualified professional;
c.   a monthly review of the physical plant's heating, fire extinguishers,
     fire safety, lighting, and other systems;
d.   a review of vehicle safety inspections;
e.   installation of window guards, where necessary; and
f.   quick responses to emergency maintenance issues and potentially
     hazardous conditions.

20

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

## PA-ASE 7.01
The agency develops an emergency response plan that addresses:

a.      coordination with appropriate local, state, and federal governmental authorities;
b.      coordination with emergency responders;
c.      coordination and communication with service recipients;
d.      evacuation of persons with mobility challenges and other special needs;
e.      accounting for the whereabouts of staff and service recipients;
f.      options for relocating service recipients; and
g.      situations involving the threat of harm or violence, or actual harm or violence.

## PA-ASE 7.03
The emergency response plan includes arrangements for:

a.      a temporary work site in the event of facility closure;
b.      communicating with senior management, personnel, service recipients, the public, and the media; and
c.      notifying parents or legal guardians, as appropriate.

## II.  Foster Care Services Assessment and Implementation Steps

### 1.  Policy and Practice Guide:

Defendants shall revise DFCS policies and practice guides as necessary to reflect the COA foster care services standards and the requirements set forth in Section II.B of the Settlement Agreement, and identify any related training needs.

### 2.  Foster Care Assessments:

Defendants shall conduct Foster Care Services Assessments in conjunction with a qualified independent consultant approved by the Monitor.[3]  The following Foster Care Services Assessments will be completed by October 1, 2009:

a.      A reunification services needs assessment;

b.      A service provider needs assessment with the purpose of  identifying available medical, dental, and mental health services and gaps in services;

---

[3] Previous external assessments of DFCS may be referred to or utilized in the completion of the following assessments.

c.      An assessment of the quality and array of independent living services available to foster children ages 14-20; and

d.      A recruitment and retention assessment to determine the need for additional foster care support services.

The following Foster Care Services Assessments will be completed by January 1, 2010:

e.      A termination of parental rights ("TPR") assessment for the purposes of identifying those children who have been in custody more than 15 of the previous 22 months and for whom DFCS has not filed a TPR petition or documented an available exception under the federal Adoption and Safe Families Act ("ASFA") as required;

f.      A child safety assessment of DFCS practice for prioritizing, screening, assessing, and investigating reports of maltreatment of children to determine the extent to which DFCS investigations and decisions are based on a full and systematic evaluation of the factors that may place a child at risk; and

g.      A placement assessment of current needs for achieving compliance with the placement standards set forth in Section II.B.5 of the Settlement Agreement, which shall include (1) the structure of the placement process, including the role and efficacy of the state office placement unit; (2) the services and supports available to support enhanced placement stability, including out-patient or in-home assessment and treatment services to avoid the frequent use of time-limited assessment and treatment placement programs; and (3) the placement resources needed to meet the placement needs of children in custody.

3.  **Screening and Assessments**

a.      By September 30, 2009, DFCS shall develop a protocol and training module for both individual and family team meetings as described in II.B.1.b of the Settlement Agreement.  The training module shall be incorporated into the pre-service and in-service training curricula.

b.      All caseworkers carrying active cases and their supervisors will have undergone training on the individual and family team meeting protocols.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**Relevant COA Standards:**

**PA-FC 1.01**
Prompt, responsive screening practices:

a.    ensure equitable treatment;
b.    examine the child's ability to participate in family and community life
      without danger to themselves or others;
c.    give priority to urgent needs and emergency situations; and
d.    support timely initiation of services.

**PA-CPS 7.02 - *365 Day Standard due July 1, 2009***
The information gathered for assessments:

a.    includes underlying conditions and environmental and historical factors
      that may contribute to concerns identified in initial screening,
      investigation, and risk and safety assessments;
b.    identifies child and family strengths, protective factors, and needs;
c.    includes the potential impact of maltreatment on the child;
d.    includes factors and characteristics pertinent to making an appropriate
      placement, if necessary;
e.    identifies potential family resources for the child and the parents; and
f.    is limited to material pertinent for providing services and meeting
      objectives.

**PA-FC 2.02 - *365 Day Standard due July 1, 2009***
The information gathered for assessments:

a.    includes internal, external, and historical factors that may contribute to
      concerns identified in initial risk and safety assessments and initial
      screenings;
b.    identifies child and family strengths, protective factors, and needs;
c.    includes the impact of maltreatment on the child;
d.    includes factors and characteristics pertinent to selecting an appropriate
      placement;
e.    identifies family resources for the child and the parents; and
f.    is limited to material pertinent for meeting service objectives.

**PA-AS 2.05**
Information is gathered from birth parents and maintained for the child's future
use, including:

a.    the child's medical and social history;
b.    contact information for organizations, medical facilities, or others
      involved in services to the birth parents and the child;

23

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

    c.       all available information about the medical and social history of the
               birth parents and the pregnancy; and
    d.       photographs or a physical description of birth parents.

**PA-FC 8.01**
Parents receive information about foster care services that includes:

    a.       an orientation to the foster care service and the child's need for a
               permanent, safe, stable home;
    b.       parental rights and responsibilities;
    c.       the importance of parental involvement and contact with the child and
               the agency, according to the service plan; and
    d.       the legal implications if reunification efforts are unsuccessful.

## 4. Service Planning and Monitoring

The revised policies and practice guides shall require that each service plan and revision
of such plan meets the requirements of section II.B.2 of the Settlement Agreement and:

    a**.**       is based on the assessment required by section II.B.1 of the Settlement
               Agreement;

    b**.**       includes: service goals, desired outcomes, and timeframes for achieving
               them; services and supports to be provided, and by whom; and the
               signature of the parents and, when appropriate, the child or youth; and

    c.       addresses, as appropriate: unmet service and support needs that impact
               safety, permanency, and well-being; maintaining and strengthening
               relationships; educational needs and goals; and the need for culturally
               responsive services and the support of the family's informal social
               network.

**Relevant COA Standards:**

**PA-CPS 8.03 -** *365 Day Standard due July 1, 2009*
An individualized service plan developed with each family is based on the
assessment and includes:
    a.       agreed upon goals, desired outcomes, and timeframes for achieving them;
    b.       services and supports to be provided, and by whom;
    c.       timeframes for evaluating family progress; and
    d.       the signature of the parents and the youth, if age appropriate.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-CPS 8.01**
Service planning is family centered, and includes, as appropriate:

a.  the child;
b.  family members;
c.  additional service providers; and
d.  tribal representatives.

**PA-CPS 8.05**
Service plans are completed within timeframes established by the agency.

**PA-FC 3.07**
The foster care worker and a supervisor, or a clinical, service, or peer team review the case quarterly to assess:

a.  service plan implementation;
b.  progress toward achieving service goals and desired outcomes; and
c.  the continuing appropriateness of the agreed upon service goals.

**5.  Child and Youth Permanency**

    **a.  Permanency Plan:**

    The revised policies and practice guides shall require that:

    1)  All permanency plans contain specific information about:

        i.   How the permanency goal will be achieved;
        ii.  What services are necessary to make the accomplishment of the goal likely;
        iii. Who is responsible for the provision of those services;
        iv.  When the services will be provided; and
        v.   The date by which the permanency goal is likely to be achieved.

    2)  All services documented in the case record as necessary for the achievement of the permanency goal are provided within the time period in which they are needed, by either providing those services directly, contracting with a private provider for those services, or referring to an existing service provider for the provision of those services.

25

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**Relevant COA Standard:**

**PA-FC 4.01 - *365 Day Standard due July 1, 2009***
Service providers, foster parents, the public authority, and the court work with the child, youth, and family to develop a permanency plan within 30 days of placement, which specifies:

a.      the permanency goal(s);
b.      a timeframe for achieving permanency; and
c.      activities that support permanency.

**b.  Permanency Plan Updating and Review:**

1)   By July 1, 2009, Defendants shall implement a system to facilitate a court review for every foster child within 12 months of initial placement and annually thereafter. That system shall include the capacity to: (1) track scheduled annual court reviews, and notify the Youth Court with jurisdiction over the child of any reviews that need to be scheduled or re-scheduled so as to meet the requirements of section II.B.3.c of the Settlement Agreement; (2) ensure that the Youth Court with jurisdiction is provided with a detailed up-to-date report on the current status of the child's placement, visitation, permanent plan progress, and service needs no later than 30 calendar days before a scheduled court review or at a time otherwise directed by the Court; and (3) ensure that the child's assigned caseworker or supervisor attends any such scheduled court review.

**c.  Reunification Services:**

1)   Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan to meet the needs identified in the required Foster Care Services Reunification Needs Assessment, with specific steps and timetables for addressing gaps in the availability of effective services.  Such plan shall be developed by January 1, 2010.

**Relevant COA Standard:**

**PA-FC 8.02**
Foster care workers maintain regular contact with the child's family to:

a.      keep the family informed and involved in decisions about the child; and
b.      remain current about the family's circumstances.

26

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**d. Termination of Parental Rights/Special Permanency Reviews:**

1) By January 4, 2010, DFCS shall begin the implementation of a "tickler" system for notifying caseworkers and caseworker supervisors when a case assigned to them has reached the following milestones: 12 months after a child entered custody; 30 calendar days after the establishment of adoption as the primary permanency goal; 30 calendar days after a TPR referral has been made; and 10 calendar days after a TPR packet has been returned to DFCS because of a legal deficiency.

2) By December 1, 2009, DFCS shall have held a special permanency review for each child in DFCS custody who had, as of January 4, 2008, been in foster care more than 15 of the previous 22 months, and for whom DFCS has not filed a TPR petition or documented an available ASFA exception. For each child who reaches more than 15 of the previous 22 months in foster care after January 4, 2008, and for whom DFCS has not filed a TPR petition or documented an available ASFA exception, DFCS shall begin holding special permanency reviews. Such permanency reviews shall include the DFCS caseworker, the caseworker's direct supervisor, and at least one individual with expertise in permanency planning who has not held direct casework or supervisory responsibility for the case. The review will produce a written plan of action setting forth the steps to be taken by DFCS, the contract agency, and/or any other provider of services, in order to move the child to permanency as quickly as possible. Such permanency reviews shall be documented in the child's case record, and reconvened monthly until all barriers to permanency have been resolved, a TPR petition has been filed, or an available ASFA exception has been documented in the child's case record.

**e. Adoption:**

1) By July 1, 2009, DFCS shall define the job description, responsibilities, and qualifications for the position of adoption specialist. The adoption specialist's responsibilities shall include consulting with private and public professionals and identifying and ensuring the provision of targeted services necessary for the child to be adopted.

2) By July 1, 2009, DFCS shall develop a protocol for adoption meetings, which are to be held to review the progress being made in achieving the goal of adoption for legally free children.

3) By July 1, 2009, DFCS shall have identified external adoption consultants who DFCS can contract with to provide adoption recruitment assistance to

children who have been free for adoption for six or more months and who are not yet placed in an approved adoptive home.

4) DFCS shall take reasonable steps to hire (or promote) and train a sufficient number of adoption specialists to meet the adoption requirements of Section II.B.3.f of the Settlement Agreement.  Adoption status meetings consistent with the Settlement Agreement will start being held.

5) By October 1, 2009, DFCS shall develop and begin implementing a process for making legal risk placements that assures that children for whom the permanency plan is adoption but who are not yet legally free for adoption are placed in appropriate adoptive homes.

6) By October 1, 2009, DFCS shall implement a process for advising all potential adoptive families, including any foster family caring for a child who has become legally available for adoption, of the availability of adoption subsidies. This notification shall be documented in the child's record, and the family's access to such subsidies shall be facilitated.

**Relevant COA Standards:**

**PA-AS 8.05**
When a child is placed prior to termination of parental rights, the agency:

a.  informs the prospective adoptive parents of the substantial risks involved and limitations on confidentiality;
b.  requires written agreements between the organization and the prospective adoptive parents, stating the mutual intention that the adoption take place, if legal matters are resolved; and
c.  makes diligent efforts to remove legal and other barriers to the adoption.

**PA-AS 2.03 - *365 Day Standard due July 1, 2009***
An age-appropriate child study is conducted to assess the child's readiness for adoption, and includes:
a.  an evaluation of the child's ability to bond and develop relationships;
b.  history of maltreatment and prior placements;
c.  prenatal history and developmental screening of infants and young children;
d.  current medical and dental health examinations; and
e.  a psychological evaluation, if needed.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

## PA-AS 8.01
A process that examines the child's needs and interests, and the prospective adoptive parents' interpersonal and parenting skills, identifies an adoptive family that:

a.    is most suitable to meet the child's needs; and
b.    can advance the child's best interests.

## PA-AS 7.02
Age-appropriate services that prepare the child for adoption include:

a.    opportunities to visit prospective adoptive parents, and preparation and support for such visits;
b.    counseling to help the child understand the adoption and cope with separation, loss, and birth family loyalty issues;
c.    consideration of continued contact with the birth parents, siblings, extended family, and the child's tribe when one has been identified; and
d.    the development of a lifebook that describes the child's personal history.

## PA-AS 3.02
The homestudy includes an assessment of:

a.    family relationships and functioning;
b.    education, employment, and financial status;
c.    parenting abilities and experiences;
d.    the home environment;
e.    physical and mental health status;
f.    cultural sensitivity and a willingness to support the child's cultural ties; and
g.    interest in adoption.

## PA-AS 3.04 - *365 Day Standard due July 1, 2009*
The home-study is a collaborative process that helps the family decide if adoption is an appropriate goal, and includes:
a.    one or more visits to the prospective adoptive family's home;
b.    reference checks;
c.    criminal background and child abuse and neglect registry checks according to applicable legal requirements; and
d.    preparation of a home-study report with a recommendation regarding the family's ability to meet the needs of an adopted child.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-AS 11.01**
When the need for post-adoption services is identified, the agency and the individual or family jointly develop a plan that specifies steps for obtaining these services.

**PA-AS 11.02**
Children, birth parents, adoptive parents, and adopted persons have access to needed post-adoption services that are culturally relevant and include:

a.    assessments;
b.    information and referral;
c.    case management;
d.    early intervention for children with developmental delays;
e.    educational services;
f.    counseling, mental health treatment, and crisis intervention services;
g.    family preservation and stabilization services;
h.    peer support;
i.    transportation; and
j.    respite services and out-of-home care

## 6. Child Safety

a.    By May 1, 2009, Defendants shall instruct all DFCS staff that as mandated reporters they are required to formally report any suspicions of maltreatment, including corporal punishment, of children in custody.

b.    By January 1, 2010, DFCS shall assure that standardized decision-making criteria are used for prioritizing, screening, and assessing all reports of maltreatment, including corporal punishment, of children in DFCS custody.

c.    By January 1, 2010, Defendants shall revise DFCS policies and procedures for screening and investigating reports of child maltreatment, including corporal punishment, to incorporate the child safety standards and requirements set forth in Section II.B.4 of the Settlement Agreement.

d.    By September 1, 2009, all calls to the hotline shall immediately be entered into the statewide computer information system, and the worker or supervisor receiving the report shall use the information system to determine whether there have been prior reports of abuse and/or neglect in that family or concerning that child.  If a report is screened in, information regarding any prior reports shall immediately be made available to the worker to whom the case has been assigned for investigation.

30

e.      By October 1, 2009, DFCS shall complete a special safety review, including an unannounced site visit, of all currently licensed foster homes with two or more reports of maltreatment, including corporal punishment, within the last three years to determine whether any children placed in those homes are at risk of harm and/or any licensing standards related to child safety are not being met.  Any necessary corrective actions will be identified and tracked.

f.      By December 1, 2009, DFCS shall undertake a special safety review, including an unannounced site visit, of all group homes and other residential facilities that house children in custody with three or more reports of maltreatment, including corporal punishment, within the last two years to determine whether any children placed in those facilities are at risk of harm and/or any licensing standards related to child safety are not being met.  Any necessary corrective actions will be identified and tracked.

g.      By December 1, 2009, all investigations into reports of maltreatment, including corporal punishment, of children in DFCS custody must be initiated within 24 hours of the report and completed within 30 calendar days**,** including supervisory approval.  DFCS shall assure that such investigations and decisions are based on a full and systematic evaluation of the factors that may place a child in DFCS custody at risk.

h.      By December 1, 2009, any foster child who remains in the same out-of-home placement following an investigation into a report that he or she was maltreated, or subject to corporal punishment, in that placement shall be visited by a DFCS caseworker twice a month for three months after the conclusion of the investigation to assure the child's continued safety and well-being.

i.      By December 1, 2009, when a maltreatment investigation involves a foster home, DFCS shall file a copy of the approved final investigative report and any recommendations and/or corrective actions DFCS has deemed necessary in the case record of the foster child, in the file of the foster or adoptive parents with a copy of the letter of notification to the foster or adoptive parents, and in the DFCS State Office.  DFCS shall also provide those records to the Youth Court Judge with jurisdiction over the child and to the Monitor.

j.      By December 1, 2009, when a maltreatment investigation involves an agency group home, emergency shelter, private child placing agency foster home, or other facility licensed by DFCS, a copy of the final investigative report shall be filed in the child's case record, in the facility licensing file, and in the DFCS State Office.  DFCS shall provide the

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

report to the Youth Court Judge with jurisdiction over the child and to the Monitor.

**Relevant COA Standards:**

**PA-CPS 4.05 -** *365 Day Standard due July 1, 2009*
Cases are assigned for investigation, referred, or screened out, within 24 hours.

**PA-CPS 5.05 -** *365 Day Standard due July 1, 2009*
The investigator conducts a comprehensive evaluation of risk and protective factors that include:
a.    child safety;
b.    family strengths and needs;
c.    history and impact of prior child abuse or neglect, domestic violence, or substance use; and family connections.

**PA-CPS 6**
Safety assessments are conducted at defined intervals and milestones, and safety plans are developed and updated as necessary.

**PA-CPS 14.06**
Supervisory personnel are involved in all decisions related to child safety and permanency, and workers have access to a supervisor by telephone 24 hours a day.

**PA-ASE 6.03 -** *365 Day Standard due July 1, 2009*
An agency that transports service recipients in its vehicles or permits transportation in vehicles that belong to the agency's personnel, foster parents, volunteers, or contractors requires:

a.    the use of age-appropriate passenger restraint systems;
b.    adequate passenger supervision, as mandated by statute or regulation;
c.    proper maintenance of agency vehicles;
d.    current registration and inspection of vehicles;
e.    annual validation of licenses and driving records; and
f.    proper insurance for vehicles and passengers.

**7.  Child Placement**

a.    By May 1, 2009, all foster care settings, including relative placements, shall be screened prior to the initial placement of foster children to ensure that children receive safe, sufficient, and appropriate care.  Additional screens shall be completed at least once annually thereafter and within two weeks of a reported change in the residents of a foster home.  Screens shall include criminal and child welfare background checks of all

household members who are at least 14 years old.  No foster child shall be placed in a home prior to DFCS receipt of the background check results.

b.  Defendants shall develop and begin the implementation of a written plan to ensure the speedy licensing of all current unlicensed caregivers.  All such current unlicensed caregivers shall be licensed.

c.  By December 1, 2009, DFCS shall develop and implement an expedited process for licensing screened relative caregivers to enable a child to be placed quickly with relatives upon entering placement.  No foster child entering custody will be placed in an unlicensed relative placement, subject to the allowance of the emergency licensing process that allows 60 days for the licensing process to take place.

d.  All relative placements approved for expedited placement shall undergo the full licensing procedure within 60 calendar days of the child's placement in the home.

e.  Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a plan with specific action steps and timeframes to address policy and structural changes to the placement process that the placement assessment has identified as necessary to comply with the placement requirements set forth in Section II.B.5 of the Settlement Agreement.  That plan shall also include the development of the position of placement specialists in each region, and a protocol for the placement stability meetings that the Settlement Agreement requires that DFCS hold when a worker has knowledge that a placement is at risk of disruption.

f.  By December 1, 2009 and continuing thereafter, no foster child shall remain in an emergency or temporary facility for more than 45 calendar days, unless, in exceptional circumstances, the Division Director has granted express written approval for the extension that documents the need for the extension.

g.  No child shall spend more than 12 hours at a time in a DFCS office or other non-residential facility that provides intake functions.  No child shall be placed in more than one emergency or temporary facility within one episode of foster care, unless an immediate placement move is necessary to protect the safety of the child or of others as certified in writing by the Regional Director.

h.  No child under 10 years of age shall be placed in a congregate care setting (including group homes and shelters) unless the child has exceptional needs that cannot be met in a relative or foster family home or the child is a member of a sibling group, and the Regional Director has granted

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

express written approval for the congregate care placement. Such approval shall be based on the Regional Director's written determination that the child's needs cannot be met in a less restrictive setting and can be met in that specific facility, including a description of the services available in the facility to address the individual child's needs. Sibling groups in which one or more of the siblings are under the age of 10 shall not be placed in congregate care settings for more than 45 days.

i.    No foster child shall be moved from his/her existing placement to another foster placement unless DFCS specifically documents in the child's case record justifications for that move and the move is approved by a DFCS supervisor.

j.    By September 30, 2009, DFCS shall implement a formalized protocol to provide foster parents with all appropriate and available information about a child prior to or at the time of placement and for supplementing that information as further information is gathered.

**Relevant COA Standards:**

**PA-KC 1.01**
Families are screened and informed about:

a.    how well the family's request matches the agency's services; and
b.    what services will be available, and when.

**PA-KC 1.02**
Prompt, responsive screening practices:

a.    ensure equitable treatment;
b.    give priority to urgent needs and emergency situations;
c.    support timely initiation of services or immediate contact with the referral source when the child and family cannot be served; and
d.    examine the child's ability to participate in family and community life without danger to themselves or others.

**PA-FC 17.01**
Homestudies are completed prior to placement, and are updated:

a.    within two weeks of a reported change in the home composition; and
b.    at least once annually.

## PA-FC 17.02

The homestudy includes an assessment of factors that may impact the ability of prospective foster parents to provide care, protection, and experiences that enhance healthy development including:

a.    personal characteristics;
b.    motivation for providing foster care;
c.    willingness to provide care for a child or youth of a different race, ethnicity, culture, or sexual orientation;
d.    cultural sensitivity and a willingness to support the child's cultural ties;
e.    family and marital functioning;
f.    mental health;
g.    parenting skills and experiences;
h.    social support networks; and
i.    the home environment.

## PA-KC 6.05

A regular assessment of each home verifies basic health and safety requirements are met, including:

a.    appropriate sleeping arrangements;
b.    adequate heat, light, water, refrigeration, cooking, and toilet facilities;
c.    functional smoke detectors;
d.    intact doors, steps, windows, and window guards where necessary;
e.    no exposed wiring;
f.    no rodent or insect infestation; and
g.    walls and ceilings free of holes and lead paint.

## PA-CPS 11.02

The child is placed with siblings whenever possible, and is referred to an out-of-home care program that can provide the most appropriate placement that is in close proximity to the child's parents and allows the child to maintain his or her cultural connections.

## PA-KC 6.01

The agency works with the child and parents to identify kin that can be a resource to the child.

## PA-KC 2.03

Family members are engaged, as appropriate, in a comprehensive assessment to determine:

a.    the strength of kinship bonds;
b.    relationships between the child, the parents, and the caregivers;

    c.       caregiver readiness, capacity, and commitment to provide care; and
    d.       caregiver willingness and ability to facilitate an ongoing relationship
                with the parents.

**PA-CPS 10.03 - *365 Day Standard due July 1, 2009***
The agency minimizes the negative effects removal can have on a child by:

    a.       providing age-appropriate information about the removal process;
    b.       identifying personal items the child will bring;
    c.       collecting information about the child's daily routine, preferred foods and
                activities, needed therapeutic or medical care, and education;
    d.       discussing how the child can maintain contact with the family; and
    e.       discussing separation and loss.

**PA-CPS 11.01**
All information available from intake, screening, assessment, and placement
history are considered to identify the most family-like, least restrictive type of
out-of-home care suitable to provide for the child's safety, permanency, stability
and well being.

**PA-FC 6.05 - *365 Day Standard due July 1, 2009***
The home environment is considered when identifying a family for the child, and
foster care homes have no more than:

    a.       five children with no more than two children under age two; or
    b.       two foster children with therapeutic needs.

**PA-FC 16.05 - *365 Day Standard due July 1, 2009***
Foster parents are trained in:

    a.       basic first aid;
    b.       medication administration;
    c.       cardio-pulmonary resuscitation;
    d.       recognizing and responding to child behaviors that jeopardize health and
                well-being; and
    e.       medical or rehabilitation interventions and operation of medical equipment
                required for a child's care.

**PA-FC 6.03**
A placement that can meet the child's needs is selected in accordance with the
following priorities:

    a.       with siblings;
    b.       with kin; or
    c.       with a family that resides within reasonable proximity to the child's
                family and home community.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

## PA-FC 16.06 - *365 Day Standard due July 1, 2009*
Foster parents sign a statement agreeing to refrain from the use of corporal and
degrading punishment, and receive initial and ongoing training and support to
promote positive behavior and use appropriate discipline techniques.

## PA-FC 9.01
Foster parents provide each child in care with:

a.  a pleasant and safe atmosphere and nurturing family relationships that
    promote positive attachment;
b.  a physical environment and materials that support the child's
    development;
c.  nutritious meals and snacks;
d.  age-appropriate boundaries, supervision, and discipline;
e.  an orderly daily schedule that promotes positive participation in age-
    appropriate educational, social, recreational, and community activities;
    and
f.  basic personal needs and an allowance, as appropriate.

## PA-BSM 1.02
Behavior support and management policies cover:

a.  practices used to maintain a safe environment and prevent the need
    for restrictive behavior management interventions;
b.  whether isolation, manual or mechanical restraint, or locked
    seclusion are permitted as emergency safety measures;
c.  other practices that may be used and under what circumstances; and
d.  prohibited practices.

## PA-BSM 2.01
The agency:

a.  provides an explanation for and offers a copy of its written behavior
    support and management philosophy and procedures to service
    recipients or their parents or legal guardians at admission;
b.  informs service recipients or parents or legal guardians of strategies
    used to maintain a safe environment and prevent the need for
    restrictive behavior management interventions;
c.  has procedures that address harassment and violence towards other
    service recipients, personnel, and, as applicable, foster parents;
d.  obtains the service recipient's or parent's or legal guardian's consent
    when restrictive behavior management interventions are part of the
    treatment modality; and
e.  when the service recipient is a minor, notifies the parents or legal
    guardians promptly when manual restraint, mechanical restraint, or
    locked seclusion were used.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**PA-BSM 2.03**
The agency prohibits:

a.   the use of restrictive behavior management interventions by service recipients, peers, or any person other than trained, qualified staff, or foster parents;
b.   chemical restraint;
c.   excessive or inappropriate use of restrictive behavior management interventions as, for example, a form of discipline or compliance, or for the convenience of staff or foster parents; and
d.   use of restrictive behavior management interventions in response to property damage that does not involve imminent danger to self or others.

**8.   Developing and Maintaining Connections**

a.   The Settlement Agreement requirements and standards at section II.B.6 for developing and maintaining connections through parent-child and sibling visitation will be included in the Practice Guide.  Pre-service and on-going training shall specifically address case practice associated with parent-child and sibling visitation, and regular supervisory reviews shall specifically include an evaluation of such practice.

**Relevant COA Standards:**

**PA-FC 7.03**
A visitation plan is developed and updated in collaboration with parents, foster parents, and the child and is appropriate to:

a.   the child's age and developmental stage;
b.   the parents' strengths and needs;
c.   the schedules of foster parents and parents;
d.   the social and cultural context of the family; and
e.   the status of the case and the permanency goal.

**PA-FC 7.05**
Agency policy prohibits cancellation of visits as a disciplinary action.

38

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

9.  **Physical and Mental Health Care**

 a. Defendants, in consultation with state Medicaid and mental health officials, shall, by December 1, 2009, develop and begin implementing specific and focused regional plans to recruit and develop service providers in areas identified in the needs assessment as having gaps in required services.

**Relevant COA Standards:**

**PA-FC 2.04 -** *365 Day Standard due July 1, 2009*
The child receives an initial health screening from a qualified medical practitioner within 72 hours of entry into care to identify the need for immediate medical or mental health care, and assess for infectious and communicable diseases.

**PA-FC 10.03 -** *365 Day Standard due July 1, 2009*
Qualified professionals provide the child with age-appropriate health services including:

 a. medical examinations according to well child guidelines;
 b. dental examinations every 6 months;
 c. developmental, mental health, and alcohol and drug screenings within 30 days after entry into care, and when indicated to identify the need for further diagnostic assessment; and
 d. needed therapeutic and treatment services.

**PA-FC 10.04**
Youth receive age appropriate support and education regarding:

 a. pregnancy prevention and responsible parenthood; and
 b. prevention and treatment of sexually transmitted diseases.

**PA-KC 10.04**
Qualified professionals provide the child with age-appropriate health care services including:

 a. medical examinations according to well-child guidelines;
 b. dental examinations every 6 months;
 c. developmental, mental health, and alcohol and drug screenings within 30 days after entry into care, and when indicated to identify the need for further diagnostic assessment; and
 d. needed therapeutic and treatment services.

## 10. Educational Services

    a.    DFCS shall develop and implement a protocol for conducting a general and special education screen of children entering foster care.

    b.    DFCS shall develop and begin implementing a plan for providing, either directly or through contract, the following educational services in each county: tutoring; preparation for a general equivalency diploma ("GED"); and college preparation.

**Relevant COA Standards:**

**PA-FC 9.04**
The child receives support to achieve his/her full educational potential through:

    a.    appropriate communication and collaboration between the foster care worker, educators, foster parents, and parents;
    b.    efforts to keep the child enrolled in a familiar school or, if change is unavoidable, to enroll the child in the best educational setting available;
    c.    educational assessments and an individual education plan when needed;
    d.    early childhood care and development and early intervention services;
    e.    tutoring; and
    f.    advocacy.

**PA-FC 11.02 -** *365 Day Standard due July 1, 2009*
The treatment team develops an individualized treatment plan that:

    a.    specifies a diagnosis;
    b.    identifies current and anticipated needs, and specifies short- and long-term therapeutic interventions;
    c.    is reviewed by the treatment team weekly to coordinate an effective response to current issues and behaviors; and
    d.    is reviewed within 30 days of placement, and every 90 days, to evaluate continued need for therapeutic foster care.

## 11. Worker Contact and Monitoring

    a.    Defendants' revised policies and practice guides shall reflect the issues to be addressed during worker contacts with parents, children, and foster care providers. Defendants shall revise DFCS training as necessary to ensure instruction on the quality, frequency, purpose, and structure of meeting with foster children, biological parents, and foster care providers. The

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

training shall specifically address communicating with, interviewing, and observing foster children.

**Relevant COA Standards:**

**PA-CPS 9.04 -** *365 Day Standard due July 1, 2009*
Frequency and type of face-to-face visits with the child and family are appropriate to the family's needs and risk to the child, and visits occur at least once a month, to:

a.      establish effective working relationships;
b.      assess safety and well-being;
c.      monitor service delivery; and
d.      measure and support the achievement of agreed upon goals.

**PA-FC 12.01 -** *365 Day Standard due July 1, 2009*
The family foster care worker meets separately with the child and the parents at least once a month to:

a.      assess safety and well-being;
b.      monitor service delivery; and
c.      support the achievement of permanency and other service plan goals.

**PA-FC 12.02**
The foster care worker regularly communicates with the foster parents and visits the home at least once a month to:

a.      share all relevant and legally permissible information concerning the child;
b.      evaluate safety, needs, and well-being; and
c.      monitor service delivery and achievement of service and permanency plan goals.

**12. Transition to Independent Living**

a.      Defendants shall develop and begin implementing a written plan to address independent living service gaps identified in the Foster Care Independent Living Services Assessment.

b.      Defendants shall develop and begin implementing a system for ensuring that emancipating youth have obtained, prior to transitioning to independent living, the necessary documents and information identified in the COA standards for such youth.

41

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

c.      DFCS will develop for each region the capacity and current resource
        guides necessary to assist youth in locating and/or enrolling in educational
        or vocational programs appropriate to their needs, interests, abilities, and
        goals, such as high school or GED programs; colleges or universities;
        vocational training programs; and special education services.

## 13. Case Closing and Aftercare

**Relevant COA Standards:**

**PA-AS 10.01**
Case closing is a clearly defined process that involves the worker, the individual
or family receiving services, and others, as appropriate.

**PA-CPS 13.02**
Planning for case closing:

a.      is a clearly defined process that includes assignment of staff
        responsibility;
b.      begins at intake;
c.      involves the family and others, as appropriate; and
d.      includes discussion with the family about the successful changes in
        behaviors and conditions that reduced risk to the child, and plans and
        strategies for maintaining those changes.

**PA-FC 14.03**
Upon case closing, the agency notifies any collaborating service providers,
including the courts and tribal governments, as appropriate.

**PA-FC 15.01**
The agency and the family develop an aftercare plan sufficiently in advance of
case closing that specifies services needed or desired, and the steps for obtaining
these services.

**PA-KC 15.04**
The agency follows up on the aftercare plan, as appropriate, when possible, and
with the permission of the family.

## 14. Recruitment and Retention of Foster Families and Therapeutic Service Providers

a.      By November 1, 2009, the consultant shall deliver to the Parties and the
        Monitor a written report setting forth (1) findings regarding the adequacy
        of the current schedule of foster care maintenance payments made to

foster care providers serving special needs children and facilities providing congregate foster care in relation to the requirements of 42 U.S.C. § 675(4)(A) and the actual cost in the state of Mississippi to provide such care; (2) the methodology utilized to determine the actual costs in the state of Mississippi to provide such care; and (3) a schedule of recommended rates for foster care providers serving special needs children and facilities providing congregate foster care.  Plaintiffs shall have 30 days to raise any written objection to the schedule of recommended rates as determined by the consultant.  Should Plaintiffs raise objections and should the Parties be unable to reach agreement, the consultant's schedule and Plaintiffs' objection shall be submitted to the Court for final determination.

b.      Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan for targeted recruitment and development of a range of family and facility placements that will adequately meet the placement needs of the foster care population.

c.      Defendants shall develop and begin implementing a written plan to provide services for foster parents in every county to prevent and reduce stress and family crisis.

d.      In consultation with Mississippi foster parents, DFCS shall identify additions and revisions to the current foster parent training curriculum that are necessary to adequately train foster parents to meet the needs of the children placed in their care.  Foster parent training classes based upon the revised curriculum shall be available in every region.

e.      DFCS shall create a resource family workgroup (consisting of staff and resource families) to develop and implement resource family practices and protocols that address the types of information that should be provided to resource families prior to taking a child into the home, what type of training is needed, what emergency procedures need to be in place for resource families, what strategies are effective in recruiting, and how resource families can be included in case planning.

f.      DFCS shall regionalize its recruitment and retention efforts, and for each region have in place a stakeholder recruitment and retention team to identify local needs and develop and implement plans for recruiting, supporting, and utilizing foster and adoptive parents.

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

**Relevant COA Standards:**

**PA-FC 16.03**
The agency determines the appropriate amount of mandatory pre-service and in-service education necessary to ensure that foster parents understand:

a.      the agency's mission, philosophy, goals, and services;
b.      the needs of abused and neglected children;
c.      how to integrate the child into the family;
d.      the importance of culture and ethnicity, and methods to maintain the
        child's connection to his or her cultural community or tribe;
e.      the partnership role foster parents play in supporting the family;
f.      how to assist with visitation;
g.      sensitive and responsive practices to use with biological parents; and
h.      the use of foster care as a temporary intervention.

**PA-FC 16.04**
Foster parents receive pre-service training on rights and responsibilities including:

a.      specific duties of foster parents;
b.      identification and reporting of abuse and neglect;
c.      reimbursement for services and compensation for damages caused by
        children placed in the home;
d.      notice of and participation in any review or hearing regarding the
        child;
e.      complaint procedures; and
f.      circumstances that will result in closing a home.

**PA-FC 18.01**
Outreach strategies connect foster parents with respite care before they become overwhelmed with care-giving responsibilities.

**PA-FC 18.05**
Close supervision of children ensures their safety and improves service quality, and respite care provider homes have no more than:

a.      five children with no more than two children under age two; or
b.      two foster children with therapeutic needs.

**PA-KC 12.03**
Caregivers receive help obtaining support services including:

a.      financial assistance;
b.      legal services;
c.      housing assistance;
d.      transportation;

44

Period 2 Annual Implementation Plan
Mississippi Settlement Agreement and Reform Plan

    e.       food and clothing;
    f.       physical and mental health care;
    g.      homemaker services; and
    h.      respite care.

## III. Council on Accreditation Readiness Assessment

Defendants shall implement the following recommendations from the COA Accreditation Readiness Assessment, Part I, issued July 21, 2008:

1. By September 1, 2009, Defendants shall identify DFCS offices where cross-county clustering would be beneficial, and Defendants shall create cross-county office clusters in those locations in order to provide more supervision to line staff and to equalize caseloads; and

2. By November 1, 2009, Defendants shall create a centralized intake system that receives and screens all reports of child maltreatment and that forwards all screened-in reports to the appropriate DFCS office.