**Ex. 8**

Child Welfare Practice Model Training

# FACILITATOR'S MANUAL

## Mississippi Child Welfare Practice Model

## Child Maltreatment Training

Developed by:

Center for the Support of Families
June 2010

Mississippi Child Welfare
Practice Model

*Child Maltreatment Training*
*for*
*Caseworkers Engaged*
*in*
*Maltreatment Investigations*

**Slide One**

**Total Estimated Time for Maltreatment Training is 10 hours. The State wide training is 7.5 hours and the additional training for workers who investigate Resource Reports is 2.5 hours.**

Throughout this curriculum you will find:

- Estimated length of time for the PowerPoint slide(s)
- Materials needed, if any
- Trainer's Notes
- Lecture Points
- Activities
- Handouts (There are 18 handouts for the Child Maltreatment Training).

**Trainer Notes** – Designated with an arrow. This information will include instructions, concepts, tips and additional information that the facilitator may find helpful or should take into consideration prior to presenting the training materials.

**Lecture** – Designated with a check mark. Key points for the trainer to review and incorporate into their presentations. The trainer may state the information as presented or paraphrase/incorporate as they feel comfortable.

**PowerPoint Slides** – Miniature copies of each slide have been incorporated into the curriculum.

**Activities** – The instructions of how to conduct the activity.

**Handouts** – Copies of all Handouts are included at the end of this module.

✓ **Trainer's Note:** The trainer is encouraged to review the Mississippi Practice Model report (particularly the Assuring Safety and Managing Risk Component) written by the Center for the Support of Families in preparation for the training.

**MATERIALS:**
Two Flip Charts with a Page marked "What I hope to get out of the training…" and one marked "Parking Lot".
Two Easels
Tape
Markers
Name Tents
Handouts -

**FACILITY:**
Training Room for 30 participants arranged with tables to sit participants to allow for small group activities.

**Slide Two**

**Estimated Time: 20 minutes**
**Lecture and Large Group Discussion:**

✓ Introduce yourself by giving them a brief overview of your experience in child welfare. Ask them to now complete their name tents as everyone briefly introduces themselves by providing their name, how long they have been with the agency, and what their position within the agency is.

- ✓ **Trainer's Note:** Ask the participants to call out responses to the question "What do you hope to get out of the training?" and record on a flip chart with the same heading.
- ✓ Emphasize that the training is to be interactive and the value they get from it will depend on their commitment to participate.
- ✓ Encourage them to ask questions and provide input from their experience.
- ✓ Tell them that we have a "PARKING LOT" for any questions we cannot answer and the method for disseminating the answer post training.

- ✓ **Trainer's Note:** Review the comments on "what they hope to get out of the training" flip chart at the end of the session.

**Slide Three**

**Estimated Time: 1 Minute**
**Lecture:**

- ✓ Review the housekeeping rules. Ask if there are any "housekeeping rules" which they feel need to be added.

**Slide Four**

**Estimated Time: 5 Minute**
**Lecture and Large Group Discussion:**

✓ The agency is adopting a child welfare practice model, which is the conceptual framework to organize and guide interventions that address safety, permanency, and well-being of the children involved with DFCS. While the practice model incorporates practice-related requirements of the *Olivia Y* settlement agreement, along with national accreditation standards and Federal practice requirements, a practice model is not specifically required by the settlement.

✓ The practice model is being phased in by Regions over a three to four-year time period.

✓ Quickly read the titles of the six modules and tell them that eventually everyone will receive the all of the practice model training components in depth. The training that they are receiving now is covering the module on Safety Assurance and Risk Management.



Child Maltreatment Training

*Learning Objectives*

- Introduce revised Safety Assessment tool
- Introduce the new Safety Plan
- Introduce the revised Risk Assessment instruments
- Define child abuse and neglect
- Describe the effects of child abuse and/or neglect on children and the family.

Child Maltreatment Training

*Learning Objectives cont'd*

- Describe the responsibilities in Resource Report investigations of:
  - Regional Director;
  - County of Responsibility;
  - County of Service;
  - Permanency/Placement Unit;
  - Resource Worker;
  - Investigative Worker; and
  - child's assigned Worker

## Slides Five and Six

Child Maltreatment Training

*Competencies*

- Develop a safety plan that prevents removal and placement of children by engaging and empowering the family, extended family and informal supports in actions that control safety factors.
- Identify indicators of risk of abuse or neglect to children in out of home placements.
- Develop a plan for conducting interviews within a child maltreatment investigation and determine the best interview strategies.
- Describe how to conduct an investigation

Child Maltreatment Training

*Competencies cont'd*

- Define safety and risk
- Identify safety threats and thresholds
- Describe how underlying conditions affect protective capacities
- Describe how safety and risk factors impact current family functioning
- Describe the elements of safety plan
- Develop a safety plan
- Describe how to monitor a safety plan

## Slides Seven and Eight

## Estimated Time for Slides Five through Eight: 4 minutes
## Lecture:

✓ **Trainer's Note:** Review the objectives and competencies quickly.



Child Maltreatment Training

*Overview*

- **This training will cover how to:**
  - conduct a maltreatment investigation;
  - develop a safety plan using the new safety plan instrument;
  - implement a safety plan; and
  - explain how the safety plan will be monitored.
- **This training will also cover the ongoing assessment of risk and safety for both in home and out of home cases.**

Child Maltreatment Training

*Overview*

- *Safety and risk related interventions are designed to help children remain safely at home when possible. Assuring child safety begins with the report of maltreatment and continues through the investigation, initial safety and risk assessment; ongoing safety and risk assessment; developing a case plan; assuring safety during placement; reunification and case closure. Safety and risk interventions are applicable for all children within a home.*

## Slides Nine & Ten

Child Maltreatment Training

- *Practice Principles:*
  - Safety and risk assessment practice guides casework activities with regard to safety, permanency, and well-being.
  - Safety and risk assessments are used to address case plans and service delivery.
  - Safety and risk assessment occurs throughout the life of a case.
  - Family-centered practice principles apply to safety and risk interventions.
  - Safety and risk are addressed within the cultural background of the children and families being served.

## Slide Eleven

**Estimated Time for Slides Nine to Eleven: 2 Minutes**
**Lecture:**

✓ Briefly review what is on the slides as a way to introduce the training. Emphasize that these activities and practice principles will be discussed in more detail as the training continues. This information was taken from the Mississippi Child Welfare Practice Model Report prepared by the Center for the Support of Families.



Child Maltreatment Training
Purpose of the Maltreatment Investigation
Assessment of a family or caretaking environment for the purpose of keeping a child or children safe from harm and keeping the family stable and intact.
Prevent additional harm from occurring and assist families in securing services to solve problems in families and aid in healing the damage done from previous harm.

**Slide Twelve**

**Estimated Time for Slide Twelve: 5 Minutes**
**Lecture:**

✓ Review the slide.

✓ Emphasize that the focus of the maltreatment investigation is not only to complete an investigation and make a finding but also to assess that the child is safe from harm and if the child is not safe to take the appropriate actions to assure the child's safety preferably while keeping the family intact.

✓ By engaging the family during the investigation you are beginning a comprehensive assessment which will continue if the case is opened for services. The focus of a maltreatment investigation will start with the assessment of child safety and include assessing the presenting issues at a specific point in time but move to identifying the underlying conditions that contribute to the reason(s) for child welfare involvement. At the beginning of a child welfare case the social worker is usually tasked with gathering data/information and examining and searching for facts concerning an alleged incident. Historically, this information gathering was not usually approached in a family centered manner and may often alienate the family from the child welfare system. As family centered work has evolved, there has been a change from strictly information gathering to an approach which emphasizes relationship building in conjunction with information gathering while laying the groundwork for any ongoing work with the family that is needed. This is not to minimize the importance of assuring the child's safety. The focus includes assessing the family's ability to keep their children safe. A good family assessment should increase the likelihood that the family

will disclose their need for help, the child will share his story and the family will experience a non-judgmental, but very clear message "your child must be safe and have permanence.

- ✓ Best practice research has identified the establishment of the relationship as critical to safety assessment and a more comprehensive family assessment if needed. Families must be treated with respect and as full partners in this process.
- ✓ Emphasize that the investigation which includes safety and risk assessment is not a series of tools but the beginning of an assessment process. Simply completing a tool will not capture all the information needed to assess present and emerging danger and the likelihood of future maltreatment.

**Slide Thirteen**

**Estimated Time: 5 Minutes**
**Materials Needed:** Handout #1, Investigation Flowchart

- ✓ **Trainer's Note:** Direct participants to the Handout # 1, Investigation Flowchart

**Lecture and Large Group Discussion:**

- ✓ We are going to briefly review this investigation flow chart. All of the information presented here will be discussed in more detail throughout this training.
- ✓ If a report of abuse, neglect or exploitation is received that is screened as either a Level 2 or Level 3 report it will be assigned for investigation.

- ✓ There are requirements within an investigation that are changing and we will review them on this flowchart.
- ✓ Initiation time frames remain the same; for Level 2 the case must be initiated within 72 hours and for Level 3, within 24 hours. Level 3 reports require notification of law enforcement and the Youth Court.

- ✓ **Trainer's Note:** Ask the group what it means to initiate an investigation. An investigation is considered initiated when face-to-face contact has been made with the victim child(ren).

**Lecture and Large Group Discussion:**

- ✓ Part of your investigation will include contacting the reporter if needed to obtain additional information that is not included in the report itself.
- ✓ Background information such as a prior history of reports of maltreatment, an open case, a closed case. Check for criminal records that are pertinent to the child's safety or the worker's safety.
- ✓ Plan the interviews you will conduct.
- ✓ Upon initiating the investigation, the first decision you will make is if there is imminent danger requiring immediate intervention. If not, you will continue your investigation. If imminent danger does exist your will then come to the next decision point, which is whether safety actions can prevent taking protective custody of the child. This will involve developing a safety plan with the family. We are going to discuss the development of a safety plan in depth in this training and introduce a new format for documenting the safety plan.
- ✓ The time frame for completing the safety assessment within 7 days has not changed.
- ✓ The time frame for completing the risk assessment has been extended to up to 25 days that you have to complete the investigation.
- ✓ The results of the risk and safety assessments will inform your decision to open a case for services.

DHS 278517



**Slide Fourteen**

**Estimated Time:  1 Minute**
**Lecture**

✓ Briefly review the slide, and explain that we will go into each of the requirements in more depth.



**Slide Fifteen**

**Estimated Time:  5 Minutes**
**Lecture and Large Group Discussion:**

**Trainer's Note:**
➢ Ask participants what records checks they do now?  Do they complete the records checks themselves or does the supervisor or someone else

complete records checks and share that information? Ask how efforts are made to identify absent parents?

- ✓ Review the contents of the slide and stress that these are requirements that must be completed and documented in the course of an investigation.

## Slide Sixteen & Seventeen

**Estimated Time: 3 Minutes**
**Lecture**

- ✓ Explain that safety assessment is a process you engage in throughout the life of the case but also that there is an instrument entitled Safety Assessment that is completed during the investigation. Safety Assessments are completed during an investigation within the first 7 days.
- ✓ Safety is also assessed throughout the life of the case, pointing out the times listed on Slide 17.
- ✓ It is important to note that safety assessment is conducted for all children in the home not just the victim child.
- ✓ We will come back to safety assessment throughout this training.



Child Maltreatment Training
Notifications
Family Members
Law Enforcement
Youth Court
Mandated Reporters
Tribe - when the report involves a tribal child

## Slide Eighteen

**Estimated Time for Slide Eighteen: 10 Minutes**
**Materials Needed:** Handout # 2, Notice of Parent/Guardian's Rights – Investigation
**Lecture and Large Group Discussion**

- ✓ Review the slides and emphasize that there are notifications required when a report is made as well as when the investigation has been completed.
- ✓ The COR Supervisor who receives a report that meets the definition of felony child abuse or neglect as stated in MS Code 43-21-353 is to immediately call the law enforcement agency in whose jurisdiction the crime occurred and give all information available, including the name and address of the person who made the report.
- ✓ MCI may receive a report when the incident occurred in one county and the child lives in another county. The report should be screened to the county of residence (COR) of the child and the COR is responsible for notifying law enforcement and the county in the county where the incident occurred.
- ✓ The determination of whether a child is a member of a tribe should be made promptly. If a child is identified at Intake as a member of the Choctaw tribe and lives on tribal land, the MCI worker will immediately notify the COR Intake Supervisor, who will in turn notify the Mississippi Band of Choctaw Indians at their Social Services Department in Neshoba County. The Mississippi Band of Choctaw Indians has tribal land in Neshoba, Attala, Jones, Kemper, Leake, Newton, Scott, and Winston Counties. If a child is a member of another tribe, that tribe should be notified promptly.

- ✓ As you begin working with/interviewing client(s), it is important that each client not only receive a copy of their rights as a client(s) of the Department of Human Services/Division of Family and Children's Services, but also understand what these rights are and how they affect them. The client(s) and worker must initial each section of the Rights and Responsibilities as the worker explains the information and answers questions, and both the client(s) and the worker must sign the copies of their rights to show they have received them (one copy for them and one copy for their file). This should take place at the first contact with the parent/caregiver(s).
- ✓ At the conclusion of the investigation there are also notifications required. The worker investigating the report is responsible for completing a finding on all investigations as well as completing a report about these findings.
- ✓ When an investigation of child and neglect is completed, whether or not there is evidence, the investigation shall be forwarded to the Youth Court. The investigation report will be generated in MACWIS and printed for sending to the Youth Court. Information submitted to the District Attorney and law enforcement is to be included in court report.
- ✓ If requested by the mandated professional reporter who made the original intake request, the assigned worker notifies the mandated professionals verbally or by letter that the report has been investigated and services rendered, if warranted. The worker shall provide more information regarding the investigation, without a court order, to the professional reporter if that reporter has a continuing professional relationship with the child and a need for such information in order to protect or treat the child.
- ✓ The parent(s) or caregiver(s) must also be notified of the findings.

Child Maltreatment Training

- *Interviews*
  - Reporter
  - Victim Child
  - Siblings
  - All Children in the Household
  - Non-maltreating Parent(s)
  - Alleged Perpetrator
  - Other Household Members
  - Collaterals

**Slide Nineteen**

**Estimated Time: 1 Minute**
**Lecture:**

✓ Review the slide and talk about who you should interview during an investigation. A little later on we will talk about how you should conduct these interviews.

✓ Any investigation is considered "initiated" when face-to-face contact is made with the alleged victim(s). Criterion for attempted contact for the initiation of an investigation are considered met when two or more locations have been checked including the child's identified home and one of the following: the neighbor, school, daycare. Concerted efforts will continue daily to locate the child or children. After two unsuccessful home visits the social worker will leave a note or write a letter requesting that the worker be contacted.



Child Maltreatment Training

- *Home Visit*

The worker must make a visit to the home and a physical home environment narrative must be entered in MACWIS.

If there are any children age 5 or younger the Safety Checklist must be completed and discussed with the parent(s) and signed by both the worker and the parent or caretaker.

## Slide Twenty

**Estimated Time: 5 minutes**
**Lecture and Large Group Discussion:**

- ✓ Review the slide and ask participants "What do you look for during a home visit?"
- ✓ **Trainer's Note:** Expect answers relating to the physical environment, such as working utilities, a home free of bugs, rodents or animal feces, no exposed wiring, no broken windows, weapons and medications properly stored, fences to prevent child access to pool or other drowning hazard.
- ✓ Appropriate sleeping arrangements with own crib or bed and clean bedding. Presence of adequate food in the home.
- ✓ You need to look for and think about how the home is safe for the child beyond the physical home environment
- ✓ Interactions between the caretakers and the children and the caregiver and any other adults in the home. How do people talk to one another? How much attention does the parent(s) give the child and is it generally positive, loving and nurturing or annoyed, angry or indifferent?
- ✓ Presence or absence of age appropriate toys

Child Maltreatment Training

- *Examination of the Victim Child*
  - All victims of physical abuse should be thoroughly examined for evidence of abuse (bruises, bites, burns, welts, etc.)
  - Victims of neglect should be thoroughly examined if the investigation indicates reasons to suspect physical abuse; or if there are observable signs of neglect (malnutrition, untreated accidental injuries, infestations, bug bites).
  - A parent/caretaker or another adult witness must be present when child is examined.
  - If there is reason for an examination of the genital area of any child or breasts of female children over age 6, examination must be done by a medical professional.

Child Maltreatment Training

- *Medical Examination*
  - When there is a report of sexual abuse all alleged victims will be sent for a medical examination.
  - A medical examination may be needed to confirm or rule out abuse/neglect and/or to prevent removal in any case where there is suspicion of abuse.
  - If the parent/caretaker is unwilling to pay for the examination, Medicaid or other DFCS resources are utilized.
  - If the parent refuses to cooperate seek a court order to take the child for a medical examination.

Child Maltreatment Training

- *Photographs of the Victim Child*
  - The worker may take photographs of child or child's residence to document any physical evidence of abuse/neglect.
  - A parent, another DFCS Worker, or another professional must always be present as a second party when photographs are taken of a child.
  - Identifying information and date photograph was taken, time, and location should be written on back of photograph or attached to it.
  - Each photograph shall have a visible body landmark to identify the child, location, and extent of injury.

**Slides Twenty – One to Twenty - Three**

**Estimated Time: 5 Minutes**
**Lecture and Large Group Discussion:**

- ✓ Review the slides and stress that the recent revision to policy has made the use of medical examinations more explicit.
- ✓ You should request that the parent or caregiver or the child his or herself if old enough remove the child's clothing when observing physical evidence.

- ✓ **Trainer's Note:** Expect some disagreement about when a medical examination is required and who is responsible to pay for a medical exam.



Child Maltreatment Training
Determination – Findings
Report findings are:
Substantiated
Unsubstantiated
Determination is made based upon:
Substantiation criteria
Safety Assessment/Safety Plan
Risk Assessment
Information gathered including medical & psychological
Direct observation
Worker has 25 days to complete the investigation

**Slide Twenty- Four**

**Estimated Time: 2 Minutes**
**Lecture**

- ✓ Review the slide and point out that the recent revision to policy has changed the findings to substantiated and unsubstantiated as evidence or no evidence was too much like law enforcement which is not the role of the agency, nor is it family friendly.
- ✓ More time will be spent later in the training on the substantiation criteria.
- ✓ Likewise significant time will be spent on safety assessment and safety planning and the revised risk assessment.
- ✓ The time frame for completing an investigation, 25 days has not changed.

Child Maltreatment Training
Supervisory Consultation
The supervisor:
receives an intake and screening from MCI and assigns a worker;
must be consulted if face to face contact is not possible;
must review and sign the safety assessment and safety plan;
has 5 days to review the investigation for accuracy, completeness, and determination;
will submit the completed investigation with the Youth Court Tracking form to the Youth Court for recommendations.

**Slide Twenty - Five**
**Estimated Time: 2 Minutes**
**Lecture**

- ✓ Review slide and point out the various responsibilities of the supervisor specific to the investigation. It is likely that at each point where supervisory consultation is required there is a conversation about how

the worker will proceed. For example at investigation assignment, there is likely some time spent together to plan how to proceed with the investigation, who to interview first.

Child Maltreatment Training

- *The Safety and Risk Assessments are the first steps of the Comprehensive Family Assessment Process and are completed within the investigation.*

**Slide Twenty - Six**

**Estimated Time: 2 Minutes**
**Lecture**

✓ Review slide and explain that safety and risk assessment are a process you engage in throughout the life of the case but also there are instruments entitled safety assessment and risk assessment that are completed at specific times in the life of the case. Safety assessments are completed during an investigation within the first 7 days and risk assessments are completed at the conclusion of the investigation. The SARA also continues to assess risk throughout the life of the case. There is a CFA that will replace the SARA as each region adopts the practice model which has sections that address risk and safety throughout the life of the case.

Child Maltreatment Training

- *Key definitions in the understanding of safety and risk*
  - A child is safe when there are no immediate threats of serious harm due to the caretakers actions or inactions or the protective capacities of the family are able to mitigate these threats.
  - A child is unsafe when the caregiver's actions or inactions present immediate threats of serous harm to a vulnerable child and the family's protective capacities are diminished.
  - A child is at risk when there is a likelihood that maltreatment will occur in the future.

Child Maltreatment Training

- *The Safety Assessment is ..*
  - A decision making process conducted in response to a child maltreatment report which evaluates safety threats, immediate danger, child vulnerability and protective capacities to determine the safety response. A child is determined safe or unsafe.
- *The Risk Assessment is ...*
  - An information gathering process on behaviors and circumstances within the family that contribute to the likelihood that a child will be maltreated in the future. Risk is typically classified on a high to low continuum.

Child Maltreatment Training

- *The Safety Plan is a specific and concrete strategy for controlling immediate threats of serious harm or supplementing protective capacities designed to control a safety threat.*

**Slides Twenty – Seven to Twenty - Nine**

**Estimated Time: 5 Minutes**
**Lecture**

- ✓ Review the slides and attribute the definitions to A Framework for Safety in Child Welfare published in 2009 by the National Association of Public Child Welfare Administrators.
- ✓ Providing for child safety is the core mission of public child welfare agencies. Children are entitled to live in a safe and permanent home with their own families whenever possible. Families of origin have the right and the responsibility to raise their children.
- ✓ Remember that the initial risk and safety assessments are the beginning of a comprehensive family assessment. The quality and accuracy of the information gathered initially through the safety and risk assessment process will determine if you open a case and will shape the focus of services in any cases that are or will be opened for services.
- ✓ Since the Safety Plan is so critical to keeping children safe and preventing placement, a more comprehensive safety plan will be introduced through this training.



**Slide Thirty**

**Estimated Time: 5 Minutes**
**Lecture:**

- ✓ Review slide and explain that the two terms are often erroneously used interchangeably.
- ✓ Risk is commonly assessed on a continuum from low to high and refers to the probability that any form of child maltreatment, regardless of severity, may occur or recur in the future.
- ✓ Both safety and risk are concerned with future maltreatment; however, safety is distinguished from risk as it concerns the immediacy of the future maltreatment. Risk refers only to the likelihood that the maltreatment may occur in the future. In addition, safety is dichotomous (a child is either safe or unsafe); while risk is typically classified on a high-low continuum.
- ✓ Here is an example of a risk factor but not a safety concern mother is schizophrenic and went off of her medication. One day she pulled a knife on her daughter and threatened her while they were in the car. The 16 year old was so frightened she jumped out of the car and sustained bruises. Since that incident 3 months ago she resumed taking her medication and there have been no subsequent incidents. In this example there is no immediacy that this will happen again. There is still concern that the mother could discontinue taking medication resulting in more erratic and violent behavior based upon her history, but the concern is not immediate.
- ✓ Here is an example of a safety concern. The 8 year old female child reports she has been sexually abuse by her mother's live-in boyfriend. The medical exam reports that there is evidence of sexual abuse and the child has a sexually transmitted disease. The mother does not believe that her boyfriend has sexually abused her daughter and thinks

she is lying. In this case there is evidence that harm has occurred and the alleged perpetrator has access to the child.

## Slides Thirty – One & Thirty - Two

**Estimated Time: 5 Minutes**
**Lecture and Large Group Discussion:**

✓ Review slide Thirty - One. Ask participants for examples of protective factors. Answers might include:
  - Presence of a supportive extended family who is willing and able to help
  - Parents/caregivers have shown the ability to accept responsibility for their actions and a willingness to change.
  - Parents/caregivers want to do a good job.
  - Parents/caregivers gets the child to school on time, to medical appointments, provides appropriate supervision.
  - Physical and emotional health of the caregiver
  - Parental past experience with protecting the child
  - Ability to control anger
  - Exhibited problem solving techniques in other facets of their life
  - Non – maltreating parent or other adult in the home willing and able to protect the child
  - Appropriate communication between adults who share responsibility for the child
  - Parent/caregiver able to meet their own emotional needs
  - Parent/caregiver and child have a strong bond

- Parent/caregiver is able to express love, empathy and sensitivity toward the child
- Parent/caregiver is aligned with the child
- Parent/caregiver is able to articulate a plan to protect the child

✓ Move on to Slide Thirty – Two.

✓ The assessment of protective factors is not just the listing of positive qualities and resources; rather protective factors must be relevant and dynamically involved in offsetting the risks related to abuse/neglect. Often times the protective factors have to be deliberately mobilized to play a relevant role within the service plan.

Child Maltreatment Training

- *Why it is important to Engage with the Family during the Investigation*
  - The feeling of being misunderstood or shut down by those who don't appreciate their values.
  - The caregiver's need to feel understood on the basis of his or her values, assumptions and beliefs is central to the worker's ability to engage the caregiver.
  - When what is important to us is disrespected because of the other person's misconceptions or inability to be open to difference, engagement stops.

**Slide Thirty – Three**

**Estimated Time: 2 Minutes**
**Lecture:**

✓ The role conflict for workers is often manifested in investigations. In the role of social worker the use of self to engage families is essential, which must be balanced with the requirements of conducting a timely investigation and assuring the child's safety.

✓ Ask what they think is meant by **Role Power vs. Personal Power**. Role power is the fact that you work for DFCS and can remove their child if they don't cooperate; it is the power you have because of your position. Personal power is using the social work skills you have to exhibit to the family the core conditions of helping. When you use your role power the family may comply but often does not bring about effective, lasting change; personal power may get things done better. Only use role power when the family chooses not to cooperate and after attempts at engaging the family.

✓ Ask for examples of ways they have exhibited either form of power in their work.



## Slides Thirty – Four & Thirty – Five

**Estimated Time:   2 Minutes**
**Lecture:**
✓ Review the slides.
✓ Talk about what happens if parents do not give you permission to talk with them or their children.  You may need to ask for the assistance of the court if parents will not allow you to speak with the child and you have no other way of assessing safety.
✓ In some cases you will talk with the child at the school without permission from the parents.



**Slide Thirty – Six**

**Estimated Time: 15 Minutes**
**Materials Needed:** Handout # 3, Report of ANE for Dayton family Case Study, **Flip Chart Paper and Markers for each group.**

**Interviewing Activity Instructions:**

1. Break participants into groups of about 5 participants.
2. Hand out the report from the case study, Handout # 3.
3. Instruct them to determine who will need to be interviewed and the ideal order of interviews.
4. After 10 minutes ask each group to report back to the larger group who they want to interview and in what order.

**Trainer's Note:**
- The second part of this activity will take place after some information is provided on Interviewing.

Child Maltreatment Training

*Information Gathering:*

1. What is the extent of child maltreatment?
2. What are the circumstances surrounding the child maltreatment?
3. How do the children function on a daily basis?
4. How do the adults (primary caretakers) function on a daily basis?
5. What are the general parenting practices in this family?
6. What are the disciplinary practices in this family?

**Slide Thirty – Seven**

**Estimated Time: 20 Minutes**
**Lecture:**

- ✓ Review the first question on the slide.
- ✓ The extent of the maltreatment addresses the act or failure to act or pattern or behavior that results in death, physical, medical, sexual, emotional harm or mental injury or presents imminent threat of harm to a child.
- ✓ The harm is the effect of child abuse or neglect. The agency must address children at all levels of harm resulting from identified or alleged maltreatment. Harm is the consequence of enacting the threat. When a child is physically abused, it is the abuse or injury that is the harm.
- ✓ In this area you want to gather information about the kind and specific description of the maltreatment or the lack of evidence to support that maltreatment occurred.
- ✓ Severity of the maltreatment is considered here. Give an example of the extent of maltreatment when a child receives a bruise on his buttocks from a spanking is less severe than a child with bruised and swollen eye which resulted from a punch to the face.
- ✓ Review the second question on the slide.
- ✓ The manner in which the injury occurred is also gathered here. Was the injury accidental or intentionally inflicted with the intent of causing pain and suffering?
- ✓ Here you will record the parent(s) response to the report. Do they seem defensive and avoid discussing this with you or do they demonstrate concern for the child's condition, and a willingness to protect the child?

- ✓ Is this an isolated event or has something like this occurred before? Neglect is generally an ongoing condition rather than an isolated incident.
- ✓ Did alcohol, drugs, domestic violence, or untreated mental health issues influence or coexist with the maltreatment?
- ✓ Explore the use of instruments such as a belt, switch, stick, brush, or cord in allegations of physical abuse.
- ✓ Explore the use of sexually explicit pictures, magazines, movies, or sex toys in allegations of sexual abuse.
- ✓ Is the explanation of the maltreatment consistent with the injury? Are there any unexplained injuries?
- ✓ Review the next question on the slide regarding child functioning.
- ✓ This question is relevant to all children in the home not just the victim child. This may require some contacts with collaterals to get a full picture of the child's functioning including contact with the school, day care provider, and medical and mental health professionals and immediate and extended family members.
- ✓ You want to explore the child's temperament, level of cognitive, physical, emotional and social development, behavior patterns, social relations and attachment and bonding to caregivers.
- ✓ Review the next question on the slide regarding adult functioning.
- ✓ Here you will be gathering information about the behavioral, emotional, physical, social and cognitive functioning of the adults in the home.
- ✓ Observe the adult's communication patterns and social skills. Do the adults communicate by yelling and berating one another or do they appear to demonstrate respect and affection?
- ✓ Inquire about how the adults in the home cope and deal with stress. Do the parent(s) seem to exhibit self control, good judgment, and independence?
- ✓ Are there any health issues that limit parenting capacity? How do the parent(s) care for themselves?
- ✓ Refer to the next question on the slide regarding general parenting practices.
- ✓ At what age did the parent begin parenting? (Younger than age 20 is highly correlated with unrealistic expectations and negative perceptions of the child) For what reason did one become a parent? Intentionally or not? Inquire as the parent's level of satisfaction as a caregiver.
- ✓ Explore the parent(s) parenting knowledge and understanding of child development.

- ✓ Is there a history of maltreating or other mal adaptive parenting behaviors?
- ✓ Does the parent behave protectively toward the child and ensure appropriate supervision?
- ✓ Review the last question on this slide regarding discipline practices.
- ✓ Inquire of all children and adults in the home regarding discipline practices.
- ✓ Why does the parent use discipline? (to punish or to teach?)
- ✓ In what context does discipline occur? (At the time it happens or “wait until your father gets home”)
- ✓ Are there any cultural issues regarding discipline that should be explored?

**Slides Thirty - Eight & Thirty - Nine**

**Estimated Time: 10 Minutes**
**Lecture:**

- ✓ Review the slides. The first slide is about what you must do when interviewing the victim child and the next slide is about how you should conduct interview with the child.
- ✓ The worker will notify the parent/ guardian or custodian or caretaker before interviewing the child, unless notification would endanger the child or impede the investigation.
- ✓ All child(ren) should be interviewed privately with documentation addressing time and location.
- ✓ If parent is not notified prior to interviewing child(ren), the parent/caretaker should be notified immediately following the interview, unless this would endanger the child(ren).
- ✓ Child(ren) may be interviewed without the parent’s consent and not in the presence of parent when the parent might impede the investigation.

✓ If principal or other school official insist on being present, advise the school official that they may be subpoenaed to court to testify and have him/her sign a Confidentiality Statement. The Confidentiality Statement is filed in the case record.

Child Maltreatment Training

- *Interview with Other Children in the Home*
  - Determine if the other children in the home are also experiencing maltreatment
  - Other children in the home can provide additional information about the circumstances surrounding the maltreatment.
  - Other children in the home can provide information about the family's interactions.

**Slide Forty**

**Estimated Time: 5 Minutes**
**Lecture:**

✓ Review the slide.
✓ If it will not endanger the children ask the parent for permission to speak to the children. Ask them for help in arranging and coordinating these interviews.
✓ The purpose of this interview(s) is to determine what has been happening with the other children in the home. You may have some knowledge based upon your interview with the victim child.
✓ This will also provide you with this child's perspective on the functioning of the family.
✓ This may allow you to verify the information provided by the victim child and gather additional information that the victim child was not provide.



Child Maltreatment Training

- *Interview with Non-maltreating caregiver*
  - Be clear about the reason for DFCS involvement in the family.
  - Determine this caregiver's role in the maltreatment
  - Focus will be on the protective capacities of this caregiver.
  - Determine this caregiver's informal supports and/or resources.

**Slide Forty – One**

**Estimated Time: 5 Minutes**

**Trainer's Note:**

- ➢ Not all families will have two parents or caregivers.
- ➢ Anticipate that there may be hostility which you should not take personally.

**Lecture and Large Group Discussion:**

- ✓ Review the slide.
- ✓ If possible, interview this person alone and apart from the alleged perpetrator.
- ✓ One of the purposes of this interview is to determine if the allegedly non-maltreating parent can provide protection for the child(ren). Their feelings and behavior should be closely observed and documented.
- ✓ This parent is likely to be the first adult informed of the report and can provide insight as to how the family will react and what DFCS involvement will mean for the family. Explain the reason you are involved.
- ✓ Their reaction and your interactions with this person will provide insight as to what to expect from the alleged perpetrator. It will also provide insight regarding the level of openness this person has to agency involvement and help.
- ✓ It is very important to involve this person to work with you in making the home environment safe for the child(ren).

**Trainer's Note:**

- Do not frame this interaction as a choice between the child and the perpetrator or the non-maltreating parent is the "good guy" and the perpetrator is the "bad guy".
- If you are aware of prior agency involvement, ask about their experience with that intervention.
- If this parent is seeking help, do not promise anything that you or the agency is not able to follow through on.

Child Maltreatment Training

- *Interview with Alleged Perpetrator*
  - Be clear about the reason for DFCS involvement in the family.
  - Determine this person's role as a caregiver.
  - Convey information about the allegations in a non-accusatory manner.
  - Gather information to assess safety not to prove guilt.
  - Expect some resistance, possibly hostile.

**Slide Forty – Two**

**Estimated Time: 10 Minutes**
**Trainer's Note:**

- If the alleged perpetrator is not the child's biological parent, establish the nature of their relationship to the child.

**Lecture:**

- ✓ Review the slide.
- ✓ Interview the alleged perpetrator separately and privately and document the time and location.
- ✓ In circumstances where the alleged perpetrator has been charged or arrested for a child abuse crime, the social worker only needs to interview the alleged perpetrator if information is needed to determine the safety of the child(ren) or risk of harm. If the alleged perpetrator is not interviewed, the record should document the reasons. A copy of the interview with the perpetrator by law enforcement should be obtained for DHS records.

- ✓ If the parent/guardian or custodian or caretaker or alleged perpetrator has not been charged or arrested, and law enforcement, district attorney, or other appropriate official, requests the social worker not to interview the person; the social worker advises Area Social Worker Supervisor and the Youth Court Judge of jurisdiction of the request. The safety of the child must be determined.
- ✓ Anticipate that you may experience hostility or anger which you cannot take personally
- ✓ Do not, regardless of the allegations or what you have learned from prior interviews, appear aggressive or judgmental.
- ✓ Explain the reason for your involvement.
- ✓ It is not necessary for the perpetrator to admit what he or she has done or for you to find the perpetrator guilty.
- ✓ Explore the family situation from the perpetrator's perspective.
- ✓ Assess the alleged perpetrator's capacity to work with you to control for the child's safety.
- ✓ Tell the perpetrator what you have learned from other interviews as appropriate.
- ✓ Assess the alleged perpetrator's reaction to your involvement and his or her openness to involvement with DFCS.
- ✓ If you are aware of prior agency involvement, ask about their experience with that intervention.
- ✓ During the interview with the parent/caregiver the Client's Rights and Responsibilities and Grievance procedures must be provided and discussed. The parent/ caretaker needs to sign the form. A copy must be provided to the parent/caretaker and a copy must be filed in the case record.
- ✓ Information for the TANF form should be gathered. The TANF form will be completed by the worker and submitted to the Administration Unit prior to the end of the month that the report was received.



**Slide Forty – Three**

**Estimated Time:  30 Minutes**
**Lecture and Large Group Discussion:**
- ✓ Review the slide and provide examples of collaterals:
  - o Neighbors
  - o Extended family members
  - o Non custodial parents
  - o School
  - o Doctor
  - o Mental health providers
  - o Anyone the family suggests may be able to provide information that would aid the investigation
- ✓ Family information is confidential and private.  You may not disclose any information without the parent's written permission or court order, however information may be shared with law enforcement or the DA's office without the family's permission.  We may contact other people to assess the safety of your children.  We are not able to tell you the name of the reporter, what anyone said or provide you with a copy of the investigation.
- ✓ In every case where there is any indication or suggestion of either abuse or neglect and a child's physical condition is medically labeled as medically "serious" or "critical" or a child dies, the confidentiality provisions of this section shall not apply.
- ✓ In cases of abuse or neglect it is not necessary to get the parent's permission to obtain medical or school records.
- ✓ Ask participants what their practice is on contacting collaterals, such as if they contact collaterals in every case.
- ✓ Ask what collaterals they had identified to interview based upon the report in the Dayton case.

**Trainer's Note:**

✓ Resume the activity on Interviewing.

**Interviewing Activity Instructions:**

1. Now assign each group someone to interview and ask them to identify the questions/statement they would use to engage that person and record them on Flip chart paper.
2. After 10 minutes ask each group to report back to the larger group.

**Trainer's Note:**

✓ After you have concluded this activity, hand out the following

**Materials Needed:**

Handout # 4 Interviewing Children: Sample Questions
Handout # 5 Interviewing the Non-Maltreating Parent: Sample Questions
Handout # 6 Interviewing the alleged Perpetrator: Sample Questions

**Slide Forty – Four & Forty Five**

**Estimated Time: 5 Minutes**
**Materials Needed:**
Handout # 7 Safety Assessment
**Trainer's Note;**

- ✓ Hand out the revised safety assessment form and explain that while it has undergone minimal revisions the content of the 20 safety concerns has not changed, only the wording, to provide clearer instructions.

**Lecture:**

- ✓ Prior to reviewing slide 45 ask participants to define threshold.

**Trainer's Note:**

- ✓ Expect answers such as a point that can be measured, exceeding tolerance, crossing over the line.
- ✓ Review slide 45 and explain that when assessing child safety, we are looking at crossing a line from a risk factor to a point at which child safety is now imperiled or endangered.
- ✓ When assessing safety using the MS safety assessment instrument you are being asked to apply safety threshold to the 20 safety concerns it contains.
- ✓ The safety thresholds are the 5 questions we see on this slide. We will now look at each one.



## Slides Forty – Six & Forty - Seven

**Estimated Time: 2 Minutes**
**Lecture:**

✓ Review the slides.

Child Maltreatment Training

- *Serious Harm*
  - Serious physical injury
  - Significant pain and suffering
  - Sexual abuse
  - Extreme fear or terror
  - Extreme impairment or disability
  - Death
  - Substantial impairment or risk of substantial impairment to mental or physical health or development

## Slide Forty - Eight

**Estimated Time: 5 Minutes**
**Lecture:**

✓ Review the slide.

✓ Ask the participants to identify a physical injury that they consider to be serious.

✓ Point out that a child saying they are afraid of punishment does not necessarily constitute serious, but the example we used earlier of the

child jumping from a moving car out of fear that her mother would hurt her is a clear example of extreme fear.

- ✓ An injury which leads to impairment or the risk of impairment meets the threshold for serious. Harm does not have to have happened but the potential for harm that could lead to impairment will meet the serious threshold. For example, leaving a toddler sleeping unsupervised while going out for several hours is serious. While maybe nothing happened to this child and he or she just slept through the event, it does not mean that if the house caught fire the child would not be hurt or killed. Ask for an example that is less extreme but would constitute the potential for serious harm.

Child Maltreatment Training

- *Immediate*
  Serious harm could occur at any time within the present or near future
- *Observable and Specific*
  The behavior, emotion, attitude, perception, intent or situation clearly identifiable rather than based upon a "bad feeling".

**Slide Forty – Nine**

**Estimated Time: 5 Minutes**
**Lecture:**

- ✓ Review the slide and ask how immediate should be defined.
- ✓ Immediate means happening now or has already occurred and is likely to happen again without intervention.
- ✓ Immediate also refers to the near future. For example, the children are not alone now but the pattern of behavior of the parent is to leave the child unsupervised, it is likely it will happen again.
- ✓ Ask for additional examples of immediate but not occurring now.
- ✓ When we talk about the threshold of observable and specific, we are referring to something you have seen such as the harm caused by maltreatment or behaviors, emotions, attitudes, perceptions or situations that lead you to reasonably believe that this threshold has been met or not.



Child Maltreatment Training
Out of control
No apparent natural, existing means with the family to assure control.

## Slide Fifty

**Estimated Time: 2 Minutes**
**Lecture:**

- ✓ Review the slide and point out that does not indicate that one's behavior is out of control but that the safety concern you have identified is beyond the control of any caregiver to manage.
- ✓ For example, in a situation of domestic violence, if one of the caregiver's is the victim, the capacity to control the situation is clearly out of that person's control.
- ✓ Another example is that a parent's drinking is out of control but the other parent can control the situation to avoid imminent danger to the child does not meet the out of control threshold.

Child Maltreatment Training
Other Considerations when Assessing Child Safety
Duration - How long has the condition been occurring?
Pervasive - How all encompassing is the condition?
Consistent - How routine is the condition?
Influence - Is there an issue associated with the condition such as substance use, mental health?
Continual - Without intervention is this condition likely to continue?

## Slide Fifty – One

**Estimated Time: 2 Minutes**
**Lecture:**

- ✓ Review the slide and comment that as you are assessing child safety you can verify that you have been accurate in your application of safety thresholds by thinking about the maltreatment in these ways.
- ✓ If an allegation of lack of supervision happened briefly, such as the parent was home from work late and the child was unsupervised briefly, and there is no need to believe it has happened previously or will happen again then the duration is not likely to be an issue and may not rise to the level of a safety concern.
- ✓ Think about if the situation which resulted in maltreatment or potential maltreatment is ongoing and routine or a one-time incident.
- ✓ Do the parent(s) regularly behave in ways that disregard the child's safety?
- ✓ Did the maltreatment occur due to the influence of alcohol or drug use?
- ✓ Is it likely that unchecked the behavior that resulted in maltreatment will continue?

Child Maltreatment Training

- *For each child in the family, the child welfare worker must be able to synthesize the information collected, identify any items that pose serious harm or an immediate threat of serious harm to the child, and describe them.*
- *The information must be sufficiently descriptive and clear to all involved parties.*

**Slide Fifty – Two**

**Estimated Time: 2 Minutes**
**Lecture:**

- ✓ Review the slide.
- ✓ It is here that documentation on both the safety assessment instrument and in your case notes is critical.
- ✓ While you have likely discussed these issues with you supervisor, it still needs to be documented thoroughly.
- ✓ Supervisors should not sign off on any safety assessment that does not clearly explain how the concerns are manifested in the family and meet the thresholds. While documentation may at times feel burdensome it is essential to justifying all the work that has been done and demonstrate the care taken to reach conclusions.
- ✓ Documentation is really important. All must be documented clearly, quickly, and thoroughly. On the next slide we will look at the kinds of things that should be included in your documentation.



Child Maltreatment Training

- *Safety Analysis*
  - As you look at the 20 safety concerns on the Safety Assessment Instrument, consider:
    - How are they manifested in the family?
    - How long has this condition posed a safety concern?
    - What is the frequency of the safety concern?
    - Are there times when the safety concern is more pronounced?
    - Does the safety concern interfere with caregiver's functioning?
    - Is there a non maltreating caregiver residing in the home?
    - Does the caregiver have sufficient protective capacities and a willingness to protect the children?
    - Does the caregiver have sufficient personal and family resources to fulfill protective and care giving responsibilities?

53

**Slide Fifty – Three**

**Estimated Time: 2 Minutes**
**Lecture:**

✓ Assessing for safety is an ongoing process that continues throughout the life of the case. The safety assessment is a tool that you must complete within 7 days of the receipt of a report of ANE.

✓ If a safety plan is not an option you need to take protective custody.



**Slide Fifty – Four**
**Materials Needed:**
Handout # 8, Case Information for Safety Assessment
**Estimated Time:  20 Minutes**

**Safety Assessment Activity**

1. Break participants into groups,
2. Hand out the case study information which was gathered from interviews, observations, etc.
3. Instruct them to complete a safety assessment for this case.
4. After 10 minutes ask each group to report back to the larger group by identifying one safety concern identified.
5. Continue by asking if any other group had identified an additional safety concern.
6. Continue until all applicable safety concerns have been identified.
7. As you ask each group to identify a safety concern, review each of the thresholds and ask how the safety concern identified meets the threshold.

Child Maltreatment Training
Safety Decision
When the safety assessment conclusion is unsafe; the worker and the family must decide if a safety plan can be put in place to prevent placement.

**Slide Fifty – Five**

**Estimated Time: 3 Minutes**
**Lecture:**

- ✓ Review the slide.
- ✓ Safety Planning is a part of the agency making reasonable efforts to maintaining children with family. Workers must be able to report to the court the following:
- ✓ Removal is in the best interest of the child; or continuation in the home would be contrary to the welfare of the child; AND
    - o Reasonable efforts were made to prevent removal;
    - o Due to an emergency situation, no reasonable efforts were made to prevent removal; or
    - o Reasonable efforts were determined not required by the court

Child Maltreatment Training

- *Safety Plan*
  - Safety Plans should be developed only when a decision of unsafe has been made by the worker with supervisory approval to prevent protective custody.
  - The safety actions within the plan must be directly related to the safety concerns identified in the safety assessment.
  - Safety Plans can be in home or out of home with an alternate caregiver (no DFCS custody.)

Child Maltreatment Training

- *Safety Plan*
  - Safety plan is a written agreement between a family and the agency that establishes how safety concerns will be controlled.
  - Safety Plans are signed by the caregiver and the Agency.
  - Safety plans will remain in effect as long as needed.
  - A case may not be closed if there is a Safety Plan in place.

Child Maltreatment Training

- *Safety Plan*
  - Controls identified safety concerns
  - Supplements protective capacities
  - Reduces Child Vulnerability
  - Available immediately
  - Produces an immediate effect
  - Does not take the place of a service plan
  - Is not based upon "caregiver promises"
  - Safety plans can be put in place during the investigation as well as at any point in the life of the case when a safety plan is needed.

## Slide Fifty – Six through Fifty - Eight

**Estimated Time: 10 Minutes**

**Lecture:**

- ✓ Review the slides.
- ✓ A safety plan is put into place to control and manage dangerous behaviors, situations, emotions, or perceptions that are rising to the level of safety concerns.
- ✓ Interventions are specifically employed to control the safety threat and protect a child until more permanent change can take place.
- ✓ Interventions should be the least intrusive and restrictive interventions necessary to protect a child.
- ✓ Interventions should be planned with input from the caregiver and relevant family members to the maximum extent possible.
- ✓ Interventions should be adjusted based on the time elements (for example, weekends and holidays may require different actions than daytime hours during the week, etc.).

- ✓ Interventions should incorporate child vulnerability and protective capacities of the caregiver(s) or other family members.
- ✓ Interventions should be amenable to modification when family circumstances related to child protection necessitate change.
- ✓ Interventions must be agreed upon by the parties responsible for child safety.
- ✓ Interventions must be able to be implemented immediately to control the present danger or imminent threat.
- ✓ Safety interventions are not expected to resolve or significantly diminish the underlying conditions or contributing factors that cause them, provide rehabilitation or address the conditions that must change to reduce the risk of future maltreatment. Safety interventions are actions to immediately control and mitigate safety concerns or threats of serious harm to keep the child safe until the family's own protective capacities are sufficient to provide necessary child protection Interventions are specifically employed to control the safety threat and protect a child until more permanent change can take place.



## Slide Fifty – Nine through Sixty - One

**Estimated Time: 10 Minutes**
**Lecture:**

- ✓ The monitoring of the safety plan always includes the worker. At every contact with the family you will *evaluate whether the plan is effective to ensure that the child is safe. Family feedback is essential in determining whether the safety plan is effective.* The primary purpose for managing a safety plan is to ensure that the plan is protecting a child and to modify the plan when a formal or informal safety assessment identifies new or changed circumstances that affect the safety of a child.
- ✓ If court proceedings have been initiated, the court may require specific periodic updates either through written court reports or through scheduled hearings. All activities should be documented in the case record. The activities that a child welfare worker should undertake while managing the safety plan include active monitoring of the safety plan on a regular basis when having casework contacts with the child, the

caregiver, other family members, service providers, foster care providers, and other parties with information about the child's safety and with all others that actually have a safety role in the plan.

- ✓ The overarching purpose of a safety plan is to keep children safe, regardless of whether one or more incidents that present serious danger have occurred. If a new situation of serious harm occurs or there is a new immediate threat of serious harm, implement any additional actions needed to protect the child and modify the safety plan to account for the new conditions. Any repeat maltreatment related to the identified safety threats currently being worked on while the plan is in place is an indication that the safety plan, as agreed upon, may not be sufficient.
- ✓ Conversely, there may be another type of maltreatment not associated with the identified safety threats. In this context, the repeat maltreatment may not constitute a failure of the safety plan. For example, the first report of maltreatment may be for the mother physically abusing the child and the repeat maltreatment may be for the father sexually abusing the same child.
- ✓ Continuous work on family engagement to ensure that all relevant family members are involved to the maximum level possible.
- ✓ Periodic evaluation of the need to alter the safety interventions, either reducing or increasing the intrusiveness and restrictiveness as indicated by a safety assessment or reassessment. Ensure that the nature of the safety threat(s) is addressed in the case plan. Ensure that the worker's supervisor is always aware of the status of the safety plan and agrees to any modifications.
- ✓ The caseworkers assigned to the case are aware of all aspects of the safety plan and any changes to the child, caregiver or family circumstances that require altering the safety plan.



**Slide Sixty – Two**

**Materials Needed:**
Handout # 9 Safety Plan
**Estimated Time: 30 Minutes**

**Safety Plan Activity**

1. **Break participants into groups,**
2. **Instruct the groups that completed the safety assessment to complete a safety plan for this case.**
3. **Have them determine the format they would use to create the safety plan (FTM, home visit, etc.)**
4. **After 15 minutes ask each group to report back to the larger group by identifying one safety action they would take to control an identified safety concern.**
5. **Continue by asking the other groups to identify additional safety actions.**
6. **Continue until all safety actions and services have been discussed.**
7. **Ask each group how the plan will be monitored**
8. **Ask each group who will monitor the plan. Be sure that the agency worker has a role in monitoring the plan.**

**Trainer's Note:**
Hand out the example of a completed Safety Plan for this case.
**Materials Needed:** Handout # 10, Dayton Safety Plan



Child Maltreatment Training
Introduction to Risk Assessment
Risk is the likelihood of future maltreatment.
Protection Policy has changed regarding the timeframe for the Risk Assessment. It is now due at the conclusion of the investigation.
During this assessment, the Worker should be assessing the well-being of the child and the risk factors for abuse and neglect.
Risk Assessments shall be entered into MACWIS within 25 days from assignment of an investigation

## Slide Sixty – Three

**Estimated Time: 2 Minutes**
**Lecture:**

✓ Review the slide and advise that the reason for the change in the time frame for completing the risk assessment is that you are being asked to determine the likelihood of future maltreatment. This will require additional information on the cause of the maltreatment.

Child Maltreatment Training
Underlying Conditions
The root cause(s) of safety concerns that are not readily observable
Examples are:
Family Needs
Perceptions
Beliefs
Values
Cultural Practices
Previous Life Experiences
Underlying conditions must be addressed to sustain change.
Child Maltreatment Training
Contributing factors
The individual or community social problems that contribute to child maltreatment
Examples include:
Substance abuse
Domestic violence
Mental illness
Unemployment
Inadequate housing
Crime
Poverty

## Slides Sixty – Four & Sixty – Five

**Estimated Time: 5 Minutes**
**Lecture:**

✓ Underlying conditions are usually described as the needs of the individual family members, their perceptions, beliefs, values, feelings, cultural practices and previous life experiences that influence the maltreatment dynamic within the family system. Contributing factors are social problems such as substance abuse, domestic violence, mental

illness, physical illness. They can also be community based such as poverty, crime, gang activity and inadequate housing.

- ✓ For example, a contributing factor to a case of over disciplining resulting in belt marks from a spanking could be a child bringing home an "F" on his report card; the underlying condition would be the father's problems with anger management.
- ✓ Ask the participants for examples of the underlying conditions and contributing factors from their cases.

Child Maltreatment Training

- *The level of risk identified through the risk assessment will inform the need for services required to enhance protective capacities and decrease the likelihood of maltreatment.*
- *When there is high risk it is important to continually assess for safety and the potential need for a safety plan.*

**Slide Sixty – Six**

**Estimated Time: 2 Minutes**
**Lecture:**

- ✓ The reason for the change in the time frame for completing the risk assessment is that you are being asked to determine the likelihood of future maltreatment. This will require additional information on the cause of the maltreatment.
- ✓ On the next two slides we are going to look at the changes to the risk Assessment tab in MACWIS.



## Slides Sixty – Seven & Sixty – Eight

**Estimated Time: 15 Minutes**
**Materials Needed:** Handout # 11 Assessing Protective Capacities
**Lecture:**

- ✓ Review the slides.
- ✓ As you can see there have been some changes to the Risk Assessment. For example in question # 4 you will need to document the parent(s):
    - communication and social skills;
    - How they cope with and manage stress
    - Their capacity to demonstrate self control and act rationally
    - Their capacity to use good judgment in solving problems and making decisions
    - Their capacity to act independently
    - Their capacity to manage finances
    - Their level of community involvement
    - Their capacity to act within cultural norms
- ✓ In question # 5, consider and document substance abuse history and use now
- ✓ In question # 6, document the child's capacity for attachment, general mood and temperament, communication and social skills, age appropriate friends, the child's expression of feelings, behavior at home, in school and in the community, and level of independence for age.
- ✓ For question # 8 consider and document previous maltreatment. This also asks you to identify and describe protective capacities.
- ➢ Hand out Assessing Protective Capacities and review briefly.
- ✓ For question # 9 consider and document the parent(s) level of satisfaction as a caregiver, knowledge and skill surrounding parenting and child development, empathy toward the child, parenting practices, history of parenting and protective behavior, and arrangements for effective supervision in his or her absence.



**Slide Sixty – Nine**

**Estimated Time: 30 Minutes**
**Materials Needed: Flip Chart Paper and Markers**

**Risk Assessment Activity Instructions**

1. Break participants into groups,
2. Instruct the groups to think about the information they will need to gather after the first 7 days when the safety assessment and safety plan were developed and prior to the 25th day when the risk assessment must be completed.
3. What information needs to be gathered to complete the risk assessment?
4. How will you gather this information?
5. Ask each group one or two of the questions on the risk assessment and inquire as to what information is needed and how they will gather that information.

Child Maltreatment Training

- *Criteria for substantiation of a report*
  - Medical and/or psychological information from a licensed physician, medical center or other treatment professional, that substantiates that child abuse occurred.
  - An admission by the perpetrator
  - The statement of a credible witness or witnesses to the abuse act.
  - The child victim's credible statement that the abuse occurred.
  - The absence of information in some areas does not necessarily mean that the case is unsubstantiated.

**Slide Seventy**

**Estimated Time: 3 Minutes**
**Lecture:**

✓ Review the slide.

✓ In the final analysis, the social worker will base conclusions on the totality of the evidence, not on "gut feelings" or "professional intuition." In some cases where medical evidence is strong, where there is photographic evidence or an admission by the perpetrator, or credible victim's statement, the worker will have supporting documentation. In other cases where the medical evidence is inconclusive and the perpetrator denies the abuse, the social worker will examine the constellation of all factors in reaching the decision. In these cases, something might be lacking from the child's statement, or the witnesses may be in conflict and may be biased. The investigative finding must reflect a careful weighing of all the facts.

✓ The usefulness of information depends on the validity of its source



Child Maltreatment Training

- *Documentation requirements*
  - The worker documents in MACWIS, the supporting information to confirm the findings of substantiated/unsubstantiated.
  - The Worker investigating the report is responsible for completing a finding on all investigations as well as completing a report about these findings.
  - The worker will print the Youth Court Tracking form and forward to his/her supervisor.

**Slide Seventy – One**

**Estimated Time: 1 Minute**
**Lecture:**
✓ Review the slide.

Child Maltreatment Training

- *Notifications*
  - All completed investigations of child abuse and neglect are forwarded to the Youth Court
  - The Worker notifies the mandated professionals that the report has been investigated and services rendered, if warranted.
  - Policy requires that the family is notified by mail of the findings of the completed investigation.
  - Best practice indicates that you should verbally explain the findings to the family, preferably in person.

**Slide Seventy – Two**

**Estimated Time: 1 Minute**
**Lecture:**
✓ Review the slide.
✓ Worker notifies the mandated professionals verbally or by letter that the report has been investigated and services rendered, if warranted. The worker also provides additional information regarding the investigation, without a court order, to the professional reporter if that reporter has a continuing professional relationship with the child and a need for such information, in order to protect or treat the child and to the Youth Court



## Slides Seventy – Three & Seventy - Four

**Estimated Time: 2 Minutes**
**Lecture:**
✓ Review the slides.

## Slide Seventy – Five

**Estimated Time: 3 Minutes**
**Lecture:**
✓ Review the slides.
✓ While the safety assessment form does not need to be completed beyond the investigation of a report of maltreatment, you are continually assessing safety and risk throughout the life of the case.
✓ Review safety and risk concerns, child vulnerability and parental protective capacities during visits with family members.
✓ Identify new or emerging safety and risk concerns
✓ At case reviews you will be evaluating the caretaker's progress in resolving safety and risk concerns.

- ✓ Safety and risk assessments are a part of the comprehensive family assessment.
- ✓ Identify the conditions required for a child to be safe at home to use in both evaluating risk and safety and to develop the goals of the ISP.
- ✓ Evaluate the effectiveness of the safety plan in protecting the child from harm or threats of immediate harm while being the least restrictive intervention.
- ✓ Determine if changes are needed to safety plan or ISP.

Child Maltreatment Training

- *Investigations in Open Cases*

  When in the course of your work with a family if a subsequent incident of maltreatment occurs it should be reported and a thorough investigation completed.

  Each report of maltreatment that is screen as level 2 or 3 will require an investigation, including the completion of the safety assessment and risk assessment instruments.

**Slide Seventy – Six**

**Estimated Time: 1 Minute**
**Lecture:**

- ✓ Review the slide.
- ✓ New investigations in open cases can indicate that the situation has changed or in progressing negatively and may indicate a change in the child's safety.
- ✓ If there is a safety plan in place consider if it is still effective or will need to be updated due to the new allegations.



Child Maltreatment Training

- *Case Closure*

  A case may be closed after the risk assessment if:
  - The child is safe
  - No safety plan is in place
  - The likelihood of future maltreatment is moderate or low

  A case can be closed after service provision if
  - Underlying conditions and contributing factors have been successfully addressed
  - Risk has been reduced.
  - Protective Capacities have been sufficiently enhanced to mitigate safety concerns

## Slide Seventy – Seven

**Estimated Time: 5 Minutes**
**Lecture:**

✓ Review the slide and mention that a case is closed after the provision of services all of the above apply as well as the resolution of underlying conditions and contributing factors.

Child Maltreatment Training
Assessing safety of children in an out of home setting
Behaviors or emotions of any adults in the home (anger, depression, bizarre behaviors, etc.?)
Substance abuse or dependency problem of adults in the home that affects his or her ability to meet the safety and basic needs of the child
Significant life changes in the past year
Structural or other physical conditions in the home that pose a safety hazard for children
Safety concerns posed by other children in the home, or does this child pose possible threats to other children there?
Quality of caregiver/child interaction and if it indicates that child perceives caregiver as safe and protective.
Child Maltreatment Training
Assessing well-being of children in an out of home setting
Understanding of the child's basic needs and developmental needs
Child's educational progress including school attending, grade level, attitude toward school and academic success
Contact between the child and his or her biological family; frequency, location & duration of contacts with parents, siblings and extended family
Is child is receiving the services he or she needs?
Child's comfort level with the caregiver(s) and others residing in the placement setting including the type of discipline used

## Slides Seventy – Eight & Seventy - Nine

**Estimated Time: 15 Minutes**
**Materials Needed:**

Handout #12, Assessing Safety in Out of Home Care
Handout # 13, Assessing the Safety of Children in Group Homes or Residential Facilities
Handout # 14, Guidelines for Visits by Social Workers for Children in Out of Home Care Settings
Handout # 15, Interview Guide for Visits by Social Workers for Out of Home Care settings

**Lecture:**

✓ Review the slide and direct participants to review handouts.

✓ The handouts were developed to provide guidance for workers as they make visits to children in their placement setting. Since you also have responsibility for investigating Resource Reports, there are many information gathering tips that are also relevant to these investigations as well.

✓ Ask if there are any questions on the handout.

**Trainer's Note:**

➢ Go over the handouts with the group, explaining what each one is and the expectations that they gather this information through their visits with children, especially if there have been previous maltreatment reports or corrective actions in this setting.

**Slides Eighty & Eighty - One**

**Estimated Time: 15 Minutes**

**Lecture:**

✓ Review the slides point out that the reports may be felony or non-felony reports but all reports involving a foster child as the victim of alleged maltreatment are screened as level 3 reports and require a full investigation.

✓ While corporal punishment does not necessarily constitute child maltreatment, Mississippi policy prohibits corporal punishment of foster children. It is at minimum a policy violation and may in fact constitute child maltreatment depending upon the severity of the punishment which causes harm to the child.

- ✓ Not all policy violations or violations of licensure standards aside from corporal punishment will necessarily be accepted as a report of abuse, neglect or exploitation.
- ✓ DFCS is also responsible for investigating policy violations and making corrective actions when needed. These investigations are not maltreatment investigations.
- ✓ With few exceptions, foster children are placed in resource settings which are licensed by DFCS or subject to the licensure standards of DFCS. All investigations of reports of ANE of a foster child also require a licensure investigation of the resource setting in which the child is placed. So we will have two investigations happening simultaneously; and investigation of a report of ANE and an investigation to determine whether or not the resource setting is in compliance with licensure standards. This training is about investigating reports of child maltreatment or ANE including those classified as Resource Reports. This training will not cover investigations on licensure standards.

**Trainer's Note:**

- ➢ Expect to hear from participants that all reports involving foster children are accepted as Resource Reports of ANE by MCI.
- ➢ The MACWIS system requires the screening in of all reports pertaining to children in foster care. Therefore, all reports on children in care must be accepted and investigated. Upon investigation, the worker may determine that the report/problem does not rise to the level of maltreatment, but the report must be investigated first in order to make that determination.

## Investigations of Maltreatment in Out of Home Settings

**Trainer's Note:**

- Slides Eighty – Two to Ninety – Five are only required for trainings for those designated to conduct investigations of Resource Reports.

**Estimated Time: 15 minutes**
**Lecture and Large Group Discussion:**

✓ One of the requirements of the settlement agreement was for a child safety assessment of DFCS practice for prioritizing, screening, assessing, and investigating reports of maltreatment of children to determine the extent to which DFCS investigations and decisions are based on a full and systematic evaluation of the factors that may place child at risk. This was completed last summer. These are some of the things that came out of that assessment, which led to the need for training in this specific area:

- In one group, we heard about children being maltreated in foster care and the parents not being made aware of it, but heard of it in a court hearing.
- Reviewers could determine that biological parents were notified of the reports in five of the 30 investigations. In 17, there was not enough information in the record to make a determination, and in the remaining cases, they either did not notify the parents (four) or it was not applicable (four).
- There were some concerns indicated about the thoroughness of the investigations and indications that who is assigned to conduct investigations of reports of maltreatment in foster care may vary by region, including resource workers, senior caseworkers, and staff from other areas.
- Concerns were also raised about the usefulness of SARA regarding maltreatment in foster care.
- Resource workers may not always be aware that reports have been received or the disposition of the reports. Policy is not followed in that respect. Resource Workers should be given the information and the opportunity to accompany the investigator to the resource home.
- Based upon case reviews of Investigations of Resource Reports, the investigations were initiated within policy

timeframes in only 8 of the 30 investigations. The investigations were concluded within policy timeframes in 13 of the 30 investigations (one case lacked documentation of the concluding date).
  - The investigator had face-to-face contact with the child on the same day of the report in only 10 of the 30 investigations. However, the investigators interviewed the children privately during the investigation in 23 of the 30 investigations.
  - A safety assessment of the child was conducted in all 30 investigations.
  - There was evidence of supervisory review in 24 of the 30 investigations.
  - Safety and risk issues were addressed for all children in the resource home (not just for the child who was the subject of the report) in 16 of the investigations, and not in 10 of the investigations. In the remaining 4 investigations it was either not applicable or there was not enough information to make a determination.
- ✓ This information is not being shared with you to be critical, it is important to know that the requirements around investigations of resource reports are complex, there are a lot of people involved and the need for clear communication is really important for this to be done in accordance with policy and to ensure that decisions in the best interest of the child are made.
- ✓ If you are receiving this training it is because someone, most likely your RD, has designated you are capable of completing an investigation of a Resource Report and working collaboratively with others.
- ✓ It is really important for you to get all of your questions answered.



Child Maltreatment Training

- *Investigating Reports in Out of Home Settings*
  - Reports on resource homes and licensed/contract facilities are entered in MACWIS as resource reports.
  - A referral is made immediately by the investigative worker to the law enforcement agency with jurisdiction where the abuse occurred and will notify the district attorney's office within 72 hours.
  - If the out-of-home setting is a licensed facility, an additional referral is made by the Agency to the licensing agency.

**Slide Eighty - Two**

**Estimated Time: 10 Minutes**
**Lecture:**

✓ Review the slide.

✓ This notification to law enforcement may also be a request for them to accompany the worker, if deemed necessary.

✓ Reports of maltreatment of children placed in Residential Treatment Facilities that are not licensed by DFCS or subject to DFCS licensure or oversight require that notification be made to the agency responsible for licensure of the facility that a report has been received and is being investigated by DFCS.

✓ If the resource setting is a resource home or resource facility licensed by a contract agency or under the control of a contract agency, such as a Therapeutic Resource Home consideration must be given to the relationship of DFCS to the contract organization so that the DFCS worker responsible for conducting the investigation is not influenced by the actions, relationship or position of the contract agency.

Child Maltreatment Training

- *Regional Director's Responsibilities*
  - *Immediately* notifies by phone and e-mail the county of service and county of responsibility Area Social Work Supervisor and resource ASWS of the allegations.
  - Assign to a worker outside the county who has been trained in doing out-of-home investigations/assessments and will notify their ASWS of the assignment.
  - Make a determination if the identified victim and other children should remain in the home until the investigation/assessment is completed.

Child Maltreatment Training

- *Regional Director's Responsibilities*
  - Notifies the Permanency/Placement Unit of the allegations and completes the Serious Incident Report and forwards it to the DFCS Division Director's Office.
  - Upon verbal report from the assigned worker, the RD in the county where the resource home is located, discusses corrective actions needed with the RASWS
  - After receipt of the written report the RD makes written recommendations and outlines emergency corrective actions to be taken.

## Slides Eighty – Three & Eighty – Four

## Estimated Time: 15 Minutes
## Lecture and Large Group Discussion:

- ✓ Review the slide.
- ✓ Inform the group that time is going to be spent looking at the responsibilities and requirements that various people have in conducting Investigations into Resource Reports.
- ✓ Ask the group how they define immediately.
- ✓ Resource Reports are sent to the RD in which the resource setting is located. His or her response and assignment may be dependent upon the type of resource setting in which the child is placed.
- ✓ If the resource is an agency Resource Home the RD will be assigning a worker to investigate as well as a Resource Worker to assist and assess licensure compliance.
- ✓ If the resource is a group home, emergency shelter, or other congregate care setting licensed by MDHS, the RD will assign someone to investigate the report and contacts the Licensure Unit to initiate a licensure investigation.
- ✓ If the resource is under the auspices of a private agency, the RD will assign a worker to investigate the report independent of the private agency.
- ✓ If the resource is a residential treatment facility, the RD will assign a worker to investigate the report and notify the licensing agency.
- ✓ Since the RD also has responsibility for notifying the state office and the division director's office, and making decisions about if the child should remain in the home and if corrective action is needed, the investigative worker is likely to be in close communication with the RD.



**Slide Eight - Five**

**Estimated Time: 10 Minutes**
**Lecture and Large Group Discussion:**

- ✓ Review the slide.
- ✓ The COR for a child in foster care, regardless of the location of the facility and regardless of which county has responsibility for conducting the investigation, must accept immediate and full responsibility for the safety, permanency and well-being of that child, including assessing the placement in terms of the incident reported and investigated.
- ✓ The placement of the child must be evaluated by the COR in terms of issues of safety, permanency and well-being regardless of the outcome of the investigation.
- ✓ As the investigative worker you should be able to expect the COR will do these things.

Child Maltreatment Training

- *Responsibilities of the county where incident occurred*
  - Interview alleged perpetrator
  - Interview alleged victim or any other children who may still be in the county where incident occurred.
  - Assist with coordination of services if needed.

**Slide Eighty – Six**

**Estimated Time: 5 Minutes**
**Lecture and Large Group Discussion:**

✓ Review the slide.
✓ This is also referred to as the County of Service.
✓ If the COS is going to participate in interviews, you as the investigative worker want to coordinate those interviews with them.



## Slides Eighty – Seven through Eighty - Nine

**Estimated Time: 20 Minutes**
**Lecture and Large Group Discussion:**

- ✓ Review the slide.
- ✓ The time frame for interviewing the child is very tight and an area that was identified as needing improvement.
- ✓ The standard investigative/assessment protocol applies to all CPS investigations but there are additional requirements that apply to special handling CPS investigations/ assessments.
- ✓ Issues of objectivity and impartiality are important in these investigations.
- ✓ If you find evidence of maltreatment and allow the children to remain in the home a corrective action plan must be developed and you are likely to be asked to provide recommendations.
- ✓ Talk about the best order of these interviews and determine if you will be asking for help from the COS.
- ✓ Ask participants of the various responsibilities outlined here, what do they see as the biggest challenge?



**Slide Ninety**

**Estimated Time: 5 Minutes**
**Lecture:**

✓ Review the slide.
✓ An e-mail from the Director of the Permanency/Placement Unit will be sent to the Resource ASWS within 10 days to relay approval of final report and decision regarding continued/future use of the foster or adoptive home. If the report is not approved, i.e., additional information is needed, etc., that will be conveyed to the Regional Director where the home is located.
✓ A copy of the final report with recommendations and corrective action plan shall be forwarded to the Youth Court Judge with jurisdiction over the child, the Guardian Ad Litem, and to the court monitor.
✓ A copy of the final report, recommendation and/or corrective actions made by the investigative worker or resource worker shall be filed in the case record of the foster child, the file of the foster/adoptive parents and in the Resource Unit in State Office.



Child Maltreatment Training
Responsibilities of the Child's Assigned Worker
Any foster child who remains in the same out-of-home placement following an investigation/ assessment into a report that he or she was maltreated, or subject to corporal punishment in that placement shall be visited twice a month in the placement setting face to face for three months after the conclusion of the investigation to assure the child's continued safety and well-being.
Notify the child's parents of the findings of the investigation.

**Slide Ninety - One**

**Estimated Time: 5 Minutes**
**Lecture and Large Group Discussion:**

- ✓ Review the slide.
- ✓ This first bullet is a requirement of the settlement agreement.
- ✓ Refer back to the handouts on assessing child safety in out of home placement. Those handouts are applicable to these required visits by the child's worker twice a month for three months.
- ✓ The COR caseworker for the child must take the lead role based on the findings from the investigation; in assuring that the best interests of the child are served, including the decision regarding continuation of placement in the resource setting in which the maltreatment or license standard violation occurred.
- ✓ The family of origin, usually the child's parents, must be kept informed of what is going on with the child during the time the child is in placement, including being informed of what is occurring in terms of any issues or incidents of maltreatment while in state custody.
- ✓ This notification to the parents must be documented in the child/ren's case record and the investigation/assessment report.



Child Maltreatment Training

- *Resource Report Risk Assessment*
  - This is different from the new Risk Assessment that was introduced earlier in the training that is completed in other investigations and will be required in Resource Report investigations.
  - The worker assigned to the investigation will complete the Resource Risk Assessment in MACWIS within 25 days of investigation assignment.
  - The worker assigned to the investigation will share it with the Resource Worker and with the child's assigned worker.

Child Maltreatment Training

- *Resource Report Risk Assessment*
  1. In what type of placement was the maltreatment alleged to have occurred (foster care or adoptive)? If foster care then what type of setting (foster home, group home, residential treatment, therapeutic foster home, relative placement, etc)?
  2. Who is the alleged perpetrator? What is their relationship with the victim?
  3. Describe the nature, frequency, and duration of maltreatment.
  4. What is the permanent plan for the child(ren)? How does the child(ren) perceive the placement where the alleged maltreatment occurred?

Child Maltreatment Training

5. Does the Resource have a history of maltreatment with the agency? If so, were any of the allegations substantiated?
6. Is there a violation of agency policy or licensure standards?
7. Would the child be in any danger if left in this placement ? (yes or No) If the child is in danger in the placement the agency will address the danger with
   - i. Removal
   - ii. Safety Plan only (Child not removed)
   - iii. N/A

## Slides Ninety – Two through Ninety - Four

**Estimated Time: 10 Minutes**
**Materials Needed:** Handout # 16 Resource Risk Assessment
**Lecture and Large Group Discussion:**

- ✓ Review the slide and explain the next two slides show the contents of the Resource Risk tab in MACWIS.
- ✓ As mentioned earlier people did not think SARA made sense for Investigations of Resource Reports, so a work group of people led by Carolyn Gremillion made changes to the Risk tab specifically for these specialized investigations.
- ✓ As the Investigative worker you will have responsibility for completing this.
- ✓ Ask the group their reaction to this change.

**Trainer's Note:**

- ➢ Hand out the Resource Risk Assessment



**Slide Ninety – Five**

**Estimated Time: 50 Minutes**
**Materials Needed:** Handout # 17 Resource Report
Flip chart paper and markers for each group

Activity Instructions

1.Break participants into groups,
2. Distribute Handout # 17 Resource Report
3. Instruct them to plan the investigation for this Resource Report
4. Ask each group to identify the various activities that need to be done within this investigation and who is responsible.
5. Record on the paper provided.
6. Make sure to identify who will be interviewed and in what order.
7. What collaterals will be contacted?

**Trainer's Note:**

- After each group has had an opportunity to plan their investigation, determine the activities required and the order of interviews and who will do the various tasks, ask them to report back to the larger group.
- Remind them or anything that was not identified.
- Ask if they have any concerns about the level of communication that will need to exist.
- What do they see as the biggest challenges
- Are there any factors that make this different if it was not a resource home?

- How does the fact that it is a resource home change the way you look at it?
- What is the most important thing to you as the investigative worker?
- What do you think is most important to the victim child's worker?
- What is the more important consideration for the worker of the other children in the resource home?
- What is the most important consideration for the Resource worker?
- What is in the best interest of Charlie?
- What is in the best interest of Marcus?
- What is in the best interest of Norma?

## Child Maltreatment Training

- *Summary of Caseworker's Roles and Responsibilities:*
  - Gather information during investigation, as part of the case planning process, during the monitoring of service delivery for both home and placement cases, during reassessments, at reunification and at case closing. Information gathering will include:
    - Family history of abuse or neglect in the present family composition or others;
    - Prior service episodes and the effectiveness of previous service interventions;
    - Attitudes of family members regarding the helpfulness of services; and
    - Their feelings about the need for change.

## Child Maltreatment Training

- *Summary of Caseworker's Roles and Responsibilities:*
  - Making timely face to face contacts with all children in the home, the caregiver and the perpetrator during the investigation, and for visiting in accordance with policy time frames to continually assess the safety and risk and documenting these contacts.
  - Initial and ongoing safety and risk assessments based upon information gathered, including child vulnerability and caregiver protective capacities, to guide decision making regarding the need for immediate placement or another less intrusive safety plan.

## Child Maltreatment Training

- *Summary of Caseworker's Roles and Responsibilities:*
  - Development of safety plans with the family to mitigate safety factors so that children can remain in the home while service plans are developed and implemented.
  - Developing service plans with the family based upon the information gathered to support the safety and risk decisions and to identify the areas of greatest need impacting safety and risk of children and the available strengths to be used in identifying the objectives of the service plan, the action steps to achieve these goals and the services need to influence the changes needed to achieve the service plan objectives.

## Child Maltreatment Training

- *Summary of Caseworker's Roles and Responsibilities:*
  - Monitoring and managing safety plans that mitigate safety threats.
  - Making regular and frequent visits to foster homes and other placement settings to ensure that the children are safe in those placements and that their physical, emotional, social and educational needs are being met.
  - Ensure that resource families are acting in support of the permanency planning goals and objectives of the service plan.
  - Reporting any information that constitutes alleged maltreatment of children in foster care and for responding to such reports with the same timely and diligence as with reports of alleged maltreatment of children in their own homes.

## Child Maltreatment Training

- *Summary of Caseworker's Roles and Responsibilities:*
  - Facilitate FTMs with the family, the resource parents and service providers to develop safety and service plans. This would allow service providers to engage in the monitoring and management of safety plans as well as provide a broad range of services to the family to meet complex service needs in a cohesive manner.
  - Documenting work timely and thoroughly in MACWIS in order to promote accurate reports of performance indicators and complete file information.

# Slides Ninety - Six through One Hundred

## Estimated Time: 10 Minutes
## Lecture and Large Group Discussion

- ✓ As part of the practice model and the statewide delivery of training on investigating maltreatment, safety planning and safety plan monitoring, we identified different tasks/activities which we felt were critical to the caseworker's role.
- ✓ Review the items listed on these slides.
- ✓ Ask for any thoughts or comments from the group. Ask if they see any key responsibilities missing.

**Trainer's Notes:**

- ➢ Distribute Handout # 18- The Practice Guide for Assuring Safety and Managing Risk.

## Slide One Hundred and One

Child Maltreatment Training
Wrap Up
Questions/Concerns
Next Steps

**Estimated Time: 15 Minutes**
**Lecture and Large Group Discussion**:

- ✓ Go back to the Flip Chart where you recorded the participants expectations and see if they were all addressed or if not, if they will be covered in a different module.
- ✓ Ask if they have any questions or concerns.
- ✓ Let them know what the next module is and when and where it will be trained.
- ✓ Ask participants to complete the Evaluation Form

## Handouts

| | |
|---|---|
| Handout # 1 | Investigation Flowchart |
| Handout # 2 | NOTICE OF PARENT/GUARDIAN'S RIGHTS |
| Handout # 3 | Report of ANE for Dayton Case Study |
| Handout # 4 | Interviewing Children: Sample Questions |
| Handout # 5 | Interviewing the Non-Maltreating Parent: Sample Questions |
| Handout # 6 | Interviewing the alleged Perpetrator: Sample Questions |
| Handout # 7 | Safety Assessment |
| Handout # 8 | Case Information for Safety Assessment |
| Handout # 9 | Safety Plan |
| Handout #10 | Dayton Safety Plan |
| Handout # 11 | Assessing Protective Capacities |
| Handout #12 | Assessing Safety in Out of Home Care |
| Handout # 13 | Assessing the Safety of Children in Group Homes or Residential Facilities |
| Handout # 14 | Guidelines for Visits by Social Workers for Children in Out-of-Home Care Settings |
| Handout # 15 | Interview Guide for Visits by Social Workers for Out-of-Home Care Settings |
| Handout # 16 | Risk Assessment |
| Handout # 17 | Resource Report |
| Handout # 18 | The Practice Guide for Assuring Safety and Managing Risk. |

Investigation Flowchart
Handout # 1

ANE Report received
MACWIS Intake Report
What level is the report?
Level Two
Initiate within 72 hours
Level Three
Initiate within 24 hours
Notify Law Enforcement and Youth Court
Initiate Investigation
Contact Reporter
Background & Records Check
Conduct Interviews
Is there present danger?
Yes
Are there safety actions that will allow the child to remain in the home?
Yes
Develop safety plan with the family
No
Contact the Youth court to request protective custody order
Open case for services
No
Continue Investigation and complete risk assessment
Ongoing safety and risk assessment
Is there evidence of maltreatment?
Yes
Is there substantial risk of future maltreatment?
Yes
Open case for Services
No
No
Complete Investigation

**Handout # 2**

## NOTICE OF PARENT/GUARDIAN'S RIGHTS – INVESTIGATION

You have rights and responsibilities while you are involved with the Division of Family and Children's Services (DFCS) during an open investigation. The normal hours of operation for the DFCS are 8:00 a.m. until 5:00 p.m. Monday through Friday, excluding state holidays. In case of emergencies, contact may be made after hours, weekends, and/or on state holidays.

### YOU HAVE THE RIGHT TO:

1. Know what has been reported to the agency about your family.
2. Be informed that a worker has spoken to your child.
3. Help from your worker in correcting any problems discovered during the investigation.
4. Have office phone numbers and office addresses for your worker and your worker's supervisor.
5. Participate in any court hearings which may result from the investigation.
6. Know the outcome of the investigation.
7. Have your Native American (Indian) ancestry recognized and respected. We will tell the Bureau of Indian Affairs about our involvement with your family and follow the tribe's decisions for handling your investigation.
8. Be treated with dignity and respect and receive services without regard to age, race, color, creed, religion, national origin, sex, disability, or political affiliation.

_______ / _______ ____________

**Client(s) initials** **Worker initials**

### YOU HAVE THE RESPONSIBILTY TO:

1. Provide full names, dates of birth, social security numbers for household members and other necessary information requested by your worker.
2. Cooperate with your worker and participate in service decisions.
3. Ask for and be a part of all Family Team Meetings.
4. Give to your worker the names, phone numbers, and addresses of your relatives who may be able to care for your child if necessary.

5. Give your worker all requested medical and educational information about your child.
6. Pay the cost or part of the cost of some elements of the investigation (such as paying for a drug screen or a medical exam) **if requested.**

_______ / _______ ___________

**Client(s) initials** **Worker initials**

**CONFIDENTIALITY:**

Your family's information is confidential and private. We will not disclose any information without your written permission or by order of the court. However, information may be shared with law enforcement or the Office of the District Attorney without your written permission. We may contact other people to assess the safety of your child.

Confidentiality laws additionally limit the information we can share with you. We are not able to name the reporter in any investigation, tell you what anyone else said, or give you a copy of any investigation.

_______ / _______ ___________

**Client(s) initials** **Worker initials**

*The court of your county has the authority to modify any of the statements*

**Client(s) :** ____________________ / ____________________ **Date:** ____________________

**Worker:** ____________________________________________ **Date:** ____________________

Handout # 3      Report of ANE for Dayton Case Study
(Attached Separately)

# Interviewing Children Handout # 4

## Sample Questions

### Family

Who is in your family? (Family Functioning).

Who lives at home with you? (Family Functioning)

What kinds of things does your family do together? (Family Functioning)

How do you get along with your brothers/sisters? What kinds of things do you do with them? (Family Functioning)

Tell me about your grandparents, aunts, uncles, etc. (Support)

What kinds of things do you do in school? Any areas where you have problems? Are there times when things are easy? (Child Functioning)

Who do you hang out with at school? Who are your friends? (Child Functioning)

Do you belong to any clubs, or participate in any organized activities? (Child Functioning)

### Parent

How do you get along with your mom/dad? (Adult Functioning/ Parenting)

What happens when things aren't going well? How do your parents react? (Adult Functioning) What kind of things do they do? (Parenting)

What about your brothers/sisters, how do they deal with them? (Adult Functioning/ Parenting)

Do your parents belong to any organizations, have any friends etc.? (Support)

**Maltreatment**

As I mentioned to you earlier, I understand you have _____________(injury, situation) I need you to tell me about it, or can you tell me about what happened? Or, I understand ___________happened to you. Can you tell me about it? (Maltreatment)

What else happened? (Maltreatment) You will often ask this type of question to fully explore with the child the extent of the maltreatment.

Has anything like this happened to your other brothers/sisters? (Maltreatment)

What did your parent(s) say, do, etc? (Nature of Maltreatment)

When this occurred, how did it happen? What was happening around the home when this occurred? What else was occurring?

# Interviewing the Non-Maltreating Parent Handout # 5
## Sample Questions

### Child

a. Tell me about your child. How do you feel about your child? What do you think about your child? His/her capacity? His/her actions/behaviors? (Parenting)

b. How does your child behave/act? (Child Functioning)

c. Does your child have friends? (Child Functioning)

d. Can you think of ways in which you can keep the child and the maltreating parent from being alone with each other? (Child Functioning)

e. Does the child have any current or past health-related problems that affect him today? (Child Functioning)

### Parent

a. Tell me about yourself—about your feelings, and about what is happening. How do you think things have been between you and your spouse (partner)? Explore with the non-maltreating parent the feelings that the worker believes are being exhibited and follow up on those. (Adult Functioning, History, Family Functioning)

b. What is the most special thing about parenting your child? The most difficult thing? (Parenting)

c. Explore with non-maltreating parent how he believes his child is doing, what he is experiencing. Examine issues relating to bonding, attachment, concern, empathy, worry, anxiety, etc. (Adult Functioning, Parenting)

d. Tell me about the family that you grew up in. What types of things did you do? What are some of your fond memories? Your sad or hurtful memories? (History)

e. What do you do with your friends? Who are your friends? What do you share with your friends? (Support)

f. Do you belong to any groups, organizations, religious affiliations, etc.? (Support)

**Family**

a. What types of things are you responsible for in the home and with the family: chores, routine, structure, meals, etc.? (Family Functioning, Parenting)

b. How do the family members show they care about each other? What affection is demonstrated? (Family Functioning)

c. Who makes decisions for the family? Who is in charge? (Family Functioning)

d. What happens when the directives given are not followed? (Family Functioning)

e. Talk about the marriage (relationship). What are the things that make it good? Things you wish you could change? Communication difficulties? (Family Functioning)

f. Tell me about your folks. What about extended family members? What about neighbors, are they helpful to you and you to them? (Support)

g. Influences regarding the demographics, extended family, and family functioning are gathered through a variety of observations during the initial interview and subsequent interviews.

**Maltreatment**

a. What are the parent's thoughts, feelings, attitudes, and beliefs about the maltreatment? (Nature)

b. Do you have any information which suggests the non-maltreating parent has been involved in maltreatment? If yes, explore this with the parent in a direct, yet non-adversarial manner. (Maltreatment)

c.  Explore with the non-maltreating parent the alternatives to provide protection to the family. Can this person, with your assistance, do such? (Nature)

# Interviewing the Perpetrator Handout # 6
## Sample Questions

**Child**

a. Tell me about your child. How does your child respond to you? Is he easy-going? Difficult? (Parenting)

b. What type of things do you expect your child to do around the house, with siblings, for you? (Parenting)

c. What type of behaviors and emotions does your child show? (Child Functioning)

d. Does your child have friends? (Child Functioning)

e. Does your child have any health-related problems that affect him today? (Child Functioning)

**Parent**

a. Tell me about yourself, about your feelings, and about what is happening. How do you think things have been between you and your spouse (partner)? Explore with the maltreating parent the feelings that the worker believes are being exhibited and follow up on those. (Adult Functioning, History, Family Functioning)

b. What is the most special thing about parenting your child? The most difficult thing? (Parenting)

c. Explore with maltreating parent how he believes his child is doing, what he is experiencing. Examine issues relating to bonding, attachment, concern, empathy, worry/ anxiety, etc. (Adult Functioning, Parenting)

d. Tell me about the family that you grew up in. What types of things did you do? What are some of your fond memories? Your sad or hurtful memories? (History)

e. What do you do with your friends? Who are your friends? What do you share with your friends? (Support)

f. Do you belong to any groups, organizations, religious affiliations, etc.? (Support)

**Family**

a. How do the family members show they care about each other? What affection is demonstrated? (Family Functioning)

b. How are decisions made in your family? Who is in charge? (Family Functioning)

c. What happens when the directives given are not followed? (Family Functioning)

d. Talk about the marriage (relationship). What are the things that make it good? Things you wish you could change? Communication difficulties? (Family Functioning)

e. Tell me about your folks. What about extended family members? What about neighbors, are they helpful to you and you to them? (Support)

f. Describe how roles are developed, assumed, and carried out in the home. Who does what? How is it decided who will do what in the home? (Family Functioning)

g. Influences regarding demographics, extended family, and Family functioning are gathered through a variety of observations during the initial interview and subsequent interviews.

**Maltreatment**

a.  When you begin to talk to the parent about the maltreatment, minimal information should be given. It is critical that you not engage in a battle of wills; refocus the parent to his own feelings.

b.  How does he feel about what happened? (remorse, justified, confused?)

c.  What do you want to do about this? How can we make sure nothing like this happens again? (Maltreatment)

d.  Tell me what has been going on with you. Have you been under stress? What from? Drinking? Marital problems? Job-related problems? (Nature)

e.  At an appropriate time, you should always share your belief about the maltreatment with the maltreating parent. There is no need to "beat" this to death.

## SAFETY ASSESSMENT Handout # 7

### Part 1. Primary Caretaker Information:

| Primary Caretaker's Name: | MACWIS#: | Date: |
|---|---|---|
| Worker Name: | | Time: |
| Do they have Native American Heritage? (If "yes," proceed with instructions outlined in the Indian Child Welfare Act and MDHS | | |

### Part 2. Child Safety Assessment:

The following is a list of behaviors or conditions that may be associated with a child being in danger of serious harm. Identify the presence of each factor by checking "Yes." For all safety concerns marked "yes." describe the specific behaviors, conditions, and circumstances associated with that safety concern.

| | |
|---|---|
| Yes ☐<br>No ☐ | 1 Select yes and explain if a child has received serious physical harm or injury that appears to be inflicted (non-accidental). Select no and speak to the appropriate type of discipline used by the family and/or the physical condition of the child. Select N/A if report does not concern physical harm. |
| Yes ☐<br>No ☐ | 2 Select yes and explain if a child has physical injuries resulting from use of instruments (e.g. cigarette burns, hot water, belts, sticks) to inflict severe pain upon a child or injuries due to dangerous acts (e.g. choking, shaking of an infant, or cruelty). Select no if the injury is considered accidental. Select N/A if report does not concern physical harm. |
| Yes ☐<br>No ☐ | 3. Select yes and explain if the caregiver has given an explanation that is inconsistent, insufficient, or will not explain the serious physical injury, and/or if it does not match the child's explanation. Select no and note the response if the caregiver can explain that the physical injury is not due to abuse. Select N/A if report does not concern physical harm. |
| Yes ☐<br>No ☐<br>N/A ☐ | 4. Select yes and explain if a child has special needs, behaviors, or medical concerns that are not being met resulting in the child being in danger of harm. Select no and explain if these needs are being met. Select N/A if the child has none of these issues. |
| Yes ☐<br>No ☐ | 5. Select yes and explain if the caregiver is not protective of the child. Select no and explain the caregiver's strengths in protecting the child. |
| Yes ☐<br>No ☐ | 6. Select yes and explain if the caregiver or other person is threatening to harm the child. Select no if no one is threatening the child. |
| Yes ☐<br>No ☐ | 7. Select yes and explain if the behavior of anyone inside or outside the home is violent and this behavior places the child in danger. |
| Yes ☐<br>No ☐ | 8. Select yes and explain if the caretaker perceives the child in extremely negative terms and that perception/belief places the child in danger. Select no and explain the caretaker's positive perception/belief concerning the child. |

| | |
|---|---|
| Yes ☐<br>No ☐ | 9. Select yes and explain if the caretaker has extremely unrealistic expectations of the child which places the child in danger. Select no and speak to the caretakers strengths concerning realistic expectations of the child. |
| Yes ☐<br>No ☐ | 10. Select yes and explain if drug and/or alcohol use by anyone related to the report places the child in danger. Select no if substance abuse is not a factor with this family. |
| Yes ☐<br>No ☐<br>N/A ☐ | 11. Select yes if anyone related to the case has behaviors symptomatic of mental or physical illness or disability that are uncontrolled and places the child in danger. Select no and explain if there are controlled behavior issues. Select N/A if no behavior issues are noted. |
| Yes ☐<br>No ☐ | 12. Select yes and explain if the caretaker is unwilling, or unable to meet the child's needs for supervision, food, clothing, and/or shelter. Select no and document the caretaker's strengths if these needs are being met. |
| Yes ☐<br>No ☐<br>N/A ☐ | 13. Select yes if the immediate physical and/or mental health needs of a child with physical or mental health handicaps is not being met by the caretaker. Select no and document the strength if a handicapped child's needs are being met. Select N/A if the child has no physical or mental health needs. |
| Yes ☐<br>No ☐ | 14. Select yes and explain if there are household environmental hazards or living condition concerns for the child. Select no and document the strength if there are no concerns with this issue. |
| Yes ☐<br>No ☐ | 15. Select yes and explain if domestic violence was found or suspected concerning this family. Select no if there are no concerns of domestic violence with this family. |
| Yes ☐<br>No ☐<br>N/A ☐ | 16. Select yes and explain if sexual abuse/exploitation is suspected and circumstances place the child in danger. Select no and if explain if this issue is suspected but the child is safe from danger. Select N/A if no sexual abuse/exploitation is suspected. |
| Yes ☐<br>No ☐ | 17. Select yes and explain if the child is exposed to dangerous activities concerning the manufacture and distribution of drugs, drug trafficking or sale of illegal drugs, or any alcohol related offense. Select no if there are no concerns related to this issue. |
| Yes ☐<br>No ☐ | 18. Select yes and explain if the family refuses access to the child, the child's whereabouts cannot be ascertained, caregiver's whereabouts cannot be ascertained, or there is reason to believe the family will flee. Select no if there are no concerns with this issue. |
| Yes ☐<br>No ☐ | 19. Select yes and explain if a child is fearful of caregiver(s), other family members, or other people living in or having access to the home. Speak to the credibility of the threat. Select no if the child does not relate any fear. |
| Yes ☐<br>No ☐<br>N/A ☐ | 20. Select yes and explain if there are uncovered problems that cause the child to be unsafe. Select no and explain if any strength the family may have that ensures safety has not been documented. Select N/A if all concerns and strengths have been covered in this assessment |

Describe safety factors checked "Yes": (In the Mississippi Automated Child Welfare System (MACWIS), each "yes" answer will give the worker a "pop-up" box where they can describe the safety factors.)

**If any safety factors are checked "Yes," a full Investigation must be completed. If a safety plan is needed, consult with a Supervisor and implement one immediately. (If "yes" is checked, MACWIS will take the worker automatically to the Safety Plan.)**

**Part 3: Maltreatment Findings (Complete only if no Safety Factors checked "Yes.")**

Describe what you determined regarding the allegations of abuse or neglect reported. Detail contacts made, observations made, statements related to the allegations, collateral contacts, and any other concerns identified during the Safety Assessment. Detail any referrals made.

Signatures

Worker:                                        Date:

Supervisor:                                    Date:

Comments

## Handout # 8 Case Information for Safety Assessment

### Interview with Ms. Dayton

Ms Sharon Dayton denied that she beat her children but she does use corporal punishment as a form of discipline when needed. She is depressed and frustrated with her oldest daughter Charlotte. Charlotte recently disclosed sexual abuse by her uncle, Sharon's brother, Jake Thompson. Ms Dayton believed her daughter and called the police who have investigated. There are criminal charges pending against the perpetrator Jake Thompson. This has caused a significant rift in the extended family as they do not believe Charlotte was sexually abused and is causing trouble for Jake and the rest of the family. Ms Dayton and her children were very active in their church as are her extended family. Now there are members of the church who do not speak to them any longer. The loss of support from the family and the church has put a great deal of strain on Ms Dayton who relied on them for help with her children since their father was killed in an auto accident 8 months ago.

Charlotte is aggressive and assaultive with her younger siblings. Charlotte was diagnosed with oppositional defiant disorder and exhibits angry and aggressive behavior. She sees a mental health therapist. Charlotte's behavior has been triggered by confrontations about the sexual abuse allegations by her cousins and other friends from the church who have called her a liar and a troublemaker. There have been numerous incidents of her tearing up her room and breaking things. Sharon states that Charlotte has hit Carl on more than once occasion because he was annoying her or touched her things. While Charlotte has never intentionally hit Angela she did throw her bottle at her which hit her in the face causing bruising around her right eye. Ms Dayton has not been very successful in controlling Charlotte's behavior and finds trying to just exhausting. Ms Dayton noted that Charlotte is a big as she is and will hit her as well.

Ms Dayton says she is depressed and just does not have the energy to keep up with taking care of the kids meals and laundry some days, and as a result the children are left to make their own meals and sometimes their clothing is dirty. Additionally Ms. Dayton has impaired vision and has been diagnosed as legally blind. She receives SSI for her disability.

Ms Dayton denies that the children's medical needs are neglected and provided the names of the pediatrician, dentist, eye doctor, and Charlotte's mental health counselor.

**Interview with Charlotte Dayton**
Charlotte is a 13 year old African American girl, approximately 5 foot 6 inches tall and average weight. She is the eldest child, and has been diagnosed with oppositional defiant disorder. She is in the 6th grade at XXXX middle school and is receiving special education services due to her behavior impacting her school performance. The initial interview with Charlotte is very angry that her cousins and friends no longer want her around and do not believe that her uncle Jake sexually abused her. She is also very nervous about having to testify if there is a trial. She says that her mother believes her and has never questioned if she was being truthful. Charlotte believes her mother was more torn up about the incident than she was. Her mother expects her to help take care of the house and her younger brother and sister. Her brother Carl is a pain always wanting attention and messing with her things. Charlotte says that Angela is cute and she was very remorseful that she accidentally hit her with the bottle causing a bruise near her eye. Charlotte became very emotional when talking about her father's death. She said it just ruined the whole family. She is up to date on her medical appointments

**Interview with Carl Dayton**
Carl is a 5 year old African American male child with plenty of energy. He was observed climbing on furniture and jumping on furniture throughout the apartment. He is extremely articulate and very interactive with his younger sister Angela. Carl was able to tell how old he was, the names of colors, the alphabet and count to 10. He appeared to have good language and motor skills. Carl interacted well with his mother and responded well to her directions but had difficulty sitting still for the interview. He will begin kindergarten this year. Carl says there are times when his sister Charlotte makes him mad because she bosses him and hits him. He also said that when Charlotte loses her temper he is afraid of her. Carl had bruises on his arms that he said were from Charlotte squeezing and twisting his arms. Carl reports that when he does something he is not supposed to he sometimes gets a spanking. Carl does not understand why they do not go to see their aunts and uncles and cousins any longer and he misses them. He is up to date on his medical appointments and immunizations.

**Interview/Observation of Angela Dayton**

Angela is a one year old African American female child in good physical condition who appears to be developing within normal limits. Angela has a faint yellowish color bruise below her right eye. She can sit up independently and has recently begun walking.  She becomes extremely animated and excited  when her brother Carl engages with her.  There was dirt observed around her neck and ankles .  Angela  wears diapers and is free of diaper rash.  She drinks Isomil formula and has begun eating table food.  She is up to date on her medical appointments and immunizations.

**Interview with Paternal Grandmother**
Cecilia Dayton is a 58 year old African American woman and the paternal grandmother of the three Dayton children.  Her son , Rudy was killed in an auto accident 8 months ago and the family has been on the decline ever since.  Charlotte has always had difficult behavior but is now completely out of control, hitting her mother and the little ones.  The grandmother thinks Charlotte needs more extensive treatment than she is presently receiving at the mental health clinic.  She says the her son Rudy did not allow Charlotte to carry on the way she does and he could manage her behavior.  Cecilia thinks that Sharon is lazy and not taking care of the children the way she should.  She does not get them proper meals and forgets to wash their clothes or give them baths.  The house is just a mess some days.    On night when Cecilia stopped by Sharon was in bed and Carl was trying to give Angela a bath with no supervision.  Cecilia would like to help but does not know where to begin.

**Interview with Charlotte's mental health provider**

Becky Draffen, the therapist that Charlotte sees weekly has noticed that Charlotte has been less engaged in weekly sessions and seemed very angry.   She explained that Oppositional Defiant Disorder is a psychiatric disorder of childhood and adolescence that is characterized by a persistent pattern of negativist, hostile, or defiant behaviors including frequent arguments with adults, deliberately annoys people, blames others for his or her mistakes or misbehavior, is easily annoyed by others, disregard of rules, refusal to comply with the requests of adults, loss of temper, vindictive or spiteful acts, and displays of anger or resentment.  The behavior causes significant impairment in social academic and/or operational functioning. Family factors contribute to the development of Oppositional Defiant Disorder. Other correlates include traumatic life experiences and physical and sexual abuse.

When she heard from her mother that her behavior in the home was so difficult, Becky recommended a more intensive day treatment program and the possibility of medication such as Clonidine or Methylphenidate for a three month period.  She additionally recommends some dyadic skills training to teach Sharon about Charlotte's social cognitive and emotional development and help her learn to set limits, problem solve and reframe Charlotte's negative behaviors. Becky is concerned that the behavior may get worse and become a Conduct Disorder. While Becky was aware of the death of Charlotte's father she was not aware of the sexual abuse.  She does not treat Sharon but in conversations with her she thought she might be depressed.


**Family Team Meeting**
Shortly after the first contact with the immediate family, a FTM was held within one week of the report of ANE.  Ms Dayton did not seem to see the seriousness of her inability to control Charlotte's behavior or that it has already caused harm to both children and the potential for serious harm existed.  She agreed to a  FTM and identified her mother in law and Charlotte's mental health worker as the people who should attend.  At that time the safety plan was developed.

Handout # 9 Safety Plan

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
**DIVISION OF FAMILY AND CHILDREN'S SERVICES**

**Safety Plan**

1) **Safety plans should be developed only when a decision of "unsafe" has been determined and workers, with supervisory approval, assess that without the plan, the child(ren) must be removed from the home.**
2) **Safety plans are completed during an investigation and on any type of case in which safety issues are identified. The safety plan must be related to the safety factors identified in the safety assessment. Describe the safety plan as follows:**

1) Identify specific serious harm or the immediate safety threat of serious harm as identified in the Safety Assessment.

2) What actions have or will be taken to protect each child (ren) in relation to the current safety concern?

3) Will the plan involve in home services? Yes_____No____ ;or out of home with an alternative caregiver? Yes____No____

4) If yes, has a background check been completed? Yes______ No______

5) Who is responsible for implementing each plan component?

4) How will the plan be monitored and evaluated and by whom?

5) What time frames have been imposed by this plan?

6) Under what conditions will termination occur?

## SIGNATURES AND DATES FOR SAFETY PLAN
## (Do not complete if child(ren) are removed from the home and placed in the agency's custody)

**The safety plan and the ramifications of non-compliance have been discussed with the caretaker and all those who are responsible for carrying out the plan. They have agreed to enter into this agreement with the Department of Human Services (DHS) and the conditions set forth.**

DHS Worker_______________________________ Date______________
Worker's Phone number____________________
Supervisors Name and Phone Number_________________________________

We have discussed the safety plan with the worker. We understand the contents and that it is voluntary, and agree to abide by the terms and conditions of the plan. If something happens that prevents us from carrying out the plan we will immediately notify the worker/supervisor. We understand that failure to agree to the plan or to carry out the plan may result in a reassessment of my home and possible protective custody of my child(ren) and removal from my care. I will then have the opportunity to appear in court and present my case.

Parent/Guardian______________________Date________________
Other Parent/Caretaker________________Date________________
(if more than one caretaker in the home)

Person most responsible for carrying out the safety plan, if other that parent or caretaker:
Name_______________________________Relationship_____________Date:_________

OTHER SAFETY PLAN PARTICIPANTS:

Name_______________________________Relationship_____________Date:_________
Name_______________________________Relationship_____________Date:_________
Name_______________________________Relationship_____________Date:_________

SAFETY PLAN MONITOR:

DHS WORKER/SUPERVISOR_________________________ DATE____________________

SUPERVISORY APPROVAL OF SAFETY PLAN

Supervisor gave verbal approval by phone
Name of supervisor___________________Date________________Time_________________

Supervisor's Approval of written plan________________Date_________Time____________
(Signature)
Supervisor's Phone:__________________________________________

The safety plan is in effect from __________until_______________.

Original-Case file

Copy 1-Parent/Caretaker (parent/caregiver must both sign and be given a copy of the plan)
Copy 2- Person most responsible if other than parent/caretaker

Handout # 10 Dayton Safety Plan

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
**DIVISION OF FAMILY AND CHILDREN'S SERVICES**

**Safety Plan**

3) **Safety plans should be developed only when a decision of "unsafe" has been determined and workers, with supervisory approval, assess that without the plan, the child(ren) must be removed from the home.**
4) **Safety plans are completed during an investigation and on any type of case in which safety issues are identified. The safety plan must be related to the safety factors identified in the safety assessment. Describe the safety plan as follows:**

6) Identify specific serious harm or the immediate safety threat of serious harm as identified in the Safety Assessment.

Charlotte is a 13 year old female diagnosed with oppositional defiant disorder which manifests itself in anger and aggression. The condition was exacerbated by the death of her father and the sexual abuse by her uncle. Sharon has difficulty controlling Charlotte's behavior making her vulnerable to danger due to her aggressive outbursts. Charlotte's behavior also makes her tow younger siblings, Carl and Angela vulnerable to danger because they cannot protect themselves from Charlotte and their mother does not protect them from Charlotte either. These aggressive outbursts have been observed and mother is unable to control them. Since the sexual abuse was disclosed Sharon has lost the support of her family that assisted her with parenting responsibilities. Without such support the safety concerns are out of Sharon's control. Sharon is depressed and is not always capable of less challenging parenting tasks such as regular meals, baths and supervision. These safety concerns require a safety plan to control them.

7) What actions have or will be taken to protect each child (ren) in relation to the current safety concern?

Charlotte will attend a day treatment program as recommended by her mental health counselor. Sharon will facilitate her attendance by getting her up each morning and seeing she gets there. Sharon will communicate with the case manager on a daily basis to monitor Charlotte's behavior in the day treatment program.

A parent aid will visit the home Monday through Friday between 4 and 6 pm at assist Sharon with meal preparation, laundry, bathing the children.

The paternal grandmother Cecilia Dayton will make visits to the home nightly on her way home from work to see that the children are being cared for and assist the mother in managing Charlotte's behavior if needed. The presence of another adult in the home on a daily basis will also help to monitor Charlotte's behavior and if it is escalating, assist Sharon to diffuse it. Sharon will call her mother in law if she is feeling unable to cae for the children or manage their behavior.

8) Will the plan involve in home services? Yes__X___No____ ;Or out of home with an alternative caregiver? Yes____No____

9) If yes, has a background check been completed? Yes______ No______

10) Who is responsible for implementing each plan component?

The worker is responsible for arranging for a parent aid
The worker is responsible for communicating with the paternal grandmother and the day treatment program case manager on a as needed but not less then semi-weekly basis to monitor the safety plan.
The worker will make weekly home visits to the family home to monitor the effectiveness of the safety services.
Grandmother is responsible for daily visits and communication with DFCS worker.

Case manager is responsible to communicate daily with Sharon regarding Charlotte's behavior.

The mother Sharon is responsible for seeing that Charlotte attends the day treatment program.

7) How will the plan be monitored and evaluated and by whom?

The worker is responsible for communicating with the paternal grandmother and the day treatment program case manager on an as needed but not less then semi-weekly basis to monitor the safety plan.

The worker will make weekly home visits to the family home to monitor the effectiveness of the safety services.

8) What time frames have been imposed by this plan?

This plan will be in effect for 30 days  when the next FTM will be held to review progress and develop a case plan.

9)  Under what conditions will termination occur?

This plan will terminate when the mother is consistently able to protect Carl and Angela from Charlotte, when Charlotte is capable of controlling her behavior, when mother demonstrates consistent minimal care of her children

**SIGNATURES AND DATES FOR SAFETY PLAN**
**(Do not complete if child(ren) are removed from the home and placed in the agency's custody)**

**The safety plan and the ramifications of non-compliance have been discussed with the caretaker and all those who are responsible for carrying out the plan. They have agreed to enter into this agreement with the Department of Human Services (DHS) and the conditions set forth.**

DHS Worker_________________________________ Date______________
Worker's Phone number____________________
Supervisors Name and Phone Number_________________________________

We have discussed the safety plan with the worker. We understand the contents and that it is voluntary, and agree to abide by the terms and conditions of the plan. If something happens that prevents us from carrying out the plan we will immediately notify the worker/supervisor. We understand that failure to agree to the plan or to carry out the plan may result in a reassessment of my home and possible protective custody of my child(ren) and removal from my care. I will then have the opportunity to appear in court and present my case.

Parent/Guardian______________________Date_________________
Other Parent/Caretaker________________Date_________________
(if more than one caretaker in the home)

Person most responsible for carrying out the safety plan, if other that parent or caretaker:
Name_________________________________Relationship_______________Date:_________

OTHER SAFETY PLAN PARTICIPANTS:

Name_________________________________Relationship_______________Date:_________
Name_________________________________Relationship_______________Date:_________
Name_________________________________Relationship_______________Date:_________

SAFETY PLAN MONITOR:

DHS WORKER/SUPERVISOR_________________________ DATE_____________________

SUPERVISORY APPROVAL OF SAFETY PLAN

Supervisor gave verbal approval by phone
Name of supervisor___________________Date________________Time________________

Supervisor's Approval of written plan________________Date________Time______________
(Signature)
Supervisor's Phone:_______________________________________________

The safety plan is in effect from __________until_______________.

Original-Case file
Copy 1-Parent/Caretaker (parent/caregiver must both sign and be given a copy of the plan)
Copy 2- Person most responsible if other than parent/caretaker

## Handout # 11

### Assessing Protective Capacities

*Protective capacities are family strengths or resources that reduce, control and/or prevent threats of serious harm from arising or having an unsafe impact on a child.*

*Not all strengths are protective capacities. Strengths must have a particular element to be a protective capacity; an element relevant to mitigating the safety threat.*

*Protective capacities are strengths that are specifically relevant to child safety. They may include intellectual skills; physical care skills; motivation to protect; positive attachments; social connections; resources such as income, employment or housing.*

*Protective capacities need to be both accessible and actionable. Actionable means that the caretaker will use these protective capacities on their own without external provocation.*

The following chart provides a variety of strengths that may exist as protective *capacities based upon their ability to be used to mitigate case specific safety threats.*

| | |
|---|---|
| **Intellectual Skills** | *Knowledge of child development as it relates to safety and well-being.* |
| | *Capacity and willingness to demonstrate empathy for child's needs' or condition.* |
| | *Ability and willingness to recognize and respond to child's needs.* |
| | *Ability and willingness to defer one's own need (gratification) to meet child's needs.* |
| | *Ability and willingness to control potentially harmful impulses related to child safety.* |
| | *Ability to understand the impact of his/her own actions, which may result in maltreatment or active safety threats.* |
| **Motivation to Protect** | *Caretaker is accepting in his/her role as caregiver to nurture and protect the children).* |
| | *Caretaker identifies and accepts care-giving role.* |

**Positive Attachments**

*Caregiver is not in co-dependent relationship.*

*Caretaker is emotionally tied to healthy family members.*

*Caretaker is not in a violent familial or social relationship.*

| **Social Connections** | *Caretaker interacts appropriately with neighbors in a manner that assures child safety and well-being.* |
| --- | --- |
| | *Caretaker interacts appropriately and cooperates with the child's school.* |
| | *Caretaker demonstrates appropriate boundaries with friends, family, and others.* |
| | *Caretaker behaves in a manner with others that ensures child safety and well-being.* |
| | *Caretaker behaves in a manner that does not frighten child or other family members.* |
| | *Caretaker has friends that serve as a social support to ensure child safety and well-being.* |
| | *Caretaker has close relationships with family members who support child safety and well-being.* |
| | *Personal or familial supports exist and are available to share care-giving tasks and responsibilities.* |
| | *Personal or familial supports are available to provide material and interpersonal resources.* |
| | *Caretaker can demonstrate reciprocity in their social network.* |
| | *Caretaker belongs to a church that provides spiritual and emotional support.* |
| | *Caretaker lives in a neighborhood where neighbors regularly socialize and share care-giving and other tasks.* |
| | *Caretaker is geographically close to supportive family members.* |

## Resources

*Caregiver has employment which provides for the family's basic needs: housing, basic utilities, food, clothing, medical care, and transportation.*

**Community**

*Neighborhood is safe from street crime, gangs, drug dealing*

*The authority is held by the police and other legitimate public servants*

*Community has an interest in the well being of families and children*

*Community is welcoming of diversity.*

**Health**

*Heath Insurance coverage is available*

*Family has access to medical care*

*Family has adequate transportation to utilize medical services*

*Family has primary health care provider*

*Family does not frequently switch doctors or hospitals for medical care*

*Family has access to dental care*

**Mental Health**

*Mental health services are available to children and Adults*

*Mental health services are accessible (no long waiting lists)*

*Transportation to mental health services is available* 4

*Prescriptions for mental health conditions are affordable*

**Child Care**

*Child care is affordable*

*Transportation for child care is available*

*Child care is a safe, stimulating and nurturing environment for the child*

*Parent interacts with the child care provider*

*Parent trusts child care provider*

*Child care is licensed*

**Employment**

*Caretaker is employed*

*Caretaker does not frequently lose jobs*

*Caretaker's employment is legal*

*Caretaker's employment skills are adequate to maintain financial stability.*

Handout # 12

## Assessing Safety in Foster Homes

### I. Assess safety for each child in the home

1. Are there any indicators of an immediate, significant and clearly observable concern occurring now (present danger) in this home for this child or any other children living there?

2. Do any adults in the home display any behaviors or emotions (anger, depression, bizarre behaviors, etc.?) that affect their abilitymeet the safety and basic needs of the child? If so, describe.

3. Do any adults in the home appear to have a substance abuse or dependency problem that affects ability to meet the safety and basic needs of the child? If so, describe.

4. Are there any significant life changes in the past year that may affect caregiver ability to meet the protection and basic needs of the child? If so, describe.

5. Are there any structural or other physical conditions in the home that pose a safety hazard for children or other household members?

6. Are there possible safety concerns posed by other children in the home, or does this child pose possible threats to other children there?

7. Describe the quality of caregiver/child interaction and if it indicates that child perceives caregiver as safe and protective.

## II. Assess well being for each child in the home

1. Describe the caregiver(s) understanding of the child's basic needs and developmental needs and how they are met within the placement setting. Include physical and behavioral health needs.

2. Describe the child's educational progress including school attending, grade level, attitude toward school and academic success.

3. Describe the contact (face-to-face, phone, email, written) between the child and his or her biological family; frequency, location and duration of contacts with parents, siblings and extended family members.

4. Is the child receiving the services he or she needs to meet the goals identified in the ISP?

5. Based upon your interview with the child, describe the child's comfort level with the caregiver(s) and others residing in the placement setting including the type of discipline used.

6. Describe child's overall functioning and adjustment in the placement. (Please note the child must actually be observed – if the child is asleep discuss with the caregiver whether to waken or reschedule; if the child is not home make arrangements to return when the child will be at home.)

7. If child is AWOL, what is being done to locate child?

## Handout # 13

Assessing the Safety of Children in Group Homes or Residential Facilities

### Assess safety for each child

1. Are there any indicators of an immediate, significant and clearly observable concern occurring now (present danger) in this placement for this youth or any other youth living there?

2. Does any staff in the facility display any behaviors or emotions (anger, depression, bizarre behaviors, etc.?) that affect their ability meet the safety and basic needs of the youth? If so describe.
3. Does any staff in the facility appear to have a substance abuse or dependency problem that affects ability to meet the safety and basic needs of the youth? If so describe.

4. Are there any significant changes/occurrences in the past year that may affect the staff's ability to meet the protection and basic needs of the youth? (For example, has there been excessive staff turnover) If so describe.

5. Are there any structural or other physical conditions in the group home or facility that pose a safety hazard for youth?

6. Are there possible safety concerns posed by other youth in the group home or facility, or do this youth pose possible threats to other youth there?

7. Describe the quality of staff/youth interaction and if it indicates that child perceives placement location as safe and meeting his/her needs.

### Assess well being of the youth

1. Describe the staffs understanding of the youth's basic needs and developmental needs and how they are met within the placement setting. Include physical and behavioral health needs.

2. Describe the youth's educational progress including school attending, grade level, attitude toward school and academic success.

3. Describe the contact (face-to-face, phone, email, written) between the youth and his or her biological family; frequency, location and duration of contacts with parents, siblings and extended family members.

4. What are the plans for the youth's transition to independence? Is the youth receiving the services he or she needs to meet the goals identified in the ISP?

5. Based upon your interview with the youth, describe the youth's comfort level with the staff and the others residing in the placement setting including the type of discipline used.

6. Describe youth's overall functioning and adjustment in the placement. (Please note you must actually meet with the youth: if the youth is not at the placement location make arrangements to return when he/she will be.)

### Use of restraints

7. Has the youth been restrained?

8. How frequently?

9. What were the circumstances requiring a restraint?

10. Did youth sustain any injury?

# Handout # 14

## Guidelines for Visits by Social Workers for Children in Out-of-Home Care Settings

### Purpose of Guidelines:

These guidelines have been developed to support social workers to prepare for visits with children who reside in an out-of-home care setting (foster home, kinship care, group care, etc.) and their caregiver(s). The purpose of the visit is to observe the condition, safety, and behavior of child in the out-of-home care setting, to assess the caregivers' ability to respond to the particular challenges (behavioral, emotional, medical) of the individual child, and to note any changes in the placement setting, which may impact the safety of the child.

### Preparation for Visit to Child(ren) in Out-of-Home Care Setting:

Become familiar with the placement setting.

- Review case file and history to become familiar with the kinship family, foster family or other placement setting, including strengths and needs; family/residence composition (all adults living in the foster home and other children living in the placement setting); and any other issues that may effect the safety of the child in care.
- Contact the provider agency social worker to discuss the case if applicable.
- Schedule the visit with the caregiver in advance and during a time where you can meet with the caregiver(s) and the child(ren).
- Review the Individual Service Plan (ISP) and other relevant case documentation.

### During the visit:

**In your interview with the caregiver(s), please consider the following:**
*Individuals Living in the Home*

- Discuss with the primary caregiver/child who is living in the home; if there are individuals in the home that you were not aware of make sure you know their relationship and why they are there, for how long and how the child interacts with this individual(s).
- As appropriate, interview child(ren) privately. Establish a time during the visit to interview child(ren) privately.

*Understanding Child's Basic Needs*

- Does the caregiver understand the child's basic needs and appear motivated to meet those needs?
  - Does child have an adequate sleeping area and bed? Do children under 3 have their own crib?
  - How is the child's hygiene?
  - Is the child dressed appropriately for the season?
  - Are there any concerns regarding child's physical health and/or behavioral health?
  - Are all the services that have been identified for the child in the ISP in place, i.e., therapy, early intervention services, etc.?
  - Is the child participating in the services? If not, what are the challenges/barriers?
  - Look at any medications and discuss purpose and dosage. Discuss dates of last medical/dental appointments and any follow-up needed.
  - Do biological parents participate in medical appointments? Why or why not?

- Interview caregiver and child(ren) and observe their interactions. Assess caregiver's relationship to the child:

*Caregiver's Attitude Toward the Child*

- Does the caregiver seem interested in the child?
- How does the caregiver respond to the child's actions or requests?
- How does child interact with the caregiver? Does the child seem comfortable, uneasy, fearful?
- Who cares for the child when the primary caregiver is out?

*Child's Behavior*

- Ask the caregiver to describe the child's behaviors, how the caregiver typically manages those behaviors, and the caregiver's perception of the effectiveness of those behavior management methods?
- What method of discipline is used?

- Explore with the caregiver how the child is doing in the placement setting.
  - What are the household routines, e.g., bedtime, curfews
  - What are the child's favorite foods?
  - Does the child appear to be happy, sad, hyperactive, withdrawn?
  - How does the child interact with other foster and/or birth children in the home?
  - For youth placed in group home/facility, how do they get along with the other residents?
  - Based on your observations, are there concerns/issues regarding the physical environment?
  - Note whether there are smoke detectors in place and in working order.

*Home Environment*

- Observe the home for any areas that may impact the child's physical safety, e.g. is their wiring uncovered and reachable by the child, are there holes in the floor, does the home have a safe heating source?
- Does the child have their own place to sleep or are they sleeping with the adults in the home?

*Educational Issues*

- Explore with the caregiver and the child school related issues.
  - Are there any concerns regarding the child's educational or school placement?
  - Does the caregiver seem knowledgeable about the child's developmental needs? If the child appears delayed, are services in place to assess and support the child's development?
  - Verify school and grade for each child, if applicable.
  - How is the child doing in school?
  - Is the child receiving special education services? If so, is caregiver knowledgeable about child's IEP?
  - Does the caregiver monitor or assist with homework?

*Contact with the Biological Family*

- Explore with the caregiver the relationships with the biological parents.
  - Does child have visits with biological parents? How often? Where? Are visits supervised? By whom?
  - Does child have visits with siblings? How often? Where? Who supervises?
  - How does the child react to visits?
  - Does the caregiver have contact with the biological parent(s)? If yes, explore how the relationship with the biological parents is going?

*Contact with the Provider Agency, if applicable*

- Explore with the caregiver the relationship with the provider worker.
  - How often is the caregiver meeting with the provider worker? Explore how the relationship with the provider worker is going.
  - Is the caregiver getting the help they need from the provider social worker? Are there additional areas in which the caregiver needs support?
  - Has the provider social worker discussed the permanency goal with the caregiver?

*Individual Service Plan*
- Are you able to access the necessary services for the child as needed to meet the goals identified in the Individual Service Plan?

**In your interview with each child, please consider the following depending on the age and/or special needs of the child: (**Explain who you are to the child and your role in contrast to the role of the provider social worker.)

- Observe the child –
  - Does the child look healthy?
  - Does the child have any observable untreated illnesses/injuries?
  - How is the child's hygiene?
  - Is the child dressed appropriately for the season?
  - Does the child appear to function at the appropriate developmental level?
  - Does the child appear happy, sad, hyperactive, withdrawn?
  - Does the child engage in age appropriate activities?

- Explore how the child is doing in the placement setting.
  - Ask the child to describe his/her daily routine. Do they have any chores?
  - Are there any rules they must follow? Ask for examples.
  - What are their favorite foods?
  - Ask the child to show you where they sleep?
  - What time do they go to bed?
  - For youth placed in group home/facility do they know and understand the rules of the facility?
  - For youth placed in facility- identify staff that they have regular contact with; ask if staff change frequently; if there are any staff they especially like or with whom they have problems.
  - Observe and ask about the child's relationships with other children in the home/facility.

- Explore how school is going.
  - What grade are they in?
  - What are their favorite subjects?
  - Who helps them with their homework?
  - What types of activities are they interested in?
  - Have they thought about what they would like to do after they complete school?

- If the child is receiving therapy or other services, are they attending? How it is going?
  - What makes them feel happy? What makes them feel sad?
  - Who do they go to when they have a problem and need to talk?
  - Who do they enjoy spending time with?

- Ask how the caregiver/staff disciplines the child, how often the child is disciplined and for what behaviors.

- Who watches them when the caregiver in not there?

- What is the name of their provider agency social worker?
  - How often do they see their social worker?
  - How do they contact their worker?
  - Explore how their relationship with the provider worker is going?

- Are they visiting their biological family, parents, siblings, others?  How often?  How is it going?

- Are they having any problems or difficulties they would like for you to know about or need some help with?

- If during the interview the child indicates anyone who makes them uncomfortable or fearful make sure you speak with those individual(s).

- Do they have any questions they would like to ask you?

**After the visit:**

- Document what you discussed and observed during your visit with the child(ren) and caregiver(s).

- Discuss with your supervisor child's progress, in particular, any safety related concerns, permanency planning issues, and/or changes that may need to be made to service provision.

- Contact the provider agency social worker to discuss your observations and any concerns you may have.

Handout # 15
Interview Guide for Visits By Social Workers for Out-of-Home Care Settings

## Children Ages 5 and younger

*Below is an observation guide for children ages 5 and under. These are actions to consider when observing the behaviors of young children in the foster home, with an emphasis on potential safety and risk factors.*

## Parent/Child Interaction

- Observe the foster parents/caregivers interaction with the child(ren)?
  - How does the foster parent/caregiver respond to the child(ren)'s actions or requests?
  - Does the foster parent seem interested in the child(ren)?

### Child(ren) Specific Observation

- Observe the child - does the child engage in age appropriate activities?
  - Does the child appear happy, hyperactive, withdrawn?
  - Does the child(ren) play independently?
  - How does the child interact with other foster children in the home? Birth children?
  - How does the child interact with the caregiver and other adults in the home?

## Children Ages 6-11

*Below are some questions to consider when speaking with children aged 6-11. The questions are divided into general topic area sections. Each section starts with some general questions, and is followed by more targeted questions to consider, should any red flags arise during the response to the general question, or if the worker has any other concerns. The targeted questions are designed to draw out any potential risk or safety factors.*

## Family/Social Life

- How do you like your foster home. How long have you lived here?
  - Ask the child to describe the family's daily routine
  - Can you show me where you sleep?
  - What time do you usually go to bed? When do you get up in the morning?
  - Who is up when you get up? What do you do?
  - What do you do alone?
  - What kinds of things do you do together with your foster parent?
  - How do you get along with your foster parents?
    - If you could change something about your foster parents, what would you change?

- Tell me about your foster siblings.
  - How do you get along?
  - Do you play together often?
    - What do you do together?

- Tell me about your friends.
  - How often do you get to see them?
  - What activities do you participate in?

- (If appropriate) How is your mother/father doing?

- Do you visit your family? Who:
  - Parents? Siblings?
  - Where?
  - How frequently?
- When was the last time you saw them?
- What did you do together during the last visit?

## Education

- What Grade are you in now?
  - Do you like your school?
  - How are you doing in school?
  - Do you ever get in trouble at school?
    - What did you do?
  - Have you gotten any awards or received anything special from school?
  - Do you like your teachers?
  - What are your favorite subjects?
  - Are there subjects you don't like or don't do well?
  - Are your foster parents interested in how you do in school?
    - Does he/she attend things at school?
  - Does your foster parent make sure your homework is done?
  - Have you ever skipped school?
    - If so, what was your foster parents reaction?

## Supervision

- Describe your jobs or chores around the house.
  - Who watches you when foster parent is not here?
  - What would you do in an emergency?
    - Do you know how to use the telephone?
    - Do you have access to a telephone?
    - Do you know the phone numbers of police, firemen, friends and relatives?
  - What people do you trust?

## Discipline in the Out-of-Home Care Setting

- Tell me about the rules in the home
  - Who enforces them?
  - Are the rules the same for all your foster brothers/sisters and/or birth siblings?
  - What does your foster parent do when you've broken a rule?
  - How do you know when your foster parents are angry?
  - Who wins arguments?
  - What happens when you get disciplined? (If hitting, what does the adult hit you with?)
    - What do you do when you are disciplined?
      - Show how you're disciplined.
        - How long do you have to stay in your room?
        - What can you do when you're there?
        - What happens when it's time to eat?
        - What do you do if you have to use the bathroom?
        - Have you ever been locked in your room?
      - Do you ever have any marks?

## Mental/Physical Health

- How are you feeling this week?
  - Did something different happen this week? Was it happy? Sad?

- What makes you feel sad?
        - How often do you feel sad?

- How do you feel physically?
    - Do you feel sick often?
    - What happens when you feel sick?
    - When was the last time you went to the doctor? Who takes you to the doctor?
    - Do you take any medicine? What medicine? How often?
        - Where is the medicine kept?

- Whom do you go to when you have a problem and need to talk?
    - When something is bothering you, do you share it with anyone? Who? Why them?
    - Who would you tell if something bad happened to you?
        - What do you think your caretaker might say?
        - What was your caretaker's reaction when you told him/her?
    - What do you think of yourself?
        - Have you thought about hurting yourself?

## Children Ages 12-18

*Below are some questions to consider when speaking with children aged 12-18. The questions are divided into general topic area sections. Each section starts with some general questions, and is followed by more targeted questions to consider, should any red flags arise during the response to the general question, or if the worker has any other concerns. The targeted questions are designed to draw out any potential risk or safety factors.*

### Family Life/Environmental

- Tell me what its like at your foster home/place that you live. Ask the child to describe the family's/facility's daily routine
    - What do you do alone?
    - What chores or jobs do they ask of you?
    - Do you get disciplined? For what? How?
    - What time do you usually go to bed? When do you get up in the morning?
        - Who is up when you get up? What do you do?
    - What kinds of things do you do together with the foster parents/children or other youth placed with you?
        - If you could change something about your foster parents/staff, what would you change?

- Do you feel safe in your foster home/facility? In the neighborhood? In school?

- (if appropriate) How is your mom/dad doing?
    - Do you visit your family? Who:
        - Parents? Siblings?
        - Where?
        - How frequently?
    - When was the last time you saw them?
    - What did you do together during the last visit?

- Who is your Provider worker?
    - How often do you see him/her?
    - How do you contact him/her?
    - Do you feel comfortable talking to him/her?
    - Do you feel you are getting the help you need from your worker?

## Social Life

- How are things going for you?
  - Do you have many friends?
    - What type of activities do you like to do together?
    - How long have you been friends?
    - How do your friends support you?
  - Do you belong to any social groups (e.g., team sports, school clubs, Boy/Girl Scouts, Boys and Girls Club)?
    - How long have you been involved?
    - How many hours per week do you spend on these activities?
  - Who do you like to spend time with?
    - Doing what?
    - How often do you get a chance to do this?

- What do you do for fun?
  - Do you have a job?
    - How many hours per week do you work?
    - What do you do for spending money?
  - Are you involved in helping anyone in your community?
  - Have you ever tried cigarettes, drugs, alcohol? How often?

- Are you dating anyone? Have a boyfriend/girlfriend?
  - How is that going?
  - Have you had sex?
    - How old were you?
    - Who did you have sex with?
    - How old was that person?
    - Did you use protection?
    - Are you sexually active now?
    - Are you using protection?
    - How do you access information about physical or sexual health?

## Education

- What Grade are you in now?
  - Do you like school?
  - How are you doing in school?
  - What are your favorite subjects?
  - Are there subjects you don't like or don't do well?
  - Have you thought about what you want to do after you complete school?
    - Is there anything that would prevent you from doing this?
  - Are your foster parents/staff interested in how you are doing in school?
    - Does he/she attend things at school?
  - Does your foster parent/staff make sure your homework is done?
  - Have you ever skipped school?
    - If so, what was your foster parents/staff reaction?

## Mental/Physical Health

- How are you feeling this week?
  - What are the family problems with which you struggle?
  - Are you having any difficulties that you'd like me to know about/need some help with?
  - What are the major worries on your mind today?
  - What do you think are the causes of these problems?
  - Who do you look to for support?
    - What kind of support do they offer you?

- What have you tried in the past to fix the problem?
  - Do you know why that hasn't worked?
  - Is there anything you would like to try now, which I could help you with?
- Have you ever thought about hurting or harming yourself?
  - Have you ever attempted to hurt or harm yourself?
    - If so, did you or your caretaker seek mental health counseling?
    - Did you follow through with recommendations?
- What makes you feel sad?
  - How often do you feel sad?

- Are you attending therapy?
  - How is that going?
  - Do you like your therapist?
  - Do you feel like it helps you?

- Do you have any physical problems?
  - Do you take medication?
  - When is the last time you went to the doctor?

- Does anyone in the household/facility, including foster parent/staff, behave in a way that makes you uncomfortable?
  - Does this scare you?
  - Does anyone in the household/facility, including your foster parent/staff, behave in a manner that is dangerous to you or others?

- What is some of your favorite foods?
  - Tell me about your eating habits?
  - What kinds of foods, how much, how often, ever get sick after eating?

Handout  # 16

Resource Report Risk Tab
(Only activated for Resource Report)
06/02/2010 Version

1)    In what type of placement was the maltreatment alleged to have occurred (foster care placement or adoptive placement)?  If foster care then what type setting (foster home, group home, residential treatment, therapeutic foster home, relative placement, etc)?

2)    Who is the Alleged Perpetrator?  What is there relationship with the victim?

3)    Describe the nature, frequency, and duration of the maltreatment:

4)    What is the permanent plan for the child(ren)?  How does the child(ren) perceive the placement where the alleged maltreatment occurred?

5)    Does the Resource have a history of maltreatment with the agency? If so, were any of the allegations substantiated? __Yes __No

6)    Is there a violation of agency policy or licensure standards?

7) Would the child be in any danger if left in this placement? Yes__ No__

If the child is in danger in the placement the agency will address the danger with Removal __ Safety Plan only (child not removed) __ N/A__. Explain your answers:

Handout 17 - Insert MACWIS report for Resource Home
(Will be attached separately)

# Assuring Safety and Managing Risk

| OUTCOMES | |
|---|---|
| | • Children are first and foremost protected from abuse and neglect.<br>• Children are safely maintained in their homes whenever safe and appropriate.<br>• Children in out-of-home placement are safe and protected from maltreatment. |

| REQUIREMENTS | |
|---|---|
| | • *Safety and risk assessments.* Initial safety assessments must be completed/Conduct evaluation of risk & protective factors/Ongoing safety assessments must be completed over life of the case/Ongoing evaluation of risk & protective factors must be completed/<br>• *Investigation of reports.* All reports must be assigned for investigation or screened out within 24 hours/Face-to-face contact with children occurs within 72 hours of the report/ Investigations must be completed within 30 days, within 20 days for reports of children in agency custody, including supervisory approval/ Evaluate all children in the home for safety and risk<br>• *Safety plans.* Develop initial safety plans and update as necessary/ Screen children to see if they pose threat to other children in home and whether they need safety plan<br>• *Safety in out-of-home care.* Monitor safety of children in foster care placements/If report is for child in congregate care or therapeutic foster family home, undertake a licensure investigation in addition to CPS investigation/reports of corporal punishment in foster care are investigated by worker with training in maltreatment in foster care who has no connection to the case/If child remains in the foster care placement following report of maltreatment or corporal punishment, worker visits twice monthly for three months/File copy of report in record of child and resource parent and facility licensing file & copy of letter notifying resource parent goes in file and to State Office, and provide records/report to judge and court monitor.<br>• *Caseworker visits.* Twice monthly caseworker visits with children in foster care and children remaining in their own home to assess safety and needs/Worker meets frequently with the child's biological parents and at least monthly /Visits are made during the first month the child is in care and after any change in placement to assess child's adjustment<br>• *Discharge/aftercare.* Ninety- day trial visit if reunification occurs and two visits to the home each month to interview the child (ren) without the parent(s) present/Develop after-care plan identifying services needed to ensure child's safety and stability/Take steps to ensure access to needed services |

| ACTIVITY | WHERE IN THE LIFE OF THE CASE | PRACTICE GUIDANCE |
|---|---|---|
| ▪ *Initiate Investigations of maltreatment* | • Intake<br>• Investigation | • Gather information from reporter to determine if report meets definition of maltreatment.<br>• Gather information from the reporter & others on extent & circumstances of maltreatment, vulnerability of child, location of child & perpetrator, & whether child is in present danger<br>• Determine the response time for the report<br>• Make face-to-face contact with child within required time frames/interview child privately<br>• Interview all required parties, including alleged perpetrators<br>• Consult supervisor to determine priority and other procedures |
| ▪ *Conduct initial safety and risk assessments* | • Investigation | • Conduct background check on family members/Review historical information in MACWIS, Central Registry, & case files<br>• Gather information through observations & interviews to determine if child is in danger<br>• Gather information from family members & collaterals about the extent of maltreatment, circumstances of maltreatment, adult & child functioning, parenting & discipline practices<br>• Identify parents' protective capacities and use in evaluating safety and risk |

| | | |
|---|---|---|
| | | • Complete safety & risk assessment instruments and document in case file<br>• Use assessment findings to determine if a safety plan is required & if services are needed |
| ▪ *Initiate services to address safety and risk* | • Investigation<br>• Case plan development | • Evaluate need for immediate services to protect child or manage risk during investigation/ make appropriate referrals/follow-up with providers to ensure prompt response<br>• If child remains in home, identify services needed immediately to support safety plan/Refer and follow up for prompt response<br>• If case opened for services, conduct FTM to determine ongoing services needed to address identified safety and risk factors/Link services to safety threats and risk factors |
| ▪ *Conduct ongoing safety and risk assessment* | • Caseworker visits<br>• Case plan reviews<br>• When family's situation changes<br>• Reunification/ case closure | • Conduct and document risk and safety assessments in MACWIS at regular intervals<br>• Review safety and risk factors, vulnerability, and protective capacities during visits with family members & with child in placement/Identify new or emerging safety & risk factors/Evaluate caretaker's progress in resolving safety & risk factors<br>• Use safety & risk re-assessments in comprehensive strengths & needs re-assessments to provide broad perspective on safety and risk and parental capacity to care for child safely<br>• Identify conditions required for a child to be safe at home to use in evaluating safety/risk<br>• Evaluate effectiveness of safety plan in protecting child from harm/managing risk<br>• Determine changes needed to safety or service plan/revise with family & child/Document |
| ▪ *Address safety and risk in case plans* | • Within 30 days of placement or case opening | • Analyze information from safety and risk assessments and comprehensive strengths and needs assessments to identify safety & risk issues that must be addressed in case plan.<br>• At FTM, discuss findings from the assessments, non-negotiable safety & risk concerns, and assist family to identify goals and service needs to protect child.<br>• Identify ongoing safety plans provisions with family and incorporate into case plan.<br>• With family, develop case plan goals & objectives that will assist child's caregiver identify, understand & change behaviors, attitudes or relationships that produce or maintain safety concerns, & to strengthen those that increase & sustain protective capacities |
| ▪ *Review & update case plans* | • At least every 6 months<br>• Whenever family or individual circumstances change | • At least quarterly, review information from child, family, caregivers & providers on caregiver's progress in protecting child, strengthening protective capacities, changes in child's vulnerability to harm, needs for revision to safety/case plan, effectiveness of services, identification of new issues<br>• Use FTM to determine appropriateness of existing plans & services and needed changes.<br>• With family and providers, make needed changes to plans based on safety and risk factors/document in case file/obtain signatures |
| ▪ *Use caseworker visits to address safety & risk* | • Caseworker visits | • Visit with child, parents, foster caretakers at required intervals/more frequently if needed<br>• Meet privately with child to discuss safety and risk concerns<br>• Review safety and risk concerns with family members, & participation in services, effectiveness of services, progress toward goals, needs for changes in goals or plans.<br>• Document all visits in case file |
| ▪ *Address safety & risk while children are in placement* | • Caseworker visits with child/parents and resource family<br>• Investigation of reports of maltreatment in care | • Evaluate safety & risk issues in foster care placement at all caseworker visits to facility and with child/Observe conditions in home or facility and evaluate for safety & risk<br>• Complete safety & risk assessments for children in care<br>• Meet privately with children in placement to discuss safety and risk concerns<br>• Meet privately with resource parents/facility staff to identify safety threats, such as hazards, supervision, interactions with other children or adults, child behaviors<br>• Identify and discuss with parents any safety or risk concerns for child in placement<br>• Complete investigations as required<br>• Consult frequently with licensing staff about resource homes & facilities/ Notify & involve licensing staff in reports and investigations<br>• Document safety assessments & investigations in MACWIS |
| ▪ *Reunification* | • FTMs<br>• Caseworker visits<br>• Reunification | • Gather information from child, family, caregivers and service providers on progress in achieving goals and resolving safety and risk factors that led to the need for placement.<br>• Ensure that any new or emerging safety & risk factors are resolved or controlled<br>• Complete safety and risk assessments and use them to guide the decision to reunify |

| | | |
|---|---|---|
| | | • Use assessment findings to determine if in-home safety plan is needed to reunify.<br>• Develop after-care plan including needed services/Plans for trial visit & caseworker visits Make service referrals/follow-up with providers/Facilitate access to services/Document |
| • *Case Closure* | • When making a decision to close the case | • Gather information from child, family, caregivers and service providers on progress in achieving goals and eliminating safety factors and reducing risk sufficiently<br>• Meet with the family to discuss their readiness and prepare the family for case closure.<br>• Complete safety & risk assessments to determine that safety threats no longer exist & sufficient change has occurred so that caregiver can effectively protect the child.<br>• Identify future risk of harm in the foreseeable future and the family's protective capacities which will prevent such harm/Include in after care plan<br>• Develop after-care plan that includes needed services/Make service referrals/follow-up with providers/Facilitate access to services/Document in case file |

# Mississippi Child Welfare Practice Model

# *Child Maltreatment Training for Caseworkers Engaged in Maltreatment Investigations*

# Child Maltreatment Training

- ***Introductions and Expectations***
  - Arrive at your training site on time
  - Participate in large and small group activities
  - Ask questions
  - Professional Behavior

Center for Support of Families

# Child Maltreatment Training

- ***Housekeeping***
  - Bathrooms
  - Breaks/Lunch
  - Cell phones & Pagers
  - Take care of yourself



# Child Maltreatment Training

## The Mississippi Child Welfare Practice Model Components include:

Mobilizing Appropriate Services Timely

I

Safety Assurance and Risk Management

S

Involving Children and Families in Case Activities and Decision Making

S

Strengths and Needs Assessments of Children and Families

I

Preserving Connections and Relationships

P

Individualized and Timely Case Planning

# Child Maltreatment Training

## *Learning Objectives*

- Introduce revised Safety Assessment tool
- Introduce the new Safety Plan
- Introduce the revised Risk Assessment instruments
- Define child abuse and neglect
- Describe the effects of child abuse and/or neglect on children and the family.

# Child Maltreatment Training

## *Learning Objectives cont'd*

- Describe the responsibilities in Resource Report investigations of:
  - Regional Director;
  - County of Responsibility;
  - County of Service;
  - Permanency/Placement Unit;
  - Resource Worker;
  - Investigative Worker; and
  - child's assigned Worker

# Child Maltreatment Training

## *Competencies*

- Develop a safety plan that prevents removal and placement of children by engaging and empowering the family, extended family and informal supports in actions that control safety factors.
- Identify indicators of risk of abuse or neglect to children in out of home placements.
- Develop a plan for conducting interviews within a child maltreatment investigation and determine the best interview strategies.
- Describe how to conduct an investigation

CSF Center for Support of Families

# Child Maltreatment Training

## *Competencies cont'd*

- Define safety and risk
- Identify safety threats and thresholds
- Describe how underlying conditions affect protective capacities
- Describe how safety and risk factors impact current family functioning
- Describe the elements of safety plan
- Develop a safety plan
- Describe how to monitor a safety plan

# Child Maltreatment Training

## *Overview*

- This training will cover how to:
  - conduct a maltreatment investigation;
  - develop a safety plan using the new safety plan instrument;
  - implement a safety plan; and
  - explain how the safety plan will be monitored.
- This training will also cover the ongoing assessment of risk and safety for both in home and out of home cases.

# Child Maltreatment Training

## *Overview*

- *Safety and risk related interventions are designed to help children remain safely at home when possible. Assuring child safety begins with the report of maltreatment and continues through the investigation, initial safety and risk assessment; ongoing safety and risk assessment; developing a case plan; assuring safety during placement; reunification and case closure. Safety and risk interventions are applicable for all children within a home.*

Center for the Support of Families

# Child Maltreatment Training

- *Practice Principles:*
  - Safety and risk assessment practice guides casework activities with regard to safety, permanency, and well-being.
  - Safety and risk assessments are used to address case plans and service delivery.
  - Safety and risk assessment occurs throughout the life of a case.
  - Family-centered practice principles apply to safety and risk interventions.
  - Safety and risk are addressed within the cultural background of the children and families being served.

Center for Support of Families

# Child Maltreatment Training

- *Purpose of the Maltreatment Investigation*
  - Assessment of a family or caretaking environment for the purpose of keeping a child or children safe from harm and keeping the family stable and intact.
  - Prevent additional harm from occurring and assist families in securing services to solve problems in families and aid in healing the damage done from previous harm.

# Child Maltreatment Training

Families

DHS
278646

# Child Maltreatment Training

- *Requirements of a Maltreatment Investigation*
  - Records Check
  - Safety Assessment
  - Notifications
  - Interviews
  - Home Visit
  - Examination and Photographs of the Victim Child
  - Determination – Findings
  - Risk Assessment
  - Supervisory Consultation

# Child Maltreatment Training

- *Records Check*
  - The worker or supervisor receiving the report will use the information systems (METTS, MSSIS, MAVERICS and MACWIS) to determine:
    - prior reports of abuse and/or neglect in that family or concerning that child
    - prior criminal history of household members if known;
  - The worker or supervisor will conduct a diligent search to identify the absent parent

# Child Maltreatment Training

- *Safety Assessment*
  - The Safety Assessment is completed in all situations when the report has been assigned a Level Two or Level Three investigation. This assessment is completed in MACWIS within seven (7) days of the report being assigned.




# Child Maltreatment Training

- ***Safety Assessment***
  - Assuring child safety begins with the report of maltreatment and continues through:
    - the investigation,
    - initial safety and risk assessment,
    - ongoing safety and risk assessment,
    - developing a case plan,
    - assuring safety during placement,
    - Reunification, and
    - case closure.
  - Safety and risk interventions are applicable for all children within a home.

# Child Maltreatment Training

- *Notifications*
  - Family Members
  - Law Enforcement
  - Youth Court
  - Mandated Reporters
  - Tribe – when the report involves a tribal child



# Child Maltreatment Training

- *Interviews*
  - Reporter (if possible)
  - Victim Child
  - Siblings
  - All Children in the Household
  - Non-maltreating Parent(s)
  - Alleged Perpetrator
  - Other Household Members
  - Collaterals



# Child Maltreatment Training

- *Home Visit*

  - The worker must make a visit to the home and a physical home environment narrative must be entered in MACWIS.

  - If there are any children age 5 or younger the Safety Checklist must be completed and discussed with the parent(s) and signed by both the worker and the parent or caretaker.

# Child Maltreatment Training

- ## *Examination of the Victim Child*
  - All victims of physical abuse should be thoroughly examined for evidence of abuse (bruises, bites, burns, welts, etc.)
  - Victims of neglect should be thoroughly examined if the investigation indicates reasons to suspect physical abuse; or if there are observable signs of neglect (malnutrition, untreated accidental injuries, infestations, bug bites).
  - A parent/caretaker or another adult witness must be present when child is examined.
  - If there is reason for an examination of the genital area of any child or breasts of female children over age 6, examination must be done by a medical professional.

# Child Maltreatment Training

- *Medical Examination*
  - When there is a report of sexual abuse all alleged victims will be sent for a medical examination.
  - A medical examination may be needed to confirm or rule out abuse/neglect and/or to prevent removal in any case where there is suspicion of abuse.
  - If the parent/caretaker is unwilling to pay for the examination, Medicaid or other DFCS resources are utilized.
  - If the parent refuses to cooperate seek a court order to take the child for a medical examination.

# Child Maltreatment Training

- *Photographs of the Victim Child*
  - The worker may take photographs of child or child's residence to document any physical evidence of abuse/neglect.
  - A parent, another DFCS Worker, or another professional must always be present as a second party when photographs are taken of a child.
  - Identifying information and date photograph was taken, time, and location should be written on back of photograph or attached to it.
  - Each photograph shall have a visible body landmark to identify the child, location, and extent of injury.

# Child Maltreatment Training

- *Determination – Findings*
  - Report findings are:
    - Substantiated
    - Unsubstantiated
  - Determination is made based upon:
    - Substantiation criteria
    - Safety Assessment/Safety Plan
    - Risk Assessment
    - Information gathered including medical & psychological
    - Direct observation
  - Worker has 25 days to complete the investigation

# Child Maltreatment Training

- *Supervisory Consultation*
  - The supervisor:
    - receives an intake and screening from MCI and assigns a worker;
    - must be consulted if face to face contact is not possible;
    - must review and sign the safety assessment and safety plan;
    - has 5 days to review the investigation for accuracy, completeness, and determination;
    - will submit the completed investigation with the Youth Court Tracking form to the Youth Court for recommendations.

# Child Maltreatment Training

- *The Safety and Risk Assessments are the first steps of the Comprehensive Family Assessment Process and are completed within the investigation.*

DHS
278659

# Child Maltreatment Training

- *Key definitions in the understanding of safety and risk*
  - A child is safe when there are no immediate threats of serious harm due to the caretakers actions or inactions or the protective capacities of the family are able to mitigate these threats.
  - A child is unsafe when the caregiver's actions or inactions present immediate threats of serous harm to a vulnerable child and the family's protective capacities are diminished.
  - A child is at risk when there is a likelihood that maltreatment will occur in the future.

# Child Maltreatment Training

- ***The Safety Assessment is ..***
  - A decision making process conducted in response to a child maltreatment report which evaluates safety threats, immediate danger, child vulnerability and protective capacities to determine the safety response. A child is determined safe or unsafe.
- ***The Risk Assessment is ...***
  - An information gathering process on behaviors and circumstances within the family that contribute to the likelihood that a child will be maltreated in the future. Risk is typically classified on a high to low continuum.

DHS 278661

# Child Maltreatment Training

- *The Safety Plan is a specific and concrete strategy for controlling immediate threats of serious harm or supplementing protective capacities designed to control a safety threat.*

DHS
278662



# Child Maltreatment Training

## Risk

- Likelihood of future Maltreatment
- Unlimited time frame
- Risk assessment identifies a family condition requiring intervention
- Maltreatment has the potential for harm & a detrimental effect on functioning and development

## Safety

- Current dangerous family conditions
- Present or immediate time frame
- Safety assessment identifies a threat that must be controlled
- Dangerous conditions that present immediate threats of serous harm

Center for Support of Families

**Slide 30**

---

**CM17** i would rethink the black slides.. will kill the ink
[redacted], 6/23/2010

# Child Maltreatment Training

- *Protective Capacities ...*
  - Individual or family strengths or resources that reduce, control and/or prevent threats of serious harm from arising or having an unsafe impact on a child
  - Strengths that are specifically relevant to child safety
  - They fall under the following categories:
    - Personal
    - Behavioral
    - Cognitive
    - Emotional characteristics and/or
    - Resources
  - Protective capacities must be accessible and actionable

# Child Maltreatment Training

- *Protective Capacities*
  - Intellectual skills
    - Knowledge of child development
  - Motivation to protect
    - Caregiver nurtures the child
  - Positive attachments
    - Healthy marriage
  - Social connections
    - Informal supports
  - Resources
    - Income
    - Housing

# Child Maltreatment Training

- ***Why it is important to engage with the family during the investigation***
  - The feeling of being misunderstood or shut down by those who don't appreciate their values.
  - The caregiver's need to feel understood on the basis of his or her values, assumptions and beliefs is central to the worker's ability to engage the caregiver.
  - When what is important to us is disrespected because of the other person's misconceptions or inability to be open to difference, engagement stops.

Center for Support of Families

# Child Maltreatment Training

- *Engaging with the Family*
  - Inform the parents of the concern being expressed about their family.
    - Did you know that there is someone concerned about how your family is doing?
    - How do your feel about DFCS looking into possible concerns within you family?
    - Why do you think someone has concerns with your family? How do you feel about that?
  - Spend sufficient time with each family member to convey that they are important.
    - Ask their permission to interview them and their children

Center for Support of Families

# Child Maltreatment Training

- *Engaging with the Family*
  - Notify parents of their rights:
    - Content of the report
    - Voluntary participation (unless you involve the court)
    - In legal proceedings the parent has a right to an attorney, a hearing, to present witnesses
  - Explain your role
    - Helper
    - Identify issues that affect safety and risk
    - Find solutions to those issues
    - You are NOT law enforcement or the Youth Court



Child Maltreatment Training

Activity
Center for Support of Families

DHS
278670

# Child Maltreatment Training

## *Information Gathering:*

1. What is the extent of child maltreatment?
2. What are the circumstances surrounding the child maltreatment?
3. How do the children function on a daily basis?
4. How do the adults (primary caretakers) function on a daily basis?
5. What are the general parenting practices in this family?
6. What are the disciplinary practices in this family?

# Child Maltreatment Training

- *Interviewing the Victim Child(ren)*
  - Face-to-face contact with the child is considered to have initiated the investigation.
  - Notify the parent(s) before interviewing the child unless doing so would endanger the child.
  - Interview the child privately.
  - A child may be interviewed at school if it is the only option such as if home visits have been unsuccessful.

# Child Maltreatment Training

- *Interviewing the Victim Child(ren)*
  - Tell the child who you are and what you are doing.
  - Get to know the child and build rapport
  - Adjust your questions to the child's age, developmental capacity and level of comfort.
  - Gather information about the maltreatment.
  - Tell the child what will happen next, such as talking with their parent(s) or sibling(s) and when you will speak with the child again.

# Child Maltreatment Training

- *Interview with Other Children in the Home*
  - Determine if the other children in the home are also experiencing maltreatment
  - Other children in the home can provide additional information about the circumstances surrounding the maltreatment.
  - Other children in the home can provide information about the family's interactions.

# Child Maltreatment Training

- *Interview with Non-maltreating Caregiver*
  - Be clear about the reason for DFCS involvement in the family.
  - Determine this caregiver's role in the maltreatment
  - Focus will be on the protective capacities of this caregiver.
  - Determine this caregiver's informal supports and/or resources.



# Child Maltreatment Training

- *Interview with Alleged Perpetrator*
  - Be clear about the reason for DFCS involvement in the family.
  - Determine this person's role as a caregiver.
  - Convey information about the allegations in a non-accusatory manner.
  - Gather information to assess safety not to prove guilt.
  - Expect some resistance, possibly hostile.



# Child Maltreatment Training

- *Collateral Contacts*
  - Contact with collaterals allows the worker to gain a better understanding of the needs (as they relate to safety, permanency and well-being) of the family
  - Confidentiality must be respected, however it is not necessary to get written permission from the parents to contact collaterals.
  - Identify extended family/informal supports.
  - Discuss their views on:
    - Family functioning
    - Family's strengths and needs
  - Include them in Family Team Meetings as agreed upon with the family
  - Input from extended family is valuable even when perceptions are incomplete or biased

CSF Center for Support of Families

# Child Maltreatment Training

- *Safety Assessment*

  - *The safety assessment form has recently been revised .*



# Child Maltreatment Training

- *Safety Thresholds*
  - The point when the behaviors, attitudes, emotions, intent and situations cross over from family problems and risk factors to creating imminent danger of immediate serious harm to a child.
  - This is determined through these 5 questions:
    - Is there a vulnerable child?
    - Is there a threat of serious harm?
    - Is the threat immediate?
    - Is the threat observable and specific?
    - Is the threat out of the control of the family members?

# Child Maltreatment Training

- *Vulnerable Child*
  - Child vulnerability refers to a child's capacity for self-protection. It is the degree to which a child can avoid, negate or modify safety threats, or compensate for the caregiver's missing or insufficient protective capacities.
  - Consider:
    - child's condition and functioning
    - the role the child has in the family
    - interactions between the caregivers
    - family conditions that affect the child's vulnerability.

Center for Support of Families

# Child Maltreatment Training

- *Child's Capacity for Self-protection*
  - developmental level and mental disability; physical disability and illness;
  - whether a child acts in a provocative or non-assertive manner;
  - whether a child seems powerless or defenseless;
  - the visibility of a child to others;
  - a child's ability to communicate;
  - a child's ability to meet basic needs; and
  - whether the child is seen as a scapegoat.

# Child Maltreatment Training

- *Serious Harm*
  - Serious physical injury
  - Significant pain and suffering
  - Sexual abuse
  - Extreme fear or terror
  - Extreme impairment or disability
  - Death
  - Substantial impairment or risk of substantial impairment to mental or physical health or development

# Child Maltreatment Training

- *Immediate*
  - Serious harm could occur at any time within the present or near future
- *Observable and Specific*
  - The behavior, emotion, attitude, perception, intent or situation clearly identifiable rather than based upon a "bad feeling".



# Child Maltreatment Training

- *Out of control*
  - No apparent natural, existing means with the family to assure control.

# Child Maltreatment Training

- *Other Considerations when Assessing Child Safety*
  - Duration – How long has the condition been occurring?
  - Pervasive – How all encompassing is the condition?
  - Consistent – How routine is the condition?
  - Influence – Is there an issue associated with the condition such as substance use, mental health?
  - Continual – Without intervention is this condition likely to continue?

DHS
278685

Center for Support of Families

# Child Maltreatment Training

- For each child in the family, the child welfare worker must be able to synthesize the information collected, identify any items that pose serious harm or an immediate threat of serious harm to the child, and describe them.

- The information must be sufficiently descriptive and clear to all involved parties.

# Child Maltreatment Training

- *Safety Analysis*
  - As you look at the 20 safety concerns on the Safety Assessment instrument, consider:
    - How are they manifested in the family?
    - How long has this condition posed a safety concern?
    - What is the frequency of the safety concern?
    - Are there times when the safety concern is more pronounced?
    - Does the safety concern interfere with caregiver's functioning?
    - Is there a non maltreating caregiver residing in the home?
    - Does the caregiver have sufficient protective capacities and a willingness to protect the children?
    - Does the caregiver have sufficient personal and family resources to fulfill protective and care giving responsibilities?



# Child Maltreatment Training

Activity
Center for Support of Families

DHS
278688

# Child Maltreatment Training

- *Safety Decision*

  - When the safety assessment conclusion is unsafe; the worker and the family must decide if a safety plan can be put in place to prevent placement.

# Child Maltreatment Training

- *Safety Plan*

  - Safety Plans should be developed only when a decision of unsafe has been made by the worker with supervisory approval to prevent protective custody.
  - The safety actions within the plan must be directly related to the safety concerns identified in the safety assessment.
  - Safety Plans can be in home or out of home with an alternate caregiver (no DFCS custody.)

# Child Maltreatment Training

- *Safety Plan*

  - Safety plan is a written agreement between a family and the agency that establishes how safety concerns will be controlled.
  - Safety plans are signed by the caregiver and the agency.
  - Safety plans will remain in effect as long as needed.
  - A case may not be closed if there is a safety plan in place.

# Child Maltreatment Training

- *Safety Plan*
  - Controls identified safety concerns
  - Supplements protective capacities
  - Reduces child vulnerability
  - Available immediately
  - Produces an immediate effect
  - Does not take the place of a service plan
  - Is not based upon "caregiver promises"
  - Safety plans can be put in place during the investigation as well as at any point in the life of the case when a safety plan is needed.



# Child Maltreatment Training

- ***How can we determine if a safety plan is an appropriate response in this case?***
  - Are caregiver(s) willing to take safety actions and accept and cooperate with services to control safety concerns?
  - Are there sufficient resources within the family and community to provide safety actions and services to control safety concerns?
  - Is this the least intrusive measure available to control safety concerns?

# Child Maltreatment Training

- *Can a safety plan be developed to control safety concerns and prevent protective custody?*
  - What supports and community resources has the family identified for the safety plan?
  - What specific response/service will control identified safety concerns?
  - How does the safety action or service control the safety concern?
  - What level of effort from safety service providers is required to control safety concerns?
  - How frequently will the family require assistance to keep children safe?
  - What is the duration of the action or service provided?

# Child Maltreatment Training

- *Are the potential providers suitable to participate in the safety plan?*
  - Trustworthy
  - Committed
  - Supportive
  - Flexible
  - Available
- *Who will monitor the safety plan?*
- *How will the safety plan be monitored?*



# Child Maltreatment Training

Activity

Families

DHS
278696

# Child Maltreatment Training

- ***Introduction to Risk Assessment***
  - Risk is the likelihood of future maltreatment.
  - Protection policy has changed regarding the timeframe for the risk assessment. It is now due at the conclusion of the investigation.
  - During this assessment, the worker should be assessing the well-being of the child and the risk factors for abuse and neglect.
  - Risk assessments shall be entered into MACWIS within 25 days from assignment of an investigation

CSF Center for Support of Families

# Child Maltreatment Training

- *Underlying Conditions*
  - *The root cause(s) of safety concerns that are not readily observable*
  - *Examples are:*
    - Family Needs
    - Perceptions
    - Beliefs
    - Values
    - Cultural Practices
    - Previous Life Experiences
  - Underlying conditions must be addressed to sustain change.

# Child Maltreatment Training

- *Contributing factors*
  - The individual or community social problems that contribute to child maltreatment
  - Examples include:
    - Substance abuse
    - Domestic violence
    - Mental illness
    - Unemployment
    - Inadequate housing
    - Crime
    - Poverty

# Child Maltreatment Training

- *The level of risk identified through the risk assessment will inform the need for services required to enhance protective capacities and decrease the likelihood of maltreatment.*

- *When there is high risk it is important to continually assess for safety and the potential need for a safety plan.*

DHS 278700

# Child Maltreatment Training

## ➢ *Risk Assessment*

1. What is the exact nature of the abuse and/or neglect? Describe the parent/caretaker's initial response. Describe the maltreatment found and describe any injuries.

2. If abuse and /or neglect is found how long has it been going on and what is the impact on the child?

3. How do the parents/caretakers and the children view their current situation? Describe the caregiver's ability to provide basic needs.

4. Describe the parents/caretakers level of functioning. Are the parents/caretakers capable of addressing issues related to the maltreatment?



DHS
278701



# Child Maltreatment Training

## ➢ *Risk Assessment*

5. Describe any mental/physical health concerns of household members. Do any concerns pose danger to the child?
6. Describe how the each child's functioning ability as it relates to such things as age, communication skills, school performance, physical and behavioral health, and fear of harm.
7. Describe the family's support system. What kinship resources are available to family?
8. Identify and describe caregiver and family strengths, and protective capacities.
9. Describe family and caregiver-child relationships. Include things such as parenting style, parenting knowledge and skill, and discipline techniques.



# Child Maltreatment Training

Activity
DHS
278703
Center for Support of Families

# Child Maltreatment Training

- *Criteria for substantiation of a report*
  - Medical and/or psychological information from a licensed physician, medical center or other treatment professional, that substantiates that child abuse occurred.
  - An admission by the perpetrator
  - The statement of a credible witness or witnesses to the abuse act.
  - The child victim's credible statement that the abuse occurred.
  - The absence of information in some areas does not necessarily mean that the case is unsubstantiated.



# Child Maltreatment Training

- *Documentation requirements*
  - The worker documents in MACWIS, the supporting information to confirm the findings of substantiated/unsubstantiated.
  - The worker investigating the report is responsible for completing a finding on all investigations as well as completing a report about these findings.
  - The worker will print the Youth Court tracking form and forward to his/her supervisor.

# Child Maltreatment Training

- ***Notifications***
  - All completed investigations of child abuse and neglect are forwarded to the Youth Court
  - The worker notifies the mandated professionals that the report has been investigated and services rendered, if warranted.
  - Policy requires that the family is notified by mail of the findings of the completed investigation.
  - Best practice indicates that you should verbally explain the findings to the family, preferably in person.



# Child Maltreatment Training

- *Case Opening Decision*

  - The safety and risk assessments and report findings are decision points which assist the worker in determining the level of intervention and inform the case opening decision.

DHS
278707

Center for Support of Families

# Child Maltreatment Training

- *Case Opening*
  - Safety Assessment, Risk Assessment and Investigation Findings inform case opening decision
    - Allegations Unsubstantiated & Child is Safe = No services but twice monthly visits with the child must occur if the child remains in the home
    - Allegations Unsubstantiated & Child is Unsafe = Open Case for Services
    - Allegations Substantiated & Child is Unsafe = Open Case for Services
    - Allegations Substantiated & Child is Safe & Risk of Future Maltreatment is High = Open Case for Services
    - Allegations Substantiated & Child is Safe & Risk of Future Maltreatment is low or moderate =No services but twice monthly visits with the child must occur if the child remains in the home

CSF Center for the Support of Families

# Child Maltreatment Training

- *Ongoing Assessment of Risk and Safety*
  - Every worker visit with the child
  - Every worker visit with the caregiver(s)
  - Every home visit
  - Visits in the placement setting
  - Case plan Reviews
  - Family Team Meetings
  - Prior to reunification
  - Prior to court hearings
  - When family situation or composition changes
  - Proper documentation

# Child Maltreatment Training

- ***Investigations in Open Cases***
  - When in the course of your work with a family if a subsequent incident of maltreatment occurs it should be reported and a thorough investigation completed.
  - Each report of maltreatment that is screen as level 2 or 3 will require an investigation, including the completion of the safety assessment and risk assessment instruments.

# Child Maltreatment Training

- ***Assessing safety of children in an out of home setting***
  - Behaviors or emotions of any adults in the home (anger, depression, bizarre behaviors, etc.?)
  - Substance abuse or dependency problem of adults in the home that affects his or her ability to meet the safety and basic needs of the child
  - Significant life changes in the past year
  - Structural or other physical conditions in the home that pose a safety hazard for children
  - Safety concerns posed by other children in the home, or does this child pose possible threats to other children there?
  - Quality of caregiver/child interaction and if it indicates that child perceives caregiver as safe and protective.

# Child Maltreatment Training

- ***Assessing well-being of children in an out of home setting***
  - Understanding of the child's basic needs and developmental needs
  - Child's educational progress including school attending, grade level, attitude toward school and academic success
  - Contact between the child and his or her biological family; frequency, location & duration of contacts with parents, siblings and extended family
  - Is child is receiving the services he or she needs?
  - Child's comfort level with the caregiver(s) and others residing in the placement setting including the type of discipline used

# Child Maltreatment Training

- *Case Closure*
  - A case may be closed after the risk assessment if:
    - The child is safe
    - No safety plan is in place
    - The likelihood of future maltreatment is moderate or low
  - A case can be closed after service provision if
    - Underlying conditions and contributing factors have been successfully addressed
    - Risk has been reduced.
    - Protective capacities have been sufficiently enhanced to mitigate safety concerns

# Child Maltreatment Training

- ***Summary of Caseworker's Roles and Responsibilities:***
  - Gather information during investigation, as part of the case planning process, during the monitoring of service delivery for both home and placement cases, during reassessments, at reunification and at case closing. Information gathering will include:
    - Family history of abuse or neglect in the present family composition or others;
    - Prior service episodes and the effectiveness of previous service interventions;
    - Attitudes of family members regarding the helpfulness of services; and
    - Their feelings about the need for change.

# Child Maltreatment Training

- ***Summary of Caseworker's Roles and Responsibilities:***
  - Making timely face to face contacts with all children in the home, the caregiver and the perpetrator during the investigation , and for visiting in accordance with policy time frames to continually assess the safety and risk and documenting these contacts.
  - Initial and ongoing safety and risk assessments based upon information gathered, including child vulnerability and caregiver protective capacities, to guide decision making regarding the need for immediate placement or another less intrusive safety plan.

# Child Maltreatment Training

- ***Summary of Caseworker's Roles and Responsibilities:***
  - Development of safety plans with the family to mitigate safety factors so that children can remain in the home while service plans are developed and implemented.
  - Developing service plans with the family based upon the information gathered to support the safety and risk decisions and to identify the areas of greatest need impacting safety and risk of children and the available strengths to be used in identifying the objectives of the service plan, the action steps to achieve these goals and the services need to influence the changes needed to achieve the service plan objectives.

# Child Maltreatment Training

- ***Summary of Caseworker's Roles and Responsibilities:***
  - Monitoring and managing safety plans that mitigate safety threats.
  - Making regular and frequent visits to foster homes and other placement settings to ensure that the children are safe in those placements and that their physical, emotional, social and educational needs are being met.
  - Ensure that resource families are acting in support of the permanency planning goals and objectives of the service plan.
  - Reporting any information that constitutes alleged maltreatment of children in foster care and for responding to such reports with the same timely and diligence as with reports of alleged maltreatment of children in their own homes.

Center for Support of Families

# Child Maltreatment Training

- ***Summary of Caseworker's Roles and Responsibilities:***
  - Facilitate FTMs with the family, the resource parents and service providers to develop safety and service plans. This would allow service providers to engage in the monitoring and management of safety plans as well as provide a broad range of services to the family to meet complex service needs in a cohesive manner.
  - Documenting work timely and thoroughly in MACWIS in order to promote accurate reports of performance indicators and complete file information.

Center for Support of Families

# Child Maltreatment Training

- Wrap Up
- Questions/Concerns
- Next Steps





# Child Maltreatment Training

- *Investigating Reports in Out of Home Settings*
  - DFCS must conduct an investigation/assessment into all allegations of maltreatment that occur while a child is in DFCS custody, including foster homes, kinship foster homes, group homes, or residential facilities.
  - The agency will investigate all allegations of maltreatment, including corporal punishment involving a child in DFCS custody.

# Child Maltreatment Training

- ***Investigating Reports in Out of Home Settings***
  - The caretaker is someone who is entrusted with the care of the child, such as a foster parent, non-licensed child care or residential care facility staff.
  - The agency will investigate allegations of child abuse and neglect in these complex cases and make every effort to address the child's risk, safety, and well being while addressing the trauma of placement moves during the investigative process.

# Child Maltreatment Training

- ***Investigating Reports in Out of Home Settings***
  - Reports on resource homes and licensed/contract facilities are entered in MACWIS as resource reports.
  - A referral is made immediately by the investigative worker to the law enforcement agency with jurisdiction where the abuse occurred and will notify the district attorney's office within 72 hours.
  - If the out-of-home setting is a licensed facility, an additional referral is made by the agency to the licensing agency.

# Child Maltreatment Training

- *Regional Director's Responsibilities*
  - *Immediately* notifies by phone and e-mail the county of service and county of responsibility Area Social Work Supervisor and resource ASWS of the allegations.
  - Assign to a worker outside the county who has been trained in doing out-of-home investigations/assessments and will notify their ASWS of the assignment.
  - Make a determination if the identified victim and other children should remain in the home until the investigation/assessment is completed.



# Child Maltreatment Training

- ***Regional Director's Responsibilities***
  - Notifies the Permanency/Placement Unit of the allegations and completes the Serious Incident Report and forwards it to the DFCS Division Director's Office.
  - Upon verbal report from the assigned worker, the RD in the county where the resource home is located, discusses corrective actions needed with the RASWS
  - After receipt of the written report the RD makes written recommendations and outlines emergency corrective actions to be taken.



# Child Maltreatment Training

- *Requirements of the County of Responsibility*
  - Accept report;
  - Coordinate investigation with county where incident occurred;
  - Arrange treatment services for child and family as appropriate in county of responsibility
  - Initiate and coordinate legal action and court involvement, as needed for child's protection;
  - Complete investigation in MACWIS.
  - Contact alleged perpetrator's county of responsibility to coordinate interviews or on a child who may be visiting in another county.
  - Within 24 hours verbally notify parents/caretaker and the guardian ad litem of the allegations.

# Child Maltreatment Training

- *Responsibilities of the county where incident occurred*
  - Interview alleged perpetrator
  - Interview alleged victim or any other children who may still be in the county where incident occurred
  - Interview reporter if possible
  - Assist with coordination of services if needed



# Child Maltreatment Training

- *Responsibilities of the Assigned Investigative Worker*
  - All alleged victim(s) must be interviewed within 24 hours of receipt of the report to assess risk, safety, and well-being.
  - Review case files of:
    - Alleged victim(s)
    - Other child (ren) in the home
    - Agency home

DHS 278727



# Child Maltreatment Training

- *Responsibilities of the Assigned Investigative Worker*
  - Interview:
    - Alleged victim(s), away from the home within 24 hours
    - All agency children in the home, away from the home
    - Agency social worker(s) of the alleged victim
    - Resource Home Worker
    - Former agency Staff, as appropriate
    - Children formerly in the home, as appropriate
    - Other professionals and collateral contact persons associated with the children in the home.
    - Other household members, as appropriate
    - Alleged perpetrator



# Child Maltreatment Training

- *Responsibilities of the Assigned Investigative Worker*
  - Report initial findings to the RD within 3 business days.
  - Provide written notice to the District Attorney within 72 hours of substantiation of a resource report.
  - Give a verbal report to the RD at the conclusion of the investigation/assessment.
  - Make a written report to the RD within 25 days of receipt of the report.

**Slide 95**

**CM44** and the perpetrator
[redacted], 6/23/2010

# Child Maltreatment Training

- *Responsibilities of the Permanency/Placement Unit*
  - Notify the Resource Unit of the allegations
  - Log all reports on agency homes
  - Monitor completion of the investigation/assessment and the final report
  - Provides final approval of the investigative report.
  - No additional children may be placed in the home pending the completion of the investigation/assessment.
  - Determines continued/future use of the home and placement of children in the home.
  - Convene meeting with the resource family to notify them of the findings and recommendations.

# Child Maltreatment Training

- *Responsibilities of the Child's Assigned Worker*
  - Any foster child who remains in the same out-of - home placement following an investigation/ assessment into a report that he or she was maltreated, or subject to corporal punishment in that placement shall be visited twice a month in the placement setting face to face for three months after the conclusion of the investigation to assure the child's continued safety and well-being.
  - Notify the child's parents of the findings of the investigation.

# Child Maltreatment Training

- *Resource Report Risk Assessment*
  - This is different from the new risk assessment that was introduced earlier in the training that is completed in other investigations and will be required in resource report Investigations.
  - The worker assigned to the investigation will complete the resource risk assessment in MACWIS within 25 days of investigation assignment.
  - The worker assigned to the investigation will share it with the resource worker and with the child's assigned worker.



# Child Maltreatment Training

- *Resource Report Risk Assessment*
  1. In what type of placement was the maltreatment alleged to have occurred (foster care or adoptive)? If foster care then what type of setting (foster home, group home, residential treatment, therapeutic foster home, relative placement, etc)?
  2. Who is the alleged perpetrator? What is their relationship with the victim?
  3. Describe the nature, frequency, and duration of maltreatment.
  4. What is the permanent plan for the child(ren)? How does the child(ren) perceive the placement where the alleged maltreatment occurred?

# Child Maltreatment Training

5. Does the resource have a history of maltreatment with the agency? If so, were any of the allegations substantiated?
6. Is there a violation of agency policy or licensure standards?
7. Would the child be in any danger if left in this placement ? (yes or no) If the child is in danger in the placement the agency will address the danger with
   - i. Removal
   - ii. Safety Plan only (Child not removed)
   - iii. N/A

Activity
Families

DEPARTMENT OF HUMAN SERVICES

Jackson, MS 39202

# Law Enforcement Referral

**June 28, 2010**

DFCS received a report alleging abuse and/or neglect which may be the basis for law enforcement intervention. The substance of the report appears below:

**Report County:** Hinds

**Report Source:** Friend/Neighbor

**Intake Worker:** PRN, ADAMS

**Reporter:** Millie Jones

**Rprtr's Address:**

**Report Date Time:** 06/28/2010 08:15AM

**Incident Date:**

**Intake Worker Phone:** NO TELEPHONE

**Reporter's Phone:**

**FAMILY MEMBERS:**

| Name | Age | Sex | Race | House Hold Status | Intake Role |
|---|---|---|---|---|---|
| Dayton,Sharon | 35 | Female | Black or African American | Primary Caretaker | Perpetrator |
| Dayton,Charlotte | 13 | Female | Black or African American | Member | Victim |
| Dayton,Carl | 5 | Male | Black or African American | Member | Victim |
| Dayton,Angela | 1 | Female | Black or African American | Member | Victim |

**LOCATION INFORMATION:**

590 State Street
Jackson, MS 39201

**DESCRIPTION OF COMPLAINT:**

Ms Sharon Dayton, allegedly beats her children and does not provide them with proper care or supervision. The children are dirty and have untreated medical conditions. The children have bruises.

STATE OF MISSISSIPPI
DEPARTMENT OF HUMAN SERVICES

Jackson, MS 39202

**Law Enforcement Referral**

**June 28, 2010**

---

**Intake Screening Tool**

| | |
|---|---|
| 1. Is this a duplicate report of the same incident? | No |
| 2. Can the family be located? | Yes |
| 3. Is the alleged perpetrator the parent, guardian, custodian, or person responsibile for the child's care or support? | Yes |
| 4. Is there an allegation of child abuse and neglect meeting the legal definition of MS Code Section 43-21-353? | No |

Any Report that would be felony child abuse under state and federal law. " A report that a child has been sexually abused, or burned (any burn, including but not limited to cigarette burns and burns from hot water), tortured (with or without physical harm such as being locked in a closet for several hours, tied up, left for a significant period of time without food or water, etc), multilated or otherwise physically abused in such a manner as to cause serious bodily harm, or any report of abuse that would be a felony under state and federal law."

| | |
|---|---|
| 5. Are there other allegations of Abuse/Neglect that require intervention? | Yes |
| **Intake Supervisor's Decision** | Screen In |

**Provide Justification/Rationale for Screening and/or Override Recomendation**

**RD Agreed Supervisor Decision :**

STATE OF MISSISSIPPI
DEPARTMENT OF HUMAN SERVICES
Jackson, MS 39202

# Law Enforcement Referral

**June 29, 2010**

DFCS received a report alleging abuse and/or neglect which may be the basis for law enforcement intervention. The substance of the report appears below:

**Report County:** Grenada

**Report Date Time:** 06/28/2010 04:15PM

**Report Source:** Medical Personnel

**Incident Date:** 06/28/2010

**Intake Worker:** PRN, ADAMS

**Intake Worker Phone:** NO TELEPHONE

**Reporter:** Elaine Cronin

**Reporter's Phone:**

**Rprtr's Address:**

**FAMILY MEMBERS:**

| Name | Age | Sex | Race | House Hold Status | Intake Role |
|---|---|---|---|---|---|
| Singleton,Miles | 50 | Male | White | Secondary Caretaker | Perpetrator |
| Singleton,Michelle | 48 | Female | White | Primary Caretaker | Perpetrator |
| Marcus Gallo | 11 | Male | White | Member | Uninvolved |
| Norma Gallo | 7 | Female | White | Member | Uninvolved |
| James Singleton | 14 | Male | White | Member | Witness |
| Susan Singleton | 18 | Female | White | Member | Witness |
| Ball,Charlie | 1 | Female | White | Member | Victim |
| Tabitha Ball | 19 | Female | White | Non Member | Uninvolved |

**LOCATION INFORMATION:**

850 State Street
Jackson, MS 39201

DHS
278739

DESCRIPTION OF COMPLAINT:

Elaine Cronin is a Social Worker at Memorial Hospital and is calling in the following report: Charlie Ball was brought to the ER with 2nd degree burns to his chest and stomach. He was in his walker and pulled on the cord to the crock pot which fellover and the hot liquid burned him. The foster parents were not at home at the time of the accident, but were immediately contacted by their daughter when this occurred. Mr Singleton was at work and Mrs. Singleton was at the grocery store. They immediately went home and brought Charlie to the ER for treatment. The doctor that treated Charlie does not believe the burns will leave scars or any permanent impairment. The allegation is lack of supervision.

**STATE OF MISSISSIPPI**

DEPARTMENT OF HUMAN SERVICES

Jackson, MS 39202

**Law Enforcement Referral**

**June 29, 2010**

**Intake Screening Tool**

1. Is this a duplicate report of the same incident? No

2. Can the family be located? Yes

3. Is the alleged perpetrator the parent, guardian, custodian, or person responsibile for the child's care or support? Yes

4. Is there an allegation of child abuse and neglect meeting the legal definition of MS Code Section 43-21-353? Yes

Any Report that would be felony child abuse under state and federal law. " A report that a child has been sexually abused, or burned (any burn, including but not limited to cigarette burns and burns from hot water), tortured (with or without physical harm such as being locked in a closet for several hours, tied up, left for a significant period of time without food or water, etc), multilated or otherwise physically abused in such a manner as to cause serious bodily harm, or any report of abuse that would be a felony under state and federal law."

5. Are there other allegations of Abuse/Neglect that require intervention? Yes

**Intake Supervisor's Decision** Screen In

**Provide Justification/Rationale for Screening and/or Override Recomendation**

**RD Agreed Supervisor Decision :**

DHS
278740