**From:** Shirim Nothenberg [mailto:SNothenberg@ChildrensRights.Org]
**Sent:** Wednesday, August 04, 2010 1:35 PM
**To:** Rachal, Kenya Key; Fortenberry, Rusty
**Cc:** Jessica Polansky
**Subject:**

Rusty and Kenya,

I just wanted to bring to your attention an issue I raised with Grace regarding her recent report on Bridge Plan compliance. In that report she correctly noted that the Bridge Plan provides that if Plaintiffs deem Defendants to have substantially complied with its terms, the Parties shall immediately thereafter negotiate a Period 3 Implementation Plan. The report, however, neglects to mention that pursuant to paragraph 11 of the Bridge Plan, Plaintiffs are entitled at any time directly following the end of the Bridge Plan Period to seek a judicial finding of noncompliance with Period 2 requirements. To avoid any confusion and for the sake of clarity, we have asked that this point be clarified in the upcoming report.



Shirim Nothenberg
Staff Attorney
Children's Rights
330 7th Avenue, Fourth Floor
New York, New York 10001
212 683-2210, ext. 319
212 683-4015 (fax)
snothenberg@childrensrights.org

http://www.childrensrights.org

CONFIDENTIALITY NOTE: This email has been sent from an attorney at a legal organization. It may contain privileged and confidential information intended for the use of person(s) named above. If you are not an intended recipient, you are hereby notified that any dissemination or duplication of the email is prohibited, and that there shall be no waiver of any privilege or confidence by your receipt of this transmission. If you have received this email in error, please notify us a by toll-free call to (888) 283-2210 and immediately delete this email. Thank you.



EXHIBIT B



Marcia Robinson Lowry
President &
Executive Director

Board of Directors
Alan C. Myers
Chair
Robin L. Dahlberg
Treasurer
Anne Strickland Squadron
Secretary
Richard D. Emery
Lawrence J. Fox
Daniel H. Galpern
Mark Lopez
Howard M. Maisel
Jordan Seaman
James Stanton

November 30, 2010

**VIA ELECTRONIC MAIL**

Dewitt L. ("Rusty") Fortenberry, Jr.
Baker, Donelson, Bearman,
Caldwell & Berkowitz PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi 39211

    Re:    *Olivia Y. et al. v. Barbour et al.*

Dear Rusty,

    In response to your letter dated November 23, 2010, Plaintiffs write to inform you that we do not find Defendants in substantial compliance with the provisions of the June 10, 2010 Agreed Order. Plaintiffs' determination is based upon the Court Monitor's November 23, 2010 Report to the Court, finding Defendants to have only partially complied with multiple provisions of the Agreed Order. As described below, such partial compliance severely impairs the purpose of the requirements of the Agreed Order.

- **Provision 7.a:** This provision was intended to provide the Parties with reliable information about child wellbeing that has been unavailable because of the well-documented problems with MACWIS. This provision was intended to require Defendants to collect critical information so as to determine the most basic, yet unanswered question: how are children doing in DFCS custody. While Defendants did produce a number of reports, as reported by the Monitor, flaws in the validation process preclude any assurance that this data accurately reflects children's circumstances. Accordingly, we believe the purpose of this provision was not realized.



EXHIBIT
C

330 Seventh Avenue, 4th Floor • New York, NY 10001
Tel: 212-683-2210 • Fax: 212-683-4015 • info@childrensrights.org • www.childrensrights.org

*Dewitt L. ("Rusty") Fortenberry, Jr.*
*November 30, 2010*
*Page 2 of 4*

- **Provision 7.b.iii:** Having reviewed previous reports from maltreatment in care investigations, Plaintiffs became increasingly alarmed that the poor quality of those investigations was placing Plaintiff children at risk of harm. Hence, in the Bridge Plan we required immediate training on this issue. While Defendants did a commendable job in undertaking such a vast training of all workers, as made clear by the Monitor, those engaged in the investigation of the maltreatment of Plaintiff children have not all received the very training DFCS has deemed relevant to properly undertake those investigations. As noted by the Monitor, over one-third of the 29 DFCS employees who conducted investigations of maltreatment reports regarding children in out-of-home placements between March 1 and September 1, 2010, had not received the required training. (Monitor's Report 33.) Thus, from Plaintiffs perspective, the purpose of this provision has not been realized.

- **Provision 7.c:** After much discussion with Defendants, Plaintiffs understand that the Practice Guides are the road map for case practice in the field. It therefore became imperative that they not only be completed, but completed in a manner consistent with the requirements of the Settlement Agreement. In the Monitor's report on compliance with the Period Two requirements, she found that six practice guides had been completed, but that they did not comport with the Settlement Agreement. Defendants were given the opportunity during the Bridge Period to address that deficiency, but failed to do so. Moreover, despite being on notice that the Practice Guides did not comport with the terms of the Settlement Agreement, the two practice guides actually drafted during the Bridge Period were similarly flawed. Plaintiffs bargained for practice guides and case practice that would comport with the Settlement Agreement. Defendants have willingly agreed, not once, but a total of three separate times, to draft guidelines for case practice that comport with the Settlement Agreement. They have failed to do so, each time.

- **Provision 7.d.ii-iii:** Again, as with the Practice Guides, the Monitor determined that portions of the Policy Manual required to be finalized during the Bridge Period remain in need of revision and strengthening. The Bridge Period was not intended to be a further period to submit "drafts" or incomplete work product. The purpose of the provision is to provide caseworkers in the field with final and accurate case practice guidelines that comport with the Settlement Agreement provisions that Defendants agreed to abide by to protect Plaintiff foster children. This purpose has, yet again, not been realized.

- **Provision 7.f:** A core concern set forth by Plaintiffs in the Complaint was that foster children were being placed in unsafe, unlicensed, unscreened foster homes. The Settlement Agreement therefore required Defendants to draft and begin to implement a

plan for the speedy licensing of all current, unlicensed caregivers. For two years, Defendants failed to meet this requirement. In light of the very slow pace of reform and the well-documented capacity deficits at DFCS, the Bridge Plan required a modest inroad on that requirement: that Defendants identify unlicensed foster homes, and then license only a small fraction of those homes – those in which DFCS had *substantiated* a report that a foster child had been maltreated in the home. In light of the many times the Monitor has complained of the poor placement data in MACWIS, the most efficient manner of collecting reliable information of all unlicensed homes would appear to be asking each caseworker to simply report on the children on his or her caseload residing in an unlicensed placement. Defendants instead chose to rely upon known faulty MACWIS data, thereby generating an inaccurate list of unlicensed placements. Without a reliable list of which homes are unlicensed, accurately determining which unlicensed homes have had a substantiated report of abuse is impossible. Moreover, the expedited licensure process that Defendants drafted is also in need of revision. Thus, Plaintiff Children may remain at risk of harm and the purpose of this provision remains largely unsatisfied.

- **Provision 7.g:** Despite the obligation under the Settlement Agreement to provide mental health and therapeutic services to foster children in need of such services, during the course of the second implementation period, Defendants terminated such services to some foster children receiving care from service providers operating under an intensive in-home services contract. To ensure that Plaintiff Children receive the benefits to which they are entitled under the Settlement Agreement, the Bridge Plan required Defendants to identify those foster children whose therapeutic services were terminated for non-therapeutic reasons, and to provide all such children with such care. Having failed to provide the Monitor with information necessary for her to make findings regarding this provision, there is no basis upon which Plaintiffs can find that Defendants substantially complied.

- **Provision 7.h:** Competent staff with reasonable caseloads is the lynchpin of any reform effort. Without such staffing, reform simply cannot take place. Thus, the First Year Implementation Plan required that Defendants develop and begin implementing a detailed recruitment and retention plan. The Monitor found that Defendants failed to do so in the first year, and found the plan provided by Defendants in the second year seriously deficient. Therefore, Defendants were given yet a third opportunity to develop such a plan. Despite the fact that a plan for recruitment is the bedrock of the reform effort, the Monitor found that Defendants again failed to meet this requirement. The Monitor noted that Defendants "recognize the limitations in the workforce development plan . . . [and] anticipate that these shortcomings will be addressed." (Report at 61-62.) Yet Defendants were advised of shortcomings after the second implementation period, and were given the

*Dewitt L. ("Rusty") Fortenberry, Jr.*
*November 30, 2010*
*Page 4 of 4*

opportunity to revise the plan during the Bridge Period. Defendants' continuing failure to properly create a foundational element of the reform effort undermines the purpose of this provision.

In sum, while recognizing Defendants expended much effort during the Bridge Period, Plaintiffs nonetheless find Defendants have failed to substantially comply with the terms of the Agreed Order.

Sincerely,

Shirim Nothenberg
CHILDREN'S RIGHTS

cc: Grace Lopes
Harold Pizzetta
Lucien Smith
Don Thompson
Lori Woodruff
Jerry Milner
Kenya Rachal