# Exhibit E

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 Implementation Plan ("IP") at I.1.a.<br><br>Administration and Management Implementation Steps<br><br>Agency Leadership and Administration | YR-2 IP, at 1 | With the exception of the MACWIS Director position, by September 1, 2009, DFCS will have filled all unit director positions with qualified individuals.  By November 1, 2009, DFCS will hire a qualified MACWIS Director. | 9/1/2009<br><br>11/1/09 | When Due:  September 1, 2009 – November 1, 2009<br>Who's Responsible: Mike Gallarno<br>Status:  Cindy Greer, MACWIS Dir. started work on September 1, 2009<br>1/21/10:  Rob Hamrick filled the Eval/Monitor DDII PIN 10/1/09 and Alice Adair will fill the FCR Div. Dir II PIN, left vacant by Rob's move once a hire date is confirmed by HR.  The Primary Prevention vacancy has been filled by Lilly Young and the Tertiary Prevention vacancy has been filled by Sondra McClendon.  With Adair's hire, all Unit Directors' positions will be filled. | Defendants filled the MACWIS Director position on a timely basis; however, based on defendants' January 27, 2010 report, it does not appear that the Evaluation and Monitoring, Primary Prevention and Tertiary Prevention vacancies were filled on a timely basis.The Monitor will confirm the hire dates, and report, as appropriate.  Defendants should indicate by February 17, 2010, the date by which the candidate for the Foster Care Review  Director position will have a confirmed hire date.<br><br>Interviews with DFCS state-office managers indicate that many do not have a clear understanding of their respective roles and responsibilities and are not accountable to higher-level managers for their performance in terms of defined outcomes.  Some of this may be a result of the recent restructuring; however, there is an immediate need to clearly define the roles and job duties of all DFCS state-office managers, improve management and accountability systems, and develop a strategic reform plan. |
| Settlement Agreement and Reform Plan at II.A.2.a.<br><br>Administration and Management Standards<br><br>Human Resources Management<br><br>Workforce | 4 | By the end of implementation Period 2:<br>10) At least 50% of DFCS caseworkers shall carry a caseload that does not exceed Plan caseload requirements.  No more than 20% of caseworkers shall carry a caseload exceeding twice the Plan caseload requirements.<br>11) No more than 20% of supervisors who are responsible for supervising DFCS caseworkers shall be responsible for supervising more than five caseworkers.<br>12) Supervisors will no longer be assigned primary responsibility for providing direct casework for any cases, unless under the extenuating circumstances exception as described above. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Year-2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | 10) & 11):  Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  As agreed, the report is due to Monitor and plaintiffs' counsel by February 17, 2010.<br><br>10), 11) & 12):  MACWIS does not collect data and report on caseloads as required by the Settlement Agreement.  The parties agreed in principle to modify the caseload requirements during Period 1.  Defendants submitted an initial draft of a modification proposal and  thereafter agreed to submit a modified proposal.  Defendants stated during the February 3, 2010 parties' meeting that the revised caseload modification proposal would be provided to plaintiffs' counsel and to the Monitor by February 26, 2010. Once finalized and approved by the Court, the caseload modifications will require changes to MACWIS in terms of case tracking and reporting.<br><br>As a matter of law, defendants are currently responsible for meeting the caseload requirements as measured by the caseload standards in the Settlement Agreement; however, as explained in the Monitor's June 5, 2009 Report, case assignment practices do not conform with the Settlement Agreement's requirements and case assignments are neither tracked nor reported on in light of the requirements. The requirements do not mirror defendants' current business practices and should be modified.  This is a matter that has been pending for a significant time period and it warrants resolution on an  accelerated timetable.<br><br>The Monitor has been collecting independent data on line staff and supervisory caseloads and will report on her findings at the end of Period 2.  Defendants report significant progress in hiring line staff during the course of Period 2; however, critical caseworker vacancies remain in certain counties.  The Monitor is monitoring staffing levels and will report, as required, at the end of Period 2.<br><br>Defendants did not have the infrastructure in place to fully support the staff that have been hired, and as a result, there have been delays that were not *deminimis* in training new staff, and at least in some instances, providing staff with minimally adequate office space.  DFCS managers report that many of the new hires have very limited, if any, social work experience and those with "related degrees" generally are ill-equipped to start practicing social work.  Supervisors and newly hired workers report that new workers have substantial difficulty learning MACWIS and are not prepared to use it following the initial pre-service training. Defendants report that they are working to improve the quality of MACWIS training.<br><br>As of January 20, 2010, defendants reported that a substantial number of funded caseworker positions (140 out of 773 or roughly 18 percent of the authorized workforce) were vacant.  Regional and county managers report that they have not received authorization recently to hire candidates who have been selected to fill vacant positions.  However, MDHS/DFCS management reports that a hiring freeze is not in effect.  The Monitor will reconcile these accounts and report as appropriate at or before the end of Period 2. |

*Olivia Y. v. Barbour:*  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at I.2.a.<br><br>Administration and Management<br><br>Implementation Steps<br><br>Human Resources Management<br><br>Workforce | YR-2 IP, at 3 | By September 1, 2009, Defendants shall develop and begin implementing a written Workforce Plan to recruit and retain sufficient DFCS professional and support staff as necessary to comply with the caseload requirements specified in section II.A.2.a of the Settlement Agreement.  The Workforce Plan shall identify the specific steps, strategies, financial resources, and short- and long-term staffing goals with related timeframes that are necessary to meet the staffing requirements of the Settlement Agreement. | 9/1/2009 | When Due:  September 1, 2009<br>Who's Responsible: Lori Woodruff, Mary Ann Everett, Carolyn Townes<br>Status:  1/19/10 – Workforce Plan for FY has been submitted to Monitor Grace Lopes. | The Workforce Plan was not developed and implemented by September 1, 2009, as required..  A "Draft" Plan that states it was revised on January 20, 2010, was submitted to the Monitor on January 22, 2010. The submission does not meet Period-2 requirements for the following reasons: 1) it does not address the number of professional and support staff necessary to meet caseload requirements; and, 2) it does not correlate timeframes with specific steps, strategies, financial resources and short- and long-term staffing goals, as required.  Moreover, the draft appears to rely on stale information related to recruitment and retention (e.g., it relies on information obtained from a "poll" of workers hired in 2008 and retention data from 2007 and 2008) of caseworkers and is silent with respect to supervisory and support staff.<br><br>Although certain recruitment and retention strategies are identified in the draft, they are not correlated to goals and action steps and thus do not suggest a viable plan is being developed.  For example, the draft refers to the unfunded career ladder as a current retention method.  Although approved by the State Personnel Board ("SPB") in 2008, the career ladder was not funded.  A viable plan would address why funding was not provided and outline strategies and related action steps to fund the career ladder that correspond to specific time periods.  Alternative strategies to substitute for the incentive provided by the career ladder, given the reality that it has not been funded, would also be described.  Additionally, and of equal concern, the draft states the agency "feels very confident in its goal to fill the remaining vacant and frontline supervisor positions."  However, the draft reports that there are a combined total of 150 vacant frontline and supervisory positions for the fiscal year ending June 20, 2010, and it ignores the fact that DFCS does not have the infrastructure to support the hiring of 150 new professional staff in less than six months.  A viable recruitment and retention plan would identify and consider the infrastructure issues and present realistic hiring goals that are informed by an infrastructure development strategy.  Indeed, retention goals are undermined by insufficiencies in infrastructure that lead to some of the challenges DFCS has experienced recently, including delays in delivery of pre-service training and or insufficient office space for newly hired staff. |
| Period 2 IP at I.2.b.<br><br>Administration and Management<br><br>Implementation Steps<br><br>Human Resources Management<br><br>Supervisor Access | YR-2 IP, at 3 | By July 1, 2009, caseworkers shall have access to a supervisor by telephone 24 hours a day. | 7/1/2009 | When Due:  July 1, 2009<br>Who's Responsible: Jenni Murray<br>Status:  Caseworkers have access. On-call 24-hour basis requirement is listed in the first paragraph of the ASWS job description. | As a matter of practice, supervisors are generally available to caseworkers on a 24-hour basis.  However, staffing limitations and high caseloads in some counties raise concerns about the quality of such "access" that warrant further review.  The Monitor will report more fully on this matter at the end of Period 2. |
| Period 2 IP at I.2.c.<br><br>Administration and Management<br><br>Implementation Steps<br><br>Human Resources Management<br><br>Worker and Supervisor Qualifications | YR-2 IP, at 5 | Defendants shall develop and begin to implement a plan with timeframes and specific action steps for bringing its current staff into compliance with the worker and supervisor qualification requirements mandated by section II.A.2.b of the Settlement Agreement and by COA standards, including PA-AS 13.02; PA-CPS 14.02; PA-AS 13.01; PA-CPS 14.01; PA-FC 19.01; PA-FC 19.05; and PA-CPS 10.02.  Such plan shall be developed by September 1, 2009. | 9/1/2009 | When Due:  September 1, 2009<br>Who's Responsible: Lori Woodruff<br>Status:  7/26/09 COA production:  CPS 14.01 & 14.02 "In Compliance" with COA std<br>1/19/10 – Plan provided to Monitor Grace Lopes. | The Worker and Supervisor Qualification Requirement Plan was not developed and implemented by September 1, 2009, as required.  A Plan was submitted to the Monitor on January 22, 2010. The submission does not meet Period-2 requirements because it does provide timeframes and specific action steps for bringing the current staff into compliance with the qualification requirements of the Settlement Agreement.  For example, the submission lists 13 bulleted items under the title "Workforce Development Plans" and only four of the items appear to address general strategies for bringing the current staff into compliance with the qualification requirements.  The four relevant items are:  1) "continue professional enhancement program-reimburse costs of education," 2) "offer more training opportunities to current staff," 3) "enhance training to supervisors and provide strengthened ongoing training to supervisors," and 4) "continue partnerships/contractual agreements with universities."  The required action steps and timelines related to these general strategies are not provided in the Plan.  Additionally, the draft states: "move away from hiring of related degrees" as an apparent goal, but it does not list the action steps necessary to accomplish the goal.  Moreover, ongoing monitoring indicates that there is significant confusion among current DFCS staff about whether they will be fired if they do not meet the qualification requirements.  This has implications with respect to the retention of seasoned staff which need to be addressed. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.A.2.c.7.<br><br>Administration and Management Standards<br><br>Human Resources Management<br><br>Training | 6 | By the end of implementation Period 2:<br>7) All caseworkers shall receive a minimum of 40 hours of ongoing in-service training each year, and all supervisors shall receive a minimum of 24 hours of ongoing in-service training each year. | End of Period 2 | Defendants' January 27, 2010 Report did not address these specific Period-2 requirements in the Settlement Agreement; however, the report did address the identical requirement in the Period 2 IP. The information presented in the defendants' report does not squarely address all specific requirements for the in-service training program. See below entry for Period 2 IP at I.2.d.5. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| Period 2 IP at I.2.d.<br><br>Administration and Management Implementation Steps<br><br>Human Resources Management<br><br>Training | YR-2 IP, at 5-6 | 1) By September 1, 2009, DFCS shall develop and begin implementing a written plan to provide comprehensive child welfare pre-service and in-service training to all caseworkers and supervisors in accordance with the training requirements set forth in section II.A.2.c of the Settlement Agreement. The training plan shall include action steps and timelines to hire and train staff, update the training curriculum, and to procure all additional resources needed to operate a training unit that delivers the training required by the Settlement Agreement. | 9/1/2009 | When Due:  September 1, 2009<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Denise Rouse<br>1/13/10 Denise:  A written plan for the training unit has been prepared ("2010 Training Unit Plan, DFCS") dated 12/14/09. This plan has been forwarded to Monitor Grace Lopes. | The Training Plan was not developed and implemented by September 1, 2009, as required. A Plan was submitted to the Monitor on January 22, 2010. The submission does not meet Period-2 requirements because it does not provide the required action steps and timelines to hire and train staff, update the curriculum and procure additional resources to operate the Training Unit in accordance with the Settlement Agreement's requirements. For example, the following, among other long-term goals, are presented in defendants' submission: "Deliver 40 hours of in-service training to county workers and 24 hours to ASWSs annually" and "Training coordinators will be skilled trainers who will inspire workers with enthusiasm and the desire to do the best job they can in working with families and children." There are no action steps or timelines associated with these goals or any timelines presented that address hiring and training staff, updating the curriculum and procuring additional resources to operate the Training Unit in accordance with the Settlement Agreement's requirements. The submission lists other short-and-long term goals in a similar fashion and it describes various responsibilities of the Training Unit (some of which are unrelated to the comprehensive pre-service and in-service training program). |
|  |  | 2) DFCS will have revised the training curriculum to reflect the updated Practice Guide and Policy Manual. | End of Period 2 | When Due:  September 1, 2009<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Denise Rouse.<br>Status:  Curriculum is being updated as new policy is issued and new curriculum is being developed on an ongoing basis.<br>1/14/10 Jenni:  Policy Unit is working to reformat the policy manual and incorporate all of needed changes from COA Stds., lawsuit items and practice model.<br>1/13/10 Denise – Curriculum has been updated to reflect the new policies that have been distributed (ie., Wk 1 has been revised to include a new module addressing cultural diversity and revisions made that include Miss. Central Intake). Every trainer received a new Facilitator's Manual for Wk. 1 on 1/7/10. The Center for the Support of Families staff is working with the Training Unit to strengthen the New Practice Model components in the current curriculum. | The Monitor will report on this matter at the end of Period 2, as required. It is unlikely the training curriculum will be revised fully by the end of Period 2 to reflect the updated practice guides and policy manual because defendants have reported that although some revisions are complete, all necessary revisions to the manual will not be completed until the end of Period 2. |

*Olivia Y. v. Barbour:*  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | 3) No supervisory personnel shall be detailed to the training unit to  provide training. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Denise Rouse<br>Status:  1/13/10 Denise:  Training Policy has been submitted to Jenni Murray. Policy includes "No supervisory personnel are to be detailed to the Training Unit to provide training." Even before official policy<br>language, supervisory personnel had not been detailed to provide training since early 2008. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| | | 4) All new caseworkers and supervisors will complete their service training consistent with the Settlement Agreement requirements before they assume their respective responsibilities for carrying cases and supervising. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Denise Rouse.<br>Status:  1/13/10 Denise:  New caseworkers are required to successfully complete CWPD prior to assuming caseworker duties.  This requirement has been the practice during 2009 and is addressed in the new Training Unit Policy that has been submitted for review to the steering committee. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required.  Preliminary evidence indicates caseworkers are not assigned to carry their own cases until they receive pre-service training; however, in some counties, newly hired caseworkers are assigned to perform specified tasks on cases that are assigned to other workers before they have received pre-service training and at least some of these assignments may be inappropriate (i.e., untrained workers report being assigned to conduct face-to-face visits with youth in their placements or elsewhere). |
| | | 5) All caseworkers shall receive a minimum of 40 hours of ongoing in- service training each year, and all supervisors shall receive a minimum of  24 hours of ongoing in-service training each year. | End of Period 2 | When Due:  End of Period II<br> Who's Responsible: Denise Rouse.<br> Status:  1/20/10:  All employees are receiving pre- and in-service training. The Training Unit is hiring additional trainers and when staffed, the Training Unit should be able to offer all in-service training in-house, instead of getting some of the in-service training from outside vendors. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| cont. | | 6) Defendants shall implement competency-based testing to assess  knowledge acquisition of newly hired staff following the completion of  pre-service training, including newly hired or newly promoted supervisors  following the completion of supervisory training.  Training credit shall only be given to those new hires who demonstrate sufficient knowledge  acquisition. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Denise Rouse.<br>Status: 1/13/10 Denise:  New hires and Supervisory Trainees are both tested. Only workers/supervisors who receive a score of 70 or higher receive Training Credit.  This requirement is addressed in the new Training Policy sent to the steering committee for review. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| | | 7) Defendants shall implement a system to track staff participation in all  required training. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Denise Rouse.<br>Status: 1/13/10 Denise:  Complete.  A manual tracking system is currently being used.  MACWIS requirements are complete.  Once deployed, this function will allow the Training Unit to record in MACWIS all  training sessions attended by DFCS staff. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.A.2.d.<br><br>Administration and Management Standards<br><br>Human Resources Management<br><br>Contract Agency Requirements | 6 | d. Contract Agency Requirements:<br> By the end of implementation Period 2:<br>In the event that private agencies provide protective, preventive, foster care, or adoption case work services under contract with DFCS, DFCS shall require the contract agencies to abide by all related terms of the Plan, including, but not limited to, provisions regarding training curricula, minimum training hours, and caseload standards. DFCS shall implement and maintain a performance-based contracting system to evaluate annually contract agency compliance with the terms of the Plan. DFCS shall take reasonable steps to ensure contract agency remediation of any identified deficiencies. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. In the interim, two matters warrant attention. First, a proposed modification to the training requirements applicable to DFCS private providers has not been finalized on a timely basis. Defendants should indicate by February 17, 2010, whether and if so when, they intend to submit a final proposal. Second, it appears the Period 2 IP modified the Settlement Agreement's requirement for defendants to implement and maintain a performance-based contracting system by the end of Period 2 because the Period 2 IP requires defendants to develop a plan for a performance-based contracting system by the end of Period 2. See below, Period 2 IP at I.2.e.1. The parties should clarify their intent regarding the apparent modification. |
| Period 2 IP at I.2.e.1.<br><br>Administration and Management Implementation Steps<br><br>Human Resources Management<br><br>Contract Agency Requirements | YR-2 IP, at 8 | 1) DFCS shall, in conjunction with a qualified independent consultant approved by the Monitor, begin developing a plan for a performance-based contracting system with the capacity to monitor and enforce contract performance on all related terms of the Settlement Agreement. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Bryan Rushing<br>Status: 1/20/10: Draft to be sent to Monitor Grace Lopes this week. | Defendants have developed at least two draft RFPs to hire the consultant to develop the requisite plan. The RFP has not yet been issued. A draft RFP, which was submitted to the Monitor on January 31, 2010, was withdrawn by the defendants on February 3, 2010. The deficiencies in the draft RFPs that defendants have submitted indicate there are significant shortcomings in the capacity of the DFCS contracting unit. As a threshold matter, these shortcomings will need to be addressed. |
| Settlement Agreement and Reform Plan at II.A.3.b. and c.<br><br>Administration and Management Standards<br><br>Performance and Quality Improvement | 7 | By the end of implementation Period 2:<br>b. DFCS shall implement and maintain a separate CQI system that can identify areas of needed improvement and require improvement plans in support of achieving performance targets, program goals, client satisfaction, and positive client outcomes. The CQI system shall include monitoring and evaluating the quality of social and human services provided by independent contractors and other provider organizations and ensuring contractor remediation of any identified deficiencies.<br>c. DFCS shall comply with the public child fatality reporting requirements of the Child Abuse Prevention Act, 42 U.S.C. § 5106a(b)(2)(A)(x). | End of Period 2 | b.) Defendants' January 27, 2010 Report did not address these specific Period 2 requirements in the Settlement Agreement; however, the report did address the virtually identical requirement in the Period 2 IP. See below entry for Period 2 IP at I.3.b.<br><br>c.) When Due: End of Period II<br>Who's Responsible: Kate McMillin<br>Status: 1/20/10: DFCS complies with these reporting requirements. | b.) A separate CQI system has not been implemented. CQI recommendations and draft plans were submitted to the Monitor on September 30, 2009 and January 27, 2010, but some of the plans appear, at least in certain respects, to be inconsistent with each other. Defendants report that they are working to finalize the plan for the CQI system.<br><br>The outline of the CQI recommendations in the Practice Model Report and in the related statewide concept paper represents a thoughtful and promising approach to the development of a viable CQI system; however, the approach only makes sense if the parties agree to modify the implementation scheme imposed by the Settlement Agreement. The Monitor will report in further detail on these matters at the end of Period 2, as required. During the February 3, 2010 parties' meeting, defendants agreed to provide an outline of the CQI plan that distinguishes between statewide CQI activities and CQI activities that defendants plan to conduct in the regions that will be implementing the practice model. It is the Monitor's understanding this outline will be submitted by February 17, 2010.<br><br>c.) The Monitor is evaluating defendants' performance and will report on this at the end of Period 2, as required. |

*Olivia Y. v. Barbour:*  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at I.3.a., b. and c.<br><br>Administration and Management Implementation Steps<br><br>Performance and Quality Improvement | YR-2 IP, at 9 | a. By September 30, 2009, Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan with specific steps and timeframes for the implementation of a separate continuous quality improvement ("CQI") system that meets COA standards and Settlement Agreement requirements. | 9/30/2009 | When Due:  September 30, 2009<br>Who's Responsible: Mike Gallarno<br>Status:  12/15/09 Mike:  Jerry Milner delivered with 9/30/09 deliverables but Mike Gallarno feels improvements needed.  Sent Jerry a Performance Measure Outline and Jerry has responded.  Mike will share info with Jim Mooney for feedback.<br>1/14/10 Mike:  Follow Up meeting with Jerry Milner held.  Discussed CQI needs in detail, including need for illustrated timeline and need for CQI activity in addition to FCP model roll-out statewide.  "CQI Concept Paper" and §V:  CQI Recommendations", "forwarded to Monitor Grace Lopes. | a.)  The complete plan was not implemented by September 30, 2009, as required.  Although there has been progress, as of February 3, 2010, the plan was not finalized.  See findings related to Settlement Agreement at II.A.3.b., above. |
| | | b. DFCS shall implement and maintain a separate CQI system that can identify areas of needed improvement and require improvement plans in support of achieving performance targets, program goals, client satisfaction, and positive client outcomes. The CQI system shall include monitoring and evaluating the quality of social and human services provided by independent contractors and other provider organizations and ensuring contractor remediation of any identified deficiencies. | End of Period 2 | When Due:  September 30, 2009<br>Who's Responsible: Mike Gallarno.<br>Status:  Rob Hamrick hired as Director of Monitor & Evaluation.  Program areas, including Performance Based Contracts, and Centralized Intake are being developed.  Rob will work with the Centralized Intake program to develop performance goals and teach them how to collect data, measure and report.  Meetings start January 2010. 1/20/10 Mike:  COA found PQI/CQI plan to be in substantial compliance.  It addresses deliverables to date. Unit began statewide in-service education program directed toward field staff.  Two regions set up meetings with field staff;  others set up ASWS meetings.  CQI requested that all RDs assist with field staff meetings for CQI intro. and requested that these include ALL employees, including clerical staff, since CQI is a comprehensive process.  Staffing is a challenge due to state budget situation.  The plan is to add at least 1 CQI personnel for each region.  The person, along with regional FCR will form the nucleus for a CQI team for each Region. Plan calls for eventual inclusion of community partners on CQI team for each Region.  This will contribute to transparency of DFCS work and offer opportunities for CQI process to have a positive impact on the community as well as the Agency, but all focused on improving services for the people we serve. | As noted above, a draft of a recommended CQI plan tied to practice model implementation was submitted on September 30, 2009, as part of the Practice Model Report.  Thereafter, on January 22, 2010, defendants submitted excerpts from the September 30, 2009 submission, draft case review instruments, a document titled FY 2009 Continuous Quality Improvement Operational Plan - Draft (noting on the cover page that  it had not been approved by Mike Gallarno), and a document titled, Performance and Quality Assurance Operational Plan SFY 2010, to the Monitor.  Some of these documents are inconsistent with each other.  On January 28, 2010, defendants, through Jerry Milner, submitted a concept paper to the Monitor which outlines statewide CQI activities that could occur coincident with the regional implementation of the practice model.  Draft case review instruments were submitted to the Monitor by defendants, through Jerry Milner, on January 12, 2010.<br><br>Defendants have made progress; however, it is unlikely that the required CQI system can be implemented before the end of Period 2, as required.  Even assuming the parties can agree promptly on the implementation schedule related to the practice model/CQI roll out, more work will be needed to finalize the design of a viable CQI program that meets the Settlement Agreement's substantive requirements.  If plans for the CQI program can be finalized in the near term, successful implementation will be contingent upon hiring and training a sufficient number of CQI staff members with the requisite quantitative and qualitative analytical skills and experience to implement the CQI program.<br><br>Defendants' January 27, 2010 report states that COA found the PQI/CQI plan (one of the plans referred to in the preceding paragraph) to be in substantial compliance.  COA's finding was of course based on the COA standards that are incorporated into the Settlement Agreement and not based on this specific substantive Period-2 requirement. If defendants can make these types of distinctions in the future, it might be helpful in minimizing staff confusion about substantive requirements that implicate COA standards. |

6

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | c. Defendants shall, in conjunction with a qualified independent consultant approved by the Monitor, develop and begin implementing a CQI assessment tool that measures compliance with the Settlement Agreement's management and foster care service standards at sections II.A.1-7 and II.B.1-14, respectively. | End of Period 2 | When Due:  September 30, 2009_ Who's Responsible: Mike Gallarno and Rob Hamrick Status:  12/15/09 Mike:  In progress.  Working with Jerry Milner. 1/14/10 Mike:  FCR activity is current foundation for statewide activity.  Gallarno & Milner met on 1/8/10 and received draft of comprehensive draft CQI instrument which incorporates CFSR Family Center Practice Model, and OY terms. The instrument will be discussed/reviewed with the Court Monitor.  Sought and received feedback from Jim Mooney re development of the Assessment tool and CQI Unit. The most recent call covered COA requirements for sample size for CQI monitoring of caseload/other measurements. | Defendants submitted draft case review instruments to the Monitor on January 12 and  22, 2010.  These drafts were developed by CSF and discussed recently with COA representatives and with the Monitor.  On January 29, 2010, the Monitor advised the defendants and Mr. Milner that it would be premature to comment on the draft instruments because they are part of a CQI implementation design that is at odds with the requirements of the Settlement Agreement.  The Monitor indicated that she would encourage the parties to discuss and resolve these issues during the February 2 and 3 parties meetings.  The Monitor did so and discussions related to the resolution of this matter are ongoing. |
| Period 2 IP at I.4.a.  Administration and Management Implementation Steps  Legal and Regulatory Compliance | YR-2 IP, at 11 | a. DFCS shall comply with the public child fatality reporting requirements of the Child Abuse Prevention Act, 42 U.S.C. § 5106a(b)(2)(A)(x). | End of Period 2 | When Due:  End of Period II Who's Responsible: Kate McMillin Status:  1/20/10:  DFCS complies with these reporting requirements. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| Settlement Agreement and Reform Plan at II.A.5.d. and e.  Administration and Management Standards  Information Management and Use | 8 | By the end of implementation Period 2: d. DFCS county staff shall have access to a MACWIS database of the placement resources available for placement statewide at any given time.  The database shall permit staff to determine whether a given placement is suitable for a given child needing placement by allowing access to current caretaker placement information, including capacity limitations, current census, the placement's suitability for children by age, sex, and special needs, and any related licensing and maltreatment investigations information. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | A database that meets these requirements does not currently exist.  The Monitor will report fully on defendants' progress at the end of Period 2, as required. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | e. DFCS shall take reasonable steps to ensure data integrity and user accountability in MACWIS. The system shall have the necessary controls to decrease the risk of duplication of data and to reduce the risk of incorrect or invalid data. The system shall provide a visible trail to the database administrators of all information entered, added, deleted, or modified, and shall have necessary security to protect data integrity. This system shall be audited at least annually to ensure the accuracy and validity of the data in the system. Necessary actions identified by the MACWIS data accuracy and validity audit to correct MACWIS data errors shall be implemented annually. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| Period 2 IP at I.5.a.-d.<br><br>Administration and Management Implementation Steps<br><br>Information Management and Use | YR-2 IP, at 12 | a. By July 1, 2009, DFCS shall provide to all county agency staff with child welfare responsibilities access to basic computer services, consisting of access to MACWIS, word processing, and electronic mail. | 7/1/2009 | When Due: July 1, 2009<br>Who's Responsible: Cindy Greer<br>Status: Completed. Some staff were sharing terminals. DFCS acquired 50 terminals and all have been configured and are presently being installed. Installation will be completed in January 2010. This will eliminate terminal sharing. | Computer equipment is generally accessible to staff, although the inventory in some counties is dated and in need of replacement. Staff report substantial improvement in the quality and timeliness of support they receive from the HELP desk. However, there are reported limitations in access to MACWIS itself that may raise systemic concerns. Supervisory and line staff uniformly report difficulty getting onto the system, maintaining connectivity and/or, at times, being able to save data entered into electronic case records. The Monitor is assessing the magnitude of this problem and expects to report in further detail on these matters at the end of Period 2. |
| | | b. By November 1, 2009 and by April 30, 2010, DFCS will verify MACWIS data to identify the number of children in custody, face to face contacts, caseloads, timeliness of investigations, and placements. | 11/1/09 and 4/30/09 | When Due: November 1, 2009<br>Who's Responsible: Carolyn Gremillion, Jeff Wedgeworth & Linda Millsap<br>Status: 1/20/10: Completed 11/1/09 | Based on interviews with MDHS/DFCS managers and supervisory staff, there appear to be significant limitations in the methodology used to verify the targeted data. For example, the reported methodology did not identify and resolve logical inconsistencies in the data nor independently sample the data to determine accuracy through the various stages of the data collection, entry and coding processes. Defendants should identify the underlying data that was verified, and submit all reports related to the verification process to the Monitor as soon as possible, and in any event by no later than March 1, 2010. The Monitor recommends resolution of these methodological concerns before defendants conduct the second set of required Period 2 verification activities. |

*Olivia Y. v. Barbour:*  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| cont. | | c. DFCS shall issue a RFP for the comprehensive analysis of the MACWIS system and its ability to perform the computer functions required by section II.A.5.a of the Settlement Agreement and for recommendations of remedial efforts necessary to enable MACWIS to perform those Settlement Agreement requirements.  DFCS shall undertake all reasonable efforts to expeditiously issue such RFP, which shall issue by September 1, 2009. | 9/1/2009 | When Due:  September 1, 2009<br>Who's Responsible: Mike Gallarno & Cindy Greer<br>Status:  12/15/09 Mike:  Draft prepared June 2009.  Jazo recommended delay for 2 years. Result:  Clarification needed. Don Thompson sent SACWIS letter asking about alternatives & detail.  Response in 10/09.  Plan to RFP ASAP but funding is a challenge. DFCS requested assistance from Pacific Health Policy Group.  They worked on Medicaid in the Billy A suit -- on definitions and business requirements.  Looking to them for gratis ideas.  12/09 applied to National Resource Center (Child Child Welfare Data & Tech) for tech assistance<br>1/14/10 Cindy:  RFP revamp in progress and it will include SACWIS compliance requirements in which federal match funds would be received.  Conference call with NRC is scheduled for 1/20/10.<br>1/14/10 Mike:  Draft of Alternative Analysis RFP should be available to share with Monitor Grace Lopes by 2/1/10.  Plan is to proceed with release of RFP and receive bids to see how much this step will cost.  If we can fund it at the bid levels received, we'll move ahead.  If cost is prohibitive due to budget constraints then we'll be ale to quantify it and have objective info to guide us as we seek the funding. | The RFP was not issued, as required, and remains in draft form.  Based on the chronology reported by defendants, it does not appear that all reasonable efforts to expeditiously issue the required RFP were  undertaken.  The Monitor requests that defendants clarify what is intended by the "alternative analysis RFP" referred to in defendants' January 27, 2010 report.  The draft of the "alternative analysis RFP" was not submitted to the Monitor on February 1, 2010 as defendants' January 27, 2010 report anticipated.  On February 3, 2010, the MACWIS Director reported that the draft RFP was 98 percent complete and that the expectation was that it would be forwarded to the Monitor within two weeks. |
| | | d. DFCS shall execute a contract pursuant to the RFP.  Such contract shall require that the contracting agent provide the final MACWIS assessment and recommendations no later than 12 calendar months from the date of contract. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Mike Gallarno & Cindy Greer<br>Status:  See above | As of February 7, 2010, the RFP for the required contract was not issued. |
| Period 2 IP at I.6.a.<br><br>Administration and Management Implementation Steps<br><br>Case Recordings and Information | YR-2 IP, at 12 | a. Defendants shall implement a system to regularly review whether DFCS child welfare case records are current, complete, made by the appropriate caseworker, signed and dated by the person who provided the service, and signed and dated by supervisors, where appropriate, in accordance with federal and state law and regulations. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Christine Townsend<br>Status: | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| Period 2 IP at I.7.a. and b.<br><br>Administration and Management Implementation Steps<br><br>Financial Management | YR-2 IP, at 16 | a. By January 1, 2010, Defendants shall contract for an external assessment, to be conducted by a qualified independent consultant, of actual and anticipated federal funding levels, and for the development of a plan to establish the resources and infrastructure necessary to maximize the amount of federal funds received by the State.  The selection of this qualified independent consultant shall be subject to approval by the Monitor. | 1/1/2010 | When Due:  January 1, 2010<br>Who's Responsible: Bryan. Rushing<br>Status:  RFP ran November, 2009.  Only one (1) vendor submitted a proposal.  Revised RFP drafted.  Comments received from Plaintiffs and Monitor.  Revisions were made.  Draft to be sent to Monitor Grace Lopes this week. | The contract for the required external assessment was not finalized by January 1, 2010, as required.  As of February 7, 2010, an RFP for a contract that meets the requirements of the Settlement Agreement was not issued.  A substantially deficient draft RFP was submitted to the Monitor and counsel for plaintiffs for comment on December 2, 2009.  Plaintiffs submitted comments on the draft on December 9, 2010 and the Monitor commented on the draft on December 10, 2009. Thereafter, defendants submitted a revised draft to the Monitor on January 31, 2010; the revised draft was withdrawn by the defendants on February 3, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | b. Funds realized as a result of revenue maximization activities shall not supplant appropriated state funds but shall be used in furtherance of the reforms and outcome measures provided for herein and to improve child welfare services. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | The revenue maximization activities resulting from the required assessment have not been undertaken, and it is unlikely such activities can be undertaken before the end of Period 2 because an RFP for the required contract for the assessment was not issued as of February 7, 2010. |
| Period 2 IP at II.1.  Foster Care Services Assessment and Implementation Steps  Policy and Practice Guide | YR-2 IP, at 21 | Defendants shall revise DFCS policies and practice guides as necessary to reflect the COA foster care services standards and the requirements set forth in Section II.B of the Settlement Agreement, and identify any related training needs. | End of Period 2 | When Due: End of Period II Who's Responsible: Jenni Murray Status: 10/20/09 Lori: Practice Guides developed; Completed 9/30/09. Will be updated as needed. | Defendants have stated that they expect the required policy manual revisions will be completed by the end of Period 2. Practice Guides related to the Practice Model were developed by CSF and submitted in the appendix to the September 30, 2009 Practice Model Report. |
| Period 2 IP at II.2.a.-d.  Foster Care Services Assessment and Implementation Steps  Foster Care Assessments | YR-2 IP, at 21-22 | Defendants shall conduct Foster Care Services Assessments in conjunction with a qualified independent consultant approved by the Monitor. The following Foster Care Services Assessments will be completed by October 1, 2009: a. A reunification services needs assessment; b. A service provider needs assessment with the purpose of identifying available medical, dental, and mental health services and gaps in services; c. An assessment of the quality and array of independent living services available to foster children ages 14-20; and d. A recruitment and retention assessment to determine the need for additional foster care support services. | 10/1/2009 | When Due: October 1, 2009 Who's Responsible: Jerry Milner / CSF Status: Foster Care Service Assessment Final Report produced 10/13/09. | The required assessments were submitted by defendants to the Monitor and plaintiffs' counsel on October 14, 2009 in final report form. The report, dated October 13, 2009, was prepared by CSF. The assessment identified many serious systemic issues, which - as a threshold matter - require substantial strategic planning and capacity-building to address effectively. The Monitor will report more fully on this matter at the end of Period 2. |
| Period 2 IP at II.  Foster Care Services Assessment and Implementation Steps  Foster Care Assessments | YR-2 IP, at 22 | The following Foster Care Services Assessments will be completed by January 1, 2010: e. A termination of parental rights ("TPR") assessment for the purposes of identifying those children who have been in custody more than 15 of the previous 22 months and for whom DFCS has not filed a TPR petition or documented an available exception under the federal Adoption and Safe Families Act ("ASFA") as required; | 1/1/2010 | When Due: January 1, 2010 Who's Responsible: Jerry Milner / CSF Status: Final report delivered December 31, 2009 | The required assessment was completed on a timely basis by CSF and submitted in final report form to the Monitor and plaintiffs' counsel on December 31, 2009. The Monitor will report more fully on the assessment at the end of Period 2. |
| | | f. A child safety assessment of DFCS practice for prioritizing, screening, assessing, and investigating reports of maltreatment of children to determine the extent to which DFCS investigations and decisions are based on a full and systematic evaluation of the factors that may place a child at risk; and | 1/1/2010 | When Due: January 1, 2010 Who's Responsible: Jerry Milner / CSF Status: Report delivered September 25, 2009. | The required assessment was completed on a timely basis by CSF and the results were included in the October 13, 2009 assessment report. Defendants have indicated that they plan to address critical findings from the assessment on an expedited basis. The Monitor will report on these efforts at the end of Period 2. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | g. A placement assessment of current needs for achieving compliance with the placement standards set forth in Section II.B.5 of the Settlement Agreement, which shall include (1) the structure of the placement process, including the role and efficacy of the state office placement unit; (2) the services and supports available to support enhanced placement stability, including out-patient or in-home assessment and treatment services to avoid the frequent use of time-limited assessment and treatment placement programs; and (3) the placement resources needed to meet the placement needs of children in custody. | 1/1/2010 | When Due:  January 1, 2010<br>Who's Responsible: Jerry Milner / CSF<br>Status:  Report delivered 10/13/09 | The required assessment was completed on a timely basis by CSF and the results were included in the October 13, 2009 assessment report.  The Monitor will report more fully on the assessment at the end of Period 2. |
| Settlement Agreement and Reform Plan at II.B.1.e.-h.<br><br>Foster Care Service Standards<br><br>Screening and Assessments | 9 & 10 | By the end of implementation Period 2:<br>e.  All caseworkers carrying active cases and their supervisors will have undergone training on the individual and family team meeting process. | End of Period 2 | Defendants' January 27, 2010 Report did not address these specific Period 2 requirements; however, as set forth below, certain information relevant to these requirements was included in defendants' report on II.3.a.&b. of the Period 2 IP. | Defendants should indicate whether the outcome data required by the Period 2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | f.  At least 40% of children entering custody during the Period shall have a thorough screening and assessment, consistent with Plan requirements, within 30 calendar days of entering custody. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | g.  At least 40% of children entering custody or subject to a placement move during the Period shall have an individual team meeting (1) with the child and the assigned DFCS caseworker within the first 72 hours of initial placement or any subsequent placement moves; (2) with the child's parents and the assigned DFCS caseworker within the first two weeks of initial placement; and (3) with the foster care provider and the assigned DFCS caseworker within the first two weeks of any placement. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | h. In at least 40% of placement cases in which the whereabouts of one or both parents is unknown, DFCS shall have immediately instituted a diligent search for the parent(s), which shall be documented in the child's case record. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at II.3.a. and b.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Screening and Assessments | YR-2 IP, at 22 | a. By September 30, 2009, DFCS shall develop a protocol and training module for both individual and family team meetings as described in II.B.1.b of the Settlement Agreement. The training module shall be incorporated into the pre-service and in-service training curricula. | 9/30/09 | When Due: September 30, 2009<br>Who's Responsible: Denise Rouse & Jenni Murray<br>Status: 1/4/10 Denise: FTM and ITM Policy Bulletin 6200, issued 6/4/09. Individual Team Meeting Protocols were introduced to direct service staff via the RDs/ASWs. ITM Protocols have been added to Week III of the pre-service training. DFCS's Training Unit maintains the Family Centered Practice curriculum which included FTMs as an available on-going training curriculum. This curriculum was updated to include the ITMS as of 10/09. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2. |
| | | b. All caseworkers carrying active cases and their supervisors will have undergone training on the individual and family team meeting protocols. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Denise Rouse & Mary Ann Everett<br>Status: Training has been provided | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| Settlement Agreement and Reform Plan at II.B.2.d. and e.<br><br>Foster Care Services Standards<br><br>Service Planning and Monitoring | 11 | By the end of implementation Period 2:<br>d. At least 40% of children entering custody during the Period shall have a team meeting with service plans developed for both the child and the parents, consistent with Plan requirements, within 30 calendar days of entry into foster care.<br>e. At least 40% of children in custody during the Period shall have team meetings, at which time their service plans shall be updated, quarterly and within 30 calendar days of any placement or other significant change, consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.4.a.-c.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Service Planning and Monitoring | YR-2 IP, at 24 | The revised policies and practice guides shall require that each service plan and revision of such plan meets the requirements of section II.B.2 of the Settlement Agreement and:<br>a. is based on the assessment required by section II.B.1 of the Settlement Agreement;<br>b. includes: service goals, desired outcomes, and timeframes for achieving them; services and supports to be provided, and by whom; and the signature of the parents and, when appropriate, the child or youth; and<br>c. addresses, as appropriate: unmet service and support needs that impact safety, permanency, and well-being; maintaining and strengthening relationships; educational needs and goals; and the need for culturally responsive services and the support of the family's informal social network. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jerry Milner/CSF, Henry Goodman, Jenny Murray and Martha Houston<br>Status: Policy has been, and is being, revised to meet COA standards and settlement terms. Framework for family-centered policy has been developed. Federal requirements and COA standards are being incorporated. Working with divisions to utilize assessments and practice model to develop and further revise policy. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.B.3.a.5. and 6.<br><br>Foster Care Services Standards<br><br>Child and Youth Permanency<br><br>Permanency Plan | 13 | By the end of implementation Period 2:<br>5) A least 50% of children entering care during the Period shall have a permanency plan within 30 calendar days of their entry into care consistent with Plan requirements.<br>6) At least 50% of children in custody during the Period shall have a permanency plan that is consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.5.a.1. and 2.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Youth Permanency<br><br>Permanency Plan | YR-2 IP, at 25 | The revised policies and practice guides shall require that:<br>1) All permanency plans contain specific information about<br>i. How the permanency goal will be achieved;<br>ii. What services are necessary to make the accomplishment of the goal likely;<br>iii. Who is responsible for the provision of those services;<br>iv. When the services will be provided; and<br>v. The date by which the permanency goal is likely to be achieved. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jerry Milner / CSF, Henry Goodman, Jenni Murray and Martha Houston<br>Status: 1/20/10: In progress. Permanency plans framework should be developed by 2/1/10. Actual program policy will be developed prior to End of Period II. | The Monitor is evaluating defendants' performance and will report on this matter at the end of Period 2, as required. |
| cont. | | 2) All services documented in the case record as necessary for the achievement of the permanency goal are provided within the time period in which they are needed, by either providing those services directly, contracting with a private provider for those services, or referring to an existing service provider for the provision of those services. | End of Period 2 | When Due: End of Period II<br>Who's Responsible:<br>Status:<br><br>Defendants' January 27, 2010 report did not address this requirement as indicated by the blank entries reproduced above. | Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the entries related to the requirements blank. The Report did not provide any explanation regarding why these requirements were left blank. Defendants should indicate whether the data related to this Period 2 requirement is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at II.B.3.b.2.<br><br>Foster Care Service Standards<br><br>Child and Youth Permanency<br><br>Concurrent Planning | 13 | By the end of implementation Period 2:<br>2) At least 50% of children in custody during the Period with the goal of reunification shall have case record documentation reflecting active concurrent permanency planning consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

Olivia Y. v. Barbour:  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.B.3.c.3. and 4.<br><br>Foster Care Service Standards<br><br>Child and Youth Permanency<br><br>Permanency Plan Updating and Review | 14 | By the end of implementation Period 2:<br>3)  At least 50% of children in custody at least six months during the Period shall have a timely court or administrative case review consistent with Plan requirements during the Period.<br>4)  At least 50% of children in custody at least 12 months during the Period shall have a timely annual court review consistent with Plan requirements during the Period. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.5.b.1.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Permanency Plan<br><br>Permanency Plan Updating and Review | YR-2 IP, at 26 | 1) By July 1, 2009, Defendants shall implement a system to facilitate a court review for every foster child within 12 months of initial placement and annually thereafter. That system shall include the capacity to: (1) track scheduled annual court reviews, and notify the Youth Court with jurisdiction over the child of any reviews that need to be scheduled or re-scheduled so as to meet the requirements of section II.B.3.c of the Settlement Agreement; (2) ensure that the Youth Court with jurisdiction is provided with a detailed up-to-date report on the current status of the child's placement, visitation, permanent plan progress, and service needs no later than 30 calendar days before a scheduled court review or at a time otherwise directed by the Court; and (3) ensure that the child's assigned caseworker or supervisor attends any such scheduled court review. | 7/1/2009 | When Due:  July 1, 2009<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion and Nancy Meaders<br>Status: 1/20/10 Nancy – A request for MACWIS to generate a report for tracking hearing dates in individual cases has been processed. DFCS anticipates these reports will begin running February 28, 2010. | Defendants should indicate whether the required system with each of the specified capacities exists. If the system exists, defendants should identify and produce all evidence supporting its existence. Defendants' January 27, 2010 Report does not address each of the required capacities of the required system.  Defendants' submission is due to the Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at II.B.3.d.4.<br><br>Foster Care Service Standards<br><br>Child and Youth Permanency<br><br>Reunification Services | 15 | By the end of implementation Period 2:<br>4)  At least 40% of children with a permanency goal of reunification during the Period shall have service plans for their parents that identify those services DFCS deems necessary to address the behaviors or conditions resulting in the child's placement in foster care and case record documentation that DFCS made those identified services available directly or through referral. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:*  Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at II.5.c.1.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Youth Permanency<br><br>Reunification Services | YR-2 IP, at 26 | 1) Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan to meet the needs identified in the required Foster Care Services Reunification Needs Assessment, with specific steps and timetables for addressing gaps in the availability of effective services.  Such plan shall be developed by January 1, 2010. | 1/1/2010 | When Due:  January 1, 2010<br>Who's Responsible: Angie Williams<br>Status:  12/15/09 Lori:  Angie Williams working with Jerry on this | The plan was not developed by January 1, 2010, as required.   The Monitor will report fully on defendants' progress at the end of Period 2, as required. |
| Settlement Agreement and Reform Plan at II.B.3.e.3. and 4.<br><br>Foster Care Service Standards<br><br>Child and Youth Permanency<br><br>Termination of Parental Rights | 16 | By the end of implementation Period 2:<br>3)  At least 40% of children in custody reaching the point at which they have spent 15 of the previous 22 months in foster care during the Period shall have a petition for TPR filed on their behalf or an available exception under the federal ASFA documented by the end of their fifteenth month in care.<br>4)  At least 40% of children in custody during the Period who have spent more than 15 of the previous 22 months in foster care without a TPR petition filed on their behalf or an available ASFA exception documented by the end of their fifteenth month in care shall have such a petition filed or an available exception documented within the Period. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.5.d.1.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Youth Permanency<br><br>Termination of Parental Rights/Special Permanency Reviews | YR-2 IP, at 27 | 1) By January 4, 2010, DFCS shall begin the implementation of a "tickler" system for notifying caseworkers and caseworker supervisors when a case assigned to them has reached the following milestones: 12 months after a child entered custody; 30 calendar days after the establishment of adoption as the primary permanency goal; 30 calendar days after a TPR referral has been made; and 10 calendar days after a TPR packet has been returned to DFCS because of a legal deficiency. | 1/4/2010 | When Due:  January 4, 2010<br>Who's Responsible: Mike Gallarno<br>Status:  Tickler system is currently being tested and it is expected to be in place by February 28, 2010. | The tickler system was not implemented by January 4, 2010, as required.  The Monitor will report fully on defendants' progress at the end of Period 2, as required. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at II.5.d.2.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Youth Permanency<br><br>Termination of Parental Rights/Special Permanency Reviews | YR-2 IP, at 27 | 2) By December 1, 2009, DFCS shall have held a special permanency review for each child in DFCS custody who had, as of January 4, 2008, been in foster care more than 15 of the previous 22 months whom DFCS has not filed a TPR petition or documented an available ASFA exception.  For each child who reaches more than 15 of the previous 22 months in foster care after January 4, 2008, and for whom DFCS has not filed a TPR petition or documented an available ASFA exception, DFCS shall begin holding special permanency reviews.  Such permanency reviews shall include the DFCS caseworker, the caseworker's direct supervisor, and at least one individual with expertise in permanency planning who has not held direct casework or supervisory responsibility for the case.  The review will produce a written plan of action setting forth the steps to be taken by DFCS, the contract agency, and/or any other provider of services, in order to move the child to permanency as quickly as possible.<br><br>Such permanency reviews shall be documented in the child's case record, and reconvened monthly until all barriers to permanency have been resolved, a TPR petition has been filed, or an available ASFA exception has been documented in the child's case record. | 12/1/2009 | When Due:  December 1, 2009<br>Who's Responsible: Jeff Wedgeworth & Carolyn Gremillion<br>Status:  Special Permanency reviews have been held and are to be held every 30 days.  Results will be sent by RDs to Field Ops Dir. for review. | The Monitor will report on this matter at the end of Period 2, or earlier, as warranted.  By February 17, 2010, defendants should submit the following to the Monitor:<br>1) a list of all children in DFCS custody and the date each child entered custody;<br>2) a list of all children in foster care for 15 of the previous 22 months after January 4, 2008;<br>3) a list of all children who have received the special permanency reviews required by this subsection and the date of the initial and each subsequent review; and<br>4) the policy/protocol governing the review and the plan of action. |
| Settlement Agreement and Reform Plan at II.B.3.f.6. and 7.<br><br>Foster Care Service Standards<br><br>Child and Youth Permanency<br><br>Adoptions | 18 | By the end of implementation Period 2:<br>6)  At least 75% of children in custody with the primary permanency goal of adoption during the Period shall have an assigned adoption specialist and an adoption plan that identifies the child-specific activities that DFCS will undertake to achieve adoption, and shall receive regular adoption status meetings consistent with Plan requirements.<br>7)  At least 75% of children in custody during the Period who are legally free for adoption but are not in a home with approved adoptive parents within six months after being legally freed for adoption shall have an assigned external adoption consultant consistent with Plan requirements to ensure the adoption plan is implemented. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Period 2 IP at II.5.e.1.-6.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child and Youth Permanency<br><br>Adoption | YR-2 IP, at 27-28 | 1) By July 1, 2009, DFCS shall define the job description, responsibilities, and qualifications for the position of adoption specialist. The adoption specialist's responsibilities shall include consulting with private and public professionals and identifying and ensuring the provision of targeted services necessary for the child to be adopted. | 7/1/2009 | When Due:  July 1, 2009<br>Who's Responsible: Angie Williams<br>Status:  10/20/09 Linda:  Job description, responsibilities & qualifications have been developed and were effective as of 11/30/09.<br>1/21/10 Angie:  Angie met with all Resource ASWs on December 1, 2009 and will meet again on February 4, 2010. The meetings are to address duties/responsibilities of the Resource Unit, including practice and policy issues and division of duties.  While this is not "classroom" training, it is peer-training and is improving practice.  The National Resource Center on Adoption will be in Jackson to do training on the Adoption Curriculum on March 16-18, 2010. | Defendants did not define the job description, responsibilities and qualifications for the adoption specialist position by July 1, 2009, as required.  The Monitor is currently reviewing various submissions related to this requirement and conducting related interviews.  The Monitor will report on her findings during Period 2. |
| cont. | | 2) By July 1, 2009, DFCS shall develop a protocol for adoption meetings, which are to be held to review the progress being made in achieving the goal of adoption for legally free children. | 7/1/2009 | When Due:  December 1, 2009<br>Who's Responsible: Angie Williams<br>Status:<br><br>Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the entries related to the requirements blank. | Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the entries related to the requirements blank.  The Report did not provide any explanation regarding why these requirements were left blank.  Defendants have produced an adoption meeting protocol and the Monitor is reviewing this document and conducting follow up interviews.  The Monitor will report in further detail at the end of Period 2, or sooner, as warranted. |
| | | 3) By July 1, 2009, DFCS shall have identified external adoption consultants who DFCS can contract with to provide adoption recruitment assistance to children who have been free for adoption for six or more months and who are not yet placed in an approved adoptive home. | 7/1/2009 | When Due:  July 1, 2009<br>Who's Responsible: Angie Williams<br>Status:  10/20/09 Linda:  External adoption providers have been identified and are currently participating in adoption placement meetings.  A list has been developed to share w/adoption specialists. | External adoption consultants were not identified by July 1, 2009, as required.  The Monitor will be assessing defendants' recent progress and will report further by the end of Period 2, or earlier, as warranted. |
| | | 4) DFCS shall take reasonable steps to hire (or promote) and train a sufficient number of adoption specialists to meet the adoption requirements of Section II.B.3.f of the Settlement Agreement.  Adoption status meetings consistent with the Settlement Agreement will start being held. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Angie Williams<br>Status:  DFCS Div. Dir., Field Ops. Dir's, & RDs identified persons who would be good candidates for these positions. NRC training for resource workers will take place in January 2010. | The Monitor will be assess defendants'  progress and report by the end of Period 2, as required. |
| | | 5) By October 1, 2009, DFCS shall develop and begin implementing a process for making legal risk placements that assures that children for whom the permanency plan is adoption but who are not yet legally free for adoption are placed in appropriate adoptive homes. | 10/1/2009 | When Due:  October 1, 2009<br>Who's Responsible: Linda Millsap and Angie Williams<br>Status:<br><br>Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the entries related to the requirements blank. | Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the entries related to the requirements blank.  The Report did not provide any explanation regarding why these requirements were left blank.  The Monitor will be assessing defendants' progress and report by the end of Period 2, or earlier, as warranted. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | 6) By October 1, 2009, DFCS shall implement a process for advising all potential adoptive families, including any foster family caring for a child who has become legally available for adoption, of the availability of adoption subsidies. This notification shall be documented in the child's record, and the family's access to such subsidies shall be facilitated. | 10/1/2009 | When Due: October 1, 2009<br>Who's Responsible: Linda Millsap and Angie Williams<br>Status: Have form. Policy will be drafted setting out protocol. Presently addressed during Resource Parent training. | The process was not implemented by October 1, 2009, as required. The Monitor will report fully on defendants' progress at the end of Period 2, or earlier, as warranted. |
| Settlement Agreement and Reform Plan at II.B.4.k.<br><br>Foster Care Service Standards<br><br>Child Safety | 20 & 21 | By the end of implementation Period 2:<br>k. For investigations of agency group homes, emergency shelters, and private child placing agency foster homes, the Licensure Unit shall undertake a separate investigation of the contract provider's compliance with DFCS licensure standards. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | The Monitor has been evaluating defendants' performance and will report, in detail, on this matter at the end of Period 2, as required. |
| Period 2 IP at II.6.a.-j.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Child Safety | YR-2 IP, at 30-32 | a. By May 1, 2009, Defendants shall instruct all DFCS staff that as mandated reporters they are required to formally report any suspicions of maltreatment, including corporal punishment, of children in custody. | 5/1/2009 | When Due: May 1, 2010<br>Who's Responsible: Carolyn Gremillion & Jeff Wedgeworth<br>Status: Completed. See Bulletin 6154 (Maltreatment & Punishment of Children in Custody 1/24/08) Also this has been addressed in training and in training newsletter to staff | This requirement has not been met. Defendants' January 27, 2010 report cites to a January 24, 2008 Bulletin as evidence that staff were instructed of these specific requirements. The Monitor's June 5, 2009 report, filed with the federal court, specifically finds that the Bulletin defendants rely upon does not comport with the requirements of the Settlement Agreement because the Bulletin limits reporting to suspicions of maltreatment in resource homes. See Monitor's June 5, 2009 Report at 81-82 & Ex. 15. In light of the foregoing, in order to promote a prompt resolution of this long-standing issue, the Monitor recommends that defendants explain by February 17, 2010, why DFCS relied on Bulletin 6154 as evidence of compliance with this specific requirement. |
| cont. | | b. By January 1, 2010, DFCS shall assure that standardized decision-making criteria are used for prioritizing, screening, and assessing all reports of maltreatment, including corporal punishment, of children in DFCS custody. | 1/1/2010 | When Due: January 1, 2010<br>Who's Responsible: Angie Williams<br>Status: 1/20/10: Completed. MACWIS screening tool assigns Level 1-3<br>Centralized Intake Policy §B, pp 2010-19 | The foster care child safety services assessment raises significant issues related to this requirement that are consistent with the Monitor's findings. Implementation of the Hotline has added other concerns that defendants reportedly are working to address. The Monitor is reviewing this matter and will report in detail on her findings at the end of Period 2, or earlier, as warranted. |
| | | c. By January 1, 2010, Defendants shall revise DFCS policies and procedures for screening and investigating reports of child maltreatment, including corporal punishment, to incorporate the child safety standards and requirements set forth in Section II.B.4 of the Settlement Agreement. | 1/1/2010 | When Due: January 1, 2010<br>Who's Responsible: Kate McMillin<br>Status: 1/20/10: Completed. Centralized Intake, Intake Policy §B 2010-19. | The Monitor is assessing defendants' compliance with this requirement and will report, in detail, at the end of Period 2, or earlier, as warranted. |
| | | d. By September 1, 2009, all calls to the hotline shall immediately be entered into the statewide computer information system, and the worker or supervisor receiving the report shall use the information system to determine whether there have been prior reports of abuse and/or neglect in that family or concerning that child. If a report is screened in, information regarding any prior reports shall immediately be made available to the worker to whom the case has been assigned for investigation. | 9/1/2009 | Who's Responsible: Kate McMillin<br>Status: Accomplished. Also Centralized Intake policy was revised 10/1/09 via Bulletin 6276. | The centralized Hotline began to operate state-wide on November 1, 2009. Defendants have been working to address a number of initial implementation issues. The Monitor is assessing Hotline implementation, including whether and to what extent implementation challenges have been resolved. The Monitor will report, in detail, on her findings at the end of Period 2, or earlier, as warranted. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | e. By October 1, 2009, DFCS shall complete a special safety review, including an unannounced site visit, of all currently licensed foster homes with two or more reports of maltreatment, including corporal punishment, within the last three years to determine whether any children placed in those homes are at risk of harm and/or any licensing standards related to child safety are not being met. Any necessary corrective actions will be identified and tracked. | 10/1/2009 | When Due:  October 1, 2009 Who's Responsible: Mike Gallarno Status:  SSRs have been completed.  Need formal feedback system and tracking of CAP. | According to reports submitted to the Monitor, special safety reviews were conducted on 31 resource homes with previous reports of maltreatment.  The Monitor has not yet confirmed whether every resource home subject to these requirements was appropriately identified.  DFCS assigned two caseworkers to conduct the safety reviews related to resource homes and facilities (see below) on a full-time basis.  The Monitor's Office has interviewed the caseworkers, observed investigations and reviewed/analyzed each of the safety review reports that defendants submitted.  The Monitor is scheduled to meet with defendants during the week of February 22, 2010 to discuss the investigations.  Thereafter, the Monitor will conduct any appropriate follow up and report on her findings at the end of Period 2, or earlier, as warranted. |
| | | f. By December 1, 2009, DFCS shall undertake a special safety review, including an unannounced site visit, of all group homes and other residential facilities that house children in custody with three or more reports of maltreatment, including corporal punishment, within the last two years to determine whether any children placed in those facilities are at risk of harm and/or any licensing standards related to child safety are not being met.  Any necessary corrective actions will be identified and tracked. | 12/1/2009 | When Due:  December 1, 2009 Who's Responsible: Mike Gallarno Status:  Completed.  RD develops Corrective Action Plan ("CAP") which is sent to Div. Dir and Reviewer.  Reviewer will follow up.  Need to develop system for tracking CAPs. | According to reports submitted to the Monitor, special safety reviews were conducted for 44 facilities with previous reports of maltreatment.  The Monitor has not yet confirmed whether any facility subject to these requirements was appropriately identified.  DFCS assigned two caseworkers to conduct the safety reviews related to resource homes (see above) and facilities on a full-time basis.  The Monitor's Office has interviewed the caseworkers, observed investigations and reviewed/analyzed each of the safety review reports that defendants submitted.  The Monitor is scheduled to meet with defendants during the week of February 22, 2010 to discuss the investigations.  Thereafter, the Monitor will conduct any appropriate follow up and report on her findings at the end of Period 2, or earlier, as warranted. |
| | | g. By December 1, 2009, all investigations into reports of maltreatment, including corporal punishment, of children in DFCS custody must be initiated within 24 hours of the report and completed within 30 calendar days, including supervisory approval.  DFCS shall assure that such investigations and decisions are based on a full and systematic evaluation of the factors that may place a child in DFCS custody at risk. | 12/1/2009 | When Due:  December 1, 2009 Who's Responsible: Carolyn Gremillion & Jeff Wedgeworth Status:  1/20/10:  Policy in development.  All in-custody reports are screened in MACWIS as L3s, which requires investigation initiation within 24 hours.  Have evaluation tool. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010.  Defendants' consultant found significant shortcomings in the evaluation and assessment process.  He reported that as of the February 2, 2010 parties' meeting, an appropriate evaluation tool was being developed but had not been finalized. |
| cont. | | h. By December 1, 2009, any foster child who remains in the same out-of-home placement following an investigation into a report that he or she was maltreated, or subject to corporal punishment, in that placement shall be visited by a DFCS caseworker twice a month for three months after the conclusion of the investigation to assure the child's continued safety and well-being. | 12/1/2009 | When Due:  December 1, 2009 Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth Status:  Issue currently under review.  Many are already being seen twice month.  Perm. Dir. working with staff & consultants to draft policy. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. |
| | | i. By December 1, 2009, when a maltreatment investigation involves a foster child, DFCS shall file a copy of the approved final investigative report and any recommendations and/or corrective actions DFCS has deemed necessary in the case record of the foster child, in the file of the foster or adoptive parents with a copy of the letter of notification to the foster or adoptive parents, and in the DFCS State Office.  DFCS shall also provide those records to the Youth Court Judge with jurisdiction over the child and to the Monitor. | 12/1/2009 | When Due:  December 1, 2009 Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth Status:  Investigation report attached to both child & resource home files in MACWIS.  Resource ASWS sends notification letter re any CAP to foster homes.  RD/ASWS notifies Youth Court & State Office.  State Office notifies Court monitor.  Will develop a more efficient way to disseminate reports to the Court and Monitor, and for notification to foster parents. | The Monitor will report on her findings at the end of Period 2, or earlier, as warranted.  There are significant limitations in the general quality of maltreatment investigations that are identified in the foster care services child safety assessment.  These limitations are consistent with the Monitor's findings and should be addressed in the near term. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | j. By December 1, 2009, when a maltreatment investigation involves an agency group home, emergency shelter, private child placing agency foster home, or other facility licensed by DFCS, a copy of the final investigative report shall be filed in the child's case record, in the facility licensing file, and in the DFCS State Office.  DFCS shall provide the report to the Youth Court Judge with jurisdiction over the child and to the Monitor. | 12/1/2009 | When Due:  December 1, 2009<br>Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth<br>Status:  Investigation report attached to both child & resource home files in MACWIS.  RD/ASWS notifies State Office which notifies Court Monitor.  When issues exist, CAP notification letters are sent to facility/group home.  Will develop a more efficient way to disseminate reports to Court and Monitor. | The Monitor will report on her findings at the end of Period 2, or earlier, as warranted.  There are significant issues with the quality of maltreatment investigations that are identified in the foster care services child safety assessment which are consistent with the Monitor's findings and will need to be addressed in the near term. |
| Settlement Agreement and Reform Plan at II.B.5.l.-q.<br><br>Foster Care Service Standards<br><br>Child Placement | 23 | By the end of implementation Period 2:<br>l. No child shall spend more than 12 hours at a time in a DFCS office or other non-residential facility that provides intake functions.  No child shall be placed in more than one emergency or temporary facility within one episode of foster care, unless an immediate placement move is necessary to protect the safety of the child or of others as certified in writing by the Regional Director. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements; but see entry for identical requirement in Period 2 IP II.7.g. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | m.  No child under 10 years of age shall be placed in a congregate care setting (including group homes and shelters) unless the child has exceptional needs that cannot be met in a relative or foster family home or the child is a member of a sibling group, and the Regional Director has granted express written approval for the congregate-care placement. Such approval shall be based on the Regional Director's written determination that the child's needs cannot be met in a less restrictive setting and can be met in that specific facility, including a description of the services available in the facility to address the individual child's needs.  Sibling groups in which one or more of the siblings are under the age of 10 shall not be placed in congregate care settings for more than 45 days. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements; but see entry for identical requirement in Period 2 IP II.7.h. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| cont. | | n. No foster child shall be moved from his/her existing placement to another foster placement unless DFCS specifically documents in the child's case record justifications for that move and the move is approved by a DFCS supervisor.<br>o. All relative placements approved for expedited placement shall undergo the full licensing procedure within 60 calendar days of the child's placement in the home. | | Defendants' January 27, 2010 Report did not address these specific Period 2 requirements; however, the report addressed identical requirements in the Period 2 IP.  See Period 2 IP at II.7.d and i., below. | n.  Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010.<br><br>o.  Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | p. At least 50% of children in DHS custody placed in a new placement during the Period shall have their currently available medical, dental, educational, and psychological information provided to their foster parents or facility staff no later than at the time of any new placement during the Period. q. At least 30% of children in custody known by DFCS to be subject to a potential or actual placement disruption during the Period shall receive a meeting to address placement stability consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | p. Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. Foster parents and many workers generally report that virtually no information is provided at the time of placement. Further details regarding this interview data will included in the Monitor's Period 2 report. |
| Period 2 IP at II.7.a.-j. Foster Care Services Assessment and Implementation Steps Child Placement | YR-2 IP, at 32-34 | a. By May 1, 2009, all foster care settings, including relative placements, shall be screened prior to the initial placement of foster children to ensure that children receive safe, sufficient, and appropriate care. Additional screens shall be completed at least once annually thereafter and within two weeks of a reported change in the residents of a foster home. Screens shall include criminal and child welfare background checks of all household members who are at least 14 years old. No foster child shall be placed in a home prior to DFCS receipt of the background check results. | 5/1/2009 | When Due: May 1, 2009 Who's Responsible: Angie Williams Status: 1/20/10: This is being done. See also DFCS Policy §F, p. 4515 (revised 8/08); Policy Memo issued 10/16/08; DFCS Policy §F p. 4510. | The Monitor is assessing and will report on this requirement at the end of Period 2. |
| | | b. Defendants shall develop and begin the implementation of a written plan to ensure the speedy licensing of all current unlicensed caregivers. All such current unlicensed caregivers shall be licensed. | End of Period 2 | When Due: End of Period II Who's Responsible: Angie Williams Status: DFCS Policy §F, 4515; policy memo issued 10/16/08 | A written plan was not developed as of February 4, 2010. The plan will need to be developed in the near term in order to ensure implementation during Period 2. |
| | | c. By December 1, 2009, DFCS shall develop and implement an expedited process for licensing screened relative caregivers to enable a child to be placed quickly with relatives upon entering placement. No foster child entering custody will be placed in an unlicensed relative placement, subject to the allowance of the emergency licensing process that allows 60 days for the licensing process to take place. | 12/1/2009 | When Due: December 1, 2009 Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth Status: 10/09 COA Production. "In Compliance" with COA std. See also policy reference below. | The Monitor is evaluating defendants' performance and will report in detail at the end of Period 2, or earlier, as warranted. The Monitor notes that defendants' January 27, 2010 report of compliance with the COA standard does not address the specific implementation requirements of this subsection. |
| | | d. All relative placements approved for expedited placement shall undergo the full licensing procedure within 60 calendar days of the child's placement in the home. | End of Period 2 | When Due: End of Period II Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth Status: See DFCS Policy §F p. 4515, revised 8/08 Working on developing safety waivers for relatives. Policy will be further revised as needed. | The Monitor is evaluating defendants' performance and will report in detail at the end of Period 2, or earlier, as warranted. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| cont. | | e. Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a plan with specific action steps and timeframes to address policy and structural changes to the placement process that the placement assessment has identified as necessary to comply with the placement requirements set forth in Section II.B.5 of the Settlement Agreement. That plan shall also include the development of the position of placement specialists in each region, and a protocol for the placement stability meetings that the Settlement Agreement requires that DFCS hold when a worker has knowledge that a placement is at risk of disruption. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Angie Williams, Carolyn Gremillion & Jeff Wedgeworth<br>Status: In progress | The required plan has not been developed. The plan will need to be developed in the near term in order to ensure implementation during Period 2. |
| | | f. By December 1, 2009 and continuing thereafter, no foster child shall remain in an emergency or temporary facility for more than 45 calendar days, unless, in exceptional circumstances, the Division Director has granted express written approval for the extension that documents the need for the extension. | 12/1/2009 | When Due: December 1, 2009<br>Who's Responsible: Linda Millsap<br>Status: Policy developed and emphasizing with staff | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | g. No child shall spend more than 12 hours at a time in a DFCS office or other non-residential facility that provides intake functions. No child shall be placed in more than one emergency or temporary facility within one episode of foster care, unless an immediate placement move is necessary to protect the safety of the child or of others as certified in writing by the Regional Director. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams<br>Status: Policy being drafted. Will disseminate following feedback and revisions. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | h. No child under 10 years of age shall be placed in a congregate care setting (including group homes and shelters) unless the child has exceptional needs that cannot be met in a relative or foster family home or the child is a member of a sibling group, and the Regional Director has granted express written approval for the congregate care placement. Such approval shall be based on the Regional Director's written determination that the child's needs cannot be met in a less restrictive setting and can be met in that specific facility, including a description of the services available in the facility to address the individual child's needs. Sibling groups in which one or more of the siblings are under the age of 10 shall not be placed in congregate care settings for more than 45 days. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams<br>Status: Policy being revised. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | i. No foster child shall be moved from his/her existing placement to another foster placement unless DFCS specifically documents in the child's case record justifications for that move and the move is approved by a DFCS supervisor. | End of Period 2 | When Due: End of Period II Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams Status: 1/20/10: Policy will be revised. MACWIS requires justification for every move and approval by a supervisor. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| | | j. By September 30, 2009, DFCS shall implement a formalized protocol to provide foster parents with all appropriate and available information about a child prior to or at the time of placement and for supplementing that information as further information is gathered. | 9/30/2009 | When Due: September 30, 2009 Who's Responsible: Jeff Wedgeworth & Carolyn Gremillion Status: Protocol has been developed but working to ensure it is occurring in field and practice. | Interviews with caseworkers and foster parents indicate that foster parents do not receive appropriate and available information about a child prior to or at the time of placement. The Monitor will report in further detail on these findings at the end of Period 2. |
| Settlement Agreement and Reform Plan at II.B.6.d. Foster Care Service Standards Developing and Maintaining Connections | 25 | By the end of implementation Period 2: d. At least 40% of children in custody during the Period shall be provided with contacts with their parents and with any siblings not in the same placement consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.8.a. Foster Care Services Assessment and Implementation Steps Developing and Maintaining Connections | YR-2 IP, at 38 | a. The Settlement Agreement requirements and standards at section II.B.6 for developing and maintaining connections through parent-child and sibling visitation will be included in the Practice Guide. Pre-service and on-going training shall specifically address case practice associated with parent-child and sibling visitation, and regular supervisory reviews shall specifically include an evaluation of such practice. | End of Period 2 | When Due: End of Period II Who's Responsible: Denise Rouse Status: 1/13/10 Denise DFCS requested technical assistance from the National Resource Center for Permanency and Family Connections re Quality Visit Training. Staff from NRC will be providing the curriculum and facilitator's training for this on January 20-22, 2010. This training will be presented in each region to direct service staff and supervisors during the month of February 2010. | The Monitor is evaluating defendants' performance and will report on this requirement at the end of Period 2. |
| Settlement Agreement and Reform Plan at II.B.7.h. - m. Foster Care Service Standards Physical and Mental Health Care | 26 & 27 | By the end of implementation Period 2: h. At least 40% of children entering custody during the Period shall receive a comprehensive health assessment consistent with Plan requirements within 30 calendar days of entering care. i. At least 40% of children in custody during the Period shall receive periodic medical examinations and all medically necessary follow-up services and treatment consistent with Plan requirements. j. At least 40% of children three years old and older entering custody during the Period or in care and turning three years old during the Period shall receive a dental examination within 90 calendar days of foster care placement or their third birthday, respectively. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | k. At least 40% of children in custody during the Period shall receive a dental examination every six months consistent with Plan requirements and all medically necessary dental services.<br>l. At least 40% of children four years old and older entering custody during the Period or in care and turning four years old during the Period shall receive a mental health assessment by a qualified professional within 30 calendar days of foster care placement or their fourth birthday, respectively, and all recommended mental health services pursuant to their assessment.<br>m. At least 40% of children in custody ages birth through three during the Period, and older children if factors indicate it is warranted, shall receive a developmental assessment by a qualified professional and all needed developmental services. | | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.9.a.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Physical and Mental Health Care | YR-2 IP, at 39 | a. Defendants, in consultation with state Medicaid and mental health officials, shall, by December 1, 2009, develop and begin implementing specific and focused regional plans to recruit and develop service providers in areas identified in the needs assessment as having gaps in required services | 12/1/2009 | When Due: December 1, 2009<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion, Mike Gallarno & Angie Williams<br>Status: Began the process last March with regional teams and commitment letters but not based on needs assessment in Assessment. Have begun dialogue with Medicaid. Using CSF Needs Assessment, will move forward with development of focused plans. Next meeting is in January 2010. | Specific and focused regional plans were not developed by December 1, 2009, as required. The Monitor will report fully on defendants' progress at the end of Period 2, as required. |
| Settlement Agreement and Reform Plan at II.B.8.d. and e.<br><br>Foster Care Service Standards<br><br>Educational Services | 29 | By the end of implementation Period 2:<br>d. At least 40% of school-age children entering custody during the Period shall be screened for general and special educational needs within 30 calendar days of their entry into foster care.<br>e. At least 40% of school-age children entering custody or subject to a change in schools due to a placement move during the Period shall be registered for and attending an accredited school within three business days of the initial placement or placement change, including while placed in shelters or other temporary placements, unless delayed by the Youth Court. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.10.a. and b.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Educational Services | YR-2 IP, at 40 | a. DFCS shall develop and implement a protocol for conducting a general and special education screen of children entering foster care. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth & Carolyn Gremillion<br>Status: Protocol in development | As of February 7, 2010, the protocol was not developed. Absent further progress, defendants will be unable to implement the protocol before the end of Period 2. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| | | b. DFCS shall develop and begin implementing a plan for providing, either directly or through contract, the following educational services in each county: tutoring; preparation for a general equivalency diploma ("GED"); and college preparation. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth & Carolyn Gremillion<br>Status: Plan is being developed | As of February 7, 2010, the plan was not developed. Absent further progress, defendants will be unable to implement the plan before the end of Period 2. |
| Settlement Agreement and Reform Plan at II.B.9.b.<br><br>Foster Care Service Standards<br><br>Therapeutic Services | 30 | By the end of implementation Period 2:<br>b. At least 40% of children in custody during the Period requiring therapeutic and/or rehabilitative foster care services because of a diagnosis of significant medical, developmental, emotional, or behavioral problems shall be provided with a treatment plan and services in accordance with their plan. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at II.B.10.f.-h.<br><br>Foster Care Service Standards<br><br>Worker Contact and Monitoring | 31 | By the end of implementation Period 2:<br>f. At least 30% of children in custody shall receive documented twice-monthly in-person visits by the assigned DFCS caseworker during the Period, consistent with Plan requirements.<br>g. At least 40% of children with a goal of reunification shall have their assigned DFCS caseworker meet monthly with the child's biological parents, consistent with Plan requirements, as documented in the child's case record.<br>h. At least 30% of foster parents with at least one foster child residing in their home during the Period shall have a DFCS worker visit the home twice a month (therapeutic foster homes) or monthly (non-therapeutic foster homes), consistent with Plan requirements, as documented in the children's case records. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.11.a.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Worker Contact and Monitoring | YR-2 IP, at 40-41 | a. Defendants' revised policies and practice guides shall reflect the issues to be addressed during worker contacts with parents, children, and foster care providers. Defendants shall revise DFCS training as necessary to ensure instruction on the quality, frequency, purpose, and structure of meeting with foster children, biological parents and foster care providers. The training shall specifically address communicating with, interviewing, and observing foster children. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Denise Rouse, Mary Ann Everett, Jenni Murray and Martha Houston<br>Status: 1/13/10 Denise DFCS requested technical assistance from the National Resource Center for Permanency and Family Connections re Quality Visit Training. Staff from NRC will be providing the curriculum and facilitator's training for this on January 20-22, 2010. This training will be presented in each region to direct service staff and supervisors during the month of February 2010. | The Monitor is evaluating defendants' progress and will report on this requirement at the end of Period 2, as required. |

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.B.11.e. and f.<br><br>Foster Care Service Standards<br><br>Transition to Independent Living | 32 & 33 | By the end of implementation Period 2:<br>e. At least 60% of children in custody 14-20 years old during the Period shall be provided with Independent Living services as set forth in their service plan.<br>f. At least 60% of children in custody transitioning to independence during the Period shall have available an adequate living arrangement, a source of income, health care, independent living stipends, and education and training vouchers. DFCS shall also assist such children in obtaining, prior to transitioning to independent living, the necessary documents and information identified in the COA standards for emancipating youth. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements. The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy. Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at II.12.a.-c.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Transition to Independent Living | YR-2 IP, at 41-42 | a. Defendants shall develop and begin implementing a written plan to address independent living service gaps identified in the Foster Care Independent Living Services Assessment. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams<br>Status: 1/20/10 Angie: Angie Williams and Mario Johnson, Dir. IL Services, met to review findings of FC Assessment and begin process of developing plan to address gaps. Both then met with Jerry Milner to review findings and recommendations of the Assessment and its implications on IL. Next steps include: Jerry Milner to assist in research of Best Practices in ILS; Mario to contact NRC to determine what role the NRC might play in assisting MS address service gaps. We will host a round-table of staff, contractor staff, stakeholders and youth to brainstorm ideas to address these gaps and the target for that is February 17, 2010. | As of February 2, 2010, the plan was not developed. Unless there is additional progress, it is unlikely defendants will be able to implement the plan by the end of Period 2. |
| cont. | | b. Defendants shall develop and begin implementing a system for ensuring that emancipating youth have obtained, prior to transitioning to independent living, the necessary documents and information identified in the COA standards for such youth. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams<br>Status: Working w/ IL director to address and develop a plan. | As of February 2, 2010, the system was not developed. Unless there is additional progress, it is unlikely defendants will be able to implement the system by the end of Period 2. |
| | | c. DFCS will develop for each region the capacity and current resource guides necessary to assist youth in locating and/or enrolling in educational or vocational programs appropriate to their needs, interests, abilities, and goals, such as high school or GED programs; colleges or universities; vocational training programs; and special education services. | End of Period 2 | When Due: End of Period II<br>Who's Responsible: Jeff Wedgeworth, Carolyn Gremillion & Angie Williams<br>Status: Collaborating with IL. Dir. to revise Guide | As of February 2, 2010, neither the capacity nor the resource guides were developed. Unless there is additional progress, it is unlikely defendants will be able to achieve this requirement by the end of Period 2. |

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at II.B.12.d.<br><br>Foster Care Review Standards<br><br>Case Closing and Aftercare | 34 | By the end of implementation Period 2:<br>d.  At least 40% of children in custody who are reunified during the Period shall receive a 90-day trial home visit period or have case record documentation reflecting the Youth Court's objection to such a trial home visit.  During that trial home visit period, the child's caseworker or a Family Preservation caseworker shall meet with the child in the home at least two times per month, and DFCS shall provide or facilitate access to all services identified in the child's after-care plan, consistent with Plan requirements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at II.B.13.i.<br><br>Foster Care Review Standards<br><br>Recruitment and Retention of Foster Families and Therapeutic Service Providers | 36 | By the end of Implementation Period 2:<br>i.  The rate structure recommended by the consultant for foster care providers to special needs children and for facilities providing congregate care, as agreed upon by the Parties or determined by the Court, shall be fully implemented. | End of Period 2 | Defendants' January 27, 2010 Report did not address this Period 2 requirement; but see Period 2 IP at II.14.a., below. | Certain rate structure recommendations have been the subject of recent and ongoing discussions between the parties.  Plaintiffs have objected to some of the consultant's recommendations.  During the February 2, 2010 parties' meeting, the parties addressed whether a supplemental assessment process should be instituted.  Discussions to resolve this matter are ongoing. |
| Period 2 IP at II.14.a.-f.<br><br>Foster Care Services Assessment and Implementation Steps<br><br>Recruitment and Retention of Foster Families and Therapeutic Service Providers | YR-2 IP, at 42-43 | a. By November 1, 2009, the consultant shall deliver to the Parties and the Monitor a written report setting forth (1) findings regarding the adequacy of the current schedule of foster care maintenance payments made to foster care providers serving special needs children and facilities providing congregate foster care in relation to the requirements of 42 U.S.C. § 675(4)(A) and the actual cost in the state of Mississippi to provide such care; (2) the methodology utilized to determine the actual costs in the state of Mississippi to provide such care; and (3) a schedule of recommended rates for foster care providers serving special needs children and facilities providing congregate foster care.  Plaintiffs shall have 30 days to raise any written objection to the schedule of recommended rates as determined by the consultant.  Should Plaintiffs raise objections and should the Parties be unable to reach agreement, the consultant's schedule and Plaintiffs' objection shall be submitted to the Court for final determination. | 11/1/2009 | When Due:  November 1, 2009<br>Who's Responsible: Lori Woodruff & Jerry Milner/CSF<br>Status:  Final Report issued.  Objections submitted by Plaintiffs.  February 2010 meeting with parties and CSF will be held to address concerns and questions. | There were methodological shortcomings in some aspects of the consultant's assessment that may be related to limitations in the scope of services for the rate setting contract that were not consistent with these requirements.  Plaintiffs have objected to some of the consultant's findings and resolution of this matter is subject to ongoing discussions between the parties. |

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| cont. | | b. Defendants, in conjunction with a qualified independent consultant approved by the Monitor, shall develop and begin implementing a written plan for targeted recruitment and development of a range of family and facility placements that will adequately meet the placement needs of the foster care population. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Angie Williams and Jerry Milner/CSF<br>Status:  Meetings with CSF were held re the plan and implementation | As of February 2, 2010, the plan was not developed.  Absent a more accelerated process, it does not appear the plan can be finalized and completed during Period 2. |
| | | c. Defendants shall develop and begin implementing a written plan to provide services for foster parents in every county to prevent and reduce stress and family crisis. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Angie Williams<br>Status:<br><br>Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the categories listed above blank. | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed.  As of February 2, 2010, the plan was not developed.  Absent a more accelerated process, it does not appear the plan can be finalized and completed during Period 2. |
| | | d. In consultation with Mississippi foster parents, DFCS shall identify additions and revisions to the current foster parent training curriculum that are necessary to adequately train foster parents to meet the needs of the children placed in their care.  Foster parent training classes based upon the revised curriculum shall be available in every region. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Angie Williams and Denise Rouse<br>Status:<br><br>Defendants' January 27, 2010 Report did not address these Period 2 requirements, leaving the categories listed above blank. | The Monitor has not identified evidence of demonstrable progress toward meeting this requirement, and will report more fully on her findings by the end of Period 2. |
| | | e. DFCS shall create a resource family workgroup (consisting of staff and resource families) to develop and implement resource family practices and protocols that address the types of information that should be provided to resource families prior to taking a child into the home, what type of training is needed, what emergency procedures need to be in place for resource families, what strategies are effective in recruiting, and how resource families can be included in case planning. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Angie Williams and Mary Ann Everett<br>Status:  Will be working with NRC on this project | The resource family workgroup has not been created.  Absent a more accelerated process, it does not appear resource family practices and protocols can be developed by the end of Period 2. |
| | | f. DFCS shall regionalize its recruitment and retention efforts, and for each  region have in place a stakeholder recruitment and retention team to  identify local needs and develop and implement plans for recruiting,  supporting, and utilizing foster and adoptive parents. | End of Period 2 | When Due:  End of Period II<br>Who's Responsible: Jerry Milner / CSF<br>Status:<br><br>Defendants' January 27, 2010 Report did not address these Period-2 requirements, leaving the categories listed above blank. | The stakeholder recruitment and retention teams have not been established.  Absent a more accelerated process, it does not appear these requirements will be met by the end of Period 2. |
| Settlement Agreement and Reform Plan at III.A.2.<br><br>Outcome Measures<br><br>Reunification | 36 | By the end of implementation Period 2:<br>2.  At least 30% of children who are discharged from custody and reunified with their parents or caretakers in the last year shall be reunified within 12 months of the latest removal from home. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |

*Olivia Y. v. Barbour:* Draft Outline of Interim Findings Related to Period-Two Requirements
February 16, 2010

| Cite / Section Title | Page in Text | Description | Due Date | Defendants' January 27, 2010 Report | Monitor's Findings |
|---|---|---|---|---|---|
| Settlement Agreement and Reform Plan at III.B.2.<br><br>Outcome Measures<br><br>Time to Adoption Finalization | 37 | By the end of implementation Period 2:<br>2.  At least 15% of children who were discharged in the last year upon finalization of an adoption shall have had the adoption finalized within 24 months of the latest removal from home. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at III.C.2.<br><br>Outcome Measures<br><br>Number of Placements | 37 | By the end of implementation Period 2:<br>2.  In the last year, at least 40% of children in care less than 12 months from the time of latest removal from home shall have had two or fewer placements. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Settlement Agreement and Reform Plan at III.D.2.<br><br>Outcome Measures<br><br>Abuse/Neglect/ Maltreatment in Care | 38 | By the end of implementation Period 2:<br>2.  The rate of abuse or maltreatment in care in the last year shall not exceed 1.14%. | End of Period 2 | Defendants' January 27, 2010 Report did not address these Period 2 requirements.  The Report did not provide any explanation regarding why these requirements were not addressed. | Defendants should indicate whether the outcome data required by the Period-2 Plan is collected, and if so, whether MACWIS reports on it, and if so, whether and how defendants have verified its accuracy.  Report is due to Monitor and plaintiffs' counsel by February 17, 2010. |
| Period 2 IP at III.1. and 2.<br><br>Council on Accreditation Readiness Assessment | YR-2 IP, at 45 | Defendants shall implement the following recommendations from the COA Accreditation Readiness Assessment, Part I, issued July 21, 2008:<br>1. By September 1, 2009, Defendants shall identify DFCS offices where cross-county clustering would be beneficial, and Defendants shall create cross-county office clusters in those locations in order to provide more supervision to line staff and to equalize caseloads; and | 9/1/2009 | When Due:  September 1, 2009<br>Who's Responsible: Lori Woodruff<br>Status:  DFCS created a regional system of 13 regions compared to 7 during the 2009 year, thus reducing the number of ASWSs per RD, resulting in more manageable areas for RDs to evaluate.  The service delivery area has been reduced.  Through staff meetings at the State Regional and County Levels, the workload analysis is used to determine the need for particular county clustering.  Periodically RD's are asked to supply briefings re: how clustering is being utilized to better serve at-risk population.  Results of random inquiries evidenced ASWSs being used and workers being assigned as needed, across county lines. | The Monitor will evaluate defendants' progress and report on this matter by the end of Period 2. |
|  |  | 2. By November 1, 2009, Defendants shall create a centralized intake system that receives and screens all reports of child maltreatment and that forwards all screened in reports to the appropriate DFCS office. | 11/1/2009 | When Due:  November 1, 2009<br>Who's Responsible: Kate McMillin<br>Status: Central Intake Policy, Revised Intake Policy Vol IV §B, pps. 2010-19. Central Intake System was running statewide as of November 1, 2009. May be revising screening tool. | The centralized intake system was implemented on a timely basis.  Defendants are working to address concerns related to the initial implementation process.  The Monitor is evaluating this matter and will report fully by the end of Period 2, or earlier, as warranted. |