# Exhibit 5

*Prepared for*

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**State of Mississippi**

# Termination of Parental Rights Assessment

## *Final Report*

**November 24, 2009**



**Center for the Support of Families, Inc. (CSF)**

1107 Spring Street, Suite 2C, Silver Spring, MD 20910 ● Phone 301-587-9622 ● Fax 301-587-9620

# TABLE OF CONTENTS

**Executive Summary** ...........................................................................................................3

**Introduction** ....................................................................................................................7

**Methodology** ................................................................................................................. 8

**Termination of Parental Rights Assessment** .............................................................. 12

**Appendices** ................................................................................................... 25

    **Appendix A:  Staff Survey** ....................................................................... 26

    **Appendix B:  Case review sample questions** ...................................................... 34

    **Appendix C:  Functional Requirements Document** ............................................ 35

    **Appendix D:  MACWIS Reports for Termination of Parental Rights Assessment** ......44

# EXECUTIVE SUMMARY

The Mississippi Department of Human Services (MDHS) is currently implementing the provisions of the *Olivia Y. vs. Barbour* Settlement Agreement, approved by the court in January 2008. The implementation activities are being carried out by the MDHS Division of Family and Children's Services (DFCS). The Period 2 Annual Implementation Plan requires that MDHS conduct several foster care services assessments in conjunction with a qualified independent consultant approved by the Court Monitor,[1] as follows:

- A reunification services needs assessment;

- A medical, dental, and mental health services needs assessment;

- An independent living services needs assessment;

- A recruitment and retention of resource families assessment;

- A termination of parental rights (TPR) assessment;

- A child safety assessment; and

- A foster care placement assessment.

MDHS contracted with the Center for the Support of Families (CSF) to coordinate the completion of the assessments. This report includes only the TPR assessment. The remaining assessments were previously provided to MDHS.

The methodology used to conduct the TPR assessment includes a staff survey, case reviews, a number of focus groups and structured interviews, a review of policy and training, and development and review of MACWIS data and reports. Since CSF is also contracted to develop a child welfare practice model with MDHS, we designed the information gathering processes to provide information for both the practice model and the assessments.

## *Findings*

Through the two new MACWIS reports and subsequent 40 case reviews, we were able to validate the accuracy of the reports in capturing properly recorded information. However, the absence of relevant TPR information in the correct MACWIS screens affects the Department's ability to identify each and every child in care for 15 of the most recent 22 months for whom a TPR petition has been filed, who is legally free, or for whom an exception to filing a TPR petition has been duly documented. To some extent, we can attribute this to the recent addition of a MACWIS field for the TPR petition date and the unfamiliarity of staff with the new field. In other circumstances, complete TPR-related information is affected by not documenting case information in the appropriate fields according to MDHS procedure or not evaluating information pertinent to TPR on a regular basis, as the case may be for exceptions to filing a petition.

---

[1] Period 2 Annual Implementation Plan, Mississippi Settlement Agreement and Reform Plan, Section II: Foster Care Services Assessment and Implementation Steps, 2. Foster Care Assessments. Filed May 4, 2009.

**Mississippi Foster Care Services Assessments**

The accuracy of the reports in capturing TPR petition dates improved substantially between the two rounds of case reviews that we conducted, although the difference in capturing exception information was minimal. We believe that the most recent reports will provide MDHS with a basis for moving forward in addressing the permanency needs of children in foster care for 15 of 22 months, and that the usefulness of the reports will increase as they become increasingly accurate over time through the implementation of our recommendations below.

Based on our assessment of TPR proceedings, we made the following additional findings:

- Through the new MACWIS reports, we identified 973 children that had no exceptions noted, but had been in foster care for at least 15 of the previous 22 months. The results of the sub-sample of 22 cases indicate that errors appear to be the result of data entry, and staff may be less likely to input a TPR petition filed date if there is already a legally freed date for the case.

- Through the new MACWIS reports, we identified 185 children in foster care for at least 15 of 22 months with no recorded TPR petition filed, no legally freed date, and no MACWIS-documented exceptions. The results of the sub-sample of 18 of these 185 children indicated that while MDHS is actively pursuing TPR filings in several cases, in a little under half of the cases (eight), circumstances that would qualify as exceptions to filing TPRs do appear to exist but are not documented as exceptions in the case file. Relatively few cases (two) reviewed indicate no circumstances that would warrant exceptions and no progress toward filing a TPR petition.

- Through the new MACWIS reports, we identified 612 children in foster care for at least 15 of the most recent 22 months with documented exceptions to filing a TPR petition recorded in the County Conference/Recommendations reasons. The most commonly recorded reason for not filing a TPR petition was that it was not in the best interests of the child, accounting for 60.1 percent of the exceptions.

- The Federal requirement for documenting exceptions to filing a TPR petition is that the exception be recorded in the child's case plan. We are not confident that the case plan is the typical place in which staff records this information, since we obtained it from the County Conference/Recommendations tab in MACWIS.

- There is not currently a reliable process for determining the date of filing the TPR petition uniformly across the State, since the AGs office files the petitions in most circumstances and we understand that there is not a process in place to communicate that information to County Departments for entry into MACWIS. This situation is complicated because County Courts can accept petitions without going through AGs office.

- The only systematic monitoring of filing of TPR petitions timely or documenting exceptions seems to be through the Foster Care Review (FCR) on individual children. There has not been a broader process for monitoring to ensure that petitions are filed timely and appropriately as evidenced by our difficulty in obtaining accurate information on the petitions. Discrepancies between our findings in the MACWIS reports and in the case

reviews, e.g., presence or absence of legally freed dates, indicates a need for a broader monitoring process that includes accountability measures that ensure timely and accurate activities and recording of information.

- While the new reports developed by MACWIS provide an accurate means for identifying relevant dates and information in MACWIS, issues concerning users' uniform input of the data and communication that ensures they have the data to input will need to be resolved before this is a totally reliable reporting process.

- We identified some areas in which we believe that policy and training could be strengthened to support practice in the area of decision-making and procedures regarding TPR. For example, we are not sure that caseworkers always correctly identify appropriate exceptions to filing TPR petitions. Simply because we identified circumstances in cases that could meet the criteria for an exception, even when those circumstances were not documented as exceptions, does not mean that the caseworkers would always consider those same circumstances as valid exceptions to filing a TPR petition or that the circumstances were currently evaluated in light of TPR filing requirements. Further, the MACWIS reports pick up exceptions to filing a TPR petition only if they are recorded in the *most recent* County Conference. On the surface, having a documented exception in an earlier County Conference but not in the most recent one might appear to be a documentation oversight. However, in the absence of current documentation we cannot be sure that previously identified exceptions are being evaluated and re-considered at all County Conferences or in the general case planning for a child. Finally, the Federal requirement is that exceptions to filing the TPR petition be documented in the child's case plan and that does not seem to happen as frequently as the exceptions are documented in the County Conference.

## Recommendations

Based on our findings, we are making the following recommendations:

- We recommend that MDHS issue guidance to County Departments regarding the new TPR petition date fields in MACWIS and directions regarding entering dates in the system. The guidance should include information pertaining to petitions filed by County Departments in County Court as well as petitions filed by the AGs office and should advise staff to enter dates and other information in the required uniform fields on a timely basis.

- We recommend that for the next several months, MDHS continue validating the MACWIS reports through random case reviews in order to strengthen the accuracy of the reports.

- We recommend that MDHS develop a protocol with the AG's office that ensures regular communications with County Departments on the dates that TPR petitions are filed, so that the information can be entered into MACWIS promptly by the county worker.

- We recommend that MDHS review and strengthen its policy regarding the TPR process as needed, and clarify policy with County Departments, for example, in the area of identifying and documenting appropriate exceptions to filing a TPR petition at each County Conference.

**Mississippi Foster Care Services Assessments**

- We recommend that the CQI process and enhancements to supervision address the timeliness and appropriateness of TPR practice and procedures, e.g., that decision are made timely and accurately, that referrals are made timely, that exceptions are appropriate to the child's/family's circumstances, and that all information is recorded accurately in MACWIS.

- We recommend that when the FCR reviews an individual child's case each six months at the time of County Conferences that the FCR reviewers compare the information pertaining to TPR identified in the review with the information recorded in MACWIS, both in the case plan and the court history fields, and note the conformity or lack of conformity in its feedback/reports to the county[2].

- We recommend that the TPR reports developed by MACWIS be actively used in evaluating county performance, and be distributed monthly to Regional Directors and ASWSs, as a means of monitoring their accuracy and consistency and in promoting accountability for complete information.  We recommend that for children identified in the reports in care for at least 15 of the most recent 22 months without either a petition filed date or an exception documented, that the ASWS provide a written report to the RD explaining the circumstances of the case and the reasoning behind neither a filing a petition nor documenting an exception.

- We recommend that a supervisory protocol be developed to use the TPR reports in the supervision of caseworkers, to ensure that exceptions are appropriate, documented correctly and routinely evaluated, and that TPR petitions are filed timely based on Federal requirements.  Supervisors should be required to validate the accuracy of the TPR information in the MACWIS reports on a monthly basis in order to ensure accurate information on children in care 15 of 22 months going forward.

- Finally, we recommend that MDHS strengthen training on TPR proceedings and decision making as a means of ensuring that practice in this area is appropriate.  Training should address the issue of children who object to adoption by helping build the skills of staff to discuss adoption appropriately with children in foster care, identifying strategies to address the concerns expressed by children/youth, and ensuring that permanency goals are re-evaluated and re-considered over time.

---

[2] We understand that this occurs currently to some extent, but are unclear on how corrective actions are pursued in response to the FCR findings.

# INTRODUCTION

The Mississippi Department of Human Services (MDHS) is currently implementing the provisions of the *Olivia Y. vs. Barbour* Settlement Agreement, approved by the court in January 2008. The implementation activities are being carried out by the MDHS Division of Family and Children's Services (DFCS). The Period 2 Annual Implementation Plan requires that MDHS conduct several foster care services assessments in conjunction with a qualified independent consultant approved by the Court Monitor,[3] as follows:

a.  A reunification services needs assessment;

b.  A service provider needs assessment with the purpose of identifying available medical, dental, and mental health services and gaps in services;

c.  An assessment of the quality and array of independent living services available to foster children ages 14-20;

d.  A recruitment and retention assessment to determine the need for additional foster care support services;

e.  A termination of parental rights (TPR) assessment for the purposes of identifying those children who have been in custody more than 15 of the previous 22 months and for whom DFCS has neither filed a TPR petition or documented an exception under the Federal Adoption and Safe Families Act (ASFA);

f.  A child safety assessment of DFCS practice for prioritizing, screening, assessing, and investigating reports of maltreatment of children to determine the extent to which DFCS investigations and decisions are based on a full and systematic evaluation of the factors that may place child at risk; and

g.  A placement assessment of current needs for achieving compliance with the placement standards set forth in Section II.B.5 of the Settlement Agreement, which shall include (1) the structure of the placement process, including the role and efficacy of the state office placement unit; (2) the services and supports available to support enhanced placement stability, including out-patient or in-home assessment and treatment services to avoid the frequent use of time-limited assessment and treatment placement programs; and (3) the placement resources needed to meet the placement needs of children in custody.

MDHS contracted with the Center for the Support of Families (CSF) to coordinate the completion of the assessments. This report includes only the TPR assessment, since we submitted the remaining assessments to MDHS previously. The report provides a description of the methodology used to conduct the assessment, the findings of the assessment, and a summary of our major recommendations.

---

[3] Period 2 Annual Implementation Plan, Mississippi Settlement Agreement and Reform Plan, Section II: Foster Care Services Assessment and Implementation Steps, 2. Foster Care Assessments. Filed May 4, 2009.

# SECTION I: METHODOLOGY

## *Approach to Conducting the Assessment*

Since CSF is contracted to develop a child welfare practice model for MDHS, we combined some of the information gathering processes to collect information that would serve multiple purposes. For example, we presented questions in a staff survey that addressed the components of the practice model and the TPR assessment, and we asked focus group questions that pertained to multiple assessments and the practice model.

The information gathering process included the following components:

## *Staff Survey*

We designed an electronic survey with input and approval from the MDHS Central Office, and posted it on Survey Methods for completion by child welfare staff across the State. The Central Office issued an invitation by email to staff to complete the survey over a two-week period, which we later extended by an additional week in order to provide more opportunity for staff to participate in the survey. A copy of the survey is provided in *Appendix A.*

Although we organized the survey according to the components of the practice model, we inserted questions for each assessment area, including the TPR assessment, which could provide us with staff's perceptions of the agency's effectiveness in each area.

Through the two response periods, 254 staff completed the survey as follows:

- 93 (36.61 percent) responses from Family Protection Specialists, 49 (19.29 percent) from ASWS, 37 (14.59 percent) from other, 30 (11.81 percent) from State Office staff, 25 (9.84 percent) from Family Protection Workers, 11 (4.33 percent) from Resource Workers, and 9 (3.54 percent) Regional Directors;

- 74 (29.13 percent) respondents have worked at MDHS for more than 10 years, 69 (27.17 percent) have worked at MDHS for 1-3 years, 47 (18.5 percent) for 5-10 years, 24 (9.45 percent) for 6 months to one year, and 18 (7.09 percent) for less than 6 months; and

- 93 (36.47 percent) respondents had been in their current position for 1-3 years, 56 (21.96 percent) for less than 6 months, 33 (12.94 percent) for six months to one year, 30 (11.76 percent) from 3-5 years, 24 (9.41 percent) for 5-10 years, and 19 (7.45 percent) for more than 10 years.

In analyzing the results of the survey, we used Survey Methods functionality to create tables that display the results. We exported data to Microsoft Excel, manually reviewed the responses to all of the open-ended survey questions, and categorized or grouped responses according to our best understanding of what the respondents indicated in their comments. The results of the staff survey are incorporated throughout the discussion of each assessment.

## MACWIS Data Reports

We worked with the MDHS MACWIS staff to develop two reports for children in foster care in the State for at least 15 of the most recent 22 months. One report identified those children with documented exceptions to filing a TPR petition, and the other report identified those children without a documented exception and without having a TPR petition date filed. Because MDHS had not previously tracked the TPR petition date in MACWIS nor defined 15 of 22 months in accordance with the Federal definition, it was necessary to design the new reports to define 15 of 22 months in foster care according to the Federal definition. In order to collect information on the date of filing the TPR petition, MDHS staff reviewed monthly reports submitted by the Attorney General's office listing children for whom TPR petitions were pending, identified the petition dates, and manually entered those dates into the new MACWIS report. For one county, Forest County which does not use the AG's office to file TPR petitions, Forest County manually reviewed the reports, collected the data and State Office staff entered the data into MACWIS.

After re-running the reports with the data that had been manually entered, we conducted an initial review of 30 children's cases, drawn from the report of children in care for 15 of 22 months with no exceptions and no TPR petition filed dates. The purpose of that initial review was to validate the information in the MACWIS report and to gain some insights into why petitions had not been filed in those cases. The initial case review showed that there was information in the files pertaining to filing TPR petitions that had not been captured by the MACWIS reports due to the information being recorded in fields other than those from which the MACWIS report was pulling the data, i.e., there were data entry issues affecting the accuracy of the report. Following that case review, we worked with MDHS central office staff to issue written instructions to all child welfare staff advising them to review the new reports which had been posted on the MACWIS "P Drive," verify that the information in the reports was accurate, and enter correct information in the relevant fields. We provided a two-week period for staff to enter the correct data before re-running the reports. Those re-created reports that included the information entered by staff at the request of the MDHS central office served as the basis for this assessment after we determined through a second case review that the reports are capturing TPR information when entered in the correct MACWIS fields.

## Case Reviews

We conducted two sets of case reviews, including a 30-case sample from the initial MACWIS reports and a 40-case sample from the corrected MACWIS reports for the TPR Assessment. For the case review drawn from the initial MACWIS reports, we reviewed a sample of 30 children that the report indicated had neither a documented exception nor a TPR petition filed in order to gain some understanding of the circumstances of those children. That case review yielded several results, as highlighted below:

- Although we selected the sample to reflect children who had neither a TPR petition filed nor a termination of parental rights, we found in the case review that in 15 of the 30 cases, either a TPR petition had been filed (two cases) or TPR had been granted by the court (13 cases); and

- In at least seven cases, we noted that parental rights had been terminated but the date of the TPR had not been picked up in the MACWIS report due to caseworkers not entering the TPR dates in the correct screen in MACWIS.

After the correction and re-creation of the TPR reports, we conducted a second case review of a total of 40 cases, including cases with dates on the MACWIS reports for TPR petitions filed and for Legally Freed dates (TPR achieved), as well as those with no TPR request dates (the date the central office approves a request to file a TPR petition), as a way to validate the reports based on the information contained in MACWIS. In the second review, we found a higher level of concurrence between the information in the MACWIS reports and the case reviews than in the initial review. Based on the second review, we concluded that the MACWIS reports were collecting accurate information from the designated fields, but that some discrepancies remain due to the timing of data entry relative to the run dates of the reports and due to other data entry issues.

We developed individual case review protocols for each sample of cases reviewed. The case review protocols were automated in a Microsoft Access data base, and a list of the questions pertaining to the TPR case sample is included in Appendix B. All of the information from the case reviews was taken from electronic case records in the MACWIS system. We entered the information from the case reviews into a Microsoft Access data base which permitted us to develop reports and conduct an analysis of the responses.

### *Focus Groups*

We conducted a series of focus groups in order to gather information on how various stakeholders understand and perceive their roles; the extent to which their practice supports the DFCS mission and values; to clarify how practice in the field supports policy; to obtain their first-hand view of which services, programs, and initiatives support positive outcome achievement; and to determine barriers to effective, consistent practice and service delivery. We conducted focus groups with the following representatives:

- Four groups of caseworkers representing a large number of County Departments in four areas of the State (Tupelo, Hattiesburg, Jackson area, and Greenville);

- Four groups of Area Social Work Supervisors in the same locations;

- The MDHS Regional Directors;

- A group of regional resource workers;

- A group of regional resource supervisors;

- One group of parents served by MDHS;

- Three groups of foster parents; and

- A focus group of youth in foster care through MDHS.

We developed a focus group protocol that was structured around DFCS' mission and values that we used primarily with the caseworker and supervisor focus groups. For the remaining groups, we developed specific questions for which we thought they could provide first-hand information.

### Review of Policy and Procedures

For each of the assessments, we conducted a review of current policy and procedures that is documented in each assessment.

### Limitations of Our Approach

While we obtained substantial information in the course of developing the practice model, there are some limitations to the information gathered. Reviewing cases entirely from the MACWIS system poses some limitations, given concerns about the thoroughness of information in the system. Given those same concerns, we also acknowledge that the thoroughness and accuracy of some TPR-related data in any given MACWIS report will be affected by the timeliness of data entry and the entry of data in the correct MACWIS fields.

# SECTION II:  THE TERMINATION OF PARENTAL RIGHTS ASSESSMENT

The Period 2 Annual Implementation Plan requires that MDHS conduct the following assessment:

"A termination of parental rights (TPR) assessment for the purposes of identifying those children who have been in custody more than 15 of the previous 22 months and for whom DFCS has neither filed a TPR petition nor documented an exception under the Federal Adoption and Safe Families Act (ASFA)."

## <u>Section I: Applicable Standards</u>

### *A.  Policy and Requirements*

DFCS is bound by several legal mandates regarding requirements for filing petitions for terminations of parental rights (TPR). Specifically, the requirements of the Child and Family Services Review (CFSR) and the *Olivia Y* Settlement Agreement, and the Council of Accreditation (COA) standards all address this issue, as follows:

- The CFSR monitors for Federal statutes that require States to file petitions to terminate parental rights on behalf of children who have been in care for 15 of the most recent 22 months.  The Federal requirements are located in the Social Security Act at Section 475 (5)(E) as follows:

  *(E) in the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, or, if a court of competent jurisdiction has determined a child to be an abandoned infant (as defined under State law) or has made a determination that the parent has committed murder of another child of the parent, committed voluntary manslaughter of another child of the parent, aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter, or committed a felony assault that has resulted in serious bodily injury to the child or to another child of the parent, the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption, unless-*

  *(i) at the option of the State, the child is being cared for by a relative;*

  *(ii) a State agency has documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child; or*

  *(iii) the State has not provided to the family of the child, consistent with the time period in the State case plan, such services as the State deems necessary for the safe return of the child to*

*the child's home, if reasonable efforts of the type described in section 471(a)(15)(B)(ii) are required to be made with respect to the child;*

- Both the *Olivia Y* settlement agreement requirements and Council on Accreditation (COA) standards also require that the agency file TPR petitions on behalf of children in foster care for 15 of the most recent 22 months unless a legal exception applies.

- The *Olivia Y* settlement agreement also requires that the TPR packet is to be sent to the Attorney General for review within 30 days of establishing adoption as plan, and that the supervisor must meet with the caseworker to provide documentation to the Attorney General's office for approval to file TPR and to resolve issues for filing through monthly meetings.

MDHS has an extensive policy regarding when TPR referrals should be considered, how they should be processed and the exceptions to filing a TPR petition. Policy states that every family's situation is to be assessed and evaluated separately to determine if TPR is the most appropriate action. Policy notes that one or more of seven factors should exist as legal grounds for making a TPR referral:

1) A parent has deserted or abandoned the child(ren) and cannot be found;

2) The parents have had no contact with the child(ren) in care for six months, if the child is under the age of three, and one year if the child is over the age of three;

3) Parents are responsible for several abusive incidents perpetrated on at least one child;

4) Child(ren) are in care for over one year and their parents have not made themselves available for visits or fails to implement their reunification plan;

5) The parents have a diagnosable, ongoing behavior related to alcohol, drug abuse, mental illness, or physical limitation that is not likely to change, or the parents do not end the behavior if it is within their control to do so;

6) Child(ren) have severe antipathy to the parent, or there has been a significant erosion of the child-parent relationship due to prison, lack of communication, or visitation while the child was in care; and

7) The parent has been convicted of: rape of a child, sexual battery of a child, touching a child for lust, exploitation of a child, felony abuse or battery of a child, carnal knowledge of a step or adopted child or a child of a cohabitating partner, murder of a child, or child has been adjudicated and the court has determined reunification is not appropriate.

Based on the above grounds for filing a TPR, policy requires caseworkers to submit a TPR referral packet to the placement unit in the State Office once the referral for TPR has been approved by both the ASWS and the Regional Director. The placement unit then finalizes the referral process with the Attorney General. Policy identifies several timeframes for caseworkers

to initiate TPR proceedings, ranging from one month from the time the child is placed in care to a child being in care over a year, as follows:

- The child has been in foster care for 15 of the last 22 months. This does not have to be consecutive time, and does not include trial home visits or runaway status;

- The child has been in custody for six months and parents have not made efforts to complete the ISP. In cases where the child is under the age of three, the referral for TPR is to initiated within the first two months after parents have failed to complete the ISP;

- The child has been abandoned as an infant. The TPR petition is to be initiated within the first 30 days in this instance;

- The parent has been convicted of the felonies listed in the grounds for TPR (rape of a child, sexual battery of a child, touching a child for lust, exploitation of a child, felony abuse or battery of a child, carnal knowledge of a step or adopted child or a child of a cohabitating partner, or murder of a child); and

- The court of jurisdiction orders the agency to proceed with a TPR petition.

If the above circumstances in the case exist, there are a few exceptions which exist where caseworkers may choose to forego referring for a TPR, as follows:

- The child is placed with a relative;

- The agency documents compelling reasons why it is not in the best interests of the child to have a TPR referral;

- The agency has not provided the services deemed necessary for the parents due to either the services not being available or not being accessible; and

- Parents are making regular, meaningful visitation with the child, and therefore it is not in the best interest of the child to have a TPR petition filed.

While policy is detailed about the different instances in which caseworkers should initiate TPR proceedings, there are some concerns about the current policy which should be explored. First, while the Adoption and Safe Families Act (ASFA) includes the requirement of filing a TPR petition if the child has been in care for 15 of the 22 months, MDHS policy references this rule as stated in Mississippi Code 43-15-13(3), which actually states this rule applies to any child who was in care prior to July 1, 1998, which may cause confusion for children who entered care after that date. MDHS might consider clarifying that this policy applies to all children in care, regardless of when they entered.

Second, the TPR policy could be strengthened with additional guidance on when caseworkers should not file the TPR petition based on the allowable circumstances for an exception. For example, some additional guidance would be helpful on what constitutes "compelling reasons"

that would cause a caseworker to determine TPR was not in the child's best interest, or circumstances when a child is placed with a relative that affect the decision to file the TPR petition.

Time frames in policy could also be clarified regarding filing petitions on behalf of abandoned infants. For example, policy requires that a TPR referral is to be submitted within 30 days if the child abandoned as an infant, but caseworkers are also required to diligently search for any interested relative for the child's first two months in care.

## B. Training

In order to ensure that DFCS accurately and consistently refers cases for TPR when it is deemed appropriate to do so by policy, staff should be effectively trained on policy, protocol, and procedure. We did not find TPR training addressed significantly in the new worker training. However, as part of the on-the-job training (OJT), workers are required to spend part of week one and two reading Section D of policy, which covers TPR procedures and legal requirements. In addition, during week eight of OJT which occurs in the classroom, one of the skills taught is the steps of the TPR process and the use of critical thinking to determine if the caseworker should refer their case for a TPR.

TPR is also briefly discussed in week three of the pre-service training curriculum, which focuses on case planning. As part of this module, new caseworkers are given a work sheet in which they are to detail the definition of TPR, the legal basis for TPR, when to refer, the grounds and exceptions for TPR and what documents go into the referral packet, per policy. It is unclear what the discussion is around the worksheet, or if worker's skill and knowledge of TPR practice and process is based on their reading of the policy manual in OJT. Policy, protocol and procedure regarding TPR referrals and exceptions are not covered in the advanced skills training for caseworkers.

## C. Monitoring

While DFCS does not currently have a comprehensive CQI system, the FCR process monitors TPR issues. Of the 46 issues that are monitored as part of FCR and County Conference process, two in particular relate to referrals for TPR and exceptions for not doing so, the statewide results of which are detailed in the table below.

| Percent of FCR Cases Cited for TPR-Related Issues | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | YTD Total |
| Issues cited due to children who have been in state's custody for 15 of the most recent 22 months; their case has not been referred for termination of parental rights and there is documentation lacking in their ISP of compelling reasons why pursuing TPR would not be in their best interests. | 7.4 | 1.2 | 5.8 | 1.1 | 3.3 | 2.6 | 3.7 | 7.0 | 0.0 | 3.2 | 3.3 | 3.6 |
| Issues cited related to children with a plan of adoption for which there are no documented efforts to finalize the plan of adoption within a reasonable time frame (i.e., a | 6.4 | 7.1 | 6.8 | 8.6 | 5.5 | 5.1 | 6.1 | 11.3 | 7.0 | 8.1 | 14.8 | 7.6 |

| lack of a TPR referral; no actions taken by adoption unit) | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

Very few of the issues noted on all FCR during the past year have related to TPR concerns. Only 3.6 percent of all issues cited in the FCR related to children who had not been referred for a TPR after 15 months and no exceptions had been noted. Slightly higher, 7.6 percent of all issues cited during the FCR were related to children with a goal of adoption where efforts were not being made to finalize, a possible reason for which could be a lack of a TPR referral.

We could not identify monitoring practices in place that address filing for TPR sooner than 15 of 22 months where indicated by the child's/family's circumstances.

We identified a substantial gap in monitoring TPR practice related to MACWIS. Prior to initiating this assessment, there was no screen/field in the MACWIS system to enter the date of the TPR petition and therefore, these dates were not being captured in the system. We also could not identify an alternate system within MDHS that identified the petition dates. We learned that there is a monthly report sent to MDHS by the Attorney General's (AG) office that provides status information on the children that have been referred to the AG for TPR proceedings. However, that report also did not include the date the petition was filed[4].

## Section III: Current Practice

### A. Staff Survey

We conducted a staff survey to determine their perceptions on how well DFCS is at referring for TPR in a timely fashion, as well as documenting exceptions in the case plan. The table below details the results from the survey:

| Please rate your perception of your agency's effectiveness in the following areas of practices: | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Not at All | Rarely | Some times | Frequently | Almost Always | No Info/NA | Total |
| Making timely decisions about TPR and adoption: | 0 (0%) | 14 (8%) | 41 (23.43%) | 40 (22.86%) | 56 (32%) | 24 (13.71%) | 175 |
| Determining and documenting exceptions to filing TPR petitions for children in foster care 15 of 22 months: | 2 (1.16%) | 9 (5.2%) | 37 (21.39%) | 40 (23.12%) | 57 (32.95%) | 28 (16.18%) | 173 |

DFCS staff indicated that the agency is frequently or almost always effective in making timely decisions about TPR and adoption about half the time (about 55 percent). They indicated about the same measure of effectiveness in determining and documenting exceptions to filing for TPR at 15 of 22 months (about 57 percent).

---

[4] During this assessment, MDHS staff worked with the AGs office to add the date the petition was filed to the report.

## B. Data Reports

There were no existing MACWIS reports that identified children in foster care for 15 of the most recent 22 months according to the Federal definition, or that captured the dates of the TPR petition or exceptions to filing a petition. In order to identify children who had been in care for 15 of the most recent 22 months and who had a TPR petition filed on their behalf or had an exception noted, we requested that MACWIS staff develop data reports that capture the needed information. The reports are attached to this report as Appendix D.

The Functional Requirements Document found in Appendix C provides information used to create the new report. It achieves several things, as follows:

- It identifies children in custody of the Department for at least 15 of the most recent 22 months;

- It creates a new field in MACWIS for workers to enter the date the TPR petition is filed;

- It creates a tickler for workers in the field when the child has been in foster care for 13 of the most recent 22 months to alert them to either submit the TPR package to the State Office or document an exception; and

- It captures the exceptions documented in the case file for not filing the TPR petition by picking up reasons recorded in MACWIS on the County Conference/Recommendation Reasons 3 tab. (The County Conference is held within six months of a child coming into custody and every six months thereafter while the child is in custody.)

Although the report was created providing a field to record the date the TPR petition was filed, there was no information in MACWIS to populate that field, and we could not identify an aggregate source for that information. Working from the most recent monthly report provided to MDHS from the Attorney Generals' (AG) office on the status of pending referrals for TPR, State Office staff manually pulled the TPR petitions to record the dates and then entered those dates in the new field in MACWIS. (We understand that the AGs report has now been modified to include the date the petition is filed.) For the one county that does not use the AGs office to file TPR petitions, Forest County, we asked county staff to manually validate the report and provide relevant dates, which State Office staff also entered into the new field in MACWIS. We have concerns about the accuracy of the information due to several reasons. We understand that it is possible for counties to file TPR petitions directly in County Court, rather than going through the AGs office, and therefore all children for whom a petition is filed may not be included in the AGs report even thought using the AGs office seems to be the most common means of filing the petitions. Second, we believe there are serious data quality issues regarding users entering all needed information appropriately in MACWIS and that TPR might have occurred some time ago for some children who do not appear on the AGs reports of pending referrals. As noted in the methodology section, we attempted to correct the issues that surfaced with the initial MACWIS data report runs by re-running and re-validating the reports.

The two tables below represent the aggregate information obtained from both the initial and the second versions of the MACWIS reports, run on August 17, 2009 and October 27, 2009, respectively. We are relying on data from the second set of MACWIS reports for this assessment, but are showing data from both sets of reports to demonstrate the changes that occurred in correcting the reports with more current and properly entered data.

| *Children with no exception noted*[5] | **First Round MACWIS Reports** | **Second Round MACWIS Reports** |
|---|---|---|
| Children statewide in foster care for 15 of the most recent 22 months with no exceptions noted | **1008** | **973** |
| Children with a TPR Request Date, indicating the TPR pursuit has been approved by the State Office | **816 (81.0%)** | **849 (87.3%)** |
| Children with a TPR petition filed date | **177 (17.6%)** | **357 (36.7%)** |
| Children with a 'Legally Freed' date, indicating a TPR had occurred | **266 (26.4%)** | **431 (44.3%)** |
| Children with neither a TPR petition filed date or Legally Freed date | **565 (56.1%)** | **185 (19.0%)** |

The numbers of children with a TPR petition filed and legally freed increased substantially between the two MACWIS data report runs, and the number of children with neither a TPR petition filed date or a legally freed date decreased dramatically from 565 children down to 185 children.

| *Children with an exception noted*[6] | **First Round MACWIS Reports** | **Second Round MACWIS Reports** |
|---|---|---|
| Children statewide in foster care for 15 of the most recent 22 months with an exception recorded in the file | **619** | **612** |
| Children with an exception of being cared for by a relative | **215 (34.7%)** | **219 (35.8%)** |
| Children with an exception that the TPR was not in the best interests of the child | **371 (59.9%)** | **368 (60.1%)** |
| Children with an exception that services were needed but not provided | **31 (5.0%)** | **26 (4.2%)** |
| Children with an exception that the child was age 14 or older and objected to adoption | **185 (29.9%)** | **175 (29.1%)** |
| Children with an exception that the parent was maintaining regular visits with the child | **236 (38.1%)** | **214 (35.0%)** |

---

[5] It is possible for children to have one or more of these dates; therefore the percentages cited exceed 100 percent.

[6] The report allows for recording more than one exception per child, so many children will have multiple exceptions noted and the percentages cited below exceed 100 percent.

**Mississippi Foster Care Services Assessments**

Unlike the Children with No Exceptions report, the numbers and percentages for children with exceptions noted did not change substantially between the two MACWIS data report runs.

## C. Case Reviews

The information below is based on our second round case review of a sample of 40 cases from the revised data report of children in foster care for 15 of 22 months with no TPR petition filed date and no exception documented. We selected a sample of 30 children from among the 973 children with no exceptions noted, and an additional 10 children who had no TPR request date, TPR petition filed date, or legally freed date. We checked to ensure that there were no duplicates between the first round and second round of case reviews, as well as no siblings that were separately reviewed. The 40 children in this sample had been in care in their current episode an average of 3.04 years. All 40 cases were opened in MACWIS at the time of the case review, and 39 of the 40 children had only one episode in the last 22 months, with the remaining child having two episodes. The chart below describes the breakdown of permanency goals for these 40 children, showing two-thirds (27) of the 40 children with a goal of adoption, and the rest with goals of independent living, relative placement, or reunification.

| Number of Children in Sample by Permanency Goal ||
|---|---|
| **Goal** | **Number of Children** |
| Adoption | 27 |
| Independent Living | 3 |
| Relative Placement | 2 |
| Reunification | 8 |
| **TOTAL** | **40** |

The table below details the TPR status findings on the 40 children in the sample as reflected in the MACWIS reports compared to information from the case reviews:

| TPR Status | Number of Children-MACWIS Report | Number of Children-Case Review |
|---|---|---|
| TPR Petition Filed Date only | 4 | 5 |
| Legally Freed Date only | 9 | 9 |
| TPR Petition Filed Date & Legally Freed Date | 5 | 8 |
| No TPR Petition Filed Date or Legally Freed Date | 22 | 18 |
| **TOTAL** | **40** | **40** |

Some discrepancies continued to exist between the information from the MACWIS report and the second round of case reviews. We were able to attribute some, but not all, discrepancies to data entry that occurred after the reports were generated and others to recording information in places other than where the MACWIS reports capture the information. To analyze the results of the case review in conjunction with the TPR report, we divided the case review analysis into those cases where the case review yielded either a date for filing the TPR petition or for achieving TPR (22 children) and those where no TPR petition had been filed (18 children).

*November 24, 2009*          *Final Report*          19

### *Review of Cases with Either a TPR Petition Filed Date or Legally Freed Date*

Twenty-two cases that we reviewed were found to have either a TPR petition filed date or a legally freed date. Of the 22 cases, we found through the case reviews that TPR petitions had been filed in thirteen cases, but the filing dates did not show up on the MACWIS report in four of the thirteen cases for the following reasons:

- In two of the four cases, the TPR petition filed dates were entered into MACWIS after the report had been run on October 28, 2009;

- In one of the four cases, the court event was labeled 'petition filed' and detailed in the comments section that it was a TPR filed, as opposed to being correctly recorded as 'TPR filed', and therefore did not show up in the MACWIS report; and

- In the final case, the TPR petition filed date was entered with a tracking number not attached to the custody case, which explains why it was not captured by the report.

Of the 22 cases, the case records included legally freed dates in nine cases that had no TPR petition filed date in the MACWIS report. Of these nine cases, the MACWIS report did not show a legally freed date for three children, which we determined to be due to staff not recording the legally freed dates in the correct "TPR History" MACWIS screen, and the MACWIS report correctly included the legally freed dates for six children.

### *Review of Cases with no TPR Petition Filed Date*

We reviewed eighteen cases where TPR petitions had not been filed, nor had TPR occurred[7].

- In eight of the eighteen cases, MDHS appeared to be actively pursuing TPR, and were in the process of preparing the TPR packet to be filed. In one of these cases, the agency has been trying to file the TPR petition for nearly six months but the judge does not favor TPR even though the permanency goal for the child has changed to adoption.

- In eight of the eighteen cases, we identified circumstances in the cases that could constitute possible exceptions to filing a TPR petition, as follows, although no exceptions were documented in the most recent County Conference tab[8] and, thus, were not reflected in the MACWIS report:

  o In five cases, the parents remain actively involved, either through regular phone contact, visitation, or in one case, a trial home visit; and

  o In three cases, the child is currently placed with a relative.

---

[7] In one case, a child had a legally freed date from her adoption show up in the MACWIS report. In this case, the child had been placed in care from the adoptive home, and the agency is making plans to file a TPR petition against the adoptive mother.
[8] Three of these eight cases had a history of possible exceptions noted in previous County Conference recommendations.

- In two of the eighteen cases, we could not identify a possible exception based on the cases as they were documented. In one of the cases, the parents have not complied with court ordered services in the last couple of years, and based on the narrative, there do not appear to be any parent-child visits. In the second case, the child entered care at age 16, has a goal of independent living, and the case record did not reflect any discussion of adoption or the teen objecting to adoption.

For these eighteen cases, we also looked into the history of County Conference recommendations, where exceptions to TPRs are noted, to determine if the reason these children did not have a TPR filed could be due to data entry issues. We found a compelling reason not to file a TPR in *previous* County Conference recommendations in eight of the 18 cases and that TPR is now being pursued in five of those eight cases. The MACWIS report captures exceptions noted in the most recent County Conference, not in earlier conferences. This suggests to us that by and large, exceptions are not being routinely entered into MACWIS County Conference recommendations from conference to conference, even though a basis for the exception may exist. In the remaining three cases, the historical exceptions noted in the County Conference recommendations still exist in the case, further confirming concerns over accurate data entry.

## Section IV: Summary and Recommendations

### A. Summary of Findings

Through the two new MACWIS reports and subsequent 40 case reviews, we were able to validate the accuracy of the reports in capturing properly recorded information. However, the absence of relevant TPR information in the correct MACWIS screens affects the Department's ability to identify each and every child in care for 15 of the most recent 22 months for whom a TPR petition has been filed, who is legally free, or for whom an exception to filing a TPR petition has been duly documented. To some extent, we can attribute this to the recent addition of a MACWIS field for the TPR petition date and the unfamiliarity of staff with the new field. In other circumstances, complete TPR-related information is affected by a failure to document case information in the appropriate fields according to MDHS procedure or to evaluate information pertinent to TPR on a regular basis, as the case may be for exceptions to filing a petition.

The accuracy of the reports in capturing TPR petition dates improved substantially between the two rounds of case reviews that we conducted, although the difference in capturing exception information was minimal. We believe that the most recent reports will provide MDHS with a basis for moving forward in addressing the permanency needs of children in foster care for 15 of 22 months, and that the usefulness of the reports will increase as they become increasingly accurate over time through the implementation of our recommendations below.

Based on our assessment of TPR proceedings, we made the following additional findings:

- Through the new MACWIS reports, we identified 973 children that had no exceptions noted, but had been in foster care for at least 15 of the previous 22 months. The results of the sub-sample of 22 cases indicate that errors appear to be the result of data entry, and staff may be less likely to input a TPR petition filed date if there is already a legally freed date for the case.

**Mississippi Foster Care Services Assessments**

- Through the new MACWIS reports, we identified 185 children in foster care for at least 15 of 22 months with no recorded TPR petition filed, no legally freed date, and no MACWIS-documented exceptions. The results of the sub-sample of 18 of these 185 children indicated that while MDHS is actively pursuing TPR filings in several cases, in a little under half of the cases (eight), circumstances that would qualify as exceptions to filing TPRs do appear to exist but are not documented as exceptions in the case file. Relatively few cases (two) reviewed indicate no circumstances that would warrant exceptions and no progress toward filing a TPR petition.

- Through the new MACWIS reports, we identified 612 children in foster care for at least 15 of the most recent 22 months with documented exceptions to filing a TPR petition recorded in the County Conference/Recommendations reasons. The most commonly recorded reason for not filing a TPR petition was that it was not in the best interests of the child, accounting for 60.1% percent of the exceptions.

- The Federal requirement for documenting exceptions to filing a TPR petition is that the exception be recorded in the child's case plan. We are not confident that the case plan is the typical place in which staff records this information, since we obtained it from the County Conference/Recommendations tab.

- There is not currently a reliable process for determining the date of filing the TPR petition uniformly across the State, since the AGs office files the petitions in most circumstances and we understand that there is not a process in place to communicate that information to County Departments for entry into MACWIS. This situation is complicated because County Courts can accept petitions without going through AGs office.

- The only systematic monitoring of filing of TPR petitions timely or documenting exceptions seems to be through the FCR on individual children. There has not been a broader process for monitoring to ensure that petitions are filed timely and appropriately as evidenced by our difficulty in obtaining accurate information on the petitions. Discrepancies between our findings in the MACWIS reports and in the case reviews, e.g., presence or absence of legally freed dates, indicates a need for a broader monitoring process that includes accountability measures that ensure timely and accurate activities and recording of information.

- While the new reports developed by MACWIS provide an accurate means for identifying relevant dates and information in MACWIS, issues concerning users' uniform input of the data and communication that ensures they have the data to input will need to be resolved before this is a totally reliable reporting process.

- We identified some areas in which we believe that policy and training could be strengthened to support practice in the area of decision-making and procedures regarding TPR. For example, we are not sure that caseworkers always correctly identify appropriate exceptions to filing TPR petitions. Simply because we identified circumstances in cases that could meet the criteria for an exception, even when those circumstances were not documented as exceptions, does not mean that the caseworkers would consider those same circumstances as

valid exceptions to filing a TPR petition or that the circumstances were currently evaluated in light of TPR filing requirements. Further, the MACWIS reports pick up exceptions to filing a TPR petition only if they are recorded in the *most recent* County Conference. On the surface, having a documented exception in an earlier County Conference but not in the most recent one might appear to be a documentation oversight. However, in the absence of current documentation we cannot be sure that previously identified exceptions are being evaluated and re-considered at all County Conferences or in the general case planning for a child. Finally, the Federal requirement is that exceptions to filing the TPR petition be documented in the child's case plan and that does not seem to happen as frequently as the exceptions are documented in the County Conference.

## B. *Recommendations*

Based on our findings, we are making the following recommendations:

- We recommend that MDHS issue guidance to County Departments regarding the new TPR petition date fields in MACWIS and directions regarding entering dates in the system. The guidance should include information pertaining to petitions filed by County Departments in County Court as well as petitions filed by the AGs office and should advise staff to enter dates and other information in the required uniform fields on a timely basis.

- We recommend that for the next several months, MDHS continue validating the MACWIS reports through random case reviews in order to strengthen the accuracy of the reports.

- We recommend that MDHS develop a protocol with the AG's office that ensures regular communications with County Departments on the dates that TPR petitions are filed, so that the information can be entered into MACWIS promptly by the county worker.

- We recommend that MDHS review and strengthen its policy regarding the TPR process as needed, and clarify policy with County Departments, for example, in the area of identifying and documenting appropriate exceptions to filing a TPR petition at each County Conference.

- We recommend that the CQI process and enhancements to supervision address the timeliness and appropriateness of TPR practice and procedures, e.g., that decision are made timely and accurately, that referrals are made timely, that exceptions are appropriate to the child's/family's circumstances, and that all information is recorded accurately in MACWIS.

- We recommend that when the FCR reviews an individual child's case each six months at the time of County Conferences that the FCR reviewers compare the information pertaining to TPR identified in the review with the information recorded in MACWIS, both in the case plan and the court history fields, and note the conformity or lack of conformity in its feedback/reports to the county[9].

---

[9] We understand that this occurs currently to some extent, but are unclear on how corrective actions are pursued in response to the FCR findings.

**Mississippi Foster Care Services Assessments**

- We recommend that the TPR reports developed by MACWIS be actively used in evaluating county performance, and be distributed monthly to Regional Directors and ASWSs, as a means of monitoring their accuracy and consistency and in promoting accountability for complete information. We recommend that for children identified in the reports in care for at least 15 of the most recent 22 months without either a petition filed date or an exception documented, that the ASWS provide a written report to the RD explaining the circumstances of the case and the reasoning behind neither a filing a petition nor documenting an exception.

- We recommend that a supervisory protocol be developed to use the TPR reports in the supervision of caseworkers, to ensure that exceptions are appropriate, documented correctly and routinely evaluated, and that TPR petitions are filed timely based on Federal requirements. Supervisors should be required to validate the accuracy of the TPR information in the MACWIS reports on a monthly basis in order to ensure accurate information on children in care 15 of 22 months going forward.

- Finally, we recommend that MDHS strengthen training on TPR proceedings and decision making as a means of ensuring that practice in this area is appropriate. Training should address the issue of children who object to adoption by helping build the skills of staff to discuss adoption appropriately with children in foster care, identifying strategies to address the concerns expressed by children/youth, and ensuring that permanency goals are re-evaluated and re-considered over time.

**Mississippi Foster Care Services Assessments**

# APPENDICES

**Appendix A:  Staff Survey**

**Appendix B:  Case review sample questions**

**Appendix C:  Functional Requirements Document**

**Appendix D:  MACWIS Reports for Termination of Parental Rights Assessment**

- *MWZ014S1:  Children who have been in custody for 15 of the most recent 22 months "with no" ASFA exception noted:  County/Region/State Summary Totals*

- *MWZ014D1:  Children who have been in custody for 15 of the most recent 22 months "with no" ASFA exception noted*

- *MWZ014S2:  Children who have been in custody for 15 of the most recent 22 months "with" ASFA exception noted:  County/Region/State Summary Totals*

- *MWZ014D2:  Children who have been in custody for 15 of the most recent 22 months "with no" ASFA exception noted:  County/Region/State Summary Totals*