# Exhibit 6

# MISSISSIPPI DIVISION OF FAMILY AND CHILDREN'S SERVICES



## CONTINUOUS QUALITY IMPROVEMENT PLAN

### State Fiscal Year 2011

# CONTENTS

| | |
|---|---|
| Introduction | 3 |
| Mission | 3 |
| Definitions | 4 |
| DFCS' Vision for CQI | 4-5 |
| Characteristics of CQI | 5-6 |
| Framework for CQI | 7 |
| State Office Unit | 7 |
| Local CQI Process | 8 |
| Other CQI Components | 9-10 |
| CQI Mandates | 10-14 |
| Stakeholders | 14-15 |
| Measures and Outcomes | 15-20 |
| CQI/Child Welfare Practice Model Diagram | 20 |
| CQI Timelines for SFY 2011 | 21 |
| CQI Feedback Loop and Summary | 22 |
| CQI Case Review Instrument | Appendix I |
| CQI Case Review Instrument Instructions | Appendix II |
| CQI Case Review Instrument Scoring Guide | Appendix III |
| CQI Onsite Review Instrument MACWIS Documentation Guide | Appendix IV |

## INTRODUCTION

The SFY 2011 DFCS CQI plan consolidates any previous DFCS statewide CQI plans, provides updates on CQI development and activities to date, and cites planned activities and developments for the year. It is the agency's intent to update this plan annually, with each annual plan and update being a consolidated summary of CQI work to date.

The initial plan for CQI activities was created in State Fiscal Year (SFY) 2009. During this period, the Department of Human Services, Division of Family and Children Services (FCS) was undergoing an organizational restructure to meet the requirements of the *Olivia Y* settlement agreement. As part of this process, the agency formed the Continuous Quality Improvement Unit, which was known as the Performance Improvement Unit. In addition, the CQI Unit did not have a Division Director. Therefore, the goals and plans of the SFY 2009 plan were broad. The CQI Unit's function was limited to the monitoring of the placement cases through the Foster Care Review process that had been in place for a number of years. In addition, the unit's workgroup had monthly meetings for the purpose of meeting *Olivia* Y and COA requirements.

In state fiscal year 2010, the agency revised its plan to reflect the work that was being done by the Court Monitor approved Consultant (Center for the Support of Families). The plan also outlines the agency's purpose for engaging CQI activities, as well as the agency's values that are embraced to promote positive outcomes for the children and families by reinforcing the principles of family centered practice and assuring high quality.

The CQI Plan for SFY 2011 is extended to provide an overview of the completed activities and achievements in the development of the CQI activities, as well as identify newly established goals for the continual expansion of the CQI Unit.

## THE CONTINUOUS QUALITY IMPROVEMENT PLAN MISSION

- Assigns responsibility for coordination/implementation of Continuous Quality Improvement (CQI) activities, and provision of technical assistance in using the CQI process;

- Sets forth the purpose and scope of CQI activities;

- Establishes how the Agency periodically reviews essential management and service delivery processes consistent in light of quality priorities;

- Defines stakeholders and how stakeholders will participate in the CQI process;

- Outlines methods and timeframes for monitoring and reporting activities; and

- Includes provision for an assessment of the utility of the CQI program, including any barriers and supports for implementation.

This plan outlines and describes the implementation of the CQI process within the Mississippi Division of Family and Children's Services (DFCS). The primary purpose for engaging in CQI activities is to promote positive outcomes for the children and families served by the division by reinforcing the principles of family centered practice and assuring high quality of services. To achieve this goal, it is essential for the division to: 1) institute structured processes in order to examine, evaluate, and act on quality issues within our

3

agency and (2) involve all division staff as well as families and stakeholders in these processes.

## **Definitions**

Implementing a performance improvement process requires a clear understanding and consensus on the terminology of "Quality Assurance" and "Quality Improvement". As it relates to the DFCS CQI process, these terms are defined as follows:

**Quality Assurance:** Those processes that measure the conformity of child welfare practice with the goals, mission, and values of MDHS, and compliance with the standards that guide the work of MDHS with children and families. These activities may include but are not limited to case record reviews, program evaluation, input from families and stakeholders, and use of well-defined performance indicators.

**Quality Improvement:** Actions taken that lead to incremental improvements in the provision of services or in the services provided to consumers. These actions are usually conceptualized and implemented by staff and stakeholders, based on information gained through review activities. Providing constructive feedback to the staff will help assure that the CQI process actually leads to improved practice and outcomes.

# DFCS' VISION FOR CQI

Our vision for a functioning CQI process in Mississippi is based on our commitment to the mission and values of the Division of Family and Children's Services (DFCS).

## **DFCS Mission Statement**
- Our Mission is to lead Mississippi in protecting children and youth from abuse, neglect and exploitation by providing services to promote safe and stable families.

## **Purpose of DFCS:**
The Mississippi Department of Human Services, Division of Family and Children's Services has identified six values that will be honored in working with clients, community partners and each other.

## **These are:**
- **Competence** - To be competent, we have technical skills and knowledge; we work with common sense; we make informed decisions; and we follow through to achieve successful outcomes.
- **Integrity** - To act with integrity we are honest in our interactions; we are accountable for our actions; and we do the right thing.
- **Responsibility** - To be responsible we do what we say we are going to do; we take initiative.
- **Respect** - To be respectful we treat others with kindness, compassion, dignity, and honor differences of our clients and each other.
- **Personal Courage** - To be courageous we are loyal to the Mission of the MDHS/DFCS; we advocate for our clients; we lead by example even when doing so carries risk.
- **Collaboration** - To collaborate we make decisions for the common good; we share resources based on need; we work together effectively in teams; and work with a collective knowledge of all programs and services.

4

As we move to implement the provisions of the *Olivia Y.* settlement agreement, the Council on Accreditation (COA) standards, and practices within the Child and Family Services Reviews (CFSR), these values will guide the work that we do with children and families throughout the state. They will provide a framework that allows us to integrate policy, practice, and monitoring activities in ways that provide consistency in our work, and help assure that all children and families have the opportunity for the highest quality of interventions regardless of which county in the state serves them.

Our vision for CQI is one that is thoroughly integrated into our ongoing work and serves primarily as a means of reinforcing the practices that we are currently implementing in the state. We view CQI as a means of keeping our mission and vision in clear focus for staff in the field and as a primary means of sustaining the improvements that we achieve in practice and outcomes over time. In order for it to serve that function, it must actually monitor for the practices that we put into place and provide sufficient feedback to staff to inform practice, decision making, and resource allocation.

In developing strategies for implementing the many requirements of the *Olivia Y.* settlement agreement and the COA standards, we understand that we must present these requirements in ways that caseworkers and supervisors in the field can understand them in relation to their work with children and families and in relation to our mission and values. We want these many requirements to lead to measurable improvements in the outcomes of our work with children and families, rather than simply being put into place as a compliance process.

By grouping together the major requirements of the settlement agreement, considering recognized best practices in child welfare, and operationalizing the Mission Statement and values above, six broad categories of activities in working with children and families have been identified that comprise the essence of the practice model. They are as follow:

- Mobilizing Appropriate Services Timely
- Safety Assurance and Risk Management
- Involving Families and Children in Case Planning and Decision Making
- Strengths and Needs Assessments of Children and Families
- Preserving Connections and Relationships
- Individualized and Timely Case Planning

Our CQI process is designed in accordance with the practice model, and thereby supports its implementation and sustainability. To design a monitoring process that is not fully synchronized with our practice model would be counterproductive to the goals of the *Olivia Y.* settlement agreement and the COA standards, and would not provide us with a thoroughly integrated and consistent way of serving children and families.

## Characteristics of CQI

Our CQI process includes the following characteristics:

- *CQI reinforces positive practice at the case level. T*he CQI process serves as a means of reinforcing the practices within the practice model, which also addresses the many requirements of the settlement agreement, COA standards, and the CFSR. By making a clear connection between practice and monitoring, MDHS has a much stronger opportunity to improve practice and outcomes. Monitoring should also be conducted in ways that provide constructive case-specific feedback to staff in addition to providing higher level analyses of information, in order to help staff understand the relationship between their practice and the outcomes for children and families. Monitoring should serve a

supportive, helpful function to staff rather than being a compliance-based exercise that does not directly benefit workers in the field in their daily work.

- *CQI provides analysis of findings at a high enough level to inform the ongoing development and maintenance of the practice model.* In addition to case-level feedback, the aggregated findings of CQI at county, regional, and statewide levels should be sufficient for the Department's leadership to determine whether goals are being attained, what factors are supporting or inhibiting goal attainment, and whether changes to the model or systemic factors need to be implemented to stay on course.

- *CQI evaluates the capacity of the system to support quality casework practice.* In addition to monitoring practice and outcomes, the CQI process also monitors for the effectiveness of systemic factors, such as training, policy, resources, and caseloads to support practice that is consistent with the practice model. It will provide information to the MDHS administration that will be useful in decision making, resource allocation, and technical assistance initiatives.

- *CQI is an inclusive process.* In order to be effective and thoroughly integrated into the Department's operations, CQI will reach all levels of MDHS staff and include stakeholders outside of the Department as well as inside. Both the statewide and local practice model implementation teams will have some responsibility for receiving and reviewing CQI information, and for providing some measure of oversight for the implementation of required program improvement plans resulting from the CQI reviews.

- *CQI is coordinated with other oversight and review processes and improvement efforts.* The CQI system is broad enough to include other monitoring activities, such as the Foster Care Review (FCR) process, Federal CFSR and title IV-E eligibility reviews, and the oversight of the *Olivia Y* court monitor. The goals and objectives of the various oversight processes are similar in focus and approach, and the goals, objectives, and activities associated with improvement strategies resulting from any of the reviews will be coordinated around the goals of systemic change within MDHS. Also, in order to address other CQI reporting requirements, there will be coordination with the MDHS units responsible for financial management, foster care licensure, and contracting, since these units have information needed for the State CQI reports.

- *CQI is focused on identifying strengths and needs of practice and supports making needed improvements.* As a result of the CQI reviews, both the strengths and needs of the agency's practice and systemic supports will be identified and described. Where the need is indicated, County Departments will be required to develop and implement program improvement plans that address areas needing improvement in the CQI process. Counties will be responsible for implementing needed improvements, with some oversight responsibility provided by the local practice model implementation teams in addition to State Office administrative oversight.

- *CQI will be integrated into the ongoing work of staff in County Departments, rather than being regarded as a special or periodic effort.* Although the State CQI unit will only have the capacity to conduct formal reviews of each County Department at periodic intervals, there will be processes in place between State Office reviews that ensure monitoring on a frequent basis. While monitoring is built into supervisory roles and responsibilities, more defined and formal monitoring activities will occur frequently and similarly to State CQI reviews.

- *CQI focuses on accountability and improvement.* The ultimate objective of CQI is to improve practice and outcomes. The information from CQI reviews will identify both the strengths and areas needing improvement within county practice and systemic factors, and guide the development of program improvement plans that address areas needing improvement. The analysis of information collected through CQI will help to identify associations among practice, systemic factors, and outcomes that can be used statewide and locally to develop effective improvement strategies. Further, as the systemic reforms evolve over time, the CQI information will be used to make any needed adjustments in the State's approach to implementing the practice model.

### FRAMEWORK FOR CQI

Mississippi's CQI structure includes the following components:

- State Office CQI Unit
- Local (county) CQI processes
- State CQI Team (that is either the State level practice model implementation team or a sub-group thereof)
- Local CQI Teams (that are either the county practice model implementation teams or a sub-group thereof)

Descriptions of the functions of each of these components are as follows:

**State Office CQI Unit**

Foster Care Review (FCR) and CQI will be reviewing cases of children and families served by MDHS on an ongoing basis. They are both located organizationally within the State Office and in the regions.

The State Office CQI unit maintains responsibility for coordinating CQI work statewide and specifically carries out the following responsibilities:

- Developing and updating the instruments and tools needed to carry out CQI responsibilities, such as review tools, procedures manual, sampling criteria, and so forth;
- Conduct regular CQI reviews of County Departments of Human Services;
- Provide training to participants on the CQI process, including State and local participants;

- Provide case-level feedback to county staff on cases reviewed, and provide feedback to supervisors and administrators on county-wide performance, and to State-level staff and stakeholders on county, regional, and statewide performance;
- Analyze the findings of reviews, including qualitative and quantitative analyses, and compile results into periodic reports that identify the strengths and areas needing improvement identified in the reviews;
- Assist Regional Directors in reviewing and approving county program improvement plans resulting from the reviews, and in determining if the goals and progress measures identified in the plans have been achieved;
- Ensuring that other oversight and monitoring functions within MDHS are coordinated and aligned; and,
- Conduct special studies as needed or requested to evaluate performance and outcomes in specific areas.

It has been recommended by the Center for the Support of Families that staffing of the State Office CQI unit include, at a minimum, a manager, a data analyst, a report writer, and CQI liaisons to each of the MDHS 13 regions. This is in addition to FCR staff. In order to coordinate the functions of the Foster Care Review process, the FCR reviewers are based in each region with the CQI liaisons.

**Local CQI processes**

In order for CQI to be integrated into the routine work within counties and regions, it is necessary to have more frequent CQI activity locally to supplement formal State CQI activities. MDHS is adopting a process of ongoing reviews in each county following the same basic protocols of State CQI reviews, and facilitated by the local CQI liaisons.

In order to help ensure that county staff participate in the CQI process and are connected to improvement efforts within the county, county child welfare staff should serve on the county CQI committees on a rotating basis.

The local CQI liaison will facilitate monthly meetings and the review process, which should include random case selection of a number of cases to be determined by MDHS in accordance with the size of the county. The emphasis is placed on using the committee to support staff in decision-making and offering constructive feedback on interventions, so as to help staff view the process as positive and helpful in improving practice. Direct and prompt feedback should always be provided to caseworkers and supervisors whose cases are selected for review. Committees will also conduct follow-up reviews or request status reports on how their recommendations have been addressed in the cases reviewed.

**Other CQI Components**

*Supervisory protocols for case reviews*

Supervision is an important aspect of assuring high quality casework practice. While the supervisor fulfills roles other than assuring quality of work, supervisory reviews of cases should be consistent with CQI in helping to ensure that the practices within the model are implemented effectively. A supervisory review protocol is in development that reflects the components of the practice model and is designed to offer staff constructive feedback on their interventions with children and families.

As the implementation of the practice model is rolled out, technical assistance will be provided to support supervisors and strengthen their capacity in reviewing for the components of the practice model, providing feedback to staff, and reinforcing the practices in the model.

*CQI Procedures Manual*

A procedures manual is in development to define CQI procedures, roles, and responsibilities clearly and to provide guidance on topics such as case reviews, case sampling procedures, feedback processes, development of reports, use of CQI findings to develop program improvement plans, and logistical issues in CQI.

*CQI Training*

Training at various levels is important to ensuring that CQI processes and functions are clearly understood and executed. Training of CQI unit staff will be central to consistent implementation of review activities, especially if liaisons are to be based regionally instead of centrally. Training of all staff will orient them to the purposes of CQI and their roles in the process, and will be incorporated into pre-service training for casework staff. Similarly, training will be provided to supervisors and administrators on their roles in reviewing cases and reports, monitoring performance, providing effective feedback, and using CQI information in decision-making and management practices. Training will also be provided to the local CQI committees for the completion of case reviews and other CQI related activities that may fall under their responsibility.

*Review of incidents, accidents, and grievances*

During state fiscal year 2011, the CQI Unit will develop a process for the review of incidents, accidents, and grievances. COA standards require that CQI monitor incidents, accidents, and grievances with regard to child welfare services. MDHS is developing a clear definition of the incidents and accidents that fall within the monitoring and reporting responsibility of CQI. For example, deaths, near deaths, and serious injuries to children under the Department's care and responsibility will be included in this definition. As well, similar incidents regarding children for whom MDHS has an open service case or a recently closed case will also be included in the definition. All grievances received by MDHS from consumers and stakeholders will be included in the definition.

The regional CQI liaisons will assume responsibility for tracking such incidents, accidents, and grievances. Regional Directors and ASWSs should have the

responsibility for resolving concerns raised, but tracking and monitoring of the receipt of information and how the issues were resolved should reside with CQI. Locally, each CQI liaison will work with the Regional Directors and ASWSs on a process for providing the CQI liaison with information as it is received, and each CQI liaison will have an internal process for tracking and following up on the investigation and resolution of issues reported within their regions.

Unless there is another body charged with the responsibility for investigating reports of child deaths, near deaths, and/or serious injuries, the local CQI committees will review these incidents/accidents. If there is another body charged with this responsibility, a representative of the local CQI committee can either participate in the review of the incident/accident or that the written report of the investigation by the authorized review body is provided to the local CQI committee and CQI liaison.

Where trends are identified within counties or regions, CQI liaisons will bring the information to the attention of Regional Directors for addressing through improvement strategies. The CQI liaisons will issue quarterly reports to Regional Directors, local and State CQI committees, and the State Office on the status of incidents, grievances, and accidents within their regions. If there are situations where concerns about incidents, accidents, and grievances constitute a pattern of concerns, the CQI liaison will recommend to the local CQI committee and Regional Director that a special study into the area of concern be conducted, in which case the CQI unit may take on that responsibility.

**CQI Mandates**

DFCS is subject to certain mandates and as a portion of the planning, the CQI plan will include the following:

- **Child and Family Services Review (CFSR) and Program Improvement Plan (PIP)**

A Program Improvement Plan (PIP) will be entered into as a result of the last Child and Family Services Review (CFSR) which was held in May 2010. DFCS remains cognizant of developing solutions which meet best practice standards which are in alignment with our mission and principles.

- **Five Year Strategic Plan**

DFCS' long term goals and objectives for the five year strategic plan are established by employing the Children's Bureau (CB) requirements and stakeholder, community partner, and consumer involvement. Meetings were held on state and regional levels in February and March 2009.

- **Annual Progress and Services Report (APSR)**

The APSR is submitted annually to the CB updating them on progress of DFCS' goals and any new objectives that DFCS has established.

- **Adoption and Foster Care Analysis Reporting System (AFCARS)**

10

AFCARS is a federally mandated report provided to the Department of Health and Human Services (DHHS) on a six month basis. This data file includes all children entering, exiting, and currently in out of home care for which DFCS has care and placement responsibility. This file reports placement settings, number of placement moves, and many other required elements. DHHS uses this file in conjunction with the National Child Abuse and Neglect Data System (NCANDS) to compile the state's data profile used for the CFSR. All validation utilities provided by DHHS are monitored for needed corrections of programmatic and system data entry and system adjustments within the Mississippi Automated Child Welfare Information System (MACWIS).

- **National Child Abuse and Neglect Data System (NCANDS)**

NCANDS is a federally mandated report that is submitted every federal fiscal year to DHHS. Included in this file are all abuse and neglects intakes/allegations by child and reports all findings, perpetrators, and if these children have received services prior to the intakes/allegations. These are just a few examples of the data included in this file. The file is used in conjunction with the AFCARS file to determine the safety profile component of the state's data profile for CFSR purposes. All validation utilities provided are monitored for needed corrections of programmatic and system data entry and system adjustments within the Mississippi Automated Child Welfare Information System (MACWIS).

- **Title IV-E Eligibility Review and Program Improvement Plan (PIP)**

The Children's Bureau (CB), within the Administration for Children's and Families (ACF), in collaboration with DFCS, conducted a primary eligibility review of Mississippi's Title IV-E foster care program during the week of July 14, 2008. The review team also included cross-state reviewers and staff from the Children's Bureau's Region IV Office of Grants Management.

The purpose of the Title IV-E foster care eligibility review was:
1. To determine whether Mississippi was in compliance with the eligibility requirements as outlined in regulation and statute at 45 CFR 1356.71 and Section 472 of the Social Security Act; and
2. To validate the basis of Mississippi's financial claims to ensure that appropriate payments were made on behalf of eligible children placed in licensed or approved foster family homes and child-caring institutions.

Pursuant to 45 CFR 1356.7(i), Mississippi is required to develop a Program Improvement Plan (PIP) designed to correct those areas needing corrective action as identified by the CB. DFCS has developed a PIP which will bring the Title IV-E's foster care maintenance program into compliance. *(See appendix)*

- ***Olivia Y.* Settlement Agreement/Court Monitor**

Children's Rights, Inc. filed the *Olivia Y. v. Barbour* lawsuit in the U.S. District Court for the Southern District of Mississippi in 2004, alleging violations of the rights of children living in the child welfare system. The Mississippi Department of Human Services (MDHS), Division of Family and Children's Services (DFCS) reached a Settlement Agreement with the Plaintiffs on January 4, 2008. The Settlement Agreement and Reform Plan sets out benchmarks to be completed in five implementation periods from January 4, 2008 through January 3, 2013.

The parties agreed on a Monitor of Defendants' compliance with the Mississippi Settlement Agreement and Reform Plan and the annual implementation plans. The Monitor's duties are to confirm independently the data reports and statistics provided pursuant to this Plan and the annual implementation plans; conduct independent case record and other qualitative reviews; review all plans and documents to be developed and produced by Defendants pursuant to this Plan; and report on Defendants' compliance in implementing the terms of the Plan and the annual implementation plans, and the achievement of the improved outcomes set forth therein. The Monitor shall prepare reports that will address these issues and be released periodically. The intent of the parties is that the Monitor shall develop a plan to transfer the primary monitoring function to DFCS' CQI Unit upon the termination of this Plan, or at such earlier time as provided for in Section VII.C of the Settlement. The Monitor shall work in collaboration with Defendants to build DFCS' CQI capacity.

- **Accreditation**

A part of the *Olivia Y.* Settlement Agreement mandated accreditation through the Council on Accreditation (COA) within five years. Although mandated, funding for this endeavor must be approved through legislative appropriations each year. Despite possible funding challenges in the future, the division will continue working toward accreditation with the recognition that accreditation and the CQI process are neither singular events nor one-time initiatives. Rather, accreditation and CQI together will continue to serve DFCS as a fully integrated and ongoing journey aimed at structuring and focusing efforts on quality issues and meeting best practice standards along with the state's practice model.

- **Foster Care Review**

The Foster Care Reviews are conducted by a Foster Care Reviewer who is an experienced, licensed social worker (Family Protection Specialist Advanced). Throughout the month, the Foster Care Review Program Director compiles a report of any issues of concern observed by the Foster Care Reviewer during the course of a case review and reports these issues to the Regional Directors, the agency's Unit Directors, and the agency's Director and Deputies. The Monthly Foster Care Review Issues Report contains a case specific listing of the issues cited and the aggregate data on the issues most commonly cited each month. The Regional Directors forward the information to the appropriate county staff for a response. A response is due to the Foster Care Review Program Director within 30 days of the report.

- **Special Safety Review Team**

    As part of the settlement agreement, a process was developed and implemented to conduct a special safety review, including an unannounced site visit, of all currently licensed resource homes with two or more reports of

maltreatment, including corporal punishment, within the last three years to determine whether any children placed in these homes are at risk of harm in any licensing standards related to child safety are not being met. For groups homes and other residential facilities that house children in custody that have three or more reports of maltreatment, including corporal punishment, within the last two years to determine whether any children placed in these facilities are at risk of harm or any licensing standards related to child safety are not being met. Any necessary corrective actions are identified and tracked by the CQI Unit.

This particular mandate of the settlement agreement has been met but it is the desire of the agency to continue these reviews on a regular basis to assure that the safety of children remains first and foremost. A process and criteria are currently in development to allow for the continuance of these reviews.

- **The Mississippi Change Management Implementation Project**

Mississippi DFCS was awarded The Mississippi Change Management Implementation Project through the Atlantic Coast Child Welfare Implementation Center (ACCWIC) and is a project geared toward the full and ongoing institutionalization of a family-centered practice culture in the Mississippi Department of Human Services, Division of Family and Children's Services, the public child welfare organization in the State of Mississippi. Such institutionalization will occur through the development of a model strategy of organizational analysis and development applicable to and replicable in public child welfare agencies in general. This model strategy will be developed through the in-depth analysis and implementation efforts focused on two critical, high profile counties in Mississippi.

The project request is for two years. It began in October, 2009. The proposal seeks change management tools necessary for effective implementation and sustainability of a Practice Model project recently initiated and currently underway designed to bring about the occurrence of family-centered practice consistently and ongoing throughout the State child welfare system. Technical assistance is requested in bringing about this change. The proposal includes requests for technical assistance in the development of methodologies for systems change, including analysis and assessment, goal development, strategic planning, change management, action planning, and evaluation.

The State of Mississippi is proposing a project of innovative and creative strategy through the focus on two specific counties with historical and current characteristics which are, though different from one another, extreme, unique, and challenging in any effort, present, past, or future, to implement and sustain a family-centered practice environment and culture. The proposal anticipates as an ultimate outcome of the project the development and design of a replicable approach and methodology for organizational analysis and development geared toward the sustained institutionalization of a culture in which the embodiment and internalization of specific desirable values, principles, and philosophy has occurred within the organization and among stakeholders and partners connected to the organization in efforts to achieve desirable outcomes. The proposal anticipates a landmark study and analysis and the development of an innovative, creative, model methodology for understanding organizations and bringing about desired change.

13

Specific project success in Mississippi will be the full, statewide implementation of the family-centered practice model and the existence of a model methodology and strategy for the institutionalization of a family-centered practice culture within the Division of Family and Children's Services.

**Workforce Stability**

A worker gap analysis is done on a monthly basis to determine areas throughout the state in need of additional staffing and supervision. The reorganization of the regional lines within the state has provided opportunity for more regional directors, second and third level supervision. The worker gap analysis also allows the state to determine areas in need of more licensure and adoption workers in order to meet timely permanency goals for children in out-of-home care.

## STAKEHOLDERS

The CQI process should be more than obtaining information from the numbers. Interviews with other resources such as clients, staff, and stakeholders should also be used to obtain data. The stakeholders are defined as clients, staff, as well as any entity (public or private) that serves the families and children of Mississippi and works in conjunction with DFCS. These stakeholders will be identified and will be involved in the planning of the 5 Year Strategic plan as well as all review boards, panels and conferences. It is imperative that these stakeholders be involved as they are instrumental in DFCS' mission. A good working relationship must be maintained with these stakeholders as this has not been the case in the past. All efforts will be made to include them in all aspects of DFCS services.

### Staff, Clients, Community Partners and Agency Staff:

The agency and its staff interact on a daily basis with others in an effort to provide quality services to families. In order for the CQI process to truly reflect a complete picture of the service delivery system, these partners must also be a part of the process. Therefore, the expectation of the CQI process is that community partners and consumers be involved at least by the Third Level, if not sooner.

Community Partners are individuals/entities with whom the division works in conjunction to provide holistic services to the populations we serve. Examples of community partners may include but are not limited to:

- Juvenile Court Representatives
- Foster Parents
- Service Recipients
- Residential or Counseling Service Providers
- Department of Mental Health
- Division of Economic Assistance
- Division of Child Support
- Guardians ad Litem
- Attorneys
- School Personnel
- Health Care Professionals
- Community or Child Advocates
- Community Partnership Representatives
- Law Enforcement Representatives

### Methods for involving stakeholders and how they are involved in CQI:

14

A strength of the Mississippi DFCS is its strong value for partnering with families and communities. The agency has worked diligently to develop partnerships with communities and to be accountable to our citizens through committees such as the Citizen's Review Board, the Children's Justice Act Panel and the Mississippi Association of Child Caring Agencies. DFCS is committed to openness, accountability, data driven decision making and working with our partners to improve services and outcomes for children and families. In Mississippi's CFSR PIP, many actions steps included partnerships with the Office of State Court Administrators, Department of Mental Health, Department of Health, state universities, community partnerships and others. DFCS anticipates continued involvement with these entities.

DFCS is partnering with the courts to pilot court improvement projects which include creation of Uniform Youth Court Rules which were effective January 2009, as well as a collaborative effort with Court Improvement Plan to develop Court Curriculum for staff development (implemented October 1, 2008) and by 2009 Court Curriculum for court personnel. One of the employees of the Court Improvement Project is also employed by the Hinds County District Attorney's Office and specializes in child abuse cases. A cross training summit is in the planning stages between the courts and DFCS.

Community partners are selected based on their ability to assist in the process of generating solutions. Participants are purposefully selected who are very familiar with the policy, procedures and practice of the division. This will help avoid spending a substantial amount of time orienting them to the agency.

Consumers (clients) are identified as adults and youth involved with DFCS. Their involvement begins at the same level as community partners. The selection of these participants is done very carefully with a goal of selecting individuals who have experience with and knowledge of DFCS. If necessary a staff person who knows the individual may serve as a coach to assist them in understanding their role. Consumers may be either current or past clients. It may be more comfortable for a consumer who is no longer receiving services to actively participate in the process. Youth are selected from the Independent Living Programs (ILP) to provide input through the Strategies for Assessing Independent Living Skills (SAILS) Committee.

## MEASURES AND OUTCOMES

The State CQI reviews consist of a review of information from multiple sources, including data reports that track individual performance indicators at the county, regional, and statewide levels, and an onsite review that includes case reviews of families served by the county/region, supplemented by interviews with key parties to each case. The onsite reviews also include interviews with stakeholders internal and external to MDHS in order to evaluate the systemic capacity of the county/region to support practice consistent with the practice model.

In order to be effective at improving outcomes for children and families, CQI monitors *quantitative information* that provides data on the status of identified indicators, such as numbers of children and families served in various ways, the time frames for critical activities and goal achievement, and the level of available resources. It also monitors *qualitative information* in order to provide information on how well children and families are served, how appropriate various interventions are, and how the values and principles underlying the practice model are integrated into casework practice.

15

**Quantitative information**

It is imperative that the CQI system have access to aggregate data to monitor and evaluate indicators and outcomes.

Among the critical reports at a statewide and county level are the following *(Case reviews will provide information on practices driving the data and inform implementation – will not be used to determine compliance)*:

- Caseworker Face-to-Face Visits with Child - MWZWC5
- Caseworker Face-to-Face Visits with Parents of children with goal of reunification - MWZWCR3
- Investigation Timeliness for all Children - MWZ1272
- Investigation Timeliness for Children in Custody - MWZ1271D
- Children with Alleged Maltreatment While in Custody - MWBRD06
- Placement Stability (Children in care < 12 mos. with 1-2 placements and all children in care by number of placements) - MWBRD07 and/or MWZPLM5
- Termination of Parental Rights Reports - MWZ014D1 and MWZO14D2
- At least 50% of DFCS caseworkers shall carry a caseload that does not exceed Plan caseload requirements. No more than 20% of case-workers shall carry a caseload exceeding twice the Plan caseload requirements. – Manual Report
- No more than 20% of supervisors who are responsible for supervising DFCS caseworkers shall be responsible for supervising more than 5 caseworkers. – Manual Report
- Special Needs of Children in Foster Care MWZAH08D
- Children who have been in custody at least 6 months during Period 2 have had a timely court review.
- Children in custody at least 12 months during Period 2 have had a timely annual court review - Ad hoc detail report
- Children discharged from custody and reunified with parents/caretakers in the last year are reunified within 12 months of latest removal from home - MWBRD05D summary report
- Children discharged in the last year upon the finalization of an adoption have had the adoption finalized within 24 months of the latest removal from home - MWBRD10B (will be incorporated into MWBRD05D above with all)
- Number of Children in Foster Care by Placement Type - MWZ0508D but will require new report.
- Number of Children/Families in Protection/Prevention Cases – Summary exists
- Number of Licensed/Pending Foster Family Homes
- Foster parents, with at least 1 foster child residing in their home during the Period, have had a DFCS worker visit the home twice a month (therapeutic foster homes) or monthly (non-therapeutic foster homes), per Plan, and documented in the children's case records – MWZPLMB
- Children in custody, ages 14-20 during Period 2, are provided with Independent Living services, per their service plan - MWBRD16.
- No foster child remains in an emergency or temporary facility more than 45 days unless approval exception signed by Division Director - MWZWCR6D
- No child is placed in more than 1 emergency or temporary facility within 1 episode of foster care, unless an immediate placement is necessary to protect the safety of the child or others and is certified, in writing, by the Regional Director - MWZWCR6D

16

- No child under 10 years of age is placed in any kind of congregate care setting unless child has exceptional needs that cannot be met in a relative or foster family home or child is a member of a sibling group, and the Regional Director has granted express written approval for the congregate care placement. - MWZ050HD
- Sibling groups, with one or more of siblings under 10, are not placed in congregate care settings for more than 45 days - MWZ050HD
- During the trial home visit period, child's caseworker or a Family Preservation caseworker meets with the child in the home at least twice per month.
- All foster children remaining in placement following a maltreatment investigation are visited by caseworker twice per month for 3 months after investigation conclusion - MWZWCR6D
- New Caseworkers and New Supervisors hired on or after June 1, 2010 complete training requirements before assuming their responsibilities. - MWASA9S1, MWASA5D1, MWZ2352B, Human Resources Hire Report

In using quantitative data to evaluate performance, the system needs the capacity to produce reports that reflect not only point-in-time data on the child welfare population, but also foster care entry cohort profiles. This information will be especially useful in evaluating the extent to which the implementation of the practice model is having the desired effects on outcomes. The production and longitudinal analysis of foster care entry cohorts will provide a basis for determining if the outcomes and experiences of children newly entering foster care in counties that have implemented the practice model differ notably from the cohorts of children who entered foster care either prior to the practice model or in counties that have not yet implemented the model. These data will help local implementation/CQI teams, administrators, and other staff and stakeholders evaluate their efforts over time relative to the practice model and use the information to make needed adjustments in strategies, resources, and so forth.

It is very important that the reports are produced for individual counties and for regions within the State, so that administrators and CQI liaisons may track performance over time and make informed decisions about resource development, program improvement efforts, technical assistance, and so forth. Regional Directors and ASWSs have a prominent role in reviewing county and regional-level reports routinely, to address them in staff meetings, and with local CQI teams, in order to evaluate performance, consistency of practice with the practice model, and monitor the resources needed for effective child welfare practice.

**Qualitative information**

In combination with qualitative information, the CQI system reviews for the quality of interventions with children and families, the services they receive, and the adequacy of the systemic supports. The primary means of collecting and reviewing this information is through regular case reviews that sample families receiving in-home and foster care services, and through surveys with individuals that have first-hand knowledge of the issues under review.

An underlying value regarding qualitative information is that children and families served by the child welfare system should have a voice in how they are served. Although providing children and families with the opportunity to voice their concerns, strengths, needs, and preferences regarding services is very important, it does not imply that the agency abdicates its legal responsibilities to protect children and to carry

out its legal responsibilities. It simply means that case planning and service delivery are often more effective when they are based on information provided directly by children and families. When the CQI process demonstrates the importance of family input into how they are served, it serves as reinforcement for including children and families in the actual practice of case planning and service delivery.

*Case level information:* CQI monitors for the effectiveness of casework practice at the individual case level. In order to be as accurate as possible in evaluating practice, reviews include information obtained from documented case files, but also from interviews with parents, children, foster caretakers, service providers, and caseworkers. Together, the information will provide an accurate description of how well each of the six practice model components functions within the individual case. In addition to the information needed to evaluate conformity with the practice model, the review of individual cases also includes indicators that pertain to Federal or State requirements not specifically identified within the practice model.

Cases reviewed include both in-home and foster care cases. Although most of the requirements of the *Olivia Y* settlement agreement pertain specifically to foster care services, the practice model is intended to guide casework practice in both in-home and foster care cases. In order to promote application of the practice model across all cases, those cases monitored are selected randomly. The CQI unit has developed detailed sampling guidance that includes case selection criteria and the number of cases to be reviewed by type (14 foster care cases and 10 in home cases per region).

Where families and children are served through purchased services, the quality of those services, the fit of the services to identified needs, and the accountability and responsiveness of service providers should be part of the case review process.

*Systemic factors:* In evaluating systemic performance, the CQI system gauges the capacity of the child welfare "system" to support interventions with children and families that are consistent with the practice model and to help them achieve positive outcomes. Among the systemic factors to be monitored are:

- *Training of staff and providers.* CQI will conduct evaluations of the extent to which pre-service and ongoing training are being provided and are providing the skills needed for staff and providers to carry out their roles and responsibilities.

- *Service array.* CQI will evaluate the extent, accessibility, flexibility, and responsiveness of the State and local service array to address the individualized needs of children and families on a routine basis, and should identify gaps in the service array.

- *Placement resources.* CQI will evaluate the array, accessibility, and responsiveness of the foster care placement options within the counties to meet the individualized placement needs of children in foster care, and identify gaps.

- *Caseloads.* CQI will monitor the conformity of county departments to caseload standards and supervisory ratios through the worker gap analysis.

18

- *Oversight and monitoring.* CQI will evaluate the effectiveness of supervision and administration in monitoring and reinforcing practice that is consistent with the practice model and in providing the necessary systemic supports. It will also monitor for the functioning and effectiveness of local CQI processes in place.

- *Court processes.* CQI will review the effectiveness of court-related procedures, such as holding timely and meaningful reviews and hearings, notifying appropriate parties of proceedings, filing for TPR timely, and so forth.

- *Data Quality and Usage.* CQI will monitor the accuracy and thoroughness of MACWIS data at the county level, particularly given the Department's reliance on MACWIS data to determine if critical benchmarks of progress have been made, and to evaluate the outcomes of practice.

In each county/regional onsite review, CQI reviewers will survey the appropriate stakeholders who have first-hand knowledge of these systemic areas, and review supporting documentation. For example, in evaluating the *service array* systemic factor, CQI will survey service providers, caseworkers, supervisors, and consumers to determine the extent to which needed services are in place, are readily accessible to children and families, and can be tailored to meet their individualized needs. Information derived from case reviews on the provision of services will be used to supplement information from the stakeholder surveys.

The CQI reports of county/regional reviews identify the findings of case reviews and data reports as well as findings pertaining to systemic factors.

In June 2010, the first CQI baseline reviews were successfully completed in Region 1-South and Region 2-West as part of the planned roll-out of the state's practice model. Twenty four cases (10 in-home and 14 foster care) were reviewed in each region to establish where the agency currently stands in those regions with the components of the state's child welfare practice model. These reviews included direct service staff from within each region and the neighboring regions as well as state office staff and staff from the Court Monitor approved consultant (Center for the Support of Families). The process included a review of the electronic case record, paper case record, and interviews with the case members (parents, children, resource parents, caseworkers). Stakeholders from the courts, service providers, caseworkers and supervisors, resource parents, and members of the regional implementation team were surveyed with regard to systemic issues that affect practice and service delivery. A report is in the process of being developed to address strengths and areas needing improvement. This report will be used by the region for the development of an improvement plan. Additional baseline reviews are scheduled to take place by January 2011 in Region 4-North and Region 5-West.

*Consumer satisfaction:* Evaluating consumer satisfaction with their experience with the agency and providers is one of the COA standards for a CQI process. Currently, the Foster Care Review process includes a consumer satisfaction survey. A similar satisfaction survey will be developed for families receiving in-home services and administered as part of the State and local CQI review process. Together, information

19

from both sources will be compiled and described in CQI reports. Both surveys would include satisfaction with the agency's responsiveness to the child's and family's needs and also with the responsiveness of any relevant service providers. Although consumer satisfaction is not always an indicator of the agency's effectiveness, it is an important source of information in identifying the strengths and needs of casework practice and service provision.

The diagram below shows how the CQI process supports the state's Child Welfare Practice Model:



## CQI Timelines for State Fiscal Year 2011

State fiscal year 2010 was a building year for Continuous Quality Improvement. Many foundational goals were met. State fiscal year 2011 will continue to be a building year with even more goals being met toward fully implementing the CQI process in the state. The following timelines are the Continuous Quality Improvement goals for SFY 2011 in Mississippi:

- A CQI review instrument has been designed and field tested, adjustments were made to the instrument, instructions, and scoring guide *(See appendix)*. An automated version of the instrument will be completed and tested by January 2011;
- June 15, 16, 17 (2010): CQI baseline reviews in Region 1-South were completed (Tupelo area)
- June 22, 23, 24 (2010): CQI baseline reviews in Region 2-West were completed (Greenville/Delta area)
- Fill CQI Liaison positions for Regions 1-South, 2-West, 4-North, and 5-West by September 2010.
- Establish a data dashboard as a means of routinely transmitting data to the field on selected measures with the ability to view data at statewide, regional, and local levels;
- August 2010: Hold Practice Model/CQI presentations with direct service staff in Regions 4-North (Starkville/Columbus area) and 5-West (McComb/Natchez area) to coincide with the implementation of the Practice Model in those regions.
- September - October 2010: Hold CQI presentations with field staff in remaining regions;
- September 1, 2010: Have Data Analyst position filled.
- November 2010: Strengthen the accuracy of identified data reports and indicators for use in monitoring *Olivia Y* and practice model implementation;
- January 2011: Conduct baseline reviews in Regions 4-North and 5-West;
- February/March 2011: Hold Practice Model/CQI presentations with field staff in Regions 1-North (North Mississippi along Tennessee line), 3-South (Jackson-Metro area), and 4-South (Meridian area);
- July 2012: Conduct baselines reviews in Regions 1-North, 3-South, and 4-South.

The following chart shows the CQI feedback loop:



**THE CQI FEEDBACK LOOP**

1. Focus on specific data elements monthly and periodic case reviews

2. CQI focusing on data in relation to outcomes and casework practice

3. CQI meetings to analyze data and other findings and make recommendations

4. Reports developed and distributed to communicate recommended modifications

5. Regional/Local/State level solutions developed and reported to CQI

6. Feedback Regarding Success of Solutions Evaluated

## <u>Summary</u>

Mississippi's DFCS is committed to becoming a learning and growing organization. Further enhancing and fully actualizing our Performance Quality Improvement process, plays a critical role in the carrying out and fulfilling the division's mission. This plan will be reviewed and evaluated on an annual basis as part of the statewide CQI process and a report will be generated and updated at the end of each fiscal year.

# APPENDIX I

## (CQI CASE REVIEW INSTRUMENT)

**CQI REVIEWS**
**ONSITE REVIEW INSTRUMENT**
**Face Sheet**

| Name of county and region: | | Case name: | Period under review: |
|---|---|---|---|
| Reviewer: | | | Date case reviewed: |

| Target Child | Child(ren)'s name(s): | Race and/or ethnicity: | Date(s) of birth (MM/DD/YY): | Gender: |
|---|---|---|---|---|
| ☐ | | | | |
| ☐ | | | | |
| ☐ | | | | |
| ☐ | | | | |
| ☐ | | | | |

Type of case reviewed:
☐ Foster Care Case    ☐ In-home Services Case

Was this case opened for reasons other than child abuse and neglect?    Yes ☐  No ☐

Date of most recent case opening for all cases (MM/DD/YY):

Date of the child's most recent entry into foster care (MM/DD/YY):    Not Applicable ☐

Date of discharge from foster care for the most recent foster care episode (MM/DD/YY):
Not Applicable ☐    Not Yet Discharged ☐

Date of case closure (for all cases) (MM/DD/YY):

Case not closed by time of review ☐

Reason the agency is working with the family (initial and evolving):

☐ Abandonment
☐ Child's behavior problem
☐ Death of Parent(s)

☐ Alcohol Abuse-Child
☐ Drug Abuse-Child

☐ Alcohol Abuse-Parent
☐ Child Disability
☐ Drug Abuse-Parent
☐ Inadequate Family Support

☐ Caretaker Inability to Cope
☐ Court Directed
☐ Domestic violence in child's home

☐ Emotional abuse
☐ Physical abuse
☐ Incarceration of Parent
☐ Sexual abuse
☐ Unemployment

☐ Exploitation
☐ Inadequate Housing
☐ Lack of Child Care
☐ Runaway
☐ Other (specify):

☐ Inadequate Income
☐ Neglect
☐ School Dropout

☐ Inadequate Food Supply
☐ Inadequate Parenting Skills
☐ Relinquishment
☐ Truancy

Persons interviewed by the reviewers (list below):

| Relationship to Case | Date of Interview | Type of Interview |
|---|---|---|
| | | ☐ In-Person  ☐ Phone |
| | | ☐ In-Person  ☐ Phone |
| | | ☐ In-Person  ☐ Phone |
| | | ☐ In-Person  ☐ Phone |

*Assuring Safety and Managing Risk*

## 1: Timeliness of initiating investigations of reports of child maltreatment

| Question # | | Number |
|---|---|---|
| 1 | How many reports of suspected abuse or neglect have been received on any child(ren) in the family (including those that were screened out by the agency) during the life of the case? | |
| 2 | How many accepted reports alleging abuse or neglect were received on any child(ren) in the family during the period under review (i.e., they were not screened out)? | |

| ReportDate | First Name of Child | Allegation | Priority Level (if Applicable) | Date Assigned for an Investigation | Date Investigation Initiated | Date of Face-to-Face Contact With Child | Relationship of Alleged Perpetrator to Child | Disposition |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | | Number |
|---|---|---|
| 3 | In how many of the reports listed above was the investigation NOT initiated in accordance with the MDHSs timeframes and requirements for a report of that priority? | |
| 4 | In how many of the reports listed above was face-to-face contact with the child(ren) who is the subject of the report NOT made in accordance with the State's timeframes and requirements for a report of that priority? | |

| 5 | For all reports identified above, were the reasons for the delays due to circumstances beyond the control of the agency? | Yes | No | NA |
|---|---|---|---|---|

| 6 | Identify any reasons why a response was not initiated within established timeframes or face to face contact was not made (if applicable and reason is available): |
|---|---|

Section 1 is rated:_____ . Please elaborate on any findings:

## 2: Repeat maltreatment

| 7 | Was there at least one evidenced maltreatment report involving any child in the family during the period under review? | Yes | No | |
|---|---|---|---|---|
| 8 | If Yes, within a 6-month period before or after any maltreatment report identified, was there at least one additional evidenced maltreatment report involving any child in the family? | Yes | No | NA |
| 9 | If Yes, did the report(s) identified above involve the same or similar circumstances? | Yes | No | NA |
| 10 | If Yes, did any of the reports involve maltreatment of the child by the foster parents, members of the foster parents' family, other children in the foster home or facility, or facility staff members? | Yes | No | NA |

| 11 | If there was maltreatment recurrence, document the circumstances related to maltreatment incidents including information related to the perpetrators, and indicate why the reviewers determined that the two incidents did or did not involve the same circumstances. Also indicate the dates of all maltreatment reports occuring within the 6-month period: |
|---|---|

| 12 | Describe the circumstances related to any evidenced reports of maltreatment (if relevant) involving the foster parents, members of the foster parents' family, other children in the foster home or facility, or facility staff members: |
|---|---|

*Assuring Safety and Managing Risk*

| 13 | For cases where repeat maltreatment did occur, identify interventions and actions, or absence of interventions and actions, taken by the caseworker and ASWS to try and prevent maltreatment of the child(ren): |
| --- | --- |
| | Section 2 is rated:_____. Please elaborate on any findings: |

## 3: Services to Family to Protect Child(ren) in the Home and Prevent Removal or Re-Entry into Foster Care

| | | | | |
| --- | --- | --- | --- | --- |
| 14 | For the period under review, did the agency make concerted efforts to provide or arrange for appropriate services for the family to protect children and prevent their entry into foster care or re-entry into foster care after a reunification? | Yes | No | NA |
| 15 | If, during the period under review, any child was removed from the home without providing or arranging for services, was this action necessary to ensure the child's safety? | Yes | No | NA |
| 16 | Please identify the circumstances that indicate a safety risk to the child and the services that were needed by the family to address safety issues and describe how those services were or were not provided by the agency during the period under review: | | | |
| 17 | Please note the reason for removing the child from the home during the period under review without providing services (if relevant and reason is available) and provide the reviewers' reasons for determining whether the reason was appropriate or inappropriate: | | | |
| | Section 3 is rated:_____. Please elaborate on any findings: | | | |

## 4: Risk assessment and safety management

| | | | | |
| --- | --- | --- | --- | --- |
| 18 | If the case was opened during the period under review, did the agency conduct an initial assessment of the risk to the target child in foster care and/or any child(ren) in the family remaining in the home? | Yes | No | NA |
| 19 | During the period under review, did the agency conduct ongoing assessments of the risk to the target child in foster care and/or any child(ren) in the family remaining in the home? | Yes | No | NA |
| 20 | If the case was opened during the period under review for either foster care or in-home services, did the agency: (1) conduct an initial assessment of the safety of the target child in foster care and/or any child(ren) remaining in the home, and (2) develop a safety plan with the family for addressing identified safety issues? | Yes | No | NA |
| 21 | During the period under review, did the agency: (1) conduct ongoing safety assessments of the target child in foster care and/or any child(ren) remaining in the home, and (2) continually monitor and update the safety plan, including encouraging family engagement in services designed to promote achievement of the goals of the safety plan? | Yes | No | NA |
| 22 | During the period under review, were there safety concerns pertaining to the target child in foster care or any child(ren) in the family remaining in the home that were not adequately or appropriately addressed by the agency? | Yes | No | NA |

## *Assuring Safety and Managing Risk*

| | | | | |
|---|---|---|---|---|
| 23 | During the period under review, was there a safety concern related to the target child in foster care during visitation by parents or other family members that could be attributed to not providing sufficient monitoring of visitation, permitting unsupervised visitation when it was not appropriate, or court-ordered visitation against agency recommendations? | Yes | No | NA |
| 24 | During the period under review, was there a concern for the target child's safety related to the foster parents, members of the foster parents' family, other children in the foster home or facility, or facility staff members that was not adequately or appropriately addressed by the agency? (Foster parents include pre-adoptive parents and nonlicensed relatives providing care to a child in State custody.) | Yes | No | NA |
| 25 | During the period under review, if the target child was discharged from foster care to be reunited with parents or relatives or returned home on a trial home visit, did the agency conduct a thorough safety assessment? | Yes | No | NA |
| 26 | Describe the circumstances of the case that indicate risk concerns related to the child(ren): | | | |
| 27 | Describe the circumstances of the case that indicate safety concerns related to the child(ren): | | | |
| 28 | Describe the characteristics of the risk assessment(s) and safety assessment(s) (was one conducted, how was it conducted, when it was conducted, how comprehensive was it, what did it include or not include), including their timing: | | | |
| 29 | If applicable, describe the nature of the safety concerns related to the child(ren) during visitation, including a description of the visitation (for example, was it unsupervised, and if so, was this appropriate?): | | | |
| 30 | If applicable, describe the nature of the safety concerns related to the child(ren) from foster care providers and MDHS's activities with regard to addressing safety. | | | |
| 31 | Identify the activities undertaken to monitor participation in safety-related services (or the absence of activities to monitor service participation): | | | |
| 32 | Was there a report evidenced that the foster care provider(s) maltreated the child during the period under review? If Yes, describe the circumstances of that report, whether the agency might have prevented the maltreatment, and the agency's response: | | | |
| | Section 4 is rated:_____. Please elaborate on any findings: | | | |

*Assessing Strengths and Needs*

## 5. Needs and Services of Child, Parents, and Foster Parents

| | | | | | |
|---|---|---|---|---|---|
| **Section A** | 33 | During the period under review, did the agency conduct (1) a formal or informal initial comprehensive assessment of the child(ren)'s strengths and needs (if the case was opened during the period under review), or (2) an ongoing assessment to provide updated information regarding the child(ren)'s needs for case planning purposes (if the case was opened before the period under review)? | Yes | No | NA |
| | 34 | If Yes and the case was opened during PUR, was the initial children's strengths and needs assessment conducted within the first 30 days? | Yes | No | NA |
| | 35 | During the period under review, were all needed services provided to meet the child's identified needs? | Yes | No | NA |
| | 36 | Were all services provided to children in a timely manner? | Yes | No | NA |
| | 37 | Was the child interviewed prior to the completion of the strengths and needs assessment? | Yes | No | NA |
| | 38 | Is there clear evidence, other than signatures, of child involvement and input in the strengths and needs assessment? | Yes | No | NA |
| | 39 | Document the method that the agency used to assess the child's needs: | | | |
| | 40 | Document the services provided to the child(ren): | | | |
| | 41 | Document the services that were needed but not provided: | | | |
| | 42 | During the period under review, did the agency conduct (1) a formal or informal initial comprehensive assessment of the mother's strengths and needs (if the case was opened during the period under review) or (2) an ongoing assessment to provide updated information regarding the mother's needs for case planning purposes (if the case was opened before the period under review)? | Yes | No | NA |
| | 43 | If Yes and the case was opened during PUR, was the initial strengths and needs assessment of the mother conducted within the first 30 days? | Yes | No | NA |
| | 44 | Were all services provided to mother in a timely manner? | Yes | No | NA |
| | 45 | Was mother interviewed prior to the completion of the strengths and needs assessment? | Yes | No | NA |
| | 46 | Is there clear evidence, other than signatures, of mother involvement and input in the strengths and needs assessment? | Yes | No | NA |
| **Section B** | 47 | During the period under review, did the agency provide all needed services to the mother to meet identified and assessed needs (with respect to services the mother needs in order to provide appropriate care and supervision to ensure the safety and well-being of her children)? | Yes | No | NA |

## *Assessing Strengths and Needs*

| | | | | | |
|---|---|---|---|---|---|
| 48 | During the period under review, did the agency conduct (1) a formal or informal initial comprehensive assessment of the father's strengths and needs (if the case was opened during the period under review) or (2) an ongoing assessment to provide updated information regarding the father's needs for case planning purposes (if the case was opened before the period under review)? | Yes | No | NA |
| 49 | If Yes and the case was opened during PUR, was the initial strengths and needs assessment of the father conducted within the first 30 days? | Yes | No | NA |
| 50 | During the period under review, did the agency provide all needed services to the father to address identified and assessed needs (with respect to services the father needs in order to provide appropriate care and supervision to ensure the safety and well-being of his children)? | Yes | No | NA |
| 51 | Were all services provided to father in a timely manner? | Yes | No | NA |
| 52 | Was father interviewed prior to the completion of the strengths and needs assessment? | Yes | No | NA |
| 53 | Is there clear evidence, other than signatures, of father's involvement and input in the strengths and needs assessment? | Yes | No | NA |
| 54 | Please indicate any reason why a needs assessment did not need to be completed on either the mother or father: | | | |
| 55 | Document the services that were provided to the mother: | | | |
| 56 | Document the services that the mother needed, based on an assessment, but that were not provided: | | | |
| 57 | Document the services provided to the father: | | | |
| 58 | Document the services that the father needed, based on an assessment, but that were not provided: | | | |
| 59 | During the period under review, did the agency conduct an assessment of the needs of the foster or pre-adoptive parents on an ongoing basis (with respect to services they need in order to provide appropriate care and supervision to ensure the safety and well-being of the children in their care)? | Yes | No | NA |
| 60 | During the period under review, were the foster or pre-adoptive parents provided with all needed services to address identified needs that pertained to their capacity to provide appropriate care and supervision and ensure the safety and well-being of the children in their care? | Yes | No | NA |
| 61 | Were all services provided to the foster/pre-adoptive family in a timely manner? | Yes | No | NA |
| 62 | Document the services provided to the foster parent(s): | | | |
| 63 | Document the services that the foster parent(s) needed, based on an assessment, but that were not provided: | | | |

**Section C** is indicated to the left of rows 59–63.

Section 5 is rated:_____. Please elaborate on any findings:

## *Assessing Strengths and Needs*

| 6. Educational Needs of the Child | | | | |
|---|---|---|---|---|
| 64 | During the period under review, did the agency make concerted efforts to assess and address the child(ren)'s educational needs? | Yes | No | NA |
| 65 | If case opened during PUR, were the child's educational needs assessed within 30 days of entry into foster care? | Yes | No | NA |
| 66 | If case opened during PUR, and the child is 3 years of age or younger, did (s)he receive a developmental assessment within 30 days of foster care entry? | Yes | No | NA |
| 67 | If not explained in the "reason for rating" section, document the process used for educational assessment, if relevant: | | | |
| 68 | Document in the chart below the services provided or not provided to address the child's educational needs. Services would include advocacy on the part of foster parents as well as the caseworker; ensuring that the child received special education classes; making provisions for the child to receive tutoring or educational mentoring; or arranging for the child to be enrolled in early intervention preschool classes, such as Head Start: | | | |

| Educational Needs | Services Provided | Services Needed but |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

| | | | | |
|---|---|---|---|---|
| 69 | If there are services that were not or are not being provided, document agency efforts, or lack of agency efforts, to provide those services: | | | |
| 70 | Was the child enrolled in an accredited school within 3 days of custody or placement change? | Yes | No | NA |
|  | Section 6 is rated:_____. Please elaborate on any findings: | | | |

*Involving Children and Families in Case Planning and Decision Making*

| 7. Child and family involvement in case planning | | | | |
|---|---|---|---|---|
| 71 | During the period under review, did the agency make concerted efforts to actively involve the child in the case planning process? | Yes | No | NA |
| 72 | During the period under review, did the agency make concerted efforts to actively involve the mother in the case planning process? | Yes | No | NA |
| 73 | During the period under review, did the agency make concerted efforts to actively involve the father in the case planning process? | Yes | No | NA |
| 74 | Document the ways in which each party listed below was or was not involved in case planning (for example, identifying needs and services, establishing goals, evaluating progress, etc.) If the involvement of the child, mother, or father is determined by the reviewers to be Not Applicable, document the reasons for this determination (including any evidence of efforts to locate absent parents). | | | |
| | Child: | | | |
| | Mother: | | | |
| | Father: | | | |
| 75 | Is there evidence that the family was informed of and prepared to actively participate in case events, including the FTMs, case plan development, and court events? | Yes | No | NA |
| | Please explain your answer: | | | |
| 76 | Is there evidence that child(ren) and or parent(s) were involved in choosing services included on their case plan? | Yes | No | NA |
| | Is there evidence of family involvement and input in the development of the case plan? | | | |
| 77 | Mother | Yes | No | NA |
| 78 | Father | Yes | No | NA |
| 79 | Age-appropriate child/youth | Yes | No | NA |
| 80 | Were the service plans signed by the parents or guardians? | Yes | No | NA |
| 81 | Were the service plans signed by the children, aged 6 and up? | Yes | No | NA |
| 82 | Did the families attend the County Conferences? | Yes | No | NA |
| | Section 7 is rated:_____. Please elaborate on any findings: | | | |

*Involving Children and Families in Case Planning and Decision Making*

## 8. Caseworker visits with child

| | | | |
|---|---|---|---|
| 83 | During the period under review, was the frequency of the visits between the caseworker and the child(ren) sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals? | Yes | No |

| 84 | During the period under review, what was the most typical pattern of visitation between the caseworker and the child(ren) in the case? (Select the box that describes the usual pattern of visitation.) |
|---|---|

- ☐ More than once a week
- ☐ Once a week
- ☐ Less than once a week, but at least twice a month
- ☐ Less than twice a month, but at least once a month
- ☐ Less than once a month
- ☐ Never

| 85 | Did the caseworker visits occur 2 times a month, with at least one in the home? | Yes | No | NA |
|---|---|---|---|---|

| 86 | During the period under review, was the quality of the visits between the caseworker and the child(ren) sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals (for example, did the visits between the caseworker and the child(ren) focus on issues pertinent to case planning, service delivery, and goal achievement)? | Yes | No |
|---|---|---|---|

| 87 | Please document barriers to more frequent visiting (if relevant) or explain why less frequent visitation was still appropriate, or not: |
|---|---|

| 88 | Document the aspects of the caseworker visits with the child that contributed to high quality visits (if relevant) or why caseworker visits were not of high quality (if relevant), as related to the response in question 86: |
|---|---|

Section 8 is rated:_____. Please elaborate on any findings:

## 9. Caseworker visits with parents

| 89 | During the period under review, was the frequency of the visits between the caseworker and the mother sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals? | Yes | No | NA |
|---|---|---|---|---|

| 90 | During the period under review, what was the most typical pattern of visitation between the caseworker and the mother of the child(ren)? |
|---|---|

- ☐ More than once a week
- ☐ Once a week
- ☐ Less than once a week, but at least twice a month
- ☐ Less than twice a month, but at least once a month
- ☐ Less than once a month
- ☐ Not Applicable
- ☐ Never

| 91 | During the period under review, was the frequency of the visits between the caseworker and the father sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals? | Yes | No | NA |
|---|---|---|---|---|

| 92 | During the period under review, what was the most typical pattern of visitation between the caseworker and the father of the child(ren): |
|---|---|

- ☐ More than once a week
- ☐ Once a week
- ☐ Less than once a week, but at least twice a month
- ☐ Less than twice a month, but at least once a month
- ☐ Less than once a month
- ☐ Not Applicable
- ☐ Never

*Involving Children and Families in Case Planning and Decision Making*

| | | | | |
|---|---|---|---|---|
| 93 | During the period under review, was the quality of the visits between the caseworker and the mother sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals? | Yes | No | NA |
| 94 | During the period under review, was the quality of the visits between the caseworker and the father sufficient to address issues pertaining to the safety, permanency, and well-being of the child and promote achievement of case goals? | Yes | No | NA |
| 95 | Please describe barriers to more frequent visiting with the mother (if relevant) and father (if relevant), and discuss (if relevant) why reviewer felt less frequent visitation was appropriate: | | | |
| 96 | Describe the general quality of the caseworker visits with the mother and the father, and the issues that were or were not addressed during caseworker visits (if relevant): | | | |
| 97 | If regular visitation is not occuring due to mother not being involved or found, are there documented diligent efforts to locate mother? | Yes | No | NA |
| 98 | If regular visitation is not occuring due to father not being involved or found, are there documented diligent efforts to locate father? | Yes | No | NA |
| | Section 9 is rated:_____. Please elaborate on any findings: | | | |

## *Individualizing Case Planning*

| 10. Permanency goal for child | | | | | | | |
|---|---|---|---|---|---|---|---|

| | | | | | | Goal 1 | | Goal 2 | |
|---|---|---|---|---|---|---|---|---|---|
| 99 | What is (are) the child's current permanency goal(s) (or if the case was closed during the period under review, what was the permanency goal before the case was closed)? | | | | | | | | |
| 100 | Is (are) the child's permanency goal(s) specified in the case file? | | | | | Yes | No | NA | |
| 101 | If the child entered care during the PUR, was a permanency plan developed within the childs first 30 days in care? | | | | | Yes | No | NA | |
| 102 | Were all permanency goals in effect during the period under review established in a timely manner? | | | | | Yes | No | - | |

| Permanency Goal | Date Established | Time in Foster Care Before Goal | Date Goal Changed | | Reason for Goal Change | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 103 | Were all permanency goals in effect during the period under review appropriate to the child's needs for permanency and to the circumstances of the case? | Yes | No | NA | |
| 104 | Please document the reasons the reviewers determined that the goals were not timely and/or appropriate (if relevant): | | | | |
| 105 | Has the child been in foster care at least 15 of the last 22 months? | Yes | No | NA | |
| 106 | If not, does the child meet Adoption and Safe Families Act (ASFA) criteria for termination of parental rights (TPR)? | Yes | No | NA | |
| 107 | If yes, did the agency file a TPR petition before the period under review or in a timely manner during the period under review? | Yes | No | NA | |
| 108 | If no TPR petition has been filed, is an "exception" or compelling reason for not filing for TPR documented in the case file? | Yes | No | NA | |
| 109 | If an exception has not been documented, do circumstances exist that would constitute a legal exception? | Yes | No | NA | |
| 110 | If the child has a goal of reunification, does the case record documentation reflecting active concurrent permanency planning ? | Yes | No | NA | |
| 111 | If the child was discharged during PUR, was an aftercare plan developed prior to discharge? | Yes | No | NA | |
| | Section 10 is rated:_____. Please elaborate on any findings: | | | | |

*Individualizing Case Planning*

| 11. Case Planning | | | | |
|---|---|---|---|---|
| 112 | How many FTMs have occurred during the PUR? | | | |
| 113 | How many FTMs have been attended by both the birth and resource parents during the PUR? | | | |
| 114 | Was a FTM used in the initial development of the case plan if the initial plan was developed during the PUR, and/or was the FTM used to update the case plans quarterly? | Yes | No | NA |
| 115 | Were there family team meetings within 30 calendar days of any placement or other significant change in the child's or family's circumstances? | Yes | No | NA |
| 116 | Were there documented discussions of concurrent planning with the birth parents? | Yes | No | NA |
| | Section 11 is rated:_____. Please elaborate on any findings: | | | |

*Mobilizing Services Timely*

## 12. Foster Care Re-Entries

| | | | | |
|---|---|---|---|---|
| 117 | Did any of the child's foster care entries during the period under review occur within 12 months of the child's discharge from a prior foster care episode? | Yes | No | NA |
| 118 | If the answer is Yes, was there evidence that concerted efforts were made to prevent re-entry? | Yes | No | NA |
| 119 | Date of child's first entry into foster care during the period under review: | | | |
| 120 | Was this entry within 12 months of a previous discharge: | | Yes | No |
| 121 | Date of discharge, if any, within 12 months of this entry:_____   Document the circumstances related to the re-entry within 12 months: | | | |

If there are any additional entries into foster care after a discharge during the period under review, provide the above information for each of these entries:

122   — — — — — — — — — — — — — — — — — — — — — — — —

Section 12 is rated:_____. Please elaborate on any findings:

## 13. Reunification, Guardianship or Permanent Placement with Relatives

| | | | | |
|---|---|---|---|---|
| 123 | Does the child have a goal of reunification, guardianship, or permanent placement with rel | Yes | No | NA |

| 124 | What is/was the child's most recent permanency goal? | Reunification | Guardianship | Perm. Placement with Relatives |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 125 | Are the agency and court making (or did they make) concerted efforts to achieve the goal (or these goals, if there are concurrent goals) in a timely manner during the PUR? | Yes | No | NA |

126   Date of the child's most recent entry into foster care:

127   Time in care (in months) at the time of the onsite review:

128   Date of discharge from foster care:

129   Document efforts made to achieve goal, including the appropriateness and effectiveness of the efforts, and, barriers to achieving the goal (for example, agency, court, or other factors that prevented or are preventing timely achievement of the goal):

130   Please document any contributing factors to the case in both the circumstance of the goal of reunification or permanent placement with relatives was not achieved or is not likely to be achieved within 12 months, or if the permanency goal was achieved within 12 months:

| | | | | |
|---|---|---|---|---|
| 131 | For children with a goal of reunification, have parental service plans identified those services DFCS deems necessary to address the behaviors or conditions resulting in the child's placement in foster care? | Yes | No | NA |
| 132 | Did DCFS make those services identified available either through direct or referral service? Mother? | Yes | No | NA |
| 133 | Father? | Yes | No | NA |
| 134 | If the child was discharged during PUR and was reunified, was there a 90 day trial home visit? | Yes | No | NA |

Section 13 is rated:_____. Please elaborate on any findings:

## 14. Stability of Foster Care Placement

| | | | |
|---|---|---|---|
| 135 | How long has the child been in the current placement setting? | | ____Months |
| 136 | How many placement settings did the child experience during the period under review? | | Number |

| Placement Date | Placement Type | Reason for Change in Placement |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*Mobilizing Services Timely*

| | | | | |
|---|---|---|---|---|
| 137 | If there was more than 1 placement, were all placement changes during the period under review planned by the agency in an effort to achieve the child's case goals or to meet the needs of the child? | Yes | No | NA |
| 138 | Is the child's current placement setting (or most recent placement if the child is no longer in foster care) stable? | Yes | No | |
| 139 | If applicable, indicate why the placement changes were or were not planned in an effort to achieve the child's case goals or to meet the needs of the child: | | | |
| 140 | If applicable, provide your reasons for determining that the child's current placement (or most recent placement if the child is no longer in foster care) is or is not stable: | | | |
| 141 | If the child has been assessed with special needs, is s(he) placed in a placement that can meet their therapeutic, educational and medical needs? | Yes | No | NA |
| 142 | Was the child placed in the least restrictive setting that meets his/her individual needs ? | Yes | No | NA |
| | Section 14 is rated:_____. Please elaborate on any findings: | | | |

## 15. Adoption

| | | | | |
|---|---|---|---|---|
| 143 | Does the child have a goal of adoption? | Yes | No | NA |
| 144 | Are the agency and court making (or did the agency and court make) concerted efforts to achieve the goal of adoption in a timely manner? | Yes | No | |
| 145 | Date of the child's most recent entry into foster care (this should be the same date on the Face Sheet): | | | |
| 146 | Time in care (in months) at the time of the onsite review (this is the number of months that the child was in foster care from the date of the most recent entry into foster care to the beginning of the onsite review week or from the date of the most recent entry into foster care to the time of adoption finalization or discharge from foster care): | | | |
| 147 | Date of adoption finalization (if relevant) (this is the date that the court legally established the adoption and transferred care and placement responsibility or supervision from the State to the adoptive parent(s); this should be the same date on the Face Sheet; if the adoption has not been finalized, enter Not Applicable (NA)): | | | |
| 148 | Please document efforts made to achieve the child's goal of adoption, including the appropriateness and effectiveness of the efforts, and barriers to achieving the goal of adoption (for example, agency- or court-related factors that prevented or are preventing achievement of the goal in a timely manner): | | | |
| 149 | Please document special circumstances in the case which are contributing to the child either likely to achieve the goal of adoption within 24 months or not: | | | |
| 150 | Does the child have an assigned adoption specialist and an adoption plan that identifies the child-specific activities that DFCS will undertake to achieve adoption, and receiving regular adoption status meetings consistent with plan requirements, and was that adoption specialist assigned within 10 days of the adoption goal change? | Yes | No | NA |
| 151 | Is there evidence that the resource family has been informed of available subsidies, including post-adoptive subsidies? | Yes | No | NA |
| 152 | If the child has been in care longer than 12 months, is there evidence that the resource parents have been engaged on discussions regarding adoption? | Yes | No | NA |
| | Section 15 is rated:_____. Please elaborate on any findings: | | | |

*Mobilizing Services Timely*

## 16. Other planned permanent living arrangement

| | | Yes | No | NA |
|---|---|---|---|---|
| 153 | Does the child have a goal of other planned permanent living arrangement? | Yes | No | NA |

| | | |
|---|---|---|
| 154 | What is the child's other planned permanent living arrangement goal (check the goal that most closely reflects the one in the case file)? | ☐ Living Independently / Emancipation |
| | | ☐ Long-term foster care |
| | | ☐ Long-term foster care with kin |
| | | ☐ Placement in a long-term care facility until transition to an adult care facility. |
| | | ☐ Other (specify): |

| | | Yes | No | NA |
|---|---|---|---|---|
| 155 | For children aged 14-20 in the PUR, were concerted efforts made to provide the child with services to adequately prepare the child for independent living when the child leaves foster care, as set forth in a service plan? | Yes | No | NA |
| 156 | Were concerted efforts made to achieve the goal of other planned permanent living arrangement in a timely manner by placing the child in a living arrangement that is "permanent," that is, the child will remain in the living arrangement until discharge from foster care? | Yes | No | NA |
| 157 | Date of the child's most recent entry into foster care: | | | |
| 158 | Time in care (in months) at the time of the onsite review: | | | |
| 159 | Date of documentation regarding "permanency" of the child's living arrangements | | | |
| 160 | Date of discharge from foster care | | | |
| 161 | If the child is not in a living arrangement that can be considered permanent, were concerted efforts made during the period under review to achieve this type of living arrangement for the child? | Yes | No | NA |
| 162 | Please document the efforts made to achieve the child's goal, including the appropriateness and effectiveness of the efforts, and barriers to achieving the goal: | | | |
| 163 | Document the services provided, or not provided, to adequately prepare the child for independent living: | | | |
| 164 | If the child is over 14 and involved with ILS, how long has s(he) consistently been attending ILS classes? | | | |
| | Please explain your answer: | | | |
| | Section 16 is rated:_____. Please elaborate on any findings: | | | |

## 17. Physical Health of the Child

| | | Yes | No | NA |
|---|---|---|---|---|
| 165 | In the last 12 months period, has the agency assessed the child's physical health care needs? | Yes | No | NA |
| 166 | If the child came into care during the PUR, did the child receive an initial screening within 24 hours? | Yes | No | NA |
| 167 | If the child came into care during the PUR, did the child receive a comprehensive health screening within 30 days of foster care entry? | Yes | No | NA |
| 168 | During the period under review, did the agency assess the child's dental health care needs? | Yes | No | NA |
| 169 | During the PUR, did the child, if over 3, receive an initial dental examination within 90 days of entry into care or within 90 days of his/her 3rd birthday if occurring during stay in foster care? | Yes | No | NA |
| 170 | During the period under review, did the agency ensure that appropriate services were provided to the child to address all identified physical health needs within required timeframes? | Yes | No | NA |
| 171 | During the period under review, did the agency ensure that appropriate services were provided to the child to address all identified dental health needs within required timeframes? | Yes | No | NA |
| 172 | Did the child receive periodic, age-appropriate physical and dental health examinations to ensure ongoing assessment of needs? If not, document the reasons why the agency did not conduct this ongoing assessment: | | | |

*Mobilizing Services Timely*

| 173 | Based on the assessment of needs, if there are services that were not provided, document why the services were not provided (for example, lack of agency efforts to secure services, lack of service availability in the community, lack of transportation for foster parents to take child to appointments, etc.): |
| --- | --- |
| | Section 17 is rated:_____. Please elaborate on any findings: |

### 18. Mental/Behavioral Health of the Child

| | | Yes | No | NA |
| --- | --- | --- | --- | --- |
| 174 | During the PUR, did the child, age 4 and older, receive an initial mental health screening within 30 days of entry into care and/or within 30 days of the 4th birthday if occurring during stay in foster care? | Yes | No | NA |
| 175 | Did the agency conduct an assessment of the child(ren)'s mental/behavioral health needs on an ongoing basis or as follow-up based on indications to inform case planning decisions? | Yes | No | NA |
| 176 | During the period under review, did the agency provide appropriate services to address the child(ren)'s mental/behavioral health needs within required timeframes? | Yes | No | NA |
| 177 | Note whether or not there is evidence of a mental/behavioral health (including substance abuse) assessment. For example, (1) what type of needs assessment was conducted, and (2) what kind of information was in the case file or missing from the case file that is relevant to an assessment of mental/behavioral health needs? Indicate if a formal assessment was conducted, and, if so, note the diagnosis: | | | |
| 178 | If there are services that were not or are not being provided based on the assessment of needs, describe why the services were not provided (for example, lack of agency efforts to secure services, lack of service availability in the community, no transportation for foster parents to take child to appointments, parent's unwillingness to engage child in services, etc.). If the services were not available due to lack of availability, or reviewer notices other services not available in the community, please describe in detail: | | | |
| | Section 18 is rated:_____. Please elaborate on any findings: | | | |

*Preserving and Maintaining Connections*

## 19. Proximity of Foster Care Placement

| | | Yes | No | NA |
|---|---|---|---|---|
| 179 | Was the child placed in the same county as (s)he was removed? | Yes | No | NA |
| 180 | Is the child's current or most recent placement close enough to his or her parents or other potential permanent caregiver to facilitate frequent face-to-face contact between the child and the parents while the child is (or was) in foster care? | Yes | No | NA |
| 181 | If No, was the reason for the location of the child's current or most recent placement based on the child's needs and intended to ensure that the child's case plan goals are achieved? | Yes | No | NA |
| 182 | Describe the relationship between the child's current or most recent placement and the location of the parents or of a family member with whom the child is likely to be reunified (for example, the child will be reunified with a grandmother): | | | |
| 183 | If the reviewers determine that the child's placement is not sufficiently close to the parent(s) to facilitate frequent contact, document the reasons for this determination (and identify any reasons provided by the agency): | | | |
| 184 | Did the child remain in the same school (s)he attended prior to foster care placement? | Yes | No | NA |
| 185 | If no, was this appropriate based on case circumstances? | Yes | No | NA |

If No, please explain why:

Section 19 is rated:_____. Please elaborate on any findings:

## 20. Placement with Siblings

| | | Yes | No | NA |
|---|---|---|---|---|
| 186 | During the period under review, was the child placed with all siblings who also were in foster care? | Yes | No | NA |
| 187 | If No, was there a valid reason for the child's separation from the siblings (for example, the separation was necessary to meet the needs of one of the siblings, to address safety concerns for one or more of the siblings, or to accommodate a large sibling group)? | Yes | No | NA |
| 188 | Reason for Separation (if applicable)-please list sibling's name, placement setting, and the reason for separation: | | | |

Section 20 is rated:_____. Please elaborate on any findings:

## 21. Visiting with parents and siblings in foster care

| | | Yes | No | NA |
|---|---|---|---|---|
| 189 | If the child entered care during the PUR, was an initial visitation plan developed in the first 30 days of the child's placement? | Yes | No | NA |
| 190 | Was a visitation plan updated every 90 days during the PUR? | Yes | No | NA |
| 191 | Does the visitation plan include all visitation (parents, siblings, connections, etc)? | Yes | No | NA |
| 192 | During the period under review, were concerted efforts made to ensure that visitation (or other forms of contact if visitation was not possible) between the child and his or her mother was of sufficient frequency to maintain or promote the continuity of the relationship? | Yes | No | NA |
| 193 | Check the box next to the statement that best describes the usual frequency of visits between the mother and the child: | ☐ More than once a week<br>☐ Once a week<br>☐ Less than once a week, but at least twice a month<br>☐ Less than twice a month, but at least once a month<br>☐ Less than once a month<br>☐ Never | | |

## *Preserving and Maintaining Connections*

| | | Yes | No | NA |
|---|---|---|---|---|
| 194 | During the period under review, were concerted efforts made to ensure that visitation (or other forms of contact if visitation was not possible) between the child and his or her father was of sufficient frequency to maintain or promote the continuity of the relationship? | Yes | No | NA |
| 195 | Check the box next to the statement that best describes the usual frequency of visits between the father and the child: | ☐ More than once a week<br>☐ Once a week<br>☐ Less than once a week, but at least twice a month<br>☐ Less than twice a month, but at least once a month<br>☐ Less than once a month<br>☐ Never | | |
| 196 | During the period under review, were concerted efforts made to ensure that the quality of visitation between the child and the mother was sufficient to maintain or promote the continuity of the relationship? | Yes | No | NA |
| 197 | During the period under review, were concerted efforts made to ensure that the quality of visitation between the child and the father was sufficient to maintain or promote the continuity of the relationship? | Yes | No | NA |
| 198 | During the period under review, were concerted efforts made to ensure that visitation (or other forms of contact if visitation was not possible) between the child and his or her sibling(s) was of sufficient frequency to maintain or promote the continuity of the relationship? | Yes | No | NA |
| 199 | Check the box next to the statement that best describes the usual frequency of visits between the siblings and the child: | ☐ More than once a week<br>☐ Once a week<br>☐ Less than once a week, but at least twice a month<br>☐ Less than twice a month, but at least once a month<br>☐ Less than once a month<br>☐ Never | | |
| 200 | During the period under review, were concerted efforts made to ensure that the quality of visitation between the child and his or her sibling(s) was sufficient to promote the continuity of their relationships? | Yes | No | NA |
| 201 | For each applicable relationship (Mother, Father, Sibling(s)), document concerted efforts or lack of efforts to promote frequent visitation. Also document any reasoning why a relationship is not applicable. | | | |
| 202 | If the child entered care during the PUR did the child have a visit with his/her parents within 24 hours of placement, or at a minimum a phone call with relatives within first 24 hours? | Yes | No | NA |
| | Section 21 is rated:_____. Please elaborate on any findings: | | | |

## 22. Preserving Connections

| | | Yes | No | NA |
|---|---|---|---|---|
| 203 | During the period under review, were concerted efforts made to maintain the child's important connections (for example, neighborhood, community, faith, language, extended family members including siblings who are not in foster care, school, tribe, and/or friends)? | Yes | No | NA |
| 204 | Was a sufficient inquiry conducted with the parent, child, custodian, or other interested party to determine whether the child may be a member of, or eligible for membership in, an Indian tribe? | Yes | No | NA |

*Preserving and Maintaining Connections*

| | | | | |
|---|---|---|---|---|
| 205 | If the child may be a member of, or eligible for membership in, an Indian tribe, during the period under review, was the tribe provided timely notification of its right to intervene in any State court proceedings seeking an involuntary foster care placement or termination of parental rights (TPR)? | Yes | No | NA |
| 206 | If the child is a member of, or eligible for membership in, an Indian tribe, was the child placed in foster care in accordance with the Indian Child Welfare Act (ICWA) placement preferences or were concerted efforts made to place the child in accordance with ICWA placement preferences? | Yes | No | NA |
| 207 | Document agency efforts or lack of efforts to help children maintain important connections when these are not being maintained through the placement itself: | | | |

Section 22 is rated:_____. Please elaborate on any findings:

## 23. Relationship of Child in Care with Parents

| | | | | |
|---|---|---|---|---|
| 208 | Did a meeting occur between the birth parents and resource parents within the first month of placement (if placement occurred during the PUR)? | Yes | No | NA |
| 209 | Is there evidence in the case record of shared parenting responsibilities between the birth and resource parents? | Yes | No | NA |
| 210 | If not explained in the "reason for rating" section, document efforts or lack of efforts to support or maintain a positive mother-child, and or father-child relationship. (The focus should be on activities such as the ones listed in the instructions, rather than on visitation). Foster parent activities may be considered equivalent to "agency" activities in responding to this question: | | | |

Please provide a basis for your response:

Section 23 is rated:_____. Please elaborate on any findings:

## 24. Relative placement

| | | | | |
|---|---|---|---|---|
| 211 | During the period under review, was the child's current or most recent placement with a relative? | Yes | No | |
| 212 | If Yes, is (or was) this placement stable and appropriate to the child's needs? | Yes | No | NA |
| 213 | If No, did the agency, during the period under review, make concerted efforts to identify, locate, and evaluate maternal relatives as potential placements for the child, with the result that maternal relatives were ruled out as, or were unwilling to be, placement resources? | Yes | No | NA |
| 214 | If No, did the agency, during the period under review, make concerted efforts to identify, locate, and evaluate paternal relatives as potential placements for the child, with the result that paternal relatives were ruled out as, or were unwilling to be, placement resources? | Yes | No | NA |
| 215 | Document agency efforts or lack of efforts to locate and evaluate maternal relatives (including reasons why relatives were not considered as placement resources, if relevant) if appropriate, during the period under review: | | | |
| 216 | Document agency efforts or lack of efforts to locate and evaluate paternal relatives (including reasons why relatives were not considered as placement resources, if relevant) if appropriate, during the period under review: | | | |

Section 24 is rated:_____. Please elaborate on any findings:

# APPENDIX II

## (CQI CASE REVIEW INSTRUMENT INSTRUCTIONS)

# CQI REVIEW INSTRUMENT
## INSTRUCTIONS

## Cover Sheet

| | |
|---|---|
| **State and County, Case name, PUR:** | * Please indicate the county and region |
| | * Enter the official case name, as noted on the case file |
| | * The period under review is the timeframe used for making decisions about the case. |
| **Family Chart:** | * For both foster care cases and in-home services cases, enter the first and last names (first name first) of all children in the family as identified in the case file. If the case is a foster care case, mark the checkbox next to the name of the target child. It is essential that the target child be clearly identified for all foster care cases. |
| | * Enter the race/ethnicity information as provided in the case file. If the child is of two or more races/ethnicities, list all that are provided in the case file (for example, White and Hispanic, or White and Native American, etc.). If during the course of the interviews, it is learned that a child is of a different race/ethnicity than is noted in the file or is of two or more races and only one is noted in the file (for example, Native American instead of Hispanic, or both Hispanic and Native American), please change the race identification information presented below to reflect the accurate information. |
| | * Provide the date of birth for all children in the family, even if this is a foster care case. |
| **Type of Case:** | * The case is a foster care case if the target child was in foster care at any time during the period under review. A child is considered to be in foster care if the State child welfare agency (hereafter "the agency") has care and placement responsibility for the child. This includes a child who is placed by the agency with relatives or in other kin-type placements, but the agency maintains care and placement responsibility. It does not include a child who is living with relatives (or caregivers other than parents) but who is not under the care and placement responsibility of the agency. |
| | * The case is an in-home services case if no child in the family was in foster care at any time during the period under review, and the case was open for at least 60 days. If the case was not open for 60 days, please notify the Local Site Leader. |
| **Open for reasons other than abuse and neglect:** | * Examples of cases opened for reasons other than child abuse or neglect include the following: (1) cases opened because of the child's behavior, including juvenile delinquency, substance abuse, or "child in need of supervision," and there were no maltreatment concerns in the family; or (2) cases for which the reasons for contact with the family were not related to child abuse or neglect. |
| **Date of most recent case openning:** | * Provide the date that the case was actually opened within the agency. If a child was on a trial home visit and returned to a foster care placement, it is not considered a "case opening" unless the trial home visit was longer than 6 months and there was no court order extending the trial home visit beyond 6 months. |
| | * If the family received in-home services before the removal of a child and placement of the child in foster care and the case was not closed prior to placement, reviewers should enter the date that the case was opened for in-home services. The date of the child's removal from home will be captured in the next item. |
| **Date of most recent entry into foster care:** | * "Entry into foster care" refers to a child's removal from his or her normal place of residence and placement in a substitute care setting under the care and placement responsibility of the State or local title IV-E/IV-B agency. Children are considered to have entered foster care if the child has been in substitute care for 24 hours or more. |
| | * If a child was on a trial home visit and returned to a foster care placement, the return is not considered an "entry into foster care" unless the trial home visit was longer than 6 months and there was no court order extending the trial home visit beyond 6 months. |
| | * If the case is an in-home services case, check Not Applicable. |
| **Date of Discharge from foster care for most recent episode:** | * "Discharge from foster care" is defined as the point when the child is no longer in foster care under the care and placement responsibility or supervision of the agency. |
| | * If a child returns home on a trial home visit and the agency retains responsibility or supervision of the child, the child should be considered discharged from foster care only if the trial home visit was longer than 6 months, and there was no court order extending the trial home visit beyond 6 months. |
| | * If the child is in foster care but has not yet been discharged, check Not Yet Discharged. |
| | * If the case is an in-home services case, check Not Applicable. |
| **Date of case closure:** | * Provide the date that the agency officially closed the case. For foster care cases, this may or may not be the same date as the discharge date. |
| | * If the case is still open at the time of review, check "Case not closed by time of review." |
| **Reason for Agency involvement:** | * Indicate the reason for the agency's involvement with this child or family for the most recent case opening. Check all reasons that apply. |
| | * Place an asterisk next to the square that indicates the primary reason that the case was opened. It is essential that the primary reason is identified with an asterisk. |

Assuring Safety and Managing Risk

| Item 1 | |
|---|---|
| 1 | * The information collected in question 1 is intended to provide background information on the family. It is not to be used to determine the rating.<br>* The life of the case begins with the first recorded maltreatment report received by the agency on any child in the family, even if the report was screened out.<br>* For foster care cases, reviewers should record the total number of reports of child maltreatment for all children in the family, not just the child in foster care. |
| 2 | * Complete the following table for all accepted reports received during the period under review.<br>    The date the investigation was initiated is the date that the agency made the first attempt to contact the family.<br><br>    The date assigned for an investigation is the date the report is assigned to a specific worker to conduct the investigation.<br><br>    *In the last column, report the disposition of the case (evidenced, not evidenced).<br><br>If question number 2 is 0, the rating for the entire item is Not Applicable |
| 3, 4, 5 | * If the answers to both questions 3 and 4 are zero, the answer to question 5 should be Not Applicable (NA).<br>* Level 2 reports must be intiated within 72 hours and Level 3 reports within 24 hours<br>* Delays in services provided by organizations or agencies under contract with the agency would not be considered to be beyond the control of the agency. However, where services are provided by another public State or local agency, such as law enforcement, the actions of these agencies may be beyond the control of the child welfare agency. |
| 6 | * Only complete if this question is applicable. Be specific in the answer, including the source of the information |
| Item 2 | |
| 7 | Definitions:                                                 <br><br>* "Evidenced" refers to an investigation in which the report of maltreatment, suspected maltreatment or risk of maltreatment was supported or founded according to State law or policy.<br>Instructions:<br><br>* Use the information provided in the table for item 1 to answer questions 7. The key information is provided in the columns pertaining to (1) the report date and (2) the disposition.<br>* If the answers to question 7 is No, the case should be rated Not Applicable for this item. Provide your reason in the documentation section. |
| 8 | * Reviewers should answer No to question 8 if the only additional maltreatment reports occurring within 6 months of one another referred to the same maltreatment incident identified in question 7.<br>* Reviewers should be aware that sometimes when children come into contact with a child welfare agency they disclose maltreatment incidents that occurred prior to the maltreatment incident that brought them into contact with the agency. The agency then may investigate these earlier incidents. If the case under review involves this type of maltreatment report and the report was evidenced, please follow the instructions below:<br>    If the maltreatment report refers to an incident that occurred within 6 months before another maltreatment report received during the period under review, and the report is evidenced, then the answer to question 8 should be Yes.<br>    If the maltreatment report refers to an incident that occurred more than 6 months before another maltreatment report received during the period under review, then the answers to question 8 should be No, even if the report is evidenced. |
| 9, 10 | * If the answers to question 8 is No, then the reviewers should answer Not Applicable (NA) to questions 9 and 10.<br>* Reviewers should answer No to question 9 if the answer to 8 is Yes, but there is no relationship between the circumstances involved in the two events. In determining the similarity of the circumstances, reviewers should consider the perpetrator of the maltreatment and other individuals involved in the incident.<br><br>* Reviewers should answer No to question 10 if the answer to 8 is Yes, but none of the evidenced maltreatment reports involved maltreatment of the child by the foster parents, members of the foster parents' family, other children in the foster home or facility, or facility staff members. |

Assuring Safety and Managing Risk

| | |
|---|---|
| **11** | * Be specific in your answer, noting sources of information. |
| **12** | * Only answer if child is in foster care. Be specific, noting sources of information. |
| **13** | * Be sure to note whether the interventions included services, referrals, or were directly provided by the worker as opposed to a contractor. Please note the extent to which the ASWS was involved/consulted in the interventions implemented |

**Item 3**

| | |
|---|---|
| | **Definitions:** |
| **14** | * "Appropriate services" for purposes of item 3 are those that are provided to, or arranged for, the family with the explicit goal of ensuring the child's safety, such as homemaking services, family preservation services, anger management classes, or substance abuse treatment services, etc., and that meet the specific needs or circumstances of the family. For example, if a parent's substance abuse is associated with the neglect that brought the case to the attention of the agency, then substance abuse treatment would be an appropriate service. If, in this situation, all that is offered is parenting education, then that service by itself would not be appropriate to address the safety issues. As another example, if there was domestic violence in the family and there was no effort to offer or provide domestic violence prevention services to the family, then the services would not be considered appropriate to ensure the child's safety. If a child needs mental health services, education-related services, or services to address behavioral problems, in most cases these would not be considered relevant to the child's safety if the child remained in the home. Efforts of the agency to meet these serv |
| | * "Appropriate services" also would include services provided to, or arranged for, a noncustodial parent, but only if the parent has contact with the child and there are safety concerns associated with that contact. It would not include services to assist the noncustodial parent in becoming a permanent caregiver. |
| | * "Concerted efforts" for purposes of item 3 refers to the following activities: conducting a safety assessment to identify the services that are necessary to ensure the child's safety in the home, working to engage families in services, and facilitating a family's access to those services. |
| | **Instructions:** |
| | * In answering question 14, focus only on whether the agency made concerted efforts to provide appropriate and relevant services to the family to address the safety issues in the family so that the child could remain in the home or would not re-enter foster care. Concerns about monitoring service participation and safety planning and assessment of progress made will be captured elsewhere. |
| | * If the agency removed the child from the home without making concerted efforts to provide services, the answer to question 14 should be No, even if the agency determined that it was necessary to remove the child for safety reasons. This issue will be addressed in question 15. |

Assuring Safety and Managing Risk

| | |
|---|---|
| 15 | * If the answer to question 14 is Yes, but, after making efforts to provide services, the child(ren) were removed from the home during the period under review due to safety concerns, the answer to question 15 should be Not Applicable (NA). |
| | * If the child was not removed from the home during the period under review, the answer to question 15 should be Not Applicable (NA). |
| | * Reviewers should focus on whether the circumstances of the case suggest that services would not have been able to ensure the child's safety if the child remained in the home. If the information indicates that it was necessary to remove the child to ensure the child's safety, the answer to question 15 should be Yes. If the information indicates that services should have been provided to prevent removal (for example, homemaking or family preservation services) but the child was removed without providing those services, this question should be answered No. |
| | * If services should have been offered to protect the child, but were not because those services were not available in the community, the answer to question 15 should be No. |
| 16 | *Be specific in your answer |
| 17 | *Be specific in your answer |
| Item 4 | |
| 18, 19 | **Definitions:** |
| | * "Risk" is defined as the likelihood that a child will be maltreated in the future. |
| | * "Target child" is defined as the child in a foster care case who is the subject of the case. |
| | **Instructions:** |
| | * 18 and 19 should be answered for the target child in foster care or receiving in-home services and any other children in the family remaining in the home. |
| | * 18 should be answered Not Applicable (NA) if the case was opened before the period under review. |
| | * Reviewers should note that in some cases, the issue of ongoing risk assessments may not be relevant because the case was opened near the end of the period under review and was not closed during the period under review (for example, if the case was opened shortly before the end of the period under review and during the initial assessment the agency determined that there were no risk concerns, then it may be reasonable to conclude that the agency would not have conducted a second risk assessment during the period under review). In this case, reviewers should determine whether the agency conducted ongoing risk assessments and, if not, whether it should have given the timeframe of the case. If reviewers believe that ongoing risk assessments were not necessary, 19 may be answered Not Applicable (NA). |
| | * In responding to 19, reviewers should determine whether ongoing risk assessments (formal or informal) were conducted during the period under review. If the agency conducted a risk assessment at the onset of the case, but did not assess for risk on an ongoing basis (for example, when there were new allegations of abuse or neglect, changing family conditions, changes to visitation, upon reunification, or at case closure, etc.) then the answer to 19 should be No unless the reviewers have sufficient information, based on their review of the case, to determine that during the period under review there were no apparent risk concerns for the child in foster care or any child(ren) in the family who remained in the home. |
| | * If a case was closed during the period under review, reviewers should determine whether the agency conducted a risk assessment before closing the case. If not, the answer to 19 should be No, unless the reviewers have sufficient information, based on their review of the case, to determine that such an assessment was not necessary because during the period under review there were no apparent risk concerns for the child in foster care or any child(ren) in the family remaining in the home. |
| | **Definitions:** |
| | * "Safety assessment" refers to the determination of whether a child is in a safe environment. A safe environment is one in which there are no threats that pose a danger or, if there are threats, there is a responsible adult in a caregiving role who demonstrates sufficient capacity to protect the child. |
| | * "Safety plan" refers to a plan that describes strategies developed by the agency and family to ensure that the child(ren) is safe. Safety plans should address safety threats and how those will be managed/addressed by the caregiver, caregiver capacity to implement the plan and report safety issues to the agency, and family involvement in implementation of the plan. Safety plans may be separate from or integrated into the case plan. |

Assuring Safety and Managing Risk

| | Instructions: | | | | | |
|---|---|---|---|---|---|---|
| | * 20 and 21 should be answered for the target child in foster care or receiving in-home services and any other child(ren) in the family remaining in the home. | | | | | |
| | * 20 should be answered Not Applicable (NA) if the case was opened before the period under review. | | | | | |
| | * 21 should be answered Not Applicable (NA) if the reviewers determine that during the period under review there were no apparent safety concerns for the target child in foster care and/or any child(ren) in the family remaining in the home. | | | | | |
| **20, 21** | * Reviewers should note that in some cases, the issue of ongoing safety assessments may not be relevant because the case was opened near the end of the period under review and was not closed during the period under review (for example, if the case was opened shortly before the end of the period under review and during the initial assessment the agency determined that there were no safety concerns, then it may be reasonable to conclude that the agency would not have conducted a second safety assessment during the period under review). In this case, reviewers should determine whether the agency conducted ongoing safety assessments and, if not, whether the assessments should have been conducted given the timeframe of the case. If reviewers believe that ongoing safety assessments were not necessary, 21 may be answered Not Applicable (NA). | | | | | |
| | * In responding to questions 20 and 21, reviewers should determine whether the agency conducted initial and ongoing safety assessments (formal or informal) during the period under review. | | | | | |
| | * If the agency did not assess the child(ren)'s safety on an ongoing basis (for example, when there were new allegations of abuse or neglect, changing family conditions, changes to visitation, upon reunification, or at case closure, etc.) then the answer to 21 should be No unless the reviewer determines that during the period under review there were no apparent safety concerns for any child(ren) in the family remaining in the home. | | | | | |
| | * If the case was closed during the period under review, reviewers should determine whether a safety assessment was conducted before closing the case. If not, the answer to 21 should be No, unless the reviewer has sufficient information, based on review of the case, to determine that such an assessment was not necessary because during the period under review there were no apparent safety concerns for any child(ren) in the family remaining in the home. | | | | | |
| **22** | * In answering 22, reviewers should consider whether any of the following occurred while the case was open for services (select all that are appropriate and provide further information in the documentation section): | | | | | |
| | | There were maltreatment allegations on the family that were reported to the agency but were inappropriately screened out  (based on reviewers' judgments). | | | | |
| | | There were maltreatment allegations on the family but they were never formally reported or formally investigated. | | | | |
| | | There were extensive delays in accepting an allegation for investigation or assessment. | | | | |
| | | There were maltreatment allegations that were not substantiated despite evidence that would support a substantiation. | | | | |
| | | The case was closed prematurely (based on reviewers' judgments and because of either an agency or court decision). | | | | |
| | * 22 should be answered Not Applicable (NA) if the reviewer determines that during the period under review there were no apparent safety concerns for the target child in foster care and/or any child(ren) in the family remaining in the home. | | | | | |
| **23** | * The answer to 23 should be Not Applicable (NA) if this is not a foster care case. | | | | | |
| | * If the child does not have visits with the parents or with other family members (for example, parental rights have been terminated and the parents are no longer involved in the child's life, or parents are incarcerated and there are no visits with family members), the answer to 23 should be Not Applicable (NA). | | | | | |
| | * Reviewers should determine whether the visitation arrangements with parents or other family members with regard to supervised or unsupervised visits or home visits were appropriate given the circumstances of the case. | | | | | |
| | * If a reviewer determines that unsupervised visitation is permitted, but that this type of visitation presents safety concerns for the child, then the answer to 23 should be Yes. | | | | | |
| | * Reviewers should assess whether any safety concerns existed during the child's visitation with parents. For example, were there allegations of child maltreatment during visitation or was the child in an unsafe situation during visitation (for example, because the custodial parent's significant other, who was known to be a drug user, was present in the home or because previously identified risk factors had not been mitigated through effective treatment)? | | | | | |

Assuring Safety and Managing Risk

| | |
|---|---|
| | * The answer to 24 should be Not Applicable (NA) if this is not a foster care case. |
| 24 | * The answer to 24 should be Yes if reviewers determine that, during the period under review, the child was in at least one foster care placement in which he or she was unsafe, and appropriate action was not taken (such as providing closer monitoring of the placement, placing fewer children in the home, providing services to address potential problems or existing problems, finding a more appropriate placement, etc.). The following are examples: |
| | -   There was a substantiated allegation of maltreatment of the child by a foster parent (including a relative foster parent) or facility staff member that could have been prevented if the agency had taken appropriate actions. |
| | -   There was a critical incident report or other major issue relevant to noncompliance by foster parents or facility staff that could potentially make the child unsafe, and the agency could have prevented it or did not provide an adequate response after it occurred. |
| | -   The child's placement during the period under review presented other risks to the child that are not being addressed, even though no allegation was made and no critical incident reports were filed. |
| | * The reviewers discover that there are safety concerns related to the child in the foster home that the agency is unaware of because of inadequate monitoring. |
| 25 | * The answer to 25 should be Not Applicable (NA) if, during the period under review, the child was not discharged from foster care to reunification with parents or relatives or was not returned home on a trial visit at any time. |
| | * The answer to 25 should be Yes if the child was reunified with parents or relatives on a permanent or trial basis, and a thorough safety assessment was conducted before reunification. |
| | * If a thorough safety assessment was not conducted before reunification or a trial home visit, the answer to 25 should be No. |
| 26 | * Be specific in your answer, noting sources of information. |
| 27 | * Be specific in your answer, noting sources of information. |
| 28 | * Be specific in your answer, noting sources of information. |
| 29 | * Be specific in your answer, noting sources of information. |
| 30 | * Be specific in your answer, noting sources of information. |
| 31 | * Be specific in your answer, noting sources of information. |
| 32 | * Be specific in your answer, noting sources of information. |

Assessing Strengths and Needs

| Item 5 | |
|---|---|
| | * Assessment of strengths and needs may take different forms. For example, strengths and needs may be assessed through a formal evaluation conducted by another agency or by a contracted provider or through a more informal case planning process involving intensive interviews with the child, family, service providers, etc. |
| | * Reviewers are to answer question 33 based on a determination of whether the agency made concerted efforts to achieve an in-depth understanding of the strengths and needs of the child and family, regardless of whether the strengths and needs were assessed in a formal or informal manner. Consequently, the evaluation of the assessment should focus on its adequacy in addition to whether one was conducted or not. |
| 33 | * Reviewers are to consider whether there were safety concerns pertaining to the child(ren), other than those identified in the section that could be reasonably expected to escalate to an immediate safety issue without intervention. |
| | * In answering this question, reviewers should consider whether the agency conducted an adequate assessment of the child's strengths and needs with regard to appropriate placement. |
| | * Reviewers are to answer this question with regard to an assessment of strengths and needs other than those related to the child's education, physical health, and mental/behavioral health (including substance abuse). The assessment of the child's strengths and needs related to these issues is addressed in later items. |
| | * If the case is a foster care case, reviewers are to determine only whether the agency assessed the strengths and needs of the target child in the case, even if there are other children in the family in foster care or in the home. |
| | * If the case is a foster care case, and the child is an adolescent, reviewers should determine whether the child's strengths and needs for independent living services are being assessed on an ongoing basis as part of the child's independent living plan. However, if the child is an adolescent and has a permanency plan goal of other planned permanent living arrangement, the reviewer is not to focus on independent living services assessments because it is reviewed elsewhere |
| 34 | * Reviewers are to note if the assessment occurred within 30 calendar days of the agency receiving care and placement responsibility for the child, if this occurred within the PUR. |
| 35 | * If the answer to 33 is Yes, but the result of the assessment was that no service needs were identified other than those related to education, physical health, and mental/behavioral health (including substance abuse), and therefore no services were provided other than services to address those needs, the answer to 35 should be Not Applicable (NA) (these assessments will be addressed in later items) |
| | * Reviewers should focus on the agency's provision of services during the period under review. If services were provided before the period under review, and an assessment conducted during the period under review indicated no further service needs, then the answer to 35 should be Not Applicable (NA). |
| | * Reviewers are to answer this question with regard to provision of services other than those related to education, physical health, or mental/behavioral health (including substance abuse). The assessment of service provision related to these issues is addressed in later items. |
| | * Reviewers should determine whether the services provided matched identified needs. For example, were the services provided simply because those were the services available or were they provided because the assessment revealed a particular need for a particular type of service? |
| | * If the case is an in-home services case, reviewers are to consider whether the agency met the service needs of all children in the family, even if only one child was the subject of the maltreatment report. |
| | * If the case is a foster care case, reviewers are to determine only whether the agency met the service needs of the target child in the case, even if there are other children in the family in foster care or in the home. |

Assessing Strengths and Needs

| | |
|---|---|
| | * If the case is a foster care case, and the child is an adolescent but does not have a permanency plan of other planned permanent living arrangement, reviewers should determine whether the agency met the service needs relevant to independent living. |
| | * Examples of services that are assessed under this item include child care services that are not required for the child's safety, mentoring programs that are not related to the child's education, recreational services, teen parenting education, preparation for adoption and other permanency goals, services that address family relationships that are not mental health in nature (for example, services to assist children in reestablishing or maintaining family ties), and services to assist the child that are recommended by a therapist or other provider but are not mental-health related (such as enrollment in an activity to assist with social skills or to boost self-esteem), etc. |
| 36 | * Timely manner is defined as being consistent with the family member's need for services and not being subject to delays in receiving services. Referrals are to be made promptly and not be subject to delays unless time frames for referring are specified in the case planning process |
| 37 | * The child should be interviewed by the person completing the assessment |
| 38 | * In addition to considering the child being interviewed, Reviewers should look for evidence that the age-appropriate child was asked specific questions about their strengths and needs, through both Reviewer interview's and caseworker notes. |
| 39 | * Be specific in your answer, noting sources of information. |
| 40 | * Be specific in your answer, noting sources of information. |
| 41 | * Be specific in your answer, noting sources of information. |
| 42, 48 | * The applicable question 42 or 48 should be answered Not Applicable (NA) if (1) the parent's parental rights were terminated before the period under review, (2) the parent's whereabouts was not known during the entire period under review despite agency efforts to locate her or him, or (3) the parent was deceased during the entire period under review. |
| | * Reviewers are to determine whether the agency has made concerted efforts to ensure that case planning is based on an in-depth understanding of the strengths and needs of the child and parent, regardless of whether the strengths and needs were assessed in a formal or informal manner. (Assessment of needs may take different forms. For example, strengths and needs may be assessed through a formal psychosocial evaluation conducted by another agency or by a contracted provider or through a more informal case planning process involving intensive interviews with the child, family, service providers, etc.) |
| | *Assessment of parents' strengths and needs refers to a determination of what parents need to provide appropriate care and supervision to ensure the safety and well-being of their children. |
| | * Assessment of parents' needs may include mental and physical health strengths and needs, as later items do not address these concerns for the parents. |
| | * If the case was opened during the period under review, reviewers should focus on whether the agency conducted an initial comprehensive assessment as a basis for developing a case plan, and whether ongoing assessment was conducted as appropriate. |
| | * If the case was opened before the period under review, reviewers should focus on whether the agency conducted periodic comprehensive strengths and needs assessments (as appropriate) during the period under review to update information relevant to ongoing case planning. |
| | * If the child is in an adoptive home (the adoption has been finalized), reviewers should consider the adoptive parents as the parents. |
| 43 | * Policy dictates the assessment be conducted within the first 30 calendar days from when the agency receives care and placement responsibility for the child. Use NA if case opened before PUR |
| 44 | * "Timely manner" is defined as being consistent with the family member's need for services and not being subject to delays in receiving services. |
| 45 | * The caseworker completing the assessment should interview the mother, and seek her input and opinions |

Assessing Strengths and Needs

| 46 | * The mother should be intricately involved in the completion of the strengths and needs assessment, beyond the signing of the document. |
|---|---|
| 47, 50 | * Follow the instructions for questions 42 and 48.<br><br>* If an assessment was conducted but no service needs were identified, this question can be answered Not Applicable (NA).<br><br>* Appropriate services are those that enhance the parents' ability to provide care and supervision to their children and ensure the child(ren)'s safety and well-being; for example, substance abuse treatment, parenting skills classes, safety-related services not included in item 4, etc. |
| 49 | * Policy dictates the assessment be conducted within the first 30 calendar days from when the agency receives care and placement responsibility for the child. |
| 51 | * "Timely manner" is defined as being consistent with the family member's need for services and not being subject to delays in receiving services. |
| 52 | * The caseworker completing the assessment should interview the father, and seek his input and opinions |
| 53 | * The father should be intricately involved in the completion of the strengths and needs assessment, beyond the signing of the document. |
| 54 | * Acceptable reasons include termination of parental rights, death, whereabouts unknown despite agency efforts to locate, or parent's involvement with child was determined to be contrary to the child's safety or best interests (for example, the parents are considered abusive parents whose contacts with the child continue to pose unmanageable risks).  Someone being a non-custodial parent is not in itself a reason to forego completing an assessment on a mother or father. |
| 55 | * Be specific in your answer |
| 56 | * Be specific in your answer |
| 57 | * Be specific in your answer |
| 58 | * Be specific in your answer |
| 59, 60 | **Definitions:**<br><br>* Foster parents are defined as related or non-related caregivers who have been given responsibility for care of the child by the agency while the child is under the care and placement supervision of the agency. This includes pre-adoptive parents if the adoption has not been finalized.<br>**Instructions:**<br>* Reviewers should select Not Applicable (NA) for both questions 59 and 60 if the case is not a foster care case or if, during the entire period under review, the child was in out-of-home care in a residential facility or similar placement, but does not have foster parents.<br>* The answer to question 60 should be Not Applicable (NA) if strengths and needs were assessed but none were identified.<br>* Reviewers should determine whether an assessment was conducted to identify what the foster parents needed to enhance their capacity to provide appropriate care and supervision to the children in their home, including needs for respite care, assistance with transportation needs, counseling to address the child's behavior problems, etc.<br><br>* Reviewers should determine whether assessment of foster parent strengths and needs is done on an ongoing basis. If there is no evidence in the case file that the agency assessed the needs of the foster parents at any time during the period under review, and the foster parents (if available for interview) indicate that they have not been assessed, then the answer to question 59 should be No. |
| 61 | * "Timely manner" is defined as being consistent with the family member's need for services and not being subject to delays in receiving services. |
| 62 | * Be specific in your answer |
| 63 | * Be specific in your answer |

Assessing Strengths and Needs

| Item 6 | |
|---|---|
| 64 | * If the case is a foster care case, 64 should be answered only for the child in foster care, even if the child was reunified during the period under review and there are other children in the home. |
| | * If the case is an in-home services case, 64 should be answered for all children in the home for whom educational issues are relevant to the reason for the agency's involvement with the family, and/or it is |
| | * 64 should be answered Yes if there was evidence of an educational assessment in the case file, such as the following: |
| | - An educational assessment was included in the comprehensive needs assessment. |
| | - A separate educational assessment was conducted by the school (and made available to the agency) or by the agency. |
| | - The agency conducted an informal (and documented) educational assessment. |
| | * 64 should be answered Yes if the reviewer determines through interviews with key individuals that the agency assessed the child's educational needs, even if the case file did not include the documentation identified above. |
| 65 | * Policy dictates the assessment be conducted within the first 30 calendar days from when the child enters care and placement responsibility of the agency. |
| 66 | * Only complete if applicable. Policy dictates the assessment be conducted within the first 30 calendar days from when the child enters care and placement responsibility of the agency. |
| 67 | * Be specific to note any specific tools used, and who conducted the assessment |
| 68 | * Be specific in your answer |
| 69 | * Be specific in your answer |
| 70 | * Policy dictates that the child should be enrolled in an accredited school within 3 calendar days from when the child enters care and placement responsibility of the agency. |

Involving Children and Families in Case Planning and Decision Making

**Item 7**

|  |  |
|---|---|
| | **Definition:** |
| | * "Actively involved" means that the agency consulted with the child (as developmentally appropriate) regarding the child's goals and services, explained the plan and terms used in the plan in language that the child can understand, and included the child in periodic case planning meetings, particularly if any changes are being considered in the plan. |
| | **Instructions:** |
| | * Reviewers should select Not Applicable (NA) if the child is not old enough to participate in case planning or is incapacitated. Although the capacity to participate actively in case planning will need to be decided on a case-by-case basis, as a guideline, most children who are elementary school-aged or older may be expected to participate to some extent. |
| **71** | * If the case is a foster care case, this section applies to the target child only. If the case is an in-home services case, this section applies to all children in the family who are/were receiving agency services or are/were residing within the family. |
| | * If the case is a foster care case, reviewers should answer No to this question if there is no case plan in the case file. |
| | * If the case is an in-home services case, reviewers should answer No to this question if there is no case plan in the case file. |
| | * Reviewers should not assume that a child's knowledge about his or her case plan is an indicator of active involvement. |
| | * If the initial case plan was developed before the period under review, reviewers should focus on the child's involvement during the period under review in the ongoing case planning process, particularly with regard to evaluating progress and making changes in the type and level of services needed. |
| | **Definition:** |
| | * "Actively involved" means that the agency involved the parent in (1) identifying strengths and needs, (2) identifying services and service providers, (3) establishing goals in case plans, (4) evaluating progress toward goals, and (5) discussing the case plan in case planning meetings. |
| | * For in-home services cases, "parents" are defined as the child's primary caregivers with whom the child lives, or as a noncustodial parent who is involved or wishes to be involved in the child's life. |
| | * For foster care cases, "mother" and "father" include the following: |
| |     - The child's biological parents |
| |     - The child's primary caregivers (if other than the biological parents) from whom the child was removed (if relevant) |
| **72, 73** |     - The child's adoptive parents if the adoption has been finalized |
| | **Instructions:** |
| | * Reviewers should select Not Applicable (NA) if the parents' involvement was determined to be contrary to the child's safety or best interests (for example, the parents are considered abusive parents whose contacts with the child continue to pose unmanageable risks). Documentation must be |
| | * Reviewers should select Not Applicable (NA) if the parents' whereabouts were not known, and there is documentation in the case file regarding the agency's concerted efforts to locate her or him. |
| | * If the initial case plan was developed before the period under review, reviewers should focus on the parents' involvement during the period under review in the ongoing case planning process, particularly with regard to evaluating progress and making changes in the plan. |

Involving Children and Families in Case Planning and Decision Making

|  | |
|---|---|
| | * Reviewers should select No if the agency did not make concerted efforts to locate a parent whose whereabouts were unknown. |
| 74 | * Be specific in your answer |
| 75 | * Families should be informed of case planning events as soon in advance of meetings as they are scheduled to help ensure participation, and their availability should be considered in the scheduling of events. Caseworkers should meet with families in person or on phone and discuss the purpose of the upcoming events, what will occur, and how the families should participate. Be specific in your explanation. |
| 76 | * Please note the source of the evidence (case notes, interviews, etc). Children and families should be specifically asked what they need. |
| 77 | * Family involvement goes beyond simply signing the plan. Family members should be engaged, their input solicited and used in the plan development. Objections to services and assessments should also be noted. NA should only be used if TPR occurred prior to PUR |
| 78 | * Family involvement goes beyond simply signing the plan. Family members should be engaged, their input solicited and used in the plan development. Objections to services and assessments should also be noted. NA should only be used if TPR occurred prior to PUR |
| 79 | * Family involvement goes beyond simply signing the plan. Family members should be engaged, their input solicited and used in the plan development. Objections to services and assessments should also be noted. |
| 80 | * Service plans must be signed by parents or guardians. |
| 81 | * Service plans must be signed by children aged 6 and older. |
| 82 | * Families must always be invited to County Conferences, and their attendance is encouraged. |
| Item 8 | |
| 83, 84 | **Definitions:**<br><br>* A "visit" is defined as a face-to-face contact between the caseworker and the child.<br>**Instructions:**<br>* If the case is an in-home services case, 83 should be answered for all children in the family who are living in the home and/or receiving services through the agency.<br>* If the case is a foster care case, 83 should be answered only for the target child in the case.<br>* Reviewers should consider only the pattern of visits during the period under review and not over the life of the case.<br>* Reviewers should focus on the visitation frequency of the agency caseworker responsible for the case.<br>* Reviewers should determine the most typical pattern of visiting during the period under review because the actual frequency may vary in specific time periods.<br><br>* Reviewers should base their determination on the frequency necessary to ensure the child's safety, permanency, and well-being and not on State policy requirements regarding caseworker contacts or visits with the child. For example, if the reviewer determines that given the circumstances of the case (for example, there are safety concerns), the caseworker should visit more frequently, then the answer to 83 should be No, and the reason for this answer should be provided in the documentation section.<br>* If the typical pattern of visits is less than twice a month, the answer to 83 should be No unless the reviewer determines that there is a substantial justification for a Yes answer. In this situation the justification should be included in the documentation section.<br><br>* If the child is in a placement in another State, the reviewer should determine whether a caseworker from the jurisdiction in which the child is placed, or a caseworker from the jurisdiction from which the child was placed, visits with the child in the placement on a schedule that is consistent with the child's needs and no less frequently than once per year, as required by Federal law. |

Involving Children and Families in Case Planning and Decision Making

| | |
|---|---|
| 85 | * Per policy requirements. NA for in-home cases, as requirement is only 1x a month, however if 2 visits do occur in an in-home, mark yes |
| 86 | * Reviewers should consider both the length of the visit (for example, was it of sufficient duration to address key issues with the child, or was it just a brief visit) and the location of the visit (for example, was it in a place conducive to open and honest conversation, such as a private home, or was it in a more formal or public environment, such as a restaurant or court house). |
| | * Reviewers should consider whether the caseworker saw the child alone or whether the parent or foster parent was usually present during the caseworker's visits with the child. If the child was older than an infant, and the caseworker did not see the child alone for at least part of each visit, then the answer to 86 should be No. |
| | * Reviewers also should consider the topics that were discussed during the visits, if that information is available in the case file or through interviews. For the answer to 86 to be Yes, there must be some evidence that the caseworker and the child addressed issues pertaining to the child's needs, services, and case goals during the visits. |
| 87 | * Be specific in your answer |
| 88 | * Be specific in your answer |
| Item 9 | |
| 89, 90, 91, 92 | **Definitions:** |
| | * A "visit" is defined as a face-to-face contact between the caseworker and the parent. |
| | * For in-home services cases, "parents" are defined as the children's primary caregivers with whom the children live, or as a noncustodial parent who is involved or wishes to be involved in the child's life. |
| | * For foster care cases, "parents" include: |
| | -   The child's biological parents |
| | -   The child's primary caregivers (if other than the biological parents) from whom the child was removed (if relevant) |
| | -   The child's adoptive parents if the adoption has been finalized |
| | **Instructions:** |
| | * Reviewers should select Not Applicable (NA) if: (1) agency contact with the mother or father was determined to be contrary to a child's safety or best interests (and this is documented in the case file), (2) the location of the parent was unknown during the entire period under review, despite documented concerted agency efforts to locate her or him, (3) the parents' parental rights were terminated before the period under review and she or he is not involved in the child's life, or (4) during the entire period under review, the parent was not involved in the child's life or in case planning in any way despite agency efforts to involve her or him. |
| | * If the answer to question 89 or 91 is Not Applicable (NA), the answer to question 90 or 92 for that parent also should be Not Applicable (NA). |
| | * Reviewers should consider only the pattern of visits during the period under review and not over the life of the case. |
| | * Reviewers should determine the most typical pattern of visiting during the period under review because the actual frequency may vary in specific time periods. |
| | * Reviewers should select Never for questions 90 and 92 if the agency reported that the whereabouts of the mother or father was unknown, but there was no evidence that the agency made concerted efforts to locate either the mother or the father. |
| | * Reviewers should consider the frequency of visits that is necessary to effectively address: (1) the child's safety, permanency, and well-being, and (2) achievement of case goals. Reviewers should not answer the question based on the caseworker visit requirements that are established by State policy. |
| | * The answers to questions 89 and 91 should be No if the typical pattern of contact is less than once a month, unless the reviewer has a substantial justification for answering either question as Yes. |

Involving Children and Families in Case Planning and Decision Making

(Please provide this justification in the documentation section.)

Involving Children and Families in Case Planning and Decision Making

| | |
|---|---|
| 93, 94 | * Reviewers should consider both the length of the visit (for example, was it of sufficient duration to address key issues with the mother/father, or was it just a brief visit?) and the location of the visit (for example, was it in a place conducive to open and honest conversation, such as a private home, or was it in a formal or public environment that might be uncomfortable for the parent, such as a court house or restaurant?). |
| | * Reviewers should consider whether the visits between the caseworker or other responsible party and the father/mother focused on issues pertinent to case planning, service delivery, and goal achievement. |
| | * If the answer to question 89 or 91 is Not Applicable, then the answer to the corresponding question (same parent) 93 or 94 should be Not Applicable. |
| 95 | * Be specific in your answer |
| 96 | * Be specific in your answer |
| 97 | * Caseworkers should make an initial effort, and routine/continual efforts to locate the parent, following up on leads that may surface as the case continues. |
| 98 | * Caseworkers should make an initial effort, and routine/continual efforts to locate the parent, following up on leads that may surface as the case continues. |

Individualized Case Plannning

**Item 10**

| | |
|---|---|
| 99 | * Permanency goals are the following: adoption, guardianship, reunification with parents, reunification with relatives, and other planned permanent living arrangements. A goal of other planned permanent living arrangement often will not be specified in the case file using that term. This goal refers to a situation in which the State maintains care and custody responsibilities for the child, but places the child in a setting in which the child is expected to remain until adulthood, such as with foster parents who have made a commitment to care for the child permanently, with relatives who have made the same commitment, or with a residential care facility (for example, for children with developmental disabilities who require residential care). If this is an in-home case, this Item should be N/A. |
| | * The permanency goal or goals identified in question 99 determine the additional items to be completed for sections Reunification, Adoption, or Other Permanent Plan in Mobilizing Services Timely. If two concurrent permanency goals have been established and are identified in the case plan, identify both goals and complete the corresponding sections in Mobilizing Services Timely (Reunification, Adoption, or Other Permanent Plan) for each of the goals. Do not report concurrent goals in 99 unless both are identified in the case file. |
| 100 | * Permanency goals should be established in the case file. If the permanency goal is not specified anywhere in the case file, such as in the case plan or in a court order, then the answer to question 100 should be No, and this section should be rated as an Area Needing Improvement. |
| | * If no permanency goal is specified in the case file, reviewers should ask the caseworker to identify the permanency goal toward which the agency is working for the child. This goal should be entered for question 99, and should be used to determine which additional item is completed for the case. Reviewers should ask the caseworker to explain why the child's permanency goal is not specified in the case file and include that information in the documentation section. |
| 101 | * Policy dictates that the permanency plan be developed within the first 30 calendar days from when the agency receives care and placement responsibility for the child. |
| 102 | * Reviewers should answer this question based on their professional judgment regarding the timeliness of establishing the goal, particularly with regard to changing a goal, and provide the rationale for their decision in the documentation section. For children who recently entered care, reviewers should expect the first permanency goal to be established no later than 30 days from the date of the child's entry into foster care consistent with Mississippi Policy. For children whose goal was changed from reunification to adoption, reviewers should consider the guidelines established by the Federal Adoption and Safe Families Act (ASFA) regarding seeking termination of parental rights, which might impact the timeliness of changing a goal from reunification to adoption. |
| | * Reviewers should answer this question for all permanency goals in effect during the period under review. If there are concurrent goals, the answer should apply to both goals. For example, if there are concurrent goals of reunification and adoption, and you believe that the reunification goal was established in a timely manner, but the adoption goal was not, the answer to 102 should be No. |
| | * Complete the table below for each of the goals in place during the period under review. Begin with the child's first permanency goal in place during the period under review, and end with the current or latest permanency goal or goals identified in 99. |
| 103 | * Reviewers should answer this question based on their professional judgment regarding the appropriateness of the permanency goal and provide the rationale for their decision in the documentation section. |
| | * Reviewers should consider the factors that the agency considered in deciding on the permanency goal and whether all of the relevant factors were evaluated. |
| | * If one of the goals is other planned permanent living arrangement and the reviewer determines that the goal was established without a thorough consideration of other permanency goals, then the answer to 103 should be No. |

Individualized Case Plannning

| 104 | * Be specific in your answer |
|------|------|
| 105 | * In answering 105, reviewers should begin the "count" with the date of the judicial finding of child abuse and neglect (usually the adjudicatory hearing) or 60 days after the child's removal from the home and placement in a substitute care setting, whichever is earlier. |
| 106 | **Definitions:**<br>* ASFA requires an agency to seek TPR under the following circumstances:<br>　　The child has been in care for at least 15 of the most recent 22 months, or a court of competent<br>　　jurisdiction has determined that:<br>　　　§　The child is an abandoned child, or<br>　　　§　The child's parents have been convicted of one of the felonies designated in Section<br>　　　475(5)(E) of the Social Security Act, including: (1) committed murder of another child of<br>　　　the parent; (2) committed voluntary manslaughter of another child of the parent; (3) aided<br>　　　or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary<br>　　　manslaughter; or (4) committed a felony assault that resulted in serious bodily injury to the<br>　　　child or another child of the parent.<br>**Instructions:**<br>* If the answer to 105 is Yes, the answer to 106 should be Not Applicable (NA).<br>* 106 must be answered if the answer to 105 is No.<br><br>* If any of the conditions noted above apply to the case under review, 106 should be answered Yes. |
| 107 | * If the answers to both 105 and 106 are No, the answer to 107 should be Not Applicable (NA).<br>* Reviewers should review the case file for evidence of petitioning for TPR. If there is no evidence of this in the file, then reviewers should ask the caseworker for documentation regarding petitioning for TPR. If there is no evidence in the file or other documentation, then 107 should be answered No. |
| 108 | **Definitions:**<br>* Exceptions to the TPR requirement include the following: (1) at the option of the State, the child is being cared for by a relative; (2) the agency has documented in the case plan a compelling reason for determining that a TPR would not be in the best interest of the child; or (3) the State has not provided to the family the services that the State deemed necessary for the safe return of the child to the child's home if reasonable efforts of the type described in Section 471(a)(15)(B)(ii) of the Social Security Act are required to be made with respect to the child.<br>**Instructions:**<br>* If the answer to 107 is Yes or Not Applicable (NA), then 108 should be answered Not Applicable (NA).<br>* 108 can be answered Yes only if the "exception" or compelling reason for not seeking TPR is noted somewhere in the case file or if there is a court order that acknowledges the exception. If, during an interview, the caseworker provides a reason for not seeking TPR, but cannot provide any documentation, then 108 should be answered No. However, the caseworker's verbal description of the reason for not seeking TPR should be noted in the documentation section. |
| 109 | * Acceptable circumstances are: Child is placed with a relative, compelling reasons, or the state has not provided mandated services. |
| 110 | * In addition to just being labeled in the case plan, case notes, and progress reports should reflect efforts in concurrent planning. |
| 111 | * Aftercare plans should be developed well in advance of discharge, with enough time to ensure a smooth transition. Caseworkers should be proactive in aftercare planning. |
| Item 11 | |
| 112 | * Note the number in the box provided. Participants in the FTM need to include more than just the caseworker and the parent unless they are the only relevant participants for the meetings. |
| 113 | * Ideally, both parents and resource parents (where determined appropriate) attend FTMs, in additio |
| 114 | * FTMs are an excellent forum for developing the case plan. Only answer if applicable. |
| 115 | * FTMs are an excellent forum to be used when any major event occurs in the child's life, like placement moves or a traumatic event. Only answer if applicable. |
| 116 | * Concurrent planning should be discussed with the birth parents at the initial case plan development, when their input is being solicited. Parents must be aware of the agencies plans for concurrent planning, in the event that reunification does not occur. |

Mobilizing Appropriate Services Timely

**Item 12**

| | |
|---|---|
| | **Definitions:** |
| **117** | * "Entry into foster care" refers to a child's removal from his or her normal place of residence and placement in a substitute care setting under the care and placement responsibility of the State or local title IV-E/IV-B agency. Children are considered to have entered foster care if the child has been in substitute care for 24 hours or more. Quesrion and Item is NA if child is in in-home |
| | * "Episode of foster care" refers to the timeframe between a child's entry into foster care (the date shown on the Face Sheet) and the child's discharge from foster care (the date shown on the Face Sheet). |
| | * "Discharge" refers to the point when the child is no longer in foster care under the care and responsibility or supervision of the agency. If the agency retains supervision of a child and the child returns home on a trial basis for an unspecified period of time, the child should be considered discharged from foster care after a 6-month period of time, unless a longer period of time has been specified in a court order. |
| | **Instructions:** |
| | * Reviewers are to answer this question based only on formal entries into and exits from foster care as defined above. Reviewers are not to consider physical reunification as a discharge from foster care unless there also is a transfer of care and placement responsibility. |
| **118** | * If the answer to 117 is No, the answer to 118 should be Not Applicable (NA). |
| | * Reviewers should examine the reasons why a child had multiple entries into foster care and what efforts were made to prevent the re-entry. |
| **119** | * Enter date noted on the face sheet. |
| **120** | * Information should be available in the case file in MACWIS |
| **121** | * Be specific in your answer |
| **122** | * Be specific in your answer |
| **Item 13** | |
| **123, 124** | * A goal of reunification is defined as a plan for the child to be discharged from foster care to his or her parents or primary caretaker. |
| | * A goal of guardianship is defined as a plan for the child to be discharged from foster care to a legally established custody arrangement with an individual that is intended to be permanent. |
| | * A goal of permanent placement with relatives is defined as a plan for the child to be discharged from foster care to the permanent care of a relative other than the one from whose home he or she was removed. |
| | * Answer if it is a permanent or concurrent goal.If there are concurrent goals identify both goals. |
| **125, 126, 127, 128** | **Definitions:** |
| | * "Entry into foster care" refers to a child's removal from his or her normal place of residence and placement in a substitute care setting under the care and placement responsibility of the State or local title IV-E/IV-B agency. Children are considered to have entered foster care if the child has been in substitute care for 24 hours or more. |
| | * "Discharge from foster care" is defined as the point when the child is no longer in foster care under the care and placement responsibility or supervision of the agency. If a child returns home on a trial home visit and the agency retains responsibility or supervision of the child, the child is not considered discharged from foster care unless the trial home visit is longer than 6 months, and there was no court order extending the trial home visit beyond 6 months. |
| | **Instructions:** |
| | * In determining a response to 125 reviewers should consider the time the child has been in foster care as well as agency and court efforts. As a general rule, if the child has been in foster care for more than 12 months and the goal has not yet been achieved, then the answer to 125 should be No, unless there are particular circumstances that justify the delay. If the reviewer determines that there is a justification for the child remaining in foster care for longer than 12 months before achieving the permanency goal, the justification should be included in the documentation section for this item. For example: |
| | —    The permanency goal of reunification has been in place for longer than 12 months, but there is a concurrent goal of adoption and the agency and court also are working toward the goal of adoption. |

Mobilizing Appropriate Services Timely

|  | |
|---|---|
| | — The permanency goal of reunification has been in place for longer than 12 months, but the child was physically returned to the parents during or before the 12th month and remained at home on a trial home visit beyond the 12th month. If the reviewer determines that the length of time that the child spent in out-of-home care and on the trial home visit was reasonable given the child and family circumstances, then the item may be rated as a strength even though the child was not discharged from foster care until after the 12th month.<br>* If the reviewer determines that the agency and court could have achieved the permanency goal prior to 12 months, but there was a delay due to lack of concerted efforts on the part of the agency or court, then the answer to 125 should be No even if the child was reunified within 12 months. A justification should be included in the documentation section for this item. |
| 129 | * Be specific in your answer |
| 130 | * Be specific in your answer |
| 131 | * Service plans should be specific in services needed to address concerns. |
| 132 | * Services can either be provided by the caseworker directly or through another agency. |
| 133 | * Services can either be provided by the caseworker directly or through another agency. |
| 134 | * Children who are to be reunified should have a 90 day trial home visit which is monitored closely by the caseworker to ensure the appropriateness of the goal and to close the case. |
| Item 14 | |
| 135 | * Note timeframe to the closest month. Do not round up. |
| 136 | **Definitions:**<br>* "Placement setting" refers to a physical setting in which a child resides while in foster care under the care and placement of the agency. A new placement setting would result, for example, when a child moves from one foster family home to another or to a group home or institution. Placement settings may include shelter care, treatment facilities, and juvenile justice placements. If, however, a foster family with whom a child is placed moves and the child moves with them, this does not constitute a change in placement.<br>* "Entry into foster care" refers to a child's removal from his or her normal place of residence and placement in a substitute care setting under the care and placement responsibility of the State or local title IV-E/IV-B agency. Children are considered to have entered foster care if the child has been in substitute care for 24 hours or more.<br>* "Current episode of foster care" refers to a child's current stay in foster care based on the most recent removal of the child from his or her normal place of residence, resulting in his or her placement in a foster care setting and ending upon the child's discharge from foster care.<br>**Instructions:**<br>* If there were multiple episodes of foster care during the period under review, add up the placement settings within each episode. If there is a re-entry into foster care and the child is placed in a different placement setting at the time of re-entry, then it would count as a new placement setting. If the child returns to the placement setting that he or she was in before the return home, then it would not count as a new placement setting.<br><br>* Reviewers should not consider the following as placement settings: (1) a trial home visit; (2) a runaway episode; (3) temporary absences from the child's ongoing foster care placement, including visitation with a sibling, relative, or other caretaker (for example, pre-placement visits with a subsequent foster care provider or pre-adoptive parents); (4) hospitalization for medical treatment, acute psychiatric episodes, or diagnosis; (5) respite care; and (6) day or summer camps. |

Mobilizing Appropriate Services Timely

| | | |
|---|---|---|
| | * Complete the table below. Begin with the child's placement setting at the onset of the period under review, or if the child entered foster care during the period under review, begin with the first placement setting at entry into foster care. If there was only one placement setting, complete only the first two columns of the first row. | |
| | **Definitions:** | |
| | * Placement changes that reflect agency efforts to achieve case goals include moves from a foster home to an adoptive home, moves from a more restrictive to a less restrictive placement, moves from non-relative foster care to relative foster care, moves that bring the child closer to family or community, etc. | |
| 137 | * Placement changes that do not reflect agency efforts to achieve case goals include moves due to unexpected and undesired placement disruptions; moves due to placing the child in an inappropriate placement (that is, one that was based on availability rather than on appropriateness); moves to more restrictive placements when this is not essential to achieving a child's permanency goal; temporary placements while awaiting a more appropriate placement; and practices of routinely placing children in a particular placement type, such as shelter care, upon initial entry into foster care regardless of individual needs. | |
| | **Instructions:** | |
| | * If the response to 136 is one (1), then the response to 137 should be Not Applicable (NA). If the single placement is not stable, that information will be collected in 138. | |
| | · If ALL placement changes during the period under review reflect planned agency efforts to achieve the child's case goals or meet the needs of the child, then the answer to 137 should be Yes. | |
| | * If any single placement change that occurred during the period under review was for a reason other than agency efforts to achieve case goals or to meet the child's needs, the answer to 137 should be No. | |
| | * Placement changes that occur as a result of unexpected circumstances that are out of the control of the agency (such as the death of a foster parent or foster parents moving to another State) can be considered similar to those that reflect agency efforts to achieve case goals for purposes of 137. | |
| 138 | * If any of the following apply to the child's current placement, the answer to 138 should be No (select all that apply). If none of the following applies, then the answer to 138 should be Yes. | |
| | | The child's current placement is in a temporary shelter or other temporary setting. |
| | | There is information indicating that the child's current substitute care provider may not be able to continue to care for the child. |
| | | There are problems in the current placement that threaten the stability of the placement but that the agency is not addressing. |
| | | The child has run away from this placement more than once in the past, or is in runaway status at the time of the review. |
| | | Other (describe): |
| 139 | * Be specific in your answer | |
| 140 | * Be specific in your answer | |
| 141 | * Child will be noted as special needs as classified in MACWIS. | |
| 142 | * Children should be placed in minimally restrictive, familial settings, based on their needs. | |

Mobilizing Appropriate Services Timely

| Item 15 | |
|---|---|
| | **Definition:** |
| | * "Entry into foster care" refers to a child's removal from his or her normal place of residence and placement in a substitute care setting under the care and placement responsibility of the State or local title IV-E/IV-B agency. Children are considered to have entered foster care if the child has been in substitute care for 24 hours or more. |
| | * "Discharge from foster care" is defined as the point when the child is no longer in foster care under the care and placement responsibility or supervision of the agency. If a child returns home on a trial home visit and the agency retains responsibility or supervision of the child, the child is not considered discharged from foster care unless the trial home visit is longer than 6 months, and has not been extended by a court order. |
| | **Instructions:** |
| | * Fill out 143 yes if adoption is either a permanent or concurrent goal |
| | * In determining a response to 144, reviewers should consider the following: |
| 143, 144, 145, 146, 147 | - The length of time that the child has been in foster care. |
| | - The agency-related efforts to achieve adoption in a timely manner (for example, establishing a goal of adoption concurrent with the goal of reunification at the onset of the case, placing the child in a foster/adoptive home as the first placement, completing paperwork in a timely manner, conducting a concerted search for an absent parent early in the case, etc.). |
| | - The court-related efforts (for example, holding termination of parental rights hearings in a timely manner, not permitting continuances, etc.). |
| | * The determination of timeliness should be based on the date of the child's most recent entry into foster care, not the date that the goal of adoption was established. |
| | * If the adoption was not achieved within 24 months of the date of the most recent entry into foster care, or it does not appear that the adoption will be achieved within that timeframe, then the answer to 144 should be No, unless the reviewer finds that there are particular circumstances that warrant the delay. These circumstances must be beyond the control of the agency or the courts. For example, there is evidence that the agency has made concerted efforts to find an adoptive home for a child with special needs, but the appropriate family has not yet been found, or a pre-adoptive placement disrupted despite concerted efforts on the part of the agency to support it. |
| | * If the adoption occurs within 24 months, but the reviewer determines that it could have been achieved earlier if the agency and court had made more concerted efforts, then the answer to 144 should be No, but the reviewer must specifically document the agency-related delays in the documentation section. |
| 148 | * Be specific in your answer |
| 149 | * Be specific in your answer |
| 150 | * The adoption specialist is different than the caseworker, however the adoption plan is part of the case plan. |
| 151 | * If the child is in a loving and stable placement and the goal is likely to change to adoption, the child's current resource parents should be encouraged to consider adoption when appropriate, based on the specific needs of the child and the relationship between the child and resource parents. |
| 152 | * If the child is in a loving and stable placement and the goal is likely to change to adoption, the child's current resource parents should be encouraged to consider adoption when appropriate, based on the specific needs of the child and the relationship between the child and resource parents. |
| Item 16 | |
| | * If the permanent or concurrent goal is not OPPLA, but the child is in foster care and is 14 or older in the PUR, please fill out item accordingly. Item is NA if an in-home case, or neither of these conditions apply. |
| 153, 154 | * A goal of other planned permanent living arrangement often is not specified in the case file using that term. This goal refers to a situation in which the agency maintains care and custody responsibilities for and supervision of the child, and places the child in a setting in which the child is expected to remain until adulthood, such as with foster parents who have made a commitment to care for the child permanently, with relative foster caregivers who have made the same commitment, or with a long-term care facility (for example, for those children with developmental disabilities |

Mobilizing Appropriate Services Timely

who require long-term residential care services.).

Mobilizing Appropriate Services Timely

| | |
|---|---|
| | * If the case plan permanency goal is to establish legal guardianship with a relative or non-relative caregiver and for the child to be discharged from foster care to the care of that relative, then this item is not appropriate and Reunification should be completed instead. |
| 155 | * 155 should be answered Not Applicable (NA) if the child did not reach his or her 16th birthday at any time during the period under review, and the child does not have a goal of emancipation/independence. |
| | * In making this determination, reviewers should consider the following:<br>  - Did the agency assess for independent living skills?<br>  - Is there an independent living plan in the file? (This is required for all youth age 16 and older.)<br>  - Is the child receiving an age-appropriate range of independent living services (for example, post-high school planning, life skills classes, employment training, financial planning skills training, etc.)?<br>  - Is the child receiving transitional living services?<br>  - Does the child have an independent living caseworker? |
| | * Reviewers should complete this item for all children 16 and older who have a goal of other planned permanent living arrangement and for all children who have a goal of emancipation/independence regardless of age. Information regarding independent living services for children who have other types of goals will be captured under Service Needs. |
| 156, 157, 158, 159, 160 | * 156 is relevant for all cases that are applicable for an assessment of this section, including those in which the child's stated goal is emancipation/independence. Regardless of the specifics of the goal, reviewers must establish that there were agency efforts to ensure that a child who does not have a goal of adoption, reunification, or guardianship has long-term stability until he or she reaches adulthood.<br><br>* Examples of "permanent" living arrangements include situations where foster parents have made a formal commitment to care for the child until adulthood, the child is with relatives who plan to care for the child until adulthood, the child is in a long-term care facility to meet special needs and will be transferred to an adult facility at the appropriate time, the child is an older adolescent in a stable group home and both the group home directors and the child have agreed that it will be the child's placement until adulthood, or the child is in agency-supervised transitional living. |
| 161 | * If the child is in a permanent living arrangement or was in a permanent living arrangement before being discharged from foster care, then the answer to 161 should be Not Applicable (NA). |
| | * In answering 181, reviewers should consider the child's current living arrangement and whether formal steps were completed to make this arrangement permanent. For example, if the child is in a shelter or living with foster parents without a formal permanent foster care agreement, then the answer to 161 would be No. A formal agreement would include a signed agreement, a court order, or other method the State uses to formalize the agreement. |
| | * Reviewers should consider the efforts or actions taken during the period under review to achieve a planned permanency arrangement other than adoption, guardianship, or reunification with family. This might include asking foster parents or relatives to agree to and sign a long-term care commitment, etc. |
| | * If the child is no longer in foster care, then the answer to 161 should be based on the child's last placement before leaving foster care. |
| 162 | * Be specific in your answer |
| 163 | * Be specific in your answer |
| 164 | * Note timeframe to the closest month. Do not round up. |

Mobilizing Appropriate Services Timely

| Item 17 | |
|---|---|
| | * Item 17 should be filled out if foster care case, or if in-home case and there are identified needs or concerns in the area. Otherwise Item will be NA |
| 165, 168 | * If the child is too young for a dental examination (under 3), then 168 should be answered Not Applicable (NA). |
| | * Reviewers should determine if there is evidence that, during the period under review, the agency arranged for assessment of the child(ren)'s health care needs, including dental care needs, both initially (if the child entered foster care during the period under review), or on an ongoing basis through periodic health and dental screening services conducted during the period under review. |
| | * The evidence to take under consideration would include, but is not limited to: |
| | - Conducting an initial health care screening, such as EPSDT (Early Periodic Screening, Diagnosis, and Treatment) or other comprehensive medical examination upon entry into foster care (if the child entered foster care during the period under review). |
| | - Ensuring that, during the period under review, the child received ongoing periodic preventive physical and dental health screenings to identify and avoid potential problems. (Preventive health care refers to initial and periodic age-appropriate dental or physical health examinations.) |
| | * Including an assessment of physical and dental health needs in the initial comprehensive needs assessment (if the child entered foster care during the period under review), or in ongoing needs assessments conducted to guide case planning. |
| 166 | * Policy states children should receive an initial health screening within 24 hours of entering care. |
| 167 | * Policy states children should receive a comprehensive health screening within 30 calendar days of entering care. |
| 169 | * Per policy mandates. |
| 170, 171 | * If the answers to 165 and/or 168 are Yes and no needs for services or treatment were identified, then the corresponding 170 and/or 171 should be answered Not Applicable (NA). If question 170 is Not Applicable (NA) because of the child's age, then question 171 also should be Not Applicable (NA). |
| | * Reviewers should answer these questions based on a determination of the child(ren)'s physical health needs and the services provided or not provided to address those needs during the period under review. This would include immunizations, treatment services, and dental services, including orthodontics. |
| | * For foster care cases only, reviewers should determine if, during the period under review, there was evidence that the following case-management criteria required by Federal statute were met (select each one that was met): |
| | To the extent available and accessible, the child's health records are up to date and included in the case file [Social Security Act §475(1)(C)]. |
| | The case plan addresses the issue of health and dental care needs [Social Security Act §475(1)(C)]. |
| | To the extent available and accessible, foster parents or caregivers of a child placed in a facility are provided with the child's health records [Social Security Act §475(5)(D)]. |
| | * Health records include the names and addresses of the child's health care providers, a record of the child's immunizations, the child's known medical problems, the child's medications, and any other relevant health information. |
| | * Reviewers should answer No to 170 or 171 if they determine that the fact that the case management activities were not met had or has a negative impact on the agency's ability to meet the child's health and dental care needs. For example, foster parents were unable to effectively address health care needs because they had never seen the child's health records, or the child's health care needs were not being met because there were no health records in the case file and the worker was unaware of the child's health care needs. |
| 172 | * Be specific in your answer |
| 173 | * Be specific in your answer |

Mobilizing Appropriate Services Timely

| Item 18 | |
|---|---|
| | * Item 18 should be filled out if foster care case, or if in-home case and there are identified needs or concerns in the area. Otherwise Item will be NA |
| 174 | * Policy states children should receive an initial mental health screening within 30 days of entering care, if over the age of 4. |
| 175 | **Definition:** |
| | * "Behavioral health needs" includes needs related to behavioral problems that are not always specified as mental health needs, including substance abuse. |
| | **Instructions:** |
| | * This question should be answered for all cases determined to be applicable for an assessment of this item, based on the above criteria. |
| | * Reviewers should determine whether, during the period under review, the agency conducted a formal or informal mental/behavioral health assessment on the child either at entry into foster care (if the child entered foster care during the period under review), or on an ongoing basis to provide updated information for case planning decisions with regard to mental/behavioral health issues. |
| | * If the case is an in-home services case, 175 should be answered for all children in the home for whom mental/behavioral health needs are relevant to the reason for the agency's involvement with |
| 176 | * If 175 is answered Yes, but no mental/behavioral health service needs were identified, then the answer to 176 should be Not Applicable (NA). |
| | * Reviewers should consider the mental/behavioral health needs that existed during the period under review and the services that the agency provided to address those needs, including outpatient treatment, inpatient mental health treatment, treatment for substance abuse disorders, individual therapy, group therapy, family therapy, etc. |
| 177 | * Be specific in your answer |
| 178 | * Be specific in your answer |

Preserving and Maintaining Connections

**Item 19**

| 179 | * It is best practice to place a child in the same community from which they were removed unless the child can be placed with a relative. Only note NA if the child was placed outside of the county and it was documented to be in the child's best interest. This must be explained by reviewer in the item rating section |
|---|---|
| 180 | * Reviewers should determine if the child's placement is (or was) in one of the following (select the appropriate placement): |
| |     Same community |
| |     Different community, but same county |
| |     Different county, but same State |
| |     Different State |
| | * If placement is in the same community as the parents, the answer to 180 should be Yes. |
| | * If placement is not in the same community, reviewers should consider if the placement is sufficiently close to allow frequent contact between the child and the parents. For example, if placement is in another State, but is still very near where the parents live, then the answer to 180 should be Yes. In contrast, if placement is in the same State or county, but is actually quite a distance from the parents, then the answer to 180 would be No. |
| | * As a general rule, reviewers should consider a travel distance of less than 1 hour as close enough for face-to-face contact. However, this is just a general guideline. Reviewers should consider all relevant circumstances in determining whether the location of the child's placement allows parents to visit the child on a frequent basis. |
| | * If the child's parents live separately, reviewers should determine which parent is most involved in case planning and is most likely to be reunified with the child. The answer to 205 then would be based on the location of that parent's residence. |
| 181 | * Reviewers should check Not Applicable (NA) if the answer to 180 is Yes. |
| | * Reviewers should determine if the placement decision was made in order to achieve the child's case goals or to meet the child's needs for specialized services (for example, to place with a relative, to place in a potential adoptive home, to provide a highly specialized treatment setting, etc.). |
| | * 181 should be answered No if the only reason for not placing the child in close proximity to the parents was a lack of existing placement resources in the community, unless the resource is such a highly specialized treatment facility that most communities would not be expected to maintain one (for example, a residential treatment program for sexual offenders). |
| 182 | * Be specific in your answer |
| 183 | * Be specific in your answer |
| 184 | * It is best practice to try and have the child remain in the same school upon placement, unless information from an assessment suggests a reason to move the child. |
| 185 | * In some case circumstances it is appropriate for child to be removed from same school, like if an assessment deems appropriate, or if there are safety concerns |

**Item 20**

| 186 | **Definitions:** |
|---|---|
| | * Siblings are children who have one or more parents in common either biologically, through adoption, or through the marriage of their parents, and with whom the child lived before his or her foster care placement, or with whom the child would be expected to live if the child were not in foster care. |
| | **Instructions:** |
| | * In answering 186, reviewers should consider only the location of each of the siblings, not the reason for their location. |
| | * If the answer to 186 is Yes, the answer to 187 should be Not Applicable (NA). |
| | * Reviewers should consider the circumstances of the placement of siblings, focusing on whether separation was necessary to meet the child's needs. For example, were siblings separated temporarily because one sibling needed a specialized treatment or to be in a treatment foster home, or because one sibling was abusive to the other, or because siblings with different fathers were placed with paternal relatives? |

Preserving and Maintaining Connections

| | |
|---|---|
| 187 | * If the separation of siblings is attributed by the agency to a lack of foster homes willing to take sibling groups, 187 should be answered No, unless the reviewer believes that the size of the sibling group (i.e., five or more children) made finding a single placement difficult and concerted efforts were made to place the children in close proximity to each other.<br><br>* If siblings were separated for a valid reason, reviewers should consider the entire period under review and determine if that valid reason still exists and if the need for separation still exists. For example, the siblings were separated because one sibling needed temporary treatment services. However, during the period under review, the sibling's treatment services ended. In this situation, reviewers should determine whether concerted efforts were made to reunite the siblings after the treatment service was completed. If the need for separation no longer exists and no efforts have been made to reunite the siblings, then the answer to 187 should be No. |
| 188 | * Be specific in your answer |
| Item 21 | |
| 189, 190 | * A formal visitation plan is a critical best practice to ensure children and their families are afforded regular and convenient visitation, if deemed appropriate. Policy states this plan should be developed within 30 calendar days of placement, and every 90 days thereafter, and should be signed by all pertinent parties. |
| 191 | * The visitation plan should be specific, and reflect all important people in the child's life. |
| 192, 193, 194, 195 | * Reviewers should answer Not Applicable (NA) if (1) contact between the child and the mother/father was not in the child's best interest and this was documented in the case file or court order, (2) the whereabouts of the mother/father was not known during the entire period under review, despite documented concerted efforts to locate her/him, (3) the mother's/father's parental rights were terminated before the period under review and she/he is not involved in the child's life, or (4) the mother/father was deceased during the entire period under review.<br><br>* Reviewers should determine whether the frequency of visitation during the period under review was sufficient to maintain the continuity of the relationship between the child and the parent, depending on the circumstances of the case. For example, frequency may need to be greater for infants and young children than for some older children. Frequency also may need to be greater if reunification is imminent.<br><br>* If, during the period under review, frequent visitation with a parent was not possible (for example, due to incarceration or the parent being in another State), reviewers should determine whether there are documented concerted efforts to promote other forms of contact between the child and the parent, such as telephone calls or letters in addition to facilitating visits when possible and appropriate.<br><br>* Reviewers should address the question of appropriate frequency based on the circumstances of the child and the family, rather than on State policy. |
| 196, 197 | * Same as for 192 and 194 except that reviewers should determine if concerted efforts were made to ensure that the quality of parent-child visitation was sufficient to maintain the continuity of the relationship. For example, did visits take place in a comfortable atmosphere and were they of an appropriate length? Did visitation allow for sufficient interaction between parent and child? If siblings were involved, did visits allow parents to interact with each child individually? If appropriate, were unsupervised visits and visits in the parent's home in preparation for reunification allowed? |
| 198, 199 | * Reviewers should answer Not Applicable (NA) if the child has no siblings in foster care or if contact with all siblings who are in foster care is not considered to be in the best interests of the child (for example, one sibling is a physical threat to the other sibling or has a history of physical or sexual abuse of the other sibling).<br><br>* Reviewers should consider whether the frequency of visits during the period under review was sufficient to maintain the continuity of the sibling relationships. |
| 200 | * Same as for 198, except reviewers should determine if concerted efforts were made to ensure that the quality of sibling visitation was sufficient to maintain the continuity of the relationship. For example, were visits long enough to permit quality interaction? Did sibling contacts only occur in the context of parent visitations? Did visits occur in a comfortable atmosphere? |
| 201 | * Be specific in your answer |
| 202 | * Per policy mandate |

Preserving and Maintaining Connections

| Item 22 | |
|---------|---|
| 203 | * Reviewers must determine what the important connections are for the child (for example, a young child is more likely to have an important connection with extended family than with school, and it is important for Native American children to maintain tribal connections) and then determine whether concerted efforts were made to maintain those connections.<br>* Reviewers should not rate this item based on connections to parents or siblings who are in foster care. Information about sustaining those connections is captured in other items. However, the item may be rated based on connections with siblings who are not in foster care and other extended family members (who were not the child's primary caregivers before entry into foster care), such as grandparents, uncles, aunts, cousins, etc. |
| | * If there is no evidence found in the case file or through interviews that the child is a member of, or eligible for membership in, an Indian tribe, then the answer to 204 is Not Applicable (NA).<br>* If there is no information in the case file that indicates the child is a member of, or eligible for membership in, an Indian tribe, but the reviewers learn through interviews that the child has Native American heritage and no apparent efforts were made to determine this, then the answer to 204 is No.<br>* If the child entered foster care during the period under review, reviewers should determine whether timely and appropriate action was taken to determine whether the child is a member of, or eligible for membership in, an Indian tribe. This may include exploring this with the parents and/or other persons with a relationship to the child, contacting tribes, and contacting the Bureau of Indian Affairs.<br>* If the child entered foster care before the period under review, the answer to 204 can be Yes if by the beginning of the period under review an informed determination was made about the child's membership, or eligibility for membership, in an Indian tribe and all appropriate steps were taken to determine whether the child is Native American. |
| 205 | * If the child is not a member of, or eligible for membership in, an Indian tribe, the answer to 205 is Not Applicable.<br>* If the child entered care during the period under review or had a TPR hearing during the period under review, reviewers should determine if timely notice was provided to the tribe. Timely notice is notice that was received no later than 10 days before the proceeding. If timely notice was not provided, the answer to 205 is No.<br>* If the child entered care before the period under review and did not have a TPR hearing during the period under review, the answer to 205 is Yes, if, by the beginning of the period under review, all appropriate steps were taken to notify the tribe. |
| 206 | * If the child is not Native American, then the answer to 206 is Not Applicable (NA).<br><br>* Reviewers should determine whether, during the period under review, the child was placed (1) with a member of the child's extended family, (2) in a foster home licensed, approved, or specified by the Native American child's tribe, (3) in another Native American foster home placement, or (4) in an institution approved by a tribe or operated by a Native American organization. Placement preference is in this order unless another order is specified by tribal resolution.<br>* If the child's placement was not made in accordance with ICWA placement preferences, reviewers should determine if, during the period under review, there were documented concerted efforts to meet the ICWA placement preferences. |
| 207 | * Be specific in your answer |
| Item 23 | |
| 208 | * It is important for birth and resource parents to have a good working relationship in order to best serve the child. |
| 209 | * Even if a child is placed out of the home, it is important that the birth parent maintain some role in parenting, along with the resource parents, if it is determined safe to do so. |
| 210 | * Be specific in your answer |

Preserving and Maintaining Connections

| Item 24 | |
|---|---|
| 211, 212 | * If the answer to question 211 is No, the answer to question 212 should be Not Applicable (NA).<br>* If the answer to question 212 is Yes, reviewers may rate the section as a Strength, and answer Not Applicable (NA) to the remaining questions for the item.<br>* If the answer to question 212 is No, reviewers should answer the remaining questions for this item. |
| 213, 214 | * The answers to 213 and 214 should be Not Applicable (NA) if the answers to both questions 211 and 212 are Yes.<br><br>* If a child entered foster care during the period under review, reviewers must determine if the State followed the requirements of the title IV-E provision that requires States to consider giving preference to placing the child with relatives, and determine whether the State considered such a placement and how (for example, identifying, seeking out, and evaluating the child's relatives).<br><br>* If a child entered foster care before the period under review and the answer to either 211 or 212 is No, reviewers must determine whether, during the period under review, the agency made concerted efforts to search for and assess relatives as placement resources, if appropriate. If reviewers determine that, during the period under review, the agency did not consider relatives as placement resources in cases in which consideration was appropriate, the answer to 213 should be No. |
| 215 | * Be specific in your answer |
| 216 | * Be specific in your answer |

# APPENDIX III

## (CQI CASE REVIEW INSTRUMENT SCORING GUIDE)

Scoring for the CQI Review Instrument

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| | 1 | Same as CFSR | **Strength**<br>◆ If questions 3 and 4 are 0<br>◆ If questions 3 and 4 are >0 but question 5 is a 'Yes'<br>**Needs Improvement**<br>◆ If questions 3 and 4 are >0 but question 5 is a 'No'<br>**Not Applicable**<br>◆ If the answer to 2 is 0 |
| Assuring Safety and Managing Risk | 2 | Same as CFSR | **Strength**<br>◆ If questions 7 is 'Yes' and question 8 is 'No'<br>◆ If questions 9 and 10 are 'No' or 'NA'<br>**Needs Improvement**<br>◆ If at least one question 8,9 or 10 are a 'Yes'<br>**Not Applicable**<br>◆ If the answer to 7 is No |
| | 3 | Same as CFSR | **Strength**<br>◆ If question 14 is 'Yes' and 15 is 'NA'<br>◆ If question 14 is 'No and 15 is 'Yes'<br>**Needs Improvement**<br>◆ If question 14 is 'No' and 15 is 'No' or 'NA'<br>**Not Applicable**<br>◆ If questions 14 and 15 are 'NA' |
| | 4 | Same as CFSR | **Strength**<br>◆ If questions 18, 19, 20, 21 and 25 are 'Yes' or 'NA' and questions 22, 23 and 24 are 'No' or 'NA'<br>**Needs Improvement**<br>◆ If questions 18, 19, 20, 21 or 25 are 'No'<br>◆ If questions 22, 23 or 24 are 'Yes' |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| Assessing Strengths and Needs | 5 | CFSR and PM merge | Section A–Strength<br>♦ If questions 33, 34, 35, 36, 37 and 38 are 'Yes'<br>♦ If questions 33, 37 and 38 are 'Yes' and 34, 35 and/or 36 is 'NA'<br>Section A–Needs Improvement<br>♦ If any of questions 33, 34, 35, 36, 37 or 38 are 'No'<br>Section B–Strength<br>♦ If questions 42, 43, 44, 45, 46, 47, 48, 49 and 50 are 'Yes'<br>♦ If at least one of questions 42, 43, 44, 45, 46, 47, 48, 49, 50, 52 or 53 is 'Yes' and the rest are 'NA'<br>Section B–Needs Improvement<br>♦ If any of questions 42, 43, 44, 45, 46, 47, 48, 49, 50, 52 or 53 are 'No'<br>Section C–Strength<br>♦ If questions 59, 60 and 61 are 'Yes'<br>♦ If question 59 is 'Yes' and 60 and 61 are 'NA'<br>Section C–Needs Improvement<br>♦ If either questions 59, 60 or 61 are 'No'<br>Overall 5–Strength<br>♦ If Sections A–C are 'Strengths' or 'NA'<br>Overall 5–Needs Improvement<br>♦ If any Section A–C is rated as 'Needs Improvement' |
| | 6 | CFSR and PM merge | Strength<br>♦ If questions 64, 65, 66 and 70 are 'Yes'<br>♦ If questions 64 and 65 are 'Yes' and 66 and 70 are 'NA'<br>Needs Improvement<br>♦ If any of questions 64, 65, 66 and 70 are 'No'<br>Not Applicable<br>♦ If the case is an 'In-Home' case AND there is no identified need or concern in this area |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| Involving Children and Families in Case Planning and Decision Making | 7 | CFSR and PM merge | **Strength**<br>◆ If questions 71, 72, 73, 75, 76, 79, 80 and 81 are 'Yes' and 77 and 78 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If questions 71, 72, 73, 75, 76, 77, 78, 79, 80 or 81 are 'No' |
| | 8 | CFSR and PM merge | **Strength**<br>◆ If questions 83, 85 and 86 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If questions 83, 85 or 86 are 'No' |
| | 9 | CFSR and PM merge | **Strength**<br>◆ If questions 89, 91, 93, 94, 97 and 98 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If questions 91 and 94 are 'No', but 98 is 'Yes'<br>**Not Applicable**<br>◆ If questions 89, 93, 97 and 98 are 'No'<br>◆ If the parental rights were terminated prior to the PUR |
| Individualizing Case Planning | 10 | CFSR and PM merge | **Strength**<br>◆ If questions 100, 101, and 102, and 103, are 'Yes', and questions 105 and 106 are 'No', and 110 and 111 are 'Yes' or 'NA'<br>◆ If questions 100, 101, 102, 103, and 107 are yes, and 110 and 111 are 'Yes' or 'NA'<br>◆ If questions 100, 101, 102, and 103 are 'Yes', 105 is 'No', 106 and 107 are 'Yes', and 110 and 111 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If questions 100, 101, 102, and 103 are 'Yes', 105 or 106 is 'Yes', 107 is 'No', 108 is 'Yes', and 110 and 111 are 'Yes' or 'NA'<br>◆ If questions 100, 101, 102, 103, 110 or 111 are 'No'<br>◆ If questions 100, 101, 102, 103, 105 and 106 are a 'Yes', and 107 and 108 'No'<br>**Not Applicable**<br>◆ If the child is in an 'In-Home' case |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| **Mobilizing Services Timely** | 11 | All PM questions | **Strength**<br>◆ If questions 114 and 115 are 'Yes'<br>**Needs Improvement**<br>◆ If questions 114 or 115 are 'No' |
| | 12 | Same as CFSR | **Strength**<br>◆ If question 117 is 'No'<br>**Needs Improvement**<br>◆ If question 117 and 118 are 'Yes'<br>◆ If question 117 is 'Yes'<br>◆ If question 118 is 'No'<br>**Not Applicable**<br>◆ If the child was in an 'In-home' case<br>◆ If the child's most recent entry into foster care was prior to the period under review |
| | 13 | CFSR and PM merge | **Strength**<br>◆ If question 125 is 'Yes', and 131, 132, 133 and 134 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If any of questions 125, 131, 132, 133 or 134 are 'No'<br>**Not Applicable**<br>◆ If this was not the child's permanent or concurrent goal<br>◆ If the child was in an 'In-home' case |
| | 14 | CFSR and PM merge | **Strength**<br>◆ If question 136 is '1', 137 is 'NA' and 138 is 'Yes'<br>◆ If question 136 is >'1', 137 and 138 are 'Yes'<br>**Needs Improvement**<br>◆ If question 136 is '1', and 138 is 'No'<br>◆ If question 136 is >'1', 137 or 138 are 'No'<br>**Not Applicable**<br>◆ If the child was in an 'In-Home' case |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| | 15 | CFSR and PM merge | **Strength**<br>◆ If question 144 is 'Yes', and 150, 151 and 152 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If questions 144, 150, 151 or 152 are 'No'<br>**Not Applicable**<br>◆ If this is not the child's permanency or concurrent goal |
| | 16 | Same as CFSR | **Strength**<br>◆ If questions 155, 156 and 161 are 'Yes' or 'NA'<br>◆ If question 155 is 'Yes' or 'NA', 156 is 'No', and 161 is 'Yes'<br>**Needs Improvement**<br>◆ If question 155 is 'No'<br>◆ If questions 156 is 'No' or 'NA' and 161 are 'No'<br>**Not Applicable**<br>◆ If it is an 'In-home' case<br>◆ If this is not the child's permanency or concurrent goal AND the child has not reached the age of 14 in the PUR |
| | 17 | CFSR and PM merge | **Strength**<br>◆ If questions 165, 166, 167, 168, 169, 170 and 171 are 'Yes'<br>◆ If questions 166 and 167 are 'Yes' and at least one of 165, 168, 169, 170 and 171 are a 'Yes' and the rest are 'NA'<br>**Needs Improvement**<br>◆ If any of questions 165, 166, 167, 168, 169, 170 and 171 are 'No'<br>**Not Applicable**<br>◆ If the case is an in-home case and there were no identified needs or concerns in this area |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| Preserving and Maintaining Connections | 18 | CFSR and PM merge | **Strength**<br>◆ If question 175 is 'Yes', and 174 and 176 are 'Yes' or 'NA'<br>**Needs Improvement**<br>◆ If any of questions 174, 175 or 176 are 'No'<br>**Not Applicable**<br>◆ If the case is an in-home case and there were no identified needs or concerns in this area, or if child is in foster care and child is too young for a mental health evaluation to be pertinent |
| | 19 | CFSR and PM merge | **Strength**<br>◆ If question 180 is 'Yes' and 181 is 'NA' and both 179 or 184 are 'Yes'<br>◆ If question 180 is 'No' and 181 is 'Yes' and both 179 or 184 is 'Yes'<br>◆ If question 180 is 'No' and 181 is 'Yes', both 179 is 'Yes', and 184 is a 'No' but 185 is a 'Yes'<br>**Needs Improvement**<br>◆ If questions 179, 180 and 181 are 'No'<br>**Not Applicable**<br>◆ If the case is an In-Home case |
| | 20 | Same as CFSR | **Strength**<br>◆ If question 186 is 'Yes'<br>◆ If question 186 is a 'No and 187 is a 'Yes'<br>**Needs Improvement**<br>◆ If questions 186 and 187 are 'No'<br>**Not Applicable**<br>◆ If the case is an In-Home case, or the child has NO siblings in foster care |

| Component | Item Number/Section | Scoring | Details |
|---|---|---|---|
| | 21 | CFSR and PM merge | **Strength**<br>♦ If questions 189, 190, 191, 192, 194, 196, 197, 200 and 202 are 'Yes' or 'NA'<br>**Needs Improvement**<br>♦ If any of questions 189, 190, 191, 192, 194, 196, 197, 200 or 202 are 'No'<br>**Not Applicable**<br>♦ If the case is an In-Home case |
| | 22 | Same as CFSR | **Strength**<br>♦ If question 203 and 204 are 'Yes' and 205 and 206 are 'Yes' or 'NA'<br>**Needs Improvement**<br>♦ If question 203 and 204 are a 'Yes' but 205 or 206 are 'No'<br>♦ If question 203 and 204 are a 'No'<br>**Not Applicable**<br>♦ If the case is an In-Home case |
| | 23 | CFSR and PM merge | **Strength**<br>♦ If questions 208 and 209 are 'Yes' or 'NA'<br>**Needs Improvement**<br>♦ If any of questions 208 and 209 are 'No'<br>**Not Applicable**<br>♦ If the case is an In-Home case |
| | 24 | Same as CFSR | **Strength**<br>♦ If questions 211 and 212 are 'Yes'<br>**Needs Improvement**<br>♦ If questions 211 or 212 are 'No', but 213 and 214 are 'Yes' or 'NA'<br>♦ If questions 211 or 212 are 'No' and 213 or 214 are 'No'<br>**Not Applicable**<br>♦ If the case is an In-Home case |

# APPENDIX IV

### (CQI CASE REVIEW INSTRUMENT MACWIS DOCUMENTATION GUIDE)

# CQI ONSITE REVIEW INSTRUMENT
# MACWIS DOCUMENTATION GUIDE

| FACE SHEET | |
|---|---|
| Child(ren's) names: | Case History and Participant Screen |
| Race and Ethnicity, DOB's, Gender | Demographics |
| Type of Case | Defined by CQI Review List and verified through Individual Service Plan Direct Services Tab |
| Was case opened for reasons other than child abuse and neglect? | Case Planning/Reasons for Service<br>Information can also be found in the first FTM narrative or the last intake prior to the case opening (ex – CHINS intake or recommendations for service in an investigation) |
| Date of most recent case opening for all cases | Case History Screen |
| Date of child's most recent entry into foster care | Court History Screen |
| Date of child's most recent discharge from foster care | Court History Screen |
| Date of Discharge from foster care for the most recent episode | Court History Screen |
| Date of case closure (for all cases) | Case History Screen |
| Reason for Agency Involvement | Case Planning/Reasons for Services<br>Information can also be found in the first FTM narrative or the last intake prior to the case opening (ex – CHINS intake or recommendations for service in an investigation) |

| Component #1:  ASSURING SAFETY AND MANAGING RISK | | |
|---|---|---|
| Section 1. TIMELINESS OF INITIATING INVESTIATIONS OF REPORTS OF CHILD MALTREATMENT | | |
| 1 | How many reports of suspected abuse or neglect have been received on any child(ren) in the family (including those that were screened out by the agency) during the life of the case? | Intake/Investigation Screen |
| 2 | How many accepted reports alleging abuse or neglect were received on any child(ren) in the family during the period under review (i.e., they were not screened out)? | Intake/Investigation Screen |
| 3 | In how many of the reports listed above was face-to-face contact with the child(ren) who is the subject of the report NOT made in accordance with the State's timeframes and requirements for a report of that priority? | Intake/Investigation Screen and Investigation Narrative |

H:\MyFiles\EVALUATION AND MONITORING\EMU\CQI Case Reviews\Forms, Tools, Instruments\CQI Onsite Reveiw MACWIS Documentation Guide 06102010.doc

1

| | **Section 3. SERVICES TO FAMILY TO PROTECT CHILD(REN) IN THE HOME AND PREVENT REMOVAL OR RE-ENTRY INTO FOSTER CARE** | |
|---|---|---|
| 14 | For the period under review, did the agency make concerted efforts to provide or arrange for appropriate services for the family to protect children and prevent their entry into foster care or re-entry into foster care after a reunification? | Case Narratives and Tasks and Goals |
| 15 | If, during the period under review, any child was removed from the home without providing or arranging for services, was this action necessary to ensure the child's safety? | Case Narratives and Tasks and Goals Case Planning - Reason for Service/Removal Reason |
| 16 | Please identify the circumstances that indicate a safety risk to the child and the services that were needed by the family to address safety issues and describe how those services were or were not provided by the agency during the period under review. | Case Narratives and Risk Assessment and Safety Assessment |
| 17 | Please note the reason for removing the child from the home during the period under review without providing services (if relevant and reason is available) and provide the reviewers' reasons for determining whether the reason was appropriate or inappropriate | Case Narratives and Risk Assessment and Safety Assessment Case Planning – Reason for Service/Removal Reason |
| | **Section 4. RISK ASSESSMENT AND SAFETY MANAGEMENT** | |
| 18 | If the case was opened during the period under review, did the agency conduct an initial assessment of the risk to the target child in foster care and/or any child(ren) in the family remaining in the home? | Risk Assessment and Safety Assessment |
| 19 | During the period under review, did the agency conduct ongoing assessments of the risk to the target child in foster care and/or any child(ren) in the family remaining in the home? | Risk Assessment and Safety Assessment |
| 20 | If the case was opened during the period under review for either foster care or in-home services, did the agency: (1) conduct an initial assessment of the safety of the target child in foster care and/or any child(ren) remaining in the home, and (2) develop a safety plan with the family for addressing identified safety issues? | Risk Assessment and Safety Assessment (2) Safety Plan, Case Narratives (FTM, client contact) |
| 21 | During the period under review, did the agency: (1) conduct ongoing safety assessments of the target child in foster care and/or any child(ren) remaining in the home, and (2) continually monitor and update the safety plan, including encouraging family engagement in services designed to promote achievement of the goals of the safety plan? | Risk Assessment and Safety Assessment Case Narratives and Tasks and Goals |
| 22 | During the period under review, were there safety concerns pertaining to the target child in foster care or any child(ren) in the family remaining in the home that were not adequately or appropriately addressed by the agency? | Risk Assessment and Safety Assessment Case Narratives |
| 23 | During the period under review, was there a safety concern related to the target child in foster care during visitation by parents or other family members that could be attributed to | Case Narratives and Safety Assessment |

| | **Component #2:  ASSESSING STRENGTHS AND NEEDS** | |
|---|---|---|
| | **Section 5.  Needs and Services of Child, Parents, and Foster Parents** | |
| 33 | During the period under review, did the agency conduct (1) a formal or informal initial comprehensive assessment of the child(ren)'s strengths and needs (if the case was opened during the period under review), or (2) an ongoing assessment to provide updated information regarding the child(ren)'s needs for case planning purposes (if the case was opened before the period under review)? | Risk Assessment |
| 34 | If Yes and the case was opened during PUR, was the initial children's strengths and needs assessment conducted within the first 30 days? | Risk Assessment |
| 35 | During the period under review, were all needed services provided to meet the child's identified needs? | Case Narratives and Case Planning and Tasks and Goals Services, Medical |
| 36 | Were all services provided to children in a timely manner? | Case Narratives and Case Planning and Tasks and Goals Services, Medical |
| 37 | Was the child interviewed prior to the completion of the strengths and needs assessment? | Case Narratives |
| 38 | Is there clear evidence, other than signatures, of child involvement and input in the strengths and needs assessment? | Case Narratives |
| 39 | Document the method that the agency used to assess the child's needs: | Risk Assessment Case Narratives |
| 40 | Document the services provided to the child(ren): | Case Narratives and Case Planning and Tasks and Goals Services, Medical, IL/TL Plan |
| 41 | Document the services that were needed but not provided: | Case Narratives and Case Planning and Tasks and Goals Services, Medical, IL/TL Plan |
| 42 | During the period under review, did the agency conduct (1) a formal or informal initial comprehensive assessment of the mother's strengths and needs (if the case was opened during the period under  review) or (2) an ongoing assessment to provide updated information regarding the mother's needs for case planning purposes (if the case was opened before the period under review)? | Case Narratives and Risk Assessment and Safety Assessment and Case Planning and Tasks and Goals |

| 52 | Was father interviewed prior to the completion of the strengths and needs assessment? | Case Narratives |
|----|----|----|
| 53 | Is there clear evidence, other than signatures, of father's involvement and input in the strengths and needs assessment? | Case Narratives |
| 54 | Please indicate any reason why a needs assessment did not need to be completed on either the mother or father: | Case Narratives and Intake/Investigation Court/Detail/Court Order Special Conditions |
| 55 | Document the services that were provided to the mother: | Case Narratives and Case Planning and Tasks and Goals Services |
| 56 | Document the services that the mother needed, based on an assessment, but that were not provided: | Case Narratives and Case Planning and Tasks and Goals |
| 57 | Document the services provided to the father: | Case Narratives and Case Planning and Tasks and Goals Services |
| 58 | Document the services that the father needed, based on an assessment, but that were not provided: | Case Narratives and Case Planning and Tasks and Goals |
| 59 | During the period under review, did the agency conduct an assessment of the needs of the foster or pre-adoptive parents on an ongoing basis (with respect to services they need in order to provide appropriate care and supervision to ensure the safety and well-being of the children in their care)? | Case Narrative and Resource Home/Evaluation/Re-Evaluation/ANE History Resource Home/RSP/Narratives |
| 60 | During the period under review, were the foster or pre-adoptive parents provided with all needed services to address identified needs that pertained to their capacity to provide appropriate care and supervision and ensure the safety and well-being of the children in their care? | Case Narrative and Resource Home/Evaluation/Re-Evaluation/ANE History Resource Home/RSP/Narratives |
| 61 | Were all services provided to the foster/pre-adoptive family in a timely manner? | Case Narrative and Resource Home/Evaluation/Re-Evaluation/ANE History Resource Home/RSP/Narratives |
| 62 | Document the services provided to the foster parent(s): | Resource Home/Evaluation/Re-Evaluation/ANE History Resource Home/RSP/Narratives |

H:\MyFiles\EVALUATION AND MONITORING\EMU\CQI Case Reviews\Forms, Tools, Instruments\CQI Onsite Reveiw MACWIS Documentation Guide 06102010.doc

7

## Component #3:  INVOLVING CHILDREN & FAMILIES IN CASE PLANNING AND DECISION MAKING

### Section 7.  CHILD AND FAMILY INVOLVEMENT IN CASE PLANNING

| | | |
|---|---|---|
| 71 | During the period under review, did the agency make concerted efforts to actively involve the child in the case planning process? | Case Narratives |
| 72 | During the period under review, did the agency make concerted efforts to actively involve the mother in the case planning process? | Case Narratives |
| 73 | During the period under review, did the agency make concerted efforts to actively involve the father in the case planning process? | Case Narratives |
| 74 | Document the ways in which each party listed below was or was not involved in case planning (for example, identifying needs and services, establishing goals, evaluating progress, etc.) If the involvement of the child, mother, or father is determined by the reviewers to be Not Applicable, document the reasons for this determination (including any evidence of efforts to locate absent parents). | To be documented by Reviewer Case Narratives (FTM, client contact, foster child contact, parent/caretaker contact) |
| 75 | Is there evidence that the family was informed of and prepared to actively participate in case events, including the FTMs, case plan development, and court events? | Case Narratives And County Conference Letter Verification Court Invitation Letter Verification (paper file) |
| 76 | Is there evidence that child(ren) and or parent(s) were involved in choosing services included on their case plan? | Case Narratives And County Conference |
| 77 | Mother | Case Narratives And County Conference |
| 78 | Father | Case Narratives And County Conference |
| 79 | Age appropriate Child/Youth | Case Narratives And County Conference |
| 80 | Were the service plans signed by the parents or guardians? | Case Planning/History and County Conference |
| 81 | Were the service plans signed by the children, aged 6 and up? | Case Planning/History and County Conference |
| 82 | Did the families attend the County Conferences? | Case Narratives And County Conference |

| 95 | Please describe barriers to more frequent visiting with the mother (if relevant) and father (if relevant), and discuss (if relevant) why reviewer felt less frequent visitation was appropriate: | Case Narratives and Court/Details and To be documented by Reviewer |
|---|---|---|
| 96 | Describe the general quality of the caseworker visits with the mother and the father, and the issues that were or were not addressed during caseworker visits (if relevant): | Case Narratives |
| 97 | If regular visitation is not occurring due to mother not being involved or found, are there documented diligent efforts to locate mother? | Case Narratives and Court/Details |
| 98 | If regular visitation is not occurring due to father not being involved or found, are there documented diligent efforts to locate father? | Case Narratives and Court/Details and To be documented by Reviewer |

## Component #4:  INDIVIDUALIZING CASE PLANNING

### Section 10.  PERMANENCY GOAL FOR CHILD

| 99 | What is (are) the child's current permanency goal(s) (or if the case was closed during the period under review, what was the permanency goal before the case was closed)? | Case Planning/ISP |
|---|---|---|
| 100 | Is (are) the child's permanency goal(s) specified in the case file? | Case Planning/ISP |
| 101 | Was a permanency plan developed within the child's first 30 days in care? | Case Planning/ISP |
| 102 | Were all permanency goals in effect during the period under review established in a timely manner? | Case Planning/ISP |
| 103 | Were all permanency goals in effect during the period under review appropriate to the child's needs for permanency and to the circumstances of the case? | Case narratives and Case Planning/ISP Court/Detail/Court Order Special Conditions |
| 104 | Please document the reasons the reviewers determined that the goals were not timely and/or appropriate (if relevant): | To be document by reviewer |
| 105 | Has the child been in foster care at least 15 of the last 22 months? | Court Custody Record |
| 106 | If not, does the child meet Adoption and Safe Families Act (ASFA) criteria for termination of parental rights (TPR)? | Case Planning/ Initial/Review/Compelling Reasons and Adoption Discussion and County Conference Part C |
| 107 | If yes, did the agency file a TPR petition before the period under review or in a timely manner during the period under review? | Court/TPR Request and Court Detail |
| 108 | If no TPR petition has been filed, is an "exception" or compelling reason for not filing for TPR documented in the case file? | Case Planning/ Initial/Review/Compelling Reasons and Adoption Discussion and County Conference Part C |

H:\MyFiles\EVALUATION AND MONITORING\EMU\CQI Case Reviews\Forms, Tools, Instruments\CQI Onsite Reveiw MACWIS Documentation Guide 06102010.doc

11

| Section 13. REUNIFICATION, GUARDIANSHIP OR PERMANENT PLACEMENT WITH RELATIVES | | |
|---|---|---|
| 123 | Does the child have a goal of reunification, guardianship, or permanent placement with relatives? | Case Planning/ISP/Individual Service Plan Tab |
| 124 | What is/was the child's most recent permanency goal? | Case Planning/Individual Service Plan Tab |
| 125 | Are the agency and court making (or did they make) concerted efforts to achieve the goal (or these goals, if there are concurrent goals) in a timely manner during the PUR? | Case Narratives and Case Planning/ISP Court/Detail/Court Order Special Conditions |
| 126 | Date of the child's most recent entry into foster care: | Court Custody Record |
| 127 | Time in care (in months) at the time of the onsite review: | Court Custody Record |
| 128 | Date of discharge from foster care: | Court Custody Record |
| 129 | Document efforts made to achieve goal, including the appropriateness and effectiveness of the efforts, and, barriers to achieving the goal (for example, agency, court, or other factors that prevented or are preventing timely achievement of the goal): | Case Narratives and Case Planning/ISP |
| 130 | Please document any contributing factors to the case in both the circumstance of the goal of reunification or permanent placement with relatives was not achieved or is not likely to be achieved within 12 months, or if the permanency goal was achieved within 12 months: | Case Narratives and Case Planning/ISP/Initial/Review/Barriers to Permanent Plan |
| 131 | For children with a goal of reunification, have parental service plans identified those services DFCS deems necessary to address the behaviors or conditions resulting in the child's placement in foster care? | Case Narratives and Case Planning and Tasks and Goals |
| | Did DCFS make those services identified available either through direct or referral service? | Case Narratives and Case Planning and Tasks and Goals |
| 132 | Mother? | Case Narratives and Case Planning and Tasks and Goals |
| 133 | Father? | Case Narratives and Case Planning and Tasks and Goals |
| 134 | If the child was discharged during PUR and was reunified, was there a 90 day trial home visit? | Case Narratives and Placement Screen |
| Section 14. STABILITY OF FOSTER CARE PLACEMENT | | |
| 135 | How long has the child been in the current placement setting? | Placement Screen/Request Tab |
| 136 | How many placement settings did the child experience during the period under review? | Placement Screen/History Tab |

| | | |
|---|---|---|
| | care and placement responsibility or supervision from the State to the adoptive parent(s); this should be the same date; if the adoption has not been finalized, enter Not Applicable (NA)): | Initial/Review/Compelling Reasons and Adoption Discussion and Court Detail Record |
| 148 | Please document efforts made to achieve the child's goal of adoption, including the appropriateness and effectiveness of the efforts, and barriers to achieving the goal of adoption (for example, agency- or court-related factors that prevented or are preventing achievement of the goal in a timely manner): | Case Narrative and Case Planning/ISP Initial/Review/Compelling Reasons and Adoption Discussion and Barriers to Permanent Plan and Court Detail Record |
| 149 | Please document special circumstances in the case which are contributing to the child either likely to achieve the goal of adoption within 24 months or not: | Case Narrative and Case Planning/ISP Initial/Review/Compelling Reasons and Adoption Discussion and Barriers to Permanent Plan and Court Detail Record |
| 150 | Does the child have an assigned adoption specialist and an adoption plan that identifies the child-specific activities that DFCS will undertake to achieve adoption, and receiving regular adoption status meetings consistent with plan requirements, and was that adoption specialist assigned within 10 days of the adoption goal change? | Case Assign/Transfer and Case Narratives and Case Planning/Direct Services |
| 151 | Is there evidence that the resource family has been informed of available subsidies, including post-adoptive subsidies? | Case Narratives and Placement Screen/Requests and Resource Parent Narratives |
| 152 | If the child has been in care longer than 12 months, is there evidence that the resource parents have been engaged on discussions regarding adoption? | Case Narratives and Placement Screen/Requests and Resource Parent Narratives |
| | **Section 16.  OTHER PLANNED PERMANENT LIVING ARRANGEMENT** | |
| 153 | Does the child have a goal of other planned permanent living arrangement? | Case Planning/ISP/Direct Services/Permanent Plan |
| 154 | What is the child's other planned permanent living arrangement goal (check the goal that most closely reflects the one in the case file)? | Case Planning/ISP/Direct Services/Concurrent Plan |
| 155 | For children aged 14-20 in the PUR, were concerted efforts made to provide the child with services to adequately prepare the child for independent living when the child leaves foster care, as set forth in a service plan? | Case Narrative and Case Planning./Initial/Review and Independent Living Plan |

| | | |
|---|---|---|
| 167 | If the child came into care during the PUR, did the child receive a comprehensive health screening within 30 days of foster care entry? | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review |
| 168 | During the period under review, did the agency assess the child's dental health care needs? | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review |
| 169 | Did the child, if over 3, receive an initial dental examination within 90 days of entry into care or within 90 days of his/her 3rd birthday if occurring during stay in foster care? | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review |
| 170 | During the period under review, did the agency ensure that appropriate services were provided to the child to address all identified physical health needs within required timeframes? | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review |
| 171 | During the period under review, did the agency ensure that appropriate services were provided to the child to address all identified dental health needs within required timeframes? | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review |
| 172 | Did the child receive periodic, age-appropriate physical and dental health examinations to ensure ongoing assessment of needs? If not, document the reasons why the agency did not conduct this ongoing assessment: | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review Case Planning/Initial/Review/ Medical Issues |
| 173 | Based on the assessment of needs, if there are services that were not provided, document why the services were not provided (for example, lack of agency efforts to secure services, lack of service availability in the community, lack of transportation for foster parents to take child to appointments, etc.): | Case Narratives and Demographics/Medical Info and Medical/Health Record and County Conference Review Case Planning/Initial/Review/Medical Issues |

## Component #6:  PRESERVING & MAINTAINING CONNECTIONS

### Section 19.  PROXIMITY OF FOSTER CARE PLACEMENT

| | | |
|---|---|---|
| 179 | Was the child placed in the same county as (s)he was removed? | Placement Screen/Director Approval/Proximity button |
| 180 | Is the child's current or most recent placement close enough to his or her parents or other potential permanent caregiver to facilitate frequent face-to-face contact between the child and the parents while the child is (or was) in foster care? | Placement Screen/Director Approval/Proximity button |
| 181 | If No, was the reason for the location of the child's current or most recent placement based on the child's needs and intended to ensure that the child's case plan goals are achieved? | Case Narrative and Placement Screen/Director Approval/Proximity button |
| 182 | Describe the relationship between the child's current or most recent placement and the location of the parents or of a family member with whom the child is likely to be reunified (for example, the child will be reunified with a grandmother): | Case Narrative and Placement Screen/Director Approval/Proximity button |
| 183 | If the reviewers determine that the child's placement is not sufficiently close to the parent(s) to facilitate frequent contact, document the reasons for this determination (and identify any reasons provided by the agency): | Case Narrative and Placement Screen/Director Approval/Proximity button |
| 184 | Did the child remain in the same school (s)he attended prior to foster care placement? | Case Narrative And Placement screen/Proximity button/Discussion/Request and Education Record Case Planning/Initial/Review/Educatio nal Issues |
| 185 | If No, please explain why: | Case Narrative And Placement screen/Proximity button/Discussion |

### Section 20.  PLACEMENT WITH SIBLINGS

| | | |
|---|---|---|
| 186 | During the period under review, was the child placed with all siblings who also were in foster care? | Case Narrative and Placement Screen/Director Approval/Placed with Siblings button |
| 187 | If No, was there a valid reason for the child's separation from the siblings (for example, the separation was necessary to meet the needs of one of the siblings, to address safety concerns for one or more of the siblings, or to accommodate a large sibling group)? | Case Narrative and Placement Screen/Director Approval/Placed with Siblings button |
| 188 | Reason for Separation (if applicable)-please list sibling's name, placement setting, and the reason for separation: | Case Narrative and Placement Screen/Director Approval/Placed with Siblings button |

| 202 | Did the child have a visit with his/her parents within 24 hours of placement, or at a minimum a phone call with relatives within first 24 hours? | Investigative and/or Case Narrative |
|---|---|---|
| | **Section 22. PRESERVING CONNECTIONS** | |
| 203 | During the period under review, were concerted efforts made to maintain the child's important connections (for example, neighborhood, community, faith, language, extended family members including siblings who are not in foster care, school, tribe, and/or friends)? | Case Narrative and Placement Screen/Director Approval/Proximity button |
| 204 | Was a sufficient inquiry conducted with the parent, child, custodian, or other interested party to determine whether the child may be a member of, or eligible for membership in, an Indian tribe? | Investigative and/or Case Narrative/ICWA Contact Narrative Type |
| 205 | If the child may be a member of, or eligible for membership in, an Indian tribe, during the period under review, was the tribe provided timely notification of its right to intervene in any State court proceedings seeking an involuntary foster care placement or termination of parental rights (TPR)? | Case Narrative and Investigative and/or Case Narrative/ICWA Contact Narrative Type |
| 206 | If the child is a member of, or eligible for membership in, an Indian tribe, was the child placed in foster care in accordance with the Indian Child Welfare Act (ICWA) placement preferences or were concerted efforts made to place the child in accordance with ICWA placement preferences? | Case Narrative and Court 'Custody Record |
| 207 | Document agency efforts or lack of efforts to help children maintain important connections when these are not being maintained through the placement itself: | Case Narrative and Placement Screen/Director Approval/Proximity button Visitation Plan |
| | **Section 23. RELATIONSHIP OF CHILD IN CARE WITH PARENTS** | |
| 208 | Did a meeting occur between the birth parents and resource parents within the first month of placement (if placement occurred during the PUR)? | Case Narrative and County Conference |
| 209 | Is there evidence in the case record of shared parenting responsibilities between the birth and resource parents? | Case Narrative and County Conference |
| 210 | If not explained in the "reason for rating" section, document efforts or lack of efforts to support or maintain a positive mother-child, and or father-child relationship. (The focus should be on activities such as the ones listed in the instructions, rather than on visitation). Foster parent activities may be considered equivalent to "agency" activities in responding to this question: | Case Narrative and County Conference |

