**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
245 E. CAPITOL, SUITE 316
JACKSON, MISSISSIPPI 39201

OFFICIAL BUSINESS

Teresa A. Wells
381 Mill Pd Road
Lamar, MS 38642



RECEIVED
MAY 24 2011
Clerk, U.S District Court
Southern District of Miss.



049J82022231
$00.640
Mailed From 39201
05/17/2011
US POSTAGE

FORWARD TIME EXP RTN TO SEND
WELLS X 381 NFE 1 2100 00 05/20/11
PO BOX 44
MT PLEASANT MS 38649-0014
RETURN TO SENDER

Teresa A. Wells
381 Mill Pd Road
Lamar, MS 38642

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., BY AND THROUGH HER
NEXT FRIEND, JAMES D. JOHNSON;
JAMISON J., BY AND THROUGH HIS
NEXT FRIEND, CLARA LEWIS; DESIREE,
RENEE, TYSON, AND MONIQUE P.,
BY AND THROUGH THEIR NEXT FRIEND,
SYLVIA FORSTER; JOHN A., BY AND
THROUGH HIS NEXT FRIEND, JAMES D.
JOHNSON; CODY B., BY AND THROUGH HIS
NEXT FRIEND, SHARON SCOTT; MARY, TOM,
MATTHEW, and DANA W., BY AND THROUGH
THEIR NEXT FRIEND, ZELETRA W.; AND
SAM H., BY AND THROUGH HIS NEXT FRIEND,
YVETTE BULLOCK, ON THEIR OWN BEHALF AND
BEHALF OF ALL OTHERS SIMILARLY SITUATED                              PLAINTIFFS

VS.                                      CIVIL ACTION NO. 3:04CV251TSL-FKB

HALEY BARBOUR, AS GOVERNOR OF THE
STATE OF MISSISSIPPI; DONALD TAYLOR,
AS EXECUTIVE DIRECTOR OF THE DEPARTMENT
OF HUMAN SERVICES; AND BILLY MANGOLD,
AS DIRECTOR OF THE DIVISION OF FAMILY
AND CHILDREN'S SERVICES                                              DEFENDANTS

ORDER

Plaintiffs have come before the court pursuant to Federal Rule of Civil Procedure 70(e), section VII.B of the parties' January 4, 2008 court-approved Settlement Agreement and Reform Plan, and paragraph 11 of the June 10, 2010 court-approved corrective action plan (known as the Bridge Plan), seeking an order finding defendants in contempt of the referenced Settlement Agreement/Plan, and for the appointment of a general

receiver with full authority to administer Mississippi's child welfare system to bring it into compliance with the orders of this court. Defendants have responded in opposition to the motion and the court, having considered the parties' arguments, both written and oral, along with exhibits presented in support of their respective positions, and having heard from the Court Monitor, concludes that the motion for contempt and appointment of a receiver should be denied.

In January 2008, the parties entered into a Settlement Agreement and Reform Plan, the purpose of which is the reform of Mississippi's Mississippi's foster care system. In addition to numerous specific duties imposed on the Mississippi Department of Human Services (DHS) and the Division of Family and Children's Services (DFCS), the Settlement Agreement requires that the parties enter into annual Implementation Plans that set forth more concrete and specific obligations necessary to implement reform.

In the present motion, plaintiffs charge that defendants have violated and continue to violate provisions of the Settlement Agreement and the Period Two Implementation Plan relating to staffing requirements, and to staff training, supervision and resource requirements; the development of an adequate array of foster care placements and improving placement case practice; health services; reunification and adoption service requirements; and child data and quality assurance system requirements.

Plaintiffs further contend that defendants have failed to meet settlement requirements directed at reducing the frequency at which children are abused and neglected after having been placed in foster care for their protection, including requirements relating to the investigation of maltreatment, the immediate safety check of at-risk children, child abuse intake procedures and licensure of all foster homes, as a result of all of which the rate at which foster children are abused remains unnecessarily high.

Contempt proceedings begin with "the basic proposition that all orders and judgments of courts must be complied with promptly." Maness v. Meyers, 419 U.S. 449, 458, 95 S. Ct. 584, 591, 42 L. Ed. 2d 574, 583 (1975). The burden in civil contempt proceedings is on the party seeking a contempt order, here plaintiffs, to prove, by clear and convincing evidence, that (1) a court order is in effect; (2) that the order prescribes or requires certain conduct by defendants; and (3) that defendants have performed an act or failed to perform an act in violation of the court's order. Plaintiffs are not required to show that the violation was willful. See Petroleos Mexicanos v. Crawford Enterprises, Inc., 826 F.2d 392, 401 (5th Cir. 1987); see also Herman v. Transocean Offshore, Inc., No. Civ. A.1:99CV157GR, 2000 WL 33727967, 2 (S.D. Miss. July 20, 2000) ("[A] party is in civil contempt if that party fails in 'meaningful respects' to achieve

3

substantial and diligent compliance with a clear and unambiguous decree." (quoting <u>Lelsz v. Kavanough</u>, 673 F. Supp. 828 (N.D. Tex. 1987)).

If the plaintiffs make this prima facie showing, the burden falls to defendants to demonstrate a defense or defenses, such as a present inability to comply with the order or substantial compliance with the order, or to show mitigating circumstances that might cause the court to withhold the exercise of its contempt power.  <u>See</u> <u>United States v. Rylander</u>, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552, 75 L. Ed.2d 521 (1983); <u>Whitfield v. Pennington</u>, 832 F.2d 909, 914 (5th Cir. 1987).  Good faith is not a defense to a civil contempt order, <u>Whitcraft v. Brown</u>, 570 F.3d 268, 272 (5th Cir. 2009); however, where the respondent offers a mitigating circumstance, such as good faith, it is the court's province to tailor sanctions in light of the circumstances offered.  <u>NASCO, Inc. v. Calcasieu Television & Radio, Inc.</u>, 583 F. Supp. 115, 119 (W.D. La. 1984).

In the case at bar, plaintiffs obviously have met their burden to present a prima facie case.  It is unquestionably true, as plaintiffs have charged, that defendants failed to comply with most of the requirements established by the court-approved Period Two Implementation Plan, entered by the parties pursuant to the

4

court-approved Settlement Agreement.[1] Indeed, although defendants take issue with the extent of their noncompliance and insist that they never willfully disregarded the court's orders and instead made diligent and good faith efforts to comply, defendants admit they ultimately were unable to fully comply with all Period Two requirements. Defendants submit, however, that owing to circumstances, both unanticipated and beyond their control, they were unable to fully comply with the requirements established by their agreements and that a contempt order is not appropriate.

After hearing the parties' arguments and considering their evidence, and having also heard from the Court Monitor, it is evident to the court that there have been major shortcomings in defendants' performance under both the Period One and Period Two Implementation Plans; and defendants have also failed to comply

---

[1] While the underlying agreement(s) between the parties are in the nature of a settlement and have the elements of a contract, "an agreement between litigants ... entered as a judgment of the court ... takes on an added significance," having "attributes both of contracts and of judicial decrees." S.E.C. v. AMX, Intern., Inc., 7 F.3d 71, 75 (5th Cir. 1993) (citations omitted); see also 1B James W. Moore, Moore's Federal Practice, ¶ 0.409[5], at III-151 (2d ed. 1993) (stating, "The [consent] judgment is not, like the settlement agreement out of which it arose, a mere contract inter partes. The court is not properly a recorder of contracts; it is an organ of government constituted to make judicial decisions, and when it has rendered a consent judgment it has made an adjudication."). Thus, a consent order entered based on the parties' settlement is properly enforceable by the court's contempt power. See AMX, Intern., Inc., 7 F.3d at 76.

fully with the requirements of the Bridge Plan.[2] It is undisputed that defendants failed to comply with nearly all of the requirements imposed under the Period One Plan. Plaintiffs acknowledge that defendants' failure in this regard is attributable largely to the fact that during the time-period covered by the Period One Plan, defendants' efforts were intensely focused on getting appropriate leadership in place for DHS and DFCS; and in this endeavor, they were successful. Don Thompson, chosen to head DHS, and Lori Woodruff, selected to manage DFCS, have both been lauded as highly competent individuals in their fields. Plaintiffs acknowledge that strong and effective leadership is key to the successful accomplishment of their goals for reform of Mississippi's foster care system, and they explain that for this reason, they chose to forbear seeking relief from

---

[2] After plaintiffs provided defendants written notice on April 10, 2010 of defendants' noncompliance with the Settlement Agreement and the Period Two Implementation Plan, the parties negotiated a short-term corrective action plan covering a four-month period from May 1, 2010 to September 1, 2010. This plan, approved by the court, is known as the Bridge Plan. Defendants argue that by negotiating the Bridge Plan, plaintiffs waived their right to seek a contempt order for violations of the Period Two Implementation Plan. However, the Bridge Plan expressly recites, "Nothing in this Order shall be construed to preclude Plaintiffs from seeking judicial relief for any violation of the Period Two Annual Implementation Plan or the Period Two requirements of the Settlement Agreement and Reform Plan at any time following the conclusion of the Bridge Period or following the initiation of an enforcement action by Plaintiffs pursuant to paragraph 10 of this Order."

the court for the obvious failures in defendants' performance of Period One requirements.

Yet it remains a fact that at the end of Period One, defendants were already well behind in accomplishing the specific requirements put in place by the parties' agreements within the time frame established by their agreements. Notwithstanding this, defendants did not come to the court to seek a modification of the timeline plaintiffs required. Instead, the parties moved forward with a Period Two Implementation Plan, adding additional requirements and establishing timelines for meeting those requirements, that were both highly ambitious and, it seems, ultimately unrealistic. Although the court considers it likely that in the time prescribed by the Period One and Period Two Implementation Plans, defendants could have met more of the requirements, or at least moved farther along in the process of meeting the requirements of these Plans than they did, it is nevertheless apparent to the court that defendants lacked the capability to comply fully, or even substantially, with all the requirements of the Period Two Plan within the time frame established by the Plan.

For these reasons, the court declines to find defendants in contempt of court. However, that does not mean that the court

does not consider that intervention by the court is unwarranted.[3] As plaintiffs note, defendants' shortcomings in the performance of the duties prescribed by the parties' agreements are in virtually all areas covered by the agreements. For example, while defendants have made strides in the area of staffing, they clearly have failed to develop or implement a sufficient plan for staffing positions. Defendants have made significant progress in the development of a training curriculum, but there have been manifest shortcomings in the implementation of that curriculum. There have been major deficiencies in, and evidently little forward progress made, in the development and implementation of procedures and programs for data tracking and management. The list could go on,

---

[3]   The court notes that even if the court were persuaded that a finding of contempt were warranted, the court would not appoint a receiver, as plaintiffs have requested as a remedy. In <u>United States v. United Mine Workers</u>, 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947), the Supreme Court detailed the factors to be considered in the imposition of a civil contempt sanction as follows:  (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. Here, there is no suggestion that defendants' violation has been willful. The cost of a receiver would likely be considerable and presumably would be borne by the State, which in recent years has experienced significant budget shortfalls. Perhaps the cost could be justified if the court considered that a receiver would likely be able to achieve full, or even substantial compliance with the requirements of the parties' agreements; but plaintiffs have not shown this is the case. Indeed, it seems to the court not unlikely that the installation of a receiver could exacerbate the present situation and create a new set of problems.

and indeed, the Court Monitor's reports identify defendants' shortcomings in detail.

The simple fact is, the shortcomings so identified do exist, perhaps not to the degree suggested by plaintiffs, but they obviously do exist. And while the fact of these deficiencies may not be attributable to a lack of good faith effort, and certainly not in all or even most respects to a lack of reasonable diligence on defendants' part, it is nevertheless clear that this situation exists and that the shortcomings identified by plaintiffs and the Court Monitor must be confronted and rectified. Toward that end, the court finds that the parties' existing agreements should be modified going forward. Therefore, the parties are hereby directed to work together, in consultation with the Court Monitor, to craft appropriate modifications of their existing agreements. As part of this process, the parties shall strive, in consultation with the Monitor, to identify specific shortcomings; to prioritize goals and objectives, and the means to achieve them; to identify strategies and interventions to be part of a remedial plan going forward, including strategies to strengthen and improve the management function; and to establish realistic timelines for the accomplishment of the parties' shared goals and objectives. The parties are directed to report to the court on the status of their discussions, their progress toward reaching agreement, and identify areas of disagreement, if any, within thirty days.

The court does not question the good faith or good intentions of defendants; but in the end, they are meaningless unless those good intentions are translated into effective action.  That is what is required, and what must be the focus of the parties and the court going forward.  Dwelling on defendants' past omissions will not serve that purpose.  By denying plaintiffs' motion, the court does not excuse defendants, who could have done more than they have to date; and by no means is it the court's intent to minimize the gravity of the problems identified by plaintiffs in their motion and the situation that confronts plaintiffs and defendants.  The court, however, for the reasons given, does not believe that a finding of contempt, or the appointment of a receiver, would serve any fruitful purpose, and therefore, orders that plaintiffs' motion is denied, and further orders that the parties shall work toward a modified agreement, as directed, and shall report to the court on the progress of their efforts within thirty days hereof.

SO ORDERED this 17th day of May, 2011.

/s/ Tom S. Lee
UNITED STATES DISTRICT COURT