IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                               PLAINTIFFS

v.                                                                                  CIVIL ACTION NO. 3:04CV251LN

PHIL BRYANT, as Governor of the State of Mississippi, *et al.*     DEFENDANTS

## DECLARATION OF MARCIA ROBINSON LOWRY

1.     I, Marcia Robinson Lowry, am a member of the Bar of New York and admitted to practice in this Court *pro hac vice*. I serve as co-lead counsel for the Plaintiff Class in this case. I am the Executive Director of Children's Rights ("CR"), and I have been responsible for the supervision and conduct of my organization's work in this case. I give this Declaration in support of Plaintiffs' Unopposed Motion for Plaintiffs' Attorneys' Fees and Expenses.

2.     I graduated from New York University School of Law in 1969. I have been an attorney litigating child welfare cases since 1970. For six years, I was the Director of the Children's Rights Project of the New York Civil Liberties Union, where I instituted and directed a program of litigation to reform the New York City child welfare system. From 1979 until 1995, I was the Project Director of the Children's Rights Project of the American Civil Liberties Union ("ACLU"), where I directed major litigation efforts in jurisdictions throughout the United States designed to promote major reform of child welfare systems. In 1995, I carried this work over to CR, which I founded.

3.     I have been counsel in approximately 20 class action lawsuits representing hundreds of thousands of children against systems that have failed to provide lawful child welfare services including, for example:

- Baby Neal v. Casey, a class action against the Philadelphia child welfare system and the Pennsylvania public welfare department for failure to comply with constitutional standards and applicable federal statutes;

- Brian A. v. Sundquist, a class action against the Tennessee child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Carson P. v. Heineman, a class action against the Nebraska child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Charlie H. v. Whitman, a class action against the New Jersey child welfare system and the state of New Jersey for failure to comply with constitutional standards and applicable federal law;

- D.G. v. Henry, a class action against the Oklahoma child welfare system concerning violation of foster children's rights under federal and constitutional law;

- Dwayne B. v. Granholm, a class action against the Michigan child welfare system concerning violation of foster children's rights under federal and constitutional law;

- E.C. v. Blunt, a class action against the Missouri governor and child welfare officials challenging the facial validity of an adoption assistance law on constitutional and statutory grounds;

- Foster Children Bonnie L. v. Bush, a class action against the Florida child welfare system and the state of Florida concerning violation of foster children's rights under federal and constitutional law;

- G.L. v. Zumwalt, a class action challenging federal statutory and constitutional infirmities within the foster care system in Kansas City, Mo;

- Jeanine B. v. Thompson, a class action against the Milwaukee County child welfare system and state of Wisconsin for failure to comply with local laws, federal statutes, and federal constitutional protections applying to children at risk for placement or in foster care;

- Joseph A. v. New Mexico Dept. of Human Services, a federal statutory and constitutional challenge to the foster care system in the state of New Mexico brought on a class basis;

- Juan F. v. Rell, a class action against the Connecticut social services system, based on failure to comply with constitutional standards and applicable federal statutes;

- Kenny A. v. Perdue, a class action against the Governor of Georgia and other state officials concerning violation of foster children's rights in DeKalb and Fulton Counties, Georgia, under federal and constitutional law;

- LaShawn v. Barry, a class action against the District of Columbia child welfare system for failure to comply with constitutional standards, federal statutes, and applicable District of Columbia law;

- Marisol A. v. Giuliani, a class action against New York City and State, regarding all aspects of New York City's child welfare system, for failure to comply with federal constitutional, federal statutory, state constitutional, state statutory, and state regulatory standards;

- Sheila A. v. Finney, a class action in state court against the Kansas child welfare system based on violations of state, federal statutory, and federal constitutional law; and

- Wilder v. Sugarman, a challenge to New York's statutory scheme for the provision of foster care services on the grounds of racial and religious discrimination and violation of the establishment and free exercise clauses of the First Amendment.

4. During my professional involvement in the above class litigation, I have directly participated in and supervised the monitoring and enforcement of more than 10 class-

3

wide settlements with state or local government officials requiring the wholesale reform of child welfare systems.

5.  Pursuant to 42 U.S.C. § 1988 and Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs request that the Court approve the Parties' settlement regarding Plaintiffs' attorneys' fees and expenses for the necessary post-judgment monitoring and enforcement work performed on behalf of the Plaintiff Class from October 1, 2009 through December 31, 2010 ("monitoring period."). Defendants have agreed to pay Plaintiffs' attorneys $323,517.81 to settle all claims for attorneys' fees and expenses undertaken and incurred during the monitoring period. This agreed-upon total includes $307,801.21 in fees for reimbursement of 1,526.86 hours expended on the litigation by Plaintiffs' attorneys (1,319.12 hours), by legal interns (25.05 hours), and by paralegals (272.8). The fees settlement represents a reduction, undertaken by Plaintiffs' attorneys in the exercise of billing judgment, of 409.34 hours of lawyer, paralegal, and legal intern work. The fees settlement provides for payment of $15,716.60 to Plaintiffs for reimbursable out-of-pocket expenses such as travel and copying.

6.  In addition to my own work on the case, I supervised the various lawyers, paralegals, and legal interns at CR who worked on enforcing the Remedial Order reached in this matter. The resumes of all of these attorneys, setting forth their qualifications and experience, were submitted as Attachment A to my Declaration as part of Plaintiffs' Memorandum In Support Of Plaintiffs' Unopposed Motion For Approval Of Settlement Regarding Plaintiffs' Attorneys' Fees and Order of Notice To the Class, filed May 9, 2008. (Dkt. No. 472).

7.      I am familiar with CR's policies, practices, and procedures governing the recording and maintenance of time and expense records. I supervised staffing levels throughout the monitoring period and assigned attorneys to tasks only as reasonably necessary to provide suitable representation to the Plaintiff Class.

8.      Attachment A to this Declaration is a summary of: (a) the total billable hours performed by CR lawyers, paralegals and legal interns on this case from October 1, 2009 through December 31, 2010. The compilation of itemized time records on which the attorneys' fees portion of Attachment A is based is attached as Attachment B. The compilation of compensable case expenses advanced by CR on behalf of the Plaintiff Class for the monitoring period, itemized by category of expense, is attached as Attachment C. The compilation of itemized time records set forth in Attachment B and the compilation of case expenses were both generated from a database of entries created in the ordinary course of CR's business by persons with actual knowledge of the events recorded at or about the time of the events recorded, and which have been maintained in the ordinary course of CR's business. Each compilation has been personally reviewed by a senior level attorney who worked on this case, and charges have been reduced or written off that were deemed, in the exercise of billing judgment, excessive or non-compensable. I believe these compilations of the time and expense records and the summary of them attached as Attachments A and C to be an accurate and reliable account of the work performed and the compensable expenses incurred by CR and its personnel in this case.

9.      During the period covered by this motion for fees, it was the consistent policy and business practice of CR to require each attorney, paralegal, and legal intern to maintain

contemporaneous and specific records of all time worked in a particular case, and for such records to be entered in a computerized billing system. Each such employee received a weekly printout of his or her billing hours, reviewed the records for accuracy, and corrected any billing errors. All of the CR attorneys who worked on this case kept contemporaneous and specific records of all the work they performed. These records, submitted in Attachment B, are an accurate statement of the time spent on providing legal services to the Plaintiff Class for which CR seeks compensation. I attest that all of the hours submitted in Attachment B were reasonable and necessary in order to furnish adequate representation for the Plaintiffs.

10. All of CR's time entries have been carefully reviewed by a CR attorney, and in the exercise of responsible billing discretion, a total of 409.34 hours expended in conjunction with this litigation that might be viewed as excessive, redundant, or otherwise unnecessary to this litigation, as well as entries that are vague, have been excluded. Itemized time records for these excluded hours are attached hereto as Attachment D.

11. I have consistently and continuously made reasonable efforts to balance the workloads of the attorneys and paralegals working on this case to ensure that the work assigned to them was commensurate with their level of experience. I have made every effort to keep the number of staff assigned to the case to a minimum. I believe the case was appropriately staffed at all times by CR. Each of the attorneys and paralegals working on this case had the ability and experience to perform the work assigned to him or her at a high degree of professionalism and was appropriately supervised.

12.    Throughout the litigation, I also made diligent efforts to hold expenses, which must be paid when incurred, to a minimum. Plaintiffs devoted $15,716.60 in out-of-pocket expenses to this case over the last year. The parties' agreed-upon expense reimbursement reflects a discount of the actual reimbursable costs incurred by Plaintiffs. Plaintiffs submit as Attachment C to this Declaration a detailed, itemized list of reimbursable expenses for CR. The majority of the expenses incurred by CR in connection with this litigation were travel expenses. The numerous trips by CR attorneys to Mississippi for meetings with sources, meetings with local counsel, conferences with the Defendants and the court-appointed Monitor were all necessary to effectively monitor and enforce compliance with the terms of the Remedial Order. I, along with the other CR attorneys working on this case, made concerted efforts to minimize the number and cost of trips to Mississippi, as well as the number of attorneys who participated in each trip.

13.    The Parties' fees agreement reflects the same agreed-upon rates as were applied in the Parties' settlement of Plaintiffs' claims for fees and expenses for work undertaken during the first five years of litigating this case. For purposes of calculating Plaintiffs' fee award for hours worked from October 1, 2009 through December 31, 2010, the following rates were used and agreed to by the parties: Marcia Robinson Lowry (Children's Rights) – $303.75 per hour; Shirim Nothenberg (Children's Rights) – $270.00 per hour; Jessica Polansky, Melissa Cohen, and Sarah Russo (Children's Rights) – $189.00 per hour; paralegals – $108.00 per hour; legal interns (Children's Rights) - $135 per hour; Wayne Drinkwater (Bradley Arant Boult Cummings LLP) – $255.38 per hour. Travel hours for CR attorneys were billed at half of these rates. These rates, as

presented in Plaintiffs' Unopposed Motion for Approval of Settlement Regarding Plaintiffs' Attorneys Fees, were approved as reasonable by this Court by Order dated May 9, 2008. As reflected in my May 9, 2008 Declaration submitted to the Court in support of that previous motion, these rates are well below Plaintiffs' Counsel's regular rates and the prevailing rates to which they are entitled.

14. The detailed time records attached to the Declaration of Marcia Robinson Lowry as Exhibit 1-Attachment B reflect the ongoing and active monitoring work that Plaintiffs' Counsel has undertaken in the time since this Court's approval of Plaintiffs' previous motion for attorneys' fees and expenses.

15. Throughout this monitoring period, Plaintiffs' post-judgment work has entailed extensive document review, including the review of compliance data produced by Defendants; reports and analyses of DCYF functionality issued by the Center for the Support of Families ("CSF"), the Practice Guide, also issued by CSF; and, reports created and obtained by the Olivia Y. Monitor. Post-judgment monitoring and enforcement has also required ongoing, regular communication between Class Counsel and the Monitor regarding compliance issues, including concerns about the pace of Defendants' compliance with the Remedial Order.

16. Throughout this monitoring period, Class Counsel has been in frequent communication with the Defendants to address areas of noncompliance and to negotiate necessary remedial actions. On a number of occasions, in the interest of efficiency and productivity, Children's Rights' attorneys have traveled to Mississippi for face-to-face discussions with Defendants, the Monitor and in some instances members of CSF.

17.     During the last several months of 2009 and the early months of 2010, Plaintiffs engaged in a rigorous analysis of the assessments and reports issued by the Center for the Support of Families, including a report regarding appropriate board rates. As required by section II.B.13.g of the Remedial Order, CSF was engaged by Defendants to "assess board payment rates currently being paid to foster parents caring for special needs foster children and to congregate care facilities to determine the extent to which those rates meet the requirements of 42 U.S.C. § 675(4)(A) and reflect the actual cost of caring for special needs foster children and children placed in congregate care facilities." Pursuant to section II.B.13.h of the Remedial Order, Plaintiffs objected to the rate recommended by CSF for therapeutic congregate care service providers because it was based upon a flawed methodology. Also during this time, Plaintiffs engaged in vigorous discussions with Defendants to rectify the elimination by Defendants of intensive in-home therapeutic services being provided to members of the Plaintiff Class.

18.     Also during the early months of 2010, Plaintiffs reviewed compliance data generated by the Monitor and met with Defendants regarding compliance issues. In March, following significant negotiations, the Parties arrived at an agreement to limit the number of days that Defendants could furlough caseworkers. In response to an informal assessment by the Monitor of Defendants' compliance with Period Two requirements, the Parties began in May to negotiate a short-term "Bridge Plan" that required Defendants to produce specific child welfare data and take immediate corrective action necessary to address specific child safety and well being issues. That Bridge Plan was filed with the Court in June 2010.

19. Over the next several months, Plaintiffs reviewed the data Defendants were required to produce pursuant to the Bridge Plan, and assessed compliance with both the terms of the Bridge Plan and the requirements of the Remedial Order. By October, Plaintiffs determined that Defendants were failing in significant ways to comply with the terms of the Remedial Order. Accordingly, Plaintiffs filed a Motion to Appoint a Receiver and for Contempt. Throughout the fall and winter of 2010, Plaintiffs gathered and prepared the evidence, and drafted the legal papers necessary to prevail on that motion, which was heard in early 2011.

20. The work detailed above was all reasonable and necessary to ensure implementation by Defendants of the Remedial Order and that the benefits of the Remedial Order are realized by the Plaintiff Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of February, 2012.

*Marcia Robinson Lowry*
Marcia Robinson Lowry

Sworn to before me this
7th day of February 2012

*[signature]*
Notary Public

LAURENCE DREW BORTEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02BO6223612
Qualified in New York County
My Commission Expires June 21, 2014