IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                                    PLAINTIFFS

v.                                                                                  CIVIL ACTION NO. 3:04CV251LN

PHIL BRYANT, as Governor of the State of Mississippi, *et al.*                    DEFENDANTS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES**

Plaintiffs respectfully submit this memorandum of law pursuant to 42 U.S.C. § 1988 and Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, in support of their unopposed motion for an award to Plaintiffs' Counsel of the agreed-upon amount of $288,401.98 in attorneys' fees and expenses for the monitoring and enforcement of the Mississippi Settlement Agreement and Reform Plan (the "Settlement Agreement") and the Modified Mississippi Settlement Agreement and Reform Plan (the "Modified Settlement Agreement"), performed on behalf of the Plaintiff Class from January 1, 2011 through August 31, 2012 (the "Monitoring Period").[1]

**PRELIMINARY STATEMENT**

This class action was filed in 2004 and alleged that the child welfare system in Mississippi, managed by the Division of Family and Children's Services ("DFCS"), failed to protect and provide for Mississippi's abused and neglected children in violation of the United

---

[1] The parties agree that Plaintiffs are entitled to $288,401.98 in reasonable fees and expenses. As in the past, Plaintiffs will collect theses fees and expenses after the Mississippi Legislature has appropriated the necessary amount during its next legislative session.

States Constitution and federal statute.  In March 2007, the Parties reached an agreement as to liability (the "Stipulated Settlement") in which Defendants agreed to no longer contest that DFCS operated in a manner that harmed Plaintiff Children in violation of their constitutional rights.  The Stipulated Settlement required Defendants to work with outside experts and Plaintiffs' Counsel to create a detailed remedial order to address system-wide deficiencies. The Stipulated Settlement was approved by this Court at a Rule 23(e)(2) fairness hearing held on May 17, 2007, after notice was given to the Class.  (ECF Min. Entry, May 17, 2007).

In accordance with the Stipulated Settlement, the Parties negotiated the terms of a comprehensive remedial plan, the Settlement Agreement, which was approved and entered as an Order by this Court at a Rule 23(e)(2) fairness hearing held on January 4, 2008, after notice was given to the Class.  (ECF Min. Entry, Jan. 4, 2008; Settlement Agreement, ECF No. 459.)  More recently, the Parties negotiated a Modified Settlement Agreement, approved and entered on July 6, 2012, which better reflects the current realities of Mississippi's child welfare system.  (ECF No. 571.)  Class Counsel has actively monitored and enforced both the Settlement Agreement and the Modified Settlement Agreement since their approval by the Court.

This Court has twice before—in July 2009 and in February 2012—entered orders approving negotiated awards of fees and expenses.  (*see* Order, ECF No. 492; Order, ECF No. 563.)  These prior orders compensated Plaintiffs' counsel for fees accrued through the end of 2010.  Here, Plaintiffs seek reimbursement for monitoring and enforcement activity during the Monitoring Period from January 1, 2011 through August 31, 2012.

The negotiated fees and expenses represent fair compensation for Plaintiffs' efforts during the Monitoring Period.  Among other things, Plaintiffs successfully negotiated the Modified Settlement Agreement and the Period 3 Implementation Plan, which create a

framework for further reform of DFCS as envisioned in the original remedial plan. The amount sought for these efforts is reasonable. This amount was determined by calculating Plaintiffs' attorneys' lodestar at a rate lower than the attorneys' standard rates. No enhancements are requested and Plaintiffs' attorneys have exercised their billing judgment to write-off over $60,000 in fees and expenses.

In this unopposed motion, Plaintiffs seek Court approval for a negotiated award of $288,401.98 for fees and expenses incurred on behalf of Plaintiffs by Plaintiffs' counsel. An award of fees and expenses in the amount requested is reasonable and appropriate under the circumstances, as detailed below, and Plaintiffs respectfully request that this motion be granted.

## ARGUMENT

### I. The Court Should Award Plaintiffs the Reasonable Attorneys' Fees and Expenses Negotiated by the Parties

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), provides that in federal civil rights cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" The purpose of § 1988 "is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558 at 1 (1976)). A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (1983) (quoting S. Rep. No. 94-1011 at 4 (1976) (internal quotations omitted); *Riley v. City of Jackson*, 2 F. Supp. 2d 864, 871 (S.D. Miss. 1997) ("'[A]bsent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*.'" (quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 998 (5th Cir. 1983)) (emphasis in original). There is no dispute that Plaintiffs are prevailing parties for purposes of § 1988 because they secured a court-ordered settlement for the Plaintiff Class. *See Maher v.*

3

*Gagne*, 448 U.S. 122, 129 (1980); *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (recognizing that a consent decree creates prevailing party status for plaintiffs).

Further, it is well-settled that reasonable attorneys' fees and expenses incurred in monitoring and enforcing the implementation of a consent decree are reimbursable under § 1988. *See, e.g.*, *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 767 (5th Cir. 1996) ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees."); *Miller v. Carson*, 628 F.2d 346, 348 (5th Cir. 1980) (holding that a fee award to plaintiffs' counsel for work monitoring post-verdict compliance with court ordered prison conditions was proper); *Cooper v. Hopkins*, 945 F. Supp. 940, 948 (S.D. Miss. 1995) (holding that counsel's work in enforcing a judgment in a prisoners' civil rights case was properly compensable). Any legal work necessary to secure an award of fees is also compensable. *Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001) ("[I]t is well settled that fees-on-fees are recoverable under § 1988.") (citing *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)).

As previously detailed in Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Plaintiffs' Attorneys' Fees and Expenses (ECF No. 490), the Settlement Agreement specifically contemplates that Plaintiffs' Class Counsel would undertake a vigorous role in its monitoring and enforcement.[2] (*Id.* at 7-8) The fact that the Parties have agreed on reasonable fees and expenses to be awarded to Plaintiffs' Class Counsel for their work in compliance with

---

[2] The Court's July 2009 Order granting attorney's fees included a finding that notice pursuant to Rule 23(h) of subsequent fee applications for post-judgment monitoring and enforcement work is unnecessary "because the notice received by Plaintiff Class pursuant to Rule 23(h) as to Plaintiffs' first Unopposed Motion for Approval of Settlement Regarding Plaintiffs' Attorney's Fees included notification that Plaintiffs' Counsel might periodically be submitting fee applications for monitoring and enforcement work performed . . . and that no additional notification would be made of such applications, and because additional notice would impose undue cost and burden[.]" (Order at 1-2, ECF No. 492.)

the Order weighs strongly in favor of this Motion. *See Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d. Cir. 1983) ("[A]n arms' length negotiated agreement among the parties [on fees] weighs strongly in favor of approval[.]"); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (recognizing in the fee award context the "general policy of the law to favor settlements"); *see also* Fed. R. Civ. P. 23(h), advisory committee notes (2003 Amendments) ("Courts have also given weight to agreements among the parties regarding the fee motion[.]").

### A. Plaintiffs' Counsel Has Been Engaged in Significant Monitoring and Enforcement Activity

The detailed, itemized time records attached to the Declaration of Marcia Robinson Lowry (Ex. 1, Decl. of Marcia Robinson Lowry In Supp. of Pls.' Unopposed Mot. for Pls.' Atty's' Fees and Expenses ("Lowry Decl."), Attach. B.) reflect the ongoing and active monitoring work that Plaintiffs' counsel has undertaken since this Court's approval of Plaintiffs' previous motion for attorneys' fees and expenses.

Plaintiffs filed a Motion for Contempt and for the Appointment of a Receiver in October 2010. (ECF No. 511.) Preparations for the hearing on this motion were underway when the Monitoring Period began. (Lowry Decl. ¶ 15.) Though the Court did not grant this motion, it refused to "excuse defendants" and recognized that "shortcomings" in Defendants' performance, as identified by Plaintiffs, "obviously do exist." (Order at 9-10, ECF No. 557.) The Court found it "likely" that "defendants could have met more of the requirements, or at least moved farther along in the process of meeting the requirements of [the Period 1 and 2 Implementation Plans] than they did" and ordered the parties to return to the bargaining table. (*Id.* at 7, 9.)

As a consequence of the Court's decision, the parties began the arduous task of negotiating a new remedial plan, one that would address the performance "shortcomings" recognized by the Court pursuant to the original Settlement Agreement, and incorporate

Defendants' roll-out of a new, statewide "Practice Model" a few regions at a time in an effort to improve child welfare practice. The lengthy negotiations included Plaintiffs, Defendants, and the Monitor, and necessitated several trips to Mississippi. The parties kept the Court updated on their progress throughout. (Lowry Decl. ¶ 16.)

The negotiations were ultimately successful and on July 6, 2012, This Court approved the Modified Settlement Agreement. (ECF No. 571.) This Agreement provides for both a statewide and region-by-region approach to reform; a set of child welfare infrastructure, standards, and outcomes that Defendants must meet within specified timeframes statewide; and a set that Defendants must meet within a phased-in, region-by-region timeframe specified by when those regions implement the Practice Model. Throughout the negotiations, Plaintiffs' goal was to establish realistic timelines without undermining the need for rapid improvement. (Lowry Decl. ¶ 17.)

Along with the Modified Settlement Agreement, the Parties negotiated the Period 3 Implementation Plan (the "Period 3 Plan"). (Modified Settlement Agreement, App. B, ECF No. 571.) The Period 3 Plan contains specific requirements that must be met by July 6, 2013, the end of the first twelve-month implementation period of the Modified Settlement Agreement. Among many other requirements, the Period 3 Plan requires Defendants to hire new Evaluation and Monitoring Unit staff; hire caseworkers in Hancock, Harrison, Hinds and Jackson counties; ensure that in the rest of Mississippi at least 75% of DFCS caseworkers' caseloads do not exceed the Modified Settlement Agreement caseload requirements and develop a Foster Care Unit with at least a Division Director, a Medical-Mental Health Specialist, and six workers. (Lowry Decl. ¶ 18.)

Since the Modified Settlement Agreement and the Period 3 Plan were finalized, Plaintiffs have been in frequent contact with Defendants and the Monitor to discuss the status of implementation, address areas of noncompliance, and negotiate necessary remedial actions. Plaintiffs' Counsel also made one trip to Mississippi for a parties' meeting with Defendants, their counsel, and key outside consultants to discuss the status of the Modified Settlement Agreement with greater efficiency and productivity. (*Id.* ¶ 19.)

Further, in June 2012, the Monitor filed her latest status report, which included a case record review. Plaintiffs commented on pre-filing versions of the Monitor's report and analyzed the final version to determine whether Defendants' progress was on track and how to ensure any necessary steps were taken to further progress. (*Id.* ¶ 20.)

In addition, Plaintiffs regularly review documents and data provided by Defendants in order to take necessary action when problems are identified. These documents and data include: (i) reports on the progress of the Practice Model rollout drafted by an outside consultant; (ii) reports on county, region and state performance created by the DFCS Continuous Quality Improvement Unit; (iii) Serious Incident Reports concerning alleged abuse and/or neglect involving members of the Plaintiff Class; and (iv) data reports related to specific outcomes produced pursuant to the Modified Settlement Agreement. (*Id.* ¶ 21.)

Plaintiffs also engaged in negotiations with Defendants regarding the appropriate rate at which therapeutic group homes should be compensated. The parties disagreed on whether the rate proposed by an outside consultant retained pursuant to the Settlement Agreement was based on a sound methodology and whether it was adequate to meet the needs of the children placed in those group homes. These negotiations concluded with an agreement to significantly raise the rates to be paid to these placement providers. (*Id*. ¶ 22.)

### B. The Amount of Attorneys' Fees and Expenses Negotiated by the Parties Is Reasonable

Plaintiffs' counsel is entitled to compensation for all hours reasonably expended in post-judgment monitoring and enforcement activities as well as all hours reasonably expended in fee-related work. *See Walker,* 99 F.3d at 767; *Cooper*, 945 F. Supp. at 948; *Volk*, 262 F.3d at 536. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003).

As demonstrated above, the work for which Plaintiffs request compensation was reasonably performed and necessary to secure the benefits of the Settlement Agreement and the Modified Settlement Agreement for all members of the Plaintiff Class. (Lowry Decl. ¶ 23.) Plaintiffs' Attorneys maintained contemporaneous and specific records of the monitoring and enforcement work for which they seek compensation. (*Id.* ¶ 9.) These records, submitted as Attachment B to the Lowry Declaration, provide a detailed account of the work performed by each individual. The Court is also respectfully referred to the Lowry Declaration for a detailed discussion of the internal record-keeping and billing practices of Children's Rights. (*see Id.* ¶¶ 8-9.) Class Counsel's time entries contain sufficient detail to demonstrate that the tasks performed were necessary to the effective enforcement and monitoring of the Settlement Agreement and the Modified Settlement Agreement, and that the hours were reasonably expended. *See Hensley*, 461 U.S. 424, 437 n.12 ("Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended."); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995) ("[W]e are mindful that practical considerations of

the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour.").

Class Counsel has made a concerted effort throughout the post-judgment period to keep the number of staff working on the case to a minimum and to make work assignments appropriate to individual attorneys' and paralegals' levels of experience. (Lowry Decl. ¶ 11.) All time entries have been carefully reviewed, and Class Counsel has excluded a total of 394.25 hours from this application that might be considered excessive, redundant or otherwise unnecessary to enforcing the Settlement Agreement. (*Id.* ¶ 10.) Entries that might be deemed too vague have similarly been excluded. (*Id.*) The 394.25 hours excluded from this application in the exercise of billing judgment represent $60,646.39 in potential fees, for which Plaintiffs do not seek compensation.

The hourly attorney, legal intern, and paralegal rates agreed upon by the Parties for Class Counsel's post-judgment work are the same rates used to calculate the agreed-upon fee awarded for Class Counsel's work on behalf of Plaintiffs through the fairness hearing. (*Id.* ¶ 13.) These rates, which are below Class Counsel's regular rates and the prevailing community attorney rates,[3] raised no objections by any Class member and were deemed reasonable by this Court in its approval of Plaintiffs' initial unopposed motion for attorneys' fees. (*See* Consent Order, ECF No. 480.) Plaintiffs' Counsel's attorney and paralegal hourly rates are reasonable.

### C. The Expenses To Be Paid to Plaintiffs Pursuant to the Parties' Agreement Are Reasonable

As the Fifth Circuit has held, "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client."

---

[3] *See* Decl. of Marcia Robinson Lowry, ¶ 14, ECF No. 472-3.

9

*Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bldg.*, 919 F.2d 374, 380 (5th Cir. 1990).  In support of Plaintiffs' request for reimbursement of their out-of-pocket expenses, Plaintiffs submit a detailed list of all expenditures sought.  (Lowry Decl. ¶ 12.)  The majority of the out-of-pocket expenses are associated with the trips that Children's Rights attorneys made to Mississippi and elsewhere for monitoring-related meetings.  Plaintiffs' Counsel made a concerted effort to minimize the number of these trips as well as their cost, and all trips made were necessary to the effective and successful monitoring of this case.  (*Id.*)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for an award of reasonable attorneys' fees and expenses in the amount of $288,401.98.

Respectfully submitted this 8th day of February, 2013.

/s/ *Miriam Ingber*
Miriam Ingber (MBN 46823 *pro hac vice*)
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Sarah Russo (MBN 46802 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York  10001
Telephone: (212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi  39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

Christian Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, New York  10154
Telephone: (212) 407-4000

John Lang (MBN 43987 *pro hac vice*)
Attorney at Law
Suite 4600
60 East 42nd Street
New York, NY 10165


*PLAINTIFFS' COUNSEL*

## CERTIFICATE OF SERVICE

I, Marcia Robinson Lowry, do hereby certify that on February 8, 2013, I electronically filed the foregoing Plaintiffs' unopposed Motion for Plaintiffs' Attorneys' Fees and Expenses using the ECF system, which sent notification of such filing to the following:

>Dewitt L. ("Rusty") Fortenberry Jr., Esq.
>Kenya Key Rachal, Esq.
>Ashley Tullos Young, Esq.
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
>428 I-555 North Meadowbrook Office Park
>Jackson, Mississippi 39211
>Telephone: (601) 351-2400
>
>Harold E. Pizzetta, III, Esq.
>Assistant Attorney General
>General Civil Division
>Carroll Gartin Justice Building
>430 High Street
>Jackson, Mississippi  39201

SO CERTIFIED this 8th day of February, 2013.

>*/s/ Miriam Ingber*
>Miriam Ingber