# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                                          PLAINTIFFS

v.                                                         CIVIL ACTION NO. 3:04cv251LN

PHIL BRYANT, as Governor of the State of Mississippi, *et al.*        DEFENDANTS

## DECLARATION OF MARCIA ROBINSON LOWRY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

1.      I, Marcia Robinson Lowry, am a member of the Bar of New York and admitted to practice in this Court *pro hac vice*. I serve as co-lead counsel for the Plaintiff Class in this case. I am the Executive Director of Children's Rights ("CR"), and I have been responsible for the supervision and conduct of my organization's work in this case. I give this Declaration in support of Plaintiffs' Unopposed Motion for Plaintiffs' Attorneys' Fees and Expenses ("Plaintiffs' Motion").

2.      I graduated from New York University School of Law in 1969. I have been an attorney litigating child welfare cases since 1970. For six years I was the Director of the Children's Rights Project of the New York Civil Liberties Union, where I instituted and directed a program of litigation to reform the New York City child welfare system. From 1979 until 1995, I was the Project Director of the Children's Rights Project of the American Civil Liberties Union, where I directed major litigation efforts in jurisdictions throughout the United States designed to promote systemic reform of child welfare systems. In 1995, I carried this work over to CR, which I founded.

3.  I have been counsel in over 20 class-action lawsuits, representing hundreds of thousands of children against systems that have failed to provide lawful child welfare services, including:

- *Baby Neal v. Casey*, a class action against the Philadelphia child welfare system and the Pennsylvania public welfare department for failure to comply with constitutional standards and applicable federal statutes;

- *Brian A. v. Sundquist*, a class action against the Tennessee child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Carson P. v. Heineman*, a class action against the Nebraska child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Charlie H. v. Whitman*, a class action against the New Jersey child welfare system and the state of New Jersey for failure to comply with constitutional standards and applicable federal law;

- *D.G. v. Henry*, a class action against the Oklahoma child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Dwayne B. v. Granholm*, a class action against the Michigan child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *E.C. v. Blunt*, a class action against the Missouri governor and child welfare officials challenging the facial validity of an adoption assistance law on constitutional and statutory grounds;

- *Foster Children Bonnie L. v. Bush*, a class action against the Florida child welfare system and the state of Florida concerning violation of foster children's rights under federal and constitutional law;

- *G.L. v. Zumwalt*, a class action challenging federal statutory and constitutional infirmities within the foster care system in Kansas City, Missouri;

- *Jeanine B. v. Thompson*, a class action against the Milwaukee County child welfare system and state of Wisconsin for failure to comply with local laws, federal statutes, and federal constitutional

2

protections applying to children at risk for placement or in foster care;

- *Joseph A. v. N.M. Dept. of Human Services*, a federal statutory and constitutional challenge to the foster care system in the state of New Mexico brought on a class basis;

- *Juan F. v. Rell*, a class action against the Connecticut social services system, based on failure to comply with constitutional standards and applicable federal statutes;

- *Kenny A. v. Perdue*, a class action against the Governor of Georgia and other state officials concerning violation of foster children's rights in DeKalb and Fulton Counties, Georgia, under federal and constitutional law;

- *LaShawn v. Barry*, a class action against the District of Columbia child welfare system for failure to comply with constitutional standards, federal statutes, and applicable District of Columbia law;

- *Marisol A. v. Giuliani*, a class action against New York City and State, regarding all aspects of New York City's child welfare system, for failure to comply with federal constitutional, federal statutory, state constitutional, state statutory, and state regulatory standards;

- *Sheila A. v. Finney*, a class action in state court against the Kansas child welfare system based on violations of state, federal statutory, and federal constitutional law; and

- *Wilder v. Sugarman*, a challenge to New York's statutory scheme for the provision of foster care services on the grounds of racial and religious discrimination and violation of the establishment and free exercise clauses of the First Amendment.

4.     During my professional involvement in the above class-action litigation, I have directly participated in and supervised the monitoring and enforcement of more than ten class-wide settlements with state or local government officials requiring the wholesale reform of child welfare systems.

3

5.      Pursuant to 42 U.S.C. § 1988 and Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs request that the Court approve the Parties' settlement regarding Plaintiffs' attorneys' fees and expenses for the necessary post-judgment monitoring and enforcement work performed on behalf of the Plaintiff Class during the period from January 1, 2011 through August 31, 2012 (the "Monitoring Period").  Defendants have agreed to pay Plaintiffs' attorneys $288,401.98 to settle all claims for attorneys' fees and expenses undertaken and incurred during the Monitoring Period.  This agreed-upon total includes $269,868.75 in fees for reimbursement of 1,304.68 hours expended on this case by Plaintiffs' attorneys (1078.18 hours), legal interns (10.60 hours), and paralegals (215.90 hours).  The fees settlement represents a reduction, undertaken by Plaintiffs' attorneys in the exercise of billing judgment, of 394.25 hours of lawyer, legal intern, and paralegal work totaling $60,646.39.  The fees settlement provides for payment of $18,533.23 to Plaintiffs for reimbursable out-of-pocket expenses such as travel and copying.

6.      In addition to my own work on the case, I supervised the various lawyers, legal interns, and paralegals at CR who worked on enforcing the Mississippi Settlement Agreement and Reform Plan ("Settlement Agreement") approved on January 4, 2008 and the Modified Mississippi Settlement Agreement and Reform Plan ("Modified Settlement Agreement") approved on July 6, 2012.  I am familiar with CR's policies, practices, and procedures governing the recording and maintenance of time and expense records.  I supervised staffing levels throughout the Monitoring Period and assigned attorneys to tasks only as reasonably necessary to provide suitable representation to the Plaintiff Class.

7.      Attachment A to this Declaration is a summary of CR's costs during the Monitoring Period, including the total billable hours performed by CR staff and the case expenses CR advanced.  Attachment B is the compilation of itemized time records on which the attorneys'

4

fees portion of Attachment A is based. Attachment C is the compilation of compensable case expenses advanced by CR on behalf of the Plaintiff Class for the Monitoring Period, itemized by category of expense.

8.      The compilation of itemized records set forth in Attachments B and C were both generated from a database of entries created in the ordinary course of CR's business, by persons with actual knowledge of the events recorded at or about the time of the events recorded, and which have been maintained in the ordinary course of CR's business. Each compilation has been personally reviewed by a senior-level attorney who worked on this case, and charges have been reduced or written-off that were deemed, in the exercise of billing judgment, excessive or non-compensable. These compilations of CR's time and expense records and their summary in Attachment A are an accurate and reliable account of both the work performed and the compensable expenses incurred by CR during the Monitoring Period.

9.      Moreover, during the period covered by Plaintiffs' Motion, it was the consistent policy and business practice of CR to require each attorney, paralegal, and legal intern to maintain contemporaneous and specific records of all time worked in a particular case, and for such records to be entered in a computerized billing system. All of the CR employees who worked on this case complied. Each employee received a weekly printout of their billing hours, reviewed the records for accuracy, and corrected any billing errors. Thus, these records, submitted in Attachment B, are an accurate statement of the time spent providing legal services to the Plaintiff Class for which CR seeks compensation. I attest that all of the hours submitted in Attachment B were reasonable and necessary in order to furnish adequate representation for Plaintiffs.

5

10.     As an exercise of responsible billing discretion, hours that might be viewed as excessive, redundant, vague, or otherwise unnecessary to this litigation—a total of 394.25 hours—have been excluded.

11.     In addition to following responsible billing practices, I have consistently and continuously made reasonable efforts to balance the workloads of the attorneys, legal interns, and paralegals working on this case, ensuring that the work assigned to them was commensurate with their level of experience.  I have made every effort to keep the number of staff assigned to the case to a minimum while making certain the case was appropriately staffed at all times: each of the attorneys, legal interns, and paralegals working on this case had the ability and experience to perform the work assigned to him or her at a high degree of professionalism and was appropriately supervised.

12.     Throughout the litigation, I also made diligent efforts to limit expenses.  CR devoted $18,533.23 in out-of-pocket expenses to this case over the Monitoring Period.  The parties' agreed-upon expense reimbursement reflects a discount of the actual reimbursable costs incurred by Plaintiffs.  I submit as Attachment C to this Declaration a detailed, itemized list of reimbursable expenses for CR.  The majority of the expenses incurred by CR in connection with this litigation were travel expenses.  The trips by CR attorneys to Mississippi and elsewhere for meetings with stakeholders, meetings with local co-counsel, and conferences with Defendants and the court-appointed Monitor were all necessary to effectively monitor and enforce compliance with the terms of the Settlement Agreement and the Modified Settlement Agreement.  I, along with the other CR attorneys working on this case, made concerted efforts to minimize the number and cost of trips to Mississippi, as well as the number of attorneys who participated in each trip.

13.     The Parties' fees agreement reflects the same agreed-upon rates as were applied in the Parties' settlements of Plaintiffs' claims for fees and expenses for work undertaken during the first seven years of litigating this case.  For purposes of calculating Plaintiffs' fee award for hours worked during the Monitoring Period the following rates were used and agreed to by the parties: Marcia Robinson Lowry (Children's Rights) – $303.75 per hour; Shirim Nothenberg (Children's Rights) – $270.00 per hour; Miriam Ingber (Children's Rights) – $270.00; Sarah Russo (Children's Rights) - $189.00 per hour; Jessica Polansky (Children's Rights) – $189.00 per hour; legal interns – $135.00 per hour; paralegals – $108.00 per hour.  Travel hours for CR attorneys were billed at half of these rates.  These rates were approved as reasonable by this Court by Order dated May 9, 2008.  As reflected in my May 9, 2008 Declaration submitted to the Court in support of that previous motion, these rates are well below Plaintiffs' Counsel's regular rates and the prevailing rates to which they are entitled.  (*see* Decl. of Marcia Robinson Lowry ¶ 14, ECF No. 472-3.)

14.     The detailed time records contained in Attachment B to this declaration, reflect the ongoing and active monitoring work that Plaintiffs' Counsel have undertaken in the time since this Court's approval of Plaintiffs' previous motion for attorneys' fees and expenses.

15.     Plaintiffs filed a Motion for Contempt and for the Appointment of a Receiver in October 2010. (ECF No. 511.)  Preparations for the hearing on this motion were underway when the Monitoring Period began. Though the Court did not grant this motion, it refused to "excuse defendants" and recognized that "shortcomings" in Defendants' performance, as identified by Plaintiffs, "obviously do exist."  (Order at 9-10, ECF No. 557.)  The Court found it "likely" that "defendants could have met more of the requirements, or at least moved farther along in the process of meeting the requirements of [the Period 1 and 2 Implementation Plans] than they did"

and ordered the parties to return to the bargaining table. (*Id.* at 7, 9.)

16.     As a consequence of the Court's decision, the parties began the arduous task of negotiating a new remedial plan, one that would address the performance "shortcomings" recognized by the Court pursuant to the original Settlement Agreement, and incorporate Defendants' roll-out of a new, statewide "Practice Model" a few regions at a time in an effort to improve child welfare practice. The lengthy negotiations included Plaintiffs, Defendants, and the Monitor, and necessitated several trips to Mississippi. The parties kept the Court updated on their progress throughout.

17.     The negotiations were ultimately successful and on July 6, 2012, This Court approved the Modified Settlement Agreement. (ECF No. 571.) This Agreement provides for both a statewide and region-by-region approach to reform; a set of child welfare infrastructure, standards and outcomes that Defendants must meet within specified timeframes statewide; and a set that Defendants must meet within a phased-in, region-by-region timeframe specified by when those regions implement the Practice Model. Throughout the negotiations, Plaintiffs' goal was to establish realistic timelines without undermining the need for rapid improvement.

18.     Along with the Modified Settlement Agreement, the Parties negotiated the Period 3 Implementation Plan (the "Period 3 Plan"). (Modified Settlement Agreement, App. B, ECF No. 571.) The Period 3 Plan contains specific requirements that must be met by July 6, 2013, the end of the first twelve-month implementation period of the Modified Settlement Agreement. Among many other requirements, the Period 3 Plan requires Defendants to hire new Evaluation and Monitoring Unit staff; hire caseworkers in Hancock, Harrison, Hinds and Jackson counties; ensure that in the rest of Mississippi at least 75% of DFCS caseworkers' caseloads do not exceed

the Modified Settlement Agreement caseload requirements; and develop a Foster Care Unit with at least a Division Director, a Medical-Mental Health Specialist, and six workers.

19. Since the Modified Settlement Agreement and the Period 3 Plan were finalized, Plaintiffs have been in frequent contact with Defendants and the Monitor to discuss the status of implementation, address areas of noncompliance, and negotiate necessary remedial actions. Plaintiffs' counsel also made one trip to Mississippi for a parties' meeting with Defendants, their counsel, and key outside consultants to discuss the status of the Modified Settlement Agreement with greater efficiency and productivity.

20. Further, in June 2012, the Monitor filed her latest status report, which included a case record review. Plaintiffs commented on pre-filing versions of the Monitor's report and analyzed the final version to determine whether Defendants' progress was on track and how to ensure any necessary steps were taken to further progress.

21. In addition, Plaintiffs regularly review documents and data provided by Defendants in order to take necessary action when problems are identified. These documents and data include: (i) reports on the progress of the Practice Model rollout drafted by an outside consultant; (ii) reports on county, region and state performance created by the DFCS Continuous Quality Improvement Unit; (iii) Serious Incident Reports concerning alleged abuse and/or neglect involving members of the Plaintiff Class; and (iv) data reports related to specific outcomes produced pursuant to the Modified Settlement Agreement.

22. Plaintiffs also engaged in negotiations with Defendants regarding the appropriate rate at which therapeutic group homes should be compensated. The parties disagreed on whether the rate proposed by an outside consultant retained pursuant to the Settlement Agreement was based on a sound methodology and whether it was adequate to meet the needs of the children placed in

those group homes. These negotiations concluded with an agreement to significantly raise the rates to be paid to these placement providers.

23. All of the work detailed above was reasonable and necessary to ensure implementation by Defendants of the parties' settlement agreements and that the benefits of these agreements are realized by the Plaintiff Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of February, 2013.

_____
Marcia Robinson Lowry

Sworn to before me this
8th day of February, 2013

_____
Notary Public

**ADAM DEMBROW**
**NOTARY PUBLIC-STATE OF NEW YORK**
No. 02DE6213275
Qualified in Kings County
My Commission Expires November 02, 2013