# EXHIBIT 1

**INITIAL PERIOD 4 IMPLEMENTATION PLAN**

This is the Initial Period 4 Implementation Plan required by Section I.D of the Modified Mississippi Settlement Agreement and Reform Plan (the "Modified Settlement Agreement" or "MSA"). Period 4 shall run for a 12-month period beginning on July 7, 2013. Defendants shall substantially comply with the Period 4 Implementation Plan requirements by the end of Period 4, or earlier, as specified herein.

The Parties acknowledge that, as applicable, the ongoing obligations of the Period 3 Implementation Plan remain in effect.[1]

## I. Reform Planning and Implementation

A. Implementation Period 3 will conclude before Defendants have produced the accurate and validated reports required by the Period 3 Implementation Plan. Therefore, the Parties and the Monitor have not been able to utilize such reports as intended for monitoring purposes during Implementation Period 3. Therefore, the Parties, working with the Monitor, shall revisit this Initial Period 4 Implementation Plan by December 1, 2013 and renegotiate its scope to determine what, if any, additional requirements must be added.

B. The Final Period 4 Implementation Plan will be finalized no later than January 8, 2014, and will reflect the additional steps, if any, Defendants must take by the end of Period 4. The time period from December 1, 2013 to January 8, 2014 shall be termed the "Negotiation Period."

## II. Administration and Management Implementation Steps

### A. Human Resources Management

1. By August 15, 2013, the Monitor shall determine whether to approve Defendants' April 8, 2013 Workforce Development Plan (the "Plan"), as described in Section I.A.2.b of the Period 3 Implementation Plan. If the Monitor does not approve the Plan, Defendants shall expeditiously revise the Plan and resubmit it to the Monitor, and the Monitor shall expeditiously review the revised Plan and determine whether to approve it. Once approved, Defendants shall implement the Plan in accordance with its terms.

### B. Continuous Quality Improvement

1. Within 60 business days of completing each CQI Review set forth in the sections below, Defendants shall complete a report regarding that review. Within five business days of completing each report, Defendants shall provide a copy of the report to Plaintiffs and the Monitor.

---

[1] These obligations include those set forth in the following sections of the Period 3 Implementation Plan: I.A.1.a-c; I.A.2.a and c.4-6; I.A.3.a.2 and a.4; I.B.1; I.B.2; I.B.3; I.B.6; I.B.19; I.C; I.D.3; I.F.1; II.B.2; II.B.3; II.B.4; II.B.5.a and 5.d-f; II.C.2; II.C.4; II.D; II.E; II.F.1; II.G.1; and II.H.2.

  a) By August 1, 2013, Defendants shall complete a third follow-up CQI Review for Regions I-South and II-West.

  b) By August 15, 2013, Defendants shall complete a follow-up CQI Review for Region III-North.

  c) By September 1, 2013, Defendants shall complete a second follow-up CQI Review for Region IV-North.

  d) By October 1, 2013, Defendants shall complete a second follow-up CQI Review for Region IV-South.

  e) By November 1, 2013, Defendants shall complete a second follow-up CQI Review for Region III-South.

  f) By December 1, 2013, Defendants shall complete a second follow-up CQI Review for Region I-North.

  g) By January 1, 2014, Defendants shall complete a follow-up CQI Review for Region VII-West.

  h) By February 1, 2014, Defendants shall complete a follow-up CQI Review for Region VI.

  i) By March 1, 2014, Defendants shall complete a follow-up CQI Review for Region II-East.

  j) By April 1, 2014, Defendants shall complete a third follow-up CQI Review for Region V-West.

  k) By May 1, 2014, Defendants shall complete a second follow-up CQI Review for Region V-East.

  l) By June 1, 2014, Defendants shall complete a second follow-up CQI Review for Region VII-East.

**C. Information Use and Management**

1. Pursuant to the Project Schedule for Defendants' Production of Data Reports Required by Appendix C of the Modified Settlement Agreement, dated June 24, 2013 (Dkt. No. 589), Defendants shall produce to the Monitor and Plaintiffs complete, accurate and validated data reports on a monthly basis and at such other intervals as required by the Modified Settlement Agreement.

  a) The first production of each report shall contain all reports that were due during Implementation Period 3 (starting with the month of July 2012) through the most recent month. The parties recognize that it may not be

Case 3:04-cv-00251-HSO-ASH   Document 590-1   Filed 07/18/13   Page 4 of 10

Modified Mississippi Settlement Agreement And Reform Plan

      possible to produce the FCR Reports starting with the report from the month of July 2012; however, Defendants will produce all available FCR Reports.

    b) With the exception of the FCR Reports, each monthly report shall contain data about the most recent month, separate from information about any prior months, except as otherwise required by the Modified Settlement Agreement. Reports may also contain information aggregated in other ways.

    c) Data reports shall be produced in a live excel file or comparable format for ease of use by the Monitor and Plaintiffs.

2. Defendants shall produce to the Monitor and Plaintiffs accurate and validated reports as set forth in Appendix 1.

    a) With the exception of Report Nos. 5 and 6 as identified in Appendix 1, the first production of each report shall contain all reports that were due during Implementation Period 4 (starting with the month of July 2013) through the most recent month.

    b) With the exception of Report Nos. 3, 4, 7 and 8 as identified in Appendix 1, each monthly report shall contain data about the most recent month with available data, separate from information about any prior months. Reports may also contain information aggregated in other ways.

    c) Data reports shall be produced in a live excel file or comparable format for ease of use by the Monitor and Plaintiffs.

3. During the Negotiation Period, the parties, in consultation with the Monitor, shall develop a process and detailed timeline for production of those reports listed in Appendix 2, including the method by which each report shall be produced (i.e., MACWIS, FCR, manual or other). The parties recognize that it may be necessary to make modifications to Appendix 2 during the Negotiation Period.

4. The parties recognize that certain information required by the MSA cannot currently be captured by reports. The parties agree that this information will be collected through case record reviews conducted in consultation with the Monitor.[2]

---

[2] Specifically, this information includes, but may not be limited to:
- All therapeutic resource parents who have 1 or more foster children residing in the home shall be visited in the home at least once per month by their private agency caseworker. (MSA § II.A.2.d.2.a).
- When a maltreatment investigation involves a resource home, DFCS shall file a copy of the approved final investigative report, and any recommendations and/or corrective actions DFCS has deemed necessary, in the case record of the foster child, in the file of the foster or adoptive parents with a copy of the letter of notification to the foster or adoptive parents, and in the DFCS State Office. DFCS shall also provide those records to the Youth Court Judge with jurisdiction over the child and to the Monitor. (MSA § II.B.1.e.4).
- When a maltreatment investigation involves an agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS, a copy of the final investigative report shall be filed in the child's case record, in the DFCS State Office licensing file, and sent to the licensed

### III. Foster Care Services Assessment

#### A. Child Safety

1. By July 31, 2013, Defendants will provide to the Monitor all investigative reports described in Sections II.B.1.e.4 and 5 of the Modified Settlement Agreement for the time period from January 1, 2012 through January 31, 2013 that have not been previously provided.

2. By July 31, 2013, Defendants shall provide to Plaintiffs and the Monitor a protocol for accurately identifying and producing to the Monitor all investigative reports described in Sections II.B.1.e.4 and 5 of the Modified Settlement Agreement. Once approved by the Monitor, Defendants shall implement the protocol in accordance with its terms.

3. By September 1, 2013, the Monitor shall determine whether to approve the recommendations set forth in Defendants' July 8, 2013 FM Fatality Assessment, as described in Section II.C.1 of the Period 3 Implementation Plan (the "Recommendations"). If the Monitor does not approve the Recommendations, Defendants shall expeditiously revise the Recommendations and resubmit the Recommendations to the Monitor, and the Monitor shall expeditiously review the revised Recommendations and determine whether to approve them. Once approved, Defendants shall implement the Recommendations in accordance with their terms.

#### B. Recruitment and Retention of Resource Families and Therapeutic Service Providers

1. Defendants will continue to make all reasonable efforts, in conjunction with other state agencies, to ensure the timely resubmission of the Treatment Foster Care per diem rate of $131.00 to the Centers for Medicare and Medicaid Services, and to seek approval by the Centers for Medicare and Medicaid Services for the Treatment Foster Care per diem rate of $131.00.

2. By August 2, 2013, Defendants agree to provide Plaintiffs and the Monitor with a draft notice to all therapeutic group homes informing them about the intensive outpatient services rate of approximately $122.00 per day available from the Division of Medicaid. This notice must be accessible to the lay reader, and must contain information about (i) the intensive outpatient services rate and how it is different from the current "fee for service" payment structure; (ii) how a provider can obtain information about the eligibility and/or certification requirements; and (iii) contact information for a hotline and/or another point of contact regarding (i) and (ii). The notice must be finalized and provided to all therapeutic group homes by no later than August 16, 2013.

---

provider facility. DFCS shall provide the report to the Youth Court Judge with jurisdiction over the child and to the Monitor. (MSA § II.B.1.e.5).

Page 4 of 6

3. By September 30, 2013, Defendants shall meet the Year 3 requirements as set forth in its implementation plan for the Diligent Recruitment of Families for Children as shown in Appendix "D" to the Modified Settlement Agreement.  The implementation plan for the Diligent Recruitment of Families for Children shall become an enforceable part of this Initial Period 4 Implementation Plan.

**AGREED TO BY:**

/s/ Miriam Ingber
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Miriam Ingber (MBN 46823 *pro hac vice*)
CHILDREN'S RIGHTS
330 Seventh Avenue, 4th Floor
New York, New York 10001
Telephone: (212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi 39201
Telephone: (601) 948-8000

John Lang (MBN 43987 *pro hac vice)*
Christina D. Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB, LLP
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4000

*PLAINTIFFS' COUNSEL*

/s/ Dewitt L. ("Rusty") Fortenberry, Jr.
Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Kenya Key Rachal (MSB # 99227)
Ashley C. Tullos (MSB # 101839)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
P.O. Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400

Harold Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, Mississippi 39201

*DEFENDANTS' COUNSEL*

# APPENDIX 1
## Initial Period 4 Implementation Plan

| | **Data Report** | **Report Type** | **Available Date** |
|---|---|---|---|
| 1. | For investigations of agency group homes, emergency shelters, and private child placing agency resource homes, DFCS shall undertake a separate investigation of the contract provider's compliance with DFCS licensure standards. *(MSA II.B.1.e.6)* | Manual | November 1, 2013 |
| 2. | All relative placements approved for expedited placement shall undergo the full licensing procedure within 90 calendar days of the child's placement in the home. *(MSA II.B.2.c; MSA II.B.2.p.3; MSA II.B.2.p.5)* | Manual | November 1, 2013 |
| 3. | Percent of children with a permanency goal of reunification that have service plans for their parents that identify those services DFCS deems necessary to address the behaviors or conditions resulting in the child's placement in foster care, and case record documentation that DFCS made those identified services available directly or through referral. *(MSA III.B.3.d.4-5)* | FCR | April 1, 2014 |
| 4. | Children in custody with the primary permanency goal of adoption shall have an assigned adoption specialist and an adoption plan that identifies the child-specific activities that Defendants will undertake to achieve adoption and the timeframes in which the activities will be undertaken. An adoption status meeting with the DFCS caseworker, the adoption specialist, and the caseworker's direct supervisor to review the progress being made in achieving the goal of adoption shall occur weekly for infants and monthly for all other children awaiting adoption, and shall be noted in the child's case record. *(MSA II.B.7.a; MSA II.B.7.c.3)* | FCR | April 1, 2014 |
| 5. | No more than 30% of resource homes shall provide care to a number of children in excess of the Modified Settlement Agreement resource home population limits. *(MSA II.B.2.p.10)* | MACWIS | May 31, 2014[1] |
| 6. | No more than 10% of foster children shall be moved from his/her existing placement to another foster placement unless DFCS specifically documents in the child's case record justifications for that move and the move is approved by a DFCS supervisor. *(MSA II.B.2.q.4)* | MACWIS | May 31, 2014[2] |
| 7. | All caseworkers shall receive a minimum of 40 hours of structured ongoing in-service training each year. *(MSA II.A.2.c.7.a)* | Manual | End of IP4[3] |
| 8. | All supervisors shall receive a minimum of 24 hours annual on-going in-service training each year. *(MSA II.A.2.c.7.a)* | Manual | End of IP4[4] |

---

[1] Data availability may be limited initially for those fields that require a MACWIS system change.
[2] Data availability may be limited initially for those fields that require a MACWIS system change.
[3] Annual report.
[4] Annual report.

1

**APPENDIX 2**
**Initial Period 4 Implementation Plan**

|   | Data Report |
|---|---|
| 1. | Within 30 days of the completion of any investigation of maltreatment of a child in custody DFCS shall review the maltreatment investigation in the manner set forth in the MSA.  *(MSA II.B.1.d)* |
| 2. | Defendants shall ensure that all licensed resource families receive at least the minimum reimbursement rate for a given level of service as established pursuant to the MSA.  *(MSA II.A.7.a)* |
| 3. | When a maltreatment investigation involves a resource home, DFCS shall file a copy of the approved final investigative report, and any recommendations and/or corrective actions DFCS has deemed necessary, in the case record of the foster child, in the file of the foster or adoptive parents with a copy of the letter of notification to the foster or adoptive parents, and in the DFCS State Office. DFCS shall also provide those records to the Youth Court Judge with jurisdiction over the child and to the Monitor.  *(MSA II.B.1.e.4)* |
| 4. | When a maltreatment investigation involves an agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS, a copy of the final investigative report shall be filed in the child's case record, in the DFCS State Office licensing file, and sent to the licensed provider facility. DFCS shall provide the report to the Youth Court Judge with jurisdiction over the child and to the Monitor.   *(MSA II.B.1.e.5)* |
| 5. | All foster care settings, including relative placements, shall be screened prior to the initial placement of foster children to ensure that children receive safe, sufficient, and appropriate care. Additional screens shall be completed at least once annually thereafter and within two weeks of a reported change in the residents of a resource home. Screens shall include criminal and child welfare background checks of all household members who are at least 14 years old. No foster child shall be placed in a home prior to DFCS receipt of the background check results.   *(MSA II.B.2.b; MSA II.B.2.p.1)* |
| 6. | DFCS caseworkers shall compile, maintain, and keep current complete child welfare case records.  *(MSA III.B.4.a )* |
| 7. | For all children entering foster care, a visitation plan for the child and his/her family shall be developed as part of the service plan. This visitation plan shall be developed and regularly updated in collaboration with parents, resource parents, and the child. If parental visitation is appropriate based on the above factors, this visitation plan shall include a minimum of two visits per month with the parents (unless a court order in the child's case limits such visits). For all children, regardless of permanency goal, this visitation plan shall include at least one visit per month with any siblings not in the same placement (unless a court order in the child's case limits such visits).  *(MSA III.B.5.a)* |
| 8. | DFCS shall make all reasonable efforts to ensure the continuity of a child's educational experience by keeping the child in a familiar or current school and neighborhood, when this is in the child's best interests and feasible, and by limiting the number of school changes the child experiences.  *(MSA III.B.6.c)* |
| 9. | DFCS shall assist youth in obtaining or compiling the following documents and such efforts shall be documented in the child's case record:<br>1. an identification card;<br>2. a social security or social insurance number; |

**APPENDIX 2**
**Initial Period 4 Implementation Plan**

|   |   |
|---|---|
|   | 3. a resume, when work experience can be described;<br>4. a driver's license, when the ability to drive is a goal;<br>5. an original copy of the youth's birth certificate;<br>6. religious documents and information;<br>7. documentation of immigration, citizenship, or naturalization, when applicable;<br>8. documentation of tribal eligibility or membership;<br>9. death certificates when parents are deceased;<br>10. a life book or a compilation of personal history and photographs, as appropriate;<br>11. a list of known relatives, with relationships, addresses, telephone numbers, and permissions for contacting involved parties;<br>12. previous placement information; and<br>13. educational records, such as a high school diploma or general equivalency diploma, and a list of schools attended, when age-appropriate. *(MSA III.B.7.d)* |
| 10. | An after-care plan shall be developed that identifies all of the services necessary to ensure that the conditions leading to the child's placement in foster care have been addressed, and that the child's safety and stability will be assured. *(MSA III.B.8.a)* |
| 11. | Before the end of any trial home visit period, there shall be a final family team meeting, which shall include the child's caseworker, the caseworker's supervisor, the child, and the parent or relative assuming custody, to determine the appropriateness of a final discharge. *(MSA III.B.8.c)* |