IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                                              PLAINTIFFS

v.                                                                 CIVIL ACTION NO. 3:04CV251LN

PHIL BRYANT, as Governor of the State of Mississippi, *et al.*        DEFENDANTS

**PLAINTIFFS' RESPONSE TO THE COURT MONITOR'S UPDATE TO THE COURT REGARDING PROGRESS DURING PERIOD 3 AS REFLECTED IN CERTAIN DATA REPORTS PRODUCED BY THE DEFENDANTS**

Plaintiffs respectfully submit this brief Response to the Court Monitor's Update to the Court Regarding Progress During Period 3 as Reflected in Certain Data Reports Produced by the Defendants, dated September 5, 2013 (Dkt. No. 591) (the "Update Report"). The Update Report was submitted to the Court in accordance with Section VI.B of the Modified Mississippi Settlement Agreement and Reform Plan (Dkt. No. 571) (the "MSA"), approved by the Court on July 6, 2012. The response below seeks to clarify the impact of Defendants' inability to produce reliable data during Implementation Period 3 ("Period 3"), and to offer some additional context as the Court considers the Monitor's findings.

It has been nearly a decade since Plaintiffs brought this class action, civil rights lawsuit in order to protect children from longstanding problems with the Mississippi child welfare system. Almost six years ago, in January 2008, the parties entered into the Mississippi Settlement

Agreement and Reform Plan (Dkt. No. 459). In 2012, the parties negotiated the MSA, which modified the terms of the original settlement agreement. The MSA takes into account Defendants' planned region-by-region implementation of a new Practice Model and recognized Defendants' failure to comply with the terms of the original agreement. Under the MSA, the parties jointly draft annual implementation plans, which outline the steps Defendants must undertake during each 12-month period in order to progress towards overall compliance with the MSA. (MSA § I.D). Period 3, which began on July 6, 2012, concluded on July 5, 2013.

By the conclusion of Period 3, Defendants should have provided one year of data based on 57 reports contained in MSA Appendix C. (*See* MSA App. B, Period 3 Implementation Plan (Dkt. No. 571 at 62) ("IP3") § I.D.1; *see also* MSA App. C, Proposed Data Reports Schedule (Dkt. No. 571 at 69)). As the Update Report notes, Defendants were unable to comply with this important obligation, and will not produce a complete set of Period 3 performance data until January 2014. (Update Report at 4-5).[1] Thus, the Update Report before the Court provides only "interim information regarding defendants' self-reported performance." (*Id*. at 5). None of these data have undergone the rigorous validation process required by the Monitor and set forth in the Data Reports Schedule.

Moreover, the Update Report analyzes only a subset of the reports that Defendants were required to produce documenting their progress during Period 3. (Update Report App. (Dkt. No. 591-1) at Ex. 1A). Indeed, the Monitor was able to include only 25 of the 57 required data reports in her analysis. (*Id*.). As a result, the Update Report does not include any analysis

---

[1] As a result of Defendants' failure to comply with these obligations, the Court issued an order setting forth a process and schedule for the production of accurate and validated data reports. (Project Schedule for Defs.' Produc. of Data Reports Required by App. C of the Modified Settlement Agreement (Dkt. No. 589) (the "Data Reports Schedule") at Attach. 1). These accurate and validated data reports will be produced on a rolling basis, beginning on September 1, 2013, with the final set of reports due by January 15, 2014. (*Id*.).

related to certain critical child welfare practices, including: case worker caseloads; training and supervision; placement stability for children in foster care; and family engagement in case planning. (*Id.*). The Update Report also fails to track children's access to physical and behavioral health services, dental care, and support for developmental and educational needs. (*Id.*). A total of 21 reports that could not be analyzed rely on Defendants' foster care review process. (*Id.*). As the Monitor noted, the quality of the data from the foster care review process was so concerning that it could not be analyzed at all. (Update Report at 3 n.5). In light of both the Update Report's limited scope and the potential unreliability of the data analyzed therein, Plaintiffs urge the Court to review these preliminary results with caution.

Defendants' inability to produce the validated data required during Period 3 also delayed the parties' negotiations and planning for Implementation Period 4 ("Period 4"), which began on July 6, 2013. The MSA requires the parties to jointly develop each implementation plan 90 days prior to the start of the implementation period. (MSA § I.E). Without reliable data documenting Defendants' compliance with the MSA, the parties were forced to limit the scope of their negotiations for Period 4 to those few topics that did not require validated data reports. As a result, the parties agreed out of necessity to bifurcate the planning process, coming to agreement on an Initial Implementation Period 4 Plan that requires the parties to reopen negotiations in December 2013, when most (though not all) of Defendants' Period 3 data will be available. (Initial Period 4 Implementation Plan (Dkt. No. 590-1) § I.A). Thus, the parties will not complete Period 4 planning until January 2014, at which point more than five months of Period 4 will have elapsed. (*Id.* § I.B). Defendants' delay in producing this critical data has thereby compromised the effectiveness of the parties' collaborative planning process and slowed the pace of reform.

In the months ahead, Plaintiffs look forward to reviewing the Monitor's forthcoming report documenting Defendants' Period 3 compliance, and to revisiting the goals for Period 4 reform with Defendants once progress during Period 3 can be reliably measured.

Respectfully submitted this 13th day of September, 2013.

/s/ *Miriam Ingber*
Marcia Robinson Lowry (MBN 43991 *pro hac vice*)
Miriam Ingber (MBN 46823 *pro hac vice*)
CHILDREN'S RIGHTS
330 7th Avenue, 4th floor
New York, New York 10001
Telephone: (212) 683-2210

W. Wayne Drinkwater, Jr. (MBN 6193)
BRADLEY ARANT ROSE & WHITE LLP
188 East Capitol Street, Suite 450
Jackson, Mississippi 39201
Telephone: (601) 948-8000

John Lang (MBN 43987 *pro hac vice*)
Christina Carbone (MBN 43986 *pro hac vice*)
John Piskora (MBN 44474 *pro hac vice*)
LOEB & LOEB LLP
345 Park Ave.
New York, New York 10154
Telephone: (212) 407-4000

*PLAINTIFFS' COUNSEL*

## CERTIFICATE OF SERVICE

I, Miriam Ingber, do hereby certify that on September 13, 2013, I electronically filed a true and correct copy of the foregoing document with the Clerk of court using the ECF system which sent notification of such to the following:

>Dewitt L. ("Rusty") Fortenberry Jr., Esq.
>Kenya Key Rachal, Esq.
>Ashley C. Tullos, Esq.
>BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
>428 I-555 North Meadowbrook Office Park
>Jackson, Mississippi 39211
>Telephone: (601) 351-2400
>
>Harold E. Pizzetta, III, Esq.
>Assistant Attorney General
>General Civil Division
>Carroll Gartin Justice Building
>430 High Street
>Jackson, Mississippi  39201

SO CERTIFIED this 13th day of September, 2013.

>/s/ *Miriam Ingber*
>Miriam Ingber

5