IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| OLIVIA Y., *et al.* | PLAINTIFFS |
| v. | CIVIL ACTION NO. 3:04cv251LN |
| PHIL BRYANT, as Governor of the State of Mississippi, *et al.* | DEFENDANTS |

## DECLARATION OF MARCIA ROBINSON LOWRY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

1. I, Marcia Robinson Lowry, am a member of the Bar of New York and am admitted to practice in this Court *pro hac vice*. I serve as co-lead counsel for the Plaintiff Class in this case. I am the Executive Director of Children's Rights ("CR"), and I have been responsible for the supervision and conduct of my organization's work in this case. I give this Declaration in support of Plaintiffs' Unopposed Motion for Plaintiffs' Attorneys' Fees and Expenses ("Plaintiffs' Motion").

2. I graduated from New York University School of Law in 1969. I have been an attorney litigating child welfare cases since 1970. For six years I was the Director of the Children's Rights Project of the New York Civil Liberties Union, where I instituted and directed a program of litigation to reform the New York City child welfare system. From 1979 until 1995, I was the Project Director of the Children's Rights Project of the American Civil Liberties Union, where I directed major litigation efforts in jurisdictions throughout the United States designed to promote systemic reform of child welfare systems. In 1995, I carried this work over to CR, which I founded.

3.     I have been counsel in over 20 class-action lawsuits, representing hundreds of thousands of children against systems that have failed to provide lawful child welfare services, including:

- *Baby Neal v. Casey*, a class action against the Philadelphia child welfare system and the Pennsylvania public welfare department for failure to comply with constitutional standards and applicable federal statutes;

- *Brian A. v. Sundquist*, a class action against the Tennessee child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Carson P. v. Heineman*, a class action against the Nebraska child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Charlie H. v. Whitman*, a class action against the New Jersey child welfare system and the state of New Jersey for failure to comply with constitutional standards and applicable federal law;

- *D.G. v. Henry*, a class action against the Oklahoma child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *Dwayne B. v. Granholm*, a class action against the Michigan child welfare system concerning violation of foster children's rights under federal and constitutional law;

- *E.C. v. Blunt*, a class action against the Missouri governor and child welfare officials challenging the facial validity of an adoption assistance law on constitutional and statutory grounds;

- *Foster Children Bonnie L. v. Bush*, a class action against the Florida child welfare system and the state of Florida concerning violation of foster children's rights under federal and constitutional law;

- *G.L. v. Zumwalt*, a class action challenging federal statutory and constitutional infirmities within the foster care system in Kansas City, Missouri;

- *Jeanine B. v. Thompson*, a class action against the Milwaukee County child welfare system and state of Wisconsin for failure to comply with local laws, federal statutes, and federal constitutional

       protections applying to children at risk for placement or in foster care;

- *Joseph A. v. N.M. Dep't of Human Services*, a federal statutory and constitutional challenge to the foster care system in the state of New Mexico brought on a class basis;

- *Juan F. v. Rell*, a class action against the Connecticut social services system, based on failure to comply with constitutional standards and applicable federal statutes;

- *Kenny A. v. Perdue*, a class action against the Governor of Georgia and other state officials concerning violation of foster children's rights in DeKalb and Fulton Counties, Georgia, under federal and constitutional law;

- *LaShawn v. Barry*, a class action against the District of Columbia child welfare system for failure to comply with constitutional standards, federal statutes, and applicable District of Columbia law;

- *Marisol A. v. Giuliani*, a class action against New York City and State, regarding all aspects of New York City's child welfare system, for failure to comply with federal constitutional, federal statutory, state constitutional, state statutory, and state regulatory standards;

- *Sheila A. v. Finney*, a class action in state court against the Kansas child welfare system based on violations of state, federal statutory, and federal constitutional law; and

- *Wilder v. Sugarman*, a challenge to New York's statutory scheme for the provision of foster care services on the grounds of racial and religious discrimination and violation of the establishment and free exercise clauses of the First Amendment.

4.      During my professional involvement in the above class-action litigation, I have directly participated in and supervised the monitoring and enforcement of more than ten class-wide settlements with state or local government officials requiring the wholesale reform of child welfare systems.

5.      Pursuant to 42 U.S.C. § 1988 and Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs request that the Court approve the Parties' settlement regarding Plaintiffs' attorneys' fees and expenses for the necessary post-judgment monitoring and enforcement work performed on behalf of the Plaintiff Class during the period from September 1, 2012 through August 31, 2013 (the "Monitoring Period"). Defendants have agreed to pay Plaintiffs' attorneys $171,412.60 to settle all claims for attorneys' fees and expenses undertaken and incurred during the Monitoring Period. This agreed-upon total includes $161,954.00 in fees for reimbursement of 746.50 hours expended on this case by Plaintiffs' attorneys (660.95 hours) and paralegals (85.55 hours). The fees settlement represents a reduction, undertaken by Plaintiffs' attorneys in the exercise of billing judgment, of 96.42 hours of lawyer and paralegal work totaling $6,935.37. The fees settlement provides for payment of $9,458.60 to Plaintiffs for reimbursable out-of-pocket expenses such as travel and copying. (*See* Lowry Decl. Attach. A).

6.      In addition to my own work on the case, I supervised the various lawyers, legal interns, and paralegals at CR who worked on enforcing the Mississippi Settlement Agreement and Reform Plan (Dkt. No. 459) (the "Settlement Agreement") approved on January 4, 2008 and the Modified Mississippi Settlement Agreement and Reform Plan (Dkt. No. 571) (the "Modified Settlement Agreement") approved on July 6, 2012. I am familiar with CR's policies, practices, and procedures governing the recording and maintenance of time and expense records. I supervised staffing levels throughout the Monitoring Period and assigned attorneys to tasks only as reasonably necessary to provide suitable representation to the Plaintiff Class.

7.      Attachment A to this Declaration is a summary of CR's costs during the Monitoring Period, including the total billable hours performed by CR staff and local co-counsel, and the case expenses CR advanced. Attachment B is the compilation of itemized time records on which

the attorneys' fees portion of Attachment A is based. Attachment C is the compilation of compensable case expenses advanced by CR on behalf of the Plaintiff Class for the Monitoring Period, itemized by category of expense.

8.  The compilation of itemized records set forth in Attachments B and C were both generated from a database of entries created in the ordinary course of CR's business, by persons with actual knowledge of the events recorded at or about the time of the events recorded, and which have been maintained in the ordinary course of CR's business. Each compilation has been personally reviewed by a CR attorney who worked on this case, and charges have been reduced or written-off that were deemed, in the exercise of billing judgment, excessive or non-compensable. These compilations of CR's time and expense records and their summary in Attachment A are an accurate and reliable account of both the work performed and the compensable expenses incurred by CR during the Monitoring Period.

9.  Moreover, during the period covered by Plaintiffs' Motion, it was the consistent policy and business practice of CR to require each attorney, paralegal, and legal intern to maintain contemporaneous and specific records of all time worked in a particular case, and for such records to be entered in a computerized billing system. All of the CR employees who worked on this case complied. Each employee received a weekly printout of their billing hours, reviewed the records for accuracy, and corrected any billing errors. Thus, these records, submitted in Attachment B, are an accurate statement of the time spent providing legal services to the Plaintiff Class for which CR seeks compensation. I attest that all of the hours submitted in Attachment B were reasonable and necessary in order to furnish adequate representation for Plaintiffs.

10. As an exercise of responsible billing discretion, hours that might be viewed as excessive, redundant, vague, or otherwise unnecessary to this litigation—a total of 96.42 hours amounting to $6,935.37—have been excluded.

11. In addition to following responsible billing practices, I have consistently and continuously made reasonable efforts to balance the workloads of the attorneys and paralegals working on this case, ensuring that the work assigned to them was commensurate with their level of experience. I have made every effort to keep the number of staff assigned to the case to a minimum while making certain the case was appropriately staffed at all times: each of the attorneys, legal interns, and paralegals working on this case had the ability and experience to perform the work assigned to him or her at a high degree of professionalism and was appropriately supervised.

12. Throughout the litigation, I also made diligent efforts to limit expenses. CR devoted $11,993.66 in out-of-pocket expenses to this case over the Monitoring Period. The parties' agreed-upon expense reimbursement reflects a discount of the actual reimbursable costs incurred by Plaintiffs, with $2,535.06 worth of expenses excluded from that total. (*See* Lowry Decl. Attach. A). I submit as Attachment C to this Declaration a detailed, itemized list of reimbursable expenses for CR. The majority of the expenses incurred by CR in connection with this litigation were travel expenses. The trips by CR attorneys to Mississippi and elsewhere for court appearances, meetings with local co-counsel, and conferences with Defendants and the court-appointed Monitor were all necessary to effectively monitor and enforce compliance with the terms of the Settlement Agreement and the Modified Settlement Agreement. I, along with the other CR attorneys working on this case, made concerted efforts to minimize the number and cost of trips to Mississippi, as well as the number of attorneys who participated in each trip.

13.     The Parties' fees agreement reflects an increase of five percent of the agreed-upon rates applied in the Parties' settlements of Plaintiffs' claims for fees and expenses for work undertaken during the first seven years of litigating this case. For purposes of calculating Plaintiffs' fee award for hours worked during the Monitoring Period the following rates were used and agreed to by the Parties: Marcia Robinson Lowry (CR) – $318.00 per hour; Wayne Drinkwater (Bradley Arant Boult Cummings LLP) – $267.75 per hour; Miriam Ingber (CR) – $283.00; Sarah Russo (CR) – $198.00 per hour; Julia Davis (CR) – $198.00 per hour; Aaron Finch (CR) – $198.00 per hour; paralegals – $113.00 per hour. Travel hours for CR attorneys were billed at half of these rates. The Parties agreed to these rates on January 21, 2014. As reflected in my May 9, 2008 Declaration submitted to the Court in support of that previous motion, these rates are well below Plaintiffs' Counsel's regular rates and the prevailing rates to which they are entitled. (*See* Decl. of Marcia Robinson Lowry ¶ 14 (Dkt. No. 472-3)).

14.     The detailed time records contained in Attachment B to this declaration, reflect the ongoing and active monitoring work that Plaintiffs' Counsel have undertaken in the time since this Court's approval of Plaintiffs' previous motion for attorneys' fees and expenses. (Dkt. No. 581).

15.     In January 2013, the Court Monitor submitted her Status Report to the Court Regarding Progress During Period Three (Dkt. No. 580) (the "January Status Report"). Plaintiffs commented on pre-filing versions of the Monitor's report and analyzed the final version to determine whether Defendants' progress was on track and how to ensure any necessary steps were taken to further progress. Plaintiffs submitted a response to the January Status Report, pursuant to this Court's order during a telephonic hearing on October 25, 2012. (*See* ECF Min.

Entry, Oct. 25, 2012; Pls.' Resp. to the Court Monitor's Status Report to the Court Regarding Progress During period Three (Dkt. No. 584).

16.     The January Status Report identified long-standing and ongoing problems with Defendants' production of data reports required under the Modified Settlement Agreement. Following an April 30, 2013 telephonic status hearing, this Court ordered the parties to negotiate a schedule setting forth specific deadlines to ensure that Defendants were able to expeditiously produce accurate and validated data reports as required by the Modified Settlement Agreement. (ECF Min. Entry, Apr. 30, 2013; May 9, 2013 Ord. (Dkt. No. 586) (the "Data Order")).

17.     Following the Court's Data Order, the Parties entered into lengthy negotiations to establish the required schedule. On June 11, 2013, the Parties submitted a joint request to the Court, reporting that despite their best efforts, they were unable to agree upon a schedule setting forth specific tasks and deadlines to ensure that Defendants produce data reports as required. (Jointly Submitted Report to the Court (Dkt. No. 588)). The Parties requested that the Monitor create a schedule for the Court to enforce.

18.     The Court Monitor prepared a Project Schedule for Defendants' Production of Data Reports Required by Appendix C of the Modified Settlement Agreement, which was incorporated into an order by this Court on June 24, 2013. (Dkt. No. 589 (the "Schedule Order")).

19.     In June and July 2013, the Parties negotiated the Initial Implementation Plan for Period 4 (the "Initial IP4 Plan"), as required by the Modified Settlement Agreement. The Initial IP4 Plan sets forth the specific steps that must be taken during Implementation Period 4 in order for Defendants to meet Period 4's interim benchmarks and make the necessary progress to achieve

overall compliance with the Modified Settlement Agreement. The Initial IP4 Plan was finalized and submitted to the Court on July 18, 2013. (Initial IP4 Plan (Dkt. No. 590-1)).

20. In addition, Plaintiffs regularly reviewed documents and data provided by Defendants in order to take necessary action when problems were identified. These documents and data include: (i) reports on the progress of the Practice Model rollout drafted by an outside consultant; (ii) reports on county, region and state performance created by the DFCS Continuous Quality Improvement Unit; (iii) investigations concerning alleged abuse and/or neglect involving members of the Plaintiff Class; and (iv) data reports related to specific outcomes produced pursuant to the Modified Settlement Agreement.

21. All of the work detailed above was reasonable and necessary to ensure implementation by Defendants of the parties' settlement agreements and that the benefits of these agreements are realized by the Plaintiff Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of February, 2014.

_____
Marcia Robinson Lowry

Sworn to before me this
24th day of February, 2014

_____
Notary Public

JULIA L. DAVIS
NOTARY PUBLIC-STATE OF NEW YORK
No. 02DA6295721
Qualified In Kings County
My Commission Expires January 06, 2018

9