# Appendix B

# Ex. 1

*Monthly Status Report- Practice Model Implementation*

**Mississippi Child Welfare Practice Model Implementation Project Summary**
**Introduction**

This report will cover the activities of CSF staff and the DHS Practice Coaches as it relates to the overall implementation of the Child Welfare Practice Model for the month of September 2012.

# REDACTED

*Monthly Status Report- Practice Model Implementation*

# REDACTED

**Miscellaneous**

CSF continues to review and offer feedback on the Regional Implementation Plans as they are submitted to the State Office. The State Office has issued some new instructions and guidelines regarding the process and timelines for the submission of the plans along with supporting documentation, but it appears that there is still some need for more consistency in the actual timely completion of quarterly plan updates. This may be due to the struggle that the majority of RDs have shared concerning maintaining active involvement of team members and in the overall creation of functional RIT's. A number of RDs have reported inconsistent attendance from members along with uncertainty about how to maintain their involvement in revising and updating the plans. Several RDs have acknowledged that they have not been able to schedule meetings on a quarterly basis and some do not yet have functional CQI and Resource Recruitment sub-teams. On an

*Monthly Status Report- Practice Model Implementation*

individual basis, CSF is working to provide some consultation and support to assist the RDs in crafting agendas, soliciting input from team members, and setting meetings to occur on a predictable schedule, but it is clear that this area needs more attention, especially in light of the requirements noted in the MSA.

**Data Indicators**

# REDACTED

**Ex. 2A**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Ginger Gibson [Ginger.Gibson@mdhs.ms.gov] |
| **Sent:** | Thursday, February 14, 2013 7:20 PM |
| **To:** | gmlopes@oymonitor.org |
| **Subject:** | E-mail 2 of 2 providing requested documents on 2-14-13 |
| **Attachments:** | PhaseIIPlanProgress09292011.doc; MSA Matrix Legal and Judicial Subteam 10-5-12.xls; policy work plan december 2012.xls; Requirements Matrix for the Resource Development Unit for the Modified Settlement Agreement.doc; Training Sub Team Work Plan Year 3.xls; Project Plan of Finance Sub-Team  Activities-updated.xlsx; Caseload, Staffing Subteam Work Plan.xls |

Dear Grace,

Attached please find:
1. November minutes from the subteams (except CQI*) - 2 documents
2. December minutes from the subteams - 3 documents
3. January minutes from the subteams (except MACWIS, Resource and Policy*) - 2 documents
4. The subteams' workplans (except MACWIS and CQI*) - **THIS E-MAIL - 7 documents**
5. State Implementation Team minutes from the time period requested (except minutes from the 2/5 meeting, which will be approved next week*)

I plan to provide to you the items identified with a "*", as well as the subteam and RITs' quarterly reports (which are due to the SIT tomorrow) by the end of next week.

Thank you!
Ginger


Ginger Gibson
Staff Attorney/*Olivia Y.* Settlement Coordinator
Division of Family and Children's Services
MDHS State Office - Room 923
601-359-4808
601-278-4751 (cell)
601-359-4477 (fax)
ginger.gibson@mdhs.ms.gov

Child Abuse and Neglect Hotline  1-800-222-8000

 Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.

=

| Mississippi Diligent Recruitment of Families for Children **Implementation Plan - Phase II, Version A** | | | | | | |
|---|---|---|---|---|---|---|
| **Cooperative Agreement Items** | **Goal/Activity** | **Year 2** | **Year 3** | **Year 4** | **Year 5** | **Responsibility** |
| | **A. Targeted Recruitment: Market Segmentation** | | | | | |
| D,E,F | 1. Map current resources against predicted need based on survey analysis | X | X | | | Evaluator; CSF; Project Team |
| D,E,F | 2. Generate a series of maps showing where recruitment activities should be directed | X | X | | | Evaluator; CSF; Project Team |
| D,E,F | 3. Identify specific mediums of communication most used by potential resource families in identified recruitment areas | X | X | | | Evaluator; CSF; Project Team |
| D,E,F | 4. Identify Specific recruitment strategies for engaging targeted families | X | X | | | Evaluator; CSF; Project Team |
| D,E,F | 5. Prioritize recruitment plans for most critical needs of children entering care | X | X | | | Evaluator; CSF; Project Team |
| **B. Targeted Recruitment Diligent Recruitment Specialists** | | | | | | |
| J,K,U | 1. Evaluate current training | X | | | | Project Team |
| J,K,U | 2. Identify areas needing development & strengthening | X | | | | Project Team; CSF; Training Unit |
| J,K,U | 3. Determine areas that should be included in pre-service and/or in-service training | X | | | | Project Team; CSF; Training Unit |
| J,K,U | 4. Make modifications as necessary | | X | | | Project Team |
| J,K,U | 5. Develop a plan to ensure diversity training is offered on a consistent basis | | X | X | X | Project Team; Training Unit |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| D,E,F | 6. Develop a plan for disseminating market segmentation information to regions & private agencies | X | X | | | Project Director |
| D,E,F | 7. Disseminate market segmentation data including family portraits and recruitment strategies reports to Regional Implementation Teams | X | X | | | Recruitment Support Specialists |
| D,E,F | 8. Develop or update Regional Recruitment Plans based on market segmentation data including family portraits and recruitment strategies reports | X | X | | | Recruitment Support Specialists; Regional Implementation Team |
| D,E,F | 9. Develop and implement a plan for including LPCAs in targeted recruitment activities | X | X | | | Project Team |
| D,E,F | 10. Recruitment Support Specialists will act as supports to the regions and LCPAs and assist in securing tools necessary to implement recruitment strategies outlined Regional Recruitment Plans | X | X | X | X | Recruitment Support Specialists |
| **C. Child Specific Recruitment** | | | | | | |
| D,E,G,P,Q | 1. Fully implement the expedited licensure process for related resource homes | | X | | | Project Team; Policy Director |
| D,E,P,Q | 2. Evaluate Mississippi's current utilization of AdoptUSKids adoption photo listing exchange | | X | | | Project Director; State Co-Leads |
| D,E,P,Q | 3. Determine feasibility to modify current usage of AdoptUSKids photo exchange for both children in care and resource parents. | | X | | | Project Director; State Co-Leads |
| D,E,P,Q | 4. Develop Mississippi statewide adoption photo exchange if needed | | | X | | Project Director; State Co-Leads |
| **D. General Recruitment** | | | | | | |
| D,E,G | 1. Develop plan for ensuring inquires from prospective resource families are handled in a timely and consistent manor | X | | | | Project Team |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| D,E,G | 2. Implement plan for ensuring inquiries from prospective resource families are handled in a timely and consistent manor | | X | X | | Project Team |
| D,E,G | 3. Establish a toll-free number for prospective resource families to call | | X | | | Project Director; State Co-Leads |
| D,E,G | 4. Add to MDHS web site to address recruitment | X | | | | Project Director; State Co-Leads; CSF |
| D,E,G | 5. Develop and implement statewide broadcast activities | | | X | X | Project Team, Grant Implementation Team, CSF |
| L | 6. MDHS has 3 Spanish translators on staff and that they are available to assist staff in working with clients and in translating materials | X | X | X | X | DFCS Translators |
| T | 7. MDHS Practice Model implementation moves the program towards a philosophy of working on permanency from the first day children enter the child welfare system | X | X | X | X | CSF; Project Team; Field Staff; Regional Resource Staff |
| **2. Resource Licensure** | | | | | | |
| **A. Resource Applicants** | | | | | | |
| H | 1. Define current application process | X | | | | Project Director; State Co-Leads |
| H | 2. Develop and implement internal tracking procedures to monitor application process | X | | | | Evaluator; Project Director |
| H | 3. Train resource staff on utilization of internal tracking tools | X | X | | | Project Director; Recruitment Support Specialists |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| H | 4. Develop and implement exit survey to identify dropout rates/reasons at various states of the process | X | | | | Evaluator; Project Team |
| H | 5. Adapt procedures for receiving and responding to applications and inquires based on data | | X | | | Evaluator; Project Team |
| H | 6. Train resource staff on skills and strategies for responding to inquires and retaining families throughout the licensure process | X | X | | | Project Team |
| H | 7. Design and implement coaching process to ensure resource staff are using learned skills and strategies | X | | | | Project Team; Director of Field Operations |
| **B. Resource Family Training** | | | | | | |
| I,K,U | 1. Evaluate current training in regards to characteristics, needs & issues of children in care/adoption clinical issues | | X | | | Project Team |
| I,K,U | 2. Modify training or develop additional training as needed | | | X | | Project Team; Grant Implementation Team work group |
| I,K,U | 3. Address shared parenting and supporting family relationships | X | X | X | X | Project Team; Regional Resource Staff |
| **C. Home Study Format** | | | | | | |
| N | 1. Evaluate current home study format | X | | | | Project Director; State Co-Leads; MACWIS |
| N | 2. Identify a home study format that would provide necessary information in a consistent manner | X | | | | Project Director; State Co-Leads |
| G,N | 3. Develop plan to ensure all resource workers are utilizing the same home study format | | X | | | Project Director; State Co-Leads |
| | | | | | | |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| G,N | 4. Provide training to resource staff on revised home study format | | X | | | Project Director; State Co-Leads |
| G,N | 5. Design coaching process to ensure resource staff are using learned skills and strategies | | X | | | Project Team; Director of Field Operations |
| **D. Home Study Process** | | | | | | |
| G | 1. All prospective parents currently have access to the home study process | X | X | X | X | Project Team; Regional Resource Staff |
| E,G | 2. Ensure home studies are completed in a timely manner | X | X | X | X | Evaluator; Project Team; Regional Resource Staff |
| E,G,N,O | 3. Mississippi Resource homes are licensed for both foster care and adoption in a single application process which facilitates concurrent planning. | X | X | X | X | Regional Resource Staff |
| **3. Customer Service Model** | | | | | | |
| H,I,P | 1. Schedule site visit with AdoptUSKids | X | | | | Project Director |
| H,I,P | 2. Determine which staff members will participate in AUK "train the trainer" site visit | X | | | | Project Director; State Co-Leads; Training Unit |
| H,I,P | 3. Develop and Implement plan for providing customer service model training to MDHS field staff | X | X | | | Project Director; State Co-Leads; Training Unit |
| H,I,P | 4. Make needed changes to policy and procedure to include customer service related issues | | X | | | Project Director; State Co-Leads; Policy Director |
| H,I,P | 5. Ensure customer service model techniques are being implemented by staff and are sustainable. | | X | X | X | Project Team; Field Operations |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| **4. Contract with the Licensed Child Placing Agencies** | | | | | | |
| R | 1. Release RFP | X | | | | Congregate Care Director; Permanency Unit Director; DFCS Finance and Administration |
| R | 2. Review proposals | X | | | | Congregate Care Director; Permanency Unit Director; DFCS Finance and Administration |
| R | 3. Prepare contracts and issue | X | | | | Congregate Care Director; Permanency Unit Director; DFCS Finance and Administration |
| R | 4. Plan for contract monitoring | | X | X | X | Congregate Care Director; Permanency Unit Director; DFCS Finance and Administration |
| **5. Family/Child Matching** | | | | | | |
| **A. Characteristics of Children in Care** | | | | | | |
| A,Q | 1. Establish baseline and benchmarks 3-6 months prior to regional implementation roll out | X | X | | | Evaluator; Project Team |
| A,Q | 2. Aggregate data by county & make available to regions, counties, and private agencies | X | X | | | Evaluator; Project Team |
| A,Q | 3. Develop and implement plan for consistently updating the characteristics of children in care | | X | X | X | Project Director; State Co-Leads, MACWIS; Evaluator |
| A,Q | 4. Work with MACWIS to ensure regular characteristic reports are available | | | X | X | Project Director; State Co-Leads, MACWIS; Evaluator |
| A,Q | 5. Address characteristics of children in care and their placement needs though regular placement committee meetings | | | X | X | Project Team; Regional Resource Staff |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| **B. Resource Family Characteristics** | | | | | | |
| B,Q | 1. Develop and implement plan for consistently updating the characteristics of licensed resource families | | X | | | Project Team; CSF; Evaluator |
| B,Q | 2. Develop a database of characteristics of current resource families by county | | X | X | X | Project Team; Evaluator; CSF, MACWIS |
| B,Q | 4. Work with MACWIS to ensure regular resource family characteristic reports are available | | X | X | X | Project Team; Evaluator; CSF, MACWIS |
| B,Q | 5. Address placement needs by matching children with families though regular placement committee meetings | X | X | X | X | Project Team; Regional Resource Staff |
| **8. Collaboration/Public-Private Partnerships** | | | | | | |
| C | 1. Use consumer data to determine communities with highest placement rates by zip code | X | X | | | CSF; MACWIS; Project Team |
| C | 2. Identify prospective neighborhoods for recruitment activities | X | X | | | CFS; Project Team |
| C | 3. Adapt Regional Implementation Plans to address community outreach | X | X | X | X | Project Team; Regional Resource Staff |
| C | 4. Adapt staff and resource families to include/work with community partners | X | X | X | X | Project Team; CSF; Regional Resource Staff |
| **10. Website** | | | | | | |
| I,K,Q,U | 1. Consult with MACWIS related to website modification and development | | X | | | Project Director; State Co-Leads; CSF; MACWIS |
| I,K,Q,U | 2. Assess information currently available on MDHS website | | X | | | Project Director |
| | | | | | | |

| Cooperative Agreement Items | Goal/Activity | Year 2 | Year 3 | Year 4 | Year 5 | Responsibility |
|---|---|---|---|---|---|---|
| I,K,Q,U | 3. Identify what type of modifications and additions are needed | | X | | | Project Team; MACWIS; CSF |
| I,K,Q,U | 4. Gather or develop needed information | | X | | | Project Team; MACWIS; CSF |
| I,K,Q,U | 5. Develop a plan for adding and maintaining information | | | X | | Project Director; MACWIS; CSF |
| **11. Evaluation Activities** | | | | | | |
| | 1. See attached evaluation plan | X | X | X | X | Evaluator |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013 | | | | | | |
| STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3) | | | | | | |
| **Supervisory access:** Caseworkers shall have access to a supervisor by telephone 24 hours a day | II.A.2.a (12) + p. 2 Y3P | 31-Mar-13 | | | | Completed and policy supports requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Prohibition on supervisors doing casework:** Supervisors will not be assigned primary responsibility for providing direct casework for any cases, unless under the extenuating circumstances exception described | II.A.2.a (13) + p.2 Y3P | 31-Mar-13 | | | | Completed and policy supports requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Tracking staff training:** implement an accurate and reliable system to track staff participation in all required training | P. 4 Y3P | 31-Mar-13 | | | | In progress. |
| Step 1: Follow up with ▇▇▇▇ on status prior to next meeting in Jan. 2013. | | | | | | |
| Step 2: Assign dutes as needed to assist with completion at next meeting in Jan. 2013 if not completed. | | | | | | |
| Step 3: | | | | | | |
| **Pre-service training:** All new caseworkers and supervisors will complete their pre-service training before they assume their responsibilities | II.A.2.c (7) + p.4 Y3P | 31-Mar-13 | | | | Completed and policy supports requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| | | | IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013 | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **Child Fatality reporting law:** Implement the policies and procedures necessary to comply with the public child fatality reporting requirements of the Child Abuse Prevention and Treatment and Adoption Reform Act | P. 7 Y3P | 1-May-12 | | | | Completed and policy supports requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Step 3: | | | | | | |
| Step 4: | | | | | | |
| **Implement rate structure:** The rate structure recommended by the consultant for FC providers to special needs children and for cong care facilities shall be fully implemented. | II.A.7.e + p.17 Y3P | 31-Mar-13 | | | | In progress |
| Step 1: Follow up with ▉▉▉▉ on status prior to next meeting in Jan. 2013. | | | | | | |
| Step 2: Assign dutes as needed to assist with completion at next meeting in Jan. 2013 if not completed. | | | | | | |
| **Standardized decision-making criteria:** Used for prioritizing, screening, and assessing reorts of maltreatment/corporal punishment of children in custody | II.B.1.e + p. 12 Y3P | 31-Mar-13 | | | | We discussed the possibility of adding an intake type to help with this.  We need to wrap up that convo and detail plans if we will. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Step 3: | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| | | | IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013 | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **Separate contractor investigation:** for investigations of GHs, shelters, CPA homes, must investigate the provider for compliance with DFCS licensure stds | II.B.1.j + p.12 Y3P | 31-Mar-13 | | | | In progress |
| Step 1: Follow up with ████████ on status prior to next meeting in Jan. 2013. | | | | | | |
| Step 2: Assign dutes as needed to assist with completion at next meeting in Jan. 2013 if not completed. | | | | | | |
| **Screening FC placements:**  All placements must be screened prior to initial placement/once annually/within 2 wks of change of residents in home.  Must incl criminal background checks before child can be placed. | II.B.2.o + p.13 Y3P | 31-Mar-13 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Licensing relative placements:**  All relative placements must undergo the licensing process within 90 days of placement. | II.b.2.s + p.14 Y3P | 31-Mar-13 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Step 3: | | | | | | |
| **SAR:** revise the Supervisory Administrative Review process to require a review of whether DFCS child welfare case records are current, complete, made by the appropriate caseworker, and signed and dated by supervisors | p. 8 Y3P | 31-Mar-13 | | | | Completed and policy supports this requirement. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| | | IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013 | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Step 3: | | | | | | |
| Step 4: | | | | | | |
| **Policy and practice guides:** Complete all revisions to the DFCS policies and practice guides as necessary to reflect the COA foster care services standards and the requirements set forth in sections II.B and III.B of the MSA, and shall assess what training is necessary in order to effectuate any new and revised policies (service plan and monitoring, permanency plan) and develop training curricula. | p. 8 Y3P | 31-Mar-13 | | | | Completed and policy supports this requirement. |
| **Therapeutic placement process:** develop and begin implementing a plan with specific action steps and timeframes to address changes in the State Office's therapeutic placement process identified as necessary to ensure the most appropriate placement for children in need of therapeutic placement | p.14 Y3P | 1-Jul-13 | | | | In progress |
| Step 1: Follow up on progress at next meeing in Jan 2013 | | | | | | |
| Step 2: Discuss policy revisions needed to support requirement at next meeting in Jan 2013. | | | | | | |
| Step 3: | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013** | | | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **Protocol for adoption meetings:** revise the protocol for adoption meetings such that it provides sufficient information to guide case practice on how to review the progress being made in achieving the goal of adoption for legally free children | p. 11 Y3P | 1-Jun-12 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Legal risk placements:** Develop and begin implementing a process for making legal risk placements that assures that children for whom the permanency plan is adoption but who are not yet legally free for adoption are placed in appropriate adoptive homes | p. 11 Y3P | 1-Jun-12 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Policy on info to resource parents:** Implement policy to provide resource parents with all appropriate and available information about a child prior to or at the time of placement and for supplementing that information as further information is gathered | P.13 Y3P | 1-Jun-12 | 6/1/2012 | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |

5

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013 | | | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **Protocol/training for reviewing educ records:** Develop a protocol and associated caseworker training for conducting a review of a child's educational record for the purpose of identifying the child's general and, if applicable, special educational needs | P. 17 Y3P | 1-Sep-12 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Develop plan to address TPR recommendations:** in conjunction with a qualified independent consultant, develop a remedial plan with related action steps and time frames necessary to address the deficiencies found by the TPR Assessment in case practice and documentation related to the timely filing of termination of parental rights on behalf of children who have spent 17 of the previous 22 months in foster care, and for whom an available exception under the Adoption and Safe Families Act ("ASFA") has not been documented | P. 10. Y3P | 1-Oct-12 | | | | Completed and policy supports this requirement. |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **Family Service Plan development and Implementation** | | | | | | Completed. Policy revisions are being proofread currently. |
| Step 1: Discuss status of policy revisions at next | | | | | | |
| Step 2: | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: April 1, 2012 - March 31, 2013** | | | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| Step 3: | | | | | | |
| Step 4: | | | | | | |
| Step 5: | | | | | | |
| Step 6: | | | | | | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: July 6, 2012 - July 5, 2013** ||||||| 
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** ||||||| 
| **Training unit: E**stablish and maintain a Training Unit, headed by a qualified director of training, with sufficient staffing and resources to provide or contract for pre-service and in-service training to all caseworkers and supervisors | II.A.2.c (6) + p. 4, Y3P | July 5, 2013 | | | Completed | |
| Step 1:  Review COA Standards and Olivia Y Settlement Agreement to determine requirements to be met by Training Unit. | | | | | Completed | |
| Step 2:  Assess staffing needs of Training Unit, based on training the unit is expected to deliver. | | | | | Completed | |
| Step 3:  Prepare justification for additional trainers, a bureau director and support staff. | | | | | Completed | |
| Step 4:  Upon approval from upper management, advertise for bureau director. | | | | | Completed | |
| Step 5:  Interview, select and recommend a candidate for bureau director. | | | | | Completed | |
| Step 6:  Bureau Director will fill positions of Special Project Officer IVs (2 positions). | | | | | Completed | |
| Step 7: Bureau Director will advertise, interview and select candidates to fill vacant trainer positions. | | | | | Completed | |
| Step 8:  Bureau Director will advertise, interview and select candidates for additional trainer positions.  (number of trainers went from 3 to 12 under the direction of the bureau director, with 8 additional positions to be filled as qualified candidates are identified, making a total of 20). | | | | | Completed | |
| Step 9:  Bureau Director will advertise, interview and select candidate for position of Director of Workforce Development.  This position will be primarily responsible for recruitment and retention of DFCS staff.  As a part of this duty, this position will act as the university liaison to enhance the relationship between the agency and the universities and encourage staff to seek advanced social work degrees. | | | | | Completed | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **Tracking staff training:** implement an accurate and reliable system to track staff participation in all required training | P. 4 Y3P | July 5, 2013 | | | | |
| Step 1: Schedule a meeting with DFA and MELMS to begin implementation of database to track all training | | | | | Completed | |
| Step 2:  Implement spreadsheet tracking system of  DFCS  PreService  and  Clinical  Supervisory Training sessions | | | | | Completed | |
| Step 3: Finalize plans and set a launch date of newly created system | | | | | 3/31/2013 | |
| Step 4: Provide instructions to all Regional Directors through Senior Staff meeting on how the new system will work | | | | | 3/1/2013 | |
| Step 4: Finalize and implement system | | | | | 6/30/2013 | |
| **Pre-service training:** All new caseworkers and supervisors will complete their pre-service training  before they assume their responsibilities | II.A.2.c (7) + p.4 Y3P | July 5, 2013 | | | Completed | |
| Step 1: 2011 DFCS released an RFP seeking a qualified vendor to develop 40 hours of training for new supervisors incorporating the  clinical supervisory aspects of the Practice Model. | | | | | Completed | |
| Step 2: DFCS selected and entered into a contract with the University of Mississippi to develop 270 hours of pre-service training including 4 weeks of instructional classroom training and 5 weeks of structured, supervised OJT for new DFCS casework staff. | | | | | Completed | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)
*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Step 3: The University of Mississippi developed a training curriculum including Participant and Facilitator's Guides for each of the 4 weeks of instructional classroom training and a Participant and Facilitator's OJT Guide. A. DFCS Training Director/Unit and CSF provided guidance to the University of Mississippi in the development to ensure all aspects of the PM are incorporated into subsequent training. B. DFCS Training Director/Unit and CSF reviewed drafts of the pre-service training, instructional materials and provided feedback which is incorporated into subsequent drafts. C. The University of Mississippi hired qualified trainers to deliver the 4 weeks of instructional classroom training. D. DFCS Training Director/Unit hired Training Coordinators to assist with the 4 weeks of structured, supervised OJT. E. The University of Mississippi trainer delivered a pilot of pre=service training to new DFCS caseworkers. F. The University of Mississippi revised the pre-service training components to inco | | | | | Completed | |
| **In-service training:** in-service training curriculum for caseworkers and supervisors will be developed and in-service training will have been initiated | II.A.2.c (8) + P. 5 Y3P | March 31, 2013 | | | | |
| Step 1: Through the partnership with The University of Mississippi DFCS Training Coordinators will attend a "Train the Trainer" which will enhance their skills as a trainer and develop their curriculum writing skills | | | | | Completed | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)
*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| Step 2:  A list of in-service training curriculum topics will be selected for development through collaboration with The University of Mississippi Training team, the DFCS Training Team, DFCS Administration and CSF.  A survey will be sent to all agency front line staff and its results will be reviewed with the parties listed above to create topics | | | | Completed | |
| Step 3:  Three new on-going training curricula will be developed by DFCS training teams with assistance and review by The University of Mississippi training team. | | | | Completed | |
| Step 4: Once curricula is finalized a pilot training will be held and revisions will follow | | | | Completed | |
| Step 5: Finalized curricula will be assessed and reviewed for Social Work Continuing Education hours. | | | | Completed | |
| Step 6: In-service training calendar will be created and training will be launched statewide. | | | | 3/30/2013 | |
| **Revised pre-service training:** All new DFCS caseworkers shall receive a minimum of 270 hours of pre-service training, including instructional training and supervised field training, prior to assuming any case responsibilities. Pre-service training provided during an internship with DFCS may be counted towards this 270 hour pre-service training requirement if that training is the same training as that provided to new hires. | P. 4 Y3P | August 6, 2012 | | Completed | |
| Step 1: DFCS released an RFP seeking a qualified vendor to develop 270 hours of pre-service training incorporating all aspects of the Practice Model | | | | Completed | |
| Step 2: DFCS selected and entered into a contract with the University of Mississippi to develop 270 hours of pre-service training including 4 weeks of instructional classroom training and 4 weeks of structured, supervised OJT for new DFCS casework staff. | | | | Completed | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)
*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Step 3:  The University of Mississippi developed a training curriculum including Participant and Facilitator's Guides for each of the 4 weeks of instructional classroom training and a Participant and Facilitator's OJT Guide.  A: DFCS PDU Director/Unit and CSF provided guidance to the university of Mississippi in the development to ensure all aspects of the PM are incorporated into the pre-service training.  B.  DFCS PDU Director/Unit and CSF reviewed drafts of the pre-service training.  Instructional materials and provided feedback which is incorporated into subsequent drafts.  C.  The University of Mississippi hired qualified trainers to deliver the 3 weeks of instructional classroom training.  D.  DFCS PDU Director/Unit hired Training Coordinators to assist with the 4 weeks of structured, supervised OJT.  E.  The University of Mississippi trainers delivered a pilot of the pre-service training to new DFCS caseworkers.  F.  the University of Mississippi revised the pre-service training components to incorporate lessons learned from the pilot and feedback provided by DFCS PDU Director/Unit and CSF review | | | | | | Completed |
| Step 4:  The University of Mississippi continues to make revisions to the Participant and Facilitator's Guides for each of the 4 weeks of instructional classroom training and a Participant and Facilitator's OJT Guide as DFCS makes changes to the Comprehensive Family Assessment and Family Service Plan and incorporates them into MACWIS | | | | | | Completed |
| **Clinical supervisory curriculum:** a newly developed clinical supervisory training curriculum | P. 4 Y3P | August 6, 2012 | | | | Completed |
| Step 1:  2011 DFCS released an RFP seeking a qualified vendor to develop 40 hours of training for new supervisors incorporating the clinical supervisory aspects of the Practice Model. | | | | | | Completed |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)
*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| Step 2:  DFCS selected and entered into a contract with the University of Mississippi to develop 40 hours of instructional training directed specifically at the supervision of child welfare caseworkers. | | | | Completed | |
| Step 3:  The University of Mississippi developed a training curriculum including Participant and Facilitator's Guides for the 40 hours of instructional classroom training. A.  DFCS PDU Director/Unit and CSF provided guidance to the University of Mississippi in the curriculum development to ensure clinical supervision aspects of the PM are incorporated into this training B.  DFCS PDU Director/Unit and CSF reviewed drafts of the supervisory training. Instructional materials and provided feedback which was incorporated. C. The University of Mississippi hired qualified trainers to deliver the week of instructional classroom training on supervision of child welfare caseworkers. D. The University of Mississippi contracts with mentors to deliver the Level 1 ongoing training for newly hired or promoted supervisors | | | | Completed | |
| **Training new supervisors:** All ASWSs hired between April 1, 2012 and January 1, 2013, shall have received training pursuant to the newly developed clinical supervisory training curriculum | P. 5 Y3P | July 5, 2013 | | Completed | |
| Step 1:  Clinical Supervisory Training is offered through a partnership with The University of Mississippi.  The dates will be set at least 6 months in advance to allow time for | | | | Completed | |
| Step 2: Newly hired/promoted supervisors are registered to attend through the Professional Development Unit | | | | Completed | |

Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)
*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| **Strengthen competency based training:** strengthen the competency-based testing to ensure that trainees have acquired adequate competencies in the areas of interviewing, critical thinking skills, and documentation skills related to child safety assessments and to preparing case summaries for submission to the Youth Court | P. 4 Y3P | September 1, 2012 | | | Completed |
| Step 1: DFCS entered into a contract with The University of Mississippi and one component of that contract is to strengthen competency based testing. | | | | | Completed |
| Step 2: Test will be administered by an external evaluator who will develop and conduct the statistical analysis of the written examination | | | | | Completed |
| Step 3: The test will be given so that no two tests are the same. | | | | | Completed |
| Step 4: Reports will be generated by the evaluator to show the statistical evidence of the exams. | | | | | Completed |
| **Maintain 9 trainers:**  Defendants shall maintain nine (9) full-time trainers | P. 5 Y3P | August 15, 2012 | | | Completed |
| Step 1: Advertise and recruit staff to hire in the position of DFCS Family Protection Training Coordinator | | | | | Completed |
| Step 2:  Provide appointment letters and hire dates for documentation of this deliverable | | | | | Completed |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: July 6, 2012 - July 5, 2013** | | | | | | |
| **WORKFORCE DEVELOPMENT - STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **Workforce Development Plan:** Finalize and begin implementing a Workforce Development Plan. | IP3: 1.2.b (pg 2) | 6-Apr-13 | 22-Mar-13 | Caseload/Staffing Subteam: ▮▮▮▮▮▮ | In Progress | Casey Family Programs provided TA through American Public Human Services Association on June 5-6, 2012 and August 13-14, 2012 to assist in developing the Plan. Draft for statewide plan was submitted to Court Monitor on 12/31/2012. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **Workforce Development Plan:** Defendants shall have written the Coast and Hinds County sections of the Workforce Development Plan as required in section I.A.2.b. | IP3:1.2.b/1.2.c.3 (pg 2-3) | 1-Sep-12 | 20-Aug-12;  31-Dec-12 | Caseload/Staffing Subteam: ██████████, ██████████, ██████████, ██████████, ██████████, ██████████ | In Progress | Casey Family Programs provided TA through American Public Human Services Association on June 5-6, 2012 and August 13-14, 2012 to assist in developing the Plan. Drafts for the plan for Hinds, Harrison, Hancock, and Jackson Counties (a.k.a Carve Out counties) were submitted on 09/01/2012 and resubmitted on 12/31/2012. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **Caseload Reports:** Within 90 days of start of Implementation Period 3, begin implementing a methodology for producing accurate and validated caseworker and caseload data reports/produce monthly for each county/ Within 120 days provide the Plaintiffs and the Monitor with county-by-county caseload data on a monthly basis. | MSA: II.A.2.8 (pg 5) | 5-Oct-12; 4-Nov-12; +monthly | | Caseload/Staffing Sub-Team: ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ | In Progress | Workload validation in progress in Carve Out Counties. Changes in practice requirements (e.g.. FSP) have caused workload numbers to fluctuate. Once it is understood how these issues will affect the workload numbers, more accurate and consistent data reports will be generated. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue



| | | | | | | |
|---|---|---|---|---|---|---|
| **Define Case Aide role:** Define the role of a case aide to support caseworkers in Hancock, Harrison, Hinds, and Jackson Counties. | IP3: I.A.2.c.1 (pg 3) | 5-Aug-12 | | Caseload/Staffing Subteam: ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ | Completed | Developed official job description for Case Aides and submitted to State Personnel Board (▮▮▮▮▮). Job Content Questionnaire was developed and distributed to Regional Directors. |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **Number of Case Aides:** Determine the number of Case Aides needed in Hancock, Harrison, Hinds, and Jackson County and shall begin recruiting Case Aides in those counties. | IP3: I.A.2.c.2 (pg 3) | 5-Aug-12 | Caseload/Staffing Subteam: ▬▬▬▬▬ ▬▬▬▬▬▬ ▬▬▬▬▬▬ ▬▬▬▬▬▬ ▬▬▬▬▬▬ | In Progress | |
| **WORKFORCE DEVELOPMENT - STATEWIDE REQUIREMENTS** | | **IMPLEMENTATION PERIOD 6:  July 6, 2015 - July 5, 2016** | | | | |
| **Worker Educational Requirements:** DFCS shall hire only foster care workers who have an advanced degree in social work or a comparable human services field, or a B.A. in social work or a comparable human services field with two years of related experience. | MSA: II.A.2.b.1 (pg 7) | End of MSA | | In Progress | |
| **Supervisor Education Requirements:** DFCS shall hire or promote to the position of caseworker supervisor only persons with an advanced degree in social work in a comparable human services field and two years of experience working with children and families, preferably in foster care. | MSA: II.A.2.b.2 (pg 7) | End of MSA | | In Progress | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **LEGAL AND JUDICIAL SUBTEAM IMPLEMENTATION PERIOD 3: July 6, 2012 - July 5, 2013** | | | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | | |
| **WRITTEN STRATEGIES**          Workforce dev plan: Defendants shall actively engage in recruitment and retention activities to address the workload issues in Hancock, Harrison, Hinds, and Jackson counties as follows: 4) "By July 1, 2012, the Legal and Judicial Statewide Implementation Sub-team shall develop and begin implementing written strategies for promoting implementation of the Olivia Y. standards in the Mississippi Youth Courts.  These strategies shall be implemented in Regions III-S, VII-E and VII-W by the end of Implementation Periods 3." | MSA: Appendix B: I.A.2.c..(4). | 7/1/2012 | 15-Jun-12 | ▮▮▮▮ | | Strategies for Promoting Implementation of the Olivia Y. Standards in the Mississippi Youth Courts submitted to Grace Lopes on or before 7/1/12; Revised October 4, 2012 to add DFCS Strategies regarding recruitment and retention activities. |
| **PERFORMANCE BASED CONTRACTING** Defendants shall work with Casey Family Programs, or another consultant approved by the Monitor, for technical assistance with developing a plan with specific action steps and timeframes for a performance based contracting system with the capacity to monitor and enforce contract performance.  That plan shall be complete by the end of Implementation Period 3. | MSA: Appendix B: I.A.4. | 5-Jul-13 | | ▮▮▮▮ | | Casey Family Programs provided TA through American Public Human Services Association on October 10-11, 2012 to assist with developing a plan for PBC; Scheduled to continue developing plan November 28-29, 2012. |
| **PERFORMANCE BASED CONTRACTING** Contracts with private agencies: Require the contract agencies to abide by all related terms of the MSA as noted in this section. | MSA: II.A.2.d.2.b (pg 9) | July 5, 2013 (beginning in Period 3) | | ▮▮ | | Two Requests for Proposals (RFP) were issued August 20, 2012, which include the Olivia Y. language requirements, as will resultant contracts. |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| **PERFORMANCE BASED CONTRACTING** Performance based contracting plan: work with Casey Family Programs, or another consultant approved by the Monitor, for technical assistance with developing a plan with specific action steps and timeframes for a performance based contracting system with the capacity to monitor and enforce contract performance.  That plan shall be complete by the end of Implementation Period 3. | IP3: I.A.4. (pg 5) | 5-Jul-13 | 10-Oct-12;  11-Oct-12;  28-Nov 12;  29-Nov-12 | ██████, ████████, ███████, ████ | Casey Family Programs provided TA through American Public Human Services Association on October 10-11, 2012 to assist with developing a plan for PBC; Scheduled to continue developing plan November 28-29, 2012. G12 |
| **TRACKING ANNUAL COURT REVIEWS**   II.B. 2.a. Within six (6) months of the start of Implementation Period 3, Defendants shall develop a system for tracking the annual court reviews for each child in care.  Defendants' policy shall require that the Youth Court with jurisdiction is provided with a detailed up-to-date report on the current status of the child's placement, visitation, permanent plan progress, and service needs.  Defendants shall begin implementing that system before the end of Implementation Period 3. b.  The child's assigned caseworker or supervisor shall attend every child's annual court review unless there are exceptional circumstances that do not allow attendance. | IP3: II.B.2.a. (pg. 9) | 12/31/2012 | 10/11/2012 | ████████, ████ ████ | DFCS currently has a system in place for tracking annual court reviews. MACWIS validated report MWZTPHRD tracks annual permanency reviews. DFCS Policy Section D, page 112, outlines requirements of the Foster Care Review Conference. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **TPR REMEDIAL PLAN**          II.B.4.<br>Develop plan to address TPR recommendations: in conjunction with a qualified independent consultant, develop a remedial plan with related action steps and time frames necessary to address the deficiencies found by the TPR Assessment in case practice and documentation related to the timely filing of termination of parental rights on behalf of children who have spent 17 of the prevous 22 months in foster care, and for whom an available exception under the Adoption and Safe Families Act ("ASFA") has not been documented. The issues that the remedial plan shall address include: (1) accurately identifying children for whom the ASFA TPR requirements apply; (2) adequate training for caseworkers regarding the circumstances that qualify as exceptions to filing TPRs pursuant to ASFA; and (3) appropriately documenting exceptions. b.  Defendants shall have begun implementing the TPR remedial plan by the end of Implementation Period 3. | P. 10. Y3P | 1-Jan-13 | | ▬▬<br>▬▬▬<br>▬▬▬<br>▬▬▬<br>▬▬▬ | | The first draft of a Remedial TPR Plan matrix was developed with the assistance of ▬▬▬ ▬▬▬ a qualified consultant.  Consultants with Center for Support of Families reviewed the matrix and offered TA to develop a comprehensive plan. ▬▬▬ will assist in developing plan to address data reports, training on exceptions, supervisor monitoring of documentation and a review of policy for adequate information regarding TPR exceptions. |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| **IMPLEMENTING PERFORMANCE BASED CONTRACTING** II.A.2.d.1) Defendants shall implement and maintain a performance-based contracting system to evaluate annually contract agency compliance with the terms of the Modified Settlement Agreement.  Defendants shall take reasonable steps to ensure contract agency remediation of any identified deficiencies. 2) By the end of Implementation Period Three: (a) All therapeutic resource parents who have one or more foster children residing in the home shall ve visited in the home at least once per month by their private agency caseworker.  These visits shall be in addition to the monthly home visit conducted by DFCS.  Beginning in Implementation Period Three, all contracts executed between Defendants and private agencies that provide services to foster children shall require that the private caseworker (1) share all relevant and legally disclosable information concerning the foster child; (2) evaluate the foster child's safety, needs, and well-being; and | II.A.2.d.1),2)(a)(1),(2) | 6-Jul-13 | | | | Two Requests for Proposals were issued August 20, 2012, which include the Olivia Y. langu+G11age requirements regarding service providers meeting the same requirements of the MSA with an exception. Casey Family Programs provided TA through American Public Human Services Association on October 10-11, 2012 to assist with developing a plan for PBC; Scheduled to continue developing plan November 28-29, 2012. |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| MONITORING PERFORMANCE BASED CONTRACTING (3) monitor service delivery and the achievement of service goals.  DFCS shall require that such visits occur, that theyare documented in the child's case record, and that remedial action is taken if such visits are not taking place. (b) Beginning in Implementation Period Three, all contracts executed between Defendants and private agencies that provide protective, preventive, foster care, or adoption case work services shall require the contract agencies to abide by all related terms of the Modified Settlement Agreement, including, but not limited to, provisions regarding training curricula, minimum training hours, and caseload standards, with the exception that contrct agency caseworkers shall not be required to undertake the hours of pre-service training required of DFCS caseworkers that pertain to MACWIS instruction and DFCS-specific workplace procedures.  The training requirement of the Modified Settlement Agreement shall apply only to contract agency caseworkers and supervisors responsible for making case planning decisions and/or recommendations. | II.A.2.d.02(a),(b) | | 6-Jul-13 | | | |

**Requirements Matrix for the Resource Development Unit for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status |
|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: July 6, 2012 – July 5, 2013** | | | | | |
| **STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3)** | | | | | |
| **Resource guide for youth:** Develop a current resource guide necessary to assist youth in locating and/or enrolling in educational or vocational programs appropriate to their needs, interest, abilities, and goals, such as high school or GED programs; colleges or universities; vocational training programs; and special education services. This guide shall provide information on resources for all regions. | IP3: II.H.1 (pg 13) | 5-Aug-12 | | ▆▆▆ | COMPLETE |
| **Provide guide to all youth:** All youth ages sixteen (16) and older in DFCS custody shall have been offered a copy of the resource guide. | IP3: II.H.2 (pg 13) | 20-Aug-12 | | ▆▆▆ | COMPLETE |

| | | | | |
|---|---|---|---|---|
| **Protocol/Training for reviewing education records:** Develop a protocol and associated caseworker training for conducting a review of a child's educational record for the purpose of identifying the child's general and, if applicable, special educational needs. | IP3: II.G.2 (pg 12) | 1-Sep-12 | ▬▬ ▬ ▬▬ | **COMPLETE** 20-Aug-12 |
| **RD staff person for medical/MH:** Maintain a staff person in the Resource Development Unit whose job responsibility will be to develop and coordinate a broader and more geographically diverse array of physical, dental, and mental health services available to foster children. | IP3: II.F.1 (pg 12) | 5-Aug-12 | ▬ ▬▬ | **COMPLETE** Nurse IV Hired 1-Feb-12 |
| **Develop medical/dental/MH resource plan:** The physical, dental and mental health program manager shall have developed a written plan for increasing the array of services available to foster children. | IP3: II.F.2 (pg 12) | 5-Jul-13 | ▬▬ ▬▬ ▬▬ | |
| **RD staff person for education:** Hire a staff person in the Resource Development Unit whose job responsibility will be to promote and coordinate educational services including tutoring, preparation for a general equivalency diploma (GED), and college preparation available to foster children. | IP3: II.G.1 (pg12) | 5-Aug-12 | ▬▬ ▬ ▬▬ | **COMPLETE** Educational Liaison Hired 15-Jun-12 |

**State Implementation Finance Sub-Team Project Plan**

| | Beginning Date | Due Date | HZA | B&A | B&A | DFCS | DFCS | DFCS | DFCS | DFCS | MIS | Medicaid | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Implementation and Maintenance of the Recommendations Put Forth by Hornby Zeller Associates and the Center for the Support of Families in the May 2011 Document "Financial Assessment: Findings and Recommendations" in Order to Increase Federal Funding.** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **1) Career Preparation and Development Training Program** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Title IV-E funding shall be sought for eligible expenditures of the "career preparation and development training program" through the Masters of Social Work and Bachelors of Social Work cohort partnerships with the University of Mississippi, University of Southern Mississippi and Jackson State University.  DFCS shall | | | | | | | | | | | | | | | | | | | | | | | | | | |
| a. Update the Child and Family Service Plan ("CSFP") to describe the Masters of Social Work and Bachelors of Social Work partnerships with the universities.  The method of funding shall be included in the CSFP update. | 7/6/2012 | 5/30/2013 | X | | | X | X | | X | | | | 7/18/2012 | | 8/16/2012 | | 9/20/2012 | 0% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |
| b. Utilize the Reimbursement Calculator created by HZA to facilitate retroactive claims for reimbursement of expenditures eligible for federal Title IV-E funding. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| i. Utilize the Reimbursement Calculator created by HZA to analyze and maximize allowable IV-E reimbursement of MSW or BSW coursework reimbursed by DFCS to its current and prospective staff. | 7/6/2012 | 5/30/2013 | X | | X | | X | | | | | | 7/19/2012 | | 8/16/2012 | 50% | 9/20/2012 | 50% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |
| ii. Utilize the Reimbursement Calculator created by HZA to facilitate quarterly filing for federal reimbursement on a retroactive basis for the Title IV-E eligible expenditures. | 7/6/2012 | 5/30/2013 | X | | X | | X | | | | | | 7/19/2012 | | 8/16/2012 | 50% | 9/20/2012 | 50% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |

| | | Beginning Date | Due Date | HZA | B&A | B&A | DFCS | DFCS | DFCS | DFCS | MIS | Medicaid | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2) | **Pre-service Training Program for New Caseworkers and Supervisors** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Title IV-E funding shall be sought for eligible expenses of the pre-service training program for new caseworkers and supervisors" through the sub-grant with the Child Welfare Training Academy at the University of Mississippi. DFCS shall: | | | | | | | | | | | | | | | | | | | | | | | | | | |
| a. | Update the CFSP to describe the state's training program and costs which are to be funded with Title IV-E monies. | 7/6/2012 | 5/30/2013 | x | | | x | x | | x | | | 7/19/2012 | | 8/16/2012 | | 9/20/2012 | 0% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |
| b. | Update the CFSP to specify that: new caseworkers will not carry a caseload until all pre-service training has been completed; the work experience component of the training is an integral component of the plan; staff will receive more intensive supervision during the on-the-job training period; and the trainees' performance is closely monitored and assessed. | 7/6/2012 | 5/30/2013 | x | | | x | x | | x | | | 7/19/2012 | | 8/16/2012 | | 9/20/2012 | 0% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |
| c. | Assign new caseworkers to the training cost pool for the first eight weeks so that the appropriate portion of the costs will be eligible for Title IV-E reimbursement. | 7/6/2012 | 5/30/2013 | x | x | | | x | | | | | 7/19/2012 | | 8/16/2012 | 50% | 9/20/2012 | 50% | 10/18/2012 | 100% | 11/15/2012 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| 3) | **Supervisory Learning Labs and Administrative Technical Assistance** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | All eligible expenses of the Supervisory Learning Labs and Administrative Technical Assistance established by sub-grant with the University of southern Mississippi Shall be allocated to the administrative cost pool, which will be eligible for Title IV-E reimbursement. | 7/6/2012 | 5/30/2013 | | | | x | x | | | | | 7/19/2012 | | 8/16/2012 | 50% | 9/20/2012 | 50% | 10/18/2012 | 50% | 11/15/2012 | 50% | 12/20/2012 | 50% | 1/17/2013 | 50% |

| | Beginning Date | Due Date | HZA | BBA | BBA | DFCS | DFCS | DFCS | DFCS | MIS | Medicaid | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **4) In-House Training** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Title IV-E funding shall be sought for eligible in-house training costs. DFCS shall: | | | | | | | | | | | | | | | | | | | | | | | | | |
| a. Develop and implement a process for ensuring that the PINS of full-time trainers are assigned to the proper cost pools | 7/6/2012 | 5/30/2013 | | x | x | | x | | | | | 7/19/2012 | | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2012 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| b. Develop and implement a process for ensuring that all expenditures associated with training (including meeting rooms, staff travel, and related expenses) are charged to Title IV-E training when the subject of the training is relevant | 7/6/2012 | 5/30/2013 | | x | x | | x | | | | | 7/19/2012 | | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2012 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| c. Insure that all costs for trainers (excluding office space) are allocated to the training pool, which will be eligible for Title IV-E reimbursement. | 7/6/2012 | 5/30/2013 | | x | x | | x | | | | | 7/19/2012 | | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2012 | 100% | 12/20/2011 | 100% | 1/17/2013 | 100% |
| **5) Supportive Services Expenditures** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Title IV-E funding shall be sought for eligible supportive services expenditures  DFCS shall: | | | | | | | | | | | | | | | | | | | | | | | | | |
| a. Where allowable, use the Support Services Calculator created by HZA to discontinue the use of TANF and SSBG funding for support services for Title IV-E (or Title XIX) eligible children, and begin charging those services as a Title IV-E (or Title XIX) maintenance cost | 7/6/2012 | 5/30/2013 | x | x | x | | x | | x | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2013 | 100% | 11/15/2012 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| b. Institute a process for the filing of retrospective Title IV-E eligible expenditure claims. | 7/6/2012 | 5/30/2013 | x | x | x | | | | x | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2012 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |

Set up IV-E charges on front end

to Investigate sparsely populated Eligibility field in MACWIS file

Prepares MACWIS file extract

Prepares MACWIS file extract

3

| | | Beginning Date | Due Date | HZA | B&A | B&A | DFCS | DFCS | DFCS | DFCS | DFCS | MIS | Medicaid | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6) | **Random Moment Sampling Process** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Restructure the random moment sampling (RMS) process to require workers and supervisors to define activity codes separately from case types. This shall be implemented by collaboration between HZA, MDHS, and Interactive Voice Associates, MDHS' implementation partner for its new RMS system. DFCS shall: | | | | | | | | | | | | | | | | | | | | | | | | | | |
| a. | Define a set of activities, case and non-case specific, to be used for the new RMS. | 7/6/2012 | 5/30/2013 | x | x | x | | | | | | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2011 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| b. | Using DFCS' current definitions and case practices, as well as those of agencies of other states, develop a set of activities and their definitions. | 7/6/2012 | 5/30/2013 | x | x | x | | | | | | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2011 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| c. | Identify case types. | 7/6/2012 | 5/30/2013 | x | x | x | | | | | | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2011 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| d. | Prepare a matrix that maps activities to case types. | 7/6/2012 | 5/30/2013 | x | x | x | | | | | x | | | 7/19/2012 | 100% | 8/16/2012 | 100% | 9/20/2012 | 100% | 10/18/2012 | 100% | 11/15/2011 | 100% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| e. | Amend the cost allocation plan to reference the new RMS system in sufficient detail to obtain federal approval. | 7/6/2012 | 5/30/2013 | x | x | x | | | | | | | | 7/19/2012 | 50% | 8/16/2012 | 50% | 9/20/2012 | 50% | 10/18/2012 | 50% | 11/15/2011 | 50% | 12/20/2012 | 100% | 1/17/2013 | 100% |
| | **Issue written report on the impact of HZA's recommendations on Defendants' ability to increase federal funding and any barriers to implementation. Defendants shall share the report with the Monitor and Plaintiffs.** | 7/6/2012 | 5/30/2013 | | x | x | | x | | | | | | 7/19/2012 | 0% | 8/16/2012 | | 9/20/2012 | 0% | 10/18/2012 | 0% | 11/15/2011 | 0% | 12/20/2012 | 0% | 1/17/2013 | 0% |
| | **Issue Quarterly Reports to the State Implementation Team** | 7/6/2012 | 5/30/2013 | | x | x | | x | | | | | | 7/19/2012 | 0% | 8/16/2012 | | 9/20/2012 | 0% | 10/18/2012 | 0% | 11/15/2011 | 25% | 12/20/2012 | 25% | 1/17/2013 | 25% |
| a. | Reports are issued quarterly or more frequently if needed. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| b. | Tracking matrices form the primary bases for reporting. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| c. | Submit updated tracking matrices plus supplemental information to the SIT by a specified time each quarter. | | | | | | | | | | | | | | | | | | | | | | | | | | |
| b. | Teams submit high priority information more frequently than quarterly. | | | | | | | | | | | | | | | | | | | | | | | | | | |

Prepares MACWIS file

Issued a report as of 09/2012

**State Implementation Finance Sub-Team Project Plan**

| | | | | Date | % Complete |
|---|---|---|---|---|---|

**Implementation and Maintenance of the Recommendations Put Forth by Hornby Zeller Associates and the Center for the Support of Families in the May 2011 Document "Financial Assessment: Findings and Recommendations" in Order to Increase Federal Funding.**

**1) Career Preparation and Development Training Program**

Title IV-E funding shall be sought for eligible expenditures of the "career preparation and development training program" through the Masters of Social Work and Bachelors of Social Work cohort partnerships with the University of Mississippi, University of Southern Mississippi and Jackson State University. DFCS shall:

| | | | | Date | % Complete |
|---|---|---|---|---|---|
| a. | | Update the Child and Family Service Plan ("CSFP") to describe the Masters of Social Work and Bachelors of Social Work partnerships with the universities. The method of funding shall be included in the CSFP update. | | 2/21/2013 | 50% |
| b | | Utilize the Reimbursement Calculator created by HZA to facilitate retroactive claims for reimbursement of expenditures eligible for federal Title IV-E funding. | | | |
| | i. | Utilize the Reimbursement Calculator created by HZA to analyze and maximize allowable IV-E reimbursement of MSW or BSW coursework reimbursed by DFCS to its current and prospective staff. | | 2/21/2013 | 50% |
| | ii. | Utilize the Reimbursement Calculator created by HZA to facilitate quarterly filing for federal reimbursement on a retroactive basis for the Title IV-E eligible expenditures. | | 2/21/2013 | 50% |

| | | | Date | % Complete |
|---|---|---|---|---|
| 2) | **Pre-service Training Program for New Caseworkers and Supervisors** | | | |
| | | Title IV-E funding shall be sought for eligible expenses of the pre-service training program for new caseworkers and supervisors" through the sub-grant with the Child Welfare Training Academy at the University of Mississippi. DFCS shall: | | |
| | a. | Update the CFSP to describe the state's training program and costs which are to be funded with Title IV-E monies. | 2/21/2013 | 50% |
| | b. | Update the CFSP to specify that: new caseworkers will not carry a caseload until all pre-service training has been completed; the work experience component of the training is an integral component of the plan; staff will receive more intensive supervision during the on-the-job training period; and the trainees' performance is closely monitored and assessed. | 2/21/2013 | 50% |
| | c. | Assign new caseworkers to the training cost pool for the first eight weeks so that the appropriate portion of the costs will be eligible for Title IV-E reimbursement. | 2/21/2013 | 100% |
| 3) | **Supervisory Learning Labs and Administrative Technical Assistance** | | | |
| | | All eligible expenses of the Supervisory Learning Labs and Administrative Technical Assistance established by sub-grant with the University of southern Mississippi Shall be allocated to the administrative cost pool, which will be eligible for Title IV-E reimbursement. | 2/21/2013 | 50% |

6

| | | | Date | % Complete |
|---|---|---|---|---|
| 4) | **In-House Training** | | | |
| | Title IV-E funding shall be sought for eligible in-house training costs DFCS shall: | | | |
| | a. | Develop and implement a process for ensuring that the PINS of full-time trainers are assigned to the proper cost pools | 2/21/2013 | **100%** |
| | b. | Develop and implement a process for ensuring that all expenditures associated with training (including meeting rooms, staff travel, and related expenses) are charged to Title IV-E training when the subject of the training is relevant. | 2/21/2013 | **100%** |
| | c. | Insure that all costs for trainers (excluding office space) are allocated to the training pool, which will be eligible for Title IV-E reimbursement. | 2/21/2013 | **100%** |
| 5) | **Supportive Services Expenditures** | | | |
| | Title IV-E funding shall be sought for eligible supportive services expenditures. DFCS shall: | | | |
| | a. | Where allowable, use the Support Services Calculator created by HZA to discontinue the use of TANF and SSBG funding for support services for Title IV-E (or Title XIX) eligible children, and begin charging those services as a Title IV-E (or Title XIX) maintenance cost | 2/21/2013 | **100%** |
| | b. | Institute a process for the filing of retrospective Title IV-E eligible expenditure claims. | 2/21/2013 | **100%** |

7

| | | | Date | % Complete |
|---|---|---|---|---|
| 6) | **Random Moment Sampling Process** | | | |
| | Restructure the random moment sampling (RMS) process to require workers and supervisors to define activity codes separately from case types. This shall be implemented by collaboration between HZA, MDHS, and Interactive Voice Associates. MDHS' implementation partner for its new RMS system. DFCS shall: | | | |
| | a. | Define a set of activities, case and non-case specific, to be used for the new RMS. | 2/21/2013 | 100% |
| | b. | Using DFCS' current definitions and case practices, as well as those of agencies of other states, develop a set of activities and their definitions | 2/21/2013 | 100% |
| | c. | Identify case types. | 2/21/2013 | 100% |
| | d. | Prepare a matrix that maps activities to case types. | 2/21/2013 | 100% |
| | e. | Amend the cost allocation plan to reference the new RMS system in sufficient detail to obtain federal approval. | 2/21/2013 | 100% |
| | **Issue written report on the impact of HZA's recommendations on Defendants' ability to increase federal funding and any barriers to implementation. Defendants shall share the report with the Monitor and Plaintiffs.** | | 2/21/2013 | 0% |
| | **Issue Quarterly Reports to the State Implementation Team** | | 2/21/2013 | 25% |
| | a. | Reports are issued quarterly or more frequently if needed. | | |
| | b. | Tracking matrices form the primary bases for reporting. | | |
| | c. | Submit updated tracking matrices plus supplemental information to the SIT by a specified time each quarter. | | |
| | b. | Teams submit high priority information more frequently than quarterly. | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**State Implementation Finance Sub-Team Project Plan**

| | | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|
| Implementation and Maintenance of the Recommendations Put Forth by Hornby Zeller Associates and the Center for the Support of Families in the May 2011 Document "Financial Assessment: Findings and Recommendations" in Order to Increase Federal Funding. | | | | | | | | | |
| **1) Career Preparation and Development Training Program** | | | | | | | | | |
| Title IV-E funding shall be sought for eligible expenditures of the "career preparation and development training program" through the Masters of Social Work and Bachelors of Social Work cohort partnerships with the University of Mississippi, University of Southern Mississippi and Jackson State University. DFCS shall: | | | | | | | | | |
| a. | Update the Child and Family Service Plan ("CSFP") to describe the Masters of Social Work and Bachelors of Social Work partnerships with the universities. The method of funding shall be included in the CSFP update. | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |
| b. | Utilize the Reimbursement Calculator created by HZA to facilitate retroactive claims for reimbursement of expenditures eligible for federal Title IV-E funding | | | | | | | | |
| i. | Utilize the Reimbursement Calculator created by HZA to analyze and maximize allowable IV-E reimbursement of MSW or BSW coursework reimbursed by DFCS to its current and prospective staff. | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |
| ii. | Utilize the Reimbursement Calculator created by HZA to facilitate quarterly filing for federal reimbursement on a retroactive basis for the Title IV-E eligible expenditures. | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |

| | | | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|
| 2) | | **Pre-service Training Program for New Caseworkers and Supervisors** | | | | | | | | |
| | | Title IV-E funding shall be sought for eligible expenses of the pre-service training program for new caseworkers and supervisors" through the sub-grant with the Child Welfare Training Academy at the University of Mississippi.  DFCS shall: | | | | | | | | |
| | a. | Update the CFSP to describe the state's training program and costs which are to be funded with Title IV-E monies | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |
| | b | Update the CFSP to specify that:  new caseworkers will not carry a caseload until all pre-service training has been completed; the work experience component of the training is an integral component of the plan; staff will receive more intensive supervision during the on-the-job training period; and the trainees' performance is closely monitored and assessed. | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |
| | c | Assign new caseworkers to the training cost pool for the first eight weeks so that the appropriate portion of the costs will be eligible for Title IV-E reimbursement. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| 3) | | **Supervisory Learning Labs and Administrative Technical Assistance** | | | | | | | | |
| | | All eligible expenses of the Supervisory Learning Labs and Administrative Technical Assistance established by sub-grant with the University of southern Mississippi Shall be allocated to the administrative cost pool, which will be eligible for Title IV-E reimbursement. | 3/21/2013 | 50% | 4/18/2013 | 50% | 5/16/2013 | 50% | 6/20/2013 | 50% |

| | | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|
| **4)** | **In-House Training** | | | | | | | | |
| | Title IV-E funding shall be sought for eligible in-house training costs. DFCS shall: | | | | | | | | |
| a. | Develop and implement a process for ensuring that the PINS of full-time trainers are assigned to the proper cost pools. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| b. | Develop and implement a process for ensuring that all expenditures associated with training (including meeting rooms, staff travel, and related expenses) are charged to Title IV-E training when the subject of the training is relevant. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| c. | Insure that all costs for trainers (excluding office space) are allocated to the training pool, which will be eligible for Title IV-E reimbursement. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| **5)** | **Supportive Services Expenditures** | | | | | | | | |
| | Title IV-E funding shall be sought for eligible supportive services expenditures. DFCS shall: | | | | | | | | |
| a. | Where allowable, use the Support Services Calculator created by HZA to discontinue the use of TANF and SSBG funding for support services for Title IV-E (or Title XIX) eligible children, and begin charging those services as a Title IV-E (or Title XIX) maintenance cost. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| b. | Institute a process for the filing of retrospective Title IV-E eligible expenditure claims. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |

11

| | | | Date | % Complete | Date | % Complete | Date | % Complete | Date | % Complete |
|---|---|---|---|---|---|---|---|---|---|---|
| **6)** | **Random Moment Sampling Process** | | | | | | | | | |
| | Restructure the random moment sampling (RMS) process to require workers and supervisors to define activity codes separately from case types. This shall be implemented by collaboration between HZA, MDHS, and Interactive Voice Associates, MDHS' implementation partner for its new RMS system. DFCS shall: | | | | | | | | | |
| | a. | Define a set of activities, case and non-case specific, to be used for the new RMS. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| | b. | Using DFCS' current definitions and case practices, as well as those of agencies of other states, develop a set of activities and their definitions. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| | c. | Identify case types. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| | d | Prepare a matrix that maps activities to case types. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| | e | Amend the cost allocation plan to reference the new RMS system in sufficient detail to obtain federal approval. | 3/21/2013 | 100% | 4/18/2013 | 100% | 5/16/2013 | 100% | 6/20/2013 | 100% |
| | **Issue written report on the impact of HZA's recommendations on Defendants' ability to increase federal funding and any barriers to implementation. Defendants shall share the report with the Monitor and Plaintiffs.** | | 3/21/2013 | 0% | 4/18/2013 | 0% | 5/16/2013 | 0% | 6/20/2013 | 0% |
| | **Issue Quarterly Reports to the State Implementation Team** | | 3/21/2013 | 25% | 4/18/2013 | 25% | 5/16/2013 | 25% | 6/20/2013 | 25% |
| | a. | Reports are issued quarterly or more frequently if needed | | | | | | | | |
| | b. | Tracking matrices form the primary bases for reporting. | | | | | | | | |
| | c. | Submit updated tracking matrices plus supplemental information to the SIT by a specified time each quarter. | | | | | | | | |
| | b | Teams submit high priority information more frequently than quarterly. | | | | | | | | |

**Ex. 2B**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Ginger Gibson [Ginger.Gibson@mdhs.ms.gov] |
| **Sent:** | Saturday, February 23, 2013 3:10 PM |
| **To:** | gmlopes@oymonitor.org |
| **Subject:** | Additional documents in response to your recent request - E-MAIL 1 of 2 |
| **Attachments:** | CQI Sub Team Meeting Minutes 11-7-12.doc; Addl Jan subteam minutes provided to Grace Lopes on Feb 23 2013.docx; Copy of CQI Sub Team Work Plan - MSA YrIII.xls; Minutes of State Implementation Team Meeting-2-5-13 final.docx |

Dear Grace,
I hope you are having a nice weekend! Per your recent request, and following up on the 2 e-mails I sent on 2/14/13 containing a large number of the documents requested, attached are:

-CQI subteam November minutes **- THIS E-MAIL**
-MACWIS, Resource and Policy January minutes (you now have all minutes Nov. - Jan.) **- THIS E-MAIL**
-SIT minutes from 2/5/13 (you now have all minutes Nov. - mid-Feb.) **- THIS E-MAIL**
-CQI workplan (MACWIS is the only one you don't have now***) **- THIS E-MAIL**
-All RIT quarterly reports except 2-W *** - **NEXT E-MAIL**
-All SIT subteam quarterly reports - **NEXT E-MAIL**

I will provide the two documents denoted by "***" as soon as I receive them. I did not want to hold up sending this because of those.

Please let me know if you have any questions or trouble opening the attachments.
Thanks!
Ginger




Ginger Gibson
Staff Attorney/*Olivia Y.* Settlement Coordinator
Division of Family and Children's Services
MDHS State Office - Room 923
601-359-4808
601-278-4751 (cell)
601-359-4477 (fax)
ginger.gibson@mdhs.ms.gov

Child Abuse and Neglect Hotline  1-800-222-8000

 Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.
=

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| **IMPLEMENTATION PERIOD 3: July 2012 - June 2013** | | | | | | |
| **STATEWIDE REQUIREMENTS AND** | | | | | | |
| Conduct follow-up EMU review in Region I-South | P. 25 | 7/1/2012 | | ▬▬▬▬ | Complete | Follow-up review was held June 12-15, 2012 in Lee County. |
| Conduct follow-up EMU review in Region II-West | P. 25 | 7/1/2012 | | ▬▬▬▬ | Complete | Follow-up review was held June 26-29, 2012 in Washington County. |
| Issue EMU review report:  V-East (baseline) | p. 76 | 7/1/2012 | | ▬▬▬▬ | Complete | Report issued June 19, 2012. |
| Convene Data-to-Action Meeting: Region IV-North | P. 35 | 7/31/2012 | | ▬▬▬▬ | Complete | Held July 19, 2012. |
| Conduct baseline EMU review in Region III-North | P. 25 | 8/1/2012 | | ▬▬▬▬ | Complete | Baseline review was held July 24-27, 2012 in Rankin County. |
| Issue EMU review report:  I-North (follow-up) | P. 31 | 8/1/2012 | | ▬▬▬▬ | Complete | Report issued  August 1, 2012. |
| Implement reporting process for Regional CQI Sub-Teams | P.35 | 8/1/2012 | | ▬▬▬▬ | Complete | Minutes template created May 2, 2012 and is being utilized. |
| Revise and begin implementing State CQI Plan | I.B.2 IP3 | 8/5/2012 | | ▬▬▬▬ | Complete | Completed August 2012 |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| Convene Regional CQI Sub-Teams: I-North | P.36 | 8/5/2012 | | Complete | 1-North CQI team meetings occurred March, June, September, December 2012. |
| | | | | | |
| Convene Regional CQI Sub-Teams: IV-South | P.36 | 8/5/2012 | | Complete | 4-South CQI team meetings occurred February, April, July, October 2012, and January 2013. |
| | | | | | |
| Convene Regional CQI Sub-Teams: V-West | P.35 | 8/5/2012 | | Complete | 5-West CQI team meetings occurred October 2012, and January 2013. |
| | | | | | |
| Convene Regional CQI Sub-Teams: III-South | P.36 | 8/5/2012 | | Complete | 3-South CQI team meetings occurred in August and November 2012 and in February 2013. |
| | | | | | |
| Convene Regional CQI Sub-Teams: IV-North | P.36 | 8/5/2012 | | Complete | 4-North CQI team meetings occurred in February, July, and November 2012. |
| | | | | | |
| Hire Two EMU supervisors | P.33 | 8/5/2012 | | Complete | Completed March 2012. |
| | | | | | |
| Hire 3 of the EMU liaisons identified in December 2012 | P. 32 | 8/20/2012 | | Incomplete | As of 02-19-2013, positions are filled in 2-West, 4-North, 4-South, 3-South, 3-North, 5-East, and 5-West. Positions were recently vacated in 1-North (due to retirement) and 1-South (took another position). In addition to 1-North and 1-South, we continue to advertise and recruit for positions in 2-East, 6, 7-East, and 7-West. |
| | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Issue the first statewide Annual CQI Report | P. 31 | 8/20/2012 | | CQI Unit | Complete | Submitted. |
| | | | | | | |
| | | | | | | |
| CQI Sub-Team begins reporting quarterly to SIT | P. 31 | 8/31/2012 | | | Complete | SIT quarterly reporting is occurring from CQI Sub Team - 1st report submitted November 2012 |
| | | | | | | |
| | | | | | | |
| CQI must monitor compliance with the foster care service standard MSA requirements in Regions I-South and II-West and ensure remediation of any identified deficiencies | III.A.1.a MSA | 8/31/2012 | | | Complete/ Work In Progress | |
| | | | | | | |
| | | | | | | |
| Conduct follow-up EMU review in Region IV-South | P. 25 | 9/1/2012 | | | Complete | 4-South annual follow-up review was conducted August 21-24, 2012 in Jones County. |
| | | | | | | |
| | | | | | | |
| Issue EMU review report:  I-South (follow-up) | P. 31 | 9/1/2012 | | | Complete | Issued September 5, 2012. |
| | | | | | | |
| | | | | | | |
| Issue EMU review report:  II-West (follow-up) | P. 31 | 9/1/2012 | | | Complete | Issued September 8, 2012. |
| | | | | | | |
| | | | | | | |
| Hire CQI Data Analyst/Report Writer | P.32 | 9/30/2012 | | | Complete | 10/1/12 - ▓▓▓▓ was promoted to this position |
| | | | | | | |
| Hire CQI Assistant Data Analyst | P.32 | 9/30/2012 | | | Complete | 12/17/12 - ▓▓▓▓ was hired for this position |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Develop CQI training content for new hires to be used at the time of orientation to the agency | P.33 | 9/30/2012 | | | Completed | Submitted to the DFCS Training Unit. |
| | | | | | | |
| | | | | | | |
| Conduct follow-up EMU review in Region III-South | P. 25 | 10/1/2012 | | | Complete | 3-South annual follow-up review conducted September 18-20, 2012 in Hinds County. |
| | | | | | | |
| | | | | | | |
| Issue EMU review report: III-North (baseline) | P. 25 | 10/1/2012 | | | Complete | Issued October 17, 2012. |
| | | | | | | |
| | | | | | | |
| Develop the tracking procedures for monitoring corrective actions needed as a result of concerns raised about the ability of therapeutic foster caretakers to meet the needs of children in their care. | P. 35 | 10/1/2012 | | | In Progress | Draft process completed and submitted to sub team Oct 2012; in review with CSF and legal with modifications suggested. |
| Step 1: | | | 8/1/2012 | | Complete | Draft corrective action process with feedback from field operations, CSF, legal |
| Step 2: | | | 9/1/2012 | | Complete | Process reviewed  via CQI Sub Team |
| Step 3: | | | 10/1/2012 | | | Finalize Corrective Action process for formal release |
| Convene Regional CQI Sub-Teams: Region V-East | P. 35 | 10/1/2012 | | | Complete | 5-East CQI team meetings occurred in September and December 2012. |
| | | | | | | |
| | | | | | | |
| Convene Regional CQI Sub-Teams: Region VII-East | P. 35 | 10/1/2012 | | | Complete | 7-East CQI team met 11-29-2012 |
| | | | | | | |
| | | | | | | |
| Develop agenda template for Regional CQI Sub-Team meetings | P.36 | 11/1/2012 | | | Complete | Created 04-26-2012. Revised 12-05-2012. |
| | | | | | | |
| | | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Implement the review/reporting of reviews of children in therapeutic foster care. | P.37 | 11/1/2012 | | | FCR In Progress | |
| | | | | | | |
| Conduct baseline EMU review in Region VII-West | P. 25 | 11/1/2012 | | Bob Hamish Complete | | 7-West baseline review was conducted October 23-26, 2012 in Harrison County. |
| | | | | | | |
| Conduct baseline EMU review in Region VII-East | P. 25 | 11/1/2012 | | Bob Hamish Complete | | This was done in November 2011. A follow-up was scheduled for November 2012 but was rescheduled for May 2013. |
| | | | | | | |
| Issue EMU review report: IV-South (follow-up) | P. 31 | 11/1/2012 | | Bob Hamish Complete | | Submitted November 14, 2012. |
| | | | | | | |
| Conduct baseline EMU review in Region VI | P. 25 | 12/1/2012 | | Bob Hamish Complete | | Region 6 baseline review was conducted November 13-16, 2012 in Forrest County. |
| | | | | | | |
| Issue EMU review report: III-South (follow-up) | P. 31 | 12/1/2012 | | Bob Hamish Complete | | Issued December 10, 2012 |
| | | | | | | |
| Hire EMU liaison for Region III-South | P.33 | 12/1/2012 | | Bob Hamish Complete | | Hired |
| | | | | | | |
| Hire EMU liaison for Region V-East | P.33 | 12/1/2012 | | Bob Hamish Complete | | Hired |
| | | | | | | |
| Hire EMU liaison for Region III-North | P.33 | 12/1/2012 | | Bob Hamish Complete | | Hired |
| | | | | | | |
| Hire EMU liaison for Region II-East | P.33 | 12/1/2012 | | Bob Hamish In Progress | | Continue to advertise |
| | | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | |
|---|---|---|---|---|---|
| Hire EMU liaison for Region VI | P.33 | 12/1/2012 | | In Progress | Continue to advertise |
| | | | | | |
| Hire EMU liaison for Region VII-East | P.33 | 12/1/2012 | | In Progress | Continue to advertise |
| | | | | | |
| Hire EMU liaison for Region VII-West | P.33 | 12/1/2012 | | In Progress | Continue to advertise |
| | | | | | |
| FCR Report: DFCS shall take reasonable steps to ensure that school-age children are registered for and attending school within 3 days of placement/move | Att. C | 12/31/2012 | | Development Complete/QA In Progress | This report was broken into 2 measures 1. Evidence the child as registered for/attending an accredited school w/in 3 business days of a placement 2. Evidence the child was registered for/attending an accredited school w/in 3 business days of a placement change The 2 measures (reports) were created in January 2013 and was validated in February 2013. They were submitted for evidence of completion in February 2013 |
| | | | | | |
| FCR Report: Children requiring therapeutic and/or rehab services have been provided a treatment plan and services | Att. C | 12/31/2012 | | In Progress | |
| | | | | | |
| FCR Report: In cases where the whereabouts of one or both parents is unknown, DFCS will immediately institute a diligent search for the parents | Att. C | 12/31/2012 | | In Progress | |
| | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | Status | |
|---|---|---|---|---|---|---|
| FCR Report:  Within 30 days of a child's entrance into foster care, the caseworker will convene a team meeting with specified parties to develop service plans. | Att. C | 12/31/2012 | | | ▬▬ In Progress | |
| | | | | | | |
| FCR Report: Service plans shall be reviewed and updated quarterly at a team meeting and within 30 days of a placement change. | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | |
| | | | | | | |
| FCR Report: Appropriate permanency goals include:  no goal of permanent foster care, durable legal custody only after other goals are ruled out, and conditions for APPLA. | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | This report was created in February 2013 and is currently in validation. Upon validation completion, it will be submitted as evidence of completion for February 2013 |
| | | | | | | |
| FCR Report:  For children with goals of reunification, DFCS will engage in concurrent planning within the first six months of custody. | Att. C | 12/31/2012 | | | ▬▬ In Progress | |
| | | | | | | |
| FCR Report: Youth in custody transitioning to independence shall have available an adequate living arrangement, etc. | Att. C | 12/31/2012 | | | ▬▬ In Progress | |
| | | | | | | |
| FCR Report:  Children in custody will receive periodic medical exams and all medically necessary follow-up services/treatment | Att. C | 12/31/2012 | | | ▬▬ In Progress | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| FCR Report: Children 4 yrs old and older shall be provided a mental health assessment by a qualified profissional within 30 calendar days of foster care placement | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | This report was created in February 2013 and is currently in validation. Upon validation completion, this report will be submitted as evidence of completion for February 2013 |
| | | | | | | |
| FCR Report:  Children, birth-3 years old, will be provided a developmental assessment bya aqualified professional and each child older than age 3 shall be provided with a developmental assessment if factors indicate such is warranted | Att. C | 12/31/2012 | | | In Progress | |
| | | | | | | |
| FCR Report: Children age 3 and older shall be provided a dental exam within 90 calendar days of foster care placement and every 6months thereafter. | Att. C | 12/31/2012 | | | In Progress | |
| | | | | | | |
| FCR Report: Chhildren reaching age 3 in care shall be provided a dental exam within 90 calendar of his/her 3rd birthday and every 6 months thereafter. | Att. C | 12/31/2012 | | | In Progress | |
| | | | | | | |

# Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| FCR Report: children with special needs shall be matched with placement resources that can meet their therapeutic, medical and educational needs | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | This report was broken into 3 meaures 1. Is the placement provider meeting the medical needs of the child? 2. Is the placement provider meeting the therapeutic needs of the child? 3. If the child has special needsor has been diagnosed with a condition or disability, is there evidence that the child's needs were considered prior to placement? The 3 measures were created in February 2013 and are currently being validated. Upon validation completion, these reports will be submitted as evidence of completion for February 2013 |
| | | | | | | |
| | | | | | | |
| FCR Report: each foster child is placed in the least restrictive setting that meets his/her individual needs as determined by a review of all intake, screening, assessment and prior placement information on the child available at the time of placement | Att. C | 12/31/2012 | | | In Progress | This report has not been created |
| | | | | | | |
| | | | | | | |
| FCR Report: no later than the time of placement, DFCS will provide foster parents/facility staff with foster child's current available medical, dental, educational and psychological information | Att. C | 12/31/2012 | | | Development Complete /In QA | |
| | | | | | | |
| | | | | | | |

9

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| FCR Report: DFCS will take all reasonable steps to avoid disruption of appropriate placements and ensure placement stability; if worker has knowledge of disruption possibility, s/he must convene FTM immediately | Att. C | 12/31/2012 | | | Development Complete /In QA | |
| | | | | | | |
| | | | | | | |
| FCR Report: Upon taking a child into custody, DFCS shall engage in a thorough screening of the child and an individualized, strengths-based, family-focused, culturally responsive assessment of the family | Att. C | 12/31/2012 | | | Development Complete /In QA | This report was created in February 2013 and is currently being validated. Upon validation completion, this report will be submitted as evidence of completion fro February 2013 |
| | | | | | | |
| | | | | | | |
| FCR Report: Each foster child will receive recommended mental health services pursuant to his/her assessment | Att. C | 12/31/2012 | | | In Progress | |
| | | | | | | |
| | | | | | | |
| FCR Report: all foster children shall be provided with needed follow-up developmental services | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | This report was created in January 2013 and validated in February 2013. It was submitted as evidence of completion in February 2013 |
| | | | | | | |
| | | | | | | |
| FCR Report: DFCS caseworkers will screen each child for general/special educational needs within 30 calendar days of his/her entry into foster care | Att. C | 12/31/2012 | | | Development Complete /QA In Progress | This report was created in January 2013 and validated in February 2013. It was submitted as evidence of completion for February 2013 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **January 2013** | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Issue EMU review report:  VII-West (baseline) | P. 31 | 1/1/2013 | | | Complete | Report was submitted on 01-25-2013. |
| | | | | | | |
| | | | | | | |
| Issue EMU review report:  VII-East (baseline) | P. 31 | 1/1/2013 | | | Complete | The baseline report from the November 2011 baseline review was submitted 02-05-2012. EMU was scheduled to return in November 2012 to conduct a follow-up review but the schedule was changed to coincide more with the updated roll-out schedule. The follow-up review is now scheduled for May 14-17, 2013. |
| | | | | | | |
| | | | | | | |
| **February 2013** | | | | | | |
| Conduct baseline EMU review in Region II-East | P. 25 | 2/1/2013 | | | Complete | Baseline review was conducted January 22-25, 2013 in Grenada County. |
| | | | | | | |
| Issue EMU review reports: VI (baseline) | P. 31 | 2/1/2013 | | | Complete | Report was submitted 02-05-2013. |
| | | | | | | |
| | | | | | | |
| CQI must monitor compliance with the foster care service standard MSA requirements in Region V-West and ensure remediation of any identified deficiencies | III.A.1.a MSA | 2/28/2013 | | EMU/FCR | Complete/In Progress | |
| | | | | | | |
| | | | | | | |
| **March 2013** | | | | | | |
| Conduct follow-up EMU review in Region V-West | P.25 | 3/1/2013 | | | Complete | 5-West follow-up review was conducted February 12-15, 2013 in Pike County. |
| | | | | | | |
| **April 2013** | | | | | | |
| Conduct follow-up EMU review in Region V-East | P.25 | 4/1/2013 | | | | |
| | | | | | | |
| | | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Issue EMU review reports: II-East (baseline) | P.31 | 4/1/2013* | | | | |
| | | | | | | |
| | | | | | | |
| **May 2013** | | | | | | |
| Issue EMU review reports: V-West (follow-up) | P.31 | 5/1/2013 | | | | |
| | | | | | | |
| | | | | | | |
| **June 2013** | | | | | | |
| Conduct follow-up EMU review in Region VII-East | P.25 | 6/1/2013 | | | | |
| | | | | | | |
| | | | | | | |
| Conduct follow-up EMU review in Region I-South | EMU | 6/30/2013 | | | | |
| | | | | | | |
| | | | | | | |
| Conduct follow-up EMU review in Region II-West | EMU | 6/30/2013 | | | | |
| | | | | | | |
| | | | | | | |
| Issue EMU review report:  V-East (follow-up) | P. 31 | 6/1/2013 | | | | |
| | | | | | | |
| | | | | | | |
| **July 2013** | | | | | | |
| Hire all CQI staff identified in plan | I.B.19 of IP3 | 7/5/2013 | | | | |
| | | | | | | |
| | | | | | | |
| Develop & implement content in the FCR instrument for determining whether permanency plans include all the required content. | P.35 | 7/5/2013 | | | Alice Adair Complete | Question # 82 of the PAD collects this information. |
| | | | | | | |
| | | | | | | |

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Train FCR reviewers on procedures for addressing concerns identified in FCR reviews | I.D.4 IP3 | 7/5/2013 | | | Complete | FCR staff received training on 9-4-12 and 2-7-13 as a group after year 3 period began. Training with staff is also implemented through individual supervisory staffing on an ongoing basis |
| | | | | | | |
| | | | | | | |
| Begin implementation of tracking process for annual court reviews | II.B.2.b IP3 | 7/5/2013 | | | | |
| | | | | | | |
| | | | | | | |
| Develop procedures for conducting CQI reviews of investigations of maltreatment reports involving children in MDHS custody, including: a schedule of rolling out the reviews; | II.C.3 IP3 | | | | | |
| Step 1: | | | 9/30/2012 | | | Initial Draft of MIC review process |
| Step 2: | | | 10/31/2012 | | | Finalize MIC review process/procedures |
| Step 3: | | | 11/30/2012 | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Develop procedures for conducting CQI reviews of investigations of maltreatment reports involving children in MDHS custody, including: the tools needed for the reviews; | II.C.3 IP3 | 7/5/2013 | | | | |
| Step 1: | | | 9/30/2012 | | Complete | Initial Draft of MIC review instrument |
| Step 2: | | | 11/30/2012 | | In Progress | Finalize instrument via CQI sub team, legal, CSF review |
| Step 3: | | | 12/31/2012 | | In Progress | HEAT software modifications for tracking purposes |
| Step 4: | | | 1/31/2013 | | In Progress | Address any DFCS policy changes needed. |
| Step 5: | | | 2/28/2013 | | In Progress | Develop MIC Review Training |
| Step 6: | | | 3/31/2013 | | | Train Staff |
| Step 7: | | | 4/30/2013 | | | Pilot and evaluate/make adjustments |

13

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Step 8: | | | 5/31/2013 | | | Finalize all |
| Step 9: | | | 06/01 - 07/01/2013 | | | Roll Out |
| Develop procedures for conducting CQI reviews of investigations of maltreatment reports involving children in MDHS custody, including: Follow-up and accountability processes where concerns are identified with regard to the child's safety or in investigatory or casework activities. | II.C.3 IP3 | 7/5/2013 | | | | (See item above for development of corrective action process that will cover all review processes for the CQI Unit.) |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Hire and train the additional CQI staff needed to implement the reviews of investigations. | II.C.3 IP3 | 7/5/2013 | | | | |
| Step 1: | | | 12/31/2012 | | | Determine staffing needs for MIC reviews |
| Step 2: | | | 12/31/2012 | | | Determine equipment needs for MIC staff |
| Step 3: | | | 1/31/2013 | | In progress; had to re-advertise positions due to no qualified applicants. | Advertise MIC positions |
| Step 4: | | | 3/31/2013 | | | Finalize Hiring |
| Implement the process of reviewing reports of maltreatment of children in foster care | II.C.4. IP3 | 7/5/2013 | | | | |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Conduct follow-up EMU review in Region III-North | EMU | 7/31/2013 | | | | |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| **August 2013** | | | | | | |
| Issue EMU review report: VII-East (follow-up) | P. 31 | 8/1/2013 | | | | |

14

## Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| | | | | | | |
|---|---|---|---|---|---|---|
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| CQI must monitor compliance with the foster care service standard MSA requirements in Regions IV-North, I-North, III-South, and IV-South and ensure remediation of any identified deficiencies | III.A.1.a MSA | 8/31/2013 | | | | |
| Step 1: | | | | | | |
| Step 2: | | | | | | |
| Conduct follow-up EMU review in Region IV-North | EMU | 8/31/2013 | | | | |
| Step 1: | | | | | | |
| Step 2: | | | | | | |

# Ex. 2C

**Grace M. Lopes**

**Attachments:**     CQI Sub Team Minutes sent to Monitor 07 08 13.doc; MACWIS Subteam Workplan dated 03
01 13 sent to Monitor 07 08 13.xlsx; MACWIS Sub Team Quarterly Report sent to Monitor 07
08 13.docx; CQI Sub Team Quarterly Report_June 2013 sent to Monitor 07 08 13.doc;
MACWIS Sub Team Minutes sent to Monitor 07 08 13.docx

**From:** Ginger Gibson [mailto:Ginger.Gibson@mdhs.ms.gov]
**Sent:** Monday, July 08, 2013 10:34 PM
**To:** mcaras@sparb.org
**Subject:** More minutes, etc.

Mia,
Attached are:
CQI subteam: minutes February-May (consolidated); quarterly report
MACWIS subteam: minutes February-May (consolidated); quarterly report; workplan

One more e-mail coming in a bit.
Thanks!
Ginger


Ginger Gibson
Senior Attorney
Division of Family and Children's Services
MDHS State Office - Room 923
601-359-4808
601-278-4751 (cell)
601-359-4477 (fax)
ginger.gibson@mdhs.ms.gov

Child Abuse and Neglect Hotline  1-800-222-8000

Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may
contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of
any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this
in error, please contact the sender and delete the material from all computers.


-----Forwarded by Ginger Gibson/DFCS/MDHS on 07/08/2013 09:25PM -----
To: Ginger Gibson/DFCS/MDHS@MDHS
From: Ginger Gibson/DFCS/MDHS
Date: 07/08/2013 04:21PM
Subject: (Untitled)
*(See attached file: CQI Sub Team Minutes sent to Monitor 07 08 13.doc)*
*(See attached file: MACWIS Subteam Workplan dated 03 01 13 sent to Monitor 07 08 13.xlsx)*
*(See attached file: MACWIS Sub Team Quarterly Report sent to Monitor 07 08 13.docx)*
*(See attached file: MACWIS Sub Team Minutes sent to Monitor 07 08 13.docx)*
*(See attached file: Resource sub-team minutes sent to Monitor 07 08 13.doc)*
*(See attached file: Caseload and Staffing Subteam Minutes sent to Monitor 07 08 13.docx)*
*(See attached file: Caseload and Staffing Subteam QR Sent to Monitor 07 08 13.docx)*


Ginger Gibson
Senior Attorney

1

Division of Family and Children's Services
MDHS State Office - Room 923
601-359-4808
601-278-4751 (cell)
601-359-4477 (fax)
ginger.gibson@mdhs.ms.gov

Child Abuse and Neglect Hotline  1-800-222-8000

Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.
=

# Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| IMPLEMENTATION PERIOD 3: July 2012 - June 2013 | | | | | | |
| STATEWIDE REQUIREMENTS AND MEASURES (PERIOD 3) | | | | | | |
| Repeat data training for FCR and EMU staff annually | P.33 | 7/1/2012 | | CSF/EMU/MACWIS | Done | completed in February 2012 |
| Produce Report: MWZ017D1 &D2 Children reaching the point at which they have spent 17 of previous 22 months in foster care during the period shallhave TPR petition filed or exception documented | Att. C | 7/11/2012 | | MACWIS | Done | Went into production October 2012. Detail report expected to be modified and in production by March 31, 2013. |
| Produce Report: MWLS318D  & S At least 80% of children in custody shall be provided with contacts with their parents/siblings not in the same placement | Att. C | 7/15/2012 | | MACWIS | Done | Went into production August 2012. Summary report expected to be modified and in production by  March 31, 2013 |
| Produce Report: MWLS316 Siblings who enter placement at/near the same time are placed together (with exceptions) | Att. C | 7/15/2012 | | MACWIS | Done | Went into production October 2012. Report expected to be modified and in production by March  31, 2013. |
| Produce Report: MWZ0510D & S No foster child is placed in a foster care setting that has not been licensed or  approved as meeting DFCS licensure standards unless the child is placed pursuant to the relative licensing process | Att. C | 7/31/2012 | | MACWIS | Done | Went into production August 2012. Detail and Summary Report to be modified. |
| Hire the additional MACWIS staff to be allocated to data report validation | P.32 | 7/31/2012 | | MACWIS Director | Done | 7/1/2012 |
| Update data dashboard quarterly, including new validated reports as they are developed in accordance with the attached schedule | P. 28 | 7/31/2012 | | MACWIS | Done | 7/31/2012 |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 7/30/2012 | | CQI/MACWIS | Done | 7/24/2012 |
| August 2012 | | | | | | |
| Re-Validation: Each child is placed within his/her own county or within 50 miles of the home from which s/he was removed | P.74 | 8/14/2012 | | MACWIS | | Report went into production August 2012, due for revalidation feb 2013 |
| Update data dashboard quarterly, including new validated reports as they are developed in accordance with the attached schedule | P. 28 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Provide training to new MACWIS staff on data report validation procedures | P.32 | 8/31/2012 | | CSF/MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZAH08 | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZTACR | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZTPHR | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| Re-Validation: MWBRD05 | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWBRD10 | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWBRD07 | P. 70 | 8/31/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWZPREV | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZPROT | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZRESL | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZRESP | P. 70 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZPLMC | P.71 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Re-Validation: MWZPLMD | P.71 | 8/31/2012 | | MACWIS | Done | 8/31/2012 |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 8/31/2012 | | CQI/MACWIS | Done | 8/23/2012 |
| **September 2012** | | | | | | |
| Produce report: All new caseworkers/ supervisors will complete their training requirements before assuming their responsibilities | P. 74 | 9/14/2012 | | Training Division | | 90 days after start of IP3. Being manually produced by the Training Division |
| Re-Validation: MWLS315 every child entering foster care shall receive a health screening evaluation from a qualified medical practitioner within 72 hours of placement | P. 74 | 9/22/2012 | | MACWIS | Done | 12/31/2012 |
| Re-Validation: MWLS315 within 30 calendar days of placement in foster care, each child shall receive a comprehensive health assessment | P. 74 | 9/22/2012 | | MACWIS | Done | 12/31/2012 |
| Re-Validation: MWBRD16 | P.71 | 9/30/2012 | | MACWIS | Done | 1/31/2013 |
| Re-Validation: MWLS50D | P.71 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS51D | P.71 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS52H | P.71 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS53H | P.71 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS54A | P.71 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS55A | P.72 | 9/30/2012 | | MACWIS | Done | 9/30/2012 |
| Re-Validation: MWLS312 | | 9/30/2012 | | MACWIS | Done | 10/31/2012 |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 9/30/2012 | | CQI/MACWIS | Done | 9/24/2012 |
| **October 2012** | | | | | | |

# Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)

*Status: Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| Re-Validation: MWLS316D Siblings who enter placement at/near the same time are placed together (with exceptions) | P. 74 | 10/23/2012 | | MACWIS | Done | 1/31/2013 |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 10/31/2012 | | CQI/MACWIS | Done | unsure of exact date, couldn't find email notifying attorney reports were ready for pick-up |
| **November 2012** | | | | | | |
| Produce Report: At least 75% of caseworkers carry a caseload that doesn't exceed Plan requirements | Att. C | 11/3/2012 | | MACWIS | Done | 120 days after start of IP3. Done as manual reports. |
| Produce Report: No more than 10% of caseworkers carry a caseload exceeding 2x the caseload requirements | Att. C | 11/3/2012 | | MACWIS | Done | 120 days after start of IP3. Done as manual reports. |
| Produce Report: No more than 10% of supervisors, who are responsible for supervising caseworkers, shall be responsible for supervising more than 5 caseworkers | Att. C | 11/3/2012 | | MACWIS | Done | 120 days after start of IP3. Done as manual reports. |
| Re-Validation: MWLS318D & S At least 80% of children in custody shall be provided with contacts with their parents/siblings not in the same placement | P. 74 | 11/27/2012 | | MACWIS | Done | 1/31/2013 |
| Re-Validation: MWZWCR3 | P. 69 | 11/30/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWZWC52 | P. 69 | 11/30/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWZ1271 | P. 69 | 11/30/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWZ1272 | P. 69 | 11/30/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWBRD06 | P. 69 | 11/30/2012 | | MACWIS | Done | 11/30/2012 |
| Re-Validation: MWZ0141 | P. 69 | 11/30/2012 | | MACWIS | Done | MWZ014D1 11/20/2012 |
| Re-Validation: MWZ0142 | P. 69 | 11/30/2012 | | MACWIS | Done | MWZ014D2 11/30/2012 |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 11/30/2012 | | CQI/MACWIS | Done | 11/27/2012 |
| **December 2012** | | | | | | |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 12/31/2012 | | CQI/MACWIS | Done | 12/27/2012 |
| **January 2013** | | | | | | |
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 1/31/2013 | | CQI/MACWIS | Done | 1/28/2012 |
| **February 2013** | | | | | | |

**Requirements Matrix for the Modified Settlement Agreement (MSA) and Year III Implementation Plan (IP)**

*Status:  Green= On Time/No Delays, Yellow=Possible Delays/In Progress, Red=At Risk/Overdue

| MSA Requirement | MSA and Yr III Plan Citation | Deliverable Due Date | Internal Due Date | Assigned To | Status* | Comments/Explanation of Status |
|---|---|---|---|---|---|---|
| Provide all relevant reports to monitor/plaintiffs for the month within 30 days of the date the reports are available | MSA I.F. | 2/28/2013 | | CQI/MACWIS | Done | 2/27/2013 |
| **March 2013** | | | | | | |

**Ex. 3**

Mississippi, DFCS Policy                                                    Section D
Revised 7-22-13

## FOSTER CARE

---

If the child's placement changes, or there is a significant change affecting the child or his/her family, a FTM shall be convened and the FSP must be updated within thirty (30) calendar days of the date of change reflecting the decisions made as a result of the meeting. The COR Worker shall make arrangements for the date, time, and location and also facilitate the meeting.

In instances in which it is impossible to meet with one or both parents, the planning process will proceed as described above, notwithstanding the parent's absence.

It is important to note that the FTM must be held in enough time for the FSP review to be approved within ninety (90) calendar days.

### (3) Final Family Team Meeting

Prior to case closure, a final FTM will be held to develop an Aftercare plan that identifies all of the services needed or desired and the steps for obtaining these services to help ensure that the conditions that led to the child's placement in foster care have been addressed. (see "Post Placement Services" for more details on Aftercare planning.) For list of participants see Initial Family Team Meeting.

### c) Family Service Plan

The FSP should be individualized, strengths-based, family-focused, and culturally responsive. The planning process shall proceed regardless of the Worker's ability to locate one or both parent(s) and this should be documented in MACWIS.

### d) Family Service Plan

The components of an FSP include:

- Family Team Meetings;
- Reason for services;
- Services provided;
- Educational;
- Medical;
- Emotional behavioral issues;
- Tasks, plans and goals;

Mississippi, DFCS Policy                                          Section D
Revised 7-22-13

## FOSTER CARE

- Task evaluation;

- Adoption discussion;

- Barriers to permanent plan;

- Mental health assessment;

- Family engagement.

There are five types of FSPs:

- Initial,

- Review,

- Add/Change,

- Custody Change, and

- Final.

Each FSP must be submitted to the supervisor for approval. Every FSP will be filed with the court of jurisdiction and the signed copy filed in the case record. A copy of the signed FSP is given to the child's parents or primary caretaker.

## (1) Initial FSP

In a case where the child in custody has a permanent plan of reunification, an FSP between the Worker and the parent(s)/caretaker(s)/child(ren) is required. The FSP should be used as a means of facilitating the child(ren)s' return home to the parent/primary caretaker.

The FSP is developed and submitted to the supervisor within thirty (30) calendar days of the custody date, unless the court determines otherwise. Along with this FSP, the Worker must also complete and submit the CFA.

The parent(s) or caretaker(s) will have a six month period in which to complete the tasks in the FSP. At the end of six months the court may direct DFCS to: 1) continue to work with the parent(s) or caretaker(s) for return of the child to their home, 2) begin procedures to terminate parental rights, or 3) to pursue another permanency plan.

Each FSP and revision of the plans shall include the following:

- Service goals, desired outcomes and timeframes for achieving them;

Mississippi, DFCS Policy                                      Section D
Revised 7-22-13

## FOSTER CARE

- Service and supports to be provided, and by whom;

- The signature of the parent(s), with whom reunification is planned, and when appropriate, the child or youth; and

- Addresses, as appropriate;

- Unmet services and support needs that impact safety, permanency and wellbeing;

- Maintaining and strengthening relationships;

- Educational needs and goals; and the need for culturally responsive services and the support of the family's informal social network.

- The goals and tasks, set forth within the FSP shall be a direct reflection of the decisions made within the FTM. The parent(s)/caretaker(s) and the child shall sign this FSP upon agreeing to the listed goals and tasks within it. All efforts to engage parent(s) in developing the FSP must be well documented in MACWIS, whether successful or not.

### (2) Review FSP

The Review FSP is an assessment of progress toward permanent plans identified in the Initial FSP. It is submitted and approved every ninety (90) calendar days.

The Worker has eighty-five (85) calendar days to create and submit the Review FSP to the ASWS and the ASWS has five (5) calendar days to approve and sign the Review FSP. The CFA is updated each time the FSP is reviewed.

### (3) Add/Change FSP

The Add/Change FSP is used only when there is a change in direct services, such as a change in the COS and should be updated or revised within ten (10) calendar days of the change.

### (4) Custody Change

If a Prevention/Protection case is changed to a Placement case, due to children being taken into custody, or a placement case is changed to prevention/protection the Custody Change type will be used.

### (5) Final FSP

The Final FSP is selected only when services are terminated for the family and the case is being closed. A final CFA will be completed in conjunction with the Final FSP.

Mississippi, DFCS Policy                                                      Section D
Revised 7-22-13

## FOSTER CARE

The court must render a judicial determination of any reasons identified by the county for extending the time frame of an FSP beyond 6 months.  Reasons can include but are not limited to the following:

- Parents make regular visits/contacts with the child, maintaining a relationship which benefits the child.

- Parent is unable, due to no fault of his or her own, to enter treatment during the time of the service agreement.

- Parents are making diligent efforts and progressing toward completion of the service agreement.

- The services needed to reunite the family are not available.

- Parent has an illness diagnosed and documented by a physician that temporarily hinders compliance with the service agreement.

- Parent is involved in parenting classes, treatment programs, and/or other services which are progressing toward reunification but will not be completed within the six months time frame.

- Parental incarceration

## (6)  Working with Incarcerated Parents

Parents who are incarcerated continue to have rights to be involved in their children's lives, regardless of their crime unless their parental rights have been terminated, aggravating circumstances are present, or the court determines that DFCS is not required to continue involvement with the parent/s.

Like their parents who are incarcerated, children in foster care also have a right to have a relationship with their parent/s despite the parent's incarceration. There are special challenges and issues in trying to work with incarcerated parent/s but workers should consider the value of the relationship between the parent/s and the child.

When a parent is incarcerated the Worker should:

- Obtain the name of the incarcerated parent and the address of the facility. This information is available for public use through the Mississippi Department of Corrections (MDOC) website, at http://www.MDOC.state.ms.us under the quick links section, there is a link entitled "inmate search". The information provided includes a general description such as height, weight, race and sex, inmate identification number as well as

# Ex. 4A

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:        601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

December 3, 2012

**VIA ELECTRONIC MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

> RE: *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
> Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

In accordance the Year 3 Implementation Plan provisions (due December 3, 2012), Defendants
are producing the following:

*Y3IP - I.D.1*
*Defendants shall produce accurate and validated reports as identified in Appendix C" to the Modified Settlement
Agreement that reflect county-by-county performance.....*

> MACWIS Reports          DHS 309018-312020

The requested Excel versions of 2 reports are attached to the email accompanying this cover
letter and the documents are being sent on DVD via U.S. mail

The manual reports noted below have been delayed due to many unanticipated difficulties in
implementation of the Family Service Plan (FSP) which is replacing the Individualized Service
Plan (ISP). Because caseload report data is extracted from the ISP, a transition must be made in
order to pull the data from the FSP. In addition to this change, redesign work must be done in
order to produce accurate point in time caseload measurements. DFCS anticipates that the
changes will be complete by late January or early February. Thus, the first reports to capture the
new changes will run by March 5th.

- Caseworkers shall not carry a caseload that doesn't exceed Plan requirements
- Caseworkers do not carry a caseload exceeding 2 times the caseload requirements
- Supervisors responsible for supervising caseworkers shall be responsible for
  supervising no more than 5 caseworkers

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

Sincerely,

Kenya Key Rachal

cc: Grace Lopes
    Mark Smith

Enclosures

**Ex. 4B**



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:        601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

January 2, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

In accordance the Year 3 Implementation Plan provisions (due January 2, 2013), Defendants are
producing the following, with Excel versions being attached to email and DVD via US Mail:

*Y3IP - I.D.1*
*Defendants shall produce accurate and validated reports as identified in Appendix C" to the Modified Settlement*
*Agreement that reflect county-by-county performance.....*

MACWIS Reports          DHS 312640-315692

As a reminder, the three manual caseload reports continue to be delayed due to the unanticipated
difficulties in implementation of the FSP which is replacing the ISP.  Because caseload report
data is extracted from the ISP, a transition must be made to pull data from the FSP and redesign
work must be done in order to produce accurate point-in-time caseload measurements.  DFCS
anticipates the changes will be completed by late January/early February and the first reports to
capture the new changes will run by March 5th.

Sincerely,

*Kenya*

Kenya Key Rachal

cc: Grace Lopes
       Mark Smith
Enclosures

**Ex. 4C**



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

February 1, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

   RE: *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
       Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

In accordance the Year 3 Implementation Plan provisions (due February 1, 2013), Defendants
are producing the following, with Excel versions being attached to email and DVD via US Mail:

*Y3IP - I.D.1*
*Defendants shall produce accurate and validated reports as identified in Appendix C" to the Modified Settlement*
*Agreement that reflect county-by-county performance.....*

   MACWIS Reports    DHS 316340-319197

The three manual caseload reports continue to be delayed due to the unanticipated difficulties in
implementation of the FSP which is replacing the ISP.  DFCS continues to anticipate the first
reports to capture the new changes will run by March 5th.

Sincerely,

Kenya Key Rachal/grd

Kenya Key Rachal

cc: Grace Lopes
  Mark Smith
Enclosures

# Ex. 5A

**Grace M. Lopes**

---

**From:** Rachal, Kenya [mailto:krachal@bakerdonelson.com]
**Sent:** Wednesday, September 04, 2013 6:10 PM
**To:** Grace M. Lopes; Tullos, Ashley C.
**Cc:** 'Miriam Ingber'; 'Julia Davis'; 'Mia Caras'; mjordan@sparb.org; Long, Gwen
**Subject:** RE: Question Concerning September 3, 2013 Correspondence Regarding Reports Produced Pursuant to the June 24, 2013 Order

Hi Grace:

Good afternoon.  The reports that were due September 1st (Sept. 3rd as a result of the holiday) cover a period of 13 months and thus are extremely voluminous.  We received the other reports after business hours but had no staff available to burn the CDs and get them in the mail to you and Plaintiffs.

The remaining pdf reports were burned onto CDs today and were sent to you and Plaintiffs this afternoon via FedEx.  As a result, you should receive both sets of CDs about the same time.  Per the parties' earlier agreement that the workload report would be delayed due to getting further input from all parties, that report is still being developed and will be produced as soon as it becomes available.

It has been determined that there is an issue with the Excel version of the reports sent yesterday.  The pdf reports are fine.  BCS is trying to work out the kinks in the Excel versions.  We'll send them as soon as they are ready.

Due to the volume of reports we were unable to bates label each individual page of the reports prior to providing these CDs.  We plan to provide bates labeled versions as soon as possible.

Thanks,
Kenya

# Ex. 5B



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL, ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

October 2, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

      RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
              Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

Enclosed please find a CD (sent via US Mail)  (DHS 361472) containing the following BCS-generated reports and Excel versions:

        AR3 - Caseload Count of Dedicated Workers (8/31/13)
        MWBRD16 -  Children in Custody Ages 14-20 and Their IL Services and Skills Provided
              (8/1/11-8/31/13)
        MWBRD16 PAD 5 - Children Receiving IL Services Tied to Their Plan (8/1/11-8/31/13)
        MWLS312 PAD 19 - Children Who Have Had a Permanency Plan Developed Within
        30 days Detailing Goal, Timeframes, and Activities to Support Goal (2/1/12-8/31/13)

With regard to the report AR3, only the August 2013 report is being produced rather than 14 monthly reports.  We have been advised that MACWIS does not maintain the historical data needed to produce these reports.

With regard to the PAD reports noted above, the report should have included only those children who had both a county conference and a completed PAD within the reporting period.  During the validation process it was noted that there are some instances of children with completed PADs in the reporting period but whose county conference was held prior to the reporting period.  DFCS will attempt to rectify this county conference issue prior to the next submission of reports.

ALABAMA  •  GEORGIA  •  LOUISIANA  •  MISSISSIPPI  •  TENNESSEE  •  WASHINGTON, D.C.

Defendants are working very hard to get the remainder of the reports produced as soon as possible. We will send the balance of the reports on as soon as they are available.

Sincerely,

Kenya Key Rachal

cc: Grace Lopes
     Mark Smith
Enclosures

# Ex. 5C

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

MEADOWBROOK OFFICE PARK
4268 I-55 NORTH
JACKSON, MISSISSIPPI 39211

PHONE:  601.351.2400
FAX:      601.351.2424

www.bakerdonelson.com

ASHLEY CHRISTIN TULLOS, ASSOCIATE
**Direct Dial**: 601.351.8949
**Direct Fax**: 601.974.8949
**E-Mail Address**: atullos@bakerdonelson.com

September 3, 2013

## VIA ELECTRONIC & US MAIL

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

   RE: Olivia Y., et al. v. Haley Barbour, et al; In the United States District Court for the
      Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

   Enclosed please find 3 CDs (sent via US Mail) containing MACWIS reports MWLS54A and MWLS55SA and the manual Supervisor report which are identified in Attachment Two of the Court's June 24, 2013 Order.

- MWLS54A is contained on the CD bates labeled DHS 356871. The CD contains monthly reports for the months of August 2012 through August 2013 and provides a PDF and Excel version of each monthly report.

- MWLS55SA is contained on the CD bates labeled DHS 356872. The CD contains monthly reports for the months of August 2012 through August 2013 and provides a PDF and Excel version of each monthly report.

- The manual Supervisor report is contained on the CD bates labeled DHS 356873. The CD contains a report for the month of August 2013. During the validation process, it was discovered that the start and end dates to worker and supervisor assignments are not recorded in MACWIS. Therefore, the report can only look at what exists currently in the system, and cannot 'back date' a previous timeframe to determine if the supervision workload exceeded the limit. This information will be included in the gap analysis for this report that will be produced by Defendants.

September 3, 2013
Page 2

Due to the voluminous nature of the reports and the intervening Labor Day holiday, Defendants were unable to bates label each individual page of the reports prior to providing these CDs. However, Defendants will be completing this task as soon as possible and will provide bates labeled versions of these reports at that time.

Sincerely,

Ashley C. Tullos

cc:    Grace Lopes
       Mark Smith

**Ex. 5D**



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

November 1, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

      RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
                   Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

Enclosed please find the following documents:

*Manual Report "New caseworkers/supervisors complete their training requirements before
assuming their responsibilities"* -

Defendants are producing this report pursuant to Appendix 2 of the June 24, 2013 Court Order.
This report tracks specific hours for classroom training and OJT completion (but not specific
OJT hours).  Starting October 2013, the specific hours of OJT will be tracked and verified.  As a
result, the next quarter's report will include the specific hours of OJT completed by each worker.

      Manual Training Reports (11/1/13)   DHS 361576-361607 (PDF)
                                    Excel versions attached to forwarding email

*Manual Licensure Investigation Report "For investigations of agency group homes, emergency
shelters, and private child placing agency resource homes, DFCS shall undertake a separate
investigation of the contract provider's compliance with DFCS licensure standards."*

This manual report includes those for July, August, and September 2013 and is produced in
accordance with Appendix 1 of the Period 4 Plan

      Licensure Training Reports (7-9/13)  DHS 361553-361557 (PDF)
                                    Excel versions attached to forwarding email

BCS-Generated Reports        DHS 361608

This DVD includes the following reports:

*LS315 "Children Who Have Had an Initial Screening and Comprehensive Health Assessment"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*SZTACR "Timeliness of County Conference"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*SZTPHR "Timeliness of Permanency Hearing"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*AR2 "Count of Supervisors and Their Assigned Caseworkers"* - 1 PDF and 1 Excel report as of September 30, 2013

*SXBRDR16 "Children in Custody Ages 14-20 and Their Independent Living Services and Skills Provided"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SXBRD05B "Children Exiting Custody with an Outcome of Reunification"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SMWBRD06 "Rate of Maltreatment in Care"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*S312 "Children Who Have Had a Permanency Plan Developed w/in 30 Days of Entry into Foster Care"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SZRESL "Licensure Status of Resource Family Homes"* - 1 PDF and 1 Excel report as of 9/30/13

*SZ0510 "Number of Children in Foster Care by Placement Type"* - 1 PDF and 1 Excel report as of 9/30/13

*SWZ1271 "Timeliness of Investigations for Custody Children"* - 1 PDF and 1 Excel report as of 9/30/13

*SZPLMBD "Frequency of Caseworker Visits with Therapeutic Foster Parents"* - 1 PDF and 1 Excel report that cover 9/1/13-9/30/13

*SBRD10 "Length of Time to Adoption Finalization"* - 1 PDF and 1 Excel Report that cover 10/1/12-9/30/13

*SZRESP "Number of Pending Resource Family Homes"* - 1 PDF and 1 Excel Report as of 9/30/13

*SWZ1271G "Timeliness of Investigations for Custody Children - Intake Detail for Two Months Prior"* - 1 PDF and 1 Excel Report as of 9/30/13

*MWSLS52H "Children in Foster Care less than 10 Years of Age Placed in a Congregate Care Setting"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SZ0171 "Children in Custody 17 of 22 Months with a TPR Filed or Exception Noted"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SLS50D "Children Over 45 Days in Emergency Shelter or Temporary Facility"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*S-PAD 4 "County Conference Participation Report"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*SZPLMC "Frequency of Caseworker Visits with Non-Therapeutic Resource Homes"* - 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*SLS319D "Children in Unlicensed Placements"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SWZC5D "Children in Out of Home Care With Worker -Seen Alone"* - 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*SWZCR3 "Frequency of Caseworker Visits with Parents/Caregiver Whom Children are to be Reunified* "- 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*S-PAD6 "Child Contacts with Family in First 24 Hours of Custody"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*S-PAD7 "Youth Court Objection to Unlicensed Placement"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*SZPLM5 "Children in Custody Less that 12 Months Who Have 2 or Fewer Placements"* - 1 PDF and 1 Excel Report that covers 10/1/2012-9/30/2013

Please note that the following reports that were due for production have been delayed as explained below:

*SLS316 "Siblings Who Enter Placement At/Near the Same Time are Placed Together (with Exceptions)*

As part of the validation process, some inconsistencies in the utilization of the radial button "Initially Placed Together", by workers was noted in a few cases (10 of the 234 in the sample). This issue resulted in cases returning a different "requirements met" answer than they should. While we do not want to program a report around data entry inconsistencies, in order to ensure this report is reflecting the most accurate information about children being initially placed with siblings or who have a MSA allowable exception noted, it was determined that it would be best for the report to cross check the resource ID and not rely solely on the "Initially Placed Together" radial. This is a significant programming change since it impacts summary data as well. There was insufficient time for BCS to make this programming change by today and allow time to have the resulting report verified. Defendants anticipate that the programming change will be made next week, followed by the verification process. We anticipate producing the report to the Court Monitor and Plaintiffs on or before Wednesday, November 13th.

*AR1 Detail Report Workload -*

The mixed caseload report was run as of September 30, 2013 and Defendants began checking the validity of the report. It was determined that a number of programming fixes were needed. The last of the fixes was completed this week. As a result there is

insufficient time to allow 8 days for the field to review the report and for Defendants to complete the validation process as described in the data scrubbing and validation plan. Another concern is that if the September 30th report was sent to the field staff for review now, there would be accuracy issues since the field staff would have to identify what their caseload was as of September 30th. Defendants believe the most prudent course is to run the report as of November 1st, complete the validity check, and provide it to the field next week to complete the validation process. Defendants plan to produce AR1 to the Court Monitor and Plaintiffs on December 1, 2013.

Manual Report - "*All relative placements approved for expedited placement shall undergo the full licensing procedure within 90 calendar days of the child's placement in the home*"

There is a technical issue with regard to the Excel version of this report. We'll send the PDF and Excel report as soon as possible next week.

Sincerely,

Kenya Key Rachal

Enclosure

cc:     Grace Lopes
          Mark Smith

**Ex. 5E**



4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:        601 351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

December 2, 2013

**Via Email and FedEx**

Julia Davis
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
       Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Julia:

The following data reports are included on the enclosed CD (DHS 361857):

SLS54A  *"Children in the Initial 90 Days of a Trial Home Visit"* - 1 PDF and 1 Excel
report that cover the time period 10/1/13 through 10/31/13.

SLS55A  *"Custody  Children Remaining in Same Out of Home Placement Following an
Investigation"* - 1 PDF and 1 Excel report that cover the time period 10/1/13 through
10/31/13.

SWZCR3  *"Frequency of Caseworker Visits with Parents/Caregiver Whom Children are
to be Reunified"*- 1 PDF and 1 Excel report that cover the time period 10/1/13 through
10/31/13.

SWZC5D  *"Children in Out of Home Care With Worker -Seen Alone"* - 1 PDF and 1
Excel report that cover the time period 10/1/13 through 10/31/13.

AR2   *"Count of Supervisors and Their Assigned Caseworkers"* - 1 PDF and 1 Excel
report as of 10/31/13.

SZPLMBD - *"Frequency of Caseworker Visits with Therapeutic Foster Parents"* - 1 PDF
and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

SZPLMC  *"Frequency of Caseworker Visits with Non-Therapeutic Resource Homes"* - 1
PDF and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

SWZ1271 - *"Timeliness of Investigations for Custody Children"* - 1 PDF and 1 Excel
report cover the time period 10/1/13 through 10/31/13

SXBRD05B  *"Children Exiting Custody with an Outcome of Reunification"* - 1 PDF and
1 Excel report that cover the time period 11/1/12 through 10/31/13.

ALABAMA  •  GEORGIA  •  LOUISIANA  •  MISSISSIPPI  •  TENNESSEE  •  WASHINGTON, D.C.

SBRD10  *"Length of Time to Adoption Finalization"* - 1 PDF and 1 Excel Report that cover the time period 11/1/12 through 10/31/13.

SXBRDR16 *"Children in Custody Ages 14-20 and Their Independent Living Services and Skills Provided"* - 1 PDF and 1 Excel report that cover the time period 11/1/12 through 10/31/13.

S312 - *"Children Who Have Had a Permanency Plan Developed w/in 30 Days of Entry into Foster Care"* - 1 PDF and 1 Excel report that cover the time period period 11/1/12 through 10/31/13.

MWSPLMC PAD 2  *"Content of Caseworker Visits with Non-Therapeutic Resource Homes"* - 1 PDF and 1 Excel report that cover the time period 5/1/13-10/31/13.

MWSPLMB PAD 3 *"Content of Caseworker Visits with Therapeutic Resource Home"* - 1 PDF and 1 Excel report that cover the time period 5/1/13-10/31/13.

MWBRD16 PAD 5  *"Children Receiving IL Services Tied to Their Plan"* - 1 PDF and 1 Excel report that cover the time period 5/1/13-10/31/13.

MWLS312 PAD 19  *"Children Who Have Had a Permanency Plan..."* -  1 PDF and 1 Excel report that cover the time period 5/1/13-10/31/13.

MWZ0510 *"Number of Children in Foster Care by Placement Type"* -  1 PDF and 1 Excel report that cover the time period as of 10/31/13.

SWZ1271G  *"Timeliness of Investigations for Custody Children - Intake Detail for Two Months Prior"* - 1 PDF and 1 Excel Report for period 8/1/13 through 8/31/13.

SZPLM5 *"Children in Custody Less that 12 Months Who Have 2 or Fewer Placements"* - 1 PDF and 1 Excel Report that cover the time period 11/1/12 through 10/31/13.

SZRESL- *"Licensure Status of Resource Family Homes"* - 1 PDF and 1 Excel report as of 10/31/13.

SZRESP - *"Number of Pending Resource Family Homes"* - 1 PDF and 1 Excel Report as of 10/31/13.

AR3 - *"Caseload Count of Dedicated Workers"* - 1 PDF and 1 Excel report as of 10/31/13.

SLS50D *"Children Over 45 Days in Emergency Shelter or Temporary Facility"* -  1 PDF and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

MWSLS52H *"Children in Foster Care less than 10 Years of Age Placed in a Congregate Care Setting"* - 1 PDF and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

SLS315 - *"Children Who Have Had an Initial Screening and Comprehensive Health Assessment"* -  1 PDF and 1 Excel report that cover the time period time period 11/1/12 through 10/31/13.

SLS316 - *"Children in Sibling Groups Who Have Entered Care Who are Initially Placed Together"* 1 PDF and 1 Excel report that cover the time period 11/1/12 through 10/31/13.

SLS319D *"Children in Unlicensed Placements"* - 1 PDF and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

S-PAD 4 *"County Conference Participation Report"* - 1 PDF and 1 Excel report that cover the time period 5/1/13 through 10/31/13.

S-PAD6 - *"Child Contacts with Family in First 24 Hours of Custody"* - 1 PDF and 1 Excel report that cover the time period 5/1/13 through 10/31/13.

S-PAD7 - *"Youth Court Objection to Unlicensed Placement"* - 1 PDF and 1 Excel report that cover the time period 5/1/13 through 10/31/13.

SZ0171 - *"Children in Custody 17 of 22 Months with a TPR Filed or Exception Noted"* - 1 PDF and 1 Excel report that cover the time period 10/1/13 through 10/31/13.

TACR - *"Timeliness of County Conference"* - 1 PDF and 1 Excel report that covers the time period 11/1/12-10/31/13.

TPHR - *"Timeliness of Permanency Hearing"* - 1 PDF and 1 Excel report that covers the time period 11/1/12-10/31/13.

MWLS51D - *"Children in Custody with 2 or More Emergency Placements..."* 16 PDF and 16 Excel reports that cover the time period 7/1/12 through 10/31/13.

MWLS53HS - *"Sibling Groups with 1 or More Siblings Under 10 and Placed in Congregate Care Over 45 Days"* 16 PDF and 16 Excel reports that cover the time period 7/1/12 through 10/31/13.

MWLS314 - *"Children Placed out of County or Beyond 50-Mile Radius"* 16 PDF and 16 Excel reports that cover the time period 7/1/12 through 10/31/13.

PAD 17 - *"Therapeutic, Developmental Diagnosis, Plan and Services"* 16 PDF and 16 Excel reports that cover the time period 7/1/12-10/31/13.

PAD 20 - *"Service Plans Updated Quarterly and for Placement Changes"* 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/12 through 5/1/13-10/31/13.

PAD 21 - *"Appropriate Permanency Goal"* 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/12 through 5/1/13-10/31/13.

> With regard to PAD 21, DFCS discovered that there are some cases in the reports where Q82 was answered "null." This appears to be a data availability issue. Because additional revisions were made to the PAD, when the BCS reports were generated, questions that were added to the PAD resulted in an answer of "null" (the question was not in existence at the time the county conference was held).

PAD 22 - *"Concurrent Planning in 1st 6 Months"* 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/13 through 5/1/13-10/31/13.

PAD 23 - *"IL Services for Independence"* 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/12 through 5/1/13-10/31/13

PAD 25 - *"Mental Health Assessment within 30 Days of Custody"* 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/12 through 5/1/13-10/31/13.

PAD 26 - "*Developmental Assessment*" 16 PDF and 16 Excel reports that cover the time period 2/1/12-7/31/12 through 5/1/13-10/31/13.

The following reports are delayed and will be produced to you as soon as possible:

AR1 Mixed Caseload Report -

DFCS has discovered some data entry errors that impact the location/title of some workers. These errors are being corrected and we anticipate getting the corrected report to you by the end of this week.

BRD06 -

In light of the Monitor's e-mail of earlier today, DFCS has decided to hold back that report for further analysis. We will produce the report to you as soon as possible once we have been able to fully assess the issues noted by the Monitor.

Sincerely,

Kenya Key Rachal

Enclosure
cc:    Grace Lopes
       Mark Smith

Ex. 5F



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:        601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

December 6, 2013

**<u>Via Email and FedEx</u>**

Julia Davis
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Julia:

The following data reports are included on the enclosed CD (DHS 361857):

AR1  *"Workerloads Exceeding 2x Required Minutes"* - 1 PDF and 1 Excel report as of
11/1/13.

Note:  This report includes 1 each of the above in "detail" and "fine detail".  It is
also not shown as AR1 but "SASA9"

Please note that only the 11/1/13 report is being produced rather than 16 monthly reports.  We
have been advised that MACWIS does not maintain the historical data needed to produce these
reports.

Sincerely,

*Kenya*

Kenya Key Rachal

Enclosure
cc:    Grace Lopes
Mark Smith

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

**Ex. 5G**



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

December 20, 2013

**Via Email and US Mail**

Julia Davis
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

> RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
> Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Julia:

The following data reports are included on the enclosed CD (DHS 362088):

1st set corrected reports
- SLS54A –34 files (17 pdfs, 17 excels) – July 2012-November 2013
- SLS55A –34 files (17 pdfs, 17 excels) – July 2012-November 2013
- SBRD06 –34 files (17 pdfs, 17 excels) – July 2012-November 2013

2nd set corrected reports
- SBRD10 –34 files (17 pdf, 16 excels) – July 2012-November 2013

5th set reports
- PAD-8 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013 w/explanation
- PAD-9 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013 w/explanation
- PAD-12 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013 w/explanation
- PAD-15 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013
- PAD-24 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013 w/explanation
- PAD-27m1 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013
- PAD-27m2 - 34 files (17 pdfs, 17 excels) 6 month periods - July 2012-November 2013

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

<u>Additional files</u>
- <u>CR3</u> – corrected *Excel version of the report for the time period 9/1/2012 - 9/30/2012*
- <u>AR1 detail</u> – 2 files (pdf and excel) 11-30-13 snapshot
- <u>AR1 fine detail</u>– 2 files (pdf and excel) 11-30-13 snapshot
- *<u>AR2</u> – 2 files (pdf and excel) 11-30-13 snapshot*


Sincerely,

*Kenya*

Kenya Key Rachal

Enclosure
cc:    Grace Lopes
          Mark Smith

**Ex. 5H**



**Caseworkers With Mixed Caseloads Meeting MSA Requirements, by Region**
**One-Day Snapshot 11/1/13***
**[Prepared by the Office of the Court Monitor Based on DFCS Data, Manual Report AR1]**

MSA requires by the end of Period 3, at least 75% of caseworkers shall carry a caseload that does not exceed MSA requirements. No more than 10% of caseworkers shall carry a caseload exceeding twice the MSA requirements. No caseworkers shall carry a caseload exceeding three times the MSA requirements. Hancock, Harrison, Hinds, and Jackson Counties are exempt during Period 3. The graphic below includes Hancock, Harrison, Hinds, and Jackson Counties; however the calculations at right exclude those four counties.

This analysis is limited to caseworkers carrying mixed caseloads. Caseworkers carrying dedicated caseloads were reported on separately based on Manual Report AR3.

**NOTE: All caseload carrying staff who appeared in the data as "ASWS" are counted as not meeting the MSA requirements.**

As of November 1, 2013, excluding Hancock, Harrison, Hinds, and Jackson counties:

-Percentage of caseload carrying DFCS employees who are *not* exceeding MSA requirements *and* who are not a supervisor as of 11/1/13:     59% (370 of 631)

-Percentage of caseworkers carrying a caseload exceeding twice the MSA requirements and supervisors carrying a caseload:          14%  (89 of 631)
          -18 of 89 are caseworkers exceeding twice the MSA requirement
          -71 of 89 are supervisors carrying a caseload

-Number of caseworkers carrying a caseload exceeding three times the MSA requirements and supervisors carrying a caseload:          12% (73 of 631)
          - 2 of 73 are caseworkers exceeding three times the MSA requirement
          -71 of 73 are supervisors carrying a caseload

Legend:
- DFCS employees carrying a caseload exceeding MSA requirements or who are a supervisor carrying a caseload - Count
- DFCS employees carrying a caseload that does not exceed MSA requirements and who are not a supervisor - Count
- DFCS employees carrying a caseload that does not exceed MSA requirements and who are not a supervisor - Percentage

* Relevant to MSA II.A.2.a.9.a., page 5, and II.A.2.a.1., pages 3-4. November 1, 2013 was the first date for which data was provided.

# Ex. 5I



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:    601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

January 24, 2014

**Via Email**

Grace Lopes
*Olivia Y* Court Monitor
1220 19th Street NW, Ste 500
Washington, DC  20036

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
       Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Grace:

Enclosed please find the following documents:

- R3S's CQI Report (DHS 362164-362232)
- Letter of appointment of ▮▮▮▮▮▮ to Bureau Director I (DHS 362233-362234)
  - Response to F-Y4IP III.A.3.:  "*By February 1, 2014, Defendants shall hire a
    supervisor to lead the Special Investigations Unit...*"
- Coversheet for AR1 ASWS Project (DHS 362235-362236)
  - Response to F-Y4IP II.A.2.:    "*By January 24, 2014, Defendants shall
    produce...supplemental information to correct the caseworker mixed caseload data
    reports....*"
- Explanation of ASWS Appearance on Report as Worker (DHS 362237-362248)
- Excel Spreadsheet -- AR1 Fine Detail Correction Template for 11/1/13 (DHS 362249-
  362296)
- Excel Spreadsheet -- AR1 Fine Detail Correction Template for 11/30/13 (DHS 362297-
  362365)

Sincerely,

*Kenya Key Rachal / sml*

Kenya Key Rachal

Enclosure
cc:    Julia Davis
       Mark Smith

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

In regard to provisions II.A.1.-2. of the Period 4 Implementation Plan, please find attached workload spreadsheets for November 1, 2013 and November 30, 2013. We have looked at each of the cases to determine why the line of service appeared with a supervisor having the case on the AR1 workload report.

We have completed the worker name columns for each line of service on the reports. We found a variety of reasons that this may have occurred. The majority of the time the worker was assigned to the line of service on the case assigned tab, appeared on a workload that the worker could view, and the worker was doing the work as assigned. There was no worker name listed in the "worker name blank" on the FSP but there was a supervisor name listed in the "supervisor name blank," and in that situation the report defaults to naming the supervisor as the worker. This is a data entry error that we have begun to correct with notification and training. For these instances, we placed the correct worker's name on the spreadsheet.

The following codes were used in the worker column:

**Correct:**

No ASWS was actually working a Placement COS, Placement R&S or Placement COR. The vast majority of service lines deemed "correct" were intakes (including resource inquiries), resource home supervisions, and home studies awaiting assignment.

**No Worker Assigned (NWA*):**

The FSP named a supervisor but did not name an assigned worker and the line of service was not assigned through the assign/transfer tab. In the attached list, the **NWA*** with an assigned number corresponds to a

number on the spreadsheet that is in the corrected *worker name blank*. The list ("Explanation of ASWS Appearance on Report as Worker") gives the details of the situation. There was no instance when a child in custody was not being served and seen by a worker. The COR worker was typically seeing the child in these situations.

## Closed Cased (CC*):

The majority of the time the **CC** code is written in the *worker name blank* on the spreadsheet is when there was a closed service but the case was not completely closed in MACWIS. For example, an ASWS had a resource home supervision (some from when they were a resource worker) but the resource home was inactive and had not been properly closed in MACWIS. Another example is if an Adoption Addendum was left pending by a worker who is now an ASWS, even though the adoption was finalized and the home closed it had a pending issue that was not completed in the system.

## Incorrect (IN*):

There are 7 lines of service appearing erroneously on the 11/1 report and BCS is currently researching this situation.

**Note:** In the lines of service denoted by NWA, CC, or IN, the supervisor should have minutes removed from their workload but no worker needs the minutes assigned to them.

**Color-coding:** CC and NWA are yellow-lined. Correct is green-lined. Incorrect is blue-lined.

EXPLANATION OF ASWS APPEARANCE ON REPORT AS WORKER

**NWA**

The majority of the time the **NWA** code is written in the *worker name blank* on the spreadsheet is when there is No Worker Assigned on the FSP and there is No Worker Assigned in the Case Assigned/Transfer Tab *during the time period of report*. If any other explanation is needed it has been included.

| # | Client last name | Client first name | Responsible County | County/ Service Line Needed |
|---|---|---|---|---|
| 1 | ▮ | ▮ | Seen by Jackson PL COR | Forrest/PL COS Youth in college |
| 2 | ▮ | ▮ | Seen by Harrison PL COR | Jackson/ PL COS |
| 3 | ▮ | ▮ | Seen by Hancock PL COR | Pearl River/PL COS |
| 4 | ▮ | ▮ | Seen by Hancock PL COR | Adoption COS |
| 5 | ▮ | ▮ | Seen by Hancock PL R&S | Adoption COS |
| 6 | ▮ | ▮ | Seen by Hancock PL R&S | Adoption COS |
| 7 | ▮ | ▮ | Seen by Harrison PL R&S | Adoption COS |
| 8 | ▮ | ▮ | Seen by Harrison PL R&S | Adoption COS |
| 9 | ▮ | ▮ | Seen by Hinds PL R&S | Hinds/no COS needed Wrong line added to FSP |
| 10 | ▮ | ▮ | Seen by Lowndes  PL R&S | Pontotoc/  PL COS |
| 11 | ▮ | ▮ | Seen by Harrison PL COR | Lamar/ PL COS |
| 12 | ▮ | ▮ | Seen by Harrison PL COR | Lamar/PL COS |
| 13 | ▮ | ▮ | Warren PL COR Seen by Clay PL COS | Adoption COS |
| 14 | ▮ | ▮ | Warren Pl COR Seen by Clay PL COS | Adoption COS |
| 15 | ▮ | ▮ | Seen by Rankin PL COR | Leake/ PL COS |
| 16 | ▮ | ▮ | Seen by Hancock PL COR | Harrison/PL COS |
| 17 | ▮ | ▮ | Seen by Hancock PL COR | Harrison/PL COS |
| 18 | ▮ | ▮ | Seen by Hancock PL COR | Forrest/PL COS |
| 19 | ▮ | ▮ | Seen by Hancock PL COR | Harrison/PL COS |
| 20 | ▮ | ▮ | Seen by Hancock PL COR | Harrison/ PL COS |
| 21 | ▮ | ▮ | Seen by Rankin PR COR | Forrest/PR COS Camp Shelby Youth Challenge Program |
| 22 | ▮ | ▮ | Yazoo PL COR Seen by Hinds PL COS | Adoption COS |
| 23 | ▮ | ▮ | Madison PL R&S Child on runaway status Madison worker is showing attempts to locate | Hinds/no PL COS needed as child's whereabouts are unknown |
| 24 | ▮ | ▮ | Seen by Rankin PL COR | Hinds/PL COS |
| 25 | ▮ | ▮ | Seen by Harrison PL COR | Jones/PL COS |

| 26 | ███ | ███ | Seen by Hinds PL COR | Lamar/PL COS |
|----|-----|-----|----------------------|--------------|
| 27 | ███ | ███ | Seen by Hinds PL COR | Lamar/PL COS |
| 28 | ███ | ███ | Seen by Hinds PL COR | Lamar/PL COS |
| 29 | ███ | ███ | Seen by Rankin PR COR | Simpson/PR COS |
| 30 | ███ | ███ | Seen by Rankin PR COR | Copiah/PR COS Child placed in custody of her father by Pearl (Rankin)Court who lives in Copiah |
| 31 | ███ | ███ | Seen by Jackson PL COR | Simpson/ PL COS (Millcreek) |
| 32 | ███ | ███ | Seen by Pearl River PL COR | Forrest/PL COS |
| 33 | ███ | ███ | Jackson PL COR Seen by E. Chickasaw PL COS | Adoption COS |
| 34 | ███ | ███ | Seen by Forrest PL COR | Marion PL COS |
| 35 | ███ | ███ | Harrison ICPC Harrison worker seeing child | 2 lines are duplicate on the fsp |
| 36 | ███ | ███ | Harrison ICPC Harrison worker seeing child | 2 lines are duplicate on the fsp |
| 37 | ███ | ███ | Seen by Hancock PL COR | Harrison/PL COS |
| 38 | ███ | ███ | Hinds PL COR Seen by Desoto PL COS | Adoption COS |
| 39 | ███ | ███ | Seen by Hancock PL COR | N/A – Adoption COS was incorrectly entered on pending FSP |
| 40 | ███ | ███ | Seen by Hinds Co. PL COS | N/A – Adoption COS was incorrectly entered on FSP |

## CC

The majority of the time the **CC** code is written in the *worker name blank* on the spreadsheet is when there was a closed service but the case was not completely closed in MACWIS. For example, an ASWS had a resource home supervision (some from when they were a resource worker) but the resource home was inactive and had not been properly closed in MACWIS. Another example is if an Adoption Addendum was left pending by a worker who is now an ASWS, even though the adoption was finalized and the home closed it had a pending issue that was not completed in the system.

| # | Last Name | First Name | ASWS/ County or Region | Date Service Ended | Reason for showing as open |
|---|-----------|------------|------------------------|--------------------|----------------------------|
| 1 | ███ | ███ | ███/ Alcorn county | 2008 | Pending Adoption |

| | | | | | addendum |
|---|---|---|---|---|---|
| 2 | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓▓▓▓▓▓ Region II-W | 2012 ICPC Incoming | Denied, unable to close in MACWIS |
| 3 | ▓▓▓ | ▓▓▓ | ▓▓▓▓▓▓▓ Region 2W | 2012 ICPC application | Denied, unable to close in MACWIS |
| 4 | ▓▓▓▓ | ▓▓▓ | ▓▓▓▓▓▓ Region 5E | 2007 | Home not fully closed in MACWIS |
| 5 | ▓▓▓ | ▓▓▓ | ▓▓▓▓▓▓▓ Region 3S | 2006 | Pending Adoption Addendum |
| 6 | ▓▓▓ | ▓▓ | ▓▓▓▓▓▓▓ Jackson County | 2008 | Pending Adoption Addendum |
| 7 | ▓▓▓ | ▓▓▓▓ | ▓▓▓▓▓▓ Jackson County | 2008 | Pending Adoption Addendum |
| 8 | ▓▓▓▓ | ▓▓▓ | ▓▓▓▓▓▓▓ Jackson County | 2009 | Pending Adoption Addendum |
| 9 | ▓▓ | ▓▓▓ | ▓▓▓▓▓▓▓ Jackson County | 2009 | Case Management Intake – incomplete for closure (milk) |
| 10 | ▓▓▓ | ▓▓▓▓ | ▓▓▓▓▓▓ Washington County | 2008 | Resource Home Supervision not end dated |
| 11 | ▓▓▓ | ▓▓▓ | ▓▓▓▓▓▓ Hinds County | 2003 | Resource Home Supervision not end dated |
| 12 | ▓▓▓ | ▓▓▓▓ | ▓▓▓▓▓▓ Hinds County | 2013 | Resource Home Supervision not end dated |
| 13 | ▓▓▓ | ▓▓▓ | ▓▓▓▓▓ Hinds County | 2005 | Resource Home Supervision not end dated |
| 14 | ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓▓▓ Hinds County | 2003 | Resource Home Supervision |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | not end dated |
| 15 | ▮ | ▮ | ▮ Hinds County | 2008 | Resource Home Supervision not end dated |
| 16 | ▮ | ▮ | ▮ Hinds County | 2006 | Resource Home Supervision not end dated |
| 17 | ▮ | ▮ | ▮ Hinds County | 2006 | Resource Home Supervision not end dated |
| 18 | ▮ | ▮ | ▮ Hinds County | 2008 | Resource Home Supervision not end dated |
| 19 | ▮ | ▮ | ▮ Hinds County | 2009 | Resource Home Supervision not end dated |
| 20 | ▮ | ▮ | ▮ Hinds County | 2009 | Resource Home Supervision not end dated |
| 21 | ▮ | ▮ | ▮ Hinds County | 2009 | Resource Home Supervision Not end dated |
| 22 | ▮ | ▮ | ▮ Hinds County | 2011 | Resource Home Supervision not end dated |
| 23 | ▮ | ▮ | ▮ Hinds County | 1-31-13 | Resource Home Supervision not end dated |
| 24 | ▮ | ▮ | ▮ Yazoo county | 3-23-09 | Duplicate Report - ANE Intake |
| 25 | ▮ | ▮ | ▮ Jackson County | 2008 | Pending Adoption Addendum |
| 26 | ▮ | ▮ | ▮ Jackson County | 2009 | Pending Adoption Addendum |
| 27 | ▮ | ▮ | ▮ | 2005 | Resource |

| | | | | | |
|---|---|---|---|---|---|
| | | | State Office | | Home Supervision not end dated |
| 28 | ███ | ███ | ███ State Office | 2003 | Resource Home Supervision not end dated |
| 29 | ███ | ███ | ███ Hinds County | 2002 | Resource Home Supervision not end dated |
| 30 | ███ | ███ | ███ Hinds County | 2008 | Resource Home Supervision not end dated |
| 31 | ███ | ███ | ███ Hinds County | 2005 | Resource Home Supervision not end dated |
| 32 | ███ | ███ | ███ Hinds County | 2004 | Resource Home Supervision not end dated |
| 33 | ███ | ███ | ███ Hinds County | 2003 | Resource Home Supervision not end dated |
| 34 | ███ | ███ | ███ Hinds County | 2003 | Resource Home Supervision not end dated |
| 35 | ███ | ███ | ███ Hinds County | 2005 | RHS Not end dated |
| 36 | ███ | ███ | ███ Hinds County | 2004 | Resource Home Supervision not end dated |
| 37 | ███ | ███ | ███ Hinds County | 2003 | Resource Home Supervision not end dated |
| 38 | ███ | ███ | ███ Hinds County | 2004 | Resource Home Supervision nor end dated |
| 39 | ███ | ███ | ███ Hinds County | 2004 | Resource Home |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Supervision not end dated |
| 40 | ███ | ███ | ████ Hinds County | 2005 | Resource Home Supervision not end dated |
| 41 | ███ | ███ | ████ Hinds County | 2005 | Resource Home Supervision not end dated |
| 42 | ██ | ███ | ████ Hinds County | 2005 | Resource Home Supervision not end dated |
| 43 | ███ | ███ | ████ Hinds County | 2006 | Resource Home Supervision not end dated |
| 44 | ████ | ███ | ████ Hinds County | 2008 | Resource Home Supervision not end dated |
| 45 | ███ | ███ | ████ Hinds County | 2006 | Resource Home Supervision not end dated |
| 46 | ████ | ████ | ███ Hinds County | 2012 | Resource Home Supervision not end dated |
| 47 | ██ | ███ | ████ Hinds County | 2012 | RHS not end dated |
| 48 | ███ | ████ | ████ Hinds County | 2012 | Resource Home Supervision not end dated |
| 49 | ██ | ███ | ████ Hinds County | 2-28-13 | Resource Home Supervision not end dated |
| 50 | █████ | ███ | ████ Hinds County | 2012 | Resource Home Supervision not end dated |
| 51 | ███ | ███ | ████ Hinds County | 2-28-13 | Resource Home |

| | | | | | Supervision not end dated |
|---|---|---|---|---|---|
| 52 | ▮ | ▮ | ▮ Hinds County | 2-28-13 | Resource Home Supervision not end dated |
| 53 | ▮ | ▮ | ▮ Hinds County | 2012 | Resource Home Supervision not end dated |
| 54 | ▮ | ▮ | ▮ Hinds County | 1-31-2013 | Resource Home Supervision not end dated |
| | NOTES PERTAINING TO LINES 55-80 | | | *Previous to November 30, 2013 was on a worker's workload but had an expired license<br><br>Resource /adoption ASWS working on closure or have closed | **Resource Home Supervision not end dated – during an effort to clean up expired homes – Resource ASWS put on workload before closure- But did so in the middle of November 2013 |
| 55 | ▮ | ▮ | ▮ Hinds county | 2008* Close upon RD approval | ** same as above |
| 56 | ▮ | ▮ | ▮ Hinds County | 2008* Close upon Rd approval | **Same as above |
| 57 | ▮ | ▮ | ▮ Hinds county | 2012* Closed 01-2014 | ** same as above |
| 58 | ▮ | ▮ | ▮ Hinds county | 2011* Closed 01-2014 | **same as above |
| 59 | Skipped | | | | |
| 60 | ▮ | ▮ | ▮ | 2008 | pending |

| | | | Case in Hinds County | | adoption addendum **Did not show up on Mark's spreadsheet for 11/1 because "Yes" was not chosen.** |
|---|---|---|---|---|---|
| 61 | ███ | ███ | ███ Hinds County | 2012* Closed 1-2014 | ** same as above |
| 62 | ██ | ███ | ███ Hinds County | 2013* | **same as above |
| 63 | ██ | ██ | ███ Hinds County | 9-30-2013* Closed 1-2014 | **same as above |
| 64 | ███ | ███ | ███ Hinds county | 2-28-13* | **same as above |
| 65 | ███ | ███ | ███ Hinds County | 2010* | **same as above |
| 66 | ███ | ███ | ███ Hinds County | 10-31-13* | **same as above |
| 67 | ██ | ███ | ███ Hinds County | 2011* Close upon RD approval | ** same as above |
| 68 | ███ | ███ | ███ Hinds County | 2012* Close upon Rd approval | **same as above |
| 69 | ██ | ███ | ███ Hinds County | 1-31-2013* | **same as above |
| 70 | ███ | ███ | ███ Hinds County | 1-31-2013* | **same as above |
| 71 | ███ | ███ | ███ Hinds County | 02-28-2013* Closed 1-16-14 | **same as above |
| 72 | ██ | ████ | ███ Hinds County | 2012* | **same as above |
| 73 | ██ | ███ | ███ Hinds County | 2012* | **same as above |
| 74 | ███ | ██ | ███ Hinds County | 1-31-2013* | **same as above |
| 75 | ██ | ███ | ███ Hinds County | 10-31-2013* | **same as above |
| 76 | ████ | ██ | ███ Hinds County | 9-30-2013* Closed 1-16-14 | **same as above |
| 77 | ███ | ████ | ███ Hinds County | 2012* Close upon RD approval | **same as above |

| 78 | ████ | ███ | ████████ Hinds County | 9-26-2013* | **same as above |
| 79 | █████ | ███ | ████████ Hinds County | 8-19-2013* Close upon RD approval | **same as above |
| 80 | ████ | ███ | ████████ Hinds County | 10-31-2013* | **same as above |
| 81 | █████ | ████ | ███████ Jones County | 9-24-2012 | Resource Home Supervision not end dated |
| 82 | ████ | ████ | ███████ Tate County | 6-30-2001 | Resource Home Supervision not end dated |
| 83 | ████ | ███ | ██████ Jasper County | 9-30-2008 | Resource Home Supervision not end dated |
| 84 | █████ | █████ | █████████ Washington Co. | 11-30-11 | Resource Home Supervision not end dated |
| 85 | █████ | ████ | ██████ Clarke Co. | 9-30-2010 | Home not properly closed in MACWIS |
| 86 | ███ | ████ | ██████ Madison Co. | 1-22-2010 | Pending Adoption addendum |
| 87 | ████ | █████ | ████████ Pearl River Co. | 2006 | Screened out by supervisor, system error kept open |
| 88 | █████ | █████ | ███████ Hinds Co. | Unable to verify | Closed by MIS 1/21/14 |
| 89 | ████ | ████ | ██████ Hinds Co. | 2005 | Closed by MIS 1/21/14 |
| 90 | ████ | ██████ | ███████ Hinds Co. | 2006 | Screened out by supervisor, system error kept open |
| 91 | █████ | █████ | ███████ Hancock Co. | 3-2-12 | Entered in error, never closed out |
| 92 | ██████ | ███ | ████████ Scott Co. | 2007 | Investigation completed but |

| | | | | | not closed out |
|----|----|----|----|----|----|
| 93 | ▓▓▓ | ▓▓▓ | ▓▓▓ Hancock Co. | 3-2-2012 | Entered in error, never closed out |
| 94 | N/A | N/A | ▓▓▓ Hancock Co. | 3-2-12 | Entered in error, never closed out |
| 95 | ▓▓▓ | ▓▓▓ | ▓▓▓ Hinds Co. | 2003 | Entered in error, never closed out |
| 96 | ▓▓▓ | ▓▓▓ | ▓▓▓ Jackson Co. | 2001 | Screened out, system error kept open |
| 97 | ▓▓▓ | ▓▓▓ | ▓▓▓ Jackson Co. | 2008 | Resource training never completed, home study not closed out |
| 98 | ▓▓▓ | ▓▓▓ | ▓▓▓ Jackson Co. | 2010 | Created in error, never closed out |
| 99 | ▓▓▓ | ▓▓▓ | ▓▓▓ Greene Co. | 2011 | Home study not completed, never closed out |
| 100 | ▓▓▓ | ▓▓▓ | ▓▓▓ Jackson Co. | 8-13-12 | Home study not completed, never closed out |
| 101 | ▓▓▓ | ▓▓▓ | ▓▓▓ Oktibbeha Co. | 2007 | Entered in error, never screened out |
| 102 | ▓▓▓ | ▓▓▓ | ▓▓▓ George Co. | 2001 | Request denied, screening not closed |
| 103 | ▓▓▓ | ▓▓▓ | ▓▓▓ George Co. | 2001 | Request denied, screening not closed |
| 104 | ▓▓▓ | ▓▓▓ | ▓▓▓ George Co. | 2001 | Service provided but screening not closed |
| 105 | ▓▓▓ | ▓▓▓ | ▓▓▓ George Co. | 2001 | Service provided but screening not |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | closed |
| 106 | ■■■■ | ■■■ | ■■■■■ George Co. | 2001 | Service provided but screening not closed |
| 107 | ■■ | ■■■ | ■■■■■ George Co. | 2001 | Request denied, screening not closed |
| 108 | ■■■ | ■■■ | ■■■■■ George Co. | 2002 | Service provided but screening not closed |
| 109 | ■■■ | ■■■■ | ■■■■■ Forrest Co. | 2001 | Screening pending |
| 110 | ■■■ | ■■■ | ■■■■■ Wayne Co. | 2004 | Service provided but screening not closed |
| 111 | ■■■ | ■■■ | ■■■■■ Jackson Co. | 2006 | Screening pending |
| 112 | ■■■■ | ■■ | ■■■■ Jackson Co. | 2007 | Screening pending |
| 113 | ■■ | ■■■ | ■■■■ Jackson Co. | 2002 | Screening pending  **Did not show up on Mark's spreadsheet for 11/1 because "Yes" was not chosen.** |
| 114 | ■■■ | ■■■■ | ■■■■ Leflore Co. | 1-11-13 | Pending |
| 115 | ■■■ | ■■■■ | ■■■■■ Jackson Co. | 2002 | Screening pending |
| 116 | ■■■ | ■■ | ■■■■ Jackson Co. | 2009 | Screened out, system error kept open |
| 117 | ■■■■ | ■■■ | ■■■■ Hinds Co. | 2012 | Completed, system error kept open |
| 118 | ■■ | ■■ | ■■■■ Jackson Co. | 2001 | Entered in error, never screened out |

| | | | | | **Did not show up on Mark's spreadsheet for 11/1 because "Yes" was not chosen.** |
|---|---|---|---|---|---|
| 119 | ███ | ████ | ████ George Co. | 2001 | Screening pending |

## Incorrect (IN)

These lines of service appeared on the 11/1 AR1 (production date 12/6/13) erroneously. These lines of service had a creation date after 11/1/13 but before 12/6/13.

| IN # | Name associated | Intake type | Intake date |
|---|---|---|---|
| IN*1 | ██████████ | Investigation Level 2 | 11/12/13 |
| IN*2 | ██████████ | Investigation Level 2 | 11/22/13 |
| IN*3 | █████████ | Investigation Level 2 | 11/27/13 |
| IN*4 | █████████ | ICPC Application | 11/12/13 |
| IN*5 | ██████████ | Investigation Level 2 | 11/22/13 |
| IN*6 | █████████ | ICPC Application | 11/12/13 |
| IN*7 | █████████ | Investigation Level 3 | 11/26/13 |

**Ex. 5J**

Division of Family and Children's Services

# CQI

## Continuous Quality Improvement (CQI) Sub Team
## Quarterly Report (July 2012 – October 2012)

By: ███████, CQI Director



13 November 2012

**3) The Division continues to fail one federal AFCARS element (Element #57 – Timeliness).** For many years this has been an issue with the failure rate continuing to climb to 19% in the May 2012 AFCARS submission. In April, 2012, CQI/EMU began pro-actively monitoring this issue across the state. Each region has a point person reporting bi-weekly all children who have left custody and all reasons for not being able to end date the custody in MACWIS. EMU tracks each case on a spreadsheet and does a follow up per case to help prevent the case from going over the 60 days (federal) allowed to end date custody. Even with this monitor in place there continue to be struggles in that some regions do not report to EMU all children who have left custody. Therefore, CQI cannot follow up on unknown issues. Although failure of this element lies within multiple regions, the largest ratio of cases with custody not being end dated timely falls in the carve out counties. Information about the timeliness issue has been shared with the carve out county teams to provide any assistance to these regions for timely end dating custody. MACWIS staff also works with each region prior to the AFCARS files submission, but at the time this work is done it is after the fact and the Division has most likely already failed this element. The Office of CQI continues to take the lead in strategies for improvement of this federal element.

REDACTED



# Ex. 5K

**Continuous Quality Improvement Sub Team Meetings**
**Meeting Minutes**

| Name of Sub Team: CQI | Date of Meeting: 10/02/2012 |
|---|---|
| Meeting Location: 631 ▮▮▮ Office | Start and End Time of Meeting:  10:00-11:00a.m. |

| Attendees: | Absent Team Members: |
|---|---|
| ▮▮▮ – CQI/EMU | ▮▮▮ – maternity leave |
| ▮▮▮ – CQI/FCR | ▮▮▮ – medical appt |
| ▮▮▮ – RD 1-N | |
| ▮▮▮ – USM Consultant | |
| ▮▮▮ – CSF Consultant | |
| ▮▮▮ – CQI Data Analyst | |
| | |

REDACTED

REDACTED

**AFCARS Element #57 Failure Discussion –** ██████████ / ████████████████

Failure of this element – 17.20%. ████████████ has been monitoring this element. She has discovered there have been cases of children leaving custody without her knowledge. ████████ is to help with this. We have to go by what the field staff is telling us. Because of overdue investigations, we find that children are out of custody. Some areas of the state are worse than others and ████ suggested we should meet with staff in the weak areas where there seems to be problems. Staff shortages cause problems resulting in not enough attention to details. We need to develop better tracking in regions and have someone monitoring. ██████ is to investigate which regions seem to be having the most problems. Something should be in place requiring RD's to send reports from field operations. ██████ will meet with ████████████ to discuss. It will probably be most likely that ██████████ ██████, RD's and field operations need to track data to monitor trends occurring (i.e. could this be a training issue?).

REDACTED

# Ex. 5L

**Division of Family and Children's Services**

# CQI

**Continuous Quality Improvement (CQI) Sub Team
Quarterly Report
(February 21, 2013 through June 30, 2013)**

**By:** ███████ **, CQI Director**



June 30, 2013

REDACTED

3) **The Division continues to fail one federal AFCARS element (Element #57 – Timeliness).** The Office of CQI continues to take the lead in strategies for improvement of this federal element. EMU staff continues to monitor children existing custody and reasons for the custody not being ended in MACWIS. The final % for this element for the May AFCARS submission was 15.97%, down from the 2012B submission % of 16.93%. Case clean-up efforts in MACWIS will likely escalate the element 57 percentage for the 2013B submission.

REDACTED



# Ex. 5M



# BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:      601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

February 3, 2014

**Via Email and U.S. Mail**

Julia Davis
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

> RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
> Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Julia:

The following data reports are included on the enclosed CD (DHS 362386):

1st set December 2013 reports

- AR2  "*Count of Supervisors and Their Assigned Caseworkers*" - 1 PDF and 1 Excel report as of 1/1/14.

- SLS54A "*Children in the Initial 90 Days of a Trial Home Visit*" - 1 PDF and 1 Excel for time period 12/1-31/13.

- SLS55A "*Custody  Children Remaining in Same Out of Home Placement Following an Investigation*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SWZ1271 - "*Timeliness of Investigations for Custody Children*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SWZCR3 "*Frequency of Caseworker Visits with Parents/Caregiver Whom Children are to be Reunified*"- 1 PDF and 1 Excel report for time period 12/1-31/13.

- SZPLMBD - "*Frequency of Caseworker Visits with Therapeutic Foster Parents*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SZPLMC "*Frequency of Caseworker Visits with Non-Therapeutic Resource Homes*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SWZC5D "*Children in Out of Home Care With Worker -Seen Alone*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SBRD06 "*Rate of Maltreatment in Care*" - 1 PDF and 1 Excel report for time period 1/1/13-12/31/13.

2nd set December reports

- AR3 - "*Caseload Count of Dedicated Workers*" - 1 PDF and 1 Excel report as of 1/1/14.

- SBRD05 "*Children Exiting Custody with Outcome of Reunification*" - 1 PDF and 1 Excel Report for time period 1/1/13-12/31/13.

- SBRD10 "*Length of Time to Adoption Finalization*" - 1 PDF and 1 Excel Report for time period 1/1/13-12/31/13.

- SXBRDR16 "*Children in Custody Ages 14-20 and Their Independent Living Services and Skills Provided*" - 1 PDF and 1 Excel report that for time period 1/1/13-12/31/13.

- S312 - "*Children Who Have Had a Permanency Plan Developed w/in 30 Days of Entry into Foster Care*" - 1 PDF and 1 Excel report for time period 1/1/13-12/31/13.

- MWSPLMC PAD 2 "*Content of Caseworker Visits with Non-Therapeutic Resource Homes*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- MWSPLMB PAD 3 "*Content of Caseworker Visits with Therapeutic Resource Home*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- MWBRD16 PAD 5 "*Children Receiving IL Services Tied to Their Plan*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- MWLS312 PAD 19 "*Children Who Have Had a Permanency Plan...*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- SWZ1271G "*Timeliness of Investigations for Custody Children - Intake Detail for Two Months Prior*" - 1 PDF and 1 Excel Report for period 10/-31/13.

- MWZ0510 "*Number of Children in Foster Care by Placement Type*" - 1 PDF and 1 Excel report for time period as of 12/31/13.

- SZPLM5 "*Children in Custody Less that 12 Months Who Have 2 or Fewer Placements*" - 1 PDF and 1 Excel Report for time period 1/1/13-12/31/13.

- SZRESL- "*Licensure Status of Resource Family Homes*" - 1 PDF and 1 Excel report as of 12/31/13.

- SZRESP - "*Number of Pending Resource Family Homes*" - 1 PDF and 1 Excel Report as of 12/31/13.

3rd set December reports

- SLS50D "*Children Over 45 Days in Emergency Shelter or Temporary Facility*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- MWSLS52H "*Children in Foster Care less than 10 Years of Age Placed in a Congregate Care Setting*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SLS315 - "*Children Who Have Had an Initial Screening and Comprehensive Health Assessment*" - 1 PDF and 1 Excel report for period time period 1/1/13 through 12/31/13.

- SLS316 - "*Children in Sibling Groups Who Have Entered Care Who are Initially Placed Together*" 1 PDF and 1 Excel report for time period 1/1/13 through 12/31/13.

- SLS319D "*Children in Unlicensed Placements*" - 1 PDF and 1 Excel report that cover the time period 12/1-31/13.

- S-PAD 4 "*County Conference Participation Report*" - 1 PDF and 1 Excel report for time period 7/1/13 through 12/31/13.

- S-PAD6 - "*Child Contacts with Family in First 24 Hours of Custody*" - 1 PDF and 1 Excel report for time period 7/1/13 through 12/31/13.

- S-PAD7 - "*Youth Court Objection to Unlicensed Placement*" - 1 PDF and 1 Excel report for time period 7/1/13 through 12/31/13.

- SZ0171 - "*Children in Custody 17 of 22 Months with a TPR Filed or Exception Noted*" - 1 PDF and 1 Excel report for time period 12/1-31/13.

- SZTACR - "*Timeliness of County Conference*" - 1 PDF and 1 Excel report for time period 1/1/13 through 12/31/13.

- SZTPHR - "*Timeliness of Permanency Hearing*" - 1 PDF and 1 Excel report for time period 1/1/13 through 12/31/13.

4th set December reports

- MWLS51D - "*Children in Custody with 2 or More Emergency Placements...*" 1 PDF and 1 Excel report for time period 12/1-31/13.

- MWLS53HS - "*Sibling Groups with 1 or More Siblings Under 10 and Placed in Congregate Care Over 45 Days*" 1 PDF and 1 Excel report for time period 12/1-31/13.

- MWLS314 - "*Children Placed out of County or Beyond 50-Mile Radius*" 1 PDF and 1 Excel report for time period 12/1-31/13.

- PAD 17 - "*Therapeutic, Developmental Diagnosis, Plan and Services*" 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 20 - "*Service Plans Updated Quarterly and for Placement Changes*" 1 PDF and 1 Excel report for time period 6/1/13-11/30/13.

- PAD 21 - "*Appropriate Permanency Goal*" 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 22 - "*Concurrent Planning in 1st 6 Months*" 1 PDF and 1 Excel for time period 7/1/13-12/31/13.

- PAD 23 - "*IL Services for Independence*" 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 25 - "*Mental Health Assessment within 30 Days of Custody*" 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 26 - "*Developmental Assessment*" 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

The production of the AR1 report (mixed caseload) is delayed. While reviewing the supervisory caseload assignments required by provision II.A.1.-2. of the MSA, DFCS identified issues in the report wherein some lines of service appeared erroneously on the report (DHS 362236). DFCS and BCS have been reviewing this issue and are working diligently to remedy it. DFCS will produce the report as soon as possible.

5th set December reports

- PAD 8 - "*Children with Special Needs Matched to Placement that can Meet Their Medical and Therapeutic Needs*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 9 - "*Least Restrictive Placement*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 12 - "*CFS in 30 Calendar Days*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 15 - "*General and Special Education Screens*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 24 - "*Periodic Medical Exams*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 27-1 - "*Dental Exam Over 3 within 90 Days of Custody*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

- PAD 27-1 - "*Dental Exam Turning 3 and Routine Exam*" - 1 PDF and 1 Excel report for time period 7/1/13-12/31/13.

Also attached are the following documents:

- Training Reports for workers and ASWSs for October 2013-December 2013 (DHS 362387-362408). PDFs and Excels are included.
- Advertisements for ASWS positions in the Carve Out Counties (DHS 362409-362424). *FY4IP - II.A.2. pg 2/10*
- Chart of Southern state salaries for supervisors with back-up documentation (includes AL, AR, GA, LA, MS, SC, TN) (DHS 362425-362453) *FY4IP - II.A.4.g.*
- CSF Practice Model Report for December 2013 (DHS 362366-362385)

Sincerely,

*Kenya*

Kenya Key Rachal

Enclosure
cc:    Grace Lopes
        Mark Smith

**Ex. 5N**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Grace M. Lopes [gmlopes@oymonitor.org] |
| **Sent:** | Friday, February 07, 2014 6:03 PM |
| **To:** | 'Rachal, Kenya' |
| **Cc:** | 'Julia Davis'; 'Mark Jordan'; 'Mia Caras' |
| **Subject:** | Status of Mixed Caseload Reports |

Kenya:  In your February 3, 2014 correspondence you indicate that the February 1, 2014 required production of the mixed caseload report would be delayed due to the identification of issues related to some lines of service.  Can you please clarify whether this is an issue that effects the validity, accuracy and/or completeness of the mixed caseload reports for November 1 and 30, 2013 that were subject to the manual correction process addressed by the Period 4 IP?  Thank you. - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 5O**

**Grace M. Lopes**

---

**From:** Rachal, Kenya [mailto:krachal@bakerdonelson.com]
**Sent:** Tuesday, February 25, 2014 6:53 PM
**To:** Grace M. Lopes; 'Julia Davis'
**Cc:** Tullos, Ashley C.; Fortenberry, Rusty; 'Kim Shackelford'; 'Cynthia Greer'; evandusen@csfmail.org; 'Donald Griffin';
'Elissa L. Glucksman'; 'Mark Jordan'; 'Mia Caras'; Jerry Milner (jmilner@csfmail.org)
**Subject:** RE: Follow Up from February 24, 2014 Conference Call

Good Afternoon:

Please see Defendants' responses below.    **REDACTED**

Thanks,
Kenya

---

**From:** Grace M. Lopes [mailto:gmlopes@oymonitor.org]
**Sent:** Monday, February 24, 2014 5:35 PM
**To:** Rachal, Kenya; 'Julia Davis'
**Cc:** Tullos, Ashley C.; Fortenberry, Rusty; 'Kim Shackelford'; 'Cynthia Greer'; evandusen@csfmail.org; 'Donald
Griffin'; 'Elissa L. Glucksman'; 'Mark Jordan'; 'Mia Caras'
**Subject:** Follow Up from February 24, 2014 Conference Call  **REDACTED**

Kenya and Julia:

The following sets out my understanding of next steps based on today's conference call.  If your
understanding differs in any material respect, please let me know.  Many thanks, Grace


**I.  Mixed Caseload Reports:**  Defendants will provide via e-mail, at some point tomorrow, the date by
which they will begin to produce accurate and validated mixed caseload reports on a weekly basis.

**Defendants' Response:**  Defendants will begin to run these reports weekly, beginning the week of
March 3rd.  We anticipate producing them to the Monitor and Plaintiffs on Friday of each week.

Please be advised that Defendants have made changes to MACWIS including the following that will
affect and improve the accuracy of the workload reports:
FSP- Direct Service - An edit was added that prevents an ASWS from approving an FSP if each direct
service does not have a Worker selected in the worker dropdown list. The ASWS has the ability to add
that information, or return to the worker to complete. This will help prevent future instances of the
ASWS being listed as "worker" on AR1 since the report was defaulting to listing the ASWS as worker if
no one was selected in the Worker dropdown.

Case - Assign/Transfer - A change was made so that MACWIS automatically adds the
County/ASWS/COS information on Assign/Transfer once the FSP is approved.  This change will work
towards keeping the FSP and Assign/Transfer in sync.

FSP- Direct Service - An edit was added that prevents the user from entering an end date/outcome
when initially adding a Direct Service.  This modification will ensure the direct service appears under
the worker on the AR1 report.

FSP- Direct Service - An edit was added that prevents the user from entering duplicate direct services
for a person. This modification will help ensure a direct service is not duplicated on the AR1 report.

To help identify and decrease the number of data entry errors, DFCS plans to dedicate three staff persons to a 100% validation of the AR1 over a period of approximately two-and-a-half to three-and-a-half months. When the first weekly report is run, each of the validators will take a region (for a total of three regions being validated from that particular report). DFCS anticipates that it will take 2-3 weeks to complete a 100% validation of an average region. This process will repeat until all regions have been validated; however, when a validator completes a region, he or she will begin validating his or her next assigned region from the most recent weekly report.

The three validators will maintain logs of data entry issues to be resolved by the field and/or MIS and will communicate with the field and/or MIS as needed to accomplish such resolution.  If a particular worker has a pattern of data entry errors, he or she will be required to attend one-on-one training at State Office to resolve the existing issues and prevent future issues. If data entry issues are prevalent in a particular county or region, a trainer from the training unit will be dispatched to that area.  DFCS will report the results of the validation efforts including any corrective actions taken.

**II.  Dedicated Caseload Reports:**  Defendants will address via e-mail, at some point tomorrow, whether and if so when they will begin to produce dedicated caseload reports on a weekly basis.
    **Defendants' Response:**  Defendants will begin to run these reports weekly, beginning the week of March 3rd.  We anticipate producing them to the Monitor and Plaintiffs on Friday of each week.

**REDACTED**

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 6A**



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:      601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL., ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

September 18, 2013

**VIA ELECTRONIC and US MAIL**
Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:   *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

Enclosed please find a DVD (sent via US Mail) containing the following related to the MACWIS reports produced earlier this month

| | |
|---|---|
| WBRD06 | Excel Versions |
| MWZ1271 | Excel Versions |
| MWZPLMB | Excel Versions |
| MWZPLMC | Excel Versions |
| MWZWCR3 | Excel Versions |
| MWZWC5 | Excel Versions and November 2012 |
| | (The November report produced on 9/4/13, DHS 356878, was inadvertently run with the incorrect date parameters) |
| MWZLS54 | Excel Versions |
| MWZLS55 | Excel Version and Corrected PDFs |
| | (This report has been re-run due to a summary calculation error found in the earlier reports, DHS 356872) |
| Supervisor Caseload | Excel Version |

These reports will be covered under Bates Label DHS 356924.

Sincerely,

*Kenya*

Kenya Key Rachal

cc: Julia Davis
    Grace Lopes
Enclosures

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

# Ex. 6B



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

January 16, 2014

Rebecca Tedesco
45 Broadway, 29th Floor
New York, NY 10006

Dear Rebecca,

We are requesting an exception to current COA Standards to hire Area Social Work Supervisors (ASWS) currently without advance degrees statewide but are enrolled in a Master of Social Work Program from an accredited university. We believe this will allow us a steady flow of persons that are graduate-prepared to perform supervisor tasks.

We request the ability to hire **licensed**, BSW or related degree graduates currently enrolled or accepted into an accredited MSW Program. We are currently paying tuition for 36 employees in state-sponsored COHORT programs at Jackson State University, the University of Southern Mississippi, and the University of Mississippi. A total of 71 students are enrolled in the programs. Most of these students currently would make successful ASWS's but do not qualify due to lacking a MSW. We will ask the State Personnel Board to allow us to make this change to the current job description for ASWS pending your approval.

Previously you were gracious enough to allow us to temporarily modify this requirement in our "carve out" counties, Hancock, Harrison, Hinds and Jackson, on a previous request dated Jan. 3, 2013. The previous approval has allowed us to make progress in these areas.

We are reaching critical levels across Mississippi due to the rapid expansion of employees hired since 2012 to support our families and children. Due to the tremendous influx of social workers, and an increase in children in custody, we have not been able to keep up with demand for Area Social Work Supervisors. During the time period Dec. 1, 2012 through Sept. 30, 2013 we lost 17 ASWS's for the following reasons: seven left state government, seven retired, one transferred to another agency, one was dismissed and one death.

The Court Monitor has described our shortages and hurdles as critical in her Jan. 25, 2013 report filed with the court (see excerpt attached).



**STATE OF MISSISSIPPI**
**Phil Bryant, Governor**
**DEPARTMENT OF HUMAN SERVICES**
**Richard A. Berry**
**Executive Director**

If there are any questions, please contact me at ███████ or via email at ████████████. You may also contact Dr. ██████ at ████████, ██████████, ███████ at ██████,

Sincerely yours,

Mark A. Smith
Deputy Executive Director
Mississippi Department of Human Services

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLIVIA Y., *et al.*                                              PLAINTIFFS

v.                                      CIVIL ACTION NO.  3:04CV251LN

PHIL BRYANT, as Governor of the State of Mississippi, *et al.*          DEFENDANTS

---

**THE COURT MONITOR'S STATUS REPORT TO THE COURT
REGARDING PROGRESS DURING PERIOD THREE**

---

**Table of Contents, Report Narrative,
Index to Exhibits, and Appendix: Exhibits 1 - 40**

**January 25, 2013**

responsibilities. Among other accomplishments, the deputy director has made demonstrable

progress streamlining and accelerating the caseworker hiring process, and has provided critical

oversight of DFCS operations; however, the deputy has other job responsibilities beyond DFCS,

and does not satisfy all of the MSA's qualification standards. Given these circumstances, and in

light of the enormity of the challenges facing DFCS, it is unreasonable to expect the deputy

director, acting in an interim capacity, to make sufficient sustained progress in the case.

As of January 2013, defendants have not filled this critical position, which has remained

vacant for over six months. On December 20, 2012, following plaintiffs' December 4, 2012

notice of noncompliance with MSA §II.A.1., issued pursuant to MSA §VII.B., defendants

informed plaintiffs' counsel that they had reached an agreement with Kimberly K. Shackleford,

Ph.D., LCSW, to serve as the deputy administrator effective April 1, 2013. Thus, assuming there

are no additional delays, over one year will have elapsed between the date Ms. Woodruff

provided MDHS officials with notice of her intent to retire and the date Dr. Shackleford will

assume her position.[82]

Beyond concerns about defendants' internal capacity to achieve required reforms, the

Monitor also has concerns about defendants' Period 3 efforts to satisfy what have been long-

standing substantive requirements. As described above,[83] historically, insufficient staffing levels

– of both caseworkers and area social work supervisors ("ASWS") – have contributed to

defendants' inability to meet many of the Settlement Agreement's requirements. Like the

Settlement Agreement, the MSA incorporates certain staffing-related requirements intended to

---

[82] Dr. Shackleford is a well-regarded child welfare expert. As the deputy administrator in charge of DFCS, Dr. Shackleford would be responsible for managing a governmental agency with over 1,200 employees and an annual budget of nearly $200 million dollars. Because the Monitor cannot assess, based on Dr. Shackleford's *curriculum vitae* alone, whether she meets all of the specific qualification criteria for the deputy administrator position required by MSA §II.A.1., the Monitor has requested that defendants describe Dr. Shackleford's qualifications to hold the position relative to MSA requirements. It is the Monitor's understanding that this information is forthcoming.

[83] *See supra* at 17.

limit caseworker caseloads as well as ASWS workloads and in turn improve the quality of service delivery to children in DFCS custody.[84]

The Settlement Agreement established specific workload requirements for caseworkers and ASWS and required certain performance levels phased-in over time.[85]  In mid-2009, the Monitor reported that because of limitations in the accuracy and completeness of the workload data that defendants collected and maintained in MACWIS, she could not assess whether defendants met caseload requirements during Period 1.[86]  The Monitor explained that defendants' inability to track and report accurately on personnel and workload data were capacity deficits that defendants would need to address in order to manage the DFCS workforce and ultimately comply with the Settlement Agreement's standards.[87]  Thereafter, over one year later, the Monitor reported that during Period 2 the defendants did not correct the documented limitations in workload data collection and reporting that existed during Period 1.[88]  For this reason, defendants were required to submit validated workload data during the Bridge Period.[89]  Nonetheless, in a November 2010 report addressing defendants' performance during the Bridge Period, the Monitor found that defendants still had not validated the DFCS workload data captured in MACWIS.[90]

The MSA modified the caseload requirements established by the Settlement Agreement to reflect more accurately required work efforts for each specific caseworker service activity

---

[84]  *See, e.g.*, MSA §II.A.2.a. (establishing caseload and workload standards for caseworkers and their supervisors and imposing benchmark requirements during Period 3 and during subsequent implementation periods); *see also* Period 3 IP §I.A.2.c.6. (requiring the assignment of a specified minimum number of caseworkers to certain counties by the end of Period 3).
[85]  Settlement Agreement §II.A.2.a.
[86]  *June 2009 Report* at 29.
[87]  *Id.* at 27-28, 32-35.
[88]  *September 2010 Report* at 19.
[89]  June 10, 2010 Agreed Order at ¶7.a. and at Ex. A, pp. 1-2.
[90]  *November 2010 Report* at 22.

collected in MACWIS.[91]  Additionally, in light of defendants' repeated failure to produce

accurate caseload reports, the MSA required that within 90 days following the start of Period 3,

defendants implement a methodology to produce accurate, validated caseload reports, and that

within 120 days following the filing of the MSA, defendants provide the plaintiffs and the

Monitor with county-by-county caseload data on a monthly basis.[92]

As noted above, in order to support the implementation of the MSA staffing

requirements, during 2012 defendants created a SIT sub-team for caseload and staffing.  Among

other matters, the sub-team's mission includes "[i]mplementation of a methodology for

producing accurate and valid caseload data reports."[93]  During November 2012, the sub-team

reported that it had "determined that the [MACWIS] caseload reports did not accurately reflect

true staffing needs in the carve-out counties and that workload validation of some sort was

necessary."[94]  The sub-team's November 7, 2012 report describes the results of a caseload

validation process that was undertaken in the carve out counties in order to provide an accurate

understanding of current workload numbers.[95]  The report states that DFCS "staff was [sic] able

to identify numerous cases in which children are no longer in agency custody and the agency has

been absolved of responsibility of monitoring the family through the court system.  Issues in

MACWIS, *i.e.* financial, eligibility, pending ISPs, were found to be a frequent reason that cases

remain open when they should have been closed."[96]  This is a well-documented and very long-

---

[91] MSA §II.A.2.  At the same time, the MSA created a new service unit metric referred to as "caseload units." Caseload units are calculated by expressing an individual service type as a percentage of a full caseload, defined as 6,960 minutes.  Thus, a full caseload is equivalent to 100 percent of a full caseload, or 100 caseload units of case-related work.
[92] MSA §II.A.2.a.8.
[93] Ex. 2, *supra* note 74, at 1.
[94] *Id.* at 2.
[95] *Id.*
[96] *Id.*

23

were relatively small net losses of staff among the other three categories of caseworker positions between January 1 and December 10, 2012.

Attrition among DFCS caseworkers since 2010 has been driven largely by resignations. Resignations, the single largest source of attrition among caseworkers, eclipsed all other categories of attrition combined, accounting for 62 percent of all caseworker staff who separated from the agency.[121]

In addition to caseworker staffing requirements, the MSA also includes Period 3 requirements related to ASWS staffing levels. The MSA specifies that by the end of Period 3, in the non-carve out counties, no more than ten percent of supervisors responsible for supervising caseworkers shall be responsible for directly supervising more than five caseworkers.[122] According to the non-validated data that is relied upon by defendants,[123] as of October 31, 2012, 18 ASWS, or 14.3 percent of ASWS supervising caseworkers in non-carve out counties, supervised more than five caseworkers.[124] Among those 18 ASWS, ten supervised six caseworkers each, three supervised seven caseworkers each, two supervised eight caseworkers each, and three supervised nine caseworkers each.[125]

Unlike the trend among the caseworker workforce, there has been a net decline in ASWS staffing levels in both 2011 and 2012.[126] During calendar year 2011, DFCS lost a net total of four ASWS staff and from January 1 to December 10, 2012, the total number of ASWS working

---

[121] Ex. 11, chart prepared by the Office of the Court Monitor, Reason for Separations Among Caseworkers, by Position, January 1, 2010 - December 10, 2012.
[122] MSA §II.A.2.a.9.b.
[123] See, e.g., supra at 25.
[124] Ex. 12, chart prepared by the Office of the Court Monitor, Area Social Work Supervisors (ASWS) Working in Non-Carve Out Counties, By Number of Caseworkers Supervised, As of October 31, 2012. Supervisors in carve out counties are not subject to the same ratio requirement during Period 3; however, for comparative purposes, see Ex. 13, chart prepared by the Office of the Court Monitor, Area Social Work Supervisors (ASWS) Working in Carve Out Counties, By Number of Caseworkers Supervised, As of October 31, 2012.
[125] Ex. 14, chart prepared by the Office of the Court Monitor, Area Social Work Supervisors (ASWS) Supervising More Than Five Caseworkers in Non-Carve Out Counties, By Region, As of October 31, 2012.
[126] Ex. 15, chart prepared by the Office of the Court Monitor, Hires and Separations Among Area Social Work Supervisory Staff, January 1, 2010 - December 10, 2012.

for DFCS decreased by ten.[127]  In Period 3 specifically, there was a net decline of six ASWS staff.[128]  Like the caseworker workforce, between January 1 and December 10, 2012 the single largest source of ASWS attrition was resignations, which accounted for 56 percent of ASWS attrition.[129]  Defendants will have substantial difficulty satisfying MSA requirements if supervisory staffing deficits are not addressed in an effective way.

In addition to capacity-building initiatives and staffing, the development of a more functional management information system has been a priority in this case from the start. Defendants' history of remediating the substantial shortcomings in MACWIS has been marked, at times, by periods of inaction and unreasonable delay.[130]

The Settlement Agreement required that by the end of Period 1, DFCS staff would have access to basic computer services;[131] that MACWIS data related to compliance with all required foster care service standards would be collected, analyzed and disseminated on a monthly basis;[132] and that a capacity assessment of MACWIS relative to the requirements imposed by the Settlement Agreement would be complete.[133]  The expectation was that a qualified MACWIS director would be at the helm to coordinate these initiatives.[134]  These requirements were not satisfied,[135] and although they were incorporated into the Period 2 IP[136] – which substantially

---

[127]  *Id.*

[128]  *Id.*

[129]  *See* Ex. 16, chart prepared by the Office of the Court Monitor, Reason for Separations Among Area Social Work Supervisors, January 1, 2010 - December 10, 2012.

[130]  This circumstance is not attributable to the leadership in the MACWIS unit itself.  The remediation effort is plainly under-resourced and has not been treated as a priority by the defendants.

[131]  Settlement Agreement §II.A.5.b.  According to the Settlement Agreement, access to MACWIS, word processing and electronic mail constitute access to basic computer services.  *Id.*

[132]  *Id.* §II.A.5.c.  Dissemination to DFCS county and regional staff was mandated.  *Id.*

[133]  Period 1 IP §I.e.

[134]  The Settlement Agreement required assembly of a management team capable of assisting with the DFCS reform process.  *Id.* §I.1.  Early on, the defendants correctly viewed the MACWIS director as a key member of the team. *June 2009 Report* at 23-25.

[135]  *June 2009 Report* at 20 (finding that assessment of MACWIS conducted during Period 1 did not address reliability of MACWIS data, efficacy of management reports generated, nor consider whether MACWIS was capable of meeting the functionality requirements established by the Settlement Agreement); *id.* at 51-55 (finding

# Ex. 6C



CREDIBILITY    •    INTEGRITY    •    ACHIEVEMENT

# Memorandum

DATE:        February 26, 2014

TO:          Mark Smith
             Deputy Executive Director
             Mississippi Department of Human Services
                  Department of Family and Children's Services

CC:          Kim Shackelford, Jim Mooney, Caroline Louissaint
             Peer Review Team

FROM:        Rebecca Tedesco, Program Manager of Public Accreditation

RE:          Requested Exception for Area Social Work Supervisor Degree Requirements

---

This memo is in response to the letter submitted to COA on January 16, 2014 by MDHS-DFCS regarding the standard exception for Area Social Work Supervisors (ASWSs) across the state. The degree requirements for these positions are reviewed under PA-CPS 14.02, PA-FC 19.05 and PA-KC 16.02.

Due to the extenuating circumstances detailed in the request, COA is in agreement that DFCS can currently hire supervisors without advanced degrees, but they must be currently enrolled in a graduate program working towards an advanced degree in social work or a comparable human service field. The candidate must be hired with an expectant end date for the achievement of the degree.

The agency will be responsible to monitor the credentials of staff, progress towards degrees and adverse actions if the degrees are not obtained in the required time. The advanced degree requirement will remain in the ASWS job description.

Please submit a formal plan to COA by **March 14, 2014** regarding how the agency will monitor this moving forward, including:
- o  Current baseline data for supervisor credentials by region.
- o  An explanation of how the agency will track progress towards the agreed upon timelines.
- o  Identifying actions the agency will take if a supervisor does not earn a master's degree by the agreed upon date.

DHS
362542

COUNCIL ON ACCREDITATION

- o Clear supervision steps put into place to support ASWS staff without advanced degrees and how this will be documented.
- o Plans and actions taken to make sure the agency will be prepared to hire only qualified supervisors in the future.

The issue will be monitored by COA through a periodic review of the submitted plan, the agency's required Maintenance of Compliance reports, and future Maintenance of Accreditation reports.

This is time limited relief, COA will revisit this agreement in **March 2015**.

Please do not hesitate to contact me with any questions you may have. I can be reached at ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ or at ▮▮▮▮▮▮▮▮▮



DHS
362543

2

# Ex. 7



**STATE OF MISSISSIPPI**
**invites applications for the position of:**

# DHS-Area Social Work Supv

**SALARY:**          $37,511.76 /Year

**OPENING DATE:** 01/10/14

**CLOSING DATE:** 04/10/14 11:59 PM

**JOB TYPE:** Full-Time

**LOCATION:** 23 - HANCOCK

**SHIFT SCHEDULE:** Day Shift Only

**TRAVEL SCHEDULE:** None

**TIME LIMITED POSITION:** No

**AGENCY INFORMATION:** .DHS-Area Social Work Supervisors in Hancock, Harrison and Jackson counties will be hired at a start salary of: 37,511.76 plus; 15% Recruitment Flex: ($5,626.64); = $43,138.52 plus an additional 20% Duty Location Pay (8,627.70);equals a total amount of $51,766.22 annually. DHS, Ms. Betty Purvis can answerer any questions concerning this posting at (601) 359-2899

**CHARACTERISTICS OF WORK:**
This is professional social work of a supervisory nature. Incumbents are responsible for the supervision of social service program for families, children, and adults and maintenance of program operations. Work is performed under the general supervision of the Social Services Regional Director. Incumbents remain on-call on a 24 hour basis.

**EXAMPLES OF WORK:**
Examples of work performed in this classification include, but are not limited to, the following:

Ensures maintenance of acceptable standards of social work practice in geographic area of responsibility.

Supervises and is administratively in charge of the area of service and the area social workers.

Provides performance evaluations and performance improvement plans as needed.
Provides in-service and on-the-job training.

Assists the area social workers in difficult cases when needed, particularly where life/health, public contact, and community organization are concerned.

Prepares reports and trend analyses on the operations of geographic area of responsibility.

Makes presentations to community, civic, and church groups on abuse/neglect and other timely

DHS
362409

topics.

Assists county staffs in the development and utilization of resources necessary for carrying out programs.

Performs related or similar duties as required or assigned.

**MINIMUM QUALIFICATIONS:**

These minimum qualifications have been agreed upon by Subject Matter Experts (SMEs) in this job class and are based upon a job analysis and the essential functions. However, if a candidate believes he/she is qualified for the job although he/she does not have the minimum qualifications set forth below, he/she may request special consideration through substitution of related education and experience, demonstrating the ability to perform the essential functions of the position. Any request to substitute related education or experience for minimum qualifications must be addressed to the State Personnel Board in writing, identifying the related education and experience which demonstrates the candidate's ability to perform all essential functions of the position.

EXPERIENCE/EDUCATIONAL REQUIREMENTS:

Education:
Must be licensed to practice Master's Level Social Work (LMSW) in the State of Mississippi;

AND

Experience:
Four (4) years of experience in social work.

OR

Education:
Must be licensed to practice Bachelor's Level Social Work (LSW) in the State of Mississippi and must have completed thirty (30) semester hours of graduate level social work education;

AND

Experience:
Four (4) years of experience in social work.

OR

Education:
Must be licensed to practice Bachelor's Level Social Work (LSW or above) in the State of Mississippi;

AND

Experience:
Five (5) years of experience in social work.

Documentation Required:

Applicant must attach a copy of his/her current wallet-size license in Social Work.

Note:

DHS
362410

Incumbent must have a valid driver license and proof of insurance which will be verified by the hiring agency.

**ESSENTIAL FUNCTIONS:**
Additional essential functions may be identified and included by the hiring agency. The essential functions include, but are not limited to, the following:

1. Provides supervisory and administrative duties for social workers and general clerks.

2. Provides technical assistance to county staff for various problems.

3. Reviews and improves client services.

---

APPLICATIONS MAY BE FILED ONLINE AT:
http://www.mspb.ms.gov

210 East Capitol Street
Suite 800
Jackson, MS 39201
601-359-1406
601-359-1406

Position #3745-0662-20140108Ha
DHS-AREA SOCIAL WORK SUPV
C1

An Equal Opportunity Employer


DHS
362411

**DHS-Area Social Work Supv Supplemental Questionnaire**

\* 1. What is the highest level of social work licensure in the State of Mississippi that you have
obtained?

❑ Licensed Social Worker (LSW)
❑ Licensed Master Social Worker (LMSW)
❑ Licensed Certified Social Worker (LCSW)
❑ None of the above

\* 2. How many years of experience do you have in social work?

❑ No Experience
❑ 1 Year of Experience
❑ 2 Years of Experience
❑ 3 Years of Experience
❑ 4 Years of Experience
❑ 5 Years of Experience
❑ 6 Years of Experience
❑ 7 Years of Experience
❑ 8 Years of Experience
❑ 9 Years of Experience
❑ 10 Years of Experience
❑ More than 10 Years of Experience

\* 3. Have you completed thirty (30) semester hours of graduate level social work eduation?

❑ Yes
❑ No

\* Required Question

DHS
362412

**Ex. 8A**

# Mississippi Department of Human Services, Division of Family and Children Services (MDHS/DFCS)

## Workforce Development Plan
## Phase I
### Harrison, Hancock, Jackson, & Hinds Counties

**Brief Description and Rationale:**

Through generous support from Casey Family Services, the Mississippi Department of Human Services, Division of Family & Children's Services, in collaboration with the American Public Human Services Association has developed the Workforce Development Plan Phase I for Harrison, Hancock, Jackson, and Hinds Counties, identified in the Modified Settlement Agreement as "Carve-Out Counties". These counties have historically had a difficult time recruiting and retaining workers.

The intention of this Plan is to address Agency gaps in these counties, as identified through data analysis (Comprehensive Organizational Health Assessment Regional and Statewide Reports), staff surveys (2011 MDHS/DFCS Worker Retention/Satisfaction Survey Results), and focus groups with direct service staff, to determine root causes for such gaps and strategize remedies to increase staff capacity, efficacy and retention.

The next phase of the Workforce Development Plan will consist of gathering statewide data and developing strategies to improve staff recruitment and retention for DFCS staff throughout Mississippi. The Statewide Workforce Development Plan will be developed by January 2013. Through implementation of this Plan, the Agency seeks to strengthen the capacity of staff at all levels, thereby improving services provided to Mississippi children and families.

**Objective:**

The objective of this Plan is to positively affect recruitment and retention of direct service workers and supervisors, as well as to strengthen DFCS staff capacity in order to consistently meet or exceed its performance standards in Harrison, Hancock, Jackson, and Hinds Counties. This Plan is designed to support and accompany the implementation of the *Olivia Y* Modified Settlement Agreement requirements and Mississippi Practice Model in these counties with the ultimate result of sustained, steady improvements in outcomes for the children and families it serves.

**Priority Improvement Areas:**

The following are key areas of work DFCS must do to get the right people on board, in the right positions, with the right knowledge and skills, working on the right things, and in the right ways:

DHS
300186

Workforce Development Areas of Work:

### *Leadership*
- *Articulating the vision*
- *Keeping the focus on priorities*
- *Setting the example*
- *Setting the tone*
- *Making tough calls*

### *Organizational Structure*
- *Roles, levels, departments, policies and procedures*
- *Cross-departmental/level work teams*
- *Flexible workforces (e.g., part time, temporary, contractors)*
- *Alliances/contracts with service partners*

### *Organizational Culture*
- *The "feel" and norms of an organization as created by its approach to communication (up / down / across)*
- *Decision making*
- *Teamwork*

### *Staffing*
- *Defining the position*
- *Sourcing, recruiting, selecting, and onboarding*
- *Staff retention*

### *Staff Development*
- *Helping staff at all levels develop new knowledge and skills*

### *Talent Management*
- *Succession planning*
- *Leadership development*

### *Performance Management*
- *Setting performance expectations*
- *Managing performance day-to-day*
- *Conducting formal performance reviews*

---

### Rewards and Recognition

- The "employment deal" between staff and Agency -- cash compensation, cash benefits (e.g., health, retirement), non-monetary benefits (e.g., work flexibility), non-monetary recognition (e.g., employee of the month programs, spotlight features in Agency newsletters)
- Spontaneous, day-to-day recognition
- Targeted, merit-based development

## Foundational Areas of Work:

### Alignment to Strategy

- Targeting workforce development plans, processes, and actions to help the organization perform at a consistently high level and provide consistently valuable products and services to the organization's clients

### Human Resources Functional Capacity

- Executing core workforce development tasks
- Developing and implementing workforce development key processes
- Influencing the actions of individual leaders
- Influencing the organization's strategy

### Data

- Gathering
- Storing
- Reporting
- Using to guide decision making

### Trust

- Between staff in different departments or organizational levels
- Between the organization and its partners
- Between the organization and the clients and community it serves

### Values

- Defining in operational terms
- Communicating to all staff and other stakeholders
- Using to guide behavior day-to-day

MDHS and DFCS senior leaders, together with the DFCS State Implementation Team, identified the following priority areas of focus for assessing strengths and gaps across the state, with an accelerated and deeper assessment in Harrison, Hancock, Jackson, and Hinds Counties:

DHS
300188

- *Staffing*
- *Staff Development*
- *Talent Management*
- *Performance Management*
- *Rewards and Recognition*
- *Retention*

With a particular focus on Harrison, Hancock, Jackson, and Hinds Counties, identified in the Modified Settlement Agreement Period 3 Plan as "Carve-Out Counties", and with facilitation support from APHSA, the DFCS Caseload and Staffing Sub-Team, also known as the Workforce Development Team (WDT), defined these priority areas in operational terms, identified strengths and gaps, key themes that cut across the gaps, root causes of the highest priority gaps, and general remedies to close the gaps.  These strengths and gaps are listed below in regard to the previously identified priority areas:

## STAFFING

STRENGTHS:

- There has recently been an increase in new hires, providing more staff to share the high caseload numbers
- Several former interns have sought employment with the Agency after graduation

GAPS :

- Many frontline staff report that they were deterred or "scared off" by school faculty from pursuing a career in child welfare.
- One ASWS stated that one obstacle that she has noted in hiring quality staff is that they can make more money, and experience less stress/burnout elsewhere.

## STAFF DEVELOPMENT

STRENGTHS:

- The mentoring program provided by the training unit will provide a frequently-requested element to the on the job training, as mentioned by frontline staff.
- The intensive training currently provided follows all aspects of a child welfare case from Intake of Allegations to Termination of Parental Rights (TPR).
- The ASWSs reported that the 2 most recent groups to finish pre-service training have been more prepared and knowledgeable than previous graduates of pre-service training.

GAPS:

- Several ASWSs report that the frontline staff is not adequately trained following their Intensive Training with the Agency. One ASWS mentioned that on the job training is equally important as the initial training undergone by new hires.

DHS
300189

- Intensive training for new hires is not unit specific and, therefore, staff who work in the Resource Unit are not thoroughly trained in their roles (licensure of foster homes, adoptions, etc.).
- More time is needed to cover the workings of MACWIS during intensive training; often case scenarios are only completed one time and so they only use a function once before being expected to use it regularly (ex. entering placements, eligibility, etc.).
- Many interns present in the focus group (Harrison Co.) expressed desire to undergo a brief training to better understand the complexities of the work.
- Staff frequently reports to ASWSs that they need more opportunities to obtain CEUs for licensure renewal. They frequently do not have time attend area conferences due to conflicts with court scheduling and other case-related obligations.

## TALENT MANAGEMENT

STRENGTHS:

- The opportunity for advancement with the Agency is more likely than with most others, and in-house promotional opportunities are sent to staff regularly via email.

GAPS:

- Some frontline staff report that they felt more qualified than their ASWS because of spending more time in direct service with DFCS clients.
- Several frontline staff members made the statement that they are often "thrown under the bus" by their ASWSs to protect him/herself when something goes wrong. This indicates a lack of trust between the ASWS and frontline staff.

## PERFORMANCE MANAGEMENT

STRENGTHS:

- Front line staff in Jackson and Harrison County reported having a good to moderate understanding of the expectations of DFCS and their supervision.
- Counties in which adequate one-on-one time with supervision can be possible report that they are more "in tune" with their supervisors
- The RD in Hinds County generally holds staff accountable for performance

GAPS:

- Some DFCS staff, particularly those hired in the past 5 years, report that they have not completed a Job Content Questionnaire (JCQ) or have had a Performance Appraisal Review (PAR).
- Staff in Hinds County report that, especially among new hires, there is very little understanding of "what they're supposed to be doing", sometimes even after Pre-Service Training.
- PARS are not consistently implemented in Hinds County. Several ASWSs reported the current PAR process to be "frustrating", and stated that there is no notification system prior to PAR deadlines.

## REWARDS AND RECOGNITION

STRENGTHS:

- Verbal praise/recognition is often given by the ASWS for a job well done (Harrison Co.)
- A compressed work schedule allows for work flexibility, and despite working longer hours throughout the week, the extra day off often provides a much needed break.
- In the coastal area, the local newspaper will sometimes feature articles that exemplify the positive work done by the Agency and touching stories, rather than only portraying the negative aspects of child welfare.
- Verbal praise, time off, and appreciation luncheons are techniques utilized by some of the ASWSs to reward and motivate their staff for good work.

GAPS:

- Frontline staff reports that there is a lack of recognition when good work is done, but no shortage of feedback when something goes wrong (Hinds Co.).
- Staff report that a lack of feedback from their supervisor often leaves them questioning whether or not they are successfully performing their jobs (Hinds Co, Jackson Co.)
- There is inconsistency among units regarding whether or not compensatory time is granted for staff who work on case documentation/data entry into MACWIS after hours from their homes. One ASWS reported that he was told that this type of comp time cannot be approved.

## RETENTION

STRENGTHS:

- Many frontline staff members and ASWSs report that they continue their employment with the Agency because of the rewarding nature of the work of providing services to the state's most vulnerable children and families.
- Frontline staff members share a sense of community in the office and provide assistance to another when possible.
- Some of the staff commented that they enjoy the challenge of their work, and that problems tend to arise due to other dynamics, not the work itself.
- In some areas, ASWSs were reported to be nurturing and consistent about scheduling 1-on-1 time with staff (specific to Jackson, Harrison Counties)

GAPS:

- Direct service workers report that many tasks not directly related to serving children and families (ex. transportation, paperwork, medical appointments, etc.) take up a great deal of the workers' time. Workers suggested as a possible remedy adding more social work aides to complete these tasks.
- Many workers have been "bounced" from supervisor to supervisor, as part of office restructuring. One reported having 5 supervisors in 5 years.
- In Hinds County, it was reported that there is a lack of "face time" with supervisors; staff reported that the ASWS will often only communicate with them via email, or by entering narratives into MACWIS with instructions.
- A high turnover rate exists among ASWSs in Harrison and Hancock Counties, often leaving staff with a feeling of instability, and lack of support.

·DHS
300191

- Law enforcement (local police) in Hinds County does not readily assist when called by frontline staff; therefore workers often do not feel safe in high-crime areas. One staff member reported that she was made to enter a home where there were allegedly firearms ahead of a law enforcement officer.
- In Hancock and Harrison Counties, it was reported that the courts often create situations where the staff feel that they are committing injustices and are not providing services according to best practice.
- Excessive workloads and on-call schedules, as well as non-supportive supervision were reported by ASWSs to be the cause of "massive turnover" in Hinds County (Hinds County Focus Group, 05/17/12).
- Safety concerns are also considered to be an issue that affects staff retention in Hinds County. Safety issues related to the Jackson Police Department remain to be an issue. JPD will only rarely accompany staff when needed, and often will not assist with non-compliant parents (Hinds County Focus Group, 05/17/12).

### Project Implementation

**Communicating the Improvement Effort:** What will you say and to whom? Who will deliver the message (director, managers, or supervisors)? What form will the message be delivered in (written, verbal)? Where will the information be shared (all staff meeting, department/unit meetings)? How will the actions of this plan lead to our desired outcome?

> *During biweekly Settlement Team Meetings, ████████ / ████████ will provide verbal updates regarding the status of the Plan, which will be communicated by Bureau Directors to their staff. ████████ will provide updated information to the Regional Directors, who will then communicate the effort to the field staff. The Workforce Development Plan will also be posted for review on the DFCS Connection website.*

**Sustaining the Improvement Effort:** How will you ensure the improvement effort continues to be implemented? What methods/tools will you use for accountability?

> *Reviews of the Action Plan tasks and timeframes will continue to be reviewed at monthly Staffing/ Caseload Sub-team meetings with the parties responsible for carrying out the specified tasks. Through January 1, 2013, ████████ will update the Settlement Team biweekly regarding Plan progress, impact, and lessons learned. Unless the Settlement Team decides otherwise, from that point forward, ████████ will update the Settlement Team monthly.*
>
> *The Staffing/Caseload Sub-team will also contribute content to a number of regular Agency reports to key stakeholders, including the following:*
> - *Quarterly updates to the State Implementation Team*
> - *Annual report to the legislature*
> - *Annual CQI report*
> - *Periodic updates to the Citizens Review Panel (starting the second half of 2013, to enable the first update to include concrete results of plan implementation)*

*The Staffing/Caseload Sub-team will also contribute content to the strategic planning process conducted every five years. The next opportunity to provide input to this process will be in the first half of 2013.*

**Budget and Resource Implications:**  Is this a "no-cost" or "low-cost" effort or will money be needed to support the improvement?  If funds are needed how will they be secured?  What resources, if any, will you need and who will you need them from?

*The Workforce Development Plan should be considered a "low-cost" effort. In regard to staffing, positions can be filled and funded via previously allocated PINS. DFCS is partnering with renowned family service organizations to develop and implement statewide initiatives to improve services provided to Mississippi children and families. These organizations include:*

- *Casey Family Programs*
- *Center for Support of Families*
- *American Public Human Services Association*
- *Atlantic Coast Child Welfare Implementation Center*
- *Child Welfare, Social Work Consultation  Services*

*In monitoring the Workforce Development plan, the Workforce Development Team will address needs for additional funding as they arise and communicate those needs through the proper channels within the Agency.  To secure in-kind resources (i.e. rewards/incentives for field staff) the Agency will partner with state and local businesses and organizations to secure in-kind donations.*

*Due to the restrictions imposed by finite resources, it is important that the Workforce Development Plan is implemented in the most cost-efficient way possible, fully utilizing support that has already been obtained to provide remediation to identified Agency gaps.*

**Monitoring Plan Progress:**  How will you chart your progress?  What will you track? What methods/tools will be used?

*The Action Plan of General Remedies matrix, contained herein, will be used to monitor Plan progress and lessons learned at monthly Staffing/Caseload Sub-team meetings. The Sub-team will monitor impact of the remedies by tracking data from the following sources, both using point in time and trend data:*

- *Overall impact on children, youth, and families will be tracked by monitoring the outcomes of the Modified Settlement Agreement and MS Practice Model.*
- *Impact on Staffing will be tracked by monitoring:*
  - *Time to hire*
  - *Positions needed as a function of workload*
  - *Percentage of needed positions filled*
- *Impact on Staff Development, Performance Management, and Rewards and Recognition will be tracked using:*
  - *Staff responses on the annual employee survey*
  - *Client and stakeholder feedback regarding workers gathered for the quarterly Foster Care Review. To expedite data processing, the Sub-team will propose that this review start being conducted using electronic versus manual means.*

DHS
300193

- *Additional impact on Performance Management will be tracked by analyzing statistics generated by the PARs process. Starting in 2013, we anticipate being able to track, e.g., PAR completion rates and ratings distributions by state, region, county, and individual review.*
- *Impact on Talent Management will be tracked by monitoring staff promotions, lateral moves, and demotions, e.g., by tracking staff members':*
  - *Tenure and performance (e.g., using PARs, unit progress on practice model outcomes)*
  - *Time in position*
  - *Credentials/education*
  - *DFCS investment in professional development (e.g., graduate study)*
  - *Former and new positions (e.g., moved between positions? Departments? Counties? Regions? ASWS?)*
- *Impact on Staff Retention will be tracked by reviewing turnover data, e.g.,:*
  - *By county*
  - *By region*
  - *For the state office*
  - *To distinguish avoidable and unavoidable turnover*
  - *To distinguish desirable and undesirable turnover*

*Following the implementation of said remedies, periodic site visits and focus groups will be conducted to evaluate plan progress and efficacy. Additional questions regarding identified gaps will be incorporated into the Agency's annual Employee Satisfaction Survey. ▬▬▬▬▬ will also continue to record and analyze information obtained from Employee Exit Interviews.*

**Action Plan of General Remedies:**

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| | | **PHASE I** | | | |
| 1. | Workload Validation Study of Direct Service Workers – in Carve-Out Counties | • "Clean Up" of Dormant and other inactive open cases using process developed by ▮▮▮ staff and State Office ("SO") support as necessary | ▮▮▮, ▮▮▮ | October 1, 2012 | In-Progress |
| | | • Identify "go-to" point of contact for MACWIS issues | ▮▮▮ | August 1, 2012 | Completed |
| | | • Complete Workload Analysis based on refined data (monthly reports) | ▮▮▮ | November 1, 2012 | In-Progress |
| | | • Engage RDs to discuss ways of hiring the optimal number of staff based on Workload Analysis | ▮▮ | March 2013 | Not Started |
| 2. | Develop and Communicate Principles for Reassigning Staff to New ASWS, including Communicating the Rationale for Moves | • Address with RDs at June Senior Management Meeting | ▮▮ with ▮▮ | June 2012 | Completed -- Communicated to Sr Mgrs and RDs re letting a worker know why a change of supervisor is necessary |
| | | • Written follow up guidance to RDs | ▮▮▮ | October 15, 2012 | |

DHS
300195

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 3. | **Make Quick Upgrades to Hiring Process Continuous Improvement**<br>• Time to Hire<br>• Selection of non-BSWs | • DFCS Personnel Unit will be reorganized with new leadership | ▬▬, ▬▬ | 07/31/12 | Completed |
| | | • Two new staff persons will be hired or transferred into the Personnel Unit | | 06/30/12 | Completed |
| | | • All MACWIS user registration forms for new hires will be processed through MACWIS unit instead of Personnel unit | | 05/31/12 | Completed |
| | | • Temporary Assignment of workers will catch up on backlog of filing | | 06/30/12 | Completed |
| | | • Backlog of personnel transactions will be addressed and either forwarded for approval or reason for non-approval will be provided to the requesting supervisor | | 07/31/12 | Completed |
| | | • The Deputy Director of MDHS will meet with the Personnel Unit supervisor to determine availability of PINs for requested personnel transactions | | Ongoing, weekly | In-Progress |
| | | • Communicate with RDs regarding reasons personnel transactions are delayed by submitting supervisor | | 06/07/12 | Presented "Reasons for Delay in Personnel Transactions" to RDs and Sr Managers |
| | | • Tips for expediting personnel transactions will be published in the Agency's newsletter, and on the DFCS connection website. | | September 15, 2012 | Presented "Tips for Expediting Personnel Transactions" to RDs and Sr Managers. |
| | | • Communicate with MS State Personnel Board regarding delay in applications resulting from perpetual advertisements | | September 30, 2012 | In-Progress |
| | | | | | In-Progress, Identified large volume of applications; DFCS will request periodically as needed. |

DHS
300196

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 4. | Targeted Grooming in Carve-Out Counties of Workers with ASWS Potential (to triage OJT of new workers) | • Identify staff to potentially fill vacant ASWS positions | ▮▮▮, RDs | 12/15/12 | In-Progress |
| 5. | "Pinch Hit" ASWS Coverage in Hancock, Harrison Co's | • Fill at least two ASWS positions in Hancock County<br><br>• Completion of Clinical Supervisory Training by new ASWSs | ▮▮▮, RDs, Training Unit | 09/30/12<br><br>10/15/12 | Completed<br><br>In Progress |
| 6. | Implement Practice Model in Carve-Out Counties, including a focus on strengthening values-based behaviors | • Ensure Rollout of Practice Model according to Implementation Schedule (Schedule available upon request)<br><br>• Year-long Data Tracking according to Implementation Schedule | Statewide Implement. Team | 07/2015<br><br>02/2016 | In-Progress<br><br>In-Progress |
| 7. | Connect "Siloed" Projects | • Achieved through Settlement Team Meetings and Sub-team Meetings | ▮▮▮, Statewide Implement. Team | Ongoing | In Progress |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 8. | PAR Upgrade – FPS Workers<br>• Tools<br>• Process<br>• Rollout/Training<br>• Monitoring/Continuous Improvement | • Identify members of PAR Workgroup | Consultant, ▪ | 11/01/12 | In Progress |
| | | • Determine positions to include in PAR upgrade | | 11/01/12 | In Progress |
| | | • Catalog potential PAR elements for direct service staff positions. Sources: Current Mod. Settlement Agreement; Practice Model; COA Standards; Agency Policy | Consultant | 11/01/12 | In Progress |
| | | • Determine which potential elements can be measured by current/anticipated reports | Consultant | 11/01/12 | In Progress |
| | | • Assemble examples of PAR in current use for field-level positions | Consultant | 11/01/12 | In Progress |
| | | • Develop draft PAR template(s) for direct service staff (Family Protection Staff) | Consultant | 11/01/12 | Completed |
| | | • Develop draft PAR assessment tools for direct service staff | Consultant | 11/01/12 | In Progress |
| | | • Finalize direct service staff PARs for approval by HR and Management | PAR Workgrp | 03/01/13 | In-Progress |
| | | • Develop draft PAR templates for ASWS and RD positions | PAR Workgrp | 06/01/13 | Not Started |
| | | • Develop draft PAR assessment tool(s) for ASWS and RD | PAR Workgrp | 06/01/13 | Not Started |
| | | • Finalize ASWS and RD PARS for approval by HR and Management | PAR Workgrp | 06/01/13 | Not Started |
| | | • Develop draft PARs templates for remainder of field level positions | PAR Workgrp | 06/01/13 | Not Started |
| | | • Develop draft PARs assessment tool for remainder of field level positions | PAR Workgrp | 6/01/13 | Not Started |
| | | • Finalize remaining field level positions PARS for approval by HR, management | PAR Workgrp | 06/01/13 | Not Started |

DHS
300198

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 9. | Strengthen ASWS Development/Support | • Achieved through ASWS Learning Labs, Clinical Supervisory Training, and Mentoring Program | ▉▉ RDs | Ongoing (Schedule available upon request) | In-Progress |
| 10 | Conduct joint planning with the RD to address trust gaps in Hinds County | • Gather focus group data in Warren County<br><br>• Discuss options for a participative continuous improvement process focused initially on identifying quick wins | Consultant, DFCS & CSF Practice Coaches,▉▉ ▉(CQI), ▉▉▉▉, | 11/15/12<br><br>12/31/12 | Not Started,<br><br>Dialogue about the need for change can draw on focus group data from this effort as well as COHA and CQI data |
| 11. | Drive targeted Improvement of IV-E Eligibility | • Develop improvement strategies based on Federal ACF IV-E Case Review Report<br><br>• Revised/Improved Random Moment Surveys (automated)<br><br>• Post Procedures for Entering Eligibility on DFCS Connection<br><br>• Ensure communication of procedures to Training Unit | ▉▉ DFCS Eligibility Director, ▉▉▉ | 12/21/12<br><br>TBD<br><br>10/15/12<br><br>10/15/12 | In-Progress<br><br>In-Progress<br><br>Not Started<br><br>In-Progress |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 12. | Develop and Prepare to Implement Writing Internal Communication Plan, including communication of values<br>■ Agency mission, values, chain of command, grievance process, addressed during preservice training<br>■ Implementation of Practice Model provides avenues for effective communication<br>■ DFCS Connection<br>■ Newsletter<br>■ Providers via Performance Based Contracting<br>■ COHA, ACWIC Sustainability Plan | ● Review other communication plans and templates<br><br>● Draft plan outline/template<br><br>● Gather input from the field through an online survey and RD staff meetings<br><br>● Complete draft 1 of plan<br><br>● WDT reviews draft 1<br><br>● Complete draft 2<br><br>● Settlement Team reviews draft 2<br><br>● Finalize plan<br><br>● Monitor & continuously improve | ▆▆,<br>▆▆,<br>▆▆<br>Consultant<br><br>▆▆<br><br>▆▆<br><br>▆▆<br><br>▆▆<br><br>▆▆<br><br>▆▆<br>Settlement Team | 01/15/2013<br><br>01/15/2013<br><br>06/01/2013<br><br><br>06/15/2013<br><br>06/30/2013<br><br>07/15/2013<br><br>07/30/2013<br><br><br>08/15/2013<br><br><br>Quarterly | E.g., APHSA template, ex's from ▆ (DFCS PR) and ▆. (Medicaid PR).<br><br>Template should include at least key messages, typical types of communications (e.g., positive reports/ progress/successes) and who delivers them, how they're delivered, by whom, when/how often, and using what communication vehicles |
| 13. | Focused Efforts to Build Team Spirit and Improve Rewards and Recognition | ● Meeting with RDs on 08/16/12<br><br>● Partner with community organizations and businesses to provide donations in order to provide incentives to direct service staff | ▆▆<br>▆▆ | 08/16/12<br><br>07/15/2013 | Completed<br><br>Not Started |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 14 | Focused Efforts to Strengthen Leadership at All Levels in Carve-Out Counties<br>• To improve the culture and organizational climate and strengthen peer-to-peer coaching and modeling of behaviors that reinforce the Agency's values<br>• Put in place lead workers and/or ASWS and/or explore other options? | • Discuss at August 9 WDT meeting | ██, RDs, led by ██ | 8/9/12 | Completed |
| | | • Discuss at August 16 RD meeting | ██ | 8/16/12 | Completed |
| | | • Ensure all regions have Regional ASWS | ██ | 8/16/12 | Completed |
| | | • Process input from RDs and identify key elements of plan | ██ | 01/07/13 | In-Progress |
| | | • Draft plan leadership development plan | ██ | 03/01/13 | Not Started |
| | | • Provide feedback on draft plan | RDs, other staff written into the plan | 07/15/13 | Not Started |
| | | • Finalize and being implementing plan | ██ | 10/15/13 | Not Started |
| | | • Fill vacant ASWS slots | RDs | Ongoing | In-Progress |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| 15 | Engage Judges in<br>• Joint Planning<br>• Troubleshooting Acute Impact on Workload In Crisis Counties | • A team of Sr Leadership will request a meeting with each County Court Judge or Youth Court Referee in the carve-out counties to develop written strategies that the courts agree to implement to assist in retention of DFCS workers and/or to move children toward permanency more efficiently and timely.<br><br>• A report of the meetings with County Court Judge or Youth Court Referee in the carve-out counties will be provided to the DFCS SIT for continuity with the requirements of the *Olivia Y.* Settlement Agreement.<br><br>• Engage Agency leaders and judiciary to communicate to County Board of Supervisors regarding improvements to physical office space for safety and environment to retain workers | ▉ & Judicial Team, ▉ /AG's Office | 07/31/13<br><br><br><br>09/01/12<br><br><br><br>06/15/12 and ongoing | **In Progress**<br><br>Harrison, Hancock, and Jackson, May 21-22, 2012; Hinds, June 18, 2012<br><br>07/26/12 Harrison, Hancock, Jackson, and Hinds<br><br>▉ addressed the Board of Supervisors in Hancock Co. as well as wrote and article for the local paper regarding needs. |

DHS
300202

**Overcoming Obstacles:**

| Potential Obstacle | How We'll Overcome It |
|---|---|
| Scheduling meetings – Workforce Development Team members and other general remedy leads in the action plan above are expected to participate in many meetings, including ones required by the *Olivia Y.* Modified Settlement Agreement and required for implementation of the Practice Model. | Set a regular schedule for WDT meetings and schedule other required meetings as far in advance as possible. Also, "piggy back" off other meetings (e.g., meetings when RDs come together from across the state, supervisor learning labs) whenever possible. |
| Geography – MS is a big state and we're spread out. Also, the coastal carve-out counties are a long way from Jackson. | Do as much as we can by phone vs in person; leverage consultants based in or near the coastal counties; do multiple things when key personnel based in Jackson are already traveling to a key region (e.g., ▮▮▮▮▮'s meetings with judges in the coastal counties, Practice Model rollout meetings) |
| Meeting space – offices in Jackson and in many regions have few meeting rooms and many meetings competing for the space. | Above and schedule ad-hoc meetings well in advance and, when possible, set a regular schedule for recurring meetings so scarce meeting space can be reserved in advance; identify offsite space to be used as an alternative when needed (e.g., new space in Rankin, Eudora Welty library, Woolfolk Building). |
| The federal Implementation Center (ACCWIC) grant that has funded the senior management team meetings central to the success of the settlement response is about to expire. | Sr leadership is committed to identifying resources to keep these meetings going, and will include a concrete sustainability plan in its closeout report to be completed in fall, 2012. |
| Staff capacity – DFCS staff has a lot on its plate and the action plan above requires a lot of work. | The Staffing/Caseload Sub-team is confident that DFCS has staff capacity to complete planned work through December 31, 2012. By that date, the Sub-team will develop a staff capacity plan to ensure that the action plan for 2013 and beyond is realistic and will lead to sustainable implementation. |
| DFCS does not control key factors critical to the success of the action plan (e.g., collaborative behavior of police and fudges, Board of Supervisors' control over county real estate/DFCS physical plant). | Engage additional DFCS leaders and partners, who police officials and judges view as peers, in joint planning dialogues; meet with new judges, police chiefs, and county supervisors as soon as possible to establish constructive working relationships; when communicating about DFCS commitments to plan success, note factors beyond the Agency's control. |

DHS
300203

**Ex. 8B**

**Grace M. Lopes**

---

**From:** Grace M. Lopes [mailto:gmlopes@oymonitor.org]
**Sent:** Monday, October 01, 2012 6:45 PM
**To:** ''Mark.Smith@mdhs.ms.gov' (Mark.Smith@mdhs.ms.gov)'
**Cc:** 'Rachal, Kenya'; 'Miriam Ingber'
**Subject:** Comments on Workforce Development Plan Submission Related to Carve-Out Counties

Mark:

As a follow up to both the e-mail I sent to you on Friday, September 28, 2012 (pasted below), and to our meeting on September 12, 2012, below please see my comments on the section of the Workforce Development Plan that was submitted through Kenya Rachal for the carve-out counties. After you have an opportunity to consider my comments, I think it would be helpful to discuss next steps concerning the carve-out counties as well as concerning the broader workforce development plan. Please let me know how you'd like to proceed. Thank you. - Grace

**Comments on Workforce Development Plan Submission Related to Carve-Out Counties**

Section I.A.2.b. of the Period 3 Implementation Plan ("IP") states:

> *Within nine (9) months of the start of Implementation Period 3, Defendants shall have finalized and begun implementing a Workforce Development Plan. This Workforce Development Plan shall address the recruitment and retention of DFCS professional and support staff as well as bring its current staff into substantial compliance with the worker and supervisor qualification requirements of the Modified Settlement Agreement. The Workforce Development Plan shall identify the specific steps, strategies, financial resources, and short- and long-term staffing goals with related timeframes that are necessary to meet the staffing requirements of the Modified Settlement Agreement. The Workforce Development Plan shall be approved by the Monitor as meeting the requirements of this Period 3 Implementation Plan and shall include a section focused specifically on recruitment and retention in Hancock, Harrison, and Jackson Counties ("Coast"), as well as strategies to support staff on the Coast, and shall also include a separate section focused specifically on recruitment, retention, and support strategies in Hinds County.*

In addition, §I.A.2.c.3. provides:

> *By September 1, 2012, Defendants shall have written the Coast and Hinds County sections of the Workforce Plan as required in Section I.A.2.b above.*

On September 4, 2012, DFCS submitted, through counsel, a document titled "Workforce Development Plan, Phase I" [hereinafter "Plan"]. In my view, the submission does not meet the requirements of the Period 3 IP for the reasons outlined below.

Contrary to the express requirements of the Period 3 IP, the Plan does not address the recruitment of staff in Hancock, Harrison, Jackson, and Hinds Counties. Although the submission includes a section titled "Action Plan of General Remedies," which lists 15 different topics, with the exception of one action step, none of the topics or action steps in this section relate to recruitment activities, and even that one action step does not focus on the targeted counties. The exception includes the following action step which is essentially a predicate to developing the required recruitment plan: "[e]ngage RDs to discuss ways of hiring the optimal number of staff based on Workload Analysis." Plan at 10, Remedy #1/action step 4.

The carve-out counties were treated separately in the Period 3 IP because of the long-standing failure to maintain adequate staffing levels in the carve-out counties and the very serious problems engendered by chronic understaffing. Notwithstanding the fact that the submission projects that the workload analysis will be completed by November 1, 2012, the anticipated date this action step is expected to be completed is listed as March 2013. This timeline does not reflect an appreciation for the urgency of the staffing deficits in the carve-out counties, which will require ongoing recruitment and retention initiatives to remedy.

The Plan reflects an absence of the data that would provide the basis for any remedial hiring effort.  For example, the Plan is silent about how many staff and the types of staff that need to be hired in each of the carve-out counties.  It does not provide any analysis of current staffing levels and related historical trends in each of the targeted counties, including whether there are sufficient funded positions allocated to each county to meet the requirements of both the Period 3 IP (which includes specific hiring requirements, *see* Period 3 IP at I.A.2.b.6.) as well as the Settlement Agreement's workforce requirements (*see* Modified Settlement Agreement [hereinafter "MSA" ] at II.A.2.a.).  Moreover, if there are an inadequate number of funded positions, the Plan should include strategies that will be implemented to address the fiscal limitations as well as the ongoing recruitment activities that will be undertaken to fill all existing and prospective funded vacancies.

The Plan appears to focus more on analyses and activities that could be considered to fall under the broad category of staff retention.  The Plan states that defendants relied on data analysis, staff surveys, and focus groups with direct service staff to determine "root causes" for "gaps and strategize remedies to increase staff capacity, efficacy and retention."  Plan at 1.  While the defendants' submission would benefit from a more detailed presentation of the methodology used for this undertaking, the Plan does offer what appears to be valuable insight into some of the factors that contribute to attrition in several of the carve-out counties.  However, there is a clear disconnect between the data that is presented in the Plan about the reasons for staff attrition and the topics listed in the general remedies action plan.  The Plan identifies in several places specific, actionable "gaps," that are not addressed in any of the general remedies presented in the Plan.  For example, the Plan indicates that the focus groups that were conducted identified safety concerns as an issue that affects staff retention in Hinds County.  Plan at 7.  Nonetheless, the general remedies action plan does not include strategies to address this key concern, nor many of the other retention-related issues identified by the data that is presented in an earlier part of the DFCS submission.


REDACTED


*Grace M. Lopes*
*Monitor, Olivia Y.*
*1350 Connecticut Avenue, N.W.*
*Suite 1000*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 8C**

# Mississippi Department of Human Services, Division of Family and Children Services (MDHS/DFCS)

## Workforce Development Plan

## April 2013

DHS
327478

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES (MDHS/DFCS)

## WORKFORCE DEVELOPMENT PLAN

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES - STATEWIDE WORKFORCE DEVELOPMENT PLAN | 8 |
| III. | WORKFORCE DEVELOPMENT PLAN - CARVE OUT COUNTIES | 24 |
| IV. | HINDS COUNTY | 27 |
| V. | JACKSON, HARRISON, & HANCOCK COUNTIES | 31 |
| VI. | REFERENCES | 46 |

DHS
327479

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES (DFCS)**

**WORKFORCE DEVELOPMENT PLAN**

## I.    INTRODUCTION

Through generous support from Casey Family Services, the Mississippi Department of Human Services, Division of Family & Children's Services ("MDHS" "DFCS", sometimes "the Agency"), in collaboration with the American Public Human Services Association ("APHSA") has developed the Workforce Development Plan for DFCS staff throughout the state of Mississippi and with a specific focus on the critical need areas of Hinds, Jackson, Harrison, and Hancock Counties, identified in the *Olivia Y.* Modified Settlement Agreement as "Carve Out Counties". These counties have historically had a difficult time recruiting and retaining workers, and face county-specific obstacles to the recruitment and retention of quality staff. The goal of the Workforce Development Plan is to positively affect recruitment and retention of direct service workers and supervisors in the Carve Out Counties and DFCS as a whole.

The Workforce Development Plan will create an environment where recruitment and retention efforts are meaningful and measurable. As a result of improved recruitment and increased retention, direct service and supervisory employee satisfaction will improve as will morale. With improvement in these areas, client service quality and a positive attitude toward management will increase for the direct service workers. Likewise, employee effectiveness, client satisfaction, and the public's perception of MDHS-DFCS will improve over time.

The intention of the Workforce Development Plan is to address agency gaps throughout Mississippi and in the Carve Out Counties as identified through data analysis (Comprehensive Organizational Health Assessment Regional and Statewide Reports), staff surveys (2011 MDHS/DFCS Worker Retention/Satisfaction Survey Results), focus groups with direct service staff, and interviews with Agency administrative staff; to strategize remedies to increase staff capacity, efficacy and retention among DFCS staff with the long-term goal of improving outcomes in work with children and families.

### *WORKFORCE DEVELOPMENT PLAN OBJECTIVE*

The objective of this Plan is to positively affect recruitment and retention of direct service workers and supervisors, as well as to strengthen DFCS staff capacity in order to consistently meet or exceed its performance standards throughout the State of Mississippi. This Plan additionally provides improvement strategies for the Carve Out Counties due to extenuating circumstances regarding staffing, supervision, and workload management. This Plan is designed to support and accompany the implementation of the *Olivia Y* Modified Settlement Agreement

3

requirements and Mississippi Practice Model ("Practice Model") with the ultimate result of sustained, steady improvements in outcomes for the children and families it serves.

## WORKFORCE DEVELOPMENT PLAN IMPLEMENTATION

### Communicating the Improvement Effort:

During quarterly Settlement Team Meetings, the Director of Workforce Development, who is also the chair of the Staffing & Caseload Sub-team, provides verbal updates regarding the status of the Plan. Bureau Directors and Sub-team chairs attend the Settlement Team Meetings and then communicate updates to staff in their corresponding units. The Director of Field Operations also provides updated information to the DFCS Regional Directors, who communicate the effort to the field staff throughout the state. The Workforce Development Plan will also be posted for review on the DFCS Connection website.

The Action Plan tasks and timeframes will continue to be reviewed at monthly Staffing/Caseload Sub-team meetings with the parties responsible for carrying out the specified tasks. The Director of Workforce Development updates the Settlement Team and State Implementation Team on a quarterly basis regarding Plan progress, impact, and lessons learned through the end of Period 3 and continually thereafter.

The Staffing/Caseload Sub-team will also contribute content to a number of regular Agency reports to key stakeholders, including the following:

- Quarterly updates to the State Implementation Team
- Annual report to the legislature
- Periodic updates to the Citizens Review Panel (these updates will begin during the second half of 2013 to enable the first update to include concrete results of Plan implementation)

The Staffing/Caseload Sub-team also contributes content to the strategic planning process conducted every five years. The Agency held a Five Year Strategic Planning Meeting on February 12, 2013, in Jackson, Mississippi. Attendees of this meeting included DFCS staff, MDHS executive staff, university partners, community stakeholders, judges, and service providers.

### Budget and Resource Implications:

With regard to staffing, positions can be filled and funded via previously allocated Personnel Identification Numbers ("PINs"). DFCS has partnered with nationally renowned family service organizations to develop and implement statewide initiatives to improve services provided to Mississippi children and families. These organizations include:

4

- Casey Family Programs
- Center for Support of Families
- American Public Human Services Association
- Atlantic Coast Child Welfare Implementation Center
- Child Welfare Consultants from Mississippi Universities

In monitoring the Workforce Development Plan, the Caseload/Staffing Sub-team will address needs for additional funding as they arise and communicate those needs to the State Implementation Team. The Workforce Development Sub-Team will provide information received following assessment of salary-related issues to the State Implementation Team for further consideration in their requests to the MS Legislature involving monetary compensation for DFCS employees.

Due to the restrictions imposed by finite resources, it is important that the Workforce Development Plan is implemented in the most cost-efficient way possible, fully utilizing support that has already been obtained to provide remediation to identified agency gaps.

***Monitoring Plan Progress:***

The Action Plan Matrixes, contained herein, will be used to monitor plan progress and lessons learned at monthly Staffing/Caseload Sub-team meetings. The Sub-team will monitor impact of the remedies by tracking data from the following sources, both using point in time and trend data:

Overall impact on children, youth, and families will be tracked by monitoring the outcomes of the Modified Settlement Agreement and Practice Model, as well as the comparison of staffing information on a county and regional basis to identify possible associations.

***Impact on Staffing will be tracked by monitoring:***

- Time to hire
- Positions needed as a function of workload
- Percentage of needed positions filled

Impact on staff development, performance management, and staff retention will be tracked using:

- Staff responses from the web-based DFCS Worker Retention and Satisfaction Survey, which will be conducted annually beginning in 2013.
- Feedback provided by direct service and supervisory staff to Bureau Directors and communicated in monthly Settlement Team meetings.

5

Additional impact on Performance Management will be tracked by analyzing statistics generated by the Performance Development System (PDS). By mid-2014, we anticipate having the capability to track PDS completion rates and ratings distributions by state, region, county, and individual review. A procedure for the tracking of PDS data will be designated in late 2014, and will be a collaborative effort between the DFCS Director of Workforce Development and MDHS Human Resources Personnel.

Impact on staff retention will be tracked by reviewing turnover data and information, e.g.,:

- By county
- By region
- From Voluntary Exit Interview responses

Following the implementation of the provisions in the Plan, quarterly site visits and focus groups will be conducted to evaluate plan progress and efficacy. Additional questions regarding identified gaps will be incorporated into the Agency's annual Employee Satisfaction Survey. The Director of Workforce Development will also continue to record and analyze information obtained from Employee Exit Interviews to determine trends and associations. This information will be reported to the State Implementation Team on a quarterly basis.

### Priority Improvement Areas

The following are key areas of work on which DFCS must focus to efficiently and effectively recruit and retain a quality workforce. MDHS and DFCS senior leaders together with the DFCS State Implementation Team identified the following priority areas of focus for assessing strengths and gaps across the state, with an accelerated and deeper assessment in the Carve Out Counties:

#### WORKFORCE DEVELOPMENT AREAS OF WORK

- Staff Recruitment & Retention
- Sourcing, recruiting, selecting, and retaining qualified staff
- Salary, Non-monetary benefits, Non-monetary recognition
- Leadership & Supervision
- Staff Development
- Helping staff at all levels develop new knowledge and skills
- Performance Management
- Setting performance expectations
- Managing performance day-to-day
- Conducting formal performance reviews
- Workload Analysis

6

- Creating an accurate and valid picture of current staffing needs based on MACWIS reports and Workload Validation results
- Developing procedure to conduct regular Workload Validation at the county level, utilizing weekly ASWS staffings and review of MACWIS report data.

*Methodology*

The Caseload & Staffing Sub-team utilized the following data and information gathering methods in the development of the Workforce Development Plan:

- Statistical data review including exit survey data, turnover data, caseload/workload data, staffing data (e.g. ASWS-worker and RD-ASWS ratios, number of vacancies).
- Input from conversations with representatives of the Center for Support of Families (CSF) on Practice Model Implementation and other agency improvement initiatives.
- Review of the Atlantic Coast Child Welfare Implementation Center's 2010 Comprehensive Organizational Health Assessment.
- Focus groups with direct service staff (caseload carrying), frontline supervisors (ASWSs), and regional support staff in the Carve Out Counties, as well as Regional Directors.
- Review of the 2011 MDHS-DFCS Annual Employee Satisfaction & Retention Survey.
- Interviews with the Carve Out Counties' Youth Court judges to initiate conversations regarding staff preparedness and the courts' impact on staff retention.
- Reports from the Carve Out Management Teams recently placed in Hinds, Harrison, Hancock, and Jackson Counties.

II.    **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES - STATEWIDE WORKFORCE DEVELOPMENT PLAN**

DFCS, as part of the implementation of various improvement initiatives, will take into consideration the tenets and standards mandated by these initiatives when making decisions regarding the recruitment of direct service (FPWs and FPSs) and supervisory staff (ASWSs).

***Olivia Y. Settlement and COA Requirements***

The *Olivia Y* Modified Settlement Agreement (MSA) and Council on Accreditation (COA) mandate the following qualifications and caseload standards with respect to supervisory and direct service staff:

***Area Social Work Supervisor (ASWS)***

- Advanced degree in social work (MSW) or related degree with two years' experience in working with children and families

     *\*The agency recently received approval from the Council on Accreditation to waive the requirement of an advanced degree for ASWSs in the Carve Out Counties.*

- Will not supervise more than five direct service workers
- Will have no direct caseload responsibilities

***Direct Service Staff (FPW, FPS)***

- Degree in social work (BSW) or comparable human service field with two years of experience in working with children and families.
- Caseload will not exceed MSA Caseload Requirements

***Mississippi Law for the Practice of Social Work***

MISSISSIPPI CODE: Title 73, Chapter 53 states that no person may be identified as a social worker unless the person has the necessary social work education and possesses a license to practice social work. There are three levels of licensure: Licensed Social Worker (LSW) - applicants must have a BSW and may not provide therapeutic services; Licensed Master Social Worker (LMSW) - applicants have an MSW and may provide therapeutic services under the supervision of a Licensed Clinical Social Worker (LCSW). Applicants for an LCSW have an MSW, have had two years of clinical supervision, may provide therapy, and may practice independently without supervision.

8

In 2006, due to staffing shortages due to a limited number of qualified applicants, the Legislature gave DFCS the authority to hire direct service employees that do not have social work degrees as well as those with social work degrees who are not currently licensed. These positions were reclassified as Family Protection Worker and Family Protection Specialist positions, as the agency was prohibited from the use of the title "Social Worker" in the absence of the required qualifications. In 2013, this bill was extended to allow for the hiring of non-licensed staff with social work degrees in critical need counties and allowing for the continued employment of those in the Family Protection Specialist and Family Protection Worker job classifications. Given this extension, the Agency has been able to continue to recruit staff with social work related degrees in our most critical need counties. Additionally, COA granted DFCS an exception to current COA Standards to hire Area Social Work Supervisors ("ASWS"s), without advanced degrees in our four Carve Out Counties, which will be the last to go through the COA accreditation process in 2014 and 2015.  By that time, licensed BSWs hired as supervisors during this time period, will be in the process of pursuing or will have obtained their MSW degrees.

### Collaboration with State Universities for Professional Development

DFCS has cultivated relationships with many state and local universities for the purpose of expanding staff development opportunities for DFCS employees. At the present time, DFCS has established good working relationships with the University of Mississippi, Jackson State University, Mississippi State University, the University of Southern Mississippi, Mississippi College, Mississippi Valley State University, and Delta State University for the purpose of recruiting graduates of BSW and MSW programs. At the present time, DFCS has contractual cohorts established with Jackson State University, the University of Mississippi, and the University of Southern Mississippi for staff pursuing an advanced degree in Social Work. These cohorts provide DFCS staff the opportunity to work full time and attend classes on their compressed days to obtain an MSW. This group approach to pursuing a degree provides a sense of community for DFCS enrolled in the cohorts.  A Professional Enhancement Scholarship is also available to staff for those wishing to obtain advanced degrees in social work from a public Mississippi college or university. To date, nearly 110 DFCS employees have taken advantage of the scholarship which covers tuition and other expenses.

Additionally, DFCS has contracted with the University of Mississippi, Jackson State University, and the University of Southern Mississippi to provide licensure preparation workshops on a semi-annual basis to assist non-licensed staff with social work degrees in passing the licensure exam. These workshops not only emphasize core social work concepts and theories, but also provide attendees with information in effective preparation and test taking skills.

9

The aforementioned initiatives greatly contribute to the recruitment and retention of DFCS staff, as well as positively affect our ability to bring staff into compliance with the requirements of the Modified Settlement Agreement and COA standards.

### Staff Recruitment

One of the greatest issues affecting the workforce and overall success of DFCS is the ability to effectively recruit and hire qualified staff. Within the past year, numerous activities have taken place to improve and increase staff recruitment. Representatives from the MDHS Human Resources Division and DFCS Director of Workforce Development have actively recruited for available positions within DFCS at numerous career fairs, employment expos, and professional conferences throughout the state. This includes Agency participation in the Governor's Job Fair Network, a unique employment resource consisting of regionally-based career fairs for Mississippi residents and employers. The Agency also currently advertises positions on various employment websites to attract potential candidates who may not otherwise check the State Personnel Board's website for job listings. These sites include indeed.com, simplyhired.com, and craigslist.com, and listings on these sites are managed by the DFCS Workforce Development and Personnel Units. Funding for these recruitment efforts are provided by contractual dollars, as well as grants, based on the classification of the position for which we are recruiting. These statewide recruitment efforts will continue on an as-needed basis, based on staffing data and information, in order to assist county offices in attaining full staff capacity.

DHS
327487

**RECRUITMENT EVENTS ATTENDED BY DFCS & HUMAN RESOURCES STAFF**
**MARCH 2012 – PRESENT**

| Date | Event | Location |
|---|---|---|
| 03/21/2012 | Mississippi Employment Expo | Jackson, MS |
| 03/22/2012 – 03/23/2012 | NASW Mississippi Annual Conference | Natchez, MS |
| 03/26/2012 | Delta State University School of Social Work Career Fair | Cleveland, MS |
| 04/10/2012 | Spring Southern Region Military & Civilian Job Fair | Biloxi, MS |
| 05/30/2012 | Rankin County Area Job Fair | Pearl, MS |
| 09/25/2012 | Mississippi State University Career Fair | Starkville, MS |
| 09/26/2012 | Jobs For Jacksonians Job Fair | Jackson, MS |
| 10/04/2012 | Jackson State University Career Fair | Jackson, MS |
| 10/09/2012 | Desoto County Area Job Fair | Southaven, MS |
| 11/07/2012 | Pine Belt Job Fair | Hattiesburg, MS |
| 11/16/2012 | University of Southern Mississippi Fall Social Work Colloquium | Hattiesburg, MS |
| 11/27/2012 | Recruitment Presentation to *Social Work Practice with Children & Families* Class, USM Gulf Campus | Long Beach, MS |
| 01/23/2013 – 01/24/2013 | Annual Gulf Coast Social Work Conference | Biloxi, MS |
| 02/13/2013 – 02/15/2013 | Mississippi Child Welfare Institute Conference | Jackson, MS |
| 02/19/2013 | Mississippi College Career Day | Clinton, MS |
| 03/20/2013 | Mississippi Employment Expo | Jackson, MS |
| 03/21/2013 – 03/22/2013 | NASW Mississippi Annual Conference | Natchez, MS |

11

DFCS has also launched a collaborative effort with *Parents& Kids* magazine that includes the featuring of recruitment advertisements in their issues as part of a collaborative effort with the DFCS Prevention Unit. Issues of *Parents & Kids* are circulated in various areas throughout the state including Northeast MS, Central MS, and in the Pine Belt Region. The Director of Workforce Development will work to feature similar advertisements in newspapers and other local publications.

University partnerships provide an excellent opportunity to recruit potential graduates who have an interest in working in child welfare. The Caseload & Staffing Sub-team plans to initiate a process of ensuring that advertisements for available positions are provided to the career services departments at higher learning institutions in Mississippi and surrounding states on a monthly basis, according to identified staffing needs. Additionally, Agency representatives are frequently identifying and attending conferences and career fairs at Mississippi colleges and universities, and have begun speaking to classes and groups about career opportunities with DFCS. This effort is presently focused in the Carve Out Counties' areas due to critical staffing needs, but will expand to include all Mississippi institutions of higher learning with social work and related degree programs. Throughout the state, interns from Mississippi colleges and universities seek to experience working in the field of child welfare and enter into field placements in the various county offices. Many interns go on to seek employment with the Agency following graduation. The Director of Workforce Development will work with Regional Directors to communicate needs regarding field placements for students from institutions of higher-education in Mississippi and surrounding states.

Assessment of focus group responses and Voluntary Exit Interview data indicates that present salaries are a significant barrier to the recruitment and retention of qualified staff. This presents the question as to whether or not DFCS salaries are competitive with those offered by competing human service agencies. The Caseload & Staffing Sub-team will regularly review the salaries offered by comparable agencies and present these findings to the State Implementation Team for use in negotiations regarding monetary compensation of staff by late 2013. MDHS offers a competitive array of benefits and opportunities for professional advancement, educational assistance, and compressed scheduling which differentiates us from other State agencies that may compete with DFCS for qualified staff.

Time to hire has also been noted as an additional a barrier to successful recruitment according to the statements of the Regional Directors. Often, potential candidates for DFCS positions find employment with other agencies before they receive a response regarding their application from MDHS. The hiring process can sometimes take 30-90 days. The Agency has identified strategies for streamlining the hiring process, for the purpose of expediting personnel transactions. These strategies include reorganization of the DFCS Personnel Unit,

12

communication with Regional Directors regarding expediting of personnel transactions, and identification of pending applications resulting from perpetual MS State Personnel Board advertisements.

| Division of Family and Children's Services | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries and Fringes | | | | | | | | | | | |
| From GMOS dated 10/31/2012 | | | | | | | | | | | |
| HISTORICAL: | | | | | | | | | | | |
| | | | | | State Fiscal Year Ended | | | | | | |
| | | 2008 | | 2009 | | 2010 | | 2011 | | 2012 | |
| Salaries and Fringes | | | | | | | | | | | |
| Total | $ | 30,098,598 | $ | 35,260,101 | $ | 41,567,403 | $ | 43,570,034 | $ | 46,633,663 | |
| | | | | | | | | | | | |
| General Funds | $ | 5,458,770 | 18% | $ | 15,299,033 | 43% | $ | 18,648,505 | 45% | $ | 21,145,855 | 49% | $ | 27,936,056 | 60% |
| Federal Funds | $ | 24,583,596 | 82% | $ | 19,906,190 | 56% | $ | 22,860,696 | 55% | $ | 22,366,106 | 51% | $ | 18,648,243 | 40% |
| Other | $ | 56,231 | 0% | $ | 54,877 | 0% | $ | 58,202 | 0% | $ | 58,072 | 0% | $ | 51,954 | 0% |
| | $ | 30,098,597 | 100% | $ | 35,260,100 | 100% | $ | 41,567,403 | 100% | $ | 43,570,034 | 100% | $ | 46,636,253 | 100% |
| | | | | | | | | | | | |
| Average number of filled PINS | | | | | | 997 | | 1,034 | | 1,118 | |
| | | | | | | | | | | | |
| Historical Average Salaries and Fringes/PIN | | | | | $ | 41,692 | $ | 42,137 | $ | 41,714 | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| FINANCIAL PROJECTION | | | | | | | | | | | |
| | | | | | | Funding | Amount | | | | |
| Budgeted Salaries and Fringes for 1,118 PINS (Same as spent for SFY 2012): | | | | | | General | $ | 27,936,056 | | | |
| | | | | | | Federal | $ | 18,648,243 | | | |
| | | | | | | Other | $ | 51,954 | $ | 46,636,253 | |
| | | | | | | | | | | | |
| Additional funds requested in SFY 2014 Budget Request to Legislature for realignment | | | | | | | | | | | |
| of all social workers: | | | | | | General | $ | 4,700,000 | | | |
| | | | | | | Federal | $ | 3,300,000 | | | |
| | | | | | | Other | $ | - | $ | 8,000,000 | |
| | | | | | | | | | | | |
| Additional funds requested in SFY 2014 Budget Request to Legislature for 200 new PINS: | | | | | | | | | | | |
| | | | | | | General | $ | 6,000,000 | | | |
| | | | | | | Federal | $ | 4,352,000 | | | |
| | | | | | | Other | $ | - | $ | 10,352,000 | |
| Total Annual Funding Projected for 1,318 PINS (i.e. 1,118 plus 200) | | | | | | | | | $ | 64,988,253 | |
| | | | | | | | | | | | |
| | | | | | | General | $ | 38,636,056 | | | |
| | | | | | | Federal | $ | 26,300,243 | | | |
| | | | | | | Other | $ | 51,954 | $ | 64,988,253 | |
| | | | | | | | | | | | |
| Total Annual Funding Projected per PIN (i.e. $64,988,253/1,318) = | | | | | | | | | $ | 49,308 | |

3/27/2013C:\Program Files (x86)\PDFConverter\temp\NVDC\DB0E3D12-C38C-4033-9EBD-C0CA25D10B82\24f1a8e0-e119-4d34-8af7-0e7922152b20Copy of XI0000012

*MDHS DFCS Historical Salary Report and Financial Projection

DHS
327490

### STAFF RECRUITMENT ACTION PLAN

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Focused efforts to recruit qualified staff throughout Mississippi | ▪ Participate in job fairs and employment events throughout the state, targeting efforts toward regions with highest staffing needs. | ███████, MDHS Human Resources Staff | Ongoing | In Progress |
| | ▪ Advertise available positions on employment websites and in printed publications. | ████████, ███████ | Ongoing | In Progress |
| | ▪ Review salaries of competing human service agencies and present findings to State Implementation Team. | ████████, ███████ | 08/15/2013 | In Progress |
| | ▪ Communicate needs regarding field placements for students from Institutions of higher-education in Mississippi and surrounding states to Regional Directors. | █████████ | Ongoing, As Needed | In Progress |
| Make upgrades to the hiring process to improve timeliness and efficiency in the recruitment of staff. | ▪ Reorganization of the DFCS Personnel Unit with new leadership. | ██████████, ██████ | 07/2012 | Completed |
| | ▪ Two new staff members will be hired/transferred into the DFCS Personnel Unit. | ████████ | 07/2012 | Completed |
| | ▪ The Deputy Director of MDHS will meet with the DFCS Personnel Unit supervisor to determine availability of PINS for requested personnel transactions. | ████████, ██████████ | Ongoing, Bi-weekly | In Progress |
| | ▪ Communicate with RDs regarding reasons for delays in personnel transactions, and tips for expediting personnel transactions. | █████████ | 09/2012 | Completed |

14

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
|  | • Communicate with MS State Personnel Board regarding applications resulting from perpetual advertisements. |  | Ongoing | Ongoing, will request periodically as needed |

DHS
327492

## STAFF RETENTION & DEVELOPMENT

### Staff Retention

Research clearly shows that child welfare caseworker turnover negatively impacts permanency outcomes for children. A clear correlation exists between the number or workers a child has and the length of time that the child stays in custody (Flower, McDonald, & Sumski, 2005). It is essential that the Agency begin to implement strategies to reduce turnover on the front lines. According to the DFCS 2011 Annual Retention & Worker Satisfaction Survey, the majority of staff (70.9%) report overall satisfaction with their jobs, and feeling a sense of pride in the work they do (90.1%).   However, less than half (43%) reported feeling that their workload is manageable and allows them to do quality work with families.   DFCS will implement the following strategies to reduce staff turnover, based on factors identified as contributing to lack of retention; utilization of Realistic Job Profiles, strengthening ASWSs' development and support, improvement of physical working conditions, development of strategies for youth court improvement, comparative salary analysis, and communicating to staff regarding opportunities for Continued Education. Specific remedies and anticipated completion dates can be found in the Staff Retention & Development Action Plan to follow.

It is essential that prospective workers have a clear and realistic understanding of the nature of child welfare work. New hires with unrealistic expectations of the challenges, demands, and rewards of working in the field of child welfare are more likely to leave the Agency in a short period of time. DFCS will utilize Realistic Job Preview (RJP) resources provided by the National Child Welfare Workforce Institute to create an accurate and clear portrayal of child welfare work during the pre-application, interview, and training process for potential and new hires.  A multitude of RJP materials have been developed by other states and are provided by the National Child Welfare Workforce Institute via the U.S. Department of Health & Human Services (www.ncwwi.org/rjp), and the Administration for Children & Families Website, the Child Welfare Information Gateway (www.childwelfare.gov). Examples of materials include RJP videos, case vignettes, and other resources to assist in the recruitment child welfare staff. The agency will first utilize materials developed by other states, while working to develop RJP materials that are specific to child welfare practice in Mississippi.

Supportive and competent supervision is essential to the retention of direct service staff. A respondent of a focus group with Regional Directors stated that ASWSs and direct service staff are having trouble managing the sheer volume of caseloads (high in some areas) in combination with the required tasks of COA, Modified Settlement Agreement, and Practice Model. While success with regard to all of the aforementioned is crucial to the progression and improvement of DFCS, we must provide supervision at all levels by those equipped to manage the implementation of new policies and practice. In addition, during 2013, MDHS has contracted

16

with CSF to develop and deliver a Level II Clinical Supervisory Training which can reasonably be expected to boost supervisory capacity and support the retention of front-line staff. In addition to the training, the coaching of supervisors, which is provided by CSF practice coaches, will focus on implementation of the training content, including weekly supervisor-worker staffings.

According to the 2011 DFCS Retention & Worker Satisfaction Survey, slightly over half of respondents reported that their physical office environment is pleasant and conductive to a productive work day. However, responses from focus groups with Regional Directors and Carve Out Counties' staff, characterize some particular offices as over-crowded, uncomfortable, dreary, and even physically unhealthy. While the responsibility of maintaining county office space is, in most areas, not something that DFCS has the authority to govern, the Agency will examine ways to collaborate with county officials on improvements to offices that are unappealing to potential and current staff. Regional Directors will address issues regarding physical working space with county/regional officials to make improvements as they are identified. In the case that efforts to engage such officials proves to be ineffective, the Regional Director will report to the Director of Field Operations who will communicate the issue to the State Implementation Team for further action.

Interactions with the Youth Courts in some counties have been reported as problematic to the Agency's ability to retain staff on the front lines. In the court setting, it is important that Agency staff present themselves assertively, and are confident in the newly implemented improvements that DFCS is undergoing. In areas where problems with judicial engagement are identified, DFCS will enact strategies to remediate such issues as identified in the Youth Court Strategies Plan. This plan will be completed and implemented in the Carve Out Counties by July 5, 2013. Further, the DFCS Training Coordinators and Administration Units are assisting to provide necessary Court Improvement Training for staff throughout the state to increase their performance and success in interactions with the Youth Courts.

Respondents of focus groups and the 2011 Retention & Worker Satisfaction Survey reflect that the rate of pay for staff, especially direct service staff, is not commensurate with the amount work that is required of them. In the 2014 budget request to the Legislature, MDHS requested funding of the Realignment Package, which would result in salary increases for DFCS staff. For State Fiscal Year 2013 the Agency received $129,821,140, and for SFY 2014 $144,771, 847. This is an increase of $14,950,707. A copy of the 2014 Appropriations Bill (HB1668) is available upon request. It is necessary for DFCS to be competitive among other human service agencies with regard to salaries and benefits in order to prevent staff turnover, as well as attract potential candidates for employment. While MDHS does not determine rates of pay or have the ability to approve increases in monetary compensation on a departmental level, the Caseload & Staffing Sub-team will conduct a comparative assessment of local and non-local salaries of similar jobs

17

and present its findings to the Settlement Team. The State Implementation Team will utilize this information in a continuous effort to negotiate monetary compensation for agency staff.

As an additional strategy in reducing avoidable staff turnover, the Caseload & Staffing Sub-team, with input from other key agency staff, will assess ways to develop a protocol for remediation between supervisor and employee when there is an indication that the worker is planning to discontinue his/her employment with the Agency. This remediation will only be possible in an environment in which supervision is supportive and communication is effective, allowing both the worker and supervisor to openly discuss the employee's concerns and determine what can be done to encourage the worker to remain with the Agency. The MS Practice Model provides an excellent framework for such communication to take place in weekly supervision meetings.

18

### DFCS SALARY PROGRESSION 2003-PRESENT

| Classification | Current Starting Salary Since 7/1/2007 | *Effective 7/1/2006 | Annual Salary Beginning 7/1/2003 | Former Job Classification (if applicable) |
|---|---|---|---|---|
| DHS-Area Social Work Supervisor (ASWS) | $37,511.76 | No Change | $32,246.81 | N/A |
| DHS-Family Protection Specialist (FPS) | $27,615.55 | $27,015.55 | $25,285.68 | DHS-Social Worker |
| DHS-Family Protection Specialist, Senior (FPS, Sr.) | $30,049.94 | $29,449.94 | $26,689.32 | DHS-Social Worker Senior |
| DHS-Family Protection Specialist Advanced (FPS, Adv.) | $32,700.43 | $32,100.43 | $29,459.88 | DHS-Social Worker Advanced |
| DHS-Family Protection Worker I (FPW I) | $23,643.58 | $23,043.58 | Non-Existent | Non-Existent |
| DHS-Family Protection Worker II (FPW II) | $27,615.55 | $27,015.55 | Non-Existent | Non-Existent |
| DHS-Social Services Regional Director (SSRD) | $40,890.84 | No Change | $37,600.87 | N/A |

* Family Protection Series were established and made effective July 1, 2006 (FY 2007).

** Recruitment Flex (15%) was approved for Hancock, Harrison, Hinds, and Jackson Counties, effective October 1, 2011, for all listed positions **except SSRDs**. (Actual percentage not included in above salaries).

*** Type Duty Location Pay (20%) was approved for Hancock, Harrison, and Jackson Counties for all listed positions. (Actual percentage not included in above salaries).

19

| Vacancy Turnover Rate Report | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Family and Children's Services | | | | Family and Children's Services(State Office) | | | | Family and Children's Services-Adoption(State Office) | | | |
| Date | Total | Filled | Vacant | % Vacant | Total | Filled | Vacant | % Vacant | Total | Filled | Vacant | % Vacant |
| 2/22/2013 | 1517 | 1288 | 229 | 15% | 167 | 150 | 17 | 10% | 14 | 10 | 4 | 29% |
| 1/25/2013 | 1517 | 1271 | 246 | 16% | 167 | 146 | 21 | 13% | 14 | 10 | 4 | 29% |
| 12/20/2012 | 1517 | 1261 | 256 | 17% | 167 | 144 | 23 | 14% | 14 | 10 | 4 | 29% |
| 11/27/2012 | 1517 | 1261 | 256 | 17% | 168 | 145 | 23 | 14% | 14 | 11 | 3 | 21% |
| 10/26/2012 | 1517 | 1238 | 279 | 18% | 168 | 141 | 27 | 16% | 14 | 12 | 2 | 14% |
| 9/24/2012 | 1517 | 1211 | 306 | 20% | 168 | 142 | 26 | 15% | 14 | 13 | 1 | 7% |
| 8/27/2012 | 1517 | 1197 | 320 | 21% | 169 | 144 | 25 | 15% | 13 | 12 | 1 | 8% |
| 7/27/2012 | 1517 | 1186 | 331 | 22% | 169 | 141 | 28 | 17% | 13 | 11 | 2 | 15% |
| | | | | | | | | | | | | |
| 6/25/2012 | 1446 | 1194 | 252 | 17% | 170 | 140 | 30 | 18% | 13 | 11 | 2 | 15% |
| 5/24/2012 | 1446 | 1129 | 317 | 22% | 170 | 129 | 41 | 24% | 13 | 11 | 2 | 15% |
| 4/23/2012 | 1446 | 1136 | 310 | 21% | 171 | 131 | 40 | 23% | 13 | 11 | 2 | 15% |
| 3/26/2012 | 1446 | 1132 | 314 | 22% | 175 | 129 | 46 | 26% | 13 | 11 | 2 | 15% |
| 2/23/2012 | 1446 | 1139 | 307 | 21% | 175 | 126 | 49 | 28% | 13 | 13 | 0 | 0% |
| 1/25/2012 | 1446 | 1109 | 337 | 23% | 175 | 124 | 51 | 29% | 13 | 13 | 0 | 0% |
| 12/29/2011 | 1446 | 1099 | 347 | 24% | 173 | 123 | 50 | 29% | 13 | 13 | 0 | 0% |
| 10/25/2011 | 1446 | 1100 | 346 | 24% | 167 | 124 | 43 | 26% | 13 | 13 | 0 | 0% |
| 9/26/2011 | 1447 | 1088 | 359 | 25% | 165 | 125 | 40 | 24% | 13 | 13 | 0 | 0% |
| 8/25/2011 | 1447 | 1086 | 361 | 25% | 160 | 127 | 33 | 21% | 13 | 13 | 0 | 0% |
| 7/25/2011 | 1447 | 1082 | 365 | 25% | 151 | 127 | 24 | 16% | 13 | 13 | 0 | 0% |
| Average SFY 2012 | | 1117.636 | | | | | | | | | | |
| | | | | | | | | | | | | |
| 5/24/2011 | 1193 | 1060 | 133 | 11% | 152 | 129 | 23 | 15% | 13 | 13 | 0 | 0% |
| 4/22/2011 | 1193 | 1068 | 125 | 10% | 152 | 131 | 21 | 14% | 13 | 12 | 1 | 8% |
| 3/25/2011 | 1193 | 1066 | 127 | 11% | 151 | 129 | 22 | 15% | 13 | 12 | 1 | 8% |
| 1/25/2011 | 1193 | 1057 | 136 | 11% | 151 | 128 | 23 | 15% | 13 | 12 | 1 | 8% |
| 12/22/2010 | 1189 | 1043 | 146 | 12% | 146 | 126 | 20 | 14% | 13 | 12 | 1 | 8% |
| 11/22/2010 | 1189 | 1033 | 156 | 13% | 146 | 125 | 21 | 14% | 13 | 12 | 1 | 8% |
| 10/25/2010 | 1189 | 1017 | 172 | 14% | 146 | 121 | 25 | 17% | 13 | 12 | 1 | 8% |
| 9/24/2010 | 1189 | 1003 | 186 | 16% | 145 | 115 | 30 | 21% | 13 | 12 | 1 | 8% |
| 8/26/2010 | 1189 | 995 | 194 | 16% | 144 | 115 | 29 | 20% | 13 | 11 | 2 | 15% |
| 7/27/2010 | 1189 | 999 | 190 | 16% | 144 | 112 | 32 | 22% | 13 | 11 | 2 | 15% |
| Average SFY 2011 | | 1034.1 | | | | | | | | | | |
| | | | | | | | | | | | | |
| 6/25/2010 | 1204 | 1010 | 194 | 16% | 143 | 117 | 26 | 18% | 13 | 11 | 2 | 15% |
| 5/24/2010 | 1204 | 1011 | 193 | 16% | 143 | 118 | 25 | 17% | 13 | 13 | 0 | 0% |
| 4/23/2010 | 1204 | 1015 | 189 | 16% | 143 | 121 | 22 | 15% | 13 | 13 | 0 | 0% |
| 3/25/2010 | 1204 | 1019 | 185 | 15% | 143 | 122 | 21 | 15% | 13 | 13 | 0 | 0% |
| 2/24/2010 | 1204 | 1021 | 183 | 15% | 143 | 122 | 21 | 15% | 13 | 13 | 0 | 0% |
| 1/26/2010 | 1204 | 1019 | 185 | 15% | 143 | 119 | 24 | 17% | 13 | 13 | 0 | 0% |
| 12/22/2009 | 1204 | 1008 | 196 | 16% | 143 | 117 | 26 | 18% | 13 | 13 | 0 | 0% |
| 11/20/2009 | 1204 | 991 | 213 | 18% | 138 | 114 | 24 | 17% | 13 | 13 | 0 | 0% |
| 10/26/2009 | 1204 | 978 | 226 | 19% | 135 | 113 | 22 | 16% | 13 | 13 | 0 | 0% |
| 9/24/2009 | 1204 | 973 | 231 | 19% | 136 | 114 | 22 | 16% | 13 | 13 | 0 | 0% |
| 8/28/2009 | 1204 | 957 | 247 | 21% | 137 | 113 | 24 | 18% | 13 | 13 | 0 | 0% |
| 8/25/2009 | 1204 | 957 | 247 | 21% | 137 | 113 | 24 | 18% | 13 | 13 | 0 | 0% |
| Average SFY 2010 | | 996.5833 | | | | | | | | | | |

*       M D H S   D i v i s i o n   o f   F a m i l y   &   C h i l d r e n ' s   S e r v i c e s   V a c a n c y   T u r n o v e r   R a t e s
        S F Y 2 0 1 0 - P r e s e n t

### *Staff Development*

The provision of effective initial and ongoing staff development to DFCS staff will positively impact the Agency's ability to retain quality workers. Given the nature of the work that exists in child welfare, it is important that new staff is well prepared for the challenges they will face with regard to client interactions, general practice, and Youth Court procedures. DFCS is partnering with Mississippi colleges and universities, as well as national child welfare organizations to provide quality training and enrichment opportunities for DFCS staff.

20

DHS
327497

DFCS, in collaboration with the University of Mississippi, has developed and begun to implement an improved training and enrichment curriculum for DFCS staff. Current trainings offered by the Professional Development Unit for new direct service and supervisory staff include Pre-Service Clinical Supervisory Training, as well as Level I & II Clinical Supervisory Training (specific to ASWSs). Additionally, a "reunion session" is held one year from the time an employee began pre-service training and is provided to both direct service and supervisory staff. Feedback from focus groups with Regional Directors indicate that there is an obvious improvement with regard to the preparedness and level of understanding of agency procedure and practice among those who have completed Pre-Service training following implementation of the new curriculum.  In addition to pre-service training for new social worker hires, as a region begins implementation of the practice model, CSF and DHS coaches provide training to all social workers and supervisors, not only new hires, on each of the six components of the practice model in order to ensure that all staff have a foundation for moving forward with practice model implementation.

*Supervisory Training Overview*

**Pre-Service Clinical Supervisory Training** – This is an intensive 40 hour training that all newly hired DFCS staff, as well as promoted, acting or proxied supervisors must attend prior to obtaining a case load.

**Level I Clinical Supervisory Training** – This training is designated for newly hired or promoted supervisors.  After the completion of Pre-Service Clinical Supervisory Training, a mentor will be assigned only to permanent ASWSs (not in an acting role).  The mentor will meet with the supervisor weekly to complete the Level I Curriculum.  In the event an acting supervisor who has already attended Pre-Service Clinical Supervisory Training moves into a permanent role, the Regional Director will request the assignment of a mentor from the Professional Development Unit and Level I Clinical Supervisory Training will begin at that time.  A mentor request form has been sent to all of the Regional Directors.

**Level II Clinical Supervisory Training** – Only staff who have completed Level I will be eligible for Level II.  This training is offered six months to 1 year after the completion of Level 1 Clinical Supervisory Training.  This training consists of three modules and is currently being trained by CSF staff.

Respondents of focus groups and interviews with direct service staff, ASWSs, and Regional Directors indicate that in some areas, particularly those with exceedingly high caseloads, staff is often unable to attend trainings and workshops to obtain Continued Education Credits (CEUs) for licensure renewal. The DFCS Connections website is an optimal resource for advertising such opportunities. The Director of Workforce Development will ensure that current listings

21

and dates for upcoming trainings, conferences, etc. (both within and outside of the Agency) are featured on the website for use by Agency employees seeking such events for professional enrichment.

**STAFF RETENTION & DEVELOPMENT ACTION PLAN**

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Create an accurate portrayal of child welfare work for potential applicants utilizing resources from the National Child Welfare Workforce Institute and DFCS Professional Development Unit. | ▪ Temporarily use Realistic Job Profile (RJP) videos developed by other states during recruitment events.<br><br>▪ Collaborate with the DFCS Professional Development Unit and University of Mississippi partners to develop an RJP video that is specific to child welfare practice in Mississippi. | ███████████<br><br>███████████<br>███████████<br>███████████ | 07/15/2013<br><br><br><br>07/01/2014 | Not Started<br><br><br><br>In Progress |
| Strengthen ASWS Development and Support | ▪ Development of Clinical Supervisory Training<br><br>▪ Newly hired or promoted ASWSs will receive Clinical Supervisory Training<br><br>▪ Utilize Level I Clinical Supervisory Training Mentoring Component | ███████████ University of Mississippi Consultants, █████<br><br>█████, Regional Directors<br><br>███████████ UM Mentors | 12/31/2011<br><br><br>Ongoing<br><br><br>Ongoing | Completed<br><br><br><br><br>In Progress |
| Collaborate with county administrators and officials to improve the physical office space in counties that have reported an unsatisfactory working environment. | ▪ Regional Directors will meet with county and regional officials as issues arise<br><br>▪ Difficulty in achieving desired results on a county level will be reported to the Statewide Implementation Team for further action. | DFCS Regional Directors<br><br><br>DFCS Regional Directors, █████<br>█████, | Ongoing<br><br><br><br>As deemed necessary | In Progress (in some areas)<br><br><br>In Progress (in some regions) |

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Development and Implementation of Strategies for Youth Court Improvement | ▪ Creation of a DFCS Youth Court Strategies Plan | ████████ Center for the Support of Families (CSF) | 07/05/2013 | In Progress |
| Comparative salary analysis for negotiations regarding monetary compensation for Agency staff | ▪ Conduct an analysis of salaries among agencies in MS with whom we compete to recruit similarly qualified job candidates, present findings to SIT. | ████████ | 07/30/2013 | In Progress |
|  | ▪ The State Implementation Team will utilize the recommendations in requests and negotiations with the State Personnel Board regarding monetary compensation. | State Implementation Team | Ongoing | Not Started |
| Provide notification of staff regarding opportunities for Continued Education | ▪ Utilize the DFCS Connection website to feature semi-annual listings of trainings, workshops and conferences scheduled throughout the state, as well as online resources. | ████████ | 07/15/2013 | In Progress |

### Performance Management

Historically throughout DFCS, performance management and review is a process that has been underutilized and widely viewed as punitive and impractical. The previous Performance Appraisal Review (PAR) system was not consistently implemented throughout the state, and was considered to be ineffective in providing employees with constructive and useful feedback with regard to their performance. MDHS is in the process of making improvements to the process of employee performance appraisal, and is currently beginning implementation of the newly developed Professional Development System (PDS). Trainings for Agency staff on the use of the PDS are presently being offered to all MDHS staff and are provided by the MS State Personnel Board. Full implementation of the PDS throughout the state is scheduled for July 2013. In addition to monitoring employee performance, the PDS also provides staff an

opportunity to develop an Individual Development Plan which can include their anticipated professional goals.

III.    **WORKFORCE DEVELOPMENT PLAN - CARVE OUT COUNTIES**

*Introduction*

The intention of this Plan is to address Agency gaps the Carve Out Counties as identified through data analysis, focus groups with direct service staff, interviews with ASWSs and Regional Directors, as well as weekly reports from the recently placed Carve Out Management Teams. These counties have historically had a difficult time recruiting and retaining quality staff for various reasons that are believed to be county/region specific.

The objective of this individualized plan for the Carve Out Counties is to swiftly and positively increase staff recruitment and retention, as well as support and accompany the implementation of the *Olivia Y* Modified Settlement Agreement requirements and Practice Model with the ultimate result of sustained, steady improvements in outcomes for the children and families in our most critical-need counties.

*Recruitment & Retention Salary Incentive*

In 2011, DFCS received approval to offer a 15% recruitment flex to new and existing staff in the Carve Out Counties to positively affect recruitment and retention of employees.  While the Agency saw considerable progress with regard to staffing due to this increase, the approval of an additional 20% Type-Duty-Location pay increase for staff in the coastal counties was granted in January 2013.  These salary incentives have made DFCS more competitive than ever with similar human service agencies in terms of our ability to recruit and retain staff in the coastal areas.  Current annual salaries, with these incentives, for Regional Directs, ASWSs, FPSs and FPWs in the Carve Out Counties are as follows:

3.1.    *Hinds County*

- Regional Director:                                                      $40,890.84
- Area Social Work Supervisor (ASWS):                                     $43,138.52
- Family Protection Specialist, Advanced (FPS, Adv.):                     $37,605.49
- Family Protection Specialist, Senior (FPS, Sr.):                        $34,557.43
- Family Protection Specialist (FPS):                                     $31,757.88
- Family Protection Worker II (FPWII):                                    $31,757.88
- Family Protection Worker I (FPWI):                                      $27,190.12

24

### 3.2.   *Jackson, Harrison, & Hancock Counties*

- Regional Director:                                              $49,069.01
- Area Social Work Supervisor (ASWS):                             $50,640.88
- Family Protection Specialist, Advanced (FPS, Adv.):            $44,145.58
- Family Protection Specialist, Senior (FPS, Sr.):              $40,567.42
- Family Protection Specialist (FPS):                            $37,280.99
- Family Protection Worker II (FPSII):                           $37,280.99
- Family Protection Worker I (FPWI):                             $31,918.83

### *Deployment of Carve Out Management Teams*

In November 2012, DFCS, with the assistance of the CSF, developed a strategy for addressing the needs of the Carve Out Counties. This strategy included the deployment of designated Carve Out Management Teams to temporarily work from the Carve Out Counties to assess for county-specific needs within each county, and to develop effective solutions to the identified areas needing improvement. Examples of activities include assisting with personnel transactions, workload validation, and facilitating communication among county staff.  The Carve Out Management Teams provide weekly reports to the State Implementation Team for the purpose of monitoring individual county progress.

### *Carve Out County Staffing Progress - January 2012 - Present*

|          | Jan 2012 | Feb 2012 | Mar 2012 | Apr 2012 | May 2012 | Jun 2012 | Jul 2012 | Aug 2012 | Sep 2012 | Oct 2012 | Nov 2012 | Dec 2012 | Jan 2013 | Feb 2013 | Mar 2013 |
|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|
| Hinds    | 38 | 38 | 36 | 35 | 35 | 36 | 42 | 43 | 45 | 48 | 49 | 54 | 61 | 59 | 67 |
| Harrison | 29 | 32 | 36 | 41 | 41 | 38 | 43 | 43 | 44 | 40 | 44 | 44 | 46 | 52 | 51 |
| Jackson  | 28 | 30 | 30 | 29 | 29 | 29 | 36 | 35 | 37 | 36 | 47 | 41 | 42 | 44 | 43 |
| Hancock  | 13 | 16 | 13 | 15 | 15 | 14 | 18 | 17 | 14 | 12 | 14 | 13 | 13 | 15 | 15 |

DHS
327502

FPW/FPS Employment by Month for Carve-out Counties

DHS
327503

## IV.     HINDS COUNTY

### *Staffing*

Assessment of the needs of Hinds County reflects that the biggest issue affecting overall success is the recruitment and retention of qualified staff. Only with the hire of additional staff will caseloads, on-call schedules, and documentation be manageable and provide staff with the ability to provide quality services to children and families. A lack of supportive supervision at all levels in has also been reported to be the cause of "massive turnover" in Hinds County. Increased caseloads for the employees that remain further intensifies the problem, and morale significantly suffers as a result. This facilitates a chaotic work environment and further contributes to staff turnover.

The Modified Settlement Agreement mandates that Hinds County should have no fewer than 50 caseworkers by July 2013. The most recent review of staffing progress in March 2013 indicated that 27 caseworkers and 2 ASWSs have been hired since deployment of the Carve Out Management Team to Hinds County. This results in a total of 67 caseworkers currently employed in Hinds County. A glitch preventing applications in response to a "perpetual" advertisement on the State Personnel Board website from being received and appropriately processed was identified as a barrier to recruitment. Identification of this issue resulted in the discovery of numerous pending applications for these available positions. The error has been resolved and proper transmission of those applications has been established.

The Carve Out Management Team also identified many problematic issues with staff interviewing procedures in Hinds County. Panel Interviews were not being properly utilized according to Agency policy, and ASWSs were having little-to-no input on the hiring of front line staff. Furthermore, it was discovered that applicants were being asked to complete a "testing" of sorts, which is at the present time not permitted, according to MDHS policy. The Hinds County Carve Out Management Team has instructed staff on proper interviewing protocol, and currently assists supervisory staff in completing personnel procedures such as screening applicants, scheduling interviews, and completing new hire transactions to instill a culture in which ASWSs feel involved in the hiring of the staff that they supervise.

Office space for new hires is reported to be an issue in Hinds County. The Regional Director of III-S, ███████████, has been in discussion with the MDHS Field Services Regional Director about how to accommodate and influx of anticipated new hires. Nearly the entire 2nd floor of the Hinds County Department of Human Services building is occupied by DFCS employees, when previously DFCS staff shared the floor with other MDHS units. The Professional Development Unit has effectively made necessary accommodations to include an additional Pre-Service Training in order to expedite the training of the new hires.

27

### Court Improvement Training

In focus groups with Hinds County staff, interactions with the Youth Court were described as problematic and a definite factor in the lack of ability to retain staff.  Respondents of focus groups with direct service staff and ASWSs indicate that they are often required to spend full days in court, which prevents them from completing other essential job duties. Furthermore, current court behaviors and unprofessional interactions with the judge have resulted in workers being fined and receiving disciplinary correction. An Advanced Court Improvement Training was provided for Hinds County staff by DFCS Training Coordinators and ▮▮▮▮▮▮▮▮ in January 2013. ▮▮▮▮▮▮▮▮ of the Hinds County Youth Court agreed to participate in the training, offering his courtroom as a setting and serving as a "mock judge" for role playing with the staff. Information obtained in this training will be reinforced by the ASWS on a consistent basis to maintain satisfactory court performance.

### Communication and Team Building

Assessment of interactions among Hinds County staff and responses received in focus groups and interviews reflect a significant lack of trust and communication at all levels. A lack of "face time" between supervisor and worker was reported, resulting in directives being given via MACWIS narratives. The Practice Model mandates weekly meetings between supervisor and worker, which will help to provide an avenue for communication. Through their efforts in Hinds County, the Carve Out Management Team is working to establish effective communication and team building among Hinds County staff at all levels. Examples of these efforts include and, staff attendance at Regional Implementation Team meetings and CQI reviews, and formal, regularly scheduled staff meetings for staff at all levels. These efforts will help to build trust among the staff, and reinforce the mission that we must all work together effectively to provide optimal services to the families and children with whom we work.

### Safety Issues

Respondents of the focus groups with front line staff and ASWSs stated that safety issues sometimes play a role in the retention of staff, as well as the recruitment of staff. Law enforcement was reported as being unsupportive of the Agency and unwilling to accompany workers, even when safety issues are present. In planning quarterly Regional Implementation Team meetings for Region 3-S, it is important that the Regional Director invite and include law enforcement from the Jackson Police Department and Hinds County Sheriff's Department. The Regional Director should also promptly consult with law enforcement officials in the event of issues affecting the safety of DFCS staff. Collaboration with these agencies and communication of the need for their protection and assistance due the nature of the work will help to improve partnerships between Agency staff and Hinds County Law Enforcement.

DHS
327505

**HINDS COUNTY ACTION PLAN**

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment efforts in order to hire identified number of needed front line staff and ASWSs. | ▪ Screen pending applications discovered from perpetual advertisement and schedule interviews for qualified applicants. | ▆▆▆▆ ASWSs, ▆▆▆▆, ▆▆▆▆ | January 2013 | Completed, will continue to monitor for incoming applications |
| | ▪ Make recommendations for new hires; submit to DFCS Personnel Unit, complete hiring process for recommended applicants. | ▆▆▆▆ ASWSs, ▆▆▆▆ | February 2013 | Completed, ongoing |
| | ▪ Actively recruit via employment websites, MS and surrounding university listservs and local employment events for qualified ASWS candidates. | ▆▆▆▆ MDHS HR Staff, ▆▆▆▆ | July 30, 2013 | In Progress |
| Provide expedited Pre-Service Training of new hires | ▪ Arrange for additional Pre-Service Trainings to be provided to accommodate the influx of newly hired staff. | ▆▆▆▆ | February 2013 | Completed |
| Conduct training on PDS procedures and usage for ASWSs | ▪ Attendance of Regional Director and Hinds ASWSs in PDS Training | ▆▆▆▆, ASWSs, MS State Personnel Board | December 2013 | Not Started |
| Improve interactions with Hinds County Youth Court | ▪ Conduct Court Improvement Training for Hinds County direct service staff and ASWSs | ▆▆▆▆ Hinds County Youth Court | February 2013 | Completed |
| | ▪ Inclusion of Hinds County Youth Court Judge in Court Improvement Training, and in follow-up conversations regarding court improvement | ▆▆▆▆, ▆▆▆▆ | February 2013, ongoing | In Progress |

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Facilitate effective communication and team building among Hinds County staff at all levels | Attendance by all field staff at Regional Implementation Meetings, on a rotating basis. | ▓▓▓▓▓, ASWSs | Ongoing, in conjunction with PM implementation | In Progress |
| | Participation by all field staff at Regional CQI Team meetings on a rotating basis | ▓▓▓▓▓ ASWSs | Ongoing | In Progress |
| | Formal, regularly scheduled PDS sessions will take place at all levels, according to Agency policy. | ▓▓▓▓▓, ASWSs | May 30, 2015 | Not Started, Full Implementation of PDS begins mid 2014 |
| | ▪ Individual, intentional weekly Worker/supervisor case staffings, consistent with DFCS Policy §A | ASWSs, with oversight by ▓▓▓▓▓ PM Coaches | Ongoing | In Progress |
| Collaborate with local law enforcement to address safety concerns of staff. | ▪ Engage local law enforcement agencies (Jackson Police Dept, Hinds Co. Sheriff's Dept) by inviting representatives to the first 2013 Regional Implementation Team meetings to establish collaborative working relationship. | ▓▓▓▓▓ Regional ASWS | January 2013, continue to invite and include continuously thereafter | Not Started |

## V.    JACKSON, HARRISON, & HANCOCK COUNTIES

### 5.1.    *Jackson County*

According to the Modified Settlement Agreement, Jackson County should have no fewer than 34 caseworkers by the end of Year III Implementation. There are presently 43 workers on staff, including resource specialists, an Independent Living Specialist, one Practice Model Coach, one Eligibility Specialist, one bookkeeper, one secretary, and four case aides. With the hiring of 3-5 direct service staff and 2 ASWSs, the Jackson County office will be brought to full staff.

Responses from focus groups with direct service staff in Jackson County, and reports from the Carve Out Management Team recently brought in to assist, reflect that most of the front line staff in Jackson County are rather inexperienced, relatively new employees. Recently hired ASWSs have utilized the mentoring component of the Level I Clinical Supervisory Training for additional support.  A member of the Performance Development Unit, ███████████, assisted by providing additional On the Job Training (OJT) for the newly hired staff as part of the Carve Out Management Team in Jackson County.  She met with newly hired staff on a weekly basis and accompanied staff on visits and providing feedback to the worker and ASWS.

The Carve Out Management Team has begun to strategize ways to build ASWS support in Jackson County. A request was granted by the COA that an exception be made for Jackson, Harrison, and Hancock Counties with regard to the standard that ASWSs must possess an advanced degree. The rationale is that there are strong candidates for ASWSs positions who have yet to utilize opportunities to receive an MSW through the previously mentioned university cohorts and Professional Development Scholarship. The intention is to hire them as ASWSs and then to assist them in obtaining an advanced degree in order to be in compliance with the standards set forth. ASWSs in Jackson County are committed and knowledgeable about the work, but need additional training and support in order to retain the predominantly new staff that exists on the front lines.

**JACKSON COUNTY ACTION PLAN**

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment to address staffing needs to achieve full staffing capacity. | ▪ Actively recruit via employ-ment websites, MS and surrounding university listservs, and professional conferences and job fairs. | ██████ ████ MDHS HR Staff, | Until full staff capacity is reached. | In Progress |
| | ▪ Recruit and hire additional direct service workers to meet full staffing capacity according to MSA requirements. | █████, ASWSs | May 15, 2013 | In Progress |
| | ▪ Recruit and hire 2 ASWSs to meet full staffing capacity according to workload standards | █████, ASWSs | May 15, 2013 | In Progress |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired, inexperienced staff, communicate feedback to ASWSs. | █████ | February 2013 | Completed |
| | ▪ Utilize Level I Clinical Supervisory Training mentoring component for newly hired ASWSs | █████, ████ UM Mentors | July 1, 2013 | In Progress |

### 5.2.  *Harrison County*

The greatest barrier in Harrison County, according to the Regional Director and Carve Out Management Team, is a lack of qualified staff. According to the Modified Settlement Agreement, Harrison County should have no fewer than 42 caseworkers by the end of Implementation Period III. As of March 2013, there were a total of 51 caseworkers in Harrison County. The Agency recognizes the critical need to recruit experienced and knowledgeable supervisors to prevent turnover of the newly hired staff, and have diligently recruited qualified candidates to fill these positions. Given that a state statute, rather than the MSA and COA requirements mandate ASWSs be licensed social workers (LMSWs), the Carve Out Management Team, along with the Regional Director, are collaborating with executive Agency staff regarding potentially requesting that a waiver be issued for this requirement on a county-specific basis (Harrison and Hancock Counties).  As in Jackson County, an exception to COA requirements which mandate that supervisor positions require and advanced degree was granted by COA in January 2013. The Agency will continue to actively recruit by utilizing coastal media outlets for advertisements of positions, running an In-House Promotional Opportunity Listing for Harrison County. DFCS will also participate in recruitment events in the Gulf Coast area to attract qualified applicants from local and surrounding areas.

Workload validation strategies are currently in place to verify the current workload in Harrison and Hancock Counties for a more accurate assessment of current and ongoing staffing needs. For example, simply by closing cases that should not be open, a listing of pending home studies dropped from 269 to 155 in six weeks' time. Many factors affect the timeliness of being able to successfully close a case in MACWIS once it has been opened, and the Carve Out Management Teams are working along with the staff to continue to verify the accuracy of the workload data and complete necessary steps to close cases that should not be active in the MACWIS database in order to establish more accurate workload data.

The Carve Out Management Team placed in Harrison County noted additional needs of staff with regard to specific training on Termination of Parental Rights procedure and packet assembly. According to caseload review by the Harrison County Carve Out Management Team, there are currently 30 families with multiple children identified to whom TPRs have been ordered but not completed. ▆▆▆▆▆▆▆▆ provided training for Harrison County Staff on TPR protocol in December 2012. Harrison County would greatly benefit from the consideration of hiring/designating an employee who would be primarily responsible for assembling TPR packets in Harrison County (e.g. Case Aide). The Caseload & Staffing Sub-team will collaborate with the Regional Director to examine possibilities on how to best meet the need for this additional project to be staffed.

Responses from focus groups with direct service staff and interviews with ASWSs report that judicial engagement has been an issue that is said to affect staff retention in Harrison County. Based on recent assessment and conversations with the Youth Court Judge, this issue is improving.    However, DFCS must implement additional strategies for strengthening the relationship between the Youth Court and county staff. According to reports by the Carve Out Management Team, a lack of supervision results in staffs' lack of preparedness in court and unfavorable interactions with the Youth Court Judge and court administrators. Harrison County direct service staff and ASWSs received Advanced Court Improvement Training in early 2013 along with employees throughout the state.    A representative of DFCS has begun to initiate conversations with the judges in order to provide information to the judge regarding the Practice Model as well as the tenets of other DFCS improvement initiatives. As they are scheduled, it would be beneficial to invite and include the Harrison County Youth Court Judge and administrators in quarterly Regional Implementation Team meetings, in order to facilitate an effective working relationship and encourage open and useful feedback from the court system.

DHS
327511

**HARRISON COUNTY ACTION PLAN**

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment to fill vacant ASWS positions based on workload and number of hired frontline staff. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and other professional conferences. | ██████, ████████ ████, ███████ | Ongoing, Until staff capacity is reached | In Progress |
| | ▪ Request COA exception to requirement that ASWSs require an advanced degree. | ████████████, ██████ | January 2013 | Completed |
| | ▪ Recruit and hire additional ASWSs, based on identified staffing needs. | ████████████, ████████████, ████████████, ██████ | May 2013 | In Progress |
| Provide specific and interactive training on TPR procedure as identified by county staff as needing further attention. | ▪ Direct service staff will receive training on TPR protocol and packet assembly. | ██████████ | December 2012 | Completed |
| Improve Agency's interactions/ engagement with Youth Court judge and administrators | ▪ Staff will attend DFCS Court Improvement Training. | DFCS Trainers | March 2013 | Completed |
| | ▪ Invitation and inclusion of Youth Court judge and administrators in quarterly Regional Implementation Team meetings, as scheduled. | ███████████, Regional ASWS | Ongoing, in conjunction with PM implementation | Not Started |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired staff, communicate progress/ feedback to ASWSs. | ██████████ | July 5, 2013 | In Progress |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring component for newly hired ASWSs. | ███████████, ██████, UM Mentors | July 30, 2013 | In Progress |

### 5.3.    *Hancock County*

Hancock County is currently experiencing the most critical need with regard to staffing and overall efficiency of all of the identified Carve Out Counties. DFCS has begun a targeted recruitment initiative specifically for Hancock County to fill vacant positions as rapidly and effectively as possible with qualified staff. According to Modified Settlement Agreement requirements, Hancock County should have no fewer than 16 caseworkers on staff by the end of Year III Implementation. As of March 2013, there are 15 caseworkers in Harrison County. The Director of Workforce Development and Director of MDHS Human Resources will continue to vehemently work to recruit for available positions in order to provide Hancock with qualified applicants to build group of staff that is equipped to take on the challenges that are specific to working in Hancock County.

Advertisements for available positions at all levels are currently being featured on various employment search engines utilized by Gulf Coast residents, as well as on employment listservs received by graduates of surrounding colleges and universities. The large scale Annual Gulf Coast Social Work Conference in January 2013 provided an optimal recruitment opportunity for the Carve Out counties. The Southern Region Military and Civilian Job Fair, part of the Governor's Job Fair Network, will be an additional recruitment opportunity and will take place April 9, 2013. The Director of Workforce Development along with MDHS Human Resources representatives will continue to identify and attend similar recruitment opportunities on an ongoing basis.

Court and judicial engagement has been said to be directly correlated with staff turnover in Hancock County. Given the extreme demands of the current workload on existing staff, workers are not prepared for court proceedings or knowledgeable of case information. Furthermore, it is the concern of the Agency that Youth Court orders and practices are in direct conflict with Agency policy and practices. Over the past year, a legal representative of DFCS has been in regular conversation with the Youth Court judge regarding issues with court performance. While previous interactions with the judge have gone favorably, DFCS and the Attorney General's (AG) Office have further collaborated to develop and implement targeted strategies to remediate the current issues. A staff attorney provided by the AG's office, ▮▮▮▮▮▮▮, has been placed in Hancock County on a full-time, permanent basis to monitor court proceedings and interactions between Agency staff and court personnel, as well as to provide advocacy for staff in the courtroom. As similarly indicated in the Harrison County section, it is important to engage the Hancock County Youth Court judge in the improvement efforts currently being implemented throughout DFCS. Inclusion and education of the judge about Agency practices, policy, and procedures through Regional Implementation Team Meetings, when scheduled, are an essential part of establishing a good working relationship with the Youth Court.

DHS
327513

Based on responses from focus groups with Hancock County direct service staff and ASWSs, as well as reports from the Carve Out Management Team and Regional Director, the physical working environment of the Hancock County DFCS office plays a significant role in the ability to recruit and retain quality staff. Currently, staff is housed in trailers with inadequate MACWIS/internet capability and a myriad of other issues that contribute to the quality of the working environment. The devastation that resulted from Hurricane Katrina in 2005 left Hancock County with limited options for suitable office space. The current setting, small trailers, provide little-to-no consideration to confidentiality of interactions with staff or individual work space. DFCS must create a working environment that is attractive and conducive to efficiency in order to gain the interest of potential applicants for available positions. Given that the Agency is already experiencing large-scale recruitment in this county, negotiations with Hancock County officials are taking place with regard to the issue of office space and sufficient physical resources available to staff. DFCS has received a tentative date of June 2013 for the Hancock County offices to be ready and available.

An influx of new staff resulting from the efforts of targeted recruitment must be met with a feasible plan on how to efficiently and expeditiously provide training to newly hired direct service staff and ASWSs. The Director of Professional Development has worked diligently with the Carve Out Management Team to accommodate the training needs of new hires in order to prepare them for casework as soon as possible. On the Job Training (OJT) is provided to new Hancock County staff by ▓▓▓▓▓▓▓▓, of the Professional Development Unit, along with an employee's respective ASWS. ▓▓▓▓ is also available to provide additional support and guidance to new staff after the completion of OJT as they become accustomed to Agency procedure.

**HANCOCK COUNTY ACTION PLAN**

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Targeted recruitment initiative to fill vacant frontline and ASWS positions as rapidly, yet efficiently, as possible. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, professional conference, and job fairs. | ███████, MDHS HR Staff, ███████ ███████ | Ongoing, Until full staff capacity is reached | In Progress |
| Provide expedited Pre-Service and Clinical Supervisory Training to newly hired frontline staff and ASWSs | ▪ Make arrangements to accommodate the influx of newly hired ASWSs and frontline staff, providing expedited Pre-Service and Clinical Supervisory Trainings. | ███████ ███████ | Until full staff capacity is reached, as determined based on recruitment of staff thereafter | In Progress |
| Collaborate with key stakeholders to address physical working conditions in Hancock County | ▪ Continue negotiations with Hancock County Board of Supervisors to address physical working conditions for staff | ███████, ███████ State Implementation Team | Ongoing, until satisfactory results are obtained with regard to workspace | Complete, tentative office space availability is June 2013 |
| | ▪ Seek the assistance of MACWIS support staff to address connectivity issues as needed. | ███████, ASWSs | As needed | In Progress |
| Improve interactions with Youth Court judge and administrators. | ▪ Staff will receive Advanced Court Improvement Training | DFCS Trainers | 03/30/2013 | Completed |
| | ▪ Designation of a permanent, full-time staff attorney from the Attorney General's Office to provide support and advocacy for staff in Youth Court proceedings. | Attorney General's Office, MDHS SIT Team | 02/15/2013 | Completed |
| | ▪ Inclusion of Youth Court judge and court administrators in Regional Implementation Team meetings, as scheduled. | RD, Regional ASWS | Ongoing, In conjunction with PM implementation | Not Started |

**MDHS DIVISION OF FAMILY & CHILDREN'S SERVICES**
**WORKFORCE DEVELOPMENT PLAN**
**ACTION PLAN MATRIX**

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| | **STAFF RECRUITMENT** | | | |
| Focused efforts to recruit qualified staff throughout Mississippi | ▪ Participate in job fairs and employment events throughout the State, targeting efforts toward regions with highest staffing needs. | MDHS Human Resources Staff | Ongoing | In Progress |
| | ▪ Advertise available positions on employment websites and in printed publications. | ██████████ | Ongoing | In Progress |
| | ▪ Review salaries of competing human service agencies and present findings to State Implementation Team. | ██████████ | 08/15/2013 | In Progress |
| | ▪ Communicate needs regarding field placements for students from institutions of higher-education in Mississippi and surrounding states to RDs. | ██████████ | Ongoing, As Needed | In Progress |
| | **STAFF RETENTION & DEVELOPMENT** | | | |
| Create an accurate portrayal of child welfare work for potential applicants utilizing resources from the National Child Welfare Workforce Institute and DFCS Professional Development Unit. | ▪ Temporarily use RJP videos developed by other states during recruitment events. | ██████████ | 07/15/2013 | Not Started |
| | ▪ Collaborate with the DFCS Professional Development Unit and University of Mississippi partners to develop an RJP video specific to child welfare practice in MS | University Partners | 07/01/2014 | In Progress |

DHS
327516

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Strengthen ASWS Development and Support | ▪ Development of Clinical Supervisory Training | ███████, University of Mississippi Consultants, Center for The Support of Families | 12/31/2011 | Completed |
| | ▪ Newly hired or promoted ASWSs will receive Clinical Supervisory Training | ███████, Regional Directors | Ongoing | In Progress |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring Component | ███████, UM Mentors | Ongoing | In Progress |
| Collaborate with county administrators and officials to improve the physical office space in counties that have reported an unsatisfactory working environment. | ▪ Regional Directors will meet with county and regional officials as issues arise | DFCS Regional Directors | Ongoing | In Progress (in some areas) |
| | ▪ Difficulty in achieving desired results on a county level will be reported to the Statewide Implementation Team for further action. | DFCS Regional Directors, ███ ███████ | As appropriate | In Progress (in some regions) |
| Development and Implementation of Strategies for Youth Court Improvement | ▪ Creation of a DFCS Youth Court Strategies Plan | ███████, Center for the Support of Families (CSF) | 07/05/2013 | In Progress |
| Comparative salary analysis for negotiations regarding monetary compensation for Agency staff | ▪ Conduct an analysis of salaries among agencies in MS with whom we compete to recruit similarly qualified job candidates, present findings to SIT. | ███████ | 07/30/2013 | In Progress |
| | ▪ The State Implementation Team will take under advisement in the recommendations in requests and negotiations with the State Personnel Board regarding monetary compensation. | State Implementation Team | Ongoing | Not Started |

DHS
327517

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| **HINDS COUNTY** | | | | |
| Perform targeted recruitment efforts in order to hire identified number of needed front line staff and ASWSs. | ▪ Screen pending applications discovered from perpetual advertisement and schedule interviews for qualified applicants. | ▬▬▬▬▬, ASWSs, ▬▬▬▬▬▬ | 01/2013 | Completed, will continue to monitor for incoming applications |
| | ▪ Make recommendations for new hires; submit to DFCS Personnel Unit, complete hiring process for recommended applicants. | ▬▬▬▬▬, ASWSs, ▬▬▬▬ | 02/2013 | Completed, ongoing |
| | ▪ Actively recruit via employ-ment websites, MS and surrounding university listservs and local employment events for qualified ASWS candidates. | ▬▬▬▬▬, MDHS HR Staff, ▬▬▬▬ | 07/30/2013 | In Progress |
| Provide expedited Pre-Service Training of new hires | ▪ Arrange for additional Pre-Service Trainings to be provided to accommodate the influx of newly hired staff. | ▬▬▬▬▬ | 02/2013 2013 | Completed |
| Conduct training on PDS procedures and usage for ASWSs | ▪ Attendance of Regional Director and Hinds ASWSs in PDS Training | ▬▬▬▬▬, ASWSs, MS State Personnel Board | 12/31/2013 | Not Started |
| Improve interactions with Hinds County Youth Court | ▪ Conduct Court Improvement Training for Hinds County direct service staff and ASWSs | ▬▬▬▬▬, Hinds County Youth Court | 02/2013 | Completed |
| | ▪ Inclusion of Hinds County Youth Court Judge in Court Improvement Training, and in follow-up conversations regarding court improvement | ▬▬▬▬ ▬▬▬▬▬ | 02/2013, ongoing | In Progress |

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Facilitate effective communication and team building among Hinds County staff at all levels | ▪ Attendance by all field staff at Regional Implementation Meetings, on a rotating basis. | ██████ ASWSs | Ongoing, In conjunction with PM implementation | In Progress |
| | ▪ Participation by all field staff at Regional CQI Team meetings on a rotating basis | ██████, ASWSs | Ongoing | In Progress |
| | ▪ Formal, regularly scheduled PDS sessions will take place at all levels, according to Agency policy. | ██████ ASWSs | 05/30/2015 | Not Started, Full Implementation of PDS System begins mid 2014 |
| | ▪ Individual, intentional weekly Worker/ Supervisor case staffings consistent with DFCS Policy §A | ASWSs, with oversight by ██████, PM Coaches | Ongoing | In Progress |
| Collaborate with local law enforcement to address safety concerns of staff. | ▪ Engage local law enforcement agencies (Jackson Police Dept, Hinds Co. Sheriff's Dept) by inviting representatives to the first 2013 Regional Implementation Team meetings to establish collaborative working relationship. | ██████ Regional ASWS | January 2013, continue to invite and include continuously thereafter | Not Started |
| JACKSON COUNTY | | | | |
| Perform targeted recruitment to address staffing needs to achieve full staffing capacity. | ▪ Actively recruit via employ-ment websites, MS and surrounding university listservs, and at professional conferences and job fairs. | ██████, ██████, MDHS HR Staff, ██████ | Until full staff capacity is reached. | In Progress |
| | ▪ Recruit and hire additional direct service workers to meet full staffing capacity according to MSA requirements. | ██████, ASWSs | 05/15/2013 | In Progress |

DHS
327519

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| | ▪ Recruit and hire 2 ASWSs to meet full staffing capacity according to workload standards | ███████, ASWSs | 05/15/2013 | In Progress |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to inexperience, newly hired staff, communicate feedback to ASWSs. | ██████████ | February 2013 | Completed |
| | ▪ Utilize Level I Clinical Supervisory Training mentoring component for newly hired ASWSs | ██████████, UM Mentors | 07/01/2013 | In Progress |
| **HARRISON COUNTY** | | | | |
| Perform targeted recruitment to fill vacant ASWS positions based on workload and number of hired frontline staff. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and other professional conferences. | ████████, █████████, ████████ | Ongoing, Until staff capacity is reached | In Progress |
| | ▪ Request COA exception to requirement that ASWSs require an advanced degree. | ████████, ███ | January 2013 | Completed |
| | ▪ Recruit and hire additional ASWSs, based on identified staffing needs. | █████████, ████████, ██████████, ████████ | May 2013 | In Progress |
| Provide specific and interactive training on Termination of Parental Rights procedure as identified by county staff as needing further attention. | ▪ Direct service staff will receive training on TPR protocol and packet assembly. | ████████ | December 2012 | Completed |
| Improve Agency's interactions/ engagement with Youth Court judge and administrators | ▪ Staff will attend DFCS Court Improvement Training. | DFCS Trainers | March 2013 | Completed |

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
|  | ▪ Invitation and inclusion of Youth Court Judge and administrators in quarterly Regional Implementation Team meetings, as scheduled. | ████ Regional ASWS | Ongoing, in conjunction with PM implementation | Not Started |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired staff, communicate progress/ feedback to ASWSs. | ████ | 07/05/2013 | In Progress |
|  | ▪ Utilize Level I Clinical Supervisory Training Mentoring component for newly hired ASWSs. | ████, ████ UM Mentors | 07/30/2013 | In Progress |
| HANCOCK COUNTY ||||| 
| Targeted recruitment initiative to fill vacant frontline and ASWS positions as rapidly, yet efficiently, as possible. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, professional conference, and job fairs. | ████, MDHS HR Staff, ████ ████ | Ongoing, Until full staff capacity is reached | In Progress |
| Provide expedited Pre-Service and Clinical Supervisory Training to newly hired frontline staff and ASWSs | ▪ Make arrangements to accommodate the influx of newly hired ASWSs and frontline staff, providing expedited Pre-Service and Clinical Supervisory Trainings. | ████ | Until full staff capacity is reached, as determined based on recruitment of staff thereafter | In Progress |
| Collaborate with key stakeholders to address physical working conditions in Hancock County | ▪ Continue negotiations with Hancock County Board of Supervisors to address physical working conditions for staff | ████, State Implementation Team | Ongoing, until satisfactory results are obtained with regard to workspace | Complete, tentative office space availability is June 2013 |
|  | ▪ Seek the assistance of MACWIS support staff to address connectivity issues as needed. | ████, ASWSs | As needed | In Progress |

44

DHS
327521

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Improve interactions with Youth Court judge and administrators. | ▪ Staff will receive Advanced Court Improvement Training | DFCS Trainers | 03/30/2013 | Completed |
| | ▪ Designation of a permanent, full-time staff attorney from the Attorney General's Office to provide support and advocacy for staff in Youth Court proceedings. | Attorney General's Office, MDHS SIT Team | 02/15/2013 | Completed |
| | ▪ Inclusion of Youth Court judge and court administrators in Regional Implementation Team meetings, as scheduled. | RD, Regional ASWS | Ongoing, In conjunction with PM implementation | Not Started |

VI.    **REFERENCES**

Flower, C., McDonald, J., & Sumski, M. (2005). Review of turnover in Milwaukee County private   agency welfare ongoing case management staff. *The Consortium of Community, Agency, and University Partnerships to Improve Public Child Welfare.*

*Olivia Y., et al. v. Phil Bryant, as Governor of the State of Mississippi, et al.* - Modified Mississippi Settlement Agreement and Reform Plan (July 6, 2012)

Center for the Support of Families. (2009). *Mississippi Child Welfare Practice Model Final Report.* Silver Spring, MD: The Center for the Support of Families.

Council on Accreditation Public Agency Standards, 8th ed. (2008) As retrieved from www.coastandards.org.

DHS
327523

# Ex. 8D

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Grace M. Lopes [gmlopes@oymonitor.org] |
| **Sent:** | Wednesday, August 14, 2013 8:39 PM |
| **To:** | 'Rachal, Kenya'; 'Miriam Ingber (mingber@ChildrensRights.Org)' |
| **Cc:** | 'Young, Ashley Tullos'; 'Julia Davis (jdavis@ChildrensRights.Org)'; 'Mia Caras' |
| **Subject:** | Workforce Development Plan |

Kenya and Miriam:

I have reviewed the revised workforce development plan submitted by defendants on April 8, 2013. While it represents a substantial and very encouraging improvement over previous submissions, I have a number of questions about the content of the Plan that I would like to resolve before making a determination about whether it should be approved. Accordingly, I intend to follow up with the Plan's author, and others at DFCS if indicated, as soon as possible. Toward that end, I'd be most appreciative if Kenya could identify the author of the Plan. I expect that I will be able to resolve my questions in the near term and certainly by sometime in September. If that timeline raises any concerns, please let me know. Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C. 20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 8E**

## Grace M. Lopes

**From:**          Grace M. Lopes [gmlopes@oymonitor.org]
**Sent:**          Wednesday, October 09, 2013 3:28 PM
**To:**            'Rachal, Kenya Key'; 'Miriam Ingber'
**Cc:**            'Julia Davis'; 'Young, Ashley Tullos'
**Subject:**       Determination Related to Workforce Development Plan , Period 4 IP II.A.1.

Kenya and Miriam:

I am sorry for the delay in finalizing my determination related to the workforce development plan.  I believe defendants' revised submission represents a very substantial improvement in the earlier versions of the plan. However, I cannot approve it in its current form because in certain key instances I have determined that it requires clarification and supplementation.  I will provide you with the specific reasons for this determination, in writing, within one week.  It is my understanding that defendants are implementing the plan, which I anticipate that they will continue to do pending a opportunity to review and consider the specific reasons for my determination.   In the interim, if you have any questions, please do not hesitate to contact me.  Thank you. - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 8F**

## Grace M. Lopes

| | |
|---|---|
| **From:** | Grace M. Lopes [gmlopes@oymonitor.org] |
| **Sent:** | Tuesday, October 15, 2013 2:54 PM |
| **To:** | 'Rachal, Kenya Key'; 'Miriam Ingber' |
| **Cc:** | 'Young, Ashley Tullos'; 'Julia Davis'; 'Fortenberry, Rusty'; 'Marcia Robinson Lowry' |
| **Subject:** | Determination Related to Workforce Development Plan; Period 4 IP II.A.1. |

Kenya and Miriam:

As you know, the Period 4 Implementation Plan ("IP") required me to determine whether to approve the April 8, 2013 Workforce Development Plan ("Plan") as it is described in Section I.A.2.b. of the Period 3 IP by August 15, 2013.  On August 14, 2013 I noted via e-mail that the Plan represented an encouraging improvement over previous submissions.  However, I indicated that I had a number of questions about the content of the Plan that I wanted to resolve before making a determination about whether to approve it.  Accordingly, I interviewed the author of the plan and reviewed progress related to the plan, especially in the carve out counties.  In certain instances, I also conducted site visits, observed the physical plant, and interviewed regional managers, supervisors and other staff (including members of the management assistance teams) in some of the carve out counties about various aspects of implementation activities described in the Plan.  I communicated with the parties about my progress on September 26 and October 9, 2013.  In my October 9 e-mail I indicated that although the Plan was substantially improved, I could not approve it in its current form because in certain key instances clarification and supplementation was necessary to satisfy MSA requirements.  The reasons for this determination are set out below.

Section II.A.1. of the Period 4 IP states that the requirements related to the Workforce Development Plan are governed by Section I.A.2.b. of the Period 3 IP, which states:

> *Within nine (9) months of the start of Implementation Period 3, Defendants shall have finalized and begun implementing a Workforce Development Plan.  This Workforce Development Plan shall address the recruitment and retention of DFCS professional and support staff as well as bring its current staff into substantial compliance with the worker and supervisor qualification requirements of the Modified Settlement Agreement.  The Workforce Development Plan shall identify the specific steps, strategies, financial resources, and short- and long-term staffing goals with related timeframes that are necessary to meet the staffing requirements of the Modified Settlement Agreement.  The Workforce Development Plan shall be approved by the Monitor as meeting the requirements of this Period 3 Implementation Plan and shall include a section focused specifically on recruitment and retention in Hancock, Harrison, and Jackson Counties ("Coast"), as well as strategies to support staff on the Coast, and shall also include a separate section focused specifically on recruitment, retention, and support strategies in Hinds County.*

As a general matter, while the Plan addresses recruitment and retention of professional staff, it does not address with sufficient specificity certain strategies, financial resources and short- and long-term staffing goals with related time frames.  Moreover, except for a reference to a support position in one county, the Plan does not address recruitment and retention of support staff as required.  My specific comments follow with corresponding cites to the Plan.

**Financial Resources,** Plan at 4, 5, 12, 14, 17, 23

The Plan raises key issues related to financial resources which are described below.

First, the Plan does not address how many caseworker, supervisory and support staff positions are needed statewide to meet MSA requirements and whether there is a gap between the number of positions that are funded and the number needed to satisfy the MSA.  These calculations must be based on historical workload data and reasoned projections about prospective workloads.  Although the Plan states that "[c]reating an accurate and valid picture of current staffing needs based on MACWIS reports and Workload Validation results" is a "priority area of focus," it does not clearly link this activity to the overarching objective of determining whether there are a sufficient number of funded positions to satisfy the MSA.  Plan at 6-7.

Moreover, if there is a funding gap, the IP requires that specific strategies (with related timelines) to increase the number of budgeted positions must be incorporated into the Plan.

Second, the Plan identifies salaries, non-monetary benefits and non-monetary recognition, among other "priority improvement areas," and as "key areas of work on which DFCS must focus to efficiently and effectively retain a quality workforce." *Id.* at 6. The Plan identifies as a recruitment/retention strategy an assessment of the salary structure to determine whether salaries are competitive with other comparable human services entities. *Id.* at 12, 14,17-18, 23. However, the timelines and action steps related to this assessment are not sufficiently specific. *See , e.g.*, *id.* at 23. The Plan states that " . . . the Caseload/Staffing Sub-Team will address needs for additional funding as they arise and communicate those needs to the State Implementation Team. The Workforce Development Sub-Team will provide information received following assessment of salary-related issues to the State Implementation Team for further consideration in their requests to the MS Legislature involving monetary compensation for DFCS employees." Plan at 5. It is unclear what defendants intend, especially in light of the fact that the Plan also states the following: "Due to the restrictions imposed by finite resources, it is important that the Workforce Development Plan is implemented in the most cost-efficient way possible, fully utilizing support that has already been obtained to provide remediation to identified agency gaps." *Id.*

Defendants must quantify the number of each type of position they need to satisfy the MSA and determine whether current funding levels are sufficient to support hiring the requisite number of staff to fill each required position. If current funding is insufficient, defendants must develop concrete strategies with related timelines to address the funding gap. Moreover, as the Plan itself recognizes, defendants must determine whether salaries for each type of position are competitive, and if not, they must also address this issue by formulating specific strategies to address this shortcoming. Specific strategies must be keyed to reasonable timelines as contemplated by the Period 4 IP.

**Staff Qualification Requirements**, Plan at 8-9

The Plan addresses the qualification requirements for DFCS staff, distinguishing between MSA requirements, COA requirements and statutory requirements. *Id.* at 8-9. The Plan describes legislation enacted in 2006 which permitted defendants to hire (as family protection workers and family protection specialists) direct service staff who did not have social work licenses and/or did not have social work degrees. *Id.* at 9. The Plan states that in 2013 the legislation was ". . .extended to allow for the hiring of non-licensed staff with social work degrees in critical need counties and allowing for the continued employment of those in the Family Protection Specialist and Family Protection Worker job classifications." *Id.* The Plan also states that in light of the extension "the Agency has been able to continue to recruit staff with social work related degrees in our most critical need counties. " *Id.* Clarification of current statutory requirements would be helpful. Additionally, it is my understanding that the applicable statutory provisions authorizing exemptions from the social work degree and licensure requirements expire on July 1, 2015. If this understanding is correct, as contemplated by the Period 4 IP, the Plan should address the long-term goals related to this issue.

**Staff Recruitment Action Plan,** Plan at 14-15

While hiring and maintaining a sufficient number of caseworkers and/or their supervisors has been a major issue in the carve out counties, it also has been an issue in some other counties, *e.g.*, DeSoto, Forrest. The Staff Recruitment Action Plan ("Recruitment Action Plan"), which is a sub-part of the larger Workforce Development Plan, does not address this issue. *See id.* at 14-15. The Recruitment Action Plan indicates that a "general remedy" constitutes "focused efforts to recruit qualified staff throughout Mississippi;" however, none of the strategies that defendants have identified (which are referred to in the text of the Plan as "specific tasks") represent a focused effort to address recruitment based on a prioritized, ongoing and needs-based approach that focuses on counties for which there is evidence of long-standing difficulty recruiting qualified caseworkers and/or supervisors, or alternatively, counties which are experiencing a more episodic staffing crisis. This type of targeted approach could serve as an effective adjunct to more generalized and ongoing staff recruitment activities.

2

**Staff Retention and Development**, Plan at 16 – 24

Among other factors, defendants identify reported shortcomings in the physical plant of some county offices as a factor that affects staff retention. *Id.* at 17. According to defendants, staff and managers have described some county offices as "over-crowded, uncomfortable, dreary, and even physically unhealthy." *Id.* Defendants have made progress in some counties addressing deficiencies in the physical plant of county offices because they can control some factors that give rise to the deficiencies and influence others. Nevertheless, among other "general remedies" related to the correction of deficiencies in the county offices, the Plan states: "Collaborate with county administrators and officials to improve the physical office space in counties that have reported an unsatisfactory working environment." *Id.* at 22. The related action steps indicate that regional managers "will meet with county and regional officials as issues arise" and that "[d]ifficulty in achieving desired results on a county level will be reported to the Statewide Implementation Team for further action." *Id.* This approach does not foster accountability or a reasonable assurance that major shortcomings in the physical plant of county offices, which are deemed to be barriers to recruitment and retention, will be addressed in an effective way. For example, the Plan does not include any reference to general expectations regarding the minimum standards that should govern an assessment of the suitability of the physical plant (*e.g.*, appropriate access to confidential meeting areas, etc.), a prioritized approach to remediation of the most critical issues, long- and short-term goals, and concrete action steps keyed to timelines for addressing the major shortcomings.

The Plan also indicates that staff retention may be affected by what staff report as "problematic" interactions with the Youth Court in some counties. *Id.* at 17. The Plan does not provide sufficient information about this issue to enable me to assess whether the strategy defendants have identified is appropriate. *See id.* at 23, referring to implementation of the youth court strategies plan.

**Carve Out Counties**, Plan at 24-26

Defendants have made demonstrable progress hiring a significant number of caseworkers in a relatively short period of time in the carve out counties. Among other strategies, defendants have used the recruitment and retention salary incentives and the carve out management assistance teams to accelerate caseworker hiring in many of the carve out counties. Nonetheless, most of the carve out counties are now confronted with an influx of new caseworkers and an insufficient number of supervisors to manage them. This is a serious issue which, as defendants' recognize, contributes to deficiencies in case practice and caseworker attrition. The Plan should have, but did not, contemplate the need to ensure appropriate levels of supervisory support for newly hired caseworkers. This limitation should be addressed for each of the carve out counties. Moreover, at least preliminarily, it appears from interviews with DFCS staff and managers that salary incentives for supervisory staff in the carve out counties have not been advertised. Assuming these representations are correct, absent appropriate justification, the Plan should include activities related to advertizing this important recruitment incentive.

**Hinds County Action Plan**, Plan at 29-30

The Plan indicates that staff in Hinds County have concerns about their safety and that law enforcement staff are unwilling to accompany workers, even when safety concerns are present. *Id.* at 28. The action plan lists the following strategy in response to this concern: "Collaborate with local law enforcement to address safety concerns of staff." *Id.* at 30. The action step associated with this strategy is for Hinds County managers to invite local law enforcement agencies to regional implementation team meetings. *Id.* This action step does not appear to be reasonably calculated to address serious safety issues in the short-term and perhaps even in the long-term. Additional information must be provided about the safety issues that have been identified in Hinds County. Worker safety is a critical matter that cannot be addressed effectively absent the involvement of high-level MDHS management and a concrete action plan.

**Jackson, Harrison and Hancock Counties ("Coastal Counties")**, Plan at 31-38

As a general matter, the action plans for each coastal county should indicate that all recruitment activities are ongoing and will continue in order to maintain staffing of all required positions at required levels. Specific concerns related to the plans presented for each of the coastal counties are addressed below.

First, the waiver of the licensure requirement for supervisors in Harrison and Hancock Counties should be clarified, and activities related to exploration of this initiative should be included in the action plan. *Compare id.* at 33 *with id.* at 35.

Second, the Plan refers to workload validation strategies that were implemented in Harrison and Hancock Counties as a methodology for assessing current and ongoing staffing needs. *Id* at 32. These strategies, were not successful in Harrison County. (The strategies are not reflected in the Harrison County action plan, *see id.* at 35, and I have not had an opportunity to confirm the current status of caseload validation activities in Hancock County). The Plan should be revised to address appropriate caseload validation activities, including the use of desk audits and related data validation initiatives (*e.g.*, initiatives that currently are required as part of the data report validation process), on a statewide basis as well as in each of the carve out counties.

Third, the Plan states that "Harrison County would greatly benefit from the consideration of hiring/designating an employee who would be primarily responsible for assembling TPR packets in Harrison County (e.g. Case Aide)." *Id.* at 33. However, the need to recruit, hire and maintain staffing for this position is not reflected in the Harrison County action plan. *See id.* at 35.

Fourth, the Plan indicates that "judicial engagement" is an issue that affects staff retention in Harrison County. *Id* at 34. Insufficient information is provided about this issue and thus the reasonableness and efficacy of the related steps in the action plan cannot be assessed. *See id.* at 35.

Finally, the Plan states that "[c]ourt and judicial engagement" is "said to be directly correlated with staff turnover in Hancock County." *Id* at 36. The Plan acknowledges that in light of " . . . the extreme demands of the current workload on existing staff, workers are not prepared for court proceedings or knowledgeable of case information." *Id.* Moreover, the Plan indicates that defendants are concerned that " . . . Youth Court orders and practices are in direct conflict with Agency policy and practices." *Id.* The Plan does not provide information about the specific policies and practices that are implicated by conflicting Youth Court orders. Although the Plan states that staff from DFCS and the Attorney General's Office " . . . have further collaborated to develop and implement targeted strategies to remediate the current issues," *id.*, absent a description of the specific types of orders that conflict with agency policy and practice, I cannot assess the reasonableness and efficacy of the strategies presented in the action plan. I note, however, that the Plan states that a staff attorney from the Office of the Attorney General has been assigned to " . . . Hancock County on a full-time, permanent basis to monitor court proceedings and interactions between Agency staff and court personnel, as well as to provide advocacy for staff in the courtroom." *Id.* While a staff attorney has been assigned to Hancock County, I have been unable to confirm that DFCS staff are represented by counsel from the Attorney General's office during proceedings in the Hancock County Youth Court. Thus, the scope of the advocacy that is being provided for staff should be clarified.

Since the time the Plan was submitted, defendants have made significant improvements in staffing levels and in at least certain aspects of supervision practices in Hancock County. Moreover, they have addressed pressing physical plant issues that have served as a barrier to hiring and retaining staff in Hancock County. Although some supervision and physical plant issues remain, DFCS staff and managers contend that Youth Court practices in Hancock County continue to undercut defendants' ability to maintain a stable workforce. Accordingly, as stated above, the Plan must be supplemented to describe, with specificity, the types of orders that conflict with agency policy and practice and the specific strategies (as well as timelines) defendants have adopted and plan to adopt to address these concerns.

*    *    *    *

Please contact me if you have any questions about these matters. I think it is appropriate for us to consider next steps related to this plan as well as to the other deliverables from the Period 4 IP and the June 2013 Order that are subject to my approval. Please let me know how you wish to proceed. Thank you. - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 8G**

**Mississippi Department of Human Services, Division of Family and Children Services (DFCS)**

**Workforce Development Plan**

**April 2013**

*Revised November 2013*

DHS
361646

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES (DFCS)

## WORKFORCE DEVELOPMENT PLAN

### TABLE OF CONTENTS

Introduction …………………………………………………………………………………… 3

Workforce Development Plan, Statewide Plan……………………………………….8

Workforce Development Plan, Carve Out Counties ………………………………28

    *Hinds County*………………………………………………………… …………...31

    *Jackson, Harrison & Hancock Counties* ……………………………………36

References ………………………………………………………………………...44

Workforce Development Plan Action Matrix ………………………………...45

Appendix ……………………………………………………………………………….54

DHS
361647

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, DIVISION OF FAMILY & CHILDREN'S SERVICES (DFCS)**

**WORKFORCE DEVELOPMENT PLAN**

## INTRODUCTION

Through generous support from Casey Family Services, The Mississippi Department of Human Services, Division of Family & Children's Services, in collaboration with the American Public Human Services Association has developed the Workforce Development Plan for DFCS staff throughout the state of Mississippi and with a specific focus on the critical need areas of Hinds, Jackson, Harrison, and Hancock Counties, identified in the *Olivia Y.* Modified Settlement Agreement as "Carve Out Counties". These counties have historically had a difficult time recruiting and retaining workers, and face county-specific obstacles to the recruitment and retention of quality staff. The goal of the Workforce Development Plan is to positively affect recruitment and retention of direct service workers and supervisors in the Carve Out counties (Harrison, Jackson, Hancock and Hinds) and DFCS as a whole.

The Workforce Development Plan will create an environment where recruitment and retention efforts are meaningful and measurable. As a result of improved recruitment and increased retention, direct service and supervisory employee satisfaction will improve as will morale. With improvement in these areas, client service quality and a positive attitude toward management will increase for the direct service workers. Likewise, employee effectiveness, client satisfaction, and the public's perception of MDHS, DFCS will improve over time.

The intention of the Workforce Development Plan is to address agency gaps throughout Mississippi and in the Carve Out counties as identified through data analysis (Comprehensive Organizational Health Assessment Regional and Statewide Reports), staff surveys (2011 MDHS/DFCS Worker Retention/Satisfaction Survey Results), focus groups with direct service staff, and interviews with agency administrative staff; to strategize remedies to increase staff capacity, efficacy and retention among DFCS staff with the long-term goal of improving outcomes in work with children and families.

**WORKFORCE DEVELOPMENT PLAN OBJECTIVE**

The objective of this plan is to positively affect recruitment and retention of direct service workers and supervisors, as well as to strengthen DFCS staff capacity in order to consistently meet or exceed its performance standards throughout the State of Mississippi. This plan additionally provides improvement strategies for Harrison, Hancock, Jackson, and Hinds Counties, also known as Carve Out counties due to extenuating circumstances regarding staffing, supervision, and workload management. This plan is designed to support and accompany the implementation of the *Olivia Y* Modified Settlement Agreement requirements and Mississippi Practice Model; with the ultimate result of sustained, steady improvements in outcomes for the children and families it serves.

**WORKFORCE DEVELOPMENT PLAN IMPLEMENTATION**

Communicating the Improvement Effort:

During quarterly Settlement Team Meetings, the Director of Workforce Development, who is also the chair of the Staffing & Caseload Sub-team, provides verbal updates regarding the status of the plan. Bureau Directors and Sub-team chairs attend the Settlement Team Meetings and then communicate updates to staff in their corresponding units. The Director of Field Operations also provides updated information to the DFCS Regional Directors, who communicate the effort to the field staff throughout the state. The Workforce Development Plan will also be posted for review on the DFCS Connection website.

The Action Plan tasks and timeframes will continue to be reviewed at monthly Staffing/Caseload Sub-team meetings with the parties responsible for carrying out the specified tasks. The Director of Workforce Development updates the Settlement Team and State Implementation Team on a quarterly basis regarding Plan progress, impact, and lessons learned through the end of Period 3 and continually thereafter.

The Staffing/Caseload Sub-team will also contribute content to a number of regular agency reports to key stakeholders, including the following:

- Quarterly updates to the State Implementation Team
- Annual report to the legislature
- Periodic updates to the Citizens Review Panel (these updates will begin during the second half of 2013, to enable the first update to include concrete results of plan implementation)

4

The Staffing/Caseload Sub-team also contributes content to the strategic planning process conducted every five years. The agency held a Five Year Strategic Planning Meeting on February 12, 2013, in Jackson, Mississippi. Attendees of this meeting included DFCS staff, MDHS Executive Staff, University Partners, Community Stakeholders, Judges, and Service Providers.

Budget and Resource Implications:

With regard to staffing, positions can be filled and funded via previously allocated Personnel Identification Numbers. DFCS has partnered with nationally renowned family service organizations to develop and implement statewide initiatives to improve services provided to Mississippi children and families. These organizations include:

- Casey Family Programs

- Center for Support of Families

- American Public Human Services Association

- Atlantic Coast Child Welfare Implementation Center

- Child Welfare Consultants from Mississippi Universities

In monitoring the Workforce Development plan, the Caseload/Staffing Sub-team will address needs for additional funding as they arise and communicate those needs to the State Implementation Team. The Workforce Development Sub-Team will provide information received following assessment of salary-related issues to the State Implementation Team for further consideration in their requests to the MS Legislature involving monetary compensation for DFCS employees.

Limitations on the agency's financial resources and efforts to work with and overcome those limitations are further discussed in the Staff Retention & Development section of this plan.

Monitoring Plan Progress:

The Action Plan Matrixes, contained herein, will be used to monitor plan progress and lessons learned at monthly Staffing/Caseload Sub-team meetings. The Sub-team will monitor impact of the remedies by tracking data from the following sources, both using point in time and trend data:

Overall impact on children, youth, and families will be tracked by monitoring the outcomes of the Modified Settlement Agreement and MS Practice Model, as well as the comparison of staffing information on a county and regional basis to identify possible associations.

Impact on Staffing will be tracked by monitoring:

- Time to hire
- Positions needed as a function of workload
- Percentage of needed positions filled

Impact on Staff Development, Performance Management, and Staff Retention will be tracked using:

- Staff responses from the web-based DFCS Worker Retention and Satisfaction Survey, which will be conducted annually beginning in 2013.
- Feedback provided by direct service and supervisory staff to Bureau Directors and communicated in monthly Settlement Team meetings.

Additional impact on Performance Management will be tracked by analyzing statistics generated by the Performance Development System (PDS). By mid 2014, we anticipate having the capability to track PDS completion rates and ratings distributions by state, region, county, and individual review. A procedure for the tracking of PDS data will be designated in late 2014, and will be a collaborative effort between the DFCS Director of Workforce Development and MDHS Human Resources Personnel.

Impact on Staff Retention will be tracked by reviewing turnover data and information, e.g.,:

- By county
- By region
- From Voluntary Exit Interview responses

Following the implementation of the provisions in the plan, quarterly site visits and focus groups will be conducted to evaluate plan progress and efficacy. Additional questions regarding identified gaps will be incorporated into the agency's annual Employee Satisfaction Survey. The Director of Workforce Development will also continue to record and analyze information obtained from Employee Exit Interviews to determine trends and associations. This information will be reported to the State Implementation Team on a quarterly basis.

Priority Improvement Areas

The following are key areas of work on which DFCS must focus to efficiently and effectively recruit and retain a quality workforce. MDHS and DFCS senior leaders together with the DFCS State Implementation Team identified the following priority areas of focus for assessing strengths and gaps across the state, with an accelerated and deeper assessment in Harrison, Hancock, Jackson, and Hinds Counties:

Workforce Development Areas of Work

- Staff Recruitment & Retention
- Sourcing, recruiting, selecting, and retaining qualified staff
- Salary, Non-monetary benefits, Non-monetary recognition
- Leadership & Supervision
- Staff Development
- Helping staff at all levels develop new knowledge and skills
- Performance Management
- Setting performance expectations
- Managing performance day-to-day
- Conducting formal performance reviews
- Workload Analysis
- Creating an accurate and valid picture of current staffing needs based on MACWIS reports and Workload Validation results
- Developing procedure to conduct regular Workload Validation at the county level, utilizing weekly ASWS staffings and review of MACWIS report data.

## METHODOLOGY

The Caseload & Staffing Sub-team utilized the following data and information gathering methods in the development of the Workforce Development Plan:

- Statistical data review including exit survey data, turnover data, caseload/workload data, staffing data (e.g. ASWS-worker and RD-ASWS ratios, number of vacancies).
- Input from conversations with representatives of the Center for Support of Families (CSF) on Practice Model Implementation and other agency improvement initiatives.
- Review of the Atlantic Coast Child Welfare Implementation Center's 2010 Comprehensive Organizational Health Assessment.
- Focus groups with direct service staff (caseload carrying), frontline supervisors (ASWSs), and regional support staff in the Carve Out counties, as well as Regional Directors.
- Review of the 2011 MDHS-DFCS Annual Employee Satisfaction & Retention Survey.
- Interviews with Hinds, Hancock, Harrison, and Jackson County Youth Court judges to initiate conversations regarding staff preparedness and the courts' impact on staff retention.
- Reports from the Carve Out Management Teams recently placed in Hinds, Harrison, Hancock, and Jackson Counties.

DHS
361652

**Mississippi Department of Human Services, Division of Family & Children's Services**

**Statewide Workforce Development Plan**

The Division of Family & Children's Services (DFCS), as part of the implementation of various improvement initiatives, will take into consideration the tenets and standards mandated by these initiatives when making decisions regarding the recruitment of direct service (FPWs and FPSs) and supervisory staff (ASWSs).

*Olivia Y. Settlement and COA Requirements*

The *Olivia Y* Modified Settlement Agreement (MSA) and Council on Accreditation (COA) mandate the following qualifications and caseload standards with respect to supervisory and direct service staff:

**Area Social Work Supervisor (ASWS)**

- Advanced degree in social work (MSW) or related degree with two years' experience in working with children and families

    *\*The agency recently received approval from the Council on Accreditation to waive the requirement of an advanced degree for ASWSs in the Carve Out Counties.*

- Will not supervise more than five direct service workers
- Will have no direct caseload responsibilities

**Direct Service Staff (FPW, FPS)**

- Degree in social work (BSW) or comparable human service field with two years of experience in working with children and families.
- Caseload will not exceed MSA Caseload Requirements

DHS
361653

8

*Mississippi Law for the Practice of Social Work*

Mississippi Code: Title 73, Chapter 53 states that no person may be identified as a social worker unless the person has the necessary social work education and possesses a license to practice social work. There are three levels of licensure: Licensed Social Worker (LSW) - applicants must have a BSW and may not provide therapeutic services; Licensed Master Social Worker (LMSW) - applicants have an MSW and may provide therapeutic services under the supervision of a Licensed Clinical Social Worker (LCSW). Applicants for an LCSW have an MSW, have had two years of clinical supervision, may provide therapy, and may practice independently without supervision.

In 2006, due to staffing shortages due to a limited number of qualified applicants, the Legislature gave DFCS the authority to hire direct service employees that do not have social work degrees as well as those with social work degrees who are not currently licensed. These positions were reclassified as Family Protection Worker and Family Protection Specialist positions, as the agency was prohibited from the use of the title "Social Worker" in the absence of the required qualifications. In 2013, this bill was extended to allow for the hiring of non-licensed staff with social work degrees in critical need counties and allowing for the continued employment of those in the Family Protection Specialist and Family Protection Worker job classifications. Given this extension, the agency has been able to continue to recruit staff with social work related degrees in our most critical need counties. The aforementioned statutory provisions are set to expire on July 1, 2015. The State Implementation Team plans to consider this issue and whether there is a need to seek an additional extension of this provision during bi-weekly meetings in early 2014.

Additionally, the Council on Accreditation granted DFCS an exception to current COA Standards to hire Area Social Work Supervisor's, ASWSs, without advanced degrees in our four Carve Out counties. Hinds, Harrison, Hancock and Jackson Counties will be the last to go through the COA Accreditation process in 2014 and 2015. By that time, licensed BSW's hired as supervisors during this time period, will be in the process of pursuing or will have obtained their MSW degrees. A copy of this waiver can be found in the appendix of this document.

*Collaboration with State Universities for Professional Development*

DFCS has cultivated relationships with many state and local universities for the purpose of expanding staff development opportunities for DFCS employees. At the present time, DFCS has established good working relationships with The University of Mississippi, Jackson State University, Mississippi State University, The University of Southern Mississippi, Mississippi College, Mississippi Valley State University, and Delta State University for the purpose of recruiting graduates of BSW and MSW programs. At the present time, DFCS has contractual cohorts established with Jackson State University, The University of Mississippi, and The University of Southern Mississippi for staff pursuing an advanced

9

degree in Social Work. These cohorts provide DFCS staff the opportunity to work full time and attend classes on their compressed days to obtain an MSW. This group approach to pursuing a degree provides a sense of community for DFCS enrolled in the cohorts. A Professional Enhancement Scholarship is also available to staff for those wishing to obtain advanced degrees in Social Work from a public Mississippi college or university. To date, nearly 115 DFCS employees have taken advantage of the scholarship which covers tuition and other expenses.

Additionally, DFCS has contracted with The University of Mississippi, Jackson State University, and The University of Southern Mississippi to provide licensure preparation workshops on a semi-annual basis to assist non-licensed staff with social work degrees in passing the licensure exam. These workshops not only emphasize core social work concepts and theories, but also provide attendees with information in effective preparation and test taking skills.

The aforementioned initiatives greatly contribute to the recruitment and retention of DFCS staff, as well as positively affect our ability to bring staff into compliance with the requirements of the Modified Settlement Agreement and Council on Accreditation standards.

**Staff Recruitment**

One of the greatest issues affecting the workforce and overall success of DFCS is the ability to effectively recruit and hire qualified staff. Within the past year, numerous activities have taken place to improve and increase staff recruitment. To date, DFCS is meeting/exceeding MSA requirements for staff capacity for front-line Family Protection Workers (FPWs) and Family Protection Specialists (FPSs). The agency currently has 54 vacancies for ASWSs. The number of caseworkers and supervisors required to meet the requirements of the Modified Settlement Agreement (MSA) are identified on a monthly basis through Caseload and Staffing reports. This number fluctuates due to changes in reported workload each month. There can be no fixed or established number of positions needed on an ongoing basis due to fluctuations in reported workload. Historical workload data is available upon request, and are also provided each month in Caseload and Staffing reports. These Caseload and Staffing reports indicate current staffing needs on a monthly basis and identify specifically, county by county, the level of staffing sufficiency. Representatives from the MDHS Human Resources Division and DFCS Director of Workforce Development have actively recruited for available positions within DFCS at numerous career fairs, employment expos, and professional conferences throughout the state. This includes agency participation in the Governor's Job Fair Network, a unique employment resource consisting of regionally-based career fairs for Mississippi residents and employers. The agency also currently advertises positions on various employment websites to attract potential candidates who may not otherwise check the State Personnel Board's website for job listings. These sites include indeed.com, simplyhired.com, and craigslist.com, and listings on these sites are managed by the DFCS

DHS
361655

Workforce Development and Personnel Units. Some counties, at times, experience enhanced difficulty in the ability to recruit qualified direct-service and supervisory staff. The agency implements an ongoing, needs-based approach to developing targeted recruitment efforts in these areas. The Director of Workforce Development checks in with the RDs on a quarterly basis, and prior to recruiting events in their regions, to determine their needs for staffing in the counties under their supervision. Funding for these recruitment efforts are provided by contractual dollars, as well as grants, based on the classification of the position for which we are recruiting. These statewide recruitment efforts will continue on an as-needed basis, based on staffing data and information, in order to assist county offices in maintaining full staff capacity.

### Recruitment Events Attended by DFCS & Human Resources Staff

### March 2012 – Present

| Date | Event | Location |
|---|---|---|
| 03/21/2012 | Mississippi Employment Expo | Jackson, MS |
| 03/22/2012 – 03/23/2012 | NASW Mississippi Annual Conference | Natchez, MS |
| 03/26/2012 | Delta State University School of Social Work Career Fair | Cleveland, MS |
| 04/10/2012 | Spring Southern Region Military & Civilian Job Fair | Biloxi, MS |
| 05/30/2012 | Rankin County Area Job Fair | Pearl, MS |
| 09/25/2012 | Mississippi State University Career Fair | Starkville, MS |
| 09/26/2012 | *Jobs For Jacksonians* Job Fair | Jackson, MS |
| 10/04/2012 | Jackson State University Career Fair | Jackson, MS |
| 10/09/2012 | Desoto County Area Job Fair | Southaven, MS |
| 11/07/2012 | Pine Belt Job Fair | Hattiesburg, MS |
| 11/16/2012 | University of Southern Mississippi Fall Social Work Colloquium | Hattiesburg, MS |
| 11/27/2012 | Recruitment Presentation to *Social Work Practice with Children & Families* | Long Beach, MS |

| Date | Event | Location |
|---|---|---|
| | Class, USM Gulf Campus | |
| 01/23/2013 – 01/24/2013 | Annual Gulf Coast Social Work Conference | Biloxi, MS |
| 02/13/2013 – 02/15/2013 | Mississippi Child Welfare Institute Conference | Jackson, MS |
| 02/19/2013 | Mississippi College Career Day | Clinton, MS |
| 03/20/2013 | Mississippi Employment Expo | Jackson, MS |
| 03/21/2013 – 03/22/2013 | NASW Mississippi Annual Conference | Natchez, MS |
| 04/09/2013 | Southern Region Military & Civilian Job Fair | Biloxi, MS |
| 05/29/2013 | Rankin County Area Job Fair | Pearl, MS |
| 06/17/2013 | Presentation to MSW Students, MS Valley State University | Itta Bena, MS |
| 06/29/2013 | Northeast Mississippi Military, Spouses, & Dependents Job Fair | Tupelo, MS |
| 07/16/2013 | Presentation to University of Mississippi MSW Field Seminar Class | Oxford, MS |
| 07/18/2013 | Southern Christian Services for Children & Youth Annual Conference, *Lookin' to the Future* | Natchez, MS |
| 08/06/2013 | Vicksburg Area Job Fair | Vicksburg, MS |
| 08/09/2013 | Presentation to University of Mississippi BSW Field Seminar Class | Oxford, MS |
| 09/06/2013 | Presentation to University of Southern Mississippi BSW Field Seminar Class | Hattiesburg, MS |
| 09/25/2013 | *Jobs For Jacksonians* Job Fair | Jackson, MS |
| 10/08/2013 | Desoto County Area Job Fair | Southhaven, MS |

12

DFCS has also launched a collaborative effort with *Parents& Kids* magazine that includes the featuring of recruitment advertisements in their issues as part of a collaborative effort with the DFCS Prevention Unit. Issues of *Parents & Kids* are circulated in various areas throughout the state including Northeast MS, Central MS, and in the Pine Belt Region. The Director of Workforce Development will work to feature similar advertisements in newspapers and other local publications. Additionally, as a means to recruit qualified ASWS candidates, DFCS has partnered with the Mississippi Chapter of the National Association of Social Workers (NASW) regionally-based Program Units to advertise positions to their active members.

University partnerships provide an excellent opportunity to recruit potential graduates who have an interest in working in child welfare. The Caseload & Staffing Sub-team plans to initiate a process of ensuring that advertisements for available positions are provided to the career services departments at higher learning institutions in Mississippi and surrounding states on a monthly basis, according to identified staffing needs. Additionally, agency representatives are frequently identifying and attending conferences and career fairs at Mississippi colleges and universities, and have begun speaking to classes and groups about career opportunities with DFCS. This effort is presently focused in the Carve Out county areas due to critical staffing needs, but will expand to include all Mississippi institutions of higher learning with social work and related degree programs. Throughout the state, interns from Mississippi colleges and universities seek to experience working in the field of child welfare and enter into field placements in the various county offices. Many interns go on to seek employment with the agency following graduation. The Director of Workforce Development will work with Regional Directors to communicate needs regarding field placements for students from institutions of higher-education in Mississippi and surrounding states.

Assessment of focus group responses and Voluntary Exit Interview data indicates that present salaries are a significant barrier to the recruitment and retention of qualified staff. This presents the question as to whether or not DFCS salaries are competitive with those offered by competing human service agencies. The Caseload & Staffing Sub-team will review the salaries offered by comparable agencies on an annual basis and present these findings to the State Implementation Team for use in negotiations regarding monetary compensation of staff. This information is obtained through review of government child welfare salaries in surrounding states (LA, AL, TN, AK), as well as information received from other public and private social service agencies in Mississippi with whom we compete for similarly qualified staff. MDHS offers an array of benefits and opportunities for professional advancement, educational assistance, and compressed scheduling which differentiates us from other state agencies and social service organizations.

DHS
361658

## MDHS Historical Salary Report & Financial Projection 2008-Present

**Division of Family and Children's Services**
**Salaries and Fringes**
**From GMOS dated 10/31/2013**

**HISTORICAL:**

| | 2008 | | 2009 | | 2010 | | 2011 | | 2012 | | 2013 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | State Fiscal Year Ended | | | | | |
| Salaries and Fringes | | | | | | | | | | | | |
| Total | $ 30,098,598 | | $ 35,260,101 | | $ 41,567,403 | | $ 43,570,034 | | $ 46,633,663 | | $ 54,183,387 | |
| | | | | | | | | | | | | |
| General Funds | $ 5,458,770 | 18% | $ 15,299,033 | 43% | $ 18,648,505 | 45% | $ 21,145,855 | 49% | $ 27,936,056 | 60% | $ 27,640,145 | 51% |
| Federal Funds | $ 24,583,596 | 82% | $ 19,906,190 | 56% | $ 22,860,696 | 55% | $ 22,366,106 | 51% | $ 18,648,243 | 40% | $ 26,476,961 | 49% |
| Other | $ 56,231 | 0% | $ 54,877 | 0% | $ 58,202 | 0% | $ 58,072 | 0% | $ 51,954 | 0% | $ 66,281 | 0% |
| | $ 30,098,597 | 100% | $ 35,260,100 | 100% | $ 41,567,403 | 100% | $ 43,570,034 | 100% | $ 46,636,253 | 100% | $ 54,183,387 | 100% |
| | | | | | | | | | | | | |
| Average number of filled PINS | | | | | 997 | | 1,034 | | 1,118 | | 1,268 | |
| | | | | | | | | | | | | |
| Historical Average Salaries and Fringes/PIN | | | | | $ 41,692 | | $ 42,137 | | $ 41,714 | | $ 42,731 | |

**FINANCIAL PROJECTION for SFY 2014**

| | # of Workers | Pay Rate | Realignment Factor | | |
|---|---|---|---|---|---|
| Jul-13 | | | | $ | 2,472,657 |
| Aug-13 | | | | $ | 5,129,169 |
| Sep-13 | | | | $ | 4,912,289 |
| Oct-13 | | | | $ | 4,871,794 |
| Actual for 3.5 months ended October 2013 | | | | $ | 17,385,909 |
| Less 6 months Worker's Comp included | | | | $ | (277,248) |
| Less 6 months Unemployment Ins included | | | | $ | (43,843) |
| | | | | $ | 17,064,818 |
| 3.5 months annualized | | | | $ | 58,507,947 |
| Add full year - Worker's Comp | | | | $ | 554,496 |
| Add full year-Unemployment Ins | | | | $ | 87,686 |
| SFY Projection at current # of PINs and pay rate | | | | $ | 59,150,129 |
| Average YTD filled PINs | | | | | 1342 |
| Average Salaries and Fringes per PIN @ current SFY 2014 run rate | | | | $ | 44,076 |
| | | | | | |
| SFY Projection at current # of PINs and pay rate | | | | $ | 59,150,129 |
| Estimated amount for SFY 2014 for realignment of Social Workers | 100 | $ 35,000 | 15.00% | $ | 525,000 |
| Estimated amount for SFY 2014 for additional PINs | 0 | $ 35,000 | 0.00% | $ | - |
| Estimated Payroll for SFY 2014 | | | | $ | 59,675,129 |
| | | | | | |
| General Funds | | | | $ | 30,441,604 |
| Federal Funds | | | | $ | 29,160,526 |
| Other | | | | $ | 72,999 |
| Estimated Payroll for SFY 2014 | | | | $ | 59,675,129 |

DHS
361659

Time to hire has also been noted as an additional a barrier to successful recruitment according to the statements of the Regional Directors. Often, potential candidates for DFCS positions find employment with other agencies before they receive a response regarding their application from MDHS. The hiring process can sometimes take 30-90 days. The agency has identified strategies for streamlining the hiring process, for the purpose of expediting personnel transactions. These strategies include reorganization of the DFCS Personnel Unit, communication with Regional Directors regarding expediting of personnel transactions, and identification of pending applications resulting from perpetual MS State Personnel Board advertisements.

### Staff Recruitment Action Plan

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Focused efforts to recruit qualified staff throughout Mississippi | ▪ Evaluate Caseload & Staffing Reports to determine staffing needs in each region, based on workload reports. | USM Consultant | Ongoing, monthly | In Progress |
| | ▪ Participate in job fairs and employment events through-out the State, targeting efforts toward regions with highest, and most crucial staffing needs. | ▬▬▬ MDHS Human Resources Staff | Ongoing | In Progress |
| | ▪ Advertise available positions on employment websites and in printed publications. | ▬▬▬, ▬▬▬ ▬▬▬ | Ongoing | In Progress |
| | ▪ Review salaries of competing human service agencies and present findings to State Implementation Team. | ▬▬▬, ▬▬ ▬▬▬ | Ongoing, annually beginning January 2014 | In Progress |
| | ▪ Consult with Regional Directors regarding staffing needs in the counties within their regions. | ▬▬▬, Regional Directors | Ongoing, quarterly | In Progress |
| | ▪ Communicate needs regarding field placements for students from institutions of higher-education in Mississippi and surrounding states to Regional Directors. | ▬▬▬ | Ongoing, As Needed | In Progress |

DHS
361660

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Make upgrades to the hiring process to improve timeliness and efficiency in the recruitment of staff. | ▪ Reorganization of the DFCS Personnel Unit with new leadership. | ▬▬ ▬▬▬, ▬▬▬, ▬▬ | 07/2012 | Completed |
| | ▪ Two new staff members will be hired/transferred into the DFCS Personnel Unit. | ▬▬▬ | 07/2012 | Completed |
| | ▪ The Deputy Director of MDHS will meet with the DFCS Personnel Unit supervisor to determine availability of PINS for requested personnel transactions. | ▬▬▬▬ ▬▬, ▬▬ ▬▬▬ | Ongoing, Bi-weekly | In Progress |
| | ▪ Communicate with RDs regarding reasons for delays in personnel transactions, and tips for expediting personnel transactions. | ▬▬▬ | 09/2012 | Completed |
| | ▪ Communicate with MS State Personnel Board regarding applications resulting from perpetual advertisements. | ▬▬ ▬▬▬ | Ongoing | Ongoing, will request periodically as needed |

## Staff Retention & Development

### Staff Retention

Research clearly shows that child welfare caseworker turnover negatively impacts permanency outcomes for children. A clear correlation exists between the number or workers a child has and the length of time that the child stays in custody (Flower, McDonald, & Sumski, 2005). It is essential that the agency begin to implement strategies to reduce turnover on the front lines. According to the DFCS 2011 Annual Retention & Worker Satisfaction Survey, the majority of staff (70.9%) report overall satisfaction with their jobs, and feeling a sense of pride in the work they do (90.1%). However, less than half (43%) reported feeling that their workload is manageable and allows them to do quality work with families. DFCS will implement the following strategies to reduce staff turnover, based on factors identified as contributing to lack of retention; utilization of Realistic Job Profiles, strengthening ASWS

DHS
361661

development and support, improvement of physical working conditions, development of strategies for youth court improvement, comparative salary analysis, awarding certificates of recognition and lapel pins for years of State service, and communicating to staff regarding opportunities for Continued Education. Specific remedies and anticipated completion dates can be found in the Staff Retention & Development Action Plan to follow.

It is essential that prospective workers have a clear and realistic understanding of the nature of child welfare work. New hires with unrealistic expectations of the challenges, demands, and rewards of working in the field of child welfare are more likely to leave the agency in a short period of time. DFCS will utilize Realistic Job Preview (RJP) resources provided by the National Child Welfare Workforce Institute to create an accurate and clear portrayal of child welfare work during the pre-application, interview, and training process for potential and new hires. A multitude of Realistic Job Preview materials have been developed by other states and are provided by the National Child Welfare Workforce Institute via the U.S. Department of Health & Human Services (www.ncwwi.org/rjp), and the Administration for Children & Families Website, the Child Welfare Information Gateway (www.childwelfare.gov). Examples of materials include RJP videos, case vignettes, and other resources to assist in the recruitment child welfare staff. The agency will first utilize materials developed by other states, while working to develop RJP materials that are specific to child welfare practice in Mississippi.

Supportive and competent supervision is essential to the retention of direct service staff. A respondent of a focus group with Regional Directors stated that ASWSs and direct service staff are having trouble managing the sheer volume of caseloads (exceedingly high in some areas) in combination with the required tasks of COA, Modified Settlement Agreement, and Practice Model. While success with regard to all of the aforementioned is crucial to the progression and improvement of DFCS, we must provide supervision at all levels by those equipped to manage the implementation of new policies and practice. In addition, during 2013, MDHS has contracted with the Center for the Support of Families to develop and deliver a Level II Clinical Supervisory Training which can reasonably be expected to boost supervisory capacity and support the retention of front-line staff. In addition to the training, the coaching of supervisors, which is provided by CSF practice coaches, will focus on implementation of the training content, including weekly supervisor-worker staffings.

According to the 2011 DFCS Retention & Worker Satisfaction Survey, slightly over half of respondents reported that that their physical office environment is pleasant and conductive to a productive work day. However, responses from focus groups with Regional Directors and Carve Out county staff, characterize some particular offices as over-crowded, uncomfortable, dreary, and even physically unhealthy. While the responsibility of maintaining county office space is, in most areas, not something that DFCS has the authority to govern, the agency will examine ways to collaborate with county officials on improvements to offices that are unappealing to potential and current staff. Conducive to obtaining accreditation, the agency is working diligently to meet Council on Accreditation standards for

17

county service environments. COA Administrative & Service Environment (PA-ASE 4) standards can be found in the appendix of this document.  Regional Directors will address issues regarding physical working space with county/regional officials to make improvements as they are identified. In the case that efforts to engage such officials proves to be ineffective, the Regional Director will report to the Director of Field Operations who will communicate the issue to the State Implementation Team for further action.

Interactions with the Youth Courts in some counties have been reported as problematic to the agency's ability to retain staff on the front lines. In the court setting, it is important that agency staffs present themselves assertively, and are confident in the newly implemented improvements that DFCS is undergoing. In areas where problems with judicial engagement are identified, DFCS will enact strategies to remediate such issues as identified in the DFCS Youth Court Strategies Plan.  This plan has been completed, and is available upon request. Further, the DFCS Training Coordinators and Administration Units are assisting to provide necessary Court Improvement Training for staff throughout the state to increase their performance and success in interactions with the Youth Courts.

Respondents of focus groups and the 2011 Retention & Worker Satisfaction Survey reflect that the rate of pay for staff, especially direct service staff, is not commensurate with the amount work that is required of them. Salaries for State employees are not internally governed, but are determined by the MS State Personnel Board and the Legislature.  In the 2014 budget request to the legislature, MDHS requested funding of the Realignment Package, which would result in salary increases for DFCS staff. For State Fiscal Year 2013 the agency received $129,821,140, and for SFY 2014 $144,771, 847. This is an increase of $14,950,707.  A copy of the 2014 Appropriations Bill (HB1668) and budget requests for 2015 are included in the appendix of this plan. It is necessary for DFCS to be competitive among other human service agencies with regard to salaries and benefits in order to prevent staff turnover, as well as attract potential candidates for employment. While MDHS does not determine rates of pay or have the ability to approve increases in monetary compensation on a departmental level, the Caseload & Staffing Sub-team will conduct a comparative assessment of local and non-local salaries of similar jobs and present its findings to the State Implementation Team. The SIT will utilize this information in a continuous effort to negotiate monetary compensation for agency staff.

DHS
361663

DFCS Salary Progression 2003-Present

| Classification | Current Starting Salary Since 7/1/2007 | *Effective 7/1/2006 | Annual Salary Beginning 7/1/2003 | Former Job Classification (if applicable) |
|---|---|---|---|---|
| DHS-Area Social Work Supervisor (ASWS) | $37,511.76 | No Change | $32,246.81 | N/A |
| DHS-Family Protection Specialist (FPS) | $27,615.55 | $27,015.55 | $25,285.68 | DHS-Social Worker |
| DHS-Family Protection Specialist, Senior (FPS, Sr.) | $30,049.94 | $29,449.94 | $26,689.32 | DHS-Social Worker Senior |
| DHS-Family Protection Specialist Advanced (FPS, Adv.) | $32,700.43 | $32,100.43 | $29,459.88 | DHS-Social Worker Advanced |
| DHS-Family Protection Worker I (FPW I) | $23,643.58 | $23,043.58 | Non-Existent | Non-Existent |
| DHS-Family Protection Worker II (FPW II) | $27,615.55 | $27,015.55 | Non-Existent | Non-Existent |
| DHS-Social Services Regional Director (SSRD) | $40,890.84 | No Change | $37,600.87 | N/A |

*Family Protection Series were established and made effective July 1, 2006 (FY 2007).*

*** Recruitment Flex (15%) was approved for Hancock, Harrison, Hinds, and Jackson Counties, effective October 1, 2011, for all listed positions except SSRDs. (Actual percentage not included in above salaries).**

**** Type Duty Location Pay (20%) was approved for Hancock, Harrison, and Jackson Counties for all listed positions. (Actual percentage not included in above salaries).***

As a gesture of appreciation for continued State service, DFCS has begun awarding certificates of appreciation to staff that have been with the agency for 5 years or more. These certificates are signed by the DFCS Deputy Administrator and MDHS Executive Director. Depending on the regional/county location, certificates are then presented individually or at staff meetings and staff appreciation events.

Upon distributing these items, we request that photos be taken and sent back to the MDHS Public Information Officer for publication in the MDHS *Beacon* and DFCS *Fresh Thoughts* newsletters. Additionally, the agency has begun requesting State service certificates and lapel pins from the MS State Personnel Board at 10 year increments. These items are requested by MDHS Human Resources and are then distributed to the appropriate region for distribution.

As an additional strategy in reducing avoidable staff turnover, the Caseload & Staffing Sub-team, with input from other key agency staff, will assess ways to develop a protocol for remediation between supervisor and employee when there is an indication that the worker is planning to discontinue his/her employment with the agency. This remediation will only be possible in an environment in which supervision is supportive and communication is effective, allowing both the worker and supervisor to openly discuss the employee's concerns and determine what can be done to encourage the worker to remain with the agency. The MS Practice Model provides an excellent framework for such communication to take place in weekly supervision meetings.

DHS
361665

Vacancy Turnover Rate Report

| | Family and Children's Services | | | | Family and Children's Services(State Office) | | | | Family and Children's Services-Adoption(State Office) | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Total | Filled | Vacant | % Vacant | Total | Filled | Vacant | % Vacant | Total | Filled | Vacant | % Vacant |
| 2/22/2013 | 1517 | 1288 | 229 | 15% | 167 | 150 | 17 | 10% | 14 | 10 | 4 | 29% |
| 1/25/2013 | 1517 | 1271 | 246 | 16% | 167 | 146 | 21 | 13% | 14 | 10 | 4 | 29% |
| 12/20/2012 | 1517 | 1261 | 256 | 17% | 167 | 144 | 23 | 14% | 14 | 10 | 4 | 29% |
| 11/27/2012 | 1517 | 1261 | 256 | 17% | 168 | 145 | 23 | 14% | 14 | 11 | 3 | 21% |
| 10/26/2012 | 1517 | 1238 | 279 | 18% | 168 | 141 | 27 | 16% | 14 | 12 | 2 | 14% |
| 9/24/2012 | 1517 | 1211 | 306 | 20% | 168 | 142 | 26 | 15% | 14 | 13 | 1 | 7% |
| 8/27/2012 | 1517 | 1197 | 320 | 21% | 169 | 144 | 25 | 15% | 13 | 12 | 1 | 8% |
| 7/27/2012 | 1517 | 1186 | 331 | 22% | 169 | 141 | 28 | 17% | 13 | 11 | 2 | 15% |
| | | | | | | | | | | | | |
| 6/25/2012 | 1446 | 1194 | 252 | 17% | 170 | 140 | 30 | 18% | 13 | 11 | 2 | 15% |
| 5/24/2012 | 1446 | 1129 | 317 | 22% | 170 | 129 | 41 | 24% | 13 | 11 | 2 | 15% |
| 4/23/2012 | 1446 | 1136 | 310 | 21% | 171 | 131 | 40 | 23% | 13 | 11 | 2 | 15% |
| 3/26/2012 | 1446 | 1132 | 314 | 22% | 175 | 129 | 46 | 26% | 13 | 11 | 2 | 15% |
| 2/23/2012 | 1446 | 1139 | 307 | 21% | 175 | 126 | 49 | 28% | 13 | 13 | 0 | 0% |
| 1/25/2012 | 1446 | 1109 | 337 | 23% | 175 | 124 | 51 | 29% | 13 | 13 | 0 | 0% |
| 12/29/2011 | 1446 | 1099 | 347 | 24% | 173 | 123 | 50 | 29% | 13 | 13 | 0 | 0% |
| 10/25/2011 | 1446 | 1100 | 346 | 24% | 167 | 124 | 43 | 26% | 13 | 13 | 0 | 0% |
| 9/26/2011 | 1447 | 1088 | 359 | 25% | 165 | 125 | 40 | 24% | 13 | 13 | 0 | 0% |
| 8/25/2011 | 1447 | 1086 | 361 | 25% | 160 | 127 | 33 | 21% | 13 | 13 | 0 | 0% |
| 7/25/2011 | 1447 | 1082 | 365 | 25% | 151 | 127 | 24 | 16% | 13 | 13 | 0 | 0% |
| Average SFY 2012 | | 1117.636 | | | | | | | | | | |
| | | | | | | | | | | | | |
| 5/24/2011 | 1193 | 1060 | 133 | 11% | 152 | 129 | 23 | 15% | 13 | 13 | 0 | 0% |
| 4/22/2011 | 1193 | 1068 | 125 | 10% | 152 | 131 | 21 | 14% | 13 | 12 | 1 | 8% |
| 3/25/2011 | 1193 | 1066 | 127 | 11% | 151 | 129 | 22 | 15% | 13 | 12 | 1 | 8% |
| 1/25/2011 | 1193 | 1057 | 136 | 11% | 151 | 128 | 23 | 15% | 13 | 12 | 1 | 8% |
| 12/22/2010 | 1189 | 1043 | 146 | 12% | 146 | 126 | 20 | 14% | 13 | 12 | 1 | 8% |
| 11/22/2010 | 1189 | 1033 | 156 | 13% | 146 | 125 | 21 | 14% | 13 | 12 | 1 | 8% |
| 10/25/2010 | 1189 | 1017 | 172 | 14% | 146 | 121 | 25 | 17% | 13 | 12 | 1 | 8% |
| 9/24/2010 | 1189 | 1003 | 186 | 15% | 145 | 115 | 30 | 21% | 13 | 12 | 1 | 8% |
| 8/26/2010 | 1189 | 995 | 194 | 16% | 144 | 115 | 29 | 20% | 13 | 11 | 2 | 15% |
| 7/27/2010 | 1189 | 999 | 190 | 16% | 144 | 112 | 32 | 22% | 13 | 11 | 2 | 15% |
| Average SFY 2011 | | 1034.1 | | | | | | | | | | |
| | | | | | | | | | | | | |
| 6/25/2010 | 1204 | 1010 | 194 | 16% | 143 | 117 | 26 | 18% | 13 | 11 | 2 | 15% |
| 5/24/2010 | 1204 | 1011 | 193 | 16% | 143 | 118 | 25 | 17% | 13 | 13 | 0 | 0% |
| 4/23/2010 | 1204 | 1015 | 189 | 16% | 143 | 121 | 22 | 15% | 13 | 13 | 0 | 0% |
| 3/25/2010 | 1204 | 1019 | 185 | 15% | 143 | 122 | 21 | 15% | 13 | 13 | 0 | 0% |
| 2/24/2010 | 1204 | 1021 | 183 | 15% | 143 | 122 | 21 | 15% | 13 | 13 | 0 | 0% |
| 1/26/2010 | 1204 | 1019 | 185 | 15% | 143 | 119 | 24 | 17% | 13 | 13 | 0 | 0% |
| 12/22/2009 | 1204 | 1008 | 196 | 16% | 143 | 117 | 26 | 18% | 13 | 13 | 0 | 0% |
| 11/20/2009 | 1204 | 991 | 213 | 18% | 138 | 114 | 24 | 17% | 13 | 13 | 0 | 0% |
| 10/26/2009 | 1204 | 978 | 226 | 19% | 135 | 113 | 22 | 16% | 13 | 13 | 0 | 0% |
| 9/24/2009 | 1204 | 973 | 231 | 19% | 136 | 114 | 22 | 16% | 13 | 13 | 0 | 0% |
| 8/28/2009 | 1204 | 957 | 247 | 21% | 137 | 113 | 24 | 18% | 13 | 13 | 0 | 0% |
| 8/25/2009 | 1204 | 957 | 247 | 21% | 137 | 113 | 24 | 18% | 13 | 13 | 0 | 0% |
| Average SFY 2010 | | 996.5833 | | | | | | | | | | |

*MDHS Division of Family & Children's Services Vacancy Turnover Rates SFY2010-Feb. 2013*

MDHS Agency Turnover Report 07/06/12 – Present, By Division

| Youth Services | Average Employees | 378 |
|---|---|---|
| | Voluntary Terms. | 37 |
| | Total Terms. | 48 |
| | Voluntary Turnover Rt. | 9.80% |
| | Total Turnover Rate | 12.71% |
| Child Support | Average Employees | 435 |
| | Voluntary Terms. | 55 |
| | Total Terms. | 61 |
| | Voluntary Turnover Rt. | 12.65% |
| | Total Turnover Rate | 14.03% |
| Support Svcs. | Average Employees | 177 |
| | Voluntary Terms. | 23 |
| | Total Terms. | 25 |
| | Voluntary Turnover Rt. | 13.01% |
| | Total Turnover Rate | 14.14% |
| Econ. Assistance | Average Employees | 1026 |
| | Voluntary Terms. | 98 |
| | Total Terms. | 111 |
| | Voluntary Turnover Rt. | 9.55% |
| | Total Turnover Rate | 10.82% |
| Aging | Average Employees | 33 |
| | Voluntary Terms. | 6 |
| | Total Terms. | 8 |
| | Voluntary Turnover Rt. | 18.03% |
| | Total Turnover Rate | 24.03% |
| Comm. Serv. | Average Employees | 17 |
| | Voluntary Terms. | 6 |
| | Total Terms. | 6 |
| | Voluntary Turnover Rt. | 35.74% |
| | Total Turnover Rate | 35.74% |
| **FCS** | **Average Employees** | **1256** |
| | **Voluntary Terms.** | **159** |
| | **Total Terms.** | **180** |
| | **Voluntary Turnover Rt.** | **12.66%** |
| | **Total Turnover Rate** | **14.34%** |
| SSBG | Average Employees | 3 |
| | Voluntary Terms. | 0 |
| | Total Terms. | 0 |
| | Voluntary Turnover Rt. | 0.00% |
| | Total Turnover Rate | 0.00% |
| DECCD | Average Employees | 44 |
| | Voluntary Terms. | 4 |
| | Total Terms. | 5 |
| | Voluntary Turnover Rt. | 9.19% |
| | Total Turnover Rate | 11.49% |

DHS
361667

| MDHS | | |
|---|---|---|
| | Average Employees | 3368 |
| | Voluntary Terms. | 388 |
| | Total Terms. | 444 |
| | Voluntary Turnover Rt. | 11.52% |
| | Total Turnover Rate | 13.18% |

*Staff Development*

The provision of effective initial and ongoing staff development to DFCS staff will positively impact the agency's ability to retain quality workers. Given the nature of the work that exists in child welfare, it is important that new staff is well prepared for the challenges they will face with regard to client interactions, general practice, and Youth Court procedures. DFCS is partnering with Mississippi colleges and universities, as well as national child welfare organizations to provide quality training and enrichment opportunities for DFCS staff.

DFCS, in collaboration with The University of Mississippi, has developed and begun to implement an improved training and enrichment curriculum for DFCS staff. Current trainings offered by the Professional Development Unit for new direct service and supervisory staff include Pre-Service Clinical Supervisory Training, as well as Level I & II Clinical Supervisory Training (specific to ASWSs). Additionally, a "reunion session" is held one year from the time an employee began pre-service training and is provided to both direct service and supervisory staff. Feedback from focus groups with Regional Directors indicate that there is an obvious improvement with regard to the preparedness and level of understanding of agency procedure and practice among those who have completed Pre-Service training following implementation of the new curriculum. In addition to pre-service training for new social worker hires, as a region begins implementation of the practice model, CSF and DHS coaches provide training to all social workers and supervisors, not only new hires, on each of the six components of the practice model in order to ensure that all staff have a foundation for moving forward with practice model implementation.

**Supervisory Training Overview**

<u>Pre-Service Clinical Supervisory Training</u> – This is an intensive 40 hour training that all newly hired DFCS staff, as well as promoted, acting or proxied supervisors must attend prior to obtaining a case load.

<u>Level I Clinical Supervisory Training</u> – This training is designated for newly hired or promoted supervisors. After the completion of Pre-Service Clinical Supervisory Training, a mentor will be assigned only to permanent ASWSs (not in an acting role). The mentor will meet with the supervisor weekly to complete the Level I Curriculum. In the event an acting supervisor who has already attended Pre-Service Clinical Supervisory Training moves into a permanent role, the Regional Director will request the assignment of a mentor from the Professional Development Unit and Level I Clinical Supervisory Training will begin at that time. A mentor request form has been sent to all of the Regional Directors.

23

**Level II Clinical Supervisory Training** – Only staff who have completed Level I will be eligible for Level II. This training is offered six months to 1 year after the completion of Level 1 Clinical Supervisory Training.  This training consists of three modules and is currently being trained by CSF staff.

Respondents of focus groups and interviews with direct service staff, ASWSs, and Regional Directors indicate that in some areas, particularly those with exceedingly high caseloads, staff is often unable to attend trainings and workshops to obtain Continued Education Credits (CEUs) for licensure renewal. The DFCS Connections website is an optimal resource for advertising such opportunities. The Director of Workforce Development will ensure that current listings and dates for upcoming trainings, conferences, etc. (both within and outside of the agency) are featured on the website for use by agency employees seeking such events for professional enrichment.

## Staff Retention & Development Action Plan

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Create an accurate portrayal of child welfare work for potential applicants utilizing resources from the National Child Welfare Workforce Institute and DFCS Professional Development Unit. | ▪ Temporarily use Realistic Job Profile (RJP) videos developed by other states during recruitment events. | ██████████ | 07/15/2013 | In Progress, Ongoing |
| | ▪ Collaborate with the DFCS Professional Development Unit and University of Mississippi partners to develop an RJP video that is specific to child welfare practice in Mississippi. | ████████, University Partners | 07/01/2014 | In Progress |

DHS
361669

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Strengthen ASWS Development and Support | ▪ Development of Clinical Supervisory Training | ▬▬, University of Mississippi Consultants, Center for The Support of Families | 12/31/2011 | Completed |
| | ▪ Newly hired or promoted ASWSs will receive Clinical Supervisory Training | ▬▬ Regional Directors | Ongoing | In Progress |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring Component | ▬▬, UM Mentors | Ongoing | In Progress |
| Collaborate with county administrators and officials to improve the physical office space in counties that have reported an unsatisfactory working environment. | ▪ Regional Directors will meet with county and regional officials as issues arise | DFCS Regional Directors | Ongoing | In Progress, continuous |
| | ▪ Difficulty in achieving desired results on a county level will be reported to the Statewide Implementation Team for further action. | DFCS Regional Directors, ▬▬▬ | As deemed necessary | In Progress (in some regions) |

| Development and Implementation of Strategies for Youth Court Improvement | ▪ Creation of a DFCS Youth Court Strategies Plan | ▬▬ Center for the Support of Families (CSF) | 07/08/2013 | Completed |
|---|---|---|---|---|
| Comparative salary analysis for negotiations regarding monetary compensation for agency staff | ▪ Conduct an analysis of salaries among agencies in MS with whom we compete to recruit similarly qualified job candidates, present findings to SIT. | ▬▬ | Ongoing, annually beginning January 2014 | In Progress |
| Comparative salary analysis for negotiations regarding monetary compensation for agency staff (cont.) | ▪ The State Implementation Team will utilize the recommendations in requests and negotiations with the State Personnel Board and MS Legislature regarding monetary compensation. | State Implementation Team | Ongoing | In Progress, Continuous Effort |
| Provide notification of staff regarding opportunities for Continued Education | ▪ Utilize the DFCS Connection website to feature listings of trainings, workshops, and conferences scheduled throughout the State, as well as online resources. | ▬▬ | 07/15/2013, and ongoing | Completed, In Progress |

26

**Performance Management**

Historically throughout DFCS, performance management and review is a process that has been under-utilized and widely viewed as punitive and impractical. The previous Performance Appraisal Review (PAR) system was not consistently implemented throughout the state, and was considered to be ineffective in providing employees with constructive and useful feedback with regard to their performance. MDHS is in the process of making improvements to the process of employee performance appraisal, and is currently beginning implementation of the newly developed Professional Development System (PDS). Trainings for agency staff on the use of the PDS are presently being offered to all MDHS staff and are provided by the MS State Personnel Board. Full implementation of the PDS throughout the state will begin July 2014. In addition to monitoring employee performance, the PDS also provides staff an opportunity to develop an Individual Development Plan which can include their anticipated professional goals.

## WORKFORCE DEVELOPMENT PLAN
## CARVE OUT COUNTIES

### Introduction

The intention of this plan is to address agency gaps in Hinds, Harrison, Hancock, and Jackson Counties, also referred to in the Modified Settlement Agreement as "Carve Out Counties" as identified through data analysis, focus groups with direct service staff, interviews with ASWSs and Regional Directors, as well as weekly reports from the recently placed Carve Out Management Teams. These counties have historically had a difficult time recruiting and retaining quality staff for various reasons that are believed to be county/region specific.

The objective of this individualized plan for the Carve Out Counties is to swiftly and positively increase staff recruitment and retention, as well as support and accompany the implementation of the Olivia Y Modified Settlement Agreement requirements and Mississippi Practice Model with the ultimate result of sustained, steady improvements in outcomes for the children and families in our most critical-need counties.

*Recruitment & Retention Salary Incentive*

In 2011, DFCS received approval to offer a 15% recruitment flex to new and existing staff in the Carve Out Counties to positively affect recruitment and retention of employees. While the agency saw considerable progress with regard to staffing due to this increase, the approval of an additional 20% Type Duty Location pay increase for staff in the coastal counties was granted in January 2013. These salary incentives have made DFCS more competitive than ever with similar human service agencies in terms of our ability to recruit and retain staff in the coastal area. Current annual salaries with these incentives for Regional Directors, ASWSs, FPSs and FPWs in the Carve Out Counties are as follows:

**Hinds County**

Regional Director: $40,890.84

Area Social Work Supervisor (ASWS): $43,138.52

Family Protection Specialist, Advanced (FPS, Adv.): $37,605.49

Family Protection Specialist, Senior (FPS, Sr.): $34,557.43

Family Protection Specialist (FPS): $31,757.88

Family Protection Worker II (FPWII): $31,757.88

Family Protection Worker I (FPWI): $27,190.12

DHS
361672

**Jackson, Harrison, & Hancock Counties**

Regional Director: $49,069.01

Area Social Work Supervisor (ASWS): $50,640.88

Family Protection Specialist, Advanced (FPS, Adv.): $44,145.58

Family Protection Specialist, Senior (FPS, Sr.): $40,567.42

Family Protection Specialist (FPS): $37,280.99

Family Protection Worker II (FPSII): $37,280.99

Family Protection Worker I (FPWI): $31,918.83

*Deployment of Carve Out Management Teams*

In November 2012, DFCS, with the assistance of the Center for Support of Families, developed a strategy for addressing the needs of the Carve Out Counties. This strategy included the deployment of designated Carve Out Management Teams to temporarily work from the Carve Out Counties to assess for county-specific needs within each county, and to develop effective solutions to the identified areas needing improvement. Examples of activities include assisting with personnel transactions, workload validation, and facilitating communication among county staff.  The Carve Out Management Teams provide weekly reports to the State Implementation Team for the purpose of monitoring individual county progress.

**Carve Out County Staffing Progress**

**January 2012 – March 2013**

|  | Jan 2012 | Feb 2012 | Mar 2012 | Apr 2012 | May 2012 | Jun 2012 | Jul 2012 | Aug 2012 | Sep 2012 | Oct 2012 | Nov 2012 | Dec 2012 | Jan 2013 | Feb 2013 | Mar 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Hinds** | 38 | 38 | 36 | 35 | 35 | 36 | 42 | 43 | 45 | 48 | 49 | 54 | 61 | 59 | 67 |
| **Harrison** | 29 | 32 | 36 | 41 | 41 | 38 | 43 | 43 | 44 | 40 | 44 | 44 | 46 | 52 | 51 |
| **Jackson** | 28 | 30 | 30 | 29 | 29 | 29 | 36 | 35 | 37 | 36 | 47 | 41 | 42 | 44 | 43 |
| **Hancock** | 13 | 16 | 13 | 15 | 15 | 14 | 18 | 17 | 14 | 12 | 14 | 13 | 13 | 15 | 15 |

DHS
361673



While the agency has been able to effectively recruit a substantial number of front-line, direct service staff through the use of recruitment incentives; there is now a disparity between the number of FPSs and FPWs and the appropriate number of qualified ASWSs on staff in the Carve Out counties. The agency is working assiduously to recruit qualified ASWS candidates in order to meet this need and provide appropriate levels of supervision for our newly hired staff. Examples of these efforts include the use of previously mentioned targeted recruitment efforts such as partnering with professional organizations (ex. MS NASW) and advertising vacancies on recruitment websites and university listservs. DFCS will continue these efforts until a sufficient number of supervisors are hired in the Carve Out counties.

DHS
361674

## HINDS COUNTY

### Staffing

Assessment of the needs of Hinds County reflects that the biggest issue affecting overall success is the recruitment and retention of qualified staff. Only with the hire of additional staff will caseloads, on-call schedules, and documentation be manageable and provide staff with the ability to provide quality services to children and families. A lack of supportive supervision at all levels in has also been reported to be the cause of "massive turnover" in Hinds County. Increased caseloads for the employees that remain further intensifies the problem, and morale significantly suffers as a result. This facilitates a chaotic work environment and further contributes to staff turnover.

The Modified Settlement Agreement mandates that Hinds County should have no fewer than 50 caseworkers by July 2013. A review of staffing progress in March 2013 indicated that 27 caseworkers and 2 ASWSs were hired following the deployment of the Carve Out Management Team to Hinds County. As of October 2013, a total of 72 FPWs and FPSs are currently employed in Hinds County, exceeding the requirements of the MSA and reported workload. A glitch preventing applications in response to a "perpetual" advertisement on the State Personnel Board website from being received and appropriately processed was previously identified as a barrier to recruitment. Identification of this issue resulted in the discovery of numerous pending applications for these available positions. The error has been resolved and proper transmission of those applications has been established.

The Carve Out Management Team also identified many problematic issues with staff interviewing procedures in Hinds County. Panel interviews were not being properly utilized according to agency policy, and ASWSs were having little to no input on the hiring of front line staff. Furthermore, it was discovered that applicants were being asked to complete "testing" of sorts, which is at the present time not permitted, according to MDHS policy. The Hinds County Carve Out Management Team has instructed staff on proper interviewing protocol, and currently assists supervisory staff in completing personnel procedures such as screening applicants, scheduling interviews, and completing new hire transactions to instill a culture in which ASWSs feel involved in the hiring of the staff that they supervise.

Office space for new hires is reported to be an issue in Hinds County. The Regional Director of III-S, ███████████, and MDHS Executives have been in discussion with the MDHS Field Services Regional Director about how to accommodate and influx of anticipated new hires. Nearly the entire 2nd floor of the Hinds County Department of Human Services building is occupied by DFCS employees, when previously DFCS staff shared the floor with other MDHS units. The Professional Development Unit has effectively made necessary accommodations to include an additional Pre-Service Training in order to expedite the training of the new hires.

## Court Improvement Training

In focus groups with Hinds County staff, interactions with the Youth Court were described as problematic and a definite factor in the lack of ability to retain staff. Respondents of focus groups with direct service staff and ASWSs indicate that they are often required to spend full days in court, which prevents them from completing other essential job duties. Furthermore, current court behaviors and unprofessional interactions with the judge have resulted in workers being fined and receiving disciplinary correction. An Advanced Court Improvement Training was provided for Hinds County staff by DFCS Training Coordinators and ███████████ in January 2013. ███████████ of the Hinds County Youth Court agreed to participate in the training, offering his courtroom as a setting and serving as a "mock Judge" for role playing with the staff. Information obtained in this training will be reinforced by the ASWS on a consistent basis to maintain satisfactory court performance.

## Communication and Team Building

Assessment of interactions among Hinds County staff and responses received in focus groups and interviews reflect a significant lack of trust and communication at all levels. A lack of "face time" between supervisor and worker was reported, resulting in directives being given via MACWIS narratives. The Practice Model mandates weekly meetings between supervisor and worker, which will help to provide an avenue for communication. Through their efforts in Hinds County, the Carve Out Management Team is working to establish effective communication and team building among Hinds County staff at all levels. Examples of these efforts include and, staff attendance at Regional Implementation Team meetings and CQI reviews, and formal, regularly scheduled staff meetings for staff at all levels. These efforts will help to build trust among the staff, and reinforce the mission that we must all work together effectively to provide optimal services to the families and children with whom we work.

## Safety Issues

Respondents of the focus groups with front line staff and ASWSs stated that safety issues sometimes play a role in the retention of staff, as well as the recruitment of staff. Law enforcement was reported as being unsupportive of the agency and unwilling to accompany workers, even when safety issues are present. In planning quarterly Regional Implementation Team meetings for Region 3-S, it is important that the Regional Director invite and include law enforcement from the Jackson Police Department and Hinds County Sheriff's Department. The Regional Director should also promptly consult with law enforcement officials in the event of issues affecting the safety of DFCS staff. Collaboration with these

32

DHS
361676

agencies and communication of the need for their protection and assistance due the nature of the work will help to improve partnerships between agency staff and Hinds County Law Enforcement.

MDHS Administrative Policy (AP 45) provides a clear and effective process for reporting incidents affecting the safety of both agency employees and the clients they serve. MDHS Serious Incident Reports (not to be confused with DFCS SIRs for child fatalities and near fatalities) are utilized in all counties when such situations arise, and are forwarded to State Office administrative staff for further review and action as needed. A copy of this policy is included in the plan's appendix. In situations where safety issues are of a systemic nature and cannot be resolved at the regional level, issues are reported to the State Implementation Team or directly to MDHS/DFCS administration for further action to be determined.

### Hinds County Action Plan

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment efforts in order to hire identified number of needed front line staff and ASWSs. | ▪ Screen pending applications discovered from perpetual advertisement and schedule interviews for qualified applicants. | ████████, ASWSs, ████████, ████ | 01/2013 | Completed, will continue to monitor for incoming applications |
| | ▪ Make recommendations for new hires; submit to DFCS Personnel Unit, complete hiring process for recommended applicants. | ████████, ASWSs, ████ | 02/2013 | Completed, ongoing |
| | ▪ Actively recruit via employment websites, MS and surrounding university listservs and local employment events for qualified ASWS candidates. | ████████, MDHS HR Staff, ████ | 07/30/2013 | In Progress |
| Provide expedited Pre-Service Training of new hires | ▪ Arrange for additional Pre-Service Trainings to be provided to accommodate the influx of newly hired staff. | ████████ | February 2013 | Completed |

DHS
361677

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Conduct training on PDS procedures and usage for ASWSs | ▪ Attendance of Regional Director and Hinds ASWSs in PDS Training | _____, ASWSs, MS State Personnel Board | November 2013 | Complete, continue as needed |
| Improve interactions with Hinds County Youth Court | ▪ Conduct Court Improvement Training for Hinds County direct service staff and ASWSs | _____, Hinds County Youth Court | February 2013 | Completed |
|  | ▪ Inclusion of Hinds County Youth Court Judge in Court Improvement Training, and in follow-up conversations regarding court improvement | _____ | 05/15/2013 | Completed |
| Facilitate effective communication and team building among Hinds County staff at all levels | ▪ Attendance by all field staff at Regional Imple-mentation Meetings, on a rotating basis. | _____, ASWSs | Ongoing, In conjunction with PM implementation | In Progress |
|  | ▪ Participation by all field staff at Regional CQI Team meetings on a rotating basis | _____, ASWSs | Ongoing | In Progress |
|  | ▪ Formal, regularly scheduled PDS sessions will take place at all levels, according to agency policy. | _____, ASWSs | May 30, 2015 | Not Started, Full Implementation of PDS System begins mid 2014 |
|  | ▪ Individual, intentional weekly Worker/ Supervisor case staffings consistent with DFCS Policy (Section A) | ASWSs, with oversight by _____, PM Coaches | Ongoing | In Progress |
| Collaborate with local law enforcement to address safety concerns of staff. | ▪ Engage local law enforcement agencies (Jackson Police Department, Hinds Co. Sheriff's Department) by inviting representatives | _____, Regional ASWS | January 2014, continue to invite and include continuously thereafter | Not Started |

DHS
361678

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| | to Regional Implementation Team meetings to establish collaborative working relationship. | | | |

DHS
361679

## JACKSON, HARRISON, & HANCOCK COUNTIES

### Jackson County

According to the Modified Settlement Agreement, Jackson County should have no fewer than 34 caseworkers by the end of Year III Implementation. As of October 2013, there are presently 47 FPWs and FPSs on staff in Jackson County. Responses from focus groups with direct service staff in Jackson County, and reports from the Carve Out Management Team recently brought in to assist, reflect that most of the front line staff in Jackson County are rather inexperienced, relatively new employees. Recently hired ASWSs have utilized the mentoring component of the Level I Clinical Supervisory Training for additional support.  A member of the Performance Development Unit, ███████████ assisted by providing additional On the Job Training (OJT) for the newly hired staff as part of the Carve Out Management Team in Jackson County.  She met with newly hired staff on a weekly basis and accompanied staff on visits and providing feedback to the worker and ASWS.

The Carve Out Management Team has effectively strategized ways to build ASWS support in Jackson County. A request was granted by the Council on Accreditation (COA) that an exception be made for Jackson, Harrison, and Hancock Counties with regard to the standard that ASWSs must possess an advanced degree. The rationale is that there are strong candidates for ASWSs positions who have yet to utilize opportunities to receive an MSW through the previously mentioned university cohorts and Professional Development Scholarship. A copy of this issued waiver is included in the appendix of this document. The intention is to hire them as ASWSs and then to assist them in obtaining an advanced degree in order to be in compliance with the standards set forth. ASWSs in Jackson County are committed and knowledgeable about the work, but need additional training and support in order to retain the predominantly new staff that exists on the front lines.

### Jackson County Action Plan

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment to address staffing needs to achieve full staffing capacity. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and at professional conferences and job fairs. | ███████, ███████, MDHS HR Staff, ███████ | Ongoing, as needed | In Progress |

DHS
361680

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| | ▪ Recruit and hire additional direct service workers to meet full staffing capacity according to MSA requirements. | ████, ASWSs | May 15, 2013 | Completed |
| | ▪ Recruit and hire 2 ASWSs to meet full staffing capacity according to workload standards. | ████, ASWSs | May 15, 2013 | Completed |
| Provide support to ASWSs and newly hired frontline staff. | Provision of extended OJT to newly hired, inexperienced staff, communicate feedback to ASWSs. | ████ | February 2013 | Completed |
| | Utilize Level I Clinical Supervisory Training mentoring component for newly hired ASWSs | ████, UM Mentors | July 1, 2013 | Completed, ongoing |

DHS
361681

37

**Harrison County**

The greatest barrier in Harrison County, according to the Regional Director and Carve Out Management Team, is a lack of qualified staff. According to the Modified Settlement Agreement, Harrison County should have no fewer than 42 caseworkers by the end of Implementation Period III. As of October 2013, there were a total of 85 FPSs and FPWs assigned in Harrison County. The agency recognizes the critical need to recruit experienced and knowledgeable supervisors to prevent turnover of the newly hired staff, and have diligently recruited qualified candidates to fill these positions. Given that a State statute, rather than the MSA and Council on Accreditation requirements mandate that ASWSs be licensed social workers (LMSWs), the Carve Out Management Team, along with the Regional Director, are collaborating with executive agency staff regarding potentially requesting that a waiver be issued for this requirement on a county-specific basis (Harrison and Hancock Counties).  As in Jackson County, an exception to COA requirements which mandate that supervisor positions require and advanced degree was granted by the Council on Accreditation in January 2013. The agency will continue to actively recruit qualified ASWS candidates by utilizing coastal media outlets for advertisements of positions, running an In-House Promotional Opportunity Listing for Harrison County. DFCS will also participate in recruitment events in the Gulf Coast area to attract qualified applicants from local and surrounding areas.

Workload validation strategies are an ongoing process in Harrison County. The agency has worked diligently to try to verify the current workload in Harrison and Hancock Counties for a more accurate assessment of current and ongoing staffing needs, and our accuracy is improving following utilization of desk audits and data validation initiatives. For example, simply by closing cases that should not be open, a listing of pending home studies dropped from 269 to 155 in six weeks' time.  Many factors affect the timeliness of being able to successfully close a case in MACWIS once it has been opened, and the Carve Out Management Teams are working along with the staff to continue to verify the accuracy of the workload data and complete necessary steps to close cases that should not be active in the MACWIS database in order to establish more accurate workload data. DFCS, as a whole, is in the process of utilizing initiatives that will produce more accurate workloads in all counties. Such initiativesinclude the use of desk audits and MACWIS data validation.

The Carve Out Management Team placed in Harrison County noted additional needs of staff with regard to specific training on Termination of Parental Rights procedure and packet assembly. According to a prior caseload review by the Harrison County Carve Out Management Team, there were currently 30 families with multiple children identified to whom TPR has been ordered but not completed. █████████████████ provided training for Harrison County Staff on TPR protocol in December 2012. It is essential that caseworkers be appropriately trained on how to effectively complete TPR packets, as the need to do so is a common requirement in child welfare practice.

DHS
361682

Responses from focus groups with direct service staff and interviews with ASWSs report that judicial engagement has been an issue that is said to affect staff retention in Harrison County. Based on recent assessment and conversations with the Youth Court judge, this issue is greatly improving with the increase of qualified and well-trained staff.  However, DFCS must implement additional strategies for strengthening the relationship between the Youth Court and county staff. According to previous reports by the Carve Out Management Team, a lack of supervision results in staffs' lack of preparedness in court and unfavorable interactions with the Youth Court judge and Court Administrators. Harrison County direct service staff and ASWSs received Advanced Court Improvement Training in early 2013 along with employees throughout the state.  A representative of DFCS has begun to initiate conversations with the judges in order to provide information to the judge regarding the Practice Model as well as the tenets of other DFCS improvement initiatives. As they are scheduled, it would be beneficial to invite and include the Harrison County Youth Court judge and administrators in quarterly Regional Implementation Team meetings, in order to facilitate an effective working relationship and encourage open and useful feedback from the court system.

### Harrison County Action Plan

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Perform targeted recruitment to fill vacant ASWS positions based on workload and number of hired frontline staff. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and other professional conferences. | ██████, ██████, | Ongoing | In Progress |
| | ▪ Request COA exception to requirement that ASWSs require an advanced degree. | ████, ████ | January 2013 | Completed |
| | ▪ Recruit and hire additional ASWSs, based on identified staffing needs. | Regional Director, ████ ████, ████ | Ongoing, Until adequate supervisory capacity is reached | In Progress |

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Provide specific and interactive training on Termination of Parental Rights procedure as identified by county staff as needing further attention. | ▪ Direct service staff will receive training on TPR protocol and packet assembly. | ▅▅▅▅ | December 2012 | Completed |
| Improve agency's interactions/engagement with Youth Court Judge and administrators | ▪ Staff will attend DFCS Court Improvement Training. | DFCS Trainers | March 2013 | Completed |
| | ▪ Invitation and inclusion of Youth Court Judge and administrators in quarterly Regional Implementation Team meetings, as scheduled. | Regional Director, Regional ASWS | Ongoing, in conjunction with PM implementation | Not Started |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired staff, communicate progress/feedback to ASWSs. | ▅▅▅▅ | July 5, 2013 | Completed, ongoing as needed |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring component for newly hired ASWSs. | ▅▅▅, UM Mentors | July 30, 2013 | Completed, ongoing as needed |

DHS
361684

**Hancock County**

Hancock County is currently experiencing the most critical need with regard to staffing and overall efficiency of all of the identified Carve Out Counties. DFCS has begun a targeted recruitment initiative specifically for Hancock County to fill vacant positions as rapidly and effectively as possible with qualified staff. According to Modified Settlement Agreement requirements, Hancock County should have no fewer than 16 caseworkers on staff by the end of Year III Implementation. As of March 2013, there are 15 caseworkers in Harrison County. The Director of Workforce Development and Director of MDHS Human Resources will continue to vehemently work to recruit for available positions in order to provide Hancock with qualified applicants to build group of staff that is equipped to take on the challenges that are specific to working in Hancock County.

Advertisements for available positions at all levels are currently being featured on various employment search engines utilized by Gulf Coast residents, as well as on employment listservs received by graduates of surrounding colleges and universities. The large scale Annual Gulf Coast Social Work Conference in January 2013 provided an optimal recruitment opportunity for the Carve Out counties. The Southern Region Military and Civilian Job Fair, part of the Governor's Job Fair Network will be an additional recruitment opportunity and will take place April 9, 2013. The Director of Workforce Development along with MDHS Human Resources representatives will continue to identify and attend similar recruitment opportunities on an ongoing basis.

Court and judicial engagement has been said to be directly correlated with staff turnover in Hancock County. Given the extreme demands of the current workload on existing staff, workers are not prepared for court proceedings or knowledgeable of case information. Furthermore, it is the concern of the agency that Youth Court orders and practices are in direct conflict with agency policy and practices. Over the past year, a legal representative of DFCS has been in regular conversation with the Youth Court judge regarding issues with court performance. While previous interactions with the judge have gone favorably, DFCS and the Attorney General's (AG) Office have further collaborated to develop and implement targeted strategies to remediate the current issues. These strategies can be further reviewed in the DFCS Youth Court Strategies Plan, available upon request. A staff attorney provided by the AG's office, ▮▮▮▮▮▮▮, has been placed in Hancock County on a full-time, permanent basis to monitor court proceedings and interactions between agency staff and court personnel, as well as to help prepare staff for upcoming court proceedings. As similarly indicated in the Harrison County section, it is important to engage the Hancock County Youth Court judge in the improvement efforts currently being implemented throughout DFCS. Inclusion and education of the judge about agency practices, policy, and procedures through Regional Implementation Team Meetings, when scheduled, are an essential part of establishing a good working relationship with the Youth Court.

DHS
361685

Based on responses from focus groups with Hancock County direct service staff and ASWSs, as well as reports from the Carve Out Management Team and Regional Director, the physical working environment of the Hancock County DFCS office has previously played a significant role in the ability to recruit and retain quality staff. At the time of these focus groups, staff were housed in trailers with inadequate MACWIS/internet capability and a myriad of other issues that contributed to the quality of the working environment. The devastation that resulted from Hurricane Katrina in 2005 left Hancock County with limited options for suitable office space. The previous service environment, which were small, portable trailers, provided little to no consideration to confidentiality of interactions with staff or individual work space. In response to these issues, MDHS Executive Staff worked in collaboration with Hancock County officials to secure new office space for employees in this county. This newly acquired space currently meets the needs of the influx of newly hired staff, and employees began working in this new building in September of 2013.

Additionally, the influx of new staff resulting from the efforts of targeted recruitment was met with a strategic plan to efficiently and expeditiously provide training to newly hired direct service staff and ASWSs. The Director of Professional Development worked diligently with the Carve Out Management Team to accommodate the training needs of new hires in order to prepare them for casework as soon as possible. On the Job Training (OJT) was also provided to new Hancock County staff by a representative of the Professional Development Unit, along with an employee's respective ASWS. Professional Development Staff were also made available to provide additional support and guidance to new staff after the completion of OJT as they became accustomed to agency procedure.

## Hancock County Action Plan

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Targeted recruitment initiative to fill vacant frontline and ASWS positions as rapidly, yet efficiently, as possible. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, professional conference, and job fairs. | ████████, MDHS HR Staff, ████████ ████████ | Ongoing, Until full staff capacity is reached | In Progress |

| General Remedy | Specific Tasks | Responsible Parties | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| Provide expedited Pre-Service and Clinical Supervisory Training to newly hired frontline staff and ASWSs | ▪ Make arrangements to accommodate the influx of newly hired ASWSs and frontline staff, providing expedited Pre-Service and Clinical Supervisory Trainings. | ▬▬▬▬ | Ongoing, as needed | In Progress |
| Collaborate with key stakeholders to address physical working conditions in Hancock County | ▪ Continue negotiations with Hancock County Board of Supervisors to address physical working conditions for staff | ▬▬▬▬ State Implementation Team | September 2013 | Complete |
|  | ▪ Seek the assistance of MACWIS support staff to address connectivity issues as | ▬▬▬ ASWSs | As needed | In Progress |
| Improve interactions with Youth Court Judge and administrators. | ▪ Staff will receive Advanced Court Improvement Training | DFCS Trainers | 03/30/2013 | Completed |
|  | ▪ Designation of a permanent, full-time staff attorney from the Attorney General's Office to provide support to staff in Youth Court preparation and proceedings. | Attorney General's Office, MDHS SIT Team | 02/15/2013 | Completed |
|  | ▪ Inclusion of Youth Court Judge and court administrators in Regional Implementation Team meetings, as scheduled. | RD, Regional ASWS | Ongoing, In conjunction with PM implementation | In Progress |

DHS
361687

# REFERENCES

Flower, C., McDonald, J., & Sumski, M. (2005). Review of turnover in Milwaukee County private agency welfare ongoing case management staff. *The Consortium of Community, Agency, and University Partnerships to Improve Public Child Welfare*.

*Olivia Y., et al. v. Phil Bryant, as Governor of the State of Mississippi, et al.* - Modified Mississippi Settlement Agreement and Reform Plan (July 6, 2012)

Center for the Support of Families. (2009). *Mississippi Child Welfare Practice Model Final Report*. Silver Spring, MD: The Center for the Support of Families.

Council on Accreditation Public Agency Standards, 8th ed. (2008) As retrieved from www.coastandards.org.

DHS
361688

**MDHS Division of Family & Children's Services**

**Workforce Development Plan**

**Action Plan Matrix**

| General Remedy | Specific Tasks | Responsible Party | Anticipated Completion Date | Status/Notes |
|---|---|---|---|---|
| **STAFF RECRUITMENT** | | | | |
| Make upgrades to the hiring process to improve timeliness and efficiency in the recruitment of staff. | ▪ Reorganization of the DFCS Personnel Unit with new leadership. | ▬▬▬ | 07/2012 | Completed |
| | ▪ Two new staff members will be hired/transferred into the DFCS Personnel Unit. | ▬▬ | 07/2012 | Completed |
| | ▪ The Deputy Director of MDHS will meet with the DFCS Personnel Unit supervisor to determine availability of PINS for requested personnel transactions. | ▬▬▬ | Ongoing, Bi-weekly | In Progress |
| | ▪ Communicate with RDs regarding reasons for delays in personnel transactions, and tips for expediting personnel transactions. | ▬▬ | 09/2012 | Completed |
| | ▪ Communicate with MS State Personnel Board regarding applications resulting from perpetual advertisements. | ▬▬ | Ongoing | Ongoing, will request periodically as needed |

DHS
361689

| STAFF RETENTION & DEVELOPMENT | | | | |
|---|---|---|---|---|
| Create an accurate portrayal of child welfare work for potential applicants utilizing resources from the National Child Welfare Workforce Institute and DFCS Professional Development Unit. | ▪ Temporarily use Realistic Job Profile (RJP) videos developed by other states during recruitment events. | ▬▬▬▬▬ | 07/15/2013 | In Progress, ongoing |
| | ▪ Collaborate with the DFCS Professional Development Unit and University of Mississippi partners to develop an RJP video that is specific to child welfare practice in Mississippi. | ▬▬▬▬, University Partners | 07/01/2014 | In Progress |
| Strengthen ASWS Development and Support | ▪ Development of Clinical Supervisory Training | ▬▬▬▬, University of Mississippi Consultants, Center for The Support of Families | 12/31/2011 | Completed |
| | ▪ Newly hired or promoted ASWSs will receive Clinical Supervisory Training | ▬▬▬, Regional Directors | Ongoing | In Progress |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring Component | ▬▬, UM Mentors | Ongoing | In Progress |
| Collaborate with county administrators and officials to improve the physical office space in counties that have reported an unsatisfactory working environment. | ▪ Regional Directors will meet with county and regional officials as issues arise | DFCS Regional Directors | Ongoing | In Progress, Continuous |
| | ▪ Difficulty in achieving desired results on a county level will be reported to the Statewide Imple-mentation Team for further action. | DFCS Regional Directors, ▬▬ ▬▬▬▬▬ | As deemed necessary | In Progress (in some regions) |

DHS
361690

| | | | | |
|---|---|---|---|---|
| Development and Implementation of Strategies for Youth Court Improvement | ▪ Creation of a DFCS Youth Court Strategies Plan | ███████, Center for the Support of Families (CSF) | 07/08/2013 | Complete |
| Comparative salary analysis for negotiations regarding monetary compensation for agency staff | ▪ Conduct an analysis of salaries among agencies in MS with whom we compete to recruit similarly qualified job candidates, present findings to SIT. | ███████ | Ongoing, annually beginning January 2014 | In Progress |
| | ▪ The State Implementation Team will take under advisement in the recommendations in requests and negotiations with the State Personnel Board regarding monetary compensation. | State Implementation Team | Ongoing | In Progress |
| Provide notification of staff regarding opportunities for Continued Education | ▪ Utilize the DFCS Connection website to feature listings of trainings, workshops, and conferences scheduled throughout the State, as well as online resources. | ███████ | 07/15/2013, and ongoing | Completed, In Progress |

47

DHS
361691

| HINDS COUNTY | | | | |
|---|---|---|---|---|
| Perform targeted recruitment efforts In order to hire identified number of needed front line staff and ASWSs. | ▪ Screen pending applications discovered from perpetual advertisement and schedule interviews for qualified applicants. | ████████, ASWSs, ████████, ████████ | 01/2013 | Completed, will continue to monitor for incoming applications |
| | ▪ Make recommendations for new hires; submit to DFCS Personnel Unit, complete hiring process for recommended applicants. | ████████, ASWSs, ████████ | 02/2013 | Completed, ongoing |
| | ▪ Actively recruit via employment websites, MS and surrounding university listservs and local employment events for qualified ASWS candidates. | ████████, MDHS HR Staff, ████████ | 07/30/2013 | In Progress |
| Provide expedited Pre-Service Training of new hires | ▪ Arrange for additional Pre-Service Trainings to be provided to accommodate the influx of newly hired staff. | ████████ | 02/2013 | Completed |
| Conduct training on PDS procedures and usage for ASWSs | ▪ Attendance of Regional Director and Hinds ASWSs in PDS Training | ████████ ASWSs, MS State Personnel Board | 12/31/2013 | In Progress |
| Improve interactions with Hinds County Youth Court | ▪ Conduct Court Improvement Training for Hinds County direct service staff and ASWSs | ████████ Hinds County Youth Court | 02/2013 | Completed |
| | ▪ Inclusion of Hinds County Youth Court Judge in Court Improvement Training, and in follow-up conversations regarding court improvement | ████████, ████████ | 05/2013 | Completed |

48

DHS
361692

| | | | | |
|---|---|---|---|---|
| Facilitate effective communication and team building among Hinds County staff at all levels | ▪ Attendance by all field staff at Regional Implementation Meetings, on a rotating basis. | ██████, ASWSs | Ongoing, In conjunction with PM implementation | In Progress |
| | ▪ Participation by all field staff at Regional CQI Team meetings on a rotating basis | ██████, ASWSs | Ongoing | In Progress |
| | ▪ Formal, regularly scheduled PDS sessions will take place at all levels, according to agency policy. | ██████, ASWSs | 05/30/2015 | Not Started, Full Implementation of PDS System begins mid 2014 |
| | ▪ Individual, intentional weekly Worker/ Supervisor case staffings consistent with DFCS Policy (Section A) | ASWSs, with oversight by ██████, PM Coaches | Ongoing | In Progress |
| Collaborate with local law enforcement to address safety concerns of staff. | ▪ Engage local law enforcement agencies (Jackson Police Department, Hinds Co. Sheriff's Department) by inviting representatives to the first 2013 Regional Implementation Team meetings to establish collaborative working relationship. | Regional ASWS | January 2014, continue to invite and include continuously thereafter | Not Started |

DHS
361693

| JACKSON COUNTY | | | | |
|---|---|---|---|---|
| Perform targeted recruitment to address staffing needs to achieve full staffing capacity. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and at professional conferences and job fairs. | ██████, ██████, ██████, MDHS HR Staff, ██████ | Ongoing, as needed | In Progress |
| | ▪ Recruit and hire additional direct service workers to meet full staffing capacity according to MSA requirements. | ██████, ASWSs | 05/15/2013 | Completed |
| | ▪ Recruit and hire 2 ASWSs to meet full staffing capacity according to workload standards | ██████ ASWSs | 05/15/2013 | Completed |
| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired, inexperienced staff, communicate feedback to ASWSs. | ██████ | February 2013 | Completed |
| | ▪ Utilize Level I Clinical Supervisory Training mentoring component for newly hired ASWSs | ██████, UM Mentors | 07/01/2013 | Completed, ongoing |

DHS
361694

| HARRISON COUNTY | | | | |
|---|---|---|---|---|
| Perform targeted recruitment to fill vacant ASWS positions based on workload and number of hired frontline staff. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, and other professional conferences. | ▬▬▬, ▬▬▬, ▬▬▬ | Ongoing | In Progress |
| | ▪ Request COA exception to requirement that ASWSs require an advanced degree. | ▬▬▬ | January 2013 | Completed |
| | ▪ Recruit and hire additional ASWSs, based on identified staffing needs. | Regional Director, ▬▬▬, ▬▬▬ | Ongoing, until adequate supervisory capacity is reached | In Progress |
| Provide specific and interactive training on Termination of Parental Rights procedure as identified by county staff as needing further attention. | ▪ Direct service staff will receive training on TPR protocol and packet assembly. | ▬▬▬ | December 2012 | Completed |
| Improve agency's interactions/engagement with Youth Court Judge and administrators | ▪ Staff will attend DFCS Court Improvement Training. | DFCS Trainers | March 2013 | Completed |
| | ▪ Invitation and inclusion of Youth Court Judge and administrators in quarterly Regional Implementation Team meetings, as scheduled. | Regional Director, Regional ASWS | Ongoing, in conjunction with PM implementation | Not Started |

DHS 361695

| Provide support to ASWSs and newly hired frontline staff. | ▪ Provision of extended OJT to newly hired staff, communicate progress/feedback to ASWSs. | ███████ | 07/05/2013 | Completed, ongoing as needed |
| | ▪ Utilize Level I Clinical Supervisory Training Mentoring component for newly hired ASWSs. | ████████ ██████ ████, UM Mentors | 07/30/2013 | Completed, Ongoing as needed |
| **HANCOCK COUNTY** | | | | |
| Targeted recruitment initiative to fill vacant frontline and ASWS positions as rapidly, yet efficiently, as possible. | ▪ Actively recruit via employment websites, MS and surrounding university listservs, professional conference, and job fairs. | ███████, MDHS HR Staff, ████████ ████████ | Ongoing, Until full staff capacity is reached | In Progress |
| Provide expedited Pre-Service and Clinical Supervisory Training to newly hired frontline staff and ASWSs | ▪ Make arrangements to accommodate the influx of newly hired ASWSs and frontline staff, providing expedited Pre-Service and Clinical Supervisory Trainings. | ███████ █████ ████ | Until full staff capacity is reached, as determined based on recruitment of staff thereafter | In Progress |
| Collaborate with key stakeholders to address physical working conditions in Hancock County | ▪ Continue negotiations with Hancock County Board of Supervisors to address physical working conditions for staff | ██████ ███, State Implementation Team | September 2013 | Completed |
| | ▪ Seek the assistance of MACWIS support staff to address connectivity issues as needed. | ███████, ASWSs | As needed | In Progress |

DHS
361696

| Improve interactions with Youth Court Judge and administrators. | ▪ Staff will receive Advanced Court Improvement Training | DFCS Trainers | 03/30/2013 | Completed |
| | ▪ Designation of a permanent, full-time staff attorney from the Attorney General's Office to provide support to staff in Youth Court preparation and proceedings. | Attorney General's Office, MDHS SIT Team | 02/15/2013 | Completed |
| | ▪ Inclusion of Youth Court Judge and court administrators in Regional Implementation Team meetings, as scheduled. | RD, Regional ASWS | Ongoing, In conjunction with PM implementation | Not Started |

DHS
361697

# APPENDIX

DHS
361698

## Appendix A

## 2014 Appropriation to the MS Department of Human Services

## (HB 1668)

MISSISSIPPI LEGISLATURE                    REGULAR SESSION 2013

By:  Representatives Frierson, Mims, Currie,    To:  Appropriation
Banks, Barker, Clarke, Dickson, Howell,
Mettetal, Read, Warren, Watson

DHS
361699

HOUSE BILL NO. 1668 (As Sent to Governor)

1  AN ACT MAKING AN APPROPRIATION TO THE DEPARTMENT OF HUMAN
2  SERVICES; AND FOR RELATED PURPOSES, FOR THE FISCAL YEAR 2014.

3  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

4  **SECTION 1.** The following sum, or so much thereof as may be

5  necessary, is hereby appropriated out of any money in the State

6  General Fund not otherwise appropriated, to the Department of

7  Human Services for the fiscal year beginning July 1, 2013, and

8  ending June 30, 2014..........................$  144,771,847.00.

9  **SECTION 2.** The following sum, or so much thereof as may be

10  necessary, is hereby appropriated out of any money in any special

11  fund in the State Treasury to the credit of the Department of

12  Human Services which is comprised of special source funds

13  collected by or otherwise available to the department for the

14  support of the various divisions of the department, for the

15  purpose of defraying the expenses of the department for the fiscal

16  year beginning July 1, 2013, and ending June 30, 2014............

17  ..........................................$ 1,344,711,976.00.

18  **SECTION 3.** None of the funds appropriated by this act shall

19  be expended for any purpose that is not actually required or

20  necessary for performing any of the powers or duties of the

21  Department of Human Services that are authorized by the

22  Mississippi Constitution of 1890, state or federal law, or rules

23  or regulations that implement state or federal law.

24  **SECTION 4.** Of the funds appropriated under the provisions of

25  Sections 1 and 2, the following positions are authorized:

26  AUTHORIZED POSITIONS:

H. B. No. 1668     **\*HR40/A651SG\***          ~ OFFICIAL ~
13/HR40/A651SG
PAGE 2 (RM\DW\BD)                                              DHS
                                                              361700

```
27      Permanent:    Full Time.............   2,989

28                    Part Time.............       1

29      Time-Limited: Full Time.............     826

30                    Part Time.............       0
```

31      With the funds herein appropriated, it is the intention of

32  the Legislature that it shall be the agency's responsibility to

33  make certain that funds required to be appropriated for "Personal

34  Services" for Fiscal Year 2015 do not exceed Fiscal Year 2014

35  funds appropriated for that purpose, unless programs or positions

36  are added to the agency's Fiscal Year 2014 budget by the

37  Mississippi Legislature.  Based on data provided by the

38  Legislative Budget Office, the State Personnel Board shall

39  determine and publish the projected annual cost to fully fund all

40  appropriated positions in compliance with the provisions of this

41  act.  It shall be the responsibility of the agency head to ensure

42  that no single personnel action increases this projected annual

43   cost and/or the Fiscal Year 2014 appropriations for "Personal

44   Services" when annualized, with the exception of escalated funds.

45   If, at the time the agency takes any action to change "Personal

46   Services," the State Personnel Board determines that the agency

47   has taken an action which would cause the agency to exceed this

48   projected annual cost or the Fiscal Year 2014 "Personal Services"

49   appropriated level, when annualized, then only those actions which

50   reduce the projected annual cost and/or the appropriation

51   requirement will be processed by the State Personnel Board until

52   such time as the requirements of this provision are met.

53          Unless otherwise authorized in this act, no state agency

54   shall take any action to promote or otherwise award salary

55   increases through reallocation, reclassification, realignment,

56   educational benchmark, career ladder, equity salary adjustment, or

57   any other means to increase salaries of employees or positions

58   unless specifically exempted by the following conditions:  the

59   award of teacher salary increments; the advancement of a

60   trainee/cadet to the next level of a bona fide career ladder; the

61   award of an educational benchmark for the attainment of a

62   Certified Public Accountant License or higher level professional

63   certification; the immediate replacement of a departing employee

64   with an employee from within state service at a salary level of

65   the departing employee or the FY2014 promotional formula,

66   whichever is less; the emergency appointment of nurses,

67   pharmacists or other health care and child protection

68    professionals at a salary to be determined by the State Personnel
69    Board or any other requested action of the agency that has been
70    specifically authorized by the Legislature.

71        Any transfers or escalations shall be made in accordance with
72    the terms, conditions and procedures established by law or
73    allowable under the terms set forth within this act.  The State
74    Personnel Board shall not escalate positions without written
75    approval from the Department of Finance and Administration.  The
76    Department of Finance and Administration shall not provide written
77    approval to escalate any funds for salaries and/or positions
78    without proof of availability of new or additional funds above the
79    appropriated level.

80        No general funds authorized to be expended herein shall be
81    used to replace federal funds and/or other special funds which are
82    being used for salaries authorized under the provisions of this
83    act and which are withdrawn and no longer available.

84        Notwithstanding the above language in this section, the
85    Department of Human Services may restructure and reorganize the
86    Division of Family and Children's Services in order to satisfy the
87    requirements outlined in the settlement agreement, judicial
88    mandates or court orders of the Olivia Y lawsuit.

89        **SECTION 5.**  It is the intention of the Legislature that the
90    Department of Human Services shall maintain complete accounting
91    and personnel records related to the expenditure of all funds
92    appropriated under this act and that such records shall be in the

93    same format and level of detail as maintained for Fiscal Year
94    2013.  It is further the intention of the Legislature that the
95    agency's budget request for Fiscal Year 2015 shall be submitted to
96    the Joint Legislative Budget Committee in a format and level of
97    detail comparable to the format and level of detail provided
98    during the Fiscal Year 2014 budget request process.
99    **SECTION 6.**  Of the funds appropriated in Section 2, One
100   Million Dollars ($1,000,000.00) shall be transferred to the
101   Department of Health, Child Care Licensure Program from the Child
102   Care Development Fund or other appropriate special fund.  These
103   funds are to be transferred to the Board of Health no later than
104   July 31, 2013.  The Department of Health shall make a complete
105   accounting to the Department of Human Services detailing the uses
106   of these funds in accordance with federal and state regulations.
107   **SECTION 7.**  None of the above funds shall be used to hire
108   employees under Personal Service Contracts except for Personal
109   Service Contracts for the Division of Early Childhood Care and
110   Development - Child Care and Division of Early Childhood Care and
111   Development - Child Care Managers.
112   **SECTION 8.**  The department is authorized to escalate, budget
113   and expend special and/or federal funds received from any source
114   to carry out the duties of the department in an amount not to
115   exceed Twenty Million Dollars ($20,000,000.00).  Such funds are to
116   be escalated in accordance with procedures for federal fund
117   escalations as established in Section 27-104-21, Mississippi Code

118  of 1972, and expended for the purposes of performing such duties
119  as set forth by law in accordance with applicable rules and
120  regulations of the State Fiscal Officer.

121      **SECTION 9.**  It is the intention of the Legislature that
122  whenever two (2) or more bids are received by this agency for the
123  purchase of commodities or equipment, and whenever all things
124  stated in such received bids are equal with respect to price,
125  quality and service, the Mississippi Industries for the Blind
126  shall be given preference.  A similar preference shall be given to
127  the Mississippi Industries for the Blind whenever purchases are
128  made without competitive bids.

129      **SECTION 10.**  The Department of Human Services is authorized
130  to expend available funds on technology or equipment upgrades or
131  replacements when it will generate savings through efficiency or
132  when the savings generated from such upgrades or replacements
133  exceed expenditures thereof.

134      **SECTION 11.**  It is the intention of the Legislature that none
135  of the funds provided herein shall be used to pay certain
136  utilities for state furnished housing for any employees.  Such
137  utilities shall include electricity, natural gas, butane, propane,
138  cable and phone services.  Where actual cost cannot be determined,
139  the agency shall be required to provide meters to be in compliance
140  with legislative intent.  Such state furnished housing shall
141  include single-family and multi-family residences but shall not

142  include any dormitory residences.  Allowances for such utilities
143  shall be prohibited.
144      SECTION 12.  In compliance with the "Mississippi Performance
145  Budget and Strategic Planning Act of 1994," it is the intent of
146  the Legislature that the funds provided herein shall be utilized
147  in the most efficient and effective manner possible to achieve the
148  intended mission of this agency.  Based on the funding authorized,
149  this agency shall make every effort to attain the targeted
150  performance measures provided below:

| 151 | | FY2014 |
|---|---|---|
| 152 | Performance Measures | Target |
| 153 | Support Services | |
| 154 | Investigative Audits (Actions) | 60 |
| 155 | Special Investigations | 51 |
| 156 | Fraud Investigations (Actions) | 796 |
| 157 | Administrative Hearings | 2,500 |
| 158 | Subgrant Monitoring Visits | 400 |
| 159 | Aging & Adult Services | |
| 160 | In-home Services (Persons) | 17,391 |
| 161 | Community Based Services (Persons) | 15,118 |
| 162 | Congregate Meals (Number of Meals) | 4,046 |
| 163 | Home-delivered Meals (Meals Delivered) | 2,238,296 |
| 164 | Boys & Girls Clubs | |
| 165 | TANF Funds Provided to Boys | |
| 166 | & Girls Clubs ($) | 0.00 |

| | | |
|---|---|---|
| 167 | Child Support Enforcement | |
| 168 | Number of Paternities Established | 29,000 |
| 169 | Number of Obligations Established | 11,000 |
| 170 | Total Collections ($) | 334,027,500.00 |
| 171 | Absent Parents Located (Individuals) | 51,352 |
| 172 | Community Services | |
| 173 | Elderly Served by CSGB & LIHEAP | 14,068 |
| 174 | Number of Handicapped Served | 15,592 |
| 175 | Number of Household Achieving | 1,243 |
| 176 | Households Stabilized | 18,727 |
| 177 | Number of Households Weatherized | 687 |
| 178 | Early Childhood Care & Dev | |
| 179 | Children & Youth Served (CCDGB) | 34,395 |
| 180 | Assistance Payments | |
| 181 | Dollar Amount of Assistance ($) | 1,700,000.00 |
| 182 | Food Assistance | |
| 183 | Average Monthly Households | 316,000 |
| 184 | Supplemental Nutrition Assistance | |
| 185 | Program ($) | 1,000,000,000.00 |
| 186 | Tanf Work Program | |
| 187 | TANF/Medicaid Households per Month | 11,250 |
| 188 | Work Program (Persons Served) | 5,100 |
| 189 | TANF Participation Rate (%) | 50.00 |
| 190 | Persons Employed | 1,250 |
| 191 | Family & Children's Services | |

| 192 | Children in Agency Custody | 3,560 |
| 193 | Abuse & Neglect Investigations | 22,008 |
| 194 | Family Preservation - Child (Families) | 120 |
| 195 | Number of Licensed Foster Homes | 1,600 |
| 196 | Number of Finalized Adoptions | 319 |
| 197 | Social Services Block Grant | |
| 198 | Clients Served, Family & Child Services | 34,107 |
| 199 | Clients Served, Youth Services | 12,000 |
| 200 | Clients Served, Aging & Adult Services | 11,837 |
| 201 | Youth Services | |
| 202 | Community Services (Children Served) | 12,000 |
| 203 | Institutional Component (Children Served) | 652 |
| 204 | Number of Volunteers - Community Services | 114 |
| 205 | Children Placed in Alternative Placement | 200 |
| 206 | Children Diverted from Institutional (%) | 60.00 |

207    A reporting of the degree to which the performance targets
208 set above have been or are being achieved shall be provided in the
209 agency's budget request submitted to the Joint Legislative Budget
210 Committee for Fiscal Year 2015.

211    **SECTION 13.**  It is the intent of the Legislature that the
212 Department of Human Services, Division of Child Support
213 Enforcement, make a concentrated effort to increase collections of
214 past due child support payments.  On or before January 1, 2014,
215 the Executive Director of the Department of Human Services shall
216 submit a report to the Legislative Budget Office detailing

217  year-to-date performance measures in the Child Support Enforcement
218  Program compared with the prior year.

219    **SECTION 14.**  It is the intention of the Legislature that the
220  Department of Human Services shall have the authority to spend
221  such additional funds as it shall receive from the federal
222  government in incentives or the federal match on those incentives
223  for the purpose of child support enforcement.

224    **SECTION 15.**  Of the funds appropriated in Section 1, Two
225  Hundred Fifty Thousand Dollars ($250,000.00) shall be transferred
226  to the Juvenile Facility Monitoring Unit at the Department of
227  Public Safety no later than July 31, 2013.

228    **SECTION 16.**  Of the funds appropriated herein, an additional
229  One Million Dollars ($1,000,000.00) of Special Funds to be
230  transferred from the Division of Medicaid, are provided to fund
231  the Home Delivered Meals Program in the Aging and Adult Services
232  Division.

233    **SECTION 17.**  Of the funds provided in Section 1, an amount
234  not to exceed One Hundred Thousand Dollars ($100,000.00) is
235  provided to fund the Special Olympics Program.

236    **SECTION 18.**  The money herein appropriated shall be paid by
237  the State Treasurer out of any money in the State Treasury to the
238  credit of the proper fund or funds as set forth in this act, upon
239  warrants issued by the State Fiscal Officer; and the State Fiscal
240  Officer shall issue his warrants upon requisitions signed by the
241  proper person, officer or officers, in the manner provided by law.

242 **SECTION 19.**    This act shall take effect and be in force from and
243 after July 1, 2013.

DHS
361710

**Appendix B**
**2015 MDHS State Fiscal Year Budget Proposal**



DHS
361711

## SFY 2015 MDHS BUDGET REQUEST

### NO INCREASE REQUESTED IN STATE FUNDING FROM PRIOR YEAR FOR THE DIVISIONS OF:

Community Services
Early Childhood Care and Development
Field Operations (Economic Assistance/Child Support)
Family Foundation and Support
Social Services Block Grant
Youth Services

### INCREASE REQUESTED IN STATE FUNDING FROM PRIOR YEAR FOR THE DIVISIONS OF:

*Family and Children's Services: $6.9M*
- $6.9 million additional funding requested to address requirements of the Olivia Y. lawsuit settlement.

  | | |
  |---|---|
  | $6.7M | For improvements to the Mississippi Automated Child Welfare Information System (MACWIS) |
  | $ .2M | For roll out of the Child Welfare Practice Model |
  | $6.9M | Total increase requested related to the Olivia Y. lawsuit |

*Aging and Adult Services: $1.1M*
- $1.1 million to double the size of the Adult Protective Services Unit.

  | | |
  |---|---|
  | $ .9M | For Salaries, Fringes and Travel |
  | $ .2M | For Contractual, Commodities and Equipment |
  | $1.1M | Total increase requested related to the Adult Protective Services Unit |

*Support Services: $.2M*
- $.2 million for personnel costs in Information Technology, Human Resources and Accounting.

  | | |
  |---|---|
  | $ .2M | For Salaries, Fringes and Equipment |

  **$ 8.2M  TOTAL INCREASE FOR SFY 2015**

SFY 2014 – $144.7M
**SFY 2015 – $152.9M**

### ADDITIONAL REQUESTS:

- Lump sum budget authority for the agency.
- Transfer in Special Funds spending authority in Field Operations and Early Childhood Care and Development to address specific needs of county/regional director restructure and biometric contract respectively. Authority only, no additional cost.

DHS
361712

- Authority to add 58 PINs in Family and Children's Services at no additional cost.

DHS
361713



## MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

**Recent accomplishments and highlights from the Mississippi Department of Human Services include:**

- The Division of Field Operations achieved a Temporary Assistance for Needy Families (TANF) Participation Rate for FFY 2010 of 66.3 percent, ranking third in the nation. Mississippi was also a high performer in the Supplemental Nutrition Assistance Program (SNAP) ranking 10th in the nation in the area of Payment Accuracy with a 1.84 percent error rate and sixth in the nation in the new measure of Quality Control Case and Procedural Error Rate.

- The Division of Family and Children's Services continues to make progress as the agency enters Year Four of the Modified Settlement Agreement, delivering services to protect children from harm and to help them reach their goal of reunification with their families, or when that is not possible, finding a loving adoptive family.

- The Division of Aging and Adult Services is working to protect vulnerable adults and provide resources which help seniors live independently in their homes.

- The Division of Youth Services has successfully complied with 72 of the original 74 areas of noncompliance in the Oakley Consent Decree and serves more than 98 percent of adjudicated youth in community-based programs deterring them from assignment to institutions.

- The Division of Early Childhood Care and Development has received national acclaim for their innovative programs that are working to ensure a quality experience for children in both licensed care centers or in their homes.

- The Division of Family Foundation and Support is actively promoting the Fatherhood Initiative and providing support for the Healthy Teens for a Better Mississippi Initiative which has helped to lower teen birth rates in Mississippi from 65.6 births per 1,000 in 2008 to 46 per 1,000 in 2012.

- The Division of Community Services continues to help the elderly and disabled with their energy needs and support local community action agencies in their efforts to provide case management services to needy families.

- Agency Mission Statement: "To provide services for people in need by optimizing all available resources to sustain the family unit and to encourage traditional family values thereby promoting self-sufficiency and personal responsibility for all Mississippians."

- Agency Core Values:
    - Integrity
    - Excellent Program Delivery
    - Self-Development
    - Outstanding Customer Service

## CHALLENGES FACING MDHS

Challenges facing the Mississippi Department of Human Services:

- Reauthorization of major enabling legislation on the federal level including the:
  - o  Farm Bill (SNAP).
  - o  Older Americans Act (OAA).
  - o  Workforce Investment Act (WIA).
  - o  Low Income Home Energy Assistance Program (LIHEAP).
  - o  Community Services Block Grant (CSBG).

- Sequestration exempts SNAP, TANF and IV-E Child Welfare but applies to:
  - o  Social Services Block Grant (SSBG), CSBG, LIHEAP, IV-B Child Welfare, Title III OAA, and Child Care Development Fund (CCDF) Discretionary funds.
  - o  Last year, the agency absorbed cuts in the range of 5 to 6 percent from sequestration. This year, without congressional action, proposed sequestration cuts of 17 to 22 percent could cause a significant reduction in services to children and seniors.

## • CONTACT INFORMATION

- • Richard A. Berry
- • MDHS Executive Director
- • Office: 601-359-4457
- • Email: richard.berry@mdhs.ms.gov
- • Website: www.mdhs.state.ms.us



-
-

- The mission of the Mississippi Department of Human Services is to provide services for people in need by optimizing all available resources to sustain the family unit and encourage traditional family values thereby promoting self-sufficiency and personal responsibility for all Mississippians.

Appendix C
**Council on Accreditation PA-ASE 4**



# Administrative and Service Environment

### Purpose

**The agency's administrative and service environments are respectful, caring, safe, and accessible, and contribute to agency productivity and effective service delivery.**

## (FOC) PA-ASE 4: Facility Maintenance

All facilities in which the agency operates are properly maintained through:

a. regular inspections;
b. preventive maintenance by a qualified professional;
c. a monthly review of the physical plant's heating, fire extinguishers, fire safety, lighting, and other systems;
d. a review of vehicle safety inspections;
e. installation of window guards, where necessary; and
f. quick responses to emergency maintenance issues and potentially hazardous conditions.

**Related:** PA-RPM 2.02, PA-ECE 4.04, PA-ECE 4.15, PA-YD 9.03, PA-YD 9.07, PA-YD 9.08, PA-JJR 12, PA-JJR 15.03

**Interpretation:** *"Emergency maintenance issues" include: overflowing toilets, flooded basements, defective heating systems, and other situations that can damage property, pose a threat to clients, or interfere with service delivery.*

**Interpretation:** *"Hazardous conditions" include: uncovered electrical outlets, improper storage of cleaning supplies and other hazardous materials, unsecured floor coverings or equipment, stairs without handrails, harmful water temperatures, inadequate lighting, ventilation and temperature, unscreened areas or unmarked glass doors, and broken or malfunctioning electrical appliances, space heaters, kitchen applicances, and radios and unsafe objects by those who may be vulnerable.*

**Interpretation:** *The monthly review is typically a facility walk-through with a check list to verify that systems are functional, fire extinguishers are charged, etc.*

**Interpretation:** *Some or all of the above activities may be conducted by the landlord if the agency is a tenant in all its facilities. In such instances,*

*the agency must be able to demonstrate that it monitors and documents the completion of elements (a) through (f) to provide a safe environment for people to work and receive services.*

**Note:** *Please see* <u>*Facility Observation Checklist - Public*</u> *for additional assistance with this standard.*

<u>**Table of Evidence**</u>

**Self-Study Evidence**

- Facility maintenance procedures

**On-Site Evidence**

- Maintenance inspection reports

**On-Site Activities**

- Interview:
  a. Facility management
- Observe facility

**Appendix D**

**MDHS Administrative Policy 45 (AP-45), Serious Incident Reporting**

# OFFICE OF EXECUTIVE DIRECTOR

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

## POLICIES

| MDHS- ADMINISTRATIVE POLICY | |
|---|---|
| Effective Date: February 14, 2005 | AP-45 |

SUBJECT:  Create a standardized form and process for reporting "Serious Incidents" within the Mississippi Department of Human Services.

PURPOSE:  This policy is created to insure compliance with the proper processes for reporting "serious incidents" within the Mississippi Department of Human Services.

ACTION:  Division/Office Directors shall ensure dissemination of this policy to applicable staff.

APPLICATION:  This policy is applicable to all supervisory employees of the Mississippi Department of. . an Services.

DUPLICATION:  This policy maybe duplicated.

CONTACT:  Deputy Director for Administration

EXCEPTIONS:  None.

EFFECT ON OTHER DIRECTNES:  None.

Distribution:
    All Supervisory Employees
    MDHS Deputy Directors
    MDHS Division Directors

Date: 2/3/05

Executive Director

DHS
361718

**AP-45**
**Issued: February 14, 2005**



**Definitions**

Incidents:

Serious − any significant event occurring on or off of department property which involves department employees and/or the public and has a direct impact on the department, the public or department assets.

Accident with injury − any accident involving an employee, visitor, or client who requires first aid treatment or ambulance transport. Any accident involving a client or visitor, injured or not, will fall into this category for the purposes of reporting as a "serious incident".

Escape/Runaway − when a child remanded to the custody of the department leaves his/her assigned facility or home without official permission or court documents authorizing such. This includes, but is not limited to, training schools, foster homes, or transitional living centers.

Facility/Mechanical/Fire − any incident involving vandalism, defacement, or damage to any Department of Human Services facility. Any incident involving mechanical failure or breakdown of essential facility equipment. Any incident involving fire at any Department of Human Services facility.

Assault/Fight/Use of Mace − any physical or escalated verbal altercation involving any Mississippi Department of Human Services employee or any person remanded to the custody of the Mississippi Department of Human Services. Any physical or escalated verbal altercation involving any person that takes place on the property of any Mississippi Department of Human Services facility. Any altercation that results in the use of mace by any person employed by the Mississippi Department of Human Services.

Stolen Property- any incident involving missing property belonging to the State ofMississippi valued at $100.00 or above.

Break-in − any incident involving the forcible entry to a Mississippi Department of Human Services facility or vehicle.

Vehicle Damage/Abuse − any damage for any reason to any vehicle owned by the Mississippi Department of Human Services or any vehicle parked on the grounds of any Mississippi Department of Human Services facility.

Threat via Telephone/Mail – any threat to person or facility of the Mississippi Department of Human Services or Mississippi State Government received through any means.

Other – Specify – any incident not included in other categories that requires immediate notification to executive management.

**Policy**

Serious incidents falling into the categories above may occur from time to time during the course of our work at the Mississippi Department of Human Services. It is imperative that executive management be notified of any and all serious incidents that have a bearing on safety, agency operations, or the public. Executive management must be informed as soon as possible after a serious incident so that we may properly respond to inquiries or notify appropriate persons, agencies or outlets of the details of the situation.

It shall be the responsibility of all Mississippi Department of Human Services employees to report all serious incidents as detailed above to executive management through his/her chain of command within twenty-four (24) hours. The report will be made on the standardized Serious Incident Report form MDHS-PER-260 (attached). The form shall be completed with as much detail as possible to accurately portray the incident. Divisions should attach any internal incident reports currently in use for clarification and detail.

Serious Incident Report form MDHS-PER-260 may be delivered to executive management by hand or facsimile.

Failure to properly notify executive management of a serious incident within the specified timeframe will be considered failure to follow written procedure and will be dealt with as such in accordance with established State Personnel Board rules and regulations.



# SERIOUS INCIDENT REPORT

Type of Incident:  O  Accident with Injury          O  Stolen Property

O  Escape / Run-away          O  Break-in

O  Facility / Mechanical/ Fire     O  Vehicle Damage / Abuse

O  Assault / Fight / Use of Mace    O  Threat via Telephone / Mail

O  Other - Specify:_____

Reported By: _____          Date: _____

Position: _____          Division: _____

Location of
Incident: _____

Date and Time of Incident: _____

Police Notified:  O  Yes (attach police report)

O  No

Ambulance
Notified:  O  Yes, because: _____

O  No

Description of
Incident: _____

_____

_____

_____

_____

_____

_____

Completed By: _____          Date: _____

Acknowledged: _____          Date: _____
Division Director

**Distribution Required within 24 Hours of Serious Incident to:**

**Executive Director**
**Deputy Directors**
**Division Directors**

DHS
361721

**Appendix E**
**Correspondence with COA Regarding Exemption from Minimum**
**Qualification Requirements for ASWSs**



**STATE OF MISSISSIPPI**
Phil Bryant, Governor **DEPARTMENT OF**
**HUMAN SERVICES** Richard A. Berry
Executive Director

January 3, 2013

Rebecca Tedesco
45 Broadway
29th Floor
New York, New York 10006

Dear Rebecca,

We are requesting an exception to current COA Standards to hire Area Social Work Supervisors (ASWS), without advanced degrees in our four "carve out" counties, Jackson, Harrison, Hancock and Hinds. They are designated as carve out counties in our Modified Settlement Agreement because the counties are understaffed and have difficulty recruiting master's level ASWSs. The agency is supporting these counties by sending State Office staff, as well as staff from other regions, to assist with the work load and to assess systemic barriers. In an effort to recruit and retain staff in these counties MDHS-DFCS is paying a 15% differential to employees who work in these areas. The agency also recently asked the State Personnel Board (SPB) to add an additional 20% to increase the differential to 35%. SPB will review and consider the request later this month.

As you are aware, the coastal counties, Hancock, Harrison, and Jackson, were devastated by Hurricane Katrina in 2005 and many areas have not completely returned to normal due to a mass citizen exodus and major local funding issues. There are many social service agencies, as well as a VA hospital, which employ social workers in these counties. Those agencies and the hospital pay higher salaries than MDHS and the demands of the jobs are far less than that of child welfare staff. The same is true in Hinds County where the State Capitol is located.

Although there are many new workers in these counties, there are not enough supervisors. Without adequate supervision, we cannot expect the newly hired workers to stay, which perpetuates the cycle of personnel turnover. The agency has actively recruited master's level social workers for supervisory positions but despite its many efforts has been unsuccessful in attracting all that are needed. There are many bachelor's level licensed social workers with years of child welfare experience who have applied for the ASWS positions. We would like to be able to hire these people and encourage them to pursue a MSW by taking advantage of the agency's very successful tuition reimbursement program.

These counties will be the last ones to go through the COA Accreditation process in 2014 and 2015. By that time, BSWs hired as ASWSs will be in the process of pursuing or will have obtained their MSW degrees.

We are striving to meet the COA Standards in all areas and believe we will be able to meet the supervisor qualifications standard by the time these counties are ready for their site visits.

If there are any questions, please contact me at ███████████ or via email at █████████████████. You may also contact ███████████ at ███████████ or via email at ███████████████.

We appreciate your consideration of this request.

Sincerely yours,

Deputy Executive Director



CREDIBILITY  •  INTEGRITY  •  ACHIEVEMENT

DATE:       January 24, 2013

TO:         Mark Smith
            Deputy Executive Director
            Mississippi Department of Human Services
                    Department of Family and Children's Services

CC:         Mary Ann Everett, Jim Mooney, Caroline Louissaint
            Peer Review Team for Regions: III-
                    S (4620.06)
                    VII-W (4620.12)
                    VII-E (4620.13)

FROM:       Rebecca Tedesco, Accreditation Coordinator

RE:         Requested Exception for Area Social Work Supervisor Degree Requirements

This memo is in response to the letter submitted to COA on January 3, 2013 by MDHS-DFCS regarding the standard exception for Area Social Work Supervisors (ASWSs) in four identified counties.  The degree requirements for these positions are reviewed under PA-CPS 14.02, PA-FC 19.05 and PA-KC 16.02.

Due to the extenuating circumstances detailed in the request, COA is in agreement that DFCS can currently hire supervisors without advanced degrees in the four designated counties: Jackson, Harrison, Hancock and Hinds.

This exception is made with the following understanding:

- ASWS staff is hired with the expectation of obtaining an advanced degree.
- By the time the COA review team conducts the site visit in the impacted regions the ASWSs will have an advanced degree or will be working towards an advanced degree.
    - The visits are scheduled to take place on :
        - III-S (4620.06) – Site Visit: 5/19/2014

DHS
361724

- - VII-W (4620.12) – Site Visit 6/13/2014
  - VII-E (4620.13) – Site Visit 7/28/2014
- The above mentioned standards will be implemented by the time of the site visits and rated accordingly.

## COUNCIL ON ACCREDITATION

45 Broadway, 29th FL, New York, NY 10006 • toll free: 866-262-8088  tel: 212.797.3000  fax: 212.797.1428  www.coanet.org

26

DHS
361725

**Ex. 8H**

## Grace M. Lopes

| | |
|---|---|
| **From:** | Grace M. Lopes [gmlopes@oymonitor.org] |
| **Sent:** | Monday, November 18, 2013 6:40 PM |
| **To:** | 'Rachal, Kenya'; 'Julia Davis' |
| **Cc:** | 'Fortenberry, Rusty'; 'Young, Ashley Tullos'; 'Marcia Robinson Lowry'; 'mingber@ChildrensRights.Org'; 'Mia Caras' |
| **Subject:** | Determination Regarding Resubmitted Workforce Development Plan, Period 4 IP II.A.1. |
| **Attachments:** | Determination Related to Workforce Development Plan; Period 4 IP II.A.1. |

Kenya and Julia:

Pursuant to Section II.A.1. of the Period 4 IP, I have reviewed defendants' revised submission of the Workforce Development Plan, which was transmitted on November 6, 2013.  For the reasons set forth in my October 15, 2013 e-mail memorandum (except for the revised provision listed below), I cannot approve the Plan:

- Staff Qualification Requirements (page 9 of new version)

A copy of my October 15, 2013 e-mail is attached for your convenience.  If you have any questions about my determination, please feel free to contact me.  Thank you.  - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

# Ex. 9A



Class Specification
Occu Code: 0393
Rev: 06/06
Page 1

## SOCIAL WORKER AIDE

### CHARACTERISTICS OF WORK:

This is paraprofessional work in supervising children, assisting social workers in county offices providing social services to protective service cases, meeting child and family needs in substitute care cases, and maintaining the reunified family in post-placement cases. Employees' duties include the care, guidance, and control of children and the participation in work and recreational activities for Shelter programs. Supervision is received from an administrative superior.

### MINIMUM QUALIFICATIONS:

These minimum qualifications have been agreed upon by Subject Matter Experts (SMEs) in this job class and are based upon a job analysis and the essential functions. However, if a candidate believes he/she is qualified for the job although he/she does not have the minimum qualifications set forth below, he/she may request special consideration through substitution of related education and experience, demonstrating the ability to perform the essential functions of the position. Any request to substitute related education or experience for minimum qualifications must be addressed to the State Personnel Board in writing, identifying the related education and experience which demonstrates the candidate's ability to perform all essential functions of the position.

### EXPERIENCE/EDUCATIONAL REQUIREMENTS:

**Education:**
Completion of thirty (30) semester hours from an accredited four-year college or university.

OR

**Education:**
Graduation from a standard four-year high school or equivalent (GED);

AND

**Experience:**
One (1) year of experience related to the described duties.

**Licensure:**

Must possess a valid MS Driver's License or a valid Driver's License from a contiguous state.

**Substitution Statement:**

Related education and related experience may be substituted on an equal basis.

Class Specification
Occu Code: 0393
Rev: 06/06
Page 3

**PUBLIC SECTOR COMPETENCIES:**

<u>Integrity and Honesty</u>: Demonstrates a sense of responsibility and commitment to the public trust through statements and actions.

Models and demonstrates high standards of integrity, trust, openness, and respect for others. Demonstrates integrity by honoring commitments and promises. Demonstrates integrity by maintaining necessary confidentiality.

<u>Work Ethic</u>: Is productive, diligent, conscientious, timely, and loyal.

Conscientiously abides by the rules, regulations, and procedures governing work.

<u>Service Orientation</u>: Demonstrates a commitment to quality public service through statements and actions.

Seeks to understand and meets and/or exceeds the needs and expectations of customers. Treats customers with respect, responding to requests in a professional manner, even in difficult circumstances.  Provides accurate and timely service.  Develops positive relationships with customers.

<u>Accountability</u>: Accepts responsibility for actions and results.

Is productive and carries fair share of the workload.  Focuses on quality and expends the necessary time and effort to achieve goals. Demonstrates loyalty to the job and the agency and is a good steward of state assets. Steadfastly persists in overcoming obstacles and pushes self for results.  Maintains necessary attention to detail to achieve high-level performance.  Deals effectively with pressure and recovers quickly from setbacks. Takes ownership of tasks, performance standards, and mistakes. Has knowledge of how to perform one's job.  Knows the organization's mission and functions and how it fits into state government.

<u>Self Management Skills</u>: Effectively manages emotions and impulses and maintains a positive attitude.

Encourages and facilitates cooperation, pride, trust, and group identity; fosters commitment and team spirit; works effectively and cooperatively with others to achieve goals. Treats all people with respect, courtesy, and consideration. Communicates effectively. Remains open to new ideas and approaches. Avoids conflicts of interest. Promotes cooperation and teamwork.

<u>Interpersonal Skills</u>: Shows understanding, courtesy, tact, empathy, and concern to develop and maintain relationships.

Demonstrates cross cultural sensitivity and understanding. Identifies and seeks to solve problems and prevent or resolve conflict situations.  Encourages others through positive reinforcement.

<u>Communication Skills</u>: Receives, attends to, interprets, and responds to verbal messages and expresses information to individuals or groups effectively.

Receives other cues such as body language in ways that are appropriate to listeners and situations.  Takes into account the audience and nature of the information; listens to others, attends to nonverbal cues, and responds appropriately. May make oral presentations. Communicates ideas, suggestions, and concerns, as well as outcomes and progress throughout the process of an activity. Provides thorough and accurate information.

Advocates services for persons who are unable or unsuccessful in obtaining services for themselves.

Answers telephone calls and interprets needs and requests of persons calling and refers them to appropriate community resource or agency.

Completes, routes, and tracks variety of necessary forms and files.

Conducts relative or court order placement home studies directed by a supervisor.

Writes and mails routine correspondence and forms for social workers.

Performs related or similar duties as required or assigned.

**<u>INTERVIEW REQUIREMENTS</u>:**

Any candidate who is called to an agency for an interview must notify the interviewing agency in writing of any reasonable accommodation needed prior to the date of the interview.

# Ex. 9B

 **Get Email Updates**

| Home | About MSPB | FAQs | Personal Service Contract Review Board | Professional Development | Employee Appeals Board | Publications & Reports | News |

**Home » Job Seekers**

# Job Descriptions

powered by
**NEOGOV**

**Class Title:** DHS-CASE AIDE

**Bargaining Unit:** N/A

**Class Code:** 0393

**Salary:** $19,021.44 - $33,287.52 Annually

**Print Job Information**

**Email me when jobs like this become available**

| **Characteristics of Work** | Benefits |

This is paraprofessional work in supervising children, assisting social workers in county offices providing social services to protective service cases, meeting child and family needs in substitute care cases, and maintaining the reunified family in post-placement cases. Employees' duties include the care, guidance, and control of children and the participation in work and recreational activities for Shelter programs. Supervision is received from an administrative superior.

**Examples of Work:**

**Examples of work performed in this classification include, but are not limited to, the following:**

Provides and/or arranges for services such as housing, day care, and employment of clients, under the direction of a social worker.

Teaches homemaking/parenting skills and daily living tasks, etc. to individuals and families.

Visits clients' home and monitors clients' home and interactions.

Documents activities and time spent with clients.

Advocates services for persons who are unable or unsuccessful in obtaining services for themselves.

Answers telephone calls and interprets needs and requests of persons calling and refers them to appropriate community resource or agency.

Completes, routes, and tracks variety of necessary forms and files.

Conducts relative or court order placement home studies directed by a supervisor.

Writes and mails routine correspondence and forms for social workers.

Performs related or similar duties as required or assigned.

**Minimum Qualifications:**

These minimum qualifications have been agreed upon by Subject Matter Experts (SMEs) in this job class and are based upon a job analysis and the essential functions. However, if a candidate believes he/she is qualified for the job although he/she does not have the minimum qualifications set forth below, he/she may request special consideration through substitution of related education and experience, demonstrating the ability to perform the essential functions of the position. Any request to substitute related education or experience for minimum qualifications must be addressed to the State Personnel Board in writing, identifying the related education and experience which demonstrates the candidate's ability to perform all essential functions of the position.

**EXPERIENCE/EDUCATIONAL REQUIREMENTS:**

**Education:**
Graduation from a standard four-year high school or equivalent (GED);

**Licensure:**
Must possess a valid MS Driver's License or a valid Driver's License from a contiguous state.

---

**MSPB Career Center**

How to Apply
Applicant Login
Job Openings
Agency Only Opportunities
State Employee Opportunities
Job Interest Cards

**MSPB Applicant Care Center**

Quick Help-Username/Password
FAQs

**MSPB General Information**

Events
Job Descriptions

**Documentation Required:**

Applicants must attach a valid copy of his/her Mississippi Driver's License or valid Driver's License from a contiguous state, where applicable.

---

**Essential Functions:**

---

**Additional essential functions may be identified and included by the hiring agency. The essential functions include, but are not limited to, the following:**

1. Assists Social Worker in provision of direct services and implementation of case plans through client contact.

2. Provides information and referrals and relays phone messages.

3. Assists Social Worker in performance of routine administrative and case management procedures.

4. Completes documentation necessary for employment and reimbursement of travel allowance.

---

**Physical Requirements:**

---

These physical requirements are not exhaustive, and additional job related physical requirements may be added to these by individual agencies on an as needed basis. Corrective devices may be used to meet physical requirements. These are typical requirements; however, reasonable accommodations may be possible.

Light Work: May frequently walk or stand and/or frequently exert force equivalent to lifting up to approximately 10 pounds and/or occasionally exert force equivalent to lifting up to approximately 20 pounds.

Vision: Requires the ability to perceive the nature of objects by the eye.

Near Acuity: Clarity of vision at 20 inches or less.
Midrange: Clarity of vision at distances of more than 20 inches and less than 20 feet.
Far Acuity: Clarity of vision at 20 feet or more.
Peripheral: Ability to observe an area that can be seen up and down or left and right while eyes are fixed on a given point.
Depth Perception: Three-dimensional vision. Ability to judge distances and spatial relationships so as to see objects where and as they actually are.
Ability to adjust focus: Ability to adjust the eye to bring an object into sharp focus.
Color Vision: Ability to identify colors.

Speaking/Hearing: Possesses the ability to give and receive information through speaking and listening skills.

Motor Coordination: While performing the duties of this job, the incumbent is regularly required to use hands to finger, handle, or feel objects, tools, or controls; and reach with hands and arms. The incumbent is frequently required to sit; walk; and stand. The incumbent is occasionally required to climb or balance; and stoop, kneel, crouch, or bend.

**INTERVIEW REQUIREMENTS:**

Any candidate who is called to an agency for an interview must notify the interviewing agency in writing of any reasonable accommodation needed prior to the date of the interview.

---

**Competencies:**

---

The following competencies describe the knowledge, skills, abilities, and attributes that lead to a successful employee in this position. An applicant will be expected to exhibit these competencies or the ability to reach competency achievement within a specified time. These competencies are linked to the essential functions of the job. Employees in this position may be evaluated on these competencies as part of the performance appraisal system. Example behaviors are listed below each competency and are used for illustrative purposes only. Specific behaviors may be identified and included later by the hiring agency. It is understood that some of these behaviors might not be acquired until a reasonable time after hire. Failure of an employee to successfully demonstrate some or all of these competencies, as deemed important by his or her reporting official, may result in the employee being placed on a performance improvement plan. If after a reasonable period of time, usually three (3) months, the employee fails to demonstrate successful performance, the employee may be terminated. These competencies include, but are not limited to, the following:

**PUBLIC SECTOR COMPETENCIES:**

Integrity and Honesty: Demonstrates a sense of responsibility and commitment to the public trust through statements and actions.

Models and demonstrates high standards of integrity, trust, openness, and respect for others. Demonstrates integrity by honoring commitments and promises. Demonstrates integrity by maintaining necessary confidentiality.

Work Ethic: Is productive, diligent, conscientious, timely, and loyal.

Conscientiously abides by the rules, regulations, and procedures governing work.

Service Orientation: Demonstrates a commitment to quality public service through statements and actions.

Seeks to understand and meets and/or exceeds the needs and expectations of customers. Treats customers with respect, responding to requests in a professional manner, even in difficult circumstances. Provides accurate and timely service. Develops positive relationships with customers.

Accountability: Accepts responsibility for actions and results.

Is productive and carries fair share of the workload. Focuses on quality and expends the necessary time and effort to achieve goals. Demonstrates loyalty to the job and the agency and is a good steward of state assets. Steadfastly persists in overcoming obstacles and pushes self for results. Maintains necessary attention to detail to achieve high-level performance. Deals effectively with pressure and recovers quickly from setbacks. Takes ownership of tasks, performance standards, and mistakes. Has knowledge of how to perform one's job. Knows the organization's mission and functions and how it fits into state government.

Self Management Skills: Effectively manages emotions and impulses and maintains a positive attitude.

Encourages and facilitates cooperation, pride, trust, and group identity; fosters commitment and team spirit; works effectively and cooperatively with others to achieve goals. Treats all people with respect, courtesy, and consideration. Communicates effectively. Remains open to new ideas and approaches. Avoids conflicts of interest. Promotes cooperation and teamwork.

Interpersonal Skills: Shows understanding, courtesy, tact, empathy, and concern to develop and maintain relationships.

Demonstrates cross cultural sensitivity and understanding. Identifies and seeks to solve problems and prevent or resolve conflict situations. Encourages others through positive reinforcement.

Communication Skills: Receives, attends to, interprets, and responds to verbal messages and expresses information to individuals or groups effectively.

Receives other cues such as body language in ways that are appropriate to listeners and situations. Takes into account the audience and nature of the information; listens to others, attends to nonverbal cues, and responds appropriately. May make oral presentations. Communicates ideas, suggestions, and concerns, as well as outcomes and progress throughout the process of an activity. Provides thorough and accurate information.

Self-Development: Adapts behavior or work methods in response to new information, changing conditions, or unexpected obstacles.

Seeks efficient learning techniques to acquire and apply new knowledge and skills; uses training, feedback, or other opportunities for self-learning and development. Develops and enhances skills to adapt to changing organizational needs. Remains open to change and new information and ideas.

**TECHNICAL COMPETENCIES:**

Customer Service: Works with clients and customers to assess their needs, provide information or assistance, resolve their problems, or satisfy their expectations.

Provides and/or arranges for services such as housing, day care, and employment of clients, under the direction of a social worker. Teaches homemaking/parenting skills; daily living tasks, etc. to individuals and families. Advocates services for persons who are unable or unsuccessful in obtaining services for themselves.

Clerical: Possesses knowledge of filing, typing, entering data, maintaining records, and using and completing forms.

Writes and mails routine correspondence and forms for social workers. Documents activities and time spent with clients. Completes and tracks a variety of necessary forms.

Copyright © 2011 Mississippi State Personnel Board - 210 East Capitol Street, Suite 800 Jackson, Mississippi 39201
Phone (601) 359-1406 Fax (601) 359-2729

**Ex. 10**

**Strategies for Promoting Implementation of the *Olivia Y.* Standards in the Mississippi Youth Courts**

Legal and Judicial Sub-Team Report on Requirements for the Modified Settlement Agreement (MSA) and Period III Implementation Plan (IP)

**2.c. Defendants shall actively engage in recruitment and retention activities to address the workload issues in Hancock, Harrison, Hinds, and Jackson Counties as follows:**

**(4) "By July 1, 2012, the Legal and Judicial Statewide Implementation Sub-team shall develop and begin implementing written strategies for promoting implementation of the Olivia Y. standards in the Mississippi Youth Courts. These strategies shall be implemented in Regions III-S, VII-E and VII-W by the end of Implementation Period 3."**

The Legal and Judicial Sub-Team of the Statewide Implementation Team meets monthly and discusses strategies, which if agreed upon by the Youth Court Judges and Referees, would assist DFCS in achieving standards outlined in the Modified Settlement Agreement. The Sub-Team members are DFCS staff (Bureau Director-Administration, Regional Director, Foster Care Review Director, Division Director for Adoption, and Program Specialist handling termination of parental rights packets), Administrative Office of Courts Project Manager, two representatives of the Attorney General's Office, and two qualified consultants. Regional Directors in III-S, VII-E and VII-W provided information gathered from their field staff regarding practices of the Youth Court which are barriers to permanency for children and/or barriers to retention of workers in the Region.

It was determined by the Sub-team that collaboration with the judicial system was essential to the development and the implementation of any strategies. Additionally, it is important to convey to both the field staff and the local judges that executive leadership is placing a high priority on the safety, well-being and permanency for children.

To facilitate the development of the strategies, a meeting was held between DFCS staff and the individual judges and referees in Regions III-S, VII-E and VII-W to discuss the standards of the *Olivia Y.* MSA and collaborate to develop written strategies which will promote implementation of the *Olivia Y.* standards in the Mississippi Youth Court in accordance with the MSA.

During May and June 2012, Judges, Court Personnel, DFCS Senior Managers, representatives from the Attorney General's Office and DFCS Regional Directors collaborated to develop county-specific written strategies.

## Harrison County

███████████, Deputy Director of DFCS; ███████████, Deputy Executive Director of MDHS; ███████████, Attorney General's Office; ███████████, DFCS Region VII-W Regional Director; and ███████████, Attorney, Bureau Director of Administration, DFCS, met with Harrison County Court Judge, Margaret Alfonso and Court Personnel, on May 21, 2012, and Chancellor Sanford R. Steckler (8th Chancery District) on May 22, 2012, to discuss the standards of the *Olivia Y.* MSA and collaborate to develop written strategies which the Court would agree to implement that would promote implementation of *Olivia Y* standards including a reduction or elimination of barriers to permanency as well as barriers to recruiting and retaining the workforce in Harrison County, Mississippi.

### Primary Strategy I – Parent Representation

The Court is considering requesting private/grant funding for one attorney on staff to represent parents. The goal of parent representation is to provide legal counsel to parents at the point that their children are at risk of removal from the home. Parent representation will allow the parents to have an attorney from the first adjudicatory hearing through the last hearing on reunification with the family, termination of parental rights, or another permanent plan. The Court will work with the Center for Legal Representation to provide services to parents and will continue to work with the Administrative Office of Courts and Casey Family Programs to implement parent representation statewide.

Rationale: According to Casey Family Programs, it is believed that parents lack knowledge of the magnitude of the situation of being involved in the child welfare system. This lack of knowledge adds to the length of stay and the lack of appropriate services provided to families. Parental representation also ensures accountability for all parties (DFCS, Courts and Parents).

Both the judiciary, attorneys and DFCS executives agree that parent representation at the beginning of a case is expected to move children to permanency more efficiently than waiting until the termination of parental rights hearing where parents are represented by counsel. Counsel could assist parents in achieving their plan goals for reunification when possible, or to understand why another plan for permanency must be considered to prevent the children from lingering in foster care.

### Primary Strategy II – Decrease Placements in Emergency Shelters

The Court will consider temporary, emergency placement with a legal relative under the following conditions:

- When DFCS calls the court prior to placing with a legal relative;

- When DFCS has performed a safety home check of the legal relative; and

- When background checks are negative; then

- The Court will hold a hearing as soon as possible regarding relative placement.

Rationale:  Children will experience less trauma of removal from their parents if they can be placed with a suitable relative with whom they have formed an exisitng relationship. Eliminating or decreasing emergency shelter placements means fewer moves for children, further decreasing the trauma which any move causes.

This issue addresses several requirements in the MSA, including decreasing the number of placements and decreasing the number of children placed in emergency shelters.

**Primary Strategy III – Staff Retention and Increased Service Array**

The Court will create a team approach environment to promote retention of DFCS workers and supervisors and to provide easy access to service providers, as follows:

- By creating a multidisciplinary team approach for putting services in place for parents and children;

- By exploring the provision of mental health consultations onsite for children and families by the end of Implementation Period 3;

- By exploring the provision of wellness clinic services onsite for children and families by the end of Implementation Period 3; and

- By providing an atmosphere of learning for new workers regarding expectations of the Court, beginning immediately.

Rationale:  A multidisciplinary team will be able to provide services more effectively and efficiently for children in care.  The Court has a vision of making services available at the same location as the Court and appointments scheduled immediately following the Court's Order.  A team approach to providing services would assist caseworkers in providing services to promote reunification or another permanent plan for the child.  This goal will address the MSA requirement of expanding the array of mental health and medical services for children and families.

DFCS will actively recruit workers for Harrison County. The Court will cultivate an environment to teach new workers the expectations of the Court. Workers who have a good relationship with the Court generally have longer terms of employment in child welfare.

Both the judiciary and DFCS recognize that children who have the same caseworker throughout their time in care achieve permanency more quickly than children who have multiple caseworkers. The Child Welfare League of America reports that high rates of staff turnover and high caseloads impede reunification and that stable, competent staff positively impacts the

achievement of reunification goals. Family reunification is facilitated by the frequency and the nature of the caseworker's contact with the family.

## Hancock County

███████████, Deputy Director of DFCS; ███████████, Deputy Executive Director of MDHS; ███████████, Attorney General's Office; ███████████, DFCS Region VII-W Regional Director; ███████████, Internal Controls Coordinator; and ███████████, Attorney, Bureau Director of Administration, DFCS, met with Chancellor Sanford R. Steckler (8th Chancery District) and Referee Elise Epperson Deano (Hancock County) on May 22, 2012, to discuss the standards of the *Olivia Y.* MSA and collaborate to develop written strategies which the Court would agree to implement that would promote implementation of *Olivia Y* standards including a reduction or elimination of barriers to permanency as well as barriers to recruiting and retaining the workforce in Hancock County, Mississippi.

### Primary Strategy I – Staff Retention

The Court will promote recruitment and retention of DFCS workers and supervisors by personal contact with the Hancock County Board of Supervisors regarding finishing the new building for Hancock County DFCS Offices.

Rationale: Hancock County DFCS Workers continue to be housed in Katrina trailers. All other agencies have moved out of the trailers and security has been terminated. A new building has been constructed, but the contractor did not finish the job. The Board of Supervisors will be strongly encouraged to hire another contractor to finish the interior construction.

This objective directly relates to the MSA requirement of increasing the number of caseworkers to sixteen (16) by the end of Implementation Period 3. Its success will also affect the county's ability to achieve its caseload goals and supervisor ratio goals. The retention of staff bears significantly on all areas of good child welfare practice.

### Primary Strategy II – Hancock County Implementation Team

The Court will create a Hancock County Implementation Team of people concerned about children and with means to affect changes, including, but not limited to, CASA and YMCA, and to assist with recruitment and retention of resource homes.

Rationale: A community team approach is required to recruit and retain resource homes. The DFCS has been awarded a five-year federal Diligent Recruitment Grant for Resource Homes. Its work at the local level follows the schedule of the Practice Model roll-out, so it will be several years before Hancock County will be involved in the work of the grant.

## Jackson County

████████, Deputy Director of DFCS; ████████, Deputy Executive Director of MDHS; ████████, Attorney General's Office; ████████, DFCS Region VII-E Regional Director; and ████████, Attorney, Bureau Director of Administration, DFCS, met with Jackson County Judge, Sharon Sigalas, on May 22, 2012, to discuss the standards of the *Olivia Y.* MSA and collaborate to develop written strategies which the Court would agree to implement that would promote implementation of *Olivia Y* standards including a reduction or elimination of barriers to permanency as well as barriers to recruiting and retaining the workforce in Jackson County, Mississippi.

### Primary Strategy I – Permanency Coordinator

The Court will create a Permanency Coordinator with Court Appointed Special Advocates (CASA) to review cases that are older than 15 months and make a recommendation to the Court regarding next steps which are in the best interest of the child. The Court will also participate in Casey Family Programs Permanency Round Tables Training in October 2012.

Rationale: Jackson County DFCS staff participated in the Casey Family Programs Permanency Roundtables in October 2011, focusing on achieving permanency for children who had been in care for 36 months or more. The Court will focus on children who have been in care more than 15 months and increase efforts to achieve permanency or a permanent connection for those children by involving stakeholders in the process. The training scheduled for October 2012, which is planned for Regions V-East and VI, will help the CASA staff to use similar techniques to achieve permanency or permanent connections for children in custody longer than 15 months.

### Primary Strategy II – Mental Health Services

The Court will develop a mental health referral protocol for parents and children in conjunction with the DFCS Resource Development Unit.

Rationale: Basically, one mental health provider has been available to the Court, but the provider is reaching retirement age. Other providers need to be identified to fill this gap in services. ████████, DFCS Director of Resource Development, will work with the Court to identify possible mental health providers.

### Primary Strategy III – Data Indicators

The Court will participate in training to review county outcomes and develop strategies to improve permanency outcomes for children.

Rationale: The Court will benefit from reviewing the county specific outcomes with DFCS staff to identify barriers and find solutions to barriers preventing children from achieving permanency. This type of training occurs at the Annual Judges and Referees Conference where the Olivia Y.

standards are presented and discussed with the judiciary. PowerPoint presentations, individual regional statistical reports and one-on-one discussions with the judiciary regarding their counties occur at this Conference. Another venue for training where individual county statistics are presented is the Legal Stakeholders for Permanency for Children summits which are held in each region as the Mississippi Child Welfare Practice Model rolls out.

## HINDS COUNTY

██████████, Attorney General's Office, ██████████, Attorney General's Office, ██████████, Deputy Executive Director of MDHS; ██████████, DFCS Region III-S Regional Director; ██████████, Director of Field Operations, DFCS; and ██████████, Attorney, Bureau Director of Administration, DFCS, met with Hinds County Court Judge, William Skinner, on June 18, 2012, to discuss the standards of the *Olivia Y.* MSA and collaborate to develop written strategies which the Court would agree to implement that would promote implementation of *Olivia Y* standards including a reduction or elimination of barriers to permanency as well as barriers to recruiting and retaining the workforce in Hinds County, Mississippi.

### Primary Strategy I – Permanency Hearings

Permanency Hearings will be scheduled the first Thursday of the month. Rehearings will be scheduled on the third Thursday of the month. Adjudication hearings will be scheduled on Tuesdays.

Rationale: The MSA stipulates that DFCS take reasonable steps to ensure a court review within twelve months of the initial placement and annually thereafter. These hearings ensure that the Court is aware of the progress in achieving permanency and that the Court may issue further orders which will assist the family and agency in achieving the permanency goals.

DFCS will collaborate with the Court to secure a quarterly report of Permanency Hearings re-hearings and adjudication hearings held in order to capture the volume of cases handled by the Court. Combined with DFCS data, this information will be essential in further planning for timely permanency hearings.

### Primary Strategy II – Termination of Parental Rights

The Court will consider forwarding cases for termination of parental rights when parents have made no efforts toward reunification or meeting service agreement requirements within six months where allowed by Mississippi statutes and such action is in the best interest of the child, or at any other time interval allowable by Mississippi statutes. See MISS CODE Sec. 93-15-103.

Rationale:

- The Court and DFCS will review cases where both parents have made no efforts to make contact with the child according the MISS CODE Sec. 93-15-103;

- DFCS will request permission from the Court to proceed with a referral for termination of parental rights to the Attorney General's Office and a petition filed with the Chancery Court when a child has been in custody 15 out of 22 months without a valid exception.

- The Court will consider the recommendation and order the referral for TPR be sent to the Attorney General's Office for filing if the Court finds TPR to be in the best interest of the child and in accordance with Mississippi statutes.



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

June 6, 2012

Honorable Elise Epperson Deano
Hancock County Youth Court Referee
10199 Highway 603
Bay St. Louis, MS 39520

Dear Referee Deano:

Thank you for taking time to meet with ████████, ████████, ████████, ████████, ████████ and me on May 21, 2012. We appreciate your concern and interest in working with Family and Children's Services to achieve timely permanency for children in care. Below are the strategies that were agreed upon for the purpose of implementing the requirements of the *Olivia Y.* Settlement Agreement and expediting permanency for children in Hancock County.

**Primary Strategy I** – Court will promote Recruitment and Retention of DFCS workers and supervisors by contacting Hancock County Board of Supervisors regarding finishing new building for Hancock County DFCS Offices.

**Primary Strategy II** – Court will create a Hancock County Implementation Team of people concerned about children and with means to affect changes including, but not limited to, CASA and YMCA and to assist with recruitment and retention of resource homes.

Please advise if these strategies are accurately stated according to our discussions. My phone numbers are ████████ or ████████ (cell) and my email address is ████████.

DHS
292396

P.O. BOX 352, 750 N. STATE STREET • JACKSON, MISSISSIPPI 39205 • TELEPHONE (601) 359-4500 • www.mdhs.state.ms.us

Honorable Elise Epperson Deano
June 6, 2012
Page 2

We appreciate all you do for the safety, permanency and wellbeing of children of Mississippi.

Sincerely,

*Mary E. Fuller*

Mary Fuller, Attorney
Bureau Director I-Administration (Court Improvement Program)
Division of Family and Children's Services

MEF:bh

cc:  Honorable Sanford R. Steckler, Chancellor

via email:
    Lori Woodruff, Deputy Director of Family and Children's Services
    Mark Smith, Deputy Executive Director of MDHS
    Earl Scales, Office of the Attorney General
    Mike Thornton, Bureau Director I
    Teresa Kemp, Regional Director VII-West

DHS
292397



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

June 6, 2012

Honorable Sanford R. Steckler, Chancellor
8th Chancery District
Post Office Box 659
Gulfport, Mississippi 39502

Dear Judge Steckler:

Thank you for taking time to meet with ███████████, ███████████, ███████████, ███████████, ███████████ and me on May 21, 2012. We appreciate your concern and interest in working with Family and Children's Services to achieve timely permanency for children in care. Below are the strategies that were agreed upon for the purpose of implementing the requirements of the *Olivia Y.* Settlement Agreement and expediting permanency for children in Hancock County.

**Primary Strategy I** – Court will promote Recruitment and Retention of DFCS workers and supervisors by contacting Hancock County Board of Supervisors regarding finishing new building for Hancock County DFCS Offices.

**Primary Strategy II** – Court will create a Hancock County Implementation Team of people concerned about children and with means to affect changes including, but not limited to, CASA and YMCA and to assist with recruitment and retention of resource homes.

Please advise if these strategies are accurately stated according to our discussions. My phone numbers are ███████████ or ███████████ (cell) and my email address is ███████████.

DHS
292398

Honorable Sanford R. Steckler, Chancellor
June 6, 2012
Page 2

We appreciate all you do for the safety, permanency and wellbeing of children of Mississippi.

Sincerely,

*Mary E. Fuller*

Mary Fuller, Attorney
Bureau Director I-Administration (Court Improvement Program)
Division of Family and Children's Services

MEF:bh

cc: via email
    Honorable Elise Epperson Deano, Referee, Hancock County Youth Court
    Lori Woodruff, Deputy Director of Family and Children's Services
    Mark Smith, Deputy Executive Director of MDHS
    Earl Scales, Office of the Attorney General
    Mike Thornton, Bureau Director I
    Teresa Kemp, Regional Director VII-West



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

June 6, 2012

Honorable Sharon Sigalas
Jackson County Court Judge
4903 Telephone Road
Pascagoula, MS 39567

Dear Judge Sigalas:

Thank you for taking time to meet with ████████, ████████, ████████ and me on May 21, 2012. We appreciate your concern and interest in working with Family and Children's Services to achieve timely permanency for children in care. Below are the strategies that were agreed upon for the purpose of implementing the requirements of the *Olivia Y.* Settlement Agreement and expediting permanency for children in Hancock County.

**Primary Strategy I** – The Court will create a Permanency Coordinator with CASA to move cases that are older than 15 months. Court will participate in Casey Family Programs' one-on-one Permanency Round Tables Training in October 2012 to move cases of children in custody longer than 36 months.

**Primary Strategy II** – The Court will develop a mental health referral protocol for parents and children.

**Primary Strategy III** – The Court will participate in training to look at county outcomes and develop strategies to improve permanency outcomes for children.

Please advise if these strategies are accurately stated according to our discussions. My phone numbers are ████████ or ████████ (cell) and my email address is ████████.

We appreciate all you do for the safety, permanency and wellbeing of children of Mississippi.

Sincerely,

*Mary E. Fuller*

Mary Fuller, Attorney
Bureau Director I-Administration (Court Improvement Program)
Division of Family and Children's Services

MEF:bh

cc: via email
    Lori Woodruff, Deputy Director of Family and Children's Services
    Mark Smith, Deputy Executive Director of MDHS
    Earl Scales, Office of the Attorney General
    Brenda Coe-Wess, Regional Director VII-East

DHS
292400



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

June 6, 2012

Honorable Margaret Alfonso
Harrison County Court Judge
P. O. Box 7017
Gulfport, MS 39506-7017

Dear Judge Alfonso:

Thank you for taking time to meet with ██████████, ██████████, ██████████, ██████████ and me on May 21, 2012. We appreciate your concern and interest in working with Family and Children's Services to achieve timely permanency for children in care. Below are the strategies that were agreed upon for the purpose of implementing the requirements of the *Olivia Y.* Settlement Agreement and expediting permanency for children in Harrison County.

**Primary Strategy I – Parent Representation.** The Court will request private/grant funding for one attorney on staff; the Court will work with Center for Legal Representation to provide services to parents; and the Court will continue to work with Administrative Office of Courts and Casey Family Programs to implement parent representation statewide.

**Rationale:** Parent representation is expected to either assist in parent cooperation and achievement of their service plan toward reunification or, if reunification is not possible, then parent representation is expected to move the termination of parental rights process more efficiently through the court system.

**Primary Strategy II – Court will consider temporary, emergency placement with a legal relative.**

When: DFCS calls the court prior to placing with relative; DFCS has performed a safety home check of relative; and background checks are negative.

Then: Court will hold hearing ASAP regarding relative placement

**Rationale:** This strategy is expected to be less traumatic for the child who is removed from the home by maintaining connections and placement with a person with whom the child has a relationship. Further, this strategy is expected to reduce the number of placements for a child removed from home.

DHS
292401

Honorable Margaret Alfonso
June 6, 2012
Page 2

**Primary Strategy III – The Court will create a team approach environment for providing services to families and children.**
By: creating a multidisciplinary team approach for putting services in place for parents and children; the Court exploring providing mental health consultations onsite; the Court exploring providing wellness clinic onsite; and the court providing atmosphere of instructing new workers regarding expectations of the Court.
**Rationale:**   A team approach is expected to promote retention of DFCS workers and supervisors. When services are provided timely, reunification or other permanent plan is expected to be achieved in a shorter length of time.

Please advise if these strategies are accurately stated according to our discussions. My phone numbers are ████████████ or ████████████ (cell) and my email address is ████████████.

We appreciate all you do for the safety, permanency and wellbeing of children of Mississippi.

Sincerely,

*Mary E. Fuller*

Mary Fuller, Attorney
Bureau Director I-Administration (Court Improvement Program)
Division of Family and Children's Services

MEF:bh

cc:  via email
     Lori Woodruff, Deputy Director of Family and Children's Services
     Mark Smith, Deputy Executive Director of MDHS
     Earl Scales, Office of the Attorney General
     Teresa Kemp, Regional Director VII-West

DHS
292402



**STATE OF MISSISSIPPI**
Phil Bryant, Governor
**DEPARTMENT OF HUMAN SERVICES**
Richard A. Berry
Executive Director

June 20, 2012

Honorable William Skinner
Hinds County Court Judge
P. O. Box 327
Jackson, MS 39205

Dear Judge Skinner:

Thank you for taking time to meet with ████████, ████████, ████████, ████████ ████████ and me on June 18, 2012. We appreciate your concern and interest in working with Family and Children's Services to achieve timely permanency for children in care. DFCS recognizes the tremendous number of cases the Court addresses each year. Below are the strategies that were discussed and agreed upon for the purpose of implementing the requirements of the *Olivia Y.* Settlement Agreement and expediting permanency for children in Hinds County.

**Primary Strategy I –Permanency Hearings will be scheduled the First Thursday of the month. Rehearings will be scheduled on the Third Thursday of the month. Adjudication hearings will be scheduled on Tuesdays.**

**Rationale:** Rehearings take more time to hear due to more involvement with attorney representation for the parties. When there are only a few rehearings scheduled, additional permanency hearings (up to twelve) could also be scheduled on the Third Thursday of the Month.

**Request:** DFCS requests that the court provide a quarterly report of Permanency Hearings held during the quarter, beginning July 1, 2012 in order to capture the volume of cases handled by the Court. If the Court is already tracking rehearings and adjudication hearings, those statistics would be important, as well as the total number of DFCS cases heard on any level by the Court.

DHS
292403

Honorable William Skinner
June 20, 2012
Page 2

**Primary Strategy II – The Court will consider forwarding cases for termination of parental rights when parents have made no efforts toward reunification or meeting service agreement requirements after six months.**

Rationale:

- The Court and DFCS will review cases where parents have made no efforts toward reunification or meeting service agreement requirements after six months.
- DFCS staff will provide the Court with a summary of previous history at the adjudication hearing.
- DFCS will request that a TPR packet be forwarded to the Attorney General's Office and a petition filed with the Chancery Court.
- The Court will consider the recommendation and order TPR packet sent to the Attorney General's Office for filing a petition.

Please advise if these strategies are accurately stated according to our discussions. My phone numbers are ████████████ or ████████████ (cell) and my email address is ████████████.

We appreciate all you do for the safety, permanency and well being of children in Mississippi and recognize the high number of cases both criminal and civil addressed by the Court.

Sincerely,

*Mary E. Fuller*

Mary Fuller, Attorney
Bureau Director I-Administration (Court Improvement Program)
Division of Family and Children's Service

MEF:mf
cc: via email
    Tammy Miller, Director of Field Operation for Family and Children's Services
    Mark Smith, Deputy Executive Director of MDHS
    Earl Scales, Office of the Attorney General
    Maggie Mixon, Regional Director III-South
    Patti Marshall, Attorney General's Office

DHS
292404

**Ex. 11**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Grace M. Lopes [gmlopes@oymonitor.org] |
| **Sent:** | Friday, September 28, 2012 8:44 PM |
| **To:** | "Mark.Smith@mdhs.ms.gov' (Mark.Smith@mdhs.ms.gov)' |
| **Cc:** | 'Rachal, Kenya'; 'Miriam Ingber' |
| **Subject:** | FM Fatality Assessment; Youth Court Strategies Submission |

Mark:

I appreciated meeting with you on September 12, 2012.  As you know, I think there has been progress, particularly with respect to data reporting, training, CQI activities, and in aspects of practice model implementation.  Nonetheless, I have some very significant concerns and I appreciate your willingness to consider and address them.

In response to your request, I indicated that I would provide you with a written summary further describing certain concerns I expressed about three documents that DFCS has produced pursuant to the Period 3 Implementation Plan ("Period 3 IP"):  1) the FM fatality assessment; 2) the Youth Court strategies submission; and 3) the workforce development plan for the carve-out counties.  I have drafted but not yet finalized my comments on the workforce development plan.  I will do my best to send you my comments early next week and am sorry for the delay.  In the interim, my key concerns regarding the fatality assessment and the Youth Court strategies submission are set out below.

## I.  The FM Fatality Assessment

The Period 3 Implementation Plan states:

> *By 30 days following the Court's approval of the Modified Settlement Agreement, Defendants shall conduct an assessment of the FM fatality, including an assessment of any failings by Defendants in the provision of foster care services, in case practice, and in licensing practice.  The written assessment shall be provided to the Monitor and Plaintiffs and shall include recommendations for ways to improve child safety and address any identified failings.*
> Period 3 IP at II.C.1.

On August 6, 2012, DFCS submitted, through counsel, a document titled, "Summary of Child Fatality Assessment to Improve Child Safety" [hereinafter "summary"].  Among other limitations, the summary does not reflect any assessment of foster care services, case practice or licensing practice in light of specific DFCS policies nor any other applicable practice standards such as the standards imposed by the *Olivia Y.* Modified Settlement Agreement ("MSA").  These omissions – in and of themselves – undercut the validity of the assessment.

As a threshold matter, the summary does not explain the methodology that was used to conduct the assessment.  It refers to unspecified documentation that was reviewed by unspecified individuals, some of whom are identified by position title.  The qualifications of these individuals, including how and why they were selected to conduct the assessment and by whom, is not addressed.  The summary also references the involvement of an independent reviewer, but it does not identify the reviewer nor explain her/his specific qualifications.  Additionally, the summary indicates that staff interviews were conducted by an unidentified DFCS staff person who was not involved in the case.  The experience and qualifications of the interviewer are not addressed and there is no explanation regarding the purpose of the interviews and the type of protocol, if any, that  was used to conduct them.  Further, the specific documentation that was reviewed is not identified.  Although a number of documents are appended to the summary, the genesis of the documents and their significance is not explained and, in at least some instances, not readily apparent.

Furthermore, the summary does not  provide a chronology of the case with the salient facts and relevant timeline extracted from the record, including the case history.  While the summary is written to imply the case record was reviewed, it does not convey any clear information about the case, including basic background

information such as the child's age, custody and placement status as well as the circumstances surrounding the child's death.  Further, the summary does not identify with specificity issues related to service delivery, case practice and relative licensure practice that are raised by the case record.   For example, the summary does not examine whether there was any indication from the record that supports/services should have been provided to the caregiver, and if they were, whether they were appropriate and adequate to meet the needs that were presented.  Additionally, the summary does not examine the training, tenure and actual caseloads of each staff member involved in the case, including caseworkers and their supervisors.  The specific conduct of all staff involved in the case is not examined in light of applicable policy guidelines.  Recommendations for remedial action that are staff-specific (*e.g.*, individualized training with respect to certain practice deficits identified during the assessment) are not included in the assessment.  The placement, and issues related to the placement, including the relative licensure process as it unfolded in the case, are not explained or examined in a clear way.

A list of "some" concerns is "noted" in the summary, implying that other concerns have been omitted.  The concerns are presented in a vague and at times ambiguous fashion and they are not tied to the record in a comprehensible manner. The following examples from the "concerns noted" section of  the summary are illustrative:

- "Training and supervision of staff to accurately identify level of risk and develop case plans accordingly is a key component within the licensure process to assure best practice is followed.  Resource worker noted concerns which were not fully addressed before licensure decisions were made."  Summary at 2, Concern #4.  The summary does not explain the training and supervision issues, if any, raised by the record.  Further, it does not explain what the resource workers concerns were nor assess whether the concerns were bona fide.  Further, the summary does not explain how, nor does it assess why, the resource worker's concerns were not fully addressed before the licensure decision was made.  The temporal connection between the formulation of the concerns and the child's death is not addressed.
- "Some issues identified, such as medical and environmental, did not have thorough follow-up."  Summary at 2, Concern #6.  There is no explanation of the basis for this concern and its significance vis-à-vis the mortality review.  For example, there is no explanation of what the medical issues are and what aspect of case practice is implicated by these issues.

Finally, the recommended action steps are vague and their efficacy cannot be assessed because of the limitations described above.  For example, the first recommendation states:  "Consider policy revision to include requirement of pictures to be taken of children's placements to be used when staffing cases with supervisor.  This will help ASWS to train workers how to assess a home's suitability and safety, and will provide additional accountability to improve ongoing assessments." Summary at 2, Recommendations for Action Steps to be Implemented at #1.  There is no explanation of the basis for this recommendation in the summary.

## II.  Written Strategies for Promoting Implementation of the Olivia Y. Standards in the Mississippi Youth Courts

Section I.A.2.c.4. of the Period 3 Implementation Plan States:

> *By July 1, 2012, the Legal and Judicial Statewide Implementation Sub-Team shall develop and begin implementing written strategies for promoting implementation of the Olivia Y. standards in the Mississippi Youth Courts.  These strategies shall be implemented in Regions VII-E, VII-W, and III-S by the end of Implementation Period 3.*

On July 5, 2012, DFCS submitted, through counsel, a document titled, "Strategies for Promoting Implementation of the *Olivia Y.* Standards in the Mississippi Youth Courts" [hereinafter "Strategies Document"].  For the most part, the document does not identify with specificity the precise *Olivia Y.* standards that have not been implemented nor does it identify or describe the implementation issues.  As a preliminary matter, the document mostly frames the strategies in terms of strategies the Youth Courts agree to implement instead of strategies the defendants will implement.  The absence of strategies the defendants will implement is conspicuous.  In a few instances, strategies are framed in terms of the assertion of general activities the

2

defendants will undertake; however, these assertions do not represent strategies. Collaborative initiatives involving the Youth Courts and DFCS are certainly important; however, their merit and efficacy cannot be evaluated without the identification of the specific standards that have not been implemented in each Youth Court.

Where specific strategies are detailed, I am concerned about the efficacy and consequences of the strategies that have been identified. For example, "parent representation" is characterized as a "primary strategy" in Harrison County. Representation for parents may be an effective strategy to address certain implementation barriers in specific circumstances; however, absent appropriate and adequate representation for the agency, a historical issue, a parent representation initiative may impede implementation of the Olivia Y. standards – not promote them. The submission does not recognize this fundamental concern.

My more general concern is that because the document does not identify with specificity the precise *Olivia Y.* standards that have not been implemented nor describe the implementation issues, it is difficult to assess how likely it is that the proposed strategies will address existing problems. While it appears from the submission that defendants based their assessment of the standards that have not been implemented on feedback from field staff, further information on whether a reliable process was used to obtain this feedback would be helpful. Moreover, even assuming the feedback that was obtained should be credited, a review of the objective data related to system performance in each region is indicated in order to determine/confirm which standards have not been implemented and to promote an objective assessment of the magnitude of the problem. Such data may also help the agency identify the barriers to implementation as well as inform the priorities and the sequencing of the initiatives that DFCS will undertake in the strategic plan.

*   *   *   *

Please let me know whether you have any questions about these comments. I hope they are helpful and I look forward to discussing them with you. Thank you. - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1350 Connecticut Avenue, N.W.*
*Suite 1000*
*Washington, D.C. 20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 12**

**STATE OF MISSISSIPPI**

**Department of Human Services**
**Division of Family and Children's Services**



# Youth Court Strategies Plan

DHS
345455

Youth Court Strategies Plan

TABLE OF CONTENTS

I. Introduction – Modified Settlement Agreement Requirements      1

II. Methodology      7

    A.  Discussions with the Regional Directors      7
    B.  Meetings with the Judges      7
    C.  DFCS Focus Groups      8
    D.  Survey      9
    E.  Review of Data      9
    F.  Technical Assistance from the NRC on Legal and Judicial Issues      9
    G.  Technical Assistance from Center for the Support of Families      10

III. Findings from Information Gathering Activities      10

    A.  Placement Practices for Children in Foster Care
        FIGURE 1:  Percent of Children Placed in County or Within 50 Miles      13
        FIGURE 2: Survey Responses Regarding Placement Proximity      14
        FIGURE 3:  Percent of Children in Unlicensed Placements      15
        FIGURE 4:  Number of Children in Expedited Relative Licensure
            Placement in Applicable Counties      15
        FIGURE 5: Survey Responses Regarding Unlicensed and Expedited
            Placement      17
        FIGURE 6: Survey Responses Regarding Placement in Least
            Restrictive Setting      18
        FIGURE 7: Percentage of Children in Custody for 12 Months or Less
            with 1 or 2 Placements      19
        FIGURE 8: Number of Children with Two or More Emergency
            Placements      20
    B.  Permanency Practices for Children in Foster Care
        FIGURE 9: Percent of Children with a Permanency Plan Approved
            Within 30 Days of Custody      21
        FIGURE 10: Percent of Children Who Exited to Reunification
            Within 12 Months      22
         FIGURES 11-14: Hinds, Hancock, Jackson and Harrison Counties
            Reunification Detail      23
        FIGURE 15: Percent of Children Who Are Adopted within 24 Months      24

DHS
345456

FIGURE 16: Survey Responses Regarding APPLA                                            25
   C.  Maintaining Connections for Children in Foster Care
FIGURE 17: Child Monthly Visits with Mother                                            26
FIGURE 18: Child Monthly Visits with Father                                            27
FIGURE 19: Child Monthly Visits with Siblings                                          27
FIGURE 20:  Survey Responses to Parental/Sibling Visits                                28
   D.  Permanency Planning for Children in Foster Care
FIGURE 21: Percentage of Children in Custody over 17 of Last 22
       Last 22 Months with Either a TPR Filed or an ASFA
       Exception Noted                                                             29
FIGURE 22: Percentage of Children Reaching their 17th Month
       (of 22 Months) in Custody Who Have Either a TPR
       Filed or an ASFA Exception Noted by the End of the
       the 17th Month                                                             30
FIGURE 23: Survey Responses Regarding Timeliness of  TPR
       Proceedings                                                                31
FIGURE 24: Percentage of Children Receiving Timely FCRs                                32
FIGURE 25: Percentage of Children with Timely Permanency Hearings                      32
FIGURE 26:  Survey Responses to Timeliness of Permanency Hearings                      33
FIGURE 27: Survey Responses on 90-Day Trial Home Visits                                34
   E.  Knowledge of Court Processes
FIGURE 28: Survey Responses Regarding Court Report Content                             35
FIGURE 29: Survey Responses Regarding Workers' Responsiveness to
       to Court Procedures                                                        36
FIGURE 30: Survey Responses Regarding Training in Court Procedures                     36

IV. Summary of Findings Needing Attention                                             37

V. Planned Improvement Strategies                                                     38

   A.  Build the credibility of DFCS staff to represent solid practice (within
      the context of the family-centered Practice Model) and to represent
      DFCS' position in court proceedings.                                       38
   B.  Identify common ground between the courts and DFCS on how both
      can work together to achieve the outcomes that both deem desirable.        40
   C.  Identify strategies that address "procedural" issues that overlap
      with DFCS and the courts.                                                  41

VI. Matrix Action Plan                                                                42

DHS
345457

# Youth Court Strategies Plan
## June 21, 2013

## I. Introduction

The Period III Implementation Plan (Y3IP) of the Modified Settlement Agreement (MSA) at Section I.A.2.c.4, requires the following:

> By July 1, 2012, the Legal and Judicial Statewide Implementation Sub-Team shall develop and begin implementing written strategies for promoting implementation of the Olivia Y. standards in the Mississippi Youth Courts. These strategies shall be implemented in Regions VII-E, VII-W, and III-S by the end of Implementation Period 3.

The Mississippi Department of Human Services, Division of Family and Children's Services (DFCS) submitted the first version of the Youth Court Strategies Plan (the "Plan") to the Court Monitor on June 21, 2012. Based on the comments of the Court Monitor and the continued work of the Legal and Judicial Sub-Team of the State Implementation Team, in collaboration with the Center for the Support of Families (CSF), DFCS has revised and is re-submitting the Plan to the Court Monitor.

Y3IP and the Youth Court Strategies Plan recognize that there are unique issues to be addressed in four counties in the state (Jackson, Harrison, Hancock and Hinds) referred to as the "Carve Out Counties." These four counties include roughly 39% of the state's foster care population. Three of the four were affected by the hurricanes of 2005, and all four counties have traditionally found staffing to full capacity to present great challenges. Also, with regard to other critical indicators, these counties have not performed to the standards required in the MSA in areas such as caseworker visits with children and parents and placement of children in licensed placements. In some areas of performance cited in the MSA, the Carve Out Counties are treated separately from other counties in terms of the dates in which they must attain certain performance or capacity measures.

In 2011, DFCS requested and was granted an increase in the starting salary for staff hired in the Carve Out Counties. This has helped to alleviate some of the difficulty in recruiting and retaining qualified staff. In 2013, DFCS obtained an additional type/duty/location salary adjustment for new staff hired in the coastal counties.

Other initiatives in place to help improve performance and capacity within the Carve Out Counties include the assignment of State Office staff to the Carve Out Counties to assist

DHS
345458

management in those counties in building needed staff capacity and attaining required performance levels.

Still, there remains a number of areas that require attention in order to assist the Carve Out Counties attain the level of performance and capacity required by the MSA and desired by the staff and administration of DFCS. The MSA identifies several specific areas in which the involvement of the courts is integral to DFCS' success in implementing the MSA, including the following:

With regard to **placement proximity** for children in foster care, the MSA at Section II.B.2.g requires that:

> *Each child shall be placed within his/her own county or within 50 miles of the home from which he/she was removed. This provision shall not apply if: (1) the child's needs are so exceptional that they cannot be met by a family or facility within his/her own county or within 50 miles of the home from which he/she was removed; (2) the child is placed through the ICPC consistent with its terms; (3) the child is appropriately placed with relatives or another planned permanent resource; (4) the child is ordered to be placed in a child-specific foster care setting by a court; or (5) the child is placed in an adoptive home.*

With regard to **placing children in unlicensed placement settings**, the MSA at Section II.B.2.p (2) and (4) requires that:

> *No foster child shall be placed or remain in a foster care setting that does not meet DFCS licensure standards consistent with Modified Settlement Agreement requirements, unless so ordered by the Youth Court over DFCS objection.*
>
> *All unlicensed placements in which foster children are residing as of the date the Court approves this Modified Settlement Agreement that meet the requirements of the licensure process shall be licensed. All children who have been living in any of those unlicensed placements that do not meet the requirements of the licensure process shall have been moved into licensed and appropriate resource home placements, unless the Youth Court orders that the child not be moved.*

Regarding **permanency roundtables**, the MSA at Section II.B.6.a (2) requires that:

> *Permanency roundtables shall be conducted by a permanency roundtable team consisting of a master practitioner and/or permanency consultant, a scribe, a neutral facilitator, the caseworker, and the supervisor. Prior to conducting any roundtables, the participating DFCS staff, court personnel, and community stakeholders shall be trained on the roundtable process.*

With regard to **permanency goals**, the MSA at Section III.B.3.a (5) requires that:

> *If DFCS concludes, after considering reunification, adoption, durable legal custody, and permanent placement with a relative, that these permanency plans*

DHS
345459

*are inappropriate or unavailable for a child, DFCS may assign a permanency goal of Another Permanent Planned Living Arrangement (APPLA) for the child. In such circumstances, (1) the child must be at least 16 years old and (2) DFCS must document to the Youth Court a compelling reason why this permanency goal is in the best interest of the child and more appropriate than reunification, adoption, durable legal custody, or permanent placement with a relative.*

With regard to **permanency hearings**, the MSA at Section III.B.3.c (1) and (2) requires that:

*A child's permanency plan shall be reviewed in a court or administrative case review at least every six months. Foster care reviews shall satisfy this administrative case review requirement. DFCS will take reasonable steps, including written notice, to ensure the participation of the child, parents, caregivers, and relevant professionals in court or administrative reviews.*

*DFCS will take reasonable steps to ensure that a court review, which may be called a review, dispositional, or permanency hearing, is held for each child in foster care custody within 12 months of initial placement, and annually thereafter.*

Regarding **visits between children and their families**, the MSA at Sections III.B.5.a and b requires that:

*For all children entering foster care, a visitation plan for the child and his/her family shall be developed as part of the service plan. This visitation plan shall be developed and regularly updated in collaboration with parents, resource parents, and the child. If parental visitation is appropriate based on the above factors, this visitation plan shall include a minimum of two visits per month with the parents (unless a court order in the child's case limits such visits). For all children, regardless of permanency goal, this visitation plan shall include at least one visit per month with any siblings not in the same placement (unless a court order in the child's case limits such visits).*

*DFCS shall arrange contact for the child with his/her parents and with any siblings not in the same placement within 24 hours of foster care placement unless there are documented reasons why contact should not occur. If a visit cannot be arranged within 24 hours, a telephone call to parents, siblings, or extended family members must be provided to the child.*

With regard to children **changing schools**, the MSA at Section III.B.6.d (2) requires that:

*School-age foster children in that region who enter custody or are subject to a change in schools due to a placement move shall be registered for and attending an accredited school within three business days of the initial placement or placement change, including while placed in shelters or other temporary placements, unless delayed by the Youth Court.*

With regard to **trial home visits** for children being reunified, the MSA at Sections III.B.8.b and c requires that:

DHS
345460

*For each child who has a permanency goal of reunification and who is in fact placed in the home for the purpose of reunification, DFCS shall provide, subject to the approval of the Youth Court, such child with a 90-day trial home visit, unless that child had been in custody for less than 90 days. During any trial home visit period, a DFCS caseworker shall meet with the child in the home at least two times per month, and each meeting shall occur without the parent or caretaker present.*

*Before the end of any trial home visit period, there shall be a final family team meeting, which shall include the child's caseworker, the caseworker's supervisor, the child, and the parent or relative assuming custody, to determine the appropriateness of a final discharge. If final discharge is determined to be appropriate, DFCS shall make the appropriate application to the court to be relieved of custody.*

Regarding **training of DFCS staff,** the Y3IP at Section I.A.3.a (3) requires that:

*By September 1, 2012, Defendants shall strengthen the competency-based testing to ensure that trainees have acquired adequate competencies in the areas of interviewing, critical thinking skills, and documentation skills related to child safety assessments and to preparing case summaries for submission to the Youth Court.*

With regard to **annual court reviews,** the Y3IP at Sections II.B.2.a and b requires that:

*Within six (6) months of the start of Implementation Period 3, Defendants shall develop a system for tracking the annual court reviews for each child in care. Defendants' policy shall require that the Youth Court with jurisdiction is provided with a detailed up-to-date report on the current status of the child's placement, visitation, permanent plan progress, and service needs. Defendants shall begin implementing that system before the end of Implementation Period 3.*

*The child's assigned caseworker or supervisor shall attend every child's annual court review unless there are exceptional circumstances that do not allow attendance.*

Further, in addition to these areas of the MSA where court involvement is specifically identified, the following outcome areas, which DFCS is accountable for, are highly dependent upon the actions of both DFCS and the courts:

With regard to **placing children in the least restrictive setting and in temporary facilities,** including shelter care, the MSA at Sections II.B.2.f, k, m, and requires that:

*Each foster child shall be placed in the least restrictive setting that meets his/her individual needs as determined by a review of all intake, screening, assessment, and prior placement information on the child available at the time of placement. In order of consideration, this means placement with relatives; resource home care within reasonable proximity to the child's home community; resource foster*

4

DHS
345461

*home care outside of the child's home community; group home care; or institutional care.*

*No foster child shall remain in an emergency or temporary facility for more than 45 calendar days, unless, in exceptional circumstances, the Division Director or Field Operations Director has granted express written approval for the extension that documents the need for the extension;*

*No child under 10 years of age shall be placed in a congregate care setting (including group homes and shelters) unless the child has exceptional needs that cannot be met in a relative or foster family home or the child is a member of a sibling group, and the Regional Director has granted express written approval for the congregate-care placement. Such approval shall be based on the Regional Director's written determination that the child's needs cannot be met in a less restrictive setting and can be met in that specific facility, including a description of the services available in the facility to address the individual child's needs. Sibling groups in which one or more of the siblings are under the age of 10 shall not be placed in congregate care settings for more than 45 days; and*

*No child shall be placed in more than one emergency or temporary facility within one episode of foster care, unless an immediate placement move is necessary to protect the safety of the child or of others as certified in writing by the Regional Director.*

With regard to **termination of parental rights,** the MSA at Section II.B.3.3 (1) requires that:

*A termination of parental rights petition ("petition to TPR") shall be filed on behalf of children who have spent 17 of the previous 22 months in foster care by the last day of a child's seventeenth month in care, unless an available exception under ASFA has been documented by Defendants in the child's case record.*

Regarding the child's **permanency plan,** the MSA at Section III.B.3.a requires that:

*Defendants shall work with service providers, resource parents, the child, and the family to develop and document in the child's case record a permanency plan that specifies the permanency goal, a timeframe for achieving permanency, and activities that support permanency.*

*Within 30 calendar days of the child's initial placement, a permanency plan shall be developed that specifies the permanency goal, a timeframe for achieving permanency, and activities that support permanency.*

*No child shall be assigned a permanency goal of durable legal custody unless there are documented efforts in the child's case record to move the child to adoption and documentation of a reasonable basis why it is in the child's best interests not to be considered for adoption.*

*No child shall be assigned a permanency goal of permanent foster care.*

5

> *If DFCS concludes, after considering reunification, adoption, durable legal custody, and permanent placement with a relative, that these permanency plans are inappropriate or unavailable for a child, DFCS may assign a permanency goal of Another Permanent Planned Living Arrangement (APPLA) for the child. In such circumstances, (1) the child must be at least 16 years old and (2) DFCS must document to the Youth Court a compelling reason why this permanency goal is in the best interest of the child and more appropriate than reunification, adoption, durable legal custody, or permanent placement with a relative.*

With regard to **concurrent planning** for children in foster care, the MSA at Section III.B.3.b requires that:

> *For children with the goal of reunification, DFCS shall begin, within the first six months of the child's entry into care, to engage in concurrent planning.*

With regard to the **outcome measures** DFCS must ultimately achieve, the MSA requires the following:

> At Section II.C.1, in the last year (of the MSA) *at least 86.7% of children state-wide in care less than 12 months from the time of latest removal from home shall have had two or fewer placements*;

> At Section III.C.1, *at least 76.2% of children state-wide discharged from custody and reunified with their parents or caretakers in the last year shall have been reunified within 12 months of the latest removal from home.*

> At Section III.C.2, *at least 32% of children state-wide who were discharged in the last year upon the finalization of an adoption shall have had the adoption finalized within 24 months of the latest removal from home.*

In order to make measurable improvements in the foregoing areas, it is necessary to develop strategies that will engage both the Youth Courts and DFCS in coordinated improvement efforts designed to strengthen performance and outcomes for children and families. Since both the Courts and DFCS have well-defined responsibilities for children in the child welfare system, the intent of this Plan is to help to coordinate and direct activities and approaches that will assist in improving the results of the child welfare system's intervention in the lives of the children and families it is designed to serve. In order to reach this goal, DFCS has used the methodology that follows to identify areas needing the attention of this plan and to develop improvement strategies to address those areas.

DHS
345463

## II. Methodology

The approach to gathering information for this Plan was to identify issues needing attention and to craft strategies that are directed toward alleviating and improving these issues. These data-gathering activities include the following:

### A. Discussions with the Regional Directors

As a starting point, the Legal and Judicial Sub-Team of the Statewide Implementation Team determined that it was essential to obtain the perspective of DFCS' leadership in each of the regions' Carve Out Counties regarding practices of the Youth Court which present barriers to permanency for children and/or barriers to retention of workers in the regions. The Sub-Team requested that the Regional Directors (RD) in Regions III-S, VII-E, and VII-W solicit information from the field staff and provide this information to the members of the Sub-Team in order for their input to be reviewed during the regular monthly meetings. Two RDs submitted their concerns in writing in February and March, 2012. As a follow up, several members of the Sub-Team attended Senior Management Team meetings in June 7, 2012 and August 2, 2012 to share information regarding efforts underway in Court Improvement initiatives and requested the RDs provide written examples of legal and judicial issues in their counties. DFCS sent a request to 10 RDs in September, 2012, asking that they convey, in writing, any current issues regarding the courts and to indicate progress and positive outcomes as well. All 10 RDs responded with information regarding the status of legal and judicial issues across their regions.

### B. Meetings with the Judges

In order to engage the court systems in the planning process and obtain a greater understanding of the most pressing concerns and issues that currently impact effective court practice and procedures, DFCS convened a series of meetings during the months of May and June 2012 with Youth Court judges, chancellors, referees, and court personnel in all Carve Out Counties. These meetings focused on the MSA requirements and the need to foster collaboration in developing strategies to achieve performance measures and improve outcomes to children and families.



The first meeting took place on May 21, 2012. ███████, DFCS Deputy Executive Director, ███████ from the Attorney General's Office, ███████, former DFCS Deputy Director, and ███████, DFCS Bureau Director of Administration, met with Harrison County Youth Court Judge Margaret Alfonso. Also in attendance were court personnel from Harrison County and Region VII-W Director ███████.

On May 22, 2012, ███████, ███████, and ███████ met with Jackson County Youth Court Judge Sharon Sigalis. Region VII-East Director ███████ was also present. In a separate meeting, also on May 22, 2012, ███████, ███████, and ███████ met with Chancellor Sanford Steckler (8th Chancery District) and Referee Elise Epperson

7

Deano from Hancock County, along with ███████████, to facilitate a discussion regarding the MSA requirements and mutual issues of concern regarding key performance measures.

On June 18, 2012, ███████, ███████, and ███████ met with Hinds County Youth Court Judge William Skinner, to solicit input and collaborate in developing strategies to achieve MSA requirements and improve outcomes for children and families being served in this county. Also attending this meeting were ███████████, DFCS Director of Field Operations and ███ ███ from the Attorney General's Office, as well as Region III-South Director ███████ ███.

In all of the meetings with the judges in these Carve Out Counties, the primary discussion focused on concerns regarding staff recruitment and retention as well as barriers to achieving permanency for children involved with the child welfare system. At the conclusion of each of the four meetings with the judges, the participants proposed specific solutions and strategies for improving the capacity of DFCS to meet MSA requirements. These strategies are more fully developed and described in greater detail in the action plan.

On May 17, 2013, DFCS staff, ███████████████ of the NRCLJI, and family court judge Thomas Broome, held follow-up meetings with the judges and referee in Regions VII-E and VII-West (Harrison, Jackson, and Hancock Counties). Findings from these meetings are discussed later in the Plan.

### C. DFCS Focus Groups

As another means of gathering information, DFCS also convened focus groups with direct service staff and ASWSs in the Carve Out Counties. The format for the focus groups, as well as the topics and issues covered in these discussions were, by design, broad in scope as these sessions were primarily intended to obtain information related to DFCS' capacity to recruit and retain staff in these counties. However, in all of the focus groups, the relationship between DFCS and the courts, as well as the experience of working with the judicial system, surfaced as a significant area of concern for participants. Thus, this information was beneficial to the identification of priority issues, particularly from the perspective of the county staff.

The first focus group took place on May 17, 2012. ███████████ of DFCS met with Hinds County staff to identify strengths and gaps regarding recruitment, retention, lack of supervision, working environment, lengthy time spent in court and other issues. Subsequent to this focus group, ███████████, University of Southern Mississippi Social Work Consultant, and ███ ███ met with the Hancock County staff on May 21, 2012, to identify issues with the Court and possible strategies for improvement. ███████████ held a focus group in Harrison County on May 21, 2012. The staff shared a number of concerns regarding delays in TPR and adoption proceedings. ███████████ also conducted a focus group with staff in Jackson County on May 22, 2012. In this group, many shared concerns regarding multiple changes in workers' supervisors and need for more resource homes.

8

DHS
345465

After holding focus groups with staff in the Carve Out Counties, ███████ held a focus group with the DFCS RDs on July 11, 2012. The RDs reported that most are working at motivating their staff through appreciation lunches twice a year, issuing certificates and written recognition. Several RDs reported improved perception of DFCS in the community. The RDs cited salary as the greatest barrier to recruitment and retention; however, heavy volume of work, unappealing working conditions in offices, and frustration with reporting measures they perceive as impossible to attain, were also cited as barriers.

### D. Survey

With the assistance of CSF, DFCS designed and conducted an electronic survey of all staff from the Carve Out Counties from February 19–March 5, 2013. We received a total of 95 responses to the survey, including 72 social workers and 17 supervisors. Thirty-seven of the respondents were from Jackson County, 26 from Harrison County, and 18 respondents each from Hancock and Hinds Counties. The survey was conducted using questionnaire for the Court Strategies Plan and the results were tabulated by CSF by downloading the results into Excel and utilizing the reporting functions available in Survey Monkey. (Survey results are shown in the Figures 2, 5, 6, 16, 20, 23, 26, 27, 28, 29 and 30. See pages 14-36)

### E. Review of Data

With the assistance of CSF, we conducted a review of data generated by MACWIS on the Carve Out Counties in order to identify performance levels of the four counties in relation to the state as a whole and to the performance levels cited in the MSA. We examined 11 validated MACWIS data reports for the Carve Out Counties for the months of October, November and December 2012. Six of the 11 reports were rolling year reports, i.e., they captured the previous year's data, 3 were monthly reports, and 2 were reports capturing data as of the last day of the month. From these 11 MACWIS reports, we created charts using Excel to graphically display the four counties' performance over the 3-month period captured. (See pages 14-36)

### F. Technical Assistance from the National Resource Center on Legal and Judicial Issues

In addition to gathering information needed to identify areas to be covered by this plan, DFCS was able to use the services of the National Resource Center on Legal and Judicial Issues (NRCLJI) to facilitate discussions on strategies that DFCS might best use to address the areas included in the Plan.

DFCS requested and was granted approval by the Region IV Office of the Administration for Children and Families (ACF) to receive technical assistance (TA) from the NRCLJI, which includes the American Bar Association's Center for Children and Law, the National Center for State Courts, and the National Council of Juvenile and Family Court Judges to assist in developing written strategies and communication with judges to affect changes. DFCS also

9

requested assistance in developing additional training for staff in court practice and preparing cases that will stand up in court.

████████████, a former judge and consultant with the NRCLJI, was appointed as the contact person and facilitator for technical assistance to DFCS. Several planning calls were held among the NRCLJI, DFCS, and CSF leading up to a March 27, 2013 onsite convening of these parties for the purpose of discussing strategies to address court-related issues in the Carve Out Counties. In addition to representatives from the NRCLJI, DFCS, and CSF, the onsite TA meeting included ████████ AG for DFCS, ████████, VII-West RD (Harrison and Hancock Counties), ████████, VII-East RD (Jackson County) and ████████, III-South RD (Hinds County). Mr. ████ facilitated the TA meeting, which was also attended by ████████ ████████, a former judge and consultant with the NRCLJI. During the meeting, the group identified 3 broad categories of possible strategies, based on the group's discussion and consideration of other information, which are addressed later in this plan. Plans were also discussed for upcoming meetings with the judges in the 3 coastal counties and how the Sub-Team might be most effective in addressing strategies with the courts.

During meetings with the 3 coastal county judges on May 17, 2013, ████████████ was present, along with DFCS staff and the RDs.

### G. *Technical Assistance from the Center for the Support of Families*

As noted earlier, CSF provided assistance to DFCS by developing the electronic survey and analyzing the results of the survey. CSF also analyzed and prepared its analysis of multiple data indicators with court-related relevance for inclusion of the plan.

In helping prepare the RDs for upcoming meetings with their judges, and to build capacity at the regional level to analyze and use data in their ongoing court-related and program improvement efforts, ████████ of CSF conducted meetings with the RDs of the Carve Out Counties and their Regional CQI Sub-Teams. He and staff of State Office Continuous Quality Improvement (CQI) met with the RDs and CQI Sub-Teams in Regions VII-East and VII-West during the week of May 6, 2013, and with the RD and CQI Sub-Team in Region III-South on May 20-21, 2013. During these meetings, ████ presented regional data and assisted the teams in identifying relevant data for court strategies, and assisted the RDs in preparing to present and discuss the data with the courts.

## III. Findings from Information Gathering Activities

Through the information-gathering activities described above, we have identified a number of findings relevant to this Plan. In some situations, the findings identify areas that are working well and need to be continued with regard to ongoing strategies. In other situations, we have identified areas needing attention through new or expanded strategies.

DHS
345467

From the meetings with judges, a number of areas were identified where progress has been made in addressing court-related issues. For example:

**In Harrison County, we have identified the following:**

- The pilot Parent Representation Program in the county is working well and is encouraging collaboration among all the parties in court proceedings. A cross-training event initiated by the court for attorneys who represent parties in Youth Court and DFCS leadership and staff is scheduled for August 23, 2013. Unfortunately, the County Board of Supervisors is currently not willing to continue funding for the pilot Parent Representation Program beyond the pilot phase. However, the court will seek continued grants or additional grants to sustain the project.

- Communication between DFCS and the court has improved due, at least in part, to regular meetings between DFCS and the courts.

- From July 2012-May 2013, Harrison County shows the following personnel actions: New Hires 64; Terminations 8 (as recorded on the Personnel Unit Log and verified by New Hire Packets, Voluntary and Involuntary Transaction Packets).

**In Jackson County, we found the following:**

- A grant-funded Permanency Coordinator position is providing positive benefits to children within the county, such as improvements in the timeliness of permanency hearings, and reviews of children in custody for 15 of 22 months, and monthly staffing of children in custody for permanency. The court will maintain this position.

- The court has begun implementation of a program targeting children under age 6 who have been in custody over 12 months or who have siblings in care through a "Heartbeat List" and monthly "Heartbeat Meetings" which begin in July 2013.

- A partnership is being developed with a private adoption agency (200 Million Flowers) to target older children awaiting adoption by providing professional portraits of the children and providing information to prospective adoptive parents.

- The court has noticed improved training for DFCS staff in court procedures.

- The court now has a full-time guardian *ad litem*. As a result the court has seen improvements in guardian *ad litem*/DFCS collaboration on court procedures.

- The court has had an increase in Court Appointed Special Advocate (CASA) volunteers and now has 70 total volunteers.

- The court staff and judge have met with the DFCS Independent Living Director and now have a better understanding of the independent living services available to youth, including through SCSCY. The court will be able to better explain to youth the advantage of participating in these services.

- The court has noticed improved communication between DFCS and the court.

DHS
345468

- From July 2012-May 2013, Jackson County shows the following personnel actions: New Hires 29; Terminations 9 (as recorded on the Personnel Unit Log and verified by New Hire Packets, Voluntary and Involuntary Transaction Packets).

**In Hancock County, we found the following:**

- The court now has two full-time, non-attorney guardians *ad litem* for children.

- There has been an increase in CASA volunteers to 38 total volunteers.

- From July 2012-May 2013, Hancock County shows the following personnel actions: New Hires; 25 Terminations 8 (as recorded on the Personnel Unit Log and verified by New Hire Packets, Voluntary and Involuntary Transaction Packets).

**In Hinds County, we found the following:**

- Permanency Hearings are scheduled and held the first and third Thursdays of the month.

- Orientation for new workers regarding court procedures occurs frequently.

- TPRs are being reviewed early in some cases, where appropriate, when parents have made no effort to complete a Service Agreement or do not show any interest in regaining custody of their children.

- From July 2012-May 2013, Hinds County shows the following personnel actions: New Hires 45; Terminations 7 (as recorded on the Personnel Unit Log and verified by New Hire Packets, Voluntary and Involuntary Transaction Packets).

From meetings with judges and focus groups DFCS has identified the following concerns:

- In some areas, there are continued challenges in communication between DFCS and the court.

- In some areas, drug testing is mandated when drug usage is not the reason for removal, and visitation between children and parents is not allowed due to positive test for drugs.

- Foster parents' needs are not being met in regard to communication and services available.

**From the data analysis of the MACWIS reports and our survey responses, we made the findings described below:**

### A. *Placement Practices for Children in Foster Care*

Within the area of placement practices for children in foster care, we looked at children placed within the county or within 50 miles of home, as captured on the MACWIS data report MWLS314S, *Placement Proximity for Children in Custody*. We looked at the 4th quarter of 2012 for the Carve Out Counties, as shown in **Figure 1** below.

12

**Figure 1:  Percent of Children Placed in County or Within 50 Miles**



MACWIS data show that all four Carve Out Counties have remained consistent in the percentage of children placed in proximity (within 50 miles) to their removal home, and well above the statewide Y3IP requirement of 85%. Jackson County had the highest percentage of children placed in close proximity to their removal home, and improved to 100% over the quarter, while Hinds County had the lowest percentage meeting the standard among the Carve Out Counties.

In comparing MACWIS data to the results of our survey, most respondents indicated that the Carve Out Counties did a good job of routinely placing children within 50 miles of the homes from which they are removed.

**Figure 2** below shows the responses for the statement: *In this county, caseworkers routinely place children in close proximity to the homes from which they were removed (within 50 miles).*

DHS
345470

**Figure 2:**
**Survey Responses Regarding Placement Proximity**



In this county, caseworkers routinely place children in close proximity to the homes from which they were removed.

- 8.0%
- 2.3%
- 11.5%
- 32.2%
- 46.0%

☐ Almost Always
■ Frequently
☐ Sometimes
☐ Rarely
■ No opinion/no information

Over 75% of respondents indicated that workers placed children in close proximity to their removal home 'almost always' or 'frequently'. When asked to describe reasons why children may be placed outside of a 50-mile radius, the most common response was an 'insufficient number of resource homes available' (40 respondents), followed by 'lack of therapeutic or residential facilities' (30 respondents) and 'no local relatives or relatives are located outside the county' (20 respondents). Other common responses why children may be placed beyond the 50 miles were that 'large sibling groups are hard to place' (13 respondents) and the 'behavior, special or medical needs of the child' (13 respondents). This suggests that a lack of both quantity of homes and variety of placement types impact a child's proximity of placement.

In addition to placement proximity, we reviewed information pertaining to placement of children in unlicensed homes. **Figure 3** below depicts the percentage of children in unlicensed placements in the Carve Out Counties from the MACWIS report MWLS319, *Children in Unlicensed Placements.*

14

DHS
345471

**Figure 3:**
**Percent of Children in Unlicensed Placements**



For the time periods examined, Hinds and Jackson Counties met the MSA regional requirement of no more than 20% of children being placed in unlicensed placements, while Hancock and Harrison Counties in Region VII-W did not.[1] Three of the Carve Out Counties showed decreases in the percentage of children placed in unlicensed placements over the 3 month period, with Hancock County being the only one with increases over the period of over three percentage points.

With regard to children in unlicensed homes that are identified as "expedited relative placements" to reflect the MSA requirement of licensure of such placements within 90 days, **Figure 4** below, based on the MACWIS data report MWLS319, *Children in Unlicensed Placements*, shows that approximately half of expedited licensed placements are not licensed in a timely manner.

---

[1] This report indicates all four counties have unlicensed placements while the same report notes only 2 counties have expedited relative placement licensures. It is possible that this reflects a data entry error (placements being labeled Court Ordered Non-Licensed Relative as opposed to Expedited Relative Placement).

DHS
345472

**Figure 4:**
**Number of Children in Expedited Relative Licensure Placements**



Only two of the Carve Out Counties show placements labeled as expedited relative placements in MACWIS, and neither has met the MSA regional standard of 80%. Also, the data provided show that Jackson County utilizes expedited relative licensure at least six times more frequently than Harrison County. We are hesitant to make firm conclusions based on this data report given the lack of expedited placements recorded for two of the four Carve Out Counties.

Survey responses to the survey on unlicensed and expedited placements were similar to the MACWIS findings, as shown in **Figure 5** below. Respondents indicated that to a greater extent, children are placed in unlicensed placements not subject to the 90-day expedited licensing process. For the statement, *In this county, children are not placed in any type of unlicensed placement settings, including relatives, unless the home is subject to the 90-day expedited licensing process*, only 50% of respondents answered 'almost always' or 'frequently'.

16

DHS
345473

**Figure 5:**
**Survey Responses Regarding Unlicensed and Expedited Placement**



Looking at the responses of why children are placed in unlicensed placement settings, the most common response was "expedited placement" (18 respondents), although it is unclear from the responses if respondents were suggesting that a child is placed in an expedited placement that often exceeds the 90-day licensing timeframe. Other common responses to why children may be placed in an unlicensed placement setting were "relatives not completing licensure requirements in a timely manner" (14 respondents) and "court ordered placement" (8 respondents).

While survey respondents were not as confident about placing children consistently in licensed or expedited placements, survey respondents indicated that workers did an excellent job in placing children in the least restrictive setting, as shown in **Figure 6** below, responding to the statement: *In this county, children are placed in the least restrictive setting that can meet their individual needs and promote the attainment of their permanency plan.*

17

**Figure 6:**
**Survey Responses Regarding Placement in Least**
**Restrictive Setting**

Nearly half of survey respondents indicated that children are 'almost always' placed in the least restrictive setting to meet the child's needs and promote permanency, with another 34.1% indicating that this occurred 'frequently'. When asked for reasons why children might be placed in a setting that is not the least restrictive, the most common response was that there are 'no available homes' or 'a lack of 'good' homes' (10 respondents). Other common responses included the child having greater/special needs requiring acute or therapeutic placement (7 respondents) and the behavior of the child (7 respondents).



Finally, within the category of placement practices, we also reviewed data pertaining to movement of children from one placement to another during episodes of foster care. **Figure 7** below, based on the MACWIS data report MWLSPLM5, *Children in Custody Less Than 12 Months with 1 or 2 Placements*, depicts the number of children in custody less than 12 months with only one or two placements.

All Carve Out Counties met the statewide Y3IP requirement that 60% of children in custody for less than 12 months have only 1 or 2 placements. In addition, all Carve Out Counties, with the exception of Hinds County showed an increase over the 3 month period. Jackson County had the highest percentage of compliance by the end of the quarter with 74.12% while Hinds County had the lowest percentage with 63.98%.

18

DHS
345475

**Figure 7:**
**Percent of Children in Custody for 12 Months or Less with 1 or 2 Placements**



We also reviewed placement stability by looking at the extent to which counties rely on emergency or temporary placements. **Figure 8** below shows the results of MACWIS data report MWLS51D, *Children with 2 or More Emergency Placements in a Single Custody Episode*, for the 4th quarter of 2012.

As the figure shows, the MSA requirement is that no more than 180 children in custody statewide will have two or more emergency placements during their current custody episode. The data show statewide numbers of children in custody with two or more custody episodes being just over 300 children. The four Carve Out Counties account for over one-third of the number of the 300+ children statewide that have actually experienced two or more emergency placements in a single custody episode and nearly three-quarters of the 180 children allowable under the MSA to experience two or more emergency placements in the state. Hinds County has the largest number of children experiencing two or more emergency placements, followed by Harrison, then Jackson County. Hancock County has very few children experiencing two or more emergency placements compared to the other carve-out counties.

DHS
345476

Figure 8:
Number of Children with Two or More Emergency Placements



### B. Permanency Practices for Children in Foster Care

Assigning the correct and appropriate permanency goal to children in custody is critical to ensuring that children achieve lasting permanency in a timely manner. Depending on the age of the child, length of time in care, engagement and actions of family and other case circumstances, some permanency goals may be more appropriate than others. All permanency goals for children in custody must be approved by the court.

As shown in **Figure 9** below, we reviewed the MACWIS data report MWLS312, *Children with a Permanency Plan with 30 Days*, to determine the extent to which the Carve Out Counties are achieving the MSA requirement that a child have an approved permanency plan within 30 days of entering custody.

DHS
345477

**Figure 9:**
**Children with an Approved Permanency Plan within 30 Days**



None of the Carve Out Counties met the Y3IP regional standard of 90% for the time period we reviewed. Jackson County had the highest percentage of children meeting the standard, followed by Hinds, Harrison and Hancock Counties respectively. All four Carve Out Counties remained relatively consistent performance-wise over the 3-month period.

With some exceptions, the initial permanency goal for the majority of children entering custody is reunification, as DFCS' primary focus is to return the child to the home from which (s)he is removed, as long as it is safe and appropriate to do so. **Figure 10** below shows the Carve Out Counties' success in reunifying children within 12 months of custody, based on the MACWIS data report MWBRD05, *Children Leaving Custody and their Outcome Detail.*

21

**Figure 10:**
**Children Reunified within 12 Months of Custody**



All Carve Out Counties met the Y3IP regional standard for all 3 months of the quarter with the exception of Hinds County, which met the standard only for the month of November. Harrison County had the greatest percentage of children meeting the MSA regional standard. Hinds, Jackson and Hancock Counties all experienced a large increase in the percentage of children meeting the standard in the month of November, but then decreased in December.

Looking in closer detail at the MWBRD05, *Children Leaving Custody and their Outcome*, a pattern emerges about the length of time children who exit to reunification are spending in custody, as described in Figures 11, 12, 13 and 14 below.[2]

---

[2] Numbers presented are as detailed in the MWBRD05 report and do not account for all circumstances where children enter and exit custody in a couple of days and are not timely entered into the system or timely discharged from the system.

DHS
345479

**Figure 11:**
**Hinds County Reunification Detail**



**Figure 12:**
**Jackson County Reunification Detail**



**Figure 13:**
**Hancock County Reunification Detail**



**Figure 14:**
**Harrison County Reunification Detail**



Jackson County had the greatest percentage of children who are reunified within one month of custody, with these quick reunifications occurring in 10% or more of the reunifications in the 3-month period studied, suggesting a need to look at placement prevention efforts for children who enter and exit custody in quick succession. Hancock County had the lowest percent of children

23

who are reunified within one month of custody. Harrison County had the lowest overall average of months from custody to reunification, ranging from 7.3 to 7.6 months, as well as the greatest number of children being reunified in the 3-month period studied. Hinds, Jackson and Hancock Counties all experienced a decrease in the average number of months to reunification in the month of November 2012. As a whole, Hinds County had the highest average of months to reunification of the Carve Out Counties.

In addition to reviewing for timely reunification, we reviewed for timeliness of adoption for children with that permanency goal. The federal government has set the standard for all states to achieve adoptions within 24 months of entry into foster care and the MSA has adopted the same requirement. **Figure 15** below depicts the results of the MACWIS data report MWBRD10, *Length of Time between Court Custody and Adoption Finalization.*

**Figure 15:**
**Children Adopted within 24 Months of Custody**



Harrison and Hancock Counties met the Y3IP regional standard of 25% in all 3 months of the quarter reviewed. Hancock County overall had the greatest percentage of children meeting the MSA regional standard, with Jackson and Hinds Counties having the lowest percentages. It should be noted that Harrison and Jackson Counties experienced a large drop in the percentage

24

DHS
345481

of children meeting the standard from October to November[3], while Hancock and Hinds Counties remained relatively consistent across the quarter.

The permanency goal of Another Planned Permanent Living Arrangement (APPLA) should be assigned to children in custody only if they are age 16 and older and all other permanency goals including adoption and reunification have been considered and ruled out. **Figure 16** below describes responses to the survey regarding the statement: *In this county, children are assigned a goal of APPLA only if they are 16 years of age or older and there are compelling reasons that no other permanent plan, including adoption, is appropriate.*

**Figure 16:**
**Survey Responses Regarding APPLA**

Just over a quarter of respondents who answered this question indicated that APPLA is utilized appropriately, indicating 'almost always', with another near 20% saying APPLA is utilized appropriately, with a response of 'frequently'. However, the most common answer by survey respondents (just over 40%) was 'no opinion/no information', suggesting a lack of knowledge or common usage of this permanency goal by the respondents. Survey respondents were also asked to explain why APPLA may be applied as a permanency goal even when other permanency goals have been considered. The most common response was that 'the child does not want to be adopted' or 'the resource parents do not want to adopt' (6 comments), followed by



APPLA goal being 'court ordered' (3 comments). Two comments each also noted that the age of the child or the behavior of the child may lead to APPLA being designated without other goals being considered first, and two respondents asked in the comments 'What is APPLA?'

---

[3] We do not know if this is a data anomaly or an actual change in performance.

25

DHS
345482

### C. *Maintaining Connections for Children in Foster Care*

Maintaining connections with family and community is important for children in custody, not only to ease transition in out of home placement, but also to facilitate timely permanency, hopefully with the child returning to the home from which they were removed. As one way of reviewing data pertaining to this practice area, we examined MACWIS data pertaining to monthly visits between children in foster care and their mothers, their fathers, and their siblings from whom they were separated in foster care. **Figures 17, 18, and 19** below, based on the MACWIS data report MWLS318, *Child Contacts with Parents and Siblings*, provide this information for the Carve Out Counties for the last quarter of 2012.

**Figure 17: Child Visits with Mother**



None of Carve Out Counties met Y3IP regional standard of 80% for visits with mothers, fathers or separated siblings, although we believe that this information is at least partially an issue of documentation/data entry error, given the very low performance indicators and the survey responses that follow.

DHS
345483

**Figure 18: Child Visits with Father**



**Figure 19: Child Visits with Siblings**



In contrast to the performance indicated in the figures above, **Figure 20** shows survey respondents' answers to the statement: *In this county, caseworkers develop written visitation plans and arrange for children to visit with their parents at least twice monthly and with their siblings at least once monthly, regardless of where the child is placed.*

27

DHS
345484

**Figure 20:**
**Survey Responses to Parental/Sibling Visits**

Nearly 46% of survey respondents indicated that workers develop visitation plans that ensured children were able to see their parents at least twice monthly and siblings living elsewhere at least monthly, regardless of where the child was placed (responses of almost always or frequently). The most common response was 'sometimes' (35.8%), which may account for some of the performance in the charts above. When asked to identify the barriers or reasons why visits were not occurring two times monthly with parents or one time monthly with siblings, the most common answer by survey respondents was 'time



constraints' or 'workload of caseworkers' (16 comments). The second most common comment was 'distance' as a barrier when children are placed in different counties (14 comments) followed by 'court-ordered visitation restrictions' (13 comments).

### D. Permanency Planning for Children in Foster Care

Permanency planning is critical to ensuring children receive stability and spend as little time as possible in out of home care. This includes having court processes and DFCS procedures in place to support timely decision making and preparing the child for permanency without agency involvement. When reunification has been determined inappropriate based on the circumstances of the case, the timely completion of Termination of Parental Rights (TPR) packets and filing of TPR petitions is important in moving the child towards adoption in an expedient manner.

The federal government has created a standard that child welfare agencies must file a TPR petition for children in custody 17 of the previous 22 months[4] or document in the child's case file an allowable exception as to why a TPR should not be filed. **Figures 21 and 22**, based on the MACWIS data report MWZ0171, *Children Who Have Been in Custody 17 of 22 Months with or*

---

[4] The actual standard/statute is 15 of 22 months, but for measurement purposes only the federal government uses the 17 of 22 month time frame, due to differences in which the actual start date of a child's entry into foster care may occur. DFCS policy reflects the actual 15 of 22 months time frame for filing TPR petitions.

DHS
345485

*without ASFA Exception*, depict the Carve Out Counties' performance on this measure: **Figure 21** shows all children who have been in custody more than 17 of the last 22 months with a petition filed or an exception documented, and **Figure 22** shows children who just reached the 17th month of the last 22 months during the reporting month and have had a TPR petition filed or an exception documented.

**Figure 21:**
**All Children in Custody 17 of 22 Months with TPR Petitions Filed or Exceptions Documented**



For all children in foster care for 17 of 22 months (**Figure 21**), none of the Carve Out Counties met the Y3IP regional standard of 80% during the 3-month period. Hancock and Jackson Counties experienced slight decreases in percentage of children meeting the standard, while Hinds and Harrison Counties experienced slight increases. In addition, Hinds and Jackson Counties had greater percentages of children meeting the standard than Hancock and Harrison Counties, by over 20 percentage points.

For the comparatively smaller number of children just reaching the 17th of 22 months in care (**Figure 22**), only Harrison County met the standard of 80% by the end of the quarter. Harrison County was the only county who also showed an increase in percentage of children meeting the regional standard over the 3-month period. We are uncertain as to the reason for the drastic drop in numbers for Hancock County and cannot rule out data quality concerns.

29

**Figure 22:**
**Children Reaching 17 of 22 Months with TPR Petitions Filed or Exceptions Documented**



In this practice area, survey respondents were asked to identify what barriers may exist in the timely preparing and completion of the TPR packets, which are necessary in order to begin the process of court filing for the termination of parental rights. The most common barrier identified by survey respondents was 'high workload' or 'burn out' (21 comments), followed by 'workers being untrained' and 'do not know how to complete TPR packets' (12 comments). Eight comments related to counties being understaffed and unable to prepare the packets, and 7 comments noted missing paperwork as a barrier to preparing TPR packets.

The next key decision making points in the process of terminating the parental rights of parents and allowing a child to proceed with an adoption after the TPR packet has been submitted are the TPR petition being filed and holding the TPR hearing to either have the petition granted or denied. **Figure 23** below describes survey respondents' answers to the following question: *In this county, how much time lapses between the filing of a TPR petition and the TPR hearing date?*

30

DHS
345487

**Figure 23: Survey Responses
Regarding Timeliness of TPR Proceedings**

Just less than half of survey respondents indicated that the TPR process took between 30 and 90 days to complete (30-60 days-26.4%, 60-90 days-19.4%) while over half of respondents indicated that it often took more than 90 days between when a TPR was filed and when the TPR hearing date actually takes place (90-120 days-33.3%, 120+ days-20.8%), representing a longer wait in the process for children seeking permanency and suggesting that court scheduling is an area needing improvement.



In addition to filing timely TPR petitions or noting appropriate exceptions, a part of permanency planning is the timely review of the child's permanency goal and progress made toward achieving the goal.

According to federal requirements, the MSA, and DFCS policy, the first review of a child's permanency goal must occur when a child has been in custody for 6 months and every 6 months thereafter to ensure that the permanency goal is appropriate and progress is being made towards achieving the goal. Within DFCS, these reviews are conducted by the Foster Care Review (FCR) Unit within the CQI Unit. Permanency hearings must occur in court when a child has been in care for 12 months and every 12 months thereafter.

**Figure 24** below depicts the MACWIS data report MWZTACR, *Timely Administrative County Conference Reviews*, with results for the Carve Out Counties in the quarter reviewed. By the end of December 2012, all Carve Out Counties met the Y3IP regional standard of 90%. Hancock and Harrison Counties showed improvement over the 3-month period, Jackson County remained consistent, and Hinds County decreased in the percentage of children receiving timely FCRs. In addition, Jackson County has the highest percentage of compliance of the Carve Out Counties.

DHS
345488

**Figure 24:**
**Timeliness of Foster Care Reviews**



In contrast, **Figure 25** below depicts the timeliness of holding permanency hearings in court at least every 12 months for children who have been in custody at least 12 months, based on the MACWIS data report MWZTPHR, *Children in Custody 12+ Months with a Timely Permanency Hearing.*

**Figure 25:**
**Timeliness of Permanency Hearings**



DHS
345489

None of the Carve Out Counties met the Y3IP regional standard of 90%. Jackson and Harrison Counties showed improvement over the quarter reviewed, while Hinds and Hancock Counties decreased in the percentage of children meeting the standard. Jackson County increased significantly from October to November, while Hinds County decreased significantly from October to November. This variability along with the decrease in compliance with annual permanency hearings could be a reflection of several things, including data entry errors, continuances of court hearings, delays in receiving needed documentation or communication concerns. The differences between performance as shown in the MACWIS data and the perceptions of survey respondents described below suggest the possibility of data concerns in this area.

In pursuing issues that might affect the timeliness of permanency hearings, survey respondents' were asked general questions relating to the scheduling of court hearings. Their responses are shown in **Figure 26** below:

**Figure 26:**
**Survey Responses to Timeliness of Permanency Hearings**



While delays between filing the TPR and holding the TPR hearing were noted by respondents, respondents indicated that in general, court hearings for children in custody are held timely (based on responses of almost always or frequently). Relative to the other questions asked, survey respondents indicated most strongly that the court holds permanency hearings at least

DHS
345490

every 12 months to monitor progress of the permanency plan, followed by the court scheduling and holding the child's first permanency hearing timely in their first 12 months of custody. Survey respondents indicated slightly less confident in the court's granting of continuances and in the rescheduling of hearings quickly to reduce delays.

Finally, in reviewing information on permanency planning, we asked survey participants to respond to issues relating to having a 90-day trial home visit for children being reunified with their families. **Figure 27** below describes the survey respondents' answers to the statement: *In this county, the Court routinely grants 90 day trial home visits for cases where reunification is the permanent plan and DFCS has recommended that the child(ren) be returned to the parent.*

**Figure 27:**
**Survey Responses on 90-Day Trial Home Visits**

Half (50%) of all survey respondents for this question indicated the court grants trial home visits 'almost always' or 'frequently', although the most common response to this question was 'sometimes' (28.2%), suggesting that courts do not always grant trial home visits when a child is being reunified. When asked what barriers exist in the granting of trial home visits, the most common answers were that 'the courts have their own opinion' or 'disagree with DFCS recommendations', 'parental non-compliance with their service plans', or 'court orders barring reunification' (each with 7 comments).



### E. Knowledge of Court Processes

The ability of DFCS staff to work within court system functions and requirements is an important factor in achieving timely and appropriate outcomes for children in the child welfare system. For example, social worker competencies regarding necessary court procedures and paperwork requirements can minimize delays in reaching goals. Also, the communication between DFCS staff and the court is often paramount to promoting the safety and well-being of

DHS
345491

children and expediting permanency for them.  Although we do not have statewide MACWIS data in this area, we asked survey respondents to address the area in several ways

As shown in **Figure 28,** survey respondents were asked to respond to the statement:  *In this county, caseworkers understand what information is necessary to include in a well-written court report.*

**Figure 28:**
**Survey Responses Regarding Court Report Content**

The most common answer to this question by respondents was 'frequently'. Respondents indicated that caseworkers were equally as likely to 'almost always' understand what information is necessary to include in a well-written court report as they were to 'sometimes' understand what is necessary, suggesting a need for training or guidance in order for there to be more consistency.



Similarly, as shown in **Figure 29,** survey respondents had varying opinions on issues relating to caseworkers' knowledge, involvement and preparation for court.  Respondents indicated stronger performance in caseworkers making timely appearances and arranging evaluations for court than they did about their preparation and knowledge of court procedures. The issue that received the lowest ratings concerned the degree to which caseworkers demonstrate competent knowledge of court procedures and are skilled at providing testimony and presenting the rationale for DFCS' recommendations.

DHS
345492

**Figure 29:**
**Survey Responses Regarding Workers' Responsiveness to Court Procedures**



Finally, survey respondents were asked their opinions regarding training and assistance as it relates to court proceedings for caseworkers, as displayed in **Figure 30** below.

**Figure 30:**
**Survey Responses Regarding Training in Court Procedures**



36

Respondents indicated slightly stronger ratings about supervisors assisting caseworkers in preparing for court proceedings with 57.3% of respondents answering 'almost always' or 'frequently' than in the question regarding whether caseworkers receiving training in child welfare laws and court procedure. To the latter question, 53.7% of respondents answered 'almost always' or 'frequently'. The need for training was also highlighted in responses to the question asking survey respondents about what supports or strategies needed to improve practice, process and procedures for effectively moving DFCS cases through the court system. The 3 most common suggestions by respondents (each with 6 comments) were: 1) cross training or group training on court with a focus on local court procedures; 2) parental representation in court or a class to educate parents of their rights in court; and 3) better procedures to minimize caseworker time waiting in court for hearings, including having dedicated days and/or times.

## IV. Summary of Findings Needing Attention

In reviewing the foregoing information, a number of strengths and areas needing improvement have been identified with regard to court-related issues. Many of these areas needing attention will be addressed and progress will be apparent as the Carve Out Counties become fully staffed and continue implementing the Practice Model. In regard to the areas needing attention through this plan, the following concerns have been identified:

- Placing children in unlicensed placements (in Harrison and Hancock Counties);

- Issues with the expedited placement process;

- Need for more placement resources;

- Placement of children in two or more emergency placements in all of the Carve Out Counties except Hancock County;

- Ensuring that children have an approved permanency goal within 30 days of custody;

- Timely reunification in Hinds County;

- Timely adoption in Jackson and Hinds Counties;

- Children's visits with parents and separated siblings, which is a substantial issue across all Carve Out Counties;

- Filing of TPR petitions within 17 of 22 months or documenting appropriate exceptions to filing for children in the Carve Out Counties (although Harrison County meets the standard for children just reaching the 17 of 22 months;

- Timeliness of TPR hearing following petition filings;

- Timeliness of permanency hearings;

DHS
345494

- Appropriate training and preparation for staff in court procedures and functions;

- Communications between the court and DFCS in Hancock County;

- Drug testing requirements when drug usage is not the reason for removal;

- Lack of communication and services available to resource parents;  and

- Building credibility of DFCS staff in court proceedings.

## V. Planned Improvement Strategies

Based on the identified areas of strength and concern noted above, DFCS has identified 3 broad categories of strategies that are needed to address the issues identified above. These 3 categories represent a conceptual framework for making improvements that will permit DFCS to focus on core issues needing attention. The first 2 categories, *building credibility of DFCS staff* and *finding common ground with the courts,* address the broad underlying issues that affect the ability of DFCS and the Courts to work effectively together. Without addressing these areas, we do not believe we can change the culture of the DFCS-Court relationship and begin to see the outcomes for children and families that we are seeking. The third area addresses some more specific, at times procedural, issues within the Court-DFCS relationship that should improve the effectiveness and efficiency of the child welfare process in the Carve Out Counties specifically. The 3 strategy groups, and some description of each group, are as follows:

> ***A. Build the credibility of DFCS staff to represent solid practice (within the context of the family-centered Practice Model) and to represent DFCS' position in court proceedings.***

We understand that DFCS staff must strengthen the quality of child welfare practice in order to work effectively with the courts in improving outcomes for children and families. Strengthening practice must occur at each level - worker, supervisory, and management. The primary approaches to making improvements in these areas are through the implementation of the Practice Model, a new supervisory training/coaching process, and through the use of management teams in the Carve Out Counties. The Practice Model implementation and supervisory training/coaching process are statewide initiatives being implemented in all counties, and in the action matrix that follows, we have stepped out the implementation process and time frames for the Carve Out Counties, in addition to noting the placement of management teams in the four counties. We have also noted below why DFCS believes these initiatives are critical to making sustained improvements in child welfare practice and outcomes and relationships with the courts.

In improving the capacity of social workers to demonstrate effective practice, the implementation of the child welfare Practice Model is DFCS' primary strategy, along with

DHS
345495

increased hiring of staff and lowering caseloads that will permit a higher quality of practice. A number of the areas identified as needs earlier, such as child placement practices, timely outcomes for reunification and adoption, and visiting practices while children are in foster care are areas that we can expect the Practice Model to affect going forward. As staff become better trained and coached in engaging families, conducting comprehensive assessments and family team meetings, and developing and monitoring family service plans, it is reasonable to expect that outcomes will improve. The 3 regions that include the Carve Out Counties are currently engaged in Practice Model implementation and the implementation steps involved in this process are identified in the subsequent Action Plan. Staff is being trained in the practices included in the Practice Model and are receiving coaching from DFCS practice coaches and CSF practice coaches. In Hancock County, in particular, the judge has noted positive differences in the practice of social workers in the county on loan from counties where the Practice Model has had longer to take hold, giving us reason to believe that as implementation proceeds in the Carve Out Counties, we will see similar positive results and relationships with the courts.

In improving practice, it is not only important to address the capacity of social workers, but the capacity of front line supervisors as well. In that area, we are implementing supervisory training through the new supervisory pre-service training curriculum and through the CSF contract. CSF has developed and is currently delivering 3 modules of supervisory training focusing on the administrative, teaching, and support functions of supervision for all existing supervisors in DFCS (newly hired supervisors receive clinical supervision training through the pre-service training curriculum and are not included in the CSF training). Further, the CSF coaching of supervisors that has been an integral part of the Practice Model implementation is being re-designed to support each component of the supervisory training and is being provided in a group format.

In improving the capacity of the management of the Carve Out Counties to support effective child welfare practice and improved outcomes, DFCS has deployed State Office management teams to each of the Carve Out Counties. The teams have supported RDs and their staff in building staff numbers and competencies and identifying and addressing systemic barriers to progress. Having reached staffing goals in Jackson County, that management team has now moved on to support the team in Hancock County. These teams continue to support 3 of the 4 Carve Out Counties.

Finally, DFCS will work to improve staff preparation for court proceedings, submission of timely and quality court reports and staff presentation in court. DFCS will accomplish this by providing Advanced Professional Development of Court Procedure training to staff. Additionally, enhanced training on writing and presenting reports to the courts is available as indicated on the training schedule. The Youth Court training videos are available on *DFCS Connection* so that staff has easy access. The judges and RDs have committed to allow new direct service staff to spend a week watching and listening in court, and then follow up with a court orientation. The court orientation will include the judge meeting with the workers to

DHS
345496

communicate what is expected in the courtroom, and also the prosecutor, guardian *ad litem* and CASA representatives will meet with the workers. Credibility of DFCS staff will improve as staff feels more confident about court proceedings and court expectations, and as the courts are more aware of the reasons behind DFCS practice.

### B. Identify common ground between the courts and DFCS on how both can work together to achieve the outcomes that both deem desirable.

In addition to increasing DFCS' credibility with the courts and capacity to engage in effective child welfare practice, there is a need to engage the judges within the context of family-centered Practice Model principles and practices. We believe that it is important to help judges understand how the family-centered practices and principles of the Practice Model are expected to guide the work of DFCS, are incorporated into training and coaching, and are built into CQI and DFCS' accountability structure.

Our strategies in this area will include using regional and county data to increase the courts' awareness of local performance on key outcomes and where possible, demonstrating improved outcomes resulting from Practice Model implementation and making connections between better outcomes and improved practice.

One specific strategy will include holding the "Legal Stakeholders for Permanency" summits for the regions with Carve Out Counties. Following these summits, legal and judicial stakeholders will become members of the regions' Regional Implementation Teams (RIT) in order to address regional-specific issues and needs as they arise. The RITs already exist in the Carve Out regions as a means of guiding the implementation of the Practice Model. Having legal/judicial stakeholders involved will provide a place where court-related issues can be addressed collaboratively and allow for a more proactive approach to resolving issues than currently exists. Using data to drive the teams' agendas and strategies, e.g., timely permanency hearings, child-parent visitation, reunification criteria, etc., is expected to keep the teams aware of current issues needing attention within the Carve Out Counties.

Finally, DFCS will work proactively with the courts, as opposed to primarily reacting when issues arise. Further DFCS will build communication with the courts so that we can work together to achieve desirable outcomes. We will collaborate with the Administrative Office of Courts (AOC) to be on the "Annual Judges and Referees Conference" agenda. This will allow DFCS to communicate with the courts any issues[5] and updates for DFCS, and it will also allow the courts to address any issues and updates they have from the judicial standpoint.

---

[5] For example, there is sometimes misunderstanding resulting in friction between DFCS and judges regarding the process for resource parent licensure. DFCS can relate what the process is (i.e. having a swimming pool doesn't preclude one from being a resource parent), how long it usually takes, and common barriers to timely licensure.

DHS
345497

**C. Identify strategies that address "procedural" issues that overlap with DHS and the courts.**

Finally, the third category of strategies will focus on specific issues that have emerged through analysis of information gathered for this plan. Many of these strategies will address specific procedural issues that require attention within the counties.

- DFCS will review and revise licensure requirements at least annually and as the need arises for efficiency without compromising best practices. DFCS will also analyze whether relative resource parents have different and/or additional needs from non-relative resource parents and, if so, the best way to address those needs while keeping kids safe.

- DFCS will review the TPR process for efficiency and timely movement through the court system according to the TPR Remedial Plan developed by the TPR workgroup.

- DFCS will engage the courts in discussion regarding mandatory drug testing when drug abuse is not the reason for removal. DFCS will also collaborate with the Administrative Office of Court to bring a keynote speaker associated with the 0-3 Program to the Annual Judges and Referees Conference to discuss the benefits of visitation and bonding, as well as the consequences of prohibiting visitation.

- In Harrison County, the court will draft a guide for the worker to determine if the father is listed on the birth certificate, have the parents been married, has a DNA test been conducted, etc. DFCS will use this guide to train workers how to identify whether or not a father has been established and to notify the courts from the beginning of the case if a father has been established to prevent continuances of court hearings.

- In Jackson County, the court will review the status of TPR packets 60 days after they have been ordered, and every 30 days thereafter until the TPR is complete.

- In Hinds County, the court will hold permanency hearings for DFCS cases the first and third Thursday of each month, and review cases at the 6-month hearing to determine if TPR is appropriate.

- Hancock County Youth Court will bring in a representative from Harrison County to meet with Hancock County Court staff, prosecutor, GALs, CASA and DFCS staff to facilitate communication between these parties and develop a schedule for these parties to meet prior to court hearings. Additionally, cross training between Hancock County DFCS, CASA and GALs will also be implemented.

- In Hancock County, DFCS staff will forward court summaries at least 48 hours before court.

41

# VI. Matrix Action Plan

DHS
345499

## Action Plan

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| colspan="6" | **Build credibility of DFCS staff to represent solid practice (within the context of the family-centered Practice Model) and to represent DFCS' position in court proceedings.** | | | | |
| A. | Ensure DFCS staff understands and represents the Practice Model principles accurately, clearly and consistently in court and in their work with children and families. | 1. Provide Practice Model Training to supervisors in the carve-out counties. | Regional Directors<br><br>CSF Coaches<br><br>DFCS Regional Coaches | 1. VII-East: July/Aug. 2012, VII-West: Dec. 2012, III-South: July-Dec. 2012. | 1. Completed for existing supervisors. New supervisors receive the Practice Model training as part of the pre-service training. |
| | | 2. Provide Practice Model Training to direct service staff in the carve-out counties. | | 2. VII-East: July-Dec. 2012, VII-West: Jan.-June 2013, III-South: July-Dec. 2011. | 2. Completed for existing direct service staff. New staff receives the Practice Model training as part of the pre-service training. |
| | | 3. Provide Practice Model Coaching to supervisors and staff in the carve-out counties. | | 3. VII-East: Dec. 2012-Ongoing, VII-West: June 2013-ongoing, III-South: Dec. 2011-ongoing. | 3. Coaching has been initiated in all the Carve Out Counties and is an ongoing process through both DFCS and CSF coaches. |
| | | 4. Provide orientation to the Carve Out Counties Regional CQI Sub-Teams and Regional Directors on understanding data reports and the practice implications for the outcomes and data indicators in their regions. | | 4. Will occur during May 2013. | 4. Awaiting scheduling. |

| | General Remedies | | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|---|
| B. | Build critical thinking skills of supervisors and staff to adequately consider a child's/family's circumstances to make the correct recommendations and to explain the justification for those recommendations, rather than say "policy says so" or "the MSA says so." | 1. | Address supervisory support for critical thinking skills of workers through provision of clinical supervisory training that includes a section on critical thinking skills. | Regional Directors, Regional ASWS, ASWSs, CSF Coaches | 1a.Training modules completed by May 2013.<br><br>1b.Provide training to supervisors between April – Sept. 2013 | 1. Three training modules will be developed and delivered. Module 2 includes a section on critical thinking skills. To date, Module 1 has been completed and delivery has begun. Modules 2 & 3 are in the process of being finalized. |
| | | 2. | Reinforce the supervisory training through provision of coaching to supervisors on modules of the training curriculum, including critical thinking skills. | | 2.Provide coaching to supervisors between May-Nov 2013 | 2. CSF coaching activities will focus on reinforcing the content of the 3 supervisory training modules. A coaching plan to complement the training has been developed and will be implemented in May 2013. |

DHS
345501

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| C. | The State Office will support implementation of the Practice Model in the Carve Out Counties. | 1. Increase the number of social workers and ASWSs, especially in Harrison, Hancock, Hinds and Jackson. | DFCS State Office/ Regional Directors | 1. Ongoing monitoring and hiring/re-hiring of staff in counties, and use of retention and recruitment strategies. | 1. Staffing in Carve Out regions has increased from July 2012-May 2013 as follows:<br><br>Jackson: New hires-29 Terminations-9<br><br>Harrison: New hires-64 Terminations-8<br><br>Hancock: New hires-25 Terminations-8<br><br>Hinds: New hires-45 Terminations-7 |
| | | 2. Deploy State Office management teams to each of the Carve Out Counties in order to assist the counties in developing the capacity to implement the Practice Model with regard to staffing, management, and preparation for the Practice Model. | ████████ ██ | 2: Ongoing/TBD | 2. State Office management teams have been active in the Carve Out Counties since Nov. 2012. The management team in Jackson County left the county after the county attained a full staffing level and was ready to begin Practice Model implementation. |
| | | 3. Incorporate the Practice Model training into DFCS' regular pre-service training curriculum. | Professional Development Unit | 3: Completed | 3. Practice Model training has been incorporated into the DFCS pre-service training curriculum and is now being delivered to all new hires. |

DHS
345502

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| D. | Improve worker preparation for court proceedings; submission of timely and quality court reports; presentation in court. | 1. Conduct Advanced Professional Development for Court Procedure Training for all new staff. | Professional Development Unit | 1. Nov. 5-8, 2012; Jan. 30-31, 2013; ongoing. | 1. Regs VII-E and VII-W - Completed;  Reg III-S - Completed |
| | | 2. Develop enhanced training on writing and presenting reports to the courts. | Professional Development Unit | 2. Curriculum completed. | 2. This is available on the training schedule. |
| | | 3. Make Youth Court Training available on *DFCS Connection* so staff has easy access. | MACWIS | 3. Completed | 3. COMPLETED |
| | | 4. Workers spend a week observing court proceedings, followed by an orientation with the judge regarding expectations in the courtroom. Workers will also meet with the prosecutor, GAL and CASA volunteers during this orientation. | Regional Directors and ASWSs coordinate with the Court. | 4. Ongoing with new hires. | 4. Judges Sigalas (Jackson), Alfonso (Harrison) and Deano (Hancock) all agreed to participate. Judge Skinner (Hinds) has already implemented meeting with new workers in his county. |
| | | 5. Special Assistant AG placed in Hancock County to assist workers with court preparation. | ███████/ ███████ | 5. Jan. 2013 | 5. |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| | colspan 5: *Identify common ground between the courts and DFCS on how both can work together to achieve the outcomes that both deem desirable.* | | | | |
| A. | Engage judges within the context of family-centered Practice Model principles and practices. (Help the courts understand why DFCS is practicing in the way it does, i.e., how family-centered practices and principles are guiding the work of DFCS, is incorporated into training and coaching, and is built into CQI and the accountability structure.) | 1. Legal Stakeholders for Permanency Summits to introduce legal and judicial stakeholders to the Practice Model.<br><br>2. Regions invite the legal and judicial stakeholders to be participants on the RIT in order to address legal and judicial issues as they arise. Use data to drive the agendas of these meetings.<br><br>3. Demonstrate improved outcomes in regions that are further along in the Practice Model implementation and make connections between better outcomes and improved practice by comparing data reports by region at RIT meetings and meetings with the court.<br><br>4. Use regional/county data on key indicators to ensure the court's awareness of their region's/county's performance on identified indicators. | ██████, ██████, ██████ (AOC), Regional Directors<br><br><br>Regional Directors<br><br><br><br>Regional Directors<br><br><br><br><br><br>Regional Directors | 1. Reg. III-S - March 2012;  Reg. VII-E -Apr. 25, 2013;  Reg VII-W - TBD<br><br>2. Quarterly<br><br><br><br>3. Ongoing<br><br><br><br><br>4. Ongoing | 1. Regions III-S and VII-E - Completed<br><br><br>2.<br><br><br><br>3.<br><br><br><br><br>4. |
| B. | Work proactively with the courts, as opposed to primarily reacting when things go wrong. | 1. Collaborate with AOC to be on the Annual Judges and Referees Conference Agenda (Bring issues and update them on what is happening with DFCS.) | ██████, ██████ (AOC), CIP Workgroup | Sept. 2013, annually. | This has been done annually since 2008. |

| General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|
| **Strategies to address specific procedural issues that overlap with DFCS and the courts.** | | | | |
| A. Court Docketing Issues | 1. DFCS will engage the courts in discussion regarding drug testing when drug testing is not reason for removal. | ████████, ██ ████, ████, ████████ | Ongoing | 1. |
| | 2. DFCS will collaborate with AOC to bring in a subject matter expert in the 0-3 program to talk with judges about the benefits to visitation and the consequences to prohibiting visitation. | ███████, CIP Workgroup | | 2. Request made to AOC June 6, 2013 |
| | 3. In Harrison County, DFCS will notify the court at the beginning of the case if a father has been determined, either on the birth certificate, through marriage, DNA proceedings, or by checking with the Division of Child Support. | Harrison County Youth Court will develop a list of questions for social workers to answer. DFCS RDs will staff this with workers. | December 31, 2013 | 3. |
| | 4. In Jackson County, the court will review the status of TPR packets 60 days after they have been ordered, and every 30 days thereafter until the TPR is complete. | Jackson County Youth Court | Ongoing | 4. |
| | 5. In Hinds County, Judge Skinner has dedicated the first and third Thursdays of each month to hold permanency hearings so that they will be timely. | Regional Directors, County Staff, Judge Skinner | Ongoing | 5. ██████ communicated that this is currently happening and is working well in Hinds County. |
| | 6. In Hinds County, Judge Skinner will review cases at the 6-month Permanency Hearing to determine if TPR is appropriate. | Regional Directors, County Staff, Judge Skinner | Ongoing | 6. ██████ communicated that this is currently happening and is working well in Hinds County. |

| | General Remedies | Specific Tasks | Responsible Group | Anticipated Completion Date | Status / Notes (completed, in-progress, not started) |
|---|---|---|---|---|---|
| A. | Court docketing issues *cont.* | 7. Hancock County Youth Court will bring in staff from Harrison County to develop a plan for the prosecutor, GALs, CASA and DFCS staff to meet and communicate case recommendations before court so everyone is on the same page the day of court. | Judge ▮▮▮, Court Staff, Prosecutor, GALs, CASA and DFCS staff. | TBD Follow up with Harrison and Hancock County Youth Court | 7. |
| | | 8. Hancock County DFCS, CASA and GALs staff will begin cross training. | Judge ▮▮▮, Court Staff, Prosecutor, GALs, CASA and DFCS staff. | TBD Follow up with Hancock County Youth Court | 8. |
| | | 9. Hancock County staff will forward court reports to the court within 48 hours of court proceedings. | Regional Director, ASWSs and staff. | Ongoing | 9. |
| B. | Review licensure process to reach potential resource families in the local communities and to prevent sending children outside of the community. | 1.   DFCS will review and revise licensure requirements annually and as the need arises for efficiency without compromising best practices.  2.   DFCS will analyze whether relative resource parents have different and/or additional needs from non-relative resource parents and, if so, the best way to address those needs. | DFCS FCR Unit, Policy Sub-Team | Annually and ongoing | 1.   2. The Permanency Unit presented a proposal to the Policy Sub-Team and DFCS management in June 2013. Further discussion is ongoing. |
| C. | Review TPR packet requirements to make the TPR process more efficient. | DFCS will continue to review the TPR process for efficiency and timely movement through the court system according to the TPR Remedial Plan developed by the TPR Sub-Team. | DFCS Adoption Unit, Legal and Judicial Sub-Team, Attorney General's Office. | Ongoing | |

DHS
345506

**Ex. 13**

Ongoing Training for Child Welfare Frontline and Supervisory Staff

**Training Hours**

● A *minimum* of 40 hours of ongoing training every year is required for child welfare frontline staff. Pre-Service training will count towards the 40 hour requirement.

● A *minimum* of 24 hours of ongoing training every year is required for child welfare supervisory staff. Pre-Service and Clinical Supervisory training will count toward the 24 hour requirement.

Training hour requirements will be tracked on the State's Fiscal Year Calendar beginning July 1, 2013. The State's Fiscal year runs from July 1 through June 30. All staff will use this date range, and NO hours will be carried over from year to year.

Half of all training hours (20 for frontline and 12 for supervisory staff) must be obtained from DFCS training classes. The other half can be obtained through offsite training that must be Child Welfare related and approved by the employee's supervisor prior to attending.

In order to get credit for DFCS trainings, staff must register through the Mississippi Enterprise Learning Management System (MELMS). When a staff member registers for training classes in MELMS, he/she should check to ensure that his/her e-mail address, supervisor's name and contact information are correct. If the information is missing or incorrect, please enter the correct information.

### *HOW TO REGISTER FOR TRAINING IN MELMS:*

· Go to www.dfa.ms.gov
· Click on the ACE access link
· Enter your ACE ID and password
· Click on the MELMS Student Center
· Click on the class registration link
· Scroll to the DHS link
· Click on the link that says DHS-Family and Children Services
· Scroll to the class you are registering for and click that link
· Complete the registration process

**Training Approval Process and Tracking**

## Tracking

OffSite Training - These training sessions must be tracked and entered into the training spreadsheet by each supervisor as they are not able to be entered into MELMS. The spread sheet is posted on the P drive for the entire State in a folder named "DFCS Ongoing Training." Each region has a tab at the bottom of the spreadsheet and all non-DFCS training will be maintained on this form. Training information MUST be kept in this format or it will not count towards the 40/24 hours. ONLY the ASWSs and RDs have access to enter training information. A copy of the certificate of completion must be submitted to the supervisor in order for the training to be approved for training hours. If a copy of the certificate is not provided to the supervisor, the hours will not count. Supervisors must adhere to the above for tracking offsite training hours.

## *All Training to be Entered on Spreadsheet*

At least once every quarter (November 1st, February 1st, May 1st, and June 1st), supervisees' will print out a transcript indicating completed trainings from MELMS and submit it to their supervisor.

The supervisors will enter the completed trainings as well as any completed offsite trainings to the spreadsheet. The completed spreadsheet must be sent to the PDU no later than November 15, February 15, May 15 and July 5.

**Training Approval**

All training delivered by DFCS staff must be entered into MELMS in order to be tracked. For submitting trainings that do not require CE approval, the following steps must be followed:

· The facilitator's curriculum and participant's curriculum must be submitted to dfcs.training@mdhs.ms.gov two months prior to the first start date of the training.

· The information listed below must be submitted to the MELMS coordinator two months prior to the first start date of training:
  o Name of course/training
  o Brief description of the training
  o Start and end date of training
  o Start and end time of training
  o Maximum Capacity of participants
  o Minimum Capacity of participants
  o Credit Hours (CE Credits)
  o Contact Hours
  o Instructors presenting the training
  o Location including physical address
  o Enroll Close date

*Submitting Training for CE Review/Approval*

For submitting trainings that require CE review and approval, the facilitator's and participant's curricula must be submitted to dfcs.training@mdhs.ms.gov three months prior to the first start date of training.

Once the training has been reviewed for CE approval, the results will be communicated to the facilitator. The facilitator will then submit the necessary information (listed above) to the MELMS coordinator for posting in MELMS.

Trainings will close one week prior to the start date of the training and a list of registered participants will be sent to the facilitator.

The trainers/facilitators are responsible for creating participant sign-in sheets and evaluations for the specified training. The sign-in sheet must indicate the name of the training, the beginning and ending dates of the training, the starting and ending time of the training for each day (if more than a one day training), the location and the facilitators that presented the training.

Once the training is completed, the trainers/facilitators must submit the sign-in sheets and the evaluations to dfcs.training@mdhs.ms.gov. Upon receipt of the sign-in sheets and evaluations, each participant's status will be updated in MELMS and each participant will receive a certificate of attendance via email.

Master of Social Work Course

One MSW course per year will also count toward the ongoing training hours. The employee must be enrolled in a Master of Social Work program at an accredited college, university, or a school in candidacy for CSWE status. An employee must

submit the following documentation to his/her supervisor for documentation on the ongoing training file.  The information must be kept in the file as other ongoing training certificates.

- · The course title
- · Name of the college, university, or school
- · Course dates
- · Certificate of completion with a final grade of "B" or better
- · Course description and objectives
- · Number of academic semester hours

Failure to Complete Ongoing Training Requirements

Failure of frontline staff to complete 40 hours or supervisory staff to complete 24 hours of ongoing training can result in disciplinary action as stated in State Personnel Board Employee Handbook Chapter 7 regarding Group 2 Number 1 offences.

**Ex. 14**

# Appropriate and Quality Documentation – DFC001 - 5 CE's - 7 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| June 12, 2013 | ▇▇▇▇ | Grenada County DHS<br>1240 Fairground Road<br>**Grenada, MS** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |
| June 25, 2013 | ▇▇▇▇ | Harrison County DHS<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |
| June 27, 2013 | ▇▇▇▇ | Rankin County DHS<br>3350 Highway 468 West<br>**Pearl, MS** | 9:00 – 5:00 | ▇▇ | ▇▇▇ |
| | | **2ND QUARTER** | | | |
| October 8, 2013 | ▇▇▇▇ | Clarksdale WIN Job Center<br>236 Sharkey Avenue, 3rd Floor<br>Federal Building<br>**Clarksdale, MS** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |
| November 21, 2013 | ▇▇▇▇ | Lauderdale County DHS<br>Conference Room<br>5226 Valley Street<br>**Meridian, MS 39301** | 9:00 – 5:00 | ▇▇ | ▇▇▇ |
| December 5, 2013 | ▇▇▇▇ | Pearl River County Multi-<br>Purpose Building<br>417 Hwy. 11 North<br>**Poplarville, MS 39470** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |
| | | **3RD QUARTER** | | | |
| February 3, 2014 | ▇▇▇▇ | Carthage WIN Job Center<br>202 C.O. Brooks Street<br>**Carthage, MS** | 9:00 – 5:00 | ▇▇ | ▇▇ |
| March 27, 2014 | ▇▇▇▇ | George County DHS<br>38 London Street, Suite B<br>**Lucedale, MS** | 9:00 – 5:00 | ▇▇▇ | |
| | | **4TH QUARTER** | | | |
| April 11, 2014 | ▇▇▇▇ | Corinth WIN Job Center<br>2759 S. Harper Road<br>**Corinth, MS 38834-2050** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |
| May 1, 2014 | ▇▇▇▇ | **STATE OFFICE** | 9:00 – 5:00 | ▇▇▇ | |
| June 3, 2014 | ▇▇▇▇ | MSU Ext. Service<br>856 Hwy. 90<br>**Bay St. Louis, MS 39520** | 9:00 – 5:00 | ▇▇▇ | ▇▇▇ |

TRAININGS FOR TRAINING UNIT

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## Substance Abuse Training – DFC002 – 6 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| **1st QUARTER** | | | | | |
| September 25, 2013 | ▬▬ ▬▬ | Greenville WIN Job Center Delta Plaza Shopping Center 800 MLK Blvd., Suite C54 **Greenville, MS** | 9:00 – 4:30 | ▬ | ▬ |
| **2nd QUARTER** | | | | | |
| October 24, 2013 | ▬▬ ▬▬ | Oktibbeha Golden Triangle Planning & Develop BLDG 106 Miley Road *Starkville, MS | 9:00 – 4:30 | ▬ | ▬ ext. |
| **3rd QUARTER** | | | | | |
| March 27, 2014 | ▬▬ ▬▬ | Natchez WIN Job Center 107 Colonel John Pitchford Parkway **Natchez, MS** | 9:00 – 4:30 | ▬ | ▬ |
| **4th QUARTER** | | | | | |
| April 8, 2014 | ▬▬ ▬▬ | Oxford Police Dept. Training Academy 715 Molly Barr Road *Oxford, MS | 9:00 – 4:30 | ▬ | ▬ |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Need tables and chairs for participants set up in classroom style – screen & projector

*Starkville, Oxford - Tables, chairs, screen and projector are provided; however, the trainers will need to bring their own laptop(s).

## Family Team Meeting & Group Facilitation –DFC003 - 4.5 CE's - 7 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | 1ST QUARTER | | | |
| August 1, 2013 | ▮▮▮ | Grenada WIN Job Center<br>1229-A Sunset Drive<br>**Grenada, MS** | 9:00-4:30 | | |
| September 5, 2013 | ▮▮▮ | Lauderdale County DHS/EA<br>5226 Valley Street<br>**Meridian, MS** | 9:00-4:30 | | |
| September 10, 2013 | ▮▮▮ | Harrison County DHS –<br>Conference Room<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 9:00-4:30 | ▮▮▮ | ▮▮▮ |
| | | 2ND QUARTER | | | |
| October 1, 2013 | ▮▮▮ | Oktibbeha Golden Triangle<br>Planning & Development Bldg.<br>106 Miley Road<br>**Starkville, MS** | 9:00-4:30 | | |
| November 6, 2013 | ▮▮▮ | Hancock County Ext. Svc.<br>856 Hwy. 90, Suite B<br>**Bay St. Louis, MS** | 9:00-4:30 | | |
| December 4, 2013 | ▮▮▮ | Hinds County DFCS<br>4777 Medgar Evers. Blvd.<br>**Jackson, MS** | 9:00-4:30 | | |
| | | 3RD QUARTER | | | |

TRAININGS FOR TRAINING UNIT

| January 9, 2014 | ▮▮▮▮ | Madison County WIN Job Ctr.<br>152 Watford Pkwy., Suite B<br>**Canton, MS** | 9:00-4:30 | | |
| February 4, 2014 | ▮▮▮▮ | Lee County EA Conf. Rm.<br>220 S. Industrial Road<br>**Tupelo, MS** | 9:00-4:30 | | |
| March 6, 2014 | ▮▮▮▮ | Region 8 Lincoln County MH<br>620 Hwy. 51 N<br>**Brookhaven, MS** | 9:00-4:30 | | |
| | | **4ᵀᴴ QUARTER** | | | |
| April 30, 2014 | ▮▮▮▮ | Newton County DHS<br>14712 Hwy. 15 S<br>**Decatur, MS** | 9:00-4:30 | | |
| May 2, 2014 | ▮▮▮▮ | Attala County Library<br>201 S. Huntington St.<br>**Kosciusko, MS** | 9:00-4:30 | | |
| June 11, 2014 | ▮▮▮▮ | Natchez WIN Job Center<br>107 Colonel John Pitchford Pkwy.<br>**Natchez, MS** | 9:00-4:30 | | |
| | | | | | |

## Customer Service Workshop for Service Personnel – DFC004 – 1.5 CE's – 6 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | **1ˢᵀ QUARTER** | | | |
| July 8, 2013 | ▮▮▮▮ | Forrest County DHS<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 9:00-4:00 | | |
| August 27, 2013 | ▮▮▮▮ | Forrest County DHS<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 9:00-4:00 | ▮▮ | ▮▮▮ |
| August 29, 2013 | ▮▮▮▮ | Greenville WIN Job Center<br>Delta Plaza Shopping Ctr.<br>800 MLK Blvd., Suite C54<br>**Greenville, MS** | 9:00-4:00 | ▮▮ | ▮▮▮ |
| ~~September 30, 2013~~<br>September 17, 2013 | ▮▮▮▮ | Lauderdale County DHS<br>5226 Valley Street<br>**Meridian, MS 39301** | 9:00-4:00 | | ▮▮▮ |

TRAININGS FOR TRAINING UNIT

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| **2ND QUARTER** | | | | | |
| October 4, 2013 | ▓ | **Harrison County DHS – Conference Room** 10260 Larkin Smith Drive **Gulfport, MS** | 9:00-4:00 | ▓ | ▓ |
| October 28, 2013 | ▓ | Vicksburg WIN Job Center 1625 Monroe Street **Vicksburg, MS** | 9:00-4:00 | ▓ | ▓ |
| November 21, 2013 | ▓ | **Oxford PD Training Room** 715 Molly Barr Rd. **Oxford, MS 38655** | 9:00-4:00 | ▓ | ▓ |
| **3RD QUARTER** | | | | | |
| January 27, 2014 | ▓ | Madison County WIN Job Ctr. 152 Watford Pkwy., Suite B **Canton, MS** | 9:00-4:00 | | |
| February 27, 2014 | ▓ | **Region 8 MH Services** 620 Hwy. 51 N **Brookhaven, MS 39601** | 9:00-4:00 | ▓ | ▓ |
| March 7, 2014 | ▓ | Hernando Public Library 370 Commerce Street **Hernando, MS 38632** | 9:00-4:00 | ▓ | ▓ |
| **4TH QUARTER** | | | | | |
| April 24, 2014 | ▓ | **Magee Public Library** 120 First Street NW **Magee, MS 39111** | 9:00-4:00 | ▓ | ▓ |
| May 16, 2014 | ▓ | Advanced Tech Center (JCJC) 72 Technology Blvd. **Ellisville, MS 39437** | 9:00-4:00 | ▓ | ▓ |
| June 12, 2014 | ▓ | Oktibbeha Golden Triangle Planning & Development 106 Miley Dr. **Starkville, MS 39759** | 9:00-4:00 | ▓ | X ▓ |

## APDCP – DFC005 –2 Day Training 10 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| **1st QUARTER** | | | | | |
| July 18-19, 2013 | ▓ | Madison County WIN Job Center 152 Watford Parkway Drive, Suite B **Canton, MS** | 8:30-4:30 | ▓ | ▓ |
| July 23-24, 2013 | ▓ | **Desoto County WIN Job Center** 7320 Highway 51 N. | 8:30-4:30 | | ▓ |

TRAININGS FOR TRAINING UNIT

| | | Southaven, MS | | | |
|---|---|---|---|---|---|
| August 8-9, 2013 | ███ | Jackson County Fairgrounds<br>2902 Shortcut Road<br>**Pascagoula, MS** | 8:30-4:30 | | |
| August 20-21, 2013 | ███ | **Forrest County DHS**<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 8:30-4:30 | | |
| | | 2ᴺᴰ QUARTER | | | |
| ~~October 23-24, 2013~~<br>October 15-16, 2013 | ███ | Lee County DHS<br>220 S. Industrial Road<br>**Tupelo, MS** | 8:30-4:30 | ███ | |
| November 7-8, 2013 | ███ | **Housing Authority**<br>101 Hope Drive<br>**Hattiesburg, MS** | 8:30-4:30 | | |
| December 12-13, 2014 | ███ | Madison County WIN Job Center<br>152 Watford Parkway Drive, Suite B<br>**Canton, MS** | 8:30-4:30 | ███ | |
| | | 3ᴿᴰ QUARTER | | | |
| January 29-30, 2014 | ███ | **Hancock County Office**<br>Hwy. 90<br>**Bay St. Louis, MS** | 8:30-4:30 | ███ | |
| February 25-26, 2014 | ███ | Madison County WIN Job Center<br>152 Watford Parkway Drive, Suite B<br>**Canton, MS** | 8:30-4:30 | ███ | |
| March 12-13, 2014 | ███ | MS State Ext. Service<br>460 Vance Street<br>**Louisville, MS** | 8:30-4:30 | ███ | |
| | | 4ᵀᴴ QUARTER | | | |
| April 2-3, 2014 | ███ | Harrison County WIN Job Ctr.<br>10162 Southpark Drive<br>**Gulfport, MS** | 8:30-4:30 | ███ | ███ |
| May 7-8, 2014 | ███ | **Grenada County DHS**<br>1240 Fairground Road<br>**Grenada, MS** | 8:30-4:30 | ███ | |
| June 4-5, 2014 | ███ | Madison County WIN Job Center<br>152 Watford Parkway Drive, Suite B<br>**Canton, MS** | 8:30-4:30 | ███ | |
| | | | | | |

## Keeping It Safe – DFC006 – 4.75 CE's

TRAININGS FOR TRAINING UNIT

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| **1ST QUARTER** | | | | | |
| July 22, 2013 | ███████ | Rankin County DHS<br>3350 Highway 468 West<br>**Pearl, MS** | 9:00-4:00 | ███████ | ███████ |
| August 5, 2013 | ███████ | Pearl River County Multi-Purpose Bldg.<br>417 Hwy. 11 N<br>**Poplarville, MS** | 9:00-4:00 | | |
| August 7, 2013 | ███████ | Grenada WIN Job Center<br>1229-A Sunset Drive<br>**Grenada, MS** | 9:00-4:00 | | |
| **2ND QUARTER** | | | | | |
| October 10, 2013 | ███████ | Lauderdale County DHS<br>5226 Valley Street<br>**Meridian, MS 39301** | 9:00-4:00 | | ███████ |
| October 30, 2013 | ███████ | Harrison Building<br>910 Old McComb-Liberty Road<br>**Liberty, MS** | 9:00-4:00 | ███ | ███████ |
| November 20, 2013 | ███████ | Oxford PD Training Room<br>715 Molly Barr Road<br>**Oxford, MS** | 9:00-4:00 | ███████ | ███████ |
| **3RD QUARTER** | | | | | |
| February 13, 2014 | ███████ | Vicksburg WIN Job Center<br>1625 Monroe Street<br>**Vicksburg, MS** | 9:00-4:00 | ███████ | ███████ |
| March 5, 2014 | ███████ | Forrest County DHS – EA Conference Room<br>1804 W. Pine Street<br>**Hattiesburg, MS** | 9:00-4:00 | ███████ | ███████ |
| March 26, 2014 | ███████ | Leflore County MDHS<br>216 Hwy. 7 North<br>**Greenwood, MS 38930** | 9:00-4:00 | ███████ | ███████ |
| **4TH QUARTER** | | | | | |
| April 23, 2014 | ███████ | Winston County Ext. Svc.<br>460 Vance Street<br>**Louisville, MS** | 9:00-4:00 | ███████ | ███████ |
| May 22, 2014 | ███████ | Newton County MDHS<br>14712 Hwy. 15 S<br>**Decatur, MS 39327** | 9:00-4:00 | ███████ | ███████ |
| June 10, 2014 | ███████ | McComb Public Library | 9:00-4:00 | ███████ | ███████ |

TRAININGS FOR TRAINING UNIT

| | | 1022 Virginia Avenue McComb, MS 39648 | | ███ | |
|---|---|---|---|---|---|
| | | | | | |

## ABC's of Your Child's Education – DFC007

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| June 27, 2013 | ███ | Forrest County DHS 1604 W. Pine Street Hattiesburg, MS | | | |
| | | 1ST QUARTER | | | |
| July 23, 2013 | ███ ███ | Region 1 2690 S. Harper Street Corinth, MS | | | |
| July 24, 2013 | ███ ███ | Region 1 3246 Hwy. 51 S., Suite 2 Hernando, MS | 9:00-11:00 1:00-3:00 | | |
| August 20, 2013 | ███ ███ | Grenada County DHS 1240 Fairground Road Grenada, MS | 9:00-11:00 1:00-3:00 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## Where are the Dads? – DFC008 – 6 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | **1ST QUARTER** | | | |
| July 30, 2013 | ███ ███ | Harrison County DHS Conference Room 10260 Larkin Smith Dr. **Gulfport, MS** | 8:00 – 5:00 | ███ | ███ |
| | | **2ND QUARTER** | | | |
| November 12, 2013 | ███ ███ | Vicksburg WIN Job Center 1625 Monroe Street **Vicksburg, MS** | 8:00 – 5:00 | ███ ███ | ███ |
| | | **3RD QUARTER** | | | |
| February 13, 2014 | ███ ███ | Grenada WIN Job Center 1229-A Sunset Drive *Grenada, MS 38901 | 8:00 – 5:00 | ███ | ███ |
| | | **4TH QUARTER** | | | |
| April 10, 2014 | ███ ███ | Magee Public Library 120 First Street NW *Magee, MS | 8:00 – 5:00 | ███ | ███ |
| | | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT



Need tables and chairs for participants (style doesn't matter) – screen, projector & Internet access

*Magee – Library does not open until 8:30

*Grenada - Please call [redacted] in January 2014 to re-confirm training site.

# The Putting the Puzzle Pieces Together! Life Books – DFC009 – 6 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|------|----------|-------------------|------|---------|--------------|
| | | 1ˢᵗ QUARTER | | | |
| August 29, 2013 | | Winston County Ext. Service<br>460 Vance Street<br>*Louisville, MS | 8:00 – 5:00 | | |
| | | 2ⁿᵈ QUARTER | | | |
| October 10, 2013 | | Marshall County Public Library<br>109 East Gholson Avenue<br>*Holly Springs, MS | 8:00 – 5:00 | | |
| | | 3ʳᵈ QUARTER | | | |
| March 11, 2014 | | Attala County Library<br>201 S. Huntington Street<br>Kosciusko, MS | 8:00 – 5:00 | | |
| | | 4ᵗʰ QUARTER | | | |
| April 24, 2014 | | Jackson County Fairgrounds | 8:00 – 5:00 | | |

TRAININGS FOR TRAINING UNIT

| | | 2902 Shortcut Road  *Pascagoula, MS | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Need tables and chairs set up in groups with no more than 4 at a table – screen & projector

*Holly Springs, MS – Screen will be provided – trainers will need to bring projector.

*Louisville, MS – Screen will be provided – setup and take down will be done by trainers.

*Pascagoula, MS – ▮▮▮▮ tried to book the library; however, the date is too far in advance.  She will try to schedule the library as time approaches.

## Mental Health Training – DFC010 – 12 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| 1st QUARTER | | | | | |
| September 10-11, 2013 | ▮▮▮▮▮▮ | Tupelo WIN Job Center  3200 Adams Farm Road, Suite 4  **Belden, MS** | 8:00 – 5:00 | ▮▮▮▮▮ | ▮▮▮▮▮ |
| 2nd QUARTER | | | | | |
| November 6 –7, 2013 | ▮▮▮▮▮▮ | Forrest County DHS – EA  Conference Room | 8:00 – 5:00 | ▮▮▮▮▮ | ▮▮▮▮▮ |

TRAININGS FOR TRAINING UNIT

| | | 1804 West Pine Street **Hattiesburg, MS** | | | |
|---|---|---|---|---|---|
| | | 3RD QUARTER | | | |
| February 25-26, 2014 | ▮▮▮ | Meridian WIN Job Center 2000 Hwy. 19 N **Meridian, MS** | 8:00 – 5:00 | ▮▮▮ | ▮▮▮ |
| | | 4TH QUARTER | | | |
| May 20-21, 2014 | ▮▮▮ | Madison County WIN Job Center 152 Watford Parkway Drive *Canton, MS | 8:00 – 5:00 | ▮▮▮ | ▮▮▮ |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Need tables and chairs preferably in groups so they can do group activities – screen, projector, & Internet access

*Canton - Tables, chairs, screen and projector are provided; however, setup may have to be done by trainers.

## Stress Management (Reunion Training) – DFC011 – 3 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| **1ˢᵗ QUARTER** | | | | | |
| July 18, 2013 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| August 15, 2013 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| September 26, 2013 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| **2ⁿᵈ QUARTER** | | | | | |
| November 13, 2013 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| December 12, 2013 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| **3ʳᵈ QUARTER** | | | | | |
| January 29, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| January 30, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| March 12, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| March 13, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| **4ᵗʰ QUARTER** | | | | | |
| May 7, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |
| May 8, 2014 | ███████ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 10:00 – 3:00 | | |

TRAININGS FOR TRAINING UNIT

## MACWIS Refresher – DFC012

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| 1st QUARTER | | | | | |
| July 9-11, 2013 | ███ | DHS – State Office<br>750 N. State Street<br>**Jackson, MS** | 9:00-4:30 | | |
| August 20-22, 2013 | ███ | **Tupelo WIN Job Center**<br>3200 Adams Farm Road, Suite 4<br>**Belden, MS** | 9:00-4:30 | | |
| 2nd QUARTER | | | | | |
| October 15-17, 2013 | ███ | Pike County DHS Office<br>1002 Warren Krout Road<br>**McComb, MS 39648** | | | |
| November 12-14, 2013 | ███ | **State Office**<br>**MACWIS Lab** | | | |
| December 17-19, 2013 | ███ | Grenada MS Ext. Office<br>1240 Fairground Road<br>**Grenada, MS** | | ███ | ███ |
| 3rd QUARTER | | | | | |
| January 21-23, 2014 | ███ | **State Office**<br>**MACWIS Lab** | | | |
| February 18-20, 2014 | ███ | Jeff Davis Regional DHS Office<br>1185 Frontage Road<br>**Prentiss, MS 39474** | | | |
| March 18-20, 2014 | ███ | **Corinth WIN Job Center**<br>2759 S. Harper Road<br>**Corinth, MS 38834** | | | |
| 4th QUARTER | | | | | |
| April 15-17, 2014 | ███ | | | | |
| May 13-15, 2014 | ███ | **State Office**<br>**MACWIS Lab** | | | |
| June 24-26, 2014 | ███ | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT

|  |  |  |  |  |  |
|--|--|--|--|--|--|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## Individualized Case Planning – DFC013 - 4 CE's - 6 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|------|----------|-------------------|------|---------|--------------|
| **1ST QUARTER** | | | | | |
| July 25, 2013 | ▄▄▄▄▄ | Grenada County DHS<br>1240 Fairground Road<br>**Grenada, MS** | 8:30-5:00 | | |
| August 13, 2013 | ▄▄▄▄▄ | Hinds County DHS<br>4777 Medgar Evers Blvd.<br>**Jackson, MS** | 8:30-5:00 | | ▄▄▄▄ |
| September 4, 2013 | ▄▄▄▄▄ | Harrison County DHS<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 8:30-5:00 | ▄▄▄ | ▄▄▄▄ |
| **2ND QUARTER** | | | | | |
| October 14, 2013 | ▄▄▄▄▄ | Lee County DHS<br>220 S. Industrial Road<br>**Tupelo, MS** | 8:30-5:00 | | |
| November 22, 2013 | ▄▄▄▄▄ | Madison County WIN Job Center<br>152 Watford Parkway Drive, Suite B<br>**Canton, MS** | 8:30-5:00 | | |
| **3RD QUARTER** | | | | | |
| January 8, 2014 | ▄▄▄▄▄ | MS State Ext. Service<br>460 Vance Street<br>**Louisville, MS** | 8:30-5:00 | | |
| February 24, 2014 | ▄▄▄▄▄ | Madison County WIN Job Center<br>152 Watford Parkway Drive, Suite B<br>**Canton, MS** | 8:30-5:00 | | |
| **4TH QUARTER** | | | | | |
| April 29, 2014 | ▄▄▄ | Madison County WIN Job Center | 8:30-5:00 | | |

TRAININGS FOR TRAINING UNIT

| | | 152 Watford Parkway Drive, Suite B **Canton, MS** | | | |
|---|---|---|---|---|---|
| June 17, 2014 | ▬ ▬ | Grenada County DHS 1240 Fairground Road **Grenada, MS** | 8:30-5:00 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Teachable Moments: Knowing When to Teach Parenting Skills – DFC014 – **5.25** CE's – 6 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | **1ST QUARTER** | | | |
| July 26, 2013 | ▬ | Grenada County Extension 1240 Fairground Road **Grenada, MS** | 8:30-4:30 | | ▬ |
| August 19, 2013 | ▬ | Harrison County DHS 10260 Larkin Smith Drive **Gulfport, MS** | 8:30-4:30 | | |
| September 16, 2013 | ▬ | Rankin County DHS 3350 Highway 468 West **Pearl, MS** | 8:30-4:30 | | |
| | | **2ND QUARTER** | | | |
| October 3, 2013 | ▬ | Lee County EA Conf. Room 220 South Industrial Road **Tupelo, MS** | 8:30-4:30 | | ▬ |
| October 22, 2013 | ▬ | Forrest County DHS 1604 W. Pine Street **Hattiesburg, MS** | 8:30-4:30 | | |

TRAININGS FOR TRAINING UNIT

| November 6, 2013 | ■■■■ | Newton County DHS – MP Room<br>14712 Highway 15 S<br>Decatur, MS 39327 | 8:30-4:30 | | ■■■■ |
|---|---|---|---|---|---|
| | | 3RD QUARTER | | | |
| January 10, 2014 | ■■■■ | Washington County DHS<br>240 South Theobald Street<br>Greenville, MS | 8:30-4:30 | | |
| February 6, 2014 | ■■■■ | Hernando Public Library<br>370 Commerce Street, NW<br>Hernando, MS 38632 | 8:30-4:30 | | ■■■■ |
| March 25, 2014 | ■■■■ | Harrison Building<br>910 Old McComb-Liberty Road<br>Liberty, MS 39645 | 8:30-4:30 | ■■ | ■■■■ |
| | | 4TH QUARTER | | | |
| April 4, 2014 | ■■■■ | Attala County Library<br>201 S. Huntington Street<br>Kosciusko, MS | 8:30-4:30 | | ■■■■ |
| May 28, 2014 | ■■■■ | Oxford PD Training Room<br>715 Molly Barr Road<br>Oxford, MS 38655 | 8:30-4:30 | ■■■ | ■■■■ |
| June 19, 2014 | ■■■■ | Natchez WIN Job Center<br>107 Colonel John Pitchford PKWY<br>Natchez, MS | 8:30-4:30 | ■■■ | ■■■ |
| | | | | | |

# Disproportionality & Six Steps to Find a Family: A Practice Guide to Family Search and Engagement – DFC015 - 5 CE's - 6 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | 1ST QUARTER | | | |
| August 6, 2013 | ■■■■ | Harrison County Health Dept.<br>761 Esters Blvd.<br>Biloxi, MS | 9:30 – 4:30 | | ■■■■ |
| August 15, 2013 | ■■■■ | Newton County<br>14712 Hwy. 15S<br>Decatur, MS 39327 | 9:30 – 4:30 | | ■■■■ |
| September 6, 2013 | ■■■■ | Desoto WIN Job Center<br>7320 Hwy. 51 N<br>Southaven, MS 38671 | 9:30 – 4:30 | | ■■■■ |

TRAININGS FOR TRAINING UNIT

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | **2ND QUARTER** | | | |
| October 2, 2013 | � | Forrest County DHS<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 9:30 – 4:30 | | |
| October 30, 2013 | ▀ | E. Miss. Power Assoc. Aud.<br>2128 Hwy. 39 N<br>**Meridian, MS 39301** | 9:30 – 4:30 | | |
| November 19, 2013 | ▀ | Corinth WIN Job Center<br>2759 S. Harper Road<br>**Corinth, MS 38834-2050** | 9:30 – 4:30 | ▀ | ▀ |
| December 3, 2013 | ▀ | MS State Ext. Service<br>460 Vance Street<br>**Louisville, MS** | 9:30 – 4:30 | | |
| | | **3RD QUARTER** | | | |
| January 31, 2014 | ▀ | Hancock County Office<br>856 Hwy. 90<br>**Bay St. Louis, MS** | 9:30-4:30 | | |
| February 5, 2014 | ▀ | Corinth WIN Job Center<br>2759 S. Harper Road<br>**Corinth, MS** | 9:30-4:30 | | |
| February 28, 2014 | ▀ | Winston County DFCS<br>458 Vance Street<br>**Louisville, MS 39339** | 9:30-4:30 | | ▀ |
| | | **4TH QUARTER** | | | |
| April 22, 2014 | ▀ | Harrison County WIN Job Center<br>10162 Southpark Drive<br>**Gulfport, MS 39505** | 9:30-4:30 | | |
| May 27, 2014 | ▀ | Oxford PD Training Room<br>715 Molly Barr Road<br>**Oxford, MS 38655** | 9:30-4:30 | | |
| June 18, 2014 | ▀ | Columbus WIN Job Center<br>5000 N. Frontage Road<br>**Columbus, MS 39701** | 9:30-4:30 | | |

# Submitting TPR Packets that will Stand Up in Court – DFC016 – 3 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| August 8, 2013 | ▀ | Harrison County DFCS<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 9:00-12:30 | ▀ | ▀ |

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| August 8, 2013 | ▓▓▓ | Harrison County DFCS<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 1:00-4:30 | ▓▓▓ | ▓▓▓ |
| August 9, 2013 | ▓▓▓ | Harrison County DFCS<br>10260 Larkin Smith Drive<br>**Gulfport, MS** | 9:00-12:30 | ▓▓▓ | ▓▓▓ |
| August 20, 2013 | ▓▓▓ | Hancock County Family and<br>Children's Services<br>856 HWY 90<br>**Bay ST. Louis, MS** | 8:30-12:00 | ▓▓▓ | ▓▓▓ |
| August 20, 2013 | ▓▓▓ | Hancock County DFCS<br>856 HWY 90<br>**Bay ST. Louis, MS** | 1:00-4:30 | ▓▓▓ | ▓▓▓ |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT

# Promoting Placement Stability and Permanency through Worker/Child Visits – DFC017 - 13 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | **3ʳᵈ QUARTER** | | | |
| January 14-15, 2014 | ▌ | Pearl River County Multi-Purpose Bldg. 417 Hwy. 11 North **Poplarville, MS** | 8:30-4:00 | Miss. State Ext. Office ▌ | ▌ |
| February 18-19, 2014 | ▌ | Grenada County Office Bldg. 1240 Fairground Road **Grenada, MS** | 8:30-4:00 | ▌ | ▌ |
| March 18-19, 2014 | ▌ | Rankin County Regional Office 3350 Highway 468 West **Pearl, MS 39208** | 8:30-4:00 | ▌ | ▌ |
| | | **4ᵗʰ QUARTER** | | | |
| April 9-10, 2014 | ▌ | Harrison Building 910 Old McComb-Liberty Road **Liberty, MS 39645** | 8:30-4:00 | ▌ | ▌ |
| May 14-15, 2014 | ▌ | Lee County EA – Conference Room 220 S. Industrial Road **Tupelo, MS 38801** | 8:30-4:00 | ▌ | ▌ |
| June 25-26, 2014 | ▌ | Lauderdale County MDHS 5226 Valley Street **Meridian, MS 39301** | 8:30-4:00 | | ▌ |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

## Permanency – DFC018 –

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| 1ST QUARTER | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 2ND QUARTER | | | | | |
| October 3-4, 2013 | ▉ | Forrest County DFCS<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 8:30 – 4:30 | | |
| October 8-9, 2013 | ▉ | Desoto County WIN Job Center<br>7320 Highway 51 N.<br>**Southaven, MS** | 8:30 – 4:30 | | |
| October 31-<br>November 1, 2013 | ▉ | E. Miss. Power Assoc. Aud.<br>2128 Hwy. 39 N<br>**Meridian, MS 39301** | 8:30 – 4:30 | | |
| November 20-21, 2013 | ▉ | Corinth WIN Job Center<br>2759 S. Harper Road<br>**Corinth, MS 38834-2050** | 8:30 – 4:30 | | |
| December 4-5, 2013 | ▉ | Winston County Ext. Service<br>480 Vance Street<br>**Louisville, MS** | 8:30 – 4:30 | | |
| December 9-10, 2013 | ▉ | Housing Authority<br>101 Hope Drive<br>**Hattiesburg, MS** | 8:30 – 4:30 | | |
| 3RD QUARTER | | | | | |
| January 27-28, 2014 | ▉ | Hancock County DFCS<br>Hwy. 90<br>**Bay St. Louis, MS** | 8:30 – 4:30 | ▉ | |

TRAININGS FOR TRAINING UNIT

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| February 6-7, 2014 | ▮ | Corinth WIN Job Center 2759 S. Harper Road **Corinth, MS 38834** | 8:30 – 4:30 | ▮ | |
| March 4-5, 2014 | ▮ | **Winston County** **460 Vance Street** ***Louisville, MS** | 8:30 – 4:30 | ▮ | |
| 4TH QUARTER | | | | | |
| April 23-24, 2014 | ▮ | Harrison County WIN Job Ctr. 10162 Southpark Drive **Gulfport, MS** | 8:30 – 4:30 | ▮ | |
| May 28-29, 2014 | ▮ | **Oxford PD Training Room** **715 Molly Barr Road** **Oxford, MS 38655** | 8:30 – 4:30 | | |
| June 19-20, 2014 | ▮ | Columbus WIN Job Center 5000 N. Frontage Road **Columbus, MS 39701** | 8:30 – 4:30 | ▮ | |

## Introduction to Child Welfare 501: Our Mission and Values – DFC019 - 26 CE's

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| 2ND QUARTER | | | | | |
| October 7-10, 2013 | ▮ | State Office | 8:00 – 5:00 | | |
| 3RD QUARTER | | | | | |
| February 10-13, 2014 | ▮ | State Office | 8:00 – 5:00 | | |
| 4TH QUARTER | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

TRAININGS FOR TRAINING UNIT

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## APDCP – ICPC – DFC020 –1 Day Training · 6.5 Contact Hours

| Date | Trainers | Training Location | Time | Contact | Phone Number |
|---|---|---|---|---|---|
| | | 1ˢᵗ QUARTER | | | |
| August 9, 2013 | ▇▇▇▇ ▇▇▇▇ | Lee County EA Conf. Room<br>220 South Industrial Road<br>**Tupelo, MS** | 9:00-3:30 | | ▇▇▇▇ |
| September 3, 2013 | ▇▇▇▇ ▇▇▇▇ | Rankin County Regional Office<br>3350 Hwy. 468 W<br>**Pearl, MS** | 9:00-3:30 | ▇▇▇▇ | ▇▇▇▇ |
| September 26, 2013 | ▇▇▇▇ ▇▇▇▇ | Forrest County DHS<br>1604 W. Pine Street<br>**Hattiesburg, MS** | 9:00-3:30 | ▇▇▇▇ | ▇▇▇▇ |
| | | 2ᴺᴰ QUARTER | | | |
| October 31, 2013 | ▇▇▇▇ ▇▇▇▇ | Harrison Building<br>910 Old McComb-Liberty Road | 9:00-3:30 | ▇▇ | ▇▇▇▇ |

TRAININGS FOR TRAINING UNIT

| | | Liberty, MS | | | |
|---|---|---|---|---|---|
| November 19, 2013 | ▮▮▮ | Oxford PD Training Room<br>715 Molly Barr Road<br>**Oxford, MS 38655** | 9:00-3:30 | ▮▮▮ | ▮▮▮ |
| December 11, 2013 | ▮▮▮ | Lauderdale County DHS<br>5226 Valley Street<br>**Meridian, MS** | 9:00-3:30 | | ▮▮▮ |
| **3ʳᵈ QUARTER** | | | | | |
| January 7, 2014 | ▮▮▮ | Vicksburg WIN Job Center<br>1625 Monroe Street<br>**Vicksburg, MS** | 9:00-3:30 | ▮▮▮ | |
| February 7, 2014 | ▮▮▮ | Grenada County Extension<br>1240 Fairground Road<br>**Grenada, MS** | 9:00-3:30 | ▮▮▮ | ▮▮▮ |
| March 4, 2014 | ▮▮▮ | Forrest County DHS – EA<br>Conference Room<br>1804 West Pine Street<br>**Hattiesburg, MS** | 9:00-3:30 | ▮▮▮ | |
| **4ᵀᴴ QUARTER** | | | | | |
| April 1, 2014 | ▮▮▮ | Rankin County Regional Office<br>3350 Hwy. 468 West<br>**Pearl, MS 39208** | 9:00-3:30 | ▮ | ▮▮▮ |
| May 29, 2014 | ▮▮▮ | Hernando Public Library<br>370 Commerce Street, NW<br>**Hernando, MS 38632** | 9:00-3:30 | | ▮▮▮ |
| June 9, 2014 | ▮▮▮ | McComb Public Library<br>1022 Virginia Avenue<br>**McComb, MS 39648** | 9:00-3:30 | ▮▮▮ | ▮▮▮ |
| June 23, 2014 | ▮▮▮ | Oxford PD Training Room<br>715 Molly Barr Road<br>**Oxford, MS 38655** | 9:00-3:30 | ▮▮▮ | ▮▮▮ |
| | | | | | |

**REVISED 9/10/2013**

TRAININGS FOR TRAINING UNIT

# Ex. 15A



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:       601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL, ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

October 3, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

Enclosed please find a CD (sent via US Mail)  (DHS 361473) containing the following BCS-generated reports and Excel versions:

**MWSPLMC PAD 2 -** Content of Caseworker Visits with Non-Therapeutic Resource
Homes (2/1/2012-7/31/2012 Through 3/1/2013-8/31/2013)
**MWSPLMB PAD 3 -** Content of Caseworker Visits with Therapeutic Resource Homes
(2/1/2012-7/31/2012 Through 3/1/2013-8/31/2013)
**MWBRD16 PAD 5 -** Children Receiving IL Services Tied to Their Plan (Dec. 2012) -
We realized that yesterday the December 2012 Excel file had been
inadvertently left off the CD.

With regard to reports MWSPLMC PAD 2 and  MWSPLMB PAD 3, there are 3 records on the first page of some of these reports that do not show up under a specified region/county of responsibility.  With regard to Client ID ▉▉▉▉▉▉, the record was entered in error as this child was not in custody.  With regard to Client ID ▉▉▉▉▉▉ and ▉▉▉▉▉, a HEAT request has been submitted to merge duplicate person IDs which is what caused this problem.  We anticipate that this fix will be made by the time the next set of reports is produced in November.  Additionally with regard to reports MWSPLMC PAD 2 and  MWSPLMB PAD 3, placement type (PAD Question 121) was added to the PAD instrument in October 2012, therefore the designation of therapeutic/non-therapeutic do not appear on any reports before November 2012.

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C.

Please note that the quarterly report on *"New caseworkers/supervisors complete their training requirements before assuming their responsibilities"* was originally due to be produced on November 1, 2013, as the last quarterly report covered through June 2013. The 6.24.13 Court Order, however, included this report in the second group of reports to be produced on October 1, 2013. The caseload report that contains September data and would be used to create the quarterly report does not run until this month (October) so was not possible to create the quarterly report by October 1st. Additionally, once the caseload report has run, the report validation process must also be completed. As a result, Defendants believe it makes sense to produce this quarterly report on November 1st.

Defendants are still working on the MWLS312 (non-PAD) report. We will send the report as soon as it becomes available.

On the other CD (DHS 361474) you will find the following August 2013 BCS-generated reports and Excel versions:

Automated Report - Count of Supervisors and their Assigned Caseworkers
MWBRD06 - Rate of Maltreatment in Care
MWLS54A - Caseworker Contacts w/ Children in Trial Home Visit
MWLS55SA - Caseworker Contacts w/ Children Remaining in Same Out of Home Placement
                Following an Investigation
SWZ1271 - Timeliness of Investigations for Custody Children
MWZPLMB - Frequency of Caseworker Visits w/ Therapeutic Foster Parents
MWZPLMC - Frequency of Caseworker Visits w/ Non-Therapeutic Resource Homes
MWZWC5D - Caseworker Contacts with Children
MWZWCR3 - Frequency of Caseworker Visits with Parents/Caregiver w/ Whom Child is to
                be Reunited

Sincerely,

*Kenya*

Kenya Key Rachal

cc: Grace Lopes
     Mark Smith
Enclosures

**Ex. 15B**



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

4268 I-55 NORTH
MEADOWBROOK OFFICE PARK
JACKSON, MISSISSIPPI 39211
PHONE:   601.351.2400
FAX:      601.351.2424

www.bakerdonelson.com

KENYA KEY RACHAL, ESQ.
Direct Dial: (601) 351-8940
Direct Fax: (601) 974-8940
E-Mail Address: krachal@bakerdonelson.com

November 1, 2013

**VIA ELECTRONIC and US MAIL**

Miriam Ingber
Children's Rights Inc.
330 Seventh Avenue, 4th Floor
New York, NY 10001

RE:    *Olivia Y., et al. v. Haley Barbour, et al*; In the United States District Court for the
       Southern District of Mississippi, Jackson Division; Cause No. 3:04CV251LN

Dear Miriam:

Enclosed please find the following documents:

*Manual Report "New caseworkers/supervisors complete their training requirements before assuming their responsibilities" -*

Defendants are producing this report pursuant to Appendix 2 of the June 24, 2013 Court Order. This report tracks specific hours for classroom training and OJT completion (but not specific OJT hours).  Starting October 2013, the specific hours of OJT will be tracked and verified.  As a result, the next quarter's report will include the specific hours of OJT completed by each worker.

    Manual Training Reports (11/1/13)    DHS 361576-361607 (PDF)
                                         Excel versions attached to forwarding email

*Manual Licensure Investigation Report "For investigations of agency group homes, emergency shelters, and private child placing agency resource homes, DFCS shall undertake a separate investigation of the contract provider's compliance with DFCS licensure standards."*

This manual report includes those for July, August, and September 2013 and is produced in accordance with Appendix 1 of the Period 4 Plan

    Licensure Training Reports (7-9/13)  DHS 361553-361557 (PDF)
                                         Excel versions attached to forwarding email

ALABAMA  •  GEORGIA  •  LOUISIANA  •  MISSISSIPPI  •  TENNESSEE  •  WASHINGTON, D.C.

BCS-Generated Reports        DHS 361608

This DVD includes the following reports:

*LS315 "Children Who Have Had an Initial Screening and Comprehensive Health Assessment"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*SZTACR "Timeliness of County Conference"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*SZTPHR "Timeliness of Permanency Hearing"* - 15 PDF and 15 Excel reports that cover the time period 8/1/2011-7/31/2012 through 10/1/12-9/30/13

*AR2 "Count of Supervisors and Their Assigned Caseworkers"* - 1 PDF and 1 Excel report as of September 30, 2013

*SXBRDR16 "Children in Custody Ages 14-20 and Their Independent Living Services and Skills Provided"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SXBRD05B "Children Exiting Custody with an Outcome of Reunification"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SMWBRD06 "Rate of Maltreatment in Care"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*S312 "Children Who Have Had a Permanency Plan Developed w/in 30 Days of Entry into Foster Care"* - 1 PDF and 1 Excel report that cover 10/1/12-9/30/13

*SZRESL "Licensure Status of Resource Family Homes"* - 1 PDF and 1 Excel report as of 9/30/13

*SZ0510 "Number of Children in Foster Care by Placement Type"* - 1 PDF and 1 Excel report as of 9/30/13

*SWZ1271 "Timeliness of Investigations for Custody Children"* - 1 PDF and 1 Excel report as of 9/30/13

*SZPLMBD "Frequency of Caseworker Visits with Therapeutic Foster Parents"* - 1 PDF and 1 Excel report that cover 9/1/13-9/30/13

*SBRD10 "Length of Time to Adoption Finalization"* - 1 PDF and 1 Excel Report that cover 10/1/12-9/30/13

*SZRESP "Number of Pending Resource Family Homes"* - 1 PDF and 1 Excel Report as of 9/30/13

*SWZ1271G "Timeliness of Investigations for Custody Children - Intake Detail for Two Months Prior"* - 1 PDF and 1 Excel Report as of 9/30/13

*MWSLS52H "Children in Foster Care less than 10 Years of Age Placed in a Congregate Care Setting"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SZ0171 "Children in Custody 17 of 22 Months with a TPR Filed or Exception Noted"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SLS50D "Children Over 45 Days in Emergency Shelter or Temporary Facility"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*S-PAD 4 "County Conference Participation Report"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*SZPLMC "Frequency of Caseworker Visits with Non-Therapeutic Resource Homes"* - 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*SLS319D "Children in Unlicensed Placements"* - 15 PDF and 15 Excel reports that cover the time period 7/1/2012-7/31/2012 through 9/1/13-9/30/13

*SWZC5D "Children in Out of Home Care With Worker -Seen Alone"* - 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*SWZCR3 "Frequency of Caseworker Visits with Parents/Caregiver Whom Children are to be Reunified* "- 1 PDF and 1 Excel report for the time period 9/1/2012-9/30/13

*S-PAD6 "Child Contacts with Family in First 24 Hours of Custody"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*S-PAD7 "Youth Court Objection to Unlicensed Placement"* - 15 PDF and 15 Excel reports that cover the time period 2/1/12-7/31/12 through 4/1/13-9/30/13

*SZPLM5 "Children in Custody Less that 12 Months Who Have 2 or Fewer Placements"* - 1 PDF and 1 Excel Report that covers 10/1/2012-9/30/2013

Please note that the following reports that were due for production have been delayed as explained below:

*SLS316 "Siblings Who Enter Placement At/Near the Same Time are Placed Together (with Exceptions)*

As part of the validation process, some inconsistencies in the utilization of the radial button "Initially Placed Together", by workers was noted in a few cases (10 of the 234 in the sample). This issue resulted in cases returning a different "requirements met" answer than they should. While we do not want to program a report around data entry inconsistencies, in order to ensure this report is reflecting the most accurate information about children being initially placed with siblings or who have a MSA allowable exception noted, it was determined that it would be best for the report to cross check the resource ID and not rely solely on the "Initially Placed Together" radial. This is a significant programming change since it impacts summary data as well. There was insufficient time for BCS to make this programming change by today and allow time to have the resulting report verified. Defendants anticipate that the programming change will be made next week, followed by the verification process. We anticipate producing the report to the Court Monitor and Plaintiffs on or before Wednesday, November 13th.

*AR1 Detail Report Workload -*

The mixed caseload report was run as of September 30, 2013 and Defendants began checking the validity of the report. It was determined that a number of programming fixes were needed. The last of the fixes was completed this week. As a result there is

insufficient time to allow 8 days for the field to review the report and for Defendants to complete the validation process as described in the data scrubbing and validation plan. Another concern is that if the September 30th report was sent to the field staff for review now, there would be accuracy issues since the field staff would have to identify what their caseload was as of September 30th.  Defendants believe the most prudent course is to run the report as of November 1st, complete the validity check, and provide it to the field next week to complete the validation process.  Defendants plan to produce AR1 to the Court Monitor and Plaintiffs on December 1, 2013.

Manual Report - "*All relative placements approved for expedited placement shall undergo the full licensing procedure within 90 calendar days of the child's placement in the home*"

There is a technical issue with regard to the Excel version of this report.  We'll send the PDF and Excel report as soon as possible next week.

Sincerely,

*Kenya*

Kenya Key Rachal

Enclosure
cc:    Grace Lopes
         Mark Smith

**Ex. 16**

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Region 1S OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|---|---|---|---|---|---|---|---|
| 1-S | REDACTED | REDACTED | SAFE Home Study | Consortium for Children | | 1/30/2014 | 12 hours |
| 1-S | REDACTED | REDACTED | Family Team Meeting | REDACTED | Sept. 5, 2013 | 9-4:30 | 4.5 |
| 1-S | REDACTED | REDACTED | Strategies for Raising Awareness about Adoption from Foster Care | Webinar | Oct. 2, 2013 | 2-3:30 | |
| 1-S | REDACTED | REDACTED | Knowing When to Teach parenting Skills | REDACTED | Oct. 3, 2013 | 8:30-4:30 | |
| 1-S | REDACTED | REDACTED | Suicide Intervention Training | REDACTED | Oct. 7, 2013 | 9-12:30 | 3.5 |
| 1-S | REDACTED | REDACTED | Substance Abuse in the Family | REDACTED | Oct. 24, 2013 | 9-4:30 | |
| 1-S | REDACTED | REDACTED | Child Welfare - Trauma Informed Care Part 2 | Dept. of Mental Health | Nov. 7, 2013 | | 4.5 |
| 1-S | REDACTED | REDACTED | Keeping It Safe | DFCS Inst. | Nov. 20, 2013 | 9-4:00 | |
| 1-S | REDACTED | REDACTED | Interviewing Victims of Human Trafficking and Sexual Exploitation | Webinar | Dec. 13, 2013 | | 1.5 |
| 1-S | REDACTED | REDACTED | Keeping It Safe | REDACTED | Aug. 7, 2013 | 9-4:00 | 4.75 |
| 1-S | REDACTED | REDACTED | APDCP-Court Trng. | | Aug. 9, 2013 | | |
| 1-S | REDACTED | REDACTED | Disproportionality & 6-Steps to Find a Family | DFCS Trainers | Sept. 6, 2013 | 8:30-4:30 | |
| 1-S | REDACTED | REDACTED | Childhood Adol. Mental Health Issues | REDACTED | Sept. 10, 2013 | 8-4:00 | |
| 1-S | REDACTED | REDACTED | Childhood Adol. Mental Health Issues | REDACTED | Sept. 11, 2013 | 8-4:00 | |
| 1-S | REDACTED | REDACTED | Urgency to Permanency Conf. | SCSCY/MDHS-DFCS | Sept. 18-20, 2013 | | 8 |
| 1-S | REDACTED | REDACTED | Teachable Moments | REDACTED | Oct. 3, 2013 | 8:30-4:30 | 6 |
| 1-S | REDACTED | REDACTED | The "Putting the Puzzle Pieces Together!" Lifebook Trng. | REDACTED | Oct. 10, 2013 | 8-5:00 | 6 |
| 1-S | REDACTED | REDACTED | Continuum of Youth Engagement Training | Nat'l. Res. Ctr for Youth Services/DFCS | Oct. 21-23, 2013 | | 1.8 CEUs |
| 1-S | REDACTED | REDACTED | Childhood Adol. Mental Health Issues | REDACTED | Sept. 10, 2013 | 8-4:00 | |

| 1-S | REDACTED | REDACTED | Childhood Adol. Mental Health Issues | REDACTED | Sept. 11, 2013 | 8-4:00 | |
| 1-S | REDACTED | REDACTED | Urgency to Permanency Conf. | SCSCY/MDHS-DFCS | Sept. 18-20, 2013 | | |
| 1-S | REDACTED | REDACTED | Teachable Moments | REDACTED | Oct. 3, 2013 | 8:30-4:30 | 6 |
| 1-S | REDACTED | REDACTED | The "Putting the Puzzle Pieces Together!" Lifebook Trng. | REDACTED | Oct. 10, 2013 | 8-5:00 | 6 |
| 1-S | REDACTED | REDACTED | Individualized Case Planning | DFCS Inst. | Oct. 14, 2013 | | 4 |
| 1-S | REDACTED | REDACTED | Continuum of Youth Engagement Training | Nat'l. Res. Ctr for Youth Services/DFCS | Oct. 21-23, 2013 | | 1.8 CEUs |
| 1-S | REDACTED | REDACTED | Disproportionality & 6-Steps to Find a Family | DFCS Trainers | Nov. 19, 2013 | | 5 |
| 1-S | REDACTED | REDACTED | The "Putting the Puzzle Pieces Together!" Lifebook Trng. | REDACTED | 10/10/13 | 8-5:00 | 6 CEUS, 8 hours |
| 1-S | REDACTED | REDACTED | Advanced Professional Development Court Practice | REDACTED | 8/9/13 | 8-5:00 | 8 hours |
| 1-S | REDACTED | REDACTED | SAFE Home Study | Consortium for Children | 1/30/14 | 1/30/2014 | 12 hours |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5  [ 1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Trauma Informed, Pt 2 | MS Dpt Mental Health | 11/7/13 | 11/7/2013 | 4.5 [1 for cultural div.] on 11/7/13 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Suicide Intervention | MS Dpt Mental Health | 10/7/13 | 10/7/2013 | 3.5 |
| 1-S | REDACTED | REDACTED | Family Team Meeting & Group Facilitation | MDHS-DFCS- PDU | 2/4/14 | | 4.5 |
| 1-S | REDACTED | REDACTED | Individualized Case Planning | MDHS-DFCS- PDU | 1/8/14 | | 4 |
| | REDACTED | REDACTED | Disproportionality & 6-Steps to Find a Family | MDHS-DFCS- PDU | 2/5/14 | | 5 |
| 1-S | REDACTED | REDACTED | Advanced Professional Development Court Practice | MDHS-DFCS- PDU | 8/9/13 | | |
| 1-S | REDACTED | REDACTED | MACWIS Refresher | MDHS-DFCS- PDU | 8/20/13 | | |
| 1-S | REDACTED | REDACTED | MACWIS Refresher | MDHS-DFCS- PDU | 8/20/13 | | |
| 1-S | REDACTED | REDACTED | Teachable Moments | MDHS-DFCS- PDU | 10/3/13 | | |
| 1-S | REDACTED | REDACTED | Orientation to MDHS-Lee County | MDHS-DFCS- PDU | 11/20/13 | | |
| 1-S | REDACTED | REDACTED | Quarterly Social Work Field Instructor Orientation/Training Seminar | University of Mississippi | 1/24/14 | | |
| 1-S | REDACTED | REDACTED | Advanced Professional Development Court Practice | MDHS-DFCS- PDU | 8/9/13 | | |
| 1-S | REDACTED | REDACTED | Teachable Moments | MDHS-DFCS- PDU | 10/3/14 | | |
| 1-S | REDACTED | REDACTED | Family Team Meeting and Group Facilitation | MDHS-DFCS- PDU | 2/4/14 | | |

Region 2E OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|---|---|---|---|---|---|---|---|
| 3-N | REDACTED | REDACTED | Family Team Meeting and group facilitation | REDACTED | 12/4/2013 | | 4.5 |
| 3-N | REDACTED | REDACTED | Teachable Moments | REDACTED | 9/16/2013 | | 6 |
| 3-N | REDACTED | REDACTED | Court training | REDACTED | 07/18-19/13 | | 10 |
| 3-N | REDACTED | REDACTED | Pre-Service training | REDACTED | 8/5-9/2013 | | 8.25 |
| 3-N | REDACTED | REDACTED | Pre-Service training | REDACTED | 8/19-23/2013 | | 8.5 |
| 3-N | REDACTED | REDACTED | Pre-Service training | REDACTED | 9/3-6/2013 | | 9.25 |
| 3-N | REDACTED | REDACTED | Clinical Suprvision Training | REDACTED | 10/21-25/2013 | | 16 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Region 3S OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |

Region 4N OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | 0 |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 16, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 1:00-3:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Oct. 17, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | ABC's of your Child's Education | REDACTED | Nov. 14, 2013 | 9:00-11:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 01, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |

| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
|---------|----------|----------|-------------------|----------|---------------|-----------|---|
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | Documentation Lab | REDACTED | Nov. 07, 2013 | 9:00-3:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Jan. 13, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | TPR/Investigation Lab | REDACTED | Feb. 10, 2014 | 9:00-4:00 | |
| 4 South | REDACTED | REDACTED | Level II Clinical Supervisory III | REDACTED | Aug. 15-16, 2013 | 9:00-4:00 | 11.50 CE's |

Region 4S OnGoing Training

| 4 South | REDACTED | REDACTED | Level II Clinical Supervisory III | REDACTED | Aug. 15-16. 2013 | 9:00-4:00 | 11.50 CE's |
|---------|----------|----------|----------------------------------|----------|------------------|-----------|------------|
| 4 South | REDACTED | REDACTED | Level II Clinical Supervisory III | REDACTED | Aug. 15-16. 2013 | 9:00-4:00 | 11.50 CE's |
| 4 South | REDACTED | REDACTED | Level II Clinical Supervisory III | REDACTED | Aug. 15-16. 2013 | 9:00-4:00 | 11.50 CE's |
| 4 South | REDACTED | REDACTED | Level II Clinical Supervisory III | REDACTED | Aug. 15-16. 2013 | 9:00-4:00 | 11.50 CE's |
| 4 South | REDACTED | REDACTED | The Urgency of Permanency Con | REDACTED | Sept. 18-20, 2013 | | 8 CE's |
| 4 South | REDACTED | REDACTED | Indian Child Welfare Act Conf. | REDACTED | Aug. 15-16. 2013 | | 7.25 CE's / 6.5 Cultural Competency |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |
| 4 South | REDACTED | REDACTED | Mental Health issues and the CW Profession | REDACTED | Feb. 25-26, 2014 | 8:15-4:00 | |

Region 5E OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |
|        |           |        |                |              |      |      |                               |

Region 5W OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Region 6 OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|--------------------------------|
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |
|        |           |        |                |              |      |      |                                |

Region 7E OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|---------------|--------------|------|------|-------------------------------|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Region 7W OnGoing Training

| Region | Supervisor | Worker | Training Title | Presented by | Date | Time | Number of CE's (if applicable) |
|--------|-----------|--------|----------------|--------------|------|------|-------------------------------|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Ex. 17A**

**Grace M. Lopes**

---

**From:** Wendy Benoit [mailto:Wendy.Benoit@mdhs.ms.gov]
**Sent:** Tuesday, November 20, 2012 4:00 PM
**To:** Mia Caras
**Cc:** Grace Lopes
**Subject:** Re: Request for Contracts

Mia,

Please confirm that you have received the following:

1) Catholic Charities - Unaccompanied Refugee Minors
2) Catholic Charities - Community Based Child Abuse Prevention
3) MS Children's Home Society - Family Reunification and Family Preservation
4) Family Resource Center of NE MS - Multi-Disciplinary Teams and Forensic Interviewing
5) Southern Christian Services - Independent Living
6) Southern Christian Services - Post Adoption Services
7) Starkville School District - Community Based Child Abuse Prevention

Please let me know if I can be of further assistance. Thanks so much and you have a wonderful Thanksgiving!


Wendy Benoit-Wilson
Projects Officer IV, Special
Administration Unit
Division of Family and Children's Services
601-359-4377 phone
601-359-4333 fax
Wendy.Benoit@mdhs.ms.gov

Child Abuse and Neglect Hotline 1-800-222-8000


Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.


-----"Mia Caras" <mcaras@sparb.org> wrote: -----
To: "'Wendy Benoit'" <Wendy.Benoit@mdhs.ms.gov>
From: "Mia Caras" <mcaras@sparb.org>
Date: 11/20/2012 11:28AM
Cc: <gmlopes@oymonitor.org>
Subject: Request for Contracts

Wendy:   I would be most appreciative if you could kindly transmit to me copies of all contracts that MDHS/DFCS has entered into since July 5, 2012 with private agencies that provide protective, preventive, foster care, or adoption case work services.  Please let me know if you have any questions about this request as well as when you expect you will have an opportunity to forward these documents.  Thank you and have a nice Thanksgiving!  -Mia

1

Mia Caras
Special Assistant
Office of the Court Monitor
1350 Connecticut Avenue, N.W., Suite 1000
Washington, D.C.  20036
202.232.8311
202.232.2052 - fax

**Ex. 17B**

# Subgrantee Signature Sheet

# And

# Budget Information

MISSISSIPPI
Form MDHS-SCSS-1002
Revised 3-01-2005

**STATE OF MISSISSIPPI**
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
**SUBGRANT SIGNATURE SHEET**
P. O. BOX 352
JACKSON, MISSISSIPPI 39205-0352

MDHS FUNDING DIVISION:   FAMILY & CHILDREN'S SERVICES

| | |
|---|---|
| **1. SUBGRANTEE'S NAME, ADDRESS & PHONE #**<br><br>Catholic Charities, Inc.<br>200 North Congress Street, Ste. 100<br>Jackson, MS  39201<br>601-355-8634<br><br>**SUBGRANTEE'S FISCAL YEAR END DATE:**<br>June 30, 2013<br><br>**NAME/TITLE OF OFFICERS: (SUBGRANT ENTITY)**<br>a. Bishop Joseph N. Latino, Board President<br>b. Greg Patin, Executive Director<br><br>CONTACT PERSON:   Christina Bach, LPC<br>PHONE NUMBER:     601-326-3711 | **2. EFFECTIVE DATE:**<br>10/1/2012<br>**3. SUBGRANT NUMBER:**<br>128F411<br>**4a. GRANT IDENTIFIER (funding source and year):**<br>G1101MSFRPG ( 2011 Comm. Based Child Abuse Prevention )<br>**b. CATALOG OF FEDERAL DOMESTIC ASSISTANCE (CFDA) #:**<br>93.590<br>**5. BEGINNING AND ENDING DATES:**<br>10/01/2012 to 9/30/2013<br>**6. SUBGRANT PAYMENT METHOD:**<br>_____ CURRENT NEEDS/CASH ADVANCE<br>___X___ COST REIMBURSEMENT<br>_____ OTHER<br><br>**7. PAGE 1 OF  3** |

**8. THE FOLLOWING FUNDS ARE OBLIGATED:**

| | | | | | |
|---|---|---|---|---|---|
| FEDERAL | $ | 100,000.00 | ADMINISTRATION | $ | 9,090.90 |
| STATE | | | SERVICES | $ | 90,909.10 |
| OTHER | $ | 25,000.00 | OTHER | $ | 25,000.00 |
| **TOTAL** | **$** | **125,000.00** | **TOTAL** | **$** | **125,000.00** |

**9. THE SUBGRANTEE AGREES TO ADMINISTER THIS SUBGRANT IN ACCORDANCE WITH ALL FEDERAL AND/OR STATE PROVISIONS THAT ARE APPLICABLE TO SAID SUBGRANT.  THE FOLLOWING DOCUMENTS ARE INCORPORATED HEREIN:**

a. SUBGRANT SIGNATURE SHEET
b. BUDGET SUMMARY
c. COST SUMMARY SUPPORT SHEET
d. BUDGET NARRATIVE
e. SUBGRANT AGREEMENT
    1) SCOPE OF SERVICES
    2) GENERAL TERMS AND PROVISIONS

3) STANDARD ASSURANCES POLICY
4) DEBARMENT POLICY
5) DRUG FREE WORKPLACE POLICY
6) SUBGRANT MANUAL ACCEPTANCE
f. VERIFICATION OF 25% FIDELITY BOND
g. COPY OF BOARD RESOLUTION (if applicable)
h. COST ALLOCATION PLAN & INDIRECT COST RATES

**10. IDENTIFICATION OF OTHER FUNDING (List all other funds requested, anticipated or held over from prior years dedicated to this or similar programs including Federal, State, Local or Private funds.  If additional space is needed, please attach typed pages).**

| SOURCE | PURPOSE | CONTRACT # | AMOUNT |
|---|---|---|---|
| NA | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

| 11. APPROVED FOR MDHS: | 12. APPROVED FOR SUBGRANTEE: |
|---|---|
| BY: _____  DATE: _____<br>Richard A. Berry<br><br>Executive Director<br>TITLE | BY: _____  DATE: 9/28/12<br>Greg Patin<br><br>Executive Director<br>TITLE |

MISSISSIPPI
Form MDHS-BS-1006
Effective 3-01-2005

**Mississippi Department of Human Services**
**BUDGET SUMMARY**

Page     2     of     3     Pages

| 1. Applicant Agency: Catholic Charities, Inc. | | | | | | |
|---|---|---|---|---|---|---|

**1. Applicant Agency:**

Catholic Charities, Inc.

| 2. Subgrant Number: | 3. Grant ID | 4. Beginning | 5. Ending |
|---|---|---|---|
| 128F411 | G1101MSFRPG | October 1, 2012 | September 30, 2013 |

**6. Submitted as Part of (check one):**

a. Funding       b. Modification ( )       c. Modification ( )

Request  (X)              No.                      Effective Date

**FUNDING SOURCE**

| 7. FOR MDHS USE ONLY | 8. Budget Activity | Federal | State | Other | | Total |
|---|---|---|---|---|---|---|
| | Program Support | $    100,000.00 | | $      25,000.00 | | $        125,000.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | **TOTAL** | $    100,000.00 | | $      25,000.00 | | $        125,000.00 |

Mississippi
Form MDHS-CSSS-1007
Effective 3-01-2005

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
**COST SUMMARY SUPPORT SHEET**

Page ____ 3 ____ of ____ 3 ____ Pages

| 1. Applicant Agency | | | | | |
|---|---|---|---|---|---|
| Catholic Charities, Inc. | | | | | |

| 2. Subgrant Number | 3. Grant ID | | 4. Beginning | 5. Ending |
|---|---|---|---|---|
| 128F411 | G1101MSFRPG | | October 1, 2012 | September 30, 2013 |

| 6. Budget Activity |
|---|
| Program Support |

| 7. For MDHS Use Only | 8. Budget Category | 9. Description of Item and/or Basis for Cost | 10. Budget Federal | | 10. Budget All Other | | Total | |
|---|---|---|---|---|---|---|---|---|
| | Salaries | See Attached Budget Narrative | $ | 57,161.04 | $ | 10,782.25 | $ | 67,943.29 |
| | Fringe | See Attached Budget Narrative | $ | 21,793.97 | $ | 4,036.75 | $ | 25,830.72 |
| | Travel | See Attached Budget Narrative | $ | 3,000.00 | $ | - | $ | 3,000.00 |
| | Contractual | See Attached Budget Narrative | $ | 5,000.00 | $ | 10,181.00 | $ | 15,181.00 |
| | Commodities | See Attached Budget Narrative | $ | - | $ | - | $ | - |
| | SL&G | See Attached Budget Narrative | $ | 3,954.09 | $ | - | $ | 3,954.09 |
| | Indirect Costs | See Attached Budget Narrative | $ | 9,090.90 | $ | - | $ | 9,090.90 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | Totals | | $ | 100,000.00 | $ | 25,000.00 | $ | 125,000.00 |

# Agreement

# AGREEMENT BETWEEN
## MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## AND
## CATHOLIC CHARITIES, INC.

**THIS AGREEMENT** is made and entered into by and between the Division of Family and Children's Services, Mississippi Department of Human Services, hereinafter referred to as "MDHS," and Catholic Charities, Inc., hereinafter referred to as "Subgrantee."

In furtherance of the mutual interests and responsibilities of the parties hereto, this Agreement is entered into by and between the parties upon the following terms, provisions, and conditions, to-wit:

## SECTION I.  RESPONSIBILITY OF SUBGRANTEE

Subgrantee shall provide, perform and complete, in a reasonable manner as determined by MDHS, the services and activities described in the "Scope of Services," attached hereto as Exhibit A and incorporated herein by reference and the "Modified Mississippi Settlement Agreement and Reform Plan," attached hereto as Exhibit B. Subgrantee shall establish and maintain effective controls and accountability over all funds, property and other assets covered by this Agreement.

## SECTION II.  TERM OF AGREEMENT

The term of this Agreement shall commence on October 1, 2012, or after all parties have signed, whichever is later, and end on September 30, 2013.  Should funds continue to be made available to MDHS through the Community-Based Child Abuse Prevention Grant, or other grant award, MDHS shall have the option to renew the Subgrant Agreement on an annual basis for up to four (4) years at the same terms and conditions.  Renewal of the Subgrant Agreement shall be at the sole discretion of MDHS.  MDHS reserves the right to terminate any subgrant at any time, subject to current subgrant provisions, and avail itself to any and all remedies available to protect its interests.

## SECTION III.  PAYMENT AND BUDGET LIMITATIONS

**SUBGRANT AMOUNT.**  The total amount of the subgrant to be provided by MDHS under this Agreement is One Hundred Thousand Dollars and Zero Cents. ($100,000.00).

**METHOD OF PAYMENT.**  It is understood between the parties hereto that funds supporting this Agreement will be utilized and expended as provided for in the Budget Summary, Cost Summary Support Sheet(s), and Budget Narrative, attached hereto as Exhibit C, (herein referred to as the "Budget") and incorporated herein by reference under the same terms and conditions as set forth in said Budget.  MDHS/DFCS shall process all reimbursement requests on a cost reimbursement basis in its normal course of business, and, if it is found in order, shall process payment thereon to be made within reasonable time to Subgrantee.

1

**BUDGET REVISIONS.** Any increase, decrease or change in the funding or budgeted line items under this Agreement shall be authorized only as provided by the Mississippi Department of Human Services' line item flexibility policy and/or as authorized by a modification to this Agreement.

**MAXIMUM PAYMENT.** Notwithstanding any other provision of this Agreement, the maximum payment by MDHS to Subgrantee shall not exceed the sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) as set forth in Section III.A. above, in consideration for all performances or services provided by Subgrantee, unless specifically modified as provided herein.

## SECTION IV.  RELATIONSHIP OF PARTIES

The relationship of the Subgrantee to MDHS is that of independent contractor. None of the provisions of this Agreement are intended to create nor shall they be construed to create an agency, partnership, joint venture or employee-employer relationship between MDHS and Subgrantee.

Any persons assigned by Subgrantee to perform the services hereunder shall be the employee of the Subgrantee. MDHS may, however, direct Subgrantee to replace any of its employees under this subgrant. The Subgrantee will replace the employee within five (5) calendar days after receipt of notice from MDHS.

## SECTION V.  COMPLAINT RESOLUTION

Subgrantee shall provide a complaint resolution procedure regarding decisions on eligibility for the program, applications that are not acted upon timely, and decisions otherwise affecting benefits and services for the program funded by this subgrant. The appeal or complaint procedures shall be carried out according to the Fair Hearing Procedure of the Mississippi Department of Human Services, a conciliation process, the Personal Responsibility and Work Opportunity Act of 1996, and/or such other Procedure as may be required by MDHS, whichever is appropriate to the complaint as directed by MDHS.

## SECTION VI.  CHANGES

MDHS reserves the right to change any portion of the work required under this Agreement or amend other terms, including the Scope of Services, necessary to meet Federal or other operation requirements. Revision shall be made by written amendment to this Agreement duly signed by the authorized representative of each party hereto.

## SECTION VII.  SAFEGUARDING INFORMATION

A.    **CONFIDENTIALITY.** Subgrantee shall treat all State data and information to which it has access under this subgrant as confidential to the extent that confidential treatment of same is required under Federal and State law and shall not disclose same to a third party without specific written consent of the State. In the event that Subgrantee receives notice that a third party requests divulgence of confidential or otherwise protected information, and has served upon it a subpoena or other validly issued administrative or judicial

2

process ordering divulgence of confidential or otherwise protected information, Subgrantee shall promptly inform the State and thereafter respond in conformity with such subpoena as required by applicable State and/or Federal laws, rules and regulations. The provision herein shall survive termination of the subgrant for any reason and shall continue in full force and effect and shall be binding upon the Subgrantee and its agents, employees, successors, assigns, subcontractors, or any party claiming an interest in the subgrant on behalf of, or under, the rights of the subgrant following any termination.

All records and information involving applicants or recipients of services under this subgrant shall be kept confidential. The use or disclosure of information concerning applicants and/or recipients shall be limited to purposes directly connected with the administration of the Community-Based Child Abuse Prevention Program. Subgrantee shall take any and all steps necessary to insure the physical security of the records and information that it obtains under this Agreement, including but not limited to providing fire protection, protections against smoke and water damage, locked files, passwords, access logs or other methods to prevent loss or unauthorized access or retrieval of the records or information.

The safeguards for information to which both parties will adhere are contained in the MDHS Subgrantee/Contract Manual and any applicable Federal/State/Local regulations. The restrictions herein shall survive the termination or completion of this Agreement and shall continue in full force and effect and shall be binding upon the Subgrantee and/or its officers, agents, employees, successors, assigns, subcontractors, or any party claiming an interest in the Agreement on behalf of or under the rights of the Subgrantee.

B. **THIRD PARTY REQUESTS.** In event that the Subgrantee receives notice that a third party requests divulgence of confidential or otherwise protected information and/or has served upon it a subpoena or other validly issued administrative or judicial process ordering divulgence of confidential or otherwise protected information, Subgrantee shall promptly inform MDHS and thereafter respond in conformity with such subpoena as required by applicable State and/or Federal laws, rules and regulations.

C. **LIABILITY.** Any liability resulting from the wrongful disclosure of confidential information on the part of the Subgrantee and/or its officers, agents, subcontractors, and/or representatives shall rest with the Subgrantee. Disclosure of any confidential information by the Subgrantee and/or its representatives or subcontractor without the express written approval of MDHS, shall result in the immediate termination of this Agreement. Nothing herein shall be construed to prevent MDHS from seeking any other remedy, in law or equity, available to it.

## SECTION VIII. TERMINATION OF AGREEMENT

A. **TERMINATION FOR CONVENIENCE OF EITHER PARTY**

This Agreement may be terminated by either party, in whole or in part, at any time, by giving written notice to the other party of such termination and specifying the effective date thereof, at least 30 days before the effective date of such termination. In the event of termination, Subgrantee shall be entitled to receive only reimbursement for allowable

3

expenses incurred to the date of termination. In no event shall such expenses exceed the maximum amount payable under this subgrant.

**B.    TERMINATION CLAIM**

Within 30 days after receipt of a Notice of Termination, the Subgrantee shall submit to MDHS its termination claim, in the form prescribed by MDHS.

In the event of termination of this subgrant as provided herein, Subgrantee shall be entitled to receive just and equitable compensation for services or performances actually and satisfactorily performed, prior to the effective date of termination, under this subgrant.  Such compensation shall be based upon the payment provisions described in Method of Payment Section of the subgrant but, in no case, shall said compensation exceed the total amount of this subgrant.

Subgrantee shall be liable to MDHS for damages sustained by MDHS by virtue of any breach of this subgrant by Subgrantee, and MDHS may withhold any payments to Subgrantee for the purpose of setoff until such time as the exact amount of damages due to MDHS from Subgrantee are determined.  The rights and remedies of MDHS provided in this Section shall not be exclusive and are in addition to any other rights and remedies provided by law or in equity.

**C.    TERMINATION FOR DEFAULT**

Unless the Subgrantee's default or breach of this subgrant is excused by MDHS, MDHS may by written notice of default to the Subgrantee terminate the whole or any part of this Agreement if the Subgrantee has failed to carry out its obligations hereunder and has not remedied or taken appropriate steps to remedy the default.

If, through any cause, Subgrantee shall fail to fulfill in a timely and proper manner, as determined by MDHS, its obligations under this subgrant, or if Subgrantee shall violate any of the covenants, agreements, or stipulations of this subgrant, MDHS shall thereupon have the right to terminate the subgrant by giving written notice to Subgrantee of such termination and specifying the effective date thereof at least five (5) days before the effective date of such termination. In the event of such termination, Subgrantee shall be entitled to receive just and equitable compensation for satisfactory work completed on documents, services or materials collected and/or prepared by Subgrantee in connection with this subgrant.

Notwithstanding the above, Subgrantee shall not be relieved of liability to MDHS for damages sustained by MDHS by virtue of any breach of this subgrant by Subgrantee, and MDHS may withhold any payments to Subgrantee for the purpose of setoff until such time as the exact amount of damages due to MDHS from Subgrantee are determined.

The rights and remedies of MDHS provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this subgrant.

If the Subgrantee fails to comply with any of the covenants, terms, or stipulations of this

subgrant, whether stated in a Federal statute or regulation, an assurance, in the State Plan or application, a notice of award, or elsewhere, MDHS may take any of the following actions:

    a. Issue a warning letter that further failure to comply with such covenant, term, or stipulation will result in a more serious sanction or action;

    b. Condition a future subgrant;

    c. Direct the Subgrantee to stop the incurring of costs with subgrant amounts;

    d. Require that some or all of the subgrant amounts be remitted to MDHS;

    e. Reduce the level of funds the Subgrantee would otherwise be entitled to receive;

    f. Elect not to provide future subgrant funds to the Subgrantee until appropriate actions are taken to ensure compliance;

    g. Wholly or partly suspend or terminate the current award of funds to the Subgrantee;

    h. Suspend reimbursements to Subgrantees who fail to meet deadlines on unresolved monitoring or audit findings, closeout packages, and/or fiscal and programmatic requirements; or

    i. Suspend payments upon notification that Subgrantee is bankrupt or receives tax lien of any type, regardless of the reason.

**D.**    **TERMINATION BECAUSE OF CIRCUMSTANCES BEYOND THE CONTROL OF THE PARTIES**

If either party is rendered unable, wholly or in part, by reason of strikes, accidents, acts of God, weather conditions or other acts beyond its control and without its faults or negligence, to comply with its obligations under this subgrant, then, such party shall have the option to cancel, upon the giving of written notice, this Agreement, in whole or part as the case may warrant.

**E.**    **AVAILABILITY OF FUNDS**

It is expressly understood and agreed that the obligation of MDHS to proceed under this Agreement is conditioned upon the availability of funds, appropriation of funds by the Mississippi State Legislature and the receipt of Federal and/or State funds. In the event that the funds anticipated for the fulfillment of the Agreement are at any time, not forth coming or are insufficient, either through the failure of the Federal government to provide funds or of the State of Mississippi to appropriate funds or the discontinuance or material alteration of the program under which funds were provided or if funds are not otherwise available to MDHS for the performance of this Agreement, MDHS, Division of Family & Children's Services, shall have the right to immediately terminate this Agreement, without damage, penalty, cost, or expense to MDHS of any kind whatsoever. The ultimate decision as to whether or not funds continue to be available for the performance of this Agreement lies solely with MDHS.

## SECTION IX. AGREEMENTS BY SUBGRANTEE

**A.**    **SUBCONTRACTORS.** It is understood and agreed that the Subgrantee may enter into

5

agreements or subcontracts with eligible entities (hereinafter sometime referred to as Subgrantee's Contractor/Subcontractor) for the provision of the services required under this Agreement. Any and all such agreements or subcontracts shall include all of the terms and conditions of this Agreement. Subgrantee agrees that it shall require all of its subcontractors to comply with all local, municipal and county health, safety and other ordinances and requirements and with all applicable Federal and State laws, statutes, and regulations, the same as apply to the Subgrantee herein. The agreements/subcontracts must include assurances that services will be provided to all eligible persons, regardless of potential participant's race, color, religious beliefs/practices, creed, age, national origin, sex, or mental or physical disability. The Subgrantee and its Contractors/Subcontractors cannot, on the basis of race, color, religious beliefs/practices, creed, age, national origin, sex, or mental or physical disability, treat one person differently from another in determining eligibility, benefits or services provided, if applicable.

The Subgrantee, however, shall be fully responsible for the performance of its Contractors/Subcontractors.

Copies of all subcontracts, agreements, and modifications thereto shall be forwarded to MDHS, Division of Family & Children's Services.

B.    **RELEASE OF LIABILITY.** Subgrantee agrees that in any agreement or subcontract for the provision of the services or activities covered by this subgrant, it shall require that the Subgrantee's contractor, subcontractor, representatives, or agents release and hold harmless MDHS from and against all claims, demands, liabilities, suits, damages, and costs of every kind and nature whatsoever, including court costs and attorney's fees, arising out of or caused by contractor or subcontractor and/or its officers, agents, or employees in the performance of such services or activities.

## SECTION X. REPORTING

A.    **MONTHLY REPORTS.** Subgrantee agrees to provide reports and/or information within ten (10) calendar days after the close of each month. Such reports shall be complete for the period concerned and shall contain information concerning clients served, catchment areas, administrative costs, if any, direct and indirect costs of any nature expended in the performance of this subgrant, units of service, and other sufficient data to provide evidence of budget and programmatic compliance as required by this subgrant. Subgrantee shall also provide to MDHS monthly financial supporting documentation of all expenditures pertaining to the subgrant.

B.    **TERMINATION REPORTS.** Subgrantee shall furnish MDHS a written termination report within ten (10) calendar days from the termination date unless additional time is granted by MDHS for the purpose of audits, examinations, or other reasons. The termination report shall include information as set forth in Subsection A of this Section and any other data required by MDHS to furnish evidence of financial and programmatic compliance.

6

C.    **FINAL FISCAL REPORT.**  The Subgrantee agrees to provide a final fiscal reporting worksheet, along with closeout report, to MDHS within forty-five (45) days after the ending of this subgrant.  These fiscal documents will be used for the purpose of reconciling this subgrant to the actual expenditures for activities and services rendered, not to exceed the maximum liability as set forth in this subgrant.  Any funds paid by MDHS to Subgrantee and not expended for activities or contracted services under this subgrant or funds expended in violation of this subgrant shall be considered MDHS' funds and shall be returned to MDHS in full.  Where deemed appropriate by MDHS and accepted by the Subgrantee, a reduction may be allowed in future payments under future subgrants by a total amount equal to the amount disallowed or deferred or by other methods approved by MDHS.  Subgrantee must adhere to the procedures for closeout of subgrants set forth in Section 11 of the MDHS Subgrantee/Contract Manual.

Subgrantees, who fail to meet the closeout deadline, as outlined in the MDHS Subgrantee/Contract Manual, may be disqualified from future funding consideration.

D.    **TAX REPORTS.**  Subgrantee shall file timely federal and state tax reports as due and, if requested, shall furnish MDHS with a copy of such reports within ten (10) calendar days after the filing of the report(s) with the applicable state and/or federal taxing authority(ies).

## SECTION XI. SEVERABILITY

If any term or provision of this subgrant is prohibited by the laws of the State of Mississippi or is declared invalid or void by a court of competent jurisdiction, the remaining terms and provisions of this subgrant shall not be affected thereby, and each remaining term and provision of this subgrant shall be valid and enforceable to the fullest extent permitted by law.

## SECTION XII. ASSIGNMENT

A.    The rights, privileges, benefits, and obligations created by this subgrant and by operation of law extend to and accrue and are obligatory upon the parties hereto, their personal or real representatives, and successors.

B.    Subgrantee shall not assign or otherwise transfer the obligations incurred on its part pursuant to the terms of this subgrant without the prior written consent of MDHS.  Any attempted assignment or transfer of its obligation without such consent shall be wholly void.  MDHS does reserve, however, the exclusive right to direct the Subgrantee to assign and/or transfer this subgrant when such course of action is mandated by the Federal grantor agency.  In the event that such a transfer or assignment is directed by MDHS, MDHS further reserves the right to ensure adequate and proper arrangement of such transfer to assure continued, effective performance of the purposes for which the parties entered into this subgrant.

## SECTION XIII. RECORDS AND AUDITS

A.    **MAINTENANCE OF RECORDS.**  Subgrantee shall establish and maintain financial and programmatic records, supporting documents, statistical records and other records as may be necessary to reflect the performances of the provisions of this Agreement.

B.    **FISCAL REQUIREMENTS AND AUDIT.**  Subgrantee shall establish such fiscal control and fund accounting procedures, including internal auditing procedures, as may be necessary to assure the proper disbursal of and accounting for funds in accordance with this Agreement, the Single Audit Act Amendments of 1996 (31 U.S.C. Sections 7501-7507) and revised United States Office of Management and Budget (OMB) Circular A-133. The Subgrantee shall keep, maintain and present to MDHS, as required, necessary and proper vouchers, documentation and such other reports as may be required to support the expenditure of funds pursuant to this Agreement, and the Subgrantee shall keep and maintain bookkeeping and accounting records and procedures as the same may be established and approved by MDHS. The Subgrantee's records must be sufficient to allow MDHS to audit and monitor the Subgrantee's operation of its program and sufficient to permit the preparation of reports required by the Single Audit Act and the statues authorizing this subgrant. These records shall be set up in accordance with Generally Accepted Accounting Principles, MDHS' Fiscal Accountability Guidelines, and OMB Cost and Accounting Standards.

C.    **INDEPENDENT AUDIT.**  Audits shall be made by an independent auditor in accordance with the Single Audit Act Amendments of 1996, revised OMB Circular A-133, and generally accepted government standards covering financial audits.

The Subgrantee, by signature affixed herein, agrees that within forty-five (45) days of the expiration of this subgrant, an independent financial audit may be performed in order to comply with OMB Circular A-133.  No independent fiscal audit will be reimbursed in whole or in part by MDHS unless the Subgrantee is specifically required by MDHS to engage the services of an independent audit firm.  MDHS reserves the right to select the audit entity under this provision.

D.    **AUDIT FINDINGS.**  Subgrantee shall receive, reply to and resolve any State and/or Federal programmatic exceptions related to this Agreement and/or any of the Subgrantee's Contractors/Subcontractors. Should, during the process of monitoring the program, MDHS become aware of any monitoring findings, the grantee may be required to refund the amount of the questioned costs, following the procedures, outlined in the Subgrantee Manual, Section 9, Page 4, Corrective Action.

## SECTION XIV. DISPUTES

Any dispute concerning a question of fact under this subgrant which is not disposed of by agreement of the parties hereto shall be decided by the Director of the Division of Family & Children's Services.  This decision shall be reduced to writing and a copy thereof mailed or furnished to the Subgrantee and shall be final and conclusive, unless, within thirty (30) days from the date of the decision, Subgrantee mails or furnishes to the Executive Director of the

Mississippi Department of Human Services a written request for review.  Pending final decision of the Executive Director or his designee, the Subgrantee will proceed in accordance with the decision of the Director of the Division of Family & Children's Services.

In the review before the Executive Director, the Subgrantee shall be afforded an opportunity to be heard and to offer evidence in support of its position on the question and decision under review.  The decision of the Executive Director or his designee shall be final and conclusive unless determined by a court of competent jurisdiction in Hinds County, State of Mississippi, to have been fraudulent, capricious, or so grossly erroneous as necessarily to imply bad faith or not supported by substantial evidence.

## SECTION XV.  SUPPLANTING

Funds received under this subgrant shall be used only to supplement, not supplant, the amount of Federal and/or State, and Local funds otherwise expended for the support of Community Based Child Abuse Prevention Programs.

## SECTION XVI.  WAIVER

Failure of either party hereto to insist upon strict compliance with any of the terms, covenants, and conditions of this subgrant shall not be deemed a waiver or relinquishment of any similar right or power hereunder at any subsequent time or of any other provision hereof nor shall it be construed to be a modification of the terms of this subgrant.

## SECTION XVII.  RECORD RETENTION AND ACCESS TO RECORDS

It is specifically understood and agreed that the Subgrantee shall provide MDHS with readily accessible and full opportunity to conduct program and/or fiscal monitoring and auditing (including through on-site visits to the Subgrantee's premises) of the Subgrantee's performance under this Agreement. MDHS, any State agency authorized to audit MDHS, the Federal grantor agency, and the Comptroller General of the United States or any of their duly authorized representatives shall have the right of access to any books, documents, papers or other records of the Subgrantee that are pertinent to the services performed under this Agreement in order to make audit, examination, excerpts and/or transcripts. These records shall be retained for at least three (3) years; however, if any litigation or other legal action, by or on behalf of the State or Federal Government has begun that is not completed at the end of the three (3) year period, or if audit findings, litigation or other legal action has not been resolved at the end of the three (3) year period, the records shall be retained until resolution.

## SECTION XVIII. PATENTS AND COPYRIGHTS AND RIGHTS IN DATA

A.    **PATENTS.**    This Agreement is not awarded for the purposes of experimental, developmental or research projects. Should the activities of Subgrantee and/or its Contractors/Subcontractors include experimental, developmental or research projects, this Agreement shall be promptly amended to include the standard patent right clauses required by 35 U.S.C. Section 202 as amended by Public Law 98-620 and 37 CFR Part

401, "Right to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any other provisions required by applicable State and/or Federal laws, rules, or regulations.

**B.**    **COPYRIGHTS AND RIGHTS IN DATA.**    MDHS reserves a royalty-free nonexclusive, and irrevocable license to reproduce, publish or otherwise use, and to authorize others to use:

> (1) The copyright in any work developed under this Agreement or under any other agreement or contract under this subgrant Agreement; and

> (2) Any rights of copyright to which the Subgrantee or any Subgrantee's Contractor/Subcontractor purchases ownership with subgrant support or funds provided under this Agreement.

Subgrantee hereby assigns to MDHS all rights, title, and interest in any and all materials conceived or created by the Subgrantee, and/or its employees, agents, contractors, or subcontractors, either individually or jointly with others and which arise out of the performance of this Agreement, including any computer programs, systems, designs, source code, work papers, operating instructions, and all other information, documents, and work in whatever form. All work papers, cards, magnetic tapes, disk packs, or other storage media, temporary and/or permanent, containing programs and/or other information of any kind relating to this Agreement shall be available, upon request, to MDHS or its representative(s) for review, inspection, and if desired, reproduction. Such information and documents shall be delivered to MDHS on MDHS' request therefore. Subgrantee shall maintain all master programs and master data files in a completely secure manner. Such programs and files shall be identified by program and file name.

## SECTION XIX.  OWNERSHIP OF DOCUMENTS AND WORK PRODUCTS

All property purchased and all data, documents, notes, programs, books, databases (and all applications thereof), files, reports, studies, unfinished documents, and/or other material collected or prepared by Subgrantee in connection with this subgrant shall be owned by MDHS upon completion or termination of this subgrant.  MDHS hereby reserves all rights to the data base and all applications thereof and to any and all information and/or material prepared in connection with this subgrant.

Except as otherwise provided by these General Terms and Provisions, the Subgrantee is prohibited from use or distribution of the above-described information and/or material without the express written approval of MDHS.

All printed mention, materials, deliverable products, publicity, and other documents and reports distributed by the Subgrantee as a result of this subgrant, regardless of its form, must give funding source credit to the Division of Family & Children's Services, Mississippi Department of Human Services.  DFCS must be provided a copy of the aforesaid documents and reports.

## SECTION XX.  CONFLICT OF INTEREST

Subgrantee shall ensure that there exists no direct or indirect conflict of interest in the performance of this subgrant and/or performance by any of the Subgrantee's Contractors/Subcontractors. Further, Subgrantee warrants that no part of any Federal or State money shall be paid directly or indirectly to an employee or official of MDHS as wages, compensation or gifts in exchange of acting as an officer, agent, employee, subcontractor, or consultant to the Subgrantee in connection with any work contemplated or pertaining to this subgrant or Agreement. Subgrantee shall strictly comply with all conflict of interest provisions or standards of conduct provisions contained in the MDHS Subgrantee/Contract Manual or any applicable State, Federal, or Local law, rule, or regulation.

## SECTION XXI.  INDEMNIFICATION

Subgrantee agrees to indemnify , defend, save and hold harmless MDHS from and against all claims, demands, liabilities, suits, damages and costs of every kind and nature whatsoever, including court costs and attorneys' fees, arising out of or caused by the Subgrantee and/or its agents, employees, volunteers, contractors or subcontractors in the performance of this Agreement. The Subgrantee shall fully indemnify and repay MDHS any amounts provided hereunder that are found not to have been expended according to this Agreement or any amounts or costs that are disallowed by Federal grantor and/or by MDHS.

## SECTION XXII.  INSURANCE

Subgrantee represents that it will maintain workers' compensation insurance as required by law, which shall inure to the benefit of all Subgrantee's personnel performing services under this Agreement, employee fidelity bond insurance in an amount equal to twenty-five percent (25%) of funds awarded hereunder, and comprehensive general liability insurance. Subgrantee will furnish to MDHS with a certificate of insurance providing the aforesaid coverage, prior to the commencement of performance under this Agreement. All insurance policies required under this Section shall be issued by an insurance company or companies licensed to do business in the State of Mississippi and shall be acceptable to MDHS. The insurance required by this Section shall be maintained at all times during the course of this Agreement for the entire period thereof and MDHS must be given written notice by registered mail at least thirty (30) days in advance if any adverse modification or termination of any insurance.

If at any time the Subgrantee and/or its Contractors/Subcontractors lease, purchase or otherwise use an automobile, bus, van, or vehicle for the transportation of clients or program participants in carrying out the services required under this Agreement, the Subgrantee and its Contractors/Subcontractors must secure and maintain, at its/their own expense, the following insurance coverage in the amounts specified below:

- Owned vehicles - $30,000.00 combined single limit (bodily injury and property damage) together with medical coverage in the amount of $2,000.00 for owned vehicles.

- Hired vehicles - $25,000.00 combined single limit (bodily injury and property damage)

- Non-owned vehicles - $25,000.00 combined single limit (bodily injury and property damage)

## SECTION XXIII.  COMPLIANCE WITH LAWS, RULES AND REGULATIONS

Subgrantee shall comply with all applicable policies and procedures of MDHS and all applicable Federal, State, and/or Local laws, rules, regulations, directives, and guidelines that are now applicable or later made applicable to this Agreement. Particularly, but without limitation through inclusion, Subgrantee shall comply with the Mississippi Department of Human Services' Subgrantee/Contract Manual **Revised March 2005, including all addenda**.

A. **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES SUBGRANTEE/CONTRACT MANUAL.** The Subgrantee agrees to comply with, and require their subcontractors to comply with, all Mississippi Department of Human Services' policies and guidelines as set forth in the MDHS Subgrantee/Contract Manual.

B. **SUBGRANT/CONTRACT SIGNATURE SHEET.** The Subgrantee agrees to comply with all the terms and conditions includded in the Subgrant/Contract Signature Sheet attached hereto and incorporated herein.

## SECTION XXIV.  GOVERNING LAWS AND LEGAL REMEDIES

This Agreement shall be construed and governed in accordance with the laws of the State of Mississippi. Subgrantee expressly agrees that under no circumstances shall MDHS be obligated to pay an attorney's fee or cost of legal action to Subgrantee.

## SECTION XXV.  AMENDMENT OR MODIFICATION

Modifications, changes or amendments to this Agreement may be made upon mutual agreement of the parties hereto. Except as otherwise specifically provided by MDHS' policy, any change, supplement, modification or amendment of any term, provision or condition of this Agreement must be in writing and signed by both parties hereto.  Any modifications to this subgrant must be requested in writing no earlier than thirty (30) days after the beginning date of the subgrant and no less than thirty (30) days prior to the expiration date of the subgrant.

## SECTION XXVI.  NOTICE

Any notice required or permitted to be given under this Agreement shall be in writing, personally delivered or sent by certified mail, to the party to whom the notice should be given at the address set forth on the Mississippi Department of Human Services' (MDHS) Subgrant/Contract Signature Sheet or at such address as the party may provide in writing from time to time.

## SECTION XXVII.  CERTIFICATION OF COMPLIANCE AND ASSURANCES

This Agreement is also subject to the Standard Assurances, Certifications Regarding Lobbying, Debarment, Suspension and other Responsibility Matters; and Drug-Free Workplace Requirements; MDHS' Certification Regarding Unresolved Monitoring Findings, Unresolved

Audit Findings; and Litigation Occurring Within the Last Three (3) Years; and the Certification of Adequate Fidelity Bonding, attached hereto.

## SECTION XXVIII.  PROPERTY, EQUIPMENT AND SUPPLIES

Property, equipment and supplies purchased, in whole or in part, with funds provided by MDHS shall be accounted for and disposed of in accordance with MDHS' directives, policies and procedures.  Subgrantee must adequately safeguard all such property and must assure that it is used solely for purposes authorized by this Agreement.  Nothing herein, however, shall be construed to authorize the Subgrantee to purchase equipment with funds provided under this subgrant unless such is specifically allowed by Section III of this Agreement.

## SECTION XXIX.  LIMITATION ON EXPENDITURE OF PROGRAM FUNDS

Expenses charged against funds granted herein shall not be incurred by the Subgrantee except during the period of this Agreement as set forth above and may only be incurred and paid only as necessary to the performance of the work and activities set forth in Exhibit A.    All expenses obligated for the approved program must be supported by approved signed contracts, bills, or other evidence of liability consistent with MDHS established procurement procedures.

Further, funds received under this Agreement and any contract or subcontract hereunder shall be used only to supplement, not supplant or duplicate, the amount of federal, state, and/or local funds otherwise expended for services provided by the Subgrantee or in the Subgrantee's service area.

## SECTION XXX.  CAPTIONS

The captions and headings in this Agreement are for convenience only, and in no way define, limit or describe the scope or intent of any provision or article of this Agreement.

## SECTION XXXI.  E-VERIFY CLAUSE

Subgrantee represents and warrants that it will ensure its compliance with the Mississippi Employment Protection Act (Senate Bill 2988 from the 2008 Regular Legislative Session) and will register and participate in the status verification system for all newly hired employees. The term "employee" as used herein means any person that is hired to perform work within the State of Mississippi. As used herein "status verification system" means the Illegal Immigration Reform and Immigration Responsibility Act of 1996 that is operated by the United States Department of Homeland Security, also known as the E-Verify Program, or any other successor electronic verification system replacing the E-Verify Program. Subgrantee agrees to maintain records of such compliance and, upon request of the State, to provide a copy of each such verification to the State. Subgrantee further represents and warrants that any person assigned to perform services hereunder meets the employment eligibility requirements of all immigration laws of the State of Mississippi. Subgrantee understands and agrees that any breach of these warranties may subject Subgrantee to the following: (a) termination of this Agreement and ineligibility for any State or public contract in Mississippi for up to three (3) years, with notice of such cancellation/ termination being made public, or (b) the loss of any license permit, certification or other document granted to Subgrantee by an agency, department or governmental entity for the right to do business in Mississippi for up to one (1) year, or (c) both. In the event of such termination/cancellation, Subgrantee would also be liable for any additional costs incurred by the

13

State due to contract cancellation or loss of "license or permit".

## SECTION XXXII. ENTIRE AGREEMENT

IN WITNESS WHEREOF, this Agreement has been made and interchangeably executed by the parties hereto in duplicate originals. This Contract constitutes the entire agreement of the parties with respect to the subject matter contained herein and superseded and replaces any and all prior negotiations, understandings, and agreements, written or oral, between the parties relating thereto.

| MISSISSIPPI DEPARTMENT OF HUMAN SERVICES | CATHOLIC CHARITIES, INC. |
|---|---|
| By: _Marilt St_ | By: _____ |
| Title: _Deputy Executive Director_ | Title: _Executive Director_ |
| Date: _9/18/12_ | Date: _9/28/12_ |
| Witness: _Leigh Washing_ | Witness: _Meli DDC McGrego_ |

14



# CATHOLIC CHARITIES, INC.

200 North Congress Street, Suite 100
Jackson, Mississippi 39201
*601-355-8634  Fax 601-960-8493*
*www.catholiccharitiesjackson.org*

## CONTRACT AMENDMENT

Catholic Charities of Jackson is a charitable function and an extension of the Catholic Diocese of Jackson:  a religious institution.  As such, it is exempt from the application of many statutes, regulations and orders referred to in these documents which exemption it does not, by execution of this agreement, waive.   Both the Diocese and Catholic Charities of Jackson have longstanding voluntary religious policies that adopt and refer to the basic posture of the Catholic Church forbidding discrimination of any type to which policies the Diocese and the Catholic Charities will conform in complying the terms of this proposal.

_____          9/28/12
Greg Patin, Executive Director         Date
Catholic Charities, Inc.

*PROVIDING HELP. CREATING HOPE.*

 

*CATHOLIC DIOCESE OF JACKSON*

**Northeast Office**
Post Office Box 328
Vardaman, MS 38878
662-682-9992
*Fax 662-682-9992\*51*

**Natchez Office**
109 S. Union Street
Natchez, MS 39120
*601-442-4579*
*Fax 601-442-4588*

# EXHIBIT A
# Scope of Services

**SCOPE OF SERVICES**

**Solomon Counseling Center Community Based Child Abuse Prevention (CBCAP)**

**October 1, 2012 – September 30, 2013**

**A. Services to Be Provided:**

➢ Evidence-Based Marriage Therapy offered to parents with children under eighteen (18): Parents will be recruited for services, and will complete an intake call to 601-326-3719. Parents will attend counseling at 200 N. Congress St., Jackson, MS. Clients will sign in on individual sign-in sheets indicating date/time/ and length of service (to protect confidentiality from other consumers). Electronic and paper charts are maintained with demographic information and client consent for services. Commitment forms will be maintained in charts and available separately for reviewers. Improvement will be tracked by retention of couples (number of sessions completed), and increase in average marital satisfaction score. All clients are voluntary, so number of sessions is dictated by client level of involvement in therapy and the degree of marital problems. Additionally, couples sometimes initiate marriage therapy having already decided to divorce. Sixteen (16) sessions are preferable, with considerable success measurable by ten (10) sessions.

➢ Evidence-based trauma therapy for 1) uninsured/ underinsured adult victims of abuse, 2) Adult Survivors of Child Sexual Abuse, Physical Abuse, or Trauma 3) Domestic Violence Survivors, 4) Underserved African American/English as Second Language (ESL)/ or undocumented populations and former Unaccompanied Refugee Minors (URM) from above groups. Clients will be recruited for services (see section B. below), and complete an intake call to 601-326-3719. Clients will attend counseling at the main office, 200 N. Congress St., Jackson, MS. Clients will sign in on individual sign-in sheets indicating date/time/ and length of service (to protect confidentiality from other consumers). Electronic and paper charts are maintained with demographic information and client consent for services. Improvement will be tracked by increase in Global Assessment of Function score. Number of sessions varies by client commitment to the therapy process and degree of issues presented. Three to Seven sessions (plus two assessment sessions) are preferable for Eye Movement Desensitization Reprocessing, and 16-22 sessions (plus two assessment sessions) are preferable for Prolonged Exposure Therapy. Clients that have traumatic grief (death of a spouse or child, for example), would anticipate more sessions.

**From the above two categories of therapy, 750 hour-long counseling sessions will be delivered to 65 or more persons/couples. An estimated 225 sessions for 20 couples and an estimated 525 sessions offered to 45 Adult Survivors of Abuse, Trauma, or Domestic Violence.**

➢ Client Transportation by cab rides or gas cards when appropriate Solomon Counseling Center will use a taxi service to provide transportation to and from residential programs

within Catholic Charities when needed. Additionally, money is being allotted for gas cards for persons who could not otherwise attend therapy. A typical protocol would be to provide a $10 gas card after every second session. In this way, a combination of cab trips and gas cards up to $3,000 will be offered. An example would be forty (40) round-trip cab fares ($20 one way) and 140 ($10) gas cards provided.

➢ Interpretation for therapy provided by immigration clinic personnel at an hourly rate:

There is $5,000 allotted for contractual services, to include interpretation. $3,750 of this will be for interpretation services paid to the Immigration Clinic. A typical use of these funds will be for situations where the parent speaks only Spanish. In this way, adults who come to the Immigration Clinic because of their own abuse history will be eligible for both counseling and interpretation services. Immigration Clinic personnel will offer interpretation services in 125 sessions to above identified ESL clients.

➢ Psychiatric evaluations: Many adult survivors of abuse and trauma only seek therapy when they have decreased levels of functioning, to include clinical depression. Psychiatric Evaluation will be available for ten (10) consumers at $125 per evaluation, for a total of $1,250 from contractual services.

**B. Awareness efforts and advertisement of child abuse prevention efforts**: Awareness efforts and advertisement of child abuse prevention efforts, to include, 1) meeting with programs within Catholic Charities to coordinate services, 2) advertising services in email list-serves connected with the agency, 3) connecting with other area child abuse prevention, victim services, and non-profits to promote services, 4) participating in DHS Picnic for Prevention, and 5) participating in Children's Mental Health Awareness Day. The Project Director will meet with at least (5) Catholic Charities, Inc. programs to coordinate services, to include interpretation and transportation. She will additionally interface with the other (2) Domestic Violence programs in the area, to make them aware of available services. Project services will be sent out via web-blast to all lists utilized within the agency, to include an email distribution to Spanish speakers. Connections with pertinent child abuse prevention, victim services, and non-profits will be made by the Project Director or Clinical Director.

**C. Evidence-based services offered:**

- ❖ **Gottman Marriage**
- ❖ **Prolonged Exposure**
- ❖ **Eye Movement Rapid**

**D. Start-Up Capacity**
Solomon Counseling Center is fully operational and seeing clients October 1, 2012.

**E. Operating Location/Hours**
Solomon Counseling Center is conveniently located in downtown Jackson at 200 N. Congress Street, Suite 100, Jackson, MS 39201. Hours are from 8:30-5:30 Monday through Friday, with

each therapist flexing hours for later appointments one night a week (up to 7:00 PM) and sometimes earlier in the morning (8:00 A.M.) to accommodate family schedules.

## F. Timeline

| Activity | Recipients | Months | Responsible Party |
|---|---|---|---|
| Gottman Marriage Therapy | Open to the parents of children under 18 | October 2012-September 2013 | Clinical Director, And 2 clinicians |
| Prolonged Exposure Therapy or Eye Movement Desensitization Reprocessing (as appropriate | Uninsured/underinsured Adult Survivors of Abuse/Trauma and Domestic Violence Survivors, including Underserved African American ESL, and undocumented survivors | October 2012-September 2013 | Clinical Director, And 2 Clinicians, 1+ intern |
| Client Transportation | Any consumers from above categories in need of transportation assistance | October 2012-September 2013 | Administrative Assistant, in conjunction with the Clinical Director, therapists, interns |
| Interpretation (Spanish) for therapy | Any consumers from above categories in need of interpretation services | October 2012-September 2013 | Immigration clinic staff in coordination with the Clinical Director, therapists, and interns |
| Psychiatric Evaluation | Adult Survivors of Abuse, Trauma, and/or Domestic Violence with mental health needs associated with the trauma | October 2012-September 2013 | Clinical Director and clinicians |
| Participation in DHS Picnic for Prevention | State of MS residents in attendance of event. | April 2013 | Solomon staff/interns |
| Participation in Children's Mental Health Awareness | State of MS residents in attendance of event | May 2013 | Solomon staff/interns |

## G. Targeted Population

The Target Population for the Community Based Child Abuse Prevention (CBCAP) program is the general population of parents in Hinds, Rankin, Madison, and Warren counties, and at-risk populations (above) within the same area. Services are inclusive of anyone state-wide, but practical considerations of travel dictate the focus of attention on the afore-mentioned counties. Specifically, services will be offered to the following segment of the general population:
1) Parents of children under 18 Experiencing Marital Stress
2) Uninsured/underinsured parents
3) Adult Survivors of Abuse or Trauma

*Exhibit A, Scope of Services*                    3

4) Domestic Violence Survivors
5) Underserved African American, ESL, Undocumented adults, and former Unaccompanied Refugee Minors listed above.

**H. Target Number of Clients**

With the evidence-based therapies listed, most clients can be treated within four to six months. Considering therapist case loads and that only a portion of clinician time is on the grant, a projection of sixty-five (65) consumers will receive therapy. Solomon Counseling Center is already providing services to consumers who have a pay source, so target numbers are based on actual experience of a center already in operation. Training expenses do not have to be accounted for since all clinicians have received ample training in the model. There is no delay in services, and therefore will not be any unexpected interruptions of service. Average number of session is noted in the goals/objectives, but varies widely by consumer due to therapy drop out rate in the counseling field. What can be measured and monitored is the number of dedicated counseling hours provided by therapists to clients in the target group in the afore-mentioned models. A third of clinician time equates to **15 hour sessions weekly x 50 weeks = 750 hourly sessions of therapy to be provided during the grant period, or roughly 53 client hours per month.**

**I. Plans for Community Volunteers**

Solomon Counseling Center has initiated a relatively new intern program for burgeoning clinicians. Although evidence-based practices are encouraged for therapists, they still have not made their way into university curriculums of most social work, psychology, and counseling programs. Incorporating a standardized intern program during this grant period will serve to spread the use of evidence-based child abuse prevention practices within the profession, which in turn will increase the number of clients that can be seen under the auspices of the grant. Solomon Counseling Center plans to increase the use of interns, formalizing the process to make it easy to recruit and train new interns each semester. Intern hours will be documented by time sheets.

**J. Public Awareness Plans**

Solomon Counseling Center Project Director and Clinical Director will be responsible for the public awareness of the program. Public awareness efforts will focus on building the case to the community that evidence-based therapy can decrease child abuse. The Project Director, through personal contact, will increase continuity of care among the Catholic Charities programs to increase prevention of child abuse. Contact will be made with other victim programs to notify of services. Group emails can be sent via program list-serves and web-blasts to interested parties from Catholic Charities community supporters, including a Spanish list-serve sent out from the Immigration Clinic. Publicity will continue with Solomon's typical partners listed in the collaboration section above. The Clinical Director and Project Director will contact clergy to notify them of services. Additional awareness efforts include Solomon's involvement in DHS's Picnic for Prevention in April, and Children's Mental Health Awareness Day in May.

## WORKSHEET 1 – SERVICE PLAN – IMPLEMENTATION

Exhibit A. Scope of Services

5

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| Gottman Marriage Therapy | Open to any parents with children under the age of 18. Couples will be self-referred, referred by clergy, and referred by partner programs. —a minimum of 20 couples will be served, receiving a minimum of 225 hour long counseling sessions in total with a minimum of 4 hourly sessions per couple. | Solomon CBCAP will advertise within Catholic Charities and with coordinating partners. The program will offer free weekly, hour long marriage therapy by licensed clinicians. | LCSW Clinical Director, 2 LCSW Clinicians | Children are 100% more likely to be physically abused and 15% more likely to be sexually abused by a step-parent than a parent. Gottman therapy decreases divorce rate. |
| Prolonged Exposure Therapy (PET) or Eye Movement Desensitization Reprocessing (EMDR) (as appropriate | Uninsured/underinsured Adult Survivors of Abuse, Trauma, and Domestic Violence, including Underserved African American, ESL, and undocumented survivors – a minimum of 45 adults, receiving a minimum of 525 hour long counseling sessions in total with a minimum of 4 hourly sessions per person. | Solomon will offer therapy to parents of children currently served and will advertise within Catholic Charities and with coordinating partners. Weekly hour-long sessions offered by Master's level clinicians. | LCSW Clinical Director, 2 LCSW Clinicians, 1+ Master's level intern | Adults who receive PET and/or EMDR therapy gain mastery over their trauma, resulting in healthier relationships and less risk that children will be abused. |
| Client Transportation | Any consumers from above categories in need of transportation assistance—estimate of 40 round trip cab rides and 140 ($10) gas cards. Number of trips/clients will vary depending on whether the client needs gas cards or cab rides. | Cab fare (average $40 round trip cab ride) and gas cards ($10/two sessions) will be provided to clients for whom transportation is an issue. | Administrative Assistant, in conjunction with the LCSW Clinical Director, LCSW Clinicians, Master's level interns | Clients are kept from services due to poverty. Transportation funds increase likelihood of compliance, decreasing risk of child abuse. |
| Interpretation (Spanish) for therapy | Any consumers from the above categories in need of interpretation services will be served- a minimum of 20 clients per grant period. | Solomon will work with the Immigration clinic for referral base and to provide interpretation for therapy. | Immigrations clinic staff in coordination with LCSW Clinical Director, LCSW Clinicians, and Master's level interns | There are no Spanish speaking therapists in the area providing evidence-based practices, ESL and undocumented persons are at greater risk because of isolation. |

## WORKSHEET 1 – SERVICE PLAN – IMPLEMENTATION

*Exhibit A. Scope of Services*

6

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| Awareness efforts and advertisement of child abuse prevention efforts | General public, victim's groups, nonprofits. A minimum of two contacts per month. Grantee will participate in April Child Abuse Prevention month activities sponsored by MDHS. | Project Director will forge new relationships and referral bases. | LPC Project Director, LCSW Clinical Director | Many services offered will be new. Rationale for therapy will be advertised, and services offered. |

Exhibit A. Scope of Services

**PROGRAM EVALUATION FOR PROGRAMS NOT LISTED IN THE EB/EI MATRIX**
Worksheet 1A

| Name of Program | Curriculum Provided | Level of Evaluation | Source | Number of Sessions Provided to Clients | Training Required |
|---|---|---|---|---|---|
| Gottman Marriage Counseling | Yes | Well-Supported | http://www.gottman.com/49851/Published-Research-Abstracts--Articles.html | Clients learn Seven basic components ideally in 16 sessions. Most couples attend 5-10 sessions. Number of sessions varies with degree of issues. | Solomon staff have reviewed all training CD's. Clinical Director has Level 1 and 2 training. |
| Prolonged Exposure Therapy for PTSD | Yes | Well-Supported | http://www.nrepp.samhsa.gov | Clients receive (2) hour-long sessions for assessment, plus 12 basic modules covered in 16-22 sessions. An additional 3 sessions are needed for traumatic grief. | All Solomon Staff have completed the web-based training and have the manual. |
| Eye Movement Rapid Desensitization | Yes | Well-Supported | http://www.nrepp.samhsa.gov | Clients receive an average of (2) hour-long sessions for assessment and 3-7 weekly hour long sessions | Project Director and Clinical Director have received Level I and II training. |

*Exhibit A, Scope of Services*

8

## Goals, Outcomes and Evaluation Plan-Worksheet 2

**Primary Goal:** To prevent child abuse and neglect and improve well-being among children and families at-risk, through the provision of supportive family services.

| Measureable Outcome(s) | Strategies | Timeline | Evaluation Measures | Staff Responsible |
|---|---|---|---|---|
| 1. Of the parents who complete ten sessions of marriage counseling, 80% will have increased marital satisfaction by end of therapy | Offer marital satisfaction assessment and weekly hour-long Gottman marriage counseling sessions to parents with children under 18. | 10/12 9/13 | Pre and post Gottman marriage satisfaction surveys | Project Director, Clinical Director, and clinicians. |
| 2. Of couples initiating marriage counseling, 80% will sign commitment to complete at least 10 sessions. | Parents will be notified of commitment policy prior to first session, and will sign commitment form session 1 or 2. | 10/12- 9/13 | Signed commitment sheets will be available to reviewers | Project Director, Clinical Director, and clinicians. |
| 3. Of the Adult Survivors of Abuse, Trauma, and Domestic Violence attending at least three sessions of therapy, GAF scores will increase in 80% | Offer weekly hour-long PET and/or EMDR to Adult Survivors of Abuse and Domestic Violence who have no pay source. | 10/12- 9/13 | Global Assessment of Function | Project Director, Clinical Director, clinicians, and interns |

**Secondary Goal:** Prevent child abuse and neglect by supporting community-based efforts to develop, operate, expand, and enhance initiatives aimed at the prevention of child abuse and neglect  (focus on the intermediate outcome of increased coordination of prevention services in the community through a strengthening of referral processes between community based agencies and public agencies).

| Measureable Outcome(s) | Strategies | Timeline | Evaluation Measures | Staff Responsible |
|---|---|---|---|---|
| 1. Participate in DHS Picnic for Prevention | Solomon staff will participate in planning, set up, and promotion efforts for this event. | 4/213 | Planning meetings and promotion efforts will be reported on monthly reports. Number of participants reached will be tracked by newspaper report. | Solomon Counseling staff and interns |
| 2. Plan and participate in Children's Mental Health Awareness activities | Solomon staff will be involved in participate in planning, set up, and promotion efforts for this event. | 3-5/2013 | Planning meetings and promotion efforts will be reported on monthly reports. Number of participants reached will be tracked by newspaper report. | Solomon Counseling staff and interns. |
| 3. Develop referral base with DHS. | Schedule (4) meetings with DHS county offices. Track DHS referrals. | 10/12-3/13 | Meetings will be reported on standard reports. Referral rate will be tracked by Project Director. | Project Director |

|  |  |  |  |  |
|---|---|---|---|---|
| **Additional Goal:** Promote public awareness of the connection between therapy of at-risk populations and child abuse prevention to gate keepers and the general public. | | | | |
| **Measureable Outcome(s)** | **Strategies** | **Timeline** | **Evaluation Measures** | **Staff Responsible** |
| 1. Coordinate with local agencies so that of 65 clients served during the funding period, 40% will be African American, ESL, or undocumented | Meet with (5)Program Directors to increase referral base from other Catholic Charities programs, including the DV shelter and the Immigration clinic.Make transportation funds available.Develop interpretation procedure. | 10/12-1/13 | Collect from MEDEZ demographics and report on Quarterly reports | Project Director |
| 2. Release (6) public awareness efforts using CCI connections | Promote services through program list serves, social media, and printed materials | 10/12-9/13 | Report public awareness efforts and audience reached on standard reports. Can provide copies of web-blasts, list-serves, etc. | Project Director |
| 3. Increase awareness of services by clergy by making contact representatives. | Project Director will make personal contact with clergy to increase awareness and use of services | 10/12-1/13 | Report contacts on standard reported | Project Director, Clinical Director |

# EXHIBIT B
# Modified Mississippi Settlement Agreement and Reform Plan

# EXHIBIT C
# Budget

**Catholic Charities, Inc.**

**Solomon Counseling Center Community Based Child Abuse Prevention Program**

**October 1, 2012 – September 30, 2013**

| Budget Narrative – Federal Funds |
|---|

A.  **SALARIES**

**Project Director (**███████**):** This position will provide administrative and clinical oversight of the project, as well as public awareness of child abuse prevention methods.

$50,216.57/annual salary x 15% allocation = **$7,532.49**

**Clinical Director/Clinician (**████████**):** This position will ensure fidelity of clinicians to evidence-based models and provide evidence-based marriage and abuse therapy.

$51,742.41/annual salary x 30% allocation = **$15,522.72**

**Clinicians (**██████**,** ██████**):** This position will offer evidence-based child abuse prevention therapy interventions.

Diane - $41,416.65/annual salary x 30% allocation = **$12,425.00**

Ashley - $41,416.65/annual salary x 30% allocation = **$12,425.00**

**Administrative Assistant (**████████**):** This position will provide clerical support to the Project Director and Clinical Director and interface with clients.

$30,852.81/annual salary x 30% allocation = **$9,255.84**

**Total Salaries = $57,161.04**

B.  **FRINGE BENEFITS**: Based on a percentage of total salaries.

*Exhibit C, Budget*                                    1

| Positions (All) | Computation | Cost |
|---|---|---|
| FICA | $57,161.04 x 7.65% | **$4,372.82** |
| Unemployment | $57,161.04 x 1.3226% | **$756.01** |
| Workmen's Compensation | $57,161.04 x .9218% | **$526.91** |
| Health Insurance | $57,161.04 x 14.5956% | **$8,343.00** |
| Long Term Disability | $57,161.04 x .60% | **$342.97** |
| Retirement | $57,161.04 x 13.0373% | **$7,452.26** |

Total Fringe Benefits = $21,793.97

C. **TRAVEL** - **$3,000.00**

Travel will be used for local mileage at the current approved Federal (GSA) and State reimbursement rate of .555 cents per mile. Travel within the area will be required for the Project Director and/or Clinical Director to attend key partner meetings and trainings, and to coordinate child abuse prevention awareness activities. The program will be providing services in Hinds, Madison, Rankin, and Warren Counties.

2 staff x $125.00 month = **$3,000.00**

D. **CONTRACTUAL** - **$5,000.00**

**Professional Fees** will be utilized for Spanish interpreters, psychological evaluations, psychiatric consultation and medication monitoring, as necessary on a per client basis. The program is projected to serve 65 clients.

$416.6667/month = **$5,000.00**

E. **SUBSIDIES, LOANS and GRANTS** - $3,954.09

Funds will be utilized to provide client transportation assistance in the way of cab fare, bus fare, gas vouchers/cards, to enable clients to be able to access services. The program is projected to serve 65 clients.

$329.5075/month = **$3,954.09**

F.   **INDIRECT CHARGES - $9,090.90**

Provided at 10% of grant total based on federal indirect cost approval rate and Department of Human Services allowance.   Catholic Charities, Inc. has an HHS approved indirect cost rate of 11%.

$90,909.09 x 10% = **$9,090.90**

**BUDGET TOTAL (DHS Funding): $100,000.00**

| Budget Narrative – Match Funds |
| :---: |

A.   **SALARIES**

**Project Director (**████████**):**  This position will provide administrative and clinical oversight of the project, as well as public awareness of child abuse prevention methods.

$50,216.57/annual salary x 5% allocation = **$2,510.83**

**Clinical Director/Clinician (**████████**):**  This position will ensure fidelity of clinicians to evidence-based models and provide evidence-based marriage and abuse therapy.

$51,742.41/annual salary x 5% allocation = **$2,587.12**

**Clinicians (**████████**,** ████████**):**  This position will offer evidence-based child abuse prevention therapy interventions.

Diane - $41,416.65/annual salary x 5% allocation = **$2,070.83**

Ashley - $41,416.65/annual salary x 5% allocation = **$2,070.83**

**Administrative Assistant (**████████**):**  This position will provide clerical support to the Project Director and Clinical Director and interface with clients.

*Exhibit C, Budget*                                    3

$30,852.81/annual salary x 5% allocation x = **$1,542.64**

**Total Salaries = $10,782.25**

B.  **FRINGE BENEFITS**:  Based on a percentage of total salaries.

| Positions (All) | Computation | Cost |
|---|---|---|
| **FICA** | $10,782.25 x 7.65% | **$824.84** |
| **Unemployment** | $10,782.25 x 1.3226% | **$142.61** |
| **Workmen's Compensation** | $10,782.25 x .9218% | **$99.39** |
| **Health Insurance** | $10,782.25 x 14.5956% | **$1,573.73** |
| **Long Term Disability** | $10,782.25 x .60% | **$64.69** |
| **Retirement** | $10,782.25 x 12.3489% | **$1,331.49** |

**Total Fringe Benefits = $4,036.75**

C.  **TRAVEL - $0.00**

D.  **CONTRACTUAL -$10,181.00**

**Rent:**  Office rental space for clinicians to provide services to clients at the program's location at 200 North Congress Street, Jackson, MS, will be utilized as match.

$848.4167/month x 12 months = **$10,181.00**

**MATCH BUDGET TOTAL:  $25,000.00**

# Standard Assurances

## STANDARD ASSURANCES AND CERTIFICATIONS

### OVERVIEW

Each Subgrantee and any lower-tier subrecipient must assure that it will comply with the regulations, policies, guidelines, and requirements imposed by the Federal grantor agency and MDHS. The MDHS Subgrantee must also ensure that any lower-tier subgrants it issues through funds received from MDHS will require the lower-tier subrecipient to comply with these same regulations. The assurances listed in this section may not be applicable to a particular project or program, and there may be additional assurances required by certain Federal awarding agencies.

In addition, each subgrantee must certify in writing that it will comply with the following regulations:

- Lobbying
- Suspension and Debarment
- Drug-Free Workplace
- Unresolved Monitoring and Audit Findings
- Fidelity Bond Coverage

### STANDARD ASSURANCES

The Subgrantee assures that it:

1.  has the legal authority to apply for and receive the subgrant; that a resolution, motion, or similar action has been duly adopted or passed as an official act of the subgrantee's governing body, authorizing the subgrant, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the Subgrantee to act in connection with the subgrant and to provide such additional information as may be required.

2.  will give MDHS, the State Auditor's Office, the Federal grantor agency, and the Comptroller General, or any of their authorized representatives, access to and the right to examine all records, books, papers, documents, or items related to the subgrant.

3.  will establish and maintain both fiscal and program controls and accounting procedures in accordance with generally accepted accounting principles and Federal grantor agency and MDHS directives; and will keep and maintain such books and records for audit by MDHS, by the Federal grantor agency, by the State Auditor, or by their authorized representatives; and will maintain all such records, books, papers, documents, or items for a period of at least three (3) years from the date of submission of the final reporting worksheet, or, if any litigation, claim,

## STANDARD ASSURANCES AND CERTIFICATIONS

audit, or action has begun before the expiration of the three-year period, will retain all such items until the completion of the action and resolution of all issues involved or until the end of the regular three-year period, whichever is later.

4.      will comply with the Single Audit Act Amendments of 1996.

5.      will establish safeguards to prohibit employees from using their positions for a purpose that constitutes, or presents the appearance of, personal or organizational conflict of interest, or personal gain.

6.      will comply with all Federal and State statutes relating to discrimination, including, but not limited to:

Title VI of the Civil Rights Act of 1964, prohibiting discrimination on the basis of race, color, or national origin;

Title VII of the Civil Rights Act of 1964, relating to non-discrimination in matters of recruitment, hiring, promotion, and other employment practices;

Title VIII of the Civil Rights Act of 1968, as amended, relating to non-discrimination in the sale, rental, or financing of housing;

Title IX of the Education Amendments of 1972, as amended, prohibiting discrimination on the basis of sex in federally assisted education programs and activities;

the Age Discrimination Act of 1975, prohibiting discrimination on the basis of age;

Section 504 of the Rehabilitation Act of 1973, prohibiting discrimination on the basis of handicaps;

Subtitle A, Title II of the Americans with Disabilities Act (ADA) (1990);

the Omnibus Reconciliation Act of 1981, prohibiting discrimination on the basis of race, color, religion, sex, national origin, age, and handicap;

the Drug Abuse Office and Treatment Act of 1972, as amended, relating to non-discrimination on the basis of drug abuse;

the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970, as amended, relating to non-discrimination on the basis of alcohol abuse or alcoholism; and,

Sections 523 and 527 of the Public Health Service Act of 1912, as amended, relating to confidentiality of alcohol and drug abuse patient records; and any other non-discrimination

## STANDARD ASSURANCES AND CERTIFICATIONS

provisions in the specific statute(s) under which these monies will be granted or awarded and the requirements of any other non-discrimination statute(s) which may apply to this subgrant or award.

7. will ensure that buildings and facilities owned, occupied, or financed by the United States government are accessible to and usable by physically handicapped persons in accordance with the Architectural Barriers Act of 1968.

8. will comply with the requirements of the provisions of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, which provide for fair and equitable treatment of persons displaced or whose property is acquired as a result of Federal and federally assisted programs. These provisions apply to all interests in real property acquired for project purposes regardless of Federal participation in purchases.

9. will comply with the provisions of the Hatch Act, as amended, which limit the political activities of employees whose principal employment activities are funded in whole or in part with Federal funds.

10. will comply, as applicable, with the provisions of the Davis-Bacon Act, the Copeland Act, and the Contract Work Hours and Safety Standards Act, regarding labor standards for federally assisted construction subagreements.

11. will conform with Executive Order (EO) 11246, entitled "Equal Employment Opportunity," as amended by EO 11375, and as supplemented in Department of Labor regulations (41 CFR Part 60) and will incorporate an equal opportunity clause in federally assisted construction contracts and subcontracts.

12. will comply with the minimum wage and maximum hours provisions of the Federal Fair Labor Standards Act.

13. will comply with the Intergovernmental Personnel Act of 1970 relating to prescribed standards for merit systems for programs funded under one of the 19 statutes or regulations specified in Appendix A of OPM's Standards for a Merit System of Personnel Administration.

14. will comply, if applicable, with Section 102(a) of the Flood Disaster Protection Act of 1973, which requires recipients in a special flood hazard area to participate in the program and to purchase flood insurance if the total cost of insurable construction and acquisition is $10,000 or more.

15. will comply with the Lead-Based Paint Poisoning Prevention Act, which prohibits the use of lead-based paint in construction or rehabilitation of residence structures.

16. will assist the Federal grantor agency in assuring compliance with Section 106 of the National Historic Preservation Act of 1966, as amended; EO 11593; and the Archaeological and Historic Preservation Act of 1974.

## STANDARD ASSURANCES AND CERTIFICATIONS

17.    will comply with environmental standards which may be prescribed pursuant to the following: (a) institution of environmental quality control measures under the National Environmental Policy Act of 1969 and EO 11514; (b) notification of violating facilities pursuant to EO 11738; (c) protection of wetlands pursuant to EO 11990; (d) evaluation of flood hazards in flood plains in accordance with EO 11988; (e) assurance of project consistency with the approved State management program developed under the Coastal Zone Management Act of 1972; (f) conformity of Federal actions to State (Clean Air) Implementation Plans under Section 176 of the Clean Air Act of 1955, as amended; (g) protection of underground sources of drinking water under the Safe Drinking Water Act of 1974, as amended; (h) protection of endangered species under the Endangered Species Act of 1973, as amended; (I) Section 6002 of the Resource Conservation and Recovery Act; and (j) the Coastal Barriers Resources Act.

18.    will comply with the Wild and Scenic Rivers Act of 1968 related to protecting components or potential components of the national wild and scenic rivers system.

19.    will comply with Public Law (PL) 93-348 regarding the protection of human subjects involved in research, development and related activities supported by this subgrant.

20.    will comply with the Laboratory Animal Act of 1966 pertaining to the care, handling, and treatment of warm blooded animals held for research, teaching, or other activities supported by this subgrant.

21.    will comply with Federal regulations regarding criteria for cost sharing or matching contributions.

22.    will assure all funds received shall be used only to supplement services and activities that promote the purposes for which the grant is awarded, and not supplant, unless specifically authorized by the program regulations and the appropriate MDHS Division.

23.    will provide certification regarding lobbying to comply with Section 319, PL 101-121 (31 USC 1352).

24.    will provide the required certification regarding their exclusion status and that of their principals prior to the award in accordance with EOs 12549 and 12689 Debarment and Suspension.

25.    will provide certification to comply with the Drug-Free Workplace Act of 1988.

26.    will comply with all applicable requirements of all other Federal and State laws, Executive Orders, regulations, and policies governing the program(s) for which these monies are provided and with the terms and conditions of the Subgrant Agreement.

## STANDARD ASSURANCES AND CERTIFICATIONS

### REQUIRED CERTIFICATIONS

#### I. LOBBYING

As required by Section 1352, Title 31 of the U.S. Code, the Subgrantee certifies that:

A.    No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

B.    If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress, in connection with this Federal grant or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities," in accordance with its instructions;

C.    The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants, contracts under grants and cooperative agreements, and subcontracts) and that all subrecipients shall certify and disclose accordingly.

#### II. SUSPENSION AND DEBARMENT
#### AND OTHER RESPONSIBILITY MATTERS (DIRECT RECIPIENT)

As required by Executive Order 12549 and 12689, Suspension and Debarment—

A.    The Subgrantee certifies that it and its principals: (a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by a Federal department or agency;

(b) Have not within a three-year period preceding this subgrant been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this subgrant had one or more public transactions (Federal, State, or local) terminated for cause or default; and

B.    Where the Subgrantee is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this form.

## STANDARD ASSURANCES AND CERTIFICATIONS

REQUIRED CERTIFICATIONS (Continued)

### III. DRUG-FREE WORKPLACE (SUBGRANTEES WHO ARE INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988–

A.    As a condition of the subgrant, I certify that I will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity with the subgrant; and

B.    If convicted of a criminal drug offence resulting from a violation occurring during the conduct of any subgrant activity, I will report the conviction, in writing, within 10 calendar days of the conviction to MDHS.

OR

### III. DRUG-FREE WORKPLACE (SUBGRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988 –

A.    The Subgrantee certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the subgrantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about --

(1) The dangers of drug abuse in the workplace;
(2) The subgrantee's policy of maintaining a drug-free workplace;
(3) Any available drug counseling, rehabilitation, and employee assistance programs; and
(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace.

(c) Making it a requirement that each employee to be engaged in the performance of the subgrant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the subgrant, the employee will --

(1) Abide by the terms of the statement; and
(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying MDHS, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title to MDHS. Notice shall include the identification number(s) of each affected grant;

## STANDARD ASSURANCES AND CERTIFICATIONS

### III.  DRUG FREE WORKPLACE (SUBGRANTEES OTHER THAN INDIVIDUALS) - Continued

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted –

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirement of the Rehabilitation Act of 1973, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposed by a Federal, State, or local health, law enforcement, or other appropriate agency.

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of
    paragraphs (a), (b), (c), (d), (e), and (f).

B. The Subgrantee may insert in the space provided below the site(s) for the performance of work done in connection with the specific subgrant. Check if there are workplaces on file that are not identified here:

Place of Performance (Street address, city, county, state, zip code)

_____

_____

_____

### IV. UNRESOLVED MONITORING FINDINGS;
### UNRESOLVED AUDIT FINDINGS;
### AND LITIGATION OCCURRING WITHIN THE LAST THREE (3) YEARS

Identify any unresolved monitoring findings related to any programs that have been received by the Subgrantee during the last three (3) years and the status of each finding:

_____

_____

Identify any unresolved audit findings related to any programs received by the Subgrantee during the last three (3) years and the status of each finding:

_____

_____

Identify any litigation and/or administrative hearings that the Subgrantee, the Subgrantee's Senior Management, or Subgrantee's Directors have been involved in during the last three (3) years, including the outcome or disposition of the case:

_____

_____

| MD HS Subgrantee Manual | Section | 4 |
|---|---|---|
| Revised  3/01/2005 | Page | 8 |

## STANDARD ASSURANCES AND CERTIFICATIONS

### REQUIRED CERTIFICATIONS (Continued)

**V.  CERTIFICATION OF ADEQUATE FIDELITY BONDING**

Identify any and all types of bond coverage currently in force.  Include the types of bond coverage; the officers or owners and employees covered; the period covered by the bond; and the limits of coverage assigned to each officer, owner, or employee and the total limit of the bond as applicable.

The Catholic Mutual Relief Society of America

July 1, 2012 to July 1, 2013

Please see attached Declaration

For Subgrantees/Contractors that have been unable to obtain fidelity bond coverage, describe in detail the efforts made to obtain fidelity bond coverage and the reason coverage has not been obtained.

As the authorized representative of the subgrantee, I hereby certify that the subgrantee will comply with the above certifications in items I, II, and III; the information provided items III, IV and V is true and complete to the best of my knowledge, and that the coverage and amounts specified shall be maintained throughout the effective period of the subgrant.

SUBGRANTEE NAME AND ANY OTHER NAMES UNDER WHICH THE SUBGRANTEE HAS DONE BUSINESS:

Catholic Charities, Inc.

CCI

SUBGRANTEE ADDRESS AND ANY OTHER ADDRESSES THE SUBGRANTEE HAS USED:

200 N. Congress St., Ste. 100; Jackson, MS 39201

P. O. Box 2248; Jackson, MS 39225

TYPED NAME AND TITLE OF THE SUBGRANTEE'S AUTHORIZED REPRESENTATIVE

Greg Patin, Executive Director

SIGNATURE OF SUBGRANTEE'S AUTHORIZED REPRESENTATIVE AND DATE:

8/5/12

# Subgrantee Acceptance Manual

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

*Subgrantee/Contract Manual Acceptance Form*

Subgrantee Manual Coordinator

Each Subgrantee should designate a Mississippi Department of Human Services Subgrantee Manual Coordinator who is familiar with the agency's operations. The coordinator's name, address, and telephone number should be sent directly to the Director, Office of Monitoring, Mississippi Department of Human Services, by the beginning of each subgrant period. The Subgrantee should only notify the Director, Office of Monitoring, MDHS, in writing of any change in assignment.

As duly authorized representative of the  Catholic Charities, Inc.

, I certify that said organization will comply with the above provisions and that I have received as of this date, a copy of the Mississippi Department of Human Services Subgrantee Manual, *[including all Addenda to the MDHS Subgrantee/Contract Manual.]*

Signature _____        Date  8/8/12

Executive Director
Title

Catholic Charities, Inc.
Organization

# Notification
# Of
# Liability

## Mississippi Department of Human Services
## Board Member's Notification of Liability

MDHS assumes no liability for actions of the Subgrantee or its employees, agents or representatives under this Subgrant.  Subgrantee agrees to indemnify, defend, save and hold harmless MDHS from and against all claims, demands, liabilities, suits, damages and costs of every kind and nature whatsoever, including court costs and attorney's fees, arising out of or caused by Subgrantee and/or its agents, employees, contractors, or subcontractors, in the performance of this Subgrant.  The Subgrantee acting through its Board of Directors assumes liability in the event the Subgrantee misuses funds or fails to perform according to the provisions of the Subgrant.  The Subgrantee shall notify each Board member, in writing, within 15 days of receiving the executed Subgrant of this requirement, and the Subgrantee shall sign a statement of this effect prior to receiving funds under this subgrant.

I acknowledge and agree to notify all members of the Board of Directors, if applicable, in writing of the assumption by ___Catholic Charities, Inc. Board of Directors___ of liability in the event that ___Catholic Charities, Inc.___ misuses funds or fails to perform according to the provisions of the Subgrant.  Further, I will keep a copy of said notification letter as a permanent part of the Subgrant file.


Signature of Entity's Director _____

Name: ___Greg Patin___

Organization: ___Catholic Charities, Inc.___

Date: ___8/8/12___

Witness Signature: ___Melissa Nottoga___

Date: ___8/8/12___

# Fidelity Bond

RENEWAL

8575
Certificate Number

# The Catholic Mutual Relief Society of America
## DECLARATIONS

**Catholic Diocese of Jackson, Inc. Most Rev. Joseph Latino,**
**Bishop of the Diocese of Jackson, and/or His Successors in Office**

| | | | |
|---|---|---|---|
| Certificate Holder: | **Forever, Trustee for the Parishes of the Diocese of Jackson** | | |
| Address: | P. O. Box 2248 | Charges Due at Inception: | $1,515,223.00 |
| | Jackson, MS 39225 | Business of Certificate Holder | |
| | | Catholic Diocese | |
| Certificate Period From: | July 1, 2012 | To: | July 1, 2013 |
| | Noon Standard Time | | Noon Standard Time |

Coverage is provided in accordance with the following schedule of coverages. No coverage is provided for any part
of this certificate unless a limit of liability or the word "included" is shown for such coverage section or part.

| Section I-Property | Limit of Coverage/Liability | Deductible |
|---|---|---|
| A. & B. Building and Personal Property*.............................. | $ 391,475,000 | See PKS-166 |
| Supplementary Declarations - PKS-101A | | |
| Garagekeepers' Coverage....................... | See PKS 144 & PKS-145 | See PKS-166 |
| Named Storm - See PKS-192(7-08)........................ | 20,000,000 Per Occurrence/ Annual Aggregate | See PKS-113-5 |
| *Coverage is limited per building/contents to the amount shown on the attached ledger page(s). | | |

| Section II-Liability Certificate Limit of Liability | $ 500,000 except as indicated below | |
|---|---|---|
| Limit(s) shown for the following is the maximum we will pay per occurrence/aggregate under the coverage part: | | |
| D. Bodily Injury, Property Damage, Personal Injury, Advertising Injury, Corporal Punishment........................... | 500,000 | |
| E. Fire Legal Liability................................................... | 500,000 | |
| F. Medical Payments to Others....................................... | 5,000 | |
| G. Cemetery Errors & Omissions.................................... | 500,000 | |
| H. Counseling Errors & Omissions.................................. | 500,000 | |
| I. Sexual Misconduct - See PKS-113-7 for  Retroactive Date Paragraph 2 Notice Date is 7-1-95 | 500,000 Annual Aggregate | $10,000 |
| Conditional Defense Coverage for Innocent Clergymen - Form PKS-182(7-08) Coverage Effective 7-1-99 - 1-1-2012 | 150,000 Annual Aggregate | $10,000 |
| Conditional Defense Coverage for Innocent Person - Form PKS-182(B)(1-12) Coverage Effective 1-1-2012 | 150,000 Annual Aggregate | $10,000 |
| J. Employee Benefits Errors & Omissions........................ | 500,000 | |
| K. Employment Practices Liability - Retroactive Date 7-1-97.. | 100,000 Annual Aggregate | 20% Certificate Holder Participation/ $25,000 maximum for any one loss |
| Optional: | | |
| Incidental Medical Malpractice.................................... | 500,000 | |
| Liquor Liability (Limited)............................................ | 500,000 | |
| Excess Auto Liability - Form PKS-104-2(7-08)................... | 400,000 | |
| Excess Employers Liability - Form PKS-103-2(7-08)............ | 400,000 | |
| Limited Mold Coverage - Form PKS-190(7-08)........... | 250,000 | $10,000 |

| Section III-Crime Coverage Certificate Limit of Liability | $ 125,000 See PKS-113-8 | |
|---|---|---|
| Employee Dishonesty-Agreement I (Blanket)..................... | 125,000 | See PKS-166 |
| Theft-Agreement II-Money & Securities............................ | 125,000 | See PKS-166 |
| Depositors Forgery-Agreement III.................................. | 125,000 | See PKS-166 |
| (including Counterfeit Money) | | |

| 7-1-12 to 7-1-13 | | | 8575 |
|---|---|---|---|
| Certificate Period | | RENEWAL | Certificate Number |

| Section IV-Marine Forms<br>Specific Coverage | Limit of Coverage/Liability | Deductible |
|---|---|---|
| Builders Risk   Form PKS-102(1-08)............................... | $ 10,000,000 | See PKS-166 |
| Builders Risk Earthquake............................. | 1,000,000 | $50,000 |
| | | |
| Musical Instruments PKS-111(7-08) | 5,000 | See PKS-166 |
| Property Floater  PKS-120(7-08) | 26,000 | See PKS-166 |
| Demolition Cost Coverage PKS-173(7-08) | See PKS-113-16 | See PKS-166 |

| Section V-Directors & Officers | | |
|---|---|---|
| Per Coverage Form          Retroactive<br>PKS-128(1-08)         Date          5-17-79 | 500,000 | |

| Section VI-Priests/Religious | | |
|---|---|---|
| Persons Covered    - Each Priest, Religious Brother, Sister &<br>Deacon on assignment at a covered location | | |
| Personal Property Coverage   PKS-106(7-08)..................... | 25,000 | $100 All Peril |
| Persons Covered    - Each Priest on assignment at a<br>covered location | | |
| Personal Liability    PKS-107(7-08).............................. | 300,000 | |
| Personal Medical Payments - Per Person............................ | 500 | |

| Section VII-Excess Liability<br>Per Coverage Form(s) | | |
|---|---|---|
| See PKS-117(7-08) | | |
| A. (1) Each Occurrence, except Directors & Officers Liability.. | 10,000,000 | |
| (2) Each Occurrence - Directors & Officers Liability......... | 10,000,000 | |
| B. Annual Aggregate (Per Location)............................ | 20,000,000 | |
| C. Retained Limit........................................ | N/A | |

| Section VIII-Equipment Breakdown | | |
|---|---|---|
| Per Coverage Form  B&M2(1-11) | 100,000,000 Maximum | $500 |

| Section IX-E Commerce Protection | | |
|---|---|---|
| Per Coverage Form PKS-191(7-08)<br>  Retroactive Date:  7-1-02 | 250,000 Annual Aggregate | See PKS-166 |

| Section X-Long Term Care Professional<br>Liability, General Liability and<br>Directors & Officers | | |
|---|---|---|
| A. Each Occurrence  (Per Location)............................ | Nil | |
| B. Annual Aggregate (Per Location)............................ | Nil | |
| C. Medical Payments........................................ | Nil | |
| D. Retained Limit........................................ | Nil | |

PKS-101(7-08)

# Ex. 17C

# Subgrantee Signature Sheet

# And

# Budget Information

MISSISSIPPI
Form MDHS-SCS-1002
Revised 3-01-2005

**STATE OF MISSISSIPPI**
**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
**SUBGRANT SIGNATURE SHEET**
**P.O. BOX 352**
**JACKSON, MISSISSIPPI 39205-0352**

MDHS FUNDING DIVISION: Family and Children's Services

| 1. SUBGRANTEE'S NAME, ADDRESS & PHONE # | 2. EFFECTIVE DATE |
|---|---|
| | 10/1/2012 |
| Starkville School District | 3. SUBGRANT NUMBER |
| 401 Greensboro Street, Starkville, MS 39759 | 419F411A |
| (662) 615-0033 | 4a. GRANT IDENTIFIER (funding source and year): |
| | G1101MSFRPG (2011 Comm. Based Child Abuse Prevention) |
| SUBGRANTEE'S FISCAL YEAR END DATE: | b. CATALOG of FEDERAL DOMESTIC ASSISTANCE (CFDA)# |
| June 30, 2013 | 93.590 |
| NAME/TITLE OF OFFICERS: (SUBGRANT ENTITY) | 5. BEGINNING AND ENDING DATE |
| a. Joan Butler, Director | 10/01/2012   to   09/30/2013 |
| b. | 6. SUBGRANT PAYMENT METHOD |
| c. | _____ CURRENT NEEDS/CASH ADVANCE |
| | __X__ COST REIMBURSEMENT |
| CONTACT PERSON:   Joan Butler | _____ OTHER |
| PHONE NUMBER:   (662) 615-0033 | 7. PAGE 1 OF 4 |

| 8. THE FOLLOWING FUNDS ARE OBLIGATED: | | | |
|---|---|---|---|
| FEDERAL | 100,000.00 | ADMINISTRATION | 23,770.33 |
| STATE | | SERVICES | 76,229.67 |
| OTHER | 25,000.00 | OTHER | 25,000.00 |
| TOTAL | 125,000.00 | TOTAL | 125,000.00 |

9. THE SUBGRANTEE AGREES TO ADMINISTER THIS SUBGRANT IN ACCORDANCE WITH ALL FEDERAL AND/OR STATE PROVISIONS
THAT ARE APPLICABLE TO SAID SUBGRANT. THE FOLLOWING DOCUMENTS ARE INCORPORATED HEREIN:

| | |
|---|---|
| a. SUBGRANT SIGNATURE SHEET | 3) STANDARD ASSURANCES POLICY |
| b. BUDGET SUMMARY | 4) DEBARMENT POLICY |
| c. COST SUMMARY SUPPORT SHEET | 5) DRUG FREE WORKPLACE POLICY |
| d. BUDGET NARRATIVE | 6) SUBGRANTEE MANUAL ACCEPTANCE |
| e. SUBGRANT AGREEMENT | f. VERIFICATION OF 25% FIDELITY BOND |
| 1) SCOPE OF SERVICES | g. COPY OF BOARD RESOLUTION (If Applicable) |
| 2) GENERAL TERMS AND PROVISIONS | h. COST ALLOCATION & INDIRECT COST RATES |

10. IDENTIFICATION OF OTHER FUNDING (List all other funds requested, anticipated or held over from prior years
dedicated to this or similar programs including Federal, State, Local or Private funds. If additional space is needed,
please attach typed pages.)

| SOURCE | PURPOSE | CONTRACT # | PERIOD (dates) | AMOUNT |
|---|---|---|---|---|
| See attached | | | | |

| 11. APPROVED FOR MDHS: | 12. APPROVED FOR SUBGRANTEE: |
|---|---|
| BY _[signature]_   DATE 9/17/12 | BY _[signature]_   DATE 9/12/12 |
| Richard A. Berry | Lewis Holloway |
| Executive Director | Superintendent |
| TITLE | TITLE |

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## BUDGET SUMMARY

**PAGE 2 OF 4 PAGES**

| | | | | | |
|---|---|---|---|---|---|
| 1. Applicant Agency: | **Starkville School District** | | | | |

| 2. Subgrant Number: | 3. Grant ID | 4.Beginning Date | 5. Ending Date |
|---|---|---|---|
| **419F411A** | **G1101MSFRPG** | **10/1/2012** | **9/30/2013** |

**6. Submitted as Part of (Check one):**

| a. Funding | b. Modification | c. Modification |
|---|---|---|
| Request  ( X ) | No.(  ) | Effective Date |

### Funding Sources

| 7.  For MDHS Use Only | 8. Activity | Federal | State | Program Income | Other (Local-Private) | Total |
|---|---|---|---|---|---|---|
| | Administration | 23,770.33 | | | | 23,770.33 |
| | Program Support | 76,229.67 | | | 25,000.00 | 101,229.67 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | TOTAL | 100,000.00 | | | 25,000.00 | 125,000.00 |

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
# COST SUMMARY SUPPORT SHEET

PAGE 3 OF 4  PAGES

**1. Applicant Agency:  Starkville School District**

| 2. Subgrant Number: | 3. Grant ID | 4. Beginning Date | 5. Ending Date |
|---|---|---|---|
| 419F411A | G1101MSFRPG | 10/1/2012 | 9/30/2013 |

**6. Activity:  Administration**

| 7. For MDHS Use Only | 8. Line Item | 9. Description of Item and/or Basis for Cost | 10. Budget | | |
|---|---|---|---|---|---|
| | | | Federal | All Other | Total |
| | Salaries | Refer to Budget Narrative | 17,500.00 | | 17,500.00 |
| | Fringe Benefits | Refer to Budget Narrative | 6,270.33 | | 6,270.33 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | **TOTAL** | 23,770.33 | | 23,770.33 |

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## COST SUMMARY SUPPORT SHEET

**PAGE 4 OF 4  PAGES**

**1. Applicant Agency:  Starkville School District**

| 2. Subgrant Number: | 3. Grant ID | 4. Beginning Date | 5. Ending Date |
|---|---|---|---|
| 419F411A | G1101MSFRPG | 10/1/2012 | 9/30/2013 |

**6. Activity:  Program Support**

| 7. For MDHS Use Only | 8. Line Item | 9. Description of Item and/or Basis for Cost | 10. Budget | | |
|---|---|---|---|---|---|
| | | | Federal | All Other | Total |
| | Salaries | Refer to Budget Narrative | 39,884.00 | | 39,884.00 |
| | Fringe Benefits | Refer to Budget Narrative | 15,094.99 | | 15,094.99 |
| | Travel | Refer to Budget Narrative | 123.42 | 2,134.35 | 2,257.77 |
| | Commodities | Refer to Budget Narrative | 16,915.00 | 7,865.65 | 24,780.65 |
| | Contractual | Refer to Budget Narrative | 4,212.26 | 15,000.00 | 19,212.26 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | **TOTAL** | $76,229.67 | 25,000.00 | 101,229.67 |

# Agreement

## AGREEMENT BETWEEN
## MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## AND
## STARKVILLE SCHOOL DISTRICT

**THIS AGREEMENT** is made and entered into by and between the Division of Family and Children's Services, Mississippi Department of Human Services, hereinafter referred to as "MDHS," and Starkville School District, hereinafter referred to as "Subgrantee."

In furtherance of the mutual interests and responsibilities of the parties hereto, this Agreement is entered into by and between the parties upon the following terms, provisions, and conditions, to-wit:

### SECTION I.  RESPONSIBILITY OF SUBGRANTEE

Subgrantee shall provide, perform and complete, in a reasonable manner as determined by MDHS, the services and activities described in the "Scope of Services," attached hereto as Exhibit A and incorporated herein by reference and the "Modified Mississippi Settlement Agreement and Reform Plan," attached hereto as Exhibit B. Subgrantee shall establish and maintain effective controls and accountability over all funds, property and other assets covered by this Agreement.

### SECTION II.  TERM OF AGREEMENT

The term of this Agreement shall commence on October 1, 2012, or after all parties have signed, whichever is later, and end on September 30, 2013.  Should funds continue to be made available to MDHS through the Community-Based Child Abuse Prevention Grant, or other grant award, MDHS shall have the option to renew the Subgrant Agreement on an annual basis for up to four (4) years at the same terms and conditions.  Renewal of the Subgrant Agreement shall be at the sole discretion of MDHS.  MDHS reserves the right to terminate any subgrant at any time, subject to current subgrant provisions, and avail itself to any and all remedies available to protect its interests.

### SECTION III.  PAYMENT AND BUDGET LIMITATIONS

**A.    SUBGRANT AMOUNT.**  The total amount of the subgrant to be provided by MDHS under this Agreement is One Hundred Thousand Dollars and Zero Cents ($100,000.00).

**B.    METHOD OF PAYMENT.**  It is understood between the parties hereto that funds supporting this Agreement will be utilized and expended as provided for in the Budget Summary, Cost Summary Support Sheet(s), and Budget Narrative, attached hereto as Exhibit C, (herein referred to as the "Budget") and incorporated herein by reference under the same terms and conditions as set forth in said Budget.  MDHS/DFCS shall process all reimbursement requests on a cost reimbursement basis in its normal course of business, and, if it is found in order, shall process payment thereon to be made within reasonable time to Subgrantee.

**C.    BUDGET REVISIONS.**  Any increase, decrease or change in the funding or budgeted line items under this Agreement shall be authorized only as provided by the Mississippi

1

Department of Human Services' line item flexibility policy and/or as authorized by a modification to this Agreement.

**D.    MAXIMUM PAYMENT.**    Notwithstanding any other provision of this Agreement, the maximum payment by MDHS to Subgrantee shall not exceed the sum of One Hundred Thousand Dollars and Zero Cents ($100,000.00) as set forth in Section III.A. above, in consideration for all performances or services provided by Subgrantee, unless specifically modified as provided herein.

## SECTION IV.  RELATIONSHIP OF PARTIES

The relationship of the Subgrantee to MDHS is that of independent contractor. None of the provisions of this Agreement are intended to create nor shall they be construed to create an agency, partnership, joint venture or employee-employer relationship between MDHS and Subgrantee.

Any persons assigned by Subgrantee to perform the services hereunder shall be the employee of the Subgrantee. MDHS may, however, direct Subgrantee to replace any of its employees under this subgrant. The Subgrantee will replace the employee within five (5) calendar days after receipt of notice from MDHS.

## SECTION V.  COMPLAINT RESOLUTION

Subgrantee shall provide a complaint resolution procedure regarding decisions on eligibility for the program, applications that are not acted upon timely, and decisions otherwise affecting benefits and services for the program funded by this subgrant. The appeal or complaint procedures shall be carried out according to the Fair Hearing Procedure of the Mississippi Department of Human Services, a conciliation process, the Personal Responsibility and Work Opportunity Act of 1996, and/or such other Procedure as may be required by MDHS, whichever is appropriate to the complaint as directed by MDHS.

## SECTION VI.  CHANGES

MDHS reserves the right to change any portion of the work required under this Agreement or amend other terms, including the Scope of Services, necessary to meet Federal or other operation requirements. Revision shall be made by written amendment to this Agreement duly signed by the authorized representative of each party hereto.

## SECTION VII.  SAFEGUARDING INFORMATION

**A.    CONFIDENTIALITY.**    Subgrantee shall treat all State data and information to which it has access under this subgrant as confidential to the extent that confidential treatment of same is required under Federal and State law and shall not disclose same to a third party without specific written consent of the State. In the event that Subgrantee receives notice that a third party requests divulgence of confidential or otherwise protected information, and has served upon it a subpoena or other validly issued administrative or judicial process ordering divulgence of confidential or otherwise protected information, Subgrantee shall promptly inform the State and thereafter respond in conformity with such subpoena as required by applicable State and/or Federal laws, rules and regulations. The provision herein shall survive termination of the

2

subgrant for any reason and shall continue in full force and effect and shall be binding upon the Subgrantee and its agents, employees, successors, assigns, subcontractors, or any party claiming an interest in the subgrant on behalf of, or under, the rights of the subgrant following any termination.

All records and information involving applicants or recipients of services under this subgrant shall be kept confidential. The use or disclosure of information concerning applicants and/or recipients shall be limited to purposes directly connected with the administration of the Community-Based Child Abuse Prevention Program. Subgrantee shall take any and all steps necessary to insure the physical security of the records and information that it obtains under this Agreement, including but not limited to providing fire protection, protections against smoke and water damage, locked files, passwords, access logs or other methods to prevent loss or unauthorized access or retrieval of the records or information.

The safeguards for information to which both parties will adhere are contained in the MDHS Subgrantee/Contract Manual and any applicable Federal/State/Local regulations. The restrictions herein shall survive the termination or completion of this Agreement and shall continue in full force and effect and shall be binding upon the Subgrantee and/or its officers, agents, employees, successors, assigns, subcontractors, or any party claiming an interest in the Agreement on behalf of or under the rights of the Subgrantee.

**B.     THIRD PARTY REQUESTS.** In event that the Subgrantee receives notice that a third party requests divulgence of confidential or otherwise protected information and/or has served upon it a subpoena or other validly issued administrative or judicial process ordering divulgence of confidential or otherwise protected information, Subgrantee shall promptly inform MDHS and thereafter respond in conformity with such subpoena as required by applicable State and/or Federal laws, rules and regulations.

**C.     LIABILITY.** Any liability resulting from the wrongful disclosure of confidential information on the part of the Subgrantee and/or its officers, agents, subcontractors, and/or representatives shall rest with the Subgrantee. Disclosure of any confidential information by the Subgrantee and/or its representatives or subcontractor without the express written approval of MDHS, shall result in the immediate termination of this Agreement. Nothing herein shall be construed to prevent MDHS from seeking any other remedy, in law or equity, available to it.

## SECTION VIII. TERMINATION OF AGREEMENT

## A.     TERMINATION FOR CONVENIENCE OF EITHER PARTY

This Agreement may be terminated by either party, in whole or in part, at any time, by giving written notice to the other party of such termination and specifying the effective date thereof, at least 30 days before the effective date of such termination. In the event of termination, Subgrantee shall be entitled to receive only reimbursement for allowable expenses incurred to the date of termination. In no event shall such expenses exceed the maximum amount payable under this subgrant.

B.    **TERMINATION CLAIM**

Within 30 days after receipt of a Notice of Termination, the Subgrantee shall submit to MDHS its termination claim, in the form prescribed by MDHS.

In the event of termination of this subgrant as provided herein, Subgrantee shall be entitled to receive just and equitable compensation for services or performances actually and satisfactorily performed, prior to the effective date of termination, under this subgrant. Such compensation shall be based upon the payment provisions described in Method of Payment Section of the subgrant but, in no case, shall said compensation exceed the total amount of this subgrant.

Subgrantee shall be liable to MDHS for damages sustained by MDHS by virtue of any breach of this subgrant by Subgrantee, and MDHS may withhold any payments to Subgrantee for the purpose of setoff until such time as the exact amount of damages due to MDHS from Subgrantee are determined. The rights and remedies of MDHS provided in this Section shall not be exclusive and are in addition to any other rights and remedies provided by law or in equity.

C.    **TERMINATION FOR DEFAULT**

Unless the Subgrantee's default or breach of this subgrant is excused by MDHS, MDHS may by written notice of default to the Subgrantee terminate the whole or any part of this Agreement if the Subgrantee has failed to carry out its obligations hereunder and has not remedied or taken appropriate steps to remedy the default.

If, through any cause, Subgrantee shall fail to fulfill in a timely and proper manner, as determined by MDHS, its obligations under this subgrant, or if Subgrantee shall violate any of the covenants, agreements, or stipulations of this subgrant, MDHS shall thereupon have the right to terminate the subgrant by giving written notice to Subgrantee of such termination and specifying the effective date thereof at least five (5) days before the effective date of such termination. In the event of such termination, Subgrantee shall be entitled to receive just and equitable compensation for satisfactory work completed on documents, services or materials collected and/or prepared by Subgrantee in connection with this subgrant.

Notwithstanding the above, Subgrantee shall not be relieved of liability to MDHS for damages sustained by MDHS by virtue of any breach of this subgrant by Subgrantee, and MDHS may withhold any payments to Subgrantee for the purpose of setoff until such time as the exact amount of damages due to MDHS from Subgrantee are determined.

The rights and remedies of MDHS provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this subgrant.

If the Subgrantee fails to comply with any of the covenants, terms, or stipulations of this subgrant, whether stated in a Federal statute or regulation, an assurance, in the State Plan or application, a notice of award, or elsewhere, MDHS may take any of the following actions:

a. Issue a warning letter that further failure to comply with such covenant, term, or stipulation will result in a more serious sanction or action;

b. Condition a future subgrant;

c. Direct the Subgrantee to stop the incurring of costs with subgrant amounts;

d. Require that some or all of the subgrant amounts be remitted to MDHS;

e. Reduce the level of funds the Subgrantee would otherwise be entitled to receive;

f. Elect not to provide future subgrant funds to the Subgrantee until appropriate actions are taken to ensure compliance;

g. Wholly or partly suspend or terminate the current award of funds to the Subgrantee;

h. Suspend reimbursements to Subgrantees who fail to meet deadlines on unresolved monitoring or audit findings, closeout packages, and/or fiscal and programmatic requirements; or

i. Suspend payments upon notification that Subgrantee is bankrupt or receives tax lien of any type, regardless of the reason.

## D.    TERMINATION BECAUSE OF CIRCUMSTANCES BEYOND THE CONTROL OF THE PARTIES

If either party is rendered unable, wholly or in part, by reason of strikes, accidents, acts of God, weather conditions or other acts beyond its control and without its faults or negligence, to comply with its obligations under this subgrant, then, such party shall have the option to cancel, upon the giving of written notice, this Agreement, in whole or part as the case may warrant.

## E.    AVAILABILITY OF FUNDS

It is expressly understood and agreed that the obligation of MDHS to proceed under this Agreement is conditioned upon the availability of funds, appropriation of funds by the Mississippi State Legislature and the receipt of Federal and/or State funds. In the event that the funds anticipated for the fulfillment of the Agreement are at any time, not forth coming or are insufficient, either through the failure of the Federal government to provide funds or of the State of Mississippi to appropriate funds or the discontinuance or material alteration of the program under which funds were provided or if funds are not otherwise available to MDHS for the performance of this Agreement, MDHS, Division of Family & Children's Services, shall have the right to immediately terminate this Agreement, without damage, penalty, cost, or expense to MDHS of any kind whatsoever. The ultimate decision as to whether or not funds continue to be available for the performance of this Agreement lies solely with MDHS.

## SECTION IX. AGREEMENTS BY SUBGRANTEE

A.    **SUBCONTRACTORS.**  It is understood and agreed that the Subgrantee may enter into agreements or subcontracts with eligible entities (hereinafter sometime referred to as Subgrantee's Contractor/Subcontractor) for the provision of the services required under this Agreement.  Any and all such agreements or subcontracts shall include all of the terms and conditions of this Agreement. Subgrantee agrees that it shall require all of its subcontractors to comply with all local, municipal and county health, safety and other ordinances and requirements and with all applicable Federal and State laws, statutes, and regulations, the same as apply to the

5

Subgrantee herein. The agreements/subcontracts must include assurances that services will be provided to all eligible persons, regardless of potential participant's race, color, religious beliefs/practices, creed, age, national origin, sex, or mental or physical disability. The Subgrantee and its Contractors/Subcontractors cannot, on the basis of race, color, religious beliefs/practices, creed, age, national origin, sex, or mental or physical disability, treat one person differently from another in determining eligibility, benefits or services provided, if applicable.

The Subgrantee, however, shall be fully responsible for the performance of its Contractors/Subcontractors.

Copies of all subcontracts, agreements, and modifications thereto shall be forwarded to MDHS, Division of Family & Children's Services.

**B.    RELEASE OF LIABILITY.** Subgrantee agrees that in any agreement or subcontract for the provision of the services or activities covered by this subgrant, it shall require that the Subgrantee's contractor, subcontractor, representatives, or agents release and hold harmless MDHS from and against all claims, demands, liabilities, suits, damages, and costs of every kind and nature whatsoever, including court costs and attorney's fees, arising out of or caused by contractor or subcontractor and/or its officers, agents, or employees in the performance of such services or activities.

## SECTION X. REPORTING

**A.    MONTHLY REPORTS.** Subgrantee agrees to provide reports and/or information within ten (10) calendar days after the close of each month. Such reports shall be complete for the period concerned and shall contain information concerning clients served, catchment areas, administrative costs, if any, direct and indirect costs of any nature expended in the performance of this subgrant, units of service, and other sufficient data to provide evidence of budget and programmatic compliance as required by this subgrant. Subgrantee shall also provide to MDHS monthly financial supporting documentation of all expenditures pertaining to the subgrant.

**B.    TERMINATION REPORTS.** Subgrantee shall furnish MDHS a written termination report within ten (10) calendar days from the termination date unless additional time is granted by MDHS for the purpose of audits, examinations, or other reasons. The termination report shall include information as set forth in Subsection A of this Section and any other data required by MDHS to furnish evidence of financial and programmatic compliance.

**C.    FINAL FISCAL REPORT.** The Subgrantee agrees to provide a final fiscal reporting worksheet, along with closeout report, to MDHS within forty-five (45) days after the ending of this subgrant. These fiscal documents will be used for the purpose of reconciling this subgrant to the actual expenditures for activities and services rendered, not to exceed the maximum liability as set forth in this subgrant. Any funds paid by MDHS to Subgrantee and not expended for activities or contracted services under this subgrant or funds expended in violation of this subgrant shall be considered MDHS' funds and shall be returned to MDHS in full. Where deemed appropriate by MDHS and accepted by the Subgrantee, a reduction may be allowed in future payments under future subgrants by a total amount equal to the amount disallowed or

deferred or by other methods approved by MDHS. Subgrantee must adhere to the procedures for closeout of subgrants set forth in Section 11 of the MDHS Subgrantee/Contract Manual.

Subgrantees, who fail to meet the closeout deadline, as outlined in the MDHS Subgrantee/Contract Manual, may be disqualified from future funding consideration.

**D.    TAX REPORTS.** Subgrantee shall file timely federal and state tax reports as due and, if requested, shall furnish MDHS with a copy of such reports within ten (10) calendar days after the filing of the report(s) with the applicable state and/or federal taxing authority(ies).

## SECTION XI. SEVERABILITY

If any term or provision of this subgrant is prohibited by the laws of the State of Mississippi or is declared invalid or void by a court of competent jurisdiction, the remaining terms and provisions of this subgrant shall not be affected thereby, and each remaining term and provision of this subgrant shall be valid and enforceable to the fullest extent permitted by law.

## SECTION XII. ASSIGNMENT

A.    The rights, privileges, benefits, and obligations created by this subgrant and by operation of law extend to and accrue and are obligatory upon the parties hereto, their personal or real representatives, and successors.

B.    Subgrantee shall not assign or otherwise transfer the obligations incurred on its part pursuant to the terms of this subgrant without the prior written consent of MDHS. Any attempted assignment or transfer of its obligation without such consent shall be wholly void. MDHS does reserve, however, the exclusive right to direct the Subgrantee to assign and/or transfer this subgrant when such course of action is mandated by the Federal grantor agency. In the event that such a transfer or assignment is directed by MDHS, MDHS further reserves the right to ensure adequate and proper arrangement of such transfer to assure continued, effective performance of the purposes for which the parties entered into this subgrant.

## SECTION XIII. RECORDS AND AUDITS

**A.    MAINTENANCE OF RECORDS.** Subgrantee shall establish and maintain financial and programmatic records, supporting documents, statistical records and other records as may be necessary to reflect the performances of the provisions of this Agreement.

**B.    FISCAL REQUIREMENTS AND AUDIT.** Subgrantee shall establish such fiscal control and fund accounting procedures, including internal auditing procedures, as may be necessary to assure the proper disbursal of and accounting for funds in accordance with this Agreement, the Single Audit Act Amendments of 1996 (31 U.S.C. Sections 7501-7507) and revised United States Office of Management and Budget (OMB) Circular A-133. The Subgrantee shall keep, maintain and present to MDHS, as required, necessary and proper vouchers, documentation and such other reports as may be required to support the expenditure of funds pursuant to this Agreement, and the Subgrantee shall keep and maintain bookkeeping and accounting records and procedures as the same may be established and approved by

7

MDHS. The Subgrantee's records must be sufficient to allow MDHS to audit and monitor the Subgrantee's operation of its program and sufficient to permit the preparation of reports required by the Single Audit Act and the statues authorizing this subgrant. These records shall be set up in accordance with Generally Accepted Accounting Principles, MDHS' Fiscal Accountability Guidelines, and OMB Cost and Accounting Standards.

    **C.  INDEPENDENT AUDIT.**  Audits shall be made by an independent auditor in accordance with the Single Audit Act Amendments of 1996, revised OMB Circular A-133, and generally accepted government standards covering financial audits.

    The Subgrantee, by signature affixed herein, agrees that within forty-five (45) days of the expiration of this subgrant, an independent financial audit may be performed in order to comply with OMB Circular A-133.  No independent fiscal audit will be reimbursed in whole or in part by MDHS unless the Subgrantee is specifically required by MDHS to engage the services of an independent audit firm.  MDHS reserves the right to select the audit entity under this provision.

    **D.  AUDIT FINDINGS.**  Subgrantee shall receive, reply to and resolve any State and/or Federal programmatic exceptions related to this Agreement and/or any of the Subgrantee's Contractors/Subcontractors.  Should, during the process of monitoring the program, MDHS become aware of any monitoring findings, the grantee may be required to refund the amount of the questioned costs, following the procedures, outlined in the Subgrantee Manual, Section 9, Page 4, Corrective Action.

## SECTION XIV.  DISPUTES

    Any dispute concerning a question of fact under this subgrant which is not disposed of by agreement of the parties hereto shall be decided by the Director of the Division of Family & Children's Services.  This decision shall be reduced to writing and a copy thereof mailed or furnished to the Subgrantee and shall be final and conclusive, unless, within thirty (30) days from the date of the decision, Subgrantee mails or furnishes to the Executive Director of the Mississippi Department of Human Services a written request for review.  Pending final decision of the Executive Director or his designee, the Subgrantee will proceed in accordance with the decision of the Director of the Division of Family & Children's Services.

    In the review before the Executive Director, the Subgrantee shall be afforded an opportunity to be heard and to offer evidence in support of its position on the question and decision under review.  The decision of the Executive Director or his designee shall be final and conclusive unless determined by a court of competent jurisdiction in Hinds County, State of Mississippi, to have been fraudulent, capricious, or so grossly erroneous as necessarily to imply bad faith or not supported by substantial evidence.

## SECTION XV.  SUPPLANTING

    Funds received under this subgrant shall be used only to supplement, not supplant, the amount of Federal and/or State, and Local funds otherwise expended for the support of Community Based Child Abuse Prevention Programs.

## SECTION XVI.  WAIVER

Failure of either party hereto to insist upon strict compliance with any of the terms, covenants, and conditions of this subgrant shall not be deemed a waiver or relinquishment of any similar right or power hereunder at any subsequent time or of any other provision hereof nor shall it be construed to be a modification of the terms of this subgrant.

## SECTION XVII.  RECORD RETENTION AND ACCESS TO RECORDS

It is specifically understood and agreed that the Subgrantee shall provide MDHS with readily accessible and full opportunity to conduct program and/or fiscal monitoring and auditing (including through on-site visits to the Subgrantee's premises) of the Subgrantee's performance under this Agreement. MDHS, any State agency authorized to audit MDHS, the Federal grantor agency, and the Comptroller General of the United States or any of their duly authorized representatives shall have the right of access to any books, documents, papers or other records of the Subgrantee that are pertinent to the services performed under this Agreement in order to make audit, examination, excerpts and/or transcripts. These records shall be retained for at least three (3) years; however, if any litigation or other legal action, by or on behalf of the State or Federal Government has begun that is not completed at the end of the three (3) year period, or if audit findings, litigation or other legal action has not been resolved at the end of the three (3) year period, the records shall be retained until resolution.

## SECTION XVIII.  PATENTS AND COPYRIGHTS AND RIGHTS IN DATA

**A.  PATENTS.**  This Agreement is not awarded for the purposes of experimental, developmental or research projects. Should the activities of Subgrantee and/or its Contractors/Subcontractors include experimental, developmental or research projects, this Agreement shall be promptly amended to include the standard patent right clauses required by 35 U.S.C. Section 202 as amended by Public Law 98-620 and 37 CFR Part 401, "Right to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any other provisions required by applicable State and/or Federal laws, rules, or regulations.

**B.  COPYRIGHTS AND RIGHTS IN DATA.**  MDHS reserves a royalty-free nonexclusive, and irrevocable license to reproduce, publish or otherwise use, and to authorize others to use:

(1) The copyright in any work developed under this Agreement or under any other agreement or contract under this subgrant Agreement; and

(2) Any rights of copyright to which the Subgrantee or any Subgrantee's Contractor/Subcontractor purchases ownership with subgrant support or funds provided under this Agreement.

Subgrantee hereby assigns to MDHS all rights, title, and interest in any and all materials conceived or created by the Subgrantee, and/or its employees, agents, contractors, or subcontractors, either individually or jointly with others and which arise out of the performance of this Agreement, including any computer programs, systems, designs, source code, work

9

papers, operating instructions, and all other information, documents, and work in whatever form. All work papers, cards, magnetic tapes, disk packs, or other storage media, temporary and/or permanent, containing programs and/or other information of any kind relating to this Agreement shall be available, upon request, to MDHS or its representative(s) for review, inspection, and if desired, reproduction. Such information and documents shall be delivered to MDHS on MDHS' request therefore. Subgrantee shall maintain all master programs and master data files in a completely secure manner. Such programs and files shall be identified by program and file name.

## SECTION XIX. OWNERSHIP OF DOCUMENTS AND WORK PRODUCTS

All property purchased and all data, documents, notes, programs, books, databases (and all applications thereof), files, reports, studies, unfinished documents, and/or other material collected or prepared by Subgrantee in connection with this subgrant shall be owned by MDHS upon completion or termination of this subgrant. MDHS hereby reserves all rights to the data base and all applications thereof and to any and all information and/or material prepared in connection with this subgrant.

Except as otherwise provided by these General Terms and Provisions, the Subgrantee is prohibited from use or distribution of the above-described information and/or material without the express written approval of MDHS.

All printed mention, materials, deliverable products, publicity, and other documents and reports distributed by the Subgrantee as a result of this subgrant, regardless of its form, must give funding source credit to the Division of Family & Children's Services, Mississippi Department of Human Services. DFCS must be provided a copy of the aforesaid documents and reports.

## SECTION XX. CONFLICT OF INTEREST

Subgrantee shall ensure that there exists no direct or indirect conflict of interest in the performance of this subgrant and/or performance by any of the Subgrantee's Contractors/Subcontractors. Further, Subgrantee warrants that no part of any Federal or State money shall be paid directly or indirectly to an employee or official of MDHS as wages, compensation or gifts in exchange of acting as an officer, agent, employee, subcontractor, or consultant to the Subgrantee in connection with any work contemplated or pertaining to this subgrant or Agreement. Subgrantee shall strictly comply with all conflict of interest provisions or standards of conduct provisions contained in the MDHS Subgrantee/Contract Manual or any applicable State, Federal, or Local law, rule, or regulation.

## SECTION XXI. RESPONSIBILITY FOR CLAIMS

Each party shall be responsible for all claims, demands, liabilities, suits, damages, costs, and expenses of every kind, including court costs and attorney's fees, arising out of this Agreement and caused by the party's own, principals, agents, employees, contractors or subcontractors while performing under this Agreement. Further, the parties assume no liability for the actions or omissions of each other's agents, representatives, employees, contractors, subcontractors, or providers.

## SECTION XXII.  INSURANCE

Subgrantee represents that it will maintain workers' compensation insurance as required by law, which shall inure to the benefit of all Subgrantee's personnel performing services under this Agreement, employee fidelity bond insurance in an amount equal to twenty-five percent (25%) of funds awarded hereunder, and comprehensive general liability insurance. Subgrantee will furnish to MDHS with a certificate of insurance providing the aforesaid coverage, prior to the commencement of performance under this Agreement. All insurance policies required under this Section shall be issued by an insurance company or companies licensed to do business in the State of Mississippi and shall be acceptable to MDHS. The insurance required by this Section shall be maintained at all times during the course of this Agreement for the entire period thereof and MDHS must be given written notice by registered mail at least thirty (30) days in advance if any adverse modification or termination of any insurance.

If at any time the Subgrantee and/or its Contractors/Subcontractors lease, purchase or otherwise use an automobile, bus, van, or vehicle for the transportation of clients or program participants in carrying out the services required under this Agreement, the Subgrantee and its Contractors/Subcontractors must secure and maintain, at its/their own expense, the following insurance coverage in the amounts specified below:

- Owned vehicles - $30,000.00 combined single limit (bodily injury and property damage) together with medical coverage in the amount of $2,000.00 for owned vehicles.

- Hired vehicles - $25,000.00 combined single limit (bodily injury and property damage)

- Non-owned vehicles - $25,000.00 combined single limit (bodily injury and property damage)

## SECTION XXIII.  COMPLIANCE WITH LAWS, RULES AND REGULATIONS

Subgrantee shall comply with all applicable policies and procedures of MDHS and all applicable Federal, State, and/or Local laws, rules, regulations, directives, and guidelines that are now applicable or later made applicable to this Agreement. Particularly, but without limitation through inclusion, Subgrantee shall comply with the Mississippi Department of Human Services' Subgrantee/Contract Manual **Revised March 2005, including all addenda.**

A.  **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES SUBGRANTEE/CONTRACT MANUAL.** The Subgrantee agrees to comply with, and require their subcontractors to comply with, all Mississippi Department of Human Services' policies and guidelines as set forth in the MDHS Subgrantee/Contract Manual.

B.  **SUBGRANT/CONTRACT SIGNATURE SHEET.** The Subgrantee agrees to comply with all the terms and conditions included in the Subgrant/Contract Signature Sheet attached hereto and incorporated herein.

## SECTION XXIV.  GOVERNING LAWS AND LEGAL REMEDIES

This Agreement shall be construed and governed in accordance with the laws of the State of Mississippi. Subgrantee expressly agrees that under no circumstances shall MDHS be obligated to pay an attorney's fee or cost of legal action to Subgrantee.

## SECTION XXV.  AMENDMENT OR MODIFICATION

Modifications, changes or amendments to this Agreement may be made upon mutual agreement of the parties hereto. Except as otherwise specifically provided by MDHS' policy, any change, supplement, modification or amendment of any term, provision or condition of this Agreement must be in writing and signed by both parties hereto.  Any modifications to this subgrant must be requested in writing no earlier than thirty (30) days after the beginning date of the subgrant and no less than thirty (30) days prior to the expiration date of the subgrant.

## SECTION XXVI.  NOTICE

Any notice required or permitted to be given under this Agreement shall be in writing, personally delivered or sent by certified mail, to the party to whom the notice should be given at the address set forth on the Mississippi Department of Human Services' (MDHS) Subgrant/Contract Signature Sheet or at such address as the party may provide in writing from time to time.

## SECTION XXVII.  CERTIFICATION OF COMPLIANCE AND ASSURANCES

This Agreement is also subject to the Standard Assurances, Certifications Regarding Lobbying, Debarment, Suspension and other Responsibility Matters; and Drug-Free Workplace Requirements; MDHS' Certification Regarding Unresolved Monitoring Findings, Unresolved Audit Findings; and Litigation Occurring Within the Last Three (3) Years; and the Certification of Adequate Fidelity Bonding, attached hereto.

## SECTION XXVIII.  PROPERTY, EQUIPMENT AND SUPPLIES

Property, equipment and supplies purchased, in whole or in part, with funds provided by MDHS shall be accounted for and disposed of in accordance with MDHS' directives, policies and procedures.  Subgrantee must adequately safeguard all such property and must assure that it is used solely for purposes authorized by this Agreement.  Nothing herein, however, shall be construed to authorize the Subgrantee to purchase equipment with funds provided under this subgrant unless such is specifically allowed by Section III of this Agreement.

## SECTION XXIX.  LIMITATION ON EXPENDITURE OF PROGRAM FUNDS

Expenses charged against funds granted herein shall not be incurred by the Subgrantee except during the period of this Agreement as set forth above and may only be incurred and paid only as necessary to the performance of the work and activities set forth in Exhibit A.   All expenses obligated for the approved program must be supported by approved signed contracts, bills, or other evidence of liability consistent with MDHS established procurement procedures.

Further, funds received under this Agreement and any contract or subcontract hereunder shall be used only to supplement, not supplant or duplicate, the amount of federal, state, and/or local funds otherwise expended for services provided by the Subgrantee or in the Subgrantee's service area.

## SECTION XXX. CAPTIONS

The captions and headings in this Agreement are for convenience only, and in no way define, limit or describe the scope or intent of any provision or article of this Agreement.

## SECTION XXXI. E-VERIFY CLAUSE

Subgrantee represents and warrants that it will ensure its compliance with the Mississippi Employment Protection Act (Senate Bill 2988 from the 2008 Regular Legislative Session) and will register and participate in the status verification system for all newly hired employees. The term "employee" as used herein means any person that is hired to perform work within the State of Mississippi. As used herein "status verification system" means the Illegal Immigration Reform and Immigration Responsibility Act of 1996 that is operated by the United States Department of Homeland Security, also known as the E-Verify Program, or any other successor electronic verification system replacing the E-Verify Program. Subgrantee agrees to maintain records of such compliance and, upon request of the State, to provide a copy of each such verification to the State. Subgrantee further represents and warrants that any person assigned to perform services hereunder meets the employment eligibility requirements of all immigration laws of the State of Mississippi. Subgrantee understands and agrees that any breach of these warranties may subject Subgrantee to the following: (a) termination of this Agreement and ineligibility for any State or public contract in Mississippi for up to three (3) years, with notice of such cancellation/ termination being made public, or (b) the loss of any license permit, certification or other document granted to Subgrantee by an agency, department or governmental entity for the right to do business in Mississippi for up to one (1) year, or (c) both. In the event of such termination/cancellation, Subgrantee would also be liable for any additional costs incurred by the State due to contract cancellation or loss of "license or permit".

## SECTION XXXII. ENTIRE AGREEMENT

IN WITNESS WHEREOF, this Agreement has been made and interchangeably executed by the parties hereto in duplicate originals. This Contract constitutes the entire agreement of the parties with respect to the subject matter contained herein and superseded and replaces any and all prior negotiations, understandings, and agreements, written or oral, between the parties relating thereto.

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**

By: _____

Title: Deputy Executive Director

Date: 9/17/12

Witness: _____

**STARKVILLE SCHOOL DISTRICT**

By: _____

Title: Superintendent

Date: 9/12/12

Witness: Tommie Davis

13

# EXHIBIT A
# Scope of Services

## STARKVILLE SCHOOL DISTRICT – PROJECT CARE
## OCTOBER 1, 2012 – SEPTEMBER 30, 2013

Project Care will provide child abuse and neglect prevention services to increase protective factors (e.g. parental resilience, knowledge of parenting, social connections, concrete supports, and social and emotional competence in children) for Oktibbeha County families through a 2-tiered program focusing on parental educational and support services. More than one hundred twenty (120) families will receive universal interventions involving the general population of families primarily in the effort to increase knowledge of parenting and child development and awareness of issues surrounding child abuse and neglect. More than forty (40) families and fifteen (15) expectant parents or parents of newborns will receive targeted interventions focusing on high-risk families (e.g. those affected by homelessness, adults who were victims of child abuse and neglect or domestic violence, substance abuse, poverty, and single-parenthood). These families will also receive intensive, individualized support to strengthen parental resilience, increase social connections, and access to concrete supports.

Project Care will operate out of the Emerson Family Resource Center (EFRC) under the authority of Family Centered Programs (FCP) in the Starkville School District. Emerson Family School offers year-round and up to twelve (12) hours a day services to families in the area. The Project Care staff will consist of two (2) full-time staff members: Project Manager/Social Worker and Resource Assistant and part-time Childcare Providers who will supply respite services for families with young children. Project Care services will be delivered in a manner that is respectful of and attuned to the cultural strengths and needs of participating families. The needs and circumstances of these families, particularly those receiving targeted services, will be viewed within a cultural context and services provided will integrate culturally relevant information.

In order to promote parent competencies and strengthen families, **universal services** provided by Project Care will focus on parenting classes, library resources, and media exposure to issues surrounding child abuse and prevention. Knowledge of parenting and child development is one of five (5) protective factors for child abuse and neglect identified by the Center for the Study of Social Policy. Parents need to have a good understanding of normal child development in order to have reasonable expectations of their children. For example, inexperienced parents often do not understand that crying is a baby's only method for communicating that something is wrong or they may not know that a one-year old is not developmentally ready to sit for long periods of time. They also need to know how to interact with their children in a positive manner, appropriate methods of discipline, and how to encourage them in their development of new skills. Therefore, several avenues will be available to parents to increase their knowledge of parenting and child development. EFRC will provide weekly **parenting classes** to more than one hundred twenty (120) families using the evidence-based curriculum *Active Parenting,* as well as workshops on topics requested by parents. This 8-10 hours curriculum is included in SAMHSA's National Registry of Evidence-Based Programs and Practices. (See attached Worksheet 1A). The curricula for parents over a child's life-span from early childhood through adolescents and for specialized parenting needs (e.g. helping children with their education, divorce, step-families, grief and loss) has 8-12 lessons for completion. Parenting classes will help parents learn age-appropriate, non-violent disciplinary techniques,

parenting skills, and stress management techniques. Parenting resource materials will be available for check-out through the EFRC. Additional support materials will address other areas of family education needs such as financial management, marriage education, etc. Finally, universal services will include alerting the general public about child abuse and prevention to include identifying and reporting child abuse and neglect and on how to increase protective factors within the home and community. Various media will be incorporated through public service announcements, newspaper coverage, posters and community meetings.

**Targeted services** will provide intensive, specialized services for the forty (40) most at-risk families. The intake process for enrolling these families for Project Care services will include a comprehensive plan of a continuum of services based on an assessment of needs and the development of Family Service Plans (FSP). FSPs will be developed involving the parents' perspective of understanding the needs and strengths of these families paired with the staff's current knowledge of research and effective practice in family health and well-being. In addition, Project Care will provide intensive parenting educational support for more than fifteen (15) parents expecting their first child or parents of newborns. Project Care will strengthen the protective factors of social connections, concrete supports, parental resilience, and social and emotional competence of young children.

Expectant parents or parents of newborns, especially young parents, are particularly at-risk for child abuse and neglect. The needs of infants are more demanding and stressful than at any other age. Therefore, **home visitation** (or convenient location for parent) service will be provided for these families to enhance the bonding between parents and their children, increase knowledge of child development and effective parenting techniques. The evidence-based program *Nurturing Parenting* will be used to 1) establish a relationship with pregnant/ expectant parents, 2) hospital and/or home visit within first two (2) weeks following birth to assess needs and provide case management support, 3) provide in-home case management support, parenting education support for up to 1 year following birth.

Since social isolation due to limited support systems is a risk factor for child abuse and neglect, Project Care will provide opportunities for families to establish or increase social connections through **family interactive activities** and **involvement in community through service and leadership**. At least three (3) community-wide events (potluck dinners, group activities, family field trips, etc) will be held during the year for the whole family. In addition, adult family members will be encouraged to become involved in community activities, service projects, and membership in community organizations, including the Project Care Advisory Council. The Council will be composed of a minimum of twenty (20) members with representation of families served, faith-based groups, MS Health Department, MS Department of Human Services, Community Counseling, and justice system. It will meet monthly to get updates on the program, link with community agencies, and make recommendations for improved quality of services to children and families.
Project staff will facilitate links between adult family members and such opportunities based on the personal and family interests and strengths of participants.

These families often need concrete support in times of crisis. Project staff will work closely with FCP's Project HELP staff to identify and address the needs of families with children

who are eligible for homeless education support services and those who have been victims of abuse or have substance abuse problems. Project HELP assists homeless children and youth with needed school supplies and tutoring services. However, Project Care staff will extend **case management** support to these families, as well as other families receiving targeted support services, and link them with other community agencies to help them secure concrete support for basic needs (e.g. housing, food, clothing, medical care etc). A community resource guide will be published annually that provides a list of community agencies and organizations to direct families to other programs and agencies that provided needed services such as adult education classes, job training, respite care, physical and mental health services, and basic needs (food, clothing and shelter). Project staff will work with community agencies (e.g. Prairie Opportunity and Community Counseling Services, etc) to ensure families receive the support needed. Project staff will also mobilize other families and community support for crisis events such as a death in the family, a fire, and/or natural disasters.



The emotional health of parents is critical to providing a positive, healthy environment for children. Therefore, Project Care will also offer services for strengthening parental resilience. Temporary **respite care** will be made available for families of young children while they pursue job prep/work, go to doctor visits, care for sick family members, participate in parenting classes, etc. Developmentally appropriate educational experiences will be provided for these children while in respite care. Services will be offered Monday – Thursday from 8:00 AM – 12:00 PM. In addition, **support groups** for families facing similar issues and problems will be established to provide peer encouragement and guidance. These groups will meet at the EFRC at times convenient to those involved. Families dealing with serious mental and emotional health programs will be referred to Community Counseling Services Inc. for counseling and treatment.

It is evident from the review of assessment results that Oktibbeha County families are plagued with numerous risk-factors associated with child abuse and neglect. The problems of poverty, single-parenthood, homelessness, and many times abuse and substance use are interrelated and require multi-disciplinary intervention from several agencies and organizations. Therefore, the development of an individual FSP based on a thorough intake assessment will allow streamlining services examining the families' strengths and weaknesses. In addition, approaching family services through a collaborative effort from various community agencies will ensure a comprehensive continuum of intervention that will address the needs of the entire family. Project Care will implement research-based practices outlined by the Center for the Study of Social Policy and Child Welfare Information Gateway to reduce risk and increase protective factors for at-risk families.

The District is prepared to implement Project Care activities by October 1, 2012 or at least within thirty (30) days following receipt of subgrant. The Project Director, Dr. Joan Butler, will immediately initiate the process to employ project staff. The District is equipped with the organizational structure and appropriate facilities and with established community relationships to expedite the full implementation of project.

In 1994, the Starkville School District became a pioneer among public school systems in Mississippi in the area of family programming by establishing the Department of FCP. Since its inception FCP has touched thousands of Oktibbeha County families through Emerson Family School which houses programs providing a fee-based preschool and free services of family education, resources for families, and adult basic education classes. The preschool serves 100 children ages 6-weeks to 5 years with a developmentally appropriate program emphasizing social, emotional, and literacy skills development. It is licensed by the State of Mississippi and has highly qualified staff. The facility is equipped with an electronic security and surveillance system to provide a safe and secure environment for the clients. In addition, the facility houses a resource library for families and meeting rooms conducive to parenting education classes. Therefore, this site is an ideal location for Project Care services. Project services will operate year-round, 5 days a week, 8:00 to 5:00 and at night/weekends based on scheduled events.

Helping families overcome barriers to participation in project activities will be critical to ensure they are able to get optimum support. Transportation and childcare will be offered to families through Project Care who participate in activities, particularly workshops and parenting classes. Transportation will be provided through the Starkville School District's transportation department four (4) days a week. Childcare will be a part of Project Care and offered in a developmentally appropriate space called the Play Pen at Emerson Family School in conjunction with scheduled workshops.

Timeline for delivery of services:

| Activity | Responsible Party<br>D=Director<br>PM=Project Manager<br>AC= Advisory Council | Oct 1 –<br>Dec 31 | | | Jan 1 –<br>Mar 31 | | | Apr 1 –<br>Jun 30 | | | Jul 1 –<br>Sep 30 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hire project staff | D | | | | | | | | | | | | |
| Form Advisory Council | D & PM | | | | | | | | | | | | |
| Conduct monthly Advisory Council meetings | D & PM | | | | | | | | | | | | |
| Purchase  supplies (general, curricula, assessment, etc) | PM | | | | | | | | | | | | |
| Develop procedures and instruments for data collection | D & PM | | | | | | | | | | | | |
| Compile evaluation information for monthly/end of the year reports | PM | | | | | | | | | | | | |
| Review/ revise inter-agency referral, & intake policies/procedures | PM & AC | | | | | | | | | | | | |
| Establish inter-agency communications | PM & AC | | | | | | | | | | | | |
| Cross-train community partners and service agencies | PM | | | | | | | | | | | | |
| Contact and recruit at-risk families through community agencies | PM | | | | | | | | | | | | |
| Coordinate delivery of services based on intake assessments | PM | | | | | | | | | | | | |
| Conduct monthly *Active Parenting* workshops | PM | | | | | | | | | | | | |
| Secure resource materials for circulation to families | PM | | | | | | | | | | | | |
| Develop media campaign plan | D & PM | | | | | | | | | | | | |
| Implement media campaign | PM | | | | | | | | | | | | |
| Provide *Nurturing Parenting* home visitation services | PM | | | | | | | | | | | | |
| Conduct family interactive activities | PM & AC | | | | | | | | | | | | |
| Provide case management for concrete supports | PM | | | | | | | | | | | | |
| Provide referral services to families for community services | PM | | | | | | | | | | | | |
| Mobilize community support for families in crisis | PM & AC | | | | | | | | | | | | |
| Provide respite services for parents of targeted young children | PM & Childcare Provider | | | | | | | | | | | | |
| Conduct support groups for parents | PM | | | | | | | | | | | | |

Families most at-risk for child abuse and neglect residing in Oktibbeha County will be targeted for project services. Intensive, individualized services will be provided for these families (e.g. homeless, adult victims of abuse, and substance abuse). See table for a demographic profile of Oktibbeha County.

| Oktibbeha County | | |
|---|---|---|
| Population | | 47,671 |
| Ethnicity | White | 59.2% |
| | African American | 36.6% |
| Age | <19 yrs. of age | 26% |
| | Median age | 25.4 |

Universal services will be provided for one hundred twenty (120) families and targeted services for another forty (40) families and fifteen (15) expectant parents or parents of newborns.

Volunteer support will come from the community as well as those served through the project. The membership of the Advisory Council will include community volunteers. Project Care staff will also work with various agencies and organizations at Mississippi State University and in the community to enlist volunteers to assist in promoting and preparing for workshops, working with adults GED candidates, planning and conducting family activities, and guest speakers for family events. Special effort will involve enabling those receiving Project Care services to expand their social connections and support base and give them a voice in the development of program services.

Project Care will focus on facilitating systematic improvement, expanding collaborations, and cross-training for community agencies/organizations that serve targeted families. Project staff will enhance collaborations among community agencies and organizations. Inter-agency policies and procedures will be reviewed and revised as needed to ensure that the needs of children are addressed in an efficient, timely manner. This will involve aligning intake and assessment procedures to ensure results present a comprehensive assessment of the family's needs, strengths, and protective factors. Cross-training will ensure understanding of inter-agency policies and procedures. Increased inter-agency communications will be enhanced through newsletters, list serves, and meetings. Community agencies will be represented on the Advisory Council.

Project Care will conduct an extensive community public awareness campaign to heighten awareness of child abuse and prevention techniques, to educate the public on identifying and reporting abuse, and to emphasize positive parenting techniques. The media campaign will include newspaper ads, public service announcements, and articles; fliers; posters; brochures; newsletters; presentations at local clubs, faith-based groups, and organizations; and displays at local health fairs. The media campaign will also incorporate the use of the internet. Project staff and Advisory Council will plan public awareness activities and events for the community with a strong emphasis during national awareness month for Prevention of Child Abuse and Neglect. Increasing community awareness will also involve workshops for community groups (e.g. school personnel, childcare providers, social workers, religious and lay leaders, health care and mental health professionals, law enforcement, and foster parents) on the precursors to abuse, the impact on children, reporting processes and procedures, and protective factors.

# WORKSHEET 1 – SERVICE PLAN – IMPLEMENTATION
*Copy and complete additional pages as needed.*

Agency Name: ___Starkville School District_____

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| *What will you do? Identify service or activity.* | *Describe how many individuals and families you will serve at any given time and over the course of a year. Specify children, teens and adults.* | *Provide details on the frequency (how often), intensity (length of activity, duration (for how long), and location (physical site) where activity will occur. If this is a group activity, include number of participants per group.* | *Describe the individual who will provide the service. Include their qualifications.* | *Provide some evidence that supports this activity as a 'best practice' that will yield the outcomes you. Identify any model upon which services are based.* |
| Parenting classes/support groups utilizing *Active Parenting* | 120 adults | 8 hours of lessons provided through varied formats offered weekly at the Emerson Family Resource Center | Program Manager (degree in family studies, social work, counseling, or related field) | Evidence of *Active Parenting* as an EBP: Included in SAMHSA's National Registry of Evidence-based Programs and Practices; Increased knowledge of parenting and child development is a protective factor identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect. |

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| Resource materials | 120 or more adults | 5 days/week, 12 months a year from 8:00 AM – 5:00 PM at Emerson Family Resource Center | Program Manager (degree in family studies, social work, counseling, or related field) | Supports the protective factor, knowledge and child development and concrete supports, identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect. |
| Home visitation for expectant parents and parents of newborns | 15 mothers and infants including children with special needs | Up to 18 sessions; conducting in home and in group setting at Emerson Family School | Program Manager (degree in family studies, social work, counseling, or related field) | Evidence of *Nurturing Parenting* as an EBP:<br>• Promising Practice by the California Clearinghouse on EBP in Child Welfare<br>• Promising Programs by *SAMHSA Model Program NREPP*<br>• Promising by *OJJDP Model Programs Guide* |
| Family interactive activities and involvement in community through service and leadership | 40 adults | Interactive family social events will be conducted quarterly at the Emerson Family School. Family members will also be encouraged throughout the year to become engaged in various social avenues. | Program Manager (degree in family studies, social work, counseling, or related field) | Supports the protective factor, social connections, identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect. |

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| Case management for providing concrete supports | 40 families | Services will be provided during the regular operating hours of Emerson Family Resource Center Monday – Friday, 8:00 AM – 5:00 PM, 12 months a year | Program Manager (degree in family studies, social work, counseling, or related field) | Supports the protective factor, providing concrete supports, identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect. |
| Temporary respite care for families of young children while they pursue job prep/work, go to doctor visits, care for sick family members, participating in parenting classes, etc. | 40 children ages 6 weeks to 5 years | 4 mornings 8:00-12:00 at Emerson Family School for up to 10 children per morning | Program Manager (degree in family studies, social work, counseling, or related field)<br><br>2 Childcare Providers (High School Diploma [or equivalent] and experience working with young children) | Supports the protective factor, strengthening parental resilience, identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect.<br><br>Extensive research shows that respite is effective for lowering levels of stress and isolation (precursors to abuse/neglect) and delaying out-of-home placements for children (National Resource Center for CBCAP) ("Friends Factsheet #14") |

| Service or Activity | Who and how many will you serve? | How will you do it? | Who will do it? | Why will you do it? |
|---|---|---|---|---|
| Support groups | 40 adults | Link individuals to groups of people with similar problems and concerns to meet regularly as a group scheduled at times convenient to those involved.  Meeting will take place at Emerson Family Resource Center. | Program Manager (degree in family studies, social work, counseling, or related field) | Supports the protective factor, strengthening parental resilience, identified by the Center for the Study of Social Policy and the Child Welfare Information Gateway as a factor for reducing child abuse and neglect. |
| Educate the community regarding factors associated with child abuse and neglect | Oktibbeha County residents | Month of April, Child Abuse Awareness month

4 advertisements in the local newspaper annually

Increased coordination of prevention services through participation in the Emerson Family Resource Center Advisory Council

Work with Oktibbeha County-wide Blue Ribbon Campaign

Work with Oktibbeha County Emerson Family Resource Center to educate childcare providers to identify and report child abuse | Project Manager | N/A |

## WORKSHEET 2 - GOALS, OUTCOMES, AND EVALUATION PLAN

Organization Name:  Starkville School District

**Goal 1.** To prevent child abuse and improve well-being among children and families at risk, through the provision of supportive family services.

| Measurable Outcome(s) | Strategies | Timeline | Evaluation Measures | Staff Responsible |
|---|---|---|---|---|
| **Outcome 1.1** Of the **120** families who register for and complete parent education classes 80% will demonstrate increased parenting skills by September 2013. | Plan and provide 11 parenting education through workshops. | November 2012 – September 2013 | Enrollment/attendance records<br>Pre/post tests<br>3-6 month follow-up surveys | Program Manager |
| **Outcome 1.2** Of the 15 expectant parents or parents of infants who enroll in and complete home visitation program 80% will demonstrate increased bonding with their children and increased parenting skills by September 2013. | Conduct 18 home visits for expectant parents or parents of infants from birth up to 1 year of age. | November 2012 – September 2013 | Pre/post tests/surveys<br>Observation<br>Developmental Observation Checklist (DOCS)<br>Curriculum-based assessments | Program Manager |
| **Outcome 1.3** Of the 40 families receiving targeted support services including concrete supports, social connections and respite care 80% will report satisfaction with the degree to which these supports promoted resiliency through acute or chronic crises by September 2013. | Provide targeted families case management services:<br>• To address concrete needs<br>• To provide temporary respite care for families with young children<br>• Encourage social connections for families | October 2012 – September 2012 | Enrollment/attendance records<br>Pre/post tests<br>Observation<br>Follow-up surveys<br>The Protective Factors Survey | Program Manager |

Exhibit A, Scope of Services

11

| Goal 2: To support coordinated community-based efforts to develop, operate, expand, enhance, and, where appropriate to network, initiatives aimed at the prevention of child abuse and neglect. | | | | |
|---|---|---|---|---|
| **Measurable Outcome(s)** | **Strategies** | **Timeline** | **Evaluation Measures** | **Staff Responsible** |
| **Outcome 2.1** 80% of the Advisory Council will report improved coordination of prevention services in the community resulting in a strong referral process between community based and public agencies by September 2013. | Involve representatives from community agencies to participate in Advisory Council. | October 2012 – September 2013 | Advisory Council membership | Program Manager |
| | Review and revise inter-agency policies and procedures  and align intake and assessment tools and protocols | November 2012– January 2013 | Minutes of meetings and resulting documents of adjustments in policies and procedures | |
| | Increase inter-agency communications through newsletters, list serves, and meetings. | October 2012 – September 2013 | Documents of communications<br><br>End of the year survey of Advisory Council | |
| **Outcome 2.2** Of the 170 families receiving universal and targeted services 80% will report satisfaction with the referral process for support services by September 2013. | Provide resource and referral services for participants in need of community services | October 2012 – September 2013 | Documentation of referral requests & follow-up with receiving community agencies regarding how needs were addressed | Program Manager |

| Goal 3: To increase community awareness of the protective factors that strengthen families and reduce the incidence of child abuse and neglect. | | | | |
|---|---|---|---|---|
| **Measurable Outcome(s)** | **Strategies** | **Timeline** | **Evaluation Measures** | **Staff Responsible** |
| **Outcome 3.1** The results of the annual Emerson Family Resource Center community survey will show that the percentage of respondents that consider child abuse a "very important" family issues in Oktibbeha County will decrease from 71% (2011) to no more than 60% by September 2013. | Increase community awareness of protective factors:<br>• Parent resilience<br>• Concrete supports<br>• Knowledge of parenting and child and youth development<br>• Social connections<br>• Social and emotional competence of children | October 2012 – September 2013 | Emerson Family Resource Center community survey | Project Manager |
| **Outcome 3.2** The number of substantiated cases of child abuse in Oktibbeha County will decrease by 25% by September 2013. | | | MS Department of Human Services annual report | Project Manager |

# EXHIBIT B
# Modified Mississippi Settlement Agreement and Reform Plan

# EXHIBIT C
# Budget

# STARKVILLE SCHOOL DISTRICT
### OCTOBER 1, 2012 - SEPTEMBER 30, 2013

| | | CBCAP | Match | Total |
|---|---|---|---|---|
| **ADMINISTRATIVE BUDGET** | | | | |
| **Salaries** | | | | |
| Project Manager - FT, 50% annual rate $35,000 | | $ 17,500.00 | | $ 17,500.00 |
| | Total | $ 17,500.00 | | $ 17,500.00 |
| **Fringe Benefits** | | | | |
| Employer's FICA 7.65% of total salaries ($17,500) | | $ 1,338.75 | | $ 1,338.75 |
| Retirement 14.26% x eligible salaries ($17,500) | | $ 2,495.50 | | $ 2,495.50 |
| Health Insurance 1 employee @ 50% x $359/month x 12 months | | $ 2,154.00 | | $ 2,154.00 |
| Workers' Compensation .60% of total salaries ($17,500) | | $ 105.00 | | $ 105.00 |
| Unemployment Insurance 2% of first $14,000 in salaries x 1 employee x 50% | | $ 140.00 | | $ 140.00 |
| Life Insurance $3.09/mo x 12 months (for 1 employee) | | $ 37.08 | | $ 37.08 |
| | Total | $ 6,270.33 | | $ 6,270.33 |
| *TOTAL ADMINISTRATIVE BUDGET* | | $ 23,770.33 | | $ 23,770.33 |
| | | | | |
| **PROGRAMMATIC BUDGET** | | | | |
| **Salaries** | | | | |
| Project Manager - FT, 50% annual rate $35,000 | | $ 17,500.00 | | $ 17,500.00 |
| Resource Assistant FT $10.00/hr. x 7 hrs./day x 232 days | | $ 16,240.00 | | $ 16,240.00 |
| Childcare Provider PT - for childcare during parent workshops, support groups, etc $8.00/hr. x 16 hrs./wk x 48 wks | | $ 6,144.00 | | $ 6,144.00 |
| | Total | $ 39,884.00 | | $ 39,884.00 |
| **Fringe Benefits** | | | | |
| Employer's FICA 7.65% of total salaries | | $ 3,051.13 | | $ 3,051.13 |
| Retirement 14.26% x eligible salaries (FT total salaries $33,740) | | $ 4,811.32 | | $ 4,811.32 |
| Health Insurance 1 employee x $359/month x 12 months & 1 employee @ 50% | | $ 6,462.00 | | $ 6,462.00 |
| Workers' Compensation .60% of total salaries | | $ 239.30 | | $ 239.30 |
| Unemployment Insurance 2% of first $14,000 in salaries x 1FT & 1 employee @ 50% | | $ 420.00 | | $ 420.00 |
| Life Insurance $9.27/mo x 12 months (for 1.5 employees) | | $ 111.24 | | $ 111.24 |
| | Total | $ 15,094.99 | | $ 15,094.99 |
| **Travel** | | | | |
| MDHS Training Meeting | | | | |
| Mileage 242 miles x $.51/mi *(Mileage will be computed at the specified rate or at the state approved mileage rate-not to exceed the total budgeted amount.)* | | $ 123.42 | | $ 123.42 |
| Mileage for home visits 15 homes x 18 visits/yr x av. 15.5 mi/visit x $.51 | | | $ 2,134.35 | $ 2,134.35 |
| | Total | $ 123.42 | $ 2,134.35 | $ 2,257.77 |
| **Commodities** | | | | |
| Items such as but not limited to the following: | | | | |
| Office Supplies $125/month x 12 months for general operation of the project | | $ 1,500.00 | | $ 1,500.00 |
| Supplies & materials for family interactive activities $400 x 3 activities | | $ 1,200.00 | | $ 1,200.00 |
| Donated supplies & materials for family interactive activities 605.65 for 3 activities | | | $ 605.65 | $ 605.65 |
| Workshop supplies $150/mo x 11 | | $ 1,650.00 | | $ 1,650.00 |
| Curricula: Nurturing Parenting (manuals, parent guides, videos,etc) $1025 | | | | |
| *Active Parenting* Leader Kit 1 x $400; Parent's Guides 120/yr x $25 | | $ 4,425.00 | | $ 4,425.00 |
| *Developmental Observation Checklist (DOCS)* $190 | | $ 190.00 | | $ 190.00 |
| Advisory Council meeting supplies $100/month x 12 months | | $ 1,200.00 | | $ 1,200.00 |
| Resource library materials and supplies $400/mo x 12 months | | $ 4,800.00 | | $ 4,800.00 |
| Training supplies (professional development, community leaders, etc) $45 x 30 | | $ 1,350.00 | | $ 1,350.00 |
| Promotional supplies (brochures, fliers, etc) $50/mo x 12 months | | $ 600.00 | | $ 600.00 |
| Book and material donations av. $12/ea x 605 items | | | $ 7,260.00 | $ 7,260.00 |
| | Total | $ 16,915.00 | $ 7,865.65 | $ 24,780.65 |
| | | | | |
| **Contractual** | | | | |
| Volunteers - 1000 hrs. x $15.00/hr. | | | $ 15,000.00 | $ 15,000.00 |
| Printing/Copier charges .05 x 3000/month x 12 (manuals, forms, brochures, etc) | | $ 1,800.00 | | $ 1,800.00 |
| Media campaign averaging $150/mo x 12 months | | $ 1,800.00 | | $ 1,800.00 |
| Postage for communicating with project participants | | $ 612.26 | | $ 612.26 |
| | Total | $ 4,212.26 | $ 15,000.00 | $ 19,212.26 |
| *TOTAL PROGRAMMATIC BUDGET* | | $ 76,229.67 | $ 25,000.00 | $ 101,229.67 |
| | **TOTAL GRANT** | **$ 100,000.00** | **$ 25,000.00** | **$ 125,000.00** |

*Exhibit C, Budget*                                  1

# Standard Assurances

## STANDARD ASSURANCES AND CERTIFICATIONS

### OVERVIEW

Each Subgrantee and any lower-tier subrecipient must assure that it will comply with the regulations, policies, guidelines, and requirements imposed by the Federal grantor agency and MDHS. The MDHS Subgrantee must also ensure that any lower-tier subgrants it issues through funds received from MDHS will require the lower-tier subrecipient to comply with these same regulations. The assurances listed in this section may not be applicable to a particular project or program, and there may be additional assurances required by certain Federal awarding agencies.

In addition, each subgrantee must certify in writing that it will comply with the following regulations:

- Lobbying
- Suspension and Debarment
- Drug-Free Workplace
- Unresolved Monitoring and Audit Findings
- Fidelity Bond Coverage

### STANDARD ASSURANCES

The Subgrantee assures that it:

1.  has the legal authority to apply for and receive the subgrant; that a resolution, motion, or similar action has been duly adopted or passed as an official act of the subgrantee's governing body, authorizing the subgrant, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the Subgrantee to act in connection with the subgrant and to provide such additional information as may be required.

2.  will give MDHS, the State Auditor's Office, the Federal grantor agency, and the Comptroller General, or any of their authorized representatives, access to and the right to examine all records, books, papers, documents, or items related to the subgrant.

3.  will establish and maintain both fiscal and program controls and accounting procedures in accordance with generally accepted accounting principles and Federal grantor agency and MDHS directives; and will keep and maintain such books and records for audit by MDHS, by the Federal grantor agency, by the State Auditor, or by their authorized representatives; and will maintain all such records, books, papers, documents, or items for a period of at least three (3) years from the date of submission of the final reporting worksheet, or, if any litigation, claim,

STANDARD ASSURANCES AND CERTIFICATIONS

audit, or action has begun before the expiration of the three-year period, will retain all such items until the completion of the action and resolution of all issues involved or until the end of the regular three-year period, whichever is later.

4.    will comply with the Single Audit Act Amendments of 1996.

5.    will establish safeguards to prohibit employees from using their positions for a purpose that constitutes, or presents the appearance of, personal or organizational conflict of interest, or personal gain.

6.    will comply with all Federal and State statutes relating to discrimination, including, but not limited to:

Title VI of the Civil Rights Act of 1964, prohibiting discrimination on the basis of race, color, or national origin;

Title VII of the Civil Rights Act of 1964, relating to non-discrimination in matters of recruitment, hiring, promotion, and other employment practices;

Title VIII of the Civil Rights Act of 1968, as amended, relating to non-discrimination in the sale, rental, or financing of housing;

Title IX of the Education Amendments of 1972, as amended, prohibiting discrimination on the basis of sex in federally assisted education programs and activities;

the Age Discrimination Act of 1975, prohibiting discrimination on the basis of age;

Section 504 of the Rehabilitation Act of 1973, prohibiting discrimination on the basis of handicaps;

Subtitle A, Title II of the Americans with Disabilities Act (ADA) (1990);

the Omnibus Reconciliation Act of 1981, prohibiting discrimination on the basis of race, color, religion, sex, national origin, age, and handicap;

the Drug Abuse Office and Treatment Act of 1972, as amended, relating to non-discrimination on the basis of drug abuse;

the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970, as amended, relating to non-discrimination on the basis of alcohol abuse or alcoholism; and,

Sections 523 and 527 of the Public Health Service Act of 1912, as amended, relating to confidentiality of alcohol and drug abuse patient records; and any other non-discrimination

## STANDARD ASSURANCES AND CERTIFICATIONS

provisions in the specific statute(s) under which these monies will be granted or awarded and the requirements of any other non-discrimination statute(s) which may apply to this subgrant or award.

7.     will ensure that buildings and facilities owned, occupied, or financed by the United States government are accessible to and usable by physically handicapped persons in accordance with the Architectural Barriers Act of 1968.

8.     will comply with the requirements of the provisions of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, which provide for fair and equitable treatment of persons displaced or whose property is acquired as a result of Federal and federally assisted programs. These provisions apply to all interests in real property acquired for project purposes regardless of Federal participation in purchases.

9.     will comply with the provisions of the Hatch Act, as amended, which limit the political activities of employees whose principal employment activities are funded in whole or in part with Federal funds.

10.    will comply, as applicable, with the provisions of the Davis-Bacon Act, the Copeland Act, and the Contract Work Hours and Safety Standards Act, regarding labor standards for federally assisted construction subagreements.

11.    will conform with Executive Order (EO) 11246, entitled "Equal Employment Opportunity," as amended by EO 11375, and as supplemented in Department of Labor regulations (41 CFR Part 60) and will incorporate an equal opportunity clause in federally assisted construction contracts and subcontracts.

12.    will comply with the minimum wage and maximum hours provisions of the Federal Fair Labor Standards Act.

13.    will comply with the Intergovernmental Personnel Act of 1970 relating to prescribed standards for merit systems for programs funded under one of the 19 statutes or regulations specified in Appendix A of OPM's Standards for a Merit System of Personnel Administration.

14.    will comply, if applicable, with Section 102(a) of the Flood Disaster Protection Act of 1973, which requires recipients in a special flood hazard area to participate in the program and to purchase flood insurance if the total cost of insurable construction and acquisition is $10,000 or more.

15.    will comply with the Lead-Based Paint Poisoning Prevention Act, which prohibits the use of lead-based paint in construction or rehabilitation of residence structures.

16.    will assist the Federal grantor agency in assuring compliance with Section 106 of the    National Historic Preservation Act of 1966, as amended; EO 11593; and the Archaeological and Historic Preservation Act of 1974.

## STANDARD ASSURANCES AND CERTIFICATIONS

17.   will comply with environmental standards which may be prescribed pursuant to the following: (a) institution of environmental quality control measures under the National Environmental Policy Act of 1969 and EO 11514; (b) notification of violating facilities pursuant to EO 11738; (c) protection of wetlands pursuant to EO 11990; (d) evaluation of flood hazards in flood plains in accordance with EO 11988; (e) assurance of project consistency with the approved State management program developed under the Coastal Zone Management Act of 1972; (f) conformity of Federal actions to State (Clean Air) Implementation Plans under Section 176 of the Clean Air Act of 1955, as amended; (g) protection of underground sources of drinking water under the Safe Drinking Water Act of 1974, as amended; (h) protection of endangered species under the Endangered Species Act of 1973, as amended; (I) Section 6002 of the Resource Conservation and Recovery Act; and (j) the Coastal Barriers Resources Act.

18.   will comply with the Wild and Scenic Rivers Act of 1968 related to protecting components or potential components of the national wild and scenic rivers system.

19.   will comply with Public Law (PL) 93-348 regarding the protection of human subjects involved in research, development and related activities supported by this subgrant.

20.   will comply with the Laboratory Animal Act of 1966 pertaining to the care, handling, and treatment of warm blooded animals held for research, teaching, or other activities supported by this subgrant.

21.   will comply with Federal regulations regarding criteria for cost sharing or matching contributions.

22.   will assure all funds received shall be used only to supplement services and activities that promote the purposes for which the grant is awarded, and not supplant, unless specifically authorized by the program regulations and the appropriate MDHS Division.

23.   will provide certification regarding lobbying to comply with Section 319, PL 101-121 (31 USC 1352).

24.   will provide the required certification regarding their exclusion status and that of their principals prior to the award in accordance with EOs 12549 and 12689 Debarment and Suspension.

25.   will provide certification to comply with the Drug-Free Workplace Act of 1988.

26.   will comply with all applicable requirements of all other Federal and State laws, Executive Orders, regulations, and policies governing the program(s) for which these monies are provided and with the terms and conditions of the Subgrant Agreement.

## STANDARD ASSURANCES AND CERTIFICATIONS

### REQUIRED CERTIFICATIONS

#### I. LOBBYING

As required by Section 1352, Title 31 of the U.S. Code, the Subgrantee certifies that:

A.  No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

B.  If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress, in connection with this Federal grant or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities," in accordance with its instructions;

C.  The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants, contracts under grants and cooperative agreements, and subcontracts) and that all subrecipients shall certify and disclose accordingly.

#### II. SUSPENSION AND DEBARMENT
#### AND OTHER RESPONSIBILITY MATTERS (DIRECT RECIPIENT)

As required by Executive Order 12549 and 12689, Suspension and Debarment—

A.  The Subgrantee certifies that it and its principals: (a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by a Federal department or agency;

(b) Have not within a three-year period preceding this subgrant been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this subgrant had one or more public transactions (Federal, State, or local) terminated for cause or default; and

B.  Where the Subgrantee is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this form.

Page 6

## STANDARD ASSURANCES AND CERTIFICATIONS

REQUIRED CERTIFICATIONS (Continued)

### III. DRUG-FREE WORKPLACE (SUBGRANTEES WHO ARE INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988--

A.    As a condition of the subgrant, I certify that I will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity with the subgrant; and

B.    If convicted of a criminal drug offence resulting from a violation occurring during the conduct of any subgrant activity, I will report the conviction, in writing, within 10 calendar days of the conviction to MDHS.

OR

### III. DRUG-FREE WORKPLACE (SUBGRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988 –

A.    The Subgrantee certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the subgrantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about --

(1) The dangers of drug abuse in the workplace;
(2) The subgrantee's policy of maintaining a drug-free workplace;
(3) Any available drug counseling, rehabilitation, and employee assistance programs; and
(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace.

(c) Making it a requirement that each employee to be engaged in the performance of the subgrant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the subgrant, the employee will –

(1) Abide by the terms of the statement; and
(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying MDHS, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title to MDHS. Notice shall include the identification number(s) of each affected grant;

## STANDARD ASSURANCES AND CERTIFICATIONS

### III. DRUG FREE WORKPLACE (SUBGRANTEES OTHER THAN INDIVIDUALS) - Continued

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted –

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirement of the Rehabilitation Act of 1973, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposed by a Federal, State, or local health, law enforcement, or other appropriate agency.

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of

    paragraphs (a), (b), (c), (d), (e), and (f).

B. The Subgrantee may insert in the space provided below the site(s) for the performance of work done in connection with the specific subgrant. Check if there are workplaces on file that are not identified here:

Place of Performance (Street address, city, county, state, zip code)

    Emerson Family School  1054 S. Louisville Street, Oktibbeha Co.

    Starkville, MS  39759

_____

_____

### IV. UNRESOLVED MONITORING FINDINGS; UNRESOLVED AUDIT FINDINGS; AND LITIGATION OCCURRING WITHIN THE LAST THREE (3) YEARS

Identify any unresolved monitoring findings related to any programs that have been received by the Subgrantee during the last three (3) years and the status of each finding:

    n/a

_____

_____

Identify any unresolved audit findings related to any programs received by the Subgrantee during the last three (3) years and the status of each finding:

    n/a

_____

Identify any litigation and/or administrative hearings that the Subgrantee, the Subgrantee's Senior Management, or Subgrantee's Directors have been involved in during the last three (3) years, including the outcome or disposition of the case:

    n/a

_____

## STANDARD ASSURANCES AND CERTIFICATIONS
### REQUIRED CERTIFICATIONS (Continued)

**V. CERTIFICATION OF ADEQUATE FIDELITY BONDING**

Identify any and all types of bond coverage currently in force. Include the types of bond coverage; the officers or owners and employees covered; the period covered by the bond; and the limits of coverage assigned to each officer, owner, or employee and the total limit of the bond as applicable.

attached

For Subgrantees/Contractors that have been unable to obtain fidelity bond coverage, describe in detail the efforts made to obtain fidelity bond coverage and the reason coverage has not been obtained.

As the authorized representative of the subgrantee, I hereby certify that the subgrantee will comply with the above certifications in items I, II, and III; the information provided items III, IV and V is true and complete to the best of my knowledge, and that the coverage and amounts specified shall be maintained throughout the effective period of the subgrant.

SUBGRANTEE NAME AND ANY OTHER NAMES UNDER WHICH THE SUBGRANTEE HAS DONE BUSINESS:

Starkville School District

SUBGRANTEE ADDRESS AND ANY OTHER ADDRESSES THE SUBGRANTEE HAS USED:

401 Greensboro Street, Starkville, MS  39759

TYPED NAME AND TITLE OF THE SUBGRANTEE'S AUTHORIZED REPRESENTATIVE

Dr. Lewis Holloway, Superintendent

SIGNATURE OF SUBGRANTEE'S AUTHORIZED REPRESENTATIVE AND DATE:

9/12/12

# Subgrantee Acceptance Manual

*Revised October 24, 2008*

## MDHS Subgrantee Manual Acceptance Form

Subgrantee Manual Coordinator

Each Subgrantee should designate a Mississippi Department of Human Services Subgrantee Manual coordinator who is familiar with the agency's operations. The coordinator's name, address, and telephone number should be sent directly to the Director, Office of Monitoring, Mississippi Department of Human Services, by the beginning of each contract period. The subgrantee should only notify the Director, Office of Monitoring, MDHS, in writing of any change in assignment.

As duly authorized representative of         Starkville School District

_____, I certify that said organization will comply with the above provisions and that I have received as of this date, a copy of the Mississippi Department of Human Services Subgrantee Manual, *[including Addenda to the MDHS Subgrantee/Contract Manual.]*

_____          9/12/12
Signature                                Date

Superintendent                           Starkville School District
_____          _____
Title                                    Organization

# Notification
# Of
# Liability

# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## BOARD MEMBER'S NOTIFICATION OF LIABILITY
### LIABILITY

MDHS assumes no liability for actions of the Subgrantee or its employees, agents or representatives under this Subgrant. Subgrantee agrees to indemnify, defend, save and hold harmless MDHS from and against all claims, demands, liabilities, suits, damages and costs of every kind and nature whatsoever, including court costs and attorney's fees, arising out of or caused by Subgrantee and/or its agents, employees, contractors, or subcontractors, in the performance of this Subgrant. The Subgrantee acting through its Board of Directors assumes liability in the event the Subgrantee misuses funds or fails to perform according to the provisions of the Subgrant. The Subgrantee shall notify each Board member, in writing, within 15 days of receiving the executed Subgrant of this requirement, and the Subgrantee shall sign a statement to this effect prior to receiving funds under this subgrant.

I acknowledge and agree to notify all members of the Board of Directors, if applicable, in writing of the assumption by ___Starkville School District___ of liability in the event that ___Starkville School District___ misuses funds or fails to perform according to the provisions of the Subgrant. Further, I will keep a copy of said notification letter as a permanent part of the Subgrant file.

Signature of Entity's Director _____

Name: ___Dr. Lewis Holloway___

Organization: ___Starkville School District___

Date: ___9/12/12___

Witness: _____

Date: ___9/12/12___

1

# Fidelity Bond



# Western Surety Company

## OFFICIAL BOND AND OATH

KNOW ALL PERSONS BY THESE PRESENTS:

Bond No. ___71294068___

That we, Lewis Holloway_____ , as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do business in the State of _Mississippi_____ , as Surety, are held and firmly bound unto the Starkville School District, State of Mississippi _____ in the penal sum of One Hundred Thousand and 00/100_____ DOLLARS ( $100,000.00_____ ), to the payment of which sum, well and truly to be made, we jointly and severally bind ourselves and our legal representatives firmly by these presents.

Dated this___26th___ day of _____June_____ , _2012_ .

THE CONDITION OF THIS OBLIGATION IS SUCH, That whereas, the said Principal was duly
☐ elected
☒ appointed to the office of _____Superintendent_____ in the _____ of Starkville School District_____ , State of Mississippi_____ , for the term commencing on the ___1st___ day of _____July_____ , _2012_ , and ending on the _1st_____ day of _July_____ , ____2013___ .

NOW THEREFORE, if the said Principal shall faithfully perform the duties of his said office, then this obligation shall be void and of no effect, otherwise to remain in full force and effect.

_____
Principal

COUNTERSIGNED                                      WESTERN SURETY COMPANY
BY_____                     By_____
  Resident Agent                                              Paul T. Bruflat, Senior Vice President

APPROVAL
I have inspected the above Bond and do hereby certify that the same is sufficient.

_____

_____
Approving Officer's Title _____

## OATH OF OFFICE

STATE OF _Mississippi_ }
County of _Oktibbeha_ } ss

_Lewis Holloway_____ , being duly sworn, says that he will support the Constitution of the United States and the Constitution of the State of _Mississippi_____ and that he will faithfully discharge the duties of his said office as _Superintendent_____
                                                                                                      Principal

Sworn to before me and signed in my presence this _6th_ day of _July_ , _2012_

My commission expires

_4-5_ , _2013_                          Title of Officer _Deborah R. Sice_

Form 1225-10-2009

49  49