

DEPARTMENT OF HEALTH & HUMAN SERVICES

ADMINISTRATION for CHILDREN and FAMILIES
**Administration on Children, Youth and Families**
1250 Maryland Avenue, S.W.
Washington, D.C. 20024

JAN 1 5 2014

Richard A. Berry, Executive Director
Mississippi Department of Human Services
750 North State Street
Jackson, Mississippi 39205



RECEIVED

JAN 2 2 2014

Dear Mr. Berry:

On August 27, 2012, Children's Bureau (CB) issued Information Memorandum ACYF-CB-IM-12-07 on establishing and maintaining continuous quality improvement (CQI) systems (http://www.acf.hhs.gov/sites/default/files/cb/im1207.pdf). This information memorandum (IM) provided states with CB's current view of a framework for a State CQI system that is well-functioning in accordance with existing federal requirements for Quality Assurance (QA) (CFR 1357.15(u)).

In addition, on April 10, 2013, CB issued Program Instruction ACYF-CB-PI-13-04 to States on requirements for submission of the Annual Progress and Services Report (APSR). In the Program Instruction (PI), States were instructed to provide the following information:
•       An assessment of the State's current QA/CQI system based on IM-12-07 and any improvements elected or planned;
•       Any training or technical assistance (TTA) the State anticipates needing from CB or any other partners; and
•       Any specific practice or systems improvements the State has made since the last APSR based on QA/CQI findings.

IM-12-07 specified CB's intention to provide consultation and technical assistance to states with the goal of assisting implementation of well-functioning QA/CQI systems. Following the release of the IM, we began a dialogue with you about QA/CQI and the 5 functional components:

• an administrative structure to oversee effective CQI system functioning;
•  quality data collection;
• ongoing case reviews;
• analysis and dissemination of quality data on all performance measures; and
• feedback to stakeholders and decision makers and as needed, adjusting state programs and processes.

The goals of the various discussions were to create a shared language/foundation of CQI; explore elements of CQI components; and reflect on the processes that currently exemplify CQI practices in your system.

One of the key drivers in the Mississippi child welfare system is the settlement agreement implemented pursuant to the Olivia Y. class action lawsuit, filed in March 2004. In January 2008, the federal court approved the Olivia Y. Settlement Agreement (SA) and as part of the SA,



**EXHIBIT**

P

DHS 374506

DHS 374507

Page 2 – Richard A. Berry

Mississippi is implementing several systemic changes, one of which is a CQI system framed within a new child welfare practice model. Mississippi is also seeking accreditation through the Council on Accreditation whose accreditation standards are congruent with many of the SA requirements and the practice and systemic changes the State is seeking to make. To assist in implementing these major initiatives, the State contracted with the Center for the Support of Families, Inc. (CSF) in February of 2009 and CSF remains a vital and integral part of State's CQI activities.

During our assessment of Mississippi's CQI system, we used a variety of sources of information including, but not limited to, reports from the SA court monitor, Mississippi Practice Model summary, Child and Family Services Plan, Annual Progress and Services Report, and the Child and Family Services Review Program Improvement Plan. This letter initiates the consultation process during which we would like to work collaboratively with you to identify both the strengths in your current CQI system and areas where you would like further technical assistance to improve your system.

The attachment provides a summary of our understanding of Mississippi's current CQI system functioning across the five components at this time. We recognize that there may be resource, capacity, and other contextual issues that play a role in improvement efforts and would like to explore potential TA needs as we continue our conversations around your CQI process. We welcome any additional information, corrections or feedback so that, together, we have a full picture of your QA/CQI system including any challenges and opportunities facing Mississippi at this time. We look forward to working with you to improve your QA/CQI system. Please contact your Child Welfare Program Specialist, Anthony Bingham at 404.562.0019 or by email at anthony.bingham@acf.hhs.gov if you have any questions or concerns.

Sincerely,

Paul J. Kirisitz
Acting Regional IV Program Manager
Children's Bureau


Enclosures:    Summary of Mississippi's CQI System
               ACYF-CB-IM-12-07
               ACYF-CB-PI-13-04

cc:    Cindy Greer, Director of CQI, Jackson, MS
       Anthony Bingham, Child Welfare Program Specialist, Reg. IV, Atlanta, GA

DHS 374509

# Feedback on Mississippi's Continuous Quality Improvement (CQI) System

## I.    Foundational Administrative Structure

As a result of the Olivia Y. Settlement Agreement (SA), Mississippi is in the process of implementing a statewide CQI system framed within a new child welfare practice model. To assist in developing and implementing the practice model and the CQI system, Mississippi contracted with the Center for the Support of Families, Inc. (CSF) in February 2009. The CQI system was implemented concurrently with the practice model with interim CQI activities that was to be implemented statewide.

The State's CQI structure includes four components: 1) State Office CQI Unit; 2) Local CQI processes; 3) State CQI Team; and 4) Local CQI Teams. The State Office CQI Unit is responsible for administering statewide CQI functions which include case record reviews, the Mississippi Automated Child Welfare Information System (MACWIS) Unit, and coordination of Council on Accreditation (COA) and court improvement activities. The Mississippi CQI system reportedly includes local CQI processes that supplement state CQI activities, engagement of both internal and external stakeholders and program improvement activities. There are written policies and procedures for the statewide CQI process and it appears as if some training is offered for CQI staff, such as data-related training and monthly webinars and Data-to-Action meetings with regional offices.

There are, however, some areas of the statewide CQI system that we would like to explore further with the state. One of these areas is how the CSF contract supports CQI activities, such as data collection, analyses, reporting and training, in the state. Another is how different components of the state and local CQI systems inter-relate and function, especially in the context of interim CQI activities that should be occurring as the practice model is implemented and monitored. We are particularly interested in learning about the local CQI activities and whether policies, procedures and training for CQI staff are available at local levels. Finally, we look forward to future discussions with the state regarding how the major initiatives undertaken by the state in response to the SA are coordinated and implemented seamlessly with other initiatives in the state, such as the Child and Family Services Review Program Improvement Plan and COA accreditation, and whether there are any resources or capacities issues that have surfaced for the state.

## II.    Quality Data Collection

Mississippi collects both quantitative and qualitative data that help inform outcomes for children and families, agency and staff practices and key systems that impact the child welfare system in the state. The primary sources of data are reported to be from MACWIS, Foster Care Reviews (FCR), Periodic Administrative Reviews (PAD), and the Evaluation and Monitoring Unit's (EM) case record reviews. Mississippi is planning to develop and implement both a data warehouse and a new Statewide Automated Child Welfare Information System (SACWIS) in the near future, which will hopefully strengthen collection, analysis and reporting of quality data.

DHS 374511

| **ACF**<br><br>Administration<br><br>for Children<br><br>and Families | U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>Administration on Children, Youth and Families |  |
|---|---|---|
|  | **1. Log No:** ACYF-CB-IM-12-07 | **2. Issuance Date:** August 27, 2012 |
|  | **3. Originating Office:** Children's Bureau |  |
|  | **4. Key Words:** Continuous Quality Improvement in Title IV-B and IV-E Programs |  |

## INFORMATION MEMORANDUM

**To:** State Agencies Administering or Supervising the Administration of Titles IV-B and IV-E of the Social Security Act.

**Subject:** Establishing and Maintaining Continuous Quality Improvement (CQI) Systems in State Child Welfare Agencies.

**Purpose:** To provide State title IV-B and IV-E child welfare agencies with information to establish and maintain CQI systems and to provide information on claiming allowable federal financial participation costs for CQI.

**Legal and Related References:** Public Law (Pub. L.) 110-351, Sections 422(b)(14), 422(c), 434(d), 471(a)(7), 471(a)(22) and 474(a)(3) of the Social Security Act (the Act); 45 CFR 1355.32, 45 CFR 1355.34(c)(3), 45 CFR 1355.52-53 and 45 CFR 1357.15; ACYF-CB-PI-10-11; ACYF-CB-IM-12-04, Child Welfare Policy Manual (CWPM) 8.1B Q/A 1 and CWPM 8.1H Q/A 9 and 10.

**Background:**
Existing regulations require States to describe the quality assurance (QA) system the State has in place to "regularly assess the quality of services under the Child and Family Services Plan (CFSP) and assure that there will be measures to address identified problems" as part of the CFSP (45 CFR 1357.15(u)). In addition to the CFSP requirement, title IV-E requires title IV-E agencies to monitor and conduct periodic evaluations of activities conducted under the title IV-E program and to implement standards to ensure that children in foster care are provided quality services that protect the safety and health of such children (sections 471(a)(7) and 471(a)(22) of the Act), respectively.

In accordance with 45 CFR 1355.34(c)(3), in the first round of the Child and Family Services Reviews (CFSR) the Children's Bureau (CB) found that 31 States met basic requirements for identifiable QA systems that evaluated the quality of services and improvements at the time of the CFSR onsite review. This number increased to 40 States in the second round of the CFSR. However, CB later found that in the course of the program improvement plan phase, many State QA systems needed extensive refinements to assess and measure improvements on an ongoing basis specifically with regard to CFSR outcomes and systemic factors. Further, for various

DHS 374512

reasons some States have dismantled aspects of their QA systems upon completion of their second round CFSR measurement periods.

During this interim period while we consider how to revise the CFSR process, States are advised to maintain their QA systems and enhance them through a continuous quality improvement approach. A continuous quality improvement approach allows States to measure the quality of services provided by determining the impact those services have on child and family level outcomes and functioning and the effectiveness of processes and systems in operation in the State and/or required by Federal law.

We believe that such an approach will better position States to work towards and/or demonstrate that they are able to meet positive outcomes for children, youth and families and compliance with Federal title IV-B and title IV-E requirements. In addition, in response to the April 2011 Federal Register notice [76 FR 18677] requesting public comments in improving the process of reviewing titles IV-B and IV-E through the CFSR, States and other stakeholders suggested a strengthening of States' overarching QA systems to encompass continuous quality improvement (CQI) methods. Commenters suggested that such systems should play a prominent role in federal monitoring of conformity with title IV-B and IV-E requirements and in State-driven assessment, refinement, and improvement. We believe that this suggestion has merit and is another reason for States to develop well-functioning CQI systems.

This information memorandum does not establish requirements, but is intended to provide States with CB's current view on a framework for a well-functioning State CQI system for child welfare that would also meet existing federal requirements for QA, periodic evaluation and delivery of quality services. CB intends to provide consultation and technical assistance to States with the goal of ensuring that States are able to have well-functioning CQI systems that meet their needs and are in place prior to the next round of reviews.

This framework for CQI does not apply to Indian Tribes. CB plans to consult with Indian Tribes operating title IV-B and/or IV-E programs around developing CQI systems that meet Tribal needs. However, Indian Tribes are encouraged to review their ability for self-assessment and self-improvement through CQI and to partner with CB so that we can assist those Tribal agencies that would like to implement or enhance their CQI capacities.

**Functional Components and Definition of a CQI System**

Continuous quality improvement (CQI) is ─the complete process of identifying, describing, and analyzing strengths and problems and then testing, implementing, learning from, and revising solutions. It relies on an organizational culture that is proactive and supports continuous learning. CQI is firmly grounded in the overall mission, vision, and values of the agency. Perhaps most importantly, it is dependent upon the active inclusion and participation of staff at all levels of the agency, children, youth, families, and stakeholders throughout the process."[1]

---

[1] "Using Continuous Quality Improvement to Improve Child Welfare Practice – A Framework for Implementation", Casey Family Programs and the National Child Welfare Resource Center for Organizational Improvement", May 2005.

DHS 374513

Similarly, Bickman and Nosser describe CQI as involving the ―use of assessment, feedback and application of information to improve services" in a proactive manner by continuously evaluating process and outcomes and the link between them to change services.[2] This interplay of process and outcomes has a specific focus within child welfare as the outcomes of safety, permanency and well-being are paramount. States undertake a multitude of processes to achieve these outcomes and the measurement of both is critical to the CQI approach articulated in this information memorandum.

Throughout this IM, ―stakeholders" are defined as courts, tribes, families, youth, caregivers, contracted providers, other public entities, community partners, and individuals within the child welfare organization including administrators, caseworkers, supervisors, and program, policy, and training staff.

The Children's Bureau considers the following five components as essential to a State having a functioning CQI system in child welfare: an administrative structure to oversee effective CQI system functioning; quality data collection; a method for conducting ongoing case reviews; a process for the analysis and dissemination of quality data on all performance measures; and, a process for providing feedback to stakeholders and decision makers and as needed, adjusting State programs and process.

The domains and measures that the State tracks to determine the status and progress of their programs are central to a functional CQI system. As part of the preparation activities for the next round of the CFSR, CB intends to publish a specific set of measures for monitoring and will share that information with States at a later time. In the interim, the existing CFSR items and indicators related to safety, permanency and well-being and the particular areas of concern found in the State's prior reviews and PIPs are a useful starting point for ongoing measurement. States should also consider information issued recently by the CB regarding the promotion of social and emotional well-being of children known to the child welfare system.[3] In particular, we note that all States struggled in areas associated with 1) achieving timely permanency and 2) ensuring that children and families needs are assessed comprehensively and reassessed on an ongoing basis to inform the delivery of quality and effective services that will demonstrate improved child and family functioning. Along with assuring safety, these areas are at the heart of the child welfare agency's mission and therefore deserve consideration for inclusion in a CQI system.[4]

We advise States to examine the following CQI functional components, consider the State's ability to meet these functional components, and as needed, discuss and seek assistance from CB to develop the following components:

[2] Bickman, L. & Nosser, K. (1999) Meeting the challenges in the delivery of child and adolescent mental health services in the next millennium: The continuous quality improvement approach. *Applied and Preventive Psychology*, 8:247-255.
[3] ACYF-CB-IM-12-04, ―Promoting Social and Emotional Well-Being for Children and Youth Receiving Child Welfare Services" issued April 17, 2012 and available at http://www.acf.hhs.gov/programs/cb/laws_policies/policy/im/2012/im1204.pdf
[4] For a national perspective, see the ―Federal Child and Family Services Reviews Aggregate Report Round 2" issued December 2011 and available at http://www.acf.hhs.gov/programs/cb/cwmonitoring/results/fcfsr_report.pdf

3

DHS 374514

I. Foundational Administrative Structure

It is important for States to have strong administrative oversight to ensure that their CQI system is functioning effectively and consistently, and is adhering to the process established by the agency's leadership. A functioning CQI system will ensure that:

- The State applies the CQI process consistently across the State and the single State agency has oversight and authority over the implementation of the CQI system; there is a systemic approach to review, modify, and implement any validated CQI process.
- The State establishes written and consistent CQI standards and requirements for the State, counties, and any other public agencies operating title IV-E programs on behalf of the State, as well as any private agencies with case management responsibilities.
- There is an approved training process for CQI staff, including any contractor or stakeholder staff conducting CQI activities.
- There are written policies, procedures, and practices for the CQI process even when the State contracts out any portion of the CQI process.
- There is evidence of capacity and resources to sustain an ongoing CQI process, including designated CQI staff or CQI contractor staff.

II. Quality Data Collection

Collecting quality data, both quantitative and qualitative, from a variety of sources is the foundation of CQI systems. For data to be considered "quality" it must be accurate, complete, timely, and consistent in definition and usage across the entire State. It is important for States to use data to identify areas of strengths and concerns, establish targeted strategies for improvement, and track progress toward desired outcomes. States that meet the quality data collection component will be able to demonstrate the ability to input, collect, and extract quality data from various sources, including the Statewide Automated Child Welfare Information System (SACWIS) or other information management systems, case reviews, and other sources of data. States will also be able to ensure that data quality is maintained as the State submits data to Federal databases or reports, such as the Adoption and Foster Care Analysis Reporting System (AFCARS), National Child Abuse and Neglect Data System (NCANDS) National Youth in Transition Database (NYTD), the Child and Family Services Plan, among others. A functioning CQI system will ensure that:

- The State's case level data shows that the instruments and ratings are completed in a way that is consistent with the instrument instructions and consistent across reviewers.
- There is a clear process that the State uses to collect and extract accurate quantitative and qualitative data, and the process is consistently and properly implemented across the entire State. The collection and extracting processes are documented, and an audit mechanism is in place to verify that the process is being followed.
- There is a clear process that the State uses to identify and resolve data quality issues and informs CB as appropriate regarding data quality issues. For example, there are processes to: identify if data are being under-/over-reported and/or not being entered into

4

the State's information system; evaluate if data entry is reliable or unreliable, and if unreliable, why; (e.g. clarity of instructions, definitions, and/or data entry screens).

- There is a process in the State for the collection of quantitative and qualitative data that addresses key issues important to the State and demonstrates how the State is functioning on systemic factors, such as training staff and resource parents, functioning of the case review system, and service array.
- The State monitors existing federal requirements or guidelines and uses appropriate quality utilities and tools to ensure that data is accurate, including, but not limited to:
  - o The most recent AFCARS Assessment Review findings documents and/or AFCARS Improvement Plan (AIP), if applicable, indicates whether the State is accurately collecting, mapping, and extracting the AFCARS data in accordance with the requirements in the AFCARS regulation at 45 CFR 1355.40 and steps the State is to take to correct its AFCARS collection. This includes steps to improve the accuracy of the data through ongoing training, oversight, and incorporation into a quality assurance process.
  - o The most recent NCANDS data, or other safety data that impact the outcome indicators being measured, meet any CB quality guidelines.
  - o The most recent data profile used for the CFSR accurately reports the status of the child welfare program as indicated by data errors falling below acceptable thresholds.
  - o NYTD data meets the regulatory requirements at 45 CFR 1356.80 – 86 and other CB quality guidelines.

III. Case Record Review Data and Process

In addition to collecting and analyzing quantitative data, it is also critical that State CQI systems have an *ongoing* case review component that includes reading case files of children served by the agency under the title IV-B and IV-E plans and interviewing parties involved in the cases. Case reviews are important to provide States with an understanding of what is "behind" the safety, permanency and well-being numbers in terms of day-to-day practice in the field and how that practice is impacting child and family functioning and outcomes. A CQI system will ensure that:

- The State reviews cases of children based on a sampling universe of children statewide who are/were recently in foster care and children statewide who are/were served in their own homes. Samples should be sufficiently large enough to make statistical inferences about the population served by the State. The universe of cases reviewed will also include the title IV-B and IV-E child population directly served by the State agency, or served through title IV-E agreements (e.g. with Indian Tribes, juvenile justice, or mental health agencies).
- The sample is stratified to include a proportion of cases that reflect different age groups, permanency goals, and other considerations, such as varying geographic areas of the State, as appropriate.
- The State conducts case reviews on a schedule that takes into consideration representation of the populations served by the State, including the largest metropolitan area, and the significance of other demographic and practice issues.

DHS 374516

- Case reviews collect specific case-level data that provides context and addresses agency performance.
- Case reviews are able to detect the quality of services for the children and families served and therefore focus on the assessment and monitoring of how child and family functioning is progressing in relation to the services provided.
- Case reviews include the completion of interviews specific to each case, such as the child/youth, birth parent, caregiver, caseworker or supervisor, and as indicated, health, mental health and other service providers, educators, and guardian ad litem (or child's attorney).
- Case reviews are conducted by staff who go through a uniform and consistent training process and whom the State determines are qualified to conduct reviews, with a preference for staff and stakeholders with direct service experience.
- The process prevents reviewer conflict-of-interest and promotes third-party (unbiased) review of cases, i.e. cases are not reviewed by caseworker or supervisor responsible for cases or who had previous involvement in the cases, as well as those who may have a personal interest in the case.
- Policies, written manuals, and instructions exist to assist in standardizing completion of the instruments and the implementation of the case review process.
- Inter-rater reliability procedures are implemented to ensure consistency of case ratings among reviewers.
- There is a process for conducting ad hoc/special reviews targeting specific domains when analysis and other data warrant such reviews.

## IV. Analysis and Dissemination of Quality Data

Although most States have the ability to collect data from a variety of sources, States have varying capacities to track, organize, process, and regularly analyze information and results. A functioning CQI system will ensure that:

- The State has consistent mechanisms in place for gathering, organizing, and tracking information and results over time regarding safety, permanency, well-being outcomes and services (at the child, caseworker, office, regional and state level, as appropriate).
- The State has a defined process in place for analyzing data (both quantitative and qualitative), and the State provides training to staff and determines that they are qualified to conduct such analyses.
- The State aggregates Statewide and local data and makes it available to stakeholders for analysis.
- Agency decision makers, courts, tribes, and other stakeholders are involved in analyzing and understanding the data and in providing feedback on analysis and conclusions.
- The State translates results (trends, comparisons and findings) for use by courts, tribes, and a broad range of stakeholders, and the State disseminates results through understandable or reader-friendly reports, websites, etc.

6

DHS 374517

V. Feedback to Stakeholders and Decision-makers and Adjustment of Programs and Process

Collecting information and analyzing results are important steps in CQI; however, *how* States use this information is a critical component to driving change within the organization and is key to improving outcomes for children and families. A functioning CQI system will ensure that:

- Results (i.e., trends, comparisons and findings) are used by agency leadership/top management, courts, tribes, entities with title IV-E agreements, and other stakeholders to help guide collaborative efforts, inform the goals and strategies of the CFSP and other State plans for federal funds such as the Court Improvement Program strategic plan, and to improve practice, services and monitor/track progress toward goals.
- Supervisors and field staff understand how results link to daily casework practices; results are used by supervisors and field staff to assess and improve practice.
- Results are used to inform training, policy, practice, community partnerships, service array (service gaps, quality, etc.), automated system development, and other supportive systems.
- The CQI process itself is adjusted as needed over time as results indicate a need for additional study, information and/or analysis.

**Statutory and regulatory requirements for quality assurance and improvement:**

Titles IV-B and IV-E of the Act outline requirements related to QA and CQI in child welfare, including the following:

- Pursuant to section 471(a)(7) of the Act, the title IV-E agency is required to monitor and conduct periodic evaluations of its title IV-E program. The operation of a Statewide QA is one acceptable method for complying with section 471(a)(7) of the Act.
- A specific requirement that the title IV-E agency implement standards to ensure that children in foster care receive quality health and safety services in section 471(a)(22) of the Act. It is important to consider the full array of statutory and regulatory requirements relevant to quality health and safety services for children in foster care, including those related to screening, assessment and provision of medical, mental health and early intervention services as indicated in ACYF-CB-IM-12-04.
- Title IV-B regulations require State agencies to utilize QA to regularly assess the quality of services under the CFSP and assure there will be measures to address identified problems. A description of this system must be a part of the State's CFSP (45 CFR 1357.15(u)).
- Monitoring of the requirements of section 471(a)(22) of the Act and 45 CFR 1357.15(u) have been a focus of the CFSR since its inception (45 CFR 1355.34(c)(3)). ACF's expectations have been that the QA system is: (1) identifiable; (2) in place in all jurisdictions covered by the CFSP; (3) able to evaluate the adequacy and quality of services under the CFSP and able to identify the strengths and needs of the service delivery system; (4) able to provide reports to administrators on the evaluated services and needs for improvement, and (5) able to evaluate measures used to address identified problems.

DHS 374518

**Allowable title IV-B and title IV-E costs related to CQI**

Title IV-E agencies may claim the costs of a quality assurance system as title IV-E administration for costs that are associated with title IV-E eligible cases and functions. Such costs must be allocated to all benefiting programs and identified in the State's cost allocation plan (CAP) (CWPM 8.1B Q/A 15).

It should be noted that existing law and policy, while not specific to CQI, permits title IV-B and IV-E agencies to share the costs in implementing and maintaining these activities with the Federal government:

- The title IV-E agency can claim title IV-E training funds for short term training relative to child welfare related CQI and program improvement consistent with a CFSR or other monitoring activities for costs associated with title IV-E eligible cases on allowable topics (see CWPM 8.1H Q/As generally). The allocation of a CQI system must be included in an approved cost allocation plan. The rate of claiming may vary depending on the training topic, when training is claimed (see) and the individuals trained (see section 474(a)(3)(B) of the Act, Public Law 110-351 sec 203(b) and ACYF-CB-PI-10-11 Section L; and, CWPM 8.1H Q/A 9 & 10).
- Appropriate costs associated with the planning, designing, developing, implementing, maintaining and operating a SACWIS that incorporates both data and functionality of CQI components are considered necessary for the proper and efficient administration of the title IV-E State plan (45 CFR 1355.52 and 1355.53). As such, allowable costs can be claimed at SACWIS levels, i.e. allocated entirely to title IV-E, in accordance with the Title IV-E agency's APD for these systems. As such, allowable costs can be claimed at SACWIS levels in accordance with the State's APD for compliant systems. States that do not have a SACWIS may claim costs at the 50% administrative rate for information system costs related to CQI in accordance with the State's APD (45 CFR 1356.60(d)).
- Title IV-B subpart 1 funds can be used to support a CQI system in child welfare because CQI activities are considered title IV-B program and not administrative costs (sections 422(b)(14) and 422(c)(1) of the Act).
- Title IV-B subpart 2 funds can be used to support a CQI system in child welfare because CQI activities are considered title IV-B program and not administrative costs (section 434(d) of the Act and 45 CFR 1357.32(h)).

For example, a State could submit a title IV-B training plan and an associated provision in its cost allocation plan for short-term CQI training for: (1) caseworkers, supervisors and CQI/QA staff of the title IV-E agency; (2) caseworkers, supervisors and CQI/QA staff of State-approved or licensed child welfare agencies providing services to children under the title IV-E programs; and (3) attorneys, judges, child care institution staff, and resource parents who will be participating in CQI/QA activities at the 75%, or other rate depending on the federal fiscal year (section 203(b) of P.L. 110-351). Training topics could include conducting case reviews, interpreting data results and integrating results into practice improvement among other topics. The allowable costs for providing short-term training would be allocated to title IV-E, title IV-B and other benefiting programs by the equitable means chosen by the State and approved in a cost allocation plan, e.g. applying an eligibility rate. Additionally, a State could claim the costs of

8

DHS 374519

short-term training of persons who are employed by a private agency to carry out CQI activities on behalf of the title IV-E agency as title IV-E administrative costs at the 50% rate (45 CFR 1356.60(b)).

We encourage the State to discuss any plans for developing CQI systems, needs for technical assistance and changes to claiming CQI activities under the federal programs with their Regional Office.

/s/

_____

Bryan Samuels
Commissioner
Administration on Children, Youth
and Families

**Attachments:**

Attachment A – Background on Continuous Quality Improvement and Agency Considerations

Attachment B – Resources for Continuous Quality Improvement

Attachment C – Regional Program Manager Contact List

DHS 374520

**Attachment A –Background on Continuous Quality Improvement & Agency Considerations**

Background on Continuous Quality Improvement

The initial concepts of Continuous Quality Improvement (CQI) began in the manufacturing industry in the 1930's with the work of W. Edwards Deming and others, often referred to as Total Quality Management (TQM). TQM or CQI differs from quality assurance (QA) in that it is a way of working - it is a philosophy that focuses on continual improvement; whereas QA is essentially an evaluation of compliance. CQI is "the complete process of identifying, describing, and analyzing strengths and problems and then testing, implementing, learning from, and revising solutions. It relies on an organizational culture that is proactive and supports continuous learning. CQI is firmly grounded in the overall mission, vision, and values of the agency. And perhaps most importantly, it is dependent upon the active inclusion and participation of staff at all levels of the agency, children, youth, families, and stakeholders throughout the process."[5]

While the exact concepts of TQM do not easily translate to public agencies, much has been written about "reformed TQM" in government. These tenets include[6]:
- Quality is defined by the customers.
- Everyone is responsible for continuously improving quality.
- Quality of process and products must be measured and then improved.
- Continuous improvement is always possible.
- Leadership must be involved.
- Cross-functional cooperation across agency subunits must be enhanced.
- Employee empowerment and teamwork is paramount.

CQI philosophy requires ongoing improvement and Deming introduced the concept of "PDSA" (Plan - Do - Study - Act) as a roadmap for improvement and testing change. Others have developed different models, such as the DAPIM (Defining, Assessing, Planning, Implementing, and Monitoring) for root cause analysis and managing change.[7]

**Agency Preparation and Leadership for CQI:**
It is critical for State agency leadership to provide the framework and expectations for CQI and to promote a culture within the organization that encourages and promotes CQI. In 2005, Casey Family Programs and the National Child Welfare Resource Center for Organizational Improvement convened a panel of child welfare professionals to develop a framework for CQI

---

[5] Using CQI to Improve Child Welfare Practice - A Framework for Implementation, Casey Family Programs and the National Child Welfare Resource Center for Organizational Improvement, 2005.
[6] Durant, Robert and Wilson, Laura, "Public Management, TQM, and Quality Improvement - Toward A Contingency Strategy", in Adapting TQM to Government - Handbook of Public Quality Management", Stupak, Ronald and Leitner, Peter (editors), Auerbach Publications, 2001.
[7] American Public Human Service Association (APHSA), Positioning Public Child Welfare Guidance, at www.ppcwg.org

DHS 374521

practice in child welfare. The paper produced set forth several essential practices for leaders to instill a CQI culture in their agencies.[8] It is important for agency leaders to:

- Support a continuous learning environment and set clear direction and expectations for outcomes and goals.
- Be champions of CQI work, as reflected by their decision-making and communications with staff.
- Provide opportunity for staff at all levels, children, youth, families, and stakeholders to be engaged in CQI processes and activities, including advisory capacities and inclusion in informing agency strategic plans.
- Clarify and articulate values and principles within the agency and to the broader community.
- Regularly communicate and emphasize outcomes, indicators, and standards to staff, children, youth, families, and stakeholders.
- Set expectations that agency staff use results to make improvements.
- Empower supervisors and staff to implement changes in policy, practices, program, and/or training.

It is important for agency leaders to address the agency culture and climate, and to support the readiness of the workforce to accept the philosophy and concepts of CQI. It is also important for leaders to visibly model the behaviors that embrace the philosophy of CQI and moves the organization forward. To "set the stage" for CQI in the agency, it is important for leaders to:[9]

- Clearly define roles and authority of key leaders in change initiatives.
- Identify and reduce the level of "fear" and "blame" for mistakes.
- Identify and remove impediments to cross-functional communication and problem-solving.
- Improve how leaders define, communicate, and demonstrate their commitment to meet customer needs.
- Adopt policies to train, encourage, and empower employees to respond promptly and appropriately to customer issues.
- Reduce the level of bureaucratic controls that limit adoption of best practices and evidence-based improvements.
- Develop policies and resources for employees to routinely learn about best practices that are related to their work areas and to join professional associations that help support improvement and growth.
- Share key organizational performance measurements with all employees and teach them how their work processes link to the organizational performance outcomes.

---

[8] Using CQI To Improve Child Welfare Practice - A Framework for Implementation, Casey Family Programs and the National Child Welfare Resource Center for Organizational Improvement, 2005.
[9] CQI Readiness Assessment Process and Tool, Bernie Dana, Long-Term Care Management Consultant, the American Health Care Association, and the National Center for Assisted Living, 2004.

**Attachment B - Resources for Continuous Quality Improvement**

This Information Memorandum (IM) provides guidance regarding the Children's Bureau's (CB) expectations in the development and effectiveness of a child welfare agency continuous quality improvement (CQI) system. The following resources are provided to guide States in this critical work. Please note that the Children's Bureau does not endorse or require these specific resources to be utilized, but offers these documents in an effort to point out the vast array of materials available to assist in improving and enhancing States' CQI processes. To build upon the Federal and State partnership, the CB Regional Office is available to assist States in identifying additional technical assistance opportunities that may further the development and/or enrichment of the States' current quality assurance system.

From the Child Welfare Information Gateway:  http://www.childwelfare.gov/
   A. Continuous Quality Improvement:
      http://www.childwelfare.gov/management/reform/soc/communicate/initiative/soctoolkits/
      cqi.cfm#phase-cqi
   B. Approaches to Quality Improvement
      http://www.childwelfare.gov/management/practice_improvement/quality/approaches.cfm
   C. Continuous Quality Improvement Committees
      http://www.childwelfare.gov/management/practice_improvement/quality/cqi.cfm

From the National Child Welfare Resource Centers:
National Child Welfare Resource Center for Organizational Improvement:
http://muskie.usm.maine.edu/helpkids/
   A. Using Continuous Quality Improvement To Improve Child Welfare Practice, A
      Framework for Implementation
      http://muskie.usm.maine.edu/helpkids/rcpdfs/CQIFramework.pdf
   B. A Framework for Quality Assurance in Child Welfare
      http://muskie.usm.maine.edu/helpkids/rcpdfs/QA.pdf
   C. NRCOI Newsletter:  Child Welfare Matters:  ─Taking Action: Keys to using Data and
      Information"
      http://muskie.usm.maine.edu/helpkids/rcpdfs/cwmatters10.pdf
   D. NRCOI Newsletter: Child Welfare Matters:  ─Implementing Change at the local level:
      Strategies for Success"
      http://muskie.usm.maine.edu/helpkids/rcpdfs/cwmatters8.pdf

National Child Welfare Resource Center for Permanency and Family Connections:
      http://www.nrcpfc.org/
      Quality Assurance Systems in Child Welfare
      http://www.hunter.cuny.edu/socwork/nrcfcpp/info_services/Sudol_QASystemsInfoPack_
      5%205%2009.pdf

National Resource for Child Welfare Data and Technology:
https://www.nrccwdt.org/index.html

DHS 374523

Books:
- A. <u>Fostering Accountability - Using Evidence to Guide and Improve Child Welfare Policy</u>, Testa, Mark and Poertner, John, editors, Oxford University Press, 2010 ;
  - Moore, Terry, "Results-Oriented Management - Using Evidence for Quality Improvement"
  - Zlotnik, Joan, "Fostering University/Agency Partnerships"
- B. <u>The Heart of Change: Real-life Stories of How People Change Their Organizations</u>, Kotter, John; Harvard Business Review Press, Boston MA 2002
- C. <u>The Practice of Adaptive Leadership;</u> Heifetz, Ronald; Grashow, Alexander; Linsky, Marty, Harvard Business Press, Boston, MA; 2009

Other CQI Sources:
- A. Ensuring Quality in Contracted Child Welfare Services
  http://aspe.hhs.gov/hsp/07/CWPI/quality/index.shtml#_Toc212002228
- B. Office of Planning, Research and Evaluation: The Program Manager's Guide to Evaluation, 2nd Edition
  http://www.acf.hhs.gov/programs/opre/other_resrch/pm_guide_eval/reports/pmguide/program_managers_guide_to_eval2010.pdf
- C. National Resource Center for Community-based Child Abuse Prevention: What is Continuous Quality Improvement
  http://friendsnrc.org/continuous-quality-improvement
- D. Chapin Hall:  Monitoring Child Welfare Programs: Performance Improvement in a CQI Context
  http://www.chapinhall.org/sites/default/files/old_reports/339.pdf
- E. <u>Quality Improvement and Evaluation in Child and Family Services - Managing into the Next Century</u>; Peter Pecora, et. al. editors; CWLA Press; 1997
  http://www.cwla.org/articles/cwjabstracts.htm
- F. American Public Human Services Association: Positioning Public Child Welfare Guidance; Strengthening Families in the 21st Century
  http://www.ppcwg.org/
- G. <u>Successful adoption and implementation of a comprehensive casework practice model in a public child welfare agency: Application of the Getting to Outcomes (GTO) model</u>, Anita Barbee, Dana Christensen, Becky Antle, Abraham Wandersman, Katharine Cahn; Children and Youth Services Review; November 2010
  http://www.journals.elsevier.com/children-and-youth-services-review/
- H. <u>CQI Readiness Assessment Process and Tool</u>, Bernie Dana, Long-Term Care Management Consultant, the American Health Care Association, and the National Center for Assisted Living, 2004.
  www.ahcancal.org/ncal/quality/Documents/cqi_rai_tool.pdf
- I. Tague, Nancy, The Quality Toolbox, ASQ Quality Press, 1995.
  http://www.asq.org
- J. Hodges, K. And Wotring, J. (2012) Outcomes management: incorporating and sustaining processes critical to using outcome data to guide practice improvement. *The Journal of Behavioral Health Services and Research. 39:2. 130-143.*
  http://www.springer.com/public+health/journal/11414

DHS 374524

Attachment C - Regional Program Manager Contact List

| | | | |
|---|---|---|---|
| I | **Region I - Boston** Bob Cavanaugh<br>bob.cavanaugh@acf.hhs.gov<br>JFK Federal Building, Rm. 2000 Boston,<br>MA 02203<br>(617) 565-1020<br>**States:** Connecticut, Maine,<br>Massachusetts, New Hampshire, Rhode<br>Island, Vermont | VI | **Region VI - Dallas** Janis Brown<br>janis.brown@acf.hhs.gov<br>1301 Young Street, Suite 945<br>Dallas, TX 75202-5433 (214) 767-8466<br>**States:** Arkansas, Louisiana, New Mexico,<br>Oklahoma, Texas |
| II | **Region II - New York City** Junius Scott<br>junius.scott@acf.hhs.gov<br>26 Federal Plaza, Rm. 4114 New York,<br>NY 10278 (212) 264-2890<br>**States and Territories:** New Jersey, New<br>York, Puerto Rico, Virgin Islands | VII | **Region VII - Kansas City** Rosalyn Wilson<br>rosalyn.wilson@acf.hhs.gov<br>Federal Office Building Room 349<br>601 E 12th Street<br>Kansas City, MO 64106<br>(816) 426-3981<br>**States:** Iowa, Kansas, Missouri, Nebraska |
| III | **Region III - Philadelphia** Lisa Pearson<br>lisa.pearson@acf.hhs.gov<br>150 S. Independence Mall West - Suite 864<br>Philadelphia, PA 19106-3499<br>(215) 861-4000<br>**States:** Delaware, District of Columbia,<br>Maryland, Pennsylvania, Virginia, West<br>Virginia | VIII | **Region VIII - Denver** Marilyn Kennerson<br>marilyn.kennerson@acf.hhs.gov<br>999 18th Street<br>South Terrace, 4th Floor<br>Denver, CO 80202<br>(303) 844-3100<br>**States:** Colorado, Montana, North Dakota,<br>South Dakota, Utah, Wyoming |
| IV | **Region IV - Atlanta** Ruth Walker<br>ruth.walker@acf.hhs.gov<br>Atlanta Federal Center<br>61 Forsyth Street S.W. Suite 4M60<br>Atlanta, GA 30303<br>(404) 562-2900<br>**States:** Alabama, Mississippi, Florida,<br>North Carolina, Georgia, South Carolina,<br>Kentucky, Tennessee | IX | **Region IX - San Francisco** Douglas Southard<br>douglas.southard@acf.hhs.gov<br>90 7th Street - 9th Floor<br>San Francisco, CA 94103<br>(415) 437-8425<br>**States and Territories:** Arizona, California,<br>Hawaii, Nevada, Outer Pacific—American<br>Samoa Commonwealth of the Northern<br>Marianas, Federated States of Micronesia<br>(Chuuk, Pohnpei, Yap) Guam, Marshall<br>Islands, Palau |
| V | **Region V - Chicago** Angela Green<br>angela.green@acf.hhs.gov<br>233 N. Michigan Avenue Suite 400<br>Chicago, IL 60601<br>(312) 353-9672<br>**States:** Illinois, Indiana, Michigan,<br>Minnesota, Ohio, Wisconsin | X | **Region X - Seattle** Tina Minor<br>tina.minor@acf.hhs.gov<br>2201 Sixth Avenue, Suite 300, MS-70 Seattle,<br>WA 98121<br>(206) 615-3657<br>**States:** Alaska, Idaho, Oregon, Washington |

DHS 374525

Mississippi meets the Children's Bureau's (CB) guidelines for quality data regarding NCANDS and NYTD submissions. The most recent Child and Family Services Review (CFSR) Data Profile from August 2013 showed that there are some data quality issues that will need to be addressed. In addition, although final results from the most recent AFCARS Assessment Review (conducted in September 2013) are still pending, we are looking forward to continuing our work with Mississippi on this and other issues or processes that may impact data quality.

Mississippi monitors and evaluates various systemic factors that are consistent with the Practice Model by surveying appropriate stakeholders who have first-hand knowledge of how a systemic area may be functioning. For the systemic factors of Case Review, Training, Service Array and Diligent Recruitment and Retention of foster/adoptive parents, the CB would like to learn more about the types of data Mississippi is collecting and how the data are aggregated and analyzed to assess performance at both the regional and statewide levels.

### III.    Case Record Review Data and Process

There are two primary types of case record reviews occurring in Mississippi, the EM case reviews and FCRs. The EM case reviews are case record reviews that are initiated and maintained once the Practice Model is implemented in a particular region. It is a qualitative review process that includes samples of both foster care cases and in-home services cases and client/staff interviews. There is a half day of training for the reviewers and a web-based review instrument is used; there is also a process in place to check for accuracy of ratings. The second type of case record review process is the FCRs. These reviews focus on children in DFCS custody and each child receives a FCR every five months as long as they remain in custody. Two instruments are used to document and collect data from the FCRs; the Periodic Administrative Determination (PAD) for case-specific information gathered through the documentation review and county conference held for each case and the Youth Court Hearing and Review Summary that is submitted to the courts.

The CB would like an opportunity to obtain more information regarding these two review processes, including sampling methods, review schedules, training curriculum, written manuals, instructions, protocols and procedures to ensure accuracy and consistency of ratings and avoid conflict of interest. We would also like to work with you to assess whether the data you currently collect for in-home services cases are sufficient to fully understand statewide practice trends and outcomes for these cases. Finally, it would be helpful to learn about your capacity to conduct other ad hoc reviews, like the Special Safety Reviews, when needed.

### IV.    Analysis and Dissemination of Quality Data

MS collects and analyzes qualitative and quantitative data at the regional and statewide levels to better understand practice trends and patterns, generate Olivia Y. reports and for program improvement purposes. Primary sources of data used for analysis are MACWIS (monthly management reports) and results from the 2 case record review processes, EM case reviews and

2

DHS 374526

DHS 374527

FCRs. Results from the EM reviews are aggregated and shared at the exit conference for all stakeholders following each regional review and FCR results are analyzed and disseminated to courts and used for Olivia Y. reporting purposes. There is a process to validate reports from MACWIS and case record reviews for accuracy, validity and reliability and the results are available for all staff through the State CQI reports, the Data Dashboard or shared DFCS P: drive and discussed in management staff meetings and regional CQI meetings. Immediate verbal feedback regarding practice is provided to individual workers and supervisors following a case record review.

Primary method of engaging stakeholders in data analysis is through Data-to-Action meetings. These meetings are held in each region following baseline and follow-up EM case reviews and include EMU staff, key regional management staff and external stakeholders. Data from the two case record reviews and Data Dashboard are discussed and analyzed and the meetings are used to assist the region in understanding and interpreting data for program improvement. The CB would like to learn more about these meetings, such as who the key external stakeholders are and how supervisors and caseworkers are consistently engaged in various data analysis activities.

## V.    Feedback to Stakeholders and Decision-makers and Adjustment of Programs and Process

Immediate verbal feedback is provided to workers, supervisors and regions following a case record review and Data-to-Action meetings are used to engage key management and external stakeholders in data analysis, dissemination and program improvement activities. These meetings are to be used to identify strategies that will help inform practice and support program improvement efforts in the regions. We would like to learn more about these meetings, who the specific external stakeholders are, what types of data analysis reports are provided, and how feedback from this and other processes inform statewide planning, adjustments to CQI system (as needed), training, policy, systems and practices. We are particularly interested in how the field staff are engaged in local and statewide program improvement efforts.

3

DHS 374528

DHS 374529

| ACF | U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES |
|---|---|
| | Administration on Children, Youth and Families |
| Administration for Children and Families | **1. Log No:** ACYF-CB-PI-13-04    **2. Issuance Date: April 10, 2013** |
| | **3. Originating Office:** Children's Bureau |
| | **4. Key Words:** Title IV-B Annual Progress and Services Report; Child Abuse Prevention and Treatment State Plan; Chafee Foster Care Independence Program; Education and Training Vouchers Program |

## PROGRAM INSTRUCTION

**TO:** State Agencies, Territories, and Insular Areas Administering or Supervising the Administration of Title IV-B, subparts 1 and 2, and Title IV-E of the Social Security Act (the Act); Organization Designated by the Governor to Apply for Child Abuse and Neglect Prevention and Treatment Programs State Grant Funds; State Independent Living and Education and Training Voucher Coordinators.

**SUBJECT:** June 30, 2013 submission of the Annual Progress and Services Report (APSR) required under Title IV-B of the Act for the Stephanie Tubbs Jones Child Welfare Services (CWS) and Promoting Safe and Stable Families (PSSF) Programs, the Child Abuse Prevention and Treatment Act (CAPTA) State Grant Program; and the Chafee Foster Care Independence Program (CFCIP) and the Education and Training Vouchers (ETV) Program; and the CFS-101, Part I, Annual Budget Request, Part II, Annual Summary of Child and Family Services, and Part III, Annual Expenditure Report—Title IV-B, subparts 1 and 2, CFCIP, and ETV.

**LEGAL AND RELATED REFERENCES:** The Fostering Connections to Success and Increasing Adoptions Act of 2008 (Public Law (P.L.) 110-351); Title IV-B, subparts 1 and 2, sections 421-425, 428, 430-438, and Title IV-E, section 477 of the Act; sections 106 and 108 of CAPTA (42 U.S.C. 5106a.), as amended by P.L. 111-320, the CAPTA Reauthorization Act of 2010; the Indian Child Welfare Act of 1978 (P.L. 95-608); the Indian Self-Determination and Education Assistance Act (P.L. 93-638); 45 CFR Parts 1355 and 1357; the Patient Protection and Affordable Care Act (P.L. 111-148); and the Child and Family Services Improvement and Innovation Act (P.L. 112-34).

**PURPOSE:** This Program Instruction (PI) provides guidance to States, Territories, and Insular Areas (hereafter "States," unless otherwise noted) on actions they are required to take to receive their allotments for Federal Fiscal Year (FY)[1] 2014 (subject to the availability of appropriations)

---

[1] Unless otherwise noted, FY refers to Federal Fiscal Year.

DHS 374530

authorized under title IV-B, subparts 1 and 2, section 106 of CAPTA, CFCIP and ETV programs. This PI summarizes the actions required in completion and submission of the APSR, CAPTA updates, and the CFS-101, Parts I, II, and III. A separate PI addresses requirements for Tribes, Tribal Consortia, and Tribal Organizations applying for funding under these programs.

Unless otherwise noted, FY refers to the Federal Fiscal Year.

**INFORMATION: Organization of the Program Instruction:**

Section A.  Background
Section B.  Submittal Rule for Insular Areas
Section C.  Instructions for States, Puerto Rico and the District of Columbia
Section D.  Child Abuse Prevention and Treatment Act State Grant Requirements
Section E.  Chafee Foster Care Independence and Education and Training Vouchers Programs
Section F.  Statistical and Supporting Information
Section G.  Financial Information
Attachments

**Section A.  Background**

Child and Family Services Plan (CFSP)

Every five years, States are required to develop a CFSP, a five-year strategic plan that sets forth the vision and the goals to be accomplished to strengthen the States' overall child welfare system. A primary purpose of the CFSP is to facilitate States' integration of the programs that serve children and families, including title IV-B, subparts 1 and 2 of the Act, and the CFCIP and ETV programs for older and/or former foster care youth, into a continuum of services for children and their families. The CFSP consolidates plans for these programs to help States comprehensively integrate the full array of child welfare services, from prevention and protection through permanency (45 CFR 1357.15(a)). In the past, States were required to incorporate the plan for the CAPTA State grant into the CFSP. However, a change in law eliminated the requirement to develop a five-year plan for CAPTA and, as of FY 2012, all States submitted a new CAPTA State Plan that remains in effect as long as the State continues to participate in CAPTA. However, continued annual reporting requirements for CAPTA are included in this PI.

The most recent CFSP, which was submitted on June 30, 2009, provided States' plans for their child welfare programs for FYs 2010 through 2014.

Annual Progress and Services Report (APSR)

The APSR provides an annual update on the progress made toward accomplishing the goals and objectives in the CFSP. Completion of the APSR satisfies the Federal regulations at 45 CFR 1357.16 by providing updates on a State's annual progress since the last APSR update and planned activities for the upcoming FY 2014.

2

DHS 374531

For States and Territories to receive FY 2014 funds for title IV-B, CAPTA, CFCIP and ETV programs, the APSR must be submitted electronically to the Children's Bureau (CB) Regional Offices (ROs) by June 30, 2013. In addition, a signed CFS-101, Annual Budget Request for title IV-B, subparts 1 and 2, CAPTA, CFCIP and ETV programs must be submitted to the ROs. (See contact information in Attachment C.) For the Insular Areas (Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands) to receive FY 2014 grants, Section B identifies the submission requirements for receiving a consolidated grant.

It is important that APSR submissions address all requirements outlined in this PI. Missing or incomplete information will result in the withholding of funds for the program(s) affected until such time as the information is complete and approval can be granted by CB. Requests for assistance or questions encountered in preparing the APSR should be directed to the appropriate CB RO State Specialist.

In preparing the APSR, each State must conduct an interim review of the progress made since the last APSR toward accomplishing the goals and objectives in the CFSP based on updated information and current data. In accordance with 45 CFR 1355.53, States with a Statewide Automated Child Welfare Information System (SACWIS) are expected to utilize data obtained from the case management system in assessing progress in the APSR, citing the source as such.

When conducting the annual review in preparation for submission of the APSR, the State must engage the agencies, organizations, and individuals, e.g., the State's Court Improvement Program, Tribes, youth, families, the Community-Based Child Abuse Prevention (CBCAP) lead agency, providers, and faith-based and community organizations, who are part of the ongoing CFSP-related consultation and coordination process, in accordance with 45 CFR 1357.16. States are also reminded that the CFSP and subsequent APSRs must integrate the findings of Federal reviews including the Child and Family Services Review (CFSR), an Adoption and Foster Care Analysis and Reporting System (AFCARS) Assessment Review, the title IV-E Foster Care Eligibility Review, and other relevant CB reviews, as well as planned activities identified in any Program Improvement Plans (PIPs) when addressing services and programs under this APSR.

### Section B.  Submittal Rule for Insular Areas

The Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands may each submit consolidated grant applications in accordance with 45 CFR Part 97. These jurisdictions do not need to submit an APSR as described in this PI if they choose to have their title IV-B, subparts 1 and/or 2 (including the monthly caseworker visit funds) and/or CAPTA allotments included in a consolidated grant, and may expend these funds under authority of another program that is available for consolidation. If an Insular Area chooses to consolidate its application for FY 2014 funding under title IV-B, subparts 1 and/or 2, and/or CAPTA, it must notify its CB RO in writing of its intent by June 30, 2013.

An insular area that chooses to submit an APSR in lieu of receiving a consolidated grant may do so and must follow the guidance included under Section C. The plan must be submitted to its CB RO by June 30, 2013.

DHS 374532

**Section C. Instructions for States, Puerto Rico and the District of Columbia**

APSR Submission

States must submit an electronic copy of their APSR to the RO by June 30, 2013. CB intends to make the APSR documents available to the public on the CB website. Therefore, we request States submit electronic files in a format conducive to web posting. That is, the APSR document must be submitted in the format of a Word document or as a PDF that was created in Word and then saved as a PDF (but not a scanned PDF). The APSR may be submitted as an attachment to an e-mail or on a compact disc. Please do not embed scanned PDF files or documents in the APSR submission.

Substantial changes to the CAPTA State Plan, the Health Care Oversight and Coordination Plan, or the Disaster Plan should be sent as a document that can be posted as an attachment or as an appendix to the original plan. States may also submit any of these as an entirely new plan. States are asked to clearly indicate the content of each document submitted. Please contact your RO if additional information is needed about how to submit updates or changes.

Please also include a link to the location of where the APSR and other plans are located on the State's websites and provide a name, email, and telephone number of the State contact for the APSR.

The State must work with their RO to submit the CFS-101 forms to be in compliance with the financial aspects of the APSR. **Beginning with the APSR due June 30, 2013, CB is requiring States to submit the CFS-101 forms in the format of an Excel worksheet, in addition to a PDF copy of the signed CFS-101 forms.** We are making this change to enable us to post CFS-101 forms on the CB website as part of a statutorily required annual report to Congress.

- By email, submit to the RO in **an Excel worksheet:**
  -CFS-101, Part I for FY 2014;
  -CFS-101, Part II with planned expenditures for the use of FY 2014 funds;
  -CFS-101, Part III with estimated and actual expenditures of FY 2011 grants for the title IV-B, and, at State option, the CFCIP and ETV programs.

- In addition, submit electronically in PDF format copies of the CFS-101, Parts I and III, **signed** by the appropriate official.

Submission of CFS-101s that do not meet the requirements above will not be accepted.

If a State wishes to revise its previously approved funding request for the FY 2013 grants, either by releasing funds for reallocation or by requesting more funds than originally requested and approved, then the State must submit a revised CFS-101 Part I for FY 2013 indicating:

1. the amount of funds that the State does not expect to utilize from its FY 2013 allotment during the upcoming year to carry out the title IV-B, CFCIP and/or ETV program activities; and/or

4

DHS 374533

2.  the amount of funds the State is requesting if additional funds become available for the title IV-B, CFCIP and/or ETV program (if different from earlier requests).

*Certifications and Assurances*:  Certifications and assurances submitted with the 2010-2014 CFSP, and for compliance with the Patient Protection and Affordable Care Act (the CFCIP Certification) or the CAPTA State Plan do not need to be re-submitted with the 2013 APSR unless a change in the State has occurred so that a new certificate is warranted.

Programmatic Requirements of the APSR

The APSR must address each of the following:

- The Stephanie Tubbs Jones Child Welfare Services Program (title IV-B, subpart 1);
- Services provided in the four areas under the Promoting Safe and Stable Families Program (title IV-B, subpart 2):
  o  Family Preservation;
  o  Family Support;
  o  Time-Limited Family Reunification; and
  o  Adoption Promotion and Support Services;
- Training activities in support of the CFSP goals and objectives, including training funded by titles IV-B and IV-E;
- Monthly Caseworker Visit Funds;
- Adoption Incentive Funds;
- Child Welfare Waiver Demonstrations approved under section 1130 of the Act, as appropriate;
- CFCIP; and
- ETV.

1.  **Service Description**

States are asked to report the information identified below for each of the programs:
- The Stephanie Tubbs Jones Child Welfare Services Program (title IV-B, subpart 1);
- Services provided in the four areas under the Promoting Safe and Stable Families Program (title IV-B, subpart 2):
  o  Family Preservation;
  o  Family Support;
  o  Time-Limited Family Reunification; and
  o  Adoption Promotion and Support Services;
- CFCIP and ETV (Please also see Section E).

- Report on the State's assessment of the specific accomplishments and progress achieved since the last APSR toward meeting each goal and objective in the CFSP including improved outcomes for children and families and providing a more comprehensive, coordinated, and effective child and family services continuum (45 CFR 1357.16(a)(1)). Cite relevant State and local data supporting the State's assessment of the progress toward meeting each of the goals and objectives of the CFSP.

5

DHS 374534

- If applicable, describe the steps the State agency will take to expand and strengthen the range of existing services and to develop and implement services to improve child outcomes. Explain planned activities, new strategies for improvement, and the method(s) to be used to measure progress in the upcoming fiscal year.

- Describe any revisions to the goals and objectives established in the CFSP (45 CFR 1357.16(a)(2)).

- Update the goals and objectives to incorporate any areas needing improvement that were identified in a CFSR, title IV-E, AFCARS, or other program improvement plans. If the current CFSP does not have a goal or objective that addresses a later identified area needing improvement, the associated goal or objective must be added to the APSR.

- Describe the services to be provided in FY 2014, highlighting any changes or additions in services or program design and how the services will assist in achieving program purposes (45 CFR 1357.16(a)(4)). For each service provided report:
  1. the population(s) to be served;
  2. the geographic areas where the services will be available; and
  3. the estimated number of individuals and families to be served.

  This information may be provided in Part II of the CFS-101 form (Attachment B).

- Identify and describe which populations are at the greatest risk of maltreatment, how the State identified these populations and how services are targeted to those populations (section 432(a)(10) of the Act).

## 2. Collaboration

- Describe activities in the ongoing process of coordination and collaboration efforts conducted across the entire spectrum of the child and family service delivery system. This section should also describe stakeholder or partner involvement in the review of progress made in the past fiscal year and expected updates for the coming year (45 CFR 1357.15(l)).

- Provide an update on how the State has demonstrated substantial, ongoing, and meaningful collaboration between the child welfare agency and the courts, with regard to the development and implementation of the APSR and any CFSR or title IV-E PIPs (section 422(b)(13) of the Act). Meaningful, ongoing collaboration means that the State agency and the court will identify and work toward shared goals and activities, assess outcomes, and develop strategic plans to increase the safety, permanency, and well-being of children in the child welfare system.

DHS 374535

### 3. Program Support

*Updates to Training Plan*

States must provide updated information on training plan requirements, including:

- As needed, update the training plan that was submitted with the CFSP. Any training activities to be paid for with title IV-E funds that were not included in the CFSP training plan or added in last year's APSR must be included in the updated training plan.

- For any new training not previously described, the State must address the following in its updated training plan:

    - A brief, one-paragraph syllabus of the training activity;
    - Indication of the specifically allowable title IV-E administrative functions the training activity addresses;
    - Description of the setting/venue for the training activity;
    - Indication of the duration category of the training activity (i.e., short-term, long-term, part-time, full-time);
    - Description of the proposed provider of the training activity;
    - Specification of the approximate number of days/hours of the training activity;
    - Description of the audience to receive the training;
    - Description of estimated total cost; and
    - Cost allocation methodology applied to training costs.

    (See ACYF-CB-PI-09-06, issued June 3, 2009, for further guidance on information that must be included in the training plan.)

*Technical Assistance and Other Program Support*

- Describe the State's training and technical assistance provided to counties and other local or regional entities that operate State programs and its impact on the achievement of CFSP/APSR goals and objectives. Describe training and technical assistance that will be provided in the upcoming fiscal year. (See 45 CFR 1357.16(a)(5).)

- Describe the technical assistance that the State anticipates requesting from the CB Training and Technical Assistance network, including National Resource Centers and Quality Improvement Centers, in support of the CFSP/APSR goals and objectives (45 CFR 1357.16(a)(5)). Describe how technical assistance will achieve the identified goals and objectives.

- Describe child and family services related research, evaluation, management information systems, and/or quality assurance systems that will be updated or implemented in FY 2014. Specify any additions or changes in services or program designs that have been found to be particularly effective or ineffective based on the State's evaluation of programs. (See 45 CFR 1357.16(a)(5).)

DHS 374536

**4. Consultation and Coordination Between Tribes and States**

In accordance with section 422(b)(9) of the Act, States were required to include in the CFSP a description, developed in consultation with Indian Tribes in the State, of the specific measures taken by the State to comply with the Indian Child Welfare Act (ICWA).

In the APSR:

- Describe the process used to consult with Tribes since the last APSR. Provide specific information on the name of Tribes and Tribal representatives with whom the State has consulted. Please provide information on the outcomes or results of these consultations. (States without Federally-recognized Tribes within their borders should still consult with Tribal representatives.) (See 45 CFR 1357.15(l).)

- Citing available data and the source of that data, assess the level of compliance and the progress made to improve compliance with ICWA during the past year, as informed by consultation with Tribes. Listed below are some components in ICWA that States must address in consultation with Tribes and in the CFSP/APSR:

  - Notification of Indian parents and Tribes of State proceedings involving Indian children and their right to intervene;
  - Placement preferences of Indian children in foster care, pre-adoptive, and adoptive homes;
  - Active efforts to prevent the breakup of the Indian family when parties seek to place a child in foster care or for adoption; and
  - Tribal right to intervene in State proceedings, or transfer proceedings to the jurisdiction of the Tribe.

- Update the goals and describe the specific activities that have been or will be undertaken to improve or maintain compliance with ICWA. Include information on any changes to laws, policies, or procedures, and/or a description of any trainings implemented to increase compliance with ICWA.

- State agencies and Tribes must also exchange copies of their CFSP and their APSR (45 CFR 1357.15(v)). Describe how the State is meeting this requirement.

- Provide information regarding consultations with Indian Tribes in the State specifically as it relates to determining eligibility for benefits and services and ensuring fair and equitable treatment for Indian youth under the Chafee Foster Care Independence Act (CFCIP). Describe how the State has negotiated in good faith with any Tribe requesting to develop an agreement with the State to receive from the State a portion of the State's allotment to operate CFCIP and/or ETV (section 477(b)(3)(G) of the Act). This instruction is further delineated in Section E of this PI.

In carrying out continued consultation and coordination with Tribes on child welfare programs, States should be aware that section 479B of the Act allows Federally-recognized Tribes, Tribal

8

DHS 374537

consortia, and Tribal organizations to apply to ACF to receive title IV-E funds directly for foster care, adoption assistance, and, at Tribal option, for guardianship assistance programs. In addition, Section 477(j) of the Act creates an option for Tribes, with an approved title IV-E plan or a title IV-E Tribal/State agreement, to receive directly from ACF a portion of the State's CFCIP and/or ETV allotments to provide services to Tribal foster/former foster youth.

The opportunity to operate a title IV-E, CFCIP, and/or ETV program is not time limited. A Tribe has the discretion to determine whether or when it wants to develop its own title IV-E, CFCIP, and/or ETV programs. States remain responsible for serving resident Indian children who are not otherwise being served by an Indian Tribe under an agreement with the State or under a direct title IV-E, CFCIP, and/or ETV plan (section 301(d)(2) of P.L. 110-351). The law explicitly permits Indian Tribes to continue existing title IV-E agreements with States and/or enter into new agreements with States to administer all or part of the title IV-E program on behalf of Indian children and to access title IV-E administration, training, and data collection resources (section 479B(e) of the Act). States must negotiate in good faith with Indian Tribes, Tribal consortia, and Tribal organizations seeking title IV-E Tribal/State agreements (section 471(a)(32) of the Act).

To support such Tribal/State agreements, the law permits Federal reimbursement of title IV-E assistance payments under such agreements at the Tribal Federal Medical Assistance Percentage (FMAP) rate, if that rate is higher than the State FMAP rate (section 474(a)(1) and (2) of the Act). (See ACYF-CB-IM-11-05, issued September 30, 2011, for information on the methodology for establishing Tribal FMAP rates.) For a table listing FY 2014 Tribal FMAP rates, please see: http://www.acf.hhs.gov/programs/cb/focus-areas/tribes.

## 5. Health Care Services

Section 422(b)(15)(A) of the Act requires States to develop a plan for ongoing oversight and coordination of health care services for children in foster care. States must develop the plan in coordination with the State title XIX (Medicaid) agency, and in consultation with pediatricians and other experts in health care, and experts in and recipients of child welfare services.

Reflecting all amendments, the Health Care Oversight and Coordination Plan must include an outline of the items listed below:

- A schedule for initial and follow-up health screenings that meet reasonable standards of medical practice;
- How health needs identified through screenings will be monitored and treated, including emotional trauma associated with a child's maltreatment and removal from home;
- How medical information will be updated and appropriately shared, which may include developing and implementing an electronic health record;
- Steps to ensure continuity of health care services, which may include establishing a medical home for every child in care;
- The oversight of prescription medicines, including protocols for the appropriate use and monitoring of psychotropic medications;

DHS 374538

- How the State actively consults with and involves physicians or other appropriate medical or non-medical professionals in assessing the health and well-being of children in foster care and in determining appropriate medical treatment for the children; and
- Steps to ensure that the components of the transition plan development process required under section 475(5)(H) that relate to the health care needs of youth aging out of foster care, including the requirements to include options for health insurance, information about a health care power of attorney, health care proxy, or other similar document recognized under State law, and to provide the child with the option to execute such a document, are met.

On August 27 and 28, 2012, CB sponsored the "Because Minds Matter: Collaborating to Strengthen Management of Psychotropic Medications for Children and Youth in Foster Care" summit to bring together State agencies to create action plans to improve their oversight of psychotropic medications. The Summit was organized around the elements identified in ACYF-CB-IM-12-03 of an effective protocol to oversee the use of psychotropic medications and included presentations on:

- Comprehensive and coordinated screening, assessment, and treatment planning mechanisms to identify children's mental health and trauma-treatment needs (including a psychiatric evaluation, as necessary, to identify needs for psychotropic medication);
- Informed and shared decision-making (consent and assent) and methods for ongoing communication between the prescriber, the child, his/her caregivers, other healthcare providers, the child welfare worker, and other key stakeholders;
- Effective medication monitoring at both the client and agency level;
- Availability of mental health expertise and consultation regarding both consent and monitoring issues by a board-certified or board-eligible Child and Adolescent Psychiatrist (at both the agency and individual case level); and
- Mechanisms for sharing accurate and up-to-date information related to psychotropic medications to clinicians, child welfare staff, and consumers, including both data sharing mechanisms (e.g., integrated information systems) and methods for sharing educational materials.

Useful materials from the meeting and presentations can be found at: http://www.pal-tech.com/web/psychotropic/.

For the APSR submission, States must provide information on any modifications to the Health Care Oversight and Coordination Plan, including those resulting from the "Because Minds Matter Summit," that the State, in conjunction with health care professionals, has determined are necessary.

DHS 374539

**6. Disaster Plans**

Section 422(b)(16) of the Act requires that States have in place procedures explaining how the State programs assisted under title IV-B, subparts 1 and 2, and title IV-E, would respond to a disaster, in accordance with criteria established by the Secretary. These procedures should describe how a State would:

- Identify, locate, and continue availability of services for children under State care or supervision who are displaced or adversely affected by a disaster;
- Respond, as appropriate, to new child welfare cases in areas adversely affected by a disaster, and provide services in those cases;
- Remain in communication with caseworkers and other essential child welfare personnel who are displaced because of a disaster;
- Preserve essential program records; and
- Coordinate services and share information with other States.

States are required to review their previously submitted disaster plan to determine if changes are needed. If the State determines changes are necessary, describe in the APSR the changes the State is making or include an updated disaster plan. If the State determines that no changes are necessary, note this fact in the APSR. Specify whether the State was affected by a disaster since the last APSR, and, if so, describe how the plan was used and assess its effectiveness.

**7. Foster and Adoptive Parent Recruitment**

Section 422(b)(7) of the Act requires that the State's CFSP provide for the diligent recruitment of foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed. In the APSR, describe the State's progress and accomplishments made since the last APSR, citing any relevant data, and describe planned activities for recruiting foster and adoptive families in FY 2014. States are encouraged to utilize the resources and information developed by or available through AdoptUSKids located at: http://www.adoptuskids.org/.

**8. Monthly Caseworker Visit Formula Grants**

Monthly Caseworker Visit grants are provided to States to improve the quality of caseworker visits with an emphasis on improving caseworker decision-making on the safety, permanency, and well-being of foster children and caseworker recruitment, retention and training (section 436(b)(4)(B)(i) of the Act).

For FYs 2013 and 2014, States are required to ensure that the total number of monthly caseworker visits to children in foster care is not less than 90 percent of the total visits that would be made if each child were visited once per month. In FY 2015 and thereafter, States are required to ensure the total number of monthly casework visits is not less than 95 percent of the total visits that would be made if each child were visited once per month. In addition, at least 50 percent of the total number of monthly visits made by caseworkers to children in foster care must occur in the child's residence.

11

DHS 374540

In the APSR, States must describe their use of the Monthly Caseworker Visit Grant and their continued action steps to ensure that these standards are met. See ACYF-CB-PI-12-01, issued January 6, 2012, for more information on monthly caseworker visit performance standards and data requirements.

Also refer to information in Section F of this PI, "Statistical and Supporting Information," for instructions on submitting FY 2013 caseworker visit data.

### 9. Adoption Incentive Payments

P.L. 110-351 re-authorized the Adoption Incentives Program, amending section 473A of the Act to extend the program through FY 2013 and make other changes, as outlined in ACYF-CB-IM-09-03, issued September 1, 2009. Thirty States received adoption incentive awards in FY 2012.

States were required to specify in the CFSP the services they expected to provide to children and families with the adoption incentive funds and the State's plans for timely expenditure of the funds. In the APSR, report on how Adoption Incentive funds received during FY 2012 were or will be spent and describe any changes to how the State plans to use such funds should they receive Adoption Incentive funds in the coming fiscal year. Address any issues or challenges the State has encountered in expending funds in a timely manner.

### 10. Child Welfare Waiver Demonstration Activities (applicable States only)

If the State has an approved child welfare waiver demonstration project under section 1130 of the Act, it must provide a description of its coordination efforts to integrate the activities under the demonstration with the goals and objectives of the CFSP. In particular, the State must discuss how title IV-B monies are used to maximize the use of flexible title IV-E dollars in the demonstration.

### 11. Quality Assurance System

Federal regulations at 45 CFR 1357.15(u) require States to describe in their CFSP the Quality Assurance (QA) system it uses to regularly assess the quality of services under the CFSP and assure that there are steps taken to address identified problems. However, in working with States in implementing program improvement activities required by the Child and Family Services Reviews, CB learned that many State QA systems are in need of refinements to assess and measure improvements on an ongoing basis. On August 27, 2012, CB issued Information Memorandum ACYF-CB-IM-12-07 on establishing and maintaining Continuous Quality Improvement (CQI) systems (http://www.acf.hhs.gov/sites/default/files/cb/im1207.pdf). In that IM, CB advised States to maintain their QA systems and enhance them through a continuous quality improvement approach. A continuous quality improvement approach allows States to measure the quality of services provided by determining the impact those services have on child and family level outcomes and functioning. Such an approach also helps States determine the effectiveness of processes and systems in operation in the State and/or required by Federal law.

DHS 374541

In the APSR, assess the State's current QA/CQI system based upon the information shared in IM-12-07 and any improvements elected or planned. In the IM, CB advised States to focus on the following:

- Foundational administrative structure;
- Quality data collection;
- Case record review data and process;
- Analysis and dissemination of quality data; and
- Feedback to stakeholders and decision makers and adjustment of programs and process.

The APSR should also include any training or technical assistance the State anticipates needing from CB resources or other partners.

In addition, in the APSR, provide an update on QA/CQI results and data that have been used to update goals, objectives, planned strategies or use of funds in the APSR. Also describe any specific practice or systems improvements the State has made since the last APSR based on QA/CQI findings.

## 12. Services for Children Under the Age of Five

P.L. 112-34 added a title IV-B, subpart 1 plan requirement to require the State title IV-B agency to "include a description of the activities that the State has undertaken to reduce the length of time children who have not attained 5 years of age are without a permanent family, and the activities the State undertakes to address the developmental needs of such children who receive benefits or services under this part or part E" (section 422(b)(18) of the Act).
CB understands this requirement to apply to all children under age 5 in foster care regardless of the child's permanency plan, legal status or placement status. (In reviewing last year's APSR submissions, we noted that some States had interpreted the requirement to apply to only a subset of such children, e.g., children awaiting adoptive placements.)

In the APSR, States must report on their efforts to provide developmentally appropriate services to this population. Services must recognize the distinct developmental needs of infants, toddlers, and children and the need to promote well-being, assess for developmental delays, and promote and expedite the permanency of these children. This information must include:

- The number of children under the age of five projected to be in foster care in FY 2014, compared to the number of such children in FY 2013;
- The method the State uses to identify and follow these children to ensure oversight of age-appropriate services (e.g. specialized data reports, staff assignments to these cases, and other oversight mechanisms);
- The demographics and characteristics of the identified children;
- Changes or updates to the targeted services provided to these children to find a permanent family and how they address the developmental needs of infants, toddlers, and children;

13

DHS 374542

- Changes or updates to the approach that have been developed for working with this group of infants, toddlers, and children (e.g. priorities for safety assessments, service delivery for reunification, and standards regarding the foster parent-to-child ratio); and
- Changes or updates to how the State addresses the training and supervision of caseworkers, foster parents, and other providers with respect to this population.

## 13. Child Maltreatment Deaths

CAPTA requires States receiving the CAPTA State grant to provide, to the maximum extent practicable, an annual State data report relating to child abuse and neglect and child protective services. Most of the data elements for the annual report are collected through the National Child Abuse and Neglect Data System (NCANDS). One data element requires States to report the number of deaths in the State during the year resulting from child abuse and neglect (Section 106(d)(5) of CAPTA).

While NCANDS has collected and reported data on child maltreatment fatalities for many years, there is concern that the data States report to NCANDS may not capture all fatalities attributable to child abuse and neglect. In July 2011, the U.S. Government Accountability Office issued a report entitled "Strengthening National Data on Child Fatalities Could Aid in Prevention" (GAO-11-599) addressing this topic. Among the issues discussed in the report was the sources of data States consult when submitting information to NCANDS.

In light of the GAO report and congressional concerns on this topic, P.L. 112-34 added a new title IV-B, subpart 1 plan requirement that State title IV-B agencies must describe in their plan the sources of data used to report child maltreatment fatality data to NCANDS. Specifically, States must describe the sources used to compile information on child maltreatment deaths and, if applicable, why certain sources of information from the State vital statistics department, child death review teams, law enforcement agencies or offices of medical examiners or coroners are excluded and how the agency will include the information (section 422(b)(19) of the Act).

Therefore, in the APSR, States must:

- Describe all sources of information relating to child maltreatment fatalities that it currently uses to report data to NCANDS;
- If the State does not use information from the State's vital statistics department, child death review teams, law enforcement agencies and medical examiners' offices when reporting child maltreatment fatality data to NCANDS, explain why any of these sources are excluded; and
- If not currently using all sources of child maltreatment fatality data listed in the previous bullet, describe the steps the agency will take to expand the sources of information used to compile this information.

To ensure that information in the APSR is consistent with related information reported directly to NCANDS, each State's contact for NCANDS should be consulted in developing this response in the APSR. A list of NCANDS State contacts is provided in Attachment D.

DHS 374543

**Section D.  Child Abuse Prevention and Treatment Act State Plan Requirements**

To be eligible to receive a FY 2012 CAPTA State grant, each State was required to submit a new CAPTA State Plan.  States no longer need to submit a new CAPTA State Plan every five years but CB will continue to require that the annual report describing use of CAPTA funds required by Section 108(e) of CAPTA be submitted with the APSR.

For continued CAPTA funding, States must:

- Describe substantive changes, if any, to State law or regulations, including laws and regulations relating to the prevention of child abuse and neglect, that could affect the State's eligibility for the CAPTA State grant (section 106(b)(1)(C)(i)).  The State must also include an explanation from the State Attorney General as to why the change would, or would not, affect eligibility.  Note:  States do not have to notify ACF of statutory changes or submit them for review if they are not substantive and would not affect eligibility.

- Describe any significant changes from the State's previously approved CAPTA plan in how the State proposes to use funds to support the 14 program areas (section 106(b)(1)(C)(ii)).

- Describe how CAPTA State grant funds were used, alone or in combination with other Federal funds, in support of the State's approved CAPTA plan to meet the purposes of the program since the submission of the last APSR (section 108(e) of CAPTA).

- Submit a copy of the annual report(s) from the citizen review panels and a copy of the State agency's most recent response(s) to the panels and State and local child protective services agencies, as required by section 106(c)(6).

*CAPTA Fatality and Near Fatality Public Disclosure Policy*

Section 106(b)(2)(B)(x) of CAPTA requires States to assure that the State will provide for the public disclosure of findings or information about a case of child abuse or neglect which results in a child fatality or near fatality. In September 2012, CB issued revised policy regarding the requirements for States to disclose to the public information about child fatalities and near fatalities that are a result of child abuse or neglect. (See Child Welfare Policy Manual Section 2.1A.4 http://www.acf.hhs.gov/cwpm/programs/cb/laws_policies/laws/cwpm/policy_dsp.jsp?citID=68)

Previously, States were required to have procedures to release available facts about a case of child abuse or neglect that resulted in a fatality or near fatality to the public, but there was no requirement about the specific minimum information the State was required to release to the public. When disclosing information to the public, States are now required to provide the following minimum information:

- The cause and circumstances regarding the child fatality or near fatality.

15

DHS 374544

- The age and gender of the child.
- Information describing any previous reports of child abuse or neglect that are pertinent to the abuse or neglect that led to the child fatality or near fatality.
- Information describing any previous investigations pertinent to the abuse or neglect that led to the child fatality or near fatality.
- The result of any such investigations.
- The services provided by the State and actions of the State on behalf of the child that are pertinent to the child abuse or neglect that led to the child fatality or near fatality.

States may allow exceptions to the release of information in order to ensure the safety and well-being of the child, parents and family or when releasing the information would jeopardize a criminal investigation, interfere with the protection of those who report child abuse or neglect or harm the child or the child's family. (Previously, the Child Welfare Policy Manual had addressed only the exception to releasing information to avoid jeopardizing a criminal investigations or proceedings.)

All States previously submitted CAPTA assurances signed by the State's Governor regarding section 106(b)(2)(B)(x) of CAPTA. The certification indicates that the State has in effect and is enforcing a State law, or has in effect and is operating a Statewide program, relating to child abuse and neglect which includes "provisions which allow for the public disclosure of the finding or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality."

The State's public disclosure procedures must adhere to the updated guidance in section 2.1A.4 of the Child Welfare Policy Manual regarding section 106(b)(2)(B)(x) of CAPTA. If the State's procedures do not, the State must describe in the CAPTA section of the APSR the actions the State will take to meet the assurance, such as necessary changes to law or policies and the timeframe required, and resubmit the assurance when the actions are completed.

*Additional Information*

States must include all required information indicated above in their APSR submission. Missing or incomplete information will result in the withholding of CAPTA funds until such time as approval can be granted by CB. Please note that compliance with the eligibility requirements for a CAPTA State Grant Program is a prerequisite for eligibility to receive funding under the Children's Justice Act State Grant Program, authorized by section 107(a) of CAPTA.

Finally, to facilitate ongoing communication between CB and States on issues relating to CAPTA and child abuse and neglect, please submit the name, address, and email for the State CAPTA coordinator (also known as the State Liaison Officer) or where this information can be found on the State's website.

16

DHS 374545

**Section E.  Chafee Foster Care Independence and Education and Training Vouchers Programs**

In addition to the information described in Section C, items 1-3, above (Program Service Description, Collaboration and Program Support), the CFCIP requires that the following specific information be incorporated into the APSR:

- Report on the State's specific accomplishment achieved since the last APSR and planned activities for FY 2014 for each of the following seven purpose areas:

  1. Help youth transition to self-sufficiency;
  2. Help youth receive the education, training, and services necessary to obtain employment;
  3. Help youth prepare for and enter post-secondary training and educational institutions;
  4. Provide personal and emotional support to youth aging out of foster care through mentors and the promotion of interactions with dedicated adults;
  5. Provide financial, housing, counseling, employment, education, and other appropriate support and services to former foster care recipients between 18 and 21 years of age to complement their own efforts to achieve self-sufficiency and to assure that program participants recognize and accept their personal responsibility for preparing for and then making the transition into adulthood;
  6. Make available vouchers for education and training, including postsecondary education, to youth who have aged out of foster care; and
  7. Provide services to youth who, after attaining 16 years of age, have left foster care for kinship guardianship or adoption.

- Report activities performed since the last APSR and planned for FY 2014 to coordinate services with other Federal and State programs for youth (especially transitional living programs funded under Part B of the Juvenile Justice and Delinquency Prevention Act of 1974, abstinence programs, local housing programs, programs for disabled youth (especially sheltered workshops), and school-to-work programs offered by high schools or local workforce agencies in accordance with section 477(b)(3)(F) of the Act.

- Provide information on specific training that was conducted since the last APSR and planned for FY 2014 in support of the goals and objectives of the States' CFCIP and to help foster parents, relative guardians, adoptive parents, workers in group homes, and case managers understand and address the issues confronting adolescents preparing for independent living, consistent with section 477(b)(3)(D) of the Act.  Such training should be incorporated into the APSR training plan, but identified as pertaining to CFCIP, with costs allocated appropriately.

- If applicable, update the information regarding service design and delivery of a new or changed trust fund program for States that choose to establish a trust fund program for youth receiving independent living services or transition assistance.  Note:  CFCIP funds

17

DHS 374546

placed in a trust fund must be expended during the applicable grant period. Refer to ACYF-CB-PI-05-06, issued October 12, 2005, for current guidance on trust funds.

- Describe any activities undertaken to involve youth (up through age 20) in State agency efforts such as the CFSR/PIP process and the agency improvement planning efforts.

- Describe, if applicable, how the State utilizes, or plans to utilize, the option to expand Medicaid to provide services to youth ages 18 through 20 years old who have aged out of foster care.

- Provide results of the Indian Tribe consultation (section 477(b)(3)(G) of the Act), specifically, as it relates to determining eligibility for benefits and services and ensuring fair and equitable treatment for Indian youth in care:

  o Describe how each Indian Tribe in the State has been consulted about the programs to be carried out under the CFCIP.
  o Describe the efforts to coordinate the programs with such Tribes.
  o Discuss how the State ensures that benefits and services under the programs are made available to Indian children in the State on the same basis as to other children in the State.
  o Report the CFCIP benefits and services currently available and provided for Indian children and youth in fulfillment of this section and the purposes of the law.
  o Describe whether and how the State has negotiated, in good faith, with any Tribe that requested to develop an agreement to administer or supervise the CFCIP or an ETV program with respect to eligible Indian children and to receive an appropriate portion of the State's allotment for such administration or supervision. Describe the outcome of that negotiation.

Education and Training Voucher Program

In addition to the information described in Section C, items 1-3, above (Program Service Description, Collaboration and Program Support), ETV requires that the following specific information be incorporated into the APSR:

- Describe the specific accomplishments and progress to establish, expand, or strengthen the State's postsecondary educational assistance program to achieve the purpose of the ETV program.

- Indicate how the ETV program is administered, whether by the State child welfare agency in collaboration with another State agency or another contracted ETV provider, if changed.

18

DHS 374547

**Section F. Statistical and Supporting Information**

The following information must be reported on in the APSR:

1. <u>Education and Training Vouchers</u>:  Identify the number of youth who received ETV awards from July 1, 2011 through June 30, 2012 (the 2011-2012 School Year) and July 1, 2012 through June 30, 2013 (the 2012-2013 School Year).  States may estimate a total if they do not have the total number for the 2012-2013 School Year.

   Report the number of youth who were new voucher recipients in each of the school years. To facilitate more consistent reporting, please use Attachment E for a format to report information on the ETVs awarded.

2. <u>Inter-Country Adoptions:</u>  Report the number of children who were adopted from other countries and who entered into State custody in FY 2012 as a result of the disruption of a placement for adoption or the dissolution of an adoption, the agencies who handled the placement or the adoption, the plans for the child, and the reasons for the disruption or dissolution.  (See section 422(b)(12) of the Act.)

3. <u>CAPTA Annual State Data Report Items</u>:  Each State receiving the CAPTA State grant must annually provide, to the maximum extent practicable, an Annual State Data Report. The complete list of data elements to be included in the report can be found in section 106(d) of CAPTA.  Most information for this report is collected through State participation in NCANDS.  The following items are to be included in the APSR submission.

   *Information on Child Protective Service Workforce*:  For child protective service personnel responsible for intake, screening, assessment, and investigation of child abuse and neglect reports in the State, report available information or data on the following:

   - information on the education, qualifications, and training requirements established by the State for child protective service professionals, including requirements for entry and advancement in the profession, including advancement to supervisory positions;

   - data on the education, qualifications, and training of such personnel;

   - demographic information of the child protective service personnel; and

   - information on caseload or workload requirements for such personnel, including requirements for average number and maximum number of cases per child protective service worker and supervisor (section 106(d)(10) of CAPTA).

   If the State was unable last year and continues to be unable this year to provide all the requested information relating to the child protective service workforce, please provide an explanation as to why that information is not currently available, and describe steps the State will take to be able to report the information in the future.

DHS 374548

*Juvenile Justice Transfers*: Report the number of children under the care of the State child protection system who were transferred into the custody of the State juvenile justice system in Federal FY 2012 (specify if another time period is used). Provide contextual information about the source of this information and how the State defines the reporting population (section 106(d)(14) of CAPTA).

4. Monthly Caseworker Visit Data: States are required to collect and report data on monthly caseworker visits with children in foster care (section 424(f) of the Act). Data for FY 2013 is to be reported separate from the APSR and will be due for submission to CB by **December 16, 2013**. The statute established the following performance standards for caseworker visits in FY 2013:

- The total number of visits made by caseworkers on a monthly basis to children in foster care during a fiscal year must not be less than 90 percent of the total number of such visits that would occur if each child were visited once every month while in care.

- At least 50 percent of the total number of monthly visits made by caseworkers to children in foster care during a fiscal year must occur in the child's residence.

States are required to submit data for FY 2013 according to the requirements found in section 424(f) of the Act, as amended. Additional information on the requirement was provided in ACYF-CB-PI-12-01, issued on January 6, 2012.

States must submit the data listed in items #1-4 specified in *Data Needed for Computation and Verification* and the derived percentages specified in *Calculation of Percentages*. Caseworker visit data for FY 2013 must cover the full Federal fiscal year, from October 1, 2012 through September 30, 2013.

*Data Needed for Computation and Verification*
The following four data elements are required to compute the percentages and verify the selection of the data reporting population for FY 2013:

1. The aggregate number of children in the data reporting population;

2. The total number of monthly caseworker visits made to children in the reporting population. If multiple visits were made to a child during the calendar month, the State must count them as one monthly visit;

3. The total number of complete calendar months children in the reporting population spent in care;

4. The total number of monthly visits made to children in the reporting population that occurred in the child's residence. If multiple visits were made to a child during the month and at least one of those visits occurred in the child's residence,

DHS 374549

the State should count and report that <u>one</u> monthly visit occurred in the residence of the child.

*Calculation of Percentages*
Based on these four data elements, States must calculate percentages in the following way:

- The *percentage of visits made on a monthly basis by caseworkers to children in foster care* is determined by taking the number of monthly visits made to children in the reporting population (item #2) and dividing it by the number of such visits that would occur during the FY if each such child were visited once per month while in care (item #3). The quotient is multiplied by 100 and expressed as a percentage, rounded to the nearest whole number.

- The *percentage of visits that occurred in the residence of the child* is determined by taking the number of monthly visits made to children in the reporting population that occurred in the residence of the child (item #4) and dividing it by the total number of monthly visits made to children in the reporting population (item #2). The quotient is multiplied by 100 and expressed as a percentage, rounded to the nearest whole number.

*Verification of Data Reporting Population*
CB will assess the accuracy and completeness of the data reporting population by comparing the aggregate number of children who are in the reporting population (item #1) to an extract of equivalent data the State reports through AFCARS for the two six-month periods that make up the same FY. The State must satisfactorily explain differences of greater than +/- 10 percent between the two sources as a condition of ACF acceptance of the caseworker visit reporting data.

*Option to Use Sampling*
Any State wishing to use a sampling methodology to fulfill the revised monthly caseworker data reporting requirements must contact its CB RO to obtain approval before submitting data for FY 2013. To gain approval, the State must either obtain an updated sampling methodology developed by the CB Data Team or develop its own sampling methodology in consultation with the CB Data Team.

In reporting data, States must identify whether any of the submitted data (items #1-4 under *Data Needed for Computation and Verification*) were derived through sampling.

*Potential Reduction in Federal Financial Participation (FFP)*
Changes to sections 424(f)(1)(B) and 424(f)(2)(B) of the Act require a reduction in FFP for failure to meet the percentages for monthly caseworker visits and visits in the residence of the child as prescribed in statute. The following chart details the FFP reductions associated with each level of non-compliance:

21

DHS 374550

| If the title IV-B agency falls short of statutory percentage by: | The Federal match for the title IV-B, subpart 1 will be reduced by: |
|---|---|
| Less than 10% | 1 percentage point |
| 10% to less than 20% | 3 percentage points |
| 20% or more | 5 percentage points |

The FFP reductions will be separately assessed for the monthly caseworker visit requirement and the visits in the residence of the child requirement. For example, if the percentage of the State's required monthly visits in a single FY is 14 percent below the required level and the percentage of the visits occurring in the residence of the child is five percent below the required level, the FFP rate reduction applied to title IV-B, subpart 1 funds in the following FY would be 4 (3+1) percentage points.

In any FY in which a State fails to meet the prescribed minimum percentage for one or both data requirements, CB will continue to make the full Federal allotment available to the State, but the State must increase its match rate in order to access the full Federal allotment. Any FFP reduction(s) shall be combined and applied to the title IV-B, subpart 1 funding allocation for the FY following the year for which the required compliance level was not met.

### Section G.  Financial Information

1. **Payment Limitations – Title IV-B, Subpart 1:**

   - States may not spend more title IV-B, subpart 1, funds for child care, foster care maintenance and adoption assistance payments in FY 2014 than the State expended for those purposes in FY 2005 (section 424(c) of the Act). The APSR submission must include information on the amount of FY 2005 title IV-B, subpart 1, funds that the State expended for child care, foster care maintenance, and adoption assistance payments for comparison purposes. States are also advised to retain this information in their files for comparison with expenditure amounts in future fiscal years.

   - The amount of State expenditures of non-Federal funds for foster care maintenance payments that may be used as match for the FY 2014 title IV-B, subpart 1 award may not exceed the amount of such non-Federal expenditures applied as State match for title IV-B, subpart 1 for the FY 2005 grant (section 424(d) of the Act). The APSR submission must include information on the amount of non-Federal funds that were expended by the State for foster care maintenance payments and used as part of the title IV-B, subpart 1 State match for FY 2005. States are also advised to retain this information in their files for comparison with expenditure amounts in future fiscal years.

22

DHS 374551

- States may spend no more than ten percent of title IV–B, subpart 1 Federal funds for administrative costs (section 424(e) of the Act). States must provide the estimated expenditures for administrative costs, if any, on the CFS-101, Parts I and II.

## 2. Payment Limitations – Title IV–B, Subpart 2

- States are required to spend a significant portion of their title IV–B, subpart 2 PSSF grant for each of the four service categories of PSSF: family preservation, community-based family support, time-limited family reunification, and adoption promotion and support services. For each service category with a percentage of funds that does not approximate 20 percent of the grant total, the State must provide in the narrative portion of the APSR a rationale for the disproportion. The amount allocated to each of the service categories should only include funds for service delivery. States should report separately the amount to be allocated to planning and service coordination. States must provide the estimated expenditures for the described services on the CFS-101, Part II.

- States may spend no more than ten percent of Federal funds under title IV–B, subpart 2 for administrative costs (section 434(d) of the Act). This limitation applies to both the PSSF Program and the Monthly Caseworker Visit grant. States must provide the estimated expenditures for administrative costs, if any, on the CFS-101, Parts I and II.

- States must provide the FY 2011 State and local share expenditure amounts for the purposes of title IV–B, subpart 2 for comparison with the State's 1992 base year amount, as required to meet the non-supplantation requirements in section 432(a)(7)(A) of the Act.

## 3. FY 2013 Funding—Revised CFS-101 Budget Request

- If the State's final FY 2013 allotment for any of the programs addressed in the APSR (see Attachment A) is greater than the amount indicated on its previously submitted and approved CFS-101 for FY 2013, and the State wishes to receive that higher amount of funding, it must submit a revised FY 2013 budget form reflecting the higher level of funding (CFS-101, Part I). A revised CFS-101 is not required if the final allocation is less than the amount previously approved on the CFS-101 for FY 2013.

- Unneeded portions of FY 2013 State allocations of title IV–B, CFCIP, and ETV funds may be re-allotted to other States so that the total appropriation remains available for program purposes (sections 423(e), 433(d) and 477(d)(4) of the Act). Therefore, if the State intends to release or apply for funds for reallocation for the title IV–B, subpart 2, the CFCIP, or the ETV program, please note the amounts you are releasing or requesting on the appropriate lines of a revised FY 2013 CFS-101. (See form instructions in Attachment B for more details.) ACF will re-allocate the funds in accordance with the prescribed formulas. Funds will be re-allocated before the end of the fiscal year and must be expended by September 30, 2014.

23

DHS 374552

4. **FY 2014 Budget Request—CFS-101, Parts 1 and II**

- Complete Part I of the CFS-101 form to request title IV-B, subpart 1 (CWS) and title IV-B, subpart 2 (PSSF and Monthly Caseworker Visit funds), CAPTA, CFCIP, and ETV funds. Use the FY 2013 allocation tables in Attachment A as the basis for estimating FY 2014 budget requests.

- Complete Part II of the CFS-101 to include the estimated amount of funds to be spent in each program area by source, the estimated number of individuals and families to be served, and the geographic service area within which the services are to be provided.

5. **FY 2011 Title IV-B Expenditure Report—CFS-101, Part III**

Complete Part III of the CFS-101 to report the actual amount of FY 2011[2] funds expended in each program area of title IV-B funding by source, the number of individuals and families served, and the geographic service area within which the services were provided. The State must track and report annually its actual title IV-B expenditures, including administrative costs for the most recent preceding fiscal year funds for which a final Financial Status Report (SF-425) has come due. Therefore, States must now report FY 2011 information (FY 2011 final financial status reports (SF-425) were due on December 29, 2012) for the title IV-B programs on the form CFS-101, Part III. At State option, complete this form to show actual FY 2011 expenditures for the CFCIP and ETV programs, as well.

6. **Financial Status Reports Standard Form (SF) 425**

All grantees must report expenditures under title IV-B, subparts 1 and 2, CAPTA, and CFCIP on the Financial Status Report, SF-425. This report replaces the formerly used Financial Status Report SF-269 effective for reports due on February 1, 2011 or later dates. A separate SF-425 must be submitted for each program and the Federal funds awarded under it for each fiscal year. Submission requirements for each program are listed below under the appropriate heading. A negative grant award will recoup unobligated and/or unliquidated funds reported on the final SF-425 for the title IV-B programs, CAPTA, CFCIP and ETV programs.

States are required to submit an electronic SF-425 for the programs listed above through the ACF Online Data Collection (OLDC) system. Because reports will be submitted

---

[2] Federal funds for these programs are awarded to States on a yearly basis, but may be spent over a two-year period. For example the FY 2011 grant allocation had an expenditure period from October 1, 2010 to September 30, 2012. Therefore, any fiscal year 2011 funds must be obligated during that two-year period of time and subsequently reported on the CFS-101 form, Part III.

DHS 374553

electronically through OLDC, paper copies do not need to be submitted. For more information on gaining access to and using the OLDC submission process, please contact your ACF RO Grants Management Officer or specialist. (See ACF Grants Management Action Transmittal OA-ACF-AT-01-05.)

*Title IV-B, subpart 1*

States are required to submit the SF-425 fiscal report for expenditures under title IV-B, subpart 1 at the end of each 12 months (October 1 through September 30) of the two-year expenditure period. Both reports are due 90 days after the end of the fiscal year (December 29). The SF-425 fiscal report covering the first 12-month budget period is the interim report and the report covering the entire grant period is the final report. The required 25 percent State match must be reported on the interim and final fiscal reports. (A State that has been notified of the need to provide a higher percentage match for a specific fiscal year due to a determination that the State has failed to meet its established target for the percentage of children in foster care who were visited each and every calendar month, must report that higher match on the final fiscal form [section 424(f)(2)(B) of the Act].) Funds under title IV-B, subpart 1 must be expended by September 30 of the fiscal year following the fiscal year in which the funds were awarded (e.g., for FY 2014 grants, funds must be obligated by September 30, 2015, and liquidated by December 29, 2015).

*Title IV-B, subpart 2 – PSSF*

States are required to submit the SF-425 fiscal report for expenditures under the title IV-B, subpart 2 PSSF program at the end of each 12 months (October 1 through September 30) of the two-year expenditure period. Both reports are due 90 days after the end of the fiscal year (December 29). The SF-425 fiscal report covering the first 12-month budget period is the interim report and the report covering the entire grant period is the final report. The required 25 percent State match must be reported on the interim and final fiscal reports. Funds under title IV-B, subpart 2 (PSSF) must be expended by September 30 of the fiscal year following the fiscal year in which the funds were awarded (e.g., for FY 2014, funds must be obligated by September 30, 2015, and liquidated by December 29, 2015).

Since the discretionary funds under PSSF are to be expended for the same purposes as the mandatory funds, no separate reporting is required to distinguish between the expenditure of the two amounts. Grantees are to report the cumulative amount on the financial status report (SF-425). Funds reported as unobligated on the final financial status report will be recouped from the discretionary amount first.

*Title IV-B, subpart 2 – Monthly Caseworker Visit Funds*

States are required to submit the SF-425 fiscal report for expenditures under the title IV-B, subpart 2 Monthly Caseworker Visit program at the end of each 12 months (October 1

DHS 374554

through September 30) of the two-year expenditure period. (These reports are to be separate from the SF-425 reports for the PSSF program.)

States are to submit the SF-425 report at the end of each 12 months of the two-year expenditure period. Both reports are due 90 days after the end of each Federal fiscal year (December 29). The SF-425 fiscal report covering the first 12-month budget period is the interim report and the report covering the entire grant period is the final report. Funds for these years must be expended by September 30 of the fiscal year following the fiscal year in which the funds were awarded (e.g., for FY 2014, funds must be obligated by September 30, 2015 and liquidated by December 29, 2015). The required 25 percent State match must be reported on the interim and final fiscal reports.

*CAPTA*

Funds under CAPTA must be expended within five years (e.g., for the FY 2014 award, funds must be expended by the State by September 30, 2018). States are required to submit the SF-425 fiscal report for CAPTA at the end of each 12 months (October 1 through September 30) of the five-year expenditure period. The SF-425 fiscal report covering each 12-month budget period is an interim report and the report covering the entire grant period is the final report. Both the interim and the final reports are due 90 days after the end of each 12-month period (December 29). There is no State match requirement for this program.

*CFCIP and ETV*

Funds under CFCIP and ETV must be expended within two years. States are required to submit separate SF-425 fiscal reports for the CFCIP and ETV programs. States are required to submit the SF-425 fiscal report for expenditures under the CFCIP and ETV programs at the end of each 12 months (October 1 through September 30) of the two-year expenditure period. Reports are due 90 days after the end of each fiscal year (December 29). The SF-425 fiscal report covering the first 12-month budget period is the interim report and the report covering the entire grant period is the final report. The required 20 percent State match must be reported on the interim and final fiscal reports. Funds under CFCIP and ETV must be expended by September 30 of the fiscal year following the fiscal year in which the funds were awarded (e.g., for FY 2014, funds must be obligated by September 30, 2015, and liquidated by December 29, 2015).

**Paperwork Reduction Act:**

Under the Paperwork Reduction Act of 1995 (P.L. 104-13), an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. The Control Number for this OMB approved information collection is 0980-0047, approved through October 31, 2014.

DHS 374555

**Inquiries To:** CB Regional Program Managers

/s/

Bryan Samuels
Commissioner

Attachment A:
Fiscal Year 2013 Allotment Title IV-B Subpart 1 Stephanie Tubbs Jones Child Welfare Services
Fiscal Year 2013 Allotment Title IV-B Subpart 2 Promoting Safe and Stable Families
Fiscal Year 2013 Allotment for Title IV-B, Subpart 2 Monthly Caseworker Visit Funds
Fiscal Year 2013 Allotment for CAPTA
Fiscal Year 2013 Allotment for Chafee Foster Care Independence Program
Fiscal Year 2013 Allotment for Education and Training Vouchers

Attachment B:
CFS-101 Part I:  Annual Budget Request for Title IV-B, subparts 1 and 2, CAPTA, Chafee
Foster Care Independence (CFCIP) and Education and Training Voucher (ETV) Program
Instructions
CFS-101 Part I:  Annual Budget Request for Title IV-B, subparts 1 and 2, CAPTA, Chafee
Foster Care Independence (CFCIP) and Education and Training Voucher (ETV) Program Form
CFS-101, Part II:  Annual Summary of Child and Family Services Instructions
CFS-101, Part II:  Annual Summary of Child and Family Services Form
CFS-101, Part III:  Annual Expenditures for Title IV-B, subparts 1 and 2, CAPTA, Chafee Foster
Care Independence (CFCIP) and Education and Training Voucher (ETV) Instructions
CFS-101, Part III:  Annual Expenditures for Title IV-B, subparts 1 and 2, CAPTA, Chafee Foster
Care Independence (CFCIP) and Education and Training Voucher (ETV) Form

Attachment C:
CB Regional Program Managers and Addresses

Attachment D:
NCANDS State contact list

Attachment E:
Education and Training Voucher Reporting

27

DHS 374556

## FISCAL YEAR 2013 ALLOTMENT FOR STATE, TERRITORIES AND INSULAR AREAS
### TITLE IV-B SUBPART I
### STEPHANIE TUBBS JONES CHILD WELFARE SERVICES

| STATE | FY 2013 ALLOTMENT |
|---|---|
| Alabama | $4,558,223 |
| Alaska | $208,324 |
| Arizona | $5,503,131 |
| Arkansas | $2,936,247 |
| California | $28,997,532 |
| Colorado | $3,936,734 |
| Connecticut | $1,724,369 |
| Delaware | $769,818 |
| District of Columbia | $311,824 |
| Florida | $13,914,915 |
| Georgia | $9,618,551 |
| Hawaii | $1,048,912 |
| Idaho | $1,738,955 |
| Illinois | $9,964,934 |
| Indiana | $6,309,324 |
| Iowa | $2,728,068 |
| Kansas | $2,563,507 |
| Kentucky | $4,227,402 |
| Louisiana | $4,120,089 |
| Maine | $1,065,399 |
| Maryland | $3,738,825 |
| Massachusetts | $3,728,526 |
| Michigan | $8,831,639 |
| Minnesota | $4,065,719 |
| Mississippi | $3,205,822 |
| Missouri | $5,367,704 |
| Montana | $651,275 |
| Nebraska | $1,612,253 |
| Nevada | $2,306,140 |
| New Hampshire | $972,307 |
| New Jersey | $5,080,888 |
| New Mexico | $1,527,492 |
| New York | $12,130,858 |
| North Carolina | $8,769,958 |
| North Dakota | $449,093 |
| Ohio | $10,234,570 |
| Oklahoma | $1,299,970 |
| Oregon | $3,203,037 |
| Pennsylvania | $9,681,431 |
| Rhode Island | $833,017 |
| South Carolina | $4,477,518 |
| South Dakota | $435,533 |
| Tennessee | $5,818,485 |

DHS 374557

## FISCAL YEAR 2013 ALLOTMENT FOR STATE, TERRITORIES AND INSULAR AREAS
## TITLE IV-B SUBPART I
## STEPHANIE TUBBS JONES CHILD WELFARE SERVICES

| STATE | FY 2013 ALLOTMENT |
|---|---|
| Texas | $24,244,801 |
| Utah | $3,529,983 |
| Vermont | $540,656 |
| Virginia | $5,753,363 |
| Washington | $4,892,541 |
| West Virginia | $1,690,741 |
| Wisconsin | $4,744,425 |
| Wyoming | $382,984 |
| STATE TOTAL | $250,447,812 |

| TERRITORIES AND INSULARE AREAS | FY 2013 ALLOTMENT |
|---|---|
| American Samoa | $294,074 |
| Guam | $713,168 |
| Northern Mariana Islands | $287,471 |
| Puerto Rico | $4,286,148 |
| Virgin Islands | $499,450 |
| TERRITORIES AND INSULAR AREAS TOTAL | $6,080,311 |

| | |
|---|---|
| CHILD WELFARE SERVICE PROGRAM TOTAL | $256,528,123 |

DHS 374558

# FISCAL YEAR 2013 ALLOTMENTS FOR STATES, TERRITORIES AND INSULAR AREAS
## IV-B SUBPART II
## PROMOTING SAFE AND STABLE FAMILIES PROGRAM

| STATE | FISCAL YEAR 2013 ALLOTMENT |
|---|---|
| Alabama | $6,007,429 |
| Alaska | $559,103 |
| Arizona | $7,637,069 |
| Arkansas | $3,320,599 |
| California | $30,860,095 |
| Colorado | $3,287,785 |
| Connecticut | $1,944,794 |
| Delaware | $894,699 |
| District of Columbia | $735,609 |
| Florida | $17,079,250 |
| Georgia | $12,082,865 |
| Hawaii | $906,838 |
| Idaho | $1,489,778 |
| Illinois | $12,269,949 |
| Indiana | $6,038,541 |
| Iowa | $2,366,223 |
| Kansas | $1,959,267 |
| Kentucky | $5,061,350 |
| Louisiana | $6,132,801 |
| Maine | $1,346,821 |
| Maryland | $3,956,753 |
| Massachusetts | $4,619,294 |
| Michigan | $10,713,138 |
| Minnesota | $3,150,970 |
| Mississippi | $4,305,272 |
| Missouri | $6,453,168 |
| Montana | $752,150 |
| Nebraska | $1,240,242 |
| Nevada | $2,047,347 |
| New Hampshire | $658,771 |
| New Jersey | $4,672,361 |
| New Mexico | $2,865,328 |
| New York | $17,150,756 |
| North Carolina | $10,080,744 |
| North Dakota | $413,849 |
| Ohio | $11,206,720 |
| Oklahoma | $4,111,702 |
| Oregon | $4,231,383 |
| Pennsylvania | $10,378,602 |
| Rhode Island | $865,976 |

## FISCAL YEAR 2013 ALLOTMENTS FOR STATES, TERRITORIES AND INSULAR AREAS
## IV-B SUBPART II
## PROMOTING SAFE AND STABLE FAMILIES PROGRAM

| STATE | FISCAL YEAR 2013 ALLOTMENT |
|---|---|
| South Carolina | $5,645,607 |
| South Dakota | $705,265 |
| Tennessee | $8,088,929 |
| Texas | $31,656,153 |
| Utah | $2,003,552 |
| Vermont | $477,912 |
| Virginia | $5,533,010 |
| Washington | $6,233,852 |
| West Virginia | $2,065,971 |
| Wisconsin | $5,111,266 |
| Wyoming | $243,573 |
| **STATE TOTAL** | **$293,620,481** |

| TERRITORIES/INSULAR AREAS | FISCAL YEAR 2013 ALLOTMENT |
|---|---|
| American Samoa | $326,918 |
| Guam | $807,439 |
| Northern Mariana Islands | $319,347 |
| Puerto Rico | $4,904,121 |
| Virgin Islands | $562,396 |
| **TERRITORIES/INSULAR AREAS TOTAL** | **$6,920,221** |

| PROMOTING SAFE AND STABLE FAMILIES PROGRAM TOTAL | $300,540,702 |
|---|---|

DHS 374560

## FISCAL YEAR 2013 ALLOTMENTS FOR STATES, TERRITORIES AND INSULAR AREAS
## MONTHLY CASEWORKER VISIT PROGRAM

| STATE | FY 2013 ALLOTMENT |
|---|---|
| Alabama | $379,726 |
| Alaska | $35,341 |
| Arizona | $482,735 |
| Arkansas | $209,893 |
| California | $1,950,650 |
| Colorado | $207,819 |
| Connecticut | $122,929 |
| Delaware | $56,553 |
| District of Columbia | $46,497 |
| Florida | $1,079,570 |
| Georgia | $763,751 |
| Hawaii | $57,321 |
| Idaho | $94,168 |
| Illinois | $775,577 |
| Indiana | $381,693 |
| Iowa | $149,568 |
| Kansas | $123,844 |
| Kentucky | $319,925 |
| Louisiana | $387,651 |
| Maine | $85,132 |
| Maryland | $250,104 |
| Massachusetts | $291,983 |
| Michigan | $677,172 |
| Minnesota | $199,171 |
| Mississippi | $272,134 |
| Missouri | $407,901 |
| Montana | $47,543 |
| Nebraska | $78,395 |
| Nevada | $129,412 |
| New Hampshire | $41,641 |
| New Jersey | $295,337 |
| New Mexico | $181,116 |
| New York | $1,084,090 |
| North Carolina | $637,198 |
| North Dakota | $26,159 |
| Ohio | $708,371 |
| Oklahoma | $259,898 |
| Oregon | $267,463 |
| Pennsylvania | $656,026 |
| Rhode Island | $54,738 |
| South Carolina | $356,856 |
| South Dakota | $44,579 |
| Tennessee | $511,297 |
| Texas | $2,000,968 |

DHS 374561

**FISCAL YEAR 2013 ALLOTMENTS FOR STATES, TERRITORIES AND INSULAR AREAS**
**MONTHLY CASEWORKER VISIT PROGRAM**

| STATE | FY 2013 ALLOTMENT |
|---|---|
| Utah | $126,643 |
| Vermont | $30,209 |
| Virginia | $349,739 |
| Washington | $394,038 |
| West Virginia | $130,589 |
| Wisconsin | $323,080 |
| Wyoming | $15,396 |
| **STATE TOTAL** | **$18,559,589** |

| TERRITORIES/INSULAR AREAS | FY2013 ALLOTMENT |
|---|---|
| American Samoa | $16,439 |
| Guam | $47,187 |
| Northern Mariana Islands | $15,955 |
| Puerto Rico | $309,323 |
| Virgin Islands | $31,507 |
| **TERRITORIES/INSULAR AREAS TOTAL** | **$420,411** |

| | |
|---|---|
| **MONTHLY CASEWORKER VISIT PROGRAM TOTAL** | **$18,980,000** |

DHS 374562

## FISCAL YEAR 2013 ALLOTMENT FOR STATES, TERRITORIES AND INSULAR AREAS CHILD ABUSE PREVENTION AND TREATMENT ACT PROGRAM

| STATE | FY2013 ALLOTMENT |
|---|---|
| ALABAMA | $380,472 |
| ALASKA | $105,250 |
| ARIZONA | $526,474 |
| ARKANSAS | $258,307 |
| CALIFORNIA | $2,768,474 |
| COLORADO | $410,655 |
| CONNECTICUT | $285,527 |
| DELAWARE | $110,007 |
| DISTRICT OF COLUMBIA | $80,883 |
| FLORIDA | $1,221,144 |
| GEORGIA | $780,012 |
| HAWAII | $139,308 |
| IDAHO | $175,521 |
| ILLINOIS | $958,353 |
| INDIANA | $518,408 |
| IOWA | $262,381 |
| KANSAS | $262,250 |
| KENTUCKY | $349,338 |
| LOUISIANA | $377,849 |
| MAINE | $128,933 |
| MARYLAND | $444,826 |
| MASSACHUSETTS | $461,942 |
| MICHIGAN | $723,119 |
| MINNESOTA | $424,563 |
| MISSISSIPPI | $269,966 |
| MISSOURI | $464,026 |
| MONTANA | $115,193 |
| NEBRASKA | $184,888 |
| NEVADA | $244,615 |
| NEW HAMPSHIRE | $132,090 |
| NEW JERSEY | $648,940 |
| NEW MEXICO | $202,291 |
| NEW YORK | $1,306,633 |
| NORTH CAROLINA | $720,709 |
| NORTH DAKOTA | $94,318 |
| OHIO | $839,599 |
| OKLAHOMA | $324,476 |
| OREGON | $303,252 |
| PENNSYLVANIA | $859,556 |
| RHODE ISLAND | $114,367 |
| SOUTH CAROLINA | $366,813 |
| SOUTH DAKOTA | $109,564 |
| TENNESSEE | $487,486 |
| TEXAS | $2,090,849 |

DHS 374563

## FISCAL YEAR 2013 ALLOTMENT FOR STATES, TERRITORIES AND INSULAR AREAS CHILD ABUSE PREVENTION AND TREATMENT ACT PROGRAM

| STATE | FY2013 ALLOTMENT |
|---|---|
| UTAH | $308,102 |
| VERMONT | $86,948 |
| VIRGINIA | $593,449 |
| WASHINGTON | $513,762 |
| WEST VIRGINIA | $162,819 |
| WISCONSIN | $438,837 |
| WYOMING | $89,563 |
| STATE TOTAL | $24,227,107 |

| TERRITORIES/INSULAR AREAS | TERRITORIES/INSULAR AREAS ALLOTMENT |
|---|---|
| AMERICAN SAMOA | $50,000 |
| GUAM | $50,000 |
| NORTHERN MARIANA ISLANDS | $50,000 |
| PUERTO RICO | $306,983 |
| VIRGIN ISLANDS | $50,000 |
| TERRITORIES/INSULAR AREAS TOTAL | $506,983 |

| | |
|---|---|
| NATIONAL COMMITTEE ON CHILD ABUSE AND NEGLECT PROGRAM TOTAL | $24,734,090 |

DHS 374564

## FISCAL YEAR 2013 ALLOTMENTS FOR STATES AND TRIBES
## CHAFEE INDEPENDENT LIVING PROGRAM

| STATE | STATE ALLOTMENTS |
|---|---|
| Alabama | $1,762,924 |
| Alaska | $608,949 |
| Arizona | $3,623,401 |
| Arkansas | $1,242,537 |
| California | $18,193,913 |
| Colorado | $2,160,123 |
| Connecticut | $1,640,069 |
| Delaware | $500,000 |
| District of Columbia | $1,091,992 |
| Florida | $6,578,921 |
| Georgia | $2,527,357 |
| Hawaii | $500,000 |
| Idaho | $500,000 |
| Illinois | $5,873,418 |
| Indiana | $3,588,775 |
| Iowa | $2,112,180 |
| Kansas | $1,931,227 |
| Kentucky | $2,217,056 |
| Louisiana | $1,508,557 |
| Maine | $565,888 |
| Maryland | $1,899,097 |
| Massachusetts | $2,869,622 |
| Michigan | $5,024,418 |
| Minnesota | $1,663,042 |
| Mississippi | $1,197,590 |
| Missouri | $3,090,028 |
| Montana | $597,297 |
| Nebraska | $1,691,395 |
| Nevada | $1,543,516 |
| New Hampshire | $500,000 |
| New Jersey | $2,297,848 |
| New Mexico | $618,938 |
| New York | $11,585,958 |
| North Carolina | $2,863,629 |
| North Dakota | $500,000 |
| Ohio | $4,018,269 |
| Oklahoma | $2,756,754 |
| Oregon | $2,908,628 |
| Pennsylvania | $4,719,444 |
| Puerto Rico | $1,452,623 |
| Rhode Island | $601,292 |
| South Carolina | $1,272,169 |
| South Dakota | $500,000 |

## FISCAL YEAR 2013  ALLOTMENTS FOR STATES AND TRIBES
## CHAFEE INDEPENDENT LIVING PROGRAM

| STATE | ALLOTMENTS |
|---|---|
| Tennessee | $2,546,002 |
| Texas | $10,024,531 |
| Utah | $899,274 |
| Vermont | $500,000 |
| Virginia | $1,613,434 |
| Washington | $3,161,552 |
| West Virginia | $1,489,912 |
| Wisconsin | $2,179,767 |
| Wyoming | $500,000 |
| **STATES TOTAL** | **$137,813,316** |

| TRIBES | TRIBAL ALLOTMENTS | Tribal Foster Care Population |
|---|---|---|
| KS Prairie Band of Potawatomi | $17,146 | 52 |
| NE Santee Sioux Nation | $12,266 | 37 |
| OR Confederated Tribe of Warm Springs | $44,894 | 137 |
| WA Port Gamble S'Klallam Tribe | $12,378 | 37 |
| **TRIBES TOTAL** | **$86,684** | |

| INDEPENDENT LIVING PROGRAM TOTAL | $137,900,000 |
|---|---|

DHS 374566

## FISCAL YEAR 2013 ALLOTMENT FOR STATES AND TRIBES
## CHAFEE EDUCATION AND TRAINING VOUCHER PROGRAM

| STATE | FY2013 STATE ALLOTMENT |
|---|---|
| Alabama | $553,377 |
| Alaska | $191,147 |
| Arizona | $1,137,374 |
| Arkansas | $390,029 |
| California | $5,711,015 |
| Colorado | $678,056 |
| Connecticut | $514,813 |
| Delaware | $88,310 |
| District of Columbia | $187,803 |
| Florida | $2,065,103 |
| Georgia | $793,330 |
| Hawaii | $117,259 |
| Idaho | $141,506 |
| Illinois | $1,843,648 |
| Indiana | $1,126,505 |
| Iowa | $663,007 |
| Kansas | $606,206 |
| Kentucky | $695,927 |
| Louisiana | $473,531 |
| Maine | $135,444 |
| Maryland | $596,121 |
| Massachusetts | $900,765 |
| Michigan | $1,577,149 |
| Minnesota | $522,024 |
| Mississippi | $375,920 |
| Missouri | $969,950 |
| Montana | $187,490 |
| Nebraska | $534,774 |
| Nevada | $484,505 |
| New Hampshire | $77,546 |
| New Jersey | $673,040 |
| New Mexico | $194,283 |
| New York | $2,608,760 |
| North Carolina | $898,884 |
| North Dakota | $111,407 |
| Ohio | $1,261,322 |
| Oklahoma | $865,337 |
| Oregon | $913,010 |
| Pennsylvania | $1,481,419 |
| Puerto Rico | $455,974 |
| Rhode Island | $188,744 |
| South Carolina | $399,330 |

## FISCAL YEAR 2013 ALLOTMENT FOR STATES AND TRIBES
## CHAFEE EDUCATION AND TRAINING VOUCHER PROGRAM

| STATE | FY2013 STATE ALLOTMENT |
|---|---|
| South Dakota | $147,045 |
| Tennessee | $799,182 |
| Texas | $3,146,670 |
| Utah | $282,280 |
| Vermont | $105,554 |
| Virginia | $506,452 |
| Washington | $992,401 |
| West Virginia | $467,679 |
| Wisconsin | $684,222 |
| Wyoming | $92,595 |
| **STATE TOTAL** | **$41,615,224** |

| TRIBES | FY2013 TRIBAL ALLOTMENT | Tribal Foster Care Population |
|---|---|---|
| KS Prairie Band of Potawatomi | $5,382 | 52 |
| OR Confederated Tribe of Warm Springs | $14,092 | 137 |
| WA Port Gamble S'Klallam Tribe | $3,886 | 37 |
| **TRIBE TOTAL** | **$23,360** | |

| | |
|---|---|
| **CHAFEE EDUCATION AND TRAINING PROGRAM TOTAL** | **$41,638,584** |

DHS 374568

**CFS-101, PART I**
U.S. Department of Health and Human Services
Administration for Children and Families

**Attachment B**
OMB Approval #0980-0047
Approved through October 31, 2014

**CFS-101, Part I: Annual Budget Request for Title IV-B, Subpart 1 & 2 Funds, CAPTA, CFCIP, and ETV Instructions**

Note: While the information on the programs are consolidated into one Child and Family Services Plan (CFSP), eligibility and expenditure reports for the individual programs are separate. Funding will not be delayed for one program due to potential eligibility issues in another program.

Complete separate forms for each fiscal year.

1. **State or ITO:** Enter the name of the State or Indian Tribal Organization (ITO).

2. **EIN:** Indicate the Employer Identification Number (EIN).

3. **Address:** Enter the address of the State or ITO Agency.

4. **Submission:** Indicate if this is a NEW submission for the upcoming Fiscal Year, or a REVISION of the budget request for the current year.

5. **Total estimated title IV-B, subpart 1 funds:** Specify the estimated amount of title IV-B, subpart 1 Federal funds that the State or ITO expects to spend during the fiscal year on the Stephanie Tubbs Jones Child Welfare Services (CWS) Program. The previous Federal Fiscal Year's (FFY) final allotment as provided in the annual Program Instruction on the Annual Progress and Services Report (APSR) or CFSP is to be used as the estimated amount for the State's/Tribe's request.[1] A 25% match is required and the State or Tribe's match amount should be reflected on the SF-425 report.
   a) Specify the estimated amount of title IV-B, subpart 1 CWS funds entered on line 5 to be spent on administration (not to exceed 10% of the total title IV-B, subpart 1 estimated allotment).

6. **Total estimated title IV-B, subpart 2 funds:** Specify the total estimated amount of title IV-B, subpart 2 Federal funds that the State or ITO expects to spend during the fiscal year on the Promoting Safe and Stable Families (PSSF) Program. The previous Federal Fiscal Year's (FFY) final allotment as provided in the annual Program Instruction on the APSR or CFSP is to be used as the estimated amount for the State's/Tribe's request. A 25% match is required and the State or Tribe's match amount should be reflected on the SF-425 report. Tribes are not required to complete items 6 a-f.
   a) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent during the fiscal year for Family Preservation Services (a strong rationale must be provided in the APSR or CFSP if amount is less than 20% of line 6).

---

[1] The tentative allotments for title IV-B, subpart 1 and 2, CFCIP, and ETV are based on the premise that all States and Indian Tribes will apply for and receive the funds available to them. In the event that not all States or Indian Tribes apply for or receive their tentative allocations, those funds will be redistributed among eligible States and Indian Tribes, where permitted by statute. States requesting additional funds in anticipation of such a redistribution should submit information on the proposed use of such additional funds to the appropriate Children's Bureau Regional Office in the State's/Tribe's APSR or CFSP.

When States or Tribes that have not applied for funds available to them in past fiscal year(s) decide to do so, depending upon the total amount of funds appropriated by Congress for the next fiscal year, there may be a reduction in the final distribution of funds.

1

DHS 374569

CFS-101, PART I
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

b) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent during the fiscal year for Family Support Services (a strong rationale must be provided in the APSR or CFSP if amount is less than 20% of line 6).

c) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent during the fiscal year for Time-Limited Family Reunification Services (a strong rationale must be provided in the APSR or CFSP if amount is less than 20% of line 6).

d) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent during the fiscal year for Adoption Promotion and Support Services (a strong rationale must be provided in the APSR or CFSP if amount is less than 20% of line 6).

e) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent during the fiscal year for other service related activities (e.g. planning).

f) Specify the estimated amount of title IV-B, subpart 2 PSSF funds to be spent on administration. (For STATES only, not to exceed 10% of the total title IV-B, subpart 2 estimated allotment.)

7.    **Monthly Caseworker Visit title IV-B, subpart 2 funds (for STATES only):**   Specify the estimated amount of title IV-B, subpart 2 Monthly Caseworker Visitation (MCV) Federal Funds the State expects to spend during the fiscal year.
      a) Specify the estimated amount of title IV-B, subpart 2 MCV funds entered on line 7a to be spent on administration (not to exceed 10% of the total title IV-B, subpart 2 MCV estimated allotment).

8.    **Re-allotment of Title IV-B, subparts 1 & 2 funds for State and ITO:** The Administration for Children and Families (ACF) is able to re-allot unneeded portions of State and Tribal allocations of title IV-B, subparts 1& 2 funds to other States and eligible Indian Tribes so that the total appropriation remains available for program purposes. In order for a State or ITO to be awarded a portion of these funds, or for funds to be released, ACF must have on file a request from the State or Indian Tribe for additional funds, or the release of funds.
      a) Indicate the amount of Federal funds of CWS, PSSF and/or MCV ( for States only)  that the State or Tribe does not expect to utilize.

      b) Indicate the amount of Federal funds of CWS, PSSF and/or MCV (for States only) that the State or Tribe is requesting, if additional funds become available.

9.    **Child Abuse Prevention and Treatment Act (CAPTA) (for STATES only):** Indicate the State's estimated CAPTA State Grant allocation as provided in the annual Program Instruction on the APSR.  Supplemental funds may be available for distribution if there are States that are not awarded grant funds or there are unobligated funds available for redistribution.  No matching funds are required for this grant.

2

DHS 374570

**CFS-101, PART I**
U.S. Department of Health and Human Services
Administration for Children and Families

**Attachment B**
OMB Approval #0980-0047
Approved through October 31, 2014

**10.    Estimated Title IV-E Chafee Foster Care Independence Program (CFCIP) Funds:** Indicate the estimated amount of CFCIP funds that the State or Tribe expects to spend on independent living activities as provided in the APSR or CFSP Program Instruction.

  a) At State or Tribe option, indicate the estimated amount of the funds entered on line 10 a to be spent for room and board for eligible youth (not to exceed 30% of total estimated CFCIP allotment.)

**11.    Estimated Title IV-E Funds Allotted under Section 477 for the Education and Training Vouchers (ETV) Program:** Indicate the estimated amount of ETV funds that the State or Tribe expects to spend on ETV as provided in the APSR or CFSR Program Instruction.

**12.    Re-allotment of CFCIP and/or ETV Funds for States or Tribes:** The Administration for Children and Families (ACF) is able to re-allot unneeded portions of State or Tribe allocations of CFCIP and ETV funds to other States or Tribes so that the total appropriation remains available for program purposes. In order for a State or Tribe to be awarded portions of these funds, or for funds to be released, ACF must have on file a request from the State or Tribe for additional funds, or the release of funds.

  a) Indicate the amount of funds that the State or Tribe will **not** utilize from its allotment to carry out the CFCIP activities.

  b) Indicate the amount of funds that the State or Tribe will **not** utilize from its allotment to carry out the ETV program activities.

  c) Indicate the amount of funds the State or Tribe is requesting if additional funds become available for the CFCIP program. A 20% State or Tribe match is required. The State or Tribe match amount must be reflected on the SF-425 report.

  d) Indicate the amount of funds the State or Tribe is requesting if additional funds become available for the ETV program. A 20% State or Tribe match is required. The State or tribe match amount must be reflected on the SF-425 report.

**13.    Certification:** This report must be signed and dated in the spaces provided. The signature and title of the official of the State agency, or Indian Tribal Organization, with authority to administer or supervise the administration of title IV-B, subparts 1 and 2 programs and, for States only, the CAPTA and CFCIP programs, must be included.

By signing this form the State/Tribal official assures that the State/Tribe will meet all applicable match requirements.

3

DHS 374571

CFS-101, Part I
U. S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

**CFS-101, Part I: Annual Budget Request for Title IV-B, Subpart 1 & 2 Funds, CAPTA, CFCIP, and ETV**

Fiscal Year 2014, October 1, 2013 through September 30, 2014

| | |
|---|---|
| **1. State or Indian Tribal Organization (ITO):** | **2. EIN:** |
| **3. Address:** | **4. Submission:**<br>[  ] New<br>[  ] Revision |
| **5. Total estimated title IV-B Subpart 1, Child Welfare Services (CWS) Funds** | $ |
| a) Total administration (not to exceed 10% of title IV-B Subpart 1 estimated allotment) | $ |
| **6. Total estimated title IV-B Subpart 2, Provides Safe and Stable Families (PSSF) Funds. This amount should equal the sum of lines a - f.** | $ |
| a) Total Family Preservation Services | $ |
| b) Total Family Support Services | $ |
| c) Total Time-Limited Family Reunification Services | $ |
| d) Total Adoption Promotion and Support Services | $ |
| e) Total for Other Service Related Activities (e.g. planning) | $ |
| f) Total administration (FOR STATES ONLY: not to exceed 10% of title IV-Bsubpart 2 estimated allotment) | $ |
| **7. Total estimated  Monthly Caseworker Visit (MCV) Funds (FOR STATES ONLY)** | $ |
| a) Total administration (FOR STATES ONLY: not to exceed 10% of estimated MCV allotment) | $ |
| **8. Re-allotment of title IV-B subparts 1 & 2 funds for States and Indian Tribal Organizations:** | |
| a) Indicate the amount of the State's/Tribe's allotment that will not be required to carry out the following programs:<br>CWS $_____ , PSSF $_____, and/or  MCV(States only)$_____ | |
| b) If additional funds become available to States and ITOs, specify the amount of additional funds the States or Tribes requesting: CWS $_____ , PSSF $_____ , and/or MCV(States only)$_____ . | |
| **9. Child Abuse Prevention and Treatment Act (CAPTA) State Grant (no State match required): Estimated Amount plus additional allocation, as available. (FOR STATES ONLY)** | $ |
| **10. Estimated Chafee Foster Care Independence Program (CFCIP) funds** | $ |
| a) Indicate the amount of State's or Tribe's allotment to be spent on room and board for eligible youth (not to exceed 30% of CFCIP allotment) | $ |
| **11. Estimated Education and Training Voucher (ETV) funds** | $ |
| **12. Re-allotment of CFCIP and ETV Program Funds:** | |
| a) Indicate the amount of the State's or Tribe's allotment that will not be required to carry out CFCIP Program | $ |
| b) Indicate the amount of the State's or Tribe's allotment that will not be required to carry out  ETV Program | $ |
| c) If additional funds become available to States or Tribes, specify the amount of additional  funds the State or Tribe is requesting for CFCIP Program | $ |
| d) If additional funds become available to States or Tribes, specify the amount of additional  funds the State or Tribe is requesting for ETV Program | $ |
| **13. Certification by State Agency and/or Indian Tribal Organization.** | |

The State agency or Indian Tribe submits the above estimates and request for funds under title IV-B, subpart 1 and/or 2, of the Social Security Act, CAPTA State Grant, CFCIP and ETV programs, and agrees that expenditures will be made in accordance with the Child and Family Services Plan, which has been jointly developed with, and approved by, the Children's Bureau.

| Signature and Title of State/Tribal Agency Official | Signature and Title of Central Office Official |
|---|---|
| | |

DHS 374572

**CFS-101, PART II**
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

**CFS-101, PART II: Annual Estimated Expenditure Summary of Child and Family Services Instructions**

This form summarizes the State Agency's and eligible Indian Tribal Organization's (ITO) estimated expenditures on Child and Family Services programs, including the Child Abuse Treatment and Prevention Act (CAPTA) programs and the Chafee Foster Care Independence Program (CFCIP) including Education and Training Vouchers (ETV) for the next Federal fiscal year. This information is an integral part of the Child and Family Services Plan and should be discussed by the ACF Regional Office, State Agency Representatives, and Tribes. States and Tribes should list estimated expenditures and other information in the category that best fits their programs.

For each of the services/activities listed, indicate in the appropriate columns the estimated expenditures by program, the estimated number of clients to be served, the population to be served and the geographic area to be served.

**Services/Activities:**

1.      **Prevention and Support Services (Family Support):** Community-based services which promote the safety and well-being of children and families and are designed to increase the strength and stability of children and families (including adoptive, foster, and extended families); to increase parents' confidence and competence in their parenting abilities; to afford children a safe, stable, and supportive family environment; to strengthen parental relationships and promote healthy marriages; and to enhance child development, including through mentoring. These services may include respite care for parents and other caregivers; early developmental screening of children to assess the needs of these children and assistance in obtaining specific services to meet their needs; mentoring, tutoring, and health education for youth; a range of center-based activities (informal interactions in drop-in centers, parent support groups); services designed to increase parenting skills; and counseling and home visiting activities.

2.      **Protective Services:** Services designed to prevent or remedy the abuse, neglect, or exploitation of children. Services include investigation and emergency medical services, emergency shelter, legal action, developing case plans, counseling, assessment/evaluation of family circumstances, arranging alternative living arrangements, preparing for foster placement, if needed, and case management and referral to service providers.

3.      **Crisis Intervention (Family Preservation):** Services for children and families designed to help families (including adoptive and extended families) at risk or in crisis. The types of services within this category include:

- Pre-placement preventive services programs, such as intensive family preservation programs, designed to help children at risk of foster care placement remain with their families, where possible;

- Service programs designed to help children, where appropriate, return to families from which they have been removed; or be placed for adoption, with a legal guardian, or, if

1

DHS 374573

**CFS-101, PART II**
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

adoption or legal guardianship is determined not to be appropriate for a child, in some other planned, permanent living arrangement;

- Service programs designed to provide follow-up care to families to whom a child has been returned after a foster care placement;

- Respite care of children to provide temporary relief for parents and other caregivers (including foster parents);

- Services designed to improve parenting skills (by reinforcing parents' confidence in their strengths, and helping them to identify where improvement is needed and to obtain assistance in improving those skills) with respect to matters such as child development, family budgeting, coping with stress, health, and nutrition;

- Infant safe haven programs to provide a way for a parent to safely relinquish a newborn infant at a safe haven designated pursuant to a State law; and

- Case management services designed to stabilize families in crisis such as transportation, assistance with housing and utility payments, and access to adequate health care.

**4.    Time-Limited Family Reunification Services:**  Services and activities that are provided to a child who is removed from the child's home and placed in a foster family home or a child care institution, and to the parents or primary caregiver of such a child, in order to facilitate the reunification of the child safely and appropriately within a timely fashion, but only during the 15-month period that begins on the date that the child, pursuant to section 475(5)(F) of the Social Security Act (the Act), is considered to have entered foster care.  The services and activities are the following:
- Individual, group, and family counseling.
- Inpatient, residential, or outpatient substance abuse treatment services.
- Mental health services.
- Assistance to address domestic violence.
- Services designed to provide temporary child care and therapeutic services for families, including crisis nurseries.
- Peer-to-peer mentoring and support groups for parents and primary caregivers;
- Services and activities designed to facilitate access to and visitation of children by parents and siblings; and
- Transportation to or from any of the services and activities described above.

**5.    Adoption Promotion and Support Services:**  Services and activities designed to encourage more adoptions out of the foster care system, when adoptions promote the best interests of children, including such activities as pre- and post-adoptive services and activities designed to expedite the adoption process and support adoptive families.

2

DHS 374574

CFS-101, PART II
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

6.      **Other Service Related Activities:** Planning, service coordination, preparation or follow-up to service delivery such as the recording of progress notes or other activities, other than direct services or administration, supporting the delivery of services under the program etc.

7.      **Foster Care Maintenance:** Expenditures for "room and board" for children/youth in foster care.

a) Foster Family and Relative Foster Care: Payments to cover food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation and reasonable travel for the child to remain in the school in which the child is enrolled at the placement in foster care as well as the cost of providing these services.

b) Group/Institutional Care: This includes the reasonable costs of administration and the operation of institutional/group home care that are required to provide food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation; the cost of reasonable travel for the child to remain in the same school he or she was attending prior to placement in foster care and the cost of the items themselves.

8.      **Adoption Subsidy Payments:** Funds provided to adoptive parents on a recurring and non-recurring basis to assist in the support of special needs children.

9.      **Guardianship Assistance Payments:** Funds provided to kinship legal guardians on a recurring and non-recurring basis to assist in the support of children formerly in foster care placed in their care.

10.     **Independent Living Services:** Services designed to help youth expected to remain in foster care until the age of 18, youth who after age 16 leave foster care for kinship guardianship or adoption and former foster care recipients between 18 and 21 years of age, make the transition to self-sufficiency. Services may include: education, career exploration, vocational training, job placement and retention, training in daily living skills, training in budgeting and financial management skills, substance abuse prevention, and preventive health activities.

States and Tribes are allowed to expend up to 30 percent of their allotments under the Chafee Foster Care Independence Program for room and board (including rental deposits, utilities and other expenses that may be included with rent) for children who have left foster care because they have attained 18 years of age, and who have not yet attained 21 years of age.

11.     **Education and Training Vouchers:** Include the amount of funds the State or Tribe plans to utilize for the Education and Training Vouchers (ETV) program in this line item

12.     **Administrative Costs:** Include the amount of funds the State or Tribe plans to utilize for administrative costs.
*   For States and Tribes, administrative costs under title IV-B, subpart 1 may not be more than ten percent of title IV-B, subpart 1 expenditures. Allowable costs for title IV-B, subpart 1 may

3

DHS 374575

**CFS-101, PART II**
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

include procurement, payroll processing, personnel functions, management, maintenance and operation of space and property, data processing and computer services, accounting, budgeting, auditing, and travel expenses. Applicable costs exclude administrative costs related to the provision of services by caseworkers or the oversight of programs funded under Title IV-B, subpart 1 (Section 422(c)(1) of the Act).

- For States only, administrative costs under title IV-B, subpart 2 (including Monthly Caseworker Visit grants) may not be more than ten percent of title IV-B, subpart 2 expenditures. Allowable costs for title IV-B, subpart 2 may include, but are not limited to procurement, payroll processing, personnel functions, management, maintenance and operation of space and property, data processing and computer services, accounting, budgeting, and auditing. Allowable costs may also include indirect costs allocable in accordance with the agency's approved cost allocation plan (45 CFR 1357.32(h)).

**13.    Staff and External Partners Training:** Includes the cost of short and long-term training to increase the ability of staff and external partners (other than foster/adoptive parents (see #14 & #15 below)) to provide assistance and support to children and families, but does NOT include the costs specifically related to supporting the monthly caseworker visit requirement (see #17 below).

**14.    Foster Parent Training and Recruitment:** Includes the cost of short-term training to increase foster parent's ability to provide assistance and support to foster and adoptive children, and those costs associated with/resulting from the recruitment of potential foster parents.

**15.    Adoptive Parent Training and Recruitment:** Includes the cost of short-term training to increase adoptive parent's ability to provide assistance and support to foster and adoptive children, and those costs associated with/from the recruitment of potential adoptive parents.

**16.    Child Care Related to Employment/Training:** Includes licensed day care purchased for the purpose of supporting the employment of one or both of the parents.

**17.    Monthly Caseworker Visits:** Includes costs related to supporting monthly caseworker visits with children who are in foster care under the responsibility of the State, with a primary emphasis on activities designed to improve caseworker retention, recruitment and ability to access the benefits of technology.

**18.    Total:** The total amount of funds estimated for the year (equal to the sum of lines 1 through 18) for each column.


**Estimated Expenditures:**

**1.    Federal Funds (columns a - g):** Indicate for each service/activity the amount to be expended from the Federal program indicated in columns (a) through (g).

4

DHS 374576

**CFS-101, PART II**
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

**2.      State, Local, and Donated Funds (column h):**  Indicate the estimated amount of State, local, and donated funds to be expended, even if they are not used to match Federal funds

**3.      Estimated Number to be Served (column i):** Estimate, as accurately as possible, the number of individuals and families to be served by service/activity with the total estimated funding indicated.

**4.      Population to be Served (column j):**  Indicate the population that has been targeted for the designated services. Targeting may include a range of vulnerable populations such as:

- Children at imminent risk of placement;
- All children in foster care;
- Families with children returning home following placement;
- All eligible children, eligible children under 21 years, or eligible children requiring treatment;
- Families with a child abuse or neglect investigation;
- Children in contracted care; or
- Families in crisis.

**5.      Geographic Area to be Served (column k):**  Indicate **both** the number and type of areas identified within the State where services are to be provided for each program. Areas may include specific regions, counties, cities, reservations, communities, census tracts, or neighborhoods. For example, if the State is operating family preservation programs in six counties, indicate by noting "6 counties"; if the State is operating 12 community-based family support programs, indicate by noting "12 communities".

DHS 374577

CFS-101, Part II.
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

## CFS-101 Part III: Annual Estimated Expenditure Summary of Child and Family Services
State or Indian Tribal Organization (ITO)

For FFY OCTOBER 1, 2013 TO SEPTEMBER 30, 2014

| SERVICES/ACTIVITIES | TITLE IV-B (a) Subpart I-CWS | (b) Subpart I-PSSF | (c) Subpart II-MCV* | (d) CAPTA* | (e) CFCIP | (f) ETV | (g) TITLE IV-E | (h) STATE, LOCAL, & DONATED FUNDS | (i) NUMBER TO BE SERVED — Individuals | (i) Families | (j) POPULATION TO BE SERVED | (k) GEOG. AREA TO BE SERVED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.) PREVENTION & SUPPORT SERVICES (FAMILY SUPPORT) | | | | | | | | | | | | |
| 2.) PROTECTIVE SERVICES | | | | | | | | | | | | |
| 3.) CRISIS INTERVENTION (FAMILY PRESERVATION) | | | | | | | | | | | | |
| 4.) TIME-LIMITED FAMILY REUNIFICATION SERVICES | | | | | | | | | | | | |
| 5.) ADOPTION PROMOTION AND SUPPORT SERVICES | | | | | | | | | | | | |
| 6.) FOR OTHER SERVICE RELATED ACTIVITIES (e.g. planning) | | | | | | | | | | | | |
| 7.) FOSTER CARE MAINTENANCE: | | | | | | | | | | | | |
| (a) FOSTER FAMILY & RELATIVE FOSTER CARE | | | | | | | | | | | | |
| (b) GROUP/INST CARE | | | | | | | | | | | | |
| 8.) ADOPTION SUBSIDY PMTS. | | | | | | | | | | | | |
| 9.) GUARDIANSHIP ASSIST. PMTS. | | | | | | | | | | | | |
| 10.) INDEPENDENT LIVING SERVICES | | | | | | | | | | | | |
| 11.) EDUCATION AND TRAINING VOUCHERS | | | | | | | | | | | | |
| 12.) ADMINISTRATIVE COSTS | | | | | | | | | | | | |
| 13.) STAFF & EXTERNAL PARTNERS TRAINING | | | | | | | | | | | | |
| 14.) FOSTER PARENT RECRUITMENT & TRAINING | | | | | | | | | | | | |
| 15.) ADOPTIVE PARENT RECRUITMENT & TRAINING | | | | | | | | | | | | |
| 16.) CHILD CARE RELATED TO EMPLOYMENT/TRAINING | | | | | | | | | | | | |
| 17.) CASEWORKER RETENTION, RECRUITMENT & TRAINING | | | | | | | | | | | | |
| 18.) TOTAL | | | | | | | | | | | | |

* States Only. Indian Tribes are not required to include information on these programs

**CFS-101, Part III**
U.S. Department of Health and Human Services
Administration for Children and Families

**Attachment B**
OMB Approval #0980-0047
Approved through October 31, 2014

### CFS-101, Part III: Expenditures for Title IV-B, Subparts 1 and 2, Chafee Foster Care Independence (CFCIP) and Education and Training Voucher (ETV) Programs

Note: Federal funds for the most of the programs identified above are awarded to States or Tribes on a yearly basis, but may be spent over a two-year period ending on September 30 of the year following the year in which they were awarded. For example, the FY 2011 grant allocation has an expenditure period from October 1, 2010 to September 30, 2012. Therefore, any fiscal year 2011 funds must be obligated during that two-year period of time and subsequently reported on this form.

Most figures in the "estimate" column can be found in a State's/Tribe's previously approved CFS 101, Part I for the fiscal year being reported on.

1.  **State or ITO:** Enter the name of the State or Indian Tribal Organization (ITO).

2.  **EIN:** Indicate the Employer Identification Number (EIN).

3.  **Address:** Enter the address of the State or ITO Agency.

4.  **Submission:** Indicate if this is a new or revised expenditure report.

5.  **Total title IV-B, subpart 1 funds:** Indicate the estimated expenditures, and actual expenditures of title IV-B, subpart 1 Federal funds for the designated fiscal year for Child Welfare Services. (The estimated expenditure total should equal the amount of the grant awarded for the designated fiscal year.) Indicate as accurately as possible, the number of individuals and the number of families served, the population served, and the geographic area where services were provided. The required 25% match should not be reflected on this form.

> a) Specify the estimated allotment and actual expenditures of title IV-B, subpart 1 funds for administration. Note that administrative costs may not exceed 10% of the title IV-B, subpart 1 total expenditures.

6.  **Total title IV-B, subpart 2 Promoting Safe and Stable Families (PSSF) funds:** Indicate the estimated expenditures, actual expenditures of title IV-B, subpart 2 funds for the designated fiscal year for Promoting Safe and Stable Families services. (The estimated expenditure total should equal the amount of the grant awarded for the designated fiscal year.) The required 25% match should not be reflected on this form. Indicate as accurately as possible, the number of individuals and the number of families served,[1] the population served,[2] and the geographic area

---

[1] Report, as accurately as possible, the number of clients served per service/activity for the amount of funds expended. Indicate the number of individuals and the number of families served as labeled in the column.

[2] Indicate the population that has received the designated services. This may include a range of vulnerable populations such as children at imminent risk of placement, all children in foster care, families with children returning home following placement, all eligible children, eligible children under 21 years, or eligible children

1

DHS 374579

**CFS-101, Part III**
U.S. Department of Health and Human Services
Administration for Children and Families

**Attachment B**
OMB Approval #0980-0047
Approved through October 31, 2014

where services were provided.[3]  States must also complete lines 6 a – f; for Tribes this is optional.

    a) Indicate the estimated allotment and actual expenditures of title IV-B, subpart 2 PSSF funds for the designated fiscal year for Family Preservation Services.  Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.

    b) Indicate the estimated and actual expenditures of title IV-B, subpart 2 PSSF funds allotted for the designated fiscal year for Family Support Services.   Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.

    c) Indicate the estimated and actual expenditures of title IV-B, subpart 2 PSSF funds allotted for the designated fiscal year for Time-Limited Family Reunification Services. Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.

    d) Indicate the estimated and actual expenditures of title IV-B, subpart 2 PSSF funds allotted for the designated fiscal year for Adoption Promotion and Support Services. Note that these funds may be spent over a two-year period ending on September 30 of the year following that in which they were awarded.

    e) Indicate the estimated and actual expenditures of title IV-B, subpart 2 PSSF funds allotted for the designated fiscal year for other service related activities (e.g. planning). Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.

    f) Indicate the estimated and actual expenditures of title IV-B, subpart 2 PSSF funds allotted for the designated fiscal year for administrative costs.  Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.  Beginning in FFY 2008, States' administrative costs may not exceed 10% of the total Federal expenditures for title IV-B, subpart 2.  (This limitation does not apply to Tribes.)

**7.  Total title IV-B subpart 2, Monthly Caseworker Visit (MCV) Funds (States only):**
Indicate the estimated and actual expenditures allotted for the designated fiscal year.  Note that with the exception of FY 2006 grants, these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded.

---

requiring treatment, families with a child abuse or neglect investigation, children in contracted care, and/or families in crisis.
[3] Indicate the number and type of areas identified within the State where services are to be provided for each program. Areas may include specific regions, counties, cities, reservations, communities, census tracts, or neighborhoods.

2

DHS 374580

CFS-101, Part III
U.S. Department of Health and Human Services
Administration for Children and Families

**Attachment B**
OMB Approval #0980-0047
Approved through October 31, 2014

a). Indicate the estimated and actual expenditures of title IV-B, subpart 2 Monthly Caseworker Visit funds allotted for the designated fiscal year (States only). Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following the year in which they were awarded. Beginning in FFY 2008 total administrative costs may not exceed 10% of the total expenditures for MCV.

**8.** **Chafee Foster Care Independence Program (CFCIP) Funds:** Indicate the estimated and actual expenditures of CFCIP funds allotted for the designated fiscal year for independent living activities as provided in the APSR or CFSP Program Instruction.

a) Indicate the estimated and actual expenditures of the State's or Tribe's allotment for the designated fiscal year for room and board for eligible youth (not to exceed 30% of CFCIP funds). Note that these funds may be spent over a two-year period ending on September 30 of the fiscal year following they year in which they were awarded. Indicate as accurately as possible, the number of clients served, the population served, and the geographic area where services were provided.

**9.** **Total funds allotted under Section 477 for the Education and Training Vouchers (ETV) Program:** Indicate the estimated and actual expenditures of Education and Training Voucher funds allotted for the designated fiscal year as provided in the annual Program Instruction on the APSR or CFSP. Indicate as accurately as possible, the number of clients served, the population served, and the geographic area where services were provided.

**10.** **Certification:** This report must be signed and dated in the spaces provided. The signature and title must be included of the official of the State agency, or Indian Tribal Organization, with authority to administer or supervise the administration of title IV-B, subparts 1 and 2 programs and, for States only, MCV and CAPTA programs.

By signing this form the State/Tribal official certifies that all figures provided here are accurate.

* Title IV-B, subpart 2 includes both the Promoting Safe and Stable Families Program and the Monthly Caseworker Visit Program.

3

DHS 374581

CFS-101, Part III
U.S. Department of Health and Human Services
Administration for Children and Families

Attachment B
OMB Approval #0980-0047
Approved through October 31, 2014

**CFS-101, PART III: Annual Expenditures for Title IV-B, Subparts 1 and 2, Chafee Foster Care Independence (CFCIP) and Education And Training Voucher (ETV) : Fiscal Year 2011: October 1, 2010 through September 30, 2011**

| | 1. State or Indian Tribal Organization (ITO): | 2. EIN: | 3. Address: | | | | |
|---|---|---|---|---|---|---|---|
| 4. Submission: | [ ] New   [ ] Revision | | | | | | |
| Description of Funds | Estimated Expenditures | Actual Expenditures | Number served | | Population served | Geographic area served |
| | | | Individuals | Families | | |
| 5. Total title IV-B, subpart 1 funds | $ | $ | | | | |
| a) Total Administrative Costs (not to exceed 10% of title IV-B, subpart 1 total allotment) | $ | $ | | | | |
| 6. Total title IV-B, subpart 2 funds (This amount should equal the sum of lines a - f.) | $ | $ | | | | |
| a) Family Preservation Services | $ | $ | | | | |
| b) Family Support Services | $ | $ | | | | |
| c) Time-Limited Family Reunification Services | $ | $ | | | | |
| d) Adoption Promotion and Support Services | $ | $ | | | | |
| e) Other Service Related Activities (e.g. planning) | $ | $ | | | | |
| f) Administrative Costs (FOR STATES; not to exceed 10% of total title IV-B, subpart 2 allotment after October 1, 2007) | $ | $ | | | | |
| 7. Total Monthly Caseworker Visit Funds (STATE ONLY) | $ | $ | | | | |
| a) Administrative Costs (not to exceed 10% of MCV allotment) | $ | $ | | | | |
| 8. Total Chafee Foster Care Independence Program (CFCIP) funds | $ | $ | | | | |
| a) Indicate the amount of allotment spent on room and board for eligible youth (not to exceed 30% of CFCIP allotment) | $ | $ | | | | |
| 9. Total Education and Training Voucher (ETV) funds | $ | $ | | | | |

10. Certification by State Agency or Indian Tribal Organization (ITO). The State agency or ITO agrees that expenditures were made in accordance with the Child and Family Services Plan, which has been jointly developed with, and approved by, the Children's Bureau.

| Signature and Title of State/Tribal Agency Official | Date | Signature and Title of Central Office Official | Date |
|---|---|---|---|

DHS 374582

Attachment C

## Regional Program Managers

| I | **Region I - Boston** Bob Cavanaugh<br>bob.cavanaugh@acf.hhs.gov<br>JFK Federal Building, Rm. 2000 Boston,<br>MA 02203<br>(617) 565-1020<br>**States:** Connecticut, Maine,<br>Massachusetts, New Hampshire, Rhode<br>Island, Vermont | VI | **Region VI - Dallas** Janis Brown<br>janis.brown@acf.hhs.gov<br>1301 Young Street, Suite 945<br>Dallas, TX 75202-5433 (214) 767-8466<br>**States:** Arkansas, Louisiana, New Mexico,<br>Oklahoma, Texas |
|---|---|---|---|
| II | **Region II - New York City** Junius Scott<br>junius.scott@acf.hhs.gov<br>26 Federal Plaza, Rm. 4114 New York,<br>NY 10278 (212) 264-2890<br>**States and Territories:** New Jersey, New<br>York, Puerto Rico, Virgin Islands | VII | **Region VII - Kansas City** Rosalyn Wilson<br>rosalyn.wilson@acf.hhs.gov<br>Federal Office Building Room 349<br>601 E 12th Street<br>Kansas City, MO 64106<br>(816) 426-3981<br>**States:** Iowa, Kansas, Missouri, Nebraska |
| III | **Region III - Philadelphia** Lisa Pearson<br>lisa.pearson@acf.hhs.gov<br>150 S. Independence Mall West - Suite 864<br>Philadelphia, PA 19106-3499<br>(215) 861-4000<br>**States:** Delaware, District of Columbia,<br>Maryland, Pennsylvania, Virginia, West<br>Virginia | VIII | **Region VIII - Denver** Marilyn Kennerson<br>marilyn.kennerson@acf.hhs.gov<br>999 18th Street<br>South Terrace, 4th Floor<br>Denver, CO 80202<br>(303) 844-3100<br>**States:** Colorado, Montana, North Dakota,<br>South Dakota, Utah, Wyoming |
| IV | **Region IV - Atlanta** Ruth Walker<br>ruth.walker@acf.hhs.gov<br>Atlanta Federal Center<br>61 Forsyth Street S.W. Suite 4M60<br>Atlanta, GA 30303<br>(404) 562-2900<br>**States:** Alabama, Mississippi, Florida,<br>North Carolina, Georgia, South Carolina,<br>Kentucky, Tennessee | IX | **Region IX - San Francisco** Douglas Southard<br>douglas.southard@acf.hhs.gov<br>90 7th Street - 9th Floor<br>San Francisco, CA 94103<br>(415) 437-8425<br>**States and Territories:** Arizona, California,<br>Hawaii, Nevada, Outer Pacific—American<br>Samoa Commonwealth of the Northern<br>Marianas, Federated States of Micronesia<br>(Chuuk, Pohnpei, Yap) Guam, Marshall<br>Islands, Palau |
| V | **Region V - Chicago** Angela Green<br>angela.green@acf.hhs.gov<br>233 N. Michigan Avenue Suite 400<br>Chicago, IL 60601<br>(312) 353-9672<br>**States:** Illinois, Indiana, Michigan,<br>Minnesota, Ohio, Wisconsin | X | **Region X - Seattle** Tina Minor<br>tina.minor@acf.hhs.gov<br>2201 Sixth Avenue, Suite 300, MS-70 Seattle,<br>WA 98121<br>(206) 615-3657<br>**States:** Alaska, Idaho, Oregon, Washington |

April 2013

DHS 374583

Attachment D

*Updated February 15, 2013*
## NCANDS Contact Information
**Primary State Contacts**
*Kurt Heisler, NCANDS Federal Project Officer*
*202-205-3776, Kurt.Heisler@acf.hhs.gov*

### Region I

| CT | Beth | Petroni | beth.petroni@ct.gov | 860-560-5015 |
|---|---|---|---|---|
| MA | Rosalind | Walter | ros.walter@state.ma.us | 617-748-2219 |
| ME | Mandy | Milligan | Mandy.Milligan@maine.gov | |
| NH | Jane | Whitney | JMWhitney@dhhs.state.nh.us | 603-271-6764 |
| RI | David | Allenson | david.allenson@dcyf.ri.gov | 401-528-3864 |
| VT | Aaron | Pelton | aaron.pelton@ahs.state.vt.us | 802-241-2108 |

### Region II

| NJ | Linda | Longo | linda.longo@dcf.state.nj.us | 609-888-7296 |
|---|---|---|---|---|
| NY | Paul | Nance | Paul.Nance@ocfs.state.ny.us | 518-402-3016 |
| PR | Lisa | Agosto Carrasquillo | lmagosto@adfan.gobierno.pr | 787-625-4988 |

### Region III

| DC | Lori | Peterson | lori.peterson@dc.gov | 202-434-0055 |
|---|---|---|---|---|
| DE | Tylesha | Rumley | tylesha.rumley@state.de.us | 302-633-2674 |
| MD | Pierre | Verleysen | pverleys@dhr.state.md.us | 410-540-8536 |
| PA | William | Sunday | wsunday@pa.gov | 717-214-3809 |
| VA | David | Bringman | David.Bringman@dss.virginia.gov | 804-726-7553 |
| WV | Brenda | Howell | Brenda.L.Howell@wv.gov | 304-558-7980 |

### Region IV

| AL | Janet | Winningham | janet.winningham@dhr.alabama.gov | 334-353-4898 |
|---|---|---|---|---|
| FL | Jason | Gaitanis | Jason Gaitanis@dcf.state.fl.us | 850-413-8667 |
| KY | Dilip | Penmecha | dilip.penmecha@ky.gov | 502-564-0105 |
| SC | Lynn | Horne | lynn.horne@dss.sc.gov | 803-360-1786 |
| GA | Michael | Fost | mifost@dhr.state.ga.us | 404-463-4079 |
| MS | Shirley | Johnson | shirleyj@mdhs.state.ms.us | 601-359-4679 |
| NC | Heather | Bohanan | heather.bohanan@dhhs.nc.gov | 919-334-1237 |
| TN | Jerry | Imsand | Jerry.Imsand@tn.gov | 615-532-2261 |

### Region V

| IL | David | Foust | David.Foust@illinois.gov | 217-558-5040 |
|---|---|---|---|---|
| IN | Lisa | Rich | lisa.rich@dcs.in.gov | 317-232-4497 |
| MI | Cynthia | Eberhard | Eberhardc@michigan.gov | 517-202-1315 |
| MN | Jean | Swanson-Broberg | jean.swanson-broberg@state.mn.us | 651-431-4746 |
| OH | Leslie | McGee | mcgeel@odjfs.state.oh.us | 614-752-1089 |
| WI | Wendy | Henderson | Wendy.Henderson@wisconsin.gov | 608-266-5572 |

### Region VI

| AR | Nellena | Garrison | Nellena.garrison@arkansas.gov | 501-682-8583 |
|---|---|---|---|---|

DHS 374584

Attachment D

| LA | Walter | Fahr | Walter.Fahr@la.gov | 225-342-6832 |
|----|--------|------|--------------------|--------------|
| NM | Linnette | Carlson | linnetted.carlson@state.nm.us | 505-259-6661 |
| OK | Elizabeth | Roberts | e.roberts@okdhs.org | 405-522-3715 |
| TX | Mark | Prindle | MarkPrindle@dfps.state.tx.us | 512-929-6753 |
| **Region VII** | | | | |
| IA | Jeff | Regula | jregula@dhs.state.ia.us | 515-242-5103 |
| KS | Deanne | Dinkel | deanne.dinkel@srs.ks.gov | 785-291-3665 |
| MO | Meliny | Staysa | meliny.j.staysa@dss.mo.gov | 573-751-4832 |
| NE | Doug | Beran | Doug.Beran@Nebraska.Gov | 402-471-0729 |
| **Region VIII** | | | | |
| CO | Kimber | Johnson | kimber.johnson@state.co.us | |
| MT | Louis | Walters | Lwalters@mt.gov | 406-841-2415 |
| ND | Marlys | Baker | mbaker@nd.gov | 701-328-1853 |
| SD | Jaime | Reiff | jaime.reiff@state.sd.us | 605-773-3227 |
| UT | Navina | Forsythe | nforsythe@utah.gov | 801-538-4045 |
| WY | Lauri | Lamm | lauri.lamm@wyo.gov | 307-777-5536 |
| **Region IX** | | | | |
| AZ | Nicholas | Espadas | nespadas@azdes.gov | 602-542-3969 |
| CA | Debbie | Williams | deborah.williams@dss.ca.gov | 916-928-2262 |
| HI | Ricky | Higashide | rhigashide@dhs.hawaii.gov | 808-586-5109 |
| NV | Shauna | Tilley | stilley@dcfs.nv.gov | 775-684-7942 |
| **Region X** | | | | |
| AK | Susan | Cable | susan.cable@alaska.gov | 907-465-2203 |
| ID | Robbin | Thomas | ThomasR2@dhw.idaho.gov | 208-334-5798 |
| OR | Angela | Long | angela.long@state.or.us | 503-945-6170 |
| WA | Lisa | Barber | lbar300@dshs.wa.gov | 360-902-8052 |

DHS 374585

Attachment E

# Annual Reporting of State Education and Training Vouchers Awarded

Name of State:

| | Total ETVs Awarded | Number of New ETVs |
|---|---|---|
| Final Number: **2011-2012 School Year** (July 1, 2011 to June 30, 2012) | | |
| **2012-2013 School Year\*** (July 1, 2012 to June 30, 2013) | | |

Comments:

\*in some cases this might be an estimated number since the APSR is due June 30, 2013.

DHS 374586

DHS 374587