```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          JACKSON DIVISION


JAMES D. JOHNSON, AS NEXT
FRIEND TO OLIVIA Y, ET AL

         vs.                    Civil Action No. 3:04-cv-00251-TSL-FKB

HALEY BARBOUR, AS GOVERNOR
OF THE STATE OF MISSISSIPPI,
ET AL


            COURT REPORTER'S TRANSCRIPT OF HEARING


                  BEFORE HONORABLE TOM S. LEE
                  UNITED STATES DISTRICT JUDGE

                         May 22, 2014
                      Jackson, Mississippi


APPEARANCES:

FOR THE PLAINTIFF(S):

    MS. MARCIA ROBINSON LOWRY, ESQ.


FOR THE DEFENDANT(S):
    MR. RUSTY FORTENBERRY
    MS. ASHLEY TULLOS
    MS. KENYA KEY RACHAL


ALSO PRESENT:

    MS. GRACE LOPES, COURT MONITOR

COURT REPORTER:

Brenda D. Wolverton, RPR-CRR
Jackson, Mississippi
```

```
 1          (COURT CALLED TO ORDER)
 2          THE COURT:  In the case of Olivia Y and other
 3  plaintiffs versus the state, No. 3:04CV251, the court scheduled
 4  a status hearing for this morning.  The court has received and
 5  counsel also Ms. Grace Lopes' report to the court, a very
 6  extensive and detailed report, consisting of some 250 plus
 7  pages that included her 12-page summary and that thoroughly and
 8  from the court's perspective accurately details the present
 9  status of the situation in this case.
10          I would first call on Ms. Lowry to hear your response
11  to the report and any observations that you have about it.
12          MS. LOWRY:  Thank you, and good morning, Your Honor.
13  The monitor's report is indeed quite comprehensive and
14  extremely helpful.  It's also extremely troubling, and that's
15  what we would like to address the court about in response to
16  that.
17          The monitor emphasizes in her report, and I quote, the
18  need to refine and accelerate reform efforts because the cost
19  of failing can have tragic and life-long consequences.  The
20  monitor notes that of 33 requirements for which the data is
21  sufficient for her to reach conclusions, the data is only -- I
22  misspoke.  The data is only sufficient on 33 requirements --
23  I'm sorry, Your Honor.  I misspoke again.  On 33 requirements,
24  the data is sufficient on 23.  Of those 23, there is compliance
25  on 10, noncompliance on 13.  And the report notes that there is
```

1  a need for the defendants to act with far greater urgency to
2  marshal resources and build necessary capacity to meet the
3  requirements of the modified settlement agreement.
4          Your Honor, there are three big issues that we would
5  like to raise with the court.  One, the issue with regard to
6  data.  The state has made progress with reporting of the data
7  in many but not all instances, and in some very important
8  instances such as caseload, they have not been able to provide
9  accurate data.  That's a critical issue.
10         Compliance is far below what it should be now on a
11 settlement that was entered in 2008.  And at the court's
12 instruction as a result of a proposed contempt order by
13 plaintiffs, it was renegotiated.  And the renegotiated
14 settlement, the modified settlement, was entered in July of
15 2012.  As the court I'm sure is quite aware, in 2013, we had to
16 ask for and the court entered an order with regard to the
17 production of data.  And we do have some data now which is
18 certainly a step forward but somewhat disheartening in the
19 sense of what the data shows.  There are real lags in
20 compliance that are, in fact, inevitably going to result in
21 harm to children, and there is a real lack of capacity within
22 the agency noted in great detail in Ms. Lopes' report as she
23 details circumstances in which she asks for information, asks
24 for data, the data comes in incorrectly, the plans come in
25 inadequately, have to be sent back.  We are not at a good

1   state, Your Honor.
2           So from plaintiff's perspective, here is what we would
3   propose to the court.  Here is where we think we really need to
4   go.  This is a situation that is unacceptable to the children
5   we represent.  So what concretely can we do?  One option that
6   we have obviously is a motion for contempt.  We would like to
7   try to avoid that if we can.  We do think it's better to try to
8   reach an agreement with the state.  We have had meetings with
9   the state with Ms. Lopes' assistance.
10          THE COURT:  Lately?
11          MS. LOWRY:  Yesterday, Your Honor.  We have had
12  conversations with them before that, but we met with them
13  yesterday, and we have some hope that we may be able to, in
14  fact, negotiate a remedial order.  And so what we would like to
15  do is take the next 30 days to try to negotiate a remedial
16  order.  We made a start on it yesterday.  We don't know whether
17  we will be successful, but both sides are trying, and we would
18  like to try to negotiate a remedial order in 30 days to address
19  the serious capacity and noncompliance issues.  And if we can
20  do that, as we hope we can, we would present an order to the
21  court in 30 days for the court's consideration.  Failing
22  that -- and we hope we won't, but failing that, plaintiffs will
23  be filing a motion for contempt.  I emphasize we will only do
24  that if we can't reach an agreement about an alternative way
25  for remediation to take place going forward, because we think

1   action is necessary, either voluntary action or we are going to
2   need to ask the court for specific action.
3           THE COURT:  In taking the position that the state has
4   been deficient in complying, do you question the state's good
5   faith level of diligence and conscientiousness, or is it a
6   matter primarily of lack of resources, perhaps lack of guidance
7   or priorities?  Or generally speaking, what is your view of
8   that?
9           MS. LOWRY:  Your Honor, we don't question the state's
10  good faith.  We believe that the state wants to come into
11  compliance and, in fact, made good on the promises that have
12  been made in this settlement agreement.  We do think, however,
13  and I think the monitor's report illustrates it in great
14  detail, great illuminating detail, the state has a significant
15  lack of capacity.  And by that, I mean not only resources but
16  planning capacity and the capacity to organize the reform
17  effort in a way that will be effective.
18          There are illustrations one after the other about
19  either the state failing to collect data on something or having
20  the data and it's incorrect and then going back on the data,
21  failing to take action, failing to have the structures
22  necessary to address known problems.  One of the unfortunate
23  things here, Your Honor, is I don't think there is a real
24  dispute about what's going on.  Ms. Lopes has done an extremely
25  thorough and very well-documented job, so we know what the

```
 1    facts are.  Nor, Your Honor, are the things that are required
 2    to be done under the modified settlement agreement
 3    extraordinary things.  They are things that a basic child
 4    welfare system has to provide, like protecting the safety of
 5    children, having enough case workers, making sure that homes
 6    are properly licensed and supervised, that children are
 7    visited, that reports of maltreatment are investigated timely.
 8    These are basic safety requirements in any child welfare
 9    system.  We are not talking about the Cadillac of a child
10    welfare system.  We are talking about very basic issues here.
11             So reform is not without its difficulty, Your Honor,
12    but as the court may be aware, other systems are in the process
13    of reform, and at some point it may well be a resources issue,
14    but we don't know what the caseload deficits are because the
15    state cannot collect caseload information.  So that is a big
16    gap.  We do know there aren't enough supervisors and that the
17    state hasn't hired enough supervisors, and supervisors are
18    critical, because in any child welfare system, there are
19    inexperienced workers.  The quality of the services depends on
20    the supervisors.
21             THE COURT:  And apparently the retention of
22    supervisors has been a problem.
23             MS. LOWRY:  Yes, Your Honor.  Absolutely.  Your Honor,
24    these things can be done.  They are not being done in
25    Mississippi, and plaintiffs do not believe that's because of
```

1   bad faith or any efforts to undermine.  We think that the state
2   wants to do it.  We think it lacks the capacity.  And so we
3   want to be concrete with proposals about what we have seen work
4   in other systems and what we would like to propose to the
5   court.  That's the subject of discussion, and it would be
6   inappropriate for me to raise with the court today the issues
7   under discussion because they are settlement discussions, and
8   we are hopeful that we can reach agreement on them.
9           THE COURT:  And I'm not interested in asking questions
10  that provoke contention in this hearing this morning.  If you
11  are in discussions, then I hope they will proceed smoothly.
12          MS. LOWRY:  Yes, Your Honor.  And we hope so, too.
13  Good faith on the state's part, Your Honor, is not an issue.
14  It is capacity.  And if we can't work out an agreement with the
15  state, which I emphasize we are hoping we can, then we are
16  going to ask the court through the vehicle of a contempt motion
17  to order the kinds of changes that we think are necessary.
18          The court's order last June with regard to the data
19  was very helpful.  It hasn't gone perfectly.  Nothing goes
20  perfectly, particularly given the huge data incapacity the
21  state has had, but there has been real progress there, and
22  that's absolutely critical.  We think there are other changes
23  that can be made.  We do think that there will be staffing
24  issues that are identified.  But there are other capacity
25  issues that have to be addressed.

1            And so -- and there is urgency to this.  Obviously we
2    are very far down the road without getting a system that serves
3    the children we represent.  And it is -- in fact, as the
4    monitor points out, there is real urgency in addressing this.
5    This has just gone on too long.
6            So where we are is that we hope we can come back to
7    the court in 30 days with a proposed order for the court's
8    consideration.  If we cannot, we will come back not in 30 days
9    because we are going to work through the 30 days to try to
10   resolve this.  If at the end of 30 days or if we know sooner
11   than the end of 30 days that that's not going to happen, then
12   we will be presenting to the court and we will give you a time
13   estimate of that if we reach that point a motion for contempt
14   which will contain specific remedies that we will ask the court
15   to order to move this system forward.
16           A question, Your Honor, is since I'm hoping that the
17   end of 30 days we will have an order for the court's
18   consideration, if that is in fact the case, will the court like
19   the parties to appear and discuss the order or does the court
20   just want us to submit the order?  How do you want to proceed?
21           THE COURT:  Well, of course, I'm open to suggestions.
22   If both sides reach an agreement, then I won't have many
23   questions.  Do you think that from your perspective that it
24   would still be in order to have a hearing and present the
25   matter to some extent orally for the court's review before

```
 1   signing the order?  If so, then I will schedule a hearing.  I
 2   am influenced by what counsel think on that.
 3           MS. LOWRY:  Well, Your Honor, from our standpoint, we
 4   do think it would be useful to present it to the court because
 5   we think that the court should be aware of the steps we are
 6   taking.  Having an order, which I hope we will, is only a step
 7   forward.  It is not going to be guaranteeing compliance.  And I
 8   think it's important for the court to know what the efforts are
 9   being made, because either that's going to go well or we're
10   going to come back to the court and say these measures were
11   insufficient, didn't work.
12           THE COURT:  Very well.  Having heard your response, I
13   will schedule a hearing for presentation of the proposed order,
14   assuming it eventuates that you have such an order.
15           MS. LOWRY:  Thank you, Your Honor.  Your Honor, I have
16   nothing further unless the court has questions.
17           THE COURT:  Very well.  I will hear from the state.
18           MR. FORTENBERRY:  Your Honor, my name is Rusty
19   Fortenberry, and I'm here with Kenya Rachal and Ashley Tullos
20   representing Governor Phil Bryant, Director Ricky Berry of the
21   Department of Human Services and Dr. Kim Shackelford of the
22   Division of Family and Children Services, collectively the
23   state.
24           I just want a few introductory remarks and then a
25   couple of minutes to talk through some of the issues in Ms.
```

1  Lopes' report that were mentioned by Ms. Lowry.  Number one, I
2  am not here to say things are perfect.  I don't think anybody
3  here with the state is here to say things are perfect.
4  However, I would argue that things are much improved.
5          Your Honor, if you look back through the progress in
6  Period 1 and Period 2 versus Period 3, the pace has picked up.
7  There is improvement.  And oftentimes issues get lost in the
8  day-to-day shuffle and looking at the details of Ms. Lopes'
9  report.  But from going back to Governor Barbour's
10 administration, when this action started, the first priority
11 was caseworkers, Your Honor.  There had to be a focus on that.
12 Everything couldn't be done at once.  You start building the
13 capacity of caseworkers.  Then you start looking at the data.
14 Now last year the focus was on building the data.  Now I think
15 we are to the point of starting to look at the capacity on the
16 statewide and regional level.
17         And I understand their ideas that we are talking to
18 Ms. Lowry about, and a lot of those are very good ideas.  But
19 the state's position is we need to be cautious because those
20 ideas are also involved from states that have been in this
21 predicament and proceeding for 25 years.  And certainly we want
22 to be cautious and try to learn from those states as well as we
23 move through this.
24         But to put some context around the report, Period 3,
25 Your Honor, was from July of 2012 to 2013, July of 2013.  Dr.

```
 1   Shackelford was hired in April of 2013, some eight or nine
 2   months into the Period 3.  Your data order was last year
 3   June 24th of 2013.  The immediate focus coming out of all of
 4   that was the court's order of June 24th, moving to that
 5   priority.  To give some perspective to that order, Your Honor,
 6   that project has been at a cost of over $4 million.  I
 7   estimate, and this is my estimation, some 200, 220 private and
 8   public employees involved in that process to generate the
 9   reports.  I would say over 1500 reports have been produced.
10   That's over 125,000 pages.  So this was a huge undertaking and
11   focus on the agency.
12           And frankly, some capacity had to be pulled from other
13   areas into complying with the order.  There have been changes
14   to the data collection, the storage.  The performance
15   production practice has been consequential.  I believe that's
16   the term used by Ms. Lopes.  There has been an accelerated
17   progress in producing accurate data.  By January 15th of this
18   year, defendants had submitted data reports responsive to 49
19   out of 53 requirements.  So the state's position is there has
20   been substantial progress in building the data validation and
21   reporting function.
22           On the issue of hiring, extremely important.  During
23   Period 3 there was a net increase of approximately 45
24   caseworkers.  During the 2010 to '13 period, there was an
25   increase of approximately 128 workers.  And that's including
```

```
 1   attrition.  The defendants are committed to hiring staff.  We
 2   are not waiting on caseload data.  There are difficulties in
 3   generating that report.  I understand that.  But the defendants
 4   are not here saying we need to wait on the report to hire
 5   caseworkers.  That is an ongoing process and a priority with
 6   the defendants, with particularly the carve-out counties that
 7   are mentioned and you have heard discussed previously.  The
 8   defendants increased salaries there to try to attract
 9   caseworkers.  December 15th of '11, there was a 15 percent
10   increase.  That wasn't enough on the coastal counties frankly,
11   Your Honor, and the defendants took the initiative in January
12   of 2013 and increased another 20 percent.  So the defendants
13   are making good faith efforts in those areas to attract the
14   caseworkers needed.
15           Now, this has frankly created a need for more
16   supervisors.  And you have heard that discussed and seen
17   that -- read that in Ms. Lopes' report.  It has also been
18   exacerbated and made more difficult by an increase in the
19   number of children coming into custody, which is beyond the
20   defendant's control.  For example, Region 3 and 7 West, Your
21   Honor, from July 31st of 2012 to September 30th, 2013.
22           THE COURT:  That's basically Jackson and the coast
23   counties.
24           MR. FORTENBERRY:  Yes, sir.  The number of children
25   increased from 760 to 1060.  That's a 44 percent increase which
```

1  the defendants now have to automatically have the capacity to
2  take care of that.  The defendants went to COA, the Council on
3  Accreditation, and the State Personnel Board and asked for
4  reasonable exceptions on the qualifications of supervisors to
5  help the pace of hiring there.  And now we are starting to see
6  that increase.  And hopefully we can report back to you later
7  that that issue is solved.
8        We now have an adequate and vibrant training unit
9  that's fully staffed.  And preservice curriculum is accurate,
10 inservice curriculum is accurate.  The quality control unit,
11 CQI, needs refinement.  It's up and running now.  There has
12 been an implementation of our process for maximizing federal
13 funds that has come along that is very important to help the
14 defendants build capacity.  But frankly, progress in every area
15 can't occur overnight.  The defendants are acting in good
16 faith.  There is progress.
17        In reading Ms. Lopes report, you do see that there are
18 many requirements that were met by the defendants.  But now we
19 are to the point of the defendants need to focus on the
20 regions, build the capacity to support those regions from
21 implementation of the settlement agreement.  They need to build
22 capacity in the state office to support that.
23        And that's where we are, and those are the discussions
24 that are ongoing with Ms. Lowry and Children's Rights at this
25 point.  I hope we make wise decisions.  I'm optimistic that we

```
 1    reach an agreement and report back to you in 30 days.  I
 2    certainly will do everything I can and the defendants within
 3    our power to reach an agreement and report back on how we are
 4    proceeding at that time.  Thank you.
 5              THE COURT:  All right, sir.  Ms. Lowry, I'm not
 6    suggesting that you say anything further, but you certainly may
 7    if you wish.
 8              MS. LOWRY:  Thank you for the opportunity, and I will
 9    be very brief.  We know the state is working.  The question is
10    whether it has capacity.  The issue is this is a 2008 judgment.
11    It is a large complex agency.  The state has to know how to
12    manage it to make things happen.  And they have been doing some
13    things.  They haven't been doing enough.  And that's our
14    concern, Your Honor.
15              And there are children all over the state.  Getting
16    things to happen is the defendant's responsibility.  It's not
17    happening.  And so we think more needs to be done.  And that's
18    our position.  That's what we are going to try and negotiate
19    and that's what we are going to ask Your Honor for help with if
20    we can't reach an agreement.  Thank you, Your Honor.
21              THE COURT:  Thank you.  Ms. Lopes, I have your
22    detailed and thorough report.  The attorneys have stated brief
23    responses to your report which apparently did not disagree to
24    any extent.  Is there any additional comment or anything to say
25    in response to their statements that you would like to make
```

```
 1   that would help perhaps edify the court in this case?
 2             MS. LOPES:  Yes, Your Honor.  Thank you.  Good
 3   morning, Your Honor.  For the record, Grace Lopes, L-O-P-E-S,
 4   the court monitor.  Your Honor, I do not disagree with anything
 5   plaintiffs have said or defendants have said in terms of in
 6   general terms at least.  There has been progress in certain
 7   areas, but there are very substantial remaining capacity
 8   deficits that have to be addressed.  And those capacity
 9   deficits shouldn't diminish the recognition of the progress by
10   any means, but on the other hand, they have to be confronted
11   and addressed on an expedited timetable, because I think one of
12   the most significant things that has come out of the June
13   order, the June 2013 order, is the data that we have.  And
14   albeit it has limitations, albeit it's partial data in some
15   respects related to many of the requirements, but it's very
16   useful data and helpful data that is an important tool for the
17   defendants to make progress.  And the data is very
18   illuminating.  What it shows is that defendants have a lot of
19   work to do in terms of improving services, delivering the
20   services that are required and doing it on a timely basis and
21   protecting children.  A lot of work to do.  And it needs to be
22   done on a far more accelerated timetable and with far greater
23   capacity to deliver.
24             I think that is the fundamental issue that we are
25   grappling with.  But I do not by any means diminish the hard
```

```
 1   work that defendants have, you know, made, very dedicated
 2   people working at the agency under tremendous strain and
 3   difficulty.  I recognize that and appreciate that.  But it's
 4   not enough.  It's not enough.  They need systems in place to
 5   move forward and move forward on a more accelerated timetable.
 6   A reasonable timetable but a timetable that is far more
 7   accelerated.  I think that is the bottom line, Your Honor.  I
 8   don't think I can add to the 250 pages beyond that.
 9            THE COURT:  Thank you, ma'am.
10            MS. LOPES:  Thank you.
11            THE COURT:  The court will now schedule a date with
12   regard to the hoped for entry of an agreed order approximately
13   30 days from today.  So we will go off the record and arrive at
14   a date at which to schedule this hearing.
15            (*Off-Record Discussion*)
16            THE COURT:  The 26th of June at 9:00 o'clock will be
17   the date and time for the hearing with regard to an agreed
18   order.  Yes?
19            MS. LOWRY:  Your Honor, may I ask?  If as I hope
20   doesn't happen the talks break down and we don't need a
21   conference to review the order, perhaps we could notify the
22   court by mail that we don't need the hearing and that we
23   will -- I hope that doesn't happen, but in the event there is
24   no need for us to appear --
25            THE COURT:  There is no need to appear to tell me that
```

```
 1  you are not in agreement.
 2           MS. LOWRY:  Yes, Your Honor.
 3           THE COURT:  Okay.  Is there anything further from
 4  counsel for either side?
 5           MR. FORTENBERRY:  No, sir.
 6           MS. LOWRY:  Not from plaintiffs, Your Honor.
 7           THE COURT:  Very well, then.  Court is adjourned, and
 8  I hope you can come to an agreement.
 9           (Hearing Was Adjourned.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF REPORTER

I, BRENDA D. WOLVERTON, Official Court Reporter, United States District Court, Southern District of Mississippi, do hereby certify that the above and foregoing pages contain a full, true and correct transcript of the proceedings had in the aforenamed case at the time and place indicated, which proceedings were recorded by me to the best of my skill and ability.

I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

This the 16th day of June, 2015.

s/ Brenda D. Wolverton_____
BRENDA D. WOLVERTON, RPR-CRR