IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

MISSISSIPPI JACKSON DIVISION


OLIVIA Y., et al.                                                                    PLAINTIFFS


v.                                                        CIVIL ACTION NO. 3:04CV251LN


HALEY BARBOUR, as Governor of the State of Mississippi, et al.            DEFENDANTS


---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AWARD OF CLASS COUNSEL'S FEES AND EXPENSES**

---

# I. INTRODUCTION

Counsel for Plaintiff children seek an order[1] from this Court pursuant to 42 U.S.C. § 1988 awarding them reasonable attorneys' fees and expenses in the total amount of $345,698.11 for the monitoring and enforcement of the Modified Mississippi Settlement Agreement and Reform Plan ("MSA", Dkt. No. 571), from December 1, 2014 through November 30, 2015.

During the eight years of monitoring in this lawsuit, Defendants have never previously contested Plaintiffs' entitlement to fees, and Plaintiffs and Defendants always have reached agreement on the amount of fees and expenses to which Plaintiffs are entitled. However, that is not the case for this most recent monitoring period. Plaintiffs respectfully submit this Memorandum of Law in support of their motion for attorneys' fees and litigation expenses.

---

[1] Plaintiffs are not required to provide notice to class members concerning this fee application. On February 25, 2014, the Court, in its Order granting Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses, (Dkt. No. 598) stated that "[b]ecause the notice received by Plaintiff Class pursuant to Rule 23(h) as to Plaintiffs' first Unopposed Motion for Approval of Settlement Regarding Plaintiffs' Attorney's Fees "included notification that Plaintiffs' Counsel might periodically be submitting fee application for monitoring and enforcement work performed on behalf of the Plaintiff Class and that no additional notification would be made of such applications, and because additional notice would impose undue cost and burden, notice pursuant to Rule 23(h) of this and any subsequent fee applications for post-judgment monitoring and enforcement work is unnecessary.'" Order on Unopposed Motion for Plaintiffs' Attorney's Fees and Expenses. (*Id.*).

## II. FACTS

Plaintiff Children filed this action in 2004 seeking injunctive relief to remedy the terrible deficiencies in Mississippi's child welfare system. After extensive and hard fought litigation, the case was settled in January 2008. (Mississippi Settlement Agreement and Reform Plan, ("Settlement Agreement"), Dkt. No. 459, filed January 4, 2008)). In October 2010, faced with Defendants' continuing non-compliance with the terms of the Settlement Agreement, Plaintiffs filed their Motion for Contempt and for the Appointment of a Receiver. (Dkt. No. 511). Plaintiffs' motion was denied, but even in denying Plaintiffs' motion, the court found that Defendants had "failed to comply with most of the requirements established by the … court-approved Settlement Agreement." (Dkt. No. 557). The court instructed the parties to re-negotiate the Settlement Agreement's targets and implementation time frames and, in July 2012, the Court entered the Modified Mississippi Settlement Agreement and Reform Plan, ("MSA"), (Dkt. No. 571). The MSA is currently the operative settlement agreement in this case.

The MSA provided for a phased-in schedule of remedial measures, which the State was required to implement, concerning, among other things, numbers of case workers, their caseloads, visitation requirements, medical care for children in placement and other measures designed to improve Mississippi's child welfare system. However, Defendants failed to implement the required measures and in 2014 and 2015, the court Monitor issued reports for Implementation Periods 3 and 4 which documented significant failures by Defendants to achieve the court-ordered requirements set out in the MSA. (Dkt. Nos. 604 and 655 respectively).

Prior to the formal issuance of her reports, the Monitor provided draft reports and information to the parties concerning the status of implementation. Faced with the State's massive non-compliance with the MSA and additional information from the Monitor that the State was backsliding on the few reforms it did achieve, in March 2015 Plaintiffs filed their Renewed Motion for Contempt, for an Evidentiary Hearing and for the Appointment of a Receiver. (Dkt. No. 623). Plaintiffs' Motion was set for hearing for August 10, 2015. (Dkt. No. 643). During the summer of 2015, the parties undertook discovery, and Plaintiffs' counsel was required to expend many hours responding to Defendants' discovery requests, reviewing and summarizing Defendants' discovery responses, preparing expert testimony and preparing to depose Defendants' witnesses and defend the depositions of Plaintiffs' witnesses. Mr. Dixon spent extensive time traveling to southern Mississippi to locate lay witnesses, interview them and educate them on the deposition process. Ms. Glasser was primarily involved in propounding Plaintiffs' discovery requests, responding to Defendants' discovery and preparing to defend the depositions of the lay witnesses. Ms. Lowry was primarily involved in preparing to take the depositions of key Mississippi child welfare system officials and defend the deposition of Plaintiffs' expert, Dr. Viola Miller. Mr. Drinkwater provided expert local counsel perspective on the pertinent issues and Mr. Bentley provided assistance with responding to discovery and with Local Rule requirements.

The law firm of Loeb and Loeb, also co-counsel in this case, spent significant time drafting and finalizing the contempt motion. Loeb and Loeb is not seeking fees in this motion for its work.

Finally, in late July, 2015, Defendants conceded their non-compliance with the MSA and with the Periods 3 and 4 Implementation Plans, as documented in the Monitor's Period 3 and Period 4 reports. After extensive negotiations held both in Jackson, Mississippi and via telephone, the parties filed an Agreed Order Continuing the Evidentiary Hearing, (Dkt. No. 664), which contained the requirement, among others, that the State would hire an expert group to conduct an organizational analysis of the State's child welfare system and make recommendations to address the State's continuing failures to provide acceptable foster care for Plaintiff children. On December 22, 2015, the parties filed the Interim Remedial Order, (Dkt. No. 671), which set forth time requirements for the State to accomplish the first steps toward a new organizational structure for the Division of Family and Children's Services, hiring a new DFCS Executive Director and other senior DFCS management officials, exempting DFCS from state personnel board regulations and from contracting regulations and, most importantly, conducting a desk audit to determine the actual number of cases and workers in the child welfare system. (*Id.)*. The new deadlines for State compliance with the requirements of the Interim Remedial Order were set out over the following six months, and the hearing on Defendants' Renewed Motion for Contempt was re-set for May 2016. (*Id.*).

It is against this backdrop of 2015's high level of monitoring and enforcement activities that Plaintiffs' counsel were required to perform the legal services reflected in the motion for attorney's fees and expenses; as noted herein, enforcement activity was high, and, accordingly, counsel were required to expend large amounts of time to advance the rights of Plaintiff children.

Finally, in addition to proceeding with the contempt motion, Plaintiffs' counsel continued throughout this period to work with the Monitor, reviewing and analyzing compliance data, to work with sources to identify the causes of the state's massive non-compliance and to identify appropriate remedies. Thus, in this motion, Plaintiffs have documented the necessary expenditure of 960.78 hours and seek $336,123.89 in fees and $9,574.22 in expenses, set forth in the tables which follow.

Table 1 – Attorneys' Rates and Hours

|  | Hourly Rate | Total Hours | Total Fee |
|---|---|---|---|
| Marcia Lowry, ABC | $475[2] | **373.61** (56.83 hours of travel; 316.78 hours of legal work) | $163,967.63 |
| Sara Glasser, ABC | $350[3] | **277.02** (27.5 hours of travel; 249.52 of legal work) | $92,144.50 |

---

[2] Fees for legal services by Ms. Lowry were calculated using the rate of $475 per hour; fees for travel time were calculated using the rate of $237.50 per hour, a 50% reduction.

[3] *See* note 2, *infra*. Fees for legal services by Ms. Glasser were calculated using the rate of $350 per hour; fees for travel time were calculated using the rate of $175 per hour, a 50% reduction.

6

| | | | |
|---|---|---|---|
| Stephen Dixon | $300[4] | **108.75** (50 hours of travel; 58.75 hours of legal work) | $25,125.00 |
| Wayne Drinkwater, Bradley Arant | $420 (2014); $438.75 (2015) | **83.3** (0.6 hours in 2014; 82.70 hours in 2015) | $36,536.88 |
| Michael Bentley, Bradley Arant | $198.75 (2014); $217.50 (2015) | **33.30** | $7,242.75 |
| Clare Feely, ABC paralegal | $130 | **81.3** | $10,569.00 |
| Jeanette Altobelli, Bradley Arant paralegal | $153.75 | **3.5** | $538.13 |
| **Total Hours:** **Total Fees:** | | **960.78** | **$336,123.89** |

Lowry Dec., ¶ 10. Both the number of hours spent by Plaintiffs' attorneys and their hourly rates are reasonable.

Plaintiffs' counsel are all experienced attorneys, whose experience fully justifies the hourly rates sought. Lead counsel in this case, Marcia Robinson Lowry, has been lead counsel since this lawsuit was filed, has more than 40 years of experience litigating child welfare reform

---

[4] *See* note 2, *infra.* Fees for legal services by Mr. Dixon were calculated using the rate of $300 per hour; fees for travel time were calculated using the rate of $150 per hour, a 50% reduction.

lawsuits in the federal courts, and has been awarded rates comparable to or higher than the rate being sought in this application.  Sara Robinson-Glasser has had more than 30 years of state and federal court litigation experience, spending over 20 years of that time as an Assistant United States Attorney in federal civil litigation.  Stephen Dixon has over 20 years of experience as an attorney for children and was the recipient of a national award for outstanding legal advocacy on behalf of children. Wayne Drinkwater and Michael Bentley, Plaintiffs' local counsel, are experienced civil litigators in both Mississippi state and federal civil litigation and regularly bill clients at rates considerably higher than the rate sought in this application. Drinkwater Dec., ¶ 10. The hourly rates sought by Plaintiffs' support staff are likewise reasonable. As will be further detailed below, Plaintiffs' attorneys are all extremely experienced litigators with substantial experience in both child welfare and civil rights litigation.

### III. ARGUMENT

Plaintiffs are entitled to an award of reasonable attorneys' fees under 42 U.S.C. § 1988, which provides that in federal civil rights litigation, the prevailing party may be entitled to "a reasonable attorney's fee as part of the costs." The purpose of Section 1988 "is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p.1 (1976)); *see also Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980) ("Congress enacted this statute in 1976 to encourage private attorneys general to enforce fundamental constitutional

rights under section 1983."). Attorney's fees should only be denied under Section 1988 when there is "an extremely strong showing of special circumstances." *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014)(quoting *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 623 (5th Cir. 2007)). They should be awarded to prevailing Plaintiffs in Section 1983 actions "as a matter of course." *Riley v. City of Jackson*, Miss., 2 F. Supp. 2d 864, 871 (S.D. Miss. 1997)(quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 998 (5th Cir. 1983)).

### A. Plaintiffs are Entitled to Reasonable Fees For Their Post-Judgment Monitoring and Enforcement Work

There can be no dispute with regard to Plaintiffs' entitlement to fees for the monitoring and enforcement work done during this period, pursuant to 42 U.S.C. § 1988.  Indeed, the parties have reached agreement on fee awards throughout the monitoring period up to the present time. The absence of such an agreement has necessitated this application to the Court, but the law on Plaintiffs' entitlement is and always has been clear.  Plaintiffs were the prevailing party in the underlying proceedings in this litigation, and are entitled to reasonable fees for post-judgment monitoring and enforcement work to ensure that they actually obtain the relief which the Court has awarded.  *See, e.g., Pennsylvania v. Delaware Valley Citizens Council For Clean Air,* 478 U.S. 546, 559 (1986), r'vd on other grounds, 483 U.S. 711 (1987)("in the context of. . .42 U.S.C. § 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee); *Walker v. U.S. Dept. of Housing Urban Development*, 99 F.3d 761, 767 (5th Cir. 1996)(monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees); *Miller v. Carson*, 628 F.2d 346, 349 (5th Cir.1980)(granting

attorneys fees for the filing of a contempt motion that was "related to the enforcement of [an] injunction" although the court did not make a finding of contempt).

A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" *Perdue v. Kenny A*., 130 S.Ct. 1662 (2010)(citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, 565 (1986)). Federal Rule of Civil Procedure 23(h), as amended, provides that in a certified class action, the Court is responsible for determining a reasonable fee and "must ensure that the amount and mode of payment of attorney fees are fair and proper." *See* Fed. R. Civ. P. 23(h) advisory committee's note (2003 Amendments). *See also In re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220, 227 (5th Cir. 2008)("In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among Plaintiffs' counsel.").

1)  The Attorneys' Fees and Expenses Requested by the Plaintiffs Are Reasonable

In this application, Plaintiffs seek fees at rates well within the prevailing rates for attorneys with comparable experience and lower than the rates which Plaintiffs' attorneys otherwise receive.  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *accord League of United Latin Am. Citizens #4552 (LULAC) v. Roscoe Indep. School Dist*., 119 F.3d 1228, 1232 (5th Cir. 1997). The resulting product, known as the lodestar, is used for calculating attorney's fees under

§1988. *See In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008).

In order to determine a reasonable hourly rate, the Court must consider the attorneys' customary billing rates as well as prevailing market rates. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)("When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.") Rates should generally be consistent with those in the relevant community for lawyers of "reasonably comparable skill, experience and reputation." *Blum* at 896 n.11 (1984). *See also Black v. Settlepou, P.C.,* 732 F.3d 492 (5th. Cir., 2013)("an appropriate hourly rate is the market rate in the community for this work.")  The hourly rates sought by Plaintiffs are well within local community rates. Dove Dec., ¶ 4; Drinkwater Dec., ¶ 10.

a)  The Lodestar is Reasonable

Plaintiffs billed a total of 960.78 hours during this billing period. These hours include Plaintiffs' ongoing monitoring of non-compliance and efforts to seek remedies to ensure the protection of the Plaintiff class, the preparation and filing of a contempt motion, and subsequent activities related to that motion, including working with an expert witness, propounding and responding to Defendants' discovery responses, as well as locating, interviewing and preparing local lay witnesses for deposition. Lowry Dec., ¶ 15. In addition, Plaintiffs' counsel were required to, and did, enter into extensive negotiations with Defendants concerning the state's ongoing and long-standing non-compliances and remedies for that non-compliance to avoid a

contempt hearing. Lowry Dec., ¶ 16. Finally, Plaintiffs' counsel also continued to work with the Monitor, reviewing current data and discussing findings and additional data needs with the Monitor. These hours were necessarily expended due to Defendants' failure to meet the requirements of the Modified Settlement Agreement and the relevant Implementation Plans, (Monitor's Report on Implementation Plan for Period 3, Dkt. No. 604, filed May 8, 2014 and Monitor's Report on Implementation Plan for Period 4, Dkt. No. 655, filed June 15, 2015), and court orders. Lowry Dec., ¶ 17; Drinkwater Dec., ¶ 8. Given the serious deficiencies in Defendants' compliance, Plaintiffs' efficiency is remarkable.

b) The Fees Sought Are Within the Prevailing Market Rate

Further, the hourly rates sought by Plaintiffs' attorneys herein are well within the prevailing market rate in this district for experienced attorneys. Dove Dec., ¶ 4; Drinkwater Dec., ¶ 5. Plaintiffs' attorneys seek hourly rates of $475 for Ms. Lowry; $438.75 for Wayne Drinkwater[5]; $350 for Sara Robinson-Glasser; $217.50 for Michael Bentley; $300 for Stephen Dixon; $153.75 for Ms. Altobelli, and $130 for Ms. Feely, paralegals respectively employed by

_____

[5] Mr. Drinkwater billed 0.6 hours in December 2014. That time was calculated using the hourly rate of $420.

Bradley Arant and by ABC. Ms. Lowry has been a practicing attorney for over 40 years and has already brought approximately 20 class action lawsuits on behalf of foster children. Lowry Dec., ¶ 3. Mr. Drinkwater has been practicing for over 38 years and is a nationally recognized commercial and appellate litigation attorney. Drinkwater Dec., ¶ 4. Ms. Robinson-Glasser is a former Assistant U.S. Attorney, and has been a practicing attorney for over 30 years, with over 20 years of federal court litigation experience. Glasser Dec., ¶ 2. Mr. Bentley is a partner at Bradley Arant with over eight years of litigation experience. Drinkwater Dec., Attachment B. Mr. Dixon has over 20 years of experience and has been nationally recognized for his work as an attorney for children. Dixon Dec., ¶ 2, 6.

Courts in this district have found rates comparable to the requested rates to be a reasonable hourly rate for attorneys with less experience than the Plaintiffs' attorneys who are seeking that rate. In *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* the U.S. District Court for the Southern District of Mississippi found that $400 was a reasonable hourly rate for an attorney with approximately 20 years of experience "in this legal community." In determining the reasonableness of this fee, the court found that the amount "falls within the range of hourly rates. . .an attorney of comparable experience normally charges in Mississippi." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* Memorandum Opinion and Order Granting in Part and Denying in Part Relators' Motion to Initiate Discovery, Impose Maximum Penalty, Award Maximum Relators' Share, and Award Relators Their Attorneys' Fees, Expenses, and Costs, Civ. No. 1:2006cv00433 (S.D. Miss. Feb. 21, 2014).

Similarly, in *Perez v. Bruister*, this court noted that the average hourly rate for partners at firms with a presence in Mississippi was $392, and that the highest rate was $540, and approved an hourly rate of $700/hour for one attorney. *Perez v. Bruister,* 3:13CV1001-DPJ-FKB, 2014 WL 5308404 (S.D. Miss. Oct. 16, 2014). Notably, the *Perez* court explicitly considered the hourly rates of Defendants' firm, Baker, Donelson, Bearman, Caldwell & Berkowitz in forming its calculation. *Id*. at n.5. In 2014, published hourly rates for partners at Baker, Donelson, Defendants' attorneys, were between $340-$495.[6]

The requested hourly rates for Plaintiffs' attorneys are justified not only because they are well within community rates, but also because they are comparable to those awarded to Plaintiffs in other cases years ago. For example, in a similar class action against the Oklahoma child welfare system concerning violation of foster children's rights under federal and constitutional law, Ms. Lowry was awarded $450/hour, and Mr. Dixon was awarded $250/hour. *See D.G. v. Yarborough*, No. 08 Civ. 074 (N.D. Okla March 31, 2013). Ms. Lowry has also been awarded

---

[6] "Billing Rates Across the Country, The National Law Journal (January 13, 2014) http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20160210082647 (Last accessed March 10, 2016.)

$495/hour in a similar matter in Georgia. *Kenny A. ex. rel. Winn v. Perdue*, 454 F. Supp.2d 1260 (N.D. Ga. 2006)(*r'vd on other grounds* by *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010)). Thus, the rates sought for Plaintiffs' counsel in the instant case are well within the rates they have previously been awarded by other courts in similar cases.

      c) Out of Area Counsel Is Entitled to Seek Rates Based on Counsel's Home Area Or National Rates

      The law allows a uniquely qualified out-of-area counsel, such as Ms. Lowry, to seek rates based on counsel's home area, or based on national rates. *See McClain v. Lufkin Indus. Inc.*, 649 F.3d 374, 382 (5th Cir. 2011)("counsel may be entitled to the rates they charge in their home districts under certain limited circumstances"); *See also Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995)(citing *Chrapliwy v. Uniroyal*, Inc., 670 F.2d 760, 768–69 (7th Cir. 1982)). Ms. Lowry, however, is not seeking the out-of-district rates to which she would be entitled, even though local community rates are not always required when out-of-district counsel is retained. *McClain*, 649 F.3d at 383 (5th Cir. 2011")(" The district court. . .legally erred in suggesting that local community rates are always required when out-of-district counsel are employed.") There is "abundant and uncontradicted evidence" that out-of-district counsel was necessary to prosecute this case. *McClain* at 382. Dove Dec, ¶ 6. In *McClain*, the Fifth Circuit clarified that when out-of-district counsel "are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm [$650/hour]" are "the starting point for the lodestar calculation" *Id.* at 383. Likewise, the Sixth Circuit affirmed the award of § 1988 attorneys' fees

at out-of-state rates in a statewide child welfare class action case substantially similar to the case at bar, where the Plaintiffs presented affidavits from local attorneys stating that there were no local counsel with "the resources, expertise, or willingness" to bring the suit. *Brian A. v Hattaway*, No. 02-5666 at *5 (6th Cir. 2003).[7] Luke Dove, an experienced Mississippi attorney, has affirmed that local counsel would have difficulty bringing a suit against the state of Mississippi, given the "conflicts with government relation, public finance, and other areas of practice that could be adversely affected by suits against the State." Dove Dec., ¶ 6.

If Plaintiffs were seeking out-of-district national rates, the *Laffey* Matrix,[8] a nationally recognized district court standard under which attorney hourly rates are based on years of

_____

[7] A true and accurate copy of the unpublished 6th Circuit Court of Appeals decision is submitted as Attachment D to the Declaration of Marcia Robinson Lowry.

[8] After years of wrangling over the matter of attorney fee hourly rates, the Court in *Laffey v. Northwest Airlines, Inc*., 572 F.Supp. 354, 371 (D.D.C. 1983) ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation. The U.S. Department of Justice has adopted its own version and uses the Adjusted *Laffey* Matrix in District Courts throughout the United States. https://www.justice.gov/usao-dc/file/796471/download.

experience, suggests that Plaintiffs' counsel would be entitled to rates that are $50-$300 higher than the rates they are currently seeking.[9]

Finally, all travel time was billed at 50% of counsel's usual hourly rate. *See Table 1, supra.*

2) The Relevant *Johnson* Factors Support the Reasonableness of the Proposed Attorneys' Fees Award

After calculating the lodestar amount, the court must scrutinize a fee award under the *Johnson* factors. *In re High Sulfur Content*, 517 F.3d at 228.[10]  In essence, under *Johnson*, the court looks at a variety of factors pertaining to the level of difficulty of the case and the skill of the attorneys. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

_____

[9] See Laffey Matrix 2014-2015, available at https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (Citing $520/hour for attorneys 20+years out of law school.)

[10] *Johnson* concerned the award of attorneys' fees and expenses following an initial judgment, and, thus is not directly applicable to these post-judgment fees. However, in an abundance of caution, Plaintiffs briefly discuss the *Johnson* factors to demonstrate that, even if applicable to the instant motion, Plaintiffs would also satisfy each of the applicable criteria.

1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989). This Court's

*Johnson* analysis "'need not be meticulously detailed'" nor "'excruciatingly explicit,'" lest

"'decisions of fee awards consume more paper than did the cases from which they arose.'" *In re*

*High Sulfur Content*, 517 F.3d at 228-29 (quoting La. Power & Light Co., 50 F.3d at 331).

Moreover, "[e]ven though the *Johnson* factors must be addressed to ensure that the resulting fee

is reasonable, not every factor need be necessarily considered." *Batchelder v. Kerr-McGee*

*Corp.*, 246 F. Supp. 2d 525, 531-32 (N.D. Miss. 2003) (citing *Uselton v. Commercial Lovelace*

*Motor Freight, Inc*., 9 F.3d 849, 854 (10th Cir. 1993)).

Each relevant *Johnson* factor regarding the level of difficulty of the case supports this fee

award. This case involves the health, safety, and well-being of tens of thousands of children, and

is undeniably time and labor intensive.[11]  This case presents challenging legal questions,

including the scope of appropriate injunctive relief and the appropriate remedies for Defendants'

violations of court orders. Addressing these issues has demanded enormous time and

---

[11] As of May 2015, there were 4,931 children in Mississippi's foster care system. Lopes, Grace. (2015). Children in Foster Care By Placement Type, By Region One-Day Snapshots, 6/30/13, 6/30/14, and 5/31/15.

commitment by Plaintiffs' attorneys. In this billing period, as discussed previously, Plaintiffs'

attorneys have done extensive work to vindicate the Plaintiffs' rights.  All of this work, and the

hours expended, have been necessitated by Defendants' ongoing failure to fulfill their legal

obligations to Plaintiff class members.

   The factors concerning the level of skill of the attorneys likewise support this fee award. As

previously discussed, Plaintiffs' attorneys have extensive experience in both civil litigation and

in child welfare litigation specifically, and the fees sought are comparable to rates that Plaintiffs'

counsel have previously been awarded in analogous matters, and well below what Plaintiffs

would be entitled to were they seeking national rates.

### B.  The Requested Expenses Are Reasonable

   In this application, Plaintiffs' counsel also seeks reimbursement for $9,574.22 in

expenses, all of it expended for costs attendant to counsels' travel to and from Mississippi from

their offices. *See* Table 2.  As discussed more fully below, these expenses have been found to be

compensable under case law. These expenses were reasonable and were necessarily incurred in

order to effectively litigate this case and enforce the applicable court orders. Lowry Dec., ¶ 10.


Table 2 - Expenses

| Category | Expense |
|---|---|
| Airfare and ground transportation | $ 6,861.96 |
| Food | $ 549.17 |

| | |
|---|---|
| Hotel Accommodations-Jackson Marriott | $ 2,163.09 |
| **Total Expenses:** | **$ 9,574.22** |

An award for out-of-pocket expenses incurred by counsel for the prevailing parties is '[l]imited to those expenses which the attorney would normally, customarily, and routinely bill a fee-paying client.' *Mota v. University of Texas, Houston Health Science Center*, 261 F.3d 512, 529 530 (5th Cir. 2001); *Beamon v. City of Ridgeland, Miss.*, 666 F. Supp. 937, 946 (S.D. Miss., 1987) (citing *Loewen v. Turnipseed*, 505 F.Supp. 512, 517 (N.D.Miss.1980)). These expenses include "postage, photocopying, paralegal services, long distance telephone charges, and travel costs" *Mota*, 261 F.3d at 529. Courts typically allow travel and meal expenses to be recouped for counsel who were necessary to the proceedings, and have only disallowed such travel expenses if the documentation is inadequate, or in unusual situations, such as when counsel claimed travel expenses for a law student whose "only involvement in the case was obtaining, delivering and organizing documents." *Beamon*, 666 F.Supp at 947.

Since these expenses were necessitated by the fact that in-district counsel was both unable and unwilling to undertake representation of plaintiff children, under the case law, these expenses should be awarded.

### IV. CONCLUSION

Under the case law, and the Affirmations of Ms. Lowry, Glasser, and Mssrs. Drinkwater and Dixon, and Mr. Dove, an attorney who is practicing within the district in which this case is sited, the hourly rates requested by Plaintiffs' counsel are reasonable. Further, the expenses

20

billed herein are also reasonable, having been necessitated because there was no local counsel able or willing to undertake this representation. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for an award of reasonable fees and expenses and award them $345,698.11 for this billing period.

RESPECTFULLY SUBMITTED, this the 1st day of April 2016.

 /s/ Marcia Robinson Lowry 
Marcia Robinson Lowry (*pro hac vice*)
Sara Robinson Glasser (*pro hac vice*)
A Better Childhood, Inc.
1095 Hardscrabble Road
Chappaqua, NY 10514
Telephone (646) 808-7344
Facsimile: (914) 238-0365
Email: mlowry@abetterchildhood.org
        srglasser@abetterchildhood.org

W. Wayne Drinkwater, Jr. (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 400
188 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
Email: wdrinkwater@babc.com
        mbentley@babc.com


*Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system which will send notification of such filing to the following:

*s/Marcia Robinson Lowry*
Marcia Robinson Lowry

Dewitt L. ("Rusty") Fortenberry, Jr. (MSB #5435)
Kenya Key Rachal (MSB #99227)
Ashley C. Tullos (MSB # 101839)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
PO Box 14167
Jackson, Mississippi 39211
Telephone: (601) 351-2400

OF COUNSEL
Harold Pizzetta, III, Esq.
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building
430 High Street
Jackson, Mississippi 39201