**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JAMES D. JOHNSON, as next friend to**                     **PLAINTIFFS**
**OLIVIA Y., et al.**

**vs.**                             **CIVIL ACTION NO.: 3:04-CV-251-TSL-FKB**

**PHIL BRYANT, as Governor**                      **DEFENDANTS**
**of the State of Mississippi, et al.**

---

### STIPULATED SECOND REMEDIAL ORDER

---

As contemplated by Paragraph 6 of the July 23, 2015 Agreed Order Continuing the Hearing on Plaintiffs' Renewed Motion for Contempt (the "Agreed Order") [Dkt. No. 664 at 3-4], the Court has been advised that the parties have negotiated this Stipulated Second Interim Remedial Order based on the recommendations of Public Catalyst and the provisions of the December 22, 2015 Interim Remedial Order ("IRO") [Dkt. No. 671]. Having reviewed the Stipulated Second Remedial Order, the Court finds that it is consistent with the Agreed Order and the IRO, both of which are incorporated herein, and Orders as follows:

1.    Defendants do not contest a finding of non-compliance with the Mississippi Modified Settlement Agreement ("MSA") [Dkt. No. 571] for Period 5. Defendants' noncompliance with the MSA, Period 3 and 4 Implementation Plans, as well as Period 5, will be a sufficient basis for the Plaintiffs to submit evidence and argument to the Court concerning any available remedy at the remedial hearing, including the creation of a receivership. The Defendants reserve the right to present evidence and argument in defense against or in favor of any remedy, except that Defendants may not argue that the finding of noncompliance, rather than contempt, legally precludes the imposition of a receivership.

2.    No later than July 15, 2016, Public Catalyst shall certify to the parties whether Defendants have met their obligations with regard to the following:

A.    Paragraph 1(a) of the IRO;

B.    Paragraph 1(b) of the IRO;

C.    Paragraph 1(c) of the IRO;

D.    Paragraph 2 of the IRO;

E.    Paragraph 3 of the IRO;

F.    Paragraphs 4 and 5 of the IRO;

G.    Paragraph 6(b) of the IRO;

H.    Implementation of all applicable dates within the recruitment, hiring and retention plan;

I.    All applicable provisions of Paragraph 8 of the IRO;

J.    All applicable provisions of Paragraph 9 of the IRO;

K.    Paragraph 10 of the IRO; and,

L.    Paragraph 11 of the IRO.

3.    No later than August 1, 2016, Public Catalyst shall certify whether Defendants have met their obligations under Paragraph 7 of the IRO.

4.    Public Catalyst shall conduct a second point-in-time caseload desk audit in September, 2016, to determine actual caseloads as of the date of the audit, using the methodology and caseload standards developed by Public Catalyst during the caseload audit conducted pursuant to paragraph 6 (a) of the IRO. This audit shall be completed no later than October 1, 2016.

5.    The Monitor shall complete a validation and review of a random sample of all Maltreatment in Care 1) Reports received during the 12 month period ending December 31, 2015; 2) Screening and Investigations of those reports; and 3) Substantiations and Non-Substantiations of those reports.  The findings of this validation and review shall be completed no later than October 1, 2016.  The purpose of the validation review is to determine whether the screenings, investigations, and substantiations/non-substantiations comport with the requirements of the MSA and professional standards.

6.    On or before May 20, 2016, Defendants shall identify a sufficient number of PINS needed to support the Licensure Unit's reduction of the backlog of

2

unlicensed placements.  Upon identification of those PINS, the Defendants will begin recruiting persons to be employed in those PINS beginning July 1, 2016.

7.      Public Catalyst shall complete a validation of the number of children in unlicensed placements as of May 1, 2016, including a determination of how many of these children are in placements awaiting licensing; how many placements have previously been reviewed and rejected by licensing; and how many of these children have been placed in unlicensed placements by an order of the court.  The findings of this evaluation and review process shall be certified to the parties no later than August 15, 2016.

8.      Upon Public Catalyst's certification of the number of children in unlicensed placements as of May 1, 2016, as referenced in paragraph 7 above, Public Catalyst, in conjunction with the Defendants, will establish percentage reductions in the number of unlicensed placements that the Defendants will meet and the time periods for doing so.

9.      Public Catalyst shall determine the actual number of available and licensed placements and provide this determination to the parties and to the Monitor no later than August 15, 2016.

10.     The caseload standards required by MSA § II.A.2. are hereby modified as set forth in  Exhibit "A."  On or before October 1, 2016, Defendants shall begin implementing a plan, approved by Public Catalyst, to measure caseloads according to the weighted caseload standards attached as Exhibit "A."

11.     On or before October 1, 2016, the Defendants shall implement a plan, approved by Public Catalyst, to streamline the types of case services reflected in MSA §II.A.2.

12.     The provisions of MSA § I.C. are hereby vacated.

13.     Not later than July 15, 2016, Defendants shall meet with Plaintiffs, Public Catalyst and the Monitor to report on the status of their efforts to implement the requirements set forth herein and in the Agreed Order and the IRO.  Plaintiffs have the right to invoke paragraphs 9 and 10 of the Agreed Order at any point thereafter and unless and until the parties reach agreement on revisions to the MSA.

14.     Paragraphs 14 and 15 of the IRO are adjourned until October 17, 2016, unless Plaintiffs exercise their right to invoke paragraphs 9 and 10 of the Agreed Order and seek a hearing on the remedial phase of the pending contempt motion.

15.     The Final Remedial Order and/or modifications to the MSA shall include, *inter alia*, provisions incorporating the additional recommendations made by Public Catalyst in its November 24, 2015 Final Organizational Analysis Report that are

not addressed in the IRO.  Modifications to the MSA shall include provisions that set forth the child welfare infrastructure within the Department of Child Protection Services ("DCPS"), the standards and outcomes that Defendants must meet and a time period for doing so, the Defendants' plan for achieving those outcomes, a plan for monitoring Defendants' progress, and the consequences if the Defendants fail to achieve those outcomes.[1]  The modified MSA, if one is agreed to by the parties, shall supersede the MSA and its implementation plans and strategies for achieving implementation that are contained within the MSA currently in effect [Dkt. No. 571].

SO ORDERED this  19th   day of May, 2016.


                                    /s/Tom S. Lee_____
                                    **SENIOR DISTRICT JUDGE, TOM S. LEE**

---

[1]  This sentence does not alter or change the legal standard of "substantial compliance" for a judicial determination of compliance.

**EXHIBIT A**

1.      No DFCS caseworker shall carry a dedicated caseload that exceeds the following:

- 9 children for dedicated adoption workers
- 14 investigations for dedicated child protection workers
- 14 children for dedicated ongoing foster care workers
- 17 families for dedicated in-home protection workers
- 25 families for dedicated in-home dependency/prevention workers
- 15 homes for dedicated new application licensing workers (*i.e.* resource inquiry, ICPC application, and resource home study)
- 36 homes for dedicated renewal licensing workers
- 118 intakes for dedicated abuse and neglect intake workers

2.   MSA §II.A.2.a.2) is hereby modified as follows:

Individual DFCS caseworkers with generic caseloads shall not carry a mixed caseload that exceeds 100 percent capacity as calculated by the following weights per case type:

| Type of Case | Standards | Weight Per Case – 100% Capacity |
|---|---|---|
| Child Protection (Investigations Level 2 and 3) | 14 Investigations | 0.0714 |
| Ongoing Foster Care (Placement R&S) | 14 Children | 0.0714 |
| Ongoing Foster Care (Placement COR) | | 0.0357 |
| Ongoing Foster Care (Placement COS) | | 0.0357 |
| In-Home Protection (Protection R&S and ICPC Incoming) | 17 Families | 0.0588 |
| In-Home Protection (Protection COR) | | 0.0294 |
| In-Home Protection (Protection COS) | | 0.0294 |
| In-Home Dependency/Prevention (Prevention R&S) | 25 Families | 0.04 |
| In-Home Dependency/Prevention (Prevention COR) | | 0.02 |
| In-Home Dependency/Prevention (Prevention COS) | | 0.02 |
| New Application Licensing (Resource Inquiry, ICPC Application, and Resource Home Study) | 15 | 0.0667 |
| Renewal Licensing (Resource Home Supervision and Resource Renewal) | 36 | 0.0278 |
| Adoption | 9 | 0.1111 |

| | | |
|---|---|---|
| (Adoption COS) | | |
| Abuse and Neglect Intake | 118 Intakes | 0.0085 |