# Appendix

## Index to Exhibits

Ex. 1        Mississippi, DFCS Policy, Section B: Intake/Assessment Policy, Revised
             10-29-15

Ex. 2        Center for the Study of Social Policy, An Assessment of Aspects of
             Mississippi's Department of Child Protection Services Responses to
             Maltreatment in Care, September 27, 2016

Ex. 3A       Hotline Call Review Instrument

Ex.3B        Screen Out Decision Instrument

Ex. 3C       Intake Report, Screening, Assessment, Investigation, Licensure, MIC
             Review and Corrective Action Instrument

Ex. 4        Modification Number #1 to the Agreement By and Between Mississippi
             Department of Human Services and Social Work p.r.n., eff. September 14,
             2015

Ex. 5A       Daily and Monthly Call Profiles, DHS Central Intake

Ex. 5B       Comparison of Call Volume, April – August 2015 and 2016

Ex. 6        Social Work p.r.n., Daily Activity Log, revised February 2016

Ex. 7        Social Work p.r.n., Child Abuse Intake Form, revised February 2016

Ex. 8        Examples of completed MCI Customer Service Checklists, redacted

Ex. 9        Mississippi Department of Child Protection Services, Division of Family
             and Children's Services, Mississippi Centralized Intake Feedback Form
             (includes blank form and redacted version of completed form)

Ex 10        Centralized Intake QA Form, revised September 2011

Ex. 11       MACWIS Report No. MWZHOTLD, Mississippi Department of Human
             Services, Hotline Quality Assurance Report, January 26, 2015 and
             February 2, 2015, redacted

Ex 12        Social Work p.r.n., Annual Report, February 4, 2016

Ex. 13       MACWIS Technical Assistance Bulletin, May 29, 2015, Issue 24,
             effective June 13, 2015

Ex. 14       Example of Intake Screen Shots from MACWIS, redacted

Ex. 15          Intake Screening Tool from MACWIS, redacted

Ex. 16          Safety and Risk Assessment Tool

Ex. 17          In-Service Training Records for SIU staff and managers, redacted

Ex. 18          Mississippi Division of Family and Children's Services, DFCS CQI
                Maltreatment in Care Review Process

Ex. 19          Safety Review Unit Maltreatment in Care Review Instrument

Ex. 20          Mississippi Department of Human Services, Division of Family and
                Children's Services, Continuous Quality Improvement Corrective Actions,
                Open Report for SRU as of 6/16/2016, redacted

Ex. 21A         June 13, 2016 e-mails from Grace M. Lopes to Cindy Greer

Ex. 21B         Protocol for Accurately Identifying and Producing Maltreatment
                Investigative Reports to the Court Monitor

Ex. 22          July 14, 2016 e-mail from Mark Jordan to Kenya Rachal

Ex. 23          July 22, 2016 e-mail from Mark Jordan to Kenya Rachal

Ex. 24          August 16, 2016 e-mail from Kenya Rachal to Mia Caras with attached
                table, Response to 1271 Questions from CM (08.16.2016)

Ex. 25          April 4, 2016 e-mail from Alexis Holly to Mia Caras

Ex. 26          May 4, 2016 e-mail from Grace M. Lopes to Cindy Greer

Ex. 27          June 2, 2016 e-mail from Alexis Holly to Grace M. Lopes with
                attachments, redacted

Ex. 28          May 20, 2016 e-mail from Grace M. Lopes to Cindy Greer with
                attachment, redacted

Ex. 29A         June 28, 2016 e-mail from Tracy Aynes to Grace M. Lopes with
                attachment, redacted

Ex. 29B         July 18, 2016 e-mail from Grace M. Lopes to Cindy Greer

Ex. 30          Summary of Data, Maltreatment Reports and Investigations Involving
                Children in Care

Ex. 31          Excerpt from MACWIS Report No. SBRD06 for the report period January
                1, 2015 to December 31, 2015

Ex. 32      Summary of Data, Maltreatment in Care Reviews (MIC Reviews) and
            Related Corrective Action

Ex. 33      Mississippi Centralized Intake (MCI) Reports:  Results of September 2016
            Case Record Review

Ex. 34      Screen-Out Reports: Results of September 2016 Case Record Review

Ex. 35      Intake, Investigation, MIC Review, Licensure:  Results of September 2016
            Case Record Review

**Ex. 1**

STATE OF MISSISSIPPI
DEPARTMENT OF HUMAN SERVICES
DIVISION OF FAMILY AND CHILDREN'S SERVICES

# Section B:
# Intake/Assessment Policy

Mississippi DFCS Policy                                            Section B
Revised 10-29-15

**Intake & Assessment Policy**

I.    DFCS OVERVIEW ............................................................................................. 5
   A.   Introduction and Scope of Services.................................................................. 5
   B.   Goals ............................................................................................................... 5
   C.   Legal Basis for Authority ................................................................................ 6
      1.   State Laws .................................................................................................. 6
      2.   Federal Laws .............................................................................................. 7
         a)   Child Abuse Prevention and Treatment Act (CAPTA).......................... 7
         b)   The Adoption and Safe Families Act of 1997 (ASFA).......................... 8
         c)   Indian Child Welfare Act of 1978 (ICWA) .......................................... 9
      3.   Exceptions & Limitations........................................................................... 9
II.   DFCS PROCEDURES FOR SERVICE ACTIVITY ....................................... 9
   A.   Family Centered Practice Principles ................................................................ 9
   B.   Definitions...................................................................................................... 10
   C.   Intake ............................................................................................................. 13
      1.   Who May Make a Report .......................................................................... 13
         a)   Mandated Reporters ............................................................................. 13
         b)   Immunity from Liability ...................................................................... 14
         c)   Anonymous Reporters .......................................................................... 14
      2.   Types of Reports ...................................................................................... 14
         a)   Abuse, Neglect and Exploitation or ANE ............................................ 14
         b)   Information and Referrals ..................................................................... 14
         c)   Case Management ................................................................................. 14
         d)   CHINS/Voluntary Placement/ Safe Baby/Unaccompanied Refugee Minors ......... 15
         e)   Resource Inquiries ............................................................................... 15
      3.   Maltreatment Definitions .......................................................................... 16
      4.   Intake Procedures ..................................................................................... 18
         a)   Centralized Intake Procedures .............................................................. 18
         b)   ANE Intakes That Require Special Handling ....................................... 19
            1. Reports of Maltreatment in Foster Care ............................................. 19
            2. Resource Reports ............................................................................... 20
            3. Special Investigations ........................................................................ 20
            4. Tracking Disrupted/Dissolution Adoptions ........................................ 21
         c)   Additional Reports Entered As ANE .................................................... 22
            1. Reports on Native American Children ................................................ 22
            2. Unaccompanied Refugee Minor ......................................................... 22
            3. Reports of Safe Babies ...................................................................... 23
            4. Child Fatality/Near Fatality ............................................................... 23
            5. County Intake Procedures .................................................................. 23

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

**Intake & Assessment Policy**

D.  Screening ................................................................................................. 24
  1.  Screening Reports and Assigning Response .............................................. 24
  2.  County Screening Process .......................................................................... 25
    a)  Screening Out of Home Reports ........................................................... 26
    b)  Duplicate Reports ................................................................................. 27
    c)  Child on Child Reports ......................................................................... 28
    d)  Additional Reports on An Open Investigation ...................................... 28
    e)  Reports Involving More Than One County ............................................ 28
    f)  Reports Involving Foster Children ........................................................ 28
    g)  Screening Special Investigations .......................................................... 28
E.  Investigations and Assessments ................................................................... 29
  1.  Investigation Reports ................................................................................. 29
  2.  MDHS Request for Law Enforcement to Accompany .............................. 30
  3.  Initiation of Investigation/Assessment ...................................................... 30
    a)  Interview with Reporter ........................................................................ 32
    b)  Interview with Child Victim ................................................................. 32
    c)  Interviewing in the School Setting ........................................................ 33
    d)  Interview with Parent/Guardian/Custodian/Caretaker/Alleged Perpetrator ......... 33
    e)  Examination and Photographs of the Victim ......................................... 34
    f)  Drug and Alcohol Screenings ............................................................... 35
    g)  Medical/Mental Health Examination ..................................................... 35
  4.  Safety and Risk Assessment ...................................................................... 36
    a)  Safety Assessment ................................................................................ 36
    b)  Safety Plan ............................................................................................ 37
    c)  Removals ............................................................................................... 39
    d)  Risk Assessment ................................................................................... 41
  5.  Decision Making and Evidence .................................................................. 42
    a)  Substantiation Criteria .......................................................................... 43
    b)  Supervisory Responsibilities in the Investigations, Reviews, etc. ........ 47
    c)  Investigation Staffing with ASWS ........................................................ 48
      *1.* Initial Staffing ................................................................................ 48
      *2.* On-going Staffing .......................................................................... 48
    d)  Investigation Reports & Notifications to Youth Court, District Attorney and Law Enforcement when applicable ............................................. 48
    e)  Appeals Procedure ................................................................................ 50
    f)  False Reports ........................................................................................ 50
F.  DFCS Investigations/Assessments Requiring Special Handling ................. 51
  1.  Introduction ............................................................................................... 51
    a)  Legal Base ............................................................................................ 51
    b)  Policy .................................................................................................... 52

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

|  |  | c) | Purpose | 52 |
|  |  | d) | Procedures | 52 |
|  | 2. | | Resource Reports | 52 |
|  |  | a) | Resource Homes | 52 |
|  |  | b) | Licensed facilities | 55 |
|  |  | c) | Special Investigations | 57 |
|  | 3. | | Expanded Investigations in Extraordinary Circumstances | 58 |
|  |  | a) | Investigations/Assessments Involving Native American Children | 58 |
|  |  | b) | Medical Neglect of Handicapped Infants | 59 |
|  |  | c) | Fatality of a Child | 61 |
|  |  | d) | Near Fatalities | 63 |
|  |  | e) | Out of Home | 64 |
|  |  | f) | Investigations of Meth Labs | 65 |
|  |  | g) | Reports Involving More Than One County | 66 |
|  |  | h) | Abused Child from Another State | 67 |
|  |  | i) | Mississippi Child Abused in Another State | 67 |
|  |  | j) | Family Moves Out of State | 68 |
|  |  | k) | Protective Services Alert | 68 |
|  |  | l) | Requests from Another State | 68 |

III.  FAMILY CENTERED PRACTICE ... 69
  A.  Family Team Meeting ... 69
    1.  FTM Philosophy and Practice ... 69
    2.  FTM Requirements ... 70
  B.  Mobilizing Services ... 70
  C.  Disposition of Cases ... 71
    1.  Cases in which the Family's Whereabouts Become Unknown before Completion of an Investigation ... 71
IV.  APPENDICES ... 72
  Appendix A: Procedure for Service Activity ... 72
  Appendix B: Behavioral Indicators of Abuse ... 75

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

## I.  DFCS OVERVIEW

*The Mississippi Department of Human Services will hereinafter be known as "MDHS" and it's Division of Family and Children's Services hereinafter will be known as "DFCS".*

### A.   Introduction and Scope of Services

The basic task of child welfare practice is the protection of children from harm.  This task  includes protection of children not only from harm occurring to a child as a result of abuse or  neglect by the child's caretaker but also protection from harm caused by the separation of a child  from their family.  This approach requires that the family be considered as the client, and that the  Worker's goal is to help the family solve problems so children can safely remain in their homes.

DFCS is responsible for evaluating the allegations of abuse or neglect in which the alleged perpetrator is identified as:

- ▪  a parent;

- ▪  a relative;

- ▪  a guardian or custodian; or

- ▪  any person responsible for the child's care or support.  This shall include, but is not  limited to step parents, foster parents, non-licensed baby sitters, and staff of  residential care facilities and group homes that are licensed by MDHS.

(MISS. CODE ANN. § 43-21-353). (*See* also MISS. CODE ANN. § 43-21-105)

### B.   Goals

The primary goals of DFCS are to:

- ▪  Ensure the safety, permanency and well-being of children who have been abused,  neglected, and/or exploited.

- ▪  Enable families to recognize behaviors that harm or threaten the well-being of their  children.

- ▪  Offer services to parents/persons responsible for the care and support of children to  promote change in their parenting behaviors to permit independent care of children.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

▪ Enable children to remain in their own homes; and if they are unable to remain in their home, make reasonable efforts to place them in the least restrictive setting which meets their needs such as with relatives or in other settings to meet their emotional and physical needs.

## C.  Legal Basis for Authority

### 1.  State Laws

MISS. CODE ANN. § 43-15-3, entitled the "Powers and Duties of Department of Human Services…," authorizes, empowers, and directs DFCS to

…fully cooperate with the United States Children's Bureau and Secretary of Labor in establishing and strengthening child welfare services for the protection and care of the homeless, dependent and neglected child and children in danger of becoming delinquent. [MDHS/DFCS] is further authorized, empowered and directed to cooperate with the United States Children's Bureau and Secretary of Labor in developing plans for said child welfare services and extending any other cooperation necessary under Section 521 of Public Law No. 271-74th Congress of the United States.

MISS. CODE ANN. § 43-21-353 outlines the duty of individuals having reasonable cause to suspect that a child is a neglected or abused child to notify MDHS immediately and MDHS will notify the Youth Court Intake Unit. (*See Investigation Reports & Notifications to Youth Court, District Attorney and law Enforcement when applicable* for more detail on § 43-21-353)

The Mississippi Youth Court Law, MISS. CODE ANN. § 43-21-101 et seq. outlines the definitions for abuse and neglect; child abuse and neglect intake procedure; reporting requirements for child abuse and neglect; immunity for reporting; confidentiality provisions for children's case records; the jurisdiction of the Youth Court; the conditions under which a child may be taken into protective custody; and the authority and responsibilities of the court, DFCS, and law enforcement officials in protecting children.

The Youth Court Law mandates DFCS to conduct investigations and provide services when reports of suspected abuse and/or neglect are made. (MISS. CODE ANN. § 43-21-353)

The Youth Court Law also permits DFCS to take a child into custody without a court order for no longer than 24 hours when there is probable cause to believe:

▪ the child is in immediate danger of personal harm, or

▪ the parent, guardian, or custodian is not available to provide care and supervision to the child, or

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

▪ no reasonable alternative to custody can be found.

(MISS. CODE ANN. § 43-21-303(1)(b) and (4))

MISS. CODE ANN. § 97-5-1 et seq. outlines the offenses affecting children and further identifies which offenses constitute misdemeanors or felonies and the penalties for the commission of crimes against children.

MISS. CODE ANN. § 43-21-259 requires all records involving children and the contents thereof, including the identity of the reporter, to be kept confidential except as provided in § 43-21-261.

MISS. CODE ANN. § 43-21-354 requires a statewide incoming telephone service to be maintained by DFCS on a twenty-four-hour, seven-days-a-week basis for the purpose of reporting abuse or neglect of a child pursuant to § 43-21-353.

## 2. Federal Laws

### a) Child Abuse Prevention and Treatment Act (CAPTA)

CAPTA originally enacted in 1974 as P.L. 93-247 has been amended several times, most recently amended and reauthorized on December 20, 2010, as Child Abuse Prevention and Treatment Act, as amended by Public Law 111-320. Key components of P.L. 111-320 are as follows:

- An assurance in the form of a certification by the Governor that the State has in effect and is enforcing a State law, or has in effect and is operating a Statewide program that includes provisions and procedures for:
  - reporting of child abuse and neglect, including a State law for mandatory reporting on child abuse and neglect by certain individuals required to report such instances (section 106(b)(2)(B)(i));
  - addressing the needs of infants born with and identified as being affected by a Fetal Alcohol Spectrum Disorder (including appropriate referrals to child protection service systems and for other appropriate services) (section 106(b)(2)(B)(ii));
  - including differential response in triage procedures for the appropriate referral of a child not at risk of imminent harm to a community organization or voluntary preventive service (section 106(b)(2)(B)(v));
  - training in early childhood, child, and adolescent development for guardians ad litem appointed to victims of child abuse or neglect in cases which result in a judicial proceeding (section 106(b)(2)(B)(xiii));

### Intake & Assessment Policy

- o assuring that the State does not require reunification of a child with a parent who has been found by a court to have committed sexual abuse against a child of the parent or who the court has required to be registered in a sex offender registry under the Adam Walsh Child Protection and Safety Act of 2006 (42 U.S.C. 16913(a)) (section 106(b)(2)(B)(xvi)(V) and (VI));

- o requiring criminal background checks that meet the requirements of section 471(a)(20) of the Social Security Act (42 U.S.C. 671(a)(20)) for prospective foster and adoptive parents and other adult relatives and non-relatives residing in the household (section 106(b)(2)(B)(xxii)); and

- o technology systems that support the child protective service system and track reports of child abuse and neglect from intake through final disposition (section 106(b)(2)(B)(xxiii)).

- A description of policies and procedures:

  - o encouraging the appropriate involvement of families in decision-making pertaining to children who experienced child abuse or neglect (section 106(b)(2)(D)(iv));

  - o promoting and enhancing collaboration among child protective services, domestic violence, substance abuse, and other agencies in investigations, interventions and service delivery to children and families affected by child abuse or neglect (including children exposed to domestic violence) (section 106(b)(2)(D)(v)); and

  - o regarding the use of differential response, as applicable (section 106(b)(2)(D)(vi)).

- An assurance that the State, to the maximum extent practicable, has coordinated its CAPTA State plan with its title IV-B State plan (section 106(b)(2)(A)).

- An assurance that programs and training funded under title I of CAPTA address the needs of unaccompanied homeless youth as defined in the McKinney-Vento Homeless Assistance Act (i.e., a youth not living in the physical custody of his/her parent or guardian who lacks a fixed, regular, and adequate nighttime residence, including youth awaiting foster care placement) and meet the requirements of McKinney-Vento Homeless Assistance Act (section 106(b)(2)(F)).

## b) The Adoption and Safe Families Act of 1997 (ASFA)

ASFA of 1997 (P.L. 105-89) focuses on the safety, permanency and well-being of children in foster care and establishes the framework for the current child welfare system. Significant parts of this law relating to safety establish that:

### Intake & Assessment Policy

- Child health and child safety are identified as the paramount concerns for DFCS decision-making, including making reasonable efforts to prevent placement.

- Safety must be addressed in safety plans or integrated into case plans and services must address conditions related to safety.

- Case reviews must consider child safety in placement and potential dates upon which a child can return home safely.

- Responsible agencies must conduct concurrent planning that involves working toward reunification and simultaneously working on other permanency options based on permanency and safety considerations to accelerate the permanent placement of children in care.

## c) Indian Child Welfare Act of 1978 (ICWA)

ICWA (P.L. 95-608) establishes exclusive jurisdiction over Indian child custody proceedings.

An Indian tribe shall have jurisdiction **exclusive** as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing federal law.
Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

## 3. Exceptions & Limitations

A DFCS Worker may not enter a home without permission of the occupant, except by court order.

# II. DFCS PROCEDURES FOR SERVICE ACTIVITY

## A. Family Centered Practice Principles

The purpose of child welfare services and child protective services in a Family-Centered Practice culture or service environment is to enable children to safely grow up in their own families. The primary and essential component of a Family-Centered Practice approach is the engagement of and the development of a relationship with the family through an active and ongoing commitment to and execution of a practice approach which recognizes the value and dignity of the family, consistently and genuinely displaying respect and consideration for all family members, encouraging and allowing families to make their own decisions and solve their own problems. The major practice techniques causing effective engagement and resulting in meaningful relationships are family team meetings and individualized service planning through a family case planning process. The object is to solve family problems so children can grow up safe and sound at home.

Mississippi DFCS Policy                                             Section B
Revised 10-29-15

## Intake & Assessment Policy

The technology of the Mississippi Division of Family and Children's Services (DFCS) is Family-Centered Practice. The values, philosophy, and principles must drive actions and decisions across the entire spectrum of practice from Intake to Permanency. Relationships must be built with families from initial engagement through case closure – relationships built on faith, honesty, justice, and trust. Each individual, each parent, each child, and every family is different and unique. Family differences must be recognized, acknowledged, appreciated, and respected. Judgment must be suspended. Relationships must be formed, built, nurtured, and maintained. Strengths must be identified and emphasized.

Family-Centered Practice identifies family strengths, support systems, and community services that will assist families in acquiring the resources, taking action, making decisions, and developing the skills they need to safely take care of their children and reduce the risk of future maltreatment. Strength-based assessment is an assessment protocol that looks at families' capabilities, strengths, and resources throughout the life of the case, supporting the development of strategies built on competencies, assets, and resources. Reports of child abuse or neglect or other intakes received by DFCS are subjected to a strength-based, structured intake process which allows for the concerns of the reporter to be heard, documented, and screened by intake workers.

An effective intake process enhances both the quality and consistency of the information collected and emphasizes the strengths of the family about whom the report is being made. The initial relationship developed within a DFCS case is the relationship developed with the reporter. Reporters should feel valued, supported, and understood as the information provided by reporters regarding the circumstances being reported about the family significantly affects DFCS response.

## B.  Definitions

**Safe**

*A child is safe when there are no immediate threats of serious harm due to the caregivers' actions or inactions, or the protective capacities of the family are able to mitigate these threats.*

**Unsafe**

*A child is unsafe when the caregivers' actions or inactions present immediate threats of serious harm to a vulnerable child and the family's protective capacities are diminished.*

**Risk**

*A child is at risk when there is a likelihood that maltreatment will occur in the future.*

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

---

**Safety vs. Risk**

*Risk and safety are not interchangeable terms. Safety applies to the need for action based on an immediate threat. Risk refers to the likelihood of future maltreatment even when the immediate safety threats are not present, and is seen on a continuum from low to high. Assuring child safety begins with the report of maltreatment and continues through the investigation, initial safety and risk assessment; ongoing safety and risk assessment; developing a case plan; assuring safety during placement; reunification and case closure. Safety and risk interventions are applicable for all children whether they are in out of home placements or in their own home.*

**Harm**

- *Harm is the effect of child abuse or neglect. DFCS must address children at all levels of harm resulting from identified or alleged maltreatment.*

- *Harm is the consequence of enacting the threat.*

- *When a child is physically abused, it is the abuse or injury that is the harm.*

- *Harm may be physical, psychological or mental, or emotional.*

- *The extent of damage to a child who has been harmed depends on the nature of the harm, the severity of the injury, the dynamics and characteristics of the family, and the vulnerability and sensitivity of the child.*

- *The harm to the child of abuse or neglect by parents or caretakers must be weighed against the harm to the child and family of DFCS' intervention strategy, particularly removal of the child from the home.*

**Threat**

*The threat is the caregiver's underlying condition or contributing factor and insufficient protective capacities that led to serious harm or threatened serious harm. To assess the safety threat, the seriousness of the harm must be assessed.*

**Protective Capacities**

*Individual or family strengths, or resources that reduce, control and/or prevent threats of serious harm from arising or having an unsafe impact on a child are strengths that are specifically relevant to child safety. Protective capacities must be accessible and actionable and fall under the following categories:*

Mississippi DFCS Policy                                                      Section B
Revised 10-29-15

## Intake & Assessment Policy

---

- *Personal*
- *Behavioral*
- *Cognitive*
- *Emotional characteristics and/or Resources*

*Protective capacities must be accessible and actionable.*

### Maltreatment
*An act, or failure to act or pattern of behavior that results in death, physical, medical, sexual, emotional harm or mental injury or presents imminent threat of harm to a child.*

### Imminent Danger

*Clearly observable behavior or a situation that is actively occurring, is about to occur, or is likely to occur in the present time and cause serious harm.*

### Emerging Danger

*A safety consideration that arises when the underlying conditions and contributing factors associated with a danger-related risk element in the family are escalating and/or protective capacities are diminishing.*

Sex Trafficking Victim

An individual subject to the recruitment, harboring, transportation, provision or obtaining of a person for the purposes of a commercial sex act, in which a commercial sex act is induced by force, fraud or coercion, or in which the person induced to perform such act has not attained 18 years of age as defined by the Trafficking Victims Act of 2000.

### Removal

*In the context of DFCS policy, removal is when a child is removed from their home and placed in DFCS custody.*

Mississippi DFCS Policy                                                                    Section B
Revised 10-29-15

Intake & Assessment Policy

## C.  Intake

### 1.  Who May Make a Report

Per MISS. CODE ANN. § 43-21-353, any person who has reason to suspect the abuse and/or neglect of a child must make a report by telephone to Mississippi Centralized Intake ("MCI"), DFCS' 24 hour statewide Child Abuse Hotline for the reporting of abuse and/or neglect at 1-800-222-8000, or electronically at www.msabusehotline.mdhs.ms.gov.

When a reporter comes to the county office to make a report, he/she shall be educated on the report process and allowed to use a DFCS phone to call MCI.  If the reporter does not choose to make a report from the office phone, the county staff shall make the report to MCI immediately.

### a)  Mandated Reporters

**Professional Mandated Reporters** are those required by law to report suspicion of abuse or neglect.  Professional Mandated Reporters include, but are not limited to, any attorney, physician, dentist, intern, resident, nurse, psychologist, social Worker, family protection Worker, family protection specialist, child caregiver, minister, law enforcement officer, public or private school employee or any other professional, who becomes aware of information leading them to believe abuse or neglect to a child has occurred.

Professional Mandated Reporters are required to provide written reports of suspected child abuse and neglect.  These written reports should be forwarded to DFCS as soon as possible after the oral report is made.  Professional Mandated Reporters are encouraged to report suspected abuse and neglect electronically because it will eliminate the need to send a separate, written report.
Refer to MISS. CODE ANN. § 43-21-257 which requires that any records involving children, including valid and invalid complaints, be kept confidential and not be disclosed except as provided by MISS. CODE ANN. § 43-21-261.

**As child welfare professionals, all DFCS employees are mandated to report any suspicion of child abuse or neglect.**  Maltreatment, including the use of corporal punishment by a Resource Parent (relative or not) on foster children, is strictly forbidden by the MDHS, DFCS' policy. (*See* Section F, DFCS Resource Policy).

If any DFCS staff has suspicion that a child in DFCS custody is being maltreated in any way, or that corporal punishment is being used within any placement type, the DFCS staff member, as a mandated reporter, will formally report to MCI any suspicions of maltreatment, including corporal punishment.

Mississippi DFCS Policy                                                       Section B
Revised 10-29-15

Intake & Assessment Policy

### b) Immunity from Liability

Any attorney, physician, dentist, intern, resident, nurse, psychologist, social Worker, family protection Worker, family protection specialist, child caregiver, minister, law enforcement officer, school attendance officer, public school district employee, nonpublic school employee, licensed professional counselor or any other person participating in the making of a required report pursuant to MISS. CODE ANN. § 43-21-355, participating in the judicial proceeding resulting there from, shall be presumed to be acting in good faith. Any person or institution reporting in good faith shall be immune from any liability, civil or criminal, that might otherwise be incurred or imposed.

### c) Anonymous Reporters

DFCS does not require a reporter to identify him/herself as a condition for reporting suspected child abuse, neglect or exploitation. The MCI intake Worker should encourage anonymous reporters to leave contact information. This will allow the Worker responsible for responding to the report to contact the reporter for any information which would be helpful in assessing the report and working with the family.

Reporters may be reluctant to share their identities due to fear of personal repercussions or other factors. Anonymous reporting does not permit an opportunity for future contact by DFCS; therefore, it is crucial that the intake Worker gather as much information as possible before the intake call is terminated.

## 2. Types of Reports

### a) Abuse, Neglect and Exploitation or ANE

The ANE intake type is used to report suspicion of child maltreatment through MCI. Reports are subject to DFCS screening procedure and, if statutory criteria are met, require official DFCS response.

### b) Information and Referrals

The Information and Referral intake type (I&R) is used for assisting the public by sharing information or referring them to any needed services not provided by DFCS. These referrals are entered into MACWIS by county staff and MCI.

### c) Case Management

The Case Management intake type is used to provide concrete services when a need is identified or a request is received. Concrete services are provided when possible and appropriate.

14

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

Intake & Assessment Policy

---

### d) CHINS/Voluntary Placement/ Safe Baby/Unaccompanied Refugee Minors/Prevention Services

This intake type is used in the following circumstances:

**(1) CHINS:** A "Child in Need of Supervision" (CHINS) is a child who has reached his/her seventh birthday and is in need of treatment or rehabilitation because the child:

- Is habitually disobedient of reasonable and lawful commands of his/her parents, guardian or custodian and is ungovernable; or

- While being required to attend school, willfully and habitually violates the rules thereof or willfully and habitually fails to attend school;

- Runs away from home without good cause; or

- Has committed a delinquent act or acts;

- Is placed in DFCS custody by a Youth Court judge and there are no allegations of abuse or neglect.

(MISS. CODE ANN. § 43-21-105 (k))

**(2) Voluntary Placement:** An agreement between parents and custodians and DFCS where children are placed in DFCS custody for up to 180 days by signing the Voluntary Placement Agreement.

**(3) Safe Baby:** A child who is younger than 72 hours old and is surrendered by a parent to a licensed hospital which operates as an emergency department or an adoption agency duly licensed by DFCS (MISS. CODE ANN. §§ 43-15-201 thru 209).

**(4) Unaccompanied Refugee Minors (URM):** URMs are minors brought to the United States without their parents or who come as a result of human trafficking or exploitation. This intake type should be used only by staff in Hinds County designated to handle URM intakes.

**(5) Prevention Services:** Services provided to families when issues of safety and risk exist though there is no report of abuse or neglect being made which meets the criteria for screening in for investigation.

### e) Resource Inquiries

This intake type is used when individuals request information regarding licensure as Resource Parents. For cases involving Resource Inquiries the following information should be obtained:

15

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

---

**(1) For Foster/Adopt Resource Inquiries:**

- Age, gender, and race of child the applicant resource family is interested in fostering or adopting.
- Income of applicant.
- Availability of space in the home for additional children.
- Whether the applicant is interested in fostering, adopting or fostering-to-adopt.
- Marital status of the applicant.
- Previous parenting experience.
- Whether the applicant is working with a private provider to license the applicant's home.

**(2) For Relative Inquiries:**

- County of responsibility
- County of responsibility Worker
- Name and age of foster child
- Relation to the child
- Date the child was placed in the home, if applicable
- Reason the child was taken into custody

## 3. Maltreatment Definitions

Types of Maltreatment include:

**Emotional Abuse/Neglect**

*Any acts and/or threatening statements made and/or allowed, or failure on a periodic or continuing basis, regardless of cause, to provide adequate nurture to meet the child's needs which results in a substantial impairment of intellectual, psychological or emotional well-being and functioning of the child. It describes emotional abuse, mental injury, and other types of maltreatment. Refer to MISS. CODE ANN. § (43-21-105).*

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

Intake & Assessment Policy

---

**Medical Neglect**

One whose parent, guardian or custodian or any person responsible for his care or support,  neglects or refuses, when able so to do, to provide for him proper and necessary care or support,  or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of  a recognized church or religious denomination by a duly accredited practitioner thereof shall not,  for that reason alone, be considered to be neglectful under any provision of this chapter.
*(MISS. CODE ANN. § 43-21-105)*

**Physical Abuse**

"Abused child" means a child whose parent, guardian or custodian or any person responsible for  his care or support, whether legally obligated to do so or not, has caused or allowed to be caused  upon the child sexual abuse, sexual exploitation, emotional abuse, mental injury, non-accidental  physical injury or other maltreatment. However, physical discipline, including spanking,  performed on a child by a parent, guardian or custodian in a reasonable manner shall not be  deemed abuse under this section.
*(MISS. CODE ANN. § 43-21-105)*.

**Physical Neglect**

One whose parent, guardian or custodian or any person responsible for his care or support,  neglects or refuses, when able so to do, to provide for him proper and necessary care or support,  or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of  a recognized church or religious denomination by a duly accredited practitioner thereof shall not,  for that reason alone, be considered to be neglectful under any provision of this chapter
*(MISS. CODE ANN. § 43-21-105)*.

**Sexual Abuse and Exploitation**

"Sexual abuse" means obscene or pornographic photographing, filming or depiction of children  for commercial purposes, or the rape, molestation, incest, prostitution or other such forms of  sexual exploitation of children under circumstances which indicate that the child's health or  welfare is harmed or threatened.
*(MISS. CODE ANN. § 43-21-105)*.

17

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

## 4. Intake Procedures

### a) Centralized Intake Procedures

Mississippi Centralized Intake accepts the following intake types:

- ANE;
- I&R;
- Case Management,
- CHINS/Safe Baby/Unaccompanied Refugee Minors/Voluntary Placement/Prevention  Services;
- Resource Inquiries.

**All intakes must be documented in MACWIS upon receipt.**

The MCI staff shall be responsible for gathering as much information as possible from the  reporter of the abuse or neglect allegations, including, but not limited to:

- how to locate the family;
- whether or not the alleged abuse and/or neglect is caused by the person caring for the  child;
- access of alleged perpetrator to the alleged victim;
- nature of the abuse and/or neglect (severity, duration, type of maltreatment, etc.);
- if the report falls under the statutes of our state law as abuse and/or neglect;
- history on family/household;
- history/ability of caregiver;
- history of ANE;
- potential safety risks for Worker;
- prior criminal history of household members, if known;
- information on the victim (mental & physical capabilities/limits; age; school, etc.);
- general dynamics of the family, if known (traditions, culture differences, strengths and weaknesses;

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

- if the family being reported has any tribal affiliation.

MCI staff shall also inform reporters of DFCS' responsibilities including:

- protection of reporter's identity;

- screening and investigation process and any on-going communication with the reporter;

- confidentiality/disclosure of records; and

- determining whether the victim is a Native American and/or resides on Native American tribal lands.

Intake duties of the MCI staff after taking a report include but are not limited to:

- entering the "Report Date" as the date the reporter received the report in the county or the date a child was placed in DFCS custody;

- search for prior MDHS involvement (METTS, MSSIS, MAVERICS and MACWIS); including but not limited to reports of abuse and neglect;

- diligent search to identify the absent parent (METTS, MSSIS, MAVERICS and MACWIS);

- forward complaints to DFCS Complaints Unit;

- contact the language line for assistance when working with reporters having language barriers; and

- notify the appropriate county office or on-call Worker immediately when a request for immediate assistance is made by law enforcement, judges, or hospitals.

## b) ANE Intakes That Require Special Handling

### 1. *Reports of Maltreatment in Foster Care*

All reports of maltreatment, including corporal punishment, involving children in custody must be reported through MCI and entered as ANE and must be initiated within 24 hours of initial intake "report date and time" and completed within 30 calendar days including supervisory approval.

If information gathered from the reporter or a diligent search of MACWIS identifies the alleged victim as a child in custody, the intake Worker will:

Mississippi DFCS Policy                                                        Section B
Revised 10-29-15

## Intake & Assessment Policy

1) Confirm the identity of the child.

2) Confirm all household members that are identified at intake and who have prior history in MACWIS.

3) Assign the intake to the county where the resource home/facility is located.

After it is determined the alleged victim is a child in custody, the report should be entered into MACWIS using the following guidelines:

1) If a report of maltreatment, including use of corporal punishment by a Resource Parent is received, the report should be entered as a Resource Report and assigned to the county where the resource home is located.

2) If the maltreatment occurred outside of the Resource/Facility setting, the report should be entered as an ANE with the appropriate alleged perpetrator identified and assigned to the county where the child currently resides.

3) If the maltreatment occurred in the child's own home, the report should be entered as ANE and the alleged perpetrator identified and assigned to the county where the child currently resides.

### 2. Resource Report Option

The "Resource Report" option in MACWIS should be selected only in the following instances:

- If a report of maltreatment, including corporal punishment, by a Resource Parent is received on a child in custody.

- If a report is received on a child in custody in which alleged maltreatment occurred in the Resource Home.

- If a report is received on a child in custody in which alleged maltreatment is a result of the Resource Family's actions or inactions.

- If a report of maltreatment is received involving a child in custody placed in a licensed or non-licensed facility.

### 3. Special Investigations

The "Special Investigation" option in MACWIS should be used only in the following instances:

a. Reports in which a DFCS staff person, at intake, meets one of the following criteria:

- named as alleged perpetrator

- named as alleged victim

20

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

---

- reported as being otherwise involved with the alleged maltreatment

   b. Reports in which the alleged perpetrator or his/her immediate family member is in a position of authority, including, but not limited to: government officials, community leaders, local DFCS and/or department heads.

### 4. *Tracking Disrupted/Dissolution Adoptions*

States are required by section 422(b)(12) of the Social Security Act to collect and report information on children who were adopted from other countries and who enter into State custody as a result of the disruption of a placement for adoption or the dissolution of an adoption.

Tracking information requirements include:

    **a.** The number of children.
    **b.** The agencies that handled the placement or adoption.
    **c.** Plans for the child.
    **d.** The reasons for the disruption or dissolution

Prior to supervisory approval of investigation or opening a case recommending that a child come into State custody the ASWS will:

   1. Confirm with the Investigating Worker that the following questions were asked as a part of the investigation.

- Was the child adopted prior to entering custody?
  If yes,
- Was this child adopted from another country?

   2. Document in MACWIS, on the "Supervisor Approval of Findings" Tab of Investigation in the Supervisor's Comments section the responses to the above questions.

Before approving a case to be opened as a result of a Voluntary Placement, CHINS or Refugee intake, the ASWS will document in the *Explanation for Decision* box of the Screening Tab, the responses to the above questions.

If the child was adopted prior to entering custody, the ASWS will complete the Report Of Disrupted Adoption Form 557* as thoroughly as possible and submit to the Adoption Unit in State Office at disruptedadoptions@mdhs.ms.gov .

Mississippi DFCS Policy                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

---

The information submitted to the Adoption Unit will be documented for tracking and reporting purposes.

**\*MDHS–DFCS 557 Form is located on the DFCS Connection under Policy Forms Section B: Intake/Assessment.**

## c) Additional Reports Entered As ANE

### 1. Reports on Native American Children

The Mississippi Band of Choctaw Indians or any other Indian Tribe to which the child belongs has the right to accept or deny jurisdiction of the said child and to help with placement resources.
The Federal *Indian Child Welfare Act (ICWA)* was passed in 1978 and grants Indian tribes exclusive jurisdiction in child welfare cases involving Native American children. Because of this Act's existence, DFCS has no jurisdiction to investigate allegations of abuse or neglect occurring on Native American tribal lands.

However, DFCS has and will continue to receive reports of abuse/neglect regarding Native American children whether they live on or off tribal lands. Should MCI receive such a report, a determination shall be made as to whether:

- The child is a member of a Native American Tribe and falls under the purview of ICWA;

- The child resides on designated tribal lands where an Indian tribe has jurisdiction.

The Mississippi Band of Choctaw Indians has tribal land in Neshoba, Attala, Jones, Kemper, Leake, Newton, Scott, and Winston counties.

If a child is identified at Intake as a member of the Choctaw tribe or another Indian tribe and lives on tribal land, the MCI Worker will screen the report to the county where the child resides. The COR Intake Supervisor, who will notify the Mississippi Band of Choctaw Indians or any other tribal court and provide them with the allegations and all identifying information. If they do not wish to retain jurisdiction and request the county to investigate the allegations, the county will follow normal investigative procedures. The contact information for the Mississippi Band of Choctaw Indians is located on the MACWIS Web. (refer to Section D, ICWA)

### 2. Unaccompanied Refugee Minor

All ANE reports involving an Unaccompanied Refugee Minor (URM) should follow the same intake procedure for reports of maltreatment in foster care.

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

Intake &amp; Assessment Policy

---

### 3. Reports of Safe Babies

Safe Babies should be reported through MCI. If the report comes directly to the county office, the Worker is responsible for making the report through the MCI system. The report shall be assigned through MCI to the county where the child is surrendered.

### 4. Child Fatality/Near Fatality

When an intake report is received indicating a near fatality or fatality, the following two questions must be answered for each allegation on the Allegations/Living Arrangement Tab in MACWIS:

- Is the victim in serious or critical condition, as certified by a physician, as a result of this maltreatment (near fatality)?

- Did the victim die as a result of this maltreatment (fatality)?

"Yes" is selected at intake **ONLY** if the reporter is DFCS, law enforcement or medical personnel **AND** indicates a physician has labeled the child's condition as "serious" or "critical" as a result of the maltreatment act (near fatality) or the child has died as a result of the maltreatment act (fatality).

Based on information gathered during the investigation/assessment, the Worker shall **VERFY** the answers to the two questions above on the Worker Findings Tab in MACWIS.

**Answers to these questions affect the assignment of the case. The answers should be updated as new and accurate information is obtained.**

### 5. County Intake Procedures

All reports of abuse/neglect including an emergency or after hours report from law enforcement, court, hospital, etc. received in the county offices or by an on-call Worker must be sent to MCI prior to responding to the report or immediately thereafter.

Each county office accepts the following intake types: I&R; Case Management, CHINS/Safe Baby/Unaccompanied Refugee Minors/Voluntary Placement; and Resource Inquiries/Prevention Services.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

Intake & Assessment Policy

## D.  Screening

### 1.  Screening Report and Assigning Response

For a report, MCI staff will determine the following criteria:

- If the family can be located.

  o  If the reporter identified the county in which the family lives, adequate  information exists to locate the family for screening purposes.

- If the alleged perpetrator is a parent, guardian, relative, someone in a caretaking role,  foster care provider, other legal caretaker, or if the parent/guardian permits abuse or  neglect to occur or fails to protect the child from maltreatment, or if the alleged  perpetrator has access to the child due to the relationship with the parent or caretaker.

- If the report alleges maltreatment of the child that meets statutory and DFCS criteria  of maltreatment.

- If the child has been harmed or is in imminent risk of being harmed.

After gathering as much information as possible, MCI staff will use the MACWIS screening  tool and, according to selections made, the report is screened in or out by the MCI staff.   This  task must be completed immediately upon receipt of report but shall be screened to the county  within 90 minutes.

All reports of positive drug screens for mother and/or infant shall be screened in by MCI. MCI staff will use the statutory criteria to make the screening decision.

**Level One -** A report that does not meet the statutory criteria in MISS. CODE ANN. §§ 43-21-353; 97-5-39 is **screened out** for DFCS and may receive a referral for information or a referral for services. (*See* Appendix A for additional information on reports that are screened out)

**Level Two –** A report which meets the statutory criteria in MISS. CODE ANN. §§ 43 21 353; 97 5 39, but does not meet at least one of the Level Three criterions (see list), is screened in and assigned for investigation.  The assigned worker has 72 hours from the initial intake "report date and time" to initiate the investigation.

**Level Three –** A report which meets the statutory criteria in MISS. CODE ANN. §§ 43 21 353; 97 5 39 and at least one of the criterions listed below is **screened in** and assigned for investigation:

Mississippi DFCS Policy                                                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

- Any child in the current legal custody of DFCS

- Prior ANE report within past 12 months or multiple ANE reports regarding alleged victim

- Child is in imminent risk of harm

- Any sexual abuse

- Any life threatening neglect

- Any allegation of any child in the home ages 5 and under

- Any allegation of any age child with special needs*

- Any allegation that could be felony child abuse under state or federal law

The assigned worker has 24 hours from the initial intake "report date and time" to initiate the investigation.

*For the purpose of intake and assessment, special needs shall include but are not limited to the known or suspected presence of a medical condition, or physical, mental, or emotional disabilities.

***If the Intake Supervisor receives an intake and screening from MCI that indicates a child is in imminent danger, the Intake Supervisor will assign a Worker for immediate response.***

## 2. County Screening Process

The Intake Supervisor/designee has two (2) hours from receipt of report for assignment.

All Level III reports of maltreatment of children, including children in DFCS custody must be initiated within 24 hours of the initial intake "report date and time" and completed within 30 calendar days including supervisory approval.

All reports of positive drug screens for mother and/or infant that have been screened in by MCI shall be assigned by the Intake ASWS to a worker for investigation/assessment.

A copy of all screened in reports of abuse/neglect shall be sent to the county youth court and felony reports shall be sent to the county youth court/prosecutor/DA and law enforcement.

If the Intake Supervisor/designee in the county responsible for investigating the report determines that the screened-in report does not meet criteria for investigation and the report does not meet the standards required by MISS. CODE ANN. §§ 43-21-353; 97-5-39 for investigation, the Intake Supervisor/designee changes the screening decision, documents the reason for screening the report out in the justification/rationale box, citing the Miss. Code and notifies the Regional Director (RD) that the request for reconsideration has been submitted via MACWIS for review and approval. The

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

RD shall reconsider the Intake Supervisor's determination that the report does not meet criteria for investigation. If the RD concurs with the Intake Supervisor's decision to screen out the report, then the RD shall notify by email with the Reconsideration Form attached (*See* DFCS Connection Website under *"Forms"*), to the Director of Field Operations and the Bureau Director of Prevention and Protection. All reconsiderations should be tracked and maintained by the RD. If the RD disagrees with the supervisor's recommendation, to screen the report out, the original decision made by MCI stands.

When the Intake Supervisor/designee determines the report meets standards as required by MISS. CODE ANN. §§ 43-21-353; 97-5-39 for investigation but the report was screened out by MCI staff, the supervisor/designee changes the screening decision, documents the reason for changing the screening decision in the justification/rationale box citing the Miss. Code, and notifies the RD by telephone that the request has been submitted for review and approval.

The Intake Supervisor then submits the screening request via MACWIS to the RD for final approval. If the RD agrees with the decision to screen in, the report will go back to the Intake Supervisor via MACWIS for assignment.

The RD shall notify by email with the Reconsideration Form attached, to the Director of Field Operations and the Bureau Director of Prevention and Protection. All reconsiderations should be tracked and maintained by the RD. If the RD disagrees with the Intake Supervisor's recommendation, to screen the report in, the original decision made by MCI stands.

### a) Screening Out of Home Reports

When DFCS receives a report that a child has been abused by a person responsible for the care and/or support of the child, a determination must be made that the abuse was not committed or contributed to by a parent, legal guardian, primary caretaker, or relative.

If this is the case, the report must be handled as an "Out of Home" report.

"Out of Home" is defined by MISS. CODE ANN. § 43-21-105(x) as: temporary supervision or care of children by: staff of licensed day care centers, staff of public, private and state schools, staff of juvenile detention facilities, staff of unlicensed residential care facilities and group homes, or staff of individuals representing churches, civic or social organizations.

According to MISS. CODE ANN. § 43-21-353(8), If a report is made directly to DFCS that a child has been abused or neglected in an out-of-home setting, a referral shall be made immediately to the law enforcement agency in whose jurisdiction the abuse occurred and the department shall notify the district attorney's office within forty-eight (48) hours of such report.

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

Intake & Assessment Policy

DFCS shall investigate the out-of-home setting report of abuse or neglect to determine whether the child who is the subject of the report, or other children in the same environment, comes within the jurisdiction of the youth court and shall report to the youth court the department's findings and recommendation as to whether the child who is the subject of the report or other children in the same environment require the protection of the youth court.

The law enforcement agency shall investigate the reported abuse immediately and shall file a preliminary report with the district attorney's office within forty-eight (48) hours and shall make additional reports as new information or evidence becomes available. If the out-of-home setting is a licensed facility, an additional referral shall be made by DFCS to the licensing agency.

The licensing agency shall investigate the report and shall provide DFCS, the law enforcement agency and the district attorney's office with their written findings from such investigation as well as that licensing agency's recommendations and actions taken.

Upon receiving the out-of-home intake the MCI Intake Worker must notify the local licensing entity by phone, facsimile or electronic mail.

When an out-of-home report is screened out, the county Intake ASWS will notify by phone, facsimile or electronic mail the following:

- Law enforcement
- District Attorney's office in the appropriate jurisdiction
- Youth Court

## b) Duplicate Reports

In order to classify a report as a "duplicate report" and to screen it out for investigation, it must be determined if the new information includes:

1) Same alleged perpetrator(s);
2) Same victim(s)
3) Same types of child maltreatment(s); and
4) Same incident

If the prior investigation has been completed, the COR Supervisor must always make sure the prior report was thoroughly investigated. Information on the same report will be entered into MACWIS and screened out.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

### c)  Child on Child Reports

In order for a child to be considered a perpetrator, he/she must meet the following condition:

- They are in a caretaker role.

The MCI staff must assess the possibility of parental neglect having contributed to one child harming another.

### d)  Additional Reports on An Open Investigation

If there is an open investigation and an additional report is made, but it is not a duplicate report, the additional allegation should be added to the open investigation on the post allegation tab and the additional report should be screened out.

### e)  Reports Involving More Than One County

MCI may receive a report of child ANE when the incident occurred in one county and the child lives in another county.  The report should be screened to the county of residence of the child  and the COR Worker is responsible for notifying law enforcement in the county where the  incident occurred.

### f)  Reports Involving Foster Children

If MCI receives a report that meets the statute and DFCS criteria for maltreatment or is a report  of corporal punishment and the identified victim is a foster child, the report must be screened in  as a level three.  The report and the screening are sent to the RD where the Resource Home is  located. If the alleged maltreatment occurred outside of the resource/facility setting and the  resource parent/household members were not involved the report should be entered as ANE and  screened to the COR.

### g)  Screening Special Investigations

If the report is determined during intake to be a Special Investigation, it is screened according to normal screening procedures and sent to the RD for final decisions and assignment.

Mississippi DFCS Policy                                               Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

## E.   Investigations and Assessments

## 1.   Investigation Reports

MISS. CODE ANN. § 43-21-353. Duty to inform state agencies and officials; duty to inform individual about whom report has been made of specific allegations.

*Any attorney, physician, dentist, intern, resident, nurse, psychologist, social worker, family  protection worker, family protection specialist, child caregiver, minister, law enforcement  officer, public or private school employee or any other person having reasonable cause to  suspect that a child is a neglected child or an abused child, shall cause an oral report to be made  immediately by telephone or otherwise and followed as soon thereafter as possible by a report in  writing to the*

*Department of Human Services, and immediately a referral shall be made by the Department of Human Services to the youth court intake unit, which unit shall promptly comply  with Section 43-21-357...Where appropriate, the Department of Human Services shall  additionally make a referral to the Youth Court Prosecutor. *in counties which do not have a  County Youth Court Prosecutor, the District Attorney should be notified.*

*Upon receiving a report that a child has been sexually abused, or burned, tortured, mutilated or otherwise physically abused in such a manner as to cause serious bodily harm, or upon receiving any report of abuse that would be a felony under state or federal law, the Department of Human Services shall immediately notify the law enforcement agency in whose jurisdiction the abuse occurred and shall notify the appropriate prosecutor within forty-eight (48) hours, and the Department of Human Services shall have the duty to provide the law enforcement agency all the names and facts known at the time of the report; this duty shall be of a continuing nature.*

*The law enforcement agency and the Department of Human Services shall investigate the reported abuse immediately and shall file a preliminary report with the appropriate prosecutor's office within twenty-four (24) hours and shall make additional reports as new or additional information or evidence becomes available. The Department of Human Services shall advise the clerk of the youth court and the youth court prosecutor of all cases of abuse reported to the department within seventy-two (72) hours and shall update such report as information becomes available.*

29

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

Intake & Assessment Policy

---

## 2. MDHS Request for Law Enforcement to Accompany

The MISS. CODE ANN. § 43-21-353 (6), specifies:

*In any investigation of a report made under this chapter of abuse or neglect of a child as defined in § 43-21-105(m), the Department of Human Services may request the appropriate law enforcement officer with jurisdiction to accompany the Department Representative on its investigation, and in such cases the law enforcement officer shall comply with such requests.*

## 3. Initiation of Investigation/Assessment

When the Intake Supervisor receives an intake and screening from MCI that indicates a child is in imminent danger, the Intake Supervisor shall assign a Worker for immediate response.

"Imminent danger" is defined as clearly observable behavior, or a situation that is actively occurring, is about to occur, or is likely to occur in the present time and would cause serious harm"

Prior to initiating the investigation, the Worker should conduct an additional thorough review of any prior DFCS involvement with the family. The Worker may need to look at old paper case files as well as a MACWIS records check. Information regarding any prior reports shall immediately be made available to the Worker to whom the case has been assigned for investigation.

An investigation is considered "initiated" when face to face contact or attempted face to face contact is made with the alleged victim(s) and should occur within the timeframes required by the level of the report. The Worker may be unable to see a child for the following reasons: the child disappeared, the family fled, incorrect/nonexistent address, the child is not at the location, or the parent/caretaker refused to allow Worker to interview or observe the child. This must be documented in MACWIS as part of the investigation.

Criteria for attempted contact for the initiation of an investigation are considered met when two or more locations have been checked including the child's identified home and one of the following: the neighbor, school, and daycare. Concerted efforts will continue daily to locate the child or children. At the initial unsuccessful home visit the Worker may leave a note or write a letter requesting that the Worker be contacted. The note or letter should not indicate the purpose of the visit.

Workers shall resolve the issue of Indian heritage as soon as possible after contact is made with the family, either through a report of abuse/neglect or a referral for services. The Worker shall ask the family the following questions to gain knowledge in deciding what is in the best interest of the

30

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

child and document the discussion in the narrative section of MACWIS:

1. Is parent or child of Native American heritage?

2. Is parent eligible for tribal membership?

3. Is parent registered with Native American tribe?

4. Is child eligible for tribal membership?

5. Has child been registered with Native American tribe?

6. Does the family live on tribal land?

If a child is identified at Intake as a member of the Choctaw tribe or another Indian tribe and lives on tribal land, the MCI Worker will screen the report to the county where the child resides. The COR Intake Supervisor, will notify the Mississippi Band of Choctaw Indians or any other tribal court and provide them with the allegations and all identifying information.

If they do not wish to retain jurisdiction and request the county to investigate the allegations, the county will follow normal investigative procedures. The contact information for the Mississippi Band of Choctaw Indians is located at http://www.neshoba.org/community/ms-band-choctaw-indians.php).

Following contact with the alleged victim(s), other people to be interviewed include the following:

- The Reporter, if possible

- Parent/Guardian/Caretaker

- Siblings who reside in the home

- All other children and other household members

- A collateral contact

    o At least one collateral contact shall be made on all investigations. May include, but not limited to the following: service agencies, doctors, nurses, teachers, law enforcement, neighbors, relatives (not including household members), and others who may have information concerning the health and welfare of the child. If a relative is used as a collateral, you must also have a second collateral who is a non-relative.

- Alleged perpetrator unless otherwise instructed by law enforcement

31

Mississippi DFCS Policy                                            Section B
Revised 10-29-15

## Intake & Assessment Policy

All Interviews with the individuals shall be held in private and additionally, the Worker must make a visit to the home and a physical home environment narrative entered in MACWIS.

Attempted face to face contact with the child, parent/guardian, custodian, or caretaker and efforts to locate the child does not end the investigation. If the Worker cannot make face to face contact or locate the family, the Supervisor shall be notified immediately on case status. Law enforcement will be requested to assist in locating the child and family.

### a) Interview with Reporter

If contact information is provided on the reporter, the Worker assigned the investigation will contact the reporter as the first step in the investigation. If the reporter cannot be contacted, the Worker should proceed with the investigation and attempt to contact the reporter at a later time. The inability to contact the reporter should not delay proceeding with the investigation.

The purposes of contacting the reporter are:

- to get additional information in regard to the abuse or neglect being reported,
- to inform the reporter of the role and purpose of the DFCS in its response to the report, and
- to give the reporter the opportunity to assist the DFCS in helping the family solve its problems so the child can remain safely at home or to assist the agency and family in developing plans to assure the safety of the child if the child cannot remain safely at home.

Contact with the reporter is an opportunity for the DFCS to engage the reporter and to educate the community in regard to Family Centered Practice and to elicit the support of the reporter and community in effectively addressing the problem of child abuse and neglect as it relates to the specific family and to the community at large.

### b) Interview with Child Victim

The Worker will notify the parent/ guardian or custodian or caretaker before interviewing the child, unless notification would endanger the child or impede the investigation.
All child(ren) should be interviewed privately with documentation addressing time and location.

If not notified prior to interviewing child(ren), the parent/caretaker should be notified immediately following the interview, unless this would endanger the child(ren).

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

Intake & Assessment Policy

## c) Interviewing in the School Setting

Child(ren) may be interviewed without the parent's consent if the notification would endanger the child or impede the investigation.

If the principal or other school official insists on being present, advise school official(s) that they may be subpoenaed to court to testify and have him/her sign a Confidentiality Statement. The Confidentiality Statement is filed in the case record. (*See* DFCS Connection Website under *"Forms"*)

## d) Interview with Parent/Guardian/Custodian/Caretaker or Alleged Perpetrator:

- The Worker will interview the parent/ guardian or custodian or caretaker and/or the alleged perpetrator face to face separately and privately with documentation in MACWIS with details of the meetings as well as time and location of each meeting.

- In circumstances where the alleged perpetrator has been charged or arrested for a child abuse crime, the Worker only needs to interview the alleged perpetrator if information is needed to determine the safety of the child(ren) or risk of harm.

  If the alleged perpetrator is not interviewed, the record should document the reasons. A copy of the interview with the perpetrator by law enforcement should be obtained for DFCS records.

- If the parent/guardian or custodian or caretaker or alleged perpetrator has not been charged or arrested, and law enforcement, district attorney, or other appropriate official, requests the Worker not to interview the person; the Worker will advise the Area Social Worker Supervisor (ASWS) and the Youth Court Judge of jurisdiction of the request.

- During the interview with the parent/caretaker the Client's Rights and Responsibilities and Grievance procedures will be provided and discussed. The parent/ caretaker will sign the Clients Rights and Responsibilities form, (*See* DFCS)

  Connection Website under *"Forms"*). A copy will be provided to the parent/caretaker and a copy will be filed in the case record.

- ICWA will be addressed and documented in MACWIS. Information for the TANF form will be gathered. The TANF form will be completed by the Worker and submitted to the Administration Unit prior to the end of the month that the report was received.

33

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

- The Safety Checklist will be completed on all children and a copy provided to the parent/caretaker.

## e) Examination and Photographs of the Victim

### 1. Examination of the Victim (child)

- All victims of physical abuse should be thoroughly examined for evidence of abuse (bruises, bites, burns, welts, etc.). When possible, a Worker of the same sex as the child will examine the child. The procedure should be explained in a non- threatening, comforting way.

- Victims of neglect should be thoroughly examined if the investigation indicates reasons to suspect physical abuse; or if there are observable signs of neglect (malnutrition, untreated accidental injuries, infestations, bug bites).

- A parent/caretaker or another adult witness must be present when child is examined.

- Worker should request that the parent/caretaker or the child, if old enough, remove the child's clothes. Worker should be sensitive to the child's feelings of undressing in front of a stranger.

- If there is reason for an examination of the genital area of any child or breasts of female children over age 6, arrangements should be made for examination by a medical professional.

- If a child or parent refuses to cooperate, seek court intervention.

- If there is reason to suspect physical abuse of other children, examine them.

### 2. Photographs of the Victim (child)

- The investigating Worker may take photographs of child, child's home, or location where the child was residing when abused/neglected to document any physical evidence of abuse/neglect. If parents do not cooperate, seek youth court or law enforcement intervention.

- A parent, another DFCS Worker, or another professional must always be present as a second party when photographs are taken of a child.

- Identifying information (name of the victim or other appropriate identifying information, date photograph was taken, time, and location) should be written on back of photograph or attached to it. The person's name who took

Mississippi DFCS Policy                                                        Section B
Revised 10-29-15

### Intake & Assessment Policy

---

photograph should  be included also.

- Each photograph shall have a visible body landmark to distinguish the identity of the  child, actual location, and extent of the area of injury.  More than one photograph of  the injury may be required to show landmark and still obtain a clear close-up of abuse.

- Photographs are filed in the case record.

### 3.  *Use of DVD or Video Tapes*

- When interviewing individuals, the Worker may record the information. Verbal  permission must be obtained for children from the parent or guardian.

- The DVD/Video Tape should be labeled with the following information:

        (a) Name of interviewee

        (b) Date, time and location of interview

        (c)  Name of interviewer

- The DVD/Tape becomes a part of the confidential case record and should be closely  protected.

## f)  Drug and Alcohol Screenings

DFCS Workers may request a drug and/or alcohol screen any time there is suspicion of illicit drug use and/or prescription drug and/or alcohol abuse by a Parent/Guardian.
DFCS Workers shall not administer drug and/or alcohol tests of any type to clients.
DFCS Workers shall facilitate drug and/or alcohol testing of clients when ordered by the Court by:

- Sending client(s) to a certified drug testing facility when client can pay for test and  has transportation;

- Transporting client to a drug testing facility, if necessary, as well as DFCS paying the  fee;

- Arranging for drug testing company Worker to come to the Court; or

- Requesting Court personnel perform drug test.

Mississippi DFCS Policy                                           Section B
Revised 10-29-15

Intake & Assessment Policy

### g) Medical/Mental Health Examination

- Medical examinations of children should occur when there are specific allegations indicating injury which can be corroborated and verified by an examination; and the initial phases of the investigation reveal information indicating that a medical examination is necessary and warranted in order to determine whether or not there is evidence to substantiate any harm or maltreatment.

- Medical examinations may be needed to confirm or rule out abuse/neglect and/or to prevent removal.

The Worker will assist parent/caretaker to arrange for the examination. The parent's own physical/mental health professional, etc., may be used. If the parent/caretaker is unwilling to pay for the examination, Medicaid or other DFCS resources are utilized.

If a situation arises and a parent/caretaker refuses to cooperate, the Worker will consult with his/her Supervisor and court intervention may be sought. When a court orders a medical/mental health examination the Worker will take the child for the examination, even though DFCS may not have custody. In this situation the court order should specify the authority of DFCS to take the child for examination.

## 4. Safety and Risk Assessment

### a) Safety Assessment

The Safety Assessment is completed in all situations when the report has been assigned a Level Two or Level Three investigation. Safety applies to the need for action based on an immediate threat, and must be assessed at the initial contact with the child(ren) and staffed with the supervisor immediately with documentation in the MACWIS narrative during the 5 day required investigation staffing.

Documentation should include results of the safety assessment, addressing any safety, environmental or health issues and protective capacities of the parent/caretaker. The documentation of the Safety Assessment tool in MACWIS must be completed and submitted to the supervisor within 25 days of the report date and time. The Safety Assessment addresses the following areas: (*See* DFCS Connection Website under *"Forms"*)

- Physical harm or injury

- Neglect of basic needs

- Family strengths and needs

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

- Prior history of abuse/neglect/exploitation/domestic violence

- Protective capacity of parent/caregiver.

Reasonable efforts will be made to maintain children in their own home or with family and support services should be made available to the family. However, if adverse safety and risk factors are identified during the investigative phase, the Worker should hold a Family Team Meeting to determine if there are family members or extended family who can assist the parent/caretaker in making an appropriate safety plan that is in the child/(children)'s best interest.

Family Team Meetings are an integral part of Family Centered Practice which allows families to identify a support system to address issues that caused a disruption in the family. This allows the family to be a part of finding their own solutions and engaging others in building relationships built on empathy, genuineness and trust. All families are unique and different and all have strengths that should be identified and acknowledged through the interaction of this group process.

## b) Safety Plan

Safety planning is a part of DFCS making reasonable efforts to maintain children with family.

The technical components of Family-Centered Practice – engagement, relationship-building, and problem-solving – are put into action immediately by the Worker with the family during the initial phases of investigation/assessment in order to develop and implement a plan for the family in which the child is safe from harm. This process, including the utilization of Family Team Meetings, is safety planning. Safety planning constitutes a process in which the family and the Worker can develop jointly a plan for the child and family in which identified issues or factors of safety and risk are recognized, acknowledged, and analyzed in light of the strengths and protective capacities of the family for the purpose of assuring the safety of the child and the preservation of the family.

Although safety and risk of harm are the key considerations in the development of a plan, issues of permanency and well-being are also brought to the table from the very beginning. The development of a trusting and honest relationship with the family is of the essence in effective safety planning. The DFCS Practice Model definition of safety assurance and risk management assumes that children should live in a safe and permanent home with their own families whenever possible, and that agency interventions should assist families to care for and nurture their children. Practice, service provision, and intervention from the initial contact with the family must be focused on this end. Safety plans should be short term and developed only when a decision of "unsafe" has been determined and workers, with supervisory approval, assess that without the plan, the child(ren) cannot remain safely in the home. Success is dependent on the relationship developed with the family by the Worker and the agency. A safety plan is short term and should be in place to prevent removal and allow a child(ren) to remain with family.

Mississippi DFCS Policy                                                      Section B
Revised 10-29-15

## Intake & Assessment Policy

In order to justify a recommendation for removal of a child from their home, Workers must be able to report to the court the following: (*See* DFCS Connection Website under *"Forms"*)

- Removal is in the best interest of the child;

  or

- Continuation in the home would be contrary to the welfare of the child;

  **AND**

- Reasonable efforts were made to prevent removal;

- Due to an emergency situation, no reasonable efforts were made to prevent removal

  or

- Reasonable efforts were determined not required by the court

The Worker must be mindful that even though removal is at times necessary, removing a child from his or her parents also constitutes taking a child's parents away from the child, creates a situation of impermanency for the child, and traumatizes the child and family permanently. For such action to be put forth as being in the best interests of and contrary to the welfare of the child, extensive justification is required not only in regard to the safety and risk issues involved but also in regard to the efforts attempted to prevent removal.

In circumstances where safety issues are identified, a Safety Plan will be developed with the family and will be implemented immediately.

The Safety Plan incorporates all safety interventions designed to maintain children safely within their own families whenever possible and is developed by the Worker with family input and with supervisory approval.

The Worker will fully explain to the parent/caretaker their responsibility for carrying out the specific component of the plan assigned to them.
The Safety Plan will be documented in MACWIS, printed and signed by the parent/caretaker, and a copy given to parent/caretaker and filed in the case folder.

The Safety Plan will be monitored by the Worker throughout the life of the investigation. If there is a continued need for a Safety Plan at the close of the investigation the plan will be reevaluated and a case must be opened.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

The following shall be identified and documented on the Safety Plan:

- Identification of specific serious harm or the threat of serious harm as identified in the Safety Assessment.

- What actions have or will be taken to protect each child in relation to the current safety concern?

- If the plan will involve (a) In home services or (b) Alternative caregiver.

- If an alternate caregiver is identified, a background check shall be completed on all household members over the age of 14.

  - If alternative caregiver, has a background check been completed on all household members over the age of 14?

- Who is responsible for implementing the plan?

- How will the plan be monitored and evaluated and by whom?

- What time frames have been imposed by this plan?

- Under what conditions will termination of the Safety Plan occur?

The Safety Plan will be signed by the Worker, parent/caregiver, supervisor and copy given to parent/caregiver and original placed in case file.

In cases where no safety issues are identified, the report requires a Risk Assessment prior to the completion of the investigation. The results of the Risk Assessment and the report findings will be used to determine if a case should be opened for services.

### c) Removals

> *An ASWS with an advanced degree in social work or related field must be involved in the decision making process before approval is given to remove a child from their home and placement into foster care.*
>
> *Authorization from the Youth Court Judge must be obtained for all removals and placements of a child into foster care.*
>
> *Under no circumstances, even emergencies, shall foster children be taken to the home of a DFCS employee.*

When DFCS is ordered by the court to remove a child from their home without an investigation/

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

assessment of the maltreatment allegations, the worker must document the following information  in MACWIS:

- Name of contact person from the court;

- Time and date request is received;

- By what means, i.e. court order, fax, email or telephone; and

- Date of court order (if issued).

In cases where the child is not safe and a Safety Plan cannot be developed to mitigate safety concerns a removal of the child from the parent or caregiver's custody by order of the Youth Court may be necessary to ensure child safety.

In investigations where the worker has observed/documented abuse or neglect and the child has been placed in a protective environment, the worker must document and substantiate the initial findings. If a worker at any time suggests, discusses, or recommends the removal of a child from their home and placement in DFCS custody, the worker must contact the ASWS and Youth Court Judge for approval.

Removal of a child from the home creates a state of impermanency for the child even though such removal may be justified due to issues of safety. Reasonable efforts requirements demand that the Worker and DFCS work diligently and concertedly with the family first of all to prevent removal of the child or children if possible, and if not possible, to provide services and solve problems to get the child back home as soon as safety can be reasonably assured.

The Worker, while working diligently and concertedly with the family to remedy the impermanence created by the removal of the child, must develop and initiate active efforts toward the achievement of an  alternative plan just in case the child cannot be returned home.

A finding of substantiated abuse or neglect does not, in and of itself, constitute grounds for removal. Decisions of removal are based on issues of safety, risk, protective capacities of parent/caregiver and the ability or inability to implement plans assuring the safety of children remaining in the home or with family.

The Worker shall devote as much time as necessary  in helping the child and his parents  understand the reason for removal and what to expect from the placement of their child in DFCS  custody. The Worker shall help the parents assume as much responsibility as possible for preparing the child for placement.  Whenever possible, parents should be the first to discuss  placement with the child. If the child feels the parents concur in this plan for him/her, placement  will be easier for him to understand and accept. Not only does the child need preparation for the  placement, but the Worker may need to assist the parents in working through their conflict about  placement, as

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

### Intake & Assessment Policy

---

well as their feelings about separation from the child.

Prior to removing a child from their home, the Worker shall identify information such as the child's daily routine, preferred foods and activities, needed therapeutic or medical care, allergies, cultural practices, and educational information. The child should be given the opportunity to collect things from his/her home that are meaningful to him/her; such as a favorite toy or a picture album.

The Worker shall explain to the child:

1. Why he/she is in care;

2. The Worker's role in the process;

3. Placements for other siblings (if siblings have separate placements); and

4. Feelings of separation and loss.

## d) Risk Assessment

The Risk Assessment shall be addressed simultaneously with the Safety Assessment but must be completed in MACWIS within 25 calendar days of initial intake "report date and time" and submitted with the completed investigation via MACWIS to the supervisor for approval, who has 5 calendar days to approve the findings. During this assessment, the Worker should be assessing the well-being of the child and the risk factors for abuse and neglect. The following shall be identified and documented during the Risk Assessment: (*See* DFCS Connection Website under *"Forms"*)

- What is the exact nature of the abuse and/or neglect? Describe the parent/caretaker's initial response. Describe the maltreatment found and describe any injuries.

- If abuse and/or neglect is found, how long has it been going on and what is the impact on the child?

- How do the parents/caretakers and the children view their current situation? Describe the caregiver's ability to provide basic needs?

- Describe the parents/caretaker's level of functioning. Are the parents/caretakers capable of addressing issues related to the maltreatment?

- Describe any mental/physical health concerns of household members. Do any concerns pose danger to the child?

- Describe how each child's functioning ability as it relates to such things as age, communication skills, school performance, physical and behavioral health and fear of harm.

Mississippi DFCS Policy                                               Section B
Revised 10-29-15

### Intake & Assessment Policy

- Describe family's support system.  What kinship resources are available to family?
- Identify and describe caregiver and family strengths, and protective capacities.
- Describe family and caregiver–child relationships.  Include things such as parenting  style, parenting knowledge and skill, and discipline techniques.

## 5.  Decision Making and Evidence

When the Worker completes an investigation, a determination is made to support the disposition  of the report.  This determination is made based upon:

1) Substantiation criteria
2) MDHS-SS-442-B, Safety Checklist for Children (*See* DFCS Connection Website under *"Forms"*)
3) Safety/Risk Assessment
4) Information gathered and entered in MACWIS
5) Direct observation/Medical or Psychological information

The investigating Worker must complete a Safety/Risk Assessment tool in MACWIS and submit  it to the supervisor for approval within 25 days of the report date and time.

If the determination  is made that a child is unsafe, the Worker will develop a Safety Plan or take protective custody.  Report findings are:

a.  Substantiated
b.  Unsubstantiated.

In the final analysis, the Worker will base conclusions on the totality of the evidence, not on "gut feelings" or "professional intuition." In some cases where medical evidence is strong, where  there is photographic evidence or an admission by the perpetrator, or credible victim's statement,   the Worker will have supporting documentation. In other cases where the medical evidence is inconclusive and the perpetrator denies the abuse, the Worker will examine the constellation of  all factors in reaching the decision. In these cases, something might be lacking from the child's statement, or the witnesses may be in conflict and may be biased. The investigative finding of substantiated or unsubstantiated must reflect a careful weighing of all the facts.

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

To evaluate whether the information supports or refutes the allegations and to what degree, the Worker must understand some basic concepts about evidence.

- The usefulness of information depends on the validity of its source.

- If the evaluation of the validity of information affects the decisions one makes or recommends, it should also affect the way one documents the case.

- Information gathered or evaluated has the potential to become key evidence in court hearings.

The following section provides a guide to evidence substantiation criteria that should assist the Worker in determining the findings of an investigation.

## a) Substantiation Criteria

The Worker shall document in MACWIS, the supporting information to confirm the findings of substantiated/un-substantiated.

Proof of one or more of the following factors, may constitute "substantial and material evidence." The exception is behavioral indicators or circumstantial evidence. Both are used only to further corroborate other forms of evidence.

### 1. Medical and or Psychological Information

This may take the form of medical documentation that a child was abused (i.e., evidence of sexual penetration of a young child or spiral fractures of long bones) or evidence which verifies the child sustained severe injuries which are medically inconsistent with the caregivers' explanation.

In sexual abuse, this includes:

- Genital, anal, or oral bruises or bleeding;

- Swollen or red cervix, vulva or perineum;

- Abnormal dilation of the urethra, vagina, or rectal openings;

- Semen on genitals, around mouth or clothing;

- Venereal (sexually transmitted) diseases;

- Pregnancy

This factor might also include psychological information which reveals a predisposition to abusive behavior on the part of the alleged perpetrator or otherwise corroborates evidence related to abuse.

Mississippi DFCS Policy                                                      Section B
Revised 10-29-15

## Intake & Assessment Policy

An admission by the perpetrator (including a caregiver who acknowledges she or he knowingly failed to protect the child).

### 2. Statement of Credible Witness

The investigator must be careful to evaluate fully, the credibility and potential bias of any witnesses to the act. The investigator must also consider the credibility of any witnesses which serve to refute the allegations or otherwise diminish the strength of other evidence (i.e., reliable witness who states the alleged offender was elsewhere at the time of the alleged abuse). Parent or relatives, for example, who are involved in a custody dispute, could not be considered fully reliable witnesses either in support of or in disagreement with the allegations.

### 3. The Child Victim's Statement

For allegations of sexual abuse:

The child states the abuse occurred and identifies the perpetrator(s). The following elements are typical of sexually abusive situations, and should be considered in assessing the weight to be given to the child's statement in cases where sexual abuse is alleged:

**History**

a. Multiple Incidents over Time

   *Did the child indicate more than one incident occurred? This situation is most common where the alleged perpetrator is a relative, friend, or caregiver of the victim.*

b. Progression of Sexual Activity

   *Did the sexual activity progress from less severe forms to more serious? Does the child describe transitional activities which appear acceptable at first, but become sexual (i.e., sleeping with parent, tickling or wrestling leading to fondling)? This is most common where the abuse occurs in the context of a long-standing relationship.*

**Details**

a. Explicit Knowledge of Sexual Activity

   *Did child give explicit details of the sexual experience? Were these details beyond the knowledge typical of a child this age?*

b. Richness of Detail

   *When age and developmentally appropriate, could the child give the location of the incident and a time, even though specific dates were not given? Did she or he tell anyone else, if so, whom? Could she or he give any details of the*

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

*environment? Such details by a preschool age child are not expected. As a child's developmental age increases, more detail may be expected.*

*Research indicates that very young children can accurately recall traumatic events in detail; however, they may not be able to recall details of the environment.*

c.  Consistency
    *If the child was interviewed more than once, were the responses consistent from one interview to the next? Were any parts of the child's story corroborated by others or by physical evidence?*

**Secrecy**

Does the child indicate that she or he was instructed to keep the abuse secret? Did it occur in a private setting?

**Coercion**

What are elements of coercion or persuasion? How did the perpetrator get the child to engage in the activity? What does the child think will happen now that they have told the story? Are they afraid of anything? (Note: These questions must be phrased in age appropriate language that is not leading).

Each of the above criteria must be evaluated separately in order to determine the status of the case. These elements are typical of many child sexual abuse cases. Yet the absence of information in some areas does not necessarily mean that the case is unsubstantiated.

If information is missing in any one category, further exploration regarding, the reason for the absence is needed.

Perhaps the right questions to elicit the information were not asked or the child was too uncomfortable to respond.

It may be possible that a particular element is not pertinent to the case in question. For example, a child who alleges fondling by a school bus driver may not report multiple incidents or progression. This aspect in and of itself does not unsubstantiate the case. Look beyond this individual element to determine the role of other indicators in the abuse. While carefully evaluating the presence of each individual indicator, it should be remembered that it is the constellation of symptoms which is the heart of the evaluation process.

In most cases, there will be little doubt as to the accuracy of the child's statement based on the presence of these elements. In rare cases of false allegations by children, the statements of those children will depart significantly from the criteria.

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

The child's statement should be weighed against any medical evidence and/or the physiological indicators. Does their explanation corroborate the medical findings or the physiological indicators as to how the injury was sustained? Whom do they say hurt them? Did anyone else know it was going on? How did they try to help? Has this type of injury ever happened before?

**4.  *Indicators and Circumstances of Abuse or Neglect* (*See* Appendix B)**

1.  **Physiological indicators or signs of abuse,** including, but not limited to: cuts, bruises, burns, or broken bones.

    This criteria includes physiological findings recorded on videotape or with a camera which strongly substantiate severe abuse.

2.  **Physical evidence** gathered by law enforcement or observed by Worker which tends to substantiate the allegations, including, but not limited to, the following:

    - Presence of child pornography or erotica such as child-oriented books, magazines, articles;

    - Video equipment, cameras, photos, negatives, slides, movies, video cassettes, drawings of children;

    - Personal letters and other correspondence from pedophile;

    - Diaries indicating sexual abuse occurred;

    - Sexual aids (as described by child);

    - Sexual "souvenirs" (e. g., panties or other similar items);

    - Lists of other victims, other offenders;

    - Weapons (as described by child);

    - Bed, clothing, sheets, etc. which contain body fluids, pubic hairs, and other physical evidence;

    - Torn, stained, bloody underclothing;

    - Conditions apparent in the home:
        - Bare electrical wires
        - Frayed cords
        - Gas leaks
        - No railing on stairs
        - Unprotected or broken window accessible to small children

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

---

o Medicines, cleaning compounds hot liquids within the child's reach

o Holes in wall or floors

o Overrun with vermin

o Urine-soaked mattress

o Human or animal feces on floors

o Toilets used but not in working order

o Garbage left to rot inside the house

o Heating inoperable in cold weather

This evidence should be sought and seized by law enforcement investigators under a search warrant or consent to search or documented by Worker with pictures or written description.

3. **Behavioral Indicators**. Child abuse often leads to behavioral manifestations in the child  victim. The existence of some or all of the behavioral patterns in the chart located in  Section B, Appendix B may be indicative of child abuse in a given case, and corroborate   other evidence of abuse. It is particularly important to observe the parent-child  interaction.

NOTE: Most of these behavioral indicators located in Appendix B can have numerous explanations besides child abuse. Their value is when they are linked to the abuse allegations, such as a change in school grades about the time the child alleges the abuse began or regressive behavior in anticipation of a visit with a father the child says abused her or him. A case cannot be considered substantiated based on behavioral indicators alone.

4. **Circumstantial evidence** linking the alleged perpetrator(s) to the abusive act(s) (e. g.,  the child was in care of the alleged perpetrator(s) at the time the abuse occurred and no  other reasonable explanation of the cause of the abuse exists in the record). Circumstantial evidence may include other professional reports, such as school records,  past police records, day care records, homemaker reports, etc.

## b) Supervisory Responsibilities in the Investigations, Reviews, etc.

Report information will be entered in MACWIS on appropriate screens as information is received.   The Worker has 25 calendar days from initial intake "report date and time" to complete the investigation and submit to the Supervisor who has 5 days for approval.

Mississippi DFCS Policy                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

---

### c) Investigation Staffing with ASWS

**1.** Initial Staffing (the date of assignment)

**2.** On-going Staffing within 5 calendar days of assignment and anytime thereafter.

- Close the case with no further action;

- Close and refer the case to community providers; or

- Open the case for ongoing protection/prevention services

Once reviewed and approved the ASWS shall submit the completed investigation with the Youth Court Tracking form to the Youth Court with recommendations.

### d) Investigation Reports & Notifications to Youth Court, District Attorney and Law Enforcement when applicable.

#### *1. Investigation Reports*

The Worker investigating the report is responsible for completing a finding on all investigations in MACWIS and submitting to his/her supervisor for approval. The Worker will also print the Youth Court Tracking form and forward to his/her supervisor. All completed investigations are made a part of the child's file in the MACWIS system and can be printed upon request.

#### *2. Report to the District Attorney (DA), Law Enforcement (LE) and County Prosecutor*

When a felony investigation is completed, the investigating Worker shall submit the completed report in MACWIS to the supervisor for approval. These approved reports along with the concluding DA and/or LE reports shall be mailed or hand-delivered to the DA, LE, or County Prosecutor (when applicable) by the supervisor. Information submitted to the DA and LE or County Prosecutor shall be included in the court report/summary.

#### *3. Report to Youth Court*

All assigned investigations of child abuse and neglect are completed by the Worker and forwarded to the ASWS for approval who forwards the reports to the Youth Court along with the Youth Court Tracking form.

#### *1. MISS. CODE ANN. § 43-21-357 *After receiving a report, the youth court intake unit shall promptly make a preliminary inquiry to determine whether the interest of the child, other children in the same environment or the public requires the youth court to take further action. As part of the preliminary**

Mississippi DFCS Policy                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

*inquiry, the youth court intake unit may request or the youth court may order the Department of Human Services, the Department of Youth Services, any successor agency or any other qualified public employee to make an investigation or report concerning the child and any other children in the same environment, and present the findings thereof to the youth court intake unit.*

*If the youth court intake unit receives a neglect or abuse report, the youth court intake unit shall immediately forward the complaint to the Department of Human Services to promptly make an investigation or report concerning the child and any other children in the same environment and promptly present the findings thereof to the youth court intake unit. If it appears from the preliminary inquiry that the child or other children in the same environment are within the jurisdiction of the court, the youth court intake unit shall recommend to the youth court:*

*(a) That the youth court take no action;*

*(b) That an informal adjustment be made;*

*(c) The Department of Human Services, Division of Family and Children Services, monitor the child, family and other children in the same environment;*

*(d) ) That the child is warned or counseled informally; or*

*(e) That a petition be filed.*

*(2) ) The youth court shall then, without a hearing:*

*(a) Order that no action be taken;*

*(b) Order that an informal adjustment be made;*

*(c) Order that the Department of Human Services, Division of Family and Children Services, monitor the child, family and other children in the same environment;*

*(d) Order that the child is warned or counseled informally; or*

*(e) Order that a petition be filed.*

*(f) If the preliminary inquiry discloses that a child needs emergency medical treatment, the judge may order the necessary treatment.*

### 4. Notifications

The investigation is not officially closed until the ASWS approves the investigation in MACWIS. Once the ASWS approves the investigation the ASWS will notify the family in

### Intake & Assessment Policy

writing of the findings (*See* DFCS Connection Website under *"Forms"*).

The Worker shall provide more information to the professional reporter regarding the investigation, without a court order if the reporter has a continuing professional relationship with the child and a need for such information in order to protect or treat the child.

## e) Appeals Procedure

The MDHS/DFCS provides individuals who disagree with DFCS findings or decisions covered under this policy, a right to appeal the decision.

The Child Abuse Prevention and Treatment Act (CAPTA) Amendments of 1996, (P.L. 104.235)(as codified at 42 U.S.C. Section 5106a) requires States to have provisions, procedures, and mechanisms in effect by which individuals who disagree with an official finding of child abuse or neglect can appeal such a finding. This requirement applies to the perpetrator of child abuse or neglect and applies to States receiving funds under a CAPTA state plan.

This requirement is to assure that individuals, who have been found by the State to have committed child abuse or neglect, are afforded due process. It also requires that individuals be given written notification of their right to appeal, and the method by which they may appeal, at the time they are notified of the official finding of child abuse or neglect; and that the office or individual hearing such appeals cannot be involved in any other state of the case, and that such officer or individual has the authority to overturn a previous finding of abuse or neglect. (Section A, DFCS Policy, Appeals Process).

## f) False Reports

An intentional false report is a report in which it is concluded that not only is there no evidence under state law or policy that a child was maltreated or at risk of maltreatment, but the reporter knew the allegation was false. The Worker should request that the reporter verify that the allegations were false. According to MISS. CODE ANN. § 43-21-353(7), *"anyone who willfully violates any provision of this section [with false reporting], shall be, upon being found guilty, punished by a fine not to exceed five thousand dollars ($5,000.00), or by imprisonment in jail not to exceed one (1) year or both."*

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

---

## F.   DFCS Investigations/Assessments Requiring Special Handling

### 1. Introduction

### a) Legal Base

MISS. CODE ANN. § *43-21-105 (v)* – "Any person responsible for care or support" means the person who is providing for the child at a given time. This term shall include, but is not limited to, stepparents, foster parents, relatives, non-licensed babysitters or other similar persons responsible for a child and staff of residential care facilities and group homes that are licensed by the MDHS.

MISS. CODE ANN. § *43-21-105(x)* – "Out-of-home" setting means the temporary supervision or care of children by the staff of licensed day care centers, the staff of public, private and state schools, the staff of juvenile detention facilities, the staff of unlicensed residential care facilities and group homes and the staff of, or individuals representing, churches, civic or social organizations.

MISS. CODE ANN. § *43-21-353-(8)* - If a report is made directly to the Department of Human Services that a child has been abused or neglected in an out-of-home setting, a referral shall be made immediately to the law enforcement agency in whose jurisdiction the abuse occurred and the department shall notify the district attorney's office within forty-eight (48) hours of such report. The Department of Human Services shall investigate the out-of-home setting report of abuse or neglect to determine whether the child who is the subject of the report, or other children in the same environment, comes within the jurisdiction of the youth court and shall report to the youth court the department's findings and recommendation as to whether the child who is the subject of the report or other children in the same environment require the protection of the youth court. The law enforcement agency shall investigate the reported abuse immediately and shall file a preliminary report with the district attorney's office within forty-eight (48) hours and shall make additional reports as new information or evidence becomes available. If the out-of-home setting is a licensed facility, an additional referral shall be made by the Department of Human Services to the licensing agency. The licensing agency shall investigate the report and shall provide the Department of Human Services, the law enforcement agency and the district attorney's office with their written findings from such investigation as well as that licensing agency's recommendations and actions taken.

*Child Abuse Amendments of 1984, (P.L. 98-457)* requires states to have in place, with State Protection Systems, procedures to respond to the reporting of medical neglect, including instances of withholding medically indicated treatment from disabled infants with life-threatening conditions.

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

### b) Policy

DFCS shall conduct an investigation/assessment of all maltreatment reports that are screened as a level II or III. All level III allegations of maltreatment including corporal punishment of a child in DFCS custody shall be initiated within 24 hours of the initial intake "report date and time" and investigation completed within 30 calendar days including supervisory approval. All level II allegations of maltreatment shall be initiated within 72 hours of initial intake "report date and time" and investigation completed within 30 calendar days including supervisory approval.

### c) Purpose

DFCS is mandated by MISS. CODE ANN. § 43-21-357(1) to investigate all reports of possible abuse or neglect of children by their parents or caretakers.

The caretaker may be someone who is entrusted with the care of the child, such as a foster parent, non-licensed child care providers/babysitters, scout leaders, tutor, clergy, or residential care facility staff.

DFCS will respond within mandated time frames and investigate allegations of child abuse and neglect in these complex cases and address the child's risk, safety, and well-being while addressing the trauma of placement moves during the investigative/assessment process.

### d) Procedures

The standard investigative/assessment protocol applies to all DFCS investigations but there are additional requirements that apply to special handling DFCS investigations/assessments. Those reports that are considered to be special handling DFCS investigations/assessments are: reports on resource homes, licensed facilities and DFCS employees. Medical neglect of a handicapped infant, fatality of a child, and other settings are considered "Expanded Investigations in Extraordinary Circumstances".

Reports on other settings such as unlicensed child care providers/babysitters, the staff / individuals representing churches, civic or social organizations are entered as DFCS regular intakes. In addition to the standard investigative/assessment protocol there are additional steps outlined under the Out-of-Home section of this policy.

## 2. Resource Reports

### a) Resource Homes

DFCS shall initiate all allegations of maltreatment, including corporal punishment involving a child in DFCS custody within 24 hours of initial intake "report date and time" and the investigation

Mississippi DFCS Policy                                                                      Section B
Revised 10-29-15

## Intake & Assessment Policy

completed within 30 calendar days, including supervisory approval. Upon learning of or observing such maltreatment the DFCS employee must immediately notify his/her supervisor. The DFCS employee will then make the report to the MCI either by phone or electronically.

All allegations of maltreatment in a licensed Resource Home received by the MCI shall be entered as a report for the county where the Resource Home is located.

Once MCI enters and screens the intake report it will go to the RD of the region where the Resource Home is located for assignment. In addition to the standard investigative/assessment protocol, the following procedures must be followed.

The COR Worker for a child in DFCS custody, regardless of the location of the resource home/ facility and regardless of which county has responsibility for conducting the investigation, must accept immediate and full responsibility for the safety, permanency and well-being of that child, including assessing the placement in terms of the incident reported and investigated and making immediate contact with the child.

The placement of the child must be evaluated by the COR in terms of safety, permanency and well-being regardless of the outcome of the investigation.

"A report of corporal punishment of a foster child which does not meet the criteria for screening delineated in "Screening Reports and Assigning Response" in this section- that is, a report indicating that a foster child has been subjected to corporal punishment but there is no report of injury, indication that the child is not safe, nor information suggesting that the child is in danger of harm – will be screened in as an ANE report requiring a level 3 investigation strictly due to the requirement that the prohibition of corporal punishment in Resource/Facility Settings requires the report of such corporal punishment be investigated as potential child abuse. If the investigation determines that corporal punishment did occur but there is no injury to the child and the punishment administered in a reasonable manner, child abuse shall not be substantiated. The investigation will indicate the occurrence of a policy violation and referred to the appropriate Licensure Specialist for corrective action."

1. The RD/designee shall notify by phone and/or email the COR and COS if applicable, and the Resource ASWS of the allegations. The COR ASWS for all other children residing in the home should be notified as well.

2. The RD/designee shall assign the investigation to a Worker who has been trained in conducting maltreatment investigations in Resource/Facility Settings and will notify his/her ASWS before the assignment is made. The Worker shall not have been involved in the licensure of the Resource Home and shall have no ongoing connection to the foster care case.

3. The assigned Resource Specialist shall accompany the assigned Worker to the home to assess possible policy and/or licensure violations.

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

4.  The RD, ASWS, COR and COS if applicable must make a determination if the identified victim and other children should remain in the home until the investigation/assessment is completed. The investigation and decisions should be based on a full and systematic evaluation of the factors that may place a child in DFCS custody at risk.

5.  The Permanency Unit will log all reports on DFCS homes and monitor completion of the investigation/assessment and the final report.

6.  The RD will monitor the timeliness of initiating and completing investigations of reports of maltreatment in foster care on a monthly basis.

7.  Within 24 hours of the allegations being made the child's COR Worker shall verbally notify parents or caretaker from whom the child was removed and the Guardian *ad litem* of the allegations involving the child. This notification must be documented in the child(ren)'s case record and the investigation/assessment report.

8.  All alleged victim(s) must be seen and interviewed within 24 hours of initial intake "report date and time" to assess risk, safety, and well-being.

9.  No additional children may be placed in the home pending the completion of the investigation/assessment.

10. The assigned Investigative Worker shall:

    a.  Interview:
        1.  Alleged victim(s); privately
        2.  All DFCS children in the home; privately
        3.  DFCS Worker(s) of the alleged victim
        4.  Resource Specialist
        5.  Former DFCS Staff, as appropriate
        6.  Children formerly in the home, as appropriate
        7.  Other professionals and collateral contact persons associated with the children in the home
        8.  Other household members, if applicable
        9.  Alleged perpetrators.

    b.  Review Cases of:
        1.  Alleged victim(s)
        2.  Other child(ren) in the home
        3.  Resource Home

    c.  Staff report of initial findings within 3 days with the RD in the region where

Mississippi DFCS Policy                                                                          Section B
Revised 10-29-15

### Intake & Assessment Policy

the home  is located and advise the RD as additional information is obtained.

   d.  Provide written notice to the District Attorney within 48 hours of finding evidence that  a child has been abused.

   e.  Complete the Safety and Risk Assessment for resource reports within DFCS timeframes. (*See* DFCS Connection Website under *"Forms"*)

   f.  Give a verbal report to the RD at the conclusion of the investigation/assessment

   g.  Submit the completed report to the RD in the region where the home is located within 25 calendar days from initial intake "report date and time". The RD has 5 calendar  days to approve the investigation.

11. After the initial safety assessment is completed, the Resource Specialist and the assigned Worker shall discuss with the Resource Supervisor the corrective actions needed. This emergency corrective action plan, if needed, is then verbally submitted to RD.

12. The RD will notify the Permanency Unit Director/Director of Field Operations/Division Director/Bureau Director of Prevention/Protection via electronic mail regarding the completed investigative findings, recommendations, and corrective actions. The completed investigation is available for viewing in the MACWIS system.

13. Once the final report, recommendations, and corrective action plans are approved, the Resource Specialist, Resource ASWS and COR Worker will convene a FTM with the resource family and COS Worker, if applicable, to notify them of the findings and recommendations.

14. When a maltreatment investigation involves a resource home, DFCS shall file a copy of the approved final investigation report, and any recommendations and/or corrective actions  DFCS has deemed necessary, in the case record of the foster child, the file of the  foster/adoptive parents with a copy of the letter of notification to the foster or adoptive  parents, and in the DFCS State Office. DFCS shall also provide those records to the Youth  Court Judge with jurisdiction over the child, the Guardian *ad litem* and to the Monitor.

## b) Licensed facilities

Upon receipt of a report of child maltreatment in a DFCS licensed group home, emergency  shelter, child placing agency resource home, DFCS shall undertake a licensure investigation, that  is in addition to, and independent of, any child protective investigation, that shall include an on-  site inspection of the facility or home to determine the contract provider's compliance with  DFCS licensure standards. If the provider is found to be in violation of licensure standards, it  shall have 30 calendar days to submit a Corrective Action Plan (CAP) with timeframes to rectify  the violation and comply with the approved CAP and timeframes. If the provider does not  comply with the licensure standards based on the approved CAP and timeframes, DFCS shall  revoke the license.

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

If a report involves felony child abuse, law enforcement must be notified immediately.

The RD of the region in which the facility is located will assign a Worker who has been trained in conducting maltreatment investigations in out-of-home placements and has no ongoing connection to the foster care case.

Upon arriving at the facility, the Worker will confer with the director or staff member in charge to inform them of the report. The regular investigation protocol shall be followed with these additions:

- Parents/guardians/custodians of children identified as victims will be informed after child is interviewed and immediately if medical treatment is needed;

- Referral of above child(ren) to physician or other professionals as appropriate to assist in the investigation;

- Interviews with other appropriate personnel;

- Interview with any other DFCS foster child(ren) currently in the facility or who has left the facility, who may have information regarding the incident;

- Interview with alleged perpetrator if law enforcement is not involved or if law enforcement has indicated you may do so;

- View of physical premises where incident is alleged to have occurred;

- Review of documents or records related to the incident; If access to records is denied contact Youth Court in that jurisdiction for assistance; and

    Review of facility policy and procedures and obtain a copy of the facility's policy/procedures regarding behavior management, if report involves physical abuse as a result of behavior management technique.

If immediate protection is needed, Youth Court and the licensing agency should be contacted and protective measures taken.

When a maltreatment investigation involves an agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS, a copy of the final investigative report shall be filed in the following:

- child's case record

- DFCS State Office licensing file

    and

- sent to the licensed provider facility.

Mississippi DFCS Policy                                                                Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

DFCS shall also provide the following:

- Youth Court Judge with jurisdiction over the child and
- The Monitor.

The completed investigation is available for viewing and printing via the MACWIS system.

Any foster child who remains in the same out-of-home placement following an investigation into a report that he/she was maltreated, or subject to corporal punishment in that placement shall be visited by the DFCS Worker twice a month for 3 months after the conclusion of the investigation to assure the child's continued safety and well-being.


Within 30 days of the completion of any investigation of maltreatment of a child in custody, DFCS shall review the maltreatment investigation. This review shall include:

1. identification of any case practice deficiencies;

2. identification of any remedial actions necessary to ensure the safety of the child who is the subject of the investigation as well as any other child in the home or placement as well as the timeframe in which such remedial action must take place; and

3. identification of any corrective action that is necessary to address deficiencies in case practice demonstrated by the investigation as well as the timeframe in which such remedial action must take place.

DFCS will monitor the initiation and completion of the remedial actions regarding individual child safety and case practice. DFCS shall notify the Area Social Work Supervisor (ASWS), Regional Director, and Director of Field Operations when such remedial actions have not been initiated within five days of identification or timely completed.

## c) Special Investigations

Any abuse/neglect report received by Intake that names a DFCS employee as a possible perpetrator, or victim or indicates a DFCS employee is somehow involved with this report (i.e. related, past or present relationship that is more than casual) requires a special investigation/assessment.

Once the intake is entered into MACWIS the RD in the region where the employee resides will receive a notification tickler of the intake. The RD shall assign a Worker from outside the county/region to conduct the investigation and make the assignment in MACWIS. The RD shall notify the Director of Field Operations immediately upon receipt of the Intake regarding the report and shall keep the Director informed of the progress. The assigned Worker shall initiate the

### Intake & Assessment Policy

---

investigation/ assessment and document in MACWIS within 24 hours of initial intake "report date and time". The assigned Worker shall staff the investigation/ assessment with the RD throughout the investigative/assessment process.

Other than the above differences, the assigned Worker should follow the standard investigative time frames. The RD shall notify the Director of Field Operations upon completion of the investigation, which is available for viewing in the MACWIS System.

## 3.  Expanded Investigations In Extraordinary Circumstances

## a)  Native American Children

The Mississippi Band of Choctaw Indians or any other Indian Tribe to which the child belongs has the right to accept or deny jurisdiction of the said child and to help with placement resources.

The Federal *Indian Child Welfare Act (ICWA)* was passed in 1978 and grants Indian tribes exclusive jurisdiction in child welfare cases involving Native American children. Because of this Act's existence, DFCS has no jurisdiction to investigate allegations of abuse or neglect occurring on Native American tribal lands. However, DFCS has and will continue to receive reports of abuse/neglect regarding Native American children whether they live on or off tribal lands. Should MCI receive such a report, a determination shall be made as to whether:

- The child is a member of a Native American Tribe and falls under the purview of ICWA;
- The child resides on designated tribal lands where an Indian tribe has jurisdiction.

The Mississippi Band of Choctaw Indians has tribal land in Neshoba, Attala, Jones, Kemper, Leake, Newton, Scott, and Winston counties.

If a child is identified at Intake as a member of the Choctaw tribe or another Indian tribe and lives on tribal land, the MCI Worker will screen the report to the county where the child resides. The COR Intake Supervisor will in turn notify the Mississippi Band of Choctaw Indians or any other tribal court and provide them with the allegations and all identifying information. If they do not wish to retain jurisdiction and request the county to investigate the allegations, the county will follow normal investigative procedures. The contact information for the Mississippi Band of Choctaw Indians is located on the MACWIS Web.

Workers must resolve the issue of Indian heritage as soon as possible after contact is made with the family, either through a report of abuse/neglect or a referral for services. The Worker shall ask the family the following questions to gain knowledge in deciding what is in the best interest of the

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

child and document the discussion in the narrative section of MACWIS:

1. Is parent or child of Native American heritage?

2. Is parent eligible for tribal membership?

3. Is parent registered with Native American tribe?

4. Is child eligible for tribal membership?

5. Has child been registered with Native American tribe?

6. Does the family live on tribal land?

 (refer to Section D, ICWA)

## b) Medical Neglect of Handicapped Infants

Federal regulations (*Child Abuse Amendments of 1984, P.L. 98-457*) requires DFCS to respond  to reports of medical neglect, including instances of withholding of medically indicated  treatment (including appropriate nutrition, hydration, and medication) from disabled infants less  than one year of age with life threatening conditions.

DFCS will investigate all allegations of medical neglect of a handicapped infant. Once a report  of medical neglect of a handicapped infant is received by MCI it will be screened in for the  county where the child/family resides.

1) ASWS shall

   a. Assign the report for investigation immediately.

   b. Notify immediately designated contact person at the health care facility/hospital if  applicable and the facility's Social Services Department, if applicable.

   c. If the child is in a health care facility/hospital the Worker shall conduct interviews with the following:

      1. Designated contact person

      2. Family

      3. Others involved with the infant

      4. Infant Care Review Committee (ICRC) if one is established at the health care  facility.

      5. The assigned Worker shall complete the following:

59

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

    d. Obtain an independent assessment from a medical consultant, if there is a determined need.

    e. Review infant's medical records, if necessary with the assistance of designated contact person. If the parents or facility do not cooperate, contact the Youth Court Judge or designee for a court order.

    f. Request an independent medical examination of the infant, if necessary, to assure an appropriate resolution of the report. If the parents or facility do not cooperate, contact the Youth Court Judge or designee for a court order.

2) If the findings of the investigation indicate that the infant is medically neglected, the ASWS must:

    a. Contact the Youth Court Judge to request an order to:

       1. Require parents to seek appropriate medical care, or

       2. Place custody with DFCS to obtain appropriate medical care.

    b. Document request to Youth Court Judge in the narrative section in the MACWIS System.

    c. Assign case to a Worker.

3) At the conclusion of the investigation, the ASWS must:

    a. Notify the RD of the findings that are available for viewing via the MACWIS system which includes the following:

       1. Names of:

- Child

- Parents

- Alleged perpetrator

- Designated contact person

- Attending physician

       2. Circumstances surrounding allegations of medical neglect.

       3. Identities of persons interviewed.

       4. Investigation/assessment information

       5. Case disposition

       6. Action taken, if valid report

    b. Share the report with the Worker assigned to the case.

Mississippi DFCS Policy                                               Section B
Revised 10-29-15

### Intake & Assessment Policy

c. Send letter to the facility administrator regarding disposition.

## c)  Fatality of a Child

When MCI receives a report of the fatality of a child, DFCS will investigate these reports when the fatality of a child:

- is caused by or is suspected of being caused by abuse or neglect

- occurs in an open case

In addition to the standard investigative/assessment protocol the following procedures must be followed:

1. Notifications

   Notifications Protocol:

   a. DFCS Personnel - Regional Director (RD), Field Operations Director and Deputy Administrator

   b. District Attorney or County Prosecutor (when applicable)

   c. Law Enforcement

   d. Coroner, if not already informed

   e. Public Disclosure

   Notifications Procedures:

   The ASWS **immediately** notifies the Regional Director by phone, emails the RD, DFCS Field Operations Director and DFCS Deputy Administrator and completes the SIR and submits it electronically to the RD for approval.

   The RD reviews and approves the SIR and submits it to State Office DFCS and MDHS executive management for approval and information.

   The DFCS Deputy Administrator will authorize public disclosure of the fatality, as applicable, in accordance with MS Code 43-21-261, MDHS Administrative Policy, and the Child Abuse Prevention and Treatment Act (CAPTA) as amended (42 U.S.C. 5101 et seq.).  (CAPTA) requires disclosure of certain information related to child fatalities and near fatalities which occurred as a result of abuse or neglect.

2. DFCS staff who learn of the fatality of a child where there is suspicion of abuse or neglect, or where a fatality occurs in an open case,  shall immediately notify MCI and provide the

Mississippi DFCS Policy                                                          Section B
Revised 10-29-15

## Intake & Assessment Policy

following additional information if known, to their immediate supervisor:

    a. The child is in DFCS custody

    b. The child or family has an open or closed DFCS case

    c. A DFCS investigation is pending at the time of the child's death

    d. Prior reports concerning the child or family were screened out for DFCS investigation

    e. Other children remain in the home and safety and protection issues must be addressed;

       or

    f. It is not known if other children reside in the home and require protection.

3. Assignment

    a. If there is an active/closed case or open investigation on the alleged victim or immediate household/family member the RD- will thoroughly review the case records and arrange for the investigation to be handled by a Worker from outside - the Region.

    b. If it was unknown initially that there was past involvement with the child/family and the report was already assigned, then the ASWS must notify his/her RD who shall instruct the ASWS to re-assign the report to a specific Worker from outside the Region.

4. Investigation/Assessment

    a. The assigned Worker shall meet with law enforcement and others as appropriate to outline roles, responsibilities and procedures for sharing information. It is very important to coordinate the investigation/assessment with law enforcement to avoid duplication and negating valuable evidence

    b. Fatality of a child under the age of two (2) years where death results from an unknown cause or where the circumstances surrounding the death indicate that sudden infant death syndrome may be the cause of death. (MISS. CODE ANN. § 41-61-59(2)(j))

       • Autopsy is performed by State Medical Examiner's Office or one of its designated pathologists.

    c. The assigned Worker should request a verbal report and the final autopsy report from the coroner in order to aid in investigation/assessment.

       • The assigned Worker reports the initial findings within 24 hours to his/her

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

## Intake & Assessment Policy

ASWS who then notifies the RD regarding whether it is an active/closed case, and shall advise as additional information is obtained.

    a.  The investigation will then be transferred electronically by his/her ASWS to the newly assigned Worker.

    b.  The initial Worker will relay all pertinent information to the newly assigned Worker.

- The assigned Worker submits a written report to the District Attorney within 48 hours of finding evidence of abuse or neglect, § 43-21-353(8).

- The completed report shall be submitted electronically within 25 calendar days to his/her ASWS.

- When a child died as a result of abuse/neglect the COR sets up a case record with the following:

    1.  Referral Information

    2.  Autopsy Report

    3.  Completed report of investigation/assessment and findings.

## d) Near Fatalities

The Child Abuse Prevention and Treatment Act (CAPTA), as amended (42 U.S.C.5101 et seq.) requires disclosure of certain information related to child fatalities and near fatalities which occurred as a result of abuse or neglect. A "near fatality" is defined under section 106 (b)(4)(A) as "an act that, as certified by a physician, places the child in serious or critical condition."

In addition to the standard investigative/assessment protocol the following procedures must be followed:

1. Notifications

    Notifications Protocol:

        a. DFCS Personnel - Regional Director (RD), Field Operations Director and Deputy Administrator

        b. District Attorney or County Prosecutor (when applicable)

        c. Law Enforcement

        d. Public Disclosure

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

### Intake & Assessment Policy

Notifications Procedures

The ASWS **immediately** notifies the Regional Director by phone, emails the RD, DFCS Field Operations Director and DFCS Deputy Administrator and completes the SIR and submits it electronically to the RD for approval.;

The RD reviews and approves the SIR and submits it to State Office DFCS and MDHS executive management for approval and information.

DFCS Deputy Administrator will authorize public disclosure of the near fatality, as applicable, in accordance with MS Code 43-21-261, MDHS Administrative Policy and the Child Abuse Prevention and Treatment Act (CAPTA) as amended (42 U.S. C. 5101 et seq.).  (CAPTA) requires disclosure of certain information related to child fatalities and near fatalities which occurred as a result of abuse or neglect.

2. DFCS staff who learn of the near fatality of a child where there is suspicion of abuse or neglect, or where a near fatality occurs in an open case, shall immediately notify MCI and provide the following additional information if known, to their immediate supervisor.

   a. The child is in DFCS custody

   b. The child or family has an open or closed DFCS case

   c. A DFCS investigation is pending at the time of the child's near-fatality

   d. Prior reports concerning the child or family were screened out for DFCS investigation

   e. Other children remain in the home and safety and protection issues must be addressed

      or

   f. It is not known if other children reside in the home and require protection.

## e) Out of Home

DFCS does not investigate reports in Out-of-Home settings unless otherwise ordered to do so by  the Youth Court.  DFCS may assist in these investigations if requested by law enforcement, etc.  (refer to MISS. CODE ANN. § 43-21-105(x))

Mississippi DFCS Policy                                            Section B
Revised 10-29-15

## Intake & Assessment Policy

---

### f) Investigations of Meth Labs

**Definitions:**

**Active "meth lab"**
*A setting wherein crystal methamphetamine is being manufactured.*

**Inactive "meth lab"**
*A setting where crystal methamphetamine has ever been manufactured but without a decontamination process being completed by the Mississippi Bureau of Narcotics (MBN), MBN affiliate, MBN designee or MBN approved source.*

### 1. Protocol for Social Workers

- No DFCS Worker shall knowingly enter an active or inactive "meth lab" for any reason.

- All reports of children currently residing in "meth labs" active or inactive should be "screened in" for investigation. The appropriate local law enforcement entity and the regional MBN office must be contacted and requested to assist the investigating Worker on each "meth lab" investigation. If local law enforcement is unable or unwilling to assist, the administrative chain of command should be followed in seeking advice as to how the matter should be handled (i.e., Worker-ASWS-RD). During a "meth lab" investigation, the investigating Worker should remain outside, at least 100 feet from the "meth lab", while law enforcement officers remove the child/children from the lab unless instructed otherwise by law enforcement.

- The Worker shall request copies of any photographs taken by law enforcement at the scene and follow-up to ensure that this information is received and placed in the DFCS's files.

- The child/children must be decontaminated by law enforcement or medical staff either at the scene or at a medical facility. The Worker should not place the child/children into her/his vehicle without the decontamination process having been conducted.

- If the victim(s) is/are taken to a medical facility, the Worker shall make a request to receive the results of any examinations and/or tests performed on the child/children, and follow-up to ensure that this information is received and placed in the DFCS's files.

- If decontamination occurs on the scene, the Worker should advocate that the procedure be performed in such a way that does not further traumatize the child.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

### Intake & Assessment Policy

- If it is determined that a child is residing in a setting wherein an active or inactive "meth lab" exists a Family Team Meeting would be held and a Safety Plan developed.

- Recommendations for vulnerable adults should be reported using the same MCI number

  1-800-222-8000 or www.msabusehotline.mdhs.ms.gov.

### 2. *Reasons to Consider the Removal of Children*

Child(ren) may be removed for the following reasons:

  a. If child(ren) is in imminent danger that cannot be resolved by a Safety Plan or by providing services.

  b. If it is determined that a child is residing in a setting wherein an active "meth lab" exists, this shall be viewed as a situation in which the victim cannot remain safely in the home.

## g) Reports Involving More Than One County

When a report is screened to the child's county of residence and the incident happened in another county the responsibility of the Intake County is as follows:
(*See* section on Resource Investigations for children in custody)

### 1. *Responsibilities of county of residence:*

- Accept report;

- Initiate legal action, as needed for child's protection;

- Coordinate ongoing legal/court intervention;

- Coordinate investigation with county where incident occurred;

- Arrange treatment services for child and family as appropriate in county of residence;

- Notify law enforcement if needed;

- Complete investigation in MACWIS.

- Contact alleged perpetrator's county of residence to coordinate interviews

- Coordinate interviews on a child who may be visiting in another county.

Mississippi DFCS Policy                                        Section B
Revised 10-29-15

### Intake & Assessment Policy

---

*2. Responsibilities of county where incident occurred:*

If a child is receiving services at a hospital or medical facility in a county other than his/her county of residence, and a report is received, the county Worker where the child is located at the time of the report shall assist in any way, including initiating the contact with the child and assessing the safety of the child(ren). The Worker (where the child is located at the time of the report) shall conduct the following interviews:

- Interview alleged perpetrator;

- Interview alleged victim or any other children who may still be in the county where incident occurred.

- Interview reporter unless he or she has chosen to remain anonymous.

- Assist with coordination of services if needed.

All information gathered shall be entered in the MACWIS system in the investigative report.

## h) Abused Child from Another State

When the child, who is the subject of an allegation of abuse, is a resident of another state and the abuse occurred in that state, and the child is currently located in Miss. the MCI Worker receiving the report will:

- Complete the Information and Referral (I&R) and notify the MCI Supervisor, MDHS/DFCS Protection Unit Director and e-mail and/or fax the information to the other state.

- If services are needed, the ASWS in the county where the child is currently located will coordinate services with the child's state of residence.

## i) Mississippi Child Abused in Another State

When the child who is the subject of an allegation of abuse is a resident in Mississippi and has been allegedly abused in another state, the MCI Worker shall:

- Complete the requested data on the MACWIS Intake Screens and forward the information to COR Intake Supervisor. (The contact information for the state in which the alleged abuse occurred will be listed within the location information of the MACWIS Intake.)

- Make an oral report to the Child Protective Service Unit in the state where the abuse allegedly occurred.

- Request the other state's assistance in completing the investigation.

Mississippi DFCS Policy                                          Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

### j)  Family Moves out of State

If a family moves out of state during an investigation of a child abuse/neglect and the family's new address can be obtained, a letter to the Child Protective Service Division in the other state must be written informing them of the report and must be sent to the Office of Protective Services, Division of Family and Children's, for the other state.

If the report indicated that there may be imminent danger of harm or threatened harm to the child, a protective service referral must be made immediately by telephone to the other state and confirmed in writing through the other state's DFCS as soon as possible after making the oral report.

### k)  Protective Services Alert

Protective Service alerts are used when the family and/or victim's exact whereabouts is unknown **and** the Worker is of the opinion that further harm may come to the child victim(s) unless protective services are provided.

In the case of a child fatality, when the family has moved to another county or state while the case is under investigation, **and siblings** to the deceased child have moved with the parents, a child protective alert needs to be sent by the assigned Worker and/or supervisor to the appropriate state and/or county office.

Protective Service Alerts received in the State Office from other states will be forwarded from the Protection Unit via electronic mail to each county office.

If a county needs to send a Protective Service Alert to another county or all counties within Mississippi, the county office will forward the alert to the Protection Unit to be disseminated via electronic mail to the other counties.

If a county office needs to send a Protective Service Alert to a Family and Children's Services' office in another state, the county office will forward the alert to the Protection Unit to be forwarded to the other state via electronic mail.

### l)  Requests from Another State

A county office may receive a request from another state for completion of a child abuse/neglect investigation when the incident occurred in that state with a child and the alleged perpetrator resides in Mississippi.  An assigned Worker from the county office shall interview the alleged perpetrator for the other state.

Mississippi DFCS Policy                                              Section B
Revised 10-29-15

## Intake & Assessment Policy

---

## III.  FAMILY CENTERED PRACTICE

### A.  Family Team Meeting (FTM)

A Family Team Meeting (FTM) is a planned, structured, facilitated decision making process to which members of the family both formal/informal, are invited along with required DFCS staff and any other support system identified by the family and DFCS.  The key to a successful FTM is the engaging and bringing together of those individuals, both formal and informal, who are a part of the family's support system.  FTMs allow for the gathering of information critical to the assessment process, to the development of the case plan, monitoring of the case plan and involvement of the family and other pertinent individuals in key decision making.

### 1.  FTM Philosophy and Practice

At all times a FTM should be a family led, youth guided and agency supported process. The primary focus must always be the safety and well-being of the children and youth. As a philosophy, it reflects the belief that families can solve their own problems most of the time if they are provided the opportunity and support. No one knows a family's strengths, needs and challenges better than the family. The family team decision making approach is also a practice in that it describes the basic method by and through which DFCS seeks to serve children/youth and families. A child welfare supervisor's participation in a FTM is an opportunity to assess the Worker's use of Family Centered Practice principles. The Family Centered Practice Principal encompasses the following components:

- A clear but open-ended purpose;

- An opportunity for the family to be involved in decision-making and planning;

- Options for the family to consider and decisions for the family to make;

- The family's involvement in the development of specific safety or permanency plans  and in the development of services and supports;

- Engagement;

- Relationship building;

- Problem solving; and

- The outcome of the meeting will be reflected in the development of a case plan with tasks and goals.

Mississippi DFCS Policy                                                    Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

### 2. FTM Requirements

A FTM is required during:

- An investigation if removal is necessary for the safety of the child.

- This meeting should occur prior to the removal when possible, or within 24 hours of removal unless the Worker is unable, after diligent efforts documented in the case record, to identify, locate, and engage the family.

- An investigation when safety and risk factors are identified and a safety plan is needed.

- An investigation when evidence of abuse or neglect is found or if there are safety and risk factors present to warrant opening a case.

On all cases, an Initial FTM shall be completed within thirty (30) calendar days from the opening of the case. The case is considered open when the ASWS makes the decision in MACWIS for continuing services. The ASWS should make a decision within five (5) calendar days of the Worker's recommendation for continuing services.

### B. Mobilizing Services

In providing services to the family or child, DFCS, in collaboration with the family members, and based on assessment information, should recommend services that are determined to be the most beneficial and least intrusive to the family while maintaining the child's safety. This recommendation should include consideration of the ability of family members to access services as needed, provision of needed services in the home and/or community in which the family members live, and providers that can best meet the family members' needs.

Services shall be mobilized at any point in an investigation when services are needed to maintain a child's safety or reduce risks for abuse and neglect. The decision to mobilize services should be based on the safety and risk assessment and parental protective factors.

Cases with active safety concerns requiring a safety plan or protective custody must be opened for services. Services with no active safety concerns but assessed to have a moderate or high level of risk may be opened for services. In those situations, the Worker should:

- Make decisions with the family regarding the identification of services needed, appropriate providers, and locations of services;

- Make prompt referrals to service providers; and

- Follow up to help ensure prompt service initiation.

Mississippi DFCS Policy                                                                 Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

If the case is opened for services, the Worker should use the Comprehensive Family Assessment (CFA) and FTM to identify services that need to continue or to be initiated based on the goals, assessment, and case plan. If the case is not opened for service, but the Worker and family determine that services would benefit the family, the Worker shall assist the family with referrals to community based resources.

## C. Disposition of Cases

### 1. Cases in which the Family's Whereabouts Become Unknown before Completion of an Investigation

Some families with whom DFCS is working will move without notification. If a family moves without leaving a forwarding address, and the investigation is incomplete and the Safety and Risk Assessments have not been completed which would alleviate harm or imminent danger, the Worker should immediately make every effort to locate them via neighbors, family, schools, law enforcement, courts, mental health facilities, etc. and if located, alert the appropriate DFCS office in the family's new locale. The case should be terminated upon transferring the incomplete investigation to the family's new location.

If the family relocates to another state and that state's DFCS requests information, the information regarding this family should be sent expeditiously.

Mississippi DFCS Policy                                                Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

## IV.  APPENDICES

## Appendix A

**Reports which may be screened out at intake**:

- Dirty houses or dirty children and no indication of life or health endangering situation. If school/day care officials report dirty children, they should be requested to talk to parents first. If their attempts to meet with parents or to correct situation fail, then accept report.

- Children inappropriately dressed and no indication of neglect of a life or health endangering situation.

- Allegations that speak more to the parent's behaviors rather than the child's condition; (e.g., parent drinks beer or takes drugs; mother has boyfriend) and there is no indication of neglect or life or health endangering situation. – Exception: All reports of mother/child testing positive for drugs will be screened in.

- Reports of crowded conditions or too many people living in a home and no indication of neglect or life or health endangering situation.

- Allegations that parent is not spending TANF, Food Stamps, Child Support or other income on children, and there is no indication of neglect of basic necessities, or of a life or health endangering situation. Reporters should be referred to local Economic Assistance office.

- Reports which suggest a need to be addressed by another agency and there is no indication of a life or health endangering situation. (i.e., lack of school attendance, presence of lice, delinquency, lead/asbestos poisoning). These reports should be referred to the appropriate agency for handling (i.e., school attendance officer, health department).

- Reports on teen pregnancy where there is no suspicion of abuse/neglect.

- Sufficient information is not provided to enable the Department to locate the family, and this information cannot be secured through other sources after all reasonable efforts have been made.

- Reports of incidents that occurred when a person now eighteen (18) or over was a child. When adults report that abuse/neglect was perpetrated on them as children, they must have some other information or reason to believe that children presently cared for by perpetrator are being abused / neglected.

- Reports on an unborn child and there are no other children at risk.

- Reports of sexual relations involving victims age 16 and over that meet all of the criteria below. If any one criteria does not apply, the report should be considered for investigation.

72

**Intake & Assessment Policy**

---

    a.   Alleged victim was age sixteen (16) or over at the time incident occurred, and

    b.   Alleged victim is a normally functioning child, and

    c.   Alleged victim, age 16 or over, willfully consented, and

    d.   Alleged perpetrator is not a parent, guardian, relative, custodian or person responsible for the child's care or support and resides in the child's home, or an employee of a residential child care facility licensed by MDHS, and or a person in a position of trust or authority.

    e.   No parental or caretaker neglect is suspected.

If a report is considered outside the jurisdiction of the DFCS, the report shall be documented and be referred to law enforcement of proper jurisdiction for investigation. Other services of the Department may be provided.

- Reports of rape, sexual molestation, or exploitation of any age child that meet all of the criteria below. If either (a) or (b) does not apply, the report should be considered for investigation.

    a.   Alleged perpetrator is not a caretaker, friend of caretaker, relative, other person living in the home, or employee of a child care facility where the child attends or lives.

    b.   No parental or caretaker neglect is suspected.

    c.   Law Enforcement has been informed of the report.

If law enforcement has not been contacted, County DFCS will immediately make the report to them. Other services of County DFCS will be offered to law enforcement (i.e., interviewing children) and the family (i.e., mental health referrals, counseling) as needed.

- Reports of children who have not had their immunizations. Reporter should be referred to the County Health Department by County DFCS to contact a public health social worker or to the school attendance officer as appropriate.

- Threats or attempts of suicide by children if there is no suspicion of parental/caretaker abuse or neglect. If the nature of the report suggests that the child is in immediate danger of self harm, a referral should be made immediately to Mental Health and/or Law Enforcement. If reporter is a professional, they should be requested to refer the family to counseling. If family does not follow through, then case can be referred to DFCS for neglect. If reporter is a non-professional, the DFCS should determine if family is seeking

Mississippi DFCS Policy                                           Section B
Revised 10-29-15

**Intake & Assessment Policy**

counseling. If not, DFCS should investigate for neglect. If reporter feels suspicion exists just because suicide attempt was made, DFCS will investigate.

- Physical injury committed by one child on another that meet all of the following criteria:

  a. Child is not in a caretaking role over the other child.

  b. No parental or caretaker neglect is suspected.

  c. Child victim and perpetrator are not in a residential child caring facility or a home licensed or approved by DFCS.

**Additional and Duplicate Reports:**

The DFCS sometimes receives additional reports regarding an incident or situation that has already been investigated. If a report regarding abuse or neglect is received and it includes any of the following information, it must be investigated as a new report if a DFCS Assessment is not currently in progress:

- A new alleged perpetrator;

- A new victim;

- A new category of child maltreatment not previously reported;

- A new incident involving the same type of child maltreatment(s).

In order to classify a report as the duplicate report and to screen it out for investigation, the CPS social worker must determine if the new information includes:

- Same alleged perpetrator(s);

- Same victim(s);

- Same types of child maltreatment(s); and

- Same incident

Before any decision is made to screen out any report as being the same report, the ASWS must always make sure the prior report was thoroughly investigated.

Second reports of abuse or neglect will not be investigated if it is the same report, same victim and same incident.

Mississippi DFCS Policy                                                                        Section B
Revised 10-29-15

**Intake & Assessment Policy**

---

## Appendix B

**Form DFCS 506**
**Revised 02/2011**

# BEHAVIORAL INDICATORS OF ABUSE

**Pre-Adolescent:**

1. Stylized behavior, excessive seductiveness;

2. Unusual interest in sex organs of self or others (either children or adults);

3. Fearful or suspicious of adults;

4. Tugging at clothing in genital area;

5. Tired, lethargic, sleepy appearance;

6. Regressive behaviors: such as whining, negative changes in toilet habits;

7. Persistent fears or overwhelming nightmares;

8. Blaming or dislike of self;

9. Change in school grades;

10. Public or excessive masturbation;

11. Developmental delays;

12. Child is perceived and/or treated by parent as "bad," unusual, and/or different;

13. Behavioral extremes (e.g. extremely aggressive or passive; persistent crying);

14. Child assumes parental role (i.e., caretaker of one or both parents and/or siblings beyond normal "role playing "for child's age);

15. Lack of peer interaction;

16. Threatens or attempts suicide;

17. Psychosomatic illness.

**Adolescent:**

1. Stylized behavior, excessively  provocative beyond the norm for the child;

2. Shy, withdrawn, overburdened appearance;

3. Change in school grades;

**(BEHAVIORAL INDICATORS OF ABUSE Continued on Next Page)**

Mississippi DFCS Policy                                                Section B
Revised 10-29-15

### Intake & Assessment Policy

**Form DFCS 506**
**Revised 02/2011**

# BEHAVIORAL INDICATORS OF ABUSE

4. Running away;

5. Self-destructive behavior;

6. Substance abuse that is more experimental;

7. Unwillingness to participate in group activities;

8. Stealing; shoplifting;

9. Pregnancy wishes;

10. Prostitution;

11. Fear or distrust of men, adults;

12. Statements about being "bad" or "undesirable";

13. Way of/avoidance of physical contact;

14. Excessive longing for affection;

15. Child assumes parental role or role as spouse of parent (i.e., care giving of one or both parents and/or siblings beyond normal "role playing" for child's age);

16. Reluctance to change clothes for gym class;

17. Lack of peer interaction;

18. Threatens or attempts suicide;

19. Psychosomatic illness.

# Ex. 2



**An Assessment of Aspects of
Mississippi's Department of Child Protection Services
Responses to Maltreatment in Care**

**September 27, 2016**

*An Assessment of Aspects of*
*Mississippi's Department of Child Protection Services*
*Responses to Maltreatment in Care*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   REVIEW OF MS DCPS INTAKE AND ASSESSMENT POLICY............................2

      A.  Intake and Assessment Policy.........................................................2

III.  REVIEW OF MS DCPS INTAKE SCREENING TOOL ............................................6

      A.  Content and Clarity of Screening Tool ............................................6
      B.  Quality of the Tool........................................................................7

IV.   REVIEW OF SAFETY AND RISK ASSESSMENT INSTRUMENT........................8

      A.  Consistency of Policy and Guidelines with Reasonable Professional
          Standards ....................................................................................8
      B.  Quality of the Tool........................................................................9

V.    SAFETY REVIEW UNIT PROCESS .....................................................................12

      A.  Clarity Of the Guidelines ..............................................................13
      B.  Completeness of Review Instrument and Reference Guide ............................14
      C.  Alignment of Guidelines, Review Instrument and Reference Guide .............15
      D.  Reporting and Monitoring Remedial/Corrective Action .................................17

VI.   REVIEW OF TRAINING FOR STAFF OF THE
      SPECIAL INVESTIGATIONS UNIT.......................................................................19

## An Assessment of Aspects of Mississippi's Department
## of Child Protection Services Responses to Maltreatment in Care

### I.    INTRODUCTION

As part of a comprehensive qualitative review of the Mississippi's Department of Child Protection Services' (DCPS) handling of reports alleging maltreatment of a child in DCPS custody, the Center for the Study of Social Policy (CSSP) was retained by the Olivia Y. Court Monitor to review the DCPS' Intake and Assessment policy, the instruments used to screen reports of alleged maltreatment in care, the instruments used to assess safety and risk and the guidance on creating a safety plan during investigations of alleged maltreatment in care. CSSP also reviewed processes related to the DCPS Safety Review Unit (SRU), which reviews completed maltreatment in care investigations and institutes related corrective actions, if needed.

This review was conducted by a team of CSSP senior staff (Judith Meltzer, Gayle Samuels, Sarah Morrison and Lisa Primus) who are knowledgeable about CPS policies and practices and broader child welfare system operations. (Bios of CSSP staff involved in this review are attached).

## II.    REVIEW OF MS DCPS INTAKE AND ASSESSMENT POLICY

The Center for the Study of Social Policy (CSSP) reviewed Mississippi's Department of Child Protection Services (MS DCPS) Intake and Assessment Policy (policy), dated October 29, 2015 in comparison to best practices in the field. Notes from interviews with DCPS staff and managers conducted by the MS Monitor and staff were also reviewed.

A child protection system should have clear policy, processes and procedures to consistently carry out its mandated responsibilities with respect to the investigation of all reports of child maltreatment, including those of children in their custody. The policies and procedures guide worker actions and provide structure to help staff reliably and consistently perform and document their work. This also helps supervisors and managers track and review the work for comprehensiveness, thoroughness and timeliness.

CSSP's review of DCPS policy indicates that policy, processes, procedures and capacities for addressing allegations of maltreatment of a child while in foster care have been developed. As well, procedures for multiple levels of managerial and quality assurance review of investigation records, beyond the expected supervisory reviews required during the actual investigation, have been developed. However, there are several areas in which clarity and updates to the policy are needed to match current reported practices. For instance, the Special Investigations Unit (SIU) within DCPS is responsible for investigating reports of alleged maltreatment of a child in the agency's custody. That unit and the process for referring reports to it, are not mentioned in the policy. The following is an overall assessment of the policy.

## A.    <u>Intake and Assessment Policy</u>

DCPS' Intake and Assessment Policy (policy), dated October 29, 2015, is a 76-page document which presents the goals and expected procedures for receiving and investigating reports of alleged maltreatment of a child. *There is no distinct policy for investigations of alleged maltreatment of a child in DCPS custody.* The policy states that, except where otherwise noted, the general intake/assessment policy applies to those circumstances.

Before describing the procedures for Intake and Assessment, the policy provides an overview of DCPS' scope of authority and goals and the state and federal laws which provide the basis for its authority. It also contains a section on Family Centered Practice, which describes Family Team Meetings and mobilizing services for families and children and a section on handling cases where the family's whereabouts become unknown before the completion of an investigation. Finally, in appendices, the policy addresses reports which may be screened out at intake, not

processed for investigation (Appendix A) and behaviors by pre-adolescents and adolescents which may indicate abuse (Appendix B).

*Intake*

Reports alleging maltreatment of a child in foster care are addressed in the policy in a section entitled "ANE (Abuse, Neglect and Exploitation) Intakes That Require Special Handling, Reports of Maltreatment in Foster Care". The section which refers to the *investigation* or assessment of such reports is entitled "DCFS Investigations/Assessments Requiring Special Handling".

The policy clearly describes that all reports of alleged child maltreatment are to be directed to and handled by Mississippi Central Intake/MCI. It describes statutory authority and the types of reports handled by MCI. It outlines tasks to be performed by the intake worker after taking the report.[1]

Section (4.b.1) on ANE reports requiring special handling states that while a report of corporal punishment may not meet the State's definition of abuse or neglect, all reports alleging corporal punishment of a child in foster care are to be accepted for investigation. For clarity, this very important information should also be placed in section (2.a) which address types of reports and defines the ANE categorization.

This section of the policy also addresses the timeframe for initiating and completing investigations of alleged maltreatment in care: reports of alleged maltreatment of children in foster care should be "*initiated within 24 hours of the initial intake 'report date and time' and completed within 30 calendar days including supervisory approval*". Additional information in this section refers to the assignment of reports in the DCPS' electronic case management system (MACWIS). The policy states that reports are to be assigned to the county where the resource home is located, however it is not clear if this also applies to allegations when a child is placed in a facility. This direction **has not** been updated to reflect the Division's Special Investigations Unit, which has handled reports of alleged maltreatment involving a child in custody since July 2014.

This section of the policy on reports requiring special handling also addresses the designation of maltreatment in care reports as "Resource Reports" in MACWIS. Direction presented for when to use the Resource Report option in MACWIS seems repetitive (1st and 3rd bullet) and contradictory. Based on information presented in this section, it also seems that maltreatment

---

[1] A policy note about obtaining access to a resource regarding requesting language interpretation assistance to allow the MCI worker to communicate with a reporter is found elsewhere in the document.

involving *any* child placed in a licensed or non-licensed facility (regardless of the role of the alleged maltreator) would be designated as a Resource Report (4th bullet). This contradicts direction presented just above about how to designate reports involving maltreatment in the child's own home.

The policy states that MCI is to screen reports and decide the "Level" of the report and that all reports involving a child currently in foster care are considered to be a Level Three and thus the assigned worker has 24 hours from the initial intake report date and time to initiate the investigation. The policy states that the MCI is required to assign reports to the county within 90 minutes of receiving the report. DCPS' SIU's handling of these reports is not referenced. It is not clear whether the 90 minute timeframe applies to sending reports to SIU. A 90 minute window to process and refer a report is a reasonable timeframe, given the tasks to be managed after the call. According to the policy, MCI is also to notify the applicable Regional Director of the location of the Resource home. It is not clear if the same notification requirement applies for alleged maltreatment involving facility staff.

For increased clarity in the section of the Policy addressing intake, we suggest the following:
1. Place information about accessing language interpretation assistance in the section related to the tasks of the intake worker.
2. Revise the policy to reflect that reports involving maltreatment in care, including alleged corporal punishment, are to be referred from MCI to SIU for investigation, not to the county, as the policy currently states and clarify that the responsibility for finalizing the screening reports of maltreatment in care rests with SIU, not the county.
3. In areas where there is a reference to a resource home and information is also applicable to a facility, include the term facility. Where expectations differ for resource homes and facilities, make the differences clear.
4. Review MACWIS guidelines in 4.b.1 and 4.b.2 for clarity and consistency.
5. Clarify when the designation of "Resource Report" is to be made.

### *Investigation*
The section on investigations/assessments that require special handling, reiterates that the standard investigative/assessment protocol applies to all DFCS investigations but there are additional and unique requirements that apply to reports involving maltreatment in a licensed facility, a resource home or by the actions or inactions of a resource parent. This section of the policy has not been revised to reflect the role and functions of the Department's Special Investigations Unit. Therefore, information presented is not fully relevant to current practices and systems in the state.

For instance, according to the policy, the county supervisor may screen a report and decide that it does not meet the standards for investigation required by statute even if the MCI has decided otherwise. It states that the county supervisor is to document the change to the screening decision and notify the Regional Director who makes a final decision. It appears that the county supervisor also reviews reports that have been screened out for investigation by MCI and can override the decision and notify the Regional Director, who makes the final decision. Other reasons for screening out reports are presented in this section, including duplicate reports and *reports of maltreatment of a child in foster care but the resource parent/household members were not involved.* This information is relevant to "traditional" investigations but not to the handling of child maltreatment in care reports. There is no information on how a maltreatment in care report is screened.

On the other hand, the following information presented in the policy, pertaining to all investigations is clear, reasonable and comparable to best practices in the field:

- Timeline for assignment to an investigator.
- Initiating and making efforts to initiate an investigation.
- Criteria for the types of allegations which require notifying law enforcement.
- Persons to be interviewed during an investigation and persons who are to be interviewed in private.
- Conducting and documenting safety and risk assessments.
- Determining whether a child remains or stays in his/her placement.
- Developing a safety plan.
- Tasks to be conducted during the investigation, specific to resource homes and facilities.
- Making decisions based on evidence and substantiation criteria.

For increased clarity in the section of the policy addressing investigations, we suggest the following:

1. This policy must be updated to clearly reflect how allegations of maltreatment of a child in care are handled. The state's special investigation unit/SIU and the roles of those supervisors and workers from intake and screening to conducting the investigation must be included.
2. The policy should also address the role of the child's ongoing worker, the licensing investigation, notifications required for maltreatment in care investigations and the work of the Safety Review Unit.

III.    REVIEW OF MS DCPS INTAKE SCREENING TOOL

To carry out this assessment, CSSP reviewed the following:

- DCPS' Intake and Assessment policy, dated October 29, 2015.
- A completed ANE screening tool in MACWIS, the state's electronic case management system, related to a June 2016 report of alleged maltreatment of a child in DCPS custody.
- Notes from interviews with DCPS staff and managers conducted by the MS Monitor and staff.

By policy, the MS DCPS' ANE Screening Tool (screening tool) is to be completed by a Mississippi Central Intake worker and reviewed by a supervisor of investigations to make a decision of whether to assign a report for an investigation.

The purposes of a screening tool are to ensure the decision about whether to investigate the alleged report is compatible with statute and policy and consistent across staff conducting screening activities. MS DCPS reports that quality assurance processes of screening have been instituted.

CSSP's qualitative observations of the MS screening tool are summarized in two areas:

- Content and clarity of the tool
- Quality of the tool

The Olivia Y. Monitor is undertaking a review of screening decisions. Therefore, CSSP did not assess the use of the screening tool by workers and supervisors.

In summary, we found the tool to be adequate to screen reports for assignment for investigation. Guidance contained in the DCPS Intake and Assessment policy provides additional information needed to appropriately screen-in allegations of corporal punishment of a child in custody. This important guidance is not contained in the screening tool and should be added to clearly reflect current state policy.

A.    **Content and Clarity of Screening Tool**

Overall, most of the questions included on the screening tool to determine whether a report should be screened in, or accepted, for investigation are related to Mississippi statutes and policy. The tool and its instructions provide sufficient guidance for considering statutory and policy factors in the screening process and deciding whether or not to assign a report for investigation. The questions included on the ANE Screening Tool are clearly presented. The questions address whether the report is a duplicate and has already been received; whether there

is enough information provided to locate a family; whether the alleged perpetrator is under DCPS jurisdiction; and whether the allegation meets the definition of maltreatment provided in state and federal law. For those allegations which meet the definition of abuse or neglect, there are also six criteria from which the worker may select to identify more critical situations. These criteria flag circumstances which require immediate attention from an investigator and perhaps a response from law enforcement as well.

The screening tool does not address the important policy prohibiting corporal punishment of a child in DCPS custody and allowing reports alleging corporal punishment to be accepted for investigation. The allegation of corporal punishment of a child who is in DCPS custody in itself, does not meet the legal definition of abuse or neglect in the state, however, it is against DCPS policy. According to DCPS' Intake and Assessment policy those reports are to be screened in and assigned for investigation. This element of "sufficiency" to be screened in is not specifically contained in the screening tool. Instead, it appears that in addition to correctly identifying that a child is in custody, the intake worker must carry out a three step process:

1. Select 'yes' to a question in the tool which asks "Are there other allegations or a Risk of Abuse/Neglect that require intervention?";
2. Select 'Resource Report' in MACWIS; and
3. Clearly identify that the report is refers to alleged corporal punishment.

To insure that workers always correctly screen in allegations of corporal punishment for a child in custody, we would recommend that the screening tool be modified to simplify this process and to immediately flag reports of alleged corporal punishment cases for investigation.

B.    **Quality of the Tool**

The five questions posed on the ANE Screening Tool, with the additional details included in the Intake and Screening policy, provide sufficient guidance for screening an allegation(s) of child abuse or neglect for assignment to an investigator. The tool also contains a section to provide justification for making the decision to screen out a report, as well as a section for the supervisor to provide special instructions in writing to the assigned investigator.

## IV.    REVIEW OF SAFETY AND RISK ASSESSMENT INSTRUMENT

CSSP assessed the instruments used by DCPS to assess safety and risk. The results of the review are summarized below. CSSP reviewed the following materials for reference:

- MS DCPS Policy Section B/Intake and Assessment Policy, dated October 29, 2015.
- MS MACWIS Technical Assistance Bulletin - Issue 24.
- MS DCPS Resource Safety and Risk Assessment Tool, a combined tool for assessing safety and risk, embedded in MACWIS.
- New Jersey's Safety Assessment Tool for Resource Homes and Congregate Care Settings
- California's Safety Assessment Tool for Substitute Care Providers.[2]
- Notes from interviews with DCPS staff and managers conducted by the MS Monitor and staff.

DCPS' Intake and Assessment Policy, dated October 29, 2015, applies to all reports of alleged child maltreatment, including those related to alleged maltreatment of a child in foster care. The policy gives guidance to investigators conducting safety and risk assessments. DCPS applies a safety assessment and risk assessment as a requirement in all investigations.
Our qualitative observations are summarized in two areas:

- Consistency of policy and guidelines regarding the use of the Resource Safety and Risk Assessment tool with reasonable professional standards.
- Quality of the Safety and Risk Assessment tool.

Overall, CSSP found that the guidance in policy for staff on how and when to assess safety and risk is adequate. However, we found the Resource Safety and Risk Assessment tool itself to be problematic and inadequate to support practices of assessing safety and risk and planning to assure the safety and well-being of children in foster care.

We recommend that the state explore and implement a validated, reliable tool to assess *safety*. We also recommend that the state revisit its approach to the assessment of *risk* for a child in foster care.

## A.    <u>Consistency of Policy and Guidelines with Reasonable Professional Standards</u>

According to the policy, during any investigation of alleged child maltreatment, safety must be assessed "at the initial contact with the child(ren) and staffed with the supervisor immediately, with documentation in the MACWIS (the state's electronic case management system) narrative during the 5 day required investigation staffing". The policy further states that the Safety

---

[2] New Jersey and California were selected as examples since both jurisdictions have developed robust systems and tools to respond to alleged maltreatment in foster care and policies and tools are readily available.

Assessment tool completed and submitted to the supervisor within 25 days of the date and time of the alleged maltreatment report. Similarly, the policy indicates that risk must be assessed simultaneously with safety and the Risk Assessment tool in MACWIS (which for investigations of maltreatment is one tool combined with the Safety Assessment) must be completed within 25 calendar days of the date and time of the alleged maltreatment report.

Compared with reasonable professional standards, the timeframes set forth in the policy for the initial assessment of safety and the final assessments of both safety and risk are reasonable practice.

## B.    <u>Quality of the Tool</u>

The Resource Safety and Risk Assessment tool in MACWIS is *one* tool consisting of 11 questions. The tool does not appear to be validated.[3] Safety and risk assessment tools are meant to provide guidance and set standards for decision-making across the system. For those reasons, a process of validation and periodic evaluation for reliability are considered essential.

The tool does not clearly delineate between the assessments of safety, *whether or not the child is in immediate and impending danger*, and that of risk, *the likelihood of abuse/maltreatment in the future.* This is not consistent with best practice. Typically, the assessment of safety is a separate assessment from one of risk. Of the 11 questions on the tool, it is not immediately clear which questions target the assessment of safety versus risk.

A safety assessment tool should be distinct from a risk assessment tool. Typically, workers conducting investigations document their findings about a child following their initial meeting in narrative form, complete a safety assessment tool and make a judgment about the child's immediate safety in their current living arrangement. The expectation in practice is that the assessment of a child's safety is ongoing during the investigation and both the narrative of an assessment and the safety assessment tool may be updated, as needed, throughout the investigation. Information needed to complete a future-oriented risk assessment and tool is gathered from multiple sources during the investigation; thus the risk assessment is typically completed later in the investigation. Mississippi's expected practices are somewhat similar to those in the field: an initial safety assessment which can be updated, for example. However, the structure of having one assessment tool for two factors is unusual and could contribute to practice confusions about safety vs. risk. It is critical for practitioners not to conflate safety and risk. The tool in current form, raises many concerns regarding its utility to assist in objective decision-making and provide support in generating overall findings of safety and risk and in planning for the child and caretakers.

---

[3] The Monitor reports that she has not received confirmation that a validation process was undertaken.

*Safety Assessment*

Questions in the Resource Safety and Risk Assessment tool do not reflect a comprehensive assessment of all possible safety factors. Some notable exclusions include:

- Whether the resource parent or facility caregivers are unwilling or unable to meet the child's needs for supervision, food, clothing and shelter;
- Assessment of whether the resource home or facility's environmental conditions are hazardous to the health and safety of the child;
- Assessment of factors influencing child vulnerability such as age, and/or developmental disability.

Also, it is not clear exactly how the determination of safe/unsafe is made once the investigator responds to questions in the Resource Safety and Risk Assessment tool. One set of procedures indicates that the determination is made by MACWIS based upon the answers provided in questions five through 10 of the tool.[4] Another statement within the tool indicates that a child is deemed to be unsafe by responses to one two-part question (question 7): a 'yes' response to question seven, which asks whether the child would be in danger if left in the placement *and* the selection of 'safety plan only', in response to the question of how the agency will address the fact that the child is not safe in the placement.[5] This second statement is also outlined within the MACWIS Technical Assistance Bulletin, dated 5/29/2015, Issue 24, effective June 13, 2015. DCPS reports that the safety determination generated by MACWIS may be overridden by a supervisor based on a child and family's circumstances. This is consistent with practice in other systems.

*Risk Assessment*

In Mississippi, the establishment of the level of risk of harm to a child appears to be determined solely by the worker completing the Resource Safety and Risk Assessment tool and is not automated based on responses to questions.[6] This presents a reliability issue, a lack of consistency in determining the level of risk. Additionally, several double-barreled questions are noted within the tool (questions 8, 9, and 11) in which one response is required for sub-questions which focus on separate issues. This may lead to inaccurate responses and an inability to understand which part of the question is being used in the overall answer.

Similar to observations above about safety, questions about risk do not reflect a comprehensive assessment of all possible risk factors generally viewed as important in determining the risk of harm to a child. Notable absences include:

---

[4] MACWIS Technical Assistance Bulletin, 5/29/15, Issue 24, page 23.
[5] MACWIS Technical Assistance Bulletin, 5/29/15, Issue 24, page 21.
[6] MACWIS Technical Assistance Bulletin, 5/29/15, Issue 24, page 23.

- Assessment of caregiver strengths and protective factors;
- Whether the resource parent or facility staff routinely describe the child in negative terms or acts towards the child in negative ways;
- Resource parent and/or facility staff characteristics such as mental health concerns, alcohol abuse, drug use and/or criminal activity;
- History of domestic violence in the home;
- History of previous special investigation reports and/or policy violations.

In cases involving maltreatment of children in care, especially where immediate safety is not an issue and the child is bonded with the caretaker, the goals of risk assessment and subsequent case planning are to enhance both placement support and child well-being. A good assessment can help identify protective factors, help meet the needs of the child and reduce the likelihood of placement disruption. The assessment of risk should be better tailored to not only potential risks but to also assessing the strengths and needs of the caretaker, including any secondary caretakers, and the child.

Jurisdictions consulted for this review apply a validated safety instrument during investigations of alleged maltreatment in foster care. Others do not use a formal risk assessment for children in care. California, for example, has worked with the Children's Research Center to develop a suite of Structured Decision Making assessments. During an assessment of alleged maltreatment in care, a safety assessment is applied by the investigator but the child's foster care worker is expected to conduct a Strengths and Needs Assessment versus the (family) risk assessment used during investigations. The Strengths and Needs Assessment contains a set of questions better tailored to the needs of a child or youth in foster care and their caretaker and informs planning.

## V.    SAFETY REVIEW UNIT PROCESS

CSSP considered the following documents in the assessment of MS' DCPS' Continuous Quality Improvement (CQI) Maltreatment in Care Review Process.

- The Modified Mississippi Settlement Agreement and Reform Plan (MSA).
- DCPS CQI Maltreatment in Care Review Process.
- Safety Review Unit Maltreatment in Care (MIC) Review Instrument.
- Maltreatment in Care Review Reference Guide.
- PowerPoint overview of the Maltreatment in Care Review.
- DCPS CQI Corrective Action Tracking Process.
- HEAT Ticket Reports.
- Notes from interviews with DCPS staff and managers conducted by the MS Monitor and staff.

The MSA Appendix B, the Implementation Plan for Year 3, enumerates the requirements for establishment of a process and infrastructure for maltreatment in care investigation review and response to identified issues (sub section II.C). In fulfilling the requirements, DCPS has established a special Safety Review Unit (SRU), located at the state office level within the CQI Unit. This unit is responsible for monitoring the quality of case practice in MIC investigations and tracking the initiation and status of remedial actions to address issues identified in the unit's reviews.

As part of the established process, the SRU is expected to conduct reviews of completed MIC investigations that are identified through weekly MACWIS reports. If a MIC investigation is not correctly recorded, it may not come to the attention of SRU.[7]

The DCPS CQI Maltreatment in Care Review Process (hereafter referred to as "guidelines"), generally describes how the SRU is to review a maltreatment in care investigation. These guidelines are accompanied by the Safety Review Unit Maltreatment in Care Review Instrument (instrument) which directs SRU reviewers to evaluate the Maltreatment in Care (MIC) Investigation by considering and responding to nearly 100 items about investigation timeliness, thoroughness and subsequent necessary actions. The Maltreatment in Care Review Reference Guide (reference guide) is an item-by-item reference document for the instrument. Our qualitative observations of these three tools are summarized in four areas:

---

[7] The Monitor found MIC investigations were not consistently reflected in weekly MACWIS reports during 2015 and not all investigations were subject to a timely MIC review as required. Based on this finding DCPS completed additional MIC reviews of investigations not previously identified.

- **Clarity of the guidelines.**
- **Completeness of review instrument.**
- **Alignment of guidelines, review instrument and reference guide.**
- **Reporting and monitoring remedial/corrective action.**

Overall, we found the guidelines, review instrument and reference guide to be adequate although there were a few problems of consistency and lack of clear direction that deserve attention. In particular, concepts of "safety concerns", "imminent safety concerns", "investigative practice" and "case practice issues" could be more clearly defined and the approach to assessing case practice could be better explained.

The tracking and monitoring of corrective action could be enhanced with data reporting for analysis of patterns and effectiveness of corrective actions. This would be in addition to the current timeliness reporting produced by the HEAT tracking system. We recommend that the state collect the appropriate data that would allow for quarterly reporting on trends in investigative and casework practice.

## A.    <u>Clarity of the Guidelines</u>

In general, the guidelines are straightforward. However, there are some inconsistencies and omissions that may cause confusion among reviewers and field staff. The timelines for SRU actions and the tracking process are clear. The timelines for field action, however, are slightly ambiguous. While the SRU is required to report to the field "imminent" safety concerns within 24 hours of identification, the field staff have five (5) calendar days to initiate corrective action. This is too long if there is an imminent safety concern and the guidelines note that best practice dictates that a child be removed immediately from a placement where the child "is at serious risk of harm". However, this raises the question of the timeline that the field is actually accountable for meeting when an imminent safety concern is identified.

As stated in the guidelines' Section I, Overview and Purpose, a MIC investigation review is not limited to determining the adequacy of the investigation. The agency also appears to use this review as an opportunity to assess casework practice to "strengthen … DCPS staff skills and abilities".

In keeping with this two-fold purpose, there are two types of corrective actions that the reviewer might identify depending on the concern raised. One type of corrective action is prompted by the safety concerns identified. The other type of corrective action is prompted by identified "casework practice deficiencies".

These two concerns are further delineated into three areas: "imminent concerns of safety for the child; case practice related concerns; and case specific concerns related to permanency and well-being". However, it is potentially unclear how these three areas align with "safety" and "practice deficiencies" as safety is not separately defined from imminent safety and the scope of practice deficiencies is not fully defined.

- In Section II, the guidelines first refer to safety concerns. Later in this section, there is a reference to "imminent safety concerns" that states that this type of concern "is a matter that requires a faster response time than normal procedures described above". Yet, there are two procedures previously described – safety issues requiring corrective action to be initiated within five (5) calendar days and casework practice deficiencies requiring a corrective action response within 20 calendar days. Thus, it is unclear what the "normal procedures" are. There is no description as to what constitutes a "safety concern" or whether SRU must report the concern to the field any earlier than five (5) days. In Section III, there are several examples provided as to what constitutes an "imminent safety concern" and, as noted, SRU must report an imminent safety concern to the field within 24 hours of identification.

- Section III provides examples of "case practice related concerns" (also called "case practice or systemic issues" and concerns about "case specific" conditions related to permanency and well-being). Presumably these both fall under the category of "casework practice deficiencies". The examples offered for case practice issues appear to relate to the quality of the investigation. The examples offered for child or case specific concerns appear to relate not to the investigation but to the ongoing casework practice. For instance, the example in this area that requires an initiation of corrective action within 20 days is: "The lack of critical services to meet a child's needs that are not specifically safety-related, such as independent living services when a child is nearing emancipation". As stated, this could be a concern about a systemic issue in that a resource is not readily available in an area. It could also be concern about a youth's status and the ongoing case management. It is not an example of a concern about the investigation practice.

## B.    Completeness of Review Instrument and Reference Guide

According to DFCS policy, "The standard investigative/assessment protocol applies to all DFCS investigations, but there are additional requirements that apply to special handling DFCS investigations/assessments." (Section B, Intake/Assessment Policy, Part F). The SRU instrument allows reviewers to assess if the process and issues identified in policy have been covered in the MIC investigations. The reference guide is a very helpful addition to the guidelines and instrument as it provides reviewers with the location of where to find policy guidance and where to look in the investigative record to complete a review item. For some items, the reference guide

instructs them to use their professional judgment and skills and provides criteria or questions to consider in making determinations.

There are two omissions in the instrument and reference guide that could contribute to a lack of clarity about the investigative quality and a missed opportunity to collect important information that could be included in a SRU report about investigative practice patterns. That is, some items do not easily allow the SRU reviewer to indicate when an investigative activity was not done at all and both the guidelines and the reference guide are silent as to the action SRU should take. These omissions are:

- DCPS policy requires investigators to determine if the alleged perpetrator has a maltreatment in care history. Investigators are to record their findings in the "investigation tab" in MACWIS.  Item 12 on the MIC review instrument directs the SRU reviewer to determine if various elements of this search have been completed for the placement setting.  The reference guide directs the SRU reviewer to look in the investigations tab in MACWIS for the information recorded.  However, the review instrument does not allow the SRU reviewer to indicate this search was <u>not</u> completed during the investigation or that elements of it were not completed. If this search is not documented in the investigations tab, the reference guide does not direct the SRU reviewer to complete the search.  This lack of direction creates the possibility that an investigation is not recognized as incomplete and that a foster home or facility that has a maltreatment history will continue to be overlooked.

- Item 34 asks the SRU reviewer to enter the date of Safety/Risk Assessment, but it does not indicate how the reviewer should record the instance when the assessment was not completed by the investigator.

## C.  <u>Alignment of Guidelines, Review Instrument and Reference Guide</u>

As previously noted, SRU employs three specific tools to conduct reviews of MIC investigations. The guidelines describe the general process to be followed by SRU. The MIC review instrument provides a means for SRU reviewers to document their assessment. The MIC Review Reference Guide provides item-by-item guidance to reviewers. All three of these tools should be aligned (and reference one another) to promote efficient and effective reviews.  Generally, these three tools are aligned, although they are not mutually referenced and there are points that could be clarified.

Specifically assessment of casework practice, the stated second purpose of the MIC investigation review could be clarified. The guidelines state that this assessment is to help "strengthen … DCPS staff skills and abilities." However, the information that would contribute to strengthening

DCPS staff skills and abilities may be difficult to obtain based on what is available in the investigation record and the limitations of the MIC review. The review instrument has a limited number of items that the reviewers are asked to consider for this purpose and the directions in the reference guide are also limited.

First, there is inconsistency between the MIC review instrument and the guidelines. The review instrument does not have a specified "Casework Practice" section.  Instead, it has one part, Part B, labeled "Case Practice".  However, most of the items focus on investigative practice:

- Item 26 *"Did the investigator review all of the cases of those involved (victim children, other children, placement)?"* The reviewer is to respond either yes or no. While this appears to ask about the investigation only, the related section in the reference guide states that if the investigator did do this, it should be documented in the investigative narratives in MACWIS.  The reference guide further states *"Doing so allows for the investigator to have a full knowledge of the victim(s) background, any medical or mental health issues, or permanency issues that could have an effect on how the report is investigated."* But, it is not clear how the investigator or the SRU reviewer is to use the information gained.  The instrument does not have a follow-up question about what was learned or why the investigator may not have done the review. The SRU reviewer does have an opportunity to provide information in the "Practice Related Findings" narrative space on the review instrument.

- Item 37 asks, *"Was the Risk/Safety Assessment thorough?"* The reviewer is to respond either yes or no. If the response is no, the SRU reviewer is to provide an explanation in Item 38. Again, this appears to ask about the investigation only. The related section of the reference guide offers criteria and questions for the SRU reviewer to consider in arriving at a judgment about "thoroughness".

One question that may pertain to case practice is, *"What does the Safety/Risk assessment say about the child's perception of the placement and how it meets their needs?"* If an investigator recorded answers to this question and the child had serious concerns about the placement meeting his/her needs, it is not clear where the SRU reviewer would record this information. Again, it could be included in the "Practice Related Findings" narrative space on the review instrument but it is not clear.

Item 45 asks the SRU reviewer to determine if the placement was *"thoroughly evaluated for safety, permanency and child well-being"*. The reviewer is to respond either yes or no and use Item 46 to *"elaborate on how the placement was evaluated"*. These two items seem to be the only two items directly related to casework practice, not investigative practice. However, using these items to assess casework practice seems problematic for several reasons.  First, policy

requires the County Of Responsibility (COR) worker – not the MIC investigator -- to evaluate the placement of the child "in terms of safety, permanency and well-being regardless of the outcome of the investigation." However, the reference guide directs the SRU reviewer to look at the investigative narrative to determine if this has been done. These three conditions should be assessed separately and the SRU reviewer should be able to provide an evaluation of these activities separately. Furthermore, it is not clear how the response to this item relates to some of the examples of "imminent safety" provided in the guidelines.

The reference guide does not offer clarification about how the SRU reviewer should complete Item 45. The following statement is in the reference guide, *"A description of the child's placement setting is necessary in determining how it is most appropriate to meet the child's individual needs for* **safety** *(demonstrated bond is observed or documented through contacts with the resource parents and foster child. Caregivers show commitment to safety and risk concerns of foster child, home is free from safety hazards*), **permanency** *(is the caretaker committed to the child's permanent plan and the child's need for permanency?), and* **well-being** *(if physical health needs, mental health needs, or educational needs have been identified for the child as a result of their initial health screening, comprehensive health assessment, dental exam, mental health assessment, educational assessment, developmental assessment, or any other type of assessment or evaluation, and if the current placement provider is supporting/meeting those needs*). * (FCR-P.A.D. Reference Guide 03-28-13 Draft)"*

In looking at both the instrument and reference guide, it is not readily apparent where the SRU reviewer gains insight as to whether there is a "threat of placement disruption that DCPS may be unaware of or has not responded to"? Nor is it clear where the SRU reviewer would learn and record whether there is a "lack of critical services to meet a child's needs… such as independent living services."

## D.    Reporting and Monitoring Remedial/Corrective Action

SRU is also responsible for monitoring "the status of the remedial actions resulting from reviews". The guidelines lay out the process for SRU supervisor notification of the appropriate field authorities of the kind of corrective action to be taken and then uses the HEAT tracking system to track whether a corrective action is initiated. If it is not initiated within the specified time frames (5 or 20 days) the SRU supervisor follows-up again with the appropriate authorities. The HEAT tracking system is useful for monitoring the timeliness of corrective actions. It does not provide detail on what kind of issue gave rise to the corrective action or the nature of the corrective action (for example training or new quality assurance procedure might be initiated).

The guidelines state that the data collected in the review instruments will be compiled into a MIC Review Report for distribution to leadership.  However, there is no suggested format for this report and the frequency is "to be determined".  This would seem to be a very useful report and one that would be helpful as the focus of at least quarterly leadership discussions.  For example in Tennessee, the Office of Quality Control completes a review of special investigations quarterly and prepares a report. Other reports that were referenced in the guidelines without discussion of their application include reports reflecting state, regional, and county performance and reports that compile aggregate data on safety and casework-related findings that identify strengths and areas needing improvement.  Such reports would also be useful to identify patterns in practice strengths and deficiencies that would prompt strategies for change or maintenance. Information that would be useful to have at least quarterly to analyze for patterns include:

- Number of MIC investigations reviewed by SRU compared to the total number of MIC investigations completed during a time period.  This information would help ensure that SRU is reviewing all MIC investigations or determine where the communication chain about the investigations is weak.

- Number and percent of MIC investigations reviewed that fall into one of the following categories in order to understand what improvement priorities might be:
  - inappropriate for their review – they were not MIC or should not have been MIC
  - Safety issue
    - Imminent distinguished from "non-imminent"
  - Practice issue
    - Case practice/systemic reviews distinguished from case/child specific permanency and well-being issues
  - Both
  - None

As noted above, important practice information may be added in narrative form in open-ended items on the review instrument and, thus, not easily aggregated and analyzed to direct improvement actions. For example, item 46 captures the SRU reviewer's assessment of the investigator's evaluation of the child's safety, permanency and child well-being. Consideration should be given to how information in similar narrative response items might be captured in a way that is easily coded for analysis.

## VI.    PRELIMINARY REVIEW OF TRAINING FOR STAFF OF THE SPECIAL INVESTIGATIONS UNIT

CSSP staff undertook a very preliminary review of the training requirements and offerings provided to staff of DCPS' Special Investigations Unit (SIU) who are responsible for conducting investigations of reports alleging maltreatment of a child while in DCPS custody.  A full review would require a detailed assessment of the training competencies, the curriculum and the competency testing done post training.

In this preliminary review, CSSP staff reviewed:

- Copies of the facilitators and participants guides for the required MS DCPS Pre-Service Training for Child Welfare Professionals, a four week training program developed by the Child Welfare Training Academy, University of Mississippi, Department of Social Work, last revised in fall 2015.
- Training transcripts provided to the Court Monitor in June 2016 for the Director of SIU, investigators and supervisors which identifies the training dates, title and number of training hours credited from 2010 – 2016.
- Interview and Interrogation Techniques by Wicklander-Zulawski & Associates, Inc. Downers Grove, IL. (2003), participants handbook from training provided for SIU staff, supervisors and the Director in 2015.
- Summaries of interviews with DCPS staff and managers conducted by the MS Monitor and staff.

There is currently no formal specialized training for workers assigned to the SIU and charged with investigating alleged maltreatment of children in custody. Reportedly, all SIU investigators have prior investigations experience. It is not clear to CSSP whether that experience is in conducting child or adult protection investigations.

From interviews with investigative workers, it appears that, once assigned to SIU, workers primarily receive on-the job training from their supervisors and an orientation from the SIU manager. SIU workers are also afforded opportunities for regular in-service training that the Department provides to workers. From the training transcripts and interviews, it appears that most SIU staff have participated in training that is made available at various times to workers on child welfare policies and practices, investigative practice, safety assessment as well as general interviewing techniques. The SIU director reported to the Court Monitor that additional training is to be provided in September 2016. At that time, training objectives and focus were not known to the Director.

A review of the training records of the SIU director, supervisors and SIU investigators indicates that the majority of SIU investigators and supervisors participated in the Wicklander-Zulawski & Associates Interview and Interrogation training held in April 2015. Otherwise, there is not much commonality across training records. Further, the records reflect that the topics are not specifically related to child protection investigations and not to specifically to maltreatment in care investigations.

Based on our experience with multiple jurisdictions across the country, at minimum, staff conducting investigations of maltreatment in care, or "special" investigations, need to receive specialized training in addition to the multi-day pre-service training on child welfare policies and practices, interviewing skills and investigative practices that all investigative workers receive. In some systems that additional specialized training is conducted by a supervisor who also provides on-the-job coaching. However, other systems have formalized the specialized training and require a multi-day training on the topic of conducting investigations of alleged maltreatment in care. For specialized investigators assigned to maltreatment in care investigations, training beyond conducting a traditional investigation must be geared to the types of "special" situations investigators are likely to encounter. These include, for example, investigations involving staff of facilities and addressing, for a child or youth, the dynamics of a foster care situation or that of residing in a facility.

Based on the materials reviewed to date, we are unable to make an informed assessment of the quality of training for SIU staff at this time. We do however have a few observations. First, from the cursory review of the pre-service training documents, there appear to be inconsistencies between what is being taught about investigative practice in general and other policy and practice documents from the state. Further, the pre-service training does not seem to reference the existence of the SIU or the procedures for handling cases that should be investigated by the SIU. Second, there was considerable variability in SIU worker reports of the amount and scope of specialized training received. From those interviews, the absence of a specialized curriculum and the training records of staff, it appears training for SIU investigators is not formalized or consistent.

Lastly, the SIU Director shared Interview and Interrogation Techniques handbook by Wicklander-Zulawski & Associates with the Court Monitor as evidence of specialized training received by SIU investigators and we reviewed the document. It is a 198-page bound copy of a participant handbook which contains mostly bulleted points in outline form. Although it is possible that the training itself went beyond the document provided, the content of the document does not address SIU investigations. It is primarily focused on procedures to be used in investigations of felonies by law enforcement personnel and as such, seems fairly tangential to job requirements of an SIU investigator.

Fully assessing the quality of training for SIU staff would require a comprehensive review of pre-service training competencies, training materials and competency tests as well as a more complete understanding of in-service training requirements and opportunities for staff. Assessing the quality of training offered should also include opportunities to learn from staff, direct supervisors and managers about the training provided and their views of how and whether it prepares them for the specific work required of an SIU investigator. Further, we believe it will be useful to incorporate the findings from the maltreatment in care investigations case record review in future consideration about the training needs of staff.

### ATTACHMENT –
### Bios of CSSP Staff

**Judith Meltzer** is the Deputy Director at the Center for the Study of Social Policy (CSSP), a non-profit organization located in Washington, DC with offices in New York and Los Angeles whose mission is to develop and promote public policies and practices that strengthen families and help communities to produce equal opportunities and better futures for all children. As Deputy Director of CSSP, Ms. Meltzer is responsible for managing work related to child and family well-being and public system reform, strategies for community change and local, state and federal policy initiatives.

Her recent work has focused on the development of policies and strategies for child welfare reform and the development of community partnerships for the protection of children. She serves as the federal Court-appointed Monitor of the District of Columbia's child welfare system and New Jersey's child welfare system, both of which are subject to oversight as the result of class action litigation. She is a member of a 5-member Technical Assistance Committee to the Tennessee Department of Children's Services, and served on a similar Panel in the State of Connecticut, each of which were established as part of Court-ordered settlement agreements to improve child welfare systems. She has also worked with other jurisdictions working to improve their child welfare services, including Arkansas, Missouri, Kansas, New York, Mississippi and Washington State. Ms. Meltzer is one of a handful of pioneers in seeking productive, less adversarial approaches to resolving class action child welfare litigation – resolving litigation in a way that supports and builds strong public systems, rather than attacking or undermining them. In 2005, she was honored by the American Public Human Services Association for her work in this area as the recipient of the Peter Forsythe Award for Leadership in Public Child Welfare.

Ms. Meltzer has a Master's Degree in Social Welfare Policy from the University of Chicago.

**Gayle Samuels** is a Senior Associate with the Center for the Study of Social Policy. She joined the Center in June 2004 as part of the team responsible for monitoring the performance of child welfare systems operating under class action litigation and supporting other state child welfare system reforms. She is also a member of the team that designed and implemented an Institutional Analysis to understand structural features which contribute to overrepresentation of African-American children in the child protection system in counties in the state of Michigan and is currently working on Analyses in counties in California and Virginia. Previously, Gayle worked at the New York City Administration for Children's Services where she focused on assessing and improving case practice. She has worked directly with adjudicated youth and partnered with attorneys to represent children and adolescents in dependency, status offense, and juvenile delinquency cases in Family Court. Gayle also directed a Head Start based research and intervention project aimed at violence prevention.

**Sarah Morrison** leads CSSP's growing body of work on more effective use of evidence for learning and improving outcomes for children, families and communities. Previously, she helped advance CSSP's **child welfare system reform** efforts as co-director of the Child Welfare and Supportive Housing Resource Center providing technical assistance to five federally funded demonstration sites around the country. She was also one of two federally appointed monitors of a class action consent decree in Georgia. Prior to joining CSSP, Morrison was a senior evaluator at the U.S. Government Accountability Office (GAO). While there, she was responsible for designing, managing and reporting on evaluations of programs authorized or expanded by the Family Support Act of 1988, including transitional benefits and child support enforcement. Morrison's additional experience includes management consulting in Ernst and Young's public sector practices in Chicago and Washington, D.C., and public opinion research polling and teaching at the University of Missouri at St. Louis. She is a graduate of Mount Holyoke College and the University of Chicago's School of Social Service Administration.

**Lisa Primus** works on CSSP's child welfare team, currently focusing on the **pregnant and parenting youth in foster care** and **Youth Thrive** initiatives. She is also part of the team responsible for monitoring and providing technical assistance to child welfare systems operating under federal consent decrees. Prior to joining CSSP she was a trainer with the Research Foundation of CUNY where she trained child welfare workers in New York City on best practice for safety and risk assessments with a focus on promoting the transfer of learning. Primus also worked in partnership with private agencies providing them with technical assistance in support of plans for sustaining the transfer of learning.  She has also directed a foster care placement prevention program and department of social services in a family homeless shelter in New York City. She is a graduate of the Temple University, and Columbia University's Graduate School of Social Work.

**Ex. 3A**

## Hotline Call Review Instrument - - Mississippi 2016

* 1. Reviewer's name:

[                                    ]

* 2. Sample ID:

[                                    ]

* 3. Intake ID:

[                                    ]

* 4. Was are the date and time of the call?

|  | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| Date/Time: | [  ] / | [  ] / | [  ] | [  ] : | [  ] | [ - ] |

## Hotline Call Review Instrument - - Mississippi 2016

* 5. Was the Hotline worker appropriate in tone and content in talking with the reporter?

○ Yes

○ No (Specify.)

[                                                                    ]

## Hotline Call Review Instrument - - Mississippi 2016

\* 6. Which of the following did the Hotline worker collect or attempt to collect from the reporter?

| | Response |
|---|---|
| Reporter information | |
| Alleged victim information | |
| Physical description/address of home | |
| Primary caretaker information | |
| Relative/witness/secondary caretaker information | |
| Other household members | |
| Family of Native American descent | |
| Family's primary language | |
| Alleged perpetrator information | |
| Description of maltreatment for each child | |
| Date alleged victim(s) last seen | |
| Whether reporter confronted/discussed the allegations with the alleged perpetrator(s) | |
| Alleged perpetrator's response to confrontation/discussion of allegations | |
| Safety concerns for the MDCPS staff responding | |
| Additional pertinent information | |

Comments:

3

**Hotline Call Review Instrument - - Mississippi 2016**

* 7. Did the Hotline worker provide an opportunity for the reporter to offer additional information?

○ Yes

○ No

**Hotline Call Review Instrument - - Mississippi 2016**

* 8. Select which of the following areas were accurately documented by the Intake worker on the paper child intake form, including accurately reporting whether the reporter could not or refused to provide the information:

|  | Documented? |
|---|---|
| Reporter information | |
| Alleged victim information | |
| Physical description/address of home | |
| Primary caretaker information | |
| Relative/witness/secondary caretaker information | |
| Other household members | |
| Family of Native American descent | |
| Family's primary language | |
| Alleged perpetrator information | |
| Description of maltreatment for each child | |
| Date alleged victim(s) last seen | |
| Whether reporter confronted/discussed the allegations with the alleged perpetrator(s) | |
| Alleged perpetrator's response to confrontation/discussion of allegations | |
| Safety concerns for the MDCPS staff responding | |
| Additional pertinent information | |

Comments:

## Hotline Call Review Instrument - - Mississippi 2016

* 9. Select the choice which describes the transfer of information from the paper Child Intake form into MACWIS:

|  | Fully and accurately transcribed to MACWIS | Inaccurately transcribed to MACWIS | Omitted from MACWIS | N/A |
|---|---|---|---|---|
| Reporter information | ○ | ○ | ○ | ○ |
| Alleged victim information | ○ | ○ | ○ | ○ |
| Physical description/address of home or facility | ○ | ○ | ○ | ○ |
| Primary caretaker information | ○ | ○ | ○ | ○ |
| Relative/witness/secondary caretaker information | ○ | ○ | ○ | ○ |
| Other household members | ○ | ○ | ○ | ○ |
| Family of Native American descent | ○ | ○ | ○ | ○ |
| Family's primary language | ○ | ○ | ○ | ○ |
| Alleged Perpetrator information | ○ | ○ | ○ | ○ |
| Description of maltreatment for each child victim | ○ | ○ | ○ | ○ |
| Date victim last seen or maltreatment witnessed | ○ | ○ | ○ | ○ |
| Did reporter confront or discuss allegations with the alleged perpetrator | ○ | ○ | ○ | ○ |
| Alleged perpetrator's response to confrontation or discussion | ○ | ○ | ○ | ○ |
| Safety concerns for the social worker | ○ | ○ | ○ | ○ |
| Additional pertinent information | ○ | ○ | ○ | ○ |

7

## Hotline Call Review Instrument - - Mississippi 2016

\* 10. What time was the documentation completed in MACWIS?

|  | hh | mm | AM/PM |
|--|----|----|-------|
| MACWIS documentation completed at: | [ ] | : [ ] | [ - ] |

\* 11. Did the Hotline worker accurately indicate the report as a 'Resource Report'?

○ Yes

○ No

\* 12. During the call, did the Hotline worker inform the reporter of MDCPS' responsibilities?

○ Yes

○ No

**Hotline Call Review Instrument - - Mississippi 2016**

13. Please enter comments based on your review of this hotline report.

**Ex. 3B**

## Screen-out Decisions - - Mississippi 2016

### Intake and allegations

* 1. Reviewer's name:

* 2. Sample #:

* 3. Intake ID:

* 4. What is the child(ren)'s ID #?

| Child 1's ID #: | |
| Child 2's ID #: | |
| Child 3's ID #: | |
| Child 4's ID #: | |
| Child 5's ID #: | |
| Child 6's ID #: | |

1

* 5. What is the date the child entered custody prior to this report?

|  | MM | DD | YYYY |
|---|---|---|---|
| Child 1's date of entry to custody: | | / | / |
| Child 2's date of entry to custody: | | / | / |
| Child 3's date of entry to custody: | | / | / |
| Child 4's date of entry to custody: | | / | / |
| Child 5's date of entry to custody: | | / | / |
| Child 6's date of entry to custody: | | / | / |

* 6. What are the date and time of this report?

|  | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| Date / Time: | | / | / | : | | - |

2

## Screen-out Decisions - - Mississippi 2016

### Intake and allegations

\* 7. Were all the Intake screens in MACWIS completed in their entirety by the Intake worker?

○ Yes

○ No (Specify.)

[ ]

\* 8. Did the allegation(s) involve a child who was in the custody of MDCPS at the time of the alleged maltreatment?

○ Yes

○ No (Explain below and see the QA team for this review before selecting 'Next' below to leave this page.)

[ ]

3

## Screen-out Decisions - - Mississippi 2016

Duplicate report?

* 9. Based on documentation in the record, was the report screened out because it was deemed to be a duplicate report?

◯ Yes

◯ No

**Screen-out Decisions - - Mississippi 2016**

Duplicate report?

10. Since the report was screened out because it involved a duplicate report, please answer each of the following based upon the information documented in the Intake Report screens of MACWIS:

|  | Yes/No |
|---|---|
| This call involved the **same alleged victim(s)** as a previous report(s) | |
| This call involved the **same alleged perpetrator(s)** as a previous report(s) | |
| This call involved the **same type(s) of alleged child maltreatment** as a previous report(s) | |
| This call involved the **same incident** as a previous report(s) | |

## Screen-out Decisions - - Mississippi 2016

Resource parent, staff?

* 11. Was the report screened out because the allegation(s) did not involve behavior or non action by a resource parent or facility staff?

○ Yes

○ No

## Screen-out Decisions - - Mississippi 2016

### Resource parent, staff?

12. Was the decision to screen out the reported maltreatment correctly based upon the following?

| | Yes/No |
|---|---|
| No evidence that alleged maltreatment was the result of action or inaction by a resource parent or facility staff | |
| No evidence that alleged maltreatment occurred in the resource home or facility | |
| No evidence that alleged maltreatment involved a child in custody | |

## Screen-out Decisions - - Mississippi 2016

### Maltreatment?

\* 13. Was the report screened out because allegations did not meet the legal definition of maltreatment (abuse or neglect)?

○ Yes

○ No

## Screen-out Decisions - - Mississippi 2016

Maltreatment?

14. Does the evidence in MACWIS support the response to the screening question concerning whether there was an allegation that met the legal definition of an abused or neglected child?

○ Yes

○ No (Specify.)

[                                        ]

## Screen-out Decisions - - Mississippi 2016

### Other?

\* 15. Based on documentation in the record, was the report screened out for any reason not previously mentioned?

○ No

○ Yes (Specify.)

```
┌─────────────────────────────────────────────────────┐
│                                                     │
│                                                     │
│                                                     │
└─────────────────────────────────────────────────────┘
```

## Screen-out Decisions - - Mississippi 2016

### Decision making

\* 16. Based on documentation in the record, indicate where the decision to screen out the report was made.

○ Mississippi Central Intake, MCI

○ Special Investigations Unit, SIU

○ County (Specify.)

## Screen-out Decisions - - Mississippi 2016

## Decision making

17. Is there evidence in the documentation that the county referred the case to SIU or discussed referral of the case with SIU?

○ A referral was made to SIU (Specify date.)

○ There was only discussion with SIU (Specify date.)

○ None of the above

Specify date:

[                                                    ]

## Screen-out Decisions - - Mississippi 2016

### Decision making

\* 18. Did a supervisor approve the decision to screen out the report?

○ No

○ Yes (Specify date.)

[                                        ]

\* 19. Was the decision to screen out the report supported by the documentation in the record? (Check all that apply.)

☐ Yes

☐ No, allegation(s) met the legal definition of maltreatment (abuse or neglect)

☐ No, allegation(s) involved action or inaction by a resource parent, facility staff or occurred in the resource home or placement facility

☐ No, allegation(s) did not involve a duplicate report

13

## Screen-out Decisions - - Mississippi 2016

### QA review

* 20. Was the decision to screen out the report of alleged maltreatment of a child in custody reviewed by the MDCPS state level QA review process?

○ No

○ Yes (Specify date.)

[                                    ]

## Screen-out Decisions - - Mississippi 2016

## QA review

21. Was the decision to screen out the report validated by the MDCPS state level QA review process?

○ No

○ Yes (Specify date.)

```
┌─────────────────────────────────┐
│                                 │
└─────────────────────────────────┘
```

**Screen-out Decisions - - Mississippi 2016**

Comments

22. Please enter comments about the review of these records.

**Ex. 3C**

## Mississippi Maltreatment In Care/MIC Review 2016

### 1. Identifying information

* 1. Case Reviewer:

* 2. Sample #:

* 3. Intake ID#:

* 4. Reporter type:

○ Anonymous

○ Biological parent

○ Child

○ Family member (adult)

○ Mandated (required) reporter

○ Other (Specify.)

## Mississippi Maltreatment In Care/MIC Review 2016

### 2. Intake - Report

* 5. Date and time Mississippi Central Intake (MCI) received report:

|  | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| Date/Time: | | / | / | : | | - |

1

* 6. What is the type of placement at the time of the report?

[                              ]

* 7. Provide the **child ID #** of each alleged child victim.

Alleged child victim 1 [                              ]

Alleged child victim 2 [                              ]

Alleged child victim 3 [                              ]

Alleged child victim 4 [                              ]

Alleged child victim 5 [                              ]

* 8. Provide the **date that each alleged child victim entered custody** (The placement date most recent to the time related to the current report. Use mm dd yyyy format.)

Alleged child victim 1 [                              ]

Alleged child victim 2 [                              ]

Alleged child victim 3 [                              ]

Alleged child victim 4 [                              ]

Alleged child victim 5 [                              ]

* 9. Date of alleged incident, according to the reporter.

◯ Unknown to reporter

◯ Known to reporter (Specify.)

[                              ]

**Mississippi Maltreatment In Care/MIC Review 2016**

3. Intake- Report (continued)

* 10. Are you able to complete the review of this investigation?

◯ Yes

◯ No

2

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

## 4. Review cannot be completed

11. Reason review could not be completed on this case: (Before selecting a response, please stop and consult with the QA team for this review.)

○ The report of alleged maltreatment was made outside the review period of July 1, 2015 through December 31, 2015

○ Coding error - this is not a report of maltreatment by a placement provider

○ Child was not in custody at the time of alleged maltreatment

○ Case record cannot be located

○ Other (Specify.)

[ ]

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

## 5. Intake - Report (continued)

* 12. Manner of report to Mississippi Central Intake (MCI):

○ Hotline report

○ Phone (other than Hotline)

○ Face to face

○ Correspondence

○ E-report

○ Other (Specify.)

[ ]

* 13. County of Responsibility (COR):

[ ]

\* 14. County of Service (COS):

Mississippi Maltreatment In Care/MIC Review 2016

6. Intake - Response

\* 15. Did the Intake worker search the following for information about persons identified in the report?

| | Searched? |
|---|---|
| MACWIS | |
| METSS | |
| MAVERICS | |

\* 16. As a part of the intake process, did the Intake worker properly identify that at least one alleged child victim was in MDCPS custody?

○ Yes

○ No

Mississippi Maltreatment In Care/MIC Review 2016

7. Intake - Response (continued)

\* 17. Indicate who was notified of the report:

○ Special Investigation Unit (SIU)

○ County

○ Both of the above

\* 18. Did this report involve felony abuse allegation?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

8. Intake - Response (continued)

19. The report involves felony abuse allegations, indicate who was notified of the allegation(s).

|  | Law enforcement | District Attorney |
|---|---|---|
| Notified? | | |

**Mississippi Maltreatment In Care/MIC Review 2016**

9. Investigation - Assignment

* 20. At what date and time was the investigation assigned to an investigator?

| | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| Date / Time: | | / | / | : | | - |

* 21. Select the supervisor responsible for the investigation:

* 22. What time frame was deemed appropriate by the investigator or supervisor to initiate the investigation?
(Please note this response time for upcoming questions related to seeing the alleged victim child[ren].)

○ Immediate

○ Within 24 hours

5

\* 23. Does the information documented in the record at the time the case was assigned to the investigator support the response time determination?

○ Yes

○ Unable to determine

○ No (Explain.)

> [ ]

**Mississippi Maltreatment In Care/MIC Review 2016**

10. Investigation - Alleged Victim Children; Child 1

\* 24. Please provide the date of birth for alleged child victim 1:

[ ]

\* 25. Which of the following allegation(s) in this report relate to alleged child victim 1?

| Abandonment | [ ] |
| Emotional Abuse/Neglect | [ ] |
| Exploitation | [ ] |
| Medical Neglect | [ ] |
| Physical Abuse | [ ] |
| Physical Neglect | [ ] |
| Sexual Abuse | [ ] |

* 26. What is alleged victim 1's race?

- ◯ Alaska Native / American Indian
- ◯ Asian
- ◯ Black or African American
- ◯ Native Hawaiian / Other Pacific Islander
- ◯ White

* 27. Based on the documentation in the record, is alleged child victim 1 identified as Hispanic?

- ◯ Yes
- ◯ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 11. Investigation - Alleged Victim Children; Child 1 (continued)

* 28. Were the following persons relative to alleged child victim 1 notified of the allegations within 24 hours?

|  | Child's parent/guardian (N/A if whereabouts unknown or TPR) | Regional ASWS | Regional Director | Child's Guardian Ad Litem | Assigned caseworker | Resource/facility licensing worker |
|---|---|---|---|---|---|---|
| Alleged child victim 1 | | | | | | |

* 29. Did the investigator have face to face contact with alleged child victim 1 within 24 hours of the receipt of the report at Intake?

- ◯ Yes
- ◯ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 12. Investigation - Alleged Victim Children; Child 1 (continued)

7

30. Does documentation in the record provide evidence of the following?

| | Were attempts made to see the child's at his/her home or facility? | Were attempts made to see the child at any of these other locations? | Were attempts made on a daily basis to see the child until the child was seen? |
|---|---|---|---|
| Alleged child victim 1 | | | |

Specify "other" locations

---

**Mississippi Maltreatment In Care/MIC Review 2016**

13. Investigation - Alleged Victim Children; Child 1 (continued)

31. Is there documentation in the record that the investigator ever saw alleged child victim 1 during this investigation?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

14. Investigation - Alleged Victim Children; Child 1 (continued)

32. According to documentation in the record, what are the date and time of the investigator's initial face-to-face contact with alleged child victim 1?

| | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| date/time: | | / | / | | : | - |

33. Was alleged victim 1 interviewed in private, as age appropriate, at any point during the investigation?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

### 15. Investigation - Alleged Victim Children; Child 1 (continued)

34. Did interviews and contacts with alleged child victim 1 **address** the following?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of the child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 1 | | | | | | | | |

35. Did interviews and contacts with alleged child victim 1 **adequately and appropriately** address the following topics?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 1 | | | | | | | | |

### Mississippi Maltreatment In Care/MIC Review 2016

### 16. Investigation - Alleged Victim Children; Child 1 (continued)

* 36. What is alleged perpetrator 1's relationship to alleged child victim 1?
   (If more than one alleged perpetrator, please designate as 1, 2 and 3 and answer the following questions accordingly.)

| | Alleged Perpetrator 1 |
|---|---|
| Alleged child victim 1 | |

* 37. Was alleged perpetrator 1 interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

### Mississippi Maltreatment In Care/MIC Review 2016

9

17. Investigation - Alleged Victim Children; Child 1 (continued)

38. Were efforts made to interview alleged perpetrator 1?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

18. Investigation - Alleged Victim Children; Child 1 (continued)

39. Did the investigator's interview with alleged perpetrator 1 **address** the following?

| | Was the interview in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | | |

40. Did interviews with alleged perpetrator 1 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | |

comments for any "no" response(s):

[                                    ]

**Mississippi Maltreatment In Care/MIC Review 2016**

19. Investigation - Alleged Victim Children; Child 1 (continued)

10

* 41. Are there additional alleged perpetrators?

　　○ Yes

　　○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 20. Investigation - Alleged Victim Children; Child 1 (continued)

42. What is alleged perpetrator 2's relationship to alleged child victim 1?

| | Alleged Perpetrator 2 |
|---|---|
| Alleged child victim 1 | |

43. Was alleged perpetrator 2 was interviewed during the investigation?

　　○ Yes

　　○ No

　　○ N/A (Specify.)

　　　　[                              ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 21. Investigation - Alleged Victim Children; Child 1 (continued)

44. Were efforts made to interview alleged perpetrator 2?

　　○ Yes

　　○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 22. Investigation - Alleged Victim Children; Child 1 (continued)

11

45. Did the investigator's interview with alleged perpetrator 2 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | | |

46. Did interviews with alleged perpetrator 2 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 23. Investigation - Alleged Victim Children; Child 1 (continued)

47. Are there additional alleged perpetrators?

◯ Yes

◯ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 24. Investigation - Alleged Victim Children; Child 1 (continued)

48. What is the alleged perpetrator 3's relationship to alleged child victim 1?

| | Alleged Perpetrator 3 |
|---|---|
| Alleged child victim 1 | |

12

49. Was alleged perpetrator 3 was interviewed during the investigation?

◯ Yes

◯ No

◯ N/A (Specify.)

[                                        ]

**Mississippi Maltreatment In Care/MIC Review 2016**

25. Investigation - Alleged Victim Children; Child 1 (continued)

50. Were efforts made to interview alleged perpetrator 3?

◯ Yes

◯ No

**Mississippi Maltreatment In Care/MIC Review 2016**

26. Investigation - Alleged Victim Children; Child 1 (continued)

51. Did the investigator's interview with alleged perpetrator 3 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

Comments:

[                                        ]

52. Did interviews with alleged perpetrator 3 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to the child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

53. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 27. Investigation - Alleged Victim Children; Child 1 (continued)

\* 54. As documented in the record, indicate to whom related to alleged child victim 1 the investigator spoke.

○ Assigned worker (COR/COS) only

○ Assigned worker's supervisor only

○ Assigned worker and assigned worker's supervisor

○ None of the above

## Mississippi Maltreatment In Care/MIC Review 2016

### 28. Investigation - Alleged Victim Children; Child 1 (continued)

\* 55. What is the date that the assigned worker (COR/COS) first made face to face contact with alleged victim child 1 after the report of alleged maltreatment?

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | ☐ | / ☐ | / ☐ |

14

* 56. Select which best describes the contact between the child and their assigned worker during the investigation, after the initial contact date above.

Contact with assigned worker

| | |
|---|---|
| Alleged victim child 1 | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 29. Investigation - Alleged Victim Children; Child 1 (continued)

* 57. Did the investigator interview/obtain information about alleged child victim 1 from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

Information obtained?

| | |
|---|---|
| Medical personnel | |
| School personnel | |
| Daycare/Childcare personnel or babysitter | |
| Neighbors | |

* 58. Did alleged child victim 1 need a medical evaluation to assist in the investigation?

○ No

○ Yes (Explain.)

| |
|---|
| |

## Mississippi Maltreatment In Care/MIC Review 2016

### 30. Investigation - Alleged Victim Children; Child 1 (continued)

15

59. Is there documentation in the record that alleged child victim 1 received a medical evaluation to inform the investigation?

○ No

○ Yes (Specify date.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 31. Investigation - Alleged Victim Children; Child 1 (continued)

\* 60. Does the documentation in the record evidence the need for any other professional evaluation/exam (e.g., mental health or forensic) for alleged child victim 1 to assist in the investigation?

○ No

○ Yes (Explain.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 32. Investigation - Alleged Victim Children; Child 1 (continued)

61. Is there documentation in the record that alleged child victim 1 received the professional evaluation/exam (e.g., mental health or forensic) to inform the investigation?

○ No

○ Yes (Specify date.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 33. Investigation - Alleged Victim Children; Child 1 (continued)

16

\* 62. What was the finding of this investigation related to alleged child victim 1? (Select substantiated if **any** of the allegations involving alleged child victim 1 were substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify.)

[                                                                                    ]

\* 63. Was alleged child victim 1 removed from his/her placement during this investigation?

○ Yes

○ No

\* 64. Are there other alleged child victims?

○ Yes

○ No

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 34. Investigation - Alleged Victim Children; Child 2

\* 65. Please provide the date of birth for alleged child victim 2:

[                                        ]

17

* 66. Which of the following allegation(s) in this report relate to alleged child victim 2?

| | |
|---|---|
| Abandonment | |
| Emotional Abuse/Neglect | |
| Exploitation | |
| Medical Neglect | |
| Physical Abuse | |
| Physical Neglect | |
| Sexual Abuse | |

* 67. What is alleged victim 2's race?

○ Alaska Native / American Indian

○ Asian

○ Black or African American

○ Native Hawaiian / Other Pacific Islander

○ White

* 68. Based on the documentation in the record, is alleged child victim 2 identified as Hispanic?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

35. Investigation - Alleged Victim Children; Child 2 (continued)

* 69. Were the following persons relative to alleged child victim 2 notified of the allegations within 24 hours?

| | Child's parent/guardian (N/A if whereabouts unknown or TPR) | Regional ASWS | Regional Director | Child's Guardian Ad Litem | Assigned caseworker | Resource/facility licensing worker |
|---|---|---|---|---|---|---|
| Alleged child victim 2 | | | | | | |

* 70. Did the investigator have face to face contact with alleged child victim 2 within 24 hours of the receipt of the report at Intake?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 36. Investigation - Alleged Victim Children; Child 2 (continued)

71. Does documentation in the record provide evidence of the following?

| | Were attempts made to see the child's at his/her home or facility? | Were attempts made to see the child at any of these other locations? | Were attempts made on a daily basis to see the child until the child was seen? |
|---|---|---|---|
| Alleged child victim 2 | | | |

Specify "other" locations

## Mississippi Maltreatment In Care/MIC Review 2016

### 37. Investigation - Alleged Victim Children; Child 2 (continued)

72. Is there documentation in the record that the investigator ever saw alleged child victim 2 during this investigation?

○ Yes

○ No

19

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

### 38. Investigation - Alleged Victim Children; Child 2 (continued)

73. According to documentation in the record, what are the date and time of the investigator's initial face-to-face contact with alleged child victim 2?

|  | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| date/time: | [ ] | / [ ] | / [ ] | [ ] | : [ ] | - [ ] |

74. Was alleged victim 2 interviewed in private, as age appropriate, at any point during the investigation?

○ Yes

○ No

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

### 39. Investigation - Alleged Victim Children; Child 2 (continued)

75. Did interviews and contacts with alleged child victim 2 **address** the following?

|  | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of the child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 2 | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

76. Did interviews and contacts with alleged child victim 2 **adequately and appropriately** address the following topics?

|  | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 2 | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

### 40. Investigation - Alleged Victim Children; Child 2 (continued)

20

\* 77. What is alleged perpetrator 1's relationship to alleged child victim 2?
   (If more than one alleged perpetrator, please designate as 1, 2 and 3 and answer the following questions accordingly.)

|  | Alleged Perpetrator 1 |
| --- | --- |
| Alleged child victim 2 | |

\* 78. Was alleged perpetrator 1 interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 41. Investigation - Alleged Victim Children; Child 2 (continued)

79. Were efforts made to interview alleged perpetrator 1?

○ Yes

○ No

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 42. Investigation - Alleged Victim Children; Child 2 (continued)

21

80. Did the investigator's interview with alleged perpetrator 1 **address** the following?

| | Was the interview in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | | |

81. Did interviews with alleged perpetrator 1 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | |

comments for any "no" response(s):

---

### Mississippi Maltreatment In Care/MIC Review 2016

### 43. Investigation - Alleged Victim Children; Child 2 (continued)

\* 82. Are there additional alleged perpetrators?

○ Yes

○ No

---

### Mississippi Maltreatment In Care/MIC Review 2016

### 44. Investigation - Alleged Victim Children; Child 2 (continued)

22

83. What is alleged perpetrator 2's relationship to alleged child victim 2?

| | Alleged Perpetrator 2 |
|---|---|
| Alleged child victim 2 | |

84. Was alleged perpetrator 2 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[                                        ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 45. Investigation - Alleged Victim Children; Child 2 (continued)

85. Were efforts made to interview alleged perpetrator 2?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 46. Investigation - Alleged Victim Children; Child 2 (continued)

86. Did the investigator's interview with alleged perpetrator 2 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | | |

23

87. Did interviews with alleged perpetrator 2 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 47. Investigation - Alleged Victim Children; Child 2 (continued)

88. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 48. Investigation - Alleged Victim Children; Child 2 (continued)

89. What is the alleged perpetrator 3's relationship to alleged child victim 2?

| | Alleged Perpetrator 3 |
|---|---|
| Alleged child victim 2 | |

90. Was alleged perpetrator 3 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

## Mississippi Maltreatment In Care/MIC Review 2016

## 49. Investigation - Alleged Victim Children; Child 2 (continued)

**91. Were efforts made to interview alleged perpetrator 3?**

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

## 50. Investigation - Alleged Victim Children; Child 2 (continued)

**92. Did the investigator's interview with alleged perpetrator 3 address the following?**

|  | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | | |

Comments:

|  |
|---|
|  |

**93. Did interviews with alleged perpetrator 3 adequately and appropriately address the following topics?**

|  | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to the child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | |

**94. Are there additional alleged perpetrators?**

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

51. Investigation - Alleged Victim Children; Child 2 (continued)

* 95. As documented in the record, indicate to whom related to alleged child victim 2 the investigator spoke.

○ Assigned worker (COR/COS) only

○ Assigned worker's supervisor only

○ Assigned worker and assigned worker's supervisor

○ None of the above

**Mississippi Maltreatment In Care/MIC Review 2016**

52. Investigation - Alleged Victim Children; Child 2 (continued)

* 96. What is the date that the assigned worker (COR/COS) first made face to face contact with alleged victim child 2 after the report of alleged maltreatment?

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | [    ] / | [    ] / | [    ] |

* 97. Select which best describes the contact between the child and their assigned worker during the investigation, after the initial contact date above.

|  | Contact with assigned worker |
|---|---|
| Alleged victim child 2 | [                                    ] |

**Mississippi Maltreatment In Care/MIC Review 2016**

53. Investigation - Alleged Victim Children; Child 2 (continued)

* 98. Did the investigator interview/obtain information about alleged child victim 2 from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

Information obtained?

| | |
|---|---|
| Medical personnel | |
| School personnel | |
| Daycare/Childcare personnel or babysitter | |
| Neighbors | |

* 99. Did alleged child victim 2 need a medical evaluation to assist in the investigation?

○ No

○ Yes (Explain.)

### Mississippi Maltreatment In Care/MIC Review 2016

### 54. Investigation - Alleged Victim Children; Child 2 (continued)

100. Is there documentation in the record that alleged child victim 2 received a medical evaluation to inform the investigation?

○ No

○ Yes (Specify date.)

### Mississippi Maltreatment In Care/MIC Review 2016

### 55. Investigation - Alleged Victim Children; Child 2 (continued)

\* 101. Does the documentation in the record evidence the need for any other professional evaluation/exam (e.g., mental health or forensic) for alleged child victim 2 to assist in the investigation?

○ No

○ Yes (Explain.)

[   ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

56. Investigation - Alleged Victim Children; Child 2 (continued)

102. Is there documentation in the record that alleged child victim 2 received the professional evaluation/exam (e.g., mental health or forensic) to inform the investigation?

○ No

○ Yes (Specify date.)

[   ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

57. Investigation - Alleged Victim Children; Child 2 (continued)

\* 103. What was the finding of this investigation related to alleged child victim 2? (Select substantiated if **any** of the allegations involving alleged child victim 2 were substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify.)

[   ]

28

* 104. Was alleged child victim 2 removed from his/her placement during this investigation?

○ Yes

○ No

* 105. Are there other alleged child victims?

○ Yes

○ No

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|
| 58. Investigation - Alleged Victim Children; Child 3 |

* 106. Please provide the date of birth for alleged child victim 3:

[                                        ]

* 107. Which of the following allegation(s) in this report relate to alleged child victim 3?

| | |
|---|---|
| Abandonment | [  ] |
| Emotional Abuse/Neglect | [  ] |
| Exploitation | [  ] |
| Medical Neglect | [  ] |
| Physical Abuse | [  ] |
| Physical Neglect | [  ] |
| Sexual Abuse | [  ] |

29

* 108. What is alleged victim 3's race?

○ Alaska Native / American Indian

○ Asian

○ Black or African American

○ Native Hawaiian / Other Pacific Islander

○ White

* 109. Based on the documentation in the record, is alleged child victim 3 identified as Hispanic?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

59. Investigation - Alleged Victim Children; Child 3 (continued)

* 110. Were the following persons relative to alleged child victim 3 notified of the allegations within 24 hours?

| | Child's parent/guardian (N/A if whereabouts unknown or TPR) | Regional ASWS | Regional Director | Child's Guardian Ad Litem | Assigned caseworker | Resource/facility licensing worker |
|---|---|---|---|---|---|---|
| Alleged child victim 3 | | | | | | |

* 111. Did the investigator have face to face contact with alleged child victim 3 within 24 hours of the receipt of the report at Intake?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

60. Investigation - Alleged Victim Children; Child 3 (continued)

112. Does documentation in the record provide evidence of the following?

| | Were attempts made to see the child's at his/her home or facility? | Were attempts made to see the child at any of these other locations? | Were attempts made on a daily basis to see the child until the child was seen? |
|---|---|---|---|
| Alleged child victim 3 | | | |

Specify "other" locations

| |
|---|

## Mississippi Maltreatment In Care/MIC Review 2016

### 61. Investigation - Alleged Victim Children; Child 3 (continued)

113. Is there documentation in the record that the investigator ever saw alleged child victim 3 during this investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 62. Investigation - Alleged Victim Children; Child 3 (continued)

114. According to documentation in the record, what are the date and time of the investigator's initial face-to-face contact with alleged child victim 3?

| | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| date/time: | | / | / | : | | - |

115. Was alleged victim 3 interviewed in private, as age appropriate, at any point during the investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 63. Investigation - Alleged Victim Children; Child 3 (continued)

116. Did interviews and contacts with alleged child victim 3 **address** the following?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of the child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 3 | | | | | | | | |

117. Did interviews and contacts with alleged child victim 3 **adequately and appropriately** address the following topics?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 3 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 64. Investigation - Alleged Victim Children; Child 3 (continued)

* 118. What is alleged perpetrator 1's relationship to alleged child victim 3?
(If more than one alleged perpetrator, please designate as 1, 2 and 3 and answer the following questions accordingly.)

| | Alleged Perpetrator 1 |
|---|---|
| Alleged child victim 3 | |

* 119. Was alleged perpetrator 1 interviewed during the investigation?

◯ Yes

◯ No

◯ N/A (Specify.)

[                                        ]

## Mississippi Maltreatment In Care/MIC Review 2016

32

65. Investigation - Alleged Victim Children; Child 3 (continued)

120. Were efforts made to interview alleged perpetrator 1?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

66. Investigation - Alleged Victim Children; Child 3 (continued)

121. Did the investigator's interview with alleged perpetrator 1 **address** the following?

|  | Was the interview in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | | |

122. Did interviews with alleged perpetrator 1 **adequately and appropriately address** the following topics?

|  | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | |

comments for any "no" response(s):

## Mississippi Maltreatment In Care/MIC Review 2016

67. Investigation - Alleged Victim Children; Child 3 (continued)

* 123. Are there additional alleged perpetrators?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

68. Investigation - Alleged Victim Children; Child 3 (continued)

124. What is alleged perpetrator 2's relationship to alleged child victim 3?

|  | Alleged Perpetrator 2 |
|---|---|
| Alleged child victim 3 | |

125. Was alleged perpetrator 2 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[                                    ]

**Mississippi Maltreatment In Care/MIC Review 2016**

69. Investigation - Alleged Victim Children; Child 3 (continued)

126. Were efforts made to interview alleged perpetrator 2?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

70. Investigation - Alleged Victim Children; Child 3 (continued)

127. Did the investigator's interview with alleged perpetrator 2 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | | |

128. Did interviews with alleged perpetrator 2 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 71. Investigation - Alleged Victim Children; Child 3 (continued)

129. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 72. Investigation - Alleged Victim Children; Child 3 (continued)

130. What is the alleged perpetrator's relationship to alleged child victim 3?

| | Alleged Perpetrator 3 |
|---|---|
| Alleged child victim 3 | |

35

131. Was alleged perpetrator 3 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[ ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

73. Investigation - Alleged Victim Children; Child 3 (continued)

132. Were efforts made to interview alleged perpetrator 3?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

74. Investigation - Alleged Victim Children; Child 3 (continued)

133. Did the investigator's interview with alleged perpetrator 3 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | | |

Comments:

[ ]

134. Did interviews with alleged perpetrator 3 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to the child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

135. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 75. Investigation - Alleged Victim Children; Child 3 (continued)

* 136. As documented in the record, indicate to whom related to alleged child victim 3 the investigator spoke.

○ Assigned worker (COR/COS) only

○ Assigned worker's supervisor only

○ Assigned worker and assigned worker's supervisor

○ None of the above

## Mississippi Maltreatment In Care/MIC Review 2016

### 76. Investigation - Alleged Victim Children; Child 3 (continued)

* 137. What is the date that the assigned worker (COR/COS) first made face to face contact with alleged victim child 3 after the report of alleged maltreatment?

Date:  MM ☐ / DD ☐ / YYYY ☐

37

\* 138. Select which best describes the contact between the child and their assigned worker during the investigation, after the initial contact date above.

Contact with assigned worker

| | |
|---|---|
| Alleged victim child 3 | |

---

**Mississippi Maltreatment In Care/MIC Review 2016**

77. Investigation - Alleged Victim Children; Child 3 (continued)

---

\* 139. Did the investigator interview/obtain information about alleged child victim 3 from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

Information obtained?

| | |
|---|---|
| Medical personnel | |
| School personnel | |
| Daycare/Childcare personnel or babysitter | |
| Neighbors | |

\* 140. Did alleged child victim 3 need a medical evaluation to assist in the investigation?

○ No

○ Yes (Explain.)

---

**Mississippi Maltreatment In Care/MIC Review 2016**

78. Investigation - Alleged Victim Children; Child 3 (continued)

141. Is there documentation in the record that alleged child victim 3 received a medical evaluation to inform the investigation?

○ No

○ Yes (Specify date.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 79. Investigation - Alleged Victim Children; Child 3 (continued)

\* 142. Does the documentation in the record evidence the need for any other professional evaluation/exam (e.g., mental health or forensic) for alleged child victim 3 to assist in the investigation?

○ No

○ Yes (Explain.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 80. Investigation - Alleged Victim Children; Child 3 (continued)

143. Is there documentation in the record that alleged child victim 3 received the professional evaluation/exam (e.g., mental health or forensic) to inform the investigation?

○ No

○ Yes (Specify date.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 81. Investigation - Alleged Victim Children; Child 3 (continued)

39

\* 144. What was the finding of this investigation related to alleged child victim 3? (Select substantiated if **any** of the allegations involving alleged child victim 3 were substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify.)

[ ]

\* 145. Was alleged child victim 3 removed from his/her placement during this investigation?

○ Yes

○ No

\* 146. Are there other alleged child victims?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 82. Investigation - Alleged Victim Children; Child 4

\* 147. Please provide the date of birth for alleged child victim 4:

[ ]

* 148. Which of the following allegation(s) in this report relate to alleged child victim 4?

| | |
|---|---|
| Abandonment | |
| Emotional Abuse/Neglect | |
| Exploitation | |
| Medical Neglect | |
| Physical Abuse | |
| Physical Neglect | |
| Sexual Abuse | |

* 149. What is alleged victim 4's race?

○ Alaska Native / American Indian

○ Asian

○ Black or African American

○ Native Hawaiian / Other Pacific Islander

○ White

* 150. Based on the documentation in the record, is alleged child victim 4 identified as Hispanic?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

83. Investigation - Alleged Victim Children; Child 4 (continued)

* 151. Were the following persons relative to alleged child victim 4 notified of the allegations within 24 hours?

| | Child's parent/guardian (N/A if whereabouts unknown or TPR) | Regional ASWS | Regional Director | Child's Guardian Ad Litem | Assigned caseworker | Resource/facility licensing worker |
|---|---|---|---|---|---|---|
| Alleged child victim 4 | | | | | | |

* 152. Did the investigator have face to face contact with alleged child victim 4 within 24 hours of the receipt of the report at Intake?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 84. Investigation - Alleged Victim Children; Child 4 (continued)

153. Does documentation in the record provide evidence of the following?

| | Were attempts made to see the child's at his/her home or facility? | Were attempts made to see the child at any of these other locations? | Were attempts made on a daily basis to see the child until the child was seen? |
|---|---|---|---|
| Alleged child victim 4 | | | |

Specify "other" locations

| |
|---|
| |

## Mississippi Maltreatment In Care/MIC Review 2016

### 85. Investigation - Alleged Victim Children; Child 4 (continued)

154. Is there documentation in the record that the investigator ever saw alleged child victim 4 during this investigation?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

86. Investigation - Alleged Victim Children; Child 4 (continued)

155. According to documentation in the record, what are the date and time of the investigator's **initial** face-to-face contact with alleged child victim 4?

|        | MM | DD | YYYY | hh | mm | AM/PM |
|--------|----|----|------|----|----|-------|
| date/time: | ☐ | / ☐ | / ☐ | ☐ | : ☐ | - ☐ |

156. Was alleged victim 4 interviewed in private, as age appropriate, at any point during the investigation?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

87. Investigation - Alleged Victim Children; Child 4 (continued)

157. Did interviews and contacts with alleged child victim 4 **address** the following?

|  | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of the child | Child's functioning | Child's history | Relationship with caretakers |
|--|--|--|--|--|--|--|--|--|
| Alleged child victim 4 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

158. Did interviews and contacts with alleged child victim 4 **adequately and appropriately** address the following topics?

|  | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of child | Child's functioning | Child's history | Relationship with caretakers |
|--|--|--|--|--|--|--|--|--|
| Alleged child victim 4 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Mississippi Maltreatment In Care/MIC Review 2016**

88. Investigation - Alleged Victim Children; Child 4 (continued)

43

* 159. What is alleged perpetrator 1's relationship to alleged child victim 4?
(If more than one alleged perpetrator, please designate as 1, 2 and 3 and answer the following questions accordingly.)

|  | Alleged Perpetrator 1 |
|---|---|
| Alleged child victim 4 | |

* 160. Was alleged perpetrator 1 interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

---

**Mississippi Maltreatment In Care/MIC Review 2016**

89. Investigation - Alleged Victim Children; Child 4 (continued)

161. Were efforts made to interview alleged perpetrator 1?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

90. Investigation - Alleged Victim Children; Child 4 (continued)

44

162. Did the investigator's interview with alleged perpetrator 1 **address** the following?

| | Was the interview in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | | |

163. Did interviews with alleged perpetrator 1 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | |

comments for any "no" response(s):

| |
|---|

## Mississippi Maltreatment In Care/MIC Review 2016

## 91. Investigation - Alleged Victim Children; Child 4 (continued)

* 164. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

## 92. Investigation - Alleged Victim Children; Child 4 (continued)

45

165. What is alleged perpetrator 2's relationship to alleged child victim 4?

| | Alleged Perpetrator 2 |
|---|---|
| Alleged child victim 4 | |

166. Was alleged perpetrator 2 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[                                        ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

93. Investigation - Alleged Victim Children; Child 4 (continued)

167. Were efforts made to interview alleged perpetrator 2?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

94. Investigation - Alleged Victim Children; Child 4 (continued)

168. Did the investigator's interview with alleged perpetrator 2 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | | |

169. Did interviews with alleged perpetrator 2 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 95. Investigation - Alleged Victim Children; Child 4 (continued)

170. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 96. Investigation - Alleged Victim Children; Child 4 (continued)

171. What is the alleged perpetrator's relationship to alleged child victim 4?

| | Alleged Perpetrator 3 |
|---|---|
| Alleged child victim 4 | |

172. Was alleged perpetrator 3 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[          ]

## Mississippi Maltreatment In Care/MIC Review 2016

47

**97. Investigation - Alleged Victim Children; Child 4 (continued)**

**173. Were efforts made to interview alleged perpetrator 3?**

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

**98. Investigation - Alleged Victim Children; Child 4 (continued)**

**174. Did the investigator's interview with alleged perpetrator 3 address the following?**

|  | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | | |

Comments:

**175. Did interviews with alleged perpetrator 3 adequately and appropriately address the following topics?**

|  | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to the child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | |

**176. Are there additional alleged perpetrators?**

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

99. Investigation - Alleged Victim Children; Child 4 (continued)

* 177. As documented in the record, indicate to whom related to alleged child victim 4 the investigator spoke.

○ Assigned worker (COR/COS) only

○ Assigned worker's supervisor only

○ Assigned worker and assigned worker's supervisor

○ None of the above

**Mississippi Maltreatment In Care/MIC Review 2016**

100. Investigation - Alleged Victim Children; Child 4 (continued)

* 178. What is the date that the assigned worker (COR/COS) first made face to face contact with alleged victim child 4 after the report of alleged maltreatment?

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | ☐ | / ☐ | / ☐ |

* 179. Select which best describes the contact between the child and their assigned worker during the investigation, after the initial contact date above.

| | Contact with assigned worker |
|---|---|
| Alleged victim child 4 | ☐ |

**Mississippi Maltreatment In Care/MIC Review 2016**

101. Investigation - Alleged Victim Children; Child 4 (continued)

* 180. Did the investigator interview/obtain information about alleged child victim 4 from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

|  | Information obtained? |
|---|---|
| Medical personnel | |
| School personnel | |
| Daycare/Childcare personnel or babysitter | |
| Neighbors | |

* 181. Did alleged child victim 4 need a medical evaluation to assist in the investigation?

○ No

○ Yes (Explain.)

---

**Mississippi Maltreatment In Care/MIC Review 2016**

102. Investigation - Alleged Victim Children; Child 4 (continued)

182. Is there documentation in the record that alleged child victim 4 received a medical evaluation to inform the investigation?

○ No

○ Yes (Specify date.)

---

**Mississippi Maltreatment In Care/MIC Review 2016**

103. Investigation - Alleged Victim Children; Child 4 (continued)

50

\* 183. Does the documentation in the record evidence the need for any other professional evaluation/exam (e.g., mental health or forensic) for alleged child victim 4 to assist in the investigation?

○ No

○ Yes (Explain.)

_____

**Mississippi Maltreatment In Care/MIC Review 2016**

104. Investigation - Alleged Victim Children; Child 4 (continued)

184. Is there documentation in the record that alleged child victim 4 received the professional evaluation/exam (e.g., mental health or forensic) to inform the investigation?

○ No

○ Yes (Specify date.)

_____

**Mississippi Maltreatment In Care/MIC Review 2016**

105. Investigation - Alleged Victim Children; Child 4 (continued)

\* 185. What was the finding of this investigation related to alleged child victim 4? (Select substantiated if **any** of the allegations involving alleged child victim 4 were substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify.)

_____

51

* 186. Was alleged child victim 4 removed from his/her placement during this investigation?

○ Yes

○ No

* 187. Are there other alleged child victims?

○ Yes

○ No

| Mississippi Maltreatment In Care/MIC Review 2016 |
|---|

| 106. Investigation - Alleged Victim Children; Child 5 |
|---|

* 188. Please provide the date of birth for alleged child victim 5:

[                                      ]

* 189. Which of the following allegation(s) in this report relate to alleged child victim 5?

| | |
|---|---|
| Abandonment | [     ] |
| Emotional Abuse/Neglect | [     ] |
| Exploitation | [     ] |
| Medical Neglect | [     ] |
| Physical Abuse | [     ] |
| Physical Neglect | [     ] |
| Sexual Abuse | [     ] |

* 190. What is alleged victim 5's race?

○ Alaska Native / American Indian

○ Asian

○ Black or African American

○ Native Hawaiian / Other Pacific Islander

○ White

* 191. Based on the documentation in the record, is alleged child victim 5 identified as Hispanic?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

107. Investigation - Alleged Victim Children; Child 5 (continued)

* 192. Were the following persons relative to alleged child victim 5 notified of the allegations within 24 hours?

| | Child's parent/guardian (N/A if whereabouts unknown or TPR) | Regional ASWS | Regional Director | Child's Guardian Ad Litem | Assigned caseworker | Resource/facility licensing worker |
|---|---|---|---|---|---|---|
| Alleged child victim 5 | | | | | | |

* 193. Did the investigator have face to face contact with alleged child victim 5 within 24 hours of the receipt of the report at Intake?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

108. Investigation - Alleged Victim Children; Child 5 (continued)

194. Does documentation in the record provide evidence of the following?

| | Were attempts made to see the child's at his/her home or facility? | Were attempts made to see the child at any of these other locations? | Were attempts made on a daily basis to see the child until the child was seen? |
|---|---|---|---|
| Alleged child victim 5 | | | |

Specify "other" locations

| |
|---|
| |

## Mississippi Maltreatment In Care/MIC Review 2016

### 109. Investigation - Alleged Victim Children; Child 5 (continued)

195. Is there documentation in the record that the investigator ever saw alleged child victim 5 during this investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 110. Investigation - Alleged Victim Children; Child 5 (continued)

196. According to documentation in the record, what are the date and time of the investigator's **initial** face-to-face contact with alleged child victim 5?

| | MM | DD | YYYY | hh | mm | AM/PM |
|---|---|---|---|---|---|---|
| date/time: | | / | / | : | | - |

197. Was alleged victim 5 interviewed in private, as age appropriate, at any point during the investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

54

### 111. Investigation - Alleged Victim Children; Child 5 (continued)

198. Did interviews and contacts with alleged child victim 5 **address** the following?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of the child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 5 | | | | | | | | |

199. Did interviews and contacts with alleged child victim 5 **adequately and appropriately** address the following topics?

| | Alleged maltreatment incident | Placement dynamics | Marks or bruises | Child's feelings of safety in the placement | Observations of child | Child's functioning | Child's history | Relationship with caretakers |
|---|---|---|---|---|---|---|---|---|
| Alleged child victim 5 | | | | | | | | |

### Mississippi Maltreatment In Care/MIC Review 2016

### 112. Investigation - Alleged Victim Children; Child 5 (continued)

\* 200. What is alleged perpetrator 1's relationship to alleged child victim 5?
(If more than one alleged perpetrator, please designate as 1, 2 and 3 and answer the following questions accordingly.)

| | Alleged Perpetrator 1 |
|---|---|
| Alleged child victim 5 | |

\* 201. Was alleged perpetrator 1 interviewed during the investigation?

◯ Yes

◯ No

◯ N/A (Specify.)

### Mississippi Maltreatment In Care/MIC Review 2016

113. Investigation - Alleged Victim Children; Child 5 (continued)

202. Were efforts made to interview alleged perpetrator 1?

◯ Yes

◯ No

## Mississippi Maltreatment In Care/MIC Review 2016

114. Investigation - Alleged Victim Children; Child 5 (continued)

203. Did the investigator's interview with alleged perpetrator 1 **address** the following?

| | Was the interview in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | | |

204. Did interviews with alleged perpetrator 1 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 1 | | | | | | | | |

comments for any "no" response(s):

```

```

## Mississippi Maltreatment In Care/MIC Review 2016

115. Investigation - Alleged Victim Children; Child 5 (continued)

* 205. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 116. Investigation - Alleged Victim Children; Child 5 (continued)

206. What is alleged perpetrator 2's relationship to alleged child victim 5?

| | Alleged Perpetrator 2 |
|---|---|
| Alleged child victim 5 | |

207. Was alleged perpetrator 2 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[ ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 117. Investigation - Alleged Victim Children; Child 5 (continued)

208. Were efforts made to interview alleged perpetrator 2?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 118. Investigation - Alleged Victim Children; Child 5 (continued)

**209.** Did the investigator's interview with alleged perpetrator 2 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | | |

**210.** Did interviews with alleged perpetrator 2 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 2 | | | | | | | | |

## Mississippi Maltreatment In Care/MIC Review 2016

### 119. Investigation - Alleged Victim Children; Child 5 (continued)

**211.** Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 120. Investigation - Alleged Victim Children; Child 5 (continued)

**212.** What is the alleged perpetrator's relationship to alleged child victim 5?

| | Alleged Perpetrator 3 |
|---|---|
| Alleged child victim 5 | |

58

213. Was alleged perpetrator 3 was interviewed during the investigation?

○ Yes

○ No

○ N/A (Specify.)

[                                                          ]

**Mississippi Maltreatment In Care/MIC Review 2016**

121. Investigation - Alleged Victim Children; Child 5 (continued)

214. Were efforts made to interview alleged perpetrator 3?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

122. Investigation - Alleged Victim Children; Child 5 (continued)

215. Did the investigator's interview with alleged perpetrator 3 **address** the following?

| | Interviewed in private? | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to child |
|---|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | | | | | | | | | |

Comments:

[                                                          ]

216. Did interviews with alleged perpetrator 3 **adequately and appropriately address** the following topics?

| | Alleged incident | Disciplinary practices | Caregiver's feelings about the child(ren) | Supports needed/requested by caregiver | Supports received by caregiver | Supports not received but requested by caregiver | Challenges parenting children in their care | Alternative strategies for responding to the child |
|---|---|---|---|---|---|---|---|---|
| Alleged perpetrator 3 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

217. Are there additional alleged perpetrators?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 123. Investigation - Alleged Victim Children; Child 5 (continued)

* 218. As documented in the record, indicate to whom related to alleged child victim 5 the investigator spoke.

○ Assigned worker (COR/COS) only

○ Assigned worker's supervisor only

○ Assigned worker and assigned worker's supervisor

○ None of the above

## Mississippi Maltreatment In Care/MIC Review 2016

### 124. Investigation - Alleged Victim Children; Child 5 (continued)

* 219. What is the date that the assigned worker (COR/COS) first made face to face contact with alleged victim child 5 after the report of alleged maltreatment?

Date:  MM ☐ / DD ☐ / YYYY ☐

60

\* 220. Select which best describes the contact between the child and their assigned worker during the investigation, after the initial contact date above.

Contact with assigned worker

| Alleged victim child 5 | |
|---|---|

## Mississippi Maltreatment In Care/MIC Review 2016

### 125. Investigation - Alleged Victim Children; Child 5 (continued)

\* 221. Did the investigator interview/obtain information about alleged child victim 5 from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

Information obtained?

| Medical personnel | |
|---|---|
| School personnel | |
| Daycare/Childcare personnel or babysitter | |
| Neighbors | |

\* 222. Did alleged child victim 5 need a medical evaluation to assist in the investigation?

○ No

○ Yes (Explain.)

## Mississippi Maltreatment In Care/MIC Review 2016

### 126. Investigation - Alleged Victim Children; Child 5 (continued)

223. Is there documentation in the record that alleged child victim 5 received a medical evaluation to inform the investigation?

○ No

○ Yes (Specify date.)

[blank field]

**Mississippi Maltreatment In Care/MIC Review 2016**

127. Investigation - Alleged Victim Children; Child 5 (continued)

\* 224. Does the documentation in the record evidence the need for any other professional evaluation/exam (e.g., mental health or forensic) for alleged child victim 5 to assist in the investigation?

○ No

○ Yes (Explain.)

[blank field]

**Mississippi Maltreatment In Care/MIC Review 2016**

128. Investigation - Alleged Victim Children; Child 5 (continued)

225. Is there documentation in the record that alleged child victim 5 received the professional evaluation/exam (e.g., mental health or forensic) to inform the investigation?

○ No

○ Yes (Specify date.)

[blank field]

**Mississippi Maltreatment In Care/MIC Review 2016**

129. Investigation - Alleged Victim Children; Child 5 (continued)

\* 226. What was the finding of this investigation related to alleged child victim 5? (Select substantiated if **any** of the allegations involving alleged child victim 5 were substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify.)

```

```

\* 227. Was alleged child victim 5 removed from his/her placement during this investigation?

○ Yes

○ No

\* 228. Are there other alleged child victims?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 130. Investigation - Other children in the home or facility

\* 229. Did the investigator **interview all other MDCPS involved**, **non-alleged victim** children in the home or facility in private to inform the investigation?

○ Yes, **interviewed all** other MDCPS involved, non-alleged victim children in the home or facility **in private**

○ No, i**nterviewed all** other MDCPS involved, non-alleged victim children in the home or facility but **not in private**

○ No, **did not interview all** other MDCPS involved, non-alleged victim children in the home or facility

○ N/A, no other MDCPS involved, non-alleged victim children in the home or facility

○ Unable to determine whether there are other MDCPS children in the home or facility

* 230. Did the investigator **interview other non-MDCPS involved, non-alleged victim** children in the home or facility to inform the investigation?

○ Yes, all

○ Yes, some

○ No

○ N/A (No non-MDCPS, non-alleged victim children in the home or facility)

---

**Mississippi Maltreatment In Care/MIC Review 2016**

131. Investigation - Assessment of the physical environment

---

* 231. Did the investigator view the physical premises of the placement where the alleged maltreatment occurred?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

132. Investigation - Assessment of the physical environment (continued)

---

232. Did the investigator complete a narrative describing the physical environment of the placement?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

133. Investigation - Assessment of the physical environment (continued)

233. In the reviewer's judgment, does the narrative regarding the physical environment of the placement (related to the alleged maltreatment) provide information relevant to the child(ren)'s needs for safety and well-being?

○ Yes (Specify.)

○ No (Specify.)

Specify

```
[                                                                    ]
```

---

**Mississippi Maltreatment In Care/MIC Review 2016**

### 134. Investigation - Gathering information

\* 234. Did the investigator interview/obtain information from the following persons to inform the investigation? (Includes hard copy information, phone conversation or face-to-face interaction.)

| | Information obtained? |
|---|---|
| Current resource specialist/licensing staff | |
| Other persons/personnel in the home or facility | |
| The source of the intake report | |
| Former MDCPS staff involved with the alleged child victim | |
| Other children in MDCPS custody who may have information relevant to the investigation, were previously in the placement but who have left | |

---

**Mississippi Maltreatment In Care/MIC Review 2016**

### 135. Investigation - Type of placement associated with Alleged MIC

65

\* 235. Indicate whether this report is related to a family-based caretaker/home or a staff person/facility:

○ Family-based home

○ Facility

## Mississippi Maltreatment In Care/MIC Review 2016

### 136. Investigation - Gathering information

236. Did the assigned resource worker accompany the investigator to the resource home to assess possible policy and/or licensure violations?

○ Yes

○ No

237. Did the investigator review MDCPS case records of all of the children residing in this home as part of the investigation?

○ Yes

○ No

○ N/A (no other MDCPS children in the home)

238. Did the investigator review records relating to all previous allegations of maltreatment of a child against the resource family or one of its members?

○ Yes

○ No

○ N/A, no other prior allegations of maltreatment

## Mississippi Maltreatment In Care/MIC Review 2016

### 137. Investigation - Gathering information (continued)

239. As documented in the record, did the investigator review documents or records of the facility related to the allegations being investigated?

○ Yes

○ No

240. As documented in the record, did the investigator review policy of the facility related to the allegations being investigated?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

138. Decision-making - Child placement

---

\* 241. Did the **assigned worker (COR/COS)** determine whether the alleged victim(s) and other children should remain in the placement pending the investigation/assessment?

○ Yes and all children remained in the placement

○ Yes and all child victims were removed but non-victim children remained

○ Yes, some child victims were removed but others remained

○ Yes, all children in the placement were removed

○ No documentation that COR/COS worker determined whether child(ren) victim(s) should remain in the placement

○ N/A, the child(ren) had already left the placement or facility prior to the investigation

\* 242. Based upon the documentation in the record, do you agree with the actions taken regarding the child(ren)'s placement during the pendency of the investigation?

○ Yes (Specify.)

○ No (Specify.)

Specify:

[                                                                    ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

139. Investigation - Safety assessment

67

\* 243. Is there a **description or narrative of a safety assessment** following the intake?

○ Yes, within 5 days of the report

○ Yes, within 7 days of the report

○ No

\* 244. Is there documentation of a **discussion between the investigation worker and supervisor about the child(ren)'s safety**?

○ Yes, within 5 days of the receipt of the report

○ Yes, within 7 days of the receipt of the report

○ Yes, beyond 7 days of the receipt of the report

○ No

| Mississippi Maltreatment In Care/MIC Review 2016 |
| --- |
| 140. Investigation - Safety and risk assessment |

\* 245. Is there a completed **Resource Safety and Risk Assessment** instrument/tool in the record following the intake date for this investigation?

○ Yes

○ No

| Mississippi Maltreatment In Care/MIC Review 2016 |
| --- |
| 141. Investigation - Safety and risk assessment (continued) |

246. Please give all dates of the Resource Safety and Risk Assessment instrument/tool following the intake date and during the pendency of the investigation.

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | | / | / |
| Date: | | / | / |
| Date: | | / | / |
| Date: | | / | / |

**Mississippi Maltreatment In Care/MIC Review 2016**

142. Investigation - Safety assessment (continued)

* 247. Was a safety plan **needed** following a safety assessment?

○ Yes

○ No

○ No documentation (no narrative, no Resource Safety and Risk Assessment)

**Mississippi Maltreatment In Care/MIC Review 2016**

143. Investigation - Safety plan

248. Was a safety plan **developed** following a safety assessment?

○ No

○ Yes (Specify date.)

[                                                            ]

**Mississippi Maltreatment In Care/MIC Review 2016**

69

**144. Investigation - Safety plan (continued)**

249. Did the safety plan address all the safety issues present in the case?

○ Yes

○ No (Explain.)

```
┌─────────────────────────────────────────────────────────┐
│                                                         │
│                                                         │
│                                                         │
└─────────────────────────────────────────────────────────┘
```

250. Was the safety plan fully implemented in accordance with its terms?

○ Yes

○ No (Explain.)

```
┌─────────────────────────────────────────────────────────┐
│                                                         │
│                                                         │
│                                                         │
└─────────────────────────────────────────────────────────┘
```

**Mississippi Maltreatment In Care/MIC Review 2016**

**145. Investigation - Safety and risk assessment (continued)**

251. What is the final risk rating documented in the Resource Safety and Risk Assessment?

○ No/Low

○ Medium

○ High

○ Not documented

**Mississippi Maltreatment In Care/MIC Review 2016**

**146. Investigation - Safety and risk assessment (continued)**

70

\* 252. Do you have concerns about the quality of the **safety assessment narrative or** the completed **Resource Safety and Risk Assessment** instrument/tool?

○ Yes, safety assessment narrative only

○ Yes, Resource Safety and Risk Assessment instrument/tool only (consider whether responses reflect information gathered during the investigation)

○ Yes, both narrative and Resource Safety and Risk Assessment instrument/tool

○ No, no concerns about either

○ N/A, neither is documented

Comments:

```
```

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 147. Investigation - Information gathered

\* 253. Was there sufficient information gathered during this investigation to address the allegations and assess whether or not the child(ren)'s safety, risk, and well-being needs are being met?

○ Yes

○ No (Explain.)

Specify how information was insufficient.

```
```

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 148. Investigation - Decision-making and closure

\* 254. What was the finding of this investigation? (Select substantiated if *any* of the allegations involving a child was substantiated.)

☐ Substantiated

☐ Unsubstantiated

☐ Policy violation (Specify):

[                                                                          ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

149. Investigation - Decision-making and closure (continued)

255. Indicate who was notified of the findings of this investigation:

○ District Attorney only

○ Law enforcement only

○ Both District Attorney and law enforcement

○ Neither

---

**Mississippi Maltreatment In Care/MIC Review 2016**

150. Post investigation - worker contact with child(ren)

\* 256. For child victims who remained in the same placement at the conclusion of the investigation, describe their assigned caseworker's contacts with each of the children for 3 months following the investigation.

| | Visits in the first month after investigation closed | Visits in the second month after investigation closed | Visits in the third month after investigation closed |
|---|---|---|---|
| child 1: | | | |
| child 2: | | | |
| child 3: | | | |
| child 4 | | | |
| child 5 | | | |

72

**Mississippi Maltreatment In Care/MIC Review 2016**

151. Investigation - Decision-making and closure (continued)

* 257. What is the date the investigation was submitted for supervisory approval?

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | ☐ | / ☐ | / ☐ |

* 258. Did a supervisor approve this investigation?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

152. Investigation - Closure

259. What is the date the investigation was approved by the supervisor?

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | ☐ | / ☐ | / ☐ |

**Mississippi Maltreatment In Care/MIC Review 2016**

153. Investigation - Closure (continued)

* 260. Was the investigation open beyond 30 days after receipt of the report?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

154. Investigation - Closure (continued)

73

261. Does documentation in the record evidence why the investigation was open beyond 30 days?

○ Yes, explain below

○ No

Give the explanation regarding the investigation being open beyond 30 days:

[                                                    ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 155. Investigation - Reviewer's opinion

* 262. Does the documentation in the record support the findings that were made for allegations in the report?

○ Yes, all allegations

○ Yes, some allegation (Specify.)

○ No (Specify.)

Specify: explain and identify the allegations for which the information in the case record was insufficient to support the determination.

[                                                    ]

263. In your opinion, based upon the documentation in the record, was the overall investigation of good quality?

|  | Completely | Substantially | Marginally | Not at all |
|---|---|---|---|---|
| Of good quality? | ○ | ○ | ○ | ○ |

* 264. Please give 3 reasons for your opinions above

Reason [                                        ]

Reason [                                        ]

Reason [                                        ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 156. Investigation - Reviewer's opinion (continued)

74

* 265. Based upon the review of records, were there any barriers impacting the investigator's ability to complete the investigation timely or produce a comprehensive and thorough report?

○ Yes (Specify.)

○ No

Specify.

[                                                                    ]

## Mississippi Maltreatment In Care/MIC Review 2016

### 157. Investigation - Notification of findings

* 266. Was a copy of the approved final investigative report filed as follows:

| | Filed? |
|---|---|
| Case record of each alleged child victim | [ ] |
| File of resource home/adoptive home/facility | [ ] |
| MDCPS State Office | [ ] |
| Youth Court Judge | [ ] |

* 267. Was the resource parent(s) or facility notified of the findings of this investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 158. Investigation - Notification of findings (continued)

75

268. Indicate the date the resource parent or facility was notified of the findings of this investigation:

|  | MM | DD | YYYY |
|---|---|---|---|
| Date: | | / | / |

---

**Mississippi Maltreatment In Care/MIC Review 2016**

159. MIC - Licensure activities

---

\* 269. Did MDCPS undertake a licensure investigation that included an on-site inspection of the facility or home to determine the provider's compliance with MDCPS standards?

○ Yes

○ No

---

**Mississippi Maltreatment In Care/MIC Review 2016**

160. MIC - Licensure activities (continued)

---

270. Indicate when the licensure investigation began and ended.

|  | MM | DD | YYYY |
|---|---|---|---|
| Date began | | / | / |
| Date completed | | / | / |

271. Based on the documentation in the record, please answer about each of the following

|  | Yes/No |  |
| --- | --- | --- |
| Licensing violation found |  |  |
| Policy violation found |  |  |
| Corrective action plan required |  |  |
| License revoked |  |  |
| Any other action taken? (Specify.) |  |  |

Specify.

272. Was a corrective action plan developed as result of the licensing investigation?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 161. MIC - Licensure activities (continued)

273. As documented in the record, was the corrective action plan satisfied?

○ Yes

○ No

274. Was the corrective action plan implemented within the time frames specified?

○ Yes

○ No

## Mississippi Maltreatment In Care/MIC Review 2016

### 162. MIC - Licensure activities (continued)

\* 275. Was the home or facility closed to new placement during the investigation of alleged maltreatment?

○ Yes

○ No

**Mississippi Maltreatment In Care/MIC Review 2016**

163. Investigation - New placements?

\* 276. Were there any new placements in the home/facility between the time the allegation was made and when the investigation was concluded?

○ Yes (Specify.)

○ No

○ Unable to determine

Specify.

[                                                                    ]

**Mississippi Maltreatment In Care/MIC Review 2016**

164. Safety Review Unit/SRU

\* 277. Did the Safety Review Unit/SRU complete a review of this investigation?

○ No

○ Yes (Specify date completed.)

[                                                                    ]

**Mississippi Maltreatment In Care/MIC Review 2016**

165. SRU - Safety issues

78

278. Did the SRU review identify any **safety issues with this investigation** or with the **safety issues preceding** this investigation?

○ Yes (Explain.)

○ No

Explain issues identified by the SRU:

[                                                                          ]

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 166. SRU - Safety issues (continued)

279. Did the SRU review identify any **corrective actions** necessary to ensure the **safety of victim children**?

○ Yes, with timelines (Explain.)

○ Yes but no timelines (Explain.)

○ No

List/explain corrective actions to address safety issues

[                                                                          ]

280. Are there non-victim children in the home or facility?

○ Yes

○ No

○ Unable to determine

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 167. SRU - Safety issues (continued)

79

281. Based on documentation in the record, did the SRU review identify any **corrective actions**, with timelines necessary to ensure the **safety** of **non-victim children** in the home/facility that were not taken in a timely manner or not taken at all?

○ Yes, explain below

○ No

What corrective actions relative to non alleged victim children did SRU cite? Were timelines included?

[                                                                      ]

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 168. SRU - Safety issues (continued)

282. Insert all applicable data relating to SRU findings and corrective actions for all SRU identified **safety issues**:

|  | MM | DD | YYYY |
|---|---|---|---|
| Corrective action in HEAT | [ ] | / [ ] | / [ ] |
| Corrective action completed | [ ] | / [ ] | / [ ] |

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 169. SRU - Practice issues

\* 283. Did the SRU review identify any **case practice deficiencies** from this investigation or from the case practice preceding the allegations?

○ Yes, list/explain below

○ No

List/explain practice issues identified by SRU

[                                                            ]

---

## Mississippi Maltreatment In Care/MIC Review 2016

### 170. SRU - Practice issues (continued)

284. Did the SRU review identify any **corrective actions** necessary to address **deficiencies in case practice**?

○ Yes, with timelines (Explain.)

○ Yes but no timelines (Explain.)

○ No

List/explain corrective actions to address practice issues

| |
|---|

### Mississippi Maltreatment In Care/MIC Review 2016

### 171. SRU - Practice issues (continued)

285. Insert all applicable dates relating to SRU findings and corrective actions for all SRU identified **case practice issues**:

|  | MM | DD | YYYY |
|---|---|---|---|
| Corrective action in HEAT | | / | / |
| Corrective action completed | | / | / |

### Mississippi Maltreatment In Care/MIC Review 2016

### 172. Safety and case practice - Reviewer's opinion

* 286. Based upon your review of the record, were there **case practice deficiencies** that surfaced during or as a result of this investigation that were **not identified by either the investigation or SRU review**?

○ No

○ Yes (Specify.)

| |
|---|

\* 287. Based upon your review of the record, were there **safety issues** that surfaced during or as a result of this investigation that were **not identified by either the investigation or SRU review**?

○ No

○ Yes (Specify.)

[ ]

---

**Mississippi Maltreatment In Care/MIC Review 2016**

173. Reviewer's opinion, comments

\* 288. Based on your review of the record, were all actions necessary to ensure the safety and well-being of the child(ren) who is the subject of the investigation, as well as any other child(ren) in the home or placement, taken during this investigation?

○ Yes

○ No (Explain.)

[ ]

289. Reviewer may submit additional comments:

[ ]

**Ex. 4**

# MODIFICATION #1

# CONTRACT AGREEMENT

**MODIFICATION NUMBER #1**
**TO THE AGREEMENT BY AND BETWEEN**
**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
**AND**
**SOCIAL WORK p.r.n.**

The following Amendment, effective September 14, 2015 is made a part of the contract, dated August 25, 2014 entered into by and between the Mississippi Department of Human Services (MDHS) Division of Family & Children's Services and Social Work p.r.n.

Now, therefore, in consideration of the mutual agreements to modify the original contract between them, MDHS and "Independent Contractor", do hereby agree that Paragraphs **4, 5 and 31** of said contract shall be modified to reflect the following:

**4.** **Period of Performance**. The period of performance of services under this Contract shall begin on September 14, 2015 and end on September 13, 2016. MDHS shall have the option to renew this Contract at one (1) year intervals for three (3) years at the same terms and conditions. These one (1) year options to this contract shall end on September 13, 2019.

**5.** **Consideration and Method of Payment.**

A. As consideration of all services and performances under this Contract, Independent Contractor shall be paid a fee not to exceed Two Million Two Hundred Seventy Three Thousand Three Hundred Forty Dollars and Zero Cents ($2,273,340.00) during SFY2015 for September 14, 2014 through September 13, 2015. Modification #1 increased by Two Million Two Hundred Seventy Three Thousand Three Hundred Forty Dollars and Zero Cents ($2,273,340.00) during SFY2016 for September 14, 2015 through September 13, 2016. It is expressly understood and agreed that in no event will the total compensation paid hereunder exceed the specified amount of Four Million Five Hundred Forty Six Thousand Six Hundred Eighty Dollars and Zero Cents ($4,546,680.00). (*Exhibit C-1, Budget*)

B. The Independent Contractor will bill MDHS for its services on a quarterly basis. Following the satisfactory completion, as determined by MDHS, of its monthly services, the State requires the Independent Contractor to submit invoices electronically throughout the term of the agreement. Invoices shall be submitted to MDHS using the processes and procedures identified by the State. The appropriate documentation shall be submitted on the last working day of the month, with the final invoice to be submitted within thirty (30) working days after the contract ending date.

**PAYMODE:** Payments by state agencies using the Mississippi's Accountability System For Government Information and Collaboration (MAGIC) shall be made and remittance information provided electronically as directed by the State. These payments shall be deposited into the bank account of the Independent Contractor's choice. The State may, at its sole discretion, require the Independent Contractor to submit invoices and supporting documentation electronically, at any time, during the term of this Agreement. Independent Contractor understands and agrees that the State is exempt from the payment of taxes. All payments shall be in United States currency.

REVISED 03/2015

**E-PAYMENT:**   Independent contractor agrees to accept all payments in United States currency via the State of Mississippi's electronic payment and remittance vehicle.  MDHS agrees to make payment in accordance with Mississippi law on "Timely Payments for Purchases by Public Bodies," Mississippi Code Annotated 31-7-301, et. seq., which generally provides for payment of undisputed amounts by MDHS within forty-five (45) days of receipt of invoice.

31.  **Entire Agreement.**  It is understood and agreed that this Modification Number 1 and the documents listed below constitute the entire understanding of the parties with respect to the subject matter contained herein  and supersede and replace any and all prior negotiations, understandings and agreements, written or oral, between the parties relating thereto.  The entire agreement made by and between the parties hereto shall consist of, and precedence is hereby established by the order of, the following documents incorporated herein:

1.    This Contract signed by the parties herein and any Exhibits attached hereto;

2.    The Request for Proposals dated March 3, 2014, Response to Proposals dated April 25, 2014, and the Written Clarification or Answers provided by MDHS, dated February 27, 2014.

The documents are complementary, and what is required by one shall be binding as if required by all.  A higher document shall supersede a lower order document to the extent necessary to resolve any conflict or inconsistency arising under the various provisions thereof; provided, however, that in no event an issue is addressed in one of the above-mentioned documents but is not addressed in another of such documents, no conflict or inconsistency shall be deemed to occur by reason thereof.  The documents listed above are shown in descending order or priority, that is, the highest document begins with the first listed document ("1.This Contract signed by the parties herein and any Exhibits attached hereto.") and the lowest document is listed last ("2. The Request for Proposals dated March 3, 2014, Response to Proposals dated April 25, 2014, and the Written Clarification or Answers provided by MDHS, dated February 27, 2014").

REVISED 03/2015

 

All other terms, conditions, and provisions set out in the original contract other than those modified and amended, which are not in conflict with this Modification Number 1, shall remain in full force and effect for the duration of the contract.

IN WITNESS WHEREOF, the parties have executed this Modification Number 1, in duplicate, on the date appearing with their respective signature below.

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES

BY: _____
                Signature (NO STAMPED SIGNATURE)

TITLE: _____

DATE: _____

WITNESSES:

_____

_____

SOCIAL WORK p.r.n.

BY: _____
                Signature (NO STAMPED SIGNATURE)

DATE: _____

WITNESSES:

_____

_____

# EXHIBIT A
# SCOPE OF SERVICES

Social Work p.r.n
Modification #1
Scope of Services
September 14, 2015 – September 13, 2016

**History and Organizational Structure of Firm**

*Social Work p.r.n.* is a responsible agency that enjoys an excellent image and reputation in the communities we serve. Social Work p.r.n. operates a system of company-owned and franchise sites across the nation. We serve in the metropolitan areas of Atlanta, Boston, Chicago, Houston, Jackson, Kansas City, northern New Jersey, New Orleans, New York City, Philadelphia, St. Louis and Washington DC.

*Social Work p.r.n.* is a professional social work company that provides a variety of social work products and services to a range of human service organizations, including public and private, not-for-profit and for-profit. Products and services provided by Social Work p.r.n. include social work staffing (temporary, temp-to-perm, and permanent placement), consultation, supervision, field instruction, training, and continuing education.

*Social Work p.r.n.* specializes in providing social work staffing. Our clients include social service agencies, hospitals, mental health facilities, family and children service agencies, addiction treatment settings, long term care facilities, Employee Assistance Programs and managed care, HMOs, rehabilitation centers, home health and hospice agencies, residential facilities, and other settings that utilize social work services.

*Social Work p.r.n.* has a wealth of practice experience providing services to individuals, couples, families, groups, communities, institutions and systems. Last year, we placed hundreds of MSW and BSW social workers in numerous settings nationwide and across fields of practice.

**Location of Principal Address; Number and Job Titles**

*Social Work p.r.n.* operates a corporate office location at 10680 Barkley, Suite 100, Overland Park, Kansas, 66212. The corporate office serves as the central management and support center for all regional offices. The corporate office is staffed full-time with professional and administrative staff, including Kim Adams, LMSW, CEO; Sheri Hilger, LCSW, LSCSW, Clinical Director; Pierrette Upshaw, Corporate Manager; Rashmi Shah, Accounting Manager; Frances McNeel, Payroll/Credit & Collections Specialist; Lauren Richardson, Marketing Manager; and Julie Cordell, CPA, Financial Analyst. Our office hours are Monday-Friday, 8:30 am to 4:30 pm, and after-hours emergency support is available by cell and email. The telephone number is (800) 595-9648 and email address is kim.adams@socialworkprn.com

The corporate headquarters is located and available at:

*Social Work p.r.n.-Corporate*
10680 Barkley, Suite 100
Overland Park, Kansas 66212
(913) 648-2984 phone
(914) 648-2977 fax
(800) 595-9648 toll-free

*Social Work p.r.n.* has a physical location with full-time professional social work administrative personnel in each office site to coordinate contracts. Our office in Jackson, Mississippi has and will continue to be the location for the Mississippi Centralized Intake program.

The local office to serve Mississippi Centralized Intake is located and available at:

*Social Work p.r.n.-Mississippi*
409 Briarwood, Suite 303
Jackson, MS 39236
(601) 957-6944 phone
(601) 432-4600 fax

## Key Personnel in Delivery of Services

The following persons provide support to the Mississippi Centralized Intake program through Social Work p.r.n. An organizational chart depicting both Corporate and MCI Program personnel is included in Exhibit A.

### *Mississippi Office Staff*

*Shalondria Hill, MSW, MSW Program Coodinator,* holds a Bachelor's Degree in Criminal Justice and Correctional Services and a Master's Degree in Social Work both from Jackson State University. She is knowledgeable of local issues and resources and collaborates with various agencies (local, state, and federal) for the betterment of her community. She understands the realities of the workplace and in her daily work continually manages the needs of social workers, organizations, and consumers.

Shalondria has been employed with Social Work p.r.n. since 2006 and has many years of experience in direct practice, supervision, management, program development, training, education and field instruction. Since September 2009, Shalondria has served as the MSW Program Director to the Mississippi Centralized Intake program through Social Work p.r.n.

*LaTarra, Hopkins, MSW, MSW Assistant Program Coordinator,* holds a Bachelor's and Master's Degree in Social Work from Jackson State University. She has been

employed with Social Work p.r.n./MCI Program since May 2009 in the roles of Hotline Intake Worker, Quality Assurance Coordinator, and Assistant Program Manager. LaTarra has formerly served as a Family Service Worker for Hinds County Human Resource Agency and a social worker for the City of Jackson.

*Jennifer McNutt, Administrative Assistant,* will complete a Bachelor of Science in Criminal Justice Administration in October 2014. She holds an Associates of Applied Science Degree in Criminal Justice from Columbia Southern University. Jennifer has been employed with Social Work p.r.n./MCI Program since November 2013. She has held positions as a Faculty Support Specialist for Columbia Southern University and as a Family Support Specialist for the Commonwealth of Kentucky.

*Sheena Branley, Trainer/Quality Assurance Reviewer,* holds a Bachelor's and Master's Degree in Social Work from Jackson State University. Sheena has been employed with Social Work p.r.n./MCI Program since May 2009 and has held positions as a Crisis Line Social Worker and the Trainer/Quality Assurance Reviewer. Her former experience includes MSW internships with Jackson Public Schools, the University of Mississippi Medical Center, and Hinds County Department of Human Services.

*Devin Washington, Quality Assurance Specialist 1.*

*Lanitra Turner, Quality Assurance Specialist,* holds a Bachelor's Degree in Social Work from Jackson State University. Lanitra has been employed with Social Work p.r.n./MCI program since September 2009. She has held positions as a Crisis Line Social Worker and is currently serving as a Quality Assurance Specialist.

*Corporate Office Staff*

*Kim Adams, MSW, Chief Executive Officer (Program Administrator),* graduated from Baker University with a Bachelor's degree in Business Administration, and a MSW from the School of Social Welfare at the University of Kansas. Her social work practice experience included work in a community health clinic and the emergency department and maternal/child services in Kansas City's largest level one trauma center. Kim started with Social Work p.r.n. in 1992 and currently serves as the Chief Executive Officer. As the Chief Executive Officer, she maintains oversight and direction to all Social Work p.r.n. offices in regards to business and clinical practices. She is responsible for leadership and management of all departments and functions of Social Work p.r.n. facilities, including human resources, development, financial management, communications, IT/data management, facilities, purchasing, risk management, and capital expansion.

In her role as Project Administrator for the MCI program, Kim will maintain oversight of the contract with on-going consultation to the MCI Jackson office and will conduct site visits as needed. She will also review all statistical and quality assurance reporting. She would also maintain contact as indicated with MDHS personnel around budgetary and reporting documentation.

*Sheri Hilger, MSW, Clinical Director/HR*, has been employed with Social Work p.r.n. for over twenty (20) years and has worked in several capacities for the company. Her experience includes direct practice, supervision (clinical and administrative), management, program development, consultation, training, education and field instruction. Ms. Hilger received her BSW degree from the University of Nebraska-Omaha and MSW degree from Jane Addams College of Social Work at the University of Illinois-Chicago. She holds clinical licenses in Kansas and Missouri and is well versed in clinical social work across fields of practice. Ms. Hilger has held several leadership positions both locally and nationally with various social work associations, including the state licensing board. She is knowledgeable about local issues and resources. She understands the realities of the workplace and in her daily work continually manages the needs of social workers, organizations and consumers. In her role, Sheri will be responsible for ensuring the clinical aspects of the MCI program.

## Time Allocation for Administrative Staff and Officers

| STAFF/OFFICER | TITLE | Time Allocated to MCI |
|---|---|---|
| Kim Adams, MSW | Project Administrator | Approximately 25% |
| Sheri Hilger, MSW | Clinical Director/HR | Approximately 10% |
| Shalondria Hill, MSW | MSW Program Manager | 100% |
| LaTarra Hopkins, MSW | MSW Assistant Program Manager | 100% |
| Sheena Branley, MSW | Quality Assurance Specialist | 100% |
| Jennifer McNutt | Full-time Administrative Assistant | 100% |
| Devin Washington, MSW | Quality Assurance Specialist I | 100% |
| Lanitra Turner, BSW | Quality Assurance Specialist | 100% |
| Angela Childress, MSW | Quality Assurance Specialist (Part-time) | 100% |

## Legal Entity and Signatory Status

*Social Work p.r.n.* is incorporated as a C Corporation in the State of Kansas. Social Work p.r.n. is a for-profit organization that is privately owned. Included are Articles of Incorporation, Annual Minutes, and Resolutions that serve as evidence of authority of signatory to execute a binding on behalf of Social Work p.r.n. and documentation that Social Work p.r.n. is a legal entity.

## SERVICES

*Social Work p.r.n.* will provide the required services for Mississippi Centralized Intake, which includes a 24-Hour Hotline for reports of child and vulnerable adult abuse and neglect, Referral Service, and Disaster Response Plan. Social Work p.r.n. will maintain the current telephone and electronic reporting call center based at 409 Briarwood, Suite 303, Jackson, Mississippi. The call center will be adequately staffed 24 hours per day, 7 days per week, and will not be affected by MDHS official office closings, such as weekends, holidays, or inclement weather. Social Work p.r.n. will receive all information for all MDHS county offices via calls or electronic reporting systems, document the information in MDHS appropriate MDHS electronic case management data system, and disseminate the information appropriately throughout the State of Mississippi or to other states per MDHS/DFCS policy.

The Social Work p.r.n. MCI social workers and administrative staff will perform the duties as follows:

1) Receiving and documenting in appropriate MDHS electronic case management data system all information related to allegations of child and vulnerable adult abuse/neglect/exploitation reported for the state via telephone calls or electronic reporting system;
2) Screening all calls according to a required protocol upon which all staff has been trained;
3) Based on screening, referring all reports not related to allegations of abuse, neglect, or exploitation to the appropriate referral source and document accordingly;
4) Obtaining specified information from calls concerning allegations of abuse, neglect, or exploitation according to required protocol;
5) Entering specified information into the MDHS computer system, Mississippi Automated Child Welfare Information System ( or appropriate MDHS electronic case management data system);
6) Notifying appropriate MDHS/DFCS staff of reports of abuse, neglect, or exploitation by phone and/or email as needed when urgency of information warrants, when computer system in unavailable to those who need the information, or during official office closing times;
7) Communicating with MDHS/DFCS county staff and administrative staff regarding questions, transfers, requests regarding intake reports;
8) Utilizing feedback regarding performance to improve service quality and delivery;
9) And, meeting regularly with MDHS administrative staff to maintain communication for effective service delivery.

*Social Work p.r.n.* will provide social work staff covering 24-hours/day, 7 days/week, and 365 days/year. Social Work p.r.n. will adequately staff MCI with the largest number of personnel during periods with the highest call volume and flexibility to adjust to meet the coverage needs. Social Work p.r.n. has the experience to recruit, hire and retain adequate staff to meet the needs of MCI.

*Social Work p.r.n.* will ensure that all crisis line social workers for the MDHS Centralized Intake and 24-Hour Hotline and Disaster Preparedness Plan have a Master's Degree in Social Work or a Bachelor's Degree in Social Work with two years of related experience. To satisfy Social Work p.r.n.'s hiring requirements, all degrees in social work must be from a social work program accredited by the Council on Social Work Education (CSWE). Social Work p.r.n. will retain the responsibility of recruitment, interviewing, and extending offers to candidates for hire through Social Work p.r.n./MCI Program. Social Work p.r.n. will agree that applicants must be approved by MDHS before reporting to duty. Social Work p.r.n. will retain the control and direction of the Social Work p.r.n./MCI workforce in regards to operational and personnel issues with the exception that Social Work p.r.n. will comply fully with any inquiries, orders, or directives from the court. Responses to DHS feedback forms will include details from growth and development with worker along with any corporate corrective action. At the request of MDHS/DFCS, Social Work p.r.n. will agree to replacement of an employee.

*Social Work p.r.n.* agrees to abide by all related terms of the Modified Mississippi Settlement Agreement, MDHS/DFCS policy, and current and federal laws, as applicable to this program.

*Social Work p.r.n.* will record all calls (incoming and outgoing) using recording software. All recordings will be permanently stored and accessible for review by appropriate MDHS staff and the *Olivia Y.* Court monitor. MDHS will maintain all rights to recordings of all calls incoming and outgoing.

*Social Work p.r.n.* will anticipate and accommodate the special needs of reporters, including limited/non-English speaking or hearing impaired, e.g. use of MDHS interpreters, the Mississippi Relay System, TDD/TYYs or the Language Line.

*Social Work p.r.n.* will maintain and provide information for referral services to the public for human service providers throughout the State of Mississippi.

*Social Work p.r.n.* will ensure that reports of suspected child/vulnerable adult abuse and/or neglect received are entered into appropriate MDHS electronic case management data system, with confirmation of prior history attached to all persons known at intake that are located in appropriate MDHS electronic case management data system and referred to the appropriate county of jurisdiction within ninety (90) minutes of receiving the complete report. As a back-up measure, if access to appropriate MDHS electronic case management data system is denied, Social Work p.r.n. will ensure that reports and hard copies of the applied screening tools are faxed and verbally forwarded to the responsible county office within ninety (90) of receiving the complete report and that reports are entered and screened in appropriate MDHS electronic case management data system as soon as accessibility is restored.

*Social Work p.r.n.* will notify the MDHS County of Responsibility on-call staff of suspected child/vulnerable adult abuse or neglect within fifteen (15) minutes of the report being received and entered into appropriate MDHS electronic case management data

system. MDHS administrative staff will be notified when County of Responsibility on-call staff member cannot be reached to relay the information. This method of communication is currently employed by Social Work p.r.n. MCI staff.

*Social Work p.r.n.* will guarantee all staff persons adhere to MDHS' established policies and procedures in the handling of all reports of suspected child/vulnerable abuse and neglect.

*Social Work p.r.n.* will inform MDHS administrative staff of any difficulties in performing required duties, such as power failure, telephone failure, or MDHS computer access failure, as soon as the difficulty is discovered by MDHS personnel.

*Social Work p.r.n.* will notify MDHS in writing of a change in business telephone, address or any other change in functionality of the MDHS Centralized Intake, Hotline, Referral Service, and Disaster Response Plan within five (5) business days prior to this occurrence.

*Social Work p.r.n.* will adhere to procedures established within the MDHS Disaster Response Plan to receive calls and gather information for MDHS concerning the location and contact information for resource families, facility staff, MDHS clients and MDHS staff in the event of a disaster within the state. This information will be provided to MDHS designated office periodically throughout the days of the disaster and five (5) days immediately following. Information regarding office closure will be communicated to Social Work p.r.n. so that alternate plans of communication with county staff can be implemented. Social Work p.r.n. will coordinate with MDHS/DFCS staff regarding matters related to generator.

*Social Work p.r.n.* will provide 24-hour/7 days per week coverage and supervision to ensure the handling of any emergencies related to the functioning of the hotline and assuring delivery of any reports needing immediate response to appropriate county on-call staff of MDHS.

*Social Work p.r.n.* will provide access to all equipment when requested by MDHS/DFCS and will allow MDHS/DFCS staff to monitor work on-site for quality assurance.

*Social Work p.r.n.* will require MDHS Centralized Intake social workers to complete the following training/education requirements: 40 hours/year for all new employees; 20 hours/year for experienced (over 1 year) employees. Supervisors will receive a minimum of twenty-four (24) hours of training per year. Training/education will be coordinated with MDHS/DFCS administrative staff.

*Social Work p.r.n.* will coordinate with MDHS/DFCS staff to ensure that computer down times for maintenance are performed at times that will interfere the least with MCI functioning whenever possible.

*Social Work p.r.n.* will complete and submit timely the required weekly and daily reports to MDHS/DFCS using the submitted format in a timely manner. This will include collecting and compiling data on all screened-in and screened-out referrals made to the hotline and submitting the written daily and weekly reports to the MDHS program supervisor. This is to include all demographic information.

*Social Work p.r.n.* will be responsible for the monthly programmatic and fiscal reporting necessary to maintain the contract. The monthly programmatic report shall contain the actual percentages of the outcome measures achieved on a monthly basis.

*Social Work p.r.n.* will provide an annual programmatic report that will be compiled and submitted no later than 45 days after the closing of the contract with MDHS/DFCS. The programmatic report will include information from start-up of the project to the end, successes, failures, recommendations, and any other additional information pertinent to this project. Additionally, the annual programmatic report will contain the actual overall percentages for each measurable outcome identified. This information will be provided whether or not the outcome measure is achieved.

*Social Work p.r.n.* will submit monthly fiscal reports to MDHS by the 10th calendar day of each month and monthly programmatic reports shall be submitted to MDHS/DFCS by the 15th calendar day of each month. Reports shall be submitted to the MDHS Administration/Finance Unit.

*Social Work p.r.n.* will determine the number of staff required to achieve measurable outcomes. Social Work p.r.n. will provide to MDHS approved staff access to all calls and recordings. A list of MDHS staff approved to request calls and recordings will be provided by MDHS to Social Work p.r.n.

## *EVALUATION TOOLS/METHODOLOGY*

*Social Work p.r.n.* utilizes a Quality Assurance model to ensure that MCI intake workers are following policy/procedure as well as meeting measurable outcomes as outlined in the Scope of Services. The Quality Assurance (QA) Department has been successful in completing QAs and providing feedback within one week of initial intake. Currently, 12% of daily calls are manually identified and selected for review. The QA Department reviews intake worker's appropriate MDHS electronic case management data system reports in conjunction to listening to call recordings provided through the Cybertech System. The intake worker is scored on the Centralized Intake QA form for the following: (1) accuracy; (2) essential information received; (3) role/relationship to victim established; (4) maltreatment clear and easy to read; and (5) diligent search/confirmation. Intakes are scored by assigning a point value to specific criteria as approved by MDHS/DFCS.

When concerns are indentified, QA staff provides specific and detailed Growth and Development where concerns are outlined on a form created by Social Work p.r.n. All

feedback is presented to staff from the common social work theory/practice, the Strengths Perspective. Feedback includes best practice and suggestions to enhance performance. Each intake worker is allowed the opportunity to review their scored QAs and listen to their call recording upon request. Identified intake workers are emailed a copy of their Growth and Developments and are encouraged to seek assistance when needed. One-on-one sessions are offered to verbally discuss concerns. Self-assessments are conducted and review of call recordings are also completed when needed or requested to ensure clarity is gained of the QA process, expectation, and policy.

In addition, the QA Department provides assistance and clarity to intake workers when feedback is received on a county, regional or state level from MDHS/DFCS. A Mississippi Centralized Intake Feedback Form is utilized to ensure that MDHS/DFCS personnel can document their concerns regarding any MCI intake. The Feedback Form is submitted by a DFCS employee and directed to the attention of the MSW Program Director or MSW Assistant Program Director. The documented concerns are addressed and justification or recommendations for improvement are provided.

The QA Department and its operations are very transparent, meaning that all intake workers have been provided the measurable outcomes identified in the Scope of Services. Each intake worker has been provided an individual copy of MDHS/DFCS state policy and a copy of the quality assurance form along with an explanation of scoring. As a means of ensuring staff is informed of our overall progress and performance, Social Work p.r.n.'s at-a-glance form was developed. This form outlines all QAs completed per week and highlights scores and performance in different areas as it relates to the Scope of Services. This information is disbursed to all MCI staff on a weekly basis.

All MCI intake workers are encouraged to remain up to date on policy and procedure through on-going trainings. Subject matters may include child welfare, ethics, elderly abuse, etc. All new (less than one year) MCI intake workers complete a required minimum 40 hours of training each contract year. All experienced (more than one year) MCI intake workers complete a required 24 hours of training each contract year. Several trainings are offered through internal as well as external means; via face-to-face conferences, online courses as well as teleconferences. "Quiz Balls" were developed which entailed various topics and scenarios related to MCI roles/responsibilities and served as another means of ensuring staff is current with policy and procedure. Intake workers are required to read provided material, answer questions, and submit information back to the QA Department. This promotes dialogue and assists with any disconnect or cloudiness about proper ways of handling certain calls, entering reports into appropriate MDHS electronic case management data system, and serves as a refresher, especially for part-time and support intake workers.

## Program Outcomes

**A) 96% of suspected child/vulnerable adult abuse/neglect reports are answered, entered into appropriate MDHS electronic case management data system, and screened to the appropriate county within 90 minutes of receiving the complete report.**

*Social Work p.r.n.* will ensure calls are answered and requests handled according to current policy. Social Work p.r.n. will enter each completed report received into appropriate MDHS electronic case management data system, and screen it to the appropriate county within 90 minutes receiving the complete report. Social Work p.r.n. will document:

a) Beginning time of call;
b) Ending time of call;
c) Contacted county representative and time of contact;
d) and, contacted Acting Social Work Supervisor or Regional Director via email and time of contact.

This documentation will be kept on every report and will be compiled monthly. The reports will be used to inform Program Coordinator or the Quality Assurance Coordinator of any deviation from the 96% standard that will be noted and referred to our supervisory and training program. Social Work p.r.n. will use this compilation to meet annual program outcome statistics.

**B) 96% of reports pulled for quality assurance will receive a rating of 80 or higher; with 100 being the highest possibility.**

*Social Work p.r.n.* will ensure that child/vulnerable adult abuse reports pulled for quality assurance receive a rating of 80 or higher. Social Work p.r.n. will continue to use the Quality Assurance Form in training to ensure each item on the form is properly addressed in each report. In the event that all pertinent information cannot be obtained, Social Work p.r.n. will provide explanation for the lack thereof.

These criteria address the comprehensiveness and clarity of required elements in the child and vulnerable adult abuse reports. Twelve (12) percent of each day's reports will be reviewed for these criteria. The outcome will be tallied monthly so that any needed correction can be addressed in our supervisory and training programs. The totals will be used for the annual program outcome statistics.

**C) 98% of reports pulled for quality assurance will be screened in accordance to established statutes of limitations and policies.**

*Social Work p.r.n.* will refer to and follow current policy and statutes of limitations as it pertains to screening reports of child and vulnerable adult abuse.

Any breaches in adherence will be noted and logged monthly. These specific breaches will be addressed by memo to all staff for immediate correction. The breaches, if any, will be counted and noted to ascertain any deviance from the 98% standard for reports.

D) **98% of reports pulled for quality assurance will have confirmation of prior history attached or documentation of the lack thereof being available during the diligent search.**

*Social Work p.r.n.* will ensure that reports will confirm prior history and be attached to the new report being entered into appropriate MDHS electronic case management data system. Social Work p.r.n. will also ensure that diligent searches are completed in all systems (appropriate MDHS electronic case management data system, METSS, MSSIS, and MAVERICS) to ensure the proper location of all family members reported and will include a statement confirming the completion of the task or the lack thereof.

E) **98% of resource home and child placing agency reports will be entered into appropriate MDHS electronic case management data system in accordance to policy with abuse/neglect history confirmed and tracked.**

*Social Work p.r.n.* will ensure that resource home and child-placing agency reports are entered into appropriate MDHS electronic case management data system either pending resource report and/or special investigation to ensure the report is attached and tracked in accordance with current policy.

Special handling of resource home and child-placing agency reports will be conducted as agreed upon by MDHS/DFCS staff and MCI administration.

F) **100% of new employees receive 40 hours of on-going training before duty and experienced employees will receive 20 hours of on-going training annually.**

*Social Work p.r.n.* will ensure all new MCI intake workers will receive 40 hours of on-going training in their first year of service. Experienced MCI intake workers (over one year of service) will receive 20 hours of on-going training annually. Supervisory/administration MCI staff will receive 24 hours of on-going training annually.

G) 98% of daily, weekly and monthly programmatic and fiscal reporting will be submitted in accordance to established timeframes.

> *Social Work p.r.n.* will submit daily, weekly and monthly statistical reports to MDHS in an agreed-upon timely manner. The monthly fiscal report will be submitted to MDHS from Social Work p.r.n.'s corporate office.

H) 95% of all calls will be answered with a hold time of five (5) minutes or less.

> *Social Work p.r.n.* will ensure that calls will be answered with minimum hold times.

I) 98% of suspected child/vulnerable adult abuse/neglect after hour reports are forwarded via telephone to the County of Responsibility on-call social worker within fifteen (15) minutes of screening.

> *Social Work p.r.n.* will ensure that the County of Responsibility on-call social worker is contacted for after-hour reports via telephone within fifteen (15) minutes of screening. Social Work p.r.n. will rely on MDHS/DFCS to provide on-call numbers for each county daily.

## *DISASTER RESPONSE PLAN*

*Social Work p.r.n.* will implement a Disaster Plan that includes relocation of the current office to an alternative site. The goal of this plan is coverage in the event of a disaster through a back-up system including use of temporary and/or MDHS facilities, advanced planning for document retention, and corporate assistance available as needed.

*Social Work p.r.n.'s* plan in the event of a disaster that would render our primary Mississippi office site unusable would include:

*Social Work p.r.n.* would secure working space in a hotel conference room located in a non-affected area that would provide working space for the MCI call agents. Social Work p.r.n. would request that the 800 number be transferred to a primary land line or cell phone which would serve as "reception" for all incoming calls. Additional cell phones would be utilized to contact reporters to gather information for reports. All available laptops would be utilized to enter reports in an appropriate MDHS electronic case management data system. Social Work p.r.n. would ensure that all working documents and policies/procedure manuals would be available to MCI staff. Social Work p.r.n. will maintain responsibility for preventing lapse of coverage. This coverage would continue until the Social Work p.r.n. facility can be reentered, new space is secured, or negotiations are made to utilize space with MDHS.

*Social Work p.r.n.* would propose working with MDHS to allow usage of their office location at 750 N. State Street, Jackson, Mississippi, or other appropriate location to be utilized as a back-up to Social Work p.r.n.'s primary office in the event of a disaster. We

believe that the MDHS office would provide the necessary resources, including working space and phone services, adequate for the Centralized Intake social workers to continue to provide services.

Electronic copies of documents that are vital to the MCI program are stored on flash drives that are retained off-site. One copy is stored at the corporate office and the other is in the possession of the MCI Program Manager.

*Social Work p.r.n.'s* corporate office is to be contacted at first realization that a potential for disaster is imminent so that personnel can support the Centralized Intake through the utilization of management staff, including the Program Administrator. All available resources from Social Work p.r.n. will be used in expediting the opening of new office space to return the MCI program to full operation.

*Social Work p.r.n.* will receive calls and gather information for MDHS concerning the location and contact information for resource families, facility staff, MDHS clients and MDHS staff in the event of a disaster within the state. This information will be provided to MDHS designated office periodically throughout the days of the disaster and five (5) days immediately following. Information regarding office closure will be communicated to Social Work p.r.n. so that alternate plans of communication with county staff can be implemented. Social Work p.r.n. will coordinate with MDHS/DFCS staff regarding matters related to generator.

## SUPERVISION PLAN

*Social Work p.r.n.* will maintain 24 hour/7 days per week supervisory coverage for the Mississippi Centralized Intake program. The coverage will be provided with a combination of on-site coverage and on-call coverage.

On-Site Supervisory Coverage: A designated supervisor (MCI Program Coordinator, MCI Program Assistant Coordinator, or a MSW Quality Assurance Specialist) will be available Monday to Friday, from 8:00 am to 11:30 pm. This on-site supervisor will be available to provide advisement to MCI staff regarding report entry and handling.

On-Call Supervisory Coverage: A designated supervisor (MCI Program Coordinator, MCI Program Assistant Coordinator, or a MSW Quality Assurance Specialist) will be available Sunday to Thursday, from 11:30 pm to 8:00am, and Friday from 11:30 pm to Sunday at 11:30 pm. MDHS will be provided with an on-call schedule weekly with the contact information for the designated on-call supervisor, the MCI Program Coordinator, and the MCI Program Administrator.

MDHS reserves the ability to revise and update quality assurance instruments and other reporting documents in order to enhance efforts to improve services delivery and optimize compliance with the Modified Mississippi Settlement Agreement and MDHS' policy.

# EXHIBIT B

# Modified Mississippi Settlement Agreement And Reform Plan

**(See Mississippi Department of Human Services Website)**
**www.mdhs.state.ms.us**

# EXHIBIT C
# BUDGET

SOCIAL WORK PRN - MCI BUDGET
## MODIFICATION #1
### September 14, 2015 - September 13, 2016

| SUPPORT POSITIONS | | |
|---|---|---|
| MSW Program Coordinator (FT) | $ | 62,220 |
| MSW Assistant Coordinator (FT) | $ | 57,650 |
| Admin Asst (40hrs/week) | $ | 41,040 |
| MSW QA Coordinator (FT) | $ | 54,085 |
| MSW QA Specialist (FT) | $ | 52,510 |
| BSW/MSW QA Specialist (FT) | $ | 51,220 |
| MSW QA Specialist (FT) Nights | $ | 52,000 |
| SUBTOTAL: | $ | 370,725 |

| CRISIS LINE SOCIAL WORKERS | | |
|---|---|---|
| All Crisis Line Coverage | | |
| 62,595.34 hrs @ 24.91/hr | | |
| SUBTOTAL: | $ | 1,559,250 |

| TRAINING & EDUCATION | | |
|---|---|---|
| 40 hrs new/exp wrkrs | | |
| 24 hrs supervisory personnel | | |
| *(Training only, MDHS will not reimburse provider for food and beverages provided during training.)* | | |
| SUBTOTAL: | $ | 6,500 |

| COMMODITIES | | |
|---|---|---|
| (Equip purchases less than $500, paper, staplers, pens, pencils, post-it notes, file folders, paper clips, parts for miscellaneous office equipment, toilet paper, paper towels, cleaning supplies, etc. | | |
| SUBTOTAL: | $ | 11,125 |

| CONTRACTUAL SERVICES | | |
|---|---|---|
| Rent | $ | 82,220 |
| Phone & *Internet Service* | $ | 4,800 |
| Postage | $ | 800 |
| Payroll Processing Fees | $ | 8,100 |
| Shredding | $ | 400 |
| Licenses | $ | 200 |
| Language Line | $ | 300 |
| Repair/Maintenance | $ | 5,000 |
| General Liability/Professional Liability Insurance | $ | 8,250 |
| Property Insurance | $ | 1,000 |
| *(excluding all building repair/maintenance)* | | |
| SUBTOTAL: | $ | 111,070 |

*Exhibit C-1, Budget*                                                                 *Page 1*

| TRAVEL | | |
|---|---|---|
| Corporate On-Site Travel | $ | 7,000 |
| Local Mileage | $ | 1,000 |
| *(Mileage reimbursement rate @ $0.51 per mile.* *Please Note: Travel will be computed at the specified* *rate or at the State approved mileage rate; whichever* *is lower---not to exceed total budgeted amount.)* | | |
| **SUBTOTAL:** | $ | **8,000** |

| ADMINISTRATIVE COSTS | | |
|---|---|---|
| The organization-wide indirect cost rate agreement distributes all general administrative costs and central office facilities cost based on the total cost of providing services on an indirect cost rate of 10% *(Copy of cost rate agreement must be submitted to* *MDHS.)* | | |
| **SUBTOTAL:** | $ | **206,670** |

| **CONTRACT TOTAL:** | $ | **2,273,340** |
|---|---|---|

*Exhibit C-1, Budget*                                                                                   *Page 2*

# Ex. 5A

Split/Skill Call Profile Monthly - DHS Central Intake

Printed: 9/20/2016 04:21:13 PM

Month Starting: 7/1/2016

Service Intervals Changed:     n
Split/Skill: DHS Central Intake                    Acceptable Service Changed:     n
% Within Service Level: 77.34

| Seconds | 0 - | 5 - | 10 - | 15 - | 20 - | 30 - | 40 - | 60 - | 90 - | 120 - > |
|---------|-----|-----|------|------|------|------|------|------|------|---------|
| ACD Calls: | 796 | 2084 | 408 | 118 | 348 | 88 | 58 | 38 | 25 | 78 |
| Aban Calls: | 29 | 6 | 7 | 7 | 6 | 11 | 10 | 15 | 24 | 37 |

|  |  |  |  |
|---|---|---|---|
| ACD Calls: | 4041 | Aban Calls: | 152 |
| Avg Speed Ans: | :17 | Avg Aban Time: | 1:32 |
| % Ans Calls: | 79.36 | % Aban Calls | 2.99 |

Page 1 of 1

ACD: ACD1_JACKSON

Split/Skill Call Profile Daily - DHS Central Intake          Printed: 9/20/2016 04:17:07 PM

Date: **9/8/2016**

Split/Skill: **DHS Central Intake**

% Within Service Level: **61.69**

Service Intervals Changed:      n
Acceptable Service Changed:     n

| Seconds | 0 | - | 5 | - | 10 | - | 15 | - | 20 | - | 30 | - | 40 | - | 60 | - | 90 | - | 120 | - | > |
|---------|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|-----|----|---|
| ACD Calls: | 25 | | .69 | | 24 | | 3 | | 15 | | 6 | | 7 | | 4 | | 7 | | 21 | | |
| Aban Calls: | 3 | | 0 | | 1 | | 1 | | 4 | | 0 | | 3 | | 6 | | 4 | | 7 | | |

| | | | |
|---|---|---|---|
| ACD Calls: | **181** | Aban Calls: | **29** |
| Avg Speed Ans: | **:47** | Avg Aban Time: | **1:42** |
| % Ans Calls: | **72.98** | % Aban Calls | **11.69** |

**Ex. 5B**

| Comparison of Call Volume April-August 2015 & 2016 | | |
|---|---|---|
| **April-August** | **2015** | **2016** |
| Total Number of Calls | 21,673 | 21,970 |
| Total Number of Child ANE | 13,459 | 13,524 |
| Total Number of Adult ANE | 1,866 | 1,901 |
| Total Number of Information and Referrals | 5,613 | 5,674 |
| Total Number of Other Calls | 735 | 871 |
| Average Number of Calls per Month | 4,336.00 | 4,394.00 |
| | | |
| | | |

- Call volume for Child ANE during both 2015 & 2016 peaked during the months of April and the end of May.
- Call volume for Child ANE during both 2015 & 2016 dropped during the first week of June and continued through the end of July.
- Call volume for Child ANE during both 2015 & 2016 significantly picked up during the first week of August.

**Ex. 6**

# Social Work p.r.n.

## Daily Activity Log

Total CANEs _____
Total AANEs _____
Total Narratives _____
Total I and R _____
Total E-Reports _____

Worker Name: _____    Date: _____

| | Type of call | Duration | Time spent in submission | Contact Name | County | Time of Call | Time of Entry | # of Victims |
|---|---|---|---|---|---|---|---|---|
| | CHILD ANEs including CHINS/SAFE BABY | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |
| | Post Screening Narratives | | | | | | | |
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| | ADULT ANEs | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| | I & Rs | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| | Wrong #s | | | | | | | |
| 4 | | | | | | | | |

Daily Activity Log 02.16 Rvd

**Ex. 7**

*Social Work p.r.n.*

# Child Abuse Intake Form

Household Name_____ County _____

Call Begins_____am/pm    Call Ends_____am/pm    Submission Completion _____am/pm

☐ New Child Report  ☐ Post Screening Narrative  ☐ Restricted Access    ☐ Resource Report

☐ Child in Custody    ☐ email notification sent to appropriate persons

☐ **MACWIS DOWN**-Report entered by _____ on_____ @ _____p.m./a.m.

I.  Reporter _____    Agency_____

Address_____

Phone _____    Alternate Phone _____

Relationship to Child _____

Can worker in county contact for additional information? ☐ Yes  ☐ No

II.   Victim(s): Name/DOB/Age/Race/Sex/School (Daycare)/Grade/Address/SSN

1._____

2._____

3._____

4._____

Physical Address/Description of Home/Directions/Landmarks_____

_____

_____

III.   Primary Caretaker's Name/DOB/Age/Race/Sex_____

SSN _____    Relationship to Child _____

Address_____

Phone _____    Alternate Phone _____

Secondary Caretaker's Name/DOB and age/Race/Sex_____

SSN _____    Relationship to Child_____

Address_____

Phone _____    Alternate Phone _____

IV.   Relative/Witness/Absent Parent_____

Address_____

Phone _____    Alternate Phone _____

Relationship to Child_____

V.   Other Household Members        Age/Race/Sex        At Risk  (Y/N)

_____        _____        _____

_____        _____        _____

_____        _____        _____

_____        _____        _____

Revised 02/16

VI.    Is family of Native American Descent? ☐Yes   ☐ No  If yes, what tribe? _____

VII.   Family's Primary Language _____

VIII.  Alleged Perpetrator's Name/DOB _____

    Age/Race/Sex/SSN _____

    Address _____

    Phone _____    Alternate Phone _____

    Relationship to Child _____    Primary Caretaker ☐ Yes ☐ No

    Alleged Perpetrator's Name/DOB _____

    Age/Race/Sex/SSN _____

    Address _____

    Phone _____    Alternate Phone _____

    Relationship to Child _____    Caretaker ☐ Yes ☐ No

IX.    Description of Maltreatment for **each** Victim (Ensure appropriate quality probing questions are asked)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

X.    Date victim last seen or maltreatment witnessed? _____

XI.   Did reporter confront/discuss the allegations with the alleged perpetrator? Yes ☐    No ☐

XII.  What was the alleged perpetrator's response? _____

_____

XIII. Are there safety concerns for the social worker? ☐ Yes    ☐ No  If yes, please describe _____

_____

Additional Pertinent Information

_____

_____

_____

_____

_____

Intake Worker _____    Date _____

Revised 02/16

**Ex. 8**

State Office Reviewer: ███████████, Program Manager

## MCI Customer Service Checklist

| Intake Worker Name: ███████████ | Time of Call: 8:35AM | Date |
|---|---|---|
| Shift : 2 | Duration: 26:20 | 04/18/16 |

| Quality Item | Yes | No | N/A | Date | Comments |
|---|---|---|---|---|---|
| | | | Verification | | |
| Was the phone answered after three rings or less? | X | | | | |
| Did the employee use an appropriate greeting? | X | | | | |
| Did the employee identify himself or herself by name? | X | | | | |
| Was the employee's tone of voice pleasant and business like? | | X | | | |
| Was the call handled efficiently without being abrupt? | | X | | | |
| Did the employee provide accurate information or refer the caller to an appropriate person? | X | | | | |
| Did the employee use friendly and tactful words? | | X | | | |
| Was there distracting background noise on the employee's end during the call? | | X | | | |
| Was the caller asked to repeat themselves several times? If so, about how many ? | X | | | | |
| Was the caller placed on hold for longer than 1 minute? | X | | | | |
| If a transfer was required, was it handled properly? How many transfers occurred? | | | X | | |
| Was the employee engaged and reacting to the conversation? | | X | | | |
| Did the employee address the caller properly when needed? (using sir / ma'am, or the individual's name) | X | | | | |
| Did the employee end the call with the proper exit? | X | | | | |
| Did the employee thank the caller? | X | | | | |
| Did the employee reflect the best image for the company? | | X | | | |

**State Office Reviewer:** █████████████, **Program Manager**

**NOTE:**

# REDACTED

**NOTE: Report was entered for Jackson County,** ████████████████

State Office Reviewer: ██████████, Program Manager

| MCI Customer Service Checklist | | | | | |
|---|---|---|---|---|---|
| Intake Worker Name: ██████████    Time of Call: 3:50PM | | | | | Date |
| Shift : 2                              Duration: 7:32 | | | | | 04/27/16 |

| Quality Item | Verification | | | | |
|---|---|---|---|---|---|
| | Yes | No | N/A | Date | Comments |
| Was the phone answered after three rings or less? | X | | | | |
| Did the employee use an appropriate greeting? | X | | | | |
| Did the employee identify himself or herself by name? | X | | | | |
| Was the employee's tone of voice pleasant and business like? | X | | | | |
| Was the call handled efficiently without being abrupt? | X | | | | |
| Did the employee provide accurate information or refer the caller to an appropriate person? | X | | | | |
| Did the employee use friendly and tactful words? | X | | | | |
| Was there distracting background noise on the employee's end during the call? | | X | | | |
| Was the caller asked to repeat themselves several times? If so, about how many ? | X | | | | |
| Was the caller placed on hold for longer than 1 minute? | | X | | | |
| If a transfer was required, was it handled properly? How many transfers occurred? | | | X | | |
| Was the employee engaged and reacting to the conversation? | X | | | | |
| Did the employee address the caller properly when needed? (using sir / ma'am, or the individual's name) | X | | | | |
| Did the employee end the call with the proper exit? | X | | | | |
| Did the employee thank the caller? | X | | | | |
| Did the employee reflect the best image for the company? | | X | | | |

State Office Reviewer: ███████████ Program Manager

NOTE:   The caller stated her name at the beginning of the conversation when she was providing information to the intake worker. However, the worker had the reporter state her name over again. Also, the intake worker had grammatical errors within her report.

**MACWIS I&R information entered by the worker:**

# REDACTED

NOTE:  I&R entered for Harrison County, ███████████

**State Office Reviewer:** ▬▬▬▬▬▬ **Program Manager**

| MCI Customer Service Checklist | | |
|---|---|---|
| **Intake Worker Name:** ▬▬▬▬▬ | **Time of Call:** 3:31PM | **Date:** |
| **Shift:** 3 | **Duration:** 09:32 | 04/17/16 |

| Quality Item | Yes | No | N/A | Date | Comments |
|---|---|---|---|---|---|
| Was the phone answered after three rings or less? | X | | | | |
| Did the employee use an appropriate greeting? | X | | | | |
| Did the employee identify himself or herself by name? | X | | | | |
| Was the employee's tone of voice pleasant and business like? | X | | | | |
| Was the call handled efficiently without being abrupt? | X | | | | |
| Did the employee provide accurate information or refer the caller to an appropriate person? | X | | | | |
| Did the employee use friendly and tactful words? | X | | | | |
| Was there distracting background noise on the employee's end during the call? | | X | | | |
| Was the caller asked to repeat themselves several times? If so, about how many ? | X | | | | One time |
| Was the caller placed on hold for longer than 1 minute? | | X | | | |
| If a transfer was required, was it handled properly? How many transfers occurred? | | | X | | |
| Was the employee engaged and reacting to the conversation? | X | | | | |
| Did the employee address the caller properly when needed? (using sir / ma'am, or the individual's name) | X | | | | |

State Office Reviewer: ████████████, Program Manager

| | | | | |
|---|---|---|---|---|
| Did the employee end the call with the proper exit? | X | | | Caller phone got disconnected before intake worker could end the call properly. |
| Did the employee thank the caller? | X | | | Caller phone got disconnected before intake worker could end the call properly. |
| Did the employee reflect the best image for the company? | X | | | |

NOTE: Intake worker gave good customer service during the call with the reporter. However, once the intake worker entered the report into MACWIS the report was poorly written. The grammar within the report was horrible. The report had misspelled words. Below I have copied the description of maltreatment from the intake report and highlighted the grammatical errors within the report.

## DESCRIPTION OF MALTREATMENT:

# REDACTED

Note: Report was entered for Jefferson County, ████████████

State Office Reviewer: ███████████, Program Manager

## MCI Customer Service Checklist

| Intake Worker Name: ███████████ | Time of Call: 1:49PM | Date |
|---|---|---|
| Shift: 2 | Duration: 16:35 | 4/27/16 |

| Quality Item | Verification | | | | |
|---|:---:|:---:|:---:|:---:|:---:|
| | Yes | No | N/A | Date | Comments |
| Was the phone answered after three rings or less? | X | | | | |
| Did the employee use an appropriate greeting? | X | | | | |
| Did the employee identify himself or herself by name? | X | | | | |
| Was the employee's tone of voice pleasant and business like? | | X | | | |
| Was the call handled efficiently without being abrupt? | | X | | | |
| Did the employee provide accurate information or refer the caller to an appropriate person? | X | | | | |
| Did the employee use friendly and tactful words? | | X | | | |
| Was there distracting background noise on the employee's end during the call? | X | | | | |
| Was the caller asked to repeat themselves several times? If so, about how many ? | X | | | | |
| Was the caller placed on hold for longer than 1 minute? | | X | | | |
| If a transfer was required, was it handled properly? How many transfers occurred? | | | X | | |
| Was the employee engaged and reacting to the conversation? | | X | | | |
| Did the employee address the caller properly when needed? (using sir / ma'am, or the individual's name) | X | | | | |
| Did the employee end the call with the proper exit? | X | | | | |
| Did the employee thank the caller? | X | | | | |
| Did the employee reflect the best image for the company? | | X | | | |

**State Office Reviewer:** ████████████ **Program Manager**

# REDACTED

**NOTE:** **Report was entered for Webster County,** ███████████

**Ex. 9**



# MISSISSIPPI DEPARTMENT OF CHILD PROTECTION SERVICES
## DIVISION OF FAMILY AND CHILDREN'S SERVICES

## Mississippi Centralized Intake Feedback Form

**To be submitted by any staff at any level with feedback regarding a specific intake.  Feedback regarding identified trends are welcomed, but need to be tied to specific intake(s) when possible.**

| | |
|---|---|
| **Primary Caretaker's Name:** | **Intake Worker:** |
| **Date / Time of Intake:** | **County:** |
| **Feedback submitted by:** <br> **(Worker's name, job title, county)** | **Date Feedback Submitted:** |

**Concerns:**

**Justification/Recommendations for improvement**:

**\*Please submit a print screen along with the feedback form\***

**Return the completed form within five (5) buisness days to:**

**Stephanie Pepper/dfcs/mdhs@mdhs, Tamara Garner/dfcs/mdhs@mdhs, and Michelle McGloster/dfcs/mdhs@mdhs**



# MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
## DIVISION OF FAMILY AND CHILDREN'S SERVICES

## Mississippi Centralized Intake Feedback Form

To be submitted by any staff at any level with feedback regarding a specific intake. Feedback regarding identified trends are welcomed, but need to be tied to specific intake(s) when possible.



MS. CENTRALIZED INTAKE
APR 01 2015
PROGRAM MANAGER

| Primary Caretaker's Name: ▓▓▓▓▓▓ | Intake Worker: ▓▓▓▓▓ |
|---|---|
| Date / Time of Intake:<br>04/01/2015 @ 9:18AM | County:<br>Jackson |
| Feedback submitted by:<br>(Worker's name, job title, county)<br>▓▓▓▓▓▓▓ Program Manager,<br>State Office | Date Feedback Submitted:<br>04/01/2015 |

**Concerns:** A child in custody report was entered on 04/01/2015 for Jackson county. However, ▓▓▓▓▓▓▓ a member of the special investigation unit team was not included on the email notification concerning this report. Please provided recommendation/action plan for improvement.

**Note:** Please ensure that intake worker is aware of the notification process and protocol to follow regarding a child in custody report.

<u>Resource Reports & Special Handling Investigations</u>

During work hours and after hours Social Work p.r.n. will send email notifications (which will include screenshots) of all resource reports, special investigations, and reports of children in custody (whether a resource report or not) to the following persons within two hours of receiving the allegations:

> Regional ASWS, Regional Director, ▓▓▓▓▓ ▓▓▓▓▓ ▓▓▓▓▓
> ▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ and ▓▓▓▓▓.

**Justification/Recommendations for improvement:**

**Response from Social Work p.r.n.:** *From intake staff* ▮▮▮▮ brought it to my attention that I had omitted ▮▮▮▮ from the list and stated she had forwarded the e-mail to ▮▮▮ It was an oversight on my behalf and I apologized to ▮▮▮ for the oversight.

**\*Please submit a print screen along with the feedback form\***

**Return the completed form within five (5) buisness days to:**

<u>Stephanie  X Smith/dfcs/mdhs@mdhs</u>, <u>Tamara Garner/dfcs/mdhs@mdhs, and Michelle McGloster/dfcs/mdhs@mdhs</u>







**Ex. 10**

# CENTRALIZED INTAKE QA

| Primary Caretakers Name: | Intake Workers Name: |
|---|---|
| _____ | |
| | Shift: |
| County: | |
| _____ | |
| | Date of intake:    Time: a.m./p.m. |
| Date of review: | |

| ACCURACY | | | TOTAL 26 |
|---|---|---|---|
| 1.   Were the allegations of maltreatment read back to the reporter and the correct intake method selected? (5) | YES ☑ | NO ☐ | 10 |
| 2.   Was customer service provided throughout the phone call? (professionalism, telephone etiquette and "smiling voice") (1) | YES ☑ | NO ☐ | 2 |
| 3.   Were the details of the reporter's information entered in MACWIS? (Did the MACWIS report contain all allegations provided during the phone call? Safety concerns? Situational factors? Family strengths? ) (1) | YES ☑ | NO ☐ | 2 |
| 4.   Did the Intake Worker use the Intake Guideline tool? (Did the call recording reflect strength-based questions to assist in objective decision-making? (1) | YES ☑ | NO ☐ | 2 |
| 5.   Was the screening tool answered in accordance to statutory definition and information received via Intake Guideline Tool? (5) | YES ☑ | NO ☐ | 10 |

Remarks:

| ESSENTIAL INFORMATION RECEIVED | | | TOTAL 36 |
|---|---|---|---|
| 1.   Was the victim's age & name documented in MACWIS (3) | YES ☑ | NO ☐ | 6 |
| 2.   Was the primary and/or secondary caretaker documented in MACWIS? (4) | YES ☑ | NO ☐ | 8 |
| 3.   Were the household members documented in MACWIS? (1) | YES ☑ | NO ☐ | 2 |
| 4.   Was the physical address documented in MACWIS? (3) | YES ☑ | NO ☐ | 6 |
| 5.   Was the victim's school and/or daycare contact information requested and documented in MACWIS? (1) | YES ☑ | NO ☐ | 2 |
| 6.   Was the alleged perpetrator's name & address requested and documented in MACWIS? (1) | YES ☑ | NO ☐ | 2 |
| 7.   Was the date the alleged abuse occurred (incident date) documented in MACWIS? (3) | YES ☑ | NO ☐ | 6 |
| 8.   Did the intake worker ask if the family was of Native American Heritage? (1) | YES ☑ | NO ☐ | 2 |
| 9.   Was the resource or special handling report documented in MACWIS in accordance to policy? (1) | YES ☑ | NO ☐ | 2 |

Revised 9/2011 by SWprn

| Remarks: | | | | |
|---|---|---|---|---|
| **ROLE/RELATIONSHIP TO VICTIM ESTABLISHED** | | | | **TOTAL**<br>**4** |
| 1.   Was the "person/role information known at intake" documented in the Report Summary tab in MACWIS? (1) | YES<br>☑ | NO<br>☐ | | 2 |
| 2.   Was the "household status" information accurately documented on the Report Summary tab at MACWIS? (1) | YES<br>☑ | NO<br>☐ | | 2 |
| Remarks: | | | | |
| **MALTREATMENT CLEAR & EASY TO READ** | | | | **TOTAL**<br>**26** |
| 1.   Did MACWIS contain all allegations indicated via reporter? (5) | YES<br>☑ | NO<br>☐ | | 10 |
| 2.   If multiple maltreatments were provided, were they selected on the Alleg/Liv Arrangements tab in MACWIS? (5) | YES<br>☑ | NO<br>☐ | | 10 |
| 3.   Is documentation in MACWIS easy to read and free from misspelled words & grammar errors? (3) | YES<br>☑ | NO<br>☐ | | 6 |
| Remarks: | | | | |
| **DILIGENT SEARCH/CONFIRMATION** | | | | **TOTAL**<br>**8** |
| 1.   Were household members known at intake confirmed in MACWIS? (3) | YES<br>☑ | NO<br>☐ | | 6 |
| 2.   Was a diligent search performed in MAVERICS and documented in MACWIS? (1) | YES<br>☑ | NO<br>☐ | | 2 |
| Reviewer's signature: ▓▓▓▓▓▓▓▓ Date: February 10, 2016 | | | | **TOTAL**<br>**100** |

Revised 9/2011 by SWprn

**Ex. 11**



Job Name: MW1JHOTP
Program: MWZHOTLB
REPORT: MWZHOTLD

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
Hotline Quality Assurance Report
For the Date of January 26, 2015

Date: 01/27/2015
Time: 03:00 AM
Page: 1

| M: Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|

***** Shift 2: (8:00 am - 4:59 pm)

| | | 006924132 | Itawamba | | Child Hotl | | 01/26/15 | 07:55 | 01/26/15 | 09:02 | 01:36 >> |
| | | 006924130 | Yazoo | | Child Hotl | | 01/26/15 | 08:00 | 01/26/15 | 09:09 | 01:31 >> |
| | | 006924212 | Grahom | | Child Hotl | | 01/26/15 | 08:35 | | | | |
| | | 006924220 | Hinds | | Child Hotl | | 01/26/15 | 08:31 | 01/26/15 | 09:00 | 01:12 >> |
| | | 006924247 | Carroll | | Adult Hotl | | 01/26/15 | 08:03 | 01/26/15 | 09:12 | |
| | | 006924271 | Harrison | | Child E-rpt | | 01/26/15 | 08:13 | 01/26/15 | 09:21 | 00:14 |
| | | 006924238 | Pontotoc | | Child Hotl | | | | | | |
| | | 006924344 | Pike | | Adult Hotl | | 01/26/15 | 08:04 | 01/26/15 | 09:41 | |
| | | 006924352 | Hinds | | Child Hotl | | 01/26/15 | 08:08 | 01/26/15 | 09:31 | 00:45 |
| | | 006924360 | Hinds | | Child Hotl | | 01/26/15 | 08:36 | 01/26/15 | 09:54 | 00:25 |
| | | 006924379 | Monroe | | Child Hotl | | 01/26/15 | 08:46 | 01/26/15 | 09:55 | 00:44 |
| | | 006924387 | Washington | | Child Hotl | | 01/26/15 | 08:25 | 01/26/15 | 10:00 | 00:33 >> |
| | | 006924 | Hinds | | Child E-rpt | | 01/26/15 | 08:35 | 01/26/15 | 10:30 | 00:04 |
| | | 006924456 | Yalobusha | | Child Hotl | | 01/26/15 | 08:32 | 01/26/15 | 10:31 | |
| | | 006924476 | Marshall | | Child Hotl | | 01/26/15 | 09:41 | 01/26/15 | 10:31 | 00:26 |
| | | 006924506 | Jasper | | Child Hotl | | 01/26/15 | 08:47 | 01/26/15 | 10:36 | 00:51 |
| | | 006924522 | Warren | | Child Hotl | | 01/26/15 | 08:37 | 01/26/15 | 10:40 | 00:29 |
| | | 006924530 | Jackson | | Child Hotl | | 01/26/15 | 08:41 | 01/26/15 | 10:45 | 00:43 |
| | | 006924549 | Lee | | Child Hotl | | 01/26/15 | 09:55 | 01/26/15 | 10:46 | 00:32 |
| | | 006924 | Leroi | | Child Hotl | | | | | | |
| | | 006924566 | Greene | | Child Hotl | | 01/26/15 | 08:39 | 01/26/15 | 10:48 | 00:32 |
| | | 006924603 | Marshall | | Child Hotl | | 01/26/15 | 08:30 | 01/26/15 | 10:55 | 00:13 |
| | | 006924611 | Hinds | | Child Hotl | | 01/26/15 | 08:55 | 01/26/15 | 10:56 | 00:13 |
| | | 006924638 | Holmes | | Child Hotl | | 01/26/15 | 10:54 | | | 00:06 |
| | | 006924646 | Oktibbeha | | Child Hotl | | 01/26/15 | 10:36 | 01/26/15 | 11:01 | |
| | | 006924662 | Hinds | | Child Hotl | | 01/26/15 | 09:34 | 01/26/15 | 11:05 | 00:34 >> |
| | | 006924670 | Attala | | Child Hotl | | 01/26/15 | 10:35 | 01/26/15 | 11:09 | 01:14 >> |
| | | 006924689 | Warren | | Child Hotl | | 01/26/15 | 08:45 | 01/26/15 | 11:10 | 00:22 |
| | | 006924697 | Pankin | | Child Hotl | | | | | | |
| | | 006924700 | Lowndes | | Child Hotl | | | | | | |
| | | 006924727 | Harrison | | Child Hotl | | 01/26/15 | 09:09 | 01/26/15 | 11:21 | 00:22 |
| | | 006924735 | West Bolivar | | Child Hotl | | 01/26/15 | 09:56 | 01/26/15 | 11:24 | 00:11 |
| | | 006924743 | DeSoto | | Child E-rpt | | 01/26/15 | 10:37 | 01/26/15 | 11:25 | 00:07 |
| | | 006924778 | Lauderdale | | Child Hotl | | | | | | |
| | | 006924808 | Clay | | Child Hotl | | | | | | 00:45 |
| | | 006924820 | Watson | | Child Hotl | | | | | | 00:44 |
| | | 006924832 | Lamar | | Child Hotl | | 01/26/15 | 08:17 | 01/26/15 | 11:33 | |
| | | 006924840 | Warren | | Child Hotl | | 01/26/15 | 08:50 | 01/26/15 | 11:33 | 00:06 |
| | | 006924875 | Hinds | | Child Hotl | | 01/26/15 | 10:33 | 01/26/15 | 11:34 | 00:34 |
| | | 006924883 | Adams | | Child Hotl | | 01/26/15 | 10:53 | 01/26/15 | 11:37 | 00:34 |
| | | 006924891 | Adams | | Child Hotl | | 01/26/15 | 10:24 | 01/26/15 | 11:45 | |
| | | 006924913 | Forrest | | Child Hotl | | | | | | 00:37 |
| | | 006924 | Lamar | | Child Hotl | | | | | | |
| | | 006924956 | Pearl River | | Adult Hotl | | 01/26/15 | 11:20 | 01/26/15 | 11:45 | 00:03 |
| | | 006924964 | Lamar | | Child Hotl | | 01/26/15 | 08:53 | 01/26/15 | 11:45 | 00:45 |
| | | 006924972 | Franklin | | Child Hotl | | 01/26/15 | 10:03 | 01/26/15 | 11:47 | 00:45 |
| | | 006924 | Hinds | | Child Hotl | | 01/26/15 | 09:00 | 01/26/15 | 11:52 | 00:24 |
| | | 006925006 | Lamar | | Child Hotl | | 01/26/15 | 08:53 | 01/26/15 | 11:55 | |
| | | 006925039 | Lauderdale | | Child Hotl | | 01/26/15 | 11:03 | | | 00:07 |
| | | 006925065 | Harrison | | Child Hotl | | 01/26/15 | 11:09 | 01/26/15 | 12:23 | 00:06 |
| | | 006925073 | Hinds | | Child Hotl | | 01/26/15 | 10:37 | 01/26/15 | 12:23 | 00:58 |
| | | 006925081 | Itawamba | | Child Hotl | | 01/26/15 | 11:48 | 01/26/15 | 12:25 | 00:43 |
| | | 006925102 | Lincoln | | Child Hotl | | 01/26/15 | 11:34 | 01/26/15 | 12:26 | 00:10 |
| | | 006925113 | Harrison | | Child Hotl | | 01/26/15 | 11:47 | 01/26/15 | 12:27 | |
| | | 006925146 | Harrison | | Child Hotl | | 01/26/15 | 11:43 | 01/26/15 | 12:28 | 00:12 |





```
Job Name: MN1JHOTP                    MISSISSIPPI DEPARTMENT OF HUMAN SERVICES              Date: 04/27/2015
Program : MNZHOTLD                       Hotline Quality Assurance Report                   Time: 9:00 AM
REPORT                               For the Date As of January 26, 2015                    Page: 3

## Pers ID   Head of Household   Intake ID   Intake County   ANE      Intake    Entry Worker Name   Intake     Intake   Entry      Entry     Time
                                                             Type     Type                          Date       Time     Date       Time      Diff

              006925952   Pontotoc        Child   E-rpt                             01/26/15  14:00  01/26/15  15:34  00:08
              006925960   Wayne           Child   Hotl                              01/26/15  14:26  01/26/15  15:34  00:08
              006925979   Warren          Child   Hotl                              01/26/15  14:48  01/26/15  15:41  00:24
              006925983   Rankin          Child   Hotl
              006926015   Rankin          Child   Hotl
              006926029   Hinds           Child   Hotl                              01/26/15  14:14
              006926037   Lauderdale      Child   E-rpt                             01/26/15  14:46  01/26/15  15:52  00:12
              006926053   Forrest         Child   Hotl                              01/26/15  14:37  01/26/15  16:03  00:04
              006926063   Forrest         Child   Hotl
              006926088   Prentiss        Child   Hotl
              006926101   Harrison        Child   Hotl                              01/26/15  14:57  01/26/15  16:11
              006926134   Forrest         Child   Hotl                              01/26/15  15:14  01/26/15  16:12  00:02
              006926142   Hinds           Adult   Hotl                              01/26/15  15:14  01/26/15  16:14
              006926150   Hinds           Child   E-rpt                             01/26/15  15:42  01/26/15  16:14  00:03
              006926165   Webster         Child   E-rpt
              006926182   Leflore         Child   E-rpt                             01/26/15  14:51  01/26/15  16:24  00:08
              006926193   Pearl River     Child   E-rpt
              006926207   Lamar           Child   Hotl                              01/26/15  15:03  01/26/15  16:22  00:05
              006926258   Marshall        Child   E-rpt                             01/26/15  15:03  01/26/15  16:28  00:18
              006926266   Neshoba         Child   Hotl                              01/26/15  16:04  01/26/15  16:38  00:10
              006926269   Marshall        Child   Hotl                              01/26/15  15:39  01/26/15  16:43  00:12
              006926290   Harrison        Adult   Hotl
              006926290   Harrison        Child   Hotl                              01/26/15  15:33  01/26/15  16:43  00:23
              006926304   Lamar           Child   Hotl                              01/26/15  16:26  01/26/15  16:48  00:10
              006926312   Rankin          Child   Hotl                              01/26/15  16:16  01/26/15  16:52  00:05
              006926320   Marshall        Child   Hotl                              01/26/15  16:22  01/26/15  16:58  00:19

  Shift 2 Total:        146                                                    Total Error - Entry  134   6.1%

ANE Type:    Adult  =   12        Intake Type: Hotline  =  128      MCI Time - Entry Time Totals:
             Child  =  134                     E-Report  =   18           '+++++'  Not Screened           0    0.0%
Total Intake Reports     146                   Both      =  146           Not Submitted
                                                                          30 Min Error                   10    0.0%
                                                                          Over 1 Hour                     9    6.1%

***** Shift 3: (5:00 pm - 11:59 pm)

              006926339   Alcorn          Adult   Hotl                              01/26/15  15:22  01/26/15  17:00
              006926355   Washington      Child   Hotl                              01/26/15  15:49  01/26/15  17:00  00:14
              006926363   Pontotoc        Adult   Hotl                              01/26/15  16:24  01/26/15  17:03  00:03
              006926371   Pearl River     Child   Hotl                              01/26/15  16:27  01/26/15  17:04  00:11
              006926398   Rankin          Child   E-rpt                             01/26/15  15:25  01/26/15  17:06  00:08
              006926401   Lafayette       Adult   Hotl                              01/26/15  16:26  01/26/15  17:08
              006926428   Lauderdale      Adult   Hotl                              01/26/15  15:47  01/26/15  17:09
              006926436   Pearl River     Child   Hotl                              01/26/15  16:34  01/26/15  17:19
              006926444   Jones           Child   Hotl                              01/26/15  16:36  01/26/15  17:19  00:10
              006926452   DeSoto          Child   Hotl                              01/26/15  16:10  01/26/15  17:27  00:15
              006926460   Forrest         Child   Hotl                              01/26/15  16:30  01/26/15  17:50  00:05
              006926479   Winston         Child   Hotl                              01/26/15  16:20  01/26/15  17:59  00:07
              006926487   Lauderdale      Child   Hotl
              006926495   Forrest         Child   Hotl                              01/26/15  16:22  01/26/15  17:54  00:29
              006926517   Sunflower       Child   Hotl                              01/26/15  16:20  01/26/15  18:02  00:41
              006926525   Hinds           Adult   Hotl                              01/26/15  16:17  01/26/15  18:05
              006926533   Washington      Adult   Hotl
              006926541   Pearl River     Child   Hotl                              01/26/15  17:05  01/26/15  18:26  00:21
              006926563   Quitman         Child   Hotl                              01/26/15  16:28  01/26/15  18:24  00:07
              006926576   Harrison        Child   Hotl                              01/26/15  16:07  01/26/15  18:32  00:35
```

```
Job Name: MW1JHOTP                    MISSISSIPPI DEPARTMENT OF HUMAN SERVICES              Date: NOV/27/2015
Program:  MWZHOTLB                       Hotline Quality Assurance Report                   Time: 8:00 AM
REPORT:   MWZHOTLD                     For the Date AS of January 26,2015                   Page:
```

| HH Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 006926584 | Warren | Child | Hotl | | 01/26/15 | 17:36 | 01/26/15 | 18:15 | 00:27 |
| | | 006926592 | Madison | Child | Hotl | | 01/26/15 | 18:39 | 01/26/15 | 19:12 | 00:34 |
| | | 006926606 | Harrison | Child | Hotl | | 01/26/15 | 18:28 | 01/26/15 | 19:43 | 00:28 |
| | | 006926630 | Forrest | Child | Hotl | | 01/26/15 | 20:16 | 01/26/15 | 20:45 | 00:05 |
| | | 006926653 | Lamar | Child | Hotl | | 01/26/15 | | 01/26/15 | | 00:05 |
| | | 006926653 | Itawamba | Child | Hotl | | | | | | |
| | | 006926665 | Pearl River | Child | Hotl | | 01/26/15 | 21:03 | 01/26/15 | 21:28 | 00:19 |
| | | 006926673 | Harrison | Child | Hotl | | 01/26/15 | 21:15 | 01/26/15 | 21:42 | 00:20 |
| | | 006926681 | Jones | Child | Hotl | | 01/26/15 | 21:15 | 01/26/15 | 21:53 | 00:19 |
| | | 006926703 | Yazoo | Child | Hotl | | | | | | |
| | | 006926711 | Lauderdale | Child | Hotl | | 01/26/15 | 21:30 | 01/26/15 | 22:00 | 00:26 |
| | | 006926738 | Pike | Child | Hotl | | 01/26/15 | 22:11 | 01/26/15 | 22:55 | 00:12 |

```
      Shift 3 Total        =      33                                    Total Errors for Shift     =      0    0.0%
      ANE Type:   Adult    =       7        Intake Type: Hotline  =    30      NCI Time - Entry Time Totals:
                  Child    =      26                     E Report  =                 Not Screened  =      0    0.0%
      Total Intake Reports =      33                     Both      =     0        Not Submitted  =      0    0.0%
                                                                              />>>>/     Time Error  =      0
                                                                              />>/     Over 1 Hour  =      0    0.0%


      Summary Total for Date: 01/26/2015                             Total Errors Summary          =      9    5.0%
      ANE Type:   Adult    =      19        Intake Type: Hotline  =   158      NCI Time - Entry Time Totals:
                  Child    =     160                     E Report  =                 Not Screened  =
      Total Intake Reports =     179                     Both      =     0        Not Submitted  =      0    0.0%
                                                                              />>>>/     Time Error  =      0
                                                                              />>/     Over 1 Hour  =      9    5.0%
```

Job Name: MW1JHOTP                    MISSISSIPPI DEPARTMENT OF HUMAN SERVICES                Date: 01/27/2015
Program: MWZHOT1LB                      Hotline Quality Assurance Summary Report              Time: 4:00 AM
REPORT: MWZHOTLS                         For the Date As Of January 26, 2015                  Page:

| Shift | Total | Adult | Child | Hotline | E-Report | Both | Over 1 Hour | Not Screened |
|-------|-------|-------|-------|---------|----------|------|-------------|--------------|
| 2: (8:00 am - 4:59 pm) | 146 | 12 | 134 | 128 | 18 | 0 | 9 | 0 |
| 3: (5:00 pm - 11:59 pm) | 33 | 7 | 26 | 30 | 3 | 0 | 0 | 0 |
| Summary Total for Date: 01/26/2015 | 179 | 19 | 160 | 158 | 21 | 0 | 9 | 0 |

==================================================================================================================

```
Job Name: MWIJHOTP                MISSISSIPPI DEPARTMENT OF HUMAN SERVICES              Date: 02/03/2015
Program   MWZHOTLB                      Hotline Quality Assurance Report                Time: 08:00 AM
REPORT    MWZHOTLD                  For the Date As: of February 02, 2015               Page: 41
```

| HH Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|

**\*\*\*\*\* Shift 1: (12:00 am - 7:59 am)**

| | | 006936385 Jackson | | Child Hotl | | | 02/02/15 04:16 | | 02/02/15 04:47 | | 00:16 |
| | | 006936393 Washington | | Child Hotl | | | 02/02/15 07:27 | | 02/02/15 07:44 | | 00:09 |

**Shift 1 Total = 2**          **Total Errors for Shift = 0   0.0%**

| ANE Type:  Adult | 0 | Intake Type:  Hotline | 2 | MCI Time Entry Time Totals |
| Child | 2 | E-Report | 0 | >>>>> Not Screened = 0 0.0% |
| Total Intake Reports | 2 | Both | 0 | >>>>> Not Submitted = 0 0.0% |
| | | | | >>>>>' Time Error = 0 |
| | | | | >>>' Over 1 Hour = 0  0.0% |

**\*\*\*\*\* Shift 2: (8:00 am - 4:59 pm)**

| | | 006936415 Jones | | Child Hotl | | | 02/02/15 08:04 | | 02/02/15 08:17 | | 01:14 >> |
| | | 006936431 DeSoto | | Child Hotl | | | 02/02/15 08:36 | | 02/02/15 08:54 | | 01:34 >> |
| | | 006936484 Lee | | Child Hotl | | | 02/02/15 08:33 | | 02/02/15 09:00 | | 00:23 |
| | | 006936466 Jones | | Child Hotl | | | 02/02/15 08:41 | | 02/02/15 03:03 | | 00:39 |
| | | 006936474 Jones | | Child Hotl | | | 02/02/15 08:36 | | 02/02/15 08:53 | | 00:17 |
| | | 006936496 Claiborne | | Child Hotl | | | 02/02/15 08:27 | | 02/02/15 09:04 | | 00:37 |
| | | 006936504 Lauderdale | | Child Hotl | | | 02/02/15 08:30 | | 02/02/15 09:12 | | 00:38 |
| | | 006936512 Lauderdale | | Child E-rpt | | | 02/02/15 07:59 | | 02/02/15 09:22 | | 00:19 |
| | | 006936547 DeSoto | | Child Hotl | | | 02/02/15 08:41 | | 02/02/15 09:33 | | 00:19 |
| | | 006936557 | | Child Hotl | | | 02/02/15 09:05 | | 02/02/15 09:41 | | 00:12 |
| | | 006936598 Claiborne | | Child Hotl | | | 02/02/15 08:18 | | 02/02/15 09:24 | | 01:24 >> |
| | | 006936616 Rankin | | Child Hotl | | | 02/02/15 08:57 | | 02/02/15 09:48 | | 01:37 >> |
| | | 006936624 Hinds | | Child Hotl | | | 02/02/15 09:01 | | 02/02/15 09:55 | | 00:08 |
| | | 006936636 Lafayette | | Child Hotl | | | 02/02/15 08:59 | | 02/02/15 09:57 | | 00:25 |
| | | 006936644 Hinds | | Child Hotl | | | 02/02/15 09:21 | | 02/02/15 10:06 | | 00:11 |
| | | 006936652 | | Child Hotl | | | 02/02/15 08:31 | | 02/02/15 10:23 | | 00:26 |
| | | 006936660 Forrest | | Child Hotl | | | 02/02/15 09:41 | | 02/02/15 10:24 | | 00:23 |
| | | 006936679 Harrison | | Child Hotl | | | 02/02/15 09:15 | | 02/02/15 10:41 | | 00:28 |
| | | 006936687 Jones | | Child Hotl | | | 02/02/15 08:51 | | 02/02/15 10:41 | | 00:27 |
| | | 006936695 Humphreys | | Child Hotl | | | 02/02/15 10:22 | | 02/02/15 10:41 | | 00:26 |
| | | 006936709 Monroe | | Child Hotl | | | 02/02/15 10:22 | | 02/02/15 10:42 | | 00:26 |
| | | 006936710 Rankin | | Child Hotl | | | 02/02/15 09:51 | | 02/02/15 10:46 | | 01:45 >> |
| | | 006936726 | | Child Hotl | | | 02/02/15 10:43 | | 02/02/15 10:55 | | 01:04 >> |
| | | 006936733 Attala | | Child Hotl | | | 02/02/15 10:59 | | 02/02/15 10:58 | | |
| | | 006936741 Monroe | | Adult Hotl | | | 02/02/15 10:44 | | 02/02/15 10:57 | | 00:25 |
| | | 006936768 Jefferson | | Child Hotl | | | 02/02/15 09:05 | | 02/02/15 10:59 | | 00:04 |
| | | 006936784 Hinds | | Child E-rpt | | | 02/02/15 10:34 | | 02/02/15 11:02 | | 00:28 |
| | | 006936792 Hinds | | Child Hotl | | | 02/02/15 10:44 | | 02/02/15 11:02 | | 00:22 |
| | | 006936806 DeSoto | | Child Hotl | | | 02/02/15 10:00 | | 02/02/15 11:06 | | 00:27 |
| | | 006936814 Oktibbeha | | Child Hotl | | | 02/02/15 09:33 | | 02/02/15 11:09 | | 00:25 |
| | | 006936822 Benton | | Child E-rpt | | | 02/02/15 10:31 | | 02/02/15 11:09 | | 00:25 |
| | | 006936830 Hinds | | Child Hotl | | | 02/02/15 09:42 | | 02/02/15 11:14 | | 00:47 |
| | | 006936849 Scott | | Child Hotl | | | 02/02/15 08:55 | | 02/02/15 11:16 | | 00:31 |
| | | 006936857 Forrest | | Child Hotl | | | 02/02/15 10:40 | | 02/02/15 11:20 | | 00:10 |
| | | 006936865 Tate | | Child Hotl | | | 02/02/15 10:40 | | 02/02/15 11:26 | | 00:18 |
| | | 006936873 Jones | | Child Hotl | | | 02/02/15 10:39 | | 02/02/15 11:35 | | 00:24 |
| | | 006936881 Rankin | | Child Hotl | | | 02/02/15 10:31 | | 02/02/15 11:33 | | 00:24 |
| | | 006936903 Oktibbeha | | Child Hotl | | | 02/02/15 10:57 | | 02/02/15 11:37 | | 00:27 |
| | | 006936911 Holmes | | Adult Hotl | | | 02/02/15 10:57 | | 02/02/15 11:37 | | |
| | | 006936938 Hinds | | Child Hotl | | | 02/02/15 10:53 | | 02/02/15 11:35 | | 00:15 |
| | | 006936946 DeSoto | | Child Hotl | | | 02/02/15 10:53 | | 02/02/15 11:43 | | 00:08 |
| | | 006936954 Marshall | | Child Hotl | | | | | | | |
| | | 006936962 Rankin | | Child E-rpt | | | 02/02/15 10:53 | | 02/02/15 11:43 | | 00:08 |



| HH/Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 006936989 | Pontotoc | Child Hotl | | | 02/02/15 | 11:15 | 02/02/15 | 11:58 | 00:27 |
| | | 006936997 | Union | Child Hotl | | | 02/02/15 | 11:15 | 02/02/15 | 11:58 | 00:24 |
| | | 006937004 | Harrison | Adult Hotl | | | 02/02/15 | 11:10 | 02/02/15 | 12:02 | 00:33 |
| | | 006937020 | Smith | Child E-rpt | | | 02/02/15 | 10:56 | 02/02/15 | 12:04 | 00:12 |
| | | 006937039 | Copiah | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:22 |
| | | 006937044 | Hinds | Child Hotl | | | 02/02/15 | 11:28 | 02/02/15 | 12:08 | 00:54 |
| | | 006937055 | Pontotoc | Child Hotl | | | 02/02/15 | 10:53 | 02/02/15 | 12:08 | 00:20 |
| | | 006937063 | Jackson | Child Hotl | | | 02/02/15 | 11:21 | 02/02/15 | 12:09 | 00:09 |
| | | 006937098 | Hinds | Child Hotl | | | 02/02/15 | 11:04 | 02/02/15 | 12:18 | 00:05 |
| | | 006937103 | Adams | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:22 |
| | | 006937128 | Hinds | Child Hotl | | | 02/02/15 | 11:46 | 02/02/15 | 12:22 | 00:22 |
| | | 006937136 | Lee | Child Hotl | | | 02/02/15 | 11:25 | 02/02/15 | 12:29 | 00:55 |
| | | 006937144 | Itawamba | Child Hotl | | | 02/02/15 | 11:27 | 02/02/15 | 12:30 | 00:32 |
| | | 006937152 | Desoto | Child E-rpt | | | 02/02/15 | 11:08 | 02/02/15 | 12:30 | 00:18 |
| | | 006937150 | Harrison | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:19 |
| | | 006937169 | Jefferson | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:05 |
| | | 006937187 | Bentonson | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:44 |
| | | 006937195 | Pearl River | Adult Hotl | | | 02/02/15 | 12:27 | 02/02/15 | 12:44 | |
| | | 006937209 | Attala | Child Hotl | | | 02/02/15 | 11:32 | 02/02/15 | 12:46 | 01:00 >> |
| | | 006937217 | Jones | Child Hotl | | | 02/02/15 | 12:25 | 02/02/15 | 12:48 | 00:24 |
| | | 006937225 | Calhoun | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:05 |
| | | 006937241 | Alcorn | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:22 |
| | | 006937268 | Jackson | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:25 |
| | | 006937276 | Harrison | Child Hotl | | | 02/02/15 | 12:14 | 02/02/15 | 13:03 | 00:36 |
| | | 006937284 | Tippah | Child Hotl | | | 02/02/15 | 11:43 | 02/02/15 | 13:04 | 00:17 |
| | | 006937292 | Harrison | Child Hotl | | | 02/02/15 | 11:10 | 02/02/15 | 13:05 | 00:09 |
| | | 006937306 | Hinds | Child Hotl | | | 02/02/15 | 12:00 | 02/02/15 | 13:05 | 00:05 |
| | | 006937314 | Monroe | Child Hotl | | | 02/02/15 | 12:23 | 02/02/15 | | 00:10 |
| | | 006937330 | Monroe | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:57 |
| | | 006937349 | Adams | Child Hotl | | | 02/02/15 | 11:21 | 02/02/15 | 13:20 | 00:57 |
| | | 006937357 | Franklin | Child Hotl | | | 02/02/15 | 12:34 | 02/02/15 | 13:23 | 00:23 |
| | | 006937365 | Scott | Adult Hotl | | | 02/02/15 | 12:01 | 02/02/15 | 13:28 | |
| | | 006937373 | Jackson | Child Hotl | | | 02/02/15 | 13:00 | 02/02/15 | | 00:40 |
| | | 006937391 | Harrison | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:40 |
| | | 006937403 | Grenada | Child Hotl | | | 02/02/15 | 13:05 | 02/02/15 | 13:43 | 00:05 |
| | | 006937411 | Jackson | Child Hotl | | | 02/02/15 | 13:22 | 02/02/15 | 13:43 | 00:58 |
| | | 006937438 | Holmes | Child Hotl | | | 02/02/15 | 11:50 | 02/02/15 | 13:46 | 00:24 |
| | | 006937446 | Marshall | Child Hotl | | | 02/02/15 | 11:50 | 02/02/15 | 13:46 | 01:11 >> |
| | | 006937454 | Forrest | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:05 |
| | | 006937470 | Desoto | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:22 |
| | | 006937489 | Warren | Child Hotl | | | 02/02/15 | 13:50 | 02/02/15 | 13:57 | 00:27 |
| | | 006937497 | Coahoma | Child Hotl | | | 02/02/15 | 13:50 | 02/02/15 | 14:01 | 00:39 |
| | | 006937500 | Forrest | Child Hotl | | | 02/02/15 | 12:17 | 02/02/15 | 14:04 | 00:11 |
| | | 006937527 | Hinds | Child Hotl | | | 02/02/15 | 13:55 | 02/02/15 | 14:05 | 00:39 |
| | | 006937543 | Lamar | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:14 |
| | | 006937551 | Hinds | Child Hotl | | | 02/02/15 | | 02/02/15 | 14:22 | 00:14 |
| | | 006937578 | Lowndes | Child Hotl | | | 02/02/15 | 12:25 | 02/02/15 | 14:22 | 00:14 |
| | | 006937586 | Hinds | Child Hotl | | | 02/02/15 | 13:02 | 02/02/15 | 14:26 | 00:27 |
| | | 006937594 | Jackson | Child Hotl | | | 02/02/15 | 13:13 | 02/02/15 | 14:26 | 00:17 |
| | | 006937616 | Harrison | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:05 |
| | | 006937624 | Harrison | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:00 |
| | | 006937632 | Hinds | Child Hotl | | | 02/02/15 | 14:22 | 02/02/15 | 14:40 | 01:03 >> |
| | | 006937640 | Lee | Child Hotl | | | 02/02/15 | 13:57 | 02/02/15 | 14:40 | 00:16 |
| | | 006937659 | Hinds | Child Hotl | | | 02/02/15 | 14:01 | 02/02/15 | 14:49 | 00:40 |
| | | 006937667 | Harrison | Child E-rpt | | | 02/02/15 | | 02/02/15 | | 00:05 |
| | | 006937675 | Scott | Child Hotl | | | 02/02/15 | 13:37 | 02/02/15 | | 00:11 |
| | | 006937683 | Harrison | Child Hotl | | | 02/02/15 | | 02/02/15 | | 00:30 |
| | | 006937713 | Lincoln | Child Hotl | | | 02/02/15 | 14:18 | 02/02/15 | 14:55 | 00:33 |



Job Name: MW1JHOTP                    MISSISSIPPI DEPARTMENT OF HUMAN SERVICES                    Date: 02/03/2015
Program: MW2HOTLB                     Hotline Quality Assurance Report                           Time: 09:00 AM
Report: MW2HOTLD                      For the Date As of February 02, 2015                       Page: 1

| HH Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 006937721 | Jackson | Child | Hotl | | 02/02/15 | 14:12 | 02/02/15 | 15:00 | 00:30 |
| | | 006937748 | Jackson | Child | E-rpt | | 02/02/15 | 14:16 | 02/02/15 | 15:08 | 00:16 |
| | | 006937756 | Perry | Child | Hotl | | 02/02/15 | 13:28 | 02/02/15 | 15:11 | 00:27 |
| | | 006937828 | Oktibbeha | Child | Hotl | | 02/02/15 | 14:18 | 02/02/15 | 15:30 | 00:09 |
| | | 006937845 | Jasper | Child | Hotl | | 02/02/15 | 13:58 | 02/02/15 | 15:35 | 00:09 |
| | | 006937853 | Prentiss | Adult | Hotl | | 02/02/15 | 15:14 | 02/02/15 | 15:37 | |
| | | 006937942 | Marion | Adult | Hotl | | 02/02/15 | 15:29 | 02/02/15 | 15:43 | |
| | | 006937950 | West Chickasaw | Child | Hotl | | 02/02/15 | 15:25 | 02/02/15 | 15:44 | 00:14 |
| | | 006937969 | Lauderdale | Child | Hotl | | 02/02/15 | 15:16 | 02/02/15 | 15:45 | 00:54 |
| | | 006938000 | Lee | Child | Hotl | | 02/02/15 | 15:44 | 02/02/15 | 16:04 | 00:08 |
| | | 006938019 | Monroe | Adult | Hotl | | 02/02/15 | 15:42 | 02/02/15 | 16:07 | |
| | | 006938027 | Hinds | Child | Hotl | | 02/02/15 | 15:27 | 02/02/15 | 16:10 | 00:10 |
| | | 006938078 | Lee | Child | Hotl | | 02/02/15 | 16:00 | 02/02/15 | 16:22 | 00:12 |
| | | 006938086 | Harrison | Child | Hotl | | 02/02/15 | 15:18 | 02/02/15 | 16:23 | 00:05 |
| | | 006938094 | Lamar | Child | Hotl | | 02/02/15 | 15:45 | 02/02/15 | 16:33 | 00:20 |
| | | 006938159 | Coahoma | Child | Hotl | | 02/02/15 | 16:34 | 02/02/15 | 16:58 | 00:24 |

Shift 2 Total = 135

| ANE Type: | Adult | = | 12 | Intake Type: | Hotline | = | 125 | Not Screened = | 0 | 0.0% |
| | Child | = | 123 | | E-Report | = | 10 | Not Submitted = | 0 | 0.0% |
| Total Intake Reports | = | 135 | | | Both | = | 0 | | Time Error = | 0 |

***** Shift 3: (5:00 pm - 11:59 pm)

| | | 006938167 | Pike | Child | Hotl | | 02/02/15 | 16:45 | 02/02/15 | 17:07 | 00:57 |
| | | 006938205 | Alcorn | Child | Hotl | | 02/02/15 | 16:45 | 02/02/15 | 17:15 | 00:16 |
| | | 006938213 | Claiborne | Child | Hotl | | 02/02/15 | 16:38 | 02/02/15 | 17:22 | 00:09 |
| | | 006938221 | Copiah | Adult | Hotl | | 02/02/15 | 17:08 | 02/02/15 | 17:26 | |
| | | 006938272 | Harrison | Child | Hotl | | 02/02/15 | 16:52 | 02/02/15 | 18:26 | 00:18 |
| | | 006938299 | Harrison | Child | Hotl | | 02/02/15 | 17:18 | 02/02/15 | 18:26 | 00:07 |
| | | 006938302 | Lauderdale | Child | Hotl | | 02/02/15 | 17:35 | 02/02/15 | 18:28 | 00:39 |
| | | 006938345 | Lee | Child | Hotl | | 02/02/15 | 18:37 | 02/02/15 | 19:40 | 00:35 |

| HH Pers ID | Head of Household | Intake ID | Intake County | ANE Type | Intake Type | Entry Worker Name | Intake Date | Intake Time | Entry Date | Entry Time | Time Diff |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | 006938353 | Hinds | Child | Hotl |  | 02/02/15 | 18:54 | 02/02/15 | 19:45 | 00:09 |
|  |  | 006938361 | Leflore | Child | Hotl |  | 02/02/15 | 20:05 | 02/02/15 | 20:39 | 00:13 |
|  |  | 006938369 | Hinds | Child | Hotl |  | 02/02/15 | 20:16 | 02/02/15 | 20:40 | 00:16 |
|  |  | 006938350 | Tishomingo | Adult | Hotl |  | 02/02/15 | 20:56 | 02/02/15 | 21:02 |  |
|  |  | 006938418 | Tishomingo | Adult | Hotl |  | 02/02/15 | 21:00 | 02/02/15 | 21:20 |  |
|  |  | 006938426 | Holmes | Child | Hotl |  | 02/02/15 | 22:09 | 02/02/15 | 22:35 | 00:11 |

```
       Shift 3 Total        =    23                                    Total Errors for Shift    =        0    0.0%

       ANE Type    Adult     =     4        Intake Type Hotline   =    23      MCI Time  Entry Time Totals
                   Child     =    19                 E-Report     =     0      '*****' Not Screened   =        0    0.0%
       Total Intake Reports  =    23        Both     =     0                   '*****' Not Submitted  =        0    0.0%
                                                                               '>>>>>'  Time Error    =        0    0.0%
                                                                               '>>>'   Over 1 Hour    =        0    0.0%


====================================================================================================================

   Summary Total for Date: 02/02/2015                                 Total Errors Summary       =        9    5.6%

       ANE Type    Adult     =    17        Intake Type Hotline   =   148      MCI Time  Entry Time Totals
                   Child     =   143                 E-Report     =    12      '*****' Not Screened   =        0    0.0%
       Total Intake Reports  =   160        Both     =     0                   '*****' Not Submitted  =        0    0.0%
                                                                               '>>>>>'  Time Error    =        9    5.6%
                                                                               '>>>'   Over 1 Hour    =        9    5.6%
```

Job Name: MW1JHOTP
Program : MWZHOTLB
REPORT  : MWZHOTLS

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
Hotline Quality Assurance Summary Report
For the Date As Of February 02,2015

Date: 02/02/2015
TIME: 10:00 AM
Page:

| Shift | Total | Adult | Child | Hotline | E-Report | Both | Over 1 Hour | Not Screened |
|---|---|---|---|---|---|---|---|---|
| 1: (12:00 am - 7:59 am) | 2 | 0 | 2 | 2 | 0 | 0 | 0 | 0 |
| 2: (8:00 am - 4:59 pm) | 135 | 13 | 122 | 125 | 10 | 0 | 9 | 0 |
| 3: (5:00 pm - 11:59 pm) | 23 | 4 | 19 | 21 | 2 | 0 | 0 | 0 |
| Summary Total for Date: 02/02/2015 | 160 | 17 | 143 | 148 | 12 | 0 | 9 | 0 |



**Ex. 12**

# Overview

On September 14, 2014, Social Work p.r.n. embarked upon its sixth year in a contractual agreement with the Mississippi Department of Human Services to maintain, manage, oversee and provide required services for the Centralized Intake and 24 Hour Hotline and Disaster Preparedness Plan.  Social Work p.r.n. is responsible for the daily operation of the Mississippi Centralized Intake Program (MCIP), which has been successfully operable from November 1, 2009 to present.  Social Work p.r.n. is responsible for answering all calls, completing initial assessments of information provided, entering collected data information into the Mississippi Automated Child Welfare Information System (MACWIS) and answering the sufficiency questions in accordance to policy which provides a report level prior to submitting the report to one of the 84 Mississippi counties.

MCIP remains the point-of-contact for the entire State of Mississippi as it relates to Abuse and Neglect for Children and Vulnerable Adults and Disaster Preparedness. The MCI program also has the responsibilities of providing information/referrals and serving as a liaison for counties and state office in the event of a natural disaster.

MCIP's e-reporting system remains covered 24-hours a day; 7 days a week by designated staff to ensure all reports are retrieved within a 15- minute timeframe. The reports are screened and pended to the appropriate county within the allotted 90 minutes.  All e-reports are filed electronically for accessibility.  Challenges faced with the e-reporting system this program year included experiencing several issues with the state's email which caused reports not to be accessed and entered timely, reporters entering adult reports through the e-reporting system which is set up only to accommodate child reports and limited/insufficient information being entered through the system prohibiting MCI from entering an accurate and detailed report.  A total of 3,262

E-reports were received and entered into MACWIS this program year, 36% more than the previous program year.

The Quality Assurance (QA) Department is required by Social Work p.r.n. Management to maintain current, completing QA reviews and providing feedback within one week of initial intake. The QA Department reviews intake worker's MACWIS reports in conjunction to listening to call recordings provided through the Cybertech System. QA staff continued to provide specific and detailed Growth and Development where concerns were outlined on a document created by Social Work p.r.n. Feedback continued to be presented to staff from the common social work theory/practice, Strengths Perspective. Feedback included best practice and suggestions to enhance performance. Each intake worker was required to review their scored QA review and allowed the opportunity to listen to their call recording upon request. Identified intake workers were emailed a copy of their Growth and Developments and were encouraged to seek assistance when needed. One-on-one sessions were offered to verbally discuss concerns if needed. Self-assessments were conducted and review of call recordings were also completed when needed or requested to ensure clarity was gained of the QA process, expectation, and policy.

Each year, Social Work p.r.n. sets professional goals for optimum service delivery. Goals primarily focused on this program year included:

- *Attaining measurable outcomes*
- *Maintaining and retaining staff to meet call volume needs*
- *Understanding, implementing and adhering to changes with MDHS/DFCS procedure and policy*

## Scope of Services and Measurable Outcomes

Measurable outcomes, as outlined in the scope of services, indicates the following:

- 96% of suspected child/vulnerable adult abuse/neglect reports are answered, entered into appropriate MDHS electronic case management

data system, and screened to the appropriate county within 90 minutes of receiving the complete report.

- 96% of reports pulled for quality assurance will receive a rating of 80 or higher; with 100 being the highest possibility.
- 98% of reports pulled for quality assurance will be screened in accordance to established statutes of limitations and policies.
- 98% of reports pulled for quality assurance will have confirmation of prior history attached or documentation of the lack thereof being available during the diligent search.
- 98% of resource home and child placing agency reports will be entered into appropriate MDHS electronic case management data system in accordance to policy with abuse/neglect history confirmed and tracked.

According to Social Work p.r.n.'s data collection, attainment of outcome goals is as follows:

| | 94% entered w/in 90 minutes? ** | 96% rate 80 or higher? | 98% screened in accordance with policy | 98%confirm prior history? | 98% confirm resource homes |
|---|---|---|---|---|---|
| **FY 2014-2015 Averages** | No-78% | Yes-99% | No-97% | No-92% | Yes-99% |

All MCIP intake workers have been provided the measurable outcomes identified in the scope of services. Each intake worker has been provided an individual copy of MDHS-DFCS policy and a copy of the quality assurance form along with an explanation of scoring. As a means of ensuring staff is informed of our overall progress and performance, Social Work p.r.n. provided an at-a-glance form that was disseminated to staff on a weekly basis. This form outlined all QAs completed per week and highlights scores and performances in different areas as it relates to the scope of services.

# Staffing

In order to successfully operate MCI, Social Work p.r.n. must ensure adequate staffing twenty-four (24) hours 365 days a year, including holidays.  During FY 2015, Social Work p.r.n. employed 28 full-time, 18 part-time/support/on-call, 4 administrative full-time, 1 administrative part-time and 2 management status employees. Social Work p.r.n. continues to promote a team-oriented environment.  MCI's retention rate has held steady; 43% of our staff have been employed with us for at least two years.

Social Work p.r.n. faced many challenges related to staffing this program year. Obstacles such as staff transitioning to other levels of career opportunities, finding qualified staff that made a good fit with the agency's goals and the hiring and paperwork processing all culminated to make hiring and training staff more problematic than in prior years. In order to maintain adequate staffing this year, Social Work p.r.n. management conducted four new hire training sessions, whereas in previous years, we conducted only two trainings per year.

| Program Year V vs. Program Year VI | | |
|---|---|---|
| | **2013-2014** | **2014-2015** |
| **Total # of Calls** | **49,008** | **49,084** |
| **Average # of Calls/Month** | 4,084 | 4,090 |
| **Total # of Child ANE** | 29,024 | 30,705 |
| **Total # of Adult ANE** | 4,016 | 4,255 |
| **Total # of Information and Referrals** | 14,299 | 12,554 |
| **Total QA's Completed** | 2,941 | 2,991 |
| **Approximate # of Completed Growth and Developments** | 1000 | 1109 |
| **Overall Average Score** | **97 out of 100** | **93 out of 100** |

Though the number of calls received through MCI increased only slightly, the duration of the calls per intakes increased significantly. This increase in call time was due to a number of factors, one of which being the amount of information required to be obtained from the reporter per intake. MCI staff was charged with asking more strength based questions which added up to 5 additional minutes per victim per intake. Intake workers also saw an increase in multifamily household reporting which resulted in subsequent reports generating from one call and adult multi-reporting which generated up to four report entries from one call.

## Policy/Procedural Changes

Social Work p.r.n. received numerous changes from the direction of state office that affected daily operational procedures which ultimately affected the handling of reports and how reports are screened. These procedural changes also affected the look of the output of work for staff. One example of procedural change was the addition of adding email notification on specific types of reports. Social Work p.r.n. has been vigilant in ensuring once information is received from state office, it is explained by management and then disseminated to all staff to ensure minimal disruption to productivity and to the integrity of the information involved.

## Training/Continuing Education

MCI intake workers were encouraged to remain up to date on policy and procedure through ongoing trainings; obtaining at least 5 CEUs per quarter. Subject matters were specific to our scope and body of work; topics include child abuse and neglect, child welfare, ethics, elderly abuse and neglect, child development, assessments and intervention, to name a few. MCI intake workers completed a required minimum 20 hours of training for FY2014-2015. Several trainings were offered through internal as well as external means; via face-to-face conferences, online courses as well as teleconferences.

# Failures

After evaluating the MCI Program over the last twelve months, Social Work p.r.n. has identified one area that could be deemed unsuccessful, the attainment of measurable outcomes. The chart documenting the average percentages for those measureable outcomes was provided in a previous section (Page 2, section Scope of Services and Measurable Outcomes).

# Recommendations

There are still a few recommendations proposed by Social Work p.r.n. in prior years that have remained unaddressed:

**A. *Quality assurance monitoring performed by the Cybertech System.***

It was originally discussed that the Cybertech phone recording system would record all calls in addition to randomly selecting said calls and scoring them for quality assurance purposes.

**Recommendation:** Finalize and implement the increased utilization of the phone recording system to assist in performing the Quality Assurance requirement mandated by MDHS/DFCS.

**B. *MDHS limit the frequency of MACWIS Modifications and MAVERICS/METSS updates.***

MCI experienced non-expected MACWIS outages and delays as well as received several notifications per month of anticipated MACWIS downtime. In addition, it was also communicated that each month, a backup is done to MACWIS which causes major delays in report entry time and limited access to log in.

**Recommendation:** Though Social Work p.r.n. understands the need for maintenance of any computer-based system, provisions are requested to be put in place as to not disrupt the operation of Mississippi's centralized intake department which is expected to be fully functional, 24 hours a day 7 days a week. Social Work p.r.n. requests consideration of MACWIS downtime in

achievement of the measurable outcome goal of entering reports within the 90 minute time period.

C. ***MDHS provide training to MCI staff to include policy and technology changes and any other topics deemed appropriate.***

To date, all training on new policy and technology changes has been provided by MCI administrative staff.

**Recommendation:** MDHS would provide the necessary training for all MCI staff to be current with policy and technology changes.

D. ***Review the measurable outcome percentage attainment and/or allotted time frame required to enter complete reports into MACWIS.***

According to the requirements of a satisfactory QA review and at requests of MDHS/DFCS' management, there are a number of factors/variables associated with entering an accurate report i.e., completing a diligent search for each person known at intake, clarifying primary language spoken, identifying safety concerns for the worker, locating resource parents/facilities in MACWIS, specifying allegations for each victim and documenting that information in MACWIS, identifying each perpetrator associated with each victim and documenting that information in MACWIS, locating absent parents, updating demographic information and ensuring all narratives are grammatically correct, clear and concise inclusive of the time the phone call begins. In addition, there are external procedural responsibilities that have to be performed on specific types of reports, such as resource reports, near fatalities and fatalities, etc.

**Recommendation:** Social Work p.r.n. is requesting a modification be made to the measurable outcome percentage attainments.

# Conclusion

Though staff had been working diligently on contract over the previous years, perfect their skills and reviewing policy, this year presented more challenges than any of the previous years.   Social Work p.r.n. will be looking for opportunities to provide increased levels of service during the next contract year. Attainment of all measurable outcomes will remain of primary importance this program year. We will continue to work in partnership with MDHS to make any necessary adjustments to operational and procedural changes as it relates to policy. As always, Social Work p.r.n. considers ourselves to be good stewards of the MDHS/DFCS' funds and will continue to operate MCI in the most cost-efficient manner possible.

**Ex. 13**

# MACWIS TECHNICAL ASSISTANCE BULLETIN
## 5/29/2015    Issue # 24

## ATTENTION – ALL MACWIS USERS

## <u>EFFECTIVE June 13, 2015</u>

You will notice changes within the MACWIS system regarding:

- **Intake**
- **Screening**
- **Investigation**
- **Demographics**
- **Ticklers**

**Please refer to the following detailed instructions for understanding all system changes. After you have reviewed the instructions, if you have any questions or experience any system problems please contact the MACWIS Helpdesk at 1-877-244-2528.**

---

## Contents

OVERVIEW OF CHANGES ................................................................................................................ 2
MODIFICATIONS ........................................................................................................................... 3
  Intake ..................................................................................................................................... 3
    General Tab ......................................................................................................................... 3
    Report Summary tab ........................................................................................................... 5
    Allegations/Living Arrangement tab .................................................................................. 6
  Screening ............................................................................................................................... 7
    Sufficiency tab ..................................................................................................................... 7
    Sufficiency Summary tab ..................................................................................................... 8
  Investigation .......................................................................................................................... 10
    Evidence Criteria tab ........................................................................................................... 10
    Contributing Factors tab ..................................................................................................... 10
    Worker Findings tab ............................................................................................................ 11
    Investigation Narrative ....................................................................................................... 15
      Participants ....................................................................................................................... 15
      Diligent Efforts ................................................................................................................. 16
      MCI Post Screening .......................................................................................................... 18
    Miscellaneous ...................................................................................................................... 19
      Worker Findings Submission ............................................................................................ 19
      Intake/Investigation Search Results ................................................................................. 19
      Demographics .................................................................................................................... 20
      Exiting MACWIS .............................................................................................................. 20
  Ticklers ................................................................................................................................... 21
    New Screening Ticklers ....................................................................................................... 21
    Investigation Ticklers .......................................................................................................... 22

# OVERVIEW OF CHANGES

In a continuing effort to satisfy the requirements of the Olivia Y settlement agreement; recent feedback from the Court Monitor; and to meet certain Federal reporting requirements, DFCS is required to make certain modifications to the intake and investigation modules of MACWIS.

DFCS created a Special Investigations Unit (SIU) that completes all investigations noting a custody child as a victim. In addition, SIU is responsible for completing investigations where a child is in serious/critical condition or deceased as a result of alleged abuse/neglect/exploitation. This system update addresses the modifications required to implement SIU as well as changes to capture data that are more accurate for National Child Abuse and Neglect Data Systems (NCANDS) reporting.

Modifications and instructions detailed in this document include:
- Creation of the Special Investigation Unit (SIU)
  - Any intakes that involve a custody child as victim, any child noted in serious or critical condition or deceased as a result of possible maltreatment will automatically route to SIU
- Removal of restrictions on Special Handling at intake that enable selection/de-selection prior to final screening determination
- Change Special Handling-Special Investigation to Special Handling-Restricted Access
- Restricted ability to edit information documented by MCI in an intake by the County Intake Supervisor, Regional Director or SIU
- Updated 'sufficiency screening' verbiage #4 to reflect recent updates in law
- A new question asking if a child is in serious/critical condition as a result of ANE
  - Adding the questions "Child died as result of ANE" and "child is in critical condition as a result of ANE" at investigation as a follow-up 'confirmation' of information entered at intake
- Ability for SIU to override screening of Level 3-custody intakes
- Added a new maltreatment finding of "closed without findings"
- Added a new investigation narrative of "MCI Post Screening Information" used by MCI if additional information regarding an intake is received after screening
- Selection of participants are required for certain narrative types
- All persons noted as perpetrator and/or victim must be confirmed prior to investigation submittal (with the exception of investigations with findings of "closed without findings"
- Added a checkbox option on worker findings tab of "possible resource policy violation" to be used for resource investigations
- Added a question to demographics regarding international adoption of children who were previously adopted

**Please note that any pending ANE Intakes or Investigations must meet the new requirements prior to completion***

# MODIFICATIONS

## *Intake*

The changes in this section primarily affect MCI and how an intake is entered in MACWIS and whether an intake is routed to the county or to SIU. The following pages provide detailed information regarding intake related items noted above.

### General Tab



*Report Data Entry Information change*

<u>New Field</u>: Report Received By MCI -- Date and Time*

This date and time must be completed by the MCI worker and can be on or before the current calendar date. MCI uses these fields to note the <u>date/time the information is received by MCI</u>. The *Report Date and Time* notes when <u>DFCS received the information</u> (if different than when reported to MCI).

For example, the DFCS on-call worker responds to an after-hours call at 11:00PM and takes custody of a child, but is unable to call the report into MCI until 6:00 AM the next morning. MCI would enter the Report Date and Time as the date/time the DFCS employee states they became involved.

* If the intake was submitted for screening prior to conversion, this field will be blank

<u>Additional Information</u>: Once the *County* and *Report Date* and *Time* is saved on the General tab it can only be updated by the MCI Supervisor or MIS <u>before</u> the Intake Report is screened IN by the County or SIU.

Please note: Intake ASWS, RD, SIU Sup., or SIU Dir. cannot modify General Report Information, with the exception of Special Handling-by RD, MCI supervisor, or SIU Supervisor/Director)



*Special Handling label update*

**New Language:** Special Handling box now reads **Resource Report / Restricted Access**. There is no change in the functionality. The checkbox was previously labeled *Special Investigation*.



*Previous label*

**New Functionality:** The RD, SIU Supervisor, SIU Director, MCI Director or MIS can <u>modify Special Handling prior to screening completion</u>. Special Handling on the General tab of Intake is active allowing the staff listed above to select or de-select **Resource Report** and/or **Restricted Access** as needed prior to the completion of screening and worker assignment.

For example, if an intake is inadvertently noted as *Special Handling-Resource Report* (a foster child as victim, but the alleged perpetrator is the biological parent and not the child's placement resource). The approver (as noted above) can click on the Resource Report checkbox, which clears the field identifying the placement name.

**PLEASE NOTE: if an intake received by the county intake supervisor that requires special handling to be *selected* or *de-selected* the regional director must complete it. The intake supervisor will directly contact the regional director requesting the change. The regional director will access the intake via intake log, update as necessary and complete screening and assignment**

The RD, SIU Supervisor, SIU Director, or MCI Director can edit Special Handling simply by clicking on the appropriate radio button to select or de-select. IF the Resource Handling radio button is selected, click the ellipses to search for and choose the appropriate resource.

**Additional Information:** Any report involving a resource or facility as a perpetrator will be entered as Special Handling-Resource Report (not just custody intakes).

## Report Summary tab



*Updated functionality, Role*

**Updated Field**: **Role**
This new pick list on the Report Summary tab allows the user to assign multiple roles to an unconfirmed person (at intake). The Role in the Report Summary Tab can be up-dated until the screening decision is finalized. Roles selected appear in the grid.

> To add roles while adding the person at intake
> - Click on the checkbox that is associated with the appropriate role/roles. Once the information is saved, any roles selected are listed in the Role column in the table at the top of the page
> - Click Add to save changes

> To add roles after saving the person information (but before screening completion):
> - Double-click the row in the table to be updated
> - Click on the checkbox(es) associated with the appropriate role/roles
> - Click Update to save changes

**Additional information**: At intake, Role is entered on the Report Summary tab. During investigation, Role is entered on the Person Detail Information tab.

Roles assigned at intake cannot be edited once Screening is complete. Roles assigned during the investigation can be edited prior to Supervisor Approval of Findings.

The *Location Information* and *Description of Maltreatment/Request* text boxes have been rearranged to accommodate the new Role checklist. The amount of text allowed in the *Description of Maltreatment/Request* text box has increased so that MCI will no longer have to "continue" the description/request in the Location Information field.

**Note: there are no changes to the *Person Detail Information* tab at intake.**

## Allegations/Living Arrangement tab



*Alleg/Liv Arrangement tab, new fields*

**New Question:** 'Victim is in serious or critical condition, as certified by a physician, as a result of this maltreatment'. By default radio buttons are blank for this and the question 'Victim died as a result of this maltreatment'.

Both questions must be answered per allegation. The information can be reported by anyone but YES is selected at intake ONLY if the reporter indicates a physician has labeled the child's condition as "serious" or "critical" or that the child has died as a result of the act.

During the investigation, this information must be verified and answered based on information gained. Since answering these questions affects the assignment of the case, the answers should be updated as new and accurate information is obtained. YES shall not be checked unless information indicates that the child died or was placed in "serious" or "critical" condition *because of the act.*

**Additional Information:**
The information provided at intake is included on the Worker Findings tab of investigation and can be updated on the Worker Findings tab prior to investigation completion.

**NOTE: Selecting Yes to one or both of these questions on any allegation directs the Intake to the SIU Unit for completion of screening and investigation.**

NCANDS (National Child Abuse Neglect Data Systems) information is tracked based on answers provided on Worker Findings of the investigation

## *Screening*

### Sufficiency tab

There is no change in the steps MCI takes to complete compete the Sufficiency tab and submit an intake for screening, however the changes to the wording of the questions affects the number of investigations screened as a Level Three Investigation.



*Updated Sufficiency screen*

### New Language:

Questions three (3) and four (4) state the following:

> 3. Is the alleged perpetrator the parent, guardian, custodian, person responsible for the child's care or support, or an adult relative or household member with access to the child?

> 4. Is there an allegation that meets the legal definition of an abused child or neglected child as defined in the MS Code and meets at least one of the following criteria:  (see criteria below)

Text noting who is responsible for the completion of screening will appear at the bottom of the page. The information will note if the County or SIU is responsible.

Note: The ownership information updates based on how the questions are answered on the Sufficiency Tab.

### New Text Box:

New text box added to display the current legal language that defines the allegations listed in question four (4). This text box is not editable by the user. As laws change, MIS will make update as requested by DFCS administration.

The information in the text box is:

  o  -- any child in current legal custody of DFCS

  o  -- prior ANE report within past 12 months or multiple ANE reports involving the alleged victim

  o  -- child is at imminent risk of harm

  o  -- any sexual abuse

o    -- any life-threatening neglect
o    -- any allegation of any child in the home ages 5 and under
o    -- any allegation of any age child with special needs
o    -- any allegation that could be a felony child abuse or neglect under state of federal law

**Note: If ANY of these apply, YES will be selected for question four (4) and the investigation will be LEVEL THREE (3).**

### Sufficiency Summary tab

As previously noted, MACWIS will automatically route intakes to
o    *County Intake Supervisor* -- any level one, level two or level three investigations (where Special Handling is not selected)
o    *Regional Director* – any level three intake where Special Handling is selected (and no custody child is noted as victim)
o    *SIU Supervisor* – any Level Three-Custody Intake, any intake noting the death of a child (as a result of alleged maltreatment), any investigation noting that a child is in serious/critical condition (as a result of alleged maltreatment)



*Updated Sufficiency Summary*

**New Language:** The *RD Recommendation* section has changed to *RD/SIU Director Recommendation and Basis for Decision.*

**New Button:** The *Redirect* button sends the Intake record to the correct owner (SIU or county) by (Intake Supervisor, RD, SIU Supervisor, and SIU Director) BEFORE clicking Worker Assignment.

**SIU Redirect at Intake**
The Intake goes to the SIU Unit.
- SIU determines the Intake belongs to the County the SIU Supervisor must redirect prior to worker Assignment.
- County will own the Intake Screening.

County decides it is SIU, County Intake Supervisor can then redirect back to SIU.
**Ticklers will be generated.

**County Redirect at Intake**
The Intake goes to the County Intake Supervisor:
- If before worker assignment, MCI changes either victim question (child died/serious critical condition) to 'Yes' the County Intake Supervisor must redirect the Intake.
- A message will display on the Sufficiency Summary screen that the Intake must be redirected.
- If the County Intake Supervisor tries to screen the Intake, a pop up will display to redirect.
- SIU then owns the Intake Screening.

OR

- If before the Worker Assignment, MCI Adds a Custody Child with Allegations the County Intake Supervisor must redirect the Intake.
- A message will display on the Sufficiency Summary screen that the Intake must be redirected.
- If the County Intake Supervisor tries to screen the Intake, a pop up will display to redirect.
- SIU then owns the Intake Screening.

OR

- If before the Worker Assignment, MCI select the Resource option in the Special Handling box the County Intake Supervisor must redirect the Intake.
- A message will display on the Sufficiency Summary screen that the Intake must be redirected.
- If the County Intake Supervisor tries to screen the Intake, a pop up will display to redirect.
- SIU then owns the Intake Screening.

**If SIU decides it is the Counties Intake, the SIU Supervisor can redirect the Intake back to County. Appropriate ticklers will be generated.** (see Ticklers section for more information)

NOTE: before the county can redirect an intake to SIU, it must meet one of the requirements to be a *special investigation.*

**New Text Box**: A text box for the RD or SIU director has been added that requires information to be entered regarding their decision on an Override request.

**Note: If using Redirect, follow-up with direct contact to SIU or the receiving county to ensure timely response.**

## *Investigation*

**The changes in this section affect anyone who completes or approves an investigation.** The following pages provide detailed information regarding investigation related items noted on <u>page 2</u> of this document.

### Evidence Criteria tab

Prior to this MACWIS update, the Evidence Criteria tab was disabled for Level Two Investigations. The tab is now optional for any investigation, regardless of level.

### Contributing Factors tab

Prior to this MACWIS update, the Contributing Factors tab was disabled for Level Two Investigation. The tab is now optional for any investigation, regardless of level. It is required for any substantiated investigation. The investigator will receive the following message if submitting a substantiated investigation for approval without selecting appropriate contributing factors.



## Worker Findings tab



*Updated Worker Findings tab – serious/critical condition and child death questions (if Special Handling-Resource Report is not selected)*

<u>**New Question**</u>: '**Victim is in serious or critical condition, as certified by a physician, as a result of this maltreatment**'. By default, this question reflects what was selected at intake.

<u>**New Question**</u>: '**Victim died as a result of this maltreatment**'. By default, this question reflects what was selected at intake.

NOTE: If it is discovered during a county level investigation that one of these apply, the county level investigator is still responsible for entering all information (via narratives) collected prior to transfer

<u>**For a county investigation to be reassigned to SIU**</u>
The investigation worker must
- o   Select YES to the situation that applies (serious/critical condition or child death)
- o   Once YES is selected, enter a finding and finding date, then click Update
- o   The investigator will receive a message them to verify that this change is correct



If the County Investigator selects yes, a message displays at the bottom of the screen stating that the investigation needs to be transferred to SIU. A tickler is sent to the investigation supervisor (see tickler section). The transfer (reassignment) is completed by the Investigation Supervisor.

| Investigation Level:   Three | Reassignment | Narratives | Assessment | Intake Report | Close |

County owns the SI Investigation and needs to be transferred to the SIU

If the County Investigator clicks submit after an investigation is changed to an SIU investigation, the following message is received:



*Worker Findings, investigation reassignment reminder*

NOTE: the investigation supervisor completes reassignment in the same way as any other.
- o  The county should remain the same
- o  The names of the SIU Supervisors appears and is selected in the New Investigation Worker Field
- o  A tickler is automatically sent to the selected SIU supervisor notifying them of the reassignment





*Updated Worker Findings tab – Closed w/out Findings*

**New Finding Type:** "**Closed without Findings**" has been added as an option for findings.

Closed w/out Findings is to <u>be used ONLY in instances when DFCS is unable to locate the family and the investigation cannot be completed</u>.

The Supervisor cannot approve the investigation prior to the 25th day of the investigation if findings are *Closed w/out findings*. This is to ensure time is allotted to conduct diligent search to locate the family.

**Investigations involving custody children who have the role of victim cannot be closed using "closed w/out findings".**

Prior to submitting an investigation for approval with findings of "closed w/out findings", the investigator must complete a <u>Diligent Efforts</u> narrative. See <u>Investigation Narrative</u> section for additional details.

The only participant required to be confirmed for an investigation with this finding type is the Primary Caretaker.



*Updated Worker Findings tab --Resource/Licensure policy violations*

**New Question**: 'Were any possible resource/licensure policy violations identified?' is visible only for Special Handling-Resource Reports and allows the investigator to document if any allegation was a violation of resource policy.

This option is viewable/selectable only for Special Handling/Resource Report investigations. It must be answered per allegation.

## Investigation Narrative

*Participants*



**New Requirement:** Participants must be selected for certain narrative types. Prior to saving certain narratives one must identify a participant (or participants). Narrative types that require participants are:

- Alleged Victim
- Alleged Perpetrator
- Attempted Contact
- Collateral Contact
- Other Household Member
- Parent/Caretaker
- Relative
- Reporter
- Witness

*Diligent Efforts*

| Sel | Date | Time | Author Name | Worker Name | Contact Type | Contact Me |
|---|---|---|---|---|---|---|
| | 04/09/2015 | 07:44 AM | OCAIN, STEPHANIE T | OCAIN, STEPHANIE T | Diligent Efforts | Face-to-Face |

| Date | Time | Worker | Contact Type | Contact Method | Location |
|---|---|---|---|---|---|
| 04/09/2015 | 07:44 AM | OCAIN, STEPHANIE T ... | Diligent Efforts | Face-to-Face | |

*New Narrative -- Diligent Efforts*

<u>New Narrative Type</u>: **Diligent Efforts**

Added to the Investigation Narrative Types list to allow the user to document due diligence for investigations where allegations have a finding of "closed without findings".

**To meet Diligent Efforts <u>most,</u> if not all, of the following efforts should be made:**

1. Sending correspondence to all previous addresses
2. Calling all previous telephone numbers noted in previous records
3. Contacting motor vehicle registration
4. Requesting a record check from local law enforcement
5. Utilizing Internet services (social media, searches, etc).
6. Contacting all known relatives, friends and previous employers
7. Checking the telephone directory, county, and city directories
8. Contacting utility and telephone companies
9. Accessing the State and Federal Parent Locator Service through the Child Support Enforcement Office
10. Accessing the Location Services through contact with the local post office
11. Making a historical check through MACWIS
12. Checking with local schools if children are age appropriate
13. Completing a Protective Services Alert (if DFCS is of the opinion that further harm may come to the child unless protective services are provided

Please note: it is the responsibility of the investigator and investigation supervisor to ensure diligent efforts are made and documented.



*Diligent Efforts message*

The message above is received if trying to submit an investigation with findings of "closed w/out findings" and no Diligent Efforts narrative exists.

*MCI Post Screening*



| Sel | Date | Time | Author Name | Worker Name | Contact Type | Contact Me |
|-----|------|------|-------------|-------------|--------------|------------|
| | 04/03/2015 | 01:43 PM | DCAIN, STEPHANIE T | DCAIN, STEPHANIE T | Alleged Victim | Face-to-Face |

| Date | Time | Worker | Contact Type | Contact Method | Location |
|------|------|--------|--------------|----------------|----------|
| 04/08/2015 | 05:57 PM | Hendree, Virginia ... | MCI Post Screening Inform | Phone from | |

Narrative
TEST TEST TEST

Participants

Select

| Select All | Search | Print | Add | DELETE | Cancel | Close |

*New narrative type – MCI Post Screening Information*

**New Narrative Type:  MCI Post Screening Information Narrative**

In an effort to reduce duplicate intakes, any additional information regarding an intake/investigation received *within 10 days of the Report Date* will be added to the existing investigation by MCI via the new Narrative Type of *MCI Post Screening Information.*

MCI accesses the investigation via Search or Intake Log

The investigation worker and ASWS receive a tickler notification when an MCI Post Screening Information narrative is created. The investigator is responsible for reading the information and updating the investigation accordingly.

If information is received after ten days of the report date, a new intake is required. MCI receives the message above if attempting to add a MCI Post Screening Information narrative to an investigation after the 10th day.

Macwis - Warning                                          ☒

❌   [1060] Information received after 10 Days of the Original Intake must be recorded as a New Intake.

OK

### Miscellaneous

*Worker Findings Submission*



**New Requirement:** An edit added to investigation requires all persons with the role of Perpetrator or Victim be confirmed prior to the investigator sumbitting the investigation for approval (unless "closed w/out findings" is the investigation finding)

*Intake/Investigation Search Results*



*Search Results – Intake/Investigation*

If findings are "closed w/out findings", intake/investigation search results note the investigation with a "C" to represent Closed Without Findings

*Demographics*



Demographics – International Adoption

**New Field: International Adoption:** This new drop down options are 'Yes' 'No' and 'Unable to Determine'. This question is mandatory, if "Was child ever adopted prior to this custody" is yes.


*Exiting MACWIS*

When closing MACWIS, please follow these steps:
1. Click File (upper left of the MACWIS screen)
2. Click Exit
3. Click yes to the message "Exit MACWIS"



*Ticklers*

### New Screening Ticklers

**ANE Intake Screening Redirected** – received by the county or SIU when an intake is routed from one to the other for screening completion and worker assignment
Tickler states:

> The xxx (Intake or SIU) Supervisor, xxx, xxx has redirected an ANE Intake Report on xxx, xxx to you for a Screening Decision. Please complete the Screening as soon as possible.

**Intake Change, Redirect to SIU** – received by the county when an intake is edited by MCI prior to screening and that change requires the intake be redirected from the county to SIU.
Tickler states:

> The MCI worker, xxx, xxx, has made a change to the Intake report for xxx, xxx that requires the Screening to be redirected to SIU. Please complete the redirection as soon as possible.

The tickler takes the user to Intake Screening. The user should click the Redirect button on the Sufficiency Summary tab to transfer.

**ANE Death/Critical Allegation** – received by the county when an intake is received by SIU involving an allegation where "child died" or "child is in serious/critical condition" is selected.
Tickler states:

> SIU is conducting an investigation on xxx, xxx that involves a victim xxx, xxx as having died or being in serious/critical condition as a result of maltreatment. Please review the Intake Log or Head of Households Intake/Investigation History for details.

**Intake Change, Co Redirect Notice** – received by SIU when MCI edits an intake prior to screening and the change requires the intake be sent to the county for completion.
The tickler states:

> The MCI worker, xxx, xxx has made a change to the Intake Report for xxx, xxx. Redirect of the Intake Report to the County Level can be made at your discretion."

**ANE Intake Screening Submit/Redirect** – received by the SIU Director when an intake has been redirected to SIU for screening
Tickler states:

> An ANE Intake Report on xxx, xxx has been submitted/redirected to the SIU Supervisor, xxx, xxx for a Screening decision.

**Level 3 Custody Intake Screened Out** – received by the assigned COR worker (and ASWS) if an intake involving a custody child is screened-out. The tickler states:

> A Level 3 Custody Intake on xxx, xxx was screened out regarding the custody child xxx, xxx. Please review the child's intake/investigation history for details.

### Investigation Ticklers

**MCI Post Screening Narrative Added**----received by the assigned investigator when MCI adds additional information to an open investigation. The tickler states
   The MCI worker, xxx, xxx, has added a Post Screening Narrative Pertaining to the Investigation on xxx, xxx. Please review this Narrative for additional information as soon as possible and take appropratie actions.

**Level 3 Custody Investigation** -- received by the assigned COR worker when a Level 3-Custody Intake is screened-in and an SIU investigator assigned.
The tickler states:

   SIU is conducting an investigation involving custody child xxx, xxx. Please review the child's intake/investigation history for details.

**Inv Change, Reassign to SIU** -- received the county investigation supervisor (or RD) when a change is made to the investigation that results in the investigation being upgraded to an SIU investigation.  The tickler states:

   The xxx County Worker, xxx, xxx, has made a change to the investigation for xxx, xxx that requires the investigation to be reassigned to SIU. Please complete the reassignment as soon as possible.

**Co Inv Worker Change, Redirect to SIU** -- received by the SIU Supervisor when the county investigator makes a change that results in the investigation being upgraded to an SIU investigation. The tickler states:

   The worker xxx, xxx has made an allegations change resulting in a redirect of the investigation for a submitted ANE Intake Report for xxx, xxx. Please complete the investigation as soon as possible.

**Ex. 14**







**Ex. 15**







Wednesday, Jun 22, 2016  02:10 PM

**Ex. 16**

Risk Safety Assessment and Safety Plan



Click Add to create a new
Resource Safety/Risk
Assessment.



Highlight row in grid to
activate the tabs and
complete the assessment

Risk Safety Assessment and Safety Plan





A RESOURCE Safety/Risk Assessment is determined to by UNSAFE by MACWIS when question 7 is YES and Safety Plan Only (child not removed is selected.



Risk Safety Assessment and Safety Plan





If the determination by MACWIS (based on answers provided) is UNSAFE, a Safety Plan is requried.

**Ex. 17**



## State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS001 | ORIENTATION TO MDHS | 02/08/2011 | 02/08/2011 | | | 6.00 | 0 | |
| DFC053 | PRACTICE MODEL TRAINING | 09/09/2013 | 09/09/2013 | | | 3.00 | 0 | |
| DFC053 | PRACTICE MODEL TRAINING | 09/10/2013 | 09/10/2013 | | | 3.00 | 0 | |
| DFC053 | PRACTICE MODEL TRAINING | 09/12/2013 | 09/12/2013 | | | 3.00 | 0 | |
| DFC043 | TASKS&GOALS LAB-HARRISON COUNTY STAFF ON | 09/25/2013 | 09/25/2013 | | | 3.00 | 2.75 | |
| DFC022 | SAFETY ASESMNT FRMWRK COACHING LAB SAFET | 11/04/2013 | 11/04/2013 | | | 6.00 | 5.75 | |
| DFC042 | CONTINUOUS QLTY IMPROVEMENT TRNG-REGION | 05/19/2014 | 05/19/2014 | | | 2.00 | 0 | |
| DFC028 | PRE-SRVC TRAINING/MACWIS TRAINING GRP 2 | 07/07/2014 | 08/29/2014 | | | 270.00 | 40 | |
| DFC040 | CAR SEAT SAFETY - PRE SERVICE | 08/28/2014 | 08/28/2014 | | | 2.50 | 0 | |
| DHS006 | TIME MANAGEMENT-GREENWOOD/LEFLORE CO. | 12/18/2014 | 12/18/2014 | | | 6.00 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC011 | REUNION TRAINING(STRESS MGMT)GROUP 2 | 08/20/2015 | 08/20/2015 | | | 3.00 | 3 | |
| DFC117 | CHLDHD TRAUMA:WHAT DO YOU KNOWABTTHAT? | 01/26/2016 | 01/26/2016 | | | 6.00 | 5.25 | |
| DFC115 | DON'T TAKE MY BABY! | 02/10/2016 | 02/10/2016 | | | 6.00 | 5.75 | |
| DHS005 | ETHICS AND PROFESSIONALISM @ GREENWOOD | 03/29/2016 | 03/29/2016 | | | 6.00 | 0 | |
| DFC065 | USING ETHICS TO GUIDE CASEWORK | 05/26/2016 | 05/26/2016 | PASSED | | 6.00 | 4.75 | |
| DFC114 | LASTING PERMANENCY: PREVENT MALTREATMENT | 06/07/2016 | 06/07/2016 | PASSED | | 6.00 | 5 | |
| DFC113 | HELP! THERE ARE TEENAGERS ON MY CASELOAD | 06/16/2016 | 06/16/2016 | PASSED | | 6.00 | 3.5 | |



# State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS001 | ORIENTATION TO MDHS—PIKE COUNTY | 09/09/2013 | 09/09/2013 | 94 | | 6.00 | 0 | |
| DFC014 | TEACHABLE MOMENTS:KNOWING WHEN TO TEACH | 03/25/2014 | 03/25/2014 | | | 6.00 | 5.25 | |
| DFC002 | SUBSTANCE ABUSE IN THE FAMILY | 03/27/2014 | 03/27/2014 | | | 6.00 | 6 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 04/10/2014 | 04/10/2014 | | | 6.00 | 6 | |
| DFC048 | MALTREATMENT IN CARE INVESTIGATION TRNG | 04/23/2014 | 04/23/2014 | | | 6.00 | 0 | |
| DFC022 | SAFETY ASSESSMENT FRAMEWORK COACHING LAB | 04/24/2014 | 04/24/2014 | | | 6.00 | 5.75 | |
| DFC011 | REUNION TRAINING (STRESS MANAGEMENT) | 05/08/2014 | 05/08/2014 | | | 3.00 | 3 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 09/03/2014 | 09/03/2014 | | | 3.00 | 0 | |
| DFC071 | KEEPING IT SAFE I | 01/14/2015 | 01/14/2015 | | | 6.00 | 4.75 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC064 | DISCIPLINE IN FOSTER CARE | 05/28/2015 | 05/28/2015 | | | 5.50 | 3.75 | |
| DFC089 | INDIAN CHILD WELFARE ACT | 08/13/2015 | 08/13/2015 | | | 5.50 | 6.25 | |
| DFC065 | USING ETHICS TO GUIDE CASEWRK&DECN MAKNG | 10/07/2015 | 10/07/2015 | | | 6.00 | 4.75 | |
| DFC111 | SCRT SLVRY:A CHLD WLFR RESP TO HMN TRFKG | 01/14/2016 | 01/14/2016 | | | 6.50 | 5.25 | |
| DFC098 | KEEPING IT SAFE 2015-2016 | 04/21/2016 | 04/21/2016 | | | 3.50 | 2.5 | |
| DFC117 | CHLDHD TRAUMA:WHAT DO YOU KNOWABTTHAT? | 04/28/2016 | 04/28/2016 | | | 6.00 | 5.25 | |
| DFC117 | CHILDHOOD TRAUMA:DO YOU KNOW ABOUT THAT? | 04/28/2016 | 04/28/2016 | | | 6.00 | 5.25 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS001 | ORIENTATION TO MDHS~ | 09/15/2010 | 09/15/2010 | | | 6.00 | 0 | |
| DFC017 | THE COMPREHENSIVE FAMILY ASSESSMENT | 09/26/2013 | 09/26/2013 | | | 3.00 | 0 | |
| DHS005 | ETHICS AND PROFESSIONALISM (HATTIESBURG) | 02/03/2015 | 02/03/2015 | | | 6.00 | 0 | |
| DFC087 | 3-5-7&FMLY FINDING MDL FOUNDATIONL OVRVW | 06/10/2015 | 06/11/2015 | | | 8.50 | 7.5 | |
| DFC047 | FOSTER CARE REVIEW TRNG-RGN VII-W ONLY | 11/04/2015 | 11/04/2015 | | | 2.00 | 0 | |
| DFC117 | CHLDHD TRAUMA:WHAT DO YOU KNOWABTTHAT? | 01/27/2016 | 01/27/2016 | | | 6.00 | 5.25 | |
| DFC114 | LASTING PERMANENCY: PREVENT MALTREATMENT | 04/20/2016 | 04/20/2016 | | | 6.00 | 5 | |
| DFC115 | DON'T TAKE MY BABY! | 05/11/2016 | 05/11/2016 | | | 6.00 | 5.75 | |
| DFC125 | LIMITED ENGLISH PROFICIENCY TRAINING | 06/14/2016 | 06/14/2016 | | | 2.00 | 0 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| BSC300 | BSC POST EXAM | 02/14/2011 | 02/14/2011 | 86 | | 0.00 | 0 | |
| BSC100 | SUPERVISOR'S GOALS FORM | 02/14/2011 | 02/14/2011 | | | 0.00 | 0 | |
| BSC400 | BSC INDIVIDUAL DEVELOPMENT PLAN (IDP) | 02/14/2011 | 02/14/2011 | | | 0.00 | 0 | |
| BSC200 | BASIC SPRVSRY COURSE-DEPT OF HUMAN SRVCS | 02/14/2011 | 02/18/2011 | | | 0.00 | 0 | |
| DHS001 | ORIENTATION TO MDHS— | 03/24/2011 | 03/24/2011 | | | 6.00 | 0 | |
| BSCCERT | BASIC SUPERVISORY COURSE CERTIFICATION | 05/01/2011 | 05/30/2011 | | | 30.00 | 0 | |
| DFC030 | LVL II INTENSIVE SPRVSRY TRNG-MODULE I | 04/09/2013 | 04/10/2013 | | | 16.00 | 9.25 | |
| DFC031 | LVL II INTENSIVE SPRVSRY TRNG-MODULE II | 06/03/2013 | 06/04/2013 | | | 16.00 | 12 | |
| PDSSYSTM/2 | PERFORMANCE DEV SYSTEM ~ DHS - GULFPORT | 08/22/2013 | 08/22/2013 | | | 3.00 | 0 | |
| DFC007 | ABC'S OF YOUR CHILD'S EDUCATION | 10/10/2013 | 10/10/2013 | | | 2.00 | 0 | |
| DHS019 | PDS (HARRISON CO) | 10/31/2013 | 10/31/2013 | | | 5.00 | 0 | |
| DFC012 | MACWIS REFRESHER | 04/15/2014 | 04/17/2014 | | | 18.00 | 0 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 05/22/2014 | 05/22/2014 | | | 3.00 | 0 | |
| DFC057 | LVL III CLINICAL SPRVSRY TRNG-MODULE I | 06/06/2014 | 06/06/2014 | | | 3.00 | 2.5 | |
| DFC058 | LVL III INTENSIVE SPRVSRY TRNG-MODULE II | 07/25/2014 | 07/25/2014 | | | 3.00 | 2.5 | |
| DFC059 | LVL III INTENSIVE SPRVSRY TRNG-MOD III | 08/21/2014 | 08/21/2014 | | | 3.00 | 2.5 | |
| DFC029 | INV IN NEWHIRE:PROM WRK RET THRU SUP TRG | 08/28/2014 | 08/28/2014 | | | 6.00 | 0 | |
| DFC032 | LVL II INTENSIVE SPRVSRY TRNG-MODULE III | 09/09/2014 | 09/10/2014 | | | 16.00 | 11.5 | |
| DFC060 | LVL III INTENSIVE SPRVSRY TRNG-MODULE IV | 09/17/2014 | 09/17/2014 | | | 3.00 | 2.5 | |
| DFC029 | INV IN NEWHIRE:PROM WRK RET THRU SUP TRG | 09/19/2014 | 09/19/2014 | | | 6.00 | 0 | |
| DFC016 | SUBMITTING TPR PACKETS | 09/25/2014 | 09/25/2014 | | | 3.00 | 0 | |
| DFC065 | USING ETHICS TO GUIDE CASEWRK&DECN MAKNG | 10/30/2014 | 10/30/2014 | | | 6.00 | 4.75 | |
| DFC071 | KEEPING IT SAFE I | 11/05/2014 | 11/05/2014 | | | 6.00 | 4.75 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |



## State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| BSC100 | SUPERVISOR'S GOALS FORM | 01/11/2010 | 01/11/2010 | | | 0.00 | 0 | |
| BSC300 | BSC POST EXAM | 02/16/2010 | 02/16/2010 | | | 0.00 | 0 | |
| BSC400 | BSC INDIVIDUAL DEVELOPMENT PLAN (IDP) | 02/16/2010 | 02/16/2010 | | | 0.00 | 0 | |
| BSC200 | BASIC SUPERVISORY COURSE | 02/16/2010 | 02/19/2010 | 84 | | 0.00 | 0 | |
| BSCCERT | BASIC SUPERVISORY COURSE CERTIFICATION | 03/01/2010 | 03/31/2010 | | | 30.00 | 0 | |
| DFC048 | MALTREATMENT IN CARE INVESTIGATION TRNG | 04/23/2014 | 04/23/2014 | | | 6.00 | 0 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 03/10/2015 | 03/10/2015 | | | 6.00 | 6 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC041 | CONTINUOUS QUALITY IMPROVEMENT TRAINING | 04/21/2015 | 04/21/2015 | | | 2.00 | 0 | |
| DFC056 | UNDRSTNG CULTRL DIVSTY IN CHLD WLFR PRCT | 02/25/2016 | 02/25/2016 | | | 6.00 | 5.5 | |
| DFC064 | DISCIPLINE IN FOSTER CARE | 04/07/2016 | 04/07/2016 | | | 5.50 | 3.75 | |
| DFC111 | SCRT SLVRY:A CHLD WLFR RESP TO HMN TRFKG | 04/13/2016 | 04/13/2016 | | | 6.50 | 5.25 | |
| DFC115 | DON'T TAKE MY BABY! | 05/12/2016 | 05/12/2016 | PASSED | | 6.00 | 5.75 | |



# State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC007 | ABC'S OF YOUR CHILD'S EDUCATION | 10/10/2013 | 10/10/2013 | | | 2.00 | 0 | |
| DFC027 | CLINICAL SUPERVISORY TRAINING | 10/21/2013 | 10/25/2013 | | | 40.00 | 16 | |
| DFC045 | 3-5-7-MODEL | 05/20/2014 | 05/20/2014 | | | 6.00 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |



### State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| BSC100 | SUPERVISOR'S GOALS FORM | 09/27/2010 | 09/27/2010 | | | 0.00 | 0 | |
| BSC300 | BSC POST EXAM | 09/27/2010 | 09/27/2010 | | | 0.00 | 0 | |
| BSC400 | BSC INDIVIDUAL DEVELOPMENT PLAN (IDP) | 09/27/2010 | 09/27/2010 | | | 0.00 | 0 | |
| BSC200 | BASIC SUPERVISORY COURSE | 09/27/2010 | 10/01/2010 | 84 | | 0.00 | 0 | |
| BSCCERT | BASIC SUPERVISORY COURSE CERTIFICATION | 10/01/2010 | 10/30/2010 | | | 30.00 | 0 | |
| DHS021 | NON -VIOLENT CRISIS INTERVENTION | 09/22/2011 | 09/22/2011 | | | 12.00 | 0 | |
| DFC027 | CLINICAL SUPERVISORY TRAINING | 01/13/2014 | 01/17/2014 | | | 40.00 | 16 | |
| DFC010 | CHLDHD/ADOLESCENT MENTAL HLTH ISSUES&THE | 02/25/2014 | 02/26/2014 | | | 12.00 | 12 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 05/15/2014 | 05/15/2014 | | | 3.00 | 0 | |
| DFC037 | PERMANENCY VALUES&SKILLS REFRESHER TRNG | 07/24/2014 | 07/24/2014 | | | 2.75 | 0 | |
| DFC070 | LGL STKHLDRS FOR PRMNCY FOR CHLDN SUMMTS | 10/28/2014 | 10/28/2014 | | | 6.75 | 6.5 | |
| DFC047 | FOSTER CARE REVIEW TRNG/REGION 4-S ONLY | 12/15/2014 | 12/15/2014 | | | 2.00 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC064 | DISCIPLINE IN FOSTER CARE | 02/06/2015 | 02/06/2015 | | | 5.50 | 3.75 | |
| DFC020 | COURT II-ADV PROF DEV COURT PROCEDURE | 03/03/2015 | 03/03/2015 | | | 6.50 | 0 | |
| DFC013 | INDIVIDUALIZED CASE PLANNING | 03/16/2015 | 03/16/2015 | | | 6.00 | 4 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC006 | KEEPING IT SAFE | 04/17/2015 | 04/17/2015 | | | 6.00 | 4.75 | |
| DFC056 | UNDRSTNG CULTRL DIVSTY IN CHLD WLFR PRCT | 06/29/2015 | 06/29/2015 | | | 6.00 | 5.5 | |
| DFC049 | ENGAGING INCARCERATED PARENTS | 11/04/2015 | 11/04/2015 | | | 6.00 | 6 | |
| DFC115 | DON'T TAKE MY BABY! | 02/09/2016 | 02/09/2016 | | | 6.00 | 5.75 | |
| DFC111 | SCRT SLVRY:A CHLD WLFR RESP TO HMN TRFKG | 03/09/2016 | 03/09/2016 | | | 6.50 | 5.25 | |
| DFC117 | CHILDHOOD TRAUMA:DO YOU KNOW ABOUT THAT? | 06/09/2016 | 06/09/2016 | | | 5.25 | 0 | |



## State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC022 | SAFETY ASSESSMENT FRAMEWORK COACHING LAB | 02/27/2014 | 02/27/2014 | | | 6.00 | 5.75 | |
| DFC012 | MACWIS REFRESHER | 06/24/2014 | 06/26/2014 | | | 18.00 | 0 | |
| DFC040 | CAR SEAT SAFETY – | 09/17/2014 | 09/17/2014 | | | 2.50 | 0 | |
| DFC037 | PERMANENCY VALUES/SKILLS REFRESHER TRNG | 09/23/2014 | 09/23/2014 | | | 2.75 | 0 | |
| DFC071 | KEEPING IT SAFE I | 12/04/2014 | 12/04/2014 | | | 6.00 | 4.75 | |
| DFC014 | TEACHABLE MOMENTS:KNOWING WHEN TO TEACH | 03/18/2015 | 03/18/2015 | | | 6.00 | 5.25 | |
| DFC027 | CLINICAL SUPERVISORY TRAINING | 04/06/2015 | 04/10/2015 | | | 40.00 | 16 | |
| DFC049 | ENGAGING INCARCERATED PARENTS | 08/26/2015 | 08/26/2015 | | | 6.00 | 6 | |
| DFC125 | LIMITED ENGLISH PROFICIENCY TRAINING | 10/29/2015 | 10/29/2015 | | | 2.00 | 0 | |
| DFC099 | CAR SEAT SAFETY – 2015-2016 | 11/13/2015 | 11/13/2015 | | | 2.50 | 0 | |
| DFC033 | STRUCTURED ANALYSIS FMLY EVAL(SAFE)TRNG | 02/02/2016 | 02/03/2016 | | | 12.00 | 0 | |
| DFC025 | SAFE AND THE SW INTERVIEW | 02/04/2016 | 02/04/2016 | | | 6.00 | 0 | |



## State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC028 | PRE-SRVC TRAINING/MACWIS TRAINING GRP 2 | 07/07/2014 | 08/29/2014 | | | 270.00 | 40 | |
| DFC040 | CAR SEAT SAFETY – PRE SERVICE | 08/28/2014 | 08/28/2014 | | | 2.50 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC011 | REUNION TRAINING(STRESS MGMT)GROUP 2 | 08/20/2015 | 08/20/2015 | | | 3.00 | 3 | |



### State of Mississippi
Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS021 | NON -VIOLENT CRISIS INTRVENTION GULFPORT | 11/19/2012 | 11/20/2012 | 92 | | 12.00 | 0 | |
| DHS001 | ORIENTATION TO MDHS—FORREST COUNTY | 03/14/2013 | 03/14/2013 | 94 | | 6.00 | 0 | |
| DFC022 | SAFETY ASESMNT FRMWRK COACHING LAB SAFET | 11/04/2013 | 11/04/2013 | | | 6.00 | 5.75 | |
| DFC040 | CAR SEAT SAFETY – REGION VI | 04/15/2014 | 04/15/2014 | | | 2.50 | 0 | |
| DFC042 | CONTINUOUS QLTY IMPROVEMENT TRNG-REGION | 05/22/2014 | 05/22/2014 | | | 2.00 | 0 | |
| DFC071 | KEEPING IT SAFE I REGION 6 ONLY | 09/18/2014 | 09/18/2014 | | | 6.00 | 4.75 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 12/09/2014 | 12/09/2014 | | | 3.00 | 0 | |
| DFC066 | FROM PRACTICE GUIDE TO PRACTICE IMPL  PA | 01/15/2015 | 01/15/2015 | | | 5.25 | 1.5 | |
| DFC063 | SOCIAL WORK REFRESHER WORKSHOP | 01/17/2015 | 01/17/2015 | | | 7.00 | 0 | |
| DFC041 | CONTINUOUS QUALITY IMPROVEMENT TRAINING | 03/12/2015 | 03/12/2015 | | | 2.00 | 0 | |
| DHS016 | CULTURAL DIVERSITY@ HATTIESBURG | 05/21/2015 | 05/21/2015 | | | 6.00 | 0 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 08/05/2015 | 08/05/2015 | | | 6.00 | 6 | |
| DFC098 | KEEPING IT SAFE 2015-2016 | 09/01/2015 | 09/01/2015 | | | 3.50 | 2.5 | |
| DHS002 | CUSTOMER SERVICE @ GULFPORT | 09/15/2015 | 09/15/2015 | | | 6.00 | 0 | |
| DFC099 | CAR SEAT SAFETY – 2015-2016 | 09/23/2015 | 09/23/2015 | | | 2.50 | 0 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 10/15/2015 | 10/15/2015 | | | 6.00 | 6 | |
| DFC056 | UNDRSTNG CULTRL DIVSTY IN CHLD WLFR PRCT | 02/25/2016 | 02/25/2016 | | | 6.00 | 5.5 | |
| DFC111 | SCRT SLVRY:A CHLD WLFR RESP TO HMN TRFKG | 03/10/2016 | 03/10/2016 | | | 6.50 | 5.25 | |



# State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC028 | PRE-SRVC TRAINING/MACWIS TRAINING GRP 2 | 07/07/2014 | 08/29/2014 | | | 270.00 | 40 | |
| DFC040 | CAR SEAT SAFETY – PRE SERVICE | 08/28/2014 | 08/28/2014 | | | 2.50 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC125 | LIMITED ENGLISH PROFICIENCY TRAINING | 07/23/2015 | 07/23/2015 | | | 2.00 | 0 | |
| DFC011 | REUNION TRAINING(STRESS MGMT)GROUP 2 | 08/20/2015 | 08/20/2015 | | | 3.00 | 3 | |



### State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS021 | NON-VLNT CRISIS INTRVNTN-LEE COUNTY | 08/09/2011 | 08/10/2011 | | | 12.00 | 0 | |
| DFC005 | ADVANCED PROFESSIONAL DEV COURT PRACTICE | 08/09/2013 | 08/09/2013 | | | 11.00 | 9 | |
| DFC010 | CHLDHD/ADOLESCENT MENTAL HLTH ISSUES&THE | 09/10/2013 | 09/11/2013 | | | 12.00 | 12 | |
| DFC002 | SUBSTANCE ABUSE IN THE FAMILY | 10/24/2013 | 10/24/2013 | | | 6.00 | 6 | |
| DFC006 | KEEPING IT SAFE | 11/20/2013 | 11/20/2013 | | | 6.00 | 4.75 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 01/08/2014 | 01/08/2014 | | | 3.00 | 0 | |
| DFC003 | FAMILY TEAM MEETING & GROUP FACILITATION | 02/04/2014 | 02/04/2014 | | | 6.00 | 4.5 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 02/13/2014 | 02/13/2014 | | | 6.00 | 6 | |
| DFC022 | SAFETY ASSESSMENT FRAMEWORK COACHING LAB | 02/27/2014 | 02/27/2014 | | | 6.00 | 5.75 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 03/25/2014 | 03/25/2014 | | | 6.00 | 6 | |
| DFC048 | MALTREATMENT IN CARE INVESTIGATION TRNG | 04/22/2014 | 04/22/2014 | | | 6.00 | 0 | |
| DFC049 | ENGAGING INCARCERATED PARENTS | 05/06/2014 | 05/06/2014 | | | 6.00 | 6 | |
| DFC015 | DISP & 6 STEPS TO FND A FMLY:A PRCTC GUI | 05/27/2014 | 05/27/2014 | | | 6.00 | 5 | |
| DFC040 | CAR SEAT SAFETY - | 09/17/2014 | 09/17/2014 | | | 2.50 | 0 | |
| DFC017 | THE COMPREHENSIVE FMLY ASESMNT DESOTO CO | 09/24/2014 | 09/24/2014 | | | 3.00 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC056 | UNDRSTNG CULTRL DIVSTY IN CHLD WLFR PRCT | 03/19/2015 | 03/19/2015 | | | 6.00 | 5.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC064 | DISCIPLINE IN FOSTER CARE | 06/12/2015 | 06/12/2015 | | | 5.50 | 3.75 | |
| DFC014 | TEACHABLE MOMENTS:KNOWING WHEN TO TEACH | 12/09/2015 | 12/09/2015 | | | 6.00 | 5.25 | |
| DFC114 | LASTING PERMANENCY:PREVENTING MLTRTMNT,D | 04/19/2016 | 04/19/2016 | | | 6.00 | 5 | |
| DFC117 | CHLDHD TRAUMA:WHAT DO YOU KNOWABTTHAT? | 04/27/2016 | 04/27/2016 | | | 6.00 | 5.25 | |
| DFC117 | CHILDHOOD TRAUMA:DO YOU KNOW ABOUT THAT? | 04/27/2016 | 04/27/2016 | | | 6.00 | 5.25 | |
| DFC099 | CAR SEAT SAFETY - 2015-2016 | 06/28/2016 | 06/28/2016 | PASSED | | 2.50 | 0 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS001 | ORIENTATION TO MDHS—LEFLORE COUNTYY | 01/28/2009 | 01/28/2009 | | | 6.00 | 0 | |
| DHS021 | NON -VIOLENT CRISIS INTERVENTION | 08/05/2010 | 08/06/2010 | | | 12.00 | 0 | |
| DHS011 | THE "WRITE" TECHNIQUES - | 02/11/2011 | 02/11/2011 | | | 6.00 | 0 | |
| DFC036 | ATTITUDES TORWARD PERMANENCY | 09/09/2013 | 09/10/2013 | | | 6.50 | 0 | |
| DFC035 | PERMANENCY ROUNDTABLES VALUES TRAINING | 10/14/2013 | 10/14/2013 | | | 6.50 | 0 | |
| DFC013 | INDIVIDUALIZED CASE PLANNING | 11/22/2013 | 11/22/2013 | | | 6.00 | 4 | |
| DFC003 | FAMILY TEAM MEETING & GROUP FACILITATION | 12/04/2013 | 12/04/2013 | | | 6.00 | 4.5 | |
| DFC004 | CUSTOMER SRVC WRKSHP FOR SRVC PERSONNEL | 01/27/2014 | 01/27/2014 | | | 6.00 | 1.5 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 02/13/2014 | 02/13/2014 | | | 6.00 | 6 | |
| DFC018 | PERMANENCY | 03/04/2014 | 03/05/2014 | | | 12.00 | 10.5 | |
| DFC009 | THE "PUTTING THE PUZZLE PIECES TOGETHER! | 03/11/2014 | 03/11/2014 | | | 6.00 | 6 | |
| DFC008 | WHR R DADS?LOCATNG&ENGING ABS FATHERS | 03/25/2014 | 03/25/2014 | | | 6.00 | 6 | |
| DFC069 | WHAT'S HAPPENING IN INDEPENDENT LIVING | 09/24/2014 | 09/25/2014 | | | 12.00 | 10 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC037 | PERMANENCY VALUES&SKILLS REFRESHER PRT | 01/26/2015 | 01/26/2015 | | | 2.75 | 0 | |
| DFC010 | CHLDHD/ADOLESCENT MENTAL HLTH ISSUES&THE | 03/25/2015 | 03/26/2015 | | | 12.00 | 12 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC065 | USING ETHICS TO GUIDE CASEWRK&DECN MAKNG | 09/23/2015 | 09/23/2015 | | | 6.00 | 4.75 | |
| DFC115 | DON'T TAKE MY BABY! | 05/11/2016 | 05/11/2016 | PASSED | | 6.00 | 5.75 | |
| DFC116 | WORKPLACE ETIQUETTE AND PROFESSIONALISM | 05/18/2016 | 05/18/2016 | PASSED | | 6.00 | 0 | |
| DFC114 | LASTING PERMANENCY: PREVENT MALTREATMENT | 06/07/2016 | 06/07/2016 | PASSED | | 6.00 | 5 | |
| DFC114 | LASTING PERMANENCY: PREVENT MALTREATMENT | 06/08/2016 | 06/08/2016 | PASSED | | 6.00 | 5 | |
| DFC113 | HELP! THERE ARE TEENAGERS ON MY CASELOAD | 06/16/2016 | 06/16/2016 | PASSED | | 6.00 | 3.5 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC022 | SAFETY ASSESSMENT FRAMEWORK COACHING LAB | 04/24/2014 | 04/24/2014 | | | 6.00 | 5.75 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC086 | ASSESSING PRESENT DANGER | 05/13/2015 | 05/13/2015 | | | 2.00 | 0 | |
| DFC027 | CLINICAL SUPERVISORY TRAINING | 07/20/2015 | 07/24/2015 | | | 40.00 | 16 | |
| DFC125 | LIMITED ENGLISH PROFICIENCY TRAINING | 06/14/2016 | 06/14/2016 | | | 2.00 | 0 | |



# State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DFC030 | LVL II INTENSIVE SPRVSRY TRNG-MODULE I | 05/20/2013 | 05/21/2013 | | | 16.00 | 9.25 | |
| DFC031 | LVL II INTENSIVE SPRVSRY TRNG-MODULE II | 07/17/2013 | 07/18/2013 | | | 16.00 | 12 | |
| DFC016 | SBMTNG TPR PCKTS THAT WIL STND UP IN CRT | 12/04/2013 | 12/04/2013 | | | 3.00 | 0 | |
| DFC001 | APPROPRIATE AND QUALITY DOCUMENTATION | 12/05/2013 | 12/05/2013 | | | 6.00 | 5 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC117 | CHLDHD TRAUMA:WHAT DO YOU KNOWABTTHAT? | 01/27/2016 | 01/27/2016 | | | 6.00 | 5.25 | |
| DFC002 | SUBSTANCE ABUSE IN THE FAMILY | 03/30/2016 | 03/30/2016 | | | 6.00 | 6 | |
| DFC126 | USING MS PRAC MODEL: ICPC/SAFETY PLAN | 05/26/2016 | 05/26/2016 | | | 2.75 | 1.25 | |
| DFC014 | TEACHABLE MOMENTS: PARENTING SKILLS | 06/01/2016 | 06/01/2016 | PASSED | | 6.00 | 5.25 | |
| DFC098 | KEEPING IT SAFE 2015-2016 | 06/08/2016 | 06/08/2016 | | | 2.80 | 0 | |



# State of Mississippi

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS020 | HOW TO DEAL WITH IRATE CLIENTS | 03/13/2008 | 03/13/2008 | | | 6.00 | 0 | |
| BSC300 | BSC POST EXAM | 03/09/2009 | 03/09/2009 | 96 | | 0.00 | 0 | |
| BSC100 | SUPERVISOR'S GOALS FORM | 03/09/2009 | 03/09/2009 | | | 0.00 | 0 | |
| BSC400 | BSC INDIVIDUAL DEVELOPMENT PLAN (IDP) | 03/09/2009 | 03/09/2009 | | | 0.00 | 0 | |
| BSC200 | BASIC SUPERVISORY COURSE | 03/09/2009 | 03/13/2009 | 96 | | 0.00 | 0 | |
| BSCCERT | BASIC SUPERVISORY COURSE CERTIFICATION | 03/31/2009 | 03/31/2009 | | | 30.00 | 0 | |
| DFC030 | LVL II INTENSIVE SPRVSRY TRNG-MODULE I | 04/02/2013 | 04/03/2013 | | | 16.00 | 9.25 | |
| DFC031 | LVL II INTENSIVE SPRVSRY TRNG-MODULE II | 05/01/2013 | 05/02/2013 | | | 16.00 | 12 | |
| DFC032 | LVL II INTENSIVE SPRVSRY TRNG-MODULE III | 06/03/2013 | 06/04/2013 | | | 16.00 | 11.5 | |
| DHS019 | PDS (STATE OFFICE) | 10/16/2013 | 10/16/2013 | | | 6.00 | 0 | |
| DHS013 | PERFORMANCE DEV SYSTEM (PDS) WINSTON CO | 10/29/2013 | 10/29/2013 | | | 4.00 | 0 | |
| DFC039 | REGIONAL IMPLEMENTATION TEAM SEMINAR | 03/25/2014 | 03/25/2014 | | | 5.00 | 0 | |
| DFC038 | MASTER PRACTITIONER TRAINING | 04/15/2014 | 04/15/2014 | | | 3.50 | 0 | |
| DFC046 | 3-5-7-MODEL TRNG&FMLY FINDING TRNG OVRVW | 05/19/2014 | 05/19/2014 | | | 6.00 | 0 | |
| DFC068 | LVL III CLINICAL SUPERVISORY TRNG-OVRVW | 06/11/2014 | 06/11/2014 | | | 6.50 | 0 | |
| DFC070 | LGL STKHLDRS FOR PRMNCY FOR CHLDN SUMMTS | 10/30/2014 | 10/30/2014 | | | 6.75 | 6.5 | |
| DFC071 | KEEPING IT SAFE I | 01/15/2015 | 01/15/2015 | | | 6.00 | 4.75 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC100 | ANNUAL STATEWIDE ASWS MEETING | 07/21/2015 | 07/22/2015 | | | 11.00 | 7 | |
| DFC113 | HELP! THERE ARE TEENAGERS ON MY CASELOAD | 02/03/2016 | 02/03/2016 | | | 6.00 | 3.5 | |
| DFC117 | CHILDHOOD TRAUMA:DO YOU KNOW ABOUT THAT? | 06/14/2016 | 06/14/2016 | | | 5.25 | 0 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS020 | HOW TO DEAL WITH IRATE CLIENTS JACKSON C | 05/31/2007 | 05/31/2007 | | | 6.00 | 0 | |
| BSC300 | BSC POST EXAM | 03/09/2009 | 03/09/2009 | 96 | | 0.00 | 0 | |
| BSC100 | SUPERVISOR'S GOALS FORM | 03/09/2009 | 03/09/2009 | | | 0.00 | 0 | |
| BSC400 | BSC INDIVIDUAL DEVELOPMENT PLAN (IDP) | 03/09/2009 | 03/09/2009 | | | 0.00 | 0 | |
| BSC200 | BASIC SUPERVISORY COURSE | 03/09/2009 | 03/13/2009 | 96 | | 0.00 | 0 | |
| BSCCERT | BASIC SUPERVISORY COURSE CERTIFICATION | 03/31/2009 | 03/31/2009 | | | 30.00 | 0 | |
| DHS021 | NON -VIOLENT CRISIS INTERVENTION | 09/23/2011 | 09/23/2011 | | | 12.00 | 0 | |
| PDSSYSTM/2 | PDS – DEPT. OF HUMAN SERVICES | 04/18/2013 | 04/18/2013 | | | 2.00 | 0 | |
| DFC031 | LVL II INTENSIVE SPRVSRY TRNG-MODULE II | 06/03/2013 | 06/04/2013 | | | 16.00 | 12 | |
| DFC007 | ABC'S OF YOUR CHILD'S EDUCATION | 10/17/2013 | 10/17/2013 | | | 2.00 | 0 | |
| MAGLOG100 | LOGISTICS OVERVIEW (SOUTHERN) | 05/06/2014 | 05/06/2014 | | | 4.00 | 0 | |
| DFC021 | EXPEDITED PLACEMENT TRAINING | 05/15/2014 | 05/15/2014 | | | 3.00 | 0 | |
| DFC017 | THE COMPREHENSIVE FAMILY ASSESSMENT | 05/20/2014 | 05/20/2014 | | | 3.00 | 0 | |
| DFC022 | SAFETY ASSESSMENT FRAMEWORK COACHING LAB | 05/22/2014 | 05/22/2014 | | | 6.00 | 5.75 | |
| DFC029 | INV IN NEWHIRE:PROM WRK RET THRU SUP TRG | 05/29/2014 | 05/29/2014 | | | 6.00 | 0 | |
| DFC057 | LVL III CLINICAL SPRVSRY TRNG-MODULE I | 06/13/2014 | 06/13/2014 | | | 3.00 | 2.5 | |
| DFC058 | LVL III INTENSIVE SPRVSRY TRNG-MODULE II | 07/11/2014 | 07/11/2014 | | | 3.00 | 2.5 | |
| DFC059 | LVL III INTENSIVE SPRVSRY TRNG-MOD III | 08/08/2014 | 08/09/2014 | | | 3.00 | 2.5 | |
| DFC060 | LVL III INTENSIVE SPRVSRY TRNG-MODULE IV | 09/19/2014 | 09/19/2014 | | | 3.00 | 2.5 | |
| DFC070 | LGL STKHLDRS FOR PRMNCY FOR CHLDN SUMMTS | 10/28/2014 | 10/28/2014 | | | 6.75 | 6.5 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC100 | ANNUAL STATEWIDE ASWS MEETING | 07/21/2015 | 07/22/2015 | | | 11.00 | 7 | |
| DFC116 | WORKPLACE ETIQUETTE AND PROFESSIONALISM | 06/22/2016 | 06/22/2016 | PASSED | | 6.00 | 0 | |
| DFC116 | WORKPLACE ETIQUETTE AND PROFESSIONALISM | 06/22/2016 | 06/22/2016 | | | 0.00 | 0 | |



**State of Mississippi**

Training Transcript for



July 22, 2016

| Short Course Name | Long Course Name | Start Date | End Date | Grade | Certification Status | Credit Hours | CEUs | Qualification |
|---|---|---|---|---|---|---|---|---|
| DHS020 | HOW TO DEAL WITH IRATE CLIENTS | 03/13/2008 | 03/13/2008 | | | 6.00 | 0 | |
| DFC039 | REGIONAL IMPLEMENTATION TEAM SEMINAR | 03/25/2014 | 03/25/2014 | | | 5.00 | 0 | |
| DFC076 | SECONDARY TRAUMATIC STRESS | 01/21/2015 | 01/21/2015 | | | 6.00 | 2.5 | |
| DFC083 | SPRVSNG THE SPRVSR:THE MISSING PIECE(P1) | 04/01/2015 | 04/01/2015 | | | 6.25 | 6.25 | |
| DFC084 | SPRVSNG THE SPRVSR:THE MISSING PIECE(P2) | 04/02/2015 | 04/02/2015 | | | 4.25 | 4.25 | |
| DFC082 | WICKLANDER-ZULAWSKI SEMINAR | 04/07/2015 | 04/09/2015 | | | 19.50 | 0 | |
| DFC100 | ANNUAL STATEWIDE ASWS MEETING | 07/21/2015 | 07/22/2015 | | | 11.00 | 7 | |
| DFC115 | DON'T TAKE MY BABY! | 03/22/2016 | 03/22/2016 | | | 6.00 | 5.75 | |

# Ex. 18



MDHS DIVISION OF FAMILY AND CHILDREN'S SERVICES
Safety, Permanency, and Well-Being

# DFCS CQI
# Maltreatment In Care Review Process

**Prepared By:   Robert Hamrick, Evaluation & Monitoring Director**

*1.0*

DHS
339040

# Protocol for Review of Maltreatment in Care Investigations

## I.    Overview and Purpose

In order to improve practice surrounding investigations of children alleged to have experienced maltreatment in foster care, as well as to strengthen the Division of Family and Children's Services' (DFCS) staff skills and abilities to take necessary steps to help ensure the safety and well-being of children in custody and as a requirement of the *Olivia Y* Modified Settlement Agreement (MSA), DFCS has developed a procedure and accompanying instrument for the review of all investigations of maltreatment in care. The overarching purpose of these reviews is two-fold:

1.  To ensure  quality, comprehensive, and timely investigations into all allegations of maltreatment while a child is in out-of-home care; and

2.  To ensure all children in custody are maintained safely in their placements, are free from harm, and any concerns regarding child(ren)'s safety and case practice deficiencies are addressed and monitored by proper authorities.

The MSA and the Year III Implementation Plan (Y3IP) provide certain specific procedures and time frames for addressing deficiencies identified through the review of MIC investigations. As stated in MSA II.B.1.d.:

> *Within 30 days of completion of any investigation of maltreatment while in custody… DFCS shall review the maltreatment investigation…*including:

- *Identification of any case practice deficiencies*;

- *Identification of any remedial actions necessary to ensure the safety of the child who is the subject of the investigation as well as any other child in the home or placement **as well as the timeframe in which such remedial action must take place; and***

- *Identification of any corrective action that is necessary to address deficiencies in case practice demonstrated by the investigation **as well as the timeframe in which such remedial action must take place.***

Section II.B.1.d of the MSA requires DFCS to monitor the initiation and completion of the remedial actions (as described above) and to notify the Area Social Work Supervisor (ASWS), Regional Director (RD), and Director of Field Operations when such remedial actions have not been initiated within five (5) days of identification or timely completion.

Section II.C.3.a-e of Y3IP (found at Appendix "B" of MSA or on pg 66/81 of Doc. 571) requires DFCS to develop the training and fully implement the processes required to complete the maltreatment in care review described in MSA Section II.B.1.d., as well as:

DHS
339041

*a. review of in-care maltreatment investigations to identify case practice deficiencies;*

*b. identification of remedial actions necessary to ensure the safety of the child who is the subject of the investigation as well as any other child in the home or placement;*

*c. identification of any corrective action that is necessary to address deficiencies in case practice demonstrated by the investigation;*

*d. monitoring of the initiation and completion of the remedial actions regarding individual child safety and notification to the ASWS, Regional Director, and Director of Field Operations when such remedial actions have not been initiated within five (5) days of identification or timely completed; and*

*e. monitoring of the initiation and completion of the remedial actions regarding case practice and notification to the ASWS, Regional Director, and Director of Field Operations when such remedial actions have not been initiated within twenty (20) working days of identification or timely completed.*

To meet these objectives, DFCS has developed the Maltreatment in Care (MIC) Review process described below. The process includes the requirement that remedial actions be initiated in the field to address any safety or practice related deficiencies. These remedial actions will be monitored by the Division of Evaluation and Monitoring within DFCS' Office of Continuous Quality Improvement (CQI).

The MIC reviews will replace the Special Safety Reviews previously conducted. A Safety Review Unit (SRU) within the Evaluation and Monitoring Unit will be developed to conduct the MIC reviews and monitor the quality of case practice in MIC investigations as well as the initiation and status of remedial actions to address issues identified in the MIC reviews.  Specifically, SRU will:

- Conduct reviews on maltreatment investigations of children in foster care, as identified by data from MACWIS weekly reports;

- Monitor the status of remedial actions resulting from the reviews

- Review data reports reflecting state, regional, and county performance on various child welfare indicators associated with maltreatment in care; and

- Ultimately, provide aggregate data on safety and casework-related findings to analyze the qualitative and quantitative findings of MIC reviews and compile results into reports that identify the strengths and areas needing improvement identified in the reviews.

The results of these reviews will be used to guide further improvements to assure the safety, permanency, and well-being of children while in DFCS custody.  Trends in practice will be monitored by CQI.

DHS
339042

## II.   Overview of the Maltreatment in Care (MIC) Review Process

This section provides an overview of the MIC Review process and timeframes for conducting the reviews and tracking the related remedial actions. For more detailed information on the process for reporting, implementing, and tracking of remedial and corrective actions, please see Section IV below.

MIC Reviews will be conducted on investigations of foster children alleged to have been maltreated while in care. Information on which cases to review will be derived from a MACWIS report (MWZ1271D) of children alleged to have been maltreated in care. This report runs on the 10th day of the month following the month the investigations were completed. However, a weekly run will be made specifically for the SRU in an effort to assure that the reviews are done within 30 days following the completion of the investigation.

The entries, including approved findings, on MWZ1271D will be the investigations that are subject to review since this is an indicator that the investigation has been completed. The supervisor of the SRU will make the assignments from this report to the MIC reviewer(s). After the review of the investigation has been completed, the review instrument and any findings of need for remedial action will be submitted to the SRU supervisor for review, feedback, and approval for submission to the field for further action.

A specialized tool has been developed to capture strengths and areas needing improvement in the two target areas of the MIC Reviews:

1. Are the investigations being initiated and completed timely?
2. Are children safe in their out-of-home care setting, and is any action needed to ensure their safety, permanency, and well-being?

MIC Safety Review findings are entered into the MIC Review instrument by dedicated reviewers who have been trained for this specialized review. If the reviewers identify necessary corrective action, the information is distributed to the appropriate RD via the designated reporting and tracking method (HEAT software) for developing, initiating and implementing corrective actions. The corrective actions taken by DFCS field- or facility staff are forwarded to the SRU supervisor who will track the corrective actions taken by the field. There are two types of corrective actions that might be identified through the course of the MIC Review, as described in the Y3IP.

- DFCS staff and facility staff must initiate corrective actions involving the **safety**[1] of the child, as well as other children in the home, within 5 days of the notification from the SRU of the need for corrective actions.  If the corrective actions related to safety have not been initiated within this 5 day time period, the SRU shall notify the Director of Field Operations regarding remedial actions related to any identified safety issues. The Director of Field Operations will then follow-up with the appropriate RD for a response.

---

[1] See Sections III and IV and FN 2 below for *imminent* safety concern protocol.

DHS
339043

- DFCS staff and facility staff must initiate corrective actions involving **casework practice deficiencies** within 20 days of the notification from the SRU of the need for corrective actions. If the corrective actions related to casework practice issues have not been initiated within this 20 working day time period, the SRU shall notify the Director of Field Operations regarding remedial actions of any identified practice issues. The Director of Field Operations will then follow-up with the appropriate RD for a response.

Depending on the type of facility subject to the maltreatment in care review, the SRU supervisor will inform different parties in the DFCS leadership of corrective actions being taken:

- If the home is licensed by an agency other than DFCS or is a congregate care facility, the information will be forwarded to the EMU Director, the DFCS Director, the Director of Field Operations and the Director of Licensure.

- If corrective action by DFCS staff is required, the information will be forwarded to the Director of Field Operations, who is responsible for follow-up actions to be conducted by DFCS staff in the field.

- The Director of Licensure is responsible for corrective actions to be conducted by resource home or facility staff licensed through DFCS, as appropriate.

If, during the course of the MIC review, any **imminent safety concerns** are identified by MIC Reviewers, they will be reported within 24 hours by the SRU supervisor to the Director of Field Operations, the appropriate RD, and the appropriate ASWS, particularly if it is a matter which requires a faster response than normal procedure described above. Examples of the types of imminent safety concerns that may be identified are described in the section below.

From the time of assignment, the MIC Reviewer will have four (4) calendar days to complete the review of the investigation and submit it to the SRU supervisor for approval. The SRU supervisor will have one (1) calendar day to approve the findings of the review or return it back to the reviewer for corrections. The data collected in the review instruments will be compiled into MIC Review reports (frequency to be determined), to be submitted to the CQI Director, EMU Director and to the Field Operations Director. These MIC Review reports will detail those cases that required corrective actions to remedy any identified safety or practice issues, and those that did not, in order to identify trends and inform practice with regard to child safety, permanency, and well-being issues while in foster care.

DHS
339044

## III. Identification of Imminent Concerns of Safety, Case Practice Related concerns, and Case specific concerns related to Permanency and Well-being for Remedial and Corrective Actions

There are three primary types of concerns that may be identified by the MIC reviewer during the course of the review (which will require different timeframes for corrective actions):

- imminent concerns of safety for the child;
- case practice related concerns;  and
- case specific concerns related to permanency and well-being.

Examples of **imminent safety** concerns which will require (1) reporting and action within 24 hours on the part of MIC Review staff and (2) implementation of corrective action by field staff within 5 calendar days[2] include, but are not limited to the following:

- An investigation of maltreatment of a child that was improperly conducted, such as not seeing the child face-to-face, not interviewing an identified perpetrator, or not addressing critical risk factors;

- The presence of risk/safety factors that violate a safety plan;

- The exposure of a child to factors/circumstances that present a safety/risk concern that the Agency may be unaware of;

- Any indication that the target child and/or other child(ren) in the home has been neglected, exploited or abused while in out-of-home care that has not been appropriately documented, reported, and/or investigated;

- Lack of substantive documentation reflecting assessment of safety/risk in the presence of maltreatment reports/safety plans or in high-risk situations;

- An assessment of a child's or parent's needs that present a safety/risk threat to the child;

- Failure to implement an appropriate safety plan in the face of identified safety/risk threats to the child;

- Failure to notify law enforcement of an allegation of felony child abuse;

---

[2]   Upon receiving the first notification of a concern requiring corrective action, the RD is responsible for initiating and reporting back, in writing, to the Office of Field Operations and the EMU Director on corrective actions being taken to ensure the safety of the child and any other children in the home within 5 days of identifying the concern or immediately for safety concerns. *It should be noted that waiting 5 days to initiate a child's move from a placement situation where the child is at serious risk of harm is not good case practice and every effort should be made to initiate corrective action in such cases immediately upon notification.*

DHS
339045

- Failure to initiate the report within 24 hours which includes having face-to-face contact with the alleged victims; and

- The lack of critical services being provided, such as medical, dental, or mental health care that are responsive to critical needs of the child;

Examples of **case practice or systemic issues** which require the regular 20 calendar day corrective action implementation timeframe include, but are not limited to the following:

- Failure to make collateral contacts;

- Failure by the RD (or designee, both hereinafter "RD") to approve in the investigation by the 30th calendar day;

Examples of **child or case specific concerns** for the child's timely permanency, stability or well-being, requiring the regular 20 day corrective action implementation timeframe includes but is not limited to the following:

- The threat of a placement disruption that DFCS may be unaware of or has not responded to;

- The identification of the special needs of a child that are not reflected in the case record or which the Agency seems unaware of; and

- The lack of critical services to meet a child's needs that are not specifically safety-related, such as independent living services when a child is nearing emancipation.

If any staff person conducting a MIC Review activity has a question about whether or not an identified concern meets the criteria for an imminent safety concern, s/he should immediately consult the SRU Supervisor.

## IV.    Reporting, Implementing and Tracking Identified Concerns for Remedial/Corrective Action

As described above, depending on the type of concern identified through the course of the MIC review, different timeframes for initiating the process below are warranted. For **imminent safety concerns** to the child (examples provided in Section III), the reviewer will immediately (within 24 hours) initiate the process below, even if the review is not yet completed:

- The MIC Reviewer identifying the safety concern shall immediately report the concern verbally to the SRU Supervisor, the RD, responsible ASWS and investigating caseworker but in all cases within 24 hours.  In the absence of one of these parties, the staff person should immediately report the concern to the next person in charge, e.g., the Regional ASWS or supervisor in charge. The RD will then follow-up with the responsible ASWS and investigating caseworker to

DHS
339046

initiate and implement corrective actions to alleviate the issue at hand.

- Once the MIC Reviewer has initiated the reporting of the safety concern to the above listed parties, s/he will proceed with completing the rest of the MIC review. Within 24 hours of reporting the safety concern; the MIC Reviewer reporting the issue of imminent safety shall follow-up the verbal report with a written report identifying the concern to the SRU supervisor who will notify the appropriate RD (including the DFCS Director of Field Operations and EMU Director in the communication) via the reporting/tracking system.

- The RD is responsible for determining the appropriate corrective action and will follow-up with responsible ASWS and investigating caseworker regarding the issue of imminent safety and actions taken to alleviate the issue at hand. The RD is responsible for entering/reporting the determined corrective action to mitigate the concern within 24 hours of receiving notification of the issue from SRU in the reporting system.

- Upon receipt from the RD, the Director of Field Operations has 24 hours to approve or object to the proposed corrective action.

- Once 72 hours have passed since the initial identification of the issue by the MIC reviewer and development of corrective action, and period to object has passed, the RD, in consultation with the investigating worker, must initiate the corrective action.

- If the RD does not acknowledge receipt of the written report within 5 days, the SRU supervisor will notify the EMU Director who will follow-up with the Field Operations Director and the CQI Director. If no response is received within another 5 days, the issue is escalated to the Deputy Administrator of DFCS through the Director of CQI.

- After gathering and recording any additional information needed (such as medical, mental health, law enforcement records, etc.), as well as completing the MIC review instrument, the SRU staff tracking the corrective action, as described on the reporting/tracking system, will enter the additional information into the reporting/tracking system in place for purposes of tracking the response from the county/region.

For **case-practice/systemic and case/child-specific permanency and well-being concerns**, the MIC reviewers must initiate the process, outlined below, within 3 calendar days of completion of their MIC review.

- Upon completion of the instrument, the MIC review staff identifying the concern(s) shall verbally report the concern to the SRU supervisor to staff the concern in order to determine if the concern requires corrective action. Within 3 calendar days, the verbal report shall be  followed up with a written report to the SRU supervisor

DHS
339047

- After gathering and recording any needed additional information (such as medical, mental health, law enforcement records, etc.), the SRU supervisor will enter the information into the reporting/tracking system in place for purposes of tracking the corrective action response from the county/region.

- The written report will then go to the appropriate RD, EMU Director, and the DFCS Director of Field Operations. Upon receipt of the report, the RD is responsible for ultimately determining the corrective action to be undertaken, and entering the decision in the report tracking system within 3 calendar days.

- Upon notification of receipt of the proposed corrective action from the RD, the Director of Field Operations will have 2 calendar days to approve or request changes to the proposed corrective action. The county must initiate corrective actions within 20 days of identification of the concern by the MIC reviewer via the reporting/tracking system.

- If the RD does not acknowledge receipt of the written report within 20 days, the CQI Director will be notified who will notify the Director of Field Operations for a response. If no response is received within another 5 days, the issue is escalated to the Deputy Administrator of DFCS through the CQI Director.

### Implementing Corrective Action

- Upon receiving the first notification of a concern requiring corrective action, the RD is responsible for initiating and reporting back, in writing, to the Office of Field Operations and the EMU Director on corrective actions being taken to ensure the safety of the child *and any other children in the home* within 5 days of identifying the concern or immediately for safety concerns. It should be noted that waiting 5 days to initiate a child's move from a placement situation where the child is at serious risk of harm is not good case practice and every effort should be made to initiate corrective action in such cases *immediately* upon notification.

- Within the regions, the RD may determine how and who will be responsible for developing and implementing corrective actions, depending upon the nature of the concern.

- Actions taken by the field must specifically address the concerns noted by the SRU staff for the child in question *and must also address any other children in the home. These actions shall also address timeframes in which the specified actions were taken.*

- The RD is responsible for ensuring that appropriate corrective actions are taken to address the concerns noted and for reporting in writing to the Director of Field Operations and the Office of CQI on the status of actions taken. These actions taken will be followed by the SRU to assure timely initiation of corrective actions.

- An identified corrective action is considered implemented when (1) the action has been put in place by the responsible county that addresses all identified concerns

DHS
339048

with approval by the RD and the Director of Field Operations and (2) the Director of EMU and SRU supervisor are notified that implementation has taken place.

## *Tracking Corrective Actions*

- Utilizing the designated reporting/tracking system (e.g. HEAT Software), the RD will send notification to the appropriate county for remedial/corrective action that is to take place.

- At 5 days following identification of the safety concern by the MIC reviewer, the county of responsibility's ASWS and the assigned investigating caseworker shall have implemented the remedial/corrective action plan established by the RD to address the identified concern. The county will report this action to the RD who reports the action to the Director of Field Operations who reviews the action taken for verification and approval that it addresses the identified concern. The action is reported back to the EMU Director and the SRU Supervisor who reviews the action for verification that it addressed the identified concern and closure of the actions.

- After receiving verification from the Director of Field Operations that the corrective action taken for the safety issue(s) identified is appropriate and addresses the identified issue at hand, the Evaluation and Monitoring Unit Director will make a determination of closure of the action and the county/region is notified in writing that the matter has been closed.

- If the action taken does not address the identified issue, it shall be returned to the county/region by the Director of Field Operations within 24 hours for correction.

- If no action is taken in 5 days of receiving notification of the concern from the SRU, the matter is escalated to the Director of CQI who shall escalate the concern to the Deputy Administrator of DFCS.

At 20 days following identification of a practice (non-safety) concern, the same process as above will be followed, only within a 20 working day time-frame.

Corrective actions taken can range from the county simply entering needed documentation (which would require a check of the electronic case record for verification that the documentation was entered) or a more detailed corrective action plan such as making 2 unannounced visits a week to the home for a month or removing the child from a placement (which would require more detailed and frequent documentation from the field in order to verify that the corrective action was taken).

DHS
339049

**Ex. 19**

# Safety Review Unit
# Maltreatment in Care Review Instrument

| A | IDENTIFYING INFORMATION | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Intake ID # | | | | | | | | |
| 2 | Date Intake Report Received by Centralized Intake(mm/dd/yyyy) | | | | | | | | |
| 3 | Date report was assigned for investigation (mm/dd/yyyy) | | | | | | | | |
| 4 | Number of alleged victim children: | | | | | | | | |
| 5 | Identifying information of Alleged Victim Children: | | | | | | | | |

| Name | Child ID# | DOB | In DHS Custody? | County of Responsibility | Region | ICPC Child? | If ICPC, what state? | Allegation(s) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Description of the Maltreatment in Care Report |
|---|
| |

| | | Yes | No | |
|---|---|---|---|---|
| 6 | Were any of the alleged victim children under the age of 5? | | | |
| 7 | If "Yes" to #6, how many of the alleged victim children are under the age of 5? | | | |
| 8 | Name(s) of Alleged Perpetrator(s): | | | |
| 9 | Placement Type | | | |

| | | Yes | No | N/A |
|---|---|---|---|---|
| 10 | Is this a licensed placement/facility? (Select "N/A" only if child is in Own-Home) | | | |
| 11 | Resource ID (enter N/A if child is in Own-Home) | | | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| 12 | Name of the placement (resource home/facility/own home name) where the child was placed at the time of the alleged maltreatment: | | | |
|---|---|---|---|---|
| 12a | Have there been previous investigations of **maltreatment in care** on this placement for abuse, neglect, exploitation? | **Yes** | | **No** |
| | | | | |
| 12b | If "yes" to 12a, how many investigations have there been? | | | |
| 12c | If "Yes" to 12a, were any of the reports substantiated for abuse, neglect, exploitation? | **Yes** | **No** | **N/A** |
| | | | | |
| 12d | How many of the previous reports were substantiated for abuse, neglect, exploitation? | | | |
| 12e | Did any of the substantiated reports referenced in #12c occur within six months of the investigation of maltreatment in care currently being reviewed? | **Yes** | **No** | **N/A** |
| | | | | |
| 12f | If "Yes" to 12e, did any of the reports of maltreatment in care involve the same or similar circumstances? | **Yes** | **No** | **N/A** |
| | | | | |
| 13 | Report Type | **ANE** | | |
| 14 | Is report appropriately identified as alleged maltreatment in care? | **Yes** | **No** | |
| | | | | |
| 15 | County where child's placement is located: | | | |
| 16 | Region where child's placement is located: | | | |
| 17 | Name of the Investigator on the maltreatment in care investigation being reviewed: | | | |
| 18 | Name of the Investigator's supervisor: | | | |
| 19 | Name of the Maltreatment in Care Reviewer: | | | |
| 20 | Date Maltreatment in Care Review Initiated (mm/dd/yyyy) | | | |
| **B** | **CASE PRACTICE** | | | |
| 21 | Date investigation initiated by the investigator (mm/dd/yyyy) | | | |
| 22 | Was the investigation initiated within 24 hours of initial intake of the report? | **Yes** | **No** | |
| | | | | |
| 23 | If no, provide the reason or note no reason identified. | | | |
| 24 | Were all of the alleged victim child(ren) seen within 24 hours of initial intake of the report? | **Yes** | **No** | |
| | | | | |
| 25 | If "No", which alleged victim children were not seen within 24 hours of the initial intake of the report? | | | |
| 26 | Did the investigator review all of the cases of those involved (victim children, other children, placement)? Select N/A only for own-home/runaway investigation in which the assigned caseworker is the investigator | **Yes** | **No** | **N/A** |

# Safety Review Unit
# Maltreatment in Care Review Instrument

| 27 | Were all children in the home (victim children and all DFCS children) seen and interviewed privately, outside the presence of the caretaker, by the investigator? | | | |
|---|---|---|---|---|
| 28 | If not all children were seen and interviewed privately outside the presence of the caretaker, please identify which child(ren) was not seen by the investigator: | | | |
| | | **All** | **Some** | **None** |
| 29 | Were all appropriate people interviewed as part of the investigation? | | | |
| 30 | If not all, please identify all who were not: | | | |
| | | **All** | **Some** | **None** |
| 31 | Were any of the child(ren) in the home removed from the placement during the course of the investigation? | | | |

| | | **Alleged Victims** | **Non-Victims** | **Both** | **N/A** |
|---|---|---|---|---|---|
| 32 | If all or some were removed from the placement, were they alleged victims, non-victim children or both? | | | | |

| | | **Yes** | **No** | **N/A** |
|---|---|---|---|---|
| 33 | If all or some were removed from the placement, were discussions held with both the child(ren) and placement provider (if applicable) explaining why? | | | |
| 34 | Date Safety/Risk Assessment completed (mm/dd/yyyy) | | | |
| | | **Yes** | **No** | |
| 35 | Was the Safety/Risk Assessment Completed Timely (within 25 calendar days of the report date and time)? | | | |
| 36 | If "No", please explain (give date of investigation assignment and date the Safety/Risk Assessment was completed): | | | |
| | | **Yes** | **No** | **N/A** |
| 37 | Was the Safety/Risk Assessment thorough? | | | |
| 38 | If "No" to #37, please explain: | | | |
| | | **Yes** | **No** | **N/A** |
| 39 | Did the Safety/Risk Assessment indicate the child(ren) were unsafe? | | | |
| 40 | If "Yes" to #39, was a Safety Plan developed? | | | |
| 41 | If "Yes" to #40, enter the date of the Safety Plan (mm/dd/yyyy) | | | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| | | | | |
|---|---|---|---|---|
| 42 | If "No" or "N/A" to #40, please explain: | | | |
| | | **Yes** | **No** | **N/A** |
| 43 | Was the Safety Plan thorough? | | | |
| | | **Yes** | **No** | **N/A** |
| 44 | Was the Safety Plan appropriate to the circumstances of the investigation? | | | |
| | | **Yes** | **No** | |
| 45 | Was the placement that is the subject of the investigation thoroughly evaluated for safety, permanency, and child well-being? | | | |
| 46 | Please elaborate how the placement was evaluated: | | | |
| 47 | Date the investigation was submitted for supervisory approval (mm/dd/yyyy) | | | |
| | | **Yes** | **No** | |
| 48 | Did the Investigator complete the investigation within 25 calendar days and forward it to the supervisor or Regional Director/designee for approval? | | | |
| 49 | Date the supervisor or Regional Director/designee approved the findings of the investigation (mm/dd/yyyy) | | | |
| | | **Yes** | **No** | |
| 50 | Did the supervisor or Regional Director/designee approve the findings of the investigation by the 30th calendar day? | | | |
| **C** | **RESOURCE HOME / OWN-HOME INVESTIGATION** | | | |
| | | **Yes** | **No** | **N/A** |
| 51 | Is this a review of a Resource Home/Own Home Investigation? (If No, skip to section D) | | | |
| 52 | Did the **assigned** Resource Specialist accompany the assigned Investigator to the home to assess possible policy and/or licensure violations (select N/A if child(ren) is placed in Own-Home)? | | | |
| 53 | After the initial Safety/Risk Assessment was completed, was it determined that corrective action was necessary? | | | |
| 54 | If yes, were all pertinent parties informed of the necessary corrective action? | | | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| | | | | |
|---|---|---|---|---|
| **54a** | What corrective action(s) were put in place? | | | |
| | | **Yes** | **No** | **N/A** |
| **55** | Was the resource home closed? (select N/A if child(ren) is placed in Own-Home) | | | |
| **56** | If there was not a substantiation of ANE, was there a policy violation? | | | |
| **57** | What measures were taken to address the policy violation identified in #56? | | | |
| | | **Yes** | **No** | **N/A** |
| **58** | Were the measures to address the policy violation appropriate based on the findings of the investigation? | | | |
| **59** | If "No" or "N/A" to #58, please explain | | | |
| **D** | **FACILITY INVESTIGATION** | | | |
| | | **Yes** | **No** | **N/A** |
| **60** | Is this an investigation of a licensed facility? (If No, skip to Section E) | | | |
| **61** | If immediate protection was needed for the child(ren), was the Youth Court and the licensing agency contacted and protective measures taken? *(Select N/A if no immediate protection was needed for the child/ren)* | | | |
| **62** | If the allegation was felony child abuse, was law enforcement notified immediately? | | | |
| **63** | Did the investigator confer with the facility Director or staff in charge upon arrival at the facility to inform them of the report? | | | |
| | | **Yes** | **No** | **N/A** |
| **64** | Was the child(ren) referred to a physician or other professional as appropriate? | | | |
| **64a.** | Explain your answer: | | | |
| | | **All** | **Some** | **None** |
| **65** | Were all appropriate facility personnel, including the perpetrator (if approved by law enforcement) interviewed? | | | |
| **65a.** | If "Some" or "None", identify who was not interviewed: | | | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| 66 | Did investigator view the physical premises of the incident? |  |  |  |
| 67 | Did the investigator review documents related to the incident? |  |  |  |
| 68 | Did the investigator review the facility's policies and procedures on behavior management pertinent to the incident if the report involves physical abuse as a result of behavior management technique? |  |  |  |
| 69 | Was the facility closed? |  |  |  |
| 70 | If there was not a substantiation of ANE, was there a policy violation? |  |  |  |
| 71 | If "Yes" to #70, what measures were taken to address the policy violation? |  |  |  |

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| 72 | Were the measures to address the policy violation appropriate based on the findings of the investigation? |  |  |  |
| 73 | If "No" or "N/A" to #72, please explain |  |  |  |

| E | Summary to determine if a full and systematic evaluation was conducted of the factors that may place the child/ren in custody at risk. |
|---|---|

**Provide a summary of the findings of the investigation conducted:**

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| | | Yes | No | |
|---|---|---|---|---|
| 74 | Did the Investigator identify any present or impending danger to the child(ren)? | | | |
| 75 | If "Yes" to #74, please describe | | | |
| | | Yes | No | |
| 76 | Does **this review** of the investigation indicate any present or impending dangers that **were not** identified by the investigator? | | | |
| 77 | If "Yes" to #76, please describe | | | |
| | | Yes | No | |
| 78 | Did the Investigator identify any risk concerns for the child(ren) | | | |
| 79 | If "Yes" to #78, please describe | | | |
| | | Yes | No | |
| 80 | Does **this review** of the investigation indicate any present or impending risk factors that **were not** identified by the investigator? | | | |
| 81 | If "Yes" to #80, please describe | | | |
| | | Yes | No | |
| 82 | Does this review indicate risk or safety concerns that **were not** addressed in the investigation for any other children in the placement? | | | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| 83 | If "Yes" to #82, please describe | | | |
|---|---|---|---|---|
| | | **Yes** | **No** | **N/A** |
| 84 | Were any services put in place to mitigate any safety or risk concerns? | | | |
| 85 | Please elaborate on your answer to #84: | | | |
| | | **Yes** | **No** | **N/A** |
| 86 | If remedial or corrective actions were necessary on the part of the placement, was the plan sufficient to address concerns? | | | |
| 87 | If "Yes" to #86, please elaborate on your answer | | | |
| | | **Yes** | **No** | |
| 88 | Based on the information presented throughout the investigation, are there indications that additional action is needed to ensure the safety of children in this placement, i.e., the child(ren) named in the report and any other children in the placement? | | | |

Revised 07-11-2014

# Safety Review Unit
## Maltreatment in Care Review Instrument

| | | |
|---|---|---|
| **89** | If "Yes" to #88, please explain your answer | |

| | | | |
|---|---|---|---|
| **F** | **FINDINGS OF REVIEW OF INVESTIGATION** | | |
| **90** | Were concerns for corrective action by the field identified by the Reviewer? | **Yes** | **No** |
| | | | |
| **91** | If "Yes" to #90, describe areas of concern that were identified for corrective action by the field in the section below. | | |

| |
|---|
| **SAFETY RELATED FINDINGS FROM REVIEW OF INVESTIGATION** |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| | PRACTICE RELATED FINDINGS FROM REVIEW OF INVESTIGATION | |
|---|---|---|
| | | |
| 92 | Date review of investigation was forwarded to SRU Supervisor for approval (mm/dd/yyyy) | |
| 93 | Date received by SRU Supervisor (mm/dd/yyyy) | |
| 94 | Date returned to MIC Reviewer by SRU Supervisor for corrections/more information (if applicable) | |
| 95 | Specify additional information/corrections needed by MIC Reviewer: | |
| 96 | Date 2nd submission received by SRU Supervisor (if applicable) | |

Revised 07-11-2014

# Safety Review Unit
# Maltreatment in Care Review Instrument

| G | | Action Taken by Safety Review Unit (To be completed by the Safety Review Unit Supervisor) | | |
|---|---|---|---|---|
| i | Date MIC Review approved by SRU Supervisor | | | |
| | | **Yes** | **No** | **N/A** |
| ii | If a concern was identified, was it forwarded to the county/region for corrective action? | | | |
| iii | If "Yes", date referred for corrective action (mm/dd/yyyy): | | | |
| iv | Corrective Action Heat Ticket (Tracking) Number (if applicable) | | | |
| v | Who was the matter referred to for corrective action? (RD/designee name, Region) | **Regional Director/Designee:** | | |
| | | **Region:** | | |

Revised 07-11-2014

**Ex. 20**



| MWAH-01 - CQI | | | | | | | | | | | | | |
| Region | | | | | | | | | | | | | |
| MW - I SOUTH | | | | | | | | | | | | | |

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Continuous Quality Improvement**
**Corrective Actions**
**Open Report For SRU**
**as of 06/16/2016**

Date: 06/16/2016
Time: 6:00:55 am
Page: Page 1 of 4
Run Date: 06/16/2016
Run Time: 6:00:55 am

| Audit Region County | Call Type | Priority Description | Received Date | Date Assign | Assignee | Call Id | Call Status | Due Date Safety Issue | Due Date Practice Issue | Acknowledged Date | Resolved Date | Days Overdue Safety Issue | Days Overdue Practice Issue | Priorty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MONROE | SAFETY REVIEW UNIT | Safety Issues (5 days) | 2016-06-14 | 2016-06-14 | ▓▓▓▓ | ▓▓▓▓ | Open | 06/19/2016 | | | | -3 | 0 | 1 |



**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Continuous Quality Improvement**
**Corrective Actions**
**Open  Report For SRU**
**as of 06/16/2016**

MWAH-01 - CQI

Region
MW - I SOUTH

| | | | | |
|---|---|---|---|---|
| Date: | 06/16/2016 |
| Time: | 6:00:55 am |
| Page: | Page 2 of 4 |
| Run Date: | 06/16/2016 |
| Run Time: | 6:00:55 am |

| Audit Region County | Call Type | Priority Description | Received Date | Date Assign | Assignee | Call Id | Call Status | Due Date Safety Issue | Due Date Practice Issue | Acknowledged Date | Resolved Date | Days Overdue Safety Issue | Days Overdue Practice Issue | Priorty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WASHINGTON | SAFETY REVIEW UNIT | Safety Issues (5 days) | 2016-06-14 | 2016-06-14 |  | | Open | 06/19/2016 | | 2016-06-14 | 2016-06-14 | -3 | 0 | 1 |



**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Continuous Quality Improvement**
**Corrective Actions**
**Open Report For SRU**
**as of 06/16/2016**

MWAH-01 - CQI

Region
MW - II WEST

Date: 06/16/2016
Time: 6:00:55 am
Page: Page 3 of 4
Run Date: 06/16/2016
Run Time: 6:00:55 am

| Audit Region County | Call Type | Priority Description | Received Date | Date Assign | Assignee | Call Id | Call Status | Due Date Safety Issue | Due Date Practice Issue | Acknowledged Date | Resolved Date | Days Overdue Safety Issue | Days Overdue Practice Issue | Priorty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JACKSON | SAFETY REVIEW UNIT | Safety Issues (5 days) | 2016-05-11 | 2016-05-11 | ▆▆▆ | ▆▆▆ | Open | 05/16/2016 | | 2016-05-12 | 2016-06-14 | 31 | 0 | 1 |



**MWAH-01 - CQI**

**Region**

MW - VII
EAST

**Mississippi Department of Human Services**
**Division of Family and Children's Services**
**Continuous Quality Improvement**
**Corrective Actions**
**Open  Report For SRU**
as of 06/16/2016

Date:    06/16/2016
Time:    6:00:55 am
Page:   Page 4 of 4
Run Date:   06/16/2016
Run Time:   6:00:55 am

| Audit Region County | Call Type | Priority Description | Received Date | Date Assign | Assignee | Call Id | Call Status | Due Date Safety Issue | Due Date Practice Issue | Acknowledged Date | Resolved Date | Days Overdue Safety Issue | Days Overdue Practice Issue | Priorty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

# Ex. 21A

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Grace M. Lopes |
| **Sent:** | Monday, June 13, 2016 1:15 PM |
| **To:** | 'Cindy Greer' |
| **Cc:** | Mark Jordan; Mia Caras |
| **Subject:** | RE: Clarification of Data Request -- Second Stipulated Remedial Order |

Cindy:

I would like to clarify the data request I just made to add "placement type" as a field instead of "placement."   We already receive the placement name as a field in 1271 (i.e., resource name) – just not the placement type, (e.g., relative foster home, group home, etc.).  Thus, I've revised my e-mail request for additional data fields as follows:

As I noted in my previous e-mail, my office is working on the maltreatment review and validation project required by the stipulated second remedial order.  Please advise whether it would be possible to obtain a custom report that adds the following fields to report no.1271 for all maltreatment in care reports received between January 1, 2015 through December 31, 2015:

- Placement type at time of alleged maltreatment
- Allegation(s)
- Finding for each allegation (substantiated/unsubstantiated)

If a custom report can be run, please advise how quickly my office can obtain the report.  Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

## Grace M. Lopes

**From:**       Grace M. Lopes
**Sent:**       Monday, June 13, 2016 1:08 PM
**To:**         'Cindy Greer'
**Cc:**         Mark Jordan; Mia Caras
**Subject:**    Data Request -- Second Stipulated Remedial Order

Cindy:

We are working on the maltreatment review and validation project required by the stipulated second remedial order.  Would it be possible to obtain a custom report that adds the following fields to report no.1271 for all maltreatment reports received January 1, 2015 through December 31, 2015:

- Placement at time of alleged maltreatment
- Allegation(s)
- Finding for each allegation (substantiated/unsubstantiated)

If a custom report can be run, please advise how quickly my office can obtain the report.  Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 21B**

## Protocol for Accurately Identifying and Producing  Maltreatment

## Investigative Reports to the Court Monitor

<u>Requirement</u>

The Modified Settlement Agreement requires that by the end of the Period Three Implementation Plan, DFCS will provide to the Court Monitor copies of all maltreatment investigations (a) involving a resource home or (b) involving an agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS.  MSA II(B)(1)(e)(4)&(5).  The July 18, 2013 Period Four Implementation Plan requires that Defendants provide Plaintiffs and the Monitor with a protocol for accurately identifying and producing to the Monitor all investigative reports that are required under MSA II(B)(1)(e)(4)&(5).  In accordance with the July 18, 2013 order, Defendants' protocol follows.

<u>Protocol</u>

I.      Who is responsible?

The DFCS Senior Attorney[1] is responsible for this requirement.

II.     How will the requirement be fulfilled?

*a.  How will the relevant investigations be identified?*

i.      MWZ1271D

The monthly report identified as MWZ1271D lists all investigations involving custody children that were open during the last calendar month.[2] (For example, the report produced in February shows all such investigations that were open at some point between January 1 and January 31.) The report also indicates whether each investigation has been completed or remains open.

Each month, when MWZ1271D is published to the P: drive, DFCS staff in the Special Projects and Initiatives Unit ("Special Projects Unit") identifies each

---

[1] The DFCS Senior Attorney is supervised by the DFCS Deputy Administrator, and supervises DFCS Staff Attorney(s), who will assist in carrying out this protocol.

[2] The purpose of MWZ1271D is to show timeliness of investigations for custody children. The BCS version of this report will, as stated, identify all investigations involving custody children that were open during the relevant timeframe. The BCS report is currently in the design/testing phase. The current MIS version of this report excludes a small population of investigations that will appear on the BCS version: investigations involving custody children where "resource report" is not checked at intake (for example, if the alleged maltreatment occurred during a trial home visit or at school). The cross-checking process described later in this protocol will identify such investigations that do not appear on the current MIS version but will appear on the BCS version. (Those investigations would be categorized as type "2" under the schema discussed *infra*.)  We will exclusively utilize the BCS version for this protocol once it is finalized and in production.

investigation on the report that was completed during the prior month. All such investigations are printed from the MACWIS case record and scanned. They are saved by the first (or only) victim's name and the intake ID number. Each investigation is read to determine whether it fits into the criteria of the relevant MSA sections. For example, an investigation appearing on the report could fall into one of three categories:

1.  An investigation listing a custody child as a victim AND involving a resource home, agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS.

2.  An investigation listing a custody child as a victim but NOT involving a resource home, agency group home, emergency shelter, private child placing agency resource home, or other facility licensed by DFCS. This could occur if the custody child was abused during a trial home visit or at school, for example.

3.  An investigation listing a NON-custody child as a victim. (Such an investigation should not appear on MWZ1271D, but could appear as a result of an incorrect assessment of a child's custody status at intake. We would expect this to happen rarely, if at all.)

Investigations categorized as type "1" must be produced to the Monitor per the MSA. The MSA does not require that investigations categorized as type "2" be provided to the Monitor; however, on July 10, 2013, she requested that such investigations also be provided to her. Beginning in July, 2013, type "2" investigations will also be provided to the Monitor, separately from the type "1" investigations. Type "3" investigations, in which the victims are not *Olivia Y.* class members, will not be provided to the Monitor.

ii.    Additional Assurance

MWZ1271D is  subject to the validation process developed pursuant to the June 24, 2013 court order.  In addition, MCI (Centralized Intake) has its own Quality Assurance Department, which conducts a detailed assessment of a sample of intakes on a regular basis to ensure that calls were coded correctly (for example, was "resource report" checked if the allegations involved a child in custody and a resource home?).  Mistakes at intake (which could impact the accuracy of reports) are corrected by MIS, and the MCI workers are counseled and trained on areas needing improvement.

Specifically, the Special Projects Unit verifies the identification of the relevant investigations each month as follows:

1. When MCI takes a report involving a custody child (an automatic Level 3 ANE), an e-mail is sent to the appropriate Regional Director for him or her to assign the investigation to a worker. (The Regional Director also automatically receives a tickler in MACWIS.) A Staff Attorney in the office of the Senior Attorney is copied on all such e-mails from MCI.

2. The Staff Attorney logs all such intakes onto a spreadsheet and notates on the spreadsheet when each investigation is completed (determined by monitoring and reviewing the individual case record in MACWIS).

3. When the monthly MWZ1271D report is made available, the Staff Attorney cross-checks the spreadsheet and the report to confirm that the report accurately lists the investigations (type "1" and "2") completed in the prior month. If inaccuracies are identified, the Special Projects Unit reports these issues to the appropriate DFCS, MIS and MCI manager(s)who shall be responsible to make the necessary corrections to the implicated records. The Special Projects Unit will maintain a tracking spreadsheet to confirm that such corrections are made and will follow up with the appropriate managers if such corrections are not made in a timely manner.

4. In addition to the steps set forth above, following issuance of the SQL version of MWBRD06, the Staff Attorney will compare the Type 1 monthly data in MWBRD06 with the relevant monthly data in MWZ1271D to determine whether there are any discrepancies between the reports insofar as the data related to the investigations listed in each report. In the event discrepancies are identified, the Staff Attorney will reconcile the discrepancies by reviewing the applicable MACWIS case record and by other methods as appropriate. Additionally, if inaccuracies in the reports are identified, the Special Projects Unit staff will follow up with the appropriate DFCS, MIS and MCI managers and track corrective action to ensure the implicated records are corrected.

5. The steps listed in point 4, above, will be undertaken for at least an initial three-month period. If the comparison between MWBRD06 and MWZ1271D does not identify discrepant information for three consecutive months, either during the initial three-month period or any three-month period thereafter, the Special Projects Unit shall no longer be obligated to compare the reports.

   b.  *How will the relevant investigations be provided to the Monitor?*

Within seven business days of MWZ1271D being published to the P: drive each month, DFCS will e-mail to the Monitor the following:

1. A copy of MWZ1271D.

2. Copies of each investigation categorized as type "1" per the foregoing schema, saved by child (victim) name. (If such an investigation is identified through the Staff Attorney's cross-checking process but does not appear on MWZ1271D, the investigation will be provided and this will be noted.)

3. A list of any investigations on MWZ1271D categorized as type "2" or "3," and a description of the reasoning for that categorization.[3]

---

[3] As stated, per the Monitor's request, any type "2" investigations (identified through MWZ1271D and/or the monthly cross-checking process) will also be provided to the Monitor. They will be provided separately from the production of the MSA-required type "1" investigations that this protocol is intended to address. (Any such investigation will be provided on the same day that the monthly batch of type "1" investigations are sent to the Monitor.)

**Ex. 22**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Mark Jordan |
| **Sent:** | Thursday, July 14, 2016 4:49 PM |
| **To:** | krachal@bakerdonelson.com |
| **Cc:** | Janet Maher; Grace M. Lopes; Mia Caras |
| **Subject:** | Request for 13 Investigative Reports |

Kenya:

We have continued to analyze the data you transmitted on July 7, 2016.  During our review we discovered that investigative reports associated with 13 MIC investigations, all with intakes during 2015 and which have approved findings, have not been transmitted to our office. The table below this e-mail details the 13 investigations, including the reported dates of the intakes and the intake IDs.

You may recall that the data contained in the July 7, 2016 report you transmitted was a customized version of report 1271.  We noted that six of the MIC investigative reports that we did not receive did not appear on the *monthly versions* of report 1271 that our offices receives.  Those six reports are identified in the table below.  Among the seven remaining investigations, which *do* appear on the monthly version of report 1271, none have a "findings approved date" recorded in the monthly version of the report, indicating that the investigation remains open; however, in the custom report transmitted on July 7, 2016, all seven of these investigations have an associated findings approved date.

We would appreciate it if you would please transmit to us the investigative reports associated with the 13 MIC investigations listed in the table below.  If for any of the MIC investigations listed in the table the associated investigative report was appropriately not transmitted to our office (*e.g.,* if the investigation involved only children who were not in custody), we would appreciate it if you would identify the reason why investigation was appropriately not transmitted.

If you should have any questions about this information request, please feel free to contact me.

Many thanks.

Mark

Mark Jordan
202.232.8311 (office)
202.232.2052 (fax)

| Date of Intake | Intake ID | Did Intake Appear on Monthly 1271 Report? | If Intake Appears on Monthly 1271 Report, Is There a Findings Approved Date Recorded on the Monthly 1271 Report? |
|---|---|---|---|
| 1/12/2015 | 6904645 | Yes | No |
| 2/9/2015 | 6947778 | Yes | No |
| 3/10/2015 | 6989187 | No | |
| 5/1/2015 | 7072317 | Yes | No |
| 5/4/2015 | 7075006 | No | |
| 6/1/2015 | 7117299 | Yes | No |
| 8/20/2015 | 7228112 | No | |
| 10/7/2015 | 7302746 | Yes | No |

1

| 10/8/2015 | 7303459 | No | |
| 10/12/2015 | 7307640 | Yes | No |
| 10/17/2015 | 7316372 | No | |
| 11/19/2015 | 7362013 | Yes | No |
| 12/2/2015 | 7374860 | No | |

**Ex. 23**

**Grace M. Lopes**

**From:** Mark Jordan
**Sent:** Friday, July 22, 2016 2:36 PM
**To:** krachal@bakerdonelson.com
**Cc:** Janet Maher <jmaher@sparb.org>; Grace M. Lopes <gmlopes@oymonitor.org>; Mia Caras <mcaras@sparb.org>
**Subject:** RE: Request for 13 Investigative Reports

Kenya:

Since last Thursday and based on additional analyses we have performed and conversations with DCPS staff, we have identified questions regarding six additional investigations that were initiated during 2015. The six investigations listed below were included in the dataset that you transmitted on July 7, 2015. All appear to be closed investigations; however, our office has not received MIC investigative reports associated with these six investigations. Furthermore, as explained below, we were not able to determine based on our review of monthly 1271 reports when each of these investigations were closed with approved findings.

We would appreciate it if you would add these six investigations to the list I transmitted to you in my July 14, 2016 e-mail, which you will find below this e-mail.

If you should have any questions about this request, please do not hesitate to contact me.

Many thanks.

Mark

| region | county | intake_id | intake_date |
|---|---|---|---|
| III-S | Hinds | 7159315 | 6/30/2015 |

- We did not receive this MIC investigative report. The investigation appears on the September and October 2015 monthly 1271 reports with no findings approved date, but did not appear on any other reports monthly reports.

| region | county | intake_id | intake_date |
|---|---|---|---|
| VII-E | George | 7266065 | 9/14/2015 |

- We did not receive this MIC investigative report and it did not appear on any monthly 1271 Reports.

| region | county | intake_id | intake_date |
|---|---|---|---|
| VII-E | George | 7341970 | 11/5/2015 |

- We did not receive this MIC investigative report and it did not appear on any monthly 1271 Reports.

| region | county | intake_id | intake_date |
|---|---|---|---|
| VII-W | Harrison | 7365594 | 11/24/2015 |

- We did not receive this MIC investigative report and it did not appear on any monthly 1271 Reports.

1

| region | county | intake_id | intake_date |
|--------|--------|-----------|-------------|
| III-S | Hinds | 7376472 | 12/3/2015 |

- We did not receive this MIC investigative report. The investigation appears on the December 2015 monthly 1271 Report. We did not receive a monthly1271 Report for January 2016, so we do not know if the investigation was closed during that month.

| region | county | intake_id | intake_date |
|--------|--------|-----------|-------------|
| IV-S | Lauderdale | 7399324 | 12/21/2015 |

- We did not receive this MIC investigative report. The investigation appears on the December 2015 monthly 1271 Report. We have not received the January 1271 Report, so we do not know if the investigation was closed during that month.

---

**From:** Mark Jordan
**Sent:** Thursday, July 14, 2016 4:49 PM
**To:** krachal@bakerdonelson.com
**Cc:** Janet Maher <jmaher@sparb.org>; Grace M. Lopes <gmlopes@oymonitor.org>; Mia Caras <mcaras@sparb.org>
**Subject:** Request for 13 Investigative Reports

Kenya:

We have continued to analyze the data you transmitted on July 7, 2016. During our review we discovered that investigative reports associated with 13 MIC investigations, all with intakes during 2015 and which have approved findings, have not been transmitted to our office. The table below this e-mail details the 13 investigations, including the reported dates of the intakes and the intake IDs.

You may recall that the data contained in the July 7, 2016 report you transmitted was a customized version of report 1271. We noted that six of the MIC investigative reports that we did not receive did not appear on the *monthly versions* of report 1271 that our offices receives. Those six reports are identified in the table below. Among the seven remaining investigations, which *do* appear on the monthly version of report 1271, none have a "findings approved date" recorded in the monthly version of the report, indicating that the investigation remains open; however, in the custom report transmitted on July 7, 2016, all seven of these investigations have an associated findings approved date.

We would appreciate it if you would please transmit to us the investigative reports associated with the 13 MIC investigations listed in the table below. If for any of the MIC investigations listed in the table the associated investigative report was appropriately not transmitted to our office (*e.g.,* if the investigation involved only children who were not in custody), we would appreciate it if you would identify the reason why investigation was appropriately not transmitted.

If you should have any questions about this information request, please feel free to contact me.

Many thanks.

Mark

Mark Jordan
202.232.8311 (office)
202.232.2052 (fax)

| Date of Intake | Intake ID | Did Intake Appear on Monthly 1271 Report? | If Intake Appears on Monthly 1271 Report, Is There a Findings Approved Date Recorded on the Monthly 1271 Report? |
|---|---|---|---|
| 1/12/2015 | 6904645 | Yes | No |
| 2/9/2015 | 6947778 | Yes | No |
| 3/10/2015 | 6989187 | No | |
| 5/1/2015 | 7072317 | Yes | No |
| 5/4/2015 | 7075006 | No | |
| 6/1/2015 | 7117299 | Yes | No |
| 8/20/2015 | 7228112 | No | |
| 10/7/2015 | 7302746 | Yes | No |
| 10/8/2015 | 7303459 | No | |
| 10/12/2015 | 7307640 | Yes | No |
| 10/17/2015 | 7316372 | No | |
| 11/19/2015 | 7362013 | Yes | No |
| 12/2/2015 | 7374860 | No | |

**Ex. 24**

**Grace M. Lopes**

**Attachments:**                                Response to 1271 questions from CM (08.16.2016).xlsx


**From:** Rachal, Kenya [mailto:krachal@bakerdonelson.com]
**Sent:** Tuesday, August 16, 2016 7:51 AM
**To:** Mia Caras <mcaras@sparb.org>
**Cc:** Grace M. Lopes <gmlopes@oymonitor.org>; Mark Jordan <mjordan@sparb.org>; Tracy Aynes
<Tracy.Aynes@mdhs.ms.gov>; Cindy Greer <cindy.greer@mdcps.ms.gov>
**Subject:** Response to Questions re: 1271 investigation

Mia, thanks for your assistance last week.  In follow up to our conversation and in response to Grace and Mark's e-mails
of last month about specific investigations related to your review of 1271, please see the attached response.

Later this morning I will forward you the investigations that concerned children in custody at the time of the intake.  The
children who were not in custody at the time of the intake are noted in the attachment.

Thanks,
Kenya

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication
(including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the
sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal
Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any
unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by
reply e-mail, so that our address record can be corrected.

Response to 1271 questions from CM (08.16.2016)

| Date of Intake | Intake ID | Did Intake Appear on Monthly 1271 Report? | If Intake Appears on Monthly 1271 Report, Is There a Findings Approved Date Recorded on the Monthly 1271 Report? | MDCPS response |
|---|---|---|---|---|
| 1/12/2015 | 6904645 | Yes | No | The investigation was completed on 2/6/15, so findings would be blank on the regular monthly run of 1271 for January 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following month. |
| 2/9/2015 | 6947778 | Yes | No | The investigation was completed on 6/4/15, so findings would be blank on the regular monthly run of 1271 for Feb 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following months. |
| 3/10/2015 | 6989187 | No | | **Child not in custody at the time of the intake.** Child left custody 2/27/15, prior to intake date. The Intake shouldn't be on the custom report (or the regular monthly). the modified report code was looking for any child with an active custody status between 1/1/15-12/31/15 who was listed as a victim in an intake. Code is being added to restrict to only those intake or incident dates greater than the custody start date, but less than the custody end (for closed custody) or PUR end date (for open custody) |
| 5/1/2015 | 7072317 | Yes | No | The investigation was completed on 6/1/15, so findings would be blank on the regular monthly run of 1271 for May 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following month. |
| 5/4/2015 | 7075006 | No | | **Child not in custody at the time of intake.** Child left custody 3/17/15, child disclosed two months after leaving custody abuse that occurred while the child was in custody in 2014. Code will be added (and the regular monthly report will also be updated) to capture intakes where the intake or incident dates greater than the custody start date, but less than the custody end (for closed custody) or PUR end date (for open custody) |
| 6/1/2015 | 7117299 | Yes | No | The investigation was completed 7/1/15, so findings would be blank on the regular monthly run for June 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following month. |
| 8/20/2015 | 7228112 | No | | The investigation was approved 09/14/2015, this investigation should have shown up for reporting periods 08/01/2015-08/31/2015 and 09/01/2015-09/30/2015. There is a narrative in this investigation that the victim was not confirmed at intake, which caused the investigation to be sent to the county, and wasn't assigned to SIU until 08/31/2015, after the child had left custody. The validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271 and if the unique circumstances of the intake contributed to the invesitagtion not being pulled for the report.. |
| 10/7/2015 | 7302746 | Yes | No | The investigation was completed 12/14/15, so findings would be blank on the regular monthly run of 1271 for October 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following month. |

Response to 1271 questions from CM (08.16.2016)

| Date of Intake | Intake ID | Did Intake Appear on Monthly 1271 Report? | If Intake Appears on Monthly 1271 Report, Is There a Findings Approved Date Recorded on the Monthly 1271 Report? | MDCPS response |
|---|---|---|---|---|
| 10/8/2015 | 7303459 | No | | **This child was not in custody at the time of the intake.** He came into custody due to Mom no longer waning to take of him because she felt she could not longer handle him. The child was in custody for two days 10/6/15-10/8/15, it appears that custody information was not entered into the system until November 2015, this would cause the intake to not be included in the regular monthly run of 1271, but show on the report with a report period of 12 months. It is also noted that this 10/8 report is a duplicate of the 10/6 report. |
| 10/12/2015 | 7307640 | Yes | No | Investigation was completed 11/10/15, so findings would be blank on the regular monthly run of 1271 for October 2015. The validation unit and programmers are working to identify what caused the investigation to drop off the report the following month. |
| 10/17/2015 | 7316372 | No | | The validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271. |
| 11/19/2015 | 7362013 | Yes | No | Investigation was completed 12/15/15, so findings would be blank on the regular monthly run of 1271 for November 2015. The validation unit and programmers are working to identify what caused  the investigation to drop off the report the following month. |
| 12/2/2015 | 7374860 | No | | **None of the victims in this intake were in custody (left custody July 2015) at the time of the intake.** Changing the report date parameters from a one month period to 12 months caused this intake to appear on the modified report as the code was looking for any child with an active custody status between 1/1/15-12/31/15 who was listed as a victim in an intake. Additional coding is being added to restrict to only those intake or incident dates greater than the custody start date, but less than the custody end date (for closed custody) or PUR end date (for open custody) |

Response to 1271 questions from CM (08.16.2016)

| Date of Intake | Intake ID | Did Intake Appear on Monthly 1271 Report? | If Intake Appears on Monthly 1271 Report, Is There a Findings Approved Date Recorded on the Monthly 1271 Report? | MDCPS response |
|---|---|---|---|---|
| **from second list sent 7/22/16** | | | | |
| 6/30/2015 | 7159315 | | | Comment from CM: investigation appears on the September and October 2015 monthly 1271 reports with no findings approved date, but did not appear on any other reports monthly reports.<br><br>MDCPS RESPONSE: The validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271. Note: the findings are blank in the modified version because findings weren't approved until march 2016, which is outside of the PUR (1/1/15-12/31/15) |
| 9/14/2015 | 7266065 | | | From CM: did not appear on any monthly 1271 Reports<br>MDCPS RESPONSE: The validation unit and programmers are working to identify what caused  the investigation not to appear on the regular monthly 1271. |
| 11/5/2015 | 7341970 | | | MDCPS RESPONSE: The validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271. We have noted that this child has a custody end date of 11/6/15 (intake date 11/5/15), based on information on the general tab of the intake, there was not enough information to confirm the victim at intake. If the child wasn't confirmed until after Custody End was entered the Custody Child Victim indicator would remain NA, also, the investigation findings are blank as the investigation was not approved until 4/5/16 (outside of the PUR of 1/1/15-12/31/15) |
| 11/24/2015 | 7365594 | | | MDCPS RESPONSE: **Child at issue (10560209) was not in custody at the time of the intake** (Note: The other kids in the home did not come into custody until Feb. *2016* ).  With re: to child at issue, previous custody episode ended 9/30/15, current custody started 1/4/16.  The modified special run of SZ1271 created on 7/5/16  was looking for any investigations on any child who was in custody at any point during the PUR. Additional coding is being added to restrict to only those intake or incident dates greater than the custody start date, but less than the custody end (for closed custody) or PUR end date (for open custody) |
| 12/3/2015 | 7376472 | | | From CM: The investigation appears on the December 2015 monthly 1271 Report.  We did not receive a monthly1271 Report for January 2016, so we do not know if the investigation was closed during that month.<br><br>MDCPS RESPONSE: Findings were approved 1/11/16, the validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271. |
| 12/21/2015 | 7399324 | | | From CM: The investigation appears on the December 2015 monthly1271 Report.  We did not receive a monthly1271 Report for January 2016, so we do not know if the investigation was closed during that month.<br><br>MDCPS RESPONSE:  Findings were approved 1/20/16, the validation unit and programmers are working to identify what caused the investigation not to appear on the regular monthly 1271. |

**Ex. 25**

**Grace M. Lopes**

---

**Importance:**                    High


From: Alexis Holly [mailto:Alexis.Holly@mdhs.ms.gov]
Sent: Monday, April 4, 2016 4:48 PM
To: Mia Caras <mcaras@sparb.org>
Cc: Robert.Hamrick@mdhs.ms.gov; Cindy.Greer@mdhs.ms.gov
Subject: Marion County Cases
Importance: High

Mia,

I have attached Intake #7257341 below. Intake #7248423 was unable to be located. I have reviewed the 1271 weekly report from that time period and the following intake number is not listed on the report. We were experiencing issues with the 1271 weekly reports for several weeks during the time the intake number should have appeared on the report. I'm aware that Intake #7248423 was not reviewed by MIC. I will have one of the MIC reviewers conduct a review. I have attached the 1271 weekly report in which Intake #7248423 would have appeared on below. I have also attached the emails in which I notified them of the problem with the 1271 weekly reports.


Thanks,

Alexis Holly-
Projects Officer IV, Special
Office of Continuous Quality Improvement MDHS State Office
Office: 601-359-4622
Email: alexis.holly@mdhs.ms.gov

Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.

**Ex. 26**

## Grace M. Lopes

**From:** Grace M. Lopes
**Sent:** Wednesday, May 4, 2016 6:52 PM
**To:** 'Cindy Greer' <Cindy.Greer@mdhs.ms.gov>
**Cc:** 'Rachal, Kenya' <krachal@bakerdonelson.com>; Mia Caras <mcaras@sparb.org>
**Subject:** Investigations that were Closed During 2015 But Do Not Appear to Have Received a MIC Review

Cindy:

Please see the e-mail pasted below, which includes a list of maltreatment in care investigations that were closed during 2015 according to MACWIS Report No. 1271, but for which a MIC review is not documented on MRIP4MMR.  Please let me know who I should contact at DFCS to determine whether each of the listed investigations was reviewed, and if so, to obtain a copy of the related documentation.  If you have any questions, please let me know.  Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**From:** Mia Caras
**Sent:** Wednesday, May 4, 2016 5:22 PM
**To:** Grace M. Lopes <gmlopes@oymonitor.org>
**Cc:** Mark Jordan <mjordan@sparb.org>
**Subject:** Investigations that were Closed During 2015 But Do Not Appear to Have Received a MIC Review

Below please find a list of 79 investigations that were closed during 2015, according to MACWIS report 1271, for which there was no record of a MIC review having been conducted, according to manual report MRIP4MRR.  There is one additional investigation (Intake ID 7248423) that we are aware of that was completed in 2015 and does not appear on report MRIP4MRR; however, I did not include that report on the list below because we previously inquired about the status of the MIC review of the investigation and received an update on the status of the MIC review associated with the investigation.*

| Intake ID | Child/Children Name(s) | Intake Date | Findings Approved Date | Region | County | Notes |
|-----------|------------------------|-------------|------------------------|--------|--------|-------|
| 6868193 | ██████████ | 12-11-2014 | 1/7/2015 | V-E | Simpson | |
| 6885349 | ██████████ | 12/23/2014 | 1/18/2015 | VII-W | Hancock | |

| 6888631 | | 12/29/2014 | 1/18/2015 | VII-E | Jackson | |
| 6893937 | | 1/5/2015 | 2/4/2015 | IV-S | Newton | |
| 6911420 | | 1/15/2015 | 2/5/2015 | III-S | Hinds | |
| 6918786 | | 1/22/2015 | 2/3/2015 | I-N | Tishomingo | |
| 6936857 | | 2/2/2015 | 3/2/2015 | VI | Forrest | |
| 6944493 | | 2/6/2015 | 3/4/2015 | V-W | Wilkinson | |
| 6948723 | | 2/10/2015 | 3/9/2015 | I-S | Monroeo | |
| 6952046 | | 2/12/2015 | 3/5/2015 | V-W | Pike | |
| 6957412 | | 2/17/2015 | 3/18/2015 | III-S | Hinds | |
| 6964214 | | 2/20/2015 | 3/22/2015 | VII-E | Jackson | |
| 6964605 | | 2/20/2015 | 3/18/2015 | II-E | Carroll | |
| 6970133 | | 2/26/2015 | 3/26/2015 | V-W | Adams | |
| 6973744 | | 2/27/2015 | 3/30/2015 | IV-S | Lauderdale | |
| 6977278 | | 3/3/2015 | 3/31/2015 | VI | Forrest | |
| 6986110 | | 3/10/2015 | 3/31/2015 | III-N | Yazoo | |
| 6992684 | | 2/13/2015 | 3/19/2015 | VII-W | Hancock | |
| 6993419 | | 3/13/2015 | 4/12/2015 | II-E | Granada | |
| 7024320 | | 4/3/2015 | 5/2/2015 | IV-S | Lauderdale | |
| 7036418 | | 4/10/2015 | 5/9/2015 | III-S | Hinds | |
| 7064608 | | 4/27/2015 | 5/29/2015 | III-S | Hinds | |
| 7072422 | | 5/1/2015 | 5/29/2015 | III-S | Hinds | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7084463 | | 5/11/2015 | 5/28/2015 | V-E | Copiah | |
| 7093128 | | 5/15/2015 | 5/15/2015 | II-W | Coahoma | |
| 7122063 | | 8/6/2015 | 9/1/2015 | III-S | Hinds | |
| 7139381 | | 6/30/2015 | 9/25/2015 | VI | Marion | |
| 7149689 | | 6/23/2015 | 8/9/2015 | I-N | Tishomingo | |
| 7154380 | | 6/26/2015 | 7/26/2015 | VII-E | Jackson | |
| 7170408 | | 7/10/2015 | 8/7/2015 | III-S | Hinds | |
| 7172451 | | 7/10/2015 | 8/9/2015 | VII-E | Jackson | |
| 7180381 | | 7/18/2015 | 8/16/2015 | VII-E | Green | |
| 7190212 | | 7/28/2015 | 8/25/2015 | VII-W | Harrison | |
| 7190409 | | 7/28/2015 | 9/30/2015 | III-S | Warren | |
| 7214545 | | 9/16/2015 | 9/23/2015 | III-S | Hinds | |
| 7222556 | | 8/18/2015 | 9/20/2015 | VII-W | Harrison | |
| 7223501 | | 8/19/2015 | 9/14/2015 | II-W | Washington | |
| 7229577 | | 8/20/2015 | 9/25/2015 | III-S | Hinds | |
| 7230400 | | 8/21/2015 | 9/22/2015 | IV-S | Wayne | |
| 7230842 | | 8/22/2015 | 9/24/2015 | VII-W | Harrison | |
| 7231741 | | 8/23/2015 | 9/21/2015 | II-W | Washington | |
| 7233868 | | 8/27/2015 | 9/21/2015 | IV-N | Winston | |

| 7233914 | ▬▬▬ | 8/25/2015 | 9/22/2015 | III-N | Rankin | |
| 7234457 | ▬▬▬ | 8/24/2015 | 9/24/2015 | VII-W | Hancock | |
| 7235178 | ▬▬▬ | 8/26/2015 | 9/24/2015 | VII-W | Harrison | |
| 7236506 | ▬ | 8/26/2015 | 9/24/2015 | I-N | DeSoto | |
| 7237464 | ▬▬▬ | 8/26/2015 | 9/23/2015 | VII-W | Hancock | |
| 7238541 | ▬ | 8/27/2015 | 9/23/2015 | VII-W | Harrison | |
| 7238711 | ▬▬▬ | 8/27/2015 | 9/24/2015 | VI | Stone | |
| 7238770 | ▬ | 8/26/2015 | 9/26/2015 | VII-W | Hancock | |
| 7240619 | ▬ | 10/8/2015 | 11/15/2015 | VI | Forrest | |
| 7241283 | ▬▬▬ | 8/29/2015 | 9/29/2015 | III-N | Rankin | |
| 7242573 | ▬ | 8/29/2015 | 9/28/2015 | III-N | Yazoo | |
| 7243316 | ▬ | 8/31/2015 | 9/29/2015 | II-E | Tate | |
| 7244584 | ▬ | 9/1/2015 | 9/24/2015 | V-E | Simpson | |
| 7244673 | ▬ | 9/1/2015 | 9/23/2015 | V-E | Lincoln | |
| 7245467 | ▬ | 9/1/2015 | 9/29/2015 | III-S | Hinds | |
| 7245696 | ▬▬▬ | 9/2/2015 | 10/1/2015 | VII-W | Harrison | |
| 7247087 | ▬ | 8/31/2015 | 9/24/2015 | V-W | Wilkinson | |
| 7247729 | ▬▬ | 9/2/2015 | 9/30/2015 | I-S | Monroe | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7249527 | ▮▮▮▮ | 9/3/2015 | 9/28/2015 | II-E | Leflore | |
| 7250118 | ▮▮▮▮ | 9/3/2015 | 10/2/2015 | VII-E | Jackson | |
| 7252439 | ▮▮▮▮ | 9/4/2015 | 9/29/2015 | III-N | Rankin | |
| 7254237 | ▮▮▮▮ | 9/29/2015 | 9/30/2015 | I-S | Monroe | |
| 7255071 | ▮▮▮▮ | 9/7/2015 | 10/2/2015 | VI | Perry | |
| 7255942 | ▮▮▮▮ | 9/8/2015 | 9/30/2015 | III-N | Yazoo | |
| 7257643 | ▮▮▮▮ | 9/9/2015 | 9/28/2015 | III-S | Hinds | |
| 7257759 | ▮▮▮▮ | 9/9/2015 | 10/1/2015 | I-S | Pontotoc | |
| 7260636 | ▮▮▮▮ | 9/11/2015 | 10/2/2015 | III-N | Madison | |
| 7260792 | ▮▮▮▮ | 9/11/2015 | 9/30/2015 | VII-W | Hancock | |
| 7261837 | ▮▮▮▮ | 9/18/2015 | 9/23/2015 | III-S | Hinds | |
| 7283334 | ▮▮▮▮ | 9/25/2015 | 10/25/2015 | VII-W | Harrison | |
| 7304439 | ▮▮▮▮ | 10/9/2015 | 11/5/2015 | IV-S | Clarke | |
| 7325193 | ▮▮▮▮ | 11/16/2015 | 11/22/2015 | VII-E | George | |
| 7325843 | ▮▮▮▮ | 10/24/2015 | 11/22/2015 | VII-W | Harrison | |
| 7330812 | ▮▮▮▮ | 10/28/2015 | 11/29/2015 | III-S | Hinds | |
| 7332327 | ▮▮▮▮ | 10/30/2015 | 11/22/2015 | IV-S | Newton | |
| 7341806 | ▮▮▮▮ | 11/5/2015 | 12/6/2016 | VII-E | Jackson | |
| 7369204 | ▮▮▮▮ | 11/28/2015 | 12/27/2015 | VII-E | Jackson | |

* On April 4, 2016 we were told by DFCS staff that the investigation did not receive a MIC review because it did not appear on the weekly 1271 report; DFCS staff reported that there had been problems with the weekly 1271 report during the time that the investigation report was completed.  DFCS subsequently conducted a MIC review related to the investigation and the documentation of the review was provided to the Court Monitor's office on April 5, 2016.

Mia Caras
Special Assistant
Office of the Court Monitor
1220 19th Street, N.W., Suite 500
Washington, D.C.  20036
202.232.8311
202.232.2052 - fax

**Ex. 27**

**Grace M. Lopes**

| | |
|---|---|
| **Attachments:** | Letter for 2015 MIC Reviews (1).docx; MIC Reviews 2015 Spreadsheet (2).docx; Rob%27s Chart.docx |
| **Importance:** | High |

**From:** Alexis Holly [mailto:Alexis.Holly@mdhs.ms.gov]
**Sent:** Thursday, June 2, 2016 5:08 PM
**To:** Grace M. Lopes <gmlopes@oymonitor.org>
**Cc:** Cindy Greer <Cindy.Greer@mdhs.ms.gov>; Robert Hamrick <Robert.Hamrick@mdhs.ms.gov>
**Subject:** Fw: Investigations that were Closed During 2015 But Do Not Appear to Have Received a MIC Review
**Importance:** High

Grace,
Below is the original email sent on May 4 regarding the maltreatment in care report intake ID numbers that could not be accounted for. Attached to this email are the following:

- A copy/paste of the email Eric Burden sent as to what he found when he check the 1271 weekly report;
- A listing of the intake IDs in question and what was found when I reviewed it;

- A memo stating what was done when reviewing this and what plans were put in place to get all of the overdue MIC reviews caught up.

Mia Caras sent a request to me on May 19, 2016 asking for copies of all reviews that were done from January 1, 2015 to December 31, 2015. Those have been put in two "zip" files that will have to be sent separately from this email due to their size. Or, as you mentioned when we spoke, we can add them to the Court Monitor's P drive folder for her to access.
Thanks,
**Alexis Holly** ⅄
**Projects Officer IV, Special**
**Office of Continuous Quality Improvement**
**Mississippi Department of Child Protection Services**
**Office: 601-359-4622**
**Email:** alexis.holly@mdhs.ms.gov

**Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.**

**From:** Grace M. Lopes <gmlopes@oymonitor.org>
**Sent:** Wednesday, May 4, 2016 5:51 PM
**To:** Cindy Greer
**Cc:** Rachal, Kenya; Mia Caras
**Subject:** Investigations that were Closed During 2015 But Do Not Appear to Have Received a MIC Review

Cindy:

Please see the e-mail pasted below, which includes a list of maltreatment in care investigations that were closed during 2015 according to MACWIS Report No. 1271, but for which a MIC review is not documented on MRIP4MMR. Please let me know who I should contact at DFCS to determine whether each of the listed investigations was reviewed, and if so, to obtain a copy of the related documentation. If you have any questions, please let me know. Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C. 20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient may be illegal.*

---

**From:** Mia Caras
**Sent:** Wednesday, May 4, 2016 5:22 PM
**To:** Grace M. Lopes <gmlopes@oymonitor.org>
**Cc:** Mark Jordan <mjordan@sparb.org>
**Subject:** Investigations that were Closed During 2015 But Do Not Appear to Have Received a MIC Review

Below please find a list of 79 investigations that were closed during 2015, according to MACWIS report 1271, for which there was no record of a MIC review having been conducted, according to manual report MRIP4MRR. There is one additional investigation (Intake ID 7248423) that we are aware of that was completed in 2015 and does not appear on report MRIP4MRR; however, I did not include that report on the list below because we previously inquired about the status of the MIC review of the investigation and received an update on the status of the MIC review associated with the investigation.*

| Intake ID | Child/Children Name(s) | Intake Date | Findings Approved Date | Region | County | Notes |
|---|---|---|---|---|---|---|
| 6868193 | | 12-11-2014 | 1/7/2015 | V-E | Simpson | |
| 6885349 | | 12/23/2014 | 1/18/2015 | VII-W | Hancock | |
| 6888631 | | 12/29/2014 | 1/18/2015 | VII-E | Jackson | |
| 6893937 | | 1/5/2015 | 2/4/2015 | IV-S | Newton | |
| 6911420 | | 1/15/2015 | 2/5/2015 | III-S | Hinds | |

2

| 6918786 | ▓▓▓▓▓ | 1/22/2015 | 2/3/2015 | I-N | Tishomingo | |
| 6936857 | ▓▓▓▓▓ | 2/2/2015 | 3/2/2015 | VI | Forrest | |
| 6944493 | ▓▓▓▓▓ | 2/6/2015 | 3/4/2015 | V-W | Wilkinson | |
| 6948723 | ▓▓▓▓▓ | 2/10/2015 | 3/9/2015 | I-S | Monroeo | |
| 6952046 | ▓▓▓▓▓ | 2/12/2015 | 3/5/2015 | V-W | Pike | |
| 6957412 | ▓▓▓▓▓ | 2/17/2015 | 3/18/2015 | III-S | Hinds | |
| 6964214 | ▓▓▓▓▓ | 2/20/2015 | 3/22/2015 | VII-E | Jackson | |
| 6964605 | ▓▓▓▓▓ | 2/20/2015 | 3/18/2015 | II-E | Carroll | |
| 6970133 | ▓▓▓▓▓ | 2/26/2015 | 3/26/2015 | V-W | Adams | |
| 6973744 | ▓▓▓▓▓ | 2/27/2015 | 3/30/2015 | IV-S | Lauderdale | |
| 6977278 | ▓▓▓▓▓ | 3/3/2015 | 3/31/2015 | VI | Forrest | |
| 6986110 | ▓▓▓▓▓ | 3/10/2015 | 3/31/2015 | III-N | Yazoo | |
| 6992684 | ▓▓▓▓▓ | 2/13/2015 | 3/19/2015 | VII-W | Hancock | |
| 6993419 | ▓▓▓▓▓ | 3/13/2015 | 4/12/2015 | II-E | Granada | |
| 7024320 | ▓▓▓▓▓ | 4/3/2015 | 5/2/2015 | IV-S | Lauderdale | |
| 7036418 | ▓▓▓▓▓ | 4/10/2015 | 5/9/2015 | III-S | Hinds | |
| 7064608 | ▓▓▓▓▓ | 4/27/2015 | 5/29/2015 | III-S | Hinds | |
| 7072422 | ▓▓▓▓▓ | 5/1/2015 | 5/29/2015 | III-S | Hinds | |
| 7084463 | ▓▓▓▓▓ | 5/11/2015 | 5/28/2015 | V-E | Copiah | |
| 7093128 | ▓▓▓▓▓ | 5/15/2015 | 5/15/2015 | II-W | Coahoma | |
| 7122063 | ▓▓▓▓▓ | 8/6/2015 | 9/1/2015 | III-S | Hinds | |
| 7139381 | ▓▓▓▓▓ | 6/30/2015 | 9/25/2015 | VI | Marion | |

| 7149689 | | 6/23/2015 | 8/9/2015 | I-N | Tishomingo | |
| 7154380 | | 6/26/2015 | 7/26/2015 | VII-E | Jackson | |
| 7170408 | | 7/10/2015 | 8/7/2015 | III-S | Hinds | |
| 7172451 | | 7/10/2015 | 8/9/2015 | VII-E | Jackson | |
| 7180381 | | 7/18/2015 | 8/16/2015 | VII-E | Green | |
| 7190212 | | 7/28/2015 | 8/25/2015 | VII-W | Harrison | |
| 7190409 | | 7/28/2015 | 9/30/2015 | III-S | Warren | |
| 7214545 | | 9/16/2015 | 9/23/2015 | III-S | Hinds | |
| 7222556 | | 8/18/2015 | 9/20/2015 | VII-W | Harrison | |
| 7223501 | | 8/19/2015 | 9/14/2015 | II-W | Washington | |
| 7229577 | | 8/20/2015 | 9/25/2015 | III-S | Hinds | |
| 7230400 | | 8/21/2015 | 9/22/2015 | IV-S | Wayne | |
| 7230842 | | 8/22/2015 | 9/24/2015 | VII-W | Harrison | |
| 7231741 | | 8/23/2015 | 9/21/2015 | II-W | Washington | |
| 7233868 | | 8/27/2015 | 9/21/2015 | IV-N | Winston | |
| 7233914 | | 8/25/2015 | 9/22/2015 | III-N | Rankin | |
| 7234457 | | 8/24/2015 | 9/24/2015 | VII-W | Hancock | |
| 7235178 | | 8/26/2015 | 9/24/2015 | VII-W | Harrison | |

| | | | | | |
|---|---|---|---|---|---|
| 7236506 | ▰▰▰ | 8/26/2015 | 9/24/2015 | I-N | DeSoto |
| 7237464 | ▰▰▰ | 8/26/2015 | 9/23/2015 | VII-W | Hancock |
| 7238541 | ▰▰ | 8/27/2015 | 9/23/2015 | VII-W | Harrison |
| 7238711 | ▰▰▰ | 8/27/2015 | 9/24/2015 | VI | Stone |
| 7238770 | ▰▰ | 8/26/2015 | 9/26/2015 | VII-W | Hancock |
| 7240619 | ▰▰ | 10/8/2015 | 11/15/2015 | VI | Forrest |
| 7241283 | ▰▰ | 8/29/2015 | 9/29/2015 | III-N | Rankin |
| 7242573 | ▰▰ | 8/29/2015 | 9/28/2015 | III-N | Yazoo |
| 7243316 | ▰▰ | 8/31/2015 | 9/29/2015 | II-E | Tate |
| 7244584 | ▰▰ | 9/1/2015 | 9/24/2015 | V-E | Simpson |
| 7244673 | ▰▰ | 9/1/2015 | 9/23/2015 | V-E | Lincoln |
| 7245467 | ▰▰ | 9/1/2015 | 9/29/2015 | III-S | Hinds |
| 7245696 | ▰▰▰ | 9/2/2015 | 10/1/2015 | VII-W | Harrison |
| 7247087 | ▰▰ | 8/31/2015 | 9/24/2015 | V-W | Wilkinson |
| 7247729 | ▰▰▰ | 9/2/2015 | 9/30/2015 | I-S | Monroe |
| 7249527 | ▰▰▰ | 9/3/2015 | 9/28/2015 | II-E | Leflore |
| 7250118 | ▰▰▰ | 9/3/2015 | 10/2/2015 | VII-E | Jackson |
| 7252439 | ▰▰ | 9/4/2015 | 9/29/2015 | III-N | Rankin |

5

| 7254237 | ▮▮▮▮ | 9/29/2015 | 9/30/2015 | I-S | Monroe | |
| 7255071 | ▮▮▮▮ | 9/7/2015 | 10/2/2015 | VI | Perry | |
| 7255942 | ▮▮▮▮ | 9/8/2015 | 9/30/2015 | III-N | Yazoo | |
| 7257643 | ▮▮▮▮ | 9/9/2015 | 9/28/2015 | III-S | Hinds | |
| 7257759 | ▮▮▮▮ | 9/9/2015 | 10/1/2015 | I-S | Pontotoc | |
| 7260636 | ▮▮▮▮ | 9/11/2015 | 10/2/2015 | III-N | Madison | |
| 7260792 | ▮▮▮▮ | 9/11/2015 | 9/30/2015 | VII-W | Hancock | |
| 7261837 | ▮▮▮▮ | 9/18/2015 | 9/23/2015 | III-S | Hinds | |
| 7283334 | ▮▮▮▮ | 9/25/2015 | 10/25/2015 | VII-W | Harrison | |
| 7304439 | ▮▮▮▮ | 10/9/2015 | 11/5/2015 | IV-S | Clarke | |
| 7325193 | ▮▮▮▮ | 11/16/2015 | 11/22/2015 | VII-E | George | |
| 7325843 | ▮▮▮▮ | 10/24/2015 | 11/22/2015 | VII-W | Harrison | |
| 7330812 | ▮▮▮▮ | 10/28/2015 | 11/29/2015 | III-S | Hinds | |
| 7332327 | ▮▮▮▮ | 10/30/2015 | 11/22/2015 | IV-S | Newton | |
| 7341806 | ▮▮▮▮ | 11/5/2015 | 12/6/2016 | VII-E | Jackson | |
| 7369204 | ▮▮▮▮ | 11/28/2015 | 12/27/2015 | VII-E | Jackson | |

   * On April 4, 2016 we were told by DFCS staff that the investigation did not receive a MIC review because it did not appear on the weekly 1271 report; DFCS staff reported that there had been problems with the weekly 1271 report during the time that the investigation report was completed.  DFCS subsequently conducted a MIC review related to the investigation and the documentation of the review was provided to the Court Monitor's office on April 5, 2016.

Mia Caras
Special Assistant
Office of the Court Monitor
1220 19th Street, N.W., Suite 500
Washington, D.C.  20036

June 02, 2016

Grace,

I have attached a chart which lists the findings and actions taken for the 79 maltreatment in care reviews in question. The vast majority of the intakes in question were found to be during the period in September 2015 when the Safety Review Unit experienced several weeks of technical issues with the 1271 weekly reports. I've also discovered that this issue occurred at other points in the year. The Safety Review Unit is unable to assign MIC Reviews if they don't appear on the 1271 weekly reports.

2 of the reports in question **(Intake ID# 6973744/ Intake ID# 6977278)** were completed timely and were on the correct spreadsheet **(March 2015)** and in the appropriate completed instrument folders **(see attachment)**. Several of the reviews in question were completed timely but inadvertently not listed on the appropriate month's spreadsheet. The corrections to the spreadsheets have been made and the completed reviews have been checked to be sure they are placed in the appropriate completed instrument folders **(see attachment)**. With regard to one of the reviews **(Intake ID# 7001002)**, it was completed timely but there appears to be an error in the Intake ID number. For the remainder of the reviews in question, the investigation did not appear on the 1271 weekly report.

I'm currently working with Eric Burden in the Data Review Unit to help ensure that the 1271 weekly reports are accurate. I developed a strategy to get the aforementioned maltreatment in care reviews caught up and reviewed the procedures I have been using to help ensure that all maltreatment in care reviews are tracked from assignment to completion. The Safety Review Unit has accounted for all of the reviews in question and as of May 19, 2016, have completed any reviews that were previously incomplete. The completed reviews have been saved and logged on the appropriate monthly reporting spreadsheets. I have also attached 2 folders containing all MIC Reviews completed January 1, 2015 to December 31, 2015. The MIC Reviews completed in 2016 are current and no problems have been detected with the 1271 weekly report this year. If you have any additional questions or concerns please feel free to contact me.

**Thanks,**

**Alexis Holly**
**Projects Officer IV, Special**
**Office of Continuous Quality Improvement (Safety Review Unit)**
**Mississippi Department of Child Protection Services**
**Office: 601-359-4622**
**Email: alexis.holly@mdhs.ms.gov**

| Intake ID | Child/Children Name(s) | Intake Date | Findings Approved Date | Region | County | |
|---|---|---|---|---|---|---|
| 6868193 | REDACTED | 12-11-2014 | 1/7/2015 | V-E | Simpson | |
| Notes: | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 6885349 | REDACTED | 12/23/2014 | 1/18/2015 | VII-W | Hancock | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 6888631 | REDACTED | 12/29/2014 | 1/18/2015 | VII-E | Jackson | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings approved date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 6893937 | REDACTED | 1/5/2015 | 2/4/2015 | IV-S | Newton | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 6911420 | REDACTED | 1/15/2015 | 2/5/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 6918786 | REDACTED | 1/22/2015 | 2/3/2015 | I-N | Tishomingo | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 6936857 | REDACTED | 2/2/2015 | 3/2/2015 | VI | Forrest | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the appropriate months spreadsheet and | | | | | |

| | completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
|---|---|---|---|---|---|---|
| 6944493 | REDACTED | 2/6/2015 | 3/4/2015 | V-W | Wilkinson | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 6948723 | REDACTED | 2/10/2015 | 3/9/2015 | I-S | Monroe | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the appropriate months spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
| 6952046 | REDACTED | 2/12/2015 | 3/5/2015 | V-W | Pike | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the | | | | | |

| | appropriate months spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
|---|---|---|---|---|---|---|
| 6957412 | REDACTED | 2/17/2015 | 3/18/2015 | III-S | Hinds | |
| Notes: | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the appropriate months spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
| 6964214 | REDACTED | 2/20/2015 | 3/22/2015 | VII-E | Jackson | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 6964605 | REDACTED | 2/20/2015 | 3/18/2015 | II-E | Carroll | |
| Notes: | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently | | | | | |

| | not listed on the appropriate months spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
|---|---|---|---|---|---|---|
| 6970133 | REDACTED | 2/26/2015 | 3/26/2015 | V-W | Adams | |
| **Notes:** | This MIC Review was assigned to REDACTED. This Intake ID# does not appear in MACWIS. The MIC Review was completed timely and appears to be an error with **Intake ID#7001002**. | | | | | |
| 6973744 | REDACTED | 2/27/2015 | 3/30/2015 | IV-S | Lauderdale | |
| **Notes:** | This MIC Review was completed timely and appeared on the correct March 2015 spreadsheet and completed instrument folder. | | | | | |
| 6977278 | REDACTED | 3/3/2015 | 3/31/2015 | VI | Forrest | |
| **Notes:** | This MIC Review was completed timely and appeared on the correct March 2015 spreadsheet and completed instrument folder. | | | | | |
| 6986110 | REDACTED | 3/10/2015 | 3/31/2015 | III-N | Yazoo | |
| **Notes:** | This MIC Review was completed timely and appears in the | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | appropriate completed instrument folder and was inadvertently not listed on the appropriate month's spreadsheet. This review has been placed on the appropriate spreadsheet. | | | | | |
| 6992684 | REDACTED | 2/13/2015 | 3/19/2015 | VII-W | Hancock | |
| Notes: | This MIC Review was completed timely and appears in the appropriate completed instrument folder and was inadvertently not listed on the appropriate month's spreadsheet. This review has been placed on the appropriate spreadsheet. | | | | | |
| 6993419 | REDACTED | 3/13/2015 | 4/12/2015 | II-E | Granada | |
| Notes: | This MIC Review did not appear on the 1271 weekly report. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7024320 | REDACTED | 4/3/2015 | 5/2/2015 | IV-S | Lauderdale | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |

| 7036418 | REDACTED | 4/10/2015 | 5/9/2015 | III-S | Hinds | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 7064608 | REDACTED | 4/27/2015 | 5/29/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review did not appear on the 1271 weekly report. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7072422 | REDACTED | 5/1/2015 | 5/29/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 7084463 | REDACTED | 5/11/2015 | 5/28/2015 | V-E | Copiah | |
| **Notes:** | This MIC Review did not appear on the 1271 weekly report. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7093128 | REDACTED | 5/15/2015 | 5/15/2015 | II-W | Coahoma | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was assigned to REDACTED. This review was inadvertently not completed by the reviewer and has been reassigned and completed. | | | | | |
| 7122063 | REDACTED | 8/6/2015 | 9/1/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the appropriate month's spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
| 7139381 | REDACTED | 6/30/2015 | 9/25/2015 | VI | Marion | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7149689 | REDACTED | 6/23/2015 | 8/9/2015 | I-N | Tishomingo | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Date.  Therefore it was not assigned for review.  This MIC Review has been assigned and completed. | | | | | |
| 7154380 | REDACTED | 6/26/2015 | 7/26/2015 | VII-E | Jackson | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review.  This MIC Review has been assigned and completed. | | | | | |
| 7170408 | REDACTED | 7/10/2015 | 8/7/2015 | III-S | Hinds | |
| Notes: | This MIC Review was assigned to REDACTED. This MIC Review was completed timely and inadvertently not listed on the appropriate month's spreadsheet and completed instrument folder.  This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
| 7172451 | REDACTED | 7/10/2015 | 8/9/2015 | VII-E | Jackson | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review. | | | | | |

| | This MIC Review has been assigned and completed. | | | | | |
|---|---|---|---|---|---|---|
| 7180381 | REDACTED | 7/18/2015 | 8/16/2015 | VII-E | Green | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7190212 | REDACTED | 7/28/2015 | 8/25/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review did not appear on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7190409 | REDACTED | 7/28/2015 | 9/30/2015 | III-S | Warren | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7214545 | REDACTED | 9/16/2015 | 9/23/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was during the time SRU | | | | | |

| | experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
|---|---|---|---|---|---|---|
| 7222556 | REDACTED | 8/18/2015 | 9/20/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7223501 | REDACTED | 8/19/2015 | 9/14/2015 | II-W | Washington | |
| **Notes:** | This MIC Review was assigned to REDACTED. This review was completed timely and inadvertently not listed on the appropriate month's spreadsheet and completed instrument folder. This review has been placed in the appropriate completed instrument folder and spreadsheet. | | | | | |
| 7229577 | REDACTED | 8/20/2015 | 9/25/2015 | III-S | Hinds | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7230400 | REDACTED | 8/21/2015 | 9/22/2015 | IV-S | Wayne | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7230842 | REDACTED | 8/22/2015 | 9/24/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7231741 | REDACTED | 8/23/2015 | 9/21/2015 | II-W | Washington | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | been assigned and completed. | | | | | |
| 7233868 | REDACTED | 8/27/2015 | 9/21/2015 | IV-N | Winston | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7233914 | REDACTED | 8/25/2015 | 9/22/2015 | III-N | Rankin | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7234457 | REDACTED | 8/24/2015 | 9/24/2015 | VII-W | Hancock | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7235178 | REDACTED | 8/26/2015 | 9/24/2015 | VII-W | Harrison | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7236506 | REDACTED | 8/26/2015 | 9/24/2015 | I-N | DeSoto | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7237464 | REDACTED | 8/26/2015 | 9/23/2015 | VII-W | Hancock | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7238541 | REDACTED | 8/27/2015 | 9/23/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has | | | | | |

| | been assigned and completed. | | | | | | |
|---|---|---|---|---|---|---|---|
| 7238711 | REDACTED | 8/27/2015 | 9/24/2015 | VI | Stone | | |
| Notes: | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | | |
| 7238770 | REDACTED | 8/26/2015 | 9/26/2015 | VII-W | Hancock | | |
| Notes: | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | | |
| 7240619 | REDACTED | 10/8/2015 | 11/15/2015 | VI | Forrest | | |
| Notes: | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | | |
| 7241283 | REDACTED | 8/29/2015 | 9/29/2015 | III-N | Rankin | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | **This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed.** | | | | | |
| 7242573 | REDACTED | 8/29/2015 | 9/28/2015 | III-N | Yazoo | |
| **Notes:** | **This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed.** | | | | | |
| 7243316 | REDACTED | 8/31/2015 | 9/29/2015 | II-E | Tate | |
| **Notes:** | **This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed.** | | | | | |
| 7244584 | REDACTED | 9/1/2015 | 9/24/2015 | V-E | Simpson | |
| **Notes:** | **This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed.** | | | | | |

| 7244673 | REDACTED | 9/1/2015 | 9/23/2015 | V-E | Lincoln | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7245467 | REDACTED | 9/1/2015 | 9/29/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7245696 | REDACTED | 9/2/2015 | 10/1/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7247087 | REDACTED | 8/31/2015 | 9/24/2015 | V-W | Wilkinson | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. | | | | | |

| | Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
|---|---|---|---|---|---|---|
| 7247729 | REDACTED | 9/2/2015 | 9/30/2015 | I-S | Monroe | |
| Notes: | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7249527 | REDACTED | 9/3/2015 | 9/28/2015 | II-E | Leflore | |
| Notes: | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7250118 | REDACTED | 9/3/2015 | 10/2/2015 | VII-E | Jackson | |
| Notes: | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | been assigned and completed. | | | | | |
| 7252439 | REDACTED | 9/4/2015 | 9/29/2015 | III-N | Rankin | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7254237 | REDACTED | 9/29/2015 | 9/30/2015 | I-S | Monroe | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7255071 | REDACTED | 9/7/2015 | 10/2/2015 | VI | Perry | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7255942 | REDACTED | 9/8/2015 | 9/30/2015 | III-N | Yazoo | |
| **Notes:** | This MIC Review was during the time SRU | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7257643 | REDACTED | 9/9/2015 | 9/28/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7257759 | REDACTED | 9/9/2015 | 10/1/2015 | I-S | Pontotoc | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7260636 | REDACTED | 9/11/2015 | 10/2/2015 | III-N | Madison | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |

| 7260792 | REDACTED | 9/11/2015 | 9/30/2015 | VII-W | Hancock | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7261837 | REDACTED | 9/18/2015 | 9/23/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review was during the time SRU experienced 1271 weekly report issues. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7283334 | REDACTED | 9/25/2015 | 10/25/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7304439 | REDACTED | 10/9/2015 | 11/5/2015 | IV-S | Clarke | |
| **Notes:** | This MIC Review did not appear on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has | | | | | |

| | been assigned and completed. | | | | | |
|---|---|---|---|---|---|---|
| 7325193 | REDACTED | 11/16/2015 | 11/22/2015 | VII-E | George | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review.  This MIC Review has been assigned and completed. | | | | | |
| 7325843 | REDACTED | 10/24/2015 | 11/22/2015 | VII-W | Harrison | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review.  This MIC Review has been assigned and completed. | | | | | |
| 7330812 | REDACTED | 10/28/2015 | 11/29/2015 | III-S | Hinds | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date.  Therefore it was not assigned for review.  This MIC Review has been assigned and completed. | | | | | |
| 7332327 | REDACTED | 10/30/2015 | 11/22/2015 | IV-S | Newton | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7341806 | REDACTED | 11/5/2015 | 12/6/2015 | VII-E | Jackson | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |
| 7369204 | REDACTED | 11/28/2015 | 12/27/2015 | VII-E | Jackson | |
| **Notes:** | This MIC Review appeared on the 1271 weekly report with no Findings Approved Date. Therefore it was not assigned for review. This MIC Review has been assigned and completed. | | | | | |

**From:** Eric Burden
**Sent:** Thursday, May 19, 2016 12:17 PM
**To:** Robert Hamrick; Alexis Holly
**Cc:** Jaworski Davenport; Ronald Martin; Cindy Greer
**Subject:** RE: 1271 Weekly Inquiry

I've checked on the investigations that were indicated as not appearing on the weekly reports. The results seem to fall into two broad categories, a third, smaller category, and a couple of puzzling outliers.

- The first category, highlighted in blue below, are those investigations for which the findings were submitted on the last date of a weekly reporting period. In all these instances, the investigations appear on that weekly report with no investigation findings, and do not appear on the next week's report. I believe this is a timing issue.

- The second category, highlighted in red below, are those investigations with were affected by the September 2015 issue, which appears to have excluded a number of reports with findings submitted from 09/21/2015 to 10/04/2015.

- The third, smaller category, highlighted in purple below, are those investigations wherein the child in question was relieved of custody prior to the findings submitted date. In these cases, the children are not appearing in the weekly reports where the findings date would have fallen. Per the report specifications, these records should be included.

- The two outliers, in white below:

    o For the first (7024320), it seems like a possible issue with MACWIS not reflected accurately the timing of the findings submission date.

    o For the second (7304439), the child does not appear on any weekly reports, and I cannot see any reason in the MACWIS front-end that this should be the case.

I've included Ron on this e-mail in the hopes that he can shed some additional light on the third category of findings as well as the two outliers.

| Intake ID | Child/Children Name(s) | Intake Date | Findings Approved Date | Region | County | Notes |
|---|---|---|---|---|---|---|
| 6885349 | REDACTED REDACTED REDACTED REDACTED | 12/23/2014 | 1/18/2015 | VII-W | Hancock | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 6888631 | REDACTED | 12/29/2014 | 1/18/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 6964214 | REDACTED | 2/20/2015 | 3/22/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 6993419 | REDACTED | 3/13/2015 | 4/12/2015 | II-E | Granada | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |

| 7024320 | REDACTED | 4/3/2015 | 5/2/2015 | IV-S | Lauderdale | Investigation appears in SZ1271_Weekly_20150427_20150503_20150504, without a findings date. The final narrative in this investigation mentions the worker was late in submitting the assessment (05/02/2015), same day as ASWS approval. Is it possible that the findings date listed on the investigation is not the actual date of ASWS approval, but was set to 05/02/2015 on 05/03/2015? If so, this would cause the investigation to not appear on the report. This supposition may be supported by the fact that there is no Initiated Date or Submitted Date in the above mentioned report as well. |
|---------|----------|----------|----------|------|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 7064608 | REDACTED | 4/27/2015 | 5/29/2015 | III-S | Hinds | Similar to issues with investigations 7084463 and 7190212, child appears in all reports prior to custody end date. The main difference here is that the child also appears in SZ1271_Weekly_20150518_20150524_20150525, which is after custody end, but prior to supervisor approval of findings. |

| 7084463 | REDACTED | 5/11/2015 | 5/28/2015 | V-E | Copiah | County owns the screening and the investigation. Investigation last appears in SZ1271_Weekly_20150511_20150517_20150518, no subsequent weekly reports. Incident date 05/10/2015, report date 05/10/2015. Child's custody record is end-dated 05/12/2015, prior to the report date of the report that would contain the findings date. Worker findings were submitted 05/28/2015, supervisor approved 05/28/2015. If the investigation remains active until the supervisor approval of findings, then this investigation should have been included in the SZ1271_Weekly_20150525_20150531_20150601 report. |
| 7139381 | REDACTED REDACTED | 6/30/2015 | 9/25/2015 | VI | Marion | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7149689 | REDACTED | 6/23/2015 | 8/9/2015 | I-N | Tishomingo | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7154380 | REDACTED | 6/26/2015 | 7/26/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7172451 | REDACTED REDACTED REDACTED | 7/10/2015 | 8/9/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7180381 | REDACTED | 7/18/2015 | 8/16/2015 | VII-E | Green | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7190212 | REDACTED | 7/28/2015 | 8/25/2015 | VII-W | Harrison | Investigation last appears in SZ1271_Weekly_20150817_20150823_20150824. Child left custody on 08/17/2015. Incident date 07/27/2015, report date 07/27/2015. Child's custody record is end-dated prior to the report date of the report that would contain the findings date. Worker findings were submitted 08/22/2015, supervisor approved 08/25/2015. If the investigation remains active until the supervisor approval of findings, then this investigation should have been included in the SZ1271_Weekly_20150824_20150830_20150831 report. |
| 7190409 | REDACTED<br>REDACTED | 7/28/2015 | 9/30/2015 | III-S | Warren | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7214545 | REDACTED | 9/16/2015 | 9/23/2015 | III-S | Hinds | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7222556 | REDACTED<br>REDACTED<br>REDACTED<br>REDACTED<br>REDACTED | 8/18/2015 | 9/20/2015 | VII-W | Harrison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7223501 | REDACTED<br>REDACTED | 8/19/2015 | 9/14/2015 | II-W | Washington | |

| | REDACTED | | | | | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
|---|---|---|---|---|---|---|
| 7229577 | REDACTED | 8/20/2015 | 9/25/2015 | III-S | Hinds | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7230400 | REDACTED<br>REDACTED | 8/21/2015 | 9/22/2015 | IV-S | Wayne | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7230842 | REDACTED | 8/22/2015 | 9/24/2015 | VII-W | Harrison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7231741 | REDACTED | 8/23/2015 | 9/21/2015 | II-W | Washington | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7233868 | REDACTED<br>REDACTED<br>REDACTED | 8/27/2015 | 9/21/2015 | IV-N | Winston | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7233914 | REDACTED<br>REDACTED<br>REDACTED | 8/25/2015 | 9/22/2015 | III-N | Rankin | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7234457 | REDACTED<br>REDACTED | 8/24/2015 | 9/24/2015 | VII-W | Hancock | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7235178 | REDACTED<br>REDACTED | 8/26/2015 | 9/24/2015 | VII-W | Harrison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7236506 | REDACTED | 8/26/2015 | 9/24/2015 | I-N | DeSoto | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |

| 7237464 | REDACTED REDACTED REDACTED | 8/26/2015 | 9/23/2015 | VII-W | Hancock | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
|---|---|---|---|---|---|---|
| 7238541 | REDACTED | 8/27/2015 | 9/23/2015 | VII-W | Harrison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7238711 | REDACTED REDACTED REDACTED REDACTED | 8/27/2015 | 9/24/2015 | VI | Stone | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7238770 | REDACTED | 8/26/2015 | 9/26/2015 | VII-W | Hancock | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7240619 | REDACTED | 10/8/2015 | 11/15/2015 | VI | Forrest | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7241283 | REDACTED REDACTED REDACTED | 8/29/2015 | 9/29/2015 | III-N | Rankin | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7242573 | REDACTED | 8/29/2015 | 9/28/2015 | III-N | Yazoo | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7243316 | REDACTED | 8/31/2015 | 9/29/2015 | II-E | Tate | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |

| 7244584 | REDACTED | 9/1/2015 | 9/24/2015 | V-E | Simpson | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7244673 | REDACTED | 9/1/2015 | 9/23/2015 | V-E | Lincoln | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7245467 | REDACTED | 9/1/2015 | 9/29/2015 | III-S | Hinds | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7245696 | REDACTED REDACTED REDACTED REDACTED | 9/2/2015 | 10/1/2015 | VII-W | Harrison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7247087 | REDACTED | 8/31/2015 | 9/24/2015 | V-W | Wilkinson | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7247729 | REDACTED REDACTED REDACTED | 9/2/2015 | 9/30/2015 | I-S | Monroe | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7249527 | REDACTED REDACTED REDACTED | 9/3/2015 | 9/28/2015 | II-E | Leflore | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7250118 | REDACTED REDACTED REDACTED | 9/3/2015 | 10/2/2015 | VII-E | Jackson | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7252439 | REDACTED | 9/4/2015 | 9/29/2015 | III-N | Rankin | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7254237 | REDACTED | 9/29/2015 | 9/30/2015 | I-S | Monroe | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| | REDACTED | | | | | |
| 7255071 | REDACTED | 9/7/2015 | 10/2/2015 | VI | Perry | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| | REDACTED | | | | | |
| 7255942 | REDACTED | 9/8/2015 | 9/30/2015 | III-N | Yazoo | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7257643 | REDACTED | 9/9/2015 | 9/28/2015 | III-S | Hinds | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7257759 | REDACTED | 9/9/2015 | 10/1/2015 | I-S | Pontotoc | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7260636 | REDACTED | 9/11/2015 | 10/2/2015 | III-N | Madison | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7260792 | REDACTED | 9/11/2015 | 9/30/2015 | VII-W | Hancock | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7261837 | REDACTED | 9/18/2015 | 9/23/2015 | III-S | Hinds | Within the timeframe of the September issue. The reports in the Prior SZ1271 Report Submissions folder are still the affected reports. |
| 7283334 | REDACTED | 9/25/2015 | 10/25/2015 | VII-W | Harrison | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |

| 7304439 | REDACTED | 10/9/2015 | 11/5/2015 | IV-S | Clarke | Does not appear in any weekly report for the lifetime of the investigation. County owns the screening, SIU owns the investigation. Child in custody from 09/26/2015 to present. Comment indicates report will be assigned to SIU by county ASWS. Cannot determine why this investigation would appear in monthly report but no weekly reports. Child does appear in SZ1271_20151101_20151130_20151205 monthly report. |
|---|---|---|---|---|---|---|
| 7325193 | REDACTED<br>REDACTED | 11/16/2015 | 11/22/2015 | VII-E | George | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7325843 | REDACTED<br>REDACTED | 10/24/2015 | 11/22/2015 | VII-W | Harrison | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7330812 | REDACTED<br>REDACTED | 10/28/2015 | 11/29/2015 | III-S | Hinds | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7332327 | REDACTED<br>REDACTED<br>REDACTED | 10/30/2015 | 11/22/2015 | IV-S | Newton | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |

| 7341806 | REDACTED | 11/5/2015 | 12/6/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |
| 7369204 | REDACTED REDACTED REDACTED REDACTED REDACTED | 11/28/2015 | 12/27/2015 | VII-E | Jackson | Investigation findings submitted on the last day of a week. This seems to cause the investigation to appear in that week's report as not completed, and be missing from the next week's report. Likely due to timing with report run. |

**Eric Burden**

Data Validation Supervisor
Continuous Quality Improvement
Division of Family and Children's Services
Phone: 601-359-4623

Child Abuse and Neglect Hotline 1-800-222-8000

Confidentiality Statement: The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.

**Ex. 28**

## Grace M. Lopes

**Attachments:**                    MIC investigations on 1271D but not BRD06.xlsx


**From:** Grace M. Lopes
**Sent:** Friday, May 20, 2016 2:14 PM
**To:** 'Cindy Greer' <Cindy.Greer@mdhs.ms.gov>
**Cc:** Mark Jordan <mjordan@sparb.org>; Mia Caras <mcaras@sparb.org>
**Subject:** MIC Investigations that Appear on Report 1271D But Not on Report BRD06


Cindy:

As I mentioned today, I would appreciate your office's assistance with respect to determining the status of certain MIC investigations that appear on 1271D but not on BDR06.  The attached spreadsheet identifies 163 maltreatment in care investigations based on reports/intakes during the 2015 calendar year that appear on 1271D but not on BRD06.  The three that Tracy Aynes reviewed which she found were incorrectly omitted from BRD 06 are included on the spreadsheet and highlighted in yellow for ease of reference.  It appears that the remaining 160 investigations listed on the spreadsheet should be included on BRD06 based on how they are categorized when the investigative reports are transmitted to my office.  In any event, as we discussed, I will look forward to hearing from you once your staff has an opportunity to determine whether the investigations should have been included on BRD 06.  If you have any questions about this matter, please feel free to contact Mark or Mia next week.  Thank you. - Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C.  20036 02.232.8311*

*This email and any attachments may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies.  Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

| Child's/ Children's Name | Child's/Children's DOB | Intake ID | Report Date | Notes |
|---|---|---|---|---|
| REDACTED | REDACTED | 6859704 | 12/5/2014 | |
| REDACTED | REDACTED | 6900992 | 01-08-2015 | |
| REDACTED | REDACTED | 6911404 | 01-15-2015 | |
| REDACTED | REDACTED | 6913156 | 01-16-2015 | |
| REDACTED | REDACTED | 6918824 | 01-21-2015 | |
| REDACTED | REDACTED | 6921531 | 01-23-2015 | |
| REDACTED | REDACTED | 6941214 | 02-04-2015 | |
| REDACTED | REDACTED | 6947913 | 02-09-2015 | |
| REDACTED | REDACTED | 6948901 | 2/10/2015 | |
| REDACTED | REDACTED | 6950841 | 02-11-2015 | |
| REDACTED | REDACTED | 6951813 | 02-11-2015 | |
| REDACTED | REDACTED | 6952240 | 02-11-2015 | |
| REDACTED | REDACTED | 6956238 | 02-14-2015 | |
| REDACTED | REDACTED | 6964214 | 02-20-2015 | |
| REDACTED | REDACTED | 6968260 | 02-23-2015 | |
| REDACTED | REDACTED | 6970168 | 02-24-2015 | |
| REDACTED | REDACTED | 6974287 | 02-27-2015 | |
| REDACTED | REDACTED | 6975747 | 3/2/2015 | |
| REDACTED | REDACTED | 6979688 | 03-04-2015 | |
| REDACTED | REDACTED | 6981119 | 03-04-2015 | |
| REDACTED | REDACTED | 6981518 | 03-04-2015 | |
| REDACTED | REDACTED | 6983057 | 3/6/2015 | |
| REDACTED | REDACTED | 6984258 | 3/6/2015 | |
| REDACTED | REDACTED | 6985386 | 3/8/2015 | |
| REDACTED | REDACTED | 6986048 | 3/9/2015 | |
| REDACTED | REDACTED | 6989004 | 3/10/2015 | |
| REDACTED | REDACTED | 6989160 | 3/10/2015 | |
| REDACTED | REDACTED | 6991122 | 3/11/2015 | |
| REDACTED | REDACTED | 6992684 | 03-12-2015 | |
| REDACTED | REDACTED | 6995411 | 3/16/2015 | |
| REDACTED | REDACTED | 6999735 | 3/18/2015 | |
| REDACTED | REDACTED | 6999891 | 03-18-2015 | |
| REDACTED | REDACTED | 6999956 | 3/18/2015 | |
| REDACTED | REDACTED | 7001010 | 3/18/2015 | |
| REDACTED | REDACTED | 7003951 | 3/20/2015 | |
| REDACTED | REDACTED | 7004044 | 3/20/2015 | |
| REDACTED | REDACTED | 7007957 | 03-23-2015 | |
| REDACTED | REDACTED | 7010222 | 3/25/2015 | |
| REDACTED | REDACTED | 7011385 | 3/25/2015 | |
| REDACTED | REDACTED | 7011539 | 3/25/2015 | |
| REDACTED | REDACTED | 7011806 | 03-25-2015 | |
| REDACTED | REDACTED | 7011962 | 3/25/2015 | |

| REDACTED | REDACTED | 7014236 | 3/26/2015 | |
|----------|----------|---------|-----------|--|
| REDACTED | REDACTED | 7015054 | 3/27/2015 | |
| REDACTED | REDACTED | 7015674 | 03-27-2015 | |
| REDACTED | REDACTED | 7022700 | 04-01-2015 | |
| REDACTED | REDACTED | 7027915 | 4/6/2015 | |
| REDACTED | REDACTED | 7028229 | 4/6/2015 | |
| REDACTED | REDACTED | 7028857 | 4/7/2015 | |
| REDACTED | REDACTED | 7032846 | 4/8/2015 | |
| REDACTED | REDACTED | 7036418 | 4/10/2015 | |
| REDACTED | REDACTED | 7039085 | 4/13/2015 | |
| REDACTED | REDACTED | 7039654 | 4/13/2015 | |
| REDACTED | REDACTED | 7043481 | 4/15/2015 | |
| REDACTED | REDACTED | 7054734 | 4/21/2015 | |
| REDACTED | REDACTED | 7056761 | 04-22-2015 | |
| REDACTED | REDACTED | 7057342 | 4/22/2015 | |
| REDACTED | REDACTED | 7064608 | 04-27-2015 | |
| REDACTED | REDACTED | 7065949 | 4/28/2015 | |
| REDACTED | REDACTED | 7071000 | 4/30/2015 | |
| REDACTED | REDACTED | 7072082 | 05-01-2015 | |
| REDACTED | REDACTED | 7072139 | 5/1/2015 | |
| REDACTED | REDACTED | 7072422 | 5/1/2015 | |
| REDACTED | REDACTED | 7074832 | 5/4/2015 | |
| REDACTED | REDACTED | 7079486 | 5/6/2015 | |
| REDACTED | REDACTED | 7105088 | 5/22/2015 | |
| REDACTED | REDACTED | 7110715 | 5/27/2015 | |
| REDACTED | REDACTED | 7110987 | 05-27-2015 | |
| REDACTED | REDACTED | 7123507 | 6/4/2015 | |
| REDACTED | REDACTED | 7129580 | 06-09-2015 | |
| REDACTED | REDACTED | 7138776 | 06-16-2015 | |
| REDACTED | REDACTED | 7144245 | 06-19-2015 | |
| REDACTED | REDACTED | 7153554 | 06-26-2015 | |
| REDACTED | REDACTED | 7153961 | 06-26-2015 | |
| REDACTED | REDACTED | 7154844 | 06-26-2015 | |
| REDACTED | REDACTED | 7157428 | 06-29-2015 | |
| REDACTED | REDACTED | 7159951 | 06-30-2015 | |
| REDACTED | REDACTED | 7166990 | 07-07-2015 | |
| REDACTED | REDACTED | 7172265 | 07-10-2015 | |
| REDACTED | REDACTED | 7180381 | 07-17-2015 | |
| REDACTED | REDACTED | 7190816 | 07-27-2015 | |
| REDACTED | REDACTED | 7191855 | 07-27-2015 | |
| REDACTED | REDACTED | 7193467 | 07-28-2015 | |
| REDACTED | REDACTED | 7194714 | 07-28-2015 | |
| REDACTED | REDACTED | 7199597 | 08-03-2015 | |
| REDACTED | REDACTED | 7199651 | 08-03-2015 | |
| REDACTED | REDACTED | 7204027 | 08-05-2015 | |

| | | | | |
|---|---|---|---|---|
| REDACTED | REDACTED | 7207948 | 08-07-2015 | |
| REDACTED | REDACTED | 7208170 | 08-07-2015 | |
| REDACTED | REDACTED | 7222092 | 08-17-2015 | |
| REDACTED | REDACTED | 7222696 | 08-17-2015 | |
| REDACTED | REDACTED | 7223927 | 08-18-2015 | |
| REDACTED | REDACTED | 7225431 | 08-19-2015 | |
| REDACTED | REDACTED | 7233914 | 08-24-2015 | |
| REDACTED | REDACTED | 7237464 | 08-26-2015 | |
| REDACTED | REDACTED | 7244584 | 08-31-2015 | |
| REDACTED | REDACTED | 7245467 | 09-01-2015 | |
| REDACTED | REDACTED | 7245696 | 09-01-2015 | |
| REDACTED | REDACTED | 7247087 | 08-31-2015 | |
| REDACTED | REDACTED | 7247729 | 09-02-2015 | |
| REDACTED | REDACTED | 7250118 | 09-03-2015 | |
| REDACTED | REDACTED | 7252439 | 09-04-2015 | |
| REDACTED | REDACTED | 7253540 | 12-07-2015 | |
| REDACTED | REDACTED | 7255071 | 09-06-2015 | |
| REDACTED | REDACTED | 7259751 | 09-09-2015 | |
| REDACTED | REDACTED | 7266766 | 09-15-2015 | |
| REDACTED | REDACTED | 7281560 | 09-23-2015 | |
| REDACTED | REDACTED | 7288492 | 09-29-2015 | |
| REDACTED | REDACTED | 7294298 | 09-30-2015 | |
| REDACTED | REDACTED | 7299575 | 10-06-2015 | |
| REDACTED | REDACTED | 7300212 | 10-06-2015 | |
| REDACTED | REDACTED | 7301154 | 10-07-2015 | |
| REDACTED | REDACTED | 7301871 | 10-07-2015 | |
| REDACTED | REDACTED | 7304439 | 10-08-2015 | |
| REDACTED | REDACTED | 7304641 | 10-09-2015 | |
| REDACTED | REDACTED | 7307152 | 10-12-2015 | |
| REDACTED | REDACTED | 7310609 | 10-13-2015 | |
| REDACTED | REDACTED | 7312970 | 10-15-2015 | |
| REDACTED | REDACTED | 7314639 | 10-16-2015 | |

| REDACTED | REDACTED | 7316593 | 10-18-2015 | |
|----------|----------|---------|------------|---|
| REDACTED | REDACTED | 7319274 | 10-20-2015 | |
| REDACTED | REDACTED | 7319649 | 10-20-2015 | |
| REDACTED | REDACTED | 7320124 | 10-20-2015 | |
| REDACTED | REDACTED | 7320191 | 10-20-2015 | |
| REDACTED | REDACTED | 7320213 | 10-20-2015 | |
| REDACTED | REDACTED | 7325029 | 10-23-2015 | |
| REDACTED | REDACTED | 7327951 | 10-26-2015 | |
| REDACTED | REDACTED | 7328036 | 10-26-2015 | |
| REDACTED | REDACTED | 7328966 | 10-26-2015 | |
| REDACTED | REDACTED | 7331886 | 10-28-2015 | |
| REDACTED | REDACTED | 7331940 | 10-28-2015 | |
| REDACTED | REDACTED | 7334915 | 10-30-2015 | |
| REDACTED | REDACTED | 7337736 | 11-02-2015 | |
| REDACTED | REDACTED | 7341806 | 11-05-2015 | |
| REDACTED | REDACTED | 7346786 | 11-09-2015 | |
| REDACTED | REDACTED | 7348282 | 11-10-2015 | |
| REDACTED | REDACTED | 7348509 | 11-04-2015 | |
| REDACTED | REDACTED | 7350732 | 11-12-2015 | |
| REDACTED | REDACTED | 7353383 | 11-13-2015 | |
| REDACTED | REDACTED | 7358768 | 11-18-2015 | |
| REDACTED | REDACTED | 7364687 | 11-23-2015 | |
| REDACTED | REDACTED | 7369204 | 11-28-2015 | |
| REDACTED | REDACTED | 7372361 | 12/1/2015 | |
| REDACTED | REDACTED | 7372590 | 12-01-2015 | |
| REDACTED | REDACTED | 7372671 | 12-01-2015 | |
| REDACTED | REDACTED | 7380763 | 12-07-2015 | |
| REDACTED | REDACTED | 7381255 | 12-08-2015 | |
| REDACTED | REDACTED | 7381808 | 12-08-2015 | |
| REDACTED | REDACTED | 7383657 | 12-09-2015 | |
| REDACTED | REDACTED | 7389361 | 12-13-2015 | |

| REDACTED | REDACTED | 7389760 | 12-14-2015 | |
|----------|----------|---------|------------|---|
| REDACTED | REDACTED | 7390238 | 12-14-2015 | |
| REDACTED | REDACTED | 7390750 | 12-14-2015 | |
| REDACTED | REDACTED | 7397356 | 12-17-2015 | |
| REDACTED | REDACTED | 7397372 | 12-18-2015 | |
| REDACTED | REDACTED | 7399170 | 12-21-2015 | |
| REDACTED | REDACTED | 7399200 | 12-21-2015 | |
| REDACTED | REDACTED | 7400551 | 12-22-2015 | |
| REDACTED | REDACTED | 7401612 | 12-22-2015 | |
| REDACTED | REDACTED | 7404646 | 12-28-2015 | |
| REDACTED | REDACTED | 7406401 | 12-29-2015 | |
| REDACTED | REDACTED | 7406606 | 12-29-2015 | |
| REDACTED | REDACTED | 7406975 | 12-29-2015 | |

**Ex. 29A**

**Grace M. Lopes**

---

**Attachments:**           Court Monitor request MIC investigations on 1271D but not BRD06 complete requested
                          columns added.xlsx


**Sent:** Tuesday, June 28, 2016 8:57 AM
**To:** Grace M. Lopes <gmlopes@oymonitor.org>
**Cc:** Mia Caras <mcaras@sparb.org>; Cindy Greer <cindy.greer@mdcps.ms.gov>; Mark Jordan <mjordan@sparb.org>
**Subject:** Re: MIC Investigations that Appear on Report 1271D But Not on Report BRD06

Good morning all,

Attached is the follow-up requested by Grace during our conversation last week. I have added three columns
"should be on BRD06 but isn't due to data entry"
"does not meet the criteria for BRD06"
"additional notes"

Each record is noted as either "should be on BRD06" or "does not meet the criteria". A few records
include additional notes.

Please let me know if you have additional questions.

Tracy Aynes 
Senior Business Systems Analyst
Mississippi Department of Child Protection Services
tracy.aynes@mdhs.ms.gov
Phone: 601.359.4425
Child Abuse and Neglect Hotline 1-800-222-8000,
Report Online: https://www.msabusehotline.mdhs.ms.gov
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential, proprietary, and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from all computers.

Please consider the environment before printing this e-mail

| Child's/ Children's Name | Child's/Children's DOB | Intake ID | Report Date | Notes | should be on BRD06 but isn't due to Data entry | does not meet the criteria for BRD06 | additional notes |
|---|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7043481 | 4/15/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7054734 | 4/21/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7072422 | 5/1/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7079486 | 5/6/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7110987 | 05-27-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7144245 | 06-19-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7166990 | 07-07-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7190816 | 07-27-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7191855 | 07-27-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7194714 | 07-28-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7199597 | 08-03-2015 | Data entry at intake: not listed as "Special Handling - Resource Report" | xx | | |
| REDACTED | REDACTED | 7199651 | 08-03-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7244584 | 08-31-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7245696 | 09-01-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7247087 | 08-31-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7247729 | 09-02-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7250118 | 09-03-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7252439 | 09-04-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7379625 | 12-07-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7074832 | 5/4/2015 | Data entry at intake: Perpetrator is listed as Biological Parent, not one of the allowed relationship types. | xx | | |
| REDACTED | REDACTED | 7138776 | 06-16-2015 | Data entry at intake: Perpetrator is listed as Biological Parent, not one of the allowed relationship types. | xx | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7207948 | 08-07-2015 | Data entry at intake: Perpetrator is listed as Other Professional, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7110715 | 5/27/2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7129580 | 06-09-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7153554 | 06-26-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7180381 | 7/17/2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7204027 | 08-05-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7237464 | 08-26-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7245467 | 09-01-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | |
| REDACTED | REDACTED | 7193467 | 07-28-2015 | Data entry at intake: Perpetrator is listed as Other, not one of the allowed relationship types.<br>Note: Special Handling-Resource Report lists "Out of home setting not on file". | xx | |
| REDACTED | REDACTED | 7172265 | 07-10-2015 | Data entry at intake: Perpetrators listed as Adoptive Parent and Unknown, not an allowed relationship type. | xx | |
| REDACTED | REDACTED | 7105088 | 5/22/2015 | Supervisor comments indicate that this is a duplicate report which was accidentally screened in after the custody indicator was removed. The original intake ID is 007103182. Could the referenced investigation be missing from SBRD06 due to MIS intervention? Custody child Victim is N/A. The other record with this characteristic also doesn't appear. | | xx | this child does appear on brd06 for intake 7103182 which is the actual intake/investigation that was completed (as mentioned in the NOTES column).<br><br>Because this intake was a duplicate, the custody indicator was set to N/A in order to screen-out the duplicate, but according to narrative, it was accidently screened in. Intake 7105088 does not appear on BRD06 for this reason. |
| REDACTED | REDACTED | 7056761 | 04-22-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |
| REDACTED | REDACTED | 7057342 | 4/22/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |
| REDACTED | REDACTED | 7222092 | 08-17-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |
| REDACTED | REDACTED | 7222696 | 08-17-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |
| REDACTED | REDACTED | 7223927 | 08-18-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |
| REDACTED | REDACTED | 7225431 | 08-19-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7233914 | 08-24-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7255071 | 09-06-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7259751 | 09-09-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7266766 | 09-15-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7281560 | 09-23-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7071000 | 4/30/2015 | Data entry at intake: Perpetrator is listed as Biological Parent, not one of the allowed relationship types. | xx | | |
| REDACTED | REDACTED | 7208170 | 08-07-2015 | Data entry at intake: Perpetrator is listed as Other, not one of the allowed relationship types. Note: Special Handling-Resource Report lists "Out of home setting | xx | | |
| REDACTED | REDACTED | 7312970 | 10-15-2015 | 11611192 and 11686079 were never in dhs custody, custody child (11611168) was in "own home" placement at time of ANE and would not be listed on BRD06 for that reason. | | xx | |
| REDACTED | REDACTED | 7348282 | 11-10-2015 | At the time of the report/ANE allegation the child was in "own home-other caretaker", not a resource placement. "special Handling-resource report" should not have been selected by MCI. | | xx | |
| REDACTED | REDACTED | 7301154 | 10-07-2015 | based on the report description it is unclear if the perpetrator was known at the time of intake (intake stated injury resulted from altercation with another child, investigation findings states it was facility staff), MCI may not have had enough information to code correctly. Once the perpetrator was identified as facility staff, that person should have been added to the investigation and identified in allegations with the relationship of 'residential facility staff' by the | xx | | It appears the perpetrator was not confirmed until the investigation as the information at intake points to another child as the perpetrator. |
| REDACTED | REDACTED | 7350732 | 11-12-2015 | child was placed in a Trial Home Placement/"*own home-other caretaker*" at time of ANE. The investigation did not involve a | | xx | |
| REDACTED | REDACTED | 7123507 | 6/4/2015 | Custody information was not in MACWIS at the time of the intake. On the general tab of the intake is showing "NA" re: custody child victim (which means the children did not have an open custody record at the time of intake, custody start for all children is 5/26/15).

the placement for the children in the resource home wasn't submitted by the COR worker until July (*after the investigation was closed*).

A later investigation for these children does appear in SBRD06_20150201_20160131_2016_0205. Same resource/perpetrator listed. Special handling does indicate that "Out of home setting not on file", which may be the cause. Custody Child | xx | | |
| REDACTED | REDACTED | 7299575 | 10-06-2015 | data entry at intake, relationship in allegations listed as "other relative" instead of "relative foster parent" | xx | | |
| REDACTED | REDACTED | 7300212 | 10-06-2015 | data entry at intake, Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7301871 | 10-07-2015 | data entry at intake, Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7380763 | 12-07-2015 | data entry at intake, the facility staff listed as perpetrator was given relationship of "unknown" instead of "residential facility staff". | xx | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7314639 | 10-16-2015 | Data entry at intake. at the time of the report, 10778468 and 10774136 were not in custody. The infant, 11652638 was in custody, but in USA Children's Hospital, where she had been since birth | | xx | Not a resource report. the custody child was in USA children's hospital at the time of the ANE and should not have been listed as a victim as the ANE occurred in the home where the two non-custody children live. |
| REDACTED | REDACTED | 7346786 | 11-09-2015 | Data entry at Intake. MCI selected "restricted access" instead of "Special Handling-Resource report" | xx | | |
| REDACTED | REDACTED | 7372590 | 12-01-2015 | data entry at intake. Not listed as 'resource report'. | xx | | |
| REDACTED | REDACTED | 7397356 | 12-17-2015 | Data Entry at Intake. perp listed as "other relative" instead of "relative foster parent" | xx | | |
| REDACTED | REDACTED | 7401612 | 12-22-2015 | Data Entry at Intake. perp listed as "other" instead of "non-relative foster parent" | xx | | |
| REDACTED | REDACTED | 7389760 | 12-14-2015 | data entry at intake. Perp listed as 'other' instead of 'non relative foster parent', also, child was reporting abuse from previous foster home, the resource named should have been the resource where the abuse/neglect occurred, not the resource at the report date | xx | | |
| REDACTED | REDACTED | 7389361 | 12-13-2015 | data entry at intake. Perp listed with relationship of "other" instead of non-relative foster parent' | xx | | |
| REDACTED | REDACTED | 7383657 | 12-09-2015 | Data entry at intake. Perp not listed as "relative foster parent" | xx | | |
| REDACTED | REDACTED | 7288492 | 09-29-2015 | Data entry at intake. Perp relationship in allegation listed as biological parent instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7372361 | 12/1/2015 | Data entry at intake. Perp relationship listed not listed as "Non-relative foster parent" | xx | | |
| REDACTED | REDACTED | 7372671 | 12-01-2015 | Data entry at intake. Perp relationship listed not listed as "Non-relative foster parent" | xx | | |
| REDACTED | REDACTED | 7353383 | 11-13-2015 | data entry at intake. Perp relationship not listed as "Non-relative | xx | | |
| REDACTED | REDACTED | 7325029 | 10-23-2015 | Data entry at intake. relationship on allegations listed as other professional instead of residential facility staff | xx | | |
| REDACTED | REDACTED | 7320191 | 10-20-2015 | Data entry at intake. Relationship on allegations listed as other relative instead of non-relative foster parent | xx | | |
| REDACTED | REDACTED | 7319649 | 10-20-2015 | Data entry at intake. Relationship on allegations listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7328966 | 10-26-2015 | Data entry at intake. Relationship on allegations listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7331886 | 10-28-2015 | Data entry at intake. Relationship on allegations listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7331940 | 10-28-2015 | Data entry at intake. Relationship on allegations listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7320124 | 10-20-2015 | Data entry at intake. Restricted Access was selected instead of Resource Report in the Special Handling section, also on allegations, relationship was listed as 'other', 'other relative' instead of Relative Foster Parent | xx | | |
| REDACTED | REDACTED | 7337736 | 11-02-2015 | Data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7364687 | 11-23-2015 | data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7369204 | 11-28-2015 | data entry at intake. Special Handling-resource report was not | xx | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7381255 | 12-08-2015 | data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7390238 | 12-14-2015 | data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7390750 | 12-14-2015 | data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7399170 | 12-21-2015 | data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7400551 | 12-22-2015 | Data Entry at Intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7404646 | 12-28-2015 | Data Entry at Intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7294298 | 09-30-2015 | Data entry at intake. Special Handling-resource report was not selected also, Perp relationship in allegation listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7304641 | 10-09-2015 | Data entry at intake. Special Handling-resource report was not selected also, Perp relationship in allegation listed as other relative instead of relative foster parent | xx | | |
| REDACTED | REDACTED | 7348509 | 11-04-2015 | data entry at intake. Special Handling-resource report was not selected and only listed as relative foster parent for 9347321 | xx | | |
| REDACTED | REDACTED | 7341806 | 11-05-2015 | data entry at intake. Special Handling-resource report was not selected and the resource parents were identified as biological parents in allegations<br>ID 7329725 was a custody child placed in the resource at the time of the ANE report.<br>ID 11792022 and ID 11792014 are not custody children and would not be on the report. | xx | | |
| REDACTED | REDACTED | 7399200 | 12-21-2015 | Data Entry at Intake. Special Handling-resource report was not selected, perps listed as biological parent/other relative | xx | | |
| REDACTED | REDACTED | 7327951 | 10-26-2015 | Data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7328036 | 10-26-2015 | Data entry at intake. Special Handling-resource report was not | xx | | |
| REDACTED | REDACTED | 7358768 | 11-18-2015 | data entry at intake. Special Handling-resource report was not selected. | xx | | |
| REDACTED | REDACTED | 7316593 | 10-18-2015 | Data entry at intake. Special Handling-resource report was not selected. Also, according to records, only 5741262 was in custody at | xx | | |
| REDACTED | REDACTED | 7319274 | 10-20-2015 | Data entry at intake. Special Handling-resource report was not selected. Also, according to records, only 9275762 was in custody at | xx | | |
| REDACTED | REDACTED | 7334915 | 10-30-2015 | Data entry at intake. Special Handling-resource report was not selected. Also, report states the perp is the resource parent, but the relationship on allegations list 'biological parent'. | xx | | |
| REDACTED | REDACTED | 7320213 | 10-20-2015 | Data entry at intake. Special Handling-resource report was not selected. Relationship on allegations listed as other instead of | xx | | |
| REDACTED | REDACTED | 6974287 | 02-27-2015 | Data entry at intake: All relationships are adoptive parent | xx | | |
| REDACTED | REDACTED | 6952240 | 02-11-2015 | Data entry at intake: All relationships are Other Relative | xx | | |
| REDACTED | REDACTED | 6913156 | 01-16-2015 | Data entry at intake: Biological Parent as relationship to alleged victims. Report not coded as special handling | xx | | |
| REDACTED | REDACTED | 7011806 | 3/25/2015 | Data entry at intake: Custody child victim detached. Resource report for 'Millcreek "however child placed in "Millcreek of Natchez therapeutic group home" . - placement resource differs from intake resource | xx | | child placed in millcreek of natchez therapeutic group home, resource ID 5343615. for the this intake, Resource Special Handling-Resource Report lists "millcreek" which is a different resource ID |
| REDACTED | REDACTED | 7039085 | 4/13/2015 | Data entry at intake: Not coded as special handling.  Relationships are Other relative and biological parent | xx | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REDACTED | REDACTED | 7015054 | 3/27/2015 | Data entry at intake: Not coded as special handling. All relationships are unknown | xx | | |
| REDACTED | REDACTED | 7011385 | 3/25/2015 | Data entry at intake: Not coded as special handling. Relationship is biological parent | xx | | |
| REDACTED | REDACTED | 6999956 | 3/18/2015 | Data entry at intake: Not coded as special handling. Relationship is biological parent. | xx | | |
| REDACTED | REDACTED | 7028229 | 4/6/2015 | Data entry at intake: Not coded as special handling. Relationship is biological parent. | xx | | |
| REDACTED | REDACTED | 6951813 | 02-11-2015 | Data entry at intake: Not coded as special handling. Relationship is coded unrelated legal guardian. 8626707 is the only victim listed with a maltreatment | xx | | |
| REDACTED | REDACTED | 6995411 | 3/16/2015 | Data entry at intake: Not coded as special handling. Relationship is other relative | xx | | |
| REDACTED | REDACTED | 6999891 | 03-18-2015 | Data entry at intake: Not coded as special handling. Relationship is other relative | xx | | |
| REDACTED | REDACTED | 6911404 | 01-15-2015 | Data entry at intake: Not coded as special handling. Relationship is relative foster. Custody victim is attached | xx | | |
| REDACTED | REDACTED | 6999735 | 3/18/2015 | Data entry at intake: Not coded as special handling. Relationship is stepparent and biological parent | xx | | |
| REDACTED | REDACTED | 7032846 | 4/8/2015 | Data entry at intake: Not coded as special handling. Relationships are biological parent | xx | | |
| REDACTED | REDACTED | 7003951 | 3/20/2015 | Data entry at intake: Not coded as special handling. Relationships are biological parent | xx | | |
| REDACTED | REDACTED | 6989160 | 3/10/2015 | Data entry at intake: Not coded as special handling. Relationships are biological parent and stepparent | xx | | |
| REDACTED | REDACTED | 7004044 | 3/20/2015 | Data entry at intake: Not coded as special handling. Relationships are biological parents | xx | | |
| REDACTED | REDACTED | 6947913 | 02-09-2015 | Data entry at intake: Not coded as special handling. Relationships are coded as non relative foster, Other relative, and Biological Parent | xx | | |
| REDACTED | REDACTED | 7011539 | 3/25/2015 | Data entry at intake: Not coded as special handling. Relationships are coded as other | xx | | |
| REDACTED | REDACTED | 6859704 | 12/5/2014 | Data entry at intake: Not coded as special handling. Relationships are coded biological parent | xx | | |
| REDACTED | REDACTED | 6964214 | 02-20-2015 | Data entry at intake: Not coded as special handling. Relationships are Other Relative and Unknown | xx | | |
| REDACTED | REDACTED | 7001010 | 3/18/2015 | Data entry at intake: Not coded as special handling. Relationships are other, other relative, biological parent and unknown. | xx | | |
| REDACTED | REDACTED | 7022700 | 04-01-2015 | Data entry at intake: Not coded as special handling. Relationships are unrelated legal guardian | xx | | |
| REDACTED | REDACTED | 7015674 | 03-27-2015 | Data entry at intake: Not coded as special handling. Relationships coded as other relative | xx | | |

| REDACTED | REDACTED | 6900992 | 01-08-2015 | Data entry at intake: Not coded as special handling. Relative foster is the relationship. | xx | | |
| REDACTED | REDACTED | 6956238 | 02-14-2015 | Data entry at intake: Not coded as special handling., however, all relationships indicate Residential Facility Staff | xx | | |
| REDACTED | REDACTED | 7036418 | 4/10/2015 | Data entry at intake: Not coded special handling and relationship is other relative | xx | | |
| REDACTED | REDACTED | 7064608 | 04-27-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7065949 | 4/28/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7072082 | 05-01-2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 7072139 | 5/1/2015 | Data entry at intake: not listed as "Special Handling - Resource | xx | | |
| REDACTED | REDACTED | 6968260 | 02-23-2015 | Data entry at intake: Not special handling however, relationships are Residential Facility Staff | xx | | |
| REDACTED | REDACTED | 6918824 | 01-21-2015 | Data entry at intake: Only 6584489 and 5400864 are listed as alleged victims. Relationship is set as Unrelated Legal Guardian. 5400821 and 5400902 are listed as uninvolved | xx | | |
| REDACTED | REDACTED | 7154844 | 06-26-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | | |
| REDACTED | REDACTED | 7157428 | 06-29-2015 | Data entry at intake: Perpetrator is listed as Other Relative, not one of the allowed relationship types. | xx | | |
| REDACTED | REDACTED | 7153961 | 06-26-2015 | Data entry at intake: Perpetrator is listed as Other, not one of the allowed relationship types. | xx | | |
| REDACTED | REDACTED | 7159951 | 06-30-2015 | Data entry at intake: Perpetrators listed as Other and Unknown, not an allowed relationship type. | xx | | |
| REDACTED | REDACTED | 7039654 | 4/13/2015 | Data entry at intake: Relationship coded as biological parent | xx | | |
| REDACTED | REDACTED | 6950841 | 02-11-2015 | Data entry at intake: Relationship is biological parent | xx | | |
| REDACTED | REDACTED | 6991122 | 3/11/2015 | Data entry at intake: Relationship is other | xx | | |
| REDACTED | REDACTED | 6970168 | 02-24-2015 | Data entry at intake: Relationship is other relative | xx | | |
| REDACTED | REDACTED | 6992684 | 03-12-2015 | Data entry at intake: Relationship is other relative | xx | | |
| REDACTED | REDACTED | 6921531 | 01-23-2015 | Data entry at intake: Relationship is unknown | xx | | |
| REDACTED | REDACTED | 7007957 | 03-23-2015 | Data entry at intake: Relationships are adoptive parents | xx | | |
| REDACTED | REDACTED | 7028857 | 4/7/2015 | Data entry at intake: Relationships are biological parent and Other | xx | | |
| REDACTED | REDACTED | 7011962 | 3/25/2015 | Data entry at intake: Relationships are coded as Biological parent, stepparent, and other relative | xx | | |
| REDACTED | REDACTED | 7014236 | 3/26/2015 | Data entry at intake: Relationships are coded other | xx | | |
| REDACTED | REDACTED | 7027915 | 4/6/2015 | Data entry at intake: Relationships are other relatives | xx | | |
| REDACTED | REDACTED | 6941214 | 02-04-2015 | Data entry at intake: Relationships are Unrelated legal guardian, adoptive parent, and adoptive, respectively. | xx | | |
| REDACTED | REDACTED | 7010222 | 3/25/2015 | Data entry at intake: Relative Foster. Cust victim not attached. Child fatality. | xx | | |
| REDACTED | REDACTED | 6948901 | 2/10/2015 | Data entry at intake: Restricted access. All relationships are coded other relative | xx | | |
| REDACTED | REDACTED | 7406606 | 12-29-2015 | Data Entry at intake: Special Handling-resource report was not selected, perp listed as "other relative" instead of "relative foster | xx | | |
| REDACTED | REDACTED | 7397372 | 12-18-2015 | Data Entry at intake: Special Handling-resource report was not selected, perp listed as "other" | xx | | |
| REDACTED | REDACTED | 7406975 | 12-29-2015 | Data Entry at intake: Special Handling-resource report was not selected, Unknown perp with relationship listed as "unknown" in | xx | | |

| REDACTED | REDACTED | 6985386 | 3/8/2015 | Data entry at intake: Not coded as special handling. Relationships coded as biological parent, other, and other relative | xx | | |
| REDACTED | REDACTED | 6975747 | 3/2/2015 | Data entry at intake: Not coded as special handling and relationships are other and biological parent | xx | | |
| REDACTED | REDACTED | 6981119 | 03-04-2015 | Data entry at intake: Not coded as special handling. Relationship is other relative | xx | | |
| REDACTED | REDACTED | 6984258 | 3/6/2015 | Data entry at intake: Not coded as special handling. Relationships coded as Biological Parent | xx | | |
| REDACTED | REDACTED | 6981518 | 03-04-2015 | Data entry at intake: Relationship Other Relative. Special handling - out of home setting not on file | xx | | |
| REDACTED | REDACTED | 6979688 | 03-04-2015 | Data entry at intake: Relationships coded as biological parent | xx | | |
| REDACTED | REDACTED | 6983057 | 3/6/2015 | Data entry at intake: Relationships coded as Unknown | xx | | |
| REDACTED | REDACTED | 6986048 | 3/9/2015 | Data entry at intake: Relationships coded Biological and Adoptive parent | xx | | |
| REDACTED | REDACTED | 6989004 | 3/10/2015 | Data entry at intake: Relationships coded Other and Other Relative | xx | | |
| REDACTED | REDACTED | 7307152 | 10-12-2015 | data entry error at intake. Perp relationship in allegation listed as biological parent and other instead of non relative foster parent. | xx | | |
| REDACTED | REDACTED | 7310609 | 10-13-2015 | data entry error at intake. Perp relationship in allegation listed as biological parent instead of resource parent. | xx | | |
| REDACTED | REDACTED | 7304439 | 10-08-2015 | Data entry in case. placement history for child was not up-to-date. At the time of the report, there was no history of the child having been placed in the resource. | xx | | |
| REDACTED | REDACTED | 7381808 | 12-08-2015 | The resource parent was not listed as a perpetrator. The perpetrator was a 16 y/o foster child in the foster home. In reading the description, alleged abuse occurred while the 16 y/o was babysitting | | xx | |
| REDACTED | REDACTED | 7406401 | 12-29-2015 | this report did not involve the resource as a perpetrator, but an ROTC instructor at the child's school. | | xx | |

The report population for SBRD06 is built per the following specs
1. Report Population:
   ~Children in custody who had an investigation where the alleged perpetrator was a caretaker in a resource home or facility
      ~~Child does not need to be in active custody, as it could be a disclosure about a prior incident
      ~~Child does not need to currently be in the resource home or facility, but Placement History should show child was placed at the alleged perpetrator's Home, whether currently or previously
   ~Then check to see if the child has an Intake (report into hotline),  listed as 'special handling-resource report'
   ~Exclude the original intakes (report into hotline) which removed children from their family home
      ~If Intake date is the same date as 'custody start' date, do not include in report (CSF-083013 via phone during validation)

         ~Check to see if the child has an Intake of ANE as a victim. (any child who is a victim will have an allegation attached to their id)
         ~When a child who has an Intake (ie report into hotline-the date of which is located in the field Report Date) has an allegation as a victim, do the following.
   ~Include both victims identified PRE and POST Intake. This includes children who may have been confirmed at intake with a different role and/or children who weren't known at the time of
                                    intake and allegations were added during the investigation
            ~~Check Intake Details and accept for the following
            ~~~Intake is ANE type of report, labeled a 'special handling-resource report'
            ~~~Findings Approved Date is within the reporting period (investigation is complete and the supervisor has approved the results)
            ~~~Intake is linked to a Resource and not a parent or family caretaker. These will include the facility and staff members, (exclude the original intake that brought them into custody)

~~~Include 'out of home resource not on file' (utilized by MCI for some facilities)

~Check for a Maltreatment (Allegation) finding(s) in the Investigation, accept if with or without substantiation. There may be multiple allegations in a single report

~Resource Parent or Staff Member listed as Perpetrator on Person Detail

~All of the above criteria is necessary for the child to show on the report

**Ex. 29B**

**Grace M. Lopes**

| | |
|---|---|
| **From:** | Grace M. Lopes |
| **Sent:** | Monday, July 18, 2016 11:39 AM |
| **To:** | Cindy Greer |
| **Cc:** | Mark Jordan; Mia Caras; 'Janet Maher (jmaher@sparb.org)' |
| **Subject:** | Additional Data Requests for Maltreatment in Care Report/Investigation Review and Validation Project |

Cindy:

I am writing to request the following data related to my office's ongoing assessment of maltreatment in care reporting/investigations pursuant to the May 19, 2016 Stipulated Second Remedial Order:

1. All maltreatment in care reports received by Mississippi Centralized Intake (MCI) via the Hotline Call Center or via e-report between January 1, 2015 and December 31, 2015 with the following data fields for each report:
   a. Intake Id No.
   b. Name of reporter
   c. Date/time report received
   d. Date/ time report entered into MACWIS
   e. Date/time report referred to SIU or county office
   f. Referral made to SIU or county office; if county officer specify which county office
   g. Screen-In / Screen-Out Status
      i. Screening decision by SIU or by county office?; if county office specify which county office
      ii. If screened out, reason(s) for screen out
   h. Date/time assigned to a worker for investigation

2. All maltreatment in care reports referred by SIU to a county office (specify which county office) between January 1, 2015 and December 31, 2015 with the following data fields for each report:
   a. Intake Id No.; and
   b. Date of referral.

3. All maltreatment in care reports referred by a county office (specify which county office) to SIU between January 1, 2015 and December 31, 2015 with the following data fields for each report:
   a. Intake Id No.; and
   b. Date of referral.

4. All HEAT tickets entered by EMU, FCR and SRU between January 1, 2015 and December 31, 2015 related to safety and/or practice issues in maltreatment in care investigations with the following data fields for each HEAT ticket. (Note: This should include all HEAT tickets entered by SRU between January 1, 2015 and December 31, 2015):

   a. Intake Id. No.
   b. Region
   c. County
   d. Date HEAT ticket entered
   e. Date HEAT ticket assigned
   f. Date HEAT ticket resolved
   g. Type of issue (i.e., safety or practice)
   h. Priority status
   i. Reporting source (i.e., EMU, FCR, SRU)

I would appreciate it if we could receive the above-listed information within 10 days or by July 28, 2016. If you have any questions about this matter, or if this proposed deadline cannot be met, please contact me or Mark Jordan. Many thanks, Grace

*Grace M. Lopes*
*Monitor, Olivia Y.*
*1220 19th Street, N.W.*
*Suite 500*
*Washington, D.C. 20036*
*202.232.8311*

*This email and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately, destroy this email, and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**Ex. 30**

## Maltreatment Reports and Investigations Involving Children in Care
### Prepared by the Office of the Court Monitor based on MDCPS Data

*Data Source: MDCPS Custom MACWIS Report No. MWZ1271 cover ing the period January 1, 2015 - December 31, 2015 submitted on July 6, 2016 and August 25, 2016.*

### 1. Key Summary of Maltreatment Reports Screened in for Investigations

◆ There were a total of **1,130 reports of maltreatment regarding incidents that occurred in 2015 involving children in custody**.  Of those, **757 were screened in for investigation ( 67%)**, while the other **373 (33%), were screened out and closed at intake**.  Of the 757 screened in reports, **680 were initially identified to involve children in custody** and 77 were determined initially to involve children not in custody at the time of the alleged maltreatment.

◆ The number of monthly intake reports involving children in custody ranged between 73 and 119 with an average of **94 per month** in 2015.  The number of reports screened in for investigations ranged between 52 and 77 with an average of **63 per month**.

◆ The Court Monitor initially determined that 680 screened-in reports involved children in custody.  They included a total of **1510 individual allegations** as some reports involved more than one child and/or more than one type of allegation.  **Of those 1,510 allegations,** 192 (**13%**) were substantiated following investigations. [Note:  Eight additional reports resulting in MIC investigations were identified based on a subsequent data submission from defendants.]

◆ A total of 110 unique reports (**16%** of 680 reports) had at least one allegation **substantiated** following investigation.

◆ The 680 reports with the 1510 allegations involved a total of **921 unique children** in custody.

◆ Of the 921 unique children reported, **160 children were victims** in at least one **substantiated** maltreatment allegation.



| Reason for Screen-Out | Number |
|---|---|
| ANE Report not Docu'd | 220 |
| Duplicate Report | 105 |
| Out of Home Setting | 18 |
| One Child Injuring Another | 8 |
| Inappro. Sexual Contact | 6 |
| Misuse of Assistance | 6 |
| 18 years or older | 3 |
| Other | 7 |
| **Total** | **373** |

**Maltreatment Reports Involving Child in Custody (CY2015)**

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Screened Out | 22 | 18 | 27 | 34 | 35 | 35 | 52 | 35 | 28 | 37 | 21 | 29 | 373 | 31 |
| Screened In | 55 | 62 | 64 | 77 | 64 | 54 | 67 | 74 | 47 | 73 | 52 | 68 | 757 | 63 |
| Total | 77 | 80 | 91 | 111 | 99 | 89 | 119 | 109 | 75 | 110 | 73 | 97 | 1130 | 94 |

| Description | Total | Substantiated | |
|---|---|---|---|
| Total Number of **Unique Reports** Screened-in for Investigations **Initially Identified to Involve Children In Custody** | 680* | 120 | 18% |
| Total Number of **Individual Allegations** for 680 Screened-in Reports | 1510 | 192 | 13% |
| Total Number of **Unique Children** Involved in at least One Allegation | 921 | 160 | 17% |

*Excludes the eight reports involving children in custody discovered in defendants' August 2016 data submission.

## 2. Timeliness of Initiation and Completion of MIC Investigations

- Of the 680 MIC Investigations, **91%** were **initiated within 24 hours of intake.**
- **87%** of MIC investigations were **completed with approved findings within 30 days of intake.**
- **82%** of MIC investigations were **both initiated within 24 hours AND completed with approved findings within 30 days** of intake.
- The **average duration** of the 680 MIC investigations from intake to approval of investigation findings was **29 days.**
- **Eight** investigations were completed **in more than 90 days**, including **one investigation** completed in **268 days (9 months).**
- Investigations conducted by **SIU investigations were initiated and completed timely at a significantly higher rate (89%)** than those conducted by non-SIU investigators (**25%**).



| Interval Between Intake and Investigation Completion With Approved Findings | Number of Reports | Percent |
|---|---|---|
| <=30 Days | 590 | 87% |
| >30 Days and <=60 Days | 76 | 11% |
| >60 Days and <=90 Days | 6 | 1% |
| >90 Days | 8 | 1% |
| Total | 680 | 100% |
| Average Duration of Investigations | 29 Days | |

| Investigator Type | Total Number of Reports | Initiated Within 24 Hours | | Completed Within 30 Days | | Initiated Within 24 Hours and Completed Within 30 Days | | At Least 1 Substantiated Allegation | |
|---|---|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Number | Percent | Number | Percent |
| SIU Investigator | 602 | 580 | 96% | 555 | 92% | 537 | 89% | 95 | 16% |
| Non-SIU Investigator | 76 | 39 | 51% | 33 | 43% | 19 | 25% | 14 | 18% |
| SIU Supervisor | 2 | 1 | 50% | 2 | 100% | 1 | 50% | 1 | 50% |
| **Grand Total** | **680** | **620** | **91%** | **590** | **87%** | **557** | **82%** | **110** | **16%** |

**3. Allegation Type**

- More than **nine out of ten** investigations involved allegations including **physical neglect and/or physical abuse**.
- **Physical neglect (18%)** and **medical neglect (17%)** were most frequently substantiated MIC allegations.

| Number/Percent of Reports Involving Each Allegation Type | | | Substantiation Rates of Individual Allegations | | | |
|---|---|---|---|---|---|---|
| Allegation Type | Reports Including Allegation Type | | Allegation Type | Total Number of Allegations** | Substantiated Allegations | |
| | Number | Percent of total reports* | | | Number | Rate by Allegation |
| Emotional Abuse/Neglect | 152 | 22% of 680 | Emotional Abuse/Neglect | 243 | 31 | 13% of 243 |
| Medical Neglect | 38 | 6% of 680 | Medical Neglect | 42 | 7 | 17% of 42 |
| Physical Abuse | 342 | 50% of 680 | Physical Abuse | 458 | 30 | 7% of 458 |
| Physical Neglect | 397 | 58% of 680 | Physical Neglect | 662 | 118 | 18% of 662 |
| Sexual Abuse or Exploitation | 83 | 12% of 680 | Sexual Abuse or Exploitation | 105 | 6 | 6% of 105 |
| *Physical Abuse and/or Neglect* | *621* | *91% of 680* | **Total** | **1510** | **192** | **13% of 1510** |

* MIC reports frequently involve more than one type of allegation or multiple allegations of the same type involving more than one child victim. The percentages indicate the proportion of the 680 investigated reports that include (but are not necessarily limited to) each individual allegation type.

** MIC reports frequently include multiple children and/or multiple allegations against individual children.  The totals in the column are the sum of all individual allegations for each alleged victim child in all 680 investigated MIC reports.

**4. Alleged Victim Children and Their Placements at the Time of the Alleged Maltreatment**

- Two out of three reports **(65%) involved only one alleged victim** child
- One out of three **(35%) involved two or more  alleged victim children**.
- A majority of children were in a licensed foster home or facility at the time of the report, but about **4% were with non-licensed providers**.

| Number of Alleged Victim Children per Report | Number of Reports | Percent of Total (680) | Total Number of Children* |
|---|---|---|---|
| One Child | 444 | 65% | 444 |
| Two Children | 135 | 20% | 270 |
| Three Children | 66 | 10% | 198 |
| Four Children | 25 | 4% | 100 |
| Five Children | 9 | 1% | 45 |
| Seven Children | 1 | 0% | 7 |
| **Total** | **680** | **100%** | **1064** |
| *Average Number of Alleged Victims per Report:* | | ***1.6*** | |

* The totals in the column reflect the sum of children associated with each individual report.  If a child is involved in more than one report, s/he is counted separately and only once for each report (i.e., the child is counted only once even if there are multiple allegations for an individual report).  Thus, the totals do not reflect the count of unique children (921) nor the sum of individual allegations (1,510).

| Type of Resource Home at the Time of Report | | Number of Children* | Percent |
|---|---|---|---|
| Adoptive Home | | 8 | 0.8% |
| Traditional Foster Home | | 413 | 38.8% |
| Therapeutic Foster Home | | 38 | 3.6% |
| Relative | Licensed Foster Home | 178 | 16.7% |
| | Expedited Pending | 113 | 10.6% |
| | **Not-Licensed** | **24** | **2.3%** |
| Group Home or Residential Facility | | 99 | 9.3% |
| Own Home (Parents/Other Caretaker) | | 137 | 12.9% |
| **Other Non Licensed Provider** | | **14** | **1.3%** |
| Emergency Shelter | | 14 | 1.3% |
| Other (Acute Care, Runaway, etc.) | | 26 | 2.4% |
| **Total** | | **1064** | **100%** |

**5. Timeliness of MIC Investigations and Substantiation Rates by Region and County**

- Region **VII-West** had the **largest number of investigated MIC reports** involving children in custody
- The number of reports originating in **Regions VII-West, III-South, and VI (295)** comprised about **44%** of the total completed MIC Reports.
- MIC Reports from Region **VII-East had the lowest rate** of timely investigations (both Initiated timely and completed timely) at **64%**, followed by **Region VII-West (70%)**.
- MIC Investigations from reports originating in **VII-West** and **Region VI** had the **highest substantiation rates**.
- **Harrison** county and **Hinds** county each had a total of 80 completed MIC investigations.
- Reports originating from four counties (**Harrison, Hinds, Jackson, and Hancock**) comprised about **36%** of the total investigated MIC reports.
- Of the counties with at least 10 reports investigated, **Harrison** county had the **highest substantiation rate (33%** of 80) whereas **Madison, Simpson, Lee, Hancock, Lauderdale, and Washington** had the **lowest** substantiation rates at below 10%.
- Investigations into MIC reports from **Rankin, Hancock and Jackson** counties had the **lowest timely completion rates at 58%, 62% and 65%**.

| Timeliness of Investigations and Substantiation Rates by Region | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Region | Total Number of Reports Investigated | Initiated Within 24 Hours | | Completed Within 30 Days | | Initiated Within 24 Hours and Completed Within 30 Days | | At Least 1 Allegation Substantiated | |
| | | Number | Percent | Number | Percent | Number | Percent | Number | Rate |
| I-N | 48 | 47 | 98% | 45 | 94% | 44 | 92% | 9 | 19% |
| I-S | 66 | 62 | 94% | 62 | 94% | 59 | 89% | 11 | 17% |
| II-E | 28 | 28 | 100% | 27 | 96% | 27 | 96% | 3 | 11% |
| II-W | 22 | 21 | 95% | 22 | 100% | 21 | 95% | 3 | 14% |
| III-N | 39 | 36 | 92% | 35 | 90% | 32 | 82% | 3 | 8% |
| III-S | 87 | 74 | 85% | 77 | 89% | 69 | 79% | 12 | 14% |
| IV-N | 27 | 27 | 100% | 25 | 93% | 25 | 93% | 3 | 11% |
| IV-S | 43 | 41 | 95% | 35 | 81% | 34 | 79% | 3 | 7% |
| V-E | 43 | 42 | 98% | 42 | 98% | 41 | 95% | 4 | 9% |
| V-W | 16 | 15 | 94% | 15 | 94% | 14 | 88% | 2 | 13% |
| VI | 86 | 77 | 90% | 76 | 88% | 71 | 83% | 20 | 23% |
| VII-E | 53 | 44 | 83% | 35 | 66% | 34 | 64% | 8 | 15% |
| VII-W | 122 | 106 | 87% | 94 | 77% | 86 | 70% | 29 | 24% |
| **Total** | **680** | **620** | **91%** | **590** | **87%** | **557** | **82%** | **110** | **16%** |

| County with At Least 10 Reports | Total Number of Reports Investigated | Initiated Within 24 Hours | | Completed Within 30 Days | | Initiated Within 24 Hours and Completed Within 30 | | At Least 1 Allegation Substantiated | |
|---|---|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Number | Percent | Number | Rate |
| Harrison | 70 | 70 | 88% | 64 | 80% | 60 | 75% | 26 | 33% |
| Hinds | 80 | 67 | 84% | 71 | 89% | 63 | 79% | 10 | 13% |
| Jackson | 46 | 39 | 85% | 31 | 67% | 30 | 65% | 6 | 13% |
| Hancock | 42 | 36 | 86% | 30 | 71% | 26 | 62% | 3 | 7% |
| Lauderdale | 24 | 22 | 92% | 20 | 83% | 19 | 79% | 2 | 8% |
| Marion | 23 | 21 | 91% | 18 | 78% | 17 | 74% | 7 | 30% |
| Simpson | 20 | 20 | 100% | 19 | 95% | 19 | 95% | 1 | 5% |
| Forrest | 19 | 15 | 79% | 15 | 79% | 14 | 74% | 3 | 16% |
| Lamar | 17 | 16 | 94% | 16 | 94% | 15 | 88% | 3 | 18% |
| Pontotoc | 17 | 16 | 94% | 16 | 94% | 15 | 88% | 3 | 18% |
| Lee | 16 | 15 | 94% | 16 | 100% | 15 | 94% | 1 | 6% |
| Pearl River | 16 | 15 | 94% | 16 | 100% | 15 | 94% | 4 | 25% |
| DeSoto | 15 | 15 | 100% | 14 | 93% | 14 | 93% | 4 | 27% |
| Rankin | 12 | 10 | 83% | 9 | 75% | 7 | 58% | 2 | 17% |
| Madison | 11 | 11 | 100% | 11 | 100% | 11 | 100% | 0 | 0% |
| Washington | 11 | 11 | 100% | 11 | 100% | 11 | 100% | 1 | 9% |
| Alcorn | 10 | 10 | 100% | 9 | 90% | 9 | 90% | 3 | 30% |
| Leflore | 10 | 10 | 100% | 9 | 90% | 9 | 90% | 1 | 10% |
| Lowndes | 10 | 10 | 100% | 9 | 90% | 9 | 90% | 2 | 20% |
| Stone | 10 | 9 | 90% | 10 | 100% | 9 | 90% | 3 | 30% |
| Union | 10 | 9 | 90% | 9 | 90% | 9 | 90% | 2 | 20% |
| *Other Counties (Combined)** | *181* | 173 | 96% | 167 | 92% | 161 | 89% | *23* | *13%* |
| **Total** | **680** | **620** | **91%** | **590** | **87%** | **557** | **82%** | **110** | **16%** |

**Timeliness of Investigations and Substantiation Rates by County**

* This includes all other counties, each of which had fewer than ten reports involving children in custody during 2015.

**Ex. 31**



| JOB NAME | : SBRD06 |
| PROGRAMS | : SBRD06 |
| REPORT | : SBRD06 |

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
Rate of Maltreatment in Care
Report Period: 1/1/2015 -- 12/31/2015

| DATE | : 1/5/2016 |
| TIME | : 4:26:24AM |
| PAGE | : Page 113 of 113 |
| RUN DATE | : 1/5/2016 |
| RUN TIME | : 4:26:24AM |

| Region | County | Child ID / Child Name | COS County | Intake ID | Report Date | Incident Date | Date Investigation Findings Approved | Investigation Findings | Count | List of Maltreatments | Allegation of Maltreatment Finding |
|---|---|---|---|---|---|---|---|---|---|---|---|

### MS. State Summary

| | Year # | Year % | Cur Month # | Cur Month % |
|---|---|---|---|---|
| Children in Custody : | 7,758 | | 5,103 | |
| Unique Children in Custody during the Reporting Period : | 7,743 | | 5,103 | |
| Number of Investigations Experienced by Children : | 490 | | 47 | |
| Unique Children in ANE : | 442 | | 26 | |
| Children with more than one Substantiated Investigation : | 1 | | 0 | |
| Number of Investigations (Unique Count) : | 298 | | 21 | |
| Allegations of Maltreatment Findings : | 975 | | 47 | |
| Substantiated Allegations of Maltreatment Findings : | 95 | | 4 | |
| Substantiated Investigations : | 38 | 12.75% | 4 | 19.05% |
| Children with a Substantiated Investigation : | 69 | 0.89% | 4 | 0.08% |
| Children in Custody with Substantiated Investigations-Report Date in PUR : | 38 | 0.49% | 1 | 0.02% |
| Children in Custody with Substantiated Investigations-Incident Date in PUR : | 69 | 0.89% | 1 | 0.02% |

Note: This report is organized by the COR of the child ( as of the end of the report period). As such, the investigations listed may or may not have occured in that county.

END OF REPORT

MSA II.C.2

**Ex. 32**

# Maltreatment in Care Reviews (MIC Reviews) and Related Corrective Action
### Prepared by the Office of the Court Monitor based on MDCPS Data

*Data Sources: Custom MACWIS Report No. 1271 provided by defendants covering the period January 1, 2015 - December 31, 2015 and Monthly MIC Review Reports, Report No. MRIP4MRR, covering the period January 1, 2015 - July 31, 2016.*

| Summary of MIC Reviews and SRU Findings | | | |
|---|---|---|---|
| **Total MIC Intakes Received in CY2015 and Screened In and Investigated** | | **680** | |
| Investigations Reviewed by SRU as Reported by SRU Monthly Reports Through 7/31/16 | | 594 | 87.4% of 680 |
| Investigations Reviewed by SRU within 30 days of completed investigation | | 592 | 87.1% of 680 |
| **Issues or Deficiencies** | Investigations With 1 or More Safety Issues Identified | 82 | 14% of 594 |
| | Investigations With 1 or More Case Practice Deficiencies Identified | 67 | 11% of 594 |
| | **Investigations With 1 or More Safety Issues and/or Case Practice Deficiencies Identified (HEAT)** | **113** | **19% of 594** |
| *Investigations With All Corrective Action Completed* | | *96* | *85% of 113* |
| *Investigations With No Corrective Actions Taken* | | *17* | *15% of 113* |









| Timeliness of MIC Review and Resolution of Deficiencies | Safety Issues | Case Practice Deficiencies | Safety Issues and/or Case Practice Deficiencies |
|---|---|---|---|
| Total with Deficiencies Identified | 82 | 67 | 113 |
| Issue Resolved | 71 | 63 | 103 |
| *Resolved Timely* (Number) | *52* | *54* | *83* |
| *(Percent out of total w/ deficiencies)* | *63%* | *81%* | *73%* |
| *Resolved but Not Timely* | *19* | *9* | *20* |
| **Not Initiated and/or Not Resolved** | **11** | **4** | **10** |

*\* <=5 days for safety issues and <=20 days for case practice deficiencies*

**Percentage of Investigations With Safety Issues and Case Practice Deficiencies Identified by Region**

| Region | Investigations Reviewed | Investigations with HEAT Tickets | | Rate |
|---|---|---|---|---|
| I NORTH | 46 | 5 | | 11% |
| I SOUTH | 62 | 10 | | 16% |
| II EAST | 24 | 4 | | 17% |
| II WEST | 20 | 5 | | 25% |
| III NORTH | 31 | 6 | | 19% |
| III SOUTH | 74 | 9 | | 12% |
| IV NORTH | 27 | 4 | | 15% |
| IV SOUTH | 36 | 8 | | 22% |
| V EAST | 39 | 5 | | 13% |
| V WEST | 12 | 4 | | 33% |
| VI | 78 | 13 | | 17% |
| VII EAST | 41 | 18 | | 44% |
| VII WEST | 104 | 22 | | 21% |
| Total | 594 | 113 | | 19% |

**Percentage of Investigations With Safety Issues and Case Practice Deficiencies Identified by County**

| County w/ >10 Investigations | Investigations Reviewed | Investigations with HEAT Tickets | | Rate |
|---|---|---|---|---|
| Hinds | 72 | 9 | | 13% |
| Harrison | 70 | 13 | | 19% |
| Jackson | 36 | 15 | | 42% |
| Hancock | 36 | 9 | | 25% |
| Marion | 25 | 6 | | 24% |
| Simpson | 21 | 1 | | 5% |
| Pontotoc | 17 | 6 | | 35% |
| Forrest | 17 | 2 | | 12% |
| Lauderdale | 16 | 5 | | 31% |
| Lamar | 15 | 1 | | 7% |
| Madison | 14 | 1 | | 7% |
| Desoto | 14 | 1 | | 7% |
| Lee | 13 | 0 | | 0% |
| Alcorn | 11 | 2 | | 18% |
| Pearl River | 10 | 2 | | 20% |
| *Other Counties* | *207* | *40* | | *19%* |
| Total | 594 | 113 | | 19% |

**Ex. 33**

# Mississippi Centralized Intake (MCI) Reports:
## Results of September 2016 Case Record Review
### Prepared by the Office of the Court Monitor

| Summary of MCI Reports Reviewed | |
|---|---|
| Total number MCI reports reviewed | **32 Reports\*** |
| Total number of reports made through e-report | 4 Reports |
| Total number of MCI calls reviewed | 28 Calls |

*\*Universe from July 1, 2015 - December 31, 2015*



| Time from Report to Entry in MACWIS |
|---|
| Average: 1 hr 46 min |
| Median (50%): 1 hr 1 min |
| Minimum: 12 min |
| Maximum: 22 hr 11 min\* |

*\*    This was an outlier. The next longest time from report to entry into MACWIS excluding this report was 2 hours and 50 minutes.*



| Did MCI worker do the following? | Applicable Total | Yes | | No | | Note |
|---|---|---|---|---|---|---|
| | | Number | % | Number | % | |
| Appropriate tone and content | 28 | 24 | 86% | 4 | 14% | *Excludes e-reports* |
| Accurately identified as a 'resource report' | 32 | 22 | 69% | 10 | 31% | |
| Informed the reporter of MDCPS' responsibilities | 28 | 9 | 32% | 19 | 68% | *Excludes e-reports* |





**Was the following information fully and accurately documented on the Child Abuse Intake Form? (Q9)**

N=15*

■ Yes  ■ No  ■ Reporter Did Not or Could Not Provide

| Category | Yes | No | Reporter Did Not or Could Not Provide |
|---|---|---|---|
| Reporter information | 87% | 7% | 7% |
| Alleged victim information | 93% | 7% | |
| Physical description/address of home | 67% | 20% | 13% |
| Primary caretaker information | 93% | 7% | |
| Relative/witness/secondary caretaker information | 73% | 20% | 7% |
| Other household members | 73% | 13% | 13% |
| Whether the family is of Native American descent | 87% | 7% | 7% |
| Family's primary language | 100% | | |
| Alleged perpetrator information | 87% | 13% | |
| Description of maltreatment for each child | 80% | 20% | |
| Date alleged victim(s) last seen by reporter | 73% | 27% | |
| Whether reporter discussed allegations w/ alleged perpetrator(s) | 67% | 33% | |
| Alleged perpetrator's response to discussion of allegations | 70% | 20% | 10% |
| Safety concerns for the MDCPS staff responding | 87% | 13% | |
| Additional pertinent information | 80% | 20% | |

\* Child Abuse Intake Forms were available for only 15 cases. The Monitor was informed that intake forms for the period from July 1, 2015 through September 14, 2015 had been destroyed during a clean up effort earlier this year.



**Was the following information fully and accurately transcribed in MACWIS? (Q10)**

N=19

■ Fully and accurately transcribed  ■ Inaccurately transcribed  ■ Omitted from MACWIS

| Category | Fully and accurately transcribed | Inaccurately transcribed | Omitted from MACWIS |
|---|---|---|---|
| Reporter information | 95% | 5% | |
| Alleged victim information | 95% | 5% | |
| Physical description/address of home | 100% | | |
| Primary caretaker information | 100% | | |
| Relative/witness/secondary caretaker information | 100% | | |
| Other household members | 100% | | |
| Whether the family is of Native American descent | 100% | | |
| Family's primary language | 100% | | |
| Alleged perpetrator information | 94% | 6% | |
| Description of maltreatment for each child | 89% | 11% | |
| Date alleged victim(s) last seen by reporter | 100% | | |
| Whether reporter discussed allegations w/ alleged perpetrator(s) | 91% | | 9% |
| Alleged perpetrator's response to discussion of allegations | 78% | 11% | 11% |
| Safety concerns for the MDCPS staff responding | 100% | | |
| Additional pertinent information | 94% | | 6% |

| No | Question in Instrument | Number | | | | Percent | | |
|----|------------------------|--------|--|--|--|---------|--|--|
| Q6 | Which of the following did the MCI worker collect or attempt to collect from the reporter? | Yes | Attempted | No | Total Applicable | Yes | Attempted | No |
| | Reporter information | 24 | 4 | 0 | 28 | 86% | 14% | 0% |
| | Alleged victim information | 28 | 0 | 0 | 28 | 100% | 0% | 0% |
| | Physical description/address of home | 22 | 1 | 5 | 28 | 79% | 4% | 18% |
| | Primary caretaker information | 26 | 1 | 1 | 28 | 93% | 4% | 4% |
| | Relative/witness/secondary caretaker information | 24 | 1 | 3 | 28 | 86% | 4% | 11% |
| | Other household members | 22 | 4 | 2 | 28 | 79% | 14% | 7% |
| | Whether the family is of Native American descent | 26 | 1 | 1 | 28 | 93% | 4% | 4% |
| | Family's primary language | 28 | 0 | 0 | 28 | 100% | 0% | 0% |
| | Alleged perpetrator information | 27 | 1 | 0 | 28 | 96% | 4% | 0% |
| | Description of maltreatment for each child | 28 | 0 | 0 | 28 | 100% | 0% | 0% |
| | Date alleged victim(s) last seen by reporter | 16 | 1 | 11 | 28 | 57% | 4% | 39% |
| | Whether reporter discussed allegations w/ alleged perpetrator(s) | 19 | 1 | 8 | 28 | 68% | 4% | 29% |
| | Alleged perpetrator's response to discussion of allegations | 15 | 1 | 3 | 19 | 79% | 5% | 16% |
| | Safety concerns for the MDCPS staff responding | 26 | 1 | 1 | 28 | 93% | 4% | 4% |
| | Additional pertinent information | 27 | 0 | 1 | 28 | 96% | 0% | 4% |

| No | Question in Instrument | Number | | | Percent | |
|----|------------------------|--------|--|--|---------|--|
| | | Yes | No | Total | Yes | No |
| Q7 | Did the MCI worker provide an opportunity for the reporter to offer additional information? | 28 | 0 | 28 | 100% | 0% |
| Q8 | Is there a completed Intake form for this report? | 15 | 13 | 28 | 54% | 46% |

| No | Question in Instrument | Number | | | | Percent | | | |
|----|------------------------|--------|--|--|--|---------|--|--|--|
| Q9 | Were the following areas accurately documented by the Intake worker on the paper child intake form, including accurately reporting whether the reporter could not or refused to provide the information? | Yes | No | Reporter Did Not or Could Not Provide | Reporter Refused to Provide | Yes | No | Reporter Did Not or Could Not Provide | Reporter Refused to Provide |
| | Reporter information | 13 | 1 | 0 | 1 | 87% | 7% | 0% | 7% |
| | Alleged victim information | 14 | 1 | 0 | 0 | 93% | 7% | 0% | 0% |
| | Physical description/address of home | 10 | 3 | 2 | 0 | 67% | 20% | 13% | 0% |
| | Primary caretaker information | 14 | 1 | 0 | 0 | 93% | 7% | 0% | 0% |
| | Relative/witness/secondary caretaker information | 11 | 3 | 1 | 0 | 73% | 20% | 7% | 0% |
| | Other household members | 11 | 2 | 2 | 0 | 73% | 13% | 13% | 0% |
| | Whether the family is of Native American descent | 13 | 1 | 1 | 0 | 87% | 7% | 7% | 0% |
| | Family's primary language | 15 | 0 | 0 | 0 | 100% | 0% | 0% | 0% |
| | Alleged perpetrator information | 13 | 2 | 0 | 0 | 87% | 13% | 0% | 0% |
| | Description of maltreatment for each child | 12 | 3 | 0 | 0 | 80% | 20% | 0% | 0% |
| | Date alleged victim(s) last seen by reporter | 11 | 4 | 0 | 0 | 73% | 27% | 0% | 0% |
| | Whether reporter discussed allegations w/ alleged perpetrator(s) | 10 | 5 | 0 | 0 | 67% | 33% | 0% | 0% |
| | Alleged perpetrator's response to discussion of allegations | *7* | *2* | *1* | *0* | 70% | 20% | 10% | 0% |
| | Safety concerns for the MDCPS staff responding | 13 | 2 | 0 | 0 | 87% | 13% | 0% | 0% |
| | Additional pertinent information | 12 | 3 | 0 | 0 | 80% | 20% | 0% | 0% |

| No | Question in Instrument | Number | | | | | Percent | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Fully and accurately transcribed | Inaccurately transcribed | Omitted from MACWIS | N/A | Total Applicable | Fully and accurately transcribed | Inaccurately transcribed | Omitted from MACWIS |
| Q10 | Select the choice which describes the transfer of information from the paper Child Intake Form or the e-report into MACWIS: | | | | | | | | |
| | Reporter information | 18 | 0 | 1 | 0 | 19 | 95% | 0% | 5% |
| | Alleged victim information | 18 | 1 | 0 | 0 | 19 | 95% | 5% | 0% |
| | Physical description/address of home | 15 | 0 | 0 | 4 | 15 | 100% | 0% | 0% |
| | Primary caretaker information | 18 | 0 | 0 | 1 | 18 | 100% | 0% | 0% |
| | Relative/witness/secondary caretaker information | 16 | 0 | 0 | 3 | 16 | 100% | 0% | 0% |
| | Other household members | 13 | 0 | 0 | 6 | 13 | 100% | 0% | 0% |
| | Whether the family is of Native American descent | 18 | 0 | 0 | 1 | 18 | 100% | 0% | 0% |
| | Family's primary language | 18 | 0 | 0 | 1 | 18 | 100% | 0% | 0% |
| | Alleged perpetrator information | 16 | 1 | 0 | 2 | 17 | 94% | 6% | 0% |
| | Description of maltreatment for each child | 17 | 2 | 0 | 0 | 19 | 89% | 11% | 0% |
| | Date alleged victim(s) last seen by reporter | 12 | 0 | 0 | 7 | 12 | 100% | 0% | 0% |
| | Whether reporter discussed allegations w/ alleged perpetrator(s) | 10 | 0 | 1 | 8 | 11 | 91% | 0% | 9% |
| | Alleged perpetrator's response to discussion of allegations | 7 | 1 | 1 | 2 | 9 | 78% | 11% | 11% |
| | Safety concerns for the MDCPS staff responding | 17 | 0 | 0 | 2 | 17 | 100% | 0% | 0% |
| | Additional pertinent information | 16 | 0 | 1 | 2 | 17 | 94% | 0% | 6% |

| No | Question in Instrument | Number | | | Percent | |
|---|---|---|---|---|---|---|
| | | Yes | No | Total | Yes | No |
| Q12 | Did the MCI worker accurately indicate the report as a 'Resource Report'? | 22 | 10 | 32 | 69% | 31% |
| Q13 | During the call, did the MCI worker inform the reporter of MDCPS' responsibilities? | 9 | 19 | 28 | 32% | 68% |

**Ex. 34**

# Screen-Out Reports: Results of September 2016 Case Record Review
## Prepared by the Office of the Court Monitor

| Summary of Sample Review | | Note | |
|---|---|---|---|
| Total number screened-out MIC reports | **40** Reports | 20% of 202 (universe from July 1, 2015 - December 31, 2015) | |
| Total number of children included in reports | 58 Children | Number of unique children: 54 (four children each were included in two different screened-out reports) | |
| Ratio: Number of children per report | 1.5 Children per Report | | |

| Time in Placement at the Time of Report | | |
|---|---|---|
| | Average | 17 Months |
| | Median | 14 Months |
| | Minimum | 1 Day |
| | Maximum | 7.6 Years |

| Reason for Screen-Out Documented in MACWIS | Number | Percent |
|---|---|---|
| Child was not in custody | 2 | 5% |
| Duplicate report | 12 | 30% |
| Did not involve behavior or non-action by placement provider | 21 | 53% |
| Did not meet legal definition of maltreatment | 5 | 13% |
| **Total** | **40** | **100%** |

| Adequacy of Screen-Out Decision | Number | Percent |
|---|---|---|
| Screen-out decision was appropriate | 31 | 78% |
| Should have been screened in | 9 | 23% |
| **Total** | **40** | **100%** |

| Reviewed by MDCPS State Level QI | Number | Percent |
|---|---|---|
| Reviewed by QI | 14 | 35% |
| Not Reviewed by QI | 26 | 65% |
| **Total** | **40** | **100%** |

| Interval Between Report and of Screen-Out Decision | |
|---|---|
| Screen-Out decision for all of the 40 reports was approved by supervisor | |
| Interval Between Report to Approval on Screen-Out Decision | Average: 2 days |
| | Median: 1 day |



**Reason for Screen-Out as Documented in MACWIS (n=40)**

- Child was not in custody — 5%
- Duplicate report — 30%
- Did not involve behavior or non-action by placement provider — 53%
- Did not meet legal definition of maltreatment — 13%



**Adequacy of Screen-Out Decision (n=40)**

- Screen-out decision was appropriate — 78%
- Should have been screened in — 23%



**Reviewed by MDCPS State Level QI (n=40)**

- Reviewed by QI — 35%
- Not Reviewed by QI — 65%

| No | Question in Instrument | | Number | Percent | Note |
|----|------------------------|---|--------|---------|------|
| Q7 | Were all the Intake screens in MACWIS completed in their entirety by the Intake worker? | Yes | 38 | 95% | |
| | | No | 2 | 5% | * Allegations/living arrangements not complete |
| | | | | | * Not all children listed and discrepancy in address info. |
| Q8 | Did the allegation(s) involve a child who was **in the custody of MDCPS** at the time of the alleged maltreatment? | Yes | 38 | 95% | of 40 |
| | | **No** | **2** | **5%** | * The child was reunified w/ mother prior to incident and allegation was against the mother. |
| | | | | | * The child entered care after the incident. |
| Q9-Q10 | Based on documentation in the record, was the report screened out because it was deemed to be a **duplicate report**? | **Yes** | **12** | **30%** | of 40 |
| | Same alleged victim(s) | | 10 | | |
| | Same alleged perpetrator(s) | | 11 | | |
| | Same type(s) of alleged child maltreatment | | 9 | | |
| | Same incident | | 8 | | |
| | *All of above* | | *7* | | Same alleged victim(s), perpetrator(s), type(s) of maltreatment & incident |
| Q11 | Was the report screened out because the allegation(s) did not involve behavior or non action by a resource parent or facility staff? | **Yes** | **21** | **53%** | of 40 |

| No | Question in Instrument | | Number | Percent | Note |
|---|---|---|---|---|---|
| Q13 | Was the report screened out because allegations did not meet the legal definition of maltreatment (abuse or neglect)? | Yes | 5 | 13% | of 40 |
| Q14 | *Does the evidence in MACWIS support the response to the screening question concerning whether there was an allegation that met the legal definition of an abused or neglected child?* | No | 2 | | Out of 5 (Q13) - One case (#7301243) was screened out based on an 8 year old saying she received her medication, not by discussing with the teacher or resource parent; the other case (#7208332) had multiple children with serious allegations (*i.e.*, rape) at stake and should have been screened in. |
| Q16 | Based on documentation in the record, indicate which entity made the decision to screen out the report. | MCI | 0 | | |
| | | SIU | 38 | | |
| | | County | 2 | | None of these were referred to SIU or considered for referral. |
| Q19 | Was the decision to screen out the report supported by the documentation in the record? | Yes | 31 | 78% | of 40 |
| | | No | 9 | 23% | One or more below is checked: Inadequate decision. |
| | *No, allegation(s) met the legal definition of maltreatment (abuse or neglect)* | | 3 | | |
| | *No, allegation(s) involved action or inaction by a resource parent, facility staff or occurred in the resource home or placement facility* | | 4 | | |
| | *No, allegation(s) did not involve a duplicate report* | | 5 | | |
| | *No, allegation did not involve a resource parent but still should have been screened in.* | | 1 | | |
| Q20 | Was the decision to screen out the report of alleged maltreatment of a child in custody reviewed by the MDCPS state level QI review process? | Yes | 14 | 35% | out of 40 |
| | | No | 26 | 65% | |
| Q21 | *Was the decision to screen out the report validated by the MDCPS state level QI review process?* | Yes | 13 | 93% | *out of 14* |
| | | No | 1 | 7% | |

**Ex. 35**

**Intake, Investigation, MIC Review, Licensure:  Results of September 2016 Case Record Review**
**Prepared by the Office of the Court Monitor**

| Summary of Sample Reviewed | Total | Substantiated | |
|---|---|---|---|
| Number of screened-in MIC intake reports reviewed | 85 | | |
| (Q10) *Review NOT completed** | *11* | | |
| **Number of intakes/investigations reviewed** | **74** | **8** | **11%** |
| Unique children involved in at least one allegation | **113** | **12** | **11%** |
| Number of individual allegations | **170** | **12** | **7%** |

*\* The full case review was not conducted if the allegation did not involve the resource parent or the child was not in care at the time of the incident.*

| Type of Report to MCI (Q12) | Number | Percent |
|---|---|---|
| Hotline Call | 63 | 85% |
| E-Report | 11 | 15% |
| Total | 74 | 100% |

| Number/Percent of Reports Involving Each Allegation Type | | | Substantiation Rate of Individual Allegations | | | |
|---|---|---|---|---|---|---|
| Allegation Type | Reports by Allegation | | Allegation Type | Total Number of Allegations** | Substantiated Allegations | |
| | Number | Percent of total reports* | | | Number | Rate by Allegation |
| Emotional Abuse/Neglect | 17 | 23% of 74 | Emotional Abuse/Neglect | 22 | 4 | 18% of 22 |
| Medical Neglect | 4 | 5% of 74 | Medical Neglect | 4 | 0 | 0% of 4 |
| Physical Abuse | 48 | 65% of 74 | Physical Abuse | 66 | 4 | 6% of 66 |
| Physical Neglect | 41 | 55% of 74 | Physical Neglect | 66 | 3 | 5% of 66 |
| Sexual Abuse or Exploitation | 9 | 12% of 74 | Sexual Abuse or Exploitation | 12 | 1 | 8% of 12 |
| *Physical Abuse and/or Neglect* | *68* | *92% of 74* | **Total** | **170** | **12** | **7% of 170** |

*\* Many intake reports involved more than one type of allegation or allegations of the same type involving more than one child victim. This is the percentage of the total reports reviewed (74).*

*\*\* Some reports had more than one allegation for more than one child. This is the sum of all individual allegations for each alleged child victim.*

| Type of Placement at the Time of Report (Q6) | | Number | Percent |
|---|---|---|---|
| Traditional Foster Home | | 31 | 42% |
| Therapeutic Foster Home | | 7 | 9% |
| Relative | Licensed Foster Home | 10 | 14% |
| | Expedited Pending | 6 | 8% |
| | **Not-Licensed** | **4** | **5%** |
| Residential Treatment Facility | | 7 | 9% |
| Group Home | | 5 | 7% |
| Own Home (Parents) | | 2 | 3% |
| **Other Non Licensed Provider** | | **1** | **1%** |
| Emergency Shelter | | 1 | 1% |
| **Total** | | **74** | **100%** |

| Reporter (Q4) | Number | Percent |
|---|---|---|
| Mandated/Required Reporter | 56 | 76% |
| Biological Parent | 2 | 3% |
| Family Member (Adult) | 2 | 3% |
| Child | 1 | 1% |
| Other | 3 | 4% |
| Anonymous | 10 | 14% |
| Total | 74 | 100% |

| Entity Notified of Intake and Assigned Investigator | Notified to (Q17) | | Investigator (Q21) | |
|---|---|---|---|---|
| | Number | Percent | Number | Percent |
| Special Investigation Unit (SIU) | 58 | **78%** | 72 | **97%** |
| County | 2 | 3% | 2 | 3% |
| Both of the above | 14 | **19%** | | 0% |
| **Total** | **74** | 100% | **74** | 100% |

| Q22/Q23 Priority Decision | Total Number of Reports | Priority Decision was Not Adequate (Q23) | | Initiated* within 24 hrs | | Average/Median Length of Initiation | |
|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Average | Median |
| Immediate | 5 | 0 | 0% | 5 | 100% | 3hr 44m | 3hr 27m |
| Within 24 Hrs | 69 | 7 | 10% | 56* | 81% | 29hr 17m | 21hr 56m |
| **Total** | **74** | **7** | **9%** | **61** | **82%** | **27hr 33m** | **21hr 1m** |

*     Includes two cases where the investigator attempted to contact the alleged victim child(ren) within 24 hours.

| Timeliness of Investigation | Total Number of Reports | Initiated within 24 hrs | | Completed within 30 days (Q259) | | Average/Median Length of Investigation | | Initiated within 24 Hrs & Completed within 30 days | |
|---|---|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Average | Median | Number | Percent |
| Substantiated | 8 | 8 | 100% | 8 | 100% | 29 days | 28 days | 8 | 100% |
| Unsubstantiated | 66 | 53 | 80% | 60 | 91% | 29 days | 28 days | 49 | 74% |
| **Total** | **74** | **61** | **82%** | **68** | **92%** | **28 days** | **28 days** | **57** | **77%** |

| Q229 Interviewed all non-victim children in private | Applicable Total | Yes (All Interviewed) | | No (Not all interviewed) | | Unable to determine | |
|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Number | Percent |
| | 38 | 26 | 68% | 10 | 26% | 2 | 5% |

| Physical Premises of the Placement | | Applicable Total | Yes | | No | |
|---|---|---|---|---|---|---|
| | | | Number | Percent | Number | Percent |
| Q231 | Viewed the physical premises of the placement | 74 | 67 | 91% | 7 | 9% |
| Q232 | Completed a narrative describing the physical environment | 74 | 61 | 82% | 13 | 18% |
| Q233 | Narrative provides information relevant to the child(ren)'s needs for safety/well-being | 74 | 48 | 65% | 26 | 35% |

| Q234 Collateral Contacts | Applicable Total | Yes | | Attempted | | No | |
|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Number | Percent |
| **Interviewed the following persons** | | | | | | | |
| Current resource specialist/licensing staff | 63 | 46 | 73% | 11 | 17% | 6 | 10% |
| Other persons/personnel in the home or facility | 56 | 42 | 75% | 2 | 4% | 12 | 21% |
| **Obtained information from the following persons** | | | | | | | |
| The source of the intake report | 64 | 55 | 86% | 6 | 9% | 3 | 5% |
| Former MDCPS staff involved with the alleged child victim | 40 | 9 | 23% | 2 | 5% | 29 | 73% |
| Other children who may have information relevant to the investigation (Previously in the placement) | 18 | 7 | 39% | 0 | 0% | 11 | 61% |

| Follow-up Review by Placement Type | | Applicable Total | Yes | | No | |
|---|---|---|---|---|---|---|
| | | | Number | Percent | Number | Percent |
| | **Family-Based Home** | **62** | | | | |
| Q237 | Reviewed MDCPS Case Records | 48 | 37 | **77%** | 11 | **23%** |
| Q238 | Reviewed Previous MIC Reports | 43 | 39 | **91%** | 4 | 9% |
| | **Facility** | **12** | | | | |
| Q239 | Reviewed Resource Records | 12 | 8 | **67%** | 4 | **33%** |
| Q240 | Reviewed Resource Policy | 12 | 4 | **33%** | 8 | **67%** |

| Q241/Q242 Removal of Children in Placement | Decision (Q241) | | Disagree with Decision (Q242) | |
|---|---|---|---|---|
| | Number | Percent | Number | Percent |
| All Children Removed | 4 | 6.1% | 1 | **25%** of 4 |
| Some Victim Children Removed and Others Remained | 3 | 4.5% | 1 | **33%** of 3 |
| All Victim-Children Removed but Non-Victim Children Remained | 7 | 10.6% | 0 | **0%** of 7 |
| All Children Remained | 26 | 39.4% | 4 | **15%** of 26 |
| No Documentation By COR Worker Concerning Placement Decision* | 26 | 39.4% | 5 | **19%** of 26 |
| **Applicable Total** | 66 | 100% | 11 | **17%** of 66 |
| *N/A (Children Already Left the Placement)* | *8* | | *2* | **25%** of 8 |

*While there was no documentation by the COR worker concerning the placement decision, the reviewer disagreed with the apparent decision to leave the child in the placement in five instances.*

| Safety Assessment and Safety Plan (Q243-Q250) | Applicable | Yes | | No | |
|---|---|---|---|---|---|
| | Total | Number | Percent | Number | Percent |
| Q243  Safety assessment narrative done within 7 days from report | 74 | 42 | 57% | 32 | 43% |
| Q244  Investigator discussed child's safety w/ supervisor within 7 days | 74 | 12 | 16% | 62* | 84% |
| Q245  Resource Safety and Risk Assessment completed | 74 | 71 | 96% | 3 | 4% |
| Q247  Safety plan needed | 74 | 12 | 16% | 62 | 84% |
| Q248  Safety plan developed | 12 | 7 | 58% | 5 | 42% |
| Q249  Safety plan developed and addressed all the safety issues present | 7 | 4 | 57% | 3 | 43% |
| Q250  Safety plan developed and fully implemented | 7 | 5 | 71% | 2 | 29% |

*   *Includes 13 cases that had documentation suggesting that the investigator discussed the children's safety with supervisor, but AFTER 7 days.*

| Risk Rating | | No/Low | Medium | High | Not Doc'd | Total |
|---|---|---|---|---|---|---|
| Q251  Final risk rating in Resource Safety and Risk Assessment | Number | 61 | 11 | 1 | 1 | 74 |
| | Percent | 82% | 15% | 1% | 1% | 100% |

| Q252  **Concerns about the quality** of safety assessment narrative and responses documented in safety and risk assessment tool | | |
|---|---|---|
| | Number | Percent |
| Safety Assessment Narrative only | 9 | |
| Safety and Risk Assessment tool only | 11 | |
| Both | 16 | |
| Concerns about either/both | 36 | 50% |
| No concerns | 36 | 50% |
| Total | 72 | 100% |
| *N/A (Neither available)* | 2 | |

| **Q253 Sufficient information** gathered to address the allegations and assess whether or not the child(ren)'s **safety, risk, and well-being** needs are being met | | | | |
|---|---|---|---|---|
| Total | Yes | | No | |
| Applicable | Number | Percent | Number | Percent |
| 74 | 50 | 68% | 24 | 32% |

| Q254 Investigation | Investigation Findings | | Policy Violation | |
|---|---|---|---|---|
| Findings | Number | Percent | Number | Rate |
| Substantiated | 8 | 11% | 4 | 50% of 8 |
| Unsubstantiated | 66 | 89% | 12 | 18% of 66 |
| **Total** | 74 | 100% | 16 | 22% of 74 |

| Q263 Investigation Quality | Number | Percent |
|---|---|---|
| Completely | 10 | 14% |
| Substantially | 29 | 39% |
| Marginally | 27 | 36% |
| Not at all | 8 | 11% |
| Total | 74 | 100% |

| Q262 Findings Supported by Documentation | Applicable Total | All Findings Supported | | Some but Not All | | NOT Supported | |
|---|---|---|---|---|---|---|---|
| | | Number | Percent | Number | Percent | Number | Percent |
| Substantiated | 8 | 7 | 9% | 0 | 0% | 1 | 13% |
| Unsubstantiated | 66 | 47 | 64% | 6 | 9% | 13 | 20% |
| Total | 74 | 54 | 73% | 6 | 8% | 14 | 19% |

| Q256    COR worker contacts in each month if child remained in placement post investigation | | | | | | |
|---|---|---|---|---|---|---|
| Visit Frequency | Number | | | Percent | | |
| | 1st Month | 2nd Month | 3rd Month | 1st Month | 2nd Month | 3rd Month |
| None | 7 | 6 | 10 | 8% | 7% | 12% |
| Once | 12 | 16 | 10 | 13% | 18% | 12% |
| Twice | 44 | 54 | 45 | 49% | 62% | 55% |
| Three Times | 19 | 8 | 12 | 21% | 9% | 15% |
| Four Times or More | 8 | 3 | 5 | 9% | 3% | 6% |
| Applicable Total* | 90 | 87 | 82 | 100% | 100% | 100% |
| Seen Twice or More Total | 71 | 65 | 62 | 79% | 75% | 76% |

    **\*** *Total number of children remaining in placement after investigation during the respective timeframe.*

| Licensure Activities | | Applicable Total | Yes | | No | | Unable to Determine | |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Number | Percent | | |
| Q236 | Resource worker accompanied investigator to resource home to assess possible policy/licensure violations | 62 | 32 | 52% | 30 | 48% | | |
| Q269 | Conducted licensure investigation (on-site inspection) | 74 | 13 | 18% | 61 | 82% | | |
| Q271 | Licensing violation found | 13 | 2 | 15% | 11 | 85% | | |
| | Policy violation found | 13 | 10 | 77% | 3 | 23% | | |
| | Corrective action plan (CAP) required | 13 | 6 | 46% | 7 | 54% | | |
| | License revoked | 13 | 0 | 0% | 13 | 100% | | |
| | Any other action taken? | 13 | 9 | 69% | 4 | 31% | | |
| Corrective Action Plan (CAP) on Resource Home/Facility | | Applicable Total | Yes | | No | | Unable to Determine | |
| | | | Number | Percent | Number | Percent | | |
| Q272 | CAP Developed | 13 | 6 | 46% | 7 | 54% | | |
| Q273 | CAP Developed and Satisfied | 6 | 3 | 50% | 3 | 50% | | |
| Q274 | CAP Implemented within Time Frame | 6 | 4 | 67% | 2 | 33% | | |
| Q275 | Home/facility closed to new placements during investigation* | 74 | 22 | 30% | 52 | 70% | | |
| Q276 | New placement made during investigation | 74 | 2 | 3% | 60 | 81% | 12 | 16% |

*Because of how MACWIS indicates a placement is closed during a pending investigation, the reviewer could not determine with certainty whether the home was closed during the pendency of the investigation in 52 instances.*

| Safety Review Unit (SRU) Review on Safety and Practice Issues | Applicable | **Yes** | | No | | Note |
|---|---|---|---|---|---|---|
| | Total | Number | Percent | Number | Percent | |
| **Q277** SRU review conducted | 74 | 71 | 96% | 3 | 4% | |
| *Review done within 30 days from investigation completion* | 74 | 63 | 85% | **11** | **15%** | 5 of 11 reviewed after 6 mths |
| **Q278** **Safety issue** identified | 71 | 6 | 8% | 65 | 92% | |
| **Q279** Corrective action identified for victim children | 6 | 5 | 83% | **1** | **17%** | |
| **Q280** Non-victim children in the home/facility | 6 | 2 | 33% | 4 | 67% | |
| **Q281** Corrective action for non-victim children in home/facility | 2 | 0 | 0% | **2** | **100%** | |
| **Q282** Corrective action entered in HEAT | 6 | 5 | 83% | **1** | **17%** | |
| Corrective action completed | 5 | 5 | 100% | 0 | 0% | |
| Safety issue corrective action completed within 5 days | 5 | 4 | 80% | 1 | 20% | |
| **Q283** **Practice issue** identified | 71 | 7 | 10% | 64 | 90% | |
| **Q284** Corrective action or practice issue identified | 7 | 2 | 29% | **5** | **71%** | |
| Practice issue corrective action completed within 20 days | 2 | 2 | 100% | 0 | 0% | |
| **Q287** Any additional **safety** issue that were **NOT identified** | 74 | **15** | **20%** | 59 | 80% | |
| **Q286** Any additional **practice** issue that were **NOT identified** | 74 | **42** | **57%** | 32 | 43% | |
| **Q288** **All actions** to ensure the **safety/well-being** of child(ren) taken | 74 | 47 | 64% | **27** | **36%** | |