THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JAMES D. JOHNSON, as next friend to**  **PLAINTIFFS**
**OLIVIA Y.,** *et al*.

**vs.**                                   **CIVIL ACTION NO.: 3:04-CV-251-TSL-FKB**

**PHIL BRYANT, as Governor**              **DEFENDANTS**
**of the State of Mississippi,** *et al.*

_____

### STIPULATED THIRD REMEDIAL ORDER
_____

As contemplated by Paragraph 6 of the July 23, 2015 Agreed Order Continuing the Hearing on Plaintiffs' Renewed Motion for Contempt (the "Agreed Order") [Dkt. No. 664 at 3-4], the Court has been advised that the parties have negotiated this Stipulated Third Remedial Order ("STRO") based on the recommendations of Public Catalyst and the provisions of the December 22, 2015 Interim Remedial Order ("IRO") [Dkt. No. 671], and the May 19, 2016 Stipulated Second Remedial Order ("SSRO") [Dkt. No. 694].

Whereas, Defendants do not contest a finding of non-compliance as of the date of this agreement with the Modified Mississippi Settlement Agreement and Reform Plan ("MSA") [Dkt. No. 571] currently in effect; and

Whereas, the parties stipulate that Defendants do not currently have the capacity to comply with the MSA; and

Whereas, it is the intent of the parties that the Mississippi Department of Child Protection Services ("MDCPS") engage in a period of capacity building, with the assistance of Public Catalyst. Having reviewed this STRO as well as the Agreed Order, IRO and the SSRO the Court orders as follows:

1. Defendants do not contest a finding of noncompliance with the MSA through the date of the signing of this Agreement and for Period 5. Defendants' noncompliance with the MSA, Period 3 and 4 Implementation Plans, as well as the Period 5 Implementation Plan, will be a sufficient basis for the Plaintiffs to submit evidence and argument to the Court concerning any available remedy at the remedial hearing, in the event a remedial hearing is held, including the creation of a

receivership. The Defendants reserve the right to present evidence and argument in defense against or in favor of any remedy, except that Defendants may not argue that the finding of noncompliance, rather than contempt, legally precludes the imposition of a receivership.

2.      Agreed Order, IRO and SSRO Provisions Pending

The provisions of the Agreed Order, IRO and SSRO are incorporated in this STRO as if stated in full herein. To the extent that those provisions have not yet been fully implemented, Defendants are ordered to implement the provisions of those three Orders during the duration of this STRO, including but not limited to:

   a. Complete the creation and implementation of a fully functional child welfare agency, MDCPS, which is independent of, although housed within, the Mississippi Department of Human Services, not later than July 1, 2018;

   b. MDCPS shall continue to maintain and staff a second Deputy Director for Field Operations position, or equivalent title/position, within MDCPS to ensure adequate management, supervision and support of the MDCPS Regional Directors;

   c. Not later than December 31, 2016, MDCPS shall fully implement the provisions of the priority hiring plan set forth in the Recruitment, Hiring and Retention ("RHR") Plan submitted to Public Catalyst on May 25, 2016, and not later than July 1, 2017, fully implement all remaining provisions of the RHR;

   d. Not later than December 31, 2016, MDCPS shall complete the requirements of producing a better resourced MDCPS Field Operations team in the State Office whose sole task is to provide the regions more robust and continuous support, guidance and accountability in the areas of foster care, adoption and child protective services; not later than February 15, 2017, Public Catalyst will certify whether Defendants have completed these requirements;

   e. Not later than December 31, 2016, MDCPS shall complete the allocation of Personnel Identification Numbers (PINS) for adequate administrative staff for each region to each Regional Director, to support the administrative work in that region, including staff specifically assigned to develop human resources, obtain sufficient facilities, equipment, data, flexible funds and services; not later than February 15, 2017, Public Catalyst will certify that Defendants have completed this allocation.

   f. Not later than February 15, 2017, Public Catalyst will certify whether State Office staff who are responsible for foster care and adoption program functions have been moved to MDCPS Field Operations.

    g. All newly hired caseworkers will be equipped with smart phones and/or tablets prior to receiving a caseload.

    h. Not later than October 15, 2016, Defendants shall provide the first annual schedule for procurement of and implementation of the Comprehensive Child Welfare Information System (CCWIS) system, to replace MACWIS.

    i. By December 31, 2017, the Defendants shall determine whether to pilot a targeted, county-based privatization of child welfare services.

    j. MDCPS shall, not later than January 31, 2017, submit a recommendation for amendment of the applicable court rules to make MDCPS a party to proceedings involving children in MDCPS' custody that concern the issues of child custody, termination of parental rights and adoption.

3. Worker and Supervisor Qualifications
    a. MDCPS shall hire caseworkers who have, at minimum, a bachelor's degree in social work or a related human services degree. Public Catalyst shall review and determine which degrees qualify as related human services degrees.

    b. MDCPS shall hire or promote to the position of caseworker supervisor only persons who have, at minimum, the following qualifications:
        1) A master's degree in social work or related human services degree and two years of experience working with children and families, preferably in foster care.
        2) A bachelor's degree in social work or related human services degree with three years of experience working with children and families, preferably in foster care.

4. Training
    a. MDCPS shall maintain a Training Unit headed by a qualified director of training. The Training Unit shall have sufficient staffing, funding, and other resources to assure that comprehensive child welfare training is provided to enable all caseworkers, supervisors, and other child welfare agency employees to comply with the relevant mandates of this STRO, MDCPS policy, and reasonable professional standards.

    b. MDCPS caseworkers shall receive a minimum of 270 hours of pre-service training, which includes instructional training and supervised field training, and may include E-Learning. Any E-learning training is subject to the approval of Public Catalyst. Pre-service training provided during an MDCPS internship or previous employment with MDCPS may be counted towards the pre-service training requirement if that training is substantially similar to the training provided to new hires.

    c. MDCPS caseworker trainees, as part of pre-service training, may be assigned specific tasks or activities in connection with a case that is the primary responsibility of an experienced caseworker and may, under appropriate supervision, be assigned responsibility for a "training caseload" with progressively responsible caseload assignment:

        1) Upon successful completion of a competency test, reviewed and approved by Public Catalyst and administered subsequent to the trainee's fourth week of work, up to 5 cases may be assigned with supervisor approval;

        2) Final caseloads may be assigned after successful completion of pre-service training, all competency-based tests and a satisfactory review by the training team;

        3) All competency tests, modifications to competency tests, and the standards for passing competency tests, must be reviewed and approved by Public Catalyst.

    d. MDCPS caseworker supervisors, within 90 days of hire or promotion, shall receive a minimum of 40 hours of training, directed specifically at the supervision of child welfare caseworkers.

5. Caseloads and Case Services
    a. Defendants shall submit a plan, including supporting data and information, by December 15, 2016, and have it approved by Public Catalyst, to:

        1) measure caseloads according to the new weighted caseload standards set forth in Exhibit "A" of this STRO, using the results of the September 2016 caseload audit;

        2) streamline in-home (prevention/protection) and out-of-home (placement) case service types; and

        3) streamline the County of Responsibility/County of Service case types

    b. Public Catalyst will establish performance targets for MDCPS caseload compliance by March 1, 2017, and report on compliance to the parties every three (3) months.

    c. Defendants will comply with the caseload compliance performance targets established by Public Catalyst.

    d. Defendants shall achieve full caseload compliance with the new weighted caseload standards by December 31, 2017.

6. Placements
   a. Unlicensed Placements
      1) Backlog of Unlicensed Homes

      Of those 496 unlicensed homes in the backlog identified by Public Catalyst on August 15, 2016, the Defendants shall review and determine on a priority basis, within the time frames stated below, whether these homes meet MDCPS licensing standards.

      a) Defendants shall prioritize the review of the 496 unlicensed homes in the backlog by first reviewing all those unlicensed homes in the backlog with children placed under six (6) years of age and who are in the custody of MDCPS (Priority One), followed by all those unlicensed homes in the backlog with children who, as of November 1, 2016 and/or February 1, 2017, have not been visited by MDCPS for 60 days or more (Priority Two).

      b) The prioritized review, described in Paragraph 6.a.1)a) above, shall result in no fewer than 164 of the 496 unlicensed homes but all of the children in Priority One in the backlog being reviewed by December 31, 2016, and with all children in Priority Two, no fewer than 332 of the 496 unlicensed homes in the backlog being reviewed by March 31, 2017.

      c) By June 30, 2017, all of the 496 unlicensed homes in the backlog, identified by Public Catalyst on August 15, 2016, shall either be licensed, closed or remain open and unlicensed with an order of the court as defined in Paragraph 6.a.3)a).

      d) Public Catalyst, in collaboration with MDCPS, will conduct a quality review of a sample of the files reviewed in the backlog of 496 unlicensed homes by March 31, 2017.

      2) New Placements into Unlicensed Homes or Facilities: August 16, 2016 to June 30, 2017.

      a) Public Catalyst shall, by December 31, 2016, approve the licensure process used by MDCPS for new placements into unlicensed homes and facilities, including the emergency placement checklist safety standards, the home study and related licensure forms and documents, time frames for completing the licensure process, and percentages for licensure of unlicensed placements made during the period.

      b) Public Catalyst, in collaboration with MDCPS, will conduct periodic quality reviews of the expedited relative placement licensure process during the pendency of this STRO.

    c) Beginning with placements made on July 1, 2017, and thereafter, all homes and facilities with children placed who are in the custody of MDCPS shall be timely licensed and subject to the licensure process approved by Public Catalyst on December 31, 2016.

  3) For Unlicensed Placements that Cannot Meet Licensure Standards

  No child shall remain in a home or facility determined to be unable to meet MDCPS licensing standards, absent an order by a state court with jurisdiction over child custody directing the placement of the child into a specific unlicensed placement. Defendants shall not be held accountable for a state court's order as long as MDCPS documents that it presented information to the court that the home has not met licensing standards, the reasons why the home has not and cannot meet licensing standards, and that a licensed home or facility or, one time only, an appropriate expedited relative placement is available.

    a) Safety Issues:  If it is determined that an unlicensed home or facility is unable to meet MDCPS licensing standards due to a safety issue, Defendants shall take all reasonable efforts to immediately ensure the child's safety and to remove the child, including, if required by the court, seeking an emergency court order. Defendants shall not be held accountable for the state court's order as long as MDCPS documents that it presented information to the court that the home or facility has not met licensing standards and that a licensed home or facility or an expedited relative placement is available. If the child is not in imminent danger, MDCPS shall implement a safety plan and within five (5) calendar days, either cure the licensing deficiency if feasible, or move the child to a licensed home or facility or, one time only, an appropriate expedited relative placement.

    b) Non-safety Issues:  If MDCPS determines a home to be unable to meet MDCPS licensing standards due to a non-safety issue, Defendants shall, within 30 calendar days of that determination, either cure the licensing deficiency if feasible, or move the child to a licensed home or facility or, one time only, an appropriate expedited relative placement.

    c) Public Catalyst will certify to the parties every three months, commencing on April 1, 2017, MDCPS's performance on the Placements requirements of Paragraph 6.

b. Family Based Placements
  1) Number of Available Licensed Placements
  Based on the results of a data driven needs assessment that shall be completed by MDCPS in January 2017, Public Catalyst, in conjunction with MDCPS, shall establish

statewide and county performance requirements and time periods by February 1, 2017 for new home licensure in calendar year 2017. Public Catalyst will report to the parties MDCPS' progress on achieving the performance requirements. The Defendants shall meet the performance requirements, including time periods.

   2) Additional Licensed Placements
   Not later than February 1, 2017, MDCPS shall begin to implement the plan to recruit and retain additional licensed placements and shall maintain the additional number of total placements, as necessary during the applicability of this STRO.

7. Child Safety and Critical Indicators
   a. Maltreatment in Care
      1) Public Catalyst will certify the baseline for maltreatment in care of children who are in the custody of MDCPS.

      2) The rate of maltreatment in care shall be calculated as follows: Of all children in foster care during the period, what percent were victims of substantiated maltreatment by a foster parent or facility staff member. A child is counted as having been maltreated in foster care if the perpetrator of the maltreatment was identified as a foster parent or a residential facility staff member. The numerator shall consist of all children whose maltreatment is substantiated during the period. The denominator shall consist of all children placed in foster care during the period. The observation period is six (6) months. The initial reporting period for this indicator will be April 1, 2016-September 30, 2016.

   b. Provision of Health Care to Children
      1) Public Catalyst will complete a sample case record review by October 31, 2017, to assess the extent to which follow-up medical care is identified as needed and provided to children who are in the custody of MDCPS.

   c. Permanency
      1) Public Catalyst will collaborate with MDCPS to certify the baseline for the following child permanency indicators:

         a) Of all children in foster care on the first day of a 12-month period, which shall commence on October 1st of any given year, the percent of children discharged from foster care to permanency within 12 months. The numerator is the number of children in the denominator who discharged from foster care to permanency within 12 months. The initial reporting period for this indicator will be October 1, 2016-September 30, 2017;

      b) Of all children in foster care on the first day of a 12-month period, which shall commence on October 1st of any given year, the percent of children discharged from foster care to permanency within 13-23 months. The numerator is the number of children in the denominator who discharged from foster care to permanency within 13-23 months. The initial reporting period for this indicator will be October 1, 2016-September 30, 2017;

      c) Of all children in foster care on the first day of a 12-month period, which shall commence on October 1st of any given year, the percent of children discharged from foster care to permanency in 24 months and more. The numerator is the number of children in the denominator who discharged from foster care to permanency in 24 months and more. The initial reporting period for this indicator will be October 1, 2016-September 30, 2017.

2) For all of the foregoing indicators, permanency is defined as: discharges from foster care to reunification with the child's parents or primary caregivers; durable legal custody; guardianship; or adoption. MDCPS will report, separately, discharges by permanency type and by time to permanency.

3) For all children in the care of MDCPS who were adopted in 2016, Public Catalyst will collaborate with MDCPS to certify the data used to calculate the average and median lengths of time to adoption finalization for each child from the date on which that child's adoption goal was established, and from the date on which the child's parents' rights were terminated.

d. Child Visitation
1) Public Catalyst will certify the baseline percent of MDCPS worker-child visits which will be calculated by dividing the total number of actual worker-child visits required in a six-month period by the total number of required worker-child visits during that period. The calculation will include all children who were in care for at least one full month during the period.

2) Public Catalyst will certify the baseline data on the distribution of required worker-child visits during a six-month period selected by Public Catalyst during the pendency of this STRO, to include the percent of children who received two required visits, one visit or zero visits on a monthly basis and for the period. For children who received no worker visits during any full month in the period, MDCPS shall provide, and Pubic Catalyst shall authenticate, data on the distribution of the last worker visit for those children.

e. MDCPS will submit proposed policy changes by January 15, 2017, for Public Catalyst's review and approval, to strengthen and clarify the role of the Special Investigations Unit with respect to screening and investigating maltreatment in care.

f. MDCPS will submit a plan by January 3, 2017, for Public Catalyst's review and approval, to enhance the ongoing quality assessment of, and accuracy of, hotline screening dispositions. Defendants will implement the approved plan.

g. Public Catalyst will assess the quality of hotline screening by June 30, 2017.

h. Once Public Catalyst certifies baseline data from MDCPS for each critical indicator in 7(a) (b) (c) and (d) above, Public Catalyst will continue to certify MDCPS data for each indicator on a semi-annual basis during the period of this STRO in a format to be determined by Public Catalyst and MDCPS. Each of these data indicators will be subject to data quality review.

i. Monitoring under the existing MSA during the period in which the STRO is in effect will be temporarily superseded by the provision of verified data on critical indicators as described in Paragraph 7 of this STRO.

j. Plaintiffs retain the right to seek immediate relief from the Court if any of the data reported on the critical indicators during this period requires the need for additional remedial action by the Court, given the issues raised in the pending contempt motion.

8. Public Catalyst shall, in conjunction with MDCPS, report on a quarterly basis on the Defendants' compliance as to the specific provisions of this Order during the time this STRO remains in effect.

9. This STRO shall remain in effect until December 31, 2017, after which the 2nd Modified Settlement Agreement (MSA) shall go into effect.

10. The remedy phase of the Motion for Contempt shall be continued until the 2nd MSA goes into effect, and may be invoked by Plaintiffs at any point during the period of the STRO, both for violations of the MSA [Dkt. No. 571] previously in effect and for violations of the provisions of this STRO.

SO ORDERED this 19th day of December, 2016.

/s/Tom S. Lee_____
SENIOR DISTRICT JUDGE, TOM S. LEE

**AGREED TO AND APPROVED FOR ENTRY BY: FOR PLAINTIFFS:**

/s/ Marcia Robinson Lowry
Marcia Robinson Lowry (*pro hac vice* MBN 43991)
Sara Robinson-Glasser *(pro hac vice* MBN 47547)
A BETTER CHILDHOOD, INC.
1095 Hardscrabble Road
Chappaqua, NY 10514
Phone: 646.808.7344
Email: mlowry@abetterchildhood.org
srglasser@abetterchildhood.org

Wayne Drinkwater (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY, ARRANT, BOULT & CUMMINGS, LLP
One Jackson Place, Suite 400
Jackson, MS 39201
Phone: 601.948.8000
Email: wdrinkwater@bradley.com
mbentley@bradley.com


**FOR DEFENDANTS:**

/s/ Kenya Key Rachal
Kenya Key Rachal (MBN 99227)
James N. ("Jake") Adams (MBN 101538)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
Post Office Box 14167
100 Vision Drive, Suite 400
Jackson, MS 39211
Phone: 601-351-2400
Email: krachal@bakerdonelson.com

Harold E. Pizzetta, III (MBN 99867)
Assistant Attorney General
General Civil Division
Carroll Gartin Justice Building, 430 High Street
Jackson, MS 39201

# **EXHIBIT A**

Individual DFCS caseworkers with generic caseloads shall not carry a mixed caseload that exceeds 100 percent capacity as calculated by the following weights per case type:

| **Type of Case** | **Standards** | **Weight Per Case – 100% Capacity** |
|---|---|---|
| Child Protection (Investigations Level 2 and 3) | 14 Investigations | 0.0714 |
| Ongoing Foster Care (Placement Responsibility &Service) | 14 Children | 0.0714 |
| Ongoing Foster Care (Placement County of Responsibility) | | 0.0357 |
| Ongoing Foster Care (Placement County of Service) | | 0.0357 |
| In-Home Cases (Protection Responsibility & Service, Prevention Responsibility & Service, and Interstate Compact on the Placement of Children - Incoming) | 17 Families | 0.0588 |
| In-Home Cases (Protection or Prevention County of Responsibility) | | 0.0294 |
| In-Home Cases (Protection or Prevention County of Service) | | 0.0294 |
| Adoption (Adoption County of Service) | 15 Children | 0.0667 |
| New Application Licensing (Resource Inquiry, Interstate Compact on the Placement of Children Application, and Foster Home Study) | 15 Homes | 0.0667 |
| Renewal Licensing (Foster Home Supervision and Foster Home Renewal) | 36 Homes | 0.0278 |