**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

OLIVIA Y., et al.                                                                                    PLAINTIFFS

v.                                                              CIVIL ACTION NO. 3:04CV251LN

HALEY BARBOUR, as Governor of the State of Mississippi, et al.           DEFENDANTS

_____

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MARCH 2017
MOTION FOR AWARD OF CLASS COUNSEL'S FEES AND EXPENSES**
_____

1

## I. INTRODUCTION

In their 2017 Motion for Award of Class Counsel's Fees and Expenses, filed on March 31, 2017, Plaintiffs seek an award of $413,287.00 for attorneys' fees and expenses for the period from December 1, 2015 to November 30, 2016. In support of their 2017 Motion, Plaintiffs demonstrated that 1) the amount of time expended for legal work was reasonable, 2) the hourly rate was *prima facie* reasonable because it was well within both national and local billing rates and had been set by the Court following a motion strongly opposed by Defendants and, 3) all expenses claimed were reasonable and necessarily expended as part of the legal services provided to plaintiff children. In 2016, for far less work than was accomplished during this most recent period, the Court awarded $ 323,248.00 in costs and fees. At that point, for the same billing practices, Defendants did not contest the hours sought by Plaintiffs.

This new motion, seeking fees of $413,287.00 for both lawyers employed by A Better Childhood, and for local counsel at Bradley Arant Boult Cummins LLP ("Bradley Arant") covers a period in which far more work was done than last year and, hopefully, represents what will be the highest point in the amount of work that will have to be done on this case during a one-year period. During this most recent billing period, Plaintiffs' lawyers negotiated four[1] remedial orders and a new 2nd Modified Mississippi Settlement Agreement and Reform Plan and negotiated a complete change in the way child welfare services are provided in Mississippi. In addition, Plaintiffs gave Defendants a year off monitoring to build capacity, Defendants having acknowledged that they currently "lack capacity" (Dkt. No. 713, p. 1) to implement necessary

---

[1] The Interim Remedial Order, (Dkt. No. 671), Second Stipulated Remedial Order (Dkt. No. 694) and Joint Motion for Suspension of Specific Obligations (Dkt. No. 701), were all filed within the billing period. The 2nd Modified Mississippi Settlement Agreement and Reform Plan (Dkt. No. 712) and Third Stipulated Remedial Order (Dkt. No. 713), although filed on December 19, 2016, just two weeks outside the end of the billing period, were both negotiated in full within the most recent billing period.

changes, and brought in a new monitor to work with the state to build the capacity necessary, who will, next year, serve as monitor. Every place else but in this motion, the state acknowledges that these changes are long overdue, and that they herald significant structured improvements which will pay off next year, when the state will be held accountable for finally reforming the state's child welfare system.

In their Response, Defendants do not "take issue with plaintiffs' reasonable hourly rate" (Dkt. No. 722, p. 3) nor have Defendants in their Response disputed the amount claimed by Plaintiffs for expenses. Rather Defendants raise only two arguments, neither of which are supported by the previous precedent in this case or by the law. First, Defendants charge Plaintiffs with seeking a "windfall," rather than reasonable attorneys' fees. First, they argue that Plaintiffs seek payment for non-compensable work and, second, they argue that the number of hours which Plaintiffs billed for various tasks were excessive, *i.e.* "the issues disputed herein relate **only to** the compensability and reasonableness of the hours submitted by Plaintiffs." (*Id.*). (Emphasis added).

Defendants' arguments both minimize and marginalize the efforts of Plaintiffs' counsel during this past year. As the Court is aware, during the previous nine years of monitoring in this lawsuit, Defendants never before contested Plaintiffs' entitlement to expenses and only once before, in 2016, unsuccessfully contested Plaintiffs' entitlement to attorneys' fees.[2] Defendants claim that the

> "only true motion argued before the Court" last year "was an attorneys' fee application and the remainder of the litigation never rose above the negotiation of a modified settlement agreement…" (Dkt. No. 722 p. 3)

is a blatant attempt to make hundreds of attorneys' fee hours, twenty-eight negotiation days, the entry of four separate interim remedial orders and an entirely new 2nd Mississippi Modified

---

[2] Previously, the parties always reached agreement on fees and expenses.

Settlement Agreement into the hum-drum work of a several telephone calls worthy only of a limited amount of compensation. However, that is simply not a correct characterization for this possibly most important year in the life of the *Olivia Y.* case. Although this is the largest fee request that has been made by Plaintiffs' counsel, it will almost surely be the last such costly request, if Defendants actually do perform as the 2nd Modified Mississippi Settlement Agreement and Reform Plan indicates they hope to. Implementation of the 2nd Modified Mississippi Settlement Agreement is moving forward and the parties have already begun the process of quarterly meetings at which the Defendants will report updates and progress. There is still a long road ahead but with the guidance of the Monitor and the Defendants' hard work, the parties hope to keep moving forward toward compliance with the standards. However, for the immediate motion and for the reasons which follow, Defendants' characterizations of the amount and reasonableness of Plaintiffs' billings are incorrect.

### A. The Fee Application As Presented Would Not Give Plaintiffs A Windfall

Defendants claim that the fees claimed will give Plaintiffs a windfall and that because there was no trial and no court appearances during this billing period, the fees claimed are not warranted. Plaintiffs contend that going into court should be the last resort, not the first, and contend that the work accomplished through negotiation and meetings this past year have been a watershed period in the life of the *Olivia Y.* case. There is a new Monitor, an entirely new stand-alone agency has been created; a new Executive Director has been hired; a new management team has been put in place; hundreds of new case workers have come on-board; a new computerized information system is underway; new, lower caseload standards are being used; revised licensing standards are being applied to make foster children safer; and a new MSA has been negotiated – one with which – it is hoped – Defendants can comply. None of this is finished and there are many years of hard work

ahead, but progress has been made as a result of the hard work and long hours spent this past year in negotiations. Plaintiffs' fee request is scarcely a windfall; rather, it is compensation for representation of plaintiff children who now may have a chance to actually receive the benefits to which the court has found them entitled.

### B. The Hours and Rate Dedicated to Plaintiffs Fee Application From 2016 Are Excessive

Unfortunately, one of the things that made the "fees on fees" category on this invoice so high was the approximately one-hundred twenty hours (See Declaration of Sara Robinson Glasser ("Glasser Dec,") ¶ 6, 9, Attachment ("Att.") D) of substantive legal work by three ABC attorneys involved in researching, writing and defending Plaintiffs' motion for legal fees against Defendants' objection to paying them. Defendants now challenge this motion as merely a "routine motion" and claim that the time spent on the motion and the hourly rate for preparing it were excessive. Neither point has merit.

1. <u>The time spent on the motion was necessary</u>

The amount of time spent on the motion was appropriate. This was not a "routine" motion as Defendants claim. After nine years of undisputed billing practice, and failed settlement negotiations, Plaintiffs now had to research, develop a motion, a memorandum of law, draft declarations and attachments for Ms. Lowry, Wayne Drinkwater, Ms. Glasser, Stephen Dixon, a reply, and a proposed order. Ms. Jaffe, a junior staff attorney at ABC, who does not otherwise work on this case, was brought in to assist in developing the law in support of this application. In addition to Ms. Jaffe's time, the lawyers themselves spent time drafting, revising and editing the papers as well. Mr. Drinkwater and Michael Bentley of Bradley Arant expended time as local counsel advising on local rules and on strategy, and Jeannette Altobelli, a Bradley paralegal,

5

assisted with document preparation and filing. Most of the time on the motion, however, was expended by Ms. Glasser and Ms. Jaffe, as can be demonstrated by the hours billed for that task. (*See* Glasser Dec. ¶ 9, Att. D).

Not one minute of that time would have been expended but for Defendants' objection to paying reasonable fees. As the Court is aware, ultimately Defendants' position was found to be meritless; but although the *sole* issue raised by Defendants in opposition to Plaintiffs' motion for legal fees and expenses was the appropriateness of the hourly rate claimed by Plaintiffs' counsel it was not, as Defendants claim, a "routine attorneys' fee motion." (Docket ("Dkt.") No. 722, p. 4). This motion was a departure from more than nine years of billing precedent in which the parties had always agreed on attorneys' fees as well as other aspects of the invoices, including expenses, sufficiency of entries, billing judgment, travel time and costs that were never previously challenged by Defendants at all. The Defendants had the opportunity to raise these issues last year, when they challenged the billing rate; they did not.

2. <u>The hourly rate on the motion was appropriate</u>

Defendants also claim that the hourly rate for work on the motion is too high, calling it a "routine attorneys' fee motion." (Dkt. No. 722, p. 5). However, even a quick glance at Paragraph 6, Glasser Declaration, Attachment, D, demonstrates that Ms. Jaffe, the least expensive lawyer at ABC, spent the lion's share of the time writing the fees' motion, 60 hours. The other lawyers, revising their own declarations and providing input of which only they had knowledge, had to be billed at their own hourly rates. Contrary to Defendants' contention, under these circumstances, there were no other "competent personnel" billing at lower rates who could undertake these tasks. The rate at which ABC billed Ms. Jaffe's time, $220.00 an hour, is thoroughly reasonable. *See* Glasser Dec., ¶ 5, Att. B.

6

### C. A Large Number of Entries Are Vague

Defendants claim that a large number of the time entries fail to show the "who, what and why specifics" as to what legal work the Plaintiffs' attorneys were performing, and should be stricken or deducted for being impermissibly vague. (Docket No. 722, p. 5). Defendants' Exhibit B contains seventy-six entries as proof of the vagueness of the entries. However, out of the seventy-six entries, thirteen are entries involving KR, RF and Chandler (Kenya Rachel, Dewitt "Rusty" Fortenberry -- defense counsel -- and Dr. David Chandler, MDCPS' Executive Director), so presumably Defendants know what those entries concerned. As for the rest of the billing entries, Defendants ignore context. The remaining sixty-three "vague" entries occur in a context of more than one thousand **unchallenged** billing entries spread over an invoice of 53 pages. Defendants criticize other entries as not having the answers to the questions such as "status of what," "what was being negotiated' "who was negotiating?" Defendants cry foul over the lack of detail in the entries but also claim that too much time was spent over all. If more details are added, more time is required. Which way should it be; it cannot be both. Defendants know perfectly well what was going on in all of these calls and conferences: the negotiation and finalization of four interim remedial orders; a joint motion to suspend specific remedial obligations and the planning; discussions and negotiations for all the previsions of a completely new Mississippi Department of Child Protection Services; and 2nd Mississippi Modified Settlement Agreement and Reform Plan, which was filed in December, 2016, and will be billed in the next billing period.

Moreover, no entry was previously criticized for lack of specificity by defense counsel, including in MDCPS's challenge to ABC's fees motion last year. Nor has defense counsel ever asked for more specificity to be provided in the billing entries. Had counsel done so, ABC surely would have complied. Without further information about why the remaining approximately one

7

thousand billing entries are insufficient, it is disingenuous to claim that this is a valid objection, and that Defendants did not know what work was covered by the entries. The billing already covers 53 pages, and did require a great deal of time to review, exercise billing judgment with regard to all of the entries, and decide what to eliminate.

### D.  Multiple Attorneys Duplicated Work Causing Excessive Fees to Accrue

Defendants challenge the practice of two attorneys working on some of the same tasks and/or issues on this case. For example, they challenge two attorneys talking to each other in a telephone conversation, *see, e.g.* Exhibit C, entry 12/14/12/14, ML (Ms. Lowry) "telephone call with SG (Ms. Glasser) re monitor's rept, t/c/ w/ monitor; defs changes in interim order." Plaintiffs' attorneys needed to confer on many of the proposed changes in various stipulations; attempting to reform an entire public agency is no easy task and there were many conversations weighing the pros and cons of what Defendants proposed and developing counter-proposals.  Throughout this past year, Plaintiffs had extensive conversation, email and conference call communications with both the former monitor, Grace Lopes, and with the consulting group, Public Catalyst, which will become the new monitor, Public Catalyst, in *2018*.  See Glasser Dec. ¶ 7, Att. C. Further examination of Exhibit C echoes the same theme, ML (Ms. Lowry) had telephone calls with SG (Ms. Glasser) and they both have calls with Public Catalyst, the expert team working with Defendants and the then-Monitor, Grace Lopes. Occasionally Plaintiffs' counsel had telephone calls with KR (defense counsel, Ms. Kenya Rachel, or former defense counsel, RF, Rusty Fortenberry).

Defendants' objection is completely at odds with the previous practice between the parties since the inception of this case. Previously, Children's Rights often staffed the *Olivia Y.* case with two or more attorneys without objection and more recently, during 2016, for example, in

preparation for a contempt trial, after notifying defense counsel DeWitt Fortenberry, Plaintiffs brought in another attorney, Stephen Dixon, who did contract work in lining up additional witnesses, as his hours demonstrate. *See* Glasser Dec., ¶ 4, Att. A. The Court awarded Mr. Dixon $ 300 per hour for his hourly rate. (Dkt. No. 691, p. 11). No objection to that arrangement has ever previously been raised. Discussion and consultation between counsel for a party in such a long-running and complex case as *Olivia Y.* is simply a matter of good practice. Moreover, the case has certainly become much more complicated, as this Court is aware, with the recent change in MDCPS leadership, a new monitor and the negotiation of an entirely new MSA. Plaintiffs contend that this objection is not at all well-founded, nor do Plaintiffs believe that Defendants have the right to determine the appropriate amount of representation for plaintiff children.

### E. The Invoice Fails To Display Billing Judgment

Defendants claim that "in the submission of these invoices, Plaintiffs' counsel has "not demonstrated even a trace of billing judgment." (Dkt. No. 722, p. 7). Moreover, Defendants claim that the remedy for failing to exercise billing judgment is a reduction of the hours claimed by a particular percentage. *Green v. Tulane Educational Fund,* 284 F.3d 642, 662 (5th Cir. 2002) requires "documentation of the hours charged, and is usually shown by the attorney writing off unproductive, excessive, or redundant hours." But, in fact, extensive documentation for the hours charged has been provided (53 pages) and Defendants have already complained about the number of "fees on fees" hours which went into the review of the legal services provided for the express purposes of making sure they were not unproductive, excessive or redundant. Defendants cannot have it both ways; they want Plaintiffs to exercise billing judgment but then cannot complain that Plaintiffs are spending time reviewing the hours in order to do so. In the present case, the exercise of billing judgment in carefully preparing bills, reviewing them and eliminating entries resulted in

a total of only 53 non-motion hours over the entire 12-month billing period (Defendants' Exhibit H), or approximately 4.5 hours per month of "fees on fees" billing.

Defense counsel also criticize the amount of time spent on travel and have criticized Plaintiffs for not "offering to reduce any of this time." (Dkt. No. 722, p. 8). Plaintiffs have no control over the actual number of hours spent in order to attend necessary negotiations. The hourly rates claimed for travel are already reduced by court order and agreement of the parties to 50% of usual hourly rates and no case law requires more. Those rates were the only ones claimed and have never previously been challenged.

### F. A Paralegal Rate Cannot Be Charged For Clerical and General Overhead Work

Defendants claim that Plaintiffs' paralegal has performed purely "clerical work, such as reporting expenses and producing invoices," but provides no legal support for the claim that these tasks are necessarily secretarial or purely clerical in nature. In fact, they are not. Clerical work is usually tasks such as typing, filing, or receptionist work. By contrast, the ABC paralegal, a college graduate with a paralegal degree:

- interviews sources: "TC w/ source," 12/14/15;
- makes telephone calls: "TC w/ source in MS," 12/02/15;
- generates reports: "Dec '15 Clio time for MS, generated rpt, rev for errors; formats documents and reviews them," 1/28/16, "Rev, format SRO for SG," 9/8/16; and
- conferences with attorneys: "telephone call: w/ SG re edits to MSA," 9/23/16.

(See *Defendants' Exhibit D* for references listed above.)

In *Walter v. U.S. Depart. Of Housing and Urban Development,* 99 F.3d 761, 773 (5th Cir. 1996), the 5th Cir. stated that preparation of documents, conferencing and reviewing documents are customarily billed as paralegal tasks in the Dallas market. *See also Richardson v. Byrd,* 709

F.2d 1016, 1023 (5th Cir. 1983) (paralegals assist lawyers at trial, organize and review class members claims, participate in telephone conferences with lawyers, witnesses, and class members, and perform complex statistical work). Thus, Plaintiffs' paralegal's work fits squarely within the type of work recognized by courts as appropriate for paralegals and her billings are entirely appropriate for that category.

### G. A Lawyer Rate Cannot Be Charged For Paralegal or Clerical Work

Defendants complain that there are billed entries from ABC attorneys which are "obviously secretarial work" charged at senior lawyer rates, citing an entry by Ms. Glasser for "draft transmittal letter re various invoices and new rates." (Docket No. 722, p. 10). Other entries in Exhibit E are referenced including those which cite the tasks of editing, drafting and revision of documents as "clerical, secretarial/paralegal" work and thus inappropriate for billing at an attorney rate. However, it is not the act of writing which characterizes the essence of the task, it is the process itself. To accept Defendants' argument is to accept that every demand letter should be written by a secretary, every contract should be revised by a paralegal and every pleading should be written by a junior associate. The gravity of the work dictates the level of expertise which must be brought to bear; a conclusion which follows from an examination of the letter about which Defendants complain. The letter dated December 12[3], 2015 is a letter drafted for the signature of Ms. Lowry and is not a mere "transmittal" letter. Rather, it is the explanation and cover letter for last year's invoice and it provides an explanation to counsel, DeWitt ("Rusty") Fortenberry, about a change in Plaintiffs' billing rates, as well as the addition of a new lawyer to the case. As the Court will recall, it was precisely that change in billing rates which triggered last year's fee's

---

[3] Incorrectly entered in Plaintiffs' invoice as December 13, 2015, attached to Ms. Glasser's Declaration as Attachment "A."

11

dispute. Thus, it is the content of the document which is all important and which determines at what level the writing and editing must take place, not merely the document's type. Again, Defendants have complained without a basis.

### H. Block Time Entries Should Be Stricken or Reduced

Defendants object to a significant number of Plaintiffs' billing entries in which two or three *related* tasks are grouped together, calling it "block billing." (Exhibit F, Dkt. No. 722, p. 11). There is a significant difference between these grouped entries and block billing.  First, by merely grouping several related tasks together, Plaintiffs are not engaging in traditional block billing. Block billing is a time-keeping method by which each lawyer and legal assistant enters the **total daily time** spent working on a case. *United States ex rel. Cook –Reska v. Community Health Sys. Inc.* (No 15-20312, 5th Cir. March 7, 2016, p. 4, n. 7) (citing *Glass v. United States,* 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (Emphasis added).[4] Rather, in the instant case, a Plaintiffs' attorney groups a few related tasks together, typically consuming no more than an hour or two. The grouped entries show the related nature of the tasks, who did the work, the specific task to which the work was related and the manner in which the work furthered the case objectives. Further, in a billing cycle which covers one year and 53 invoice pages, it is no small savings of time and effort for a reviewer to have one composite entry dealing with grouped tasks rather than four separate item entries to review, each one of which would include repetitive information. Indeed, Defendants' Exhibit F proves the problem with Defendants' own argument: the exhibit consists of 12 pages containing 227 separate entries. If each line item were separated out, and that practice was continued throughout the year-long invoice, the invoice would be so voluminous it would be

---

[4] Even the cases cited above by Plaintiffs like *United States ex rel Cook* do not hold block billing impermissible, not even in its "day-long" iteration.

extremely difficult to review. While possibly not totally ideal, grouping entries, in this particular situation, is the only possible billing format which makes any logistical sense. Further, this type of entry has been used in all other previous invoices for precisely these same reasons and has never been challenged.

### I. Attorneys Should Not Bill the State for Marketing

Defendants argue that 14.06[5] hours spent by Plaintiffs activities relating to the preparation of a press release or conversations between Plaintiffs' counsel and media outlets about developments in the case such as negotiation of the 2nd Modified Mississippi Settlement Agreement and Reform Plan are non-compensable time. Plaintiffs do not agree that preparation of a press release about case activities does not relate directly to representation of the plaintiff class. Information about current case developments is of direct concern to plaintiff class members and next friends and press publication is a far-reaching and inexpensive means of providing this information. Moreover, press publication also informs members of the public and community stake-holders about case news and can prompt sources and stake-holders to share community information with counsel. Further, given that this Court has permitted Plaintiffs not to give formal notice to class members concerning fee applications (Dkt. No. 598) because additional notice would impose undue cost and burden, notice which press publication provides is one inexpensive means of informing plaintiff children about events in the case without imposing additional costs and burden upon them. These modest hours should not be stricken.

### J. The Plaintiffs Should Not Be Awarded Fees for Billing and Reviewing Bills

---

[5] Defendants claim that 14.06 hours, costing approximately $ 4,700, was spent on marketing activities. (Dkt. No. 722, p. 11).

Defendants claim that Plaintiffs should not be awarded fees for preparing and reviewing their fee application, claiming that these costs are considered "overhead" and thus, not compensable (Docket No. 722, p. 12, Exhibit H) citing *In re Bicoastal,* 121 B.R. 653, 656 (M.D. Fla. 1990) however, *In re Bicoastal* does not stand for that proposition. Rather, *Bicoastal,* stands for the proposition that time spent by an attorney reviewing fee compilations to be sure that the hours claimed were accurate, reasonable and necessarily incurred is compensable.

### K. The Court Has Discretion To Make an Across The Board Reduction

Defendants have argued for an across-the-board reduction in Plaintiffs' requested legal fees but no such reduction is warranted. Moreover, an across-the-board reduction, even if one was warranted, casts too wide a net; it would cut all areas of the requested fees, even those which are clearly justified in full. Accordingly, Plaintiffs urge that any reductions, if necessary, be done on a category by category basis.

### L. Defendants Cannot Waive the § 1988 (b) Requirement That Plaintiffs' Attorneys' Fees Must Be Reasonable

Defendants contend, and Plaintiffs agree, that Plaintiffs' fees must meet the requirement of § 1988 of being "reasonable." Plaintiffs have amply demonstrated that they have met this standard. Although the amount sought in this fee application is undeniably large, the amount sought is based on a large amount of work, even larger than the previous year. Last year Plaintiffs sought, and the court awarded, a total of $ 323,248.00 for 960.24 hours of work. This year, Plaintiffs' counsel, both ABC and Bradley Arant, billed approximately 20% more hours, a total of 1205.44 hours, than last year for a total of $413.287.00. Thus, the amount sought, while high, reflects the very significant amount of additional work that was done during this year, will probably not be repeated, and is still within the bounds of "reasonableness" required by § 1988.

## II. CONCLUSION

Under the case law, and the facts, Plaintiffs respectfully request that the Court grant Plaintiffs' 2017 Motion for an award of reasonable fees and expenses and award them $413,287.00 for this billing period.

RESPECTFULLY SUBMITTED, this the 20th day of April 2017.

/s/ W. Wayne Drinkwater_____
W. Wayne Drinkwater, Jr. (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 400
188 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
Email: wdrinkwater@bradley.com
mbentley@bradley.com

Marcia Robinson Lowry (*pro hac vice*)
Sara Robinson Glasser (*pro hac vice*)
A Better Childhood, Inc.
1095 Hardscrabble Road
Chappaqua, NY 10514
Telephone (646) 808-7344
Facsimile: (914) 238-0365
Email: mlowry@abetterchildhood.org
srglasser@abetterchildhood.org

*Plaintiffs' Counsel*

CERTIFICATE OF SERVICE

I hereby certify that April 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will deliver copies to all counsel of record.

/s/W. Wayne Drinkwater
W. Wayne Drinkwater