IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA Y., et al | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:04cv251 TSL-FKB |
| | ) | |
| PHIL BRYANT, as Governor of the | ) | |
| State of Mississippi, *et al.,* | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' MOTION FOR RELIEF
UNDER SECTION 11.2.a. OF THE 2ND
MODIFIED SETTLEMENT AGREEMENT
AND REFORM PLAN AND
RULE 60(b) OF THE FEDERAL RULES OF
CIVIL PROCEDURE**

Pursuant to Section 1.3.a. of the 2nd Modified Settlement Agreement and Reform Plan ("2nd MSA") and Federal Rule of Civil Procedure 60(b), the Defendants[1] move the Court for entry of an Order granting relief from the 90% caseworker caseload requirement in the 2nd MSA. The Defendants also request an evidentiary hearing to present comprehensive evidence in support of the Motion.[2]

---

[1] MDCPS is a crucial state agency that employs over 1600 individuals, has a budget of approximately $200 million and, most importantly, provides services to over 5000 children in custody, manages over 2000 in-home cases, and is conducting over 1500 investigations. MDCPS should not be held in contempt or more absurdly placed in a receivership of undefined scope, and for an indefinite period based on the failure to comply with a 90% caseload metric. Such a result would substantially disrupt the delivery of child protection services in the State of Mississippi. And there is no credible evidence that a Receiver would achieve a 90% caseload metric given current state funding. Furthermore, the Plaintiffs' assertion that "[a]t this juncture a failure to appoint a receiver would amount to judicial acquiescence in the state's continuing failure to meet its legal obligations" is disingenuous. *See* Plaintiffs' Memorandum In Support of the Contempt/Receivership Motion at page 3.

[2] The most efficient manner for the Court to resolve the Plaintiffs' Motion for Contempt and Appointment of a Receiver and conserve resources of the Court and the parties would be to resolve this Motion first.

Because of inadequate funding by the Mississippi Legislature in FY 2018, and the resulting financial crisis[3], and because of the Legislature's decision to fund $23 million less than MDCPS's budget request for FY 2019, the Mississippi Department of Child Protection Services ("MDCPS") does not have the ability to hire and retain the additional caseworkers necessary to meet and maintain a 90% caseload metric[4] until it receives additional funding. However, it is continuing at every level to improve caseworker caseload metrics. Therefore, MDCPS seeks the relief requested in this Motion.

Section 1.3.a. of the 2nd MSA states that "90% of MDCPS caseworkers will have caseloads which do not exceed the [weighted] caseload standards" in the 2nd MSA. Section 5.d. of the Stipulated Third Remedial Order ("STRO") set a target date of December 31, 2017, pursuant to performance targets established by Public Catalyst, the Court Monitor.

Since entry of the 2nd MSA, Defendants have made all reasonable efforts to comply with the 90% caseload metric through a concerted effort to address each variable within the Defendants' control that impacts the standard. Specifically, MDCPS has expanded the resources available to safely maintain children with their families in their own homes, stabilizing families and reducing trauma to the children. MDCPS has also improved efficiency in its preparations for termination of parental rights and adoption, doubling the number of children discharged from custody to adoptive

---

[3] The MDCPS FY 2018 financial crisis is reviewed in depth in the Defendants' Response To The Plaintiffs' Contempt/Receivership Motion.

[4] The 2nd MSA incorporates in Section 1.3 a weighted caseload formula. Under the formula, 90% of all caseworkers must not exceed a maximum weight of 1.0, which is the hypothetical optimal workload capacity. Specific job functions are assigned certain values or weights. For example, each investigation has a weighted value of .0714, each ongoing foster care case is .0714, each in home case is .00588, each adoption case is .0067, each foster home licensure is .0667, and each foster home licensing case is .00667 and each renewal .0278. The maximum 1.0 weight is the theoretical optimal caseload. The Public Catalyst reporting system reflects caseworker who "Met" the 90% standard, which is defined as caseworkers with a weighted caseload of less than 1.0. However, Public Catalyst also reports a "Close" category, which is defined as caseworkers with a weighted caseload of greater than 1.0 but less than 1.2 and three other Over categories. Caseload compliance under this system changes daily and is impacted by many variables.

homes. These efforts have improved outcomes for children, and reduced the workload of front line caseworkers.

MDCPS has also aggressively hired caseworkers, onboarding over 350 in 2017 alone. MDCPS has further fought to improve retention through enhanced training, an employee emotional assistance program, increases in pay, and by hiring an additional 26 supervisors in the field.

Meanwhile, MDCPS made substantial progress in the provision of services to the children of Mississippi marked by:

1. Virtually eliminating overdue investigations.
2. Exceeding the target for foster home recruitment by more than 158%.
3. Substantially reducing the backlog of relatives awaiting licensure.
4. Reducing the number of children in foster care by approximately 13.6% in the last 10 months.
5. Improving the processes and procedures necessary to facilitate adoptions resulting in over a 100% increase in adoptions from FY 2017 to FY 2018 (302 to 641).
6. Improving the assignment and reassignment of cases to caseworkers

And most relevant to this motion, Defendants fulfilled their obligation to seek sufficient funding from the Mississippi Legislature to continue and expand these efforts in FY 2019, the first full fiscal year under the administration of Commissioner Jess H. Dickinson. Specifically, during the 2018 legislative session, MDCPS requested $133,626,898.78 in state funds for FY 2019. It was appropriated only $109,994,298. Because of this $23 million shortfall, Defendants' reasonable efforts to accomplish compliance with the 90% caseload metric have been thwarted by forces beyond the Defendants' control.

Next, as the Parties acknowledged in the 2nd MSA, the Mississippi Legislature controls the appropriation of state funds. The Legislature's failure to appropriate over $23 million necessary state funds, a matter beyond Defendants' control, is a significant change in factual conditions, which the parties did not contemplate when the prior MDCPS administration agreed to a 90% caseload metric, a target that falls within Defendants' control only to the extent that MDPCS is adequately funded. Given the FY 2018 financial crisis and inadequate FY 2019 funding, compliance with the 90% caseload metric has not been attained and cannot be attained until additional funding is received.

The Court should also consider and place in proper historical perspective, the following realities:

1. A 90% caseload metric has never been achieved by MDCPS or its predecessor, the Division of Family Children's Services, since the inception of the *Olivia Y*. litigation in 2004.

2. The caseload of MDCPS case workers has recently significantly improved from 31% on September 30, 2016 to 61% on December 31, 2017.

3. The 90% caseload requirement of the 2nd MSA metric is a statistical measure that turns on funding, but is also impacted by a multitude of other constantly changing variables as employees enter and leave, investigations start and finish, in-home cases open and close, adoptions begin and are concluded, and as families and homes are licensed and renewed. Indeed, the addition of only 1 investigation or the assignment of only 1 additional foster care in-home or custody case can move a worker out of the 90% compliance category.

For these and other equitable reasons, the Defendants request that the Court relieve MDCPS of the 90% caseload metric for Fiscal Year 2019 (July 1, 2018 to June 30, 2019) and until MDCPS receives sufficient funding from the Mississippi Legislature to hire and retain the staff needed to meet a 90% compliance metric. During this time frame, Defendants will continue to make all

reasonable efforts within their control to bring caseload compliance to the highest possible level and, most importantly, to continue to provide services and improve outcomes for children for the children of the State of Mississippi.

The Defendants also request general equitable relief including, in the Court's discretion, a directive to Public Catalyst and MDCPS to develop a plan to achieve a reasonable level of caseload compliance within the constraints of funding by the Mississippi Legislature.

As a threshold matter, the Defendants adopt and incorporate the Memorandum of Authorities in support of this Motion, and the *Defendants' Response and Objections and accompanying Memorandum of Law in Support of Their Response and Objections to Plaintiffs' Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt*, *for an Evidentiary Hearing, and for the Appointment of a Receiver* and all exhibits referenced in both pleadings.

RESPECTFULLY SUBMITTED, this the 3rd day of July 2018.

>PHIL BRYANT, as Governor of the State of Mississippi, JESS H. DICKINSON, as Commissioner, Mississippi Department of Child Protection Services, and TRACY MALONE, as Deputy Commissioner of Child Welfare, Mississippi Department of Child Protection Services
>
>By: /s/ James L. Jones

OF COUNSEL:

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Kenya Key Rachal (MSB #99227)
James L. Jones (MSB #3214)
Jake Adams (MSB #101538)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

Harold Pizzetta, III
Office of the Mississippi Attorney General
P. O. Box 220
Jackson, MS 39205

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following:

Marcia Robinson Lowry
Sara Robinson-Glasser
A Better Childhood
1095 Hardscrabble Road
Chappaqua, NY 10410

W. Wayne Drinkwater, Jr. (MSB #6193)
Michael J. Bentley (MSB #102631)
Bradley, Arant, Rose & White, LLP
One Jackson Place
188 E. Capitol St, Ste 400
Jackson, MS 39201

Christian Carbone (pro hac vice)
Loeb & Loeb, LLP
345 Park Avenue
New York, NY 10154

SO CERTIFIED, this the 3rd day of July 2018.

/s/ James L. Jones