IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

OLIVIA Y, et al                                                                                                     PLAINTIFFS

vs                                         CIVIL ACTION NO. 3:04-cv-251 TSL-FKB

PHIL BRYANT, as Governor of
the State of Mississippi, et al.                                         DEFENDANTS

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
SCHEDULING CONFERENCE AND FOR AMENDED
CASE MANAGEMENT ORDER PERMITTING LIMITED DISCOVERY**

The Defendants respond to the Plaintiffs' Motion for Scheduling Conference And For Amended Case Management Order Permitting Limited Discovery ("Scheduling Conference/ CMO Motion") as follows:[1]

On December 19, 2016, the Plaintiffs and the Defendants entered in a 2nd Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA") [Dkt. No. 712]. The 2nd MSA superseded all prior agreements and reform plans and resolved all remaining claims in the *Olivia Y* litigation. (*Id.,* Introduction, at page 1). It was effective on January 1, 2018. (*Id.*).

The intent of the 2nd MSA was to set forth certain child welfare infrastructure, standards, and outcomes that Defendants must meet within specified timeframes on a state wide basis. (*Id.*).

The 2nd MSA explicitly recognized, however, that:

> Defendants do not speak for the Mississippi legislature, which has the power under Mississippi law to determine the appropriations for the state's child welfare programs. However, at least annually after Court approval of this 2nd MSA, and consistent with existing state budgetary practices and legal requirements, Defendants shall request state funds and any federal/special fund authorization sufficient to effect the provisions and outcome measures set forth in this 2nd MSA."

---

[1] Defendants also request relief from the obligation to file a Memorandum Brief in support of this response. *See* Uniform Local R. 7.

(*Id.*)    Section 1.3.a. of the 2nd MSA addressed caseloads stating that:

> 90% of MDCPS caseworkers will have caseloads which do not exceed the case load standards set forth below.  Individual MDCPS caseworkers with generic caseloads shall not carry a mixed caseload that exceeds 100% capacity as calculated by the following weights per case type.[2]

| Type of Case | Standards | Weight Per Case – 100% Capacity |
|---|---|---|
| Child Protection (Investigations Level 2 and 3) | 14 Investigations | 0.0714 |
| Ongoing Foster Care (Placement Responsibility &Service) | 14 Children | 0.0714 |
| Ongoing Foster Care (Placement County of Responsibility) | | 0.0357 |
| Ongoing Foster Care (Placement County of Service) | | 0.0357 |
| In-Home Cases (Protection Responsibility & Service, Prevention Responsibility & Service, and Interstate Compact on the Placement of Children - Incoming) | 17 Families | 0.0588 |
| In-Home Cases (Protection or Prevention County of Responsibility) | | 0.0294 |
| In-Home Cases (Protection or Prevention County of Service) | | 0.0294 |
| Adoption (Adoption County of Service) | 15 Children | 0.0667 |
| New Application Licensing (Resource Inquiry, Interstate Compact on the Placement of Children Application, and Foster Home Study) | 15 Homes | 0.0667 |
| Renewal Licensing (Foster Home Supervision and Foster Home Renewal) | 36 Homes | 0.0278 |

A Stipulated Third Remedial Order ("STRO") was also entered by the Court on December 19, 2016. [Dkt. No. 713].  By its terms, it was to remain in effect until December 31, 2017, with the 2nd MSA going into effect the next day. (*Id.* at section 9).

---

[2] Under the formula, 90% of all caseworkers must not exceed a maximum weight of 1.0, which is a hypothetical workload capacity.  The Public Catalyst reporting system reflects caseworkers who "Met" the 90% standard, which is defined as caseworkers with a weighted value of less than or equal to 1.0.  Public Catalyst also reports a "Close" category, which is defined as caseworkers with a weighted value of greater than 1.0 but less than 1.2.  Three other "Over" categories are also reported.  Compliance under this system changes daily and is impacted by many variables. In fact, if any additional weighted task is assigned to a 1.0 caseworker, the worker would no longer be in the "Met" category and would not count toward meeting the 90% metric.  Any reasonable analysis of the caseload metric in the context of this contempt action should evaluate the "Met " and "Close" categories together, particularly when the failure to achieve the 1.0 metric is the foundation for a takeover of the child welfare system in Mississippi.

The STRO set forth over 50 requirements relating to child welfare. With regard to caseloads, section 5.b. of the STRO directed Public Catalyst to establish performance targets for caseload compliance by March 1, 2017, and to report compliance to the parties every three months. (*Id.*). Section 5.d. directed the Defendants to achieve full case load compliance with the new weighted standards by December 31, 2017. (*Id.*).

By memorandum dated March 31, 2017 (updated April 4, 2017), Public Catalyst established the following caseload performance targets:

- *50% of frontline workers will meet the caseload standards by July 31, 2017;*
- *70% of frontline workers will meet the caseload standards by October 31, 2017; and*
- *90% of frontline workers will meet the caseload standards by December 31,2017.*

[Dkt. No. 756-11].

MDCPS met the July 31, 2017 performance target. It did not, however, achieve the ultimate 90% metric on December 31, 2017. Instead, on that date 61% of caseworkers were in compliance with the 1.0 "Met" standard established by the new weighted metrics. *See* Public Catalyst Stipulated Third Remedial Order Fourth Quarterly Report (October 1, 2017 - December 31, 2017), Mississippi Performance On Caseload Standards/Date as of January 2, 2018. [Dkt. 757, Ex. "D"]. Another 14% were in the "Close" category. (*Id.*). Together 75% of the caseworkers fell within the "Met" and "Close" categories. (*Id.*). Overall, MDCPS has maintained that combined "Met" and "Close" performance. On July 31, 2018, 73% of caseworkers fell within the "Met/Close" category (57% Met: 16% Close).

On March 5, 2018, counsel for the Plaintiffs, pursuant to section 11.1.a. of the 2nd MSA, sent a Notice of Non-Compliance to counsel for Defendants. The Notice stated:

3

> Pursuant to Paragraph 11.1 of the 2nd Modified Mississippi Settlement Agreement And Reform Plan, and Paragraph 10 of the Stipulated Third Remedial Order ("STRO") Plaintiffs inform you of their intention to file a Motion with the Court to enforce their rights pursuant to Defendants' violation of paragraphs 5d and 10, of the STRO.
>
> **Specifically, Defendants are in violation of their agreement that by December 31, 2017, 90% of state workers will meet the caseload performance target of 90%. (STRO paragraph 5(d)).** As verified by Public Catalyst, the underlying caseload data establishes that as of December 31, 2017, only 61% of workers met the required caseload standard. (*Emphasis added*).

[Dkt. No. 739, Ex. "B"].

The Notice did not set forth any other violation of the 2nd MSA or the STRO. Indeed, the Public Catalyst Fourth Quarterly Report for the period ending December 31, 2017, reflected that MDCPS was in compliance with all other applicable requirements in the STRO other than the caseload metrics. *See* March 29, 2018 Public Catalyst certification letter. [Dkt. 757].

Since the matter was not an emergency, section 11.1.b. of the 2nd MSA required the Plaintiffs and the Defendants to meet with the Monitor and attempt to resolve the open issues. [Dkt. No. 712]. Mandatory conferences were held with representatives of the Plaintiffs and the Monitor. In these conferences, MDCPS representatives reported that the Agency had not been able to hire and retain sufficient caseworkers to meet the 90% caseload metric as a result of a severe financial crisis discovered during Fiscal Year 2018 (July 1, 2017 to June 30, 2018) (the "2018 Budget Crisis"), after Justice Jess H. Dickson was appointed to head the Agency.[3] MDCPS representatives also reported that the Mississippi Legislature's decision to appropriate $23 million less than the MDCPS budget request for Fiscal Year 2019 prevented future compliance in that fiscal year. MDCPS also reviewed its substantial and reasonable efforts to comply with the caseload metric and its substantial progress in providing services to the children

---

[3] Jess H. Dickinson became Commissioner of the MDCPS on September 18, 2017.

4

of Mississippi. *See generally* Defendants' Rule 60(b) Motion and Memorandum of Authorities. [Dkt. No. 756 and 757].

On May 31, 2018, rather than working in cooperation with MDCPS and Public Catalyst to address and achieve compliance with a 90% caseload metric, the Plaintiffs filed their Motion For Relief Pursuant To Remedy Phase Of Plaintiffs' Renewed Motion For Contempt, For An Evidentiary Hearing And For Appointment of a Receiver (the "Contempt/ Receivership Motion"). [Dkt. No. 739]. Through this punitive motion, the Plaintiffs seek an order finding Defendants in contempt and request appointment of a receiver to take over Mississippi's child welfare system.[4]

On July 3, 2018, Defendants responded to the Contempt/Receivership Motion. [Dkt. Nos. 754 and 755]. On the same day, Defendants also filed a Motion for Relief Under Section 11.2.a. of the 2nd Modified Settlement Agreement and Reform Plan And Rule 60 (b) of the Federal Rules of Civil Procedure (the "Rule 60(b) Motion"), [Dkt. No. 756], and a supporting Memorandum of Authorities. [Dkt. No. 757]. In this motion, Defendants request entry of an order granting relief from the 90% caseload metric or, alternatively, for an order directing Public Catalyst and MDCPS to develop a plan to achieve a reasonable level of caseload compliance within the constraints of funding by the Mississippi legislature.[5]

Without leave of Court, the Plaintiffs subsequently served a First Request For Production of Documents, a Second Request For Production of Documents, a First Set of Interrogatories, *see* [Dkt. No. 769], and requested dates for depositions of unnamed deponents. The proposed discovery is overly broad, unduly burdensome, and seeks discovery of irrelevant facts and

---

[4] The Plaintiffs also ask the Court to delineate the receiver's powers, and set forth the duration of the receivership and the standards for transition out of the receivership and a return of MDCPS to state control. In essence, the Court would be called on to run child welfare in the State of Mississippi.

[5] The Plan would be submitted to the Plaintiffs for review and ultimately to the Court for approval.

documents for a four year period beginning on July 1, 2015 (Fiscal Year 2016) and continuing to the present (Fiscal Year 2019). This discovery period predates the 2nd MSA and the STRO by several years. *See e.g.* Plaintiffs' Second Request For Production of Documents, requests 6 and 7. *See* [Dkt. 769].

On July 16, 2018, the Defendants served Defendants' Objections To Plaintiffs' First and Second Request For Production of Documents, Plaintiffs' First Set of Interrogatories, And Other Proposed Deposition Discovery. (Defendant's Notice of Service of Objections). [Dkt. Nos. 764, 765, and 766]. Plaintiffs, then, filed on July 20, 2018, the Scheduling Conference/CMO Motion seeking Court approval to pursue broad discovery purportedly related to the Plaintiffs' Contempt/Receivership Motion and the Defendants' Rule 60(b) Motion . *See* [Dkt. No. 768].

There is a basic, simple controversy before the Court. The Defendants on December 31, 2017, failed to comply with only one of over 50 applicable requirements in the STRO. They failed to do so because of a Fiscal Year 2018 financial crisis necessitated by inadequate funding from the Mississippi legislature for that year. *See* Defendants' Rule 60(b) Memorandum of Authorities, Exhibit "D", Jess H. Dickinson Affidavit, ¶¶ 23-26 [Dkt. No. 756-1]. That was compounded by the Mississippi Legislature's decision to fund $23 million less than MDCPS' budget request for Fiscal Year 2019. (*Id*. at ¶¶ 29-30). As set forth in the Rule 60(b) Motion and in the Defendants' Reply to the Contempt Receivership Motion and the supporting Memorandums of Authorities, although MDCPS is continuing at every level to improve caseloads, it cannot achieve a 90% metric until it receives adequate funding from the Mississippi Legislature *See generally* [Dkt. Nos. 754, 755, 756, and 757].

Based on all relevant circumstances, Defendants have reasonably requested, in the Rule 60(b) Motion, an order relieving MDCPS of the 90% caseload metric or, alternatively, directing

MDCPS and Public Catalyst to develop a plan to achieve a reasonable level of caseload compliance. The 60(b) Motion should be heard by the Court on an expedited basis because the motion addresses a fundamental foundation issue and resolution of the Motion will expedite adjudication of the Contempt/Receivership Motion.

Next, Defendants submit that although limited discovery is discretionary,[6] it is not necessary to adjudicate the 60(b) Motion and the relief requested therein because of the limited nature of the issue before the Court, which is whether MDCPS should be held in contempt and the entire Agency placed in a receivership for failure to meets a caseload metric in a consent order, which has not been achieved because of unanticipated and changed financial circumstances.  However, if the Court determines that discovery is appropriate, the discovery should be limited to the 2018 Budget Crisis and MDCPS' Fiscal Years 2018 and 2019 appropriations.  Nothing more is necessary.  Next, if the Court believes that limited discovery is appropriate, a Scheduling Conference should be convened to establish an expedited hearing plan for the Rule 60(b) Motion[7] and the precise parameters of permitted written discovery and depositions. A Scheduling Conference is also particularly appropriate because of Plaintiffs' aggressive challenge to and proposed takeover of the entire structure of child welfare in Mississippi is disruptive to the Agency's mission of providing child welfare services in Mississippi and is wasting limited resources that could be used to help children.

In conclusion, Defendants request that the Court convene a Scheduling Conference, establish an expedited schedule for resolution of the Rule 60(b) motion, and determine after the conference the nature and scope of discovery, if any, that is appropriate.

---

[6] E.g., *Guajardo v. Texas Dept. of Criminal Justice*, 363 F.3d 392, 396 (5th Cir. 2004).
[7] *See e.g., Horne v. Flores*, 557 U.S. 433, 444 (2009).

Respectfully submitted, this the 3rd day of August, 2018.

>PHIL BRYANT, as Governor of the State of Mississippi, JESS H. DICKINSON, as Commissioner, Mississippi Department of Child Protection Services, and TRACY MALONE, as Deputy Commissioner of Child Welfare, Mississippi Department of Child Protection Services
>
>By: /s/ James L. Jones

OF COUNSEL:

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
Kenya Key Rachal (MSB #99227)
James L. Jones (MSB #3214)
Jake Adams (MSB #101538)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS  39211
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424

Harold E. Pizzetta, III
Special Assistant Attorney General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P. O. Box 220
Jackson, MS  39205

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following:

Marcia Robinson Lowry (*pro hac vice*)
Sara Robinson-Glasser (*pro hac vice*)
Erica Reed (*pro hac vice*)
A BETTER CHILDHOOD
1095 Hardscrabble Road
Chappaqua, NY  10410

W. Wayne Drinkwater, Jr. (MSB #6193)
Michael J. Bentley (MSB #102631)
BRADLEY, ARANT, ROSE & WHITE, LLP
One Jackson Place
188 E. Capitol St, Ste 400
Jackson, MS  39201

Christian Carbone (*pro hac vice*)
LOEB & LOEB, LLP
345 Park Avenue
New York, NY  10154

**SO CERTIFIED**, this the 3rd day of August, 2018.

/s/ James L. Jones_____