IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES D. JOHNSON, AS NEXT
FRIEND TO OLIVIA Y, ET AL.                          PLAINTIFFS

VS.                        CIVIL ACTION NO. 3:04CV251-TSL-FKB

GOVERNOR PHIL BRYANT, ET AL.                        DEFENDANTS

**MOTION HEARING**

BEFORE THE HONORABLE F. KEITH BALL
UNITED STATES DISTRICT JUDGE
AUGUST 24TH, 2018
JACKSON, MISSISSIPPI

APPEARANCES:

FOR THE PLAINTIFFS:   MS. MARCIA R. LOWRY
                      MR. MICHAEL J. BENTLEY

FOR THE DEFENDANTS:   MR. JAMES L. JONES
                      MS. KENYA KEY RACHAL

REPORTED BY:  MARY VIRGINIA "Gina" MORRIS, RMR, CRR

_____

501 East Court Street, Suite 2.500
Jackson, Mississippi  39201
(601) 608-4187

```
1              THE COURT:  You can be seated.  All right.

2              Clay, we do have someone on the phone?

3              IT TECHNICIAN:  Correct?

4              THE COURT:  The court calls the case of Olivia Y, et

5    al. v. Phil Bryant, et al.  This is civil action number

6    3:04cv251.  I will first have counsel identify themselves for

7    the record as well as the parties on whose behalf you're

8    appearing, starting with plaintiffs' counsel.

9              MS. LOWRY:  Marcia Lowry for -- counsel for

10   plaintiffs, Your Honor.

11             THE COURT:  All right.

12             MR. BENTLEY:  And Michael Bentley, also counsel for

13   plaintiffs.

14             THE COURT:  Okay.  Defense counsel?

15             MR. JONES:  Your Honor, I'm James L. "Larry" Jones,

16   counsel for the defendant.

17             THE COURT:  All right.

18             MS. RACHAL:  And I'm Kenya Key Rachal, counsel for

19   defendants.

20             THE COURT:  All right.  Mr. Dickinson, you're also

21   here with us.  So if you'll go ahead and just identify yourself

22   for the record.

23             MR. DICKINSON:  Thank you, Your Honor.  Jess

24   Dickinson, commissioner for the department.

25             THE COURT:  Thank you.  Appreciate you being here in
```

1  person.  Thank you.

2        It's my understanding we also have someone on the

3  phone with us.  If you will identify yourself for the record,

4  please.

5        MS. TAYLOR:  Yes.  This is Lisa Alexander Taylor from

6  Public Catalyst, and I'm one of the monitors.

7        THE COURT:  All right.  I appreciate you appearing as

8  well.  And do you -- can you hear me fine?  You came -- you

9  came through loud and clear, but can you hear me okay?

10       MS. TAYLOR:  Yes, I can.  Thank you.

11       THE COURT:  All right.  Thank you.

12       This matter is before the court on the plaintiffs'

13  motion for scheduling conference and for amended case

14  management order permitting limited discovery and response to

15  defendants' objections to plaintiffs' proposed discovery.  That

16  motion is document 768 on the docket of this court.

17       It is essentially in conjunction with or in response

18  to the defendants' motion for relief under Section 11.2(a) of

19  the Second Modified Settlement Agreement and Reform Plan and

20  Rule 60(b) of the Federal Rules of Civil Procedure.  Long

21  titles, but that's what they are.  And that's document 756 on

22  the docket of this court.

23       Let me go ahead and just kind of give a summary of

24  where we are, and then I'll give both sides an opportunity to

25  address some of the issues.  I think I can short-circuit some

```
 1    of it, but let me at least couch why we're here for purposes of

 2    the record.

 3          The defendants had filed a motion that I've already

 4    referenced that is essentially requesting relief from the

 5    Second Modified Settlement Agreement and Reform Plan

 6    specifically dealing with a request for relief from the

 7    90 percent caseworker caseload requirement in that second MSA.

 8    And they also request an evidentiary hearing before the

 9    district judge in this case, Tom Lee.

10          Essentially, the defendants are asserting in the

11    motion that they have made all reasonable efforts to comply

12    with the 90 percent caseload metric, also that they have

13    fulfilled their obligations to seek sufficient funding from the

14    Mississippi Legislature.  And they're also requesting equitable

15    relief, specifically a directive from the district judge to

16    develop a plan to achieve a reasonable level of caseload

17    compliance, as it's phrased in the motion.

18          The plaintiffs, although they have already responded

19    to that motion, are requesting an opportunity to conduct some

20    discovery relevant to some of those issues and requesting an

21    opportunity to make -- to file a supplemental response to the

22    motion.  And, as I understand it, plaintiffs' counsel have

23    already propounded some discovery.  Is that right?

24          MS. LOWRY:  That's correct, Your Honor.

25          THE COURT:  All right.  Defendants have objected to
```

1  that discovery and essentially are taking the position that no

2  discovery should be permitted prior to a ruling by the court on

3  the motion that they have filed seeking relief from the MSA.

4       Is that -- am I accurately stating defendants'

5  position?  In a nutshell, y'all are objecting to any discovery

6  before the evidentiary hearing or a ruling from the court.

7       MR. JONES:  Your Honor, that -- we stated that

8  position, but we immediately also set forth that if -- that's

9  discretionary.  We assumed the court would consider discovery

10 and we do recommend certain limits with regard to that

11 discovery.

12      THE COURT:  Okay.

13      MR. JONES:  So we were not hard and fast on no

14 discovery; but for reasons I'll address in our presentation to

15 the court, we think the discovery should be very limited.  It's

16 a very narrow issue in the 60(b) motion related to the

17 inability to comply with this metric as a result of over a

18 $50 million deficit in fiscal year 2018 and $23 million less in

19 requested funding for fiscal year 2019.  Those are essentially

20 facts that are discovered from documents.

21      THE COURT:  Okay.  All right.  Well, I'm going to take

22 all the suspense out of the motion and go ahead and say I've

23 been in contact with Judge Lee's office.  So this isn't really

24 coming just from me, but Judge Lee wants there to be discovery.

25 So the purpose of our conference today and the purpose of this

1  hearing is, I'll go ahead and say, the plaintiffs' motion is

2  going to be granted as far as a modification -- whether you

3  want to call it a modification of the case management order or

4  whether it is just a scheduling order that we need to put into

5  place as to the amount of time that we're going to allow for

6  discovery, the scope of that discovery, and then, obviously,

7  coming up with a briefing schedule after the discovery.

8       Judge Lee has -- I believe Judge Lee has every

9  intention of having an evidentiary hearing after everything is

10 briefed up.  And Judge Lee wants to have all of the relevant

11 information before him that is essential and necessary for him

12 to make an -- to make an informed decision.

13      So with that being said, I really don't want to hear

14 argument from counsel.  The main reason I wanted everyone to be

15 here is we need to just -- we need to address those issues, how

16 long would this -- and maybe the first topic is what's the

17 scope of the discovery going to be; two, once we can -- and I

18 would love for us to be able to reach an agreement on that and

19 that y'all don't force me to have to rule on it.  So I first

20 want to just talk about whether we can reach an agreement on

21 what the scope of discovery would be.  If we can't, then I'll

22 make a decision and I'll go ahead and make a decision today.

23      Two, we need to come up with the time period that

24 would be necessary to complete that discovery; and, obviously,

25 the scope will impact that.  So we'll deal with the scope

```
 1    first, then the timing, and then we'll talk about a briefing
 2    schedule.
 3            Let me -- Mr. Jones has already made a little bit of
 4    argument with respect to what they believe the scope of
 5    discovery ought to be.  So let me turn it over to plaintiffs'
 6    counsel and we'll give you an opportunity to make whatever
 7    argument you wish to make or just to share with the court what
 8    you believe would be the necessary scope of discovery.
 9            MS. LOWRY:  Thank you, Your Honor.
10            THE COURT:  Yes.
11            MS. LOWRY:  Your Honor, this issue does not arise out
12    of events of the last two years.  This case has been in a
13    monitoring perspective for eight years.  Defendants have never
14    complied with the obligations that are set out in a settlement
15    agreement to which they have agreed.
16            The situation, frankly, is very dire.  Children have
17    died.  Children continue to be neglected in foster homes
18    because there are not enough workers to visit the foster homes.
19    When we filed this most recent -- and this is the second
20    contempt motion.  When we filed this contempt motion --
21            THE COURT:  Could you pause for just a second.
22        (PAUSE)
23            THE COURT:  All right.  You may proceed.  Go ahead.
24            MS. LOWRY:  Okay.  Thank you, Your Honor.  So this is
25    the second contempt motion that has been filed in this case.
```

1   And each time -- when we had the first -- and we have gone to

2   very, very great lengths to avoid the filing of contempt

3   motions.  Because the state has never been in compliance with

4   this settlement agreement, there have been always multiple

5   grounds on which to seek a contempt motion; but we have tried

6   to work with the state over these eight years to try to resolve

7   the situation.  And there have been many, many efforts.

8         And I think it's important for the court to know that

9   this is not something that has only recently arisen and that

10  when we seek a motion for contempt, as we have earlier this

11  year, that is because we really are at our wits' end with

12  regard to trying to get compliance with the agreement.

13        The monitoring has changed in this case.  A monitor

14  who was a very, very conscientious and rigorous monitor issued

15  numerous reports, all of which showed the defendants were out

16  of compliance with this agreement and documented all of the

17  issues on which they were deficient.

18        More than two years ago we entered into a different

19  process; and we brought in an organization that the defendants

20  were very, very happy with to provide the technical assistance

21  to the agency, because agencies do not automatically come into

22  compliance with agreements.  It's work.

23        THE COURT:  Hang -- I hate to interrupt you.

24        MS. LOWRY:  That's okay.

25        THE COURT:  But when I used the phrase before "I want

 1   to kind of cut to the chase" --

 2             MS. LOWRY:  Okay.

 3             THE COURT:  -- I really -- it's really not that

 4   beneficial to me to hear all of the background information.

 5   Some of it I'm already aware of; but, more importantly, I'm a

 6   little bit limited on time today.

 7             MS. LOWRY:  Okay.

 8             THE COURT:  What I would like to do is let's go ahead

 9   and get directly to the issue of what discovery -- given the

10   motion that the defendants have filed seeking relief from the

11   agreement, what issues do you believe you need to conduct

12   discovery on in order to more fully respond to the defendants'

13   motion and to be prepared for the evidentiary hearing that

14   Judge Lee is going to hold?

15             MS. LOWRY:  Thank you, Your Honor.  I will do that.

16             THE COURT:  All right.

17             MS. LOWRY:  What we think is relevant here is to

18   understand whether these are unforeseen circumstances and

19   whether this could have reasonably been expected or not with

20   regard to the funding issue that was before the legislature.

21   Defendants have portrayed this as an extraordinary event and a

22   fiscal crisis.  I do want to put quotes around that.

23             We don't think it's a fiscal crisis.  We think this is

24   a crisis that -- it is a crisis, but that has continued for

25   eight years.  I don't think that's a crisis.  I don't think

1    that meets the parameters of what 60(b)(5) allows.  And what's

2    more, there's an explicit provision that prohibits defendants

3    from seeking relief from the judgment until 2020.

4         So what we want is discovery on what the funding has

5    been over the last five years, what efforts have been made and

6    where else the money could come from and exactly what the scope

7    of the shortfall is.  In fact, although the defendants say

8    they've put in a lot of information, frankly, we tried to

9    figure out what the information showed and we can't.  And we --

10        THE COURT:  Do you believe that the written discovery

11   that you've already propounded captures all of the issues that

12   you believe discovery is necessary on?

13        MS. LOWRY:  We think the discovery is in two phases,

14   one, the written discovery we have propounded.  And, yes, Your

15   Honor, we do believe that it covers all the issues.  Secondly,

16   we want to take depositions.  And we have asked in the

17   discovery for who are the people who have knowledge of these

18   issues.

19        So the discovery is all related, but -- and we think

20   the discovery is sufficient except we want to take depositions

21   of the people who are identified.  Basically, that's it.

22        THE COURT:  Okay.  All right.  Let me hear from

23   Mr. Jones, and what objection would you have or -- let me

24   hear -- if this court was just to say, *Okay.  I'm going to*

25   *allow them to propound this discovery and to take depositions*

1  *as to those that may have personal knowledge of those discovery*

2  *responses and the issues that are addressed in that discovery,*

3  what objection would you have to that, Mr. Jones?

4           MR. JONES:  Can I come to the podium?

5           THE COURT:  Yes, sir.

6           MR. JONES:  Thank you, Your Honor.  First of all --

7  and I'll do this very briefly -- the discovery is related to

8  the 60(b) motion that's before the court.  The 60(b) motion

9  seeks two things.  One is relief from a 90 percent caseload

10  compliance requirement that is in two agreements, both of which

11  were entered by this court as consent orders.

12           And it's interestingly -- interesting and very

13  critically legally important, those orders were entered in

14  institutional reform litigation which sets up a very specific

15  standard of review for the court in reviewing a request for

16  modification.  But the modification request is only relief from

17  one requirement, that is, a 90 percent caseworker caseload

18  requirement, and an additional request that the court direct

19  the defendants, including the primary client, the department of

20  protection services, to work with the court monitor to develop

21  a plan to achieve compliance in the future.

22           Now, based on the failure to meet that requirement,

23  the plaintiffs have essentially requested that this court find

24  this department in contempt and then place the department in a

25  receivership of undefined scope for an undefined period at

1    extraordinary unbudgeted costs.  So this 60(b) motion is

2    critically important, but it is very limited.

3         And the discovery should be limited not, as

4    plaintiffs' counsel with whom I respectfully disagree on many

5    points, but I'm not going to belabor those today -- it has to

6    be limited to the scope of the motion itself that's before the

7    court for 60(b) relief of a consent order entered in this

8    institutional reform litigation.

9         And that motion sets forth that the reason the

10   department was unable to achieve this metric was because of two

11   things.  And keep in mind that in -- if you'd note this date, I

12   think it's very important for all of us to consider.

13   Commissioner Dickinson, former Justice Dickinson, one of the

14   leading jurists and citizens in our state, became the

15   commissioner of this department on September 18th of 1977

16   *(sic)*.  The 90 percent metric deadline did not become a firm

17   requirement until December 1 of 2017.

18        Now, what Justice Dickinson immediately experienced in

19   one of the most complex departments in this state to run and

20   manage was there was a looming financial deficit that was going

21   to mean -- and I may be off a month or two, but in early 2018

22   with the fiscal year ending June 30 of 2018, the department was

23   experiencing what was projected initially as over a $50 million

24   deficit.  In other words, the department was not going to be

25   able to pay its bills and was going to run out of money in

1  March or April of 2018.  That fiscal crisis was resolved.  That

2  is the first basis for the changed circumstances in the 60(b)

3  motion.

4       The second basis is equally specific.  That basis is

5  in that same general time period the department was applying to

6  the state legislature for appropriations necessary to fund its

7  operations including the requirements under the consent orders

8  that had been entered.  It was necessary under

9  Judge Dickinson's leadership to amend the request for

10  appropriation and to seek approximately $133 million which the

11  legislature was told would be necessary to meet operations even

12  after budget cuts and other fiscal steps were taken to address

13  the deficit.  Instead of $133 million, the legislature after

14  balancing all of the demands that the legislature faces in the

15  fiscal arena awarded $23 million less.

16       THE COURT:  All right.  I hate to do it, but I have to

17  do the same thing that I did to plaintiffs' counsel.

18       MR. JONES:  I'm sorry if I got carried away.

19       THE COURT:  I understand -- well, and I understand

20  that lawyers always kind of want to get to the main part of

21  their case and make the point.  I have to deal with some issues

22  that are often very boring and tedious.  And the one that I've

23  got to deal with today is am I going to -- Judge Lee has

24  already indicated he wants some discovery conducted because he

25  wants to be fully informed.  So I'm going to allow it.  So my

 1    job is to figure out the best way to proceed on that.  And --

 2              MR. JONES:  Let me ask you a question.

 3              THE COURT:  -- I'll go ahead and tell you.  I'm

 4    inclined to just grant the plaintiffs' motion, allow them to

 5    propound the written discovery that they -- to enter an order

 6    that they are allowed to propound the written discovery that's

 7    previously been propounded and to take the depositions that --

 8    of those that have personal knowledge of the responses.

 9              So my main purpose at this point in the hearing in

10    turning to you is do you have -- is to gather from you whether

11    you have particular objections to these interrogatories and

12    requests for production or that you believe that they are too

13    broad.  And if so, tell me specifically what you believe is too

14    broad and why.

15              MR. JONES:  All right.  First of all, they're too

16    broad in the temporal time period.  They range -- and I could

17    go through them one by one, but they range from July -- I'm

18    sorry -- for fiscal year 2016 to the present.  Fiscal year 2016

19    began on June 30 of 2015.

20              So, consequently, fiscal year 2016 is irrelevant.

21    Justice Dickinson was not there.  This financial crisis was not

22    present.  The 90 percent metric was not even in place as a

23    requirement until December 31st of 2017.  So fiscal year 2016

24    is irrelevant.  Fiscal year 2017 is also irrelevant.  That

25    fiscal year ended on July -- on June 30 of 2017.

1    What is in play here is fiscal year 2018 and fiscal

2    year 2019.  That is the period which the budget crisis arose

3    and that is what we're basing our 60(b) motion on.  So,

4    consequently, the first limitation needs to be, in my humble

5    opinion, for restriction of the temporal period to fiscal years

6    2018 and 2019.

7    Now, the other limitation that I would urge the court

8    would be when you review the -- there's a first set of -- first

9    request for production, second request for production, and

10   first set of interrogatories.  There -- parts of those requests

11   are unduly burdensome and overbroad because they seek, in

12   essence -- I could refer you to point by point, but I think I'd

13   like to do it generally.  They seek in essence witnesses,

14   disclosures, documents about not only available funds but

15   potentially available funds and -- and the specific use of

16   available funds.

17   Well, in the Department of Child Protection Services,

18   funding is a moving target.  Funds are allocated to the

19   department pursuant to a budget.  That budget is constantly --

20   the operational budget is constantly moving as there are needs,

21   as there are crises, as there are additional demands, as

22   additional programs come off and online, as contracts end.  So

23   the discovery should be limited to the questions in the 60(b)

24   motion.  Was there a financial crisis in fiscal year 2018 and

25   what efforts were made to secure funding in fiscal year 2019?

```
1          That is largely a documentary production.  With those

2     two limits and some restriction as to telling us exactly how

3     funds were used when that's not the question, I think that the

4     discovery that's been tendered could be workable.  There are

5     some questions which relate to the --

6          THE COURT:  Let me stop you right there.  You said

7     some of them -- the way I'm interpreting the last point that

8     you were making --

9          MR. JONES:  Right.

10         THE COURT:  -- is that the wording of some of those

11    interrogatories and requests for production would be -- would

12    be so broad that they would be unduly burdensome and the -- you

13    know.  You've practiced law for a long time.  You've had to

14    craft discovery responses; and often you end up propounding

15    discovery responses that may be too broad, but the responding

16    party can in good faith provide certain information subject to

17    that objection that it is -- the wording of it is overly broad

18    and it's unduly burdensome.

19         And then the responding party will usually provide

20    information that is responsive to that discovery request that

21    isn't too -- that is clearly what -- the main part of what the

22    requesting party is seeking.  Could you --

23         MR. JONES:  I don't want --

24         THE COURT:  I don't want to get down into details of

25    trying to word discovery responses today.  If I were to allow
```

1    the plaintiff to propound the discovery that has been

2    previously propounded, you would -- the responding party, the

3    defendants in this case -- I mean the defendants in this case

4    would have available to them those types of objections.  And

5    so -- and I know I may find myself in another discovery hearing

6    as a result, but I don't know any better way to do it.

7          I'm hoping that maybe the parties could work together

8    and possibly reach agreements as to whether the information

9    that is provided in the documents, that are provided are

10   sufficiently responsive that you don't have to bring a

11   discovery dispute to me.  But I do want to make it clear that

12   in the event that I issue an order that the plaintiff is

13   allowed to propound the previously propounded discovery and

14   depose those that maybe have personal knowledge of those

15   responses, that it will still be available to the parties to

16   make those types of objections.

17          MR. JONES:  Your Honor, and that is why I did not go

18   document -- I mean request by request.

19          THE COURT:  Yes.

20          MR. JONES:  We're perfectly fine with that.  We will

21   respond in good faith.  I have the greatest respect for

22   Ms. Lowry and the work she does.  We all tender discovery

23   requests that sometimes have language that's been around a long

24   time --

25          THE COURT:  Whether it's in the request or in the

```
 1   response.  I agree.
 2         MR. JONES:  But I think the issues are fairly narrow
 3   in the 60(b) motion.  We will push out documents.  But I think
 4   the court understands in an agency of the nature of what we
 5   have, the discovery needs to be limited so that we -- it does
 6   not disrupt the necessary management functions and operations
 7   of this agency.
 8         THE COURT:  Okay.
 9         MR. JONES:  And that would be my suggestion.  We can
10   in good faith respond and, hopefully, work out any
11   difficulties.  We will produce documents that show why we
12   believe there was a crisis.  There's really no dispute about
13   that.  There was a $12 million state appropriation and over
14   40 -- over $30 million that ultimately was transferred to the
15   department from DHS.  And the allocat- -- the appropriation in
16   2019 is a matter of public record.
17         THE COURT:  All right.  Ms. Lowry, let me hear from
18   you on the possibility of limiting the time period to the
19   fiscal years 2018 and '19.
20         MS. LOWRY:  Your Honor, we don't accept a basic
21   premise here that the defendants are operating under.  We have
22   a settlement agreement that requires the states to do specific
23   things, and it is not dependent on appropriations.  So whether
24   the legislature appropriated the money or not -- and we do
25   think there's a big question about how the budget got worked
```

```
 1   out -- we think it's also important to know how the money has
 2   been appropriated previously, because the governor's a
 3   defendant here and the state has been obligated and in the
 4   settlement agreement it says the state is obligated to produce
 5   the results in the settlement agreement.  And the legislature
 6   doesn't appropriate specific positions, and there are more
 7   things going on with regard to the defendants' noncompliance
 8   than just this issue.
 9          So we don't think it should be limited to 2018,
10   because if the legislature has ever appropriated money
11   specifically to comply with this agreement, it is sort of news
12   to us.  And we don't think that the state can be limited to
13   what the legislature specifically appropriates for specific
14   things.
15          THE COURT:  All right.  And you're asking for fiscal
16   years -- your discovery would be for fiscal years what?
17          MS. LOWRY:  Your Honor, it's for the past five fiscal
18   years.
19          THE COURT:  All right.  What I was going to ask you is
20   you do agree -- or correct me if I'm wrong -- that the only
21   provision that they are seeking relief from is the 90 percent
22   caseload requirement.  Correct?
23          MS. LOWRY:  Yes, Your Honor.
24          THE COURT:  And I thought Mr. Jones did a good job of
25   succinctly saying that's the only issue in the motion.
```

1          MS. LOWRY:  That's right.

2          THE COURT:  So why should you go back -- and he

3   represented to the court and I wanted to ask you that that was

4   a provision that was not added until 2017.  Is that true?

5          MS. LOWRY:  No.

6          THE COURT:  -- or false?

7          MS. LOWRY:  That's not true, Your Honor.  There have

8   always been caseload limits in the agreements, and there have

9   always been obligations to comply with caseload limits.

10          THE COURT:  All right.  Did the percentage change?

11   What change would he be referring to in 2017?

12          MS. LOWRY:  I think what -- what happened in 2017 was

13   that the state for the first time in the history of this case

14   became serious about trying to comply with the agreement and

15   brought in a monitoring group that also was very specific.  And

16   the monitoring group said, *Before you do anything else, you*

17   *have to get your caseloads under control.*

18          And the caseloads have never been under control.  And,

19   frankly, Your Honor, I don't as I stand here today remember

20   what percentages were previously in the agreement, but this was

21   an -- this was a number that was arrived at by the monitoring

22   group after they did research on what the caseloads actually

23   were.  And that kind of research had never been done before

24   because it was almost unfathomable to try to figure out what

25   they were.

1          THE COURT:  Okay.

2          MS. LOWRY:  So this was a real effort to look at it.

3          THE COURT:  My concern is that if they're -- if

4   they're doing -- I don't know how much time would be required

5   for them to provide the information you're requesting for one

6   fiscal year.  I don't know if that is a major endeavor for them

7   to do that.  If it is, you know, I don't know -- but if it is,

8   then it would be, obviously, exponentially more the more years

9   I add and the more years I allow.  I don't know.

10          Could you give me a little bit more idea of exactly

11   what it is that you're requesting that just using common sense

12   you can envision that it is going to take them some time to

13   get?  Can you give me some more details on exactly what I'm

14   talking about --

15          MS. LOWRY:  Certainly.

16          THE COURT:  -- I'm dealing with?

17          MS. LOWRY:  You know, one thing that the state has

18   said that is absolutely right is that the budget is constantly

19   moving.  And that is what, in fact, happened.  So there is no

20   really fixed budget.  There's a lot of interaction among the

21   agencies.  And it is our position that more money has gone into

22   the agency in previous years than has been proposed to go into

23   it over this next year.  And that's why it is important to try

24   to track this back.

25          Your Honor, I think insofar as records exist, they are

1  very limited in scope, and this will not be a burdensome effort

2  to produce them.  Your Honor, we -- we want to get this issue

3  to the court, and we want the court to have the information the

4  court needs.  We have no interest at all in the defendants

5  spending months and months producing discovery.  We want this

6  as efficiently and as quickly as possible.  If it doesn't

7  exist, it doesn't exist; and they can tell us that.  That's

8  fine.  But we do think it's necessary to have the five-year

9  history here.

10           THE COURT:  What if I gave you three?

11           MS. LOWRY:  We'll take three, Your Honor.

12           THE COURT:  Okay.

13           MR. JONES:  Can I say something from here?

14           THE COURT:  Absolutely.  And if both of you -- now

15  that we're kind of going back and forth and we may go a little

16  bit more back and forth, if y'all want to be at counsel table,

17  that's fine with me.

18           MR. JONES:  I can say it from here because I know the

19  court is busy and wants to move on.

20           You don't need to move.

21           The first point, I want to make this very clear.  The

22  United States Supreme Court as early as in the *Rufo* case, which

23  was in the '90s as I recall and I believe it's in -- on page

24  392 of this case, has said that in a 60(b) motion to change a

25  consent order in an institutional reform case, financial

1    constraints are relevant.

2          It was stated that that is not the case.  That is

3    absolutely incorrect.  And that is the basis legally for the

4    60(b) motion before the court.

5          But in terms of the scope of discovery, we're dealing

6    with the two grounds in the 60(b) motion that we're only asking

7    the court for relief for, and that is the 2018 financial crisis

8    and the 2019 appropriation.  We're not putting on other

9    defenses.  And it is very burdensome -- if the court would

10   like, I have the discovery here to say -- to look at these

11   discovery requests as anything other than extremely demanding

12   to the department.

13         It's for an entire fiscal year:  Give information,

14   documents and witnesses who can testify about all available

15   resources, all potential resources, all uses of the moneys you

16   received.  That's how the discovery is phrased.  And that is

17   extremely burdensome going back five years with many people who

18   were involved in this agency no longer being in place.

19         And we are dealing with the crises faced by

20   Justice Dickinson after he arrived on September 18 of 2017.  So

21   fiscal years '18 and '19 in my opinion are critically important

22   as limitations.  If the court is going to push us to '17, I

23   think it's going to put a lot of demands on us.  But to go back

24   to fiscal year '16 or even before -- one of the questions asked

25   for documents about any deficit ever suffered by the

```
 1   department.  I don't know what the time limitation on that is,
 2   but that's the request.  So we would urge you to bring this to
 3   a head in a way that the court can make a decision on what the
 4   60(b) motion states.
 5         THE COURT:  I hear you.  At the same time I think that
 6   there may be some -- there's already been some argument made
 7   that, as I'm understanding it, but may -- some of these issues
 8   may deal with -- since this has been in place for a long time,
 9   whether you had -- some of what the department may have done in
10   the past maybe had created the case that existed later and that
11   some of the things -- and I hear you with respect to when
12   Justice Dickinson started, but the issue is not just what has
13   happened since he's been in charge but what has happened prior
14   to him being in charge.  And that -- some of that may be
15   relevant.
16         Now, what I am concerned about is creating -- putting
17   a burden on the department that is unreasonable under the
18   circumstances.  And I would like to limit it in such a way that
19   it will -- I'm weighing and trying to balance between not
20   putting an unreasonable burden on them and providing plaintiffs
21   with the information they need.  And I'm trying to strike a
22   balance there.  Yes, sir.  Go ahead.
23         MR. JONES:  As a young boy, they would sometimes let
24   me ask a question if I raised my hand.  Can I show you one
25   thing, Your Honor?
```

```
1              THE COURT:  Absolutely.

2              MR. JONES:  Your Honor, the requirement we are seeking

3    relief from was not in place as a requirement until December 31

4    of 2017.

5              MS. LOWRY:  No, Your Honor, we agree with that.  We

6    agree with that.  There have been previous caseload

7    limitations.

8              THE COURT:  Yes.  Okay.

9              MR. JONES:  This is simply a page from the STRO.

10      (DOCUMENT TENDERED TO THE COURT)

11             MR. JONES:  And so, consequently, the -- that is the

12   only deadline metric we are seeking relief from.  And I will

13   say this on the record and represent this absolutely to you.

14   This case started in 2004, 14 years ago.  If it goes another 14

15   years, I probably will not be standing here.  But there has

16   never been compliance with a 90 percent standard in the history

17   of this agency.

18             This is a brand-new metric.  No one, not the former

19   commissioner, not the commissioners in the past, not the range

20   of governors, has ever met this standard.  And there are

21   reasons we want to present why we didn't meet it the first time

22   it was required.  It is just simply not true that there were

23   other deadlines of 90 percent at any time in the past.  Perhaps

24   it would have been relevant if there were.  There were not.

25   That is the deadline.
```

1          THE COURT:  Okay.  Ms. Lowry, any response to that?

2          MS. LOWRY:  Your Honor, there -- this is the third

3    settlement agreement in this case.  Each one has had some

4    variation.  Each one has had caseload limits.  The 90 percent

5    metric was the one that was entered most recently.  There have

6    been previous requirements.  The State has -- and he is

7    correct; the State has never complied with any of them.  So we

8    stand on that.

9          But we do need some previous years.  And if the court

10   wants to limit us to three years, we can live with that.  But

11   the state has never complied with anything in this case.  And

12   last year they had a year off from any monitoring to give them

13   the time to build capacity.  They promised us they would get to

14   this particular metric in '18.  They have not.

15         And this is only the beginning.  And I don't want to

16   go into the details, Your Honor.  I know the time is limited

17   here.  But we do need some earlier year budget information.

18   And if the court wants to give us three years, we will accept

19   that.

20         THE COURT:  All right.  I'm a big fan and have tried

21   to consistently rule definitely on things and move it off my

22   desk and able to move on to something else.  Sometimes I find

23   myself in a situation where maybe I should do it in phases, and

24   I'm going to do it here.

25         What I'm going to do is grant the plaintiffs' motion

1  and specifically order that the plaintiffs may propound the

2  discovery set out in Exhibit A to their motion and conduct

3  depositions of witnesses identified in said discovery.  That's

4  the way it's worded in your motion.  Maybe I'm creating a

5  problem where one doesn't exist, but there may be -- I'm going

6  to grant the way it's worded in your motion.

7         I also realize there may be someone that's not

8  specifically identified in that discovery that you may based on

9  discovery responses or other information believe they need to

10 be deposed, and I'm not shutting the door on that.  But I'm

11 going to grant -- my order is going to be worded the way that

12 your motion is.  And if you wish to take any depositions of

13 anyone that's not identified in discovery, then you'll need to

14 file a motion.  So -- but that's going to be the order of the

15 court, that the plaintiffs may propound the discovery set out

16 in Exhibit A and conduct depositions of witnesses identified in

17 that -- in said discovery.

18        I am going to limit it initially in my order to fiscal

19 years 2018 and '19.  If after getting that information you wish

20 to request additional years, bring that to me.  And the reason

21 I didn't say file a motion is in my typical case management

22 order when there are discovery disputes, I first have a

23 telephone conference with the parties to see if we can work it

24 out.

25        So if you wish to go -- if you wish to go back further

than those two fiscal years, call my chambers.  Let's all get

on the phone and let's see if we can work it out and reach some

kind of compromise.  It may be some subset of the information

that you've previously gotten that you could get for those

other fiscal years.  And I can think of other ways that we may

be able to resolve it.

But just to avoid the risk of placing an unreasonable

burden on the department, I am going to limit it -- my order is

going to limit it to fiscal years 2018 and '19, but I'm not

completely closing the door on you getting other information

about previous fiscal years.

I will also -- after you go through this process, both

parties will have a better feel for how time-consuming and how

burdensome it was to get -- to produce the information that you

requested.

I want to hear from both of you on -- I need to set a

deadline for the completion of discovery.  How long do you

think it would take, Ms. Lowry?

MS. LOWRY:  Your Honor, the defendants have --

THE COURT:  And maybe I should be asking that of

defense counsel to start with, but --

MS. LOWRY:  All right.  Your Honor, defendants have

had these interrogatories since June 27th.

THE COURT:  Yes, but if they operated like most

lawyers operate in the practice of law -- I hear that argument

1   all the time; but until the court orders you to do it, you

2   don't start doing what needs to be done.  So it's -- let me go

3   ahead and turn to defense counsel because I think -- how long

4   do you think it would take to respond?

5           MR. JONES:  I'd suggest 45 days, Your Honor, because

6   that will get the objections to the production.  And, frankly,

7   there are no deponents identified in discovery.  It just says

8   seeks to take deponents whose names come up from the

9   production.

10          THE COURT:  Right.

11          MR. JONES:  So I think 45 days would be -- would be

12  satisfactory.  It's still going to be demanding.

13          THE COURT:  Are you saying 45 days to --

14          MR. JONES:  From today.

15          THE COURT:  -- to produce the documents and provide

16  written responses, or are you saying to complete all the

17  discovery?

18          MR. JONES:  Well, I was thinking in terms of a

19  discovery deadline.  We would respond in 30 days under the

20  rules.

21          THE COURT:  To the written discovery.

22          MR. JONES:  Yes.  Yes.

23          THE COURT:  Okay.

24          MR. JONES:  And we'll respond earlier if we can.  We

25  want to move this along.  And our responses may be staggered if

1  we can respond to certain things first while we're doing other

2  work.  So I think 45 days to complete fact discovery.

3          THE COURT:  Okay.

4          MR. JONES:  Now, I would ask the court -- I assume

5  that your ruling would also authorize discovery by the

6  defendants within the same parameters.

7          THE COURT:  Yes.

8          MS. LOWRY:  Your Honor, does that mean also to

9  complete the depositions?

10          THE COURT:  That's what he's saying and I think that's

11  unrealistic.

12          MR. JONES:  I really wasn't thinking that.  I was

13  thinking -- I'm sorry, Ms. Lowry.  I was thinking to get all

14  the documents and interrogatory answers to you.  So maybe 45

15  days to complete the written discovery.

16          THE COURT:  Okay.

17          MR. JONES:  Yes.

18          THE COURT:  And if I misunderstood -- obviously, I did

19  misunderstand you.  So I apologize.

20          MR. JONES:  There would be no Thanksgiving or

21  Christmas if we do it in 45 days.

22          THE COURT:  Okay.

23          MS. LOWRY:  But, Your Honor, that does seem excessive

24  and we would ask --

25          THE COURT:  You mean aggressive.

1          MS. LOWRY:  I'm sorry, sir?

2          THE COURT:  You said "excessive."

3          MS. LOWRY:  Excessive.  I said excessive, yes.

4          THE COURT:  What's excessive?

5          MS. LOWRY:  The 45 days to complete the written

6   responses --

7          THE COURT:  Okay.

8          MS. LOWRY:  -- because we would like to start taking

9   the depositions as soon as we can, and we would like to be able

10  to complete the whole discovery period as soon as we can.  And

11  we are prepared to do the depositions as soon as people get

12  identified.  And there are some that we can think will be

13  identified more quickly.  I mean, obviously, Commissioner

14  Dickinson is somebody who's going to be deposed.  But we do

15  need the written responses in order to depose them.

16         THE COURT:  Yeah.  I was thinking 45 days is awfully

17  aggressive to try to get it all done.  And, Mr. Jones, you

18  did -- after I asked my question, you said, well, no, you were

19  thinking that you would get the responses done in the customary

20  30 days.

21         MR. JONES:  And have all of the documents produced

22  within 45 days.  That's really what I was --

23         THE COURT:  Okay.  I understand.

24         MR. JONES:  I thought that's what you were asking.

25         THE COURT:  I will allow that.  Let's do that, that

1    you'd have written responses within 30 days, document

2    production would be completed within 45.

3            And then how long do you think you need to take

4    depositions, Ms. Lowry?

5            MS. LOWRY:  We can do it in two weeks, Your Honor, all

6    the depositions.

7            THE COURT:  Okay.

8            MR. JONES:  Can we, Your Honor, come back -- we've

9    always been impressed with the ability of this court to guide

10   the parties in litigation.  Could we come back at the 45-day

11   point and we will know how many depositions they're requesting?

12           This agency is undergoing multiple federal and state

13   reviews constantly; and the staff is limited, particularly at

14   the very top.  And at the 45-day point or maybe at any -- some

15   point close to that, I'd suggest we confer with you and

16   determine how long do we need for depositions.

17           If they're going to take -- they've asked for, I don't

18   know -- well, they haven't asked for a number; but if it's five

19   depositions of senior people after the 45 days, that's not

20   going to be an easy thing to do during the

21   Christmas-Thanksgiving season and -- and with the schedule of

22   our executives.  But it may -- if it's one person or two

23   people, maybe it's workable.  So I'd suggest reserving that

24   time period.

25           THE COURT:  I hate to say this, but I anticipate that

1   we're going to be on the phone at some point on some discovery

2   issues on this.  What I'd prefer to do is set a deadline.  And

3   there will be the language in this order that is the same

4   language that's in my case management order, that if you have

5   any disputes, then you can bring those to me, but you have to

6   do it before you can file a motion.  And I have a feeling that

7   we'll have at least one telephone conference.

8           I would prefer to set a deadline for everyone to do

9   things.  For example, if I set a date for us to get on the

10  phone, that's going to delay things even more.  I would prefer

11  to go ahead and put the burden on plaintiffs' counsel and a

12  deadline that would require them to go ahead and send out their

13  notices of depositions.  And then we'll know exactly what we're

14  dealing with when we get on the phone and they will have

15  identified by notice who it is that they want to depose and

16  then we can deal with it and it will be faster, because if we

17  can't get it worked out, then everybody knows what motions they

18  need to file.  And after the conference we can get to the

19  motion filing stage instead of maybe having more than one

20  conference on that.

21          So the order of the court is going to be that all

22  discovery must be completed by -- and I'm going to count 60

23  days from today, whatever that is, and I'm going to give that

24  deadline.  And we will identify that defendants must respond --

25  serve responses to this discovery 30 days from today and all

1    responsive documents that they intend to produce be produced 45

2    days from today.

3              MR. JONES:  This is fact discovery, Your Honor?

4              THE COURT:  I don't really -- I'm --

5              MR. JONES:  As opposed to --

6              THE COURT:  Why are you -- instead of expert

7    discovery?

8              MR. JONES:  Yes, sir.  I think the expert discovery --

9    expert opinions, if there are any, are going to be derived from

10   the --

11             THE COURT:  Nobody's brought up the expert issue yet.

12   Are there going to be experts, and if so -- I mean, I know that

13   your discovery already requests information about experts.

14             MS. LOWRY:  Yes, it does.

15             THE COURT:  Okay.  I didn't want to get into this.  I

16   mean, now you have me -- you have my brain going down a totally

17   different course.

18             MR. JONES:  It's not --

19             THE COURT:  -- which is an expert designation

20   deadline.  Let me finish.  And then make sure you're speaking

21   into the mic and let's make sure we're only talking one at a

22   time.

23             I'm going to enter the order -- I'm only going to deal

24   with the issues that are pending before the court.  And if

25   there need to be other issues that need to be addressed, you're

1    going to need to file a motion.  I don't have any of those

2    issues in front of me right now.  I have the plaintiffs'

3    motions for discovery.  I'm granting it.  I'm going to put in

4    the order what I have indicated, and that will be the order of

5    the court.

6            If we need to address some other issues, we'll address

7    them on another day; but I'm only going to decide what's

8    pending before me right now.

9            I will also -- I think that we need to -- I hate that

10   I say things like this sometimes, but I try to be a realist.  I

11   have a feeling that some things may end up getting moved; but I

12   also want us to put in place a structure that if we need to

13   move things, we -- everybody knows what we're dealing with.  So

14   my order is also going to include that the plaintiffs'

15   supplemental response to the defendants' motion must be filed

16   by, and it's going to be 30 days from the discovery deadline.

17   All right.

18           And then I'm also going to put in there that the

19   defendants' rebuttal in support of their motion must be filed

20   by, and it will be 30 days from the deadline for plaintiffs'

21   supplemental response.  And if we have other discovery issues

22   or you face any additional discovery issues, call my chambers

23   and we'll deal with them.  Okay.

24           Anything else from the plaintiff?

25           MR. JONES:  No, Your Honor.

1          MS. LOWRY:  Nothing, Your Honor.

2          THE COURT:  All right.  Anything further from the

3    defendants?

4          MR. JONES:  No, Your Honor.

5          THE COURT:  All right.  That will be the order of the

6    court.  Thank you.

7       (HEARING CONCLUDED)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3          I, MARY VIRGINIA "Gina" MORRIS, Official Court

 4   Reporter, United States District Court, Southern District of

 5   Mississippi, do hereby certify that the above and foregoing

 6   pages contain a full, true and correct transcript of the

 7   proceedings had in the aforenamed case at the time and

 8   place indicated, which proceedings were recorded by me to

 9   the best of my skill and ability.

10          I certify that the transcript fees and format

11   comply with those prescribed by the Court and Judicial

12   Conference of the United States.

13          This the 27th day of August, 2018.

14

15                         s/ Gina Morris
                           U.S. DISTRICT COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```