MISSISSIPPI LEGISLATURE

REGULAR SESSION 2016

By: Senator(s) Kirby

To: Public Health and
Welfare; Appropriations

SENATE BILL NO. 2179
(As Sent to Governor)

```
 1        AN ACT TO CREATE A NEW MISSISSIPPI DEPARTMENT OF CHILD
 2   PROTECTION SERVICES; TO PROVIDE FOR A COMMISSIONER OF CHILD
 3   PROTECTION SERVICES TO BE APPOINTED BY THE GOVERNOR; TO PROVIDE
 4   THAT THE EXECUTIVE DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES
 5   AND THE COMMISSIONER OF CHILD PROTECTION SERVICES SHALL DEVELOP A
 6   TRANSITION PLAN FOR IMPLEMENTATION OF THE NEW DEPARTMENT; TO
 7   PROVIDE FOR THE TRANSFER OF THE FUNCTIONS OF THE OFFICE OF FAMILY
 8   AND CHILDREN'S SERVICES IN THE DEPARTMENT OF HUMAN SERVICES TO THE
 9   NEW MISSISSIPPI DEPARTMENT OF CHILD PROTECTION SERVICES EFFECTIVE
10   JULY 1, 2018; TO AMEND SECTION 43-15-111, MISSISSIPPI CODE OF
11   1972, IN CONFORMITY; TO AMEND SECTION 25-3-39, MISSISSIPPI CODE OF
12   1972, TO EXEMPT THE SALARY OF THE COMMISSIONER OF CHILD PROTECTION
13   SERVICES FROM STATUTORY SALARY LIMITATIONS; TO AMEND SECTION
14   25-9-120, MISSISSIPPI CODE OF 1972, TO EXEMPT PERSONAL SERVICE
15   CONTRACTS ENTERED INTO BY THE DEPARTMENT OF HUMAN SERVICES OR THE
16   DEPARTMENT OF CHILD PROTECTION SERVICES FROM THE REGULATIONS OF
17   THE PERSONAL SERVICE CONTRACT REVIEW BOARD; TO AMEND SECTION
18   25-9-127, MISSISSIPPI CODE OF 1972, TO EXEMPT PERSONNEL ACTIONS OF
19   THE DEPARTMENT OF HUMAN SERVICES AND THE DEPARTMENT OF CHILD
20   PROTECTION SERVICES FROM STATE PERSONNEL BOARD REGULATIONS; TO
21   AMEND SECTIONS 25-53-1 AND 25-53-5, MISSISSIPPI CODE OF 1972, TO
22   EXEMPT ACTIONS OF THE DEPARTMENT OF HUMAN SERVICES AND THE
23   DEPARTMENT OF CHILD PROTECTION SERVICES FROM THE REGULATIONS OF
24   THE MISSISSIPPI DEPARTMENT OF INFORMATION TECHNOLOGY SERVICES; AND
25   FOR RELATED PURPOSES.

26        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

27        SECTION 1.   (1)   There is hereby created a Mississippi

28   Department of Child Protection Services.
```



~ OFFICIAL ~



EXHIBIT
D

29      (2)   The Chief Administrative Officer of the Department of

30   Child Protection Services shall be the Commissioner of Child

31   Protection Services who shall be appointed by the Governor with

32   the advice and consent of the Senate.   The commissioner shall

33   possess the following qualifications:

34           (a)   A bachelor's degree from an accredited institution

35   of higher learning and ten (10) years' experience in management,

36   public administration, finance or accounting; or

37           (b)   A master's or doctoral degree from an accredited

38   institution of higher learning and five (5) years' experience in

39   management, public administration, finance, law or accounting.

40      (3)   On a temporary basis, but for no longer than March 1,

41   2017, the Department of Child Protection Services may function as

42   a Division of the Department of Human Services.

43      (4)   The Commissioner of Child Protection Services may assign

44   to the appropriate offices such powers and duties deemed

45   appropriate to carry out the lawful functions of the programs

46   transferred to the department under this act.   The commissioner is

47   authorized to employ three (3) administrators who shall serve at

48   his will and pleasure to direct the bureaus and offices necessary

49   to carry out the lawful functions of the programs transferred to

50   the department.

51      (5)   The Commissioner of Child Protection Services and the

52   Executive Director of the Department of Human Services shall

53   develop and implement a plan for the orderly establishment of the

54   Department of Child Protection Services and its transition from

55   the Office of Family and Children's Services of the Department of

56   Human Services.  The plan shall:

57         (a)  Describe a mechanism for the transfer of any

58   equipment, supplies, records, furnishings or other materials,

59   resources or funds dedicated to the operation of the Office of

60   Family and Children's Services of the Department of Human

61   Services, which may be useful to the Department of Child

62   Protection Services;

63         (b)  Determine the allocation of resources between the

64   newly created Department of Child Protection Services and the

65   Department of Human Services, as practicable;

66         (c)  Determine the allocation of functions where the

67   performance of services may be shared between the Department of

68   Child Protection Services and other employees of the Department of

69   Human Services, as practicable;

70         (d)  Determine whether any administrative support

71   services, such as Information Technology Services, bookkeeping and

72   payroll can continue to be provided by the Department of Human

73   Services; and

74         (e)  Identify other areas deemed relevant by the

75   commissioner and make recommendations thereon to achieve an

76   orderly transition.

77     The Commissioner of Child Protection Services and the

78   Executive Director of the Department of Human Services shall

79  recommend any necessary legislation to the Governor and the

80  Legislature before the 2017 Regular Session.

81       (6)   The new Mississippi Department of Child Protection

82  Services is authorized to carry out the duties and

83  responsibilities of the Office of Family and Children's Services

84  of the Department of Human Services during the transition period

85  from and after passage of this act through July 1, 2018.  The

86  Office of Family and Children's Services of the Department of

87  Human Services is directed to cooperate with the new department in

88  transferring resources and employees in furtherance of this act.

89  From and after July 1, 2018, the programs and services provided by

90  the Office of Family and Children's Services of the Department of

91  Human Services under the following statutes shall be provided by

92  the Department of Child Protection Services:  Sections 41-87-5,

93  41-111-1, 43-1-2, 43-1-51, 43-1-55, 43-1-57, 43-1-63, 43-15-3,

94  43-15-5, 43-15-6, 43-15-13, 43-15-15, 43-15-17, 43-15-19,

95  43-15-21, 43-15-23, 43-15-51, 43-15-103, 43-15-105, 43-15-115,

96  43-15-125, 43-15-201, 43-15-203, 43-15-207 and 43-18-3,

97  Mississippi Code of 1972.

98       **SECTION 2.**  Section 43-15-111, Mississippi Code of 1972, is

99  amended as follows:

100       43-15-111.  The provisions of this * * * <u>act</u> do not apply to:

101          ( * * *<u>a</u>)  A facility or program owned or operated by an

102  agency of the State of Mississippi or United States government;

~ **OFFICIAL** ~

103    ( * * *b)   A facility or program operated by or under an

104    exclusive contract with the Department of Corrections;

105    ( * * *c)   Schools and educational programs and

106    facilities, the primary purpose of which is to provide a regular

107    course of study necessary for advancement to a higher educational

108    level or completion of a prescribed course of study, and which

109    may, incident to such educational purposes, provide boarding

110    facilities to the students of such programs.

111    ( * * *d)   Any residential child-caring agency and/or

112    child-placing agency operated or conducted under the auspices of a

113    religious institution and meeting the requirements or conditions

114    of this section shall be exempt from the licensure requirements of

115    this article under the following conditions:   ( * * *i) such

116    religious institution must have a tax exempt status as a nonprofit

117    religious institution in accordance with Section 501(c) of the

118    Internal Revenue Code of 1954, as amended, or the real property

119    owned and exclusively occupied by the religious institution must

120    be exempt from location taxation, and ( * * *ii) the agency or

121    institution must be in compliance with the requirements of the

122    Child Residential Home Notification Act, Section 43-16-1 et seq.,

123    Mississippi Code of 1972, and must not be in violation of Section

124    43-16-21(c) regarding the abuse and/or neglect of any child served

125    by such home who has been adjudicated by the youth court as an

126    abused and/or neglected child.   Nothing in this * * * paragraph

127    shall prohibit a residential child-caring agency or child-placing

128  agency operated by or conducted under the auspices of a religious

129  institution from obtaining a license pursuant to this article.

130      **SECTION 3.**  Section 25-3-39, Mississippi Code of 1972, is

131  amended as follows:

132      25-3-39.  (1)  (a)  Except as otherwise provided in this

133  section, no public officer, public employee, administrator, or

134  executive head of any arm or agency of the state, in the executive

135  branch of government, shall be paid a salary or compensation,

136  directly or indirectly, greater than one hundred fifty percent

137  (150%) of the salary fixed in Section 25-3-31 for the Governor,

138  nor shall the salary of any public officer, public employee,

139  administrator, or executive head of any arm or agency of the

140  state, in the executive branch of government, be supplemented with

141  any funds from any source, including federal or private funds.

142  Such salaries shall be completely paid by the state.  All academic

143  officials, members of the teaching staffs and employees of the

144  state institutions of higher learning, the Mississippi Community

145  College Board, and community and junior colleges, and licensed

146  physicians who are public employees, shall be exempt from this

147  subsection.  All professional employees who hold a bachelor's

148  degree or more advanced degree from an accredited four-year

149  college or university or a certificate or license issued by a

150  state licensing board, commission or agency and who are employed

151  by the Department of Mental Health shall be exempt from this

152  subsection if the State Personnel Board approves the exemption.

153    The Commissioner of Child Protection Services is exempt from this

154    subsection.

155         (b)   The Governor shall fix the annual salary of the

156    Executive Director of the Mississippi Development Authority, the

157    annual salary of the Commissioner of Child Protection Services,

158    and the annual salary of the Chief of Staff of the Governor's

159    Office.  The salary of the Governor's Chief of Staff shall not be

160    greater than one hundred fifty percent (150%) of the salary of the

161    Governor and shall be completely paid by the state without

162    supplementation from another source.  The salary of the Executive

163    Director of the Mississippi Development Authority may be greater

164    than one hundred fifty percent (150%) of the salary of the

165    Governor and may be supplemented with funds from any source,

166    including federal or private funds; however, any state funds used

167    to pay the salary of the Executive Director of the Mississippi

168    Development Authority shall not exceed one hundred fifty percent

169    (150%) of the salary of the Governor.  If the executive director's

170    salary is supplemented with private funds, the Mississippi

171    Development Authority shall publish on its website the amount of

172    the supplement and the name of the donor of the private funds.

173    (2)  No public officer, employee or administrator shall be

174    paid a salary or compensation, directly or indirectly, in excess

175    of the salary authorized to be paid the executive head of the

176    state agency or department in which he is employed.  The State

177    Personnel Board, based upon its findings of fact, may exempt

178  physicians and actuaries from this subsection when the acquisition

179  of such professional services is precluded based on the prevailing

180  wage in the relevant labor market.

181      (3)  The executive head of any state agency or department

182  appointed by the Governor, in such executive head's discretion,

183  may waive all or any portion of the salary or compensation

184  lawfully established for the position.

185      **SECTION 4.**  Section 25-9-120, Mississippi Code of 1972, is

186  amended as follows:

187      25-9-120.  (1)  Contract personnel, whether classified as

188  contract workers or independent contractors shall not be deemed

189  state service or nonstate service employees of the State of

190  Mississippi, and shall not be eligible to participate in the

191  Public Employees' Retirement System, or the State and School

192  Employees' Health Insurance Plan, nor be allowed credit for

193  personal and sick leave and other leave benefits as employees of

194  the State of Mississippi, notwithstanding Sections 25-3-91 through

195  25-3-101; 25-9-101 through 25-9-151; 25-11-1 through 25-11-126;

196  25-11-128 through 25-11-131; 25-15-1 through 25-15-23 and for the

197  purpose set forth herein.  Contract workers, i.e., contract

198  personnel who do not meet the criteria of independent contractors,

199  shall be subject to the provisions of Section 25-11-127.

200      (2)  (a)  There is hereby created the Personal Service

201  Contract Review Board, which shall be composed of the following

202  members:

203                    (i)   The State Personnel Director;

204                    (ii)   Two (2) individuals appointed by the Governor

205    with the advice and consent of the Senate;

206                    (iii)   Two (2) individuals appointed by the

207    Lieutenant Governor with the advice and consent of the Senate; and

208                    (iv)   The Executive Director of the Department of

209    Finance and Administration, serving as an ex officio member;

210           (b)   The initial terms of each appointee shall be as

211    follows:

212                    (i)   One (1) member appointed by the Governor to

213    serve for a term ending June 30, 2017;

214                    (ii)   One (1) member appointed by the Governor to

215    serve for a term ending June 30, 2020;

216                    (iii)   One (1) member appointed by the Lieutenant

217    Governor to serve for a term ending June 30, 2018; and

218                    (iv)   One (1) member appointed by the Lieutenant

219    Governor to serve for a term ending June 30, 2019.

220           After the expiration of the initial terms, all appointed

221    members' terms shall be for a period of four (4) years from the

222    expiration date of the previous term, and until such time as the

223    member's successor is duly appointed and qualified;

224                    (c)   When appointing members to the Personal Service

225    Contract Review Board, the Governor and Lieutenant Governor shall

226    take into consideration persons who possess at least five (5)

227    years of management experience in general business, health care,

228  or finance for an organization, corporation, or other public or
229  private entity.  Any person, or any employee or owner of a
230  company, who receives any grants, procurements or contracts that
231  are subject to approval under this section shall not be appointed
232  to the Personal Service Contract Review Board.  Any person, or any
233  employee or owner of a company, who is a principal of the source
234  providing the personal or professional service shall not be
235  appointed to the Personal Service Contract Review Board if the
236  principal owns or controls a greater than five percent (5%)
237  interest or has an ownership value of One Million Dollars
238  ($1,000,000.00) in the source's business, whichever is smaller;

239          (d)  Members of the Personal Service Contract Review
240  Board shall be entitled to per diem as authorized by Section
241  25-3-69 and travel reimbursement as authorized by Section 25-3-41;

242          (e)  The State Personnel Director shall be chairman and
243  shall preside over the meetings of the board.  The board shall
244  annually elect a vice chairman, who shall serve in the absence of
245  the chairman.  No business shall be transacted, including adoption
246  of rules of procedure, without the presence of a quorum of the
247  board.  Three (3) members shall be a quorum.  No action shall be
248  valid unless approved by the chairman and two (2) other of those
249  members present and voting, entered upon the minutes of the board
250  and signed by the chairman.  Necessary clerical and administrative
251  support for the board shall be provided by the State Personnel
252  Board.  Minutes shall be kept of the proceedings of each meeting,

253    copies of which shall be filed on a monthly basis with the

254    Chairmen of the Accountability, Efficiency and Transparency

255    Committees of the Senate and House of Representatives.

256         (3)   The Personal Service Contract Review Board shall have

257    the following powers and responsibilities:

258              (a)   Promulgate rules and regulations governing the

259    solicitation and selection of contractual services personnel

260    including personal and professional services contracts for any

261    form of consulting, policy analysis, public relations, marketing,

262    public affairs, legislative advocacy services or any other

263    contract that the board deems appropriate for oversight, with the

264    exception of any personal service contracts entered into for

265    computer or information technology-related services governed by

266    the Mississippi Department of Information Technology Services, any

267    personal service contracts entered into by the Mississippi

268    Department of Transportation, any personal service contracts

269    entered into by the Department of Human Services through June 30,

270    2019, which the Executive Director of the Department of Human

271    Services determines would be useful in establishing and operating

272    the Department of Child Protection Services, any personal service

273    contracts entered into by the Department of Child Protection

274    Services through June 30, 2019, and any contract for attorney,

275    accountant, auditor, architect, engineer, and utility rate expert

276    services.  Any such rules and regulations shall provide for

277    maintaining continuous internal audit covering the activities of

278  such agency affecting its revenue and expenditures as required

279  under Section 7-7-3(6)(d) * * *.  Any rules and regulation changes

280  related to personal and professional services contracts that may

281  be proposed by the Personal Service Contract Review Board shall be

282  submitted to the Chairmen of the Accountability, Efficiency and

283  Transparency Committees of the Senate and House of Representatives

284  at least fifteen (15) days prior to the board voting on the

285  proposed changes, and such rules and regulation changes, if

286  adopted, shall be promulgated in accordance with the Mississippi

287  Administrative Procedures Act;

288          (b)  Approve all personal and professional services

289  contracts involving the expenditures of funds in excess of

290  Seventy-five Thousand Dollars ($75,000.00);

291          (c)  Develop mandatory standards with respect to

292  contractual services personnel which require invitations for

293  public bid, requests for proposals, record keeping and financial

294  responsibility of contractors.  The Personal Service Contract

295  Review Board shall, unless exempted under this paragraph (c) or

296  under paragraph (d) or (j) of this subsection (3), require the

297  agency involved to advertise such contract for public bid, and may

298  reserve the right to reject any or all bids;

299          (i)  Any agency that seeks to procure personal or

300  professional service contracts that are required to be approved by

301  the Personal Service Contract Review Board may petition for relief

302  from any requirement that the agency use competitive bidding as a

303  procurement method.  The agency shall be required to show to the
304  Personal Service Contract Review Board's satisfaction one (1) of
305  the following:

306          1.  Federal law or federal court order has
307  established limitations on the use of competitive bidding for the
308  personal or professional contracts the agency is seeking to
309  procure; or

310          2.  The agency is required to hire
311  professionals whose members are prohibited from bidding by the
312  rules of professional conduct promulgated by the regulating agency
313  or agencies for that professional; or

314          3.  The agency can establish that the use of
315  competitive bidding will be counterproductive to the business of
316  the agency.

317          (ii)  If the Personal Service Contract Review Board
318  determines that competitive bidding shall not be required for the
319  particular personal or professional service the agency seeks to
320  procure, then the Personal Service Contract Review Board shall
321  direct the agency to establish a competitive procurement procedure
322  for selecting the personal or professional service contract that
323  ensures open, transparent procedures for making a selection.  Such
324  procedures shall include, but not be limited to, qualifications
325  based selection or requests for qualifications.  The Personal
326  Service Contract Review Board shall also have the authority to

327    audit the records of any agency to ensure it has used competitive

328    procedures to contract for the personal or professional service;

329         (d)  Prescribe certain circumstances whereby agency

330    heads may enter into contracts for personal and professional

331    services without receiving prior approval from the Personal

332    Service Contract Review Board.  The Personal Service Contract

333    Review Board may establish a preapproved list of providers of

334    various personal and professional services for set prices with

335    which state agencies may contract without bidding or prior

336    approval from the board;

337         (e)  To provide standards for the issuance of requests

338    for proposals, the evaluation of proposals received, consideration

339    of costs and quality of services proposed, contract negotiations,

340    the administrative monitoring of contract performance by the

341    agency and successful steps in terminating a contract;

342         (f)  To present recommendations for governmental

343    privatization and to evaluate privatization proposals submitted by

344    any state agency;

345         (g)  To authorize personal and professional service

346    contracts to be effective for more than one (1) year provided a

347    funding condition is included in any such multiple year contract,

348    except the State Board of Education, which shall have the

349    authority to enter into contractual agreements for student

350    assessment for a period up to ten (10) years.  The State Board of

351  Education shall procure these services in accordance with the

352  Personal Service Contract Review Board procurement regulations;

353           (h)   To request the State Auditor to conduct a

354  performance audit on any personal or professional service

355  contract;

356           (i)   Prepare an annual report to the Legislature

357  concerning the issuance of personal service contracts during the

358  previous year, collecting any necessary information from state

359  agencies in making such report;

360           (j)   Develop and implement the following standards and

361  procedures for the approval of any sole source contract for

362  personal and professional services regardless of the value of the

363  procurement:

364                (i)   For the purposes of this paragraph (j), the

365  term "sole source" means only one (1) source is available that can

366  provide the required personal or professional service.

367                (ii)  An agency that has been issued a binding,

368  valid court order mandating that a particular source or provider

369  must be used for the required service must include a copy of the

370  applicable court order in all future sole source contract reviews

371  for the particular personal or professional service referenced in

372  the court order.

373                (iii) Any agency alleging to have a sole source

374  for any personal or professional service shall have published on

375  the procurement portal website established by Sections 25-53-151

376  and 27-104-165, for at least fourteen (14) days, the terms of the
377  proposed contract for those services.  In addition, the
378  publication shall include, but is not limited to, the following
379  information:

380              1.  The personal or professional service
381  offered in the contract;

382              2.  An explanation of why the personal or
383  professional service is the only one that can meet the needs of
384  the agency;

385              3.  An explanation of why the source is the
386  only person or entity that can provide the required personal or
387  professional service;

388              4.  An explanation of why the amount to be
389  expended for the personal or professional service is reasonable;
390  and

391              5.  The efforts that the agency went through
392  to obtain the best possible price for the personal or professional
393  service.

394              (iv)  If any person or entity objects and proposes
395  that the personal or professional service published under
396  subparagraph (iii) of this paragraph (j) is not a sole source
397  service and can be provided by another person or entity, then the
398  objecting person or entity shall notify the Personal Service
399  Contract Review Board and the agency that published the proposed

400    sole source contract with a detailed explanation of why the
401    personal or professional service is not a sole source service.
402                    (v)    1.    If the agency determines after review that
403    the personal or professional service in the proposed sole source
404    contract can be provided by another person or entity, then the
405    agency must withdraw the sole source contract publication from the
406    procurement portal website and submit the procurement of the
407    personal or professional service to an advertised competitive bid
408    or selection process.
409                    2.    If the agency determines after review that
410    there is only one (1) source for the required personal or
411    professional service, then the agency may appeal to the Personal
412    Service Contract Review Board.    The agency has the burden of
413    proving that the personal or professional service is only provided
414    by one (1) source.
415                    3.    If the Personal Service Contract Review
416    Board has any reasonable doubt as to whether the personal or
417    professional service can only be provided by one (1) source, then
418    the agency must submit the procurement of the personal or
419    professional service to an advertised competitive bid or selection
420    process.    No action taken by the Personal Service Contract Review
421    Board in this appeal process shall be valid unless approved by the
422    chairman and two (2) other members of the Personal Service
423    Contract Review Board present and voting.

424          (vi)  The Personal Service Contract Review Board
425 shall prepare and submit a quarterly report to the House of
426 Representatives and Senate Committees on Accountability,
427 Efficiency and Transparency that details the sole source contracts
428 presented to the Personal Service Contract Review Board and the
429 reasons that the Personal Service Contract Review Board approved
430 or rejected each contract.  Such quarterly reports shall also
431 include the documentation and memoranda required in subsection (5)
432 of this section.  An agency that submitted a sole source contract
433 shall be prepared to explain the sole source contract to each
434 committee by December 15 of each year upon request by the
435 committee.

436     (4)  Any contract submitted to the Personal Service Contract
437 Review Board for review and approval shall be presumed to be
438 approved if the Personal Service Contract Review Board does not
439 object to the contract within thirty (30) days of the agency's
440 submission of the contract.  All submissions shall be made thirty
441 (30) days before the monthly meeting of the Personal Service
442 Contract Review Board or as prescribed by the Personal Service
443 Contract Review Board.  If the Personal Service Contract Review
444 Board rejects any contract submitted for review or approval, the
445 Personal Service Contract Review Board shall clearly set out the
446 reasons for its action, including, but not limited to, the policy
447 that the agency has violated in its submitted contract and any
448 corrective actions that the agency may take to amend the contract

449  to comply with the rules and regulations of the Personal Service

450  Contract Review Board.

451       (5)  All sole source contracts for personal and professional

452  services awarded by state agencies, whether approved by an agency

453  head or the Personal Service Contract Review Board, shall contain

454  in the procurement file a written determination for the approval,

455  using a request form furnished by the Personal Service Contract

456  Review Board.  The written determination shall document the basis

457  for the determination, including any market analysis conducted in

458  order to ensure that the service required was practicably

459  available from only one (1) source.  A memorandum shall accompany

460  the request form and address the following four (4) points:

461       (a)  Explanation of why this service is the only service

462  that can meet the needs of the purchasing agency;

463       (b)  Explanation of why this vendor is the only

464  practicably available source from which to obtain this service;

465       (c)  Explanation of why the price is considered

466  reasonable; and

467       (d)  Description of the efforts that were made to

468  conduct a noncompetitive negotiation to get the best possible

469  price for the taxpayers.

470       (6)  The Personal Service Contract Review Board shall develop

471  and promulgate rules and regulations to define the allowable legal

472  relationship between contract employees and the contracting

473  departments, agencies and institutions of state government under

474  the jurisdiction of the State Personnel Board, in compliance with

475  the applicable rules and regulations of the federal Internal

476  Revenue Service (IRS) for federal employment tax purposes.  Under

477  these regulations, the usual common law rules are applicable to

478  determine and require that such worker is an independent

479  contractor and not an employee, requiring evidence of lawful

480  behavioral control, lawful financial control and lawful

481  relationship of the parties.  Any state department, agency or

482  institution shall only be authorized to contract for personnel

483  services in compliance with * * * <u>those</u> regulations.

484       (7)  No member of the Personal Service Contract Review Board

485  shall use his official authority or influence to coerce, by threat

486  of discharge from employment, or otherwise, the purchase of

487  commodities or the contracting for personal or professional

488  services under this section.

489       (8)  Nothing in this section shall impair or limit the

490  authority of the Board of Trustees of the Public Employees'

491  Retirement System to enter into any personal or professional

492  services contracts directly related to their constitutional

493  obligation to manage the trust funds, including, but not limited

494  to, actuarial, custodial banks, cash management, investment

495  consultant, and investment management contracts.

496       <u>(9)  Notwithstanding the exemption of personal service</u>

497  <u>contracts entered into by the Department of Human Services and</u>

498  <u>personal service contracts entered into by the Department of Child</u>

499  Protection Services from the provisions of this section under

500  subsection (3)(a), before the Department of Human Services or the

501  Department of Child Protection Services may enter into a personal

502  service contract, the department(s) shall give notice of the

503  proposed personal service contract to the Personal Service

504  Contract Review Board for any recommendations by the board.  Upon

505  receipt of the notice, the board shall post the notice on its

506  website and on the procurement portal website established by

507  Sections 25-53-151 and 27-104-165.  If the board does not respond

508  to the department(s) within seven (7) calendar days after

509  receiving the notice, the department(s) may enter the proposed

510  personal service contract.  If the board responds to the

511  department(s) within seven (7) calendar days, then the board has

512  seven (7) calendar days from the date of its initial response to

513  provide any additional recommendations.  After the end of the

514  second seven-day period, the department(s) may enter the proposed

515  personal service contract.  The board is not authorized to

516  disapprove any proposed personal service contracts.  This

517  subsection shall stand repealed on July 1, 2019.

518      **SECTION 5.**  Section 25-9-127, Mississippi Code of 1972, is

519  amended as follows:

520      25-9-127.  (1)  No employee of any department, agency or

521  institution who is included under this chapter or hereafter

522  included under its authority, and who is subject to the rules and

523  regulations prescribed by the state personnel system, may be

524    dismissed or otherwise adversely affected as to compensation or

525    employment status except for inefficiency or other good cause, and

526    after written notice and hearing within the department, agency or

527    institution as shall be specified in the rules and regulations of

528    the State Personnel Board complying with due process of law; and

529    any employee who has by written notice of dismissal or action

530    adversely affecting his compensation or employment status shall,

531    on hearing and on any appeal of any decision made in such action,

532    be required to furnish evidence that the reasons stated in the

533    notice of dismissal or action adversely affecting his compensation

534    or employment status are not true or are not sufficient grounds

535    for the action taken; provided, however, that this provision shall

536    not apply (a) to persons separated from any department, agency or

537    institution due to curtailment of funds or reduction in staff when

538    such separation is in accordance with rules and regulations of the

539    state personnel system; (b) during the probationary period of

540    state service of twelve (12) months; and (c) to an executive

541    officer of any state agency who serves at the will and pleasure of

542    the Governor, board, commission or other appointing authority.

543        (2)   The operation of a state-owned motor vehicle without a

544    valid Mississippi driver's license by an employee of any

545    department, agency or institution that is included under this

546    chapter and that is subject to the rules and regulations of the

547    state personnel system shall constitute good cause for dismissal

548    of such person from employment.

549        (3)  Beginning July 1, 1999, every male between the ages of

550   eighteen (18) and twenty-six (26) who is required to register

551   under the federal Military Selective Service Act, 50 USCS App.

552   453, and who is an employee of the state shall not be promoted to

553   any higher position of employment with the state until he submits

554   to the person, commission, board or agency by which he is employed

555   satisfactory documentation of his compliance with the draft

556   registration requirements of the Military Selective Service Act.

557   The documentation shall include a signed affirmation under penalty

558   of perjury that the male employee has complied with the

559   requirements of the Military Selective Service Act.

560        (4)  For a period of two (2) years beginning July 1, 2014,

561   the provisions of subsection (1) shall not apply to the personnel

562   actions of the State Department of Education that are subject to

563   the rules and regulations of the State Personnel Board, and all

564   employees of the department shall be classified as nonstate

565   service during that period.  However, any employee hired after

566   July 1, 2014, by the department shall meet the criteria of the

567   State Personnel Board as it presently exists for employment.  The

568   State Superintendent of Public Education and the State Board of

569   Education shall consult with the Office of the Attorney General

570   before taking personnel actions authorized by this section to

571   review those actions for compliance with applicable state and

572   federal law.

573          It is not the intention or effect of this section to include

574     any school attendance officer in any exemption from coverage under

575     the State Personnel Board policy or regulations, including, but

576     not limited to, termination and conditions of employment.

577          (5)   For a period of one (1) year beginning July 1, 2015, the

578     provisions of subsection (1) shall not apply to the personnel

579     actions of the Department of Corrections, and all employees of the

580     department shall be classified as nonstate service during that

581     period.   However, any employee hired after July 1, 2015, by the

582     department shall meet the criteria of the State Personnel Board as

583     it presently exists for employment.   The Commissioner of

584     Corrections shall consult with the Office of the Attorney General

585     before taking personnel actions authorized by this section to

586     review those actions for compliance with applicable state and

587     federal law.

588          (6)   Through July 1, 2019, the provisions of subsection (1)

589     of this section shall not apply to the personnel actions of the

590     Department of Human Services that are subject to the rules and

591     regulations of the State Personnel Board, and all employees of the

592     department shall be classified as nonstate service during that

593     period.   Any employee hired on or after July 1, 2019, by the

594     department shall meet the criteria of the State Personnel Board as

595     it presently exists for employment.   The Executive Director of

596     Human Services shall consult with the Office of the Attorney

597     General before taking personnel actions authorized by this section

598   to review those actions for compliance with applicable state and

599   federal law.

600       (7)  Through July 1, 2019, the provisions of subsection (1)

601   of this section shall not apply to the personnel actions of the

602   Department of Child Protection Services that are subject to the

603   rules and regulations of the State Personnel Board, and all

604   employees of the department shall be classified as nonstate

605   service during that period.  Any employee hired on or after July

606   1, 2019, by the division shall meet the criteria of the State

607   Personnel Board as it presently exists for employment.  The

608   Commissioner of Child Protection Services shall consult with the

609   Office of the Attorney General before taking personnel actions

610   authorized by this section to review those actions for compliance

611   with applicable state and federal law.

612       **SECTION 6.**  Section 25-53-1, Mississippi Code of 1972, is

613   amended as follows:

614       25-53-1.  The Legislature * * * recognizes that in order for

615   the State of Mississippi to receive the maximum use and benefit

616   from information technology and services now in operation or which

617   will in the future be placed in operation, there should be full

618   cooperation and cohesive planning and effort by and between the

619   several state agencies and that it is the responsibility of

620   the * * * the Legislature to provide statutory authority therefor.

621   The Legislature, therefore, declares and determines that for these

622   and other related purposes there is hereby established an agency

623 of state government to be known as the Mississippi Department of
624 Information Technology Services (MDITS).  The Legislature further
625 declares that the Mississippi Department of Information Technology
626 Services (MDITS) shall provide statewide services that facilitate
627 cost-effective information processing and telecommunication
628 solutions.  State agencies shall work in full cooperation with the
629 board of MDITS to identify opportunities to minimize duplication,
630 reduce costs and improve the efficiency of providing common
631 technology services across agency boundaries.  The provisions of
632 this chapter shall not apply to the Department of Human Services
633 for a period of three (3) years beginning July 1, 2016.  The
634 provisions of this chapter shall not apply to the Department of
635 Child Protection Services for a period of three (3) years
636 beginning July 1, 2016.
637     Notwithstanding the exemption of the Department of Human
638 Services and the Department of Child Protection Services from the
639 provisions of this section, before the Department of Human
640 Services or the Department of Child Protection Services may take
641 an action that would otherwise be subject to the provisions of
642 this section, the department(s) shall give notice of the proposed
643 action to the MDITS for any recommendations by the MDITS.  Upon
644 receipt of the notice, the MDITS shall post the notice on its
645 website and on the procurement portal website established by
646 Sections 25-53-151 and 27-104-165.  If the MDITS does not respond
647 to the department(s) within seven (7) calendar days after

648  receiving the notice, the department(s) may take the proposed

649  action.  If the MDITS responds to the department(s) within seven

650  (7) calendar days, then the MDITS has seven (7) calendar days from

651  the date of its initial response to provide any additional

652  recommendations.  After the end of the second seven-day period,

653  the department(s) may take the proposed action.  The MDITS is not

654  authorized to disapprove any proposed actions that would otherwise

655  be subject to the provisions of this section.  This paragraph

656  shall stand repealed on July 1, 2019.

657      **SECTION 7.**  Section 25-53-5, Mississippi Code of 1972, is

658  amended as follows:

659      25-53-5.  The authority shall have the following powers,

660  duties, and responsibilities:

661          (a)  (i)  The authority shall provide for the

662  development of plans for the efficient acquisition and utilization

663  of computer equipment and services by all agencies of state

664  government, and provide for their implementation.  In so doing,

665  the authority may use the MDITS' staff, at the discretion of the

666  executive director of the authority, or the authority may contract

667  for the services of qualified consulting firms in the field of

668  information technology and utilize the service of such consultants

669  as may be necessary for such purposes.  Pursuant to Section

670  25-53-1, the provisions of this section shall not apply to the

671  Department of Human Services for a period of three (3) years

672  beginning on July 1, 2016.  Pursuant to Section 25-53-1, the

673  provisions of this section shall not apply to the Department of

674  Child Protection Services for a period of three (3) years

675  beginning July 1, 2016.

676           (ii)  Notwithstanding the exemption of the

677  Department of Human Services and the Department of Child

678  Protection Services from the provisions of this section, before

679  the Department of Human Services or the Department of Child

680  Protection Services may take an action that would otherwise be

681  subject to the provisions of this section, the department(s) shall

682  give notice of the proposed action to the MDITS for any

683  recommendations by the MDITS.  Upon receipt of the notice, the

684  MDITS shall post the notice on its website and on the procurement

685  portal website established by Sections 25-53-151 and 27-104-165.

686  If the MDITS does not respond to the department(s) within seven

687  (7) calendar days after receiving the notice, the department(s)

688  may take the proposed action.  If the MDITS responds to the

689  department(s) within seven (7) calendar days, then the MDITS has

690  seven (7) calendar days from the date of its initial response to

691  provide any additional recommendations.  After the end of the

692  second seven-day period, the department(s) may take the proposed

693  action.  The MDITS is not authorized to disapprove any proposed

694  actions that would otherwise be subject to the provisions of this

695  section.  This subparagraph (ii) shall stand repealed on July 1,

696  2019.

697          (b)  The authority shall immediately institute
698     procedures for carrying out the purposes of this chapter and
699     supervise the efficient execution of the powers and duties of the
700     office of executive director of the authority.  In the execution
701     of its functions under this chapter, the authority shall maintain
702     as a paramount consideration the successful internal organization
703     and operation of the several agencies so that efficiency existing
704     therein shall not be adversely affected or impaired.  In executing
705     its functions in relation to the institutions of higher learning
706     and junior colleges in the state, the authority shall take into
707     consideration the special needs of such institutions in relation
708     to the fields of teaching and scientific research.

709          (c)  Title of whatever nature of all computer equipment
710     now vested in any agency of the State of Mississippi is hereby
711     vested in the authority, and no such equipment shall be disposed
712     of in any manner except in accordance with the direction of the
713     authority or under the provisions of such rules and regulations as
714     may hereafter be adopted by the authority in relation thereto.

715          (d)  The authority shall adopt rules, regulations, and
716     procedures governing the acquisition of computer and
717     telecommunications equipment and services which shall, to the
718     fullest extent practicable, insure the maximum of competition
719     between all manufacturers of supplies or equipment or services.
720     In the writing of specifications, in the making of contracts
721     relating to the acquisition of such equipment and services, and in

722    the performance of its other duties the authority shall provide

723    for the maximum compatibility of all information systems hereafter

724    installed or utilized by all state agencies and may require the

725    use of common computer languages where necessary to accomplish the

726    purposes of this chapter.  The authority may establish by

727    regulation and charge reasonable fees on a nondiscriminatory basis

728    for the furnishing to bidders of copies of bid specifications and

729    other documents issued by the authority.

730         (e)  The authority shall adopt rules and regulations

731    governing the sharing with, or the sale or lease of information

732    technology services to any nonstate agency or person.  Such

733    regulations shall provide that any such sharing, sale or lease

734    shall be restricted in that same shall be accomplished only where

735    such services are not readily available otherwise within the

736    state, and then only at a charge to the user not less than the

737    prevailing rate of charge for similar services by private

738    enterprise within this state.

739         (f)  The authority may, in its discretion, establish a

740    special technical advisory committee or committees to study and

741    make recommendations on technology matters within the competence

742    of the authority as the authority may see fit.  Persons serving on

743    the Information Resource Council, its task forces, or any such

744    technical advisory committees shall be entitled to receive their

745    actual and necessary expenses actually incurred in the performance

746    of such duties, together with mileage as provided by law for state

747  employees, provided the same has been authorized by a resolution

748  duly adopted by the authority and entered on its minutes prior to

749  the performance of such duties.

750          (g)  The authority may provide for the development and

751  require the adoption of standardized computer programs and may

752  provide for the dissemination of information to and the

753  establishment of training programs for the personnel of the

754  various information technology centers of state agencies and

755  personnel of the agencies utilizing the services thereof.

756          (h)  The authority shall adopt reasonable rules and

757  regulations requiring the reporting to the authority through the

758  office of executive director of such information as may be

759  required for carrying out the purposes of this chapter and may

760  also establish such reasonable procedures to be followed in the

761  presentation of bills for payment under the terms of all contracts

762  for the acquisition of computer equipment and services now or

763  hereafter in force as may be required by the authority or by the

764  executive director in the execution of their powers and duties.

765          (i)  The authority shall require such adequate

766  documentation of information technology procedures utilized by the

767  various state agencies and may require the establishment of such

768  organizational structures within state agencies relating to

769  information technology operations as may be necessary to

770  effectuate the purposes of this chapter.

771            (j)  The authority may adopt such further reasonable
772  rules and regulations as may be necessary to fully implement the
773  purposes of this chapter.  All rules and regulations adopted by
774  the authority shall be published and disseminated in readily
775  accessible form to all affected state agencies, and to all current
776  suppliers of computer equipment and services to the state, and to
777  all prospective suppliers requesting the same.  Such rules and
778  regulations shall be kept current, be periodically revised, and
779  copies thereof shall be available at all times for inspection by
780  the public at reasonable hours in the offices of the authority.
781  Whenever possible no rule, regulation or any proposed amendment to
782  such rules and regulations shall be finally adopted or enforced
783  until copies of * * * the proposed rules and regulations have been
784  furnished to all interested parties for their comment and
785  suggestions.

786            (k)  The authority shall establish rules and regulations
787  which shall provide for the submission of all contracts proposed
788  to be executed by the executive director for computer equipment or
789  services to the authority for approval before final execution, and
790  the authority may provide that such contracts involving the
791  expenditure of less than such specified amount as may be
792  established by the authority may be finally executed by the
793  executive director without first obtaining such approval by the
794  authority.

795        (l)  The authority is authorized to purchase, lease, or

796    rent computer equipment or services and to operate * * * that

797    equipment and * * * use those services in providing services to

798    one or more state agencies when in its opinion such operation will

799    provide maximum efficiency and economy in the functions of any

800    such agency or agencies.

801        (m)  Upon the request of the governing body of a

802    political subdivision or instrumentality, the authority shall

803    assist the political subdivision or instrumentality in its

804    development of plans for the efficient acquisition and utilization

805    of computer equipment and services.  An appropriate fee shall be

806    charged the political subdivision by the authority for such

807    assistance.

808        (n)  The authority shall adopt rules and regulations

809    governing the protest procedures to be followed by any actual or

810    prospective bidder, offerer or contractor who is aggrieved in

811    connection with the solicitation or award of a contract for the

812    acquisition of computer equipment or services.  Such rules and

813    regulations shall prescribe the manner, time and procedure for

814    making protests and may provide that a protest not timely filed

815    shall be summarily denied.  The authority may require the

816    protesting party, at the time of filing the protest, to post a

817    bond, payable to the state, in an amount that the authority

818    determines sufficient to cover any expense or loss incurred by the

819    state, the authority or any state agency as a result of the

820  protest if the protest subsequently is determined by a court of
821  competent jurisdiction to have been filed without any substantial
822  basis or reasonable expectation to believe that the protest was
823  meritorious; however, in no event may the amount of the bond
824  required exceed a reasonable estimate of the total project cost.
825  The authority, in its discretion, also may prohibit any
826  prospective bidder, offerer or contractor who is a party to any
827  litigation involving any such contract with the state, the
828  authority or any agency of the state to participate in any other
829  such bid, offer or contract, or to be awarded any such contract,
830  during the pendency of the litigation.
831          (o)  The authority shall make a report in writing to the
832  Legislature each year in the month of January.  Such report shall
833  contain a full and detailed account of the work of the authority
834  for the preceding year as specified in Section 25-53-29(3).
835      All acquisitions of computer equipment and services involving
836  the expenditure of funds in excess of the dollar amount
837  established in Section 31-7-13(c), or rentals or leases in excess
838  of the dollar amount established in Section 31-7-13(c) for the
839  term of the contract, shall be based upon competitive and open
840  specifications, and contracts therefor shall be entered into only
841  after advertisements for bids are published in one or more daily
842  newspapers having a general circulation in the state not less than
843  fourteen (14) days prior to receiving sealed bids therefor.  The
844  authority may reserve the right to reject any or all bids, and if

845  all bids are rejected, the authority may negotiate a contract
846  within the limitations of the specifications so long as the terms
847  of any such negotiated contract are equal to or better than the
848  comparable terms submitted by the lowest and best bidder, and so
849  long as the total cost to the State of Mississippi does not exceed
850  the lowest bid.  If the authority accepts one (1) of such bids, it
851  shall be that which is the lowest and best.

852      (p)  When applicable, the authority may procure
853  equipment, systems and related services in accordance with the law
854  or regulations, or both, which govern the Bureau of Purchasing of
855  the Office of General Services or which govern the Mississippi
856  Department of Information Technology Services procurement of
857  telecommunications equipment, software and services.

858      (q)  The authority is authorized to purchase, lease, or
859  rent information technology and services for the purpose of
860  establishing pilot projects to investigate emerging technologies.
861  These acquisitions shall be limited to new technologies and shall
862  be limited to an amount set by annual appropriation of the
863  Legislature.  These acquisitions shall be exempt from the
864  advertising and bidding requirement.

865      (r)  All fees collected by the Mississippi Department of
866  Information Technology Services shall be deposited into the
867  Mississippi Department of Information Technology Services
868  Revolving Fund unless otherwise specified by the Legislature.

869          (s)  The authority shall work closely with the council
870     to bring about effective coordination of policies, standards and
871     procedures relating to procurement of remote sensing and
872     geographic information systems (GIS) resources.  In addition, the
873     authority is responsible for development, operation and
874     maintenance of a delivery system infrastructure for geographic
875     information systems data.  The authority shall provide a warehouse
876     for Mississippi's geographic information systems data.

877          (t)  The authority shall manage one or more State Data
878     Centers * * * to provide information technology services on a
879     cost-sharing basis.  In determining the appropriate services to be
880     provided through the State Data Center, the authority should
881     consider those services that:

882               (i)  Result in savings to the state as a whole;

883               (ii)  Improve and enhance the security and
884     reliability of the state's information and business systems; and

885               (iii)  Optimize the efficient use of the state's
886     information technology assets, including, but not limited to,
887     promoting partnerships with the state institutions of higher
888     learning and community colleges to capitalize on advanced
889     information technology resources.

890          (u)  The authority shall increase federal participation
891     in the cost of the State Data Center to the extent provided by law
892     and its shared technology infrastructure through providing such
893     shared services to agencies that receive federal funds.  With

894  regard to state institutions of higher learning and community
895  colleges, the authority may provide shared services when mutually
896  agreeable, following a determination by both the authority and the
897  Board of Trustees of State Institutions of Higher Learning or the
898  Mississippi Community College Board, as the case may be, that the
899  sharing of services is mutually beneficial.

900          (v)  The authority, in its discretion, may require new
901  or replacement agency business applications to be hosted at the
902  State Data Center.  With regard to state institutions of higher
903  learning and community colleges, the authority and the Board of
904  Trustees of State Institutions of Higher Learning or the
905  Mississippi Community College Board, as the case may be, may agree
906  that institutions of higher learning or community colleges may
907  utilize business applications that are hosted at the State Data
908  Center, following a determination by both the authority and the
909  applicable board that the hosting of those applications is
910  mutually beneficial.  In addition, the authority may establish
911  partnerships to capitalize on the advanced technology resources of
912  the Board of Trustees of State Institutions of Higher Learning or
913  the Mississippi Community College Board, following a determination
914  by both the authority and the applicable board that such a
915  partnership is mutually beneficial.

916          (w)  The authority shall provide a periodic update
917  regarding reform-based information technology initiatives to the

~ OFFICIAL ~

918    Chairmen of the House and Senate Accountability, Efficiency and
919    Transparency Committees.
920        **SECTION 8.**    Section 1 of this act shall take effect and be in
921    force from and after its passage, and Sections 2 through 7 of this
922    act shall take effect and be in force from and after July 1, 2016.