# Olivia Y., Jamison J., et al. V. Phil Bryant, Donald Taylor, et al.

## Jess Dickinson

### November 29, 2018

All depositions & exhibits are available for downloading at
<www.brookscourtreporting.com>
Please call or e-mail depo@brookscourtreporting.com if you need a
**Username** and **Password.**



Mississippi - Louisiana - Tennessee - New York
1-800-245-3376



```
 1   cut -- I had the -- "opportunity" is not the word
 2   I would have chosen.  I had the obligation.  I had
 3   the obligation to bring the budget into line.  I
 4   had to do that.
 5        Q.   And so you chose to eliminate the
 6   caseload requirement; is that right?
 7        A.   No.
 8             MR. JONES:  I object to the form of the
 9        question.
10        Q.   (By Ms. Lowry)  You didn't?
11        A.   And I apologize.  I'm not trying to be
12   difficult.  I don't see those two things as
13   related.
14             What I chose to do was to -- was to
15   implement policy that would bring the budget in
16   line.
17        Q.   And was that an obligation that was
18   greater than the obligation to comply with a
19   Federal Court order?
20        A.   The Federal Court order doesn't tell me
21   how much to cut or not cut with respect to
22   salaries.
23             In other words, I never -- I never made
24   any decision we're not going to comply with the
25   court order.  I made the decision of here's how
```

Case 3:04-cv-00251-HSO-ASH   Document 857-24   Filed 09/03/19   Page 3 of 6
Case 3:04-cv-00251-TSL-FKB   Document 847-2   Filed 06/20/19   Page 87 of 190

Page 140

Jess Dickinson 11/29/2018

```
 1      A.   Yes.
 2      Q.   Okay.  You did not agree to the second
 3 MSA, did you?
 4      A.   You mean did I sign it?
 5      Q.   Yes.
 6      A.   Was I one of the signatories?  No, I was
 7 not.
 8      Q.   You weren't involved in the discussions,
 9 and you certainly didn't sign it; is that right?
10      A.   That's correct.
11      Q.   And you didn't sign any of the interim
12 or stipulated orders; is that right?
13      A.   That's correct.
14      Q.   And, in fact, you might not have even
15 done that had you been present in this agency; is
16 that right?
17      A.   That's a possibility.
18      Q.   Right.  In fact --
19      A.   If I knew then what I know now, I
20 wouldn't have.
21      Q.   Right, in fact, you don't like the --
22 what you call the rigid fixed standards of the
23 caseload limits, do you?
24      A.   Well, I don't like the phrase, "I don't
25 like them."  I think they're harmful to children.
```

Case 3:04-cv-00251-HSO-ASH   Document 857-24   Filed 09/03/19   Page 4 of 6
Case 3:04-cv-00251-TSL-FKB   Document 847-2   Filed 06/20/19   Page 88 of 190

Page 141

Jess Dickinson 11/29/2018

```
 1         Q.   I see.  And do you think that 15 years
 2   of noncompliance in this case is harmful to
 3   children?
 4              MR. JONES:  Object to the form.
 5              THE WITNESS:  Do I think that 15 years
 6       of noncompliance is harmful to children?
 7         Q.   (By Ms. Lowry)  Yeah.  Do you know how old
 8   this litigation is?
 9         A.   I can't answer that question without
10   more specifics.  I need to know what it is you
11   think was harmful to children, and I can either
12   agree with you or not, but when you say 15 years
13   of noncompliance is harmful to children, that's a
14   very general statement.
15         Q.   Do you know that the State has
16   acknowledged noncompliance with regard to the
17   settlement agreement?
18         A.   I do understand what you're asking me.
19   I'm just -- I am not going to get to the place
20   where I agree with you that noncompliance with one
21   provision or another provision of that MSA, per
22   se, translates into harm to children.  I think
23   compliance with the MSA in some respects is
24   harmful to children, so your question is too
25   general for me.
```

Case 3:04-cv-00251-HSO-ASH   Document 857-24   Filed 09/03/19   Page 5 of 6
Case 3:04-cv-00251-TSL-FKB   Document 847-2   Filed 06/20/19   Page 89 of 190

Page 142

Jess Dickinson 11/29/2018

1        If you ask me about a specific thing, I
2   can tell you my opinion of whether it's harmful to
3   children or not.
4        Q.   You, in fact, would like this provision
5   changed, wouldn't you, because it seems too rigid
6   and fixed as your counsel called it; is that
7   right?
8        A.   The reason I would like it changed is
9   because I believe it's harmful to children.
10       Q.   Okay.  So -- and you would -- what would
11  you substitute for it?
12       A.   I would substitute it for a standard
13  that takes into account the factors that affect
14  the handling of children's cases and the outcomes
15  for those children.  I would look to see if the
16  children are having good outcomes, and I would
17  look to see if the caseworkers are doing their
18  jobs, and there are factors that are indicators of
19  that, and, to me, that's what an agency should be
20  judged on.
21       Q.   So, basically, what you're saying in the
22  motion that's been filed on your behalf with
23  regard to changing a provision of this agreement
24  is that you think it's harmful to children, and
25  you don't like it; is that right?

Case 3:04-cv-00251-HSO-ASH   Document 857-24   Filed 09/03/19   Page 6 of 6
Case 3:04-cv-00251-TSL-FKB   Document 847-2   Filed 06/20/19   Page 90 of 190

Page 143

Jess Dickinson 11/29/2018

```
 1            MR. JONES:  I object to --
 2            THE WITNESS:  I don't like anything
 3    that's harmful to children.
 4            MR. JONES:  And I object to the form of
 5    the question.  That's not what the motion
 6    states.
 7            MS. LOWRY:  No, that's not, but I can
 8    ask the question anyway.
 9       Q.   (By Ms. Lowry)  Okay.  But you think this
10    is harmful to children?
11       A.   I think that the agency being judged --
12    it's effectiveness being judged on a hard
13    compliance cap in the way that a cap has to be
14    implemented in a child welfare agency is harmful
15    to children.  It is harmful to the care for
16    children.
17       Q.   And so you wouldn't have signed it?  You
18    wouldn't have signed that provision of the
19    agreement, is that --
20       A.   I would not have agreed -- and, again,
21    knowing what I know today, knowing what I know
22    sitting here today, no, ma'am, I would not have
23    agreed for the State to obligate itself in order
24    to comply with the second MSA.  I would not have
25    agreed that the State be judged by a hard cap like
```