# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA Y., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 3:04-CV-251-TSL-FKB |
| | ) | |
| v. | ) | |
| | ) | |
| PHIL BRYANT, as Governor of the State of Mississippi, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR AMENDED CASE MANAGEMENT ORDER PERMITTING LIMITED DISCOVERY[1]

On July 3, 2019, Plaintiffs filed an Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver ("Plaintiffs' Amended Motion") [Dkt. 849], which is currently pending before the Court. The presently operative settlement agreement, the 2nd Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA") [Dkt. 712], became effective on January 1, 2018. In Plaintiffs' Amended Motion and accompanying Amended Memorandum of Law in Support of Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver ("Plaintiffs' Memo") [Dkt. 850], Plaintiffs ask this Court to enter a finding of civil contempt and appoint a receiver to run the Mississippi Department of Child Protection Services ("MDCPS") in the face of Defendants' widespread and flagrant noncompliance with the terms of the 2nd MSA. The limited

---

[1] Plaintiffs request that the Court relieve them of the obligation to file a memorandum brief in support of this Motion, *see* Uniform Local R. 7. The Motion is concise, straightforward, and includes citations to appropriate authorities. In the event that a brief is required, of course, Plaintiffs are prepared to file one.

discovery that Plaintiffs seek is directly related to Plaintiffs' Amended Motion and Defendants' noncompliance with provisions of the 2nd MSA. A copy of Plaintiffs' proposed discovery is attached hereto as **Exhibit A**.

Plaintiffs have good-faith reasons to believe there are serious issues about the manner in which Defendants may be screening out or failing to investigate reports of child maltreatment, potentially blocking children who have been abused or neglected from entering foster care when appropriate. Plaintiffs have requested information from Defendants about the case of a child whose maltreatment investigations are at issue. According to news reports, 4-year-old A.H. and her 3-year-old sister were severely beaten by their mother's boyfriend.[2] A.H. died as a result of "blunt force trauma to her head, neck, and abdomen," and her sister was left in critical condition.[3] According to reports, MDCPS had received multiple reports of abuse and had opened an in-home case on the children, but the case was closed a day before the fatal beating of A.H.[4] Both girls had "old and new injuries." *Id.* Three workers were fired after the child's death.[5]

Plaintiffs first contacted Defendants about the case in July. Plaintiffs contacted Defendants again on July 26, 2019, asking whether an investigation had been conducted by either MDCPS or MDHS, who conducted the investigation(s), whether there is anything in writing regarding the investigation(s), and whether a report was made to either Commissioner Dickinson or Governor

---

[2] Sarah Fowler, *One child was fatally beaten, another critical. Child Services had been to the home before*, MISS. CLARION LEDGER, June 7, 2019, https://www.clarionledger.com/story/news/2019/06/07/2-children-beaten-one-dies-never-removed-from-home-natchez/1384264001/.
[3] Maggie Wade, *Three-year-old girl severely beaten in deadly Natchez child abuse case released from hospital*, WMC ACTION NEWS, July 2, 2019, https://www.wmcactionnews5.com/2019/07/03/three-year-old-girl-severely-beaten-deadly-natchez-child-abuse-case-released-hospital/.
[4] Sarah Fowler, *One child was fatally beaten, another critical. Child Services had been to the home before*, MISS. CLARION LEDGER, June 7, 2019, https://www.clarionledger.com/story/news/2019/06/07/2-children-beaten-one-dies-never-removed-from-home-natchez/1384264001/.
[5] Associated Press, *3 Mississippi Child Protection Service workers fired after child's death. Here's why*, MISS. CLARION LEDGER, Aug. 10, 2019, https://www.clarionledger.com/story/news/2019/08/10/ms-child-protection-service-workers-fired-been-home-before-fatal-beating-of-girl-5/1977391001/.

Bryant. *See* Email from M.Lowry to K.Rachal dated July, 26, 2019, attached hereto as **Exhibit B**. Defendants responded, "Investigations have been conducted in the AH case. I have contacted MDCPS, MDHS, and the Governor's Office about the questions in your July 26th email. Once I hear back I will follow up with you." *See* Email from K.Rachal to M.Lowry dated July 29, 2019, attached hereto as **Exhibit C**. After receiving no response, Plaintiffs again requested information on the A.H. fatality on August 12, 2019. *See* Letter from M.Lowry to K.Rachal dated August 12, 2019, attached hereto as **Exhibit D**. In Defendants' subsequent letter sent on August 26, 2019, they informed Plaintiffs they would not be providing information regarding the A.H. fatality because the child was outside the *Olivia Y.* class. *See* Letter from K.Rachal to M.Lowry dated August 26, 2019, attached hereto as **Exhibit E.**

As a preliminary matter, Defendants' assertion that A.H. was outside the *Olivia Y.* class is inaccurate. Children who have been reported to MDCPS for maltreatment, as A.H. and her sister were, are undeniably within the scope of the 2nd MSA. The intent of the 2nd MSA "is to set forth and *maintain* the child welfare infrastructure, standards, and outcomes that Defendants must meet within specified timeframes statewide." 2nd MSA at 1 (emphasis added). Section 2.1 of the 2nd MSA protects children, like A.H. and her sister, who have been reported to MDCPS and are under their protective supervision. *See* 2nd MSA § 2.1.

In addition to being squarely within the scope of the 2nd MSA, the A.H. case is inextricably tied to Plaintiffs' pending Motion for Contempt and the Appointment of a Receiver. The report filed in June 2019 by the court-appointed neutral monitor (the "Monitor") found that Defendants were *not* in compliance with Section 2.1 of the 2nd MSA, the provision requiring Defendants to appropriately receive, screen and investigate reports of child maltreatment. *See* Progress of the Mississippi Department of Child Protection Services Monitoring Report 6 ("Monitoring Report

3

6") [Dkt. 845], pgs. 9, 38, 44.  Both Plaintiffs' Amended Motion and Plaintiffs' Memo raise the issue of Defendants' failure to comply with Section 2.1 of the 2nd MSA.  If reports of falsification of records and attempts at a cover-up are true, as Plaintiffs have a good faith basis to believe they are, these actions suggest systematic deficiencies and non-compliance, which weigh heavily in favor of the appointment of a receiver.

The court-appointed Monitor has also inquired of Defendants about the A.H. fatality, but has not received any information about it.  The Monitor informed the parties via telephone conference on September 26, 2019, and reiterated in an email the same day, that "the AH investigations may be relevant, or may not be. We cannot determine relevance unless we look into the matter. If the parties agree or the court directs us to do so, we will be happy to do so." *See* Email from K.Ryan to M.Lowry, K.Rachal, et al. dated September 26, 2019, attached hereto as **Exhibit F**.

Defendants object to having the Monitor's review the A.H. fatality.  However, not only is the A.H. case within the scope of the 2nd MSA and may be pertinent to Plaintiffs' pending Amended Motion, but it is also within the scope of the Monitor's authority under Section 9 of the 2nd MSA.  Section 9.3, for instance, provides that the "Monitor shall periodically conduct *case record* and qualitative reviews to monitor and evaluate the Defendants' performance with respect to the commitments in this 2nd MSA."  2nd MSA § 9.3 (emphasis added).  Further, the requested files on the A.H. fatality are directly relevant to Defendants' performance with regards to Section 2.1 of the 2nd MSA, and Section 9.7 of the 2nd MSA states that, "Defendants agree to provide the Monitor with … free access to all documents, data, and premises it deems relevant to their work".  2nd MSA § 9.7.   Finally, the 2nd MSA states that "[t]he parties shall have access, through the

Monitor, to all information made available to the Monitor, and to all other information related to ensuring compliance with and enforcing this 2nd MSA. 2nd MSA § 9.9.

Defendants object to discovery because the discovery period is closed. *See* Letter from K.Rachal to Judge Ball dated September 10, 2019, attached hereto as **Exhibit G**. Plaintiffs acknowledge that discovery has closed and have repeatedly attempted to obtain the files related to the fatality of A.H. from Defendants without discovery or Court intervention. However, those attempts have proven unsuccessful, and Defendants have clearly stated that they do not intend to produce the files. During a conference call with Judge Ball on September 18, 2019, the parties were directed to meet and confer regarding the dispute. In the event that the parties are unable to reach agreement, Judge Ball directed Plaintiffs to seek leave of the Court to conduct discovery. Since Defendants refuse to provide either the Monitor or Plaintiffs with information to which they are entitled under the terms of the 2nd MSA, Plaintiffs have no choice but to seek the information through limited and narrowly tailored discovery.

While the discovery window has closed, this Court has continuing jurisdiction to enforce the 2nd MSA, *see* 2nd MSA at 1, and—informal efforts to resolve this discovery dispute having failed—the Court should now exercise its authority to permit additional discovery. This Court, in this case, has granted leave to conduct limited discovery in similar circumstances before. *See e.g.* Amended Scheduling Order for Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing and for the Appointment of a Receiver [Dkt. 646]; August 27, 2018 Order [Dkt. 783]. And courts in this circuit deem discovery proper in similar situations. *See e.g., Holland v. Keesler Federal Credit Union*, 2017 WL 2231449, at *3 (S.D. Miss. May 22, 2017) (Rule 16(b) permits case management or scheduling order to be modified for good cause and with the court's consent); *Smith v. Hosemann*, 852 F. Supp. 2d 757, 762 (S.D. Miss. 2011) (court has jurisdictional and

5

procedural authority under Rule 60(b)(5) to amend consent decree); *Estate of Boles v. National Heritage Realty, Inc.*, 2010 WL 11492174, at *2 (N.D. Miss. June 18, 2010) (finding that factors courts should consider in deciding whether to amend a scheduling order include why the amendment is necessary, the importance of the amendment, potential prejudice to opposing party, and availability of a continuance to cure any such prejudice) (citing *Fahim v. Marriot Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008)). The discovery sought by Plaintiffs is narrowly tailored and limited in scope, and will not prejudice Defendants. Indeed, Defendants have the requested information in their possession. But Defendants do not argue that producing the information will be burdensome or prejudicial. Defendants merely do not believe that Plaintiffs are entitled to receive it.

Defendants also object to the Monitor or Plaintiffs having access to individual cases because this is a class action lawsuit. But both the previous Monitor and the current Monitor have historically had access to individual case records, particularly case records regarding fatalities, and have used them and reported to the Parties about their contents. Further, the concerns that Plaintiffs' concerns regarding this specific case may be indicative of larger systemic issues.

Plaintiffs understand that deposing the Governor of Mississippi presents a number of scheduling issues. Plaintiffs therefore agree to conduct the other noticed depositions first, and to only pursue a deposition of the Governor if the other depositions indicate that the Governor had direct knowledge of the situation. Further, Plaintiffs have offered to forebear conducting the requested depositions pending a review by the Monitor. But, Defendants have objected to any and all discovery or Monitor review regarding the A.H. fatality and subsequent investigations.

Plaintiffs therefore respectfully move the Court for a revised case management order, pursuant to Fed. R. Civ. P. 16(b)(4),

(1) permitting Plaintiffs' to conduct limited discovery, in the form of depositions of the witnesses identified in **Exhibit A**,

(2) governing the timing of that discovery,

(3) granting such other relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the 30th day of September 2019.

/s/ Marcia Robinson Lowry
Marcia Robinson Lowry (*pro hac vice*)
A Better Childhood, Inc.
355 Lexington Avenue, Floor 16
New York, New York 10017
Telephone (646) 808-7344
Email: mlowry@abetterchildhood.org

Wayne Drinkwater, Jr. (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 400
188 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
Email: wdrinkwater@bradley.com
           mbentley@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 30th, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will deliver copies to all counsel of record.

*/s/ Marcia Robinson Lowry*