**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

OLIVIA Y., et al )
 )
Plaintiffs )
 )
v. )    CIVIL ACTION NO. 3:04cv251 TSL-FKB
 )
PHIL BRYANT, as Governor of )
the State of Mississippi, et al. )
 )
Defendants )


**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR RESPONSE AND OBJECTION TO
PLAINTIFFS' MOTION FOR AMENDED CASE
<u>MANAGEMENT ORDER PERMITTING LIMITED DISCOVERY</u>**

James L. Jones (MSB #3214)
William C. Pentecost (MSB #99841)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
P.O. Box 14167
Jackson, MS 39236-4167
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

Harold Pizzetta, III
Assistant Attorney General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND FACTS ................................................................................ 2

III. LEGAL AUTHORITIES AND ANALYSIS ................................................... 8

   A. Plaintiffs have failed to show the importance for reopening discovery. ........................ 8

   B. The requested discovery would prejudice Defendants because it is not relevant to either the 2nd MSA or the Amended Contempt/Receivership Motion. .................................... 11

     1. The requested discovery is not within the scope of the 2nd MSA. ................................ 12

     2. The requested discovery has no bearing on the pending motions. ................................ 15

   C. Plaintiffs fail to provide any other support for reopening discovery. ........................... 17

IV. CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

*Addison v. Allstate Ins. Co.*,
  97 F. Supp. 2d 771 (S.D. Miss. 2000) ...................................................................9

*Bolton v. Murray Envelope Corp.*,
  553 F.2d 881 (5th Cir. 1977) .............................................................................10

*Crosby v. Louisiana Health Serv. & Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011) ...............................................................................9

*Filgueira v. U.S. Bank Nat. Ass'n*,
  734 F.3d 420 (5th Cir. 2013) ................................................................................8

*Freedom from Religion Foundation, Inc., v. Abbott*,
  2017 WL 4582804 (W.D. Tex. Oct. 13, 2017) ....................................................7

*In re F.D.I.C.*,
  58 F.3d 1055 (5th Cir. 1995) ................................................................................7

*Jones v. Jackson State Univ.*,
  No. 3:07CV72 DPJ-JCS, 2008 WL 11506566 (S.D. Miss. Feb. 21, 2008) ..........9

*Meaux Surface Prot., Inc. v. Fogleman*,
  607 F.3d 161 (5th Cir. 2010) ................................................................................8

*Midwest Feeders, Inc. v. Bank of Franklin*,
  No. 5:14CV78-DCB-MTP, 2016 WL 7422561 (S.D. Miss. June 28, 2016) ..........9, 11

*Murphy v. Deloitte & Touche Grp. Ins. Plan*,
  619 F.3d 1151 (10th Cir. 2010) ............................................................................9

*Williams v. Manitowoc Cranes, LLC*,
  No. 1:14-CV-383-HSO-JCG, 2015 WL 11004904 (S.D. Miss. Aug. 12, 2015) ..........9

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| OLIVIA Y., et al | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:04cv251 TSL-FKB |
| | ) | |
| PHIL BRYANT, as Governor of | ) | |
| the State of Mississippi, et al. | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR RESPONSE AND OBJECTION TO
PLAINTIFFS' MOTION FOR AMENDED CASE
MANAGEMENT ORDER PERMITTING LIMITED DISCOVERY**

The Defendants submit the following Memorandum in support of their response and objection to Plaintiffs' Motion for Amended Case Management Order Permitting Limited Discovery.

**I.    INTRODUCTION**

Plaintiffs' Motion for Amended Case Management Order Permitting Limited Discovery ("Plaintiffs' Motion To Reopen Discovery") seeks discovery which Plaintiffs contend is relevant to noncompliance with provisions of the 2nd Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA") and to the Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver. Pls.' Renewed Mot. for Contempt, ECF No. 849 ("Amended Contempt/ Receivership Motion").  More specifically, Plaintiffs' Motion to Reopen Discovery seeks leave of Court to reopen discovery and notice the depositions of Phil Bryant, the Governor of the State of Mississippi; John Davis, the former Executive Director of the Mississippi Department of

Human Services ("MDHS"); David Barton, the current Deputy Executive Director of Administration of MDHS and former Inspector General of MDHS; and Eric Johnson, the MDHS Director of Investigations. The requested depositions relate to the investigation conducted by MDHS at the request of, and on behalf of, MDCPS relating to the death of a minor child, A.H., who at the time of her death was not in MDCPS custody and was not a member of the *Olivia Y* class.[1]  Importantly, none of the potential deponents have first-hand knowledge of any events that transpired prior to A.H.'s death.

Plaintiffs' counsel attempts in the first instance to circumvent the relevant rules of court by asking the Monitor to request an investigative report prepared by the Public Integrity Division of Investigations in MDHS under the guise that review of the report is part of the Monitor's duties under the 2nd MSA.  However, again an investigation and report related to a child not in custody – i.e., not a class member – is not part of the Monitor's duties under the 2nd MSA and the Monitor has never requested a review of any documents, reports, or files related to A.H.

Having failed to convince the Monitor to request the investigative report, Plaintiffs now seek to have discovery reopened in this case in their continued attempt to conduct a "fishing expedition" into a matter not relevant to the motions pending before the Court or to the 2nd MSA. For the reasons set forth in this Memorandum, Plaintiffs' Motion To Reopen Discovery should be denied.

## II.    BACKGROUND FACTS

In December 2016, the parties signed two agreements: the Stipulated Third Remedial Order ("STRO") and the 2nd MSA.  One of the performance requirements of the STRO was that

---

[1] MDCPS operates independent of MDHS control.  It shares, however, staff performing certain back-office, non-programmatic functions with MDHS.  Relevant here, MDCPS does not have a separate Program Integrity Division of Investigations.  As a result, MDCPS management requested the use of MDHS investigators to conduct, on behalf of MDCPS, an investigation related to the A.H. case.  Affidavit of Kris Jones, ¶ 5, attached as Ex. B to Defs.' Resp.

the Mississippi Department of Child Protection Services ("MDCPS") had twelve months to increase the percentage of its caseworkers in compliance with the 2nd MSA's weighted value fixed caseload cap from a September 30, 2016, baseline of 31% established by Public Catalyst to 90% by December 31, 2017.

On March 5, 2018, Plaintiffs' counsel gave notice of Plaintiffs' intention to file a motion based on the Agency's failure by December 31, 2017, to achieve 90% compliance with the fixed caseload cap. Plaintiffs' counsel followed up on May 31, 2018, by filing a motion, asking this court to hold MDCPS in contempt for failure to achieve the 90% caseload cap and to appoint a receiver to take over foster care in Mississippi. Pls.' Mot. for Contempt, ECF No. 739.

On July 3, 2018, Defendants responded to Plaintiffs' motion. Defs.' Resp. to Mot. for Contempt, ECF No. 754. Also on July 3, 2018, pursuant to Section 11.2.a. of the 2nd MSA, Defendants filed a Rule 60(b) motion for equitable relief with regard to the 2nd MSA's fixed 90% caseload cap. Defs' Mot. to Set Aside, ECF No. 756. Plaintiffs responded, and this Motion still is pending before the Court.

Without leave of Court, the Plaintiffs subsequently served a First Request For Production of Documents, a Second Request For Production of Documents, a First Set of Interrogatories, [ECF No. 769], and requested dates for depositions of unnamed deponents. Defendants objected to this unauthorized discovery. In response, in July 2018, Plaintiffs filed a motion formally requesting limited discovery related to Defendants' Rule 60(b) Motion, specifically related to the Defendants' obligation to request sufficient funds to effect the 2nd MSA. ECF No. 768 at 3. On August 27, 2018, the Court granted leave to conduct limited discovery related to the 60(b) motion and specifically restricted discovery to the issue of MDCPS funding. ECF No. 783. The Court subsequently amended the scheduling order on September 21, 2018, to extend the limited

discovery to November 30, 2018.  ECF No. 803.

The 2nd MSA's 2018 requirement included 113 performance measures for MDCPS to achieve.  During calendar year 2018, the Monitor conducted numerous assessments of MDCPS's compliance with the 113 requirements for 2018, and published the results of those assessments on June 11, 2019, in their 2018 Annual Report.  ECF No. 845 – Progress of the Mississippi Department of Child Protection Services; Monitoring Report for 2nd Modified Mississippi Settlement Agreement ("2018 Monitor's Report").  Based on the 2018 Monitor's Report, Plaintiffs filed the Amended Contempt/Receivership Motion asking the Court to hold Defendants in contempt for failure to achieve compliance with the requirements of the 2nd MSA, and renewing their request that the Court place MDCPS in a receivership.

The Amended Contempt/Receivership Motion and the 60(b) Motion are the only motions before the Court.  And, the scope of the *Olivia Y* class is not at issue or before the Court.

On June 5, 2019, A.H., a four-year old girl, tragically died as a result of abuse and neglect by the boyfriend of A.H.'s mother.  Affidavit of Tonya Rogillio, ¶ 5, attached as Ex. A to Defs.' Resp. ("Rogillio Aff.").  Although A.H. had never been in MDCPS's custody, the child[2] had been the subject of two reports of potential abuse and neglect and a review of these allegations by MDCPS case workers before her death.  *Id.*  The allegations were not substantiated and on May 20, 2019, an MDCPS case worker requested that the relevant case be closed.  *Id.* at ¶6.  The case was administratively closed on June 4, 2019, after review and approval by the caseworker's supervisor. *Id.*

On June 8, 2019, Kris Jones, Deputy Commissioner of Administration of MDCPS, contacted the Program Integrity Division of Investigations of the Mississippi Department of

---

[2] A.H.'s sister was also the subject of the reports.  Rogillio Aff. at 5.  However, Plaintiffs' Motion to Reopen Discovery relates only to A.H.'s death.

Human Services and requested that MDCPS be allowed to use investigators from the Division to conduct an investigation on MDCPS's behalf of the death of A.H.[3]  Affidavit of Kris Jones, ¶ 5, attached as Ex. B to Defs.' Resp. ("Jones Aff.").  The investigation has been completed and the report finalized.  *Id.* at ¶ 6.  The Governor did not personally, or through any representative of his office, request that Ms. Jones initiate the investigation. *Id.*  The decision was made by MDCPS. *Id.*  Furthermore, the Governor's in-office counsel has confirmed that the Governor has not reviewed any investigative report relating to the death of A.H.

After completion of the Program Integrity investigation and report, the media has correctly reported that two MDCPS caseworkers and one area social work supervisor were terminated by MDCPS.  Jones Aff. at ¶ 7.

On September 6, 2019, Plaintiffs, in a now familiar pattern with full knowledge that discovery was closed, unilaterally served deposition notices on the Defendants for the Governor, Mr. Davis, Mr. Barton, and Mr. Johnson.  As discussed earlier, the Governor, Mr. Davis and Mr. Barton were at all relevant times high-ranking governmental officials.  Each of these deposition notices demanded that the deponent bring to his deposition "Any report that you have prepared, participated in, or had any part in writing with regard to the investigation of maltreatment and report regarding the death of the child A.H."  The document demand also sought production of any handwritten notes relating to the subject report.

In response to Plaintiffs' unilateral attempt to reopen discovery without court approval, counsel for the Defendants, as it was required to do before filing a Motion For A Protective Order, requested a discovery conference with Magistrate Judge F. Keith Ball.  The conference was held on September 18, 2019.  At the outset of the conference, Magistrate Judge Ball advised Plaintiffs' counsel that the deposition notices and document requests were a nullity because

---

[3]This investigation is not only confidential, but it is well outside the scope of the 2nd MSA.

discovery was closed.  He then asked if Public Catalyst, the Monitor, had requested any investigative report related to A.H.'s death pursuant to Section 9.7 of the 2nd MSA.  The Defendants advised Magistrate Judge Ball that the Monitor was aware of the death of A.H. but had not made any request of this nature.  Magistrate Judge Ball then recommended that the parties confer with the Monitor and determine if the Monitor was seeking or would seek documents of this nature under Section 9.7 of the 2nd MSA.  He also recommended that the parties attempt to resolve the discovery disputes after conferring with the Monitor.  Magistrate Judge Ball then advised that, if an agreement could not be reached, a motion to reopen discovery would be necessary.  He further advised that, if such a motion was filed, he would first determine if discovery should be reopened and would then address all other discovery related issues including the significant high-ranking governmental official deposition issues.

The parties' conference with the Monitor was held on September 26, 2019.  In this conference, the Defendants confirmed that A.H. was not a member of the *Olivia Y* class and advised the Monitor that the report was not relevant to the Monitor's duties under the 2nd MSA.  Later on the same day, the Monitor sent an email to the parties which stated as follows:

> Thank you for meeting with us by phone,  We understand that the Magistrate Ball asked the parties to confer with us to try and resolve this issues in hopes of avoiding the motion process. You advise that he specifically wants to know whether the Monitor "deems any AH investigation relevant to their duties under provisions of 9.7 of the 2nd MSA."  As we explained on the call after hearing from the parties this morning, the AH investigations may be relevant, or may not be.  We cannot determine relevance unless we look into the matter. If the parties agree or the court directs us to do so, we will be happy to do so.

Defs.' Ex. C:  Email from Public Catalyst (Eileen Crummy, Lisa Taylor, and Kevin Ryan).

Plaintiffs' Motion To Reopen Discovery was then filed on September 30, 2019.  Importantly, and contrary to Plaintiffs' representation in their motion, the Monitor's response was not a request for the production of this information so that its staff could fulfill obligations under the

2nd MSA.    Rather, the response was an offer to review the case if both parties desired that review as an alternative to discovery or if the Court ordered the Monitor to do so.  Furthermore, Defendants have never denied the Monitor access to any information requested in the course of the Monitor's work

Next, because the first issue before the Court is whether any discovery should be allowed, Defendants reserve any objections to deposition notices and/or written discovery which may ultimately be served by Plaintiffs if any discovery is allowed to proceed.  And with regard to such discovery, the Governor, Mr. Davis, the former MDHS Executive Director, and Mr. Barton, the current Deputy Executive Director of Administration of MDHS and former Inspector General of MDHS are high-ranking governmental officials.  Therefore, it is well settled in the 5th Circuit that the Plaintiffs have the burden to **prove** "exceptional circumstances" exist which justify compelling them to testify.  *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995).  Furthermore, under the governing standards of federal law relating to the testimony of high-ranking governmental officials, the Plaintiffs have the burden of establishing that each high-ranking governmental official sought to be deposed has first-hand knowledge of the claims being litigated and other persons cannot provide the necessary information. *Freedom from Religion Foundation, Inc., v. Abbott*, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017).  The Court must also evaluate the potential burden that each deposition would impose on the governmental official and the substantive reasons for taking the deposition.  *Id.*  The Plaintiffs have not addressed, much less established, these factors.  In the final analysis, none of the high-ranking governmental officials or the MDHS investigator who investigated the death of A.H. on behalf of MDCPS have any first-hand knowledge of any events prior to A.H.'s death.  Moreover, there is no claim in this litigation related to the denial of the substantive due process rights under the

14th Amendment related to children who were not, at the relevant times, in the custody of the State of Mississippi.

## III.    LEGAL AUTHORITIES AND ANALYSIS

Plaintiffs' Motion To Reopen Discovery requests the Court reopen discovery and enter a revised case management order to allow the requested discovery. "A [case management order] may be modified only for good cause and with the judge's consent." F.R.C.P. 16(b)(4). "There are four factors relevant to a determination of good cause under Rule 16(b)(4). They are: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013); *see also*, *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010).

Because the deadlines in the case management order have long since passed, the relevant factors for the Court's consideration are (1) the importance of amending the case management order and (2) the potential prejudice in allowing the amendment of the case management order. First, Plaintiffs' Motion To Reopen Discovery fails to set forth good cause to reopen discovery and allow the requested discovery. Second, the reopening of discovery would prejudice Defendants because it is not relevant to either the 2nd MSA or the Amended Contempt/Receivership Motion. Third, reopening discovery as requested by the Plaintiffs would authorize Plaintiffs' counsel as a matter of policy and precedent to unilaterally seek broad, open-ended discovery of investigations and reports related to alleged abuse and neglect of children who are not members of the *Olivia Y* class whenever Plaintiffs' counsel challenges a screened out report or a subsequent investigation that did not result in a child being taken into custody.

### A.  Plaintiffs have failed to show the importance for reopening discovery.

Plaintiffs' Motion To Reopen Discovery does not set forth a good cause for discovery

that would warrant the reopening of discovery.  Instead, Plaintiffs are using the current motion as an attempt to conduct a speculative fishing expedition.  Rule 26 of the Local Uniform Rules provides that the "Case Management Order will establish a firm discovery deadline . . . [which] is that date . . . by which all depositions must be concluded."  L.U.Civ.R. 26(b)(1).  Further, "Counsel must . . . notice or subpoena depositions sufficiently in advance of the discovery deadline date to comply with this rule, and discovery requests that . . . schedule depositions that would otherwise be answerable after the discovery deadline date are not enforceable except by order of the court **for good cause shown**."  L.U.Civ.R. 26(b)(2) (emphasis added).

"Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'"  *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011); *see also*, *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14CV78-DCB-MTP, 2016 WL 7422561, at *7 (S.D. Miss. June 28, 2016); *Williams v. Manitowoc Cranes, LLC*, No. 1:14-CV-383-HSO-JCG, 2015 WL 11004904, at *2 (S.D. Miss. Aug. 12, 2015); *Jones v. Jackson State Univ.*, No. 3:07CV72 DPJ-JCS, 2008 WL 11506566, at *2 (S.D. Miss. Feb. 21, 2008)

The discovery deadline in this case is long-passed.  Plaintiffs now make vague assertions and misleading statements to support their claim that the requested discovery is relevant to the Amended Contempt/Receivership Motion and noncompliance with provisions of the 2nd MSA and that, therefore, discovery should be reopened.  However, "mere 'vague assertions' that the additional discovery may produce needed facts" amount to nothing more than "a mere 'fishing expedition.'"  *Addison v. Allstate Ins. Co.*, 97 F. Supp. 2d 771, 774 (S.D. Miss. 2000).

In the Court's Class Certification Order dated November 19, 2004, the Court dismissed all claims asserted on behalf of "all of those children who are not in DFCS custody, but have

been or are at risk of being abused or neglected, and about whom Defendants have received a report of abuse or neglect (referred to as the "Protective Services Class")."   Memorandum Opinion and Order, ECF No. 57.   Thereafter, the Court again affirmed it had "dismissed all claims sought to be asserted by and on behalf of the 'Protective Services Class'" and had only certified an "In-Custody Class" of Plaintiffs.   Memorandum Opinion and Order, ECF No. 84. The Court's previous certification of the In-Custody Class and dismissal of all claims asserted by the Protective Services Class is "the law of the case."   *See Bolton v. Murray Envelope Corp.*, 553 F.2d 881, 883 (5th Cir. 1977).

The discovery sought by Plaintiffs is broad, open-ended discovery that attempts to reach the top level of government in the State with regard to children who clearly were in the class of children the Court excluded and dismissed from this class action.   This is undisputed given that Plaintiffs are seeking information regarding:

> "the manner in which Defendants may be screening out or failing to investigate reports of child maltreatment, potentially blocking children who have been abused or neglected from entering foster care when appropriate."   Plaintiffs' Motion To Reopen Discovery at 2.

> Again, the excluded Protective Services Class was composed of:

> "all of those children who are not in DFCS custody, but have been or are at risk of being abused or neglected, and about whom Defendants have received a report of abuse or neglect

Plaintiffs seek this information despite "the law of the case" established by the Court's previous Orders which specifically excluded the group of children for whom Plaintiffs now seek discovery.

Despite Plaintiffs' claims to the contrary, the requested discovery is not relevant to the Amended Contempt/Receivership Motion or compliance with the 2nd MSA.   The scope of the 2nd MSA specifically states it "shall resolve all remaining claims" in this case.   2nd MSA at 1.   There

are no claims in this class action related to children who are the subject of a report of abuse of neglect but who were not in MDCPS custody. These claims of the Protective Services Class were dismissed nearly fifteen years.

Next, Plaintiffs simply make conclusory allegations that the requested discovery may "suggest systematic deficiencies and non-compliance." Plaintiffs' Motion To Reopen Discovery at 4. This is not legally sufficient. "While the scope of discovery is broad, it cannot be utilized 'to engage in an unwieldy, burdensome and speculative fishing expedition.'" *Midwest Feeders*, 2016 WL 7422561, at *7. In other words, discovery cannot be utilized to gather information related to a single case that in Plaintiffs' view may suggest systemic deficiencies in terms of non-compliance with the 2nd MSA.

Because Plaintiffs' Motion To Reopen Discovery is based on nothing more than unsubstantiated allegations about possible systematic deficiencies, it should be seen for what it is – a tactic to circumvent the law of the case and the Court's previous Order denying certification of the Protective Services Class.

### B. The requested discovery would prejudice Defendants because it is not relevant to either the 2nd MSA or the Amended Contempt/Receivership Motion.

Plaintiffs assert that "[i]n addition to being squarely within the scope of the 2nd MSA, the [requested discovery] is inextricably tied to Plaintiffs' pending Motion for Contempt and the Appointment of a Receiver." Plaintiffs' Motion To Reopen Discovery at 3. A closer review of the 2nd MSA shows the requested discovery is outside its scope. Further, a review of Plaintiffs' Amended Contempt/Receivership Motion and related 2018 Monitor's Report equally show the requested discovery is not relevant to the motion. Because the requested discovery is not relevant to either the 2nd MSA or the Amended Contempt/Receivership Motion, granting the requested relief would prejudice Defendants. Not only would reopening discovery require

unnecessary expenses, costs, and time, but it would also be disruptive to MDCPS's mission of providing child welfare services in Mississippi and would waste limited resources.

### 1.   The requested discovery is not within the scope of the 2nd MSA.

Plaintiffs' attempts to link the requested discovery to the scope of the 2nd MSA are misplaced.   The intent of the 2nd MSA "is to set forth and maintain the child welfare infrastructure, standards, and outcomes that Defendants must meet within specified time frames." 2nd MSA at 1.  Plaintiffs leap from that "intent" to the conclusion that "Section 2.1 of the 2nd MSA protects children, like A.H. and her sister, who have been reported to MDCPS and are under their protective supervision."  Plaintiffs' Motion To Reopen Discovery at 3.

Nothing within Section 2.1 – nor anything within the entirety of the 2nd MSA – establishes or supports Plaintiffs' conclusion that A.H. and her sister were under the "protective supervision" of MDCPS.  Section 2.1 provides that MDCPS shall maintain a statewide system for reports of child maltreatment and that the Monitor shall periodically review the statewide system.  Sections 2.2 through 2.9 of the 2nd MSA set forth the infrastructure, standards, and outcomes related to child maltreatment and the statewide system.[4]  Each of those sections specifically relates to children in MDCPS custody.

As stated above, the scope of the 2nd MSA is limited to "resolv[ing] all remaining claims" in this case.  2nd MSA at 1.  Plaintiffs again attempt to circumvent prior Orders of the Court and unilaterally expand this class action by claiming that "Children who have been reported to MDCPS for maltreatment, as A.H. and her sister were, are undeniably within the scope of the 2nd MSA" and are, therefore, in the protective custody of MDCPS.  Plaintiffs' Motion To Reopen Discovery at 3.  Again, it is undisputed that A.H. and her sister were never in the custody of

---

[4] Part 2 of the 2nd MSA is titled "2. Child Safety and Maltreatment in Care" under the broader heading "Foster Care Services".

MDCPS. Therefore, they are not within the scope of the 2nd MSA because any potential claims relating to the Protective Services Class members ("all of those children who are not in DFCS custody, but have been or are at risk of being abused or neglected, and about whom Defendants have received a report of abuse or neglect") were dismissed nearly fifteen years ago – i.e., those claims no longer remain and are, accordingly, not within the scope of the 2nd MSA.

Returning to Section 2.1, this section does not expand the scope of this class action. Instead, it requires MDCPS to maintain a statewide system as more fully detailed in the subsequent sections of Part 2 of the 2nd MSA, and the existence of the system is the monitoring requirement. MDCPS has such a system. Specifically, all reports of child maltreatment are received by Mississippi Centralized Intake ("MCI"). 2018 Monitor's Report at 38. MCI receives thousands of reports of child abuse and neglect each year – receiving 36,568 reports in 2018 alone. *Id.* And, these reports are screened, reviewed and investigated as described in detail in Defendants' Response to the Amended Contempt/Receivership Motion. Defendants' Memorandum In Support Of Response and Objections To Plaintiffs' Amended Contempt/Receivership Motion, ECF No. 858 at 37-41.

Importantly, following Plaintiffs' argument to its logical conclusion, Plaintiffs' position would entitle them to discovery related to each of those 36,568 reports from 2018 – and every subsequent unsubstantiated investigation not to mention the thousands of reports and investigations for 2019 and the years ahead. This would exponentially expand the scope of this class action in direct contravention of the Court's class certification order and the Monitor's duties under the 2nd MSA.

In addition to arguing the requested discovery is within the scope of Section 2.1, Plaintiffs further assert that the requested discovery is within the scope of the Monitor's authority

under other sections of the 2nd MSA. First, Plaintiffs contend the requested discovery falls within the scope of Section 9.3. More specifically, Plaintiffs rely on the portion of Section 9.3 which provides the "Monitor shall periodically conduct case record and qualitative reviews to monitor and evaluate the Defendants' performance with respect to the commitments in this 2nd MSA." 2nd MSA at § 9.3.

The Monitor does, in fact, conduct periodic case record reviews as part of their qualitative analysis – see Section III.B.2. below. However, the Monitor's report only examines children in MDCPS custody when assessing compliance with Section 2.1 of the 2nd MSA. Again, Plaintiffs' effort to place the requested discovery within the scope of Section 9.3 is not correct.

Plaintiffs also cite Section 9.7 of the 2nd MSA to support their position that discovery should be reopened. Section 9.7 provides that Defendants agree "to provide the Monitor access to all documents, data, and premises it deems relevant to their work." 2nd MSA at § 9.7. In their motion, Plaintiffs misleadingly represent that the Monitor has requested the A.H. file and that Defendants have not cooperated with the Monitor. Plaintiffs' Motion To Reopen Discovery at 4 ("The court-appointed Monitor has also inquired of Defendants about the A.H. fatality, but has not received any information about it.").

To be clear, the Monitor has never requested to review any documents, data, or other materials related to A.H. Plaintiffs' representation to the contrary is patently false. Also, the Monitor has never stated it "deems [the A.H. case] relevant to their work." In addition, the Monitor has not joined in Plaintiffs' request for the discovery related to A.H. The bottom line is the Monitor has simply taken the position that it will review the A.H. investigation report if requested by the parties or ordered to do so by the Court. This is a proper position of neutrality

14

that is essential for the Monitor to perform its duties.[5]

Despite Plaintiffs' attempts to persuade otherwise, the requested discovery is not within the scope of the 2nd MSA.  As such, Plaintiffs' Motion To Reopen Discovery should be denied.

### 2.  The requested discovery has no bearing on the pending motions.

Plaintiffs also contend the requested discovery is "inextricably tied" to their Amended Contempt/Receivership Motion because the Monitor "found the Defendants were not in compliance with Section 2.1 of the 2nd MSA" and because the motion "raise[s] the issue of Defendants' failure to comply with Section 2.1 of the 2nd MSA."  Plaintiffs' Motion To Reopen Discovery at 3-4.  However, Plaintiffs' efforts to link the requested discovery to the Amended Contempt/Receivership Motion as set forth below are misleading and lack merit.

### *2018 Monitor's Report*

First, Plaintiffs' conclusory statement is misleading as to what the Monitor actually found in its annual report.

Relative to Section 2.1, "[t]he monitoring team conducted a qualitative review of Mississippi's screening process in 2018 [which] consisted of 100 randomly selected, screened-out abuse and neglect referrals **involving children in MDCPS custody**, all from 2018."  2018 Monitor's Report at 38 (emphasis added).  As a result of this qualitative review, the Monitor determined screening was not appropriate in 9 cases.  *Id.*  In addition, "[t]he monitoring team reviewed SRU reports for the **82 MIC ["maltreatment in care"] investigations** from the first quarter of 2018, evaluated under commitment 2.1."  *Id.* at 44 (emphasis added).

A careful review of the 2018 Monitor's Report clearly shows the requested discovery is not "inextricably tied" to the Monitor's finding that Defendants were not in compliance with

---

[5] The reality is that the Monitor is aware of the essential facts: a minor child not in custody died and a subsequent investigation was conducted and a report issued because the child had been the subject of reports of abuse that were not substantiated.

Section 2.1 – the Monitor's own report only looked at children in MDCPS custody when considering Section 2.1 of the 2nd MSA.

### *Contempt/Receivership Motion*

In their Contempt/Receivership Motion, Plaintiffs also set forth four commitments for which Defendants failed to comply "with provisions of the 2nd MSA designed to help MDCPS achieve maltreatment standards – such as screening, investigations and reviews – [which] undoubtedly contributed to the high rate of **maltreatment in care**." Amended Contempt/Receivership Motion at 23 (emphasis added).

First, Plaintiffs point out the Monitor found "many features of the [statewide] system lack[ed] adequate quality controls." Amended Contempt/Receivership Motion at 23 (citing 2018 Monitor's Report at 5). A review of the portion of the 2018 Monitor's Report cited by Plaintiffs shows the lack of adequate quality controls related to "children in custody" and "MIC [maltreatment-in-care] reports." 2018 Monitor's Report at 5. Second, Plaintiffs cite to Defendants failure to comply with Section 2.3 of the 2nd MSA. Amended Contempt/Receivership Motion at 23-24. However, Section 2.3 of the 2nd MSA relates specifically to "maltreatment in care reports". 2nd MSA at § 2.3. Third, Plaintiffs refer to Defendants' non-compliance with Section 2.2 of the 2nd MSA. Amended Contempt/ Receivership Motion at 24. Yet, Section 2.2 of the 2nd MSA relates specifically to "reports of maltreatment of children in custody." 2nd MSA at § 2.2. Finally, Plaintiffs point to Defendants' non-compliance with Section 2.7 of the 2nd MSA. Amended Contempt/Receivership Motion at 25. Despite Plaintiffs' reliance on it, Section 2.7 specifically relates to "maltreatment investigations" of children "in custody." 2nd MSA at § 2.7.

Just as with the 2018 Monitor's Report, a careful review of the Amended

Contempt/Receivership Motion clearly shows the requested discovery is not "inextricably tied" to the Motion – the Motion does not raise the issue of Defendants' failure to comply with Section 2.1 of the 2nd MSA outside of the context of children in custody.

Because the requested discovery is neither within the scope of the 2nd MSA nor inextricably tied to the Amended Contempt/Receivership Motion, Plaintiffs' Motion To Reopen Discovery should be denied.

### C. Plaintiffs fail to provide any other support for reopening discovery.

In their motion, Plaintiffs put forth other reasons to somehow justify reopening discovery – all of which fail. First, Plaintiffs assert that discovery should be reopened because the Court "has granted leave to conduct limited discovery in similar circumstances." Plaintiffs' Motion To Reopen Discovery at 5. This is, at best, misleading. In July 2018, Plaintiffs requested limited discovery related to Defendants' Rule 60(b) Motion, and specifically related to the Defendants' obligation to request sufficient funds to effect the agreement. ECF No. 768 at 3. The Court granted leave to conduct limited discovery related to the issue of funding. ECF No. 783. The Court subsequently amended the scheduling order to extend limited discovery to November 30, 2018. ECF No. 803.

Unlike Plaintiffs' Motion To Reopen Discovery, the Court's previous allowance of limited discovery related to a provision of the 2nd MSA that was the specific subject of the pending 60(b) motion at the time. As such, Plaintiffs' argument that discovery is proper now because it was proper with regard to the precise issue before the Court in the 60(b) Motion is not a sufficient reason for reopening discovery.

Plaintiffs also claim that discovery should be reopened because the Monitor has historically had access to individual case records. Plaintiffs' Motion To Reopen Discovery at 6. The Monitor reviews individual case records based on its qualitative review of random

samplings related to various provisions of the 2nd MSA – not specific individual cases at the request of a party – see Section III.B.2. above.  If the Court were to allow Plaintiffs' counsel to request specific case records of children not in custody be reviewed by the Monitor, the Monitor would be forced to undertake additional, undefined, and potentially massive amounts of work based solely on demands of Plaintiffs' counsel.  In addition, Section 11.1.c. provides "Plaintiffs agree not to seek relief . . . for violations related solely to an individual child."

In Plaintiffs' Motion to Reopen Discovery, they have also asserted, without any evidentiary support whatsoever, that "If reports of falsification of records and attempts at a cover-up are true, as Plaintiffs have a good faith basis to believe they are, these actions suggest systematic deficiencies and non-compliance, which weigh heavily in favor of the appointment of a receiver."  Plaintiffs' Motion To Reopen Discovery at 4.  No evidence is provided to the Court with regard to these unsupported allegations.    Plaintiffs simply throw around vague, inflammatory language in hope that this will justify an otherwise unsupported motion.  This is simply a blatant attempt to ignore the sole issue before the Court, which is whether discovery in this class action should be reopened to allow Plaintiffs' counsel to pursue broad discovery related to the tragic death of a child who was not in the custody of MDCPS and was not, therefore, a member of the *Olivia Y* class.

Plaintiffs' insertion of these few passing arguments as a last grasp at straws is just another failed attempt to show sufficient reasons for reopening discovery which would amount to good cause.

## IV.    CONCLUSION

Plaintiffs' Motion To Reopen Discovery requests the Court enter a revised case management order to reopen discovery which Plaintiffs contend is relevant to their pending Amended Contempt/Receivership Motion and to noncompliance with provisions of the 2nd MSA.

However, Plaintiffs fail to establish the requisite "good cause" for amending the case management order to reopen discovery.

Despite Plaintiffs' claims to the contrary, the A.H. investigation report is neither relevant to the pending Amended Contempt/Receivership Motion nor to the Monitor's duties under the 2nd MSA. Plaintiffs' desire to conduct discovery related to a single case – one which involves a child outside the certified class – cannot serve as a basis for reopening discovery, even on a limited basis.

The policy implications of Plaintiffs' Motion To Reopen Discovery are also critically important to the management of the foster care system in Mississippi. The tragedy surrounding A.H. is not a basis for potentially expanding this class action to encompass every report of abuse and neglect Plaintiffs' counsel believes should have been handled differently by MDCPS.

Because Plaintiffs have failed to establish good cause for reopening discovery, Plaintiffs' Motion To Reopen Discovery should be denied. However, if the Court determines that discovery should be reopened, Defendants are not now waiving any objections to discovery which Plaintiffs may ultimately file. Instead, Defendants specifically reserve any objections which may be applicable at that time or, alternatively, request permission to supplement this memorandum if the Court determines the issue of discovery scope will be decided contemporaneously with the issue of reopening discovery.

RESPECTFULLY SUBMITTED, this the 15th day of October, 2019.

> PHIL BRYANT, as Governor of the State of Mississippi, JESS H. DICKINSON, as Commissioner, Mississippi Department of Child Protection Services, and TRACY MALONE, as Deputy Commissioner of Child Welfare, Mississippi Department of Child Protection Services

By: /s/ William C. Pentecost

OF COUNSEL:

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
James L. Jones (MSB #3214)
William C. Pentecost (MSB #99841)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS  39211
Telephone:  (601) 351-2400
Facsimile:  (601) 351-2424

Harold E. Pizzetta, III
Assistant Attorney General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS  39205