IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA Y., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 3:04-CV-251-TSL-FKB |
| | ) | |
| v. | ) | |
| | ) | |
| PHIL BRYANT, as Governor of | ) | |
| the State of Mississippi, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR AMENDED CASE MANAGEMENT ORDER PERMITTING LIMITED DISCOVERY**

This motion concerns Defendants' failure to comply with the terms of the currently operative and controlling settlement agreement, the 2nd Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA") [Dkt. 712] and Plaintiffs' right to enforce the 2nd MSA through limited and narrowly tailored discovery in connection with their pending Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver ("Plaintiffs' Amended Contempt Motion") [Dkt. 849]. This motion is not, as Defendants suggest, a scheme by Plaintiffs to "circumvent" the law of the case or expand a fifteen-year-old class certification determination. Defendants' attempts to characterize Plaintiffs' motion as such, while full of lengthy digressions and inapposite hypotheticals, are little more than attempts to obfuscate.

One of the main ways that children enter care is through the investigation and substantiation of maltreatment reports. Section 2.1 of the 2nd MSA, which was negotiated and agreed to by the parties and approved by this Court in 2016, plainly provides that Defendants have

an obligation to "ensure that [they] maintain[] a statewide system to *appropriately* receive, screen and investigate reports of child maltreatment…". 2nd MSA § 2.1 (emphasis added). While class certification was not granted to a pre-custodial class of children, Section 2.1 of the 2nd MSA makes clear that Defendants are not absolved of every obligation to these children. Defendants are required to ensure that all reports of maltreatment are dealt with appropriately and in accordance with the law. If Defendants fail to meet their obligations, for instance by conducting inadequate or superficial investigations of maltreatment reports, the population of children in custody could be artificially suppressed, denying children access to foster care and protection from the abuse that these investigations are intended to prevent. Plaintiffs' pending Amended Contempt Motion demonstrates that Defendants are in noncompliance with Section 2.1 and raises questions about the investigations into the living circumstances of two young children with "old and new injuries"[1] living in a home where those injuries were inflicted and, ultimately caused the death of one of those toddlers.

In accordance with Section 2.1 and pursuant to Mississippi law and Mississippi Department of Child Protection Services ("MDCPS") procedure, once a report of maltreatment is made to the Mississippi Centralized Intake ("MCI") and screened-in, as was the case for A.H. and her sister, MDCPS is required to follow a number of detailed procedures. First, an investigation must be initiated within either twenty-four or seventy-two hours, depending on the level of the report, by making face-to-face contact with the alleged victim. *See* MDCPS Investigations Policy & Procedures Manual ("Investigations Manual") (effective 6.24.19) at §3, attached hereto as **Exhibit A**; Miss. Code Ann. 43-21-353(1). The MDCPS caseworker then has twenty-five calendar days

---

[1] Sarah Fowler, *One child was fatally beaten, another critical. Child Services had been to the home before*, MISS. CLARION LEDGER, June 7, 2019, https://www.clarionledger.com/story/news/2019/06/07/2-children-beaten-one-dies-never-removed-from-home-natchez/1384264001/.

from the initial intake by MCI to complete the investigation and submit to the supervisor. Investigations Manual §3.7. The supervisor has five calendar days to approve the investigation.[2] The investigation must include interviews of a number of people, including: the person who reported the maltreatment; the alleged victim; the parent, guardian, or caretaker; the alleged perpetrator; siblings who reside in the home; all other children and household members; and two collateral contacts – one professional contact and one non-professional contact.[3] Investigations Manual §4.1. Further, if there is reason to suspect physical abuse of the children, the worker must examine the children in accordance with detailed MDCPS procedures. Investigations Manual §5.1.[4] MDCPS received two reports of abuse and neglect about A.H. which they were required to investigate. The fact that A.H. was subsequently killed as a result of that same abuse and neglect suggests, quite strongly, that MDCPS' system did not *appropriately* receive, screen and investigate reports of child maltreatment as required in Section 2.1.

The limited and narrowly tailored discovery Plaintiffs seek is directly related to Defendants' obligations under the 2nd MSA and their failure to comply with that provision. If the details of the A.H. investigation demonstrate system-wide failures to comply with Section 2.1 of the 2nd MSA – details which Defendants are committed to keeping Plaintiffs from discovering – it could well bolster Plaintiffs' pending Amended Contempt Motion.

---

[2] Information received from Defendants suggest that it took the supervisor in the A.H. case fifteen days to approve the investigation – ten days longer that permissible. *See* Defendants' Memorandum in Support of Their Response and Objection to Plaintiffs' Motion for Amended Case Management Order Permitting Limited Discovery (*"*Defendants' Memo") [Dkt. 868] at 4 ("The allegations were not substantiated and on May 20, 2019, an MDCPS case worker requested that the relevant case be closed…The case was administratively closed on June 4, 2019, after review and approval by the caseworker's supervisor.").

[3] Professional Collateral Contacts may include a teacher, medical professional, service agency, or law enforcement. Non-professional Collateral Contacts may include relatives, neighbors, or others who have information about the children. Investigations Manual §4.1.7.

[4] Reports about the A.H. fatality suggest that the children had old and new bruising. *See e.g.* Sarah Fowler, *One child was fatally beaten, another critical. Child Services had been to the home before*, MISS. CLARION LEDGER, June 7, 2019, https://www.clarionledger.com/story/news/2019/06/07/2-children-beaten-one-dies-never-removed-from-home-natchez/1384264001/.

## I. The Limited Discovery Requested by Plaintiffs is Directly Related to Their Pending Amended Contempt Motion.

In an attempt to block discovery of relevant information, Defendants claim that Plaintiffs' requested discovery is not related to the currently pending Amended Contempt Motion. But Plaintiffs' Amended Contempt Motion asserts that Defendants have not complied with Section 2.1 of the 2nd MSA, in addition to failing to comply with dozens of other provisions. *See* Amended Memorandum of Law in Support of Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver ("Plaintiffs' Amended Contempt Memo") [Dkt. 850] at 10. Section 2.1 of the 2nd MSA contains an obligation that Defendants maintain a statewide system to "*appropriately* receive, screen and investigate reports of child maltreatment...". 2nd MSA § 2.1 (emphasis added). Plaintiffs' Amended Contempt Motion specifically alleges noncompliance with Section 2.1 based upon the Monitoring Report 6, which clearly states that Defendants are not in compliance with that section of the 2nd MSA. *See* Progress of the Mississippi Department of Child Protection Services Monitoring Report 6 ("Monitoring Report 6") [Dkt. 845], pgs. 9, 38, 44.

Nonetheless, Defendants assert that the A.H. case is not related directly to Plaintiffs' Amended Contempt Motion. For example, Defendants claim that because Plaintiffs' Motion cites to provisions in Section 2 of the 2nd MSA which reference the maltreatment of children in custody, Plaintiffs cannot also be alleging noncompliance with the provision of Section 2 that encompass the maltreatment of children *not* currently in custody. Defendants' Memo at 16. In their Amended Contempt Motion, Plaintiffs allege noncompliance with at least 35 provisions, plus an additional 41 provisions for which Defendants provided no data, or the Monitor could not verify the data provided. *See* Plaintiffs' Amended Contempt Memo at 10. While the Amended Contempt Memo

lists all 76 provisions, it does not discuss each and every provision in detail. The mere fact that Plaintiffs' pending Amended Contempt Motion discusses the maltreatment of children in custody does not mean that Plaintiffs have somehow admitted that Section 2.1 does not also encompass children like A.H.

II. **Defendants' Obligations Under Section 2.1 of the 2nd MSA Apply to *All* Children Reported for Maltreatment, Not Just Children Reported for Maltreatment Who Are Currently in the State's Custody.**

Defendants employ some impressive, albeit misguided, logical gymnastics in an attempt to suggest that Section 2.1 does not apply to pre-custodial children who have been reported to MDCPS for maltreatment. Notably absent from Section 2.1 is any language limiting the screening system to reports pertaining to children currently in custody. This is particularly significant since, as Defendants list in their memo, all subsequent provisions of Section 2 of the 2nd MSA clearly state that each provision relates to children "in custody" (2nd MSA §§ 2.2, 2.6, 2.7), "maltreatment in care" (2nd MSA §2.3), "in a contract agency group home or emergency shelter" (2nd MSA §2.4), "in a private child placing agency foster home" (2nd MSA §2.5), "in MDCPS custody" (2nd MSA §2.8), or "in foster care" (2nd MSA §2.9). No such modifier exists in Section 2.1. While the requirements of Section 2.1 certainly include maltreatment reports of children in custody, its scope is broader, and includes *all* reports of maltreatment. The 2nd MSA does not say that Defendants' obligation to appropriately receive, screen and investigate reports of maltreatment only applies to children who are already in the state's custody. Indeed, such an interpretation would be absurd.

Section 2.1 encompasses all reports of maltreatment, including maltreatment in care, as discussed in the subsequent provisions, Section 2.2 through Section 2.9. There is nothing in

Section 2.1 to indicate that it cannot encompass all maltreatment reports and maltreatment reports of children in care. There is only one centralized intake for all reports of child maltreatment, MCI, which is governed by Section 2 of the 2nd MSA. All reports of maltreatment – concerning children both currently in custody and not currently in custody – are received through MCI. It would be entirely nonsensical to assume that Defendants are obligated under Section 2.1 to maintain a system to *appropriately* receive, screen and investigate all reports of child maltreatment, but that they are somehow only required to provide information about the reports they receive pertaining to children currently in custody.

Despite Defendants' current assertion to the contrary, quarterly data regarding compliance with the 2nd MSA that Defendants have produced to both Plaintiffs and the Monitor shows that Defendants understand their obligations under Section 2.1 of the 2nd MSA to include *all* reports of maltreatment to MCI, not just maltreatment in care. For example, a February 2, 2019, memo from Kris Jones (Deputy Commissioner of Administration at MDCPS) and Tamara Garner (Office Director II) to Public Catalyst lists as the subject "2nd MSA 2.1". MDCPS 015073, attached hereto as **Exhibit B**. The document contains a report of *all* calls to MCI that were answered and dropped. The report does not distinguish between calls or categorize them according to whether or not the subject child was already in custody or not. Additional data relating to Section 2.1 provided by Defendants similarly tracks *all* calls to MCI and not merely those pertaining to children currently in custody.[5]

Finally, in its discussion of Section 2.1, the Monitoring Report 6 makes clear that Defendants' obligations under the provision are two-fold. The section of the Monitoring Report 6

---

[5] *See e.g.* 20190131_20171001_20190115_ane_reportsreceived_expanded_details.csv;
20190131_20180101_20181231_ane_reportsreceived_currentq_details.csv;
20190131_20180101_20181231_ane_reportsreceived_msa_details.csv; MDCPS 015073-15074 - 2MSA §2.1.pdf.

titled "Responding to Reports of Abuse and Neglect (2.1)" explains that "MCI, established by MDCPS in 2009, is charged with receiving, prioritizing and dispatching reports of child maltreatment. Reports to MCI alleging child abuse, neglect, exploitation or risk are forwarded to local MDCPS offices for additional screening and investigation." Monitoring Report 6 at 38. Defendants' first obligation under Section 2.1 extends to *all* reports of maltreatment. Defendants' second obligation under Section 2.1 pertains more specifically to the handling of reports alleging maltreatment of children already in the state's custody, stating that, "If a report alleges maltreatment of a child in the state's custody, the information is required to be referred to the centralized Special Investigations Unit (SIU) for handling.". Monitoring Report 6 at 38. The fact that the Monitor's qualitative analysis for Section 2.1 focused on a sample of children in MDCPS custody does not mean that Defendants are absolved of their first obligation under Section 2.1 to *appropriately* handle *all* reports.

Section 2.1 of the 2nd MSA encompasses *all* reports of maltreatment received by MDCPS. Plaintiffs' pending Amended Contempt Motion asserts noncompliance with Section 2.1. The limited discovery sought by Plaintiffs concerns a child who was reported to MDCPS for abuse and neglect two times, along with her younger sister. The child, A.H., subsequently died as a result of the abuse. Both children were found to have "old and new injuries" despite the fact that the case was closed the day before four-year-old A.H. was killed and her three-year-old sister was admitted to the hospital in critical condition, where she remained for a month.[6] Therefore, the discovery Plaintiffs seek regarding MDCPS' involvement with the child, her death, and subsequent

---

[6] Maggie Wade, *Three-year-old girl severely beaten in deadly Natchez child abuse case released from hospital*, WMC ACTION NEWS, July 2, 2019, https://www.wmcactionnews5.com/2019/07/03/three-year-old-girl-severely-beaten-deadly-natchez-child-abuse-case-released-hospital/.

investigations are directly related to Defendants' noncompliance with Section 2.1 and Plaintiffs' pending Amended Contempt Motion.

### III. The Discovery Requested by Plaintiffs is Limited and Narrowly Tailored and Will Not Prejudice Defendants.

Plaintiffs' discovery requests are not – as Defendants imply – an attempt to trick the Court into setting a precedent that would provide them with unfettered access to individual case files related to the tens of thousands of reports of child maltreatment that MDCPS receives each year.[7] This is not what Plaintiffs have requested, nor is it the logical conclusion of Plaintiffs' request for limited discovery. Plaintiffs reiterate their offer to agree to conduct the other noticed depositions first, and to only pursue a deposition of the Governor if the other depositions indicate that the Governor had direct knowledge of the situation. As such, Plaintiffs have only requested permission to depose three individuals. Plaintiffs have also offered to forebear conducting the requested depositions pending a review by the Monitor.

Further, Defendants' characterization of Plaintiff's requested discovery as "broad" "open-ended" is disingenuous both facially and in the context of prior similar determinations of this Court. First, Plaintiffs' request does not constitute, facially, "broad, open-ended discovery of investigations and reports related to alleged abuse and neglect of children…". Defendants' Memo at 8. Plaintiffs' request is neither broad, nor open-ended. Plaintiffs request depositions of three individuals believed to have ordered or conducted investigations into the death of A.H. and any report, written or oral, that those same individuals prepared regarding the same. Second, when considered in light of prior rulings of this Court, the requests cannot possibly be considered broad.

---

[7] Defendants assert that the "logical conclusion" of Plaintiffs' request would "entitle [Plaintiffs] to discovery related to each of those 36,568 reports [of child abuse and neglect] from 2018 – and every subsequent unsubstantiated investigation not mention the thousands of reports and investigations for 2019 and the years ahead". *See* Defendants' Memo at 13.

In 2018 Plaintiffs filed a motion for limited discovery related to Defendants' Rule 60(b) motion. Defendants objected on the grounds that the requested discovery was "overly broad, unduly burdensome, and seeks discovery of irrelevant facts…". *See* Dkt. 771 at 5. The Court granted Plaintiffs leave to conduct limited discovery which included written discovery requests and depositions. *See* Dkt. 783. Despite the fact that Plaintiffs are requesting even more limited discovery in the instant motion than was deemed limited and approved by this Court in 2018, Defendants again claim that the requests are overly broad and burdensome.

Finally, Defendants' claim that three of the requested depositions are improper, because the individuals are public officials, lacks merit. Plaintiffs have been permitted to depose public officials in the past, including of individuals with a higher rank than those currently sought, except for the Governor. Most recently, Plaintiffs were allowed to depose Jess Dickinson, the Commissioner of MDCPS, and many senior officials in that MDCPS administration – including Kris Jones (Deputy Commissioner of Administration of MDCPS), Tonya Rogillio (Deputy Commissioner of Child Welfare of MDCP), and Jaworski Davenport (Deputy Commissioner of Child Safety). Plaintiffs were also permitted to depose John Davis while he was still employed in his role as Executive Director of MDHS. If he was not considered too high-ranking to be deposed when he was employed in that role, he should not be considered too high-ranking now that he no longer occupies that role.

**IV.     The Monitor Is Entitled to Review the Requested Information.**

As a threshold matter, Defendants premise their objection upon a number of factual inaccuracies that must be corrected. First, Defendants' assertion that they have never provided the Monitor or Plaintiffs with individual case files, except for use in the Monitor's qualitative review, is not accurate. Defendants' Memo at 18. Plaintiffs have historically requested and received

9

individual case files relating to child fatalities. Most recently in March 2019, at Plaintiffs' request, Defendants provided Plaintiffs and the Monitor with information on five children who died in MDCPS custody and agreed to have the Monitor conduct a review of the fatalities. Plaintiffs concede that the child records received in the past have been related to children who died while in the custody of MDCPS. However, the fact that Plaintiffs have not previously requested information pertaining to a specific provision of the 2nd MSA does not in itself preclude them from doing so now.

Second, Defendants' suggestion that Plaintiffs have been attempting to inappropriately pressure the Monitor into requesting irrelevant information as part of a "fishing expedition" is inaccurate and unfounded. Plaintiffs have been entirely transparent about their desire to obtain the requested information, have gone through proper and established channels to obtain it, and have brought the issue to the Court when the parties were unable to resolve it. Plaintiffs have also been transparent about both their belief that the Monitor is entitled to this information under Section 9 of the 2nd MSA, and their inquiries to the Monitor.

Plaintiffs' current request for information related to a child fatality is not a wild deviation from the norm, as Defendants suggest. On the contrary, it is entirely consistent with the historical standards of conduct – Plaintiffs have been following the same protocol for obtaining these files as they have followed in the past. Further, under the 2nd MSA, Plaintiffs are actually required to confer with Defendants and the Monitor to resolve issues prior to consulting the Court. Defendants' assertion that the required conferral was somehow an attempt to circumvent the Court is ridiculous.

Similarly, Defendants' assertion that requesting individual case files would result in the Monitor being "forced to undertake additional, undefined, and potentially massive amounts of

10

work…" is unfounded. Defendants' Memo at 18. The Monitor has indicated that they would be "happy to" look into the matter of the A.H. investigations if the parties agreed or if the Court so directed. *See* Plaintiffs' Ex. F [Dkt. 865-6], Defs' Ex. C [Dkt. 867-3]. The slippery slope argument that Defendants stress with regards to the Monitor simply does not hold, and Defendants again take Plaintiffs' narrow request to an illogical and absurd extreme. The limited discovery requested by Plaintiffs is not an arbitrary request about an individual child who was reported for maltreatment. The case involves the fatal beating of a four-year-old child whose maltreatment had been reported to MDCPS twice prior to her death. To address Defendants' repeated policy concerns: even if taken to its "logical extreme", Plaintiffs' request would merely set the precedent that the Monitor or a party may request individual information regarding a child fatality in circumstances where the alleged abuse was known to MDCPS, and where MDCPS had been involved in the case. Hopefully Defendants do not truly believe that such "tragedies" would be frequent enough to lead to "potentially massive amounts of work". Defendants' Memo at 18. There is a considerable difference between the instant fatality case of a child with whom MDCPS was involved and all "investigations and reports related to alleged abuse and neglect of children".

Plaintiffs have demonstrated good cause for the Court to enter an amended case management order and allow Plaintiffs to conduct limited discovery.

Plaintiffs therefore respectfully move the Court for a revised case management order, pursuant to Fed. R. Civ. P. 16(b)(4),

> (1) permitting Plaintiffs' to conduct limited discovery, in the form of depositions of the witnesses identified in Exhibit A to Plaintiffs' motion [Dkt. 865-1],
>
> (2) governing the timing of that discovery,
>
> (3) granting such other relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the 22th day of October 2019.

/s/ Marcia Robinson Lowry
Marcia Robinson Lowry (*pro hac vice*)
A Better Childhood, Inc.
355 Lexington Avenue, Floor 16
New York, New York 10017
Telephone (646) 808-7344
Email: mlowry@abetterchildhood.org

Wayne Drinkwater, Jr. (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 400
188 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
Email: wdrinkwater@bradley.com
          mbentley@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22nd, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will deliver copies to all counsel of record.

*/s/ Marcia Robinson Lowry*