# EXHIBIT A



# Investigations
# Policy & Procedures

Final Effective 6.24.2019



## Table of Contents

Section 1: Overview ...................................................................................................................... 1

   1.1 Authority to Investigate Reports ............................................................................................ 1

   1.2 Failure to Comply ................................................................................................................... 1

   1.3 Mandatory Referrals to Youth Court .................................................................................... 1

   1.4 Indian Child Welfare Act Compliance .................................................................................. 1

Section 2: Required Notifications ................................................................................................. 1

   2.1 Required Report Information. ................................................................................................ 1

   2.2 Notifications to the Youth Court ........................................................................................... 2

   2.3 Notifications to Law Enforcement and District Attorneys ................................................... 3

   2.4 Final Reports to the District Attorney, Law Enforcement, or County Prosecutor .............. 4

Section 3: Investigations ................................................................................................................ 5

   3.1 Levels of Reports ................................................................................................................... 5

   3.2 Level One Reports .................................................................................................................. 5

   3.3 Level Two Reports ................................................................................................................. 5

   3.4 Level Three Reports ............................................................................................................... 5

   3.5 Initiation of Investigation ...................................................................................................... 6

   3.6 Face-to-Face Contact ............................................................................................................. 7

   3.7 Time to Complete Investigation ............................................................................................ 9

   3.8 Home Visits ............................................................................................................................ 9

   3.9 Law Enforcement Accompaniments ..................................................................................... 9

   3.10 Denial of Entry .................................................................................................................. 10

Section 4: Interviews ................................................................................................................... 10

   4.1 Interviews Generally ............................................................................................................ 10

   4.2 Interviewing the Reporter ................................................................................................... 11

   4.3 Interviewing in a School Setting ......................................................................................... 11

   4.4 Interviewing a Parent, Guardian, Custodian, or Caretaker ................................................ 12

   4.5 Interviewing an Alleged Perpetrator ................................................................................... 12

   4.6 Interviewing Child Victims ................................................................................................. 13

   4.7 Child Victim's Statement ..................................................................................................... 13



4.8 Statement Elements ........................................................................................................... 14

4.9 Photographs ..................................................................................................................... 16

Section 5: Assessments ........................................................................................................... 17

5.1 Physical Assessment of a Child Victim ............................................................................ 17

5.2 Medical and Mental Health Examinations ....................................................................... 18

5.3 Drug and Alcohol Screenings .......................................................................................... 19

5.4 Home Assessment ........................................................................................................... 19

5.5 Safety Assessment .......................................................................................................... 20

5.6 Risk Assessment .............................................................................................................. 20

5.7 Safety Plan ...................................................................................................................... 21

Section 6: Findings .................................................................................................................. 23

6.1 Completed Investigations ................................................................................................ 23

6.2 Types of Findings ............................................................................................................ 23

6.3 Substantiated Reports ..................................................................................................... 24

6.4 Unsubstantiated Reports ................................................................................................. 24

6.5 Closed Without Findings ................................................................................................. 24

6.6 Basis of Findings .............................................................................................................. 25

6.7 Documentation of Substantiation Criteria ...................................................................... 25

6.8 Statement of Credible Witness ........................................................................................ 27

6.9 Diligent Searches ............................................................................................................ 27

Section 7: Removals ................................................................................................................ 28

7.1 Removals Due to Substantiated Investigation ................................................................. 28

7.2 Reasonable Efforts .......................................................................................................... 28

7.3 Removals Due to Court Order and Without Investigation ............................................... 29

7.4 Facilitating Removals ...................................................................................................... 30

Section 8: Expanded Investigations in Extraordinary Circumstances ...................................... 31

8.1 Medical Neglect of Handicapped Infants ........................................................................ 31

8.2 Out of Home Investigations ............................................................................................ 32

8.3 Investigating Human Trafficking Reports ........................................................................ 33

8.4 Investigations of Alleged Meth Labs ............................................................................... 33

8.5 Reports Involving More than One County ....................................................................... 34



8.6 Protective Services Alerts ...................................................................................................... 35

Section 9: Special Investigations Unit ........................................................................................... 36

9.1 SIU Overview ........................................................................................................................ 36

9.2 SIU Reports to MCI .............................................................................................................. 36

9.3 MCI Responsibilities for Entering SIU Reports .................................................................. 37

9.4 Screening the Report ............................................................................................................. 37

9.5 Quality Assurance Process for Screening Maltreatment in Care Reports ............................ 38

9.6 Investigating the Report ........................................................................................................ 39

9.7 Facilities ................................................................................................................................ 41

9.8 Law Enforcement Notification ............................................................................................. 42

9.9 Child Fatalities ...................................................................................................................... 42

Appendix A .................................................................................................................................... 43

Felony Child Abuse ..................................................................................................................... 43

Abused Child ............................................................................................................................... 44

Neglected Child ........................................................................................................................... 44



## Section 1: Overview

### 1.1 Authority to Investigate Reports

The Mississippi Department of Child Protection Services is charged with the duty to investigate all reports of child abuse and neglect.[1]

### 1.2 Failure to Comply

Failure by an employee to comply with the policies and procedures contained herein may result in disciplinary action, up to and including termination.

### 1.3 Mandatory Referrals to Youth Court

MDCPS is required to immediately refer all reports of abuse or neglect to the Youth Court intake unit via the Mississippi Youth Court Information Delivery System (MYCIDS).[2]  Workers have twenty-four (24) hours from the time a case is assigned to them for investigation to make this referral to the Youth Court.

### 1.4 Indian Child Welfare Act Compliance

Workers must resolve the issue of Indian heritage as soon as possible after contact is made with the family, either through a report of abuse/neglect or a referral for services.  This must be documented as an ICWA Contact narrative in MACWIS.

## Section 2: Required Notifications

### 2.1 Required Report Information.

    A.  Report Information for Youth Court Referrals

        1.  Information required by the youth court is contained in the MYCIDS Court Case Information Form. Find a PDF copy of the form here.

    B.  Report Information for Law Enforcement and District Attorneys

        1.  This referral must be sent within twenty-four (24) hours of assignment and must be documented as a narrative in MACWIS as an Investigation Staffing.  The narrative

---

[1] Miss. Code Ann. §43-26-1, §43-21-353, Miss. Code Ann. §43-21-357
[2] Miss. Code Ann. §43-21-353, Miss. Code Ann. §43-21-351, §9-21-9(d)

1



must include the person to whom the information was sent and the information provided.

2. MDCPS must include the following information in the law enforcement and district attorney referral:

   a. The name and address of the child;

   b. The names and addresses of the parents;

   c. The name and address of the suspected perpetrator;

   d. The names and addresses of all witnesses, including the reporting party if a material witness to the abuse;

   e. A brief statement of the facts indicating that the child has been abused and any other information from the agency files or known to the social worker making the investigation, including medical records or other records, which may assist law enforcement or the district attorney in investigating and/or prosecuting the case, and,

   f. What, if any, action is being taken by MDCPS.

## 2.2 Notifications to the Youth Court

A. Overview

   1. MDCPS is required to make a referral to the youth court within twenty-four (24) hours of a child being assigned to the local MDCPS social worker for investigation.

      a. If the allegations require immediate removal, MDCPS may remove the child and immediately notify the judge or their designee. [3]

   2. In the 22 counties which have a County Court, those judges also serve as Youth Court judges. In counties which do not have a County Court, the Chancery Judge may hear Youth Court matters, or the Chancery Judge may appoint a lawyer to act in a judicial capacity as Youth Court Referee.[4]

      a. Find a list of all State Youth Court Contacts here.

      b. Find a list of all Youth Court Prosecutors here.

---

[3] Miss. Code Ann. §43-121-303 (probable cause to believe that the child is in immediate danger of personal harm).
[4] State of Mississippi Judiciary Administrative Office of Courts



3. Reports must be completed on every individual child's matter that may come before the youth court.[5]

   a. An individual child's matter is defined as all reasons for referral or allegations against an individual child coming before the youth court at intake at one time.[6]

   b. Subsequent referrals or allegations must be referred separately.

4. MDCPS must provide updates to the Youth Court when information becomes available that would be pertinent to the Youth Court prosecutor's decision of whether or not to file a petition.[7]

B. Worker Duties

1. Prior to initiating the investigation, the worker and the Intake Supervisor must conduct a thorough review of any prior MDCPS involvement with the family. This must be documented as an Investigation Staffing narrative in MACWIS.

2. The Court Case Information Sheet must be completed and electronically sent to the appropriate Youth Court through MYCIDS within twenty-four (24) hours of the child being removed from the home; or, within twenty-four (24) hours of the child being assigned to the local MDCPS social worker for investigation.[8]

3. While all the information may not be available to worker within twenty-four (24) hours, as much as is known must be completed on the Court Case Information Sheet, including

   a. Findings;

   b. Any referrals made to law enforcement or other courts;

   c. Reasonable efforts made to prevent removal or that reasonable efforts are not required and the reason such efforts are not required.

**2.3 Notifications to Law Enforcement and District Attorneys**

A. Law Enforcement

1. Upon receiving a report that a child has been sexually abused, or burned, tortured, mutilated or otherwise physically abused in such a manner as to cause serious bodily

---

[5] Miss. Code Ann. §9-21-9(d)
[6] Miss. Sup. Ct. Special Order No. 46 and Special Order No. 47, December 20, 1996
[7] Miss. AG Op. No. 98-0318, June 19, 1988
[8] Miss. Code Ann. §9-21-9(d-f)



harm, or of abuse that would be a felony under state or federal law, MDCPS must immediately notify the appropriate local law enforcement agency.

2. MDCPS has the duty to provide law enforcement with all the names and facts known at the time of the report and to provide new or additional facts as they become available.[9]

B. District Attorneys

1. After receiving a report that a child has been sexually abused, or burned, tortured, mutilated or otherwise physically abused in such a manner as to cause serious bodily harm, or of abuse that would be a felony under state or federal law, MDCPS must notify the appropriate prosecutor's office within twenty-four (24) hours of receiving the report.

2. MDCPS must investigate and make a preliminary report to the appropriate prosecutor's office within twenty-four (24) hours of initiating the investigation.[10]

3. MDCPS has a duty to provide new or additional information and evidence to the prosecutor's office as it becomes available.

   a. "New or additional" information would consist of any information which would fit into the above parameters and which is imparted to Department of Human Services after the initial report is made. If additional information which would be pertinent to the prosecution of the case or to a law enforcement investigation becomes available to the department after the DHS investigation has been completed, this also should be provided.[11]

**2.4 Final Reports to the District Attorney, Law Enforcement, or County Prosecutor**

A. When an investigation is completed, the investigating worker must submit the completed report in MACWIS to the supervisor for approval.

B. These approved investigation report, along with the concluding DA and/or LE reports, must be mailed or hand-delivered to the DA, LE or County Prosecutor (when applicable) by the supervisor.

---

[9] Miss. Code Ann. §43-21-353
[10] Miss. Code Ann. §43-21-353
[11] Miss. AG Op. No. 98-0318, June 19, 1988



C. Information submitted to the DA, LE or County Prosecutor must be included in the court report and summary.

D. The date and time of the final report delivery must be documented in a narrative in MACWIS. The narrative must include the date the report was delivered and to whom.


**Section 3: Investigations**

**3.1 Levels of Reports**

MDCPS screens incoming reports made to Mississippi Centralized Intake (MCI) and assigns one of three levels as follows.

**3.2 Level One Reports**

A. These reports do not meet statutory criteria for a child abuse and neglect investigation and are screened out and referred for information or services to the appropriate county.

B. There is no investigation by CPS required on these reports, but other action may be required, such as referral to another agency.

**3.3 Level Two Reports**

A. These reports meet the statutory criteria but do not meet at least one of the level three criterion. They are screened in and assigned to the appropriate county and worker.

B. The investigations for these reports must be initiated within seventy-two (72) hours from the first intake report date and time.[12]

**3.4 Level Three Reports**

A. These reports meet the statutory criteria for abuse, neglect, exploitation, and meet at least one of the level three criteria. They are screened in and assigned to the appropriate county for investigation immediately.

B. These investigations must be initiated immediately, but no later than twenty-four (24) hours from the first intake report date and time.[13]

C. A level three criterion is:

---

[12] Miss. Code Ann. 43-21-353(1)
[13] Miss. Code Ann. 43-21-353(1)



1. Any prior ANE report within the past twelve (12) months or multiple ANE reports regarding the alleged victim.

2. Any allegation involving a child:

   a. Who is in imminent risk of harm, which requires an immediate response by the assigned worker;

   b. Who is five (5) years of age or younger;

   c. Who has a disability or special need(s) including, but not limited to, the known or suspected presence of a medical condition or physical, mental, and/or emotional disability; or

   d. Who is in the legal custody of MDCPS.

3. Any allegation of:

   a. Felonious child abuse under state or federal law; or

   b. Sexual abuse.

D. Level Three reports require notification to law enforcement and prosecutors. See Rule 2.9 of this manual.

## 3.5 Initiation of Investigation

A. All investigations of reports of abuse and neglect received by the youth court intake unit must be promptly initiated by MDCPS.[14]

B. An investigation is considered "initiated" when face-to-face contact or attempted face-to-face contact is made with the alleged victim(s).

   1. If a family cannot be located after two attempted contacts within twenty-four (24) hours, the Worker must conduct a diligent search.  A diligent search includes:

      a. Contacting all known pervious addresses of the child's parent's

      b. Calling all previous telephone numbers listed in the case file;

      c. Contacting the County Clerk in charge of motor vehicle registration;

---

[14] Miss. Code Ann. 43-21-357

d. Requesting a law enforcement records check;

e. Contacting the State Department of Labor;

f. Contacting the Department of Corrections;

g. Contacting the state hospitals;

h. Contacting all known relatives, friends, and pervious employers;

i. Checking the telephone directory;

j. Contacting utility and telephone companies;

k. Contacting Child Support Enforcement;

l. Accessing the Location Services through the post office;

m. Checking MAVERICS and METSS; and

n. Utilizing Social Media.

2. The Worker must document their efforts to locate the family in a MACWIS narrative.

C. When a Worker makes face to face contact, MDCPS must inform the individual of the specific complaints or allegations made against the individual.[15]

### 3.6 Face-to-Face Contact

A. Policy

1. Attempted face-to-face contact for the initiation of an investigation are considered met when two (2) or more locations have been checked including child's identified home and one of the following:

a. Nearby relatives;

b. Known family friends;

c. Neighbors;

d. School; or

---

[15] Miss. Code Ann. §43-21-353

7



    e. Daycare.

B. Failure to Establish Face-To-Face Contact

    1. Attempted face-to-face contact with the child, parent, guardian, custodian, or caretaker and efforts to locate the child does not end the investigation.

    2. Law enforcement will be requested to assist in locating the child and family.

C. Worker Responsibilities

    1. Successful face-to-face contact must be documented in MACWIS including:

        a. Location of Contact

        b. Date;

        c. Time; and

        d. Persons present at the contact.

    2. If the worker cannot make face-to-face contact or locate the family, the worker must immediately notify their supervisor after each failed attempt.

        a. Unsuccessful face-to-face contact must be documented in MACWIS including:

        b. Location of Attempted Contact;

        c. Date;

        d. Time; and

        e. Measures taken to establish contact, such as speaking to neighbors or leaving a note.

    3. Concerted efforts must continue daily, including on weekends, to locate the child or children until contact is made or the investigation is closed.

    4. After the second unsuccessful home visit the worker should leave a business card requesting that the family contact the worker. The note or letter should not indicate the purpose of the visit.

**3.7 Time to Complete Investigation**

A. The worker has seven (7) calendar days to initiate the safety and risk assessment in MACWIS and twenty-five (25) calendar days from initial intake "report date and time" by MCI to complete the investigation and submit to the supervisor.

B. The supervisor has five (5) calendar days to approve the investigation.

**3.8 Home Visits**

A. All MDCPS employees are required to adhere to the following rules when initiating an investigation or visiting families and clients at their home.

B. The worker must make a visit to the home within ten (10) days of the initiation of the investigation. A physical home environment narrative must be entered in MACWIS within 48 hours of the visit.

   1. When initiating an investigation and visiting a family's home, MDCPS employees are expected, and required, to be professional.  Families may display a range of emotions, including frustration, fear or anger, and it is important for agency employees to keep their composure and treat the family with respect at all times.

C. MDCPS employees must always ask permission before entering a family's home. Employees may only enter the home when the family invites them in, and must never make rude or disrespectful comments about the family or their home.

D. When employees visit a family's home, they must:

   1. Introduce themselves to the family;

   2. Present an official agency issued identification badge; and

   3. Explain the circumstances that brought them there.

E. Employees may take photos of the family's home if the employee family gives permission, but should never remove anything from the home as evidence.

**3.9 Law Enforcement Accompaniments**

A. Employees may ask law enforcement to accompany them to initiate an investigation, keeping in mind that law enforcement is there to ensure the safety of agency employees and not to intimidate the family.



B. Employees should follow all directives given by law enforcement.  Employees may ask questions of law enforcement, but may not give any directives and should always be respectful.

C. Under no circumstances should an MDCPS employee direct a law enforcement officer to destroy a family's property or to act in any other manner inconsistent with the law.

**3.10 Denial of Entry**

A. If a family does not invite the employee into the home or asks the employee to leave in the middle of the visit, the employee must do so without argument.  Employees must leave immediately if asked.

    1. Agency employees must never force their way into a family's home, as these actions put the agency and employee at risk of legal liability.

B. If employees are asked to leave without first checking on the children, the employee must follow the family's directive and then contact the Youth Court in the county in which the family is located.  The employee should explain the situation to the Youth Court, who may take other action to ensure the safety of the children.

C. If the employee has reason to believe that the children are in imminent danger from harm, the employee must also immediately call law enforcement.

**<u>Section 4: Interviews</u>**

**4.1 Interviews Generally**

A. The worker must interview the following individuals:

    1. The Reporter;

        a.  This interview should be conducted prior to contact with the children if possible.

    2. The alleged victim(s);

    3. Parent, Guardian, or Caretaker;

    4. Alleged perpetrator, unless otherwise instructed by law enforcement;

    5. Siblings who reside in the home;

    6. All other children and other household members;



7. At least two (2) Collateral contacts.

   a. Two (2) collateral contacts must be made on all investigations. One must be a professional contact and the other must be a non-professional contact.

   b. Collateral contacts must never be the reporter or household member.

   c. Professional Collateral contacts may include the following:

      i. Teacher;

      ii. Medical professional;

      iii. Service agencies; and

      iv. Law enforcement;

   d. Non-Professional Collateral Contacts may include, but are not limited to:

      i. Relatives;

         A. If a relative is used as a collateral contact, the second collateral contact must be a professional.

      b. Neighbors; or

      c. Others who may have information concerning the health and welfare of the child.

## 4.2 Interviewing the Reporter

A. If contact information is provided on the reporter, the worker assigned the investigation should contact the reporter as the first step in the investigation prior to interviewing the children.

B. If the reporter cannot be contacted, the worker should proceed with the investigation and attempt to contact the reporter at a later time.

   1. The inability to contact the reporter should not delay proceeding with the investigation.

## 4.3 Interviewing in a School Setting

A. Workers should strongly consider interviewing teachers and other school staff about their observations regarding a child. If a worker chooses to visit a school to interview, they should notify an administrator of their arrival and show an agency-issued identification.

11



B. If the principal or other school official insists on being present when a child is interviewed, the worker must advise school official(s) that they may be subpoenaed to court to testify and have each person sign a confidentiality statement.

## 4.4 Interviewing a Parent, Guardian, Custodian, or Caretaker

A. Generally

1. The worker must interview the parent, guardian, custodian, or caretaker, as well as the alleged perpetrator face-to-face, separately, and privately.

2. The worker must document in MACWIS the details, time, location, and reason for each meeting.

B. During the interview

1. The interviewee must be given a copy of the Client's Rights and Responsibilities as well as MDCPS Grievance Procedures.

   a. These must be discussed with the parent or caretaker to ensure understanding.

   b. The parent or caretaker must sign the Clients Rights and Responsibilities form. A signed copy must be filed and maintained in the case record.[16]

   c. If the parent or caretaker refuses to sign, the worker should document on the form that the parent refused to sign and ask the parent to initial this acknowledgement.

2. ICWA must be addressed and documented in MACWIS.

## 4.5 Interviewing an Alleged Perpetrator

A. Social Workers are not required to give an alleged perpetrator a Miranda warning.[17]

B. In circumstances where the alleged perpetrator has been charged or arrested for a child abuse crime, the worker only needs to interview the alleged perpetrator if:

1. Law enforcement gives consent; and

---

[16] These procedures are currently being updated. Please refer clients to the consumer solutions lines to register complaints or comments.

[17] Hennington v. State, 702 So. 2d 403, 409 (Miss. 1997) holding "that the mere investigation by a social worker in a non-custodial setting does not require an alleged abuser to be advised of his Miranda rights."

2. Information related to medical history, potential placements, and other pertinent information is needed to determine the safety of the child(ren) or risk of harm.

C. If the parent, guardian, custodian, caretaker, or alleged perpetrator has not been charged or arrested, and law enforcement, the district attorney, or other appropriate official requests the worker not to interview the person, the worker must inform their supervisor and the appropriate Youth Court jurisdiction of the request. The worker must also document the request in MACWIS.

1. If the alleged perpetrator is not interviewed, the record worker should must document the reasons.

2. A copy of the interview with the perpetrator by law enforcement should be obtained for MDCPS records.

## 4.6 Interviewing Child Victims

A. The worker will attempt to notify the parent, guardian, custodian, or caretaker before interviewing the child, unless notification would endanger the child or impede the investigation.

B. Interviews with the children must be conducted alone and in private.

C. If not notified prior to interviewing child(ren), the parent or caretaker should be notified immediately following the interview, unless this would endanger the child(ren).

D. Each child must be interviewed privately with documentation addressing time and location.

1. In extenuating circumstances, the child may be interviewed with another person present. The extenuating reason and the name of the person(s) present should be documented in the narrative. They person sitting in on the interview must sign confidentiality statement and be advised that they may be subpoenaed to court

## 4.7 Child Victim's Statement

A. If the allegations meet your MDT protocol for referral to a CAC, it's best practice to ask minimal fact questions and make a referral to the CAC within the time frame outlined in your MDT protocol.

B. A child-victim's statement must be taken when child states the abuse occurred and identifies the perpetrator(s) unless law enforcement requests otherwise.



C.  The following elements are typical of sexually abusive situations, and situations and should be considered in assessing the weight to be given to the child's statement in cases where sexual abuse is alleged.

   1.  Does their explanation corroborate the medical findings or the physiological indicators as to how the injury was sustained?

   2.  Whom do they say hurt them?

   3.  Did anyone else know it was going on?

   4.  Has this type of injury ever happened before?

D.  The child's statement should be weighed against any medical evidence and/or the physiological indicators.

E.  If information is missing in any one category, further exploration regarding the reason for the absence is needed. Perhaps the right questions to elicit the information were not asked or the child was too uncomfortable to respond.

F.  A finding of substantiated or unsubstantiated must be based on the totality of the circumstances.

## 4.8 Statement Elements

Every investigation where the allegations of abuse are considered a felony (see Appendix A) must be referred to the Children's Advocacy Center (CAC).

A.  History

   1.  Multiple Incidents over Time

      a.  Did the child indicate more than one incident occurred?

      b.  This situation is most common where the alleged perpetrator is a relative, friend or caregiver to the victim.

B.  Progression of Abuse

   1.  Did the abuse progress from less severe forms to more serious? Does the child describe transitional activities which appear acceptable at first, but become more extreme over a period?



    2. This is the most common where the abuse occurs in the context of a long-standing relationship.

C. Details

    1. Explicit Knowledge of Sexual Activity

       a. Did the child give explicit details of the sexual experience?

       b. Were these details beyond the knowledge typical of a child this age?

    2. Richness of Detail

       a. When age and developmentally appropriate, could the child give the location of the incident and a time, even though specific dates were not given?

       b. Did they tell anyone else, if so, whom? Can they give any details of the environment?

       c. As a child's developmental age increases, more detail may be expected. For instance, such details by a preschool age child are not expected.

D. Consistency

    1. If the child was interviewed more than once were the responses consistent from one interview to the next?

    2. Were any parts of the child's story corroborated by others or by physical evidence?

E. Secrecy

    1. Does the child indicate that she or he was instructed to keep the abuse secret?

    2. Did it occur in a private setting?

F. Coercion

    1. Each of the following criteria must be evaluated separately to determine the status of the case.

    2. The questions must be phrase in age appropriate language that is not leading. These elements are typical of many child sexual abuse cases, yet the absence of information in some areas does not necessarily mean that the case is unsubstantiated.

       a. How did the perpetrator get the child to engage in the activity?



b. What are the elements of coercion or persuasion?

c. What does the child think will happen now that they have told the story?

d. Are they afraid of anything?

**4.9 Photographs**

A. Policy

1. With permission of the family, the investigating worker must take photographs of the child and the child's home or the location where the child was residing when the abuse or neglect occurred, to document any physical evidence of abuse or neglect, or the lack thereof. (proving that there are no injuries is as important as proving that there are injuries).

2. If the child's parents do not cooperate or refuse to consent, the worker must immediately seek youth court or law enforcement intervention.

3. A parent, another MDCPS worker, or another adult must always be present as a second party when photographs are taken of a child. MDCPS employees must never take photographs of a child's genitals (more about this in Section 5).

B. Procedure

1. Identifying information should be written on back of photograph or attached to it. Identifying information includes but may not be limited to:

   a. Name of the victim,

   b. Date photograph was taken;

   c. Time; and

   d. Location.

2. Each photograph must have a visible body landmark to distinguish the identity of the child, actual location, and extent of the area of injury.

   a. More than one photograph of the injury may be required to show landmark and still obtain a clear close-up of abuse.

3. Photographs must be filed in the case record.

16

**Section 5: Assessments**

**5.1 Physical Assessment of a Child Victim**

A. Policy

1. If there is reason to suspect physical abuse of children, the worker must examine them according to the protocol outlined below.

2. All victims of alleged or suspected physical abuse must be thoroughly examined for evidence of abuse, e.g.;

   a. Bruises;

   b. Bites;

   c. Burns;

   d. Welts;

   e. Etc.

3. Victims of alleged or suspected neglect should be thoroughly examined if the investigation indicates reasons to suspect neglect manifesting as physical abuse; or if there are observable signs of neglect, e.g.;

   a. Malnutrition;

   b. Untreated accidental injuries;

   c. Infestations;

   d. Bug bites.

4. If there are visible injuries to a child, a medical exam is required.

B. Practice

1. A parent, caretaker or another adult witness must be present when child is examined.

2. When possible, a worker of the same sex as the child will examine the child. The procedure should be explained in a non- threatening, comforting way.



3. The worker should request that the parent or caretaker of the child, if old enough, remove the child's clothes. The worker should be sensitive to the child's feelings of undressing in front of a stranger.

4. If there is reason for an examination of the genital area of any child or breasts of female children over age six (6), arrangements must be made for examination by a medical professional.

   a. Under no circumstances may an MDCPS employee conduct this examination or take photographs of the child.

5. If a child or parent refuses to cooperate, the worker should immediately seek court intervention.

**5.2 Medical and Mental Health Examinations**

A. Medical examinations of children should occur when there are specific allegations indicating an injury which can be corroborated and verified by an examination and the initial phases of the investigation reveal information indicating that a medical examination is necessary and warranted to determine if there is evidence to substantiate any harm or maltreatment.

   1. If there are visible injuries to the child, the worker must take the child to the doctor for an exam.

   2. Medical examinations may be needed to confirm or rule out abuse/neglect and/or to prevent removal.

   3. If there is an allegation of sexual abuse, MDCPS must consult their Multi-Disciplinary Team (MDT) protocol and arrange for a medical exam if required.

B. The worker will assist parent or caretaker to arrange for the examination.

   1. The parent's own physical or mental health professional may be used.

   2. If the parent or caretaker is unwilling or unable to pay for the examination, Medicaid or other MDCPS resources will be utilized.

   3. If the child in question is already in MDCPS custody, they will have immediate eligibility for Medicaid.[18]

---

[18] See MDCPS E-Bulletin Issue 87, November 27, 2017



C. If a situation arises where a parent or caretaker refuses to cooperate, the worker must consult with their supervisor and court intervention may be sought.

1. When a court orders a medical or mental health examination, the worker must attend the examination. If the parents are uncooperative, the worker must take the child for the examination.

2. The court order must have language granting MDCPS the authority to take the child for examination.

**5.3 Drug and Alcohol Screenings**

A. MDCPS workers may request a drug and alcohol screen any time there is suspicion of illicit drug use  or prescription drug or alcohol abuse by a parent or guardian.

B. MDCPS workers may not administer drug or alcohol tests of any type to clients.

C. MDCPS workers must facilitate drug and alcohol testing of clients when ordered by the Court by:

1. Sending client(s) to a certified drug testing facility when client can pay for test and has transportation;

2. If necessary, transporting client to a drug testing facility as well as MDCPS paying the fee;

3. Arranging for drug testing company worker to come to the Court; or

4. Requesting Court personnel perform drug test.

D. MDCPS will determine who is responsible for payment and transportation after engaging with the client and assessing their resources. The worker should have a discussion and make a plan, including how long the client has to complete the screening.

**5.4 Home Assessment**

A. A Safety Checklist[19] must be completed on all investigations at the time of the initial home visit.

B. A Safe Sleep Program SIDS Risk Reduction Education Checklist must be completed for all children younger eighteen (18) months or younger.

---

[19] The current Safety Checklist can be found on the MDCPS SharePoint site.



C.  The Safety Checklist be signed by the parent or caretaker, and the worker, at the time of completion.

    1.  A copy of the Safety Checklist must be provided to the parent or caretaker.

D.  The worker must document the home visit in a Physical Home Environment Narrative in MACWIS.

## 5.5 Safety Assessment

A.  The Safety Assessment aims to measure the need for action based on an immediate threat to the child.

B.  The Safety Assessment addresses the following areas:

    1.  Physical harm or injury;

    2.  Neglect of basic needs;

    3.  Family strengths and needs;

    4.  Prior history of abuse, neglect, exploitation, or domestic violence;

    5.  Protective capacity of parent or caregiver.

C.  The Safety Assessment must be completed during the initial contact with the child or children and staffed with the supervisor immediately with documentation in the MACWIS narrative during the five (5) day required investigation staffing.

D.  The Safety Assessment is completed in all situations when the report has been assigned a Level Two (2) or Level Three (3) investigation.

    1.  The documentation of the Safety Assessment tool in MACWIS must be completed and submitted to the supervisor within twenty-five (25) days of the report date and time.

    2.  Documentation should include results of the safety assessment, addressing any safety, environmental or health issues and protective capacities of the parent or caregiver.

## 5.6 Risk Assessment

A.  The Risk Assessment must be addressed simultaneously with the Safety Assessment.

B. The Risk Assessment is used to assess the overall well-being of the child and the risk factors for abuse and neglect. The results of the Risk Assessment, along with the report findings, will be used to determine if a case should be opened for services.

C. The Risk Assessment must be initiated in MACWIS within seven (7) calendar days and completed within twenty-five (25) calendar days of initial intake report date and time by MCI. It must be submitted with the completed investigation via MACWIS to the supervisor for approval. The supervisor has five (5) calendar days to approve the findings.

### 5.7 Safety Plan

A. Overview

1. MDCPS must notify the court of any Safety Plan prior to implementation.

2. If adverse safety and risk factors are identified during the investigative phase, the worker must hold a Family Team Meeting to determine if there are family members or extended family who can assist the parent or caretaker in making an appropriate safety plan that is in the child's best interest.

3. Safety planning is an integral part of MDCPS making reasonable efforts to maintain children with family. Success is dependent on the relationship developed with the family.

4. A safety plan must be in place to prevent removal and allow a child to remain with family.[20]

5. Safety plans should be no more than thirty (30) days and developed only when a decision of "unsafe" has been determined and workers, with supervisory approval, assess that without the plan, the child(ren) cannot remain safely in the home.

B. Process

1. Safety planning is a process in which the family and the worker jointly develop a plan for the for the purpose of assuring the safety of the child and the preservation of the family that:

   a. Identifies issues and safety risks; and

---

[20] Required by Title IV-E



    b. Analyzes all issues and safety risks considering the strengths and protective capacities of the family.

1. In circumstances where safety issues are identified, a Safety Plan will be developed with the family and will be implemented immediately.

2. The worker must fully explain to the parent or caretaker their responsibility for carrying out the specific component of the plan assigned to them.

3. The Safety Plan must be monitored by the worker throughout the life of the investigation.

    a. If there is a continued need for a Safety Plan at the close of the investigation the plan the agency can continue the plan for an additional thirty (30) calendar days one time only. At the end of sixty (60) days, the agency needs to evaluate whether a child needs to be removed and a case opened.

C. Documentation

1. The Safety Plan must be documented in MACWIS, printed and signed by the parent or caretaker, the worker, and the worker's supervisor.

2. A copy must be given to parent or caregiver.

3. The original must be placed in case file and documented in MACWIS and provided to the Youth Court.

D. Safety Plan Contents

1. Identification of specific serious harm or the threat of serious harm as identified in the Safety Assessment.

2. Identification and explanation of actions that have been or will be taken to protect each child in relation to the current safety concern.

3. If the plan will involve In-Home Services or an Alternative caregiver.

    a. If alternative caregiver is used, a background check must be completed on all household members over fourteen (14) years of age prior to placement by the frontline worker.

4. Determination of who is responsible for implementing the plan.

5. How will the plan be monitored and evaluated, and by whom.



6. What time frames have been imposed by this plan.

7. Under what conditions will termination of the Safety Plan occur.

**Section 6: Findings**

**6.1 Completed Investigations**

A. When the worker completes an investigation, a finding is made to support the disposition of the report. This determination is made based upon:

1. Substantiation criteria;

2. Home Assessment for Children;

3. Safety Assessment;

4. Risk Assessment;

5. Information gathered and entered in MACWIS; and

6. Direct observation;

7. Medical or Psychological information.

B. The worker investigating the report is responsible for completing a finding on all allegations in the investigations in MACWIS and submitting to their supervisor for approval.

C. The investigation is not officially closed until the supervisor approves the investigation in MACWIS. Once the supervisor approves the investigation the supervisor or designee will notify the family in writing of the findings.

1. The worker should provide more information to the professional reporter regarding the investigation, without a court order if the reporter has a continuing professional relationship with the child and a need for such information to protect or treat the child.

**6.2 Types of Findings**

A. Report findings may be:

1. Substantiated;



2. Unsubstantiated; or

3. Closed Without Findings.

## 6.3 Substantiated Reports

In investigations where there is observed and evidence of abuse or neglect, the worker must document and substantiate the initial findings. The findings must meet the statutory criteria for abuse and neglect (See Appendix A).

## 6.4 Unsubstantiated Reports

In investigations where there is insufficient evidence for the caseworker to conclude that a child was abused or neglected, or that what happened does not meet the legal definition of child abuse or neglect.

## 6.5 Closed Without Findings[21]

A. This disposition is used when the investigation could not be completed.   This should be rare.

B. Reasons to use "Closed Without Findings" include:

1. The family moved out of the jurisdiction; or

2. The family could not be located.

C. Closed Without Findings cannot be used until the 25th day of an investigations and after all attempts to locate the family have been exhausted. A diligent search to locate the family includes, but is not limited to:

1. Contacting all known previous addresses of the child's parents;

2. Calling all previous telephone numbers listed in the case file;

3. Sending letters to General Delivery in a town or city where the Worker believes the parent to be residing but has no specific address

4. Contacting the County Clerk in charge of motor vehicle registration;

5. Requesting a law enforcement records check;

---

[21] This is consistent with MACWIS Technical Bulletin Issue Number 24. MDCPS implemented a practice change effective June 13, 2015, to allow investigations to be closed with a disposition of "Closed without a Finding."



6.  Contacting the State Department of Labor;

7.  Contacting the Department of Corrections;

8.  Contacting the state hospitals;

9.  Contacting all known relatives, friends, and previous employers;

10. Checking the telephone directory;

11. Contacting utility and telephone companies;

12. Contacting child support enforcement;

13. Requesting a diligent search through Trans Union;

14. Accessing the location services through the post office; and

15. Utilizing social media.

## 6.6 Basis of Findings

A.  The worker must base findings on the totality of the evidence.

B.  The investigative finding of substantiated or unsubstantiated must reflect a careful weighing of all the facts.

C.  If the determination is made that a child is unsafe, the worker will develop a Safety Plan or contact the youth court for removal.

D.  If it is determined that the child is not in immediate danger and that no case will be opened, the worker must let the family know so the family will have closure on the matter.

E.  If it is determined that a child is not in immediate danger but that services are needed, a case may be opened to provide services.  If the report is unsubstantiated and a referral to In-Circle is made, it is not necessary to open the case.

## 6.7 Documentation of Substantiation Criteria

A.  Overview

1.  The worker must document the supporting information gathered from other sources to confirm substantiated or unsubstantiated findings in MACWIS.

2.  Required documentation includes but is not limited to:



    a.  Home Assessment;

    b.  Safety Assessment;

    c.  Risk Assessment;

    d.  MACWIS documentation of all required interviews; and

    e.  Medical, psychological, and CAC records.

3. In cases where medical evidence is strong, there is photographic evidence, an admission by the perpetrator, or a credible victim's statement, the worker must have sufficient supporting documentation.

4. Proof of one or more of the following factors, may constitute "substantial and material evidence."

B. Medical

1. This may take the form of medical documentation that a child was abused. Such as evidence of sexual penetration of a young child or spiral fractures of long bones, or evidence which verifies the child sustained severe injuries which are medically inconsistent with the caregivers' explanation.

2. In cases where the medical evidence is inconclusive and the perpetrator denies the abuse, the worker must examine the constellation of all factors in reaching the decision. In these cases, something might be lacking from the child's statement, or the witnesses may be in conflict and may be biased.

C. Psychological

1. Psychological information which reveals a predisposition to abusive behavior on the part of the alleged perpetrator, or otherwise corroborates evidence related to abuse.

2. This might include an admission by the perpetrator or caregiver who acknowledges she or he knowingly failed to protect the child.

D. Sexual Abuse

1. Genital, anal, or oral bruises or bleeding;

2. Swollen or red cervix, vulva or perineum;

3. Abnormal dilation of the urethra, vagina, or rectal openings;

26

4. Semen on genitals, around mouth or clothing;

5. Sexually transmitted diseases;

6. Pregnancy.

E. Behavioral Indicators or Circumstantial Evidence

1. Behavioral indicators or circumstantial evidence may only be used to further corroborate other forms of evidence.

## 6.8 Statement of Credible Witness

A. The investigator must carefully evaluate the credibility and potential bias of any witnesses.

B. The investigator must also consider the credibility of any witnesses which serve to refute the allegations or otherwise diminish the strength of other evidence

1. For example:

   a. Parent or relatives who are involved in a custody dispute could not be considered fully reliable witnesses either in support of or in disagreement with the allegations.

   b. A reliable witness who states the alleged offender was elsewhere at the time of the alleged abuse should be corroborated by at least one other person.

## 6.9 Diligent Searches[22]

A. The Worker must conduct a diligent search to locate families before an investigation can be Closed Without Findings.

B. The Diligent Search Request form can be found on the MDCPS Connection under Foster Care Forms or by clicking here.

C. What constitutes a diligent search is outlined in Section 6.5(C) of this policy.

---

[22] The 2nd MSA requires that a diligent search for missing parents be completed within thirty days of a child entering custody.

**Section 7: Removals**

**7.1 Removals Due to Substantiated Investigation**

A. If a worker at any time suggests, discusses, or recommends the removal of a child from their home and placement in MDCPS custody, the worker must contact the ASWS and Youth Court Judge for approval.

B. Removals require:

1. ASWS involvement in making the decision to remove the child.

2. Authorization from the Youth Court Judge must be obtained for all removals and placements of a child into foster care. The court may order a child into care even if MDCPS does not recommend removal or agree with removal.

3. Extensive justification is required not only regarding the safety and risk issues involved, but also regarding the efforts attempted to prevent removal.

4. Workers and supervisors who participate in the removal of a child from their home should always be mindful of the trauma that removal brings even when the removal is in the best interest of the child.

A. Under no circumstances, even emergencies, may foster children be taken to the home of a MDCPS employee or stay overnight at an MDCPS office.[23]

**7.2 Reasonable Efforts**

A. To justify a recommendation for removal of a child from their home, workers must be able to report to the court either:[24]

1. Removal is in the best interest of the child; OR

2. Continuation in the home would be contrary to the welfare of the child; and

   a. Reasonable efforts were made to prevent removal;[25] or

   b. Due to an emergency situation, no reasonable efforts were made to prevent removal; or

---

[23] 2nd MSA §4.8
[24] Title IV-E, 42 U.S.C. §671
[25] 45 CFR §1356.21



c. Reasonable efforts were determined not required by the court.

B. Reasonable efforts requirements demand that the worker and MDCPS work diligently and concertedly with the family first to prevent removal of the child or children if possible.

1. If maintaining the child safely in the home is not possible, to provide services and solve problems to get the child back home as soon as safety can be reasonably assured.

C. The worker must develop and initiate active efforts toward the achievement of an alternative plan just in case the child cannot be returned home.

D. Decisions of removal are based on issues of:

1. Safety;

2. Risk;

3. Protective capacities of parent or caregiver; and

4. The ability or inability to implement plans assuring the safety of children remaining in the home or with family.

E. A finding of substantiated abuse or neglect does not, in and of itself, constitute grounds for removal.

**7.3 Removals Due to Court Order and Without Investigation**

A. When MDCPS is ordered by the court to remove a child from their home without an investigation and assessment of the maltreatment allegations, the worker must document the following information in MACWIS:

1. Name of contact person from the court;

2. Time and date request is received;

3. By what means, i.e. verbal, fax, email or telephone; and

4. Copy of the court order for removal.

a. If the court issues a verbal order, the worker should log on to MYCIDS and download a certified copy. If the verbal ordered has not been entered into MYCIDS within 48 hours, the worker should contact the appropriate Youth Court Intake Officer. Find a list of youth court contacts here.



**7.4 Facilitating Removals**

A.  Prior to removal the Worker must complete the foster child face sheet to keep on file and to provide to the Foster Parent.

B.  The worker should devote as much time as necessary in helping the child and his/her parents understand the reason for removal and what to expect from the placement of their child in MDCPS custody.

C.  The worker should help the parents assume as much responsibility as possible for preparing the child for placement.

D.  Whenever possible, parents should be the first to discuss placement with the child.

    1.  If the child feels the parents concur in this plan, placement will be easier for him to understand and accept.

    2.  Not only does the child need preparation for the placement, but the worker may need to assist the parents in working through their conflict about placement, as well as their feelings about separation from the child.

E.  Prior to removing a child from their home, the worker must identify information such as:

    1.  Daily routine;

    2.  Preferred foods and activities;

    3.  Needed therapeutic or medical care;

    4.  Allergies and other medical needs;

    5.  Cultural practices; and

    6.  Educational information.

F.  The child should be given the opportunity to collect things from home that are meaningful to them, such as a favorite toy or a picture album.

G.  The worker must explain to the child:

    1.  Why they are in care;

    2.  The worker's role in the process;

    3.  Placements for other siblings (if siblings have separate placements); and



    4. Feelings of separation and loss.

## Section 8: Expanded Investigations in Extraordinary Circumstances

### 8.1 Medical Neglect of Handicapped Infants[26]

A. Generally

    1. MDCPS will investigate all allegations of medical neglect of a handicapped infant. Once a report of medical neglect of a handicapped infant is received by MCI it will be screened in for the county where the child/family resides.

B. Supervisor Duties

    1. Assign the report for investigation immediately.

    2. Notify immediately designated contact person at the health care facility/hospital if applicable and the facility's Social Services Department, if applicable.

    3. If the child is in a health care facility/hospital the worker must conduct interviews with the following:

        a. Designated contact person

        b. Family

        c. Infant Care Review Committee (ICRC) if one is established at the health care facility.

        d. Others involved with the infant

C. Worker Duties

    1. Obtain an independent assessment from a medical consultant, if there is a determined need.

    2. Review infant's medical records, if necessary with the assistance of designated contact person. If the parents or facility do no cooperate, contact the Youth Court Judge or designee for a court order.

---

[26] Child Abuse Amendments of 1984 (P.L. 98-457)



   3.  Request an independent medical examination of the infant, if necessary, to assure an appropriate resolution of the report. If the parents or facility do not cooperate, contact the Youth Court Judge or designee for a court order.

D.  Findings of Medical Neglect

   1.  The Supervisor must:

     a.  Contact the Youth Court Judge to request an order to:

     b.  Require parents to seek appropriate medical care, or

     c.  Place custody with MDCPS to obtain appropriate medical care.

     d.  Document request to Youth Court Judge in the narrative section in the MACWIS System.

     e.  Assign case to a worker.

     f.  Notify the RD of the findings at the conclusion of the investigation that findings are available for viewing via MACWIS, including:

       i.  Names of the child, parents, alleged perpetrator, designated contact person and attending physician;

     g.  Circumstances surrounding allegations of medical neglect;

     h.  Identities of persons interviewed;

     i.  Investigation and assessment information;

     j.  Case disposition;

     k.  Action taken, if valid report;

     l.  Share the report with the worker assigned to the case.

     m.  Send letter to the facility administrator regarding disposition.

**8.2 Out of Home Investigations**

A.  MDCPS does not investigate reports regarding Out-of-Home settings, such as a school or daycare, unless the child involved is in the custody of MDCPS, the alleged perpetrator is a foster parent, or ordered to do so by the Youth Court.



B. MDCPS may assist in these investigations if requested by law enforcement or other appropriate investigative body.

## 8.3 Investigating Human Trafficking Reports

All reports of Human Trafficking received by MDCPS will be investigated. Please see the MDCPS Human Trafficking Policies and Procedures for additional information.

## 8.4 Investigations of Alleged Meth Labs

A. Policy

1. No MDCPS worker will knowingly enter an active or inactive "meth lab" for any reason.

2. All reports of children currently residing in "meth labs" active or inactive must be "screened in" for investigation.

3. The appropriate local law enforcement and the regional Mississippi Bureau of Narcotics office must be contacted and requested to assist the investigating worker on any suspected meth lab investigation.

4. If local law enforcement is unable or unwilling to assist, the administrative chain of command should be followed in seeking advice as to how the matter should be handled.

B. Procedure

1. During a meth lab investigation, the investigating worker should remain outside, at least one hundred feet from the "meth lab", while law enforcement officers remove the child/children from the lab unless instructed otherwise by law enforcement.

2. The child(ren) must be decontaminated by law enforcement or medical staff either at the scene or at a medical facility.

   a. If the child must be transported, transportation must be done by law enforcement or EMT.

   b. If decontamination occurs on the scene, the worker must advocate that the procedure be performed in such a way that does not further traumatize the child.

3. The worker may not place the child into their vehicle without the decontamination process having been conducted.

4. The worker should request copies of any photographs taken by law enforcement at the scene and follow-up to ensure that this information is received and placed in the MDCPS's files.

5. If the victim is taken to a medical facility, the worker should make a request to receive the results of any examinations or tests performed on the child, and follow-up to ensure that this information is received and placed in the MDCPS's files.

C. Safety Planning

1. If it is determined that a child is residing in a setting where an active or inactive meth lab exists, the child must be taken to a safe location while the investigation continues. Aa Family Team Meeting must be held and a Safety Plan developed immediately.

2. If it is determined that a child is residing in a setting wherein an active meth lab exists, the victim cannot remain safely in the home and a court order for removal should be obtained.

## 8.5 Reports Involving More than One County

A. Generally

1. When a report is screened to the child's county of residence and the incident happened in another county the responsibility of the Intake County is as follows:

B. Responsibilities of County of Residence

1. Accept report;

2. Initiate legal action as needed for child's protection;

3. Coordinate ongoing legal/court intervention;

4. Coordinate investigation with county where incident occurred;

5. Arrange treatment services for child and family as appropriate in county of residence;

6. Notify law enforcement in the county where the allegations occurred if needed;

7. Complete investigation in MACWIS;

8. Contact alleged perpetrator's county of residence to coordinate interviews;

9. Coordinate interviews on a child who may be visiting in another county.



C.  Responsibilities of County Where Incident Occurred:

1.  If a child is receiving services at a hospital or medical facility in a county other than their county of residence, and a report is received, the county worker where the child is located at the time of the report shall assist in any way, including initiating the contact with the child and assessing the safety of the child(ren). The worker in the county where the child is located at the time of the report must conduct the following interviews:

    a.  Interview alleged perpetrator;

    b.  Interview alleged victim or any other children who may still be in the county where incident occurred;

    c.  Interview reporter unless he or she has chosen to remain anonymous; and

    d.  Assist with coordination of services if needed.

**8.6 Protective Services Alerts**

A.  Generally

1.  Protective Service Alerts received in the State Office from other states will be forwarded from the Protection Unit via electronic mail to each county office.

2.  If a county needs to send a Protective Service Alert to another county or all counties within Mississippi, the county office will forward the alert to the Protection Unit to be disseminated via electronic mail to the other counties.

3.  If a county office needs to send a Protective Service Alert to a Family and Children's Services' office in another state, the county office will forward the alert to the Protection Unit to be forwarded to the other state via electronic mail.

B.  Child Fatalities

1.  In the case of a child fatality, when the family has moved to another county or state while the case is under investigation, and siblings to the deceased child have moved with the parents, a child protective alert needs to be sent by the assigned worker or supervisor to the appropriate state or county office.

C.  Family Leaves State

1.  If a family moves out of state during an investigation of a child abuse/neglect and the family's new address can be obtained, a letter to the Child Protective Service Division



in the other state must be written informing them of the report and must be sent to the Office of Protective Services, Division of Family and Children's, for the other state.

2. If the report indicated that there may be imminent danger of harm or threatened harm to the child, a protective service referral must be made immediately by telephone to the other state and confirmed in writing through the other state's Child Protective Service as soon as possible after making the oral report.

## Section 9: Special Investigations Unit

### 9.1 SIU Overview

A. The Special Investigations Unit (SIU) is the DCPS unit responsible for investigating ALL allegations of maltreatment of foster children, regardless of placement setting, as well as reports of child fatalities that meet the criteria for investigation or that occur in an open MDCPS case.

B. The SIU is composed of:

1. Investigation Specialist who are the frontline worker equivalent for the SIU.  They are responsible for performing maltreatment in care investigations.

2. Bureau Directors who serve as the supervisors to the Investigation Specialist.  They are responsible for supervising and approving the investigation and providing feedback and counsel to the Investigation Specialist.

3. The Director of Special Investigations who manages the entire Special Investigations Unit.

### 9.2 SIU Reports to MCI

A. Any individual who suspects a child in custody is being abused, neglected, or exploited, should make a report to the Mississippi Centralized Intake (MCI).

B. MDCPS employees are mandated reporters and are required by law to report any suspicion of child abuse or neglect, including allegations of maltreatment of children in custody, to MCI.

C. Failure to make a make a report to MCI will result in disciplinary action.



### 9.3 MCI Responsibilities for Entering SIU Reports

A. MCI staff will accept and enter ANE reports on children in custody.

B. As with general reports about non-custody children, MCI staff shall elicit as much information as possible from the reporter regarding the maltreatment in care allegations, including the names of the alleged victim, the alleged perpetrator, incident date, and the relationship of the alleged perpetrator to the alleged victim.

C. Once MCI confirms that the alleged victim is a child in custody, the MCI staff will enter the report into MACWIS using the following guidelines:

   1. If the report concerns allegations of maltreatment by a Resource Parent or Facility Staff, the report should be entered as a Resource Report and assigned to the SIU supervisor in the county where the home is located.

   2. If the report concerns allegations of corporal punishment of a child in foster care, with no report or indication of injury, the report will be entered for the county where the child resides and investigated as a licensure and policy violation.

   3. If the maltreatment occurred outside of the Resource Parent's home or Facility setting, the report will be entered as an ANE with the appropriate alleged perpetrator identified and assigned to the SIU Supervisor over the county where the child resides.

### 9.4 Screening the Report

A. When MCI receives a report that meets the statutory requirement for maltreatment and the identified victim is confirmed a foster child, the report will be screened in as a Level Three Report[27]. The Intake Worker will then send the report and screening to the SIU Supervisor where the Resource Home or Facility is located.

B. If the alleged maltreatment of a foster child occurred outside of the Resource Home or Facility and the Resource Parents or Household members were not involved, the report should be entered as an ANE and screened to the SIU.

C. If the maltreatment occurred in the child's own home, the report should be entered as ANE and the alleged perpetrator identified and assigned to the county where the child currently resides.

---

[27] A Level Three is a report that meets Miss. Code Ann. §43-21-353 criteria for abuse, neglect, or exploitation, which includes child in the legal custody of Mississippi Department of Child Protection Services (MDCPS).



**9.5 Quality Assurance Process for Screening Maltreatment in Care Reports**

A.  The Safety Review Unit (SRU) is responsible for completing the quality assurance review of maltreatment in care reports.  Specifically, SRU will:

1. Conduct reviews on maltreatment investigations of children in foster care, as identified by data from MACWIS weekly reports;

2. Monitor the status of remedial actions resulting from the reviews;

3. Review data reports reflecting state, regional, and county performance on various child welfare indicators associated with maltreatment in care;

4. Provide aggregate data on safety and casework related findings to analyze the qualitative and quantitative findings of MIC reviews and compile results into reports that identify the strengths and areas needing improvement.

B. MIC Reviews will be conducted on investigations of foster children alleged to have been maltreated while in care.  Information on which cases to review will be derived from a MACWIS report (SZ1271) of children alleged to have been maltreated in care.  This report runs on the 10th day of the month following the month the investigations were completed. This report will be run weekly, specifically for the SRU in an effort to assure that the reviews are done within thirty (30) days following the completion of the investigation.

C. The entries on SZ1271 with findings approved will be the investigations that are subject to review since this is an indicator that the investigation has been completed. The supervisor of the SRU will make the assignments from this report to the MIC Reviewer(s). After the review of the investigation has been completed, the review instrument and any findings of need for remedial action will be submitted to the SRU Supervisor for review, feedback, and approval for submission to the field for any needed remedial action.

D. The Maltreatment in Care Instrument captures strengths and areas needing improvement in the two target areas of the MIC reviews:

1. Are the investigations being initiated and completed timely?

2. Are children safe in their out-of-home care setting, and is any action needed to

3. ensure their safety, permanency, and well-being?

E. Findings of the reviews are entered into the MIC Review instrument (Smartsheet) by the assigned reviewers. If the reviewers identify necessary corrective action, the information is then distributed to the appropriate level staff via the designated reporting and tracking

method (Smartsheet) for developing, initiating, implementing corrective actions. The corrective actions taken by MDCPS field staff or facility staff are forwarded to the SRU supervisor who will track the corrective actions that are taken by the field. There are two types of corrective actions that might be identified through the course of the MIC Review. These corrective actions are either safety or casework practice related deficiencies. Corrective actions related to safety issues must be initiated within 5 days of the notification from SRU.  Corrective actions related to casework practice deficiencies must be initiated with 5 days of the notification from SRU.   During the MIC review, any imminent safety concerns ~~are~~ identified by MIC Reviewers will be reported by the SRU supervisor within 24 hours to the Director of Field Operations, the appropriate Regional Director, and the appropriate Area Social Work Supervisor particularly if it is a matter which requires a faster response.

F.  From the time of assignment, the MIC Reviewer will have a week to complete the review of the investigation and submit it to the SRU supervisor for approval. The SRU supervisor will either approve the findings of the review or return it back to the reviewer for corrections. The data collected in the review instruments will be compiled into MIC Review reports monthly, which will be submitted to the Deputy Commissioner of Child Safety, the CQI Director, EMU Director, and Deputy Commissioner of Child Welfare, which will detail those cases that required corrective actions to remedy any identified safety or practice issues and those that did not in order to identify trends and inform practice with regard to child safety, permanency, and well-being issues while in foster care.

## 9.6 Investigating the Report

A.  All allegations of maltreatment of a child in custody shall be investigated by a worker who has received training on intake and investigations processes, policies, and investigation techniques and has no ongoing connection to the foster care case. All general investigation practices should be followed, in addition to the following steps:

1.  The Investigation Specialist will initiate the maltreatment in care investigation within 24 hours of the date and time MCI received the call.

2.  The Investigation Specialist will notify the child's COR and COS (if applicable) worker, as well as the assigned Resource Specialist and ASWS regarding the allegations of maltreatment.

3.  The assigned Resource Specialist shall accompany the assigned ~~Special Investigator~~ Investigation Specialist to the home to assess possible policy and or licensure violations.



4. During the investigation, the Investigation Specialist shall:

   a. Follow all normal investigative procedures during the course of the investigation;

   b. Interview:

      i. The alleged victim(s) alone, if possible;

      ii. All MDCPS children placed in the home;

      iii. If the child is placed in a Facility, all MDCPS children with potential knowledge of the maltreatment;

      iv. The assigned MDCPS caseworker(s);

      v. The assigned Resource Specialist;

      vi. Former MDCPS staff, as appropriate;

      vii. Children formerly in the home, as appropriate;

      viii. All household members;

   c. Review the case history of the alleged victim;

   d. Review the Resource Family's history;

   e. Complete the Safety and Risk Assessment for resource reports;

   f. Staff the intake report and initial findings with their SIU Supervisor within three days of the initiation of the investigation;

   g. Provide information regarding the investigation to the County Frontline and Licensure workers, ASWS, and Regional Director;

   h. Assist the County staff in making a determination as to whether it is safe for the identified victim and other children to remain in the home until the investigation is completed;

   i. Work with the Licensure Specialist to ensure that the home is closed to new placements during the pendency of the investigation;

   j. In the case of a child fatality:

40



      i.    The Investigation Specialist will coordinate the investigation with law enforcement;

      ii.    Request a verbal and final autopsy from the Coroner or the State Medical Examiner.

5. The Investigation Specialist has 25 days to submit their completed investigation report to the SIU Supervisor, who then has five calendar days to approve the investigation.

6. The Investigation Specialist will provide a written notice of investigation findings to the County. A copy of the approved final investigation report, as well as any recommendations or corrective actions, shall be filed in the foster child's case record, the Resource or Adoptive Parents' record (with a copy of the findings letter), and in the MDCPS State Office. If the investigation involved a facility, then a copy of the findings letter will be sent to the provider.

7. MDCPS will provide a copy of the final investigation report, as well as any recommendations or corrective actions, to the Youth Court Judge with Jurisdiction over the child, and with the Guardian Ad Litem.

**9.7 Facilities**

A. If the report of child maltreatment occurred in an MDCPS licensed group home, emergency shelter, or child placing agency resource home, the Investigation Specialist will follow regular SIU and investigation protocol, in addition to the following steps:

1. Speak with the director or staff member in charge upon arrival at the facility to notify them of the report;

2. Notify the child's parents or guardian after the child is interviewed, or immediately if the child needs medical treatment;

3. Refer the child to a physician or other appropriate professional to assist in the investigation;

4. Interview facility personnel and other MDCPS foster children currently in the facility;

5. Interview the alleged perpetrator if law enforcement is not involved;

6. Review and obtain a copy of facility policy and procedures;

7. Obtain documents or records related to the incident. If access is denied, the Investigation Specialist will contact the Youth Court for assistance.



**9.8 Law Enforcement Notification**

Within 48 hours of finding evidence that a child in custody has been abused, neglected, or exploited, the Investigation Specialist will provide written notice of the investigation findings to the District Attorney.

**9.9 Child Fatalities**

A. The Special Investigations Unit will investigate reports of child fatalities that meet the statutory requirement for investigation or occur in an open MDCPS foster care or service case.

B. Reports of child fatalities can be made by the public or by MDCPS staff. MDCPS Staff who learns of a fatality and suspects abuse or neglect, or if the fatality occurs in an open case, are required to report the fatality to MCI.

C. When MCI staff receives a report of a child fatality, MCI shall follow standard intake protocol, in addition to the following procedures:

1. Notify the Regional Director over the County where the fatality occurred, the Deputy Commissioner of Child Safety, Deputy Commissioner of Child Welfare, the Director of Special Investigations, the Deputy Director and the Bureau Director for Special Investigations;

D. The following notifications are made by the Investigation Specialist:

1. Notify the District Attorney or County Prosecutor (if applicable);

2. Notify Law Enforcement;

3. Notify the Coroner.



# **Appendix A**
## Statutory Definitions

**Felony Child Abuse**

Mississippi Code Annotated §97-5-39

A. Any person shall be guilty of felonious child abuse in the following circumstances:
   1. Whether bodily harm results or not, if the person shall intentionally, knowingly, or recklessly:
      a. Burn any child;
      b. Physically torture any child;
      c. Strangle, choke, smother or in any way interfere with any child's breathing;
      d. Poison a child;
      e. Starve a child of nourishments needed to sustain life or growth;
      f. Use any time of deadly weapon upon any child.
   2. If some bodily harm to any child actually occurs, and if the person shall intentionally, knowingly, or recklessly;
      a. Throw, kick, bite, or cut any child;
      b. Strike a child under the age of fourteen (14) about the face or head with a closed fist;
      c. Strike a child under the age of five (5) in the face or head;
      d. Kick, bite, cut or strike a child's genitals.
   3. If serious bodily harm to any child actually occurs, and if the person shall intentionally, knowingly, or recklessly;
      a. Strike any child on the face or head;
      b. Disfigure or scar any child;
      c. Whip, strike, or otherwise abuse any child.
B. Bodily Harm means any bodily injury to a child and includes, but is not limited to, bruising, bleeding, lacerations, soft tissue swelling, and external or internal swelling of any body organ.
C. Serious Bodily Harm means any serious bodily injury to a child and includes, but is not limited to, the fracture of a bone, permanent disfigurement, permanent scarring, or any internal bleeding or internal trauma to any organ, any brain damage, any injury to the eye or each of a child or other vital organ, and impairment of any bodily function.



**Abused Child**

Mississippi Code Annotated §43-21-105(m)

A. An abused child means a child whose parent, guardian, or custodian, or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused, upon the child, sexual abuse, sexual exploitation, emotional abuse, mental injury, nonaccidental physical injury, or other maltreatment.

B. Physical discipline, including spanking, performed on a child by a parent, guardian, or custodian in a reasonable manner shall not be deemed abuse under this specific section of Mississippi law.

C. Children who have been trafficked within the meaning of the Mississippi Human Trafficking Act, by any person, without regard to the relationship of the person to the child, are also considered to be an abused child.

**Neglected Child**

Mississippi Code Annotated §43-21-105(l)

A. A neglected child means a child;

1. Whose parent, guardian, or custodian, or any person responsible for his care or support, neglects or refuses, when able to do so, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being;

2. Who is otherwise without proper care, custody, supervision, or support; or

3. Who for any reason lacks the special car made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or

4. Who, for any reason, lacks the care necessary for his health, morals, or well-being.

B. A parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under this specific chapter of Mississippi law.