IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| OLIVIA Y., et al )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>PHIL BRYANT, as Governor of the )<br>State of Mississippi, *et al.,* )<br>)<br>Defendants ) | CIVIL ACTION NO. 3:04cv251 TSL-FKB |

**DEFENDANTS' RESPONSE AND
OBJECTION TO PLAINTIFFS' MOTION
FOR LEAVE TO SUPPLEMENT PENDING
AMENDED MOTION FOR RELIEF
PURSUANT TO REMEDY PHASE OF
PLAINTIFFS' AMENDED MOTION FOR
CONTEMPT, FOR AN EVIDENTIARY
HEARING, AND FOR THE
APPOINTMENT OF A RECEIVER**

The Defendants object to the Plaintiffs' Motion For Leave To Supplement Pending Amended Motion For Relief Pursuant To Remedy Phase Of Plaintiffs' Amended Motion For Contempt, For An Evidentiary Hearing, And For The Appointment Of A Receiver ("Motion to Supplement").[1] [Dkt. No. 876].

The Plaintiffs' Motion to Supplement seeks to submit additional information and documentation that Plaintiffs allege is relevant to the pending Amended Motion For Relief Pursuant to Remedy Phase of Plaintiffs' Amended Motion For Contempt, For An Evidentiary

---

[1] Defendants request relief from the obligation to file a Memorandum Brief in support of this response. See Uniform Local R. 7.

Hearing And For Appointment Of A Receiver (the "Contempt/Receivership Motion").[2] [Dkt. No. 849].

In the proposed Supplemental Memorandum of Law attached to their Motion to Supplement, the Plaintiffs set forth additional alleged facts the Court should consider arising from a 2019 Interim Report requested by Plaintiffs and submitted by the Court Monitor on December 26, 2019. [Dkt. No. 876-2]. The 2019 Interim Report is based exclusively on data for the first two quarters of 2019, the period beginning on January 1, 2019 and ending on June 30, 2019. [Dkt. No. 876-1]. It is now January 10, 2020, and MDCPS is providing services in the first quarter of 2020. In addition, pursuant to section 9 of the 2nd Mississippi Modified Settlement Agreement ("2nd MSA"), MDCPS submitted on October 31, 2019, its Third Quarterly Report for 2019 and is preparing and will submit on January 31, 2020, its Fourth Quarterly Report for 2019. Finally, the Monitor is preparing the annual report (the "2019 Annual Report") also required by section 9 of the 2nd MSA. The 2019 Annual Report will address the entirety of calendar year 2019. The 2019 Interim Report, therefore, is not current and is not an accurate assessment of MDCPS's current efforts to achieve the commitments in the 2nd MSA, the improvements it has achieved in the delivery of services to children in the Olivia Y class, and the enhanced outcomes the children in the class are experiencing.[3]

Plaintiffs also seek to supplement the Contempt/Receivership Motion with a report of the Joint Legislative Committee on Performance Evaluation and Expenditure Review ("PEER Committee") titled "Report to the Mississippi Legislature: A Review of the Mississippi

---

[2] The original Contempt/Receivership Motion was filed on May 3. 2018. [Dkt. No. 739]. An Amended Motion was filed on July 3, 2019. [Dkt. No. 849]. Supplementation of potential evidence that the Plaintiffs may submit in support of the pending Contempt/Receivership Motion in a hearing that does not reflect the current performance of MDCPS does nothing to advance resolutions of the Contempt/Receivership Motion unless the Court decides to adjudicate the Motion without a hearing in which case the Defendants will submit extensive opposing relevant evidence.

[3] For example, over 40% of the children served by MDCPS in a calendar year are now successfully transitioning out of custody through emancipation, reunification, living with other relatives, adoption, guardianship, or transfer to another agency as a result of the improved services provided by MDCPS.

Department of Child Protection Services for [State] Fiscal Year 2019" (the "SFY 2019 PEER Report"). [Dkt. No. 876-3]. This PEER report addresses State Fiscal Year 2019 ("SFY 2019"), the period from July 1, 2018 to June 30, 2019. Therefore, the SFY 2019 PEER Report like the Monitor's 2019 Interim Report is not current and does not accurately reflect the current efforts of MDCPS to meet the commitments in the 2nd MSA and provide foster care services to the Olivia Y class, or MDCPS's improvements in services and outcomes.[4]

The 2019 Interim Report and the SFY 2019 PEER Committee Report will be updated and placed in context in the hearing on the current Contempt/Receivership Motion or if directed by the Court in subsequent evidentiary submissions if the Motion is to be decided on briefs and evidentiary submissions.

The proposed Supplemental Memorandum of Law attached to their Motion for Leave to Supplement also sets forth Plaintiffs' position that the Court may consider fines and/or impose certain limited receiverships. The original Contempt/Receivership Motion and the Amended Motion asked the Court to appoint a general receiver to take control of MDCPS and the delivery of foster care services in Mississippi with no specificity or assessment with regard to the identify of a receiver, the cost of the receivership, the period of the receivership, the impact of the receivership on MDCPS staff, or most importantly the likelihood that a receivership would be

---

[4] The SFY 2019 PEER Report sets forth a number of foundational findings that are not data based with regard to the 90% Fixed Caseload Cap metric that is one of the principal grounds for the relief sought in the Contempt/Receivership Motion:

> MDCPS's current caseload standards are based on outdated information and do not align with current child welfare practices. The compliance mandates for caseworkers and caseworker supervisors set forth in the 2nd MSA obscure important information about workload and service provisions and encourage inefficient and unequal distribution of labor. (PEER Report #636 at 14).

> Since 2005-2006, MDCPS has not conducted a workload study based on current caseworkers' time and responsibilities to determine the range of time necessary for a caseworker to perform a task in accordance with best practices. (*Id.* at 15).

successful in complying with the over 100 best practices in the 2nd MSA. The original and amended motion, included a request for general, equitable relief. [Dkt. No. 739 and 849]. General relief in the context of the Contempt/Receivership Motion includes appropriate equitable relief, which encompasses potential fines and a partial receivership. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief."). Therefore, the Court has the discretionary authority to consider such relief and the Motion to Supplement is unnecessary. However, it must be emphasized that a partial receivership lacks the same specificity that is inherent in the full receivership request and cannot meet the governing receivership legal standards.[5]

The Motion to Supplement, along with its Proposed Supplemental Memorandum of Law, is the latest misplaced and myopic effort to impose a receivership over all or significant aspects of foster care in Mississippi while ignoring the major financial obstacles MDCPS has overcome, the substantial improvements it has made in the delivery of foster care services to the children in the Olivia Y class, and the significant improvement in outcomes that children in the Olivia Y class are experiencing.

For the reasons set forth in this response, the Motion to Supplement should be denied.

RESPECTFULLY SUBMITTED, this the 10th day of January, 2020.

---

5 The appointment of a receiver must be reasonable under the circumstances. The most significant factor in the propriety of appointing a receiver is whether any other remedy is likely to be successful." *Dixon v. Barry*, 967 F. Supp. 535, 550 (D.D.C. 1997) (citations omitted). In determining whether other remedies are inadequate and receivership remains the only viable option to effectuate compliance with the laws and orders of the court, the court should consider a number of factors including: (1) "whether there were repeated failures to comply with the Court's orders"; (2) whether further efforts to secure compliance would only lead to "confrontation and delay"; (3) whether leadership is available which can "turn the tide within a reasonable time period"; (4) "whether there was bad faith"; (5) "whether resources are being wasted"; and (6) "whether a receiver can provide a quick and efficient remedy." *District of Columbia v. Jerry M*, 738 A.2d 1206, 1213 (D.C. 1999).

        PHIL BRYANT, as Governor of the State of Mississippi, JESS H. DICKINSON, as Commissioner, Mississippi Department of Child Protection Services, and TRACY MALONE, as Deputy Commissioner of Child Welfare, Mississippi Department of Child Protection Services

        By: /s/   James L. Jones

OF COUNSEL:

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

James L. Jones (MSB #3214)
William C. Pentecost (MSB #99841)
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS  39211
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424

Harold E. Pizzetta, III
Assistant Attorney General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P. O. Box 220
Jackson, MS  39205