IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

OLIVIA Y., by and through her next friend, James D. Johnson; JAMISON J., by and through his next friend, Clara Lewis; DESIREE, RENEE, TYSON, and MONIQUE P., by and through their next friend, Sylvia Forster; JOHN A., by and through his next friend, James D. Johnson; CODY B., by and through his next friend, Sharon Scott; MARY, TOM, MATTHEW, and DANA W., by and through their next friend, Zelatra W.; AND SAM H., by and through his next friend, Yvette Bullock; on their own behalf and behalf of all others similarly situated,

        Plaintiffs,

v.

PHIL BRYANT, as Governor of the State of Mississippi; DONALD TAYLOR, as Executive Director of the Department of Human Services; AND BILLY MANGOLD, as Director of the Division of Family and Children's Services,

        Defendants.

CIVIL ACTION NO.
3:04-CV-251-TSL-FKB

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND PENDING AMENDED MOTION FOR RELIEF PURSUANT TO REMEDY PHASE OF PLAINTIFFS' RENEWED MOTION FOR CONTEMPT, FOR AN EVIDENTIARY HEARING, AND FOR THE APPOINTMENT OF A RECEIVER[1]**

Defendants continue to make extraordinary attempts to justify more than a decade of flagrant noncompliance with court orders and settlement agreements designed to protect the constitutional rights of the children in their care. This time, Defendants endeavor to reframe the discussion by improperly confining their noncompliance to the past two years and claiming that superfluous "improvements" warrant exemption from their obligations to this Court, the settlement agreements, and Plaintiff Children. But Defendants' attempts to misdirect do little more than

---

[1] Plaintiffs request relief from the obligation to file a Memorandum Brief in support of this reply under Uniform Local R. 7.

1

distract from the real issue before the Court—Defendants' widespread and longstanding noncompliance with the court-ordered settlement agreement. Mississippi's most vulnerable children cannot afford to tolerate Defendants' transparent delay tactics any longer.

Plaintiffs filed this Renewed Motion for Contempt[2] more than two years ago, in May 2018. Plaintiffs were granted leave to amend their Renewed Motion for Contempt and filed their Amended Motion for Contempt[3] after the Monitor issued its 2018 Report[4] in June 2019. Plaintiffs now seek to amend their pending Amended Motion for Contempt only because the recently issued Monitor's 2019 Report[5] contains new, directly relevant information confirming that Defendants remain in substantial noncompliance. Now that the Monitor has issued its report for 2019, the Court has ample evidence upon which to evaluate the merits of the pending motions. Given the plethora of evidence available to the Court—including the Monitor's 2018 and 2019 reports which provide thorough and neutral reporting on Defendants' performance for the past two years—Plaintiffs no longer believe that an evidentiary hearing is necessary. If anything, Plaintiffs urge the Court to utilize the scheduled August 4th date to hear arguments on the merits of entering a finding of contempt against Defendants based on the evidence before the Court.

Defendants previously rejected the idea of an evidentiary hearing at the status conference on March 3, 2020, claiming that such a hearing would be disruptive. At that time, Defendants stated they could not participate in an evidentiary hearing without causing substantial damage to

---

[2] Plaintiffs' Motion for Relief Pursuant to Remedy Phase of Renewed Motion for Contempt for an Evidentiary Hearing and for the Appointment of a Receiver ("Renewed Motion for Contempt") [Dkt. 739].
[3] Plaintiffs' Amended Motion for Relief Pursuant to Remedy Phase of Renewed Motion for Contempt for an Evidentiary Hearing and for the Appointment of a Receiver ("Amended Motion for Contempt") [Dkt. 849].
[4] Progress of the Mississippi Department of Child Protection Services: Monitoring Report for *Olivia Y., et al. v. Bryant, et al.* covering January to December 2018 ("Monitor's 2018 Report") [Dkt. 845].
[5] Progress of the Mississippi Department of Child Protection Services: Monitoring Report for *Olivia Y., et al. v. Bryant, et al.* covering January to December 2019 ("Monitor's 2019 Report") [Dkt. 897].

the Mississippi Department of Child Protection Services ("MDCPS"). Defendants now claim, with no explanation for their befuddling about-face, that they cannot adequately defend themselves *without* an evidentiary hearing. But Defendants have failed to articulate why an evidentiary hearing is necessary, given all the information already produced or pending before the Court, why they cannot defend their position through briefs as they have in the past[6] and, if the Court deems it necessary, oral argument.

Defendants familiarly urge this Court to delay evaluating the merits of the pending motion, apparently because the Court does not have the *most* recent data on Defendants' performance. But the only data available for the first half of 2020 is both unreliable and incomplete. Further, Defendants' own data for the first quarter of 2020 demonstrates noncompliance with at least 55 provisions due under the 2nd MSA[7]. In contrast, the Monitor's 2019 Report presents this Court with the most recent *reliable* data. Defendants claim that the 2019 Monitor's Report is merely a "six-month old snapshot" and "does not take into account the improvements MDCPS has made" in the first half of 2020. Dkt. 899 at 4. Defendants' argument remains unconvincing. Both the Monitor's 2018 and 2019 Reports are comprehensive evaluations of Defendants' performance with more than 100 obligations due under the negotiated settlement agreement. To suggest that these reports analyzing a full years' worth of data are mere "snapshot[s]" is absurd.

Due to Defendants' history of producing deeply flawed data that requires time-consuming validation, a neutral monitor was chosen jointly by both parties. A significant part of the Monitor's job is to validate the data that Defendants provide to ensure that the data is accurate and consistent,

---

[6] *See e.g.* Defendants' Memorandum of Authorities in Support of Response and Objections to Plaintiffs' Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver [Dkt. No. 858].

[7] The currently operative settlement agreement, the Second Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA") [Dkt. 712] was negotiated and entered into in 2016 and allowed Defendants a period of unmonitored capacity-building before becoming effective on January 1, 2018.

3

and that the qualitative components of Defendants' commitments under the 2nd MSA are being met.[8] Indeed, in the Monitor's 2019 Report, the monitoring team identified 20 separate provisions for which Defendants' data *could not* be validated, an additional 12 for which Defendants had provided no data at all, and 54 for which Defendants failed to comply. Dkt. 897 at 4. It is impossible for the Monitor to issue validated data in real time because the data validation requires thorough and meticulous review of both the qualitative and quantitative components of the 126 commitments currently due under the settlement agreement. Therefore, any data that Defendants seek to present for 2020 will necessarily be unvalidated, not to mention incomplete, as Defendants did not even purport to present *unvalidated* data for a number of its obligations in the first quarter of 2020. That is the data Defendants now beseech the Court to rely on.[9] There is, therefore, no reason the Court should be precluded from reviewing the validated 2019 data presented in Plaintiffs' Proposed Second Amended Motion for Contempt and supporting memorandum, which presents the Court with the most recent, validated, and directly relevant information – especially given that more "current" information is either unavailable or has not yet been validated, and particularly in light of Defendants' long, dismal history of providing inaccurate data.

---

[8] For example, under 2nd MSA §5.1.a caseworkers are required to meet children in foster care at least twice monthly, which is measured quantitatively. MDCPS must also meet qualitative requirements for those visits: the caseworker must assess the child's safety and well-being, service delivery, and achievement of permanency and other service goals, and one of the two visits per month must take place in the child's placement. In order to validate the qualitative aspects of the requirement, the Monitor conducted a "qualitative review of visitation case narratives for 136 randomly selected children…" Monitor's 2019 Report at 65.

[9] Such data includes data regarding Defendants' failure to comply with 2nd MSA provision requiring Defendants to maintain a statewide system to appropriately receive, screen, and investigate reports of child maltreatment. Documents recently received from Defendants demonstrate their failure to do so, as well as the tangible consequences of that failure—last year a 4-year-old girl was beaten to death and her 3-year-old sister was severely beaten by their mother's boyfriend. Prior to her death MDCPS had received multiple reports of abuse and neglect but closed the case the day before the fatal incident. Following the girl's death, the caseworker's supervisor admitted that the children should have been taken into custody.

The most recently validated data will never be contemporaneous—but it will be reliable. Under Defendants' definition of "current", this Court would never be permitted to consider data *at all* because more "current" data will always exist—even though that data has not been validated. Indeed, to disregard or minimize data because it is not the most current would render enforcement of the settlement agreement impossible. Defendants would *never* be held accountable for their failure to comply, resulting in an unacceptable injustice. Instead, Plaintiffs' proposed Amended Memorandum should be considered because it presents this Court with the most recent, validated data available.

Defendants make numerous misrepresentations in their attempt to reframe the issues that warrant correction. First, Defendants attempt to minimize the scope of their noncompliance by confining it to the past two years. *See* Dkt. 899 at 2, 4. But the clock did not reset two years ago when the currently operative settlement agreement went into effect. To the contrary, Plaintiffs' motion for a finding of contempt is grounded in more than a decade of non-compliance. Additionally, Defendants fundamentally mischaracterize Plaintiffs' position. Plaintiffs do not suggest that a finding of contempt should be made on the Monitor's 2019 Report alone. Such an assertion is patently disingenuous, as the parties have completed extensive briefing on Plaintiffs' motion for contempt.[10] Rather, Plaintiffs assert that the Monitor's 2018 and 2019 reports, in

---

[10] *See e.g.* Plaintiffs' Memorandum of Law in Support of the Remedy Phase of Their Renewed Motion for Contempt and for the Appointment of a Receiver [Dkt. 740]; Defendants' Memorandum of Law in Support of Response and Objections to Plaintiffs' Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing and for the Appointment of a Receiver [Dkt. 755]; Plaintiffs' Reply in Support of the Remedy Phase of Their Renewed Motion for Contempt and for the Appointment of a Receiver [Dkt. 767]; Plaintiffs' Amended Memorandum of Law in Support of Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver [Dkt. No. 850]; Defendants' Memorandum of Authorities in Support of Response and Objections to Plaintiffs' Amended Motion for Relief Pursuant to Remedy Phase of Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver [Dkt. No. 858]; Plaintiffs' Reply Memorandum of Law in Further Support of Amended Motion for Relief Pursuant to Remedy Phase of

conjunction with the thorough briefing already done, provide ample evidence for this Court to make a fully informed decision without the need for an evidentiary hearing.

Finally, Defendants imply that the 126 commitments due under the 2nd MSA are lofty and arduous "best practices" more suited to an ideal world than to reality, and that Plaintiffs' insistence on adherence to the 2nd MSA is myopic. *See e.g.* Dkt. 899 at 2. This is simply not the case. The requirements of the 2nd MSA represent components of real child welfare systems designed to provide constitutionally adequate care. They were painstakingly negotiated, and re-negotiated, by the parties and the end result is an agreement that Defendants both believed feasible and committed to achieving.

Defendants have been evading responsibility for their noncompliance for over a decade, but it is time to break the endless cycle of unfulfilled promises. For more than ten years Defendants have failed to comply with court orders designed to bring Mississippi's child welfare system into compliance with constitutional standards – standards to which Defendants have repeatedly agreed, then quickly ignored. Plaintiffs welcome the opportunity to argue the merits of this issue before the Court on August 4th, but respectfully urge the Court to grant their Motion for Leave to Amend to present the Court with the Monitor's 2019 Report. Despite Defendants attempts to misdirect, the fact remains that Defendants are *not*, have *never been*, and cannot say if they *ever will be*, in compliance with the terms of the negotiated settlement agreement. There is no dispute that Defendants are not in compliance—Defendants themselves do not claim to be, nor do they refute the accuracy of the Monitor's reports. Defendants have had ample opportunity to comply with this Court's order—in fact they have had a decade of second chances. It is time for this Court to hold

---

Plaintiffs' Renewed Motion for Contempt, for an Evidentiary Hearing, and for the Appointment of a Receiver [Dkt. 864].

6

Defendants in contempt and protect the constitutional rights of the vulnerable children whom Defendants are entrusted to protect.

 Plaintiffs therefore respectfully move the Court for the entry of an Order granting Plaintiffs leave to amend their pending Amended Renewed Motion. Plaintiffs also request that this Court grant such other and further relief as this Court deems necessary and proper.

 RESPECTFULLY SUBMITTED, this the 23rd day of July 2020.

 <u>/s/ Marcia Robinson Lowry</u>
Marcia Robinson Lowry (pro hac vice)
Anastasia Benedetto (pro hac vice)
A Better Childhood, Inc.
355 Lexington Avenue, Floor 16
New York, New York 10017
Telephone (646) 808-7344
Email: mlowry@abetterchildhood.org
  abenedetto@abetterchildhood.org

Wayne Drinkwater, Jr. (MBN 6193)
Michael J. Bentley (MBN 102631)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place, Suite 400
188 East Capitol Street
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
Email: wdrinkwater@bradley.com
  mbentley@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23rd, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will deliver copies to all counsel of record.

*/s/ Marcia Robinson Lowry*