IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| OLIVIA Y., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:04-CV-251-HSO-FKB |
| | ) | |
| TATE REEVES, as Governor of the | ) | |
| State of Mississippi, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**

**I.    INTRODUCTION[1]**

Plaintiffs seek $99,466.92 for attorneys' fees and expenses for enforcement of

the 2nd Modified Mississippi Settlement Agreement and Reform Plan ("2nd MSA").[2]

(*See* "Motion for Fees" Dkt. No. 924). Defendants oppose the Motion and also ask

the Court to strike Plaintiffs' other pending motions for attorneys' fees (*i.e.* Dkt.

Nos. 843, 870, 883, 901, and 907).[3] (*See* Dkt. No. 929, pg. 8).

The parties agree that Plaintiffs are entitled to fees. *Id.* The parties also

agree that Plaintiffs worked a reasonable number of hours and claimed reasonable

expenses. *Id.* This Motion is about two issues. *Id.* The first issue concerns proper

hourly fee rates for Plaintiffs' counsel. The second issue is whether Defendants may

delay payment of these fees. *Id.* Plaintiffs have substantial evidence supporting

---

[1] Due to the nature of this pleading, Plaintiffs request relief from having to file a memorandum brief in support of Plaintiffs' reply.

[2] This is for the period from January 1, 2021, through June 30, 2021.

[3] In every such motion, Plaintiffs sought a court ruling on the issue of timely payments. For all of them, Plaintiffs specifically requested payment "within thirty (30) days from entry" of an order.

the reasonableness of their proposed rates and have established the authority of the Court to order prompt payment.

As to the first issue, it has been more than five years since this Court adjusted Plaintiffs' counsels' hourly rate. (*See* Dkt. No. 691, pg. 11). Since that time, Plaintiffs' lawyers have become even more experienced at their craft. Robert McDuff, a respected local practitioner who has argued several cases before the United States Supreme Court, has submitted a declaration stating that the rate increases proposed in this motion are reasonable and consistent with rates paid to local counsel. (*See* Dkt. No. 924-5). Case law also supports the reasonableness of the proposed fees. (*See* Dkt. No. 925, pg. 10). Defendants, by contrast, have offered neither law nor fact in support of their objection. They nitpick minor aspects of Plaintiffs' case law but provide no independent authority—not a single case—to support their position. (*See* Dkt. No. 929, pgs. 3-5). They claim, *ipse dixit*, that the 2016 rates are reasonable, but they do not provide their own sworn declaration. Unsurprisingly, Defendants do not directly dispute any of Mr. McDuff's Declaration—they have no countervailing evidence.

With regard to the second issue, this Court has sole authority to determine when Defendants must pay these fees. Defendants claim that language in the 2nd MSA's Introduction requires them to pay after a legislative appropriation. (*See* Dkt. No. 929, pgs. 6-7). But that is not true. Defendants misconstrue the 2nd MSA's Introduction as applying to attorney's fees, but it does not. The Introduction applies only to "provisions" and "outcome measures" within the agreement itself. *Id*.

Rather, the 2nd MSA specifically states that attorneys' fees will be set "according to a schedule to be <u>fixed by the Court</u>." ("2nd MSA," Dkt. No. 712, §12.1) (emphasis added). Plaintiffs have consistently opposed annual payments contingent upon legislative appropriation and have sought a judicial ruling on the issue. Defendants' practice of delaying payment unfairly prejudices Plaintiffs, who have consistently had to wait up to 17 months before being paid.

In short, Plaintiffs have presented a reasonable lodestar calculation supported by the *Johnson* factors. Defendants, in contrast, have provided no evidence (either by declaration or case law) to rebut this. Defendants also have no legal basis for rendering payments contingent upon legislative appropriations.

The Court should award Plaintiffs $99,466.92, which includes 343.4 total hours of attorney work, 2.1 total hours of paralegal work, and $4,719.57 in expenses. The Court should also direct Defendants to remit payment within thirty days from entry of its Order.

## II.    DISCUSSION

### A.    Plaintiffs seek rates that are reasonable

Defendants argue the 2016 fee rates "continue to be reasonable and customary hourly rates in the district." (*See* Dkt. No. 929, pg. 5). But they provide no evidence—either by sworn declaration from a local practitioner, or by case law— to support that assertion.

The Court must rely on the existing record to determine this issue. *Lighthouse Rescue v. City of Hattiesburg, Miss.*, No. 2:12 CV-184 at *5 (S.D. Miss.

April 23, 2014) (citing *McClain v. Lufkin Industries*, 649 F.3d 374, 383 (5th Cir. 2011) ("the 'hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate.'"); *Idom v. Natchez-Adams School District*, No. 5:14-CV-38 at *3 (S.D. Miss. Jan. 25, 2016) (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("'Generally, the reasonable hourly rate for a particular community is established though affidavits of other attorneys practicing there.'")).

Robert McDuff's Declaration is the only evidence in the record regarding customary hourly rates in present-day Mississippi. (*See* Dkt. 924-5). He opined that Plaintiffs' requested hourly rates are all reasonable. *Id*. Specifically, Mc Duff indicated that $475 per hour for Marcia Lowry, $450 for Wayne Drinkwater, $325 for Michael Bentley, $250 for Jonathan Borle, and $225 for Anastasia Benedetto are all reasonable rates for attorneys of similar experience in the Southern District of Mississippi.[4] *Id*. Defendants have no evidence to rebut this statement. Indeed, Defendants do not cite to a single case.

With respect to Plaintiffs' cited cases, Defendants ignore *Schaeffer v. Warren Cty., Mississippi* altogether.[5] No. 3:14-CV-945-DPJ-FKB, 2017 WL 5709640 (S.D. Miss. Nov. 27, 2017). The court in that case awarded a rate of $325 per hour for a law firm partner—the same rate Plaintiffs seek for Michael Bentley. *Schaeffer*, 2017 WL 5709640; (Dkt. No. 929, pg. 4).

---

[4] McDuff did not opine on the proper rate for a paralegal. Plaintiffs seek a modest $10 per hour increase, to $110.
[5] Plaintiffs maintain that the Westlaw citation to that case is correct. Regardless, Defendants cite to no local rule that requires Plaintiffs to provide them a copy of the opinion.

Defendants further acknowledge that the court awarded Mr. Bentley $325 per hour in *Express Oil Change, LLC v. Mississippi Bd. Of Licensure for Pro. Engineers & Surveyors*, No. 3:16-CV-414-HTW-LRA, 2020 WL 7345661 (S.D. Miss. Dec. 14, 2020). Defendants' main contention with that case is that Mr. Bentley's associate—who was paid $225 per hour—is not a good comparator for Mr. Borle or Ms. Benedetto because they had more years' experience.

But that is not the only relevant *Johnson* factor. Ms. Benedetto has nearly four years' of highly specialized experience in child welfare reform litigation. (*See* Dkt. No. 924-2, ¶ 2). And Mr. Borle clerked for a United States district judge. (*See* Dkt. No. 924-3, ¶ 2). Indeed, Mr. Duff has stated "that a rate of $250 per hour for Mr. Borle and $225 per hour for Ms. Benedetto does not exceed the rates charged to fee-paying clients for lawyers based in the Southern District of Mississippi of reasonably comparable skill, reputation, and experience." (*See* Dkt. No. 924-5, ¶ 4). Most importantly, though, Defendants have offered no evidence that suggests these attorneys deserve any less.

Defendants further argue that *Express Oil Change* and *Perez v. Bruister*, No. 3:13-CV-1001-DPJ-FKB, 2015 LEXIS 131285 (S.D. Miss. Sept. 29, 2015) "are not persuasive" because those defendants did not dispute the hourly rates. (*See* Dkt. No. 929, pg. 5). But Defendants offer no authority to rebut these cases. Defendants also claim that the rates in *Perez v. Bruister* reflect a premium charge. *Id.* Once again, though, Defendants do not explain why Ms. Lowry and Mr. Drinkwater—who

have more than 90 years of combined legal experience (including before the United States Supreme Court)—deserve less than a premium hourly rate.

Finally, Defendants say *Currier* is irrelevant because Plaintiffs here do not seek out-of-district rates. But that is an oversimplistic reading of the case. (*See* Dkt. No. 929, pg. 5). *Currier* awarded a $375 hourly rate for a Mississippi lawyer with 28 years of experience and a $550 hourly rate for an "experienced civil rights attorney" based in New York. *Currier*, 2019 WL 418550 at *3. Ms. Lowry has approximately 52 years of legal experience as a civil rights attorney specializing in child welfare reform. Mr. McDuff has indicated local counsel would have trouble prosecuting a lawsuit such as this one. (Dkt. No. 924-5, ¶ 7). Thus, Ms. Lowry could seek an out-of-district rate far greater than $575 per hour, which is what a (significantly less experienced) civil rights attorney received in *Currier*. Instead, Ms. Lowry seeks only $475—nearly 20% less. That amount is a reasonable, local rate.

## B. Plaintiffs deserve timely payment

As a threshold matter, this Court has sole authority to determine the time of payment. In civil rights cases, federal law supersedes a state's anti-seizure provision. *See Freeman Decorating Co. v. Encuentro Las Ams. Trade Corp.*, 352 Fed. Appx. 921, 923 (5th Cir. 2005); *see also Gates v. Collier*, 616 F.2d 1268, 1272 (5th Cir. 1980). Allowing Defendants to dictate the fee schedule "because it [otherwise] conflicts with the laws of Mississippi . . . would be allowing the state, by legislative

action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove." *Gates*, 616 F.2d at 1272.

The 2nd MSA's Introduction requires Defendants to request state funds—at least annually, in a manner "consistent with existing state budgetary practices and legal requirements"—to comply with "the provisions and outcome measures set forth" in the agreement. (2nd MSA, Introduction). In other words, Defendants must proactively seek out legislative appropriation to adequately fund the 2nd MSA's affirmative requirements (such as hiring caseworkers, adding mental health services, and so forth). Attorneys' fees, which are neither "provisions" nor "outcome measures" for purposes of the 2nd MSA, are simply not in the same category. Rather, the 2nd MSA specifically states that attorneys' fees will be paid "according to a schedule to be fixed by the Court." (2nd MSA §12.1).

Defendants also argue they should pay fees "consistent with how they have been paid over the course of this litigation—through a legislative deficit appropriation." (*See* Dkt. No. 929, pg. 8). But that is an unconvincing argument because Plaintiffs have consistently opposed this practice. (*See e.g.*, Dkt. No. 838-1, ¶ 4).

In 2018, Plaintiffs insisted on shifting the billing schedule to biannual payments. (*See* Dkt. No. 838-1, ¶ 11) ("As Defendants are aware, the parties switched from annual funding to biannual funding more than a year ago, because, as a small non-profit, it is important that we receive payment in a timely manner."). From this, the Court appeared to recognize that payment is not subject to

legislative appropriation.  (*See* Dkt. No. 810) (Defendants did not oppose attorneys'
fee motion that did not make payment contingent upon legislative appropriation);
(Dkt. No. 811) (Court ordered attorneys' fees but did not make payment contingent
upon legislative appropriation).  Since 2019, Plaintiffs have asked this Court for
prompt payment of fees at least five separate times.[6]  (*See* Dkt. Nos. 843, 870, 883,
901, and 907).  The Court has yet to decide this issue.

Indeed, Defendants' practice of conditioning payment on legislative
appropriation has caused Plaintiffs' counsel to suffer unreasonable delay.  For
example, Plaintiffs have had to wait up to 17 months to receive fees that they
initially sought through delivering invoices in February[7].  (Dkt. No. 901-1 ¶¶ 7-8).

For these reasons, Plaintiffs request this Court order prompt payment of
attorneys' fees to avoid prejudicing Plaintiffs with such delays in the future.

## III.  CONCLUSION

Plaintiffs have presented a reasonable lodestar calculation that the *Johnson*
factors support.  Defendants have provided no evidence to rebut this.  Defendants
similarly have no legal basis to withhold payment until a legislative appropriation.
Therefore, the Court should award Plaintiffs $99,466.92 and direct Defendants to
remit payment within thirty (30) days from entry of its Order.

Respectfully submitted, January 04, 2021.

---

[6] Ironically, these are the pending motions Defendants now seek to strike as moot.  (See Dkt. No. 929, pg. 8).
[7] Plaintiffs submitted an invoice to Defendants on February 1, 2019, for enforcement work from July 1, 2018, through December 31, 2018.  (ECF No. 843-1 ¶3).  Plaintiffs received payment on July 16, 2020.  (Dkt. No. 901-1 ¶¶ 8).

/s/ *Marcia Robinson Lowry*

Marcia Robinson Lowry (*pro hac vice*)
Anastasia Benedetto (*pro hac vice*)
Jonathan Borle (*pro hac vice*)
A Better Childhood, Inc.
355 Lexington Ave Floor 16
New York, NY 10017
Telephone: (646) 795-4456
Email: mlowry@abetterchildhood.org
abenedetto@abetterchildhood.org
jborle@abetterchildhood.org

Michael J. Bentley (MSB 102631)
BRADLEY ARANT BOULT CUMMINGS, LLP
One Jackson Place
188 E. Capitol Street, Suite 1000
Jackson, MS  39201
Phone: 601.948.8000
Fax: 601.592.1457
mbentley@bradley.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Marcia Robinson Lowry, an attorney for *Plaintiffs Olivia Y. et al.*, certify that on January 04, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Marcia Robinson Lowry
*Attorney for Plaintiffs Olivia Y. et al.*