IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| OLIVIA Y., et al | ) |
| Plaintiffs | ) ) ) |
| v. | ) ) CIVIL ACTION NO. 3:04-cv-251-HSO-ASH |
| TATE REEVES, as Governor of the State of Mississippi, et al. | ) ) ) |
| Defendants | ) ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM**

Defendants, by and through counsel, submit the following in opposition to the Motion for Appointment of Guardian Ad Litem for the In-Custody Class in Their Best Interests [ECF No. 967] ("Motion to Appoint"), showing the Court as follows:

**INTRODUCTION**

Since the 2nd Modified Settlement Agreement and Reform Plan ("2nd MSA") was suspended in June 2021, Mississippi's child welfare system has experienced consistent improvements resulting in better outcomes for children in the custody of the Mississippi Department of Child Protection Services ("MDCPS"). Despite these improved outcomes for children, an unrelated attorney has now filed a Motion for Appointment as Guardian ad Litem for the In-Custody Class in Their Best Interests ("Motion to Appoint"). The Motion to Appoint was improperly filed, is untimely, and seeks to protect interests already protected in a more meaningful way. For these reasons and as more fully set forth in this Memorandum, the Motion to Appoint should be denied.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

This institutional reform case was filed in March of 2004. On March 11, 2005, the Court certified the "In-Custody Class" – "all children who are or will be in the legal and/or physical custody of [MDCPS]". *See* ECF No. 84, p. 1. After a full three years of litigation, the parties agreed to settle the remaining claims of the In-Custody Class, which culminated in the Court approving and entering the Mississippi Settlement Agreement and Reform Plan ("Consent Decree") fully resolving all remaining claims in this case. *See* ECF No. 459. Over the years, the Court has modified the Consent Decree twice, the most recent being the 2nd MSA entered by the Court on December 19, 2016.[1] *See* ECF No. 712. On June 24, 2021, the Court suspended the 2nd MSA to enable MDCPS to engage in a period of rebuilding. *See* ECF No. 917. Through subsequent orders of the Court, the suspension of the 2nd MSA continued through April 15, 2025. On April 17, 2025, the Motion to Appoint was filed by Attorney Chad Shook, a private attorney who has no prior involvement or connection to this case, seeking to be appointed by the Court to serve as the guardian ad litem for the In-Custody Class.

**ARGUMENT**

The current posture of this case obviates the need for appointment of a guardian ad litem, and the Motion to Appoint should be denied. Rule 17 defines real parties in interest, delineates who has the capacity to sue, and provides the requirements for suing or defending on behalf of a minor. *See* F.R.C.P. 17. Under Rule 17, appointment of a guardian ad litem must occur "before any kind of judgment – default, on the merits, summary or other – is entered." *United States v. 42.5 Acres, More or Less, of Land & Pers. Prop., Located in First Prop. Jud. Dist. of Harrison*

---

[1] While the 2nd MSA was entered by the Court on December 19, 2016, the effective date of the 2nd MSA was January 1, 2018.

*Cnty., Miss.*, 834 F. Supp. 912, 916 (S.D. Miss. 1992). Even then, appointment of a guardian ad litem is not mandatory under Rule 17(c) "if the court feels that the infant's interests are otherwise adequately represented and protected." *Tillman v. Lee*, No. 3:23-CV-3028-DPJ-ASH, 2024 WL 3015760, at *2 (S.D. Miss. Apr. 23, 2024), *report and recommendation adopted*, No. 3:23-CV-3028-DPJ-ASH, 2024 WL 3011132 (S.D. Miss. June 14, 2024).

Not only is the Motion to Appoint untimely, but the interests of the minor class members were adequately protected during the pendency of the litigation, throughout the settlement process, and throughout the implementation of the Consent Decree. Even more, each minor class member has an appointed guardian ad litem in Mississippi's youth courts to protect their best interests – even those which may be impacted by the 2nd MSA. Therefore, the Motion to Appoint should be denied.[2]

**A. The current posture of this case precludes the applicability of Rule 17(c).**

Movant argues his appointment as a GAL to serve as a "best interest counsel" is necessary because "this litigation has evolved into a complete restructuring of the foster care system in Mississippi." *See* Motion to Appoint, p. 3. Movant takes the analysis further by attempting to distinguish between "macro reforms" and the "micro-level" impact of those reforms. *Id.* at 3-4. Because of this, the Court is asked to appoint the movant to serve as guardian ad litem pursuant to

---

[2] The Local Rules prescribe specific requirements for the filing of any motion. *See* L.U. Civ. R. 7(b). Relevant to the Motion to Appoint, "a motion may not exceed four pages, excluding exhibits, may contain only the grounds for the request and may not contain legal argument or citations to case law or other secondary authority." L.U. Civ. R. 7(b)(2)(B). In addition, "[a]t the time the motion is served, other than motions or applications that may be heard ex parte or those involving necessitous or urgent matters, counsel for movant must file a memorandum brief in support of the motion." L.U. Civ. R. 7(b)(4).

The Motion to Appoint is eight pages in length and contains legal argument, citing to both Mississippi law and federal rules. The movant also failed to file a contemporaneous memorandum brief in support of the Motion to Appoint. On its face, the Motion to Appoint could be stricken for failure to comply with the Local Rules. Nevertheless, Defendants file their Response and this Memorandum showing the Motion to Appoint fails on the merits.

Rule 17(c). Movant's request to be appointed to serve as the guardian ad litem for the In-Custody Class is too late – that train has left the station.

### 1. Appointment of a guardian ad litem is unnecessary because the Court entered a judgment in this case more than seventeen years ago.

Rule 17 is a pre-judgment procedural vehicle for ensuring real parties in interest have the capacity to sue or be sued and, if not, that they are properly represented. In *42.5 Acres*, the court considered the timing of an appointment under Rule 17(c). The court made a clear distinction of when consideration of the appointment of a guardian ad litem should occur – before, not after, a judgment is rendered. *Id.* (distinguishing *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir.1958) where "no thought was given to the appointment of a guardian ad litem ***until after judgment*** was rendered below." (emphasis added)); *see also*, *Punch v. Victoria Cnty. Jail Med. Dep't*, No. 6:22-CV-00022, 2023 WL 5613411, at *4 (S.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 6:22-CV-00022, 2023 WL 5616177 (S.D. Tex. Aug. 29, 2023) ("A court ***should not reach the merits*** of any possibly incompetent plaintiff's actions without first appointing a suitable representative." (emphasis added)).

The *42.5 Acres* court made no distinction as to what type of judgment is rendered. *42.5 Acres*, 834 F. Supp. at 916. The Consent Decree in this case is no different than any other type of judgment contemplated by the *42.5 Acres* court.

"Consent decrees cannot be approved without due consideration by the district court and, once approved, have the force of a legal judgment. Even if all of the litigants were in accord, it does not follow that the federal court must do their bidding.... The entry of a consent decree is more than a matter of agreement among litigants. It is a judicial act." *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013)(citations omitted); *see also*, *Ho v. Martin Marietta*

*Corp.*, 845 F.2d 545, 548 (5th Cir. 1988) ("Once the district court enters the settlement as a judicial consent decree ending the lawsuit, the settlement takes on the nature of a judgment.")

The Motion to Appoint completely misunderstands the procedural history of this case and that the current procedural posture of this case is one of judicial oversight of the Consent Decree, incorrectly characterizing it as one where "the parties have negotiated the following interim resolutions, amended interim resolutions, and interim suspensions of agreements." *See* Motion to Appoint, p. 2.  The Court entered the Consent Decree – a final judgment – in this case on January 4, 2008, resolving all remaining claims in this case.  *See* ECF No. 459.  Since that time, the Court has entered orders modifying the initial Consent Decree or suspending for a time the enforcement of the Consent Decree, which are fully within the Court's power to order.  These orders do not negate the fact that the original Consent Decree was a final judgment, even as subsequently amended. The Consent Decree and subsequent orders, even as modified, are more than mere "interim solutions" as referenced in the Motion to Appoint.

The law is clear that a Rule 17(c) appointment is meant to be made prior to a judgment to protect the interests of a minor party who is either suing or defending.[3]  Once a judgment is entered, the interests of the minor party have been determined and an appointment is no longer necessary. As such, the Motion to Appoint should be denied.

### 2. The Court previously determined the In-Custody Class was properly represented during the pendency of the litigation and throughout the settlement.

Rule 17(c) provides that "[a] minor or an incompetent person who does not have a duly

---

[3] In *42.5 Acres*, the court analyzed which "infants" are subject to Rule 17(c).  The court first noted "that Rule 17 is located under Part IV of the Federal Rules of Civil Procedure which is entitled, 'Parties' and that Rule 17 itself is entitled, 'Parties Plaintiff and Defendant: Capacity.'" *42.5 Acres*, 834 F. Supp. at 916. Because of this, the court found that in the Rule's "proper context" an appointment under Rule 17(c) "would appear to apply only to infants who are parties." *Id.*  Because the Consent Decree was entered, the children in custody are no longer suing or defending as contemplated by Rule 17.

appointed representative may sue by a next friend or by a guardian ad litem." F.R.C.P. 17(c). Rule 17(c) does not, however, mandate the appointment of a guardian ad litem where the minor's interests have otherwise been represented or protected. *See*, *Tillman*, 2024 WL 3015760 at *2; *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958). Beyond the procedural failures of the Motion to Appoint, this Court has also previously held that the named class representatives were adequately represented through next friends and that the class members' interests were adequately protected throughout the settlement process.

Courts have the discretion to appoint either a next friend or guardian ad litem under Rule 17(c) to make sure the interests of a minor are protected. *Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 988 (5th Cir. 1984). At the outset of the litigation in this case, the Court found that each of the named Plaintiffs had a next friend who was "generally knowledgeable about the nature and purpose of this litigation, and has a good faith interest in the named plaintiffs' welfare and in the prosecution of this litigation." *See* ECF No. 84, p. 10. Based on that finding, the Court certified the In-Custody Class to proceed with the litigation. *Id.*

Once the underlying litigation led to an agreed settlement among the parties, the Court was tasked with scrutinizing the fairness, adequacy, and reasonableness of the settlement. *See* F.R.C.P. 23(e)(2); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir. 1981). "The reason the court is called on to review a settlement is to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement." *Id.*; *see also*, *San Antonio Hisp. Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 453 (W.D. Tex. 1999) ("the Court acts 'as a fiduciary who must serve as a guardian of the rights of absent class members.'").

The Court held two fairness hearings at which time it heard testimony of various individuals and counsel. *See* 5/17/07 and 1/4/08 Minute Entries. At both fairness hearings, class members were given opportunity to file written objections and to orally oppose the proposed settlement agreement. *See* ECF No. 402 and 439. The Court ultimately approved and entered the Mississippi Settlement Agreement and Reform Plan which resolved all remaining claims in this case. *See* 5/17/07 and 1/4/08 Minute Entries; ECF No. 459.

As in *Tillman*, the "involvement of a guardian ad litem would not change the results at this point" so "the Court [should] decline to appoint a guardian ad litem under Rule 17(c)(2)." *Tillman*, 2024 WL 3015760, at *3. Accordingly, the Motion to Appoint should be denied.

**B. Each child in the custody of MDCPS has an appointed guardian ad litem to protect their best interests.**

Movant argues his appointment as a guardian ad litem is necessary for several reasons, all of which are related to what is referred to as the "micro-level" impact of the 2nd MSA on the best interests of the In-Custody Class. *See* Motion to Appoint, p. 5. The Motion to Appoint is again misguided in its characterization of this case, including the purpose of the consent decree and the role of the court-appointed monitor, not to mention the fact that each child in custody already has a court-appointed guardian ad litem to protect the best interests of the child.

The court-appointed monitor is charged with verifying data and conducting case record and qualitative reviews to evaluate the implementation of the 2nd MSA. *See* ECF No. 712, ¶ 9.3. The monitor is also charged with providing written reports to the court which includes "the extent to which [Defendants'] work is producing the intended effects and/or the likelihood that the work will produce the intended effects." *Id.* at ¶ 9.5. The monitor's reports include great detail about the impact of the 2nd MSA on both broad systemic metrics as well as individual cases – i.e., the monitor is looking at both "macro-level" and "micro-level" impacts of the 2nd MSA.

7

The Motion to Appoint cites to § 43-21-121 of the Mississippi Code, which requires the youth courts of Mississippi to appoint a guardian ad litem for each child in an abuse or neglect proceeding. *See* Miss. Code Ann. § 43-21-121(1)(e). Once appointed by the youth court, the guardian ad litem has "the duty to protect the interest of the child" including to investigate and make recommendations to the court. *See* Miss. Code Ann. § 43-21-121(3). In other words, each member of the In-Custody Class already has an appointed guardian ad litem who sees the "micro-level" impacts of the 2nd MSA on a regular basis and is in position to protect the individual interests of the child.

The Motion to Appoint should be denied because this Court already has a view into the impacts of the 2nd MSA through the work of the court-appointed monitor and because each child has an appointed guardian ad litem in the youth court who is already in a position to protect the child's best interests. Again, just like *Tillman*, the "involvement of a guardian ad litem [in this case] would not change the results at this point" so "the Court [should] decline to appoint a guardian ad litem under Rule 17(c)(2)." *Tillman*, 2024 WL 3015760, at *3.

## CONCLUSION

The appointment of a guardian ad litem at this juncture would be unfitting. Rule 17(c) is a procedural vehicle that would have properly been used prior to entry of the Consent Decree in this case, not seventeen years after the fact. Even still, the interests of the In-Custody Class members were adequately protected during the pendency of the litigation and throughout the settlement process as indicated by the Court's approval of the class and the settlement agreement. Also, each minor class member has an appointed guardian ad litem in the youth courts to protect their best interests – even those which may be impacted by the 2nd MSA. Ultimately, appointing

a guardian ad litem after the Consent Decree was entered would not change the results of this case because the Consent Decree was a final judgment fully resolving the parties' dispute.

For these reasons, and as more fully articulated herein, movant's request to be appointed guardian ad litem for the In-Custody Class should be denied.

RESPECTFULLY SUBMITTED, this the 1st day of May, 2025.

TATE REEVES, as Governor of the State of Mississippi, ANDREA SANDERS, as Commissioner, Mississippi Department of Child Protection Services, and KIMBERLY WHEATON, as Deputy Commissioner of Child Welfare, Mississippi Department of Child Protection Services

By: /s/ *Clint Pentecost*
     CLINT PENTECOST

OF COUNSEL:

William C. (Clint) Pentecost (MSB #99841)
Jennifer E. Salvo (MSB #101208)
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS  39211
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424
cpentecost@bakerdonelson.com

Douglas T. Miracle (MSB #9648)
Assistant Attorney General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
P. O. Box 220
Jackson, MS  39205

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

  I hereby certify that I have this day electronically filed the foregoing *Response* with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

  This 1st day of May, 2025.

                */s/ Clint Pentecost*
                CLINT PENTECOST