# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| OLIVIA Y., et al<br><br>Plaintiffs<br><br>v.<br><br>TATE REEVES, as Governor of the State of Mississippi, et al.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 3:04-cv-251-HSO-ASH |

---

**AFFIDAVIT OF TERRI RENSCH**

---

I, Terri Rensch, declare under penalty of perjury, pursuant to 28 U.S.C. § 174 that the following is true and correct:

1. I am over 18 and competent to testify.

2. I have personal knowledge of the facts stated herein.

3. I, being duly sworn, hereby declare and state as follows:

4. I am a foster and adoptive parent in Mississippi. Through the Mississippi foster care system, I fostered and ultimately adopted two brothers in 2017. One came to me as a newborn directly from the hospital and will turn twelve this year. I later adopted his older brother, who was approximately six years old when he came to live with me.

5. Before coming to live with me, the older of the brothers had spent approximately eighteen months in foster care and had lived in approximately seven different foster homes.

6. After adopting the two boys, I stopped fostering.

7. In April 2025, I became involved with the Mississippi foster care system again

When I served as a kinship placement for two brothers, then approximately six and ten years old. I already knew the family because one of the boys was my son's best friend.

8. The boys had had an open CPS case for about thirteen months when they were removed. Approximately thirteen months earlier, in 2024, the mother had been arrested after methamphetamine was found in a car while both boys were with her.

9. The mother told me that, during the approximately one-year period between her 2024 arrest and her April 2025 arrest, CPS did not visit her or the boys.

10. During portions of that period, the mother and boys stayed with the mother's grandmother and father. I understood that the mother's father was a registered sex offender who had previously served approximately ten years in prison for sexually abusing her.

11. The mother and boys later lived at a domestic violence shelter for approximately nine months. I learned that someone at the shelter, as well as the boys school, contacted CPS because of concerns about the safety of the boys.

12. The mother told me that CPS did not visit her or the boys while they were living at the shelter.

13. I also learned that, before the April 2025 removal, the older child had previously been removed from his mother's care approximately twice and the younger child had previously been removed approximately once. At one point, the boys' maternal grandmother had guardianship of them.

14. When the boys came into my care in April 2025, they had significant unmet medical, dental, and educational needs.

15. I made the boys' medical, dental, and vision appointments myself and informed their caseworker of the appointments.

16. After the boys were placed with me, I was required to complete the kinship licensing process. By coincidence, I worked with the same social worker, Erma, who had worked with me during my earlier foster-care experience.

17. Erma was extremely important in helping me navigate the licensing process and in getting my application processed quickly.

18. Even with her assistance, I found the process invasive and frustraiting. It took approximately three months for me to become fully approved.

20. I also became aware that the boys had a paternal grandmother who was willing to serve as a placement and resource for them.

21. The boys' paternal grandmother had been trying to locate the mother and boys for approximately three years. She had reached out to CPS in hopes of connecting with the boys.

22. To my knowledge, CPS did not independently identify or locate the paternal grandmother during its family-search process, even though she was a willing family resource for the boys.

23. The case plan for the boys remained reunification with their mother.

24. Their mother participated in a Family Intervention Program or Family Intervention Court plan. Her requirements included therapy, participation in Alcoholics Anonymous, and random drug testing approximately two to three times per week. To my knowledge, she was not provided inpatient substance-use treatment as part of the plan.

25. During the case, the mother was complying with her plan and wanted to see her children.

26. On several occasions, I asked the caseworker to supervise a visit between the mother and her children. During the approximately seven months the boys were in my care, the caseworker never supervised a visit between the mother and the boys.

27. I was concerned by the lack of CPS-facilitated visitation because the goal throughout this period remained reunification.

28. The boys assigned caseworker told me that she had been a social worker for approximately eight months and had approximately twenty-two children on her caseload.

29. The caseworker never met privately with the boys outside my presence. I never observed the caseworker privately ask the boys whether they felt safe in my home or otherwise speak with them outside my presence to assess whether they were experiencing abuse, neglect, or other safety concerns.

30. Based on my experiences with Mississippi's foster care system, both as a foster and adoptive parent I have observed significant problems with delays, follow-up, coordination of children's medical and dental care, family searches, visitation, and caseworker monitoring.

31. The matters set forth herein are based on my personal knowledge.

32. I declare under penalty of perjury that the matters set forth herein are true and correct to the best of my knowledge information and belief.

Executed on this 20 day of Aug, in 2026.

Terri Rensch
Terri Rensch (Aug 20, 2026 15:50:22 CDT)
TERRI RENSCH