# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| OLIVIA Y., et al | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:04-cv-251-HSO-ASH |
| | ) | |
| TATE REEVES, as Governor of the State of Mississippi, et al. | ) | |
| | ) | |
| Defendants | ) | |

---

**AFFIDAVIT OF AUSTIN RICHBURG**

---

I, Austin Richburg, declare under penalty of perjury, pursuant to 28 U.S.C. § 174, that the following is true and correct:

1. I am over 18 and competent to testify.

2. I have personal knowledge of the facts stated herein.

3. I, being duly sworn, hereby declare and state as follows:

4. I am a pediatric nurse practitioner at Singing River Hospital in Pascagoula, and Ocean Springs Hospital in Ocean Springs since 2019.

5. I received my degree as a nurse practitioner from the University of South Alabama in 2018.

6. In my role as a nurse practitioner, I interact with Child Protective Services ("CPS") for babies born in the hospitals.

7. My work primarily involves newborns and infants, although I also encounter somewhat older children, including children who present with failure to thrive, drug exposure or

ingestion, and signs of physical abuse or neglect.

8. I am regularly subpoenaed to testify in Youth Court regarding infants treated at our hospitals, including newborns who test positive for substances such as cocaine, methamphetamine, and fentanyl.

9. Through this work, I have had significant concerns about CPS's response to reports involving infants and children who I believe face serious safety risks. For the last approximately seven years many drug-exposed newborns were being discharged to their parents, and we often received little or no information from CPS about the safety plan for discharge.

10. Since approximately July 1, 2026, communication between the youth court, CPS and the hospitals have deteriorated significantly. My understanding is that a change in Mississippi law affected CPS's obligation to provide information to Youth Court and other professionals.

11. In my experience since approximately July 1, 2026 reports made by hospital staff are submitted to CPS, and local youth court does not appear to receive information regarding many of those reports at the same stage of the process it previously did.

12. CPS also no longer routinely shares safety plans with hospital staff. This makes it difficult for medical providers to understand whether a child can safely be discharged and what protections, if any, will be in place after discharge.

13. For example, recently nursing staff were told that a mother could not see her newborn, but we had received nothing from Youth Court establishing that restriction or indicating that CPS had taken custody of the child. To my knowledge, Youth Court had not even been informed about the baby.

14. We have repeatedly attempted to contact CPS about cases involving serious safety concerns, but CPS frequently does not return our calls.

15. I have seen children discharged to parents despite circumstances that caused me serious concern about the parent's ability to care for the child safely, things like the parent has serious mental health issues, actively using drugs in the delivery room, or without safe and stable places to live.

16. We have also seen children return to medical care after CPS involvement with problems such as failure to thrive, drug exposure or ingestion, and other conditions that raise concerns about whether the child was safe in the home.

17. I have also encountered situations in which CPS knew that a parent was using drugs but, rather than opening or pursuing a CPS case, directed a grandparent or other relative to seek custody through Chancery Court. I have seen this happen numerous times. In my experience, in these situations CPS did not open or continue an investigation despite a report regarding the parent's drug use.

18. I have also encountered mothers using extremely dangerous drugs immediately before or after giving birth. In multiple situations, mothers were using fentanyl in the labor room and required emergency medical intervention for an overdose. Despite the circumstances, CPS does not immediately take the child into custody.

19. CPS has also declined to take action based solely on a parent's history of having parental rights terminated as to multiple other children. Even where a parent has previously had rights terminated as to four or five children, CPS has indicated that the history alone is insufficient for CPS to accept a new report.

20. Another recurring concern is that CPS loses contact with children and families. Approximately two months ago, CPS contacted one of my colleagues and asked whether a baby had appeared for any medical appointments because CPS had learned that the family had moved

and could no longer locate the child. In my experience, situations in which CPS does not know where a child is located happen frequently.

21. In my experience, obtaining an appropriate response from CPS frequently requires repeated calls and persistent follow-up by medical providers. CPS has generally not been collaborative with us, even when we are attempting to address serious concerns about a child's safety.

22. CPS also experiences substantial caseworker turnover. I regularly encounter new caseworkers, and many of the workers with whom we develop productive relationships leave the agency. I have not observed meaningful improvement in that turnover.

23. Based on my experience, I am particularly concerned that CPS is screening out serious reports without conducting an investigation and closing matters before they ever reach Youth Court. As a result, children with significant safety concerns, including newborns exposed to drugs, medically fragile infants, and children with signs of abuse, neglect, or failure to thrive, may remain in unsafe homes without meaningful court oversight.

24. The matters set forth herein are based on my personal knowledge.

25. I declare under penalty of perjury that the matters set forth herein are true and correct to the best of my knowledge information and belief.

Executed on this 20 day of August, in 2026.

Austin Richburg

Austin Richburg (Aug 20, 2026 15:41:57 CDT)

AUSTIN RICHBURG