**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

OLIVIA Y., et al — Plaintiffs

v. — CIVIL ACTION NO. 3:04-cv-251-HSO-ASH

TATE REEVES, as Governor of the State of Mississippi, et al. — Defendants

---

# DEFENDANTS' REBUTTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO VACATE THE 2[ND] MSA

---

William C. (Clint) Pentecost (MSB #99841)
Jennifer E. Salvo (MSB #101208)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424
cpentecost@bakerdonelson.com
jsalvo@bakerdonelson.com

Douglas T. Miracle (MSB #9648)
Deputy Attorney General
MISSISSIPPI ATTORNEY
GENERAL'S OFFICE
550 High Street
Jackson, MS 39201
Telephone: (601) 359-5654
doug.miracle@ago.ms.gov

***Attorneys for Defendants***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii
I. INTRODUCTION ........ 1
II. PLAINTIFFS IMPROPERLY CONFLATE 2ND MSA COMPLIANCE WITH CONSTITUTIONAL COMPLIANCE ........ 2
A. Plaintiffs improperly argue "substantial compliance" is required for dismissal. That is not the law. Defendants have complied with the Constitution; dismissal or vacatur is warranted. ........ 2
B. *Chisom* does not require substantial compliance with the 2nd MSA for dissolution. ........ 4
III. DEFENDANTS' JURISDICTIONAL ARGUMENT STANDS ........ 5
A. *Borel* and *Smith* are distinguishable. ........ 5
B. Agency reforms establish Defendants are not deliberately indifferent. ........ 6
IV. PLAINTIFFS MISCONSTRUE THE RULE 60(B)(5) STANDARD ........ 7
V. PLAINTIFFS' SELECTIVE ANECDOTAL EVIDENCE IS INSUFFICIENT TO SHOW SYSTEMIC DELIBERATE INDIFFERENCE ........ 9
VI. DEFENDANTS HAVE DEMONSTRATED DURABILITY ........ 9
VII. VACATUR IS SUITABLY TAILORED ........ 10
VIII. AN EVIDENTIARY HEARING IS THE SOLUTION TO ANY RECORD DEFICIENCIES ........ 11
IX. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## CASES

*Anderson v. City of New Orleans*,
38 F.4th 472 (5th Cir. 2022) .... 10

*Anderson Living Tr. v. WPX Energy Prod., LLC*,
306 F.R.D. 312 (D.N.M. 2014) .... 3

*Borel on behalf of AL v. Sch. Bd. Saint Martin Par.*,
44 F.4th 307 (5th Cir. 2022) .... 5

*Chisom v. Louisiana ex rel. Landry*,
116 F.4th 309 (5th Cir. 2024) .... 4

*Dierlam v. Trump*,
977 F.3d 471 (5th Cir. 2020) .... 2

*Horne v. Flores*,
557 U.S. 433 (2009) .... 6, 7, 8, 10

*Jackson v. Los Lunas Cmty. Program,*
880 F.3d 1176 (10th Cir. 2018) .... 2, 10

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
659 F.3d 421 (5th Cir. 2011) .... 8, 11

*MCG, Inc. v. Great W. Energy Corp.*,
896 F.2d 170 (5th Cir. 1990) .... 6

*M.D. by Stukenberg v. Abbott*,
907 F.3d 237 (5th Cir. 2018) .... 1, 3, 7

*Matter of Kutner*,
656 F.2d 1107 (5th Cir. 1981) .... 6

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) .... 1, 9

*Rhodes v. Chapman*,
452 U.S. 337 (1981) .... 3

*Rufo* v. *Inmates of Suffolk County Jail,*
502 U.S. 367 (1992) .... 8

*Save the Bay, Inc. v. U.S. Army*,
639 F.2d 1100 (5th Cir. 1981)....................6

*Smith v. Wyeth-Ayerst Lab'ys Co.*,
278 F. Supp. 2d 684 (W.D.N.C. 2003)....................3

*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018)....................6

*Wilson v. Seiter*,
501 U.S. 294 (1991)....................3

## I. INTRODUCTION

A constitutionally adequate child welfare system is not synonymous with full compliance with the 2nd Modified Settlement Agreement and Reform Plan ("2nd MSA"). Plaintiffs' Response to Defendants' Motion to Dismiss/Vacate ("Plaintiffs' Response") improperly conflates the two—treating every best practice metric as a constitutional standard. The Fifth Circuit rejected that equation in *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 273, 283 (5th Cir. 2018) (differentiating "best practices" or policy preferences from constitutional compliance). The parties are in agreement that the substantive due process right of custodial children is "personal security and reasonably safe living conditions." *See* ECF No. 985 at 35. The constitutional inquiry is whether the State was deliberately indifferent to that right. *Abbott*, 907 F.3d at 250–52. Applying this standard, the State has demonstrated constitutional compliance warranting dismissal or vacatur. Falling short of a 90% performance standard on a consent decree metric is not a substantive due process violation, and Plaintiffs cite no authority holding otherwise.

Plaintiffs improperly repeat this conflation across their legal arguments, treating Defendants' sustained reforms as notice of risk while refusing to acknowledge them as a response to that risk—an internally inconsistent position because reforms that respond to known risks demonstrate a lack of deliberate indifference and thus, defeat constitutional liability. Defendants' systemic reforms have addressed the alleged constitutional violations that gave rise to this litigation. The Court's continued enforcement of the 2nd MSA serves only to perpetuate judicial oversight of a state agency that has demonstrated it is not deliberately indifferent.

For evidence, Plaintiffs rely on four geographically limited affidavits from the same coastal Mississippi region. These do not establish the persistent and widespread statewide practice—and thus the systemic statewide failure—required under *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) (the "touchstone for establishing customary policy is a persistent and

**widespread** practice.") (emphasis added). No affiant alleges (much less proves) a substantiated injury to a child in custody under current MDCPS policies. These affidavits fail to establish the systemic deliberate indifference that Plaintiffs' theory requires.

## II. PLAINTIFFS IMPROPERLY CONFLATE 2ND MSA COMPLIANCE WITH CONSTITUTIONAL COMPLIANCE

Defendants' Motion to Dismiss/Vacate demonstrates that continued jurisdiction is no longer warranted because Defendants are in constitutional compliance, and that, alternatively, the 2nd MSA's continued prospective application is no longer equitable. Plaintiffs' Response conflates these theories of relief, misapplying the governing legal standards and improperly substituting the 2nd MSA's best practice process metrics for constitutional requirements.

### A. Plaintiffs improperly argue "substantial compliance" is required for dismissal. That is not the law. Defendants have complied with the Constitution; dismissal or vacatur is warranted.

Plaintiffs treat "substantial compliance with all 2nd MSA provisions" as synonymous with constitutional compliance. Pointing to the Monitor's 2025 Report, Plaintiffs assert that Defendants have not substantially complied with the 2nd MSA, and therefore, the Motion to Dismiss/Vacate should be denied. But the relevant question raised by Defendants under both Article III and Rule 60(b)(5) is not whether Defendants have achieved perfect compliance with 2nd MSA metrics—there is not a single state agency in the union that could do so. Instead, the constitutional inquiry is whether Defendants have responded reasonably to known risks. *See Jackson v. Los Lunas Cmty. Program,* 880 F.3d 1176, 1202, 1206-07 (10th Cir. 2018) (obligations in a consent decree "are merely a means of accomplishing [compliance with federal law], not the end"); *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citations omitted) (Article III's "case-or-controversy requirement persists 'through all stages of federal judicial proceedings.'"). Defendants' record of purposeful reform answers that question decisively. *See* ECF No. 978 at 30-40.

The Monitor's task is to measure performance against 2nd MSA metrics, not to evaluate deliberate indifference.[1] "Failed to meet metric X" is not interchangeable with "violated the Fourteenth Amendment"—these are different inquiries with different standards and burdens.

As *Abbott* instructs, there is no constitutional right to what "may reflect the 'best practices' of the child-welfare community." *Abbott*, 907 F.3d at 272. Yet best practices are precisely what the 2nd MSA metrics formalize and what Plaintiffs ask the Court to enforce as, or in place of, constitutional law. The maltreatment-in-care (MIC) rate is an illustrative example. Plaintiffs contend the MIC rate is the "convergence point on the safety dimension of this case." ECF No. 985 at 42.[2] Plaintiffs highlight the State's 0.74% MIC rate reported by the Monitor for 2025 against the 0.33% target in the 2nd MSA—but the 2nd MSA target is an aspirational metric, not a target above which deliberate indifference is established. Plaintiffs cite no case that holds a certain MIC rate means constitutional compliance (or not). The Fifth Circuit has never held such. Instead, the

---

[1] The Monitor's evaluation of "Defendants' performance with respect to the commitments in the 2nd MSA" is made through periodic "case record and qualitative reviews." 2nd MSA, § 9.3. This evaluation is distinct from the monitor's duty to "independently verify data reports and statistics provided." 2nd MSA, § 9.3. The Monitor's 2025 Report includes multiple provisions for which a case record and qualitative review were not completed. For those provisions in which a review was completed for 2025, the monitoring team utilized a sample size based on a 90 percent confidence level. *See* ECF No. 984 at 26. For the 2020 Report, the Monitor used a 95 percent confidence level (ECF No. 918 at 23) and a 90 percent confidence level in 2019 and 2018. *See* ECF No. 897 at 24; ECF No. 845 at 20. The use of a 90 percent confidence level for 2025 makes the results less reliable and more difficult to compare to 2020. Courts typically rely on a 95 percent confidence level in the social sciences. *See* Fed. Judicial Ctr. & Nat'l Acads. of Scis., Eng'g, & Med., Reference Manual on Scientific Evidence, p. 508 (4th ed. 2025), https://www.fjc.gov/content/396456/reference-manual-scientific-evidence-fourth-edition; *Smith v. Wyeth-Ayerst Lab'ys Co.*, 278 F. Supp. 2d 684, 691 (W.D.N.C. 2003) ("A study is considered 'statistically significant' only when the odds ratio is expressed with a 95% confidence interval."); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 413 (D.N.M. 2014) ("The use of a 95% confidence level . . ., is a scientific and industry standard.").

[2] Plaintiffs Response relies on a mashup of two cases for the proposition that the "cumulative impact" of the policies and practices may establish a constitutional violation: *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). ECF No. 985 at 984. The case mashup completely mischaracterizes the import of those cases. In *Wilson*, the petitioner, relying on *Rhodes*, contended the court could not dismiss any challenged condition as along as other conditions remain in dispute because all should be "considered as part of the overall conditions challenged." *Wilson*, 501 U.S. 294, 304. The *Wilson* Court rejected that contention because "*Rhodes* was not meant to establish that broad proposition." *Id.*

relevant constitutional question is whether Defendants are aware of a substantial risk and have consciously disregarded it. The record shows Defendants have done the opposite, responding to risks by establishing the Senior Safety Team, creating the MIC/Fatality Review process to prevent future incidents, enhancing investigation processes, and expanding quality improvement monitoring. *See* ECF No. 978 at 25, 37; ECF No. 976-1, ¶¶ 95-103. And those efforts are yielding results—maltreatment-in-care dropped more than 60% under these (and other) reforms, from 1.94% in 2020 to 0.74% in 2025.

Plaintiffs' Response catalogues Defendants' 2nd MSA performance but disregards the analysis required by *Abbott*. Plaintiffs fail to prove Defendants are subjectively aware of harm and disregard it. Because Plaintiffs cannot establish those required elements, Plaintiffs instead ask this Court to conflate decree noncompliance with constitutional deficiency; the Court should decline.

**B. *Chisom* does not require substantial compliance with the 2nd MSA for dissolution.**

In the memorandum supporting the Motion to Dismiss/Vacate, Defendants cited *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309 (5th Cir. 2024) for the Fifth Circuit's guidelines for modifying/terminating consent decrees—i.e., that courts should not retain control of state agencies in perpetuity, that consent decrees should be modified or terminated when warranted, and that consent decrees are temporary solutions to bring about a specific end: compliance with the law. *See* ECF No. 978 at 43-44. Plaintiffs' Response then concludes "Defendants rely heavily on *Chisom*," using that conclusion as a springboard to devote considerable attention to a different issue in *Chisom*—the contractual nature of consent decrees and whether substantial compliance justifies relief under the **first** prong of Rule 60(b)(5). *See* ECF No. 985 at 20-23; *see also*, *Chisom*, 116 F. 4th at 319 (the court "reaffirm[ed] the application of state contract law to motions to dissolve consent decrees **under the first prong of Rule 60(b)(5)**.") (emphasis added). But Defendants do not move on the first prong of Rule 60(b)(5) (substantial compliance); instead, Defendants are

entitled to relief under the third prong (equity). Plaintiffs' Response does not alter the Rule 60(b)(5) analysis outlined by Defendants—the bulk of Plaintiffs' *Chisom* argument is irrelevant and should, therefore, be disregarded.

## III. DEFENDANTS' JURISDICTIONAL ARGUMENT STANDS

Plaintiffs claim Defendants recast a modification argument as a jurisdictional one—but jurisdiction is separate from Defendants' Rule 60(b)(5) request. Defendants do not argue the Court never had jurisdiction. Defendants argue that the controversy is no longer live because the underlying constitutional violations have been remedied.

### A. *Borel* and *Smith* are distinguishable.

Plaintiffs' Response announces a purportedly "clear Fifth Circuit rule" based on decisions in *Borel* and *Smith*—that the 2nd MSA is the jurisdictional predicate for the Court's continuing authority. ECF No. 985 at 25. Those decisions, however, do not establish that proposition.

*Borel* explains: "In an ongoing institutional reform case like this one, jurisdiction extends to the 'the correction of the constitutional infirmity' [and] the continuing ability to order affirmative relief to cure violations flowing from the original constitutional violation." *Borel on behalf of AL v. Sch. Bd. Saint Martin Par.*, 44 F.4th 307, 312 (5th Cir. 2022). The *Borel* panel found the lower court had jurisdiction to order additional relief on two issues in that case: defendants' request for a unitary status determination and the court's closing of a school. *Id.* at 313, 316. There, the *Borel* defendants challenged jurisdiction only on appeal, after discovery and agreement to a superseding consent order, which the Fifth Circuit found fatal to the jurisdictional challenge. *Id.* at 311, 313. Here, unlike *Borel*, Defendants did not operate under the 2nd MSA during its nearly four-year suspension. Unlike *Borel*, Defendants have not agreed to a superseding consent order since the suspension. Unlike *Borel*, the Defendants' systemic changes have led to a constitutionally compliant system. Thus, Defendants' conduct during the suspension did not

presuppose continuing decree obligations or jurisdiction as in *Borel*.

Plaintiffs' reliance on *Smith* is similarly misplaced. ECF No. 985 at 24-25; *see also Smith v. Sch. Bd. Of Concordia Par.*, 906 F.3d 327, 330 (5th Cir. 2018). In *Smith*, a new charter school voluntarily joined a 40-year-old desegregation decree. The court held only that the consent decree could be enforced without a fresh finding of constitutional violation against the new voluntary participant—not that a federal court retains jurisdiction in perpetuity once Article III's live-controversy requirement is no longer met. *Id.* at 335. The issue in *Smith* is fundamentally different from the issue here: whether this Court retains subject-matter jurisdiction after the alleged constitutional violation has been remedied.

Plaintiffs read *Borel* and *Smith* in a vacuum. The Court should not. Instead, the Court should view *Borel* and *Smith* alongside other precedents[3], which outline the Court's ongoing obligation to determine whether it has jurisdiction and require the Court to dismiss this action once the constitutional infirmity has been corrected.[4]

**B. Agency reforms establish Defendants are not deliberately indifferent.**

Plaintiffs point to Defendants' reforms to prove subjective awareness of risk (ECF No. 985 at 38) but at the same time ask this Court to ignore the fact that those reforms prove Defendants' lack of deliberate indifference. Plaintiffs' position is internally inconsistent; they cannot rely on the reforms as evidence of notice while disregarding those same reforms when assessing deliberate indifference. Indeed, Defendants' reforms demonstrate MDCPS is not "consciously disregarding"

---

[3] *See Matter of Kutner*, 656 F.2d 1107, 1110 (5th Cir. 1981); *see also*, *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981); *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990); *Jackson*, 880 F.3d at 1201-03.

[4] Plaintiffs' Response treats the 2nd MSA's exit mechanism as the exclusive pathway rendering it immune from jurisdictional challenge—inconsistent with the bedrock principle that parties cannot confer subject-matter jurisdiction by consent and with *Horne's* recognition that Rule 60(b)(5) serves a "particularly important function" in institutional reform cases. *See Horne v. Flores,* 557 U.S. 433, 447 (2009).

risks—as required to establish liability.

While the reasoning in *Abbott* applies here, its facts are materially different: the Texas agency offered only "a standard, boilerplate request" rolled out "conveniently six weeks before trial" with "no data whatsoever on actual or even expected impact." *Abbott*, 907 F.3d at 262-63. Mississippi's four-plus years of reform instead include multiple legislative packages binding future administrations, improved caseload performance (from 60% Met to 90% Met), salary realignments, technology overhauls, and workforce stabilization. Even Plaintiffs' own affiants describe a system with assigned social workers, a licensing process that reaches resolution, and caseworkers who physically visit placements. Defendants' comprehensive reforms do not sound in deliberate indifference.[5]

To be sure, Defendants aspire to achieve outcomes like the 2nd MSA targets, but under the law, failure to achieve a 90% performance standard does not demonstrate deliberate indifference to Plaintiffs' rights. This is a functioning, constitutional system—materially different from the system described in the Amended Complaint and from the deliberately indifferent agency in *Abbott*.

## IV. PLAINTIFFS MISCONSTRUE THE RULE 60(B)(5) STANDARD

Under *Horne*, when the party obligated by the decree is "fulfilling its [legal] obligations by new means that reflect new policy insights and other changed circumstances, Rule 60(b)(5) provides the vehicle" for relief. *Horne*, 557 U.S. at 439. Defendants need not show the changed circumstances make compliance more difficult, as Plaintiffs argue. *See* ECF No. 985 at 27.

[5] Plaintiffs point to Defendants' statement that they "could have chosen inaction" as evidence that compliance is elective. ECF No. 985 at 57. Choosing to use the 2nd MSA suspension to implement durable reforms is not choosing whether to obey the Constitution. In context, the statement demonstrates good faith: Defendants proactively pursued reform even when enforcement was suspended—the opposite of deliberate indifference.

Defendants must only show the decree's objective has been achieved through alternative means. *Horne*, 557 U.S. at 439.

Plaintiffs characterize the 2nd MSA suspension as "the absence of change," arguing it was a non-event that made compliance easier, not more onerous—and therefore is not a "changed circumstance" under Rule 60. ECF No. 985 at 28. But Plaintiffs are wrong. Under *Horne*'s "flexible approach," courts review whether a decree's objective has been achieved through a changed circumstance, not whether that change made compliance harder. Here, applying both *Horne* and *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), the legislative, structural, and programmatic reforms made during the suspension are precisely the type of "new policy insights" that require courts to reexamine whether to modify or terminate a consent decree.

Plaintiffs also misapply *Rufo*, focusing almost exclusively on the "substantially more onerous" prong, while ignoring the independent equity prong. *Rufo,* 502 U.S. at 367. But *Rufo* uses the disjunctive "or"—each ground is "independently sufficient." *Id.* at 384. While a court may consider whether changed circumstances are more onerous, the court can also independently consider if the continued enforcement of the decree would be detrimental to the public interest. *Id.* Here, it would be.

Suspension of the 2nd MSA fundamentally altered the decree's operating posture: freed from increasing administrative burdens, including ballooning production demands—from 6,303 pages in 2018 to 71,845 in 2020—Defendants achieved the systemic improvements the decree envisioned. The greatest strides came during suspension, not enforcement, showing the decree was not serving its intended purpose as contemplated in *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 437-38 (5th Cir. 2011). The 2nd MSA therefore did not—and will not—resolve Plaintiffs' substantive due process claims.

## V. PLAINTIFFS' SELECTIVE ANECDOTAL EVIDENCE IS INSUFFICIENT TO SHOW SYSTEMIC DELIBERATE INDIFFERENCE

Plaintiffs' Response relies on four affidavits (three from laymen and one from a nurse practitioner) from the same coastal Mississippi region. Four individuals' isolated experiences in one geographic area does not establish systemic, statewide failure as required to support Plaintiffs' theory or, more importantly, to satisfy the legal requirements under *Piotrowski*, 237 F.3d at 581 (the "touchstone for establishing customary policy is a persistent and **widespread** practice.") (emphasis added).

The Holland Affidavit includes experiences spanning "over twenty years" of fostering; the Tate Affidavit spans a decade. Neither provides dates for most complaints, so they cannot be attributed to current MDCPS policies or practices. The Richburg Affidavit's most concrete complaint stems from a legislative change, not MDCPS policy. And the Rensch Affidavit—the only one with a clear timeframe—actually demonstrates the system functioning: a named social worker helped navigate completion of the licensing process in approximately three months, and a caseworker was assigned and communicative, all in accordance with MDCPS policy.

Tellingly, no affiant identifies a substantiated injury to a child in custody linked to a current MDCPS policy or practice—a critical gap in evidence for Plaintiffs' argument that Defendants are deliberately indifferent to custodial children's constitutional right to personal security and reasonably safe living conditions. This anecdotal evidence does not establish the systemic pattern of deliberate indifference required for a Fourteenth Amendment claim.

## VI. DEFENDANTS HAVE DEMONSTRATED DURABILITY

Plaintiffs themselves concede the legislative changes, such as statutory separation of MDCPS, agency-counsel authority, and the 2024 legislative package, are changes "that a successor commissioner could not unilaterally reverse"—precisely the durable structural reforms *Horne*

requires. ECF No. 985 at 57. Plaintiffs' stated concerns regarding future administrations do not bear on the durability analysis. *Horne* asks whether compliance with federal law is durable, not whether specific personnel will remain. *Horne*, 557 U.S. at 450. If leadership turnover were disqualifying, no decree could ever terminate. Durability must be viewed through statutory and administrative requirements, agency structure, embedded procedures, and continuing CFSR[6] monitoring—not by assuming a particular agency official must remain in office. Here, the systems now in place are anchored in state statute, administrative code, and federal CFSR requirements and monitoring, so durability does not depend on one commissioner's continued discretion.

## VII. VACATUR IS SUITABLY TAILORED

Plaintiffs argue vacatur is not a "tailored" remedy, but Rule 60(b)(5) expressly permits vacatur when continued prospective enforcement is no longer equitable. *See Horne*, 557 U.S. at 447. When the decree's objective has been attained and a durable remedy exists, "continued enforcement of the order is not only unnecessary, but improper." *Anderson v. City of New Orleans*, 38 F.4th 472, 479 (5th Cir. 2022); *Horne*, 557 U.S. at 450; *Jackson*, 880 F.3d at 1201 (citing multiple cases) (defining the "objective" of the decree as achieving "compliance with federal law"). Because durable compliance with federal law has been achieved, the Court should not preserve the 2nd MSA. The four-year suspension proves the point—Defendants' most significant reforms occurred (and constitutional compliance was met) when decree-based oversight was

---

[6] The Children's Bureau, an office of the Administration for Children & Families, oversees periodic Child & Family Services Reviews (CFSR). CFSRs "are periodic reviews of state child welfare systems, to achieve three goals: Ensure conformity with federal child welfare requirements; Determine what is actually happening to children and families as they are engaged in child welfare services; Assist states in helping children and families achieve positive outcomes. After a CFSR is completed, states develop a Program Improvement Plan (PIP) to address areas in their child welfare services that need improvement." *Child & Family Services Reviews (CFSRs)*, U.S. Dep't of Health & Human Servs. (Aug. 10, 2026), https://acf.gov/cb/monitoring/child-family-services-reviews.

removed.

## VIII. AN EVIDENTIARY HEARING IS THE SOLUTION TO ANY RECORD DEFICIENCIES

Citing *City of Boerne*, Plaintiffs argue the Court should deny the requested relief because the Sanders Affidavit leaves the record insufficient to determine whether relief is warranted. ECF No. 985 at 33-34 (citing *City of Boerne*, 659 F.3d at 438-39). There, the record contained only a joint motion for modification—no factual summary, affidavits, or documents. *Id.* at 439. The Fifth Circuit did not deny Rule 60(b)(5) relief on the merits; it reversed and remanded "to develop a sufficient record." *Id.* at 440. Thus, if the Sanders Affidavit is insufficient, Defendants respectfully request that the Court set an evidentiary hearing preceded by an opportunity for limited discovery.

## IX. CONCLUSION

Defendants have driven comprehensive reform that meets or exceeds their constitutional obligations. The record demonstrates Defendants are not deliberately indifferent to the risks for children in custody: they have identified risks, marshaled resources, enacted legislation, rebuilt staffing, modernized technology, and restructured MDCPS to protect children's personal security and reasonably safe living conditions. That is constitutional compliance, not deliberate indifference. Plaintiffs' conflation of 2nd MSA performance with constitutional liability cannot obscure this reality. Plaintiffs' Response fails to establish the persistent and widespread deliberate indifference required under *Abbott* and *Piotrowski*. The Court should grant Defendants' Motion and dismiss this action or, alternatively, vacate the 2nd MSA. Should the Court decline to grant the Motion on the briefs, Defendants request an evidentiary hearing to fully develop the record.

RESPECTFULLY SUBMITTED, this the 22nd day of September, 2026.

TATE REEVES, as Governor of the State of Mississippi, ANDREA SANDERS, as Commissioner, Mississippi Department of Child Protection Services, and KIMBERLY WHEATON, as Deputy

Commissioner of Child Welfare, Mississippi
Department of Child Protection Services

By: /s/ *Clint Pentecost*
CLINT PENTECOST

OF COUNSEL:
William C. (Clint) Pentecost (MSB #99841)
Jennifer E. Salvo (MSB #101208)
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400
cpentecost@bakerdonelson.com
jsalvo@bakerdonelson.com

Douglas T. Miracle (MSB #9648)
Deputy Attorney General
MISSISSIPPI ATTORNEY GENERAL'S OFFICE
550 High Street
Jackson, MS 39201
Telephone: (601) 359-5654
doug.miracle@ago.ms.gov

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing *Response* with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

This 22nd day of September, 2026.

/s/ Clint Pentecost
CLINT PENTECOST